**UNITED STATES OF AMERICA**
**DISTRICT OF NEW JERSEY**

```
_____        CIVIL NUMBER:

IN RE: INSULIN PRICING
LITIGATION                              2:23-md-03080-BRM-RLS

                                        INITIAL CASE
                                        MANAGEMENT CONFERENCE
_____
```

Frank R. Lautenberg Post Office and U.S. Courthouse
Two Federal Square
Newark, New Jersey 07102
September 12, 2023
Commencing at 10:00 a.m.

**B E F O R E:**          THE HONORABLE BRIAN R. MARTINOTTI
                         UNITED STATES DISTRICT JUDGE

                         THE HONORABLE RUKHSANAH L. SINGH
                         UNITED STATES MAGISTRATE JUDGE


**A P P E A R A N C E S:**

        CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, PC
        BY: JAMES E. CECCHI, ESQUIRE
        5 Becker Farm Road
        Roseland, New Jersey  07068
        For the Plaintiffs

        Proceedings recorded by mechanical stenography.
        Transcript produced by computer-aided transcription.


**Tammera M. Witte, Official Court Reporter**
**tammera_witte@njd.uscourts.gov**
**(973) 457-8230**

```
 1   A P P E A R A N C E S:  - CONTINUED

 2        THE CICALA LAW FIRM, PLLC
          BY: JOSH T. WACKERLY, ESQUIRE
 3            JOANNE M. CICALA, ESQUIRE
          101 College Street
 4        Dripping Springs, Texas  78620
          For the Plaintiffs
 5
          SIMMONS HANLY CONROY
 6        BY: MICHAEL J. ANGELIDES, ESQUIRE
          One Court Street
 7        Alton, Florida  62002
          For the Plaintiffs
 8
          THE DUGAN LAW FIRM
 9        BY: JAMES DUGAN, II, ESQUIRE
          365 Canal Street, 1 Canal Place
10        New Orleans, Louisiana  70130
          For the Plaintiffs
11
          PAUL B. WEITZ & ASSOCIATES
12        BY: MICHAEL FISCHBEIN, ESQUIRE
          55 Broadway, 23rd Floor
13        New York, New York  10006
          For the Plaintiffs
14
          SEEGER WEISS, LLP
15        BY: DAVID R. BUCHANAN, ESQUIRE
              STEVEN J. DAROCI, ESQUIRE
16            CHRISTOPHER A. SEEGER, ESQUIRE
          55 Challenger Road
17        Ridgefield Park, New Jersey  07660
          For the Plaintiffs
18
          ARMAS BERTRAN & PIERI
19        BY: EDUARDO BERTRAN, ESQUIRE
          4960 SW 72nd Avenue, Suite 206
20        Miami, Florida  33155
          For the Plaintiffs
21
          ROBERTS LAW FIRM, PA
22        BY: MICHAEL L. ROBERTS, ESQUIRE (Telephonic)
          20 Rahling Circle
23        Little Rock, Arkansas  72223
          For the Plaintiffs
24

25
```

```
 1  A P P E A R A N C E S:  - CONTINUED

 2      SHAPIRO CROLAND REISER APFEL & DILORIO, LLP
        BY: GLENN R. REISER, ESQUIRE
 3      411 Hackensack Avenue
        Hackensack, New Jersey  07601
 4      For the Plaintiffs

 5      KOZYAK TROPIN & THROCKMORTON, LLP
        BY: BENJAMIN J. WIDLANSKI, ESQUIRE
 6      2525 Ponce de Leon Boulevard, 9th Floor
        Coral Gables, Florida  33134
 7      For the Plaintiffs

 8      LEVIN PAPANTONIO RAFFERTY PROCTOR BUCHANAN O'BRIEN
        BARR & MOUGEY, PA
 9      BY: BRANDON L. BOGLE, ESQUIRE
            TROY RAFFERTY, ESQUIRE
10      316 S. Baylen Street, Suite 600
        Pensacola, Florida  32502
11      For the Plaintiffs

12      BARON & BUDD, PC
        BY: ROLAND TELLIS, ESQUIRE
13          MARK PIFKO, ESQUIRE
        15910 Ventura Boulevard #1600
14      Encino, California  91436
        For the Plaintiffs
15
        MINNESOTA ATTORNEY GENERAL'S OFFICE
16      BY: JASON A. PLEGGENKUHLE, ESQUIRE (Telephonic)
            NOAH LEWELLEN, ESQUIRE (Telephonic)
17      445 Minnesota Street, Suite 1400
        St. Paul, Minnesota  55101
18      For the Plaintiffs

19      COHN LIFLAND PEARLMAN HERRMANN & KNOPF, LLP
        BY: MATTHEW F. GATELY, ESQUIRE
20          MICHAEL TARRINGER, ESQUIRE
            DIANNE M. NAST, ESQUIRE
21      Park 80 West-Plaza One
        250 Pehle Avenue
22      Saddle Brook, New Jersey  07663
        For the Plaintiffs
23
        DAVID NUTT & ASSOCIATES, PC
24      BY: MATTHEW C. McDONALD, ESQUIRE
        605 Crescent Boulevard, Suite 200
25      Ridgeland, Mississippi  39157
        For the Plaintiffs
```

1    **A P P E A R A N C E S:** - CONTINUED

2       KELLER ROHRBACK
        BY: DAVID KO, ESQUIRE
3           DEREK W. LOESER, ESQUIRE
        1201 Third Avenue, Suite 3200
4       Seattle, Washington  98101
        For the Plaintiffs
5
        FORMAN WATKINS & KRUTZ, LLP
6       BY: TANYA D. ELLIS, ESQUIRE
            TONY C. WATKINS, III, ESQUIRE
7       210 E. Capitol Street, Suite 2200
        Jackson, Mississippi  39225
8       For the Plaintiffs

9       LISTON & DEAS, PLLC
        BY: W. LAWRENCE DEAS, ESQUIRE
10          WILLIAM LISTON, III, ESQUIRE
        605 Crescent Boulevard, Suite 200
11      Ridgeland, Mississippi  39157
        For the Plaintiffs
12
        NAPOLI SHKOLNIK, PLLC
13      BY: SALVATORE C. BADALA, ESQUIRE
            SHAYNA E. SACKS, ESQUIRE
14      360 Lexington Avenue, 11th Floor
        New York, New York  10017
15      For the Plaintiffs

16      HAGENS BERMAN SOBOL SHAPIRO, LLP
        BY: STEVE W. BERMAN, ESQUIRE
17      1301 2nd Avenue, Suite 2000
        Seattle, Washington  98101
18      For the Plaintiffs

19      WILLIAMS DIRKS DAMERON, LLC
        BY: MATTHEW L. DAMERON, ESQUIRE
20          MICHAEL A. WILLIAMS, ESQUIRE
        1100 Main Street, Suite 2600
21      Kansas City, Missouri  64105
        For the Plaintiffs
22
        KELLEY & FERRARO, LLP
23      BY: JOYCE C. REICHARD, ESQUIRE
        950 Main Street, Suite 1300
24      Cleveland, Ohio  44113
        For the Plaintiffs

25

```
 1  A P P E A R A N C E S:  - CONTINUED

 2       IRPINO LAW FIRM
         BY: ANTHONY D. IRPINO, ESQUIRE
 3       2216 Magazine Street
         New Orleans, Louisiana  70130
 4       For the Plaintiffs

 5       WALSH PIZZI O'REILLY & FALANGA
         BY: LIZA M. WALSH, ESQUIRE
 6       Three Gateway Center, 100 Mulberry Street
         Newark, New Jersey  07102
 7       For the Defendants

 8       KIRKLAND & ELLIS, LLP
         BY: RYAN J. MOORMAN, ESQUIRE
 9           DIANA M. WATRAL, ESQUIRE
             JASON A. FELD, ESQUIRE
10           ROBERT B. ELLIS, ESQUIRE
         300 North Lasalle Street
11       Chicago, Illinois  60654
         For the Defendants

12
         DAVIS POLK & WARDWELL, LLP
13       BY: ANDREW YAPHE, ESQUIRE
             NEAL POTISCHMAN, ESQUIRE
14       1600 El Camino Road
         Menlo Park, California  94025
15       For the Defendants

16       REED SMITH, LLP
         BY: MELISSA A. GEIST, ESQUIRE
17       506 Carnegie Center, Suite 300
         Princeton, New Jersey  08540
18       For the Defendants

19       DAVIS POLK & WARDWELL, LLP
         BY: JAMES P. ROUHANDEH, ESQUIRE
20       450 Lexington Avenue
         New York, New York  10017
21       For the Defendants

22       JONES DAY
         BY: MELISSA LIM PATTERSON, ESQUIRE
23           MICHAEL M. SHUMAKER, ESQUIRE
         51 Louisiana Avenue, NW
24       Washington, DC  20001
         For the Defendants

25
```

```
 1  A P P E A R A N C E S: - CONTINUED

 2      MORGAN LEWIS & BOCKIUS, LLP
        BY: JASON R. SCHERR, ESQUIRE
 3          PATRICK A. HARVEY, ESQUIRE
        1111 Pennsylvania Avenue, NW
 4      Washington, DC  20004
        For the Defendants
 5
        MARINO TORTORELLA & BOYLE
 6      BY: JOHN D. TORTORELLA, ESQUIRE
        437 Southern Boulevard
 7      Chatham, New Jersey  07928
        For the Defendants
 8
        WILLIAMS & CONNOLLY
 9      BY: ENU MAINIGI, ESQUIRE
            CRAIG D. SINGER, ESQUIRE
10          A. JOSHUA PODOLL, ESQUIRE
            R. KENNON POTEAT, III, ESQUIRE
11      680 Maine Avenue SW
        Washington, DC  20024
12      For the Defendants

13      ALSTON & BIRD, LLP
        BY: BRIAN D. BOONE, ESQUIRE (Telephonic)
14      Vantage South End
        1120 South Tryon Street, Suite 300
15      Charlotte, North Carolina  28203
        For the Defendants
16
        ALSTON & BIRD, LLP
17      BY: ELIZABETH BROADWAY BROWN, ESQUIRE
        1201 West Peachtree Street
18      Atlanta, Georgia  30309
        For the Defendants
19
        ALSTON & BIRD, LLP
20      BY: KELLEY CONNOLLY BARNABY, ESQUIRE
        950 F Street, NW
21      Washington, DC  20004
        For the Defendants
22
        ALSTON & BIRD, LLP
23      BY: JEAN RICHMANN, ESQUIRE
        560 Mission Street, Suite 2100
24      San Francisco, California  94105
        For the Defendants

25
```

