

Park 80 West-Plaza One    (201) 845-9600 Main
250 Pehle Avenue    (201) 845-9423 Fax
Suite 401
Saddle Brook, NJ 07663

njlawfirm.com

Matthew F. Gately, Esq.
mfg@njlawfirm.com
Direct Line: (551) 497-7189

March 6, 2024

**VIA ECF**

The Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Bldg. & U.S. Courthouse
402 East State Street, Room 7W
Trenton, New Jersey 08608

    Re:    Joint Letter Regarding Disputed Confidentiality Order Provisions
           *In re Insulin Pricing Litigation*, MDL No. 3080
           Case No. 2:23-md-3080-BRM-RLS

Dear Judge Singh:

Pursuant to Case Management Order No. 1, ¶ 7 (Dkt. 5 at 11), Your Honor's standing Civil Case Management Order, ¶ 6, and the parties' agreement, the parties submit this joint letter, which sets forth Plaintiffs' and Defendants' respective positions regarding the disputed provisions in the parties' proposed Confidentiality Order. A copy of the proposed Confidentiality Order—reflecting the outstanding disputed provisions in redline—is attached as Exhibit A.

**I.**     **INTRODUCTION AND SUMMARY OF THE ISSUES.**

Over the last four months, the parties have been negotiating a consolidated Confidentiality Order to govern the use and disclosure of confidential, proprietary, or private information in the

MDL.[1] As a result of those efforts, the parties reached agreement on most of the provisions in the proposed Confidentiality Order.

There are, however, two issues the parties could not resolve in their negotiations: (1) whether a limitation should be placed on the disclosure of Highly Confidential Information to non-record attorneys and staff employed by the Attorneys General and Local Government Plaintiffs who are involved in bid procurement activities relating to PBMs or PBM services in the MDL (Section 7.3(d)-(e)); and (2) the process to resolve disputes regarding the disclosure of Non-Parties' confidential information (Section 9(c)).

For the Court's benefit, the parties have attached a quick-reference chart listing Plaintiffs' and Defendants' respective proposed provisions (Exhibit B).

## II.  DISCLOSURE OF HIGHLY CONFIDENTIAL INFORMATION TO STATE ATTORNEY GENERAL AND LOCAL GOVERNMENT PLAINTIFFS.

### A.  Plaintiffs' Position.

The Parties agree that Confidential information may be disclosed, without any categorical restrictions, to staff and attorneys employed with State Attorney General Plaintiffs or Local Government Plaintiffs. Ex. A, § 7.2(d)-(e).  With respect to the disclosure of *Highly* Confidential information to the same group, however, Defendants seek to impose an unreasonable and unnecessary restriction.  Ex. A, § 7.3(d)-(e).

Under Defendants' proposal, State Attorney General and Local Government staff and attorneys who are not counsel of record would be denied access to *all* Highly Confidential information if they are "involved in … bid procurement activities relating in any way to pharmacy benefit managers or pharmacy benefit services." (*Id*.)  Defendants' proposed restriction applies

---

[1] Several of the parties had previously entered into stipulated confidentiality or protective orders in certain of the individual transferred cases.

2

without regard for the individual's role in bid procurement activities, the state agency at issue, or whether the Highly Confidential material is that of a PBM or a Manufacturer Defendant. Indeed, the restriction applies to any PBM bid procurement "activities" even if Defendants are not among the bidding PBMs. Such a restriction is grossly overbroad and entirely unnecessary.

During the Parties' negotiations, Defendants claimed they were concerned that State Attorney General and Local Government attorneys and staff may use Highly Confidential information to gain some type of "commercial advantage" in the PBM bid procurement process. Defendants' concern is belied by the fact that no such restriction was even raised by Defendants for inclusion in the *multiple* confidentiality orders entered in State Attorney General cases before MDL 3080 was formed.[2] In fact, a similar confidentiality order submitted by Defendants to a Puerto Rico court just last month in a related insulin pricing matter contains no such restriction on the Attorney General in that matter. *See* Exhibit C, §§ 2.3, 7.3(a), 7.4(a) (allowing disclosure of "Highly Confidential – Attorneys' Eyes Only" information to "Commonwealth Counsel as well as employees of Commonwealth Counsel").[3]

