# EXHIBIT A

**Exhibit A – Key Disputed Provisions[1]**

| | SECTION I.E of the Proposed ESI Protocol (Applicability of Protocol to Plaintiffs and Defendants) | |
|---|---|---|
| Row | Plaintiffs' Proposed Language | Defendants' Proposed Language |
| 1 | *The obligations imposed on the Parties pursuant to this ESI Order, other than the preservation obligations set forth in Section IV, will not become operative on any individual named Plaintiff until the action in which it is named is selected as a bellwether action, or on any class Plaintiff until that Plaintiff files a class action on behalf of a proposed class and/or is subsequently designated by counsel as an additional or alternative proposed class representative, or upon agreement between the individual named Plaintiff or class Plaintiff and the Defendants, or upon further order of the Court. Plaintiffs' obligations with respect to case-specific materials (i.e., documents and ESI specific to the claims of a given named Plaintiff) are set forth in Section XIV.A of this ESI Order.* | *This ESI Order shall apply to all Parties in this litigation, except where a Party seeks an exception to this ESI Order as described in Section I.D. herein.* |
| | SECTION II of the Proposed ESI Protocol (Hyperlinks) | |
| Row | Plaintiffs' Proposed Language | Defendants' Proposed Language |
| 2 | "**Document Family**" refers to a collection of pages or files, *produced manually or by a software application, constituting a logical single communication of information*, but consisting of more than a single stand-alone record. A "parent document" is an electronic file that *includes*, attaches, *references*, or embeds, at least one other electronic file (a "child document") *by means of any kind of* | "**Document Family**" refers to a collection of related pages or files *as maintained in the ordinary course of business* but consisting of more than a single stand-alone record. A "parent document" is an electronic file that attaches, or embeds at least one other electronic file (a "child document"). A "Document Family" includes, for example, emails with attachments, or *MSOffice files embedded* |

---

[1] Out of respect for the Court's time, the parties have not included every disputed difference in this document (which, per the Court's direction, is intended to be a quick-reference chart listing Plaintiffs' and Defendants' key disputed provisions).

| | |
|---|---|
| *attachment or hyperlink*. A "Document Family" includes, for example, *a document and all other documents in its attachment range*; emails with attachments; *and messages (e.g., email or chats) sent in any platform used or controlled by the Parties that point to a file that is stored elsewhere within any platform (including cloud-based or third-party platforms) used or controlled by the Parties (e.g., OneDrive or SharePoint).* | *within another MSOffice document. For the avoidance of doubt, ESI referenced in ESI only by a hyperlink or other pointer ("hyperlinked files") shall not be construed to be in the same Document Family solely by virtue of the hyperlink reference.* |

| **SECTION II of the Proposed ESI Protocol**<br>**(Definition of "Litigation")** | |
|---|---|
| **Row** | **Plaintiffs' Proposed Language** | **Defendants' Proposed Language** |

| Row | Plaintiffs' Proposed Language | Defendants' Proposed Language |
|---|---|---|
| 3 | "**Litigation**" is defined to include all actions currently in MDL No. 3080, *In re: Insulin Pricing Litigation*, or later filed in, added to, transferred to, or coordinated with (pursuant to a Court order or the Parties' express written agreement) MDL No. 3080, and all actions later remanded to their respective transferor courts and any appeals arising from such cases. *The word "Litigation" also expressly includes the following District of New Jersey cases: Case No. 20-03426, In re Direct Purchaser Insulin Pricing Litigation ("Direct Purchaser Consumer Action"); Case No. 18-2211, MSP Recovery Claims Series, LLC v. Aventis U.S. LLC, et al.; Case No. 17-669, In re Insulin Pricing Litigation ("Indirect Purchaser Consumer Action"); and Case No. 18-14999, Minnesota v. Sanofi-Aventis U.S. LLC, et al.* | "**Litigation**" is defined to include all actions currently in MDL No. 3080, *In re: Insulin Pricing Litigation*, or later filed in, added to, transferred to, or coordinated with (pursuant to a court order or the Parties' express written agreement) MDL No. 3080, and all actions later remanded to their respective transferor courts and any appeals arising from such cases. |

| | | |
|---|---|---|

**SECTION III.C of the Proposed ESI Protocol**
**(Inaccessible Sources of ESI)**
**(Relevant vs. Responsive Language)**

| Row | Plaintiffs' Proposed Language | Defendants' Proposed Language |
|---|---|---|
| 4 | The Parties agree that there is no need, at this time, to search ESI from any source a Party has identified as not reasonably accessible pursuant to Federal Rule 26(b)(2)(B), although the Parties must take reasonable steps to preserve such ESI if potentially ***relevant or responsive***. ***If a Party determines that a source is not reasonably accessible pursuant to Federal Rule 26(b)(2)(B) during its search and collection process, then it will provide sufficient information about the source to enable the Parties to confer in good faith about the accessibility thereof.*** A decision to preserve any ESI shall not be interpreted as an agreement that the preserved material is relevant to the issues in the case or constitutes reasonably accessible ESI that could be subject to review and production. | The Parties agree that there is no need, at this time, to search ESI from any source a Party has identified as not reasonably accessible pursuant to Federal Rule 26(b)(2)(B), although the Parties must take reasonable steps to preserve such ESI if potentially ***responsive***. ***All Parties reserve the right to request to have this ESI searched if some reason emerges for believing that a particular source contains responsive information.*** A decision to preserve any ESI shall not be interpreted as an agreement that the preserved material is relevant to the issues in the case or constitutes reasonably accessible ESI that could be subject to review and production.<br><br>***The Parties further agree that there is no need to modify or suspend the procedures used by them in the ordinary course of business to backup data and systems for disaster recovery and similar purposes related to continuity of operations.*** |

**SECTION V of the Proposed ESI Protocol**
**(Collection, Review, and Validation Processes)**
**(Relevant vs. Responsive Language)**

| Row | Plaintiffs' Proposed Language | Defendants' Proposed Language |
|---|---|---|
| 5 | ***The Parties shall participate in an iterative and cooperative approach with respect to the identification of relevant custodians and information sources.*** The Parties may identify potentially ***relevant or responsive*** ESI and documents by: identifying and selecting the custodians, databases, and non-custodial sources that are the most likely | The Parties may identify potentially ***responsive*** ESI and documents by: identifying and selecting the custodians, databases, and non-custodial sources that are the most likely to possess ***responsive*** documents and information and (a) applying agreed-upon search terms to identifiable data repositories and custodial data sources  in accordance with |

3

| | |
|---|---|
| to possess **relevant or responsive** documents and information and (a) applying agreed-upon search terms to identifiable data repositories and custodial data sources in accordance with the provisions of Section V.A., **or** (b) identifying documents or ESI that are responsive to the Requesting Party's discovery requests directly, where search terms are not necessary to identify responsive documents or ESI, and/or (c) utilizing Technology Assisted Review as described below in Section V.B. The Parties shall meet and confer in good faith regarding the search methodology and search terms, if any, to be applied, and use of technology assisted review or similar technologies, if any; **relevant** data sources, including the identities of custodians and custodial, non-custodial, **or third-party data** sources; any applicable and appropriate timeframes for **the collection, review, and** production of ESI and documents; **and validation processes**. The Producing Party will be reasonably transparent regarding the universe of documents subject to targeted collections, culling, or application of search terms. No Party is relieved of its overall discovery obligations through the use of search terms or Technology Assisted Review. | the provisions of Section V.A., (b) identifying documents or ESI that are responsive to the Requesting Party's discovery requests directly, where search terms are not necessary to identify responsive documents or ESI, and/or (c) utilizing Technology Assisted Review as described below in Section V.B.  The Parties shall meet and confer in good faith regarding the search methodology and search terms, if any, to be applied, and use of technology assisted review or similar technologies, if any; **responsive** data sources, including the identities of custodians and  custodial **or** non-custodial sources; **and** any applicable and appropriate timeframes for production of ESI and documents. The Producing Party will be reasonably transparent regarding the universe of documents subject to targeted collections, culling, or application of search terms. No Party is relieved of its overall discovery obligations through the use of search terms or Technology Assisted Review. |

| | | |
|---|---|---|
| | **SECTION V.A of the Proposed ESI Protocol** **(Relevant vs. Responsive Language)** **(Extent of Information Required from Producing Party)** | |
| **Row** | **Plaintiffs' Proposed Language** | **Defendants' Proposed Language** |
| 6 | If a Producing Party elects to use search terms to identify potentially **relevant or responsive** documents and ESI, it shall identify and propose to the Requesting Party an initial list of search terms, custodians, custodial data sources, and non-custodial data sources that are likely to contain **relevant or responsive** documents and ESI, and the Parties will **discuss those terms and any additional terms, or other** | If a Producing Party elects to use search terms to identify potentially **responsive** documents and ESI, it shall identify and propose to the Requesting Party an initial list of search terms, custodians, custodial data sources, and non-custodial data sources that are likely to contain **responsive** documents and ESI, and the Parties will **meet and confer regarding those terms and any additional terms, or other requested** |

| | | |
|---|---|---|
| | *requested changes, proposed by the Requesting Party. The Parties will meet and confer regarding the search terms to be used, as well as information to improve the effectiveness of the search terms (e.g., relevant project and code names, code words, acronyms, abbreviations, and nicknames, if any). The Parties shall participate in an iterative and cooperative approach in which the Parties will meet and confer regarding reasonable and appropriate methods to increase the relative precision or proportion of relevant or responsive ESI and documents within the search results and production sets, including the exchange of "hit count" reports.* To the extent the Parties cannot reach agreement on the application of, or procedures for, any search or filtering processes, the Parties may raise such issues for resolution by the Court or its designee**.** | *changes, proposed by the Requesting Party*. To the extent the Parties cannot reach agreement on the application of, or procedures for, any search or filtering processes, the Parties may raise such issues for resolution by the Court or its designee. |

| | |
|---|---|
| **SECTION V.B of the Proposed ESI Protocol** | |
| **(Use of Search Terms and TAR)** | |

| Row | Plaintiffs' Proposed Language | Defendants' Proposed Language |
|---|---|---|
| 7 | If a Producing Party elects to use technology assisted review or any other form of machine learning *in the review and production of ESI* beyond search terms or keywords (collectively, "TAR"), . . . *No TAR process will be "stacked" with the application of search terms or keywords , i.e., TAR will not be applied before or after any application of search terms*. | If a Producing Party elects to use technology assisted review or any other form of machine learning beyond search terms or keywords (collectively, "TAR") *for purposes of culling ESI potentially responsive to a Requesting Party's request, it shall disclose that intent to the Requesting Party, and the Producing Party shall meet and confer with the Requesting Party regarding how such technologies will be implemented, before the Producing Party employs any TAR.* |

| **SECTION V.C of the Proposed ESI Protocol**<br>**(Relevant vs. Responsive)** | |
| --- | --- |
| Row | Plaintiffs' Proposed Language | Defendants' Proposed Language |
| 8 | The fact that a document may have been retrieved by application of search terms or TAR does not render it automatically ***relevant or responsive*** and producible, and a Producing Party may withhold from production ***irrelevant or non-responsive and privileged ESI as permitted*** under the Federal Rules. To the extent any Party identifies ***relevant or responsive*** ESI or documents outside of search terms or the TAR methodology noted above, all such non-privileged documents shall be produced.<br><br>Nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing a review to determine if documents captured by search terms are ***relevant or responsive***. Similarly, nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents determined to be ***relevant or responsive***. Further, nothing in this ESI Order requires the production of ***irrelevant or non-responsive documents***. | The fact that a document may have been retrieved by application of search terms or TAR does not render it automatically ***responsive*** and producible, and a Producing Party may withhold from production ***such document if non-responsive and/or permissible*** under the Federal Rules. To the extent any Party identifies ***responsive*** ESI or documents outside of search terms or the TAR methodology noted above, all such non-privileged documents shall be produced.<br><br>Nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing a review to determine if documents captured by search terms are ***responsive to the Requesting Party's discovery requests***. Similarly, nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents determined to be ***responsive***. Further, nothing in this ESI Order requires the production of ***documents captured by search terms or TAR that are not relevant and responsive to the Requesting Party's request.*** |

| **SECTION VI.B of the Proposed ESI Protocol**<br>**(Email Threading)** | |
| --- | --- |
| Row | Plaintiffs' Proposed Language | Defendants' Proposed Language |
| 9 | ***No email may be withheld from production or omitted from a privilege log because it is included in whole or in part in a more inclusive email; provided, however, that the Parties may use email threading for their own internal review or other internal processes to reduce the volume of entirely duplicative content within email threads.*** | ***The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. This clause is not to be construed to require the Producing Party to produce metadata for lesser included emails not themselves produced. To the extent a*** |

| | | *Receiving Party requests the production of specific lesser-inclusive copies, the Parties will promptly meet and confer and will not unreasonably deny particularized requests.* |
|---|---|---|

| **SECTION VI.D & VI.F of the Proposed ESI Protocol** <br> **(Production Format)** | | |
|---|---|---|
| **Row** | **Plaintiffs' Proposed Language** | **Defendants' Proposed Language** |
| 10 | **Section VI.D** <br><br> *All spreadsheet files (e.g., Microsoft Excel, Corel Quattro, etc.) shall be produced in Native Format with TIFF placeholder images.* <br><br> *All word processing files (e.g., Microsoft Word) containing track changes, comments, hidden text, or embedded file types; presentation files (e.g., Microsoft PowerPoint); image files (e.g., .jpg, .gif); and PDF files shall be produced in Native Format with TIFF placeholder images where reasonably possible, unless redactions are required, in which case such files shall be produced as TIFFs (non-color documents) or JPGs (color documents), as appropriate.* <br><br> *All media files, such as audio and video files, shall be* produced in Native Format *with TIFF placeholder images*. <br><br> *Emails; word processing files (e.g., Microsoft Word) not containing track changes, comments, hidden text, or embedded file types; and digital photographs shall be produced as TIFFs (for non-color documents) or JPGs (for color documents), as appropriate.* | **Section VI.D** <br><br> *ESI, except that which is redacted, slipsheeted, or* produced in Native Format, *shall be produced as single-page, black-and-white, 300 DPI, Group IV\* TIFF images or color JPG images with LZW compression where appropriate with corresponding extracted full text provided in document level text files, objective metadata fields pursuant to Exhibit 1, and load files pursuant to Exhibit 2. All ESI produced as images shall be imaged, to the extent reasonably possible, with track changes, comments, hidden text, and/or underlying annotations rendered on the image.* <br><br> *Spreadsheets, audio/visual/multimedia, and other files that are not conducive to production in image format shall be produced in Native Format, except where such files are image-redacted or slipsheeted pursuant to the terms of this Protocol.* ESI produced in Native Format shall be produced with all Metadata contained in or associated with that file to the extent technologically possible consistent with Exhibit 1. ESI produced in Native Format shall be given a file name consisting of a unique Bates number (e.g., "ABC00000002"). For each Native file produced, the production will include a single-page placeholder TIFF image stamped with this unique Bates number and/or |

*The Parties will meet and confer on the production format, including Metadata, of other document types, including for enterprise and third-party-hosted communication platforms or systems, including but not limited to: Zendesk, Slack, Microsoft Teams, Zoom, Nextiva, Discord, Trello, Workvivo, Asana, Basecamp, Confluence, Miro, Monday.com, Whatsapp, Salesforce, Webex, Yammer, Google Chat, Google Hangouts, Skype, Instant Bloomberg, or similar platforms.*

*Notwithstanding the Parties' stipulations herein, upon reasonable request made by the Receiving Party, the Parties shall confer regarding the production in an alternate format of a document previously produced in accordance with this ESI Order.*

ESI produced in Native Format shall be produced with all Metadata contained in or associated with that file to the extent technologically possible consistent with Exhibit *1 and load files pursuant to Exhibit 2*. ESI produced in Native Format shall be given a file name consisting of a unique Bates number (e.g., "ABC00000002"). For each Native file produced, the production will include a single-page placeholder TIFF image stamped with this unique Bates number and/or confidentiality designation and containing the phrase: "PRODUCED IN NATIVE FORMAT" or similar language. *To the extent that it is available, the original document text shall be provided in a document-level multi-page UTF-8 text file with a text path provided in the \*.dat file; otherwise, the text contained on the slipsheet language shall be provided in the \*.txt file with the text path provided in the \*.dat file. Native files will be produced in a separate folder on the production media.*

confidentiality designation and containing the phrase: "PRODUCED IN NATIVE FORMAT" or similar language.

No Party may attach to any pleading or any correspondence addressed to the Court or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding a copy of any produced Native document without ensuring that either the corresponding placeholder slip sheet is attached to the document or the corresponding Bates number and confidentiality legend, if any, appears on the document.

**_Section VI.F_**

*If a Requesting Party finds the black and white version of a document insufficient, the Requesting Party may request that the Producing Party provide a color image. The Producing Party will not unreasonably deny a request to provide a color image. If the parties cannot come to an agreement regarding whether a document must be produced in color, the good cause standard will govern the dispute. However, the Requesting Party does not have to make a good cause showing when it initially requests the document in color; instead, the Requesting Party may simply identify the document. If a Producing Party converts a document to color image in response to a request from a Receiving Party, the Producing Party shall do so in JPEG, TIFF or such other format as agreed with the Requesting Party.*

|  | *In advance of depositions, the Parties reserve the right to produce JPG or TIFF versions, as applicable, of any previously produced Native file at their discretion.*<br><br>No Party may attach to any pleading or any correspondence addressed to the Court or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding a copy of any produced Native document without ensuring that either the corresponding placeholder slip sheet is attached to the document or the corresponding Bates number and confidentiality legend, if any, appears on the document.<br><br>*Documents produced as TIFF/JPG images shall be named according to the Bates number of the corresponding TIFF/JPG image. Each \*.tiff/\*.jpg file should be assigned a unique name matching the Bates number of the corresponding image. Bates numbers and confidentiality designations should be electronically branded on each produced \*.tiff/\*.jpg image. These \*.tiff/\*jpg images should be provided in a separate folder and the number of TIFF/JPG files per folder should be limited to 1,000 files.* |  |

| **SECTION VI of the Proposed ESI Protocol** <br> **(Redactions)** |||
|---|---|---|
| Row | **Plaintiffs' Proposed Language** | **Defendants' Proposed Language** |
| 11 | *Section VI.H*<br><br>*Absent further order of the Court or agreement of the Parties, no redactions may be made within any ESI or Hard Copy Document unless the information is subject to the attorney-client or work-product privileges. To the extent that a Producing Party maintains that an otherwise* | *Section VI.I*<br><br>*Redactions. To the extent that a responsive document contains information protected by the attorney-client privilege or work product doctrine, the Producing Party may produce that document in a redacted form and identify such information on their privilege log or produce* |

*relevant or responsive document contains certain highly sensitive information that should be redacted for reasons other than those permitted by this section, the Producing Party and Requesting Party shall meet and confer concerning the proposed treatment of such information; if the Parties cannot reach resolution, the Producing Party may submit the document to the Court or its designee for review in camera and seek an order concerning the appropriate treatment of the disputed information.*

*Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions and the basis for the redaction (e.g., "Redacted – A/C Privilege," "Redacted – AWP"). Where a relevant or responsive document contains both redacted and non-redacted content, the Parties shall produce the remainder of the non-redacted portions of the document and the Extracted text/OCR text corresponding to the nonredacted portions.*

*1. Spreadsheets. Spreadsheet files requiring redaction, including, without limitation, Microsoft Excel files, will be redacted in Native Form.*

*2. Other Documents. All images of redacted Native files shall be processed to show and reveal all comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its Native application. When possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to*

*the non-privileged metadata. To the extent a Producing Party produces responsive privileged documents in redacted form with non-privileged metadata in lieu of including such documents on their privilege log, either the document in redacted form or its metadata will indicate the nature of the privilege redaction (attorney work-product or attorney-client privilege) and upon request, the Producing Party will identify all privilege redacted documents by bates number. The Producing Party may also produce in a redacted form information in a responsive document that: (1) is subject to federal, state, or foreign privacy requirements (e.g., HIPAA; 21 C.F.R. §§ 20.111, 20.63, and 314.80; 45 C.F.R. §§ 160 and 164; GDPR); (2) constitutes irrelevant personal information of an intimate or private nature; (3) uniquely identifying information related to non-diabetes products[1]; or (4) information identifying members of P&T Committees other than Pharmacy Benefit Manager ("PBM") employees.*

