UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br>**ALL CASES** | Case 2:23-md-03080-BRM-RLS<br>MDL No. 3080<br><br>**JUDGE BRIAN R. MARTINOTTI**<br>**JUDGE RUKHSANAH L. SINGH** |

## DECLARATION OF DAVID R. BUCHANAN

Pursuant to 28 U.S.C. § 1746, I, David R. Buchanan, hereby declare as follows:

1.      I am an attorney at law of the state of New Jersey, admitted to practice in this Court, and a partner with the law firm of Seeger Weiss LLP. I am Co-Lead Counsel for the Self-Funded Payer Track in the above-captioned matter. I submit this Declaration in connection with Plaintiff's Brief in Support of Their Proposed ESI Order.

2.      To the best of my knowledge, information, and belief, attached hereto as Exhibits 1 through 12 are true and correct copies of the following documents:

| EXHIBIT | DOCUMENT DESCRIPTION |
|---|---|
| 1 | Plaintiffs' proposed ESI Order |
| 2 | Redline comparison of Plaintiffs' proposed ESI Order against Defendants' proposed ESI Order |
| 3 | *In re Insulin Pricing Litigation*, 17-699 (D.N.J. Jan. 17, 2020), ECF No. 298-2, Joint Stipulated Protocol for the Discovery of Electronically Stored Information and Hard Copy Documents |
| 4 | *In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.*, MDL No. 2921, 2:19-md-02921 (D.N.J. Sept. 4, 2020), ECF No. 194, Case Management Order No. 15 (Order Regarding Electronically Stored Information and Hard Copy Documents) |

1

| EXHIBIT | DOCUMENT DESCRIPTION |
|---|---|
| 5 | *In re Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator Prods. Litig.*, MDL No. 3014, 2:21-mc-01230 (W.D. Pa. July 21, 2022), ECF No. 660, Pretrial Order #18, Stipulated Order Regarding Discovery of Documents and Electronically Stored Information |
| 6 | *In re Paraquat Prods. Liab. Litig.*, MDL No. 3004, 3:21-md-03004 (S.D. Ill. Oct. 27, 2021), ECF No. 466, Order Regarding Preservation and Production of Documents and Electronically Stored Information |
| 7 | *In re Proton-Pump Inhibitor Prods. Liab. Litig.*, MDL No. 2789, 2:17-md-02789 (D.N.J. Nov. 13, 2017), ECF No. 73, Order Regarding the Format of Production of Hardcopy Documents and Electronically Stored Information |
| 8 | *Splunk Inc., v. Cribl, Inc. et al.*, 3:22-cv-07611 (N.D. Cal. Aug. 24, 2023), ECF No. 78, Stipulated Protocol and Order Governing Discovery Matters Relating to Electronically Stored Information |
| 9 | *In re East Palestine Train Derailment*, 4:23-cv-002242 (N.D. Ohio June 29, 2023), ECF No. 100, Order for Discovery of Electronically Stored Information ("E-Discovery") by Defendants |
| 10 | *In re Insulin Pricing Litig.*, MDL No. 3080 (J.P.M.L. Aug. 3, 2023), ECF No. 91, Transfer Order |
| 11 | *In Re 3M Combat Arms Earplug Product Liability Litigation*, MDL No. 2885, 3:19-md-02885 (N.D. Fla. June 17, 2019), ECF No. 443, Pretrial Order No. 10, Order Governing Production of Documents and Electronically Stored Information |
| 12 | *In Re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672, 3:15-md-02672 (N.D. Cal. May 4, 2016), ECF No. 1482, Pretrial Order No. 18 (Stipulation and Order Governing the Production of Hard Copy Documents and Electronically Stored Information) |

I declare under penalty of perjury that the foregoing is true and correct.

*s/ David R. Buchanan*
David R. Buchanan

Dated: March 22, 2024

2

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case 2:23-md-03080**<br>**MDL No. 3080**<br><br>**JUDGE BRIAN R. MARTINOTTI**<br>**JUDGE RUKHSANAH L. SINGH** |

**THIS DOCUMENT RELATES TO: ALL CASES**

**CASE MANAGEMENT ORDER #\_\_\_**

**(STIPULATION AND ORDER GOVERNING THE PRODUCTION OF**
**ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS)**

The Parties hereby submit the following Stipulation and Order Governing the Production of Electronically Stored Information and Hard Copy Documents ("ESI Order"):

## I.     GENERAL.

**A.**     The procedures and protocols set forth in this Protocol shall govern the production of electronically stored information ("ESI") and hard copy documents in this Litigation, unless the Parties agree in writing to change them or they are changed by the Court.  This ESI Order is intended to aid the Parties by providing a more predictable, cost-effective, and efficient management structure for facilitating the exchange of ESI and hard copy documents.  Except as specifically set forth herein, nothing in this ESI Order shall supersede the Parties' obligations and protections under the Federal Rules, of Civil Procedure ("Federal Rules"), the Local Civil Rules for the U.S. District Court for the District of New Jersey ("Local Rules"), and any other applicable orders and rules.

**B.**     The Parties acknowledge their duty to work together cooperatively throughout the discovery process. The Parties shall promptly meet and confer in good faith on issues regarding

ESI, as necessary, including issues relating to compliance with this ESI Order, custodians, data sources, and search methodologies (e.g., search terms and other methods of identifying relevant or responsive ESI). In the event the Parties cannot reach agreement, disputes may be submitted to the Court or its designee for determination.

C.     By stipulating to this ESI Order and agreeing to produce ESI and hard copy documents, generally or in a particular form or forms, no Party waives any objections to producing any particular document or category of documents on any grounds whatsoever.

D.     If any Producing Party identifies a circumstance where application of this ESI Order is not technologically practicable or possible, or if it cannot comply with any material aspect of this ESI Order, or if compliance would be impossible or unreasonable, the Producing Party will disclose to the Requesting Party the reasons for, and circumstances surrounding, the impracticality or impossibility of compliance with this ESI Order, and the Parties will meet and confer in an effort to reach agreement on an appropriate exception to this ESI Order. In the event the Parties cannot reach agreement, the matter may be submitted to the Court or its designee for determination.

E.     The obligations imposed on the Parties pursuant to this ESI Order, other than the preservation obligations set forth in Section IV, will not become operative on any individual named Plaintiff until the action in which it is named is selected as a bellwether action, or on any class Plaintiff until that Plaintiff files a class action on behalf of a proposed class and/or is subsequently designated by counsel as an additional or alternative proposed class representative, or upon agreement between the individual named Plaintiff or class Plaintiff and the Defendants, or upon further order of the Court. Plaintiffs' obligations with respect to case-specific materials (i.e., documents and ESI specific to the claims of a given named Plaintiff) are set forth in Section XIV.A of this ESI Order.

      **F.**    All productions in this litigation are subject to the Protective Order separately entered by the Court in this litigation.

## II.    DEFINITIONS.

      **"Documents"** shall have the same definition as set forth in Federal Rules of Civil Procedure 26 and 34.

      **"Document Family"** refers to a collection of pages or files, produced manually or by a software application, constituting a logical single communication of information, but consisting of more than a single stand-alone record. A "parent document" is an electronic file that includes, attaches, references, or embeds, at least one other electronic file (a "child document") by means of any kind of attachment or hyperlink. A "Document Family" includes, for example, a document and all other documents in its attachment range; emails with attachments; and messages (e.g., email or chats) sent in any platform used or controlled by the Parties that point to a file that is stored elsewhere within any platform (including cloud-based or third-party platforms) used or controlled by the Parties (e.g., OneDrive or SharePoint).

      **"Electronically stored information"** or **"ESI"** means, as referenced in the Federal Rules, information that is stored electronically, regardless of the media or whether it is in the original format in which it was created, as opposed to stored in hard copy (i.e., on paper).

      **"Extracted text"** means the Native text extracted from an electronic document, and includes all header, footer, redlines, comments, notes, and document body information when reasonably available.

      **"Hard Copy Document"** means a document collected from physical files (paper) and not from electronic sources.

**"Litigation"** is defined to include all actions currently in MDL No. 3080, *In re: Insulin Pricing Litigation*, or later filed in, added to, or transferred to MDL No. 3080, and all actions later remanded to their respective transferor courts and any appeals arising from such cases.  The word "Litigation" also expressly includes the following District of New Jersey cases: Case No. 20-03426, *In re Direct Purchaser Insulin Pricing Litigation* ("Direct Purchaser Consumer Action"); Case No. 18-2211, *MSP Recovery Claims Series, LLC v. Sanofi Aventis U.S. LLC, et al.*; Case No. 17-669, *In re Insulin Pricing Litigation* ("Indirect Purchaser Consumer Action"); and Case No. 18-14999, *Minnesota v. Sanofi-Aventis U.S. LLC, et al*.

**"Load/Unitization file"** means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Unitization file may also contain data relevant to the individual documents, including extracted and user-created Metadata.

**"Media"** means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

**"Metadata"** is used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file. The Metadata fields to be produced are listed in Exhibit 1.

**"Native"** or **"Native Format"** means and refers to the format of ESI in the application in which it was originally created and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

**"OCR text"** means text generated through Optical Character Recognition Process of image/bitmap picture representation of the documents.

**"Parties"** means or refers collectively to the named plaintiffs and defendants in this Litigation, as well as any later added plaintiffs and defendants. "Party" shall refer to a plaintiff or defendant, individually.

**"Producing Party"** means or refers to any Party from which production of ESI or Hard Copy Documents are sought.

**"Receiving Party"** means or refers to any Party to which production of ESI or Hard Copy Documents is made.

**"Requesting Party"** means or refers to any Party seeking production of ESI or Hard Copy Documents.

**"Structured Data"** means data that resides in a fixed field within a record or file, or data stored in a structured format, such as databases (e.g., Oracle, SQL, Access, etc.) or data sets, according to specific form and content rules as defined by each field of the database.

## III.    PRESERVATION.

Each Party is responsible for preserving potentially relevant or responsive ESI and Hard Copy Documents within its possession, custody, or control. To reduce costs and burdens of preservation and to ensure proper documents and ESI are preserved, the Parties agree as follows:

### A.    Deleted Files.

If a Producing Party learns during the search and collection process that relevant or responsive ESI or Hard Copy Documents that existed as of the date upon which the duty to preserve ESI arose (1) was lost, destroyed, or is no longer retrievable, and (2) cannot be restored or replaced through additional discovery, the Producing Party shall so advise the Requesting Party, at which point the Requesting Party and Producing Party shall meet and confer regarding the issue.

**B.      Types of ESI that Need Not Be Preserved or Searched.**

The Parties agree that there is no need to preserve or search the following categories of

ESI, which are deemed for purposes of this section to be not reasonably accessible:

1. random access memory (RAM), temporary files, or other ephemeral data;

2. on-line access data such as temporary internet files, histories, caches, cookies, etc.;

3. data in metadata fields that are frequently updated automatically, such as last-opened
   dates;

4. damaged, residual, "deleted," "slack," "fragmented," "unallocated,", or other data
   accessible only by use of computer forensics;

5. data stored on photocopiers, scanners, and/or fax machines;

6. data maintained in any electronic backup system for the purpose of system recovery or
   information restoration, including but not limited to, system recovery backup tapes or
   other media, continuity of operations systems, and data or system mirrors or shadows,
   if such data are more accessible elsewhere;

7. operating system files, executable files;

8. structural files not material to individual file contents that do not contain substantive
   content (e.g., .CSS, .XSL, .DTD, etc.); and

9. non-substantive embedded files (e.g., company logos or signature blocks), as long as
   they are displayed in the parent document.

**C.      Inaccessible Documents.**

The Parties agree that there is no need, at this time, to search ESI from any source a Party

has identified to the Requesting Party as not reasonably accessible pursuant to Federal Rule

26(b)(2)(B), although the Parties must take reasonable steps to preserve such ESI if potentially

relevant or responsive. If a Party determines that a source is not reasonably accessible pursuant to Federal Rule 26(b)(2)(B) during its search and collection process, then it will provide sufficient information about the source to enable the Parties to confer in good faith about the accessibility thereof. A decision to preserve any ESI shall not be interpreted as an agreement that the preserved material is relevant to the issues in the case or constitutes reasonably accessible ESI that could be subject to review and production.

## IV.   PRIOR PRODUCTIONS.

To the extent the Requesting Party has requested production of documents or ESI that can be satisfied by the re-production of documents or ESI that were previously produced by the Producing Party in other litigation or proceedings, the Producing Party, subject to its objections to the request, may, at its election, produce the previously-produced documents or ESI in the same form in which they originally were produced, even if such form is different from the production specifications in this ESI Order.  In these instances, the Producing Party shall either (1) reproduce the documents or ESI using the same Bates numbers used when the documents or ESI were previously produced, or (2) provide an overlay with the corresponding Bates numbers used when previously produced.  If such documents or ESI have been previously produced in more than one other proceeding, the Parties shall meet and confer regarding the appropriate Bates numbers to use. If the Producing Party elects to produce previously produced documents, the Parties agree to meet and confer in good faith (1) should a Receiving Party make a tailored good-faith request for the reproduction of documents or ESI in a different format than originally produced and (2) to resolve any technical issues with any such productions. This provision does not waive the right of a Party to object to any requests for reproduction of documents and ESI from such prior productions.

7

V.      **SEARCH PROCEDURES FOR ELECTRONIC DOCUMENTS.**

The Parties shall participate in an iterative and cooperative approach with respect to the identification of relevant custodians and information sources. The Parties may identify potentially relevant or responsive ESI and documents by: identifying and selecting the custodians, databases, and non-custodial sources that are the most likely to possess relevant or responsive documents and information and (a) applying agreed-upon search terms to identifiable data repositories and custodial data sources- in accordance with the provisions of Section V.A., or (b) identifying documents or ESI that are responsive to the Requesting Party's discovery requests directly, where search terms are not necessary to identify responsive documents or ESI, and/or (c) utilizing Technology Assisted Review as described below in Section V.B.  The Parties shall meet and confer in good faith regarding the search methodology and search terms, if any, to be applied, and use of technology assisted review or similar technologies, if any; relevant data sources, including the identities of custodians and  custodial, non-custodial, or third-party data sources; any applicable and appropriate timeframes for the collection, review, and production of ESI and documents; and validation processes. The Producing Party will be reasonably transparent regarding the universe of documents subject to targeted collections, culling, or application of search terms. No Party is relieved of its overall discovery obligations through the use of search terms or Technology Assisted Review.

A.      **Use of Search Terms.**

If a Producing Party elects to use search terms to identify potentially relevant or responsive documents and ESI, it shall identify and propose to the Requesting Party an initial list of search terms, custodians, custodial data sources, and non-custodial data sources that are likely to contain relevant or responsive documents and ESI, and the Parties will discuss those terms and any

additional terms, or other requested changes, proposed by the Requesting Party. The Parties will meet and confer regarding the search terms to be used, as well as information to improve the effectiveness of the search terms (e.g., relevant project and code names, code words, acronyms, abbreviations, and nicknames, if any). The Parties shall participate in an iterative and cooperative approach in which the Parties will meet and confer regarding reasonable and appropriate methods to increase the relative precision or proportion of relevant or responsive ESI and documents within the search results and production sets, including the exchange of "hit count" reports. To the extent the Parties cannot reach agreement on the application of, or procedures for, any search or filtering processes, the Parties may raise such issues for resolution by the Court or its designee.

**B.      Use of Technology Assisted Review.**

If a Producing Party elects to use technology assisted review or any other form of machine learning in the review and production of ESI beyond search terms or keywords (collectively, "TAR") , it shall disclose that intent to the Requesting Party, and the Producing Party shall meet and confer with the Requesting Party regarding how such technologies will be implemented, before the Producing Party employs any TAR.  No TAR process will be "stacked" with the application of search terms or keywords , i.e., TAR will not be applied before or after any application of search terms. The Parties will meet and confer regarding any TAR issues that arise prior to submitting the issue to the Court or its designee for resolution.  If the Parties cannot reach resolution, the matter may be submitted to the Court or its designee for resolution. By agreeing to use TAR in this Litigation, the Parties do not acknowledge or concede that they are obligated to use TAR in any other matter, including, without limitation, matters pending in any state or federal courts. Moreover, by agreeing to use TAR in this Litigation, the Parties do not intend to waive any rights or protections pursuant to privacy, confidentiality, attorney-client privilege, work product,

and any other privileges, protections, or objections to discovery. The Parties preserve all such rights.

### C.      Relevant or Responsive Documents.

The fact that a document may have been retrieved by application of search terms or TAR does not render it automatically relevant or responsive and producible, and a Producing Party may withhold from production irrelevant or non-responsive and privileged ESI as permitted  under the Federal Rules.  To the extent any Party identifies relevant or responsive ESI or documents outside of search terms or the TAR methodology noted above, all such non-privileged documents shall be produced.

Nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing a review to determine if documents captured by search terms are relevant or responsive. Similarly, nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents determined to be relevant or responsive. Further, nothing in this ESI Order requires the production of irrelevant or non-responsive documents.

## VI.     PRODUCTION OF HARD COPY AND ESI DOCUMENTS.

### A.      Deduplication.

To reduce the unnecessary costs of reviewing and producing exact duplicate documents, each Party may use reasonable, good-faith efforts to avoid the production of duplicate ESI through the use of global deduplication.  Deduplication shall be done on the family level based on MD5 or SHA hash values using industry standard deduplication technology.  The Parties agree that an email that includes content in the "BCC" or other blind copy field shall not be treated as a duplicate

of any otherwise identical email that does not include content in the "BCC" or other blind copy field.

No party shall eliminate duplicates ESI by manual review or some method other than by use of the technical comparison using MD5 or SHA hash values outlined above. Hard Copy Documents shall not be eliminated as duplicates of ESI.

For exact duplicate documents, the Producing Party will produce the Metadata described in Exhibit 1 for the single production copy.  If more than one custodian possesses a duplicate, the Producing Party shall identify each custodian who had a copy of the produced document (in the "All Custodians" field as described in Exhibit 1).

If, during the course of its review, the Producing Party identifies a large number of duplicate documents, the Parties may meet and confer regarding a custom deduplication protocol. Except for the removal of extracted logos, no custom deduplication method other than those discussed herein will be implemented before conferring with the Requesting Party.

### B.    Email Threading.

No email may be withheld from production or omitted from a privilege log because it is included in whole or in part in a more inclusive email; provided, however, that the Parties may use email threading for their own internal review or other internal processes to reduce the volume of entirely duplicative content within email threads.

### C.    Production of Hard Copy Documents – Format.

All Hard Copy Documents will be produced as single-page, black-and-white 300 DPI, Group IV* TIFF images (for non-color documents) or color JPG images with LZW compression (for color documents), where appropriate, with OCR text provided in document level text files, objective Metadata fields pursuant to Exhibit 1, and load files pursuant to Exhibit 2. In scanning

11

Hard Copy Documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). Document pages which have affixed notes, such as Post-It notes, shall be imaged with and without the note attached.

**D.    Production of ESI – Format.**

All spreadsheet files (e.g., Microsoft Excel, Corel Quattro, etc.) shall be produced in Native Format with TIFF placeholder images.

All word processing files (e.g., Microsoft Word) containing track changes, comments, hidden text, or embedded file types; presentation files (e.g., Microsoft PowerPoint); image files (e.g., .jpg, .gif); and PDF files shall be produced in Native Format with TIFF placeholder images where reasonably possible, unless redactions are required, in which case such files shall be produced as TIFFs (non-color documents) or JPGs (color documents), as appropriate.

All media files, such as audio and video files, shall be produced in Native Format with TIFF placeholder images.

Emails; word processing files (e.g., Microsoft Word) not containing track changes, comments, hidden text, or embedded file types; and digital photographs shall be produced as TIFFs (for non-color documents) or JPGs (for color documents), as appropriate.

The Parties will meet and confer on the production format, including Metadata, of other document types, including for enterprise and third-party-hosted communication platforms or systems, including but not limited to: Zendesk, Slack, Microsoft Teams, Zoom, Nextiva, Discord, Trello, Workvivo, Asana, Basecamp, Confluence, Miro, Monday.com, Whatsapp, Salesforce, Webex, Yammer, Google Chat, Google Hangouts, Skype, Instant Bloomberg, or similar platforms.

Notwithstanding the Parties' stipulations herein, upon reasonable request made by the Receiving Party, the Parties shall confer regarding the production in an alternate format of a document previously produced in accordance with this ESI Order.

ESI produced in Native Format shall be produced with all Metadata contained in or associated with that file to the extent technologically possible consistent with Exhibit 1 and load files pursuant to Exhibit 2. ESI produced in Native Format shall be given a file name consisting of a unique Bates number (e.g., "ABC00000002"). For each Native file produced, the production will include a single-page placeholder TIFF image stamped with this unique Bates number and/or confidentiality designation and containing the phrase: "PRODUCED IN NATIVE FORMAT" or similar language. To the extent that it is available, the original document text shall be provided in a document-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise, the text contained on the slipsheet language shall be provided in the *.txt file with the text path provided in the *.dat file. Native files will be produced in a separate folder on the production media. In advance of depositions, the Parties reserve the right to produce JPG or TIFF versions, as applicable, of any previously produced Native file at their discretion.

No Party may attach to any pleading or any correspondence addressed to the Court or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding a copy of any produced Native document without ensuring that either the corresponding placeholder slip sheet is attached to the document or the corresponding Bates number and confidentiality legend, if any, appears on the document.

Documents produced as TIFF/JPG images shall be named according to the Bates number of the corresponding TIFF/JPG image. Each *.tiff/*.jpg file should be assigned a unique name matching the Bates number of the corresponding image. Bates numbers and confidentiality

designations should be electronically branded on each produced *.tiff/*.jpg image. These *.tiff/*jpg images should be provided in a separate folder and the number of TIFF/JPG files per folder should be limited to 1,000 files.

E.   **Appearance and Content.**

Relevant or responsive ESI that presents imaging or formatting problems shall be promptly identified and the Parties may meet and confer in an attempt to resolve the problems. Producing Parties shall make reasonable efforts to address imaging and formatting issues identified by the Requesting Party. The Requesting Party agrees to raise these issues within a reasonable timeframe.

F.   **Non-English Documents.**

When documents are produced that contain languages other than English, in whole or in part, the Producing Party shall produce each such document in the original language or languages in which it was written when collected. The Producing Party has no obligation to create a translation of the documents or any portion thereof. The Parties will meet and confer as necessary concerning procedures for using translations at depositions and at trial. In the event the Parties cannot reach agreement, the matter may be submitted to the Court or its designee for determination.

G.   **System Files.**

Each Producing Party will use its best efforts to filter out common system files and application executable files using the national software reference library NIST hash set list.

H.   **Production of Redacted Documents/Information.**

Absent further order of the Court or agreement of the Parties, no redactions may be made within any ESI or Hard Copy Document unless the information is subject to the attorney-client or work-product privileges. To the extent that a Producing Party maintains that an otherwise relevant or responsive document contains certain highly sensitive information that should be redacted for reasons other than those permitted by this section, the Producing Party and Requesting Party shall meet and

confer concerning the proposed treatment of such information; if the Parties cannot reach resolution, the Producing Party may submit the document to the Court or its designee for review *in camera* and seek an order concerning the appropriate treatment of the disputed information.

Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions and the basis for the redaction (e.g., "Redacted – A/C Privilege," "Redacted – AWP"). Where a relevant or responsive document contains both redacted and non-redacted content, the Parties shall produce the remainder of the non-redacted portions of the document and the Extracted text/OCR text corresponding to the non-redacted portions.

1. <u>Spreadsheets.</u> Spreadsheet files requiring redaction, including, without limitation, Microsoft Excel files, will be redacted in Native Form.

2. <u>Other Documents.</u> All images of redacted Native files shall be processed to show and reveal all comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its Native application. When possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (e.g., date, subject line, etc.) should not be redacted unless it is independently privileged. The production of a document in a redacted form does not affect the Parties' obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable.

## I.  Confidentiality of Produced ESI.

Documents and ESI shall be produced pursuant to the terms of the Protective Order entered in this Litigation. Any objections to production shall otherwise be made pursuant to the Local Rules, Federal Rules, or the Federal Rules of Evidence. If the Producing Party is producing ESI in TIFF format subject to a claim that it is protected from disclosure under the Protective Order, or other order issued in this Litigation, the document shall be stamped electronically on each page in accordance with the applicable Order.

If the Producing Party is producing ESI in Native Format subject to a claim that it is protected from disclosure under the Protective Order, or other order issued in this Litigation, then the designation shall be included in a separate field in the .dat load file, as well as the TIFF placeholder or where not produced with a TIFF placeholder, the storage device (e.g., CD, USB, or hard drive) containing such native ESI data shall be labeled in accordance with the applicable order.

## J.  Other Production Specifications.

All productions will include these additional specifications:

1.  ESI will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format. The Concordance (*.dat) load file shall be provided with UTF-8 encoding with the full path and file name to the files produced pursuant to Exhibit 2, and shall include the Metadata fields identified below (Exhibit 1);

2.  Document level .txt files for all Native documents containing extracted full text or OCR text (OCR only if extracted text is not available or if the document has been redacted), as follows:

a. All emails, unredacted ESI, and redacted spreadsheets produced as Native files, should be provided with complete document-level Extracted text files. Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (i) the individuals to whom the communication was directed ("To"); (ii) the author of the email communication ("From"); (iii) who was copied and blind copied on such email ("CC" and "BCC"); (iv) the subject line of the email ("RE" or "Subject"); (v) the date and time of the email; and (vi) the names of any attachments.

b. In the event a document, other than spreadsheets (e.g., Excel files), contains text that is to be redacted, OCR text files should be provided for any unredacted portions of the documents. Document-level OCR Text files shall also be provided for all Hard Copy Documents. OCR software should be set to the highest quality setting during processing. Documents containing foreign language text must be OCR'ed using the appropriate settings for that language, (e.g., OCR of Asian language documents must properly capture the relevant Asian characters). Settings such as "auto-deskewing" and "auto-rotation" must be turned on during the OCR process to maximize text recognition on any given page.

c. The Extracted text and/or OCR text for all deliverables should be in separate

17

document-level, UTF-8 encoded TXT files provided in a separate folder. The number of TXT files per folder should be limited to 1,000 files.

3. Bates number branding and confidentiality designation (if any) on the face of the image in a location that does not obliterate, conceal, or interfere with any information from the source document;

4. A TIFF placeholder embossed with the corresponding confidentiality designation and Bates number shall be produced for all ESI produced in Native Format;

5. Each Bates number will: (i) be unique across the entire document production; (ii) maintain a constant length across the entire production (i.e., ABC00000001-with no space between the prefix and the number, padded to the same number of characters); (iii) contain no special characters; and (iv) be sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production, and the skipped number or set of numbers should be noted with a placeholder.

6. Metadata and coding fields shall be produced for a document as set forth in Exhibit 1. If Metadata fields are not produced for the reasons set out in Exhibit 1, the Producing Party shall include the fields in the header row of the .DAT and leave the field blank for the corresponding document(s); and

7. In the event any document or ESI (or portion thereof) produced is password protected, the Producing Party shall make all reasonable efforts to provide the password needed to access the document or ESI.

8. Compressed file types (e.g., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in an iterative manner to ensure that an archive within an archive is decompressed into the lowest possible compression resulting in individual files.

9. Documents with dynamic fields for file names, dates, and times will be processed to show the field code (e.g., "[FILENAME]"), rather than the values for such fields existing at the time the file is processed.

10. All provided Metadata pertaining to dates and times will be standardized to UTC or other disclosed time zone.

## VII.    FAMILY RELATIONSHIPS OF ESI.

### A.    Family Relationships.

Parent-child relationships, such as the association between an attachment and its parent document, or between embedded documents and their parent documents, or between a document with document stubs or links to internal or non-public documents and those stubbed out documents or internal or non-public documents so linked,[1] will, to the extent possible, be preserved. Attachments should be consecutively produced with their parent.

A document and all other documents in its Document Family, emails with attachments, files with extracted embedded OLE (object linking and embedding) documents, and email or other documents together with any documents referenced by document stubs, or via links to internal or non-public document sources within those emails or other documents, all constitute Document

---

[1] For documents shared via links or pointers, or other "modern attachments" (i.e., hyperlinks pointing to files stored in the cloud or a shared repository such as SharePoint and other types of collaborative data sources, instead of being directly attached to a message as has been historically common with email communications), the Parties shall meet and confer regarding the most reasonable means to produce such documents, as well as the versions of such documents (e.g., the as-sent version, current version, etc.) to be collected and produced.

Families. Where feasible, if any member of a Document Family is produced, all members of that family must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

### B. Embedded Objects.

The Parties agree that non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents by a Producing Party (i.e., such embedded objects will be treated as produced within the document itself, rather than as separate documents).

Substantive embedded objects or files, where produced, are to be produced as family groups and such embedded files should be assigned Bates numbers that directly follow the Bates numbers of the documents within which they are embedded. Should a Party believe the volume of substantive embedded objects results in the review being overly burdensome, the Parties shall meet and confer. The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this provision.

### VIII. DATABASES AND STRUCTURED, AGGREGATED, OR APPLICATION DATA.

The Parties will meet and confer to address the identification, production, and production format of any relevant or responsive data contained in a database or other Structured Date or aggregated data source or otherwise maintained by an application. The Parties will reasonably cooperate in the exchange of information concerning such databases to facilitate discussions on productions and production format, including available data fields/objects and schema. If the Parties cannot reach agreement, the matter will be decided by the Court or its designee.

IX.     **PRODUCTION MEDIA.**

Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), via secure FTP site or similar electronic secure file transfer system, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media").  Each piece of Production Media shall include a unique identifying label and cover letter including the following information:

- Name of the Litigation and its case number;

- Name of the Producing Party;

- Date of the production (mm/dd/yyyy);

- Production volume and/or Bates number range; and

- Confidentiality Designation, if any.

The foregoing labeling information shall also be provided in a .txt file at the root folder of the corresponding production deliverable.  Any replacement Production Media or documents shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced.

Producing Parties may encrypt their Production Media, and if so, shall provide a key to decrypt the Production Media in a separate communication.

X.     **OBJECTIONS TO ESI PRODUCTION.**

If any formatting requirements or other specifications agreed to in this ESI Order are later determined by the Producing Party to be technically infeasible, unduly burdensome, or unreasonably costly, the Party, during the meet-and-confer process, shall: (i) describe the nature of the objection with reasonable particularity; (ii) provide the Requesting Party with the basis for declining to produce such ESI; and (iii) indicate whether the Producing Party is willing to offer an

alternative. The Parties shall negotiate in good faith concerning the production of any such ESI. If the Parties are unable to reach agreement, the Parties shall submit any dispute to the Court for resolution.

## XI.   COSTS.

Unless otherwise ordered, the costs of producing documents and ESI pursuant to this Order shall be borne by each Producing Party.  If the Parties cannot reach an agreement on a disputed matter, any Party may submit the disputed matter to the Court for resolution.

## XII.   NO DESIGNATION OF DISCOVERY REQUESTS.

Productions of Hard Copy Documents and ESI in the form set out in this ESI Order are reasonably usable and need not be organized and labeled to correspond to discovery requests.

## XIII.   E-DISCOVERY LIAISONS.

The Parties agree that each party will have an individual knowledgeable about that Party's E-Discovery systems and technologies in attendance at meet-and-confers on discovery-related matters. This individual need not be the same for every meet-and-confer, but the individual attending for each Party will be knowledgeable about the E-Discovery items at issue in the specific meet-and-confer(s) that they attend.

## XIV   MISCELLANEOUS PROVISIONS.

A.   Consistent with Section I.E of this ESI Order, and subject to any further agreement among the Parties or order of the Court, the Parties shall produce case-specific documents (i.e., documents specific to the claim of a given Plaintiff, produced by Plaintiffs or Defendants) for any Plaintiff selected for a bellwether trial and any Plaintiff that files a class action on behalf of a proposed class and/or is subsequently designated by counsel as an additional or alternative proposed class representative in accordance with the production format specified herein; provided,

however, that the Producing Party may elect to produce such materials in their Native Format. To the extent production of case-specific documents for any Plaintiff selected for a bellwether trial or any named or designated class Plaintiff as described above presents an issue for any Party, the Parties shall reasonably confer, and may present any disputes to the Court or its designee.

B.     The Parties will act in good faith as required by law and use these procedures to identify and reduce the potential for disputes.

C.     The Parties are aware of the importance the Court places on cooperation and commit to continue to consult and cooperate reasonably as discovery proceeds. No Party may seek judicial relief from the Court or its designee unless it first has conferred with the applicable Producing or Requesting Party.

STIPULATED AND AGREED TO BY THE PARTIES ON _____, 2024

**[INSERT SIGNATURE BLOCKS FOR COUNSEL OF RECORD]**

# EXHIBIT 1

## FIELDS and METADATA TO BE PRODUCED

1.    The load files accompanying scanned Hard Copy Documents will include the following objective coding fields, to the extent applicable:

| Field | Field Description |
| --- | --- |
| CUSTODIAN (DPF) | The custodian of the document even if de-duplicated prior to production or location of item |
| BEGBATES (DPF) | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a Document Family |
| ENDATTACH (DPF) | Ending Bates number of a Document Family |
| PAGECOUNT (DPF) | Number of pages |
| TEXTLINK (DPF) | Link to text file for the document |

2.    The following metadata fields shall be included in Load files accompanying ESI, to the extent available, and the ESI they are related to is unredacted and not privileged:

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
| --- | --- | --- | --- |
| BEGBATES (DPF) | First Bates identifier of item | First Bates identifier of item | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item | Last Bates identifier of item | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a document family | Starting Bates number of a Document Family | Starting Bates number of a Document Family |
| ENDATTACH (DPF) | Ending Bates number of a document family | Ending Bates number of a Document Family | Ending Bates number of a Document Family |
| PAGECOUNT (DPF) | Number of pages | Number of pages | Number of pages |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| ALL CUSTODIANS | The custodian of the document being produced. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | The custodian of the document being produced. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | The custodian of the document being produced. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. |
| CONFIDENTIAL | Confidentiality designation, if any; otherwise blank. | Confidentiality designation, if any; otherwise blank. | Confidentiality designation, if any; otherwise blank. |
| AUTHOR | Document author from Metadata | | |
| FROM | | Sender of message | Sender of calendar invite |
| TO | | Recipient(s) of message or calendar invite | Recipient(s) of calendar invite |
| CC | | Copied recipient(s) of message or calendar invite | |
| BCC | | Blind copied recipient(s) of message or calendar invite | |
| SUBJECT | | Subject of message | Subject of calendar invite |
| SENTDATE | | The sent date of the message in the format MM/DD/YYYY | Date calendar invite sent (if any) |
| SENTTIME | | The sent time of the message in the format HH:mm:ss | Time calendar invite sent (if any) |
| RECEIVEDDATE | | The received date of the message in the format MM/DD/YYYY | The received date of the invite in the format MM/DD/YYYY |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| RECEIVEDTIME | | The received time of the message in the format HH:mm:ss | The received time of the invite in the format HH:mm:ss |
| FILENAME | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent |
| FILEEXTEN | File extension | File extension | File extension |
| FILESIZE | Size of the file in bytes | Size of the file in bytes | Size of the file in bytes |
| HASH | MD5 or SHA1 hash of the document | MD5 or SHA1 hash of the email | MD5 or SHA1 hash of the calendar invite |
| NATIVELINK | Link to native file (if any) | Link to native file (if any) | Link to native file (if any) |
| TEXTLINK | Link to text file for the document | Link to text file for the email | Link to text file for the calendar invite |
| TITLE | Title from a document's properties | | |
| DATECREATED | Date file was created | | |
| TIMECREATED | Time file was created | | |
| DATEMODIFIED | Date file was last modified | | |
| TIMEMODIFIED | Time file was last modified | | |
| TRACKCHANGE | (Y/N) Field for documents with track changes | | |
| FAMILYDATE | Populated for all documents. Document families populated with parent date. MM/DD/YYYY | Populated for all documents. Document families populated with parent date. MM/DD/YYYY | |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|-------|--------------------------------------------|------------------------------|---------------------------------------|
| PRODVOL | Production volume number | Production volume number | Production volume number |
| REDACTION | (Y/N) Field for documents with redactions | (Y/N) Field for documents with redactions | (Y/N) Field for documents with redactions |

Such Metadata field values will be extracted from the native file and will be produced to the extent available at the time of collection and processing, except that they may be redacted if privileged or if the metadata field values contain information protected by law or subject to an order of this Court. This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of ESI, that do not exist as part of the original metadata of the document, or that would be burdensome or costly to obtain.

If necessary, the Metadata for text messages, collaboration system messages (e.g., Chatter), social media messages, and other ESI that does not confirm to the Metadata listed here, shall be determined by the meet-and-confer as outlined in Paragraph VI.D of this ESI Order.

27

## EXHIBIT 2

## REQUESTED LOAD FILE FORMAT FOR ESI

1.    **Delimited Text File.** A delimited text file (.DAT File) containing the fields listed in Exhibit 1 should be provided. There must be one row in this load file for every document in the deliverable; and the file must terminate with a carriage return.  The delimiters for the file should be Concordance defaults:

- •    Comma – ASCII character 20 (¶)

- •    Quote – ASCII character 254 (þ)

- •    Newline – ASCII character 174 (®)

2.    **Image Cross-Reference File (.opt).** The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows:

ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount.

| | |
|---|---|
| ImageID: | The unique designation that Concordance and Opticon use to identify an image. This should be the BegBates Number of the Document. |
| VolumeLabel: | The name of the volume. |
| ImageFilePath: | The full path to the image file. |
| DocumentBreak: | If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document. |
| FolderBreak: | Leave empty. |
| BoxBreak: | Leave empty. |

PageCount:                Number of pages in the Document.


3.      **Sample Data.**

PROD00000001,VOL001,E:\100\ PROD00000001.TIF,Y,,2

PROD00000002, VOL001,E:\100\ PROD00000002.TIF,,,,

PROD00000003, VOL001,E:\100\ PROD00000003.TIF,Y,,,4

PROD00000004, VOL001,E:\100\ PROD00000004.TIF,,,,

PROD00000005, VOL001,E:\100\ PROD00000005.TIF,,,,

PROD00000006, VOL001,E:\100\ PROD00000006.TIF,,,,


4882-7558-3906, v. 2

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case 2:23-md-03080**<br>**MDL No. 3080**<br><br>**JUDGE BRIAN R. MARTINOTTI**<br>**JUDGE RUKHSANAH L. SINGH** |

**THIS DOCUMENT RELATES TO: ALL CASES**

**CASE MANAGEMENT ORDER #___**

**(STIPULATION AND ORDER GOVERNING THE PRODUCTION OF**
**ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS)**

The Parties hereby submit the following Stipulation and Order Governing the Production of Electronically Stored Information and Hard Copy Documents ("ESI Order"):

**I.     GENERAL.**

**A.**     The procedures and protocols set forth in this Protocol shall govern the production of electronically stored information ("ESI") and hard copy documents in this Litigation, unless the Parties agree in writing to change them or they are changed by the Court.  This ESI Order is intended to aid the Parties by providing a more predictable, cost-effective, and efficient management structure for facilitating the exchange of ESI and hard copy documents.  Except as specifically set forth herein, nothing in this ESI Order shall supersede the Parties' obligations and protections under the Federal Rules, of Civil Procedure ("Federal Rules"), the Local Civil Rules for the U.S. District Court for the District of New Jersey ("Local Rules"), and any other applicable orders and rules.

**B.**     The Parties acknowledge their duty to work together cooperatively throughout the discovery process. The Parties shall promptly meet and confer in good faith on issues regarding

1

ESI, as necessary, including issues relating to compliance with this ESI Order, custodians, data sources, and search methodologies (e.g., search terms and other methods of identifying relevant or responsive ESI).  In the event the Parties cannot reach agreement, disputes may be submitted to the Court or its designee for determination.

     **C.**     By stipulating to this ESI Order and agreeing to produce ESI and hard copy documents, generally or in a particular form or forms, no Party waives any objections to producing any particular document or category of documents on any grounds whatsoever.

     **D.**     If any Producing Party identifies a circumstance where application of this ESI Order is not technologically practicable or possible, or if it cannot comply with any material aspect of this ESI Order, or if compliance would be impossible or unreasonable, the Producing Party will disclose to the Requesting Party the reasons for, and circumstances surrounding, the impracticality or impossibility of compliance with this ESI Order, and the Parties will meet and confer in an effort to reach agreement on an appropriate exception to this ESI Order. In the event the Parties cannot reach agreement, the matter may be submitted to the Court or its designee for determination.

     ~~**E.**~~     ~~This ESI Order shall apply to all Parties in this litigation, except where a Party seeks an exception to this ESI Order as described in Section [I.D.] herein.~~

     **E.**     The obligations imposed on the Parties pursuant to this ESI Order, other than the preservation obligations set forth in Section IV, will not become operative on any individual named Plaintiff until the action in which it is named is selected as a bellwether action, or on any class Plaintiff until that Plaintiff files a class action on behalf of a proposed class and/or is subsequently designated by counsel as an additional or alternative proposed class representative, or upon agreement between the individual named Plaintiff or class Plaintiff and the Defendants, or upon further order of the Court. Plaintiffs' obligations with respect to case-specific materials (i.e.,

documents and ESI specific to the claims of a given named Plaintiff) are set forth in Section XIV.A of this ESI Order.

    **F.**    All productions in this litigation are subject to the Protective Order separately entered by the Court in this litigation.

## II.    DEFINITIONS.

    **"Documents"** shall have the same definition as set forth in Federal Rules of Civil Procedure 26 and 34.

    **"Document Family"** refers to a collection of ~~related~~ pages or files ~~as maintained in the ordinary course~~, produced manually or by a software application, constituting a logical single communication of ~~business~~information, but consisting of more than a single stand-alone record. A "parent document" is an electronic file that includes, attaches, references, or embeds, at least one other electronic file (a "child document~~"):~~.") by means of any kind of attachment or hyperlink. A "Document Family" includes, for example, a document and all other documents in its attachment range; emails with attachments~~, or MSOffice files embedded within another MSOffice document. For the avoidance of doubt, ESI referenced in ESI only by a hyperlink~~; and messages (e.g., email or ~~other pointer ("hyperlinked files") shall not be construed to be~~chats) sent in any platform used or controlled by the Parties that point to a file that is stored elsewhere within any platform (including cloud-based or third-party platforms) used or controlled by the ~~same Document Family solely by virtue of the hyperlink reference.~~Parties (e.g., OneDrive or SharePoint).

    **"Electronically stored information"** or **"ESI"** means, as referenced in the Federal Rules, information that is stored electronically, regardless of the media or whether it is in the original format in which it was created, as opposed to stored in hard copy (i.e., on paper).

**"Extracted text"** means the Native text extracted from an electronic document, and includes all header, footer, redlines, comments, notes, and document body information when reasonably available.

**"Hard Copy Document"** means a document collected from physical files (paper) and not from electronic sources.

**"Litigation"** is defined to include all actions currently in MDL No. 3080, *In re: Insulin Pricing Litigation*, or later filed in, added to, or transferred to, or coordinated with (pursuant to a court order or the Parties' express written agreement) MDL No. MDL No. 3080, and all actions later remanded to their respective transferor courts and any appeals arising from such cases. The word "Litigation" also expressly includes the following District of New Jersey cases: Case No. 20-03426, *In re Direct Purchaser Insulin Pricing Litigation* ("Direct Purchaser Consumer Action"); Case No. 18-2211, *MSP Recovery Claims Series, LLC v. Sanofi Aventis U.S. LLC, et al.*; Case No. 17-669, *In re Insulin Pricing Litigation* ("Indirect Purchaser Consumer Action"); and Case No. 18-14999, *Minnesota v. Sanofi-Aventis U.S. LLC, et al.*

**"Load/Unitization file"** means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Unitization file may also contain data relevant to the individual documents, including extracted and user-created Metadata.

**"Media"** means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

**"Metadata"** is used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file. The Metadata fields to be produced are listed in Exhibit 1.

**"Native"** or **"Native Format"** means and refers to the format of ESI in the application in which it was originally created and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

**"OCR text"** means text generated through Optical Character Recognition Process of image/bitmap picture representation of the documents.

**"Parties"** means or refers collectively to the named plaintiffs and defendants in this Litigation, as well as any later added plaintiffs and defendants. "Party" shall refer to a plaintiff or defendant, individually.

**"Producing Party"** means or refers to any Party from which production of ESI or Hard Copy Documents are sought.

**"Receiving Party"** means or refers to any Party to which production of ESI or Hard Copy Documents is made.

**"Requesting Party"** means or refers to any Party seeking production of ESI or Hard Copy Documents.

"**Structured Data**" means data that resides in a fixed field within a record or file, or data stored in a structured format, such as databases (e.g., Oracle, SQL, Access, etc.) or data sets, according to specific form and content rules as defined by each field of the database.

## III.    PRESERVATION.

Each Party is responsible for preserving potentially relevant or responsive ESI and Hard Copy Documents within its possession, custody, or control. To reduce costs and burdens of preservation and to ensure proper documents and ESI are preserved, the Parties agree as follows:

### A.    Deleted Files.

If a Producing Party learns during the search and collection process that relevant or responsive ESI or Hard Copy Documents that existed as of the date upon which the duty to preserve ESI arose (1) was lost, destroyed, or is no longer retrievable, and (2) cannot be restored or replaced through additional discovery, the Producing Party shall so advise the Requesting Party, at which point the Requesting Party and Producing Party shall meet and confer regarding the issue.

### B.    Types of ESI that Need Not Be Preserved or Searched.

The Parties agree that there is no need to preserve or search the following categories of ESI, which are deemed for purposes of this section to be not reasonably accessible:

1. random access memory (RAM), temporary files, or other ephemeral data;

2. on-line access data such as temporary internet files, histories, caches, cookies, etc.;

3. data in metadata fields that are frequently updated automatically, such as last-opened dates;

4. ~~shadowed,~~ damaged, residual, "deleted," "slack," "fragmented," "unallocated,", or other data accessible only by use of computer forensics;

5. data stored on photocopiers, scanners, and/or fax machines;

6. data maintained in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are more accessible elsewhere;

7. operating system files, executable files;

8. structural files not material to individual file contents that do not contain substantive content (e.g., .CSS, .XSL, .DTD, etc.); and

9. non-substantive embedded files (e.g., company logos or signature blocks), as long as they are displayed in the parent document.

**C.      Inaccessible Documents.**

The Parties agree that there is no need, at this time, to search ESI from any source a Party has identified to the Requesting Party as not reasonably accessible pursuant to Federal Rule 26(b)(2)(B), although the Parties must take reasonable steps to preserve such ESI if potentially responsive. All Parties reserve the right to request to have this ESI searched if some reason emerges for believing that a particular source contains responsive information.relevant or responsive. If a Party determines that a source is not reasonably accessible pursuant to Federal Rule 26(b)(2)(B) during its search and collection process, then it will provide sufficient information about the source to enable the Parties to confer in good faith about the accessibility thereof. A decision to preserve any ESI shall not be interpreted as an agreement that the preserved material is relevant to the issues in the case or constitutes reasonably accessible ESI that could be subject to review and production.

The Parties further agree that there is no need to modify or suspend the procedures used by them in the ordinary course of business to backup data and systems for disaster recovery and

similar purposes related to continuity of operations.

**IV.    PRIOR PRODUCTIONS.**

To the extent the Requesting Party has requested production of documents or ESI that can be satisfied by the re-production of documents or ESI that were previously produced by the Producing Party in other litigation or proceedings, the Producing Party, subject to its objections to the request, may, at its election, produce the previously-produced documents or ESI in the same form in which they originally were produced or prepared for production, even if such form is different from the production specifications in this ESI Order.  In these instances, the Producing Party shall either (1) reproduce the documents or ESI using the same Bates numbers used when the documents or ESI were previously produced, or (2) provide an overlay with the corresponding Bates numbers used when previously produced.  If such documents or ESI have been previously produced in more than one other proceeding, the Parties shall meet and confer regarding the appropriate Bates numbers to use. If the Producing Party elects to produce previously produced documents, the Parties agree to meet and confer in good faith (1) should a Receiving Party make a tailored good-faith request for the reproduction of documents or ESI in a different format than originally produced and (2) to resolve any technical issues with any such productions. This provision does not waive the right of a Party to object to any requests for reproduction of documents and ESI from such prior productions.

**V.    SEARCH PROCEDURES FOR ELECTRONIC DOCUMENTS.**

The Parties shall participate in an iterative and cooperative approach with respect to the identification of relevant custodians and information sources. The Parties may identify potentially relevant or responsive ESI and documents by: identifying and selecting the custodians, databases, and non-custodial sources that are the most likely to possess relevant or

responsive documents and information and (a) applying agreed-upon search terms to identifiable

data repositories and custodial data sources- in accordance with the provisions of Section V.A.,

or (b) identifying documents or ESI that are responsive to the Requesting Party's discovery

requests directly, where search terms are not necessary to identify responsive documents or ESI,

and/or (c) utilizing Technology Assisted Review as described below in Section V.B.  The Parties

shall meet and confer in good faith regarding the search methodology and search terms, if any, to

be applied, and use of technology assisted review or similar technologies, if any;

responsiverelevant data sources, including the identities of custodians and  custodial or, non-

custodial, or third-party data sources; and any applicable and appropriate timeframes for the

collection, review, and production of ESI and documents; and validation processes. The

Producing Party will be reasonably transparent regarding the universe of documents subject to

targeted collections, culling, or application of search terms. No Party is relieved of its overall

discovery obligations through the use of search terms or Technology Assisted Review.

### A. Use of Search Terms.

If a Producing Party elects to use search terms to identify potentially relevant or responsive

documents and ESI, it shall identify and propose to the Requesting Party an initial list of search

terms, custodians, custodial data sources, and non-custodial data sources that are likely to contain

relevant or responsive documents and ESI, and the Parties will meet and confer regardingdiscuss

those terms and any additional terms, or other requested changes, proposed by the Requesting

Party. .The Parties will meet and confer regarding the search terms to be used, as well as

information to improve the effectiveness of the search terms (e.g., relevant project and code names,

code words, acronyms, abbreviations, and nicknames, if any). The Parties shall participate in an

iterative and cooperative approach in which the Parties will meet and confer regarding reasonable

and appropriate methods to increase the relative precision or proportion of relevant or responsive ESI and documents within the search results and production sets, including the exchange of "hit count" reports. To the extent the Parties cannot reach agreement on the application of, or procedures for, any search or filtering processes, the Parties may raise such issues for resolution by the Court or its designee.

      **B.**    **Use of Technology Assisted Review.**

If a Producing Party elects to use technology assisted review or any other form of machine learning in the review and production of ESI beyond search terms or keywords (collectively, "TAR") for purposes of culling ESI potentially responsive to a Requesting Party's request, it shall disclose that intent to the Requesting Party, and the Producing Party shall meet and confer with the Requesting Party regarding how such technologies will be implemented, before the Producing Party employs any TAR. No TAR process will be "stacked" with the application of search terms or keywords , i.e., TAR will not be applied before or after any application of search terms. The Parties will meet and confer regarding any TAR issues that arise prior to submitting the issue to the Court or its designee for resolution.  If the Parties cannot reach resolution, the matter may be submitted to the Court or its designee for resolution. By agreeing to use TAR in this Litigation, the Parties do not acknowledge or concede that they are obligated to use TAR in any other matter, including, without limitation, matters pending in any state or federal courts. Moreover, by agreeing to use TAR in this Litigation, the Parties do not intend to waive any rights or protections pursuant to privacy, confidentiality, attorney-client privilege, work product, and any other privileges, protections, or objections to discovery. The Parties preserve all such rights.

C.     **Relevant or Responsive Documents.**

The fact that a document may have been retrieved by application of search terms or TAR does not render it automatically relevant or responsive and producible, and a Producing Party may withhold from production ~~such document if~~irrelevant or non-responsive and~~/or permissible privileged ESI as permitted~~ under the Federal Rules.  To the extent any Party identifies relevant or responsive ESI or documents outside of search terms or the TAR methodology noted above, all such non-privileged documents shall be produced.

Nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing a review to determine if documents captured by search terms are relevant or responsive ~~to the Requesting Party's discovery requests~~. Similarly, nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents determined to be relevant or responsive. Further, nothing in this ESI Order requires the production of ~~documents captured by search terms or TAR that are not relevant and~~ irrelevant or non-responsive ~~to the Requesting Party's request~~documents.

VI.     **PRODUCTION OF HARD COPY AND ESI DOCUMENTS.**

A.     **Deduplication.**

To reduce the unnecessary costs of reviewing and producing exact duplicate documents, each Party may use reasonable, good-faith efforts to avoid the production of duplicate ESI through the use of global deduplication.  Deduplication shall be done on the family level based on MD5 or SHA hash values using industry standard deduplication technology.  The Parties agree that an email that includes content in the "BCC" or other blind copy field shall not be treated as a duplicate of any otherwise identical email that does not include content in the "BCC" or other blind copy field.

No party shall eliminate duplicates of ESI by manual review or some method other than by use of the technical comparison using MD5 or SHA hash values outlined above. Hard Copy Documents shall not be eliminated as duplicates of ESI.

For exact duplicate documents, the Producing Party will produce the Metadata described in Exhibit 1 for the single production copy.  If more than one custodian possesses a duplicate, the Producing Party shall identify each custodian who had a copy of the produced document (in the "All Custodians" field as described in Exhibit 1).

If, during the course of its review, the Producing Party identifies a large number of duplicate documents, the Parties may meet and confer regarding a custom deduplication protocol. Except for the removal of extracted logos, no custom deduplication method other than those discussed herein will be implemented before conferring with the Requesting Party.

### B.      Email Threading.

The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. This clause is not to be construed to require the Producing Party to produce metadata for lesser included emails not themselves produced. To the extent a Receiving Party requests the production of specific lesser inclusive copies, the Parties will promptly meet and confer and will not unreasonably deny particularized requests.

No email may be withheld from production or omitted from a privilege log because it is included in whole or in part in a more inclusive email; provided, however, that the Parties may use email threading for their own internal review or other internal processes to reduce the volume of entirely duplicative content within email threads.

### C.      Production of Hard Copy Documents – Format.

All Hard Copy Documents will be produced as single-page, black-and-white 300 DPI, Group IV* TIFF images (for non-color documents) or color JPG images with LZW compression ;(for color documents), where appropriate, with OCR text provided in document level text files, objective Metadata fields pursuant to Exhibit 1, and load files pursuant to Exhibit 2. In scanning Hard Copy Documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). Document pages which have affixed notes, such as Post-It notes, shall be imaged with and without the note attached.

### D.      Production of ESI – Format.

ESI, except that which is redacted, slipsheeted, or produced in Native Format, shall be produced as single-page, black-and-white, 300 DPI, Group IV* TIFF images or color JPG images with LZW compression where appropriate with corresponding extracted full text provided in document level text files, objective metadata fields pursuant to Exhibit 1, and load files pursuant to Exhibit 2. All ESI produced as images shall be imaged, to the extent reasonably possible, with track changes, comments, hidden text, and/or underlying annotations rendered on the image. Spreadsheets, audio/visual/multimedia, and other files that are not conducive to production in image format shall be produced in Native Format, except where such files are image-redacted or slipsheeted pursuant to the terms of this Protocol.   All spreadsheet files (e.g., Microsoft Excel, Corel Quattro, etc.) shall be produced in Native Format with TIFF placeholder images.

All word processing files (e.g., Microsoft Word) containing track changes, comments, hidden text, or embedded file types; presentation files (e.g., Microsoft PowerPoint); image files (e.g., .jpg, .gif); and PDF files shall be produced in Native Format with TIFF placeholder images

where reasonably possible, unless redactions are required, in which case such files shall be produced as TIFFs (non-color documents) or JPGs (color documents), as appropriate.

All media files, such as audio and video files, shall be produced in Native Format with TIFF placeholder images.

Emails; word processing files (e.g., Microsoft Word) not containing track changes, comments, hidden text, or embedded file types; and digital photographs shall be produced as TIFFs (for non-color documents) or JPGs (for color documents), as appropriate.

The Parties will meet and confer on the production format, including Metadata, of other document types, including for enterprise and third-party-hosted communication platforms or systems, including but not limited to: Zendesk, Slack, Microsoft Teams, Zoom, Nextiva, Discord, Trello, Workvivo, Asana, Basecamp, Confluence, Miro, Monday.com, Whatsapp, Salesforce, Webex, Yammer, Google Chat, Google Hangouts, Skype, Instant Bloomberg, or similar platforms.

Notwithstanding the Parties' stipulations herein, upon reasonable request made by the Receiving Party, the Parties shall confer regarding the production in an alternate format of a document previously produced in accordance with this ESI Order.

ESI produced in Native Format shall be produced with all Metadata contained in or associated with that file to the extent technologically possible consistent with Exhibit 1, and load files pursuant to Exhibit 2. ESI produced in Native Format shall be given a file name consisting of a unique Bates number (e.g., "ABC00000002"). For each Native file produced, the production will include a single-page placeholder TIFF image stamped with this unique Bates number and/or confidentiality designation and containing the phrase: "PRODUCED IN NATIVE FORMAT" or similar language. To the extent that it is available, the original document text shall be provided in a document-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise,

the text contained on the slipsheet language shall be provided in the *.txt file with the text path provided in the *.dat file. Native files will be produced in a separate folder on the production media. In advance of depositions, the Parties reserve the right to produce JPG or TIFF versions, as applicable, of any previously produced Native file at their discretion.

No Party may attach to any pleading or any correspondence addressed to the Court or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding a copy of any produced Native document without ensuring that either the corresponding placeholder slip sheet is attached to the document or the corresponding Bates number and confidentiality legend, if any, appears on the document.

Documents produced as TIFF/JPG images shall be named according to the Bates number of the corresponding TIFF/JPG image. Each *.tiff/*.jpg file should be assigned a unique name matching the Bates number of the corresponding image. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff/*.jpg image. These *.tiff/*jpg images should be provided in a separate folder and the number of TIFF/JPG files per folder should be limited to 1,000 files.

E.      **Appearance and Content.**

~~Responsive~~    Relevant or responsive ESI that presents imaging or formatting problems shall be promptly identified and the Parties may meet and confer in an attempt to resolve the problems.  Producing Parties shall make reasonable efforts to address imaging and formatting issues identified by the Requesting Party.  The Requesting Party agrees to raise these issues within a reasonable timeframe.

F.      ~~Color.~~

If a Requesting Party finds the black and white version of a document insufficient, the Requesting Party may request that the Producing Party provide a color image. The Producing Party will not unreasonably deny a request to provide a color image. If the parties cannot come to an agreement regarding whether a document must be produced in color, the good cause standard will govern the dispute. However, the Requesting Party does not have to make a good cause showing when it initially requests the document in color; instead, the Requesting Party may simply identify the document. If a Producing Party converts a document to color image in response to a request from a Receiving Party, the Producing Party shall do so in JPEG, TIFF or such other format as agreed with the Requesting Party.

G.F.    **Non-English Documents.**

When documents are produced that contain languages other than English, in whole or in part, the Producing Party shall produce each such document in the original language or languages in which it was written when collected. The Producing Party has no obligation to create a translation of the documents or any portion thereof. The Parties will meet and confer as necessary concerning procedures for using translations at depositions and at trial. In the event the Parties cannot reach agreement, the matter may be submitted to the Court or its designee for determination.

H.G.    **System Files.**

Each Producing Party will use its best efforts to filter out common system files and application executable files using the national software reference library NIST hash set list.

I.H.    **Production of Redacted Documents/Information.**

Redactions. To the extent that a responsive document contains information protected by the attorney-client privilege or work product doctrine, the Producing Party may produce that document in a redacted form and identify such information on their privilege log or produce the

non-privileged metadata. To the extent a Producing Party produces responsive privileged documents in redacted form with non-privileged metadata in lieu of including such documents on their privilege log, either the document in redacted form or its metadata will indicate the nature of the privilege redaction (attorney work-product or attorney-client privilege) and upon request, the Producing Party will identify all privilege redacted documents by bates number. The Producing Party may also produce in a redacted form information in a responsive document that: (1) is subject to federal, state, or foreign privacy requirements (e.g., HIPAA; 21 C.F.R. §§ 20.111, 20.63, and 314.80; 45 C.F.R. §§ 160 and 164; GDPR); (2) constitutes irrelevant personal information of an intimate or private nature; (3) uniquely identifying information related to non-diabetes products[1]; or (4) information identifying members of P&T Committees other than Pharmacy Benefit Manager ("PBM") employees.

---

[1] Products that are used to treat diabetes include but are not limited to: the at-issue drugs (identified in complaints in any actions consolidated in this Litigation and any later amendments); any generic, biosimilar or private label insulin (for example, any Relion brand or any other private label or off-label insulins, Insulin Aspart, Semglee, Admelog, Insulin Lispro Injection U-100, Insulin Lispro Protamine, Insulin Lispro Injectable Suspension Mix75/25 KwikPen, Insulin Lispro Injection Junior KwikPen and/or any other authorized generic insulin); amylinomimetic injectables; GLP-1 receptor agonists; alpha-glucosidase inhibitors; biguanides; dopamine-2 agonists; DPP-4 inhibitors; meglitinides; SGLT-2 inhibitors. Defendants do not agree that all of the products identified herein are relevant to this Action, and a Producing Party's decision not to redact information relating to any product shall not be construed as an admission that such product is relevant to this Action. To the extent a case brings claims based on products other than those used to treat diabetes, the parties to that case shall meet and confer as to appropriate redactions with respect to that Receiving Party.

Examples of "uniquely identifying information related to non-diabetes products" include, but are not strictly limited to, brand or generic names of non-diabetes products, units and/or dosages of non-diabetes products, National Drug Codes of non-diabetes products, indications of non-diabetes products if they are specific enough to allow for unique product identification, the names of disease states or therapeutic areas associated with non-diabetes product if they are specific enough to allow for unique product identification, and names of direct competitor drugs for non-diabetes products.

All Parties reserve their rights to challenge the appropriateness of any redactions and the discoverability of the redacted information, including redaction of information identifying members of P&T Committees, other than PBM employees.  The Parties will meet and confer regarding any disputes related to any redaction and will not unreasonably deny good-faith requests for production of redacted information.  The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable. Nothing contained herein shall be used to demonstrate that any document or group of documents, or any portion of any document or group of documents, is or is not properly discoverable in the event that a Party moves for production thereof.

Absent further order of the Court or agreement of the Parties, no redactions may be made within any ESI or Hard Copy Document unless the information is subject to the attorney-client or work-product privileges. To the extent that a Producing Party maintains that an otherwise relevant or responsive document contains certain highly sensitive information that should be redacted for reasons other than those permitted by this section, the Producing Party and Requesting Party shall meet and confer concerning the proposed treatment of such information; if the Parties cannot reach resolution, the Producing Party may submit the document to the Court or its designee for review *in camera* and

seek an order concerning the appropriate treatment of the disputed information.

Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions and the basis for the redaction (e.g., "Redacted  –Privileged," "Personal Information," "Other Drug Information").  A/C Privilege," "Redacted – AWP").  Where a relevant or responsive document contains both privilegedredacted and non-privileged responsive redacted content, the Producing Party shall redact the privileged material and Parties shall produce the remainder of the documentnon-redacted portions of the document and the Extracted text/OCR text corresponding to the non-redacted portions.

Native Excel or other spreadsheet files that are redacted may be produced in Native or near Native Format by overwriting the data contained in a particular cell, row, column or tab with the word "Redacted," using industry-standard tools, and shall make clear the reason for the redaction (e.g., "Redacted – Privilege"), provided that such overwriting does not impact any other, non-redacted cells or information in the spreadsheet (e.g., if a cell redacted for privilege contains a numerical value that is used in a formula by other, non-redacted cells in the spreadsheet).  If a redaction does impact non-redacted cells/information, the Parties shall promptly meet and confer to resolve the issue.  The Parties acknowledge that redacting the native may alter the metadata of the produced file; however, the metadata produced pursuant to Exhibit 1 will be the metadata extracted from the original native file, other than metadata containing redacted information.

Any other native files that are redacted may be produced as black-and-white or color (as applicable), single-page TIFF files with OCR text provided in document level text files, with load files pursuant to Exhibit 2, which shall include all information contained in the original file.

1.   Spreadsheets. Spreadsheet files requiring redaction, including, without limitation,

Microsoft Excel files, will be redacted in Native Form.

2.  Other Documents. All images of redacted Native files shall be processed to show and reveal all comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its Native application. When possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (e.g., date, subject line, etc.) should not be redacted unless it is independently privileged. The production of a document in a redacted form does not affect the Parties' obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable.

**~~J.~~I.    Confidentiality of Produced ESI.**

Documents and ESI shall be produced pursuant to the terms of the Protective Order entered in this Litigation. Any objections to production shall otherwise be made pursuant to the Local Rules, Federal Rules ~~of Civil Procedure~~, or the Federal Rules of Evidence. If the Producing Party is producing ESI in TIFF format subject to a claim that it is protected from disclosure under the Protective Order, or other order issued in this Litigation, the document shall be stamped electronically on each page in accordance with the applicable Order.

If the Producing Party is producing ESI in Native Format subject to a claim that it is protected from disclosure under the Protective Order, or other order issued in this Litigation, then the designation shall be included in a separate field in the .dat load file, as well as the TIFF placeholder or where not produced with a TIFF placeholder, the storage device (e.g., CD, USB, or

hard drive) containing such native ESI data shall be labeled in accordance with the applicable order.

**K.J.    Other Production Specifications.**

All productions will include these additional specifications:

1. ESI will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format. The Concordance (*.dat) load file shall be provided with UTF-8 encoding with the full path and file name to the files produced pursuant to Exhibit 2, and shall include the Metadata fields identified below (Exhibit 1);

2. Document level .txt files for all Native documents containing extracted full text or OCR text (OCR only if extracted text is not available or if the document has been redacted);), as follows:

   a. All emails, unredacted ESI, and redacted spreadsheets produced as Native files, should be provided with complete document-level Extracted text files. Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (i) the individuals to whom the communication was directed ("To"); (ii) the author of the email communication ("From"); (iii) who was copied and blind copied on such email ("CC" and "BCC"); (iv) the subject line of the email ("RE" or "Subject"); (v) the date and time of the email; and (vi) the names of any

21

attachments.

b.   In the event a document, other than spreadsheets (e.g., Excel files), contains text that is to be redacted, OCR text files should be provided for any unredacted portions of the documents. Document-level OCR Text files shall also be provided for all Hard Copy Documents. OCR software should be set to the highest quality setting during processing. Documents containing foreign language text must be OCR'ed using the appropriate settings for that language, (e.g., OCR of Asian language documents must properly capture the relevant Asian characters). Settings such as "auto-deskewing" and "auto-rotation" must be turned on during the OCR process to maximize text recognition on any given page.

c.   The Extracted text and/or OCR text for all deliverables should be in separate document-level, UTF-8 encoded TXT files provided in a separate folder. The number of TXT files per folder should be limited to 1,000 files.

3. Bates number branding and confidentiality designation (if any) on the face of the image in a location that does not obliterate, conceal, or interfere with any information from the source document;

4. A TIFF placeholder embossed with the corresponding confidentiality designation and Bates number shall be produced for all ESI produced in Native Format;

5. Each Bates number will: (i) be unique across the entire document production; (ii) maintain a constant length across the entire production (i.e., ABC00000001-with no space between the prefix and the number, padded to the same number of characters); (iii) contain no special characters; and (iv) be sequential within a given

document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production, and the skipped number or set of numbers should be noted with a placeholder~~;~~.

6.   ~~PowerPoint slides/presentations that are produced in TIFF format will be produced with any notes or comments contained therein.  Word-processing documents that are produced in TIFF format will be produced with any track changes or comments visible on the face of the corresponding TIFF images;~~

~~7.~~6.Metadata and coding fields shall be produced for a document as set forth in Exhibit 1. If Metadata fields are not produced for the reasons set out in Exhibit 1, the Producing Party shall include the fields in the header row of the .DAT and leave the field blank for the corresponding document(s); and

~~8.~~7.In the event any document or ESI (or portion thereof) produced is password protected, the Producing Party shall make all reasonable efforts to provide the password needed to access the document or ESI.

~~9.~~8.Compressed file types (e.g., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in an iterative manner to ensure that an archive within an archive is decompressed into the lowest possible compression resulting in individual files.

~~10.~~9.      Documents with dynamic fields for file names, dates, and times will be processed to show the field code (e.g., "[FILENAME]"), rather than the values for such fields existing at the time the file is processed.

~~11.~~10.      All provided Metadata pertaining to dates and times will be standardized to UTC or other disclosed time zone.

## VII.   FAMILY RELATIONSHIPS OF ESI.

### A.   Family Relationships.

~~For ESI, Document Families must be preserved by assigning sequential Bates numbers to all files within a parent-child group and by providing accurate attachment ranges for those files in the metadata fields required.  Attachments to emails or substantive embedded files will not be eliminated from the parent e-mail/document. Rather, parent-child relationships (the association between an attachment and its parent document, or for embeddings, the association between embedded documents and their containers) will be preserved. Substantive embedded documents (*e.g.*, a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records (either in full, redacted, or via a non-responsive or privilege slipsheet) and related back to the respective top-level parent document via the Beginning Attachment Bates Number and Ending Attachment Bates Number fields.  The Parties agree that fully non-responsive attachments to responsive parent documents need not be produced other than as slipsheets detailed herein; however, non-responsive parent documents must be produced if they contain any responsive attachments.  Where the Parties withhold a fully non-responsive, non-privileged attachment, they will produce a TIFF slip sheet with a Bates Number in place of the attachment, along with all metadata associated with the document being withheld as specified in Exhibit 1.  No extracted text need be provided.  The TIFF slip sheet for each withheld attachment will state "Family Member Withheld as Non-Responsive."  The Requesting Party has the right to request the production of any attachment withheld solely on the ground of non-responsiveness. If the Parties cannot promptly reach an agreement, the Requesting Party may raise the issue with the Court.~~

~~Where an electronic document that is part of a family is withheld, and its relationship to the rest of that Document Family is indicated using slipsheets, the Producing Party shall provide one Bates-numbered slipsheet for each withheld document.~~

~~If a member of an ESI Document Family that has otherwise been determined to be responsive cannot technically be processed (*e.g.*, unsupported file format, file corruption, inaccessible password-protected document), those technical problems shall be identified and disclosed to the Requesting Party by production of a Bates-labeled slipsheet that states "Technical issue – file cannot be processed." A Requesting Party may thereafter raise with the Producing Party any questions or concerns, and if the Parties cannot promptly reach an agreement, the Requesting Party may raise the issue with the Court.~~. Parent-child relationships, such as the association between an attachment and its parent document, or between embedded documents and their parent documents, or between a document with document stubs or links to internal or non-public documents and those stubbed out documents or internal or non-public documents so linked,[2] will, to the extent possible, be preserved. Attachments should be consecutively produced with their parent.

A document and all other documents in its Document Family, emails with attachments, files with extracted embedded OLE (object linking and embedding) documents, and email or other documents together with any documents referenced by document stubs, or via links to internal or non-public document sources within those emails or other documents, all constitute Document

---

[2] For documents shared via links or pointers, or other "modern attachments" (i.e., hyperlinks pointing to files stored in the cloud or a shared repository such as SharePoint and other types of collaborative data sources, instead of being directly attached to a message as has been historically common with email communications), the Parties shall meet and confer regarding the most reasonable means to produce such documents, as well as the versions of such documents (e.g., the as-sent version, current version, etc.) to be collected and produced.

Families. Where feasible, if any member of a Document Family is produced, all members of that family must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

**B.     Embedded Objects.**

The Parties agree that non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents by a Producing Party (i.e., such embedded objects will be treated as produced within the document itself, rather than as separate documents).

Substantive embedded objects or files, where produced, are to be produced as family groups and such embedded files should be assigned Bates numbers that directly follow the Bates numbers of the documents within which they are embedded. Should a Party believe the volume of substantive embedded objects results in the review being overly burdensome, the Parties shall meet and confer. The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this provision.

**VIII.    DATABASES AND STRUCTURED, AGGREGATED, OR APPLICATION DATA.**

To the extent that a Producing Party produces Structured Data or similar data stored in a database, upon production the Producing Party will identify the database or platform to the Requesting Party.      The Parties agree to will meet and confer to address any concerns with the identification, production, and production format of any relevant or responsive data contained in a database or other Structured DataDate or aggregated data source or otherwise maintained by an application. The Parties will reasonably cooperate in the exchange of information concerning such databases to facilitate discussions on productions and production format, including available data

fields/objects and schema. If the Parties cannot reach agreement, the matter will be decided by the

Court or its designee.

~~To the extent a Producing Party is constrained from producing responsive Structured Data~~
~~because of a third-party license or because software necessary to view the data is hardware-~~
~~dependent, the Parties shall meet and confer to minimize any expense or burden associated with~~
~~the production of such documents in an acceptable format. The Producing Party shall produce~~
~~exports and reports in a reasonably usable form. To avoid doubt, information will be considered~~
~~reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel~~
~~format, or Microsoft Access format.~~

## IX.     PRODUCTION MEDIA.

Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC

compatible interface), via secure FTP site or similar electronic secure file transfer system, or such

other readily accessible computer or electronic media as the Parties may hereafter agree upon (the

"Production Media").  Each piece of Production Media shall include a unique identifying label and

cover letter including the following information:

- Name of the Litigation and its case number;

- Name of the Producing Party;

- Date of the production (mm/dd/yyyy);

- Production volume and/or Bates number range; and

- Confidentiality Designation, if any.

The foregoing labeling information shall also be provided in a .txt file at the root folder of

the corresponding production deliverable.  Any replacement Production Media or documents shall

cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced.

Producing Parties may encrypt their Production Media, and if so, shall provide a key to decrypt the Production Media in a separate communication.

## X.     OBJECTIONS TO ESI PRODUCTION.

If any formatting requirements or other specifications agreed to in this ESI Order are later determined by the Producing Party to be technically infeasible, unduly burdensome, or unreasonably costly, the Party, during the meet-and-confer process, shall: (i) describe the nature of the objection with reasonable particularity; (ii) provide the Requesting Party with the basis for declining to produce such ESI; and (iii) indicate whether the Producing Party is willing to offer an alternative. The Parties shall negotiate in good faith concerning the production of any such ESI. If the Parties are unable to reach agreement, the Parties shall submit any dispute to the Court for resolution.

## XI.    COSTS.

Unless otherwise ordered, the costs of producing documents and ESI pursuant to this Order shall be borne by each Producing Party.  If the Parties cannot reach an agreement on a disputed matter, any Party may submit the disputed matter to the Court for resolution.

## XII.   NO DESIGNATION OF DISCOVERY REQUESTS.

Productions of Hard Copy Documents and ESI in the form set out in this ESI Order are reasonably usable and need not be organized and labeled to correspond to discovery requests.

## XIII.  E-~~DISCOVERY LIAISONS~~DISCOVERY LIAISONS.

The Parties agree that each party will have an individual knowledgeable about that Party's E-Discovery systems and technologies in attendance at meet-and-confers on discovery-related

28

matters. —This individual need not be the same for every meet-and-confer, but the individual attending for each Party will be knowledgeable about the E-Discovery items at issue in the specific meet-and-confer(s) that they attend.

**XIV. MISCELLANEOUS PROVISIONS.**

A.      Consistent with Section I.E of this ESI Order, and subject to any further agreement among the Parties or order of the Court, the Parties shall produce case-specific documents (i.e., documents specific to the claim of a given Plaintiff, produced by Plaintiffs or Defendants) for any Plaintiff selected for a bellwether trial and any Plaintiff that files a class action on behalf of a proposed class and/or is subsequently designated by counsel as an additional or alternative proposed class representative in accordance with the production format specified herein; provided, however, that the Producing Party may elect to produce such materials in their Native Format. To the extent production of case-specific documents for any Plaintiff selected for a bellwether trial or any named or designated class Plaintiff as described above presents an issue for any Party, the Parties shall reasonably confer, and may present any disputes to the Court or its designee.

B.      The Parties will act in good faith as required by law and use these procedures to identify and reduce the potential for disputes.

C.      The Parties are aware of the importance the Court places on cooperation and commit to continue to consult and cooperate reasonably as discovery proceeds. No Party may seek judicial relief from the Court or its designee unless it first has conferred with the applicable Producing or Requesting Party.


STIPULATED AND AGREED TO BY THE PARTIES ON _____, 2024

**[INSERT SIGNATURE BLOCKS FOR COUNSEL OF RECORD]**

**EXHIBIT 1**

**FIELDS and METADATA TO BE PRODUCED**

1.      The load files accompanying scanned Hard Copy Documents will include the following

objective coding fields, to the extent applicable:

| Field | Field Description |
|---|---|
| CUSTODIAN (DPF) | The custodian of the document even if de-duplicated prior to production or location of item |
| BEGBATES (DPF) | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a Document Family |
| ENDATTACH (DPF) | Ending Bates number of a Document Family |
| PAGECOUNT (DPF) | Number of pages |
| TEXTLINK (DPF) | Link to text file for the document |

2.   The following metadata fields shall be included in Load files accompanying ESI, to the

extent available, and the ESI they are related to is unredacted and not privileged:

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| BEGBATES (DPF) | First Bates identifier of item | First Bates identifier of item | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item | Last Bates identifier of item | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a document family | Starting Bates number of a Document Family | Starting Bates number of a Document Family |
| ENDATTACH (DPF) | Ending Bates number of a document family | Ending Bates number of a Document Family | Ending Bates number of a Document Family |
| PAGECOUNT (DPF) | Number of pages | Number of pages | Number of pages |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| ALL CUSTODIANS | The custodian of the document being produced. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | The custodian of the document being produced. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | The custodian of the document being produced. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. |
| CONFIDENTIAL | Confidentiality designation, if any; otherwise blank. | Confidentiality designation, if any; otherwise blank. | Confidentiality designation, if any; otherwise blank. |
| AUTHOR | Document author from Metadata | | |
| FROM | | Sender of message | Sender of calendar invite |
| TO | | Recipient(s) of message or calendar invite | Recipient(s) of calendar invite |
| CC | | Copied recipient(s) of message or calendar invite | |
| BCC | | Blind copied recipient(s) of message or calendar invite | |
| SUBJECT | | Subject of message | Subject of calendar invite |
| SENTDATE | | The sent date of the message in the format MM/DD/YYYY | Date calendar invite sent (if any) |
| SENTTIME | | The sent time of the message in the format HH:mm:ss | Time calendar invite sent (if any) |
| RECEIVEDDATE | | The received date of the message in the format MM/DD/YYYY | The received date of the invite in the format MM/DD/YYYY |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| RECEIVEDTIME | | The received time of the message in the format HH:mm:ss | The received time of the invite in the format HH:mm:ss |
| FILENAME | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent |
| FILEEXTEN | File extension | File extension | File extension |
| FILESIZE | Size of the file in bytes | Size of the file in bytes | Size of the file in bytes |
| HASH | MD5 or SHA1 hash of the document | MD5 or SHA1 hash of the email | MD5 or SHA1 hash of the calendar invite |
| NATIVELINK | Link to native file (if any) | Link to native file (if any) | Link to native file (if any) |
| TEXTLINK | Link to text file for the document | Link to text file for the email | Link to text file for the calendar invite |
| TITLE | Title from a document's properties | | |
| DATECREATED | Date file was created | | |
| TIMECREATED | Time file was created | | |
| DATEMODIFIED | Date file was last modified | | |
| TIMEMODIFIED | Time file was last modified | | |
| TRACKCHANGE | (Y/N) Field for documents with track changes | | |
| FAMILYDATE | Populated for all documents.  Document families populated with parent date. MM/DD/YYYY | Populated for all documents.  Document families populated with parent date. MM/DD/YYYY | |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| PRODVOL | Production volume number | Production volume number | Production volume number |
| REDACTION | (Y/N) Field for documents with redactions | (Y/N) Field for documents with redactions | (Y/N) Field for documents with redactions |

Such Metadata field values will be extracted from the native file and will be produced to the extent available at the time of collection and processing, except that they may be redacted if privileged or if the metadata field values contain information protected by law or subject to an order of this Court. This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of ESI, that do not exist as part of the original metadata of the document, or that would be burdensome or costly to obtain.

If necessary, the Metadata for text messages, collaboration system messages (e.g., Chatter), social media messages, and other ESI that does not ~~conform~~confirm to the Metadata listed here, shall be determined by the meet-and-confer as outlined in Paragraph VI.D of this ESI Order.

## EXHIBIT 2

## REQUESTED LOAD FILE FORMAT FOR ESI

1.    **Delimited Text File.** A delimited text file (.DAT File) containing the fields listed in Exhibit 1 should be provided. There must be one row in this load file for every document in the deliverable; and the file must terminate with a carriage return.  The delimiters for the file should be Concordance defaults:

- Comma – ASCII character 20 (¶)

- Quote – ASCII character 254 (þ)

- Newline – ASCII character 174 (®)

2.    **Image Cross-Reference File (.opt).** The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows:

ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount.

| | |
|---|---|
| ImageID: | The unique designation that Concordance and Opticon use to identify an image. This should be the BegBates Number of the Document. |
| VolumeLabel: | The name of the volume. |
| ImageFilePath: | The full path to the image file. |
| DocumentBreak: | If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document. |
| FolderBreak: | Leave empty. |
| BoxBreak: | Leave empty. |

PageCount:                 Number of pages in the Document.


**3.      Sample Data.**

PROD00000001,VOL001,E:\100\ PROD00000001.TIF,Y,,2

PROD00000002, VOL001,E:\100\ PROD00000002.TIF,,,,

PROD00000003, VOL001,E:\100\ PROD00000003.TIF,Y,,,4

PROD00000004, VOL001,E:\100\ PROD00000004.TIF,,,,

PROD00000005, VOL001,E:\100\ PROD00000005.TIF,,,,

PROD00000006, VOL001,E:\100\ PROD00000006.TIF,,,,

# EXHIBIT 3

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| |
|---|
| **IN RE INSULIN PRICING LITIGATION** |

Civil Action No. 17-699(BRM)(LHG)

### JOINT STIPULATED PROTOCOL FOR THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS

The parties to the above-captioned coordinated litigation (the "actions" or this "litigation"), through their counsel, have stipulated and agreed to give effect to this Joint Stipulated Protocol for Discovery of Electronically Stored Information and Hard Copy Documents ("ESI Protocol"), to facilitate discovery in this litigation.

The parties shall make good-faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol. If a producing party, notwithstanding its good-faith efforts, cannot comply with any material aspect of this ESI Protocol or if compliance with such material aspect would be impossible or unreasonable, such party shall inform the requesting party in writing a reasonable time before the date of production as to why compliance with the ESI Protocol is impossible or unreasonable. No party may seek relief from the Court concerning compliance with the ESI Protocol unless it has conferred in good faith with the affected parties.

All productions in this litigation are subject to the protective order separately entered by the Court in this litigation.

## I.    GENERAL.

A.    The procedures and protocols set forth in this Protocol shall govern the production of ESI and hard copy documents in this matter, unless the parties agree in writing to change them or they are changed by the Court. This ESI Protocol is intended to aid the parties by providing a more predictable, cost-effective, and efficient management structure for the

maintenance and production of electronic discovery. Nothing in this ESI Protocol shall supersede the parties' obligations under the Federal Rules of Civil Procedure.

B.      The parties shall meet and confer in good faith on issues regarding ESI, as necessary, including issues relating to custodians, data sources and search methodologies (*e.g.*, search terms and other methods of identifying responsive ESI), that arise under this ESI Protocol or otherwise. In the event the parties cannot reach an agreement on a disputed matter, the parties shall submit the matter to the Court.

## II.   DEFINITIONS.

A.      **"Documents"** shall have the same definition as set forth in Federal Rules of Civil Procedure 26 and 34.

B.      "**Document Family**" refers to a group of related ESI that includes parent and child documents as maintained in the ordinary course of business (e.g., a parent email and any attachments thereto).

C.      **"Electronically stored information"** or **"ESI,"** as used herein, means, as referenced in the Federal Rules of Civil Procedure, information that is stored electronically, regardless of the media or whether it is in the original format in which it was created, as opposed to stored in hard copy (i.e., on paper).

D.      **"Extracted Text"** means the text extracted from an electronic document, and includes all header, footer and document body information when reasonably available.

E.      **"Hard Copy Document"** means a document collected from physical files (paper) and not from electronic sources.

F.      **"Load/Unitization file"** means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files

belong together as documents, including attachments, and where each document begins and ends. A Load/Unitization file may also contain data relevant to the individual documents, including extracted and user-created metadata.

G.     **"Media"** means an object or device, real or virtual, including but not limited to a disc, tape, computer or other device on which data is or was stored.

H.     **"Metadata"** is used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file. The Metadata fields to be produced are listed in Exhibit 1.

I.     **"Native," "Native Format,"** or **"Native Data Format"** means and refers to the format of ESI in the application in which it was originally created and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

J.     **"OCR text"** means text generated through Optical Character Recognition Process of image/bitmap picture representation of the documents.

K.     **"Parties"** means or refers collectively to the named plaintiffs and defendants in the above-captioned matter, as well as any later added plaintiffs and defendants. "Party" shall refer to a plaintiff or defendant, individually.

L.     **"Producing Party"** means or refers to any party in the litigation from which production of ESI or hard copy documents are sought.

M.     **"Requesting Party"** means or refers to any party in the litigation seeking production of ESI or hard copy documents.

III.     **PRESERVATION.**

A.     **Deleted Files and Litigation Holds**.

To help contain costs, the parties shall not be obligated under this ESI Protocol to produce or preserve ESI that was deleted or lost as a result of the routine, good-faith operation of an ESI system prior to the date upon which the duty to preserve ESI and documents in connection with this litigation arose. Nothing in this provision limits or expands a party's obligation to search for ESI known to be "deleted" by a user that remains as a copy on an archive, backup, or as active data on some other central server or place within a party's possession, custody, or control, provided such search is otherwise consistent with and does not exceed the party's obligations under the Federal Rules of Civil Procedure.

If a Producing Party learns that responsive ESI that existed as of the date upon which the duty to preserve ESI arose (1) was lost, destroyed, or is no longer retrievable, and (2) cannot be restored or replaced through additional discovery, the Producing Party shall so advise the Requesting Party, at which point the Requesting Party and Producing Party shall meet and confer regarding the issue. Nothing in this agreement alters the Producing Party's obligation to demonstrate the unavailability of such information pursuant to Federal Rule of Civil Procedure 26(b)(2)(B).

B.     **Types of ESI that Need Not Be Preserved or Searched.**

Pursuant to Federal Rule of Civil Procedure 26(b)(2)(B), a party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the

information is not reasonably accessible because of undue burden or cost. The parties

agree that there is no need to preserve or collect ESI from the following sources, which

are deemed to not likely contain relevant information and to be not reasonably accessible:

1.      random access memory (RAM), temporary files, or other ephemeral data;

2.      on-line access data such as temporary internet files, histories, caches, cookies,

        etc.;

3.      data in metadata fields that are frequently updated automatically, such as last-

        opened dates;

4.      Shadowed, damaged, residual, "slack," "fragmented," or "unallocated" data;

5.      data stored on photocopiers, scanners, and/or fax machines;

6.      data maintained in any electronic backup system for the purpose of system

        recovery or information restoration, including but not limited to, system recovery

        backup tapes or other media, continuity of operations systems, and data or system

        mirrors or shadows, if such data are routinely purged, overwritten, or otherwise

        made not reasonably accessible in accordance with an established routine system

        maintenance policy;

7.      operating system files, executable files;

8.      electronic data temporarily stored by laboratory equipment or attached electronic

        equipment, provided that such data is not ordinarily preserved as part of a

        laboratory report; and

9.      structural files not material to individual file contents that do not contain

        substantive content (e.g., .CSS, .XSL, .DTD, etc.).

C. **Types of ESI that Need Not Be Preserved or Searched at Present.**

The Parties agree that there is no need, at this time, to search ESI from the following sources (although Parties must take reasonable steps to preserve such ESI if potentially responsive), but all Parties reserve the right to request to have this ESI searched if some reason emerges for believing that a particular source contains unique relevant information:

1. Any other source a party has identified to the other party as not reasonably accessible pursuant to Federal Rule of Civil Procedure 26(b)(2)(B).

2. Call logs, data, voicemails, text and/or instant messages, or other media stored on or related to personal computers or personal devices (including mobile phones) of the corporate party's employees.

The parties further agree that there is no need to modify or suspend the procedures used by them in the ordinary course of business to backup data and systems for disaster recovery and similar purposes related to continuity of operations. The parties are not required to take any such backup media out of the ordinary rotation.

IV. **SEARCH PROCEDURES FOR ELECTRONIC DOCUMENTS.**

A. **Use of Search Terms.**

The parties shall identify ESI by: (a) identifying and selecting custodians and sources most likely to possess relevant documents; and (b) applying agreed-upon search terms to identifiable data repositories and custodian data sources in accordance with the provisions of Section IV.C. The parties may leverage technology workflows, including email threading (for internal assessment only—not at the time of production) and predictive coding, technology assisted review, or other form of machine searching not

based on keywords (collectively, "TAR") in lieu of search terms in accordance with the provisions of Section IV.B. However, if either party intends to leverage such technology workflows, the Producing Party must inform the Requesting Party of its intention to use TAR, meet-and-confer with the Requesting Party regarding its intended use of TAR, and come to an agreement with the Requesting Party regarding how such technologies will be implemented. Each party shall be primarily responsible for identifying custodians and custodial data sources likely to contain relevant documents; however, the parties agree to confer as to custodian lists. The fact that a document may have been retrieved by application of search terms or TAR shall not prevent any party from withholding from production such document if permissible under the Federal Rules of Civil Procedure. Conversely, the absence of a search term hit or retrieval by TAR methodology for a given document does not automatically render it non-responsive. To the extent any party identifies responsive ESI or documents not hit upon by the search term filters noted above, all such non-privileged documents should be produced, subject to the Producing Party's objections to discovery requests and rights under this ESI Protocol and the Federal Rules of Civil Procedure.

**B.      Use of Technology Assisted Review.**

Any party that opts to use TAR agrees to disclose that intent to the Requesting Party before the Producing Party employs any TAR and meet-and-confer with the Requesting Party to implement an appropriate protocol. The Producing Party will be reasonably transparent regarding the universe of documents subject to targeted collections or culling. The parties will meet and confer regarding any TAR issues that arise after the Initial Exchange Date described below.

C.    **Electronic Searches.**

The parties shall abide by the following process, which may be modified upon agreement of the parties. The parties will work with each other in good faith to create a reasonable timeline for developing this process.

1.    The day thirty (30) days after the date on which a requesting party serves document requests shall be referred to as the "Initial Confer Date." By the Initial Confer Date, the parties will meet and confer to establish a date for the exchange of the following information ("Initial Exchange Date"), to the extent not previously provided at the Rule 26(f) conference:

    i.    An initial list of (a) custodians within its organization likely to possess relevant ESI, along with each such custodian's job title and a brief summary of his or her primary responsibilities; (b) proposed keyword search terms and strings (including, where relevant, sematic synonyms, code words, acronyms, abbreviations, non-language alphanumeric associational references to relevant ESI, etc.) to be used when searching for ESI; (c) a list of non-custodial data sources (such as databases, servers, group shares, cloud-based storage, etc.) that may contain relevant information; and (d) any proposed exclusion criteria (including, but not limited to, date restrictions) related to ESI searches. By the Initial Exchange Date, each party also will disclose any intent at that time to utilize TAR.

    ii.    Any existing organizational charts to the extent reasonably available reflecting where: (a) any of the custodians referred to in

step (1)(i)(a) above work; or (b) custodians expected to have

relevant documents work.

2.      Within fourteen (14) days after the Initial Exchange Date, the Requesting Party

will identify any additional custodians, search terms, or search strings it believes

should be included. The Parties will then meet and confer about the disputed

custodians and search terms or TAR issues promptly and in good faith. The

Parties agree that they will cooperate in good faith regarding the formulation of

appropriate search terms and strings and methods to be used to cull potentially

responsive or relevant ESI. The Parties may agree to modify the search queries or

the search methodologies during the course of the search query negotiation

process if the search queries or the results of search methodologies appear under-

inclusive or over-inclusive. If the Parties reach an impasse, they may submit the

dispute to the Court in the form of a joint discovery letter within a reasonable

timeframe

3.      The parties will continue to meet and confer regarding any search process issues

as necessary and appropriate during discovery. Nothing in this search protocol, or

the subsequent designation of any search terms, shall operate to limit a party's

obligations under the Federal Rules of Civil Procedure and applicable decisional

authority to conduct a reasonable search for responsive documents. This ESI

protocol does not address or resolve any other objection to the scope of the

parties' respective discovery requests, and it does not prevent any party from

undertaking searches of its own ESI for any purpose at any time.

D.    **Supplementation of Searches for ESI.**

Each party may, upon reviewing documents actually produced in the litigation, and conducting other investigation and discovery, request that additional search terms be employed and/or files from additional custodians be searched. The Parties agree to meet and confer in good faith concerning any such requests.

V.    **PRODUCTION OF HARD COPY AND ESI DOCUMENTS**

A.    **Deduplication.**

To reduce the unnecessary costs of reviewing and producing exact duplicate documents, each party may use reasonable, good-faith efforts to avoid the production of duplicate ESI. Global de-duplication is to be executed at the document family level. Deduplication shall be done on exact duplicate documents based on MD5 or SHA-1 hash values.

1.    No party shall identify and/or eliminate duplicates of hard-copy documents or ESI by manual review or some method other than by use of the technical comparison using MD5 or SHA-1 hash values outlined above.

2.    For exact duplicate documents, the Producing Party will produce the metadata described in Section V for the Single Production Copy to the extent available, as well as any such metadata that differs for the duplicate document(s). If more than one custodian possesses a duplicate, the Producing Party shall populate a field of data that identifies each custodian who had a copy of the produced document (the "duplicate custodian field") in addition to a separate field of data identifying the custodian whose document is produced.

3.    If during the course of its review, the Producing Party identifies a large number of duplicate documents, the Parties may confer regarding a custom deduplication

protocol. Except for the removal of extracted logos, no custom deduplication method will be implemented without the consent of the Requesting Party, and such consent shall not be unreasonably withheld.

**B.     Email Threading.**

In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize commercially available "email thread suppression" tools. However, a Producing Party may only use email thread suppression tools if they preserve and produce to the Requesting Party the metadata associated with lesser included emails within an email thread. The metadata may be linked to the image of the produced email. The Parties will meet and confer regarding any requests for the production of images of lesser-included emails, and will not unreasonably deny good faith requests for de-threading of particular email threads. This clause is not to be construed to require the producing party to produce metadata for lesser included emails that would not otherwise be produced but for the use of email thread suppression tools. The parties and their document vendors will meet and confer regarding the production of meta-data for lesser included emails to ensure that this metadata is appropriately searchable.

**C.     Production of Hard Copy Documents – Format.**

All documents originating in paper format will be produced as black-and-white or color (as applicable), single-page, 300 DPI, Group IV* TIFF images, with OCR text provided in document level text files, objective metadata fields pursuant to Exhibit 1, and load files pursuant to Exhibit 2. The parties will accommodate reasonable requests for production of specific images in color to the extent available.

D. **Production of ESI – Format.**

1.    All responsive ESI, except that which is produced in Native Format pursuant to
      paragraph V.D.2, shall be produced as black and white, single-page, 300 DPI,
      Group IV* TIFF files with corresponding extracted full text provided in document
      level text files, objective metadata fields pursuant to Exhibit 1, and load files
      pursuant to Exhibit 2.

Responsive spreadsheets, presentations, audio/visual/multimedia, and other files that are
not conducive to production in image format shall be produced in Native Format, except
where such files are redacted pursuant to Section V.H.1 of this Protocol. Responsive ESI
produced in Native Format shall be produced with all Metadata contained in or associated
with that file to the extent technologically possible consistent with Exhibit 1. Each ESI
produced in Native Format shall be assigned a unique Bates number, and for each a
single page placeholder TIFF image stamped with this unique Bates number, the phrase
"PRODUCED IN NATIVE FORMAT", and the corresponding confidentiality
designation under the Protective Order will be produced. No party may attach to any
pleading or any correspondence addressed to the Court, Special Master, or any adverse or
third party, or submit as an exhibit at a deposition or any other judicial proceeding, a
copy of any produced Native Format document without ensuring that either the
corresponding placeholder slip sheet is attached to the document or the corresponding
Bates number and confidentiality legend, as designated by the Producing Party, appears
on the document.

E.    **Appearance and Content.**

Responsive ESI that presents imaging or formatting problems shall be promptly

identified and the parties shall meet and confer in an attempt to resolve the problems.

Producing Parties shall make reasonable efforts to address imaging and formatting issues

identified by the Requesting Party. The Requesting Party agrees to raise these issues

within a reasonable timeframe.

F.    **Color.**

If a document is being produced in non-native format, the producing party shall provide a

color image for any document where the color is reasonably necessary to decipher the

complete meaning, context, or content of the document. This includes, but is not limited

to Word documents containing redlining, and any charts (Excel, PowerPoint slides, or

otherwise) where different colors are used to differentiate among the data being displayed

in the document. Producing Parties shall make reasonable efforts to address imaging and

formatting issues identified in good faith for the production of a color image of specific

documents originally produced in greyscale, non-native format where the original

document displayed such color and color is reasonably necessary to decipher the

complete meaning, context, or content of the documents. If a Requesting Party finds the

black and white version of a document insufficient, the Requesting Party may request that

the Producing Party provide a color image. The Producing Party will not unreasonably

deny a request to provide a color image. If the parties cannot come to an agreement

regarding whether a document must be produced in color, the good cause standard will

govern the dispute. However, the Requesting Party does not have to make a good cause

showing when it initially requests the document in color; instead, the Requesting Party

may simply identify the document. If a Producing Party converts a document to color image in response to a request from a Receiving Party, the Producing Party shall do so in JPEG, TIFF or such other format as agreed with the Requesting Party.

**G.    Prior Production.**

The parties reserve their right to produce materials from a prior proceeding or litigation to the extent those materials are non-privileged and responsive to a Requesting Party's requests. The Parties will meet and confer regarding any requests for the reproduction of materials that were included in a prior production, including as to the format of production. The Producing Party will not unreasonably deny good faith requests for native files, color versions, metadata, and other formats that are consistent with the specifications for files produced initially in this litigation.

**H.    Production of Redacted Documents/Information.**

**1.    Redactions**. To the extent that a responsive document contains information protected by the attorney-client privilege or work product doctrine, the Producing Party may produce that document in a redacted form. The producing party may also produce in a redacted form information in a responsive document that is: (1) subject to federal, state, or foreign privacy requirements (*e.g.*, HIPAA; 21 C.F.R. §§ 20.111, 20.63, and 314.80; 45 C.F.R. §§ 160 and 164; GDPR), (2) constitutes irrelevant personal information of an intimate or private nature, or private data that this objectively irrelevant to this Action. However, redactions based on foreign privacy requirements may be made only where the ESI in question is subject to that foreign privacy requirement. The parties are prohibited from redacting names, positions, titles, or professional contact information or

14

third parties identified in relevant, responsive documents, data, or information produced in discovery in this Action. In addition to redactions for privacy and privilege, a Producing Party may redact uniquely identifying information related to non-diabetes products. Examples of "uniquely identifying information" include, but are not strictly limited to, brand or generic names of non-diabetes products, units and/or dosages of non-diabetes products, National Drug Codes of non-diabetes products, indications of non-diabetes products if they are specific enough to allow for unique product identification, the names of disease states or therapeutic areas associated with non-diabetes product if they are specific enough to allow for unique product identification, and names of direct competitor drugs for non-diabetes products. A Producing Party may not redact any substantive information regarding non-diabetes products, including, but not limited to, information regarding strategies, pricing, patient adherence, revenues, profits, or sales. The redactions for non-diabetes, unique product identifying information should not be intertwined with responsive information such that its redaction will interfere with the Receiving Party's ability to review responsive documents. The Parties will meet and confer regarding any disputes related to any redaction, and will not unreasonably deny good-faith requests for production of redacted information.

**2.**     Nothing in Paragraph V.H.1. shall allow for any delay in the production of documents as a result of these redactions.

**3.**     Any redactions under Section V.H.1 shall be clearly indicated on each page of the document from which information is redacted, bearing a designation that it has

been redacted. The designation shall make clear the reason for the redaction (e.g., "Redacted – Privileged," "Personal Information, "Other Drug Information"). Where a document contains both privileged and non-privileged responsive content, the Producing Party shall redact the privileged material and produce the remainder of the document.

4.   Native Excel or other spreadsheet files that are redacted may be produced in TIFF format or by overwriting the data contained in a particular cell, row, column or tab with the word "Redacted," and shall make clear the reason for the redaction (e.g., "Redacted Privilege"), provided that such overwriting does not impact any other, non-privileged cells or information in the spreadsheet (*e.g.,* if a cell redacted for privilege contains a numerical value that is used in a formula by other, non-privileged cells in the spreadsheet). If a privilege redaction does impact non-privileged cells/information, the Parties shall meet and confer to discuss. The Parties acknowledge that redacting the native may alter the metadata of the produced file; however, the metadata produced subject to Exhibit 1 will be the metadata extracted from the original native file, other than metadata containing redacted information.

5.   Native Excels or other spreadsheet files, PowerPoint or other presentation files that are redacted for privilege or privacy may be produced as black-and-white or color (as applicable), single-page TIFF files with OCR text provided in document level text files, with load files pursuant to Exhibit 2, which shall include all information contained in the original file, including, but not limited to, speaker notes and "hidden" slides, with any redaction clearly delineated. If the file

contains external video or audio components, the video or audio will be produced as native files unless redacted.

I.    **Confidentiality of Produced ESI.**

1.    Documents and ESI shall be produced pursuant to the terms of the Stipulated Protective Order. Any objections to production shall otherwise be made pursuant to the Local Rules, Federal Rules of Civil Procedure or the Federal Rules of Evidence. If the Producing Party is producing ESI in TIFF Format subject to a claim that it is protected from disclosure under any protective agreement or confidentiality order, or any agreement entered into or Order issued in this matter, the document shall be stamped electronically on each page in accordance with the Stipulated Protective Order.

2.    If the Producing Party is producing ESI in Native Format subject to a claim that it is protected from disclosure under any protective agreement or confidentiality order, or any agreement entered into or Order issued in this matter, then the designation shall be included in a separate field in the .dat load file, as well as the TIFF placeholder or where not produced with a TIFF placeholder, the storage device (e.g., CD, USB, or hard drive) containing such native ESI data shall be labeled in accordance with the Stipulated Protective Order.

J.    **Other Production Specifications.**

All productions will include these additional specifications:

1.    Delimited image load/unitization file for images (.opt and .lfp) shall be provided pursuant to Exhibit 2;

2.      Delimited metadata load file (.DAT) containing a field with the full path and file name to the native files produced pursuant to Exhibit 2, and shall include the metadata fields identified below (Exhibit 1);

3.      Document level .txt files for all native documents containing extracted full text or OCR text (OCR only if extracted text is not available or if the document has been redacted);

4.      Bates number branding and Confidentiality designation (if any) on the face of the image in a location that does not obliterate, conceal, or interfere with any information from the source document;

5.      A TIFF placeholder embossed with the corresponding confidentiality designation and Bates number shall be produced for all ESI produced in Native Format;

6.      Each Bates number will: (i) be unique across the entire document production; (ii) maintain a constant length across the entire production (i.e., ABC00000001- with no space between the prefix and the number, padded to the same number of characters); (iii) contain no special characters; and (iv) be sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.

7.      PowerPoint slides/presentations that are produced in TIFF format will be produced with any notes or comments contained therein.

8.      Metadata and coding fields shall be produced for a document as set forth in Exhibit 1. If metadata fields are not produced for the reasons set out in Exhibit 1,

the Producing Party shall include the fields in the header row of the .DAT and

leave the field blank for the corresponding document(s).

## VI.   FAMILY RELATIONSHIPS OF ESI.

### A.   Family Relationships.

For ESI, families (as defined above) must be preserved by assigning sequential Bates

numbers to all files within a parent-child group (in accordance with section V(D) of this

protocol), and by providing accurate attachment ranges for those files in the metadata

fields required. The Parties agree that fully non-responsive attachments to responsive

parent documents need not be produced; however, non-responsive parent documents

must be produced if they contain any responsive attachments. Where the Parties withhold

a fully non-responsive attachment, they will produce a TIFF slip sheet with a Bates

Number in place of the attachment, along with all metadata associated with the document

being withheld as specified in Exhibit 1. No extracted text need be provided. The TIFF

slip sheet for each withheld attachment will state "Family Member Withheld as Non-

Responsive." The Requesting Party has the right to request the production of any

attachment withheld solely on the ground of non-responsiveness, and such request will

not be unreasonably denied by the Producing Party. The Parties agree to meet and confer

in good faith to attempt to resolve any dispute arising under this provision.

1.   Where an electronic document that is part of a family is withheld, and its

relationship to the rest of that document family is indicated using slipsheets, the

Producing Party shall provide one Bates-numbered slipsheet for each withheld

document.

2.      If a member of an ESI document family that has otherwise been determined to be responsive cannot technically be processed (e.g., unsupported file format, file corruption, inaccessible password-protected document), those technical problems shall be identified and disclosed to the Requesting Party by production of a Bates-labeled slipsheet that states "Technical issue—file cannot be processed." A Requesting Party may thereafter raise with the Producing Party any questions or concerns, and the parties shall meet and confer under to attempt to resolve any issues.

**B.      Image Logos.**

Image file logos extracted from emails or documents should not be produced as separate documents.

**VII.    STRUCTURED DATA.**

Structured data should be produced in a mutually agreeable data exchange format. The Parties will meet and confer to determine the potentially relevant databases at issue, including the data fields included in such databases.

**VIII.   PRODUCTION MEDIA.**

Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), via secure FTP site, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media"). Each piece of Production Media shall include a unique identifying label and cover letter including the following information:

**A.**      Name of the litigation and its case number;

**B.**      Name of the Producing Party;

    **C.**    Date of the production (mm/dd/yyyy);

    **D.**    Bates number range;

    **E.**    Confidentiality Designation; and

    **F.**    Notes regarding any irregularities in the production (e.g., whether it is replacement Production Media (see below)).

    Any replacement Production Media or documents shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced. Producing Parties may encrypt their Production Media and, if so, shall provide a key to decrypt the Production Media in a separate communication.

## IX.   OBJECTIONS TO ESI PRODUCTION.

If any formatting requirements or other specifications agreed to in this ESI Protocol are later determined by the Producing Party to be not feasible, or unduly burdensome or unreasonably costly, the Party, during the meet-and-confer process, shall: (i) describe the nature of the objection with reasonable particularity; (ii) provide the Requesting Party with the basis for declining to produce such ESI; and (iii) indicate whether the Producing Party is willing to offer an alternative. The parties shall negotiate in good faith concerning the production of any such ESI. If the parties are unable to reach agreement, the parties shall submit any dispute to the Court for resolution.

## X.   COST SHIFTING.

The producing party shall bear all costs of converting ESI from a native format to a non-native format, and expressly waives any right to seek reimbursement or taxing of such costs pursuant to 28 U.S.C. § 1920 or any other state or federal cost-recovery provision.

So stipulated and agreed by the Parties, January 17, 2020.

CARELLA, BYRNE, CECCHI,                    HAGENS BERMAN SOBOL SHAPIRO LLP
OLSTEIN, BRODY & AGNELLO, P.C.

*/s/ James E. Cecchi*                       */s/ Steve W. Berman*
James E. Cecchi                            Steve W. Berman
Lindsey H. Taylor                          1301 2nd Avenue, Suite 2000
Donald A. Ecklund                          Seattle, WA 98101
5 Becker Farm Road                         Telephone: (206) 623-7292
Roseland, NJ 07068                         Facsimile: (206) 623-0594
Telephone: (973) 994-1700                  steve@hbsslaw.com
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com                   Thomas M. Sobol
ltaylor@carellabyrne.com                   Hannah W. Brennan
                                           HAGENS BERMAN SOBOL SHAPIRO LLP
                                           55 Cambridge Parkway, Suite 301
                                           Cambridge, MA 02142
                                           Telephone: (617) 482-3700
                                           Facsimile: (617) 482-3003
                                           tom@hbsslaw.com
                                           hannahb@hbsslaw.com

*Interim Co-Lead Counsel for the Plaintiffs*


*/s/ Liza M. Walsh*
Liza M. Walsh, Esq.
WALSH PIZZI O'REILLY FALANGA LLP
1037 Raymond Blvd, Suite 600
Newark, NJ 07102
Tel.:  (973) 757-1100

Michael R. Shumaker, Esq. (*pro hac vice*)
Julie E. McEvoy, Esq. (*pro hac vice*)
William D. Coglianese, Esq. (*pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Telephone: (202) 879-3939

*Counsel for Defendant Sanofi-Aventis U.S. LLC*

_/s/ Melissa A. Geist_
Melissa A. Geist, Esq.
REED SMITH LLP
506 Carnegie Center
Suite 300
Princeton, NJ 08540
Tel.:  (609) 514-5978

Shankar Duraiswamy, Esq.
Henry B. Liu, Esq. (_pro hac vice_)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001
Tel.: (202) 662-6000

_Counsel for Defendant Eli Lilly and Company_


_/s/ Christopher Walsh_
Michael R. Griffinger, Esq.
Michael R. McDonald
Christopher Walsh, Esq.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
Tel.:  (973) 596-4500

James P. Rouhandeh, Esq. (_pro hac vice_)
David B. Toscano, Esq. (_pro hac vice_)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel.:  (212) 450-4000

Neal A. Potischman, Esq. (_pro hac vice_)
Andrew Yaphe, Esq. (_pro hac vice_)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, CA 94025
Tel.:  (650) 752-2000

_Counsel for Defendant Novo Nordisk Inc._

# EXHIBIT 1

## FIELDS and METADATA TO BE PRODUCED

1.     The load files accompanying scanned paper documents will include the following objective coding fields, to the extent applicable:

| Field | Field Description |
|---|---|
| BEGBATES (DPF) | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a document family |
| ENDATTACH (DPF) | Ending Bates number of a document family |
| PAGECOUNT (DPF) | Number of pages |
| TEXTLINK (DPF) | Link to text file for the document |

2.   The following metadata fields shall be included in Load files accompanying ESI, to the extent available, and/or unredacted:

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| BEGBATES (DPF) | First Bates identifier of item | First Bates identifier of item | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item | Last Bates identifier of item | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a document family | Starting Bates number of a document family | Starting Bates number of a document family |
| ENDATTACH (DPF) | Ending Bates number of a document family | Ending Bates number of a document family | Ending Bates number of a document family |
| PAGECOUNT (DPF) | Number of pages | Number of pages | Number of pages |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| CUSTODIAN | All custodians of the document even if de-duplicated prior to production. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | All custodians of the document even if de-duplicated prior to production. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | All custodians of the document even if de-duplicated prior to production. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. |
| DUPLICATE CUSTODIAN | All custodians of the document only if a Producing Party elects to de-duplicate across custodians. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | All custodians of the document only if a Producing Party elects to de-duplicate across custodians. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | All custodians of the document only if a Producing Party elects to de-duplicate across custodians. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. |
| CONFIDENTIAL | Confidentiality designation | Confidentiality designation | Confidentiality designation |
| AUTHOR | Document author from Metadata | | |
| FROM | | Sender of message | Sender of calendar invite |
| TO | | Recipient(s) of message or calendar invite | Recipient(s) of calendar invite |
| CC | | Copied recipient(s) of message or calendar invite | |
| BCC | | Blind copied recipient(s) of message or calendar invite | |
| SUBJECT | | Subject of message | Subject of calendar invite |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| SENTDATE | | The sent date of the message in the format MM/DD/YYYY | Date calendar invite sent (if any) |
| SENTTIME | | The sent time of the message in the format HH:mm:ss | Time calendar invite sent (if any) |
| RECEIVEDDATE | | The received date of the message in the format MM/DD/YYYY | The received date of the invite in the format MM/DD/YYYY |
| RECEIVEDTIME | | The received time of the message in the format HH:mm:ss | The received time of the invite in the format HH:mm:ss |
| FILENAME | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent |
| FILEEXTEN | File extension | File extension | File extension |
| FILESIZE | Size of the file in bytes | Size of the file in bytes | Size of the file in bytes |
| HASH | MD5 or SHA1 hash of the document | MD5 or SHA1 hash of the email | MD5 or SHA1 hash of the calendar invite |
| NATIVELINK (DPF) | Link to native file (if any) | Link to native file (if any) | Link to native file (if any) |
| TEXTLINK (DPF) | Link to text file for the document | Link to text file for the email | Link to text file for the calendar invite |
| TITLE | Title from a document's properties | | |
| AUTHOR | Document author from metadata | | |
| DATECREATED | Date file was created | | |
| TIMECREATED | Time file was created | | |
| DATEMODIFIED | Date file was last modified | | |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| TIMEMODIFIED | Time file was last modified | | |
| TRACKCHANGE | (Y/N) Field for documents with track changes | | |

Such metadata field values will be extracted from the native file and will be produced to the extent available at the time of collection and processing, except that they may be redacted if privileged or if the metadata field values contain information protected by law or Court Order. This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of ESI, that do not exist as part of the original metadata of the document, or that would be burdensome or costly to obtain.

**EXHIBIT 2**

**REQUESTED LOAD FILE FORMAT FOR ESI**

1.  **Delimited Text File**. A delimited text file (.DAT File) containing the fields listed in

Exhibit A should be provided. The delimiters for the file should be Concordance defaults:

- Comma – ASCII character 20 (¶)

- Quote – ASCII character 254 (þ)

- Newline – ASCII character 174 (®)

2.  **Image Cross-Reference File (.opt).** The Opticon cross-reference file is a comma

delimited file consisting of six fields per line. There must be a line in the cross-reference file for

every image in the database. The format for the file is as follows:

ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount.

| | |
|---|---|
| ImageID: | The unique designation that Concordance and Opticon use to identify an image. This should be the BegBates Number of the Document. |
| VolumeLabel: | The name of the volume. |
| ImageFilePath: | The full path to the image file. |
| DocumentBreak: | If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document. |
| FolderBreak: | Leave empty. |
| BoxBreak: | Leave empty. |
| PageCount: | Number of pages in the Document. |

3. **Sample Data**

PROD00000001,VOL001,E:\100\ PROD00000001.TIF,Y,,2

PROD00000002, VOL001,E:\100\ MT00000002.TIF,,,,

PROD00000003, VOL001,E:\100\ MT00000003.TIF,Y,,,4

PROD00000004, VOL001,E:\100\ MT00000004.TIF,,,,

PROD00000005, VOL001,E:\100\ MT00000005.TIF,,,,

PROD00000006, VOL001,E:\100\ MT00000006.TIF,,,,

# EXHIBIT 4

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: ALLERGAN BIOCELL TEXTURED BREAST IMPLANT PRODUCTS LIABILITY LITIGATION | Case No. 2:19-md-02921 (BRM)(JAD) MDL NO. 2921 |

THIS DOCUMENT RELATES TO: ALL CASES

CASE MANAGEMENT ORDER NO. 15
(ORDER REGARDING ELECTRONICALLY STORED INFORMATION
AND HARD COPY DOCUMENTS)

The Parties hereby agree to the following protocol for production of electronically stored information ("ESI") and paper ("hardcopy") documents. For the avoidance of doubt, the production of case-specific documents, including the format thereof, shall be the subject of the Parties' discussions and any subsequent order(s) case-specific discovery (e.g., plaintiff profile forms), bearing in mind proportionality considerations appropriate for the Parties' respective obligations.  Nothing in this protocol shall limit a Party's right to seek or object to discovery as set out in the Federal Rules of Civil Procedure, to rely on any protective order entered in this action concerning protection of confidential or otherwise sensitive information, or to object to the authenticity or admissibility of any hardcopy document or ESI produced in accordance with this protocol.

## A.    GENERAL AGREEMENTS

1.    Ongoing Cooperation Among the Parties

The Parties are aware of the importance the Court places on cooperation and commit to continue to consult and cooperate reasonably as discovery proceeds. No Party may seek judicial relief concerning this Order unless it first has conferred with the applicable producing or requesting Party.

2.    Proportionality

The parties agree to negotiate in good faith regarding requests for and production of documents to ensure discovery is reasonable and proportional to the matter.

3.    Preservation Obligations Addressed Separately

Consistent with L.R. 26.1, the Parties shall separately meet and confer concerning preservation matters and the terms of an appropriate data preservation order to govern the Parties in these proceedings.

4.    No Designation of Discovery Requests

Productions of hardcopy documents and ESI in the reasonably usable form set out in this protocol, including Attachment A, need not be organized and labeled to correspond to discovery requests.

5.    Inadvertent Production

The production of any material constituting or containing attorney-client privileged information or work-product, or constituting or containing information protected by applicable privacy laws or regulations, shall be governed by provisions contained in the Protective Order entered in this action. The parties understand that this protocol contemplates rolling productions of documents, and they acknowledge that nothing in this Order waives, restricts, or eliminates any Party's rights to "claw-back" or to challenge "claw-backs" pursuant to any order(s) in this case; or governing law, rules, orders, or agreements regarding inadvertently produced documents.

6.    Privilege Claims

For documents withheld from production pursuant to a claim of attorney-client privilege, work product protection, or other applicable privilege or immunity, the Producing Party shall provide one or more privilege logs in Excel or a similar electronic form that allows text searching and organization of data.  The content, form, timing, and other requirements for any such privilege log shall be addressed in a separate Protective Order in this matter.

7.    Objections Preserved

Nothing in this Order shall be interpreted to modify any Party's right to object to disclosure of irrelevant information or relevant information that is overly burdensome or is protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  Except as provided expressly herein, the parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents.

8.    Previously Produced Documents

To the extent that a Producing Party produces documents herein that (a) were previously processed and produced in another litigation or in response to governmental or regulatory inquiries or investigations, (b) do not comport with the production format specified herein, and (c) the Receiving Party, following such receipt, has requested re-production of such production to accord with the specifications described herein, the Parties shall reasonably meet and confer regarding such request.

## B.   **ELECTRONICALLY STORED INFORMATION**

1.   Production in Reasonably Usable Form

a.   This order shall govern all productions made in this action other than productions of case-specific materials.

b.   Production of electronically stored information in a manner consistent with the specifications set forth in this Order shall, absent exceptional circumstances, be sufficient to satisfy a producing party's obligation to produce its materials in reasonably usable form and as they are maintained in the ordinary course of business.

i.   Except as otherwise provided herein, the Parties shall produce word processing files (*e.g.*, Microsoft Word) with track changes, comments, hidden text and/or with embedded file types, spreadsheet files (*e.g.*, Microsoft Excel), presentation files (*e.g.*, Microsoft Powerpoint), desktop databases (*e.g.,* Microsoft Access), image files, PDFs, and audiovisual files in native format, with TIFF placeholder images.  In the event there are technical difficulties or an unreasonable burden associated with a native production of particular data from a desktop database, the Parties will meet and confer regarding the production format.

ii.   The Parties shall produce word processing files (e.g. Microsoft Word) that do not contain track changes, comments, hidden text and/or embedded file types in single-page TIFF-image format with extracted or OCR text and associated metadata set out in Attachment A (defined as "TIFF-Plus Format"), which is incorporated in full in this protocol.

iii.   The Parties shall produce email files in single-page TIFF-image format with extracted or OCR text and associated metadata set out in Attachment A (defined as "TIFF-Plus Format"), which is incorporated in full in this protocol.  Email attachments of a filetype specified in Section B(1)(b)(i) shall be produced in the format specified therein—*i.e.,* in native format, with TIFF placeholder images.

c.   Redactions. The Producing Party may redact produced documents, materials and other things, only as provided in the Protective Order entered in this action. Each redaction shall be indicated clearly on the face of any document, stating the basis for the redaction over the redacted portion of the document with the words "PRIVILEGE" or other basis for redaction. Spreadsheet files should be redacted within the native file. For other documents, or for spreadsheets in which redactions cannot reasonably be made within the native file, the redacted files may be produced in TIFF Plus format (a single-page TIFF-image format with extracted or OCR text and associated metadata set out in Attachment A). In preparing document families for production, the Producing Party also may withhold attachments (*i.e.* "children" within a document family, but not "parents") that are wholly non-responsive, but must provide slipsheets in their place.

d. _Color_. To the extent any electronically stored information that contains color is produced in TIFF-Plus Format, the Parties shall honor reasonable requests for the production of such information in a suitable agreed-upon color image format.

e. _Enterprise Databases & Database Management Systems & Other Sources of Structured Data_. For database and database management systems, and other sources of structured data, the Parties shall meet and confer regarding the appropriate form of production on a case-by-case basis.

f. _Other Responsive ESI_. The Parties shall reasonably meet and confer concerning the production format for other responsive ESI filetypes.

2. _Use of Search Filtering Technology_

a. _The Parties Shall Meet and Confer Before Applying Search/Filtering Technologies._ Pursuant to Federal Rule 26(f) and Local Rule 26.1(d), the Parties shall confer on the application, if any, of search or other filtering technologies, including reasonable search terms, file types, date ranges, validation processes, predictive coding, Technology Assisted Review ("TAR"), or other appropriate advanced technology, including systems used to track review status related to those advanced technologies. The Parties are expected to work in a cooperative and collaborative manner to maximize the efficiency and success of the application of the methodologies proposed at identifying potentially responsive ESI. To the extent the parties are unable to reach agreement on the application of, or procedures for, any search or filtering processes, the Parties shall raise such issues for resolution by the Court. Following such agreement and/or order of the Court, if either Party believes that revisions to agreed-upon search-term or advanced-technology procedures are necessary to enhance or improve the identification of potentially responsive ESI, the Parties shall promptly meet and confer regarding the proposed revisions prior to implementation. No such revisions shall be permitted absent agreement of the Parties, or order of the Court. Whatever processes and/or advanced technologies are used, the Producing Party retains the responsibility of complying with its discovery obligations pursuant to the Federal Rules of Civil Procedure.

b. _ESI Identified in Agreed-Upon Searches_. The fact that any ESI has been identified in agreed-upon searches shall not prevent any Party from withholding such ESI from production on the grounds that the file is not responsive or privileged.

c. _Reasonably Known Responsive Material Shall Be Produced_. ESI that is reasonably known to the Producing Party to be non-privileged and responsive to a discovery request shall not be withheld on the basis that such ESI was not captured by a search term, of high "relevance" by a TAR text classification algorithm, or otherwise flagged as potentially responsive by another search technique, unless Counsel specifically identifies the documents as being withheld pursuant to a specific objection.

d. _Review of Discrete Document Collections_. Those portions of a Producing Party's documents that represent discrete document collections that are reasonably known to the Producing Party to predominantly contain documents likely to be responsive to discovery

requests, such as relevant folders of ESI segregated by the Producing Party or the Producing Party's employees before or after the commencement of this litigation, that are relevant to the claims or defenses in this proceeding, shall be reviewed for responsiveness (subject to appropriate claims of privilege) without culling, and without regard to whether a given document in the collection is responsive to any search or filtering strategy (*e.g.*, search terms, TAR classification, or other search or filtering techniques). In the event the Producing Party determines a discrete folder or collection of ESI is too unreasonable to make review of each document therein proportional to the needs of the case, the Parties shall meet and confer regarding the method of review for such documents.

3.    Email Threading

Due to the importance of the metadata in prior or lesser-included emails contained in whole or in part in a most-inclusive email, and in order to facilitate reasonable evidentiary use of emails, production of a most inclusive email thread does not relieve the Producing Party of its obligation to produce responsive prior or lesser-included emails.  No document shall be withheld from production on the basis that it is included in a produced more-inclusive email.  The Producing Party may, at its discretion, elect to review only the most inclusive email thread in determining the responsiveness of the prior or lesser-included emails or for any other internal purpose.

4.    De-Duplication

"Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values. Hash values of emails will be calculated on the concatenated values of at least the following fields: From, To, CC, BCC, Subject, Date Sent, Time Sent, Attachment Names, Body, and the hash values of all attachments. The Producing Party need produce only a single copy of responsive Duplicate ESI. A Producing Party shall take reasonable steps to de-duplicate ESI globally (i.e., both within a particular custodian's files and across all custodians). Entire document families may constitute Duplicate ESI. De-duplication shall not break apart families, nor shall a standalone copy of a file be withheld as a duplicate of an email attachment. When the same Duplicate ESI exists in the files of multiple custodians (including custodians identified in earlier productions), those persons shall be listed in the All Custodians field identified in Paragraph A.14(d) of Attachment A and the locations from which those document were collected shall be listed in the All_Orig_Filepaths field in Paragraph A.14(d) of Attachment A.  The Parties expressly agree that a document produced from one custodian's file but not produced from another custodian's file as a result of deduplication will nonetheless be deemed as if produced from that other custodian's file for purposes of the above-entitled Multi-District Litigation.

C.    **DOCUMENTS THAT EXIST ONLY IN HARDCOPY (PAPER) FORM**

The Producing Party shall produce documents that exist in the normal course of business only in hardcopy form ("hardcopy documents") in scanned electronic format, redacted as necessary, in accordance with the procedures set out in Attachment A. The scanning of original hardcopy documents does not otherwise require that the scanned images be treated as ESI.

Hardcopy documents shall be scanned so as to maintain the organization and sequence of such documents as maintained by Defendants' in the ordinary course of business.  To the extent that any hardcopy documents produced in TIFF-Plus Format contain color in their hardcopy form, the Parties shall honor reasonable requests for the production of such documents in a suitable agreed-upon color image format.

**Date: September 4, 2020**                    **s/ JOSEPH A. DICKSON                          **
                                               **HON. JOSEPH A. DICKSON**
                                               **UNITED STATES MAGISTRATE JUDGE**

# ATTACHMENT A

A.1     Image Files. Files produced in *.tif format will be single page black and white *.tif images of at least 300 DPI, Group IV compression. To the extent possible, original orientation will be maintained (*i.e.*, portrait-to-portrait and landscape-to-landscape). Page size shall be 8.5 x 11 inches unless, in the reasonable judgment of the producing party, a particular item requires a different page size. Each *. tif image will be assigned a unique name matching the production number of the corresponding page. Such files will be grouped in folders of no more than 1,000 *.tif files each unless necessary to prevent a file from splitting across folders. Files will not be split across folders and separate folders will not be created for each file. Production ("Bates") numbers shall be endorsed on the lower right corner of all images. This number shall be a unique, consistently formatted identifier that will:

    a)      be consistent across the production;

    b)      contain no special characters; and

    c)      be numerically sequential within a given file.

Production numbers should be a combination of an alpha prefix along with an 8 digit number (*e.g.* ABC00000001). The number of digits in the numeric portion of the production number format should not change in subsequent productions. Confidentiality designations, if any, will be endorsed on the lower left corner of all images and the Producing Party will make reasonable efforts to avoid obscuring any part of the original file with the production number.

A.2.    File Text. Except where ESI other than an Excel file contains text that has been redacted under assertion of privilege or other protection from disclosure, full extracted text will be provided in the format of a single *.txt file for each file (*i.e.*, not one *.txt file per *.tif image). The text of each ESI item shall be extracted directly from the ESI native file. To the extent that is not technically possible (*e.g.*, the underlying native file is an image file), the text for each ESI item shall be generated by applying optical character recognition (OCR) technology to the native file. The parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology. The parties acknowledge, however, that due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR.

Where a document contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted *.tif image may be OCR'd and file-level OCR text provided in lieu of extracted text. Searchable text will be produced as file-level multi-page UTF-8 text files with the text file named to match the beginning production number of the file. The full path of the text file must be provided in the *.dat data load file. The text file shall include interlineated image keys/production numbers sufficient to show, for all TIFF-image pages, the Bates-numbered page of the associated text.

1

A.3.    Word Processing Files. Redacted word processing files, including without limitation Microsoft Word files (*.doc and *.docx), will be produced in TIFF-Plus format as set forth above with any tracked changes, comments, and hidden text which can be displayed if viewed in Word visible in the TIFF images.

A.4.    Presentation Files. To the extent that presentation files, including without limitation Microsoft PowerPoint files (*.ppt and *.pptx), require redactions, such redactions shall be made in the TIFF-Plus Format and such *.tif images will display comments, hidden slides, speakers' notes, and any other similar data

A.5.    Spreadsheet or Worksheet Files. To the extent that spreadsheet files, other than Microsoft Excel files (*.xls or *.xlsx) require redactions, such redactions shall be made in the TIFF-Plus Format or natively at the Producing Party's discretion. Redacted Microsoft Excel files shall be redacted and produced in native format. Notwithstanding the foregoing, the Receiving Party may reasonably request production of specifically identified redacted spreadsheets in a format different than what was produced by the Producing Party, which the Producing Party shall reasonably grant.

A.6.    Parent-Child Relationships. Parent-child relationships (e.g., the associations between emails and their attachments, or a spreadsheet embedded within a word processing document) will be preserved to the extent possible. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Non-relevant attachments may be excluded from the production. All non-relevant attachments excluded from production shall be produced as a Bates-numbered placeholder. Parent-child relationships will be identified in the data load file pursuant to Paragraph A.14 below.

A.7.    Replacement Documents: Any documents that are replaced in later productions shall be clearly designated as such, by appending an "R" to the production number. When a party produces a replacement production indicated by "R," the Receiving Party shall direct its vendor to replace the original images in the review platform and will advise the Producing Party once the images have been replaced.

A.8.    Dynamic Fields. Documents containing dynamic fields such as file names, dates, and times will be produced showing the field type (e.g., "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

A.9.    Embedded Objects. Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, and Access; and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded. If embedded objects are privileged or require redaction, the parent document shall be produced in TIFF format with document-level OCR text. If embedded objects are merely non-substantive graphic files such as corporate logos, such embedded objects

2

need not be produced as separate Documents to the extent that their content is visible in the parent document.

A.10.   <u>Compressed Files</u>. Compressed file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A.11.   <u>Encrypted Files</u>. The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (*e.g.*, because password-protected) and that can be reasonably unencrypted. Parties shall reasonably meet and confer concerning encrypted or other files that may contain responsive information and which present processing difficulties.

A.12.   <u>Scanned Hardcopy Documents</u>

a)   Hardcopy documents shall be scanned in the image file format specified in A.1 herein.

b)   In scanning hardcopy documents, hard copy documents should be logically unitized.  Multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records.

c)   For scanned images of hard copy documents, OCR should be performed on a document level and provided in document-level *.txt files named to match the production number of the first page of the document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file.

d)   In the case of an organized compilation of separate hardcopy documents—for example, a binder containing several separate documents behind numbered tabs— the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the family fields set out below.

e)   In the case of hardcopy documents maintained within enclosing folders or other containers, the enclosing folder shall be treated as integral to the document, and any tabs or other writing on such enclosures, dividers, or tabs shall be scanned separately, but the relationship among such enclosing folders, dividers, or tabs should be reflected in proper coding of the family fields set out below.

A.13.   <u>Production Numbering</u>. In following the requirements of Paragraph A.1, the Producing Party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In

addition, wherever possible, each *.tif image will have its assigned production number electronically "burned" onto the image.

A.14.  <u>Data and Image Load Files</u>.

   a)  <u>Load Files Required</u>. Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format

   b)  <u>Load File Formats</u>.

      i.  Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.

      ii.  Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator. Carriage-return should be used to indicate the start of the next record.

      iii.  Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

      iv.  Load files should not span across media (*i.e.*, a separate volume should be created for each piece of media delivered).

      v.  There should be one row in the load file for every TIFF image in the production.

      vi.  Every image in the delivery volume should be cross-referenced in the image load file.

   c)  <u>OCR/Extracted Text Files</u>. OCR or Extracted Text files shall be provided in a separate directory containing document-level text files.

   d)  <u>Fields to be Included in Data Load File</u>. For all documents or electronic files produced, the following metadata fields for each document or electronic file, if available at the time of collection and processing and unless such metadata fields are independently protected from disclosure by attorney-client privilege or work-product immunity, will be provided in the data load file pursuant to subparagraph (a), above. For purposes of the chart below, the term "Scanned Docs" refers to documents that are in hard copy form at the time of collection and have been scanned into *.tif images. The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection.

| FIELD NAME | SAMPLE DATA | SCANNED DOCS | EMAIL AND E-DOCS | COMMENTS |
|---|---|---|---|---|
| PRODBEG | ABC00000001 | Yes | Yes | Beginning production number |
| PRODEND | ABC00000008 | Yes | Yes | Ending production number |
| PRODBEGATT | ABC00000009 | Yes | Yes | Beginning production number of parent in a family |
| PRODENDATT | ABC00001005 | Yes | Yes | Ending production number of last page of the last attachment in a family |
| ATTACH_COUNT | 3 | Yes | Yes | The number of attachments associated with the parent document in the document family. |
| ATTACHMENT_NAMES | Team meeting mins.doc; Agenda.doc | N/A | Yes | The file names of any documents attached to an email or embedded in another electronic document. |
| CUSTODIAN | Smith, John | Yes | Yes | Custodian that possessed the document or electronic file |
| ALL_CUSTODIANS | Smith, Jane; Jones, James; Smith, John | Yes | Yes | For documents that have been de-duplicated, these are all custodians whose had possession of the file that has been de-duplicated |
| NATIVEPATH | Natives\0001\ABC 00000001.xls | N/A | Yes | Path and file name for native file on production media |
| FILEDESC | Microsoft Office 2007 Document | N/A | Yes | Description of the type file for the produced record. |
| ORIG_FILEPATH | \My Documents\Document1.doc | N/A | Yes | Original source filepath for the document produced. |
| ALL_ORIG_FILEPATHS | H:\development\Document1.doc; \My | N/A | Yes | For documents that have been de-duplicated, these are all of the |
| FILENAME | Document1.doc | N/A | Yes | Name of original electronic file as collected. |
| DOCEXT | DOC | N/A | Yes | File extension for email or e-doc |
| FILESIZE | 139,000 | N/A | Yes | The size (in bytes) of the original file. |
| PAGES | 2 | Yes | Yes | Number of pages in the produced document or electronic file. |
| AUTHOR | John Smith | N/A | Yes | Author information as derived from the properties of the document. |
| DATECREATED | 10/09/2005 | N/A | Yes | Date that non-email file was created as extracted from file system metadata |
| TIMECREATED | 10:33 am | N/A | Yes | Time that non-email file was created as extracted from file system metadata |
| DATELASTMOD | 10/09/2005 | N/A | Yes | Date that non-email file was last modified as extracted from file system metadata |

5

| TIMELASTMOD | 10:33 am | N/A | Yes | Time that non-email file was last modified as extracted from file system metadata |
|---|---|---|---|---|
| HASHIDDENTEXT | YES | N/A | Yes | For documents, to indicate those documents with hidden text, hidden rows, hidden columns, |
| HASREVISIONS | YES | N/A | Yes | For documents with tracked changes, to indicate the presence of revisions |
| HASCOMMENTS | YES | N/A | Yes | For documents with tracked changes, to indicate the presence of integral reviewer comments |
| SUBJECT | Changes to Access Database | N/A | Yes | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Beech | N/A | Yes | "From" field extracted from email message |
| TO | Janice Birch | N/A | Yes | "To" field extracted from email message |
| CC | Frank Maple | N/A | Yes | "cc" or "carbon copy" field extracted from email message |
| BCC | John Oakwood | N/A | Yes | "bcc" or "blind carbon copy" field extracted from email message |
| AGENT_ID | Jane Smith | N/A | Yes | With respect to email, if the email was created by someone on behalf |
| DATESENT | 10/10/2005 | N/A | Yes | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 10:33 am | N/A | Yes | Sent time of email message, time zone set to GMT |
| DATERCVD | 10/10/2005 | N/A | Yes | Received date of email message (mm/dd/yyyy format) |
| TIMERCVD | 10:33 am | N/A | Yes | Received time of email message, time zone set to GMT |
| IMPORTANCE | High | N/A | Yes | The importance or priority ascribed by the sender to the email. |
| MSGID | 23542 | N/A | Yes | The unique email message identifier |
| CONFIDENTIALITY | CONFIDENTIAL | Yes | Yes | Text of confidentiality designation, if any |
| TEXTPATH | Text\001\001\ ABC00000001.txt | Yes | Yes | Path to *.txt file containing extracted or OCR text |
| MD5 HASH | 30999747f4e6d7b ef786e614ff2cf4b 0 | N/A | Yes | MD5 Hash for electronic document |
| REPLACEMENT | REPLACEMENT | Yes | Yes | "Replacement" indicates the image is a replacement for a previously produced image; otherwise blank. |
| PRODVOL | VOL001 | Yes | Yes | Name of the Production Volume |
| REDACTION | REDACTED | Yes | Yes | User-generated field indicating whether a document was redacted. |
| REDACTION REASON | Privilege | Yes | Yes | Identifies the reason for redaction |

A.15.  <u>Files Produced in Native Format</u>. Any electronic file produced in native file format shall be given a file name consisting of a unique production number. For each native file produced, the production will include a *.tif image slipsheet indicating the production

6

number of the native file and the confidentiality designation, and stating the following (or similar): "File Provided Natively." To the extent that it is available, the original file text shall be provided in a file-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet shall be provided in the *.txt file with the text path provided in the *.dat file.

A.16.   <u>Production Media</u>. Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the Producing Party, and the following information: Volume name, production range(s), and date of delivery. A cover letter shall be included with each production and shall include information sufficient to identify all accompanying media.

A.17.   <u>Encryption of Production Media</u>. To maximize the security of information in transit, any media on which documents or electronic files are produced may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.

# EXHIBIT 5

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION** | Master Docket: Misc. No. 21-1230 |
| | MDL No. 3014 |
| This Document Relates to: *All Actions* | |

## PRETRIAL ORDER #18

## STIPULATED ORDER REGARDING DISCOVERY OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

This Order will govern the protocol for the production of Documents, both Hard-Copy Documents and Electronically Stored Information ("ESI"), in the above-captioned multi-district litigation (the "Litigation").

**I.     PURPOSE**

1.     This Order will help to streamline Document, including but not limited to ESI, discovery to best carry out the requirements set forth in the Federal Rules of Civil Procedure, this Court's Local Rules and Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

2.     The Parties shall take all reasonable steps to comply with the protocol set forth herein.

3.     Except as specifically limited herein, this Order governs the production of discoverable Documents and ESI (defined below) by the Parties during the Litigation. In the event of remand or transfer to other courts, this Order will remain in effect in all respects until replaced by a successor court.

## II.    COOPERATION

1.      The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

2.      This Order shall not enlarge or affect the proper scope of discovery in these Actions, nor imply that discovery produced under the terms of this Order is properly discoverable, relevant, or admissible in this or in any other litigation. Additionally, this Order does not alter or expand the preservation obligations of the Parties.

3.      The Parties acknowledge their duty to work together cooperatively throughout the discovery process. Consistent with their obligations under applicable Federal Rules of Civil Procedure and the Court's Guidelines, the Parties will first attempt to resolve, in person, in writing (including e-mail), by video conference, or by telephone, disputes regarding the issues set forth herein before filing a motion with the Court, or otherwise seeking relief. If a Producing Party cannot comply with any material aspect of this Order, such Party shall inform the Requesting Party in writing, before the time of production, as to why compliance with the Order is not possible. No Party may seek relief from the Court concerning compliance or lack thereof with the Order unless it has conferred with other affected Parties to the Litigation. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

4.      Nothing in this Order shall be deemed to waive or limit any Party's right to object to the production of certain documents or ESI, or to move for an appropriate Order on the grounds that the sources are not reasonably accessible because of undue burden or cost.

## III.    DEFINITIONS

1.      "**Confidentiality Designation**" means the legend affixed to Documents or provided in the "Confidentiality" metadata field pursuant to **Appendix B** below for Confidential Discovery Information as defined by, and subject to, the terms of the Parties' Stipulated Protective Order [Dkt. 104], or any subsequent order, in the Litigation.

2.      "**Document**" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure and includes any written, recorded, or tangible graphic matter, or any other means of preserving thought or expression, including all non-identical copies, drafts, worksheets, and proofs, whether handwritten, typed, printed, or otherwise created, specifically including telephone slips and logs, diary entries, calendars, reports, evaluations, assessments, analyses, test results, correspondence, memoranda, notes, email, text messages, instant messages (including all messages sent, received and produced by applications like Skype, AIM, Microsoft Teams, Google Chat, Google Chat or any proprietary instant messaging system), chat logs (including all chat logs sent, received and produced by applications like Skype, AIM, or Google Chat), videotapes, video cartridges, audio tapes, electronically stored information of any kind including databases, drawings, graphics, charts, photographs, computer diskettes and disks, facsimile transmissions, and any other data compilation from which information can be obtained and translated through detection devices into reasonably usable form. The term "Document" shall include Hard-Copy Documents, Electronic Documents, and ESI as defined herein.

3.      "**Electronic Document or Data**" means Documents or data existing in electronic form including but not limited to: e-mail or other means of electronic communications, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint slides), spreadsheets (e.g., Excel), image files (e.g., jpg), and Structured Data.

4. "**Electronically Stored Information**" or "**ESI**," as used herein, has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

5. "**Hard-Copy Document**" means Documents existing in tangible form, including but not limited to paper Documents.

6. "**Hash Value**" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms, known as MD5 and SHA, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion. "Hashing" is used to guarantee the authenticity of an original data set and can be used as a digital equivalent of the Bates stamp used in Hard-Copy Document productions.

7. "**Load file**" means an electronic file provided with a production set of document images that facilitate the loading of such information into a Requesting Party's document review platform, and the correlation of such data in the platform.

8. "**Metadata**" means (i) information embedded in or associated with a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, custody, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as Bates numbers, created during the course of processing Documents for production; and/or (iv) information about the source of Documents or data including the custodian or non-custodial data source.

- 4 -

9.     "**Media**" means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

10.     "**Native Format**" means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and/or in its regularly conducted activities.

11.     "**Optical Character Recognition**" or "**OCR**" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

12.     "**Party**" or "**Parties**" means Plaintiffs; Defendants Philips RS North America LLC f/k/a Respironics, Inc., Koninklijke Philips N.V., Philips North America LLC, Philips Holding USA, Inc., and Philips RS North America Holding Corporation.

13.     "**Producing Party**" means the Party producing Documents in response to any Request for Production of Documents pursuant to FED. R. CIV. P. 34(a) or for any other reason.

14.     "**Protected Material**" means "Privacy Information" and "Protected Health Information" as defined the Stipulated Protective Order [Dkt. No. 104], and any amendments thereto.

15.     "**Request for Production**" means Documents requested pursuant to FED. R. CIV. P. 34(a), or for any other reason.

16.     "**Requesting Party**" means the Party requesting Documents in any Request for Production of Documents, or receiving Documents in response to any Request for Production of Documents, pursuant to FED. R. CIV. P. 34(a), or for any other reason.

17. **"Searchable Text"** means the native text extracted from an Electronic Document or any Optical Character Recognition text ("**OCR text**") generated from a Hard-Copy Document or electronic image.

18. **"Structured Data"** means ESI stored in a structured format, such as databases or data sets according to specific form and content rules as defined by each field of the database.

19. **"Third Party"** or **"Non-Party"** means any other person or entity other than the Parties.

20. "**Unitization**" means a set of paper-scanned images or electronically processed files, and indicates where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends.

## IV.  SEARCH AND IDENTIFICATION

1. **Initial ESI Conference.** The Parties agree to meet and confer to discuss ESI consistent with Fed. R. Civ. P. 26(f) and the Western District of Pennsylvania Local Rule of Court 26.2 and accompanying Appendices. That meet and confer shall cover topics including (i) the identity and role of custodians, including the names, titles, reporting relationships, and departments of custodians; (ii) the selection of custodial and non-custodial sources to be collected from each Party in the first phase of discovery, subject to revision consistent with Federal Rules of Civil Procedure following a meet and confer; (iii) identification of noncustodial data sources containing potentially relevant ESI for potential collection, review, and production; (iv) additional parameters for scoping the review and production efforts (e.g., application of date ranges, etc.); (v) potential use and identification of search terms, tools, or techniques; (vi) the identification and production of Documents from custodial and non-custodial sources that do not require the use of search terms, tools, or techniques; (vii) applicable timeframe(s) for collection and review of documents; and

(viii) the method the Parties propose to use to identify and de-duplicate duplicate documents, and any objections or exceptions to such de-duplication.

2.    **Custodians**. The Parties will agree upon an initial list of custodians (or present any disputes to the Court or its designee), which will be subject to the Producing Party's ongoing good faith efforts to identify the custodians most likely to have responsive or relevant information. For targeted collections conducted pursuant to this protocol, Documents may be collected from all reasonably accessible sources within the possession, custody, or control of the Parties or the custodian, including, *inter alia*, the agreed-upon custodians' local hard drives, network home drive, personal shared drives, cloud storage locations, email accounts (including any personal email accounts if such accounts contain responsive or relevant Documents), removable or portable Media (including thumb or flash drives, external hard drives, CDs or DVDs), messaging phones, tablets, social media, short message format including without limitation SMS, Apple iMessage, Skype, Bloomberg, Signal, WhatsApp, Facebook Messenger, Telegram, Snapchat, Mattermost, Dust, Viber, Threema, Silence, Wire, Wickr, Line, Voxer, Smiley Private Texting, CoverMe, and Slack, Zoom or other videoconference chat and videos, Hard-Copy Documents, and any other source to the extent that the source may contain reasonably accessible, potentially responsive or relevant information as identified by the custodians. The Parties agree that if the Producing Party determines a source is not "reasonably accessible" pursuant to Federal Rule of Civil Procedure 26(b) during the search and collection process it will meet and confer with Receiving Party regarding the accessibility of the source. If the Parties disagree as to the accessibility of the source after a good faith meet and confer, the Party seeking discovery from the source may submit the issue to the Court or its designee in accordance with the Court's procedures. The Parties agree that for those custodians who are former employees of a Producing Party, the Producing Party will

search for and collect, if available, the former employee's hard drive, home drive and email that the former employee used at the time of departure from the Producing Party. Subject to the Parties' objections and responses to Requests for Production of Documents, and subject to the Parties' Protective Order [Dkt. 104] or any subsequent order, the Parties shall begin producing responsive, non-privileged Documents, on a rolling basis, from the files of the identified custodians. The Parties agree to work together in good faith to prioritize and sequence the custodial productions of deponents, and any discrete document collections or databases that pertain to those deponents, such that these documents are produced with sufficient time to review prior to their depositions. The Parties agree to take any unresolved disputes on same promptly to the Court or its designee.

3.   **Non-Custodial Sources**. Following the exchange of any necessary additional information relating to any identified non-custodial source, the Parties will agree upon an initial list of non-custodial sources (or present any disputes to the Court or its designee), such as departmental/project/collaborative/shared storage spaces, shared drives, departmental emails, internal intranet, Structured Data stores, application data, source code repositories, social media, databases, document management systems (such as eRooms, SharePoint, Salesforce), record management systems (RMS), content management systems (CMS), file servers, SANs, NASs, web servers, on line data stores such as Dropbox, Box and Google Drive, that will be searched to identify potentially responsive or relevant Documents. Subject to the Parties' objections and responses to requests for production of Documents, and subject to the Parties' Protective Order, the Parties shall begin producing responsive, non-privileged Documents, on a rolling basis, from the identified non-custodial sources.

4.   **Structured Data.** Where a discovery request requires production of Structured Data, in lieu of producing Structured Data systems or applications, the Parties shall meet and

confer on the content and format of a data sample from such Structured Data source. The Parties shall discuss and attempt to agree upon the sets of data or fields to be included in the sample and the format in which sample data extracted shall be produced, and the Producing Party shall make all disclosures necessary for the Requesting Party to understand and evaluate whether the content and format of the  data sample would satisfy a production request, such as the data fields available, the meaning of data fields, as well as codes and abbreviations used in the data source and whether a data dictionary exists, the time period over which data exists, any database scheme, or other relevant information. The Producing Party shall generate a report of such data sample for review by the Requesting Party or counsel after meeting and conferring with the Requesting Party as to the fields to be produced and the format of production. The Parties reserve all rights to object, including but not limited to objections for relevance, undue burden, and/or inaccessibility.

5.      **Obligation to Supplement.** To extent the Parties become aware of Additional Custodians or Non-Custodial Data Sources, the Parties will supplement pursuant to obligations under Federal Rule of Civil Procedure 26(e). Plaintiffs reserve the right to request, at any time prior to the close of discovery, to seek production of additional Custodians or Non-Custodial Data Sources whose relevance was discovered after the initial designations, or for other good cause shown. If Defendants object to the inclusion of such custodial or non-custodial sources, the Parties will meet and confer to resolve the matter; if the Parties cannot reach resolution, the Parties agree to raise the issue with the discovery Special Master. The Court or its designee will determine the matter.

6.      **Known Documents**. Documents identified in a custodial or non-custodial file that is being produced by the Producing Party, which are known to be responsive to a discovery request shall be produced without regard to whether it was responsive to any search methodology

described herein or developed in accordance with this Protocol, unless Counsel specifically identifies the documents being withheld pursuant to a specific objection.

7. **Folders/Collections of Documents.** Those portions of the Defendants' documents representing discrete folders or collections of information that are reasonably known to contain documents likely to be responsive to a discovery request, such as relevant folders of ESI that are identified or segregated by the Producing Party in connection with its efforts to provide discovery from agreed-upon non-custodial sources pursuant to this Order , shall be identified and collected without the use of search terms or any other content-based filtering to cull or limit the scope of Documents from the discrete set or grouping. Notwithstanding a Party's awareness that a discrete collection is likely to contain responsive information, a Producing Party may, in good faith, withhold Documents from any such discrete collection based on responsiveness, confidentiality, privilege, or other protection(s) from disclosure or production. The Parties will meet and confer in the event the Producing Party believes that such a review of a discrete document folder or collection of information would be unduly burdensome and disproportionate to the needs of the case. A Requesting Party may also request that the Parties meet and confer if it identifies any deficiency in the productions.

8. **Search Queries and Methodologies**. Pursuant to Federal Rule 26(f) and Local Rule 26.2, the Parties shall confer on the application, if any, of search or other filtering technologies, including reasonable search terms, file types, date ranges, validation processes, predictive coding, or other appropriate advanced technology, including systems used to track review status related to those advanced technologies. The Parties are expected to work in a cooperative, collaborative, and iterative manner, in order to reach agreement upon a reasonable search methodology. To the extent the Parties are unable to reach agreement on the application

of, or procedures for, any search or filtering processes, the Parties shall raise such issues for resolution by the Special Master to be resolved by the Court or its designee. The Parties recognize that as the litigation evolves, there may be a need to supplement earlier agreed methods or search terms to enhance or improve the identification of potentially relevant ESI. Accordingly, the Parties shall meet and confer as needed to facilitate the reasonable identification of potentially relevant ESI.

9. **Additional Requests for Documents**. Nothing in this Order shall preclude a party from serving additional Requests for Production at any time prior to the close of fact discovery. Nothing in this Order shall be deemed to be a waiver of any Party's right to reasonably seek agreement from the other Parties, or a Court ruling, to modify proposed or previously agreed-to search terms, techniques, or tools (including any proposed as supplements).

10. **System Files**. The Parties shall meet and confer on methods for excluding certain files and folders that are reasonably identified as system files and not likely to contain user-created files.

11. The mere fact that a document is hit or captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation. Determinations of discoverability, responsiveness and privilege shall be made by the Producing Party.

## V. GLOBAL DE-DUPLICATION.

1. Except as Provided in Section V.7 below, to the extent exact duplicate Documents reside within a Producing Party's ESI data set, the Producing Party shall produce only a single, deduplicated copy of a responsive Document. "Exact duplicate" shall mean bit-for-bit identity of the Document content with exact Hash Value matches. The Parties further agree that an email that

includes content in the "BCC" or other blind copy field shall not be treated as a duplicate of any otherwise identical email that does not include content in the "BCC" or other blind copy field.

2.      Except as provided in Section V.7 below, to the extent a Party de-duplicates its Documents, it shall de-duplicate stand-alone Documents or entire Document families in their ESI sources by the use of MD5, SHA-1, or SHA256 Hash Values. Where any such Documents have attachments, Hash Values must be identical for both the Document plus-attachment (including associated Metadata) as well as for any attachment (including associated Metadata) standing alone.

3.      Except as provided in Section V.7 below, a Producing Party shall de-duplicate Documents across custodians and populate a field of data that identifies each custodian who had a copy of the produced Document (the "Duplicate Custodian" field) in addition to a separate field of data identifying the custodian whose Document is produced; such de-duplicated Documents shall be deemed produced from the custodial files of each such identified custodian for all purposes in this litigation, including for use at deposition and trial. A Producing Party shall use a uniform description of a particular custodian across productions. Multiple custodians in the "Duplicate Custodian" field shall be separated by a semicolon. Entity/departmental custodians should be identified with a description of the entity or department to the extent applicable.

4.      No Producing Party shall identify and/or eliminate duplicates by manual review or some method other than by use of the technical comparison using MD5 or SHA-1 Hash Values outlined above.

5.      Hard-Copy Documents shall not be eliminated as duplicates of ESI.

6.      If the Producing Party makes supplemental productions following an initial production, that Producing Party also shall provide with each supplemental production an overlay file to allow the Requesting Party to update the "Duplicate Custodian" field. The overlay file shall

include all custodians listed in the "Duplicate Custodian" field in prior productions and any custodians newly identified in the current supplemental production.

## VI.    FORMAT OF PRODUCTION

1.    **ESI to be Produced in Native Form**. Microsoft Excel and other spreadsheets; Microsoft Word and other word processing files; Microsoft PowerPoint and computer slide presentations; PDFs; media files, such as audio, photo/image, and video files; and other file types that are poorly represented, substantively limited, or degraded when produced in the format specified in Section VI.3, shall be produced in their Native Format. Files produced in Native Format shall be named either with a sequential Bates number followed by the file name or with a sequential Bates number followed by the Confidentiality Designation, if applicable, and the file name. A placeholder TIFF with the original file name, the language "Document Produced in Native" (or similar language), and stamped with assigned Bates number and Confidentiality Designation shall be included for each native file produced. When the native file is produced, the Producing Party shall preserve the integrity of the electronic document's contents, i.e., its original formatting and Metadata. To the extent native files, other than spreadsheets or media files, are properly subject to redaction, production shall be made in TIFF format in accordance with the section on redacted Document and not in Native Format. Spreadsheets requiring redaction will be redacted within the native file, and the redacted native file will be produced as provided in this paragraph; the Parties shall reasonably confer to the extent a Producing Party contends that a media file requires redaction. A Requesting Party reserves the right to request reprocessing of any such productions if they lack sufficient Metadata or are otherwise unusable, and to seek relief from the Court if such a request is denied.

2.      **Databases and Structured Data.** The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source or otherwise maintained by an application (e.g., Microsoft Teams, Slack, Microsoft Access, SharePoint, Oracle, Salesforce, ACT!, or any other messaging or proprietary databases). The Parties will reasonably cooperate in the exchange of information concerning such databases to facilitate discussions on a reasonably useable production format. If the Parties cannot reach agreement, the matter will be decided by the Court or its designee.

3.      **Non-Redacted Electronically Stored Information Not Produced in Native Form.**   Non-redacted ESI (in formats other than those subject to automatic Native Format production under VII.1 above, or subject to conference regarding Structured Data under VII.2 above) should be produced in a form that retains the material characteristics of the ESI in its native form (*i.e.,* the information, image, searchability, and utility) maintained in the normal course of the Producing Party's business. Such ESI may be produced in single-page, black and white, 300 DPI, Group IV TIFF image file format together with Concordance or Summation Load Files (OPT or DII files) (depending on the preference of the Requesting Party). Specifications for the Load Files are listed in the **Appendix A**. TIFFs of ESI shall convey the same information and image as the original Document, including all commenting, versioning, and formatting that is visible in any view of the Document in its native application. Non-redacted ESI shall be produced with searchable extracted text of the entire Document (at the Document level in a .TXT file) and Metadata fields as listed in **Appendix B** in a Concordance .DAT file, where applicable.

Except as otherwise provided herein, **Appendix B** does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original Metadata of the Document. The parties acknowledge there can

be differences between the Operating System (Windows or other) and Application date/time and agree that the Producing Party has no obligation to try and reconcile the differences, if any.

The relationship between related Documents (e.g., email attachments and parent emails) should be preserved. All relevant Electronic Documents attached to an email should be produced contemporaneously and sequentially immediately after the parent email, and shall bear Metadata reflecting the relationship.

Parties may request the production of Documents in Native form by Bates number in the event that a Document produced in TIFF form is illegible, and to seek relief from the Court if such a request is denied.

4.     **Hard-Copy Documents**. Hard-Copy Documents should be produced as single-page, black and white, 300 DPI, Group IV TIFF image file format together with Concordance or Summation Load Files (depending on the preference of the Requesting Party) with coded data contained in a separate file. The Producing Party shall also provide Document-level OCR text files to accompany the TIFF format production. In scanning all Hard-Copy Documents, Hard-Copy Documents should be logically unitized. Accordingly, distinct Documents should not be merged into a single record, and single Documents should not be split into multiple records. In the case of an organized compilation of separate Documents (for example, a binder containing several separate documents behind numbered tabs), each of the Hard-Copy Documents should be separately scanned, but the relationship among the Documents in the compilation should be reflected in the proper coding of the beginning and ending Documents and attachment fields. The Parties will make their best efforts to Unitize the Documents correctly. For Documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where reasonably practicable. Pages with Post-It notes shall be scanned both with

and without the Post-it, with the image of the page with the Post-it preceding the image of the page without the Post-It. Original Document orientation (i.e., portrait v. landscape) should be maintained. Producing Hard-Copy Documents as provided herein does not change their character from Hard-Copy Documents into ESI. For Hard-Copy Documents, the Parties need only populate the following Metadata fields: "BEGDOC," "ENDDOC," "PROD VOLUME," "CUSTODIAN," "SOURCE," "CONFIDENTIAL," "REDACTION," and "COMPANY" fields, as well as "BEGATTACH" and "ENDATTACH" fields where applicable.

5. **Redacted Documents.** A Producing Party may use redactions to protect attorney-client or work product privileges consistent with any operative Order concerning privilege that is agreed upon by the Parties and/or entered in this Litigation. Absent further order of the Court or agreement of the Parties, no redactions for relevance may be made within a produced document. To the extent that a Producing Party maintains that an otherwise responsive document contains certain highly sensitive information that should be redacted for reasons other than those permitted by this Paragraph, the Producing Party and Receiving Party shall meet and confer concerning the proposed treatment of such information. If the Parties do not agree, the Producing Party may submit the document to the Court or Special Master under seal for review in camera and seek an order concerning the appropriate treatment of the disputed information. Any redactions shall be clearly indicated on the face of the Document, with each redacted portion of the Document stating that it has been redacted and the basis for the redaction, and a Metadata field shall indicate that the Document contains redactions and the basis for redaction (e.g., "A/C Privilege"). Where a responsive Document contains both redacted and non-redacted content, the Producing Party shall produce the remainder of the non-redacted portions of the Document and the text/OCR corresponding to the non-redacted portions, as well as the Metadata required under this Protocol.

Email header information (e.g., date, subject line, etc.) should not be redacted unless it is independently privileged. The production of a Document in a redacted form does not affect the Producing Party's obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log. Redacted ESI, other than spreadsheet files (that will be produced as redacted native files) and media files (about which the Parties shall confer), will be produced as TIFFs with applicable metadata and extracted or OCR searchable text as specified in Section VI.3 ("TIFFs of Redacted ESI"). The Producing Party shall honor reasonable requests for the production of particular redacted Documents in other formats where the TIFF image is not reasonably usable.

6. **TIFFs of Redacted ESI**. TIFFs of redacted ESI shall convey the same non-redacted information and image as the original Document, including all non-redacted elements and formatting that are visible in any view of the Document in its native application, and each redacted area must bear a label containing the reason for the redaction. Specifically, all Documents that contain comments, deletions, and revision marks (including the identity of the person making the deletion or revision and the date and time thereof), color, speaker notes, or other user-entered data that the source application can display to the user will be processed such that all that data is visible in the image. All hidden text will be expanded, extracted, and rendered in the TIFF file and the Producing Party will instruct its vendor to force off Auto Date. TIFFs of Redacted ESI shall be produced with the load files, metadata, and text as specified by Appendices A and B.

7. **Document Unitization for Hard-Copy Documents**. If a Hard-Copy Document consists of more than one page, the Unitization of the Document and any attachments and/or affixed notes shall be maintained as it existed in the original Document, so that each page will not be split, but instead sequenced and saved together, as they existed in the original.

8.    **Parent-Child Relationship**. The Parties acknowledge and agree that parent-child relationships within a Document family (the association between an attachment and its parent Document or between embedded Documents and their parent) shall be preserved. Responsive non-privileged Electronic Documents, attached to an e-mail or embedded within other Electronic Documents, and Hard-Copy Documents, attached or appended to Hard-Copy Documents, must be mapped to their parent by the beginning Bates number and immediately follow that parent file in the sequence of the production. Email attachments and embedded files or links "BEGATTACH" and "ENDATTACH" fields listing the unique beginning Bates number of the parent Documents and ending number of the last attachment must be populated for each child and parent Document. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged.

9.    **Load Files**. Each production of Documents shall be accompanied by Concordance and comma delimited Load Files (.dat and .opt) containing a field with the full path and filename to files produced in Native Format and also containing Metadata fields identified in **Appendix B**, to the extent the information is available in the original ESI file (except for vendor-generated fields related to the litigation production, such as "BEGDOC", "ENDDOC", bases for redaction, and Confidentiality Designations). All Metadata shall be provided in UTF-8 with Byte Order Mark format.

10.    **Text Files**. For all Documents containing extracted full text or OCR text, the Producing Party shall provide searchable Document-level .txt files (named using the Bates start "BEGDOC"), which shall reside in the text subdirectory of each production volume alongside corresponding separate image and native subdirectories.  Electronic text must be extracted directly from the native electronic file unless the Document requires redaction, is an image file, or is a

native electronic file that does not contain text to extract (e.g., non-searchable PDFs). In these instances, and in the case of imaged Hard-Copy Documents, a text file shall be created using OCR and shall be produced in lieu of extracted text. Extracted text shall be provided in UTF-8 with Byte Order Mark format text. Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from Documents with comments or tracked changes, and hidden worksheets, slides, columns and rows.

11.     **Text Extracted from Emails**. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments.

12.     **Email Thread Suppression:**  No email may be withheld from production solely because it is included in whole or in part in a more inclusive email.

13.     **Social Media**. Responsive ESI may, but does not necessarily, include social media websites (e.g., LinkedIn, Facebook, Twitter, internal intranet social media, etc.). The Parties agree to meet and confer on the production and production format, including Metadata, for social media.

14.     **Bates Numbering**. Each page of a produced image shall have a unique Bates number electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source Document. Each TIFF image or native file assigned a Bates number shall be assigned a Bates number that is unique and maintains a constant length across the entire Document production. No other legend or stamp will be placed on the Document image other than confidentiality legends (where applicable) or redactions.

15. **Confidentiality**. Electronic data produced in discovery may be labeled with Confidentiality Designations. In the case of TIFF images, confidentiality legends shall be "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source Document and the designation shall be supplied in the fielded data. For materials produced in Native Format, the Producing Party shall supply fielded data identifying the confidential treatment of each Document designated for confidentiality and will endorse the TIFF placeholder accompanying the native file with the appropriate Confidentiality Designation, and shall name the file with the Bates number followed by the Confidentiality Designation and the file name. A Producing Party's failure to make a designation through fielded data, an endorsing of the TIFF image, or a naming of the file may be corrected by notifying the Requesting Party of the mistaken designations of confidential materials.

16. **Color**. Documents containing color shall be produced in color, as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. The Producing Party shall comply with reasonable requests by the Requesting Party to determine whether a produced black-and-white TIFF's native or hardcopy original version contains color, and to provide replacement files in those circumstances.

17. **OCR**. OCR software shall be set to the highest quality setting during processing.

18. **Foreign Language Documents**. English is the official language of Philips, and review of documents collected to date confirms this. To the extent that foreign language documents are identified in the course of review, those documents will be segregated while the parties meet and confer in an attempt to reach agreement as to whether, and how, they should be translated, including any allocation of costs.

19. **No Withholding of Documents Within A Family.** If any member of a family group is produced, all members of that group must also be produced or else logged as privileged.

20. **ESI Date and Time Processing**. Each Party's ESI should be processed using Eastern Standard Time (EST).

21. **Embedded Objects**. Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, Access and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded unless otherwise subject to an exception provided within this Order.

22. **Compressed Files.** Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files before responsiveness review or the application of any filtering or culling technologies.

23. **No Designation of Discovery Requests.** Production of hard copy documents and ESI in the reasonably usable form set out in this Stipulation need not include any reference to the requests to which a document or ESI may be responsive.

24. **Procedure Upon Receipt of Request for Erasure Pursuant to Data Protection Laws.** If during the course of litigation, a Producing party receives a well-founded request for erasure of personal data pursuant to any applicable Data Protection Law, as defined with the Stipulated Protective Order, within previously produced Protected Material, the Producing Party shall notify Requesting Parties of the request, and use best efforts to furnish newly redacted, replacement versions of the Protected Material that eliminate the personal data at issue. The parties

- 21 -

agree that for purposes of this provision, "personal data" shall not be construed to mean the names, positions, titles, or professional contact information (work address, work email, etc.) of the current or former employees of any Defendant or of third parties identified in relevant, responsive documents, data, or information produced in discovery in this Action. If a Requesting party objects to the replacement, the parties will meet and confer. If the parties are unable to reach agreement, the Producing party may seek relief from the Court.

25. **Production Media**. Documents shall be produced on CDs, DVDs, USB hard drives, portable hard drives or through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission ("Production Media"). Each piece of Production Media shall be encrypted and assigned a production number or other unique identifying label ("Production Volume Number") corresponding to the date of the production of Documents on the Production Media as well as the sequence of the material in that production, and shall include (a) the name of the Litigation and the case number; (b) the identity of the Producing Party; (c) the production date; (d) the Bates Number range of the materials contained on such Production Media item; and (e) the Production Volume Number of the Production Media. The Producing Party shall accompany all Document productions with a transmittal cover letter with information sufficient to identify all accompanying media, together with a production log, in Excel spreadsheet format, updated with each production, identifying (1) the date of production, (2) the production wave or volume, (3) the Bates ranges for the documents encompassed within the production, and (4) general description of subject matter of the production (i.e., regulatory documents, custodial documents of Jane Doe, etc.). If the Producing Party produces Documents via secure FTP site, the Producing Party shall specify the date through which the materials will remain available via the secure FTP site and the

Producing Party shall, within a reasonable time, accommodate requests from another Party or Parties that Documents be reposted to the FTP site.

26.     **Replacements.** All files that are replaced for any reason must be annotated with an "R" designation appended to the Bates prefix. A cross reference file will be provided identifying the Document's original Bates and its replacement Bates number.

27.     **Use at Deposition**. Any Document produced in native that a party identifies and/or marks as an exhibit at a deposition must include as part of that identification or exhibit the produced corresponding cover page in TIFF image format, endorsed with Document's Bates Number and Confidentiality Designation.

28.     **Lost, Destroyed or Irretrievable ESI**. If a Producing Party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business, the Producing Party shall explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources, and whether any backup or copy of such original responsive ESI exists.

29.     **Production of Case-Specific Materials**.  Subject to any further agreement among the Parties or Order of the Court, the Parties shall produce case-specific documents (*i.e.*, documents specific to the claim of a given plaintiff, produced by Plaintiffs and Defendants) for any plaintiff identified as a class representative, those in discovery pools or other selections designed to inform bellwether selection, and those selected for a bellwether trial in accordance with the production format specified herein, provided, however, that the Producing Party may elect to produce such materials in their native format.  To the extent production of case-specific

documents for any plaintiff identified as a class representative or that is selected for a bellwether trial presents an issue for any Party, the Parties shall reasonably confer, and present any disputes to the Court or its designee.  The Parties shall further confer concerning the production format and associated matters (*e.g.*, hosting platform) for case-specific documents produced in the cases of other plaintiffs.  Nothing herein shall limit Defendant's right to seek discovery from any Plaintiff.

30.    **Deviation from Production Specification**.  If a particular Document or category of Documents warrant a different format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

## VII.   MISCELLANEOUS

1.   **Resource Person(s).** Each Party shall designate one or more individuals as designated ESI Resource Person(s) for purposes of meeting and conferring with the other Parties and for attending Court hearings on the subject of relevant ESI. The designated ESI Resource Person(s) shall be reasonably responsible to discuss the Party's relevant ESI. The designated Resource Person(s) will be, or have access to those who are, knowledgeable about the electronic systems and capabilities and the technical aspects of the manner in which the Party has responded to eDiscovery, including (as appropriate) relevant ESI location, nature, accessibility, format, collection, retrieval technology, and search methodology. The Resource Person(s) is not necessarily the person who would be designated to testify related to the Party's preservation efforts, Document retention policies, collection efforts or other related matters.

2.   **Third-Party Documents**. A Party that issues a Non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that the Parties to this Litigation have requested that Third Parties produce Documents in accordance with the specifications set forth herein. Within 14 days of receiving any Documents obtained pursuant to a Non-Party subpoena, the Issuing Party shall produce such Documents to all other Parties, except where the Third-Party Documents are to be used in a deposition, in which case the Issuing Party shall produce such Documents to all other Parties no later than three (3) days prior to the deposition, or as soon as reasonably practicable if such production occurs thereafter. Nothing in this Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or Third Parties to object to a subpoena. If the Non-Party production is not Bates-stamped, the Issuing Party will endorse the Third-Party Documents with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

3.      **No Effect on Discovery or Admissibility**. This Order does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI. Nothing in this Order shall be construed to affect the admissibility of any Document or data. All objections to the admissibility of any Document or data, except as to the authenticity of the Documents produced by a Party as to which that Party stipulates, are preserved and may be asserted at any time.

4.      **Protective Order**. All Documents produced by the Parties will be subject to the terms of the Protective Order [Dkt. 104], and any subsequent order, entered in this Litigation.

5.      **Modification.** This Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.


        **IT IS SO ORDERED.**

Dated:      7/21/2022                    /s/ JOY FLOWERS CONTI

                                         Joy Flowers Conti
                                         Senior United States District Judge


        **SO STIPULATED AND AGREED.**


DATED:  July 14, 2022

                                 */s/ Sandra Duggan*
                                 Sandra Duggan
                                 **LEVIN SEDRAN & BERMAN**
                                 510 Walnut Street
                                 Ste 500
                                 Philadelphia, PA 19106
                                 215-592-1500
                                 215-592-4663 (fax)
                                 sduggan@lfsblaw.com

*/s/ Christopher A. Seeger*
Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road 6th Floor
Ridgefield Park, NJ 07660
212-584-070
cseeger@seegerweiss.com

*/s/ Kelly K. Iverson*
Kelly K. Iverson
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
412-322-9243
kelly@lcllp.com

*/s/ Steven A. Schwartz*
Steven A. Schwartz
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH**
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA 1904
610-642-8500
steveschwartz@chimicles.com

*Counsel for Plaintiffs*

*/s/ D. Aaron Rihn*
D. Aaron Rihn, Esquire
**ROBERT PEIRCE & ASSOCIATES, P.C.**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
412-281-7229
arihn@peircelaw.com

*Co-Liaison Counsel for Plaintiffs*

*/s/ John P. Lavelle, Jr.*
John P. Lavelle, Jr.
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103-2921
T 215.963.5000
John.lavelle@morganlewis.com

*/s/ Wendy West Feinstein*
Wendy West Feinstein
**MORGAN, LEWIS & BOCKIUS LLP**
One Oxford Center, 32nd Floor
Pittsburgh, PA 15219-6401
T 412.560.3300
Wendy.feinstein@morganlewis.com

*Counsel for Defendant Philips RS North America, LLC*

*/s/ Michael H. Steinberg*
Michael H. Steinberg
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, CA 90067
T (310)712-6670
steinbergm@sullcrom.com

*/s/ William B. Monahan*
William B. Monahan
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
T (212) 558-7375
monahanw@sullcrom.com

*Counsel for Defendants Koninklijke Philips NV, Philips North America LLC, and Philips Holding USA Inc.*

# APPENDIX A
# LOAD FILE FORMATS

## Image Load Files

- Every Document referenced in a production image Load File must have all corresponding images, text and Metadata.
- The name of the image Load File must mirror the name of the delivery volume and should have a .LFP, or .OPT extension.
- The volume names must be consecutive (e.g., ABC001, ABC002…). If, for any reason, the volume names are not consecutive, that fact and the reason for the discrepancy shall be promptly disclosed to the party receiving the Documents.
- The Load File must contain one line per image.
- Every image in the delivery volume must be contained in the image Load File. The image key must be named the same as the Bates number of the image.
- Load Files must not span across Media.

## Metadata Load Files

- Metadata files should be encoded in UTF-8 format.
- The Metadata Load File must use the following delimiters: Column delimiter:
    - ASCII 020
    - Text qualifier: ASCII 254
    - New line:  ASCII 174
- Data for Documents must be produced in only one data Load File throughout the productions, unless that Document is noted as being a replacement Document.
- The first record must contain the field names in the order of the data set forth in **Appendix B**.
- All date and time fields must be produced in "MM/DD/YYYY" and "HH:MM:SS AM/PM (EST)" format, null dates will be blank
- A carriage-return line-feed must be used to indicate the start of the next Document. Load Files must not span across Media.
- The name of the Metadata Load File must mirror the name of the delivery volume, and must have a .DAT extension.
- The volume names must be reasonably consecutive (e.g., ABC001, ABC002…).

**APPENDIX B**
**METADATA FIELDS**

| FIELD NAME | SAMPLE DATA | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|---|
| BEGBATES | ABC000001 | Beginning production number or Bates number for a given file/Document | E-mail and E-Doc |
| ENDBATES | ABC000002 | Ending production number or Bates number for a given file/Document | E-mail and E-Doc |
| BEGATTACH | ABC000001 | Beginning production number or Bates number for the attachment range | E-mail and E-Doc |
| ENDATTACH | ABC000015 | Ending production number or Bates number for the attachment range | E-mail and E-Doc |
| CUSTODIAN(S) | Smith, John; Brown, Julie | Name of person or other data source (non-human) from where Documents/files are produced. *Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions* | All |
| AllCustodians | | List of all custodians associated with Document, i.e. "Custodian" + "Other Custodian" values delimited by semi-colon. | All |
| DocumentType | | Descriptor for the type of Document: **"E-document"** for electronic Documents not attached to e-mails; **"E-mail"** for all e-mails; **"E-attachment"** for files that were attachments to e-mails; and **"Physical"** for Hard-Copy physical Documents that have been scanned and converted to an electronic | All |

| FIELD NAME | SAMPLE DATA | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|---|
| SUBJECT/Title | Meeting Minutes | Subject line extracted from e-mail message or title from operating system Metadata | E-mail and E-Doc |
| MSGID | | Email system identifier assigned by the host email system. This value is extracted from parent message during processing | E-mail |
| PST/OST filename | | PST/OST filename | E-mail |
| Folder | | Folder location of the e-mail within the PST/OST | E-mail |
| FROM | Smith, John | Sender | E-mail |
| TO | Jones, Tom; Brown, Julie | Recipient | E-mail |
| CC | Cain, John | Copyee | E-mail |
| BCC | Stevens, Lisa | Blind Copyee | E-mail |
| PAGES | 12 | Number of pages in the Document | E-Doc |
| VOLUME | 2 | Number on production Media or number of online transmission | All |
| PARENTMSGID/Group ID | | Where the item is an email which is a REPLY or FORWARD, the MSGID of the original email which was REPLIED to or FORWARDED | E-mail |
| DATESENT | 02/08/2008 08:59 | Sent date of an email message in the following format: MM/dd/yyyy MM is month | E-mail |

| FIELD NAME | SAMPLE DATA | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|---|
| TIMESENT | 08:59 | Sent time of an email message in the following format:<br><br>HH:mm<br><br>mm is minutes | E-mail |
| DATERCVD | 02/08/2008 | Received Date an email message was received in the following format: MM/dd/yyyy<br><br>MM is month | E-mail |
| TIMERCVD | 08:59 | Received time an email message was received in the following format:<br><br>HH:mm<br><br>mm is minutes | E-mail |
| E-mail Outlook Type | .msg | Type of Outlook item, e.g., e-mail, calendar item, contact, note, task | Outlook or similar system |
| Importance | High Importance | Indicates priority e-mail | E-mail |
| AUTHOR[1] | Smith, John | Name of person who created Document | E-Doc |
| DATECRTD | mm/dd/yyyy | Creation Date | E-Doc |
| TIMECRTD | 0:00 AM/PM | Creation Time | E-Doc |
| LASTEDITEDBY | John Smith | Last editor extracted from Document Metadata | E-Doc |
| FILENAME | October Agenda.doc | Original file name of native Document | E-Doc |

---

[1] The parties acknowledge that the Author Metadata field may not reflect the actual author of Document.

| FIELD NAME | SAMPLE DATA | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|---|
| FILE PATH(S) | C:\My Documents\Agenda | Pathway(s) for Documents, including unproduced duplicates; values, delimited by semi-colons, corresponding to ALLCUSTODIANS values | E-mail and E-Doc |
| TEXT PATH | D:001\RET000005 .txt | Relative path to Document level text file | E-mail and E-Doc |
| DATE CREATED | 02/08/2008 | Date Document was created in the following format MM/dd/yyyy MM is month | E-Doc |
| TIME CREATED | 08:59 AM | Time the Document was created in the following format HH:mm mm is minutes | E-Doc |
| DATE LAST MODIFIED | 02/08/2008 | Date the Document was last modified in the following format MM/dd/yyyy MM is month | E-Doc |
| TIME LAST MODIFIED | 08:59 AM | Time the Document was last modified in the following format HH:mm mm is minutes. | E-Doc |
| FILEEXT | Msg | File extension of native Document | E-mail and E-Doc |
| FILESIZE | 50kb | Size of the original email or e-Document | E-mail and E-Doc |
| DOCUMENT TYPE | Application/ms word | Describes the type of Document. (mime type) | E-mail and E-Doc |
| PAGE COUNT | 16 | Number of pages for the Document | All |
| HASH | d131dd02c5e6eec5 694d0 698aff85c2fsch587 6217e ab40045733b8fb78 9 | MD5 or SHA1 Hash Value | E-mail and E-Doc |

| FIELD NAME | SAMPLE DATA | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|---|
| NATIVEFILE PATH | D:\001\ABC000005.xls | Path or hyperlink to Documents being produced in native file format | Native |
| CONFIDENTIALITY | Confidential | Indicates the confidentiality designation of the produced Document pursuant to any applicable Protective Order | All |
| ParentDate | mm/dd/yyy | DOCDATE of the parent item | All |
| Exceptions | | Y for Documents that were processing or extractions exceptions, blank/null if not present | All |
| Date Last Printed | mm/dd/yyyy | Date the Document was last printed | All |
| REDACTION | Yes | Indicates whether the Document is redacted | All |
| RedactionReason | Privilege | Basis of redaction. If more than one, separate reasons by semi-colons | All |

# EXHIBIT 6

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: PARAQUAT PRODUCTS LIABILITY LITIGATION | Case No. 3:21-md-3004-NJR |
| This Document Relates to All Cases | MDL No. 3004 |

## ORDER REGARDING PRESERVATION AND PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

**ROSENSTENGEL, Chief Judge:**

Pursuant to Federal Rule of Civil Procedure 26 and the agreement of the parties, the Court enters this order regarding the preservation and production of documents and electronically stored information ("ESI") in this case ("Order").

### I.     In General

1.     The purpose of this Order is to facilitate the timely, efficient, and economical production of discoverable and responsive documents and ESI in this case.

2.     This Order shall be binding on all parties to this case (including any parties substituted or appearing in MDL No. 3004, and the parties to any case that is consolidated into MDL No. 3004, after this Order is entered) and their attorneys of record, and its provisions shall govern the preservation and production of documents and ESI in this case unless and except to the extent that the parties (or the affected parties) otherwise agree in writing or the Court otherwise orders. Additionally, any obligations set forth in this Order, to the extent they differ from the *Hoffmann* Protective Order, shall apply only to document productions after entry of this Order.

3.      The designation of documents and ESI produced in this case as containing Confidential Information and any restrictions on the use and disclosure of same shall be governed by a separate protective order entered by the Court and incorporated herein. The parties are not aware of, and do not intend, any conflict between the treatment of Confidential Information pursuant to this Order and the protective order.

4.      This Order is not intended and shall not be construed as a ruling by the Court on the discoverability, relevance, authenticity, or admissibility of any documents, data, or information in this case. All objections to discovery requests are expressly preserved and shall be raised in due course as permitted by the rules. With the exception of actions this Order expressly requires a producing party to take and information it expressly requires a producing party to disclose or produce to a requesting party, it is not intended and shall not be construed as a ruling by the Court on the subject matter or temporal scope of permissible discovery in this case or as a determination by the Court about whether the likely burden or expense of any proposed discovery outweighs the likely benefit, taking into account the factors set forth in Fed. R. Civ. P. 26. A party may raise any of these issues with the Court by timely objection or motion.

5.      This Order shall not preclude any party from raising any proper objection to the admissibility at trial of any document or ESI produced in this case.

6.      This Order is not intended to define all the rights and obligations of the parties regarding the preservation of potentially discoverable documents and ESI or the production in this case of discoverable and responsive documents and ESI, to narrow or enlarge any party's obligation under applicable law to preserve potentially discoverable

documents and ESI, or to limit or enlarge any remedy that may be available for the breach of any such obligation.

     7.    To further facilitate the timely, efficient, and economical production of documents and ESI in this case and to limit the Court's involvement in the discovery process to circumstances where such involvement is necessary, the parties (or the affected parties) may at any time, by an agreement confirmed in writing, waive, modify, or resolve any ambiguity in any provision of this Order.

     8.    No motion seeking the waiver, modification, or construction of any provision of this Order, or any relief expressly authorized by or otherwise based on any provision of this Order, shall be filed until the party seeking such relief has complied with the Court's rules and/or orders regarding meet-and-confer conferences.

     9.    The Syngenta Defendants and the Chevron Defendants have previously made voluminous productions of documents in the *Hoffmann, et. al. v. Syngenta, et al.*, St. Clair County, Illinois, Cause No. 17-L-4517 case, including re-productions of materials from litigation involving the herbicide atrazine.[1] To the extent any documents, ESI, or other materials produced in *Hoffmann* are re-produced in this litigation, neither Syngenta nor Chevron is under any obligation to produce those materials in a manner different from how they were produced in *Hoffmann*. This paragraph does not, however, bar

---

[1] Pursuant to the *Hoffmann* 9/11/2018 Protective Order, documents from the following cases were deemed to have been produced in *Hoffmann*: (i) *Holiday Shores Sanitary District v. Syngenta Crop Protection, Inc., et al.*, Madison County, Illinois, Cause No. 2004-L-710; (ii) *City of Greenville, Illinois, et al. v. Syngenta Crop Protection, Inc., et al. and Syngenta AG*, U.S. District Court for the Southern District of Illinois, Cause No. 10-cv-188-JPG-PMF; and (iii) *Doe, James, et al. v. Syngenta Crop Protection, LLC, et al.*, St. Clair County, Illinois, Cause No. 13-L-425.

limited requests for data fields identified in Appendix 1 that are missing from any ESI materials produced in *Hoffmann*, requests for natives or color copies, or the ability of the parties to address other production issues.

## II.     Definitions

10.     For purposes of this Order and any anticipated agreements relating to the production of ESI, the following definitions shall apply, unless any such definition conflicts with the Federal Rules of Civil Procedure, in which case, the Rules shall govern.

a.     *Cache file* means a copy of data created by a computer system to a temporary location or "cache" that allows frequently used data to be accessed more quickly by the computer.

b.     *Case* means the above-captioned lawsuit.

c.     *Chat* means any form of communication over an intranet, the internet, or other network, including instant messaging and video chat, that offers real-time transmission of text messages or video from sender to receiver, whether point-to-point from a sender to one receiver, or multicast from one sender to many receivers, whether such communications are transmitted over a party's or third-party's network and whether facilitated by an application residing on a party's or a third-party's network or device.

d.     *Cookie file* means a file that a web browser creates on a user's computer system that a website uses to identify the user and information about the user.

e.     *Custodian* means a person who had or has possession, custody, or control of documents or ESI.

f.    *Document* means any written, typed, printed, recorded, imaged, or graphic information or data, including ESI.

g.    *Electronically stored information* or *ESI* means any writing, drawing, graph, chart, photograph, sound recording, image, and other data or data compilation stored in any medium from which such information can be obtained either directly or, if necessary, after translation by the producing party into a reasonably usable form, including any hard-copy document scanned and stored electronically as a static image.

h.    *Extracted text* means a file or files containing text extracted from a document, and shall include all available information contained in the document's body and in any header, footer, comments, and notes that are part of or appended to the document.

i.    *Family* means a group of documents that includes a "parent" document such as an email, memorandum, or report and one or more "child" documents such as attachments or embedded files. A document family need not include .gif or .jpeg files with no substantive content, such as banners and logos.

j.    *Hard copy documents* means documents that are maintained in the ordinary course of business in a tangible format, such as paper or micro fiche. The generic term "documents" shall include hard copy and electronic documents.

k.    *Hash value* means the unique numeric value identifying a specific document, generated by a standard algorithm disclosed by the parties.

l.    *Load file* means an electronic file containing information identifying and describing a production set of scanned documents or processed ESI, including where

individual pages or files belong together as documents, associating attachments with their parent documents, associating documents with members of their document family, and identifying where each document begins and ends, and containing information about the individual documents, including any extracted or user-created metadata and OCR or extracted text.

m.     *Media* means a disc, tape, solid-state drive, computer, or other device used to store data.

n.     *Metadata* means information describing characteristics of a file, generated by the application that created or modified it or generated automatically by a computer or network operating system on which the file is located.

o.     *Native format* means the format in which a file was originally created or modified (in contrast to a static image, such as a .tiff or .pdf file, of a file originally created by a different application).

p.     *Networked* or *shared storage system* means any physical or virtual data storage device that is accessible to multiple users.

q.     *OCR file* means a searchable text file created by an optical character recognition application from a static image or scanned hard-copy document.

r.     *Person* means an individual; a private or public for-profit or non-profit corporation, company, partnership, firm, association, cooperative, foundation, business trust, or other organization; a unit of government, government agency, department, or board, or other public entity; or a college, university, or school or department thereof.

s.     *Preserve* or *preservation* means to prevent the destruction, alteration, deletion, shredding, incineration, wiping, or theft of documents or ESI.

t.     *Produce* and *production* mean the transmission or delivery of documents by one party to another party, whether voluntarily or in response to a formal or informal request, and the transmission or delivery of documents by a third party to a party, whether voluntarily or pursuant to subpoena, for the purpose of discovery in this case.

u.     *Producing Party* means the Party with the obligation to produce ESI.

v.     *Receiving Party* means a Party to whom ESI is produced to.

w.     *Rolling production* means a process in which a producing party responds to a request for production incrementally, by making a series of deliveries of responsive documents and ESI to the requesting party.

x.     *Search term* means a word or string of words or phrases related by proximity or search operators for the purpose of identifying potentially discoverable ESI.

y.     *Specified Time Period* means the period of time for which documents or ESI created, revised, modified, saved, sent or received may be subject to production. The specified time period may vary by party, issue, subject matter, or other factors, and will be determined either by agreement of the parties, or by order of the Court.

z.     *Static image* means a representation of ESI produced by converting a native file or a hard copy document into a standard image format, such as Tagged Image File Format (TIFF), Portable Document Format (PDF), or Joint Photographic Experts Group (JPEG) format, which can be displayed and printed on multiple computer platforms using a commonly available application.

### III.     Preservation

11.     The parties shall preserve all discoverable or responsive documents and ESI reasonably expected to exist, including any metadata that may exist. If any such documents and ESI are likely contained on a source that a party identifies as not accessible, the parties will meet and confer with respect to the preservation requirements, if any, that the party should undertake with respect to any sources that are not accessible.

12.     The parties recognize that platform changes, upgrades, and other system modifications are often necessary for business or security purposes, and the parties will use their best efforts to avoid altering potentially discoverable ESI prior to collection. If a party intends for business purposes to retire a source of potentially responsive documents or ESI prior to collection, it shall give reasonable notice to all liaison counsel in writing, including a description of the source in question, the nature of the potentially responsive documents and ESI it contains, and the location of identical, accessible ESI (if any), and shall allow a reasonable time thereafter for any objections.

13.     Parties have no obligation to preserve ESI created automatically by the routine operation of a computer system or application, including metadata not listed in Appendix 1, cookie files, cache files, temporary system files, and ESI filtered out by an automatic spam or virus filter. To the extent a party knows of ESI in its custody or control that are discoverable or responsive to a request for production then this paragraph shall not relieve them of their obligation to preserve this information. Furthermore, no party shall be in violation of this protocol as a result of any of the following actions undertaken

in good faith and in the ordinary course of business and not for any reason related to this

case:

      a.     inputting, accessing, updating or modifying a database, provided the underlying potentially discoverable data is not altered, deleted, modified or rendered inaccessible prior to collection;

      b.     editing, modifying, or taking down an internet, extranet, or intranet site provided all potentially discoverable documents and ESI are preserved and remain accessible;

      c.     editing or revising a discoverable document or discoverable ESI, as long as an unedited or unrevised original version is preserved.

## IV.    Supplementation of *Hoffmann* Production; Rolling Productions

14.    The Defendants will not be required to respond to requests or re-produce documents that are duplicative of the documents already produced in *Hoffmann*. The parties will meet and confer regarding the scope of any productions and present any disputes to the Court for prompt resolution.

15.    A producing party who intends or reasonably expects to comply with a requesting party's request for production through the use of rolling production shall notify the requesting party of its intention or expectation during the meet-and-confer discussions noted above, on a timeline consistent with the Court and the Parties' mutual desire for a prompt resolution of this action. A producing party who is using a rolling production will notify the receiving party when the production is substantially complete.

## V.    Search Methodologies for ESI Productions

16.    Prior to engaging in any search methodologies, including, but not limited to, search terms, technology assisted review, or other methods, the parties will meet and confer and attempt to reach agreement. The parties shall in good faith attempt to reach

agreement on protocols, such as hit reports or TAR validation, for identifying, searching, and review of documents that may be produced prior to any productions. If no agreement can be reached, then the parties may present the dispute to the Court. Each party may use one or more methods to collect, search, and review documents for production, and to produce discoverable non-privileged ESI that is responsive to another party's request for production. To the extent the producing party knows of documents and data in its custody or control that are discoverable or responsive to a request for production, then its use of one or more of these methods, shall not relieve it of its obligation to produce that information.

## VI.    Production of Hard-Copy Documents

17.    The following production specification shall apply to paper documents, photographic slides, negatives, and prints, and other documents that are on paper or in any other tangible form ("hard copy documents"), and were scanned in electronically for review and/or production in this case or any other litigation or in response to a subpoena.

### A.    Production Format

18.    Black-and-white ("B&W") hard-copy documents shall be produced as single-page, B&W group IV TIFFs imaged at 300 dpi. To the extent that a static image has been created of any hard copy document containing color and/or grayscale, such static image containing color and/or grayscale shall be produced. If not previously imaged in color or grayscale, the parties will use reasonable efforts to produce hard copy documents containing color and/or grayscale as static images with grayscale and color, respectively; however, a party may, unless previously imaged in color and/or grayscale, produce

documents containing color in grayscale if it determines that the color-portion of a document is minimal and that production using grayscale would not in any way affect a reader's understanding of that document (*e.g.*, a letter where the only color included is a corporate logo on the first page). Notwithstanding such a provision, reasonable requests to produce grayscale documents in color shall be accommodated.

19.     Nothing herein shall preclude a party from, at its discretion, producing for inspection hard copy documents for which there are no electronic images or other tangible things in hard copy or tangible form. However, to the extent that a party elects to produce for inspection hard copy documents in tangible form, the producing party shall also make available to the requesting party any existing indices, inventories, lists, catalogs, or other data or documents that identify or describe the documents produced. Nothing in this paragraph, however, prevents a party from asserting undue burden in response to a request for such documents, and nothing in this paragraph waives or dilutes such an objection.

20.     Upon notice from the requesting party that a document or portion thereof is illegible, the producing party shall, if possible, produce a legible copy in the form of either a new TIFF, static image, or hard copy, or, if not possible, explain why a more legible copy of the document cannot be produced. The document's original orientation should be maintained (*i.e.*, portrait to portrait, landscape to landscape). No producing party shall be required to alter or re-create any document for which no grayscale or color version is in the party's possession or control or for which the original hard copy document is illegible.

### B.  Bates Numbers, Designations, and Redactions

21.  Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions shall be burned into the image. TIFF image files shall be provided in an "Images" folder.

22.  For productions after the *Hoffmann* productions, any bates numbers previously assigned to a document as a result of a legal, regulatory, or governmental production shall be included, to the extent such document is collected from such a production. The start and end bates numbers from the production in another matter shall be added as distinct metadata fields for these document and be included in the production file.

### C.  Notes and Attachments

23.  If any original hard copy document has any note or attachment affixed to it, the producing party shall scan and produce copies of the original hard-copy document along with all notes and attachments to it in the same manner as other documents. If any such note or attachment obscures any information on the original hard copy document, the producing party shall also produce a copy of the original hard-copy document without the note or attachment affixed in order to make the underlying information visible.

### D.  Unitizing Documents

24.  In scanning paper documents, parties shall use their best efforts to ensure that distinct documents are not merged into a single record, and single documents are not split into multiple records (*i.e.*, paper documents should be logically unitized). Within

14 days (or as otherwise agreed) after notice from a requesting party that a document appears to have been unitized incorrectly, the producing party shall either explain why the unitization is correct or produce a correctly unitized replacement.

### E.  Parent-Child Relationships

25.   A producing party shall use best efforts to preserve parent-child relationships (the associations between and among a parent document and its attachments) when scanning hard copy documents. A "parent" document in a production set shall be followed immediately by its "child" or "children." To the extent feasible, each non-privileged document within the family shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family. Notwithstanding the foregoing, a document that is unitized at its lowest binding element (*e.g.*, letter with stapled or clipped attachments) may be scanned as one document, in which case it will be noted by begin and end Bates numbers. If there is any question about unitization or family members of any produced document, the parties shall meet and confer to discuss a remedy.

### F.  OCR for Scanned Hard-Copy Documents

26.   The producing party shall provide for each document an appropriately formatted text file (.txt) of OCR text, named to match the first Bates number of the document. Text files shall be provided in a "Text" folder. If a document is redacted for privilege, the text file shall not contain the text of the redacted portions. If a receiving

party notifies the producing party that a document's OCR text is of poor quality, the producing party will use reasonable efforts to provide a replacement file of better quality or alternatively explain why it is unable to do so.

### G. Search of Hard-Copy Documents, Including Testing and Validation

27.     A producing party may apply search terms and/or advanced analytics to search the OCR text of scanned hard-copy documents for the purpose of screening documents for relevance and responsiveness if the OCR text is of sufficient quality that search terms or advanced analytics can be applied reliably. Subject to section V, the producing party will notify the receiving party if they intend to use search terms for hard copy documents and the parties will meet and confer prior to any such search occurring.

### H. Unique IDs

28.     Each TIFF image shall have a unique filename corresponding to the Bates number of that page. The filename shall not contain any blank spaces and shall be consistently zero-padded (*e.g.*, ABC-000001), taking into consideration the estimated number of pages to be produced. Bates numbers should be in the lower right-hand corner of each page on which they appear, if possible. If a Bates number or set of Bates numbers would otherwise be skipped in a production, the producing party shall fill any gaps with slip sheets so that there are no missing Bates numbers. Bates number prefixes will be consistent across all documents a party produces in the case.

### I. Data load files

29.     Documents shall be provided with an Opticon Cross-Reference File and Concordance data load file using standard Concordance delimiters:

a. Field Separator: ASCII character 20 ("ii");

b. Quote: ASCII character 254 ("p"); and

c. New Line: ASCII character 174 ("®").

30.     Relativity-compatible image and data load files shall be provided in a "Data" folder.

## VII.     Production Format for Future ESI Productions

### A.     In General

31.     Black-and-white ("B&W") documents shall be produced as single-page, B&W group IV TIFFs imaged at 300 dpi. Documents evaluated to contain grayscale or color shall be produced as grayscale static or color images, respectively, at the greater of 300 dpi or their resolution in native format. For native documents that are produced as static images, upon notice from the requesting party that a document or portion thereof is illegible, the producing party shall produce a legible copy in the form of either a new TIFF image, a native file of the illegible document, or shall provide an explanation as to why a legible copy or native file is not available for production. No producing party shall be required to alter or re-create any document for which no grayscale or color version is in the party's possession or control or for which the original native file is illegible. The document's original orientation should be maintained (*i.e.*, portrait to portrait, landscape to landscape). If a document is produced in static image format in accordance with this Order, Bates numbers, confidentiality designations (in accordance with the protective order entered or to be entered in this case), and redactions for privilege shall be burned into the image. TIFF image files shall be provided in an "Images" folder.

32.     All extractable text of native files shall be extracted directly from the native file and shall be delivered in an appropriately formatted text file (.txt) named to match the first Bates number of the document. Text files shall be provided in a "Text" folder. With the exception of spreadsheets, if a document is redacted for privilege, the document shall undergo OCR after redaction in order to remove the redacted text. If a receiving party notifies the producing party that a document's text file is of poor quality, the producing party will use reasonable efforts to provide a replacement file of better quality or alternatively explain why it is unable to do so.

**B.      Unique IDs**

33.     Each image shall have a unique filename corresponding to the Bates number of that page. The filename shall not contain any blank spaces and shall be consistently zero-padded (*e.g.*, ABC-000001), taking into consideration the estimated number of pages to be produced. Bates numbers should be in the lower right-hand corner of each page on which they appear, if possible. If a Bates number or set of Bates numbers would otherwise be skipped in a production, the producing party shall fill any gaps with slip sheets so that there are no missing Bates numbers. Bates numbers shall be unique across the entire production and prefixes will be consistent across all documents a party produces in the case. Any Bates numbers previously assigned to a document in the *Hoffmann* litigation shall contain those Bates numbers. The document's start and end Bates number from *Hoffmann* shall be included as produced fields for the document.

### C.    Parent-Child Relationships

34.    A producing party shall preserve parent-child relationships (the associations between and among a parent document and its attachments) for ESI. If a producing party believes there is a logical or compelling reason to break the parent-child relationship, it shall notify the requesting party of its belief and explain the justification prior to doing so, with a sufficient description of the documents to give the requesting party adequate basis to determine whether to object. A "parent" document in a production set shall be followed immediately by its "child" or "children." Each non-privileged document within the responsive family shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family. A producing party shall identify all documents for which it has broken the parent-child relationship with an explanation of why the relationship was broken and the documents that were not produced. If a receiving party identifies any document for which the parent-child relationship appears to have been broken, the producing party shall explain why the parent-child relationship is correct as produced or shall provide a replacement file with the correct parent-child relationship if it is possible to do so.

### D.    Metadata

35.    Metadata shall be produced for all ESI, whether produced in native format or static image formats (*e.g.*, TIFF) as listed in Appendix 1 to the extent it exists in the file.

If certain metadata does not exist for a particular file, the corresponding metadata field will be blank.

36.     A producing party that redacts or withholds metadata from any field identified in Appendix 1 shall disclose that fact to the requesting party, describing the metadata withheld or redacted, shall explain why any metadata has been withheld, and shall include the redaction on its privilege log and preserve the redacted metadata.

###     E.     Production of documents in native format

37.     The following types of documents shall be produced in native format and linked to the database by the metadata field "NativeLink":

        a.     Spreadsheets (*e.g.*, MS Excel, .CSV);

        b.     Word processing files containing tracked changes or comments;

        c.     Presentation files containing tracked changes, comments, hidden slides, or presenter's notes;

        d.     ESI containing audio or video;

        e.     Structured Databases;

        f.     other files which cannot be reasonably converted to TIFF.

38.     The native file shall be named with the first Bates number of the respective document and any appropriate confidentiality designation (*e.g.*, "BATES_000000 – CONF" or "BATES_000000 – CONF-AEO"). The corresponding load file shall include native file link information for each native file produced.

39.     A requesting party may ask that other specified documents or ESI, including ESI from a database, initially produced in TIFF format be produced in native format in the event that the TIFF format is not reasonably usable. The requesting party

shall identify the documents by Bates numbers. Within 14 days (or as otherwise agreed) after such a request, the parties shall attempt to reach an agreement on the matter, including if it is possible to rectify the issue with the TIFF itself in lieu of producing the native document. If they are unable to do so, either party may move the Court to resolve the disagreement.

40.     Where native files are produced in lieu of TIFF images, each native file shall be assigned a unique Bates number. The producing party shall produce a placeholder (a single-page TIFF slip sheet indicating that the native item was produced) along with the native file. The placeholder shall be branded with the production number in the lower right-hand corner and the phrase "PRODUCED IN NATIVE ONLY" (or a similar phrase), and the name of the file as collected shall be branded in the center of the page. The producing party shall also brand any confidentiality or similar endorsements in the lower left hand corner of the placeholder.

41.     The receiving party may request production of other specified documents or ESI in native format by providing (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format. The producing party shall not unreasonably deny such requests, and within 14 days (or as otherwise agreed) after any such request is made, shall either explain why it will not or cannot comply with the request or produce the native documents with an overlay to ensure that the "NativeLink" entry in the data load file indicates the relative file path to each native file in such production, and all extracted text and applicable metadata fields required under this Order.

### F. Password-Protected Files

42. A party shall attempt to unprotect and image any files protected by password. If it is not possible to do so, or if there is a compelling reason not to do so, the producing party shall produce passwords for any password-protected files if such passwords are available.

### G. Embedded Documents

43. With the exception of small .gif files that are likely to be company logo images, any embedded ESI document (*e.g.*, a spreadsheet embedded within a word processing document) shall be extracted, produced as a separate document, and related back to the top-level parent document (*e.g.*, standalone file, email message, etc.) via the BegAttach and EndAttach fields referenced in Appendix 1. Related documents shall be produced within a continuous Bates range.

### H. Data Load Files

44. Documents shall be provided with an Opticon Cross-Reference File and Relativity data load file using standard Relativity delimiters:

     a.     Column - ASCII 020

     b.     Quote - ASCII 254

     c.     Newline - ASCII 174

     d.     Multi-Value - ASCII 059

     e.     Nested Values - ASCII 092

45. All rows shall contain the same number of delimiters and fields. The multi-value field delimiter must be consistent across all fields. For example, if the "Cc" field contains semi-colons between email addresses, the "Bcc" field should also contain semi-

colons. Relativity-compatible image and data load files shall be provided in a "Data" folder. If parties exchange sample load files, any load-file change request shall be made within 14 days. Nothing in this Order shall preclude the parties from agreeing at any time to make changes to load files.

### I.  De-duplication

46.    A producing party may de-duplicate documents across its custodians at the family-group level using a hash value calculated at the family level and including any blind copy fields. All custodians that were in possession of a de-duplicated document in the metadata will be populated in the ALL CUSTODIANS production field.

47.    The Parties agree that a Producing Party may review only the most inclusive email thread, however a Producing Party shall produce all e-mails separately and not as part of an inclusive e-mail thread.

### J.  Identification of Custodians and Sources

48.    The custodian or originating source of a document or ESI shall be identified in the ALL CUSTODIANS field of the database load file. De-duplicated documents with other custodian values will have those custodian values appended to the ALL CUSTODIANS field. Documents found in the possession, custody, or control of a division, department, group, or other common entity or facility (*e.g.*, office, file room, archive, shared or networked storage, file-share, backup, warehouse, library, or reading room) shall be produced with that entity or facility identified as their custodian. The producing party shall use a uniform description of each particular custodian across productions.

### K. Foreign Language

49. Foreign-language text files and metadata shall be produced with the correct encoding to enable the preservation of the original language. The processing of documents containing a foreign language shall be Unicode compliant.

### L. Date/Time format

50. Dates shall be formatted consistently as MM/DD/YYYY, *i.e.*, a record with a sent date should have the same format in the last modified date field. If a date is unknown or unavailable, or the date field is not populated, the particular date field shall be left blank.

51. Provided that they are consistently delimited in the data, date delimiters, such as slashes and colons, shall be consistent across all fields. In the format of MM/DD/YYYY, there are no spaces and only forward slashes.

52. Times shall be formatted consistently as HH:MM:SS (zzz). If a time is unknown or unavailable, or the time field is not populated, the particular time field shall be left blank.

53. All documents shall be processed to show the date and time in Coordinated Universal Time (UTC).

## VIII. Production Method and Media for Supplementation to *Hoffmann* Production

54. Production media shall always be encrypted and will be sent via SFTP link provided via e-mail at the time a production letter is e-mailed, unless the parties agree otherwise. On the occasion in which a particular production is of a size that would make sending it via SFTP link impractical, the parties may agree to send encrypted physical

media such as a hard drive or USB. Production letters or e-mails will always accompany productions including the name of the matter in which it was produced, the production date, and the Bates number range of the material contained in the production.

55. Passwords for encrypted media will be sent separately from the media itself. Each piece of production media or the electronic transfer of documents must be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the production media, as well as the sequence of the material in that production. Production media must include text referencing the case name and number.

56. Any replacement production media must cross-reference the original production media and clearly identify that it is a replacement and cross-reference the document-number range that is being replaced.

57. All production media capable of write protection should be write-protected before production.

58. The producing party must retain native electronic-source documents for all ESI produced in this litigation until the conclusion of this litigation. The producing party must take all reasonable measures to maintain the original native electronic-source documents in a manner so as to preserve the metadata associated with these electronic materials as it existed at and before the time of production, in the event review of such metadata becomes necessary. The producing party must maintain a cross-reference file from the original documents to the production set of documents.

59.     Production media shall use AES-256 or an equivalent, industry-accepted method of encryption to preserve security of production deliverables.

**M.     Inability to Produce Metadata**

60.     At this time, the parties do not represent that any or all metadata described in this Order exists. During the course of collection, review, and production of documents and ESI, the parties shall determine what metadata exists. If metadata does not exist for any production document, the required production field will be blank.

61.     If data is encrypted when it is produced, the producing party shall transmit the credentials necessary to decrypt the data subsequent to that production.

**IX.     Assertions of Privilege**

62.     Nothing in this Order shall be interpreted to require production of Data protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable protection or privilege.

63.     A party may withhold or redact a portion of a document or ESI if and to the extent that the document or portion redacted is protected by attorney-client privilege, the work-product doctrine, or another applicable privilege.

**A.     Privilege Logs**

64.     To the extent that a document or any portion thereof (including any data from the agreed metadata fields) is withheld from production on the basis of the attorney client privilege, the work product doctrine, or any other applicable privilege, the producing party shall produce a rolling privilege log of withheld and redacted documents within 30 days after the document was withheld from the rolling production.

65.     Privilege logs shall be provided containing the information below (*see* Appendix 2 for privilege log fields):

      a.     Each document listed on the privilege log will be sequentially numbered. If a privilege number is not used for any reason, it shall be identified as "Not Used" on the log.

      b.     Document date (date created or last modified) for non-email messages or date sent for email.

      c.     The identity of each person who sent, authored, signed or otherwise prepared the document, including which were employed and acting as licensed attorneys in good standing, as reflected in the document's metadata.

      d.     The identity of each person designated as an addressee or copyee, including which, if any, were employed and acting as licensed attorneys in good standing, as reflected in the document's metadata.

      e.     The identity of each person designated as a blind copyee, including which, if any, were employed and acting as licensed attorneys in good standing, as reflected in the document's metadata.

      f.     A general description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the general subject matter of the document and the basis of the claim of privilege or other protection from disclosure, and the location of any redaction if the redaction was applied to a native file.

      g.     The nature of the privilege or protection asserted (*i.e.*, attorney-client privilege; work product doctrine), and if no privilege claim is asserted, the basis of withholding the document or any portion thereof.

      h.     For documents which are produced in redacted form, the location(s) of the redaction(s) shall be logged using the production bates numbers assigned to the redacted page(s).

      i.     Nothing in a-h will relieve a party of reviewing the actual document(s) for privilege, and parties are not permitted to solely utilize metadata for privilege review.

66.     Where multiple email messages are part of a single chain or "thread," a party is only required to include on a privilege log the most inclusive message ("Last In

Time Email") and need not log earlier, less inclusive email messages or "thread members" that are fully contained within the thread, provided that the log entry includes the names of the authors, addressees, and recipients (including copyees and blind copyees) for all thread members, that the description of the thread include the factual bases sufficient to support the claim of privilege for each thread member over which privilege is asserted, and that the log entry include the privilege designations applicable to any thread members.

67.     All persons/entities identified on the log who were employed or retained for the purpose of rendering legal advice, and duly licensed to practice law and in good standing as of the date of the document for which privilege is asserted shall be identified on the privilege log by a "*" following their name.

68.     After the receipt of a privilege log, any party may dispute a claim of privilege. Prior to seeking Court intervention, the party disputing, questioning, or otherwise objecting to a claim of privilege shall provide in writing the identification of the documents or category of documents for which it questions the claim of privilege and the reasons for disputing, questioning, or otherwise objecting to the privilege designation. Within fourteen (14) days, the party that designated the documents as privileged will provide a written response explaining the basis for its claim or privilege, or if applicable, de-designating documents as privilege and producing such documents in accordance with this Order. Thereafter, if the parties continue to disagree, they will then then meet and confer in good faith as to the claims of privilege. If agreement has not

been reached after fourteen (14) days, the parties shall submit the dispute to the Court for resolution.

**B.    Documents Presumptively Excluded from Privilege Logs**

69.    The following types of communications shall be presumed to be protected by the attorney-client privilege or to constitute attorney work product. Documents and ESI consisting of such communications need not be included on a party's privilege log:

    a.    Communications exclusively between or among a party's attorneys;

    b.    Outside counsel files;

    c.    Communications exclusively between plaintiffs and their attorneys after September 15, 2017;

    d.    Communications exclusively between defendants and their attorneys after September 15, 2017;

    e.    Communications exclusively between or among two or more defendants' attorneys pursuant to a joint defense agreement regarding this case;

    f.    Communications exclusively between or among a party's attorneys and expert consultants hired for purposes of litigation related to paraquat;

    g.    Work product of any party's attorney(s) created after September 15, 2017.

As used in this paragraph, a party's attorneys include non-employee attorneys retained in anticipation of or connection with this litigation, and in-house attorneys authorized to act and acting in the capacity of attorneys.

70.    The parties further agree to meet and confer regarding any proposed additional categories of documents that presumptively need not be logged.

## X.     Assertions of Foreign Data Privacy Laws and Regulations

71.     To the extent that the document or portion redacted contains information exempt from disclosure in accordance with applicable foreign data privacy laws and regulations the parties agree to meet and confer in good faith regarding potential redactions, logging, and production.

## XI.    Disclosure of Attorney-Client Privileged or Work-Product Protected Information

### A.     Clawback Procedures

72.     Pursuant to Federal Rule of Evidence 502(d), a producing party that discloses information subject to a claim of attorney-client privilege, the work-product doctrine, or other applicable privilege does not as a result waive or forfeit any such claim that it would otherwise be entitled to assert regarding that information. A separate Order regarding Federal Rule of Evidence 502(d) shall govern this procedure. The parties are not aware of, and do not intend, any conflict between this protocol and an Order regarding the Clawback procedure pursuant to Federal Rule of Evidence 502(d).

## XII.   Documents not subject to this protocol

73.     Documents produced by Plaintiffs in connection with the Plaintiff Assessment Questionnaire ("PAQ") pursuant to Case Management Order No. 7 (ECF No. 328) are not subject to the requirements of this protocol. Such documents shall be produced in accordance with the capabilities of the portal established for processing completed PAQs. In all events, such documents must comply with the requirements of this protocol with respect to containing a unique Bates number burned onto the image of

the document. The Bates number requirement for these documents may be satisfied if each page is labeled as follows [PAQ#]_[Unique Document ID Number]_[Page Number].

74.    As contemplated by Case Management Order No. 7, certain Plaintiffs will later be required to complete a Plaintiff Fact Sheet ("PFS") and produce the documents associated with a PFS. Document productions required by the PFS, as well as any document productions made by Plaintiffs after completion of the PAQ must comply with this protocol. Furthermore, to the extent a Plaintiff is selected to complete a PFS, such a Plaintiff must update the PAQ production to ensure compliance with this protocol.

## XIII.  Apportionment of Discovery Costs

75.    Absent an Order of the Court to the contrary, each party shall be responsible for the cost of preserving and producing documents and ESI that are in its possession or control.

**IT IS SO ORDERED.**

**DATED:  October 27, 2021**

_____

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

# EXHIBIT 7

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY
# NEWARK DIVISION

| | |
|---|---|
| IN RE: PROTON-PUMP INHIBITOR PRODUCTS LIABILITY LITIGATION (NO. II) | 17-MD-2789 (CCC)(MF)<br><br>(MDL 2789) |
| *This Document Relates To: ALL ACTIONS* | ORDER REGARDING THE FORMAT OF PRODUCTION OF HARDCOPY DOCUMENTS AND ELECTRONICALLY STORED INFORMATION |

The Parties hereby agree to the following protocol for production of electronically stored information ("ESI") and paper ("hardcopy") documents (collectively "Documents") (the "Protocol" or "Discovery Order").[1] This Protocol, as well as the Protective Order entered by the Court, shall govern all production in the above-captioned matter, including any appeal therefrom and any other proton pump inhibitor litigation filed in or transferred to MDL 2789 (collectively "the Litigation"). Nothing in this Protocol shall limit or waive a Party's right to seek or object to discovery as set out in applicable rules, to rely on the protective order entered in this action concerning protection of confidential or otherwise sensitive information, or to object to the relevance, admissibility or authenticity of any Document produced in accordance with this Protocol.

## A.    GENERAL AGREEMENTS

1.    Ongoing Cooperation among the Parties

The Parties are aware of the importance the Court places on cooperation and commit to continue to consult and cooperate reasonably as discovery proceeds.

2.    Preservation

The Parties represent that pursuant to Federal Rule of Civil Procedure 26(b)(1), that they have taken reasonable and proportional steps to preserve reasonably accessible

---

[1] The Parties acknowledge that defendants AstraZeneca LP, AstraZeneca Pharmaceuticals LP (collectively, "AstraZeneca") have previously collected, processed and produced Documents in another litigation involving Nexium and Prilosec. AstraZeneca will produce previously produced Documents of interest (i.e. INDs, NDAs). Plaintiffs and AstraZeneca are currently conferring on other previously collected and/or produced Documents that will be re-produced in this Litigation and will meet and confer to determine the parameters of production to be applied to these Documents; however, AstraZeneca shall not be required or obligated to redo prior discovery to the extent there are differences with this Protocol.

1

Documents that are relevant to the claims and defenses in the Litigation, including implementation of a litigation hold.

Activities undertaken by or at the direction of counsel in compliance with the duty to preserve information are protected from disclosure and discovery under the Federal Rule of Civil Procedure 26(b)(3).

3.    <u>Proportionality</u>

In accordance with the Federal Rules, the Parties agree to seek discovery regarding any non-privileged matter that is relevant to any Party's claim or defense and proportional to the needs of the case. Identification of relevant Documents for collection and production shall occur through identification of appropriate Custodians and Non-Custodial Document Sources (as defined below) (collectively "Sources") and search parameters pursuant to meet and confer. The Parties will continue to consult and cooperate reasonably throughout discovery, to discuss, as appropriate, legitimate questions or issues (if any) that arise.

a.    <u>Non-Discoverable ESI.</u> The Parties acknowledge that some ESI may be deemed inaccessible and not discoverable and 30(b)(6) depositions on ESI have been requested by Plaintiffs. The Parties shall meet and confer on the extent to which depositions are necessary and the extent to which the following categories of information may be non-discoverable. If there are any issues concerning the discoverability of the categories of information listed below the Parties will bring any disputes to the attention of the Court.

i.    Documents deleted in the normal course of business before the time a preservation obligation in this Litigation came into effect;

ii.    Backup data files that are maintained in the normal course of business for purposes of disaster recovery, including (but not limited to) backup tapes, disks, SAN, and other forms of media, and that are substantially duplicative of data that are more accessible elsewhere;

iii.    Deleted, "slack," fragmented, or unallocated data;

iv.    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

v.    On-line access data such as (without limitation) temporary internet files, history files, cache files, and cookies;

vi.    Data in metadata fields frequently updated automatically, such as last-opened or last-printed dates;

vii.    Electronic data (e.g., call logs, email, calendars, contact data, notes, and text messages) on or sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices);

viii.    Voicemail not retained in the ordinary course of business;

2

ix. Instant messages not retained in the ordinary course of business;

x. Server, system, network or software application logs;

xi. Data remaining from systems no longer in use that are unreadable on the systems in use;

xii. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

xiii. Structural files not material to individual file contents that do not contain substantive content (e.g. .CSS, .XSL, .XML, .DTD, etc.).

xiv. Documents, emails, or data maintained on third-party servers (e.g., Secure Email servers or systems, Dropbox).

b. <u>Disaster-Recovery Backup Data.</u> Absent a Party's specific written notice for good cause, no Party shall be required to modify or suspend procedures, including rotation of backup media, used in the normal course of business to back up data and systems for disaster recovery purposes. The Parties shall meet and confer regarding the extent to which historical and/or legacy data and systems have been preserved and are accessible.

4.   <u>No Designation of Discovery Requests</u>

In accordance with Federal Rule of Civil Procedure 34(b)(2)(E)(i), the Producing Party shall produce Documents as they exist in the ordinary course of business and therefore shall not be required to organize or label productions to correspond to specific discovery requests. Any Custodial Files or Non-Custodial Document Sources (collectively "Sources") will be produced in the reasonably usable and searchable format as set forth herein, and each production will be accompanied by a production log, in native Excel spreadsheet format, identifying the Bates range of each production that corresponds to each Source.

Should the Requesting Party make a reasonable request for identification by Bates number of groups of Documents that the Producing Party can easily and readily identify, the Producing Party shall cooperate and provide such information as soon as reasonably practicable considering the scope of the request and the volume of Documents implicated.

5.   <u>Sources</u>

Following service of Plaintiffs' Discovery Requests, Plaintiffs and counsel for the respective Defendants will meet and confer regarding the "Sources" (Custodians and Non-Custodial Document Sources) that contain information responsive to Plaintiffs Discovery Requests. Counsel for the respective Defendants will disclose to Plaintiffs the "Non-Custodial Document Sources" (those managed or accessed by multiple persons) and employees most likely to possess relevant Documents ("Custodians"), whose Custodial Files will be subject to production. Plaintiffs and counsel for the respective Defendants will continue to meet and confer

3

regarding production of any additional Custodians and Non-Custodial Document Sources reasonably sought by Plaintiffs to ensure discovery is reasonable and proportional. The respective Defendants will produce to Plaintiffs relevant, non-privileged Documents from Non-Custodial Document Sources and the individuals' Custodial Files.

The Parties shall meet and confer individually regarding Plaintiffs' relevant Document sources and Defendants' relevant Custodial Files and Non-Custodial Document sources. If there are any disagreements concerning Document sources, the Parties will bring any disputes to the attention of the Court.

a. AstraZeneca defines "Custodial File" to include: Documents maintained in the Custodian's hard copy files; Documents maintained on the Custodian's AstraZeneca issued computer (desktop and/or laptop) and in the Custodian's allocated personal storage space(s); and emails maintained in the Custodian's mailbox in AstraZeneca's Office 365 environment as well as the Custodian's email archives (if applicable).

b. Defendants Takeda Pharmaceutical Company Limited, Takeda Pharmaceuticals U.S.A., Inc. (f/k/a Takeda Pharmaceuticals North America, Inc.), Takeda Pharmaceuticals International, Inc., Takeda Development Center Americas, Inc. (f/k/a Takeda Global Research & Development Center Inc.), Takeda California, Inc. (f/k/a/ Takeda San Diego, Inc.), and Takeda Pharmaceuticals America, Inc. (collectively "Takeda") define "Custodial File" to include, if any: Documents maintained in the Custodian's hard copy files; Documents maintained on the Custodian's Takeda issued computer (desktop and/or laptop); Documents in the Custodian's allocated personal storage space(s); and emails and attachments from the Custodian's active email account provided by Takeda, email archives, and the Custodian's latest email box from retention tapes already restored.

c. Defendants Pfizer Inc., Wyeth LLC, Wyeth Pharmaceuticals Inc., and Wyeth-Ayerst Laboratories. (collectively "Pfizer/Wyeth") define "Custodial File" to include: (i) hard copy files that can be reasonably identified as belonging to the Custodian; (ii) documents on the personal computer hard drive(s) used by the Custodian while employed by Pfizer/Wyeth; (iii) e-mail and attached documents, including centralized e-mail storage, from the Custodian's e-mail account(s) provided by Pfizer, including email archives.

d. Defendants The Procter & Gamble Company and The Procter & Gamble Manufacturing Company (collectively "P&G") define "Custodial File" as Documents, if any, maintained in the Custodian's hard copy files, on the Custodian's issued computer, in the Custodian's allocated personal storage space, or in the Custodian's email mailbox.

e. Any defendants not listed in this order shall meet and confer with Plaintiffs regarding how they define Custodial Files.

4

## B.    ELECTRONICALLY STORED INFORMATION

1.    Production in Reasonably Usable Form

a.    Without waiving any available objection to any request for production, the Parties shall produce ESI in reasonably usable form. Except for Documents produced in native format as ordered herein or as agreed hereafter by the Parties, such reasonably usable form shall be the single-page TIFF-image format with extracted or OCR text and available metadata as set out in Attachment A (defined as "TIFF-Plus format"), which is incorporated in full in this Protocol. Notwithstanding the foregoing, the Receiving Party, for good cause explained in the request, may request native format versions of specifically identified ESI produced originally in TIFF-Plus format. Provided that the requests: (1) are reasonable in volume; (2) specifically identify by Bates number the ESI produced originally in TIFF format; and (3) seek files that are not redacted or otherwise cannot be produced in their native form, the Producing Party shall respond in good faith to such requests. The Parties will negotiate in good faith regarding the Requesting Party's reproduction request and whether cost shifting is appropriate.   For documents produced in native format, the Producing Party will provide slipsheets in the format set forth in Appendix A, Paragraph A.15

b.    Redactions. As set forth in the governing Protective Order, the Producing Party may redact from any TIFF image, metadata field, or native file material that is protected from disclosure by applicable privilege or immunity, that is governed by the EU Data Privacy Directive or other applicable privacy law or regulation, private personal information of employees or other persons; commercially sensitive or proprietary non-responsive information, or other information that the Protective Order entered allows to be redacted.

The Producing Party shall identify redactions clearly on the face of any TIFF image, either with "Redacted" or the redaction reason on the face of the Document if space allows (e.g.: Privilege, Voluntary Reporter). In lieu of a redaction log, the Producing Party may provide a metadata field in the .dat file that identifies the type(s) of redactions that appear on a Document (e.g. Attorney Client, Work Product, etc.).

c.    Color. Unredacted documents shall be produced in color by virtue of their native format production.  With the exception of redacted PowerPoint files, redacted documents shall be produced in black and white TIFF-Plus format.

Redacted PowerPoint documents shall be produced in color format if the original native format version contained color text or images. The Receiving Party may also make reasonable requests that specific Documents produced in TIFF-Plus format be produced in color on a document-by-document basis.

5

2.    Electronic Spreadsheets, PowerPoint, Word, SAS, PDF, and Multimedia Files

For all Defendants, PowerPoints, Word, PDF Files, electronic spreadsheets (*e.g.*, Excel), SAS Files (to the extent they are produced), and Multimedia Files shall be provided in native format, unless they are authorized to be redacted. If a Defendant so chooses, it also may produce complete TIFF images of PowerPoints, Word, and PDF Files.

Where redactions are necessary, the Producing Party either shall produce the redacted Document in the reasonably usable form set out in Attachment A, or shall produce the redacted copy in native format.[2] Certain types of files, such as system, program, and sound files, will not be amenable to conversion into anything meaningful in TIFF format. Relevant files that cannot be provided in a meaningful TIFF format will be produced in native form with a TIFF slip sheet. Examples of file types that may not convert include but are not limited to file types with the following extensions:

> \*.exp \*.ilk \*.res \*.trg \*.tlh \*.idb \*.pdb \*.pch \*.opt \*.lib \*.cab \*.mov
> \*.mp3 \*.swf \*.psp \*.chi \*.chm \*.com \*.dll \*.exe \*.hlp \*.ivi \*.ivt \*.ix
> \*.msi \*.nls \*.obj \*.ocs \*.rmi \*.sys \*.tmp \*.tff \*.vgx \*.wav \*.wpg \*.iso
> \*.pdb \*.eps \*.mpeg \*.mpg \*.ram \*.rm \*.psd \*.ai \*.aif \*.bin \*.hqx \*.snd
> \*.mpe \*.wmv \*.wma \*.xfd \*.db \*.xml

3.    Structured Data from Enterprise Databases and Database Management Systems

The Parties shall meet and confer regarding production format of any structured data and/or non-standard data requests. The Parties will work to identify an appropriate format that will allow the Requesting Party to use and search the data in a meaningful way, such as an already existing and reasonably available report, or an export from the original database of discoverable information in a format compatible with Microsoft Excel or Microsoft Access produced in native format. A Producing Party shall neither be obligated to create and/or produce a copy of a database, nor provide another Party with access to a database.

Structured data from database and database management systems that has already been collected and or produced in other litigations or for some other purpose as of the date of this Order, shall be acceptable in the form collected or produced.

The Receiving Party shall not be precluded from seeking production in a different format; the Parties shall meet and confer in good faith whether cost shifting is appropriate.

4.    Additional Procedures for Native Format Files

a.    Procedures for assigning production numbers and confidentiality information to files produced in native format are addressed in Appendix A, Paragraph A.15.

---

[2] AstraZeneca will natively redact Excel files and produce in native form. Similarly, should AstraZeneca produce SAS files, such files will be produced in native format with the exception that SAS or comparable files requiring redaction will be converted to CSV or Excel format to allow for native redaction and produced in such format.

b. Any Party seeking to use, in any proceeding in this Litigation, files produced in native format shall do so subject to the following:

i. All documents provided in native file format shall be provided with a TIFF slipsheet that bears the document's BATES NUMBER and/or MD5 hash value of the file, as well as any confidentiality designation. The Receiving Party shall ensure that if the document is printed in whole or in part, the native file will include (a) its corresponding TIFF slipsheet. If the Producing Party so elects, it may also provide a complete TIFF-Plus image for Word, PowerPoint, or PDF Files. Subsequent pages of the TIFF-Plus version shall include a suffix added to the Bates number to identify the particular page in the file (e.g., XYZ00001_001).

ii. At deposition, trial, or in motion practice, any Party may use a native file or TIFF-Plus image as an exhibit. Where a native file is used, the exhibit must include the TIFF slipsheet for identification purposes. Use of a file in native format shall constitute a representation that the file being used is an accurate, unaltered and complete depiction of the original native-format file as produced or provided by the Producing Party.[3]

5. Use of Search Filters

a. Date Range. The Parties shall meet and confer regarding the appropriate date range to be applied to each Custodial File and Non-Custodial Document Source. The Parties shall meet and confer on the date cut off to be applied.

b. To contain costs in the identification of non-duplicative relevant ESI for review and production, the Parties may wish to use advanced search and retrieval technologies, including email threading, predictive coding or other technology-assisted review. The Producing Party shall meet and confer with the Requesting Party to discuss search and retrieval method(s) the Producing Party has determined to apply to its Sources. If there are any issues regarding the search and retrieval methods utilized by a Defendant, the parties shall bring any disputes to the attention of the Court. Once search and retrieval methods have been agreed to or otherwise ordered by the Court, if changes to such methods are deemed necessary by the Producing Party, the Producing Party will so notify the Requesting Party and the Parties shall meet and confer regarding proposed changes if the Requesting Party does not agree to them.

c. The respective Defendants listed in this order will separately propose a list of search terms to Plaintiffs within 15 days of entry of this Order. Plaintiffs will meet and confer with the respective Defendants regarding those terms within 15 days of Defendant's proposal. Agreement on search terms will be completed promptly, but such agreement will not itself prevent Plaintiffs from reasonable requests for additional search terms from the respective Defendants, subject to their agreement or the Court's intervention, throughout the course of discovery as limited by the

---

[3] E-mail produced by AstraZeneca with reflect an HTML rendering of the MSG format.

deadlines set forth in a Discovery Scheduling Order to be agreed upon by the Parties. This provision only applies to the Defendants listed in this order; any defendants not listed in this order shall meet and confer with Plaintiffs regarding how to proceed on the use of search filters.

d. The fact that any electronic file has been identified in agreed-upon searches shall not prevent the Producing Party from withholding such file from production pursuant to the terms of the Protective Order or as required by the EU Data Privacy Directive.

e. Nothing in this section shall limit a Party's right to reasonably seek agreement from the other Parties or a Court ruling to modify previously agreed-upon search terms, later requests for search term validation, or procedures for advanced search and retrieval technologies.

6.    Collection and Deduplication

The Parties shall apply standard De-NISTing filters in order to exclude irrelevant, non-substantive files from hosting, review and production.

To manage the costs associated with review, production, and storage costs of duplicative Documents for both Plaintiffs and Defendants, the Parties shall confer regarding the deduplication to be applied.   The Parties agree that a Producing Party may employ either Source level (*i.e.*, deduped within a Source) or global deduplication of Documents *(i.e.,* both within a particular Source and across all Sources).[4,5] "Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values. The Producing Party need produce only a single copy of responsive Duplicate ESI. Entire Document families may constitute Duplicate ESI. De-duplication shall not break apart families. When the Producing Party employs global deduplication and the same Duplicate ESI exists in multiple Sources, those Sources shall be listed in the Global Source field identified in Paragraph A.14.(c) of Attachment A.

7.    Production Rules

Due to the contextual relationship of ESI, the Parties will maintain family relationships for electronic data; non-relevant attachments may be excluded from production. The Parties will make relevancy and production determinations for hard copy documents at the Document level.

8.    Prioritization

The Parties agree to meet and confer regarding prioritizing collection and production efforts of relevant Document Sources.  Documents will be produced on a rolling basis

---

[4] There may be Non-Custodial Document Sources that cannot be globally deduped or for which global deduplication is not appropriate.  Accordingly, the Producing Party will not employ global deduplication for such sources.

ME1 26074416v.1

pursuant to a schedule agreed upon by the Parties and consistent with the Case Management Order. The Parties reserve the right to supplement production as necessary.

## C.   DOCUMENTS THAT EXIST ONLY IN HARDCOPY (PAPER) FORM

A Party shall produce Documents that exist in the normal course of business only in hardcopy form in scanned electronic format, redacted as necessary, in accordance with the procedures set out in Attachment A. The scanning of original hardcopy documents does not otherwise require that the scanned images be treated as ESI.

**IT IS SO ORDERED**

Dated:  November  13, 2017

Hon. Claire C. Cecchi, U.S.D.J.
United States District Judge

9

## ATTACHMENT A

A.1.     Image Files

Documents produced in TIFF format will be single page black and white TIFF images at 300 DPI, Group IV compression. To the extent possible, original orientation will be maintained (*i.e.*, portrait-to-portrait and landscape-to-landscape). Each TIFF image will be assigned a unique name matching the production number of the corresponding page. Such files will be grouped in folders of no more than 1,000 TIFF files each unless necessary to prevent a file from splitting across folders. Files will not be split across folders and separate folders will not be created for each file. Production ("Bates") numbers shall be endorsed on the lower right corner of all images. This number shall be a unique, consistently formatted identifier that will:

a)     be consistent across the production;

b)     contain no special characters; and

c)     be numerically sequential within a given file.

Bates numbers should be a combination of an alpha prefix along with an 8 digit number (e.g. ABC-00000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions. Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file.

A.2.     File Text

Except where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, full extracted text will be provided in the format of a single *.txt file for each file *(i.e., not one *.txt file per TIFF image)*. Where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted TIFF image will be OCR'd and file-level OCR text will be provided in lieu of extracted text.  If redacted Documents are embedded within a parent Document, the parent Document will be produced in TIFF format with Document level OCR text.

Searchable text will be produced as Document-level multi-page UTF-8 text files with the text file named to match the beginning production number of the Document.  The full path of the text file must be provided in the *.dat data load file.

A.3.     TIFFs of Redacted ESI

TIFFs of redacted ESI shall convey the same information and image as the original document, to the extent possible and available, including all non-redacted elements and formatting which are visible in any view of the document in its native application (i.e., track changes).  Each redacted area shall bear a label containing the reason for the redaction if space allows per B.1.b of the Protocol.

10

### A.4.  Redactions

For ESI that is redacted, all metadata fields listed in A.14 will be provided in the .dat file and will include all non-redacted metadata. Metadata may be redacted as appropriate pursuant to Protective Order and this Protocol. Redacted documents shall be identified as such in the load file provided with the production as required in A.14. A Document's status as redacted does not relieve the Producing Party from providing the metadata required herein.

### A.5.  Spreadsheet or Worksheet Files

To the extent that spreadsheet files, including without limitation Microsoft Excel files (*.xls or *.xlsx), are redacted and therefore produced in TIFF image format, such TIFF images will display hidden rows, columns, and worksheets, if any, in such files to the extent available. If redactions can be made natively, then the native redacted spreadsheet shall be produced.

### A.6.  Parent-Child Relationships

Parent-child relationships *(e.g., the* associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent-child relationships will be identified in the .dat load file pursuant to paragraph A.14 below.

Because the relationship between hard copy documents is artificial, the Parties will treat each hard copy document as independent subject to Paragraph A.12 below.

### A.7.  Dynamic Fields

Documents containing dynamic fields such as file names, dates, and times will be produced showing the field type (e.g., "[FILENAME]" or "[AUTODATE]"), when in TIFF format, rather than the values for such fields existing at the time the file is processed.

### A.8.  English Language

To the extent any data exists in more than one language, the data will be produced in English, if available. If no English version of a file is available, the Producing Party shall not have an obligation to produce an English translation of the data.

In effort to manage costs, for the purpose of producing Documents under this Order in response to discovery requests, the Parties agree that they will utilize translation software only for internal review of Documents identified as potentially privileged by application of the Producing Party's privilege filter. AstraZeneca does not intend to waive privilege or designations of Confidential Discovery Material or Confidential Personal Information, as defined in the Protective Order for inadvertent production of such information. Any and all Documents produced containing foreign language remain subject to and are governed by the terms of the Protective Order.

11

### A.9.   Embedded Objects

Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, and Access; and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded. If embedded objects are privileged or require redaction, the parent Document will be produced in TIFF format with Document level OCR text. If such embedded objects are merely non-substantive graphic files such as corporate logos, such embedded objects need not be produced as separate Documents as their content is visible in the parent Document.

### A.10.   Compressed Files

Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed. All files that exist within the compressed containers will be extracted to individual files. If compressed container files are found within compressed container files those files should be further decompressed and extracted to individual files.

### A.11.   Encrypted or Corrupt Files

The Producing Party will take reasonable steps, prior to production, to unencrypt or restore any discoverable ESI that is encrypted *(e.g.,* password-protected) or corrupt, and will produce relevant, non-privileged Documents that can be reasonably unencrypted or restored.

### A.12.   Scanned Hardcopy Documents

a)      In scanning hardcopy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records *(i.e.,* hard copy documents should be logically unitized).

b)      For scanned images of hard copy documents, OCR should be performed on a Document level and provided in Document-level *.txt files named to match the production number of the first page of the Document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file.

c)      In the case of an organized compilation of separate hardcopy documents—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the family fields set out below.

### A.13.   Production Numbering

In following the requirements of Paragraph A.1, the Producing Party shall take reasonable steps to ensure that attachments to Documents are assigned production numbers that directly follow the production numbers on the Documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each TIFF image will have its assigned production number electronically "burned" onto the image.

    A.14.    Data and Image Load Files

    a)  Load Files Required. Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format.

    b)  Load File Formats.

      i.  Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001 metadata.dat would be acceptable.

      ii.  Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.

      iii.  Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

    c)  Fields to be Included in Data Load File. For all Documents produced, the following metadata fields for each Document, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product immunity or otherwise prohibited from disclosure by law or regulation, including the EU Data Privacy Regulation, will be provided in the data load file pursuant to subparagraph (a) above, except to the extent that a Document has been produced with redactions. The term "Scanned Docs" refers to documents that are in hard copy form at the time of collection and have been scanned into TIFF images. The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection.

        The Parties shall meet and confer regarding any metadata fields sought beyond those listed below.

ME1 26074416v.1

| Field* | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PRODBEG | ABC00000001 | Yes | Yes | Beginning production number |
| PRODEND | ABC00000008 | Yes | Yes | Ending production number |
| PRODBEGATT | ABC00000009 | Yes | Yes | Beginning production number of parent in a family |
| PRODENDATT | ABC00001005 | Yes | Yes | Ending production number of last page of the last attachment in a family |
| ATTACH | Attach1.doc; Attach2.doc | No | Yes | Filenames of all attached records, separated by semi-colons |
| NUMATTACH | 2 | No | Yes | Total number of records attached to the document (value will always be 0 for the actual document) |
| CUSTODIAN/SOURCE | Smith, John | Yes | Yes | Name of Custodian/Source that possessed the Document |
| GLOBAL SOURCE (or ALL CUSTODIAN) | Doe, Jane; Jones, James | No | Yes | Custodian(s)/Source(s) that possess duplicate copies of the Document |
| NATIVEFILE | Natives\\\ 00000001..xls | N/A | Yes | Path and file name for native file on production media |
| DOCTYPE | Microsoft Office 2007 Document | N/A | Yes | Description of the type file for the produced record. |
| FILEPATH | \My Documents\ Document1.doc | N/A | Yes | Original source filepath for the record produced. |
| ALLFILEPATHS (Produced if Party globally dedupes) | | N/A | Yes | Paths to duplicate maintained by other Custodians/Sources |

14

| Field* | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| FILENAME | Document1.doc | N/A | Yes | Name of original electronic file as collected. |
| DOCEXT | DOC | N/A | Yes | File extension for email or e-doc |
| DOC TYPE | Email | N/A | Yes | Type of document |
| PAGES | 2 | Yes | Yes | Number of pages in the produced Document (not applicable to native file productions). |
| FILE SIZE | | N/A | Yes | File size |
| AUTHOR | John Smith | N/A | Yes | Author information as derived from the properties of the Document. |
| DATECREATED | 10/09/2005 | N/A | Yes | Date that non-email file was created as extracted from file system metadata |
| DATELASTMOD | 10/09/2005 | N/A | Yes | Date that non-email file was modified as extracted from file system metadata |
| DOCTITLE | Meeting Minutes | N/A | Yes | "Title" field extracted from metadata properties of the Document |
| SUBJECT | Changes to Access Database | N/A | Yes | "Subject" field extracted from email message |
| FROM | John Beech | N/A | Yes | "From" field extracted from email message |
| TO | Janice Birch | N/A | Yes | "To" field extracted from email message |
| CC | Frank Maple | N/A | Yes | "Cc" or "carbon copy" field extracted from email |

15

ME1 26074416v.1

| Field* | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| BCC | John Oakwood | N/A | Yes | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | N/A | Yes | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 18:33:00 | N/A | Yes | Sent time of email message, time zone set to UTC |
| DATERCVD | 10/10/2005 | N/A | Yes | Received date of email message (mm/dd/yyyy format) |
| TIMERCVD | 18:33:00 | N/A | Yes | Received time of email message, time zone set to UTC |
| CONFIDENTIALITY | CONFIDENTIAL | Yes | Yes | Text of confidentiality designation, if any |
| TEXTPATH | Text\\\.txt | Yes | Yes | Path to *.txt file containing extracted or OCR text |
| PRODVOL | VOL001 | Yes | Yes | Name of the Production Volume |
| REDACTED | Yes/No | Yes | Yes | Identifies whether a Document contains redactions |
| REDACTION TYPE | Privilege | Yes | Yes | Identifies the reason for a redaction. |
| MD5 (or SHAI) HASH VALUE | e4d909c290d0fb1ca068ffaddf22cbd0 | N/A | Yes | Unique identifier |

*Field designations are friendly names for ease of reference. Actual column names in load files may differ so long as the column names are consistent across the Producing Party's production and have the same meaning as the fields above.

A.15.    Files Produced or Provided in Native Format

Any electronic file produced or provided in native format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002 Confidential." For each document produced in native format, the production will include a TIFF image slipsheet indicating the production number of the native file and the confidentiality designation, and stating

16

MEI 26074416v.1

"File Produced Natively." To the extent that it is available, the original file text shall be provided in a Document-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet shall be provided in the *.txt file with the text path provided in the *.dat file.

A.16.    Production Media

Unless otherwise agreed, Documents will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the Producing Party, and the following information: Volume name, production range(s), and date of delivery.

AstraZeneca will provide one copy of its productions to Plaintiff's third party discovery vendor. If a vendor has not been retained, AstraZeneca will provide the production to Plaintiff's designated representative upon condition that, upon selection of a vendor, Plaintiff's designated representative will provide any production(s) to its vendor that were directly produced to the designated representative. Anyone accessing a production agrees to be subject to the Protective Order, and must sign the Acknowledgement attached thereto.

A.17.    Encryption of Production Media

To maximize the security of information in transit, any media on which Documents are produced may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media. The Receiving Parties in this matter are on notice that certain data produced may originate from Sources that originate in a jurisdiction outside the United States and are subject to the protection of foreign privacy and data protection laws such as the EU Data Privacy Directive, and the Receiving Parties therefore agree to follow the strictest security standards in guarding access to said data.

A.18.    Production Index

With each production, the Producing Party will provide, in native excel format, a Production Index listing: the production volume; document count; and the beginning and ending Bates numbers for each source or custodian included in the production.

ME1 26074416v.1

# EXHIBIT 8

Frank E. Scherkenbach (CA SBN 142549)
*scherkenbach@fr.com*
Andrew G. Pearson (*Pro Hac Vice*)
*pearson@fr.com*
Adam Kessel (*Pro Hac Vice*)
*kessel@fr.com*
Kevin Su (*Pro Hac Vice*)
*su@fr.com*
Kayleigh E. McGlynn (*Pro Hac Vice*)
*mcglynn@fr.com*
Daniel H. Wade (*Pro Hac Vice*)
*wade@fr.com*
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Olivia T. Nguyen (CA SBN 337927)
*onguyen@fr.com*
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

*Attorneys for Plaintiff and Counter-Defendant
Splunk Inc..*

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Tigran Guledjian (Bar No. 207613)
  tigranguledjian@quinnemanuel.com
  Christopher A. Mathews (Bar No. 144021)
  chrismathews@quinnemanuel.com
  Valerie Roddy (Bar No. 235163)
  valerieroddy@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

*Attorneys for Defendant and Counterclaimant
Cribl, Inc. and Defendant Clint Sharp*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| SPLUNK INC.,<br><br>      Plaintiff,<br><br>    v.<br><br>CRIBL, INC., and CLINT SHARP, an individual,<br><br>      Defendants.<br><br>CRIBL, INC.<br><br>      Counterclaimant.<br><br>    vs.<br><br>SPLUNK INC.,<br>      Counter-Defendant. | Case Number: 3:22-cv-07611-WHA<br><br>**STIPULATED PROTOCOL AND [~~PROPOSED~~] ORDER GOVERNING DISCOVERY MATTERS RELATING TO ELECTRONICALLY STORED INFORMATION**<br><br>JURY TRIAL DEMANDED |

**STIPULATED PROTOCOL AND [PROPOSED] ORDER GOVERNING DISCOVERY MATTERS RE: ELECTRONICALLY STORED INFORMATION**

Pursuant to Rules 16 and 26(f) of the Federal Rules of Civil Procedure, Plaintiff and Counter-Defendant Splunk Inc. ("Splunk"), Defendant and Counterclaimant Cribl, Inc. ("Cribl") and Defendant Clint Sharp ("Mr. Sharp") (collectively, "Defendants," and, with Splunk, the "Parties"), by and through their respective counsel, have jointly stipulated to the terms of this Stipulated Protocol and [Proposed] Order Governing Discovery Matters Relating To Electronically Stored Information ("ESI Protocol").

**I.  Purpose**

1.     This ESI Protocol supplements all other discovery rules and orders. It streamlines the production of electronically stored information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Rule 1 of the Federal Rules of Civil Procedure.

2.     This ESI Protocol may be modified in the Court's discretion or by written stipulation of the Parties.  (For purposes of this ESI Protocol, confirming emails manifesting agreements by the Parties are sufficient to constitute a written stipulation of the Parties.)

3.     As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Rule 26 of the Federal Rules of Civil Procedure.

4.     The Parties are expected to comply with the District's E-Discovery Guidelines ("Guidelines").[1]  Where there is a conflict, this ESI Protocol shall control.

5.     This ESI Protocol shall govern the production of documents and ESI by the Parties in the above-captioned litigation.  Nothing herein shall enlarge or affect the proper scope of discovery, nor shall anything herein imply that any documents or ESI collected or produced under the terms of this ESI Protocol are properly discoverable, relevant, or admissible in the litigation.

6.     The ESI Protocol shall also govern productions made by any third party who is subpoenaed in this action unless otherwise agreed to by the Party issuing the subpoena and the

---

[1]  *Available at* https://www.cand.uscourts.gov/filelibrary/1117/ESI_Guidelines-12-1-2015.pdf.

third party.  Accordingly, the ESI Protocol shall be attached to any subpoena issued in this action after Court approval of the ESI Protocol.

**II.**   **General Definitions**

7.      As used herein, the following terms shall have the following meanings:

(a)      The terms "Electronically Stored Information" and "ESI" as used herein have the same meaning as contemplated by the Federal Rules of Civil Procedure.  *See, e.g.*, Fed. R. Civ. P. 34, advisory committee's note to 2006 amendments (cautioning against any "limiting or precise definition" of ESI; Rule 34(a)(1) "is expansive and includes any type of information that is stored electronically" and "is intended to be broad enough to cover all current types of computer-based information, and flexible enough to encompass future changes and developments").

(b)      "Native file format" means and refers to the format of ESI in which it was originally generated and/or normally kept by the producing party in the usual course of its business and in its regularly conducted activities;

(c)      "Metadata" means and refers to information about information or data about data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system;

(d)      "Document" or "Documents" are used in their broadest sense, to the full extent permitted by Rules 26 and 34 of the Federal Rules of Civil Procedure.

### III. **Types of ESI**

8.      For purposes of identifying and describing the Parties' obligations and applicable procedures with respect to ESI, this ESI Protocol divides ESI into two categories: non-custodial ESI and custodial ESI.

9.      **Non-custodial ESI.** Non-custodial ESI refers to ESI that is typically stored in a central corporate repository.  Examples of documents that are typically non-custodial ESI include: financial records; technical documentation; engineering documentation; sales and marketing materials; wikis; websites; patents, copyright registrations, trademark registrations, and related prosecution files; investor relations materials; exports from multi-user programs and databases (*e.g.*, Jira); and other files that are typically maintained at a corporate, organization- or department-level.[2]

10.      **Custodial ESI.** Custodial ESI refers to ESI that is typically associated with individual custodians, including both electronic communications (*e.g.*, emails, instant messages, etc.) and individual document repositories or storage (including cloud-based repositories and storage) with the exception of corporate documents (*e.g.*, a corporate memorandum that is stored only on an individual employee's cloud storage account).  If a responding party learns of or locates a corporate document in an individual's custodial repository (e.g., if corporate marketing records are maintained on an individual employee's corporate Google Drive account), the responding party shall not withhold or fail to collect the document due to its storage location.  Otherwise, requests for custodial ESI are dictated by the procedures set forth in Section VI(A), *infra*.

### IV. **Sources of ESI**

11.      The Parties hereby identify the following sources of potentially relevant ESI (whether custodial or non-custodial) that are, subject to Paragraph 47, *infra*, presumptively reasonably available to the Parties:

> (a)      As to Splunk: Google Workspace (including, *e.g.*, Drive, Mail, Vault, and Calendar), git (provided via GitLab or BitBucket), Salesforce, Confluence, Jira, SAP, Slack, Workday, Apptus, Conga.

---

[2]   The examples included herein are purely illustrative and neither exhaustive nor determinative.

(b)     As to Cribl: Google Drive, Google Mail, Google Vault, git, Confluence, Jira, Salesforce, Slack, Netsuite, Greenhouse, Google workspace Calendar, Lattice, Looker, Bitbucket, Ironclad.

(c)     As to Clint Sharp: Through his employment at Cribl, Mr. Sharp may have relevant ESI in the above-referenced Cribl ESI sources; Dropbox.

Should a Party become aware of additional, reasonably available sources of potentially relevant ESI, the Party must disclose it and confer concerning appropriate additional searches thereof.

## V.     Procedures and Obligations with Respect to Non-Custodial ESI

12.     All Requests for Production ("Requests") served in this action are deemed to seek responsive <u>non-custodial</u> ESI (in addition to non-ESI documents).

13.     With respect to non-custodial ESI, in responding to a Request seeking "all" documents and/or "all" communications,[3] a responding Party is obligated to make a reasonable inquiry and diligent search of reasonably accessible non-custodial ESI sources to locate and identify responsive documents.

## VI.     Procedures and Obligations with Respect to Custodial ESI

### A.     Procedures for Requesting and Producing Custodial ESI

14.     Each requesting side is limited to thirty (30) search terms (with wildcards and standard search operators) per custodian.  The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case.  The parties may jointly agree to modify this limit without the Court's leave and, following good-faith meet-and-confer efforts, may request relief from this limit from the Court if they are unable to resolve any dispute.

15.     For purposes of counting the number of search terms, a conjunctive combination of multiple words or phrases (*e.g.*, "computer" AND "system") narrows the search and shall count as a single search term.  A disjunctive combination of multiple words or phrases (*e.g.*, "computer"

---

[3] To the extent the precise wording identified in this ESI Protocol is not utilized in a Request, the Parties agree that the ESI Protocol should be interpreted to apply to other similar formulations to effect its purpose.

OR "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word, phrase, or concept. The Parties will apply these principles to more complex strings. Use of narrowing search criteria (*e.g.*, "AND," "BUT NOT," "w/x") is encouraged to limit the production.

16. Indiscriminate search terms, such as the responding Party's name or a product name, are generally inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction.

17. A search string for an individual custodian returning ≤1,000 results, or "hits," is presumptively reasonable. A search string returning >1,000 results, or "hits" is not presumptively reasonable and may require narrowing pursuant to Paragraph 19, *infra*.

18. For purposes of this ESI Protocol, a "hit" is any Document that is identified using the search parameters for a given Request for custodial ESI. "Hit counts" include only such Documents identified by the operative search parameters and do not include family members that are not independently identified by the operative search parameters. For example, if an email has six attachments, and the email and one attachment are "hits" identified using the search parameters, it counts as two "hits" (not seven) toward any hit count. For instant messages (*e.g.*, Slack), each 24-hour period shall count as one "hit."

19. To the extent the responding Party objects that a search string is unduly burdensome or overbroad, the responding Party shall further identify the hit counts broken down by the requested custodians and search terms. The Parties shall then meet and confer regarding modifications to the search terms, custodians, sources, and time frames to arrive at an appropriately tailored search. If, following a good faith meet and confer, the Parties cannot arrive at an agreement regarding custodians, search terms, sources and time frames for a Request for custodial ESI, a Party may seek relief from the Court.

20. In any event, a responding Party shall provide a hit count for each search string proposed by a requesting party in advance of finalizing the requested custodial ESI searches to permit the requesting Party to adjust its requested search terms.

21.    Responding Parties shall produce all responsive non-privileged Documents that are identified using custodian and search term searches.  Clearly non-responsive Documents identified using custodian and search term searches do not have to be produced.

**B.    Limitations on Custodians and Global Hit Counts**

22.    **Presumptive Limitation on Custodians.**    Each requesting side shall presumptively limit its requests for custodial ESI to a total of ten custodians ("Regular Custodians") per side across all of its Requests for Production.  The Parties acknowledge that entry of this ESI protocol is not intended to resolve the Parties' ongoing negotiation and disputes regarding discovery of custodial ESI related to former Splunk employees hired by Cribl.  The Parties may jointly agree to modify this limit without the Court's leave.  The Court may consider contested requests for additional Regular Custodians upon showing a distinct need based on the size, complexity, facts, and issues of this specific case.

23.    **Ceiling.**  The Parties agree that there is a rebuttable presumption that no side shall be required to review more than 100,000 "hits" (as defined in Paragraph 18, *supra*) identified by all of the other side's custodial ESI requests (combined).

24.    To allow the requesting Party to adjust its Requests in light of the presumptive ceiling on documents to be reviewed, a requesting Party may, within ten (10) days of receiving a responding Party's responses identifying hit counts, request a meet and confer to further narrow its originally-requested search parameters.

25.    **Floor.**  The Parties further agree that, if a requesting side's custodian and search term "hits"—across all requested custodians—yield less than 25,000 "hits," the requesting side is presumptively entitled (at its discretion) to supplement its search parameters to exceed the presumptive ten Regular Custodian limit described in Paragraph 22 or the thirty search term limit in Paragraph 14, *supra*, until the floor is reached.

26.    Should a requesting Party discover that the responding Party failed to identify a reasonably available source of ESI in Paragraph 11, *supra*, or failed to search it in accordance with the terms of this ESI Protocol, the responding Party shall be entitled to obtain non-privileged documents in that source, applying the search terms previously requested by the requesting Party.

**C.**     **Procedures for Making and Responding to "Special Custodial ESI" Requests**

27.     To the extent the requesting Party seeks custodial ESI but contends it either (i) lacks information to identify relevant custodians or (ii) believes that the documents and communications reside with custodian(s) who present(s) special concerns (*e.g.*, one or more attorney(s), who present privilege concerns, or a custodian with little or no relevance to the claims and defenses in the case, but who is nonetheless the relevant custodian for a particular type of document or communication) it shall so indicate in the Request for Production, *e.g.*, by serving separate requests that are labeled as "Special Custodial ESI" requests (or, if served prior to the entry of this ESI Protocol, designating them as "Special Custodian ESI" requests in a writing to the responding party).

28.     A requesting side may request such special custodial ESI for up to fifteen (15) Requests across all of its requests in the action. A Party making such a Request for special custodial ESI may include any information available to it to assist the responding Party in formulating its response (*e.g.*, in the case of a custodian who presents special concerns, the identity of the custodian). To the extent a requesting Party believes that it needs more such "special custodial ESI" Requests, the Parties shall meet and confer in good faith and attempt to reach an agreement and, if unsuccessful, a Party may seek relief from the Court.

29.     In responding to a Request for special custodial ESI, the responding Party may, but is not required to, use reasonable search terms to search for and identify responsive documents among a special custodian's ESI.

30.     The Parties agree that the procedures in this Section VI.C are not intended to be used to require intentionally the ingestion, collection, and review of documents from large categories of custodians. For example, a request that on its face seeks communications that would be reasonably expected to be made by *all* salespeople or *all* product engineers is not likely to be an appropriate special custodial ESI request. To the extent a responding Party objects that a Request for special custodial ESI is unduly burdensome or overbroad, the Parties shall meet and confer regarding modifications to the custodians, sources, and time frames to arrive at an appropriately tailored search. If, following a good faith meet and confer, the Parties cannot arrive

at an agreement regarding custodians, sources, and time frames for a Request for special custodial ESI, a Party may seek relief from the Court.

### D. Previously-Served Requests for Production

31. The Parties acknowledge that they have each served Requests for Production including Requests for Production that seek ESI, prior to reaching agreement on this ESI Protocol. The Parties agree that each Party may revisit their prior Requests to designate certain Requests as seeking special custodial ESI pursuant to the terms of this ESI Protocol. (All other previously-served Requests shall be deemed requests for non-ESI and non-custodial ESI and subject to the respective terms of this ESI Protocol; however, Paragraphs 10, *supra*, and 33, *infra*, apply with equal effect to all Requests.) Unless extended by written agreement of the Parties, the Parties shall make these designations in writing within fourteen (14) days of the entry of this ESI Protocol by the Court. The Parties may comply with this provision by providing written correspondence identifying the Requests for which the Party seeks special custodial ESI and, for each such Request, the information provided in Section VI.C, *supra*.

32. The Parties acknowledge and agree that objections based on burden and overbreadth to previously-served Requests should be reevaluated in light of the procedures in this ESI Protocol.

### VII. Effect of ESI Protocol on Discovery Obligations

33. Nothing in this ESI Protocol relieves a Party of its obligations under the Federal Rules of Civil Procedure to produce responsive, relevant ESI. Should a responding Party be or become aware of responsive, relevant ESI (whether non-custodial or custodial), it may not withhold production or logging of such ESI simply because the parties' agreed search terms and custodians do not capture such, or its production is not otherwise required by this ESI Protocol.[4]

34. The typed or handwritten signature of a Party's counsel on correspondence

---

[4] For purposes of this Paragraph 33, the Parties acknowledge that individual employees of a Party may be aware of documents that are responsive to a Request for Production but, despite a reasonable and diligent inquiry, the Party may not identify this employee's knowledge or the responsive documents. If and when the existence of such specific responsive, non-privileged documents comes to the responding Party's attention, the responding Party shall produce them.

described herein shall be deemed an attorney signature pursuant to Rule 11 of the Federal Rules of Civil Procedure.

## VIII.   Technical Requirements for Electronic Production of Paper Documents and ESI

### A.   Technical Requirements for Production of Paper Records

35.   Paper records shall be scanned or otherwise converted into electronic form from paper documents in the following format:

(a)   TIFFs.  All documents shall be scanned to single page Group 4, TIFF format, at least 300 dpi and 8.5 x 11 inch page size, except for documents requiring higher resolution or different page size.  Each image file should have a unique file name which shall be the Bates number of the page.

(b)   In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized).  The Parties shall make their best efforts to have their vendors unitize documents correctly and shall commit to address situations where there are improperly unitized documents.

(c)   Objective Coding Fields.  The following objective coding fields should be provided, if applicable and/or available: (1) beginning Bates number; (2) ending Bates number; (3) beginning attachment Bates number; (4) ending attachment Bates number; and (5) source location/custodian.

(d)   Searchable Text shall be created using optical character recognition ("OCR").

### B.   Technical Requirements for Production of ESI

36.   The Parties shall produce ESI in TIFF format according to the following specifications:

(a)   All TIFF formatted documents shall be single page, Group 4 TIFF at 300 X 300 dpi resolution and 8.5 x 11 inch page size, except for documents requiring a different resolution or page size.

(b)    An image load file, in standard Opticon format, showing the Bates number of each page and the appropriate unitization of the documents, shall accompany all document images.

(c)    Each imaged version of an electronic document shall be created directly from the original electronic document.

(d)    Color documents (*e.g.*, color photographs or graphical representations in color) may be produced as black & white, single-page TIFF images in accordance with the technical specifications set forth herein. Upon a reasonable request by the receiving Party, the producing Party shall produce specifically identified documents in color. If color images are required to render the document legible and usable, the files shall be delivered in single page, JPEG format, accompanied by the requisite document level text file as specified herein.

(e)    Full extracted text shall be provided in the format of a single TXT file for each file (*i.e.*, not one TXT per TIFF image). Original extracted text shall not be provided for electronic documents that have been redacted. Instead, for documents with redacted images, a separate OCR text file should be created for each redacted document that displays only the unredacted text. Any such redactions shall be clearly marked on the document (*e.g.*, with a solid, black box labeled with a legend such as "Redacted for Privilege"). For documents redacted natively the producing party shall provide OCR or extracted text after the redactions have been applied. Searchable text or OCR text shall be produced as file-level multi-page UTF-8 text files with the text file named to match the beginning production number of the file. The full path of the text file must be provided in the DAT data load file.

37.    The Parties shall meet and confer regarding any good faith and reasonable requests for version histories of any document and/or additional metadata (*e.g.*, document owner, visibility settings, sharing permissions, revision history, comments, or tags) where a document originated as

a Google Doc or document from another online document management system where that metadata is necessary to understand the revision history of the document, to the extent reasonably practicable and available.

38.     The parties may produce the following ESI types in native file format and shall produce them in native format upon request of the requesting Party:

•     Spreadsheets (*e.g.*, csv, ods, xls, xlsx, numbers, etc.)

•     Presentations (*e.g.*, odp, ppt, pptx, key, etc.)

•     Audio/video files

39.     The Parties shall meet and confer regarding any good faith and reasonable requests for the production of other ESI types in native file format.

40.     **Attachments to emails.**

(a)     The Parties shall collect and produce files attached to emails.

(b)     The Parties shall meet and confer regarding any good faith and reasonable requests for production of hyperlinked documents or modern attachments where the target document is within Google Suite (*i.e.*, Google docs, sheets, slides, etc.), to the extent reasonably practicable and available.  Where applicable, the Parties shall make best efforts to obtain and produce the version of the document that existed at the relevant time, to the extent reasonably practicable and available.

(c)     Nothing in this section shall restrict the Parties' ability to provide placeholder images for attachments validly withheld in accordance with the terms of this ESI Protocol and any operative Protective Order.

(d)     The Parties shall meet and confer regarding any good faith and reasonable requests for production of non-Google hyperlinked documents or modern attachments (*e.g.*, Confluence, Jira tickets, Atlassian Suite, etc.), to the extent reasonably practicable and available.

41.     **Production of Files in Native Format.**  Any document produced in native format shall be produced according to the following specifications, to the extent reasonably practicable

and available:

    (a)    A unique document number shall be used as the file name. The original file name and extension shall be preserved in the corresponding load file. An example of this convention would be: "CH00000001.xlsx" with metadata in the load file listing the original filename and extension as "Copyright data.xlsx."

    (b)    Any file produced in native format need not be imaged. Instead, a single page placeholder image shall be provided that indicates the file was produced in native format and contains the Bates number of the corresponding file and, where pertinent, the confidentiality designation.

42.    **Load/Utilization Files.**  There shall be two Load/Unitization files accompanying all productions. One shall be the Image load file and the other shall be the Metadata load file.

43.    **Image Load File.**

    (a)    The name of the image load file shall mirror the name of the delivery volume, and should have a .lfp, .opt or .dii extension (*e.g.*, ABC001.lfp). The volume names shall be consecutive (*i.e.*, ABC001, ABC002, et. seq.) *If .dii file is produced, the accompanying metadata load file shall be separate from the .dii file and not contained within the .dii file.*

    (b)    The image load file shall contain one row per TIFF image.

    (c)    Every image in the delivery volume shall be referenced in the image load file.

    (d)    The image key shall be named the same as the Bates number of the page. Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.). A separate volume shall be created for each piece of media delivered.

    (e)    Emails shall be produced with the CC and BCC line displayed in the image.

44.    **Metadata Load File.**  The following metadata fields associated with each electronic document shall be produced, to the extent reasonably practicable and available.

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| Custodian | Name of custodian(s) of email(s) or file(s) produced (Last Name, First Name format) as available | X | X |
| AllCustodians[5] | Name of all custodians who had a copy of a document. | X | X |
| BegBates | Beginning Bates# (including Prefix) | X | X |
| EndBates | Ending Bates# (including Prefix) | X | X |
| BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) | X | |
| EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) | X | |
| AttachCount | Number of attachments to an email | X | |
| AttachName | Name of each individual attachment | X | |
| From | From field extracted from an email message | X | |
| Author | Author field extracted from the metadata of a non-email document | | X |
| To | To or Recipient field extracted from an email message | X | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | X | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | X | |
| Email Subject | Subject line extracted from an email message | X | |
| Filename | File name — Original name of | | X |

---

[5]  Upon request, the Parties shall provide AllCustodians field based on documents received at the time of the production.  When the Parties' productions are completed, the producing Party shall provide an overlay for previously produced documents containing all additional custodians whose documents have been added after the time of the initial production.

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|:---:|:---:|
| | file as appeared in original location | | |
| Title | Title field extracted from the metadata of a non-email document | | X |
| DateTimeSent | Sent date and time of an email message (mm/dd/yyyy HH:MM format) | X | |
| DateTimeRcvd | Received date and time of an email message (mm/dd/yyyy HH:MM format) | X | |
| DateCreated | Date that a non-email file was created (mm/dd/yyyy format) | | X |
| DateMod | The application recorded time on which the document was last modified | | X |
| NativeLink (if natives are exchanged) | Relative path to any files produced in native format | X | X |
| TextLink | Relative path to any OCR/extracted text files in the production set | X | X |
| Confidential | Confidentiality Designation | X | X |
| Redacted | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for unredacted documents. | X | X |
| HashValue | MD5 or SHA-1 hash value used to deduplicate the data | X | X |
| FileExtension | File extension of native file | X | X |

45. **Instant Messages (*e.g.*, Slack) Data.**

(a) The Parties shall produce instant messages (including, but not limited to, Slack communications) in documents separated by 24-hour days. A Party may request instant messages from the prior or following day where it believes additional context is necessary.

(b)      A Party may request the production of hyperlinked documents within responsive portions of instant messages, which shall not be unreasonably withheld.

(c)      Where available based on the resources used in a producing Party's regular course of business, the producing Party shall include the following fields. To the extent a Party does not have existing access to the information identified by any particular field, the Parties may meet and confer to discuss whether there are any custom fields or other metadata that may be available through third-party tools or integrations that should be included, to the extent reasonably practical and available.

| Field Name | Field Description |
| --- | --- |
| Timestamp | The date and time when a message was sent |
| Author | The user who sent the message or uploaded the file. |
| Participants | Users in conversation |
| Channel/Group/DM Name | The name of the channel, group or direct message in which the message was sent or file was uploaded. |
| Channel/Group/DM ID | The unique identifier for the channel, group or direct message in which the message was sent or file was uploaded. |
| Message ID | The unique identifier for the message. |
| Message Type | The type of message, such as a standard message, a thread reply, a bot message, or a message with an attached file. |
| NumMessages | Number of messages |
| Edited | A Boolean flag indicating whether the message was edited after it was originally sent. |
| Edited Timestamp | The date and time when the message was last edited. |
| Deleted | A Boolean flag indicating whether the message was deleted. |
| Has Attachments | Indicates where there are attachments present |

| Field Name | Field Description |
|---|---|
|  | in the thread |
| NumAttach | Number of Attachments |
| Attachment Name | File name (for attachments) |
| Reactions | Indicates where there are reactions to a message in the thread |

### C. Resolution of Technical/Logistical Issues

46. Documents that present imaging or format production problems shall be promptly identified and disclosed to the requesting Party; the Parties shall then meet and confer to attempt to resolve the problems.

47. If a producing Party asserts that certain ESI is inaccessible or cannot be produced in an appropriate format, or if the requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall meet and confer in good faith with their respective technology experts to discuss resolving such assertions. If the Parties cannot resolve any such disputes after such a meet and confer has taken place, the issue may be presented to the Court for resolution.

### D. Databases, Structured, Aggregated or Application Data

48. For Requests in which responsive information is contained in a database or other structured or aggregated data source or otherwise maintained by an application, the Parties shall use reasonable best efforts to produce the data and shall meet and confer to determine an appropriate format. If the Parties cannot reach agreement, the matter may be submitted to the Court for resolution.

### E. Redaction of Documents

49. The producing Party may redact from any TIFF image, metadata field, or native file material that is protected from disclosure by applicable privilege or immunity, or that is governed by other applicable privacy law or regulation, following the procedures set forth in Paragraph 36(e), *supra*. The foregoing does not affect the Parties' obligations under Rule 26(b)(5) of the Federal Rules of Civil Procedure.

### F. Data Load Files/Cross-Reference Files

50.     Fielded data should be exchanged via a document-level database load file in standard Concordance (DAT) format.  All image data should be delivered with a corresponding image load file in one of three formats: standard IPro (LFP), Opticon (OPT) or Summation (DII).

### G. Parent-Child Relationships

51.     Parent-child relationships (the association between an attachment and its parent Document or between embedded Documents and their parent) shall be preserved through the production of an appropriate Metadata field.  Parent-child relationships shall also be preserved through the sequential production of the documents, such that the parent shall be produced first, immediately followed by the corresponding attachments.

### H. Family Groups

52.     A Document and all other Documents in its attachment range, emails with attachments and files with extracted embedded OLE Documents all constitute family groups.  If any member of a family group is determined to be responsive to a Party's document requests, then all members of that group must also be considered as responsive.

### I. Deduplication of Documents

53.     The Parties shall de-duplicate globally (*i.e.*, across all custodians). This will result in the Producing Party needing to produce only a single copy of responsive ESI. The Parties shall de-duplicate stand-alone documents against stand-alone documents and shall de-duplicate top-level email documents against top-level email documents.  De-duplication shall not break apart families.  Where a stand-alone document or top-level email is found in more than one custodian's files, the metadata load file shall list all such custodians, even though the document or email is being produced only once.

### J. Privilege Logs

54.     The Parties shall not be required to log privileged documents created, and communications occurring, on or after November 2, 2021.  This cut-off date is based on the start of pre-suit communications between the Parties.  The Parties agree there should be a presumption that information concerning documents or things otherwise protected by the attorney-client

privilege, work product immunity, or other privilege or protection ("Privileged Materials") that were created after the cut-off date do not need to be included on any privilege log. However, the Parties reserve the right to request (and seek a Court order compelling if necessary) logs of Privileged Materials created after November 2, 2021 upon a showing of good cause. *See* ECF No. 43 at 6:7-16.

### K. Source Code

55. No provision of this ESI Protocol affects the inspection or production of source code which shall be collected and made available consistent with the Protective Order governing this case.

Dated:  August 22, 2023          /s/ Andrew G. Pearson
                                 FISH & RICHARDSON, P.C.
                                 Andrew G. Pearson
                                 *Attorneys for Plaintiff and Counter-Defendant*
                                 *Splunk Inc.*


Dated:  August 22, 2023          /s/ Tigran Guledjian
                                 QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                 Tigran Guledjian
                                 *Attorneys for Defendant and Counterclaimant*
                                 *Cribl, Inc. and Defendant Clint Sharp*


## STIPULATED PROTOCOL AND ORDER GOVERNING DISCOVERY MATTERS

## RELATING TO ELECTRONICALLY STORED INFORMATION

The above STIPULATED PROTOCOL AND [PROPOSED] ORDER GOVERNING DISCOVERY MATTERS RELATING TO ELECTRONICALLY STORED INFORMATION is approved as the ESI Protocol for this case and all Parties shall comply with its provisions.

IT IS SO ORDERED.

Dated: August 24, 2023.          _____
                                 HON. WILLIAM H. ALSUP
                                 UNITED STATES DISTRICT JUDGE

1

### **SIGNATURE ATTESTATION**

2        The CM/ECF user filing this paper attests that concurrence in its filing has been obtained from

3   its other signatories.

4        Respectfully submitted on August 22, 2023.

5

6                                      By:   */s/ Andrew G. Pearson*
                                             Frank E. Scherkenbach (CA SBN 142549)
7                                            scherkenbach@fr.com
                                             Andrew G. Pearson (Pro Hac Vice)
8                                            pearson@fr.com
                                             Adam Kessel (Pro Hac Vice)
9                                            kessel@fr.com
                                             Kevin Su (Pro Hac Vice)
10                                           su@fr.com
                                             Kayleigh E. McGlynn (Pro Hac Vice)
11                                           mcglynn@fr.com
                                             Daniel H. Wade (Pro Hac Vice)
12                                           wade@fr.com
                                             FISH & RICHARDSON P.C.
13                                           One Marina Park Drive
                                             Boston, MA 02210
14                                           Telephone: (617) 542-5070
                                             Facsimile: (617) 542-8906
15

16                                           Olivia T. Nguyen (CA SBN 337927)
                                             onguyen@fr.com
17                                           FISH & RICHARDSON P.C.
                                             500 Arguello Street, Suite 400
18                                           Redwood City, CA 94063
                                             Telephone: (650) 839-5070
19                                           Facsimile: (650) 839-5071

20
                                             *Attorneys for Plaintiff and Counter-Defendant*
21                                           *Splunk Inc.*

22

23

24

25

26

27

28

STIPULATED PROTOCOL AND ORDER GOVERNING DISCOVERY RE: ESI
CASE NO. 3:22-CV-07611-WHA

# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: EAST PALESTINE | ) | CASE NO. 4:23-cv-00242-BYP |
| TRAIN DERAILMENT | ) | |
| | ) | |
| | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| | ) | |

**ORDER FOR DISCOVERY OF ELECTRONICALLY STORED
INFORMATION ("E-DISCOVERY") BY DEFENDANTS**

## I.    INTRODUCTION

The procedures and protocols outlined in this Order (the "Protocol") govern the production

of discoverable ESI and hard-copy documents (collectively, "Discoverable Information") by

Defendants in the above-captioned action (the "Action").  This Protocol supersedes prior pretrial

orders issued in this Action to the extent they are inconsistent with this Protocol's provisions.

## II.    IDENTIFICATION OF RESPONSIVE DOCUMENTS AND ESI

Sources of Discoverable Information.  Plaintiffs and Defendants (collectively, the "Parties")

agree to meet and confer regarding compilation of a reasonable list of custodians likely to have

unique, relevant, and responsive ESI, as well as identification of any other potentially relevant data

sources, including custodial, non-custodial, and third-party information.  The Parties reserve the

right to meet and confer to discuss supplementing the initial list of custodians.

## III.    PRESERVATION AND COLLECTION

A.    Not Reasonably Accessible ESI.  The Parties agree that the circumstances of this

litigation do not warrant the preservation, collection, review, production, or identification on a

privilege log of ESI that is not reasonably accessible.  For purposes of this paragraph, the Parties

agree that the following sources of ESI are not reasonably accessible:

      1.     Data remaining from systems no longer in use as of the date of this Protocol that is unintelligible to and inaccessible by any commercially available systems.

      2.     ESI stored in volatile and non-volatile memory (including but not limited to Random Access Memory ("RAM"), Read-only Memory ("ROM"), and cache memory) or in temporary or cache files (including but not limited to internet history, web browser cache, and cookie files), wherever located.

      3.     ESI stored as server, operating system, or network logs.

      4.     Temporary internet files, history, cache, cookies, and the like.

      5.     Encrypted ESI/password-protected files, where the key or password cannot be ascertained without extraordinary efforts.

      6.     ESI affected by ransomware or malware or that otherwise has been corrupted or is otherwise unable to be processed without extraordinary efforts.

      7.     ESI stored on photocopiers, printers, scanners, and fax machines.

      8.     Other file types as agreed to by the Parties.

This Protocol does not prevent any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible within the meaning of Rule 26(b)(2)(B).

      B.     <u>M365 Content</u>.  The Parties agree to meet and confer to discuss the most reasonable means to produce content stored within the M365 environment.

      C.     <u>Hyperlinked Content</u>.  To the extent it is not readily publicly available, where feasible, hyperlinked content shall be produced as part of a parent-child relationship with any document containing such a hyperlink.

D.     Hard-Copy Documents.  Hard-copy documents are to be scanned and produced electronically as images in the same order in which they are maintained in the ordinary course of business.  The Parties agree to treat pages that are stapled, clipped, or otherwise clearly appear to be part of the same document as a single document and to treat documents that clearly appear to be separate documents as separate documents.  For hard-copy documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where reasonably practicable; the Parties agree to meet and confer if the Producing Party believes it would not be reasonably practicable to scan such labels and tabs.  Original document orientation (i.e., portrait v. landscape) should be maintained to the extent practicable.

## IV.    PROCESSING AND FILTERING

A.     De-NISTing System Files.  ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing.[1]

B.     Time Zones.  To the extent reasonably practicable, ESI should be processed with a consistent time zone within a Producing Party's productions, and the time zone used shall be disclosed to the Requesting Party.  Absent an agreement between a Requesting Party and a Producing Party to the contrary, the default time zone for processing shall be Eastern Standard Time with a daylight savings offset.

C.     Other Files and File Types Excluded.  Defendants may filter out the following files or file types:

1.     ESI affected by ransomware or malware or that otherwise has been corrupted or is unable to be processed without extraordinary efforts.

---

[1] The current NIST file list is published by the National Software Reference Library (NSRL) and can be found here: https://www.nist.gov/itl/ssd/software-quality-group/national-software-reference-library-nsrl.

2.       Temporary internet files, history, cache, cookies, and the like.

3.       ESI stored as server, operating system, or network logs.

4.       Files that are zero bytes in size (i.e., do not contain content).

5.       Other files or file types as agreed to by the Parties.

D.     <u>Embedded Documents</u>. Embedded documents from ESI (e.g., a spreadsheet embedded within a word processing document) will, to the extent possible, be extracted and treated as child documents and related back to their top-level parent documents (e.g., standalone file, email message, etc.).

E.     <u>Embedded Objects</u>. Embedded objects within documents or ESI (including but not limited to logos, icons, emoticons, and footers) may be culled, provided they are produced within the document itself.

F.     <u>Deduplication</u>. The Parties agree that production of documents and ESI globally deduplicated in accordance with the provisions of this ESI Protocol shall constitute production of documents as maintained in the ordinary course of business. A Producing Party will make reasonable efforts to globally deduplicate identical ESI within their own productions, as follows:

1.       No Producing Party shall be required to conduct manual review to eliminate duplicates, including but not limited to hard-copy documents that are exact duplicates of electronic versions.

2.       <u>Electronic Documents that Are Not Email ("EFiles")</u>. Duplicate non-email ESI (such as Microsoft Word documents) may be identified based upon MD5 or SHA-1 hash values for binary file content. All ESI bearing an identical value are a duplicate group. The Producing Party may produce only one document image or native[2] file for duplicate

---

[2] For purposes of this Protocol, "Native Format" or "Native File" means the format in which ESI was used and stored by the Producing Party in its ordinary course of business.

ESI documents within the duplicate group, however, the Producing Party will identify the

additional custodian(s) (i.e., "AllCustodians" and "AllFilePaths" metadata fields set forth in

Appendix B) for duplicate documents not produced.  The Parties agree to meet and confer

to the extent such information cannot be automatically populated with industry standard

ESI processing tools.

       3.   <u>Email</u>.  Duplicate email files may be identified based upon MD5 or SHA-1

hash values based upon the email family, which includes the parent email and all

attachments.  Email families bearing an identical value are considered a duplicate group.

The Producing Party may produce only one document image or native file for duplicate ESI

documents within the duplicate group; however, in the event that email is collected from a

custodial source, the Producing Party will identify each custodian(s) (i.e., "AllCustodians"

and "AllFilePaths" metadata fields set forth in Appendix B) from whom the duplicate email

was collected.  The Parties agree to meet and confer to the extent such information cannot

be automatically populated with industry standard ESI processing tools.

       G.   <u>Password-Protected or Encrypted Files</u>.  With respect to any password-protected or

encrypted documents or ESI that are encountered during processing, the Producing Party will take

reasonable steps based on industry standards to break the protection so that the documents can be

reviewed and produced if appropriate.

       H.   The Parties agree to meet and confer in advance of any processing or filtering of

ESI, apart from the items listed above, that removes or excludes documents from human review.

**V.    <u>IDENTIFYING THE REVIEW POPULATION</u>**

       A.   <u>Search Methodologies:</u> The Parties recognize and agree that each Party may use one

or more search methodologies to cull, review, and produce responsive, not-privileged Discoverable

Information.  The Parties therefore agree to cooperate in good faith regarding the disclosure and

formulation of appropriate search methodology.  The Parties agree to meet and confer regarding any methodologies that remove Discoverable Information from human review and withhold that Discoverable Information from production (e.g., search terms, technology-assisted review, or other culling mechanisms) and the document sources to which they will be applied, prior to the application of any such methodologies to any ESI source that may contain potentially relevant or responsive ESI.  After meeting and conferring, the Parties may enter into additional agreements or protocols relating to the search methodologies they will use to satisfy their discovery obligations. If the Parties are unable to agree on search methodologies, the Parties shall notify the Court of their unresolved dispute(s) and seek resolution.

B.  <u>Email Domains and Senders</u>.  The Parties agree to meet and confer about emails from domains and senders typically associated with junk email (e.g., emails related to fantasy football, retailer advertising, or newsletters or alerts from non-industry sources) to the extent a Producing Party wants to exclude such email domains or sender addresses as part of its initial filter of potentially responsive documents.  Prior to the application of such filters, the Producing Party shall propose domains and senders to exclude under this paragraph, and the Parties shall work cooperatively on agreed methods for excluding the same.

C.  <u>Email Threading</u>.  Due to the importance of the metadata in prior or lesser-included emails contained in whole or in part in a most-inclusive email, and in order to facilitate reasonable evidentiary use of emails, production of a most inclusive email thread does not relieve the Producing Party of its obligation to produce responsive prior or lesser-included emails.  No document shall be withheld from production on the basis that it is included in a produced more-inclusive email.  The Producing Party may, at its discretion, elect to review only the most inclusive email thread in determining the responsiveness of the prior or lesser-included emails or for any other internal purpose.

## VI.   PRODUCTION FORMAT

A.   <u>Rolling Production</u>.  The Parties agree to produce documents and data on a rolling basis when practicable.  The Parties will communicate with each other about their respective priorities for production and agree to use good faith efforts to respond to reasonable requests for prioritized production, taking into account the volume of information at issue, the relative accessibility of information, efficiencies in the process of search and review, and the additional processing time required for certain types of ESI.

B.   <u>General Production Format</u>.  Defendants shall produce Discoverable Information in the format specified in this Section VI and in Appendix A (Additional Production Specifications).  Generally, Discoverable Information will be produced in native format, accompanied by document-level text files containing searchable text and metadata load files as described in Appendix A, unless otherwise specified.

C.   <u>ESI Only Readable on Proprietary Software</u>. To the extent that Defendants identify responsive documents that are only readable on proprietary software, the Parties shall meet and confer to discuss methods for extracting and producing, or inspection of, such data. If the Parties are unable to agree on a method for such production, the Parties shall submit any dispute to the Court.

D.   <u>Structured Databases</u>.  To the extent the Plaintiffs request data or information (other than email) that is stored in a structured database or aggregated database (including but not limited to Oracle, SQL Server, DB2, Microsoft Access (*.mdb), Lotus Notes/Domino Server non-email databases), the Defendants will make reasonable and prompt efforts to determine the methods by which such data can be produced, and the Parties agree to meet and confer to address the production and production format of the responsive data, including (1) the nature and scope of the ESI contained in the database, (2) the business purpose for the database, (3) the organization of ESI

7

contained in the database, including any schema, tables, columns and fields, (4) the existence and feasibility of standard and custom reporting and exporting features. After such conferral, the Parties shall agree on a production format for the structured data at issue. To the extent the Parties' agreed production format for a given set of structured data is not feasible or causes the Defendants undue burden, the Parties agree to meet and confer to discuss a different form of production. Nothing in this Protocol will be interpreted to require the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection during either the conferral process or, if necessary, when seeking the Court's intervention.

E.    <u>Numbering/Endorsement</u>.  The Parties agree to meet and confer if there are any disputes regarding the specific details of numbering and endorsement format.

1.    All produced documents will be Bates-numbered as described in this paragraph and as further detailed in Appendix A.  For documents produced in image format, each page will have a unique, sequential Bates number; for other documents (e.g., native files), a single Bates number will be assigned to the document.  A produced document's first or only assigned Bates number will serve as its unique Control ID with which the produced file will be named.

2.    Where information or materials have been redacted, the Producing Party shall reflect such redaction with a "Redacted" label "burned" onto the document's image in the same area(s) as the redacted information appears.  Failure to comply with this procedure shall not waive any protections. For the avoidance of doubt, this provision is not intended to expand any Party's right to redact material within responsive documents.

F.    <u>Form of Production/Color</u>.  All files will be produced in native format by default, except for (1) email and (2) non-spreadsheet files that are redacted for privilege, which may be produced as images.  Where a document produced in image format contains color, and that color is

crucial for understanding of the document, such images will be produced in color, without the need for a specific request by the receiving Party, by default.  Other images may be produced in black and white.

       G.    <u>Redaction of Confidential Personal Information</u>.  Except where relevant to an issue in this Action (including but not limited to claims, defenses, and damages) and not otherwise protected, Defendants may redact any document or metadata field containing Confidential Personal Information.  For purposes of this Protocol, Confidential Personal Information does not include an individual's name, but does include an individual's personal contact information (e.g., domains of personal email addresses, personal phone numbers, and residential address), social security number, personal financial information (e.g., bank account numbers, and credit card numbers), and medical or health information (e.g., "Protected Health Information" as defined under the Health Insurance Portability and Accountability Act and its implementing regulations (45 C.F.R. Parts 160-164)). For the avoidance of doubt, an individual's personnel or employment records, including information relating to an individual's compensation by Norfolk Southern, are not Confidential Personal Information in their entirety, but may contain Confidential Personal Information as defined herein, such as Protected Health Information. Documents that are redacted for this purpose must be so marked on the redaction text.

       H.    <u>Entire Document Families</u>.  A Document Family[3] will be produced together and will be consecutively Bates-numbered, with parent documents followed immediately by all child document(s).  Family members that are withheld on the basis of privilege shall be produced as slipsheets indicating the basis of withholding.  The Document Family must be identified using the

---

[3] "Document Family" means a group of related documents. A "parent document" is an electronic file that includes, attaches, references, or embeds, at least one other electronic file (a "child document") by means of any kind of attachment or hyperlink. A "Document Family" includes messages (e.g., email or chats) sent in any platform used or controlled by Defendants, including the M365 environment, that point to a file that is stored elsewhere within any platform used or controlled by Defendants, including the M365 environment (e.g., OneDrive or SharePoint).

"BegAttach" and "EndAttach" fields designating the beginning and ending of each Document Family, in accordance with Appendix B.

I.     Production Delivery.  The Producing Party shall produce document images, native format files, text files, and load files by secure FTP or other secure electronic transfer system or document repository; or by other mutually agreeable method.  For productions delivered via electronic transfer, the Producing Party shall provide a letter containing the information that would otherwise be on the label. Each production shall be accompanied by an index identifying, at a minimum: (1) the date of the production, (2) the custodians with data in the production and/or the structured data sources that are found within the production, (3) the Bates range of documents in the production. To the extent that a production includes any confidential information protected under any applicable protective order filed with the Court, the label or letter for that production shall indicate as much.  All methods of delivery must be encrypted or, if not possible, at least password-protected; the Producing Party will provide a decryption key or password under separate cover at the time of production.

## VII.     **PRIVILEGE**

The Parties agree to meet and confer to address issues related to privilege, including an appropriate non-waiver order under Fed. R. Evid. 502(d), and the timing, content, and format of privilege logs.

## VIII.     **GENERAL PROVISIONS**

A.     Discoverability and Admissibility.  This Protocol does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI.  Nothing in this Protocol shall be construed to affect the admissibility of any document or data.  All objections, including but not limited to the non-discoverability or inadmissibility of any document or data, are

preserved and may be asserted at any time.

B.  Producing Party's Right to Review Own Documents.  This Protocol does not limit a

Producing Party's right to conduct a review of documents, ESI, or information (including

metadata) for relevance, responsiveness, and/or segregation of privileged and/or protected

information before production.

C.  Proportionality.  The Parties agree to take the proportionality considerations

addressed in the Federal Rules of Civil Procedure into account for purposes of preservation and

production of ESI and paper documents in this Action.

D.  Non-Party Documents. A Party that issues a subpoena ("Issuing Party") upon any

non-party shall include with the subpoena a copy of this Order and any protective orders agreed to

or entered in this Action.  The Issuing Party shall inform the recipient of the subpoena that the

Parties in this Action have requested that non-parties produce documents in accordance with the

specifications set forth in this Protocol to the extent reasonably feasible.  The Issuing Party shall

promptly produce to all other Parties a copy of any documents and ESI (including any metadata)

obtained from a non-party in accordance with the Federal Rules of Civil Procedure and subject to

all the procedures and protections set forth in any protective orders agreed to or entered in this

Action. The Parties will meet and confer before serving any subpoenas in this matter on

commercial e-mail providers, such as Google or Yahoo, or any social media companies, such as

Facebook or Twitter.

E.  Modification.  Any practice or procedure set forth in this Protocol may be modified

by written agreement of the Parties.

F.  Dispute Resolution.  The Parties will act in good faith to try and resolve any

disputes regarding the issues set forth in this Protocol prior to ~~filing a motion with~~ the Court or

giving informal notice, along with a certification of the effort made, to ^ B.Y.P.

otherwise seeking relief.  Regarding all disputes, if the Parties are unable to resolve the dispute

11

after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

AGREED AS TO FORM

Dated: June 26, 2023                    Respectfully submitted,

                                        /s/ Seth A. Katz
                                        Seth A. Katz (pro hac vice)
                                        BURG SIMPSON ELDREDGE HERSH
                                        & JARDINE, P.C.
                                        40 Inverness Drive East
                                        Englewood, CO 80112
                                        303-792-5595
                                        303-708-0527 (fax)
                                        skatz@burgsimpson.com

                                        M. Elizabeth Graham (pro hac vice)
                                        GRANT & EISENHOFER, P.A.
                                        123 S. Justison Street, 6th Floor
                                        Wilmington, DE 19801
                                        303-622-7000
                                        303-622-7100 (fax)
                                        egraham@gelaw.com

                                        Jayne Conroy (pro hac vice)
                                        SIMMONS HANLY CONROY
                                        112 Madison Avenue, 7th Floor
                                        New York, NY 10016
                                        212-784-6400
                                        212-213-5949 (fax)
                                        jconroy@simmonsfirm.com

                                        Michael Morgan (pro hac vice)
                                        MORGAN & MORGAN
                                        20 North Orange Ave., Suite 1600
                                        Orlando, FL 32801
                                        407-420-1414
                                        407-245-3389 (fax)
                                        mmorgan@forthepeople.com

                                        *Plaintiffs Interim Class Counsel and Co-Lead Counsel*

WILMER CUTLER PICKERING
  HALE AND DORR LLP

ALAN SCHOENFELD*
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com

DAVINA PUJARI*
CHRISTOPHER A. RHEINHEIMER*
One Front Street, Suite 3500
San Francisco, CA  94111
Tel.: (628) 235-1000
Fax: (628) 235-1011
davina.pujari@wilmerhale.com
chris.rheinheimer@wilmerhale.com

ALBINAS PRIZGINTAS*
2100 Pennsylvania Avenue NW
Washington, DC  20036
Tel.: (202) 663-6000
Fax: (202) 663-6363
albinas.prizgintas@wilmerhale.com

MICHELLE LISZT SANDALS*
60 State Street
Boston, MA  02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
michelle.sandals@wilmerhale.com

* Pro hac vice

REDGRAVE LLP

/s/ MONICA MCCARROLL
JONATHAN M. REDGRAVE*
MONICA MCCARROLL*
4800 Westfields Boulevard, Suite 250
Chantilly, VA 20151
Tel.: (703) 592-1155
Fax: (703) 230-9859
jredgrave@redgravellp.com
mmccarroll@redgravellp.com

DICKIE, MCCAMEY &
  CHILCOTE, P.C.

J. LAWSON JOHNSTON
SCOTT D. CLEMENTS
AARON M. PONZO*
PAUL A. ROMAN, JR.*
Two PPG Place, Suite 400
Pittsburgh, PA  15222
Tel.: (412) 281-7272
Fax: (412) 888-811-7144
ljohnston@dmclaw.com
sclemenets@dmclaw.com
aponzo@dmclaw.com
proman@dmclaw.com

*Counsel for Defendants
Norfolk Southern Corporation and Norfolk Southern Railway Company*

13

IT IS SO ORDERED.


___June 29, 2023_____          ___/s/ Benita Y. Pearson_____
Date                                 The Honorable Benita Y. Pearson
                                     United States District Judge

## APPENDIX A – ADDITIONAL PRODUCTION SPECIFICATIONS

1.   Native Production. Except with regard to Email files, structured data, and redacted documents that are not spreadsheets, all ESI shall be produced in native format. This provision shall not prevent the Parties from later agreement in writing to a production format other than native for certain files or filetypes.

2.   <u>Image Formatting</u>. Emails will be produced as static TIFF images.

   a.   Where a document produced in image format contains color, and that color is necessary for understanding of the document, such images will be produced in color, without the need for a specific request by the receiving Party, by default. Other images may be produced in black and white.

   b.   When imaged, all documents shall include and show field codes.

   c.   TIFF images shall be processed and produced in a manner that maintains and displays (i.e., shall force on) all hidden columns or rows, hidden text or worksheets, speaker or presenter notes, and tracked changes and comments (maintained as last saved).  If a file ordinarily to be produced as an image under this ESI Protocol cannot be produced in such a manner, the native version shall be produced absent other agreement of the Parties. This provision does not require the production of privileged material and does not alter a Producing Party's ability to withhold or redact privileged information from the types of content listed in this paragraph.

   d.   If a document otherwise subject to production in image format under this ESI Protocol cannot be converted to an image without error due to password protection, corruption or some other issue that renders the document unreviewable, the document shall be produced in native format.

3. <u>Metadata</u>.  No Party has an obligation to create or manually code metadata that does not exist as part of the original metadata of the document.  The Parties agree to meet and confer to the extent such information cannot be automatically populated with industry standard ESI processing tools.  The Parties shall provide non-privileged information in the metadata fields attached as Appendix B associated with each document produced in a Concordance-format delimited file with a .DAT file extension.  The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each document.  When a document is withheld for attorney-client privilege or work product, all metadata for the withheld document is excluded from the .DAT file.

4. <u>Text Files</u>.  Each document produced in image format under this ESI Protocol shall be accompanied by a text file containing the text for that document.  Each text file shall be named using the Bates Number of the first page of the corresponding production item and the production load file shall contain a path link to the produced text file in the "TEXTLINK" metadata field described in Appendix B.

    a. <u>Unredacted documents</u>. The text of each unredacted ESI item produced in image format shall be extracted directly from the native file to the extent technically possible. OCR will be used to provide text for the following record types that typically do not have text available to extract: hard-copy documents, .JPG, .JPEG, .TIF, .TIFF, and .PDF.

    b. <u>Redacted documents</u>. To the extent that a document is redacted, the text files shall not contain the text of the redacted portions, but shall indicate where the redactions were made, and the text of the Producing Party's redaction label. The Producing Party may use OCR of redacted images to provide text for redacted documents.

5. <u>Bates Numbering</u>.

    a. A Producing Party should use a consistent format for the Bates numbers it uses across its productions.

b.   Bates numbers will be created so as to identify the Producing Party, and each Producing Party shall use a consistent prefix and number padding across their respective productions.

c.   Numerical suffixing is permitted where re-production of documents occurs.

d.   For a document produced in image format, the Bates number will be electronically "burned" onto the image at a location that does not obliterate or obscure any information from the source document.

e.   For a document produced in native format such that "burning" a Bates number onto each page is not possible, the document's Bates number shall be affixed to the document by an alternative means, such as to the file name of the produced native document.  The database record for that file shall include a single-page image branded with this Bates number, any confidentiality designation, and the phrase "Document Produced Natively."  The production load file shall contain a path link to the produced native file as specified in the "NATIVELINK" metadata field described in Appendix B.

f.   Should a Bates number or other designation obscure any information originally appearing on the document, the Producing Party will reproduce such document upon reasonable request.

6.   <u>Natives Requiring Redaction</u>. Redacted spreadsheet files, including Microsoft Excel files, will be redacted natively. If a document that otherwise would be produced in native format requires redaction, and such document is not a spreadsheet, it may be produced in image format or as a redacted native, along with the corresponding redacted text.  The Producing Party shall, however, make reasonable efforts to ensure that any such documents that are produced only as images are

formatted so as to be readable.  Documents produced in native format with redactions must also be maintained in unredacted form.

### APPENDIX B – METADATA PRODUCTION FIELDS

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE |
|---|---|---|
| BEGINDOC | First Bates Number associated with document (including prefix) | All |
| ENDDOC | Last Bates Number associated with document (including prefix) | All |
| BEGATTACH | First Bates Number (i.e., BeginDoc) of parent document in the family (including prefix) | All |
| ENDATTACH | Last Bates Number (i.e., EndDoc) of last child in the family (including prefix) | All |
| PAGECOUNT | Number of Bates Numbers associated with document (i.e., BeginDoc to EndDoc) (corresponds to number of pages for documents produced in image format) | All |
| ATTACHMENTCOUNT | Number of attachments; populated for parent email records only | Email |
| CUSTODIAN | Source of document (e.g., individual custodian name, database or archive name, shared area, etc.) | All |
| ALLCUSTODIANS | When global deduplication has been employed, all custodians who are sources of an identical document | All |
| NATIVE TYPE | Type of native file loaded into the system | Email, EFiles |
| FILEEXTENSION | File extension of document | Email, EFiles |
| FILENAME | File name of document | Email, EFiles |
| FILESIZE | Size of the file in bytes | Email, EFiles |
| FILEPATH | File path to native file as it existed in original environment | Email, EFiles |

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE |
|---|---|---|
| ALLFILEPATHS | When global deduplication has been employed, file path to native for sources of an identical document | Email, EFiles |
| DATETIMESENT | Date (mm/dd/yyyy) and time (hh:mm:ss) the parent email was sent | Email |
| DATETIMERECEIVED | Date (mm/dd/yyyy) and time (hh:mm:ss) the parent email was received | Email |
| DATETIMECREATED | Date (mm/dd/yyyy) and time (hh:mm:ss format) that non-email data was created | EFiles and Attachments |
| DATELASTMODIFIED | Date (mm/dd/yyyy) and time that (hh:mm:ss format) that non-email data was last modified | EFiles and Attachments |
| AUTHOR | Author field where available | EFiles |
| TO | To field extracted from email file types (not populated for attachments unless they are also emails) | Email |
| FROM | From field extracted from email file types (not populated for attachments unless they are also emails) | Email |
| CC | CC field extracted from email file types (not populated for attachments unless they are also emails) | Email |
| BCC | BCC field extracted from email file types (not populated for attachments unless they are also emails) | Email |
| SUBJECT | Subject line extracted from email file types (not populated for attachments unless they are also emails) | Email |
| CONVERSATION INDEX | Email thread created by the email system | Email |
| DATESTARTED | Start date and time (mm/dd/yyyy hh:mm:ss) for calendar appointments | Email |
| TITLE | Title field where available | EFiles |
| CONFIDENTIALITY | Level of Confidentiality per Protective Order | All |
| REDACTED | Does the document contain redactions (Y/N)? | All |

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE |
|---|---|---|
| REDACTION REASON | Redaction reason designation (will be blank for documents without redactions) | All |
| HASHVALUE | Document-level MD5 or SHA1 hash value | All |
| TIME ZONE | Time zone in which the native file was processed | Email, EFiles |
| NATIVELINK | Path and filename to produced native file format (*see* Paragraph 4(e) in Appendix A) | Email, EFiles |
| TEXTLINK | Link to text file (*see* Paragraph 3 in Appendix A) | All |
| PRODUCTIONVOLUME | Unique identifier for the production in which the document is contained | All |

# EXHIBIT 10

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**IN RE: INSULIN PRICING LITIGATION**                    MDL No. 3080

## TRANSFER ORDER

**Before the Panel:**[*]  The litigation before us concerns an alleged scheme between insulin manufacturers and pharmacy benefit managers ("PBMs") to artificially and fraudulently inflate the price of insulin and other diabetes medications.  The principal players in the alleged scheme are insulin manufacturers Eli Lilly and Company, Novo Nordisk, Inc., and Sanofi-Aventis U.S., LLC, and three PBMs – CVS Caremark, Express Scripts, Optum Rx, and their various corporate affiliates.  From 2017 to 2021, the litigation over these issues was concentrated largely in the District of New Jersey.[1]  In the last two years, federal civil actions involving the alleged insulin pricing scheme were filed by Arkansas, Illinois, Mississippi, Montana, and Kansas ("Moving State Plaintiffs"), as well as other state and local government plaintiffs, in a number of other districts.  Against this backdrop, the Moving State Plaintiffs have filed a motion under 28 U.S.C. § 1407 to centralize their five actions, as listed on Schedule A, in the Southern District of Mississippi but excluding the four New Jersey Insulin Pricing Actions.[2]  Alternatively, they request the District of New Jersey.

Since the filing of the motion, the Panel has been notified of eight related actions pending in six additional districts.[3]  At oral argument, movants stated that they support centralization of potential tag-along actions filed by other governmental plaintiffs.

---

[*] Judge David C. Norton did not participate in the decision of this matter.

Additionally, one or more Panel members who could be members of the putative classes in the related actions have renounced their participation in these classes and participated in this decision.

[1] *See In re Insulin Pricing Litig.*, No. 17-00699 (D.N.J.) ("Indirect Purchaser Consumer Action"); *MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, No. 18-02211 (D.N.J.); *Minnesota v. Sanofi-Aventis U.S. LLC*, No. 18-14999 (D.N.J.); and *In re Direct Purchaser Insulin Pricing Litig.*, No. 20-3426 (D.N.J.) (together, "the New Jersey Insulin Pricing Actions").

[2] The actions on the motion assert claims for unjust enrichment and violation of the state plaintiffs' respective state consumer protection statutes.  Four of the five actions also assert a claim for civil conspiracy.  None asserts antitrust claims.

[3] Six are actions by local governmental entities (*Albany County, Lake County, Jackson County, County of Monmouth, City of Cleveland*, and *Bossier Parish*); one is by a group of independent

All responding defendants oppose centralization. If the actions are centralized over their objections, defendants Eli Lilly, Novo Nordisk, and Sanofi-Aventis request the District of New Jersey and, alternatively, are unopposed to the District of Kansas, while the PBM defendants[4] request the District of Kansas in the first instance. The PBM defendants also assert that, if an MDL is created, it should include all state and county insulin pricing actions. Responding plaintiffs take varying positions. Plaintiffs in four potential tag-along actions (*Albany County*, *Lake County*, *County of Monmouth*, and *City of Cleveland*) support centralization in the District of New Jersey. Plaintiffs in two other potential tag-along actions (*Jackson County* and *Sistema Integrado*) oppose centralization and, in the alternative, request exclusion of their actions. Plaintiff in the *Louisiana* potential tag-along action also requests exclusion of its action, though taking no position on centralization of the other actions. If the actions are centralized, opposing plaintiffs variously suggest the Western District of Missouri, the Southern District of Mississippi, and the District of Puerto Rico as transferee district.[5]    Plaintiffs in the New Jersey Indirect Purchaser Consumer Action oppose centralization and, alternatively, request the District of New Jersey as transferee district.

The parties opposing centralization primarily argue that (1) state-specific issues will make centralization inefficient; and (2) informal coordination is a preferable alternative to centralization. With respect to state-specific issues, the parties assert that the state law claims in all actions on the motion and most of the potential tag-along actions differ significantly, and factual differences will arise from the involvement of distinct state governmental agencies and state-funded health insurance plans and programs. These arguments are unpersuasive. First, four of the five actions on the motion allege the same civil conspiracy claim, albeit under different state laws. And the fifth action alleges the existence of the same conspiracy, though not asserting conspiracy as a cause of action. Considering that the alleged conspiracy to fraudulently raise insulin prices is at the heart of all actions, the alleged factual and legal differences implicated by the involvement of distinct state laws and programs do not preclude centralization. We often have held that the assertion of different legal claims or additional facts is not significant where, as here, the actions arise from a common factual core. *See In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390-91 & n.5 (J.P.M.L. 2014). Moreover, it is "within the very nature of coordinated or consolidated pretrial proceedings in multidistrict litigation for the transferee judge to be called upon to apply

---

[4] physician associations (*Sistema Integrado*); and one is a state *parens patriae* action (*Louisiana*). These and any other related actions are potential tag-along actions. *See* Panel Rules 1.1(h), 7.1 and 7.2. We also were notified of two other related actions (*California* and *Puerto Rico*), which recently were remanded to state court and thus are no longer before us.

[4] The responding PBM defendants are CVS Health Corp., CaremarkPCS Health, LLC, Caremark, LLC, Caremark Rx, LLC, CVS Pharmacy, Inc. (together, "CVS Caremark"), Evernorth Health, Inc. (formerly Express Scripts Holding Co.), Express Scripts, Inc., Express Scripts Administrators, LLC, ESI Mail Pharmacy Service, Inc. Express Scripts Pharmacy, Inc., Medco Health Solutions, Inc. (together, "Express Scripts"), and OptumRx, Inc.

[5] Plaintiffs in the *California* and *Puerto Rico* related actions filed briefs opposing centralization before their actions were remanded to state court. California also suggested that, even if its action proceeds separately in state court, the Central District of California should be the transferee district.

the law of more than one state." *See In re CVS Caremark Corp. Wage and Hour Emp't Practices Litig.*, 684 F. Supp. 2d 1377, 1378 (J.P.M.L. 2010).

We have considered the parties' arguments in support of informal coordination and find, on this record, that it does not provide a workable solution. The various arguments in support of informal coordination were premised on the involvement of few actions and few counsel in the litigation – with many parties noting that the state plaintiffs in all five actions on the motion are represented by the same outside counsel. But there are presently at least eight potential tag-along actions involving five additional groups of non-overlapping plaintiffs' counsel, not counting the plaintiffs' counsel in the New Jersey Insulin Pricing Actions. Additionally, each manufacturer and PBM group has different national lead counsel – six different defense counsel in total. And including potential tag-along actions, the actions are now pending in eleven districts. We also observe that this litigation involves unusually complex issues concerning an alleged multilateral, industry-wide conspiracy that revolves around a long history of rebate agreements and multitiered pricing practices for numerous insulin products. The large number of districts and plaintiffs' and defense counsel, combined with the complexity of the issues, likely will pose significant obstacles to informal coordination. Informal coordination also appears unlikely to address the risk of inconsistent rulings.

Although all actions on the motion before us are state *parens patriae* actions, we received extensive briefing and oral argument on whether the MDL should include actions brought by other states, counties, and private entities. The core factual issues in these related actions are the same as in the state actions on the motion and name the same insulin manufacturers and PBMs as defendants. Discovery and pretrial motions undoubtedly will overlap among these related actions despite the allegedly unique legal claims they assert.[6] Additionally, the Panel often has recognized that many of the objections raised by the parties – for example, pending motions for remand to state court and procedural differences between individual and class claims – are no obstacle to transfer as such matters routinely are managed by the transferee judge. Thus, we intend to include related governmental and private actions concerning the alleged insulin pricing scheme in the MDL through the conditional transfer order process.[7]

On the basis of the papers filed and the hearing session held, we find that these actions involve common questions of fact, and that centralization in the District of New Jersey will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. All actions share factual questions concerning an alleged scheme between insulin manufacturers and pharmacy benefit managers to artificially and fraudulently inflate the price of insulin and other diabetes medications,[8] and involve the same alleged participants – namely,

---

[6] The potential tag-along actions, like the actions on the motion, assert claims for unjust enrichment, civil conspiracy, and violation of state consumer protection laws. Some actions also assert violation of the Racketeer Influenced and Corrupt Organizations Act and state antitrust law.

[7] The parties will have an opportunity to object to transfer of their actions after the CTO is issued. *See* Panel Rule 7.1.

[8] The non-insulin medications at issue in the actions on the motion are Ozempic, Victoza, Trulicity,

insulin manufacturers Eli Lilly and Company, Novo Nordisk, Inc., and Sanofi-Aventis U.S. LLC, and, on the PBM side, CVS Caremark, Express Scripts, Optum Rx, and their various corporate affiliates. The central factual allegations in support of the alleged insulin pricing scheme are the same in all actions: the insulin manufacturers negotiate with and pay secret rebates to PBMs to ensure preferential treatment of their insulin and diabetes medications on covered drug lists known as formularies, they arbitrarily raise the list prices for the products to cover these payments, and, as a result, the published list price of the drugs are fraudulent, in contrast to reflecting legitimate market forces. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary.

After weighing all factors, we have selected the District of New Jersey as the transferee district for this litigation. Selection of this district enables us to assign this litigation to the Honorable Brian R. Martinotti, who presides over the three most advanced actions concerning the alleged insulin pricing scheme. His familiarity with the issues in this litigation will serve to maximize the efficient conduct of pretrial proceedings.[9] This is particularly true considering that he presides over a proposed nationwide settlement with one of the defendants that allegedly will impact plaintiffs' claims in this MDL. Additionally, two of the three manufacturer defendants have their headquarters in this district; thus, common evidence likely will be located there. Judge Martinotti is an experienced transferee judge with the willingness and ability to manage this litigation efficiently. We are confident he will steer this litigation on a prudent course.

IT IS THEREFORE ORDERED that the actions listed on Schedule A are transferred to the District of New Jersey and, with the consent of that court, assigned to the Honorable Brian R. Martinotti for coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

_Karen K. Caldwell_
Karen K. Caldwell
Chair

| | |
|---|---|
| Nathaniel M. Gorton | Matthew F. Kennelly |
| Roger T. Benitez | Dale A. Kimball |
| Madeline Cox Arleo | |

---

and Soliqua, which movants describe as glucagon-like peptide-1 receptor agonists, or "GLP-1" drugs. The complaints allege that Novo Nordisk makes Ozempic and Victoza; Eli Lilly makes Trulicity; and Sanofi-Aventis makes Soliqua.

[9] We take no position on whether the New Jersey Insulin Pricing Actions should be formally included in the MDL given the advanced posture of those actions. We leave this decision, and all matters related to the conduct of pretrial proceedings, to the discretion of the transferee court.

IN RE: INSULIN PRICING LITIGATION                    MDL No. 3080

## SCHEDULE A

Eastern District of Arkansas

GRIFFIN v. ELI LILLY AND COMPANY, ET AL.,
     C.A. No. 4:22−00549

Northern District of Illinois

THE STATE OF ILLINOIS v. ELI LILLY AND COMPANY, ET AL.,
     C.A. No. 1:23−00170

District of Kansas

THE STATE OF KANSAS v. ELI LILLY AND COMPANY, ET AL.,
     C.A. No. 5:23−04002

Southern District of Mississippi

THE STATE OF MISSISSIPPI v. ELI LILLY AND COMPANY, ET AL.,
     C.A. No. 3:21−00674

District of Montana

THE STATE OF MONTANA, ET AL. v. ELI LILLY AND COMPANY, ET AL.,
     C.A. No. 6:22−00087

# EXHIBIT 11

Case 2:23-md-03080-BRM-RLS Document 123-1 Filed 03/22/24 Page 247 of 289 PageID:
Case 3:19-md-02885-MCR-GRJ Document 448 Filed 06/17/19 Page 1 of 18
1343

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to All Cases | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

## PRETRIAL ORDER NO. 10

## ORDER GOVERNING PRODUCTION OF DOCUMENTS AND <u>ELECTRONICALLY STORED INFORMATION</u>

The following Order governs the production of documents and electronically stored information ("ESI") and shall apply to all discovery of ESI and hard copy documents in this case, unless the Parties agree in advance and in writing or if this Order is modified by the Court.

Except as specifically set forth herein, this Order does not: (a) alter or affect the applicability of the Federal Rules of Civil Procedure ("Federal Rules") or any Local Rules of the U.S. District Courts ("Local Rules"), as applicable; (b) address, limit, determine, or affect the relevance, discoverability, or admissibility as evidence of any document or ESI, regardless of whether the document or ESI is to be preserved, is preserved, or is produced; or (c) alter or affect the objections to discovery available under the Federal Rules. The purpose of this Order is to facilitate the exchange of ESI and hard copy documents in an efficient manner and in accordance with the Federal Rules. By stipulating to this Order and agreeing to produce documents, generally, in a particular form or forms, no Party waives any objections to producing any particular document or category of documents on any grounds whatsoever.

I.      **<u>Format for Defendants' Productions</u>**

The following section governs the production of documents and electronically stored information ("ESI") by 3M Company, Aearo Technologies LLC, Aearo Holdings, LLC, Aearo

Case 2:23-md-03080-BRM-RLS Document 123-1 Filed 03/22/24 Page 248 of 288 PageID: 1344
Case 3:19-md-02885-MCR-GRJ Document 448 Filed 06/17/19 Page 2 of 18

Page 2 of 18

Intermediate, LLC, Aearo, LLC, and any of their related or affiliated entities or individuals named as defendants herein (collectively, "Defendants"), and shall apply to all discovery of ESI and hard copy documents by Defendants in this case, unless the Parties agree in advance and in writing or if this Order is modified by the Court.

(a)    <u>File Types and Formats.</u>  All spreadsheet (*e.g.*, Microsoft Excel, Corel Quattro, etc.) files shall be produced as native files with TIFF placeholder images.  All word processing (*e.g.,* Microsoft Word), presentation (*e.g.,* Microsoft PowerPoint), image (*e.g.,* .jpg, .gif), and PDF files shall be produced as native files with TIFF placeholder images where reasonably possible, unless redactions are required, in which case such files shall be produced as TIFFs.  All media files, such as audio and video files, shall be produced as native files with TIFF placeholder images. Emails shall be produced as TIFFs. The Parties will meet and confer on the production of other file types, such as CAD drawings, GIS data, materials and prototypes testing, etc.  In advance of depositions, the Parties reserve the right to produce TIFF versions of any previously produced native file at their discretion.

(b)    <u>Native Files.</u>  Any document produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential."  For each native file produced, the production will include a *.tiff image slipsheet indicating the production number of the native file and the confidentiality designation, and stating "File Provided Natively."  To the extent that it is available, the original document text shall be provided in a document-level multi-page UTF-8 with BOM text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet language shall be provided in the *.txt file

Case 2:23-md-03080-BRM-RLS Document 123-1 Filed 03/22/24 Page 249 of 288 PageID:
Case 3:19-md-02885-MCR-GRJ Document 443 Filed 06/17/19 Page 3 of 18
1345

Page 3 of 18

with the text path provided in the *.dat file. Native files will be produced in a separate folder on the production media. Where redaction makes production of native-format files other than spreadsheets infeasible, the Parties will confer to determine a reasonably usable form for the production.

(c)     <u>TIFF Images.</u>  Any document produced as TIFF images shall be named according to the Bates number of the corresponding TIFF image. Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image. All TIFF images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image. These *.tiff images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.

(d)     <u>Digital Photos.</u>  Where reasonably possible, all digital photographs will be produced as full color image files in their native file format at their original resolution.

(e)     <u>Databases, Structured, Aggregated or Application Data.</u>  The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source or otherwise maintained by an application. The Parties will reasonably cooperate in the exchange of information concerning such databases to facilitate discussions on productions and production format. If the Parties cannot reach agreement, the matter will be decided by the Court or its designee.

(f)     <u>Hard Copy Documents.</u>  Documents that exist in hardcopy will be scanned to *.tiff image format as set forth in Subsection I(c) above. Defendants' hard copy documents that are not text-searchable shall be made searchable by OCR prior to

Case 2:23-md-03080-BRM-RLS Document 123-1 Filed 03/22/24 Page 250 of 288 PageID: 1346
Case 3:19-md-02885-MCR-GRJ Document 443 Filed 06/17/19 Page 4 of 18

Page 4 of 18

production where possible. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized[1]). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. Defendants will make their best efforts to unitize the documents correctly.

(g)     De-NISTing.  Electronic files will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

(h)     Deduplication.  Defendants shall make reasonable efforts to de-duplicate ESI.  ESI produced by Defendants shall be globally de-duplicated across all collected custodial and non-custodial sources.  Documents are considered exact duplicates if a document family or stand-alone file has a matching MD5 or SHA-1 hash value as compared against the same document type (i.e., family or stand-alone file). Hash values of emails will be calculated on the concatenated values of at least the following fields: From, To, CC, BCC, Subject, Date Sent, Time Sent, Attachment Names, Body, and the hash values of all attachments. The names of all custodians and non-custodial sources who were in possession of a document prior to deduplication will be populated in the ALL

---

[1]     Logical Unitization is the process of human review of each individual page in an image collection using logical cues to determine pages that belong together as documents. Such cues can be consecutive page numbering, report titles, similar headers and footers, and other logical indicators.

Case 2:23-md-03080-BRM-RLS Document 123-1 Filed 03/22/24 Page 251 of 288 PageID:
Case 3:19-md-02885-MCR-GRJ Document 443 Filed 06/17/19 Page 5 of 18
1347

Page 5 of 18

CUSTODIANS metadata field. The original file paths of a document prior to deduplication will be populated in the ALL FILE PATHS[2] metadata field.

(i)     <u>Embedded Files.</u>  Embedded files, except for images embedded in emails, are to be produced as family groups.  Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

(j)     <u>Dynamic Fields.</u>  Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]"), rather than the values for such fields existing at the time the file is processed.

(k)     <u>Parent-Child Relationships.</u>  For email families, the parent-child relationships (the association between emails and attachments) should be preserved.  Email attachments should be consecutively produced with the parent email record.

(l)     <u>Time Zone.</u>  All provided metadata pertaining to dates and times will be standardized to UTC.

(m)     <u>Bates Numbering.</u>  Bates numbering should be consistent across the production, contain no special characters, and be numerically sequential within a given document.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder.  Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which

---

[2]    ALL FILE PATHS metadata field shall include the original file/folder paths, including file name for non-emails, where reasonably available, of all the locations where copies of the item were located at the time of collection, separated by semi-colons, in the order corresponding to the order of names in ALL CUSTODIANS. For emails collected from container files (*e.g.*, .pst's), these include the original file paths of the container files and the location of the emails within the folder structure of the mail container/.pst from which it was collected, where reasonably available.

Case 2:23-md-03080-BRM-RLS    Document 123-1    Filed 03/22/24    Page 252 of 288 PageID:
Case 3:19-md-02885-MCR-GRJ    Document 449    Filed 06/17/19    Page 6 of 18
1348

Page 6 of 18

they were attached.  In addition, wherever possible, each *.tiff image will have its assigned

Bates number electronically "burned" onto the image.  The Bates number shall:

> (i)    be consistent across the production;

> (ii)    contain no special characters; and

> (iii)    be numerically sequential within a given document.

    (n)    <u>Excluded File Types.</u>  Absent a particularized need and good cause

showing, the Parties agree that there is no need to collect ESI from the following sources:

> (i)    Deleted, slack, fragmented, or other data only accessible by forensics;

> (ii)    Random access memory (RAM), temporary files, or other data difficult
> to preserve without disabling the operating system;

> (iii)  On-line access data such as temporary internet files, history, cache,
> cookies, and the like;

> (iv)  Back-up data that is duplicative of data that can be collected elsewhere;
> and

> (v)  Server, system, or network logs.

    (o)    <u>Redactions.</u>  Other than as permitted by this Order or the order concerning

confidentiality agreed and/or entered in this litigation, no redactions for relevance may be

made within a produced document or ESI item.  Any redactions shall be clearly indicated

on the face of the document, with each redacted portion of the document stating that it has

been redacted and the basis for the redaction, and a metadata field shall indicate that the

document contains redactions and the basis for the redaction (e.g., "A/C Privilege").

Where a responsive document contains both redacted and non-redacted content,

Defendants shall produce the remainder of the non-redacted portions of the document and the text/OCR corresponding to the non-redacted portions.

       (i)    <u>Spreadsheets.</u>  Spreadsheet files requiring redaction, including Microsoft Excel files, will be redacted within the native file, and the redacted native file will be produced as provide herein.

       (ii)    <u>Other Documents.</u>  All native files that require redaction shall first be processed to show and reveal all color, comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its native application, all of which shall be evident in the generated TIFF image(s).  Where reasonably possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed.  Email header information (e.g. date, subject line, etc.) should not be redacted unless it is independently privileged.  The production of a document in a redacted form does not affect Defendants' obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log.  Defendants shall honor reasonable requests for the production of particular redacted documents in other formats where the TIFF image is not reasonably usable.  Redacted versions of documents that contained color in their un-redacted form shall be produced in color in TIFF format.

(p)    <u>Load File Formats.</u>  ESI will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format.  The Concordance (*.dat) load file shall be provided with UTF-8 encoding.

(q)  <u>Metadata to Be Produced.</u>  The metadata fields detailed in Exhibit A should be produced for each document to the extent that such information is available or, in the case of metadata created during processing such as Bates numbers, created, at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log.

(r)  <u>Extracted Text and OCR.</u>  Each document, whether produced in Native or in TIFF format, and whether originally existing in electronic or in hard copy, shall be produced with extracted text or OCR, as described herein.

(i)  <u>Extracted Text (Emails, Unredacted Native ESI, and Redacted Spreadsheets).</u> All email, un-redacted ESI, and redacted spreadsheets produced as native files, should be provided with complete document-level extracted text files. Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments.

(ii)  <u>OCR (Redacted Native ESI, Hard Copy Documents).</u>  In the event a document other than spreadsheets, *e.g.*, Excel files, contains text that is to be redacted, Optical Character Recognition ("OCR") text files should be provided for

Case 2:23-md-03080-BRM-RLS Document 123-1 Filed 03/22/24 Page 255 of 288 PageID: 1351
Case 3:19-md-02885-MCR-GRJ Document 449 Filed 06/17/19 Page 9 of 18

Page 9 of 18

any un-redacted portions of the documents.  Document-level OCR text files shall also be provided for all hard copy scanned documents.  OCR software must be set to the highest quality setting for any previously unscanned paper documents, and reasonable quality control measures shall be used to ensure that the integrity of scanned copies of previously unscanned paper documents are preserved for OCR (e.g., pages are not angled or skewed, text is not blurred or obscured, etc.). Documents containing foreign language text must be OCR'd using the appropriate settings for that language, (e.g., OCR of German documents must use settings that properly capture umlauts and OCR of Asian language documents must properly capture the relevant Asian characters).  Settings such as "auto-deskewing" and "auto-rotation" must be turned on during the OCR process to maximize text recognition on any given page.

(iii)    <u>Format of Extracted Text and OCR.</u> The extracted full text and/or OCR text for all deliverables should be in separate document-level, UTF-8 with BOM encoded TXT files provided in a separate folder.  The number of TXT files per folder should be limited to 1,000 files.

(s)    <u>Encryption.</u>  To maximize the security of information in transit, any media or file sharing electronic document repository on which documents are produced must be encrypted by Defendants. Production deliverables provided via File Transfer Protocol ("FTP") shall be made available on a secured FTP connection with AES 256-bit encryption.  All production volumes uploaded by Defendants via this file sharing document repository shall remain available for download for no less than thirty (30) calendar days. In such cases, the Defendants shall transmit the encryption key or password to a requesting

Case 2:23-md-03080-BRM-RLS   Document 123-1   Filed 03/22/24   Page 256 of 288 PageID:
Case 3:19-md-02885-MCR-GRJ   Document 448   Filed 08/17/19   Page 10 of 18
1352

Page 10 of 18

Party, under separate cover, contemporaneously with sending the encrypted media, or correspondence indicating the availability of the encrypted FTP deliverables.

II.    **Defendants' Identification and Classification of Documents**

 (a) <u>Agreement Regarding Technology-Assisted Review</u>**.**

  (i) <u>TAR Cooperation.</u> The Parties acknowledge the benefits of using technology-assisted review ("TAR") technology and methodology, such as predictive coding systems, in assisting in the identification of responsive documents. Used properly and transparently between the Parties, subject to negotiation, an appropriate and reasonable TAR protocol can aid in identifying responsive documents, and do so with maximum efficiency.

  (ii) <u>TAR Limitations.</u> By agreeing to use TAR in this MDL, Defendants do not acknowledge or concede that they are obligated to use TAR in any other matter, including, without limitation, earplug-related matters pending in any state courts. Moreover, by agreeing to use TAR in this MDL, the Defendants do not intend to waive any rights or protections pursuant to privacy, confidentiality, attorney-client privilege, attorney work product, and any other privileges, protections, or objections to discovery (individually, "Privilege"; collectively, "Privileges"). Defendants preserve all such Privileges.

  (iii) <u>TAR Protocol.</u> The Parties agree to use TAR to identify and classify potentially responsive documents in connection with Defendants' production. The Parties will jointly agree to the TAR system that they propose to use to identify and classify documents, and set out their proposed TAR system, workflow and validation processes in a separate formal TAR protocol to be agreed upon between the Parties.

Case 2:23-md-03080-BRM-RLS Document 123-1 Filed 03/22/24 Page 257 of 288 PageID: 1353
Case 3:19-md-02885-MCR-GRJ Document 445 Filed 06/17/19 Page 11 of 18

Page 11 of 18

(iv)  <u>Meet and Confer.</u>  The Parties agree to meet and confer concerning the TAR protocol to be used for Defendants' production, and to submit their joint proposed TAR protocol or points of dispute for resolution by the Court within fourteen (14) days of the date of the entry of this order.

III.  **Required Production Format for Plaintiffs' Productions**

(a)  The Parties anticipate that the production of Plaintiffs' case-specific materials will be the subject of a future Court order.  Absent further agreement or order of the Court, Plaintiffs' counsel shall produce case-specific materials in native file format, PDF, or such other reasonably useable format that retains the relevant characteristics of the original document.  Any document that requires redaction shall be produced in image format, *e.g.*, TIFF or PDF.  All of Plaintiffs' production documents shall be uniquely named and sequentially numbered with Bates Stamps.

(b)  For email families in Plaintiffs' productions, the parent-child relationships (the association between emails and attachments) should be preserved, *i.e.*, email attachments should be consecutively produced with the parent email record.

(c)  To the extent Plaintiffs produce a document other than in native format, and Defendants request metadata or other information, the Parties shall reasonably confer about an alternative production format for such document, including the necessity for such alternative production format.  Any such request by a Defendant shall be specific and targeted.

IV.  **Provisions Applicable To Both Plaintiffs' and Defendants' Productions.**

(a)  <u>Known Responsive Material Must Be Produced.</u>  ESI that is known to Plaintiffs' Counsel or Defendants' Counsel to be non-privileged and responsive to a

discovery request shall be produced without regard to whether it was responsive to a search term, of high "relevance" by a TAR text classification algorithm, or otherwise flagged as potentially responsive by another search technique, unless Counsel specifically identifies the documents as being withheld pursuant to a specific objection.

(b)     <u>Discrete Document Collections.</u>     Those portions of a Plaintiff's or Defendant's documents that represent discrete document collections, such as substantially relevant folders of ESI specifically segregated by Defendants, Defendants' employees, or Plaintiffs, before or after the commencement of this litigation, that are substantially relevant to the claims and defenses in this proceeding, shall be reviewed for responsiveness (subject to appropriate claims of privilege) without regard to whether a given document in the collection is responsive to a search term, of high "relevance" by a TAR text classification algorithm, or otherwise flagged as potentially responsive by another search technique.

(c)     <u>Unsearchable Documents.</u>  Documents that are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective, such as images, spreadsheets, etc., must be reviewed without culling by search terms, predictive coding, or other technologies that rely primarily on text.

(d)     <u>Use of Other Technology or Methodology.</u>  Prior to use or further use by any Party other than as specified within this protocol, the Parties must meet and confer to disclose and discuss any proposed use of software or other technologies used to identify or eliminate sources of potentially responsive documents, including keyword or Boolean searching, file type culling, de-duplication, filtering, near de-duplication, e-mail thread suppression, clustering or concept searching.  Use of such technologies to reduce the

Case 2:23-md-03080-BRM-RLS Document 123-1 Filed 08/22/24 Page 259 of 288 PageID:
Case 3:19-md-02885-MCR-GRJ Document 445 Filed 06/17/19 Page 13 of 18
1355

Page 13 of 18

volume of materials to be collected or reviewed, other than as described within this document, requires the opposing party's consent and will be subject to a separate mutually agreed-upon stipulation or Order of the Court setting forth the protocol for the use of such technologies as negotiated by the Parties.

(e)  <u>Additional or Alternate Methodologies for Documents from Certain Custodians and Non-Custodial Data Sources.</u>  The Parties will meet and confer to address the need for and implementation of additional or alternate methodologies for identifying possibly responsive documents from custodians and non-custodial data sources that may warrant such treatment.

(f)  <u>Mobile and Handheld Device Documents and Data.</u>  If responsive data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that data shall be produced in accordance with the generic provisions of this protocol.  To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained on any mobile or handheld device.

V.  **Parties' Agreed-Upon Early Production of Documents**

(a)  <u>Documents Produced by Defendants in Prior Proceedings.</u>  Documents produced by any Defendant herein in *3M Co. v. Moldex-Metric, Inc.,* Cause No. 12-611 (D. Minn.); *Moldex-Metric, Inc. v. 3M Innovative Properties Company,* Cause No. 14-1821 (D .Minn.); and/or *United States ex rel. Moldex-Metric, Inc. v. 3M Company,* 3:16-cv-01533-MBS, (the "Prior Proceedings") shall be produced within ten (10) days of entry of this Order.  Wherever possible, all metadata available shall be produced in accordance with

Case 2:23-md-03080-BRM-RLS   Document 123-1   Filed 08/22/24   Page 260 of 288 PageID: 1356
Case 3:19-md-02885-MCR-GRJ   Document 446   Filed 06/17/19   Page 14 of 18

Page 14 of 18

Exhibit A.   Documents produced from Prior Proceedings shall bear the original Bates numbers assigned to them in those proceedings.   To the extent any documents produced in Prior Proceedings are withheld from Defendants' production to Plaintiffs, Defendants shall identify the basis on which the documents are being withheld, including any impacted custodians and document categories, to enable the Parties to confer about the potential later production of such documents.

      (b)    <u>Production of Documents from Prior FOIA Requests.</u>   The Parties agree to produce documents obtained by Plaintiff Leadership, Defense Counsel, or Defendants pursuant to Freedom of Information Act ("FOIA") requests received as of the date of the entry of this Order, within ten (10) days of entry of this Order in accordance with the production format specifications described in Section I.   By agreeing to produce FOIA material in this MDL, the Parties do not acknowledge or concede that they are obligated to produce FOIA material in any other matter, including, without limitation, earplug-related matters pending in any state courts. Moreover, by agreeing to produce FOIA material in this MDL, the Parties do not intend to waive any rights or protections pursuant to privacy, confidentiality, attorney-client privilege, attorney work product, and any other privileges, protections, or objections to discovery (individually, "Privilege"; collectively, "Privileges"). The fact of the Parties' agreement to produce these FOIA materials in this proceeding shall not be used by any person against any Party or their counsel in any way, in this or any other matter or proceeding, including as a basis to seek production of any other documents.   The Parties preserve all rights.

## VI.     **Subpoenas, FOIA Requests, and Touhy Requests**

(a)     If either Defense Counsel or Plaintiff Leadership (as the "Issuing Party") issue a non-party subpoena, a FOIA request, or a Touhy request after the date of this Order, the Issuing Party shall include a copy of this Order with the subpoena and request that third parties produce data and documents in accordance with the production specifications set forth in Section I, to the extent feasible.

(b)     Nothing in this Order is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of third parties to object to a subpoena.

(c)     The Issuing Party is responsible for producing any documents obtained pursuant to a subpoena, FOIA request, or Touhy request to the other Party, within fourteen (14) days of receipt of those documents.

(d)     If the non-party production is not Bates-stamped, the Issuing Party will apply unique prefixes for the non-party production and Bates numbers prior to producing them to the other Party.

## VII.     **ESI Liaisons**

To promote transparency, communications, and cooperation between the Parties, the Parties shall designate e-discovery liaisons for purposes of meeting and conferring on ESI topics. As proposed by the Parties, the ESI liaison for Plaintiffs shall be David Buchanan, or his designee, and the ESI liaison for 3M shall be Michelle Six, or her designee. All productions of ESI by any Party or non-party shall be sent to the Parties' respective ESI liaison and lead counsel, and any identified designees.

Case 2:23-md-03080-BRM-RLS Document 123-1 Filed 03/22/24 Page 262 of 288 PageID:
Case 3:19-md-02885-MCR-GRJ Document 426 Filed 06/17/19 Page 16 of 18
1358

Page 16 of 18

VIII.        **Miscellaneous**

(a)      <u>Impact of Order on Other Obligations.</u> Nothing in this agreement shall affect the preservation requirements set forth in previous orders, subsequent orders, or any other preservation obligations of the Parties for these proceedings or for other purposes, such as pursuant to court order, administrative order, statute, or in response to other anticipated litigation.  By preserving documents or ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

(b)      <u>Continuing Obligations.</u>  The Parties will continue to meet and confer regarding any issues as necessary and appropriate, including agreeing to modify any of the dates and periods set forth in this Order.  This Protocol does not address or resolve any objections to the scope of the Parties' respective discovery requests.

(c)      <u>Reservation of Rights.</u>  The Parties retain the right, upon reviewing any productions made by another Party in this Action or conducting other investigation and discovery, to request that Documents from additional non-custodial data sources and custodians be produced.  The Parties shall meet and confer regarding such request(s) prior to any search or production related thereto.

(d)      <u>Document Storage.</u>  During the pendency of this litigation, the Parties shall make reasonable efforts to preserve the originals of all hard copy and ESI documents produced to the opposing Parties and to preserve the original native format version of any ESI produced in non-native format.

Case 2:23-md-03080-BRM-RLS Document 123-1 Filed 03/22/24 Page 263 of 288 PageID: 1359
Case 3:19-md-02885-MCR-GRJ Document 445 Filed 06/17/19 Page 17 of 18

Page 17 of 18

(e)     <u>No Waiver.</u>  This Order shall not constitute a waiver of any objection to the ultimate discoverability, privilege, admissibility, or relevance of any records addressed herein.

(f)     <u>Good Faith Compliance and Conferral Obligation.</u>  The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this Order.  No Party may seek relief from the Court concerning compliance with this Order unless it has first conferred with the other Parties.  The Parties shall reasonably cooperate in the exchange of information concerning data systems and ESI as may be necessary to facilitate the discovery and exchange of ESI in these proceedings and to further the exchange of information commenced at the Parties' Rule 26(f) Conference.

(g)     <u>Non-English Documents.</u>  To the extent that Documents are produced that contain languages other than English, in whole or in part, the Producing Party shall produce each such Document in the original language or languages in which it was written when collected.  The Producing Party has no obligation to create a translation of the Documents or any portion thereof, but shall provide any translation of the Document or any portion thereof that exists or is created through machine translation prior to production of the Document.

(h)     <u>Alternate Formats.</u>  Notwithstanding the Parties' stipulations herein, upon reasonable request made by the Receiving Party, the Parties shall confer regarding the production in an alternate format of a document previously produced in accordance with this order.

Case 2:23-md-03080-BRM-RLS Document 123-1 Filed 03/22/24 Page 264 of 288 PageID: 1360
Case 3:19-md-02885-MCR-GRJ Document 425 Filed 06/17/19 Page 18 of 18

Page 18 of 18

(i) <u>Third-Party Data.</u> The Parties will meet and confer before serving any subpoenas in this matter on commercial e-mail providers, such as Google or Yahoo, or any social media companies, such as Facebook or Twitter.

(j) <u>Effect of Order.</u> The Parties' agreement to this Order is without prejudice to the right of any Party to seek an order from the Court to rescind or amend this Order for good cause shown. Nothing in this Order shall abridge the rights of any person to seek judicial review or to pursue other appropriate judicial action with respect to any discovery ruling made by the Court in this matter.

**DONE** and **ORDERED** on this 17th day of June, 2019.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT 12

1

2

3

4

5

6    UNITED STATES DISTRICT COURT

7    NORTHERN DISTRICT OF CALIFORNIA

8    SAN FRANCISCO DIVISION

9 | In RE: VOLKSWAGEN "CLEAN DIESEL"     MDL No. 2672 CRB (JSC)
     MARKETING, SALES PRACTICES, AND
10   PRODUCTS LIABILITY LITIGATION
                                          **PRETRIAL ORDER NO.** 18
11   ────────────────────────────────/    STIPULATION AND ORDER
                                          GOVERNING THE PRODUCTION OF
12   This Document Relates To:            HARD COPY DOCUMENTS AND
                                          ELECTRONICALLY STORED
13        ALL ACTIONS (except securities  INFORMATION
          actions).                  /
14   ────────────────────────────────

15

16

17        WHEREAS, on February 25, 2016, the Court issued Pretrial Order No. 9, which, in

18   relevant part, directed the Parties[1] to meet and confer and to submit to the Court a proposed order

19   governing protocols to be followed regarding electronically stored information;

20        WHEREAS, the Parties mutually seek to reduce the time, expense, and other burdens

21   associated with discovery, and to better define their obligations with respect to such information

22   and materials;

23

24

25

26   ───────────────────────
     [1] All defined terms herein are the same as those used in Pretrial Order No. 12: "Stipulated Protective Order" (Dkt.
27   No. 1255) ("PTO 12"), unless otherwise noted.

28

WHEREAS, the Parties, having met and conferred, submit this *Stipulation and Proposed Order Governing the Production of Hard Copy Documents and Electronically Stored Information* (the "Order"), and respectfully request that the Court enter it as an Order;

NOW THEREFORE, it is hereby STIPULATED and ORDERED:

## I.       PURPOSE AND SCOPE

**A.       General.**  This Order shall govern the production of hard copy documents and electronically stored information ("ESI") by the Parties in this Action.[2]  All Productions made pursuant to this Order are subject to prior orders issued in this matter, including but not limited to Pretrial Order Nos. 9, 12 and 16.  This Order does not supersede prior pretrial orders issued in this Action, which shall remain in effect except to the extent inconsistent with the provisions herein.

**B.       Scope.**  Nothing in this Order is intended to be an exhaustive list of discovery obligations or rights of the Party producing Discoverable Information ("Producing Party") or a Party requesting Discoverable Information ("Requesting Party"), or any other Party or Non-Party.  To the extent additional obligations or rights not addressed in this Order arise under the Federal Rules of Civil Procedure, local rules, or applicable state and federal statutes, they shall be controlling.

**C.       Limitations and Non-Waiver.**  The Parties and their attorneys do not intend by this Order to waive their rights to any protection or privilege, including the attorney-client privilege and work product doctrine, or their rights to object to any discovery requests.

**D.       Variations.**  In light of the varying and disparate data systems and architectures employed by the Parties, variations from this Order may be required.  In the event that any Party identifies a circumstance where application of this Order is not technologically possible or

---

[2] This Order does not apply to any of the Bosch defendants.

practicable, the Producing Party will disclose to the Requesting Party the reason(s) for, and circumstances surrounding, the need to vary from this Order, and the Parties will meet and confer in an effort to reach agreement on an appropriate deviation from this Order. In the event that the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

## II. COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

## III. IDENTIFICATION AND COLLECTION PROTOCOL FOR ESI

Pretrial Order No. 9 ("PTO 9") § 4.D.i. addresses the procedures for Defendants' Initial Production, as set forth in that Order, and nothing herein is intended to impose additional or differing obligations with respect to such Initial Production.

For document productions that will occur in response to Fed. R. Civ. P. 34 Requests for Production served in this Action (i.e., those not covered in PTO 9 § 4.D.i.):

A. The Parties have exchanged on a rolling basis certain information regarding the identification, preservation, and collection of sources of relevant ESI. The Parties agree to continue to meet and confer in an effort to agree upon the following: (a) custodians from whom Documents will be produced; (b) search methodology and search terms, if any, to be applied, and Defendants Volkswagen AG's, Volkswagen Group of America Inc.'s, Audi AG's, Audi of America, Inc., and Volkswagen Group of America Chattanooga Operations, LLC's (collectively, "Volkswagen Defendants") use of technology assisted review or similar technologies; (c) location(s) and description(s) of relevant data sources including custodial, non-custodial, and third-party Documents; and (d) applicable timeframe for collection and review of Documents.

**B.** The Parties agree to the following approaches to filtering of ESI:

1. De-duplication: The Parties shall use commercially acceptable methods (e.g., MD5 or SHA-1 hash values) to identify duplicate ESI and globally de-duplicate ESI. In the case of emails, the hash value shall be calculated on the concatenated value of the following fields: to, from, cc, bcc, date sent, email subject, and full body of the email. Family groups, e.g., an email and its attachments, shall be de-duplicated only against other family groups as entities, e.g., using hash values calculated on concatenations of the hash values of all family members, and no document which is not part of a family group shall be de-duplicated against a member of a family group. The metadata provided by the Parties other than the United States for the produced version of each document withheld as a duplicate, shall include the following information for each such withheld document: Duplicate Custodians, Duplicate Custodians File Name, Duplicate Custodians Directory Path, and Duplicate Custodians Folder Path. The metadata provided by the United States for the produced version of each email withheld as a duplicate will include the Duplicate Custodians; the metadata provided by the United States for the produced version of all non-email ESI shall include the Duplicate Custodians, Duplicate Custodians File Name, and Duplicate Custodians Directory Path. The Parties, in each production made pursuant to the Order, shall produce overlays updating the foregoing metadata to reflect updates to the designated metadata fields in that production.

2. De-NISTing: Electronic files will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list. If a Producing Party proposes to apply additional filters

that identify common system files, non-user generated files, and/or zero-byte files (*i.e.* computer files containing no data), the Producing Party will provide details to the Parties regarding the filters, how they work, and what impact (if any) they will have on the collections or productions. No later than five (5) days after such disclosure, the Parties will meet and confer in an effort to reach agreement on any additional filters. In the event that the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

3.  Relevant Time Frame/Date: The Parties may limit processing of Documents to that which was created, modified, sent, or received between certain dates as agreed by the Parties, or set forth by the Court.

**C.  Continuing Obligations**. The Parties will continue to meet and confer regarding any issues as necessary and appropriate, including agreeing to modify any of the dates and time-frames set forth in this Order. This Order does not address or resolve any objections to the scope of the Parties' respective discovery requests.

**D.  Reservation of Rights**. The Parties retain the right, upon reviewing any productions made by another Party in this Action or conducting other investigation and discovery, to request that Documents from additional non-custodial data sources and custodians be produced. The Parties shall meet and confer regarding such request(s) prior to any search or production related thereto.

**E.  Known Responsive ESI Must Be Produced.** ESI that is known to a Defendant to be responsive to a discovery request or relevant to the subject matter of this action shall not be withheld on the grounds that it was not identified as responsive by the protocol described in, or developed in accordance with, this Order.

**F.** **Unsearchable Documents.** Documents for which text-based search technologies are fundamentally ineffective, such as images, databases, spreadsheets, etc., must be reviewed without culling by search terms, predictive coding, or other technologies that rely primarily on text. Prior to the production of such unsearchable items, the Producing Party may conduct a page-by-page review for responsiveness, confidentiality, privilege, and other protections. With agreement of the Receiving Party, a Producing Party, in good faith, may elect to use statistical sampling techniques to determine whether to review discrete, identified populations of unsearchable documents for responsiveness, confidentiality, privilege, and other protection. In the event that the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

**G.** **Technologies.** Prior to use or further use by any Party other than as specified within this Order, the Parties will meet and confer to disclose and discuss any proposed use of software or other technologies used to exclude or eliminate sources of potentially responsive documents, including keyword or Boolean searching, file type culling, de-duplication, filtering, predictive coding, near de-duplication, e-mail thread suppression, clustering or concept searching.

## IV. REVIEW PROTOCOL FOR ESI

**A.** **Technology Assisted Review by Volkswagen Defendants.**

1. At the request of Plaintiffs, the Volkswagen Defendants have agreed to use technology assisted review or similar technologies (e.g., predictive coding or advanced analytics) ("TAR Tool") as a means of including or excluding documents to be reviewed for responsiveness or for culling or otherwise limiting the volume of information to be reviewed for responsiveness. No later than 14 days after the entry of this Order, the Volkswagen Defendants will disclose the

following to the Requesting Party with regard to the TAR Tool and related application of it that the Volkswagen Defendants propose using:

    a)    The TAR Tool: a description of its selected vendor's TAR Tool being used and whether an active learning component exists.

    b)    Corpus: a description of the population of Documents from which samples will be drawn.

    c)    Culling: whether culling techniques will be used, and, if so, information describing the type of filters to be used, the data stores to be included, or any keywords to be used.

    d)    Control set: whether a control set will be used and, if so, any non-privileged/non-attorney work product protected parameters for deriving the control set.

    e)    TAR Metrics: whether validation exercises will be conducted and, if so, any non-privileged/non-attorney work product protected parameters for deriving the validation sample sets (including the confidence levels or intervals used to derive the validation sample sets).

2.    Following the disclosures in IV.A. 1a) – e) the Parties will meet and confer in an effort to reach an agreed upon TAR Protocol, including the processes and approaches for:

    a)    Classifying documents during the training and validation processes;

    b)    Handling of privileged documents;

    c)    Handling of non-English documents;

    d)    Disclosing or sharing TAR Metrics (e.g., recall, precision,

overturn, etc.); and

e)      Determining how and when the predictive model created by the TAR Tool is sufficiently trained; and

f)      Establishing a cutoff level for responsiveness.

3.      In the event that the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

4.      The Volkswagen Defendants reserve the right to review the documents classified as responsive by the TAR Tool for responsiveness, confidentiality and privilege and apply redactions consistent with PTO 12 prior to producing responsive, non-privileged documents.

**B.      Technology Assisted Review by Other Parties**.

1.      The Parties acknowledge that the need for and provisions of a TAR Tool protocol may be different for different Parties.  The Parties shall meet and confer concerning the use by Parties other than the Volkswagen Defendants of technology assisted review or similar technologies (e.g., predictive coding) as a means of including or excluding documents to be reviewed for responsiveness or of culling or otherwise limiting the volume of information to be reviewed for responsiveness.  If the Parties are unable to agree on a protocol for the use of such technology after meeting and conferring in good faith, the Parties shall notify the Court of their unresolved dispute(s) and seek resolution from the Court.

2.      A Party need not conduct any additional review of Discoverable Information subjected to, but classified as not responsive by, a TAR Tool as part of the identification of the subset of information that will be subject to review and production.  This limitation shall not excuse a Party from compliance with Fed. R.

Civ. P. 26(g).  Discrete collections of Documents that are specifically identified by a custodian as likely to be a set of responsive documents shall be collected without the use of search terms, TAR, or any other content-based filtering to cull or limit the scope of Documents from the discrete set or grouping.  The Producing Party may, in good faith, review the contents of any discrete collection for responsiveness, confidentiality, privilege or other protections from disclosure or production at the election of the Producing Party.  The Parties will meet and confer to attempt to come up with a resolution if review of the discrete collections without content-based filtering becomes burdensome or unreasonable. In the event that the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

**C.     Reassessment**.  After the completion of the search methodology meet and confer sessions, the Producing Party may encounter the need to reassess a search methodology and/or validation process and, in such case, the Producing Party should notify the Requesting Party and the Parties should meet and confer to address any issues in a reasonable and timely manner.

**D.     Good faith**.  The Parties will act in good faith and use these procedures to identify and reduce the potential for disputes that may arise in connection with the search and/or review methodologies selected by the Producing Party.

**V.     PRODUCTION OF HARD COPY DOCUMENTS**

Compliance with the procedures set forth below shall constitute compliance with Federal Rule of Civil Procedure 34(b)(2)(E).

**A.     Responsive** documents that were either (i) originally generated as or converted into ESI but now only exist in physical hard copy format, (ii) printed ESI that contains

new alterations since printed (*i.e.*, handwritten notes), or (iii) originally generated in hard-copy format shall be produced as single page, Group IV, 300 DPI TIFF format following the same protocols set forth herein. Each page shall be branded with a unique Bates number, which shall not be an overlay of the image. The images shall be accompanied by: (1) an OpticonTM or IPRO® "cross reference file" which associates each Bates number with its corresponding single-page TIFF image file; (2) a data load file containing Concordance® delimited text that will populate fields in a searchable flat database environment, containing one line for each document and each of the applicable fields as described in Appendix A, (a "Data Load File"), which will include the relative path to the text file for that document on the production media.

**B.** The Parties will use best efforts to unitize documents (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records), and maintain document relationships (*i.e.*, attachment status).

**C.** If an original document being produced as an electronic image contains color, the document must be produced in color as a single page, 300 DPI JPG images with JPG compression and a high-quality setting so as to not degrade the original image to the extent such a requirement for the production of color images does not require a Producing Party to re-collect or re-scan documents that already have been collected and scanned, or whose production is otherwise governed by PTO 9§ 4.D.i. Upon written request by the Requesting Party, the Producing Party shall take good faith measures to honor requests to produce color images where the Requesting Party believes in good faith that color is important to interpret the document. The Parties agree to meet and confer concerning any disputes over such requests. The Parties reserve the right to revisit their agreement to this paragraph if Defendants' productions reveal a large number of documents that appear to be in color where color appears to be important to interpret the document.

**D.** Optical Character Recognition ("OCR") text for each document must also be provided as a single file and named with the Bates number of the first page of the

document to which it corresponds. The OCR software must be set to the highest quality setting. Documents containing foreign language text must be OCR'ed using the appropriate settings for that language, (*e.g.*, OCR of German documents must use settings that properly capture umlauts). Scanned copies of paper documents must be subject to quality control measures to ensure the integrity of the image is preserved for OCR (*e.g.*, pages are not angled or skewed, text is not blurred or obscured, etc.). Settings such as "auto-deskewing" and "auto-rotation" should be used when appropriate during the OCR process to maximize text recognition on any given page. Documents that are redacted will be re-scanned using OCR software following redaction and only the OCR text of the non-redacted portions will be produced.

**E.** A delimited text file that contains available fielded data must also be included and at a minimum include Beginning Bates Number, Ending Bates Number, Beginning Attachment Number, Ending Attachment Number, Custodian, and Number of Pages. The delimiters for that file should be:

> Field Separator, ASCII character 20: "¶"
> Quote Character, ASCII character 254 "þ"
> Multi-Entry Delimiter, ASCII character 174: "®"

**F.** Identification of any objective coding, to the extent it exists at the time of production, for any hard copy documents must also be provided.

## VI. PRODUCTION OF ESI

Compliance with the procedures set forth below shall constitute compliance with Federal Rule of Civil Procedure 34(b)(2)(E).

**A.** **Form of Production.** Except as otherwise provided in this paragraph, production of all non-redacted ESI, with the exception of Microsoft Excel files and nonprintable files, shall include single-page Bates-stamped TIFF images, and accompanied by a load file with fielded data, a .txt file containing extracted text or OCR Text, and an image load file for the TIFFs. The Parties also shall produce non-redacted Microsoft PowerPoint,

Microsoft Excel, Microsoft Word and non-printable files in native format. All images of Microsoft Word documents and PowerPoint presentations shall be processed to show and reveal all comments, revision marks, speaker notes, or other user-created data that the source application can display to a user. Non-redacted Microsoft Excel documents and nonprintable files shall be produced in native format only with one page placeholder TIFF images as set forth in § VI.D below. Redacted ESI must be produced as TIFF images, accompanied by a load file with fielded data, a .txt file containing OCR'ed text, and an image load file for the TIFFs. Any documents embedded in a produced document, *e.g.*, an Excel .xls file embedded in a PowerPoint .ppt file, shall be produced separately as attachments (images embedded in emails must not be produced separately). Notwithstanding the forgoing, the production of structured and handheld data as identified and described in Sections VI.O and VI.P shall be made in accordance with the agreement of the parties contemplated by those sections.

**B.    Document Image Format.** Except as otherwise provided, all images must be produced as single-page, Group IV, 300 DPI TIFFs. If images are provided for an original document which contains color, the images will be provided as single page, 300 DPI JPG images with JPG compression and a high-quality setting so as to not degrade the original image to the extent such a requirement for the production of color images does not require a Producing Party to re-produce documents that have been produced pursuant to PTO 9 § 4.D.i. Upon written request by the Requesting Party, the Producing Party shall take good faith measures to honor requests to produce color images where the Requesting Party believes in good faith that color is important to interpret the document. The Parties agree to meet and confer concerning any disputes over such requests. The Parties reserve the right to revisit their agreement to this paragraph if Defendants' productions reveal a large number of documents that appear to be in color where color appears to be important to interpret the document.

**C.** E-mail and attachments will be produced according to the specifications in subparagraph VI.A, above. If the Producing Party redacts any part of the e-mail before producing it, OCR text may be provided in place of extracted text. E-mail attachments shall be processed as though they were separate documents, and the Data Load File shall include a field in which the Producing Party shall identify, for each e-mail, the Bates range of any attachments.

**D.** Native files will be produced in a separate folder on the production media. The Data Load File shall contain a field that identifies the file path of the native file corresponding to each document. For non-redacted Microsoft PowerPoint and Microsoft Word files, the Parties shall produce the native file and Bates-stamped TIFF images. For non-redacted Microsoft Excel files and non-printable files, the TIFF image shall be a one page placeholder that shows (a) the name of the native file, (b) a unique Bates number, and (c) a Confidentiality Designation.

**E.** Digital photographs will be produced as full color image files in .JPG format at their original resolution with Bates numbers electronically burned or branded onto them.

**F.** Embedded files shall be treated as though they were separate files, except that the Bates range of the parent document and the documents embedded therein shall be identified in the same manner as the Bates range of an e-mail attachment.

**G.** Before any Party produces any other kind of electronic data, including data from databases, CAD drawings, GIS data, videos, etc., the Parties will meet and confer to determine a reasonably useable form for the production.

**H. Text Files.** For each document, a single text file shall be provided along with the image files and the metadata discussed in Section VI.M. The text file name shall be the same as the Bates number of the first page of the document. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the document requires redaction, is an image file, or is any other native electronic file that does not contain text to extract (*e.g.,* non-

searchable PDFs). In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text. Extracted text shall be provided in UTF-8 text format.

**I.    Redactions.**    In situations where redaction of information is required, such redactions must be made in a way that ensures the integrity of the remaining text is preserved for OCR (*e.g.*, redactions must not obscure non-redacted text). Any redactions must be clearly visible on the face of the produced document (*e.g.*, the Parties must use black, not white, to make redactions on documents with a white background). Redactions shall be applied as set forth in PTO 12.

**J.    Document Unitization.**    For files produced as TIFF images, each page of a document shall be electronically saved as an image file. If a document consists of more than one page, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image files. The Parties shall produce a unitization file ("load file") for all produced documents in accordance with the following formatting:

**OCR and Extracted Text Files (.TXT Files):**
- Single text file per document containing all of the document's pages
- Filenames should be of the form:
  <Bates num>.txt
  Where <Bates num> is the BATES number of the first page in the document.
- Text must be encoded in UTF-8.

**Image Files:**
- Single page per image
- TIFF is Group IV compression, 300 dpi unless color or grayscale image is necessary, then .JPG would be acceptable
- Filenames should be of the form:
  "<Bates num>.<ext>," where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (.jpg, .tif).

**Index Files:**
- "Concordance Default" delimited text file utilizing the following characters:
  - The "comma" delimiter is "¶" (020)

- The "quote" delimiter is "þ" (254)
- The "new line" delimiter is "®" (174)
- First line must contain the column/field names (set forth in Paragraph 1(c) herein)
- Every row must have the same number of columns/fields (empty values are acceptable)
- Text must be encoded in UTF-8

The Parties agree to meet and confer to discuss all unitization file/load file specifications, if needed.

**K.** **Bates Numbering and Other Unique Identifiers.** For files produced as TIFF images, each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically burned onto the TIFF image in such a manner that information from the source document is not obliterated, concealed, or interfered with. There shall be no other legend or stamp placed on the document image unless a document (i) qualifies for confidential treatment pursuant to PTO 12, or any other protective order entered by this Court in this Action, or (ii) has been redacted in accordance with applicable law or other court order (including any protective order), entered by this Court or any other court. In the case of Confidential or Highly Confidential Information, as defined in PTO 12, or materials redacted in accordance with applicable law or other order (including any protective order) entered by this Court or another court, a designation may be burned onto the document's image at a location that does not obliterate or obscure any non-redacted information from the source document.

**L.** **Production Media.** Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC-compatible interface), or such other readily accessible computer or electronic media or via sFTP as the Parties may hereafter agree upon (the "Production Media"). The Parties shall accompany all document productions with a

letter identifying the production date and the Bates number range of the materials contained on such Production Media item.

**M.     Metadata.**  With each produced ESI file, the Parties must produce each of the applicable metadata fields described in Appendix A (to the extent available and technically achievable). The metadata must be produced in the following format:  (1) an OpticonTM or IPRO® "cross reference file" which associates each Bates number with its corresponding single-page TIFF image file; and (2) a Data Load File containing Concordance® delimited text that will populate fields in a searchable flat database environment, containing one line for each document and each of the applicable fields as described in Appendix A.  Unless otherwise specified, by producing metadata, each Party affirms that such metadata came from its records, with the exception of vendor-entered source/Custodian and document/production number fields.  Nothing in this stipulation requires a Party to manually populate a metadata field in Appendix A (other than Custodian and MD5Hash) if such fields cannot be extracted from a document, provided that the Parties agree to comply with reasonable requests for metadata that cannot be extracted from a document.   For the avoidance of doubt, nothing in this Order shall act as a waiver of any objections that may exist to the production of such data.

**N.     Attachments.**  Attachments must be mapped to their parent by the Attachment Range.   If a parent email or one of its attachments is produced, all members of its family, except for privileged documents, and associated text and metadata, must be produced.

**O.     Structured or Aggregated data – Databases, Enterprise Systems, and Third Party Cloud Systems.**  The Parties will meet and confer to address the identification, production, and production format of any responsive data contained in a database, other structured or aggregated data source, or third party cloud-based storage system.  Prior to any such meet and confer, the Producing Party(ies) will provide sufficient information to enable the Requesting Party(ies) to evaluate the Producing Party's proposed method and

format of production.  In the event that the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

**P.     Mobile and Handheld Device Documents and Data.**  The Parties will meet and confer to address the preservation, identification, production, and production format of any unique responsive documents and data contained on any mobile or handheld device, including responsive email, documents, application data, text files, voice mail, audio files, other text-based and image-based information and messages contained on such devices. In the event that the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

**Q.     Non-English Documents.**  The Parties shall produce any English translations of Non-English documents made in the normal course of business.  The Parties are not required to produce documents translated at the request of counsel.  The Parties shall meet and confer concerning procedures for using documents translated at the request of counsel in depositions and at trial. In the event that the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

**VII.   ENCRYPTION**

To maximize the security of information in transit, any media on which Documents are produced may be encrypted by the Producing Party.  In such cases, the Producing Party shall transmit the encryption key or password to the Receiving Party(ies), under separate cover.

**VIII.  EXCEPTION FILES**

The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI).  On a rolling basis (but no later than the date on which the custodial or non-custodial production from which the excepted files were culled is substantially complete), the Producing Party will identify such files, and inform the Requesting Party of the nature and extent of the unresolved imaging or form production problems.  The Parties shall meet and confer concerning additional measures to be undertaken to

access or process exception files, or any issues regarding the identification of such files. In the event that the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

## IX. PROCESSING OF NON-PARTY DOCUMENTS

A. A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and request that the non-Party produce documents in accordance with the specifications set forth herein.

B. The Issuing Party is responsible for producing to all other Parties any documents obtained pursuant to a subpoena to any non-Party in the form in which they were produced by the non-Party. To the extent practical given the data volume, productions by a non-Party should be produced by the Issuing Party to all other Parties within seven (7) calendar days of the non-Party's production to the Issuing Party.

C. For the avoidance of doubt, nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-Parties to object to a subpoena.

## X. USE OF DOCUMENTS DURING LITIGATION

Notwithstanding any other provision of this Order, the Parties may take any of the following actions with respect to documents and ESI:

A. Parties may, to the extent necessary to carry out their ordinary duties, edit or revise non-final documents that do not meet the following definition of Draft: Draft, when used to describe either an electronic or hard copy document, means a preliminary version of a document that has been shared by the author with another person (by email, print, or otherwise) or that the author no longer intends to finalize or to share with another person. However, the Parties shall preserve Draft documents for discovery.

B. The Parties may move unfiled documents or ESI into files or folders that adhere to an organizational scheme that was created before the Party joined the Action. Nothing in this paragraph prevents the Parties from implementing an organizational scheme that

applies only to documents or ESI created after the complaint was filed in this matter, provided that such organizational scheme was undertaken in good faith and in no way seeks to subvert the production of potentially relevant ESI.

**C.**     The Parties may edit or take down any data on a publicly accessible internet site, provided that a copy of any potentially responsive data is made before the change and is preserved for discovery.  The Parties agree to reasonably cooperate in stipulating to the authenticity of copies of publicly accessible internet sites.

**D.**     The Parties may add data to an intranet or private website.  The Parties may edit or take down any data on an intranet or private website, provided that a copy of the data is made before the change and is preserved for discovery.  The Parties may edit SharePoint sites, provided that auditing is enabled for the modification, editing, and deletion of items on that site.  The Parties must ensure that such SharePoint auditing identifies the user, date, time, field, file, and information impacted by such changes.

**E.     Preservation Does Not Affect Discoverability or Claims of Privilege.**  Nothing in this Order affects the preservation requirements set forth in Pretrial Order No. 15.  By preserving documents or ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

**F.     Other Preservation Obligations Not Affected**.  Nothing in this agreement shall affect any other obligations of the Parties to preserve documents or information for other purposes, such as pursuant to court order, administrative order, statute, or in response to other anticipated litigation.

**XI.     LIMITATIONS ON DISCOVERY**

**A.     No Discovery of Material Not Required To Be Preserved**.  Absent a showing of extraordinary circumstances, the Parties shall not seek discovery of items that need not be preserved pursuant to the Preservation Orders.  Any discovery request seeking such information must be served separately from discovery requests seeking other materials and must include a statement showing good cause for the discovery of such materials,

considering the limitation of Federal Rule 26(b)(2)(C). If any general discovery request is susceptible of a construction that calls for the production of items that need not be preserved pursuant to the Preservation Order, such items need not be searched for, produced, or identified on a privilege log pursuant to Fed. R. Civ. P. 26(b)(5).

**B.** **Privileged Materials in the Custody of Counsel**. The Parties shall meet and confer and attempt to reach agreement concerning whether there is a need to collect, search, or produce documents in response to general discovery requests that are in the possession of outside counsel to the Parties. The Parties agree that, in response to general discovery requests, the United States need not collect, search, or produce, ESI or other material located in the electronic mail servers or networks of the U.S. Department of Justice, provided that such electronic mail servers and networks are used for the purpose of generating and transmitting attorney work product and privileged material, and provided that any such material was created in preparation for litigation. This Paragraph shall not apply to databases containing ESI and other material collected from sources outside the offices of the U.S. Department of Justice for the purpose of discovery or investigation.

**XII.    PRIVILEGED INFORMATION AND PREPARATION OF PRIVILEGE LOGS**

Documents or Information subject to this Order that are subject to a claim of privilege shall be treated in a manner consistent with Pretrial Order No. 16, unless otherwise noted.

**XIII.    MISCELLANEOUS PROVISIONS**

**A.** The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this Order. No Party may seek relief from the Court concerning compliance with this Order unless it has first conferred with the other Parties.

**B.** **Third Party Data.** The Parties will meet and confer before serving any subpoenas in this matter on commercial e-mail providers, such as Google™ or Yahoo™, or any social media companies such as Facebook™ or Twitter™.

1  **C.    Effect of Order.** The Parties' agreement to this Order is without prejudice to the

2  right of any Party to seek an order from the Court to rescind or amend this Order for good

3  cause shown. Nothing in this Order shall abridge the rights of any person to seek judicial

4  review or to pursue other appropriate judicial action with respect to any discovery ruling

5  made by the Court in this matter.

6  **D.    Additional Requests.** The Parties reserve the right to propound additional

7  Requests for Production that expressly require the production of certain categories of

8  documents without relying on TAR.

9  **XIV.   INTEGRATION/APPENDICES**

10         The following documents are incorporated herein by reference: "Appendix A" is a table

11  describing the fields to be included in the document productions by each Producing Party and

12  governed by this Order.

13

14

15  **SO ORDERED**.

16  Dated:  O c{ '6, 2016

17                                              _____
                                                 CHARLES R. BREYER
18                                               United States District Court Judge

19  SO STIPULATED.

20  DATED:  May 3, 2016                          LIEFF, CABRASER, HEIMANN
                                                 AND BERNSTEIN L.L.P.
21                                               ELIZABETH J. CABRASER (83151)

22

23                                              */s/ Elizabeth J. Cabraser*
                                                 Elizabeth J. Cabraser
24

25                                               275 Battery St., 29th Floor
26                                               San Francisco, CA 94111-3339
                                                 Tel: (415) 956-1000
27
                                                 *Plaintiffs' Lead Counsel*
28

1   DATED: May 3, 2016                    U.S. DEPARTMENT OF JUSTICE

2

3                                         */s/ Joshua H. Van Eaton*
                                          Joshua H. Van Eaton
4

5                                         Environmental Enforcement Section
                                          Environment and Natural Resources Division
6                                         United States Department of Justice
                                          P.O. Box 7611
7                                         Washington, D.C. 20044-7611
                                          Telephone: (202) 514-5474
8                                         Facsimile: (202) 514-0097
                                          Josh.Van.Eaton@usdoj.gov
9

10                                        *Coordinating Counsel for the United States*

11

12  DATED: May 3, 2016                    FEDERAL TRADE COMMISSION

13

14                                        */s/ Jonathan Cohen*
                                          Jonathan Cohen
15

16                                        600 Pennsylvania Avenue NW, CC-9528
                                          Washington, DC 20580
                                          (202) 326-2551 -3197 (fax)
17

18                                        *Counsel for Plaintiff Federal Trade Commission*

19

20  Dated: May 3, 2016                    */s/ Robert J. Giuffra, Jr.*

21                                        Robert J. Giuffra, Jr.
                                          Sharon L. Nelles
22                                        William B. Monahan
                                          John G. McCarthy
23                                        SULLIVAN & CROMWELL LLP
                                          125 Broad Street
24                                        New York, New York  10004
                                          Telephone:  (212) 558-4000
25                                        Facsimile:  (212) 558-3358
                                          giuffrar@sullcrom.com
26                                        nelless@sullcrom.com
                                          monahanw@sullcrom.com
27                                        mccarthyj@sullcrom.com

28

1

*Co-Liaison Counsel for the Volkswagen Group Defendants*

2

3    Dated:  May 3, 2016

*/s/  Jeffrey L. Chase*

4

Jeffrey L. Chase
Michael B. Gallub

5

HERZFELD & RUBIN, P.C.
125 Broad Street

6

New York, New York  10004
Telephone:  (212) 471-8500

7

Facsimile:  (212) 344-3333
jchase@herzfeld-rubin.com

8

mgallub@herzfeld-rubin.com

9

*Co-Liaison Counsel for the Volkswagen Group Defendants*

10

11

12    Dated:  May 3, 2016

*/s/  Cari K. Dawson*

Cari K. Dawson

13

ALSTON & BIRD LLP
One Atlantic Center

14

1201 West Peachtree Street
Atlanta, Georgia  30309-3424

15

Telephone:  (404) 881-7766
Facsimile:  (404) 253-8567

16

cari.dawson@alston.com

17

*Liaison Counsel for Porsche Cars North America, Inc.*

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GOVERNING PRODUCTION OF HARD COPY DOCUMENTS AND ELECTRONICALLY STORED INFORMATION -                                                              - 23 -