# EXHIBIT A

***** FACSIMILE COVER SHEET *****

APR 28 2006 10:55

Message To:

891412968276829636

Message From:

00

26
Pages
Follow This Cover Page



MICHAEL G. BRESLIN
COUNTY EXECUTIVE

MICHAEL C. LYNCH
COUNTY ATTORNEY

DARIUS SHAHINFAR
DEPUTY COUNTY ATTORNEY

**COUNTY OF ALBANY**
**OFFICE OF THE COUNTY ATTORNEY**
COUNTY OFFICE BUILDING
112 STATE STREET, ROOM 900
ALBANY, NEW YORK 12207
PHONE: (518) 447-7110  FAX: (518) 447-5564
www.albanycounty.com

ASSISTANT COUNTY ATTORNEYS
CRAIG A. DENNING
EUGENIA KOUTELIS CONDON
GARY S. KEEGAN
SHEILA A. LAMONT
GREGORY A. RUTNIK
TONIA L. SUMMERS
CHRISTINE C. KELLY
MATTHEW J. CLYNE

April 25, 2006

Judy Clear
Contract Administration
PharmaCare Management Services, Inc.
620 Epsilon Drive
Pittsburgh, Pennsylvania  15238

**RE:  PharmaCare Management Services, Inc.**
**Resolution No. 270, Adopted July 11, 2005**

Dear Ms. Clear:

Attached herewith is one original of the above fully executed agreement.

By copy of this memorandum, please be advised that a copy of this agreement is being forwarded to the Department of Human Resources and the Albany County Comptroller's Office. In addition, please be advised that an original of this agreement is being retained in this Department's file.

Thank you for your assistance in this matter.

Very truly yours,

Eugenia Koutelis Condon
Assistant County Attorney

EKC/mag
Enclosure
cc:   Robert Conway, Commissioner, Department of Human Resources
      Hon. Michael Conners, Comptroller
      Necole M. Chambers

CONFIDENTIAL

## PHARMACARE MANAGEMENT SERVICES, INC.

### SPONSOR AGREEMENT

THIS AGREEMENT, made as of the 1st day of November, 2005, between PharmaCare Management Services, Inc., a Delaware corporation, with a place of business at 695 George Washington Highway, Lincoln, Rhode Island 02865 ("PharmaCare"), and County of Albany with a principal place of business at 112 State Street, Room 660, Albany, New York 12207 ("Sponsor", which is acting on behalf of its Plan).

WHEREAS, Sponsor has committed to provide a prescription drug plan for eligible covered persons; and

WHEREAS, PharmaCare has established a nationwide network of retail and mail service pharmacies to accept Sponsor's prescription drug plan; and

WHEREAS, PharmaCare has a remote electronic claims adjudication and processing system for adjudicating and processing claims made for prescription drugs and other goods and related services; and

WHEREAS, PharmaCare has a drug utilization review service by which the cost effectiveness, interaction and resulting therapeutic effect of various drugs is reviewed and monitored electronically; and

WHEREAS, Sponsor desires to engage PharmaCare to adjudicate and process claims on its behalf through the electronic claims adjudication and processing system and may request PharmaCare to implement drug utilization review now or in the future, and PharmaCare desires to furnish such services as described in this Agreement.

NOW, THEREFORE, in consideration of the mutual promises and agreements herein contained, the parties hereto agree as follows:

I.  **DEFINITIONS**

A.  "Ancillary Charge" means a charge in addition to the copayment or deductible, which a Covered Person is required to pay the Member Pharmacy when a Covered Person and/or Covered Person's physician requests that a pharmacy service be dispensed which is not in conformance with the Formulary or the MAC List.

B.  "Average Wholesale Price" or "AWP" means the current average wholesale price of a prescription drug as listed in the Medispan drug database or other nationally recognized price source designated by PharmaCare.

C.  "Benefits" mean the prescription drugs and other goods and related services covered by the Plan.

D.  "Covered Entity" means health plans, health care clearinghouses, and those health care providers who conduct certain financial and administrative transactions electronically, as defined under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the regulations promulgated thereunder by the U.S. Department of Health and Human Services (the "HIPAA Regulations").

E.  "Covered Person" means an individual who is eligible to receive Benefits in accordance with and under the terms of a Plan.

F.  "Disclosure" with respect to PHI, shall mean the release, transfer, provision of access to or divulging in any other manner of PHI outside the entity holding the PHI.

G.  "Effective Date" means the period beginning on November 1, 2005.

CONFIDENTIAL

H.    "PharmaCare Claims System" means the electronic system used to adjudicate and process claims made for Benefits.

I.    "PharmaCare DUR" means the concurrent drug utilization review program used by PharmaCare as further detailed in Exhibit C.

J.    "PharmaCare Program" means the PharmaCare Claims System, PharmaCare DUR and all other services which PharmaCare may provide to Sponsor.

K.    "Exclusions" mean the prescription drugs and other goods and related services not covered by the Plan.

L.    "Formulary" means a document proprietary to PharmaCare which (i) lists various prescription drugs, and (ii) is provided by PharmaCare to Member Pharmacies, physicians, other health care providers and/or Covered Persons for the purpose of guiding and prescribing, dispensing and reimbursement of prescription drugs. For a prescription drug not listed on a Formulary, a Covered Person may be required to pay a higher copayment or to pay the difference between the prescription cost of the non-Formulary drug and a Formulary drug when the two drugs are from the same therapeutic class.   Formularies are subject to periodic review and modification by PharmaCare and/or the Plan.

M.    "Individual" means the person who is the subject of the PHI.

N.    "Maximum Allowable Cost" or "MAC List" means a list of certain generic prescription drugs for which reimbursement will be paid by Sponsor through PharmaCare to the Member Pharmacy. A Covered Person may be required to pay an Ancillary Charge depending on the Plan design. From time to time, the MAC List is subject to periodic review and modification by PharmaCare to reflect market conditions.

O.    "Medispan" shall mean the nationally recognized drug pricing source utilized by the PharmaCare system to determine prices for covered drugs.   PharmaCare utilizes the weekly update product by MediSpan and may, in its sole determination, utilize any product of MediSpan.

P.    "Member Pharmacies" mean a nationwide network of retail pharmacies that have contracted with PharmaCare and may accept Sponsor's Plan.

Q.    "Plan" means Sponsor's prescription drug plan or plans.

R.    "Protected Health Information" ("PHI") means any information, whether oral or recorded by a Covered Entity in any form or medium: (i) that relates to the past, present or future physical or mental condition of an individual; the provision of health care to an individual; or the past, present or future payment for the provision of health care to an individual, and (ii) that identifies the individual or with respect to which there is a reasonable basis to believe the information can be used to identify the individual.

## II.    OBLIGATIONS OF SPONSOR

A.    Prior to the Effective Date, Sponsor shall provide PharmaCare, in a form approved by PharmaCare, with information concerning the Plan, as and when needed and in sufficient detail to allow PharmaCare to perform its obligations hereunder, including at least the following:

1.    The effective date and the expiration date of the Plan;

CONFIDENTIAL

2. The classes of dependents covered, including any age limits applicable to dependent children;

3. The estimated number of Covered Persons by geographic location;

4. The manner of distribution of PharmaCare identification cards to Covered Persons;

5. The Benefits and Exclusions under the Plan;

6. The parameters ("Parameters") for determining (i) whether and to what extent Benefits are covered by the Plan or Exclusions apply, and (ii) the amounts of all payments and the compensation rates to be offered for all Benefits;

7. The amount of the Plan deductible, or copayment, if any; and

8. Electronic eligibility information, including at least the following:

   (a) The names and identification numbers of all Covered Persons as of the Effective Date;

   (b) The relationship of each Covered Person to one another (e.g., qualified dependent) as applicable and such other information as may be reasonably required for adjudication of claims via the PharmaCare Claims System;

   (c) The date of birth of each Covered Person;

   (d) If Sponsor's Plan includes PharmaCare DUR, sufficient information to prepare Covered Persons' profiles for use in providing PharmaCare DUR services;

   (e) If Sponsor's Plan includes network planning, each Covered Person's home address; and

   (f) Updates to, additions to and deletions from eligibility information and Covered Persons' profiles on a continuous basis as such changes occur.

