**VIA ECF**

Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

      Re:    **_In re: Insulin Pricing Litigation_**
                **No. 2:23-md-03080-BRM-RLS**
                **ESI Protocol Dispute – Defendants' Declarations on Hyperlinked Documents**

Dear Judge Singh:

Defendants write regarding their respective technical capabilities and the burden imposed by attempting to produce "as sent" hyperlinked documents in the family format Plaintiffs seek in their proposed ESI Order. As the attached declarations show, Plaintiffs' proposal is simply not possible. *See* Exhibits A through H. No Defendant has tools to automatically or comprehensively **collect** hyperlinked documents like traditional attachments, nor is there a way to automatically or accurately **create** family connections during the collection or review process. Plaintiffs' suggestions do not solve for these technical limits and start from a false assumption that Defendants refuse to collect from certain sources. Defendants intend to (and in prior productions did) collect files from relevant repositories (including cloud-based ones) where hyperlinked files may reside. The instant dispute is limited to Plaintiffs' requested collection methods and production form, which are impossible for Defendants to comply with as written, and unduly burdensome and disproportionate to try to achieve. Therefore, Defendants respectfully request that the Court adopt Defendants' proposal.

**I.**     **Defendants cannot accurately produce hyperlinked documents as family members.**

In discovery disputes, courts are "guided by proportionality concerns set forth in Rule 26(b)(1) and Rule 1's mandate to ensure the just, speedy, and inexpensive determination of [an] action." *Nichols v. Noom Inc.*, 2021 WL 948646 at *3 (S.D.N.Y. Mar. 11, 2021). Proportionality is key here, as Plaintiffs'

1

requested production format cannot be processed automatically. It can only be done through a laborious and expensive manual review just to possibly get close to (but not guarantee) the production of the "as sent" version of a linked document. Proportionality is particularly dispositive where, as here, it is "entirely speculative how many underlying hyperlinked documents are relevant and material to this case." *Id.* at *4 (rejecting request that hyperlinked documents and pointer communications be produced as families); *In re Meta Pixel Healthcare Litig.*, 2023 WL 4361131 at *1 (N.D. Cal. June 2, 2023) (finding defendant need not purchase Purview Premium to collect hyperlinked documents).[1]

### a. Defendants' systems do not support collecting hyperlinked files as families.

While Defendants' individual systems vary, they share one commonality: no Defendant can automatically connect, collect, and produce the "as sent" version of a hyperlinked document as a family member of the "pointer" email or message sharing the link. Plaintiffs' assertion that Defendants can collect and re-link hyperlinked documents with available tools simply "by checking a box during collection" is factually incorrect and a gross oversimplification. ECF No. 123 at 30. While there are tools that can enable a user to collect certain types of hyperlinked documents, or to link some separated files, including Microsoft Purview (eDiscovery Premium Edition with E5 License), Google Vault, and Metaspike Forensic Email Collector, these tools either do not apply to Defendants' IT environments, or will not provide the connections Plaintiffs request, as they are limited to specific circumstances not present here. *See* Ex. B ¶8; Ex. C ¶¶9-12; Ex. D ¶¶3-4; Ex. F ¶¶12, 18-19; Ex. G ¶6; Ex. H ¶¶6, 19.

Google Vault and Metaspike only collect hyperlinked documents within the Google suite of

---

[1] Plaintiffs' cases are unavailing. *IQVIA, INC. v. Veeva Sys., Inc.*, 2019 WL 3069203, at *5 (D.N.J. July 11, 2019) required production of 2,200 hyperlinked documents the parties *agreed* were relevant, and *Shenwick v. Twitter, Inc.*, 2018 WL 5735176 (N.D. Cal. Sept. 17, 2018) ordered production of specific hyperlinked documents identified as relevant (limiting production to 200 of the 725 identified due to burden). This litigation involves a presently unknown number of hyperlinked documents, none of which have been identified as relevant.

products, which no Defendant uses. *See* Ex. A ¶3; Ex. B ¶8; Ex. C ¶10; Ex. F ¶19; Ex. G ¶¶7-8; Ex. H ¶7. Therefore, those tools have no application here. Microsoft Purview is also not a viable option in this case: only its "Premium" version—the newest, most expensive version Microsoft sells at a per-user surcharge beyond the standard license—is capable of collecting some, but not all, hyperlinked documents from within the Microsoft 365 platform. The Purview "Standard" version used by several Defendants does not have this feature. *See, e.g.,* Ex. C ¶¶11, 13. Premium is both expensive per user and provides little value to most of Defendants' employees. *See, e.g.,* Ex. H ¶¶21-22.

Even if a Defendant purchased the large number of per-user per-month Premium license upgrades *today* for every implicated custodian and used it to collect documents, further obstacles prevent successful collection of hyperlinked documents. *First*, Premium can only collect hyperlinked documents if both the pointer communications *and* the hyperlinked documents are stored in the same instance of the same cloud-based Microsoft 365 program, such as a Defendant's cloud (but not local) OneDrive. For Defendants that archive emails or documents in non-Microsoft systems, or in Microsoft systems not in the same cloud (e.g., server-based Microsoft SharePoint sites), Premium is simply not an option for collection. *See* Ex. A ¶4; Ex. C ¶15; Ex. D ¶¶3-4; Ex. F ¶15; Ex. G ¶¶7-8; Ex. H ¶¶16-18. *Second*, even if a Premium license is purchased, it would only collect the "as sent" hyperlinked file on a go-forward basis and *only if* Microsoft's Data Lifecycle Management policy was also in place.[2] There is no way to confirm what a hyperlinked document looked like when shared, unless Premium was active for that particular user *at the time* the link was sent, and Microsoft's Data

---

[2] Microsoft's Data Lifecycle Management allows for a label to be tied to each version of a hyperlinked document that is sent with an email or message, which can then be used to identify the "as sent" version of a hyperlinked document in an email or message. However, this tool was not launched until mid-2023 and an organization must have this option in place at the time of transmittal. https://learn.microsoft.com/en-us/purview/apply-retention-labels-automatically#auto-apply-labels-to-cloud-attachments.

