# THE Cicala Law Firm PLLC

May 8, 2024

<u>**VIA ECF**</u>
The Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Bldg. & U.S. Courthouse
402 East State Street, Room 7W
Trenton, New Jersey 08608

      **Re:**    *In re Insulin Pricing Litigation*
              **Case No. 2:23-md-3080-BRM-RLS, MDL No. 3080**
              **Plaintiffs' Proposed Discovery Plan**

Dear Judge Singh:

Pursuant to Text Order No. 137, Plaintiffs submit their position regarding the discovery plan for this MDL. After conferring and exchanging proposals for several months, the parties reached agreement on the Joint Discovery Plan (the "Plan") (ECF No. 167). Yet, disputed issues remain regarding: (1) the relevant time period for discovery; (2) the relevant drugs at issue; (3) reproduction of relevant investigatory materials and prior discovery; (4) how case-specific discovery in the State Attorney General Track and the Self-Funded Payer Track should proceed; and (5) the overall discovery timetable. The parties' respective proposed case management orders are attached to the Plan as Exhibits 1 and 2 (ECF Nos. 167-2 and 167-3). Plaintiffs address each disputed issue in turn.

    **1.**    **The relevant time period for discovery should extend from January 1, 2011 to January 1, 2024.**

The parties agree that the relevant time period for general discovery begins January 1, 2011. The parties disagree, however, as to the endpoint for the relevant time period. Plaintiffs maintain that the end date should be January 1, 2024, at the earliest, while Defendants seek to arbitrarily cut off discovery in June 2021, the date the State of Mississippi filed its case against Defendants. Defendants' proposal should be rejected outright. Plaintiffs' proposal is a significant,



good-faith compromise and more than reasonable given the mounting public health crisis at issue in these proceedings.

Nearly all cases in this MDL allege misconduct and damages from 2003 through the present. Plaintiffs allege specific, unlawful price increases through at least 2023[1] and specific, ongoing misconduct related to, among other things, PBM rebate aggregator activities **_beginning in 2021_** and continuing through this day. Additionally, Defendants' 2023 price cuts for certain insulins (and subsequent discontinuation of insulin products in 2024[2]) are also highly relevant to Plaintiffs' claims. All Plaintiffs allege *ongoing* misconduct and harm in violation of state consumer protection and deceptive trade practices statutes, federal RICO Act provisions, or state common law. All seek injunctive relief *going forward* to address the outrageous pricing practices that continue in the diabetic treatment space—notwithstanding the marginal (and inadequate) relief attempted just recently for certain at-issue insulins and only as a result of public scrutiny.

Tellingly, Defendants' proposal seeks to cut off relevant discovery for all MDL cases on June 7, 2021, well before the more recent misconduct and concealment began. As stated above,

---

[1] *See, e.g., See King County, WA v. Eli Lilly & Co., et al.*, Case No. 2:23-md-03080 (D.N.J.), Dkt. 160 (Second Am. Compl. filed Apr. 24, 2024) at ¶ 187 (charting price increases for analog insulins from 2004 through 2022), ¶ 205 (charting Sanofi's insulin prices from 2012 through 2022, showing a 143% increase), ¶ 302 (alleging that the increasing U.S. list price of Ozempic reached $936 in 2023, more than ten times the price of the drug in other countries), ¶ 305 (citing Novo Nordisk's March 2024 agreement with a PBM Defendant to "limit" GLP-1 price increases to 15% annually). *See also*, *State of Utah, ex rel. Sean Reyes v. Eli Lilly & Co., et al.*, Case No. 2:24-cv-0536 (D.N.J.), Dkt. 1-1 (Complaint, filed Nov. 16, 2023) at Figs. 2-4 (charting Humulin R, Humalog, and Levemir price increases up to 2022), Fig. 10 (charting Trulicity, Victoza, and Ozempic price increases up to 2022), ¶ 271 (alleging that Eli Lilly has artificially inflated the list price of Trulicity by almost 50% over the last eight years), ¶¶ 343-44 (establishing that for the "last fifteen years," Manufacturers have artificially inflated their list prices and Manufacturer Payments have increased over the same time period).
[2] *See, e.g., County of Albany, New York v. Eli Lilly, et al.*, Case No. 2:23-md-03080 (D.N.J.), Dkt. 158 (Second Am. Compl. filed Apr. 24, 2024) at ¶¶ 245-50 (describing Defendants' conduct in 2023 and 2024).



