# SEEGERWEISS LLP

NEW YORK • NEW JERSEY • PHILADELPHIA • NEWTON, MA

**VIA ECF**

Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

> **Re:**  ***In re: Insulin Pricing Litigation***
> **No. 2:23-md-03080-BRM-RLS, MDL No. 3080**
> **Plaintiffs' Submission on Hyperlinked Materials**

Dear Judge Singh:

Plaintiffs write in response to Defendants' supplemental submission regarding the parties' dispute over Defendants' collection and production of hyperlinked material [ECF 163].[1] During the last conference before Your Honor, Defendants argued that it was "frankly, impossible . . . technologically" for them to collect and produce hyperlinked materials as document families. Apr. 8, 2024 Hr'g Tr. at 49:14-50:10. Defendants' declarations prove the opposite. Five of the six Defendants here[2]—simply using an eDiscovery tool offered by their chosen email provider (Microsoft)—could readily collect and produce *all versions* of hyperlinked attachments, or the *current versions* of such attachments, in family formats, for hyperlinked documents transmitted during the relevant timeframe.

Each Defendant is uniquely situated, however—with respect to its specific IT systems, the time periods during which its custodians may have used hyperlinks, and the time periods for which it may be able to produce hyperlinked material as document families. The ESI Order in this case should be sufficiently flexible to reflect that variability and not take a one-size-fits-all approach merely because some Defendants may not be able to produce hyperlinked material as easily, or going as far

---

[1] All citations to "Ex. __" refer to exhibits to Defendants' supplemental submission [ECF 163-1].

[2] OptumRx's declaration does not provide sufficient information about its Microsoft Office 365 Exchange environment to determine whether it uses or could feasibly use tools to extract documents hyperlinked in emails or messages.

back in time, as others. *See, e.g.*, *Shenwick v. Twitter*, 2018 WL 5735176, at *1 (N.D. Cal. Sept. 17, 2018) (requiring defendants to conduct manual searches and produce 200 hyperlinked documents despite undisputed burdens because defendants "have chosen a storage method that is difficult to search" and plaintiffs are entitled to discovery).

Because Defendants' recent declarations each raised *specific* technical points that warranted further discussion, and to better understand the true scope of this dispute, Plaintiffs sought to confer separately with each Defendant regarding these issues. *See* App'x 1 (Pls.' emails to each Def. with questions regarding its declaration).[3] Unfortunately, Defendants refused Plaintiffs' request. *See* App'x 2. Plaintiffs have sought to work through these issues to arrive at reasonable, common-sense solutions so that, where feasible using existing technology, hyperlinked documents are collected and produced with their associated transmittals. Doing so, however, will require additional conferral to better understand ***each Defendant's specific capabilities*** to collect and produce hyperlinked documents. Plaintiffs submit that the parties would benefit from further meet-and-confer efforts on this issue and respectfully request that the Court guide the parties to further confer concerning the feasibility of collecting and producing hyperlinked materials, and the appropriate scope thereof.

## I.   Defendants can collect and produce hyperlinked material from specific relevant time periods using existing software tools available through their email service provider.

Defendants' submission focuses entirely on their respective capabilities to produce the "as-sent" version of a hyperlinked document. *See* ECF 163. Plaintiffs' proposed ESI Order, however, provides that the parties "shall meet and confer regarding the most reasonable means to produce [hyperlinked documents], as well as the versions of such documents (e.g., the as-sent version, current version, etc.) to be collected and produced." *See* Joint Chart, ECF 120-1, Ex. A at Row 12. But as

---

[3] During the parties' meet-and-confers regarding the ESI Order, Defendants never supported their generalized feasibility or burden arguments with even the limited information set forth in their declarations. This information was also absent from Defendants' initial ESI submission [ECF 123].

Defendants' declarations variously acknowledge, the eDiscovery tool available through Defendants' email service provider—Microsoft Purview Premium—can either "collect (i) the ***latest version*** of the hyperlinked document or (ii) ***all versions*** of the hyperlinked document up to the limit established in the organization's M365 environment (the Microsoft default is 500 versions)." Ex. C at ¶ 18 (emphasis added).[4] Defendants should not be excused from collecting and producing hyperlinked documents with their transmitting emails or messages simply because they cannot produce the "as-sent" version of the cloud attachment.[5] As explained by eDiscovery expert Craig Ball, "[t]he possibility that a document has been edited is not a new one in discovery; it goes to the document's admissibility not its discoverability."[6]

Here, at least five of the six Defendants[7] can collect and produce cloud attachments as unified families for specific periods of the relevant timeframe using the eDiscovery tool available through their email provider—Microsoft Purview Premium.

