# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE STUBHUB REFUND LITIGATION | Case No. 20-md-02951-HSG (TSH)<br><br>**ORDER RE MOTION TO MODIFY THE ESI ORDER, MOTION TO STRIKE, AND MOTION FOR SANCTIONS**<br><br>Re: Dkt. Nos. 243, 244, 250 |

We are here on StubHub's motion to modify the ESI Order, Plaintiffs' motion for sanctions, and StubHub's related motion to strike portions of Paul McVoy's declaration. The Court held a hearing on May 16, 2024, and now issues the following order.

**A.  Motion to Modify the ESI Order (ECF No. 243)**

The ESI Order states that it "may be modified . . . by the Court for good cause shown." ECF No. 96 ¶ 9. The ESI Order states in Appendix 1 that when emails are produced, they should include parent and child files, with the parent-child relationship preserved, and child files are defined to include "hyperlinks to internal or nonpublic documents." Similarly, "family groups" are defined to include "documents referenced by document stubs or via links to internal document sources." *Id*. at 11. StubHub has demonstrated good cause to remove the requirement that hyperlinked documents should be produced as if they were attachments to emails. StubHub has made a persuasive evidentiary showing that despite having spent hundreds of hours trying to find linked documents and despite having retained an outside e-discovery vendor to assist with this effort, the hyperlink requirement is technologically impossible to fulfill most of the time. ECF Nos. 243-6 (O'Toole Declaration) ¶¶ 13, 14, 15, 17, 18, 31, 33; 243-4 (Wright Depo.) at 210:4-211:23, 235:8-236:16, 278:15-280:14, 283:12-21; 243-10 (Brown Decl.) ¶¶ 9, 10, 11, 12, 13; 248-

9 (Supp. Brown Decl.) ¶¶ 3, 4, 5, 6, 7.[1]

Plaintiffs' arguments that compliance with the hyperlink requirement is broadly possible consist of unpersuasive criticisms of StubHub's evidence and two underwhelming expert declarations. The Court **DENIES** StubHub's motion (ECF No. 250) to strike portions of Plaintiffs' expert Paul McVoy's declaration, but having considered that declaration (ECF No. 244-2), the Court finds the key paragraphs (8-11) speculative and unpersuasive.[2] The Court is also concerned that McVoy's declaration implies more than it says. He asserts that if Epiq (StubHub's e-discovery vendor) searched for hyperlinked documents in native email files, it would likely have located "more" (not most or all) of the linked documents. ECF No. 244-2 ¶ 11. Epiq disagrees, saying it had full hyperlinks and McVoy's focus on native files is irrelevant. ECF No. 248-9 (Brown) ¶ 7. But one of StubHub's major arguments for why the hyperlink requirement is broadly impossible to comply with is that many of the hyperlinks do not work anymore. McVoy does not disagree or claim that problem can be solved. Read closely, all McVoy's declaration actually says is that it might have been possible for Epiq to find a hyperlinked document more than 17% of the time. Suppose McVoy is right. Suppose that if Epiq had run searches against StubHub's native emails, it would have found the hyperlinked documents twice as often, or 34% of the time. The Court is not going to keep a production requirement in the ESI Order if two-thirds of the time it is impossible to comply with. The Court is not saying that the ESI Order should only contain requirements that can be complied with 100% of the time, of course. But a showing that a production requirement is impossible to comply with most of the time – and that is StubHub's argument – is a good reason to get rid of it. McVoy's declaration therefore does not meaningfully undermine StubHub's motion.

---

[1] Plaintiffs urge the Court to apply a four-factor test, of which good cause is just one of the factors. ECF No. 251 at 11. The Court declines to do so. The ESI Order says on its face that it can be modified for good cause, ECF No. 96 ¶ 9, and the Court thinks the order means what it says. Regardless, the additional factors Plaintiffs ask the Court to consider would not change the outcome given StubHub's showing of technological impossibility.

[2] McVoy's second declaration at ECF No. 251-4 explains that hyperlinks continue to exist in native files, which is different from the question addressed in his first declaration (and the one relevant to the motion to modify the ESI Order), which is whether the hyperlinks can be used to obtain the linked documents.

2

  The Court also finds Douglas Forrest's Declaration (ECF No. 208-12) unpersuasive.  After reciting his qualifications (¶¶ 1-10), it discusses that hyperlinks are widely used and should be thought about as part of discovery (¶¶ 11-27, 29-35), which is not really in dispute.  Paragraph 28 asserts the following:

> A proper, technically sound approach to collecting and processing of documents with linked attachments is possible and will enable the review and production of emails and documents with linked attachments as family groups so that their relevance may be identified regardless of whether relevant words, phrases or concepts appear in the parent document or in a linked attachment or both.

