## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

IN RE: INSULIN PRICING LITIGATION

No. 23-md-3080 (BRM) (RLS)
MDL No. 3080

THIS DOCUMENT RELATES TO: ALL CASES

### ORDER REGARDING DISPUTES OVER ESI PROTOCOL

**PRESENTLY** before the Court are the parties' disputes regarding a proposed Stipulation and Order Governing the Production of Electronically Stored Information and Hard Copy Documents (the "ESI Protocol"). (*See* Doc. Nos. 120, 123, 163, 170). The Court has carefully considered the parties' submissions and arguments raised during the April 8, 2024 Case Management Conference and resolves the disputes concerning the ESI Protocol in this Order.

## I.    BACKGROUND

Following meet and confers, the parties submitted to the undersigned their respective competing ESI Protocols for the Court's consideration, with briefing as to their positions. (*See* Doc. Nos. 120, 123). Plaintiffs also offered the Declarations of David R. Buchanan and Douglas Forrest in support of their positions. (Doc. Nos. 123-1 and 123-2). The Court heard oral argument on the issues during an April 8, 2024 Case Management Conference. (Doc. No. 135). Following that Conference, the Court granted Defendants leave to supplement with declarations their position on the dispute over hyperlinks, to which Plaintiffs could reply. (*See* Doc. No. 150). On May 1, 2024, Defendants submitted eight declarations to support the proposition that "[n]o Defendant has tools to automatically or comprehensively *collect* hyperlinked documents like traditional

attachments, nor is there a way to automatically or accurately *create* family connections during the collection or review process." (Doc. No. 163 at p. 1 (emphasis in original)). On May 8, 2024, Plaintiffs replied to Defendants' declarations, seeking to further meet and confer on the issue. (Doc. No. 170). On May 24, 2024, Defendants filed supplemental authority regarding the hyperlink issue. (Doc. No. 185).

## II.    LEGAL STANDARD

Rule 26(f) of the Federal Rules of Civil Procedure require parties to meet and confer as to ESI at the beginning of discovery. Fed. R. Civ. P. 26(f)(3)(C). Indeed, "the best solution in the entire area of electronic discovery is cooperation among counsel." *Lawson v. Love's Travel Stops & Country Stores, Inc.*, No. 17-1266, 2019 WL 7102450, at *5 (M.D. Pa. Dec. 23, 2019) (endorsing *The Sedona Conference Cooperation Proclamation*). However, absent agreement on specific terms of a proposed ESI Protocol, the Court exercises discretion to resolve disputes regarding ESI. *See, e.g.*, *in re Social Media Adolescent Addiction/Personal Injury Prod. Liab. Litig.*, No. 22-md-3047, 2024 WL 1786293, at *2 (N.D. Cal. Feb. 20, 2024) (citing cases); *see also in re Actavis Holdco U.S., Inc.*, No. 19-3549, 2019 WL 8437021, at *1 (3d Cir. Dec. 6, 2019) (denying petition for writ of mandamus in MDL 2724 where, among other considerations, "the District Court has wide latitude in controlling discovery"); *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999); *Forrest v. Corzine*, 757 F. Supp. 2d 473, 477 (D.N.J. 2010) ("Magistrate Judges are given wide discretion to manage cases and to limit discovery in appropriate circumstances.").

Following a review of the parties' respective positions, and applying relevant case law governing ESI standards, the Court addresses each of the ESI disputes below.

## III. DISCUSSION

The parties have presented a number of contested ESI issues in connection with their respective proposed ESI Protocols, including: (1) the scope of the ESI Protocol; (2) prior productions; (3) pre-production information exchanges; (4) search methodologies; (5) email threading; (6) hyperlinks; (7) redactions; and (8) production format.[1]

### A. SCOPE OF THE ESI PROTOCOL

In the competing protocols, the parties raise three issues relating to the scope of the ESI Protocol: to which parties will the ESI Protocol apply; whether the four actions pending in this District before the creation of the MDL (the "New Jersey Actions")[2] are to be bound by this ESI Protocol; and whether the Protocol would extend to "relevant or responsive" ESI or "responsive" ESI.

#### *Parties Subject to the ESI Protocol*

As to the first sub-issue, Defendants propose that the ESI Protocol apply to all parties to the MDL, except where a party seeks an exception based on impracticability or impossibility. Defendants argue that applicability to all parties to the MDL promotes a fair and mutual discovery process. In contrast, Plaintiffs propose that the ESI Protocol apply to all Defendants and an individually named Plaintiff when either of the following occurs: (1) the named Plaintiff's case is selected as a bellwether; (2) the plaintiff is a proposed class representative or otherwise asserting claims on behalf of a class; (3) the named Plaintiff or class Plaintiff enters into an agreement with

---

[1] In their respective submissions, the parties organized and characterized the disputes slightly differently. The Court outlines them here in general terms and discusses them, and the multiple sub-issues, more specifically below.

