Bruce F. Fain
CROWLEY FLECK PLLP 500
Transwestern Plaza II 490 North 31st
Street P. O. Box 2529
Billings, MT 59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 252-3181
bfain@crowleyfleck.com

*Attorneys for CVS Caremark Defendants*

Carey E. Matovich
MATOVICH, KELLER & HUSO, P.C.
2812 1st Avenue North, Suite 225
Billings, MT 59101
Phone: (406) 252-5500
Fax: (406) 252-4613
*cmatovich@mkhattorneys.com*

*Attorneys for UnitedHealth Group
Incorporated, OptumRx, Inc., and
OptumInsight, Inc.*

J. Daniel Hoven
BROWNING, KALECZYC, BERRY &
HOVEN, P.C.
800 N. Last Chance Gulch, Ste. 101
Helena, Montana 59624
(406) 443-6820 (p)
(406) 443-6883 (f)
dan@bkbh.com

*Attorneys for Express Scripts
Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| THE STATE OF MONTANA, EX. REL., AUSTIN KNUDSEN, ATTORNEY GENERAL, | |
| *Plaintiff,* | Case No. 6:22-cv-00087-BMM |
| v. | Hon. Brian Morris |
| ELI LILLY AND COMPANY, et al., | |
| *Defendants.* | |

## PBM DEFENDANTS' MEMORANDUM
## <u>SUPPORTING THEIR MOTION TO DISMISS</u>

# **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................1

BACKGROUND .......................................................................................5

ARGUMENT ............................................................................................6

   I.   The State's Claims Are Time-Barred. ..............................................6

   II.  The State's Pleading Fails to Satisfy Rule 9(b)...............................10

   III.   The State's MCPA Claim Fails for Additional Reasons............................13

      A.  The alleged statements by PBMs are not actionable under the MCPA. ......13

      B.  The State also does not allege the PBMs engaged in unfair acts or practices. ...........................................................................18

      C.  The alleged PBM conduct falls outside the MCPA's scope. ......................19

   IV.   The State's Unjust Enrichment Claim Fails As a Matter of Law. ..............20

      A.  The State's allegations of express contracts foreclose any claim for unjust enrichment. ...................................................................20

      B.  A claim for unjust enrichment is inconsistent with the State's *parens patriae* capacity. ...............................................................21

   V.  The State Fails to Plausibly Allege a Civil Conspiracy Involving the PBMs. 23

   VI.   The Court Should Dismiss the PBMs' Corporate Parents and Uninvolved Affiliates. .............................................................................25

CONCLUSION ......................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*,
   458 U.S. 592 (1982)..............................................................................................21

*Alpine Bank v. Hubbell*,
   555 F.3d 1097 (10th Cir. 2009) ..........................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................6, 21

*Associated Mgmt. Servs. v. Ruff*,
   424 P.3d 571 (Mont. 2018)..................................................................................20

*In re AT&T/DirecTV Now Sec. Litig.*,
   480 F. Supp. 3d 507 (S.D.N.Y. 2020) .................................................................17

*Austin v. Budget Rental Car, Inc.*,
   2020 WL 8614183 (N.D. Cal. Sept. 17, 2020)....................................................12

*In re Auto. Parts Antitrust Litig.*,
   2021 U.S. Dist. LEXIS 8201 (E.D. Mich. Jan. 15, 2021) ..................................22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................24

*Bly-Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001) ............................................................................10

*California v. Frito-Lay, Inc.*,
   474 F.2d 774 (9th Cir. 1973) ..............................................................................21

*Cent. Telecommc'ns, Inc. v. TCI Cablevision, Inc.*,
   800 F.2d 711 (8th Cir. 1986) ..............................................................................18

*Christian v. Atl. Richfield Co.*,
   380 Mont. 495 (Mont. 2015) ................................................................................9

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
   2013 WL 57861 (N.D. Cal. Jan, 2013) ............................................................16

*Cordis v. Allstate Ins. Co.*,
   2006 WL 8435851 (D. Mont. Jan. 27, 2006) ..............................................25, 26

*Destfino v. Reiswig*,
   630 F.3d 952 (9th Cir. 2011) ................................................................11, 12

*F.T.C. v. Gill*,
   265 F.3d 944 (9th Cir. 2001) ..............................................................14

*Mississippi ex rel. Fitch v. Eli Lilly & Co.*,
   2022 WL 18401603 (S.D. Miss. Aug. 29, 2022).......................................26

*Mississippi. ex rel. Fitch v. Eli Lilly & Co.*,
   No. 21-cv-674, slip op. (S.D. Miss. Aug. 15, 2022), ECF No. 112 .................26

*Forsyth v. Humana, Inc.*,
   114 F.3d 1467 (9th Cir. 1997) ..............................................................15

*Friedman v. Nationwide Ins. Co. of Am.*,
   2017 U.S. Dist. LEXIS 236227 (C.D. Cal. Feb. 9, 2017) ...........................15

*FTC v. Cyberspace.com, LLC*,
   453 F.3d 1196 (9th Cir. 2006) ..............................................................14

*FTC v. Direct Mktg. Concepts, Inc.*,
   624 F.3d 1 (1st Cir. 2010)...................................................................14

*Gov't of Puerto Rico v. Carpenter Co.*,
   442 F. Supp. 3d 464 (D.P.R. 2020) ........................................................22

*Grizzly Sec. Armored Express, Inc. v. Bancard Servs., Inc.*,
   385 Mont. 307 (Mont. 2016) .................................................................7

*Hall v. SeaWorld Ent., Inc.*,
   2015 WL 9659911 (S.D. Cal Dec. 23, 2015) ............................................11

*Harris Cnty., Texas v. Eli Lilly & Co.*,
   2022 WL 479943 (S.D. Tex. Feb. 16, 2022).............................................21

*Haskett v. Am. Home Centers, LLC*,
    2022 WL 11805576 (D. Mont. Oct. 20, 2022) (Morris, J.) ............................... 18

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
    998 F.3d 397 (9th Cir. 2021) ............................................................................. 10

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ........................................................................... 10

*LabMD, Inc. v. FTC*,
    894 F.3d 1221 (11th Cir. 2018) ......................................................................... 18

*Lence Family Trust v. Christensen*,
    2013 WL 4483419 (D. Mont. Aug. 20, 2013) ..................................................... 7

*Mont. Digital, LLC v. Trinity Lutheran Church*,
    473 P.3d 1009 (Mont. 2020) ................................................................ 19, 20, 22

*Moody v. Ocwen Loan Servicing, LLC*,
    2016 U.S. Dist. LEXIS 190592 (C.D. Cal. Feb. 22, 2016) ............................... 15

*Nat'l Ass'n for Gun Rights, Inc. v. Murry*,
    969 F. Supp. 2d 1262 (D. Mont. 2013) ............................................................... 7

*Osterman v. Sears*,
    318 Mont. 342, 80 P.3d 435 (Mont. 2003) ...................................................... 7, 9

*Paatalo v. J.P. Morgan Chase Bank, N.A.*,
    2011 WL 13130862 (D. Mont. May 18, 2011) ................................................. 23

*In re Packaged Seafood Prods. Antitrust Litig.*,
    338 F. Supp. 3d 1079 (S.D. Cal. 2018*)* ........................................................... 22

