# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

THE STATE OF ILLINOIS, ex rel.,
KWAME RAOUL, ATTORNEY GENERAL

*Plaintiff,*

v.

ELI LILLY AND COMPANY, et al.

*Defendants.*

Civil Action No. 1:23-cv-170

## EVERNORTH HEALTH, INC.'S BRIEF IN SUPPORT OF
## <u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................... 1

BACKGROUND ........................................................................................................ 1

LEGAL STANDARD ................................................................................................ 2

ARGUMENT .............................................................................................................. 2

    A.    Evernorth is Not Subject to General Jurisdiction in Illinois Because
          Illinois is Not Its Home. .......................................................................... 2

    B.    Evernorth is Not Subject to Specific Personal Jurisdiction Because the
          State Does Not Allege Any Evernorth-Specific Contacts With the State. .............. 3

CONCLUSION .......................................................................................................... 6

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bristol-Myers Squibb Co. v. Superior Court*,
    137 S. Ct. 1773 (2017) ................................................................................................2, 3

*Brook v. McCormley*,
    873 F.3d 549 (7th Cir. 2017) ........................................................................................2

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
    230 F.3d 934 (7th Cir. 2000) ........................................................................................5

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ..................................................................................................2, 3

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021) ..................................................................................................4

*Hanson v. Denckla*,
    357 U.S. 235 (1958) ..................................................................................................3, 4

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ......................................................................................................4

*Integrated Bus. Info. Serv. (Proprietary) Ltd. v. Dun & Bradstreet Corp.*,
    7114 F.Supp. 296 (N.D. Ill. 1989) ..............................................................................5

*Jennings v. AC Hydraulic A/S*,
    383 F.3d 546 (7th Cir. 2004) ........................................................................................2

*The State of Mississippi ex rel. Lynn Fitch, Attorney General v. Eli Lilly Co.*,
    No. 3:21-cv-00674-KHJ-MTP (S.D. Miss. Feb. 17, 2022) ....................................5, 6

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
    338 F.3d 773 (7th Cir. 2003) ........................................................................................2

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) ........................................................................................4

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ..................................................................................................3

**Rules**

Fed. R. Civ. Proc. 12(b)(2) ..................................................................................................1

# INTRODUCTION

Defendant Evernorth Health, Inc. ("Evernorth") is a holding company parent of the Pharmacy Benefit Manager ("PBM") Express Scripts, Inc., with no presence in Illinois. In its Complaint (ECF No. 1-1), the State of Illinois ("Illinois" or the "State") does not allege that Evernorth maintains an office in Illinois, a registered agent in Illinois, or that it conducted any business at all in the state. Neither has the State offered any non-conclusory allegations showing that Evernorth engaged in conduct specifically and uniquely directed to the State of Illinois. Under these circumstances, the State has failed to make a prima facie case for the exercise of personal jurisdiction over Evernorth, and the Court should grant Evernorth's motion under Rule 12(b)(2) and dismiss Evernorth for want of personal jurisdiction.

# BACKGROUND

The State alleges that manufacturers of insulin and certain PBMs engaged in an "Insulin Pricing Scheme" that involved a conspiracy among insulin manufacturers and PBMs to inflate the price of certain insulin products. Premised on this alleged scheme, the State asserts two causes of action: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and (2) unjust enrichment. Compl. ¶¶ 483–500.

The State does not allege that Evernorth has a presence in Illinois. The State acknowledges that Evernorth, which used to be known as Express Scripts Holding Company, is headquartered in Missouri and incorporated in Delaware. Compl. ¶ 119. The State does not allege that Evernorth has a registered agent in Illinois, that Evernorth was served here, that Evernorth entered into any contracts with the State, or that Evernorth has conducted any business whatsoever within the state of Illinois.

## LEGAL STANDARD

Because Illinois' long-arm statute is coextensive with the limits of due process, "the state statutory and federal constitutional requirements merge." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017).

As constrained by due process, personal jurisdiction comes in two forms: general and specific. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779–80 (2017). General (all-purpose) jurisdiction exists only when the defendant is "at home" in the forum. *Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014). Specific (case-linked) jurisdiction exists only when the plaintiffs' claims "arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers*, 137 S. Ct. at 1780 (quotations omitted).

