# IIN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| THE STATE OF ILLINOIS ex rel., KWAME RAOUL, ATTORNEY GENERAL<br><br>*Plaintiff,*<br><br>v.<br><br>ELI LILLY AND COMPANY, *et al.*<br><br>*Defendants.* | Civil Action No. 1:23-cv-170 |

# CVS HEALTH CORPORATION'S REPLY MEMORANDUM FURTHER SUPPORTING ITS RULE 12(b)(2) MOTION TO DISMISS <u>FOR LACK OF PERSONAL JURISDICTION</u>

## INTRODUCTION

The State concedes that CVS Health Corporation is not subject to general personal jurisdiction in Illinois. *See* Opp'n 13 n.11. The State's Complaint contains no well-pleaded allegations tying CVS Health to the State's claims. And the State disclaims any attempt to impute the alleged conduct of other CVS or Caremark entities to CVS Health.

The State nevertheless insists that the Court has specific personal jurisdiction over CVS Health. None of its arguments survives scrutiny. The State alleges that CVS Health is subject to specific personal jurisdiction because it discussed its subsidiaries' PBM activities in its regulatory filings; because subsidiaries' executives met with insulin manufacturers to discuss insulin pricing; because a trade association representing PBMs identified CVS Health as a member; and because board members of that trade organization include executives of CVS Caremark and Caremark Rx, L.L.C. who also are executives of CVS Health. Those allegations, even if true, could not possibly subject CVS Health to specific personal jurisdiction in this Court because they have nothing to do with Illinois or this dispute. And, in any event, the State utterly fails to rebut CVS Health's declaration establishing that it is a holding company that does not perform PBM or retail pharmacy services.

The State has failed to meet its burden of establishing personal jurisdiction over CVS Health. Just as a district court in Mississippi did in an identical situation with another parent entity of a PBM, the Court should dismiss the State's claims against CVS Health. *See* Ex. A, Order, *State of Mississippi ex rel. Lynn Fitch, Attorney General v. Eli Lilly Co., et al.*, No. 3:21-cv-00674-KHJ-MTP (S.D. Miss. Aug. 15, 2022), ECF No. 112.

## ARGUMENT

### I. THE MISCONSTRUES THE LEGAL STANDARD.

The State argues that it may defeat a motion to dismiss for lack of personal jurisdiction by making "a *prima facie* showing of jurisdictional facts." Opp'n 7 (quoting *Felland v. Clifton*, 682

F.3d 665, 672 (7th Cir. 2012)).  But once a defendant submits a declaration that contradicts the plaintiff's jurisdictional allegations, the plaintiff must *produce evidence* supporting jurisdiction. *See Rawlins v. Select Specialty Hosp. of Nw. Ind., Inc.*, 2014 WL 1647182, at *4 (N.D. Ill. Apr. 23, 2014).

Together with its opening brief, CVS Health submitted the declaration of Thomas Moffatt, the Corporate Secretary of CVS Health's wholly owned subsidiary, CVS Pharmacy, Inc.  Mr. Moffatt's declaration establishes that CVS Health has no material connection to Illinois or this dispute.  *See* Dkt. 53-1, Moffatt Decl. ¶¶ 5-6.  In light of Mr. Moffatt's declaration, the State may not rely on a mere "*prima facie* showing of jurisdictional facts."  *Felland*, 682 F.3d at 672.  It must produce evidence supporting jurisdiction.  For the reasons discussed below, the State has failed to meet that burden.

## II.   THE STATE FAILS TO ESTABLISH THAT CVS HEALTH IS SUBJECT TO SPECIFIC JURISDICTION.

The State cannot establish that the exercise of specific personal jurisdiction would be constitutional under the stringent "effects test," Opp'n 13-21.  As the Supreme Court explained in *Walden v. Fiore*, 571 U.S. 277, 290 (2014), the "effects test" does *not* give rise to personal jurisdiction based on "where the plaintiff experienced a particular injury or effect."  Under this test, "the proper question" is "whether the *defendant's conduct* connects him to the forum in a meaningful way."  *Id.* (emphasis added).  Accordingly, personal jurisdiction can be established under the "effects test" only when the defendant *expressly aims* its actions at the forum state with the knowledge that it would cause harm to the plaintiff there.  *In re Sheehan*, 48 F.4th 513, 524-25 (7th Cir. 2022) (citing *Mobile Anesthesiologists Chi., L.L.C. v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 445-46 (7th Cir. 2010)).  Indeed, "'expressly aiming' remains the

crucial requirement when a plaintiff seeks to establish personal jurisdiction under *Calder*." *Id.* (citation omitted).  The State cannot satisfy that requirement here.

