**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| THE STATE OF ILLINOIS ex rel., KWAME RAOUL, ATTORNEY GENERAL, | Civil Action No. 1:23cv170 |
| | **ORAL ARGUMENT REQUESTED** |
| Plaintiff, | |
| v. | |
| ELI LILLY AND COMPANY, et al., | |
| Defendants. | |

**PBM DEFENDANTS' REPLY SUPPORTING THEIR**
**RULE 12(b)(6) MOTION TO DISMISS THE COMPLAINT**
**<u>FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

ARGUMENT ...................................................................................................... 1

I.     THE COMPLAINT FAILS TO SATISFY RULE 9(b). ........................................ 1

    A. Rule 9(b) applies to each of the State's claims. ................................. 1

    B. The State's allegations lack the particularity that Rule 9(b) requires. ............... 3

II.    THE STATE HAS NOT PLED A CONSUMER FRAUD ACT VIOLATION. ............................................................................................. 4

    A. The State fails to allege a Consumer Fraud Act violation premised on deceptive conduct. .................................................................................................... 4

        1.   The State fails to plausibly allege that the PBMs engaged in deceptive conduct. .................................................................... 4

        2.   The State fails to allege that the PBM Defendants intended consumers to rely on any alleged misrepresentation. ................. 6

    B. The State fails to allege a Consumer Fraud Act violation premised on unfair conduct. .................................................................................................... 7

        1.   The State fails to allege that the PBMs' conduct violates public policy. ....................................................................................... 8

        2.   The State fails to allege that the PBMs' conduct is oppressive. ................. 9

        3.   The State fails to allege that the PBMs' conduct substantially injured Illinois diabetics. .................................................... 9

III.   THE COURT SHOULD DISMISS THE UNJUST ENRICHMENT CLAIM. ....................................................................................................... 10

    A. The unjust enrichment claim is governed by contract and therefore barred. ........................................................................................................ 10

    B. The State lacks standing to bring an unjust enrichment claim in its *parens patriae* capacity. .............................................................................. 11

IV.   THE COURT SHOULD DISMISS THE STATE'S CLAIMS AGAINST THE PBMS' UNINVOLVED CORPORATE PARENTS AND AFFILIATES. ............................................................................................. 13

CONCLUSION ................................................................................................... 15

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*,
    458 U.S. 592 (1982)...................................................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................7, 14

*Barbara's Sales*, Inc. v. Intel Corp.,
    227 Ill. 2d 45, 879 N.E.2d 910.................................................................................5

*Batson v. Live Nation Ent., Inc.*,
    746 F.3d 827 (7th Cir. 2014)..................................................................................10

*Borsellino v. Goldman Sachs Grp.*,
    477 F.3d 502 (7th Cir. 2007) ...................................................................................2

*Boston Fish Mkt., Inc. v. EMS-USA Insulated Doors, Inc.*,
    No. 12 C 6751, 2013 WL 2421744 (N.D. Ill. June 3, 2023) .................................13

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ...................................................................................3

*Cripe v. Leiter*,
    184 Ill. 2d 185, 704 N.E.2d 100 (1998)...................................................................6

*State of Miss. Ex rel. Fitch, AG v. Eli Lilly & Co., et al.*,
    No. 21-cv-00674 (S.D. Miss. Aug. 29, 2022), ECF No. 114, slip op....................15

*Fleury v. Gen. Motors LLC*,
    No. 1:22-cv-03862, 2023 WL 1450284 (N.D. Ill. Feb. 1, 2023)............................8

*Friedman v. Nationwide Ins. Co. of Am.*,
    No. CV 16-7363-GW, 2017 WL 11635406 (C.D. Cal. Feb. 9, 2017)......................6

*Halperin v. Int'l Web Servs., LLC*,
    123 F. Supp 3d 999 (N.D. Ill. 2015) .......................................................................3

*People ex rel. Hartigan v. Knecht Servs., Inc.*,
    216 Ill. App. 3d 843, 575 N.E.2d 1378 (Ill. App. Ct. 1991)....................................7

*Ill. v. AU Optronics Corp.*,
    794 F. Supp. 2d 845 (N.D. Ill. 2011) ....................................................................12

*Ill. v. Life of Mid-Am. Ins. Co.*,
    805 F.2d 763 (7th Cir. 1986) ...................................................................................12

*Ill. v. SDS W. Corp.*,
    640 F. Supp. 2d 1047 (C.D. Ill. 2009) ....................................................................12

*Joseph v. TGI Friday's, Inc.*,
    No. 21-cv-1340, 2022 WL 17251277 (N.D. Ill. Nov. 28, 2022) .........................3, 4

*Northbound Grp., Inc. v. Norvax, Inc.*,
    795 F.3d 647 (7th Cir. 2015) ...................................................................................13

*Phillips v. WellPoint, Inc.*,
    No. 10-cv-00357, 2012 WL 6111405 (S.D. Ill. Dec. 10, 2012) .............................13

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) .....................................................................................1

*Ridings v. Am. Fam. Ins. Co.*,
    No. 20 CV 5715, 2021 WL 722856 (N.D. Ill. Feb. 24, 2021) ..............................5, 6

*Robinson v. Toyota Motor Credit Corp.*,
    201 Ill.2d 403, 775 N.E.2d 951 (Ill. 2002) ..............................................................8

*Saunders v. Mich. Ave. Nat'l Bank*,
    278 Ill. App. 3d 307, 662 N.E.2d 602 (Ill. App. Ct. 1996)......................................9

*SeePremier Elec. Constr. Co. v. La Salle Nat'l Bank*,
    132 Ill. App. 3d 485, 477 N.E.2d 1249 (Ill. App. Ct. 1984) ..................................11

*Siegel v. Shell Oil Co.*,
    480 F. Supp. 2d 1034 (N.D. Ill. 2007) .....................................................................4

*Spector v. Mondelez Int'l, Inc.*,
    178 F. Supp. 3d 657 (N.D. Ill. 2016) .....................................................................3, 6

*Spiegel v. Sharp Elecs. Corp.*,
    125 Ill. App. 3d 897, 446 N.E.2d 1040 (Ill. App. Ct. 1984)....................................5

*Totty v. Anderson Funeral Home, Ltd.*,
    448 F. Supp. 3d 928 (N.D. Ill. 2020) .......................................................................3

*Util. Audit, Inc. v. Horace Mann Serv. Corp.*,
    383 F.3d 683 (7th Cir. 2004) ...................................................................................10

*Villasenor v. Am. Signature, Inc.*,
    No. 06 C 5493, 2007 WL 2025739 (N.D. Ill. July 9, 2007) ...................................11

*In re VTech Data Breach Litig.*,
    No. 15 CV 10889, 2018 WL 1863953 (N.D. Ill. Apr. 18, 2018)..........................................2, 7

*Wendt v. Handler, Thayer & Duggan, LLC*,
    613 F. Supp. 2d 1021 (N.D. Ill. 2009) ...................................................................................4

*Yassin v. Cap. Indem. Corp.*,
    No. 94 C 50156, 1995 WL 30610 (N.D. Ill. Jan. 24, 1995) ..................................................11

**Statutes**

815 ILCS 505/2 .......................................................................................................................8

815 ILCS 505/7(a) ..................................................................................................................13

Consumer Fraud Act ......................................................................................................... *passim*

Federal Trade Commission Act § 5(a) .....................................................................................8

**Federal Rules of Civil Procedure**

F.R.C.P. 8 ...........................................................................................................................1, 2, 7

F.R.C.P. 9(b) .................................................................................................................... *passim*

F.R.C.P. 12(b)(2) .....................................................................................................................1

# INTRODUCTION[1]

The State of Illinois fails to adequately plead claims against the PBM Defendants for violations of the Illinois Consumer Fraud and Deceptive Practices Act and for unjust enrichment. Its Opposition confirms that (i) the Consumer Fraud Act and unjust enrichment claims are grounded in vague, conclusory allegations that do not pass Rule 9(b) muster; (ii) the State fails to state a claim under the Consumer Fraud Act premised on unfair conduct even if the Rule 8 pleading standard applies; (iii) the unjust enrichment claim fails because contracts govern the challenged conduct; (iv) the State lacks standing to bring an unjust enrichment claim in its *parens patriae* capacity; and (v) the State fails to state a claim against the PBMs' uninvolved parents and affiliates. The Court should dismiss with prejudice the State's claims against the PBMs.

# ARGUMENT

## I.     THE COMPLAINT FAILS TO SATISFY RULE 9(b).

### A.     Rule 9(b) applies to each of the State's claims.

The State alleges that a single "unfair and deceptive scheme [lies] at the root of this Complaint." Compl. ¶ 12. And the State does not dispute that its claims for unjust enrichment and deceptive trade practices are subject to Rule 9(b)'s heightened pleading standard. The State nevertheless insists that its claim for "unfair" practices under the Consumer Fraud Act is exempt from Rule 9(b) because it does not sound in fraud.

That is incorrect. Under Seventh Circuit law, any claim "premised upon a course of fraudulent conduct can implicate Rule 9(b)'s heightened pleading requirements." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir.

---

[1] The Defendants that have filed motions seeking dismissal under Rule 12(b)(2) for lack of personal jurisdiction join this brief subject to and without waiving those defenses.

2011) (internal quotation marks omitted). Rule 9(b) therefore applies to any "claim that sounds in fraud." *Borsellino v. Goldman Sachs Grp.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal quotation marks omitted). Where, as here, a plaintiff fails to "allege[] any unfair conduct separate from the deceptive conduct[,]" Rule 8's notice pleading standard does not apply. *In re VTech Data Breach Litig.*, No. 15 CV 10889, 2018 WL 1863953, at *6 (N.D. Ill. Apr. 18, 2018).

A simple comparison of the State's allegations of "unfair" conduct to its allegations of "deceptive" conduct reveals that all of the alleged conduct underlying the State's single Consumer Fraud Act cause of action is the same. On page 6 of its Opposition, for example, the State claims that the PBMs engaged in an "unfair" practice by "obfuscating manufacturer payments." In Paragraph 488 of its Complaint, the State alleges that the PBMs "contradict[ed]" their public representations by "hid[ing], obfuscat[ing], and launder[ing] . . . Manufacturer Payments." *See also* Compl. ¶ 434 ("PBM Defendants have also misrepresented that they are transparent about the Manufacturer Payments"). Similarly, the State claims that "excluding lower priced insulins and favoring higher priced ones on formularies" is an example of unfair—not deceptive—conduct. Opp'n at 6. But in Paragraph 488 of its Complaint, the State lists "selecting higher priced medications for formulary placement and excluding lower priced ones" as another way that the PBMs allegedly "contradict[ed]" their public statements. Finally, the State asserts that the PBMs' allegedly "pricing diabetics out of the insulins they need to stay alive . . . is unfair." Opp'n at 7. The Complaint asserts that the PBM Defendants deceived Illinois diabetics because—among other things—"[c]ontrary to [the PBMs'] representations that they work to promote the health of diabetics . . . many diabetics have been priced out of these life-sustaining medications." Compl. ¶ 444.

2

In short, the conduct underlying the State's allegations of "unfair" practices and "deceptive" practices is the same. "Simply adding language of 'unfairness' instead of 'misrepresentation' does not alter the fact that [the State's] allegations are entirely grounded in fraud under the ICFA." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). Because the State does not "allege any unfairness separate and apart from the deception," its Consumer Fraud Act claim "is limited to a deceptive practices claim, and is therefore subject to Rule 9(b)." *Halperin v. Int'l Web Servs., LLC*, 123 F. Supp 3d 999, 1007 (N.D. Ill. 2015).

### B. The State's allegations lack the particularity that Rule 9(b) requires.

To satisfy Rule 9(b), the State "must allege the who, what, when, where, and how of the fraud . . . with particularity." *Totty v. Anderson Funeral Home, Ltd.*, 448 F. Supp. 3d 928, 937 (N.D. Ill. 2020) (internal quotation marks omitted). Additionally, the State must allege facts showing "not just the mere possibility of fraud, but that fraud is a '*necessary or probable inference* from the facts alleged.'" *Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 672 (N.D. Ill. 2016). The State has fallen far short of those pleading requirements as to each of its claims, and its arguments to the contrary fail.

The State asserts that this Court should ignore the Complaint's impermissible group pleading, arguing that "allegations can provide notice where, as here, all Defendants committed the same wrongful acts." Opp'n at 17.[2] But the case that the State cites involved a very different set of facts. In *Joseph v. TGI Friday's, Inc.*, No. 21-cv-1340, 2022 WL 17251277 (N.D. Ill. Nov.

---

[2] The State does not allege that each Defendant committed the same acts. As the Complaint itself makes clear, several of the entities that the State lumps together as "PBM Defendants" do not provide PBM services at all—instead, they are retail pharmacies, other uninvolved affiliates, or uninvolved corporate parents. *See, e.g.,* Compl. ¶¶ 89, 127, 178 (identifying CVS Pharmacy, Inc., Evernorth Health, Inc., and UnitedHealth Group Incorporated as corporate parents); *id.* ¶¶ 88, 151, 155 (identifying CVS Pharmacy, Inc., ESI Mail Pharmacy Service, Inc., and Express Scripts Pharmacy, Inc. as retail pharmacies); *id.* ¶ 188 (identifying OptumInsight, Inc. as an entity that analyzed data related to the at-issue drugs). To allege that a retail pharmacy, a PBM, and a parent holding company all engaged in indistinguishable wrongful acts makes no sense.

28, 2022), this Court held that the defendants were sufficiently on notice of the claims against them because the Consumer Fraud Act claim involved *a single alleged misrepresentation* that the trademark-owner and its licensee made *in concert*. *Id*. at *4. Here, any references to CVS Caremark, ESI, and OptumRx are dwarfed by the references to the PBMs collectively, making clear the State's failure to satisfy Rule 9(b). *See Wendt v. Handler, Thayer & Duggan, LLC*, 613 F. Supp. 2d 1021, 1034 (N.D. Ill. 2009) (allegations that assert fraud "against 'Defendants' generally" and "fail[] to differentiate the levels of involvement of each in the alleged fraud" do not satisfy Rule 9(b)). Even when the State purports to identify alleged conduct by specific PBM Defendants, it improperly lumps together allegations against "Express Scripts" (six entities, plus predecessors and successors), "CVS Caremark" (five entities, plus predecessors and successors), and "OptumRx" (three entities, plus alleged predecessors and successors). Nowhere does the State allege which entity said what, when, or where. Nor does it allege how those statements were made or what makes them untruthful. That also fails under Rule 9(b). *See Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1043 (N.D. Ill. 2007) (plaintiff must "inform each defendant of the nature of his alleged participation in the fraud"), *aff'd*, 612 F.3d 932 (7th Cir. 2010).

## II.    THE STATE HAS NOT PLED A CONSUMER FRAUD ACT VIOLATION.

### A.    The State fails to allege a Consumer Fraud Act violation premised on deceptive conduct.

#### 1.    The State fails to plausibly allege that the PBMs engaged in deceptive conduct.

The State asserts that the PBMs engaged in deceptive conduct by misrepresenting "that their formularies have the characteristic and benefit of lowering the price of the at-issue drugs and promoting the health of diabetics" and "that the Manufacturer Payments they receive reduce the

price of the at-issue drugs for diabetics and payors[.]" Opp'n at 9–10.[3] But, as explained in the PBMs' opening brief, the State fails to plead any material statement by a PBM capable of being proven false; only subjective opinions or aspirational statements. *See* Mot. at 5–13. The Complaint alleges only non-quantifiable statements by PBMs, which are non-actionable under the Consumer Fraud Act. *See Spiegel v. Sharp Elecs. Corp.*, 125 Ill. App. 3d 897, 902, 446 N.E.2d 1040 (Ill. App. Ct. 1984).

The State contends that the Complaint is "replete" with allegations of factual misstatements. But the State does not engage with any of the alleged statements the PBMs identified (Mot. 9–11). Nor could the State plausibly do so. Representations that (1) PBMs are aligned with their payor clients (Mot. at 9), (2) PBMs work to lower prices for at-issue drugs (*id.* at 9–10), and (3) PBMs create formularies and collect rebates for the benefit of diabetics and payors (*id.* at 10–11) are classic puffery, not deceptive conduct.[4] *Ridings v. Am. Fam. Ins. Co.*, No. 20 CV 5715, 2021 WL 722856, at *4 (N.D. Ill. Feb. 24, 2021); *accord Barbara's Sales*, *Inc. v. Intel Corp.*, 227 Ill. 2d 45, 73-74, 879 N.E.2d 910.[5]

Instead of addressing the PBMs' argument on its merits, the State falls back on two decisions from other jurisdictions addressing similar puffery arguments. *See* Opp'n at 21–22. For one thing, those decisions do not bind this Court. And on their own terms, they are not persuasive.

---

[3] The State's passing reference to the PBMs being "liable for their coordinated efforts with the Manufacturers as well" (Opp'n at 11) is of no moment, as the State has failed to plausibly allege a conspiracy between the Manufacturers and the PBMs.

[4] *See, e.g.*, Compl. ¶¶ 431 ("CVS Caremark represented that it was focused on diabetes to 'help us add value for our PBM clients and improve the health of plan members'"); *id.* ("Express Scripts is dedicated to controlling insulin prices because 'we stand up for payers and patients'"); *id.* ("Express Scripts 'give[s] people who rely on insulin greater affordability and cost predictability so they can focus on what matters most: their well-being'"); 432 ("OptumRx's website has stated '[t]he services we provide help *improve health outcomes for patients* while making prescription drugs more affordable for plan sponsors and *individuals*, and more sustainable for the country'").

[5] In any case, the Consumer Fraud Act claims still fail, as the State's allegations are not pled with particularity. *See supra* Section I.

Representations that a party is using its negotiating power in the "best interests" of its client is no different from a representation that a company is "on your side." *See Friedman v. Nationwide Ins. Co. of Am.*, No. CV 16-7363-GW, 2017 WL 11635406, at *3 (C.D. Cal. Feb. 9, 2017) ("Nationwide's advertisements that it is on the insured's side and will act as the insured's advocate … constitute puffery and are therefore not actionable."). And a claim that a rebate qualifies as a "discount" is so vague that it could not possibly be a misstatement under Illinois law. *See Ridings*, 2021 WL 722856, at *4.

### 2. The State fails to allege that the PBM Defendants intended consumers to rely on any alleged misrepresentation.

In addition, the State only summarily asserts that it "allege[d] that the PBM Defendants intended diabetics and payors to rely on their deceptive conduct." Opp'n at 11. As both this Court and the Illinois Supreme Court have held, "the facts alleged in a complaint attempting to show fraud under the [Consumer Fraud Act] must show not just the mere possibility of fraud, but that fraud is a '*necessary or probable inference* from the facts alleged.'" *Spector*, 178 F. Supp. 3d at 672 (citing *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill.2d 473, 607 N.E.2d 165 (Ill. 1992)). A necessary element of that showing is "the defendant's intent that the plaintiff rely on the deception[.]" *Cripe v. Leiter*, 184 Ill. 2d 185, 191, 704 N.E.2d 100 (1998).

In support of its assertion that the PBMs intended for diabetic consumers to rely upon their alleged misrepresentations, the State merely points to allegations that each PBM Defendant offers pharmacy benefit management services and constructs formularies that clients use nationwide, which "are relied on by residents in Illinois with diabetes as promoting diabetic health and lower the price of the at-issue drugs."[6] *See* Compl. ¶¶ 111, 167, 208. The State also asserts that "Illinois

---

[6] As explained above, the Complaint itself makes clear that numerous of the entities that the State identifies as "PBM Defendants" do not provide PBM services at all. *See supra* at n.3.

diabetics and payors relied on the artificially inflated list prices by purchasing diabetic medications at such prices." *Id.* at 412. Those allegations amount to little more than "[t]hreadbare recitals of the elements . . . supported by mere conclusory statements" that are disallowed even by Rule 8, let alone the heightened Rule 9(b) pleading standard that applies to this claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The State's Consumer Fraud Act claim premised on the PBMs' purportedly deceptive conduct fails and should be dismissed with prejudice.

### B. The State fails to allege a Consumer Fraud Act violation premised on unfair conduct.

The State similarly cannot maintain a claim for "unfair" conduct under the Consumer Fraud Act. At the threshold, the State cannot evade the heightened pleading requirements applicable to allegations of deceptive conduct by cloaking those same allegations in language of unfairness. *See VTech*, 2018 WL 1863953, at *7. That alone is enough to warrant dismissal of the Consumer Fraud Act violations premised on unfair conduct.[7]

But even if the State's allegations of unfairness were meaningfully different from its allegations of deception (they are not), the State fails to state a claim for a Consumer Fraud Act violation even under Rule 8's plausibility standard. To determine whether a course of conduct is unfair, the Consumer Fraud Act directs courts to consider "the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." 815 ILCS 505/2. "Th[o]se factors are (1) whether the practice offends public policy; (2) whether

---

[7] The State asserts that any arguments by the PBM Defendants regarding its unfair-conduct allegations are waived because "[t]he PBM Defendants' Motion does not include any discussion of … the unfairness elements, nor does it argue that the State's allegations fail to satisfy them." Opp'n at 15. In support, the State cites to an Illinois state court decision finding an argument waived because it was not developed at trial or on appeal. *People ex rel. Hartigan v. Knecht Servs., Inc.*, 216 Ill. App. 3d 843, 855, 575 N.E.2d 1378 (Ill. App. Ct. 1991). That case does not apply here. In any event, the PBM Defendants did address the State's unfair-conduct claims in their Motion to Dismiss, arguing—as they do here—that the State failed to include sufficient facts to differentiate their deceptiveness claim from their unfairness claim. Opp'n at 6. There is no waiver.

it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 417–18, 775 N.E.2d 951 (Ill. 2002) (citing *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n. 5 (1972)). The State has not satisfied any of the three elements.

### 1. The State fails to allege that the PBMs' conduct violates public policy.

"[C]onduct offends public policy if it violates a standard of conduct embodied in a statute, the common law, or otherwise." *Fleury v. Gen. Motors LLC*, No. 1:22-cv-03862, 2023 WL 1450284, at *5 (N.D. Ill. Feb. 1, 2023) (internal quotation marks omitted). The State argues that the PBMs' conduct offends public policy given "the 'swift passage' of a recent Illinois bill capping out of pocket insulin costs at $100 a month" and the June 16, 2022 FTC policy statement commenting that "inducing PBMs or other intermediaries to place higher-cost drugs on formularies instead of less expensive alternatives in a manner that shifts costs to payers and patients may constitute unfair practices under Section 5 of the FTC Act." Opp'n at 12–13. That argument is self-defeating. The new Illinois bill and the FTC policy statement came about in 2022. Those enactments undermine the argument that the PBMs' allegedly unfair conduct "over the course of the last fifteen years" (Compl. ¶ 340) violated a "statute or common-law doctrine" in existence during that period. *City of Chi.*, 211 F. Supp. 3d at 1074.

Even on its own terms, the FTC policy statement explicitly states that "[n]othing prevents drug manufacturers, PBMs, and health plans from negotiating good-faith rebates and fees for legitimate services that increase value to payers and patients" and therefore recognizes that PBM-negotiated rebates and other discounts from manufacturers are standard industry practice. *See FTC, Policy Statement of the Federal Trade Commission on Rebates and Fees in Exchange for Excluding Lower Cost Drug Products* (June 16, 2022) at 4. The State has not plausibly alleged that the PBMs' conduct offends public policy.

8

## 2. The State fails to allege that the PBMs' conduct is oppressive.

The State alleges that the PBM Defendants' conduct is oppressive because "the PBMs have near complete control of the insulin pricing system" and "diabetics have 'little alternative except to submit'" to the Insulin Pricing Scheme. Opp'n at 14. But even "an unconscionably high fee" is not sufficient to establish the type of oppressiveness required to state a claim under the Consumer Fraud Act premised on unfair conduct. *See Saunders v. Mich. Ave. Nat'l Bank*, 278 Ill. App. 3d 307, 314, 662 N.E.2d 602, 608 (Ill. App. Ct. 1996). And the State itself acknowledges that the Manufacturer Defendants, not the PBMs, set the prices for the at-issue drugs. Compl. ¶¶ 13, 15–16, 20, 268–78. Indeed, the Manufacturers could have lowered the price of the at-issue drugs at any point during the alleged "Insulin Pricing Scheme," as evidenced by the Manufacturers' recent announcements that they are lowering the price of their insulin products by up to 78%.[8] The State's argument that "the PBMs have near complete control of the insulin pricing system" is meritless. Opp'n at 14.

The State has not plausibly alleged that the PBMs' conduct is oppressive.

## 3. The State fails to allege that the PBMs' conduct substantially injured Illinois diabetics.

The State argues that it has sufficiently alleged that the PBMs Defendants' conduct "substantially injured Illinois diabetics." Opp'n at 14. But the requirements for establishing substantial injury include a showing that "the injury is . . . not outweighed by any countervailing benefits to consumers or competition that the practice produces." *Batson v. Live Nation Ent., Inc.*,

---

[8] *See* https://investor.lilly.com/news-releases/news-release-details/lilly-cuts-insulin-prices-70-and-caps-patient-insulin-out-pocket (Eli Lilly announces that it is cutting the price of Humalog® by 70%); https://www.novonordisk.com/news-and-media/latest-news/lowering-us-list-prices-of-several-products-.html (Novo Nordisk announces that it is cutting the price of NovoLog® by 75%); https://www.sanofi.com/en/media-room/press-releases/2023/2023-03-16-20-06-43-2629188 (Sanofi announces that it is cutting the price of Lantus® by 78%).

746 F.3d 827, 834 (7th Cir. 2014). For the reasons explained in the PBMs' opening brief (*see* Mot. at 13), the challenged conduct has "countervailing benefits" under the Consumer Fraud Act, and the State has failed to adequately allege substantial injury as a result.

## III.     THE COURT SHOULD DISMISS THE UNJUST ENRICHMENT CLAIM.

### A.       The unjust enrichment claim is governed by contract and therefore barred.

The State does not dispute that it cannot bring an unjust enrichment claim where express contracts govern the challenged conduct. Instead, it asserts that its unjust enrichment claim should survive because there is no contract between the PBMs and Illinois diabetics. Opp'n at 25. The State ignores the variety of contracts governing the subject matter of this dispute, including its own contracts with certain of the PBM Defendants that govern the provision of the PBM services that the State puts at issue here.

It is axiomatic that "[w]hen two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688–89 (7th Cir. 2004). Here, the State affirmatively alleges that it received at-issue PBM and pharmacy services under PBM contracts with CVS Caremark and Express Scripts. *See* Compl. ¶¶ 114, 116, 169. Although the State denies bringing any unjust enrichment claim on its own behalf (Opp'n at 27), the unjust enrichment claim that the State purports to bring in its *parens patriae* capacity is still foreclosed by the express, detailed contracts governing insulin drug purchases, including the contracts to which the State and certain PBMs are parties.

What is more, the State alleges that the PBMs contract with manufacturers (Compl. ¶ 296), payors (*id.* ¶ 346), and pharmacies (*id.* ¶ 292) regarding the at-issue drugs. Illinois diabetics, in turn, contract with those same payors and pharmacies to access the at-issue drugs. *Id.* ¶¶ 292, 346. That universe of contracts covers the subject matter of the alleged Insulin Pricing Scheme. *See*

10

*Premier Elec. Constr. Co. v. La Salle Nat'l Bank*, 132 Ill. App. 3d 485, 496, 477 N.E.2d 1249 (Ill. App. Ct. 1984) ("[A] claim for unjust enrichment generally cannot stand where there is an allegation of an express contractual agreement."). That there may be no express contract between Illinois diabetics and the PBMs is irrelevant—this Court has recognized that contracts can govern the subject matter of a dispute even when the plaintiff is not a contracting party. *See Villasenor v. Am. Signature, Inc.*, No. 06 C 5493, 2007 WL 2025739, at *7 n.1 (N.D. Ill. July 9, 2007) ("Accordingly, even though ADS is not a party to a contract that governs the relationship between it and Villasenor, the unjust enrichment claim must nevertheless be dismissed as against ADS."); *Yassin v. Cap. Indem. Corp.*, No. 94 C 50156, 1995 WL 30610, at *3 (N.D. Ill. Jan. 24, 1995) (dismissing unjust enrichment claims even though one plaintiff was not a party to the contract in part because she "would possess no right under quasi-contract that will not be protected by the contract between the actual parties").

The State's insistence that "no contract exists that governs the dispute at issue in this lawsuit" (Opp'n at 25) cannot be reconciled with its own allegations about the "Insulin Pricing Scheme" undergirding its claims—every relationship in that purported scheme involves express contracts. The State's own allegations make clear that it cannot maintain an action for unjust enrichment.

## B. The State lacks standing to bring an unjust enrichment claim in its *parens patriae* capacity.

The State asserts that its unjust enrichment claim is brought "on behalf of millions of Illinois residents whose physical and economic health and well-being have been damaged by the Insulin Pricing Scheme." Opp'n at 25–26. But the State offers no support for its contention that it has standing to pursue those claims on behalf of its residents.

11

First, it is well established that the State's *parens patriae* capacity extends only to its "interest apart from the interests of particular private parties." *Ill. v. Life of Mid-Am. Ins. Co.*, 805 F.2d 763, 766 (7th Cir. 1986). The State itself notes that it "is not asserting an unjust enrichment [claim] on its own behalf, but rather only on behalf of Illinois diabetics." Opp'n at 27. But a state's *parens patriae* capacity excludes claims asserting the interests of private parties. For the State to have standing to pursue *parens patriae* claims, it must be "the real party in interest." *Ill. v. SDS W. Corp.*, 640 F. Supp. 2d 1047, 1052 (C.D. Ill. 2009). "A State is a real party in interest when it 'articulate[s] *an interest apart from the interests of particular private parties*[.]" *Ill. v. AU Optronics Corp.*, 794 F. Supp. 2d 845, 850 (N.D. Ill. 2011) (emphasis added). Here, it is precisely those private interests—the interests of Illinois diabetics—that the State is attempting to protect. Standing for *parens patriae* purposes "does not involve the State's stepping in to represent the interests of particular citizens who, for whatever reason, cannot represent themselves." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 600 (1982).

The only "authority" the State has identified to support its standing to bring an unjust enrichment claim is the Attorney General's authority under the Consumer Fraud Act. Opp'n at 26–27. But the State's power to seek restitution under the Consumer Fraud Act says nothing at all about its authority or standing to seek restitution under an entirely different cause of action with different elements and pleading requirements. Indeed, the Consumer Fraud Act provision upon which the State relies provides that the State may bring an action seeking restitution "[w]henever the Attorney General or State's Attorney has reason to believe that any person is using, has used, or is about to use any method, act or practice *declared by this Act to be unlawful*." 815 ILCS 505/7(a) (emphasis added). The State's statutory authority to seek equitable relief is limited to the Consumer Fraud Act, and its *parens patriae* unjust enrichment claim fails as a result.

12

## IV. THE COURT SHOULD DISMISS THE STATE'S CLAIMS AGAINST THE PBMS' UNINVOLVED CORPORATE PARENTS AND AFFILIATES.

The State fails to show that it adequately pleaded claims against the PBMs' corporate parents (CVS Health Corporation, Evernorth Health, Inc., and UnitedHealth Group Incorporated) and uninvolved affiliates (CVS Pharmacy, Inc. and OptumInsight, Inc.). The State claims that those companies were "directly involved in the Insulin Pricing Scheme." Opp'n at 26–27. But the State offers only generic allegations that the PBM Defendants and their affiliated entities have business relationships. The State does not allege the corporate parents or affiliates "mandated an overall business and budgetary strategy and carried that strategy out by . . . specific direction or authorization." *Boston Fish Mkt., Inc. v. EMS-USA Insulated Doors, Inc.*, No. 12 C 6751, 2013 WL 2421744, at *3 (N.D. Ill. June 3, 2023). For the PBMs' parent companies to be held liable, the State must allege that the "alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management" (*Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 651 (7th Cir. 2015)) and that the corporate parents carried out the Insulin Pricing Scheme by "surpassing the control exercised as a normal incident of ownership in disregard for the interests of the subsidiary." *Phillips v. WellPoint, Inc.*, No. 10-cv-00357, 2012 WL 6111405, at *9 (S.D. Ill. Dec. 10, 2012), *aff'd sub nom. by Myrick v. WellPoint, Inc.* 764 F.3d 662 (7th Cir. 2014). But the State's allegations boil down to the corporate parent entities merely owning the PBM Defendants, sharing interlocking directorships, directing overarching company policy, and profiting from the alleged Insulin Pricing Scheme. *See, e.g.,* Compl. ¶¶ 127, 156, 178, 193. That falls far short of asserting the control required to allege direct participant liability.

The State's bald assertions that the corporate parent entities were involved in alleged wrongdoing associated with the PBM business do not change the analysis. *See, e.g.,* Compl. ¶¶ 179 ("[E]xecutives of UnitedHealth Group structure, analyze, and direct the company's

overarching, enterprise-wide policies, including PBM and mail-order services, as a means of maximizing profits across the corporate family."); 123 ("On a regular basis, Evernorth executives and employees communicate with and direct its subsidiaries related to the at-issue PBM services and formulary activities"); 79 ("During the relevant time, CVS Health . . . has repeatedly, continuously, and explicitly stated that CVS Health 'design[s] pharmacy benefit plans that minimize the costs to the client while prioritizing the welfare and safety of the clients' members and helping improve health outcomes."). Those allegations are entirely conclusory and, therefore, are not entitled to any weight. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Finally, the State has failed to set forth allegations against CVS Pharmacy, Inc. or OptumInsight, Inc. that are sufficient to survive a motion to dismiss. As to CVS Pharmacy, Inc., the State alleges only that it operates retail pharmacies and provides retail pharmacy services. Compl. ¶¶ 86–91. But the State's 500-paragraph complaint is devoid of any alleged misconduct or participation by retail pharmacies in furtherance of the Insulin Pricing Scheme. The only "participation" that the State alleges CVS Pharmacy, Inc. had in the alleged Insulin Pricing Scheme is its practice of retaining the difference between the amount for which an at-issue drug was purchased and the amount for which it is sold. *Id*. ¶ 88. The State's response that CVS Pharmacy, Inc. "profited from the artificially inflated price" of the at-issue drugs is insufficient to bring its actions within the ambit of the alleged scheme. Opp'n at 29. This Court should follow the lead of the Southern District of Mississippi in dismissing CVS Pharmacy, Inc. from the case. *See State of Miss. Ex rel. Fitch, AG v. Eli Lilly & Co., et al.*, No. 21-cv-00674 (S.D. Miss. Aug. 29, 2022), ECF No. 114, slip op. at 12 (dismissing all claims against CVS Pharmacy) (attached as Exhibit A).

The State's allegations against OptumInsight fare no better. The Complaint mentions OptumInsight only a handful of times, alleging that OptumInsight "analyzed data" and "provided" certain data to the Manufacturers without alleging the purported wrongdoing with any specificity. Compl. ¶¶ 188–89. Similarly, the allegations that the State cites for its claim that OptumInsight "engaged directly with the Manufacturers to advise all Defendants on setting the at-issue list prices and constructing the at-issue formularies in a manner that was most profitable" (Opp'n at 29) amount only to allegations that the PBM and Manufacturer Defendants meet and share information. *Id.* ¶¶ 322, 350. The State's allegations against OptumInsight do not satisfy any pleading standard.

## <u>CONCLUSION</u>

For the foregoing reasons, and those included in the PBM Defendants' opening brief, this Court should dismiss all of the State's claims against the PBM Defendants with prejudice.

Dated: May 4, 2023

**CVS HEALTH CORPORATION; CVS PHARMACY, INC.; CAREMARK RX, L.L.C.; CAREMARKPCS HEALTH, L.L.C.; CAREMARK, L.L.C.**

/s/ *R. Kennon Poteat III*
Elizabeth Z. Meraz
**Nixon Peabody LLP**
70 W. Madison, Suite 5200
Chicago, IL 60602
T: 312.977.4400
Firm ID: 43523
kpshea@nixonpeabody.com
ezmeraz@nixonpeabody.com

Enu Mainigi (*pro hac vice* forthcoming)
Craig Singer (*pro hac vice*)
R. Kennon Poteat III (*pro hac vice*)

**UNITEDHEALTH GROUP INCORPORATED, OPTUMRX, INC., AND OPTUMINSIGHT, INC.**

s/ *Patricia Brown Holmes*
Patricia Brown Holmes
Lucas Rael
**RILEY SAFER HOLMES & CANCILA LLP**
70 W Madison St Suite 2900
Chicago, IL 60602
T: (312) 471-8700
pholmes@rshc-law.com
lrael@rshc-law.com

**EVERNORTH HEALTH, INC., EXPRESS SCRIPTS, INC., EXPRESS**

A. Joshua Podoll (*pro hac vice* forthcoming)
Daniel Dockery (*pro hac vice* forthcoming)
**WILLIAMS AND CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
csinger@wc.com
kpoteat@wc.com
apodoll@wc.com
ddockery@wc.com

**SCRIPTS ADMINISTRATORS, LLC, ESI MAIL PHARMACY SERVICE, INC., EXPRESS SCRIPTS PHARMACY, INC., AND MEDCO HEALTH SOLUTIONS, INC.**

*s/ Beth Herrington*
Beth Herrington (#624547)
**MORGAN, LEWIS & BOCKIUS LLP**
110 North Wacker Drive
Chicago, Illinois 60606
Tel: (312) 324-1000
beth.herrington@morganlewis.com

Jason R. Scherr (*pro hac vice*)
Patrick A. Harvey (#995570)
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 739-3000
jason.scherr@morganlewis.com
patrick.harvey@morganlewis.com

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

THE STATE OF MISSISSIPPI, EX REL.                    PLAINTIFF
LYNN FITCH, ATTORNEY GENERAL


V.                              CIVIL ACTION NO. 3:21-CV-674-KHJ-MTP


ELI LILLY AND COMPANY, et al.,                       DEFENDANTS


ORDER

Before the Court are Defendants CVS Health Corporation, CVS Pharmacy, Inc., Caremark PCS Health, L.L.C., Caremark Rx L.L.C., Caremark, L.L.C., ESI Mail Pharmacy Services, Inc., Evernorth Health, Inc., Express Scripts Administrators, LLC, Express Scripts Pharmacy, Inc., Express Scripts, Inc., Optum, Inc., OptumInsight, Inc., OptumRx Holdings, LLC, OptumRx, Inc., and UnitedHealth Group, Inc.'s[1] motion to dismiss. [89]. For the following reasons, the Court grants in part and denies in part the motion.

I.      Facts and Procedural History

This case is about insulin drug prices. Plaintiff, The State of Mississippi, ex rel. Lynn Fitch, its Attorney General, ("the State") originally sued in Hinds County Chancery Court, alleging that the "Manufacturer Defendants"[2] conspired with the

---

[1] Optum, Inc., OptumInsight, Inc., OptumRx Holdings, LLC, and UnitedHealth Group are no longer parties pursuant to this Court's Order on August 15, 2022. [112].
[2] Eli Lilly and Company, Novo Nordisk Inc., and Sanofi-Aventis U.S. LLC, collectively.

"Pharmacy Benefit Manager Defendants" (also called, "PBM Defendants")[3] to artificially inflate the price of insulin drugs and other diabetes medications. *See* Second Amend. Compl. ¶ ¶ 5–16.

The State alleges that the Manufacturer Defendants manufacture the "vast majority of insulins and other diabetic medications available in Mississippi," while the PBM Defendants "manage the pharmacy benefits for the vast majority of individuals in Mississippi." Third Amend. Compl. [71] ¶ 5-6. Part of the PBM Defendants' work is to "establish standard formulary offerings" that determine which of the Manufacturer Defendants' diabetes medications are covered "by nearly every payor in Mississippi." *Id.* ¶¶ 6–7. The State alleges that the Manufacturer Defendants and the PBM Defendants engaged in an "Insulin Pricing Scheme" to increase each type of Defendant groups' profits. *Id.* ¶¶ 12, 19.

The heart of the alleged "Insulin Pricing Scheme" is the Manufacturer Defendants "artificially and willingly" raising their prices to gain formulary access for their respective diabetic treatments from the PBM Defendants. *Id.* ¶ 20. The State alleges that the Manufacturer Defendants pay a "significant, yet undisclosed, portion of that false list price back to the PBM [Defendants]." *Id.* ¶ 20. That system, the State alleges, allows the Manufacturer Defendants to pay rebates to the PBM Defendants in exchange for formulary access without sacrificing their profit margin. *Id.* ¶ 23. In return, the PBM Defendants retain a significant percentage of these

---

[3] CVS Health Corporation, CVS Pharmacy, Inc., Caremark Rx, L.L.C., Caremark, L.L.C., CaremarkPCS Health, L.L.C., Evernorth Health, Inc., Express Scripts, Inc., Express Scripts Administrators, L.L.C., ESI Mail Pharmacy Services, Inc., Express Scripts Pharmacy, Inc., UnitedHealth Group, Inc., Optum Inc., and OptumRx, Inc., collectively.

undisclosed rebates, while using the false list price to generate additional profits from their own pharmacies and pharmacies in their networks. *Id.* ¶ 24.

The State believes that the Manufacturer Defendants' prices "have become so untethered from the actual prices realized by either Defendant group" that they "constitute a false price." *Id.* ¶ 21. The price of certain insulins has increased by more than 1000% since 2003—the same year in which the PBM Defendants "began their rise to power." *Id.* at 278.

The State accordingly sued the Defendants, alleging that it has been overcharged millions of dollars per year in its position as a payor for the at-issue drugs through both its employee health plans and drug purchases for its state-run facilities. *Id.* ¶ 28. The State also sued to protect its "sovereign interest in the health and economic interests of its residents, its own interests, and the integrity of its marketplace." *Id.* at ¶ 39.

The State's theories include violation of the Mississippi Consumer Protection Act ("MCPA"), common-law conspiracy, and unjust enrichment. [71] ¶¶ 1, 518–551. The PBM Defendants now move to dismiss for six reasons: (1) the State failed to meet Rule 9(b) in pleading MCPA claims; (2) the State's claims are procedurally defective because it does not allege that it attempted to resolve its MCPA claims through an informal dispute resolution program, as required by Miss. Code Ann. § 75-25-15(2); (3) the State may not bring a quasi-contractual claim for unjust enrichment because the State's allegations focus on actual contracts; (4) the State did not plausibly or particularly allege that the PBM Defendants entered a

conspiracy to increase insulin prices; (5) the State's *parens patriae* claims are time-barred; and (6) the PBM corporate parents should be dismissed for failure to allege facts implicating those entities in challenged conduct. Mem. in Supp. of Mot. to Dismiss [90] at 2–3.

## II.  Standard

In reviewing a motion under Federal Rule of Civil Procedure 12(b)(6), "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (quoting *Hughes v. The Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (alteration omitted)). A valid claim for relief contains "sufficient factual matter, accepted as true," giving the claim "facial plausibility" and allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plausibility standard does not ask for a probability of unlawful conduct but does require more than a "sheer possibility." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not satisfy a plaintiff's pleading burden. *Id.* (citing *Twombly*, 550 U.S. at 555).

## III.  Analysis

### A.  Statute of Limitations

PBM Defendants first argue that Mississippi's three-year statute of limitations bars the State's claims. [90] at 22–23 (citing Miss. Code Ann. § 15-1-49).

4

The State correctly notes that the statute of limitations does not run against the State in Mississippi. *See* Miss. Code Ann. § 15-1-51 ("Statutes of limitation in civil cases shall not run against the [S]tate . . ."). PBM Defendants do not provide any case law to support their contention that the State's *parens patriae* claims are subject to statutes of limitations under § 15-1-49. The State asserts that no Mississippi civil case has ever applied or imposed a statute of limitations on the State in a *parens patriae* action. [96] at 25. The Court is also unaware of any authority and therefore denies the motion to dismiss on this issue.

### B. MCPA Claim

#### 1. § 75-24-15 Requirements

PBM Defendants next contend that the State failed to comply with § 75-24-15(2) because it did not sufficiently allege that it attempted to resolve its MCPA claims through an informal dispute settlement program approved by the Attorney General. [90] at 16. The State does not concede that this requirement applies to actions brought by the State but still asserts that it attempted informal dispute resolution. [96] at 22–23.

The State argues that it "reasonably attempted to resolve its claims through an informal dispute settlement program approved by the Attorney General with each Defendant" before filing suit. [71] at ¶ 519. It points to "correspondence from the Office of the Attorney [sic] to the Defendants dated May 17, 2021" documenting that settlement attempt. *Id.* It further alleges that the "Defendants failed to adequately respond to the State's request to resolve these claims." *Id.*

5

The Court declines to rule on whether the State is subject to the § 75-24-15(2) requirement but finds that, regardless, the State plausibly alleged that it complied with § 75-24-15(2).

Next, PBM Defendants assert that they are not subject to suit under the MCPA because the State failed to allege that the PBM Defendants "sold, leased, manufactured, or produced any insulin products the State purchased." [90] at 17–18. The State responds that it does, in fact, allege that the PBM Defendants sold diabetes drugs through retail and mail-order pharmacies. [96] at 24 (citing [71] at ¶¶ 128, 225, 427, 430). The Court therefore finds that the State "plausibly alleged" that it purchased insulin products from the PBM Defendants.

Additionally, Section 75-24-15(1) provides that MCPA claims may be brought against "the seller, lessor, manufacturer or producer of a method, act or practice prohibited by Section 75-24-5." Miss. Code Ann. § 75-24-15(1). The Court finds that the State plausibly stated a claim that the PBM Defendants engaged in a "method, act or practice" prohibited by § 75-24-5 to subject them to a claim under the MCPA.

The motion to dismiss is denied on those grounds.

## 2. Pleading Requirements

The PBM Defendants contend that the State failed to allege a claim under the MCPA because it did not identify misrepresentative statements to satisfy Rule 9(b)'s pleading requirements. [90] at 7, 10. The State responds that the Complaint's allegations satisfy both Rule 8 and Rule 9(b) pleading requirements. Mem. in Opp. [96] at 6–21.

6

The MCPA prohibits "[u]nfair methods of competition…and unfair or deceptive trade practices in or affecting commerce." Miss. Code Ann. § 75-24-5(1). "Mississippi does not require a finding of fraud for an act to be deemed unfair or deceptive." *In re Miss. Medicaid Pharma. Avg. Wholesale Price Litig.*, 190 So. 3d 829, 841 (Miss. 2015). Rather, Mississippi courts are "guided by the interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act." *Id.* (citing Miss. Code Ann. § 75-24-3). A trade practice is unfair if three factors are met: (1) it causes or is likely to cause a substantial injury; (2) the injury is not "outweighed by any countervailing benefits to consumers or competition that the practice produces;" and (3) the injury could not have been reasonably avoided. *Id.* (citing 15 U.S.C. § 45(n)). The Court finds that the State plausibly pled these factors here.

Though liability under the MCPA does not require a finding of fraud for an act to be unfair or deceptive, *see In re Miss. Medicaid Pharm. Average Wholesale Price Litig.*, 190 So. 3d at 841, the Court finds that the State's allegations also survive the Rule 9(b) particularity standard. Pursuant to Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other condition of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Generally, this requires the plaintiff to plead "the who, what, when, where, and how" of the fraud. *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

In its 118-page Complaint, the State describes the PBM Defendants' alleged participation in the "Insulin Pricing Scheme," including timelines, knowledge, intent, specific statements about insulin pricing that the State particularly alleges are false, and communications about the Insulin Pricing Scheme between PBM Defendants and Manufacturer Defendants. *See* [71] at ¶¶ 86–96, 118–131, 134–143, 172–188, 215–231. The Court finds that this level of detail satisfies the "who, what, when, where, and how" of any alleged fraud-based claim at the motion to dismiss stage. *See Benchmark Elecs.*, 343 F.3d at 724. The Court therefore finds that the State adequately pled its MCPA claim under both pleading standards. The Court denies the motion to dismiss as to that claim.

### C.  Unjust Enrichment Claims

The Court recognizes that "unjust enrichment is considered to be a remedy." *Mosley v. GEICO Ins. Co.*, 2014 WL 7882148, at *5 (S.D. Miss. Dec. 16, 2014). "Unjust enrichment only applies to situations where there is no legal contract and 'the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another.'" *Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005) (citation omitted).

PBM Defendants contend that the State's claims stem from a contractual dispute, and therefore the State cannot bring an unjust enrichment claim. [90] at 18–20. The State counters that its claims derive from extracontractual conduct and that it does not allege any contract in its *parens patriae* capacity. [96] at 27–28.

8

Because the State plausibly states that its claims do not stem from its contracts with any of the PBM Defendants, and the PBM Defendants do not point to any contract from which these claims arise, the Court denies the motion to dismiss as to unjust enrichment.

### D.  Civil Conspiracy Claims

PBM Defendants next move to dismiss the State's civil conspiracy claim. [90] at 20–22. They contend that the civil conspiracy claim fails because it "does not adequately allege an agreement to violate the MCPA." *Id.* at 21. The Court disagrees.

For the reasons stated in Section III.B.2, *supra*, the Court denies the motion to dismiss as to that claim.

### E.  PBM Corporate Parent and Affiliate Entities

Finally, the PBM Defendants argue that their corporate parents should be dismissed. [90] at 24. The Court already dismissed UnitedHealth Group Incorporated, Optum, Inc., OptumRx Holdings, LLC, and OptumInsight in its August 15, 2022 Order. *See* [112]. Therefore, the only remaining relevant PBM Defendants are CVS Pharmacy, Inc. ("CVS Pharmacy"), CVS Health Corporation ("CVS Health"), and Evernorth Health Inc. ("Evernorth"). [90] at 24.

PBM Defendants assert that the State does not state a plausible claim for relief against the PBMs' corporate parents and the Court should not pierce the corporate veil to hold them liable. *Id.* at 24–25. For the following reasons, the Court agrees and will analyze claims against those PBM Defendants separately.

9

"It is a general principle of corporate law deeply ingrained in our economic legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotations a citation omitted). "Mississippi case law generally favors maintaining corporate entities and avoids attempts to pierce the corporate veil." *Canadian Nat. Ry. Co. v. Waltman*, 94 So. 3d 1111, 1115 (Miss. 2012) (citation omitted).

At most, the State alleges that the CVS Pharmacy, CVS Health, and Caremark Rx, L.L.C. share corporate officers, company policies, and stock ownership. [71] at ¶ 117. The same holds true for Evernorth sharing officers, policies, and stock ownership with Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc. *Id.* at ¶ 170. "The conclusory allegation that the parent companies exercise substantial control over [subsidiary companies] . . . does not make out a prima facie showing of an alter-ego relationship." *Alexander v. Global Tel Link Corp.*, 2018 WL 8997440, at *4 (S.D. Miss. May 14, 2018). "The Fifth Circuit has noted that 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between . . . corporations." *Samples v. Vanguard Healthcare, LLC*, 2008 WL 4371371, at *3 (N.D. Miss. Sept. 18, 2008) (citing *Walker v. Newgent*, 583 F.2d 163, 167 (5th Cir. 1978). "Generally, our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for

10

jurisdictional purposes." *Id.* (cleaned up) (citing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983). The State makes no such allegations.

The following factors are also relevant in determining whether a corporation constitutes an instrumentality or alter ego:

> (1) The parent corporation owns all or a majority of the capital stock of the subsidiary. (2) The parent and subsidiary corporations have common directors or officers. (3) The parent corporation finances the subsidiary. (4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation. (5) The subsidiary has grossly inadequate capital. (6) The parent corporation pays the salaries or expenses or losses of the subsidiary. (7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation. (8) In the papers of the parent corporation and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division. (9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation. (10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*North American Plastics, Inc. v. Inland Shoe Mfg. Co., Inc.*, 592 F. Supp. 875, 879 (N.D. Miss. 1984) (citation omitted). Again, the State fails to allege facts supporting that CVS Health and CVS Pharmacy are alter egos of each other, Caremark, L.L.C., or CaremarkPCS Health, L.L.C. Likewise, the State fails to allege facts supporting that Evernorth is the alter ego of Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Pharmacy Service, Inc., or Express Scripts Pharmacy, Inc.

Accordingly, the Court finds it inappropriate to pierce the corporate veil. But the Court does find that the State adequately pled its claims against CVS Health and Evernorth. The State alleged that CVS Health designed pharmacy benefit

11

plans, negotiated with the Manufacturer Defendants, and publicly represented that it constructs programs to lower the cost of the at-issue diabetes medications. *See* [71] at ¶¶ 84–96. Likewise, the State plausibly alleges that Evernorth participated in the alleged Insulin Pricing Scheme. *See id.* at ¶ 142.

As to CVS Pharmacy, however, Court grants the PBM Defendants' motion. The State merely alleges that CVS Pharmacy "provided retail pharmacy services in Mississippi" and it is therefore somehow connected to the alleged Insulin Pricing Scheme. The Court finds that this sole allegation is insufficient to plausibly plead CVS Pharmacy's involvement in the alleged Insulin Pricing Scheme.

IV.     Conclusion

This Court has considered all of parties' arguments. Those the Court does not address would not have changed the outcome. The Court GRANTS IN PART and DENIES IN PART the PBM Defendants' Motion to Dismiss [89]. Claims against Defendant CVS Pharmacy are dismissed. As to claims against all other Defendants, the motion is DENIED.

SO ORDERED AND ADJUDGED this the 29th day of August, 2022.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE