# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

**IN RE: INSULIN PRICING LITIGATION**

**Case No. 2:23-MD-03080**
**MDL No. 3080**

**JUDGE BRIAN R. MARTINOTTI**
**JUDGE RUKHSANAH L. SINGH**

**ORAL ARGUMENT REQUESTED**

**THIS DOCUMENT RELATES TO:**
*Montana ex rel. Knudsen v. Eli Lilly & Co.*, No. 2:23-cv-04214
*Illinois ex rel. Raoul v. Eli Lilly & Co.*, No. 2:23-cv-04242

## PBM DEFENDANTS' SUPPLEMENTAL BRIEF
## SUPPORTING THEIR RULE 12(b) MOTIONS TO DISMISS

*(Counsel Listed on Next Pages)*

Thomas P. Scrivo
Young Yu
**O'TOOLE SCRIVO, LLC**
14 Village Park Road
Cedar Grove, NJ 07009
T: (973) 239-5700
tscrivo@oslaw.com

Brian D. Boone
**ALSTON & BIRD LLP**
1120 S. Tryon St., Ste. 300
Charlotte, NC 28203
T: (704) 444-1000
brian.boone@alston.com

Elizabeth Broadway Brown
**ALSTON & BIRD LLP**
1201 W. Peachtree St. NW, Ste. 4900
Atlanta, GA 30309
T: (404) 881-7000
liz.brown@alston.com

Kelley Connolly Barnaby
**ALSTON & BIRD LLP**
950 F. Street, NW
Washington, D.C. 20004
T: (202) 239-3300
kelley.barnaby@alston.com

Jean E. Richmann
**ALSTON & BIRD LLP**
560 Mission Street, Ste 2100
San Francisco, CA 94105
T: (415) 243-1000
jean.richmann@alston.com

*Counsel for Defendants UnitedHealth Group Incorporated; OptumRx Inc.; and OptumInsight, Inc.*

Drew Cleary Jordan
**MORGAN LEWIS & BOCKIUS LLP**
502 Carnegie Center
Princeton, NJ 08540-6241
Drew.jordan@morganlewis.com
Tel: (609) 919-6600

Jason R. Scherr
Patrick A. Harvey
Lindsey T. Levy
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004-2541
jr.scherr@morganlewis.com
patrick.harvey@morganlewis.com
lindsey.levy@morganlewis.com
Tel: (202) 739-3000

-and-

Katherine A. Vaky
**MORGAN, LEWIS & BOCKIUS LLP**
One Oxford Centre, Thirty Second Floor
Pittsburgh, PA 15219-6401
kathryn.vaky@morganlewis.com
Tel: (412) 560-3300

*Counsel for Evernorth Health, Inc. (formerly known as Express Scripts Holding Company), Express Scripts, Inc., Express Scripts Administrators, LLC, ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., and Medco Health Solutions, Inc.*

Kevin H. Marino
John D. Tortorella
**MARINO, TORTORELLA & BOYLE, P.C.**
437 Southern Boulevard
Chatham, New Jersey 07928
T: (973) 824-9300
F: (973) 824-8425
kmarino@khmarino.com
jtortorella@khmarino.com

Enu Mainigi
Craig Singer
R. Kennon Poteat III
A. Joshua Podoll
Daniel Dockery
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
T: (202) 434-5000
F: (202) 434-5029
emainigi@wc.com
csinger@wc.com
kpoteat@wc.com
apodoll@wc.com
ddockery@wc.com

*Counsel for CVS Health Corporation; CVS Pharmacy, Inc.; Caremark Rx, L.L.C.; Caremark PCS Health, L.L.C.; and Caremark, L.L.C.*

# <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................. 1

ARGUMENT ........................................................................................................ 2

I.     THE STATES' CLAIMS ARE UNTIMELY .......................................... 2

II.    THE STATES FAIL TO STATE CLAIMS UNDER THEIR RESPECTIVE
UNFAIR TRADE PRACTICES LAWS ................................................. 4

    A.    PBM rebating practices are neither unfair nor deceptive. .......... 5

    B.    The alleged misrepresentations are non-actionable subjective
statements. ................................................................................... 8

    C.    The alleged acts and misrepresentations are not consumer-facing. .......... 9

III.    THE STATES' UNJUST-ENRICHMENT CLAIMS FAIL. .......................... 10

    A.    Adequate legal remedies bar the unjust-enrichment claims. ................... 10

    B.    The States' unjust-enrichment claims fail on the merits.......................... 10

IV.    MONTANA FAILS TO PLAUSBILY ALLEGE ANY CONSPIRACY. ....... 13

CONCLUSION ................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Alfred L. Snapp & Son, Inc. v. Puerto Rico,*
458 U.S. 592 (1982) ................................................................................... 13

*Associated Mgmt. Servs. v. Ruff,*
424 P.3d 571 (Mont. 2018) ........................................................................ 11

*Buetow v. A.L.S. Enters., Inc.,*
564 F. Supp. 2d 1038 (D. Minn. 2008)...................................................... 14

*California v. Frito-Lay, Inc.,*
474 F.2d 774 (9th Cir. 1973) ..................................................................... 13

*Chi. Title Ins. Co. v. Teachers' Ret. Sys.,*
7 N.E.3d 19 (Ill. App. Ct. 2014)........................................................... 10, 11

*Christensen v. Novo Nordisk Inc.,*
No. 3:17-cv-02678 (D.N.J. Apr. 20, 2017) ................................................. 3

*Forsyth v. Humana, Inc.,*
114 F.3d 1467 (9th Cir. 1997) ..................................................................... 9

*Grizzly Sec. Armored Express, Inc. v. Bancard Servs., Inc.,*
384 P.3d 68 (Mont. 2016) ............................................................................ 2

*Harris County v. Eli Lilly & Co.,*
2022 WL 479943 (S.D. Tex. Feb. 16, 2022) ............................................. 12

*In re Elk Cross Timbers Decking,*
2015 WL 6467730 (D.N.J. Oct. 26, 2015) .................................................. 5

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.,*
44 F.4th 959 (10th Cir. 2022) ................................................................. 1, 7

*In re Insulin Pricing Litig.,*
2024 WL 416500 (D.N.J. Feb. 5, 2024) ................................................. 1, 6

*In re Novartis & Par Antitrust Litig.,*
2019 WL 3841711 (S.D.N.Y. Aug. 15, 2019) ........................................... 12

*In re Opana ER Antitrust Litig.*,
  2016 WL 4245516 (N.D. Ill. Aug. 11, 2016) ................................................ 12

*Minnesota ex rel. Ellison v. Sanofi-Aventis U.S. LLC*,
  2020 WL 2394155 (D.N.J. Mar. 31, 2020)................................................... 12

*Mont. Digital, LLC v. Trinity Lutheran Church*,
  473 P.3d 1009 (Mont. 2020) .................................................................. 10, 11

*MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*,
  2019 WL 1418129 (D.N.J. Mar. 29, 2019)................................................... 12

*Nesby v. Country Mut. Ins. Co.*,
  805 N.E.2d 241 (Ill. App. Ct. 2004) ........................................................... 11

*Osterman v. Sears, Roebuck & Co.*,
  80 P.3d 435 (Mont. 2003) ........................................................................... 2

*Paatalo v. J.P. Morgan Chase Bank, N.A.*,
  2011 WL 13130862 (D. Mont. May 18, 2011) ............................................. 14

*Pfizer, Inc. v. Lord*,
  522 F.2d 612 (8th Cir. 1975) ...................................................................... 13

*PNC Bank, N.A. v. Wilson*,
  2015 WL 3887602 (D. Mont. June 23, 2015) ................................................ 5

*Price v. Philip Morris, Inc.*,
  848 N.E.2d 1 (Ill. 2005) ........................................................................... 6, 7

*Signal Peak Energy, LLC v. E. Mont. Minerals, Inc.*,
  922 F. Supp. 2d 1142 (D. Mont. 2013) ....................................................... 11

*Simmons Oil Corp. v. Holly Corp.*,
  852 P.2d 523 (Mont. 1993) ........................................................................ 13

*State Farm Mut. Auto. Ins. Co. v. Smith*,
  757 N.E.2d 881 (Ill. 2001) ........................................................................... 5

*T-4 Corp. v. McDonald's Corp.*,
  2017 WL 3037422 (D. Mont. July 17, 2017) ............................................... 13

*West Virginia ex rel. McGraw v. CVS Pharm., Inc.*,
  646 F.3d 169 (4th Cir. 2011) ..................................................................... 13

## RULES

Fed. R. Civ. P. 9 ......................................................................................................... 4, 5

Fed. R. Civ. P. 12 ........................................................................................................... 1

## STATUTES

42 U.S.C. § 1320b-23(b) ............................................................................................... 6

42 U.S.C. § 1395w-3a(c)(6)(b) ..................................................................................... 5

42 U.S.C. § 1396r–8(a)(1) ............................................................................................ 8

42 U.S.C. § 1396r-8(a)(7) ............................................................................................. 8

42 U.S.C. § 1396r-8(b)(2) ............................................................................................. 8

215 Ill. Comp. Stat. 5/513b1(b)(5) ............................................................................... 6

375 Ill. Comp. Stat. 5/13-205 ....................................................................................... 2

815 Ill. Comp. Stat. 505/6 ........................................................................................... 10

815 Ill. Comp. Stat. 505/1(e) ......................................................................................... 9

815 Ill. Comp. Stat. 505/10a ....................................................................................... 10

815 Ill. Comp. Stat. 505/10b(1) ..................................................................................... 7

Inflation Reduction Act of 2022, Pub. L. No. 117-169, § 11301, 136 Stat. 1818,
     1896 (2022) ............................................................................................................. 6

Mont. Code Ann. § 33-2-2402(7)(a) ............................................................................. 6

Mont. Code Ann. § 30-14-102(1) ................................................................................... 9

Mont. Code Ann. § 30-14-111 ..................................................................................... 10

Mont. Code Ann. § 30-14-133 ..................................................................................... 10

Mont. Code Ann. § 30-14-142 ..................................................................................... 10

Mont. Code Ann. § 30-14-144 ..................................................................................... 10

**OTHER AUTHORITIES**

42 C.F.R. § 447.509 ........................................................................................... 6

Restatement (Second) of Contracts § 344, cmt. a .......................................... 11

Restatement (Second) of Contracts § 370 ...................................................... 11

Restatement (Third) of Restitution and Unjust Enrichment § 2(2) ............................ 11

## INTRODUCTION[1]

In this MDL, state attorneys general in Montana, Illinois, and elsewhere have filed sweeping actions challenging the list prices for insulin set by manufacturers and the post-sale discounts or rebates off those prices that pharmacy benefit managers (PBMs) negotiate from manufacturers to offset their health-plan clients' net drug costs. But drug manufacturers—not PBMs—control the list price, or Wholesale Acquisition Cost (WAC), of insulin. *In re Insulin Pricing Litig.*, 2024 WL 416500, at *21 (D.N.J. Feb. 5, 2024) (Martinotti, J.) ("By setting the list prices for their analog insulin products, [manufacturer] Defendants effectively set the initial input from which all downstream prices flow."). And PBM rebate agreements are "a normal competitive tool . . . to stimulate price competition." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 44 F.4th 959, 989 (10th Cir. 2022). The Tenth Circuit held that rebate arrangements like those challenged here were not antitrust violations under a rule of reason analysis because such arrangements stimulate price competition. *Id.* at 983–89.

The States nevertheless claim that the rebates that PBMs negotiate from manufacturers (and pass through to their clients in accordance with the terms of those clients' contracts) are an illicit "insulin pricing scheme." They attempt to plead claims under state unfair-trade-practices statutes—like the Montana Unfair Trade Practices &

---

[1] The Rule 12(b) motions before the Court include Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction by Evernorth Health, Inc.; CVS Health Corporation; UnitedHealth Group Incorporated; and OptumInsight, Inc. Those defendants join this brief subject to and without waiving their personal jurisdiction defenses.

Consumer Protection Act (Montana CPA) and the Illinois Consumer Fraud Act (Illinois CFA)—and common-law theories of unjust enrichment and civil conspiracy. But the States' allegations are fundamentally flawed, and their complaints should be dismissed.[2]

## ARGUMENT

### I.   THE STATES' CLAIMS ARE UNTIMELY.

The States' claims are time-barred. Montana is subject to a two-year limitations period for its CPA claim and a three-year limitations period for its unjust-enrichment and civil conspiracy claims. *Osterman v. Sears, Roebuck & Co.*, 80 P.3d 435, 441 (Mont. 2003); *Grizzly Sec. Armored Express, Inc. v. Bancard Servs., Inc.*, 384 P.3d 68, 73 (Mont. 2016). And Illinois is subject to a five-year limitations period for its claims.[3] 735 Ill. Comp. Stat. 5/13-205.

But Montana and Illinois have been on notice of their claims for much longer than the applicable limitations periods, as their own complaints illustrate. They allege that this "insulin pricing scheme" has taken place "[o]ver the course of the last fifteen years" (Mont. FAC ¶ 13; Ill. Compl. ¶ 13) and reference as evidence publicly available insulin pricing data dating back more than two decades (*e.g.*, Mont. FAC ¶¶ 264–82; Ill. Compl. ¶¶ 259–78); public statements from defendant executives over "at least the last decade" (*e.g.*, Mont. FAC ¶ 137; Ill. Compl. ¶ 129); and investigations and hearings as

---

[2] The PBM Defendants incorporate by reference the Manufacturer Defendants' arguments in their supplemental brief.

[3] The manufacturers have explained why Illinois is subject to a five-year limitations period for *all* of its claims. *See* Ill. ECF No. 60 at 25–30.

early as 2011 and 2016[4] (*e.g.*, Mont. FAC ¶ 536; Ill. Compl. ¶ 146). These allegations show that, with minimal diligence, the States should have known of their claims no later than 2016—six years before they filed suit.

Indeed, both complaints borrow heavily from lawsuits that were filed in this Court in 2017 and consolidated into the *In re Insulin Pricing Litigation* consumer action.[5] There, individual consumers challenged insulin pricing and claimed to have discovered, years earlier, the same alleged "scheme." Three of those suits included claims under the Montana CPA and Illinois CFA, and two originally named the PBMs as defendants.[6] As co-lead counsel for the Third-Party Payer Class Track recently observed, "the underlying list price scheme, which was pled in the consumer case in 2017, is the essential factual background of every single complaint [in this MDL]." ECF No. 17 at 44:15–17. The discovery of this alleged "scheme" is not limited to consumers. In October 2018, Minnesota sued insulin manufacturers in this Court alleging the same

---

[4] Also, the Senate Finance Committee's 2021 insulin report—cited by both Montana and Illinois (*see* Mont. FAC ¶¶ 175, 342–43, 345, 374–75; Ill. Compl. ¶¶ 168, 338–39, 341, 370–71)—noted that several state attorneys general had been investigating PBMs at least as early as 2017. *See* U.S. Senate Fin. Comm., *Insulin: Examining the Factors Driving the Rising Cost of a Century Old Drug* at 32 n.142 (Jan. 14, 2021), https://www.finance.senate.gov/imo/media/doc/Grassley-Wyden%20Insulin%20Report%20(FINAL%201).pdf.

[5] *See Chaires v. Novo Nordisk Inc.*, No. 3:17-cv-00699 (D.N.J. Feb. 2, 2017); *Valdes v. Sanofi-Aventis U.S. LLC*, No. 2:17-cv-00939 (D.N.J. Feb. 13, 2017); *Carfagno v. Novo Nordisk Inc.*, No. 2:17-cv-03407 (D.N.J. May 12, 2017); *Barnett v. Novo Nordisk Inc.*, No. 3:17-cv-01580 (D.N.J. Mar. 8, 2017); *Christensen v. Novo Nordisk Inc.*, No. 3:17-cv-02678 (D.N.J. Apr. 20, 2017).

[6] *See, e.g.*, *Chaires* Compl. ¶¶ 439–45, 529–36; *Barnett* Compl. ¶¶ 30–35, 291–96, 366–71; *Christensen* Compl. ¶¶ 46–51, 318–23, 393–98.

"scheme" and identifying the PBMs as members of alleged RICO enterprises with the manufacturers.[7] And other plaintiffs in this MDL have made clear that they had everything they needed to be on notice of the basis for these claims based on public information by November 2016.[8] Montana and Illinois's own counsel conceded at a hearing on Defendants' motion to dismiss in *Montana* in 2023, that "it took [my law firm] about five years to try to understand it before we ever filed our first law enforcement involving PBMs or manufacturers." Mont. ECF No. 159 at 30:8–13.

These lawsuits, and the States' reliance upon publicly available information predating the limitations periods, undermine any claims of diligence or conclusory allegations that the discovery rule, estoppel, or fraudulent concealment might excuse their tardiness in filing suit. Nor were the limitations periods tolled by the continuing-wrong doctrine. Illinois law does not allow relief under that doctrine if, as here, the challenged conduct was known outside the limitations period, and Montana law limits the doctrine's application to inapplicable trespass and nuisance cases.[9]

## II.   THE STATES FAIL TO STATE CLAIMS UNDER THEIR RESPECTIVE UNFAIR TRADE PRACTICES LAWS.

The States also fail to allege Montana CPA and Illinois CFA violations. To start, Rule 9(b)'s particularly requirement applies to both claims because they are premised

---

[7] *Minnesota ex rel. Ellison v. Sanofi-Aventis U.S.*, No. 2:18-cv-14999 (D.N.J. Oct. 16, 2018).
[8] *See* ECF No. 261, Pls.' Second Am. Compl., ¶¶ 130-31, 134, *In Re Direct Purchaser Insulin Pricing Litig.*, No. 3:20-cv-3426 (D.N.J. Nov. 8, 2022); ECF No. 1, Compl., ¶ 133, *Local No. 1 Health Fund v. Eli Lilly & Co.*, No. 2:23-cv-21160 (D.N.J. Oct. 13, 2023).
[9] Mont. ECF No. 132 at 4; Ill. ECF No. 62 at 20–21.

on a "deceptive scheme" involving alleged misrepresentations. Mont. FAC ¶ 12; Ill. Compl. ¶ 12. Those deception-based allegations sound in fraud and are therefore subject to Rule 9(b). *E.g.*, *PNC Bank, N.A. v. Wilson*, 2015 WL 3887602, at *7 (D. Mont. June 23, 2015); *In re Elk Cross Timbers Decking*, 2015 WL 6467730, at *15 (D.N.J. Oct. 26, 2015). Regardless of the standard applied, the States' allegations fail.

### A.     PBM rebating practices are neither unfair nor deceptive.

The States do not (and cannot) point to any statute, common law, or other authority showing that the alleged conduct offends established public policy. Standard commercial conduct cannot form the basis of such a claim because it is not *contrary* to public policy; it is *prescribed* by public policy. *See State Farm Mut. Auto. Ins. Co. v. Smith*, 757 N.E.2d 881, 885 (Ill. 2001) (courts "may not establish a public policy which is contrary to the public policy that the Illinois legislature has determined is appropriate").

For decades manufacturers have entered into rebate agreements with PBMs—and others—for hundreds of medicines (including insulin), and PBMs have developed formulary offerings that consider drugs' net cost after rebates. Rebate agreements are standard and accepted parts of the industry in which employers, unions, governments (including Montana and Illinois), and others knowingly participate. Those practices are required by or provided for in legislation.

For example, the federal government recognizes that manufacturers pay rebates to PBMs. "Wholesale acquisition cost" is defined by federal law—a definition that contemplates rebates. *See* 42 U.S.C. § 1395w-3a(c)(6)(b) (defining WAC as the

5

"manufacturer's list price for the drug or biological to wholesalers or direct purchasers

. . . , *not including prompt pay or other discounts, rebates, or reductions in price*" (emphasis added)).

Congress also requires manufacturers to pay rebates for certain drugs dispensed to

Medicaid enrollees. *See* 42 C.F.R. § 447.509. And in the Medicare context, federal law

requires PBMs to report the rebates they negotiate. *See* 42 U.S.C. § 1320b-23(b).

Recently, Congress passed legislation that will require drug manufacturers to pay

additional rebates to Medicare if the manufacturers increase list prices faster than the

rate of inflation. *See* Inflation Reduction Act of 2022, Pub. L. No. 117-169, § 11301,

136 Stat. 1818, 1896 (2022). In this Court's words on other plaintiffs' request to enjoin

the manufacturers' reporting of list prices, "the Court does not see—and Plaintiffs do

not explain—how it would be able to enjoin [manufacturer] Defendants as Plaintiffs

request without causing Defendants to violate federal law." *In re Insulin Pricing Litig.*,

2024 WL 416500, at *28; *see also Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 47 (Ill. 2005)

(the Illinois CFA cannot "impose higher . . . requirements on parties than those that are

sufficient to satisfy federal regulations"). To allow the States' claims would be to require

the PBMs to act contrary to public policy—and, in some instances, contrary to the law.

Likewise, Montana and Illinois both recognize that the rebates and other

discounts that PBMs negotiate are a legitimate, standard industry practice. *See* Mont.

Code Ann. § 33-2-2402(7)(a) (PBMs, among other things, "negotiate[] rebates,

discounts, or other financial incentives and arrangements with manufacturers,

wholesale distributors, or other third parties."); 215 Ill. Comp. Stat. 5/513b1(b)(5)

(granting plan sponsors audit rights to review "any and all rebate amounts secured" by PBMs). Absent from either state's statutes is prohibition of the well-established practice of manufacturers paying rebates to PBMs to pass on to their clients. Such standard rebating arrangements are not an unreasonable restraint of competition under the antitrust laws. *In re EpiPen*, 44 F.4th at 983–89. For essentially the same reasons, the States' attempt to reframe legitimate business practices as unfair and deceptive fails.

And because Illinois law expressly contemplates PBM rebating practices, the challenged conduct falls within the Illinois CFA's safe harbor. That safe harbor bars any claim against PBMs because it exempts from liability "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 Ill. Comp. Stat. 505/10b(1). The authorization "need not be express," and the Illinois CFA "will not impose higher . . . requirements on parties than those that are sufficient to satisfy federal regulations." *Price*, 848 N.E.2d at 47 (citations and quotation marks omitted). Thus, because federal and state law expressly contemplate rebating practices, the challenged conduct falls within the Illinois CFA's safe harbor.

Nor can the States plausibly claim that the PBMs engaged in immoral or unscrupulous conduct. If, as the States allege, negotiating rebates from manufacturers leads to manufacturers raising WAC, then Montana, Illinois, and other states engaged in the same supposedly unscrupulous practice. Both Montana and Illinois contract with PBMs to obtain discounts off drug prices. *E.g.*, Mont. FAC ¶ 121; Ill. Compl. ¶ 114.

And to participate in Medicaid, manufacturers must enter into rebate agreements either directly with a State or with the Secretary of Health and Human Services on behalf of the States. 42 U.S.C. § 1396r–8(a)(1). If the State wants those rebates, it must submit utilization data to the federal government and manufacturers. 42 U.S.C. § 1396r-8(a)(7), (b)(2). Montana and Illinois participate in this rebate program[10] even though, according to those States here, manufacturers raise WAC to maintain profits to make up for the rebates (that the States themselves seek). The States' participation in the practices they now decry undermines any argument that the PBMs' alleged conduct is improper.

### B.    The alleged misrepresentations are non-actionable subjective statements.

Montana and Illinois also have failed to plead any actionable misrepresentations by the PBMs. They take issue with various alleged statements by PBMs, including that PBMs work to lower the price of the at-issue drugs, that they are transparent in their businesses, and that PBMs strive to improve the health of their clients' beneficiaries. (*E.g.*, Mont. FAC ¶¶ 441–42, 444–47; Ill. Compl. ¶¶ 431–32, 440–41). But such statements are non-actionable statements of opinion and aspiration. Representations that a business can save money or lower costs are textbook examples of generalized statements that do not support a deception claim. *E.g.*, *Forsyth v. Humana, Inc.*, 114 F.3d

---

[10] *Drug and Pharmacy News*, Montana.gov, https://medicaidprovider.mt.gov/drugnews; *Pharmaceutical Labelers with Signed Rebate Agreements*, Ill. Dep't of Healthcare & Family Servs., https://hfs.illinois.gov/medicalproviders/pharmacy/labelers.html; *Medicaid Drug Rebate Program*, Medicaid.gov, https://www.medicaid.gov/medicaid/prescription-drugs/medicaid-drug-rebate-program/index.html.

1467, 1481 (9th Cir. 1997) (statements that defendant could "control costs" and save money were "too general" to support fraud claim), *overruled on other grounds by Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012).

### C. The alleged acts and misrepresentations are not consumer-facing.

The States also fail to allege any conduct or statements that fall within the scope of the Montana CPA and Illinois CFA because PBM clients are not consumers. The Montana CPA and the Illinois CFA are consumer-protection statutes. To be actionable, the challenged acts must be likely to mislead consumers or be injurious to consumers.[11] *Young v. Era Advantage Realty*, 513 P.3d 505, 513 (Mont. 2022); *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002). But PBMs' clients are employers, unions, governments and other third-party payors—not consumers who purchase insulin for personal use. Mont. FAC ¶¶ 22, 283; Ill. Compl. ¶¶ 22, 25, 279. The PBMs' alleged misconduct includes negotiating rebates off drugs' list prices, misrepresenting that PBMs lower drug costs, and retaining manufacturer rebates and other payments. But the States do not—and cannot—allege how any of this could mislead insulin *consumers* or how *consumers* would behave differently in selecting products if PBMs did not engage in the challenged conduct. Consumers do not purchase PBM services, so PBMs' actions cannot impact consumers' product choice.

---

[11] A consumer is a "person who purchases or leases goods, services, real property, or information primarily for personal, family, or household purposes." Mont. Code Ann. § 30-14-102(1); *see also* 815 Ill. Comp. Stat. 505/1(e) (similar).

## III.   THE STATES' UNJUST-ENRICHMENT CLAIMS FAIL.

The States assert claims for unjust enrichment in their *parens patriae* capacity on behalf of their citizens. Montana also purports to bring the claim on its own behalf as a payor.[12] But unjust enrichment is not a cognizable remedy here.

### A.   Adequate legal remedies bar the unjust-enrichment claims.

Unjust enrichment is an equitable remedy that is available only "when an adequate legal remedy does not exist." *Mont. Digital, LLC v. Trinity Lutheran Church*, 473 P.3d 1009, 1012 (Mont. 2020); *see Chi. Title Ins. Co. v. Teachers' Ret. Sys.*, 7 N.E.3d 19, 24 (Ill. App. Ct. 2014). Neither State alleges that it lacks a legal remedy. Nor could they— both bring claims under their state unfair trade practices laws. They cannot also claim that there is an inadequate legal remedy for alleged unfair trade practices violations given the availability of damages, civil penalties, and other relief under those laws—even if they are not entitled to those remedies on the merits. *E.g.*, Mont. Code Ann. §§ 30-14-111, -133, -142, -144; 815 Ill. Comp. Stat. 505/6, 505/10a. Because the Montana CPA and Illinois CFA provide adequate remedies at law, the States cannot claim equitable relief through unjust enrichment.

### B.   The States' unjust-enrichment claims fail on the merits.

Unjust enrichment arises when the defendant "has unjustly retained a benefit to the plaintiff's detriment, and [the] defendant's retention of the benefit violates the

---

[12] Illinois's claim is only on behalf of its citizens. *See* Ill. ECF No. 87 at 27.

fundamental principles of justice, equity, and good conscience." *Chi. Title Ins.*, 7 N.E.3d at 24 (cleaned up); *see Signal Peak Energy, LLC v. E. Mont. Minerals, Inc.*, 922 F. Supp. 2d 1142, 1149 (D. Mont. 2013). Unjust enrichment focuses on an individual-specific, monetary remedy—restitution of the money unjustly retained "by returning it to the party who conferred it." Restatement (Second) of Contracts § 344, cmt. a; *see also id.* § 370; *Mont. Digital*, 473 P.3d at 1011–12; *Chi. Title Ins.*, 7 N.E.3d at 24–25.

*First*, both Montana and Illinois (like the rest of the states in the State AG Track) affirmatively allege the existence of contracts governing this dispute. The existence of those contracts bars their unjust-enrichment claims. *E.g.*, *Associated Mgmt. Servs. v. Ruff*, 424 P.3d 571, 595 (Mont. 2018); *Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. App. Ct. 2004); Restatement (Third) of Restitution and Unjust Enrichment § 2(2). As alleged in the complaints, the PBMs contract with drug manufacturers, with payors, and with pharmacies. *E.g.*, Mont. FAC ¶¶ 297, 300–01, 350, 403, 382–84, 464, 513; Ill. Compl. ¶¶ 292, 296, 346. Both Montana and Illinois also affirmatively allege that *they* receive PBM services under PBM contracts. *See* Mont. FAC ¶ 121; Ill. Compl. ¶¶ 114, 116, 169.[13] Those contracts—with manufacturers, payors, and pharmacies—form the entire basis for the States' liability theory. Without those contracts, the States would have no PBM services or manufacturer rebates to challenge. That is why, in an earlier

---

[13] Montana and Illinois claim that "[t]here is no express contract governing the dispute" because "PBMs do not contract with payors, including the State, on an individual drug basis." Mont. FAC ¶ 532; Ill. Compl. ¶ 499. But the contract need not identify the at-issue drugs by name to govern the dispute at issue.

lawsuit alleging the same insulin pricing "scheme," a federal court dismissed a nearly identical unjust-enrichment claim because it "sound[ed] more in contract than in quasi-contract." *Harris County v. Eli Lilly & Co.*, 2022 WL 479943, at *14 (S.D. Tex. Feb. 16, 2022). The Court should do the same here. The existence of contracts bars the States' *parens patriae* unjust-enrichment claims, as well as Montana's claim on its own behalf.

*Second*, neither Montana nor Illinois allows unjust-enrichment claims by indirect purchasers. *In re Novartis & Par Antitrust Litig.*, 2019 WL 3841711, at *6 (S.D.N.Y. Aug. 15, 2019); *In re Opana ER Antitrust Litig.*, 2016 WL 4245516, at *2 (N.D. Ill. Aug. 11, 2016). The States bring their unjust-enrichment claims on behalf of citizens who allegedly overpaid for insulin. But PBMs do not sell insulin to consumers. Nor do they provide any services to consumers; they provide services to third-party health plans. The States therefore fail to allege any benefit conferred by consumers directly to the PBMs. The Court should dismiss the States' *parens patriae* unjust-enrichment claims, like it did a similar claim against the manufacturers. *See MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, 2019 WL 1418129, at *20 (D.N.J. Mar. 29, 2019). The same conclusion follows even inasmuch as the States seek relief on their own behalf. *See Minnesota ex rel. Ellison v. Sanofi-Aventis U.S. LLC*, 2020 WL 2394155, at *8–9 (D.N.J. Mar. 31, 2020) (applying indirect-purchaser rule to bar Minnesota's RICO claim despite allegations that Minnesota's Department of Corrections purchased insulin).

*Third*, unjust enrichment is incompatible with a State's *parens patriae* capacity. A suit brought in a State's *parens patriae* capacity implicates the State's quasi-sovereign

interest "in the health and well-being—both physical and economic—of its residents in general." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 600 (1982). That interest is "an interest apart from that of particular individuals" and is not "a basis for recovery of money damages for injuries suffered by individuals." *California v. Frito-Lay, Inc.*, 474 F.2d 774, 775 (9th Cir. 1973); *see West Virginia ex rel. McGraw v. CVS Pharm., Inc.*, 646 F.3d 169, 176 (4th Cir. 2011) (a State's right to obtain relief "separate and apart from the interests of particular consumers" is what "validates this action as a *parens patriae* action" (citation omitted)); *see also Pfizer, Inc. v. Lord*, 522 F.2d 612, 616 (8th Cir. 1975) ("A *parens patriae* action cannot be brought to collect the damage claim of one legally entitled to sue in his own right."). Recovery under an unjust-enrichment theory also fails to rectify the alleged harm and is incompatible with the States' theory of liability because it would simply confer to the States a benefit alleged to belong to others (individual diabetics and payors). The States' unjust-enrichment claims therefore fail.

## IV.   MONTANA FAILS TO PLAUSBILY ALLEGE ANY CONSPIRACY.

Montana (but not Illinois) also presses a claim for civil conspiracy. But civil conspiracy is not an independent cause of action. *See Simmons Oil Corp. v. Holly Corp.*, 852 P.2d 523, 530 (Mont. 1993). If the Court dismisses Montana's other claims, it must dismiss the conspiracy claim too. Montana's conspiracy claim fails for the more fundamental reason that Montana has not plausibly alleged any "meeting of the minds" among the PBMs or between the PBMs and manufacturers. *T-4 Corp. v. McDonald's Corp.*, 2017 WL 3037422, at *7 (D. Mont. July 17, 2017).

The complaint alleges, in conclusory fashion, that the PBMs and manufacturers conspired and "aid[ed] and abett[ed] each other" to violate the Montana CPA and to "commit" unjust enrichment. Mont. FAC ¶ 535. But none of the substantive allegations plausibly support that. All Montana points to are the PBMs' rebate agreements with the manufacturers—*i.e.*, contracts—as well as general communications and contact between the PBMs and manufacturers, like attending industry conferences and participating in trade associations. *See* Mont. FAC ¶¶ 318, 320, 325-28, 330, 354. But typical business conduct is not the stuff of a conspiracy. The rebate agreements do not establish a conspiracy. *See Buetow v. A.L.S. Enters., Inc.*, 564 F. Supp. 2d 1038, 1042 n.1 (D. Minn. 2008) ("Obviously, not every contract is evidence of a conspiracy; only when a contract contains an agreement to violate the law have courts found conspiracies to exist . . . ."). And the rest of the allegations—about industry conferences and trade associations—suggest, at most, an *opportunity* to conspire without plausibly setting forth anything more. *See Paatalo v. J.P. Morgan Chase Bank, N.A.*, 2011 WL 13130862, at *9 (D. Mont. May 18, 2011) ("There must be factual allegations of further circumstances pointing toward a meeting of the minds between the alleged co-conspirators."). The Court should dismiss the conspiracy claim.

## **CONCLUSION**

For these reasons, and those addressed in the original briefs, the Court should dismiss Montana's and Illinois's complaints with prejudice.

Dated this 24th day of April, 2024.

  _/s/ Brian D. Boone_
Thomas P. Scrivo
Young Yu
**O'TOOLE SCRIVO, LLC**

Brian D. Boone
Elizabeth Broadway Brown
Kelley Connolly Barnaby
Jean E. Richmann
**ALSTON & BIRD**

*Counsel for UnitedHealth Group Incorporated;*
*OptumRx Inc.; and OptumInsight, Inc.*

  _/s/ A. Joshua Podoll_
Kevin H. Marino, Esq.
John D. Tortorella, Esq.
**MARINO, TORTORELLA &**
**BOYLE, P.C.**

Enu Mainigi
Craig Singer
R. Kennon Poteat III
A. Joshua Podoll
Daniel Dockery
**WILLIAMS & CONNOLLY LLP**

*Counsel for CVS Health Corporation; CVS*
*Pharmacy, Inc.; Caremark Rx, L.L.C.;*
*Caremark PCS Health, L.L.C.; and*
*Caremark, L.L.C.*

  _/s/ Jason R. Scherr_
Drew Cleary Jordan
Jason R. Scherr
Patrick A. Harvey
Lindsey T. Levy
Katherine A. Vaky
**MORGAN, LEWIS & BOCKIUS,**
**LLP**

*Counsel for Evernorth Health, Inc.; Express*
*Scripts, Inc.; Express Scripts Administrators,*
*LLC; ESI Mail Pharmacy Service, Inc.;*
*Express Scripts Pharmacy, Inc.; and Medco*
*Health Solutions, Inc.*

15