# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

IN RE: INSULIN PRICING
LITIGATION

**Case No. 2:23-MD-03080**
**MDL No. 3080**


**Hon. Brian R. Martinotti**
**Hon. Rukhsanah L. Singh**

**DOCUMENT RELATES TO:**
*Montana ex rel. Knudsen v. Eli Lilly & Co.*, No. 2:23-cv-04214
*Illinois ex rel. Raoul v. Eli Lilly & Co.*, No. 2:23-cv-04242

## PLAINTIFFS' OPPOSITION TO MANUFACTURERS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS

(Counsel listed on next page)

# COUNSEL LIST

David F. Buysse
Deputy Chief, Public Interest Division
**Illinois Attorney General's Office**
100 W. Randolph Street – 12th Floor
Chicago, IL 60601
Tel: (312) 590-7844
David.Buysse@Ilag.Gov

Darren Kinkead
Deputy Chief, Special Litigation Bureau
**Illinois Attorney General's Office**
100 W. Randolph Street – 11th Floor
100 W. Randolph Street – 12th Floor
Chicago, IL 60601
Tel: (773) 590-6967
Darren.Kinkead@Ilag.Gov

Anna Schneider
Bureau Chief, Office Of Consumer Protection
**Montana Department Of Justice**
P.O. Box 200151
Helena, Montana 59620-0151
Telephone: (406) 444-4500
Anna.Schneider@Mt.Gov

W. Lawrence Deas, Esquire
Lawrence@Listondeas.Com
**Liston Deas PLLC**
William Liston III, Esquire
william@listondeas.com
Post Office Box 14127

Jackson, Mississippi 39236
Tel. (601) 981-1636'
Joanne Cicala, Esquire
Josh Wackerly, Esquire
R. Johan Conrod, Esquire
**The Cicala Law Firm PLLC**
101 College Street
Dripping Springs, Texas 78620
Tel. (512) 275-6550
joanne@cicalapllc.com
josh@cicalapllc.com
johan@cicalapllc.com

Matthew C. McDonald, Esquire
**David Nutt & Associates PC**
605 Crescent Blvd., Suite 200
Ridgeland, Mississippi 39157
Tel. (601) 898-7302
Mattm@davidnutt.com

Tanya D. Ellis
Trey Watkins
**Forman Watkins & Krutz LLP**
210 East Capitol Street, Suite 2200
Jackson, Mississippi 39201-2375
Tel. (601) 960-8600
Fax. (601) 960-8613
tanya.ellis@formanwatkins.com
trey@formanwatkins.com

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................... **IV**

**INTRODUCTION** ......................................................................... 1

    I.    The States Plead Valid Consumer Protection Claims ........................................ 2

    II.    Defendants' Belated Counterarguments are Meritless ...................................... 4

        A.    Medicare's WAC definition is irrelevant and does not insulate the Manufacturers from liability ................................................................... 4

        B.    Medicare's WAC definition does not preempt the States' claims ............ 7

        C.    The Manufacturers' "price inflation" theory is meritless and inappropriate on a motion to dismiss ......................................................... 8

        D.    The State is not asserting "price gouging" claims ..................................... 9

        E.    The States' statutes do not violate the Dormant Commerce Clause ............................................................................................ 10

            1.    Rejection of the Extraterritoriality Doctrine..................................... 10

            2.    The *Pike* balancing test favors the States............................................ 12

    III.    The State's Claims are not time-barred............................................................ 14

**CONCLUSION** ............................................................................. **14**

# TABLE OF AUTHORITIES

## Cases

*Ass'n for Accessible Meds. v. Frosh,*
  887 F.3d 664 (4th Cir. 2018) ...................................................................... 11, 12

*Bartnett v. Abbott Labs.,*
  492 F. Supp. 3d 787 (N.D. Ill. 2020) ............................................................. 10

*Bates v. Dow Agrosciences LLC,*
  544 U.S. 431 (2005) ......................................................................................7

*City of Miami v. Eli Lilly & Co.,*
  2022 WL 198028 (S.D. Fla. Jan. 21, 2022) ..................................................

*Commonwealth of Ky. v. Novo Nordisk,*
  No. 2:23-cv-21374 (D.N.J. Jan. 15, 2020) [**Exhibit A**] .................................1

*Exxon Corp. v. Governor of Maryland,*
  437 U.S. 117 (1978) ...................................................................................... 13

*F.T.C. v. Sperry & Hutchinson Co.,*
  405 U.S. 233 (1972) ...................................................................................... 10

*Freedom Holdings, Inc. v. Cuomo,*
  592 F. Supp. 2d 684 (S.D.N.Y. 2009) ............................................................ 13

*GenBioPro, Inc. v. Sorsaia,*
  2023 WL 5490179 (S.D.W.V. Aug. 24, 2023)................................................. 11

*Green v. Nuveen Advisory Corp.,*
  186 F.R.D. 486 (N.D. Ill. 1999) ....................................................................

*Harris Cnty. v. Eli Lilly & Co.,*
  2020 WL 5803483 (S.D. Tex. Sept. 29, 2020) ...............................................1

*In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.,*
  537 F. Supp. 3d 679 (D.N.J. 2021) (Martinotti, J.) ........................................2

*In re Direct Purchaser Insulin Pricing,*
  2021 WL 2886216 (D.N.J. Jul. 9, 2021) (Martinotti, J.) .................................1

*In re Insulin Pricing Litig.*,
2019 WL 643709 (D.N.J Feb. 15, 2019)...........................................................................1

*In re Lupron Mktg. & Sales Practices Litig.*,
295 F. Supp. 2d 148 (D. Mass. 2003)...........................................................................5, 7

*In re Pharm. Indus. Average Wholesale Price Litig.*,
263 F. Supp. 2d 172 (D. Mass. 2003)...............................................................................8

*In re Pharm. Indus. Average Wholesale Price Litig.*,
491 F. Supp. 2d 20 (D. Mass. 2007)..................................................................................6

*In re Pharm. Indus. Average Wholesale Price Litig.*,
582 F.3d 156 (1st Cir. 2009)..........................................................................................7, 8

*In re Smith*,
866 F.2d 576 (3d Cir. 1989)............................................................................................10

*Johnson & Johnson Vision Care, Inc. v. Reyes*,
665 Fed. Appx. 736 (10th Cir. 2016)..............................................................................14

*Med. Soc'y of State of New York v. Cuomo*,
976 F.2d 812 (2d Cir. 1992)..............................................................................................7

*Merck & Co. Inc., et al. v. U.S. Dept. of Health and Human Services, et al.*,
No. 1:19-cv-01738 (D.D.C.)...............................................................................................6

*Mississippi ex rel. Fitch v. Eli Lilly & Co.*,
2022 WL 18401603 (S.D. Miss. Aug. 29, 2022)..............................................................1

*MSP Recovery Claims, Series LLC v. Abbott Laboratories*,
2021 WL 2177548 (D.N.J. May 28, 2021)........................................................................5

*MSP Recovery Claims, Series, LLC v. Sanofi Aventis U. S. LLC*,
2019 WL 1418129 (D.N.J. Mar. 29, 2019).......................................................................1

*National Pork Producers Council v. Ross*,
598 U.S. 356 (2023)........................................................................................................11

*New Jersey Staffing Alliance v. Fais*,
2023 WL 4760464 (D.N.J. July 26, 2023).................................................................11, 12

*People ex rel. Fahner v. Hedrich,*
　438 N.E. 2d 924 (Ill. App. Ct. 1982) ................................................................... 4

*People ex rel. Fahner v. Walsh,*
　461 N.E.2d 78 (Ill. App. Ct. 1984) .................................................................... 10

*People ex rel. Madigan v. United Constr. of Am., Inc.,*
　981 N.E.2d 404 (Ill. App. Ct. 2012) ................................................................... 9

*Pharm. Care Mgmt. Ass'n v. Rowe,*
　429 F.3d 294 (1st Cir. 2005) ............................................................................ 13

*Pharm. Care Mgmt. Ass'n v. Rutledge,*
　240 F. Supp. 3d 951 (E.D. Ark. 2017) ............................................................. 14

*Pharm. Research and Mfrs. of Am. v. Walsh,*
　538 U.S. 644 (2003) ...........................................................................................

*Pike v. Bruce Church, Inc.,*
　397 U.S. 137 (1970) .......................................................................................... 12

*Rice v. Santa Fe Elevator Corp.,*
　331 U.S. 218 (1947) ............................................................................................ 7

*Rutledge v. Pharm. Care Mgmt. Ass'n,*
　592 U.S. 80 (2020) ............................................................................................ 14

*Siegel v. Shell Oil Co.,*
　612 F.3d 932 (7th Cir. 2010). ............................................................................ 9

*Typpi v. PNC Bank,*
　2014 WL 296035 (N.D. Ill. Jan. 27, 2014) ....................................................... 4

*Wyeth v. Levine,*
　555 U.S. 555 (2009) ............................................................................................ 8

**Statutes**

FTC Act,
　15 U.S.C. §§ 41-58 ........................................................................................... 3

Illinois Consumer Fraud Act (ICFA),
815 ILCS 505/1................................................................................................4

Montana Consumer Protection Act (MCPA),
Mont. Code Ann. § 30-14-101, *et seq.*.......................................... 4, 9

**Other Authorities**

FTC Policy Statement on Rebates and Fees in Exchange for Excluding Lower-
Cost Drug Products
June 16, 2022, https://www.ftc.gov/legal-library/browse/policy-statement-
federal-trade-commission-rebates-fees-exchange-excluding-lower-cost-drug-
products................................................................................................3

FTC Policy Statement on Unfairness,
Dec. 17, 1980, https://www.ftc.gov/legal-library/browse/ftc-policy-
statement-unfairness.........................................................................4

**Rules**

FED. R. CIV. P. 15(a)(2)......................................................................... 15

**INTRODUCTION**

The States allege that the Manufacturers engaged in misconduct that at least four different courts, including this Court, have held to be deceptive and unfair at the pleading stage. *See In re Direct Purchaser Insulin Pricing*, 2021 WL 2886216 (D.N.J. Jul. 9, 2021) (Martinotti, J.); *Mississippi ex rel. Fitch v. Eli Lilly & Co.*, 2022 WL 18401603 (S.D. Miss. Aug. 29, 2022); *Harris Cnty. v. Eli Lilly & Co.*, 2020 WL 5803483 (S.D. Tex. Sept. 29, 2020); *In re Insulin Pricing Litig.*, 2019 WL 643709 (D.N.J. Feb. 15, 2019); *MSP Recovery Claims, Series, LLC v. Sanofi Aventis U. S. LLC*, 2019 WL 1418129, at *17, *19, n. 16 (D.N.J. Mar. 29, 2019) (finding that plaintiffs stated a claim under several consumer protection acts, **including the ICFA**); *Minnesota by Ellison v. Sanofi-Aventis U.S. LLC*, 2020 WL 2394155, at *15 (D.N.J. Mar. 31, 2020); *Commonwealth of Ky. v. Novo Nordisk*, No. 2:23-cv-21374 (D.N.J. Jan. 15, 2020), attached as Exhibit A.

The Manufacturers do not and cannot distinguish these cases from the States' allegations, and the Court should not "diverge from . . . the sound reasoning" of its prior rulings or those of the other courts that have addressed these issues. *In re Direct Purchaser Insulin Pricing Litig.*, 2021 WL 2886216, *12. The Motions should be denied.

In their Supplemental Brief, the Manufacturers fail to make contact with the States' allegations. Instead, the Manufacturers mischaracterize the States' claims and, based on those mischaracterizations, raise new preemption and dormant Commerce Clause arguments which they failed to make in the underlying briefing. They offer no explanation for this failure and, in fact, previously disclaimed the very preemption

argument they are now asserting. Mont. ECF 159 at 21:14–20.[1,2] These new arguments

have been waived, *In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.,* 537 F.

Supp. 3d 679, 718 (D.N.J. 2021) (Martinotti, J.), and, even if considered, are meritless.

Taking the allegations as true and construing them in the States' favor, the

Manufacturers' Motions should be denied.

## I.     The States Plead Valid Consumer Protection Claims

The Insulin Pricing Scheme is multi-faceted, consisting of layers of deceptive and

unfair conduct, involving far more than a one-time WAC price and standard "rebates."

Specifically, the States allege that:

- the Manufacturers artificially and in lockstep raised the list prices for their at-issue drugs in order to profit from the Scheme, knowing such conduct was pricing diabetics out of the drugs they need to stay alive; Ill. ECF 1-1 ¶¶ 13, 15, 19, 20, 23, 48, 263-78, 328-29, 354, 357, 369, 412-14, 453, 488; Mont. ECF 40 ¶¶ 13, 15, 19, 20, 23, 51, 268–282, 331–332, 358, 362-64, 513;

- the Manufacturers publish their artificially inflated list prices to compendia, pharmacies, PBMs, and others, knowing that they were untethered from the actual prices and knowing they were used to set the prices paid by diabetics; Ill. ECF 1-1 ¶¶ 48, 61, 63, 72, 74, 283, 345, 414-19, 445, 488; Mont. ECF 40 ¶¶ 51, 65, 68, 79, 82, 287, 349, 424, 513;

- the Manufacturers failed to disclose the actual prices for the at-issue drugs; Ill. ECF 1-1 ¶¶ 411, 418-19, 424, 445, 447, 455; Mont. ECF 40 ¶¶ 421, 428-29, 433-34, 457, 466, 513;

---

[1] "[T]he manufacturers publish one list price. It is called the wholesale acquisition cost. That's a term with an established meaning recognized in federal law … *We're not arguing that this definition preempts any claims or anything like that* …" (emphasis added).

[2] References to "ECF" are to: Illinois filings, *Illinois ex rel. Raoul v. Eli Lilly & Co., et. al.,* No. 1-23-cv-170 (N.D. Ill.) and Montana filings, *Montana ex rel. Knudsen v. Eli Lilly & Co., et. al.,* No. 6-22-cv-87 (D. Mont.).

- the Manufacturers repeatedly lied about the reasons for their list price increases, blaming research and development when in reality those costs represent only a fraction of the revenues generated by the at-issue drugs; Ill. ECF 1-1 ¶¶ 245-54, 369, 370, 421-22, 488; Mont. ECF 40 ¶¶ 250–59, 373-74, 513;

- the Manufacturers continually increased their Manufacturer Payments to the PBMs with the intent and effect of foreclosing diabetics' access to lower price drugs and increasing sales and profits from the at-issue drugs; Ill. ECF 1-1 ¶¶ 20, 118, 340-41, 344, 358-60, 369, 372, 488; Mont. ECF 40 ¶¶ 20, 126, 344–45, 347, 362-64, 466, 513;[3]

- the PBMs then ensured that the inflated list prices were used to set the amount that payors and consumers pay for the at-issue drugs and excluded lower priced diabetes medications from their formularies; Ill. ECF 1-1 ¶¶ 112, 114, 165, 169, 206, 284, 346, 362, 425-26, 430, 488; Mont. ECF 40 ¶¶ 119, 121, 172, 212, 288, 350, 366, 513;

- the PBMs concealed and retained the Manufacturer Payments for profits and falsely claimed they were being used to lower prices; Ill. ECF 1-1 ¶¶ 113, 146, 180, 207, 211, 311, 330, 364-67, 371, 374-398, 428-55, 488; Mont. ECF 40 ¶¶ 120, 154, 185, 213, 217, 314, 334, 378-402, 513; and

- the PBMs further misrepresented that their formularies—which are constructed to maximize Manufacturer Payments and to maintain the Manufacturers' dominant market position—were lowering prices and improving diabetics' health; Ill. ECF 1-1 ¶¶ 26, 79-81, 111, 129, 146, 166-67, 174, 180, 207-08, 344, 347, 428-55, 488; Mont. ECF 40 ¶¶ 26, 87–89, 118, 137, 154, 173–74, 179, 185, 213–14, 351, 355, 451, 455, 464.

And Defendants knew their misconduct would (and did) cause substantial injury.

Because diabetics need the at-issue drugs to survive and because Defendants control

---

[3] This conduct alone may violate the FTC Act. *See* FTC Policy Statement on Rebates and Fees in Exchange for Excluding Lower-Cost Drug Products ("inducing PBMs or other intermediaries to place higher-cost drugs on formularies instead of less expensive alternatives in a manner that shifts costs to payers and patients may violate the prohibition against . . . unfair acts or practices under Section 5 of the FTC Act.").

the diabetic drug market and excluded access to lower priced drugs, diabetics had no reasonable alternative other than to pay these inflated prices. Indeed, the Manufacturers' contention that Plaintiffs "do not allege anything more than high prices" is a gross mischaracterization of the States' claims and clearly contrary to the pleadings.

The States' allegations sufficiently plead that Defendants violated the Illinois Consumer Fraud Act (ICFA) and the Montana Consumer Protection Act (MCPA). *See Typpi v. PNC Bank*, 2014 WL 296035, *8 (N.D. Ill. Jan. 27, 2014) (ICFA violation "where the defendant's conduct gave plaintiff no reasonable alternative to avoid a charge"); *People ex rel. Fahner v. Hedrich*, 438 N.E. 2d 924, 929 (Ill. App. Ct. 1982) (same); *see also* 1980 FTC Policy Statement on Unfairness ("consumer injury is the primary focus of the FTC Act, and [b]y itself it can . . . warrant a finding of unfairness.").

## II.  Defendants' Belated Counterarguments are Meritless

### A.  Medicare's WAC definition is irrelevant and does not insulate the Manufacturers from liability

The Manufacturers argue that the Medicare WAC definition, which excludes certain rebates paid to wholesalers, is at odds with the States' claims.[4] They go so far as to assert that it would be impossible to allow the States' claims and also comply with the definition. But Medicare's framework for drug reimbursement, including its definition of WAC, is irrelevant to the States' claims and does not shield the

---

[4] As explained in the States' original oppositions, the Medicare WAC definition (which refers to "rebates" paid to wholesalers, not PBMs) is wholly irrelevant to the States' claims. Ill. ECF 86 at 16-21; Mont. ECF 112 at 20-24.

Manufacturers from liability. *See Minnesota*, 2020 WL 2394155, at *14; *City of Miami v. Eli Lilly & Co.*, 2022 WL 198028, at *8, n.8 (S.D. Fla. Jan. 21, 2022).

To be certain, the States' claims do not seek to require the Manufacturers to "report [their] WACs in some other manner," that would contradict Medicare's definition, and Manufacturers' argument to the contrary "oversimplifies" the States' claims. *See MSP Recovery Claims, Series LLC v. Abbott Laboratories*, 2021 WL 2177548, at *11, n.14 (D.N.J. May 28, 2021) (rejecting similar mischaracterization of analogous allegations); *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 178 (D. Mass. 2003) ("Plaintiffs are not seeking, as defendants claim, a judicial declaration invalidating the use of . . . AWPs by Medicare regulators as a benchmark for setting reimbursement rates . . . What plaintiffs . . [seek] is to punish defendants for fraudulently manipulating the spread between the AWP and the actual cost of the drug.")

Indeed, the States allege that the Manufacturers worked in coordination with the PBMs to use their dominant market positions to egregiously and in lockstep drive up prices—while simultaneously excluding diabetics' access to lower priced drugs and concealing their scheme. The States seek to hold Defendants accountable and put an end to this egregious misconduct. The Manufacturers certainly are not shielded from the States' claims of violating consumer protection laws and wreaking devastation on diabetics simply because of the manner in which Medicare defines WAC.

Critically, Medicare does not regulate, set, or determine the Manufacturers' list prices. *See In re Lupron*, 295 F. Supp. 2d at 179, n.33 (recognizing that "defendants did

not submit pricing data to Medicare so that Medicare could determine or approve the AWP. To the contrary, they published the fraudulently inflated AWPs for Lupron® precisely because they knew that the AWPs were not subject to regulatory scrutiny.") (internal citations, quotations, and brackets omitted); *see also, In re Pharm. Indus. Average Wholesale Price Litig.,* 491 F. Supp. 2d 20, 31, 95 (D. Mass. 2007) (recognizing that Medicare "put[ ] the proverbial pharmaceutical fox in charge of the reimbursement chicken coop" by pegging its reimbursements to prices reported by the pharmaceutical industry without oversight). Defendant Eli Lilly itself recently argued to a different federal court that Medicare lacks the power to set drug prices, particularly because Manufacturers "are not participants in Medicare, are not plans, are not providers."[5]

Moreover, Defendants do not cite to—nor could they—any federal law that requires the Manufacturers to *only* publish WAC prices.[6] In fact, at any point during the relevant time period, the Manufacturers could have made public their actual, net prices, *in addition to publishing WAC prices.* But they chose not to in furtherance of the Insulin Pricing Scheme.

Fundamentally, the Medicare WAC definition does not authorize Defendants to

---

[5] *Merck & Co. Inc., et al. v. U.S. Dept. of Health and Human Services, et al.,* No. 1:19-cv-01738 (D.D.C.), Transcript of Motion Hearing, ECF 31, at 22-29.
[6] Manufacturers' cite to a *proposed* regulation requiring disclosure of WAC in television commercials. It does not limit Manufacturers to a single price. Eli Lilly filed a lawsuit to block the regulation, arguing that rule would "force pharmaceutical companies to mislead tens of millions of Americans about the price they would actually pay." *Merck & Co. Inc.,* Complaint, ECF 1 at "Preliminary Statement".

report false list prices, or to artificially raise their list prices to maintain an unfair and deceptive scheme, and it does not insulate them from liability for injuries caused by their unlawful prices. *See In re Pharm. Indus. Average Wholesale Price Litig.,* 582 F.3d 156, 171, n.10 (1st Cir. 2009) (Medicare statute "does not grant the pharmaceutical industry unfettered discretion to report drug prices that bear no relation to products' actual prices;" "[that] opportunities for abuse exist in the Medicare statute does not mean that Congress has authorized them."); *In re Lupron*, 295 F. Supp. 2d at 179 (finding "no overriding federal interest in immunizing fraudulent conduct simply because a federal, rather than a state statute or regulation, opens the door of opportunity for fraud.").

The Manufacturers' "WAC" argument is nothing more than an attempt to create a loophole (where one does not exist) to avoid liability. The Court should reject this attempt.

### B.     Medicare's WAC definition does not preempt the States' claims

"The regulation of medicine and its associated costs seems to be by tradition one of state concern." *In re Lupron,* 295 F. Supp. 2d at 177 (citing *Med. Soc'y of State of New York v. Cuomo,* 976 F.2d 812, 816 (2d Cir. 1992) (public health and "the cost of medical care are virtual paradigms of matters traditionally within the police powers of the state")). In areas of such traditional state regulation, there is a presumption against preemption—federal law does not supplant state law unless Congress has made its intention clear and manifest. *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 449 (2005). This presumption is even stronger when state law creates a remedy unavailable under

federal law. *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947).

The Medicare Act does not preempt state consumer protection law. *In re Pharm. Indus. Average Wholesale Price Litig.,* 263 F. Supp. 2d 172, 189 (D. Mass. 2003). In fact, the opposite is true: the Medicare statute contains no express remedy for unfair and deceptive practices, and therefore "Congress relied on the existence of state consumer protection and fraud statutes to combat severely manipulative pricing schemes." *Average Wholesale Price Litig.,* 582 F.3d at 175.

The Manufacturers assert impossibility preemption, but (as explained above) allowing the States' claims does not make it impossible for them to report WACs in conformance with Medicare's definition. The States' claims do not impact the Manufacturers ability to report their WACs to Medicare in the least. For this reason alone impossibility preemption does not apply—it is a "demanding defense," *Wyeth v. Levine,* 555 U.S. 555, 573 (2009), and the Manufacturers have failed to carry their burden showing that they are subject to any sort of federal "demand" that is inconsistent with (or even related to) the States' claims.

**C.     The Manufacturers' "price inflation" theory is meritless and inappropriate on a motion to dismiss**

The Manufacturers attempt to reframe the States' claims as "a theory of price inflation" which (according to Defendants) is "not a cognizable theory of damages." Manu. Supp. Br. at 5. As an initial matter, questions related to damages are "not appropriate for consideration on a motion to dismiss." *Green v. Nuveen Advisory Corp.,*

186 F.R.D. 486, 491 (N.D. Ill. 1999).

Moreover, the Manufacturers' argument is based on a false premise. The Manufacturers argue that the Montana and Illinois's consumer protection statutes require "ascertainable loss" and "actual damages" and that "those requirements cannot be satisfied with a price-inflation theory." Manu. Supp. Br. at 6. Setting aside the fact that this argument mischaracterizes the States' theory, neither the ICFA nor the MCPA require "actual damages" or "ascertainable loss" in *an action brought by the State. See, e.g., People ex rel. Madigan v. United Constr. of Am., Inc.*, 981 N.E.2d 404, 411 (Ill. App. Ct. 2012) (unlike a private litigant, the Attorney General need not demonstrate that defendants' actions proximately harmed any consumers); Mont. Code Ann. § 30-14-111 (empowering the State to bring an action when it "has reason to believe that a person is" violating the MCPA).

Finally, whether New Jersey or Delaware law precludes a "price-inflation theory," as argued by the Manufacturers, is not material to consumer protection claims under the laws of Illinois and Montana.[7]

### D.    The State is not asserting "price gouging" claims

The Manufacturers' "price gouging" argument can be rejected out of hand—the States are not asserting a price gouging theory. This is evident from the fact that "price

---

[7] Unlike the case at bar, *Siegel v. Shell Oil Co.* involved private consumers, not the Attorney General, and was decided on class certification and summary judgment motions following discovery. 612 F.3d 932, 933–34 (7th Cir. 2010).

gouging" does not appear anywhere in the 100+ page complaints. And as demonstrated above (and in their original Oppositions), the States' pleadings are replete with factual allegations detailing deceptive and unfair conduct.[8]

Further, the States' statutes do not raise due process concerns. Consumer protection statutes are "regulatory and remedial statute[s] intended to protect consumers against fraud … and other unfair and deceptive business practices." *Bartnett v. Abbott Labs.,* 492 F. Supp. 3d 787, 800 (N.D. Ill. 2020). In amending the FTCA, Congress purposefully refused to enumerate the myriad practices which could be unfair, because "[i]t is impossible to frame definitions which embrace all unfair practices. There is no limit to human inventiveness in this field." *F.T.C. v. Sperry & Hutchinson Co.,* 405 U.S. 233, 239 (1972). Therefore, such statutes must be interpreted broadly in scope and flexible in application. *In re Smith,* 866 F.2d 576, 581 (3d Cir. 1989). Whether a given set of circumstances is unfair or deceptive must be determined on a case-by-case basis. *People ex rel. Fahner v. Walsh,* 461 N.E.2d 78, 81 (Ill. App. Ct. 1984).

### E.    The States' statutes do not violate the Dormant Commerce Clause

#### 1.    Rejection of the Extraterritoriality Doctrine

In *National Pork Producers Council v. Ross,* the Supreme Court refocused federal courts on the purpose of the dormant Commerce Clause—to prohibit enforcement of

---

[8] *See* Ill. ECF 1-1 ¶¶ 1-2, 4-5, 29, 213, 241, 286-87, 354, 398, 444, 453, 457, 491; Mont. ECF 40 ¶¶ 2, 4, 30, 517.

state laws "driven by [] economic protectionism." 598 U.S. 356, 370 (2023) (internal quotation marks omitted). This resounding statement was heard by this Court which views extraterritoriality arguments as a "dead letter." *New Jersey Staffing Alliance v. Fais,* 2023 WL 4760464, at *9 (D.N.J. July 26, 2023). There is no *per se* rule forbidding enforcement of state laws that have the practical effect of controlling commerce outside the State, when those laws do not purposefully discriminate against out-of-state economic interests. *National Pork,* 598 U.S. at 371.[9]

Nevertheless, the Manufacturers rely on decisions outside the States—*Ass'n for Accessible Meds. v. Ellison*, -- F. Supp. 3d --, 2023 WL 8374586 (D. Minn. Dec. 4, 2023), and *Ass'n for Accessible Meds. v. Frosh,* 887 F.3d 664 (4th Cir. 2018).[10] Both cases are distinguishable because they involved state statutes targeting purely out-of-state transactions by manufacturers—commerce "wholly outside" each state's borders. *Frosh,* 887 F.3d at 667 (involving state statute prohibiting price gouging in certain circumstances); *Ellison,* 2023 WL 8374586 at *1–2 (seeking to prevent excessive price increases by targeting only "manufacturers," none of which were in-state).[11]

---

[9] The Supreme Court recognized that companies which choose to sell products in various states must normally comply with the laws of those states, and "many (maybe most) state laws have the practical effect of controlling extraterritorial behavior." *National Pork,* 598 U.S. at 364, 375.

[10] Referring to *Frosh,* a District Judge concluded that Fourth Circuit jurisprudence based on a "principle against extraterritoriality" has been abrogated by *National Pork. See GenBioPro, Inc. v. Sorsaia,* 2023 WL 5490179, at *11 (S.D.W.V. Aug. 24, 2023).

[11] Both courts, however, recognized the constitutionality of enactments which focus on what a state's consumer pays, rather than transactions between purely out-of-state

The ICFA and MCPA are neither discriminatory nor protectionist—both statutes treat in-state and out-of-state actors the same. Further, each States' laws focus on the circumstances of consumer transactions which occur within their states, *e.g.,* unfairness tests which query whether the consumer lacks an economic alternative or is substantially injured. These are genuinely nondiscriminatory statutes, neither of which threatens to upset the arterial flow of interstate commerce.[12]

### 2.   The *Pike* balancing test favors the States

The balancing test in *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142 (1970) states: "[w]here [a] statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."

While the Manufacturers allege burdens on interstate commerce, their complaints are grounded in how enforcement of the States' statutes would affect only them, *e.g.,* their assertion that the States' attempt to "determin[e] the very prices the

---

actors. *Ellison,* 2023 WL 8374586, at *1; *Frosh,* 887 F.3d at 670–71. The court in *Frosh,* citing *Pharm. Research and Mfrs. of Am. v. Walsh,* 538 U.S. 644 (2003), provided the disclaimer: "To be clear, we in no way mean to suggest that Maryland and other states cannot enact legislation meant to secure lower prescription drug prices for their citizens." *Frosh,* 887 F. 3d at 674.

[12] "Notably, only a small number of cases have invalidated state laws … that appear to have been genuinely nondiscriminatory in nature . . . Often, such cases have addressed state laws that impose burdens on the arteries of commerce, on trucks, trains, and the like …" *Fais,* 2023 WL 4760464 at *11 (citations and internal quotation marks omitted).

Manufacturers can set for their products nationwide." Their argument is not legally cognizable under *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 127–28 (1978): "We cannot [] accept . . . [the] notion that the Commerce Clause protects the particular structure or methods of operation in a retail market … the Clause protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations." *See also, Freedom Holdings, Inc. v. Cuomo,* 592 F. Supp. 2d 684, 707 (S.D.N.Y. 2009) ("Mere upstream pricing impact is not a violation of the dormant Commerce Clause, even if the impact is felt out-of-state where the stream originates.").

As shown in *Pharm. Care Mgmt. Ass'n v. Rowe,* 429 F.3d 294 (1st Cir. 2005), any burdens that may arise from enforcement of the States' consumer protection laws are not clearly excessive and pale in comparison to the benefits to the States and their citizens. In *Rowe* the court recognized that Maine's law regulating PBMs "was designed to deal with one of the serious problems of our time," the costs of prescription drugs. *Id.* at 312 (internal quotation marks omitted). The First Circuit rejected the Commerce Clause challenge because the law "requires only that in-state commerce be conducted according to [Maine's] terms." *Id.* And, "[w]hen measuring [the PBMs'] profits against the increased access to prescription drugs for Maine citizens." the court held that the local benefits clearly outweigh any incidental burden on interstate commerce *Id.* at 313.

Finally, even if the States' statutes were facial price controls (they are not), the dormant Commerce Clause still would not impede the States' power to regulate pricing within its own borders. *See Johnson & Johnson Vision Care, Inc. v. Reyes,* 665 Fed. Appx.

13

736, 740 (10th Cir. 2016) (statute prohibiting manufacturers from forcing their nationwide uniform retail pricing policies on retailers in Utah); *Pharm. Care Mgmt. Ass'n v. Rutledge,* 240 F. Supp. 3d 951, 961 (E.D. Ark. 2017) (applying *Pike* balancing to reject dormant Commerce Clause challenge to Arkansas statute requiring that, at a minimum, PBMs reimburse Arkansas pharmacies for their drug acquisition costs).[13]

## III.   The State's Claims are not time-barred.

As demonstrated in their original Oppositions to the Manufacturers' Motions to Dismiss, the States' consumer protection and other claims are not barred by applicable statutes of limitation, if any. In the interests of efficiency and brevity on the issue of timeliness, the States incorporate herein their supplemental briefing set forth in their Response to the PBMs' Supplemental Brief.

## CONCLUSION

As argued in their original Oppositions, and for the reasons set forth in this Supplemental Brief, the States respectfully submit that the Manufacturers' Motions to Dismiss the claims of Illinois and Montana are not well-taken and should be denied. If the Court is inclined to dismiss any claims, the State respectfully requests leave to amend the complaint. *See* FED. R. CIV. P. 15(a)(2).

---

[13] The decision of the District Court in *Rutledge* was appealed to the Eighth Circuit and later the Supreme Court on the issue of preemption under ERISA. In *Rutledge v. Pharm. Care Mgmt. Ass'n,* 592 U.S. 80 (2020), the Supreme Court held that Arkansas's law is not preempted by ERISA. The dormant Commerce Clause ruling of the District Court, not the subject of either appeal, remains undisturbed.

RESPECTFULLY SUBMITTED this the 24th day of May, 2024

*/s/ Joanne Cicala*
Joanne Cicala, Esquire
Josh Wackerly, Esquire
R. Johan Conrod, Esquire
**The Cicala Law Firm PLLC**
101 College Street
Dripping Springs, Texas 78620
Tel. (512) 275-6550
joanne@cicalapllc.com
josh@cicalapllc.com
johan@cicalapllc.com

David F. Buysse
Deputy Chief, Public Interest Division
Darren Kinkead
Deputy Chief, Special Litigation Bureau
**Illinois Attorney General's Office**
100 W. Randolph Street
Chicago, IL 60601
david.buysse@ilag.gov
darren.kinkead@ilag.gov

Anna Schneider
Bureau Chief, Office of Consumer Protection
**Montana Department of Justice**
P.O. Box 200151
Helena, Montana 59620-0151
Telephone: (406) 444-4500
anna.schneider@mt.gov

Tanya D. Ellis
Trey Watkins
**Forman Watkins & Krutz LLP**
210 East Capitol Street, Suite 2200
Jackson, Mississippi 39201-2375
Tel. (601) 960-8600
Fax. (601) 960-8613
tanya.ellis@formanwatkins.com
trey@formanwatkins.com

W. Lawrence Deas, Esquire
` Lawrence@Listondeas.com
**Liston Deas PLLC**
William Liston III, Esquire
william@listondeas.com
Post Office Box 14127
Jackson, Mississippi 39236
Tel. (601) 981-1636

Matthew C. McDonald, Esquire
**David Nutt & Associates PC**
605 Crescent Blvd., Suite 200
Ridgeland, Mississippi 39157
Tel. (601) 898-7302
Mattm@davidnutt.com

*Counsel for the Plaintiff States Montana and Illinois*

16