# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: INSULIN PRICING LITIGATION | **Case No. 2:23-MD-03080**<br>**MDL No. 3080**<br><br><br>**Hon. Brian R. Martinotti**<br>**Hon. Rukhsanah L. Singh** |

**DOCUMENT RELATES TO:**
*Montana ex rel. Knudsen v. Eli Lilly & Co.*, No. 2:23-cv-04214
*Illinois ex rel. Raoul v. Eli Lilly & Co.*, No. 2:23-cv-04242

## PLAINTIFFS' OPPOSITION TO PBM DEFENDANTS' SUPPLEMENTAL BRIEF SUPPORTING THEIR RULE 12(b) MOTIONS TO DISMISS

(Counsel listed on next page)

# COUNSEL LIST

David F. Buysse
Deputy Chief, Public Interest Division
**Illinois Attorney General's Office**
100 W. Randolph Street – 12th Floor
Tel: (312) 590-7844
David.Buysse@Ilag.Gov

Darren Kinkead
Deputy Chief, Special Litigation Bureau
**Illinois Attorney General's Office**
100 W. Randolph Street – 11th Floor
Tel: (773) 590-6967
Darren.Kinkead@Ilag.Gov

Anna Schneider
Bureau Chief, Office Of Consumer
Protection
**Montana Department Of Justice**
P.O. Box 200151
Helena, Montana 59620-0151
Telephone: (406) 444-4500
Anna.Schneider@Mt.Gov

W. Lawrence Deas, Esquire
Lawrence@Listondeas.com
**Liston Deas PLLC**
William Liston III, Esquire
william@listondeas.com
Post Office Box 14127
Jackson, Mississippi 39236
Tel. (601) 981-1636

Joanne Cicala, Esquire
Josh Wackerly, Esquire
R. Johan Conrod, Esquire
**The Cicala Law Firm PLLC**
101 College Street
Dripping Springs, Texas 78620
Tel. (512) 275-6550
joanne@cicalapllc.com
josh@cicalapllc.com
johan@cicalapllc.com

Matthew C. McDonald, Esquire
**David Nutt & Associates PC**
605 Crescent Blvd., Suite 200
Ridgeland, Mississippi 39157
Tel. (601) 898-7302
Mattm@davidnutt.com

Tanya D. Ellis
Trey Watkins
**Forman Watkins & Krutz LLP**
210 East Capitol Street, Suite 2200
Jackson, Mississippi 39201-2375
Tel. (601) 960-8600
Fax. (601) 960-8613
tanya.ellis@formanwatkins.com
trey.watkins@formanwatkins.com

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................... iv

**INTRODUCTION** ...........................................................................1

**ARGUMENT** ............................................................................. 2

    I.    The States Have Properly Pled Their Consumer Protection Claims.................2

        a.    The PBMs' misconduct is deceptive ................................................3

        b.    The PBMs' misconduct is unfair....................................................5

    II.    The States Have Sufficiently Pled Their Unjust Enrichment Claims ................8

        a.    The States' claims for unjust enrichment are not barred by other available remedies or the existence of related contracts.............................8

        b.    *Illinois Brick* does not bar the States' unjust enrichment claims..................9

        c.    Unjust enrichment is compatible with *parens patriae* claims......................10

    III.    The States Have Sufficiently Alleged a Conspiracy/Joint Enterprise ............ 10

    IV.    The States' Claims Are Timely.................................................. 11

        a.    Illinois is not subject to statutes of limitations ........................... 11

        b.    Montana filed suit within two years of being on notice. .......................... 13

**CONCLUSION** ........................................................................14

# TABLE OF AUTHORITIES

## Cases

*Associated Mgmt. Servs., Inc. v. Ruff*,
    424 P.3d 571 (Mont. 2018) ................................................................9

*Baird v. Norwest Bank*,
    843 P.2d 327 (Mont. 1992) ...............................................................4

*Bd. of Educ. of City of Chicago v. A,C & S, Inc.*,
    546 N.E.2d 580 (Ill. 1989).........................................................11, 12

*Champaign County Forest Preserve Dist. v. King*,
    683 N.E.2d 980 (Ill. App. 1997).................................................12, 13

*Chicago Title Ins. Co. v. Teachers' Ret. Sys.*,
    7 N.E.3d 19 (Ill. App. Ct. 2014).........................................................9

*City of Miami v. Eli Lilly*,
    2022 WL 198028 (S.D. Fla.)

*Draggin' y Cattle Co., Inc. v. Addink*,
    312 P.3d 451 (Mont. 2013) ............................................................ 14

*Forsyth v. Humana, Inc.*,
    114 F.3d 1467 (9th Cir. 1997)............................................................3

*Harris Cnty., Texas v. Eli Lilly*,
    2022 WL 479943 (S.D. Tex. Feb. 16, 2022) ......................................9

*Harris Cnty., Texas v. Eli Lilly*,
    2020 WL 5803483 (S.D. Tex. Sept. 29, 2020) ...............................1, 11

*Illinois v. Tri-Star Indus. Lighting, Inc.*,
    2000 U.S. Dist. LEXIS 14948 (N.D. Ill. 2000) ............................... 12

*In re Direct Purchaser Insulin Pricing*,
    2021 WL 2886216 (D.N.J. Jul. 9, 2021) (Martinotti, J.)................1, 3

*In re EpiPen Direct Purchaser Litig.*,
    2021 WL 147166 (D. Minn. Jan. 15, 2021)...................................... 14

*In re EpiPen*,
    44 F.4th 959 (10th Cir. 2022) ............................................................8

*In re Generic Pharm. Pricing Antitrust Litig.*,
    368 F. Supp. 3d 814 (E.D. Pa. 2019) ............................................... 10

*In re Insulin Pricing Litig.*,
    2019 WL 643709 (D.N.J. Feb. 15, 2019) ......................................... 11

*In re Novartis and Par Antitrust Litig.*,
  2019 WL 3841711 (S.D.N.Y. Aug. 15, 2019) ................................................................ 10

*In re Opana ER Antitrust Litig.,*
  2016 WL 4245516 (N.D. Ill. Aug. 11, 2016) ................................................................ 10

*Jackson Jordan, Inc. v. Leydig, Voit & Mayer,*
  633 N.E.2d 627 (Ill. 1994) ............................................................................................ 13

*Minnesota ex rel. Ellison v. Sanofi-Aventis U.S. LLC,*
  2020 WL 2394155 (D.N.J. Mar. 31, 2020) (Martinotti, J.) .................................. 1, 4, 10

*Mississippi ex rel. Fitch v. Eli Lilly,*
  2022 WL 18401603 (S.D. Miss. Aug. 29, 2022) ........................................................ 1, 4

*Mississippi ex rel. Fitch v. Eli Lilly,*
  2022 WL 3222890 (S.D. Miss. Aug. 9, 2022) ............................................................... 11

*Montana Digital, LLC v. Trinity Lutheran Church,*
  473 P.3d 1009 (Mont. 2020) ........................................................................................... 8

*Morrow v. Bank of Am., N.A.,*
  375 Mont. 38 (Mont. 2014) ............................................................................................. 8

*MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC,*
  2019 WL 1418129 (D.N.J. Mar. 29, 2019) (Martinotti, J.) ............................... 1, 5, 8, 10

*Nesby v. Country Mut. Ins. Co.,*
  805 N.E.2d 241 (Ill. App. Ct. 2004) ........................................................................... 8, 9

*People ex rel. Daley v. Datacom Sys. Corp.,*
  146 Ill. 2d 1 (Ill. 1991) ................................................................................................... 4

*People ex rel. Hartigan v. AgriChain Prod., Inc.,*
  586 N.E.2d 535 (Ill. App. Ct. 1991) ............................................................................. 13

*People ex rel. Hartigan v. Lann,*
  587 N.E.2d 521 (Ill. Ct. App. 1992) ............................................................................. 12

*People ex rel. Ill. Dep't of Lab. v. Tri State Tours, Inc.,*
  795 N.E.2d 990 (Ill. App. Ct. 2003) ............................................................................. 13

*Price v. Philip Morris,*
  848 N.E.2d 1 (Ill. 2005) .................................................................................................. 7

*Robinson v. Toyota Motor Credit Corp.,*
  775 N.E.2d 951 (Ill. 2002) .............................................................................................. 4

*Sternhagen v. Dow Co.,*
  711 F. Supp. 1027 (D. Mon. 1989) ............................................................................... 14

*Typpi v. PNC Bank*,
2014 WL 296035 (N.D. Ill. Jan. 27, 2014) .........................................................................6

*Village of DePue. v. Viacom Int'l, Inc.*,
713 F. Supp. 2d 774 (C.D. Ill. 2010) ................................................................ 13

*Young v. Era Advantage Realty*,
513 P.3d 505 (Mont. 2022) .................................................................................4

**Statutes**
735 Ill. Comp. Stat. 5/13-205 ............................................................................ 12

740 Ill. Comp. Stat. 10/7(2) .............................................................................. 10

Illinois insulin price cap statute,
215 ILCS 5/356z.41 .............................................................................................7

Illinois Pharmacy Benefit Manager Transparency Act,
215 ILCS 5/513b1, *et seq.* ............................................................................ 6, 7

Montana Act Establishing Limits on Insurance Cost-Sharing Amounts for
Insulin,
Mont. Code Ann. § 33-22-312 ............................................................................7

Montana Pharmacy Benefit Manager Oversight Act,
Mont. Code Ann. § 33-2-2401, *et seq.* ......................................................... 6, 7

**Other Authorities**
2021 U.S. House Committee on Oversight Minority Staff Report on Role of
PBMs in Pharmaceutical Markets, Dec. 10, 2021,
https://oversight.house.gov/wp-content/uploads/2021/12/PBM-Report-
12102021.pdf...................................................................................................2

FTC Policy Statement Concerning Reliance on Prior PBM-Related Advocacy
Statements, July 18, 2023,
https://www.ftc.gov/system/files/ftc_gov/pdf/CLEANPBMStatement718
2023%28OPPFinalRevisionsnoon%29.pdf .......................................................2

FTC Policy Statement on Rebates and Fees in Exchange for Excluding Lower-
Cost Drug Products, June 16, 2022, https://www.ftc.gov/legal-
library/browse/policy-statement-federal-trade-commission-rebates-fees-
exchange-excluding-lower-cost-drug-products......................................... 2, 7

FTC Policy Statement on Unfairness,
Dec. 17, 1980, https://www.ftc.gov/legal-library/browse/ftc-policy-
statement-unfairness ......................................................................................6

U.S. Senate Committee Press Release for the 2021 Senate Insulin Report,
Jan. 14, 2021, https://www.finance.senate.gov/chairmans-news/grassley-

wyden-release-insulin-investigation-uncovering-business-practices-between-drug-companies-and-pbms-that-keep-prices-high ........................................................2

**Rules**

FED. R. CIV. P. 15(a)(2) ............................................................................ 15

**Treatises**

Restatement (Third) of Restitution and Unjust Enrichment § 2(2) .................................9

**Constitutional Provisions**

Ill. Const., art. V, § 15 .............................................................................. 12

## INTRODUCTION

The Insulin Pricing Scheme has had a direct and devastating impact on the lives of diabetics across the country—including in Illinois and Montana. News outlets are replete with heartbreaking stories about families losing loved ones because they can no longer afford their diabetes medications. For decades, two sets of actors—the PBMs and Manufacturers now before this Court—have had complete control over the diabetic drug pricing market and each is responsible for this national health crisis.

Indeed, this Court and every other court that has addressed the Insulin Pricing Scheme has rejected the arguments asserted here by the PBMs and found viable deceptive and unfair claims. *See In re Direct Purchaser Insulin Pricing*, 2021 WL 2886216 (D.N.J. Jul. 9, 2021) (Martinotti, J.); *Mississippi ex rel. Fitch v. Eli Lilly*, 2022 WL 18401603 (S.D. Miss. Aug. 29, 2022); *Harris Cnty., Texas v. Eli Lilly*, 2020 WL 5803483 (S.D. Tex. Sept. 29, 2020); *MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, 2019 WL 1418129, at *17 (D.N.J. Mar. 29, 2019) (Martinotti, J.); *Minnesota ex rel. Ellison v. Sanofi-Aventis U.S. LLC*, 2020 WL 2394155, at *15 (D.N.J. Mar. 31, 2020) (Martinotti, J.).

Rather than address the States' allegations (or the growing body of caselaw weighing against their arguments), the PBMs' Supplemental Brief attempts to reframe the case as one simply about what PBMs characterize as garden variety "rebates." This argument ignores the States' allegations and the reality of Defendants' misconduct.

To be sure, the PBMs could have benefited diabetics by doing what they say they do and negotiating rebates that lower prices. But the States allege the opposite: the

1

PBMs intentionally and egregiously drove up prices and purposefully blocked coverage for life-sustaining diabetic treatments in order to maximize their own profits. Such conduct is not authorized by federal or state law; quite the opposite—the PBMs' practices have been condemned by every entity that has examined them in recent years.[1]

As shown in the States' Oppositions, the PBMs' misconduct violates Illinois and Montana law and none of the claims are time-barred. The Motions should be denied.

## ARGUMENT

### I.    The States Have Properly Pled Their Consumer Protection Claims

Violations of the Montana Consumer Protection Act ("MCPA") and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") may occur through either deceptive practices or unfair practices, or both. *See* Ill. ECF 87 at 8; Mont. ECF

---

[1] *See, e.g.,* FTC Policy Statement Concerning Reliance on Prior PBM-Related Advocacy Statements ("The [FTC's] current PBM study . . . reflects significant concerns about how current market structures and business practices may undermine patients, pharmacies, and fair competition"); Press Release for the 2021 Senate Insulin Report ("We found that the business practices of and the competitive relationships between manufacturers and [PBMs] have created a vicious cycle of [insulin] price increases that have sent costs for patients and taxpayers through the roof. This industry is anything but a free market when PBMs spur drug makers to hike list prices in order to secure prime formulary placement and greater rebates and fees"); 2021 U.S. House Committee on Oversight Minority Staff Report on Role of PBMs in Pharmaceutical Markets ("PBMs use their market leverage to increase their profits, not reduce costs for consumers" and "Drug manufacturers actually *raise* prices due to PBMs"); National Association of Attorneys General February 2024 Letter to Congress (PBMs "are reaping abundant profits at the expense of patients, employers, and governmental payors the PBMs are supposed to help.")

113 at 8. Unlike deceptive claims, *unfair* claims need only satisfy Rule 8's standard. Ill. ECF 87 at 5–8; Mont. ECF 113 at 20–21.

### a.     The PBMs' misconduct is deceptive

The States' pre-MDL Oppositions lay out in detail how the PBMs' misconduct was deceptive. *See* Ill. ECF 87 at 9-12; Mont. ECF 113 at 8-11. In short, the PBMs repeatedly and consistently represented that their formularies, Manufacturer Payments, and business practices lower the price of diabetic drugs and promote the health of diabetics, when in fact the exact opposite is true. *Id.*

As stated above, three federal courts, including this Court, have found similar misconduct from these PBMs to be deceptive. *See infra* at 1. In their moving papers, the PBMs make no effort to distinguish these holdings from the cases at bar. For that reason alone, the PBMs' motion should be denied.

In their Supplemental Brief, the PBMs argue that their misrepresentations are merely "non-actionable subjective statements" and that their conduct is not "consumer-facing." PBM Supp. Br. at 8–9. These arguments are meritless.

First, the PBMs asserted the same "non-actionable statements" argument in the Mississippi insulin case, relying on the same 9th Cir. case (*Forsyth v. Humana*), and the court rejected it. Miss. ECF 90 at 10–12 (citing 114 F.3d 1467 (9th Cir. 1997)); *Mississippi*, 2022 WL 18401603 at *3–4. This Court should do likewise—the States have alleged dozens of specific misrepresentations and omissions of fact that are actionable under the MCPA and ICFA. *See* Ill. ECF 87 at 16-21; Mont. ECF 113 at 21-26.

The PBMs also argue—without citing any supporting authority[2]—that their conduct falls outside of the ICFA and MCPA because "PBM clients are not consumers." PBM Supp. Br. at 9. The Illinois Supreme Court, however, has already rejected this "consumer-facing" argument as not consistent with the Act's broad prohibition on deceptive practices "*directly or indirectly affecting the people of this State.*" *See People ex rel. Daley v. Datacom Sys. Corp.*, 146 Ill. 2d 1, 32 (Ill. 1991) (finding an ICFA violation even though defendant's clients were not consumers). Montana courts apply the same principles to the MCPA. *See Baird v. Norwest Bank*, 843 P.2d 327, 333 (Mont. 1992) (MCPA contains the same "directly or indirectly affecting" language and is "broad in scope so as to respond to human inventiveness."). Indeed, this Court rejected a similar argument in the Minnesota insulin case. *Minnesota*, 2020 WL 2394155, at *15.

Moreover, the States have unquestionably alleged that the PBMs' misconduct was "likely to mislead insulin consumers." *See* Ill. ECF 1-1 ¶¶ 111, 167, 208; Mont. ECF 40 ¶¶ 118, 174, 214 (PBMs' formularies mislead diabetics that they lower prices and promote health); Ill. ECF 1–1 ¶ 347; Mont. ECF 40 ¶ 351 (PBMs mislead diabetics that they lower out-of-pocket cost); Ill. ECF 1–1 ¶¶ 430–38; Mont. ECF 40 ¶¶ 441–48 (PBMs mislead diabetics that they make diabetic drugs affordable); *see also MSP Recovery,* 2019 WL 1418129 at *19 (Defendants know that public and consumers of insulin will

---

[2] Neither *Young v. Era Advantage Realty*, 513 P.3d 505 (Mont. 2022), nor *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951 (Ill. 2002), deal with "consumer-facing" arguments.

rely on pricing misrepresentations). The PBMs are not permitted to disregard these allegations at the pleading stage.

Finally, the PBMs' argument that the States fail to allege "how consumers would behave differently in selecting products" is a red herring.[3] PBM Supp. Br. at 9. The PBMs' misrepresentations and omissions are a (if not *the*) key pillar to the Insulin Pricing Scheme. And the only reason that diabetics cannot "behave differently in selecting" the drugs they need to stay alive is because Defendants control the diabetic drug market; there are no diabetes "products" insulated from their Scheme.[4] The fact that diabetics are trapped in the Insulin Pricing Scheme reinforces why Defendants' conduct violates consumer protection laws; it does not shield the PBMs from liability as they suggest.

### b.   The PBMs' misconduct is unfair

The PBMs are also separately liable under the ICFA and MCPA because their misconduct was unfair. To reiterate, in determining unfair conduct, courts consider: (1) whether the practice offends public policy, (2) whether it is immoral or oppressive and (3) whether it causes consumers substantial injury. Ill. ECF 87 at 12; Mont. ECF 113 at 11-12. Importantly, all three criteria need not be satisfied and "unjustified consumer injury is the primary focus . . . and [b]y itself it can . . . warrant a finding of unfairness." *Id.*; 1980 FTC Policy Statement on Unfairness.

---

[3] Illinois is not required to show reliance or proximate harm. *See* Ill. ECF 87 at 9. The types of statements alleged are undoubtedly intended by the PBMs to be relied upon.
[4] Among the ways diabetics would have "behaved differently" if the PBMs had not engaged in deception is paying much less for the drugs they need to live.

Here, the States allege that Defendants used their dominant market position to egregiously drive up prices—while simultaneously excluding diabetics' access to lower priced drugs. The PBMs did this knowing that such exclusion would cause substantial injury. Ill. ECF 87 at 12–15; Mont. ECF 113 at 11–15. Because diabetics need the at-issue drugs to stay alive and because Defendants control the diabetic drug pricing market, diabetics had no reasonable alternative other than to pay these inflated prices.

The States' allegations sufficiently plead an unfair practice. *See Typpi v. PNC Bank*, 2014 WL 296035, *8 (N.D. Ill. Jan. 27, 2014) (it is unfair under the ICFA "where the defendant's conduct gave plaintiff no reasonable alternative to avoid a charge."); 1980 FTC Policy Statement on Unfairness.

In response, the PBMs first argue that the States do not point to any "authority showing that the alleged conduct offends established public policy."[5] PBM Supp. Br. at 5. This argument completely disregards the States' previously filed Oppositions. *See* Ill. ECF 87 at 12–14; Mont. ECF 113 at 12–15 (citing to, *inter alia*, the Montana Pharmacy Benefit Manager Oversight Act;[6] the Montana Act Establishing Limits on Insurance Cost-Sharing Amounts for Insulin; the Illinois insulin price cap statute (215 ILCS 5/356z.41); and the FTC Policy Statement on Rebates and Fees in Exchange for Excluding Lower-Cost Drug Products to demonstrate public policy violations).

---

[5] Importantly, the public policy criteria need not be shown if Defendants' conduct caused unjustified, substantial injury as it did in the case at bar.
[6] Illinois has an analogous PBM act, Illinois Pharmacy Benefit Manager Transparency Act (215 ILCS 5/513b1, *et seq*.).

The PBMs also argue that because some laws recognize the existence of rebates, they cannot serve as a basis for consumer protection violations. PBM Supp. Br. at 5–8. Initially, even if certain laws recognize rebates, there is no law specifically authorizing the rebate-related practices at issue, and the PBMs do not cite any such authority.[7] Moreover, the PBMs' alleged misconduct is far broader than mere rebate practices. *See, e.g.*, Ill. ECF 87 at 1–2; Mont. ECF 113 at 2.

Moreover, the States are not alleging that the PBMs utilize rebates in good faith and to lower prices (as contemplated by law); rather the States allege the opposite. And while Medicaid and Medicare statutes may mention rebates, they certainly do not bless the PBMs' concealing and retaining these rebates as profit, while falsely claiming they are passed on and used to lower prices.[8] Such conduct is neither *prescribed* by public policy, nor shielded from liability by federal law or the ICFA safe harbor.

In addition, that a State may receive rebates through Medicaid or its employee health plan does not absolve the PBMs' liability either. The States allege that PBMs,, among other things, pushed for higher Manufacturer Payments and then concealed and retained these payments, resulting in higher costs for all payors (including State health plans), rebates notwithstanding. *See MSP Recovery*, 2019 WL 1418129 at *13 (PBMs are

---

[7] Unlike this case, in *Price v. Philip Morris*, the FTC explicitly authorized the at-issue conduct (low tar descriptor on cigarettes). PBM Supp. Br. at 6 (848 N.E.2d 1 (Ill. 2005)).

[8] The Montana and Illinois PBM acts (Mont. Code Ann. § 33-2-2402(7)(a), 215 Ill. Comp. Stat. 5/513b1(b)(5)) certainly do not condone the PBMs' misconduct. In fact, both acts are aimed at the specific misconduct that underlies the States' claims and include transparency requirements and prohibitions on misleading advertising.

capable of colluding with Manufacturers against PBMs' own clients). Regardless, any question regarding the States' involvement with rebates is a fact question not appropriate at this stage. *See Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 494 (7th Cir. 2020); *Morrow v. Bank of Am., N.A.*, 375 Mont. 38, 53 (Mont. 2014).

Finally, PBMs' reliance on *In re EpiPen*—summary judgment decision involving a different drug and different parties—is misplaced. 44 F.4th 959 (10th Cir. 2022). The States' allegations (as well as the public record) contradict the PBMs' myopic case-specific fact assertion here that rebates are "a normal competitive tool to stimulate price competition." PBM Supp. Br. at 1,7. And again, such factual arguments are inappropriate at the pleading stage. *See, e.g.*, Ill. ECF 1–1 ¶ 365; Mont. ECF 40 ¶ 369.

## II.   The States Have Sufficiently Pled Their Unjust Enrichment Claims

### a.   The States' claims for unjust enrichment are not barred by other available remedies or the existence of related contracts

The law is clear in Montana and Illinois that it is not the mere *existence* of remedies, but rather the *adequacy* of the remedies that matters to bar unjust enrichment claims. *Montana Digital, LLC v. Trinity Lutheran Church*, 473 P.3d 1009, 1012 (Mont. 2020); *Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. App. Ct. 2004). Here, it is yet to be determined if the other remedies sought will prove adequate. And because the States are not parties to the contracts to which PBMs point, none of those contracts

are effective to remedy the harm.[9] *See* Ill. ECF 87 at 25; Mont. ECF 113 at 32. Nor do the PBMs' cited contracts regulate the conduct related to the Scheme. *Id.*; *see also Associated Mgmt. Servs., Inc. v. Ruff*, 424 P.3d 571, 595 (Mont. 2018) (unjust enrichment still exists when a contract is "ineffective to regulate the parties' obligations.") The PBMs cite no case holding that the mere existence of a remedy bars the *States'* unjust enrichment claim, and the States are aware of none.[10]

Nor does the Restatement (Third) of Restitution and Unjust Enrichment § 2(2) support the PBMs. As the comments to § 2(2) note, claims are proper where the contract is "ineffective to regulate the parties' obligations . . .the statement that there can be no unjust enrichment in contract cases is plainly erroneous." *Id.*

**b.** ***Illinois Brick* does not bar the States' unjust enrichment claims**

The PBMs assert for the first time that neither States' laws allow unjust enrichment claims by indirect purchasers. PBM Supp. Br. at 12. But *Illinois Brick*, which applies to antitrust actions, does not apply to unjust enrichment based on violation of consumer protection laws. *See In re Generic Pharm. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 840, 850 (E.D. Pa. 2019) ("*Illinois Brick* [does not] dispossess[] a person . . . of his

---

[9] Unlike here, in *Harris Cnty., Texas v. Eli Lilly*, 2022 WL 479943 (S.D. Tex. Feb. 16, 2022), the County contracted with the PBM Defendants. *Id.* at *14.

[10] *Chicago Title* simply noted that availability of other remedies made it "particularly" clear that unjust enrichment was inappropriate. 7 N.E.3d 19, 25 (Ill. App. Ct. 2014). *Nesby* is an insurance subrogation case with no application here. 805 N.E.2d at 242-43.

right to pursue a common law equitable remedy.").[11] The PBMs' cited cases are consistent with this conclusion. *See In re Opana ER Antitrust Litig.,* 2016 WL 4245516, at *2 (N.D. Ill. Aug. 11, 2016); *In re Novartis and Par Antitrust Litig.,* 2019 WL 3841711, at *6 (S.D.N.Y. Aug. 15, 2019). Moreover, Illinois has repudiated *Illinois Brick*'s bar on indirect purchaser claims. 740 Ill. Comp. Stat. 10/7(2).

### c.   Unjust enrichment is compatible with *parens patriae* claims

The PBMs' *parens patriae* arguments were previously addressed by the States and the points need not be repeated. Mont. ECF 113 at 32–33; Ill. ECF 87 at 25–27.

## III.   The States Have Sufficiently Alleged a Conspiracy/Joint Enterprise

First, Illinois has alleged that "Defendants are both liable for their own misconduct in violation of the [ICFA], as well as liable for their collective efforts in furtherance of the Insulin Pricing Scheme." Ill. ECF 1–1 ¶ 487. To that end, the complaint alleges both direct agreements and circumstantial evidence demonstrating collusion. Ill. ECF 1–1 ¶¶ 118, 174, 211, 314-30, 350. Accordingly, the conspiracy analysis below (and in Montana's Opposition Brief) applies equally to Illinois.

Montana respectfully refers the Court to its previous brief demonstrating conspiracy. Mont. ECF 112 at 27–33. In sum, Montana has alleged direct agreements and numerous "plus factors" sufficient to satisfy *Twombly. Id.* This is why at least three

---

[11] The cited *MSP Recovery* section addresses New Jersey law, which is not applicable. 2019 WL 1418129 at *20. PBMs also cite an irrelevant part of *Minnesota*, while ignoring that the unjust enrichment claims survived. 2020 WL 2394155, at *8–9, *20-21.

federal courts (including this one) recently have refused to dismiss similar conspiracy allegations. *See, Mississippi ex rel. Fitch v. Eli Lilly*, 2022 WL 3222890, at *8 (S.D. Miss. Aug. 9, 2022); *Harris Cnty.,* 2020 WL 5803483 at *11; *In re Insulin Pricing Litig.*, 2019 WL 643709, at *7 (D.N.J. Feb. 15, 2019). Nothing in the PBMs' Supplemental Brief counsels otherwise. The States have sufficiently alleged a conspiracy.

## IV.    The States' Claims Are Timely

### a.    Illinois is not subject to statutes of limitations

In Illinois, statutes of limitation do not apply to the State in actions, such as here, involving public rights (as opposed to private rights) where no statutes "expressly include the State." *Bd. of Educ. of City of Chicago v. A,C & S, Inc.*, 546 N.E.2d 580, 602 (Ill. 1989). In their original Motion, the PBMs recognized that the State's claims are not time-barred. *See* Ill. ECF 62 at 20.[12] Their Supplemental Brief glosses over this recognition in a footnote adopting the Manufacturers' argument. PBM Supp Br at 2.

However, the Manufacturers' argument fails as well. *See* Ill. ECF 86 at 24–30. First, there are no statute of limitations on an ICFA action filed by the Attorney General. *See Illinois v. Tri-Star Indus. Lighting, Inc.*, 2000 U.S. Dist. LEXIS 14948, *7 (N.D. Ill. 2000) (Ill. ECF 87–1) ("there is no statute of limitations on Consumer Fraud Act claims filed by the State.") (citing *People ex rel. Hartigan v. Lann*, 587 N.E.2d 521, 524 (Ill. Ct. App. 1992)). Defendants do not try to distinguish this case from the one at bar.

---

[12] To note, the State is only asserting claims on behalf of diabetics. Ill. ECF 87 at p. 27.

With respect to unjust enrichment, the applicable statute of limitations does not expressly include the State. *See* 735 Ill. Comp. Stat. 5/13-205. And because the State's unjust enrichment claims are brought on behalf of the public to address the devastating economic and health impact of the Insulin Pricing Scheme on millions of Illinoisans, this claim is not subject to a time bar either. *Bd. of Educ.*, 546 N.E.2d at 602.

The Manufacturers ignore this on-point authority and argue that the State is asserting a private right because it is not "obligated to undertake the action" under the ICFA. Ill. ECF 60 at 28. This argument misconstrues Illinois law. Ill. ECF 86 at 25.[13]

First, the Attorney General certainly is obligated to protect Illinois residents in a matter of significant public importance such as the case at bar; millions of Illinois diabetics are being egregiously overcharged for a medicine they need to survive and are suffering severe—and at times fatal—consequences as a result. *See, e.g.,* Ill. Const., art. V, § 15 (observing Attorney General "shall be the legal officer of the State").[14]

Moreover, the Manufacturers fail to cite to any cases involving the ICFA. And in each of the Manufacturers' cited cases the court independently found that the

---

[13] Notably, whether an entity is "obligated to undertake the action" is only one factor considered in determining public rights, and is not by itself determinative. *See Champaign County Forest Preserve Dist. v. King*, 683 N.E.2d 980, 983 (Ill. App. Ct. 1997).

interests being asserted were private, regardless of whether the entity was statutorily mandated to act.[15] Here, in contrast, the interests are indisputably public.

      **b.**    **Montana filed suit within two years of being on notice**[16]

The parties dispute the facts underlying the statute of limitations analysis. Relying on a hodgepodge of news articles and other lawsuits, the PBMs contend that Montana should have been on notice of its claims in 2016. PBM Supp. Br. at 2–3. In reality, however, Montana did not have notice until the release of the 2021 Senate Insulin Report—and the thousands confidential documents released with it—disclosing essential facts regarding the Defendants' Scheme. Mont. ECF 112 at 39. Because the State filed its lawsuit less than two years later, Montana's claims are timely. The fact that this dispute exists shows that the PBMs have not met their burden to prove that limitations has run. *See Sternhagen v. Dow Co.*, 711 F. Supp. 1027, 1031 (D. Mon. 1989) (defendant bears burden to prove statute of limitations).

Defendants cite no cases in which media coverage or lawsuits filed across the country triggers the accrual of a limitations period. Defendants' articles are nothing

---

[15] *See Champaign Cnty.*, 683 N.E.2d at 983 ("insurance was acquired solely for the benefit of plaintiff, not the general public."); *People ex rel. Hartigan v. AgriChain Prod., Inc.*, 586 N.E.2d 535, 538 (Ill. App. Ct. 1991) ("recoupment of accrued vacation pay, was not one affecting the general public"); *People ex rel. Ill. Dep't of Lab. v. Tri State Tours, Inc.*, 795 N.E.2d 990, 994–95 (Ill. App. Ct. 2003) (same); *Village of DePue. v. Viacom Int'l, Inc.*, 713 F. Supp. 2d 774, 781 (C.D. Ill. 2010) (undertaking action that the State was already obligated to do is not in public interest).

[16] If the Court finds limitations apply to Illinois (they do not), the State was not on notice of its claims until January 2021. *See, Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 633 N.E.2d 627 (Ill. 1994) (discovery rule applies in Illinois and is a fact question).

more than "breadcrumbs," which only an "unusually eager person" would investigate. *In re EpiPen Direct Purchaser Litig.*, 2021 WL 147166, at *6 (D. Minn. Jan. 15, 2021).

Moreover, a federal court has already rejected this argument in a similar insulin case. *See City of Miami v. Eli Lilly*, 2022 WL 198028, at *11 (S.D. Fla. Jan. 21, 2022). Likewise, the Montana federal judge presiding over this case before transfer expressed similar skepticism during oral arguments. Mont. ECF 159 at 14:11–12 (questioning, "[the State has] to have someone monitoring C-Span to know what's going?"); and 16:12–18 (comparing this case to the tobacco litigation, "20-some years ago the states' attorneys general started going after the cigarette manufacturers. Should that have been barred because people had been smoking for thousands of years and should have known better? Why were those cases allowed to proceed after all those years? And now here we are; we're a year late in getting to the bottom of this insulin rebate scheme.").

Further, the nature of the Scheme concealed its discovery. *Draggin' y Cattle Co., Inc. v. Addink*, 312 P.3d 451, 456 (Mont. 2013) (discovery rule applies when the facts constituting the claim are concealed). Complexity of injury often aids in concealment. *Id.* at 457. Such is the case here, where pharmaceutical pricing is non-transparent and complex, and Defendants intentionally obscured the true cause of the escalating prices.

## CONCLUSION

For the foregoing reasons and those stated in the States' original oppositions, the Motions to Dismiss should be denied. If the Court is inclined to dismiss any claims, the State respectfully requests leave to amend the complaint. *See* FED. R. CIV. P. 15(a)(2).

RESPECTFULLY SUBMITTED this the 24th day of May, 2024

*/s/ Joanne Cicala*

Joanne Cicala, Esquire
Josh Wackerly, Esquire
R. Johan Conrod, Esquire
**The Cicala Law Firm PLLC**
101 College Street
Dripping Springs, Texas 78620
Tel. (512) 275-6550
joanne@cicalapllc.com
josh@cicalapllc.com
johan@cicalapllc.com

David F. Buysse
Deputy Chief, Public Interest Division
Darren Kinkead
Deputy Chief, Special Litigation Bureau
**Illinois Attorney General's Office**
100 W. Randolph Street – 12th Floor
david.buysse@ilag.gov
darren.kinkead@ilag.gov

Anna Schneider
Bureau Chief, Office of Consumer Protection
**Montana Department of Justice**
P.O. Box 200151
Helena, Montana 59620-0151
Telephone: (406) 444-4500
anna.schneider@mt.gov

Tanya D. Ellis
Trey Watkins
**Forman Watkins & Krutz LLP**
210 East Capitol Street, Suite 2200
Jackson, Mississippi 39201-2375
Tel. (601) 960-8600
Fax. (601) 960-8613
tanya.ellis@formanwatkins.com
trey@formanwatkins.com

W. Lawrence Deas, Esquire
` Lawrence@Listondeas.com
**Liston Deas PLLC**
William Liston III, Esquire
william@listondeas.com
Post Office Box 14127
Jackson, Mississippi 39236
Tel. (601) 981-1636

Matthew C. McDonald, Esquire
**David Nutt & Associates PC**
605 Crescent Blvd., Suite 200
Ridgeland, Mississippi 39157
Tel. (601) 898-7302
Mattm@davidnutt.com

*Counsel for the Plaintiff States Montana and Illinois*

16