

**Melissa A. Geist**
Direct Phone:  +1 609 514 5978
Email:  mgeist@reedsmith.com

Reed Smith LLP
506 Carnegie Center
Suite 300
Princeton, NJ 08540-7839
+1 609 987 0050
Fax +1 609 951 0824
reedsmith.com

June 28, 2024

**VIA ECF**

The Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

      Re:    **In re: Insulin Pricing Litigation**
             **No. 2:23-md-03080-BRM-RLS**
             **Defendants' Position Paper Regarding State AG Track Discovery**

Dear Judge Singh:

      The Parties have reached an impasse over whether Plaintiff Fact Sheets ("PFS") are appropriate for the State Attorney General ("State AG" or "State") Track of this MDL. Defendants submit that they are not, and discovery in this track should instead proceed via master discovery requests on common issues that touch all of the State AG Plaintiffs. PFS are unsuitable for the State AG Track for two primary reasons.

      ***First***, a PFS for the State AG Track will not advance any aspect of discovery for this MDL. There is no need for "inventory management" when only 10 State suits are pending in this MDL, and the number of plaintiffs in a State AG Track will remain small. Nor is any one State AG case "representative" of the others, given all the state-specific issues inherent in the State AGs' consumer protection and unfair trade practices claims. Several State AGs were engaged in discovery before this MDL was filed, and pausing that discovery so that the State AGs can fill out minimal PFS would only serve to delay discovery.

      ***Second***, Defendants cannot obtain from PFS the discovery needed to defend their claims against the State AGs. The competing proposals represent not just a disagreement about the number of interrogatories (or "questions") and document requests that should be served, but a more fundamental dispute about the scope of discovery the State AGs should provide to support their consumer protection and unfair trade practices claims. The State AGs bring claims on behalf of their respective states, which are large bureaucracies involving multiple agencies, departments, and branches. They are pursuing claims for alleged direct injuries as payers, as well as *parens patriae* claims on behalf of their citizens. None of that complexity lends itself to a PFS, and the 10

ABU DHABI ♦ ASTANA ♦ ATHENS ♦ AUSTIN ♦ BEIJING ♦ BRUSSELS ♦ CENTURY CITY ♦ CHICAGO ♦ DALLAS ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG
HOUSTON ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH ♦ NEW YORK ♦ ORANGE COUNTY ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH
PRINCETON ♦ RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

Diane A. Bettino ♦Office Administrative Partner ♦ A Limited Liability Partnership formed in the State of Delaware

June 28, 2024  
Page 2



limited questions in the States' proposed PFS only reinforce that the States are unable to account for that complexity via their proposed discovery process.

That is why Defendants propose Master Discovery Requests consisting of 30 Interrogatories and 30 Requests for Production limited to common issues across each of the 10 States in the Track, and have attached a list of the topics they intend to cover. This process serves the MDL's efficiency goals by facilitating resolution of discovery disputes common to all actions in the State AG Track while providing the substantive information the parties need to move these cases forward. Accordingly, Defendants respectfully request that the Court adopt their proposed Case Management Order and require master discovery for the State AG Track.

**I.    USING PLAINTIFF FACT SHEETS WITH THE STATES SERVES NO PURPOSE.**

PFS are an *exception* to the default Federal Rules, which allow for interrogatories and document requests and require the *formal* responses and meet and confer processes that the State AGs seek to avoid. *See* Fed. R. Civ. P. 26, 33-34. Courts depart from the default rules and employ PFS in two main circumstances. First, parties often agree to a PFS in sprawling MDLs requiring inventory management. *See, e.g.*, *In re Juul Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.* (MDL 2913) (more than 5,700 cases); *In re Nat'l Prescription Opiate Litig.* (MDL 2804) (more than 2,200 cases); *In re Elmiron Prod. Liab. Litig.* (MDL 2973) (more than 1,900 cases). Second, if appropriate for the particular litigation, a PFS can aid in identifying bellwethers, which must be representative of other cases in the MDL. *See In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019-21 (5th Cir. 1997); *see also Morgan v. Ford Motor Co.*, 2007 WL 1456154, at *7 (D.N.J. May 17, 2007) (a representative case should be "typical of the mix of cases").

Neither purpose is served here. The State AG track is far too small to benefit from inventory management. It comprises only ten cases, and there is no risk that the track will balloon to an unmanageable load, since there are only fifty State AGs in the country. Use of a PFS is far less common where there are fewer actions.[1] Indeed, the Federal Judicial Center reviewed 118 MDLs and found that only 16% of these proceedings with fewer than 100 actions used PFS.[2]

Nor will PFS enable the parties to identify "representative" State AG cases because there can be none. Critical differences exist among the states that preclude any one State AG case from serving as a fair "representative" for another. For example, some States sue solely on behalf of

---

[1] *See, e.g., In Re: Entresto (Sacubitril/Valsartan) Pat. Litig.*, No. 1:20-md-02930 (D. Del) (25 actions; no PFS); *In Re: Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 1:18-cv-04171 (N.D. Ill.) (29 actions; no PFS); *In Re: FCA US LLC Monostable Elec. Gearshift Litig.*, 16-md-02744 (E.D. Mich.) (39 actions; no PFS); *In Re: Nat'l Football League's "Sunday Ticket" Antitrust Litig.*, 2:15-ml-02668 (C.D. Cal.) (26 actions; no PFS); *In Re: Telexfree Sec. Litig.*, 4:14-md-02566 (D. Mass.) (15 actions; no PFS); *In Re: Lipitor Antitrust Litig.*, 3:12-cv-02389 (D.N.J.) (34 actions; no PFS); *In Re: Rail Freight Fuel Surcharge Antitrust Litig.*, No. 1:07-mc-00489 (D.D.C.) (24 actions; no PFS).

[2] Margaret S. Williams, Emery G. Lee III, and Jason A. Cantone, *Plaintiff Fact Sheets in Multidistrict Litigation: Products Liability Proceedings 2008-2018*, Federal Judicial Center (Mar. 2019), https://www.fjc.gov/sites/default/files/materials/49/PFS%20in%20MDL.pdf; Judicial notice of this "public report[]" is proper. *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 219 (D.N.J. 2022).

June 28, 2024
Page 3



their citizens, while others also sue on behalf of themselves and state agencies as payors.³ States who sue as payors have individualized PBM contracts that are the result of complex negotiations and state-specific RFP processes. Some states (*e.g.*, Illinois, Kentucky, Louisiana, Montana, and Utah) decided to cap certain out-of-pocket insulin copayments,⁴ while the other States did not. This raises nuanced questions that are fundamental to the States' claims, including: if a State chose to regulate insulin cost-sharing, why did it do so? If it did not, why not? What did the State consider when it decided to pass that cap? How did the State determine the cap amount? Will the State lower the cap?⁵ If the cap only covers part of the State's population, why did the State decide not to cover other consumers? How are these decisions consistent with the injunctive relief the State AGs are seeking in these cases?

These state-by-state differences manifest in the varying consumer prescription drug affordability programs that states passed, which bear on any allegations of consumer injury. As of October 2022, most of the States had a State Pharmaceutical Assistance Program (SPAP), which is a state-run affordability program that provides financial assistance to help certain populations pay for prescriptions.⁶ Arizona and Kentucky adopted a State Discount Program (SDP) that provides additional discounts.⁷ Conversely, some States lack discount programs available to consumers with diabetes.⁸ These state policy decisions bear on claims that the pricing of insulin is against public policy, as many of the State AGs must prove under their consumer protection statutes.

The States also differ in their Medicaid programs covering insulin. Most States have adopted the Affordable Care Act's Medicaid expansion, but Kansas and Mississippi have not.⁹ Arizona, Arkansas, Indiana, Montana, and Utah have approved waivers to test new approaches to their Medicaid expansion programs that differ from what federal law requires.¹⁰ Each of these States' waivers imposes different conditions on Medicaid eligibility, such as the requirement to work a certain number of hours per week.¹¹ This too gives rise to key questions with answers that vary by State: If a State chose to expand Medicaid, why? If not, why not? Did the State consider the impact on insulin consumers in refusing expansion or in limiting eligibility? If not, why not? Each of these considerations is relevant to the States' unfairness claim. Not only will those

---

³ While Arizona, Illinois, Indiana, Kansas, Kentucky, Louisiana, and Utah bring claims purely on behalf of citizens, Arkansas, Mississippi, and Montana bring claims both on behalf of their citizens and directly as payors.
⁴ *Tools & Resources: State Insulin Copay Caps*, American Diabetes Association, https://diabetes.org/tools-resources/affordable-insulin/state-insulin-copay-caps.
⁵ *Id.* Effective July 1, 2025, Illinois will cap copays at $35.
⁶ *State Pharmaceutical Assistance Programs*, National Conference of State Legislatures (Oct. 26, 2022), https://www.ncsl.org/health/state-pharmaceutical-assistance-programs.
⁷ *Id.*
⁸ Redacted Op., *In re Insulin Pricing Litig.*, Case No. 17-cv-00699 (D.N.J. Feb. 5, 2024), ECF No. 725 at 39 n.24.
⁹ *Status of State Medicaid Expansion Decisions: Interactive Map*, KFF (May 8, 2024), https://www.kff.org/affordable-care-act/issue-brief/status-of-state-medicaid-expansion-decisions-interactive-map/.
¹⁰ *Id.*
¹¹ *Medicaid Waiver Tracker: Approved and Pending Section 1115 Waivers by State*, KFF (June 18, 2024), https://www.kff.org/medicaid/issue-brief/medicaid-waiver-tracker-approved-and-pending-section-1115-waivers-by-state/.



considerations vary by state, but the governing standards for the States' deception and unfairness claims will vary too.

Given these and many other salient differences between the States and their underlying claims, no one State AG can be representative of the other State AGs in this MDL, making PFS an inappropriate vehicle for discovery. *See In re Google Digit. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Mar. 22, 2023), ECF No. 513 (rejecting bellwethers where the plaintiffs' discovery responses may "vary greatly"). As Judge Martinotti recognized in the Court's opinion denying class certification in the *In re Insulin Pricing* consumer case, even the same type of plaintiffs (*i.e.*, consumer plaintiffs) may have "individualized issues subject to various standards of review." Redacted Op., *In re Insulin Pricing Litig.*, Case No. 17-cv-00699 (D.N.J. Jan. 24, 2024), ECF No. 725 at 65. Part of the Court's analysis turned on the different options that consumers had in their states with respect to affordability programs run by "state government agencies," among many others. *Id.* at 39 n.24, 99. The same individualized issues exist in each case where State AGs are asserting claims on behalf of consumers. Adding more questions to a PFS will not change that reality. Because inventory management is unnecessary and identifying a "representative" State is not possible, a PFS in the State AG Track will not serve the MDL's goals.

**II.    PLAINTIFF FACT SHEETS ARE INADEQUATE TO OBTAIN THE DISCOVERY DEFENDANTS REQUIRE.**

The PFS process is also inadequate for the type of discovery Defendants need to defend against the States' claims. ***First***, a PFS cannot provide the qualitative discovery Defendants need, as demonstrated by the States' proposed PFS. The States' suggestion that their proposed 10-question, 4-page PFS constitutes an "expansive disclosure" only highlights the Parties' disconnect on this issue. For example, the States wish to merely "[i]dentify the names of every formulary that [was] utilized by any entity/department/person on whose behalf [they] are claiming damages." This simple request fails to provide Defendants with almost any of the information they need to test, and contest, the States' claims regarding formulary placement in connection with rebates. Nor are the States willing to provide documents showing when they first learned of the facts underlying their suit. Instead, they will provide only documents "sufficient to show when [they] learned of … other insulin pricing lawsuits or investigations, or PBM/drug pricing reform." In an MDL centered on pharmaceutical prices and each State's policy responses to those prices, Defendants lack the basic information necessary to defend themselves without early written master discovery into these topics.

No edits to the State AGs' draft PFS would resolve its deficiencies. A PFS typically focuses on quantitative data, yes/no answers, and historical information like purchases or medical histories, which is why they are common in personal injury and product liability cases. In those cases, answers to straightforward "time and date" or "yes/no" questions from individual consumers provide the vast majority of information defendants need to develop case strategy.[12] In complex

---

[12] *See, e.g.*, Case Management Order No. 8, *In re Juul Labs Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 19-md-02913 (N.D. Cal. Mar. 27, 2020), ECF No. 406 (authorizing, in product liability case, PFS asking whether claimant

June 28, 2024
Page 5



cases, such as those involving antitrust and patent issues, a PFS is far less common or useful because the fundamental "*why*" questions are best handled through normal discovery.[13] A typical PFS cannot provide insight into the States' policy responses (or lack thereof) to insulin pricing; how they weighed their options for prescription drug benefit design; or how they allegedly relied on any alleged misrepresentation. Discovery of facts like these is essential to Defendants' ability to understand and defend against the State AGs' claims that the cost of insulin is "unfair" and "unconscionable."

*Second*, the inadequacy of using a PFS is compounded by the fact that these cases are brought by State AGs on behalf of entire state governments and large consumer populations. States have many different departments and agencies, a number of which have roles in insulin purchasing, policy, and rebate negotiations that impact consumer out-of-pocket costs. For example, a State's Department of Corrections might purchase insulin for people who are incarcerated, while that State's Board of Pharmacy might determine formulary coverage for state employees or regulate what pharmacies charge to consumers. State legislatures and governors also play a role in policies, regulations, and laws that are relevant to the issues at the heart of the States' claims. These complexities are only exacerbated by the fact that the States are also asserting *parens patriae* claims on behalf of consumers. Because of these complexities, courts often do not use PFS with State AGs, even when they are used in other tracks or with other plaintiff groups in the same MDL. For example, in *In re: Soc. Media Adolescent Addiction/Pers.l Inj. Prod. Liab. Litig.*, No. 4:22-md-03047 (N.D. Cal.), PFS are being used for school districts and personal injury plaintiffs but *not* for the State AGs. *See also*, *e.g.*, *In re: Standard & Poor's Rating Agency Litig.*, 1:13-md-02446 (S.D.N.Y.) (PFS not used for State AGs). Given the complexities of each State's government and the different groups on whose behalf the State AGs purport to bring claims, Defendants need full written and document discovery to obtain the information necessary to defend their cases.

\*   \*   \*

For these reasons, Defendants propose that all State AG Plaintiffs respond to a master set of 30 RFPs and 30 Interrogatories covering the key issues in this case, including: the States' treatment of cost-sharing for the at-issue drugs; the legislative history and rationale of the States' insulin affordability programs or lack thereof; the States' negotiation for, and decision-making regarding, covering or purchasing the at-issue drugs and any attendant rebates. *See* Ex. A. The States have not offered any justification for deviating from the default discovery process. They

---

used the at-issue product); Case Management Order No. 8, *In re Elmiron (Pentosan Polysulfate Sodium) Prod. Liab. Litig.*, No. 2:20-md-02973 (D.N.J. May 5, 2021), ECF No. 39 (authorizing, in product liability case, PFS asking the dates that claimant took at-issue drug); Case Management Order No. 5, *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. 2:18-mn-2873 (D.S.C. Aug. 7, 2019), ECF No. 205 (providing for, in product liability case, PFS asking for all locations that claimant was allegedly exposed to at-issue product).

[13] *See*, *e.g.*, *In Re: Entresto (Sacubitril/Valsartan) Pat. Litig.*, No. 1:20-md-02930 (D. Del); *In Re: Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 1:18-cv-04171 (N.D. Ill.); *In Re: Nat'l Football League's "Sunday Ticket" Antitrust Litig.*, 2:15-ml-02668 (C.D. Cal.); *In Re: Telexfree Sec. Litig.*, 4:14-md-02566 (D. Mass.); *In Re: Lipitor Antitrust Litig.*, 3:12-cv-02389 (D.N.J.); *In Re: Rail Freight Fuel Surcharge Antitrust Litig.*, No. 1:07-mc-00489 (D.D.C.).

June 28, 2024  
Page 6



simply incorporate their earlier submission, which they premised on the "large[] (and growing) number of cases in the *Self-Funded Payer Track* and the State Attorney General Track." Dkt. 168 at 6 (emphasis added). That submission makes no effort to justify a PFS for the *State Attorney General Track* alone—a track of 10 plaintiffs where no representative plaintiff can be identified, each case involves complex questions requiring fulsome, nuanced answers, and the States are sophisticated entities with teams of lawyers who can answer traditional discovery requests. Here, implementing a PFS would only delay discovery for this Track. While States are welcome to produce early discovery, imposing phased discovery with 10 narrow questions in a PFS serves no efficiency goals, such as narrowing the issues or facilitating valuation of claims.

Instead, proceeding with standard discovery under the Federal Rules is the most efficient approach for the State AG Track. Efficiency will be served by having one judge resolve common discovery disputes in a way that is generally applicable to all Defendants and all State AGs. The same Master Discovery Requests will be served on all States, meaning their scope can be negotiated in a unified process, and the Court can address the States' objections and disputes at once and across the board. This process directly "promote[s] the just and efficient conduct of the litigation, conserve[s] judicial and party resources, minimize[s] duplicative discovery, and serve[s] the convenience of the parties and the witnesses." CMO 10 at 1. Defendants respectfully request the Court order the parties to conduct master discovery in the State AG Track.

Dated June 28, 2024

Respectfully submitted,

*/s/ Melissa A. Geist*
_____

**REED SMITH LLP**  
Melissa A. Geist  
Julia A. López  
506 Carnegie Center, Suite 300  
Princeton, NJ 08540  
(609) 514-5978

**KIRKLAND & ELLIS LLP**  
James F. Hurst (*pro hac vice*)  
Andrew A. Kassof (*pro hac vice*)  
Diana M. Watral (*pro hac vice*)  
Ryan Moorman (*pro hac vice*)  
Jason A. Feld (*pro hac vice*)  
333 West Wolf Point Plaza  
Chicago, IL 60654  
(312) 862-2000

*Attorneys for Defendant*  
*Eli Lilly and Company*

June 28, 2024
Page 7

ReedSmith

| | |
|---|---|
| Dated June 28, 2024 | */s/ Liza M. Walsh* |

**WALSH PIZZI O'REILLY FALANGA LLP**
Liza M. Walsh
Katelyn O'Reilly
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100

**JONES DAY**
Michael R. Shumaker (*pro hac vice*)
Julie E. McEvoy (*pro hac vice*)
William D. Coglianese (*pro hac vice*)
Melissa L. Patterson (*pro hac vice*)
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3939

*Attorneys for Defendant
Sanofi-Aventis U.S. LLC*

| | |
|---|---|
| Dated June 28, 2024 | */s/ Brian W. Carroll* |

Brian W. Carroll, Esq.
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 639-2020

**DAVIS POLK & WARDWELL LLP**
James P. Rouhandeh (*pro hac vice*)
David B. Toscano (*pro hac vice*)
450 Lexington Ave.
New York, New York 10017
(212) 450-4000

June 28, 2024  
Page 8



        **DAVIS POLK & WARDWELL LLP**
Neal A. Potischman (*pro hac vice*)
Andrew Yaphe (*pro hac vice*)
1600 El Camino Real
Menlo Park, California 94025
(650) 752-2000

*Attorneys for Defendant*
*Novo Nordisk Inc.*

Dated June 28, 2024	/s/ *Thomas P. Scrivo*
Thomas P. Scrivo
Young Yu
**O'TOOLE SCRIVO, LLC**

Brian D. Boone
Elizabeth Broadway Brown
Kelley Connolly Barnaby
**ALSTON & BIRD LLP**

*Counsel for UnitedHealth Group Incorporated; OptumRx, Inc.; Optum, Inc.; and OptumInsight, Inc.*

Dated June 28, 2024	/s/ *Jason R. Scheer*
Jason R. Scherr
Patrick A. Harvey
Lindsey T. Levy
**MORGAN LEWIS & BOCKIUS LLP**

-and-

Drew Cleary Jordan Tanya Y. Shah
**MORGAN LEWIS & BOCKIUS LLP**

-and-

Katherine A. Vaky
**MORGAN, LEWIS & BOCKIUS LLP**

*Counsel for Evernorth Health, Inc. (f/k/a Express Scripts Holding Company); Express Scripts, Inc.; Express Scripts Administrators,*

June 28, 2024
Page 9



                                        *LLC; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; Medco Health Solutions, Inc., and The Cigna Group*

Dated June 28, 2024                    */s/Kevin H. Marino*
                                        Kevin H. Marino
                                        John D. Tortorella
                                        **MARINO, TORTORELLA & BOYLE, P.C.**

                                          Enu Mainigi Craig Singer
                                        R. Kennon Poteat III
                                        A. Joshua Podoll
                                        Benjamin Hazelwood
                                        Daniel Dockery
                                        **WILLIAMS & CONNOLLY LLP**

                                        *Counsel for CVS Health Corporation; CVS Pharmacy, Inc.; Caremark Rx, L.L.C.; CaremarkPCS Health, L.L.C.; and Caremark, L.L.C.*