Exhibit 5

**Subject:**                California School Districts Insulin Pricing Matter
**Attachments:**       Insulin Pricing Scheme.pptx

From: **William Shinoff** <WShinoff@frantzlawgroup.com>
Date: Wed, Aug 7, 2024 at 10:32 AM
Subject: California School Districts Insulin Pricing Matter
To:


Dear Superintendent,


Hope all is well. I wanted to introduce myself and advise you that we are currently representing school districts across the country in Federal Litigation in New Jersey against a number of Insulin Manufacturers and Pharmacy Benefit Managers for the increased prices public entities have had to pay for the drug for employees, dependents and retirees.


On January 14, 2021, after a two-year investigation which aimed to shed light on how drug manufacturers price insulin medication, the role played by pharmacy benefit managers, and the financial and contractual relationship between these entities, the U.S. Senate Finance committee published a 90-page report titled, "Insulin examining the factors driving the rising cost of a century old drug." The report noted that Manufacturers aggressively raised the list price of their insulin products absent significant advances in the efficacy of the drugs.


The senate report  also discussed the flow of money between manufactures and pharmacy benefit managers, finding that "relatively little is publicly known about these financial relationship and the impact they have on insulin costs borne by consumers, even though pharmacy benefit managers play a major role in the drug supply and payment chain by negotiating drug rebates and discounts with manufacturers and managing drug benefits for health care payers."


99% of the market for insulin products is controlled by three manufacturers, Eli Lilly, Novo Nordisk, and Sanofi-Aventis, and three pharmacy benefit managers, CVS Caremark, Express Scripts, and Optum RX, control 89% of the pharmacy benefit manager market.


School Districts across the country have filed lawsuits against the companies alleging that they conspired to raise the list prices for insulin products, resulting in increased profits for the pharmaceutical companies at the expense of self-funded health care payers like your school district.

It has been estimated that self-funded health care payers like the school district have been overcharged for insulin by at least 75%.

We are reaching out to you as your District may have been impacted by these companies' pricing scheme. We wanted to inquire whether you would be interested in joining this litigation. The goal of this litigation is to get the overcharged funds returned to the school district by the manufacturers and pharmacy benefit managers. As well we are trying to obtain through injunctive relief a cap on the price of insulin, which if we are successful will be beneficial to your school districts budget and to the amount your employees are paying out of pocket for this essential drug.

We are handling this case on a contingency fee basis and as such there is no financial risk to join this matter. All that will be required as part of this litigation is to complete a court order discovery questionnaire which should take only a few hours of staff time.

I was hoping we could set up a call to discuss this matter further. Please let me know if you have any availability to discuss this case in greater detail.

All the best,

William B. Shinoff, Esq. - Lawyer

FRANTZ LAW GROUP, APLC

wshinoff@frantzlawgroup.com

web:  www.frantzlawgroup.com

Toll Free: 855-735-5945

Fax: 619-525-7672

*Licensed in: California, Texas.

Confidentiality Notice

This electronic message contains information from Frantz Law Group, APLC which may be confidential or protected by the attorney-client privilege and/or the work product doctrine and is intended solely for the use of the addressee listed above. If you are neither the intended recipient nor the employee or agent responsible for delivering this electronic message to the intended recipient, you are hereby notified that any disclosure, copying, distribution or the use of the content of this electronic message is strictly prohibited. If you have received this electronic message in error, please immediately notify us by replying to this message and delete the original message.

If you are a potential client, the information you disclose to us by e-mail will be kept in strict confidence and will be protected to the full extent of the law.  Please be advised, however, that Frantz Law Group, APLC and its lawyers do not represent you until you have signed a retainer agreement with the firm.  Until that time, you are responsible for any statutes of limitations or other deadlines for your case or potential case.



CONFIDENTIALITY NOTICE: This communication and its attachments may contain non-public, confidential, or legally privileged information including HIPAA-protected PHI. The interception, use or disclosure of such information is prohibited. If you are not the intended recipient, or have received this information in error, please notify the sender immediately by reply email and delete all copies of this message and attachments without reading, saving, or further distributing them.

# Insulin Pricing Scheme Lawsuit
# MDL No. 3080
# United States District Court
# District of New Jersey

Frantz Law Group
A Professional Law Corporation
TRIAL ATTORNEYS



# DIABETES IS AN EPIDEMIC



- Over 34.2 million people (10.5% of the U.S. Population) have diabetes and over 88 million people have prediabetes.
- Diabetes is the seventh leading cause of death in the country, despite the availability of effective treatment.
- Diabetes is the underlying cause of death of approximately 275,000 Americans per year.

# INSULIN IS A NECESSITY

- Due to the prevalence and severity of diabetes, insulin is a necessary, life-saving medicine.
- More than 7 million people per day require insulin.





## PRICES OF INSULIN ARE ARTIFICALLY AND EXCESSIVELY HIGH

Insulin Manufacturers and Pharmacy Benefit Managers (PBMs) have artificially inflated the price of insulin at the expense of self-funded health plans and their members and beneficiaries.

# INSULIN AND ITS RISING COST

- Insulin was discovered in 1921 and harvested until 1978 when the first biosynthetic human insulin was developed. Humulin, was the first biosynthetic human insulin product, was reviewed and approved by the FDA in October in 1982.

- Insulin was discovered in 1921 and harvested until 1978 when the first biosynthetic human insulin was developed. Humulin, was the first biosynthetic human insulin product, was reviewed and approved by the FDA in October in 1982.

- A 2022 Yale study found that 14% of insulin users, approximately 1.2 million people, in the United States face "catastrophic" levels of spending on insulin, meaning they spent at least 40% of their post-subsistence income on insulin.

- The over-pricing of insulin has led to congressional investigations all highlighting the gravity of the problem and its causes.

- The insulin manufacturers and PBMs' pricing scheme has exacerbated this epidemic, costing millions of dollars to organizations like yours.

**SENATE INVESTIGATION**



# Insulin Deserts

The Urgency of Lowering the Cost of Insulin for *Everyone*







This report was prepared by staff in the Offices of Senator Reverend Warnock and Senator Kennedy
November 2023

# DEFENDANTS

**MANUFACTURERS**
- Eli Lilly
- Novo Nordisk
- Sanofi

**PBMs**
- Express Scripts
- CVS Caremark
- Optum RX



# LIABILITY

- Insulin prices have skyrocketed over the past 20 years, despite the drug being over 100 years old, decreased manufacturing costs, and minimal innovations regarding the drug since its initial formulation.
- Since 2003, the list price of certain insulins has increased by more than 1000%, greatly outpacing the inflation rate for consumer goods and services.











# WHY THE SKYROCKETING PRICES?



**PRODUCTION**

Even though prices have increased dramatically, the production costs of insulin have decreased with efficiency and optimized processes. A September 2018 study found that a reasonable price of a year's supply of human insulin, based on production costs, should be $48 to $71 per person, which would still deliver generous profits to manufacturers.



**PROFIT**

Another study found that manufacturers could be profitable charging less than $2 per vial for insulin. However, the average diabetic spent $5,705 on insulin in 2016.

# WHY THE SKYROCKETING PRICES CONT.



## LACK OF INNOVATIONS

There have been minimal innovations to insulin since the 1990s. Manufacturers have invested only a small fraction of their outsized profits on research and development and the investments they have made have largely been on delivery devices rather than drug formulations.

For example, Eli Lilly spent $395 million on R&D between 2014 and 2018. During that time, Eli Lilly spent $1.5 billion on sales and marketing for insulin and generated $22.4 billion in revenue from its insulin line.

Similarly, Sanofi reported net sales of nearly $37 billion for its insulin products while only investing $902 million on insulin  R&D.

**So, why have Insulin prices increased SO much? Greed.**

# HOW DOES THIS PRICING SCHEME WORK?

The insulin pricing scheme is based on two separate but related illegal activities:

1. PBMs demand large, secret, and ever growing "rebates" and other payments for preferred formulary placement, leading to increased prices for payors and plan members.

2. Manufacturers increase their insulin prices in lockstep to accommodate larger rebates and maintain access to lucrative placements on PBMs' standard formularies.



# INSULIN MARKET DOMINATION

**3 PBMS control 89% of the PBM Market**
- Express Scripts
- CVS Caremark
- Optum RX

**3 Manufacturers control 99% of the Insulin market by value and 96% by volume**
- Novo Nordisk
- Eli Lilly
- Sanofi





**COMMUNITY IMPACT** 

**PUBLIC ENTITY HEALTH PLAN IMPACT** 

**PUBLIC ENTITY/PURCHASER IMPACT** 

**EFFECTS OF THE FRAUDULENT SCHEME**

# LEGAL CAUSES OF ACTION

## RICO (Racketeer Influenced and Corrupt Organization Act)

- Insulin manufacturers and PBMs have colluded in an effort to artificially increase insulin prices to achieve profits far exceeding the fair market value of the drugs and the services the PBMs provided. The federal RICO statute is an ideal vehicle to ensure they are collectively held accountable for the harm they have caused. The misconduct also supports a claim for civil conspiracy, which typically requires evidence similar to the evidence supporting a RICO claim.

## Unfair and/or Deceptive Trade Practices

- In collaborating to artificially and excessively inflate the price of insulin, the insulin manufacturers and PBMs engaged in unfair and deceptive trade practices that are actionable in most States. PBMs misled payors regarding the fair market price for diabetes medications and concealed their agreements with insulin manufacturers and company-owned pharmacies while skimming profits that rightfully should have been passed along to payors.

# POTENTIAL REMEDIES

**The legal claims will seek significant equitable and monetary relief. Potential remedies include:**

Money wrongfully paid for artificially inflated insulin prices on behalf of your insured beneficiaries. For some claims, the damages awarded can be trebled – not only compensate you for the expenses you have wrongfully incurred, but also to deter similar future behavior from these defendants and others like them.

Injunctive relief to stop the insulin pricing scheme. This would ensure that you and your members do not suffer monetary harm in the future.

Disgorgement of ill-gotten gains on the part of the PMS and manufacturers.

Punitive damages designed to punish past misconduct and deter future misconduct.



**Frantz Law Group has trial-tested their extensive experience securing landmark verdicts and settlements\***

- $13.5 billion -against Pacific Gas & Electric (PG&E) in 2020 on behalf of thousands of victims harmed in the 2017 and 2018 Northern California wildfires (Frantz Law Group represents 4,500 clients of approximately 40,000 victims). Mr. Frantz played an integral role in obtaining this landmark settlement.\*\*
- $1.8 billion-against Southern California Gas Company in 2021 (Frantz Law Group represents 8,202 clients of approximately 35,000 victims)\*\*
- $1.2 billion-pending settlement against JUUL Labs, Inc. in December 2022 (Frantz Law Group represents nearly 1,000 clients of 1,400 school districts)\*\*
- $800 million-against MGM Resorts International on behalf of victims of the 2017 Las Vegas Shooting at Mandalay Bay (Frantz Law Group represented 201 clients of approximately 586 victims). Mr. Frantz played a very important part in achieving this historic settlement.\*\*

## Frantz Law Group Insulin Pricing Litigation Attorneys



• James P. Frantz's 43 years of legal experience includes litigating catastrophic injury claims, tractor-trailer collisions, amusement park accidents, products liability, motorcycle and automobile collisions, aviation accidents, fire and explosion related injuries, wrongful death claims, mass transit accidents, construction accidents, industrial accidents, complex business disputes, class actions, and mass torts. Mr. Frantz currently serves on the Plaintiffs' Steering Committee for the Porter Ranch Gas Leak litigation (one of the largest mass tort lawsuits in U.S. history), as well as the Plaintiffs' Steering Committee in the wildfire litigation against Pacific Gas & Electric (PG&E) and Southern California Edison (SCE).

• The Daily Transcript honored Mr. Frantz as one of the Top 10 Attorneys. Mr. Frantz has been nominated for Top Attorneys in the insurance and personal injury category for the years 2010–2023. Mr. Frantz has also been honored as a Super Lawyer and Tier One Best Lawyers of America for 15 consecutive years.

• Mr. Frantz is a cum laude graduate of the University of California at Santa Barbara and a graduate of Thomas Jefferson School of Law. He represented the San Diego County Bar Association as a Delegate to the State Bar of California and has served as a Special Master for the State Bar of California for the past 30 years. He has also been an Arbitrator for 30 years. He is a Master of the William B. Enright Chapter of the American Inns of Court. He is a Fellow and Associate of the prestigious American Board of Trial Advocates and is AV rated by Martindale-Hubbell.

## Frantz Law Group Insulin Pricing Litigation Attorneys



• William Shinoff is a trial lawyer at Frantz Law Group and specializes in litigating complex litigation and mass tort cases on behalf of public entities across the country. Mr. Shinoff attributes his love and passion for the courtroom to his family roots in the legal profession. Prior to joining Frantz Law Group, Mr. Shinoff represented school districts and public entities throughout Southern California at one of the premier public entity law firms in Southern California. During his nine years representing public entities, Mr. Shinoff litigated matters in both state and federal courts throughout California. Currently, Mr. Shinoff is the lead attorney for Frantz Law Group representing nearly 1,000 public entities across the country against JUUL Labs, Inc. and Altria in youth vaping litigation.

• Mr. Shinoff's unique defense background enables him to deal with large corporate entities and big insurance companies and navigate through the smoke and mirrors of insurance company bureaucracy. Mr. Shinoff strives to take a hands-on approach with his clients and makes sure they are completely satisfied and comforted throughout the litigation process.

• Mr. Shinoff began his undergraduate studies at the University of Miami, Florida and completed his education at the University of Victoria, British Columbia where he obtained a bachelor's degree. Following university, he graduated cum laude from California Western School of Law where he was an associate editor on the Law Review Journal. He is admitted to practice law in California and Texas.



## Frantz Law Group Insulin Pricing Litigation Attorneys

• Regina Bagdasarian graduated magna cum laude from California Western School of Law where she served as Editor in Chief of California Western Law Review. Recognized for her excellence in legal research and writing, Ms. Bagdasarian served as an editor and researcher for an amicus curiae (friend of the court) brief submitted to the United States Supreme Court regarding the Alien Tort Statute and Torture Victims Protection Act. Ms. Bagdasarian was also a member of the Moot Court Appellate Team where she was recognized for expertise in written and oral advocacy.

• In her current practice, Ms. Bagdasarian focuses on complex matters involving nuanced analysis and application of the law. She is committed to zealous advocacy on behalf of the firm's clients.

• Prior to attending law school, Ms. Bagdasarian worked extensively in product development, marketing, and international brand management. This unique combination of legal training and business experience provides Ms. Bagdasarian with both the legal acumen and practical experience with which to assess legal issues and implement strategies for success. Ms. Bagdasarian brings a combination of creativity, tenacity, intellectual curiosity, and attention to detail to every client and case.

# Frequently Asked Questions

**How much of our staff's time will this take?**

This is difficult to predict with certainty, but we anticipate minimal inconvenience and interruption. There will be some case-specific discovery in the MDL, but that would be mostly in the form of written discovery and document production. Given the expected large number of cases filed in the MDL, the number of cases selected for more in-depth discovery and trials is usually relatively small. However, if your case is selected for trial, more in-depth discovery would occur in the form of depositions of key administrators.

**What are the costs/risks for public entities participating in this litigation?**

Frantz Law Group will work on a contingency fee basis, meaning you are not required to pay any legal fees or expenses unless there is a financial compensation. All expenses associated with pursuing this claim will be advanced by the legal team. If there is a recovery, Frantz Law Group will be reimbursed for expenses and fees out of the amount of recovery. If the case is not successful, the public entity will not owe Frantz Law Group for any legal fees or expenses whatsoever.