David R. Buchanan
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
(973) 639-9100
dbuchanan@seegerweiss.com

*Liaison Counsel for Self-Funded Payer Track*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case 2:23-md-03080-BRM-RLS MDL No. 3080** |
| **THIS DOCUMENT RELATES TO: ALL CASES** | **JUDGE BRIAN R. MARTINOTTI JUDGE RUKHSANAH L. SINGH** |

## DECLARATION OF DAVID R. BUCHANAN

Pursuant to 28 U.S.C. 1746, I, David R. Buchanan, hereby declare as follows:

1.      I am attorney at law of the State of New Jersey, admitted to practice in this Court, and a partner with the law firm of Seeger Weiss LLP. I am Co-Lead Counsel for the Self-Funded Payer Track in this action. I submit this declaration in connection with the Brief in Support of Plaintiffs' Proposed Discovery Plan.

2.      To the best of my knowledge, information, and belief, attached hereto as Exhibits 1 through 16 are true and correct copies of the following documents:

| EXHIBIT | DOCUMENT DESCRIPTION |
|---|---|
| 1 | Plaintiffs' proposed Case Management Order governing master discovery and fact sheets |
| 2 | Defendants' proposed Case Management Order |
| 3 | Plaintiffs' proposed Plaintiff Fact Sheet (Self-Funded Payer Track) |
| 4 | Defendants' proposed Plaintiff Fact Sheet (Self-Funded Payer Track) |

| EXHIBIT | DOCUMENT DESCRIPTION |
|---|---|
| 5 | Redline comparison of Defendants' proposed Plaintiff Fact Sheet against Plaintiffs' proposed Plaintiff Fact Sheet (Self-Funded Payer Track) |
| 6 | Plaintiffs' proposed Defendant Fact Sheet – Pharmacy Benefit Managers (Self-Funded Payer Track) |
| 7 | Plaintiffs' proposed Defendant Fact Sheet – Manufacturers (Self-Funded Payer Track) |
| 8 | *In re Juul Labs Inc., Marketing, Sales Practices, and Products Liability Litigation*, Case No. 19-md-02913, MDL No. 2913, Case Management Order No. 13: Government Entity and School District Fact Sheet Implementation Order (ECF No. 1075) |
| 9 | *In re Juul Labs Inc., Marketing, Sales Practices, and Products Liability Litigation*, Case No. 19-md-02913, MDL No. 2913, Stipulation and Order to Extend Deadlines Regarding Government Entity Bellwether Selection (ECF No. 1157) |
| 10 | *In re Aqueous Film-Forming Foams Products Liability Litigation*, Case No. 2:18-mn-2873, MDL No. 2873, Case Management Order No. 5, Exhibits 8 & 9 (ECF No. 205) |
| 11 | *In re Aqueous Film-Forming Foams Products Liability Litigation*, Case No. 2:18-mn-2873, MDL No. 2873, Initial Bellwether Selection and Protocols (ECF No. 1049) |
| 12 | *In re National Prescription Opiate Litigation*, Case No. 1:17-md-2804, MDL No. 2804, Fact Sheet Implementation Order (ECF No. 638) |
| 13 | *In re National Prescription Opiate Litigation*, Case No. 1:17-md-2804, MDL No. 2804, Bellwether Order (ECF No. 4920) |
| 14 | *In re Juul Labs Inc., Marketing, Sales Practices, and Products Liability Litigation*, Case No. 19-md-02913, MDL No. 2913, Joint Case Management Conference Statement and Proposed Agenda (ECF No. 1055) |
| 15 | *In re JUUL*, Case No. 19-md-02913, MDL No. 2913, Order Regarding Government Entity Plaintiff Fact Sheets (ECF No. 1038) |
| 16 | Plaintiffs' proposed Plaintiff Fact Sheet (State Attorney General Track) |

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 30, 2024

*s/ David R. Buchanan*
David R. Buchanan

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**IN RE:  INSULIN PRICING LITIGATION**

**Case 2:23-md-03080**
**MDL No. 3080**

**JUDGE BRIAN R. MARTINOTTI**
**JUDGE RUKHSANAH L. SINGH**

**THIS DOCUMENT RELATES TO:  ALL ACTIONS**

**CASE MANAGEMENT ORDER #___**

This Case Management Order, jointly proposed and agreed upon by the parties in accordance with Case Management Order #10 (Initial Discovery Plan) [ECF No. 198], sets forth the procedures and timeline for Master Discovery Requests, Plaintiff Fact Sheets and Defendant Fact Sheets, and case-specific discovery in the above-captioned multidistrict litigation. Except as otherwise provided herein or in any other Case Management Order, discovery shall be governed by the applicable provisions of the Federal Rules of Civil Procedure. Unless specifically modified herein, nothing in this Order shall be construed to abrogate, modify, or enlarge the Federal Rules of Civil Procedure.

**I.    MASTER REQUESTS FOR PRODUCTION**

1.    Plaintiffs[1] shall collectively serve a First Set of Master Requests for Production pursuant to Fed. R. Civ. P. 34 ("Master RFPs") upon each Defendant. Master RFPs are limited to

---

[1] As used herein, "Plaintiffs" refers collectively to the Plaintiffs in the member actions in MDL No. 3080 and Plaintiffs in *In re Direct Purchaser Insulin Pricing Litigation*, Case No. 20-03426 ("Direct Purchaser Action"). On August 28, 2024, the Court entered an Order consolidating the Direct Purchaser Action with the TPP PBM Actions, eliminating the current TPP Class Track, and replacing it with a new "Class Track." ECF No. 266. The Direct Purchaser Action and the TPP PBM Actions are collectively referred to herein as the "Class Track."

common issues across each Plaintiff Track and the Direct Purchaser Action. Plaintiffs need not serve the same set of Master RFPs on each Defendant.

2.      Defendants shall serve written objections and responses to Plaintiffs' Master RFPs within 30 days of being served.

3.      Defendants shall begin a rolling production of documents and electronically stored information within 45 days after being served with Plaintiffs' Master RFPs, with substantial completion of Defendants' responsive document productions within 90 days after being served with Plaintiffs' Master RFPs.

4.      Plaintiffs shall serve any Supplemental Master Requests for Production of Documents ("Supplemental Master RFPs") no later than 30 days prior to the fact discovery deadline.

5.      Except as otherwise agreed, for any Supplemental Master RFPs, Defendants shall serve written objections and responses within 30 days after being served and shall substantially complete responsive productions within 45 days after being served.

6.      To the extent any disputes arise in connection with responses to the Supplemental Master RFPs after the fact discovery deadline, the parties shall meet and confer and may seek relief regarding the Supplemental Master RFPs notwithstanding the expiration of that deadline.

## II.     MASTER AND TRACK-SPECIFIC INTERROGATORIES

1.      Absent leave of Court, the Parties agree that Plaintiffs may serve up to 40 total Master Interrogatories (First Set and Supplemental) to each PBM Defendant, and up to 20 total Master Interrogatories (First Set and Supplemental) to each Manufacturer Defendant.

2.      Plaintiffs shall collectively serve a First Set of Master Interrogatories pursuant to Fed. R. Civ. P. 33 ("Master Interrogatories") upon each Defendant. Master Interrogatories are

limited to common issues across each Plaintiff Track and the Direct Purchaser Action. Plaintiffs need not serve the same set of Master Interrogatories on each Defendant.

3.    Defendants shall serve written objections and responses to Plaintiffs' Master Interrogatories in accordance with Fed. R. Civ. P. 33(b).

4.    Plaintiffs shall serve any Supplemental Master Interrogatories no later than 30 days prior to the fact discovery deadline.

5.    Except as otherwise agreed, for any Supplemental Master Interrogatories, Defendants shall serve written objections and responses in accordance with Fed. R. Civ. P. 33(b).

6.    To the extent any disputes arise in connection with responses to the Supplemental Master Interrogatories after the fact discovery deadline, the parties shall meet and confer and may seek relief regarding the Supplemental Master Interrogatories notwithstanding the expiration of that deadline.

7.    Each of the State Attorney General and Self-Funded Payer Plaintiff Tracks may serve an additional 15 Track-Specific Interrogatories no later than 30 days prior to the fact discovery deadline.

8.    Except as otherwise agreed, for any Track-Specific Interrogatories, Defendants shall serve written objections and responses in accordance with Fed. R. Civ. P. 33(b).

## III.    MASTER DISCOVERY IN THE CLASS TRACK

1.    The Defendants shall collectively serve one set of Master Discovery Requests upon the TPP Plaintiffs and Wholesaler Plaintiffs, respectively, in the Class Tracks. Master Discovery Requests are limited to common issues across all Class Tracks.

2.    Absent leave of Court, the Parties agree that Defendants may serve up to 30 Master Interrogatories.

3.     Plaintiffs in the Class Tracks shall have the right to serve an additional, non-duplicative, 15 Interrogatories addressing case-specific issues upon each Manufacturer Defendant and each PBM Defendant no later than 30 days prior to the fact discovery deadline. Except as otherwise agreed, for any Track-Specific Interrogatories, Defendants shall serve written objections and responses in accordance with Fed. R. Civ. P. 33(b).

4.     To the extent any disputes arise in connection with responses to the Track Specific discovery requests after the fact discovery deadline, the parties shall meet and confer and may seek relief regarding the Track Specific Interrogatories notwithstanding the expiration of that deadline.

## IV.    FACT SHEETS – SELF FUNDED PAYER TRACK

### A.    <u>Plaintiff Fact Sheets.</u>

1.     **Plaintiff Fact Sheet Deadlines.** Upon agreement by the parties or order of the Court establishing the form and substance of the Plaintiff Fact Sheet ("PFS"), each Self-Funded Payer Plaintiff shall complete and provide documents responsive to its respective PFS in phases, as follows:

a.     **First 25 Filed Cases by MDL Docket Numbers.** Plaintiffs in the first 25 filed actions (by docket numbers, as issued by the District of New Jersey as of the date of this Order) shall complete and provide documents responsive to the PFS within 45 days of the parties' agreement or order of the Court establishing the form and substance of the PFS.

b.     **Remaining MDL Docket Numbers.** Plaintiffs in the remaining actions entered on the MDL docket as of the date of this Order shall complete and provide documents responsive to the PFS within 75 days of the parties' agreement or order of the Court establishing the form and substance of the PFS.

      c.      **Plaintiffs in Subsequent Actions.** Plaintiffs in actions filed in or removed to this MDL after the date of this Order shall complete and provide documents responsive to the PFS within 60 days after the action is entered on this MDL docket.

      2.      **Responsibility of Individual Plaintiff's Counsel.** The obligation to comply with this Order and to provide a PFS shall fall solely to the individual counsel representing a Plaintiff. As with all case-specific discovery, Plaintiffs' Lead Counsel and the members of the Plaintiffs' Executive and Steering Committees are not obligated to conduct case-specific discovery for Plaintiffs by whom they have not been individually retained. In addition, Plaintiffs' Lead Counsel and the members of the Plaintiffs' Executive and Steering Committees have no obligation to notify counsel for Plaintiffs whom they do not represent of Defendants' notice of overdue or deficient discovery or to respond to any motion practice pertaining thereto.

      B.      <u>**Defendant Fact Sheets.**</u>

      1.      Upon agreement by the parties or order of the Court establishing the form and substance of Defendant Fact Sheets directed to the Pharmacy Benefit Manager Defendants ("PBM DFS") and Manufacturer Defendants ("Manufacturer DFS") by Self- Funded Payer Plaintiffs, Defendants shall complete and provide documents responsive to any applicable DFS in phases, as follows:

      a.      **Pharmacy Benefit Manager Defendants.** Within 30 days after a Plaintiff in a specific action has served its PFS, PBM Defendants shall complete and provide documents responsive to the PBM DFS with respect to such Plaintiff.

b.  **Manufacturer Defendants.** Within 30 days after a PBM has served a PBM DFS relating to a specific action, Manufacturer Defendants shall complete and provide documents responsive to the Manufacturer DFS with respect to such action.[2]

C.  **Substantial Completeness of PFS and DFS.**

1.  PFS and DFS submission must be substantially complete, which means a Party must: (a) answer all applicable questions (the parties may answer questions in good faith by indicating "Not applicable," or "Unknown"); (b) include a signed Certification; and (c) produce the requested documents to the extent such documents are in the Party's possession, custody, or control.

2.  The parties shall meet and confer regarding processes for (a) addressing the failure of any party to serve a completed PFS or DFS and (b) correcting any purported deficiencies identified in a PFS or DFS.

D.  **Objections Reserved to PFS and DFS.** All objections to the admissibility of information contained in the PFS and DFS are reserved; therefore, no objections shall be lodged in the responses to the questions and requests contained therein. This paragraph, however, does not prohibit a Party from withholding or redacting information based upon a recognized privilege. Documents withheld on the basis of privilege shall be logged in accordance with Fed. R. Civ. P. 26(b)(5)(a) or any agreed-upon protocol for privilege logging.

E.  **Confidentiality of Data.** Information any Party provides pursuant to a PFS or DFS is deemed Confidential under the terms of the Protective Order.

---

[2] The deadlines specified herein for completion of a PBM DFS or Manufacturer DFS shall apply notwithstanding any claimed deficiencies identified by another party in any PFS or DFS that gives rise to the obligation to submit the subsequent DFS.

**F.**    **Scope of Depositions and Admissibility of Evidence.** Nothing in the PFS or DFS shall be deemed to limit the scope of inquiry at depositions and admissibility of evidence at trial. The scope of inquiry at depositions shall remain governed by the Federal Rules of Civil Procedure, as well as any subsequent protocol that is entered in this action governing depositions. The Federal Rules of Evidence shall govern the admissibility of information contained in responses to the PFS and DFS, and no objections are waived by virtue of providing information in any PFS or DFS.

**V.    FACT SHEETS/MASTER DISCOVERY – STATE AG TRACK**

**A. Plaintiff Fact Sheets**

1.    Each State Attorney General Track Plaintiff currently in this MDL shall complete and provide documents responsive to its respective PFS within 45 days of the order of the Court establishing the form and substance of the PFS.

2.    Each State Attorney General Track Plaintiff in actions filed in or removed to this MDL after the date of this Order shall complete and provide documents responsive to the PFS within 60 days after the action is entered on this MDL docket.

3.    Apart from stipulated Plaintiff Fact Sheets, no other case-specific discovery may be served or undertaken by any party in the State Attorney General Track absent further Order of the Court. Each State Attorney General Track Plaintiff will produce documents/answer.

**VI.    CASE-SPECIFIC DISCOVERY FOR STATE AG AND SFP TRACKS**

**A.    Discovery Mechanism.** The parties agree that, at this time, no party shall serve any case-specific written discovery other than the DFS and PFS   or schedule any case-specific depositions. However, the parties anticipate that cases will be designated for further discovery pursuant to a future Court order, at which point further case-specific written discovery and case-specific depositions may occur.

**B.** **Conferral on Case-Specific Discovery.** Within 30 days of agreement by the parties or order of the Court establishing the form and substance of a PFS and/or DFS, the parties shall confer on the number of appropriate case-specific interrogatories, requests for production, and requests for admission in cases selected for further discovery, including as part of a discovery pool or for bellwether trial discovery.

**IT IS SO ORDERED.**

DATED:

_____
RUKHSANAH L. SINGH
United State Magistrate Judge

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE:  INSULIN PRICING LITIGATION** | **Case 2:23-md-03080**<br>**MDL No. 3080**<br><br>**JUDGE BRIAN R. MARTINOTTI**<br>**JUDGE RUKHSANAH L. SINGH** |

**THIS DOCUMENT RELATES TO:  ALL ACTIONS**

**CASE MANAGEMENT ORDER #___**

This Case Management Order, jointly proposed and agreed upon by the parties in accordance with Case Management Order #10 (Initial Discovery Plan) [ECF No. 198], sets forth the procedures and timeline for Discovery Requests, Plaintiff Fact Sheets, and other discovery at this stage in the above-captioned multidistrict litigation. Except as otherwise provided herein or in any other Case Management Order, discovery shall be governed by the applicable provisions of the Federal Rules of Civil Procedure. Unless specifically modified herein, nothing in this Order shall be construed to abrogate, modify, or enlarge the Federal Rules of Civil Procedure.  The parties may agree to adjustments to the limits or deadlines set forth below and may, absent agreement, seek relief from the Court for good cause shown regarding the limits or deadlines.

**I.    REQUESTS FOR PRODUCTION TO DEFENDANTS**

1.      Plaintiffs[1] may collectively serve up to 45 total Requests for Production pursuant to Fed. R. Civ. P. 34 ("RFPs") upon each Defendant. Plaintiffs need not serve the same set of RFPs on each Defendant.

---

[1] As used herein, "Plaintiffs" refers collectively to the Plaintiffs in the member actions in MDL No. 3080.

2.      Defendants shall serve written objections and responses within 45 days of being served.

3.      For RFPs served on or before October 1, 2024, Defendants shall substantially complete production by May 22, 2025.

4.      No RFPs shall be served later than 90 days before the close of fact discovery.

5.      If Plaintiffs seek leave to serve additional RFPs, they shall request such leave at least 120 days before the close of fact discovery.

## II.     INTERROGATORIES TO DEFENDANTS

1.      Plaintiffs may collectively serve up to 25 total Interrogatories on each PBM Defendant and up to 15 total Interrogatories on each Manufacturer Defendant pursuant to Fed. R. Civ. P. 33 ("Interrogatories"). Plaintiffs need not serve the same set of Interrogatories on each Defendant.

2.      Defendants shall serve written objections and responses to Plaintiffs' Interrogatories within 60 days of service.

3.      No Interrogatories shall be served later than 60 days prior to the close of fact discovery.

4.      If Plaintiffs seek leave to serve additional interrogatories, they shall request such leave at least 90 days before the close of fact discovery.

## III.    SELF-FUNDED PAYER TRACK DISCOVERY

A.      **PFS Implementation Order.** Within 14 court days of an agreement by the parties or order of the Court establishing the form and substance of the Plaintiff Fact Sheet ("PFS") for the Self-Funded Payer Track, the Parties will meet and confer and submit to the Court a proposed PFS Implementation Order.  The PFS Implementation Order shall include, at a minimum, (a) a

definition of substantial completion; (b) a procedure for verification; (c) a procedure for amendments; (d) deadlines for submission; (e) a process for transmission to defendants; (f) a deficiency dispute resolution process; (g) guidelines for confidentiality; and (h) guidelines for the admissibility of PFS responses.

      **B.**    **Discovery Mechanism.** The parties agree that, at this time, no party shall serve any written discovery on Self-Funded Payer Plaintiffs other than the PFS or schedule any depositions of Self-Funded Payer Plaintiffs. However, the parties anticipate that cases will require further discovery pursuant to a future Court order, at which point further discovery and depositions will occur. Within 30 days of agreement by the parties or order of the Court establishing the form and substance of a PFS, the parties shall confer on the number of appropriate interrogatories, requests for production, and requests for admission in the cases.

## IV.    STATE ATTORNEY GENERAL TRACK AND CLASS TRACK DISCOVERY

      **A.**    **Requests for Production to State AG Track and Class Track Plaintiffs.**

        1.    Defendants may collectively serve up to 45 RFPs upon each Plaintiff in the State AG and Class Tracks of Plaintiffs. Defendants need not serve the same set of RFPs on each Plaintiff in the State AG Track and Class Track. Each Defendant and/or Defendant group may serve distinct RFP requests, but the limit of 45 RFPs applies collectively.

        2.    State AG Track and Class Track Plaintiffs shall serve written objections and responses to Defendants' RFPs within 45 days after being served.

        3.    For RFPs served on or before October 1, 2024, State AG Track and Class Track Plaintiffs shall substantially complete production by May 22, 2025.

4. No RFPs shall be served later than 90 days before the close of fact discovery.

5. If Defendants seek leave to serve additional RFPs, they shall request such leave at least 120 days before the close of fact discovery.

**B.      Interrogatories to State AG Track and Class Track Plaintiffs.**

1. Defendants may serve up to 40 total Interrogatories on each Plaintiff in the State AG Track and Class Track. Defendants need not serve the same set of Interrogatories on each Plaintiff in the State AG Track and Class Track. Each Defendant and/or Defendant group may serve distinct interrogatories, but the limit of 40 interrogatories applies collectively.

2. State AG Track and Class Track Plaintiffs shall serve written objections and responses to Defendants' Interrogatories within 60 days of service.

3. No Interrogatories shall be served later than 60 days prior to the close of fact discovery.

4. If Defendants seek leave to serve additional interrogatories, they shall request such leave at least 90 days before the close of fact discovery.

**IT IS SO ORDERED.**

DATED:

_____
RUKHSANAH L. SINGH
United State Magistrate Judge

# EXHIBIT 3

DRAFT
CONFIDENTIAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case No. 2:23-md-03080 (BRM)(RLS)
MDL No. 3080**
|
| This document relates to:

Self-Funded Payer Track | **JUDGE BRIAN R. MARTINOTTI
JUDGE RUKHSANAH L. SINGH** |

## SELF-FUNDED PAYER PLAINTIFF FACT SHEET

Please provide the following information for each plaintiff that is part of the Self-Funded Payer Track that has filed a complaint in *In Re: Insulin Pricing Litigation*, MDL No. 3080. In completing this Plaintiff Fact Sheet ("PFS"), You are under oath and must provide information that is true and correct to the best of Your knowledge, information, and belief. The scope of the questions herein and responses thereto will be limited to information and/or documents within the possession, custody, or control of those Plaintiffs. However, to the extent any of the information requested is in the possession of one or more of the Defendants and is not currently in Your possession, Plaintiffs agree to request such information from Defendants and Defendants agree to fully cooperate in providing information requested in these requests to the extent the information requested is in the possession of one or more of the Defendants.

Do not leave any questions unanswered or blank.  If You are filling out this PFS in hard copy, use additional sheets as needed to fully respond.

This PFS constitutes discovery responses subject to the Federal Rules of Civil Procedure. You must promptly supplement Your responses if You learn that they are incomplete or inaccurate in any respect.  Each question in this PFS is continuing in nature and requires supplemental answers as You obtain further information between completing this PFS and trial.  Information provided will only be used for purposes related to this litigation and may be disclosed only as permitted by the Stipulated Confidentiality Order entered in this MDL proceeding.  (*See* Dkt. 117.)

To the extent any question can be answered through the production of documents, consistent with Federal Rule of Civil Procedure 33(d), Plaintiff may produce such documents and indicate in the response which documents are being produced to satisfy the question and specify the applicable bates ranges for the specific responsive documents.

## INSTRUCTIONS

1.      None of the questions in this PFS seek privileged information.  To the extent You believe that any form of privilege prevents You from fully answering a question, state Your basis for withholding an answer or part of an answer on the grounds of privilege and which privilege

**DRAFT**
**CONFIDENTIAL**

You believe applies.  If you assert that part of a question is objectionable or calls for privileged information, respond to the remaining parts of the question to which you do not object.

2.      The words "and," "or," and "including" should be construed as necessary to bring within the scope of the request all responses and information that might otherwise be construed out of its scope. "Including" shall mean "including but not limited to."

3.      All definitions provided herein are limited to the use of the terms in these Requests.

## DEFINITIONS

1.      "Administrative Fees" means any fee paid by a manufacturer to a PBM in exchange for any administrative service the PBM performs.

2.      "At-Issue Products" means the insulin products and any other pharmaceuticals identified in Your operative complaint.

3.      "Health Plan" means all health plans offered by, administered by, or sponsored by You during the Period that the Health Plan offered or included Prescription Drug Coverage.

4.      "PBM" means pharmacy benefit manager.

5.      "Prescription Drug Coverage" means any form of health insurance, health coverage, prescription drug plan, or any other health plan that helps enrollees pay for prescribed pharmaceutical drugs.

6.      "Rebates" means any rebate, payment, discount, or other price concession made or paid by a manufacturer to a PBM.

7.      "Time Period" means January 1, 2011 to January 1, 2023.

8.      "WAC" means wholesale acquisition cost.

9.      "You" or "Your" means the Plaintiff named in this Action, any agents, representatives, or any other entities acting on Plaintiff's behalf, and any other entities on whose behalf Plaintiff brings this Action.

## QUESTIONS

## I.      CASE INFORMATION

1.      Plaintiff: _____

2.      Case name and caption number: _____

3.      Name, firm, and e-mail of principal attorney(s) representing You: _____

4.      Defendants: _____

**DRAFT
CONFIDENTIAL**

## II.   **BENEFICIARIES**

5.   In the table below, provide the total number of individuals enrolled in Your Health Plan, including primary and dependent beneficiaries, for each year of the Time Period:

| Year | Number of Beneficiaries |
|:---:|:---:|
| 2011 | |
| 2012 | |
| 2013 | |
| 2014 | |
| 2015 | |
| 2016 | |
| 2017 | |
| 2018 | |
| 2019 | |
| 2020 | |
| 2021 | |
| 2022 | |

6.   Provide the total number of individuals who used Your Health Plan to purchase or use At-Issue Products during each year of the Time Period.

DRAFT
CONFIDENTIAL

| Year | Number of Purchasers of At-Issue Products |
|:---:|:---:|
| 2011 | |
| 2012 | |
| 2013 | |
| 2014 | |
| 2015 | |
| 2016 | |
| 2017 | |
| 2018 | |
| 2019 | |
| 2020 | |
| 2021 | |
| 2022 | |

### III.   PERSONS OR ENTITIES WITH RELEVANT KNOWLEDGE

7.    In the form of the table below, identify the name, title, and dates of employment of Your current and former employees, representatives, or agents who had any responsibility over the design or administration of Your Health Plan or Prescription Drug Coverage during the Time Period.

| Name | Title | Dates of Employment or Contract |
|:---:|:---:|:---:|
| | | |

8.    To the extent not included in response to No. 7 above, in the form of the table below, identify by name, title, and dates of employment Your current and former employees or representatives with discoverable knowledge regarding the allegations in Your Complaint.

| Name | Title | Dates of Employment or Contract |
|:---:|:---:|:---:|
| | | |

4

**DRAFT**
**CONFIDENTIAL**

9.      In the table below, identify by name any department, agency, investigative unit, entity, or other program with responsibility over functions related to the allegations in Your Complaint.  Summarize each of those entities' area of responsibility:

| Entity Name | Area of Responsibility |
|---|---|
|  |  |

## IV.    AT-ISSUE PRODUCTS

10.     Identify every insulin or other pharmaceutical that You allege is relevant to any claim for damages or other relief You seek in this case (the "At-Issue Products")[1]:

_____

_____

11.     In the form of the table below or through the production of documents, for each At-Issue Product, provide the total amount of money that You spent on the At-Issue Product for members enrolled in Your Health Plan for each year during the Time Period:

| At-Issue Product | Year | Total Number of Scripts | Total Spent by You |
|---|---|---|---|
|  |  |  |  |

## V.     YOUR HEALTH PLANS

12.     In the table below, for each Health Plan that You offered that included Prescription Drug Coverage during the Time Period, identify the plan identification number, name, or other plan identifier and the starting and ending dates for each plan year during the Time Period:

| Health Plan Identifier | Start Date | End Date |
|---|---|---|
|  |  |  |

13.     In the table below, list all PBMs or other entities with whom You have contracted for every Health Plan identified in response to Question No. 12 and for each plan year during the Time Period, identify the PBM or other entity that administered the Prescription Drug Coverage:

---

[1]      In seeking this information, Defendants do not concede that any pharmaceuticals identified by You are relevant.

DRAFT
CONFIDENTIAL

| Health Plan Identifier | Plan Year | PBM or Other Entity |
|---|---|---|
|  |  |  |

14.     Identify all insurers or third-party administrators with whom You have contracted relating to the Health Plans identified in response to Question No. 12:

_____

## VI.   REBATES AND FEES

15.     In the table below, identify each contract You have or had with a PBM during the Time Period, including the party with which You contracted, and the year.  Include in Your answer any addendums or other agreements You entered pursuant to an existing master agreement. If a contract was entered into before the Time Period began but did not expire until after the Time Period began, identify that contract as well:

| Contract | Contracting Entity | Year(s) |
|---|---|---|
|  |  |  |

16.     Identify any advisors, contractors, brokers, or consultants You used to solicit, select, or develop Your health plan or health benefit coverage options including the time period they were used.

_____

17.     Are Your Health Plan expenditures related to pharmaceuticals audited, either internally or by an external auditor? _____ Yes _____ No

**If yes,** for each audit during the Time Period, state what entity or entities were responsible for                                                                                                      the audit:_____

18.     Identify any advisors, contractors, brokers, or consultants You used in connection with soliciting or selecting PBMs including the time period they were used.

_____

## VII.   TIMING OF AWARENESS

_____

DRAFT
CONFIDENTIAL

19.     Identify the earliest date on which You began investigating the pricing of Defendants' At-Issue Products for the purpose of bringing the present action: _____

_____

20.     Identify when You first learned or discovered that Defendants' statements about the prices for the At-Issue Products were allegedly artificially inflated, false, fraudulent, misleading, or deceptive:

_____

21.     Describe how You learned or discovered that Defendants' statements about the prices for the At-Issue Products were allegedly artificially inflated, false, fraudulent, misleading, or deceptive:

_____

22.     Identify the earliest date on which You learned of or discovered any other lawsuit filed against any Defendant related to insulin pricing, including *In re Insulin Pricing* (D.N.J., 2:17-cv-00699), *MSP LLC* (D.N.J., 2:18-cv-02211), *Minnesota* (D.N.J., 2:18-cv-14999), *In re Direct Purchaser* (D.N.J., 3:20-cv-03426):_____

23.     Describe how You learned of or discovered any other lawsuit filed against any Defendant related to insulin pricing: _____

_____

## VIII.   SELECTION OF PRESCRIPTION DRUG COVERAGE

24.     In the table below, identify any third-party services, advisors, consultants, or contractors used by You to provide consulting, research, analysis, accounting, financial advice, or other advice related to Your Health Plan or Prescription Drug Coverage for At-Issue Products during the Time Period, the approximate dates You used the third-party services, advisors, consultants, or contractors, a description of the services that entity provided You, and the principal point of contact at the entity who is or was responsible for overseeing performance of the contract:

| Third-Party Advisor (Advisor Name and Employer) | Approximate Dates | Description of Services | Point of Contact |
|---|---|---|---|
|  |  |  |  |

25.     For each advisor, consultant, or contractor You identified in Question No. 24, in the table below, identify whether You received any presentations, reports, analyses, or memoranda related to Health Plan or Prescription Drug Coverage benefit design for At-Issue Products:

**DRAFT**
**CONFIDENTIAL**

| Third-Party Advisor | Received Presentations, Reports, Analyses, Memoranda (Yes/No) |
|---|---|
|  |  |

26.   Did You or anyone acting on Your behalf conduct a request for proposal ("RFP") or similar process to solicit offers from or to otherwise identify PBMs to administer Prescription Drug Coverage? _____ Yes _____ No

**If yes,** in the table below, identify each RFP or other solicitation You made during the Time Period, any third-party advisor that assisted with the RFP or solicitation, the PBMs You sent the RFP or solicitation to and produce the RFP responses:

| RFP or Solicitation | Third-Party Advisor | Date | PBMs Solicited |
|---|---|---|---|
|  |  |  |  |

27.   Did You or anyone acting on Your behalf conduct or participate in an audit or study, related to any services provided by the entities identified in Question No. 24. _____ Yes _____ No

**If yes,** in the table below, identify each audit or study:

| Audit or Study | Person or Entity conducting the Audit/Study | Date |
|---|---|---|
|  |  |  |

## IX.   **MEMBERSHIP IN OTHER ENTITIES**

28.   In the table below, identify any organizations that You are a part of that share information regarding at-issue insulin, pharmaceutical pricing, Rebates, PBM or drug pricing reform or legislation, including, but not limited to, the National Association of Counties, MMCAP, or any other group purchasing organization, and identify any of Your employees who are involved in that organization:

| Organization | Dates of Membership | Your Involved Employees |
|---|---|---|
|  |  |  |

29.   In the table below, identify any task forces, studies, working groups, initiatives, legislative bodies, or investigative bodies You have been involved in related to at-issue insulins, pharmaceutical pricing, rebates, or PBM/drug pricing reform or legislation:

**DRAFT**
**CONFIDENTIAL**

| Entity | Dates of Involvement |
|---|---|
|  |  |

## X.    <u>DAMAGES</u>

30.    Are You seeking any monetary damages? _____ Yes _____ No

**If yes**, summarize the categories of damages or monetary relief that You allege.

**DRAFT**
**CONFIDENTIAL**

## INITIAL DOCUMENT REQUESTS

Please produce the following documents for the Time Period:

1.      Each RFP seeking PBM services, including all amendments, riders, schedules, supplements, instructions, or other addenda that You issued during the Time Period.

2.      Each contract, including amendments, riders, schedules, supplements, or other addenda that You entered into with a PBM that otherwise was in effect during the Time Period.

3.      Documents sufficient to identify the formularies in place for You during the Time Period.

4.      Data sufficient to show Your total expenditures on the At-Issue Products each year of the Time Period.

5.      Documents received by You that related to representations made by PBMs about their services or made by pharmaceutical manufacturers about their list prices.

6.      Contracts with third-party advisors in effect during the Time Period that relate to prescription drug benefits, as well as any presentations, reports, analyses, or memoranda relating to prescription drug benefits Plaintiffs chose or did not choose.

**DRAFT**
**CONFIDENTIAL**

## <u>CERTIFICATION</u>

I declare under penalty of perjury that all of the information provided in this PFS is complete, true, and correct to the best of my knowledge and information, and that I have provided all of the requested documents that are reasonably accessible to me and/or my attorneys, to the best of my knowledge.

_____            _____
Signature                                               Date

_____            _____
Name (Printed)                                      Title

11

# EXHIBIT  4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case No. 2:23-md-03080 (BRM)(RLS)** <br> **MDL No. 3080** |
| This document relates to: <br><br> Self-Funded Payer Track | **JUDGE BRIAN R. MARTINOTTI** <br> **JUDGE RUKHSANAH L. SINGH** |

## SELF-FUNDED PAYER PLAINTIFF FACT SHEET

Please provide the following information for each plaintiff that is part of the Self-Funded Payer Track that has filed a complaint in *In Re: Insulin Pricing Litigation*, MDL No. 3080. In completing this Plaintiff Fact Sheet ("PFS"), You are under oath and must provide information that is true and correct to the best of Your knowledge, information, and belief. The scope of the questions herein and responses thereto will be limited to information and/or documents within each plaintiff's possession, custody, or control. To the extent a plaintiff lacks information or documents in its possession, custody, or control in response to the questions or documents requests below, it shall expressly state it lacks such information in its response.

Do not leave any questions unanswered or blank. If You are filling out this PFS in hard copy, use additional sheets as needed to fully respond.

This PFS constitutes discovery responses subject to the Federal Rules of Civil Procedure. You must promptly supplement Your responses if You learn that they are incomplete or inaccurate in any respect. Each question in this PFS is continuing in nature and requires supplemental answers as You obtain further information between completing this PFS and trial. Information provided will only be used for purposes related to this litigation and may be disclosed only as permitted by the Stipulated Confidentiality Order entered in this MDL proceeding. (*See* Dkt. 117.)

## INSTRUCTIONS

1.      None of the questions in this PFS seek privileged information. To the extent You believe that any form of privilege prevents You from fully answering a question, state Your basis for withholding an answer or part of an answer on the grounds of privilege and which privilege You believe applies. If you assert that part of a question is objectionable or calls for privileged information, respond to the remaining parts of the question to which you do not object.

2.      The words "and," "or," and "including" should be construed as necessary to bring within the scope of the request all responses and information that might otherwise be construed out of its scope. "Including" shall mean "including but not limited to."

3.      All definitions provided herein are limited to the use of the terms in these Requests.

## DEFINITIONS

1.      "Administrative Fees" means any fee paid by a manufacturer to a PBM in exchange for any administrative service the PBM performs.

2.      "At-Issue Products" means the insulin products and any other pharmaceuticals that you identify in response to Question No. 10.

3.      "Health Plan" means all health plans offered by, administered by, or sponsored by You during the Period that the Health Plan offered or included Prescription Drug Coverage.

4.       "Out-of-Pocket Maximum" means the maximum amount of allowable costs or expenses that a person with any form of health insurance, health coverage, prescription drug plan, or any other health plan that helps enrollees pay for prescribed pharmaceuticals can incur during a given year through their health insurance.

5.      "PBM" means pharmacy benefit manager.

6.      "Prescription Drug Coverage" means any form of health insurance, health coverage, prescription drug plan, or any other health plan that helps enrollees pay for prescribed pharmaceutical drugs.

7.      "Rebates" means any rebate, payment, discount, or other price concession made or paid by a manufacturer to a PBM.

8.      "Time Period" means January 1, 2011 to January 1, 2023.

9.      "WAC" means wholesale acquisition cost.

10.     "You" or "Your" means the Plaintiff named in this Action and any other persons or entities on whose behalf the Plaintiff brings this action, including any official, department, agency, investigative unit, entity, or program.

## QUESTIONS

## I.      CASE INFORMATION

1.      Plaintiff: _____

2.      Case name and caption number: _____

3.      Name, firm, and e-mail of principal attorney(s) representing You: _____

4.      Defendants: _____

## II.   __BENEFICIARIES__

5.     In the table below, provide the total number of individuals enrolled in Your Health Plan, including primary and dependent beneficiaries, for each year of the Time Period:

| Year | Number of Beneficiaries |
|------|-------------------------|
| 2011 | |
| 2012 | |
| 2013 | |
| 2014 | |
| 2015 | |
| 2016 | |
| 2017 | |
| 2018 | |
| 2019 | |
| 2020 | |
| 2021 | |
| 2022 | |

6.     Provide the total number of individuals who used Your Health Plan to purchase or use At-Issue Products during each year of the Time Period.


## III.   __PERSONS OR ENTITIES WITH RELEVANT KNOWLEDGE__

7.     In the form of the table below, identify the name, title, and dates of employment of Your current and former employees, representatives, or agents who had any responsibility over the design or administration of Your Health Plan or Prescription Drug Coverage during the Time Period., including responsibility over the decision to enter into agreements governing Prescription Drug Coverage, Rebates, Your Health Plan, and formularies.

| Name | Title | Dates of Employment or Contract | Area(s) of Responsibility |
|------|-------|--------------------------------|---------------------------|
| | | | |

8.     To the extent not included in response to Question No. 7 above, in the form of the table below, identify by name, title, and dates of employment Your current and former employees or representatives with knowledge regarding the allegations in Your Complaint.

| Name | Title | Dates of Employment | Area(s) of Responsibility |
|------|-------|---------------------|---------------------------|
|      |       |                     |                           |

9.    In the form of the table below, identify by name any department, agency, investigative unit, entity, or other program with responsibility over functions related to the allegations in Your Complaint.  Summarize each of those entities' area of responsibility:

| Entity Name | Area of Responsibility |
|-------------|------------------------|
|             |                        |

## IV.    AT-ISSUE PRODUCTS

10.    Identify every insulin or other pharmaceutical that You allege is relevant to any claim for damages or other relief You seek in this case (the "At-Issue Products")[1]:

_____

_____

11.    In the form of the table below or through the production of documents, for each At-Issue Product, provide the total amount of money that You spent on the At-Issue Product for members enrolled in Your Health Plan for each year during the Time Period, the total Rebates received by You, and the total amount of Your members' out-of-pocket responsibility:

| At-Issue Product | Year | Total Number of Scripts | Total Spent by You | Total Rebates Received | Your Member's Out-of-Pocket Responsibility |
|------------------|------|-------------------------|--------------------|------------------------|--------------------------------------------|
|                  |      |                         |                    |                        |                                            |

## V.    YOUR HEALTH PLANS

12.    In the form of the table below, for each Health Plan that You offered that included Prescription Drug Coverage during the Time Period, identify the plan identification number, name, or other plan identifier and the starting and ending dates for each plan year during the Time Period:

_____

[1]    In seeking this information, Defendants do not concede that any pharmaceuticals identified by You are relevant.

| Health Plan Identifier | Start Date | End Date |
|---|---|---|
| | | |

13.     In the table below, for every Health Plan identified in response to Question No. 12 and for each plan year during the Time Period, identify (1) the annual deductible(s), including separate deductible amounts or requirements for use of in-network versus out-of-network pharmacies, and any separate deductible amounts or requirements on individual versus family expenditures, (2) the copayment or coinsurance rate for each pharmaceutical tier, (3) the annual Out-of-Pocket Maximums, including if there are different maximums based on in-network versus out-of-network pharmacy use, and/or based on family versus individual expenditures and whether Out-of-Pocket Maximums were based on pharmaceutical expenditures alone, or on combined pharmaceutical and medical expenditures, and (4) whether the Health Plan had first-dollar coverage for any At-Issue Product, in which the insured does not need to satisfy a deductible before the insurer assumes payment:

| Health Plan Identifier | Plan Year | Deductible | Coinsurance | Copayment | OOP Maximum | First-Dollar Coverage |
|---|---|---|---|---|---|---|
| | | | | | | |

14.     In the form of the table below, list all PBMs or other entities with whom You have contracted for every Health Plan identified in response to Question No. 12 and for each plan year during the Time Period, identify which formulary that Health Plan offered for Prescription Drug Coverage and the PBM or other entity that administered the Prescription Drug Coverage:

| Health Plan Identifier | Plan Year | Formulary | PBM or Other Entity |
|---|---|---|---|
| | | | |

15.     In the form of the table below, for every Health Plan identified in response to Question No. 12 and for each plan year during the Time Period, identify whether each pharmaceutical was included or excluded on any formulary You used during the Time Period. If a pharmaceutical was included on a formulary, identify the relevant PBM (if any), the pharmaceutical's formulary tier or status, whether the pharmaceutical was the lowest branded copay on the formulary, and the years that the pharmaceutical was included on the formulary:

| Health Plan Identifier | Plan Year | Pharmaceutical | Included / Excluded | Tier / Status and Description | Lowest Branded Copay (Y/N) | Years on Formulary |
|---|---|---|---|---|---|---|
| | | Humulin N | | | | |

| Health Plan Identifier | Plan Year | Pharmaceutical | Included / Excluded | Tier / Status and Description | Lowest Branded Copay (Y/N) | Years on Formulary |
|---|---|---|---|---|---|---|
| | | Humulin R | | | | |
| | | Humulin R 500 | | | | |
| | | Humulin 70/30 | | | | |
| | | Humalog | | | | |
| | | Humalog 50/50 | | | | |
| | | Humalog 72/25 | | | | |
| | | Insulin Lispro | | | | |
| | | Basaglar | | | | |
| | | Rezvoglar | | | | |
| | | Trulicity | | | | |
| | | Lantus | | | | |
| | | Toujeo | | | | |
| | | Apidra | | | | |
| | | Soliqua | | | | |
| | | Admelog | | | | |
| | | Novolin R | | | | |
| | | Novolin N | | | | |
| | | Novolin 70/30 | | | | |
| | | Novolog | | | | |
| | | Novolog 70/30 | | | | |
| | | Insulin Aspart | | | | |
| | | Levemir | | | | |
| | | Tresiba | | | | |
| | | Insulin Degludec | | | | |
| | | Victoza | | | | |
| | | Ozempic | | | | |
| | | Semglee | | | | |
| | | Mounjaro | | | | |

| Health Plan Identifier | Plan Year | Pharmaceutical | Included / Excluded | Tier / Status and Description | Lowest Branded Copay (Y/N) | Years on Formulary |
|---|---|---|---|---|---|---|
| | | Xultophy | | | | |
| | | Rybelsus | | | | |
| | | Adlyxin | | | | |

16.    Identify all insurers or third-party administrators with whom You have contracted relating to the Health Plans identified in response to Question No. 12:

_____

17.    Did any Health Plan identified in response to Question No. 12 have benefit design features specifically pertaining to patients with diabetes or pre-diabetes? ___Yes ___ No

## VI.    **REBATES AND FEES**

18.    In the form of the table below, identify each contract You have or had with a PBM during the Time Period, including the party with which You contracted, and the year.  Include in Your answer any addendums or other agreements You entered pursuant to an existing master agreement. If a contract was entered into before the Time Period began but did not expire until after the Time Period began, identify that contract as well:

| Contract | Contracting Entity | Year(s) |
|---|---|---|
| | | |

19.    In any contract identified in response to Question No. 18, did the PBM agree to share or pass through Rebates to You?  _____ Yes _____ No

**If yes**, in the form of the table below, identify each such contract, the percentage of or other determinant of the Rebates the PBM agreed to pass through to You, and the specific provision in the contract governing the pass through of such rebates:

| Contract | Percentage of Rebates | Contract Provision |
|---|---|---|
| | | |

20.    In any contract identified in response to Question No. 18, did the PBM agree to pass Administrative Fees through to You?  _____ Yes _____ No

**If yes**, in the form of the table below, identify each such contract, the contracting entity, the year, the percentage of Administrative Fees the PBM agreed to pass through to You, and the specific provision in the contract governing the pass through of such fees:

| Contract | Percentage of Administrative Fees | Contract Provision |
|---|---|---|
|  |  |  |

21.     In any contract identified in response to Question No. 18, did the PBM offer a guaranteed minimum payment to You, including any Rebate guarantee? ___Yes ___No

**If yes**, in the form of the table below, identify each such contract, the guaranteed minimum payment, and the specific provision in the contract governing the guaranteed minimum payment:

| Contract | Guaranteed Minimum Payment | Contract Provisions |
|---|---|---|
|  |  |  |

22.     Have You ever used preventative drug lists, critical drug affordability programs, or any other program to lower the out-of-pocket costs of the At-Issue Products for Your members? _____ Yes _____ No

**If yes**, in the form of the table below, identify each such Health Plan where You implemented such a program, the program, the year the program was implemented, and the applicable At-Issue Products:

| Health Plan | Program | Year | At-Issue Product |
|---|---|---|---|
|  |  |  |  |

23.     Have You ever passed Rebates received from a PBM through to Your members at the point of sale for any of the At-Issue Products? _____ Yes _____ No

**If yes,** in the form of the table below, identify each such Health Plan where You passed on Rebates, the years You passed on Rebates, the At-Issue Products for which You passed on Rebates, and the percentage of Rebates that You passed on to members at the point of sale:

| Health Plan | Year Passed on Rebate | At-Issue Product | Percentage of Rebate Passed on |
|---|---|---|---|
| | | | |

24. Other than passing Rebates through to Your members at the point of sale, describe the ways in which You use Rebates and Administrative Fees received from PBMs for At-Issue Products:

_____

25. In any contract identified in response to Question No. 18, did any other PBM or any other contracting entity submit bids/proposals? _____ Yes _____ No

   **If yes**, identify any entity submitting competing bids/proposals, and produce the competing bids.

_____

26. During the relevant time period, did you contract with, or use master contracts from, any other entities (e.g. MMCAP) for rebates or other price concessions related to purchasing pharmaceutical products?               _____ Yes _____ No

   **If yes**, in the form of the table below, identify each such contract, the contracting entity, the year, and the percentage of or other determinant of the Rebates the contracting entity agreed to pass through to You:

| Contract | Contracting Entity | Year | Percentage of Rebates |
|---|---|---|---|
| | | | |

## VII.   **MISREPRESENTATIONS AND OMISSIONS**

27. In the form of the table below, identify every specific misrepresentation that a Defendant allegedly made that forms the basis of the allegations in Your lawsuit, including the approximate date, the source, who received the statement, the reason why You believe the statement was false, whether or not You relied on the statement, and if so, how, and the Defendant(s) that made the statement:

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if any) | Defendant(s) |
|---|---|---|---|---|---|---|
| | | | | | | |

28.     In the form of the table below, describe any omissions that a Defendant allegedly made that forms the basis of the allegations in Your lawsuit, including the approximate date, any statement to which the omission relates, the reason why You believe a Defendant should have disclosed the omission, and the Defendant(s) that made the omission:

| Omission | Approximate Date | Related Statement | Basis for Disclosure | Defendant(s) |
|----------|------------------|-------------------|----------------------|--------------|
|          |                  |                   |                      |              |

## VIII.   TIMING OF AWARENESS

29.     Identify when and how You first learned or discovered that the WACs for the At-Issue Products were allegedly artificially inflated, false, fraudulent, misleading, or deceptive:

_____

30.     Identify when and how You first learned or discovered that pharmaceutical manufacturers pay Rebates to PBMs for the At-Issue Products: _____

_____

31.     Identify the earliest date on which You began investigating the pricing of Defendants' At-Issue Products for the purpose of bringing the present action: _____

_____

32.     Identify when and how You first learned or discovered that Defendants' statements about the prices for the At-Issue Products were allegedly false, fraudulent, misleading, or deceptive:

_____

33.     Identify when and how You learned of or discovered any other lawsuit filed against any Defendant related to insulin pricing, including *In re Insulin Pricing* (D.N.J., 2:17-cv-00699), *MSP LLC* (D.N.J., 2:18-cv-02211), *Minnesota* (D.N.J., 2:18-cv-14999), and *In re Direct Purchaser* (D.N.J., 3:20-cv-03426):

_____

34.     Identify when and how You learned of or discovered any state, or federal investigation related to insulin pricing: _____

_____

IX. **SELECTION OF PRESCRIPTION DRUG COVERAGE**

35.     In the form of the table below, identify any third-party services, advisors, consultants, or contractors used by You to provide consulting, research, analysis, accounting, financial advice, solicitation, selection, development, or other advice related to Your Health Plan, selecting or soliciting PBM services, or Prescription Drug Coverage for At-Issue Products during the Time Period, the approximate dates You used the third-party services, advisors, consultants, or contractors, a description of the services that entity provided You, and the principal point of contact at the entity who is or was responsible for overseeing performance of the contract:

| Third-Party Advisor (Advisor Name and Employer) | Approximate Dates | Description of Services | Point of Contact |
|---|---|---|---|
|  |  |  |  |

36.     For each third-party service, advisor, consultant, or contractor You identified in Question No. 35, in the form of the table below or through the production of documents, identify whether You received any presentations, reports, analyses, or memoranda You received related to Health Plan or Prescription Drug Coverage benefit design for At-Issue Products, and produce those materials:

| Third-Party Advisor | Received Presentations, Reports, Analyses, Memoranda |
|---|---|
|  |  |

37.     Did You or anyone acting on Your behalf conduct a request for proposal ("RFP") or similar process to solicit offers from or to otherwise identify PBMs to administer Prescription Drug Coverage? _____ Yes _____ No

**If yes,** in the form of the table below, identify each RFP or other solicitation You made during the Time Period, any third-party advisor that assisted with the RFP or solicitation, the PBMs You sent the RFP or solicitation to and produce the RFP responses:

| RFP or Solicitation | Third-Party Advisor | Date | PBMs Solicited |
|---|---|---|---|
|  |  |  |  |

38.     Are Your Health Plan expenditures related to pharmaceuticals audited, either internally or by an external auditor? _____ Yes _____ No

**If yes,** in the form of the table below, identify each audit and produce the audit:

| Audit | Person or Entity conducting the Audit | Date | Purpose of the audit |
|---|---|---|---|
|  |  |  |  |

## X.    **MEMBERSHIP IN OTHER ENTITIES**

39.    In the form of the table below, identify any organizations that You are a part of that share information regarding, or that relate in any way to, the healthcare industry, at-issue insulins, pharmaceutical pricing, Rebates, PBM or drug pricing reform or legislation, including, but not limited to, the National Association of Counties, MMCAP, or any other group purchasing organization, and identify any of Your employees who are involved in that organization:

| Organization | Dates of Membership | Your Involved Employees |
|---|---|---|
|  |  |  |

## XI.    **DIRECT PURCHASING**

40.    Have You purchased At-Issue Products directly from pharmaceutical manufacturers, wholesalers, mail order pharmacies, and/or retail sellers? _____ Yes _____ No

**If yes**, in the table below, identify each At-Issue Product You allege You purchased directly, the specific years You made the direct purchase, the entity that directly distributed the At-Issue Product(s) to You, the total quantity of At-Issue Products You purchased, and the total amount You paid:

| At-Issue Product | Year | Direct Seller | Total Quantity | Total Amount Paid |
|---|---|---|---|---|
|  |  |  |  |  |

## XII.    **DAMAGES**

41.    For each Defendant identified in Question No. 4, state how You claim You have been damaged by that Defendant's alleged conduct. This request is not designed to require an expert evaluation.

| Defendant | Basis |
|---|---|
|  |  |

42.     For each Defendant identified in Question No. 4, identify to the best of Your knowledge the date when You allege that You were first injured as a result of that particular Defendant's alleged conduct. This request is not designed to require an expert evaluation.

| Defendant | Date |
|---|---|
|  |  |

43.     Are You seeking any monetary damages? _____ Yes _____ No

**If yes,** in the form of the table below, identify each category of damages or monetary relief that You allege, a dollar amount for the award You seek for each category of damages or monetary relief, and an explanation as to how You calculated that amount of damages:

| Category of Monetary Damages | Dollar Amount | Explanation of Calculation |
|---|---|---|
|  |  |  |

## <u>INITIAL DOCUMENT REQUESTS</u>

Please produce the following documents for the Time Period:

1.      Each RFP seeking PBM services, including all amendments, riders, schedules, supplements, instructions, or other addenda that You issued during the Time Period.

2.      Documents, including internal summaries, analyses, and presentations, reflecting Your reasons for selecting or not selecting a PBM prescription drug benefit plan for each year, including bids, communications, RFPs, procurement rules, guidance documents, and related documents, and documents relating to negotiation for Rebates for Your employee plan(s) or for Medicaid.

3.      Each contract, including drafts, amendments, riders, schedules, supplements, or other addenda that You entered into with a PBM, health insurer, third-party administrator, or any other entity through which you obtained price concessions during the Time Period (e.g. MMCAP), or that otherwise was in effect during the Time Period.

4.      Documents sufficient to identify the formularies for Your Health Plans during the Time Period.

5.      For each benefit year for which you are seeking relief, documents relating to your Health Plans, including documents sufficient to show: (1) the annual deductible(s), including separate deductible amounts or requirements for use of in-network versus out-of-network pharmacies, and any separate deductible amounts or requirements on individual versus family expenditures, (2) the copayment or coinsurance rate for each pharmaceutical tier, (3) the annual Out-of-Pocket Maximums, (4) the summary plan description, and (5) summaries of benefits and coverage associated with each of your Health Plans during the time period.

6.      Documents related to other insulin pricing lawsuits or investigations, the relationship between WACs and Rebates, the fact that pharmaceutical manufacturers pay Rebates to PBMs in connection with formulary placements, drug pricing reform, and the manner in which you first became aware of the allegations in these actions.  Documents received by You that related to representations made by PBMs about their services or made by pharmaceutical manufacturers about their list prices.

7.      Contracts with third-party advisors or auditors in effect during the Time Period that relate to prescription drug benefits, as well as any presentations, reports, analyses, or memoranda relating to prescription drug benefits Plaintiffs chose or did not choose.

## **<u>CERTIFICATION</u>**

I declare under penalty of perjury that all of the information provided in this PFS is complete, true, and correct to the best of my knowledge and information, and that I have provided all of the requested documents that are reasonably accessible to me and/or my attorneys, to the best of my knowledge.

_____          _____
Signature                                  Date


_____          _____
Name (Printed)                             Title

# EXHIBIT 5

CONFIDENTIAL                                                                   DRAFT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case No. 2:23-md-03080 (BRM)(RLS)** **MDL No. 3080** |
| This document relates to: Self-Funded Payer Track | **JUDGE BRIAN R. MARTINOTTI** **JUDGE RUKHSANAH L. SINGH** |

**SELF-FUNDED PAYER PLAINTIFF FACT SHEET**

Please provide the following information for each plaintiff that is part of the Self-Funded Payer Track that has filed a complaint in *In Re: Insulin Pricing Litigation*, MDL No. 3080.  In completing this Plaintiff Fact Sheet ("PFS"), You are under oath and must provide information that is true and correct to the best of Your knowledge, information, and belief. The scope of the questions herein and responses thereto will be limited to information and/or documents within the~~each plaintiff's~~ possession, custody, or control ~~of those Plaintiffs. However, to~~ To the extent ~~any of the~~a plaintiff lacks information ~~requested is~~or documents in ~~the~~its possession ~~of one or more of the Defendants and is not currently,~~ custody, or control ~~Your possession, Plaintiffs agree to request~~response to the questions or documents requests below, it shall expressly state it lacks such information ~~from Defendants and Defendants agree to fully cooperate~~ in ~~providing information requested in these requests to the extent the information requested is in the possession of one or more of the Defendants.~~ its response.

Do not leave any questions unanswered or blank.  If You are filling out this PFS in hard copy, use additional sheets as needed to fully respond.

This PFS constitutes discovery responses subject to the Federal Rules of Civil Procedure. You must promptly supplement Your responses if You learn that they are incomplete or inaccurate in any respect.  Each question in this PFS is continuing in nature and requires supplemental answers as You obtain further information between completing this PFS and trial.  Information provided will only be used for purposes related to this litigation and may be disclosed only as permitted by the Stipulated Confidentiality Order entered in this MDL proceeding.  (*See* Dkt. 117.)

~~To the extent any question can be answered through the production of documents, consistent with Federal Rule of Civil Procedure 33(d), Plaintiff may produce such documents and indicate in the response which documents are being produced to satisfy the question and specify the applicable bates ranges for the specific responsive documents.~~

~~DRAFT~~
~~CONFIDENTIAL~~

## INSTRUCTIONS

1.      None of the questions in this PFS seek privileged information.  To the extent You believe that any form of privilege prevents You from fully answering a question, state Your basis for withholding an answer or part of an answer on the grounds of privilege and which privilege You believe applies.  If you assert that part of a question is objectionable or calls for privileged information, respond to the remaining parts of the question to which you do not object.

2.      The words "and," "or," and "including" should be construed as necessary to bring within the scope of the request all responses and information that might otherwise be construed out of its scope. "Including" shall mean "including but not limited to."

3.      All definitions provided herein are limited to the use of the terms in these Requests.

## DEFINITIONS

1.      "Administrative Fees" means any fee paid by a manufacturer to a PBM in exchange for any administrative service the PBM performs.

2.      "At-Issue Products" means the insulin products and any other pharmaceuticals ~~identified in Your operative complaint.~~ that you identify in response to Question No. 10.

3.      "Health Plan" means all health plans offered by, administered by, or sponsored by You during the Period that the Health Plan offered or included Prescription Drug Coverage.

4.      ~~-~~ "Out-of-Pocket Maximum" means the maximum amount of allowable costs or expenses that a person with any form of health insurance, health coverage, prescription drug plan, or any other health plan that helps enrollees pay for prescribed pharmaceuticals can incur during a given year through their health insurance.

~~4.~~5.      "PBM" means pharmacy benefit manager.

~~5.~~6.      "Prescription Drug Coverage" means any form of health insurance, health coverage, prescription drug plan, or any other health plan that helps enrollees pay for prescribed pharmaceutical drugs.

~~6.~~7.      "Rebates" means any rebate, payment, discount, or other price concession made or paid by a manufacturer to a PBM.

~~7.~~8.      "Time Period" means January 1, 2011 to January 1, 2023.

~~8.~~9.      "WAC" means wholesale acquisition cost.

~~9.~~10.      "You" or "Your" means the Plaintiff named in this Action,~~ any agents, representatives, or any other entities acting on Plaintiff's behalf,~~ and any other persons or ~~entities~~ on whose behalf the Plaintiff brings this ~~Action.~~ action, including any official, department, agency, investigative unit, entity, or program.

~~DRAFT~~
~~CONFIDENTIAL~~

**QUESTIONS**

**I.**    **CASE INFORMATION**

1.    Plaintiff: _____

2.    Case name and caption number: _____

3.    Name, firm, and e-mail of principal attorney(s) representing You: _____

4.    Defendants: _____

**II.**   **BENEFICIARIES**

5.    In the table below, provide the total number of individuals enrolled in Your Health Plan, including primary and dependent beneficiaries, for each year of the Time Period:

| Year | Number of Beneficiaries |
|------|------------------------|
| 2011 | |
| 2012 | |
| 2013 | |
| 2014 | |
| 2015 | |
| 2016 | |
| 2017 | |
| 2018 | |
| 2019 | |
| 2020 | |
| 2021 | |
| 2022 | |

6.    Provide the total number of individuals who used Your Health Plan to purchase or use At-Issue Products during each year of the Time Period.

DRAFT
CONFIDENTIAL

| Year | Number of Purchasers of At-Issue Products |
|------|-------------------------------------------|
| 2011 | |
| 2012 | |
| 2013 | |
| 2014 | |
| 2015 | |
| 2016 | |
| 2017 | |
| 2018 | |
| 2019 | |
| 2020 | |
| 2021 | |
| 2022 | |

**III.    PERSONS OR ENTITIES WITH RELEVANT KNOWLEDGE**

7.       In the form of the table below, identify the name, title, and dates of employment of Your current and former employees, representatives, or agents who had any responsibility over the design or administration of Your Health Plan or Prescription Drug Coverage during the Time Period., including responsibility over the decision to enter into agreements governing Prescription Drug Coverage, Rebates, Your Health Plan, and formularies.

| Name | Title | Dates of Employment or Contract | Area(s) of Responsibility |
|------|-------|--------------------------------|---------------------------|
| | | | |

Inserted Cells

8.       To the extent not included in response to Question No. 7 above, in the form of the table below, identify by name, title, and dates of employment Your current and former employees or representatives with discoverable knowledge regarding the allegations in Your Complaint.

| Name | Title | Dates of Employment or Contract | Area(s) of Responsibility |
|------|-------|--------------------------------|---------------------------|
| | | | |

Inserted Cells

4

~~DRAFT~~
~~CONFIDENTIAL~~

9.    In ~~the form of~~ the table below, identify by name any department, agency, investigative unit, entity, or other program with responsibility over functions related to the allegations in Your Complaint.  Summarize each of those entities' area of responsibility:

| Entity Name | Area of Responsibility |
|---|---|
|  |  |

### IV.    AT-ISSUE PRODUCTS

10.    Identify every insulin or other pharmaceutical that You allege is relevant to any claim for damages or other relief You seek in this case (the "At-Issue Products")[1]:

_____

11.    In the form of the table below or through the production of documents, for each At-Issue Product, provide the total amount of money that You spent on the At-Issue Product for members enrolled in Your Health Plan for each year during the Time Period, the total Rebates received by You, and the total amount of Your members' out-of-pocket responsibility:

| At-Issue Product | Year | Total Number of Scripts | Total Spent by You | Total Rebates Received | Your Member's Out-of-Pocket Responsibility |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

### V.    YOUR HEALTH PLANS

12.    In the form of the table below, for each Health Plan that You offered that included Prescription Drug Coverage during the Time Period, identify the plan identification number, name, or other plan identifier and the starting and ending dates for each plan year during the Time Period:

| Health Plan Identifier | Start Date | End Date |
|---|---|---|
|  |  |  |

_____

[1]   In seeking this information, Defendants do not concede that any pharmaceuticals identified by You are relevant.

~~DRAFT~~
~~CONFIDENTIAL~~

13.     ~~In~~In the table below, for every Health Plan identified in response to Question No. 12 and for each plan year during the Time Period, identify (1) the annual deductible(s), including separate deductible amounts or requirements for use of in-network versus out-of-network pharmacies, and any separate deductible amounts or requirements on individual versus family expenditures, (2) the copayment or coinsurance rate for each pharmaceutical tier, (3) the annual Out-of-Pocket Maximums, including if there are different maximums based on in-network versus out-of-network pharmacy use, and/or based on family versus individual expenditures and whether Out-of-Pocket Maximums were based on pharmaceutical expenditures alone, or on combined pharmaceutical and medical expenditures, and (4) whether the Health Plan had first-dollar coverage for any At-Issue Product, in which the insured does not need to satisfy a deductible before the insurer assumes payment:

| Health Plan Identifier | Plan Year | Deductible | Coinsurance | Copayment | OOP Maximum | First-Dollar Coverage |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

~~13.~~14.  In the form of the table below, list all PBMs or other entities with whom You have contracted for every Health Plan identified in response to Question No. 12 and for each plan year during the Time Period, identify which formulary that Health Plan offered for Prescription Drug Coverage and the PBM or other entity that administered the Prescription Drug Coverage:

| Health Plan Identifier | Plan Year | Formulary | PBM or Other Entity |
|---|---|---|---|
|  |  |  |  |

15.     In the form of the table below, for every Health Plan identified in response to Question No. 12 and for each plan year during the Time Period, identify whether each pharmaceutical was included or excluded on any formulary You used during the Time Period. If a pharmaceutical was included on a formulary, identify the relevant PBM (if any), the pharmaceutical's formulary tier or status, whether the pharmaceutical was the lowest branded copay on the formulary, and the years that the pharmaceutical was included on the formulary:

| Health Plan Identifier | Plan Year | Pharmaceutical | Included / Excluded | Tier / Status and Description | Lowest Branded Copay (Y/N) | Years on Formulary |
|---|---|---|---|---|---|---|
|  |  | Humulin N |  |  |  |  |
|  |  | Humulin R |  |  |  |  |
|  |  | Humulin R 500 |  |  |  |  |

DRAFT
CONFIDENTIAL

| Health Plan Identifier | Plan Year | Pharmaceutical | Included / Excluded | Tier / Status and Description | Lowest Branded Copay (Y/N) | Years on Formulary |
|---|---|---|---|---|---|---|
| | | Humulin 70/30 | | | | |
| | | Humalog | | | | |
| | | Humalog 50/50 | | | | |
| | | Humalog 72/25 | | | | |
| | | Insulin Lispro | | | | |
| | | Basaglar | | | | |
| | | Rezvoglar | | | | |
| | | Trulicity | | | | |
| | | Lantus | | | | |
| | | Toujeo | | | | |
| | | Apidra | | | | |
| | | Soliqua | | | | |
| | | Admelog | | | | |
| | | Novolin R | | | | |
| | | Novolin N | | | | |
| | | Novolin 70/30 | | | | |
| | | Novolog | | | | |
| | | Novolog 70/30 | | | | |
| | | Insulin Aspart | | | | |
| | | Levemir | | | | |
| | | Tresiba | | | | |
| | | Insulin Degludec | | | | |
| | | Victoza | | | | |
| | | Ozempic | | | | |
| | | Semglee | | | | |
| | | Mounjaro | | | | |
| | | Xultophy | | | | |
| | | Rybelsus | | | | |

DRAFT
CONFIDENTIAL

| Health Plan Identifier | Plan Year | Pharmaceutical | Included / Excluded | Tier / Status and Description | Lowest Branded Copay (Y/N) | Years on Formulary |
|---|---|---|---|---|---|---|
| | | Adlyxin | | | | |

14.16. Identify all insurers or third-party administrators with whom You have contracted relating to the Health Plans identified in response to Question No. 12:

_____

17.    Did any Health Plan identified in response to Question No. 12 have benefit design features specifically pertaining to patients with diabetes or pre-diabetes? ____Yes ____No

## VI.    REBATES AND FEES

15.18.  In the form of the table below, identify each contract You have or had with a PBM during the Time Period, including the party with which You contracted, and the year.  Include in Your answer any addendums or other agreements You entered pursuant to an existing master agreement. If a contract was entered into before the Time Period began but did not expire until after the Time Period began, identify that contract as well:

| Contract | Contracting Entity | Year(s) |
|---|---|---|
| | | |

19.    IdentifyIn any advisors, contractors, brokers,contract identified in response to Question No. 18, did the PBM agree to share or consultantspass through Rebates to You used to solicit, select,? _____ Yes _____ No

If yes, in the form of the table below, identify each such contract, the percentage of or develop Your health plan or health benefit coverage optionsother determinant of the Rebates the PBM agreed to pass through to You, and the specific provision in the contract governing the pass through of such rebates:

| Contract | Percentage of Rebates | Contract Provision |
|---|---|---|
| | | |

20.    In any contract identified in response to Question No. 18, did the PBM agree to pass Administrative Fees through to You? _____Yes _____No

8

DRAFT
CONFIDENTIAL

**If yes**, in the form of the table below, identify each such contract, the contracting entity, the year, the percentage of Administrative Fees the PBM agreed to pass through to You, and the specific provision in the contract governing the pass through of such fees:

| Contract | Percentage of Administrative Fees | Contract Provision |
|---|---|---|
|  |  |  |

21.    In any contract identified in response to Question No. 18, did the PBM offer a guaranteed minimum payment to You, including ~~the~~ any Rebate guarantee?  ___Yes ___No

**If yes**, in the form of the table below, identify each such contract, the guaranteed minimum payment, and the specific provision in the contract governing the guaranteed minimum payment:

| Contract | Guaranteed Minimum Payment | Contract Provisions |
|---|---|---|
|  |  |  |

22.    Have You ever used preventative drug lists, critical drug affordability programs, or any other program to lower the out-of-pocket costs of the At-Issue Products for Your members? _____Yes _____No

**If yes**, in the form of the table below, identify each such Health Plan where You implemented such a program, the program, the year the program was implemented, and the applicable At-Issue Products:

| Health Plan | Program | Year | At-Issue Product |
|---|---|---|---|
|  |  |  |  |

23.    Have You ever passed Rebates received from a PBM through to Your members at the point of sale for any of the At-Issue Products? _____Yes _____No

**If yes,** in the form of the table below, identify each such Health Plan where You passed on Rebates, the years You passed on Rebates, the At-Issue Products for which You passed on Rebates, and the percentage of Rebates that You passed on to members at the point of sale:

DRAFT
CONFIDENTIAL

| Health Plan | Year Passed on Rebate | At-Issue Product | Percentage of Rebate Passed on |
|---|---|---|---|
| | | | |

24.　Other than passing Rebates through to Your members at the point of sale, describe the ways in which You use Rebates and Administrative Fees received from PBMs for At-Issue Products:

_____

25.　In any contract identified in response to Question No. 18, did any other PBM or any other contracting entity submit bids/proposals? _____ Yes _____ No

**If yes**, identify any entity submitting competing bids/proposals, and produce the competing bids.

_____

~~16.~~26.　During the relevant time period ~~they were used.~~, did you contract with, or use master contracts from, any other entities (e.g. MMCAP) for rebates or other price concessions related to purchasing pharmaceutical products? _____ Yes _____ No

_____

~~17.1.　Are Your Health Plan expenditures related to pharmaceuticals audited, either internally or by an external auditor? _____ Yes _____ No~~

~~**If yes,** for each audit during the Time Period, state what entity or entities were responsible for the audit:_____~~

~~18.　Identify any advisors, contractors, brokers, or consultants You used in connection with soliciting or selecting PBMs including the time period they were used.~~

_____

**If yes**, in the form of the table below, identify each such contract, the contracting entity, the year, and the percentage of or other determinant of the Rebates the contracting entity agreed to pass through to You:

| Contract | Contracting Entity | Year | Percentage of Rebates |
|---|---|---|---|
| | | | |

DRAFT

CONFIDENTIAL

## VII.    MISREPRESENTATIONS AND OMISSIONS

27.    In the form of the table below, identify every specific misrepresentation that a Defendant allegedly made that forms the basis of the allegations in Your lawsuit, including the approximate date, the source, who received the statement, the reason why You believe the statement was false, whether or not You relied on the statement, and if so, how, and the Defendant(s) that made the statement:

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if any) | Defendant(s) |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

28.    In the form of the table below, describe any omissions that a Defendant allegedly made that forms the basis of the allegations in Your lawsuit, including the approximate date, any statement to which the omission relates, the reason why You believe a Defendant should have disclosed the omission, and the Defendant(s) that made the omission:

| Omission | Approximate Date | Related Statement | Basis for Disclosure | Defendant(s) |
|---|---|---|---|---|
|  |  |  |  |  |

## VII.VIII.    TIMING OF AWARENESS

29.    Identify when and how You first learned or discovered that the WACs for the At-Issue Products were allegedly artificially inflated, false, fraudulent, misleading, or deceptive:

_____

30.    Identify when and how You first learned or discovered that pharmaceutical manufacturers pay Rebates to PBMs for the At-Issue Products: _____

_____

19.31.  Identify the earliest date on which You began investigating the pricing of Defendants' At-Issue Products for the purpose of bringing the present action: _____

20.32.  Identify when and how You first learned or discovered that Defendants' statements about the prices for the At-Issue Products were allegedly artificially inflated, false, fraudulent, misleading,                                    or                                    deceptive:

_____

21.    Describe how You learned or discovered that Defendants' statements about the prices for the At-Issue Products were allegedly artificially inflated, false, fraudulent, misleading, or

DRAFT
CONFIDENTIAL

deceptive:

22.33.  Identify ~~the earliest date on which~~when and how You learned of or discovered any other lawsuit filed against any Defendant related to insulin pricing, including *In re Insulin Pricing* (D.N.J., 2:17-cv-00699), *MSP LLC* (D.N.J., 2:18-cv-02211), *Minnesota* (D.N.J., 2:18-cv-14999), and *In re Direct Purchaser* (D.N.J., 3:20-cv-03426):

~~Describe~~

23.34.  Identify when and how You learned of or discovered any ~~other lawsuit filed against any Defendant~~state, or federal investigation related to insulin pricing:


## ~~VIII.~~IX.    SELECTION OF PRESCRIPTION DRUG COVERAGE

24.35.  In the form of the table below, identify any third-party services, advisors, consultants, or contractors used by You to provide consulting, research, analysis, accounting, financial advice, solicitation, selection, development, or other advice related to Your Health Plan, selecting or soliciting PBM services, or Prescription Drug Coverage for At-Issue Products during the Time Period, the approximate dates You used the third-party services, advisors, consultants, or contractors, a description of the services that entity provided You, and the principal point of contact at the entity who is or was responsible for overseeing performance of the contract:

| Third-Party Advisor (Advisor Name and Employer) | Approximate Dates | Description of Services | Point of Contact |
|---|---|---|---|
|  |  |  |  |

25.36.  For each third-party service, advisor, consultant, or contractor You identified in Question No. 2435, in the form of the table below or through the production of documents, identify whether You received any presentations, reports, analyses, or memoranda You received related to Health Plan or Prescription Drug Coverage benefit design for At-Issue Products, and produce those materials:

DRAFT
CONFIDENTIAL

| Third-Party Advisor | Received Presentations, Reports, Analyses, Memoranda (Yes/No) |
|---|---|
|  |  |

26.37. Did You or anyone acting on Your behalf conduct a request for proposal ("RFP") or similar process to solicit offers from or to otherwise identify PBMs to administer Prescription Drug Coverage? _____ Yes _____ No

**If yes,** in the form of the table below, identify each RFP or other solicitation You made during the Time Period, any third-party advisor that assisted with the RFP or solicitation, the PBMs You sent the RFP or solicitation to and produce the RFP responses:

| RFP or Solicitation | Third-Party Advisor | Date | PBMs Solicited |
|---|---|---|---|
|  |  |  |  |

38. Are Your Health Plan expenditures related to pharmaceuticals audited, either internally or by an external auditor? _____ Yes _____ No

27. Did You or anyone acting on Your behalf conduct or participate in an audit or study, related to any services provided by the entities identified in Question No. 24. _____ Yes _____ No

**If yes,** in the form of the table below, identify each audit or studyand produce the audit:

| Audit | Person or Entity conducting the Audit | Date | Purpose of the audit |
|---|---|---|---|
|  |  |  |  |
| Audit or Study | Person or Entity conducting the Audit/Study | Date | |
|  |  |  | |

**IX.X.   MEMBERSHIP IN OTHER ENTITIES**

28.39. In the form of the table below, identify any organizations that You are a part of that share information regarding, or that relate in any way to, the healthcare industry, at-issue insulininsulins, pharmaceutical pricing, Rebates, PBM or drug pricing reform or legislation, including, but not limited to, the National Association of Counties, MMCAP,

DRAFT
CONFIDENTIAL

or any other group purchasing organization, and identify any of Your employees who are involved in that organization:

| Organization | Dates of Membership | Your Involved Employees |
|---|---|---|
| | | |

29.    In the table below, identify any task forces, studies, working groups, initiatives, legislative bodies, or investigative bodies You have been involved in related to at-issue insulins, pharmaceutical pricing, rebates, or PBM/drug pricing reform or legislation.

**XI.    DIRECT PURCHASING**

40.    Have You purchased At-Issue Products directly from pharmaceutical manufacturers, wholesalers, mail order pharmacies, and/or retail sellers? _____ Yes _____ No

**If yes**, in the table below, identify each At-Issue Product You allege You purchased directly, the specific years You made the direct purchase, the entity that directly distributed the At-Issue Product(s) to You, the total quantity of At-Issue Products You purchased, and the total amount You paid:

| Entity At-Issue Product | Dates of Involvement Year | Direct Seller | Total Quantity | Total Amount Paid |
|---|---|---|---|---|
| | | | | |

**X. XII. DAMAGES**

41.    For each Defendant identified in Question No. 4, state how You claim You have been damaged by that Defendant's alleged conduct. This request is not designed to require an expert evaluation.

| Defendant | Basis |
|---|---|
| | |

42.    For each Defendant identified in Question No. 4, identify to the best of Your knowledge the date when You allege that You were first injured as a result of that particular Defendant's alleged conduct. This request is not designed to require an expert evaluation.

DRAFT
CONFIDENTIAL

| **Defendant** | **Date** |
|---|---|
| | |

~~30.~~43.  Are You seeking any monetary damages? _____ Yes _____ No

**If yes,** ~~summarize~~in the ~~categories~~form of the table below, identify each category of damages or monetary relief that You allege~~.~~, a dollar amount for the award You seek for each category of damages or monetary relief, and an explanation as to how You calculated that amount of damages:

| **Category of Monetary Damages** | **Dollar Amount** | **Explanation of Calculation** |
|---|---|---|
| | | |

DRAFT
CONFIDENTIAL

## INITIAL DOCUMENT REQUESTS

Please produce the following documents for the Time Period:

1.      Each RFP seeking PBM services, including all amendments, riders, schedules, supplements, instructions, or other addenda that You issued during the Time Period.

2.      Documents, including internal summaries, analyses, and presentations, reflecting Your reasons for selecting or not selecting a PBM prescription drug benefit plan for each year, including bids, communications, RFPs, procurement rules, guidance documents, and related documents, and documents relating to negotiation for Rebates for Your employee plan(s) or for Medicaid.

2.3.      Each contract, including drafts, amendments, riders, schedules, supplements, or other addenda that You entered into with a PBM, health insurer, third-party administrator, or any other entity through which you obtained price concessions during the Time Period (e.g. MMCAP), or that otherwise was in effect during the Time Period.

3.4.      Documents sufficient to identify the formularies in place for YouYour Health Plans during the Time Period.

4.      Data sufficient to show Your total expenditures on the At-Issue Products each year of the Time Period.

5.      For each benefit year for which you are seeking relief, documents relating to your Health Plans, including documents sufficient to show: (1) the annual deductible(s), including separate deductible amounts or requirements for use of in-network versus out-of-network pharmacies, and any separate deductible amounts or requirements on individual versus family expenditures, (2) the copayment or coinsurance rate for each pharmaceutical tier, (3) the annual Out-of-Pocket Maximums, (4) the summary plan description, and (5) summaries of benefits and coverage associated with each of your Health Plans during the time period.

5.6.      Documents related to other insulin pricing lawsuits or investigations, the relationship between WACs and Rebates, the fact that pharmaceutical manufacturers pay Rebates to PBMs in connection with formulary placements, drug pricing reform, and the manner in which you first became aware of the allegations in these actions.  Documents received by You that related to representations made by PBMs about their services or made by pharmaceutical manufacturers about their list prices.

6.7.      Contracts with third-party advisors or auditors in effect during the Time Period that relate to prescription drug benefits, as well as any presentations, reports, analyses, or memoranda relating to prescription drug benefits Plaintiffs chose or did not choose.

DRAFT
CONFIDENTIAL

## CERTIFICATION

I declare under penalty of perjury that all of the information provided in this PFS is complete, true, and correct to the best of my knowledge and information, and that I have provided all of the requested documents that are reasonably accessible to me and/or my attorneys, to the best of my knowledge.

_____        _____
Signature                                                       Date

_____        _____
Name (Printed)                                              Title

17

# EXHIBIT 6

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**IN RE: INSULIN PRICING LITIGATION**

**Case No. 2:23-md-03080**
**MDL No. 3080**

**JUDGE BRIAN R. MARTINOTTI**
**JUDGE RUKHSANAH L. SINGH**

**THIS DOCUMENT RELATES TO: SELF-FUNDED PAYER TRACK**

Plaintiff: [_____]
Individual Case Docket No.: [_____]

## DEFENDANT FACT SHEET – PHARMACY BENEFIT MANAGERS

Pharmacy benefit manager defendants named in lawsuits that are part of the Self-Funded Payer Track ("PBM Defendants") must complete this Defendant Fact Sheet ("DFS") for the above-named Plaintiff in *In Re: Insulin Pricing Litigation*, MDL No. 3080. In completing this DFS, You are under oath and must provide information that is true and correct to the best of Your knowledge, information, and belief. Do not leave any questions unanswered or blank. If You are filling out this PFS in hard copy, use additional sheets as needed to fully respond.

This DFS constitutes discovery responses subject to the Federal Rules of Civil Procedure and will be governed by the standards applicable to written discovery under the Federal Rules. You must promptly supplement Your responses as provided by and in accordance with Federal Rule of Civil Procedure 26(e). The questions and requests for production of documents contained in this DFS are non-objectionable and shall be answered without objection. This DFS shall not preclude Plaintiffs from seeking additional documents and information on a reasonable, case-by-case basis, pursuant to the Federal Rules of Civil Procedure and as permitted by applicable case management orders, subject to the Court's determination.

Information provided will only be used for purposes related to this litigation and may be disclosed only as permitted by the Stipulated Confidentiality Order entered in this MDL proceeding. *See* Dkt. 117.

To the extent any question can be answered through the production of documents, consistent with Federal Rule of Civil Procedure 33(d), You may produce such documents and indicate in the response which documents are being produced to satisfy the question and specify the applicable Bates ranges for the specific responsive documents.

This DFS must be completed and served on counsel of records representing the Plaintiff in the action identified above.

## INSTRUCTIONS

1.　　None of the questions in this DFS seek privileged information.  To the extent You believe that any form of privilege prevents You from fully answering a question, state Your basis for withholding an answer or part of an answer on the grounds of privilege and which privilege You believe applies. If you assert that part of a question is objectionable or calls for privileged information, respond to the remaining parts of the question to which you do not object.

2.　　The words "and," "or," and "including" should be construed as necessary to bring within the scope of the request all responses and information that might otherwise be construed out of its scope. "Including" shall mean "including but not limited to."

3.　　All definitions provided herein are limited to the use of the terms in this DFS.

## DEFINITIONS

1.　　An "Affiliate" or an "Affiliated" entity means any entity that is partially or completely owned or controlled by You or that is partially or completely owned or controlled by an entity that has partial or complete ownership or control of You.

2.　　"Diabetes Medications" refers to all insulin products and glucagon-like peptide receptor agonists (GLP-1s) as set forth in Section II.D of Case Management Order #10 entered in this MDL. *See* Dkt. 198.

3.　　"Health Plan" means any health plan offered by, administered by, or sponsored by Plaintiff during that offered or included Prescription Drug Coverage.

4.　　"Manufacturer Payments" means any payments, financial benefits, or other consideration or remuneration of any kind conferred, directly or indirectly, by any Manufacturer Defendant to You (or any of subsidiary, Affiliated entity, or any other person or entity acting on Your behalf). "Manufacturer Payments" includes rebates, discounts, administrative fees, service fees, refunds, commissions, credits, concessions, access fees/rebates, data fees, educational grants, formulary placement fees, management fees, value-based fees, health management fees, implementation allowances, indirect purchase fees/rebates, inflation fees, interest, mail order discounts/rebates, market share payments, medication monitoring fees, price protection fees/rebates, price or margin guarantees, pharmacy supplemental discounts, volume discounts, performance incentives, performance-based fees, price concessions, prompt payment discounts, portal fees, enterprise fees, promotional allowances, utilization management fees, and any other form of consideration or value.

5.　　"PBM" means pharmacy benefit manager.

6.　　"Prescription Drug Coverage" means any form of health insurance, health coverage, prescription drug plan, or any other health plan that helps enrollees pay for prescribed pharmaceutical drugs.

7.　　 "Time Period" means January 1, 2011, to January 1, 2023.

2

8.      "Plaintiff" means the Plaintiff referred to in the caption of this DFS.

9.      "You" or "Your" means the PBM Defendant responding to this DFS and any officers, agents, attorneys, employees, representatives, or others acting on Your behalf, including Your Affiliates.

## CASE INFORMATION

Case name:_____

Case caption number:_____

PBM Defendant responding to this DFS:_____

Name, firm, and e-mail of principal attorneys representing You:_____

## QUESTIONS

1.      Identify by name, title, and dates of employment Your current and former employees, representatives, contractors, or agents who had any responsibility over the design or administration of Plaintiff's Health Plan or Prescription Drug Coverage during the Time Period, including with respect to Manufacturer Payments and formularies.

| Name | Title | Dates of Employment or Contract |
|------|-------|----------------------------------|
|      |       |                                  |
|      |       |                                  |
|      |       |                                  |
|      |       |                                  |
|      |       |                                  |

2.      Identify by name, title, and dates of employment Your current and former employees, representatives, contractors, or agents with knowledge regarding the allegations in Plaintiff's operative Complaint.

| Name | Title | Dates of Employment or Contract |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

3.      Identify any current or former account executives, account managers, or other client service team members assigned to Plaintiff's account during the Time Period.

| Name | Title | Dates of Employment or Contract |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

4.      For each request for proposal or similar process ("RFP") issued by Plaintiff to which You submitted a response ("RFP Response"), identify all persons (including third-party advisors, contractors, brokers, or consultants) who were involved in receiving, preparing, submitting, or communicating with Plaintiff regarding the response, and summarize each person's respective areas of responsibility.

| Name | Title | RFP Response Date | Areas of Responsibility |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

5.      For each RFP Response submitted by You to Plaintiff, identify any third-party advisors, contractors, brokers, or consultants used by You or Your Affiliates. For any such third-party advisors, contractors, brokers, or consultants identified, describe any contracts, agreements, or other business relationship that You or Your Affiliates had with such third party; the time period such third party was used; and the scope of services such third party provided.

_____

6.      Identify each contract You entered into with Plaintiff during the Time Period relating to PBM services, including the contracting parties and year. Include in Your answer any addendums or other agreements You entered pursuant to any existing master agreement. If a contract was entered into before the Time Period began but did not expire until after the Time Period began, identify that contract as well.

| Contract | Contracting Parties | Years |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

7.      For each contract identified in No. 6, identify all persons who were involved in the negotiation, management, or oversight of the contract, including each person's respective areas of responsibility as they related to the contract.

| Name | Title | Contract Date | Areas of Responsibility |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

8.      Identify each Health Plan offered by Plaintiff during the Time Period for which You administered Prescription Drug Coverage. For each such Health Plan, identify which formularies that Health Plan offered for Prescription Drug Coverage.

_____

9.      For each year of the Time Period during which You administered Plaintiff's Prescription Drug Coverage, provide the total amounts that Plaintiff paid for each of the Diabetes Medications.

_____

10.     For each year of the Time Period during which You administered Plaintiff's Prescription Drug Coverage, state:

a)      the total Manufacturer Payments received by You or Your Affiliates from each of the Manufacturer Defendants relating to claims by Plaintiff's Health Plan beneficiaries for Diabetes Medications;

b)      how such Manufacturer Payments were categorized (e.g., rebates, consulting fees, clinical program fees, administrative fees, financial incentives, formulary-placement or access fees, inflation or price-protection fees, etc.); and

c)      the portion of those Manufacturer Payments paid to or otherwise passed through to Plaintiff.

_____

11.     For each year of the Time Period during which You administered Plaintiff's Prescription Drug Coverage, state the total amounts paid by You to:

a)      any of Your Affiliated pharmacies in connection with claims by Plaintiff's Health Plan beneficiaries for Diabetes Medications; and

b)      any non-Affiliated pharmacies in connection with claims by Plaintiff's Health Plan beneficiaries for Diabetes Medications;

c)      any consultant, advisor, broker, or similar third party that provided consulting services to Plaintiff.

12.     For each year of the Time Period during which You administered Plaintiff's Prescription Drug Coverage, state the total amount paid to You by Plaintiff in connection with Your pharmacy-benefit management services.

| Year | Amount |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

13.     For each year of the Time Period during which You administered Plaintiff's Prescription Drug Coverage, state the total revenues and profits earned by You or any of Your Affiliated pharmacies, including mail-order or specialty pharmacies, in connection with claims by Plaintiff's Health Plan beneficiaries for Diabetes Medications.

| Year | Amount |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

14.     For each year of the Time Period during which You administered Plaintiff's Prescription Drug Coverage, provide the total amounts paid to or otherwise retained by any Affiliate or other third party in connection with claims by Plaintiff's Health Plan beneficiaries for Diabetes Medications.

7

15.     Identify any rebate aggregators or PBM group purchasing organizations (e.g., Ascent Health Services, Coalition for Advanced Pharmacy Services, Zinc Health Services, Emisar Pharma Services) with whom You had a relationship (contractual or otherwise) during the Time Period concerning any Manufacturer Payments relating to claims by Plaintiff's Health Plan beneficiaries for Diabetes Medications. For any such entities identified, state whether You disclosed such relationship to Plaintiff, and identity and describe such disclosures.

_____

16.     State whether Plaintiff requested any audits in connection with Your PBM services, and identify the dates of such requests and the dates of any such audits.

_____

## **DEFENDANT FACT SHEET DOCUMENT REQUESTS**

1.      All RFP Responses submitted by You to Plaintiff.

2.      All contracts You identified in No. 6 above.

3.      All formularies identified in No. 8 above.

4.      Any presentations, reports, analyses, or memoranda related to any audits identified in response to No. 16 above.

## **CERTIFICATION**

The foregoing answers were prepared with the assistance of a number of individuals, including counsel, upon whose advice and information I relied. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that all of the information provided in this Defendant Fact Sheet is true and correct to the best of my knowledge, information, and belief.

_____
Name:
Title:
Date:

# EXHIBIT 7

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case No. 2:23-md-03080**<br>**MDL No. 3080**<br><br>**JUDGE BRIAN R. MARTINOTTI**<br>**JUDGE RUKHSANAH L. SINGH** |

**THIS DOCUMENT RELATES TO: SELF-FUNDED PAYER TRACK**

Plaintiff: [_____]
Individual Case Docket No.: [_____]

### <u>DEFENDANT FACT SHEET – MANUFACTURERS</u>

Manufacturer Defendants named in lawsuits that are part of the Self-Funded Payer Track must complete this Defendant Fact Sheet ("DFS") for the above-named Plaintiff in *In Re: Insulin Pricing Litigation*, MDL No. 3080. In completing this DFS, You are under oath and must provide information that is true and correct to the best of Your knowledge, information, and belief. <u>Do not leave any questions unanswered or blank.  If You are filling out this PFS in hard copy, use additional sheets as needed to fully respond.</u>

This DFS constitutes discovery responses subject to the Federal Rules of Civil Procedure and will be governed by the standards applicable to written discovery under the Federal Rules. You must promptly supplement Your responses as provided by and in accordance with Federal Rule of Civil Procedure 26(e). The questions and requests for production of documents contained in this DFS are non-objectionable and shall be answered without objection. This DFS shall not preclude Plaintiffs from seeking additional documents and information on a reasonable, case-by-case basis, pursuant to the Federal Rules of Civil Procedure and as permitted by applicable case management orders, subject to the Court's determination.

Information provided will only be used for purposes related to this litigation and may be disclosed only as permitted by the Stipulated Confidentiality Order entered in this MDL proceeding. *See* Dkt. 117.

To the extent any question can be answered through the production of documents, consistent with Federal Rule of Civil Procedure 33(d), You may produce such documents and indicate in the response which documents are being produced to satisfy the question and specify the applicable Bates ranges for the specific responsive documents.

This DFS must be completed and served on counsel of records representing the Plaintiff in the action identified above.

## INSTRUCTIONS

1.       None of the questions in this DFS seek privileged information.  To the extent You believe that any form of privilege prevents You from fully answering a question, state Your basis for withholding an answer or part of an answer on the grounds of privilege and which privilege You believe applies. If you assert that part of a question is objectionable or calls for privileged information, respond to the remaining parts of the question to which you do not object.

2.       The words "and," "or," and "including" should be construed as necessary to bring within the scope of the request all responses and information that might otherwise be construed out of its scope. "Including" shall mean "including but not limited to."

3.       All definitions provided herein are limited to the use of the terms in this DFS.

## DEFINITIONS

1.       "Action" refers to the case identified in the "Case Information" section herein.

2.       An "Affiliate" or an "Affiliated" entity means any entity that is partially or completely owned or controlled by You or that is partially or completely owned or controlled by an entity that has partial or complete ownership or control of You.

3.       "Diabetes Medications" refers to all insulin products and glucagon-like peptide receptor agonists (GLP-1s) as set forth in Section II.D of Case Management Order #10 entered in this MDL. *See* Dkt. 198.

4.       "Time Period" means January 1, 2011, to January 1, 2023.

5.       "Plaintiff" means the Plaintiff referred to in the caption of this DFS.

6.       "You" or "Your" means the Manufacturer Defendant responding to this DFS and any officers, agents, attorneys, employees, representatives, Affiliates or others acting on Your behalf.

## CASE INFORMATION

Case name:_____

Case caption number:_____

Manufacturer Defendant responding to this DFS:_____

Name, firm, and e-mail of principal attorneys representing You:_____

## QUESTIONS

1.      Identify by name, title, and dates of employment Your current and former employees, representatives, contractors, or agents with knowledge regarding the allegations in Plaintiff's operative Complaint.

| Name | Title | Dates of Employment or Contract |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

2.      Identify by name, title, and dates of employment Your current and former employees, representatives, contractors, or agents who communicated or otherwise had any contact with any of the individuals identified by any PBM Defendants in response to Question Nos. 1-4 and 7 in any DFS provided in connection with this Action.

| Name | Title | Dates of Employment or Contract | Applicable PBM Contacts |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

3.      Identify and describe any internal or external programs applicable to Plaintiff that You have used or funded during the Time Period relating to lowering the amount of Plaintiff's spend on any of the Diabetes Medications, including the type of program; eligibility requirements for such program; the amount You spent on such program during each year of the Time Period; and the amount of revenue and net income each program generated during each year of the Time Period.

_____

## **DEFENDANT FACT SHEET DOCUMENT REQUESTS**

1.      Documents sufficient to identify any programs set forth in No. 3.

## **CERTIFICATION**

The foregoing answers were prepared with the assistance of a number of individuals, including counsel, upon whose advice and information I relied. Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that all of the information provided in this Defendant Fact Sheet is true and correct to the best of my knowledge, information, and belief.


_____
Name:
Title:
Date:

4

# EXHIBIT 8

1

2

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

3

4    IN RE: JUUL LABS INC., MARKETING,          CASE NO. 19-md-02913-WHO
     SALES PRACTICES, AND PRODUCTS
5    LIABILITY LITIGATION
                                                **CASE MANAGEMENT ORDER NO. 13:**
6                                               **GOVERNMENT ENTITY AND SCHOOL**
                                                **DISTRICT FACT SHEET**
7                                               **IMPLEMENTATION ORDER**

8    _____
                                                HONORABLE WILLIAM H. ORRICK
9    This Document Relates to:

     *All matters*
10

11

12

13   _____

14        This Case Management Order ("CMO" or "Order") governs the form, schedule for completion,

15   and service of government entity (including school district) Plaintiff Fact Sheets ("PFS") in this MDL.

16   This Order applies to all government-entity Plaintiffs (including school-district Plaintiffs) (collectively

17   "Government-Entity Plaintiffs") and their counsel in: (a) all actions transferred to *In re: JUUL Labs, Inc.,*

18   *Marketing, Sales Practices, and Products Liability Litigation* ("MDL-2913") by the Judicial Panel on

19   Multidistrict Litigation ("JPML") pursuant to its Order dated October 2, 2019 and (b) to all related actions

20   directly filed in or removed to this Court.

21        **Online Platform**

22        The Court hereby appoints BrownGreer, PLC ("BrownGreer") to serve as the online platform for

23   the data management of the PFS. The parties are directed to utilize BrownGreer's platform, "MDL

24   Centrality," to fulfill their PFS obligations and also, to the extent necessary, directly or through their

25   designated representatives, to enter into a contract with the company specifying the services to be

26   provided, the costs of such services, and the parties' payment obligations. BrownGreer shall work with

27   the parties to compile all necessary data. Government-Entity Plaintiffs shall serve their respective PFS

28

and documents responsive to the requests in the PFS ("Responsive Documents") by uploading them to MDL Centrality. Uploading the responsive discovery to MDL Centrality shall constitute effective service.

**Plaintiff Fact Sheets**

The Court has approved two PFSs for Government-Entity Plaintiffs—one for government-entity Plaintiffs, generally, and one specific to school-district Plaintiffs—which both also include document requests. *See* Exhibits 1-2. Each Government-Entity Plaintiff must complete and submit the appropriate PFS and Responsive Documents through MDL Centrality pursuant to the terms of this Order.

The obligation to comply with this CMO and to provide a PFS shall fall solely to the individual counsel representing a Government-Entity Plaintiff. As with all case-specific discovery, Plaintiffs' Lead Counsel and the members of the Plaintiffs' Steering Committee are not obligated to conduct case-specific discovery for Plaintiffs by whom they have not been individually retained. In addition, Plaintiffs' Lead Counsel and the members of the Plaintiffs' Steering Committee have no obligation to notify counsel for Government-Entity Plaintiffs whom they do not represent of Defendants' notice of overdue or deficient discovery or to respond to any motion practice pertaining thereto.

**Discovery Mechanism**

The effect of a Government-Entity Plaintiff's response to the questions contained in the PFS shall be considered the same as interrogatory responses, and where documents are requested, responses shall be considered the same as responses to requests for production under the Federal Rules of Civil Procedure, and will be governed by the standards applicable to written discovery under the Federal Rules of Civil Procedure.

A PFS is served without prejudice to the Defendants' rights to serve additional discovery (which Defendants specifically reserve the right to serve). The Parties have agreed that additional discovery requests are appropriate for those cases that are chosen by the Parties and/or the Court as potential bellwether trial candidates. The Government-Entity Plaintiffs do not waive their rights to assert objections permitted under the Federal Rules of Civil Procedure to any additional discovery.

**PFS Deadlines**

The following PFS deadlines shall apply:

2

**A.** **Cases filed on or before the date of the entry of this Order:**  For cases directly filed in this judicial district and entered on the MDL 2913 docket on or before entry of this Order and for cases the JPML transfers to MDL 2913 on or before entry of this Order, each Government-Entity Plaintiff must complete and submit a PFS and produce Responsive Documents within 60 days after entry of this Order. A case shall be deemed transferred to MDL 2913 either: (a) on the date the Clerk enters a certified copy of the JPML's Conditional Transfer Order on the docket of this Court, or (b) where transfer is contested, the date of transfer in any subsequent order from the JPML.

**B.** **Cases filed after the date of the entry of this Order:**  For cases directly filed in this judicial district and entered on the MDL 2913 docket after entry of this Order, each Government-Entity Plaintiff must complete and submit a PFS and produce Responsive Documents within 60 days after the complaint has been entered on the docket.  For cases the JPML transfers to MDL 2913 after entry of this Order, each Government-Entity Plaintiff must complete and submit a PFS and produce Responsive Documents within 60 days after the case has been transferred to this Court as defined in paragraph 5(A) above.

**Substantial Completeness of PFS**

**A.** **Substantial completeness:**  PFS submissions must be substantially complete, which means the Government-Entity Plaintiff must:

1. Answer all applicable questions (a Government Entity-Plaintiff may answer questions in good faith by indicating "not applicable," "I don't know," or "unknown");

2. Include a signed Declaration; and

3. Produce Responsive Documents to the extent such documents are in the Government-Entity Plaintiff's possession, custody, or control.

**B.** **Deficiency notice:**  If a Defendant considers a PFS to be materially deficient, a deficiency notice outlining the purported deficiency(ies) shall be served on the Government-Entity Plaintiff's attorney of record via MDL Centrality.  The deficient Government-Entity Plaintiff will have thirty (30) days to correct the alleged deficiency(ies).

3

**Objections Reserved to PFS**

All objections to the admissibility of information contained in the PFS are reserved; therefore, no objections shall be lodged in the responses to the questions and requests contained therein. This paragraph, however, does not prohibit a Government-Entity Plaintiff from withholding or redacting information based upon a recognized privilege. Documents withheld on the basis of privilege shall be logged in accordance with the requirements of Case Management Order No. 4: Rule 502(d) and Privileged Materials Order, Docket No. 322, Section C.

**Confidentiality of Data**

Information any Government-Entity Plaintiff provides pursuant to a PFS is deemed confidential, and may be disclosed only as permitted by the Protective Order.

**Scope of Depositions and Admissibility of Evidence**

Nothing in the PFS shall be deemed to limit the scope of inquiry at depositions and admissibility of evidence at trial. The scope of inquiry at depositions shall remain governed by the Federal Rules of Civil Procedure. The Federal Rules of Evidence shall govern the admissibility of information contained in responses to the PFS and no objections are waived by virtue of providing information in any PFS.

**Failure to Serve PFS**

A. __Notice by Defendants of overdue discovery:__ Any Government-Entity Plaintiff who fails to comply with its PFS obligations under this Order may be subject to having its claims dismissed. If a Government-Entity Plaintiff has not submitted a completed PFS within 30 days following the due date set forth herein, any Defendant may send a Notice of Overdue Discovery via MDL Centrality.

B. __Motion to dismiss without prejudice:__ If a Government-Entity Plaintiff fails to submit a completed PFS within 30 days after receipt of the Notice of Overdue Discovery, any Defendant may move the Court for an order dismissing the Government-Entity Plaintiff's complaint without prejudice. A Government-Entity Plaintiff subject to such motion shall have 14 days from the date of the Defendant's motion to file a response either (a) certifying that the Government-Entity Plaintiff has submitted a completed PFS or (b) opposing the Defendant's motion for other reasons. If a Government-Entity Plaintiff

4

certifies that he or she has submitted a completed PFS, the Government-Entity Plaintiff's claims shall not be dismissed (unless the Court finds that the certification is false or incorrect).

      **C.**     **Motion to convert order of dismissal without prejudice to order of dismissal with prejudice:**  If the Court dismisses a complaint without prejudice under the previous paragraph, the Defendant may move the court no earlier than 30 days after the Court's entry of the Order of dismissal without prejudice to convert the Order to an Order of dismissal with prejudice. This provision does not in any way reduce or mitigate Defendant's burden in proving to the Court that a dismissal with prejudice is warranted under whatever statute, rule or caselaw Defendant brings its motion. If the government-entity Plaintiff serves Defendant's counsel or their designee(s) with a completed PFS prior to the filing of Defendant's motion to convert a dismissal without prejudice to a dismissal with prejudice, the parties shall submit a stipulated motion to vacate the dismissal without prejudice Order.

      This Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

      **IT IS SO ORDERED**.

      DATED: October 22, 2020

HONORABLE WILLIAM H. ORRICK
United States District Judge

**GOVERNMENT ENTITY AND SCHOOL DISTRICT FACT SHEET IMPLEMENTATION ORDER – CASE NO. 19-MD-02913-WHO**

**EXHIBIT 1**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2913<br>Case No. 19-md-02913-WHO |
| This document relates to:<br><br>ALL ACTIONS | |

**PLAINTIFF FACT SHEET - GOVERNMENT ENTITIES**

Please provide the following information for each government entity plaintiff that has filed a complaint in the *In Re Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 13-2913. In completing this Plaintiff Fact Sheet (PFS), you are under oath and must provide information that is true and correct to the best of your knowledge, information and belief. Please do not leave any questions unanswered or blank. If you are filling out this Fact Sheet in hard copy, use additional sheets as needed to fully respond.

You may and should consult with your attorney if you have any questions regarding the completion of this form.

*This Plaintiff Fact Sheet constitutes discovery responses subject to the Federal Rules of Civil Procedure. Information provided will only be used for purposes related to this litigation and may be disclosed only as permitted by the Protective Order.*

**INSTRUCTIONS:**

1. "You" and "Your" as used throughout this PFS means each Government Entity Plaintiff named in this action.

2. As used throughout this PFS and consistent with the Court's October 9, 2020 Order (Docket No. 1038), "any existing report, survey, analysis, study, or other document that tracks or otherwise provides an overview of" the issues addressed by the particular question (for example, the prevalence of use of tobacco or nicotine products, vaping or e-cigarettes, alcohol, drugs, other illicit substances, and expenditures made to address the use of these products or substances) means information that has already been compiled. If these types of documents exist, they should be produced. That already compiled information is only available or stored via email is not a reason for it not to be produced. Each Plaintiff must diligently investigate whether it has compiled in any form the information sought. This investigation might involve asking an appropriate person at particular county/city agencies to provide the Plaintiff with a document/report that has already compiled information. However, if information has not been compiled or summarized on these topics it does not need to be located, described or produced (i.e., You are not required to locate, compile, sort, describe or produce underlying

**EXHIBIT 1**

records that might show, for example, the prevalence of use or expenses incurred to address these products or substances).

3. "Citizen" means any resident within Your geographic bounds.

4. Please attach additional pages where necessary.

## I.   CASE INFORMATION

1. Plaintiff:_____

2. Case name:_____

3. Case number:_____

4. Name of the court in which the complaint was initially filed:

   _____

5. Filing date of the complaint:_____

6. Named defendant(s) in the complaint:

   _____

   _____

7. Name, firm, and e-mail address of principal attorney(s) representing You:

   Name:_____

   Firm: _____

   Email address:_____

8. Description of the citizens and entities You purport to represent in this lawsuit:

   _____

   _____

   _____

9. Are You seeking damages on behalf of schools?

   ___ Yes   ___ No

   **If yes,** please also fill out the School District Plaintiff Fact Sheet.

## EXHIBIT 1

II.  **CITY/COUNTY DATA**

10. Total number of citizens within Your city/county:_____

11. Percentage of citizens in Your city/county under the age of 18:_____

12. In any of the past 10 (ten) years has the total number of citizens in Your city/county been 20% more or 20% less than the figure reported in Question No. 10?

____ Yes    ____ No

**If yes,** please state the total number of citizens within Your city/county for each such year, or if that information isn't reasonably available, give a description of the approximate population change over the last 10 years.

_____

_____

_____

_____

13. All zip codes encompassed within Your geographic boundaries:

_____

_____

_____

14. Identify the minimum legal purchase age for tobacco products (including but not limited to cigarettes and smokeless tobacco products) in Your city/county for each year since 2012:

_____

_____

_____

15. Identify the minimum legal age to purchase e-cigarettes in Your city/county or state from 2012 – present:

_____

_____

_____

**<u>EXHIBIT 1</u>**

16. Number of schools in Your city/county:

    a.  Number of high schools: _____

    b.  Number of middle schools: _____

    c.  Number of elementary schools: _____

17. Provide the percentages of youth who have tried e-cigarettes and also youth who currently use e-cigarettes in Your city/county for the years in which that information is reasonably available or attach reports showing the same:

    _____

    _____

    _____

    _____

    _____

18. Have You or any organization or entity in Your city/county had any communications or interactions with any of the Defendants for any reason, including in connection with anti-smoking programs or youth vaping programs?

    _____ Yes _____ No

    **If yes**, for each communication or interaction, state (1) the date the communication or interaction occurred; (2) the nature of the communication or interaction; and (3) summarize Your portion of the communication.

    _____

    _____

    _____

**III.   <u>PERSONS WITH RELEVANT KNOWLEDGE</u>**

19. Identify the person(s) in Your city/county, if applicable, who held the following position(s) or their equivalent, since 2012:

    a.  Mayors and Vice Mayors: _____

    b.  City Councilmembers: _____

    c.  City Managers: _____

    d.  County Commissioners: _____

## EXHIBIT 1

      e.   County Supervisors: _____

      f.   County Executives: _____

      g.   Chief Health Officers: _____

      h.   Tobacco Prevention Control Manager:_____

20. Do any of the individuals identified above monitor, follow, record, or track data relating to vaping or e-cigarettes?

     _____ Yes _____ No

     **If yes**, identify those individuals

     _____

     _____

     _____

     _____

21. Identify the person(s) in Plaintiff's city/county most knowledgeable about youth use of tobacco or nicotine products, e-cigarettes and vaping products, alcohol, drugs, or other illicit substances, and the impact of such use on Plaintiff's city and county, from 2012 – present.

     _____

     _____

     _____

     _____

## IV.   DAMAGES

22. Please state generally in what way or how You claim You have been damaged by Defendants' alleged acts at issue in this lawsuit.

     _____

     _____

     _____

     _____

23. Are You seeking any monetary damages?

## <u>EXHIBIT 1</u>

_____ Yes _____ No

**If Yes,** identify each category of damages or monetary relief that You allege. This request is not designed to require an expert evaluation.

_____

_____

_____

_____

24. Are You seeking damages or other monetary relief based in whole or in part on personal injury to any individual(s)?

_____ Yes _____ No

**If Yes,** identify each individual and the alleged personal injury:

_____

_____

_____

_____

25. Are You seeking injunctive relief?

_____ Yes _____ No

**If Yes,** identify each category of injunctive relief that you seek. This request is not designed to require an expert evaluation.

_____

_____

_____

_____

26. Are You seeking abatement?

_____ Yes _____ No

**If Yes,** identify each category of abatement that you seek. This request is not designed to require an expert evaluation.

_____

_____

_____

_____

# EXHIBIT 1

27. Identify the approximate date (*i.e.*, month and year) when You claim You were first injured and began to incur damages as a result of Defendants' alleged conduct. This request is not designed to require an expert evaluation.

_____

_____

28. Have You been involved in any e-cigarette or vaping related lawsuit in the past?

_____ Yes _____ No

**If yes**, for each lawsuit, state (1) the court in which the lawsuit was filed; (2) the case name; (3) the civil action or docket number assigned to the lawsuit; and (4) a description of Your involvement or claims in the lawsuit.

_____

_____

_____

_____

## V.  VAPING AND E-CIGARETTE RELATED SERVICES AND PROGRAMS

29. Have You enacted any legislation or regulations relating to or designed to limit youth use of e-cigarettes from 2012 – present?

_____ Yes _____ No

**If yes**, identify the legislation's or regulation's name, topic, and the date it was enacted.

_____

_____

_____

30. Have You formed or participated in any task force, other program, or group to address any issue related to vaping or e-cigarettes from 2012 – present?

_____ Yes _____ No

**If yes**, identify the program's name and the date it was formed.

_____

_____

## EXHIBIT 1

_____

31. Have You provided any vaping or e-cigarette prevention or education classes or programs in Your city/county from 2012 – present?

_____ Yes _____ No

**If yes**, identify the program's name and the dates it was in existence.

_____

_____

_____

32. Have You provided any vaping prevention or education materials to organizations or individuals in Your city/county from 2012 – present?

_____ Yes _____ No

**If yes**, identify the date of utilization for each set of materials.

_____

_____

33. Have You provided any vaping or e-cigarette cessation classes or programs in Your city/county from 2012 – present?

_____ Yes _____ No

**If yes**, identify the program's name and the dates it was in existence.

_____

_____

_____

34. Have You engaged in any enforcement actions relating to the purchase or use of vaping or e-cigarette products by underage users in Your city/county?

_____ Yes _____ No

**If yes**, identify the enforcement program and, to the extent they are available in the ordinary course of business, provide anonymized reports summarizing said enforcement activity from 2012 – present.

_____

_____

**EXHIBIT 1**

_____

35. Have You received any grant, donation, or other funding designated for or allocated to addressing issues relating to vaping or e-cigarettes from 2012 – present?

_____ Yes _____ No

**If yes**, provide a general description of grant/donation/funding.

_____

_____

_____

36. Generally describe Your efforts, if any, to limit youth access to e-cigarettes or vaping products in Your city/county from 2012 – present.

_____

_____

_____

## VI.   REPORTS AND INFORMATION RELATING TO E-CIGARETTES, TOBACCO, ALCOHOL, DRUGS, AND OTHER ILLICIT SUBSTANCES

37. Do You possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of or describes the prevalence of vaping or e-cigarette use by youth in Your city/county?

_____ Yes _____ No

**If yes,** please provide a copy of any such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business, and without identifying any youth-specific data, from 2012 – present.

_____

_____

_____

38. Do You possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of or describes the prevalence of tobacco or nicotine products use by youth in Your city/county?

_____ Yes _____ No

## EXHIBIT 1

**If yes,** please provide a copy of any such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business, and without identifying any youth-specific data, from 2012 – present.

_____

_____

_____

39. Generally describe Your efforts, if any, to limit youth access to tobacco or nicotine products in Your city/county from 2012 – present.

_____

_____

_____

_____

_____

40. Do You possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of or describes the prevalence of alcohol use by youth in Your city/county?

_____ Yes _____ No

**If yes,** please provide a copy of any such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business, and without identifying any youth-specific data, from 2012 – present.

_____

_____

_____

41. Generally describe Your efforts, if any, to limit youth access to alcohol in Your city/county from 2012 – present.

_____

_____

_____

_____

_____

**EXHIBIT 1**

42. Do You possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of or describes the prevalence of drug use by youth in Your city/county?

_____ Yes _____ No

**If yes,** please provide a copy of any such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business, and without identifying any youth-specific data, from 2012 – present.

_____

_____

_____

43. Generally describe Your efforts, if any, to limit youth access to drugs in Your city/county from 2012 – present.

_____

_____

_____

_____

_____

44. Do You possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of or describes the prevalence of use by youth in Your city/county of other illicit substances?

_____ Yes _____ No

**If yes,** please provide a copy of any such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business, and without identifying any youth-specific data, from 2012 – present.

_____

_____

_____

45. Generally describe Your efforts, if any, to limit youth access to other illicit substances in Your city/county from 2012 – present.

_____

_____

_____

## <u>EXHIBIT 1</u>

46. Do You possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of or describes expenditures that You made to address youth use of vaping or e-cigarettes in Your city/county?

___ Yes   ___No

**If yes,** please produce a copy of such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business from 2012 – present.

_____

_____

_____

47. Do You possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of or describes expenditures that You made to address youth use of tobacco or nicotine products in Your city/county?

___ Yes   ___No

**If yes,** please produce a copy of such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business from 2012 – present.

_____

_____

_____

48. Do You possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of or describes expenditures that You made to address youth use of alcohol in Your city/county?

___ Yes   ___No

**If yes,** please produce a copy of such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business from 2012 – present.

_____

_____

_____

## EXHIBIT 1

49. Do You possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of or describes expenditures that You made to address youth use of drugs in Your city/county?

____ Yes   ____No

**If yes,** please produce a copy of such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business from 2012 – present.

_____

_____

_____

50. Do You possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of or describes expenditures that You made to address youth use of other illicit substances in Your city/county?

____ Yes   ____No

**If yes,** please produce a copy of such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business from 2012 – present.

_____

_____

_____

## CERTIFICATION

I declare under penalty of perjury that all of the information provided in this Plaintiff Fact Sheet is complete, true, and correct to the best of my knowledge and information, and that I have provided all of the requested documents that are reasonably accessible to me and/or my attorneys, to the best of my knowledge

_____         _____
Signature                                                          Date

_____         _____
Name (Printed)                                                  Title

**EXHIBIT 2**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2913<br>Case No. 19-md-02913-WHO |
| This document relates to:<br><br>ALL ACTIONS | |

## PLAINTIFF FACT SHEET – SCHOOL DISTRICTS

Please provide the following information for each school district plaintiff that has filed a complaint in the *In Re Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 13-2913. In completing this Plaintiff Fact Sheet (PFS), you are under oath and must provide information that is true and correct to the best of your knowledge, information and belief. Please do not leave any questions unanswered or blank. If you are filling out this Fact Sheet in hard copy, use additional sheets as needed to fully respond.

You may and should consult with your attorney if you have any questions regarding the completion of this form.

*This Plaintiff Fact Sheet constitutes discovery responses subject to the Federal Rules of Civil Procedure. Information provided will only be used for purposes related to this litigation and may be disclosed only as permitted by the Protective Order.*

## INSTRUCTIONS:

1. "You" and "Your" as used throughout this PFS means each school district Plaintiff named in this action.

2. As used throughout this PFS and consistent with the Court's October 9, 2020 Order (Docket No. 1038), "any existing report, survey, analysis, study, or other document that tracks or otherwise provides an overview of" the issues addressed by the particular question (for example, the prevalence of use of tobacco or nicotine products, vaping or e-cigarettes, alcohol, drugs, other illicit substances, and expenditures made to address the use of these products or substances) means information that has already been compiled. If these types of documents exist, they should be produced. That already compiled information is only available or stored via email is not a reason for it not to be produced. Each Plaintiff should diligently investigate whether it has compiled in any form the information sought. This investigation might involve a district employee asking an appropriate person at each school to provide the district with a document/report that has already compiled information. However, if information has not been compiled or summarized on these topics it does not need to be located, described or produced (i.e., You are not required to locate, compile, sort, describe or

1

## EXHIBIT 2

produce underlying records that might show, for example, the prevalence of use or expenses incurred to address these products or substances).

3. Please attach additional pages where necessary.

**I. CASE INFORMATION**

1. Plaintiff:_____

2. Case name:_____

3. Case number:_____

4. Name of the court in which the complaint was initially filed:

   _____

5. Filing date of the complaint:_____

6. Named defendant(s) in the complaint:

   _____

   _____

7. Name, firm, and e-mail address of principal attorney(s) representing You:

   Name:_____

   Firm: _____

   Email address:_____

**II. SCHOOL DISTRICT DATA**

8. Total number of schools in Plaintiff's district:_____

9. Number of high schools in Plaintiff's district:_____

10. Number of middle schools in Plaintiff's district:_____

11. Number of elementary schools in Plaintiff's district:_____

12. Total number of students in Plaintiff's district: _____

13. In any of the past 10 (ten) years has the total number of students in Plaintiff's district been 20% more or 20% less than the figure reported in Question No. 12?

    ___ Yes    ___ No

## EXHIBIT 2

**If yes,** please state the total number of students within Plaintiff's district for each such year, or if that information isn't reasonably available, give a description of the approximate student population change over the last 10 years.

_____

_____

_____

_____

14. Have You or any schools in Your district had any communications or interactions with any of the Defendants for any reason, including in connection with anti-smoking programs or youth vaping programs?

_____ Yes _____ No

**If yes,** for each communication or interaction, state (1) the date the communication or interaction occurred; (2) the nature of the communication or interaction; and (3) summarize Your portion of the communication.

_____

_____

_____

## III.    PERSONS WITH RELEVANT KNOWLEDGE

15. Please identify the person(s) who held the following position(s) or their equivalent in Plaintiff's District, since 2012:

    a.   Superintendent(s):

_____

_____

_____

    b.   Vice or Assistant Superintendent(s):

_____

_____

_____

16. Please identify the person(s) in Plaintiff's district most knowledgeable about student use on school property of tobacco or nicotine products, e-cigarettes and vaping

**EXHIBIT 2**

products, alcohol, drugs, or other illicit substances, and the impact of such use on Plaintiff's district, from 2012 – present.

_____

_____

_____

IV.   **DAMAGES**

17. Please state generally in what way or how You claim You have been damaged by Defendants' alleged acts at issue in this lawsuit.

_____

_____

_____

_____

18. Are You seeking any monetary damages?

_____ Yes _____ No

**If Yes,** identify each category of damages or monetary relief that You allege. This request is not designed to require an expert evaluation.

_____

_____

_____

_____

19. Are You seeking damages or other monetary relief based in whole or in part on personal injury to any individual(s)?

_____ Yes _____ No

**If Yes,** identify each individual and the alleged personal injury:

_____

_____

_____

_____

**EXHIBIT 2**

20. Are You seeking injunctive relief?

_____ Yes _____ No

**If Yes,** identify each category of injunctive relief that you seek. This request is not designed to require an expert evaluation:

_____

_____

_____

_____

21. Are You seeking abatement?

_____ Yes _____ No

**If Yes,** identify each category of abatement that You seek. This request is not designed to require an expert evaluation:

_____

_____

_____

_____

22. Identify the approximate date (*i.e.*, month and year) when You claim You were first injured and began to incur damages as a result of Defendants' alleged conduct. This request is not designed to require an expert evaluation.

_____

23. Have You been involved in any e-cigarette or vaping related lawsuit in the past?

_____ Yes _____ No

**If yes**, for each lawsuit, state (1) the court in which the lawsuit was filed; (2) the case name; (3) the civil action or docket number assigned to the lawsuit; and (4) a description of your involvement or claims in the lawsuit.

_____

_____

**V.     VAPING AND E-CIGARETTE RELATED SERVICES AND PROGRAMS**

24. Have You formed or participated in any task force, other program, or group to address any issue related to vaping or e-cigarettes from 2012 – present?

## EXHIBIT 2

_____ Yes _____ No

**If yes**, identify the name of any such program(s) and the date of formation:

_____

_____

_____

25. Have You provided any vaping or e-cigarette prevention or education classes or programs in Your schools from 2012 – present?

_____ Yes _____ No

**If yes**, identify the program's name and the dates it was in existence:

_____

_____

_____

26. Have You provided any vaping or e-cigarette cessation classes or programs in Your schools from 2012 – present?

_____ Yes _____ No

**If yes**, identify the program's name and the dates it was in existence:

_____

_____

_____

27. Have You received any grant, donation, or other funding designated for or allocated to addressing issues relating to vaping or e-cigarettes from 2012 – present?

_____ Yes _____ No

**If yes**, provide a general description of grant/donation/funding.

_____

_____

_____

28. Generally describe your efforts, if any, to limit student access to e-cigarettes or vaping products while on school property from 2012 – present.

**EXHIBIT 2**

_____

_____

_____

## VI.     POLICIES AND REPORTS RELATING TO E-CIGARETTES, TOBACCO, ALCOHOL, DRUGS, AND OTHER ILLICIT SUBSTANCES

29. Do You possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of or describes the prevalence of tobacco or nicotine products use in Your district?

    _____ Yes _____ No

    **If yes,** please provide a copy of any such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business, and without identifying any student-specific data, from 2012 – present.

    _____

    _____

    _____

30. Do You possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of or describes the prevalence of vaping or e-cigarette use in Your district?

    _____ Yes _____ No

    **If yes,** please provide a copy of any such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business, and without identifying any student-specific data, from 2012 – present.

    _____

    _____

    _____

31. Do You possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of or describes the prevalence of alcohol use in Your district?

    _____ Yes _____ No

    **If yes,** please provide a copy of any such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business, and without identifying any student-specific data, from 2012 – present.

**EXHIBIT 2**

_____

_____

_____


32. Do You possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of or describes the prevalence of drug use in Your district?

_____ Yes _____ No

**If yes,** please provide a copy of any such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business, and without identifying any student-specific data, from 2012 – present.

_____

_____

_____


33. Do You possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of or describes the prevalence of use of other illicit substances in Your district?

_____ Yes _____ No

**If yes,** please provide a copy of any such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business, and without identifying any student-specific data, from 2012 – present.

_____

_____

_____


34. Do You possess any disciplinary codes, policies or codes of conduct that address use of tobacco or nicotine products e-cigarette or vaping products, alcohol, drugs, or other illicit substances?

_____ Yes _____ No

**If yes**, please attach copies of the relevant codes or policies from 2012 – present.

## EXHIBIT 2

_____

_____

_____

35. Do You possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of interventions, discipline or other consequences imposed on students for using tobacco or nicotine products on school premises?

_____ Yes _____ No

**If yes**, please produce a copy of any such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business, and without identifying any student-specific data, from 2012 – present.

_____

_____

_____

36. Generally describe Your efforts, if any, to limit use of tobacco or nicotine products in the schools in Your district from 2012-present.

_____

_____

_____

37. Do You possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of interventions, discipline or other consequences imposed on students for using e-cigarette or vaping products on school premises?

_____ Yes _____ No

**If yes,** please produce a copy of any such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business, and without identifying any student-specific data, from 2012 – present.

_____

_____

_____

## EXHIBIT 2

38. Generally describe Your efforts, if any, to limit use of e-cigarette or vaping products in the schools in Your district from 2012 – present.

_____

_____

_____

39. Do You possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of interventions, discipline or other consequences imposed on students for using alcohol on school premises?

_____ Yes _____ No

**If yes,** please produce a copy of any such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business, and without identifying any student-specific data, from 2012 – present.

_____

_____

_____

40. Generally describe Your efforts, if any, to limit use of alcohol in the schools in Your district from 2012 – present.

_____

_____

_____

41. Do You possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of interventions, discipline or other consequences imposed on students for using drugs on school premises?

_____ Yes _____ No

**If yes,** please produce a copy of any such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business, and without identifying any student-specific data, from 2012 – present.

**EXHIBIT 2**

_____

_____

_____

42. Generally describe Your efforts, if any, to limit use of drugs in the schools in Your district from 2012 – present.

_____

_____

_____

43. Do You possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of interventions, discipline or other consequences imposed on students for using other illicit substances on school premises?

_____ Yes _____ No

**If yes,** please produce a copy of any such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business, and without identifying any student-specific data, from 2012 – present.

_____

_____

_____

44. Generally describe Your efforts, if any, to limit youth use of other illicit substances in the schools in Your district from 2012 – present.

_____

_____

_____

45. Do You possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of or describes expenditures that You made to address use of tobacco or nicotine products in Your district?

___ Yes ___No

**If yes,** please produce a copy of such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business from 2012 – present.

11

**EXHIBIT 2**

_____

_____

_____

46. Do you possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of or describes expenditures that You made to address use of vaping or e-cigarettes in Your district?

____ Yes ____No

**If yes,** please produce a copy of such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business from 2012 – present.

_____

_____

_____

47. Do you possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of or describes expenditures that You made to address use of alcohol in Your district?

____ Yes ____No

**If yes,** please produce a copy of such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business from 2012 – present.

_____

_____

_____

48. Do you possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of or describes expenditures that You made to address use of drugs in Your district?

____ Yes ____No

**If yes,** please produce a copy of such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business from 2012 – present.

_____

_____

_____

**EXHIBIT 2**

49. Do you possess any existing report, survey, analysis, study or other document that tracks or otherwise provides an overview of or describes expenditures that You made to address use of other illicit substances in Your district?

___ Yes ___No

**If yes,** please produce a copy of such reports, surveys, analyses, studies, or other documents as they are kept in the ordinary course of business from 2012 – present.

_____

_____

_____

**CERTIFICATION**

I declare under penalty of perjury that all of the information provided in this Plaintiff Fact Sheet is complete, true, and correct to the best of my knowledge and information, and that I have provided all of the requested documents that are reasonably accessible to me and/or my attorneys, to the best of my knowledge

_____          _____
Signature                                                      Date

_____          _____
Name (Printed)                                            Title

# EXHIBIT 9

*[Submitting Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICS, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>GOVERNMENT ENTITY CASES | No. 19-cv-2913-WHO<br><br>**STIPULATION AND [~~PROPOSED~~] ORDER TO EXTEND DEADLINES REGARDING GOVERNMENT ENTITY BELLWETHER SELECTION** |

No. 19-md-2913-WHO

45997906.1

The parties jointly stipulate and agree, subject to the Court's approval, to a modest extension of certain of Plaintiffs' deadlines regarding bellwether selection for the government entity cases.

WHEREAS, on September 9, 2020, the Court entered the Order Regarding Bellwether Selection and Case/Trial Schedule (ECF 938);

WHEREAS, on October 21, 2020, the Parties submitted a Proposed Government Entity and School District Fact Sheet Implementation Order (ECF 1072) proposing deadlines for the submission of Plaintiff Fact Sheets (PFS) by government entity plaintiffs;

WHEREAS, the close of the government entity bellwether trial pool (complaints must be on file and PFS must be completed for all potential government entity bellwether trial candidates) was initially set for November 16, 2020;

WHEREAS, the parties have been meeting and conferring regarding the procedures for selecting bellwether nominees, and have reached agreement on certain parameters and are continuing the meet and confer process, with the goal of either reaching an agreed upon procedure or narrowing the areas of dispute for resolution by the Court;

WHEREAS, the deadline to submit agreed or competing government entity bellwether nominees is December 15, 2020;

WHEREAS, the parties have conferred regarding a modest extension for these deadlines; and

WHEREAS, Defendants do not oppose Plaintiffs' request to extend the deadlines from November 16, 2020 to December 21, 2020 and from December 15, 2020 to January 20, 2021, respectively,

**NOW THEREFORE**, the parties, through their undersigned counsel, hereby stipulate and agree and respectfully request that the Court enter an Order adopting the following revised bellwether selection for Government Entities only:

No. 19-md-2913-WHO

45997906.1

STIPULATION AND [~~PROPOSED~~]
ORDER TO EXTEND DEADLINES RE
GOVERNMENT ENTITY
BELLWETHER SELECTION

The deadline for the close of the government entity bellwether trial pool is December 21, 2020, that is, only complaints on file in this judicial district and entered on the MDL 2913 docket or transferred by the JPML to MDL 2913 on or before December 21, 2020 shall be eligible for inclusion in the pool. The government entity bellwether trial pool will be comprised of a total of 12 county and school district cases from the eligible complaints. Half of this pool shall be selected by Defendants and half of the pool shall be selected by Plaintiffs. The discovery, trial preparation, and trial deadlines and dates for the cases in this pool shall be sequenced in a manner to be agreed to by the Parties and approved by the Court, or as ordered by the Court, with the pool divided into at least two subgroups for which the dates and deadlines for discovery, trial preparation, and trial shall be separated by at least nine months. The dates for the first group will be consistent with the current case schedule.

While the government entity plaintiff in each such bellwether case shall use its best efforts to have its PFS served and filed on or before December 21, 2020, the absence of a completed fact sheet will not preclude an otherwise eligible government entity plaintiff from being put forward by a party for inclusion in the bellwether pool.

The deadline to submit agreed or competing government entity bellwether nominees is January 20, 2021.

**PURSUANT TO STIPULATION AND GOOD CAUSE SHOWING, IT IS SO ORDERED:**

The deadline for the government entity cases only for the close of the government entity bellwether trial pool is December 21, 2020, as set forth above, and the deadline to submit agreed or competing government entity bellwether nominees is January 20, 2021.

Dated: November 20, 2020

_____
HONORABLE WILLIAM H. ORRICK
United States District Judge

No. 19-md-2913-WHO

STIPULATION AND [~~PROPOSED~~]
ORDER TO EXTEND DEADLINES RE
GOVERNMENT ENTITY
BELLWETHER SELECTION

45997906.1

RESPECTFULLY SUBMITTED this 20th day of November, 2020.

By: */s/ Gregory P. Stone*

Renee D. Smith
Mike Brock
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2310


Gregory P. Stone
Bethany W. Kristovich
MUNGER, TOLLES & OLSON LLP
350 South Gran Ave., 50th Floor
Los Angeles, CA 90071
Telephone: (213) 683-9100

**Attorneys for Defendant JUUL Labs, Inc.**

By: */s/ John C. Massaro*

John C. Massaro
Jason A. Ross
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 942-5000


**Attorneys for Defendants Altria Group, Inc.
and Philip Morris USA Inc.**

By: */s/ James Thompson*

James Thompson
James N. Kramer
Walt Brown
ORRICK HERRINGTON & SUTCLIFFE
LLP
The Orrick Building
405 Howard Street
San Francisco CA  94105
Telephone: 415.773.5923


**Attorneys for Defendant James Monsees**

By: */s/ Dean Kawamoto*

Dean Kawamoto
KELLER ROHRBACK L.L.P.
1201 Third Ave., Ste. 3200
Seattle, WA 98101
Telephone: (206) 623-1900


By: */s/ Sarah R. London*

Sarah R. London
LIEFF CABRASER HEIMANN &
BERNSTEIN
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone: (415) 956-1000


By: */s/ Dena C. Sharp*

Dena C. Sharp
GIRARD SHARP LLP
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800


By: */s/ Ellen Relkin*

Ellen Relkin
WEITZ & LUXENBERG
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500


**Co-Lead Counsel for Plaintiffs**

No. 19-md-2913-WHO

STIPULATION AND [~~PROPOSED~~]
ORDER TO EXTEND DEADLINES RE
GOVERNMENT ENTITY
BELLWETHER SELECTION

45997906.1

By: /s/ Eugene Illovsky
Eugene Illovsky
Martha Boersch
Matthew Dirkes
BOERSCH & ILLOVSKY LLP
1611 Telegraph Ave., Suite 806
Oakland, CA 94612
Telephone: (415) 500-6643

**Attorneys for Defendant Adam Bowen**

By: /s/ Michael J. Guzman
Michael J. Guzman
KELLOGG, HANSEN, TODD, FIGEL &
FREDERICK, P.L.L.C.
Sumner Square, 1615 M St., N.W., Suite 400
Washington, DC 20036
Telephone: (202) 326-7910

Karl Belgum
NIXON PEABODY LLP
One Embarcadero Center, 32nd Floor
San Francisco, CA 94111
Telephone: (415) 984-8409

**Attorneys for Defendants Nicholas Pritzker,
Riaz Valani, and Hoyoung Huh**

## ATTORNEY ATTESTATION

I, Dean N. Kawamoto, hereby attest that concurrence in the filing of this document has

been obtained from the above signatories.

/s/ Dean N. Kawamoto
Dean N. Kawamoto

No. 19-md-2913-WHO

STIPULATION AND [~~PROPOSED~~]
ORDER TO EXTEND DEADLINES RE
GOVERNMENT ENTITY
BELLWETHER SELECTION

45997906.1

## CERTIFICATE OF SERVICE

I, Dean N. Kawamoto, hereby certify that on November 20, 2020, I electronically filed **STIPULATION AND [PROPOSED] ORDER TO EXTEND DEADLINES RE GOVERNMENT ENTITY BELLWETHER SELECTION** with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

*/s/ Dean N. Kawamoto*
Dean N. Kawamoto

STIPULATION AND [~~PROPOSED~~]
ORDER TO EXTEND DEADLINES RE
GOVERNMENT ENTITY
BELLWETHER SELECTION

45997906.1

# EXHIBIT 10

2:18-mn-02873-RMG    Date Filed 08/07/19    Entry Number 205    Page 1 of 61
Case 2:23-md-03080-BRM-RLS    Document 270-1    Filed 08/30/24    Page 117 of 198 PageID:
8454

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) ) | MDL No. 2:18-mn-2873-RMG<br><br>**CASE MANAGEMENT ORDER NO. 5**<br><br>**This Order Relates to All Actions.** |

<u>**Applicability and Scope of Order**</u>

1.      The Court hereby issues the following Case Management Order ("CMO") to govern the form, procedure, and schedule for the completion and service of Plaintiff Fact Sheets ("PFS") and Defense Fact Sheets ("DFS") and the execution of authorizations for the release of certain records in the specified cases set forth below.

2.      This Order applies to (a) all actions transferred to In Re: Aqueous Film-Forming Foams (AFFF) Products Liability Litigation ("MDL 2873") by the Judicial Panel on Multidistrict Litigation ("JPML") pursuant to its Order of December 7, 2018; (b) all related actions originally filed in or removed to this Court; and (c) any "tag-along" actions transferred to this Court by the JPML pursuant to Rules 6.2 and 7.1 of the Rules of Procedure of the Panel, subsequent to the filing of the final transfer order by the Clerk of this Court (collectively, "Member Actions").

3.      All information disclosed on any PFS, the PFS itself, and all related documents (including health care records and information) produced therewith or pursuant to an executed authorization or any supplements shall be treated as responses to Interrogatories under Fed. R. Civ. P. 33 and can be used for any purpose and in any manner that answers to interrogatories can be used pursuant to the Federal Rules of Civil Procedure, subject to the confidentiality provisions of

Paragraph 4. A Defendant's responses to questions in the DFS or any supplements shall be treated as responses to Interrogatories under Fed. R. Civ. P 33 and can be used for any purpose and in any manner that answers to interrogatories can be used pursuant to the Federal Rules of Civil Procedure, subject to the confidentiality provisions of Paragraph 4.

4.    All information disclosed on a DFS or PFS, the DFS and PFS itself, and all related documents (including health care records and information) produced therewith or pursuant to an executed authorization shall be treated as marked confidential and treated as "Confidential Information" pursuant to the terms of the Protective Order, except that any documents specifically designated as "Highly Confidential Information" shall be treated as such pursuant to the Protective Order.

5.    Unless otherwise agreed by the parties, there shall be no additional discovery propounded on plaintiffs required to respond to a PFS, including depositions of plaintiffs, until cases have been selected for further proceedings by further Order of this Court. This limitation on discovery does not limit the requirement that Plaintiffs supplement PFS responses and does not limit or restrict requests for supplemental or additional authorizations consistent with this Order. Defendants are still assessing the discovery that they intend to serve on State or sovereign plaintiffs who have brought suit, and Defendants may elect to utilize a form of Fact Sheet or traditional discovery (interrogatories and document demands under Fed. R. Civ. P. 33 and 34, respectively). The parties will continue to meet and confer on this issue with the State or sovereign Plaintiffs reserving all rights to oppose. The State/Sovereign Plaintiffs are still assessing the discovery that they intend to serve on Defendants, and the State/Sovereign Plaintiffs may elect to utilize a form of Fact Sheet or traditional discovery (interrogatories and document demands under Fed. R. Civ. P. 33 and 34, respectively). The parties will continue to meet and confer on this issue with the

2:18-mn-02873-RMG    Date Filed 08/07/19    Entry Number 205    Page 3 of 61
Case 2:23-md-03080-BRM-RLS    Document 270-1    Filed 08/30/24    Page 119 of 198 PageID:
8456

Defendants reserving all rights to oppose. In addition, the PEC has determined to address discovery of the federal government entities/agencies separately from the DFS process set forth herein and thus the federal government entities are not required to respond to DFS set forth in this Order. Further, this paragraph does not otherwise apply to the federal government entities/agencies.

<u>**Plaintiff Fact Sheets**</u>

6.    The form PFSs that shall be used in MDL 2873 and all Member Actions (except for those in paragraph 5, above) are attached hereto as Exhibits 1, 2, 3, and 8.

  a.    Exhibit 1 is a Plaintiff Fact Sheet intended for individual Plaintiffs asserting personal injury claims;

  b.    Exhibit 2 is a Plaintiff Fact Sheet intended for individual Plaintiffs asserting property damage claims;

  c.    Exhibit 3 is a Plaintiff Fact Sheet intended for individual Plaintiffs asserting medical monitoring claims only; and

  d.    Exhibit 8 is a Plaintiff Fact Sheet intended for Plaintiff water authorities, districts, or other water suppliers and for any municipality or other local or county government pursuing claims related to alleged contamination of water supplies within or impacting their jurisdictions, as well as for other Plaintiffs, but only to the extent they represent the interests of such entities in Member Actions.

7.    In accordance with the schedule set forth below, every Plaintiff, except as provided in Paragraph 5, shall:

  a.    Complete and sign the appropriate PFS;

3

2:18-mn-02873-RMG    Date Filed 08/07/19    Entry Number 205    Page 4 of 61
Case 2:23-md-03080-BRM-RLS    Document 270-1    Filed 08/30/24    Page 120 of 198 PageID:
8457

    b.    Serve the completed PFS upon Liaison Counsel for Defendants and the PEC designee in the manner described in the "Service" Section below;

    c.    Produce to Liaison Counsel for Defendants all responsive, non-privileged documents in his, her, or its possession, custody, or control that are requested in the PFS; and

    d.    For individual Plaintiffs, provide duly executed Records Authorizations referenced below.

8.    **Additional PFS For New or Amended Claims:**  If an Individual Plaintiff seeks to add a new personal injury claim, a new property damage claim, or a new medical monitoring claim or seeks to amend his or her Complaint in such a manner that would otherwise make an additional PFS applicable, that Plaintiff must complete the applicable PFS as otherwise required by this Order.

9.    **Substantial Completion of PFS:**  In completing the PFS, every Plaintiff is required to provide Defendants with a PFS that is substantially complete in all respects.  For a PFS to be "substantially complete in all respects," the responding Plaintiff shall endeavor to answer every question contained in the PFS to the best of his, her, or its ability and leave no blanks, even if the Plaintiff can only answer the question in good faith by indicating "not applicable," "N/A," or "I don't know" or similar words.

10.    **Continuing Duty to Supplement:**  Each Plaintiff shall remain under a continuing duty to supplement the information provided in his, her, or its PFS throughout the litigation, in a manner consistent with the provisions of Fed. R. Civ. P. 26(e).

11.    The questions in the PFS shall be answered without objection.

2:18-mn-02873-RMG    Date Filed 08/07/19    Entry Number 205    Page 5 of 61
Case 2:23-md-03080-BRM-RLS    Document 270-1    Filed 08/30/24    Page 121 of 198 PageID:
8458

### Plaintiff Fact Sheet Deficiency Dispute Resolution Process

#### Deficient PFS

12.  **Phase I: Deficiency Letter**

    a.    If a Defendant deems a PFS deficient, Defendants' Liaison Counsel shall notify Plaintiff's attorney of record (identified in the PFS) of the purported deficiencies in writing via email and allow such Plaintiff twenty-eight (28) days to respond to the alleged deficiency, and to the extent Plaintiff disagrees and/or objects to any alleged deficiency, Plaintiff shall so advise Defendants no later than the expiration of the 28 day period to respond to any alleged deficiencies.

    b.    Defendants' Liaison Counsel's email communication shall identify the case name, docket number, and the deadline for a response and include sufficient detail regarding the alleged deficiency(ies), and a courtesy copy of the email shall be sent via email to the PEC's designee at AFFF-MDL.PFS.deficiency@DouglasAndLondon.com.

    c.    To the extent Defendants seek further clarification of Plaintiff's response to any alleged deficiency, Defendants shall seek a meet and confer, and Plaintiff and Defendants shall meet and confer within the fourteen (14) days of Plaintiff's communication of any disputes with respect to any alleged deficiencies.

13.  **Phase II: Motion to Compel**

    a.    Following the meet and confer period, should the Plaintiff: (i) fail to cure the alleged stated deficiency(ies); (ii) fail to assert objections to same; (iii) fail to respond to or participate in the meet and confer process; or (iv) otherwise fail to provide responses (including the requested documents and/or signatures), and absent agreement of the parties to further extend the period for meeting and conferring, at any time following expiration of the fourteen (14) day

2:18-mn-02873-RMG    Date Filed 08/07/19    Entry Number 205    Page 6 of 61
Case 2:23-md-03080-BRM-RLS    Document 270-1    Filed 08/30/24    Page 122 of 198 PageID:
8459

meet and confer period, Defendant may then file a Motion to Compel the allegedly deficient discovery information.

b.    Any such Motion to Compel filing shall be via ECF, with a courtesy copy via email to Plaintiff's attorney of record and via email to the PEC's designee at AFFF-MDL.PFS.MotionCompel@DouglasAndLondon.com.

c.    Any motion to compel pursuant to this CMO need not be noticed for presentment as required by Local Rule 7.1.

d.    Any response to such a motion shall be filed and served within fourteen (14) days following the date of service.  Reply Briefs are discouraged per Local Rule 7.07, but any reply shall be filed and served within seven (7) days following the date of service of the response.

e.    Absent an Order from the Court granting a request by either or both parties for oral argument, the Court will rule on such motions without hearing argument.

**Failure to Serve an Executed PFS**

14.    Each Plaintiff may request one extension of twenty-one (21) days to serve a completed PFS, which Defendants shall not unreasonably withhold.  Such requests must be made in writing via email to Defendants' Liaison Counsel before the expiration of the deadline, with a courtesy copy the PEC's designee at AFFF-MDL.PFS.extension@DouglasAndLondon.com.

15.    **Phase I: Notice of Non-Compliance.** Should any Plaintiff fail to serve an executed PFS within the time required in this CMO or any extension that was granted, Defendant(s) shall send a Notice of Non-Compliance letter via email to that Plaintiff's attorney of record, with a courtesy copy via email the PEC's designee at AFFF-MDL.PFS.noncompliance@DouglasAndLondon.com.  The Notice of Non-Compliance shall specify a fourteen (14) day period in which Plaintiff shall (1) tender an executed and completed

6

2:18-mn-02873-RMG    Date Filed 08/07/19    Entry Number 205    Page 7 of 61
Case 2:23-md-03080-BRM-RLS    Document 270-1    Filed 08/30/24    Page 123 of 198 PageID:
8460

PFS, (2) if he or she has in fact tendered an executed fact sheet, inform the Defendant of the date on which it was served, or (3) meet and confer with Defendants regarding any claimed good cause for failure to do so within the time required.

16.    **Phase II: Motion for Dismissal**

a.    Following delivery of the Notice of Non-Compliance and expiration of the fourteen (14) day period identified in Paragraph 15, Defendant(s) may immediately move the Court to dismiss the cases on the list without prejudice subject to reinstatement if the Plaintiff serves a completed PFS as further described in Paragraphs 22-26 below or on such terms as the Court may otherwise impose, with a courtesy copy via email to Plaintiff's attorney of record and via email to the PEC's designee at AFFF-MDL.PFS.noncompliance.motion@DouglasAndLondon.com. Defendant shall have the right, but not the obligation, to group multiple delinquent PFS recipients in a single motion to dismiss grouped by the pertinent Plaintiff's law firm.

b.    Any motion to dismiss pursuant to this CMO need not be noticed for presentment as required by Local Rule 7.1.

c.    Any response to such a motion shall be filed and served within fourteen (14) days following the date of service. Failure to tender a completed PFS as required by this Order within the time provided for the response shall result in dismissal of the Plaintiff's complaint without prejudice absent further Order of the Court. On good cause shown, and with completed PFS tendered with a motion, a plaintiff may move to reinstate a dismissed claim within fourteen (14) days of a dismissal.

d.    Absent an Order from the Court granting a request by either or both parties for oral argument, the Court will rule on such motions without hearing argument.

2:18-mn-02873-RMG    Date Filed 08/07/19    Entry Number 205    Page 8 of 61
Case 2:23-md-03080-BRM-RLS    Document 270-1    Filed 08/30/24    Page 124 of 198 PageID:
8461

## Records Authorizations for Individual Plaintiffs

17.    **Medical Authorizations - Non-Mental Health:**  Each Plaintiff who completes an Individual Plaintiff Personal Injury Fact Sheet in accordance with the preceding paragraphs of this Order shall also serve an original signed Authorization to Release Health Information for each (non-mental health) medical provider (including insurers and pharmacies) listed in the PFS.  The Health Information Authorization that shall be used is attached hereto as Exhibit 4 and shall be served on Defendants' Liaison Counsel in accordance with the provisions of this Order.

18.    **Medical Authorizations - Mental Health:**  Each Plaintiff who completes an Individual Plaintiff Personal Injury Fact Sheet PFS in accordance with the preceding paragraphs of this Order and who (a) also asserts or alleges a psychiatric injury, condition, or other type of mental health damage, and (b) has undergone specific medical treatment or counseling related to such injury or a similar injury, condition, or damage shall, in addition to the above-referenced Medical Authorization–Non-Mental Health, serve an original signed Mental Health Records Authorization from each mental health care provider identified in the PFS related to such claimed condition, treatment, and/or damage.  The Mental Health Records Authorizations that Plaintiffs shall complete in such cases is attached as Exhibit 5 and shall be served on Defendants' Liaison Counsel in accordance with the provisions of this Order.

19.    **Water Company/Utility Records Authorizations:**  Each Plaintiff who completes any PFS identified in Exhibits 1, 2, or 3 hereto (i.e., Individual Personal Injury, Individual Property Damage, or Individual Medical Monitoring) shall also serve an Authorization for Release of Customer Records as to each water provider listed in the PFS.  The Water Company/Utility Records Authorization to be used is attached hereto as Exhibit 6 and shall be served on Defendants' Liaison Counsel in accordance with the provisions of this Order.

## Additional Records Authorizations

20.    **"Special" Authorizations:**  If any health care provider or other custodian of records:  (a) requires a specific form of authorization that is different than the authorizations referenced in and attached to this Order; (b) requires an updated or more recently-executed authorization than those already provided by a Plaintiff; (c) requires a notarized authorization; or (d) requires an original signature, then Defendants' Liaison Counsel shall notify Plaintiff's counsel of record of such requirement(s) by email, and the referenced Plaintiff shall, within twenty one (21) days of such notice having been given, either serve an executed authorization or object in writing.  In the event of an objection, the general reasons must be stated in writing, and the parties shall meet and confer in a good faith effort to resolve such objection(s).  Following such efforts, any remaining disputed issues may be brought before the Court for resolution in accordance with Paragraphs 12-13, above regarding Motions to Compel as to deficiencies in PFS responses or as the Court may otherwise direct for resolution of such disputes.

21.    **Requests for Additional Authorizations:**  In the event that any Defendant seeks any additional authorization(s) from any Plaintiff, either (a) as a result of such Defendant having discovered specific medical providers, mental health providers (if applicable), water providers, or other custodians of relevant records that were not previously identified by such Plaintiff; or (b) in order to obtain documents in addition to those for which production is expressly provided in the above-referenced authorizations, Defendants' Liaison Counsel shall submit such additional authorization request(s) to Plaintiff's counsel after which the referenced Plaintiff shall, within twenty one (21) days, either serve an executed authorization or object to the same.  In the event of an objection, the general reasons must be stated in writing, and the parties shall meet and confer in a good faith effort to resolve such objection(s).  Following such efforts, any remaining disputed

issues may be brought before the Court for resolution in accordance with Paragraphs 12-13, above regarding Motions to Compel as to deficiencies in PFS responses or as the Court may otherwise direct for resolution of such disputes.

## Service of PFS

22.    Each Plaintiff in the actions pending in this MDL as of the entry of this Order shall have ninety-eight (98) days from the date of this Order to serve and produce to Defendants' Liaison Counsel a completed PFS, signed and dated authorizations, and all responsive, non-privileged documents requested in the PFS that are in his, her, or its possession, custody, or control.

23.    Each Plaintiff in actions filed in or transferred to this MDL after the entry of this Order shall, within ninety-eight (98) days of the filing or transfer of the case to the MDL, serve and produce to Defendants' Liaison Counsel a completed PFS, signed and dated authorizations, and all responsive, non-privileged documents requested in the PFS that are in his, her, or its possession, custody, or control.

24.    Each Plaintiff who is required to complete an additional PFS pursuant to Paragraph 8 shall, within sixty-three (63) days of the amendment or assertion of a new claim necessitating the additional PFS, serve and produce to Defendants' Liaison Counsel the completed PFS which shall then be subject to the provisions for deficiencies and motions as set forth in this CMO.

25.    Plaintiffs shall serve the completed PFS and authorizations upon Defendants by submitting them via email to afffmdlpfsservice@nelsonmullins.com.  This shall constitute effective service of the PFS upon Defendant(s).  A copy of the completed PFS shall be submitted to the PEC via email at AFFF-MDL.PFS@DouglasAndLondon.com.

26.    The Lead and/or Liaison Counsel for Plaintiffs and Defendants or their respective designees shall meet and confer in a good faith effort to resolve any other disputes not specifically

addressed above regarding the production of documents and/or the completion or service of a PFS and/or authorization(s) or completion and service of any DFS.  After such meet-and-confer efforts have been attempted in good faith, counsel for a party may bring any remaining dispute(s) before the Court via motion practice as set forth in Paragraphs 12-13.

## Defense Fact Sheet

27.     **The Defense Fact Sheet ("DFS") Form:**  The form DFS that shall be used in MDL 2873 and all Member Actions (except for those in paragraph 5, above) is attached hereto as Exhibit 9.

28.     In accordance with the schedule set forth in Paragraph 30, below, every Defendant except federal government entities/agencies shall:

      a.     Complete and sign a DFS;

      b.     Serve the completed DFS as described in Paragraph 32; and

      c.     Produce to the designee of the Plaintiffs' Executive Committee all responsive, non-privileged documents in its possession, custody, or control that are requested in the DFS.

29.     The questions in the DFS shall be answered without objection.

30.     Each Defendant in the actions pending in this MDL as of the entry of this Order shall have ninety-eight (98) days from the date of entry of this Order to serve a DFS applicable to the Sites currently at issue in this MDL as defined and identified pursuant to the Court's Order of July 29, 2019, Dkt. #161 and Exhibit 9.  For any Sites so identified after the date of entry of this Order, each Defendant shall have ninety-eight (98) days from the date of the PEC's identification of a new Site alleged in a Complaint to serve a DFS applicable to that Site.

31.     Any Defendant may request one extension of twenty-one (21) days to serve a completed DFS, which the Plaintiff shall not unreasonably withhold. Such requests must be made in writing via email to the Plaintiff's counsel before the expiration of the deadline.

32.     All completed DFS and responsive records and materials will be (a) served directly on the designee of the Plaintiffs' Executive Committee at AFFF-MDL.DFS@DouglasAndLondon.com and (b) served upon Liaison Counsel for Defendants at DFScourtesy@duffyandyoung.com. Service of the DFS and responsive records and materials is complete upon service on the designee of the Plaintiffs' Executive Committee at AFFF-MDL.DFS@DouglasAndLondon.com. Production of a completed DFS and responsive records and materials of a specific Site may be requested by a given plaintiff or his/her/its counsel upon written request to the Defense Liaison Counsel for production of same after having first requested a copy from the designee of the Plaintiffs' Executive Committee.

33.     **Deficient DFS**

a.     If a Plaintiff deems a DFS deficient, the PEC's designee shall notify Defendant's attorney of record (identified in the DFS) of the purported deficiencies in writing via email and allow such Defendant an additional twenty-eight (28) days to respond to the alleged deficiency, and to the extent Defendant disagrees and/or objects to any alleged deficiency, Defendant shall promptly so advise Plaintiffs no later than the expiration of the 28 day period to respond to any alleged deficiencies.

b.     The PEC's designee's email communication shall identify the case name, docket number, and the deadline for a response and include sufficient detail regarding the alleged deficiency(ies), and a courtesy copy of the email shall be sent via email to the Defendants' Liaison Counsel at DFSdeficiency@duffyandyoung.com.

2:18-mn-02873-RMG    Date Filed 08/07/19    Entry Number 205    Page 13 of 61
Case 2:23-md-03080-BRM-RLS    Document 270-1    Filed 08/30/24    Page 129 of 198 PageID:
8466

c.     To the extent Plaintiffs seek further clarification of Defendant's response to any alleged deficiency, Plaintiffs shall seek a meet and confer, and Defendant and Plaintiffs shall meet and confer within the fourteen (14) days of Defendant's communication of any disputes with respect to any alleged deficiencies.

d.     Following the meet and confer period, should the Defendant: (i) fail to cure the stated deficiency(ies); (ii) fail to assert objections to same; (iii) fail to respond to or participate in the meet and confer process; or (iv) otherwise fail to provide responses (including the requested documents and/or signatures), and absent agreement of the parties to further extend the period for meeting and conferring, at any time following expiration of the fourteen (14) day meet and confer period, Plaintiff may then file a Motion to Compel the allegedly deficient discovery information.

e.     Any such filing shall be via ECF, with a courtesy copy via email to Defendant's attorney of record and via email to the Defendants' Liaison Counsel at DFSdeficiency@duffyandyoung.com.

f.     Any motion to compel pursuant to this CMO need not be noticed for presentment as required by Local Rule 7.1.

g.     Any response to such a motion shall be filed and served within fourteen (14) days following the date of service.  Reply Briefs are discouraged per Local Rule 7.07, but any reply shall be filed and served within seven (7) days following the date of service of the response.

h.     Absent an Order from the Court granting a request by either or both parties for oral argument, the Court will rule on such motions without hearing argument.

34.    **Failure to Serve a DFS**

a.     Should any Defendant fail to serve an executed DFS within the time required in this CMO or any extension that was granted, Plaintiff(s) shall send a Notice of Non-

2:18-mn-02873-RMG    Date Filed 08/07/19    Entry Number 205    Page 14 of 61
Case 2:23-md-03080-BRM-RLS    Document 270-1    Filed 08/30/24    Page 130 of 198 PageID:
8467

Compliance letter via email to that Defendant's attorney of record, with a courtesy copy via email

the Defendants' Liaison Counsel at DFSdeficiency@duffyandyoung.com.  The Notice of Non-

Compliance shall specify a fourteen (14) day period in which Defendant shall (1) tender an

executed and completed DFS, (2) if Defendant  has in fact tendered an executed fact sheet, inform

the Plaintiff of the date on which it was served, or (3) meet and confer with Plaintiff regarding any

claimed good cause for failure to do so within the time required.

      b.     Following delivery of the Notice of Non-Compliance and expiration of the

fourteen (14) day period identified in Paragraph 34, Plaintiff(s) may immediately move the Court

to compel service of the DFS, with a courtesy copy via email to Defendant's attorney of record

and via email to the Defendants' Liaison Counsel at DFSdeficiency@duffyandyoung.com.

Plaintiffs shall have the right, but not the obligation, to group multiple delinquent DFS recipients

in a single Motion to Compel grouped by the pertinent Defense law firm.

      c.     Any motion to compel pursuant to this CMO need not be noticed for

presentment as required by Local Rule 7.1.

      d.     Any response to such a motion shall be filed and served within fourteen (14)

days following the date of service.  Failure to tender a completed DFS as required by this Order

within the time provided for the response shall result in the motion being granted against the

Defendant.

      e.     Absent an Order from the Court granting a request by either or both parties

for oral argument, the Court will rule on such motions without hearing argument.

     35.     **Substantial Completion of DFS:**  In completing the DFS, every Defendant is

required to provide Plaintiffs with a DFS that is substantially complete in all respects.  For a DFS

to be "substantially complete in all respects," the responding Defendant shall endeavor to answer

every question contained in the DFS to the best of its ability and leave no blanks, even if the Defendant can only answer the question in good faith by indicating "not applicable," "N/A," or "I don't know" or similar words.

36.     **Continuing Duty to Supplement:**     Each Defendant shall remain under a continuing duty to supplement the information provided in its DFS throughout the litigation, in a manner consistent with the provisions of Fed. R. Civ. P. 26(e).

**Notice in Future Cases**

37.     In any action that is (a) filed in or transferred to this Court after this Order is entered and (b) consolidated with this action for pretrial purposes, the Clerk shall include a statement in the initial notice to counsel that Case Management Orders No. 1, No. 2, No. 3, No. 4 and this Order, as well as any amendments to those Orders, govern all cases in the MDL proceedings and can be viewed on the Court's MDL website.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

August  7 , 2019
Charleston, South Carolina

2:18-mn-02873-RMG    Date Filed 08/07/19    Entry Number 205    Page 45 of 61
Case 2:23-md-03080-BRM-RLS    Document 270-1    Filed 08/30/24    Page 132 of 198 PageID:
8469

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: Aqueous Film-Forming Foams (AFFF) Products Liability Litigation | MDL No. 2873 |

# EXHIBIT 8

# TO CASE MANAGEMENT ORDER NO. 5
# RE: WATER PROVIDER PLAINTIFF FACT SHEET

2:18-mn-02873-RMG    Date Filed 08/07/19    Entry Number 205    Page 46 of 61
Case 2:23-md-03080-BRM-RLS    Document 270-1    Filed 08/30/24    Page 133 of 198 PageID:
8470

*IN RE: Aqueous Film-Forming Foams (AFFF)*
*Products Liability Litigation*

This Plaintiff Fact Sheet is to be completed by each Plaintiff in any action transferred to or originally filed in this multi-district litigation that has been brought by or on behalf of one or more public or private water suppliers, including municipalities or other local or county government entities pursuing claims related to alleged contamination of water supplies within or impacting their jurisdictions. This Fact Sheet does not include States that are plaintiffs in this MDL. For the purposes of this Plaintiff Fact Sheet, "you" and "your" refer to the public or private entity that is the Plaintiff; the Plaintiff's divisions, departments, officers, directors, agents, employees, and/or representatives; any public or private water suppliers that Plaintiff purports to represent in this litigation, and any municipality or other local or county government pursuing claims related to alleged contamination of water supplies within or impacting their jurisdictions, as well as for other Plaintiffs, but only to the extent they represent the interests of such entities in Member Actions. In completing this Plaintiff Fact Sheet, you are under oath, subject to the penalties of perjury, and must provide information that is true and correct to the best of your knowledge. If you cannot recall all the details requested, please provide as much information as you can. Materials prepared by your attorneys for use in the litigation (Attorney Work Product) are not required to be produced. You must complete the Plaintiff Fact Sheet in accordance with the requirements and guidelines set forth in the applicable Case Management Order. To the extent that any response requires additional space, please insert additional space or information or attach a continuation sheet referencing the question at issue. **ALL ASPECTS OF THIS PLAINTIFF FACT SHEET ARE DESIGNATED AS CONFIDENTIAL AND COVERED BY THE PROTECTIVE ORDER.**

### I. CASE INFORMATION

1. **Caption:** _____ **Docket No.:** _____

### II. PLAINTIFF INFORMATION

2. **Plaintiff's Name:** _____

   **(If Plaintiff has operated or existed under other names during the time periods alleged in the complaint, please also identify any prior names.)**

3. **Plaintiff's Address:** _____

4. **Identify whether Plaintiff is** ❑ **a public utility or** ❑ **an investor-owned utility.**

5. **If the Plaintiff is not a water provider, but Plaintiff is filing on behalf of a water provider: Specify the names and addresses of all public or investor-owned utilities that Plaintiff purports to represent in this lawsuit (as well as any prior names), and state Plaintiff's relationship to those utilities.**

1

_____

_____

_____

_____

_____

## PLEASE COMPLETE PARTS III AND IV SEPARATELY

## FOR EACH WATER PROVIDER

## III. WATER PROVIDER INFORMATION

6.  Identify all geographic regions or communities where the water system currently operates to provide water to customers.

_____

_____

_____

**Attach or provide GIS files, maps, or other data or documentation describing the water system's wells and distribution systems.**

7.  State the number of metered accounts currently served by the water system.

_____

_____

8.  State the water system's current maximum and average daily demand (MGD) by month over the past three (3) years.

_____

_____

_____

_____

_____

_____

_____

_____

2

9.  Identify and describe below the water system's current treatment system(s), including any existing method for treating water that is capable of removing PFAS contamination.

_____
_____
_____
_____

10. Identify and describe all water resources and/or water supplies that the water system has used at any time since either January 1, 2000 or the date you claim contamination began, whichever is earlier, that you contend contributed to the contamination, including the geographic location of the water resource or water supply (*e.g.*, wells, surface water), the dates each well or water resource was available to be used, and the manner in which it entered the water distribution system.

_____
_____
_____
_____
_____
_____
_____

<u>Attach or provide documentation reflecting the information requested in the above question.</u>

11. Identify and describe all water resources and/or water supplies not described above that are actually or potentially available to the water system currently, including the geographic location of the water resource or water supply (e.g. wells, surface water).

_____
_____
_____
_____
_____
_____

## III. ALLEGED CONTAMINATION

12. As to your claims against the Defendants, state the location or locations where you claim that the water system allegedly contains any per- or polyfluoroalkyl substances ("PFAS," an umbrella term that includes, among other substances, perfluorooctane sulfonate (PFOS) and/or perfluorooctanoic acid (PFOA)); the sites which you claim to be the source

3

2:18-mn-02873-RMG    Date Filed 08/07/19    Entry Number 205    Page 49 of 61
Case 2:23-md-03080-BRM-RLS    Document 270-1    Filed 08/30/24    Page 136 of 198 PageID:
8473

of the PFAS (if attributed in whole or in part to the use of or disposal of AFFF at some site, identify the site); the specific PFAS-containing products whose use or disposal you claim gave rise to the presence of PFAS (if known); and the time period during which PFAS was allegedly contained in the water system (approximate start, end date, or continuing if applicable):

| Site/Location of PFAS | Source(s) of PFAS | Product | Approximate Dates (Start Date, End Date or Continuing) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

13. As to the time period listed in your response to question 12, provide the test results and test data for all tests that you have conducted or of which you are aware of any water for the presence of PFAS or other contaminants. Include the results of all testing of the water in your water system, any storage system used by your water system, any endpoint of your water system (including homeowner or commercial taps), or any water supply or other water resource used or available for use by your water system. Specify: (a) the test date, (b) the location, depth, and description of the water tested, (c) the person or entity who conducted the test, (d) the level of any PFAS and/or other contaminants that were detected, and (e) what treatment the water received, if any, before testing.

Please attach to this form or provide copies of all testing data and results.

| Date | Location/Water Tested | Test Provider | Test Results (substance in PPT or "Not detected") | Treatment |
|---|---|---|---|---|
| | | | | |
| | | | | |

|  |  |  |  |  |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

14. **Do you have any documents or other information identifying the specific products that you claim to have caused the alleged contamination** *(i.e.* **photos of product labels at the site, invoices, shipping labels, identity of witnesses, etc.)?** ☐Yes ☐ No

If yes: **Do you have any documents or other information identifying the specific location where these products were allegedly used?** ☐Yes ☐ No

If yes to either/both of the above questions, attach to this form or provide copies of those documents, referencing this question.

**If you have other information that is responsive to this question, that is not contained in actual documents, identify that responsive information below.**

_____

_____

_____

_____

_____

15. **Do you possess information that there are or are you aware of any other sources of PFAS other than use or disposal of AFFF that have contaminated or may be contaminating your water supply?** ☐Yes ☐ No

If yes: **Identify any such sources or attach or provide documents identifying such sources.**

2:18-mn-02873-RMG     Date Filed 08/07/19     Entry Number 205     Page 51 of 61
Case 2:23-md-03080-BRM-RLS     Document 270-1     Filed 08/30/24     Page 138 of 198 PageID:
8475

_____

_____

_____

_____

_____

_____

_____

## IV. REMEDIATION

16. Have any steps been taken to mitigate the claimed impact of any water allegedly containing any PFAS (*e.g.*, installation of any treatment or remediation systems, including GAC, reverse osmosis, ion exchange systems, discontinuing use of wells, drilling of additional or new wells, securing alternative water sources, providing bottled water, point of entry or other treatment or filter systems to customers)? ❑ Yes ❑ No ❑ Unsure

If yes, describe steps taken to mitigate the claimed impact of any water allegedly containing any PFAS, the dates on which such efforts were undertaken, and what parties took and paid for those mitigating steps.

_____

_____

_____

_____

_____

17. Do you or others currently plan to take any steps in the future to mitigate the claimed impact of any water allegedly containing any PFAS? ❑ Yes ❑ No ❑ Unknown

If yes, describe all such steps, the dates on which such efforts are to be undertaken, and what parties will take and pay for those mitigating steps.

_____

_____

_____

_____

_____

2:18-mn-02873-RMG    Date Filed 08/07/19    Entry Number 205    Page 52 of 61
Case 2:23-md-03080-BRM-RLS    Document 270-1    Filed 08/30/24    Page 139 of 198 PageID:
8476

18. **Have you obtained any recovery or reimbursement of funds for investigation, testing, or remediation from any other entities (public or private) in connection with the alleged presence of PFAS in that water system?** ❑ Yes ❑ No

**If yes, please identify any such recoveries or attach or provide document sufficient to identify them, and attach or provide any documents reflecting efforts to obtain such recovery or reimbursement.**

_____

_____

_____

_____


## DOCUMENTS

Provide all the documents and records in your possession which you used and/or relied upon to complete this PFS form, including but not limited to those documents specifically requested in the above questions.


## VERIFICATION

On behalf of the Plaintiff, I declare under penalty of perjury subject to all applicable laws, that I have carefully reviewed the final copy of this Plaintiff Fact Sheet and verified that all of the information provided is true, correct, and complete based on the information known or reasonably available to the Plaintiff.

_____

Signature

_____

Print Name and Title/Relationship to
Plaintiff

_____

Date

7

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: Aqueous Film-Forming Foams (AFFF) Products Liability Litigation | MDL No. 2873 |

# EXHIBIT 9

# TO CASE MANAGEMENT ORDER NO. 5
# RE: DEFENDANT FACT SHEET

2:18-mn-02873-RMG    Date Filed 08/07/19    Entry Number 205    Page 54 of 61
Case 2:23-md-03080-BRM-RLS    Document 270-1    Filed 08/30/24    Page 141 of 198 PageID:
8478

*IN RE: Aqueous Film-Forming Foams (AFFF)*
*Products Liability Litigation*

The purpose of this fact sheet is for Defendant(s) to provide specific information applicable to the locations at which plaintiffs allege in the relevant Complaint(s) that the AFFF products that gave rise to their claims were used (the "Sites"), as memorialized in the list provided by the Plaintiff(s) on August 2, 2019 or in subsequent supplements to that list. You are expected to serve one Defendant Fact Sheet ("DFS") for each Site so identified and referenced in a Complaint naming you as a defendant. For the avoidance of doubt, if multiple Plaintiffs assert claims arising out of the same Sites, only one DFS need to be completed by an individual Defendant named in the relevant Complaint or Complaints for such Sites. The DFS is not meant to be a substitute for general discovery of a Defendant but rather to assist in gathering facts and information relevant to case specific and plaintiff-specific claims that cannot be obtained or has not already been obtained through Master MDL discovery demands.

In completing this information, you are under oath, subject to the penalties of perjury, and must provide information that is true and correct to the best of your knowledge. If you cannot provide all the details requested, please provide as much information as you can. If the requested information does not apply to you, you may answer, "N/A." If the requested information is not obtainable after a reasonable search, you may answer, "I don't know." If the requested information is readily ascertainable from documents provided with this DFS, you may respond by referring to those documents. To the extent you have already provided information or documents responsive to the questions in this DFS in response to master discovery demands, you may respond by referring to such information or documents. Materials prepared by your attorneys for use in the litigation (Attorney Work Product) are not required to be produced. You must complete the DFS in accordance with the requirements and guidelines set forth in the applicable Case Management Order. To the extent that any response requires additional space, please insert additional space or information or attach a continuation sheet referencing the question at issue.

## General

1. Name of the Person Completing this DFS:
   a. Title or Position: _____
   b. Work Address: _____
   c. Year(s) of employment for the Defendant: _____

2. Name of Defendant: _____

3. Identify the specific Site(s) to which this DFS applies:

   _____

   _____

1

**Investigation, Remediation, Site Ownership and Operation**

4.    Beginning in 1960 through the present, identify each contractor who you hired for investigation of soil, groundwater, surface water and/or drinking water with respect to contamination or potential contamination by AFFF at the Site, and detail as specified below. If none, answer "N/A." Please produce documents in your possession reflecting the work performed by any such contractor identified below.

| Contractor | Dates | Site or Location | Summary Nature of Investigation |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

5.    Beginning in 1960 through the present, identify each contractor who you hired for remediation, cleanup and/or restoration relating to AFFF at the Site, including but not limited to replacement of soil, groundwater, surface water and/or drinking water contaminated or potentially contaminated by AFFF, and provide detail as specified below. If none, answer "N/A." Please produce documents in your possession reflecting the work performed by any such contractor identified below.

| Contractor | Dates | Site or Location | Summary of Remediation and/or Cleanup |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

6.    Provide final results and data in your possession for all tests that were conducted to identify the presence of or quantify the amount of PFAS at the Site. If the requested information is

within your knowledge but omitted from the attached documents or is not legible from the attached documents, please also summarize that information in the table below.

| Date | Test Provider | Test Results (substance in PPT or "Not detected") | Site or Location |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

7.  For Sites other than manufacturing facilities, did you own, lease, or operate facilities at the Site?   ❑ Yes ❑ No

   a.  If yes, for each of the following parties in this MDL (and their alleged affiliates or predecessor entities), state whether you believe that the alleged presence of PFAS in the soil, groundwater, surface water and/or water system at issue in each Site identified in Question 3 to the corresponding PFS can be attributed to their products, including the locations where you believe their products were used, when you believe their products were used there, and attach or provide documentation you have about the purchase or usage of AFFF at those locations to the extent not already produced in response to Master Discovery.

   ❑ Tyco Fire Products, LP. _____

   _____

_____

_____

❑ Chemguard, Inc. _____

_____

_____

_____

❑ 3M Company. _____

_____

_____

_____

❑ Buckeye Fire Equipment Company. _____

_____

_____

_____

❑ National Foam, Inc. _____

_____

_____

_____

❑ E. I. du Pont De Nemours and Company _____

_____

_____

_____

❑ Other AFFF Manufacturing Defendants (specify names) or other defendants.

_____

_____

_____

_____

<u>Please attach to this form copies of all documents in your possession on which the above information is based.</u>

**b.** If yes, have any steps been taken (by you or others) to mitigate the claimed impact of any soil, ground water, surface water, or drinking water containing PFAS at the Site? ❑ Yes ❑ No

If yes, describe steps taken to mitigate the impact of any water containing any PFAS for each Site identified in Question 3 , the dates on which such efforts were undertaken, and what parties took and paid for those mitigating steps.

_____

_____

_____

_____

_____

_____

_____

c.  If yes, do you or others currently plan to take any steps in the future to mitigate the claimed impact of any soil, groundwater, surface water or drinking water allegedly containing PFAS at the Site? ❑ Yes ❑ No

If yes, describe all such steps, the dates on which such efforts are to be undertaken, and what parties will take and pay for those mitigating steps.

_____

_____

_____

_____

_____

_____

_____

8.  If you answered yes to Question 7, identify any entity not named as a defendant in actions associated with the Site who may be obligated to satisfy or reimburse you for all or part of any alleged losses incurred to date or in the future in connection with the claims associated with the Site and state whether you have obtained recovery from any such entity:

_____

_____

_____

_____

_____

9.  If you answered yes to Question 7, identify any entity not named as a defendant in actions associated with the Site who may be in whole or part responsible for AFFF and/or PFAS contamination in connection with the claims associated with the Site and state whether you have obtained recovery from any such entity:

_____

_____

2:18-mn-02873-RMG    Date Filed 08/07/19    Entry Number 205    Page 59 of 61
Case 2:23-md-03080-BRM-RLS    Document 270-1    Filed 08/30/24    Page 146 of 198 PageID:
8483

_____

_____

_____

## **Product Identification**

10.    Beginning in 1960 through the present, for each Site identified in Question 3, provide the following information:

    **a.**    Do you have documents that reflect sales, delivery, and/or tracking of any AFFF products by you or by a distributor to the Site(s)? ❑ Yes ❑ No.

    If yes, please produce such documents to the extent not already produced in response to master discovery. If produced in response to master discovery, please so indicate here: _____

    **b.**    For each AFFF product for which you have documentation of sales or delivery to the Site, please provide any applicable Material Safety Data Sheets ("MSDS") to the extent not already produced in response to master discovery. If produced in response to master discovery, please so indicate here: _____.

11.    Beginning in 1960 through the present, for each Site identified in Question 3 in which your AFFF product(s) was sold or distributed (based on your response to Question 10(a)),

    **a.**    State whether AFFF product(s) were sold directly or via a distributor agent and if the sold through a distributor, produce any applicable contracts or agreements with any such distributor(s) to the extent not produced in response to master discovery

    **b.**    Provide invoices and/or purchase orders and/or bills of lading for the sale of AFFF product(s) to the extent not produced in response to master discovery demands.

12.    Beginning in 1960, for each Site in Question 3, identify each distributor(s), if any, that was not a part of the Defense Logistics Agency ("DLA") or other United States government distribution system, who provided AFFF to each Site identified in Question 3, and, if unknown, identify the distributor(s), if any, who serviced the geographical area(s) identified in the corresponding Plaintiff Fact Sheet, if known. If you have provided information concerning distributors of your AFFF in response to master discovery, please so indicate here:_____:

| Distributor | Site or Location | Dates | Geographic Area (if applicable) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

13. Beginning in 1960 through the present, for each Site identified in Question 3, identify each other entity (*e.g.* wholesalers, equipment suppliers, sales agents, or independent contractors), that was not a part of the DLA or other United States government distribution system, who was in any way involved in the sale and/or distribution of your AFFF, if known, and detail as specified below:

| Agent | Site or Location | Dates | Geographic Area (if applicable) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

14. For each of the locations identified in Question 3 where there is alleged exposure to AFFF or PFAS, and/or where AFFF and/or PFAS has been alleged to have contaminated soil, groundwater, surface water and/or a drinking water source, list the brand name and product ID of the product(s) that was used or disposed at or near that location, if known, the time period during which the AFFF product(s) was utilized, and the date you learned or discovered that the source contained PFAS:

| Location of PFAS | Source of PFAS (if known) | Product Name and ID (if known) | Time Period (if known) | Date of Discovery (if known) |
|---|---|---|---|---|
| | | | | |
| | | | | |

7

| | | | | |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## DOCUMENTS

Provide all documents specifically requested in the above questions and/or used to respond to the above questions.

## CERTIFICATION

I am an authorized agent of the Defendant identified below, and I hereby certify that the matters stated herein are not the personal knowledge of the undersigned; that the facts stated herein have been assembled by authorized employees and counsel to such Defendant; and that the undersigned is informed that the facts stated therein are true. I further certify in my capacity as an authorized agent of the Defendant identified below that the responses herein are true and complete to the best of the Defendant's knowledge, based upon a reasonable diligent search and analysis of the information available to the Defendant and its counsel, and that the requested documentation has been provided.

_____
Signature

_____
Print Name

_____
Defendant's Name

_____
Title

_____
Date

8

# EXHIBIT 11

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| IN RE: AQUEOUS FILM-FORMING | ) | MDL No. 2:18-mn-2873-RMG |
| FOAMS PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | CASE MANAGEMENT ORDER NO. 13 |
| | ) | |
| | ) | This Order Relates to All Actions |
| | ) | |

## INITIAL BELLWETHER SELECTION AND PROTOCOLS

The Court hereby issues the following Case Management Order ("CMO") to govern initial aspects of the Bellwether process and protocols for certain types of cases in this complex MDL. The presence of various different types of cases, claims, and parties in this MDL requires different Bellwether processes for the different case types that will proceed on different schedules and therefore be governed by subsequent CMOs. The first bellwether category shall be selected from Water Provider cases.[1]

To address the complexities of these cases in general, the Court will implement a two-tier process for each category of Bellwether Case. Additional categories of bellwether cases and the process and timing for selection, Core Discovery (as defined below), and bellwether trial pool selection will be governed by subsequent case management orders. Tier One will consist of identifying and selecting "Bellwether Discovery Pool Cases." Bellwether Discovery Pool Cases will be selected by the parties and undergo additional discovery (beyond the Plaintiff Fact Sheet

---

[1] The "Water Provider cases" include cases involving public water providers (i.e., municipal/city/county providers) and also privately owned or held water providers, but they do not include cases where the United States is a named defendant, which cases are excluded from the Water Provider Bellwether Discovery Pool.

("PFS") and Defense Fact Sheet ("DFS") processes and the general liability discovery of defendants that is currently proceeding), which shall be referred to as "Core Discovery."

This CMO shall address how Water Provider Cases will be selected into the Bellwether process and the scope of Core Discovery in those cases. The Court will address in a subsequent CMO (i) the selection, scope, and timing of Core Discovery for cases other than the Water Provider Cases, and (ii) procedures and timing for litigating those Water Provider Bellwether Discovery Pool Cases that, pursuant to paragraph G below, are selected for a smaller pool as Bellwether Trial Pool Cases (Tier Two of the bellwether selection process).

A.      In order for a Water Provider Plaintiff to be eligible for selection as a Bellwether Discovery Pool Case, its complaint must have been filed and served on all named defendants on or before December 24, 2020, and that Water Provider Plaintiff must have served a substantially complete PFS pursuant to CMO 5 by January 5, 2021 and have any deficiencies cured by January 22, 2021, or objections to same served. To the extent the parties dispute the sufficiency of a PFS as of January 22, 2021, the parties agree that they will bring that dispute to the Court's attention for resolution on an expedited basis.

B.      The parties shall meet and confer and attempt to agree on the cases that will comprise these "Water Provider Bellwether Discovery Pool Cases." There shall be a total of 12 cases in this Pool.

1.      Plaintiffs (by the Plaintiffs' co-lead counsel or their designated Water Provider Bellwether Leadership Committee) and Defendants (by the Defense Coordinating Committee ("DCC")) shall select the agreed Water Provider Bellwether Discovery Pool cases by February 24, 2021. Each agreed designation shall include the following information: (1) Plaintiff's counsel information, (2) list of all defendants

2

in the case (and counsel information), (3) a list of parties that have and have not waived *Lexecon* rights (4) a brief summary of the alleged AFFF exposure and site location(s), (5) the proposed Bellwether Plaintiff's Complaint, and (6) the Defendants' statements of affirmative defenses,

2.   In the event the parties cannot agree on any or all 12 selections, Plaintiffs (by the Plaintiffs' co-lead counsel or their designated Water Provider Bellwether Leadership Committee) and Defendants shall each propose to the Court a slate of Water Provider cases equal to two fewer than the number of cases remaining to be selected, with each side in no event proposing more than seven cases and no fewer than two cases. By way of example, if the parties agree on ten of the twelve possible cases, the DCC and the PEC shall each propose two cases to the Court, and the Court may select two cases from those four possibilities in order to make a total pool of 12 Water Provider Bellwether Discovery Pool cases unless the Court finds neither side's proposals representative, in whole or in part, and directs the Parties to further confer or address the Court's concerns with the selections proposed by one or both sides, or decides to use the 10 cases agreed upon by the parties (as set forth in this example) , or fashion such other relief the Court deems warranted under the circumstances. By way of further example, if the parties agree on nine of the twelve possible cases, the DCC and the PEC shall each propose three cases to the Court, and the Court may select three cases from those six possibilities in order to make a total pool of 12 Water Provider Bellwether Discovery Pool cases unless the Court finds neither side's proposals representative, in whole or in part, and directs the Parties to further confer or address the Court's concerns with the selections

proposed by one or both sides, or decides to use the 9 cases agreed upon by the parties (as set forth in this example), or fashion such other relief the Court deems warranted under the circumstances. Each side, the Plaintiffs and the Defendants, shall propose Water Provider cases that are representative of the Water Provider cases pending in the MDL.

3.  As to the cases that are not agreed to (if any), by no later than February 26, 2021, each side shall submit simultaneous briefing to the Court explaining why the cases they have selected are representative of the Water Provider cases pending in the MDL, and include Plaintiff's counsel information, list of all defendants in the case, whether a *Lexecon* waiver has been secured from all parties in the case (and if not who has not yet agreed), a brief summary of the alleged AFFF exposure and site location(s), the proposed Water Provider Bellwether Plaintiff's causes of action/claims, and whether a Rule 12(b)(1) or 12(b)(2) motion is contemplated, and, if so, which Defendants propose to file such a motion. From the parties' submissions, the Court may select from the proposed cases as described in this paragraph A such that there is a Bellwether Water Provider Discovery Pool of twelve cases. If, however, the Court finds for any reason that the cases proposed by the parties are not representative, in whole or in part, or otherwise is not persuaded that the cases are appropriate selections for the discovery pool, the Court will issue such further order as may be warranted at that time based on the submissions of the parties or such other matter as the Court may view as appropriate for the selection of the cases to be in a Bellwether Water Provider Discovery Pool.

4

4. For the avoidance of doubt, if a party waives *Lexecon* as to a specific case in the Water Provider Bellwether Discovery Pool, such waiver will not apply to any other case in the MDL.

5. Should the Court determine that it requires additional nominations from the parties in order to select twelve representative Water Provider Bellwether Discovery Pool cases, the parties shall promptly meet and confer to propose any replacement case(s) and submit such replacement case(s) to the Court. In the event such additional submissions are necessary, the parties shall meet and confer as to whether to extend the deadlines set forth below for these specific additional cases, as may be necessary or as directed by the Court in its discretion. As to any Water Provide Discovery Pool Cases previously identified (whether based on the agreed list submitted by PEC and Defendants per paragraph 1 or as selected by the Court based on submissions made per paragraph 3, the schedule set forth below shall govern all such cases and will not be delayed pending selection of any additional cases for the Water Provider Discovery Pool.

C. A party may file objections to the cases proposed for the Water Provider Bellwether Discovery Pool, by Plaintiff and Defendant leadership under Paragraphs B(1) and (2), by filing specific objections within 10 days of submission. Plaintiff and Defendant leadership may file a response to any such objection within 5 days thereafter. The Court shall retain the final authority to approve cases for the Water Provider Bellwether Discovery Pool, but will give deference to cases jointly recommended pursuant to Paragraph B(1).

D. If a Water Provider Bellwether Discovery Pool Case nominated or agreed to by the PEC pursuant to paragraph B is dismissed on or before March 31, 2021, the PEC may nominate a

replacement case within seven days of dismissal. If Defendants do not agree to the new selection as representative, Defendants may submit briefing explaining why the nominated case is not representative and asking the Court to require the PEC to nominate an alternative case should the Court agree.

E.      If a Water Provider Bellwether Discovery Pool Case nominated by the DCC pursuant to paragraph B is dismissed on or before March 31, 2021, the DCC may select a replacement case within seven days of dismissal. If Plaintiffs do not agree to the new selection as representative, Plaintiffs may submit briefing explaining why the nominated case is not representative and asking the Court to require Defendants to nominate an alternative case should the Court agree. Unless otherwise agreed by the parties, if the PEC or a Water Provider Plaintiff dismisses a Water Provider Bellwether Discovery Pool Case nominated or agreed to by the DCC pursuant to paragraph B after March 31, 2021 (so long as the dismissal is not due to settlement), the DCC may de-designate a Water Provider Bellwether Discovery Pool Case nominated or agreed to by the PEC from consideration as a trial pool selection by the September 3, 2021 deadline identified in paragraph G below. The PEC reserves the right to seek relief from the Court on such a de-designation on good cause shown.

F.      The parties shall conduct Core Discovery on the Water Provider Bellwether Discovery Pool Cases from February 25, 2021 through August 6, 2021 (for all agreed to cases) and from March 8, 2021 through August 13, 2021 for any case the Court selects. The parties shall meet and confer to determine the anticipated number of depositions and written discovery requests applicable in each selected case, bearing in mind that this phase is Tier One Core Discovery and the parties will have the opportunity to conduct further Tier Two discovery if the case is ultimately selected as Bellwether Trial Pool Case. By March 15, 2021, the parties shall submit a joint report

informing the Court of the agreements or disagreements (if any) on these parameters, which the Court will resolve as necessary.[2]  In each Water Provider Bellwether Discovery Pool case, there shall be a presumptive limit of seven depositions taken by Defendants, and four depositions taken by Plaintiff(s) as to each defendant in a particular case.  Depositions of third-parties shall not count against the limits.  In depositions of Defendants in Water Provider Bellwether Discovery Pool Cases, plaintiffs' counsel shall endeavor not to ask questions that are duplicative of questions asked of the same deponents in depositions already taken during general liability discovery. The parties also may serve case-specific written discovery, provided, however, that such discovery shall not duplicate written discovery propounded during general liability discovery by the PEC, including but not limited to PFSs and DFSs.  The parties are reminded that they have a continuing obligation to supplement the PFS and DFS.

G.      If a Defendant plans to file a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) or 12(b)(2), this will be identified to the Court whether the case is agreed to or if it is one of the party's nominations.  If the case is selected, any such motion shall be filed within 21 days of a case being selected as a Bellwether Discovery Pool Case unless the Court orders otherwise.  Otherwise, all named non-moving Defendants shall file an answer to each operative complaint within 28 days of a case being selected as a Bellwether Discovery Pool Case.

H.      Following the close of Tier One Core Discovery on August 6, 2021 or August 13, 2021, and, by no later than September 3, 2021, the parties shall submit simultaneous briefs informing the Court of the parties' positions as to which Water Provider Bellwether Discovery

---

[2] Notwithstanding this requirement to meet and confer on discovery parameters, Core Discovery can start on February 25, 2021 for agreed cases or on the next business day after the Court issues an order selecting any other cases. Should the Court select non-agreed cases after March 8, 2021, the parties shall meet and confer to amend the dates in this CMO to provide for sufficient time for discovery prior to selection of cases for the Water Provider Bellwether Trial Pool.

Pool Cases should be selected by the Court for inclusion in the Tier Two Water Provider Bellwether Trial Pool.  No later than seven days prior to the submission of this briefing, the parties shall meet and confer and attempt to come to agreement on any cases that should be included, and any such cases should be clearly identified by each party in its brief.  The Court will select Water Provider Bellwether Trial Pool cases from these submissions with the final number of such cases being dependent on the number of cases remaining in the Water Provider Bellwether Discovery Pool at that time.

I.      Within 90 days of the Water Provider Bellwether Discovery Pool cases being selected (i.e., by no later than May 25, 2021), the parties shall meet and confer regarding a proposed schedule and structure for the Tier Two Water Provider Bellwether Trial Pool cases that will be selected by the Court in accordance with paragraph G, above.  This schedule and structure shall include: (i) case-specific expert discovery deadlines, (ii) deadlines for any additional case-specific fact discovery that may reasonably be necessary, (iii) pre-trial dispositive motion and *Daubert* briefing, and (iv) trial.  The parties shall meet and confer on these issues, and submit to the Court a proposed CMO.  To the extent agreement is not reached the parties will submit their points of agreement and disagreement on these issues.

J.      A more detailed schedule for final pretrial matters, including witness and exhibit lists, motions *in limine*, and deposition designations, will be the subject of a subsequent CMO.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

December 28, 2020
Charleston, South Carolina

# EXHIBIT 12

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*APPLIES TO ALL CASES* | Case No. 1:17-MD-2804<br><br>Hon. Dan A. Polster<br><br>**FACT SHEET**<br>**IMPLEMENTATION ORDER** |

In accordance with CMO 1, this Order governs the form and service of Plaintiff and Defendant Fact Sheets in this MDL.

1. For all non-Track One trial cases, Plaintiffs that are Governmental Entities shall provide a completed Plaintiff Fact Sheet ("PFS") in each case in the form attached as Exhibit A pursuant to the following schedule:  (a) within 90 days from the date of this Order for any Plaintiff whose case has been docketed in this MDL on or before the date of this Order; or (b) within 90 days from the date the case is docketed in this MDL for any Plaintiff whose case is docketed after the date of this Order.

2. Only Plaintiffs that are Governmental Entities (e.g., Cities, Towns, Counties) shall complete a PFS.  Other entities (e.g., Hospitals, Third-Party-Payors) do not need to complete a PFS.

3. A complete PFS shall be served on Liaison Counsel via email.

4. Defendants[1] not named in a Track One trial case shall provide a completed Defendant Fact Sheet ("DFS"), attached as Exhibit B, within 90 days from the date of this Order or 90 days after proper service, whichever is later.

5. Completed DFSs shall be served on Plaintiffs' Liaison Counsel via email.

6. Deficiency Letter.

   a. If a Defendant or Plaintiff disputes the sufficiency of any response(s) in a PFS/DFS, Counsel shall notify Opposing Counsel of record of the purported deficiencies in writing via email and allow such Party an additional 21 days to correct the alleged deficiency.

---

[1] For purposes of this requirement, a "Defendant" shall include the entire Defendant Family, which consists of all corporate affiliates that are named as a Defendant in any action that is part of this MDL.  A Defendant Family may complete one DFS.

Case 2:23-md-03080-BRM-RLS   Document 270-1   Filed 09/30/24   Page 160 of 198 PageID:
Case: 1:17-md-02804-DAP   Doc #: 638   Filed: 06/19/18   2 of 2.   PageID #: 18637
8497

    b.  If a party does not respond to a deficiency letter within 21 days, the party or parties who sent the deficiency letter may move for an order to Show Cause why the Court should not take appropriate action, up to and including dismissal of claims or striking of defenses.

**IT IS SO ORDERED.**

*/s/ Dan Aaron Polster*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

**Dated: June 19, 2018**

Case: 2:22-md-03080-BRM-RLS  Document 270-1  Filed 08/30/24  Page 161 of 198 PageID:
8498
Case: 1:17-md-02804-DAP  Doc #: 638-17  Filed: 06/19/19  1 of 8  PageID #: 15532

Exhibit A

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*APPLIES TO ALL CASES* | **Case No. 1:17-MD-2804**<br><br>**Hon. Dan A. Polster** |

**GOVERNMENT PLAINTIFF FACT SHEET**

Plaintiff (also referred to as "You" throughout) shall provide information responsive to the questions set forth below.  Instructions and Definitions are provided at the end of this document.  You shall provide information reasonably available to You and are not excused from providing the requested information for failure to appropriately investigate Your case.  Plaintiff shall supplement its responses if it learns that they are incomplete or incorrect in any material respect.

**PLAINTIFF**: _____

Case caption and number: _____

Contact attorney name for MDL: _____

Firm: _____

Telephone number: _____  E-mail address: _____

Description of the citizens and entities that You purport to represent in this lawsuit: _____

_____

## I.  CLAIM INFORMATION

**A.  Injuries, Damages, and Persons with Relevant Knowledge:**

  1.  To the best of Your knowledge, for each Defendant You name, identify the approximate date (i.e., month and year) when You claim You were first injured and began to incur damages as a result of the Defendant's alleged conduct.  This request is not designed to require an expert evaluation and is not intended to limit any expert testimony related to the damages suffered.

2.      Are You seeking in Your lawsuit any monetary damages based on Your payment for allegedly improper opioid prescription claims? Yes_____     No_____

3.      Please identify each category of damages or monetary relief that You allege, including all injunctive relief that You seek.

4.      Have You or has anyone acting on Your behalf had any communication, oral or written, with any Defendants or their representatives, other than communications through Your attorneys? Yes_____     No_____     Don't Know_____

If yes, please identify the date(s), method(s), and nature of the communication(s).

5.      Have You been involved in opioid-related civil litigation in the past? Yes_____     No_____     Don't Know_____

If yes, please identify the date(s), jurisdiction(s), and partie(s).

6.      List Your Departments or Divisions and the current head of each Department/Division.

7.      Identify by name, title, and dates of employment Your current employees or representatives with knowledge regarding the abuse, use, misuse, addiction to, and/or diversion of Prescription Opioids, or the possession, abuse, illegal sale, or addiction to other opioids by Your residents.

8.      Identify the person(s) who held the following position(s) or their equivalent, since January 1, 2008:

     a.      Mayors:

     b.      City councilmembers:

     c.      County commissioners:

     d.      County supervisors:

     e.      County executives:

     f.      Chief health officers:

     g.      Auditors:

     h.      Recorders:

     i.      Sheriffs or Police Chiefs:

     j.      Coroners or Medical Examiners:

     k.      Treasurers:

l.      Chief accountants:

m.      Chief financial officers:

n.      Correctional facility supervisors:

o.      Wardens:

p.      Heads of Department of Public Health:

q.      Fire chiefs:

r.      Directors of Emergency Medical Services:

9.      Identify Your annual budget and the actual expenditure You made since January 1, 2008 with respect to each category of damages You claim, as to the following:

a.      Law enforcement expenditures

b.      Court expenditures

c.      Prison/corrections/incarceration expenditures

d.      Public health expenditures

e.      Child/family services

f.      Workers compensation

g.      Health insurance

10.     Identify any specific grant, donation, or other funding designated for or allocated to addressing issues related to Prescription Opioids.

**B.      Claim-Specific Information**

1.      Identify each physician or other healthcare provider within Your boundaries who, based on information reasonably available to You, has been the target of a law enforcement or administrative investigation You conducted concerning the physician's or provider's prescribing or dispensing Prescription Opioids since January 1, 2008 (this request is only intended to pertain to closed investigations). See also Section II, question 3.

2.      Do You identify, track, or otherwise have in Your possession, custody, or control, information concerning physicians or other healthcare providers who wrote Medically Unnecessary Opioid prescriptions in Your geographical boundaries? Yes_____   No_____

3.  Do You identify, track, or otherwise have in Your possession, custody, or control, information concerning whether a Pharmacy receives Prescription Opioids as a result of a Suspicious Order?  Yes_____    No_____

4.  Identify each Pharmacy within Your boundaries, based on information reasonably available to You, that has been the target of a law enforcement or administrative investigation You conducted concerning the Pharmacy's dispensing of Prescription Opioids since January 1, 2008 (this request is only intended to pertain to closed investigations).  See also Section II, question 3.

5.  Do You identify, track, or otherwise have in Your possession, custody, or control, information concerning whether a Pharmacy filled suspicious orders for Opioids into Your geographic area since January 1, 2008?  Yes_____    No_____

6.  Based on information reasonably available to You: (a) provide the number of overdose deaths of Your residents since January 1, 2008 on a year-by-year basis; and (b) for each such death, identify the drug(s) on which Your resident overdosed.

7.  Did You ever notify any State or Federal agency (e.g., Board of Pharmacy, Department of Medicaid, Department of Public Safety, Drug Enforcement Agency, etc.) of suspected wrongful conduct related to Prescription Opioids since January 1, 2008?  If yes, please identify the date of the notification, the subject of the conduct, and the general nature of the suspected wrongdoing.

8.  Identify every medical insurance plan or carrier, behavioral health carriers, or workers' compensation program used for any of Your employees since January 1, 2008.  For each response, please provide the following information:

| Name | Dates Offered | Plan's Pharmacy Benefit Manager / Claims Processor |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

9. Identify every Pharmacy Benefit Manager and other third-party administrator You used since January 1, 2006. For each response, please provide the following information:

| Name | Relevant Dates | Name and Title of Individuals Who Oversaw Program |
|------|----------------|--------------------------------------------------|
|      |                |                                                  |
|      |                |                                                  |
|      |                |                                                  |

**C.      Opioid-Related Services and Programs**:

For the following questions, please provide information since January 1, 2008.

1. Have You formed or participated in an Opioid Task Force or other program or group to address opioid use or diversion? If yes, provide the name, members, and dates.

2. Have You had a prescription disposal program? If yes, provide the name and dates.

3. Have You operated any addiction treatment programs related to Prescription Opioids? If yes, provide the name and dates.

4. Have You provided any drug abuse prevention or education programs related to Prescription Opioids? If yes, provide the name and dates.

## II.  **DOCUMENTS**

Please produce the following documents for the period of January 1, 2008 to present, to the extent that these documents are in Your possession, custody, or control.

1. Documents you maintain that refer or relate to the volume of Prescription Opioids prescribed, dispensed, sold, distributed, diverted, or used in Your geographical boundaries.

2. Meeting agendas for any City Council, County Commission, County Health Board/Commission, or their equivalent that reference Prescription Opioids, the misuse of opioids, or related topics.

3.      To the extent that You identified any physician, healthcare provider, or Pharmacy in response to questions I.B.1 and I.B.4 above, please provide that investigation file for those physicians, healthcare providers, or Pharmacies.

## III. <u>CERTIFICATION</u>

I declare under penalty of perjury that all of the information provided in this Plaintiff's Fact Sheet is complete, true, and correct to the best of my knowledge and information, and that I have provided all of the requested documents that are reasonably accessible to me and/or my attorneys, to the best of my knowledge.

_____     _____    _____

         Signature                         Print Name                   Date

## INSTRUCTIONS

     1.     The Fact Sheet shall be completed in accordance with the requirements and guidelines set forth in the applicable implementing Order.

     2.     Each Plaintiff must complete this separate form by electronically inserting the responsive information.  The electronic version of this Fact Sheet can expand to accommodate as much information as is necessary to fully answer any of these questions.  If you are completing this document in a representative capacity, please answer the questions provided herein on behalf of the Plaintiff you represent.

     3.     All the responses in this Fact Sheet or an amendment thereto are binding upon Plaintiffs as if they were contained in answers to interrogatories.  Any responses, however, are without prejudice to future supplementation.

     4.     In completing this Fact Sheet, you are under oath and must provide information that is true and correct. You must answer every question as specifically as possible.  If you cannot recall or locate the details requested, please provide as much information as you can after making a good-faith inquiry and search.  For example, if a question asks for a date and the exact date is not known or capable of being ascertained, an approximate date should be provided (e.g., "approximately mid-2001").  You may and should consult records in your possession that contain responsive information to assist you in responding.

     5.     You must promptly supplement your responses if you learn that they are incomplete or incorrect in any material respect.  Each question in this Fact Sheet is continuing in nature and requires supplemental answers if you obtain further information between the time of answering and the trial.

     6.     Each question in this Fact Sheet should be construed independently, unless otherwise noted. No question should be construed by reference to any other question if the result is a limitation of the scope of the answer to such question.

     7.     The questions herein do not seek the discovery of information protected by the attorney-client privilege.

     8.     The words "and" and "or" should be construed as necessary to bring within the scope of the request all responses and information that might otherwise be construed to be outside its scope.

## DEFINITIONS

     1.     "Pharmacy Benefit Manager(s)" means the person or agency that manages Plaintiff's pharmacy network management, drug utilization review, and disease management programs for Plaintiff or on Plaintiff's behalf.

     2.     "Prescription Opioids" refers to FDA-approved pain-reducing medications consisting of natural, synthetic, or semisynthetic chemicals that bind to opioid receptors in a

Case 2:22-md-03080-BRM-RLS   Document 270-1   Filed 08/30/24   Page 168 of 198 PageID:
8505
Case 1:17-md-02804-DAP   Doc #: 638-7   Filed: 06/19/18   8 of 8. PageID #: 15359

patient's brain or body to produce an analgesic effect, including, but not limited to, the Prescription Opioids referenced in the Complaint for the wholesale distribution of which You seek to hold Defendants liable.

3.      "Medically Unnecessary Opioid" refers to (i) FDA-approved pain-reducing medications consisting of natural or synthetic chemicals that bind to opioid receptors in a patient's brain or body to produce an analgesic effect that (ii) were not prescribed or used for a medically appropriate indication, dosage, or method of administration.

4.      "You" and "Your" means each individual Plaintiff named in this action, including, its departments, divisions, agents, and/or employees.

5.      "Pharmacy" means a pharmacy located within Plaintiff's geographical boundaries.

7.      "Suspicious Order" means any order of Prescription Opioids placed by any source that Plaintiff contends should have been reported to the DEA or State authorities, including the Board of Pharmacy or equivalent.  Suspicious Orders are not limited to those placed with the Distributor Defendants, but include those placed with any entity that has a regulatory reporting obligation.

8.      "Opioid Task Force" means any group organized for the purpose of studying, evaluating, reporting about, investigating, making recommendations concerning, or otherwise considering the existence, origins, causes, responsible entities, effects, remedies, corrective measures for, or ways of combating the abuse, misuse, or addiction to opioids in Your geographical boundaries.

Case 2:22-md-03080-BRM-RLS   Document 270-1   Filed 08/30/24   Page 169 of 198 PageID:
8506
Case 1:17-md-02804-DAP   Doc #: 638-7   Filed 06/13/18   1 of 2. PageID #: 15560

Exhibit B

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | **Case No. 1:17-MD-2804** |
| ***APPLIES TO ALL CASES*** | **Hon. Dan A. Polster** |

## DEFENDANT FACT SHEET

Please provide the information below for each Defendant.  In answering these questions, please use the following definitions:

"You" or "Your" means the Defendant Family responding to this fact sheet.  For purposes of this Fact Sheet, "Defendant Family" consists of all corporate affiliates, subsidiaries, and related entities that are named as a Defendant in any action that is part of this MDL.

For purposes of this fact sheet, "Prescription Opioid Products" refers to the medications covered by DEA's ARCOS production:  oxycodone, hydromorphone, fentanyl, and hydrocodone.

1.  Identify the name, address and DEA registration number of each of Your distribution centers in the United States from January 1, 2008 to the present to the extent that information is reasonably available.

2.  For each DEA registration number identified in your response to No. 1, identify the following information to the extent that information is reasonably available:

| DEA Registration Number | DEA Registrant (legal entity holding the registration) | Domicile State | Home Office Location |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

3.  For each DEA registration number identified in response to No. 2, above, please provide the locations for each distribution center that is operated under each DEA Registration Number from January 1, 2008 to present to the extent that information is reasonably available.  If the information has changed over time please indicate when those changes occurred.

Case 2:22-md-03080-BRM-RLS   Document 270-1   Filed 08/30/24   Page 170 of 198 PageID:
8507
Case 1:17-md-02804-DAP   Doc #: 638-27 Filed: 06/13/18   2 of 2 PageID #: 15639

| DEA Registration Number | Location #1 | Location #2 | Location #3 | Location #4 |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

4. Please provide a description or information sufficient to show the corporate structure that contains each of the current DEA Registrants identified in Your response to No. 2, above for the time period January 1, 2008 to present. If there have been changes in the corporate structure during this timeframe specify or provide information sufficient to show the structural change(s) and when they occurred. This request can be satisfied by providing organizational chart(s) containing the entities identified in Your Response to No. 2 above for the requested time period.

5. Please identify the officers and directors of each current DEA Registrant identified in Your Response to No. 2 above, as well as their title.

6. For each Prescription Opioid Product You manufactured and/or distributed from January 1, 2008 to present, provide the following information to the extent reasonably available:

| Proprietary Name/Established USAN Name | NDC # | NDA # | Dosage Forms/Strength | Date of First Manufacture or Distribution, as applicable | Date on Which You Stopped Manufacture or Distribution, as applicable |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

# EXHIBIT 13

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | **MDL 2804** |
| | ) | **Case No. 1:17-md-2804** |
| THIS DOCUMENT RELATES TO: | ) ) | |
| *Cases filed by Third Party Payor and Hospital Plaintiffs* | ) ) ) | **Judge Dan Aaron Polster** |
| | ) | **BELLWETHER ORDER** |
| | ) ) ) ) ) | |

On February 24, 2023, the Court held a status conference to establish a bellwether trial selection procedure for cases filed by third party payor and hospital plaintiffs against manufacturer, distributor, and pharmacy defendants. Counsel for the hospital plaintiffs represented they were actively pursuing mediation, so it would be in the best interest of all parties to defer selection of potential hospital bellwether cases at this time. The Court agrees and therefore will not now choose bellwether cases filed by hospital plaintiffs. The Court will revisit this issue depending on how mediation progresses.

Regarding cases filed by third party payors, there is no mediation currently scheduled. Accordingly, the procedures and deadlines for the bellwether selection process for third party payor cases shall be as follows:

- **March 15, 2023**: The parties shall agree, to the maximum extent possible, on the form and content of the Plaintiff Fact Sheets (PFS) to be used in the selection process. The content of the PFSs must include the proper venue for any TPP case that was direct-filed in the

MDL. Any disagreement regarding PFS content shall be brought promptly to the attention of Special Master Cohen.

- **March 15, 2023**: Defendants shall identify *up to* ten potential bellwether cases per industry group, for a total of thirty cases. Plaintiffs shall identify *at least* three cases per industry group for a total of nine cases. The cases identified by the parties must have venue in as many different federal circuits as reasonably possible to ensure the best chance for geographical diversity during the strike process.

- **June 23, 2023**: Plaintiffs shall provide a PFS for each case identified by either party. If possible, plaintiffs shall roll out these PFSs before the deadline.

- **July 7, 2023**: From the potential cases identified on March 15, 2023: (1) Plaintiffs shall propose three bellwether cases for each industry group (manufacturers, distributors, and pharmacies) and provide the selections to opposing counsel; and (2) each defendant industry group shall propose three bellwether cases for its own industry group and provide the selections to opposing counsel.

- **July 11, 2023**: For each industry group, each side shall strike two of the opposing side's selections, leaving one defendant selection and one plaintiff selection per industry group, for a total of six bellwether cases. Picks and strikes must be exercised in a manner that results in bellwether cases in *at least* three federal circuits. The parties may also simply agree on one or more bellwether cases.

        **IT IS SO ORDERED.**

         <u>/s/ Dan Aaron Polster</u> <u>February 28, 2023</u>
        **DAN AARON POLSTER**
        **UNITED STATES DISTRICT JUDGE**

# EXHIBIT 14

1

2

3

4

5

6

7      [*Submitting Counsel on Signature Page*]

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11    IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 19-md-02913-WHO |
| 12 | **JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND PROPOSED AGENDA** |
| 13 _____ | |
| 14    This Document Relates to: | |
| 15    ALL ACTIONS | |
| 16 | |

17          Pursuant to Civil Local Rule 16-10(d) and the Court's September 21, 2020 Minute Order

18   (ECF No. 993), counsel for Defendants Juul Labs, Inc. ("JLI"), Altria,[1] Director Defendants,[2] E-

19   Liquid Defendants,[3] Retailer Defendants,[4] and Distributor Defendants[5] (collectively

20   "Defendants"), and Plaintiffs' Co-Lead Counsel ("Plaintiffs") (collectively referred to herein as

21   _____

22   [1] "Altria" refers to Altria Group, Inc., and the Altria-affiliated entities named in Plaintiffs'
       Consolidated Class Action Complaint and Consolidated Master Complaint (collectively,
23   "Complaints"), *see* ECF Nos. 387, 388.

24   [2] "Director Defendants" refers to Messrs. James Monsees, Adam Bowen, Nicholas Pritzker,
       Hoyoung Huh, and Riaz Valani.

25   [3] "E-Liquid Defendants" refers to Mother Murphy's Labs, Inc., Alternative Ingredients, Inc.,
       Tobacco Technology, Inc., and Eliquitech, Inc.

26   [4] "Retailer Defendants" refers to Chevron Corporation, Circle K Stores, Inc., Speedway LLC, 7-
27   Eleven, Inc., Walmart, and Walgreen Co.

28   [5] "Distributor Defendants" refers to McLane Company, Inc., Eby-Brown Company, LLC, and
       Core-Mark Holding Company, Inc.

the "Parties") respectfully provide this Joint Case Management Statement in advance of the Further Case Management Conference scheduled for October 16, 2020.

**I.   PARTICIPANT INFORMATION**

The conference will proceed via Zoom, and the Parties will not appear in person.  Anyone who wishes to attend the conference must log in using the information available at: https://www.cand.uscourts.gov/judges/orrick-william-h-who/.

**II.   ISSUES TO BE DISCUSSED BELOW AND PROPOSED AGENDA**

　　1.   Status of Case Filings and Dismissals

　　2.   Case Management Matters

　　3.   Rule 26(f) Report

　　4.   Discovery Status

　　5.   ADR Status

**III.   STATUS OF CASE FILINGS AND DISMISSALS**

As of October 13, 2020, 1130 cases are pending in this MDL, naming 82 defendants. A list of these defendants is attached as **Exhibit A**.  To date, 963 personal injury cases and 131 government entity cases (including 93 school districts, 18 counties, 1 city, and 19 tribes) have been filed in this MDL.  75 MDL plaintiffs have voluntarily dismissed their cases (71 personal injury plaintiffs and 4 class plaintiffs).

There are 223 complaints pending in JCCP 5052, which is assigned to Judge Ann I. Jones of the Los Angeles Superior Court as the Coordination Trial Judge.  There are 58 government entity cases, including 52 school districts and 162 personal injury cases brought on behalf of over 2200 individual personal injury plaintiffs.  There are 16 defendants named in those cases.

The Parties are also aware of 14 cases filed by state attorneys general specifically: California, Illinois, Hawaii, New York, North Carolina, Mississippi, Minnesota, Washington D.C., Arizona, Pennsylvania, New Mexico, Massachusetts, Colorado, and Washington. Plaintiffs' Liaison Counsel continue their outreach to various State Attorneys General to discuss cooperation with this MDL.  Counsel for Plaintiffs and Defendants will discuss a process for updating the Court and the Parties regarding matters of significance in the "Related Actions", as

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

1    required pursuant to the Coordination Order (CMO 9 at 1, 3), including whether such updates

2    should be provided as part of the Joint CMC Statements or on the first business day of each

3    month (as is currently in the CMO).

4    **IV. CASE MANAGEMENT MATTERS**

5        **A.    Bellwether Jurisdiction Issues**

6        Pursuant to the Court's September 21, 2020 Minute Order, the Parties continued to meet

7    and confer and attempt to "agree on a solution that allows for the trial of representative cases over

8    which the Court can assert jurisdiction in the Northern District of California as bellwether." (ECF

9    No. 993 at 2.)   The Parties have been unable to reach an agreement on such a solution and

10   therefore propose each Party file simultaneous separate briefs of no more than 15 pages on

11   October 22, 2020.

12       In response to the Court's request for input on the mechanical procedure for the Court's

13   random selections for bellwether candidates, the  Parties will participate in a conference call with

14   Brown Greer, the vendor charged with maintaining the fact sheets, who we expect has the

15   technology and experience to do randomized selections.

16       **B.    Government Entity Bellwether Selection Protocol**

17       The Parties are meeting and conferring regarding the appropriate procedures for selecting

18   the Government Entity Bellwethers.   While the Parties are making progress, they request

19   additional time to either reach agreement on a selection procedure or narrow the issues that must

20   be presented to the Court for resolution.  Subject to the Court's approval, the Parties propose

21   submitting either agreed-upon or disputed procedures as part of the Case Management

22   Conference for the November status conference.

23       **C.    Class Bellwethers**

24       As discussed in previous case management statements, the Parties to the class action have

25   agreed that any California subclass and federal claims remaining after the Court rules on motions

26   to dismiss will be among the initial summary judgment, class certification, and trial bellwether

27   candidates. The Parties to the class action reserved their rights to propose additional state-

28   subclass claims for inclusion in the bellwether pool, but agreed that the later inclusion of any such

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

additional subclass claims will not impact or delay the schedule for adjudicating and resolving (through summary judgment, class certification, and/or trial) the claims asserted by the proposed California or federal subclasses.

Plaintiffs continue to advocate for Defendants' prompt identification of additional state subclass claims for consideration as class bellwethers, and remain available to confer with Defendants in this regard. Plaintiffs have indicated that they will likely amend the Consolidated Class Action Complaint to add or dismiss class representatives and/or to address the Court's rulings on the pending motions to dismiss, but have continued to engage with Defendants on the scope of discovery they seek from the various class representatives. Defendants are considering whether additional subclasses are appropriate, and believe a settled pleading and further information (including basic discovery from the proposed class representatives and the receipt of any amended complaint) should inform this discussion.

## V.    26(F) REPORT

Plaintiffs and Defendants continue Rule 26 discussions. The parties had several meet-and-confer sessions and offer the following report:

### A.    Initial Disclosures

Plaintiffs and Defendants are continuing to meet and confer regarding supplementing certain Defendants' Initial Disclosures with the production of insurance policy documents, to the extent applicable, and the Parties continue to discuss the timing and Plaintiffs' Initial Disclosure Requirements.

### B.    Changes to Default Discovery Limits

The Parties continue to confer regarding changing the default discovery limits to accommodate the scale and complexity of the litigation.

## VI.    DISCOVERY STATUS

Since the September 21, 2020 Case Management Conference, discovery-related developments include the following:

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

**A.** **Party Discovery**

*Personal Injury Plaintiff Fact Sheets*

On September 21, 2020, the Court entered CMO 12 regarding Supplemental Plaintiff Fact Sheets and Retailer Defendant Fact Sheets.

*Government Entity Fact Sheets*

The Parties were unable to reach agreement on Government Entity fact sheets and submitted competing fact sheets to Judge Corley for resolution. On October 9, 2020, Judge Corley issued an order resolving many of the issues relating to the Government Entity fact sheets and providing additional guidance to the Parties regarding finalizing of the fact sheets. As directed by Judge Corley, the Parties are meeting and conferring and, if necessary, will submit any narrow outstanding disputes to her by October 16th. Dkt. No. 1038. The Parties appreciate Judge Corley's guidance and anticipate being able to reach agreement on any outstanding issues.

*Class Representative Discovery*

The Parties continue to meet and confer concerning discovery of class representatives, and will bring any remaining disputes to Judge Corley.

*JLI*

*Status.* To date, Plaintiffs have served JLI with 390 requests for production of documents, and 42 interrogatories (not including subparts). JLI has produced over 1.3 million documents, constituting over 6.5 million pages of documents, all of which have been previously produced to state and federal regulatory bodies investigating JLI. On October 7, JLI made its most recent rolling production, which included over 300,000 documents. On October 8, 2020, JLI and Plaintiffs reached agreement on search terms, and JLI and Plaintiffs have agreed to a set of custodians, which includes 99 individuals. The parties are conferring over the date by which JLI will substantially complete their document production and will bring disputes to Judge Corley promptly.

*PMTA-related discovery*. On October 8, 2020, Judge Corley ordered JLI to produce the Premarket Tobacco Product Application ("PMTA") it recently submitted to the FDA regarding JUUL products on or before October 15, 2020. Dkt. No. 1036. JLI will produce the PMTA with and subject to heightened confidentiality protections, including those available under the

1    operative Protective Order. Parties will confer as to any additional PMTA-related discovery

2    Plaintiffs seek and bring any unresolved issues to Judge Corley.

3        *Rule 30(b)(6) depositions.* On August 31, 2020, Plaintiffs served their First Notice of

4    Deposition pursuant to Fed. R. Civ. P. 30(b)(6) regarding the design and development of JUUL,

5    sources of JUUL ingredients and the content of JUUL warnings, and JLI served its responses to

6    and objections to the Notice and the accompanying document requests on September 30, 2020,

7    while reserving all rights with respect to further motion practice if necessary. Plaintiffs served a

8    second notice regarding marketing and advertisements on October 5, 2020. Plaintiffs have

9    requested that JLI produce a witness or witnesses before the end of November. JLI has not

10   foreclosed the possibility of a witness on certain 30(b)(6) topics by the end of November,

11   provided that issues concerning sequencing, scope, and other objections are resolved such that the

12   timing works on the topics that the parties agree should and/or the Court rules may proceed.  The

13   parties will meet and confer over scope of the topics and bring to Judge Corley any areas in

14   dispute promptly.

15       Plaintiffs anticipate noticing multiple 30(b)(6) depositions, with each notice covering

16   separate, non-overlapping topics. To the extent not covered in the topics noticed to date (design &

17   development, marketing), Plaintiffs have advised that they plan to seek to depose JLI regarding

18   sales, youth prevention, and product testing/safety. Plaintiffs reserve the right to add additional

19   non-duplicative topics to this initial list. JLI does not agree to waive its right to seek to limit

20   Plaintiffs to one 30(b)(6) deposition notice and are open to meeting and conferring with Plaintiffs

21   on whether additional topics may be added to the extant Notice.

22       *Privilege.*  The parties continue to meet and confer regarding JLI's privilege log entries

23   and will bring any unresolved issues to Judge Corley promptly.

24       ***Altria***

25       Altria has responded to certain of Plaintiffs' interrogatories and requests for production.

26   Altria's production to date includes approximately 716,000 documents consisting of over 4.8

27   million pages, largely including documents previously produced to the FTC.  Plaintiffs and Altria

28   have reached agreement on custodians and search terms.  The parties are conferring over the date

by which Altria will substantially complete their document production and will bring disputes to Judge Corley promptly.

Plaintiffs and Altria continue to meet and confer regarding Altria's responses to Plaintiffs' written discovery and will bring any unresolved issues to Judge Corley promptly.

### *Director Defendants*

Plaintiffs and the Director Defendants continue to meet and confer regarding the Director Defendants' responses to Plaintiffs' initial sets of written discovery and will bring any unresolved issues to Judge Corley promptly.

### *Retailer, Distributor, and E-Liquid Defendants*

Plaintiffs served the Retailer Defendants with written discovery requests on August 17, 2020. Plaintiffs served the Distributor Defendants with written discovery requests on August 26, 2020. Plaintiffs served the E-Liquid Defendants with written discovery requests on June 24, 2020. On August 24, 2020, Plaintiffs and the liaison counsels for the Retailer, Distributor, and E-Liquid Defendants held a meet and confer teleconference to discuss custodian identification and ESI search terms.

Plaintiffs and the Retailer Defendants held a meet-and-confer session on September 15 regarding these Defendants' responses to Plaintiffs' first set of interrogatories.

Plaintiffs and the Distributor Defendants held meet-and-confer sessions on September 25 and September 29 regarding proposed ESI custodian lists and various issues in connection with Plaintiffs' first set of requests for production and first set of interrogatories. The Retailer and Distributor Defendants have all provided Plaintiffs with their proposed ESI custodian lists.

### B.  Coordination with JCCP on Discovery

The MDL Plaintiffs are holding weekly calls with JCCP counsel regarding discovery coordination. Defendants appreciate and encourage coordination between the MDL and the JCCP, as detailed by the Joint Coordination Order (CMO # 9, ECF No. 572) and the Deposition Protocol (CMO #10, ECF No. 573).

7

### C.  Update Regarding Third-Party Subpoenas

Plaintiffs have issued third party subpoenas to more than 153 entities or persons. A number of recipients have produced documents, while negotiations are ongoing with numerous others.

### D.  Deposition Protocol and Joint Use of Vendors

The Parties conferred and reached agreement regarding an amended Deposition Protocol, filed on August 18, 2020 (Dkt. 888).  After reviewing more than a dozen responses to Plaintiffs' requests for proposals, testing multiple platforms, and reaching consensus with Plaintiffs' leadership in the JCCP, Plaintiffs have selected a deposition vendor. Throughout this process, Plaintiffs attempted to work with Defendants to jointly retain a deposition vendor to minimize costs and promote efficiency, but those discussions have not progressed.

## VII.  ADR STATUS

Pursuant to Civil Local Rule 16-10(d), the Parties report that they continue to confer with Settlement Master Thomas J. Perrelli and cooperate with his recommendations.

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

1     Dated:  October 14, 2020               Respectfully submitted,

2

3     By: /s/ *Renee D. Smith*              By: /s/ *Sarah R. London*

4     Renee D. Smith (*pro hac vice*)            Sarah R. London
5     James F. Hurst (*pro hac vice*)            **LIEFF CABRASER HEIMANN &**
    **KIRKLAND & ELLIS LLP**             **BERNSTEIN**
6     300 N. LaSalle                     275 Battery Street, Fl. 29
    Chicago, IL 60654                  San Francisco, CA 94111
7     Telephone: (312) 862-2310         Telephone:  (415) 956-1000

8
    By: /s/ *Peter A. Farrell*              By: /s/ *Dena C. Sharp*
9

10     Peter A. Farrell (*pro hac vice*)          Dena C. Sharp
    **KIRKLAND & ELLIS LLP**             **GIRARD SHARP LLP**
11     1301 Pennsylvania Ave, N.W.          601 California St., Suite 1400
    Washington, D.C. 20004            San Francisco, CA 94108
12     Telephone: (202) 389-5959         Telephone: (415) 981-4800

13
    By: /s/ *Gregory P. Stone*            By: /s/ *Dean Kawamoto*
14

15     Gregory P Stone, SBN 78329         Dean Kawamoto
    Bethany W. Kristovich, SBN 241891     **KELLER ROHRBACK L.L.P.**
16     **MUNGER, TOLLES & OLSON LLP**   1201 Third Ave., Ste. 3200
    350 South Grand Avenue           Seattle, WA 98101
    Fiftieth Floor                     Telephone:  (206) 623-1900
17     Los Angeles, California 90071-3426
    Telephone:     (213) 683-9100
18
                                    By: /s/ *Ellen Relkin*
19     *Attorneys for Defendant Juul Labs, Inc.*

20                                    Ellen Relkin
                                   **WEITZ & LUXENBERG**
21                                    700 Broadway
                                   New York, NY 10003
22                                    Telephone: (212) 558-5500

23                                    *Co-Lead Counsel for Plaintiffs*

24

25

26

27

28

By: _/s/ John S. Massaro_

**ARNOLD & PORTER KAYE SCHOLER LLP**

John C. Massaro (admitted pro hac vice)
Jason A. Ross (admitted pro hac vice)
601 Massachusetts Ave., N.W.
Washington D.C. 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
john.massaro@arnoldporter.com
Jason.ross@arnoldporter.com

_Attorneys for Defendants Altria Group, Inc. and Philip Morris USA Inc._


By: _/s/ Eugene Illovsky_

**BOERSCH & ILLOVSKY LLP**

Eugene Illovsky
Martha Boersch
Matthew Dirkes
1611 Telegraph Ave., Suite 806
Oakland, CA 94612
Telephone: (415) 500-6643
eugene@boersch-illovsky.com
martha@boersch-illovsky.com
matt@boersch-illovsky.com

_Attorneys for Defendant Adam Bowen_


By: _/s/ James Kramer_

**ORRICK HERRINGTON & SUTCLIFFE LLP**

James Kramer
James Thompson
Walt Brown
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
jthompson@orrick.com
jkramer@orrick.com
wbrown@orrick.com

_Attorneys for Defendant James Monsees_


By: _/s/ Michael J. Guzman_

**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**

Mark C. Hansen
Michael J. Guzman
David L. Schwartz
Sumner Square, 1615 M St., N.W., Suite 400
Washington, DC 20036
Telephone: (202) 326-7910
mguzman@kellogghansen.com

_Attorneys for Defendants Nicholas Pritzker, Riaz Valani, and Hoyoung Huh_

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

By: */s/ Mitchell B. Malachowski*

**TYSON & MENDES, LLP**

James E. Sell
Mitchell B. Malachowski
Stephen Budica
April M. Cristal
523 4th Street, Suite 100
San Rafael, CA 94901
Telephone: (628) 253-5070
jsell@tysonmendes.com
mmalachowski@tysonmendes.com
sbudica@tysonmendes.com
acristal@tysonmendes.com

*Attorneys for Defendants Mother Murphy's Labs, Inc., and Alternative Ingredients, I*

By: */s/ Michael L. O'Donnell*

**WHEELER TRIGG O'DONNELL LLP**

Michael L. O'Donnell
James E. Hooper
Marissa Ronk
370 17th Street, Ste. 4500
Denver, CO 80202
Telephone: (303) 244-1850
Odonnell@wtotrial.com
hooper@wtotrial.com
Ronk@wtotrial.com

*Attorneys for Defendant McLane Company, Inc.*

By: */s/ David R. Singh*

**WEIL, GOTSHAL & MANGES LLP**

David R. Singh
Bambo Obaro
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065
Telephone: (650) 802-3083
david.singh@weil.com
bambo.obaro@weil.com

*Attorneys for Defendant Core-Mark Holding Company, Inc.*

By: */s/ Robert Scher*

**FOLEY & LARDNER LLP**

Robert Scher
Peter N. Wang
Graham D. Welch
Dyana K. Mardon
90 Park Avenue
New York, NY 10016-1314
Telephone: (212) 682-7474
Facsimile: (212) 687-2329
rscher@foley.com
pwang@foley.com
gwelch@foley.com
dmardon@foley.com

*Attorney for Defendants Tobacco Technology, Inc., and Eliquitech, Inc.*

By: */s/ Christopher J. Esbrook*

**ESBROOK LAW LLC**

Christopher J. Esbrook
David F. Pustilnik
Michael S. Kozlowski
77 W. Wacker, Suite 4500
Chicago, IL 60601
Telephone: (312) 319-7681
christopher.esbrook@esbrooklaw.com
david.pustilnik@esbrooklaw.com
michael.kozlowski@esbrooklaw.com

*Attorneys for Defendants Eby-Brown Company, LLC, Circle K Stores, and 7-Eleven, Inc., Speedway, and Walgreen Co.*

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT

1   By: */s/ Donald F. Zimmer, Jr.*

2   **KING & SPALDING LLP**

3   Donald F. Zimmer, Jr.
    Quyen L. Ta
4   Jennifer T. Stewart
    101 Second Street, Suite 1000
5   San Francisco, CA 94105
    Telephone:   (415) 318-1200
6   fzimmer@kslaw.com
    qta@kslaw.com
7   jstewart@kslaw.com

8   *Attorneys for Defendant Walmart Inc.*

9   By: */s/ Charles C. Correll Jr.*

10   **KING & SPALDING LLP**

11   Andrew T. Bayman (Admitted *pro hac vice*)
    1180 Peachtree Street, Suite 1600
12   Atlanta, GA 30309
    Telephone: (404) 572-4600
13   abayman@kslaw.com

    and
14
    Charles C. Correll, Jr.
15   Matthew J. Blaschke
    Alessandra M. Givens
16   101 Second Street, Suite 2300
    San Francisco, CA 94105
17   Telephone: (415) 318-1200
    ccorrell@kslaw.com
18   mblaschke@kslaw.com
    agivens@kslaw.com
19
    *Attorneys for Defendant Chevron Corporation*
20

21

22

23

24

25

26

27

28

# EXHIBIT 15

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Case No.  19-md-02913-WHO   (JSC)

IN RE JUUL LABS, INC.,
MARKETING, SALES PRACTICES &
PRODUCTS LIABILITY LITIGATION

**ORDER REGARDING GOVERNMENT
ENTITY PLAINTIFF FACT SHEETS**

Re: Dkt. No. 1016

On October 7, 2020, the Court held a formal discovery hearing on the parties' disputes over the questions that should be included in the Government Entity and School District Plaintiff Fact Sheets (PFSs).  Having heard argument on the matter, the Court rules as follows.

Plaintiffs' PFSs provide – with some significant clarifications and a few additions/modifications– the relevant information necessary for the parties and the Court to engage in bellwether selection, but also serve the purposes identified in the Joint Letter.  Dkt. No. 1016 (purposes of PFSs include "to facilitate settlement negotiations" and "to screen cases in which plaintiffs lack information to support a claim against a defendant").  Much of the information Defendants seek is inappropriate for inclusion in a fact sheet.  For example, they ask Plaintiffs to quantify the amount of damages per category suffered, and to allocate such damages among Defendants.  Such quantification and allocation is likely not possible until expert reports are prepared.  Other questions ask minutia of limited relevance at this stage, for example the name of each school in a district and the number of students per school.  Further, this detailed information is likely available online if Defendants actually want it now.  On the other hand, some of the information Defendants seek and that Plaintiffs do not appear to include seems relevant, helpful and, with modification, not burdensome.

By this Order the Court does not intend to dictate the final form of the fact sheets; instead, it is ordering the parties to begin with Plaintiffs' PFSs and then make changes in accordance with the Court's direction given below.

## A. Clarifications

### 1. "Reports" "in the ordinary course of business"

The primary clarification is that the "reports" maintained "in the ordinary course of business" – as used throughout Plaintiffs' proposed PFSs – means any existing report, survey, analysis, study, or other document tracking or otherwise providing an overview of the issues (JUUL use/prevention/discipline, other non-JUUL e-cigarette use/prevention/discipline, tobacco use/prevention/discipline, etc.). The information provided and documents produced under Plaintiffs' PFSs as modified by this Order would necessarily include reports, surveys, analyses, studies, etc., that document the prevalence of JUUL use (and ones discussing the prevalence of the comparator products/substances) as well as the expenditures each plaintiff and any of its subdivisions made to address the use of those products/substances.

If these types of documents exist, they are covered by the Plaintiffs' proposed PFSs and should be produced. What is not covered and does not need to be described, located, or produced is, for example, information regarding expenditures made at the school/district/municipal levels that has not been compiled and summarized, evidence regarding records of discipline at the school or district level that has not been compiled and summarized, or emails/other forms of communication that touch upon the relevant issues. In other words, Plaintiffs are not required to compile, sort, and describe or produce underlying records that might show the prevalence of use or expenditures incurred to address these products/substances.

That already compiled information is only available or stored via email is not a reason for it not to be produced. The Court expects each Plaintiff to diligently investigate whether it has compiled in any form the information sought. This investigation might involve a district employee asking an appropriate person at each school to provide the district with a document/report that has already compiled information, or a municipality asking an appropriate person at particular city agencies. For example, each Government Entity should gather all reports (as defined above) that they have and can reasonably locate that describe, record, etc. e-cigarette and vaping use and consequent problems/issues.

//

United States District Court
Northern District of California

### 2. "Citizen"

The non-school district Plaintiff PFS uses the term "citizen." The Court assumes, but does not know, that Plaintiffs are using "citizen" to mean residents within the geographic bounds of the government entity plaintiff and not in a legalistic way. The parties might want to define that term so that the fact sheets are answered consistently by each responding plaintiff.

### B. Additions/Modifications

#### 1. Numbers of people

One minor difference between Plaintiffs' and Defendants' proposed PFSs is that Plaintiffs call for current student numbers (School PFS Nos. 8-12) or citizens (Government No. 9), whereas Defendants ask for numbers for each year from 2010 to the present. Numbers of students/residents could be important to bellwether selection, and the current number should give the parties a good estimate unless the current numbers are significantly different from past numbers. Accordingly, Plaintiffs' PFSs should add a question that asks whether the number of students in the District or persons within the Government Entity's jurisdiction has been higher or lower in the past 10 years by a significant percentage (for example, 25%) or whatever percentage would actually be material. If the answer is yes, then the Plaintiff should state when it was higher or lower and by approximately how much.

#### 2. Communications between the parties

Similarly minor (but given the nature of the parties' submission the Court has no way of knowing if material), Defendants' PFSs ask for interactions with Defendants while Plaintiffs ask only if Defendants contacted Plaintiffs. (*See e.g.,* Plaintiffs' Government No. 16.) There seems to be no reason to limit the question to contacts initiated by defendants as opposed to interactions between the parties, to the extent known as the burden on the plaintiffs appears the same regardless. If a municipality reached out to a Defendant (perhaps to ask for its assistance in combatting underage vaping, for example) that does not seem materially different from Defendants initiating contact with Plaintiffs.

#### 3. Government entities representing schools

Defendants' Government Entity PFS includes questions related to school districts similar

1  to those included in the School District fact sheets to the extent the government entity is seeking

2  damages on behalf of the schools.  Plaintiffs do not include such questions in their Government

3  PFS.  If that omission means that no government entity plaintiff is seeking damages on behalf of

4  school districts then the Government Entity Plaintiffs should make that representation; if some are,

5  then the Court can discern no good reason why these Government Entities should not have to

6  answer at least some of the same questions as the School Districts to the extent they are seeking

7  similar damages.

### 4.  Other issues

8  The above may or may not be at issue and there may be other similar issues; the parties'

9

10  submissions did not really explain the many differences in their questions.  The Court nonetheless

11  hopes that this provides the guidance needed to finalize the sheets.

### C.  Dismissals

12

13  As to the dispute over timing and method of dismissal with prejudice for Government

14  Entity and School District Plaintiffs who failed to submit adequate PFSs and who have already

15  been dismissed without prejudice (under the parties' agreed-to provisions in the Proposed PFS

16  Implementation Order, Dkt. No. 1016-3), Defendants may – consistent with the provisions

17  provided in the Personal Injury PFS Implementation Order – move the Court no earlier than 30

18  days after the dismissal without prejudice to convert identified cases to an Order of Dismissal with

19  prejudice.  The inclusion of this provision does not in any way reduce or mitigate Defendants'

20  burden in proving to the Court that a dismissal with prejudice is warranted under whatever statute,

21  rule or caselaw Defendants bring their motion.

### CONCLUSION

22

23  The parties are ordered to meet and confer by video and submit revised fact sheets on or

24  before October 16, 2020.  As explained above, the parties shall start with Plaintiffs' PFSs and then

25  modify from there.  To the extent there are still questions to which the parties cannot agree after

26  exhausting all good faith efforts, by that same date the parties shall submit the agreed-to PFSs

27  together with a submission that identifies each and every point of disagreement in an accessible

28  format.  The Court will not hold a hearing so the submission must address each remaining dispute

1    in sufficient detail for the Court to resolve.  The Court is not inviting such a submission; instead, it

2    is its hope that this Order can help the parties come to resolution.

3         **IT IS SO ORDERED.**

4    Dated: October 9, 2020

5

6

7                               JACQUELINE SCOTT CORLEY
                               United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

# EXHIBIT  16

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case 2:23-md-03080**<br>**MDL No. 3080**<br><br>**JUDGE BRIAN R. MARTINOTTI**<br>**JUDGE RUKHSANAH L. SINGH** |

**THIS DOCUMENT RELATES TO:**

### PLAINTIFF FACT SHEET

Plaintiff (also referred to as "You" throughout) shall provide information responsive to the questions set forth below. Instructions and Definitions are provided at the end of this document. You shall provide information reasonably available to You and are not excused from providing the requested information for failure to appropriately investigate Your case. Plaintiff shall supplement its responses if it learns that they are incomplete or incorrect in any material respect.

**PLAINTIFF**: _____

Case caption and number**:**

_____

Name of Court in which complaint was initially filed

Filing date

Named Defendants

Name, firm and email of principal attorney(s) representing You

_____


Description of the citizens and entities/departments that You represent in this lawsuit:


Drugs at issue in lawsuit:

1

## I.      CLAIM INFORMATION

**A.      Injuries, Damages, and Persons with Relevant Knowledge:**

1.      Are You seeking in Your lawsuit any damages based on Your allegations? Yes/No

      a.      If yes, for what period of time are You alleging damage?

      b.      If yes, identify each category of damage that You allege.  This request is not designed to require an expert evaluation.

2.      Please identify each category of damages or monetary relief that You allege, including all injunctive relief that You seek.

      a.      If You are seeking injunctive relief, identify each category of injunction relief that you seek. This request is not designed to require an expert evaluation.

3.      Identify the approximate date (i.e. month and year) when You claim You were first injured and began to incur damages as a result of Defendants' alleged conduct. This request is not designed to require an expert evaluation.

4.      Identify by name, title, and dates of employment Your current employees or representatives with knowledge regarding the pricing scheme at issue in this litigation and/or the harm it has caused.

5.      Identify every medical insurance plan or carrier or workers' compensation program used for any of Your employees since January 1, 2011 for which You are seeking damages. For each, please provide the following information:

| Name | Dates Offered | Plan's Pharmacy Benefit Manager / Claims Processor |
|------|---------------|----------------------------------------------------|
|      |               |                                                    |
|      |               |                                                    |
|      |               |                                                    |
|      |               |                                                    |

6.      Identify the names of every formulary that were utilized by any entity/department/person on whose behalf that You are claiming damages:

| Name | Dates Offered | Formulary Name |
|------|---------------|----------------|
|      |               |                |
|      |               |                |
|      |               |                |
|      |               |                |

7.     Identify every Pharmacy Benefit Manager and other third-party administrator You used for your Employees since January 1, 2011. For each response, please provide the following information:

| Name | Relevant Dates | Name and Title of Individuals Who Oversaw Program |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

8.     If You assert Medicaid claims, identify every medical insurance plan or carrier used by your State Medicaid program since January 1, 2011. For each, please provide the following information:

| Name | Dates Offered | Plan's Pharmacy Benefit Manager / Claims Processor |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

9.     If You asserted Medicaid claims, identify every Pharmacy Benefit Manager and other third-party administrator used by your State Medicaid program since January 1, 2011. For each response, please provide the following information:

| Name | Relevant Dates | Name and Title of Individuals Who Oversaw Program |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

10.    If You directly purchased, took possession or distributed the At-Issue Drugs, provide sufficient information to identify the volume, years, drugs at issue, etc.

## II.     DOCUMENTS

**Please produce the following documents:**

1. Requests for Proposal (RFPs) relating to the provision of pharmacy benefit management services issued by or on behalf of Plaintiff during the relevant time period and all proposals submitted in response thereto.

2. Each contract, including drafts, amendments, riders, schedules, supplements, or other addenda that Plaintiff entered into with a PBM during the relevant time period, or that otherwise was in effect during the relevant time period.

3. Contracts with third-party advisors in effect during the relevant time period that relate to prescription drug benefits, as well as any presentations, reports, analyses, or memoranda relating to prescription drug benefits Plaintiffs chose or did not choose.

4. Documents and data sufficient to show Plaintiff's expenditures on the drugs at issue for each year of the relevant time period, as well as the corresponding amounts paid by plan beneficiaries/consumers for those purchases, and any rebates paid between Plaintiff and its PBM.

5. Documents sufficient to show when Plaintiffs learned of information related to other insulin pricing lawsuits or investigations, or PBM/drug pricing reform.

6. Documents received by Plaintiff that include representations made by PBMs about their services or made by Manufacturers about their list prices.

## II.     CERTIFICATION

I declare under penalty of perjury that all of the information provided in this Plaintiff's Fact Sheet is complete, true, and correct to the best of my knowledge and information, and that I have provided all of the requested documents that are reasonably accessible to me and/or my attorneys, to the best of my knowledge.

_____     _____     _____
Signature                                          Print Name                                    Date

### III.  INSTRUCTIONS

1.   The Fact Sheet shall be completed in accordance with the requirements and guidelines set forth in the applicable implementing Order.

2.   Each Plaintiff must complete this separate form by electronically inserting the responsive information. The electronic version of this Fact Sheet can expand to accommodate as much information as is necessary to fully answer any of these questions.

3.   All the responses in this Fact Sheet or an amendment thereto are binding upon Plaintiff as if they were contained in answers to interrogatories. Any responses, however, are without prejudice to future supplementation.

4.   In completing this Fact Sheet, you are under oath and must provide information that is true and correct. You must answer every question as specifically as possible. If you cannot recall or locate the details requested, please provide as much information as you can after making a good-faith inquiry and search. For example, if a question asks for a date and the exact date is not known or capable of being ascertained, an approximate date should be provided (e.g., "approximately mid-2011"). You may and should consult records in your possession that contain responsive information to assist you in responding.

5.   You must promptly supplement your responses if you learn that they are incomplete or incorrect in any material respect. Each question in this Fact Sheet is continuing in nature and requires supplemental answers if you obtain further information between the time of answering and the trial.

6.   Each question in this Fact Sheet should be construed independently, unless otherwise noted. No question should be construed by reference to any other question if the result is a limitation of the scope of the answer to such question.

7.   The questions herein do not seek the discovery of information protected by the attorney-client privilege.

8.   The words "and" and "or" should be construed as necessary to bring within the scope of the request all responses and information that might otherwise be construed to be outside its scope.

### IV.  DEFINITIONS

1.   At issue drugs means diabetic treatments listed on Exhibit A hereto

2.   "You" and "Your" means each individual Plaintiff named in this action and the departments Plaintiff identifies herein.