# Exhibit 5

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case No. 2:23-MD-03080**<br>**MDL No. 3080**<br><br>**JUDGE BRIAN R. MARTINOTTI**<br>**JUDGE RUKHSANAH L. SINGH**<br><br>**ORAL ARGUMENT REQUESTED** |

**THIS DOCUMENT RELATES TO:**

*County of Albany, New York v. Eli Lilly, et al.*, No. 1:22-cv-00981
*King County v. Eli Lilly et al.*, No. 2:23-cv-21178
*Lake County, Illinois v. Eli Lilly, et al.*, No. 2:23-cv-08487

## PBM DEFENDANTS' BRIEF IN SUPPORT OF THEIR RULE 12(b)(6) <u>MOTION TO DISMISS</u>

(Counsel Listed on Next Pages)

Thomas P. Scrivo
Young Yu
**O'TOOLE SCRIVO, LLC**
14 Village Park Road
Cedar Grove, NJ 07009
T: (973) 239-5700
tscrivo@oslaw.com

Brian D. Boone
**ALSTON & BIRD LLP**
1120 S. Tyron St., Ste. 300
Charlotte, NC 28203
T: (704) 444-1000
brian.boone@alston.com

Elizabeth Broadway Brown
**ALSTON & BIRD LLP**
1201 W. Peachtree St. NW, Ste. 4900
Atlanta, GA 30309
T: (404) 881-7000
liz.brown@alston.com

Kelley Connolly Barnaby
**ALSTON & BIRD LLP**
950 F. Street, NW
Washington, D.C. 20004
T: (202) 239-3300
kelley.barnaby@alston.com

*Counsel for Defendants UnitedHealth Group Incorporated; OptumRx, Inc.; Optum, Inc.; and OptumInsight, Inc.*

Jason R. Scherr
Patrick A. Harvey
Lindsey T. Levy
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
jr.scherr@morganlewis.com
patrick.harvey@morganlewis.com
lindsey.levy@morganlewis.com
Tel: (202) 739-3000

-and-

Drew Cleary Jordan
Tanya Y. Shah
**MORGAN, LEWIS & BOCKIUS LLP**
502 Carnegie Center
Princeton, NJ 08540
drew.jordan@morganlewis.com
tanya.shah@morganlewis.com
Tel: (609) 919-6600

-and-

Katherine A. Vaky
**MORGAN, LEWIS & BOCKIUS LLP**
One Oxford Centre, Thirty Second Floor
Pittsburgh, PA 15219
kathryn.vaky@morganlewis.com
Tel: (412) 560-3300

*Counsel for Evernorth Health, Inc. (f/k/a Express Scripts Holding Company); Express Scripts, Inc.; Express Scripts Administrators, LLC; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; Medco Health Solutions, Inc., and The Cigna Group*

Kevin H. Marino
John D. Tortorella
**MARINO, TORTORELLA & BOYLE, P.C.**
437 Southern Boulevard
Chatham, New Jersey 07928
T: (973) 824-9300
F: (973) 824-8425
kmarino@khmarino.com
jtortorella@khmarino.com

Enu Mainigi
Craig Singer
R. Kennon Poteat III
A. Joshua Podoll
Benjamin Hazelwood
Daniel Dockery
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, S.W.
Washington, D.C. 20024
T: (202) 434-5000
F: (202) 434-5029
emainigi@wc.com
csinger@wc.com
kpoteat@wc.com
apodoll@wc.com
bhazelwood@wc.com
ddockery@wc.com

*Counsel for CVS Health Corporation;
CVS Pharmacy, Inc.; Caremark Rx,
L.L.C.; CaremarkPCS Health, L.L.C.;
and Caremark, L.L.C.*

# **TABLE OF CONTENTS**

Page

BACKGROUND ........................................................................................................2

ARGUMENT .............................................................................................................7

I.      THE COUNTIES' CONTRACTS WITH PBMS DOOM THEIR
        CLAIMS. ......................................................................................................7

II.     THE INDIRECT-PURCHASER RULE BARS MOST OF THE
        COUNTIES' CLAIMS. .................................................................................12

III.    THE COUNTIES' CLAIMS ARE UNTIMELY............................................18

        A.    No County's Alleged Injuries Accrued Within the Limitations
              Periods. ..............................................................................................20

        B.    The Counties Cannot Rely on Any Tolling Doctrine to Save Their
              Claims.................................................................................................23

IV.     THE COUNTIES FAIL TO PLEAD RICO CLAIMS.....................................25

        A.    The Counties Do Not Allege Predicate Acts of Mail or Wire Fraud. .26

              1.    The Counties Fail to Plead Any Fraudulent Misstatements. ....27

              2.    The Counties Fail to Plead Any Material Omissions...............30

        B.    The Counties Do Not Allege Proximate Cause...................................30

        C.    The Counties Fail to Allege a RICO Enterprise Distinct from the
              Alleged Acts of Racketeering..............................................................33

        D.    The Counties Fail to Plead that the PBMs Conducted the Affairs of an
              Enterprise............................................................................................35

V.      THE COUNTIES FAIL TO STATE CONSUMER PROTECTION
        CLAIMS.......................................................................................................36

        A.    The Counties' Claims Are Not Covered by the Consumer Protection
              Statutes. ..............................................................................................36

        B.    The Challenged Conduct Falls Within Safe Harbors. ........................38

        C.    The Counties Fail to Allege a Consumer Protection Claim Based on
              Fraud or Deception..............................................................................40

        D.    King and Lake Fail to Allege a Claim Based on "Unfair" Conduct...41

VI.     THE COUNTIES FAIL TO STATE COMMON LAW FRAUD CLAIMS..42

VII.    THE COUNTIES FAIL TO STATE UNJUST ENRICHMENT CLAIMS...43

i

VIII.  KING FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED
       COVENANT OF GOOD FAITH & FAIR DEALING. ...............................45

IX.    THE COUNTIES FAIL TO STATE CONSPIRACY CLAIMS...................47

X.     CLAIMS AGAINST UNINVOLVED CORPORATE PARENTS AND
       AFFILIATES SHOULD BE DISMISSED....................................................48

CONCLUSION ....................................................................................................50

# <u>TABLE OF AUTHORITIES</u>

Page

## CASES

*Abacus Fed, Sav. Bank v. Lim*, 905 N.Y.S.2d 585 (App. Div. 2010)......................48

*Alce v. Wise Foods, Inc.*, 2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018)................44

*Alejandre v. Bull*, 153 P.3d 864 (Wash. 2007) ............................................43

*Anderson Elec. v. Ledbetter Erection Corp.*, 503 N.E.2d 246 (Ill. 1986)................9

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006).....................................31, 32

*Apple Inc. v. Pepper*, 587 U.S. 273 (2019).............................................13, 14, 15, 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).......................................................47

*Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430 (7th Cir. 1996)..............37

*Badgett v. Sec. State Bank*, 807 P.2d 356 (Wash. 1991) ............................46

*Bd. of Educ. of City of Chi. v. A, C & S, Inc.*, 546 N.E.2d 580 (Ill. 1989)..............37

*Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969 (7th Cir. 2020) ..........................40

*Bonavitacola Elec. Contractor, Inc. v. Boro Devs., Inc.*,
   87 F. App'x 227 (3d Cir. 2003) ......................................................26

*Brady v. Lynes*, 2008 WL 2276518 (S.D.N.Y. June 2, 2008) ..................................19

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
   98 F.3d 13 (2d Cir. 1996) .............................................................43

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*,
   140 F.3d 494 (3d Cir. 1998) .........................................................26

*Brown v. City of Chicago*, 2020 WL 489522 (N.D. Ill. Jan. 30, 2020)...................37

*Brown v. Countrywide Home Loans, Inc.*,
   2016 WL 1259404 (E.D. Wash. Mar. 30, 2016) .................................42

*Brummett v. Washington's Lottery*, 288 P.3d 48 (Wash. Ct. App. 2012) ..............42

*Campbell v. Freedom Mortg. Corp.*,
   2023 WL 1345652 (N.D. Ill. Jan. 31, 2023).....................................19

*Campos v. Ticketmaster Corp.*, 140 F.3d 1166 (8th Cir. 1998) ...........................15

*Cansler v. Kondaur Cap. Corp.*, 2021 WL 2390098 (D.N.J. June 11, 2021).........50

*Carmona v. N.J. Dep't of Educ.*, 2023 WL 5814677 (3d Cir. Sept. 8, 2023),
   *cert. denied*, 144 S. Ct. 1059 (2024)..................................................33

*Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939 (3d Cir. 1993).....................................29

*Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494 (3d Cir. 2006)...............................20

*Chaires v. Novo Nordisk Inc.*, No. 17-cv-699 (D.N.J.) ......................................6, 21

*Chery v. Conduent Educ. Servs., LLC*, 581 F. Supp. 3d 436 (N.D.N.Y. 2022) ......40

*Cleary v. Philip Morris Inc.*, 656 F.3d 511 (7th Cir. 2011) ...................................44

*Conner v. Everhome Mortg. Co.*,
   2016 WL 6837961 (Wash. Ct. App. Nov. 21, 2016)..........................19

Page

Cases—cont'd:

*County of Marin v. Deloitte Consulting LLP*,
    836 F. Supp. 2d 1030 (N.D. Cal. 2011)............................................................29

*Crichton v. Golden Rule Ins. Co.*,
    2006 WL 2349961 (S.D. Ill. Aug. 11, 2006)...................................................35

*CSX Transp., Inc. v. Norfolk S. Ry. Co.*,
    648 F. Supp. 3d 679 (E.D. Va. 2023) ..............................................................24

*De Bouse v. Bayer*, 922 N.E.2d 309 (Ill. 2009)......................................................41

*Del. Valley Surgical Supply Inc. v. Johnson & Johnson*,
    523 F.3d 1116 (9th Cir. 2008) .........................................................................16

*Devon Drive Lionville, LP v. Parke Bancorp, Inc.*,
    791 F. App'x 301 (3d Cir. 2019) .....................................................................32

*Dockery v. Heretick*, 2021 WL 3931858 (E.D. Pa. Sept. 1, 2021),
    *aff'd*, 2022 WL 14810015 (3d Cir. Oct. 26, 2022)..........................................32

*Dowe v. Leeds Brown L., P.C.*, 419 F. Supp. 3d 748 (S.D.N.Y. 2019).............22, 23

*Du Page Aviation Corp. v. Du Page Airport Auth.*,
    594 N.E.2d 1334 (Ill. App. 2d Dist. 1992) ......................................................37

*Empire Merchants, LLC v. Reliable Churchill LLP*,
    902 F.3d 132 (2d Cir. 2018) ............................................................................31

*Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723 (7th Cir. 2014)...............31

*Evans v. Port Auth. of N.Y. & N.J.*,
    2007 WL 3071808 (D.N.J. Oct. 18, 2007) ......................................................24

*Ezell v. JPMorgan Chase Bank Nat'l Ass'n*,
    2020 WL 525899 (D.N.J. Jan. 31, 2020)..........................................................19

*Fairhaven Health, LLC v. BioOrigyn, LLC*,
    2020 WL 5630473 (W.D. Wash. Sept. 21, 2020) ............................................19

*Falcon Props., LLC v. Bowfits 1308 LLC*,
    478 P.3d 134 (Wash. Ct. App. 2020)................................................................44

*Fenico v. City of Philadelphia*, 70 F.4th 151 (3d Cir. 2023).....................................4

*Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724 (W.D.N.Y. 2020)...........40

*Fetter v. Schink*, 902 F. Supp. 2d 399 (S.D.N.Y. 2012) .............................................9

*Fox v. Heimann*, 872 N.E.2d 126 (Ill. Ct. App. 2007) ............................................42

*Giles v. Phelan, Hallinan & Schmieg, L.L.P.*,
    2013 WL 2444036 (D.N.J. June 4, 2013)........................................................28

*Glen Flora Dental Ctr., Ltd. v. First Eagle Bank*,
    2024 WL 621601 (N.D. Ill. Feb. 14, 2024) .....................................................25

*Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*,
    76 F.4th 1266 (9th Cir. 2023) ..........................................................................31

Page

Cases—cont'd:

*Goff v. Nationwide Mut. Ins. Co.*,
2019 WL 7604826 (S.D. Ohio Sept. 30, 2019) ................................................25
*Golden State Med. Supply Inc. v. AustarPharma LLC*,
2022 WL 2358423 (D.N.J. June 30, 2022).......................................................26
*Goldrich v. Watkins Wellness*, 2024 WL 1194716 (S.D.N.Y. Mar. 20, 2024) .......42
*Gossen v. JPMorgan Chase Bank*, 819 F. Supp. 2d 1162 (W.D. Wash. 2011) ......47
*Graham v. HSBC Mortg. Corp.*,
2019 WL 3066399 (S.D.N.Y. July 12, 2019)...................................................19
*Gratz v. Ruggiero*, 822 F. App'x 78 (3d Cir. 2020) ...............................................31
*Guarantee Tr. Life Ins. Co. v. Kribbs*, 68 N.E.3d 1046 (Ill. Ct. App. 2016)...........23
*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
719 P.2d 531 (Wash. 1986) ............................................................................40
*Haywood v. Amazon.com, Inc.*,
2023 WL 4585362 (W.D. Wash. July 18, 2023)........................................45, 46
*Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010) ........................................31
*Heraeus Med. GmbH v. Esschem, Inc.*, 927 F.3d 727 (3d Cir. 2019) ....................24
*Humana, Inc. v. Indivior, Inc.*, 2022 WL 17718342 (3d Cir. Dec. 15, 2022).........16
*IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537 (7th Cir. 1998).........49
*Ill. Farmers Ins. Co. v. Mobile Diagnostic Imaging, Inc.*,
2014 WL 4104789 (D. Minn. Aug. 19, 2014)..................................................34
*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)......................................13, 16, 18
*In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*,
537 F. Supp. 3d 679 (D.N.J. 2021)..................................................................13
*In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390 (S.D.N.Y. 2011)............41
*In re Direct Purchaser Insulin Pricing Litig.*,
2021 WL 2886216 (D.N.J. July 9, 2021) ..............................................*passim*
*In re Direct Purchaser Insulin Pricing Litig.*, No. 3:20-cv-3426 (D.N.J.) .............13
*In re EpiPen Direct Purchaser Litig.*,
2021 WL 147166 (D. Minn. Jan. 15, 2021) .....................................................50
*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust
Litig.*, 44 F.4th 959 (10th Cir. 2022).................................................................1
*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010) ........................33
*In re Insulin Pricing Litig.*, 2019 WL 643709 (D.N.J. Feb. 15, 2019)............*passim*
*In re Insulin Pricing Litig.*, 2020 WL 831552 (D.N.J. Feb. 20, 2020)....................13
*In re Insulin Pricing Litig.*, 2024 WL 416500 (D.N.J. Feb. 5, 2024).....................39
*In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395 (D.N.J. 2018) ..........................42
*In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352 (D.R.I. 2019).........13, 42

Page

Cases—cont'd:

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
  2017 WL 539578 (D. Or. Feb. 9, 2017) ....................................................41
*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,
  2018 WL 3586182 (N.D. Ill. July 26, 2018) .......................................32
*In re Tremont Sec. L., State L. & Ins. Litig.*,
  703 F. Supp. 2d 362 (S.D.N.Y. 2010) ......................................................42
*In re VTech Data Breach Litig.*, 2018 WL 1863953 (N.D. Ill. Apr. 18, 2018).......41
*In re Wash. Mut. Inc.*, 741 F. App'x 88 (3d Cir. 2018)..........................................17
*Indeck N. Am. Power Fund, L.P. v. Norweb PLC*,
  735 N.E.2d 649 (Ill. App. Ct. 2000) .......................................................47
*Ingrami v. Rovner*, 45 A.D.3d 806 (N.Y. App. Div. 2007)...................................19
*Johnson v. Yousoofian*, 930 P.2d 921 (Wash. Ct. App. 1996) ................................45
*Jordan v. Tilzer*, 2022 WL 16544335 (2d Cir. Oct. 31, 2022) ...............................34
*Judson Atkinson Candies, Inc., v. Latini-Hohberger Dhimantec*,
  529 F.3d 371 (7th Cir. 2008) .......................................................49
*Kansas v. UtilCorp United, Inc.*, 497 U.S. 199 (1990)...........................................18
*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991) .....................9
*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) ....................................................23
*Kolar v. Preferred Real Est. Invs., Inc.*, 361 F. App'x 354 (3d Cir. 2010) .........8, 26
*Koral v. Saunders*, 36 F.4th 400 (2d Cir. 2022) .....................................................19
*Kovkov v. L. Firm of Dayrel Sewell, PLLC*,
  182 A.D.3d 418 (N.Y. App. Div. 2020) .......................................................48
*LabMD Inc. v. Boback*, 47 F.4th 164 (3d Cir. 2022).................................................20
*Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370 (N.Y. 1996)...............43
*Laughlin v. Evanston Hosp.*, 550 N.E.2d 986 (Ill. 1990) ........................................42
*Ledgerwood v. Ocwen Loan Servicing LLC*,
  2016 U.S. Dist. LEXIS 2363 (E.D.N.Y. Jan. 7, 2016) ...................................47
*Lento v. Altman*, 2023 WL 4232158 (D.N.J. June 27, 2023) ...................................48
*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) ..........................47
*Lum v. Bank of Am.*, 361 F.3d 217 (3d Cir. 2003).............................................26, 27
*MacDonald v. Hayner*, 715 P.2d 519 (Wash. 1986) ...............................................44
*Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239 (3d Cir. 2001) ........................23
*Mauvais-Jarvis v. Wong*, 987 N.E.2d 864 (Ill. App. Ct. 2013) ..............................19
*McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842 (3d Cir. 1996)........................13, 15
*McCreary v. Redevelopment Auth. of Erie*, 427 F. App'x 211 (3d Cir. 2011)........20
*McMahon v. Bumble Bee Foods LLC*, 148 F. Supp. 3d 708 (N.D. Ill. 2015) .........19
*Melone v. Cryoport Inc.*, 2024 WL 1743108 (D.N.J. Apr. 23, 2024) ..............29, 30

Page

Cases—cont'd:

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
   164 F. Supp. 3d 568 (S.D.N.Y. 2016) ...................................................29
*Milligan v. Thompson*, 953 P.2d 112 (Wash. Ct. App. 1998) ................................25
*Minnesota v. Sanofi-Aventis U.S. LLC*,
   2020 WL 2394155 (D.N.J. Mar. 31, 2020) ..........................................12, 14, 17
*Mississippi ex rel. Fitch v. Eli Lilly & Co.*,
   2022 WL 18401603 (S.D. Miss. Aug. 29, 2022)...............................................49
*Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443 (Ill. 1982) ........................43
*MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*,
   2019 WL 1418129 (D.N.J. Mar. 29, 2019) ..................................................*passim*
*MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*,
   2020 WL 831578 (D.N.J. Feb. 20, 2020).......................................................37, 38
*Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241 (Ill. App. 5th Dist. 2004) ...........44
*Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038 (9th Cir. 2008) .....................29
*Nichols v. Peterson NW, Inc.*, 389 P.3d 617 (Wash Ct. App. 2016) ........................9
*Nino v. Countrywide Home Loans, Inc.*,
   2019 WL 2357565 (D. Conn. June 4, 2019)....................................................24
*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015)..................................................................................29
*Oswego Laborers' Loc. 214 Pension Fund et al. v. Marine Midland Bank*,
   647 N.E.2d 741 (N.Y. 1995)..................................................................37
*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda
   Pharms. Co. Ltd.*, 943 F.3d 1243 (9th Cir. 2019)...............................................32
*Parman v. Est. of Parman*,
   2024 WL 1734727 (Wash. Ct. App. Apr. 23, 2024) .........................................20
*Pattison v. Omnitrition Int'l, Inc.*,
   2018 WL 2984820 (W.D. Wash. June 14, 2018) ............................................25
*PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158 (W.D. Wash. 2021).......19
*People ex rel. Spitzer v. Pharmacia Corp.*,
   895 N.Y.S.2d 682 (N.Y. Sup. Ct. 2010)........................................................25
*Pilarczyk v. Morrison Knudsen Corp.*,
   965 F. Supp. 311 (N.D.N.Y. 1997), *aff'd*, 162 F.3d 1148 (2d Cir. 1998)..........44
*Price v. Philip Morris, Inc.*, 848 N.E.2d 1 (Ill. 2005) .............................................39
*Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*,
   898 F. Supp. 2d 673 (S.D.N.Y. 2012),
   *aff'd*, 548 F. App'x 16 (2d Cir. 2013).................................................................44
*Prospect Dev., LLC v. Kreger*, 55 N.E.3d 64 (Ill. Ct. App. 2016) ..........................23

Page

Cases—cont'd:

*Raner v. Fun Pimps Ent. LLC*,
    2024 WL 1557681 (W.D. Wash. Apr. 10, 2024) ...............................................23
*Reves v. Ernst & Young*, 507 U.S. 170 (1993) ...........................................................35
*Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644 (3d Cir. 1998) ...............27
*Roman v. Cnty. of Hudson*, 2024 WL 1757150 (D.N.J. Apr. 23, 2024)..................17
*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*,
    2018 WL 7197233 (S.D.N.Y. Dec. 26, 2018) ...................................................13
*Sienna Condo. Ass'n v. Ins. Co. of Greater N.Y.*,
    2024 WL 1250266 (N.D. Ill. Mar. 22, 2024) ....................................................42
*Soules v. Gen. Motors Corp.*, 402 N.E.2d 599 (Ill. 1980) ........................................43
*St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*,
    967 F.3d 295 (3d Cir. 2010) ............................................................................31
*Statler v. Dell, Inc.*, 841 F. Supp. 2d 642 (E.D.N.Y. 2012)......................................20
*Stephens v. Clash*, 796 F.3d 281 (3d Cir. 2015) ......................................................19
*Stiley v. Block*, 925 P.2d 194 (Wash. 1996).............................................................43
*Tuosto v. Philip Morris USA Inc.*,
    2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007)..................................................28
*UFCW Loc. 1776 v. Eli Lilly & Co.*, 620 F.3d 121 (2d Cir. 2010) .........................32
*United Food & Com. Workers Unions & Emps. Midwest Health Benefits*
    *Fund v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013)......................................35
*United States v. Bestfoods*, 524 U.S. 51 (1998)........................................................49
*Walls v. VRE Chi. Eleven, LLC*, 344 F. Supp. 3d 932 (N.D. Ill. 2018)..................48
*Warren Gen. Hosp. v. Amgen Inc.*, 2010 WL 2326254 (D.N.J. June 7, 2010) .......16
*Weiss v. Bank of Am. Corp.*, 2016 WL 6879566 (W.D. Pa. Nov. 22, 2016)...........25
*Wells Fargo Bank Northwest, N.A. v. Taca Int'l Airlines, S.A.*,
    247 F. Supp. 2d 352 (S.D.N.Y. 2002) .............................................................33
*Young v. Rayan*, 533 P.3d 123 (Wash. Ct. App.),
    *review denied*, 539 P.3d 4 (2023) ...................................................................48

**STATUTES, REGULATIONS, AND RULE**

18 U.S.C. § 1962.................................................................................................6, 47
42 U.S.C. § 1395w-3a(6)(B)................................................................................30, 38
Racketeer Influenced and Corrupt Organizations Act (RICO)
    (codified at 18 U.S.C. §§ 1961-1968)........................................................*passim*
Travel Act, 18 U.S.C. § 1952..................................................................................47
45 C.F.R. § 184.50.................................................................................................39
Fed. R. Civ. P. 9(b) ...............................................................................26, 27, 29, 42

Page

Statutes, Regulations, and Rule—cont'd:

Ill. Comp. Stat. Ann. 505/10b ........................................................38
Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA),
    815 ILCS 505...........................................................6, 36, 37, 41
    815 ILCS 505/10a................................................................36
N.Y. C.P.L.R. § 213 ...................................................................19
N.Y. GBL § 349 ...........................................................37, 38, 40
Wash. Code § 19.86.170 ...............................................................38

## OTHER AUTHORITIES

64 Fed. Reg. 63,518 (Nov. 19, 1999).................................................39
*Action to Delay Effective Date Consistent with Congressionally Enacted*
    *Moratorium*, 88 Fed. Reg. 90 (Dec. 29, 2023) ..................................39
Complaint, *Loc. No. 1 Health Fund v. Eli Lilly & Co.*,
    No. 23-cv-21160 (D.N.J. Oct. 31, 2023) .........................................22
*Fraud & Abuse; Removal of Safe Harbor Protection for Rebates Involving*
    *Prescription Pharmaceuticals*, 85 Fed. Reg. 76,666 (Nov. 30, 2020)..............39

The Complaints of Albany County, New York; King County, Washington; and Lake County, Illinois (the "Counties") strike a familiar tone. The Counties allege that insulin manufacturers Eli Lilly, Novo Nordisk, and Sanofi (the "Manufacturers") conspired with each other and separately with CVS, ESI, and OptumRx (the "PBMs")[1] to increase insulin prices in exchange for "secret" rebate payments from the Manufacturers to the PBMs. The Counties allege that this so-called "Insulin Pricing Scheme" violates state and federal statutory and common law. In reality, PBM rebates are "a normal competitive tool . . . to stimulate price competition." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 44 F.4th 959, 989 (10th Cir. 2022).

The Counties directly contracted with the PBMs to receive the benefits of the rebate negotiations about which they sue, required the PBMs to pass those rebates on to the Counties, and acknowledged that the PBMs negotiate for and retain other payments from manufacturers. Yet the Counties allege those very actions amount to a racketeering conspiracy. The purported "scheme" is a direct attack on the Counties' own contracting decisions from ten years ago.

---

[1] For purposes of this motion only, filed pursuant to CMO #6 (ECF No. 128), we refer collectively to all CVS, ESI, and OptumRx affiliates and parent corporations that are named in the Counties' complaints as the "PBMs," even though certain of those entities are not PBMs. The PBMs, their affiliates, and parent corporations reserve all rights, defenses, and objections with respect to the Counties' complaints.

1

The Counties' contracts alone foreclose many of their claims, and their pleading failures topple the rest. *First*, many of the Counties' claims are barred by the indirect-purchaser rule for the same reason the Court dismissed prior insulin-pricing claims under that rule: Health plans are not direct purchasers of insulin. *Second*, the Counties' claims are all time-barred because the Counties have known about the conduct they challenge for many years from their own contracts, a decade of publicity, and the publicly filed cases in this Court beginning in February 2017. *Third*, the Counties fail to plead nearly every element of every claim they bring: RICO, consumer protection, common-law fraud, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and civil conspiracy.

## **BACKGROUND**

Eli Lilly, Novo Nordisk, and Sanofi are pharmaceutical companies that research, develop, manufacture, and sell prescription drugs, including insulin and other diabetes medications. *See Albany* SAC ¶¶ 44, 55, 66; *King* SAC ¶¶ 53, 59, 65; *Lake* FAC ¶¶ 46, 56, 65.[2] They also set the list prices for their products. *E.g.*, *Albany* SAC ¶¶ 11, 16(c); *King* SAC ¶ 15; *Lake* FAC ¶¶ 12, 18(c).

The Court is by now familiar with the common allegations made about the role of PBMs. *E.g.*, *In re Direct Purchaser Insulin Pricing Litig.*, 2021 WL 2886216,

---

[2] For reasons stated in the Manufacturers' separate motion to dismiss, the Court should reject the Counties' effort to broaden this MDL to shoehorn in non-insulin medications—*i.e.*, glucagon-like peptide 1 agonists.

at *2–4 (D.N.J. July 9, 2021).  In brief, PBMs manage prescription drug benefits for health plans and payors (the PBMs' clients).  *Lake* FAC ¶ 18(b).  In that role, PBMs develop formularies—lists of covered medications—that their clients may use in designing prescription benefits and plan coverage.  *King* SAC ¶ 152.  PBMs also negotiate with pharmaceutical manufacturers for rebates, which the PBMs share with their clients according to the terms of each client's contract to lower net drug costs for their clients.  *Id.* ¶¶ 152–153, 156–157.

The Counties contracted with PBMs to manage their employee prescription-drug-benefit programs, and they sue in their capacity as self-funded health plans.  *Albany* SAC ¶ 37; *King* SAC ¶ 48; *Lake* FAC ¶ 41.  The Counties contracted with the PBMs as follows:

| County | Current PBM | Former PBM | Never PBM |
|--------|-------------|------------|-----------|
| **Albany** | ESI | CVS (2006–2010) | OptumRx |
| **King** | CVS | ESI (2006–2016) | OptumRx |
| **Lake** | *N/A* | ESI (2014–2017); OptumRx (2018–2022) | CVS |

*Albany* SAC ¶ 510; *King* SAC ¶ 307; *Lake* FAC ¶ 451.[3]  The contracts were the result of competitive bidding processes.  *Albany* SAC Ex. C § 5.2 (ESI) (contract was negotiated at "arm's-length"); *King* SAC ¶ 366; *Lake* FAC ¶¶ 43, 507–509.

---

[3] As discussed below, the longest applicable statute-of-limitations period reaches back no earlier than 2018.  During that entire time period, only one PBM served as the PBM for each County:  ESI for Albany, CVS for King, and OptumRx for Lake. *Albany* SAC ¶¶ 510, 574; *King* SAC ¶¶ 47, 307; *Lake* FAC ¶ 182.

The Counties ensured that they directly benefited from the rebates negotiated

by the PBMs, as ███████████████████████████████████████

███████████████████. *Albany* SAC Ex. A § VIII(B) (CVS); *accord Albany* SAC

Ex. B § 6.2 (ESI) ("100%"); *Albany* SAC Ex. C at Ex. A-3 § 1.1 (ESI); Ex. 1 at Ex.

A § 4.2 (King-CVS); Ex. 2 at Ex. A-3 § 1 (2012 King-ESI); Ex. 3 § 5 (2015 King-

ESI Amendment); Ex. 4 at Ex. A-3 § 1 (2015 Lake-ESI); Ex. 5 at Ex. B-3 § 1 (2015

Part D Lake-ESI)[4]; Ex. 7 at Ex. C, at 25 (Lake-OptumRx).[5]  But despite claiming

those same rebates are part of an unlawful scheme, the Counties do not allege any

changes of behavior on their own part.

Although the Counties allege they "unknowingly" reimbursed too much for

diabetes medications, *Albany* SAC ¶ 581; *King* SAC ¶ 377; *Lake* FAC ¶ 519, in fact

their PBM contracts speak to each of the issues that the Counties now sue about:

- The price the Counties would ultimately reimburse each PBM for was not a
  medication's list price, but a price tethered to Average Wholesale Price
  ("AWP").  *See, e.g., Albany* SAC Ex. A at Ex. A (CVS); *Albany* SAC Ex. B at
  Sch. A § 7 (ESI); *Albany* SAC Ex. C at Ex. D at 39 (ESI); Ex. 1 at Ex. A
  § 5.2(b) (King-CVS); Ex. 7 at Ex. C, at 25 & Ex. F § 9 (Lake-OptumRx).

---

[4] In 2017 ██████████████████████████████████████████████████
████████████ Ex. 6 at Ex. A-3 § 1 (2017 Lake-ESI).
[5] The Court may consider the contracts because (1) many are discussed or quoted in,
or attached to, the Counties' complaints, and (2) the remainder are incorporated by
reference because of the Counties' allegations concerning their PBM contracts.  *See
Fenico v. City of Philadelphia*, 70 F.4th 151, 154 n.1 (3d Cir. 2023).  All exhibits
labeled "Ex. __" are exhibits to the Declarations in Support of the PBM Defendants'
Motions to Dismiss submitted herewith.

- PBMs do not set list prices. *See, e.g.*, Ex. 1 at Ex. A § 5.3 (King-CVS); Ex. 7 at Ex. A, at 12 (Lake-OptumRx); Ex. 2 at Art. I at 1 (2012 King-ESI).

- PBMs negotiate "rebates" with manufacturers, which is a defined term in each contract. *Albany* SAC Ex. A § VIII.B (CVS); *Albany* SAC Ex. B § 6.2 (ESI); *Albany* SAC Ex. C § 1.25 (ESI); Ex. 1 § 1 (King-CVS); Ex. 2 at Ex. D, at 63 (2012 King-ESI); Ex. 7 at Ex. A, at 15 (Lake-OptumRx); Ex. 4 at Art. I (2015 Lake-ESI); Ex. 5 at Art. I (2015 Part D Lake-ESI); Ex. 6 at Art. I (2017 Lake-ESI).

- PBMs negotiate other "manufacturer payments," which may include administrative payments, and PBMs disclose those payments but do not pass those payments through to the Counties. *Albany* SAC ¶ 442; *Albany* SAC Ex. A § VIII.C (CVS); *Albany* SAC Ex. B § 6.2 (ESI); *Albany* SAC Ex. C §§ 1.15, 1.25 (ESI); Ex. 1 § 1, at Ex. A § 4.4 (King-CVS); *King* SAC ¶ 326; Ex. 7 at Ex. A, at 15 (Lake-OptumRx); Ex. 4 at Art. I (2015 Lake-ESI); Ex. 5 at Art. I (2015 Part D Lake-ESI); Ex. 6 at Art. I (2017 Lake-ESI); Ex. 2 at Ex. D, at 63 (2012 King-ESI).

- The rebate amounts the Counties received were tied to the County's formulary decisions. *See Albany* SAC Ex. A § VIII.B (CVS); *Albany* SAC Ex. B § 14.7 (ESI); *Albany* SAC Ex. C, at Ex. A-3 (ESI); Ex. 1 at Ex. B § 1(a)(i) (King-CVS); Ex. 2 at Ex. A at (b) (2012 King-ESI); Ex. 7 at Ex. C, at 25 (Lake-OptumRx); Ex. 4 at Ex. A-3 § 1 (2015 Lake-ESI); Ex. 5 at Ex. B-3 § 1 (2015 Part D Lake-ESI); Ex. 6 at Ex. A-3 § 1 (2017 Lake-ESI); Ex. 4 at Ex. A-3 § 4.B (2015 Lake-ESI).

Despite a few conclusory allegations from the Counties characterizing themselves as direct purchasers, no PBM contract envisions that the Counties will purchase any insulin product from a PBM. The "distribution chain" generally consists of medications sold first by manufacturers to wholesalers, then by wholesalers to pharmacies, and finally by pharmacies to patients. *Albany* SAC ¶¶ 327–328. The Counties then reimburse the pharmacies for a percentage of the cost. *Albany* SAC ¶ 504; *Lake* FAC ¶ 18. The Counties never take possession of

medication, and—because of the rebates they negotiated to receive—do not pay the list prices on which the Counties center their complaints. *E.g.*, *Lake* FAC ¶¶ 12, 18.

Although the Counties bargained for their PBMs to pass rebate savings on to them and expressly acknowledged that PBMs would negotiate for and retain other manufacturer payments, the Counties filed suit in 2022 and 2023, raising the same theories that have been litigated in this Court (and others) since February 2017. *See Chaires v. Novo Nordisk Inc.*, No. 17-cv-699 (D.N.J.). They allege that the very practices they agreed to and benefited from were really an industry-wide fraud. The Counties claim this caused them injury because the Manufacturers (not PBMs) raised the list prices paid by wholesalers (not the Counties). *See Albany* SAC ¶ 331. Even then, the Counties admit that the Manufacturers stopped increasing list prices in 2018—and in 2023 significantly lowered those list prices. *Albany* SAC ¶¶ 245–246; *Lake* FAC figs.6–11. The Counties do not allege why the Manufacturers made these pricing decisions despite the alleged conspiracy supposedly continuing to this day. *See, e.g.*, *Albany* SAC ¶ 629; *King* SAC ¶ 473; *Lake* FAC ¶ 566.

The Counties assert multiple claims, all familiar to this Court: (1) violations of 18 U.S.C. § 1962(c) (RICO); (2) violations of 18 U.S.C. § 1962(d) (conspiracy to violate RICO); (3) violations of state consumer protection law—New York's General Business Law (Albany); the Washington Consumer Protection Act (King); and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")

6

(Lake); (4) civil conspiracy; (5) unjust enrichment; (6) common law fraud; and (7) breach of the implied covenant of good faith and fair dealing (King). *Albany* SAC ¶¶ 631–762; *King* SAC ¶¶ 415–553; *Lake* FAC ¶¶ 568–700.

## ARGUMENT

## I.    THE COUNTIES' CONTRACTS WITH PBMS DOOM THEIR CLAIMS.

The Counties allege that PBMs engaged in an "Insulin Pricing Scheme." Their RICO, consumer protection, common-law fraud, unjust enrichment, conspiracy, and good-faith-and-fair dealing claims all depend on the contention that this "scheme" involved fraud, deception, and unfair and unjust conduct. To allege this, the Counties take potshots at the PBMs' business model, asserting (i) rebates are defined too "narrowly"; (ii) PBMs are not sufficiently transparent about revenue they earn from manufacturers; and (iii) PBMs can earn revenue through their pharmacy networks. *Albany* SAC ¶¶ 337, 442–444, 560, 674; *King* SAC ¶ 253; *Lake* FAC ¶¶ 297, 416–417, 421. But the terms of the contracts the Counties negotiated with the PBMs negate their claim that this constituted actionable misconduct.

***Rebates.*** At the heart of the Counties' complaints are allegations that the payments PBMs negotiate to receive from the Manufacturers cause the Manufacturers to raise the list price of insulin drugs. *See, e.g.*, *Albany* SAC ¶ 17; *King* SAC ¶ 1; *Lake* FAC ¶ 19. One category of payments is rebates that manufacturers pay PBMs based on the utilization of insulin products. *E.g.*, *Albany*

7

SAC ¶ 18. PBMs' clients negotiate with PBMs about whether, and to what extent, rebates should be passed through to clients or retained by the PBM. *See Albany* SAC ¶¶ 441–442. Here, each County negotiated to receive ███████████████ ██████ from the respective PBM it hired during the limitations period.[6]

The Counties nevertheless allege that "rebates" are defined too narrowly in the contracts *they negotiated*. *Albany* SAC ¶ 442; *King* SAC ¶ 253; *Lake* FAC ¶ 416. But what is—and what is not—a rebate is plainly defined in each contract. *Albany* SAC Ex. A § VIII.A (CVS); *Albany* SAC Ex. B § 6.2 (ESI); *Albany* SAC Ex. C § 1.25 (ESI); Ex. 1 § 1 (King-CVS); Ex. 2 at Ex. D, at 63 (2012 King-ESI); Ex. 7 at Ex. A, at 15 (Lake-OptumRx). And the Counties do not allege that the PBMs failed to comply with the contractual definitions of rebates or otherwise failed to pass through the contractually defined rebates they owed. Instead, the Counties allege various species of fraud, deception, and unfair or unjust conduct. But the Counties cannot rely on such tort theories to re-negotiate retroactively the contracts they agreed to with the PBMs. *See Kolar v. Preferred Real Est. Invs., Inc.*, 361 F. App'x 354, 363–64 (3d Cir. 2010) ("disputes sounding in contract" cannot be "transmute[d] . . . into RICO claims by simply appending the terms 'false' and 'fraudulent'");

---

[6] *Albany* SAC Ex. A § VIII(B) (CVS); *accord Albany* SAC Ex. B § 6.2 (ESI); *Albany* SAC Ex. C at Ex. A-3 § 1.1 (ESI); Ex. 1 at Ex. A § 4.2 (King-CVS); Ex. 2 at Ex. A-3 § 1 (2012 King-ESI); Ex. 4 at Ex. A-3 § 1 (2015 Lake-ESI); Ex. 7 at Ex. C, at 25 (Lake-OptumRx).

*accord Fetter v. Schink*, 902 F. Supp. 2d 399, 404 (S.D.N.Y. 2012) (similar under New York law); *Anderson Elec. v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 249 (Ill. 1986) (similar under Illinois law); *Nichols v. Peterson NW, Inc.*, 389 P.3d 617, 623 (Wash Ct. App. 2016) (similar under Washington law).

  ***Transparency of Manufacturer Revenue***.  The Counties also allege a "lack of transparency" regarding the money the PBMs earn from manufacturers.  *Albany* SAC ¶ 529; *King* SAC ¶ 39; *Lake* FAC ¶ 470.  But an alleged "lack of transparency" is not a cause of action.  There is nothing inherently tortious about maintaining trade secrets or protecting the confidentiality of sensitive commercial information.

  Absent from the Counties' complaints are allegations that any PBM owed them a duty to disclose additional manufacturer revenue.  ███████████████████
████████████████████████████████████████.  *E.g.*, *Albany* SAC Ex. C § 5.2 (ESI); *accord Albany* SAC Ex. B § 14.8 (ESI); *Albany* SAC Ex. A § III.D (CVS); Ex. 4 § 5.9 (2012 King-ESI); Ex. 7 at Ex. B § 1.1.3 (Lake-OptumRx).  This dooms any claim the PBMs owed the Counties any duty to disclose additional facts. *E.g.*, *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1416 (3d Cir. 1991) ("non-disclosure [is] not actionable . . . absent some duty to disclose").

  But even in the absence of any legal disclosure obligation, the Counties' contracts show that the PBMs did, in fact, disclose that they may receive additional revenue based on other lines of business with manufacturers, and the Counties

concede that the contracts included those provisions. *See Albany* SAC ¶ 442; *King* SAC ¶ 320; *Lake* FAC ¶ 411. By way of example, PBMs charge administrative fees to manufacturers in connection with their work in administering a manufacturer's rebate program. *See Albany* SAC ¶ 385; *King* SAC ¶ 316; *Lake* FAC ¶ 344. Each PBM discloses the existence of such administrative fees, ███████████████

███████████████████████████████████████████. *See Albany* SAC Ex. C §§ 1.15, 1.25 (ESI); *Albany* SAC ¶ 442; *Albany* SAC Ex. A § VIII.C (CVS); *Albany* SAC Ex. B § 6.2 (ESI)[7]; Ex. 1 § 1, at Ex. A § 4.4 (King-CVS); Ex. 2 at Ex. A-3 § 1, at Ex. D, at 63 (2012 King-ESI); *King* SAC ¶ 326; Ex. 7 at Ex. A, at 15 (Lake-OptumRx).[8]

More generally, each PBM also disclosed that it may hold contracts with—and retain other sources of revenue from—Manufacturers. *See, e.g., Albany* SAC Ex. C at Ex. D at 39 ("ESI also may receive other compensation from manufacturers for the performance of various programs or services[.]"); *King* SAC ¶ 326 (similar, CVS); Ex. 7 at Ex. B § 1.7.5 (Lake-OptumRx). If the Counties' position is that it was fraud for the PBMs not to share the PBM-Manufacturer contracts, *e.g., Albany* SAC ¶¶ 443–444 (complaining that such contracts were "shrouded in secrecy");

---

[7] ███████████████████████████████████████████████
█████████████ *Albany* SAC Ex. B. § 6.2; Ex. 2 at Ex. A-3 (2012 King-ESI).

[8] ███████████████████████████████████████████████
███████████████████████████. *See, e.g.,* Ex. 7 at § 4.2 (Lake-OptumRx).

*accord Lake* FAC ¶ 417, that position has no basis in the law.  Contracting parties are not required to disclose all details and terms of their other financial arrangements.  Indeed, the PBMs are obligated to keep the Counties' contracts confidential.  *E.g.*, *Albany* SAC Ex. C § 4.2.  And entering contracts with the Manufacturers was what the PBM-County contracts contemplated the PBMs would do.  *See supra* at 4–5.

***PBMs' Pharmacy Networks.***  The Counties also include a hodgepodge of complaints about the PBMs' interactions with pharmacies.  They allege that PBMs "clawback[]" money they once paid to pharmacies and that PBMs earn revenue through "spread pricing."  *King* SAC ¶¶ 221–229.  But the Counties do not even attempt to allege plausibly how PBMs earning revenue from pharmacies is tortious, violates any statute, or injures the Counties.  Each contract includes details about the County's pricing for prescription drugs.  *See, e.g.*, *Albany* SAC Ex. A at Ex. A (CVS); *Albany* SAC Ex. B at Sch. A (ESI); *Albany* SAC Ex. C at Ex. A-2 (ESI)[9]; Ex. 1 at Ex. B (King-CVS); Ex. 2 at Ex. A-1 (2012 King-ESI); Ex. 7 at Ex. C, Attach. F-1 (Lake-OptumRx); Ex. 4 at Ex. A-1 (2015 Lake-ESI).  And while legally unnecessary, certain PBMs also disclosed that they may earn money through so-called "spread pricing."  *See Albany* SAC Ex. C at Ex. D ("If the rate paid by a client

---

[9] Counties know how to negotiate for pass-through pricing if it is important to them.  And Albany is particularly ill-suited to claim an injury from spread pricing because it did, in fact, so negotiate.  *Albany* SAC Ex. C at Ex. A-2.

exceeds the rate contracted with a particular pharmacy, ESI will realize a positive margin on the applicable claim.").

## II.    THE INDIRECT-PURCHASER RULE BARS MOST OF THE COUNTIES' CLAIMS.

Years ago, this Court recognized that the indirect-purchaser rule barred RICO claims—and many state-law claims—brought by individual purchasers of insulin, health plans that reimbursed for such purchases, and a state agency that claimed to make its own such purchases.  *See In re Insulin Pricing Litig.*, 2019 WL 643709, at *8 (D.N.J. Feb. 15, 2019); *MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, 2019 WL 1418129, at *14–16 (D.N.J. Mar. 29, 2019); *Minnesota v. Sanofi-Aventis U.S. LLC*, 2020 WL 2394155, at *8 (D.N.J. Mar. 31, 2020).  The Court dismissed such claims in each of those cases, which alleged the same "Insulin Pricing Scheme" that the Counties allege here, because none of those plaintiffs purchased insulin directly from the entities that allegedly perpetrated the "scheme." *In re Insulin*, 2019 WL 643709, at *8; *MSP Recovery*, 2019 WL 1418129, at *14–16; *Minnesota*, 2020 WL 2394155, at *8.

The Counties, which sue as health plans, are similarly situated.  They bring claims about alleged overcharges that were paid to the Manufacturers by wholesalers, which purchase insulin directly from the Manufacturers.  But those "direct purchasers" already have sued in this Court for this same supposed

overcharge. *See In re Direct Purchaser Insulin Pricing Litig.*, No. 3:20-cv-3426 (D.N.J.). The indirect-purchaser rule bars the Counties' duplicative claims.

The Court's prior rulings clear much of the legal brush: The indirect-purchaser rule applies to civil RICO claims. *In re Insulin*, 2019 WL 643709, at *9 (citing *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 855 (3d Cir. 1996)).[10] It applies to Washington consumer protection claims. *In re Insulin Pricing Litig.*, 2020 WL 831552, at *9 (D.N.J. Feb. 20, 2020). The rule applies to many unjust-enrichment claims, *e.g.*, *MSP Recovery*, 2019 WL 1418129, at *20, including those under Illinois and Washington law, *see In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 381 (D.R.I. 2019) (Illinois); *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*, 2018 WL 7197233, at *57 (S.D.N.Y. Dec. 26, 2018) (Washington).

Months after the Court issued some of those rulings, the Supreme Court reaffirmed the legal framework the Court had applied. The indirect-purchaser rule applies when a plaintiff is "two or more steps removed from the violator in a *distribution chain*." *Apple Inc. v. Pepper*, 587 U.S. 273, 279 (2019) (emphasis added) (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977)). As a "bright-line rule" that asks only whether the plaintiff is a "*direct* purchaser[]," it permits suit

---

[10] Third Circuit law governs the Counties' federal claims. *See In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*, 537 F. Supp. 3d 679, 705 (D.N.J. 2021).

only if "[t]here is no intermediary in the distribution chain." *Id.* at 279, 281. By contrast, the rule's application does not turn on "who set the price." *Id.* at 281.

Both before and after *Apple*, this Court applied the rule to bar "insulin pricing" claims. *See In re Insulin*, 2019 WL 643709, at *7–13; *Minnesota*, 2020 WL 2394155, at *8–11. The Court considered the relevant distribution chain:

> Pharmaceuticals generally originate in manufacturing sites and are then transferred to wholesale distributors before being transferred to retail or mail-order pharmacies . . . . Thereafter, the pharmaceuticals are dispensed by pharmacies where they are purchased by the beneficiaries.

*MSP Recovery*, 2019 WL 1418129, at *3; *see id.* at *14–16.

The Court recognized the "Insulin Pricing Scheme" allegedly operates along that same chain: "[T]he analog insulins are sold to wholesalers at prices based on the benchmark prices that are set by the manufacturers, and are subsequently sold to pharmacies, hospitals, and clinics at prices approximating the benchmark prices." *In re Insulin*, 2019 WL 643709, at *9. If they appear at all, health plans "are multiple purchasers down the distribution chain," making them "quintessential indirect purchasers." *MSP Recovery*, 2019 WL 1418129, at *14.

The Counties bring the same case but seek a different result. They sue as health plans. *Albany* SAC ¶ 37; *King* SAC ¶ 48; *Lake* FAC ¶ 41. They allege the same insulin-distribution chain. *See Albany* SAC ¶ 335 fig.22; *King* SAC ¶ 155; *Lake* FAC ¶ 295 fig.16. And they bring carbon-copy allegations that the "Insulin Pricing Scheme" caused them to pay too much for insulin based on high list prices

14

set at the top of the distribution chain. *Albany* SAC ¶¶ 12, 16–19; *King* SAC ¶¶ 15–16; *Lake* FAC ¶¶ 12, 18–19.  Like the health plans in *MSP Recovery*, the Counties are "quintessential indirect purchasers."  2019 WL 1418129, at *14.

The Counties try to plead around this in three ways, but none can alter reality:

*First*, the Counties make conclusory allegations that they "directly pay[] PBMs" for insulin.  *E.g.*, *Albany* SAC ¶ 505; *accord King* SAC ¶ 99; *Lake* FAC ¶ 447.  This is sleight of hand.  The indirect-purchaser rule does not care about the "pric[ing]" chain; what matters is the "distribution chain."  *Apple*, 587 U.S. at 281; *see also Campos v. Ticketmaster Corp.*, 140 F.3d 1166, 1171 (8th Cir. 1998) ("[L]ike the Third Circuit, we do not find billing practices to be determinative of indirect purchaser status." (citing *McCarthy*, 80 F.3d at 853 n.18)).

The Counties, in any event, plead their way out of this theory.  These ostensibly "direct[] pay[ments]" are really just partial "reimburse[ments] [to] pharmacies" by the Counties, who as health plans make those reimbursements after consumers purchase insulin from a pharmacy. *E.g.*, *Lake* FAC ¶ 296; *see also Albany* SAC ¶ 504; *King* SAC ¶ 36.  The Court already rejected the theory that "heightened coinsurance payments" by health plans make them direct purchasers.  *MSP Recovery*, 2019 WL 1418129, at *16.  And the Third Circuit agrees that calling a reimbursement a direct purchase does not make it so; rather, that is "a textbook

indirect-purchaser theory." *Humana, Inc. v. Indivior, Inc.*, 2022 WL 17718342, at *2–3 (3d Cir. Dec. 15, 2022).

*Second*, the Counties allege that the separate nature of the distribution and pricing chains in the health care industry makes this case "unique" for purposes of the indirect-purchaser rule. *E.g.*, *Albany* SAC ¶ 328; *King* SAC ¶¶ 155–156; *Lake* FAC ¶ 291. If that argument had merit, it would have carried the day five years ago. *See In re Insulin*, 2019 WL 643709, at *12 (rejecting this argument). The Supreme Court has made clear that the indirect-purchaser rule does not turn on the "economics of the transaction." *Apple*, 587 U.S. at 281. The Counties' focus on "the business relationships between health care providers and manufacturers" does not solve the fundamental problem with their theory: "[U]nder their rule, both [the true direct purchaser] and [the plaintiff] could theoretically bring a claim against [the defendant] for the same overcharge." *Del. Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1123–24 (9th Cir. 2008).

*Third*, Albany and Lake make conclusory allegations that they purchase insulin for use in "County-run facilities directly from the PBMs." *Albany* SAC ¶ 506; *accord Lake* FAC ¶ 40. Those allegations "merely parrot[] the *Illinois Brick* requirement, without providing any factual basis to support" the assertions, such as the identity of the facilities or the circumstances of the supposed purchases from PBMs. *Warren Gen. Hosp. v. Amgen Inc.*, 2010 WL 2326254, at *3 (D.N.J. June 7,

16

2010); *see also Roman v. Cnty. of Hudson*, 2024 WL 1757150, at *4 (D.N.J. Apr. 23, 2024) (conclusory allegations "not entitled to the . . . presumption" of truth). Regardless, these claims are nothing more than another misleading argument that the Counties actually stand in the distribution chain, despite their contrary allegations, *supra* at 5–6, 14. And in any event, the Court already rejected an attempt by a government agency to use allegations of such purchases to skirt the indirect-purchaser rule. *See Minnesota*, 2020 WL 2394155, at *5, *8–11.

Albany and Lake also allege, again without explanation, that insulin is sometimes distributed from "mail-order pharmacy to self-insured payor, and self-insured payor to patient." *Albany* SAC ¶ 327; *accord Lake* FAC ¶ 290. But the Counties admit that they occupy no place in the distribution chain. *See, e.g.*, *Albany* SAC ¶ 335 fig.22; *King* SAC ¶ 154; *Lake* FAC ¶ 295 fig.16. And the Counties also admit that mail-order pharmacies "dispense[] . . . directly to the County's Beneficiaries." *King* SAC ¶ 98; *accord Lake* FAC ¶ 298. Of course they do. Pharmacies do not physically dispense medication to a patient's health insurer or to their employer. These allegations directly contradict the Counties' conclusory attempt to alleged direct-purchaser status. *See In re Wash. Mut. Inc.*, 741 F. App'x 88, 91 n.3 (3d Cir. 2018) ("contradict[ory]" allegations need not be "credit[ed]").

The Counties' RICO claims against PBMs that never served that particular County fail under the indirect-purchaser rule for the additional reason that, in such

circumstances, the County *admits* it never had any direct relationship—purchase, payment, reimbursement, or otherwise—with the PBM. *See Albany* SAC ¶ 510; *King* SAC ¶ 307; *Lake* FAC ¶ 451. Even if the Counties could state a direct-purchaser theory as to a PBM that actually served them, none of their allegations even purports to state a claim based on any payment to or purchase from a PBM that never served the County, or any mail-order-pharmacy distribution to the County by such a PBM. For that additional reason, the rule bars Albany's and King's RICO claims against OptumRx, as well as Lake's RICO claims against CVS.

*   *   *

At bottom, the Counties sue about the same overcharge the Manufacturers allegedly charged wholesalers, about which those "direct purchasers" already sue in this MDL. *See Direct Purchaser*, No. 20-cv-3426. This is exactly what the indirect-purchaser rule bars: "[B]ecause Illinois Brick could not use a pass-on defense in an action by direct purchasers, it would risk multiple liability to allow suits by indirect purchasers." *Kansas v. UtilCorp United, Inc.*, 497 U.S. 199, 207 (1990).

## III.    THE COUNTIES' CLAIMS ARE UNTIMELY.

The Counties waited until 2022 (Albany) and 2023 (King and Lake) to sue about alleged injuries that occurred a decade prior and, in the Counties' own telling, ceased by 2018. *Lake* FAC figs.6–11. This delay bars each of the Counties' claims,

most of which are subject to a three-year statute of limitations.[11]    Albany's fraud

claim carries a two-year statute, *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir. 2022),

and a six-year statute of repose, N.Y. C.P.L.R. § 213(8).    And the RICO claims,

along with King's consumer protection claim, are barred under their four-year

statute.    *See Ezell v. JPMorgan Chase Bank Nat'l Ass'n*, 2020 WL 525899, at *6

(D.N.J. Jan. 31, 2020); *Conner v. Everhome Mortg. Co.*, 2016 WL 6837961, at *5

(Wash. Ct. App. Nov. 21, 2016).    The Court should dismiss the Counties' claims

because "the time alleged in the statement of a claim shows that the cause of action

has not been brought within the statute of limitations."    *Stephens v. Clash*, 796 F.3d

281, 288 (3d Cir. 2015).

---

[11]*See Graham v. HSBC Mortg. Corp.*, 2019 WL 3066399, at *5 (S.D.N.Y. July 12, 2019) (New York consumer protection); *Ingrami v. Rovner,* 45 A.D.3d 806, 808, (N.Y. App. Div. 2007) (New York unjust enrichment); *Brady v. Lynes*, 2008 WL 2276518, at *9 (S.D.N.Y. June 2, 2008) (New York civil conspiracy accrues with underlying tort); *Campbell v. Freedom Mortg. Corp.*, 2023 WL 1345652, at *3 (N.D. Ill. Jan. 31, 2023) (Illinois consumer protection); *McMahon v. Bumble Bee Foods LLC*, 148 F. Supp. 3d 708, 714 (N.D. Ill. 2015) (Illinois unjust enrichment follows consumer protection claim when derivative of it); *Mauvais-Jarvis v. Wong,* 987 N.E.2d 864, 894 (Ill. App. Ct. 2013) (Illinois civil conspiracy accrues with underlying tort); *Fairhaven Health, LLC v. BioOrigyn, LLC*, 2020 WL 5630473, at *3–4 (W.D. Wash. Sept. 21, 2020) (Washington unjust enrichment, civil conspiracy, fraud); *PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158, 1172 (W.D. Wash. 2021) (Washington good-faith-and-fair-dealing).

### A.    No County's Alleged Injuries Accrued Within the Limitations Periods.

The accrual rules for the Counties' claims vary,[12] but even under the most generous interpretation, the Counties' claims accrued over five years before Albany filed suit and over six years before King and Lake sued.  Under the discovery rule, a "cause of action accrues when the plaintiff knew or should have known of the injury upon which [her] action is based." *McCreary v. Redevelopment Auth. of Erie*, 427 F. App'x 211, 214 (3d Cir. 2011).  Specifically, a cause of action accrues when plaintiffs have "sufficient information of possible wrongdoing to place them on 'inquiry notice' or to excite 'storm warnings' of culpable activity," *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 507 (3d Cir. 2006), even "though the full extent of the injury is not then known or predictable," *LabMD Inc. v. Boback*, 47 F.4th 164, 180 (3d Cir. 2022).

There have been far more than "storm warnings" for well over a decade.  The Counties allege a "scheme" to increase the price of insulin dating back to 2003. *Albany* SAC ¶ 31; *King* SAC ¶¶ 185, 495; *Lake* FAC ¶ 35.  They reference as evidence publicly available insulin pricing data dating more than two decades.

---

[12] Some of the Counties' claims have stricter accrual rules that look to when the Counties could "establish each element of the action," whether they knew it or not. *See Parman v. Est. of Parman*, 2024 WL 1734727, at *10 (Wash. Ct. App. Apr. 23, 2024) (Washington unjust enrichment); *Statler v. Dell, Inc.*, 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012) (New York consumer protection).

*Albany* SAC ¶¶ 12–13, 273–277, 284–287 (figs.2–3, 5–15); *King* SAC ¶¶ 204–205, 298; *Lake* FAC ¶¶ 14–15, 262, 272–276, 283–286 (figs.2–3, 5–15).   And they reference as further evidence public statements from defendant executives over "at least the last decade" (*Albany* SAC ¶¶ 81, 126; *Lake* FAC ¶¶ 79, 120); investigations and hearings from 2011 and 2016 (*Albany* SAC ¶¶ 141–142, 761; *Lake* FAC ¶ 136); and public articles about drug pricing, PBMs, and rebates dating back to at least 2016 (*see, e.g.*, *Albany* SAC ¶ 428 n.82; *King* SAC ¶ 21 n.21; *Lake* FAC ¶ 472 n.97).[13] And the Counties' own contracts with PBMs, from 2017 and earlier, show that the Counties were aware of the rebating and formulary practices about which they sue, and the existence of other manufacturer payments to PBMs.  *See supra* at 4–11.

Regardless of when in the 2010s it became clear a "storm" was coming, no one can dispute it was raining in February 2017.  That is when a number of other plaintiffs filed suits about the same alleged "Insulin Pricing Scheme" in this Court. Compl., ECF No. 1, *In re Insulin Pricing Litig.*, No. 17-cv-699 (D.N.J.).  Co-lead counsel for the Third-Party Payer Class Track recently observed that "the underlying list price scheme, which was pleaded in the consumer case in 2017, is the essential

---

[13] Many of these articles are the same as those the Court noted in the *Direct Purchaser* case "might reasonably be understood to provide breadcrumbs that might lead one to investigate the behavior of PBMs and drug manufacturers."  2021 WL 2886216, at *19.  But here, unlike in the *Direct Purchaser* case, the Counties also cited articles that tied those general concerns to insulin specifically.  *See King* SAC ¶ 33 n.29 (citing 2016 article about insulin price increases, PBMs, and rebates).

factual background of every single complaint [in this MDL]." ECF No. 17 at 44:15–

17. Other plaintiffs in this MDL have also made clear that they had everything they

needed to be on notice of the basis for these claims based on public information by

November 2016. *See* Second Am. Compl., ECF No. 261 ¶ 130, *Direct Purchaser*,

No. 20-cv-3426 (admitting "inquiry notice of the claims set forth herein" as of

"November of 2016, when news sources began publishing information about the

Senate investigation"); Compl., ECF No. 1, ¶ 133, *Loc. No. 1 Health Fund v. Eli

Lilly & Co.*, No. 23-cv-21160 (similar).

      The Counties admit that they knew all of this and took various actions because

of their understanding in 2017:

- Albany: In a 2017 request for PBM proposals, Albany "specifically requested
  that 'all proposals be quoted utilizing a transparent pricing model,' meaning
  'that the chosen provider will not retain any money associated with
  prescription drug rebates or any money associated with the margin between
  guaranteed reimbursement rates and the actual amount paid to the
  pharmacies.'" *Albany* SAC ¶ 168.

- Lake: In a 2017 request for PBM proposals, ██████████████████████████
  ████████████████████████████████████████████████████████████████████
  ████████████████████████████████████████████████████████████████████
  ████████████████████████████████████████████████████████████████████
  ██████████████████████████████████████████████████████ *Id.* at Ex.
  A, at 15, Ex. C, at 25; *accord Lake* FAC ¶ 163.

- King: In a 2017 contract, ███████████████████████████████████████████
  ████████████████████████████████████████████████████████████████████
  *King* SAC ¶¶ 321–324.

But they did not file suit.  Against that backdrop, the Counties cannot claim they
"exercised reasonable due diligence and yet were unable to discover their injuries."
*Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001); *accord
Guarantee Tr. Life Ins. Co. v. Kribbs*, 68 N.E.3d 1046, 1055 (Ill. Ct. App. 2016);
*Dowe v. Leeds Brown L., P.C.*, 419 F. Supp. 3d 748, 763–64 (S.D.N.Y. 2019); *Raner
v. Fun Pimps Ent. LLC*, 2024 WL 1557681, at *8 (W.D. Wash. Apr. 10, 2024).  They
make no allegations of diligence; nor could they with the decade of "storm warnings"
they had.  If they really believed in their allegations, "[t]hat none of them pressed . .
. for an explanation defies comprehension." *Mathews*, 260 F.3d at 255.

The Counties' claims against PBMs that did not recently provide them with
PBM services are doubly time-barred.  For Albany, that means CVS (stopped in
2010).  *Albany* SAC ¶ 510.  For King, that means ESI (stopped in 2016).  *King* SAC
¶¶ 96, 467.  And for Lake, that also means ESI (stopped in 2017).  *Lake* FAC ¶ 451.
In each instance, the Counties' alleged injuries as to that PBM occurred even further
outside the limitations period.

### B.     The Counties Cannot Rely on Any Tolling Doctrine to Save Their Claims.

The Counties' lack of diligence forecloses any reliance on equitable estoppel
or fraudulent concealment.  *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 196 (1997)
(RICO); *Prospect Dev., LLC v. Kreger*, 55 N.E.3d 64, 71 (Ill. Ct. App. 2016); *Dowe*,
419 F. Supp. 3d at 762 (New York); *Raner*, 2024 WL 1557681, at *10 (Washington).

23

A "continuing violations" theory is inapplicable for the simple reason that these cases are not about "continuing" violations.  That doctrine "applies only to a narrow class of continuing violations for which courts have concluded that a claim accrues over time" such that "[n]o single act may be enough to make out a claim." *Heraeus Med. GmbH v. Esschem, Inc.*, 927 F.3d 727, 740 (3d Cir. 2019).   It does not apply to "discrete acts, which are individually actionable[] [and] time-barred if raised outside of the applicable statute of limitations." *Evans v. Port Auth. of N.Y. & N.J.*, 2007 WL 3071808, at *10 (D.N.J. Oct. 18, 2007).  Yet that is precisely what the Counties allege here:  They claim "[e]ach new," "artificially inflated list price[]" is "a new and independent act" resulting in the alleged harm.  *King* SAC ¶ 385; *see also Albany* SAC ¶¶ 12, 328 (alleging injury from lockstep price increases); *Lake* FAC ¶¶ 12, 291 (same).

The Counties' admission that the Manufacturers stopped increasing list prices in 2018, *see Albany* SAC ¶ 285 fig.12; *King* SAC ¶ 205; *Lake* FAC ¶ 284 fig.13, dooms any continuing-violations theory because the Counties must "demonstrate that the harm supporting a damages claim collectively flows from unlawful acts committed during the limitations period."[14]  *CSX Transp., Inc. v. Norfolk S. Ry. Co.*, 648 F. Supp. 3d 679, 704 (E.D. Va. 2023).

---

[14] A "continuing violations" theory also should not apply to RICO or Washington claims.  *See Nino v. Countrywide Home Loans, Inc.*, 2019 WL 2357565, at *2 (D.

That admission also dooms any argument under the separate-accrual rule, which applies only to "the commission of a separable, new *predicate act* within" the limitations period and would "permit[] a plaintiff to recover for the additional damages caused by that act" alone. *Weiss v. Bank of Am. Corp.*, 2016 WL 6879566, at *4 (W.D. Pa. Nov. 22, 2016); *accord Glen Flora Dental Ctr., Ltd. v. First Eagle Bank*, 2024 WL 621601, at *23–24 (N.D. Ill. Feb. 14, 2024); *People ex rel. Spitzer v. Pharmacia Corp.*, 895 N.Y.S.2d 682, 686–87 (N.Y. Sup. Ct. 2010); *Milligan v. Thompson*, 953 P.2d 112, 116 (Wash. Ct. App. 1998). The mere fact that health plan beneficiaries continued to purchase insulin after price increases stopped creates neither a new predicate act nor a new injury. *See Goff v. Nationwide Mut. Ins. Co.*, 2019 WL 7604826, at *7 (S.D. Ohio Sept. 30, 2019) (no separate accrual, "[e]ven assuming that each monthly collection notice was a new predicate act of mail or wire fraud," because "each payment notice did *not* create a new injury").

## IV.    THE COUNTIES FAIL TO PLEAD RICO CLAIMS.

For years, the Court has policed attempts to turn the consumer protection and related tort theories that animate these insulin-pricing cases into a RICO behemoth, dismissing every RICO claim brought in insulin-pricing cases save one. In *Direct Purchaser*, 2021 WL 2886216, at *11–20, this Court allowed a RICO claim by direct

---

Conn. June 4, 2019); *Pattison v. Omnitrition Int'l, Inc.*, 2018 WL 2984820, at *5 (W.D. Wash. June 14, 2018).

purchasers of insulin to proceed to discovery, despite three different "close" calls, any one of which would have warranted dismissal had it come out the other way. *Id.* at *14, *16. This is a different case requiring a different result, including on those "close" questions, because the Counties fail to allege (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity (4) causing an injury. *See id.* at *16.

### A.    The Counties Do Not Allege Predicate Acts of Mail or Wire Fraud.

The Counties base their RICO claims on alleged acts of mail and wire fraud. *See Albany* SAC ¶¶ 656–664; *King* SAC ¶¶ 449–446; *Lake* FAC ¶¶ 593–660. To do so, they must allege "a scheme to defraud." *Bonavitacola Elec. Contractor, Inc. v. Boro Devs., Inc.*, 87 F. App'x 227, 231 (3d Cir. 2003). A scheme to defraud "must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 528 (3d Cir. 1998). To avoid dismissal, a plaintiff must identify a "specific fraudulent statement identifying the time, place, speaker, and content, of the alleged misrepresentation." *In re Insulin*, 2019 WL 643709, at *5 (cleaned up). These allegations must withstand Rule 9(b), *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2003), and be "particularly scrutinized," *Kolar*, 361 F. App'x at 363; *Golden State Med. Supply Inc. v. AustarPharma LLC*, 2022 WL 2358423, at *9 (D.N.J. June 30, 2022). The Counties' claims fail these standards.

26

### 1.  The Counties Fail to Plead Any Fraudulent Misstatements.

The Counties allege two categories of purported misstatements—"general" and "specific[]."  *King* SAC ¶ 212; *accord Albany* SAC ¶ 539; *Lake* FAC ¶ 472. Neither may serve as the basis for a fraud claim.

The Counties—without citing a single particular PBM statement—claim that it was fraudulent for the PBMs to make statements that (the Counties say) represented that (i) the "false list prices . . . were reasonably related to the actual prices realized by Defendants"; (ii) the "Manufacturer Payments paid back to the PBMs . . . were for Plaintiff's benefit"; (iii) "all 'rebates' and discounts negotiated by the PBMs with the Manufacturer Defendants were remitted to Plaintiff"; (iv) rebates "saved Plaintiff money"; (v) "each . . . PBM was transparent with Plaintiff regarding the Manufacturer Payments"; and (vi) the PBMs "constructed formularies in a manner that lowered the price of the at-issue drugs and promoted the health and safety of diabetics."  *Lake* FAC ¶ 593; *accord Albany* SAC ¶ 656; *King* SAC ¶ 439.   Such sweeping, unparticularized allegations violate Rule 9(b)'s requirement that a plaintiff "inject[] precision and some measure of substantiation into their allegations of fraud."  *Lum*, 351 F.3d at 223–24.  Without such precision, defendants are "prevent[ed] . . . from being able to prepare a defense."  *Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 659 (3d Cir. 1998).

The Counties' "specific" allegations fare no better. They point to alleged PBM statements to investors, in congressional testimony, and in annual reports and press releases, that generally discuss the PBMs' efforts to "manage costs," "lower[] the price" of insulin, and promote transparency. *E.g.*, *Albany* SAC ¶¶ 532, 656; *Lake* FAC ¶¶ 472–474. The Counties base their fraud theories on statements that PBMs "add value for our . . . clients," "help[] manage costs," and "negotiate the best possible discounts." *Albany* SAC ¶ 531. In the Counties' view, statements that the PBMs are "commit[ted]" to—and "very supportive" of—transparency are likewise fraudulent. *Albany* SAC ¶¶ 531, 536, 546; *see King* SAC ¶ 189; *Lake* FAC ¶¶ 483–488. The Counties also target alleged statements from PBM representatives opining that PBMs are not responsible for rises in (Manufacturer-set) list prices. *King* SAC ¶ 212. None of the targeted (truthful) statements is actionable.

To the extent the Counties point to statements made in congressional testimony, *Albany* SAC ¶¶ 412–427; *King* SAC ¶¶ 212, 231–244; *Lake* FAC ¶¶ 378–384, those cannot serve as a basis for liability because of the Noerr-Pennington doctrine. *See Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 2013 WL 2444036, at *6 (D.N.J. June 4, 2013); *Tuosto v. Philip Morris USA Inc.*, 2007 WL 2398507, at *5 (S.D.N.Y. Aug. 21, 2007).

The vast majority of the alleged PBM statements simply tout the PBMs' roles and efforts in the pharmaceutical market. Such "sales talk, or puffing . . . , is

considered to be offered and understood as an expression of the seller's opinion only," and "[a]s such . . . is not actionable." *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993).   Non-actionable puffery includes statements about a company's efforts to "control costs" and help consumers "save money," *County of Marin v. Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1039 (N.D. Cal. 2011), and its promotion of "transparency," *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 580 (S.D.N.Y. 2016).   Such assertions are "not quantifiable" and "do[] not describe (or misdescribe) any specific or absolute characteristic of [the company's] service," and therefore cannot be the basis for a fraud claim. *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008).

Alleged opinions from PBM representatives about the causes of price increases are similarly nonactionable.   A plaintiff may not base a fraud claim on a "sincere statement of pure opinion . . . regardless whether . . . the [speaker's] belief [was] wrong." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015).   The Counties do nothing to "call into question the . . . basis for offering the opinion," *id.* at 194; they simply disagree with the opinion, years after it was stated.   The Counties certainly do not carry their Rule 9(b) burden of alleging specific "facts to explain why or how" these opinions are fraudulent. *Melone v. Cryoport Inc.*, 2024 WL 1743108, at *10 (D.N.J. Apr. 23, 2024).

## 2.  The Counties Fail to Plead Any Material Omissions.

Lacking affirmative misrepresentations, the Counties focus their theories on allegedly fraudulent omissions concerning rebates, manufacturer revenue, and pharmacy networks.  These theories also fail.  For one, the Counties fail to plead that the PBMs had the requisite duty to disclose additional information.  *See supra*, Part I.  And even if such a duty existed, the Counties' own contracts with PBMs disclosed the information they say was omitted.  *Id.*

Nor can the Counties repackage the core of their complaints—that insulin prices are too high—as an omission theory by contending the PBMs did not disclose the "actual price" of insulin or that the "amount of 'savings' [the PBMs] have generated is calculated based on the . . . list price."  *Lake* FAC ¶¶ 349, 370.  Federal law defines a medication's WAC—*i.e.*, list price—not as its "actual price" but as the manufacturer-set price "not including . . . discounts, rebates or reductions in price." 42 U.S.C. § 1395w-3a(6)(B).  Further, the Counties' own contracts disclose that "AWP"—a benchmark tethered to the WAC—"is the basis for much of the pricing in this Contract," and reimbursements, fees, and discounts were "tether[ed] . . . to a drug's AWP."  *King* SAC ¶ 347; *see supra* at 4–5.

## B.    The Counties Do Not Allege Proximate Cause.

The Counties also fail to allege that any RICO predicate proximately caused them injury.  "When a court evaluates a RICO claim for proximate causation, the

30

central question it must ask is whether the *alleged violation* led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (emphasis added); *see Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (must allege "that *a RICO predicate offense* . . . was the proximate cause" (emphasis added)). In other words, the Counties must "demonstrate 'that [they were] injured by an act that is independently wrongful under RICO, . . . and not merely by a nonracketeering act in furtherance of a broader RICO conspiracy.'" *Gratz v. Ruggiero*, 822 F. App'x 78, 81 (3d Cir. 2020).[15] That is why, "[a]t the outset" of the proximate-cause analysis, "it is important to specify the purported conduct constituting a RICO predicate and the resulting injury." *St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 301 (3d Cir. 2010).

The Counties purport to link their supposed injuries to the alleged insulin-pricing scheme more generally. *Albany* SAC ¶ 512; *King* SAC ¶ 446; *Lake* FAC ¶ 453. But allowing this breadth would create a tautological causation theory: Plaintiffs define the "scheme" to include the act of raising prices, so the scheme inevitably encompasses any claimed injury of paying higher prices. Instead, the Counties must link the specific predicate acts they allege to their particular injury.

---

[15] *Accord Empire Merchants, LLC v. Reliable Churchill LLP*, 902 F.3d 132, 142 (2d Cir. 2018); *Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 729 (7th Cir. 2014); *Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*, 76 F.4th 1266, 1274 (9th Cir. 2023).

*See Anza*, 547 U.S. at 457 (the compensable injury is "the harm caused by *predicate acts*" (emphasis added)).

To do this for mail or wire fraud, the Counties must allege that *someone* relied on the alleged misrepresentation or omission in a way that proximately caused *the Counties'* injury. *See Devon Drive Lionville, LP v. Parke Bancorp, Inc.*, 791 F. App'x 301, 307 (3d Cir. 2019) ("requires reliance" by "someone"); *Dockery v. Heretick*, 2021 WL 3931858, at *12 (E.D. Pa. Sept. 1, 2021) ("In most cases, plaintiffs would not be able to establish even but-for causation if no one relied on a misrepresentation."), *aff'd*, 2022 WL 14810015 (3d Cir. Oct. 26, 2022). The Court found the law was "unsettled" when it decided the *Direct Purchasers* motion, 2021 WL 2886216, at *16, but the above recent authority confirms reliance is required, as does precedent in the Circuits in which Albany, King, and Lake filed suit.[16]

The Counties make no allegations of reliance and no allegations that connect the misrepresentations and omissions they allege to any injury to the Counties. They do not identify any third party that could have relied on a supposed misrepresentation or omission and caused the Counties harm. *Cf. Direct Purchaser*, 2021 WL 2886216, at *16 (finding "close question" where plaintiff had alleged causation

---

[16] *See Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243, 1259 (9th Cir. 2019); *UFCW Loc. 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 133 (2d Cir. 2010); *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 2018 WL 3586182, at *9 (N.D. Ill. July 26, 2018).

32

chain running through alleged reliance by third parties). Given that PBMs do not set list prices and the Counties do not directly buy medications, the theory that any PBM statements to the public ultimately caused the Counties to pay more for insulin necessarily requires a multistep causal chain that renders their asserted injury "too remote" to establish causation. *Carmona v. N.J. Dep't of Educ.*, 2023 WL 5814677, at *6–7 (3d Cir. Sept. 8, 2023), *cert. denied*, 144 S. Ct. 1059 (2024).

Inasmuch as the Counties claim to have relied on representations themselves, *Albany* SAC ¶ 664; *King* SAC ¶ 446; *Lake* FAC ¶ 600, their allegations foreclose the idea. Where the Counties mention reliance, it is often to disclaim it. *See Albany* SAC ¶ 535 ("Plaintiff's employees . . . were *not following* the various Congressional hearings . . . and were *not exposed* to all misrepresentations[.]" (emphases added)); *accord Lake* FAC ¶ 476. And the Counties' own contracts directly addressed rebates, formularies, and other manufacturer payments to PBMs. *Supra* at 4–5, Part I. Any "claim of reasonable reliance," therefore, "is contradicted by the . . . terms of the contracts they signed." *Wells Fargo Bank Northwest, N.A. v. Taca Int'l Airlines, S.A.*, 247 F. Supp. 2d 352, 370 (S.D.N.Y. 2002).

### C. The Counties Fail to Allege a RICO Enterprise Distinct from the Alleged Acts of Racketeering.

A RICO plaintiff must show an "association-in-fact enterprise" that exists "separate and apart from the pattern of activity in which it engages." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 365 (3d Cir. 2010). The enterprise must

"function as a unit" and share a "common purpose." *Id.* at 374. The Counties allege

nine such enterprises—each made up of one of the three Manufacturers paired with

one of the three PBMs, *Lake* FAC ¶ 573—none of which meets this standard.

The Counties' own allegations show the alleged enterprise and racketeering

activity are one and the same. "[T]he entire insulin pricing structure created by the

Defendants," they say, "is both unconscionable, deceptive, and unfair and

immensely lucrative." *Albany* SAC ¶ 562; *Lake* FAC ¶ 501. Thus, "Plaintiffs are

the victims of their own overreaching"—"without [the alleged misconduct] . . . there

would be no enterprise." *Ill. Farmers Ins. Co. v. Mobile Diagnostic Imaging, Inc.*,

2014 WL 4104789, at *15 (D. Minn. Aug. 19, 2014). This distinguishes *Direct

Purchaser*, where the plaintiffs alleged that certain fees PBMs earned from

manufacturers were for services "other" than the challenged conduct. 2021 WL

2886216, at *18.

The Counties' assertion that the PBMs and Manufacturers had a "common

purpose" of increasing insulin prices runs into the same problem. *Lake* FAC ¶¶ 586–

589. Such a "shared purpose . . . impermissibly conflate[s] the alleged RICO

enterprise with the alleged . . . racketeering activity." *Jordan v. Tilzer*, 2022 WL

16544335, at *2 (2d Cir. Oct. 31, 2022). In any event, the Counties' allegations

show that the PBMs and Manufacturers often work at ***cross***-purposes. They allege

that in 2018, increases in insulin prices effectively halted, and in 2023, prices were

significantly reduced.  *Albany* SAC ¶¶ 245–246; *Lake* FAC figs.6–11.  All of that

occurred while the Manufacturers and PBMs continued to negotiate rebates—which,

the Counties allege, they do vigorously.  *See, e.g.*, *Albany* SAC ¶¶ 393–411.

### D.    The Counties Fail to Plead that the PBMs Conducted the Affairs of an Enterprise.

The Counties also cannot show that the PBMs "conducted or participated in

the conduct of the '*enterprise's* affairs,' not just their *own* affairs."  *Reves v. Ernst*

*& Young*, 507 U.S. 170, 185 (1993).  "An arms-length business relationship between

distinct entities is not sufficient to show operation or management of an enterprise."

*Crichton v. Golden Rule Ins. Co.*, 2006 WL 2349961, at *7 (S.D. Ill. Aug. 11, 2006).

The Counties' allegations show the relationship between the PBMs and the

Manufacturers was just that.  They are "contractual relationships."  *Lake* FAC ¶ 577;

*accord Albany* SAC ¶ 640; *King* SAC ¶ 424.  And the existence of those contractual

relationships is presupposed by the Counties' own contracts with PBMs.  *See supra*

at 4–5.  Such "routine contractual relationship[s] . . . do[] not constitute a RICO

enterprise."  *Crichton*, 2006 WL 2349961, at *7.

Nor do the alleged misrepresentations satisfy the conduct element.  *See United*

*Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen*

*Co.*, 719 F.3d 849, 852, 855 (7th Cir. 2013) ("false[] represent[ations]" do not

establish enterprise conduct where allegations are  "entirely consistent with [each

defendant] going about its own business").  The alleged misrepresentations here are

the *only* asserted RICO predicates, unlike in *Direct Purchaser* where the Court reasoned that "bribery is a recognized means of participating in the conduct of an enterprise's affairs." 2021 WL 2886216, at *17. And the supposed "bribes" in that case are the very rebates and other manufacturer payments that the Counties here bargained with the PBMs to receive for themselves. *See supra* at 3–4.

## V. THE COUNTIES FAIL TO STATE CONSUMER PROTECTION CLAIMS.

The Counties' consumer protection claims fail not only because they contradict their contracts (*supra*, Part I), are untimely (*supra*, Part III), and—in the case of King—are barred by the indirect-purchaser rule (*supra*, Part II), but also for independent pleading failures. Many of these reasons overlap with the reasons the Counties' RICO claims fail: The Counties are not proper plaintiffs, fail to allege a viable claim based on fraud, deception, or unfair acts or practices, and contracted for the conduct they sue about. The challenged conduct also falls within statutory safe harbors.

### A. The Counties' Claims Are Not Covered by the Consumer Protection Statutes.

Two threshold bars prevent the Counties from bringing consumer protection claims at the outset. *First*, Lake is not a "person" authorized to sue for damages under the ICFA. 815 ILCS 505/10a. The Illinois Supreme Court has held that a school district or body politic is not permitted to bring a cause of action under the

36

ICFA. *Bd. of Educ. of City of Chi. v. A, C & S, Inc.*, 546 N.E.2d 580, 599 (Ill. 1989) (noting "the practice of the legislature, when it means to include governmental bodies within such a definition, of clearly stating so in the act"); *accord Brown v. City of Chicago*, 2020 WL 489522, at *5 (N.D. Ill. Jan. 30, 2020) ("[T]he City is not able to sue or be sued under the ICFA"). "[A] municipal corporation[ ] does not fall within the definition of 'person' in the Act, and is therefore not subject to suit under the Act." *Du Page Aviation Corp. v. Du Page Airport Auth.*, 594 N.E.2d 1334, 1342 (Ill. App. 2d Dist. 1992).

*Second*, Illinois and New York limit the plaintiffs who can sue to those with "consumer" injuries. A New York GBL § 349 claim must be premised on "consumer oriented" injuries, a standard not satisfied if the injury "involves business-to-business transactions" or other "complex arrangements, knowledgeable and experienced parties and large sums of money," *MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*, 2020 WL 831578, at *10 (D.N.J. Feb. 20, 2020), as such conduct does not have a "broader impact on consumers at large," *Oswego Laborers' Loc. 214 Pension Fund et al. v. Marine Midland Bank*, 647 N.E.2d 741, 744 (N.Y. 1995). And an ICFA claim, too, requires a non-consumer plaintiff to allege "a consumer nexus"—*i.e.*, that the challenged practices were "directed to the market generally or otherwise implicate[] consumer protection concerns." *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 437 (7th Cir. 1996).

37

This Court previously held that a nearly identical suit alleging an "insulin pricing scheme" brought by assignees of health care plans was not "consumer oriented." *MSP Recovery*, 2020 WL 831578, at *10. The same result should follow here to preclude both Albany and Lake's consumer protection claims. The Counties (like the *MSP Recovery* plaintiffs) and the PBMs are each "sophisticated" and engaged in contracts involving large sums of money. *Id.* And the Counties' claims do not implicate consumer protection concerns for the simple reason that the services PBMs offer are not for consumer use. As this Court already recognized, such business transactions are not the grist for consumer protection claims.

**B.    The Challenged Conduct Falls Within Safe Harbors.**

The conduct the Counties challenge is also protected by safe harbors. Each at-issue law exempts from liability conduct "specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of . . . the United States." 815 Ill. Comp. Stat. Ann. 505/10b(1); *accord* N.Y. GBL § 349(d); Wash. Code § 19.86.170.

Federal law specifically contemplates PBM rebating practices. It defines WAC—*i.e.*, the list prices at the center of the Counties' challenge—as "the manufacturer's list price . . . not including . . . rebates." 42 U.S.C. § 1395w-3a(c)(6)(B). Citing this provision, this Court recently found in another insulin-pricing case that it "does not see—and Plaintiffs do not explain—how it would be

38

able to enjoin Defendants as Plaintiffs request without causing Defendants to violate federal law." *In re Insulin Pricing Litig.*, 2024 WL 416500, at *28 (D.N.J. Feb. 5, 2024). Congress also specifically envisions that PBMs will negotiate rebates with manufacturers, requiring PBMs to report to the federal government "[t]he aggregate amount, and the type of rebates, discounts, or price concessions . . . that the [PBM] negotiates" with manufacturers in the context of certain federal health plans, and the "aggregate amount of the rebates, discounts, or price concessions that are passed through to the [plan sponsor]." 45 C.F.R. § 184.50.

The Department of Health and Human Services also has long placed PBM-negotiated rebates within a safe harbor of the Anti-Kickback Statute, 64 Fed. Reg. 63,518, 63,518 (Nov. 19, 1999), a decision Congress adopted when it has recently delayed—three different times—a proposed rule to remove that safe-harbor protection for PBM rebates. *See Action to Delay Effective Date Consistent with Congressionally Enacted Moratorium*, 88 Fed. Reg. 90, 125-01 (Dec. 29, 2023); *see Fraud & Abuse; Removal of Safe Harbor Protection for Rebates Involving Prescription Pharmaceuticals*, 85 Fed. Reg. 76,666, 76,667 (Nov. 30, 2020).

The Illinois, New York, and Washington consumer protection laws cannot undermine these federal-law judgments. *E.g.*, *Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 47 (Ill. 2005) (state law "will not impose higher disclosure requirements on parties than those that are sufficient to satisfy federal regulations").

C.    **The Counties Fail to Allege a Consumer Protection Claim Based on Fraud or Deception.**

The Counties' fraud-based theories for their consumer protection claims fail for the same reasons their RICO fraud allegations fail:  They do not allege the PBMs engaged in conduct that could mislead a consumer (or anyone), and the Counties have not alleged facts to show the PBMs' conduct caused them any injury, especially when the Counties have disclaimed reliance.

The Counties must plead acts "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Chery v. Conduent Educ. Servs., LLC*, 581 F. Supp. 3d 436, 450 (N.D.N.Y. 2022); *see also Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) ("likely to mislead a reasonable consumer in a material respect"); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986) ("*capacity* to deceive a substantial portion of the public").  As discussed above, the Counties fail to allege any affirmative misrepresentations that would mislead a reasonable consumer for the same reasons their misrepresentation-focused RICO predicates fail.  *See supra* at 26–29.  And any "omission" theories fail for the same reasons they do under RICO.  *See id.* at 29–30.

Albany and Lake also fail to plead the "reliance" that is necessary under their respective state consumer protection laws.  *See Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 739 (W.D.N.Y. 2020) (under GBL § 349 a plaintiff "must have been personally misled or deceived" to be injured by a defendant's deceptive act);

40

*De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009) (plaintiff who "cannot have relied on the statement" cannot prove it was "actually . . . deceived" by it and "consequently, cannot prove proximate cause"). Here, again, the Counties' claims of reliance and proximate causation fail for the same reasons they fail under RICO's similar requirements. *See supra* at 30–33; *Albany* SAC ¶ 535; *Lake* FAC ¶ 476.

### D.    King and Lake Fail to Allege a Claim Based on "Unfair" Conduct.

King and Lake purport also to sue for "unfair" conduct.[17] Those theories also fail. Neither King nor Lake alleges any "unfair" conduct independent of the conduct underlying their fraud theories. *See King* SAC ¶¶ 541–553; *Lake* FAC ¶¶ 636–651. As a result, any claims premised on "unfair" conduct fail for the same reasons as the claims premised on alleged deception. *See In re VTech Data Breach Litig.*, 2018 WL 1863953, at *7 (N.D. Ill. Apr. 18, 2018) ("[P]laintiffs cannot rely on the same conduct to establish separate unfair and deceptive theories under the ICFA."); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2017 WL 539578, at *9 (D. Or. Feb. 9, 2017) (similar under Washington law); *supra*, Parts IV.A, V.C.

Lake's unfairness claim fails for an additional reason. Lake's allegations of unfairness are premised on the notion that insulin prices "were not . . . competitive." *Lake* FAC ¶ 644. But Lake cannot "maintain what is in essence an antitrust claim

---

[17] Albany does not allege any "unfair" trade practices; New York's GBL creates liability only for "deceptive" acts. *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 410 (S.D.N.Y. 2011).

by another name under the [ICFA]." *In re Loestrin*, 410 F. Supp. 3d at 373 (citing

cases). The state legislature did not intend for the ICFA to be an "additional antitrust

enforcement mechanism." *Laughlin v. Evanston Hosp.*, 550 N.E.2d 986, 994 (Ill.

1990)). Lake impermissibly seeks to bring the "same allegations of anticompetitive

conduct" that the antitrust laws cover. *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d

395, 422 (D.N.J. 2018).

## VI.    THE COUNTIES FAIL TO STATE COMMON LAW FRAUD CLAIMS.

The Counties' common law fraud claims contain elements that overlap with

the Counties' mail-and-wire fraud RICO predicates and thus fail for the same

reasons. The Counties fail to allege any misrepresentation or material omission at

all, much less one that provides the specificity required by Rule 9(b), which governs

common law fraud claims. *Sienna Condo. Ass'n v. Ins. Co. of Greater N.Y.*, 2024

WL 1250266, at *2 (N.D. Ill. Mar. 22, 2024); *Goldrich v. Watkins Wellness*, 2024

WL 1194716, at *3 (S.D.N.Y. Mar. 20, 2024); *Brown v. Countrywide Home Loans,

Inc.,* 2016 WL 1259404, at *2 (E.D. Wash. Mar. 30, 2016); *see supra*, Part IV.A.

The Counties fail to allege any misrepresentation or omission was made with the

intent to defraud them. *Fox v. Heimann*, 872 N.E.2d 126, 138 (Ill. Ct. App. 2007);

*In re Tremont Sec. L., State L. & Ins. Litig.*, 703 F. Supp. 2d 362, 371 (S.D.N.Y.

2010) (New York); *Brummett v. Washington's Lottery*, 288 P.3d 48, 54 (Wash. Ct.

App. 2012) (Washington). And the Counties fail to allege that they relied on any

misrepresentation or omission.  *See Lama Holding Co. v. Smith Barney Inc.*, 668

N.E.2d 1370, 1373 (N.Y. 1996); *Soules v. Gen. Motors Corp.*, 402 N.E.2d 599, 601

(Ill. 1980); *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996); *see supra*, Part IV.B.

The Counties' fraud claims are separately foreclosed by their contracts with

PBMs.  Each state prohibits a plaintiff from alleging a fraud claim that is not

sufficiently distinct from the breach of contract claim.  *Bridgestone/Firestone, Inc.*

*v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996); *see Alejandre v. Bull*,

153 P.3d 864, 876 (Wash. 2007); *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d

443, 450 (Ill. 1982).  But that is exactly what the Counties do here.  They have

contracts with the PBMs that govern each of the actions about which they sue.  *See*

*supra* at 3–5.  And the Counties' claims are "premised upon [] alleged breach[es] of

contractual duties" to lower costs for the Counties as payors.  *Bridgestone/Firestone*,

98 F.3d at 20; *see Lake* FAC ¶ 686; *Albany* SAC ¶ 719; *King* SAC ¶ 498.

## VII.  THE COUNTIES FAIL TO STATE UNJUST ENRICHMENT CLAIMS.

In addition to the contractual (Part I, *supra*), indirect-purchaser (Part II,

*supra*), and limitations (Part III, *supra*) arguments, the Counties also fail to allege

the elements of their unjust-enrichment claims.  *First*, the Counties had express

contracts governing the precise topics on which they now claim the PBMs were

unjustly enriched.  *See supra* at 3–4, Part I.  But "unjust enrichment is a quasi-

contractual remedy unavailable where an express contract exists."  *Pilarczyk v.*

43

*Morrison Knudsen Corp.*, 965 F. Supp. 311, 323 (N.D.N.Y. 1997), *aff'd*, 162 F.3d 1148 (2d Cir. 1998); *Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. App. 5th Dist. 2004); *MacDonald v. Hayner*, 715 P.2d 519, 523 (Wash. 1986).

*Second*, King also brings an unjust-enrichment claim against OptumRx, the PBM that King alleges *never* served it. *King* SAC ¶¶ 532–540. This claim must be dismissed because a PBM that never served King, by definition, received *no benefit* from King. *See Falcon Props., LLC v. Bowfits 1308 LLC*, 478 P.3d 134, 140 n.3 (Wash. Ct. App. 2020) (Washington unjust-enrichment claim requires "a benefit conferred on one party by another" and that "the party receiving the benefit must have an appreciation or knowledge of the benefit").

*Third*, Lake and Albany's claims should be dismissed because they duplicate those Counties' defective statutory claims. When an Illinois unjust-enrichment claim "rests on the same improper conduct alleged in another claim," it is "tied to" the fate of that claim. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). New York unjust-enrichment claims are similar. *See, e.g.*, *Alce v. Wise Foods, Inc.*, 2018 WL 1737750, at *11 (S.D.N.Y. Mar. 27, 2018).

*Fourth*, Albany's unjust-enrichment claim requires a "direct benefit" from the plaintiff; an "indirect benefit is insufficient." *Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 697 (S.D.N.Y. 2012), *aff'd*, 548 F. App'x 16 (2d Cir. 2013). Albany's claim is indirect, *see* Part II, *supra*, as the Court

44

has recognized in applying direct-benefit requirements to dismiss unjust-enrichment claims. *See MSP Recovery*, 2019 WL 1418129, at *20.

## VIII.  KING FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING.

As discussed, the Counties contracted for the conduct they now sue about. Unsurprisingly, no County includes a straightforward breach of contract claim. Instead, a single County—King—only alleges ESI and CVS breached the implied duty of good faith and fair dealing. *King* SAC ¶¶ 514–531.  But such a claim is "derivative" and must be tied "to the performance of specific contract obligations." *Johnson v. Yousoofian*, 930 P.2d 921, 925 (Wash. Ct. App. 1996).   Under Washington law, an implied covenant claim cannot stand when the plaintiff "identifies no contractual provision that [the defendant] allegedly breached." *Haywood v. Amazon.com, Inc.*, 2023 WL 4585362, at *5 (W.D. Wash. July 18, 2023).  And King does not point to *any* provision of *any* of its contracts with ESI or CVS.  Instead, other than nebulous grievances about the terms of the contracts to which King agreed, *King* SAC ¶¶ 522–523, 525, King merely alludes to vague and undefined obligations of ESI and CVS "in managing King County's formulary and preferred drug list," *id.* ¶¶ 518, 520.  But King does not allege that ESI or CVS breached any particular contractual provision regarding formularies, and none of its "free-floating" allegations that lack any tie to "performance of a specific contract

term" can support an implied covenant claim. *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991).

King also alleges that CVS and ESI each had a contractual duty to "manag[e]" King's formulary and Preferred Drug List ("PDL"). *King* SAC ¶¶ 518, 520. King alleges that CVS and ESI placed insulin drugs on the formulary or PDL based on rebates or other fees they received "in direct contrast with the cost effectiveness of a given drug." *Id*. ¶¶ 519, 521. But neither CVS nor ESI promised to make formulary recommendations based solely on the "cost effectiveness" of a given drug. And even if each PBM had considered its own financial interests in developing formulary options as King alleges, King agreed that each PBM is not a fiduciary for purposes of formulary development. *See* Ex. 2 § 5-9 (2012 King-ESI); Ex. 1 at Ex. A § 3.2 (King-CVS). King therefore seeks to use the implied covenant to impermissibly "inject substantive terms into the parties' contract" about factors each PBM must consider when developing its formulary offerings—terms to which they did not agree. *Badgett*, 807 P.2d at 360. This effort to create contractual duties that do not exist fails as a matter of law. *See Haywood v. Amazon.com, Inc*., 2023 WL 4585362, at *4 (W.D. Wash. July 18, 2023) ("If there is no contractual duty, there is nothing that must be performed in good faith.").

46

## IX.    THE COUNTIES FAIL TO STATE CONSPIRACY CLAIMS.

The Counties' RICO conspiracy claims under 18 U.S.C. § 1962(d) fail because the Counties fail to plead viable claims under § 1962(c).  *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993).  The Counties' conclusory assertion of an additional predicate for their RICO conspiracy claims only—unspecified violations of the Travel Act, 18 U.S.C. § 1952 (*see Albany* SAC ¶ 698(c); *King* SAC ¶ 479(c); *Lake* FAC ¶ 633(c))—changes nothing.  The Counties say not a word about the theory, let alone plead "sufficient factual matter" to state a plausible claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Counties' state-law civil-conspiracy claims similarly fail for the reasons their other state-law claims fail.  *See* Parts V–VIII, *supra*.  Civil conspiracy cannot stand on its own as an independent claim.  *Ledgerwood v. Ocwen Loan Servicing LLC*, 2016 U.S. Dist. LEXIS 2363, at *12 (E.D.N.Y. Jan. 7, 2016); *Indeck N. Am. Power Fund, L.P. v. Norweb PLC*, 735 N.E.2d 649, 662 (Ill. App. Ct. 2000); *Gossen v. JPMorgan Chase Bank*, 819 F. Supp. 2d 1162, 1171 (W.D. Wash. 2011).  That is particularly so for civil-conspiracy claims the Counties bring against a PBM that never served the County.  Albany alleges *no viable predicate* for a civil-conspiracy claim against OptumRx, bringing RICO claims only.  *Albany* SAC ¶¶ 566–568.  Lake does the same as to CVS.  *Lake* FAC ¶ 620.  And King adds an unjust

47

enrichment claim against OptumRx, *King* SAC ¶¶ 532–40, but that claim fails precisely because OptumRx never served King. *See supra* at 3, 17–18.

The Counties RICO and state-law conspiracy claims also fail because the Counties do not plausibly allege the existence of an agreement to accomplish an unlawful purpose. *See Lento v. Altman*, 2023 WL 4232158, at *7 (D.N.J. June 27, 2023) (RICO); *Abacus Fed, Sav. Bank v. Lim*, 905 N.Y.S.2d 585, 588 (App. Div. 2010); *Walls v. VRE Chi. Eleven, LLC*, 344 F. Supp. 3d 932, 955 (N.D. Ill. 2018); *Young v. Rayan*, 533 P.3d 123, 133 (Wash. Ct. App.), *review denied*, 539 P.3d 4 (2023). A "[b]are, conclusory allegation[] of conspiracy" is "insufficient." *E.g.*, *Kovkov v. L. Firm of Dayrel Sewell, PLLC*, 182 A.D.3d 418, 419 (N.Y. App. Div. 2020). The Counties allege that the PBMs competed with each other to secure the Counties' business, *see Albany* SAC ¶ 510; *King* SAC ¶ 366; *Lake* FAC ¶ 43, and were often at loggerheads with the Manufacturers to obtain higher rebates, *see Albany* SAC ¶ 319; *King* SAC ¶ 245; *Lake* FAC ¶ 362, which the PBMs then passed through to the Counties, *Albany* SAC ¶ 416; *King* SAC ¶ 253; *Lake* FAC ¶ 442. This hardly alleges a conspiracy to *raise* the price the Counties paid.

## X.   CLAIMS AGAINST UNINVOLVED CORPORATE PARENTS AND AFFILIATES SHOULD BE DISMISSED.

All claims against uninvolved corporate parents and affiliates—CVS Health Corp.; CVS Pharmacy, Inc.; The Cigna Group; Evernorth Health, Inc.; UnitedHealth Group Incorporated, OptumInsight, Inc.; and Optum, Inc.—should also be

dismissed. The Counties do not allege any misconduct by these entities. Instead, they generally allege that these entities own or share employees with certain PBM subsidiary entities, direct unspecified company policies, and profit from the alleged pricing "scheme." *E.g.*, *Albany* SAC ¶¶ 76–206; *King* SAC ¶¶ 71–118; *Lake* FAC ¶¶ 74–200. But "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *see Judson Atkinson Candies, Inc., v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 381 (7th Cir. 2008) ("common officers and directors . . . insufficient" to pierce corporate veil).

The allegations against the uninvolved corporate parents and affiliates must be dismissed because the Counties fail to plead facts plausibly demonstrating that those companies are the PBMs' alter egos. A parent's "control, direct[ion], and supervis[ion]" of a subsidiary will not warrant holding the parent liable for the subsidiary's conduct absent a basis for "piercing the corporate veil." *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998). The Counties identify no such basis here. *See Mississippi ex rel. Fitch v. Eli Lilly & Co.*, 2022 WL 18401603, at *5 (S.D. Miss. Aug. 29, 2022) (dismissing entities in insulin-pricing case); ECF No. 112 at 14–16, No. 21-cv-674 (S.D. Miss. Aug. 15, 2022).

Nor is there a basis for direct liability against any of the uninvolved entities. That certain of the challenged statements may have been made by employees of

corporate parents, *see Albany* SAC ¶ 414, is irrelevant.    "[G]eneral public statements" by corporate parents are "not . . . enough to hold the parent companies liable under RICO." *In re EpiPen Direct Purchaser Litig.*, 2021 WL 147166, at *22 (D. Minn. Jan. 15, 2021).  Nor may the Counties group all uninvolved corporate entities together in the complaints' definitions of "CVS Caremark," "Express Scripts," and "OptumRx." *E.g.*, *King* SAC ¶¶ 71, 89, 104.  Complaints that "lump[] all Defendants together without setting forth what each particular defendant is alleged to have done" are "impermissible group pleadings [that] are insufficient to survive a motion to dismiss." *Cansler v. Kondaur Cap. Corp.*, 2021 WL 2390098, at *3 n.4 (D.N.J. June 11, 2021).[18]

## CONCLUSION

The Court should dismiss the Counties' claims against the PBMs with prejudice.

---

[18] Although improper, the result of the Counties' group pleading is that any defects in the claims against Caremark Rx, LLC, CaremarkPCS Health, LLC, Caremark, LLC, Express Scripts, Inc., and OptumRx, Inc. also defeat claims against CVS Health Corp.; CVS Pharmacy, Inc.; The Cigna Group; Evernorth Health, Inc.; UnitedHealth Group Incorporated, OptumInsight, Inc., and Optum, Inc.

Dated this 10th day of June, 2024.

 */s/ Brian D. Boone*                                    */s/ Jason R. Scherr*

Thomas P. Scrivo                                       Jason R. Scherr
Young Yu                                               Patrick A. Harvey
**O'TOOLE SCRIVO, LLC**                                Lindsey T. Levy
                                                       **MORGAN LEWIS & BOCKIUS LLP**
Brian D. Boone
Elizabeth Broadway Brown                               -and-
Kelley Connolly Barnaby
**ALSTON & BIRD LLP**                                  Drew Cleary Jordan
                                                       Tanya Y. Shah
*Counsel for UnitedHealth Group*                       **MORGAN LEWIS & BOCKIUS LLP**
*Incorporated; OptumRx, Inc.; Optum,*
*Inc.; and OptumInsight, Inc.*                         -and-

                                                       Katherine A. Vaky
                                                       **MORGAN, LEWIS & BOCKIUS LLP**

                                                       *Counsel for Evernorth Health, Inc.*
                                                       *(f/k/a Express Scripts Holding*
                                                       *Company); Express Scripts, Inc.;*
                                                       *Express Scripts Administrators, LLC;*
                                                       *ESI Mail Pharmacy Service, Inc.;*
                                                       *Express Scripts Pharmacy, Inc.;*
                                                       *Medco Health Solutions, Inc., and The*
                                                       *Cigna Group*


 */s/ A. Joshua Podoll*

Kevin H. Marino, Esq.
John D. Tortorella, Esq.
**MARINO, TORTORELLA & BOYLE, P.C.**

Enu Mainigi
Craig Singer
R. Kennon Poteat III
A. Joshua Podoll
Benjamin Hazelwood
Daniel Dockery

WILLIAMS & CONNOLLY LLP

*Counsel for CVS Health Corporation;
CVS Pharmacy, Inc.; Caremark Rx,
L.L.C.; CaremarkPCS Health, L.L.C.;
and Caremark, L.L.C.*