# Exhibit 7

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

IN RE: INSULIN PRICING
LITIGATION

**Case No. 2:23-MD-03080**
**MDL No. 3080**

**JUDGE BRIAN R. MARTINOTTI**
**JUDGE RUKHSANAH L. SINGH**

**ORAL ARGUMENT REQUESTED**

**THIS DOCUMENT RELATES TO:**
*County of Albany, New York v. Eli Lilly, et al.*, No. 1:22-cv-00981
*King County v. Eli Lilly et al.*, No. 2:23-cv-21178
*Lake County, Illinois v. Eli Lilly, et al.*, No. 2:23-cv-08487

## PBM DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR RULE 12(b)(6) MOTION TO DISMISS

(Counsel Listed on Next Pages)

Thomas P. Scrivo
Young Yu
**O'TOOLE SCRIVO, LLC**
14 Village Park Road
Cedar Grove, NJ 07009
T: (973) 239-5700
tscrivo@oslaw.com

Brian D. Boone
**ALSTON & BIRD LLP**
1120 S. Tyron St., Ste. 300
Charlotte, NC 28203
T: (704) 444-1000
brian.boone@alston.com

Elizabeth Broadway Brown
**ALSTON & BIRD LLP**
1201 W. Peachtree St. NW, Ste. 4900
Atlanta, GA 30309
T: (404) 881-7000
liz.brown@alston.com

Kelley Connolly Barnaby
**ALSTON & BIRD LLP**
950 F. Street, NW
Washington, D.C. 20004
T: (202) 239-3300
kelley.barnaby@alston.com

*Counsel for Defendants UnitedHealth
Group Incorporated; OptumRx, Inc.;
Optum, Inc.; and OptumInsight, Inc.*

Jason R. Scherr
Patrick A. Harvey
Lindsey T. Levy
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
jr.scherr@morganlewis.com
patrick.harvey@morganlewis.com
lindsey.levy@morganlewis.com
Tel: (202) 739-3000

-and-

Drew Cleary Jordan
Tanya Y. Shah
**MORGAN, LEWIS & BOCKIUS LLP**
502 Carnegie Center
Princeton, NJ 08540
drew.jordan@morganlewis.com
tanya.shah@morganlewis.com
Tel: (609) 919-6600

-and-

Katherine A. Vaky
**MORGAN, LEWIS & BOCKIUS LLP**
One Oxford Centre, Thirty Second
Floor
Pittsburgh, PA 15219
kathryn.vaky@morganlewis.com
Tel: (412) 560-3300

*Counsel for Evernorth Health, Inc.
(f/k/a Express Scripts Holding
Company); Express Scripts, Inc.;
Express Scripts Administrators, LLC;
ESI Mail Pharmacy Service, Inc.;
Express Scripts Pharmacy, Inc.; Medco
Health Solutions, Inc., and The Cigna
Group*

Kevin H. Marino
John D. Tortorella
**MARINO, TORTORELLA & BOYLE, P.C.**
437 Southern Boulevard
Chatham, New Jersey 07928
T: (973) 824-9300
F: (973) 824-8425
kmarino@khmarino.com
jtortorella@khmarino.com

Enu Mainigi
Craig Singer
R. Kennon Poteat III
A. Joshua Podoll
Benjamin Hazelwood
Daniel Dockery
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, S.W.
Washington, D.C. 20024
T: (202) 434-5000
F: (202) 434-5029
emainigi@wc.com
csinger@wc.com
kpoteat@wc.com
apodoll@wc.com
bhazelwood@wc.com
ddockery@wc.com

*Counsel for CVS Health Corporation; CVS Pharmacy, Inc.; Caremark Rx, L.L.C.; CaremarkPCS Health, L.L.C.; and Caremark, L.L.C.*

# **TABLE OF CONTENTS**

Page

ARGUMENT ..........................................................................................................2

I.    THE COUNTIES' CONTRACTS WITH PBMS DOOM THEIR CLAIMS. 2

II.    THE INDIRECT-PURCHASER RULE BARS MOST OF THE COUNTIES' CLAIMS. .....................................................................5

III.    THE COUNTIES' CLAIMS ARE UNTIMELY.............................................7

    A.    No County's Alleged Injuries Accrued Within the Limitations Periods. ..........................................................................8

    B.    The Counties Cannot Rely on Any Tolling Doctrine to Save Their Claims.........................................................................9

IV.    THE COUNTIES FAIL TO PLEAD RICO CLAIMS. .................................11

    A.    The Counties Do Not Allege Predicate Acts of Mail or Wire Fraud. .11

    B.    The Counties Do Not Allege Proximate Cause....................................13

    C.    The Counties Fail to Allege a RICO Enterprise Distinct from the Alleged Acts of Racketeering..............................................................15

    D.    The Counties Fail to Plead that the PBMs Conducted the Affairs of an Enterprise...........................................................................16

V.    THE COUNTIES FAIL TO STATE CONSUMER PROTECTION CLAIMS. ...................................................................................17

    A.    Albany's Claim Is Not Covered by New York's Consumer Protection Statute. .................................................................17

    B.    The Challenged Conduct Falls Within Safe Harbors. .........................17

    C.    The Counties Fail to Allege a Consumer Protection Claim Based on Fraud or Deception.........................................................19

    D.    King Fails to Allege a Claim Based on "Unfair" Conduct. ................19

VI.    THE COUNTIES FAIL TO STATE COMMON LAW FRAUD CLAIMS. .20

VII.    THE COUNTIES FAIL TO STATE UNJUST-ENRICHMENT CLAIMS...20

VIII.    KING FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING. .................................22

IX.    THE COUNTIES FAIL TO STATE CONSPIRACY CLAIMS....................23

i

X.     CLAIMS AGAINST UNINVOLVED CORPORATE PARENTS AND AFFILIATES SHOULD BE DISMISSED....................................................24

CONCLUSION ........................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

Page

### CASES

*Alce v. Wise, Foods, Inc.*, 2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018) ..............21

*Anderson v. 1399557 Ontario Ltd.*,
    2019 WL 5693749 (D. Minn. Nov. 4, 2019) .......................................12

*Apple Inc. v. Pepper*, 587 U.S. 273 (2019) ..........................................6, 7

*Armstrong Surgical Ctr., Inc. v. Armstrong Cnty. Mem'l Hosp.*,
    185 F.3d 154 (3d Cir. 1999) ................................................13

*Baltimore County v. RTKL Assocs. Inc.*, 380 Md. 670 (Md. 2004).......................11

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*,
    65 F.3d 1406 (7th Cir. 1995) ................................................7

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*,
    140 F.3d 494 (3d Cir. 1998) ................................................12

*Cal. Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508 (1972) ...................13

*Canario v. Gunn*, 751 N.Y.S.2d 310 (2002).........................................18

*Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939 (3d Cir. 1993).......................13

*Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494 (3d Cir. 2006) ....................8

*City of Miami v. Eli Lilly & Co.*, 2022 WL 198028 (S.D. Fla. Jan. 21, 2022)....7, 13

*Cleary v. Phillip Morris Inc.*, 656 F.3d 511 (7th Cir. 2011) ....................21

*Crichton v. Golden Rule Ins. Co.*,
    2006 WL 2349961 (S.D. Ill. Aug. 11, 2006)...................................16

*Desiano v. Warner-Lambert Co.*, 326 F.3d 339 (2d Cir. 2003) ....................7

*Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724 (W.D.N.Y. 2020)...........19

*Finney v. Ford Motor Co.*, 2018 WL 2552266 (N.D. Cal. June 4, 2018) ..............12

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) .......................3, 20

*Gratz v. Ruggiero*, 822 F. App'x 78 (3d Cir. 2020) ..............................14

*Greene v. Clean Rite Cleaners, LLC*,
    2024 WL 328436 (E.D.N.Y. Jan. 29, 2024).....................................21

*Grynberg v. Eni S.p.A.*, 2007 WL 2584727 (S.D.N.Y. Sept. 5, 2007).....................7

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew*
    *Bender & Co., Inc.*, 171 N.E.3d 1192 (N.Y. 2021) ...............................17

*Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC*,
    135 P.3d 499 (Wash. Ct. App. 2006).........................................5

*Howard Hess Dental Lab'ys. Inc. v. Dentsply Int'l, Inc.*,
    424 F.3d 363 (3d Cir. 2005) ................................................7

*Humana, Inc. v. Indivior, Inc.*, 2022 WL 17718342 (3d Cir. Dec. 15, 2022)..........6

*In re Direct Purchaser Insulin Pricing Litig.*,
    2021 WL 2886216 (D.N.J. July 9, 2021) ......................................13

iii

Page

Cases—cont'd:

*In re EpiPen Direct Purchaser Litig.*,
  2021 WL 147166 (D. Minn. Jan. 15, 2021) ......................................25
*In re Insulin Pricing Litig.*, 2019 WL 643709 (D.N.J. Feb. 15, 2019)..................16
*In re Insulin Pricing Litig.*, 2020 WL 831552 (D.N.J. Feb. 20, 2020)....................5
*In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56 (2d Cir. 1998)..............10
*In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314 (3d Cir. 2002)....................................8
*In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735 (E.D. Pa. 2014) ......................5
*In re Processed Egg Prods. Antitrust Litig.*, 881 F.3d 262 (3d Cir. 2018) .............7
*In re RCS Engineered Prods. Co.*, 102 F.3d 223 (6th Cir. 1996)..........................15
*In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013) ..............14
*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991) ...................13
*Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247 (S.D.N.Y. 2008)....................10
*Kolar v. Preferred Real Est. Invs., Inc.*, 361 F. App'x 354 (3d Cir. 2010) .............4
*Koral v. Saunders*, 36 F.4th 400 (2d Cir. 2022) ...................................................7
*Lieberson v. Johnson & Johnson Consumer Cos.*,
  865 F. Supp. 2d 529 (D.N.J. 2011) ...................................................12
*Lockhart v. Dorrance Publ'g Co., Inc.*, 2023 WL 157323 (D.N.J. 2023)..............10
*Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12 (S.D.N.Y. 2016) ........12
*McMahon v. Bumble Bee Foods LLC*, 148 F. Supp. 3d 708 (N.D. Ill. 2015) .....7, 21
*Med. Coll. of Wis. Inc. v. Attachmate Corp.*,
  2016 WL 697145 (E.D. Wis. Feb. 19, 2016)....................................22
*Mississippi ex rel. Fitch v. Eli Lilly & Co.*,
  2022 WL 18401603 (S.D. Miss. Aug. 29, 2022)................................25
*MSP Recovery Claim, Series, LLC v. Sanofi Aventis U.S. LLC*,
  2019 WL 1418129 (D.N.J. Mar. 29, 2019) ....................................6, 7
*MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*,
  2020 WL 831578 (D.N.J. Feb. 20, 2020) ..........................................17
*Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60 (2d Cir. 2018)..................22
*Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629 (7th Cir. 2002)............7
*Pelishek v. City of Sheboygan*, 2024 WL 1051210 (E.D. Wis. Mar. 11, 2024) ........9
*Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization
  Transactions, Inc.*, 730 F.3d 263 (3d Cir. 2013) ............................8, 9
*Pilch v. Hendrix*, 591 P.2d 824 (Wash. Ct. App. 1979) .........................................18
*Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*,
  898 F. Supp. 2d 673 (S.D.N.Y. 2012),
  *aff'd*, 548 F. App'x 16 (2d Cir. 2013)................................................21

iv

Page

Cases—cont'd:

*RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*,
   692 F. Supp. 3d 135 (S.D.N.Y. 2023) ................................................22
*Rekhter v. State, Dep't of Soc. & Health Servs.*, 323 P.3d 1036 (Wash. 2014) ......22
*Sigler v. Gonzalez*, 2024 WL 3550487 (C.D. Cal. Jan. 18, 2024)..........................12
*Singh v. City of New York*, 217 N.E.3d 1 (N.Y. 2023) ...........................................17
*Stutman v. Chem. Bank*, 731 N.E.2d 608 (N.Y. 2000) ...........................................19
*Sunlight Elec. Contracting Co. v. Turchi*,
   918 F. Supp. 2d 392 (E.D. Pa. 2013)..................................................4
*Syria v. AllianceOne Receivables Mgmt.*,
   2018 WL 3455499 (W.D. Wash. July 18, 2018),
   *aff'd*, 770 F. App'x 861 (9th Cir. 2019) ...........................................20
*Tersuli Constr. Servs., LLC v. Miletich*,
   2020 WL 3268044 (Wash. Ct. App. May 18, 2020) ..........................22
*Tredici Enoteca, LLC v. Dodge*, 2021 WL 3051916 (E.D. Pa. July 19, 2021)........4
*Tuosto v. Phillip Morris USA Inc.*,
   2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007)....................................13
*United Food & Com. Workers Unions & Emps. Midwest Health Benefits*
   *Fund v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013)........................16
*Valspar Corp. v. E.I. Du Pont De Nemours & Co.*,
   873 F.3d 185 (3d Cir. 2017) ...............................................................24
*Wash. State MLB Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-*
   *Kiewit Const. Co.*, 202 P.3d 924, 927 (Wash. 2009)..........................11
*Young v. Rayan*,
   533 P.3d 123 (Wash. Ct. App. 2023), *review denied*, 539 P.3d 4 (2023) ..........24

## STATUTES AND RULE

Racketeer Influenced and Corrupt Organizations Act (RICO),
   18 U.S.C. §§ 1961-1968 ...............................................................*passim*
New York G.B.L. § 349...........................................................................17, 21
Fed. R. Civ. P. 9 ......................................................................................11, 13

The Counties' claims were doomed from the start.  Although they allege a secret insulin-pricing scheme through which insulin list prices were "inflated" because manufacturers paid rebates to PBMs, their own (recent) contracts *acknowledged* that PBMs negotiate for rebates and *required* PBMs to ███████ of those rebates to the Counties.  The Counties do not dispute that they knew of various aspects of the supposed "scheme" for many years, yet waited to sue until after the statutes of limitations for their claims had run.

Now, in an attempt to avoid dismissal, the Counties abandon most of their case.  They narrow their case to a theory that PBMs received *other* payments from manufacturers that the Counties wish had *also* been passed through.  But the Counties' contracts covered that as well, authorizing PBMs to keep certain non-rebate payments.  And even if the contracts did not foreclose this new theory, it is nothing but a claim for breach of contract that the Counties do not bring.

This other-payments theory also augments the PBMs' other arguments.  It distances the Counties even more from any "direct purchase" of insulin and has been public since at least 2017.  And the Counties' pleading failures are even more pronounced when their case is narrowed to supposed "mislabeling" of manufacturer payments.

1

## **ARGUMENT**

## I.    THE COUNTIES' CONTRACTS WITH PBMS DOOM THEIR CLAIMS.

The Counties originally focused their allegations on "deception," "fraud," and "unfairness" arising from supposedly "inflated" list prices that resulted from manufacturer-rebate payments to PBMs.  *See, e.g.*, *Albany* SAC ¶¶ 17, 20; *King* SAC ¶¶ 1–2; *Lake* FAC ¶¶ 19, 32.  That theory collapsed once the Counties admitted (Opp. 10) that their PBM contracts (1) ███████████████████████████████████

███████████████ (Mot. 7), (2) acknowledged PBMs negotiate those "rebates" with manufacturers (Mot. 5), and (3) ████████████████████████████████

█████████████████████ (Mot. 4).  And the Counties do not dispute (Mot. 4–5) that those contracts also ████████████████████████████████████████

████████████████████████████████████████████████████

████████    Opp. 10; *see also* Mot. 7–8.  Put together, these concessions fatally undermine their prior theory of the case.  *See* Mot. 7–12.

The Counties' response is to try a new legal theory.  Now, their central claim is that PBMs "mislabeled rebates as 'fees,' 'discounts,' and 'credits' to avoid paying them to payors."  Opp. 10.  That theory also is foreclosed by the Counties' contracts, which authorized PBMs to negotiate for *and keep* certain non-rebate payments from manufacturers.  *See* Mot. 5, 9–10.  For example, Lake contracted so that OptumRx

████████████████████████████████████████████████████ and

2

██████████████████████████████████████████

██████████████████████████████████████████

████████  Ex. 7 at 15; *see also, e.g., Albany* SAC Ex. C §§ 1.15, 1.25 (ESI); *Albany*

SAC Ex. A § VIII.C (CVS).

The Counties' new theory also is nothing but a disguised breach of contract

claim.  The Counties cannot identify any relevant legal duty independent of the

contracts.  Rather, they simply assert the PBMs made a promise (to pass through

"rebates"), but broke it (by "mislabeling" rebates as something else).  Or, to use the

Counties' words, "the PBMs *promised* pricing transparency and reneged on that

promise."  Opp. 12 (Counties' emphasis).  But the Counties do not plead a breach of

contract cause of action and it is "axiomatic" they cannot add one through their

opposition brief.  *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007).

The Counties try to avoid the simple conclusion that their new theory is

nothing more than a breach of contract claim by pointing to supposedly "fraudulent"

conduct: "(1) the PBMs' representations that they lower costs for the Counties when

they actively work to do the opposite; (2) the publishing of false prices; (3) the

concealment of rebates by rebate aggregators; (4) self-dealing by the PBMs; and (5)

the exclusion of lower-priced medications from PBM formularies."  Opp. 10–11.

But the Counties cannot explain how any of these unrelated aspersions relate to their

theory that they did not receive the rebates they were promised.  And none of these

3

accusations alters the reality that the Counties' contracts dictate what payments PBMs negotiated from manufacturers would be passed through to the Counties.

*Kolar v. Preferred Real Est. Invs., Inc.*, 361 F. App'x 354, 363 (3d Cir. 2010), fits hand-in-glove with the Counties' new theory (as it did their prior one, Mot. 8). As in *Kolar*, "the essence of [the Counties'] complaint[s] alleges that defendants have 'diverted and/or misappropriated monies . . . due and payable' to [them] under purported claims of contractual right." *Id.* at 363. And as in *Kolar*, a (meritless) claim sounding in contract may not be "[re]characterize[d]" as a RICO claim simply by appending the words "false" and "fraudulent." *Id.*

None of the Counties' authorities (Opp. 11–12) involved conduct that was expressly provided for by a contract. In *Tredici Enoteca, LLC v. Dodge*, for instance, an individual who was contractually entitled only to one fee had independently "siphoned and transferred" other money for himself. 2021 WL 3051916, at *1 (E.D. Pa. July 19, 2021). Here, by contrast, the Counties allege the PBMs "failed to pay [them] the money . . . owed according to their contracts." *Sunlight Elec. Contracting Co. v. Turchi*, 918 F. Supp. 2d 392, 405 (E.D. Pa. 2013).[1]

---

[1] The PBMs argued that the Counties' allegations regarding "spread-pricing" and "clawback" pricing for pharmacies had nothing to do with their originally legal theory and did not constitute any unlawful conduct. Mot. 11–12. The Counties can only muster a claim that these practices "incentivize the PBMs to drive up list prices." Opp. 14. But incentives alone are not actionable. And while the Counties allege the "concealment of rebates by rebate aggregators" (Opp. 11), ▉▉▉▉▉▉▉▉

## II.    THE INDIRECT-PURCHASER RULE BARS MOST OF THE COUNTIES' CLAIMS.

The Counties cede most of the field to the PBMs' argument under the indirect-purchaser rule.  They do not dispute (Mot. 13) that the rule applies to their RICO claims and Washington unjust-enrichment claim.[2]  They do not dispute (Mot. 12) that they sue as health plans.  Nor can the Counties dispute (Mot. 12) that this Court applied the indirect-purchaser rule to bar RICO and other claims, including those brought by health plans, about that same "scheme."  The Counties also abandon two of the ways they tried to plead around this result.  They do not respond to the PBMs' argument (Mot. 16) that there can be no healthcare exception to the rule.  And they ignore the PBMs' argument (Mot. 16–17) about the Counties' barebones allegations they purchased insulin for County facilities.

The Counties focus exclusively on the theory (Opp. 21) that they are direct purchasers of insulin because the Counties "paid the PBMs directly for their beneficiaries' prescriptions."  But even assuming the Counties are still pursuing a

---

*E.g.*, *Albany* SAC Ex. C at Ex. D, at 40; *Albany* SAC Ex. A §§ VIII(A), (C).

[2] King is wrong that the indirect purchaser rule does not apply to its consumer protection claim.  Opp. 39–40.  *Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC*, 135 P.3d 499, 504 (Wash. Ct. App. 2006), never discussed the rule.  And this Court's holding was clear: "Washington courts have . . . held the statute precludes claims from indirect purchasers."  *In re Insulin Pricing Litig.*, 2020 WL 831552, at *9 (D.N.J. Feb. 20, 2020).  Lake is also wrong that the *Illinois Brick* repealer statute in Illinois for antitrust actions (Opp. 42 n.14) can save its unjust-enrichment claim.  *See In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 764 (E.D. Pa. 2014).

theory tied to paying too much for insulin (*see supra* Part I) they are not direct purchasers because they only *reimbursed* the PBMs for part of the cost of insulin purchases the Counties' beneficiaries made from *pharmacies*.    The Counties expressly alleged (and their contracts show) that any payment they make for insulin is through these partial reimbursements.  *E.g.*, *Lake* FAC ¶ 296; *see also Albany* SAC ¶¶ 329 fig. 21, 504; *King* SAC ¶¶ 36, 155–156.[3]    But simply "reimburs[ing]" for purchases by others is a "textbook indirect-purchaser theory."   *Humana, Inc. v. Indivior, Inc.*, 2022 WL 17718342, at *2–3 (3d Cir. Dec. 15, 2022); *accord MSP Recovery Claim, Series, LLC v. Sanofi Aventis U.S. LLC*, 2019 WL 1418129, at *16 (D.N.J. Mar. 29, 2019).  The Counties are no more direct purchasers of insulin than Visa is a direct purchaser of a Starbucks latte; they may reimburse for the purchase, but the barista isn't calling their name.

Turning the Supreme Court's *Apple* decision on its head, the Counties claim that *Apple* allows suit whenever the plaintiffs "pa[id] the alleged overcharge directly to" the defendant" (Opp. 23) (alterations in original) (quoting *Apple Inc. v. Pepper*, 587 U.S. 273, 281 (2019)).   But on that same page, the Supreme Court *rejected* a theory rooted in "pric[ing]," and allowed the claim to proceed because "[t]here is no intermediary in the distribution chain."   587 U.S. at 281.   Here, as the Court put it

---

[3] *See, e.g.*, *Albany* SAC Ex. C at § 3.1 ("Sponsor will pay the applicable *claims reimbursement* amounts ('Claims Reimbursements')"); *id.* at Ex. A-1.

when applying the rule previously, the "chain of distribution" is "fatal."  *MSP Recovery*, 2019 WL 1418129, at *16.  The Counties' other authorities (Opp. 20–23) cannot overturn the Supreme Court or the consistent conclusions of this Court and the Third Circuit.[4]

## III.    THE COUNTIES' CLAIMS ARE UNTIMELY.

The parties agree that most of the Counties' claims are subject to a three-year or four-year statute of limitations.  *See* Mot. 19 & n.11; Opp. 14.[5]  None of the Counties' claims, which were filed in 2022 and 2023, are timely.

---

[4] *See In re Processed Egg Prods. Antitrust Litig.*, 881 F.3d 262, 275 (3d Cir. 2018) (direct-purchase relationship between successive links in the distribution chain); *Howard Hess Dental Lab'ys. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 367, 376–78 (3d Cir. 2005) (direct-purchase relationship where retailer bought from dealer directly, which either physically delivered the product or coordinated with the manufacturer "ship[ping] the [product] directly"); *Desiano v. Warner-Lambert Co.*, 326 F.3d 339, 345 (2d Cir. 2003) (did not involve the indirect-purchaser rule); *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1414 (7th Cir. 1995) (predates *Apple* by over twenty years and has not been interpreted as altering *Illinois Brick*'s focus on the "distribution chain," *see Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 631–32 (7th Cir. 2002)); *City of Miami v. Eli Lilly & Co.*, 2022 WL 198028 (S.D. Fla. Jan. 21, 2022) (expressly departed from this Court's ruling in *MSP Recovery* and cannot be squared with *Humana* or *Apple*).
[5] They argue (Opp. 14 n.4) that three claims have longer statutes.  But Lake's unjust-enrichment claim is predicated on the same allegations as its unjust-enrichment and civil-conspiracy claims and thus is derivative.  *McMahon v. Bumble Bee Foods LLC*, 148 F. Supp. 3d 708, 715 (N.D. Ill. 2015).  Albany's own authorities (1) say its fraud claim must be brought within two years from the time that plaintiff discovered the fraud *or* "reasonably could have discovered it," *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir. 2022); and (2) demonstrate its unjust-enrichment claim is "not equitable in nature" and thus subject to a three-year statute of limitations, *Grynberg v. Eni S.p.A.*, 2007 WL 2584727, at *3 (S.D.N.Y. Sept. 5, 2007).  Regardless, they are untimely.

### A.    No County's Alleged Injuries Accrued Within the Limitations Periods.

The Counties invoked the discovery rule to avoid a limitations bar, but that rule does not apply if the Counties were on inquiry notice of their injury.  *See, e.g.*, *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 506 (3d Cir. 2006); *accord* Opp. 15.  The PBMs recited a decade of events that put the Counties on notice.  Mot. 20–23.  In response, the Counties argue that "[n]o public record reflected the *full extent* of the Insulin Pricing Scheme."  Opp. 2, 15–17 (emphasis added).  But they "need not know all of the details or 'narrow aspects' of the alleged fraud to trigger the limitations period."  *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1326 (3d Cir. 2002).  The Counties are on notice if they "would have discovered general facts about" the alleged "fraudulent scheme."  *Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 272 (3d Cir. 2013).

The Counties were on notice of far more than "general facts."  They do not dispute they knew by 2017 about all things "rebates" (Opp. 15), "formulary practices" and "the gap between list and net prices" (Opp. 16), that "the price of insulin has skyrocketed over time" (Opp. 16), and the theory that rebates were causing this (Opp. 17).  The Counties now claim (Opp. 15, 17) they are suing about alleged "mislabel[ing]" of rebates only.  But they had inquiry notice about that too:

- The Counties do not dispute (Mot. 5, 9–10) that their 2017 contracts *acknowledged* PBMs would negotiate payments from manufacturers other than rebates and ████████████████████████████████.  In

8

2017, for instance,



- The Counties (Opp. 15) ignore the PBMs' recitation (Mot. 22) of the Counties' behavior in requests for proposals, which signaled the Counties' awareness of these other payments and desire for more information about them.

- The articles cited by the Counties in their Complaints likewise alleged that "PBMs not only engage in rebate labeling games, but they also try to ensure their clients are unable to detect the extent to which they are doing so." *King* SAC ¶ 21 n.21 (citing Jan. 2009 article); *see also Albany* SAC ¶ 428 n.82 (citing 2016 *Hill* article that claimed PBMs have "perverse incentives" and "don't pass [rebates] on to their consumers").

- And the Counties ignore the PBMs' arguments (Mot. 21–22) that multiple other plaintiffs in this MDL have expressly acknowledged they were on notice of their claims by 2017 at the latest. While the Counties claim (Opp. 17) this is irrelevant, the Third Circuit has held that "reasonably diligent plaintiff[s] . . . would have noticed" complaints challenging similar conduct. *Pension Tr. Fund*, 730 F.3d at 278.

## B. The Counties Cannot Rely on Any Tolling Doctrine to Save Their Claims.

The Counties' conclusory arguments under various tolling doctrines fail.

*First*, the Counties assert (Opp. 18), in a conclusory citation to over 100 undifferentiated allegations, that they "sufficiently plead the[] elements" of fraudulent concealment. But an unexplained "string citation to dozens of paragraphs in a complaint do[] little to" show *how* the Counties are entitled to tolling. *Pelishek v. City of Sheboygan*, 2024 WL 1051210, at *6 (E.D. Wis. Mar. 11, 2024). The Counties do not dispute (Mot. 22–23) that they may invoke fraudulent concealment

9

only if they exercised "reasonable diligence" but fail to allege they have done so. While they claim (Opp. 18) diligence is "for a jury," a jury may not determine reasonable diligence where, as here, the plaintiff fails to allege it. *Lockhart v. Dorrance Publ'g Co., Inc.*, 2023 WL 157323, at *5 (D.N.J. 2023).

*Second*, the Counties hardly defend their invocation of continuing violations and separate accrual. They do not dispute (Opp. 18–19) that the continuing violations doctrine does not apply to RICO or King's state-law claims.[6] They ignore the PBMs' arguments (Mot. 24–25) that both theories are unavailable to claims about individually actionable events or where the alleged harm stems from events before the limitations period. They additionally fail to allege the *separate and independent* injuries required to be actionable. *See In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998) ("[The] [c]ollection [of fees] in later years cannot be viewed as a separate and distinct fraud creating new injuries as it was simply a part of the alleged scheme."). The Counties' sole argument (Opp. 18) is two conclusory allegations of "systematic misconduct" that purportedly "constitutes a continuous, unbroken violation of the law." *See Albany* SAC ¶ 629; *Lake* FAC ¶ 566. Those allegations do not support a continuing violation.

---

[6] They say it applies to unjust enrichment (Opp. 19), but their authority is a contract case. *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 261, 263 (S.D.N.Y. 2008).

*Finally*, King claims entitlement (Opp. 19) to "immun[ity] from statutes of limitation." But "nullum tempus" applies only if "the municipal action arises from an exercise of powers traceable to delegated sovereign state powers"; it is unavailable if "such action is proprietary." *Wash. State MLB Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Const. Co.*, 202 P.3d 924, 927 (Wash. 2009). King sues as a health plan to recover money it claims to be owed under a contract—a quintessential proprietary function. *See id.* at 929–30 (finding Maryland case law "[p]articularly instructive"); *Balt. Cty. v. RTKL Assocs. Inc.*, 380 Md. 670, 688 (Md. 2004) (*nullum tempus* not available where "counties" bring "a contract action").

## IV.    THE COUNTIES FAIL TO PLEAD RICO CLAIMS.

### A.    The Counties Do Not Allege Predicate Acts of Mail or Wire Fraud.

The Counties concede (Opp. 26–30) that predicate acts of mail or wire fraud require allegations of material misstatements or omissions with the particularity required by Rule 9(b). They do not plead a single one.

The Counties first point (Opp. 26) to the general "publication of false prices and manipulated formularies." They ignore the PBMs' argument (Mot. 27) that these "sweeping" and "unparticularized" assertions fail Rule 9(b). In any event, the Counties' own contracts made clear that insulin list prices are "set" not by PBMs but by the "Manufacturers." *E.g.*, *Albany* SAC ¶ 11; Mot. 5. And their calculation, the Counties do not dispute (Mot. 30), is dictated by federal law. That the Counties seek

11

refuge (Opp. 26–27) exclusively in cases attributing published pricing to drug *manufacturers* only reinforces why their theory fails as to *PBMs*. Nor may they rely on conclusory references (Opp. 26–27) to "manipulated formularies." That is not any specific "fraudulent misrepresentation[] or omission[]." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 528 (3d Cir. 1998).

The Counties are no more successful when it comes to specific statements. They do not dispute (Mot. 29) that statements about the cause of price increases are nonactionable. The statements they highlight (Opp. 27)—about the PBMs taking "bold" action to lower costs and "[i]ncrease affordability"; that rebates and pricing are "transparent"; and that PBMs are "open and honest"—are "precisely the type of 'puffery' that [courts] have consistently held to be inactionable." *Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 28 (S.D.N.Y. 2016) ("transparency"); *Finney v. Ford Motor Co.*, 2018 WL 2552266, at *8 n.10 (N.D. Cal. June 4, 2018) (product "boldest . . . yet"); *Sigler v. Gonzalez*, 2024 WL 3550487, at *6 (C.D. Cal. Jan. 18, 2024) ("honesty and fairness"); *Anderson v. 1399557 Ontario Ltd.*, 2019 WL 5693749, at *7 (D. Minn. Nov. 4, 2019) ("affordable price").

Those statements are a far cry from a manufacturer telling parents that its product is "clinically proven" to help babies. *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 540–41 (D.N.J. 2011) (cited at Opp. 28–29). Nor do the prior insulin-pricing decisions on which the Counties rely (Opp. 28) help

12

them.  In *In re Direct Purchaser Insulin Pricing Litig.*, this Court had no occasion to

analyze whether statements were puffery, 2021 WL 2886216, at *15 (D.N.J. July 9,

2021), and the passing analyses of the issue in *Harris County* and *City of Miami*

cannot be reconciled with the rule that "general claims of superiority" are

nonactionable, *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945–46 (3d Cir. 1993).[7]

The Counties' omissions theory also fails.  They do not dispute (Opp. 13, 29–

30) this requires a "duty to disclose." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d

1406, 1416 (3d Cir. 1991).  The Counties do not dispute (Mot. 9) that their contracts

*disclaimed* any fiduciary relationship.  And while they gesture (Opp. 29–30) toward

alleged "half-truths," they do not identify any PBM statement that created a duty to

say more.  Instead, the Counties say (Opp. 30) that such a duty arose from an

undefined "understanding" about what the "parties' relationships" were "founded

on."  Such unparticularized allegations violate Rule 9(b).  *See* Mot. 27.

## B.     The Counties Do Not Allege Proximate Cause.

The Counties concede by omission nearly every piece of the PBMs' argument

on proximate cause.  (Mot. 30–31).  The Counties also recognize (Opp. 32) that to

---

[7] The Counties cannot circumvent (Opp. 28–29) *Noerr-Pennington*, which applies
to "testi[mony] before Congress." *Tuosto v. Phillip Morris USA Inc.*, 2007 WL
2398507, at *2, *5 (S.D.N.Y. Aug. 21, 2007).  Any "sham" exception—whose
"exist[ence]" the Third Circuit has questioned, *see Armstrong Surgical Ctr., Inc. v.
Armstrong Cnty. Mem'l Hosp.*, 185 F.3d 154, 160 (3d Cir. 1999)—is limited to
"administrative or judicial processes." *Cal. Motor Transp. Co. v. Trucking
Unlimited,* 404 U.S. 508, 511, 513 (1972).

plead proximate causation for a mail or wire fraud predicate, they must allege that someone relied on the allegedly actionable misrepresentation or omission in a way that proximately caused the Counties' injury.  Mot. 30–31.  The Counties do not contend that the alleged misrepresentations and omissions concerning formularies, the PBMs' extra-contractual statements, or the labeling of rebates caused them injury.  Even the theories the Counties pursue are defective:

*First*, the Counties point to conclusory allegations (Opp. 31) they relied on insulin prices and alleged misrepresentations or omissions as to how those prices were set.  But the Counties never allege *how* they relied on any prices or *how* that caused their claimed injury of not receiving other manufacturer payments that were "mislabeled."  They simply assert (Opp. 31) that "payment of PBM invoices constitutes their reliance on the implicit representation that the amounts requested were 'honestly owed.'"  But the Counties never alleged any actionable misrepresentation or omission in a PBM invoice—let alone one about rebates or other manufacturer payments.  *See Gratz v. Ruggiero*, 822 F. App'x 78, 81 (3d Cir. 2020) (cannot allege proximate cause by claiming to have been injured "merely by a non-racketeering act in furtherance of a broader RICO conspiracy").[8]

---

[8] The Counties' authorities (Opp. 31–32), by contrast, find proximate cause where falsifying invoices above the contracted amounts was itself the RICO predicate act. *E.g.*, *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 120 (2d Cir. 2013) ("misrepresenting the amount of money due").

*Second*, the Counties contend (Opp. 32) that their PBM contracts were "misrepresentations" on which the Counties relied. But they do not say *how* they relied or *how* that connects to their claimed injury. Nor could they, as the pass-through of rebates to the Counties and the negotiation and retention of other fees by the PBMs is what the Counties expressly bargained for. *See supra* Part I; Mot. 4–7. And the Counties' theory that the contracts themselves are somehow fraudulent misrepresentations confirms that the Counties are rebranding a non-viable claim for express breach of the contracts' rebate provisions as "RICO." *See supra* pp.1–3.

*Third*, the Counties invoke a concept of RICO enterprise "inter-reliance" (Opp. 32)—an invention for which the Counties cite no authority because there is none. The claim is that the Manufacturers, the other members of the alleged enterprises, "relied on the false list prices." Opp. 32. But the Manufacturers *set* the list prices and, under the Counties' theory, did so fraudulently. *Albany* SAC ¶¶ 11–12, 17. "[I]t is axiomatic that one cannot commit a fraud . . . against oneself[.]" *In re RCS Engineered Prods. Co.*, 102 F.3d 223, 226 (6th Cir. 1996).

## C. The Counties Fail to Allege a RICO Enterprise Distinct from the Alleged Acts of Racketeering.

The Counties concede (Opp. 32–33) they must plead an enterprise "separate and apart from the pattern of activity in which it engages." But they say nothing about the fact that, far from having a "common purpose," the Manufacturers and PBMs negotiate against each other at cross-purposes. Mot. 34–35. And their

15

contention (Opp. 32) that the purported Manufacturer-PBM enterprises were "organized primarily for a legitimate purpose" cannot be squared with their actual allegations that all aspects of the "entire insulin pricing structure" are unlawful. *Albany* SAC ¶ 562; *Lake* FAC ¶ 501; *see also, e.g.*, *King* SAC ¶¶ 423–429.

### D. The Counties Fail to Plead that the PBMs Conducted the Affairs of an Enterprise.

The Counties' opposition to the PBMs' motion to dismiss merely confirms that the contractual relationships between the PBMs and Manufacturers are nothing more than "arms-length business relationship[s] between distinct entities [that are] not sufficient to show operation or management of an enterprise." *Crichton v. Golden Rule Ins. Co.*, 2006 WL 2349961, at *7 (S.D. Ill. Aug. 11, 2006). While the Counties accuse the PBMs of "manipulating formularies" and "mislabeling and concealing rebates," Opp. 34, both formulary placement and the definition and payment of rebates are governed by contract negotiations that "occur in competition for business in a legitimate market," *In re Insulin Pricing Litig.*, 2019 WL 643709, at *6 (D.N.J. Feb. 15, 2019). And to the extent such conduct is characterized as "false[] represent[ations]," such representations are insufficient to satisfy RICO's conduct element. *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 852, 855 (7th Cir. 2013).

## V.    THE COUNTIES FAIL TO STATE CONSUMER PROTECTION CLAIMS.

Lake abandons its Illinois consumer protection claim (Opp. 9 n.1), while the claims brought by Albany and King fail for a number of independent reasons.

### A.    Albany's Claim Is Not Covered by New York's Consumer Protection Statute.

A GBL § 349 claim must be premised on injuries that are "consumer oriented." This Court previously held that nearly identical claims brought by health plans were *not* "consumer oriented" because the health plans were "sophisticated" and had entered into large contracts with PBMs. *See MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*, 2020 WL 831578, at *10 (D.N.J. Feb. 20, 2020). The same result should follow here. Albany (like the *MSP Recovery* plaintiffs) and the PBMs are each "sophisticated" and entered into contracts involving large sums of money, *id.*—facts the Counties fail to dispute (Opp. 35–36). That Albany is a county, not a business, makes no difference: "[T]he consumer-oriented element precludes a GBL § 349 claim based on private contract disputes, unique to the parties." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 171 N.E.3d 1192, 1198 (N.Y. 2021) (cleaned up); *see also Singh v. City of New York*, 217 N.E.3d 1, 7 (N.Y. 2023).

### B.    The Challenged Conduct Falls Within Safe Harbors.

The Counties do not dispute that: (1) New York and Washington exempt conduct that is "authorized by the law"; (2) federal law defines the list price as "not

including . . . rebates"; and (3) the Court recently held, citing this very statute, that it could not award "specific injunctive relief sought by" insulin consumers suing about the same alleged "scheme" because doing so would be "inconsistent with the statute." Opp. 36–37; Mot. 38–39. The Counties also do not dispute (Mot. 39) that other federal laws contemplate that PBMs will negotiate "rebates, discounts, or price concessions" with manufacturers and begrudgingly admit (Opp. 37) that federal law "permits the Manufacturers to pay rebates to PBMs in certain circumstances." Federal law thus authorizes both (a) the negotiation and receipt of rebates by PBMs, and (b) the publication of list prices that do not account for rebates.

To avoid the safe harbors, the Counties recast their claims as being about "kickbacks" (Opp. 36), but that is simply sleight of hand as federal law *exempts* rebates from the definition of "kickback." *See* Mot. 39. Later, the Counties assert this is a case about "relabeling rebates." Opp. 36. But if these claims are only about manufacturer payments that the Counties think should have been passed through to them as "rebates" under their contracts, the Counties are improperly recasting an express breach of contract claim as a consumer protection claim. *See Canario v. Gunn*, 751 N.Y.S.2d 310, 311 (2002) ("Private contract disputes, unique to the parties . . . would not fall within the ambit of the statute."); *Pilch v. Hendrix*, 591 P.2d 824, 826 (Wash. Ct. App. 1979) (similar).

### C. The Counties Fail to Allege a Consumer Protection Claim Based on Fraud or Deception.

The Counties admit (Opp. 37 n.13) that they must allege acts that are "likely to mislead a reasonable consumer."  As discussed in connection with the Counties' RICO claims, they have failed to allege any affirmative representation that satisfies this standard.  *See supra* Part IV.A.  As for omissions, the Counties claim (Opp. 37–38) the PBMs had a duty to disclose because "the facts are known to the seller but not easily discoverable by the buyer," but they do not identify what "facts" they mean.  In any event, this argument fails for the same reasons it fails under RICO. *See supra* Part IV.A; Mot. 25–30.

Albany also has not pleaded the "reliance" that many New York courts have required.  *Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 739 (W.D.N.Y. 2020).  But even if reliance were not required, Albany must show a specific "material deceptive act" that "caused the injury."  *Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. 2000) (citation omitted).  Under either standard, Albany fails for the reasons discussed under the RICO claim.  *See supra* Part IV; Mot. 25–33.

### D. King Fails to Allege a Claim Based on "Unfair" Conduct.

The underlying conduct that King alleges is "unfair" (Opp. 39) is the same alleged misrepresentations and omissions that form the basis of its deceptive practices claim.  As a result, King's claims premised on "unfair" conduct fail for the same reasons as the claims premised on alleged deception.  Mot. 41.  King cannot

pivot in its brief to add new unspecified violations of "public policy" or "anticompetitive conduct." *See Frederico*, 507 F.3d at 202. And its conclusory invocations of "public policy" and the phrase "immoral, unethical, and unscrupulous" could never state a claim anyway. *See Syria v. AllianceOne Receivables Mgmt.*, 2018 WL 3455499, at *4 (W.D. Wash. July 18, 2018), *aff'd*, 770 F. App'x 861 (9th Cir. 2019).

## VI.    THE COUNTIES FAIL TO STATE COMMON LAW FRAUD CLAIMS.

The Counties once again try (Opp. 40) to support their common law fraud claims based on the same threadbare allegations that fail under their RICO claims. *See supra* Part IV. This is not enough. Nor can the Counties state a claim for fraud premised on a simple allegation of breach of contract. The theory about "mislabeling" of payments is simply an (inaccurate) assertion that the PBMs expressly breached the "rebate" provisions of their contracts.

## VII.   THE COUNTIES FAIL TO STATE UNJUST-ENRICHMENT CLAIMS.

The Counties unjust-enrichment claims fail for at least four reasons: *First*, everything the Counties allege—from rebates and formularies, to prices, to supposedly "mislabeled" fees—is addressed by specific provisions of the Counties' contracts. *See supra* Part I. *Second*, King admits (Opp. 44) that OptumRx never

20

served as its PBM.  King argues it conferred an indirect benefit (Opp. 44–45), but never says *how*.

Third, Lake and Albany do not dispute (Mot. 44) that unjust-enrichment claims that duplicate defective state-law claims fail.  But Lake abandoned its consumer protection claim (Opp. 9 n.1), which means that its unjust-enrichment claim must fail because it "rests on the same improper conduct alleged in" that abandoned claim.  *Cleary v. Phillip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011); *accord McMahon v. Bumble Bee Foods LLC*, 148 F. Supp. 3d 708, 715 (N.D. Ill. 2015).  Albany argues (Opp. 43–44) that the elements of unjust enrichment and consumer protection claims do not overlap fully, but that is irrelevant:  New York courts often dismiss unjust-enrichment claims as duplicative of GBL § 349 claims.  *E.g.*, *Alce v. Wise, Foods, Inc.*, 2018 WL 1737750, at *11–12 (S.D.N.Y. Mar. 27, 2018); *Greene v. Clean Rite Cleaners, LLC*, 2024 WL 328436, at *10–12 (E.D.N.Y. Jan. 29, 2024).

Finally, Albany does not dispute (Mot. 44–45) that this Court has applied direct-benefit requirements to bar identical unjust-enrichment claims in insulin-pricing cases.  Because an "indirect benefit is insufficient," *Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 697 (S.D.N.Y. 2012), *aff'd*, 548 F. App'x 16 (2d Cir. 2013), that should be the end of it.  Albany claims an "indirect[]" benefit may suffice (Opp. 42), but relies on dicta in a decision

21

that expressly was "not called upon to decide" the issue, *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018), and after which courts in New York have reiterated that the benefit must be "specific" and "direct," *RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*, 692 F. Supp. 3d 135, 154 (S.D.N.Y. 2023).

## VIII.  KING FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING.

King admits (Opp. 45) that its good-faith-and-fair-dealing claim must be tied to a subject about which "the contract gives a party discretion or leeway in determining how to act."  *See Rekhter v. State, Dep't of Soc. & Health Servs.*, 323 P.3d 1036, 1041 (Wash. 2014).  "Without such discretion, there is no legal basis to conclude that" a defendant "breached the duty of good faith and fair dealing." *Tersuli Constr. Servs., LLC v. Miletich*, 2020 WL 3268044, at *10 (Wash. Ct. App. May 18, 2020); *accord Med. Coll. of Wis. Inc. v. Attachmate Corp.*, 2016 WL 697145, at *18 (E.D. Wis. Feb. 19, 2016).  But King identifies no such discretion.

King asserts without explanation (Opp. 45) that ESI and CVS had "complete discretion" to "determin[e]" what was a "rebate" to pass through to King.  But King does not dispute (Mot. 5) that its contracts ███████████████████████████
█████████████████████

King argues (Opp. 45) that ESI and CVS had "complete discretion in managing" King's "formularies."  But it does not dispute (Mot. 5) that its contracts made clear ██████████████████████████████████

████████████████████████████████     ████████████████

████████████████████████████████████████████████

████  Ex. 1 at § 1 (2017 King-CVS); Ex. 2 at 5 (2012 King-ESI), ███████████

██████████████████████████, *see* Ex. 1 at Ex. A § 5.2(a)(2) (2017 King-CVS);

Ex. 2 at Ex. A(b) (2012 King-ESI).  Nor did King respond to the PBMs' argument

(Mot. 46) that King is simply trying to rewrite the terms of its contract.

Lastly, King asserts (Opp. 45) "discretion" in connection with how the contractual "audit process" was "creat[ed]."  But *creating* an audit process laid out in a contract[9] is not the same as giving a PBM discretion in *performing* the audit.  A challenge to the "creation" of the audit process is just an effort to re-trade the contractual deal.  It cannot support an implied covenant claim.

## IX.    THE COUNTIES FAIL TO STATE CONSPIRACY CLAIMS.

The Counties do not dispute that (1) if their main RICO claims are dismissed, their RICO conspiracy claims should be too; (2) their conclusory allegation of a Travel Act predicate must be dismissed; and (3) their civil-conspiracy claims must fail if their other state-law claims do.  Mot. 47; Opp. 34 n.10.  Acknowledging that they failed to directly allege an agreement to accomplish an unlawful purpose, the Counties assert (Opp. 47) that their allegations suffice because "all Defendants agreed to participate."  But the Counties point only to allegations (Opp. 47) that the

---

[9] *See* Ex. 1 at Ex. G (2017 King-CVS); Ex. 2 at Ex. B (2012 King-ESI).

23

nature of the industry, which (like most) holds regular conferences, provided "ample opportunity to conspire." "Mere suspicion or commonality of interests is insufficient to prove a conspiracy." *Young v. Rayan*, 533 P.3d 123, 133 (Wash. Ct. App. 2023) (citation omitted), *review denied*, 539 P.3d 4 (2023). The Counties admit (Opp. 46) "the PBMs competed" with each other to get the Counties' business by offering the most competitive price concessions, *i.e.*, rebates, they could wrangle from the Manufacturers. *See Albany* SAC ¶ 510; *King* SAC ¶ 366; *Lake* FAC ¶ 43. They then argue that the PBMs' competition is "what drove insulin prices higher." Opp. at 46. Not only is this counterintuitive—it defeats the Counties' conspiracy claims. *See Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, 873 F.3d 185, 198 (3d Cir. 2017) (conspiracy not found among competitors "despite the fact that the alleged conspirators' sales representatives had exchanged pricing information").

## X. CLAIMS AGAINST UNINVOLVED CORPORATE PARENTS AND AFFILIATES SHOULD BE DISMISSED.

Disclaiming any veil piercing or alter ego theory, the Counties purport (Opp. 47) to hold uninvolved corporate entities "liable for their own conduct." But simply sharing employees with certain PBM subsidiary entities, directing unspecified company policies, or profiting from the alleged pricing scheme cannot support liability. Nor can the Counties rely upon improper group-pleaded allegations to hold uninvolved affiliates liable. *See Albany* SAC ¶ 116; *King* SAC ¶¶ 27, 87, 211; *Lake* FAC ¶¶ 110, 171. The Counties try to amend their allegations

24

by mis-citing them. They point (Opp. 49) to allegations that "CVS *Caremark* knowingly profited from the false list prices." *Albany* SAC ¶ 116 (emphasis added). But their brief swaps out the word "Caremark" for "Pharmacy" to convert it into an (inaccurate) allegation about CVS Pharmacy, Inc.

The Counties rely (Opp. 48–50) on public statements in corporate reports, which simply assert some variation of the idea that PBMs "lower" their clients' costs by negotiating prices and rebates. Those are the kind of "general public statements" that are insufficient to keep corporate parents in this case. *In re EpiPen Direct Purchaser Litig.*, 2021 WL 147166, at *22 (D. Minn. Jan. 15, 2021).

The Counties offer (Opp. 48–50) only conclusory allegations that the corporate parents and affiliates may have brushed up against PBM services, but the Counties never do what their own authority demands: Allege any uninvolved corporate parent or subsidiary "designed pharmacy benefit plans." *Mississippi ex rel. Fitch v. Eli Lilly & Co.*, 2022 WL 18401603, at *5 (S.D. Miss. Aug. 29, 2022).

## <u>CONCLUSION</u>

The Court should dismiss all claims against the PBMs with prejudice.

Dated this 15th day of August, 2024.

| | |
|---|---|
| _/s/ Brian D. Boone_ | _/s/ Jason R. Scherr_ |
| Thomas P. Scrivo | Jason R. Scherr |
| Young Yu | Patrick A. Harvey |
| **O'Toole Scrivo, LLC** | Lindsey T. Levy |
| | **Morgan Lewis & Bockius LLP** |
| Brian D. Boone | |
| Elizabeth Broadway Brown | -and- |
| Kelley Connolly Barnaby | |
| **Alston & Bird LLP** | Drew Cleary Jordan |
| | Tanya Y. Shah |
| *Counsel for UnitedHealth Group* | **Morgan Lewis & Bockius LLP** |
| *Incorporated; OptumRx, Inc.; Optum,* | |
| *Inc.; and OptumInsight, Inc.* | -and- |

Katherine A. Vaky
**Morgan, Lewis & Bockius LLP**

*Counsel for Evernorth Health, Inc.*
*(f/k/a Express Scripts Holding*
*Company); Express Scripts, Inc.;*
*Express Scripts Administrators, LLC;*
*ESI Mail Pharmacy Service, Inc.;*
*Express Scripts Pharmacy, Inc.;*
*Medco Health Solutions, Inc., and The*
*Cigna Group*

 _/s/ A. Joshua Podoll_
Kevin H. Marino, Esq.
John D. Tortorella, Esq.
**Marino, Tortorella & Boyle, P.C.**

Enu Mainigi
Craig Singer
R. Kennon Poteat III
A. Joshua Podoll
Benjamin Hazelwood
Daniel Dockery

**WILLIAMS & CONNOLLY LLP**

*Counsel for CVS Health Corporation;*
*CVS Pharmacy, Inc.; Caremark Rx,*
*L.L.C.; CaremarkPCS Health, L.L.C.;*
*and Caremark, L.L.C.*