1          (**PROCEEDINGS** held in open court before **The HONORABLE**

2  **BRIAN R. MARTINOTTI**, United States District Judge, at 10:00

3  a.m.)

4          THE COURT:  Welcome to New Jersey.  You may all be

5  seated.

6          Before we get started, I would like to welcome

7  everybody to the District of New Jersey.  We are the oldest

8  unified district in the country.  Our first Chief Judge was

9  appointed by George Washington.  We were served by the longest

10  serving Clerk of the Court up until a couple of months ago.  We

11  now have the shortest serving Clerk of the Court in the

12  country.

13          The statue outside, just for historical perspective,

14  is Lady Justice.  It was intended to be in this courtroom, but

15  Judge Guy Fake thought it was too risque so he wouldn't let it

16  in the courtroom.  It made its way around the World's Fair and

17  ended up back into this then new courthouse.  So there will be

18  a quiz when this MDL settles.

19          Seated to my left is Judge Singh, a Magistrate Judge

20  who will be participating and working with us as we move

21  through this litigation.

22          In front of me is our courtroom deputy Lissette.  You

23  will have contact with her and run all scheduling matters

24  through her and she controls the docket and controls my

25  schedule.  Tammy is our court reporter.

1          Where's Judge Singh's law clerk Luke?  Luke is Judge

2   is Judge Singh's law clerk.  He will be working with you.

3          Jennifer Fiore, over here, is my permanent law clerk.

4   She was with me in state court where we handled MDLs and MCLs.

5   Sara is my law clerk assigned to this matter.  Justin is one of

6   my law clerks.  Gurpreet is one of my law clerks.  Roy is one

7   of my law clerks, and Kevin will soon be not one of my law

8   clerks as Thursday is his last day.

9          So again, welcome.  We look forward to working with

10  you.

11         It is going to be impossible to put appearances on the

12  record, so I am going to go through and ask counsel to come up,

13  in a very orderly fashion, introduce yourself, give a two or

14  three-minute presentation on where you are and where you think

15  this litigation should be going, and then we will circle back

16  and lay some parameters for this litigation.

17         Because tradition has it that the plaintiffs will put

18  their appearance on the record first, I'm going to ask

19  defendants Eli Lilly and Company counsel to please come up and

20  put your appearances on the record.  You can stay at counsel

21  table if you prefer.

22         MR. MOORMAN:  Good morning, Your Honor.  That's great.

23  I was worried about that process.

24         Good morning, Your Honor.  Ryan Moorman, Kirkland &

25  Ellis, on behalf of Eli Lilly and Company.  With me is Diana

1    Watral.

2          THE COURT:  Very slow for the court reporter.

3          MR. MOORMAN:  With me is Diana Watral, Jason Feld, Rob

4    Ellis and Melissa Geist from Reed Smith.

5          THE COURT:  Novo.

6          MR. POTISCHMAN:  Good morning, Your Honor.  Neal

7    Potischman from Davis Polk.  With me in the courtroom is James

8    Rouhandeh and Andrew Yaphe.

9          THE COURT:  Sanofi.

10         MS. WALSH:  Good morning, Your Honor.  Liza Walsh, and

11   with me is my co-counsel from Jones Day, Melissa Patterson and

12   Michael Shumaker.  We have others in the courtroom but they'll

13   take all day long.

14         THE COURT:  Okay.

15         MS. WALSH:  So I won't introduce the rest.

16         THE COURT:  But make sure their timesheets are up to

17   date.

18         MS. WALSH:  That we never forget.

19         THE COURT:  Express Scripts.

20         MR. SCHERR:  Good morning, Your Honor, counsel.  J.R.

21   Scherr at Morgan Lewis for Express Scripts and its affiliates,

22   and with me is Pat Harvey also of Morgan Lewis.

23         THE COURT:  Thank you.  Welcome.

24         CVS?

25         MS. MAINIGI:  Good morning, Your Honor.  Enu Mainigi

1    from Williams and Connolly for CVS.  Also with me are John

2    Totorella, as well as a few colleagues from Williams and

3    Connolly:  Craig Singer, Josh Podoll, and Kennon Poteat.

4           THE COURT:  Caremark are subsumed with CVS?

5           MS. MAINIGI:  Correct, Your Honor.

6           THE COURT:  Optum.

7           MS. BROWN:  Good morning, Your Honor.  Elizabeth

8    Broadway Brown.  Also with me in the courtroom, Kelley Barnaby,

9    Andrew Hatchell and Jean Richmann from Alston and Bird, and I

10   believe that Brian Boone is also appearing on the phone.

11          THE COURT:  Any other defendants?  That means

12   everybody else represents the plaintiffs.

13          Let's start with County of Albany.

14          MR. BUCHANAN:  Good morning, Your Honor.  David

15   Buchanan, Seeger Weiss.  With me also from Seeger Weiss is

16   Christopher Seeger and Steve Daroci.  We represent a number of

17   the self-funded payers.  I'm not sure if you want for me to run

18   through those now.

19          THE COURT:  Please.

20          MR. BUCHANAN:  County of Albany, Lake County,

21   Illinois, Monmouth County, which is not technically transferred

22   over yet.  I think it's in Trenton currently.  We'll discuss

23   that I think at some point today.

24          THE COURT:  Judge Singh used to be in Trenton and

25   we'll get it up here.

1          MR. BUCHANAN:  Among others.  We have co-counsel

2    obviously, if you'd like me to introduce those, I could.  From

3    Levin Papantonio Rafferty, Mr. Rafferty and Mr. Bogle.  From

4    the Kozyak firm we have Ben Widlanski, and from Baron and Budd,

5    Mr. Pifko and Roland Tellis.

6          THE COURT:  Cleveland?  Jackson County?

7          MR. DAMERON:  Good morning, Your Honor.  Matt Dameron

8    from Williams Dirks Dameron on behalf of Jackson County.  With

9    me in the courtroom is my law partner Michael Williams.  Also

10   with me is Michael Angelides from Simmons Hanly Conroy.  Thank

11   you.

12         THE COURT:  Bossier Parish.

13         MR. IRPINO:  Bossier Parish, Your Honor (pronounce).

14         THE COURT:  Sorry, I grew up in New Jersey.

15         MR. IRPINO:  That's okay.  It's southern.

16   Anthony Irpino representing Bossier Parish and the great state

17   of Louisiana.

18         THE COURT:  I would have said Bossier but I thought I

19   would sound smart and say Boseeay (pronounce) and everyone knew

20   what I was talking about.

21         MR. IRPINO:  You sound smart anyway.

22         THE COURT:  Thank you.

23         Cattaraugus County.

24         MR. BADALA:  Good morning, Your Honor.  Salvatore

25   Badala from Napoli Shkolnik, for Cattaraugus County.  I'm also

1    here with my law partner, Shayna Sacks.

2              THE COURT:  State of Montana and others.

3              MS. CICALA:  Good morning, Your Honor.  Joanne Cicala

4    from the Cicala Law Firm.  I'm here on behalf of the States of

5    Arkansas, Illinois, Kansas, Mississippi and Montana.  Also,

6    Your Honor, from our position statement we've informed the

7    Court that we also represent Kentucky, Utah, Virginia,

8    Tennessee, South Dakota, and Nebraska.  They have yet to file

9    but will be filing.

10             I'm here with my law partner Josh Wackerly.  Also here

11   with my co-counsel from Liston & Deas, Lawrence Deas and

12   William Liston.  Also here with my co-counsel from Forman

13   Watkins, Trey Watkins and Tanya Ellis.  And then from the David

14   Nutt firm, who's also co-counsel with the state AGs, I'm here

15   with Matt McDonald.

16             Thank you, your Honor.

17             THE COURT:  Thank you.  Have we gotten all the MDLs

18   and tag-along matters so far?

19             MR. CECCHI:  Good morning, Your Honor.  James Cecchi.

20   We represent, in the MDL, along with my co-counsel Mr. Berman,

21   Local 25.

22             THE COURT:  Okay.

23             MR. CECCHI:  And also, I would note that this morning

24   another complaint will be filed in the MDL by Joe Meltzer from

25   Kessler Topaz, Local 592 Cement Workers.

1    THE COURT:  I think that hit the docket this morning,
2    if I'm not mistaken.
3    MR. CECCHI:  It may have, Your Honor.  I don't know.
4    MR. BUCHANAN:  Your Honor, I'm advised there was a
5    filing last week for King County, that's Seattle, that should
6    be on its way here, I suspect soon.  I believe there were three
7    other filings by the Napoli firm in the last week.  I think
8    they're being tagged and sent over.  I don't have those case
9    file names but we can get those to the Court.  And I believe
10    there's one other I'm going to add to that list and provide it
11    to the Court after the conference.
12    THE COURT:  Sir?
13    MR. KO:  Your Honor, I can speak on behalf of King
14    County.
15    THE COURT:  Your name?
16    MR. KO:  David Ko of Keller Rohrback, here with my
17    partner Derek Loeser.  We represent King County.  Filed it last
18    Thursday.  Yesterday I believe it was transferred.
19    THE COURT:  Okay.  Thank you.
20    MR. CICALA:  Your Honor, there may be one other
21    plaintiff group that hasn't been addressed yet, the direct
22    purchasers.
23    THE COURT:  Oh, we're going to get to them.  They have
24    been hanging around for a while.
25    MR. BADALA:  Your Honor, Salvatore Badala again.  You

1  mentioned about three other cases that our firm filed.  That's

2  Cortland County, Livingston County, and Steuben County.

3         THE COURT:  Now I'm going to refer to these as the New

4  Jersey actions.  There's the Indirect Purchaser Consumer Act.

5         MR. CECCHI:  Good morning, James Cecchi again, Your

6  Honor.  We like to refer to that as the original action because

7  it started when Judge Fake was here so --

8         THE COURT:  Okay.  MSP?

9         MR. BETRAN:  Good morning, Eduardo Betran on behalf of

10  Recovery.  With me is Glenn Reiser and that's it.

11         THE COURT:  Okay, Minnesota.  I think they were having

12  travel issues.  I permitted them to appear telephonically.

13         Is someone representing Minnesota on the phone?

14         MR. PLEGGENKUHLE:  Yes, Your Honor.  I apologize for

15  the travel problems.  And thank you for allowing us to appear

16  telephonically.  Assistant Attorney General Jason Pleggenkuhle

17  on behalf of the State of Minnesota.  I'm joined on the phone

18  by my colleague, Assistant Attorney General Noah Lewellen.

19         THE COURT:  Welcome.

20         Indirect purchaser, FWK Holding.

21         MR. GATELY:  Your Honor, direct purchasers.

22         THE COURT:  I'm sorry.  I read it "indirect."  It's In

23  Re: Direct Purchaser.  My apologies.

24         MR. GATELY:  Yes, Matthew Gately, Cohn Lifland.  With

25  me today are several attorneys.  Michael Tarringer, Dianne

1    Nast.  Also I believe Michael Roberts is on the phone as well

2    who is also co-lead.  Michael Fischbein is here as well.  And I

3    apologize if I missed anybody else but I took my glasses off.

4        THE COURT:  Have we missed any counsel or any entity

5    that's either a plaintiff or a defendant?

6        MR. DUGAN:  Your Honor, James Dugan on behalf of also

7    Local 25.  My friend Mr. Cecchi up in the front there probably

8    didn't notice me in the back but I'm here on behalf of Local

9    25.  Thank you for having me, Your Honor.

10        THE COURT:  Thank you.

11        MS. REICHARD:  Your Honor, Joyce Reichard on behalf of

12    Kelley Ferraro, LLC.  We represent Cayuga County, Ohio, which

13    is in the process of being transferred.  Thank you.

14        THE COURT:  Anyone else?

15        Again, welcome.  As you can see and hear, this is a

16    pretty unwieldy matter at this point.  The goal is to get

17    everyone on the same page, or at least in the same chapter, to

18    move this matter expeditiously.  I understand that the New

19    Jersey matters are further along than some of the recent

20    matters that were filed under the MDL.

21        Clearly we are going to coordinate for purposes of

22    discovery.  A significant amount of discovery has been done in

23    the New Jersey matters.  I anticipate, and it was referenced in

24    the order, that that discovery will be shared.  The question is

25    how it's going to be shared and when it is going to be shared.

1          Mr. Cecchi, you have taken the laboring oar in some of

2     that discovery.  Where are you?  Where are we?  And how do we

3     disburse this among other plaintiffs?

4          MR. CECCHI:  Thank you, Your Honor.  I think it goes

5     to the question of organization of the MDL.  As Your Honor

6     indicated, it's sort of a sprawling tableau right now.  But

7     there's been a lot of conversations between the various counsel

8     representing the various silos or tracks.

9          THE COURT:  Right.

10         MR. CECCHI:  Our proposal would be as we said in our

11    letter is to separate the MDL into those overlapping but

12    distinct tracks.  There would be the state track; there would

13    be the self-funded payers; there would be the class track

14    represented by Local 25 and others, and there would also then

15    be the consumer and the direct payers.

16         Counsel had discussed the best way to facilitate the

17    sharing of relevant discovery, depositions, et. al.  What we

18    will propose to Your Honor is the model that was utilized in

19    the *Opioids* case, i.e. a liaison committee that would have

20    representatives from the various tracks.  That would be

21    Ms. Cicala from the state track.  That would be Mr. Buchanan

22    from the self-funded payers, and it would be Mr. Berman and

23    myself.

24         That group would work to facilitate the orderly

25    distribution and sharing of all of the discovery, and to

1  coordinate ongoing discovery as those various tracks move

2  forward.  Because not every track is sued each of the same

3  defendants.  As Your Honor knows, the consumer track, the

4  original action, only sues the three manufacturers.  Many of

5  the self-funded payers have sued the manufacturers, PBMs and

6  others as has the state track.

7         So in terms of facilitating the quick and efficient

8  production, I think the liaison committee can meet and decide

9  and come up with a plan to do that.

10        THE COURT:  So for those of you who have not appeared

11 before me in an MDL, you will note that -- I'm sorry -- those

12 of you who did appear before me in the MDL can share with those

13 that did not, I take the position this is your litigation.

14 These are your clients.  You know how to best handle them.  The

15 best way myself and Judge Singh can help you is by staying out

16 of the way and letting you manage the litigation as you see

17 fit.

18        That being said, there will be parameters.  We will be

19 there to make sure it does not get out of control, and we will

20 be there to manage it efficiently and effectively.

21        One of the charges that the judge and I want is

22 diversity: diversity in leadership, diversity in liaison

23 counsel, and that is geographic, gender, ethnic, and

24 experience, and probably more.

25        I've been doing this for, gosh, 15 years and I see a

1   lot of familiar faces.  I like the familiar faces.  I've

2   enjoyed the familiar faces.  But it's time to have a new

3   generation of lawyers get experience in this matter.  Because

4   when you all are in your jets flying to your island, we expect

5   to have experienced counsel appearing before me.

6       And Judge Singh and I are committed to that.  We are

7   committed to giving those counsel an opportunity to argue

8   motions that perhaps may not otherwise be argued.

9       So on the plaintiffs' side of the V, when you are

10  filling out those committees, please keep that in mind as you

11  do that.  We will not veto a committee but we certainly have

12  authority to do that if we see fit.

13      MR. CECCHI:  Thank you, Judge.  And we appreciate the

14  importance and the Court's perspective and the MDL perspective

15  on fostering the new generation in.  We've had a lot of

16  discussions about how we populate the leadership and the

17  committees within those tracks.  And Your Honor and Judge Singh

18  will certainly see that we're faithful to the objective of

19  bringing the next generation into these MDLs and leading them

20  going forward.

21      I think our proposal writ large will satisfy the

22  objectives that Your Honor outlined.  It will touch all of

23  those bases, experience and diversity.  I just want to note for

24  the record I do consider Italian Americans still to be a

25  distinct diverse group.  So when you get our proposal I want

1    you to consider that as well.

2              THE COURT:  Just not to get out over my skis, but just

3    to give everyone a heads-up, I would like plaintiffs' counsel

4    and defense counsel to designate someone who will be our

5    scrivener.  That person will prepare an order that will be

6    submitted to the Court after this conference, this and other

7    conferences, memorializing what occurred in the court.

8              I can tell you if you can't get me an agreed-upon

9    order as to what happened here within three days, what we used

10   to do is just make counsel sit here until they agreed upon an

11   order.  So you can either do it from here or from your offices.

12   But we want an order memorializing what happened in the

13   conference, where we're going with the next conference, sent to

14   us within three days.  If that may be too much because you may

15   need a transcript, we will certainly accommodate that.

16             MR. CECCHI:  Judge, we're familiar with that process

17   and we're happy to undertake it.  I'm confident we can get it

18   done in three days.  Maybe Ms. Walsh wants to volunteer on the

19   defense side to work with us.  She's smiling but I'm sure --

20             THE COURT:  Her eyes were not smiling.

21             MS. WALSH:  As the owner of a woman-owned firm, I

22   would be more than happy to do it.

23             THE COURT:  And can we just have a standing request

24   for an expedited transcript.

25             MR. CECCHI:  Absolutely, Judge.

1          THE COURT:  Sorry, Tammy.

2          Now, am I hearing correctly that the plaintiffs have

3    come to some agreement, perhaps not a memorialized formal

4    agreement, as to how they anticipate the silos and moving

5    forward?

6          MS. CICALA:  You are hearing that correctly, Your

7    Honor.  Joanne Cicala again on behalf of the State Attorney

8    Generals, yes.

9          THE COURT:  Is there anyone representing a plaintiff

10   that has a different opinion of that?

11         MR. GATELY:  Your honor, Matt Gately on behalf of

12   purchaser plaintiffs.  I'm not sure whether -- obviously the

13   devil is in the details.  Right.  I believe as to our group

14   there already is a leadership structure in place.  The Court

15   has already appointed co-lead counsel and liaison counsel for

16   the group.

17         So I just want to confirm with Mr. Cecchi when we are

18   talking about the leadership structure he's referring to the

19   other tracks if you will, but our track already has a

20   leadership structure in place.

21         MR. CECCHI:  One hundred percent.  And the direct

22   purchasers are not actually formally part of the MDL.

23         MR. GATELY:  Yes.

24         MR. CECCHI:  And we have no intention, there's been no

25   discussion or desire to upset the direct purchaser apple cart

1  in any way.  So we would anticipate to the extent there is a

2  need, I don't think the direct purchasers are nearly as far

3  along in discovery as the consumers are, so we would anticipate

4  that there would be potentially some need to coordinate going

5  forward, and that would be under the auspices of what I'll call

6  the *Opioid*-Style liaison committee.

7            THE COURT:  Okay.  Is that agreed?

8            MR. GATELY:  Your Honor, obviously we would have to

9  see what the exact proposal is.  But some of this is the first

10  I've sort of heard of this saying that the plaintiff groups are

11  totally in agreement.  You know, some of this is news to me,

12  Judge.  But again I think the plaintiffs don't need to waste

13  the Court's time.  We can discuss it.

14            MR. CECCHI:  What I can represent, Judge, is there is

15  unanimity on all the plaintiffs' groups who are actually in

16  this MDL.

17            THE COURT:  Okay.  Is your case in this MDL?

18            MR. CECCHI:  Local 25, Mr. Dugan's client is in the

19  MDL.  We filed it here.

20            THE COURT:  How about the other case?

21            MR. CECCHI:  The consumer --

22            THE COURT:  The one that was filed before Judge Fake.

23            MR. CECCHI:  The Judge Fake case is not formally

24  within the MDL.  Mr. Berman and I are, I would say agnostic

25  about whether it should or shouldn't be, because there's

1  ultimately going to be coordination between the information

2  from that case and the MDL.  So we're agnostic.  It's not

3  formally in now and at some point today we'll talk about some

4  of the benchmarks that we would like --

5          THE COURT:  So let me just say this.  Informally

6  everybody is in the MDL.  Okay.  Are you going to get an order

7  pursuant to the footnote?  Probably not.  But it's form over

8  substance.  Okay?

9          Understanding that some cases are way out ahead of

10  other cases, but I think those cases could be the bellwether or

11  benchmarks for resolution or for adjudication on some issues.

12  So we're all in this together until we're not.

13          MR. CECCHI:  We agree, Your Honor.

14          MS. CICALA:  May I may a few remarks that may be

15  helpful for the Court.

16          THE COURT:  Sure.

17          MS. CICALA:  What the direct purchasers have in common

18  with the state attorneys general is that they too have named

19  both manufacturers and PBMs as defendants.  So I do want to

20  make that distinction for the Court because it is an important

21  one.  To the state cases, the county cases, and the direct

22  purchaser cases, all have both PBM and manufacturer defendants.

23          THE COURT:  Right.

24          MS. CICALA:  In addition, the state cases, the direct

25  purchaser cases, and the county cases are not focused only on

1    type 1 treatments but also the whole suite of diabetic

2    treatments, including the type 2 drugs, Trulicity, Victoza, et

3    etcetera, which are -- there's a huge volume in those drugs,

4    they are used widely throughout the country, Your Honor, and

5    they're squarely part of the state, direct purchaser, and

6    county allegations.

7           So discovery will have to be conducted on those type 2

8    drugs, and discovery has to be conducted with regard to the

9    role of the PBMs.  The states have already begun discovery,

10   Your Honor.

11          I want to make sure the Court understands that,

12   because I'm hearing your remarks regarding how advanced the

13   consumer class may be, but I want the Court to understand that

14   the State of Mississippi is already through its motions to

15   dismiss and has commenced discovery.  It has received

16   substantial productions from the defendant manufacturers and

17   begun discovery from the PBMs as well.  It has also issued

18   subpoenas, has even taken depositions, Your Honor.

19          So discovery is underway and we have our own state

20   Attorney General database organized with the materials

21   collected thus far.  That database can easily be organized in a

22   manner that permits others from different tracks to access and

23   utilize those materials which will be necessary for every case

24   in which PBMs and type 2 drugs are also included.

25          I did want to make sure the Court was aware that there

1  was this activity and those cases that have named both

2  defendants groups so the Court does not have a misimpression

3  that no work has yet been done by the state AG.

4         THE COURT:  And, likewise, some of the discovery there

5  can be beneficial to your other plaintiffs and the discovery

6  from Mr. Cecchi's group can be beneficial to you and to the

7  other plaintiffs.  So you are going to --

8         MS. CICALA:  We can identify efficiencies, Your Honor.

9  We're committed to doing that, absolutely.

10        THE COURT:  So you are going to meet and confer among

11  plaintiffs' groups to discuss the exchange and method of

12  exchange of previously produced discovery so we're not

13  reinventing the wheel.

14        MS. CICALA:  Yes.

15        THE COURT:  Understanding that one size may not fit

16  all.

17        MS. CICALA:  Indeed.  Naturally we'll need to work

18  through protective order issues that are important, but we are

19  pleased to be able to report that we have a database

20  constructed that can accommodate the productions we anticipate,

21  including all of the sales and transactional data that will be

22  necessary.

23        And it's a database that can be organized in a manner

24  that, where there are separate confidential partitions so to

25  speak among the data so each track can be accessing only what's

1    appropriate for them, and yet sharing anything that is

2    crosscutting where the protective orders permit that.

3         THE COURT:  Okay.  Mr. Buchanan.

4         MR. BUCHANAN:  Good morning, Your Honor.  David

5    Buchanan again for the self-funded payer group.  I'm first

6    advised that people on the phone can't hear.  I think perhaps

7    we're on mute at the moment.  I just want to address that.

8         THE COURT:  Can you hear us on the phone?

9         MR. GATELY:  Hello.  I'm sorry, I received a text

10   message from one of the co-counsel.  Your Honor, we can

11   proceed, I don't want to interrupt.

12        MR. BUCHANAN:  I stood up, Your Honor, just to say we

13   have broad alignment certainly in the self-funded payers.  At

14   this point there's probably 13 to 15 on their way here.  There

15   will probably be dozens over the next several months that

16   continue to be filed based on what we've heard from co-counsel

17   and also clients, so the track will be growing.

18        We are aligned certainly with coordinating with

19   Mr. Cecchi with the work that's already happened here, together

20   with other work that's been done elsewhere.  We're mindful of

21   the need for efficiency given what is a very strong MDL.  Happy

22   to leverage orders that have already been crafted to the extent

23   they can just be borrowed or supplemented.

24        As Ms. Cicala noted, in our track we've named others

25   other than manufacturers.  PBMs for example.  The claims are

1    also slightly different so there will be nuances to our

2    discovery that we need to supplement with regard to what's

3    already happened.  But we're committed to working that through,

4    Your Honor, within the next couple of weeks to see really what

5    needs to be supplemented.

6            But I did want to confirm that Your Honor, that you

7    had, yourself and the Court had alignment with the approach of

8    separate tracks, because I think that will aid us in moving

9    forward with the conferrals with other tracks to see what's

10   been done and what we can borrow, and to that end, submitting

11   leadership consistent with Your Honor's guidance.

12           THE COURT:  Right.

13           MR. GATELY:  Your Honor, if I may just again, Matthew

14   Gately on behalf of the DPP class.  I believe the state AGs

15   have already circulated to -- we had an existing DCL NESI

16   protocol, but we are more than willing to take what the states

17   are using and hopefully try to reach agreement amongst all

18   counsel --

19           THE COURT:  Is that attached to the submission, the

20   proposed orders?

21           MS. CICALA:  Yes, Your Honor.

22           MR. GATELY:  And I think Your Honor wants the, if all

23   the plaintiffs' groups or at least the plaintiffs' groups who

24   opt in to whatever the agreed-upon order is, we can then use

25   the state AG's Everlaw database or whatever it may be.  And

1   we're not, this idea of repositories or where documents need to

2   be kept, this isn't -- there's not going to be boxes of

3   documents somewhere.  It's literally a flick of the switch for

4   the defendants to send over to the AG's office all of the

5   discovery that has already been produced in the indirect case

6   once everyone is in agreement with the defendants, of course,

7   as to what the protective order should be.

8          And I think that will, you know, whatever the

9   discovery is in any of the cases, the way that any of the

10  plaintiffs can guarantee to their clients that the discovery is

11  appropriate is to see that discovery first.

12         So I think an efficient flow of information between

13  the cases is honestly what's going to drive things to actually

14  move forward.

15         THE COURT:  I don't disagree with that, but I also

16  think that the most important part of today's conference is

17  getting individuals in place to shepherd this through.  Because

18  the coordination is only as good as those who are facilitating

19  it.  So that is really important as far as my concern.

20         And one of the parts of the order is going to have

21  that plaintiffs' counsel shall meet and confer and submit to

22  the Court a proposed leadership and liaison committee.  Also,

23  plaintiffs' counsel shall designate an individual to work with

24  defense counsels' counterpart to craft orders after case

25  management conferences, to submit an agenda prior to case

 1    management conferences, and to be an individual that the Court

 2    can call or reach out to and spread that information on your

 3    side of the V.

 4         I didn't forget about the defendants.  Don't worry,

 5    we're going to get to you in a few minutes.

 6         And I think the leadership and liaison is the most

 7    important.  Meet and confer regarding the exchange of

 8    previously produced discovery, including orders, protective

 9    orders, ESI orders, search terms, whatever is out there.

10         Just to let you know, Judge Cavanaugh has been

11    appointed as a special master in one of the cases.  Judge Singh

12    has been working intimately with counsel in the case that

13    Judge Quraishi had.

14         That's your case?  Is that your case?

15         MR. GATELY:  Yes.

16         THE COURT:  So we can all coordinate that.  What else,

17    Mr. Cecchi?

18         MR. CECCHI:  I have nothing on my agenda specific to

19    the MDL.  We do have a number of items I think on the consumer

20    agenda.

21         THE COURT:  That's going to be --

22         MR. CECCHI:  -- later.  Following up on Your Honor's

23    point, counsel have conferred and we're prepared to populate

24    the leadership structures in the silos and make those

25    recommendations to Your Honor and Judge Singh.  We've already

1  outlined our, in terms of the best mechanism to coordinate

2  as -- not necessarily fully aligned on the database issue, but

3  we'll work that out in terms of facilitating --

4           (Conference phone sound interruption)

5           MR. CECCHI:  We will work that out.  We'll meet and

6  confer and we're all on the same page in getting the best

7  system in place to move the matter forward efficiently.

8           MS. CICALA:  I would just add to that, Your Honor, my

9  co-counsel and I are very pleased to serve in that role as

10 scrivener, as point person for the Court in this MDL.  My state

11 clients are those who requested that this MDL be formed.  It

12 seems appropriate that whoever serves in that scrivener role

13 is -- represents parties who have sued both PBMs and the

14 manufacturers and whose claims concern the full suite of

15 diabetic treatments that are at issue in this MDL.  So I just

16 wanted to officially put our hands up.

17          THE COURT:  I appreciate that and that's going to be

18 your pitch to your co-counsel over there.  And I'm sure nobody

19 is going to fight to take the pen away from you.

20          MS. CICALA:  Thank you.

21          THE COURT:  Probably a good time to shift to the

22 defense regarding leadership liaison, scrivener.  Candidly when

23 I approached this my thought process was that the defendants

24 were going to come in unified.  Having read the submissions, I

25 think there's perhaps not as much unanimity as I had hoped.

1          So who wants to pick up for defense, either

2    manufacturers or others?

3          MR. POTISCHMAN:  Your Honor, Neal Potischman for Novo

4    Nordisk.  We've done the best we can to coordinate, both within

5    the manufacturer group and within the broader defense group.

6    There are differences in interest, Your Honor, on some issues,

7    and that's to some extent unavoidable.

8          With respect to leadership, our inclination, if

9    Your Honor is willing, is to have a steering committee with a

10   single representative from each of the six defendants, or

11   defendant groups in the case of the PBMs, who would serve in

12   that role.  That's partly, Your Honor, because each of our

13   clients believes they have a very significant interest in how

14   these matters proceed and on all the steps to get there.

15         If Your Honor feels strongly that there needs to be

16   liaison counsel on the defense side, I think collectively our

17   position is there should be at least one for the manufacturers

18   and at least one for the PBMs, because there's significant,

19   even more significant differences in interest between those two

20   groups.

21         And whatever Your Honor determines on this issue, I

22   think all of the defendants are prepared to move relatively

23   promptly to make a proposal to Your Honor.

24         THE COURT:  So, candidly, the Court is not concerned

25   what happens outside of people interfacing with me.  You can

1    have a committee of 1,000.  If it comes down to two, that's

2    better.  One is even better.  Understanding the difference

3    between the manufacturers and the nonmanufacturers.  So if you

4    could come up with a steering committee, get 1,000 people on

5    it, but just give me one and one liaison, and the liaison will

6    work with plaintiffs' liaison.  Is that fair?

7            MR. POTISCHMAN:  Your Honor, that's understood.  We'll

8    have to talk to the group but I suspect we'll have absolutely

9    no issue.

10            I just would reiterate, because I suspect there are

11    clients who will feel this way, that it is important for I

12    think each of the six entities or families to sort of be in the

13    room where it happens in terms of substance, but we understand

14    your direction and we'll obviously meet it.

15            THE COURT:  And as you did in this submission you can

16    say:  We have unanimity here.  Here's where we are different.

17    And that's fine.  But to the extent it talks about a

18    deposition, you know, I mean it is what it is.  We're not going

19    to have six lawyers taking the deposition of someone.  Maybe we

20    will, but I can't see it.  That's frankly Judge Singh and

21    Judge Cavanaugh.

22            MR. POTISCHMAN:  Understood, Your Honor.  We'll follow

23    up with the submission with respect to leadership on the

24    defense side.

25            THE COURT:  Okay.

1          MR. POTISCHMAN:  Unless anybody on the PBM --

2          MS. MAINIGI:  Your Honor, Enu Mainigi on behalf of

3    CVS.  But we essentially concur with what Mr. Potischman has

4    said.  I think we do -- it sounds like, Your Honor, with

5    respect to the liaison counsel that you view that as more of an

6    administrative goal.  And I think that makes perfect sense and

7    I think we're fully on board with that, and we'll come to

8    agreement among the defense group as to how that would proceed

9    ultimately.

10          I think as far as the substantive issues as we get to

11    the point where agendas get put forward for the next

12    conference, I think that in other MDLs, for example, some of us

13    are veterans of that MDL, I think the defense group with a lot

14    more defendants I think did a very good job of making sure

15    there was a point person for each agenda item.

16          So it may be different people from different groups

17    are speaking at different points, but we completely understand

18    the need for efficiencies and to really try to consolidate

19    before the hearing before Your Honors to get particular

20    positions put forward, recognizing that once in a while there

21    is a disparity even among particular defense groups.

22          THE COURT:  Okay.  Everybody in accord with that?  And

23    who is going to be your self-appointed scrivener if Ms. Walsh

24    declines the appointment, or if her office declines the

25    appointment?

1          MS. MAINIGI:  Your Honor, Mr. Tortorella can do it for

2     us, if others are okay with that.

3          THE COURT:  Is that okay?

4          MR. CECCHI:  Only if Mr. Marino actually does it,

5     Your Honor.

6          THE COURT:  And as far as the exchange of discovery,

7     really not pertinent on your side at this juncture.  You have

8     everything that's been produced and will be produced.

9          MS. PATTERSON:  Excuse me, Your Honor.  Melissa Lim

10    Patterson on behalf of Sanofi.  We have indeed produced all of

11    the consumer class action documents to several of the

12    plaintiffs' groups, the ones that have already entered

13    discovery.  In terms of the discovery that we've received from

14    plaintiffs, it's been relatively limited, which animates our

15    proposal for moving for bilateral discovery for, as we move

16    forward with this matter.  We're more than happy to meet and

17    confer with the plaintiffs as to how that looks.

18         THE COURT:  Okay.  So after meet and confer among

19    plaintiffs regarding discovery, a meet and confer between

20    counsel regarding discovery and discovery moving forward.

21         MS. PATTERSON:  Yes, Your Honor.

22         THE COURT:  So Jennifer can correct me if I'm wrong on

23    this, we had a conversation with the Clerk's Office regarding

24    the filing of documents on the record or on the docket.  If it

25    is a case-specific docket filing, that goes to the case.  If it

1    is something that deals with -- go ahead.

2            MS. FIORE:  Anything related to the overall master

3    docket should be obviously on the master docket.  If you are

4    filing something specific to your individual case on the

5    docket, please keep it on the member docket.  When you are

6    filing a new case still file on the member docket.  But if you

7    need to be part of the MDL, the Clerk's Office will take care

8    of the administrative side of getting your information onto the

9    master docket.

10           Member cases should be limited to the member cases.

11   If there's some overlap, we recommend you speak to the

12   soon-to-be appointed liaison counsel.

13           THE COURT:  So when you submit the order, just leave

14   an area filing master docket versus member docket, and we'll

15   have language in there that the Court provides that we'll get

16   from the Clerk's Office just to make sure it's accurate.

17           *Pro hac* motions, Jen.

18           MS. FIORE:  *Pro hac* motions do not need to be filed.

19   The case management order dealt with essentially directing all

20   of them right off the bat.  We're still working with the

21   Clerk's Office to figure out the filing of a fee for that, so

22   stay tuned regarding fees.

23           THE COURT:  Typically, the knee-jerk is a master

24   complaint and a master answer in these MDLs.

25           Is this a case that cries out not for having one?

 1          MS. CICALA:  My clients, the State Attorney General,

 2    their perspective would be yes, Your Honor.

 3          THE COURT:  Not to have one or to have one?

 4          MS. CICALA:  We do not need one.  Each of my states

 5    that I have filed already, again Arkansas, Illinois, Kansas,

 6    Mississippi, and Montana, they each filed their operative

 7    pleadings.  Four of those states have fully briefed motions to

 8    dismiss.

 9          THE COURT:  We'll get to those.  Don't worry about

10    that.

11          MS. CICALA:  But we're not adjusting the pleadings,

12    Your Honor.  There's no need to revisit the briefing from our

13    perspective and then Mississippi, as I mentioned, is already

14    three motions to dismiss into discovery and it has no intention

15    to amend the pleading there.

16          THE COURT:  Okay.  How about defense?

17          MR. MOORMAN:  Your Honor, Ryan Moorman again on behalf

18    of the manufacturers.  Speaking for the manufacturers at least,

19    we're in agreement there should not be master complaints in

20    this case.  I know we'll get to motions to dismiss in a moment

21    but that's one of the reasons.

22          MR. BUCHANAN:  Briefly, Your Honor.  The plaintiff

23    self-funded payer class are individual cases are much more akin

24    to a traditional mass tort model.  They're different as well

25    because they're largely under state law and the laws can vary

1  and they have tailored allegations as to representations.

2      But we've discussed and we think there may be some

3  benefit to an administrative complaint that's filed for that

4  track for the benefit of what could be hundreds or more

5  self-funded payers.  Municipalities, union health and welfare

6  plans, etcetera.

7      MR. SCHERR:  Your Honor, J.R. Scherr, Morgan Lewis &

8  Bockius.  We represent Express Scripts.  And while I believe I

9  am speaking on behalf of all PBMs, but this is certainly

10  Express Scripts' position, that prior to Mr. Buchanan's

11  representation I thought we were all in accord that we would

12  not be -- that we would not have a need for an omnibus

13  complaint or administrative complaint.

14      And with respect to the county and city cases, it

15  seems to us that we have a representation now in the cases that

16  have already been filed that presents sufficient clarity and

17  sufficient issues available for the Court to consider through

18  motions based on what's here, and we candidly don't want to put

19  that off.

20      And so we have serious concerns about the delay and

21  the potential confusion associated with trying to put together

22  a single master complaint to cover what Mr. Buchanan identified

23  as a number of disparate issues across those cases.

24      So for Express Scripts, and I believe for the PBM

25  defendants and perhaps, correct me, for all defendants, we're

 1   really more inclined toward Ms. Cicala's suggestion that we

 2   stick with the complaints that we have and proceed accordingly,

 3   as we suggested in our written submission.

 4        MR. BUCHANAN:  I'm surprised at the surprise.  It's

 5   not something that we actually went through when we spoke.

 6   But, Your Honor, we're not limited to the number of states here

 7   in terms of the number of complaints that are going to be

 8   filed.

 9        With regard to Ms. Cicala's AG cases or other AG cases

10   that come in, there's a limited universe there.  We think it's

11   going to be a much broader number and a consistent framework

12   across those may benefit the Court.  It sounds like it's more

13   of a concern with regard to briefing and a desire for the

14   briefing to proceed on some type of expedited schedule.

15        But we think the framework for the Court and all of us

16   would benefit from an administrative framework with supplements

17   at it relates to each self-funded payer's claims.  It's

18   something frankly, Your Honor, we didn't have your guidance as

19   to whether these are proceeding in a track-wise fashion, was

20   endorsed by the Court and the leadership that we proposed had

21   been accepted by the Court.  But that is in our, working within

22   our working group of the proposed co-leads.  It's something

23   that we would anticipate presenting to the Court after that's

24   approved.

25        THE COURT:  I'm not going to address this issue at

1    this time.  I'll reserve on whether or not there should be a

2    master complaint.  Let's see how this shakes out.  Let's see

3    what comes from your side of the V and we'll move forward.

4           Just to get to the end of the conference, all pending

5    motions to dismiss are terminated without prejudice, to be

6    refiled at a later date.  You can refile them as a fully

7    briefed, completed motion packet.

8           I want this setup structured first before we get into

9    any substantive dismissal applications at this point.  I know

10   there were a bunch filed, but I want to get this on track

11   before we start addressing motions.

12          MS. CICALA:  Your Honor, just for point of

13   clarification.  Are you saying, so the fully briefed motions

14   that are -- that were filed for each of the four state AG

15   cases?

16          THE COURT:  Are terminated administratively without

17   prejudice, to be reinstated once we set up the structure of the

18   MDL, of the case.

19          MS. CICALA:  It's our view, Your Honor, and I don't

20   know that this is inconsistent with what the Court is saying

21   but I do want to be clear, there's no need -- we don't need new

22   motions, the very motions that were already briefed.

23          THE COURT:  Right.

24          MR. GATLEY:  Your Honor, apologies.  Matt Gately again

25   for the DPPs.  Again, this is sort of we have the one foot in,

1    one foot out, just that pronouncement about the motion will

2    also apply to the MSP case or the DPP case?

3            THE COURT:  Yes.

4            MR. GATELY:  Okay, thank you, Your Honor.

5            THE COURT:  Frankly I didn't realize there were

6    motions filed when I told Judge Quarishi to send it up the

7    Turnpike.

8            MR. GATELY:  We left that out, Judge.

9            THE COURT:  Yes.  But we got Judge Singh so we got rid

10   of Judge Quarishi and we got Judge Singh so it's a win-win.

11           MR. GATELY:  No comment, Judge.

12           MS. CICALA:  If I may, Your Honor, does the Court have

13   a perspective on when the motions to dismiss for the four that

14   were fully briefed would be refiled in this court?

15           THE COURT:  As soon as you get this litigation

16   structured and I'm comfortable with the structure, then we'll

17   move forward with the motions.

18           MS. CICALA:  Thank you, Judge.

19           THE COURT:  Likewise, fact sheets.

20           MR. BUCHANAN:  Your Honor, we haven't had a 26(f) yet

21   with the defense.  I certainly welcome one.  I'm happy to

22   discuss all of those.  Their discovery to us, 26(a)(1)s,

23   etcetera, happy to have a full conversation on that, after as

24   you said, I think, after Your Honor's endorsed the track

25   structuring with the leadership worked out.

1          THE COURT:  And --

2          MS. MAINIGI:  Your Honor, speaking I think just on

3    behalf of CVS and I believe the other PBM defendants, we are of

4    the view, just stepping back on discovery, that if discovery is

5    going to proceed during the pendency of the motion to dismiss,

6    which we are fine with, that it ought to be both ways.

7          And so we would like to not be limited to fact sheets.

8    We're fine with fact sheets in addition to discovery.  But if

9    discovery is going to be ongoing during the course of -- during

10   the pendency of the motion to dismiss, we would prefer to

11   probably dispense with fact sheets and just get straight into

12   the discovery, with a coordination of the discovery so that the

13   written discovery would come first obviously and then

14   depositions and the like.

15         THE COURT:  So what we'll say, you are going to meet

16   and confer regarding the necessity of all the fact sheets as

17   well as the production and exchange of discovery requests.

18         MS. MAINIGI:  Thank you.

19         MR. BUCHANAN:  One point of clarification, Your Honor.

20   I know one of the meet-and-confer items earlier is conferring

21   on the documents that had been produced in the consumer case.

22         THE COURT:  This side.

23         MR. BUCHANAN:  Yeah, on the plaintiffs' side in

24   conferring regarding that we just need to bring, if you will,

25   the self-funded payers in the umbrella there and have

1   permission to access those materials to evaluate really the

2   ability to draw on those various silos.

3          We're not yet in discovery on the self-funded payers

4   and we may not be able to have the conferral Your Honor

5   anticipates but for the consent of the defense.  So we could

6   agree to adopt, if you will, on the interim basis the current

7   protective order for purposes of reviewing those materials.

8          MS. PATTERSON:  Your Honor, we're happy to meet and

9   confer further with the plaintiffs with regard to getting them

10  access.

11         MR. CECCHI:  Judge, we are as well on behalf of the

12  consumer group.  The discovery package, which I understand has

13  gone over to some of the parties here, was obviously the

14  product of many years of work, meet and confers.

15         THE COURT:  That's my next item.

16         MR. CECCHI:  Okay.

17         THE COURT:  Common benefit order.

18         MR. CECCHI:  Jim Cecchi on behalf of the consumer

19  plaintiffs.  Judge, not surprisingly, this order is of some

20  concern to Mr. Berman and myself.  As I was saying, many years

21  of work with Judge Cavanaugh and Your Honor to create that

22  package of information, both the discovery and the depositions,

23  which I assume some of the parties are going to want to have

24  access to, there's going to be some concern I think on the

25  defense side not necessarily to duplicate everything.  So we do

1    see a clear need for a common benefit order.

2         What I would suggest is that this group on this side

3    meet and confer, come up with a proposal and make a proposed

4    order to present to Your Honor.

5         THE COURT:  I want that done now, because what I don't

6    want to happen is next year when this case is resolved we're

7    working through the common benefit issues.

8         MR. CECCHI:  Thank you, Judge.

9         MR. GATELY:  Your Honor, if I may, just I think on

10   behalf of the DPPs, also the state AGs have taken the position

11   and the self-payers have taken the position as well, that while

12   the discovery produced in the consumer case is going to be

13   useful, the PBMs weren't defendants.  They are different as the

14   self-funded payer say, their discovery has to be taken relating

15   to misrepresentations by the PBMs.  There are different legal

16   claims.  There's a broader set of drugs.

17        And for all those reasons, Judge, I just -- and more

18   probably for Judge Singh's edification, I believe there are

19   going to be discovery disputes that are going to come to the

20   Court rather quickly about the defendants suggesting that, or

21   seeking to limit the amount of additional discovery we take.

22        But again, based upon these different drugs that

23   exist, the different claims, the different -- the fact that

24   there are different legal theories as well, there is going to

25   have to be significant additional discovery that's taken by all

1    of the plaintiff groups.

2         And of course we're already talking to the AGs, we'll

3    talk to self-funded payers and try to figure out a way to

4    coordinate that.  But, you know, unfortunately we can't just

5    take what the consumers did and just file motions at that

6    point.

7         THE COURT:  I don't think that's what was suggested at

8    all.

9         MR. GATELY:  Okay.

10        MR. CECCHI:  Not at all.  A, everyone understands that

11   there's additional defendants and additional discovery that has

12   to go forward.  If the direct payers who filed in 2020 and

13   they're just starting discovery don't want the work product

14   from the six years of the consumer case, that's their decision.

15   I'll let the defendants decide if they want to redo all that.

16   But if they don't want access to it, they don't have to sign

17   the common benefit order.

18        THE COURT:  And frankly my inclination is if you all

19   can't agree on how to get to a common benefit order regarding

20   the discovery that has been produced, then either you can go to

21   Judge Cavanaugh with it and Judge Cavanaugh can decide.  If you

22   think that may not be appropriate since he's deciding the other

23   side of the V issues, there is a treasure trove of individuals

24   who would welcome the opportunity to participate in lawyers

25   fighting over fees.

1          MS. CICALA:  Your Honor, just a couple of remarks.  I

2    agree with what Mr. Cecchi said.  Common benefit is something

3    that all counsel here are going to be interested in, on the

4    plaintiffs' side to be sure.  To be determined is how useful

5    the discovery that's been conducted so far is to the state

6    cases and the other tracks that are now in the MDL that include

7    a broader suite of drugs and include additional defendants.

8          To be sure, the team that is working up the PBM claims

9    and the type 2 claims will also be interested in common

10   benefit.  So I'm sure this is something that we can all talk

11   through together and we support getting this entered as soon as

12   the Court is satisfied.

13         MR. CECCHI:  We've reached common ground that we'll

14   talk through the issue.  I will just note for the record that

15   the underlying list price scheme, which was pled in the

16   consumer case in 2017, is the essential factual background of

17   every single complaint.  But we'll talk about it and I'm sure

18   we will be able to come to ground with Judge Cavanaugh's help

19   if we can't do it alone.

20         THE COURT:  So this is a unique situation where the

21   common benefit fund is essentially going to be front-loaded,

22   not on a rolling basis because of all the work that's been

23   done.

24         And I'm debating whether I should tell a war story.

25   When I was giving a seminar and lawyers were fighting over the

1  common benefit fund and the difference was between $500,000 and

2  a $1 million -- that's what the spread was -- and I reminded

3  them, again, I wanted to do this, I am honored that I'm doing

4  this, but the common benefit was in addition to their

5  attorney's fees so this was an addition because of what they

6  had done.

7       And I reminded the lawyers that they were talking to

8  someone that is on a fixed income, and that as far as I'm

9  concerned, plaintiffs' counsel is only entitled to one jet, and

10 after that they should find common ground.

11      So bear in mind that there has been -- and I say this,

12 that there has been a lot of work done in the consumer case.  I

13 read all of Judge Cavanaugh's opinions and I think that

14 advances the litigation.  So bear that in mind when you are

15 talking among yourselves.

16      Would the defense like to be heard on any of those

17 issues?  No?  I didn't think so.

18      So now we have pending before this Court a motion for

19 class certification that was scheduled for oral argument

20 several months ago, probably more than half a year ago.  On the

21 precipice of the argument, it was announced that there was a

22 settlement between plaintiff and one defendant.

23      I adjourned the class certification motion because I

24 wanted to work through the preliminary approval of the class

25 action which was filed.  And then there were intervenors

1    objecting who wanted to intervene in that application.

2         Let me hear from counsel regarding where we are

3    concerning preliminary approval and the intervenors.

4         MR. CECCHI:  Judge, I think we've fully briefed all of

5    the intervention issues.  The preliminary approval is fully

6    briefed so we're prepared to argue those issues consistent with

7    Your Honor's schedule.

8         Turning to the class certification, Ms. Walsh had sent

9    in correspondence and I think the defense Sanofi and Novo are

10   aligned with the consumer plaintiffs that, again consistent

11   with Your Honor's schedule, we're prepared to argue and in fact

12   anxious to argue those motions to move that matter forward.

13        THE COURT:  Anyone here representing those who are

14   intervening in that settlement?

15        MS. CICALA:  Yes, Your Honor.

16        THE COURT:  Anyone else?  Just you?  So I'm going to

17   direct that you go back to Judge Dickson.  You go back to

18   Judge Dickson -- who's on the other side of that, Lilly?

19        MR. ELLIS:  Your Honor, Robert Ellis for Eli Lilly.

20        THE COURT:  Go back to Judge Dickson and see if this

21   can be worked out.  I see no reason why it cannot.

22        Is that fair?

23        MR. ELLIS:  Yes, Your Honor.

24        THE COURT:  Okay.

25        MS. CICALA:  We're happy to do that, Your Honor.

1          THE COURT:  And Judge Dickson is not here, he's away.

2    Reach out to his office, try to get it on his calendar as soon

3    as possible.  If it works out, that's fine, we'll move forward

4    with preliminary approval; if it doesn't, then I'll hear the

5    motions and we'll move accordingly.

6          Subject to that, we will set up a date for oral

7    argument on the class certification.  Leave that blank in the

8    proposed order.  I'll put in a date and hopefully it works with

9    counsel.  But I would like that perhaps after the next case

10   management conference, if that works.

11         MR. CECCHI:  When is Your Honor's intention to

12   schedule the regular case management conferences?

13         THE COURT:  You are pretty good.  Did Jennifer give

14   you a copy of the agenda?

15         MR. CECCHI:  We've done this dance before, Judge.

16         THE COURT:  So what travel day works best for counsel?

17   And I would like to do it four to six weeks, every four to

18   six weeks.

19         So is Tuesday a good day to do these?  Those that

20   travel just jump up and say if it's a horrible day.

21         MS. CICALA:  Tuesday is good for the state.

22         THE COURT:  And how about those coming across Newark,

23   is Tuesday a better day than a Monday?

24         MR. BUCHANAN:  Tuesday works for the self-funded

25   payers.

```
 1              THE COURT:  Okay.

 2              MR. CECCHI:  Judge, just in terms of the class cert

 3    argument, I think again the defense and the plaintiffs in the

 4    consumer case are aligned.  If we could argue it, if there's

 5    any windows before the next case management or even on the same

 6    day.

 7              THE COURT:  Maybe the same day, because October is

 8    going to be tied up with a matter.  So maybe we'll shoot for

 9    November for the next case management conference and argument.

10    We'll do the case management at 10, argument at 2.

11              Does that work out?

12              MR. CECCHI:  Thank you, Judge.

13              MS. CICALA:  Your Honor, would this be argument on the

14    intervention motion?

15              THE COURT:  No, just the class.  Intervention should

16    be settled by then.

17              MS. CICALA:  I understand.

18              THE COURT:  Sir?

19              MR. ROUHANDEH:  Your Honor, James Rouhandeh.  If we

20    could confer, because we had conferred on the dates early in

21    October, dates that would work.  If we could confer on a

22    potential date in November where oral argument would work.

23              THE COURT:  Let's see what date we have in early

24    November.

25              MR. ROUHANDEH:  We can come up with a few for Your
```

1    Honor.

2            THE COURT:  Why don't you meet and confer and submit

3    some dates and then I'll try to accommodate.  October is going

4    to be a nightmare with a trial I have.

5            MR. ROUHANDEH:  We can propose three dates in November

6    if that would work.

7            MR. CECCHI:  Jim, why don't we see, respectfully, what

8    the Court has and then we'll try and align with the Court's

9    schedule.  Right?

10            THE COURTROOM DEPUTY:  The 14th.

11            THE COURT:  November 14th?

12            MR. ROUHANDEH:  I believe I'm out of the country.

13            MS. WALSH:  Judge, would you mind if perhaps we get

14    some dates?

15                    (Off-the-record discussion.)

16            MR. CECCHI:  When we are meeting and conferring, are

17    the remaining weeks in September off the table as well?

18            THE COURT:  Yes.

19            MR. CECCHI:  Thank you.

20            THE COURT:  So meet and confer, and then in 2024, can

21    we say the second Tuesday of every month, with some flexibility

22    of course?

23            MR. BUCHANAN:  I'm not sure if you are waiting for a

24    response from our side but that sounded great.

25            THE COURT:  Okay.

1          Anything further?

2          MR. MOORMAN:  Your Honor, Ryan Moorman on behalf of

3   Eli Lilly and Company.  It sounds like Your Honor wants to

4   table the motion to dismiss proposals that the defendants

5   purport.

6          I just want to make clear, Ms. Cicala twice suggested

7   that we are just going to resubmit the already briefed motions

8   to dismiss.  The manufacturers, I think that's an

9   extraordinarily inefficient way to proceed.

10          We had proposed basically a two-step process where we

11  tee up one of the motions to dismiss a county case.  Those

12  present certain threshold issues.  Your Honor would then just

13  have one motion to dismiss to resolve.  The generally

14  applicable issues in that motion to dismiss would then be

15  applicable to a lot of these other cases.

16          THE COURT:  What do you propose about the pending

17  fully briefed motions?

18          MR. MOORMAN:  We would rebrief those as well.

19          THE COURT:  I'm sorry?

20          MR. MOORMAN:  We would rebrief those as well.

21          THE COURT:  Why?

22          MR. MOORMAN:  Pretty streamlined.  There's, I think

23  part of the issue is judicious Third Circuit line now that

24  needs to be decided.  So it would be decided under the transfer

25  *Orr* court.

1          In addition, I think that those can be streamlined for

2     the Courts.  I think there's four or five motions to dismiss

3     pending.  Some might not have been fully briefed.

4          Consolidating those in a single brief I think would be

5     just less burdensome on both the Court and the parties.  We can

6     do it really quickly.  We share Ms. Cicala's goal of doing this

7     quickly.  I don't think this would take very long at all, but

8     we wouldn't just resubmit all five briefs, we don't think

9     that's optimal.  We agree, Your Honor, that the county cases

10    are different.  That's the track, if you will, for which we

11    think the two-step process is most beneficial.

12          MS. CICALA:  Your Honor, respectfully, that doesn't

13    make any sense at all.  It makes no sense at all for the state

14    cases, Your Honor.  The state claims are quite different than

15    the county claims.  Each state is proceeding only under its

16    state unfair and accepted trade practices statutes.  They are

17    purely state issues.

18          The fact the cases are now in the Third Circuit is

19    irrelevant to the briefing.  The briefing is done.  The state

20    has responded.  Defendants have replied.  They're fully

21    briefed, they're done, they're sitting there and they're ready

22    for adjudication, Your Honor.

23          There's no reason whatsoever this should be rebriefed

24    just because we now find ourselves in the MDL.  There are no

25    federal claims.  There are claims of Kansas law, Montana law,

1    Arkansas law, Illinois law, fully briefed and ready for

2    determination.

3            THE COURT:  So once they are placed back on the docket

4    after we have our structure, you can submit a letter

5    supplementing whatever has been filed, I'll permit you to do

6    that, for whatever new reason that you deem has come up since

7    they have been filed.

8            MS. CICALA:  And, Your Honor, could the states have a

9    brief reply to whatever that letter says?

10           THE COURT:  Yes.

11           MS. CICALA:  Thank you, Your Honor.

12           MR. MOORMAN:  I just add she just said there's no

13   reason.  I mean, it would reduce the paper like quarters of

14   magnitude.  I think there's all -- they differ from state to

15   state, but the core issues are all the same.  We think it's a

16   much more streamlined approach to have a single brief, but if

17   Your Honor wants to proceed, definitely we'll follow Your

18   Honor's guidance.

19           THE COURT:  I always get worried when lawyers talk

20   about streamlining.  It just means instead of having five

21   briefs like this, I'll have one brief like that.

22           MR. MOORMAN:  You'll have one brief like this.

23           MS. MAINIGI:  Your Honor, just to put CVS's position

24   and I believe it is also the other PBMs position on the record,

25   it's in the papers we submitted to Your Honor.  Our view on the

1    motion to dismiss briefing is slightly different than every

2    other group.  Our view is that we ought to do a consolidated

3    motion to dismiss, but we ought to do it for the county cases

4    first and then the AG cases, just so there's some staggering of

5    those.

6         But we do think that there would be some efficiencies

7    in doing a consolidated briefing, because we would be able to

8    deal with all the common issues one time as opposed to having

9    them briefed here in each and every brief.

10        THE COURT:  Well, again, I want to get this set up so

11   I can visually see what we have here.  My inclination now is

12   just to take those and have an argument and decide them.

13   That's not to say it may not change after I see how things

14   shake out.  But I want to get the structure up before we start

15   dealing with motion practice.

16        MS. CICALA:  Thank you, Your Honor.

17        THE COURT:  Fair?

18        MS. MAINIGI:  That's fine, Your Honor.  I think we

19   will need to put in place the schedule for the county, city,

20   self-funded payer cases because those --

21        THE COURT:  At some point we will.  We're not there

22   yet.

23        MR. BUCHANAN:  That's fine, Your Honor.  My silence is

24   not ascent but we'll address that in our meet and confer.

25        THE COURT:  Anything further?

1          We're going to consolidate, we're going to put counsel

2     on the state cases added to the MDL so you get notices.  And as

3     far as *pro hac*, counsel will be automatically prompted to pay

4     the fee but motions are not required.  So you need to pay the

5     *pro hac* fee.

6          Anything further?

7          MR. BUCHANAN:  Just one item, Your Honor.  Monmouth

8     County has filed -- was transferred to Trenton.  I think

9     Judge Quarishi has it.  The defendants consent I think to

10    bringing it over.  Because I note process-wise we can submit an

11    application I guess it would be to Trenton to get the case.

12         THE COURT:  If you want Judge Quarishi to get it here

13    quick, file some motions.

14         MR. CECCHI:  Can we get that transcript expedited?

15         THE COURT:  We do not have a date for the next case

16    management conference.  You are going to submit for the next

17    case management conference.

18         MR. SCHERR:  Your Honor, only one group, one

19    plaintiffs' group submitted draft ESI and confidentiality

20    orders.  I don't recall how they were characterized to the

21    Court but we understand that.  At least Express Scripts

22    understands that to be an area for meeting and conferring among

23    counsel going forward.

24         THE COURT:  Yes.

25         MR. SCHERR:  Thank you, Your Honor.

1          THE COURT:  Counsel, thank you very much.  We look

2    forward to working with you.  Again, this is your litigation.

3    Please understand that you have clients behind you and it's an

4    important case to them.  Move as efficiently as possible.  And

5    likewise, you have clients behind you that are looking forward

6    to good representation, which they are going to get.  And just

7    move forward and if we all coordinate, cooperate, we'll get to

8    a just resolution, whatever that may be.

9          MR. BUCHANAN:  Your Honor, I'm sorry to steal a punch

10   line for the last line.  I just got a note.  Your Honor

11   addressed a number of items that we would ordinarily address on

12   26(f) conference as topics of conferral among the parties.  I

13   know some of the parties have already had their 26(f)

14   conference.  The self-funded payers and certainly some of the

15   new cases have not.

16         With regard to that track, I just wanted to make sure

17   that the order would reflect those topics envisioned in 26(f)

18   are what we should be conferring among the parties.

19         THE COURT:  Yes.

20         MR. BUCHANAN:  Thank you.

21         THE COURT:  We are adjourned.

22         (Proceedings conclude at 11:16 a.m.)

23

24

25

1      ---------------------------------------------------

2          FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE

3

4          I certify that the foregoing is a correct transcript

5      from the record of proceedings in the above-entitled matter.

6

7

8      /S/ Tammera M. Witte, CCR, CRCR, RMR   Dated this 09/13/2023

9      Official U.S. District Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25