Further, the agreed-upon terms of the proposed Confidentiality Order make expressly clear that Protected Material, including Highly Confidential information, shall not be used for any purpose other than prosecuting or defending the action. Ex. A, § 7. In other words, confidential

---

[2] *See State of Mississippi, ex rel. Lynn Fitch, Attorney General v. Eli Lilly & Co.,* Case No. 23-cv-04364, Dkt. 174 at §§ 2.10, 7.3(a)-(b), 7.3(i) (D.N.J.); *State of Arkansas, ex rel. Tim Griffin, Attorney General v. Eli Lilly & Co.,* Case No. 23-cv-04239, Dkt. 136 at §§ 2.10, 7.3(a)-(b), 7.3(i) (D.N.J.); *State of Kansas, ex rel. Kris Kobach, Attorney General v. Eli Lilly & Co.,* Case No. 23-cv-04219, Dkt. 101 at §§ 2.10, 7.3(a)-(b), 7.3(h) (D.N.J.); *Minnesota v. Sanofi-Aventis U.S., LLC,* Case No. 18-cv-14999, Dkt. 90 (D.N.J.).

[3] The proposed Puerto Rico confidentiality order submitted by Defendants defines "Commonwealth Counsel" as "[a]ttorneys directly employed by the Commonwealth of Puerto Rico, including, but not limited to, attorneys directly employed by the Puerto Rico Department of Justice and their support staff." Ex. C, § 2.3.

information cannot be used to gain any sort of commercial advantage.  Defendants' purported concern is, therefore, baseless.  *See Jeddo Coal Co. v. Rio Tinto Procurement (Singapore) PTD Ltd.,* Case No. 3:16-cv-621, 2018 WL 1635153, at *4 (M.D. Pa. Apr. 5, 2018) ("[A]ny potential for misuse of arguably sensitive information contained within these documents may effectively be addressed by requiring" that it be treated as confidential and used "only in connection with this litigation."); *Scranton Products, Inc. v. Bobrick Washroom Equipment, Inc.*, 190 F. Supp. 3d 419, 436 (E.D. Pa. 2016) (finding that the potential harm resulting from disclosure was "minimal" where the protective order "prohibit[ed] Bobrick from using SP's Confidential or AEO documents and information to its competitive advantage," making SP's redactions "particularly unwarranted").

Defendants' argument in support of their proposed restriction is unsupported and illustrates the breadth of their proposed language.  As a threshold matter, Defendants have not shown good cause as to why such a restriction is necessary, particularly in light of the existing, agreed upon protections in the proposed Confidentiality Order.  The "party seeking a protective order over discovery material must demonstrate that good cause exists for the order."  *In re Avandia Mktg., Sales Practices and Products Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (internal quotation marks and citation omitted).  "Good cause means 'that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity.'" *Id*. (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)).  Further, "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Id*. (internal quotation marks and citation omitted).

In their argument, Defendants discuss a single hypothetical in which government attorneys and staff "directly responsible for negotiating PBM agreements" gain access to Defendants' Highly

4

Confidential information in this case, and then somehow "wield" that information to "unfairly influence the competitive balance in the marketplace for PBM services." According to Defendants, this will result in "serious and irreversible implications outside of this litigation." Other than these broad, generalized statements, there are no specific examples or articulated reasoning provided. Such conjecture and speculation cannot satisfy the good cause standard.

Further, Defendants make no attempt to explain how their proposed language is narrowly tailored, or even relates, to their stated concerns. The proposed restriction applies to all attorneys and staff with *any* involvement in PBM *bid procurement* activities – a far broader group than those "directly responsible" for PBM *contract negotiations*, as described in Defendants' argument. Nor have Defendants articulated how the existing, agreed-upon provisions of the Confidentiality Order are inadequate in this context. Specifically, existing provisions limit use of confidential information solely for purposes of the case and further limit disclosure to State Attorney General and Local Government attorneys and staff to those "who are reasonably necessary for the Action." *See* Ex. A, ¶¶ 7, 7.3(d)-(e).

Contrary to Defendants' contention, the cases cited in their argument do not involve "analogous contexts" – not even close. Rather, the cases relate to various issues surrounding existing protective orders in lawsuits between competitors. *See, e.g., Kia Motors Am., Inc. v. Autoworks Distributing*, 2007 WL 844674, at *2 (D. Minn. Mar. 19, 2007) (In a case involving "head-to-head" competitors, the court granted additional protections related to disclosure of the defendants' supplier lists due to the "very real concern that Plaintiff may be seeking this information only to use it to stop Defendants' suppliers from doing business with Defendants."); *Metris U.S.A., Inc. v. Faro Techs., Inc.*, 2009 WL 10694075, at *4 (D. Mass. Dec. 8, 2009) (court order in a patent infringement case granting a motion challenging the confidentiality designation

5

applied to a three-page email and suggesting, as a possible solution, that the parties' use of the email be solely for purposes of the case); *Basic Research, LLC v. Bdirect*, 2008 WL 11513365, at *2 (D. Utah Sept. 22, 2008) (order resolving a motion to modify an existing protective order in a lawsuit between competitors). In the case at bar, it is beyond dispute that the State Attorney General and Local Government Plaintiffs are not competitors of the Defendants, and they should not be treated as such.

In sum, Defendants seek to impose an unreasonable, unsupported, and unnecessary restriction on the State Attorney General Plaintiffs and Local Government Plaintiffs in the MDL. For the reasons stated herein, such a restriction should not be allowed.

B. **Defendants' Position.**

**Attorneys (except counsel of record) and staff involved in bid procurement activities relating to PBMs for state and local governments should not be given access to Highly Confidential Information.** Highly sensitive commercial and competitive information will be produced in this MDL, where many of the parties are competitors and counterparties with one another. Plaintiffs and Defendants agree that Highly Confidential Information may be disclosed to certain attorneys and staff employed by the various state and local government Plaintiffs, provided that "disclosure is reasonably necessary for the Action." (Ex. A, Section 7.3(d), (e)). Plaintiffs and Defendants disagree, however, about whether the provision should encompass *all* of those Plaintiffs' attorneys and staff. In particular, Defendants' position is that attorneys (other than counsel of record) and staff who are involved in bid procurement activities relating to PBMs or PBM services should not have access to Highly Confidential Information.

Rejecting this necessary and limited restriction, Plaintiffs insist on being able to share Defendants' Highly Confidential Information with the employees directly responsible for negotiating PBM agreements. Plaintiffs' proposal goes too far. Indeed, it would authorize

6

disclosure of Defendants' Highly Confidential Information to government attorneys and staff even if those individuals have *no involvement in these cases*. Providing such Highly Confidential Information to these employees would give Plaintiffs an unfair negotiating advantage when acquiring PBM services, at the PBMs' competitive expense. Bid procurement is, by its nature, a highly competitive activity. Under Plaintiffs' proposal, for example, the government attorneys or staff members negotiating with PBMs could obtain Highly Confidential Information regarding their counterparties' strategies for bidding and negotiating contracts. *See, e.g.*, Ex. A, Section 2.7. Wielding that trove of information, those government attorneys and staff members would be in a position to unfairly influence the competitive balance in the marketplace for PBM services.

Plaintiffs' position statement concerning this disputed provision is unpersuasive. Plaintiffs assert that, because the proposed Protective Order provides that "Protected Material shall not be used for any purpose other than prosecuting or defending the action … confidential information cannot be used to gain any sort of commercial advantage." For one thing, that only underscores why it is entirely inappropriate for Plaintiffs to insist on granting their attorneys and staff who are not counsel of record in this MDL access to Defendants' Highly Confidential Information. Procurement employees, like anyone else, cannot be expected to forget the commercially sensitive information they received in discovery from PBMs when they then later negotiate with those same PBMs. *See PepsiCo, Inc. v. Redmond,* 1995 U.S. Dist. LEXIS 19437, at *82–83 (N.D. Ill. Dec. 15, 1994) (once confidential material is shared, "it is impossible to unring [that] bell"); *id.* ("The disclosure of even a single trade secret is sufficient to cause irreparable harm … [O]nce disclosed, trade secrets and confidential information lose their secrecy forever and 'since the confidentiality of this information can never be regained, the [threatened] injuries would indeed be irreparable." (citations omitted)). Defendants' proposal provides a reasonable limitation on the disclosure of

7

Highly Confidential Information to exclude individuals who are in a position to use that information to Defendants' material disadvantage during the bidding process, without limiting disclosure to *any other* State Attorney General and Local Government staff and attorneys, or counsel of record. Far from being too restrictive, as Plaintiffs suggest, Defendants proposal is unlikely to hinder Plaintiffs in this litigation.

In analogous contexts, protective orders often contain "Outside Counsel Only" designations. *See, e.g.*, *Farouk Sys., Inc. v. Costco Wholesale Corp.*, 700 F. Supp. 2d 780, 788-89 (S.D. Tex. Mar. 22, 2010) (limiting disclosure of trade secrets "only to outside counsel"); *Wealthy Inc. v. Cornelia*, 2022 WL 5110620, at *5 (D. Nev. Oct. 4, 2022) (citing cases involving outside counsel only provisions). Those designations are necessary to guard against the "potential harm" of "exposure of [Defendants'] competitive sensitive information." *Basic Research, LLC v. Bdirect*, 2008 WL 11513365, at *3 (D. Utah. Sept. 22, 2008). In particular, outside-counsel's-eyes only provisions are appropriate when there are "very real concern[s]" about competitive harms, including that parties will "stop doing business or change the way they do business with Defendants." *Kia Motors Am., Inc. v. Autoworks Distributing*, 2007 WL 844674, at *2 (D. Minn. Mar. 19, 2007); *accord Metris U.S.A., Inc. v. Faro Techs., Inc.*, 2009 WL 10694075, at *2 (D. Mass. Dec. 8, 2009). Precisely so here. Allowing government personnel with responsibilities related to procurement to view Defendants' confidential information would have serious and irreversible implications outside of this litigation. Plaintiffs have no legitimate need to share Defendants' Highly Confidential Information widely—particularly given that Defendants' proposal sensibly allows for any attorney who is counsel of record to have access to such information. This Court should adopt Defendants' balanced proposal.

### III. PROCEDURE AND TIMELINE FOR PRODUCING DISCOVERABLE INFORMATION SUBJECT TO AGREEMENTS WITH NON-PARTIES.

#### A. **Plaintiffs' Position**.

The existence of a contractual confidentiality agreement between a Defendant and a Non-Party does not supersede the Defendant's discovery obligations under the Federal Rules of Civil Procedure. "It is well settled that a concern for protecting confidentiality does not equate to privilege, and that information and documents are not shielded from discovery on the sole basis that they are confidential." *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 642 (D. Kan. 2004). Instead, valid confidentiality concerns are addressed through the use of a discovery confidentiality order. *See DIRECTV, Inc. v. Richards*, No. 03-cv-5606, 2005 WL 1514187, at *4 (D.N.J. June 27, 2005). Thus, the terms of the proposed Confidentiality Order in this action should resolve any objection to production of discoverable, confidential information in a Party's possession, even if that information may be subject to a Non-Party's confidentiality claim. *See* Ex. A, § 9(c).

Further, if a Producing Party (whether a Party or Non-Party) believes that the proposed Confidentiality Order is inadequate, the burden remains on the Producing Party to seek further protections. While Plaintiffs understand that Defendants should have time to notify any Non-Party prior to production and that the Non-Party needs time to move before the Court, Defendants' proposed language fails to provide a procedure and timeline to seek such relief. Without such provisions, Defendants could use a Non-Party's silence as a basis to indefinitely withhold production of otherwise discoverable information. Even more, without appropriate guidelines, the burden of obtaining relief could improperly be shifted from the Party in possession of responsive, discoverable information to the requesting Party. Accordingly, Plaintiffs request inclusion of Section 9(c) as set forth in Exhibit A.

Defendants offer three arguments against Plaintiffs' proposed language.

First, Defendants argue that Section 9(c) should not, in the first instance, require a Non-Party or Defendant to seek a protective order. As Plaintiffs explained during the meet-and-confers, Plaintiffs' primary concern is preventing extended delays in production. By way of example, if a Non-Party does not take any action after being notified, Defendants' proposed language would allow the Producing Party to withhold relevant information indefinitely, and—potentially—improperly shift the burden to the Requesting Party to seek judicial relief. Simply put, a Non-Party would be rewarded for its silence and inaction. Defendants' concerns regarding the expenditure of judicial resources and party resources are misplaced. Plaintiffs assume that if a Non-Party raises an objection with the Court, the Court would simply order that entity to meet-and-confer with the Parties. Likewise, to the extent Defendants read Plaintiffs' proposal to require a Non-Party to file a formal motion, that is not the intent. Non-Parties can raise objections in a letter or motion.

Second, Defendants contend that the timeline for Non-Parties to raise objection is too short. Plaintiffs do not object to extending the deadline to 30 days, which—when recognizing that the Non-Party is not required to file a formal motion—is more than sufficient.

Third, Defendants argue that the Court's entry of the proposed Confidentiality Order "**could** require Defendants to violate their contractual obligations." (Emphasis added.) At the outset, the fact that no Defendant has affirmatively represented Plaintiffs' proposal would <u>actually</u> contradict a contractual notification provision should resolve this issue. But, even if the proposed Confidentiality Order somehow contradicts a private contract, that fact is of no moment, as it is a principle of black letter law that a private contractual agreement cannot trump a litigant's discovery obligations. *See R.S. Logistical Sols., Ltd. v. Janus Glob. Operations LLC*, No. 21-cv-178, 2022

U.S. Dist. LEXIS 154050, at *11 (E.D. Tenn. Aug. 26, 2022) ("While the Court understands Defendants' position, and predicament, confidentiality restrictions in contracts do not override the Federal Rules of Civil Procedure."); *Borum v. Smith*, No. 17-cv-17, 2017 U.S. Dist. LEXIS 109249, at *9-10 (W.D. Ky. July 14, 2017) ("[L]itigants may not shield otherwise discoverable information from disclosure . . . merely by agreeing to maintain its confidentiality.") (alterations in original) (citation and quotation omitted); *MTA Metro-North R.R. v. Buchanan Marine, L.P.*, No. 05-cv-881, 2006 U.S. Dist. LEXIS 118267, at *7 (D. Conn. Feb. 24, 2006) ("This Court sees no reason why the contractual provisions at issue here would preempt the parties' discovery and disclosure obligations under Rule 26 of the Federal Rules of Civil Procedure."). Simply put, once the Confidentiality Order is entered, Producing Parties must abide by it and comply with their discovery obligations, regardless of any tangential agreements with Non-Parties.

  B. **Defendants' Position.**

  **The Order should not demand that non-parties appear in this action to seek protection against the disclosure of their Confidential Information**. The parties recognize that discovery in this action is likely to include information that (1) is in the possession, custody, or control of a party; (2) was received from a non-party in the normal course of business; and (3) is considered to be confidential information, not only by the draft Confidentiality Order, but in agreements between a party and the non-party at issue as well ("Non-Party Confidential Information"). But the parties disagree about how disputes over such Non-Party Confidential Information should be handled.

  As in other protective orders, Defendants propose that if a non-party objects to the disclosure of Non-Party Confidential Information after receiving notice (or fails to give permission, where required), the parties would meet and confer in good faith to resolve any concerns over the production of the requested information. By contrast, Plaintiffs' proposal places

the burden on non-parties to seek protection on an expedited timetable. Under Plaintiffs' proposal, a **non-party** has just **14 days** from the time it receives notice to affirmatively seek relief from the Court if the non-party objects to the disclosure of its confidential information. If the non-party fails to object in that narrow timeframe, the party in possession of the requested Non-Party Confidential Information must "promptly" produce it.

Plaintiffs' proposal is unworkable for multiple reasons. *First*, it is needlessly inefficient. Defendants have confidentiality obligations to hundreds—if not thousands—of non-parties whose Confidential Information may be requested by Plaintiffs, creating the potential for hundreds of non-parties to object to disclosure of some or all of the requested discovery. There is no need to impose a default rule requiring each of those non-parties to formally—and individually—intervene when the parties likely can resolve any issues without Court involvement. Yet under Plaintiffs' proposal, the Confidentiality Order would require each objecting non-party to seek its own counsel, appear in this action, and seek a protective order barring the production of the Non-Party Confidential Information at issue—all within 14 days. Indeed, the proposal does not even require the parties to meet and confer on any issues. This would needlessly involve the Court before the parties consider alternatives to address any objections to production of Non-Party Confidential Information.

More efficient mechanisms exist for resolving non-parties' concerns, and Plaintiffs' proposal would bog down this Court in ancillary discovery disputes that will only create delay. Inasmuch as non-parties object to the disclosure of Non-Party Confidential Information, it is likely that many of their objections will sound in similar arguments, whether practical or legal, creating the potential that multiple objections could be solved with a common solution, or at least consolidated for the Court's consideration in a streamlined manner. Yet under Plaintiffs' proposal,

12

every objection to the production of Non-Party Confidential Information would involve a substantial outlay of non-party and judicial resources—not the least of which would be a full round of briefing by all interested parties to address each non-party's concern—without any benefit in the speed or volume of discovery. While non-parties would not be precluded from seeking relief from the Court under Defendants' proposal, reserving Court intervention as a last resort only if informal dispute resolution between the parties fails is the most efficient way to complete discovery across these consolidated actions (and has been effective in other cases involving similar claims and parties).

*Second*, Plaintiffs' proposal could require Defendants to violate unnecessarily their contractual obligations. As the proposed Confidentiality Order contemplates, many of Defendants' agreements with their respective clients contain confidentiality provisions that deem confidential both the agreements themselves and materials exchanged in connection with those agreements. Similarly, many of those agreements also provide the mechanism to be employed where a party to the agreement is subject to legal process that would require the disclosure of contractually defined confidential information.

Under Plaintiffs' proposal, the Producing Party "shall promptly produce the information" "[i]f the Non-Party fails to timely seek" relief from the Court. This would prevent Defendants' contractual counterparties from relying on the protection they bargained for. Defendants should not be forced to breach their contractual obligations under any protective order, but much less so in the absence of any compelling justification put forward by Plaintiffs.

*Finally*, while Plaintiffs argue that "Defendants' proposed language fails to provide a procedure and timeline to seek" relief from the Court and hypothesize that "Defendants could use a non-party's silence as a basis to indefinitely withhold production of otherwise discoverable

13

information," they ignore the fact that Defendants' proposal addresses a situation in which a non-party does not agree to the disclosure of Non-Party Confidential Information. Consistent with all other discovery disputes, "[i]f such permission (where required) is not given within 28 days of providing notice or initiating such other procedure, then the parties shall meet and confer in good faith to resolve any concerns over the production of information." (Exhibit A, Section 9(c)). Plaintiffs provide no justification for requiring the Court's intervention immediately and without conferring among the parties. Nor can Plaintiffs justify imposing the burden on non-parties and unnecessarily imposing inefficiencies for the MDL. The Court should reject Plaintiffs' attempt to circumvent the usual process for resolving discovery disputes.

## IV.  CONCLUSION

The parties respectfully request that the Court resolve the two disputed issues set forth herein.

Respectfully Submitted,

*/s/ Matthew F. Gately*
Matthew Gately
*Counsel for the*
*Third-Party Payer Class Track*

*/s/ Brandon Bogle*
Brandon Bogle
*Counsel for the*
*Self-Funded Payer Track*

*/s/ Tanya Ellis*
Tanya Ellis
*Counsel for the*
*State Attorney General Track*

*/s/ Kelley Barnaby*
Kelley Barnaby
*Counsel for OptumRx, Inc.*