*All Parties reserve their rights to challenge the appropriateness of any redactions and the discoverability of the redacted information, including redaction of information identifying members of P&T Committees, other than PBM employees.  The Parties will meet and confer regarding any disputes related to any redaction and will not unreasonably deny good-faith requests for production of redacted information.  The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable. Nothing contained herein shall be used to demonstrate that any document or group of documents, or any portion of any document or group of*

| | | *prevent the current date from being printed. Email header information (e.g., date, subject line, etc.) should not be redacted unless it is independently privileged. The production of a document in a redacted form does not affect the Parties' obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable.* | *documents, is or is not properly discoverable in the event that a Party moves for production thereof.*<br><br>*Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction (e.g., "Redacted –Privileged," "Personal Information," "Other Drug Information"). Where a document contains both privileged and non-privileged responsive content, the Producing Party shall redact the privileged material and produce the remainder of the document.*<br><br>*Native Excel or other spreadsheet files that are redacted may be produced in Native or near Native Format by overwriting the data contained in a particular cell, row, column or tab with the word "Redacted," using industry-standard tools, and shall make clear the reason for the redaction (e.g., "Redacted - Privilege"), provided that such overwriting does not impact any other, non-redacted cells or information in the spreadsheet (e.g., if a cell redacted for privilege contains a numerical value that is used in a formula by other, non-redacted cells in the spreadsheet). If a redaction does impact non-redacted cells/information, the Parties shall promptly meet and confer to resolve the issue.  The Parties acknowledge that redacting the native may alter the metadata of the produced file; however, the metadata produced pursuant to Exhibit 1 will be the metadata extracted from the original native file, other than metadata containing redacted information.*<br><br>*Any other native files that are redacted may be produced as black-and-white or color (as applicable), single-page* |

| | | *TIFF files with OCR text provided in document level text files, with load files pursuant to Exhibit 2, which shall include all information contained in the original file.*<br><br>*Footnote 1: Products that are used to treat diabetes include but are not limited to: the at-issue drugs (identified in complaints in any actions consolidated in this Litigation and any later amendments); any generic, biosimilar or private label insulin (for example, any Relion brand or any other private label or off-label insulins, Insulin Aspart, Semglee, Admelog, Insulin Lispro Injection U-100, Insulin Lispro Protamine, Insulin Lispro Injectable Suspension Mix75/25 KwikPen, Insulin Lispro Injection Junior KwikPen and/or any other authorized generic insulin); amylinomimetic injectables; GLP-1 receptor agonists; alpha-glucosidase inhibitors; biguanides; dopamine-2 agonists; DPP-4 inhibitors; meglitinides; SGLT 2 inhibitors. Defendants do not agree that all of the products identified herein are relevant to this Action, and a Producing Party's decision not to redact information relating to any product shall not be construed as an admission that such product is relevant to this Action. To the extent a case brings claims based on products other than those used to treat diabetes, the parties to that case shall meet and confer as to appropriate redactions with respect to that Receiving Party.* |

| SECTION VII.A of the Proposed ESI Protocol | |
| :-- | :-- |
| **(Hyperlinks)** | |
| **(Non-Responsive Attachments)** | |
| Row | Plaintiffs' Proposed Language | Defendants' Proposed Language |

| Row | Plaintiffs' Proposed Language | Defendants' Proposed Language |
| :-: | :-- | :-- |
| 12 | *Parent-child relationships, such as the association between an attachment and its parent document, or between embedded documents and their parent documents, or between a document with document stubs or links to internal or non-public documents and those stubbed out documents or internal or non-public documents so linked,[1] will, to the extent possible, be preserved. Attachments should be consecutively produced with their parent.*<br><br>*A document and all other documents in its Document Family, emails with attachments, files with extracted embedded OLE (object linking and embedding) documents, and email or other documents together with any documents referenced by document stubs, or via links to internal or non-public document sources within those emails or other documents, all constitute Document Families. Where feasible, if any member of a Document Family is produced, all members of that family must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.*<br><br>*Footnote 1: For documents shared via links or pointers, or other "modern attachments" (i.e., hyperlinks pointing to files stored in the cloud or a shared repository such as SharePoint and other types of collaborative data sources, instead of being directly attached to a message as has been historically common with email communications), the Parties shall meet and confer regarding the most reasonable means to produce such documents, as well as* | *For ESI, Document Families must be preserved by assigning sequential Bates numbers to all files within a parent-child group and by providing accurate attachment ranges for those files in the metadata fields required. Attachments to emails or substantive embedded files will not be eliminated from the parent e-mail/document. Rather, parent-child relationships (the association between an attachment and its parent document, or for embeddings, the association between embedded documents and their containers) will be preserved. Substantive embedded documents (e.g., a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records (either in full, redacted, or via a non-responsive or privilege slipsheet) and related back to the respective top-level parent document via the Beginning Attachment Bates Number and Ending Attachment Bates Number fields. The Parties agree that fully non-responsive attachments to responsive parent documents need not be produced other than as slipsheets detailed herein; however, non-responsive parent documents must be produced if they contain any responsive attachments. Where the Parties withhold a fully non-responsive, non-privileged attachment, they will produce a TIFF slip sheet with a Bates Number in place of the attachment, along with all metadata associated with the document being withheld as specified in Exhibit 1. No extracted text need be provided. The TIFF slip sheet for each withheld attachment will state "Family Member Withheld as Non-Responsive." The Requesting Party has* |

| | | |
|---|---|---|
| | *the versions of such documents (e.g., the as-sent version, current version, etc.) to be collected and produced.* | *the right to request the production of any attachment withheld solely on the ground of non-responsiveness. If the Parties cannot promptly reach an agreement, the Requesting Party may raise the issue with the Court.*<br><br>*Where an electronic document that is part of a family is withheld, and its relationship to the rest of that Document Family is indicated using slipsheets, the Producing Party shall provide one Bates-numbered slipsheet for each withheld document.*<br><br>*If a member of an ESI Document Family that has otherwise been determined to be responsive cannot technically be processed (e.g., unsupported file format, file corruption, inaccessible password-protected document), those technical problems shall be identified and disclosed to the Requesting Party by production of a Bates-labeled slipsheet that states "Technical issue—file cannot be processed." A Requesting Party may thereafter raise with the Producing Party any questions or concerns, and if the Parties cannot promptly reach an agreement, the Requesting Party may raise the issue with the Court.* |

| **SECTION VIII of the Proposed ESI Protocol**<br>**(Data and Databases)** | | |
|---|---|---|
| **Row** | **Plaintiffs' Proposed Language** | **Defendants' Proposed Language** |
| 13 | The Parties will meet and confer to address the identification, production, and production format of any *relevant or responsive* data contained in a database or other Structured Data or aggregated data source or otherwise maintained by an application. *The Parties will reasonably cooperate in the exchange of information concerning such databases to facilitate discussions on productions and* | *To the extent that a Producing Party produces Structured Data or similar data stored in a database, upon production the Producing Party will identify the database or platform to the Requesting Party.* The Parties agree to meet and confer to address any concerns with the identification, production, and production format of any *relevant* data contained in a database or other Structured Data or |

14

| | |
|---|---|
| ***production format, including available data fields/objects and schema.*** If the Parties cannot reach agreement, the matter will be decided by the Court or its designee. | aggregated data source or otherwise maintained by an application. If the Parties cannot reach agreement, the matter will be decided by the Court or its designee.<br><br>***To the extent a Producing Party is constrained from producing responsive Structured Data because of a third-party license or because software necessary to view the data is hardware-dependent, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format. The Producing Party shall produce exports and reports in a reasonably usable form. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format.*** |

| | | |
|---|---|---|
| | **SECTION XIV of the Proposed ESI Protocol**<br>**(Applicability of Protocol to Plaintiffs and Defendants)** | |
| **Row** | **Plaintiffs' Proposed Language** | **Defendants' Proposed Language** |
| 14 | ***Consistent with Section I.E of this ESI Order, and subject to any further agreement among the Parties or order of the Court, the Parties shall produce case-specific documents (i.e., documents specific to the claim of a given Plaintiff, produced by Plaintiffs or Defendants) for any Plaintiff selected for a bellwether trial and any Plaintiff that files a class action on behalf of a proposed class and/or is subsequently designated by counsel as an additional or alternative proposed class representative in accordance with the production format specified herein; provided, however, that the Producing Party may elect to produce such materials in their Native Format. To the extent production of case-specific documents for any Plaintiff selected for a bellwether trial or any named or designated*** | ***Provision should be deleted in its entirety.*** |

| | *class Plaintiff as described above presents an issue for any Party, the Parties shall reasonably confer, and may present any disputes to the Court or its designee.* | |
| --- | --- | --- |

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case 2:23-md-03080**<br>**MDL No. 3080**<br><br>**JUDGE BRIAN R. MARTINOTTI**<br>**JUDGE RUKHSANAH L. SINGH** |

**THIS DOCUMENT RELATES TO: ALL CASES**

**CASE MANAGEMENT ORDER #___**

**(STIPULATION AND ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS)**

The Parties hereby submit the following Stipulation and Order Governing the Production of Electronically Stored Information and Hard Copy Documents ("ESI Order"):

**I.     GENERAL.**

**A.**     The procedures and protocols set forth in this Protocol shall govern the production of electronically stored information ("ESI") and hard copy documents in this Litigation, unless the Parties agree in writing to change them or they are changed by the Court.  This ESI Order is intended to aid the Parties by providing a more predictable, cost-effective, and efficient management structure for facilitating the exchange of ESI and hard copy documents.  Except as specifically set forth herein, nothing in this ESI Order shall supersede the Parties' obligations and protections under the Federal Rules, of Civil Procedure ("Federal Rules"), the Local Civil Rules for the U.S. District Court for the District of New Jersey ("Local Rules"), and any other applicable orders and rules.

**B.**     The Parties acknowledge their duty to work together cooperatively throughout the discovery process. The Parties shall promptly meet and confer in good faith on issues regarding

1

ESI, as necessary, including issues relating to compliance with this ESI Order, custodians, data sources, and search methodologies (e.g., search terms and other methods of identifying relevant or responsive ESI).  In the event the Parties cannot reach agreement, disputes may be submitted to the Court or its designee for determination.

  **C.** By stipulating to this ESI Order and agreeing to produce ESI and hard copy documents, generally or in a particular form or forms, no Party waives any objections to producing any particular document or category of documents on any grounds whatsoever.

  **D.** If any Producing Party identifies a circumstance where application of this ESI Order is not technologically practicable or possible, or if it cannot comply with any material aspect of this ESI Order, or if compliance would be impossible or unreasonable, the Producing Party will disclose to the Requesting Party the reasons for, and circumstances surrounding, the impracticality or impossibility of compliance with this ESI Order, and the Parties will meet and confer in an effort to reach agreement on an appropriate exception to this ESI Order. In the event the Parties cannot reach agreement, the matter may be submitted to the Court or its designee for determination.

  ~~**E.**~~ ~~This ESI Order shall apply to all Parties in this litigation, except where a Party seeks an exception to this ESI Order as described in Section [I.D.] herein.~~

  **E.** The obligations imposed on the Parties pursuant to this ESI Order, other than the preservation obligations set forth in Section IV, will not become operative on any individual named Plaintiff until the action in which it is named is selected as a bellwether action, or on any class Plaintiff until that Plaintiff files a class action on behalf of a proposed class and/or is subsequently designated by counsel as an additional or alternative proposed class representative, or upon agreement between the individual named Plaintiff or class Plaintiff and the Defendants, or upon further order of the Court. Plaintiffs' obligations with respect to case-specific materials (i.e.,

documents and ESI specific to the claims of a given named Plaintiff) are set forth in Section XIV.A of this ESI Order.

F.      All productions in this litigation are subject to the Protective Order separately entered by the Court in this litigation.

## II.   DEFINITIONS.

"**Documents**" shall have the same definition as set forth in Federal Rules of Civil Procedure 26 and 34.

"**Document Family**" refers to a collection of ~~related~~ pages or files ~~as maintained in the ordinary course of business~~, produced manually or by a software application, constituting a logical single communication of information, but consisting of more than a single stand-alone record. A "parent document" is an electronic file that includes, attaches, references, or embeds, at least one other electronic file (a "child document") by means of any kind of attachment or hyperlink. A "Document Family" includes, for example, a document and all other documents in its attachment range; emails with attachments, ~~or MSOffice files embedded within another MSOffice document. For the avoidance of doubt, ESI referenced in ESI only by a hyperlink or other pointer ("hyperlinked files") shall not be construed to be in the same Document Family solely by virtue of the hyperlink reference.~~; and messages (e.g., email or chats) sent in any platform used or controlled by the Parties that point to a file that is stored elsewhere within any platform (including cloud-based or third-party platforms) used or controlled by the Parties (e.g., OneDrive or SharePoint).

"**Electronically stored information**" or "**ESI**" means, as referenced in the Federal Rules, information that is stored electronically, regardless of the media or whether it is in the original format in which it was created, as opposed to stored in hard copy (i.e., on paper).

**"Extracted text"** means the Native text extracted from an electronic document, and includes all header, footer, redlines, comments, notes, and document body information when reasonably available.

**"Hard Copy Document"** means a document collected from physical files (paper) and not from electronic sources.

**"Litigation"** is defined to include all actions currently in MDL No. 3080, *In re: Insulin Pricing Litigation*, or later filed in, added to, or transferred to ~~or coordinated with (pursuant to a court order or the Parties' express written agreement)~~ MDL No. 3080, and all actions later remanded to their respective transferor courts and any appeals arising from such cases. The word "Litigation" also expressly includes the following District of New Jersey cases: Case No. 20-03426, *In re Direct Purchaser Insulin Pricing Litigation* ("Direct Purchaser Consumer Action"); Case No. 18-2211, *MSP Recovery Claims Series, LLC v. Sanofi Aventis U.S. LLC, et al.*; Case No. 17-669, *In re Insulin Pricing Litigation* ("Indirect Purchaser Consumer Action"); and Case No. 18-14999, *Minnesota v. Sanofi-Aventis U.S. LLC, et al.*

**"Load/Unitization file"** means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Unitization file may also contain data relevant to the individual documents, including extracted and user-created Metadata.

**"Media"** means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

**"Metadata"** is used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file. The Metadata fields to be produced are listed in Exhibit 1.

**"Native"** or **"Native Format"** means and refers to the format of ESI in the application in which it was originally created and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

**"OCR text"** means text generated through Optical Character Recognition Process of image/bitmap picture representation of the documents.

**"Parties"** means or refers collectively to the named plaintiffs and defendants in this Litigation, as well as any later added plaintiffs and defendants. "Party" shall refer to a plaintiff or defendant, individually.

**"Producing Party"** means or refers to any Party from which production of ESI or Hard Copy Documents are sought.

**"Receiving Party"** means or refers to any Party to which production of ESI or Hard Copy Documents is made.

**"Requesting Party"** means or refers to any Party seeking production of ESI or Hard Copy Documents.

"**Structured Data**" means data that resides in a fixed field within a record or file, or data stored in a structured format, such as databases (e.g., Oracle, SQL, Access, etc.) or data sets, according to specific form and content rules as defined by each field of the database.

## III.   PRESERVATION.

Each Party is responsible for preserving potentially relevant or responsive ESI and Hard Copy Documents within its possession, custody, or control. To reduce costs and burdens of preservation and to ensure proper documents and ESI are preserved, the Parties agree as follows:

### A.   Deleted Files.

If a Producing Party learns during the search and collection process that relevant or responsive ESI or Hard Copy Documents that existed as of the date upon which the duty to preserve ESI arose (1) was lost, destroyed, or is no longer retrievable, and (2) cannot be restored or replaced through additional discovery, the Producing Party shall so advise the Requesting Party, at which point the Requesting Party and Producing Party shall meet and confer regarding the issue.

### B.   Types of ESI that Need Not Be Preserved or Searched.

The Parties agree that there is no need to preserve or search the following categories of ESI, which are deemed for purposes of this section to be not reasonably accessible:

1. random access memory (RAM), temporary files, or other ephemeral data;

2. on-line access data such as temporary internet files, histories, caches, cookies, etc.;

3. data in metadata fields that are frequently updated automatically, such as last-opened dates;

4. ~~shadowed,~~ damaged, residual, "deleted," "slack," "fragmented," "unallocated,", or other data accessible only by use of computer forensics;

5. data stored on photocopiers, scanners, and/or fax machines;

6.  data maintained in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are more accessible elsewhere;

7.  operating system files, executable files;

8.  structural files not material to individual file contents that do not contain substantive content (e.g., .CSS, .XSL, .DTD, etc.); and

9.  non-substantive embedded files (e.g., company logos or signature blocks), as long as they are displayed in the parent document.

**C.      Inaccessible Documents.**

The Parties agree that there is no need, at this time, to search ESI from any source a Party has identified to the Requesting Party as not reasonably accessible pursuant to Federal Rule 26(b)(2)(B), although the Parties must take reasonable steps to preserve such ESI if potentially relevant or responsive. All Parties reserve the right to request to have this ESI searched if some reason emerges for believing that a particular source contains responsive information If a Party determines that a source is not reasonably accessible pursuant to Federal Rule 26(b)(2)(B) during its search and collection process, then it will provide sufficient information about the source to enable the Parties to confer in good faith about the accessibility thereof. A decision to preserve any ESI shall not be interpreted as an agreement that the preserved material is relevant to the issues in the case or constitutes reasonably accessible ESI that could be subject to review and production.

The Parties further agree that there is no need to modify or suspend the procedures used by them in the ordinary course of business to backup data and systems for disaster recovery and

~~similar purposes related to continuity of operations.~~

## IV.    PRIOR PRODUCTIONS.

To the extent the Requesting Party has requested production of documents or ESI that can be satisfied by the re-production of documents or ESI that were previously produced by the Producing Party in other litigation or proceedings, the Producing Party, subject to its objections to the request, may, at its election, produce the previously-produced documents or ESI in the same form in which they originally were produced ~~or prepared for production~~, even if such form is different from the production specifications in this ESI Order.  In these instances, the Producing Party shall either (1) reproduce the documents or ESI using the same Bates numbers used when the documents or ESI were previously produced, or (2) provide an overlay with the corresponding Bates numbers used when previously produced.  If such documents or ESI have been previously produced in more than one other proceeding, the Parties shall meet and confer regarding the appropriate Bates numbers to use. If the Producing Party elects to produce ~~previously-produced~~<u>previously produced</u> documents, the Parties agree to meet and confer in good faith (1) should a Receiving Party make a tailored good-faith request for the reproduction of documents or ESI in a different format than originally produced and (2) to resolve any technical issues with any such productions. This provision does not waive the right of a Party to object to any requests for reproduction of documents and ESI from such prior productions.

## V.    SEARCH PROCEDURES FOR ELECTRONIC DOCUMENTS.

<u>The Parties shall participate in an iterative and cooperative approach with respect to the identification of relevant custodians and information sources.</u> The Parties may identify potentially <u>relevant or</u> responsive ESI and documents by: identifying and selecting the custodians, databases, and non-custodial sources that are the most likely to possess <u>relevant or</u>

responsive documents and information and (a) applying agreed-upon search terms to identifiable

data repositories and custodial data sources- in accordance with the provisions of Section V.A.,

or (b) identifying documents or ESI that are responsive to the Requesting Party's discovery

requests directly, where search terms are not necessary to identify responsive documents or ESI,

and/or (c) utilizing Technology Assisted Review as described below in Section V.B.  The Parties

shall meet and confer in good faith regarding the search methodology and search terms, if any, to

be applied, and use of technology assisted review or similar technologies, if any;

~~responsive~~relevant data sources, including the identities of custodians and  custodial ~~or~~, non-

custodial, or third-party data sources; ~~and~~ any applicable and appropriate timeframes for the

collection, review, and production of ESI and documents; and validation processes. The

Producing Party will be reasonably transparent regarding the universe of documents subject to

targeted collections, culling, or application of search terms. No Party is relieved of its overall

discovery obligations through the use of search terms or Technology Assisted Review.

    A.    **Use of Search Terms.**

If a Producing Party elects to use search terms to identify potentially relevant or responsive

documents and ESI, it shall identify and propose to the Requesting Party an initial list of search

terms, custodians, custodial data sources, and non-custodial data sources that are likely to contain

relevant or responsive documents and ESI, and the Parties will ~~meet and confer regarding~~discuss

those terms and any additional terms, or other requested changes, proposed by the Requesting

Party.  The Parties will meet and confer regarding the search terms to be used, as well as

information to improve the effectiveness of the search terms (e.g., relevant project and code names,

code words, acronyms, abbreviations, and nicknames, if any). The Parties shall participate in an

iterative and cooperative approach in which the Parties will meet and confer regarding reasonable

9

and appropriate methods to increase the relative precision or proportion of relevant or responsive ESI and documents within the search results and production sets, including the exchange of "hit count" reports. To the extent the Parties cannot reach agreement on the application of, or procedures for, any search or filtering processes, the Parties may raise such issues for resolution by the Court or its designee.

### B.   Use of Technology Assisted Review.

If a Producing Party elects to use technology assisted review or any other form of machine learning in the review and production of ESI beyond search terms or keywords (collectively, "TAR") ~~for purposes of culling ESI potentially responsive to a Requesting Party's request~~, it shall disclose that intent to the Requesting Party, and the Producing Party shall meet and confer with the Requesting Party regarding how such technologies will be implemented, before the Producing Party employs any TAR. No TAR process will be "stacked" with the application of search terms or keywords , i.e., TAR will not be applied before or after any application of search terms. The Parties will meet and confer regarding any TAR issues that arise prior to submitting the issue to the Court or its designee for resolution.  If the Parties cannot reach resolution, the matter may be submitted to the Court or its designee for resolution. By agreeing to use TAR in this Litigation, the Parties do not acknowledge or concede that they are obligated to use TAR in any other matter, including, without limitation, matters pending in any state or federal courts. Moreover, by agreeing to use TAR in this Litigation, the Parties do not intend to waive any rights or protections pursuant to privacy, confidentiality, attorney-client privilege, work product, and any other privileges, protections, or objections to discovery. The Parties preserve all such rights.

### C. **Relevant or Responsive Documents.**

The fact that a document may have been retrieved by application of search terms or TAR does not render it automatically relevant or responsive and producible, and a Producing Party may withhold from production ~~such document if~~irrelevant or non-responsive and~~/or permissible~~ privileged ESI as permitted under the Federal Rules.  To the extent any Party identifies relevant or responsive ESI or documents outside of search terms or the TAR methodology noted above, all such non-privileged documents shall be produced.

Nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing a review to determine if documents captured by search terms are relevant or responsive ~~to the Requesting Party's discovery requests~~. Similarly, nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents determined to be relevant or responsive. Further, nothing in this ESI Order requires the production of irrelevant or non-responsive documents ~~captured by search terms or TAR that are not relevant and responsive to the Requesting Party's request~~.

## VI. PRODUCTION OF HARD COPY AND ESI DOCUMENTS.

### A. Deduplication.

To reduce the unnecessary costs of reviewing and producing exact duplicate documents, each Party may use reasonable, good-faith efforts to avoid the production of duplicate ESI through the use of global deduplication.  Deduplication shall be done on the family level based on MD5 or SHA hash values using industry standard deduplication technology.  The Parties agree that an email that includes content in the "BCC" or other blind copy field shall not be treated as a duplicate of any otherwise identical email that does not include content in the "BCC" or other blind copy field.

No party shall eliminate duplicates ~~of~~ ESI by manual review or some method other than by use of the technical comparison using MD5 or SHA hash values outlined above. Hard Copy Documents shall not be eliminated as duplicates of ESI.

For exact duplicate documents, the Producing Party will produce the Metadata described in Exhibit 1 for the single production copy.  If more than one custodian possesses a duplicate, the Producing Party shall identify each custodian who had a copy of the produced document (in the "All Custodians" field as described in Exhibit 1).

If, during the course of its review, the Producing Party identifies a large number of duplicate documents, the Parties may meet and confer regarding a custom deduplication protocol. Except for the removal of extracted logos, no custom deduplication method other than those discussed herein will be implemented before conferring with the Requesting Party.

**B.      Email Threading.**

—      ~~The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. This clause is not to be construed to require the Producing Party to produce metadata for lesser included emails not themselves produced. To the extent a Receiving Party requests the production of specific lesser inclusive copies, the Parties will promptly meet and confer and will not unreasonably deny particularized requests.~~

_      No email may be withheld from production or omitted from a privilege log because it is included in whole or in part in a more inclusive email; provided, however, that the Parties may use email threading for their own internal review or other internal processes to reduce the volume of entirely duplicative content within email threads._

12

### C.      Production of Hard Copy Documents – Format.

All Hard Copy Documents will be produced as single-page, black-and-white 300 DPI, Group IV* TIFF images (for non-color documents) or color JPG images with LZW compression (for color documents), where appropriate, with OCR text provided in document level text files, objective Metadata fields pursuant to Exhibit 1, and load files pursuant to Exhibit 2. In scanning Hard Copy Documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). Document pages which have affixed notes, such as Post-It notes, shall be imaged with and without the note attached.

### D.      Production of ESI – Format.

All spreadsheet files (e.g., Microsoft Excel, Corel Quattro, etc.) shall be produced in Native Format with TIFF placeholder images.

All word processing files (e.g., Microsoft Word) containing track changes, comments, hidden text, or embedded file types; presentation files (e.g., Microsoft PowerPoint); image files (e.g., .jpg, .gif); and PDF files shall be produced in Native Format with TIFF placeholder images where reasonably possible, unless redactions are required, in which case such files shall be produced as TIFFs (non-color documents) or JPGs (color documents), as appropriate.

ESI, except that which is redacted, slipsheeted, orAll media files, such as audio and video files, shall be produced in Native Format, shall be produced as single-page, black-and-white, 300 DPI, Group IV* TIFF images or color JPG images with LZW compression where appropriate with corresponding extracted full text provided in document level text files, objective metadata fields pursuant to Exhibit 1, and load files pursuant to Exhibit 2. All ESI produced as images shall

~~be imaged, to the extent reasonably possible, with track changes, comments, hidden text, and/or~~ ~~underlying annotations rendered on the image.~~ with TIFF placeholder images.

Emails; word processing files (e.g., Microsoft Word) not containing track changes, comments, hidden text, or embedded file types; and digital photographs shall be produced as TIFFs (for non-color documents) or JPGs (for color documents), as appropriate.

The Parties will meet and confer on the production format, including Metadata, of other document types, including for enterprise and third-party-hosted communication platforms or systems, including but not limited to: Zendesk, Slack, Microsoft Teams, Zoom, Nextiva, Discord, Trello, Workvivo, Asana, Basecamp, Confluence, Miro, Monday.com, Whatsapp, Salesforce, Webex, Yammer, Google Chat, Google Hangouts, Skype, Instant Bloomberg, or similar platforms.

Notwithstanding the Parties' stipulations herein, upon reasonable request made by the Receiving Party, the Parties shall confer regarding the production in an alternate format of a document previously produced in accordance with this ESI Order.

~~Spreadsheets, audio/visual/multimedia, and other files that are not conducive to production~~ ~~in image format shall be produced in Native Format, except where such files are image-redacted~~ ~~or slipsheeted pursuant to the terms of this Protocol.~~ ESI produced in Native Format shall be produced with all Metadata contained in or associated with that file to the extent technologically possible consistent with Exhibit 1 and load files pursuant to Exhibit 2. ESI produced in Native Format shall be given a file name consisting of a unique Bates number (e.g., "ABC00000002"). For each Native file produced, the production will include a single-page placeholder TIFF image stamped with this unique Bates number and/or confidentiality designation and containing the phrase: "PRODUCED IN NATIVE FORMAT" or similar language. To the extent that it is available, the original document text shall be provided in a document-level multi-page UTF-8 text

file with a text path provided in the *.dat file; otherwise, the text contained on the slipsheet language shall be provided in the *.txt file with the text path provided in the *.dat file. Native files will be produced in a separate folder on the production media. In advance of depositions, the Parties reserve the right to produce JPG or TIFF versions, as applicable, of any previously produced Native file at their discretion.

No Party may attach to any pleading or any correspondence addressed to the Court or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding a copy of any produced Native document without ensuring that either the corresponding placeholder slip sheet is attached to the document or the corresponding Bates number and confidentiality legend, if any, appears on the document.

Documents produced as TIFF/JPG images shall be named according to the Bates number of the corresponding TIFF/JPG image. Each *.tiff/*.jpg file should be assigned a unique name matching the Bates number of the corresponding image. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff/*.jpg image. These *.tiff/*jpg images should be provided in a separate folder and the number of TIFF/JPG files per folder should be limited to 1,000 files.

**E.    Appearance and Content.**

~~Responsive~~Relevant or responsive ESI that presents imaging or formatting problems shall be promptly identified and the Parties may meet and confer in an attempt to resolve the problems. Producing Parties shall make reasonable efforts to address imaging and formatting issues identified by the Requesting Party.  The Requesting Party agrees to raise these issues within a reasonable timeframe.

**F.    ~~Color~~Non-English Documents.**

~~If a Requesting Party finds the black and white version of a document insufficient, the Requesting Party may request that the Producing Party provide a color image. The Producing Party will not unreasonably deny a request to provide a color image. If the parties cannot come to an agreement regarding whether a document must be produced in color, the good cause standard will govern the dispute. However, the Requesting Party does not have to make a good cause showing when it initially requests the document in color; instead, the Requesting Party may simply identify the document. If a Producing Party converts a document to color image in response to a request from a Receiving Party, the Producing Party shall do so in JPEG, TIFF or such other format as agreed with the Requesting Party.~~

G.   ~~Non-English Documents.~~

When documents are produced that contain languages other than English, in whole or in part, the Producing Party shall produce each such document in the original language or languages in which it was written when collected. The Producing Party has no obligation to create a translation of the documents or any portion thereof. The Parties will meet and confer as necessary concerning procedures for using translations at depositions and at trial. In the event the Parties cannot reach agreement, the matter may be submitted to the Court or its designee for determination.

~~H~~**G**.   **System Files.**

Each Producing Party will use its best efforts to filter out common system files and application executable files using the national software reference library NIST hash set list.

~~I~~**H**.   **Production of Redacted Documents/Information.**

Absent further order of the Court or agreement of the Parties, no redactions may be made within any ESI or Hard Copy Document unless the information is subject to the attorney-client or work-product privileges. To the extent that a Producing Party maintains that an otherwise relevant or responsive document contains certain highly sensitive information that should be redacted for reasons

other than those permitted by this section, the Producing Party and Requesting Party shall meet and confer concerning the proposed treatment of such information; if the Parties cannot reach resolution, the Producing Party may submit the document to the Court or its designee for review *in camera* and seek an order concerning the appropriate treatment of the disputed information.

**Redactions**. To the extent that a responsive document contains information protected by the attorney-client privilege or work product doctrine, the Producing Party may produce that document in a redacted form and identify such information on their privilege log or produce the non-privileged metadata. To the extent a Producing Party produces responsive privileged documents in redacted form with non-privileged metadata in lieu of including such documents on their privilege log, either the document in redacted form or its metadata will indicate the nature of the privilege redaction (attorney work-product or attorney-client privilege) and upon request, the Producing Party will identify all privilege redacted documents by bates number. The Producing Party may also produce in a redacted form information in a responsive document that: (1) is subject to federal, state, or foreign privacy requirements (e.g., HIPAA; 21 C.F.R. §§ 20.111, 20.63, and 314.80; 45 C.F.R. §§ 160 and 164; GDPR); (2) constitutes irrelevant personal information of an intimate or private nature; (3) uniquely identifying information related to non-diabetes products[1]; or (4) information identifying members of P&T Committees other than Pharmacy Benefit Manager ("PBM") employees.

---

[1] Products that are used to treat diabetes include but are not limited to: the at-issue drugs (identified in complaints in any actions consolidated in this Litigation and any later amendments); any generic, biosimilar or private label insulin (for example, any Relion brand or any other private label or off label insulins, Insulin Aspart, Semglee, Admelog, Insulin Lispro Injection U-100, Insulin Lispro Protamine, Insulin Lispro Injectable Suspension Mix75/25 KwikPen, Insulin Lispro Injection Junior KwikPen and/or any other authorized generic insulin); amylinomimetic injectables; GLP-1 receptor agonists; alpha-glucosidase inhibitors; biguanides; dopamine-2 agonists; DPP-4 inhibitors; meglitinides; SGLT-2 inhibitors. Defendants do not agree that all of the products identified herein are relevant to this Action, and a Producing Party's decision not to redact information relating to any product shall not be construed as an admission that such product is relevant to this Action. To the extent a case brings claims based on products other than those used to treat diabetes, the parties to that case shall meet and confer as to appropriate redactions with respect to that Receiving Party.

~~Examples of "uniquely identifying information related to non-diabetes products" include, but are not strictly limited to, brand or generic names of non-diabetes products, units and/or dosages of non-diabetes products, National Drug Codes of non-diabetes products, indications of non-diabetes products if they are specific enough to allow for unique product identification, the names of disease states or therapeutic areas associated with non-diabetes product if they are specific enough to allow for unique product identification, and names of direct competitor drugs for non-diabetes products.~~

~~All Parties reserve their rights to challenge the appropriateness of any redactions and the discoverability of the redacted information, including redaction of information identifying members of P&T Committees, other than PBM employees.  The Parties will meet and confer regarding any disputes related to any redaction and will not unreasonably deny good-faith requests for production of redacted information.  The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable. Nothing contained herein shall be used to demonstrate that any document or group of documents, or any portion of any document or group of documents, is or is not properly discoverable in the event that a Party moves for production thereof.~~

Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, <u>and a metadata field shall indicate that the document contains redactions and the basis for the redaction</u> (e.g., "Redacted ~~Privileged," "Personal Information," "Other Drug Information"). Where a~~ <u>A/C Privilege," "Redacted – AWP"). Where a relevant or responsive</u> document contains both ~~privileged and non-privileged responsive~~<u>redacted and non-redacted</u> content, the ~~Producing Party shall redact the privileged material and~~<u>Parties shall</u> produce the remainder of the <u>non-redacted portions of the</u>

document and the Extracted text/OCR text corresponding to the non-redacted portions.

1.  Spreadsheets. Spreadsheet files requiring redaction, including, without limitation, Microsoft Excel files, will be redacted in Native Form.

2.  Other Documents. All images of redacted Native files shall be processed to show and reveal all comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its Native application. When possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (e.g., date, subject line, etc.) should not be redacted unless it is independently privileged. The production of a document in a redacted form does not affect the Parties' obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable.

Native Excel or other spreadsheet files that are redacted may be produced in Native or near Native Format by overwriting the data contained in a particular cell, row, column or tab with the word "Redacted," using industry-standard tools, and shall make clear the reason for the redaction (e.g., "Redacted – Privilege"), provided that such overwriting does not impact any other, non-redacted cells or information in the spreadsheet (e.g., if a cell redacted for privilege contains a numerical value that is used in a formula by other, non-redacted cells in the spreadsheet). If a redaction does impact non-redacted cells/information, the Parties shall promptly meet and confer to resolve the issue. The Parties acknowledge that redacting the native may alter the metadata of the produced file; however, the metadata produced pursuant to Exhibit 1 will be the metadata

~~extracted from the original native file, other than metadata containing redacted information.~~

~~Any other native files that are redacted may be produced as black-and-white or color (as applicable), single-page TIFF files with OCR text provided in document level text files, with load files pursuant to Exhibit 2, which shall include all information contained in the original file.~~

### ~~J~~**I.**     **Confidentiality of Produced ESI.**

Documents and ESI shall be produced pursuant to the terms of the Protective Order entered in this Litigation. Any objections to production shall otherwise be made pursuant to the Local Rules, Federal Rules ~~of Civil Procedure~~, or the Federal Rules of Evidence. If the Producing Party is producing ESI in TIFF format subject to a claim that it is protected from disclosure under the Protective Order, or other order issued in this Litigation, the document shall be stamped electronically on each page in accordance with the applicable Order.

If the Producing Party is producing ESI in Native Format subject to a claim that it is protected from disclosure under the Protective Order, or other order issued in this Litigation, then the designation shall be included in a separate field in the .dat load file, as well as the TIFF placeholder or where not produced with a TIFF placeholder, the storage device (e.g., CD, USB, or hard drive) containing such native ESI data shall be labeled in accordance with the applicable order.

### ~~K~~**J.**     **Other Production Specifications.**

All productions will include these additional specifications:

1. ESI will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format. The Concordance (*.dat) load file shall be provided with UTF-8 encoding with the full path and file name to the files produced

pursuant to Exhibit 2, and shall include the Metadata fields identified below (Exhibit 1);

2.  Document level .txt files for all Native documents containing extracted full text or OCR text (OCR only if extracted text is not available or if the document has been redacted), as follows:

    a.  All emails, unredacted ESI, and redacted spreadsheets produced as Native files, should be provided with complete document-level Extracted text files. Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (i) the individuals to whom the communication was directed ("To"); (ii) the author of the email communication ("From"); (iii) who was copied and blind copied on such email ("CC" and "BCC"); (iv) the subject line of the email ("RE" or "Subject"); (v) the date and time of the email; and (vi) the names of any attachments.

    b.  In the event a document, other than spreadsheets (e.g., Excel files), contains text that is to be redacted, OCR text files should be provided for any unredacted portions of the documents. Document-level OCR Text files shall also be provided for all Hard Copy Documents. OCR software should be set to the highest quality setting during processing. Documents containing foreign language text must be OCR'ed using the appropriate settings for

that language, (e.g., OCR of Asian language documents must properly capture the relevant Asian characters). Settings such as "auto-deskewing" and "auto-rotation" must be turned on during the OCR process to maximize text recognition on any given page.

c. The Extracted text and/or OCR text for all deliverables should be in separate document-level, UTF-8 encoded TXT files provided in a separate folder. The number of TXT files per folder should be limited to 1,000 files.

3. Bates number branding and confidentiality designation (if any) on the face of the image in a location that does not obliterate, conceal, or interfere with any information from the source document;

4. A TIFF placeholder embossed with the corresponding confidentiality designation and Bates number shall be produced for all ESI produced in Native Format;

5. Each Bates number will: (i) be unique across the entire document production; (ii) maintain a constant length across the entire production (i.e., ABC00000001-with no space between the prefix and the number, padded to the same number of characters); (iii) contain no special characters; and (iv) be sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production, and the skipped number or set of numbers should be noted with a placeholder;.

6. PowerPoint slides/presentations that are produced in TIFF format will be produced with any notes or comments contained therein.  Word-processing documents that

~~are produced in TIFF format will be produced with any track changes or comments visible on the face of the corresponding TIFF images;~~

7~~6~~. Metadata and coding fields shall be produced for a document as set forth in Exhibit 1. If Metadata fields are not produced for the reasons set out in Exhibit 1, the Producing Party shall include the fields in the header row of the .DAT and leave the field blank for the corresponding document(s); and

8~~7~~. In the event any document or ESI (or portion thereof) produced is password protected, the Producing Party shall make all reasonable efforts to provide the password needed to access the document or ESI.

9~~8~~. Compressed file types (e.g., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in an iterative manner to ensure that an archive within an archive is decompressed into the lowest possible compression resulting in individual files.

10~~9~~.      Documents with dynamic fields for file names, dates, and times will be processed to show the field code (e.g., "[FILENAME]"), rather than the values for such fields existing at the time the file is processed.

11~~10~~.      All provided Metadata pertaining to dates and times will be standardized to UTC or other disclosed time zone.

## VII.   FAMILY RELATIONSHIPS OF ESI.

### A.   Family Relationships.

Parent-child relationships, such as the association between an attachment and its parent document, or between embedded documents and their parent documents, or between a document with document stubs or links to internal or non-public documents and those stubbed out documents

or internal or non-public documents so linked,[1] will, to the extent possible, be preserved. Attachments should be consecutively produced with their parent.

A document and all other documents in its Document Family, emails with attachments, files with extracted embedded OLE (object linking and embedding) documents, and email or other documents together with any documents referenced by document stubs, or via links to internal or non-public document sources within those emails or other documents, all constitute Document Families. Where feasible, if any member of a Document Family is produced, all members of that family must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

For ESI, Document Families must be preserved by assigning sequential Bates numbers to all files within a parent-child group and by providing accurate attachment ranges for those files in the metadata fields required. Attachments to emails or substantive embedded files will not be eliminated from the parent e-mail/document. Rather, parent-child relationships (the association between an attachment and its parent document, or for embeddings, the association between embedded documents and their containers) will be preserved. Substantive embedded documents (*e.g.*, a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records (either in full, redacted, or via a non-responsive or privilege slipsheet) and related back to the respective top-level parent document via the Beginning Attachment Bates Number and Ending Attachment Bates Number fields. The Parties agree that

---

[1] For documents shared via links or pointers, or other "modern attachments" (i.e., hyperlinks pointing to files stored in the cloud or a shared repository such as SharePoint and other types of collaborative data sources, instead of being directly attached to a message as has been historically common with email communications), the Parties shall meet and confer regarding the most reasonable means to produce such documents, as well as the versions of such documents (e.g., the as-sent version, current version, etc.) to be collected and produced.

fully non-responsive attachments to responsive parent documents need not be produced other than as slipsheets detailed herein; however, non-responsive parent documents must be produced if they contain any responsive attachments.  Where the Parties withhold a fully non-responsive, non-privileged attachment, they will produce a TIFF slip sheet with a Bates Number in place of the attachment, along with all metadata associated with the document being withheld as specified in Exhibit 1.  No extracted text need be provided.  The TIFF slip sheet for each withheld attachment will state "Family Member Withheld as Non-Responsive."  The Requesting Party has the right to request the production of any attachment withheld solely on the ground of non-responsiveness. If the Parties cannot promptly reach an agreement, the Requesting Party may raise the issue with the Court.

Where an electronic document that is part of a family is withheld, and its relationship to the rest of that Document Family is indicated using slipsheets, the Producing Party shall provide one Bates-numbered slipsheet for each withheld document.

If a member of an ESI Document Family that has otherwise been determined to be responsive cannot technically be processed (*e.g.*, unsupported file format, file corruption, inaccessible password-protected document), those technical problems shall be identified and disclosed to the Requesting Party by production of a Bates-labeled slipsheet that states "Technical issue – file cannot be processed." A Requesting Party may thereafter raise with the Producing Party any questions or concerns, and if the Parties cannot promptly reach an agreement, the Requesting Party may raise the issue with the Court..

## B.    Embedded Objects.

The Parties agree that non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and

need not be produced as separate documents by a Producing Party (i.e., such embedded objects will be treated as produced within the document itself, rather than as separate documents).

Substantive embedded objects or files, where produced, are to be produced as family groups and such embedded files should be assigned Bates numbers that directly follow the Bates numbers of the documents within which they are embedded. Should a Party believe the volume of substantive embedded objects results in the review being overly burdensome, the Parties shall meet and confer. The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this provision.

**VIII.   DATABASES AND STRUCTURED, AGGREGATED, OR APPLICATION DATA.**

~~To the extent that a Producing Party produces Structured Data or similar data stored in a database, upon production the Producing Party will identify the database or platform to the Requesting Party.~~ The Parties ~~agree to~~will meet and confer to address ~~any concerns with~~ the identification, production, and production format of any relevant or responsive data contained in a database or other Structured ~~Data~~Date or aggregated data source or otherwise maintained by an application. The Parties will reasonably cooperate in the exchange of information concerning such databases to facilitate discussions on productions and production format, including available data fields/objects and schema. If the Parties cannot reach agreement, the matter will be decided by the Court or its designee.

~~To the extent a Producing Party is constrained from producing responsive Structured Data because of a third-party license or because software necessary to view the data is hardware-dependent, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format. The Producing Party shall produce exports and reports in a reasonably usable form. To avoid doubt, information will be considered~~

~~reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format.~~

## IX.   PRODUCTION MEDIA.

Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), via secure FTP site or similar electronic secure file transfer system, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media").  Each piece of Production Media shall include a unique identifying label and cover letter including the following information:

- Name of the Litigation and its case number;

- Name of the Producing Party;

- Date of the production (mm/dd/yyyy);

- Production volume and/or Bates number range; and

- Confidentiality Designation, if any.

The foregoing labeling information shall also be provided in a .txt file at the root folder of the corresponding production deliverable.  Any replacement Production Media or documents shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced.

Producing Parties may encrypt their Production Media, and if so, shall provide a key to decrypt the Production Media in a separate communication.

## X.   OBJECTIONS TO ESI PRODUCTION.

If any formatting requirements or other specifications agreed to in this ESI Order are later determined by the Producing Party to be technically infeasible, unduly burdensome, or unreasonably costly, the Party, during the meet-and-confer process, shall: (i) describe the nature

of the objection with reasonable particularity; (ii) provide the Requesting Party with the basis for declining to produce such ESI; and (iii) indicate whether the Producing Party is willing to offer an alternative. The Parties shall negotiate in good faith concerning the production of any such ESI. If the Parties are unable to reach agreement, the Parties shall submit any dispute to the Court for resolution.

## XI.    COSTS.

Unless otherwise ordered, the costs of producing documents and ESI pursuant to this Order shall be borne by each Producing Party.  If the Parties cannot reach an agreement on a disputed matter, any Party may submit the disputed matter to the Court for resolution.

## XII.    NO DESIGNATION OF DISCOVERY REQUESTS.

Productions of Hard Copy Documents and ESI in the form set out in this ESI Order are reasonably usable and need not be organized and labeled to correspond to discovery requests.

## XIII.    ~~E-DISCOVERY LIAISONS~~E-DISCOVERY LIAISONS.

The Parties agree that each party will have an individual knowledgeable about that Party's E-Discovery systems and technologies in attendance at meet-and-confers on discovery-related matters. This individual need not be the same for every meet-and-confer, but the individual attending for each Party will be knowledgeable about the E-Discovery items at issue in the specific meet-and-confer(s) that they attend.

## XIV.    MISCELLANEOUS PROVISIONS.

A.    Consistent with Section I.E of this ESI Order, and subject to any further agreement among the Parties or order of the Court, the Parties shall produce case-specific documents (i.e., documents specific to the claim of a given Plaintiff, produced by Plaintiffs or Defendants) for any Plaintiff selected for a bellwether trial and any Plaintiff that files a class action on behalf of a

proposed class and/or is subsequently designated by counsel as an additional or alternative proposed class representative in accordance with the production format specified herein; provided, however, that the Producing Party may elect to produce such materials in their Native Format. To the extent production of case-specific documents for any Plaintiff selected for a bellwether trial or any named or designated class Plaintiff as described above presents an issue for any Party, the Parties shall reasonably confer, and may present any disputes to the Court or its designee.

B.      The Parties will act in good faith as required by law and use these procedures to identify and reduce the potential for disputes.

C.      The Parties are aware of the importance the Court places on cooperation and commit to continue to consult and cooperate reasonably as discovery proceeds. No Party may seek judicial relief from the Court or its designee unless it first has conferred with the applicable Producing or Requesting Party.

STIPULATED AND AGREED TO BY THE PARTIES ON _____, 2024

**[INSERT SIGNATURE BLOCKS FOR COUNSEL OF RECORD]**

## EXHIBIT 1

### FIELDS and METADATA TO BE PRODUCED

1.     The load files accompanying scanned Hard Copy Documents will include the following objective coding fields, to the extent applicable:

| Field | Field Description |
|---|---|
| CUSTODIAN (DPF) | The custodian of the document even if de-duplicated prior to production or location of item |
| BEGBATES (DPF) | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a Document Family |
| ENDATTACH (DPF) | Ending Bates number of a Document Family |
| PAGECOUNT (DPF) | Number of pages |
| TEXTLINK (DPF) | Link to text file for the document |

2.   The following metadata fields shall be included in Load files accompanying ESI, to the extent available, and the ESI they are related to is unredacted and not privileged:

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| BEGBATES (DPF) | First Bates identifier of item | First Bates identifier of item | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item | Last Bates identifier of item | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a document family | Starting Bates number of a Document Family | Starting Bates number of a Document Family |
| ENDATTACH (DPF) | Ending Bates number of a document family | Ending Bates number of a Document Family | Ending Bates number of a Document Family |
| PAGECOUNT (DPF) | Number of pages | Number of pages | Number of pages |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| ALL CUSTODIANS | The custodian of the document being produced. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | The custodian of the document being produced. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | The custodian of the document being produced. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. |
| CONFIDENTIAL | Confidentiality designation, if any; otherwise blank. | Confidentiality designation, if any; otherwise blank. | Confidentiality designation, if any; otherwise blank. |
| AUTHOR | Document author from Metadata | | |
| FROM | | Sender of message | Sender of calendar invite |
| TO | | Recipient(s) of message or calendar invite | Recipient(s) of calendar invite |
| CC | | Copied recipient(s) of message or calendar invite | |
| BCC | | Blind copied recipient(s) of message or calendar invite | |
| SUBJECT | | Subject of message | Subject of calendar invite |
| SENTDATE | | The sent date of the message in the format MM/DD/YYYY | Date calendar invite sent (if any) |
| SENTTIME | | The sent time of the message in the format HH:mm:ss | Time calendar invite sent (if any) |
| RECEIVEDDATE | | The received date of the message in the format MM/DD/YYYY | The received date of the invite in the format MM/DD/YYYY |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| RECEIVEDTIME | | The received time of the message in the format HH:mm:ss | The received time of the invite in the format HH:mm:ss |
| FILENAME | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent |
| FILEEXTEN | File extension | File extension | File extension |
| FILESIZE | Size of the file in bytes | Size of the file in bytes | Size of the file in bytes |
| HASH | MD5 or SHA1 hash of the document | MD5 or SHA1 hash of the email | MD5 or SHA1 hash of the calendar invite |
| NATIVELINK | Link to native file (if any) | Link to native file (if any) | Link to native file (if any) |
| TEXTLINK | Link to text file for the document | Link to text file for the email | Link to text file for the calendar invite |
| TITLE | Title from a document's properties | | |
| DATECREATED | Date file was created | | |
| TIMECREATED | Time file was created | | |
| DATEMODIFIED | Date file was last modified | | |
| TIMEMODIFIED | Time file was last modified | | |
| TRACKCHANGE | (Y/N) Field for documents with track changes | | |
| FAMILYDATE | Populated for all documents. Document families populated with parent date. MM/DD/YYYY | Populated for all documents. Document families populated with parent date. MM/DD/YYYY | |

32

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| PRODVOL | Production volume number | Production volume number | Production volume number |
| REDACTION | (Y/N) Field for documents with redactions | (Y/N) Field for documents with redactions | (Y/N) Field for documents with redactions |

Such Metadata field values will be extracted from the native file and will be produced to the extent available at the time of collection and processing, except that they may be redacted if privileged or if the metadata field values contain information protected by law or subject to an order of this Court. This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of ESI, that do not exist as part of the original metadata of the document, or that would be burdensome or costly to obtain.

If necessary, the Metadata for text messages, collaboration system messages (e.g., Chatter), social media messages, and other ESI that does not conform confirm to the Metadata listed here, shall be determined by the meet-and-confer as outlined in Paragraph I.D of this ESI Order.

## EXHIBIT 2

## REQUESTED LOAD FILE FORMAT FOR ESI

1.      **Delimited Text File.** A delimited text file (.DAT File) containing the fields listed in Exhibit 1 should be provided. There must be one row in this load file for every document in the deliverable; and the file must terminate with a carriage return.  The delimiters for the file should be Concordance defaults:

- Comma – ASCII character 20 (¶)

- Quote – ASCII character 254 (þ)

- Newline – ASCII character 174 (®)

2.      **Image Cross-Reference File (.opt).** The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows:

ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount.

| | |
|---|---|
| ImageID: | The unique designation that Concordance and Opticon use to identify an image. This should be the BegBates Number of the Document. |
| VolumeLabel: | The name of the volume. |
| ImageFilePath: | The full path to the image file. |
| DocumentBreak: | If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document. |
| FolderBreak: | Leave empty. |
| BoxBreak: | Leave empty. |

PageCount:                 Number of pages in the Document.

**3.**      **Sample Data.**

PROD00000001,VOL001,E:\100\ PROD00000001.TIF,Y,,2

PROD00000002, VOL001,E:\100\ PROD00000002.TIF,,,,

PROD00000003, VOL001,E:\100\ PROD00000003.TIF,Y,,,4

PROD00000004, VOL001,E:\100\ PROD00000004.TIF,,,,

PROD00000005, VOL001,E:\100\ PROD00000005.TIF,,,,

PROD00000006, VOL001,E:\100\ PROD00000006.TIF,,,,

4882-7558-3906, v. 2

| Summary report: Litera Compare for Word 11.6.0.100 Document comparison done on 3/22/2024 10:37:51 AM | |
|---|---|
| **Style name:** JD Color | |
| **Intelligent Table Comparison:** Inactive | |
| **Original filename:** Ex. C - Defendants' Proposed ESI Protocol.docx | |
| **Modified filename:** 2024 0322 Insulin MDL - Plaintiffs Proposed ESI Protocol.docx | |
| **Changes:** | |
| Add | 97 |
| Delete | 63 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 160 |

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case 2:23-md-03080**<br>**MDL No. 3080**<br><br>**JUDGE BRIAN R. MARTINOTTI**<br>**JUDGE RUKHSANAH L. SINGH** |

**THIS DOCUMENT RELATES TO: ALL CASES**

**CASE MANAGEMENT ORDER #___**

**(STIPULATION AND ORDER GOVERNING THE PRODUCTION OF
ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS)**

The Parties hereby submit the following Stipulation and Order Governing the Production of Electronically Stored Information and Hard Copy Documents ("ESI Order"):

**I.     GENERAL.**

**A.**     The procedures and protocols set forth in this Protocol shall govern the production of electronically stored information ("ESI") and hard copy documents in this Litigation, unless the Parties agree in writing to change them or they are changed by the Court.  This ESI Order is intended to aid the Parties by providing a more predictable, cost-effective, and efficient management structure for facilitating the exchange of ESI and hard copy documents.  Except as specifically set forth herein, nothing in this ESI Order shall supersede the Parties' obligations and protections under the Federal Rules, of Civil Procedure ("Federal Rules"), the Local Civil Rules for the U.S. District Court for the District of New Jersey ("Local Rules"), and any other applicable orders and rules.

**B.**     The Parties acknowledge their duty to work together cooperatively throughout the discovery process. The Parties shall promptly meet and confer in good faith on issues regarding

1

ESI, as necessary, including issues relating to compliance with this ESI Order, custodians, data sources, and search methodologies (e.g., search terms and other methods of identifying responsive ESI).  In the event the Parties cannot reach agreement, disputes may be submitted to the Court or its designee for determination.

      **C.**    By stipulating to this ESI Order and agreeing to produce ESI and hard copy <u>documents</u>, generally or in a particular form or forms, no Party waives any objections to producing any particular document or category of documents on any grounds whatsoever.

      **D.**    If any Producing Party identifies a circumstance where application of this ESI Order is not technologically practicable or possible, or if it cannot comply with any material aspect of this ESI Order, or if compliance would be impossible or unreasonable, the Producing Party will disclose to the Requesting Party the reasons for, and circumstances surrounding, the impracticality or impossibility of compliance with this ESI Order, and the Parties will meet and confer in an effort to reach agreement on an appropriate exception to this ESI Order. In the event the Parties cannot reach agreement, the matter may be submitted to the Court or its designee for determination.

      **E.**    This ESI Order shall apply to all Parties in this litigation, except where a Party seeks an exception to this ESI Order as described in Section [I.D.] herein.

      **F.**    All productions in this litigation are subject to the Protective Order separately entered by the Court in this litigation.

## II.   **DEFINITIONS.**

      **"Documents"** shall have the same definition as set forth in Federal Rules of Civil Procedure 26 and 34.

      **"Document Family**" refers to a collection of related pages or files as maintained in the ordinary course of business but consisting of more than a single stand-alone record. A "parent

document" is an electronic file that attaches, or embeds at least one other electronic file (a "child document"). A "Document Family" includes, for example, emails with attachments, or MSOffice files embedded within another MSOffice document. For the avoidance of doubt, ESI referenced in ESI only by a hyperlink or other pointer ("hyperlinked files") shall not be construed to be in the same Document Family solely by virtue of the hyperlink reference.

**"Electronically stored information"** or **"ESI"** means, as referenced in the Federal Rules, information that is stored electronically, regardless of the media or whether it is in the original format in which it was created, as opposed to stored in hard copy (i.e., on paper).

**"Extracted text"** means the text extracted from an electronic document, and includes all header, footer, redlines, comments, notes, and document body information when reasonably available.

**"Hard Copy Document"** means a document collected from physical files (paper) and not from electronic sources.

**"Litigation"** is defined to include all actions currently in MDL No. 3080, *In re: Insulin Pricing Litigation*, or later filed in, added to, or transferred to, or coordinated with (pursuant to a court order or the Parties' express written agreement) MDL No. 3080, and all actions later remanded to their respective transferor courts and any appeals arising from such cases.

**"Load/Unitization file"** means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Unitization file may also contain data relevant to the individual documents, including extracted and user-created Metadata.

**"Media"** means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

**"Metadata"** is used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file. The Metadata fields to be produced are listed in Exhibit 1.

**"Native"** or **"Native Format"** means and refers to the format of ESI in the application in which it was originally created and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

**"OCR text"** means text generated through Optical Character Recognition Process of image/bitmap picture representation of the documents.

**"Parties"** means or refers collectively to the named plaintiffs and defendants in this Litigation, as well as any later added plaintiffs and defendants. "Party" shall refer to a plaintiff or defendant, individually.

**"Producing Party"** means or refers to any Party from which production of ESI or Hard Copy Documents are sought.

**"Receiving Party"** means or refers to any Party to which production of ESI or Hard Copy Documents is made.

**"Requesting Party"** means or refers to any Party seeking production of ESI or Hard Copy Documents.

"**Structured Data**" means data that resides in a fixed field within a record or file, or data stored in a structured format, such as databases (e.g., Oracle, SQL, Access, etc.) or data sets, according to specific form and content rules as defined by each field of the database.

## III.   PRESERVATION.

To reduce costs and burdens of preservation and to ensure proper documents and ESI are preserved, the Parties agree as follows:

### A.   Deleted Files.

If a Producing Party learns during the search and collection process that responsive ESI or Hard Copy Documents that existed as of the date upon which the duty to preserve ESI arose (1) was lost, destroyed, or is no longer retrievable, and (2) cannot be restored or replaced through additional discovery, the Producing Party shall so advise the Requesting Party, at which point the Requesting Party and Producing Party shall meet and confer regarding the issue.

### B.   Types of ESI that Need Not Be Preserved or Searched.

The Parties agree that there is no need to preserve or search the following categories of ESI, which are deemed for purposes of this section to be not reasonably accessible:

1. random access memory (RAM), temporary files, or other ephemeral data;

2. on-line access data such as temporary internet files, histories, caches, cookies, etc.;

3. data in metadata fields that are frequently updated automatically, such as last-opened dates;

4. shadowed, damaged, residual, "deleted," "slack," "fragmented," "unallocated,", or other data accessible only by use of computer forensics;

5. data stored on photocopiers, scanners, and/or fax machines;

6. data maintained in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are more accessible elsewhere;

7. operating system files, executable files;

8. structural files not material to individual file contents that do not contain substantive content (e.g., .CSS, .XSL, .DTD, etc.); and

9. non-substantive embedded files (e.g., company logos or signature blocks), as long as they are displayed in the parent document.

## C.      Inaccessible Documents.

The Parties agree that there is no need, at this time, to search ESI from any source a Party has identified to the Requesting Party as not reasonably accessible pursuant to Federal Rule 26(b)(2)(B), although the Parties must take reasonable steps to preserve such ESI if potentially responsive. All Parties reserve the right to request to have this ESI searched if some reason emerges for believing that a particular source contains responsive information. A decision to preserve any ESI shall not be interpreted as an agreement that the preserved material is relevant to the issues in the case or constitutes reasonably accessible ESI that could be subject to review and production.

The Parties further agree that there is no need to modify or suspend the procedures used by them in the ordinary course of business to backup data and systems for disaster recovery and similar purposes related to continuity of operations.

## IV.    PRIOR PRODUCTIONS.

To the extent the Requesting Party has requested production of documents or ESI that can be satisfied by the re-production of documents or ESI that were previously produced by the

Producing Party in other litigation or proceedings, the Producing Party, subject to its objections to the request, may, at its election, produce the previously-produced documents or ESI in the same form in which they originally were produced or prepared for production, even if such form is different from the production specifications in this ESI Order.  In these instances, the Producing Party shall either (1) reproduce the documents or ESI using the same Bates numbers used when the documents or ESI were previously produced, or (2) provide an overlay with the corresponding Bates numbers used when previously produced.  If such documents or ESI have been previously produced in more than one other proceeding, the Parties shall meet and confer regarding the appropriate Bates numbers to use.  If the Producing Party elects to produce previously-produced documents, the Parties agree to meet and confer in good faith (1) should a Receiving Party make a tailored good-faith request for the reproduction of documents or ESI in a different format than originally produced and (2) to resolve any technical issues with any such productions. This provision does not waive the right of a Party to object to any requests for reproduction of documents and ESI from such prior productions.

## V.    SEARCH PROCEDURES FOR ELECTRONIC DOCUMENTS.

The Parties may identify potentially responsive ESI and documents by: identifying and selecting the custodians, databases, and non-custodial sources that are the most likely to possess responsive documents and information and (a) applying agreed-upon search terms to identifiable data repositories and custodial data sources- in accordance with the provisions of Section V.A., (b) identifying documents or ESI that are responsive to the Requesting Party's discovery requests directly, where search terms are not necessary to identify responsive documents or ESI, and/or (c) utilizing Technology Assisted Review as described below in Section V.B.  The Parties shall meet and confer in good faith regarding the search methodology and search terms, if any, to be

applied, and use of technology assisted review or similar technologies, if any; responsive data sources, including the identities of custodians and custodial or non-custodial sources; and any applicable and appropriate timeframes for production of ESI and documents. The Producing Party will be reasonably transparent regarding the universe of documents subject to targeted collections, culling, or application of search terms. No Party is relieved of its overall discovery obligations through the use of search terms or Technology Assisted Review.

### A. Use of Search Terms.

If a Producing Party elects to use search terms to identify potentially responsive documents and ESI, it shall identify and propose to the Requesting Party an initial list of search terms, custodians, custodial data sources, and non-custodial data sources that are likely to contain responsive documents and ESI, and the Parties will meet and confer regarding those terms and any additional terms, or other requested changes, proposed by the Requesting Party. . To the extent the Parties cannot reach agreement on the application of, or procedures for, any search or filtering processes, the Parties may raise such issues for resolution by the Court or its designee.

### B. Use of Technology Assisted Review.

If a Producing Party elects to use technology assisted review or any other form of machine learning beyond search terms or keywords (collectively, "TAR") for purposes of culling ESI potentially responsive to a Requesting Party's request, it shall disclose that intent to the Requesting Party, and the Producing Party shall meet and confer with the Requesting Party regarding how such technologies will be implemented, before the Producing Party employs any TAR. The Parties will meet and confer regarding any TAR issues that arise prior to submitting the issue to the Court or its designee for resolution. If the Parties cannot reach resolution, the matter may be submitted to the Court or its designee for resolution. By agreeing to use TAR in this Litigation, the Parties

do not acknowledge or concede that they are obligated to use TAR in any other matter, including, without limitation, matters pending in any state or federal courts. Moreover, by agreeing to use TAR in this Litigation, the Parties do not intend to waive any rights or protections pursuant to privacy, confidentiality, attorney-client privilege, work product, and any other privileges, protections, or objections to discovery. The Parties preserve all such rights.

### C.    Responsive Documents.

The fact that a document may have been retrieved by application of search terms or TAR does not render it automatically responsive and producible, and a Producing Party may withhold from production such document if non-responsive and/or permissible under the Federal Rules.  To the extent any Party identifies responsive ESI or documents outside of search terms or the TAR methodology noted above, all such non-privileged documents shall be produced.

Nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing a review to determine if documents captured by search terms are responsive to the Requesting Party's discovery requests. Similarly, nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents determined to be responsive. Further, nothing in this ESI Order requires the production of documents captured by search terms or TAR that are not relevant and responsive to the Requesting Party's request.

## VI.    PRODUCTION OF HARD COPY AND ESI DOCUMENTS.

### A.    Deduplication.

To reduce the unnecessary costs of reviewing and producing exact duplicate documents, each Party may use reasonable, good-faith efforts to avoid the production of duplicate ESI through the use of global deduplication.  Deduplication shall be done on the family level based on MD5 or

SHA hash values using industry standard deduplication technology.  The Parties agree that an email that includes content in the "BCC" or other blind copy field shall not be treated as a duplicate of any otherwise identical email that does not include content in the "BCC" or other blind copy field.

No party shall eliminate duplicates of ESI by manual review or some method other than by use of the technical comparison using MD5 or SHA hash values outlined above. Hard Copy Documents shall not be eliminated as duplicates of ESI.

For exact duplicate documents, the Producing Party will produce the Metadata described in Exhibit 1 for the single production copy.  If more than one custodian possesses a duplicate, the Producing Party shall identify each custodian who had a copy of the produced document (in the "All Custodians" field as described in Exhibit 1).

If, during the course of its review, the Producing Party identifies a large number of duplicate documents, the Parties may meet and confer regarding a custom deduplication protocol. Except for the removal of extracted logos, no custom deduplication method other than those discussed herein will be implemented before conferring with the Requesting Party.

**B.    Email Threading.**

The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. This clause is not to be construed to require the Producing Party to produce metadata for lesser included emails not themselves produced. To the extent a Receiving Party requests the production of specific lesser-inclusive copies, the Parties will promptly meet and confer and will not unreasonably deny particularized requests. .

### C.      Production of Hard Copy Documents – Format.

All Hard Copy Documents will be produced as single-page, black-and-white 300 DPI, Group IV* TIFF images or color JPG images with LZW compression , where appropriate, with OCR text provided in document level text files, objective Metadata fields pursuant to Exhibit 1, and load files pursuant to Exhibit 2. In scanning Hard Copy Documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). Document pages which have affixed notes, such as Post-It notes, shall be imaged with and without the note attached.

### D.      Production of ESI – Format.

ESI, except that which is redacted, slipsheeted, or produced in Native Format, shall be produced as single-page, black-and-white, 300 DPI, Group IV* TIFF images or color JPG images with LZW compression where appropriate with corresponding extracted full text provided in document level text files, objective metadata fields pursuant to Exhibit 1, and load files pursuant to Exhibit 2. All ESI produced as images shall be imaged, to the extent reasonably possible, with track changes, comments, hidden text, and/or underlying annotations rendered on the image.

Spreadsheets, audio/visual/multimedia, and other files that are not conducive to production in image format shall be produced in Native Format, except where such files are image-redacted or slipsheeted pursuant to the terms of this Protocol.  ESI produced in Native Format shall be produced with all Metadata contained in or associated with that file to the extent technologically possible consistent with Exhibit 1. ESI produced in Native Format shall be given a file name consisting of a unique Bates number (e.g., "ABC00000002"). For each Native file produced, the production will include a single-page placeholder TIFF image stamped with this unique Bates number and/or confidentiality designation and containing the phrase: "PRODUCED IN NATIVE

FORMAT" or similar language.

No Party may attach to any pleading or any correspondence addressed to the Court or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding a copy of any produced Native document without ensuring that either the corresponding placeholder slip sheet is attached to the document or the corresponding Bates number and confidentiality legend, if any, appears on the document.

     **E.**    **Appearance and Content.**

Responsive ESI that presents imaging or formatting problems shall be promptly identified and the Parties may meet and confer in an attempt to resolve the problems.  Producing Parties shall make reasonable efforts to address imaging and formatting issues identified by the Requesting Party.  The Requesting Party agrees to raise these issues within a reasonable timeframe.

     **F.**    **Color**.

If a Requesting Party finds the black and white version of a document insufficient, the Requesting Party may request that the Producing Party provide a color image.  The Producing Party will not unreasonably deny a request to provide a color image.  If the parties cannot come to an agreement regarding whether a document must be produced in color, the good cause standard will govern the dispute.  However, the Requesting Party does not have to make a good cause showing when it initially requests the document in color; instead, the Requesting Party may simply identify the document.  If a Producing Party converts a document to color image in response to a request from a Receiving Party, the Producing Party shall do so in JPEG, TIFF or such other format as agreed with the Requesting Party.

     **G.**    **Non-English Documents.**

When documents are produced that contain languages other than English, in whole or in part, the Producing Party shall produce each such document in the original language or languages in which it was written when collected. The Producing Party has no obligation to create a translation of the documents or any portion thereof. The Parties will meet and confer as necessary concerning procedures for using translations at depositions and at trial. In the event the Parties cannot reach agreement, the matter may be submitted to the Court or its designee for determination.

**H.    System Files.**

Each Producing Party will use its best efforts to filter out common system files and application executable files using the national software reference library NIST hash set list.

**I.    Production of Redacted Documents/Information.**

**Redactions**. To the extent that a responsive document contains information protected by the attorney-client privilege or work product doctrine, the Producing Party may produce that document in a redacted form and identify such information on their privilege log or produce the non-privileged metadata. To the extent a Producing Party produces responsive privileged documents in redacted form with non-privileged metadata in lieu of including such documents on their privilege log, either the document in redacted form or its metadata will indicate the nature of the privilege redaction (attorney work-product or attorney-client privilege) and upon request, the Producing Party will identify all privilege redacted documents by bates number. The Producing Party may also produce in a redacted form information in a responsive document that: (1) is subject to federal, state, or foreign privacy requirements (e.g., HIPAA; 21 C.F.R. §§ 20.111, 20.63, and 314.80; 45 C.F.R. §§ 160 and 164; GDPR); (2) constitutes irrelevant personal information of an intimate or private nature; (3) uniquely identifying information related to non-

13

diabetes products[1]; or (4) information identifying members of P&T Committees other than Pharmacy Benefit Manager ("PBM") employees.

Examples of "uniquely identifying information related to non-diabetes products" include, but are not strictly limited to, brand or generic names of non-diabetes products, units and/or dosages of non-diabetes products, National Drug Codes of non-diabetes products, indications of non-diabetes products if they are specific enough to allow for unique product identification, the names of disease states or therapeutic areas associated with non-diabetes product if they are specific enough to allow for unique product identification, and names of direct competitor drugs for non-diabetes products.

All Parties reserve their rights to challenge the appropriateness of any redactions and the discoverability of the redacted information, including redaction of information identifying members of P&T Committees, other than PBM employees. The Parties will meet and confer regarding any disputes related to any redaction and will not unreasonably deny good-faith requests for production of redacted information. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable. Nothing contained herein shall be used to demonstrate that any document or group of documents, or any portion of any document or group of documents, is or is not properly

---

[1] Products that are used to treat diabetes include but are not limited to: the at-issue drugs (identified in complaints in any actions consolidated in this Litigation and any later amendments); any generic, biosimilar or private label insulin (for example, any Relion brand or any other private label or off-label insulins, Insulin Aspart, Semglee, Admelog, Insulin Lispro Injection U-100, Insulin Lispro Protamine, Insulin Lispro Injectable Suspension Mix75/25 KwikPen, Insulin Lispro Injection Junior KwikPen and/or any other authorized generic insulin); amylinomimetic injectables; GLP-1 receptor agonists; alpha-glucosidase inhibitors; biguanides; dopamine-2 agonists; DPP-4 inhibitors; meglitinides; SGLT 2 inhibitors. Defendants do not agree that all of the products identified herein are relevant to this Action, and a Producing Party's decision not to redact information relating to any product shall not be construed as an admission that such product is relevant to this Action. To the extent a case brings claims based on products other than those used to treat diabetes, the parties to that case shall meet and confer as to appropriate redactions with respect to that Receiving Party.

discoverable in the event that a Party moves for production thereof.

Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction (e.g., "Redacted –Privileged," "Personal Information," "Other Drug Information"). Where a document contains both privileged and non-privileged responsive content, the Producing Party shall redact the privileged material and produce the remainder of the document.

Native Excel or other spreadsheet files that are redacted may be produced in Native or near Native Format by overwriting the data contained in a particular cell, row, column or tab with the word "Redacted," using industry-standard tools, and shall make clear the reason for the redaction (e.g., "Redacted - Privilege"), provided that such overwriting does not impact any other, non-redacted cells or information in the spreadsheet (e.g., if a cell redacted for privilege contains a numerical value that is used in a formula by other, non-redacted cells in the spreadsheet).  If a redaction does impact non-redacted cells/information, the Parties shall promptly meet and confer to resolve the issue.  The Parties acknowledge that redacting the native may alter the metadata of the produced file; however, the metadata produced pursuant to Exhibit 1 will be the metadata extracted from the original native file, other than metadata containing redacted information.

Any other native files that are redacted may be produced as black-and-white or color (as applicable), single-page TIFF files with OCR text provided in document level text files, with load files pursuant to Exhibit 2, which shall include all information contained in the original file.

**J.**      **Confidentiality of Produced ESI.**

Documents and ESI shall be produced pursuant to the terms of the Protective Order entered in this Litigation. Any objections to production shall otherwise be made pursuant to the Local Rules, Federal Rules of Civil Procedure, or the Federal Rules of Evidence. If the Producing Party

is producing ESI in TIFF format subject to a claim that it is protected from disclosure under the Protective Order, or other order issued in this Litigation, the document shall be stamped electronically on each page in accordance with the applicable Order.

If the Producing Party is producing ESI in Native Format subject to a claim that it is protected from disclosure under the Protective Order, or other order issued in this Litigation, then the designation shall be included in a separate field in the .dat load file, as well as the TIFF placeholder or where not produced with a TIFF placeholder, the storage device (e.g., CD, USB, or hard drive) containing such native ESI data shall be labeled in accordance with the applicable order.

**K.    Other Production Specifications.**

All productions will include these additional specifications:

1.  ESI will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format. The Concordance (*.dat) load file shall be provided with UTF-8 encoding with the full path and file name to the files produced pursuant to Exhibit 2, and shall include the Metadata fields identified below (Exhibit 1);

2.  Document level .txt files for all Native documents containing extracted full text or OCR text (OCR only if extracted text is not available or if the document has been redacted):

3.  Bates number branding and confidentiality designation (if any) on the face of the image in a location that does not obliterate, conceal, or interfere with any information from the source document;

4. A TIFF placeholder embossed with the corresponding confidentiality designation and Bates number shall be produced for all ESI produced in Native Format;

5. Each Bates number will: (i) be unique across the entire document production; (ii) maintain a constant length across the entire production (i.e., ABC00000001-with no space between the prefix and the number, padded to the same number of characters); (iii) contain no special characters; and (iv) be sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production, and the skipped number or set of numbers should be noted with a placeholder;

6. PowerPoint slides/presentations that are produced in TIFF format will be produced with any notes or comments contained therein.  Word-processing documents that are produced in TIFF format will be produced with any track changes or comments visible on the face of the corresponding TIFF images;

7. Metadata and coding fields shall be produced for a document as set forth in Exhibit 1. If Metadata fields are not produced for the reasons set out in Exhibit 1, the Producing Party shall include the fields in the header row of the .DAT and leave the field blank for the corresponding document(s); and

8. In the event any document or ESI (or portion thereof) produced is password protected, the Producing Party shall make all reasonable efforts to provide the password needed to access the document or ESI.

9. Compressed file types (e.g., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in an iterative manner to ensure that an archive within an archive is decompressed into the lowest possible compression resulting in individual files.

10. Documents with dynamic fields for file names, dates, and times will be processed to show the field code (e.g., "[FILENAME]"), rather than the values for such fields existing at the time the file is processed.

11. All provided Metadata pertaining to dates and times will be standardized to UTC or other disclosed time zone.

## VII.   FAMILY RELATIONSHIPS OF ESI.

### A.   Family Relationships.

For ESI, Document Families must be preserved by assigning sequential Bates numbers to all files within a parent-child group and by providing accurate attachment ranges for those files in the metadata fields required.  Attachments to emails or substantive embedded files will not be eliminated from the parent e-mail/document. Rather, parent-child relationships (the association between an attachment and its parent document, or for embeddings, the association between embedded documents and their containers) will be preserved. Substantive embedded documents (*e.g.*, a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records (either in full, redacted, or via a non-responsive or privilege slipsheet) and related back to the respective top-level parent document via the Beginning Attachment Bates Number and Ending Attachment Bates Number fields.  The Parties agree that fully non-responsive attachments to responsive parent documents need not be produced other than as slipsheets detailed herein; however, non-responsive parent documents must be produced if they contain any responsive attachments.  Where the Parties withhold a fully non-responsive,

non-privileged attachment, they will produce a TIFF slip sheet with a Bates Number in place of the attachment, along with all metadata associated with the document being withheld as specified in Exhibit 1.  No extracted text need be provided.  The TIFF slip sheet for each withheld attachment will state "Family Member Withheld as Non-Responsive."  The Requesting Party has the right to request the production of any attachment withheld solely on the ground of non-responsiveness. If the Parties cannot promptly reach an agreement, the Requesting Party may raise the issue with the Court.

Where an electronic document that is part of a family is withheld, and its relationship to the rest of that Document Family is indicated using slipsheets, the Producing Party shall provide one Bates-numbered slipsheet for each withheld document.

If a member of an ESI Document Family that has otherwise been determined to be responsive cannot technically be processed (*e.g.*, unsupported file format, file corruption, inaccessible password-protected document), those technical problems shall be identified and disclosed to the Requesting Party by production of a Bates-labeled slipsheet that states "Technical issue—file cannot be processed." A Requesting Party may thereafter raise with the Producing Party any questions or concerns, and if the Parties cannot promptly reach an agreement, the Requesting Party may raise the issue with the Court..

**B.      Embedded Objects.**

The Parties agree that non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents by a Producing Party (i.e., such embedded objects will be treated as produced within the document itself, rather than as separate documents).

Substantive embedded objects or files, where produced, are to be produced as family groups and such embedded files should be assigned Bates numbers that directly follow the Bates numbers of the documents within which they are embedded. Should a Party believe the volume of substantive embedded objects results in the review being overly burdensome, the Parties shall meet and confer. The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this provision.

## VIII.   DATABASES AND STRUCTURED DATA.

To the extent that a Producing Party produces Structured Data or similar data stored in a database, upon production the Producing Party will identify the database or platform to the Requesting Party.   The Parties agree to meet and confer to address any concerns with the identification, production, and production format of any relevant data contained in a database or other Structured Data or aggregated data source or otherwise maintained by an application. If the Parties cannot reach agreement, the matter will be decided by the Court or its designee.

To the extent a Producing Party is constrained from producing responsive Structured Data because of a third-party license or because software necessary to view the data is hardware-dependent, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format. The Producing Party shall produce exports and reports in a reasonably usable form. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format.

## IX.   PRODUCTION MEDIA.

Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), via secure FTP site or similar electronic secure file transfer system, or such

other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media").  Each piece of Production Media shall include a unique identifying label and cover letter including the following information:

- Name of the Litigation and its case number;

- Name of the Producing Party;

- Date of the production (mm/dd/yyyy);

- Production volume and/or Bates number range; and

- Confidentiality Designation, if any.

The foregoing labeling information shall also be provided in a .txt file at the root folder of the corresponding production deliverable.  Any replacement Production Media or documents shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced.

Producing Parties may encrypt their Production Media, and if so, shall provide a key to decrypt the Production Media in a separate communication.

## X.      OBJECTIONS TO ESI PRODUCTION.

If any formatting requirements or other specifications agreed to in this ESI Order are later determined by the Producing Party to be technically infeasible, unduly burdensome, or unreasonably costly, the Party, during the meet-and-confer process, shall: (i) describe the nature of the objection with reasonable particularity; (ii) provide the Requesting Party with the basis for declining to produce such ESI; and (iii) indicate whether the Producing Party is willing to offer an alternative. The Parties shall negotiate in good faith concerning the production of any such ESI. If the Parties are unable to reach agreement, the Parties shall submit any dispute to the Court for resolution.

## XI.    COSTS.

Unless otherwise ordered, the costs of producing documents and ESI pursuant to this Order shall be borne by each Producing Party.  If the Parties cannot reach an agreement on a disputed matter, any Party may submit the disputed matter to the Court for resolution.

## XII.    NO DESIGNATION OF DISCOVERY REQUESTS.

Productions of Hard Copy Documents and ESI in the form set out in this ESI Order are reasonably usable and need not be organized and labeled to correspond to discovery requests.

## XIII.   E-DISCOVERY LIAISONS.

The Parties agree that each party will have an individual knowledgeable about that Party's E-Discovery systems and technologies in attendance at meet-and-confers on discovery-related matters.   This individual need not be the same for every meet-and-confer, but the individual attending for each Party will be knowledgeable about the E-Discovery items at issue in the specific meet-and-confer(s) that they attend.

## XIV.   MISCELLANEOUS PROVISIONS.

The Parties will act in good faith as required by law and use these procedures to identify and reduce the potential for disputes.

The Parties are aware of the importance the Court places on cooperation and commit to continue to consult and cooperate reasonably as discovery proceeds. No Party may seek judicial relief from the Court or its designee unless it first has conferred with the applicable Producing or Requesting Party.

STIPULATED AND AGREED TO BY THE PARTIES ON _____, 2024

**[INSERT SIGNATURE BLOCKS FOR COUNSEL OF RECORD]**

# EXHIBIT 1

## FIELDS and METADATA TO BE PRODUCED

1.     The load files accompanying scanned Hard Copy Documents will include the following objective coding fields, to the extent applicable:

| Field | Field Description |
|---|---|
| CUSTODIAN (DPF) | The custodian of the document even if de-duplicated prior to production or location of item |
| BEGBATES (DPF) | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a Document Family |
| ENDATTACH (DPF) | Ending Bates number of a Document Family |
| PAGECOUNT (DPF) | Number of pages |
| TEXTLINK (DPF) | Link to text file for the document |

2.   The following metadata fields shall be included in Load files accompanying ESI, to the extent available, and the ESI they are related to is unredacted and not privileged:

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| BEGBATES (DPF) | First Bates identifier of item | First Bates identifier of item | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item | Last Bates identifier of item | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a document family | Starting Bates number of a Document Family | Starting Bates number of a Document Family |
| ENDATTACH (DPF) | Ending Bates number of a document family | Ending Bates number of a Document Family | Ending Bates number of a Document Family |
| PAGECOUNT (DPF) | Number of pages | Number of pages | Number of pages |

23

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| ALL CUSTODIANS | The custodian of the document being produced. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | The custodian of the document being produced. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | The custodian of the document being produced. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. |
| CONFIDENTIAL | Confidentiality designation, if any; otherwise blank. | Confidentiality designation, if any; otherwise blank. | Confidentiality designation, if any; otherwise blank. |
| AUTHOR | Document author from Metadata | | |
| FROM | | Sender of message | Sender of calendar invite |
| TO | | Recipient(s) of message or calendar invite | Recipient(s) of calendar invite |
| CC | | Copied recipient(s) of message or calendar invite | |
| BCC | | Blind copied recipient(s) of message or calendar invite | |
| SUBJECT | | Subject of message | Subject of calendar invite |
| SENTDATE | | The sent date of the message in the format MM/DD/YYYY | Date calendar invite sent (if any) |
| SENTTIME | | The sent time of the message in the format HH:mm:ss | Time calendar invite sent (if any) |
| RECEIVEDDATE | | The received date of the message in the format MM/DD/YYYY | The received date of the invite in the format MM/DD/YYYY |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| RECEIVEDTIME | | The received time of the message in the format HH:mm:ss | The received time of the invite in the format HH:mm:ss |
| FILENAME | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent |
| FILEEXTEN | File extension | File extension | File extension |
| FILESIZE | Size of the file in bytes | Size of the file in bytes | Size of the file in bytes |
| HASH | MD5 or SHA1 hash of the document | MD5 or SHA1 hash of the email | MD5 or SHA1 hash of the calendar invite |
| NATIVELINK | Link to native file (if any) | Link to native file (if any) | Link to native file (if any) |
| TEXTLINK | Link to text file for the document | Link to text file for the email | Link to text file for the calendar invite |
| TITLE | Title from a document's properties | | |
| DATECREATED | Date file was created | | |
| TIMECREATED | Time file was created | | |
| DATEMODIFIED | Date file was last modified | | |
| TIMEMODIFIED | Time file was last modified | | |
| TRACKCHANGE | (Y/N) Field for documents with track changes | | |
| FAMILYDATE | Populated for all documents.  Document families populated with parent date. MM/DD/YYYY | Populated for all documents.  Document families populated with parent date. MM/DD/YYYY | |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| PRODVOL | Production volume number | Production volume number | Production volume number |
| REDACTION | (Y/N) Field for documents with redactions | (Y/N) Field for documents with redactions | (Y/N) Field for documents with redactions |

Such Metadata field values will be extracted from the native file and will be produced to the extent available at the time of collection and processing, except that they may be redacted if privileged or if the metadata field values contain information protected by law or subject to an order of this Court. This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of ESI, that do not exist as part of the original metadata of the document, or that would be burdensome or costly to obtain.

If necessary, the Metadata for text messages, collaboration system messages (e.g., Chatter), social media messages, and other ESI that does not conform to the Metadata listed here, shall be determined by the meet-and-confer as outlined in Paragraph I.D of this ESI Order.

## EXHIBIT 2

## REQUESTED LOAD FILE FORMAT FOR ESI

1.    **Delimited Text File.** A delimited text file (.DAT File) containing the fields listed in Exhibit 1 should be provided. There must be one row in this load file for every document in the deliverable; and the file must terminate with a carriage return.  The delimiters for the file should be Concordance defaults:

- Comma – ASCII character 20 (¶)

- Quote – ASCII character 254 (þ)

- Newline – ASCII character 174 (®)

2.    **Image Cross-Reference File (.opt).** The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows:

ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount.

| | |
|---|---|
| ImageID: | The unique designation that Concordance and Opticon use to identify an image. This should be the BegBates Number of the Document. |
| VolumeLabel: | The name of the volume. |
| ImageFilePath: | The full path to the image file. |
| DocumentBreak: | If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document. |
| FolderBreak: | Leave empty. |
| BoxBreak: | Leave empty. |

PageCount:                Number of pages in the Document.


**3.      Sample Data.**

PROD00000001,VOL001,E:\100\ PROD00000001.TIF,Y,,2

PROD00000002, VOL001,E:\100\ PROD00000002.TIF,,,,

PROD00000003, VOL001,E:\100\ PROD00000003.TIF,Y,,,4

PROD00000004, VOL001,E:\100\ PROD00000004.TIF,,,,

PROD00000005, VOL001,E:\100\ PROD00000005.TIF,,,,

PROD00000006, VOL001,E:\100\ PROD00000006.TIF,,,,

# EXHIBIT D

**Exhibit D – Key Disputed Provisions[1]**

| | SECTION I.E of the Proposed ESI Protocol<br>(Applicability of Protocol to Plaintiffs and Defendants) | | |
|---|---|---|---|
| **Row** | **Plaintiffs' Proposal** | **Defendants' Proposal** | **Mississippi Protocol (p. 1)** |
| 1 | *The obligations imposed on the Parties pursuant to this ESI Order, other than the preservation obligations set forth in Section IV, will not become operative on any individual named Plaintiff until the action in which it is named is selected as a bellwether action, or on any class Plaintiff until that Plaintiff files a class action on behalf of a proposed class and/or is subsequently designated by counsel as an additional or alternative proposed class representative, or upon agreement between the individual named Plaintiff or class Plaintiff and the Defendants, or upon further order of the Court. Plaintiffs' obligations with respect to case-specific materials (i.e., documents and ESI specific to the claims of a given named Plaintiff) are set forth in Section XIV.A of this ESI Order.* | *This ESI Order shall apply to all Parties in this litigation, except where a Party seeks an exception to this ESI Order as described in Section I.D. herein.* | *Applied to all parties – no provision limiting the application as to any party.* |

[1] The first two columns of this chart include the same competing provisions from the neutral chart, attached as Exhibit A. The third column contains corresponding provisions from the ESI Protocol entered at ECF No. 175 in *Mississippi v. Eli Lilly & Co., et al.,* Case No. 21-674 (S.D. Miss.). The language in the third column is displayed in green where it is identical to the disputed language in Defendants' proposals displayed in blue. For reference, the complete *Mississippi* ESI Protocol is attached as Exhibit E.

| SECTION II of the Proposed ESI Protocol (Hyperlinks) | | |
|---|---|---|
| Row | Plaintiffs' Proposal | Defendants' Proposal | Mississippi Protocol (Section II) |
| 2 | "**Document Family**" refers to a collection of pages or files, *produced manually or by a software application, constituting a logical single communication of information*, but consisting of more than a single stand-alone record. A "parent document" is an electronic file that *includes*, attaches, *references*, or embeds, at least one other electronic file (a "child document") *by means of any kind of attachment or hyperlink*. A "Document Family" includes, for example, *a document and all other documents in its attachment range*; emails with attachments; *and messages (e.g., email or chats) sent in any platform used or controlled by the Parties that point to a file that is stored elsewhere within any platform (including cloud-based or third-party platforms) used or controlled by the Parties (e.g., OneDrive or SharePoint).* | "**Document Family**" refers to a collection of related pages or files *as maintained in the ordinary course of business* but consisting of more than a single stand-alone record. A "parent document" is an electronic file that attaches, or embeds at least one other electronic file (a "child document"). A "Document Family" includes, for example, emails with attachments, or *MSOffice files embedded within another MSOffice document. For the avoidance of doubt, ESI referenced in ESI only by a hyperlink or other pointer ("hyperlinked files") shall not be construed to be in the same Document Family solely by virtue of the hyperlink reference.* | "Document Family" refers to a group of related ESI that includes parent and child documents *as maintained in the ordinary course of business* (*e.g.*, a parent email and any attachments thereto).<br><br>*Hyperlinks not included.* |

| SECTION II of the Proposed ESI Protocol<br>(Definition of "Litigation") | | |
|---|---|---|
| **Row** | **Plaintiffs' Proposal** | **Defendants' Proposal** | **Mississippi Protocol** |

| | Plaintiffs' Proposal | Defendants' Proposal | Mississippi Protocol |
|---|---|---|---|
| 3 | **"Litigation"** is defined to include all actions currently in MDL No. 3080, *In re: Insulin Pricing Litigation*, or later filed in, added to, transferred to, or coordinated with (pursuant to a Court order or the Parties' express written agreement) MDL No. 3080, and all actions later remanded to their respective transferor courts and any appeals arising from such cases. ***The word "Litigation" also expressly includes the following District of New Jersey cases: Case No. 20-03426, In re Direct Purchaser Insulin Pricing Litigation ("Direct Purchaser Consumer Action"); Case No. 18-2211, MSP Recovery Claims Series, LLC v. Aventis U.S. LLC, et al.; Case No. 17-669, In re Insulin Pricing Litigation ("Indirect Purchaser Consumer Action"); and Case No. 18-14999, Minnesota v. Sanofi-Aventis U.S. LLC, et al.*** | **"Litigation"** is defined to include all actions currently in MDL No. 3080, *In re: Insulin Pricing Litigation*, or later filed in, added to, transferred to, or coordinated with (pursuant to a court order or the Parties' express written agreement) MDL No. 3080, and all actions later remanded to their respective transferor courts and any appeals arising from such cases. | *Not a definition in Mississippi case.* |

| Row | Plaintiffs' Proposal | Defendants' Proposal | Mississippi Protocol (Section III.C) |
|---|---|---|---|
| **SECTION III.C of the Proposed ESI Protocol** <br> **(Inaccessible Sources of ESI)** <br> **(Relevant vs. Responsive Language)** | | | |
| 4 | The Parties agree that there is no need, at this time, to search ESI from any source a Party has identified to the Requesting Party as not reasonably accessible pursuant to Federal Rule 26(b)(2)(B), although the Parties must take reasonable steps to preserve such ESI if potentially *relevant or responsive*. *If a Party determines that a source is not reasonably accessible pursuant to Federal Rule 26(b)(2)(B) during its search and collection process, then it will provide sufficient information about the source to enable the Parties to confer in good faith about the accessibility thereof.* A decision to preserve any ESI shall not be interpreted as an agreement that the preserved material is relevant to the issues in the case or constitutes reasonably accessible ESI that could be subject to review and production. | The Parties agree that there is no need, at this time, to search ESI from any source a Party has identified to the Requesting Party as not reasonably accessible pursuant to Federal Rule 26(b)(2)(B), although the Parties must take reasonable steps to preserve such ESI if potentially *responsive*. *All Parties reserve the right to request to have this ESI searched if some reason emerges for believing that a particular source contains responsive information.* A decision to preserve any ESI shall not be interpreted as an agreement that the preserved material is relevant to the issues in the case or constitutes reasonably accessible ESI that could be subject to review and production. <br><br> *The Parties further agree that there is no need to modify or suspend the procedures used by them in the ordinary course of business to backup data and systems for disaster recovery and similar purposes related to continuity of operations.* | The Parties agree that there is no need, at this time, to search ESI from any source a Party has identified to the Requesting Party as not reasonably accessible pursuant to Federal Rule of Civil Procedure 26(b)(2)(B), although the Parties must take reasonable steps to preserve such ESI if potentially *responsive. All Parties reserve the right to request to have this ESI searched if some reason emerges for believing that a particular source contains responsive information.* <br><br> *The Parties further agree that there is no need to modify or suspend the procedures used by them in the ordinary course of business to backup data and systems for disaster recovery and similar purposes related to continuity of operations.* |
| **SECTION V of the Proposed ESI Protocol** | | | |

4

| (Collection, Review, and Validation Processes) (Relevant vs. Responsive Language) | | |
|---|---|---|
| Row | Plaintiffs' Proposal | Defendants' Proposal | Mississippi Protocol (Section V) |
| 5 | ***The Parties shall participate in an iterative and cooperative approach with respect to the identification of relevant custodians and information sources.*** The Parties may identify potentially ***relevant or responsive*** ESI and documents by: identifying and selecting the custodians, databases, and non-custodial sources that are the most likely to possess ***relevant or responsive*** documents and information and (a) applying agreed-upon search terms to identifiable data repositories and custodial data sources in accordance with the provisions of Section V.A., ***or*** (b) identifying documents or ESI that are responsive to the Requesting Party's discovery requests directly, where search terms are not necessary to identify responsive documents or ESI, and/or (c) utilizing Technology Assisted Review as described below in Section V.B. The Parties shall meet and confer in good faith regarding the search methodology and search terms, if any, to be applied, and use of technology assisted review or similar technologies, if any; ***relevant*** data sources, including the identities of custodians and custodial, non-custodial, ***or third-party*** | The Parties may identify potentially ***responsive*** ESI and documents by: identifying and selecting the custodians, databases, and non-custodial sources that are the most likely to possess ***responsive*** documents and information and (a) applying agreed-upon search terms to identifiable data repositories and custodial data sources  in accordance with the provisions of Section V.A., (b) identifying documents or ESI that are responsive to the Requesting Party's discovery requests directly, where search terms are not necessary to identify responsive documents or ESI, and/or (c) utilizing Technology Assisted Review as described below in Section V.B.  The Parties shall meet and confer in good faith regarding the search methodology and search terms, if any, to be applied, and use of technology assisted review or similar technologies, if any; ***responsive*** data sources, including the identities of custodians and  custodial ***or*** non-custodial sources; ***and*** any applicable and appropriate timeframes for production of ESI and documents. The Producing Party will be reasonably transparent regarding the universe of | The Parties may identify potentially ***responsive*** ESI by: identifying and selecting the custodians, databases, and non-custodial sources that are the most likely to possess ***responsive*** documents and information; and (a) applying agreed-upon search terms to identifiable data repositories and custodial data sources- in accordance with the provisions of Section V.A., or (b) identifying Documents or ESI that are responsive to the Requesting Party's discovery requests directly, where search terms are not necessary to identify responsive Documents or ESI, and/or (c) utilizing Technology Assisted Review as described below in Section V.B. The Parties shall meet and confer in good faith regarding the search methodology, including the proposed search terms and the identities of custodians, and the custodial and non-custodial electronic sources from which ESI will be collected and searched. No Party is relieved of its overall discovery obligations through the use of search terms or TAR. |

| | | |
|---|---|---|
| *data* sources; any applicable and appropriate timeframes for *the collection, review, and* production of ESI and documents; *and validation processes*. The Producing Party will be reasonably transparent regarding the universe of documents subject to targeted collections, culling, or application of search terms. No Party is relieved of its overall discovery obligations through the use of search terms or Technology Assisted Review. | documents subject to targeted collections, culling, or application of search terms. No Party is relieved of its overall discovery obligations through the use of search terms or Technology Assisted Review. | |

| **SECTION V.A of the Proposed ESI Protocol** |||
|:--:|:--:|:--:|
| **(Relevant vs. Responsive Language)** |||
| **(Extent of Information Required from Producing Party)** |||
| **Row** | **Plaintiffs' Proposal** | **Defendants' Proposal** | **Mississippi Protocol (Section V.A)** |
| 6 | If a Producing Party elects to use search terms to identify potentially *relevant or responsive* documents and ESI, it shall identify and propose to the Requesting Party an initial list of search terms, custodians, custodial data sources, and non-custodial data sources that are likely to contain *relevant or responsive* documents and ESI, and the Parties will *discuss those terms and any additional terms, or other requested changes, proposed by the Requesting Party. The Parties will meet and confer regarding the search terms to be used, as well as information to improve the effectiveness of the search terms (e.g.,* | If a Producing Party elects to use search terms to identify potentially *responsive* documents and ESI, it shall identify and propose to the Requesting Party an initial list of search terms, custodians, custodial data sources, and non-custodial data sources that are likely to contain *responsive* documents and ESI, and the Parties will *meet and confer regarding those terms and any additional terms, or other requested changes, proposed by the Requesting Party*. To the extent the Parties cannot reach agreement on the application of, or procedures for, any search or filtering processes, the Parties may raise | Each Producing Party shall identify and propose to the Requesting Party an initial list of search terms, custodians, custodial data sources, and non-custodial data sources that are likely to contain *responsive* Documents and ESI. The Parties will *meet and confer regarding the data sources and search terms to be used.* |

| | | |
|---|---|---|
| *relevant project and code names, code words, acronyms, abbreviations, and nicknames, if any). The Parties shall participate in an iterative and cooperative approach in which the Parties will meet and confer regarding reasonable and appropriate methods to increase the relative precision or proportion of relevant or responsive ESI and documents within the search results and production sets, including the exchange of "hit count" reports.* To the extent the Parties cannot reach agreement on the application of, or procedures for, any search or filtering processes, the Parties may raise such issues for resolution by the Court or its designee**.** | such issues for resolution by the Court or its designee. | |

| SECTION V.B of the Proposed ESI Protocol<br>(Use of Search Terms and TAR) | | |
|---|---|---|
| **Row** | **Plaintiffs' Proposal** | **Defendants' Proposal** | **Mississippi Protocol (Section V.B)** |

| Row | Plaintiffs' Proposal | Defendants' Proposal | Mississippi Protocol (Section V.B) |
|---|---|---|---|
| 7 | If a Producing Party elects to use technology assisted review or any other form of machine learning *in the review and production of ESI* beyond search terms or keywords (collectively, "TAR"), . . . *No TAR process will be "stacked" with the application of search terms or keywords , i.e., TAR will not be applied before or after any application of search terms*. | If a Producing Party elects to use technology assisted review or any other form of machine learning beyond search terms or keywords (collectively, "TAR") *for purposes of culling ESI potentially responsive to a Requesting Party's request, it shall disclose that intent to the Requesting Party, and the Producing Party shall meet and confer with the Requesting Party regarding how such technologies will be* | The Parties may also use technology assisted review or other agreed upon forms of machine searching not based on keywords (collectively, "TAR") in lieu of *(or, where appropriate, in addition to) using search terms.* Any Party that intends to use TAR agrees to *disclose that intent to the Requesting Party and to meet and confer with the Requesting Party regarding how such technologies will be implemented* |

| | | *implemented, before the Producing Party employs any TAR.* | *before the Producing Party employs any TAR.* The Producing Party will be reasonably transparent regarding the universe of documents subject to targeted collections, culling, or application of search terms. The Parties will meet and confer regarding any TAR issues that arise. |
|---|---|---|---|

| **SECTION V.C of the Proposed ESI Protocol** **(Relevant vs. Responsive)** | | | |
|---|---|---|---|
| **Row** | **Plaintiffs' Proposal** | **Defendants' Proposal** | **Mississippi Protocol (Section V.C)** |
| 8 | The fact that a document may have been retrieved by application of search terms or TAR does not render it automatically ***relevant or responsive*** and producible, and a Producing Party may withhold from production ***irrelevant or non-responsive and privileged ESI as permitted*** under the Federal Rules. To the extent any Party identifies ***relevant or responsive*** ESI or documents outside of search terms or the TAR methodology noted above, all such non-privileged documents shall be produced.<br><br>Nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing a review to determine if documents captured by search terms are ***relevant or responsive***. Similarly, nothing in this | The fact that a document may have been retrieved by application of search terms or TAR does not render it automatically ***responsive*** and producible, and a Producing Party may withhold from production ***such document if non-responsive and/or permissible*** under the Federal Rules. To the extent any Party identifies ***responsive*** ESI or documents outside of search terms or the TAR methodology noted above, all such non-privileged documents shall be produced.<br><br>Nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing a review to determine if documents captured by search terms are ***responsive to the Requesting Party's discovery requests***. Similarly, nothing in this ESI | The fact that a document may have been retrieved by application of search terms or TAR does not render it ***responsive*** and shall not prevent a Producing Party from withholding from production ***such document if non-responsive and/or permissible*** under the Federal Rules of Civil Procedure. Conversely, the absence of a search term hit or retrieval by TAR methodology for a given document does not render it non-responsive. To the extent any Party identifies ***responsive*** ESI or documents not hit upon by the search terms or the TAR methodology noted above, all such non-privileged documents should be produced. |

| | | |
|---|---|---|
| ESI Order may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents determined to be ***relevant or responsive***. Further, nothing in this ESI Order requires the production of ***irrelevant or non-responsive documents***. | Order may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents determined to be ***responsive***. Further, nothing in this ESI Order requires the production of ***documents captured by search terms or TAR that are not relevant and responsive to the Requesting Party's request.*** | |

<table>
<tr><th colspan="3">SECTION VI.B of the Proposed ESI Protocol<br>(Email Threading)</th></tr>
<tr><th>Row</th><th>Plaintiffs' Proposal</th><th>Defendants' Proposal</th><th>Mississippi Protocol (Section VI.B)</th></tr>
</table>

| Row | Plaintiffs' Proposal | Defendants' Proposal | Mississippi Protocol (Section VI.B) |
|---|---|---|---|
| 9 | ***No email may be withheld from production or omitted from a privilege log because it is included in whole or in part in a more inclusive email; provided, however, that the Parties may use email threading for their own internal review or other internal processes to reduce the volume of entirely duplicative content within email threads.*** | ***The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. This clause is not to be construed to require the Producing Party to produce metadata for lesser included emails not themselves produced. To the extent a Receiving Party requests the production of specific lesser-inclusive copies, the Parties will promptly meet and confer and will not unreasonably deny particularized requests.*** | In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize commercially available "email thread suppression" tools. The Parties may produce lesser-included emails contained in those same threads. To the extent a Producing Party utilizes "email thread suppression tools," the Parties will promptly meet and confer regarding any requests for the production of lesser-included emails and will not unreasonably deny good faith requests for de-threading of particular email threads. ***This clause is not to be construed to require the Producing Party to produce metadata for lesser included emails that would not otherwise be produced*** but for the |

| | | use of email thread suppression tools. The Parties will meet and confer regarding the production of meta-data for lesser included emails to ensure that this metadata is appropriately searchable. |
|---|---|---|

| **SECTION VI.D & VI.F of the Proposed ESI Protocol** <br> **(Production Format)** | | |
|---|---|---|
| **Row** | **Plaintiffs' Proposal** | **Defendants' Proposal** | **Mississippi Protocol** |

| Row | Plaintiffs' Proposal | Defendants' Proposal | Mississippi Protocol |
|---|---|---|---|
| 10 | **Section VI.D** <br><br> *All spreadsheet files (e.g., Microsoft Excel, Corel Quattro, etc.) shall be produced in Native Format with TIFF placeholder images.* <br><br> *All word processing files (e.g., Microsoft Word) containing track changes, comments, hidden text, or embedded file types; presentation files (e.g., Microsoft PowerPoint); image files (e.g., .jpg, .gif); and PDF files shall be produced in Native Format with TIFF placeholder images where reasonably possible, unless redactions are required, in which case such files shall be produced as TIFFs (non-color documents) or JPGs (color documents), as appropriate.* | **Section VI.D** <br><br> *ESI, except that which is redacted, slipsheeted, or* produced in Native Format, *shall be produced as single-page, black-and-white, 300 DPI, Group IV\* TIFF images or color JPG images with LZW compression where appropriate with corresponding extracted full text provided in document level text files, objective metadata fields pursuant to Exhibit 1, and load files pursuant to Exhibit 2. All ESI produced as images shall be imaged, to the extent reasonably possible, with track changes, comments, hidden text, and/or underlying annotations rendered on the image.* <br><br> *Spreadsheets, audio/visual/multimedia, and other files that are not conducive to* | **Section VI.D** <br><br> *All responsive, non-privileged or privacy-protected ESI, except that which is produced in Native Format pursuant to Section VI.D.2, shall be produced as single-page, black-and-white, 300 DPI, Group IV\* TIFF images or color JPG images with LZW compression where appropriate with corresponding extracted full text provided in document level text files, objective metadata fields pursuant to Exhibit 1, and load files pursuant to Exhibit 2.* Responsive, non-privileged or privacy-protected *spreadsheets, audio/visual/multimedia, and other files that are not conducive to production in image format shall be produced in Native Format, except where such files are redacted pursuant to the terms of this Protocol.* Responsive, non-privileged or privacy- |

| | | |
|---|---|---|
| *All media files, such as audio and video files, shall be* produced in Native Format *with TIFF placeholder images*.<br><br>*Emails; word processing files (e.g., Microsoft Word) not containing track changes, comments, hidden text, or embedded file types; and digital photographs shall be produced as TIFFs (for non-color documents) or JPGs (for color documents), as appropriate.*<br><br>*The Parties will meet and confer on the production format, including Metadata, of other document types, including for enterprise and third-party-hosted communication platforms or systems, including but not limited to: Zendesk, Slack, Microsoft Teams, Zoom, Nextiva, Discord, Trello, Workvivo, Asana, Basecamp, Confluence, Miro, Monday.com, Whatsapp, Salesforce, Webex, Yammer, Google Chat, Google Hangouts, Skype, Instant Bloomberg, or similar platforms.*<br><br>*Notwithstanding the Parties' stipulations herein, upon reasonable request made by the Receiving Party, the Parties shall confer regarding the production in an alternate format of a* | *production in image format shall be produced in Native Format, except where such files are image-redacted or slipsheeted pursuant to the terms of this Protocol.*  ESI produced in Native Format shall be produced with all Metadata contained in or associated with that file to the extent technologically possible consistent with Exhibit 1. ESI produced in Native Format shall be given a file name consisting of a unique Bates number (e.g., "ABC00000002"). For each Native file produced, the production will include a single-page placeholder TIFF image stamped with this unique Bates number and/or confidentiality designation and containing the phrase: "PRODUCED IN NATIVE FORMAT" or similar language.<br><br>No Party may attach to any pleading or any correspondence addressed to the Court or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding a copy of any produced Native document without ensuring that either the corresponding placeholder slip sheet is attached to the document or the corresponding Bates number and confidentiality legend, if any, appears on the document. | protected ESI produced in Native Format shall be produced with all Metadata contained in or associated with that file to the extent technologically possible consistent with Exhibit 1. Each ESI produced in Native Format shall be assigned a unique Bates number, and for each a single page placeholder TIFF image stamped with this unique Bates number, the phrase "PRODUCED IN NATIVE FORMAT" and any corresponding confidentiality designation. No Party may attach to any pleading or any correspondence addressed to the Court or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding a copy of any produced Native Format document without ensuring that either the corresponding placeholder slip sheet is attached to the document or the corresponding Bates number and confidentiality legend, if any, appears on the document. |

| | | |
|---|---|---|
| *document previously produced in accordance with this ESI Order.*<br><br>ESI produced in Native Format shall be produced with all Metadata contained in or associated with that file to the extent technologically possible consistent with Exhibit *1 and load files pursuant to Exhibit 2*. ESI produced in Native Format shall be given a file name consisting of a unique Bates number (e.g., "ABC00000002"). For each Native file produced, the production will include a single-page placeholder TIFF image stamped with this unique Bates number and/or confidentiality designation and containing the phrase: "PRODUCED IN NATIVE FORMAT" or similar language. *To the extent that it is available, the original document text shall be provided in a document-level multi-page UTF-8 text file with a text path provided in the \*.dat file; otherwise, the text contained on the slipsheet language shall be provided in the \*.txt file with the text path provided in the \*.dat file. Native files will be produced in a separate folder on the production media. In advance of depositions, the Parties reserve the right to produce JPG or TIFF versions, as applicable, of any* | **Section VI.F**<br><br>*If a Requesting Party finds the black and white version of a document insufficient, the Requesting Party may request that the Producing Party provide a color image.  The Producing Party will not unreasonably deny a request to provide a color image.  If the parties cannot come to an agreement regarding whether a document must be produced in color, the good cause standard will govern the dispute. However, the Requesting Party does not have to make a good cause showing when it initially requests the document in color; instead, the Requesting Party may simply identify the document.  If a Producing Party converts a document to color image in response to a request from a Receiving Party, the Producing Party shall do so in JPEG, TIFF or such other format as agreed with the Requesting Party.* | **Section VI.E**<br><br>*If a Requesting Party finds the black and white version of a document insufficient, the Requesting Party may request that the Producing Party provide a color image. The Producing Party will not unreasonably deny a request to provide a color image. If the parties cannot come to an agreement regarding whether a document must be produced in color, the good cause standard will govern the dispute. However, the Requesting Party does not have to make a good cause showing when it initially requests the document in color; instead, the Requesting Party may simply identify the document. If a Producing Party converts a document to color image in response to a request from a Receiving Party, the Producing Party shall do so in JPEG, TIFF or such other format as agreed with the Requesting Party.* |

***previously produced Native file at their discretion.***

No Party may attach to any pleading or any correspondence addressed to the Court or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding a copy of any produced Native document without ensuring that either the corresponding placeholder slip sheet is attached to the document or the corresponding Bates number and confidentiality legend, if any, appears on the document.

***Documents produced as TIFF/JPG images shall be named according to the Bates number of the corresponding TIFF/JPG image. Each *.tiff/*.jpg file should be assigned a unique name matching the Bates number of the corresponding image. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff/*.jpg image. These *.tiff/*jpg images should be provided in a separate folder and the number of TIFF/JPG files per folder should be limited to 1,000 files.***

| SECTION VI of the Proposed ESI Protocol (Redactions) | | |
|---|---|---|
| **Row** | **Plaintiffs' Proposal** | **Defendants' Proposal** | **Mississippi Protocol** |
| 11 | *Section VI.H*<br><br>*Absent further order of the Court or agreement of the Parties, no redactions may be made within any ESI or Hard Copy Document unless the information is subject to the attorney-client or work-product privileges. To the extent that a Producing Party maintains that an otherwise relevant or responsive document contains certain highly sensitive information that should be redacted for reasons other than those permitted by this section, the Producing Party and Requesting Party shall meet and confer concerning the proposed treatment of such information; if the Parties cannot reach resolution, the Producing Party may submit the document to the Court or its designee for review in camera and seek an order concerning the appropriate treatment of the disputed information.*<br><br>*Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been* | *Section VI.I*<br><br>*Redactions. To the extent that a responsive document contains information protected by the attorney-client privilege or work product doctrine, the Producing Party may produce that document in a redacted form and identify such information on their privilege log or produce the non-privileged metadata. To the extent a Producing Party produces responsive privileged documents in redacted form with non-privileged metadata in lieu of including such documents on their privilege log, either the document in redacted form or its metadata will indicate the nature of the privilege redaction (attorney work-product or attorney-client privilege) and upon request, the Producing Party will identify all privilege redacted documents by bates number. The Producing Party may also produce in a redacted form information in a responsive document that: (1) is subject to federal, state, or foreign privacy requirements (e.g., HIPAA; 21 C.F.R. §§ 20.111, 20.63, and 314.80; 45 C.F.R. §§ 160 and 164; GDPR); (2)* | *Section VI.F*<br><br>*Redactions. To the extent that a responsive document contains information protected by the attorney-client privilege or work product doctrine, the Producing Party may produce that document in a redacted form and identify such information on their privilege log or produce the non-privileged metadata. To the extent a Producing Party produces responsive privileged documents in redacted form with non-privileged metadata in lieu of including such documents on their privilege log, either the document in redacted form or its metadata will indicate the nature of the privilege redaction (attorney work-product or attorney-client privilege) and upon request, the Producing Party will identify all privilege redacted documents by bates number. The Producing Party may also produce in a redacted form information in a responsive document that: (1) is subject to federal, state, or foreign privacy requirements (e.g., HIPAA; 21 C.F.R. §§ 20.111, 20.63, and 314.80; 45 C.F.R. §§ 160 and 164; GDPR); (2)* |

| | | |
|---|---|---|
| *redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions and the basis for the redaction (e.g., "Redacted – A/C Privilege," "Redacted – AWP"). Where a relevant or responsive document contains both redacted and non-redacted content, the Parties shall produce the remainder of the non-redacted portions of the document and the Extracted text/OCR text corresponding to the nonredacted portions.* | *constitutes irrelevant personal information of an intimate or private nature; (3) uniquely identifying information related to non-diabetes products[1]; or (4) information identifying members of P&T Committees other than Pharmacy Benefit Manager ("PBM") employees.* | *constitutes irrelevant personal information of an intimate or private nature; (3) relates to products that are not used to treat diabetes;[1] or (4) information identifying members of P&T Committees other than PBM employees.* |
| *1. <u>Spreadsheets</u>. Spreadsheet files requiring redaction, including, without limitation, Microsoft Excel files, will be redacted in Native Form.* | *All Parties reserve their rights to challenge the appropriateness of any redactions and the discoverability of the redacted information, including redaction of information identifying members of P&T Committees, other than PBM employees.  The Parties will meet and confer regarding any disputes related to any redaction and will not unreasonably deny good-faith requests for production of redacted information.  The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable. Nothing contained herein shall be used to demonstrate that any document or group of documents, or any portion of any document or group of documents, is or is not properly discoverable in the event that a Party moves for production thereof.* | *All Parties reserve their rights to challenge the appropriateness of any redactions and the discoverability of the redacted information, including redaction of information identifying members of P&T Committees, other than PBM employees. The Parties will meet and confer regarding any disputes related to any redaction and will not unreasonably deny good-faith requests for production of redacted information. Nothing contained herein shall be used to demonstrate that any document or group of documents, or any portion of any document or group of documents, is or is not properly discoverable in the event that a Party moves for production thereof.* |
| *2. <u>Other Documents</u>. All images of redacted Native files shall be processed to show and reveal all comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its Native application. When possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (e.g., date,* | | |

| | | |
|---|---|---|
| *subject line, etc.) should not be indicated unless it is independently privileged. The production of a document in a redacted form does not affect the Parties' obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable.* | *Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction (e.g., "Redacted – Privileged," "Personal Information," "Other Drug Information"). Where a document contains both privileged and non-privileged responsive content, the Producing Party shall redact the privileged material and produce the remainder of the document.*<br><br>*Native Excel or other spreadsheet files that are redacted may be produced in Native or near Native Format by overwriting the data contained in a particular cell, row, column or tab with the word "Redacted," using industry-standard tools, and shall make clear the reason for the redaction (e.g., "Redacted - Privilege"), provided that such overwriting does not impact any other, non-redacted cells or information in the spreadsheet (e.g., if a cell redacted for privilege contains a numerical value that is used in a formula by other, non-redacted cells in the spreadsheet).  If a redaction does impact non-redacted cells/information, the Parties shall promptly meet and confer to resolve the issue.  The* | *Any redactions shall be clearly indicated on each page of the document from which information is redacted, bearing a designation that it has been redacted. The designation shall make clear the reason for the redaction (e.g., "Redacted – Privileged," "Personal Information," "Other Drug Information"). Where a document contains both privileged and non-privileged responsive content, the Producing Party shall redact the privileged material and produce the remainder of the document.*<br><br>*Native Excel or other spreadsheet files that are redacted may be produced in* TIFF format or *in Native Format by overwriting the data contained in a particular cell, row, column or tab with the word "Redacted," and shall make clear the reason for the redaction (e.g., "Redacted Privilege"), provided that such overwriting does not impact any other, nonredacted cells or information in the spreadsheet (e.g., if a cell redacted for privilege contains a numerical value that is used in a formula by other, non-redacted cells in the spreadsheet). If a redaction does impact non-redacted cells/information, the Parties shall promptly meet and confer to resolve the issue. The Parties* |

| | | | |
|---|---|---|---|
| | | *Parties acknowledge that redacting the native may alter the metadata of the produced file; however, the metadata produced pursuant to Exhibit 1 will be the metadata extracted from the original native file, other than metadata containing redacted information.*<br><br>*Any other native files that are redacted may be produced as black-and-white or color (as applicable), single-page TIFF files with OCR text provided in document level text files, with load files pursuant to Exhibit 2, which shall include all information contained in the original file.*<br><br>*Footnote 1: Products that are used to treat diabetes include but are not limited to: the at-issue drugs (identified in complaints in any actions consolidated in this Litigation and any later amendments); any generic, biosimilar or private label insulin (for example, any Relion brand or any other private label or off-label insulins, Insulin Aspart, Semglee, Admelog, Insulin Lispro Injection U-100, Insulin Lispro Protamine, Insulin Lispro Injectable Suspension Mix75/25 KwikPen, Insulin Lispro Injection Junior KwikPen and/or any* | *acknowledge that redacting the native may alter the metadata of the produced file; however, the metadata produced pursuant to Exhibit 1 will be the metadata extracted from the original native file, other than metadata containing redacted information.*<br><br>*Any native* Excels or other spreadsheet files, PowerPoint or other presentation *files that are redacted may be produced as black-and-white or color (as applicable), single-page TIFF files with OCR text provided in document level text files, with load files pursuant to Exhibit 2, which shall include all information contained in the original file,* including, but not limited to, speaker notes and "hidden" information and/or slides, with any redaction clearly delineated. If the file contains external video or audio components, the video or audio will be produced as native files unless redacted.<br><br>*Footnote 1: Products that are used to treat diabetes include but are not limited to: the at-issue drugs (identified in* the Third Amended Complaint *and any later amendments); any generic, biosimilar or private label* |

|  | | *other authorized generic insulin); amylinomimetic injectables; GLP-1 receptor agonists; alpha-glucosidase inhibitors; biguanides; dopamine-2 agonists; DPP-4 inhibitors; meglitinides; SGLT 2 inhibitors. Defendants do not agree that all of the products identified herein are relevant to this Action, and a Producing Party's decision not to redact information relating to any product shall not be construed as an admission that such product is relevant to this Action. To the extent a case brings claims based on products other than those used to treat diabetes, the parties to that case shall meet and confer as to appropriate redactions with respect to that Receiving Party.* | *insulin (for example, any Relion brand or any other private label or off-label insulins, Insulin Aspart, Semglee, Admelog, Insulin Lispro Injection U-100, Insulin Lispro Protamine, Insulin Lispro Injectable Suspension Mix75/25 KwikPen, Insulin Lispro Injection Junior KwikPen and/or any other authorized generic insulin); amylinomimetic injectables; GLP-1 receptor agonists; alpha-glucosidase inhibitors; biguanides; dopamine-2 agonists; DPP-4 inhibitors; meglitinides; SGLT 2 inhibitors. Defendants do not agree that all of the products identified herein are relevant to this Action, and a Producing Party's decision not to redact information relating to any product shall not be construed as an admission that such product is relevant to this Action.* |
|---|---|---|---|

| **SECTION VII.A of the Proposed ESI Protocol** **(Hyperlinks)** **(Non-Responsive Attachments)** | | | |
|---|---|---|---|
| **Row** | **Plaintiffs' Proposal** | **Defendants' Proposal** | **Mississippi Protocol (Section VII.A)** |
| 12 | *Parent-child relationships, such as the association between an attachment and its parent document, or between embedded documents and their parent documents, or between a document with document stubs or links to internal or non-public documents and* | *For ESI, Document Families must be preserved by assigning sequential Bates numbers to all files within a parent-child group and by providing accurate attachment ranges for those files in the metadata fields required. Attachments to emails or substantive* | *For ESI, Document Families must be preserved by assigning sequential Bates numbers to all files within a parent-child group and by providing accurate attachment ranges for those files in the metadata fields required. Attachments to emails or substantive* |

*those stubbed out documents or internal or non-public documents so linked,[1] will, to the extent possible, be preserved. Attachments should be consecutively produced with their parent.*

*A document and all other documents in its Document Family, emails with attachments, files with extracted embedded OLE (object linking and embedding) documents, and email or other documents together with any documents referenced by document stubs, or via links to internal or non-public document sources within those emails or other documents, all constitute Document Families. Where feasible, if any member of a Document Family is produced, all members of that family must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.*

*Footnote 1: For documents shared via links or pointers, or other "modern attachments" (i.e., hyperlinks pointing to files stored in the cloud or a shared repository such as SharePoint and other types of collaborative data sources, instead of being directly attached to a message as has been historically common with email*

*embedded files will not be eliminated from the parent e-mail/document. Rather, parent-child relationships (the association between an attachment and its parent document, or for embeddings, the association between embedded documents and their containers) will be preserved. Substantive embedded documents (e.g., a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records (either in full, redacted, or via a non-responsive or privilege slipsheet) and related back to the respective top-level parent document via the Beginning Attachment Bates Number and Ending Attachment Bates Number fields. The Parties agree that fully non-responsive attachments to responsive parent documents need not be produced other than as slipsheets detailed herein; however, non-responsive parent documents must be produced if they contain any responsive attachments. Where the Parties withhold a fully non-responsive, non-privileged attachment, they will produce a TIFF slip sheet with a Bates Number in place of the attachment, along with all metadata associated with the document being withheld as specified in Exhibit*

*embedded files will not be eliminated from the parent e-mail/document. Rather, parent-child relationships (the association between an attachment and its parent document or* between embedded documents and their parent) *will be preserved. Substantive embedded documents (e.g., a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records (either in full, redacted, or via a non-responsive or privilege slipsheet) and related back to the respective top-level parent document via the Beginning Attachment Bates Number and Ending Attachment Bates Number. The Parties agree that fully non-responsive attachments to responsive parent documents need not be produced*; *however, non-responsive parent documents must be produced if they contain any responsive attachments. Where the Parties withhold a fully non-responsive, nonprivileged attachment, they will produce a TIFF slip sheet with a Bates Number in place of the attachment, along with all metadata associated with the document being withheld as specified in Exhibit 1. No extracted text need be provided. The TIFF slip sheet for each withheld*

| | | |
|---|---|---|
| *communications), the Parties shall meet and confer regarding the most reasonable means to produce such documents, as well as the versions of such documents (e.g., the as-sent version, current version, etc.) to be collected and produced.* | *1. No extracted text need be provided. The TIFF slip sheet for each withheld attachment will state "Family Member Withheld as Non-Responsive." The Requesting Party has the right to request the production of any attachment withheld solely on the ground of non-responsiveness. If the Parties cannot promptly reach an agreement, the Requesting Party may raise the issue with the Court.* | *attachment will state "Family Member Withheld as Non-Responsive." The Requesting Party has the right to request the production of any attachment withheld solely on the ground of non-responsiveness. If the Parties cannot promptly reach an agreement, the Requesting Party may raise the issue with the Court.* |
| | *Where an electronic document that is part of a family is withheld, and its relationship to the rest of that Document Family is indicated using slipsheets, the Producing Party shall provide one Bates-numbered slipsheet for each withheld document.* | *Where an electronic document that is part of a family is withheld, and its relationship to the rest of that Document Family is indicated using slipsheets, the Producing Party shall provide one Bates-numbered slipsheet for each withheld document.* |
| | *If a member of an ESI Document Family that has otherwise been determined to be responsive cannot technically be processed (e.g., unsupported file format, file corruption, inaccessible password-protected document), those technical problems shall be identified and disclosed to the Requesting Party by production of a Bates-labeled slipsheet that states "Technical issue—file cannot be processed." A Requesting Party may thereafter raise with the* | *If a member of an ESI Document Family that has otherwise been determined to be responsive cannot technically be processed (e.g., unsupported file format, file corruption, inaccessible password-protected document), those technical problems shall be identified and disclosed to the Requesting Party by production of a Bates-labeled slipsheet that states "Technical issue—file cannot be processed." A Requesting Party may thereafter raise with the* |

| | | *Producing Party any questions or concerns, and if the Parties cannot promptly reach an agreement, the Requesting Party may raise the issue with the Court.* | *Producing Party any questions or concerns, and if the Parties cannot promptly reach an agreement, the Requesting Party may raise the issue with the Court.* |
|---|---|---|---|
| | **SECTION VIII of the Proposed ESI Protocol** **(Data and Databases)** | | |
| **Row** | **Plaintiffs' Proposal** | **Defendants' Proposal** | **Mississippi Protocol (Section VIII)** |
| 13 | The Parties will meet and confer to address the identification, production, and production format of any ***relevant or responsive*** data contained in a database or other Structured Data or aggregated data source or otherwise maintained by an application. ***The Parties will reasonably cooperate in the exchange of information concerning such databases to facilitate discussions on productions and production format, including available data fields/objects and schema.*** If the Parties cannot reach agreement, the matter will be decided by the Court or its designee. | ***To the extent that a Producing Party produces Structured Data or similar data stored in a database, upon production the Producing Party will identify the database or platform to the Requesting Party.*** The Parties agree to meet and confer to address any concerns with the identification, production, and production format of any *relevant* data contained in a database or other Structured Data or aggregated data source or otherwise maintained by an application. If the Parties cannot reach agreement, the matter will be decided by the Court or its designee. <br><br> ***To the extent a Producing Party is constrained from producing responsive Structured Data because of a third-party license or because software necessary to view the data is hardware-dependent, the Parties shall meet and confer to minimize any*** | To the extent a response to discovery requires production of responsive Structured Data, in advance of producing such Structured Data, the Parties agree to meet and confer regarding the content and format of the production, including discussion of the most appropriate data extraction and cost-effective production format. The Producing Party shall, in good faith, make disclosures necessary to ensure the meet and confer discussions are meaningful. |

| | | *expense or burden associated with the production of such documents in an acceptable format. The Producing Party shall produce exports and reports in a reasonably usable form. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format.* | |
|---|---|---|---|
| **SECTION XIV of the Proposed ESI Protocol** <br> **(Applicability of Protocol to Plaintiffs and Defendants)** | | | |
| **Row** | **Plaintiffs' Proposal** | **Defendants' Proposal** | **Mississippi Protocol** |
| 14 | *Consistent with Section I.E of this ESI Order, and subject to any further agreement among the Parties or order of the Court, the Parties shall produce case-specific documents (i.e., documents specific to the claim of a given Plaintiff, produced by Plaintiffs or Defendants) for any Plaintiff selected for a bellwether trial and any Plaintiff that files a class action on behalf of a proposed class and/or is subsequently designated by counsel as an additional or alternative proposed class representative in accordance with the production format specified herein; provided, however, that the Producing Party may elect to produce such materials in their Native Format. To the extent production of case-* | *Provision should be deleted in its entirety.* | *No corresponding provision.* |

| | | |
|---|---|---|
| *specific documents for any Plaintiff selected for a bellwether trial or any named or designated class Plaintiff as described above presents an issue for any Party, the Parties shall reasonably confer, and may present any disputes to the Court or its designee.* | | |

# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| THE STATE OF MISSISSIPPI, EX REL. LYNN FITCH, ATTORNEY GENERAL, <br><br> *Plaintiff*, <br><br> v. <br><br> ELI LILLY AND COMPANY, *ET AL.*, <br><br> *Defendants*. | Civil Action No. 3:21-cv-00674-KHJ-MTP |

**STIPULATED PROTOCOL FOR THE DISCOVERY OF**
**ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS**

The parties to the above-captioned matter (the "Action" or this "litigation"), through their counsel, have agreed to this Protocol for Discovery of Electronically Stored Information and Hard Copy Documents ("ESI Protocol" or "Protocol"), to facilitate discovery in this litigation.

The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol. If a Producing Party cannot comply with any material aspect of this ESI Protocol or if compliance would be impossible or unreasonable, such party shall inform the Requesting Party in writing a reasonable time before the date of production. No Party may seek relief from the Court concerning compliance with the ESI Protocol unless it has complied with Section 6(I) of the Case Management Order (Dkt. 136).

All productions in this litigation are subject to the Confidentiality Order separately entered by the Court in this litigation.

I.      **GENERAL.**

A.      The procedures and protocols set forth in this Protocol shall govern the production of electronically stored information ("ESI") and hard copy documents in this litigation, unless the Parties agree in writing to change them or they are changed by the Court. This ESI Protocol is intended to aid the Parties by providing a more predictable, cost-effective, and efficient management structure for the maintenance and production of ESI. Nothing in this ESI Protocol shall supersede the Parties' obligations and protections under the Federal Rules of Civil Procedure and applicable decisional authority.

B.      Pursuant to Federal Rule of Civil Procedure 26(b)(2)(B), a Party need not provide discovery of ESI from sources that the Party identifies as not reasonably accessible because of undue burden or cost. On a motion to compel discovery or for a protective order, the Party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. The Parties agree to operate in good-faith and in accordance with the Federal Rules of Civil Procedure governing discovery, including Rule 26(b).

C.      The Parties shall promptly meet and confer in good faith on issues regarding ESI, as necessary, including issues relating to compliance with this ESI Protocol, custodians, data sources, and search methodologies (*e.g.*, search terms and other methods of identifying responsive ESI). In the event the Parties cannot reach an agreement on a disputed matter, the Parties shall submit the matter to the Court pursuant Section 6(I) of the Case Management Order (Dkt. 136).

## II.    DEFINITIONS.

**"Documents"** shall have the same definition as set forth in Federal Rules of Civil

Procedure 26 and 34.

"**Document Family**" refers to a group of related ESI that includes parent and child

documents as maintained in the ordinary course of business (*e.g.*, a parent email and any

attachments thereto).

**"Electronically stored information"** or **"ESI,"** means, as referenced in the Federal

Rules of Civil Procedure, information that is stored electronically, regardless of the media

or whether it is in the original format in which it was created, as opposed to stored in hard

copy (*i.e.*, on paper).

**"Extracted Text"** means the text extracted from an electronic document, and includes all

header, footer, redlines, comments, notes, and document body information when

reasonably available.

**"Hard Copy Document"** means a document collected from physical files (paper) and

not from electronic sources.

**"Load/Unitization file"** means an electronic file containing information identifying a set

of paper-scanned images or processed ESI and indicating where individual pages or files

belong together as documents, including attachments, and where each document begins

and ends. A Load/Unitization file may also contain data relevant to the individual

documents, including extracted and user-created metadata.

**"Media"** means an object or device, real or virtual, including but not limited to a disc,

tape, computer, or other device on which data is or was stored.

**"Metadata"** is used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file. The Metadata fields to be produced are listed in Exhibit 1.

**"Native," "Native Format,"** or **"Native Data Format"** means and refers to the format of ESI in the application in which it was originally created and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

**"OCR text"** means text generated through Optical Character Recognition Process of image/bitmap picture representation of the documents.

**"Parties"** means or refers collectively to the named plaintiffs and defendants in the above-captioned matter, as well as any later added plaintiffs and defendants. "Party" shall refer to a plaintiff or defendant, individually.

**"Producing Party"** means or refers to any Party from which production of ESI or Hard Copy Documents are sought.

**"Requesting Party"** means or refers to any Party seeking production of ESI or Hard Copy Documents.

**"Structured Data"** means data that resides in a fixed field within a record or file, or stored in a structured format, such as databases (*e.g.*, Oracle, SQL, Access, etc.) or data sets, according to specific form and content rules as defined by each field of the database.

**III.     PRESERVATION.**

**A.     Deleted Files.**

To help contain costs, the Parties are not obligated at this time to search ESI that was deleted as a result of the routine, good-faith operation of an ESI system prior to the date

upon which the duty to preserve ESI in connection with this litigation arose. Nothing in this provision limits or expands a Party's obligation to search for ESI that was "deleted" by a user that remains as a copy on an archive, backup, or as active data on some other central server or place within a Party's possession, custody, or control, provided such search is otherwise consistent with the Party's obligations under the Federal Rules of Civil Procedure.

If a Producing Party learns that responsive ESI that existed as of the date upon which the duty to preserve ESI arose (1) was lost, destroyed, or is no longer retrievable, and (2) cannot be restored or replaced through additional discovery, the Producing Party shall so advise the Requesting Party, at which point the Requesting Party and Producing Party shall meet and confer regarding the issue. Nothing in this agreement alters the Producing Party's duties and obligations under the Federal Rules of Civil Procedure or the Federal Rules of Evidence.

**B.** **Types of ESI that Need Not Be Preserved or Searched.**

The Parties agree that there is no need to preserve or search the following categories of ESI, which are deemed to not likely contain relevant information and to be not reasonably accessible:

random access memory (RAM), temporary files, or other ephemeral data;

on-line access data such as temporary internet files, histories, caches, cookies, etc.;

data in metadata fields that are frequently updated automatically, such as last-opened dates;

shadowed, damaged, residual, "deleted," "slack," "fragmented," or "unallocated" data;

data stored on photocopiers, scanners, and/or fax machines;

data maintained in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are more accessible elsewhere;

operating system files, executable files;

structural files not material to individual file contents that do not contain substantive content (*e.g.*, .CSS, .XSL, .DTD, etc.); and

non-substantive embedded files (e.g., company logos or signature blocks), as long as they are displayed in the parent document.

**C.    Types of ESI that Need Not Be Searched at Present.**

The Parties agree that there is no need, at this time, to search ESI from any source a Party has identified to the Requesting Party as not reasonably accessible pursuant to Federal Rule of Civil Procedure 26(b)(2)(B), although the Parties must take reasonable steps to preserve such ESI if potentially responsive.  All Parties reserve the right to request to have this ESI searched if some reason emerges for believing that a particular source contains responsive information:

The Parties further agree that there is no need to modify or suspend the procedures used by them in the ordinary course of business to backup data and systems for disaster recovery and similar purposes related to continuity of operations.

IV.     **PRIOR PRODUCTIONS.**

To the extent the Requesting Party has requested production of Documents or ESI that

can be satisfied by the re-production of Documents or ESI that were previously produced

by the Producing Party in other litigation or proceedings, the Producing Party, subject to

its objections to the request, may produce the previously-produced Documents or ESI in

the same form in which they originally were produced or prepared for production, even if

such form is different from the specifications in this ESI Protocol.  In these instances, the

Producing Party shall either (1) reproduce the Documents or ESI using the same Bates

numbers used when the Documents or ESI were previously produced, or (2) provide an

overlay with the corresponding Bates numbers used when previously produced.  If such

Documents or ESI have been previously produced in more than one other proceeding, the

Parties shall promptly meet and confer regarding the appropriate Bates numbers to use.

V.      **SEARCH PROCEDURES FOR ELECTRONIC DOCUMENTS.**

The Parties may identify potentially responsive ESI by: identifying and selecting the

custodians, databases, and non-custodial sources that are the most likely to possess

responsive documents and information; and (a) applying agreed-upon search terms to

identifiable data repositories and custodial data sources- in accordance with the

provisions of Section V.A., or (b) identifying Documents or ESI that are responsive to the

Requesting Party's discovery requests directly, where search terms are not necessary to

identify responsive Documents or ESI, and/or (c) utilizing Technology Assisted Review

as described below in Section V.B.  The Parties shall meet and confer in good faith

regarding the search methodology, including the proposed search terms and the identities

of custodians, and the custodial and non-custodial electronic sources from which ESI will

be collected and searched. No Party is relieved of its overall discovery obligations through the use of search terms or TAR.

**A.**     **Use of Search Terms.**

Each Producing Party shall identify and propose to the Requesting Party an initial list of search terms, custodians, custodial data sources, and non-custodial data sources that are likely to contain responsive Documents and ESI. The Parties will meet and confer regarding the data sources and search terms to be used.

**B.**     **Use of Technology Assisted Review.**

The Parties may also use technology assisted review or other agreed upon forms of machine searching not based on keywords (collectively, "TAR") in lieu of (or, where appropriate, in addition to) using search terms. Any Party that intends to use TAR agrees to disclose that intent to the Requesting Party and to meet and confer with the Requesting Party regarding how such technologies will be implemented before the Producing Party employs any TAR. The Producing Party will be reasonably transparent regarding the universe of documents subject to targeted collections, culling, or application of search terms. The Parties will meet and confer regarding any TAR issues that arise.

**C.**     **Responsive Documents.**

The fact that a document may have been retrieved by application of search terms or TAR does not render it responsive and shall not prevent a Producing Party from withholding from production such document if non-responsive and/or permissible under the Federal Rules of Civil Procedure. Conversely, the absence of a search term hit or retrieval by TAR methodology for a given document does not render it non-responsive. To the extent

any Party identifies responsive ESI or documents not hit upon by the search terms or the

TAR methodology noted above, all such non-privileged documents should be produced.

D. **Supplementation of Searches for ESI.**

Each Party may, upon reviewing documents and information produced in the litigation,

and conducting other investigation and discovery, request that additional search terms be

employed and/or files from additional custodians be searched. Any Party receiving such

a request may object to it, and such a request does not obligate the Producing party to

exceed their obligations under Federal Rule of Civil Procedure 26.

## VI. PRODUCTION OF HARD COPY AND ESI DOCUMENTS.

A. **Deduplication.**

To reduce the unnecessary costs of reviewing and producing exact duplicate documents,

each Party may use reasonable, good-faith efforts to avoid the production of duplicate

ESI through the use of global deduplication. Deduplication shall be done on the family

level based on MD5 or SHA-1 hash values.

No party shall identify and/or eliminate duplicates of hard-copy documents or ESI by

manual review or some method other than by use of the technical comparison using MD5

or SHA-1 hash values outlined above.

For exact duplicate documents, the Producing Party will produce the metadata described

in Section V for the Single Production Copy. If more than one custodian possesses a

duplicate, the Producing Party shall identify each custodian who had a copy of the

produced document (in the "All Custodians" field as described in Exhibit 1).

If during the course of its review, the Producing Party identifies a large number of

duplicate documents, the Parties may confer regarding a custom deduplication protocol.

Except for the removal of extracted logos, no custom deduplication method will be implemented without the consent of the Requesting Party.

**B.** **Email Threading.**

In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize commercially available "email thread suppression" tools. The Parties may produce lesser-included emails contained in those same threads. To the extent a Producing Party utilizes "email thread suppression tools," the Parties will promptly meet and confer regarding any requests for the production of lesser-included emails and will not unreasonably deny good faith requests for de-threading of particular email threads. This clause is not to be construed to require the Producing Party to produce metadata for lesser included emails that would not otherwise be produced but for the use of email thread suppression tools. The Parties will meet and confer regarding the production of meta-data for lesser included emails to ensure that this metadata is appropriately searchable.

**C.** **Production of Hard Copy Documents – Format.**

All Hard Copy Documents will be produced as single-page, black-and-white 300 DPI, Group IV* TIFF images or color JPG images with LZW compression where appropriate, with OCR text provided in document level text files, objective metadata fields pursuant to Exhibit 1, and load files pursuant to Exhibit 2.

**D.** **Production of ESI – Format.**

All responsive, non-privileged or privacy-protected ESI, except that which is produced in Native Format pursuant to Section VI.D.2, shall be produced as single-page, black-and-white, 300 DPI, Group IV* TIFF images or color JPG images with LZW compression

where appropriate with corresponding extracted full text provided in document level text files, objective metadata fields pursuant to Exhibit 1, and load files pursuant to Exhibit 2. Responsive, non-privileged or privacy-protected spreadsheets, audio/visual/multimedia, and other files that are not conducive to production in image format shall be produced in Native Format, except where such files are redacted pursuant to the terms of this Protocol.  Responsive, non-privileged or privacy-protected ESI produced in Native Format shall be produced with all Metadata contained in or associated with that file to the extent technologically possible consistent with Exhibit 1.  Each ESI produced in Native Format shall be assigned a unique Bates number, and for each a single page placeholder TIFF image stamped with this unique Bates number, the phrase "PRODUCED IN NATIVE FORMAT" and any corresponding confidentiality designation.  No Party may attach to any pleading or any correspondence addressed to the Court or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding a copy of any produced Native Format document without ensuring that either the corresponding placeholder slip sheet is attached to the document or the corresponding Bates number and confidentiality legend, if any, appears on the document.

E.    **Appearance and Content.**

Responsive ESI that presents imaging or formatting problems shall be promptly identified.  Producing Parties shall make reasonable efforts to address imaging and formatting issues identified by the Requesting Party.

E.    **Color.**

If a Requesting Party finds the black and white version of a document insufficient, the Requesting Party may request that the Producing Party provide a color image.  The

Producing Party will not unreasonably deny a request to provide a color image. If the parties cannot come to an agreement regarding whether a document must be produced in color, the good cause standard will govern the dispute. However, the Requesting Party does not have to make a good cause showing when it initially requests the document in color; instead, the Requesting Party may simply identify the document. If a Producing Party converts a document to color image in response to a request from a Receiving Party, the Producing Party shall do so in JPEG, TIFF or such other format as agreed with the Requesting Party.

**F.    Production of Redacted Documents/Information.**

**Redactions**. To the extent that a responsive document contains information protected by the attorney-client privilege or work product doctrine, the Producing Party may produce that document in a redacted form and identify such information on their privilege log or produce the non-privileged metadata. To the extent a Producing Party produces responsive privileged documents in redacted form with non-privileged metadata in lieu of including such documents on their privilege log, either the document in redacted form or its metadata will indicate the nature of the privilege redaction (attorney work-product or attorney-client privilege) and upon request, the Producing Party will identify all privilege redacted documents by bates number. The Producing Party may also produce in a redacted form information in a responsive document that: (1) is subject to federal, state, or foreign privacy requirements (*e.g.*, HIPAA; 21 C.F.R. §§ 20.111, 20.63, and 314.80; 45 C.F.R. §§ 160 and 164; GDPR); (2) constitutes irrelevant personal information of an

intimate or private nature; (3) relates to products that are not used to treat diabetes;[1] or

(4) information identifying members of P&T Committees other than PBM employees.

All Parties reserve their rights to challenge the appropriateness of any redactions and the

discoverability of the redacted information, including redaction of information

identifying members of P&T Committees, other than PBM employees.  The Parties will

meet and confer regarding any disputes related to any redaction and will not

unreasonably deny good-faith requests for production of redacted information.  Nothing

contained herein shall be used to demonstrate that any document or group of documents,

or any portion of any document or group of documents, is or is not properly discoverable

in the event that a Party moves for production thereof.

Any redactions shall be clearly indicated on each page of the document from which

information is redacted, bearing a designation that it has been redacted. The designation

shall make clear the reason for the redaction (e.g., "Redacted – Privileged," "Personal

Information," "Other Drug Information").  Where a document contains both privileged

and non-privileged responsive content, the Producing Party shall redact the privileged

material and produce the remainder of the document.

Native Excel or other spreadsheet files that are redacted may be produced in TIFF format

or in Native Format by overwriting the data contained in a particular cell, row, column or

---

[1] Products that are used to treat diabetes include but are not limited to: the at-issue drugs (identified  in the Third Amended Complaint and any later amendments); any generic, biosimilar or private label insulin (for example, any Relion brand or any other private label or off-label insulins, Insulin Aspart, Semglee, Admelog, Insulin Lispro Injection U-100, Insulin Lispro Protamine, Insulin Lispro Injectable Suspension Mix75/25 KwikPen, Insulin Lispro Injection Junior KwikPen and/or any other authorized generic insulin); amylinomimetic injectables; GLP-1 receptor agonists; alpha-glucosidase inhibitors; biguanides; dopamine-2 agonists; DPP-4 inhibitors; meglitinides; SGLT 2 inhibitors. Defendants do not agree that all of the products identified herein are relevant to this Action, and a Producing Party's decision not to redact information relating to any product shall not be construed as an admission that such product is relevant to this Action.

tab with the word "Redacted," and shall make clear the reason for the redaction (*e.g.*, "Redacted Privilege"), provided that such overwriting does not impact any other, non-redacted cells or information in the spreadsheet (*e.g.,* if a cell redacted for privilege contains a numerical value that is used in a formula by other, non-redacted cells in the spreadsheet). If a redaction does impact non-redacted cells/information, the Parties shall promptly meet and confer to resolve the issue. The Parties acknowledge that redacting the native may alter the metadata of the produced file; however, the metadata produced pursuant to Exhibit 1 will be the metadata extracted from the original native file, other than metadata containing redacted information.

Any native Excels or other spreadsheet files, PowerPoint or other presentation files that are redacted may be produced as black-and-white or color (as applicable), single-page TIFF files with OCR text provided in document level text files, with load files pursuant to Exhibit 2, which shall include all information contained in the original file, including, but not limited to, speaker notes and "hidden" information and/or slides, with any redaction clearly delineated. If the file contains external video or audio components, the video or audio will be produced as native files unless redacted.

**G.  Confidentiality of Produced ESI.**

Documents and ESI shall be produced pursuant to the terms of the Confidentiality Order entered in this matter. Any objections to production shall otherwise be made pursuant to the Local Rules, Federal Rules of Civil Procedure or the Federal Rules of Evidence. If the Producing Party is producing ESI in TIFF Format subject to a claim that it is protected from disclosure under the Confidentiality Order, or other Order issued in this matter, the

document shall be stamped electronically on each page in accordance with the applicable Order.

If the Producing Party is producing ESI in Native Format subject to a claim that it is protected from disclosure under the Confidentiality Order, or other Order issued in this matter, then the designation shall be included in a separate field in the .dat load file, as well as the TIFF placeholder or where not produced with a TIFF placeholder, the storage device (e.g., CD, USB, or hard drive) containing such native ESI data shall be labeled in accordance with the applicable Order.

**H.  Other Production Specifications.**

All productions will include these additional specifications:

Delimited image load/unitization file for images (Opticon / .opt) shall be provided pursuant to Exhibit 2;

Delimited metadata load file (.DAT) containing a field with the full path and file name to the native files produced pursuant to Exhibit 2, and shall include the metadata fields identified below (Exhibit 1);

Document level .txt files for all native documents containing extracted full text or OCR text (OCR only if extracted text is not available or if the document has been redacted);

Bates number branding and Confidentiality designation (if any) on the face of the image in a location that does not obliterate, conceal, or interfere with any information from the source document;

A TIFF placeholder embossed with the corresponding confidentiality designation and Bates number shall be produced for all ESI produced in Native Format;

Each Bates number will: (i) be unique across the entire document production; (ii) maintain a constant length across the entire production (i.e., ABC00000001-with no space between the prefix and the number, padded to the same number of characters); (iii) contain no special characters; and (iv) be sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production;

PowerPoint slides/presentations that are produced in TIFF format will be produced with any notes or comments contained therein. Word documents that are produced in TIFF format will be produced with any track changes or comments visible on the face of the corresponding TIFF images; and

Metadata and coding fields shall be produced for a document as set forth in Exhibit 1. If metadata fields are not produced for the reasons set out in Exhibit 1, the Producing Party shall include the fields in the header row of the .DAT and leave the field blank for the corresponding document(s).

## VII.    FAMILY RELATIONSHIPS OF ESI.

### A.    Family Relationships.

For ESI, Document Families must be preserved by assigning sequential Bates numbers to all files within a parent-child group and by providing accurate attachment ranges for those files in the metadata fields required. Attachments to emails or substantive embedded files will not be eliminated from the parent e-mail/document. Rather, parent-child relationships (the association between an attachment and its parent document or between embedded documents and their parent) will be preserved. Substantive embedded documents

(*e.g.*, a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records (either in full, redacted, or via a non-responsive or privilege slipsheet) and related back to the respective top-level parent document via the Beginning Attachment Bates Number and Ending Attachment Bates Number. The Parties agree that fully non-responsive attachments to responsive parent documents need not be produced; however, non-responsive parent documents must be produced if they contain any responsive attachments.  Where the Parties withhold a fully non-responsive, non-privileged attachment, they will produce a TIFF slip sheet with a Bates Number in place of the attachment, along with all metadata associated with the document being withheld as specified in Exhibit 1.  No extracted text need be provided.  The TIFF slip sheet for each withheld attachment will state "Family Member Withheld as Non-Responsive."  The Requesting Party has the right to request the production of any attachment withheld solely on the ground of non-responsiveness. If the Parties cannot promptly reach an agreement, the Requesting Party may raise the issue with the Court.

Where an electronic document that is part of a family is withheld, and its relationship to the rest of that Document Family is indicated using slipsheets, the Producing Party shall provide one Bates-numbered slipsheet for each withheld document.

If a member of an ESI Document Family that has otherwise been determined to be responsive cannot technically be processed (*e.g.*, unsupported file format, file corruption, inaccessible password-protected document), those technical problems shall be identified and disclosed to the Requesting Party by production of a Bates-labeled slipsheet that states "Technical issue—file cannot be processed." A Requesting Party may thereafter

raise with the Producing Party any questions or concerns, and if the Parties cannot

promptly reach an agreement, the Requesting Party may raise the issue with the Court.

**B.** **Embedded Objects.**

The Parties agree that the Producing Party is not required to review or produce non-

unique and non-substantive embedded objects as separate documents. Substantive

embedded objects shall be reviewed. Should a Party believe the volume of substantive

embedded objects results in the review being overly burdensome, the Parties shall meet

and confer concerning the review of embedded files that are within a non-responsive

document. The Producing Party may filter out certain types of files attached to emails

which usually contain information that is not material to an action, a.k.a "junk files".

These files are often corporate logo image files and similar that frequently appear at the

base of corporate emails. The Producing Party may choose to not produce any files that

are less than 3,000 kb in size with the following file extensions: .jpeg; .gif; .png; .jpg; and

.bmp. The Parties agree to meet and confer in good faith to attempt to resolve any dispute

arising under this provision.

**VIII.** **STRUCTURED DATA.**

To the extent a response to discovery requires production of responsive Structured Data,

in advance of producing such Structured Data, the Parties agree to meet and confer

regarding the content and format of the production, including discussion of the most

appropriate data extraction and cost-effective production format.  The Producing Party

shall, in good faith, make disclosures necessary to ensure the meet and confer discussions

are meaningful.

## IX.    PRODUCTION MEDIA.

Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), via secure FTP site or similar electronic secure file transfer system, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media"). Each piece of Production Media shall include a unique identifying label and cover letter including the following information:

> Name of the litigation and its case number;
>
> Name of the Producing Party;
>
> Date of the production (mm/dd/yyyy);
>
> Bates number range; and
>
> Confidentiality Designation, if any.

Any replacement Production Media or documents shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced.

Producing Parties may encrypt their Production Media and, if so, shall provide a key to decrypt the Production Media in a separate communication.

## X.    OBJECTIONS TO ESI PRODUCTION.

If any formatting requirements or other specifications agreed to in this ESI Protocol are later determined by the Producing Party to be not feasible, or unduly burdensome or unreasonably costly, the Party, during the meet-and-confer process, shall: (i) describe the nature of the objection with reasonable particularity; (ii) provide the Requesting Party with the basis for declining to produce such ESI; and (iii) indicate whether the Producing Party is willing to offer an alternative. The Parties shall negotiate in good faith

concerning the production of any such ESI. If the Parties are unable to reach agreement, the Parties shall submit any dispute to the Court pursuant to Section 6(I) of the Case Management Order (Dkt. 136).

## XI. COSTS.

Unless otherwise ordered, the costs of producing documents and ESI pursuant to this Order shall be borne by each Producing Party.  If the Parties cannot reach an agreement on a disputed matter, any Party may submit the disputed matter to the Court pursuant to Section 6(I) of the Case Management Order (Dkt. 136).

Stipulated and agreed to by the Parties on December 22, 2022.

SO ORDERED this the 16th day of February, 2023.

s/Michael T. Parker
UNITED STATES MAGISTRATE JUDGE

**Respectfully submitted,**

/s/ Tanya D. Ellis
Tanya D. Ellis, MSB # 101525
Edwin S. Gault, Jr., MSB # 10187
Walter G. Watkins, III, MSB # 100314
**Forman Watkins & Krutz LLP**
210 E. Capitol Street, Suite 2200
Jackson, MS 39201-2375
Tel. (601) 960-8600
tanya.ellis@formanwatkins.com
win.gault@formanwatkins.com
trey.watkins@formanwatkins.com

/s/ Roy D. Campbell, III
Roy D. Campbell, III, MSB No. 5562
Jonathan M. Barnes, MSB No. 10659
**Bradley Arant Boult Cummings LLP**
One Jackson Place, Suite 1000
188 E. Capitol Street
Jackson, MS 39201
Tel: (601) 948-8000
Fax: (601) 948-3000
rcampbell@bradley.com
jbarnes@bradley.com

Tricia L. Beale
**Mississippi Attorney General's Office**
1141 Bayview Ave., Ste. 402
Biloxi, MS 39530
Tel. (228) 596-8803
tricia.beale@ago.ms.gov

William Liston III, MSB No. 8482
W. Lawrence Deas, MSB No. 100227
**Liston & Deas, PLLC**
605 Crescent Blvd., Suite 200
Ridgeland, MS 39157
Tel. (601) 981-1636
Fax. (601) 982-0371
william@listondeas.com
lawrence@listondeas.com

Matthew C. McDonald, MSB No. 105966
**David Nutt & Associates**
605 Crescent Blvd., Suite 200
Ridgeland, Mississippi 39157
Tel. (601) 898-7302
mattm@davidnutt.com

Joanne Cicala, Esquire *(pro hac vice)*
Josh Wackerly, Esquire *(pro hac vice)*
**The Cicala Law Firm PLLC**
101 College Street
Dripping Springs, Texas 78620
Tel. (512) 275-6550
joanne@cicalapllc.com
josh@cicalapllc.com

*Attorneys for Plaintiff*

Brian D. Boone *(pro hac vice)*
**Alston & Bird LLP**
101 South Tryon Street, Suite 4000
Charlotte, NC 28280
Tel: (704) 444-1000
Fax: (704) 444-1111
brian.boone@alston.com

Elizabeth B. Brown *(pro hac vice)*
D. Andrew Hatchett *(pro hac vice)*
**Alston & Bird LLP**
1201 W. Peachtree Street
One Atlantic Center, Suite 4900
Atlanta, GA 30309
Tel: (404) 881-7000
Fax: (404) 881-7777
liz.brown@alston.com
andrew.hatchett@alston.com

Jean E. Richmann *(pro hac vice)*
**Alston & Bird LLP**
560 Mission Street, Suite 2100
San Francisco, CA 94105
Tel: (415) 243-1000
Fax: (415) 243-1001
jean.richmann@alston.com

Kelley C. Barnaby *(pro hac vice)*
**Alston & Bird LLP**
The Atlantic Building, 950 F Street
Washington, D.C. 20004
Tel: (202) 239-3300
Fax: (202) 239-3333
kelley.barnaby@alston.com

*Attorneys for OptumRx, Inc.*

*/s/ R. David Kaufman*
R. David Kaufman, MSB No. 3526
M. Patrick McDowell, MSB No. 9746
**Brunini, Grantham, Grower & Hewes, PLLC**
P.O. Drawer 119
Jackson, MS 39205
Tel: (601) 948-3101
Fax: (601) 960-6902
dkaufman@brunini.com
pmcdowell@brunini.com

Shirlethia V. Franklin, MSB No. 102924
William D. Coglianese *(pro hac vice)*
Theresa C. Martin *(pro hac vice)*
**Jones Day**
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 879-3892
Fax: (202) 626-1700
sfranklin@jonesday.com
wcoglianese@jonesday.com
tcoughlin@jonesday.com

Daniel W. Berens *(pro hac vice)*
**Jones Day**
325 John H. McConnell Blvd, Suite 600
Columbus, OH 43215
Tel: (614) 281-3813
Fax: (614) 461-4198
dberens@jonesday.com

*Attorneys for Sanofi-Aventis U.S. LLC*

*/s/ Cal Mayo*
J. Cal Mayo, Jr., MSB No. 8492
Kate M. Embry, MSB No. 102731
**Mayo Mallette PLLC**
2094 Old Taylor Road, Suite 200
Oxford, MS 38655
Tel: (662) 236-0055
Fax: (662) 236-0035
cmayo@mayomallette.com

Breanna F. G. Young, MSB No. 105536
**Mayo Mallette PLLC**
4400 Old Canton Road, Suite 150
Jackson, MS 39211
Telephone: (601) 366-1106
Facsimile: (662) 236-0035
byoung@mayomallette.com

Enu Mainigi *(pro hac vice)*
Craig Singer *(pro hac vice)*
R. Kennon Poteat III *(pro hac vice)*
Daniel Dockery *(pro hac vice)*
Atticus W. DeProspo *(pro hac vice)*
A Joshua Podoll *(pro hac vice)*
Alexander Gazikas *(pro hac vice)*
**Williams & Connolly LLP**
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
csinger@wc.com
kpoteat@wc.com
ddockery@wc.com
adeprospo@wc.com
apodoll@wc.com
agazikas@wc.com

*Attorneys for CVS Health Corporation, Caremark RX, L.L.C., Caremark PCS Health, L.L.C., and Caremark, L.L.C.*

/s/ P. Ryan Beckett
John A. Crawford, Jr., MSB No. 10346
Phillip S. Sykes, MSB No. 10126
P. Ryan Beckett, MSB No. 99524
Christopher D. Morris, MSB No. 102981
**Butler Snow LLP**
P.O. Box 6010
Ridgeland, MS 39158-6010
Telephone: (601) 948-5711
Facsimile: (601) 985-4500
jack.crawford@butlersnow.com
phillip.sykes@butlersnow.com
ryan.beckett@butlersnow.com
chris.morris@butlersnow.com

James P. Rouhandeh, Esq. *(pro hac vice)*
David B. Toscano, Esq. *(pro hac vice)*
Chui-Lai Cheung, Esq. *(pro hac vice)*
**Davis Polk & Wardwell LLP**
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000
rouhandeh@davispolk.com
david.toscano@davispolk.com
chui-lai.cheung@davispolk.com

Neal A. Potischman, Esq. *(pro hac vice)*
Andrew Yaphe, Esq. *(pro hac vice)*
Ian Hogg, Esq. *(pro hac vice)*
**Davis Polk & Wardwell LLP**
1600 El Camino Real
Menlo Park, CA 94025
Tel: (650) 752-2000
neal.potischman@davispolk.com
andrew.yaphe@davispolk.com
ian.hogg@davispolk.com

*Attorneys for Novo Nordisk Inc.*

/s/ Robert L. Gibbs
Robert L. Gibbs, MSB No. 4816
**Gibbs Travis PLLC**
210 East Capitol Street, Suite 1801
Jackson, MS 39201
Tel: (601) 487-2631
Fax: (601) 366-4295
rgibbs@gibbstravis.com

James F. Hurst, P.C. *(pro hac vice)*
Andrew A. Kassof, P.C. *(pro hac vice)*
Diana M. Watral, P.C. *(pro hac vice)*
Ryan J. Moorman *(pro hac vice)*
Samantha G. Rose *(pro hac vice)*
**Kirkland & Ellis LLP**
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
james.hurst@kirkland.com
akassof@kirkland.com
diana.watral@kirkland.com
ryan.moorman@kirkland.com
sam.rose@kirkland.com

*Attorneys for Eli Lilly and Company*

*/s/ Stephanie M. Rippee*
Stephanie M. Rippee, MS Bar No. 8998
**Watkins & Eager PLLC**
P.O. Box 650
Jackson, MS 39205-0650
Tel: (601) 965-1900
Fax: (601) 965-1901
srippee@watkinseager.com

Jason R. Scherr *(pro hac vice)*
Patrick A. Harvey *(pro hac vice)*
Lindsey T. Levy *(pro hac vice)*
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 739-3000
Fax: (202) 739-3001
jr.scherr@morganlewis.com
patrick.harvey@morganlewis.com
lindsey.levy@morganlewis.com

*Attorneys for Evernorth Health, Inc., Express Scripts, Inc., Express Scripts Administrators, LLC, ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., and Medco Health Solutions, Inc.*

# EXHIBIT 1

## FIELDS and METADATA TO BE PRODUCED

1.     The load files accompanying scanned Hard Copy Documents will include the following objective coding fields, to the extent applicable:

| Field | Field Description |
|---|---|
| CUSTODIAN (DPF) | The custodian of the document even if de-duplicated prior to production or location of item |
| BEGBATES (DPF) | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a Document Family |
| ENDATTACH (DPF) | Ending Bates number of a Document Family |
| PAGECOUNT (DPF) | Number of pages |
| TEXTLINK (DPF) | Link to text file for the document |

2.   The following metadata fields shall be included in Load files accompanying ESI, to the extent available, and the ESI they are related to is unredacted and not privileged:

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| BEGBATES (DPF) | First Bates identifier of item | First Bates identifier of item | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item | Last Bates identifier of item | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a document family | Starting Bates number of a Document Family | Starting Bates number of a Document Family |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| ENDATTACH (DPF) | Ending Bates number of a document family | Ending Bates number of a Document Family | Ending Bates number of a Document Family |
| PAGECOUNT (DPF) | Number of pages | Number of pages | Number of pages |
| ALL CUSTODIANS | The custodian of the document being produced. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | The custodian of the document being produced. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | The custodian of the document being produced. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. |
| CONFIDENTIAL | Confidentiality designation, if any; otherwise blank. | Confidentiality designation, if any; otherwise blank. | Confidentiality designation, if any; otherwise blank. |
| AUTHOR | Document author from Metadata | | |
| FROM | | Sender of message | Sender of calendar invite |
| TO | | Recipient(s) of message or calendar invite | Recipient(s) of calendar invite |
| CC | | Copied recipient(s) of message or calendar invite | |
| BCC | | Blind copied recipient(s) of message or calendar invite | |
| SUBJECT | | Subject of message | Subject of calendar invite |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| SENTDATE | | The sent date of the message in the format MM/DD/YYYY | Date calendar invite sent (if any) |
| SENTTIME | | The sent time of the message in the format HH:mm:ss | Time calendar invite sent (if any) |
| RECEIVEDDATE | | The received date of the message in the format MM/DD/YYYY | The received date of the invite in the format MM/DD/YYYY |
| RECEIVEDTIME | | The received time of the message in the format HH:mm:ss | The received time of the invite in the format HH:mm:ss |
| FILENAME | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent |
| FILEEXTEN | File extension | File extension | File extension |
| FILESIZE | Size of the file in bytes | Size of the file in bytes | Size of the file in bytes |
| HASH | MD5 or SHA1 hash of the document | MD5 or SHA1 hash of the email | MD5 or SHA1 hash of the calendar invite |
| NATIVELINK | Link to native file (if any) | Link to native file (if any) | Link to native file (if any) |
| TEXTLINK | Link to text file for the document | Link to text file for the email | Link to text file for the calendar invite |
| TITLE | Title from a document's properties | | |
| AUTHOR | Document author from metadata | | |
| DATECREATED | Date file was created | | |
| TIMECREATED | Time file was created | | |
| DATEMODIFIED | Date file was last modified | | |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| TIMEMODIFIED | Time file was last modified | | |
| TRACKCHANGE | (Y/N) Field for documents with track changes | | |
| FAMILYDATE | Populated for all documents. Document families populated with parent date. MM/DD/YYYY | Populated for all documents. Document families populated with parent date. MM/DD/YYYY | |
| REDACTION | (Y/N) Field for documents with redactions | (Y/N) Field for documents with redactions | (Y/N) Field for documents with redactions |

Such metadata field values will be extracted from the native file and will be produced to the extent available at the time of collection and processing, except that they may be redacted if privileged or if the metadata field values contain information protected by law or subject to an order of this Court. This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of ESI, that do not exist as part of the original metadata of the document, or that would be burdensome or costly to obtain.

If necessary, the metadata for text messages, collaboration system messages (e.g., Chatter) and social media messages shall be determined by the meet and confer as outlined in Paragraph IV.D of this ESI Protocol.

<u>**EXHIBIT 2**</u>

**REQUESTED LOAD FILE FORMAT FOR ESI**

1.      **Delimited Text File.** A delimited text file (.DAT File) containing the fields listed in Exhibit 1 should be provided. There must be one row in this load file for every document in the deliverable; and the file must terminate with a carriage return.  The delimiters for the file should be Concordance defaults:

- Comma – ASCII character 20 (¶)

- Quote – ASCII character 254 (þ)

- Newline – ASCII character 174 (®)

2.      **Image Cross-Reference File (.opt).** The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows:

ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount.

|  |  |
|---|---|
| ImageID: | The unique designation that Concordance and Opticon use to identify an image. This should be the BegBates Number of the Document. |
| VolumeLabel: | The name of the volume. |
| ImageFilePath: | The full path to the image file. |
| DocumentBreak: | If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document. |
| FolderBreak: | Leave empty. |
| BoxBreak: | Leave empty. |

PageCount:          Number of pages in the Document.

**3.      Sample Data.**

PROD00000001,VOL001,E:\100\ PROD00000001.TIF,Y,,2

PROD00000002, VOL001,E:\100\ PROD00000002.TIF,,,,

PROD00000003, VOL001,E:\100\ PROD00000003.TIF,Y,,,4

PROD00000004, VOL001,E:\100\ PROD00000004.TIF,,,,

PROD00000005, VOL001,E:\100\ PROD00000005.TIF,,,,

PROD00000006, VOL001,E:\100\ PROD00000006.TIF,,,,