B. Sponsor warrants that if the Plan provides for the reimbursement to Covered Persons of the cost of prescription drugs purchased at non-Member Pharmacies, then the Plan shall state that such reimbursement shall be conditioned upon the submission of a claim for direct reimbursement in a form approved by Sponsor and PharmaCare, together with the Covered Person's proof of payment for the prescription drugs.

C. Prior to the Effective Date, Sponsor shall provide each Covered Person with complete and accurate information describing the Plan and the PharmaCare Program.

D. Sponsor represents that the Parameters and the information provided to PharmaCare pursuant hereto are consistent with the Plan in all respects.

E. Sponsor warrants that by the effective date of applicable law, its Plan shall be in compliance with the requirements of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), as explained in Article XI of this Agreement entitled "Special Provisions for Protected Health Information.

F. Sponsor represents that all provisions under this Agreement have been agreed to by its Plan.

CONFIDENTIAL

III.   OBLIGATIONS OF PHARMACARE

A.   PharmaCare shall enter the Plan's Parameters and eligibility information received from Sponsor into the PharmaCare Claims System. The information entered into the PharmaCare Claims System shall be deemed correct until PharmaCare is otherwise notified by Sponsor that corrections are required. PharmaCare shall promptly correct any errors brought to its attention.

B.   PharmaCare shall produce PharmaCare identification cards for distribution by Sponsor to all Covered Persons. Two PharmaCare identification cards per eligible family, bulk shipped to Sponsor locations, will be provided at no cost to Sponsor. The cost of additional PharmaCare identification cards or a more selective distribution, i.e. direct mailing, will be borne by Sponsor.

C.   PharmaCare shall take all reasonable steps to maintain its contracts with an adequate number of Member Pharmacies in the various geographic locations where Covered Persons are resident. PharmaCare shall furnish each Member Pharmacy with a summary description of the Benefits under the Plan. Sponsor acknowledges and agrees that the Member Pharmacies are chosen solely based on their willingness to provide services to the Covered Persons for the reimbursement specified by Sponsor's Plan and their professed willingness to abide by the Pharmacy Services Agreement with PharmaCare. Sponsor further acknowledges and agrees that PharmaCare shall not be responsible for any negligence, fraud or misconduct of any Member Pharmacy or any affiliate, director, officer, employee, agent, or parent of Member Pharmacy.

D.   PharmaCare, or its designated agent, shall process claims received from Member Pharmacies through the PharmaCare Claims System and may also process paper claim forms received from Covered Persons for direct reimbursement. PharmaCare, or its designated agent, shall determine eligibility and conformity to the Plan and effect payment of eligible claims and provide notification of declined or ineligible claims. If requested by Sponsor, PharmaCare shall also administer an initial benefit determination and appeals process for prescription drug benefit coverage consistent with the reasonable procedures requirement under the Employee Retirement Income Security Act of 1974 as amended ("ERISA"). However, Sponsor acknowledges that requests for prescription drug benefit coverage made to PharmaCare as a prior authorization or to a Member Pharmacy (or a non–Member Pharmacy under the direct reimbursement procedure) to fill a prescription are not "claims" made to the Plan under ERISA. Sponsor further represents and warrants that the Plan documents reflect the foregoing, and that non–PharmaCare appeals procedures exist in such documents for Covered Persons who do not receive prescription drug coverage under the Plan. The parties acknowledge that PharmaCare is not a fiduciary or plan administrator of Sponsor or Sponsor's Plans and that, with respect to the provision of services by PharmaCare under this Agreement, PharmaCare shall not assume any obligations of Sponsor, any named or unnamed fiduciary, or the Plan administrator under the provisions of ERISA. The parties agree that should Sponsor desire for PharmaCare to manage any part of the benefit determination or appeals process under ERISA, other than as set forth in this Section, such PharmaCare obligations shall be clearly set forth in a separate agreement between the parties.

E.   PharmaCare shall invoice Sponsor for the retail and/or mail service prescription claims amounts and applicable sales tax, if any, which have been processed by PharmaCare, or its designated agent, during the applicable period (the "Prescription Claims Invoice"). PharmaCare shall furnish to Sponsor a Prescription Claims Invoice no less frequently than twice a month.

F.   PharmaCare shall invoice Sponsor for the administrative fees specified in Exhibit A (the "Administrative Fees") which have become due during the applicable period

CONFIDENTIAL

(the "Administrative Fees Invoice"). PharmaCare shall submit to Sponsor an Administrative Fees Invoice no less frequently than monthly. (The Prescription Claims Invoice, the Administrative Fees Invoice, and any other invoice authorized under this Agreement are collectively referred to as the "Invoice").

G.   PharmaCare warrants that it shall be in compliance with those requirements of the Health Insurance Portability and Accountability Act of 1996 detailed in Article XI of this Agreement entitled "Special Provisions for Protected Health Information."

## IV.   MAIL SERVICE PHARMACY

A.   The parties understand that PharmaCare shall be obligated to arrange for retail Member Pharmacies to provide pharmacy services for Covered Persons as set forth in this Agreement. If requested by Sponsor, PharmaCare shall also arrange to provide the mail pharmacy services described in Exhibit B, which would be provided by PharmaCare's affiliates PharmaCare Direct, Inc. d/b/a PharmaCare Direct("PharmaCare Direct").

## V.   PHARMACARE RETROSPECTIVE AND CONCURRENT DRUG UTILIZATION REVIEW (DUR) SERVICES

A.   PharmaCare shall provide the PharmaCare retrospective and concurrent DUR services listed in Exhibit C.

B.   PharmaCare may deny payment for claims to the extent the information received is not sufficient to allow for PharmaCare DUR services.

## VI.   THERAPEUTIC DRUG MANAGEMENT PROGRAM

A.   If requested by Sponsor, PharmaCare shall provide the therapeutic drug management program listed in Exhibit D.

## VII.   REMUNERATION AND PAYMENT

A.   Within forty-eight (48) hours of receipt of a Prescription Claims Invoice from PharmaCare, Sponsor shall initiate an Automated Clearing House (ACH) transfer for the Prescription Claims Invoice amount to a bank account designated by PharmaCare.

B.   Within ten (10) business days of receipt of an Administrative Fees Invoice from PharmaCare, Sponsor shall remit payment for the Administrative Fees Invoice amount to PharmaCare by Automated Clearing House (ACH) transfer as in the foregoing Section A.

C.   Any additional charge for services other than those specified in Exhibit A shall also be remitted by Sponsor within ten (10) business days after receipt of an Invoice from PharmaCare.

D.   If at any time Sponsor shall fail to pay PharmaCare, on or prior to the due date of the Invoice, any amount owing PharmaCare hereunder, PharmaCare shall have the right to impose a finance charge on the unpaid Invoice balance, in addition to any other remedies available to PharmaCare. The finance charge shall equal the prime rate reported by Mellon Bank, N. A. plus three (3%) percent.

E.   If at any time Sponsor shall fail to pay PharmaCare on or prior to the due date of the Invoice, any amount owing to PharmaCare hereunder, PharmaCare shall have the right, in addition to the imposition of a finance charge and any other remedies available to PharmaCare, upon forty-eight (48) hours prior notice to Sponsor, to: (1) decline to issue or reissue PharmaCare identification cards to Covered Persons, (2) suspend eligibility of Covered Persons or any and all other services under this Agreement immediately until such time as Sponsor's account with PharmaCare has been brought current, (3) advise Member Pharmacies immediately, as they

access the PharmaCare Claims System, that Covered Persons' PharmaCare identification cards are no longer valid, and (4) apply all or any portion of Sponsor's security deposited with PharmaCare to Sponsor's delinquent account. Sponsor shall be responsible for all costs of collection and agrees to reimburse PharmaCare for such costs and expenses (including reasonable attorneys' fees).

F.     If at any time PharmaCare shall determine, based on prescription claims volume, Sponsor's payment record and/or Sponsor financial information, that there are reasonable grounds for insecurity on the part of PharmaCare as to the ability of Sponsor to meet its financial commitments hereunder as they become due, PharmaCare shall have the right to require Sponsor to provide security in such amount and form and at such time as PharmaCare deems necessary. No security in the form of a reserve or deposit shall bear interest.

G.     PharmaCare may change the Administrative Fees applicable to the Plan by giving Sponsor sixty (60) days notice prior to the expiration of the then current term. The revised Administrative Fees will not be effective until the first day of the month following the expiration of the then current term of the Agreement. Sponsor may object to any increase in Administrative Fees by giving notice thereof to PharmaCare at least thirty (30) days prior to the expiration of the sixty (60) day period. In such event, if the parties cannot agree on an appropriate Administrative Fee, this Agreement shall expire at the end of the sixty (60) day period that corresponds to the expiration date of the then current term of the Agreement, and the revised Administrative Fees will not apply.

## VIII.   PHARMACARE REBATE PROGRAM

A.     PharmaCare has engaged WellPoint Pharmacy Management ("WellPoint") to perform certain formulary development and rebate contracting functions for PharmaCare. As part of its duties, WellPoint will negotiate rebate payments from pharmaceutical manufacturers for PharmaCare and Sponsor. WellPoint will receive the rebate payments and pass them on to PharmaCare for distribution to Sponsor.

B.     Throughout the term of this Agreement, PharmaCare shall pay to Sponsor an amount for each prescription claim processed for Sponsor by PharmaCare during a calendar quarter for Sponsor's Covered Persons (the "Rebate") contingent upon Sponsor's execution of this Agreement and acceptance and distribution of PharmaCare's drug formulary ("Formulary"). PharmaCare shall provide WellPoint with aggregated data regarding Covered Person's prescription drug utilization and such information data shall not be considered Protected Health Information. Rebate payment shall be in the amount PharmaCare receives from WellPoint, which amount shall be passed through to Sponsor and which amount shall be based on Sponsor's utilization of prescription drugs under this Agreement. Payment of these amounts will be contingent upon manufacturers' payment of rebates to WellPoint, and WellPoint's passing them on to PharmaCare, which PharmaCare will then pass in entirety to Sponsor. Upon receipt of such payment from WellPoint, PharmaCare shall pay Sponsor within one hundred and twenty (120) days after the quarter in which payment is received from WellPoint. Sponsor may verify the compliance of PharmaCare with this Section B. through the use of an independent auditor subject to the terms and conditions of the agreement PharmaCare has with WellPoint. Although Rebate payments will be allocated to Sponsor based upon Sponsor's billing for each drug manufacturer, Sponsor acknowledges and agrees that the data is not one hundred (100%) accurate as the lowest level of detail in the data PharmaCare receives from WellPoint is at the drug manufacturer level.

C.     In connection with its negotiation of rebate arrangements on behalf of Sponsor, WellPoint receives from the pharmaceutical manufacturers certain group purchasing administrative fees for its services of 3% or less of the value of products dispensed to Covered Persons, and retains these fees for its own account. In addition, WellPoint will retain a portion of the rebate payments that it

receives from manufacturers, as compensation from PharmaCare for its Formulary development and rebate contracting services.

D.   PharmaCare will include at least ninety-five percent (95%) of the prescription drugs on the WellPoint National Formulary on each PharmaCare Formulary and one hundred percent (100%) of WellPoint's 100 Top Rebatable Drugs on the PharmaCare Formulary. Sponsor agrees that to receive the Rebate described in Article VIII(B) above, Sponsor must exercise its discretion to adopt the PharmaCare National Formulary as modified, and the Top Rebatable drug list. The Rebate payments described in Article VIII(B) will not apply for periods of non-compliance.

E.   After the date of this Agreement, as the result of the adoption of any applicable law, regulation or guideline or any substantial change in the interpretation or administration thereof, or as the result of substantial changes in drug industry practice regarding manufacturer discounts and/or rebates, PharmaCare may give notice thereof to Sponsor and PharmaCare will be entitled to equitable adjustment of the Rebate, including, but not limited to, elimination of any Rebate in its entirety, to be remitted to Sponsor. If, as a result of the occurrence of any of the preceding events, PharmaCare eliminates Sponsor's Rebate in its entirety, Sponsor may, upon sixty (60) days written notice, terminate this Agreement.

F.   In the event PharmaCare determines on audit that prescription claim data submitted on behalf of Sponsor was inaccurate or that certain claims were not Rebate-eligible, PharmaCare reserves the right to offset such moneys against future Rebate payments due Sponsor and/or recover from Sponsor Rebate amounts which are determined to have been paid inappropriately.

G.   Sponsor agrees that as a condition of participation in the Rebate program that Sponsor will not negotiate or arrange or contract in any way for rebates on prescription drugs from any manufacturer. Breach of this Section may result in immediate termination of Sponsor's participation in the Rebate program and shall entitle PharmaCare to keep one hundred percent (100%) of any and all Rebates due on behalf of Sponsor under this Agreement which have not been paid to Sponsor.

H.   The parties acknowledge that, in its role as a pharmacy benefits manager, PharmaCare will evaluate the Plan and act to improve its operations and cost-effectiveness. This may include review of Covered Person prescription histories and drug utilization reviews for safety and cost control. In addition, PharmaCare may conduct medication compliance programs, and/or therapeutic equivalent and generic interchange programs, to support the PharmaCare Formulary or to achieve formulary utilization targets. PharmaCare may also send newsletters or other communications to Covered Persons regarding their health conditions or their medications. PharmaCare may receive funding from manufacturers to support the Covered Person communications associated with these programs. Sponsor will provide notice to its Covered Persons regarding such programs, consistent with the requirements of HIPAA and its implementing regulations, and will obtain such authorization or consent from its Covered Persons as may be required by applicable law, rule, regulation or legal process, for PharmaCare to operate such programs.

IX.   **FORMULARY**

A.   Sponsor agrees that its right to use the Formulary is limited to use of the Formulary in connection with its Plan. Sponsor further agrees that, except in connection with such limited use, it shall not copy, distribute, sell or otherwise provide the Formulary to any third party without PharmaCare's prior written approval.

B.   Upon termination of this Agreement, Sponsor shall cease all use of the Formulary and shall destroy or return to PharmaCare all copies in its or subcontractor's or affiliate's possession. Upon PharmaCare's request, Sponsor shall provide proof to PharmaCare that it has complied with the terms and conditions of this Section.

## X.    RECORDS AND DATA

A.    PharmaCarePharmaCare shall maintain for at least three (3) years after the respective record is created, in original form or on electronic media, the claims and paper claim forms supporting the Invoices, as well as all requests and directives. PharmaCare and Sponsor shall allow each other to audit, review and duplicate such records and any other records in their possession that relate primarily to the obligations undertaken by either party under this Agreement. The review and duplication of records shall be allowed upon reasonable notice during regular business hours at the place of business of the record holder and shall be subject to all applicable state and federal laws and regulations regarding the confidentiality of such records. Duplication shall be at the cost of the requesting party. PharmaCare represents that, under this Agreement, reimbursement rates paid by PharmaCare for pharmacy services provided by Member Pharmacies and PharmaCare Direct are a pass through of the contracted rates between PharmaCare and Sponsor as set forth in Exhibit A attached hereto.

B.    PharmaCare shall retain full ownership rights over all compilations and analyses generated by PharmaCare, as well as all property, technology, software and other data utilized by PharmaCare in its performance under this Agreement. Ownership rights shall include, but are not limited to, all rights associated with trade secrets, copyrights, trademarks and patents. PharmaCare shall retain the right to use all data and information received from Sponsor, Covered Person or Member Pharmacies provided that: (a) such use shall not violate any Covered Person's right of confidentiality; and (b) such use shall conform to Article XI.

C.    All records, reports and other data provided by PharmaCare to Sponsor under this Agreement are for Sponsor's use in claims administration and plan management, and PharmaCare disclaims all liability arising out of Sponsor's other use or dissemination of the reports and summaries. Sponsor represents that it has permission from each Covered Person, whether through Plan documents or otherwise, for PharmaCare to provide to Sponsor all such records, reports and other data regarding prescription and medical information relating to him/her. Sponsor shall treat as confidential any information which individually identifies a Covered Person or physician/prescriber.

D.    PharmaCare and Sponsor acknowledge that certain information, reports and data generated under this Agreement may be subject to applicable confidentiality of medical records laws, including those addressed as PHI, and the parties agree to comply in all material respects with such laws.

E.    Should Sponsor require on line access to confidential prescription information contained in reports, records and other data, it shall be provided only in accordance with and upon execution of an on line access agreement to be mutually agreed to in writing.

F.    Disclosure to Third Party Agents

(i)    Directives to Disclose. From time to time during the term of the Agreement, Sponsor may direct PharmaCare to provide information that PharmaCare, its Member Pharmacies, or PharmaCare Direct has collected regarding Covered Persons to agents of Sponsor. PharmaCare will comply with those directives, in accordance with the terms of this Agreement.

(ii)    Permission of Covered Persons. Sponsor represents that it will have obtained from each Covered Person his/her permission, whether through Plan documents or otherwise, for Sponsor and/or PharmaCare, its Member Pharmacies, or PharmaCare Direct to provide to Sponsor's agents any records, reports and other data compiled or prepared by PharmaCare, its Member Pharmacies or PharmaCare Direct regarding prescription and medical information relating to him/her which are the subject of a directive to disclose.

(iii) Confidentiality Agreements with Agents. Sponsor represents that for each agent to which it may direct PharmaCare to disclose patient-identifiable information, Sponsor has in place, or will have in place prior to the directive, an agreement requiring the agent to treat as confidential any information which individually identifies a Covered Person or physician/prescriber, and prohibiting the agent from disclosing any such information without express authorization from Sponsor or the Covered Person.

(iv) Disclosure to Minimum Extent Necessary. To the extent possible, Sponsor will limit its directives for disclosure of PHI to its agents to the minimum information necessary to achieve the desired purpose.

(v) Form of Directives. All directives for disclosure of PHI will be in writing and will identify all Covered Persons whose records or files should be disclosed, by means of patient names or identifiers, dates of service, particular drug dispensed, or such other identifying characteristics as are appropriate for the purpose of the disclosure. The directives shall also identify what information from the file shall be disclosed and for what time period. PharmaCare shall retain copies of all such directives for a period of six (6) years.

G.    PharmaCare shall maintain a Disaster Recovery Plan to protect and/or recover records that are essential to the continuing operation of Sponsor's Plan in the event of a disaster. Upon reasonable request, PharmaCare shall provide Sponsor a brief written statement summarizing the status of its Disaster Recovery Plan, where Sponsor acknowledges that such Disaster Recovery Plan is confidential. As of the date this Agreement is signed, PharmaCare represents the following as key components to its Disaster Recovery Plan: (a) advanced software applications regulate the computer systems and communication lines, and issue an alert when problems arise; (b) PharmaCare's data centers are protected by back-up generators to guard against power outages; (c) PharmaCare's data centers are protected by automated fire suppression systems; (d) PharmaCare's claims processing system maintains a full, duplicate "mirror" system at another location that will resume processing if the primary site experiences a disaster, with such duplicate system tested for operability; (e) PharmaCare maintains redundant servers for all critical servers; and (f) PharmaCare maintains offsite storage of tape back-ups of critical servers. Key PharmaCare employees have remote dial-in access and could be re-located to another site in Pittsburgh, Pennsylvania should the main location suffer a disaster. There are also two remote mail service sites PharmaCare has available, through its mail service pharmacy affiliate PharmaCare Direct, to relocate PharmaCare pharmacy benefit management employees to. In addition, during downtime, unaffiliated Member Pharmacies can contact PharmaCare's Pharmacy Help Desk to receive eligibility and reimbursement information.

H.    The parties acknowledge that, in its role as a pharmacy benefits manager, PharmaCare will evaluate the Plan and act to improve its operations and cost-effectiveness. This may include review of Covered Person prescription histories and drug utilization reviews for safety and cost control. In addition, PharmaCare may conduct medication compliance programs, and/or therapeutic equivalent and generic interchange programs, to support the PharmaCare Formulary or to achieve formulary utilization targets. PharmaCare may also send newsletters or other communications to Covered Persons regarding their health conditions or their medications. PharmaCare may receive funding from manufacturers to support the Covered Person communications associated with these programs. Sponsor will provide notice to its Covered Persons regarding such programs, consistent with the requirements of HIPAA and its implementing regulations, and will obtain such authorization or consent from its Covered Persons as may be required by applicable law, rule, regulation or legal process, for PharmaCare to operate such programs.

CONFIDENTIAL

## XI.   SPECIAL PROVISIONS FOR PROTECTED HEALTH INFORMATION

A.   PharmaCare and Sponsor hereby agree that PharmaCare shall be permitted to use or disclose PHI provided or made available from Sponsor to perform any function, activity or service for, on behalf of, Sponsor as specified in this Agreement, provided that such use or disclosure would not violate HIPAA and the HIPAA Regulations if done by Sponsor.

B.   PharmaCare and Sponsor each covenants and agrees that it shall:

(1)   Not further use or disclose PHI other than as permitted or required by this Agreement or as required by applicable law or regulation.

(2)   Establish and maintain appropriate safeguards as necessary to prevent the use or disclosure of PHI other than as permitted under this Agreement.

(3)   Report to the other party any use or disclosure of PHI that it is aware of that is not provided for or allowed by this Agreement.

(4)   Ensure that any of its agents or subcontractors, or other third parties with which it does business that are provided PHI by such party are aware of and bound to such party's obligations under this Agreement relating to PHI.

(5)   Make available to the Secretary of the U.S. Department of Health and Human Services all internal practices, books and records relating to the use and disclosure of PHI for purposes of determining compliance with federal privacy laws and regulations.

(6)   Mitigate, to the extent practicable, any harmful effect that is known to the party of a use or disclosure of PHI by such party in violation of the requirements of this Agreement.

C.   PharmaCare covenants and agrees that it shall:

(1)   Make available to Sponsor such information as Sponsor may require to fulfill Sponsor's obligations to provide access to, amendment of, and account for disclosures with respect to PHI pursuant to HIPAA and the HIPAA Regulations, including, but not limited to, 45 CFR §§164.524, 164.526, and 164.528.

(2)   Maintain the PharmaCare Claims System and related administrative reporting systems in compliance with the standards established under law including The National Council for Prescription Drug Programs (NCPDP) Telecommunications Standard Implementation Guide and equivalent NCPDP Batch Transaction Standard and Implementation Guide versions as adopted under regulation.

D.   PharmaCare and Sponsor each agrees that it shall not use or disclose PHI in a manner that is contrary to its obligations under this Agreement. Notwithstanding the foregoing, PharmaCare and Sponsor each agrees that each party may:

(1)   Use PHI in its possession for its proper management and administration and to fulfill any of its present or future legal responsibilities provided that such uses are permitted under federal, state, local and other applicable confidentiality laws.

(2)   Use PHI in its possession to provide data aggregation services relating to the health care operations, as provided for in 45 CFR §164.501, of Sponsor.

(3)   Disclose PHI in its possession to third parties for the purpose of such disclosing party's proper management and administration or to fulfill any of such disclosing party's present or future legal responsibilities provided that (i) the disclosures are required by law, as provided for in 45 CFR §164.501,

CONFIDENTIAL

or (ii) the disclosing party has received from the third party written assurances that the PHI will be held confidentially, that the PHI will only be used or further disclosed as required by law or for the purpose for which it was disclosed to the third party, and that the third party will notify the disclosing party of any instances of which it is aware in which the confidentiality of the information has been breached, as required under 45 CFR §164.504(e)(4).

(4)   De-identify any and all PHI provided that the de-identification conforms to the requirements of 45 CFR §164.514(b), and further provided that the party so de-identifying maintains the documentation required by 45 CFR §164.514(b), which may be in the form of a written assurance from the other party. Pursuant to 45 CFR §164.502(d)(2), de-identified information does not constitute PHI and is not subject to the PHI terms of this Agreement.

(5)   Have PHI contained in claims made by Member Pharmacies for processing of Benefits.

E.   With respect to the use and/or disclosure of PHI by PharmaCare, Sponsor hereby agrees:

(1)   to use appropriate safeguards to maintain and ensure the confidentiality, privacy, and security of PHI transmitted to PharmaCare pursuant to this Agreement, in accordance with the standards and requirements of HIPAA and the HIPAA Regulations, until such PHI is received by PharmaCare.

(2)   to inform PharmaCare of any changes in, or withdrawal of, the consent or authorization provided to Sponsor by Individuals pursuant to 45 CFR §164.506 or §164.508.

(3)   to notify PharmaCare, in writing and in a timely manner, of any arrangements permitted or required of Sponsor under 45 CFR Parts 160 and 164 that may impact in any manner the use and/or disclosure of PHI by PharmaCare under this Agreement, including, but not limited to, restrictions on the use and/or disclosure of PHI as provided for in 45 CFR §164.522 agreed to by Sponsor.

(4)   that PharmaCare may make any use and/or disclosure of PHI permitted under 45 CFR §164.512.

F.   Upon termination or expiration of the Agreement, PharmaCare shall return to Sponsor any and all PHI received from, or created by, PharmaCare on behalf of Sponsor that is maintained by PharmaCare in any form whatsoever, including any copies or replicas. If returning the PHI to Sponsor is not feasible, PharmaCare shall destroy any and all PHI maintained by PharmaCare in any form whatsoever, including any copies or replicas. Should the return or destruction of PHI be determined by PharmaCare to be not feasible, the parties agree that the PHI terms of this Agreement shall extend to the PHI until otherwise indicated by Sponsor, and any further use or disclosure of the PHI by PharmaCare shall be limited to that purpose which renders the return or destruction of the PHI infeasible. The parties agree that return or destruction of PHI is not feasible for PharmaCare in the areas of auditing, liability, quality assurance, and related matters.   Accordingly, PharmaCare may retain PHI and related information for such purposes after termination or expiration of the Agreement.

## XII.   TERM AND TERMINATION OF AGREEMENT

A.   This Agreement shall be for an initial term of thirty-six (36) months commencing on the Effective Date and shall automatically renew for successive twelve (12) month periods subject to the remaining provisions of this Article XII.

B.   This Agreement may be terminated as follows:

1.  Either party provides at least ninety (90) days prior notice to the other party;

2.  By either party in the event the parties are unable to agree on changes in Administrative Fees as provided in Article VII hereof;

3.  By either party if the other party shall materially default in its performance of this Agreement and such default is not cured within thirty (30) days after notice from the non-defaulting party specifying the nature of the default;

4.  Notwithstanding anything herein to the contrary, by PharmaCare, on forty-eight (48) hours notice to Sponsor, if Sponsor shall fail at any time to make any payment required pursuant to this Agreement by the due date or fails at any time to provide or maintain the security required by PharmaCare under this Agreement. Such notice shall not be effective and this Agreement shall not terminate if Sponsor shall cure the default not later than the next business day following the giving of notice;

5.  By either party upon written notice to the other party upon the occurrence of any of the following events: (a) a material adverse change subsequent to the date hereof in the financial condition or prospect of the other party; or (b) a default or an event that with the passage of time would constitute a material default in respect of any obligation of the other party for borrowed money, whether as borrower, guarantor or otherwise; or

6.  By either party on written notice to the other if the other party violates a material term of this Agreement regarding Article XI "Special Provisions for Protected Health Information".

C.  In the event of a termination hereunder:

1.  PharmaCare shall have the right to notify its Member Pharmacies that Covered Persons' PharmaCare identification cards for the Plan become invalid as of the termination date; and

2.  The liability of Sponsor for obligations incurred up to the effective termination date, including all costs of collection and reasonable attorneys' fees, shall survive termination.

D.  In the event of termination of this Agreement, PharmaCare agrees to provide data PharmaCare has and that Sponsor's replacement pharmacy benefits manager ("Replacement PBM") shall reasonably require to perform Replacement PBM functions for Sponsor, provided that the data requirements of such Replacement PBM are reasonable and consistent with pharmacy benefit manager industry expectations. It is understood that for retail claims data, PharmaCare provides a billing tape or other media in standard NCPDP 2.0 format at no cost to Sponsor. If Sponsor or Replacement PBM needs some element of data that is not on PharmaCare's NCPDP 2.0 format, such data element shall be provided, if available in PharmaCare records, on a time and materials or special quote basis. It is understood that for mail service claims data, PharmaCare can provide a claims file to Sponsor or Replacement PBM at a cost to be mutually agreed upon. PharmaCare shall have no obligation to provide the data until such fee is mutually agreed to. PharmaCare may provide the data by electronic wire communication or a media type such as disk, tape, CD or the like. PharmaCare shall not be required to perform anything in this paragraph unless Sponsor has provided PharmaCare with at least ninety (90) days notice of its need for the data. If this Agreement terminates before such ninety (90) day period can occur, PharmaCare shall still have ninety (90) days to provide the data. Any and all data disclaimers set forth in this Agreement shall apply to this paragraph, except that PharmaCare shall be responsible for correcting at no cost to Sponsor or Replacement PBM the data

errors for which PharmaCare is solely responsible and which are brought to the attention of PharmaCare by Sponsor or Replacement PBM.

## XIII.   NOTICES

All notices pertaining to this Agreement shall be delivered in person, sent by certified mail, delivered by receipted courier, or transmitted by facsimile and confirmed in writing (sent by receipted courier or certified mail) to a party at the address or facsimile number shown in this Agreement, or such other address or facsimile number as a party may notify the other party from time to time.  Notices delivered in person, and notices dispatched by facsimile prior to 4:30 PM, recipient's time, Monday through Friday (legal holidays excepted), shall be deemed received on the day sent.  All other facsimiles and notices shall be deemed to have been received on the business day following receipt; provided, however, if such day falls on a weekend or legal holiday, receipt shall be deemed to occur on the next business day. Notices may also be transmitted electronically between the parties provided that proper arrangements are made in advance to facilitate such communications and provide for their security and verification.

Notices to PharmaCare shall be addressed to:
PharmaCare Management Services, Inc.;
695 George Washington Highway
Lincoln, Rhode Island 02865
Attn.:  Account Management
Facsimile No.: 401.333.2983

Notices to Sponsor shall be addressed to:
County of Albany
112 State Street, Room 660
Albany, New York 12207
Attn:  Robert Conway
Facsimile No.: _____

## XIV.   LIABILITY; DISCLAIMERS

A.   The PharmaCare Claims System is dependent upon the accurate transmission and processing of data by electronic means. PharmaCare shall not be liable for any damages or claims arising out of any interruption in transmission or processing, except where: (a) it is solely at fault; and (b) it had reasonable opportunity to prevent the interruption.

B.   Nothing in this Agreement shall be construed or be deemed to create any rights or remedies in any third party, including, but not limited to, a Covered Person. Further, it is hereby acknowledged that PharmaCare and Sponsor are independent entities. Nothing in this Agreement shall be construed or be deemed to create: (a) a principal-agent relationship between PharmaCare and Sponsor; or (b) a joint venture.

C.   PharmaCare shall use ordinary care and reasonable diligence in the performance of its duties under this Agreement. Sponsor acknowledges that this Agreement is not a contract for the sale of goods, and that PharmaCare is not the sole generator of data for the PharmaCare Claims System, which comes from various sources, including but not limited to Sponsor and Covered Person. PHARMACARE DISCLAIMS ALL EXPRESS AND ALL IMPLIED WARRANTIES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY AS TO THE QUALITY, ACCURACY OR SUITABILITY FOR ANY PARTICULAR PURPOSE OF THE DATA USED OR GENERATED BY THE PHARMACARE CLAIMS SYSTEM, EXCEPT THAT PHARMACARE SHALL NOT ADVERSELY AFFECT THE QUALITY, ACCURACY OR SUITABILITY OF DATA IT RECEIVES FROM OTHERS.

CONFIDENTIAL

D.      THE PARTIES AGREE THAT IN NO EVENT SHALL PHARMACARE HAVE ANY
LIABILITY TO SPONSOR OR ANY COVERED PERSON IN CONNECTION WITH
THE ACTS OR OMISSIONS OF ANY MEMBER PHARMACY OR PHARMACIST
WHO PERFORMS ANY SERVICES IN CONNECTION WITH THIS AGREEMENT.
PHARMACARE SHALL NOT, UNDER ANY CIRCUMSTANCES, BE LIABLE OR
RESPONSIBLE FOR INJURY, INCLUDING DEATH, SUFFERED BY ANY
COVERED PERSON FROM ANY PRESCRIPTION DRUG DISPENSED OR NOT
DISPENSED BY ANY MEMBER PHARMACY OR PHARMACIST USING THE
PHARMACARE DUR SYSTEM FOR ANY PURPOSE, OR FOR ANY SIDE-
EFFECTS OR OTHER CONSEQUENTIAL OR INCIDENTAL DAMAGES OF ANY
KIND OR DESCRIPTION WHATSOEVER FROM THE USE, OR NON-USE, OF
ANY SUCH PRESCRIPTION DRUG, IT BEING EXPRESSLY UNDERSTOOD
THAT SUCH LIABILITY AND RESPONSIBILITY RESTS ENTIRELY UPON THE
MEMBER PHARMACY OR PHARMACIST DISPENSING THE PRESCRIPTION
DRUG.

E.      PharmaCare represents that the Pharmacy Services Agreement PharmaCare has
with Member Pharmacies obligates Member Pharmacies to: (a) procure and
maintain professional liability and malpractice insurance with limits of no less than
one million dollars ($1,000,000) for each claim and three million dollars
($3,000,000) in the aggregate, as well as comprehensive general liability insurance
to insure against any claim for damages arising by reason of personal injury or
death caused directly or indirectly by the provision of pharmacy services; and (b)
indemnify and hold harmless Sponsor and PharmaCare, as well as their respective
affiliates, officers, directors, partners, employees, and agents ("Indemnitees"), from
and against any claims, liabilities, damages, judgments, or other losses (including
reasonable attorneys' fees) imposed upon or incurred by the Indemnitees and
arising out of or as a result of Member Pharmacy's breach of the Pharmacy
Services Agreement and any acts or omissions of Member Pharmacy, or its
affiliates, officers, directors, shareholders, employees, and agents in connection
with Member Pharmacy's performance of any of its services, duties and obligations
under the Pharmacy Services Agreement. PharmaCare represents and warrants
that it shall be responsible for the performance of all the obligations of its affiliate
PharmaCare Direct under this Agreement.

F.      In no event shall PharmaCare, its affiliates, directors, officers, employees, agents
and parent be liable for (i) any third party claims against Sponsor, its affiliates,
directors, officers, employees, agents or parent for losses or damages except for
the indemnification provisions set forth in this Agreement, or (ii) any indirect,
special, incidental, consequential (including lost profit or savings) damages, even if
PharmaCare is informed of their possibility.

G.      Each party agrees to defend, indemnify and hold harmless the other party, its
affiliates and each of their respective directors, officers, employees, agents or
assigns from and against any and all actions, causes of action, claims, suits and
demands whatsoever, and from all damages, liabilities, costs, charges, debts,
fines, government investigations, proceedings, and expenses whatsoever
(including reasonable attorneys' fees and expenses related to any litigation or other
defense of any claims), which may be asserted or for which they may now or
hereafter become subject arising in connection with (i) any misrepresentation,
breach of warranty or non-fulfillment of any undertaking on the part of the party, its
affiliates, directors, officers, employees, and agents under this Agreement; and (ii)
any claims, demands, awards, judgments, actions, and proceedings made by any
person or organization arising out of or in any way connected with the party's
performance under this Agreement, or that of its affiliates, directors, officers,
employees, and agents.

H.      Except for any PharmaCare Direct liability or special assessments PharmaCare
has agreed to pay under an applicable performance guarantee, if any, in no event

shall the liability of PharmaCare, its affiliates, directors, officers, employees, agents and parent entities under or in connection with this Agreement exceed the actual loss or damage to Sponsor, its affiliates, directors, officers, employees and agents up to the amount of the Administrative Fees paid to PharmaCare by Sponsor hereunder for the three (3) month period immediately preceding the date on which the claim arose. However, provided that Sponsor advises PharmaCare of any Invoice error, miscalculation, or discrepancy within thirty (30) days of an Invoice or an independent audit, the inaccurate Invoice amount in question shall be credited in a lump sum manner to Sponsor in the first available Invoice following resolution and agreement of the inaccurate amount in question. The foregoing sentence shall also apply to any credit owed Sponsor arising from the claim processing PharmaCare conducts with Member Pharmacies. If no Invoices are pending, PharmaCare shall pay Sponsor the amounts due directly.

XV.    **GENERAL**

   A.   Assignment. Neither this Agreement nor any of the obligations to be performed hereunder may be assigned, directly or indirectly, by either party without the prior written consent of the other party; provided, however, that the preceding restriction shall not apply to the transfer by PharmaCare of all or substantially all of PharmaCare Claims System processing or PharmaCare DUR services or to any transfer made by PharmaCare to an affiliate or parent of PharmaCare (or to any entity which succeeds to PharmaCare's business through a sale, merger or other similar corporate change transaction). Any assignment or attempted assignment in violation of this restriction shall be void. This Agreement binds and inures to the benefit of the parties hereto and their permitted successors and assignees.

   B.   Force Majeure. Neither party shall be liable in any manner for any delay or failure to perform its obligations hereunder which are beyond such party's reasonable control, including without limitation, any delay or failure due to strikes, labor disputes, riots, earthquakes, storms, floods or other extreme weather, fires, explosions, acts of God, embargoes, war or other outbreak of hostilities, delay of carriers, suppliers or telecommunications providers, or government acts or regulations. If the period of non-performance exceeds sixty (60) days, the unaffected party shall have the right to terminate this Agreement by written notice to the affected party, without liability except to pay for services rendered prior to such event.

   C.   Waiver. Any failure by either party to enforce or require the performance by the other party of any of the terms or conditions of this Agreement shall not constitute a waiver of a breach of any such term or condition thereafter occurring.

   D.   Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same agreement. This Agreement shall become binding when one or more counterparts hereof, individual or taken together, shall bear the signatures of all of the parties reflected hereon as the signatories.

   E.   Severability. Any invalidity, illegality or unenforceability of any provision of this Agreement in any jurisdiction shall not invalidate or render illegal or unenforceable the remaining provisions hereof in such jurisdiction and shall not invalidate or render illegal or unenforceable such provision in any other jurisdiction.

   F.   Governing Law and Jurisdiction. This Agreement shall be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania without regard to conflict of law provisions thereof. Any action or proceeding by or against either party or with respect to or arising out of this Agreement shall be instituted and litigated in the state or federal courts located in the Commonwealth of Pennsylvania. Each party acknowledges that this Agreement was freely and voluntarily negotiated and entered into, and that such parties had the opportunity to

review same. Accordingly, the parties agree that this Agreement shall not be interpreted against the drafting party merely by virtue of such party having drafted this Agreement.

G. **Further Assurances.** Each party further assures the other that it shall reasonably cooperate and reasonably take such action as may be necessary to implement this Agreement. The parties acknowledge that federal, state, local and other laws relating to electronic data security and privacy are rapidly evolving and that amendment of the Agreement may be required to provide for procedures to ensure compliance with such developments. The parties agree to take such action as is necessary to comply with the standards and requirements of HIPAA, the HIPAA Regulations and other applicable laws relating to the security or confidentiality of PHI, provided that PharmaCare shall not incur additional expenses to comply with such future laws and regulations without a mutually agreed to amendment to this Agreement.

H. **Exclusivity.** Sponsor agrees that during the term of this Agreement, it shall not utilize the services of another entity to provide the services PharmaCare has agreed to perform under this Agreement.

I. **Survival.** Any term of this Agreement which by its nature extends beyond the termination or expiration hereof shall survive, including but not limited to indemnities, confidentiality obligations, liability limitations, and dispute resolution provisions.

J. **Confidentiality.** Each party, as well as its agents and designees, shall keep this Agreement and any business information exchanged hereunder confidential, unless consent for disclosure is obtained from the other party. If disclosure of the Agreement or business information exchanged hereunder is required by law, the affected party shall promptly notify the other party so a protective order can be requested.

K. **Entire Agreement and Amendments.** This Agreement, together with any Riders, Exhibits, or other attachments hereto, constitutes the entire understanding between the parties hereto with respect to the subject matter hereof. Except as otherwise expressly contemplated herein, no prior oral or written communication with respect to the subject matter hereof, nor any supplement, modification, waiver or amendment of this Agreement unless executed in writing by the parties hereto, shall be binding. Notwithstanding the provisions of this Section, PharmaCare may amend this Agreement or any attachment hereto without the consent of Sponsor in order for this Agreement to fully comply with all applicable federal, state or local laws and regulations; provided however that PharmaCare notifies Sponsor of such amendment.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers or representatives duly authorized so to do.

| PHARMACARE MANAGEMENT SERVICES, INC. | COUNTY OF ALBANY |
|---|---|
| By: | By: |
| Name: | Name: Joseph F. Pennisi |
| Title: | Title: Deputy County Executive |
| Date: 3/21/06  4/12/06 | Date: 4/18/06 |

STATE OF NEW YORK )
COUNTY OF ALBANY ) SS.:

On the _18th_ day of _April_____, 2006, before me, the undersigned, personally appeared MICHAEL G. BRESLIN personally known to me, or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

**MARY L. BAZEMORE**
**NOTARY PUBLIC, STATE OF NEW YORK**
**NO. 01BA5030910**
**QUALIFIED IN ALBANY COUNTY**
**COMMISSION EXPIRES JULY 25, 2006**

STATE OF NEW YORK )
COUNTY OF ALBANY ) SS.:

On the ____ day of _____, 2006, before me, the undersigned, personally appeared JOSEPH F. PENNISI personally known to me, or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

STATE OF NEW YORK )
COUNTY OF ALBANY ) SS.:

On the _12th_ day _April_____, 2006, before me, the undersigned, personally appeared _Donald J. Abramo_____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
NOTARY PUBLIC

**AMY K. MARKS**
**NOTARY PUBLIC**
**STATE OF RHODE ISLAND AND**
**PROVIDENCE PLANTATIONS**
**MY COMMISSION EXPIRES SEPTEMBER 12, 2009**

CONFIDENTIAL

## EXHIBIT A

### PRICING AND ADMINISTRATIVE FEES

**A.**  **RETAIL PHARMACY PRICING:** The lower of Usual and Customary or:

This will be a pass through.

**B.**  **MAIL SERVICE PHARMACY PRICING:**

| | |
|---|---|
| BRAND DRUGS: | AWP -21% + $0.00 Dispensing Fee |
| GENERIC DRUGS: | AWP -50% + $0.00 Dispensing Fee |

**C.**  **SPECIALTY PHARMACY PRICING:**    AWP –15% + $2.50 Dispensing Fee

(This includes all medications dispensed at PharmaCare's Specialty Pharmacy or mail service pharmacies, if applicable)

**D.**  **ADMINISTRATIVE FEES:**

| | |
|---|---|
| BASE CLAIMS PROCESSING FEE (PER SUBMITTED CLAIM) | $1.95 |
| DUR SERVICES AS OUTLINED IN EXHIBIT C (PER SUBMITTED CLAIM) | $0.10 |
| DIRECT MEMBER REIMBURSEMENT (PER SUBMITTED CLAIM) | $1.50 |
| FOREIGN DIRECT MEMBER REIMBURSEMENT (PER SUBMITTED CLAIM) | $5.00 |
| SUBMISSION OF ELIGIBILITY (FROM PAPER DOCUMENTS) | |
| Start Up (Per Person) ($250 minimum) | $1.00 |
| Updates (Per Person) (PharmaCare will not bill client for less than 25 manual updates per month) | $1.00 |
| ADDITIONAL/REPLACEMENT ID CARDS (SET OF TWO) (Two PharmaCare identification cards included in base fee) | $1.00 |

CONFIDENTIAL

## E.   OTHER FEES:

### REPORTING (OTHER THAN STANDARD)

Customized Programming Per Hour                                    $100

In the event Sponsor requests PharmaCare to provide non-standard or customized services, including special research projects, reports, system changes to accommodate changes in Sponsor's Plan or system, or other tasks to be specifically performed for and on behalf of Sponsor, PharmaCare may require Sponsor to pay PharmaCare such additional charge as mutually agreed upon by the parties in writing before the services are provided.

### SPONSOR COMMUNICATIONS MATERIALS

Start up materials include two PharmaCare identification cards, Plan brochure, mail service enrollment and postage paid envelope, and Formulary. (Actual cost of postage will be billed to Sponsor for direct mailings of communication materials to Covered Persons.) There is no charge for bulk shipments of communication materials to Sponsor locations.

CONFIDENTIAL

## PHARMACARE BASIC PER CLAIM SERVICES

Basic per claim services provided in the paid claim fee include:

**PHARMACARE CLAIMS SYSTEM** - A fully automated on-line, real-time claims processing system.  PharmaCare Claims System provides greater ability to tailor prescription drug plans to maximize benefits and to utilize a range of proven cost management approaches.

**NETWORK MANAGEMENT** - PharmaCare maintains a Help Desk with 800 number service for the Member Pharmacies to facilitate the point-of-service processing available through the PharmaCare Claims System.

**COMPREHENSIVE REPORT PACKAGE** - A standard package of reports includes relevant cost, utilization control data and savings information related to the specific services selected.

**CONCURRENT PHARMACARE DUR** - PharmaCare Claims System will transmit informational concurrent drug utilization review messages to Member Pharmacies as described in Exhibit C.

**PHARMACARE IDENTIFICATION CARDS** - PharmaCare will provide identification cards in accordance with        Article III(B).

**CUSTOMER SERVICE** - PharmaCare maintains a Help Desk with 800 number service for Covered Persons to answer inquires concerning Member Pharmacy locations and prescription benefit questions.

CONFIDENTIAL

## EXHIBIT B

### MAIL SERVICE PHARMACY

### A.   ENROLLMENT MATERIALS

PharmaCare Direct will provide to PharmaCare for distribution to Sponsor and/or Covered Persons an enrollment package including a carrier envelope, a brochure describing the details of the services provided, a postage paid order envelope, a Sponsor announcement letter, and patient profile request forms.

### B.   PROVISION OF PRESCRIPTION DRUGS

PharmaCare Direct will provide prescription drugs to all Covered Persons in the United States who have provided PharmaCare Direct with prescription request forms containing sufficient information to maintain a patient profile. Prescriptions will be mailed to Covered Persons within an average three business days of receipt of prescription request forms, subject to product availability and the need to contact the Covered Person's physician for prescription clarifications.

### C.   SPECIAL QUALITIES OF PHARMACARE DIRECT

1.   Postage paid envelopes for all clients

2.   IVR ordering capabilities

3.   WEB ordering capabilities

4.   Complete order tracking and turn around time statistics and reports

5.   Total Quality Management programs for quality assurance and accuracy reporting

6.   Therapeutic Drug Management Program for brand to generic drug usage, reporting, and savings to drug spend

7.   Therapeutic Drug Brand drug interchange opportunities for changes to less expensive AWP products

8.   Specialized biotech product growth hormones, and EDI Transactions for ordering, processing and reporting

9.   Toll free 800 number with 24 hour availability of registered pharmacist 7 days/week

10.  Dedicated customer service representatives for clients

11.  Reporting and guarantees on service levels for average speed to answer calls, and abandoned call rates

12.  Bar code technology for fulfillment process

13.  Robotics in prescription fulfillment for accuracy in dispensing

14.  Client service customer service manager

15.  Automated check refunds for overpayments (not coupons or credit vouchers)

16.  Each new prescription is reviewed by two different registered pharmacists.

CONFIDENTIAL
EXHIBIT C

PHARMACARE DUR SERVICES

I.  **DESCRIPTION OF CONCURRENT DUR SERVICES**

A.  PharmaCare shall provide the PharmaCare concurrent DUR system, which operates through the PharmaCare Claims System. The PharmaCare Claims System will edit claims for the following:

1.  Acute/Maintenance Dose Editing

2.  Drug Regimen Compliance Checking

3.  Drug/Drug Interaction Edits

4.  Drug Interactions Conflict Code DD

5.  Drug-Inferred Health State Checks

6.  Drug to Age Checking

7.  Drug to Sex Edit Checking

8.  Duplicate Therapy Checking

9.  Duplicate Rx Checking

10.  FDB/MS Duplicate Therapy

11.  Late Refill Check

II.  **DESCRIPTION OF RETROSPECTIVE DUR SERVICES**

A.  PharmaCare shall provide the PharmaCare Retrospective DUR system, which operates through the PharmaCare Claims System. The PharmaCare Claims System will edit claims for the following:

1.  Drug/Drug Interaction

B.  In addition, if requested by Sponsor, the PharmaCare Claims System will also edit claims for the following:

1.  Acute Frequency - Proton Pump Inhibitor Program

2.  Brand to Generic (DAW1)

3.  High Utilization

4.  Retail to Mail

5.  Therapeutic Duplication

C.  PharmaCare shall perform the following either on its own or through its affiliate PharmaCare Direct:

1.  Analyze available Covered Person data to determine appropriateness and cost effectiveness of prior drug usage and historical prescribing patterns as

CONFIDENTIAL

indicated by PharmaCare's computerized retrospective management edits outlined above.

2.   Based upon the foregoing analysis, contact the prescriber, pharmacy, or Covered Person where appropriate to suggest modifications to current or future therapy.

3.   Provide Sponsor with monthly reports of PharmaCare's activity relating to the interventions deemed appropriate.

4.   Provide Sponsor with monthly reports of the savings relating to the interventions deemed appropriate.

5.   Invoice Sponsor $0.10 per prescription as a result of PharmaCare's operation of the Retrospective Drug Utilization Review.

D.   Sponsor shall pay PharmaCare for the Retrospective DUR cost savings within ten (10) days after receipt of the invoice, as outlined in the Sponsor Agreement.

## III.   PHARMACIST DISCRETION

The information generated in connection with PharmaCare DUR services is intended as an informational guide to, and not a substitute for, the knowledge, expertise, skill, and judgment of physicians, pharmacists, or other health care providers.   Sponsor acknowledges and agrees that the PharmaCare DUR system will provide information to the Member Pharmacy, but the PharmaCare DUR system cannot prevent Member Pharmacies from dispensing prescriptions or providing other goods and services in opposition to information they receive through the PharmaCare DUR system.   Sponsor acknowledges that Member Pharmacies are individually responsible for acting or not acting upon information generated and transmitted through the PharmaCare DUR system, and for performing services in each jurisdiction consistent with the scope of their licenses.

For concurrent DUR programs, PharmaCare, on behalf of Sponsor, shall advise Member Pharmacies that the PharmaCare DUR system should not be relied upon as a substitute for their professional judgment.

## IV.   PATIENT INFORMATION LIMITATIONS

The PharmaCare DUR system is necessarily limited by the amount of Covered Person information input into the PharmaCare Claims System from prescription claims and from information provided by Sponsor. Meaningful Covered Person information which may not be available to PharmaCare for purposes hereof, includes, but is not limited to, Covered Person diagnoses, utilization of drugs obtained without utilizing the PharmaCare Claims System and weight and other physical idiosyncrasies of a Covered Person. PharmaCare shall have no affirmative obligation to acquire information concerning any Covered Person where information is insufficient or not available to enable the PharmaCare DUR system to determine whether or not intervention or reporting is indicated.

The PharmaCare concurrent DUR system is highly automated, without any individual review in most circumstances.

Retrospective DUR programs utilize systematic filters in conjunction with clinical pharmacist review to target interventions.

CONFIDENTIAL

V.    **PHARMACARE DATABASE LIMITATIONS**

The PharmaCare DUR database is a collection of databases of clinical drug data and drug dispensing information developed and maintained partly by PharmaCare and partly by independent drug database companies.   Sponsor acknowledges and agrees that PharmaCare has and may consult with outside software and other vendors, as well as consulting health care professionals and any recognized compendia, to provide databases and other information as PharmaCare deems necessary or helpful to include in the PharmaCare DUR database.  PharmaCare shall endeavor to update the PharmaCare DUR database on a reasonable basis to reflect changes in standards for pharmaceutical prescribing; however, Sponsor acknowledges that no database will contain all currently available information on accepted medical practice or prescribing practices. In most cases, vendors and professionals limit or exclude warranties regarding the information or services provided to PharmaCare. Such limitations and exclusions are incorporated into Article XIV by this reference. BASED UPON THE FOREGOING, SPONSOR FURTHER ACKNOWLEDGES AND AGREES THAT PHARMACARE SHALL NOT BE LIABLE FOR ANY TORTS, COSTS, DAMAGES, EXPENSES, CLAIMS, SUITS OR PROCEEDINGS OF ANY TYPE ARISING IN CONNECTION WITH (I) MEDICAL OR SCIENTIFIC JUDGMENTS MADE IN CREATING THE PHARMACAREDUR DATABASE OR ANY OTHER DATABASES AND REPORTS UPON WHICH THE  PHARMACAREDUR SERVICES ARE BASED OR (II) ANY FAILURE TO INCLUDE INFORMATION IN THE PHARMACAREDUR DATABASE.

CONFIDENTIAL
EXHIBIT D

## THERAPEUTIC DRUG MANAGEMENT

II.    THERAPEUTIC DRUG MANAGEMENT PROGRAM

    A.    PharmaCare shall:

        1)    Contact the Covered Person or the Covered Person's physician to obtain their consent to convert to a lower cost, therapeutic or generic equivalent medication.

        2)    With the appropriate consents, convert the Covered Person to a lower cost, therapeutic or generic equivalent medication.

        3)    Provide Sponsor with monthly reports of drug conversions and cost savings.

        4)    Invoice Sponsor monthly for one-half of the cost savings.

        5)    Allow either Covered Person or physician to opt out of the therapeutic drug management program. If physician opts out, PharmaCare shall not contact physician or his/her patient Covered Persons for the therapeutic drug management program.

    B.    Sponsor shall pay PharmaCare Direct or PharmaCare, as directed by PharmaCare, one-half the cost savings within ten (10) days after receipt of an invoice thereof by electronic funds transfer.

    C.    Each party has the right to cancel the foregoing therapeutic drug management program upon thirty (30) days written notice to the other party.