Lifecycle Management was enabled—only even possible after mid-2023. At best, Purview Premium could locate only the *latest* version (which could be entirely different from the "as sent" version) or *all* versions of a hyperlinked document (and only if both pointer email or message and hyperlinked document are stored in a M365 system). Then Defendants would need to manually review each version (up to 500 versions) and guess which one was linked. So even after laborious and duplicative review, Plaintiffs still may not obtain the "as sent" document.

Plaintiffs' argument that Defendants had an obligation to use systems that *could* automatically collect hyperlinked documents is baseless.[3] ECF 123 at 31. This would require Defendants to have either (1) used Google products, or (2) have purchased the most expensive Premium license for each user at Defendants' companies, and to have further enabled non-standard features. Plaintiffs cannot force companies to acquire particular technology, nor can they defy reality to dictate whether certain technology or features were used in the past (particularly where Premium was not even available for purchase prior to recent years). Reasonableness and proportionality are the touchstones of discovery, and it would run afoul of both to obligate Defendants to pay for software that is unnecessary for business purposes, and implicates other key business issues such as data infrastructure, storage capacity, user training, security realignment, and other IT issues. That is especially true here, where Plaintiffs have made no showing that any hypothetical unidentified documents exist and are relevant, or will not be produced from other sources.

> **b. It is unduly burdensome, and in many cases impossible, for Defendants' eDiscovery vendors to manually pair pointer emails or messages and hyperlinked documents on the back end.**

---

[3] Plaintiffs cite several cases to support the argument that Defendants *must* have systems that permit hyperlink collection. *See* ECF No. 123 at 24. These cases—none of which address hyperlinks—are taken out of context, and require no such thing. *See Calendar Research LLC v. StubHub, Inc.*, 2019 WL 1581406 (C.D. Cal. Mar. 14, 2019) (addressing a vendor's technical issues that resulted in withheld documents); *Wesley v. Muhammad*, 2008 WL 4386871 (S.D.N.Y. Sept. 17, 2008) (admonishing parties' delay in producing relevant documents that they had *agreed* to produce).

Defendants fare no better in matching up hyperlinked documents and pointer emails or messages after collection. Plaintiffs' cases are inapposite: in most, the parties *stipulated* to produce hyperlinked documents.[4] But here, as described above, Defendants' eDiscovery vendors have no tool to automatically locate and pair collected documents. Instead, Defendants would have to undergo a painstaking and costly manual review to identify emails containing hyperlinked documents, with no certainty they could pair a pointer email or message with its hyperlinked document, and with no showing that the hyperlinked document is even relevant. *See* Ex. B ¶¶5-7; Ex. C ¶16; Ex. F ¶20; Ex. G ¶¶9-11; Ex. H ¶¶23-24. It is even more difficult to ensure that the "as sent" *version* of the document is correctly paired with a pointer communication, which is what Plaintiffs seek in their proposed ESI Order. Given the technical limits, Defendants cannot faithfully represent that a document identified as a "match" is the same as when originally linked, *i.e.*, that it is the document sent or received.

******

As Plaintiffs' own case states, "[l]itigants should figure out what they are able to do before they enter into an agreement to do something." *In re StubHub*, 2023 WL 3092972 at *4. Defendants have investigated their capabilities, and simply cannot do what Plaintiffs ask. Due to the impossibility of Plaintiffs' proposal, and for the other reasons discussed above, Defendants respectfully request that the Court adopt Defendants' proposed hyperlink language in the ESI Protocol.

---

[4] *See Splunk Inc., v. Cribl, Inc. et al.,* 3:22-cv- 07611 (N.D. Cal. Aug. 24, 2023), ECF No. 78 (Ex. 8) at ¶ 40(b) (approving the parties' stipulation as to hyperlink production); *In re Acetaminophen – ASD-ADHD Prods. Liab. Litig.*, 2023 WL 196157 at *5 (S.D.N.Y. Jan. 17, 2023) (hyperlinked document provision included in parties' joint proposed ESI Protocol); *Stitch Editing v. TikTok*, 2022 WL 17363054, at *1 (C.D. Cal. 2022) (interpreting parties' previously-stipulated ESI Protocol as requiring hyperlink productions). Plaintiffs' other support involved *traditional* attachments, not hyperlinks. *See Pom Wonderful LLC v. Coca-Cola Co.*, 2009 WL 10655335, at *3 (C.D. Cal. Nov. 30, 2009) (requiring party to link 138 emails and traditional attachments in production due to the attachments' undisputed relevance).

Dated: May 1, 2024  Respectfully submitted,

/s/ Liza M. Walsh  
Liza M. Walsh  
Melissa L. Patterson  
*Attorneys for Defendant*  
*Sanofi-Aventis U.S. LLC*

/s/ Patrick Harvey  
Patrick Harvey  
*Attorney for Defendant*  
*Express Scripts Defendants*

/s/ Andrew Yaphe  
Andrew Yaphe  
*Attorney for Defendant*  
*Novo Nordisk Inc.*

/s/ Joshua Podoll  
Joshua Podoll  
*Attorney for Defendant*  
*CVS Caremark*

/s/ Ryan Moorman  
Ryan Moorman  
*Attorney for Defendant*  
*Eli Lilly*

/s/ Kelley Barnaby  
Kelley Barnaby  
*Attorney for Defendant*  
*OptumRx*