Defendants purportedly selected this date because it is the date of the State of Mississippi's initial complaint. But, even the Mississippi Court rejected the Mississippi filing date as an appropriate discovery cut-off, and should be similarly rejected here.

Discovery does not "cut off" on the date a complaint is served. *See, e.g.*, *Rosales v. FitFlop USA, LLC*, 2013 WL 12416060, at *2-3 (S.D. Cal. 2013). And even if it did, many new complaints have been filed and served in this MDL in 2024. And where, as here, claims involve allegations of ongoing conduct and seek injunctive relief, discovery through the present is appropriate. *See FTC v. Precision Patient Outcomes, Inc*., 2023 WL 4475604, at *2 (N.D. Cal., 2023); *see also In re Outpatient Medical Center Employee Antitrust Litigation*, 2023 WL 4181198, at *5 (N.D. Ill. June 26, 2023) (allowing 10.5-year discovery period, including at least one year after the conspiracy ended so that the plaintiffs could "understand the impact of the conspiracy as well as to determine the amount of damages").

**2.      The relevant drugs for purposes of discovery should include GLP-1s.**

When the Judicial Panel on Multidistrict Litigation created this MDL, it described it as comprising actions that "share factual questions concerning an alleged scheme between insulin manufacturers and pharmacy benefit managers to artificially and fraudulently inflate the price of ***insulin and other diabetes medications" known as "glucagon-like peptide-1 receptor agonists or "GLP-1" drugs*.**" *In re: Insulin Pricing Litigation*, 2023 WL 5065090, at *3, n. 8 (J.P.M.L. Aug. 3, 2023) (emphasis added). And, indeed this makes sense as the majority of cases in this MDL allege ongoing, intentional misconduct impacting the prices for all identified diabetic



treatments, including GLP-1 drugs.[3]  Accordingly, discovery should encompass all at-issue drugs set forth in Plaintiffs' proposed CMO.  Manufacturer Defendants' recent, belated, and baseless request for leave to file a Rule 12(c) motion in a single case—which is vigorously opposed—is no basis to limit discovery to whatever subset of the at-issue drugs the Manufacturers consider relevant.

### 3.   Defendants should promptly reproduce relevant investigatory materials and prior discovery relating to insulin pricing.

Defendants here have been investigated by the U.S. Senate, the U.S. House of Representatives, the Federal Trade Commission, and numerous state Attorneys General in connection with the same pricing practices that are at issue in this case.  Defendants have also responded to discovery, produced documents and data, and given deposition testimony in several insulin-pricing cases.  These discovery materials are unquestionably relevant to the MDL cases and should be promptly reproduced to Plaintiffs without objection.

Indeed, Defendants argue at every turn that these insulin-pricing investigations and lawsuits should have put Plaintiffs on notice of their claims.  Further, the PBM Defendants recently admitted that "nearly all" of the MDL member cases are "grounded in the Senate Finance Committee's investigation into insulin pricing."  *In re Insulin Pricing Litigation*, 1:23-cv-00464 (J.P.M.L.), Dkt. 16 at pg. 9-10.  PBM Defendants also argued that the State of Hawai'i's case belongs in this MDL because it resulted from the PBMs' reproduction of documents that were "produced in response to other State AGs' insulin-related Civil Investigative Demands as well as claims and rebate data."  *Id.*

---

[3] *See, e.g., Lake County, IL v. Eli Lilly & Co., et al.*, Case No. 2:23-md-03080 (D.N.J.), Dkt. 159 (First Am. Compl. filed Apr. 24, 2024) at ¶¶ 249-269 (detailing allegations of wrongful conduct related to GLP-1 drugs).

May 8, 2024
Page 5



There is no legitimate basis for refusing to reproduce highly relevant discovery materials from other proceedings in this MDL. There is no burden; protective orders are in place; and the proposed ESI Order allows Defendants to produce these materials in the same form as they were originally produced.  Defendants' obstruction is grounded only in a desire to forestall transparency and to delay the further confirmation of Plaintiffs' allegations. Though defendants in litigation "regularly agree through joint discovery schedules" to reproduce documents submitted in connection with related lawsuits and state and federal investigations, *In re Plastics Additives Antitrust Lit.*, 2004 WL 2743591, at *12 (E.D. Pa. Nov. 29, 2004) (collecting cases), Defendants here refuse to do so.

Instead, Defendants cherry pick from the assorted relevant prior productions.  They propose to reproduce only *documents* produced by (i) the Manufacturer Defendants in the Consumer Class case, and (ii) both Defendant groups in the Mississippi AG case. *See* Defendants' proposed CMO at § IV(C).  Under Defendants' proposal, none of the other available relevant discovery materials (depositions, written responses, data, deposition transcripts, etc.) would be provided.  And nothing would be reproduced from any other insulin pricing case or investigation, not even from the U.S. Senate investigation or from the other cases consolidated in or coordinated with this MDL.

Defendants' arbitrary limitation is unjustified, grossly inefficient, and contrary to the purpose of these consolidated proceedings.  *In re: Insulin Pricing Litigation*,  2023 WL 5065090, at *3 ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary.").

Plaintiffs respectfully submit that their request accords with the fundamental purposes of this MDL and should be adopted.

May 8, 2024
Page 6



4.    **Plaintiff's Discovery Plan ensures that discovery is appropriately tailored to each case track.**

The parties agree that Rule 26(a)(1)(A) disclosures must be exchanged but otherwise have fundamentally different views as to how discovery should proceed in this MDL. Plaintiffs respectfully submit that their proposal: (a) will ensure that all parties obtain core information related to their claims; (b) is consistent with the approaches used in similarly situated MDLs involving entity plaintiffs; and (c) presents the most efficient and reasonable way for written discovery to commence. Plaintiffs' plan has three components:

i.    Master Discovery Requests from Plaintiffs to Defendants.

All Plaintiffs across all tracks in the MDL and the Direct Purchase Action will collectively serve Master Discovery Requests on each Defendant - 30 Interrogatories, 30 Requests for Production, and 30 Requests for Admission. Master Discovery Requests will concern matters that are common across each Plaintiff Track and the Direct Purchaser Action.

ii.   Master Discovery Requests from Defendants to Plaintiffs in the Third-Party Payer Class Track and the Direct Purchaser Action.

Defendants may collectively serve Master Discovery Requests (30 Interrogatories, 30 Requests for Production, and 30 Requests for Admission) on each of the named Plaintiffs in each representative action.

iii.  Plaintiff Fact Sheets in the State Attorney General and Self-Funded Payer Tracks.

Given the significantly larger (and growing) number of cases in the Self-Funded Payer Track and the State Attorney General Track, Master Discovery Requests are not feasible. Plaintiffs therefore propose that: (i) first, each Plaintiff responds to agreed-upon questions and document requests in the form of a Plaintiff Fact Sheet ("PFS"); (ii) using those responses, the parties in



each track then jointly select a subset of cases for inclusion in a discovery pool for full case-specific fact discovery; and (iii) finally, the parties then jointly select trial cases that will proceed with expert discovery, *Daubert* motions, and dispositive motions.

Plaintiffs' approach, which begins with a stipulated PFS in two of the tracks, is appropriate—and preferable to Defendants' proposal for full-scale discovery in all cases—for multiple reasons. First, the stipulated PFS process ensures that the same, key discovery is requested in each case  streamlining the process for collecting the information across the cases and, avoiding an endless stream of  discovery disputes and motions brought before the Court. Second, the stipulated PFS approach ensures that a single response, with an accompanying document production for each Plaintiff, will satisfy the core discovery needs of all Defendants, thus creating further efficiencies. In sum, the PFS process will most efficiently provide the information necessary for the parties to make informed selections for the discovery pool and, later, for trial.

Plaintiffs' proposed PFS approach is consistent with that used by this Court and by other MDL courts overseeing large cases involving governmental and other entity plaintiffs. *See, e.g.*, *In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*, Case No. 2:19-md-02921, MDL No. 2921, Amended Special Master CMO 12 (ECF No. 386); *In re Elmiron (Pentosan Polysulfate Sodium) Prods. Liab. Litig.*, Case No. 2:20-md-02973, MDL No. 2973, Case Management Order No. 8 (ECF No. 39); *In re Invokana (Canagliflozin) Prods. Liab. Litig.*, MDL No. 2750, Case Management Order No. 18 (ECF No. 198); *see also In re Juul Labs Inc., Mktg., Sales Practices, and Prods. Liab. Litig.*, Case No. 19-md-02913, MDL No. 2913, Case Management Order No. 13: Government Entity and School District Fact Sheet Implementation Order (ECF No. 1075) (implementing Plaintiff Fact Sheets for "all government-entity Plaintiffs

May 8, 2024
Page 8



(including school-district Plaintiffs)"); *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, Case No. 2:18-mn-2873, MDL No. 2873, Case Management Order No. 5 (ECF No. 205) (providing for Plaintiff Fact Sheets for "Plaintiff water authorities, districts, or other water suppliers and for any municipality or other local or county government pursuing claims related to alleged contamination of water supplies within or impacting their jurisdictions…"); *In re Nat'l Prescription Opiate Litig.*, Case No. 1:17-md-2804, MDL No. 2804, Fact Sheet Implementation Order (ECF No. 638) (providing for Plaintiff Fact Sheet for "Governmental Entities (e.g., Cities, Towns, Counties)").

The PFS approach is also consistent with the approach endorsed by proposed Rule 16.1 of the Federal Rules of Civil Procedure. Indeed, the Advisory Committee on Civil Rules acknowledged that courts frequently use fact sheets as a "method[] to take a survey of the claims and defenses presented, largely as a management method for planning and organizing the proceedings" and recognized that the "level of detail called for" by fact sheets in any given case can and "should be carefully considered to meet the purpose to be served and avoid undue burdens."[4]

The use of discovery pools prior to selecting cases for trial is likewise consistent with the procedures used by this Court and other MDL courts overseeing claims brought by governmental and other entity plaintiffs. *See, e.g.*, *In re Elmiron*, Case No. 2:20-md-02973, MDL No. 2973, Case Management Order No. 17 (Bellwether Selection and Scheduling Order) (providing for discovery pools for bellwether cases); *see also In re AFFF*, Case No. 2:18-mn-2873, MDL No. 2873, Initial Bellwether Selection and Protocols (ECF No. 1049) (implementing two-tier process

---

[4] *See* https://www.uscourts.gov/sites/default/files/2023-03_civil_rules_committee_agenda_book_final_0.pdf



for Water Provider cases: (i) selecting bellwether discovery pool cases and (ii) selecting trial pool cases from such discovery pool cases); *In re Juul Labs*, Case No. 19-md-02913, MDL No. 2913, Stipulation and Order to Extend Deadlines Regarding Government Entity Bellwether Selection (ECF No. 1157) (describing process for discovery and bellwether selection for government entity plaintiffs); *In re Nat'l Prescription Opiate Litig.*, Case No. 1:17-md-2804, MDL No. 2804, Bellwether Order (ECF No. 4920) (in cases filed by third-party payors, providing for fact-sheet process followed by bellwether selection).

During the meet-and-confer process, Defendants objected to the PFS approach on the grounds that there are not enough cases in this MDL to justify the use of PFS. Defendants' position is without merit. There are currently more than 50 cases in the Self-Funded Payer and State Attorney General Tracks, and that number continues to grow. Even with the current number of cases, it is unmanageable and inefficient to conduct full-scale discovery in each and every case. Discovery disputes alone would swallow vast amounts of the Court's and counsel's time. . Further, unlike the Master Discovery that Defendants will answer, which involve common issues, Defendants' proposed Master Discovery Requests are targeted at case-specific issues like individual PBM contracts, correspondence between Defendants and each Plaintiff, and other singular discovery. Each Plaintiff would be required to provide individualized discovery responses to two sets of Master Discovery Requests – 60 unique Interrogatories and 60 unique Requests for Production, without any corresponding benefit to the parties' mutual interest in moving the litigation forward. Applying simple math, even assuming only 60 Plaintiffs, that's a total of 7,200 individual responses (and applicable plaintiff-specific objections). At the same time, each Defendant would only answer one set of Master Discovery Requests. The inequities here are obvious, with nothing gained as a result.

May 8, 2024
Page 10



    i.    Additional Non-Duplicative Discovery Requests in the Class Track Cases.

In addition to the Master Discovery Requests, Plaintiffs' Discovery Plan provides the
Third-Party Payer Class (PBM) Track, the Third-Party Payer Class (Manufacturer) Track, and the
Direct Purchaser Action (collectively, "Class Track") with the right to serve an additional, non-
duplicative, 30 Requests for Production, 15 Interrogatories, and Requests for Admission
addressing case-specific issues upon each Defendant. While the various tracks coordinated and/or
consolidated in this MDL share many similarities, they are not the same. For example, the *Local
1* TPP complaint alleges a Robinson-Patman Act claim not advanced in other plaintiff-track cases.
Additionally, the class certification requirements set forth in Rule 23 of the Federal Rules of Civil
Procedure are relevant in the Class track cases, but not the State Attorney General and Self-Funder
Payer Tracks.

The Master Discovery Requests ultimately served by Plaintiffs will reflect compromises
amongst the various Plaintiff groups. These additional non-duplicative discovery requests for
Class Track Cases will enable these groups to request the discovery they need to pursue their
claims in an efficient and expedient manner. The number of non-duplicative requests is also
reasonable given the size and stakes of this litigation, as well as the fact that they would be
permitted under the default limitations in the Federal Rules.

Defendants offer no plan for the case-specific work-up of individual cases or any process
for selecting trial cases.  Rather, Defendants appear to contemplate that each case would undergo
a full discovery work-up.  This approach will preclude the parties from efficiently engaging in
discovery or working towards a resolution to this litigation.

May 8, 2024
Page 11



> **5.** **Plaintiff's proposed discovery schedule ensures a speedy and efficient discovery work-up and a coherent path to trial.**

Plaintiffs' proposal provides a schedule for completion of fact discovery, expert discovery, and dispositive motion practice by the end of 2025. Plaintiffs' proposed schedule therefore strikes an appropriate balance between efficiency and the opportunity for fulsome discovery.

Plaintiffs' proposal sets no limitation on when depositions can begin and sets a fact discovery deadline of June 30, 2025. After the completion of fact discovery, Plaintiffs' proposal sets forth a schedule for expert discovery, *Daubert* motions, and motions for summary judgment by the end of 2025 in the selected discovery pool cases. This schedule is aggressive – which is appropriate given the public health crisis at issue in this litigation – while still permitting sufficient time to complete these important tasks in a practical manner.

Defendants' proposal inexplicably prohibits depositions until June 23, 2025. And then sets the deadline for completion of fact discovery, including depositions, five months later, on November 21, 2025. Such a schedule is unreasonable and unjustified, particularly under the circumstances here with Defendants' productions from prior proceedings.

Notably, Defendants' proposal does not include any schedule for expert discovery, *Daubert* motions, or dispositive motions. Instead, the Defendants propose a meet-and-confer 60 days after the close of fact discovery for the submission of a schedule of all remaining deadlines, including class certification. In short, Defendants' approach lacks any viable path towards trial or other resolution of this litigation.

Plaintiffs' Discovery Plan also contemplates the parties beginning third-party discovery immediately upon the entry of the Discovery Plan by the Court. Avoiding delays in beginning third-party discovery is vital given the potential for discovery disputes with third parties that may

May 8, 2024
Page 12



require Court resolution. Defendants' Discovery Plan, however, contains a prohibition on third-party discovery until 60 days after the entry of the Discovery Plan by the Court. Defendants have offered no justification for this built-in delay, and it is difficult to ascertain a valid justification for it.

May 8, 2024                                        Respectfully submitted,


/s/ James E. Cecchi                        /s/ Joanne Cicala
James E. Cecchi                            Joanne Cicala
CARELLA, BYRNE, CECCHI,                    THE CICALA LAW FIRM PLLC
BRODY & AGNELLO, P.C.                      101 College Street
5 Becker Farm Road                         Dripping Springs, TX 78620
Roseland, NJ 07068                         512-275-6550
973-994-1700                               joanne@cicalapllc.com

Liaison Counsel for                        Liaison Counsel for
Third-Party Payer Class Track              State Attorney General Track

                                           /s/ David R. Buchanan
                                           David R. Buchanan
                                           SEEGER WEISS LLP
                                           55 Challenger Road, 6th Floor
                                           Ridgefield Park, NJ 07660
                                           973-639-9100
                                           dbuchanan@seegerweiss.com

                                           Liaison Counsel for
                                           Self-Funded Payer Track



cc:      All Counsel of Record (via ECF)