1. ***Novo Nordisk*** confirmed that—<u>**since 2019**</u>—it has used Microsoft 365 (M365), including Outlook, OneDrive, SharePoint, and Purview. Ex. F, ¶¶ 4-5. Novo can, at a minimum, collect and produce cloud attachments using Purview Premium going back to 2019, despite its "practice in this and other litigation matters is *not* to collect shared/linked documents (version shared or last version)." *Id.* at ¶ 15 (emphasis in original).

---

[4] Defendants have not provided any information as to the total number (or proportion) of their cloud attachments that have been modified after initial transmittal. Many documents may very well have *never* been modified after transmittal such that the latest version is the "as-sent" version. In addition, when all versions have been collected, the most recent version that existed as of the sent date of a specific email should be readily and programmatically determinable post-Purview collection.

[5] *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2024 WL 1772832, at *6 (N.D. Cal. Apr. 23, 2024) (requiring producing party to "make all reasonable efforts to maintain and preserve the relationship between any message or email and any cloud-hosted document hyperlinked or referenced within the message or email," but excusing Uber from collecting as-sent versions of its Google Drive documents, as doing so was "not possible through an automated process with existing technology.").

[6] https://craigball.net/2024/04/08/cloud-attachments-versions-and-purview/

[7] OptumRx uses the Microsoft Office 365 Exchange email platform and Outlook as its email interface but otherwise provides no information whatsoever regarding whether its employees can insert hyperlinks to cloud attachments using the Office 365 Exchange email platform.

2. ***Sanofi*** confirmed that, "by April 2020," it had "completed its migration of email systems from its own Exchange servers to Microsoft's M365 cloud-based platform." and had "migrated internal network share home drives to . . . One-Drive." Ex. H, ¶ 8. Since this **April 2020** migration, Sanofi users can attach hyperlinked documents. *Id.* ¶ 10. Sanofi uses Purview Standard and, with Premium, could collect attachments sent since April 2020. *Id.* ¶¶ 12-13.

3. ***Eli Lilly*** stated that its "only complete source of record for emails dated prior to February 13, 2023 is an archive outside of its M365 environment." Ex. C, ¶ 15. Lilly fails to provide any information about this archive (or what other sources of emails it has). These deficiencies aside, Lilly acknowledges that, using Purview Premium, it could, at a minimum, collect hyperlinked documents associated with emails sent after **February 2023**. *Id.* ¶¶ 17-21.

4. ***CVS*** "began transitioning its employees" to M365 **in 2019** and currently uses Purview "to collect documents from the various data storage locations . . . used by [its] custodians within Microsoft 365." Ex. A, ¶¶ 4, 6. CVS therefore could use Purview Premium to collect and produce hyperlinked documents as document families for emails and messages beginning in 2019. CVS otherwise fails to provide any helpful information regarding its migration (including when potentially relevant custodians were migrated or whether CVS custodians used hyperlinks prior to its 2019 migration).

5. ***Express Scripts*** **completed by 2024** its rollout of M365 "cloud-based solutions" and is using Purview Standard for "certain eDiscovery collections." Ex. D, ¶ 3; Ex. E, ¶ 4. Although Express Scripts states that "the vast majority of files are stored in other storage environments" (Ex. D, ¶ 4), it provides no information about these other environments to allow Plaintiffs to determine the feasibility of collecting and producing hyperlinked documents as families.

Each Defendant using M365 can collect and produce hyperlinked material—at a minimum for specific portions of the relevant time period—with associated transmittal emails or messages—using Purview Premium (e.g., Novo Nordisk since 2019, Sanofi since 2020, CVS beginning in 2019).[8]

**II.     Further conferral is warranted as to the scope of Defendants' capabilities to collect hyperlinked materials, and any appropriate limitations on the scope of such collection and production.**

Defendants' declarations establish that, using existing eDiscovery software features available through Microsoft—their email provider—they will be able to collect and produce as families certain

---

[8] Additional information is needed from Defendants to determine the feasibility of producing other hyperlinked material as document families. *See* App'x 1.

hyperlinked documents transmitted during the relevant timeframe.[9] Based on the limited material provided in their declarations, however, additional information is needed to understand each Defendant's specific capabilities to collect and produce hyperlinked documents, and how far back in time each Defendant can collect such hyperlinked material. *See, e.g.*, App'x 1. But the fact that Defendants are differently situated, or that each Defendant may not be able to collect and produce hyperlinked material for the entirety of the relevant timeframe, should not excuse Defendants from collecting and producing hyperlinked attachments as families when doing so can be accomplished efficiently (e.g., by checking a box during collection) and at reasonable cost.

Plaintiffs submit that further conferral on this issue would benefit all parties and, likewise, the Court's consideration of this issue should disputes remain following such conferral. Plaintiffs therefore respectfully request that the Court direct the parties to further confer, with technical representatives for Plaintiffs and Defendants, concerning the feasibility of collecting and producing hyperlinked materials with their associated transmittal emails or messages. Plaintiffs propose using the issues and questions raised in Appendix 1 as a guide for such discussion.

*        *        *

We thank the Court for its continued attention to this matter.

---

[9] Defendants attempt to justify their ***choice*** not to use the advanced eDiscovery tools offered by Microsoft Purview Premium—tools specifically designed to facilitate discovery of hyperlinked cloud attachments—through confected (and disingenuous) expense arguments. Specifically, Defendants cite Sanofi's calculation of the marginal cost for Purview Premium, using Microsoft's publicly available pricing (an additional $23.61 per month per user), ***for each of its 138,000 users***—to arrive at an annual cost of $39 million. ECF 163 at 3; Ex. H, ¶ 22. But Sanofi's inflated calculation is completely debunked by CVS's declaration, which confirms that, "to export Cloud Attachments from Microsoft Premium, ***each custodial account that is to be collected*** must have an 'E5' upgraded license"—not every user. Ex. B, ¶ 6 (emphasis added). Even assuming that Defendants pay Microsoft's rack rate for Purview Premium (which is not plausible), and that each Defendant upgrades to a Purview Premium license for 100 custodians, the cost of upgrading to Purview Premium for this MDL would total $2,300 per month—a cost undoubtedly eclipsed by the amount spent by Defendants to litigate this very issue.

Respectfully submitted,

Dated: May 8, 2024

/s/ James E. Cecchi                         /s/ David R. Buchanan
James E. Cecchi                             David R. Buchanan
CARELLA, BYRNE, CECCHI,                     SEEGER WEISS LLP
BRODY & AGNELLO, P.C.                       55 Challenger Road, 6th Floor
5 Becker Farm Road                          Ridgefield Park, NJ 07660
Roseland, NJ 07068                          973-639-9100
973-994-1700                                dbuchanan@seegerweiss.com
jcecchi@carellabyrne.com

*Liaison Counsel for*                       *Liaison Counsel for*
*Third-Party Payer Class Track*             *Self-Funded Payer Track*


/s/ Joanne Cicala
Joanne Cicala
The Cicala Law Firm PLLC
101 College Street
Dripping Springs, TX 78620
512-275-6550
joanne@cicalapllc.com

*Liaison Counsel for*
*State Attorney General Track*


cc:     Counsel of Record (*via* ECF)

# APPENDIX 1

| | |
|---|---|
| **From:** | Steven Daroci |
| **Sent:** | Sunday, May 5, 2024 6:43 PM |
| **To:** | rouhandeh@davispolk.com; Andrew.yaphe@davispolk.com; 'david.toscano@davispolk.com'; Hogg, Ian; neal.potischman@davispolk.com |
| **Cc:** | David Buchanan; Benjamin Widlanski; bbogle@levinlaw.com; mpifko; Tal J Lifshitz; joanne@cicalapllc.com; Josh Wackerly; Tanya D. Ellis; lawrence@listondeas.com; Trey Watkins; Donald A. Ecklund; James Cecchi; myeates@ktmc.com; Mike Roberts; Karen Halbert; Matthew Gately; Michele Burkholder |
| **Subject:** | Insulin Pricing MDL // Follow-up re Novo Nordisk ESI submission |

Dear Counsel:

We have received and reviewed Defendants' submission regarding the feasibility of producing hyperlinked files as family documents. [ECF No. 163]. Novo Nordisk's submission raised certain technical points that we think merit further discussion/conferral in advance of Plaintiffs' response to these submissions on Wednesday. To that end, we'd like to confer with counsel and a person familiar with the technical aspects of Novo Nordisk's declaration on Monday or Tuesday.

Recognizing the tight timelines we're working with, and to guide our call, below is a list of questions/issues that we'd like to discuss:

1. When in 2019 did Novo Nordisk migrate to Microsoft Office 365?
2. With respect to the statement that "in connection with this litigation, Novo Nordisk's eDiscovery Team has collected (and will be collecting) relevant Outlook, OneDrive and SharePoint data using Purview, which it provided (and will be providing) to Lighthouse for processing, hosting and review by its outside counsel," including "data that was created pre- 2019 before Novo Nordisk moved to the M365 platform and when it was using Microsoft's on-premises version of Outlook (and other word processing applications)" (Brown Decl. ¶ 6), how did Novo Nordisk use Purview to collect pre-2019 ESI in on-premises versions of Outlook?  If Novo Nordisk did not use Purview to conduct these collections, what tools did Novo Nordisk use?
3. Does the Novo Nordisk data currently hosted by Lighthouse for the Insulin Pricing litigations include ESI created prior to 2019 by Novo Nordisk custodians which was not migrated to M365? (Brown Decl. ¶ 6)
4. Have any emails been migrated to M365 from another email platform? If so, what emails and from what platforms?
5. What versions of on-premises Outlook or Exchange has Novo Nordisk used?
6. Prior to the migration date for Microsoft Office 365, could Novo Nordisk employees insert hyperlinks to files in MS Exchange email, or were Novo Nordisk employees limited to attaching files to emails, i.e., does all pre-2019 Novo Nordisk email data contain traditional static attachments?
7. Does Novo Nordisk have the Standard or Premium version of Microsoft Purview? When did it begin using such versions?
8. What specific processes has Novo Nordisk ever used to collect on-premises Outlook/Exchange emails, or documents hyperlinked within such emails, for civil or criminal discovery? Was any program/application/script/code ever used in any part of a process?
9. Has Novo Nordisk, its eDiscovery vendors, or its outside counsel determined or estimated how many messages or chats sent or received by Novo Nordisk employees under legal hold for the Insulin Pricing litigations contain non-public hyperlinks?
10. With Purview Premium, would Novo Nordisk be able to collect all versions or the latest version of hyperlinked documents in emails or messages after the 2019 migration to M365?

Please let us know what times work for such discussion. We appreciate your cooperation in this regard.

STEVEN J. DAROCI
Attorney at Law
**SEEGER WEISS LLP**

55 Challenger Road
Ridgefield Park, NJ 07660
P. 973.639.5393
F. 973.679.8656
sdaroci@seegerweiss.com

| | |
|---|---|
| **From:** | Steven Daroci |
| **Sent:** | Sunday, May 5, 2024 6:47 PM |
| **To:** | Patterson, Melissa L.; Harmanis, Ryan; Martin, Theresa C.; Liza Walsh; Bejan, Daria K.; Lauren Malakoff; Fassih, Elizabeth S.; Katelyn O'Reilly; Kiessling, Joseph J. |
| **Cc:** | David Buchanan; Benjamin Widlanski; bbogle@levinlaw.com; mpifko; Tal J Lifshitz; joanne@cicalapllc.com; Josh Wackerly; Tanya D. Ellis; lawrence@listondeas.com; Trey Watkins; Donald A. Ecklund; James Cecchi; myeates@ktmc.com; Mike Roberts; Karen Halbert; Matthew Gately; Michele Burkholder |
| **Subject:** | Insulin Pricing MDL // Follow-up on Sanofi ESI submission |

Dear Counsel:

We have received and reviewed Defendants' submission regarding the feasibility of producing hyperlinked files as family documents. [ECF No. 163]. Sanofi's submission raised certain technical points that we think merit further discussion/conferral in advance of Plaintiffs' response to these submissions on Wednesday. To that end, we'd like to confer with counsel and a person familiar with the technical aspects of Sanofi's declaration on Monday or Tuesday.

Recognizing the tight timelines we're working with, and to guide our call, below is a list of questions/issues that we'd like to discuss:

1. What are the "legacy email archive systems" referenced in Amicucci Decl. ¶ 2?
2. Prior to April 2020, did Sanofi have its own on-premises MS Exchange email system?
3. With respect to the statement: "Prior to 2020, Sanofi users had access to and primarily used internal Sanofi network drives, including their own internal Sanofi network personal home drives" (Amicucci Decl. ¶ 7):
   a. What non-custodial data sources were used by Sanofi custodians prior to 2020?
   b. What other data storage options did Sanofi users have other than the "primarily used" storage referenced in the declaration?
4. When did Sanofi begin to migrate Sanofi employees to MS Office 365?
5. Prior to the migration date for MS Office 365, could Sanofi employees insert hyperlinks to files in MS Exchange email, or were Sanofi employees limited to attaching files to emails?
6. As to the statement that "Sanofi also migrated internal network share home drives to Microsoft's cloud-based OneDrive" (Amicucci Decl. ¶ 8):
   a. What was migrated and how was the migration done?
   b. Was anything not migrated? If so, what?
7. With respect to Sanofi's "migration of email systems from its own Exchange servers to Microsoft's M365 cloud-based platform" (Amicucci Decl. ¶ 8):
   a. When did the migration begin?
   b. What was migrated and how was the migration done?
   c. Was anything not migrated? If so, what?
8. What specific processes has Sanofi ever used to collect from its own Exchange server emails (i.e., emails contained in from its own Exchange servers) and/or M365 emails (i.e., emails contained in M365), or files hyperlinked within such emails, for civil or criminal discovery? Was any program/application/script/code ever used in any part of a process?
9. When did the migration to SharePoint and Teams begin?  What data is Sanofi currently in the process of migrating to SharePoint and Teams?

10. Have all the Sanofi employees under legal hold for the Insulin Pricing litigation been migrated to MS Office 365?

11. Does anyone Sanofi have the Microsoft Purview E5 license?

12. What is the "different document repository" referenced in Amicucci Decl. ¶ 17?

13. What are the "non-Microsoft systems" where Sanofi archived email and other data? (Amicucci Decl. ¶ 18)

14. Has Sanofi, its eDiscovery vendors, or its outside counsel determined or estimated how many messages or chats sent or received by Sanofi employees under legal hold for the Insulin Pricing litigations contain non-public hyperlinks?

15. With Purview Premium, would Sanofi be able to collect all versions or the latest version of hyperlinked documents in emails or messages after the April 2020 migration to M365?

Please let us know what times work for such discussion. We appreciate your cooperation in this regard.

STEVEN J. DAROCI
Attorney at Law
**SEEGER WEISS LLP**

55 Challenger Road
Ridgefield Park, NJ 07660
P. 973.639.5393
F. 973.679.8656
sdaroci@seegerweiss.com

| From: | Steven Daroci |
|---|---|
| Sent: | Sunday, May 5, 2024 6:44 PM |
| To: | 'clint.cowan@kirkland.com'; Jason.feld@kirkland.com; 'sam.rose@kirkland.com'; akassof@kirkland.com; ryan.moorman@kirkland.com; diana.watral@kirkland.com; james.hurst@kirkland.com |
| Cc: | David Buchanan; Benjamin Widlanski; bbogle@levinlaw.com; mpifko; Tal J Lifshitz; joanne@cicalapllc.com; Josh Wackerly; Tanya D. Ellis; lawrence@listondeas.com; Trey Watkins; Donald A. Ecklund; James Cecchi; myeates@ktmc.com; Mike Roberts; Karen Halbert; Matthew Gately; Michele Burkholder |
| Subject: | Insulin Pricing MDL // Follow-up re Eli Lilly ESI submission |

Dear Counsel:

We have received and reviewed Defendants' submission regarding the feasibility of producing hyperlinked files as family documents. [ECF No. 163]. Eli Lilly's submission raised certain technical points that we think merit further discussion/conferral in advance of Plaintiffs' response to these submissions on Wednesday. To that end, we'd like to confer with counsel and a person familiar with the technical aspects of Eli Lilly's declaration on Monday or Tuesday.

Recognizing the tight timelines we're working with, and to guide our call, below is a list of questions/issues that we'd like to discuss:

1. On what date did Lilly begin use of M365?
2. Prior to the launch of M365, what email systems did Lilly use?
3. Prior to the launch of M365, could Lilly employees insert hyperlinks in emails, or were Lilly employees limited to attaching files to emails?
4. Is Lilly's migration to M365 complete?  If not, when will the migration be complete?
5. Have all the Lilly employees under legal hold for the Insulin Pricing litigations been migrated to M365?
6. What is the referenced archive which is the "only complete source" for Lilly emails "dated prior to February 13, 2023," which exists outside of the MS Office 365 environment? (Schiff Decl. ¶ 15)
7. What other sources of emails dated prior February 13, 2023, does Lilly have?
8. Were/are any email attachments for referenced archive emails, i.e., emails archived or journaled in the referenced archive, replaced by stubs? If so, how are the emails reconstituted?
9. What specific processes has Lilly ever used to collect referenced archive/M365 emails, or documents hyperlinked within such emails, for civil or criminal discovery? Was any program/application/script/code ever used in any part of a process?
10. Has Lilly, its eDiscovery vendors, or its outside counsel determined or estimated how many messages or chats sent or received by Lilly employees under legal hold for the Insulin Pricing litigations contain non-public hyperlinks?
11. With Purview Premium, would Lilly able to collect all versions or the latest version of hyperlinked documents in emails or messages after February 13, 2023?

Please let us know what times work for such discussion. We appreciate your cooperation in this regard.

STEVEN J. DAROCI
Attorney at Law
SEEGER WEISS LLP

55 Challenger Road
Ridgefield Park, NJ 07660

P. 973.639.5393
F. 973.679.8656
sdaroci@seegerweiss.com

## Steven Daroci

| | |
|---|---|
| **From:** | Steven Daroci |
| **Sent:** | Sunday, May 5, 2024 6:46 PM |
| **To:** | apodoll@wc.com; kpoteat@wc.com; csinger@wc.com; lding@wc.com; adeprospo@wc.com; Dockery, Daniel; emainigi@wc.com; jtortorella@khmarino.com |
| **Cc:** | David Buchanan; Benjamin Widlanski; bbogle@levinlaw.com; mpifko; Tal J Lifshitz; joanne@cicalapllc.com; Josh Wackerly; Tanya D. Ellis; lawrence@listondeas.com; Trey Watkins; Donald A. Ecklund; James Cecchi; myeates@ktmc.com; Mike Roberts; Karen Halbert; Matthew Gately; Michele Burkholder |
| **Subject:** | Insulin Pricing MDL // Follow-up re CVS ESI submission |

Dear Counsel:

We have received and reviewed Defendants' submission regarding the feasibility of producing hyperlinked files as family documents. [ECF No. 163]. CVS's submission raised certain technical points that we think merit further discussion/conferral in advance of Plaintiffs' response to these submissions on Wednesday.  To that end, we'd like to confer with counsel and a person familiar with the technical aspects of CVS's declaration on Monday or Tuesday.

Recognizing the tight timelines we're working with, and to guide our call, below is a list of questions/issues that we'd like to discuss:

1. When in 2019 did CVS begin to migrate CVS employees to Microsoft Office 365?

2. What versions of SourceOne does CVS have?

3. How has CVS used SourceOne for document management? (Paradis Decl. ¶ 4)

4. Prior to the migration date for Microsoft Office 365, could CVS employees insert hyperlinks to files in MS Exchange email, or were CVS employees limited to attaching files to emails?

5. Please clarify the following: "Once users were moved to Microsoft Office 365, journaling to SourceOne was discontinued and moved to a new platform, Azure Enterprise Vault. Azure Enterprise Vault archives only for users/groups that have not yet been moved to Microsoft Office 365." (Paradis Decl. ¶ 4)

6. Were/are any email attachments for SourceOne/Azure Enterprise Vault emails, i.e., emails archived or journaled in SourceOne/Enterprise Vault, replaced by stubs? If so, how are the emails reconstituted?

7. Has CVS, its eDiscovery vendors, or its outside counsel determined or estimated how many messages or chats sent or received by CVS employees under legal hold for the Insulin Pricing litigations contain non-public hyperlinks?

8. Is the migration to Microsoft Office 365 complete? Have all CVS employees under legal hold for the Insulin Pricing litigations been migrated to Microsoft Office 365?

9. What specific processes has CVS ever used to collect SourceOne/Azure Enterprise Vault emails, or documents hyperlinked within such emails, for production in civil or criminal discovery? Was any program/application/script/code ever used in any part of a process?

10. Does anyone at CVS have Microsoft Purview (Premium)?

Please let us know what times work for such discussion. We appreciate your cooperation in this regard.

STEVEN J. DAROCI
Attorney at Law

**SEEGER WEISS LLP**

55 Challenger Road
Ridgefield Park, NJ 07660
P. 973.639.5393
F. 973.679.8656
sdaroci@seegerweiss.com

| | |
|---|---|
| **From:** | Steven Daroci |
| **Sent:** | Sunday, May 5, 2024 6:45 PM |
| **To:** | Harvey, Patrick A.; Scherr, Jason R.; Compton, Meredith L.; Ackerman, Ethan; Vaky, Katherine A.; Levy, Lindsey |
| **Cc:** | David Buchanan; Benjamin Widlanski; bbogle@levinlaw.com; mpifko; Tal J Lifshitz; joanne@cicalapllc.com; Josh Wackerly; Tanya D. Ellis; lawrence@listondeas.com; Trey Watkins; Donald A. Ecklund; James Cecchi; myeates@ktmc.com; Mike Roberts; Karen Halbert; Matthew Gately; Michele Burkholder |
| **Subject:** | Insulin Pricing MDL // Follow-up re Evernorth ESI submission |

Dear Counsel:

We have received and reviewed Defendants' submission regarding the feasibility of producing hyperlinked files as family documents. [ECF No. 163]. Evernorth's submission raised certain technical points that we think merit further discussion/conferral in advance of Plaintiffs' response to these submissions on Wednesday. To that end, we'd like to confer with counsel and a person familiar with the technical aspects of Evernorth's declaration on Monday or Tuesday.

Recognizing the tight timelines we're working with, and to guide our call, below is a list of questions/issues that we'd like to discuss:

1. When did Evernorth begin its rollout of Microsoft M365 and SharePoint?
2. When was the migration to MS Office 365 complete?
3. What versions of "on-premises MSExchange" has Evernorth used? What were the components of Evernorth's "on-premises MSExchange environment"? (Ritter Decl. ¶ 5)
4. Have any emails been migrated to M365 from any other email platform? If so, what emails and from what platforms?
5. Prior to the launch of Microsoft M365, could Evernorth employees insert hyperlinks in emails, or were Evernorth employees limited to attaching files to emails?
6. What "different Microsoft software" did Evernorth use "for the collection of emails" from its on-premises Microsoft Exchange system prior to eDiscovery Standard? (Ritter Decl. ¶ 5) For what periods of time?
7. What specific processes has Evernorth ever used to collect on-premises MSExchange emails, or documents hyperlinked within such emails, for civil or criminal discovery? Was any program/application/script/code ever used in any part of a process?
8. Please clarify the statement that the "different Microsoft software" used by Evernorth before eDiscovery Standard "lacked any ability to collect and link cloud-based attachments." (Ritter Decl. ¶ 5)
9. What "software other than eDiscovery Standard" does Evernorth use for "most eDiscovery email collections"? (Ritter Decl. ¶ 6)
10. Have all Evernorth employees under legal hold for the Insulin Pricing litigation been migrated to MS Office 365?
11. Has Evernorth, its eDiscovery vendors, or its outside counsel determined or estimated how many messages or chats sent or received by Evernorth employees under legal hold for the Insulin Pricing litigations contain non-public hyperlinks?

Please let us know what times work for such discussion. We appreciate your cooperation in this regard.

STEVEN J. DAROCI
Attorney at Law
**SEEGER WEISS LLP**

55 Challenger Road
Ridgefield Park, NJ 07660
P. 973.639.5393
F. 973.679.8656
sdaroci@seegerweiss.com

| | |
|---|---|
| **From:** | Steven Daroci |
| **Sent:** | Sunday, May 5, 2024 6:46 PM |
| **To:** | Barnaby, Kelley; Brown, Liz Broadway; Edwards, Jordan; Boone, Brian; Richmann, Jean; Hatchett, Andrew |
| **Cc:** | David Buchanan; Benjamin Widlanski; bbogle@levinlaw.com; mpifko; Tal J Lifshitz; joanne@cicalapllc.com; Josh Wackerly; Tanya D. Ellis; lawrence@listondeas.com; Trey Watkins; Donald A. Ecklund; James Cecchi; myeates@ktmc.com; Mike Roberts; Karen Halbert; Matthew Gately; Michele Burkholder |
| **Subject:** | Insulin Pricing MDL // Follow-up on OptumRx ESI submission |

Dear Counsel:

We have received and reviewed Defendants' submission regarding the feasibility of producing hyperlinked files as family documents. [ECF No. 163]. OptumRx's submission raised certain technical points that we think merit further discussion/conferral in advance of Plaintiffs' response to these submissions on Wednesday. To that end, we'd like to confer with counsel and a person familiar with the technical aspects of OptumRx's declaration on Monday or Tuesday.

Recognizing the tight timelines we're working with, and to guide our call, below is a list of questions/issues that we'd like to discuss:

1. Does OptumRx use a Microsoft Exchange on-premises email system?
2. Using the Office 365 Exchange email platform and Outlook, can OptumRx employees insert hyperlinks to files, or are OptumRx employees limited to attaching files to emails?
3. With respect to the statement that "[o]nce an individual is identified as a custodian in litigation, a snapshot of his or her mailbox is taken, which is saved in storage outside of Microsoft Exchange to an on-premise object store environment" (Yerich Decl. ¶ 7):
   a. What software is used to take a snapshot of a mailbox?
   b. Where are snapshots stored?
   c. What is the "on-premise object store environment"?
   d. Were/are any email attachments for this object store environment emails, i.e., emails archived or journaled in this object store environment, replaced by stubs? If so, how are the emails reconstituted?
4. What specific processes has OptumRx ever used to collect journaled emails or documents hyperlinked within such emails for civil or criminal discovery? Was any program/application/script/code ever used in any part of a process?
5. Has OptumRx, its eDiscovery vendors, or its outside counsel estimated how many hyperlinked files exist in messages or chats sent or received by OptumRx employees under legal hold for the Insulin Pricing litigation?
6. Did OptumRx preserve any other ESI for OptumRx custodians under legal hold for the Insulin Pricing litigations beyond the mailbox snapshots described in Yerich Decl. ¶ 7?

Please let us know what times work for such discussion. We appreciate your cooperation in this regard.

STEVEN J. DAROCI
Attorney at Law
**SEEGER WEISS LLP**

55 Challenger Road
Ridgefield Park, NJ 07660

1

P. 973.639.5393
F. 973.679.8656
sdaroci@seegerweiss.com

# APPENDIX 2

| From: | Harvey, Patrick A. <patrick.harvey@morganlewis.com> |
|---|---|
| Sent: | Tuesday, May 7, 2024 11:35 AM |
| To: | David Buchanan; Benjamin Widlanski; bbogle@levinlaw.com; mpifko; Tal J Lifshitz; joanne@cicalapllc.com; Josh Wackerly; Tanya D. Ellis; lawrence@listondeas.com; Trey Watkins; Donald A. Ecklund; James Cecchi; myeates@ktmc.com; Mike Roberts; Karen Halbert; Matthew Gately; Michele Burkholder |
| Cc: | Yaphe, Andrew; Horan, Theresa Cederoth; Edwards, Jordan; Ackerman, Ethan; Dockery, Daniel; Patterson, Melissa L.; Podoll, A. Joshua; Fassih, Elizabeth S.; Harvey, Patrick A.; Barnaby, Kelley; Hogg, Ian; Stewart, William; Gribakov Jaffe, Andrei; Inzunza Higuera, Gerardo; Harmanis, Ryan; Martin, Anne; Richmann, Jean; Katelyn O'Reilly; Lauren Malakoff; Lyon, Mark; Pyser, Steven; Melo, Leslie A.; ryan.moorman@kirkland.com; Brown, Liz Broadway; Scherr, Jason R.; Levy, Lindsey; Vaky, Katherine A. |
| Subject: | Insulin Pricing MDL: Plaintiffs' Requests for Follow Ups |
| Attachments: | Insulin Pricing MDL // Follow-up re Evernorth ESI submission; Insulin Pricing MDL // Follow-up re Novo Nordisk ESI submission; Insulin Pricing MDL // Follow-up on OptumRx ESI submission; Insulin Pricing MDL // Follow-up on Sanofi ESI submission; Insulin Pricing MDL // Follow-up re CVS ESI submission; Insulin Pricing MDL // Follow-up re Eli Lilly ESI submission |

**CAUTION:** [This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.]

Dear Counsel:

I write collectively on behalf of all Defendants in response to the attached requests, which each Defendant received the evening of Sunday, May 5th.

As you know, Magistrate Judge Singh asked Defendants to submit declarations confirming Defendants' prior representations about the practical inability to collect hyperlinked files without an extremely burdensome, manual process. To accomplish that, the parties negotiated a schedule and (for the most part) agreed on a process for the remaining submissions. ECF No. 147. Judge Singh then entered an order detailing the parties' respective obligations and deadlines to complete supplemental submissions. ECF. No. 152. In accordance with that order, each Defendant timely submitted a declaration on May 1. The next stage in the process established by Judge Singh's order is that Plaintiffs have the opportunity to respond to the declarations tomorrow.

Neither the process negotiated by the parties nor the order issued by Magistrate Judge Singh authorize formal or informal discovery regarding the subject matter of the declarations. Nonetheless, on Sunday evening, Plaintiffs unexpectedly demanded from counsel for each Defendant that they make themselves and "a person familiar with the technical aspects" available to answer numerous questions about our clients' information technology systems within a mere 48 hours. Sending such requests, and demanding extensive responses on such short notice, is neither reasonable nor productive.

More fundamentally, Plaintiffs' demands lack any rationale for why Plaintiffs should be entitled to substantial additional information regarding each Defendant's other software and information technology environments to respond to Defendants' brief and supporting

declarations.  Instead, it appears that Plaintiffs are (once again) unilaterally seeking impermissible and distracting "discovery on discovery"—including with respect to other platforms and other techniques used in prior collections—untethered to the narrow issue that is currently before the Court regarding hyperlinked files.

Defendants will of course comply with their obligations under the Federal Rules of Civil Procedure, the New Jersey Local Rules, and any orders of the Court.  But Plaintiffs' demands are not grounded in any such rules or orders.  Defendants thus respectfully decline to participate in the conferences Plaintiffs have demanded.

Sincerely,

Pat (on behalf of all Defendants)

**Patrick A. Harvey**
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW | Washington, DC 20004-2541
Direct: +1.202.373.6284 | Main: +1.202.739.3000 | Fax: +1.202.739.3001
patrick.harvey@morganlewis.com | www.morganlewis.com