The three references to "linked attachments," when the whole issue is that the linked-to documents are *not* attachments, leaves the Court wondering what this paragraph is talking about.  If this paragraph is about hyperlinks, it's conclusory and does not actually identify technology that would do this.  Paragraphs 36-39 of the declaration talk about the importance of collecting hyperlinked documents, paragraph 40 says there are some commercial tools that can do this, but "sometimes there are no suitable commercial programs available, and a custom program must be written to the job."  Paragraphs 41-47 talk about writing custom programs for e-discovery and describe some principles a computer programmer could consider if he or she wanted to write a program that captured hyperlinked documents.  Paragraphs 48 and 49 say it's hard to know why a given program failed, and Forrest doesn't know why that happened here.  The Court thinks this is a reference to Epiq's attempt to use its tool to collect the hyperlinked documents.  Paragraphs 50-52 then criticize StubHub's efforts.

  In sum, Forrest's declaration falls short of establishing that the hyperlink requirement in the ESI Order is broadly possible to comply with.  Even if paragraph 28 in the declaration is meant to refer to the collection of hyperlinked documents, paragraphs 40 and 41 make clear that Forrest regards something as being technologically possible even if no commercially available software can perform the function, and the litigant would need to develop or commission new software.  Interestingly, this fails to contradict StubHub's expert's opinion that, indeed, there is no commercially available or custom program in existence that could collect all of StubHub's hyperlinked documents.  ECF No. 248-9 ¶ 5 (Brown).  In fact, the non-existence of any

3

commercially available software that can implement the hyperlink requirement in the ESI Order represents a rare point of agreement between the parties. *See* ECF No. 251 (Plaintiffs' opposition to StubHub's motion to modify the ESI Order, explaining on page 18 that "as Plaintiffs have repeatedly noted, there are numerous additional steps StubHub and Epiq could have taken (and could still take) to effectuate the Protocol, such as writing a program customized to identify links and collect linked documents from relevant sources . . ."); ECF No. 255 (StubHub's reply, explaining on page 7: "There is no out-of-the-box program that StubHub could have purchased and run, but did not."). The Court thinks that the non-existence of commercially available software that can implement the hyperlink requirement tips strongly in StubHub's favor.

Accordingly, the Court **GRANTS** StubHub's motion[3] to modify the ESI Order and modifies page 11 of the order as follows:

> 1. Email, Attachments, and Other Electronic Messages
>
> . . .
>
> Email repositories, also known as email databases (e.g., Outlook .PST, Lotus .NSF), can contain a variety of items, including messages, calendars, contacts, tasks, etc. For purposes of production, responsive items should include the "Email" metadata/database fields outlined in the Metadata Table, including but not limited to all parent items (mail, calendar, contacts, tasks, notes, etc.) and child files (attachments of files to email, ~~hyperlinks to internal or nonpublic documents,~~ or other items), with the parent/child relationship preserved. Similar items found and collected outside an email repository (e.g., .MSG, .EML, .HTM, .MHT) should be produced in the same manner.
>
> . . .
>
> 2. Family Groups:
> A document and all other documents in its attachment range, emails with attachments, ~~and email or other documents together with any documents referenced by document stubs or via links to internal document sources within those emails~~ or other documents all constitute family groups. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged, and no such member shall be withheld from

---

[3] As a compromise, StubHub offers in its motion that Plaintiffs may provide a list of up to 400 additional hyperlinked documents that StubHub will devote all reasonable resources to manually retrieve and produce as a child to a parent email. ECF No. 243 at 22. The Court holds StubHub to this offer.

1     production as a duplicate.

**B.    Motion for Sanctions (ECF No. 244)**

Plaintiffs move for sanctions against StubHub and its counsel as follows: (1) sanctions pursuant to Federal Rule of Civil Procedure 37(b)(2)(A) for violating three court orders; (2) sanctions under the Court's inherent authority for acting in bad faith and vexatiously in discovery; and (3) sanctions for violating Federal Rule of Civil Procedure 26(g) by signing two discovery responses that were unreasonable and contrary to the federal rules.

    **1.    Rule 37(b)(2)(A) Sanctions**

Rule 37(b)(2)(A) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." In addition, Rule 37(b)(2)(C) states that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." "Willfulness, fault, or bad faith is not required for the imposition of monetary sanctions under Rule 37(b)(2)." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2012 WL 5372477, *6 (N.D. Cal. Oct. 30, 2012). However, sanctions under Rule 37(b)(2)(A) still have to be "just" under the facts of the case. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).

        **a.    ESI Order (ECF No. 96)**

Without doing adequate investigation, StubHub carelessly stipulated to an ESI Order that StubHub later realized required it to do something that is usually impossible: produce the hyperlinked documents with the parent-child relationship with the original emails intact. From its first custodial document production in June 2022, StubHub was in instant violation of the ESI Order, a problem it was never able to fix.

Plaintiffs want to characterize the wrongdoing as the violation of the ESI Order's hyperlink requirement. However, because StubHub has persuaded the Court that compliance with that requirement was actually impossible for most documents, the Court thinks the wrongdoing was stipulating to do something without conducting an adequate investigation into whether it was

5

possible.

In thinking about whether a sanction would be "just" (Rule 37(b)(2)(A)), or whether the award of attorneys' fees would be "unjust" (Rule 37(b)(2)(C)), it does matter what you think the wrongdoing was. Plaintiffs compare the state of document production as it exists now – where they have a bunch of emails and a bunch of documents, but they don't know which documents were linked to which emails – and they compare it to a hypothetical alternative in which they do know which documents go with which emails. From this point of view, Plaintiffs would seem to be significantly prejudiced because the quality of the evidence available to them has been degraded.

But the Court doesn't see it that way because StubHub has persuaded the Court that this hypothetical alternative was never going to happen, at least not for most documents. In the Court's view, the proper comparison is to a hypothetical alternative in which StubHub conducted an adequate investigation to determine whether the hyperlink requirement was feasible, figured out it was not, declined to stipulate to the hyperlink requirement, and right out of the gate argued that this was impossible. The Court thinks this hypothetical alternative would also likely have involved better legal research by defense counsel, earlier coming across the decision in *Nichols v. Noom Inc.*, 2021 WL 948646 (S.D.N.Y. Mar. 11, 2021), which declined to impose a similar hyperlink requirement. In this view, the harm that StubHub's wrongful conduct caused was a big, expensive fight that lasted more than a year concerning the hyperlink issue. But this harm wasn't caused by the violation of the ESI Order; it was caused by StubHub's foolish decision to stipulate to the hyperlink requirement in the first place.

A sanction under Rule 37(b)(2)(A) for violating an order has to be "just." Here, no sanction would be "just" for violating the hyperlink requirement in the ESI Order because that requirement was in most cases impossible to comply with. For the same reason, StubHub's failure to comply with the hyperlink requirement was "substantially justified," Rule 37(b)(2)(C). StubHub's very unfortunate decision to stipulate to the hyperlink requirement has caused the parties a lot of grief and put them to a lot of expense, but Rule 37(b)(2) does not authorize sanctions for improvidently stipulating to a Court order. Accordingly, Plaintiffs' request for

6

1    sanctions under Rule 37(b)(2) based on StubHub's violation of the ESI Order is **DENIED**.

2                    **b.**      **Amended Scheduling Order (ECF No. 188)**

3          The Amended Scheduling Order set a May 12, 2023 deadline for completion of document

4    production. ECF No. 188. It added that "the May 12 deadline is not for 'substantial completion of

5    document production,' but rather the deadline to complete all document production." *Id*. at 2. The

6    order also set a July 7, 2023 deadline for Plaintiffs to file their class certification motion, a

7    September 5, 2023 deadline for StubHub to oppose class certification, and an October 17, 2023

8    deadline for Plaintiffs to file their reply brief in support of class certification, and it scheduled a

9    November 9, 2023 hearing on the class certification motion. The class certification-related

10   deadlines were subsequently vacated. ECF No. 220. Plaintiffs argue that StubHub violated the

11   Amended Scheduling Order when it produced 228 documents on February 16, 2024 (ECF No. 244

12   at 13; ECF No. 244-1 (Kelston Decl.) ¶ 16) because that was after the May 12, 2023 deadline to

13   complete document production.[4]

14         Assuming for the sake of argument that StubHub's February 16 document production

15   violated the Amended Scheduling Order, no sanction would be "just" (Rule 37(b)(2)(A)), and the

16   award of expenses would be "unjust" (Rule 37(b)(2(C)), because Plaintiffs have not been

17   prejudiced. Plaintiffs do not articulate any sort of prejudice they suffered from this late document

18   production. It did not impede their ability to take effective depositions. Other than the Court-

19   ordered Rule 30(b)(6) deposition on the hyperlink issue, Plaintiffs have not taken any depositions.

20   Further, the Amended Scheduling Order contemplated that document production would be

21   completed about two months before Plaintiffs' deadline to move for class certification. It has now

---

[4] StubHub argues that Plaintiffs' request for sanctions is untimely under Civil Local Rule 7-8(c), which requires a litigant to make a sanctions motion "as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate . . ." StubHub asserts Plaintiffs knew they had a basis to seek sanctions shortly after the May 12, 2023 document production deadline had passed, but StubHub does not present any argument or cite any evidence to show that Plaintiffs had reason to know at that time that StubHub would later produce additional documents. To the contrary, the O'Toole Declaration states that StubHub made its final document production on May 3, 2023. ECF No. 248-1 ¶ 11. The declaration characterizes the February 2024 document production as stemming from StubHub's duty to supplement. *Id*. ¶ 13. StubHub cites nothing to show that Plaintiffs knew this supplemental production was coming before the day they received it. They filed the present sanctions motion 18 days later, which is timely.

1 been *three* months since the February 16 document production, and there is no current deadline for
2 Plaintiffs' class certification motion. Thus, the February 16 document production did not upset
3 the Amended Scheduling Order's proscription that Plaintiffs should have StubHub's completed
4 document production by two months before they had to move for class certification. Accordingly,
5 the Court **DENIES** Plaintiffs' request for sanctions under Rule 37(b)(2) based on the claimed
6 violation of the Amended Scheduling Order.

### c. Discovery Order (ECF No. 194)

The Court's Discovery Order stated: "If StubHub is unable to live up to its agreement" to produce the hyperlinked documents with the parent-child relationship intact, "then within 14 days after the deadline to complete document production, StubHub must provide a Rule 30(b)(6) witness with full knowledge of everything StubHub and its vendors did in an attempt to produce linked documents as attachments." ECF No. 194 at 3. Plaintiffs claim that StubHub's Rule 30(b)(6) witness on this subject, James Wright, was not adequately prepared, in violation of the Court's order.[5] Plaintiffs provide the full 287 page transcript of the deposition as Exhibit C to the Kelston Declaration, ECF No. 244-1. The Court has reviewed the entirety of the transcript. While Wright's testimony is not perfect, neither can the Court say that StubHub violated the Discovery Order. Plaintiffs' criticisms of Wright's testimony are mostly erroneous or concern a lack of knowledge about things outside of the scope of the ordered deposition. Accordingly, the Court **DENIES** Plaintiffs' request for sanctions under Rule 37(b)(2) based on an alleged violation of the Discovery Order.

### 2. Inherent Authority Sanctions

"A court may impose sanctions under its inherent powers when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *In re Facebook, Inc. Consumer User Profile Litig.*, 655 F. Supp. 3d 899, 924 (N.D. Cal. 2023) (cleaned up). "Before imposing

---

[5] StubHub argues that this request for sanctions is premature because Plaintiffs should first move to compel. *See Stemmelin v. Matterport, Inc.*, 2022 WL 818654, *1 (N.D. Cal. Mar. 17, 2022) ("When a deposing party thinks that a Rule 30(b)(6) witness has not been adequately prepared, the normal remedy is a motion to compel . . . [G]oing from a handful of 'I don't know' answers straight to a request for sanctions skips an important step."). However, StubHub's argument is off base because the Court already compelled this deposition in the Discovery Order.

1  sanctions, the court must find that the conduct constitutes or was tantamount to bad faith." *Id*. at
2  924-25 (cleaned up).  Plaintiffs argue that StubHub made false or misleading statements to the
3  Court and to Plaintiffs in the course of litigating the hyperlink issue, StubHub failed to produce
4  hyperlinked documents by the Court-ordered deadline, and StubHub failed to conduct a reasonable
5  investigation of its ability to comply with the ESI Order.  However, Plaintiffs have failed to show
6  that StubHub's conduct was anything worse than negligent.  Their request for inherent authority
7  sanctions is therefore **DENIED**.

### 3. Rule 26(g) Sanctions

Finally, Plaintiffs move for sanctions under Rule 26(g).  Plaintiffs served their first set of requests for production ("RFPs") on January 19, 2022.  The RFPs attached and incorporated by reference technical specifications that included the instruction that "[h]yperlinked files must be produced as separate, attached documents."  ECF No. 244-1, Ex. G (fourth page of technical specifications, item 2(d) entitled "Embedded Files").  Plaintiffs cite StubHub's second amended responses to the RFPs dated June 7, 2022.  ECF No. 244-1, Ex. H.  Plaintiffs argue that when StubHub's counsel signed each version of the RFP responses, they knew or should have known that StubHub's productions would not comply with the hyperlink requirement in Plaintiffs' RFPs, later incorporated into the ESI Order.  Plaintiffs also argue that counsel knew or should have known that StubHub's document productions would violate Rule 34's prohibition against degrading the usability of documents from the form in which they are ordinarily maintained, which the Court assumes is a reference to the failure to produce the hyperlinked documents (which the Court has determined was largely impossible).

Rule 26(g)(1) says:

> (1) *Signature Required; Effect of Signature.* Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name--or by the party personally, if unrepresented-- and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
>
> (A) with respect to a disclosure, it is complete and correct as of the

9

        time it is made; and

     (B) with respect to a discovery request, response, or objection, it is:

        (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

        (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

        (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Since we're talking about RFP responses, it looks like subpart B is the one that's applicable. Thus, by signing the responses, StubHub and its counsel were certifying to the best of their belief formed after a reasonable inquiry that the RFP responses were "consistent with these rules and warranted by existing law," "not interposed for any improper purpose," and "neither unreasonable nor unduly burdensome or expensive." The Court does not see that any of those things were untrue. If the theory is that signing an RFP response constituted an implied representation that the documents would be produced in the manner requested or as provided for in the ESI Order, that theory does not hang together very well. The ESI Order was entered on April 21, 2022, and it replaced the technical specifications set forth in Plaintiffs' RFPs. StubHub's June 7, 2022 second amended responses replaced its original and first amended responses, so presumably neither side thought StubHub was impliedly representing that it would comply with the technical specifications in the RFPs, since those had been displaced. Did the June 7 second amended responses impliedly represent that StubHub's document productions would comply with the ESI Order? Well, the ESI Order stated in paragraph 9 that "[t]his Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown." The stipulated ESI Order was the place where the parties stated how documents would be produced, and in it they explicitly reserved the right to modify the ESI Order. The manner of document production was not set forth in StubHub's RFP responses, and the Court does not believe that either side ever thought the RFPs responses themselves were the source of any representations about how documents would be produced. Again, that subject was addressed in

the ESI Order. Accordingly, the Court does not think StubHub's RFP responses violated Rule 26(g).

Separately, Plaintiffs contend that StubHub's counsel violated Rule 26(g) when they objected to topic 1 in Plaintiffs' Notice for the Rule 30(b)(6) deposition that was ordered in the Discovery Order. Topic 1 was: "StubHub and its vendors or other agents' attempts to preserve, collect, search, review, and produce hyperlinked documents in a manner consistent with the ESI Protocol (Dkt. 96) (i.e., here the family relationship between documents containing hyperlinks to internal or nonpublic documents and those so-linked internal or nonpublic documents is preserved)" ECF No. 244-1, Ex. A. StubHub's objections to topic 1 included the following:

> StubHub objects to this Topic as overbroad and unduly burdensome because it seeks testimony beyond the company's knowledge. While StubHub, through its corporate representative, may testify to its knowledge of the vendors' "attempts to preserve, collect, search, review, and produce hyperlinked documents," that work was external to the company and facilitated through counsel. Under FRCP 30(b)(6), StubHub is not obliged to seek out at third-party vendor, learn all that the vendor did, and then educate a corporate witness on that work. The technical specifics of what the discovery vendors did is neither "known [n]or reasonably available" to StubHub, but the witness can testify as to any interactions with the vendor, any known limitations on the vendor's work, or any other work the company did with the vendor…. Subject to and in accordance with these objections, StubHub will, with respect to vendors, present a corporate witness to testify to StubHub's knowledge of the vendors' "attempts to preserve, collect, search, review, and produce hyperlinked documents." (ECF No. 244-1, Ex. B)

These objections are inconsistent with the Discovery Order, but they do not fall beneath "a nonfrivolous argument for . . . modifying" it (Rule 26(g)(1)(B)(i)). Given the Court's conclusion that the Wright deposition complied with the Discovery Order, the Court is also unable to conclude that StubHub made these objections "for any improper purpose" (Rule 26(g)(1)(B)(ii)) or that they were "unreasonable," "unduly burdensome" or "expensive" (Rule 26(g)(1)(B)(iii)). Accordingly, the Court rejects this basis for sanctions under Rule 26(g) as well.

### 4. Conclusion Regarding Plaintiffs' Sanctions Motion

Plaintiffs' motion for sanctions is **DENIED**.

\* \* \*

11

StubHub's decision to stipulate to the hyperlink requirement in the ESI Order was an unfortunate mistake. But mistakes happen, and life – and litigation – must go on. The parties should put this discovery issue behind them and turn their efforts to class certification and the merits.

**IT IS SO ORDERED.**

Dated: May 20, 2024

THOMAS S. HIXSON
United States Magistrate Judge