[2] These New Jersey Actions are: *In re Direct Purchaser Insulin Pricing Litigation*, No. 20-cv-3426 (D.N.J.); *MSP Recovery Claims Series, LLC v. Aventis U.S. LLC*, No. 18-cv-2211 (D.N.J.); *In re Insulin Pricing Litigation*, No. 17-cv-699 (D.N.J.) (the "Consumer Action"); and *Minnesota v. Sanofi-Aventis U.S. LLC*, No. 18-cv-14999 (D.N.J.).

Defendants; or (4) the Court orders otherwise. Plaintiffs contend their proposal efficiently manages electronic discovery obligations in a way that accounts for the variously differently situated plaintiff groups.

Plaintiffs' proposal, while appearing to account for the sub-groups of Plaintiffs, runs the risk of delay and confusion in the progress of discovery. The number of plaintiffs thus far in this MDL is not so unwieldy that an ESI Protocol should apply piecemeal to the parties. Notably, Defendants' proposal includes a carve-out for impracticability or impossibility, which alleviates a concern that the Protocol could be unduly burdensome on any given party. Accordingly, considering the need for efficient and effective discovery, within the Court's discretion, the Court adopts Defendants' proposal on this point.

### Definition of "Litigation"

The second sub-issue relates to the parties' competing definition of "Litigation" for purposes of applicability of the ESI Protocol. Generally, Defendants' proposal would define "Litigation" to include those actions pending in, added to, transferred to, or coordinated with the MDL. Plaintiffs' proposal would expressly include within the definition of the four New Jersey Actions. Plaintiffs' proposal appears straight-forward on its face, attempting to include all coordinated actions within the scope of the ESI Protocol. However, as Defendants point out, the Court previously entered ESI Protocols to apply to those New Jersey Actions. Including the New Jersey Actions to this ESI Protocol has the potential of confounding the obligations imposed on parties to those Actions who are subject to different provisions under their respective, negotiated ESI Protocols. The Court has no interest in creating such confusion. As such, considering the need for efficient and effective discovery, within the Court's discretion, the Court adopts Defendants' proposal on this point.

4

### *"Relevant or Responsive" versus "Responsive" Language*

In the third sub-issue, Plaintiffs propose throughout the ESI Protocol to include the language "relevant or responsive" when referring to documents and ESI, whereas Defendants propose to include the language "responsive" for such references. Defendants raise that Plaintiffs' proposal imposes broader obligations on the producing party than required by the Federal Rules of Civil Procedure. In turn, Plaintiffs argue that their proposal is consistent with the Federal Rules of Civil Procedure.

No doubt, the Federal Rules of Civil Procedure provide that a party's obligation to produce discoverable material—which must be relevant, non-privileged, and proportional to the needs of the case—arises, with some exception, upon a request pursuant to Rule 34 of the Federal Rules. *See* Fed. R. Civ. P. 26(b); Fed. R. Civ. P. 34(a). The same applies for ESI: a party produces discoverable ESI responsive to a request. *See United States for Use and Benefit of M. Frank Higgins & Co. v. Dobco Inc.*, No. 22-9599, 2023 WL 5302371, at *4 (S.D.N.Y. Aug. 17, 2023); *Raine Grp. LLC v. Reign Capital, LLC*, No. 21-1898, 2022 WL 538336, at *1 (S.D.N.Y. Feb. 22, 2022) ("[A]n ESI protocol and search terms work in tandem with the parties' obligations under the Federal Rules and do not replace a party's independent obligation to produce electronic (or paper) documents that are reasonably accessible, relevant, and responsive within the meaning of Rule 34."); *see also The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 35 (2018) (recognizing "relevant" refers to the scope of discovery and "responsive" refers to information sought in discovery); *id.* at 119 ("Those discovery obligations also include the duty to use reasonable efforts to locate and produce ESI responsive to the opposing party's requests and within the scope of discovery.").

Considering the specific instances in the ESI Protocol where Plaintiffs and Defendants propose their respective language on this issue, the Court finds Defendants' proposal to be more appropriate here. Notwithstanding the entry of an ESI Protocol, the parties remain bound by the Federal Rules of Civil Procedure and relevant case law on preservation of relevant, discoverable material. Including language in the ESI Protocol that could be read to impose added obligations as to all potentially "relevant" material runs the risk of injecting confusion and potentially more disputes over what is "relevant" for purposes of searching, culling, and producing ESI. Accordingly, considering the need for efficient and effective discovery, within the Court's discretion, the Court adopts Defendants' proposal on this point.

### B.    PRIOR PRODUCTIONS

The parties have agreed generally as to the format of the re-production of documents or ESI previously produced by a responding party. However, Defendants seek to maintain the format for documents previously produced "or prepared for production." During the April 8, 2024 Case Management Conference, Defendants clarified that the "prepared for production" primarily concerns documents prepared in response to negotiated discovery requests in the State Attorney General Track cases. Plaintiffs oppose the addition of the language "prepared for production." The Court, here, agrees with Plaintiffs. There must be a clear and defining point of application of this ESI Protocol from prior productions and future productions; Defendants' proposal does not facilitate such a goal as "prepared for production" is too vague. Accordingly, considering the need for efficient and effective discovery, within the Court's discretion, the Court adopts Plaintiffs' proposal on this point.

C.     PRE-PRODUCTION INFORMATION EXCHANGES

The parties also disagree as to the propriety and scope of certain information exchanges in the process of identifying custodians, data sources, and inaccessible sources.

### Disclosures as to Custodians, Databases, and Data Sources

Through their proposal, Plaintiffs seek to impose an "iterative and cooperative" approach that would require a producing party to make certain disclosures regarding custodians, databases, and data sources in sections V and VIII of the ESI Protocol.  Plaintiffs contend that this approach avoids one-sided determinations as to sources of discoverable material and point out that the ESI Protocol entered into the New Jersey Consumer Case required a producing party to provide similar information.   Defendants argue, however, that Plaintiffs' proposal here goes beyond the information exchanges agreed to in prior ESI Protocols.  Defendants suggest Plaintiffs' proposal as to databases and data sources in section VIII of the ESI Protocol would require them to provide Plaintiffs with information as to all of their databases, while precluding Defendants an opportunity to comply with any third-party confidentiality obligations.

As to section V, the Court agrees with Plaintiffs that "an iterative and cooperative approach" as to identification of relevant custodians and information sources will help avoid after-the-fact challenges to the collection and search processes.  As to section VIII, Plaintiffs' proposed language of the ESI Protocol seeks an earlier exchange of information, which may prevent after-the-fact disputes over database or data sources that should have been searched but were not.  *See The Sedona Principles*, 19 Sedona Conf. J. at 78 (commenting that cooperation in discovery leads to trust between the parties, which may promote economies and efficiencies and avoid "discovery on discovery" and "motion practice, which may lead to undesirable court orders" (footnote omitted)); *see also The Sedona Conference Database Principles Addressing the Preservation and*

*Production of Databases and Database Information in Civil Litigation*, 15 Sedona Conf. J. 171,
186 (2014) ("By addressing issues related to the preservation and production of information stored
in databases as early as possible, parties can resolve easier questions and make progress on
resolving more difficult ones. Sharing technical information also may benefit a responding party
by educating the requesting party as to what information exists.").

Nevertheless, the Court appreciates Defendants' concern raised regarding obligations they
may owe to non-parties which they seek to address in their proposed second paragraph of section
VIII. As such, considering the need for efficient and effective discovery, within the Court's
discretion, the Court believes a compromised approach is appropriate. The Court adopts Plaintiffs'
proposed language in section V and in the first paragraph in section VIII, as well as Defendants'
proposed second paragraph in section VIII.

### Disclosures as to Inaccessible Sources

Another sub-issue arises in the context of inaccessible sources in section III.C. of the ESI
Protocol. Plaintiffs propose a producing party provide "sufficient information" and meet and
confer when it determines a source is not reasonably accessible. Plaintiffs contend that this
requirement will prevent disputes, while Defendants argue that Plaintiffs are seeking discovery on
discovery. In addition, Plaintiffs oppose Defendants' addition of a provision in section III.C. that
states that "there is no need to modify or suspend the procedures used by [a party] in the ordinary
course of business to backup data and systems for disaster recovery and similar purposes related
to continuity of operations." Plaintiffs contend they do not know what specific procedures this
provision addresses and why Defendants think it is necessary.

Rule 26(b)(2)(B) of the Federal Rules of Civil Procedure provides that "[a] party need not
provide discovery of [ESI] from sources that the party identifies as not reasonably accessible

because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). Here, no party has identified any sources that are not reasonably accessible and Plaintiffs' proposal to require a vague, open ended "sufficient information" exchange for each and every such source is premature and may create more disputes that only delay the production of discovery. Moreover, Defendants' proposal includes a right to request for such ESI to be searched. Also, while Plaintiffs are concerned they do not know what procedures for disaster recovery are the subject of Defendants' proposed language, that alone is insufficient to reject the language. The parties should discuss what procedures for disaster recovery may be subject to the language. Accordingly, considering the need for efficient and effective discovery, within the Court's discretion, the Court adopts Defendants' proposal on this point.

**D.    SEARCH METHODOLOGIES**

The parties primarily raise two issues as to search methodology in the ESI Protocol.

*Search Terms*

First, the parties dispute the language of section V.A., which applies to the exchange of information if a producing party uses search terms. Defendants propose general language that the parties meet and confer as to the search terms. Plaintiffs, on the other hand, propose a meet and confer with the exchange of information "to improve the effectiveness of the search terms." Plaintiffs further would require a process where the parties would exchange information "to increase the precision or proportion" of ESI within search results, which would include the production of "hit count" reports. Plaintiffs point out that the ESI Protocol entered in the New Jersey Consumer Action included an exchange of proposed keyword search terms and strings that included related code words and the like. Defendants counter that their proposal includes a meet

and confer obligation and Plaintiffs' proposal would "micromanage" a producing party's review processes.

While the Defendants' concern that a producing party's review process would result in micromanagement, "the failure to engage in a collaborative search and sampling strategy can often yield discovery dysfunction." *Lawson*, 2019 WL 7102450, at *5. There is no doubt that hit count reports can "tell[] the tale" as to appropriate search terms if the parties were to dispute the terms. *In re Diisocyanates Antitrust Litig.*, MDL No. 2862, 2022 WL 17668470, at *10-11 (W.D. Pa. Oct. 19, 2022) (Special Master Report and Recommendation), *adopted by* Memorandum and Order of Court, MDL No. 2862, Doc. No. 968 (W.D. Pa. Nov. 7, 2023); *see also in re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.*, 337 F.R.D. 610, 619 (D.N.J. 2020) (resolving dispute where "the parties agreed to search terms without the benefit of hit counts, sampling, and false positives"). Here, the parties agree that there must be a meet and confer process as to search terms but disagree as to how much level of specificity to put in the ESI Protocol. There is an appropriate balance between the two sides' proposals that meets the overall concerns. Accordingly, considering the need for efficient and effective discovery, within the Court's discretion, the Court holds that the language for section V.A. shall be as follows:

> If a Producing Party elects to use search terms to identify potentially responsive documents and ESI, it shall identify and propose to the Requesting Party an initial list of search terms, custodians, custodial data sources, and non-custodial data sources that are likely to contain responsive documents and ESI, and the Parties will meet and confer regarding those terms and any additional terms, or other requested changes, proposed by the Requesting Party. That meet and confer shall include, when requested, the exchange of information that includes, where relevant, semantic synonyms, code words, acronyms, abbreviations, nonlanguage alphanumeric associational references to relevant ESI, any hit count reports, and any other information agreed to by the Parties. To the extent the Parties cannot reach agreement on the application of, or procedures for, any search or filtering processes, the Parties may raise such issues for resolution by the Court or its designee.

### *Stacking of TAR and Search Terms*

Second, the parties dispute when and how the parties may use TAR in conjunction with search terms. Plaintiffs argue that "stacking" TAR with search terms is inappropriate, while Defendants counter that the parties should be permitted to elect to use search terms and/or TAR. During the April 8, 2024 Case Management Conference, Defendants acknowledged that they each have not made final determinations as to whether they will in fact "stack" or "layer" TAR with search terms. Indeed, "[a]mple case law exists to support [a] position that in appropriate instances layering may be done." *In re Valsartan*, 337 F.R.D. at 616; *see also The Sedona Conference TAR Case Law Primer, Second Edition*, 24 Sedona Conf. J. 1, 50 (2023) ("Several recent decisions suggest a growing trend that courts find keyword culling prior to the use of TAR to be permissible.").

Here, we do not yet know if any producing party plans to use such methodology. Accordingly, the Court declines to determine prospectively that such methodology is inappropriate without context or a specific proposal. Accordingly, considering the need for efficient and effective discovery, within the Court's discretion, the ESI Protocol should require the parties to discuss proposed methodologies and raise any disputes arising therefrom with the Court.

### E.   EMAIL THREADING

In section VI.B. of the ESI Protocol, the parties also dispute whether a producing party must produce lesser-included emails in addition to the most-inclusive email in a thread. Plaintiffs seek to require the production of those lesser-included emails inclusive of attachments and metadata. Plaintiffs add that a producing party is free to use email threading internally for reviewing purposes but not in the production.

Defendants seek to produce only the most-inclusive email, arguing that email threading reduces the burden of review and production because producing each and every email could lead to duplicative, voluminous productions. Defendants add that threading for review but not production does not alleviate the burden. Defendants' proposal nonetheless includes an option to produce certain lesser-included emails upon a request. Plaintiffs counter that Defendants' proposal is unworkable because it runs counter to the Federal Rules of Civil Procedure and a party making specific requests for lesser-included emails would reveal attorney work product and litigation strategy.

Rule 34(b)(2)(E) of the Federal Rules of Civil Procedure govern the production of documents and ESI, absent party stipulation or Court order otherwise. *See* Fed. R. Civ. P. 34(b)(2)(E). Pursuant to that rule, a party must produce ESI in the form in which it is ordinarily maintained or in reasonably usable forms and need not produce the same ESI in more than one form. Fed. R. Civ. P. 34(b)(2)(E). "Email threading identifies email relationships . . . and groups them together so they can be reviewed as one coherent conversation. Threading prevents the review team from reviewing information multiple times and reduces the likelihood of coding mistakes." *Malone v. United Parcel Serv., Inc.*, No. 21-3643, 2022 WL 18775906, at *2 n.2 (E.D. Pa. Nov. 28, 2022) (Special Master Report and Recommendation), *adopted by* 2023 WL 2054265 (E.D. Pa. Feb. 16, 2023). In some instances, the exclusion of lesser included emails may result in the exclusion of relevant and discoverable information and metadata. *See, e.g.*, *in re Actos Antitrust Litig.*, 340 F.R.D. 549, 552 (S.D.N.Y. 2022); *in re Meta Pixel Healthcare Litig.*, No. 22-3580, 2023 WL 4361131, at *1 (N.D. Cal. June 2, 2023) (considering burden of production of metadata for lesser included emails).

Here, the Court shares Plaintiffs' concern that relevant, discoverable metadata of lesser-included emails may not be produced if the Court were to accept Defendants' proposal.[3] Accordingly, considering the need for efficient and effective discovery, within the Court's discretion, the Court adopts Plaintiffs' proposal on this issue.[4]

**F.   HYPERLINKS**

A significant issue raised by the parties is whether the definition of document families should include hyperlinks such that a producing party must maintain any document "family" relationship for each hyperlink.[5] Plaintiffs argue that a producing party should produce linked documents with any affiliated family group. Defendants, in contrast, contend that Plaintiffs' proposal is technologically infeasible, conflicts with ESI protocols entered into in the prior insulin pricing cases, and would create undue burdens disproportionate to the needs of this matter.

Following the April 8, 2024 Case Management Conference and upon direction of the Court, Defendants proffered declarations to support whether maintaining family relationships for hyperlinks is feasible and/or not unduly burdensome. (*See* Doc. No. 163-1 at pp. 2-3 (CVS), 5-7 (Consilio, upon request of CVS), 9-15 (Consilio, upon request of Eli Lilly and Co. ("Lilly")), 17-18, 20-21 (Evernorth, for the Express Scripts Defendants), 23-29 (Lighthouse, upon request of

---

[3] The ESI Protocols referenced by the parties that do permit email threading often provide for the production of metadata of lesser-included emails. Defendants' proposal, however, excludes such metadata.

[4] Issues as to email threading can also arise in the context of logging, categorically or otherwise, communications and emails on a privilege log. *See* Fed. R. Civ. P. 26(b)(5)(A); L. Civ. R. 33.1(c); L. Civ. R. 34.1. The parties are instructed to meet and confer as to the format of appropriate privilege logs, considering whether threading, categorical, or other grouping is appropriate in this circumstance. *See, e.g., in re Actos Antitrust Litig.*, 340 F.R.D. at 552-54f.

[5] The parties do not appear to dispute whether a responsive, non-privileged hyperlink should be produced.

Novo Nordisk), 31-35 (UnitedHealth Group Inc.), and 37-41 (Sanofi)).[6] In sum, each defendant proffers that it is not feasible, practicable, or unduly burdensome to produce hyperlinked documents in family groups, particularly when attempting to produce, in a family group, the "assent" version(s) of any linked document. Plaintiffs responded to Defendants' declarations on this issue and argued the parties should meet and confer further as to the feasibility of producing hyperlinked documents in family groups. (*See* Doc. No. 170). Defendants oppose further "discovery on discovery" and maintain its objections to the production of hyperlinks that maintain any family relationship.

On May 24, 2024, Defendants submitted a letter regarding supplemental authority as to the hyperlink issue. (*See* Doc. No. 185). Defendants point out that the Northern District of California modified the ESI Protocol Order entered in the *in re StubHub Refund Litigation*, No. 20-md-2951, to remove the requirement that hyperlinked documents be produced in document family groups, based upon declarations submitted by StubHub reflecting the inability to produce links in that fashion. *See in re StubHub Refund Litig.*, No. 20-md-2951, Doc. No. 278 (N.D. Cal. May 20, 2024).[7]

The Court agrees with Defendants: hyperlinks are not the same as traditional attachments. *See, e.g., Nichols v. Noom Inc.*, No. 20-3677, 2021 WL 948646, at *4 (S.D.N.Y. Mar. 11, 2021) (hyperlinks are not necessarily attachments); *in re Meta Pixel Healthcare Litig.*, 2023 WL

---

[6] For brevity, the Court does not summarize the contents of these Declarations here but refers the parties to the documents.
[7] Notably, in the *in re StubHub Refund Litigation*, StubHub had agreed in the original ESI Protocol to produce linked material in document family groups without having investigated whether it was technologically feasible. *See in re StubHub Refund Litig.*, No. 20-md-2951, Doc. No. 278 at p. 6 (N.D. Cal. May 20, 2024). In removing the requirement, the Northern District of California considered the declarations submitted by StubHub as well as a declaration from Douglas Forrest, Plaintiffs' declarant here.

4361131, at *1. The Court ultimately must determine whether commercially available tools that may be used to maintain family relationships in the context of hyperlinks are feasible in the data environments or systems used by each producing party subject to the ESI Protocol and, if feasible, if the use of such tools are proportional to the needs of the case and not unduly burdensome. *See, e.g., in re Meta Pixel Healthcare Litig.*, 2023 WL 4361131, at *1 (finding that "the commercially available tools plaintiffs suggest may be used for automatically collecting links to non-public documents have no or very limited utility in Meta's data environments or systems, and even that limited utility (i.e. using the Microsoft Purview eDiscovery (Premium) tool to collect links to SharePoint and OneDrive cloud attachments in Microsoft Exchange environments) would disrupt Meta's standardized workflow for ESI-related discovery processing across all of its platforms and systems."); *see also in re Uber Tech., Inc., Passenger Sexual Assault Litig.*, No. 23-md-3084, 2024 WL 1772832, at *6 (N.D. Cal. Apr. 23, 2024) (resolving dispute in ESI Protocol over definition of attachments where parties agreed to include "modern attachments" but the Court specifically provided that the "definition does not obligate Uber to produce the contemporaneous version of Google Drive documents referenced by URL or hyperlinks *if no existing technology makes it feasible to do so*" (emphasis supplied)).

Here, having fully considered the parties' respective declarations on this issue, Defendants have sufficiently proffered that such tools are either not feasible whatsoever or unduly burdensome to apply to their respective data environments.[8] Additional meet and confers between the parties on this issue, as proposed by Plaintiffs, would only delay discovery. Accordingly, considering the

---

[8] Because the Court has ruled that this ESI Protocol shall apply to all parties, it is not clear to the Court that such tools would be feasible and not unduly burdensome if applied to certain Plaintiffs or Plaintiff groups with their respective productions. The parties shall meet and confer as to the feasibility and burden of applying the commercially available tools to collect hyperlinks as family attachments for parties other than Defendants that would be subject to the ESI Protocol.

need for efficient and effective discovery, within the Court's discretion, the Court adopts Defendants' proposed language as to family relationships and hyperlinks in the ESI Protocol.

### G.   REDACTIONS

The parties also dispute what a producing party may redact in its productions in sections VI and VII.A. of the ESI Protocol. Through Defendants' proposed ESI Protocol, a producing party may redact information that: (1) relates to non-diabetes products; (2) identifies members of the Pharmacy Benefit Manager ("PBM") Defendants' Pharmacy & Therapeutics Committees ("P&T Committees") who are not PBM employees; (3) subject to state, federal, or foreign privacy requirements; or (4) irrelevant and of an "intimate or private nature." Defendants' proposal would also permit a producing party to use a slipsheet in place of entirely non-responsive attachments. Defendants contend that such redactions are narrowly tailored and consistent with prior ESI protocols entered in the earlier related cases. Plaintiffs object to any redactions other than for attorney-client privilege or work product material and oppose the proposal for slipsheeting, contending that the Court's Discovery Confidentiality Order limits concerns Defendants may have about non-responsive information. Plaintiffs' proposal would have the parties meet and confer as to any other redactions.

Defendants argue, in part, that Plaintiffs are not entitled in discovery to non-responsive, irrelevant material. Defendants further proffer that their respective productions will be used across all cases in this MDL and Defendants compete and negotiate with each other and many Plaintiffs in PBM services markets outside of diabetes medications. Defendants also contend that strict anonymity is required for non-PBM employees who are members of P&T Committees to ensure the independence of the process. The PBM Defendants made clear that they maintain such identities on a "need-to-know basis that very few individuals within the PBMs themselves are

permitted to know." They add that these Committees focus on clinical efficacy of a product and do not relate to cost or financial data. In opposing the redactions, Plaintiffs argue that broad relevancy redactions are improper and would run counter to Federal Rule of Evidence 106, Federal Rule of Civil Procedure 34(b)(2)(E), and applicable case law.

While courts generally tend to disfavor redactions of irrelevant material, some courts have permitted such redactions. *See, e.g., Gen. Motors LLC v. Ashton*, No. 20-12659, 2023 WL 1765711, at *3 (D.N.J. Feb. 3, 2023) (recognizing majority and minority views); *see also Kaiser Aluminum Warrick, LLC v. US Magnesium LLC*, No. 22-3105, 2023 WL 2482933, at *1-2 (S.D.N.Y. Feb. 27, 2023) (discussing split in authority and finding that "relevancy redactions must be evaluated on a case-by-case basis"); *Hansen v. Country Mut. Ins. Co.*, No. 18-244, 2020 WL 5763588, at *4 (N.D. Ill. Sept. 28, 2020) (discussing split of authority). Courts that preclude relevancy redactions reason that they are not permitted under the Federal Rules of Civil Procedure and run counter to Rule 34. *See, e.g., Engage Healthcare Communications, LLC v. Intellisphere, LLC*, No. 12-787, 2017 WL 3624262, at *3-4 (D.N.J. Apr. 26, 2017) (Special Master Report and Recommendation), *adopted by* 2017 WL 3668391 (D.N.J. Aug. 23, 2017). Moreover, "a strong reason to disallow such redactions" is "that they can lead to motion practice, . . . which often creates additional expense and delay." *Kaiser*, 2023 WL 2482933, at *2 (citing Fed. R. Civ. P. 1). Nevertheless, courts have permitted parties to redact irrelevant information that "would be harmful to the responding party if produced in an unredacted form." *General Motors*, 2023 WL 1765711, at *4; *see also* Fed. R. Civ. P. 26(c).

The Court, here, agrees that redaction of irrelevant material is generally not appropriate absent an articulated burden or harm. Defendants' concerns as to the sensitivity and confidentiality of non-diabetes products and personal identifying information ("PII") can be ameliorated through

the Discovery Confidentiality Order entered in this MDL. In addition, heightened concerns over specific material can be addressed as they come up in discovery through Plaintiffs' proposed language and the Federal Rules of Civil Procedure, which permit a producing party to seek to redact or withhold documents or information in certain circumstances. *See* Fed. R. Civ. P. 26(c). That some of the parties had previously agreed to the redactions proposed by Defendants in the other ESI Protocols does not dictate whether they are appropriate here. *See Amyndas Pharmaceuticals, S.A. v. Alexion Pharmaceuticals, Inc.*, No. 20-12254, 2024 WL 1346428, at *1 (D. Mass. Mar. 29, 2024) ("Though the parties agreed to, and Judge Sorokin approved, relevance redactions, it is the view of this Court that such redactions are problematic and should not be allowed."). Indeed, the sheer number of disputes that the parties have raised in the ESI Protocol reflects that relevancy redactions in this matter could very likely result in significant motion practice, increasing delays and costs in this MDL. *See* Fed. R. Civ. P. 1.

Nevertheless, the Court finds that the PBM Defendants have articulated a specific and particularized harm that would ensue if they are not permitted to redact the identities of non-PBM employee members of the P&T Committees. Given the importance of anonymity of the independent P&T Committee members and the level of secrecy the PBM Defendants treat such identities, the Court finds good cause for the redaction of such identifiers. *See* Fed. R. Civ. P. 26(c)(1). Notably, such redactions likely will be limited in volume and readily apparent, lessening the Court's concerns that arise with broader redactions. *See Beverage Distributors, Inc. v. Miller Brewing Co.*, No. 08-827, 2010 WL 1727640, at *5 (S.D. Oh. Apr. 28, 2010) ("In those cases . . . where redactions were approved, the number of redacted documents appeared to be small, and the content of the redactions was readily apparent.").

Accordingly, considering the need for efficient and effective discovery, within the Court's discretion, the Court rejects Defendants' proposal as to redactions and slipsheets, with the exception of redactions applied to maintain the anonymity of non-PBM employee members of the P&T Committees. The Court adopts Plaintiffs' proposed language as to redactions, provided, however, that such language should be modified to permit the redaction of "information identifying members of P&T Committees other than Pharmacy Benefit Manager employees."

The parties also disagree as to whether a producing party should redact spreadsheets in their native form. Plaintiffs propose that all spreadsheets be redacted in native form, whereas Defendants propose that redacted spreadsheets be produced in "Native or near Native Format." Defendants have clarified that "near native" is intended to address formatting adjustments that may be necessary with some spreadsheet formats. Plaintiffs worry that Defendants' proposed language as to "near native" is too broad and undefined. Considering the parties' respective positions on this issue, as well as the need for efficient and effective discovery, within the Court's discretion, the Court adopts Defendants' proposed language as to this point.

### H.    PRODUCTION FORMAT

The parties also dispute the format of productions. Plaintiffs propose that a producing party produce ESI in color and native format (instead of Tagged Image File Format ("TIFF") or TIFF-plus images), including all spreadsheets, presentation files, PDF files, "media" files, and word processing files that contain track changes, comments, hidden text, or embedded file types. Plaintiffs explain that such native production will enable the retention of metadata that could be important to understanding the files and that color will preserve context of the information.

Defendants, in contrast, propose that productions be made in TIFF or color JPG image format, except that a producing party would produce in native format spreadsheets,

audio/visual/multimedia, and other files not conducive to an image format. Defendants also propose that productions be made in black and white, but a receiving party may request certain files in color. Defendants argue their approach is more consistent with typical practice and balances the cost and burden of producing a large volume of color and native format ESI.

In relevant part, Rule 34(b)(2)(E) of the Federal Rules of Civil Procedure require a party to produce ESI "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms[.]" Fed. R. Civ. P. 34(b)(2)(E)(ii). "To be 'reasonably usable,' the form of ESI need not necessarily be in its native format or the form in which it is 'ordinarily maintained.'" *The Sedona Principles*, 19 Sedona Conf. at 174 (comment 12.b.i.); *see also Jordan v. Mirra*, No. 14-1485, 2019 WL 2127788, at *10-11 (D. Del. Feb. 27, 2019) (Special Master Report and Recommendation) (endorsing Sedona Principle 12), *adopted by* 2019 WL 2121346 (D. Del. May 15, 2019). Commentary to Sedona Principle 12 recommends consideration of multiple factors when selecting the form of ESI productions:

> (a) the forms most likely to provide the information needed to establish the relevant facts related to the parties' claims and defenses; (b) the need to receive ESI in particular formats in order to functionally access, cull, analyze, search, and display the information produced; (c) whether the information sought is reasonably accessible in the forms requested; (d) the relative value, and potential challenges created, by responding with ESI in the requested format(s); and (e) the requesting party's own ability to effectively manage, reasonably use, and protect the information in the forms requested.

*The Sedona Principles*, 19 Sedona Conf. J. at 173-74. With consideration of those factors, productions of ESI in native format may be appropriate for some but not all types of ESI. *Id.* at 177-78.

Here, production of such a large volume of ESI in color, native format can prove unwieldy and costly. *See id.* at 178-79 (discussing drawbacks of native format). Plaintiffs have not shown that they would be unable to fully access, cull, and use ESI in TIFF, TIFF-Plus, or JPG format.

20

*See id.* at 173 ("[R]equesting parties should avoid demanding a form of production, such as all ESI to be produced in a native format, unless they have a demonstrably reasonable need for that form of production and the necessary technology, skills, and resources available to make reasonable use of and to protect the ESI."). The Court thus agrees with Defendants that their proposal on production format "strike[s] the balance of proportionality[.]" Accordingly, considering the need for efficient and effective discovery, within the Court's discretion, the Court adopts Defendants' proposed language as to this point.

## IV.     CONCLUSION

The Court's rulings on the disputed ESI terms above shall be incorporated by the Parties into a final proposed ESI Protocol to be submitted to the Court. To the extent there are remaining issues unresolved by the Court's rulings, the parties are directed to meet and confer to resolve them in the final proposed ESI Protocol.

Accordingly, **IT IS** on this **28th** day of **May 2024** hereby

**ORDERED** that the parties are directed to prepare a final proposed ESI Protocol consistent with this Opinion and Order and shall file the proposed ESI Protocol by no later than **June 10, 2024**.

**SO ORDERED**.

RUKHSANAH L. SINGH
United States Magistrate Judge