*Pfau v. Mortenson*,
    858 F. Supp. 2d 1150 (D. Mont. 2012) ............................................................. 13

*Prudencio v. Midway Importing, Inc.*,
    831 F. App'x 808 (9th Cir. 2020) ...................................................................... 25

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett*
    *Packard Co.*,
    845 F.3d 1268 (9th Cir. 2017) ..................................................................... 15, 17

*Robertus v. Candee,*
  670 P.2d 540 (Mont. 1983) ............................................................20

*United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,*
  971 F.2d 244 (9th Cir. 1992) ..........................................................8

*Rohrer v. Knudson,*
  203 P.3d 759 (Mont. 2009) .............................................................18

*Signal Peak Energy, LLC v. E. Mont. Minerals, Inc.,*
  922 F. Supp. 2d 1142 (D. Mont. 2013) ...........................................22

*Simmons Oil Corp. v. Holly Corp.,*
  258 Mont. 79, 852 P.2d 523 (Mont. 1993) ......................................23

*Sterling Drug, Inc. v. FTC,*
  741 F.2d 1146 (9th Cir. 1984) .........................................................14

*Swartz v. KPMG LLP,*
  476 F.3d 756 (9th Cir. 2007) ..........................................................11

*T-4 Corp. v. McDonald's Corp.,*
  2017 WL 3037422 (D. Mont. July 17, 2017) ...................................23

*Tuosto v. Philip Morris USA Inc.,*
  2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007)..................................17

*United States v. Bestfoods,*
  524 U.S. 51 (1998).........................................................................25

*United States v. Corinthian Colleges,*
  655 F.3d 984 (9th Cir. 2011) .........................................................12

*Ebeid ex rel. United States v. Lungwitz,*
  616 F.3d 993 (9th Cir. 2010) ....................................................10, 12

*Veal v. LendingClub Corp.,*
  423 F. Supp. 3d 785 (N.D. Cal. 2019)............................................17

*Von Saher v. Norton Simon Museum of Art at Pasadena,*
  592 F. 3d 954 (9th Cir. 2010) .....................................................7, 8

*WLW Realty Partners, LLC v. Cont'l Partners VIII, LLC*,
    360 P.3d 1112 (Mont. 2015) .................................................................................................14

*Young v. Era Advantage Realty*,
    513 P.3d 505 (Mont. 2022) ........................................................................................14, 18

**Statutes**

15 U.S.C. § 45(a)(1) ...............................................................................................................14

42 U.S.C. § 1396r–8 ................................................................................................................2

FTC Act § 5(a)(1) ...................................................................................................................14

Mont. Code § 27-2-102 ............................................................................................................7

Mont. Code § 27-2-103 ............................................................................................................7

Mont. Code § 30-14-103 ........................................................................................................19

Mont. Code § 33-2-2402(7)(a) ..........................................................................................2, 13

**Other Authorities**

42 C.F.R. § 447.509 .................................................................................................................1

Fed. R. Civ. P. 8 ....................................................................................................................24

Fed. R. Civ. P. 9(b) .............................................................................................4, 10, 11, 12

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................6

*Medicare & State Health Care Programs: Fraud & Abuse*, 64 Fed.
    Reg. 63518, 63518 (Nov. 19, 1999) .....................................................................................2

*OIG Compliance Program Guidance for Pharmaceutical
    Manufacturers*, 68 Fed. Reg. 23731, 23734, 23736 (May 5, 2003) .....................................3

# **EXHIBIT INDEX**

Exhibit A – Montana 2016 Request for PBM Proposals…………...………………8

# **INTRODUCTION**

The State of Montana—copying similar suits by state Attorneys General and private plaintiffs in other jurisdictions—seeks to paint long-standing, legitimate business practices as an unlawful scheme to inflate the price of certain insulin drugs. The State presses claims against two distinct groups for their alleged involvement— manufacturers Eli Lilly, Novo Nordisk, and Sanofi ("Manufacturers") and pharmacy benefit managers CVS Caremark, Express Scripts, and OptumRx[1] ("PBMs").

PBMs contract with health plans and third-party payors to administer prescription drug benefits, which includes providing customizable drug formularies and negotiating rebates and discounts with drug manufacturers to offset the list price of drugs and lower net costs to clients. Insulin products represent a small fraction of drugs that involve rebates or other discounts, which are a well-known mechanism for lowering drug costs. Indeed, Congress has enacted statutes requiring rebates for certain drugs prescribed to Medicaid enrollees. *See* 42 C.F.R. § 447.509.

---

[1] The moving Defendants are Evernorth Health, Inc., Express Scripts, Inc., Express Scripts Administrators, LLC, ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., and Medco Health Solutions, Inc. (together, "Express Scripts"); CVS Health Corporation, CVS Pharmacy, Inc., Caremark Rx, L.L.C., Caremark PCS Health, L.L.C., and Caremark, L.L.C. (together, "CVS Caremark"); and UnitedHealth Group Incorporated, OptumRx Inc., and OptumInsight, Inc. (together, "OptumRx"). Collectively, we refer to those entities as the "PBM Defendants," even though certain of those entities are not PBMs. Certain Defendants have also filed motions seeking dismissal under Rule 12(b)(2) for lack of personal jurisdiction; they join this brief subject to and without waiving those personal jurisdiction defenses.

Drug manufacturers have been entering into rebate agreements with PBMs for decades. Likewise, PBMs have for decades developed formulary offerings that take into account the effect of rebates in lowering the net cost of drugs to client health plans.

The State attempts to reframe these legitimate business practices as deceptive and unfair conduct. The State characterizes the practice of negotiating rebates— which attempt to lower clients' net costs—as an illegal, industrywide conspiracy. Although the State may be frustrated by increasing insulin prices, its attempt to recast longstanding, legitimate business practices as "unfair" or "deceptive" fail as a matter of law. Indeed, the Montana legislature has recognized that PBM-negotiated rebates and other discounts from manufacturers are a standard industry practice. *See* Mont. Code § 33-2-2402(7)(a) (PBMs, inter alia, "negotiate[] rebates, discounts, or other financial incentives and arrangements with manufacturers, wholesale distributors, or other third parties."). And federal law not only contemplates that PBMs will negotiate rebates but affirmatively requires rebates in certain circumstances. *See* 42 U.S.C. § 1396r–8.

Beyond that, more than two decades ago, the federal Department of Health and Human Services ("HHS") promulgated regulations to ensure that "relatively innocuous commercial arrangements" would not be caught within the Anti-Kickback Statute's broad sweep. *See Medicare & State Health Care Programs:*

2

*Fraud & Abuse*, 64 Fed. Reg. 63518, 63518 (Nov. 19, 1999). Those "regulations establish a number of 'safe harbors' for common business arrangements," such as "rebates or other payments by drug manufacturers to PBMs." *OIG Compliance Program Guidance for Pharmaceutical Manufacturers*, 68 Fed. Reg. 23731, 23734, 23736 (May 5, 2003). HHS has repeatedly confirmed that those safe harbor provisions specifically permit pharmaceutical rebates.

The State speculates that the reason insulin prices have risen over the last decade until a few years ago is that the PBM Defendants conspired with the three largest insulin manufactures—Eli Lilly, Novo Nordisk, and Sanofi—to drive up insulin prices in exchange for rebates. But the State has not alleged facts supporting its imagined "scheme." For that and several other reasons, the First Amended Complaint ("FAC") should be dismissed with prejudice.

*First*, the State's claims on behalf of private consumers are time-barred. The State cannot recover damages on behalf of private consumers that the consumers could not themselves recover. The limitations periods for those claims are three years (unjust enrichment and civil conspiracy based on unjust enrichment) and two years (MCPA and civil conspiracy based on MCPA). Here, the limitations periods began running long ago, but certainly no later than February 2017—more than five years before the State filed suit—when insulin consumers filed a well-publicized suit in another jurisdiction alleging similar claims. With reasonable diligence, the State

3

should have discovered the alleged scheme underlying its FAC years before it filed suit.

*Second*, although the State alleges that a "deceptive scheme" lies at the "root" of its complaint, FAC ¶ 12, it does not allege facts with Rule 9(b) particularity to support any claim against the PBMs.

*Third*, the State's Montana Unfair Trade Practices & Consumer Protection Act ("MCPA") claims fail as a matter of law. The alleged statements by the PBMs are nonactionable statements of opinion, which are neither misleading nor false. The State also has not alleged that the PBMs' statements occurred in the course of the sale, pricing, or promotion of the drugs at issue or that the PBMs' routine business practices are "unfair."

*Fourth*, the claims for unjust enrichment fail because the State's allegations are grounded in contract. The State's conclusory allegation that there is "no express contract governing the dispute at issue" (FAC ¶ 532), is not entitled to a presumption of truth because it is both implausible and directly contradicted by the State's own allegations that the PBMs contract for insulin (and other products) with manufacturers, payors, and pharmacies.

*Fifth,* the State has not plausibly alleged that the PBMs joined an industrywide conspiracy to raise insulin prices. The State's allegations suggest nothing more than

PBMs having advanced their own competitive interests by negotiating with the Manufacturers for rebates that lowered their clients' net costs.

*Finally*, the State's claims against the PBMs' corporate parents and uninvolved affiliates must be dismissed for failure to allege any facts implicating those entities in the challenged conduct.

## BACKGROUND

Eli Lilly, Novo Nordisk, and Sanofi are pharmaceutical companies that research, develop, manufacture, and sell prescription drugs, including insulin and other diabetes medications. FAC ¶ 5. They set the list prices for their products. *Id.* ¶¶ 13, 15-16, 20, 268-73, 275-82.

CVS Caremark, Express Scripts, and OptumRx are PBMs that contract with health plan sponsors and third-party payors to administer prescription drug benefits. Among other things, PBMs develop lists of drugs called "formularies" that their health-plan clients can adopt to determine whether and to what extent those clients cover the cost of certain medications for their members. *Id.* ¶ 7. PBMs also negotiate rebates from prescription drug manufacturers, which the PBMs share with their clients in accordance with the terms of their client contracts and can be used to help lower net drug costs. *Id.* ¶ 383.

The State alleges that because a prescription drug's formulary position can affect insurance coverage for that drug, preferred placement on a PBM's formulary

offering may increase drug utilization. *Id.* ¶¶ 7-10. As a result, the State alleges, the Manufacturers compete for formulary placement (*id.* ¶¶ 10, 20, 22, 363), and the PBMs negotiate rebates from the Manufacturers in exchange for placement on formulary offerings. *Id.* ¶ 372. According to the State, those negotiations constitute a conspiracy among Manufacturers and PBMs to inflate the price of certain insulin products. Premised on an alleged "Insulin Pricing Scheme," the State asserts three causes of action: (1) violation of the MCPA, (2) unjust enrichment, and (3) civil conspiracy. *Id.* ¶ 36. The State purports to bring each claim on its own behalf as a payor for and purchaser of the at-issue diabetes medications and also as *parens patriae* on behalf of Montana residents with diabetes. *Id.* ¶ 36.

## ARGUMENT

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The State fails to state a plausible claim against the PBMs.

### I. The State's Claims Are Time-Barred.

The State's claims are barred by the applicable limitations periods. Claims are subject to dismissal under Rule 12(b)(6) when "the running of the statute [of

limitations] is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F. 3d 954, 969 (9th Cir. 2010).

A claim accrues "when all elements of the claim or cause exist or have occurred." Mont. Code § 27-2-102. For MCPA claims, such accrual begins "when the fraud occurs" and plaintiffs must file suit within two years to avoid sleeping on their rights. *See Osterman v. Sears*, 318 Mont. 342, 350, 80 P.3d 435, 441 (Mont. 2003) (applying two-year statute of limitations to MCPA claim). A three-year statute of limitations applies to unjust enrichment claims and to civil conspiracy claims. *Grizzly Sec. Armored Express, Inc. v. Bancard Servs., Inc.*, 385 Mont. 307, 313 (Mont. 2016); *Lence Family Trust v. Christensen*, 2013 WL 4483419, at *7 (D. Mont. Aug. 20, 2013), *reversed on other grounds by* 623 F. App'x 314 (9th Cir. 2015) (Mem.). The limitations period applies to claims brought by the State just like actions brought by private parties. Mont. Code § 27-2-103.

The State has long been aware that PBMs negotiate for rebates that flow through to their clients—the State's 2016 Request for PBM Proposals specifically "pursu[ed] PBM services that provide a 100% transparent full pass through model where the only source of revenue for the PBM is the administration fee and all other monies are passed directly through to the State of Montana."[2]

---

[2] The Court may take judicial notice of state agency records, including "documents obtained via government websites." *Nat'l Ass'n for Gun Rights, Inc. v. Murry*, 969

The State's allegations also show that each of its claims accrued more than five years ago. The State alleges the "Insulin Pricing Scheme" has taken place "[o]ver the course of the last fifteen years" (FAC ¶ 13) and repeatedly references (as evidence of this scheme) insulin-related government investigations and hearings beginning as early as 2016 (FAC ¶¶ 356-57, 536). The Complaint even borrows from pleadings filed in earlier lawsuits challenging the same alleged scheme, including a lawsuit filed **more than six years ago** on February 2, 2017. *See* Complaint, *In re Insulin Pricing Litig.*, No. 17-cv-699 (D.N.J. Feb. 2, 2017), ECF No. 1.[3] In *In re Insulin Pricing Litigation*, a putative class of individual insulin purchasers challenged insulin pricing based on the same "scheme" alleged here. *See id.* at ¶¶ 4-10, 529-36 (claims under MCPA). The suit received national media coverage.[4]

The State delayed filing this suit, which makes virtually identical allegations, until September 29, 2022. That delay undermines any claims of diligence or

F. Supp. 2d 1262, 1266 (D. Mont. 2013). The RFP is publicly available at: https://tinyurl.com/3v6wz7hx, and a courtesy copy is attached here as Exhibit A.

[3] The Court "may take notice of proceedings in other courts . . . if those proceedings have a direct relation to matters at issue." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

[4] *See, e.g.*, CBS News, Lawsuit accuses drug makers of conspiring to hike insulin prices, available at https://www.cbsnews.com/news/insulin-price-hike-lawsuit-accuses-drug-makers-of-conspiring/ (Feb. 22, 2017). The Court may take judicial notice of this and similar news reports. *See Von Saher*, 592 F.3d at 960.

conclusory allegations that estoppel or fraudulent concealment might excuse its tardiness. *See Osterman*, 318 Mont. at 350 ("For purposes of tolling the statute of limitations in an action for fraud or unfair trade practices, ordinary diligence must be exercised by the aggrieved party in the discovery of the facts constituting the fraud or deceptive practice.").  Thus, even if estoppel or fraudulent concealment could have tolled the limitations period, the claims nonetheless accrued more than five years ago (exceeding all three limitations periods) at the time of the government investigations and earlier lawsuits.  The continuing tort doctrine likewise is inapplicable to the State's claims—Montana has declined to apply it "where abatement is only possible through the payment of money for past wrongs." *Christian v. Atl. Richfield Co.*, 380 Mont. 495, 522 (Mont. 2015).[5]

With reasonable—in fact, any diligence—the State should have been aware of the alleged scheme by at least February 2017, with the filing of a similar suit. Instead, it waited more than five years to bring this suit.  Thus, the applicable two-year (for MCPA) and three-year (for unjust enrichment and conspiracy) statutes of limitations bar the State's claims in their entirety.

---

[5] For the reasons provided in the Manufacturers' brief, the State's conclusory allegations seeking to invoke an exception to the statute of limitations fail for additional reasons as well.

9

## II. The State's Pleading Fails to Satisfy Rule 9(b).

An "unfair and deceptive scheme" lies at "the root of" the State's pleading alleging a so-called "Insulin Pricing Scheme." FAC ¶ 12. In this way, the State alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct" in bringing its claims. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). As such, its claims are "said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of [these claims] as a whole must satisfy the particularity requirement of Rule 9(b)." *Id.*

Rule 9(b) requires parties alleging fraud to "state with particularity the circumstances constituting fraud or mistake" by alleging "the who, what, when, where, and how of the misconduct charged" and explaining "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quotations omitted). Rule 9(b) requires that plaintiffs allege facts "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so they can defend against the charge." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quotations omitted). This heightened pleading requirement also "serves to deter the filing of complaints as a pretext for the discovery of unknown wrongs," conserves judicial and social resources, and protects defendants from the harms caused by mere allegations of fraud. *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998

F.3d 397, 404 (9th Cir. 2021). "[S]imply listing statements and saying they are false does not satisfy Rule 9(b)." *Hall v. SeaWorld Ent., Inc.*, 2015 WL 9659911, at *10 (S.D. Cal Dec. 23, 2015).

Instead of alleging particularized facts of each Defendant's conduct, the complaint largely alleges conduct on the part of "Defendants," "PBMs," or "PBM Defendants." *See, e.g.*, FAC ¶¶ 443, 513-18. Those allegations do not suffice. "Rule 9(b) does not allow a complaint to lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (cleaned up). Plaintiffs alleging a fraudulent conspiracy must offer detailed and particularized allegations regarding ***each defendant's*** role in the fraud. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (explaining that a complaint must "inform each defendant *separately* of the allegations surrounding his alleged participation in the fraud" (emphasis added)).

The Complaint utterly fails on that score. The State defines "PBM Defendants" to include at least *fourteen* separate entities, in addition to "all predecessor and successor entities" for each of those fourteen. FAC ¶¶ 6, 113, 165, 204. Some of these entities offer PBM services. *See, e.g.*, *id.* ¶¶ 84-219. Others are mail-order pharmacies, retail pharmacies, or mere parent companies. The entities offering PBM services are market competitors that contract with different

manufacturers to service different clients who provide benefits to different beneficiaries. The FAC nowhere alleges what particular formulary decisions were improperly influenced, which drug costs rose as a result of these formulary decisions, or which drugs were favored (or disfavored) because of the rebates. The State's general allegations that PBMs create formularies and negotiate for rebates is nothing more than "a global indictment of [the defendant's] business," which "is not enough" to satisfy Rule 9(b) as a matter of law. *Ebeid*, 616 F.3d at 1000; *see Austin v. Budget Rental Car, Inc.*, 2020 WL 8614183, at *2 (N.D. Cal. Sept. 17, 2020) (allegations lumping together "the 'Financial companies'" insufficient because the "defendants [were] separate corporate entities, and perform[ed] separate roles (e.g., banks versus credit-card companies)").

The State's shotgun, "everyone did everything" allegations infect the entire complaint. *Destfino*, 630 F.3d at 958. Even when the State purports to identify specific PBMs, it improperly lumps together allegations against "Express Scripts" (six entities, plus predecessors and successors), "CVS Caremark" (five entities, plus predecessors and successors), and "Optum Rx" (three entities, plus predecessors and successors). FAC. ¶¶ 113, 165, 204. Nowhere does the State allege which entity said what, when, where, or how those statements were made, or what they did to make them untruthful. That also does not satisfy Rule 9(b). *See United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (plaintiffs cannot "simply

attribute[] wholesale all of the allegations against [employer] to the Individual Defendants."); *Pfau v. Mortenson*, 858 F. Supp. 2d 1150 (D. Mont. 2012) (dismissing complaint that "d[id] not differentiate allegations against each Defendant").

## III.    The State's MCPA Claim Fails for Additional Reasons.

The Montana legislature has recognized that PBM-negotiated rebates and other discounts from manufacturers is a standard industry practice.  Mont. Code § 33-2-2402(7)(a) (recognizing that PBMs, *inter alia*, "negotiat[e] rebates, discounts, or other financial incentives and arrangements with manufacturers wholesale distributors, or other third parties").  Not only that, but the State's allegations that the PBMs violated the MCPA are insufficient to state a claim under the MCPA for at least three additional reasons: (1) the alleged statements by the PBMs are, themselves, non-actionable; (2) none of the PBMs' statements was made in the course of any trade or commerce; and (3) the State does not allege that the PBMs engaged in unfair practices.

### A. The alleged statements by PBMs are not actionable under the MCPA.

The State also fails to identify a single actionable statement by any PBM.  The State premises its MCPA claim on purported "*false* representations as to the characteristics and benefits of goods and services" by the PBMs.  FAC ¶ 513 (emphasis added).  Although the MCPA does not define what acts constitute

"deceptive acts or practices," the Montana Supreme Court has defined a deceptive act as one "that is likely to mislead consumers." *Young v. Era Advantage Realty*, 513 P.3d 505, 513 (Mont. 2022).

The MCPA itself requires courts to give "due consideration and weight . . . to the interpretations of the federal commission and the federal courts" of Section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1). Mont. Code. § 30-14-104(1); *Young*, 513 P.3d. at 513, n.2. Montana courts also look to "precedent from other jurisdictions that have consumer protection acts patterned after § 5(a)(1) of the FTC Act." *WLW Realty Partners, LLC v. Cont'l Partners VIII, LLC*, 360 P.3d 1112, 1118 (Mont. 2015).

Only material representations are actionable under Section 5 of the FTC Act. *F.T.C. v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001). A misrepresentation is material only if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1200-01 (9th Cir. 2006). Under the FTC, puffery, or claims that are "either vague or highly subjective" are not material. *Sterling Drug, Inc. v. FTC*, 741 F.2d 1146, 1150 (9th Cir. 1984); *see also FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 11 (1st Cir. 2010) ("Where a claim is merely exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely, it may be un-actionable puffery" (cleaned up)). As described below, the State fails to

plead any material statement by a PBM capable of being proven false, as opposed to subjective opinions or statements of aspiration.  The State also never alleges facts explaining how the supposed statements are false or misleading, which is itself a ground for dismissal.

### 1. PBMs' commitments to their clients

"'[P]uffing'—expressing an opinion rather than a knowingly false statement of fact—is not misleading."  *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017).  Statements that an entity will be on a client's "side" or advocate for them "constitute puffery and are therefore not actionable."  *Friedman v. Nationwide Ins. Co. of Am.*, 2017 U.S. Dist. LEXIS 236227, at *6 (C.D. Cal. Feb. 9, 2017) (advertisements that insurer "will act as the insured's advocate" non-actionable puffery); *Moody v. Ocwen Loan Servicing, LLC*, 2016 U.S. Dist. LEXIS 190592, at *10-12 (C.D. Cal. Feb. 22, 2016) ("Helping Homeowners Is What We Do!" was "a quintessential example of non-actionable puffery"); *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106-07, 1112-13 (10th Cir. 2009) ("You take care of your dream.  We'll take care of everything else.").

The same is true for statements that a defendant will lower costs.  *See, e.g.*, *Forsyth v. Humana, Inc*., 114 F.3d 1467, 1481 (9th Cir. 1997) (statements that defendant could "control costs" and save money were "too general" to support fraud claim), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th

Cir. 2012); *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2013 WL 57861, at *10 (N.D. Cal. Jan, 2013) (holding that the advertising claims of "save money" and "simple, easy and flexible" were "non-actionable puffery since they are vague and highly subjective").

Yet the vast majority of alleged statements that the State identifies are those kinds of statements of opinions, which cannot be proven false. The State alleges:

- Andrew Sussman, Chief Medical Officer of CVS Caremark stated that "CVS is working to develop programs to hold down [diabetes] costs." FAC ¶ 441(b). CVS further stated that formulary decisions related to insulin products "is one way the company helps manage costs for clients." *Id.* at ¶ 441(c).

- CVS Caremark "has taken a number of steps to address the impact of insulin price increases. We negotiate . . . on behalf of employers, unions, government programs, and beneficiaries that we serve." *Id.* at ¶ 441(h).

- Glen Stettin, Senior Vice President and Chief Innovation Officer at Express Scripts stated that Express Scripts "helps our clients and diabetes patients prevail over cost and care challenges." *Id.* at ¶ 441(d).

- Express Scripts, CEO Tim Wentworth stated, "we exist to bring [drug] prices down." *Id.* at ¶ 443(a); Express Scripts "stand[s] up for payers and patients" and is "dedicated to keeping our promises to patients and clients." *Id.* at ¶¶ 441(e)(i), 442(a).

- OptumRx's Chief Medical Officer stated that OptumRx "negotiate[s] with brand manufacturers to obtain significant discounts off list prices on behalf of our customers." *Id.* at ¶¶ 441(i), 442(d).

- OptumRx is "commit[ed] to delivering better prices for customers." *Id.* at ¶442(g).

These alleged statements of opinion cannot form the basis of a viable MCPA claim.

### 2. PBMs' statements supporting transparency

The State also alleges that the PBM Defendants have "misrepresented that they are transparent." FAC ¶¶ 444-47. But allegations regarding general promises of "transparency" are non-actionable statements of opinion. *See, e.g.*, *Retail Wholesale*, 845 F.3d at 1276 (statements that were "inherently aspirational" were not misrepresentations); *In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 524 (S.D.N.Y. 2020) (company's "'core set of values,' set forth in its 'Code of Business Conduct,' and its commitment to 'the highest standards' and 'operating with integrity, transparency, and honesty in everything' it does" are examples of "[n]on-actionable puffery"); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 804 (N.D. Cal. 2019) ("statements touting [Defendant's] focus on compliance, building trust with various stakeholders, and transparency are examples of corporate optimism and puffery").

### 3. Congressional testimony

The State also alleges that the PBMs made false representations during congressional testimony. *See* FAC ¶¶ 155, 365-69, 441-43, 447. In addition to being non-actionable puffery, the congressional testimony is protected petitioning activity under the *Noerr-Pennington* doctrine. *See Tuosto v. Philip Morris USA Inc.*, 2007 WL 2398507, at *6 (S.D.N.Y. Aug. 21, 2007) (concluding executives' congressional testimony "constitute[d] the type of petitioning that is protected by the *Noerr-*

*Pennington* doctrine and thus cannot form the basis of [plaintiff]'s claim of fraud."); *Cent. Telecommc'ns, Inc. v. TCI Cablevision, Inc*., 800 F.2d 711, 718 (8th Cir. 1986). Any MCPA claim based on those statements necessarily fails.

### B. The State also does not allege the PBMs engaged in unfair acts or practices.

Inasmuch as the State alleges the PBMs engaged in "unfair practices" distinct from "deceptive" practices, the State's claims still fail. An unfair trade practice must be "(1) contrary to established public policy *and* . . . (2) either immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Young*, 513 P.3d. at 513 (emphasis in original).

The State's claim fails at the first step because it does not allege any conduct by the PBMs that is contrary to *established* public policy. An established public policy is generally one that "has been established by statutes [or] common law"; at a minimum, it must be "within at least the penumbra of some common-law, statutory, or other established concept of unfairness." *Rohrer v. Knudson*, 203 P.3d 759, 763 (Mont. 2009) (quoting *FTC v. Sperry & Hutchinson Co. (S & H)*, 405 U.S. 233, 244, n.5 (1972)); *cf. LabMD, Inc. v. FTC*, 894 F.3d 1221, 1229 & n.24 (11th Cir. 2018) (holding that a trade practice cannot be unfair under the federal FTC Act unless it violates public policy, and any public policy must be "grounded in statute, judicial decisions, . . . or the Constitution"). By way of example, this Court has recognized that a failure to comply with building codes could run contrary to

established public policy. *See Haskett v. Am. Home Centers, LLC*, 2022 WL 11805576, at *4 (D. Mont. Oct. 20, 2022) (Morris, J.). But here the State does not (and cannot) point to any *established* constitutional, statutory, or regulatory provision to support a claim of an "unfair practice."

### C. The alleged PBM conduct falls outside the MCPA's scope.

The MCPA applies only to "[u]nfair methods of competition and unfair or deceptive acts or practices" "in the conduct of any trade or commerce[.]" Mont. Code § 30-14-103. "Trade" and "commerce" are defined terms and are limited to "advertising, offering for sale, sale, or distribution." *Id.* § 30-14-102(8)(a).

None of the claimed statements by PBMs allegedly occurred in the course of the sale, pricing, or promotion of the drugs at issue. Rather, the State alleges generalized statements made by the PBMs in annual reports to their investors and during Congressional testimony, not in the conduct of selling or promoting any at-issue drug. And although the State alleges that all of the Manufacturers "promote and sell" the at-issue drugs in Montana, FAC ¶¶ 44-45, 49-50 (Eli Lilly); 58-59, 63-64 (Sanofi); 72-73, 77-78 (Novo Nordisk), the same is not true for the PBMs. The State fails to allege that the PBMs promote or sell the at-issue drugs other than through mail-order pharmacies. Nor do the PBMs set the list prices for the at-issue drugs; the Manufacturers do. *See, e.g.*, *id.* ¶¶ 13, 15-16, 20 ("Manufacturer Defendants have in lockstep raised the prices of their respective diabetes drugs.").

## IV. The State's Unjust Enrichment Claim Fails As a Matter of Law.

### A. The State's allegations of express contracts foreclose any claim for unjust enrichment.

"Unjust enrichment is an equitable claim for restitution to prevent or remedy inequitable gain by another." *Mont. Digital, LLC v. Trinity Lutheran Church*, 473 P.3d 1009, 1011 (Mont. 2020).  As an equitable claim, unjust enrichment is generally only "available when an adequate legal remedy does not exist." *Id.* at 1012.  Thus, a plaintiff is precluded from pursuing an unjust enrichment claim where there is an enforceable contract governing the issue in dispute.  *See Associated Mgmt. Servs. v. Ruff*, 424 P.3d 571, 595 (Mont. 2018).[6]

The State does not even conclusorily allege that it lacks a legal remedy.  To the contrary, the State has affirmatively alleged contracts that cover this dispute, thereby foreclosing its unjust-enrichment claim.  The FAC includes allegations that the PBMs contract for insulin (and other products) with manufacturers (FAC ¶¶ 300-01), payors (FAC ¶¶ 350, 382-84, 464, 513) and pharmacies (FAC ¶¶ 297, 350, 403, 513).  The FAC also affirmatively alleges that it received at-issue PBM and pharmacy services under a PBM contract.  *Id.* ¶ 120.  This alone bars the State's

---

[6] The Montana Supreme Court has recognized unjust enrichment where a contract exists in limited circumstances inapplicable here, such as "where one party repudiates a contract or breaches it by non-performance" and retains the benefit; then "the injured party may seek restitution of the unjust enrichment." *Robertus v. Candee*, 670 P.2d 540, 542 (Mont. 1983).

claim. Indeed, another federal court recently dismissed a nearly identical unjust-enrichment claim brought by Harris County, Texas because the claims "sound[ed] more in contract than in quasi-contract;" in the complaint's "own words, the PBM Defendants 'contract with payors.'" *Harris Cnty., Texas v. Eli Lilly & Co.*, 2022 WL 479943, at *14 (S.D. Tex. Feb. 16, 2022).

Recognizing this infirmity, the State alleges that "[t]here is no express contract governing the dispute at-issue." FAC ¶ 532. But the Court is not required to accept as true that conclusory allegation. *Iqbal*, 556 U.S. at 678. Particularly where, as here, the State's conclusory assertion is directly contradicted by its own factual allegations regarding PBM contracts with manufacturers, payors, and pharmacies that apply to the at-issue insulin products, the Court should reject the State's assertion, and dismiss its unjust enrichment claim.

### B. A claim for unjust enrichment is inconsistent with the State's *parens patriae* capacity.

Suits brought by the State in its *parens patriae* capacity involve a quasi-sovereign interest "in the health and well-being—both physical and economic—of its residents in general." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 600 (1982). A quasi-sovereign interest is "an interest apart from that of particular individuals who may be affected" and is not "a basis for recovery of money damages for injuries suffered by individuals." *California v. Frito-Lay, Inc.*, 474 F.2d 774, 775 (9th Cir. 1973); *Snapp*, 458 U.S. at 600 (*parens patriae* "concept does not

involve the States stepping in to represent the interests of particular citizens who, for whatever reason, cannot represent themselves").

In contrast, a claim for unjust enrichment only arises where a party "has and retains money which in justice and equity belongs to another." *Signal Peak Energy, LLC v. E. Mont. Minerals, Inc.*, 922 F. Supp. 2d 1142, 1149 (D. Mont. 2013) (citations omitted). Unjust enrichment focuses on a measurable, monetary remedy—restitution of the money unjustly retained by another. *See Mont. Digital*, 473 P.3d at 1011-12. As such, it is plainly an individual-specific harm requiring monetary damages for the individual—a harm the State cannot remedy in its *parens patriae* capacity.

Courts in other jurisdictions have expressed skepticism at the notion of *parens patriae* standing for unjust-enrichment claims. *See Gov't of Puerto Rico v. Carpenter Co.*, 442 F. Supp. 3d 464, 478-79 (D.P.R. 2020); *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1079, 1098-1104 (S.D. Cal. 2018*); In re Auto. Parts Antitrust Litig.*, 2021 U.S. Dist. LEXIS 8201, at *4-9 (E.D. Mich. Jan. 15, 2021). By seeking to recover monetary damages for alleged unjust enrichment, the State seeks a remedy inconsistent with the *parens patriae* doctrine.

## V.   The State Fails to Plausibly Allege a Civil Conspiracy Involving the PBMs.

The State's final cause of action alleges a civil conspiracy among all Defendants "to violate the MUTPCPA and to commit unjust enrichment."  FAC ¶ 535.  That claim fails at the motion-to-dismiss stage for two reasons.

First, "[n]o conspiracy claim can exist if there is not an underlying unlawful act." *Simmons Oil Corp. v. Holly Corp.*, 258 Mont. 79, 91, 852 P.2d 523, 530 (Mont. 1993).  Because the State's underlying causes of action fail as a matter of law, its civil conspiracy claim must also be dismissed.  *See supra* §§ I-IV.

Second, even if the State had pleaded an underlying unlawful act (it has not), its civil conspiracy claim would still fail because it has not plausibly alleged a "meeting of the minds" among the PBMs, or between the PBMs and Manufacturers. *See T-4 Corp. v. McDonald's Corp.*, 2017 WL 3037422, at *7 (D. Mont. July 17, 2017) (dismissing civil conspiracy claim where plaintiff only alleged "the existence of an agreement" without more).  Such a meeting of the minds is the lynchpin of a conspiracy claim.  *See id.*  To plausibly allege a meeting of the minds, "[a] complaint must do more than assert the existence of an agreement."  *Paatalo v. J.P. Morgan Chase Bank, N.A.*, 2011 WL 13130862, at *9 (D. Mont. May 18, 2011) (dismissing civil conspiracy claim based on conclusory allegations that defendants agreed to engage in a conspiracy).  Conclusory allegations of an agreement are not entitled to be assumed true.  *Id.*  "There must be factual allegations of further circumstances

pointing toward a meeting of the minds between the alleged co-conspirators." *Id.* (*citing Twombly*, 550 U.S. at 555).

The State has failed to set forth any factual allegations pointing toward a meeting of the minds on a goal to be accomplished or on a course of action to be taken, let alone a meeting of the minds to commit any unlawful act. While the Complaint alleges general communications and contact amongst certain of the Defendants, FAC ¶¶ 318, 320, 325-28, 330, 354, even if all of these allegations were true, none establish an agreement to violate the MCPA or unjustly enrich themselves. For example, the FAC alleges that Manufacturers and PBMs attend industry conferences and participate in trade associations through which they may have the opportunity to interact with one another. *See id.* ¶¶ 318 (alleging Manufacturers are members of PhRMA), 320 (alleging PBMs "routinely communicate . . . with their competitors and the Manufacturers at PBM trade associations and industry conferences"), 325 (alleging that PBMs and Manufacturers attend conferences to "meet in person to discuss their shared business opportunities within the pharmaceutical industry"), 327-28 (alleging that PBMs and Manufacturers met during PCMA annual meetings), 330 (alleging that PBMs and Manufacturers are invited to join a PCMA "online networking community"). At most, these allegations suggest an *opportunity* to conspire, not an actual agreement to do so. These

allegations are insufficient to state a claim for civil conspiracy under Rule 8 and *Twombly*.

## VI. The Court Should Dismiss the PBMs' Corporate Parents and Uninvolved Affiliates.

Even if the State had valid claims against the PBMs (it does not), its claims against their corporate parents—Evernorth Health, Inc., CVS Pharmacy, Inc., OptumInsight, and UnitedHealth Group, Incorporated—fail. "It is a general principle of corporate law 'deeply ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation omitted); *Prudencio v. Midway Importing, Inc.*, 831 F. App'x 808, 810 (9th Cir. 2020) ("[I]t is well established that a parent-subsidiary relationship by itself is insufficient to impute liability."). The State's claims in contravention of this general principle require dismissal.

Rather than allege that the PBMs' corporate parents provided PBM services, negotiated or received rebates, or engaged in any activity giving rise to the Complaint (they did not), the State rests its claims against the PBMs' corporate parents solely on its allegations that they are the "immediate or indirect parent of pharmacy and PBM subsidiaries that operate throughout Montana" and that these subsidiaries allegedly "engaged in the activities that gave rise to th[e] Complaint." FAC ¶¶ 95, 135, 182. That is not enough.

A parent corporation may even be "directly involved in the activities of its subsidiaries without incurring liability" so long as that involvement is consistent with the parent's ownership status. *Cordis v. Allstate Ins. Co.*, 2006 WL 8435851, at *2 (D. Mont. Jan. 27, 2006) (dismissing corporate parent). "Such involvement may include having the same directors and officers of both the parent and subsidiary, monitoring performance, supervising financial decisions, and articulating general policy and procedures," none of which will support holding a corporate parent liable for the acts of its subsidiary. *Id.* The State has alleged nothing more than a standard parent-subsidiary relationship. As another court reviewing similar allegations held, generalized allegations of parental influence, like those in the FAC, do not show the degree of control required to impose liability for a subsidiary's actions. *See, e.g.*, *Mississippi ex rel. Fitch v. Eli Lilly & Co.*, 2022 WL 18401603, at *4-*5 (S.D. Miss. Aug. 29, 2022) ("the Court finds it inappropriate to pierce the corporate veil" when the State at most alleges certain defendants "share corporate officers, company policies, and stock ownership."); *Mississippi. ex rel. Fitch v. Eli Lilly & Co.*, No. 21-cv-674, slip op. at 14-16 (S.D. Miss. Aug. 15, 2022), ECF No. 112 (concluding "conclusory allegations that the parent companies exercise substantial control" over subsidiaries was insufficient to hold parents liable for similar "Insulin Pricing Scheme").

The allegations in the FAC do not warrant a different conclusion. Consider the State's allegations against CVS Pharmacy. Beyond alleging that that entity is a parent or affiliate of certain PBM subsidiaries, the State alleges only that CVS Pharmacy operates retail pharmacies and provides retail pharmacy services. FAC ¶¶ 93-98. The State, however, has not pled any misconduct by *retail pharmacies*. The FAC divides the defendants into just two categories—"PBM Defendants" and "Manufacturer Defendants." *Id*. ¶¶ 6-7. The State never alleges that CVS Pharmacy had any involvement in the alleged PBM-Manufacturer conduct the State contends amounted to the scheme. *Id.* ¶ 14. The State alleges only that CVS Pharmacy retained the difference between the acquisition costs for the drugs at issue and the amounts received from payors. *Id.* ¶ 96. But it is standard practice for pharmacies (and indeed all business) to retain the difference between the amount at which a product is purchased and the amount for which it is sold—and the State does not allege otherwise. The allegation that CVS Pharmacy was paid for drugs that it dispensed and its services in connection therewith, *like all retail pharmacies*, is insufficient to support a plausible inference that CVS Pharmacy was involved in the alleged scheme.[7]

---

[7] Similarly, the State classifies OptumInsight as a "PBM Defendant" only by lumping it together with OptumRx and UnitedHealth Group Incorporated as "OptumRx." The State alleges only that OptumInsight "analyzed data and other information from the PBM and Manufacturer Defendants to advise Defendants with regard to the profitability of the Insulin Pricing Scheme." FAC ¶ 193. That

## **CONCLUSION**

This Court should dismiss with prejudice the State's claims against the PBM Defendants.

Dated: February 23, 2023

Respectfully submitted,

*s/ Chad E. Adams*
J. Daniel Hoven
Chad E. Adams
Megan E. Wampler
BROWNING, KALECZYC, BERRY & HOVEN, P.C.
800 N. Last Chance Gulch, Ste. 101
Helena, MT 59601
(406) 443-6820 (p)
(406) 443-6883 (f)
dan@bkbh.com
chad@bkbh.com
meganw@bkbh.com

Jason R. Scherr (*pro hac vice*)
Patrick A. Harvey (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS
1111 Pennsylvania Ave. NW
Washington, DC 20004
(202) 739-3000 (p)
(202) 739-3001 (f)
jr.scherr@morganlewis.com
patrick.harvey@morganlewis.com

*Attorneys for Evernorth, Inc., Express Scripts, Inc., Express Scripts Administrators, LLC, ESI Mail*

---

allegation lacks any factual detail about OptumInsight's supposed data analysis, and the State never even attempts to tie that alleged activity to the purported "Insulin Pricing Scheme."

*Pharmacy Service, Inc., and Express*
*Scripts Pharmacy, Inc.*

*s/ Bruce F. Fain*
Bruce F. Fain
Nicholas A. Muñoz
CROWLEY FLECK PLLP 500
Transwestern Plaza II 490 North 31st
Street P. O. Box 2529
Billings, MT 59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 252-3181
bfain@crowleyfleck.com
nmunoz@crowleyfleck.com

Enu Mainigi (*pro hac vice*)
Craig Singer (*pro hac vice*)
R. Kennon Poteat III (*pro hac vice*)
A. Josh Podoll (*pro hac vice*)
**WILLIAMS AND CONNOLLY**
   **LLP**
680 Maine Avenue SW
Washington, D.C. 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
csinger@wc.com
kpoteat@wc.com
apodoll@wc.com

*Attorneys for CVS Pharmacy, Inc.,*
*Caremark Rx, L.L.C., Caremark,*
*L.L.C., CVS Health Corporation, and*
*CaremarkPCS Health, L.L.C.*

*s/ Carey E. Matovich*
Carey E. Matovich
Katherine S. Huso
MATOVICH, KELLER & HUSO,
P.C.

2812 1st Avenue North, Suite 225
Billings, MT 59101
Phone: (406) 252-5500
Fax: (406) 252-4613
cmatovich@mkhattorneys.com
khuso@mkhattorneys.com

*Attorneys for OptumRx, Inc.,*
*UnitedHealth Group Incorporated, and*
*OptumInsight, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(d)(2), I certify that this brief contains 6,489 words, excluding captions, certificate of compliance, table of contents and authorities, exhibit index, and certificate of service.  In making this certification, I relied on the word count function in Microsoft Word, which was used to prepare this brief.

<u>*s/ Chad E. Adams*</u>

# Exhibit A

 **Montana Acquisition & Contracting System (eMACS)**

---

**Awarded To:**     Navitus Health Solutions

Awarded to Navitus Health Solutions, the highest scoring offeror.  Estimated annual cost is $51,099,152.00.

---

# Pharmacy Benefit Manager (PBM)

| | | | |
|---|---|---|---|
| **Open** | 5/24/2016 5:00 PM MDT | Type | Request for Proposal |
| **Close** | 6/27/2016 2:00 PM MDT | Number | DOA-RFP2016-0024P |
| | | Currency | US Dollar |
| **Sealed Until** | 6/27/2016 2:00 PM MDT | | |
| | | Payment Terms | 0% 0, Net 30 |

**Contacts**

**Carrie Schell**

cschell@mt.gov

Phone     +1 406-444-3319

**Commodity Codes**

| Commodity Code | Description |
|---|---|
| 2617 | Health Related - Pharmaceuticals |

**Description**

With Pharmacy and Specialty Pharmacy trends still a growing component to overall health care cost, many employers have tried to find ways to help mitigate the impact of this trend.

With the rapid industry changes coupled with recent acquisition activity, it is imperative that employers re-evaluate their current arrangements to better understand these market dynamics and their impact on services, market share, pricing and transparency.

The State of Montana pharmacy plan currently covers approximately 13,300 employees and non-Medicare retirees plus 1,800 Medicare retirees, comprising approximately 30,000 total covered lives.  The total pharmacy spends for the State of Montana in 2015 was just over $40M.

State of Montana is conducting this RFP to consolidate and leverage its constituent groups' covered lives, achieving best in class pricing and account service from its selected pharmacy benefit manager (PBM).  The State of Montana is pursing PBM services that provide a 100% transparent full pass through model where the only source of revenue for the PBM is the administration fee and all other monies are passed directly through to the State of Montana.

The State of Montana is looking for a PBM that is willing to be more than just one of the State of Montana's vendors. The State of Montana is looking for a long-term partner to help provide the best care possible to its constituents as well as manage the escalating cost of prescription medications.  The State of Montana needs a PBM partner that is willing to listen and collaborate with the State of Montana as the market changes. The State of Montana is very interested in having a formulary that is managed with equal focus on clinical effectiveness and driving to the lowest net cost. The State of Montana is very progressive in managing their covered lives and is looking for a PBM to help facilitate and enhance the State of Montana's efforts.  This progressive approach is evidenced by the State of Montana's investment in several of its own on-site clinics through which the State of Montana has continued to expand the suite of healthcare it provides to its members.  The future of this expansion may include some pharmacy services as well as expanding access to employees of other governmental agencies. In this expansion the State of Montana would also look to its PBM partner for collaboration and success.

This request is not only asking for a complete suite of pharmacy benefit management services for its active employees and non-Medicare retirees, but is also seeking a Medicare Part D plan with an Employer Group Waiver Plan (EGWP) to serve its Medicare retirees.  All of the specific details the State of Montana is looking for in a PBM partner is contained in this proposal request and we encourage you to read it carefully.  We also very much look forward to your proposal and wish to provide as much information as necessary to help facilitate your highest quality response.

The State of Montana has engaged the services of Alliant Insurance Services Inc. and Matovich Enterprises Inc., hereinafter referred to as Consultants, for this pharmacy benefit effort.

The State of Montana wants the Offeror to be aware of Montana Code Annotated 2015 2-18-704 (6) which states: (6) An insurance contract or plan issued under this part that provides for the dispensing of prescription drugs by an out-of-state mail service pharmacy, as defined in 37-7-702:

(a) must permit any member of a group to obtain prescription drugs from a pharmacy located in Montana that is willing to match the price charged to the group or plan and to meet all terms and conditions, including the same professional requirements that are met by the mail service pharmacy for a drug, without financial penalty to the member; and

(b) may only be with an out-of-state mail service pharmacy that is registered with the board under Title 37, chapter 7, part 7, and that is registered in this state as a foreign corporation.

🔒 Required to View Event

**Prerequisites**                                                      ★ Required to Enter Bid

★   1.    Please review and accept the information regarding submitting an RFP proposal.

★   2.    Please review and accept the RFP Schedule of Events.

      3.    Please review and accept the Single Point of Contact information.

★   4.    Please review and accept our RFP general information.

★   5.    Please review and accept the Oral Interview requirements for this RFP.

★   6.    Please review and accept the RFP Standard Terms and Conditions.

★   7.    Please review and accept the contract as provided.  Bidders/Offerors requesting additions or exceptions to the contract terms must submit them to the procurement officer listed above by the Q&A deadline. The State reserves the right to address nonmaterial requests for exceptions to the standard terms and conditions and contract language with the lowest bidder/highest scoring offeror during contract negotiation.

★   8.    Please review and accept the contract as provided. The State reserves the right to address nonmaterial requests for exceptions to the standard terms and conditions and contract language with the highest scoring offeror during contract negotiation.

## Buyer Attachments

1.  DOA-RFP2016-0024P_Evaluation Matrix
2.  Pharmacy Benefit URx Plan
3.  PBM Financial and Disruption Forms
4.  Formulary Distruption Analysis
5.  Pharmacy Access Disruption Analysis
6.  Reprice Data - Commercial
7.  Reprice Data - Medicare
8.  Census Data
9.  Magellan Exceptions to PBM Contract
10. Magellan Exceptions to Standard Terms and Conditions
11. Navitus Exceptions to PBM Contract
12. Trade Secret Confidentiality Affidavit

## Questions

★ Required Questions

|   | Section 1: General Information: | |
|---|---|---|
| 1.1 | To enable the State to determine the capabilities of an offeror to perform the services specified in the RFP, the offeror shall respond to the following regarding its ability to meet the State's requirements.<br><br>NOTE:  Each item must be thoroughly addressed.  Offerors taking exception to any requirements listed in this section may be found nonresponsive or be subject to point deductions. | ★ |
| 1.2 | Section 2 - General Requirements:<br>To enable the State to determine the capabilities of an offeror to perform the services specified in the RFP, the offeror shall respond to the following regarding its ability to meet the State's requirements.<br><br>NOTE:  Each item must be thoroughly addressed.  Offerors taking exception to any requirements listed in this section may be found nonresponsive or be subject to point deductions. | ★ |
| 1.3 | Section 3 - Financial Information and Fee Quotation:<br>To enable the State to determine the capabilities of an offeror to perform the services specified in the RFP, the offeror shall respond to the following regarding its ability to meet the State's requirements.<br><br>NOTE:  Each item must be thoroughly addressed.  Offerors taking exception to any requirements listed in this section may be found nonresponsive or be subject to point deductions. | ★ |
| 1.4 | Section 4 - Implementation Standards/Guarantees<br>To enable the State to determine the capabilities of an offeror to perform the services specified in the RFP, the offeror shall respond to the following regarding its ability to meet the State's requirements.<br><br>NOTE:  Each item must be thoroughly addressed.  Offerors taking exception to any requirements listed in this section may be found nonresponsive or be subject to point deductions. | ★ |

**Product Line Items**                                               ★ Product Line Items

There are no Items added to this event.

**Service Line Items**                                               ★ Service Line Items

There are no Items added to this event.