At the pleading stage, the plaintiff bears the burden of making a prima facie showing of personal jurisdiction. *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004). In evaluating whether a prima facie case is pleaded, only well pleaded facts of plaintiff's complaint must be accepted as true. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782–83 (7th Cir. 2003).

## ARGUMENT

Illinois has not alleged facts that give rise to a plausible basis for general or specific personal jurisdiction over Evernorth. Accordingly, Evernorth is not subject to jurisdiction here and should be dismissed.

### A. Evernorth is Not Subject to General Jurisdiction in Illinois Because Illinois is Not Its Home.

General jurisdiction exists only where the defendant has "continuous and systematic" contacts with the state, rendering it "at home" in the state. *Daimler*, 571 U.S. at 137–39. A

corporation is typically "at home" in its "place of incorporation and its principal place of business." *Id.* at 137–38 & n.19.

Evernorth is a Delaware corporation with its principal place of business in Missouri. Compl. ¶ 119. The State has not alleged "an exceptional case" whereby Evernorth's alleged affiliations with Illinois "are so constant and pervasive as to render it essentially at home in the forum [state]." *Daimler*, 571 U.S. at 139 n.19, 122. As such, the Court cannot exercise general personal jurisdiction over Evernorth.

**B.      Evernorth is Not Subject to Specific Personal Jurisdiction Because the State Does Not Allege Any Evernorth-Specific Contacts With the State.**

Specific jurisdiction exists only when the particular claims to be litigated arise out of or relate to the defendant's own contacts with the forum state. *See Bristol-Myers*, 137 S. Ct. at 1781; *see also Walden v. Fiore*, 134 S. Ct. 1115, 1121 & n. 6 (2014). The inquiry is sharply defendant-focused and defendant-specific: the relationship between the defendant's suit-related conduct and the forum state "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. at 284 (emphasis in original). To satisfy due process, such contacts must demonstrate "purposeful availment" of the privileges of conducting activities in the forum or "purposeful direction" of its activities toward Illinois. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Here, the State does not allege that Evernorth purposefully directed any activities toward Illinois. It does not allege that Evernorth has any offices in Illinois, entered into any contracts with the State, or even entered into any contract with any citizen of Illinois. The Complaint does not allege any conduct in Illinois or purposefully directed toward Illinois – the State does not even allege that Evernorth has a registered agent in Illinois. Compl. ¶ 120.

Rather than allege that Evernorth provided PBM services, negotiated or received rebates, or engaged in any activity giving rise to the Complaint (it did not), the State appears to advance two, attenuated, theories of jurisdiction: jurisdiction based on alleged downstream effects in Illinois and jurisdiction based on imputed contacts of Evernorth's subsidiaries or affiliates. Both fail.

The State first alleges that Evernorth's participation in the alleged scheme—outside of Illinois—"has had a direct effect in Illinois and damaged diabetics and payors in Illinois." Compl. ¶ 122. That is insufficient to establish specific personal jurisdiction. The State must allege that Evernorth "purposefully direct[ed] its activities toward the forum" by (1) "intentional conduct," (2) "expressly aimed at the forum state," that (3) caused harm that Evernorth knew was likely to be suffered in the forum state. *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010). The State makes no specific allegations that Evernorth directed any conduct specifically at Illinois; it alleges only that its conduct outside of Illinois may have incidentally impacted the state. That is not enough. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) ("contacts must be the defendant's own choice and not random, isolated, or fortuitous." (citation omitted)); *Hanson*, 357 U.S. at 253 (defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State."). In short, the State has not only failed to allege that Evernorth has "minimum contacts" with Illinois, *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); it has failed to allege that Evernorth has any direct contacts with Illinois at all.

The State's second theory appears to be that Evernorth can be subject to personal jurisdiction because it is the parent company—i.e., it owns the shares—of subsidiaries subject to Illinois jurisdiction. *See* Compl. ¶¶ 123, 127. But the Court cannot bootstrap its ability to exercise jurisdiction over Evernorth's subsidiaries or affiliates for the purpose of exercising jurisdiction

over Evernorth absent allegations sufficient to pierce the corporate veil. *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000) ("we hold that constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary."); *Integrated Bus. Info. Serv. (Proprietary) Ltd. v. Dun & Bradstreet Corp.*, 7114 F.Supp. 296, 299 (N.D. Ill. 1989) (explaining that generally "[i]n the absence of any evidence that can justify piercing the corporate veil, the mere relationship of a parent corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the jurisdiction of the forum state.") (internal quotations and citation omitted). The Complaint lacks sufficient allegations of this sort. While the Complaint includes generalized allegations of shared directors, stock ownership, and high-level involvement in the policies and business decisions of its subsidiaries, Compl. ¶ 156, these allegations demonstrate nothing more than the standard parent-subsidiary relationship.

Recent authority from a federal court involving nearly identical allegations further supports dismissal. The State of Mississippi also alleged an "Insulin Pricing Scheme" against the insulin manufacturers and the PBM Defendants, including their parent companies. Third Am. Compl., *The State of Mississippi ex rel. Lynn Fitch, Attorney General v. Eli Lilly Co.*, No. 3:21-cv-00674-KHJ-MTP (S.D. Miss. Feb. 17, 2022), ECF No. 71. United Health Group ("UnitedHealth"), the parent company of the PBM OptumRx, Inc., and other affiliates and subsidiaries of UnitedHealth, moved to dismiss for lack of personal jurisdiction, and the court granted the motion as to those defendants. *See* Order, *The State of Mississippi ex rel. Lynn Fitch, Attorney General v. Eli Lilly*

*Co., et al.*, No. 3:21-cv-00674-KHJ-MTP (S.D. Miss. Aug. 15, 2022), ECF No. 112.[1]  As to the

parent company, UnitedHealth, the State of Mississippi failed to allege "that United Health does

business in Mississippi."  Ex. A at 6.  In light of these allegations, Judge Kristi H. Johnson found

that the State failed to identify any act where UnitedHealth "purposefully availed itself of the

privilege of conducting activities [in Mississippi]."  *Id.* at 12 (alterations in original).  As a result,

Judge Johnson dismissed UnitedHealth for lack of personal jurisdiction.  *See id.*  With nearly

identical allegations (or lack thereof) involving a PBM's parent company, the same result is

warranted as to Evernorth—another parent company of a PBM.

## **CONCLUSION**

The Court should dismiss Evernorth from this case for lack of personal jurisdiction.


Date: March 6, 2023                                  Respectfully submitted,

                                                     */s/ Beth Herrington*
                                                     Beth Herrington (#624547)
                                                     Morgan, Lewis & Bockius LLP
                                                     110 North Wacker Drive
                                                     Chicago, Illinois 60606
                                                     Tel: (312) 324-1000
                                                     beth.herrington@morganlewis.com

                                                     -and-

                                                     Jason R. Scherr (*pro hac vice*)
                                                     Patrick A. Harvey (#995570)
                                                     Morgan, Lewis & Bockius LLP
                                                     1111 Pennsylvania Avenue, NW
                                                     Washington, DC 20004
                                                     Tel: (202) 739-3000
                                                     jason.scherr@morganlewis.com
                                                     patrick.harvey@morganlewis.com

---

[1]      For the Court's convenience, a copy of the order, which is not yet available on Westlaw or
Lexis, is attached hereto as **Exhibit A**.

*Attorneys for Evernorth Health, Inc. (formerly Express Scripts Holding Company), Express Scripts, Inc., Express Scripts Administrators, LLC, ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., and Medco Health Solutions, Inc.*

# EXHIBIT A

Case 3:23-md-03080-BRM-RLS   Document 190-81   Filed 05/12/24   Page 2 of 28   PageID: 4524

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

THE STATE OF MISSISSIPPI, EX REL.                    PLAINTIFF
LYNN FITCH, ATTORNEY GENERAL

V.                          CIVIL ACTION NO. 3:21-CV-674-KHJ-MTP

ELI LILLY AND COMPANY, et al.,                    DEFENDANTS

ORDER

Before the Court is Defendants Optum, Inc., OptumInsight, Inc.

("OptumInsight"), OptumRx Holdings, LLC ("ORx Holdings"), and UnitedHealth

Group, Inc.'s ("UnitedHealth") motion to dismiss. [87]. For the following reasons, the

Court grants the motion.

I.      Facts and Procedural History

This case is about insulin drug prices. Plaintiff, The State of Mississippi, ex

rel. Lynn Fitch, its Attorney General, ("the State") originally sued in Hinds County

Chancery Court, alleging that the "Manufacturer Defendants"[1] conspired with the

"Pharmacy Benefit Manager Defendants" (also called, "PBM Defendants")[2] to

---

[1] Eli Lilly and Company, Novo Nordisk, Inc., and Sanofi-Aventis U.S. LLC, collectively.
[2] CVS Health Corporation, CVS Pharmacy, Inc., Caremark Rx, L.L.C., Caremark, L.L.C.,
CaremarkPCS Health, L.L.C., Evernorth Health, Inc., Express Scripts, Inc., Express Scripts
Administrators, L.L.C., ESI Mail Pharmacy Services, Inc., Express Scripts Pharmacy, Inc.,
UnitedHealth Group, Inc., Optum Inc., and OptumRx, Inc., collectively.

artificially inflate the price of insulin drugs and other diabetes medications. *See* Second Amend. Compl. at ¶ ¶ 5–16.

The State alleges that the Manufacturer Defendants manufacture the "vast majority of insulins and other diabetic medications available in Mississippi." Third Amend. Compl. [71] at ¶ 5. Likewise, the State alleges that the PBM Defendants "manage the pharmacy benefits for the vast majority of individuals in Mississippi." *Id.* at ¶ 6. As part of this work, the State alleges, the PBM Defendants "establish standard formulary offerings" that determine which of the Manufacturer Defendants' diabetes medications are covered "by nearly every payor in Mississippi." *Id.* at ¶¶ 6–7. The State alleges that the Manufacturer Defendants and the PBM Defendants engaged in an "Insulin Pricing Scheme" to increase each type of Defendant groups' profits. *Id.* at ¶¶ 12, 19.

The heart of the "Insulin Pricing Scheme" as alleged by the State is that the Manufacturer Defendants "artificially and willingly" raise their prices to gain formulary access for their respective diabetic treatments from the PBM Defendants. *Id.* at ¶ 20. The State alleges that the Manufacturer Defendants pay a "significant, yet undisclosed, portion of that false list price back to the PBM [Defendants]." *Id.* at ¶ 20. The reason this system exists, the State alleges, is so the Manufacturer Defendants can pay rebates to the PBM Defendants in exchange for formulary access without sacrificing their profit margin. *Id.* at ¶ 23. The PBM Defendants in turn retain a significant percentage of these undisclosed rebates, while using the false list

price to generate additional profits from their own pharmacies and pharmacies in their networks. *Id.* at ¶ 24.

The State alleges that the Manufacturer Defendants' prices "have become so untethered from the actual prices realized by either Defendant group" that they "constitute a false price." *Id.* at ¶ 21. The State alleges, then, the price of certain insulins has increased by more than 1000% since 2003—the same year in which the PBM Defendants "began their rise to power." *Id.* at 278. As a result, the State sued the Defendants, alleging that it has been overcharged millions of dollars per year in its position as a payor for the at-issue drugs through its employee health plans and as a purchaser of the drugs for its state-run facilities. *Id.* at ¶ 28. The State also sued to protect its "sovereign interest in the health and economic interests of its residents, its own interests, and the integrity of its marketplace." *Id.* at ¶ 39.

The State brought claims against the Defendants for violating the Mississippi Consumer Protection Act ("MCPA"), common-law conspiracy, and unjust enrichment. *Id.* at ¶¶ 1, 518–551. Defendants UnitedHealth, Optum, Inc., ORx Holdings, and OptumInsight contend that the State only sued them in their capacity as OptumRx's parent companies. Mem. in Support of Mot. to Dismiss [88] at 1. They assert that the State failed to establish personal jurisdiction under both the Mississippi long arm statute and the purposeful availment prong of constitutional due process.

II.   Standard

Under Rule 12(b)(2), a lawsuit may be dismissed for a lack of personal jurisdiction. *See* Fed. R. Civ. 12(b)(2). "When a nonresident defendant moves to

3

dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Unified Brands, Inc. v. Teders*, 868 F. Supp. 2d 572, 577 (S.D. Miss. 2012) (quoting *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996)). The Court must take the "allegations contained in the complaint, except insofar as controverted by opposing affidavits," as true. *Colwell Realty Invs., Inc. v. Triple T Inns of Az., Inc.*, 785 F.2d 1330, 1333 (5th Cir. 1986). If the Court does not rely on an evidentiary hearing but decides the motion based on the pleadings and exhibits on file, the plaintiff need only present a prima facie case of personal jurisdiction. *DeCarlo v. Bonus Stores, Inc.*, 413 F. Supp. 2d 770, 775 (S.D. Miss. 2006) (citing *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332 (5th Cir. 1982)). When deciding whether a prima facie case has been established, all conflicts in the facts alleged in the complaint and opposing affidavits must be resolved in the plaintiff's favor. *DeCarlo*, 413 F. Supp. 2d at 775 (citing *Thompson v. Chrysler Motors, Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985) and *DeMelo v. Toche Marine Inc.*, 711 F.2d 1260, 1270 (5th Cir. 1983)).

"The prima-facie-case requirement does not require the court to credit conclusory allegations." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

III.    Analysis

"A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over the defendant; and (2) exercise of such jurisdiction by the forum state

4

is consistent with due process under the United States Constitution." *Mink v. AAAA Dev., LLC*, 190 F.3d 333, 335 (5th Cir. 1999).

A. Mississippi's Long Arm Statute

Mississippi's long-arm statute provides,

Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57.

Mississippi courts have interpreted the statute to contain three components: contract, tort, and "doing-business." *Fitch v. Wine Express*, Inc., 297 So. 3d 224, 228 (Miss. 2020). In other words, to exercise jurisdiction, the Court must find that: (1) the Moving Defendants entered into a contract to be performed, in whole or in part, in Mississippi, (2) the Moving Defendants committed a tort, in whole or in part, in Mississippi, or (3) the Moving Defendants were "doing business" in Mississippi. *Farani v. File*, 565 F. Supp. 3d 804, 808 (S.D. Miss. 2021). Only one of these components need be present to confer personal jurisdiction under the statute. *Id.*

The Moving Defendants assert that the State provided no actual allegations that UnitedHealth, Optum, Inc., ORx Holdings, or OptumInsight contracted with any Mississippi resident, committed a tort in Mississippi, or did business in Mississippi. [88] at 5–6. The State contends that each Moving Defendant committed a tort and

does business in Mississippi. [102] at 9–11. The Court addresses the long-arm statute's applicability for each Moving Defendant.

### 1. UnitedHealth

UnitedHealth is a Delaware corporation with its principal place of business in Minnesota. [71] at ¶ 189. The State alleges that UnitedHealth "was directly involved in the conduct that caused the Insulin Pricing Scheme and as a result had a direct effect in Mississippi and damaged diabetic Mississippians and the State." *Id.* at ¶ 193. Although the Amended Complaint alleges that United Health met with executive teams from each Manufacturer Defendant to discuss "strategic initiatives" and "prioritized opportunities," the State fails to allege facts to support that these meetings were in furtherance of the alleged Insulin Pricing Scheme. *Id.* at ¶ 197. The State therefore fails to allege that UnitedHealth committed a tort in Mississippi.

The State also fails to allege that UnitedHealth does business in Mississippi. Although the State alleges that UnitedHealth has an "enterprise-wide commitment to Mississippi" with over "500 Mississippi-based employees," the State does not allege to which corporate entity these employees belong. It is not enough to simply rest on the use of a collective term, such as "Defendants," in the allegations to determine personal jurisdiction. *Smith v. Antler Insanity, LLC*, 58 F. Supp. 3d 716, 723 (S.D. Miss. 2014) (citing *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 793 (5th Cir. 2007) (citation omitted)). Here, the State fails to differentiate between each Moving Defendant's role in employing Mississippi residents. The State

fails to establish that UnitedHealth did business in Mississippi for the purposes of the long-arm statute.

### 2. Optum, Inc.

Optum, Inc. is a Delaware corporation with principal place of business in Minnesota. [71] at ¶ 200. The State alleges that Optum, Inc. is "directly involved in company policies that inform its PBM services and formulary construction, including with respect to the at-issue drugs and related to the Insulin Pricing Scheme." *Id.* at ¶ 202. The State also alleges that other companies in the UnitedHealth corporate family report to Optum, Inc. to "inform the at-issue formulary construction and mail order activities." *Id.* at ¶ 203. The State does not allege facts explaining how Optum, Inc.'s involvement in company policy necessarily constitutes involvement in the alleged Insulin Pricing Scheme. Nor does the State allege facts suggesting that Optum, Inc. did business in Mississippi.

These factual allegations do not allege a contract to be performed in Mississippi, a tort committed in Mississippi, or that Optum, Inc. did business in Mississippi. *See Farani*, 565 F. Supp. at 808. The Court therefore holds that the long-arm statute does not confer jurisdiction as to Optum, Inc.

### 3. ORx Holdings

ORx Holdings is a Delaware limited liability corporation with its principal place of business in California. [71] at ¶ 210. The State alleges that ORx Holdings "provides pharmacy benefit management services through its subsidiaries to various health insurance entities in Mississippi." *Id.* at ¶ 211. This is the extent of the State's

allegations about ORx Holdings individually. The Court finds that these allegations do not allege that ORx Holdings entered or performed a contract, committed a tort, or did business in Mississippi. The Court therefore finds that Mississippi's long-arm statute does not confer jurisdiction as to ORx Holdings.

### 4. OptumInsight

OptumInsight is a Delaware corporation with its principal place of business in Minnesota. *Id.* at ¶ 205. It is registered to do business in Mississippi and holds an active Third-Party Administrator license in Mississippi. *Id.* at ¶¶ 206–7. OptumInsight allegedly "provides data, analytics and consulting to companies with[in] the healthcare industry, including the Manufacturer Defendants." *Id.* ¶ 208. The State alleges that OptumInsight "coordinated directly with Manufacturer Defendants in furtherance of the Insulin Pricing Scheme" and "advised the Manufacturers with regard to the profitability of the Insulin Pricing Scheme to the benefit of all Defendants." *Id.* at ¶ 209.

A defendant is not necessarily subject to Mississippi's long-arm statute because it is licensed to do business in Mississippi. *See Thrash Aviation, Inc. v. Kelber Turbine, Inc.*, 72 F. Supp. 2d 709, 715 (S.D. Miss. 1999). Rather, to meet the "doing business" prong of the long-arm statute, a defendant's presence in Mississippi must be "of such a continuing and substantial nature" and "for the purpose of realizing a pecuniary benefit or otherwise accomplishing an object." *Id.* The State fails to provide facts that any of the alleged "coordination" or "advising" took place in Mississippi, that OptumInsight conducted business in Mississippi that was "continuing and

substantial," or that it tried to "realize a pecuniary benefit" or "otherwise accomplish an object" in Mississippi. *See id.* The Court therefore finds that the State failed to allege facts that OptumInsight did business in Mississippi.

Fraud is a tort in Mississippi, but the State must allege facts with particularity for the Court to find personal jurisdiction under the long-arm statute. Pursuant to Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Generally, this requires the plaintiff to plead "the who, what, when, where, and how" of the fraud. *Benchmark Elecs. V. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

The State fails to allege, however, how, when, or where of any alleged fraud occurred by OptumInsight specifically. As a result, the Court finds that the State did not allege facts sufficient to confer jurisdiction under the long-arm statute for OptumInsight.

### B.  Due Process under the United States Constitution

Even if the long-arm statute provided the Court with personal jurisdiction over the Moving Defendants, exercising jurisdiction would not comport with federal due process. "The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Mink*, 190 F.3d at 336 (quoting *Latshaw v. Johnston*, 167 F.3d

208, 211 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945))).

Personal jurisdiction is either general or specific. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). "If a defendant's contacts with the forum state are continuous and systematic, a court may exercise general jurisdiction over any action brought against that defendant, regardless of whether the action is related to the forum contacts." *Id.* (internal quotations and citation omitted). "If a defendant has relatively few contacts, a court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum." *Id.* (internal quotations and citation omitted). Only specific jurisdiction is at issue.

Courts in the Fifth Circuit may exercise specific personal jurisdiction when three conditions are met. First, the nonresident defendant must "purposefully avail itself of the privilege of conducting activities in the forum state." *Johnson v. TheHuffingonPost.com, Inc.*, 21 F.4th 314, 317 (5th Cir. 2021) (cleaned up) (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)). Second, the plaintiff's claim "must arise out of or relate to" those purposeful contacts. *Id.* Third, the Court's exercise of jurisdiction must be "fair and reasonable" to the nonresident defendant. *Id.* citing *Seiferth*, 472 F.3d at 271.

The Moving Defendants solely assert that they did not purposefully avail themselves in Mississippi. "The analysis here begins and ends with the minimum-contacts question." *Rush v. STIHL, Inc.*, 2020 WL 1276103, at *2 (S.D. Miss. Mar. 17, 2020).

For the Court to exercise specific jurisdiction, the defendant must purposefully avail itself in the forum state by having minimum contacts; these contacts must not be "random, isolated, or fortuitous." *Ford Motor Co.*, 141 S. Ct. at 1025 (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)). Rather, the contacts must stem from the defendant's choice to "reach[] out beyond" its home, such as "exploiting a market" in the forum state or entering a contractual relationship there. *Id.* (cleaned up) (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

To determine whether a defendant has "minimum contacts" with a forum state, the Court must identify "some act whereby it purposely availed itself of the privilege of conducting activities there, thus invoking the benefits and protections of its laws." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469–70 (5th Cir. 2006) (cleaned up). The defendant's actions must show that it "reasonably anticipates being haled into court" in Mississippi. *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The State asserts that the Court should apply the "effects test" established in *Calder v. Jones*, 465 U.S. 783, 788–89 (1984). For the reasons stated below, however, the Court finds that the State inadequately alleges the "effects" caused by each individual Moving Defendant. And "[e]ach defendant's contacts with the forum State must be assessed individually." *Id.* at 790.

The Court addresses each Moving Defendants' minimum contacts in turn.

1. UnitedHealth

11

Considering all allegations in the State's Amended Complaint, and for the reasons stated in III.A.1, the Court finds that UnitedHealth has not purposefully availed itself in Mississippi by having minimum contacts. The State does not identify "some act whereby [UnitedHealth] purposely availed itself of the privilege of conducting activities [in Mississippi], thus invoking the benefits and protections of its laws" for specific jurisdiction in this case. *See Luv N' Care, Ltd.*, 438 F.3d at 469–70.

The State alleges that UnitedHealth once sued in Mississippi, alleging that it "contracted with Mississippi residents and directly engaged in PBM business and programs in Mississippi related to 'advancing the health and well-being of individuals and communities,' and that UnitedHealth['s] business interests in Mississippi included providing PBM services to the State." [71] at ¶ 199. The State contends that this lawsuit is evidence that UnitedHealth availed itself of Mississippi laws. The Court disagrees. Taking the State's allegations of the prior complaint's contents as true, the State does not allege facts to support that these contacts were not "random, isolated, or fortuitous." *See Ford Motor Co.*, 141 S. Ct. at 1025. Just because a defendant sues in a Mississippi court does not mean that the defendant itself "reasonably anticipates being haled into court" in Mississippi. *See World Wide Volkswagen Corp*, 444 U.S. at 297.

The Court finds that it does not have personal jurisdiction over UnitedHealth because the long-arm statute does not apply, and the State's allegations do not show that UnitedHealth has sufficient minimum contacts with Mississippi.

12

### 2. Optum, Inc.

Considering all allegations in the State's Third Amended Complaint, and for the reasons stated in III.A.2, the Court finds that Optum, Inc. has not purposefully availed itself in Mississippi through minimum contacts. There are no allegations in the State's Amended Complaint that support Optum, Inc. had any contact with Mississippi or had any participation in the alleged Insulin Pricing Scheme. *See* [71] at ¶¶ 200–204. The Court finds that it does not have personal jurisdiction over Optum, Inc. because the long-arm statute does not apply, and the State's allegations do not show that Optum, Inc. has minimum contacts with Mississippi.

### 3. ORx Holdings

Considering all allegations in the State's Third Amended Complaint, and for the reasons stated in III.A.3, the Court finds that ORx Holdings has not purposefully availed itself in Mississippi through minimum contacts. The State does not allege that ORx Holdings had any contacts in Mississippi or engaged in the alleged Insulin Pricing Scheme in any way. *See id.* at ¶¶ 210–211.

### 4. OptumInsight

Considering all allegations in the State's Third Amended Complaint, and for the reasons stated in III.A.4, the Court finds that OptumInsight has not purposefully availed itself in Mississippi through minimum contacts. Aside from holding a Mississippi Third-Party Administrator license and being registered to do business in Mississippi, the State does not allege facts that ORx Holdings had any actual contact with Mississippi that was not "random, isolated, or fortuitous." *See Ford Motor Co.*,

141 S. Ct. at 1025. The Court finds that it does not have personal jurisdiction over OptumInsight because the long-arm statute does not apply, and the State's allegations do not show that OptumInsight has minimum contacts in Mississippi.

C. Veil Piercing

The State argues that even if none of the Moving Defendants individually are subject to personal jurisdiction, the Court should pierce the corporate veil and attribute OptumRx, Inc.'s contacts to each Moving Defendant, and each Moving Defendant's alleged contacts to each other, as alter egos. [102] at 13.

"It is a general principle of corporate law deeply ingrained in our economic legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotations a citation omitted). "Mississippi case law generally favors maintaining corporate entities and avoids attempts to pierce the corporate veil." *Canadian Nat. Ry. Co. v. Waltman*, 94 So. 3d 1111, 1115 (Miss. 2012) (citation omitted).

"[A] plaintiff's complaint alleging a piercing of the corporate veil will survive a Rule 12(b)(2) motion to dismiss only when the complaint sets forth factual allegations indicating: (1) some frustration of expectations regarding the party to whom he looked for performance; (2) the flagrant disregard of corporate formalities by the defendant corporation and its principals; and (3) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder." *Canadian Nat. Ry. Co. v. Waltman*, 94 So. 3d 1111, 1116–16 (Miss. 2012); *see also Rush v. STIHL, Inc.*, 3:17-

14

cv-915-DPJ-FKB, 2020 WL 1276103, at *7 (quoting *Waltman*, 94 So. at 1115). "In order to make a prima facie case of jurisdiction, the plaintiff must make sufficiently particularized allegations demonstrating the applicability of the piercing doctrine to the facts of the case." *Id.*

The Court finds that the State failed to make such particularized allegations. The State does not particularly allege any frustration of expectation of performance, a flagrant disregard for corporate formalities by any of the Moving Defendants, or a demonstration of fraud by any Moving Defendant.

At most, the State alleges that the Moving Defendants and OptumRx, Inc. share corporate officers, company policies, and stock ownership. [71] at ¶¶ 216–17. "The conclusory allegation that the parent companies exercise substantial control over [subsidiary companies] . . . does not make out a prima facie showing of an alter-ego relationship." *Alexander v. Global Tel Link Corp.*, 2018 WL 8997440, at *4 (S.D. Miss. May 14, 2018). "The Fifth Circuit has noted that 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between . . . corporations." *Samples v. Vanguard Healthcare, LLC*, 2008 WL 4371371, at *3 (N.D. Miss. Sept. 18, 2008) (citing *Walker v. Newgent*, 583 F.2d 163, 167 (5th Cir. 1978). "Moreover, generally our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes." *Id.* (cleaned up) (citing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983). The State makes no such allegations.

15

The next factors are also relevant in determining whether a corporation constitutes an instrumentality or alter ego:

> (1) The parent corporation owns all or a majority of the capital stock of the subsidiary. (2) The parent and subsidiary corporations have common directors or officers. (3) The parent corporation finances the subsidiary. (4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation. (5) The subsidiary has grossly inadequate capital. (6) The parent corporation pays the salaries or expenses or losses of the subsidiary. (7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation. (8) In the papers of the parent corporation and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division. (9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation. (10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*North American Plastics, Inc. v. Inland Shoe Mfg. Co., Inc.*, 592 F. Supp. 875, 879 (N.D. Miss. 1984) (citation omitted). Again, the State fails to allege facts supporting that each Moving Defendant is an alter ego of each other or OptumRx, Inc. And the State fails to meet its added burden under Mississippi law of providing particularized allegations detailing frustration of expectation of performance, flagrant disregard for corporate formalities by any of the Moving Defendants, or demonstration of fraud by the Moving Defendants.

As a result, the Court finds it is inappropriate to pierce the corporate veil. The Court finds it lacks personal jurisdiction over all Moving Defendants.

IV.    Conclusion

This Court has considered all of parties' arguments. Those the Court does not address would not have changed the outcome. The Court GRANTS Moving Defendants' Motion to Dismiss [87].

SO ORDERED AND ADJUDGED this the 15th day of August, 2022.

s/ <em>Kristi H. Johnson</em>
UNITED STATES DISTRICT JUDGE