## A.    The State's Allegations are Not Entitled to a Presumption of Truth.

CVS Health's evidence confirms that (1) it "is a holding company" that "is traded on the New York Stock Exchange" and files "reports with the Securities and Exchange Commission" and that "has no operations unrelated to its status as a holding company," Moffatt Decl. ¶ 4; (2) it has no operations and conducts none of its limited business functions in Illinois, *id*. ¶ 5; (3) it "has no direct involvement in directing, managing, or supervising the operations or the employees of any of its direct or indirect subsidiary companies," including the PBM entity, Caremark Rx, L.L.C., *id*. ¶ 6; and (4) it is "separate and distinct" from Caremark Rx, L.L.C., CaremarkPCS Health, L.L.C., and the other subsidiary entities that have been sued here, *id*. ¶ 7.  On this record, dismissal of CVS Health is warranted.

The State's effort to rebut these dispositive facts fails.  The State (at 10 & n.8) argues that CVS Health actually performs a broad range of services unrelated to its status as a holding company based on Mr. Moffatt's LinkedIn profile.  *See* Opp'n Ex. 2.  But Mr. Moffatt is an employee and officer of other CVS Caremark entities, as the State itself concedes (at 8).  The State does not even attempt to establish that Mr. Moffatt performs the identified PBM functions *pursuant to his role at CVS Health*.

The State also (at 9-10, 15-16) tries to rebut Mr. Moffatt's declaration by citing three documents purportedly demonstrating that CVS Health is a member of PCMA.  (Opp'n Exs. 4-6).  To start, the State never explains how the mere fact of membership in PCMA is probative of anything, much less how it establishes that CVS Health was anything but a holding company.  Nor does the Complaint contain any allegations suggesting that CVS Health took any action through

the PCMA "expressly aimed" at Illinois. *In re Sheehan*, 48 F.4th at 525 (cleaned up).[1]  Even on their own terms, the documents the State identifies do not support a finding of specific personal jurisdiction.  Two of the documents (Opp'n Exs. 5, 6) are irrelevant because they refer generally to the "CVS Health" brand, not specifically the holding company CVS Health Corporation.  The only document identifying CVS Health Corporation is a corporate disclosure statement of PCMA from 2015.  Opp'n Ex. 4.  Even if this eight-year-old document of a third party were given any weight, the State has not established that mere membership in a trade organization, such as the PCMA, is inconsistent with CVS Health's status as a holding company.

The State's claim (at 6-7, 10-11, 17) that CVS Health executives met with insulin manufacturers is misleading.  As the State itself alleges, the purported CVS Health executives that it identifies also work for other entities—including entities that negotiate, and therefore have routine contact, with manufacturers.  There is no indication that any of those dual employees undertook any acts on behalf of *CVS Health*; indeed, Mr. Moffatt's declaration establishes otherwise.  Mr. Moffatt's declaration further shows that CVS Health is a holding company that does not itself interact with manufacturers or provide PBM services.  Moffatt Decl. ¶¶ 4-5.

Finally, the State's reliance (at 9 & n.6) on a declaration of an Assistant Secretary of CVS Pharmacy, Inc. named Melanie Luker is inexplicable because that exhibit supports CVS Health.  Opp'n Ex. 3.  Consistent with the evidence CVS Health introduced in support of this motion, Ms. Luker's declaration states that "CVS Health is a holding company" with "no direct involvement in the operation" of retail stores and pharmacies.  *Id.* ¶¶ 4, 6-7.

---

[1] The State's reference (at 10 n.9) to a settlement with the Department of Justice related to alleged prescription forgery has no bearing whatsoever on the State's allegations about insulin pricing.

## B.     The State's Allegations Fail on their Own Terms.

Even if Mr. Moffatt's declaration were not dispositive (it is), the State's allegations about CVS Health are insufficient to confer jurisdiction.  Notwithstanding the State's protestation (at 1) that it is not relying on CVS Health's status as a corporate parent, and its concession (at 1) that it does not try to pierce the corporate veil, its brief overwhelmingly relies on bare allegations seeking to hold CVS Health liable for alleged actions of its subsidiary PBMs and retail pharmacies, which are separate and distinct entities.  Opp'n 4-7, 9-18.  Consistent with the "deeply ingrained" principle of corporate law that a parent corporation is not liable for the acts of its subsidiaries, *United States v. Bestfoods*, 524 U.S. 51, 61 (1998), the State's allegations referring to the CVS Caremark entities or "PBM Defendants" generally should be disregarded.  The State's regurgitation of these allegations, which CVS Health already comprehensively addressed "paragraph-by-paragraph" (Opp'n 11) in its opening brief, changes nothing.

The State (at 11-13) accuses CVS Health of "omit[ting]" key allegations, but points to only seven paragraphs of its complaint, none of which is material.  Paragraph 105 reiterates the irrelevant point that CVS Health and its subsidiaries have an "overlap of executives and directors." *See Integrated Bus. Info. Serv. (Proprietary) Ltd. v. Dun & Bradstreet Co.*, 714 F. Supp. 296, 300-01 (N.D. Ill. Jan 18, 1989) (dismissing holding company that shared directors and officers with subsidiaries that did business in Illinois for lack of jurisdiction); *Graco, Inc. v. Kremlin, Inc.*, 558 F. Supp. 188, 191 n.3 (N.D. Ill. 1982) ("[C]ommon directors and officers of a parent and its subsidiary is not enough, by itself, to confer jurisdiction over a nonresident parent corporation." (citation omitted)).  Paragraphs 320-21 do not discuss CVS Health at all, and instead refer collectively to the "PBM Defendants."

Despite conceding that executives often serve as employees and officers of multiple CVS Caremark entities, the State misleadingly attributes statements by executives of multiple entities

5

to CVS Health.  *See* Opp'n 12-13 (citing paragraphs 319, 347, and 354).  Paragraph 319 contains allegations about Alan Lotvin, who was President of CVS Caremark, and Jon Roberts, who was CEO of Caremark Rx., L.L.C.  Compl. ¶ 105.  The State does not even allege that Mr. Lotvin or Mr. Roberts participated in the PCMA in their capacity as employees of *CVS Health*, as opposed to subsidiaries that provide PBM services.[2]  Paragraph 354 quotes part of congressional testimony provided by Thomas Moriarty, the Chief Policy and External Affairs Officer and General Counsel for CVS Health, while *omitting* key parts of his statement that demonstrate subsidiaries, not CVS Health, provide the at-issue services.  *See* https://www.congress.gov/116/meeting/house/109299/witnesses/HHRG-116-IF02-Wstate-MoriartyT-20190410.pdf (discussing services available to "Caremark members" and "CVS Pharmacy customers").  And the State's reliance (at 12) on paragraph 347 is downright misleading: that paragraph contains allegations about statements made about "*CVS Caremark*," not CVS Health.

Even accepting as true the State's allegations that CVS Health (as opposed to a subsidiary or affiliate PBM, retail pharmacy, or mail-order pharmacy) engaged in meetings with manufacturers or the PCMA, those allegations still would be insufficient because none of the alleged meetings occurred in, or had anything to do with, Illinois.  Such meetings therefore cannot establish the "crucial requirement" that CVS Health **expressly aimed** any suit-related conduct at the State.  *In re Sheehan*, 48 F.4th at 525.

---

[2] Notably, PCMA itself distinguishes between Mr. Lotvin's role at CVS Health and his role at CVS Caremark—and identifies CVS Caremark (not CVS Health) as the PBM subsidiary.  *See https://www.pcmanet.org/about/board-of-directors/alan-lotvin/* ("Alan Lotvin, M.D., is executive vice president of CVS Health, *and president of CVS Caremark, the company's pharmacy benefits management (PBM) business.*" (emphasis added)).

In light of Mr. Moffatt's declaration, the burden shifted to the State "to submit evidence showing that [CVS Health] conducts business in Illinois." *Rawlins*, 2014 WL 1647182, at *5. The State has not done so and cannot do so because CVS Health is a holding company and does not itself direct, manage, or supervise any PBM business conducted by subsidiaries. *See* Moffatt Decl. ¶¶ 4, 6-7. That should be dispositive here. CVS Health should be dismissed, and the State can simply proceed against the CVS Caremark entities that perform the PBM services at issue.

## III.    THE COURT SHOULD DENY JURISDICTIONAL DISCOVERY.

The State is not entitled to jurisdictional discovery. The State "must make a 'colorable' showing of personal jurisdiction before discovery is allowed." *Medline Indus., Inc. v. Diversey, Inc.*, 2020 WL 5763637, at *4 (N.D. Ill. Sept. 28, 2020); *see Sullivan v. Sony Music Ent.*, 2014 WL 5473142, at *5 (N.D. Ill. Oct. 29, 2014) (plaintiffs must make a "prima facie showing of personal jurisdiction before discovery should be permitted" (citation omitted)). Jurisdictional discovery is available only where the party seeking discovery establishes ambiguity in the "factual record." *Medline Indus.*, 2020 WL 5763637, at *4.

Here, CVS Health has provided evidence that it is a holding company and it has no operations unrelated to that status. Moffatt Decl. ¶ 4. The State's reliance on "unsupported assertions of personal jurisdictional" over CVS Health is insufficient to demonstrate a preliminary showing of jurisdiction or justify awarding even limited discovery. *Sullivan*, 2014 WL 5473142, at *5. The State (at 21) purports to seek through discovery "information that would further illuminate CVS Health's role in the Scheme and the corporate relationship or lack of corporate separateness between CVS Health and the CVS entities." Information about the "scheme" pertains to the *merits*, not jurisdiction, and information about CVS Health's corporate relationships is unwarranted in light of the State's concession that its "claims against CVS Health are not based on its status as a corporate parent, but on CVS Health's own conduct" and that "a corporate veil

argument . . . [is] not necessary to the Court's jurisdictional analysis." Opp'n 1. Discovery into CVS Health's subsidiaries therefore would "shed no light" on whether there is a basis for jurisdiction. *RGT Holdings, Inc. ex rel. Ticket Rsrv., Inc. v. Harmon*, 2017 WL 959020, at *4 (N.D. Ill. Mar. 13, 2017). There is no reason to grant wasteful discovery to allow the State to collect evidence about a legal theory it explicitly disclaimed. Allowing special jurisdictional discovery is particularly unwarranted given that the CVS Caremark entities have separately moved for dismissal under Rule 12(b)(6). If that motion is granted, there will be no need to engage in discovery, and if it is denied, discovery, including of jurisdictional facts, will proceed in the ordinary course.

There is no ambiguity here regarding the extent of CVS Health's contact with Illinois, and the State has had ample opportunity to submit evidence on that issue, but it failed to do so. Accordingly, the State's request for jurisdictional discovery should be denied.[3]

## CONCLUSION

The Court should dismiss the claims against CVS Health for lack of personal jurisdiction.

Dated: May 4, 2023

Respectfully submitted,

/s/ *R. Kennon Poteat III*
Enu Mainigi (*pro hac vice* forthcoming)
Craig Singer (*pro hac vice*)
R. Kennon Poteat III (*pro hac vice*)
A. Joshua Podoll (*pro hac vice*)
Daniel Dockery (*pro hac vice*)
**WILLIAMS AND CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
csinger@wc.com

---

[3] The Complaint already identifies specific subsidiaries of CVS Health that are alleged to be PBMs. *See* Compl. ¶¶ 95, 98, 103-04. None of those CVS Health subsidiaries have challenged personal jurisdiction.

kpoteat@wc.com
apodoll@wc.com
ddockery@wc.com

Kevin P. Shea
Elizabeth Z. Meraz
**Nixon Peabody LLP**
70 W. Madison, Suite 5200
Chicago, IL 60602
T: 312.977.4400
Firm ID: 43523
kpshea@nixonpeabody.com
ezmeraz@nixonpeabody.com

*Attorneys for CVS Health Corporation,*
*CaremarkPCS Health, L.L.C., Caremark Rx,*
*L.L.C., Caremark, L.L.C., and CVS*
*Pharmacy, Inc.*

Exhibit A

Case 2:23-cd-04292-BJWO674-KHS-MTP Document 1600045nt File01/06/24/23 15/24/23 Page 12 of 28 PageID 15991

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


THE STATE OF MISSISSIPPI, EX REL.                                    PLAINTIFF
LYNN FITCH, ATTORNEY GENERAL


V.                                    CIVIL ACTION NO. 3:21-CV-674-KHJ-MTP


ELI LILLY AND COMPANY, et al.,                                    DEFENDANTS


ORDER

Before the Court is Defendants Optum, Inc., OptumInsight, Inc.

("OptumInsight"), OptumRx Holdings, LLC ("ORx Holdings"), and UnitedHealth

Group, Inc.'s ("UnitedHealth") motion to dismiss. [87]. For the following reasons, the

Court grants the motion.

I.    Facts and Procedural History

This case is about insulin drug prices. Plaintiff, The State of Mississippi, ex

rel. Lynn Fitch, its Attorney General, ("the State") originally sued in Hinds County

Chancery Court, alleging that the "Manufacturer Defendants"[1] conspired with the

"Pharmacy Benefit Manager Defendants" (also called, "PBM Defendants")[2] to

---

[1] Eli Lilly and Company, Novo Nordisk, Inc., and Sanofi-Aventis U.S. LLC, collectively.
[2] CVS Health Corporation, CVS Pharmacy, Inc., Caremark Rx, L.L.C., Caremark, L.L.C.,
CaremarkPCS Health, L.L.C., Evernorth Health, Inc., Express Scripts, Inc., Express Scripts
Administrators, L.L.C., ESI Mail Pharmacy Services, Inc., Express Scripts Pharmacy, Inc.,
UnitedHealth Group, Inc., Optum Inc., and OptumRx, Inc., collectively.

artificially inflate the price of insulin drugs and other diabetes medications. *See* Second Amend. Compl. at ¶ ¶ 5–16.

The State alleges that the Manufacturer Defendants manufacture the "vast majority of insulins and other diabetic medications available in Mississippi." Third Amend. Compl. [71] at ¶ 5. Likewise, the State alleges that the PBM Defendants "manage the pharmacy benefits for the vast majority of individuals in Mississippi." *Id.* at ¶ 6. As part of this work, the State alleges, the PBM Defendants "establish standard formulary offerings" that determine which of the Manufacturer Defendants' diabetes medications are covered "by nearly every payor in Mississippi." *Id.* at ¶¶ 6–7. The State alleges that the Manufacturer Defendants and the PBM Defendants engaged in an "Insulin Pricing Scheme" to increase each type of Defendant groups' profits. *Id.* at ¶¶ 12, 19.

The heart of the "Insulin Pricing Scheme" as alleged by the State is that the Manufacturer Defendants "artificially and willingly" raise their prices to gain formulary access for their respective diabetic treatments from the PBM Defendants. *Id.* at ¶ 20. The State alleges that the Manufacturer Defendants pay a "significant, yet undisclosed, portion of that false list price back to the PBM [Defendants]." *Id.* at ¶ 20. The reason this system exists, the State alleges, is so the Manufacturer Defendants can pay rebates to the PBM Defendants in exchange for formulary access without sacrificing their profit margin. *Id.* at ¶ 23. The PBM Defendants in turn retain a significant percentage of these undisclosed rebates, while using the false list

price to generate additional profits from their own pharmacies and pharmacies in their networks. *Id.* at ¶ 24.

The State alleges that the Manufacturer Defendants' prices "have become so untethered from the actual prices realized by either Defendant group" that they "constitute a false price." *Id.* at ¶ 21. The State alleges, then, the price of certain insulins has increased by more than 1000% since 2003—the same year in which the PBM Defendants "began their rise to power." *Id.* at 278. As a result, the State sued the Defendants, alleging that it has been overcharged millions of dollars per year in its position as a payor for the at-issue drugs through its employee health plans and as a purchaser of the drugs for its state-run facilities. *Id.* at ¶ 28. The State also sued to protect its "sovereign interest in the health and economic interests of its residents, its own interests, and the integrity of its marketplace." *Id.* at ¶ 39.

The State brought claims against the Defendants for violating the Mississippi Consumer Protection Act ("MCPA"), common-law conspiracy, and unjust enrichment. *Id.* at ¶¶ 1, 518–551. Defendants UnitedHealth, Optum, Inc., ORx Holdings, and OptumInsight contend that the State only sued them in their capacity as OptumRx's parent companies. Mem. in Support of Mot. to Dismiss [88] at 1. They assert that the State failed to establish personal jurisdiction under both the Mississippi long arm statute and the purposeful availment prong of constitutional due process.

## II.   Standard

Under Rule 12(b)(2), a lawsuit may be dismissed for a lack of personal jurisdiction. *See* Fed. R. Civ. 12(b)(2). "When a nonresident defendant moves to

dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Unified Brands, Inc. v. Teders*, 868 F. Supp. 2d 572, 577 (S.D. Miss. 2012) (quoting *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996)). The Court must take the "allegations contained in the complaint, except insofar as controverted by opposing affidavits," as true. *Colwell Realty Invs., Inc. v. Triple T Inns of Az., Inc.*, 785 F.2d 1330, 1333 (5th Cir. 1986). If the Court does not rely on an evidentiary hearing but decides the motion based on the pleadings and exhibits on file, the plaintiff need only present a prima facie case of personal jurisdiction. *DeCarlo v. Bonus Stores, Inc.*, 413 F. Supp. 2d 770, 775 (S.D. Miss. 2006) (citing *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332 (5th Cir. 1982)). When deciding whether a prima facie case has been established, all conflicts in the facts alleged in the complaint and opposing affidavits must be resolved in the plaintiff's favor. *DeCarlo*, 413 F. Supp. 2d at 775 (citing *Thompson v. Chrysler Motors, Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985) and *DeMelo v. Toche Marine Inc.*, 711 F.2d 1260, 1270 (5th Cir. 1983)).

"The prima-facie-case requirement does not require the court to credit conclusory allegations." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

III.   Analysis

"A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over the defendant; and (2) exercise of such jurisdiction by the forum state

is consistent with due process under the United States Constitution." *Mink v. AAAA Dev., LLC*, 190 F.3d 333, 335 (5th Cir. 1999).

A. Mississippi's Long Arm Statute

Mississippi's long-arm statute provides,

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57.

Mississippi courts have interpreted the statute to contain three components: contract, tort, and "doing-business." *Fitch v. Wine Express*, Inc., 297 So. 3d 224, 228 (Miss. 2020). In other words, to exercise jurisdiction, the Court must find that: (1) the Moving Defendants entered into a contract to be performed, in whole or in part, in Mississippi, (2) the Moving Defendants committed a tort, in whole or in part, in Mississippi, or (3) the Moving Defendants were "doing business" in Mississippi. *Farani v. File*, 565 F. Supp. 3d 804, 808 (S.D. Miss. 2021). Only one of these components need be present to confer personal jurisdiction under the statute. *Id.*

The Moving Defendants assert that the State provided no actual allegations that UnitedHealth, Optum, Inc., ORx Holdings, or OptumInsight contracted with any Mississippi resident, committed a tort in Mississippi, or did business in Mississippi. [88] at 5–6. The State contends that each Moving Defendant committed a tort and

5

does business in Mississippi. [102] at 9–11. The Court addresses the long-arm statute's applicability for each Moving Defendant.

### 1. UnitedHealth

UnitedHealth is a Delaware corporation with its principal place of business in Minnesota. [71] at ¶ 189. The State alleges that UnitedHealth "was directly involved in the conduct that caused the Insulin Pricing Scheme and as a result had a direct effect in Mississippi and damaged diabetic Mississippians and the State." *Id.* at ¶ 193. Although the Amended Complaint alleges that United Health met with executive teams from each Manufacturer Defendant to discuss "strategic initiatives" and "prioritized opportunities," the State fails to allege facts to support that these meetings were in furtherance of the alleged Insulin Pricing Scheme. *Id.* at ¶ 197. The State therefore fails to allege that UnitedHealth committed a tort in Mississippi.

The State also fails to allege that UnitedHealth does business in Mississippi. Although the State alleges that UnitedHealth has an "enterprise-wide commitment to Mississippi" with over "500 Mississippi-based employees," the State does not allege to which corporate entity these employees belong. It is not enough to simply rest on the use of a collective term, such as "Defendants," in the allegations to determine personal jurisdiction. *Smith v. Antler Insanity, LLC*, 58 F. Supp. 3d 716, 723 (S.D. Miss. 2014) (citing *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 793 (5th Cir. 2007) (citation omitted)). Here, the State fails to differentiate between each Moving Defendant's role in employing Mississippi residents. The State

fails to establish that UnitedHealth did business in Mississippi for the purposes of the long-arm statute.

### 2. Optum, Inc.

Optum, Inc. is a Delaware corporation with principal place of business in Minnesota. [71] at ¶ 200. The State alleges that Optum, Inc. is "directly involved in company policies that inform its PBM services and formulary construction, including with respect to the at-issue drugs and related to the Insulin Pricing Scheme." *Id.* at ¶ 202. The State also alleges that other companies in the UnitedHealth corporate family report to Optum, Inc. to "inform the at-issue formulary construction and mail order activities." *Id.* at ¶ 203. The State does not allege facts explaining how Optum, Inc.'s involvement in company policy necessarily constitutes involvement in the alleged Insulin Pricing Scheme. Nor does the State allege facts suggesting that Optum, Inc. did business in Mississippi.

These factual allegations do not allege a contract to be performed in Mississippi, a tort committed in Mississippi, or that Optum, Inc. did business in Mississippi. *See Farani*, 565 F. Supp. at 808. The Court therefore holds that the long-arm statute does not confer jurisdiction as to Optum, Inc.

### 3. ORx Holdings

ORx Holdings is a Delaware limited liability corporation with its principal place of business in California. [71] at ¶ 210. The State alleges that ORx Holdings "provides pharmacy benefit management services through its subsidiaries to various health insurance entities in Mississippi." *Id.* at ¶ 211. This is the extent of the State's

7

allegations about ORx Holdings individually. The Court finds that these allegations do not allege that ORx Holdings entered or performed a contract, committed a tort, or did business in Mississippi. The Court therefore finds that Mississippi's long-arm statute does not confer jurisdiction as to ORx Holdings.

### 4. OptumInsight

OptumInsight is a Delaware corporation with its principal place of business in Minnesota. *Id.* at ¶ 205. It is registered to do business in Mississippi and holds an active Third-Party Administrator license in Mississippi. *Id.* at ¶¶ 206–7. OptumInsight allegedly "provides data, analytics and consulting to companies with[in] the healthcare industry, including the Manufacturer Defendants." *Id.* ¶ 208. The State alleges that OptumInsight "coordinated directly with Manufacturer Defendants in furtherance of the Insulin Pricing Scheme" and "advised the Manufacturers with regard to the profitability of the Insulin Pricing Scheme to the benefit of all Defendants." *Id.* at ¶ 209.

A defendant is not necessarily subject to Mississippi's long-arm statute because it is licensed to do business in Mississippi. *See Thrash Aviation, Inc. v. Kelber Turbine, Inc.*, 72 F. Supp. 2d 709, 715 (S.D. Miss. 1999). Rather, to meet the "doing business" prong of the long-arm statute, a defendant's presence in Mississippi must be "of such a continuing and substantial nature" and "for the purpose of realizing a pecuniary benefit or otherwise accomplishing an object." *Id.* The State fails to provide facts that any of the alleged "coordination" or "advising" took place in Mississippi, that OptumInsight conducted business in Mississippi that was "continuing and

8

substantial," or that it tried to "realize a pecuniary benefit" or "otherwise accomplish an object" in Mississippi. *See id.* The Court therefore finds that the State failed to allege facts that OptumInsight did business in Mississippi.

Fraud is a tort in Mississippi, but the State must allege facts with particularity for the Court to find personal jurisdiction under the long-arm statute. Pursuant to Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Generally, this requires the plaintiff to plead "the who, what, when, where, and how" of the fraud. *Benchmark Elecs. V. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

The State fails to allege, however, how, when, or where of any alleged fraud occurred by OptumInsight specifically. As a result, the Court finds that the State did not allege facts sufficient to confer jurisdiction under the long-arm statute for OptumInsight.

### B.  Due Process under the United States Constitution

Even if the long-arm statute provided the Court with personal jurisdiction over the Moving Defendants, exercising jurisdiction would not comport with federal due process. "The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Mink*, 190 F.3d at 336 (quoting *Latshaw v. Johnston*, 167 F.3d

208, 211 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945))).

Personal jurisdiction is either general or specific. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). "If a defendant's contacts with the forum state are continuous and systematic, a court may exercise general jurisdiction over any action brought against that defendant, regardless of whether the action is related to the forum contacts." *Id.* (internal quotations and citation omitted). "If a defendant has relatively few contacts, a court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum." *Id.* (internal quotations and citation omitted). Only specific jurisdiction is at issue.

Courts in the Fifth Circuit may exercise specific personal jurisdiction when three conditions are met. First, the nonresident defendant must "purposefully avail itself of the privilege of conducting activities in the forum state." *Johnson v. TheHuffingonPost.com, Inc.*, 21 F.4th 314, 317 (5th Cir. 2021) (cleaned up) (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)). Second, the plaintiff's claim "must arise out of or relate to" those purposeful contacts. *Id.* Third, the Court's exercise of jurisdiction must be "fair and reasonable" to the nonresident defendant. *Id.* citing *Seiferth*, 472 F.3d at 271.

The Moving Defendants solely assert that they did not purposefully avail themselves in Mississippi. "The analysis here begins and ends with the minimum-contacts question." *Rush v. STIHL, Inc.*, 2020 WL 1276103, at *2 (S.D. Miss. Mar. 17, 2020).

For the Court to exercise specific jurisdiction, the defendant must purposefully avail itself in the forum state by having minimum contacts; these contacts must not be "random, isolated, or fortuitous." *Ford Motor Co.*, 141 S. Ct. at 1025 (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)). Rather, the contacts must stem from the defendant's choice to "reach[] out beyond" its home, such as "exploiting a market" in the forum state or entering a contractual relationship there. *Id.* (cleaned up) (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

To determine whether a defendant has "minimum contacts" with a forum state, the Court must identify "some act whereby it purposely availed itself of the privilege of conducting activities there, thus invoking the benefits and protections of its laws." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469–70 (5th Cir. 2006) (cleaned up). The defendant's actions must show that it "reasonably anticipates being haled into court" in Mississippi. *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The State asserts that the Court should apply the "effects test" established in *Calder v. Jones*, 465 U.S. 783, 788–89 (1984). For the reasons stated below, however, the Court finds that the State inadequately alleges the "effects" caused by each individual Moving Defendant. And "[e]ach defendant's contacts with the forum State must be assessed individually." *Id.* at 790.

The Court addresses each Moving Defendants' minimum contacts in turn.

1. UnitedHealth

Considering all allegations in the State's Amended Complaint, and for the reasons stated in III.A.1, the Court finds that UnitedHealth has not purposefully availed itself in Mississippi by having minimum contacts. The State does not identify "some act whereby [UnitedHealth] purposely availed itself of the privilege of conducting activities [in Mississippi], thus invoking the benefits and protections of its laws" for specific jurisdiction in this case. *See Luv N' Care, Ltd.*, 438 F.3d at 469–70.

The State alleges that UnitedHealth once sued in Mississippi, alleging that it "contracted with Mississippi residents and directly engaged in PBM business and programs in Mississippi related to 'advancing the health and well-being of individuals and communities,' and that UnitedHealth['s] business interests in Mississippi included providing PBM services to the State." [71] at ¶ 199. The State contends that this lawsuit is evidence that UnitedHealth availed itself of Mississippi laws. The Court disagrees. Taking the State's allegations of the prior complaint's contents as true, the State does not allege facts to support that these contacts were not "random, isolated, or fortuitous." *See Ford Motor Co.*, 141 S. Ct. at 1025. Just because a defendant sues in a Mississippi court does not mean that the defendant itself "reasonably anticipates being haled into court" in Mississippi. *See World Wide Volkswagen Corp*, 444 U.S. at 297.

The Court finds that it does not have personal jurisdiction over UnitedHealth because the long-arm statute does not apply, and the State's allegations do not show that UnitedHealth has sufficient minimum contacts with Mississippi.

2. Optum, Inc.

Considering all allegations in the State's Third Amended Complaint, and for the reasons stated in III.A.2, the Court finds that Optum, Inc. has not purposefully availed itself in Mississippi through minimum contacts. There are no allegations in the State's Amended Complaint that support Optum, Inc. had any contact with Mississippi or had any participation in the alleged Insulin Pricing Scheme. *See* [71] at ¶¶ 200–204. The Court finds that it does not have personal jurisdiction over Optum, Inc. because the long-arm statute does not apply, and the State's allegations do not show that Optum, Inc. has minimum contacts with Mississippi.

3. ORx Holdings

Considering all allegations in the State's Third Amended Complaint, and for the reasons stated in III.A.3, the Court finds that ORx Holdings has not purposefully availed itself in Mississippi through minimum contacts. The State does not allege that ORx Holdings had any contacts in Mississippi or engaged in the alleged Insulin Pricing Scheme in any way. *See id.* at ¶¶ 210–211.

4. OptumInsight

Considering all allegations in the State's Third Amended Complaint, and for the reasons stated in III.A.4, the Court finds that OptumInsight has not purposefully availed itself in Mississippi through minimum contacts. Aside from holding a Mississippi Third-Party Administrator license and being registered to do business in Mississippi, the State does not allege facts that ORx Holdings had any actual contact with Mississippi that was not "random, isolated, or fortuitous." *See Ford Motor Co.,*

13

141 S. Ct. at 1025. The Court finds that it does not have personal jurisdiction over OptumInsight because the long-arm statute does not apply, and the State's allegations do not show that OptumInsight has minimum contacts in Mississippi.

C. Veil Piercing

The State argues that even if none of the Moving Defendants individually are subject to personal jurisdiction, the Court should pierce the corporate veil and attribute OptumRx, Inc.'s contacts to each Moving Defendant, and each Moving Defendant's alleged contacts to each other, as alter egos. [102] at 13.

"It is a general principle of corporate law deeply ingrained in our economic legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotations a citation omitted). "Mississippi case law generally favors maintaining corporate entities and avoids attempts to pierce the corporate veil." *Canadian Nat. Ry. Co. v. Waltman*, 94 So. 3d 1111, 1115 (Miss. 2012) (citation omitted).

"[A] plaintiff's complaint alleging a piercing of the corporate veil will survive a Rule 12(b)(2) motion to dismiss only when the complaint sets forth factual allegations indicating: (1) some frustration of expectations regarding the party to whom he looked for performance; (2) the flagrant disregard of corporate formalities by the defendant corporation and its principals; and (3) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder." *Canadian Nat. Ry. Co. v. Waltman*, 94 So. 3d 1111, 1116–16 (Miss. 2012); *see also Rush v. STIHL, Inc.*, 3:17-

14

cv-915-DPJ-FKB, 2020 WL 1276103, at *7 (quoting *Waltman*, 94 So. at 1115). "In order to make a prima facie case of jurisdiction, the plaintiff must make sufficiently particularized allegations demonstrating the applicability of the piercing doctrine to the facts of the case." *Id.*

The Court finds that the State failed to make such particularized allegations. The State does not particularly allege any frustration of expectation of performance, a flagrant disregard for corporate formalities by any of the Moving Defendants, or a demonstration of fraud by any Moving Defendant.

At most, the State alleges that the Moving Defendants and OptumRx, Inc. share corporate officers, company policies, and stock ownership. [71] at ¶¶ 216–17. "The conclusory allegation that the parent companies exercise substantial control over [subsidiary companies] . . . does not make out a prima facie showing of an alter-ego relationship." *Alexander v. Global Tel Link Corp.*, 2018 WL 8997440, at *4 (S.D. Miss. May 14, 2018). "The Fifth Circuit has noted that 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between . . . corporations." *Samples v. Vanguard Healthcare, LLC*, 2008 WL 4371371, at *3 (N.D. Miss. Sept. 18, 2008) (citing *Walker v. Newgent*, 583 F.2d 163, 167 (5th Cir. 1978). "Moreover, generally our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes." *Id.* (cleaned up) (citing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983). The State makes no such allegations.

The next factors are also relevant in determining whether a corporation constitutes an instrumentality or alter ego:

> (1) The parent corporation owns all or a majority of the capital stock of the subsidiary. (2) The parent and subsidiary corporations have common directors or officers. (3) The parent corporation finances the subsidiary. (4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation. (5) The subsidiary has grossly inadequate capital. (6) The parent corporation pays the salaries or expenses or losses of the subsidiary. (7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation. (8) In the papers of the parent corporation and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division. (9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation. (10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*North American Plastics, Inc. v. Inland Shoe Mfg. Co., Inc.*, 592 F. Supp. 875, 879 (N.D. Miss. 1984) (citation omitted). Again, the State fails to allege facts supporting that each Moving Defendant is an alter ego of each other or OptumRx, Inc. And the State fails to meet its added burden under Mississippi law of providing particularized allegations detailing frustration of expectation of performance, flagrant disregard for corporate formalities by any of the Moving Defendants, or demonstration of fraud by the Moving Defendants.

As a result, the Court finds it is inappropriate to pierce the corporate veil. The Court finds it lacks personal jurisdiction over all Moving Defendants.

IV.    Conclusion

16

This Court has considered all of parties' arguments. Those the Court does not address would not have changed the outcome. The Court GRANTS Moving Defendants' Motion to Dismiss [87].

SO ORDERED AND ADJUDGED this the 15th day of August, 2022.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE