# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | Case No. 2:23-md-3080 (BRM)(RLS)<br><br>MDL No. 3080<br><br>**ORAL ARGUMENT REQUESTED** |

**THIS DOCUMENT RELATES TO:** Nos. 2:23-cv-07042, 2:23-cv-08487, 2:23-cv-21178
(Self-Funded Payers Track)

## MEMORANDUM OF LAW IN SUPPORT OF MANUFACTURERS' MOTION TO DISMISS THE ALBANY, KING, AND LAKE COUNTY COMPLAINTS

(Counsel listed on next page)

**McCARTER & ENGLISH, LLP**
Brian W. Carroll
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
(973) 639-2020

**DAVIS POLK & WARDWELL LLP**
James P. Rouhandeh (pro hac vice)
David B. Toscano (pro hac vice)
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

**DAVIS POLK & WARDWELL LLP**
Neal A. Potischman (pro hac vice)
Andrew Yaphe (pro hac vice)
1600 El Camino Real
Menlo Park, CA 94025
(650) 752-2000

*Attorneys for Defendant Novo Nordisk Inc.*

**WALSH PIZZI O'REILLY FALANGA LLP**
Liza M. Walsh
Katelyn O'Reilly
Three Gateway Center
100 Mulberry St., 15th Floor
Newark, NJ 07102
(973) 757-1100

**JONES DAY**
Michael R. Shumaker (pro hac vice)
Julie E. McEvoy (pro hac vice)
William D. Coglianese (pro hac vice)
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3939

*Attorneys for Defendant Sanofi-Aventis U.S. LLC*

**REED SMITH LLP**
Melissa A. Geist
Julia A. López
506 Carnegie Center, Suite 300
Princeton, NJ 08540
(609) 514-5978

**KIRKLAND & ELLIS LLP**
James F. Hurst (pro hac vice)
Andrew A. Kassof (pro hac vice)
Robert B. Ellis (pro hac vice)
Diana M. Watral (pro hac vice)
Ryan Moorman (pro hac vice)
Jason A. Feld (pro hac vice)
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000

*Attorneys for Defendant Eli Lilly and Company*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................3

   I.    Distribution Of Branded Prescription Medication. ...............................3

   II.   These Complaints ...................................................................................5

ARGUMENT ..........................................................................................................6

   I.    All OF Payers' Claims Are Untimely. ...................................................6

       A.    The Applicable Limitations Period Is, At Most, Four Years. .................................................................................6

       B.    Payers Were Well Aware Of The So-Called Scheme. ..............8

       C.    No Tolling Doctrine Salvages Payers' Claims. .......................13

   II.   Payers' RICO Claims Fail On Their Merits....................................16

       A.    The Indirect Purchaser Rule Bars Payers' Claims....................16

       B.    Payers Fail To Plead RICO Predicate Acts. ...........................18

       C.    Payers Fail To Plead That Manufacturers Conducted The Affairs Of A RICO Enterprise. .............................................19

   III.  Payers' Consumer Protection Claims Are Barred............................22

       A.    State-Law Bars Preclude Payers' Claims. ...............................22

           1.    Safe Harbors Bar Payers' Claims. ...........................23

           2.    Albany's Claim Is Not Consumer-Oriented. .................26

           3.    King and Albany Cannot Bring Indirect Claims. ..........27

       B.    Payers Cannot State Deception Claims. ..................................28

           1.    Payers Do Not Allege A Misrepresentation. .................28

           2.    Payers Do Not Allege An Actionable Omission. ...........30

       C.    Payers Cannot State Unfairness Claims....................................32

           1.    Payers' Price-Inflation Theory Is Not Cognizable. ........33

           2.    Payers' Price-Gouging Theory Is Not Cognizable.........34

           3.    Payers Fail To Allege Unfairness...............................36

   IV.  Payers Fail To Allege Common-Law Fraud Claims...........................40

       A.    Payers Cannot Allege A Misrepresentation Or Omission. .......40

       B.    Payers Do Not Allege Intent To Induce Reliance. ...................41

       C.    Payers Also Fail to Allege Reasonable Reliance......................41

   V.   Payers Fail To State Unjust Enrichment Claims................................42

| | | |
|---|---|---|
| | A. | The Unjust Enrichment Claims Fall With The Underlying Claims ................................................................42 |
| | B. | Payers Did Not Confer A Benefit On Manufacturers...............43 |
| | | 1. Payers Did Not Directly Benefit Manufacturers. ..........43 |
| | | 2. Manufacturers Did Not Benefit From The Alleged Scheme. ........................................................44 |
| | C. | Express Contracts Bar Payers' Unjust Enrichment Claims. ....................................................................45 |
| VI. | | Payers Do Not State Conspiracy Claims................................................47 |
| VII. | | Payers Do Not And Cannot Plead Claims Regarding GLP-1 Medications. ..................................................................48 |
| | A. | Patent Law Preempts Payers' Challenge To GLP-1 Pricing. ....................................................................48 |
| | B. | Payers Cannot Plead Claims As To GLP-1 Medications. ........48 |
| CONCLUSION | | ..................................................................50 |

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*In re Aetna UCR Litig.*,
   2015 WL 3970168 (D.N.J. June 30, 2015).........................................20

*Allen v. State*,
   826 P.2d 200 (Wash. 1992) ..........................................................14

*In re Arthur J. Gallagher Data Breach Litig.*,
   631 F. Supp. 3d 573 (N.D. Ill. 2022)...........................................45

*Asamblea De Iglesias Christianas, Inc. v. DeVito*,
   210 A.D.3d 843 (N.Y. App. Div. 2022) ........................................40

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................50

*Baddeley v. Seek*,
   156 P.3d 959 (Wash. Ct. App. 2007)............................................41

*Baker Boyer Nat'l Bank v. Foust*,
   436 P.3d 382 (Wash. Ct. App. 2018)............................................41

*Batson v. Live Nation Ent., Inc.*,
   746 F.3d 827 (7th Cir. 2014) .......................................................37

*Battista v. Katz*,
   2023 WL 4072854 (Ill. App. Ct. June 20, 2023)..............................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).....................................................................48

*Benak ex rel. All. Premier Growth Fund v. All. Cap. Mgmt. L.P.*,
   435 F.3d 396 (3d Cir. 2006) ........................................................10

*Bible v. United Student Aid Funds, Inc.*,
   799 F.3d 633 (7th Cir. 2015) .......................................................21

*Blake v. Fed. Way Cycle Ctr.*,
   698 P.2d 578 (Wash. Ct. App. 1985)..................................38, 39, 40

*Blaylock v. First Am. Title Ins. Co.*,
  2008 WL 8741396 (W.D. Wash. Nov. 7, 2008)...........................................27, 28

*Blewett v. Abbott Lab'ys*,
  938 P.2d 842 (Wash. Ct. App. 1997).....................................................27

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
  818 N.E.2d 1140 (N.Y. 2004)...........................................................28

*Blythe Holdings, Inc. v. DeAngelis*,
  750 F.3d 653 (7th Cir. 2014) .........................................................45

*Bober v. Glaxco Wellcome PLC*,
  246 F.3d 934 (7th Cir. 2001) .....................................................25, 30

*Bonilla v. Ancestry.com Operations Inc.*,
  628 F. Supp. 3d 812 (N.D. Ill. 2022)..................................................7

*Borsellino v. Goldman Sachs Grp., Inc.*,
  477 F.3d 502 (7th Cir. 2007) ........................................................47

*Boyd v. U.S. Bank, N.A.*,
  787 F. Supp. 2d 747 (N.D. Ill. 2011).................................................37

*BP W. Coast Prods. LLC v. SKR Inc.*,
  989 F. Supp. 2d 1109 (W.D. Wash. 2013) ..............................................42

*Bracken Data, Inc. v. Guel*,
  2022 WL 3999810 (N.D. Ill. Sept. 1, 2022)...........................................41

*Brandt v. Rossi*,
  2012 WL 359736 (D.N.J. Feb. 2, 2012) ................................................9

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ........................................................9

*Bushbeck v. Chicago Title Ins. Co.*,
  2012 WL 12845605 (W.D. Wash. Nov. 15, 2012)........................................30

*Butler v. Mayer, Brown & Platt*,
  704 N.E.2d 740 (Ill. App. Ct. 1998) ................................................14

*Cement-Lock v. Gas Tech. Inst.*,
618 F. Supp. 2d 856 (N.D. Ill. 2009)....................................................44

*Ciambriello v. Cnty. of Nassau*,
292 F.3d 307 (2d Cir. 2002) ...............................................................48

*CIFG Assurance N. Am., Inc. v. Credit Suisse Sec. (USA) LLC*,
11 N.Y.S.3d 563 (App. Div. 2015).......................................................10

*City of Miami v. Eli Lilly & Co.*,
2022 WL 198028 (S.D. Fla. Jan. 21, 2022)...........................................43

*City of Moses Lake v. United States*,
430 F. Supp. 2d 1164 (E.D. Wash. 2006)..............................................16

*City of New York v. Smokes-Spirits.com, Inc.*,
911 N.E.2d 834 (N.Y. 2009).........................................................26, 28

*City of Rockford v. Mallinckrodt ARD, Inc.*,
360 F. Supp. 3d 730 (N.D. Ill. 2019)....................................................46

*City of Syracuse v. Loomis Armored US, LLC*,
900 F. Supp. 2d 274 (N.D.N.Y. 2012)............................................14, 15

*Cleary v. Philip Morris, Inc.*,
656 F.3d 511 (7th Cir. 2011) ...............................................................42

*Cothron v. White Castle Sys., Inc.*,
477 F. Supp. 3d 723 (N.D. Ill. 2020)....................................................15

*Coto Settlement v. Eisenberg*,
593 F.3d 1031 (9th Cir. 2010) .............................................................43

*Crichlow v. Fischer*,
2017 WL 920753 (W.D.N.Y. Mar. 7, 2017) ..........................................15

*Dancor Int'l, Ltd. v. Friedman, Goldberg & Mintz*,
681 N.E.2d 617 (Ill. App. Ct. 1997) .....................................................14

*Davis v. Hain Celestial Grp.*,
297 F. Supp. 3d 327 (E.D.N.Y. 2018) ...................................................32

*Denton v. Dep't Stores Nat. Bank*,
2011 WL 3298890 (W.D. Wash. Aug. 1, 2011)...................................................25

*Dimond v. Darden Restaurants, Inc.*,
2014 WL 3377105 (S.D.N.Y. July 9, 2014)..........................................30, 31, 32

*Donnellan v. Travelers Co., Inc.*,
2022 WL 170046 (N.D. Ill. Jan. 18, 2022)...................................................39, 40

*Douglass v. Stanger*,
2 P.3d 998 (Wash. Ct. App. 2000)..................................................................7, 10

*Dunn v. City of Seattle*,
420 F. Supp. 3d 1148 (W.D. Wash. 2019) .........................................................15

*Dwyer v. Allbirds, Inc.*,
598 F. Supp. 3d 137 (S.D.N.Y. 2022) ................................................................30

*Dwyer v. J.I. Kislak Mortg. Corp.*,
13 P.3d 240 (Wash. Ct. App. 2000)...................................................................37

*EBCF Enters., Inc. v. Erie Ins. Exch.*,
572 F. Supp. 3d 489 (N.D. Ill. 2021).................................................................37

*In re EpiPen*,
44 F.4th 959 (10th Cir. 2022) ...........................................................................22

*Farwest Steel Corp. v. Mainline Metal Works, Inc.*,
741 P.2d 58 (Wash. Ct. App. 1987)...................................................................46

*Ferrandino & Son Inc. v. Wheaton Builders, Inc.*,
920 N.Y.S.2d 123 (N.Y. App. Div. 2011).........................................................47

*First Nat'l State Bank v. Irving Trust Co.*,
91 A.D.2d 543 (N.Y. App. Div. 1982) ..............................................................40

*Friedland v. Unum Grp.*,
50 F. Supp. 3d 598 (D. Del. 2014).....................................................................21

*Galanis v. Starbucks Corp.*,
2016 WL 6037962 (N.D. Ill. Oct. 14, 2016) .....................................................29

*Galvan v. Northwestern Mem'l Hosp.*,
   888 N.E.2d 529 (Ill. App. Ct. 2008) ................................................................38

*Gandhi v. Sitara Capital Mgmt., LLC*,
   721 F.3d 865 (7th Cir. 2013) ...........................................................................40

*Garrett v. RentGrow Inc.*,
   2005 WL 1563162 (N.D. Ill. July 1, 2005) ......................................................37

*Gen. Motors Corp. v. Tracy*,
   519 U.S. 278 (1997)..........................................................................................36

*Gentleman v. Massachusetts Higher Educ. Assistance Corp.*,
   272 F. Supp. 3d 1054 (N.D. Ill. 2017) ...............................................................7

*Geranios v. Annex Investments*,
   273 P.2d 793 (Wash. 1954) ...............................................................................7

*Go For It, Inc. v. Aircraft Sales Corp.*,
   2003 WL 21504600 (N.D. Ill. June 27, 2003)..................................................40

*Goldberg v. Pace Univ.*,
   535 F. Supp. 3d 180 (S.D.N.Y. 2021) ..............................................................45

*Greene v. Clean Rite Ctrs., LLC*,
   2024 WL 328436 (E.D.N.Y. Jan. 29, 2024)......................................................43

*Gupta v. Wipro Ltd.*,
   749 F. App'x 94 (3d Cir. 2018) ..........................................................................9

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
   719 P.2d 531 (Wash. 1986) ...............................................................29, 32, 33

*Harnish v. Widener Univ. Sch. of Law*,
   833 F.3d 298 (3d Cir. 2016) .............................................................................33

*Harris Cnty., Texas v. Eli Lilly & Co.*,
   2022 WL 479943 (S.D. Tex. Feb. 16, 2022)...............................................17, 46

*Haymond v. Lundy*,
   2000 WL 804432 (E.D. Pa. June 22, 2000)......................................................19

*HB Dev., LLC v. W. Pac. Mut. Ins.*,
  86 F. Supp. 3d 1164 (E.D. Wash. 2015) ......................................................29, 31

*Hebrew Inst. For Deaf & Exceptional Children v. Kahana*,
  870 N.Y.S.2d 85 (App. Div. 2008) ...............................................................7

*Hoopingarner v. Stenzel*,
  768 N.E.2d 772 (Ill. App. Ct. 2002) ..................................................41

*Hunter v. Ferebauer*,
  980 F. Supp. 2d 1251 (E.D. Wash. 2013) ..........................................40

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
  227 F.3d 8 (2d Cir. 2000) ...................................................42

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977)......................................................16

*Indeck N. Am. Power Fund, L.P. v. Norweb PLC*,
  735 N.E.2d 649 (Ill. App. Ct. 2000) .......................................47

*Indep. Tr. Corp. v. Fid. Nat. Title Ins. Co. of N. Y.*,
  577 F. Supp. 2d 1023 (N.D. Ill. 2008) ..................................44

*In re Ins. Brokerage Antitrust Litig.*,
  2007 WL 2892700 (D.N.J. Sept. 28, 2007) .........................................22

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010) ............................................22

*In re Insulin Pricing Litig.*,
  2020 WL 831552 (D.N.J. Feb. 20, 2020) ..........................................27

*In re Insulin Pricing Litig.*,
  2024 WL 416500 (D.N.J. Feb. 5, 2024) .....................................24, 33

*In re Integrated Res. Real Estate P'ships Sec. Litig.*,
  850 F. Supp. 1105 (S.D.N.Y. 1993) ....................................14

*Interlease Aviation Invs. II v. Vanguard Airlines, Inc.*,
  2004 WL 1149397 (N.D. Ill. May 20, 2004).....................................44

*J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*,
   2005 WL 1396940 (S.D. Ohio. June 13, 2005) ....................................................22

*Jackson v. Kraft Heinz Food Co.*,
   2022 WL 4591749 (N.D. Ill. Aug. 3, 2022) ......................................................28

*Johnson v. Marshall Field & Co.*,
   312 N.E.2d 271 (Ill. 1974) ..............................................................................26

*Kelley v. Microsoft Corp.*,
   2011 WL 13353905 (W.D. Wash. May 24, 2011) ............................................33

*Kelly v. Peerstar, LLC*,
   2022 WL 3327934 (W.D. Pa. Aug. 11, 2022) ............................................18, 19

*Khan v. Deutsche Bank AG*,
   978 N.E.2d 1020 (Ill. 2012) ...............................................................................7

*Kische USA LLC v. Simsek*,
   2016 WL 7212534 (W.D. Wash. Dec. 13, 2016) ............................................47

*Klehr v. A.O. Smith Corp.*,
   521 U.S. 179 (1997) ...........................................................................................6

*Klem v. Wash. Mut. Bank*,
   295 P.3d 1179 (Wash. 2013) .............................................................................37

*Knauf Insulation, Inc. v. S. Brands, Inc.*,
   820 F.3d 904 (7th Cir. 2016) ...........................................................................10

*Krolick v. Sloane*,
   2021 WL 5280990 (S.D.N.Y. Nov. 12, 2021) .................................................41

*L. Offs. of K.C. Okoli, P.C. v. BNB Bank, N.A.*,
   481 Fed. App'x 622 (2d Cir. 2012) ..................................................................24

*LabMD Inc. v. Boback*,
   47 F.4th 164 (3d Cir. 2022) ...............................................................................7

*Lambert v. Sklar*,
   817 N.Y.S.2d 378 (App. Div 2006) ...................................................................7

*Lau v. ZTE Corp.*,
    2023 WL 9066883 (E.D.N.Y. Sept. 28, 2023) ....................................................47

*Laydon v. Mizuho Bank, Ltd.*,
    2014 WL 1280464 (S.D.N.Y. Mar. 28, 2014)....................................................43

*Lewis v. Delaware Charter Guarantee & Tr. Co.*,
    2015 WL 1476403 (E.D.N.Y. Mar. 31, 2015)....................................................40

*Limestone Dev. Corp. v. Vill. of Lemont*,
    520 F.3d 797 (7th Cir. 2008) ............................................................................15

*Lisson v. Wells Fargo Bank, N.A.*,
    2019 WL 3577859 (Wash. Ct. App. Aug. 6, 2019)...........................................36

*Lum v. Bank of Am.*,
    361 F.3d 217, 223 (3d Cir. 2004) ....................................................................18

*Lumbra v. Suja Life, LLC*,
    674 F. Supp. 3d 7 (N.D.N.Y. 2023)..................................................................29

*Magney v. Lincoln Mut. Sav. Bank*,
    659 P.2d 537 (Wash. Ct. App. 1983)................................................................37

*Manchanda v. Educ. Credit Mgmt. Corp.*,
    2022 WL 137885 (S.D.N.Y Jan. 14, 2022) ......................................................26

*Maron v. Am. Enter. Bank*,
    2022 WL 807379 (7th Cir. Mar. 16, 2022) ........................................................7

*Marshall v. Hyundai Motor Am.*,
    51 F. Supp. 3d 451 (S.D.N.Y. 2014) ..................................................................7

*Mauvais–Jarvis v. Wong*,
    987 N.E.2d 864 (Ill. App. Ct. 2013) ...................................................................7

*McCarthy v. Recordex Serv., Inc.*,
    80 F.3d 842 (3d Cir. 1996) .........................................................................16, 18

*McCullough v. Zimmer, Inc.*,
    2009 WL 775402 (W.D. Pa. Mar. 18, 2009)....................................................22

*Mendelson v. Trans World Airlines, Inc.*,
    466 N.Y.S.2d 168 (N.Y. 1983) .......................................................................25, 26

*Metro. Cap. Bank & Tr. v. Feiner*,
    179 N.E.3d 847 (Ill. App. Ct. 2020) ...................................................................42

*Miller v. Pac. First Fed. Sav. & Loan Ass'n*,
    545 P.2d 546 (Wash. 1976) ................................................................................37

*Miller v. U.S. Bank of Wash., N.A.*,
    865 P.2d 536 (Wash. Ct. App. 1994)..............................................................24, 26

*Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*,
    2018 WL 1627257 (S.D.N.Y. Mar. 30, 2018)....................................................41

*MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S., LLC*,
    2019 WL 1418129 (D.N.J. Mar. 29, 2019) ...................................................16, 43

*MSP Recovery Claims, Series LLC v. Sanofi-Aventis U.S. LLC*,
    2020 WL 831578 (D.N.J. Feb. 20, 2020) .......................................................26, 27

*Mueller v. Michael Janssen Gallery Pte. Ltd.*,
    225 F. Supp. 3d 201 (S.D.N.Y. 2016) .................................................................46

*Murphy v. Foster Premier, Inc.*,
    2018 WL 3428084 (N.D. Ill. July 16, 2018) .......................................................39

*N. Am. Fin. Grp. v. S.M.R. Enters.*,
    583 F. Supp. 691 (N.D. Ill. 1984).......................................................................42

*In re NAHC, Inc. Sec. Litig.*,
    306 F.3d 1314 (3d Cir. 2002) .............................................................................12

*New Paradigm Software Corp. v. New Era of Networks, Inc.*,
    107 F. Supp. 2d 325 (S.D.N.Y. 2000) .................................................................45

*Nw. Laborers-Emps. Health & Sec. Tr. Fund v. Philip Morris, Inc.*,
    58 F. Supp. 2d 1211 (W.D. Wash. 1999) ............................................................47

*Oreskovich v. Eymann*,
    129 Wash. App. 1032 (Wash. Ct. App. 2005).......................................................7

*Pac. Bell Tel. Co. v. LinkLine Commc'ns, Inc.*,
   555 U.S. 438 (2009)................................................................36

*Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am.*,
   51 F. Supp. 3d 379 (S.D.N.Y. 2014) ...................................42

*Patrick v. Ramsey*,
   2023 WL 6680913 (W.D. Wash. Oct. 12, 2023).........................43, 45

*Phillips v. Depaul Univ.*,
   19 N.E.3d 1019 (Ill. App. Ct. 2014) ...........................30, 31

*In re Plum Baby Food Litig.*,
   637 F. Supp. 3d 210 (D.N.J. 2022).......................................8

*Price v. Philip Morris, Inc.*,
   848 N.E.2d 1 (Ill. 2005)........................................23, 26

*Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*,
   898 F. Supp. 2d 673 (S.D.N.Y. 2012) ...................................43

*Randels v. Best Real Estate, Inc.*,
   612 N.E.2d 984 (Ill. App. Ct. 1993) ...................................31

*RBS Citizens, N.A. v. Bentley Motors, Inc.*,
   2012 WL 1565457 (N.D. Ill. May 2, 2012)........................45

*Reading Hosp. v. Anglepoint Grp., Inc.*,
   2015 WL 13145347 (W.D. Wash. May 26, 2015) ...........................45

*Ridings v. Am. Fam. Ins. Co.*,
   2021 WL 722856 (N.D. Ill. Feb. 24, 2021) ...................................31, 32

*Robinson v. Toyota Motor Credit Corp.*,
   775 N.E.2d 951 (Ill. 2002)........................................24

*Rodrigue v. Olin Emps. Credit Union*,
   406 F.3d 434 (7th Cir. 2005) ...........................15

*Russell v. City of Grandview*,
   236 P.2d 1061 (Wash. 1951) ...........................16

*Salinas v. United States*,
    522 U.S. 52 (1997) ................................................................................22

*Sampaga v. Snohomish Cnty.*,
    2017 WL 6492666 (W.D. Wash. Dec. 19, 2017) .............................14

*Sands v. McCormick*,
    502 F.3d 263 (3d Cir. 2007) ...................................................................9

*Sargiss v. Magarelli*,
    909 N.E.2d 573 (N.Y. 2009)....................................................................7

*Saunders v. Mich. Ave. Nat.l Bank*,
    662 N.E.2d 602 (Ill. App. Ct. 1996) ...................................................39

*Shepard v. Holmes*,
    345 P.3d 786 (Wash. Ct. App 2014)..............................................7, 10

*Siegel v. Shell Oil Co.*,
    612 F.3d 932 (7th Cir. 2010) ...............................................33, 37, 39

*Siegel v. Shell Oil Co.*,
    656 F. Supp. 2d 825 (N.D. Ill. 2009)....................................................39

*Soskel v. Handler*,
    736 N.Y.S.2d 853 (N.Y. 2001) ................................................................7

*Spector v. Mondelez Int'l Inc.*,
    178 F. Supp. 3d 657 (N.D. Ill. 2016)....................................................32

*State v. Schwab*,
    693 P.2d 108 (Wash. 1985) ...................................................................35

*Stiley v. Block*,
    925 P.2d 194 (Wash. 1996) ...................................................................40

*Toulon v. Cont'l Cas. Co.*,
    877 F.3d 725 (7th Cir. 2017) .......................................33, 36, 37, 38

*Town of Concord v. Boston Edison Co.*,
    915 F.2d 17 (1st Cir. 1990) (Breyer, C.J.).........................................36

*Travelex Currency Servs. v. Puente Enters.*,
    449 F. Supp. 3d 385 (S.D.N.Y. 2020) ...................................................42

*Travis v. Wash. Horse Breeders Ass'n, Inc.*,
    759 P.2d 418 (Wash. 1988) ...................................................................39

*Trimble v. Washington State Univ.*,
    993 P.2d 259 (Wash. 2000) ...................................................................40

*United Food & Com. Workers Unions & Emps. Midwest Health*
    *Benefits Fund v. Walgreen Co.*,
    719 F.3d 849 (7th Cir. 2013) .................................................19, 20, 21

*Walls v. VRE Chicago Eleven, LLC*,
    344 F. Supp. 3d 932 (N.D. Ill. 2018)....................................................48

*Weidner v. Karlin*,
    932 N.E.2d 602 (Ill. App. Ct. 2010) ....................................................40

*In re Wellbutrin XL Antitrust Litig.*,
    260 F.R.D. 143 (E.D. Pa. 2009)............................................................28

*Whitaker Cable Corp. v. FTC*,
    239 F.2d 253 (7th Cir. 1956) ................................................................35

*Wiedemann v. Keller*,
    2024 WL 244372 (Wash. Ct. App. Jan. 3, 2024) ................................30

*Wilson v. PTT, LLC*,
    2021 WL 211532 (W.D. Wash. Jan. 21, 2021) ...................................38

*Wilson v. State*,
    929 P.2d 448 (Wash. Ct. App. 1996)....................................................48

**Statutes**

215 ILCS 5/513b1 ........................................................................................25

815 ILCS § 505/10a ...............................................................................7, 33

815 ILCS § 505/10b .............................................................................23, 24

18 U.S.C. § 1341 .........................................................................................18

18 U.S.C. § 1343 .................................................................................................18

18 U.S.C. § 1961 .................................................................................................18

42 U.S.C. § 1320b-23 .........................................................................................25

42 U.S.C. § 1395w-3a ..........................................................................4, 18, 24, 25

42 U.S.C. § 1396r-8 .........................................................................................5, 26

N.Y. Ins. Law § 2904 ..........................................................................................25

NYGBL § 349 ........................................................................................23, 24, 32

RCW § 19.86.020 ................................................................................................34

RCW § 19.86.090 ................................................................................................33

RCW § 19.86.120 ..................................................................................................7

RCW § 19.86.170 ........................................................................................23, 24

RCW § 19.86.920 ........................................................................................35, 39

RCW § 43.71C.010 ..............................................................................................24

RCW § 43.71C.030 ..............................................................................................25

## INTRODUCTION

For years, pharmaceutical manufacturers have paid rebates to pharmacy benefit managers because without them, PBMs and their clients—including self-funded employers who act as payers, like Albany, King, and Lake Counties ("Payers")—will not provide insurance coverage for Manufacturers' insulins. Payers have known about and benefited from that system for nearly two decades. They have hired PBMs to negotiate rebates on their behalf, and they have collected those rebates for at least eighteen years. Indeed, Payers are still doing so today. Their suits nonetheless insist that this system (which they are full participants in) violates the law, on the theory that rebates (which they negotiate for) are a secret and "artificially inflate" insulin list prices. They also attempt to shoehorn certain non-insulin medications—glucagon-like peptide 1 agonist medications ("GLP-1s")—into the litigation, although those medications share none of insulin's allegedly relevant features. Payers' allegations do not state a claim, and they should be dismissed with prejudice.

To begin, Payers' claims are all time-barred. The longest limitations period for any claim is four years, but Payers have had actual knowledge of the facts underlying these lawsuits for much longer. For over a decade, they have hired PBMs to negotiate the very rebates they now challenge. The "insulin pricing scheme" has also been publicly litigated for over seven years, and has been the subject of

1

Congressional inquiry, media coverage, and Manufacturer disclosures for even longer. Payers' claims also fail to state a claim.

*RICO*. This Court has already held that payers are indirect purchasers who are therefore barred from bringing RICO claims. Payers' RICO claims also fail because they have not alleged predicate acts. They claim Manufacturers committed fraud by publishing their WAC (Wholesale Acquisition Cost) prices, but those prices are truthful; they are the prices that wholesalers pay for Manufacturers' drugs. Additionally, federal law forecloses Payers' attempt to transform arms-length contractual relationships into RICO enterprises.

*Consumer protection statutes.* All three statutes have safe harbors exempting conduct that complies with federal law. Manufacturers' price-reporting practices and rebate payments comply with federal law, as this Court has recognized. Albany's and King's claims are further barred, because—as this Court has also already found—indirect claims are not permitted by their states' statutes. And Payers' inability to explain how *accurate* list prices are deceptive is as fatal to their state-law claims as it is to their RICO claims. They get no further by claiming Manufacturers' prices are unfair, since the consumer protection laws they invoke do not support this attempt at price regulation.

*Common-law fraud.* Payers' common-law fraud claims flounder because Payers cannot allege a misrepresentation. They also fail in light of Payers' inability

to plausibly allege that Manufacturers *intended* that they would rely on list prices, that they *did* rely on those prices, or that such reliance would have been reasonable given that they were fully aware of the gap between list and net prices.

*Unjust enrichment and conspiracy*. Payers' derivative unjust enrichment and conspiracy claims fall with their other claims and fail on their substance. As this Court has recognized, many states do not allow indirect purchasers to bring unjust enrichment claims. Illinois, New York, and Washington are such states. Payers' unjust enrichment claims are also foreclosed because Manufacturers did not benefit from the alleged scheme and because express contracts govern those claims. Their conspiracy claims fail because they cannot plausibly allege an unlawful agreement.

*GLP-1 claims*. Payers also have no basis for expanding their price-regulation efforts to GLP-1 medications. Federal patent law, not state law, controls pricing for patented medications, so Payers' claims regarding GLP-1s (which are patented) are preempted. Moreover, Payers fail to allege wrongdoing involving those treatments. Payers attempt to sweep them into the so-called "Insulin Pricing Scheme," but by Payers' own admission, GLP-1s do not share the characteristics Payers claim are central to that "scheme."

## BACKGROUND

## I.    DISTRIBUTION OF BRANDED PRESCRIPTION MEDICATION.

Manufacturers are pharmaceutical companies that research, develop,

manufacture, and sell prescription medications, including insulin. Albany SAC ¶ 16(c); King SAC ¶ 10; Lake FAC ¶ 4. Manufacturers do not sell insulin directly to patients, insurers, or health plan payers. Albany SAC ¶ 335 Fig. 22; King SAC ¶ 154; Lake FAC ¶ 295 Fig. 16. Instead, they sell to wholesalers, which then sell medications downstream to pharmacies. *Id.*

Manufacturers set the "list price" or Wholesale Acquisition Cost—the price wholesalers pay—for their medicines. Albany SAC ¶¶ 16(c), 331; King SAC ¶ 248; Lake FAC ¶ 12. WAC is defined by federal law as "the manufacturer's list price for the drug … not including prompt pay or other discounts, rebates, or reductions in price." 42 U.S.C. § 1395w-3a(c)(6)(B). Manufacturers therefore cannot publish a WAC that subtracts rebates without violating federal law.

PBMs work with health plans—including Payers—to administer prescription drug coverage. Albany SAC ¶ 16(b); King SAC ¶ 306; Lake FAC ¶ 18(b). Among other services, PBMs develop lists of drugs called "formularies" that Payers use to decide what medications to cover on their health plans. Albany SAC ¶ 8; King SAC ¶ 18; Lake FAC ¶ 8. Exclusion from formulary "can render [a] drug virtually inaccessible for millions of" people, giving PBMs "enormous influence over drug prices." Albany SAC ¶ 9-10; Lake FAC ¶ 9-10; *see also* King SAC ¶ 20. PBMs use this leverage to negotiate rebates from Manufacturers. Albany SAC ¶ 316; King SAC ¶ 213; Lake FAC ¶¶ 301, 316. As Payers concede, PBMs then share as much

4

as 100% of rebates with Payers, depending on the terms of their contracts. *See* Albany SAC ¶ 39; Lake FAC ¶ 163; King SAC ¶¶ 318-19, 323.

Rebates are an embedded—and mandated—feature of the U.S. healthcare system. Since 1991, the Centers for Medicare & Medicaid Services ("CMS") has required manufacturers to enter into "rebate agreement[s]" with federal and state entities. 42 U.S.C. § 1396r-8(a)(1). Rebates are a familiar feature of private health insurance, too. *See id*. at 760 n.6. Media, industry, academia, and government have publicly discussed rebates, including their impact on insulin prices, for years. *See, e.g.*, Albany SAC ¶¶ 412, 428 n.82, 531 n.113, 533 n.131; King SAC ¶¶ 189 n.98, 212, 244 n.138; Lake FAC ¶¶ 386 n.67, 472 n.92, 474 n.108. So have Manufacturers—including at public congressional hearings, where they explained that higher rebates lead to higher insulin prices because "[s]eventy-five percent of our list price is paid for rebates and discounts." Albany SAC ¶ 417; King SAC ¶ 236; Lake FAC ¶ 376. Manufacturers also explained that refusing to pay rebates would mean that PBMs—and by extension, Payers—would stop covering Manufacturers' medications. Albany SAC ¶ 416-17; King SAC ¶ 234-36; Lake FAC ¶ 375-76.

## II.    THESE COMPLAINTS

Payers' complaints—filed in 2022 and 2023—are derivative of the seven-year-old *In re Insulin Pricing* suit, as well as the many suits filed since. *See* Complaint, *Chaires et al. v. Novo Nordisk Inc. et al.*, No. 3:17-cv-00699 (D.N.J.

Feb. 2, 2017), ECF No. 1 ("*Insulin Pricing* Compl."). Payers contend that PBMs required Manufacturers to pay increasing rebates and shared those payments with payers like themselves, and as a result list prices have increased while "the net price (i.e., the price realized by the Manufacturers) has not." *See* Lake FAC ¶¶ 163, 287, 316; Albany SAC ¶¶ 39, 316; King SAC ¶¶ 213, 318-19, 323.

## ARGUMENT

## I.    ALL OF PAYERS' CLAIMS ARE UNTIMELY.

Payers' claims are all time-barred. Each Payer contends it was harmed because Manufacturers' list prices for their insulins did not exclude rebates. *See, e.g.*, Albany SAC ¶¶ 581-83; King SAC ¶¶ 182-84; Lake FAC ¶ 441. But each Payer knew well before the longest limitations periods (four years) that Manufacturers' list prices excluded rebates, and that PBMs demanded increasing rebates from Manufacturers. They knew that directly because they themselves have all hired PBMs to obtain such rebates from Manufacturers for ***at least*** a decade. Payers were also on notice because the role of rebates in pricing was brought to their attention by lawsuits making the *exact* same allegations that Payers copied (years later) in their belated complaints. As if that weren't enough, the same facts have been discussed by Congress and the media and were disclosed by Manufacturers themselves. No tolling doctrine excuses their delays, and their claims should be dismissed.

### A.    The Applicable Limitations Period Is, At Most, Four Years.

The longest statute of limitations period governing Payers' claims is four

years, which governs their federal civil RICO actions. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 183 (1997). The same period governs King's Washington Consumer Protection Act claim. Wash. Rev. Code § 19.86.120.

Most of the remaining claims are governed by even shorter (two- or three-year) periods. Albany's and Lake's consumer protection claims, King's common-law fraud and civil conspiracy claims, and Albany and King's unjust enrichment claims had to be brought within three years.[1] Albany had to bring its common-law fraud claim within two years. *Sargiss v. Magarelli*, 909 N.E.2d 573, 576 (N.Y. 2009). The remainder of the claims—Lake's common-law fraud and unjust enrichment claims, and Albany's and Lake's civil conspiracy claims—are derivative of other claims, and so share those claims' statutes of limitations.[2] Each limitations period began to run when Payers knew, or reasonably should have known, of the facts underlying their claims.[3] All of Payers' claims are barred because they not only

---

[1] *Soskel v. Handler*, 736 N.Y.S.2d 853, 854-56 (N.Y. 2001); 815 Ill. Comp. Stat. 505/10a; *Gentleman v. Massachusetts Higher Educ. Assistance Corp.*, 272 F. Supp. 3d 1054, 1069 (N.D. Ill. 2017); *Douglass v. Stanger*, 2 P.3d 998, 1004-05 (Wash. Ct. App. 2000); *Oreskovich v. Eymann*, 129 Wash. App. 1032, 1032 (Wash. Ct. App. 2005); *Lambert v. Sklar,* 817 N.Y.S.2d 378, 380 (App. Div 2006); *Geranios v. Annex Investments,* 273 P.2d 793, 794-95 (Wash. 1954)*.*

[2] *Battista v. Katz*, 2023 WL 4072854, at *6 (Ill. App. Ct. June 20, 2023); *Bonilla v. Ancestry.com Operations Inc.*, 628 F. Supp. 3d 812, 820 (N.D. Ill. 2022); *Hebrew Inst. For Deaf & Exceptional Children v. Kahana*, 870 N.Y.S.2d 85, 86 (App. Div. 2008); *Mauvais–Jarvis v. Wong*, 987 N.E.2d 864, 894 (Ill. App. Ct. 2013).

[3] *LabMD Inc. v. Boback*, 47 F.4th 164, 179 (3d Cir. 2022); *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 464 (S.D.N.Y. 2014); *Maron v. Am. Enter. Bank,* 2022 WL 807379, at *2 (7th Cir. Mar. 16, 2022); *Khan v. Deutsche Bank AG*, 978
(….continued)

had notice, but actual knowledge of the facts underlying their claims over four years before they brought their respective actions—i.e., by September 16, 2018 for Albany; April 18, 2019 for Lake; and September 7, 2019 for King.

### B.    Payers Were Well Aware Of The So-Called Scheme.

Payers were well aware of the alleged "scheme" for **at least** four years before they sued. Their complaint is that rebates and other fees create a difference between list and net insulin prices. Albany SAC ¶¶ 388; 583, 681; Lake FAC ¶¶ 347, 519-20, 617; King SAC ¶¶ 3, 378, 386. But they have undeniably known about that difference for over a decade. Payers gained this knowledge, and were otherwise put on notice, in at least four ways: by *their own contracts* with PBMs, by widely publicized litigation that their complaints copy, by media and governmental discussion of insulin pricing, and by Manufacturers' own disclosures.

*First*, Payers have long *directly* known about the difference between list and net prices, and the role of rebates in creating that difference, because they hired PBMs to negotiate those rebates for Payers' own health plans. Each Payer has contracted with PBMs for at least 18 years—since 2003 (Albany and Lake) and 2006 (King). Albany SAC ¶ 31; King SAC ¶¶ 306-07; Lake FAC ¶¶ 35, 42. As they have themselves put it, rebates are a "key component" of Payers' "prescription drug reimbursement strategy." Ex. 1 at 50, July 2018 Albany PBM RFP Summary and

---

N.E.2d 1020, 1028 (Ill. 2012); *Shepard v. Holmes*, 345 P.3d 786, 790 (Wash. Ct. App 2014).

Recommendation.[4] In their PBM contracts, Payers bargained to receive rebates—often insisting on 100% of rebates. *See* Albany SAC ¶ 39 ("provider will not retain any money associated with prescription drug rebates"); Lake FAC ¶ 163; King SAC ¶¶ 318-19, 323. In its *2015* contract, for example, Lake agreed it would receive *at least* "100% Actual Rebates."[5] Ex. 2 at Ex. A-3(1); *see also* King SAC ¶ 318. Payers have thus indisputably known about, and indeed benefitted from, the conduct that they challenged here—the payment of rebates that create a difference between list and net price—for far longer than four years.

**Second**, as this Court is well aware, "[s]ince *2017*, plaintiffs around the country, in a variety of capacities, have been initiating separate federal civil actions involving the alleged pricing scheme."[6] CMO No. 1 at 3 (emphasis added). As Albany and Lake themselves have contended, the earliest suit—*In re Insulin Pricing*—involved "identical questions of fact and substantial overlap" with their cases. *In re Insulin Pricing Litig.*, MDL No. 3080 (J.P.M.L. June 2, 2023), ECF No. 35, at 10–11. Payers copy the *Insulin Pricing* allegations, often word-for-word.

---

[4] Judicial notice of this "public report[]" is proper. *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 219 (D.N.J. 2022).

[5] "[A] 'document *integral to or explicitly relied* upon in the complaint' may be considered" on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[6] The Court may take notice of prior lawsuits. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) ("judicial proceedings [are] public records" subject to judicial notice); *see also Gupta v. Wipro Ltd.*, 749 F. App'x 94, 96 (3d Cir. 2018); *Brandt v. Rossi*, 2012 WL 359736, at *1 n.1 (D.N.J. Feb. 2, 2012).

*Compare, e.g., Insulin Pricing* Compl. ¶ 55 ("The prescription drug industry consists of an opaque and complex network of entities engaged in multiple distribution and payment structures.") *with* Albany SAC ¶ 326 (same); Lake FAC ¶ 289 (same).

Nor was that the only insulin pricing lawsuit filed more than four years before Payers' suits.[7] These earlier plaintiffs alleged the same "insulin pricing scheme," in which rebates paid "in exchange for" formulary status "inflated" prices for insulin. *MSP Recovery* Compl. ¶¶ 106, 261; *Minnesota* Compl. ¶¶ 62, 74, 141; *Kentucky* Compl. ¶¶ 27, 67. These suits were publicized in national news outlets.[8] This long litigation history confirms that the facts underlying this lawsuit were publicly known—and accessible to Payers—long before they sued, barring their claims.[9]

---

[7] *MSP Recovery Claims Series, LLC v. Sanofi-Aventis U.S. LLC*, No. 18-cv-2211 (D.N.J.) (filed Feb. 15, 2018); *Minnesota v. Sanofi-Aventis U.S. LLC*, No. 18-cv-14999 (D.N.J.) (filed Oct. 16, 2018); *Kentucky, ex rel. Beshear v. Novo Nordisk, Inc.*, No. 19-CI-00473 (48th Judicial Cir. Franklin Cir. Ct.) (filed May 13, 2019).

[8] *See, e.g.*, Ex. 3, K. Thomas, *Drug Makers Accused of Fixing Prices on Insulin*, N.Y. Times (Jan. 30, 2017), https://www.nytimes.com/2017/01/30/health/drugmakers-lawsuit-insulin-drugs.html; Ex. 4, C. Johnson, *Diabetes Patients Sue Insulin Makers for 'Pricing Fraud'*, Wash. Post (Jan. 30, 2017), https://www.washingtonpost.com/news/wonk/wp/2017/01/30/diabetes-patients-sue-insulin-makers-for-pricing-fraud; Ex. 5, *Lawsuit Accuses Drug Makers of Conspiring to Hike Insulin Prices*, CBS News (Feb. 22, 2017), https://www.cbsnews.com/news/insulin-price-hike-lawsuit-accuses-drug-makers-of--conspiring. Judicial notice of newspaper articles is permissible to "indicate what was in the public realm at the time." *Benak ex rel. All. Premier Growth Fund v. All. Cap. Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006).

[9] *See, e.g.*, *CIFG Assurance N. Am., Inc. v. Credit Suisse Sec. (USA) LLC*, 11 N.Y.S.3d 563, 564 (App. Div. 2015) (action time-barred where "plaintiff was put on notice … by other lawsuits commenced"); *Knauf Insulation, Inc. v. S. Brands, Inc.*, 820 F.3d 904, 909 (7th Cir. 2016) (lawsuit time-barred where plaintiff "*should* have
(….continued)

***Third***, Congress and the media have discussed the challenged conduct for years. As early as 2007, Congress inquired into pharmaceutical rebates, and the Congressional Budget Office issued a report that noted "[m]anufacturers set their price[s] to wholesalers … keeping in mind that they will pay rebates to … a PBM" and that PBMs provided "Preferred Placement on Formular[ies]" in exchange for "Negotiated Rebate[s]." [10] By at least 2012, news outlets across the country, including outlets local to Payers, were reporting on the supposedly "secret" rebates Manufacturers pay and the impact on insulin pricing.[11] All three Payers cite and rely on articles published years before their statute of limitations cutoffs.[12]

---

known" of prior lawsuit); *see also Douglass*, 2 P.3d at 1006 (noting that periodic check of public records would have alerted plaintiff of his claims); *Shepard*, 345 P.3d at 790 ("[A]ctual discovery will be inferred … where the facts constituting the fraud were a matter of public record.").

[10] *See* Ex. 6, Cong. Budget Office, Pub. No. 2703, Prescription Drug Pricing In The Private Sector, at 10–11 (2007), https://tinyurl.com/yc5zahpr.

[11] *See, e.g.*, Ex. 7, D. Tridgell, *Insulin is too expensive for many of my patients. It doesn't have to be*, Chicago Tribune (June 23, 2017); Ex. 8, R. Langreth, *Here's why patients pay $600 for drugs that cost $300*, HeraldNet (Oct. 5, 2016); Ex. 9, K.Thomas, *Drug Prices Keep Rising Despite Intense Criticism*, N.Y. Times (Apr. 26, 2016); Ex. 10, A. Pollack, *Health Insurers Pressing Down on Drug Prices*, N.Y. Times (June 20, 2014); Ex. 11, Matthew Herper, *Inside the Secret World of Drug Company Rebates*, Forbes (May 1.0, 2012).

[12] *See, e.g.*, Ex. 12, D. Balto, *How PBMs Make the Drug Price Problem Worse*, The Hill (Aug. 31, 2016, 5:51 p.m.), https://thehill.com/blogs/pundits-blog/healthcare/ 294025-how-pbms-make-the-drug-price-problem-worse, *cited at* Albany SAC ¶ 428 n.82; King SAC ¶ 244 n.138; Lake FAC ¶ 386 n.67; Ex. 13, Chain Drug Review, *CVS Expands Extracare for Diabetes Products* (May 11, 2010), https://cvs.chaindrugreview.com/cvs-expands-extracare-for-diabetes-products/, *cited at* Albany SAC ¶ 531 n.113; King SAC ¶ 189 n.98; Lake FAC ¶ 472 n.92; Ex. 14, L. Webster, *Who Is To Blame For Skyrocketing Drug Prices?*, The Hill (July
(….continued)

*Finally*, Manufacturers themselves have long disclosed increasing rebate payments. Over a decade ago, Lilly reported that "[i]n response to competitive pressures, [it] ha[d] entered into arrangements with [purchasers] which provide for discounts or rebates on one or more Lilly products." Similarly, Novo Nordisk's 2013 Annual Report disclosed that it paid $5 billion to obtain "formulary status." Sanofi, too, has repeatedly disclosed this point.[13]

---

27, 2017, 11:40 AM), https://thehill.com/blogs/pundits-blog/healthcare/344115-who-is-to-blame-for-skyrocketing-drug-prices, *cited at* Albany SAC ¶ 533 n.131; King SAC ¶ 212 n.125; Lake FAC ¶ 474 n.108; Ex. 15, R. Langreth, *Hot Drugs Show Sharp Price Hikes in Shadow Market*, Bloomberg (May 6, 2015), https://www.bloomberg.com/news/articles/2015-05-06/diabetes-drugs-compete-with-prices-that-rise-in-lockstep, *cited at* King SAC ¶ 12 n.16; Ex. 16, A. Fein, *Five takeaways from the big three PBMs' 2022 formulary exclusions* (Jan. 19, 2022), available at https://www.drugchannels.net/2022/01/five-takeaways-from-big-three-pbms-2022.html, *cited at* Albany SAC ¶ 321 n.63; Ex. 17, K. Lipska, *Break Up the Insulin Racket*, N.Y. Times (Feb. 20, 2016), https://www.nytimes.com/2016/02/21/opinion/sunday/break-up-the-insulinracket. html, *cited at* King SAC ¶ 33 n.29; Ex. 18, R. Robbins, *The Insulin Market is Heading for a Shakeup. But Patients May Not Benefit*, STAT (Oct. 14, 2016), https:// www.statnews.com/2016/10/14/insulinprices-generics/, *cited at* King SAC ¶ 196 n.108; Ex. 19, R. Langreth, et al., *Decoding Big Pharma's Secret Drug Pricing Practices*, Bloomberg (June 29, 2016), https://www.bloomberg.com/graphics/2016-drugprices/, *cited at* King SAC ¶ 206 n.115.

[13] *See* Ex. 20, Eli Lilly & Co., 2009 Annual Report (Form 10-K) at 3, 26 (Feb. 22, 2010), *available at* https://tinyurl.com/5n6v4rke (warning of "pressures for increased pharmaceutical discounts and rebates"); Ex. 21, Novo Nordisk, 2013 Annual Report (Form 6-K) at 64 (Feb. 5, 2014), *available at* https://tinyurl.com/5256uvw9; Ex. 22, Sanofi, 2014 Annual Report (Form 20-F) at 11 (Mar. 10, 2015), *available at* https://bit.ly/2WMCqKc (Sanofi "had to increase the level of rebates for Lantus required to maintain favorable formulary positions with key payers in the US."). Judicial notice of these filings is appropriate. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (proper for Court to judicially notice SEC filings).

12

Manufacturers discussed the role of rebates in pricing again at the public April 10, 2019 Congressional hearing Payers cite, which preceded the King and Lake suits by more than four years. Albany SAC ¶¶ 412-22; King SAC ¶¶ 230-42; Lake FAC ¶¶ 371-80. As Payers concede, Lilly disclosed that it must "provide rebates [to PBMs] in order to provide and compete for that [formulary position]." Albany SAC ¶ 417; King SAC ¶ 236; Lake FAC ¶ 376. Further, Novo Nordisk explained that in the rebate system, "there is increased pressure to keep list prices high," including insulin prices. Albany SAC ¶ 416; King SAC ¶ 234; Lake FAC ¶ 375. And Sanofi "acknowledged that … payments based on a percentage of list price result in a higher margin [for PBMs] for the higher list price product …." Albany SAC ¶ 418; King SAC ¶ 237; Lake FAC ¶ 377.

### C. No Tolling Doctrine Salvages Payers' Claims.

Attempting to excuse their delay, Payers invoke four tolling doctrines: (1) the discovery rule, (2) fraudulent concealment, (3) equitable estoppel, and (4) continuing violation. Albany SAC ¶¶ 599-630; King SAC ¶¶ 382-95, 405-14; Lake FAC ¶¶ 536-67. King invokes an additional doctrine—*nullum tempus*. King SAC ¶¶ 396-404.

Neither the discovery rule, fraudulent concealment, nor equitable estoppel can help Payers. Payers assert that their claims are timely because they did not "possess sufficient information … to put [them] on inquiry notice." Albany SAC ¶ 599; King

13

SAC ¶ 390 (similar); Lake FAC ¶ 536 (similar). As Plaintiffs' allegations and judicially noticeable facts show, that is not the case. Payers not only knew about **_their own_** PBM contracts, but the substantially identical lawsuits, government publications, news articles, and Manufacturer disclosures also gave them notice years before the limitations period elapsed. Payers' invocations of tolling doctrines are belied by the fact that numerous other parties were able to discover and sue over the same alleged conduct years earlier. Payers have long known or "by ordinary care could have discovered" Manufacturers' allegedly "inflated" prices. *Dancor Int'l, Ltd. v. Friedman, Goldberg & Mintz*, 681 N.E.2d 617, 624 (Ill. App. Ct. 1997) (affirming dismissal); *In re Integrated Res. Real Estate P'ships Sec. Litig.*, 850 F. Supp. 1105, 1123  (S.D.N.Y. 1993) (claims dismissed); *Allen v. State*, 826 P.2d 200, 204 (Wash. 1992) (affirming dismissal).

Moreover, even if Payers had sufficiently alleged concealment, equitable estoppel "will not apply if the defendant's conduct ended within ample time to allow a plaintiff to avail himself of his legal rights under the statute of limitations." *Butler v. Mayer, Brown & Platt*, 704 N.E.2d 740, 745 (Ill. App. Ct. 1998); *City of Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 2d 274, 294 (N.D.N.Y. 2012); *Sampaga v. Snohomish Cnty.*, 2017 WL 6492666, at *2 (W.D. Wash. Dec. 19, 2017). Here, Payers contend Manufacturers publicly "admitted" the "scheme" as of April 2019. Albany SAC ¶¶ 412-13, 417; King SAC ¶¶ 230-31, 236; Lake FAC ¶¶ 371-72, 376.

14

They have no explanation for their *years* of further delay. *Butler*, 704 N.E.2d at 745

("as little as six months remaining in a statute of limitations period is ample time");

*City of Syracuse*, 900 F. Supp. 2d at 294 (16-month delay was not reasonable).

Payers fare no better under the continuing violation doctrine. In Washington,

the doctrine applies only to property and employment discrimination claims. *Dunn*

*v. City of Seattle*, 420 F. Supp. 3d 1148, 1162 (W.D. Wash. 2019). And in New York

and Illinois, the doctrine is narrow: it is a "limited exception" that applies only to

"cumulative" violations, in which no injury exists until a "series of wrongful acts

blossoms into" an actionable harm. *Cothron v. White Castle Sys., Inc.*, 477 F. Supp.

3d 723, 730 (N.D. Ill. 2020); *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797,

805 (7th Cir. 2008) (applying Illinois law) (affirming dismissal where each alleged

violation was separately actionable); *Crichlow v. Fischer*, 2017 WL 920753, at *3

(W.D.N.Y. Mar. 7, 2017) (dismissing claims).

Payers have not alleged facts to support a continuing violation. They instead

contend they were injured *each* time they paid "artificially inflated prices for

diabetes medications." Albany SAC ¶¶ 656, 660; King SAC ¶¶ 439, 442; Lake FAC

¶¶ 593, 596. This alleged wrongdoing and injury did not "blossom" within the

limitations period because "[n]othing about the repeated or ongoing nature of

[Manufacturers'] conduct affected the nature or validity of [Payers'] suit[s]."

*Rodrigue v. Olin Emps. Credit Union*, 406 F.3d 434, 443 (7th Cir. 2005) (applying

15

Illinois law). The continuing violation doctrine therefore has no application here. *Id.*

Nor does King's invocation of *nullum tempus* save its claims. That rule provides that the statute of limitations does not apply to "actions [] brought … in the municipality's sovereign capacity." *City of Moses Lake v. United States*, 430 F. Supp. 2d 1164, 1171 (E.D. Wash. 2006). King is not suing in its "sovereign capacity." Rather, it brings this suit "[a]s an employer" who "pays for pharmaceutical benefits." King SAC ¶¶ 36, 48, 354-56. It is "the same as any private corporation engaged in the same business," and so "acts in its proprietary capacity." *Russell v. City of Grandview*, 236 P.2d 1061, 1063 (Wash. 1951); *see also City of Moses Lake*, 430 F. Supp. 2d at 1174.

## II.    PAYERS' RICO CLAIMS FAIL ON THEIR MERITS.

### A.    The Indirect Purchaser Rule Bars Payers' Claims.

Under the indirect purchaser rule, downstream purchasers of a product cannot assert RICO claims. *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 855 (3d Cir. 1996) ("RICO standing" is "den[ied]" "to indirect victims."). That rule exists to avoid "injecting extremely complex issues" of "apportionment of the recovery throughout the distribution chain," and to foreclose the "overlapping recoveries" that "are certain to result" from allowing indirect purchasers to sue. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 730–31, 745 (1977). And this Court and others adjudicating similar insulin-pricing RICO claims have held that the indirect purchaser rule bars

16

payers from bringing RICO claims against Manufacturers. *See MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S., LLC*, 2019 WL 1418129, at *14-15 (D.N.J. Mar. 29, 2019) (dismissing payer RICO claims, because "this Court … must recognize the indirect purchaser rule's bar"); *Harris Cnty., Texas v. Eli Lilly & Co.*, 2022 WL 479943, at *11 (S.D. Tex. Feb. 16, 2022) (dismissing municipality's insulin-pricing RICO claim on indirect purchaser grounds).

The Court should again apply the indirect purchaser rule. As Payers' amended complaints acknowledge, Manufacturers do not sell insulin directly to Payers. Payers make reimbursements for insulin *after* it has been purchased at a pharmacy by a Payer's beneficiaries—a purchase that itself takes place only after the medication is sold by Manufacturers to wholesalers, and subsequently by wholesalers to pharmacies. Albany SAC ¶ 335 Fig. 22; ¶ 504; King SAC ¶ 154; Lake County FAC ¶ 295 Fig. 16. Because Payers do not purchase insulin directly from Manufacturers, their RICO claims are barred by the indirect purchaser rule.

Allowing Payers' claim to proceed would create the exact circumstances the rule aims to avert, because the direct purchasers of insulin—wholesalers—have also brought RICO claims against Manufacturers. *See* Second Am. Compl., *In re Direct Purchaser Insulin Pricing Litig.*, No. 20-cv-3426 (D.N.J. Nov. 11, 2022), ECF No. 261. Both wholesalers and Payers contend that they are entitled to recover the difference between insulin's actual wholesale price and what the price should have

17

been, meaning that this Court would be tasked with determining who in the supply chain absorbed how much of the alleged overcharge, and Manufacturers would face duplicative liability. This Court should thus once again apply the indirect purchaser rule, which is an "absolute bar" to Payers' RICO claims. *McCarthy*, 80 F.3d at 852.

### B.    Payers Fail To Plead RICO Predicate Acts.

Payers' RICO claims also fail because they have not alleged the required predicate acts of "racketeering activity." 18 U.S.C. § 1961(1) & (5). Payers attempt to satisfy this requirement by claiming that Manufacturers committed mail and wire fraud. *See, e.g.*, Albany SAC ¶ 672; King SAC ¶ 454; Lake FAC ¶ 608. But to allege mail and wire fraud, Payers had to allege a "scheme or artifice to defraud," which in turn requires alleging a "fraudulent misrepresentation or omission." 18 U.S.C. §§ 1341, 1343; *Lum*, 361 F.3d 223. Payers allege neither.

Payers' theory of misrepresentation is that Manufacturers' WAC prices were "false" because they were not the "actual prices realized." *E.g.*, Albany SAC ¶¶ 656-64; King SAC ¶¶ 439-46; Lake FAC ¶¶ 593-600. But Manufacturers did not—and could not—represent that WAC was the "actual price[] realized," because WAC is by definition not the price Manufacturers "realize[]." *See* 42 U.S.C. § 1395w-3a(c)(6)(B) (defining WAC as exclusive of rebates). Payers admit as much, acknowledging that the Manufacturer Defendants report WACs as "defined by federal law." Lake FAC ¶ 18(c); *see also* Albany SAC ¶ 16(c); King SAC ¶ 248.

18

Because those statements are *true*, they cannot be fraudulent. *See, e.g.*, *Kelly v. Peerstar, LLC*, 2022 WL 3327934, at *42 n.26 (W.D. Pa. Aug. 11, 2022) (information "was true" and could not be a "scheme … to defraud").

Payers' omissions theory fares no better. They claim Manufacturers "omitted" the "spread between the list price and the net price of the medication." Lake FAC ¶ 594; Albany SAC ¶ 657; King SAC ¶ 440. But that gap was fully disclosed to Payers—their PBM contracts *expressly disclose* that Manufacturers pay rebates and other fees and Payers *expressly negotiated* to receive rebates. *See supra*, Part I.B. Manufacturers also routinely disclosed that they were paying rebates and that there was a difference between list and net price. *Id*. Because these facts were all public, they cannot support an omissions theory. *Haymond v. Lundy*, 2000 WL 804432, at *5 (E.D. Pa. June 22, 2000) (predicate fraud not adequately alleged where omitted facts were "available in accessible publications," e.g., "the Wall Street Journal").

### C.    Payers Fail To Plead That Manufacturers Conducted The Affairs Of A RICO Enterprise.

Payers' RICO claims also fail because Payers do not allege Manufacturers conducted the affairs of a RICO enterprise. To state a RICO claim, Payers must allege facts showing that (1) Manufacturers "cooperated" with PBMs in carrying out the affairs of a RICO enterprise, and (2) this cooperation extended "outside the bounds of the parties' normal commercial relationships." *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d

849, 855-56 (7th Cir. 2013) (rejecting RICO enterprise allegations where court could "not indicate how the cooperation … exceeded that [which is] inherent in every commercial transaction between a drug manufacturer and pharmacy"). This test is "very difficult ... to satisfy," and Payers fail both prongs. *In re Aetna UCR Litig.*, 2015 WL 3970168, at *28 (D.N.J. June 30, 2015) (allegations insufficient where they "described how [the defendant] conduct[ed] … legitimate business operations").

Payers' allegations that Manufacturers conduct the affairs of RICO enterprises fail because Payers solely rely on allegations of *unilateral* actions. They do not claim Manufacturers "instruct[] the [PBMs] as to the manner in which" they should undertake the enterprise's affairs, or "provide[] greater or different incentives" when they do so, or "discipline[]" the PBMs if they deviate. *Aetna UCR Litig.*, 2015 WL 3970168, at *30. Payers instead allege that "[e]ach Manufacturer defendant" "directly controls" *its own* rebates, publication of *its own* list prices, and "creation and distribution" of *its own* marketing materials. Albany SAC ¶ 671(a), (d)-(e); King SAC ¶ 453(a), (d)-(e); Lake FAC ¶ 607(a), (d)-(e) (emphasis added). Those actions are not examples of "cooperation." Instead, they are merely allegations about the ways each Manufacturer runs its own business.

Nor are there any allegations that Manufacturers' conduct was "outside the bounds of" their "normal commercial relationships" with the PBMs. *United Food*,

20

719 F.3d at 855-56. Mere allegations that a company carried out normal commercial relationships do not show that the company conducted *an enterprise's* affairs. *United Food*, 719 F.3d at 854-55; *Friedland v. Unum Grp.*, 50 F. Supp. 3d 598, 604 (D. Del. 2014) ("[T]he issue is whether defendants participated in the conduct of a distinct RICO 'enterprise,' or merely conducted their own business affairs.").

Alleging conduct outside a normal relationship requires unusual entanglement, such as "officials from [one] company invol[ving] themselves in the affairs of the other" or "siphon[ing] off" company profits to an enterprise. *United Food*, 719 F.3d at 854; *see also Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 656 (7th Cir. 2015) (citing "an unusual degree of economic interdependence" and failure to "operate as completely separate entities"). Payers allege nothing of the sort. Instead, they allege Manufacturers set list prices for *their own* products and distribute marketing materials, just as every pharmaceutical company does. Albany SAC ¶ 671(a), (d)-(e); Lake FAC ¶ 607(a), (d)-(e); King SAC ¶ 453(a), (d)-(e). These allegations are "entirely consistent" with Manufacturers "each going about [their] own business," and so cannot establish that any Manufacturer conducted an enterprise's affairs. *United Food*, 719 F.3d at 855.

The way Payers define the alleged "enterprises" further demonstrates that they have not stated a RICO claim. According to Payers, the Manufacturers were part of nine separate enterprises, but engaged in identical conduct in furtherance of each one

of these enterprises. Albany SAC ¶¶ 636-38; King SAC ¶¶ 420-22; Lake FAC ¶¶ 573-75. Independent, similar conduct by multiple defendants indicates "an industry practice rather than an enterprise." *McCullough v. Zimmer, Inc.*, 2009 WL 775402, at *13 (W.D. Pa. Mar. 18, 2009); *see also In re Ins. Brokerage Antitrust Litig.,* 2007 WL 2892700, at *24 (D.N.J. Sept. 28, 2007) ("practitioners of a[n] … industry practice [are not] a RICO enterprise."). And that is exactly what rebates are: a "normal competitive tool" and a "widespread industry practice." *In re EpiPen*, 44 F.4th 959, 989 (10th Cir. 2022); *see also J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 2005 WL 1396940, at *2 (S.D. Ohio. June 13, 2005) (describing "rebate and 'access' contracts" as a "widespread industry practice"). Plaintiffs thus have pled only that Manufacturers conducted their own affairs, not those of an enterprise. For this reason, too, their RICO claims should be dismissed.[14]

## III.    PAYERS' CONSUMER PROTECTION CLAIMS ARE BARRED.

### A.    State-Law Bars Preclude Payers' Claims.

Payers' claims under state consumer protection statutes are barred by three state-law limitations. ***First***, each statute has a safe harbor, which exempts conduct that complies with other laws. Since Manufacturers' pricing practices are regulated by—and fully in compliance with—federal and state law, those safe harbors apply.

---

[14] Because Payers failed to plead substantive RICO violations, their RICO conspiracy claims fail too. *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 373 (3d Cir. 2010) (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)).

***Second***, as this Court has already recognized, the alleged "insulin pricing scheme" is not consumer-oriented, and so cannot support a New York General Business Law claim like Albany's. ***Finally***, this Court has also recognized that payers like King are indirect purchasers and so cannot recover under Washington's Consumer Protection Act. The New York General Business Law has the same limitation.

### 1.    Safe Harbors Bar Payers' Claims.

New York's General Business Law, Illinois' Consumer Fraud Act, and Washington's Consumer Protection Act all have safe harbors foreclosing Payers' claims. New York law establishes "a complete defense" when "the [challenged] act or practice is … subject to and complies with … the statutes … of the United States." NYGBL § 349(d). The safe harbors under Illinois and Washington law are even broader, exempting actions "specifically authorized by" or "permitted by" state or federal law. 815 ILCS § 505/10b(1); RCW § 19.86.170. Statutory authorization "need not be express." *Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 42 (Ill. 2005). Payers' claims fail because the conduct they challenge—price reporting and rebate payments—was authorized by and complied with federal and state law.

### a.    Manufacturers Reported Their List Prices As Required By Law.

Payers allege that Manufactures' list prices are "false" because they do not reflect rebates and fees. *See* Albany SAC ¶¶ 513-14, 708; Lake FAC ¶¶ 593(a), 643(a)-(b), 644(b); King SAC ¶¶ 439(a), 548(a), (d). That theory is not viable,

23

because federal law expressly prohibits Manufacturers from subtracting rebates, fees, and other discounts from their list prices.[15] As Payers acknowledge, the "list price" Manufacturers "self-report" is the "Wholesale Acquisition Cost" or "WAC," which is "defined by federal law." Lake FAC ¶ 18(c); *see also* Albany SAC ¶¶ 16(c), 331; King SAC ¶¶ 15, 200. Federal law defines WAC as "the manufacturer's *list price* for the drug or biological to wholesalers or direct purchasers in the United States, *not including* prompt pay or *other discounts, rebates, or reductions in price*." 42 U.S.C. § 1395w-3a(c)(6)(B) (emphases added).[16] Because Manufacturers reported their list prices as required by law, their conduct was "specifically authorized," "permitted" by, and "complie[d] with" the "laws … of the United States."[17] Indeed, this Court has already explained that it "does not see" how it could require Defendants to report WACs in some other manner "without causing Defendants to violate federal law." *In re Insulin Pricing Litig.*, 2024 WL 416500, at *28 (D.N.J. Feb. 5, 2024).

---

[15] Payers' claims are therefore also preempted as a matter of federal law, *see* Dkt. 190-51 at 9-11; *Insulin Pricing* Dkt. 744-1 at 31-34.

[16] Washington law defines WAC the same way. *See* RCW § 43.71C.010 (defining "Wholesale acquisition cost" to "exclud[e] … rebates").

[17] 815 Ill. Comp. Stat. § 505/10b(1); RCW § 19.86.170; NYGBL § 349(d); *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 962–963 (Ill. 2002) (dismissing consumer fraud claim where defendant's disclosures complied with federal statute); *Miller v. U.S. Bank of Wash., N.A.*, 865 P.2d 536, 541 (Wash. Ct. App. 1994) (dismissing WCPA claim where conduct was federally regulated); *L. Offs. of K.C. Okoli, P.C. v. BNB Bank, N.A.*, 481 Fed. App'x 622, 624 (2d Cir. 2012) (dismissing NYGBL claims where defendant complied with federal statute).

Nor can Payers claim that Manufacturers should have said more about the relationship between list and net prices. *E.g.*, Albany SAC ¶¶ 513-21; Lake FAC ¶¶ 454-59; King SAC ¶¶ 199, 202. All three safe harbors preclude imposition of a "higher disclosure requirement[]" than "sufficient to satisfy federal regulations." *Bober v. Glaxco Wellcome PLC*, 246 F.3d 934, 941 (7th Cir. 2001); *Denton v. Dep't Stores Nat. Bank*, 2011 WL 3298890, at *4 (W.D. Wash. Aug. 1, 2011) (rejecting claim "for failure to provide written disclosures" additional to those federal regulations required); *Mendelson v. Trans World Airlines, Inc.*, 466 N.Y.S.2d 168, 170 (N.Y. 1983) (safe harbor barred claims related to disclosure of policy because federal regulations specifically permitted the practice). Payers' attempt to impose new disclosure requirements beyond what federal law requires should be rejected.

### b.  *Manufacturer Rebates Are Authorized By Law*

Just as Manufacturers' list price reporting is specifically permitted by federal law, so, too, are rebates. Payers blame the rebates they receive for Manufacturers' supposedly "egregious[]" list prices. Albany SAC ¶¶ 708, 753; Lake FAC ¶¶ 474, 644(b), 645; King SAC ¶¶ 249, 439, 548. But safe harbors bar any claim predicated on that theory, because state and federal law regulate rebates. *See, e.g.*, 42 U.S.C. § 1395w-3a(c)(6)(B) (defining "WAC" as exclusive of "discounts, rebates or reductions in price"); *id.* § 1320b-23(b) (requiring PBMs to report rebate types and amounts); RCW § 43.71C.030(1)(a)-(b) (requiring PBMs to report rebate amounts);

25

215 ILCS 5/513b1(b)(5) (requiring PBMs to disclose rebates to plan sponsors); N.Y. Ins. Law § 2904(a)(1)(i)-(ii) (requiring PBMs to report rebate amounts and contract terms). Indeed, federal law **requires** Manufacturers to pay rebates in some circumstances. *See, e.g.*, 42 U.S.C. § 1396r-8(a)(1). "It is obvious that the legislature[s] considered, without disapproving" rebates, and thus "authorize[s] them. *Johnson v. Marshall Field & Co.*, 312 N.E.2d 271, 276 (Ill. 1974); *Price*, 848 N.E.2d at 42; *Manchanda v. Educ. Credit Mgmt. Corp.*, 2022 WL 137885, at *2-3 (S.D.N.Y Jan. 14, 2022) (dismissing challenge to "the amount of collection costs imposed" because the "costs charged are permitted by federal law"); *Mendelson*, 466 N.Y.S.2d at 170; *Miller*, 865 P.2d at 541 (dismissing WCPA claim where federal law "specifically … regulated" relationship). The *Johnson* decision is instructive. There, the legislature defined "selling price" as exclusive of certain taxes, and so "plainly anticipated"—and therefore "authorized"—retailers passing those taxes to consumers. 312 N.E.2d at 276. In the same way, legislatures have repeatedly anticipated, and therefore authorized, rebates.

### 2.    Albany's Claim Is Not Consumer-Oriented.

To state a claim under New York's General Business Law ("NYGBL"), a plaintiff must "allege that a defendant has engaged in … consumer-oriented conduct." *City of New York v. Smokes-Spirits.com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009). But as this Court has already recognized, the alleged insulin pricing scheme

is *not* "consumer-oriented" conduct. *MSP Recovery Claims, Series LLC v. Sanofi-Aventis U.S. LLC*, 2020 WL 831578, at *10 (D.N.J. Feb. 20, 2020) (dismissing payers' NYGBL insulin-pricing claim). Claims by "sophisticated business[es]" and "arising from transactions involving complex arrangements, knowledgeable and experienced parties and large sums of money" cannot support NYGBL liability. *Id.*

Albany's is such a claim. Albany admits that its claim pertains to "complex contractual relationships"—exactly the kinds of transactions that do not give rise to NYGBL claims. Albany SAC ¶¶ 462, 615. Because Albany is a "sophisticated business" participating in "business-to-business transactions," its NYGBL claim should be dismissed. *MSP,* 2020 WL 831578, at *10.

### 3. King and Albany Cannot Bring Indirect Claims.

This Court has recognized that the Washington Consumer Protection Act "precludes claims from indirect purchasers." *In re Insulin Pricing Litig.*, 2020 WL 831552, at *9 (D.N.J. Feb. 20, 2020) (dismissing WCPA insulin-pricing claim brought by indirect purchasers). Because "only a plaintiff 'injured in his or her business or property' by a violation" of the statute has standing, "[c]ourts have applied antitrust and RICO statutory standing principles to Washington CPA claims." *Blaylock v. First Am. Title Ins. Co.*, 2008 WL 8741396, at *7, *9 (W.D. Wash. Nov. 7, 2008). King is an indirect purchaser, *see supra*, Part II.A, and so cannot state a WCPA claim. *Blewett v. Abbott Lab'ys*, 938 P.2d 842, 844-47 (Wash.

Ct. App. 1997) (dismissing indirect purchasers' claim for prescription drug overcharges); *Blaylock*, 2008 WL 8741396, at *1 (dismissing claims that plaintiffs paid inflated prices due to "bribe premiums" paid to "middlepersons").

Albany's claim fails for a similar reason: "derivative actions are barred" under the NYGBL. *Smokes-Spirits.com*, 911 N.E.2d at 838. Albany's alleged injuries are derivative, occurring (if at all) only when its employees fill their prescriptions and the County "reimburs[es] for" them. Albany SAC ¶ 707. It is well-settled that payors cannot assert NYGBL claims based on beneficiaries' increased costs. *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140, 1142, 1145 & n.3 (N.Y. 2004) (rejecting payers' claim for beneficiaries' increased medical costs). In short, "New York law still requires … plaintiffs to state a cognizable injury, [and] indirect payments of medical costs" are "not" cognizable. *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 164 (E.D. Pa. 2009).

### B.    Payers Cannot State Deception Claims.

Even beyond these threshold problems with Payers' consumer-protection claims, those claims—both for deception and unfairness—fail on their own terms.

### 1.    Payers Do Not Allege A Misrepresentation.

Payers claim that Manufacturers' list prices are deceptive. To state such a claim under Illinois, New York, or Washington law, Payers must identify a misrepresentation that has the capacity to or is likely to deceive "a significant portion

28

of reasonable consumers"—here, sophisticated payers like themselves. *Jackson v. Kraft Heinz Food Co.*, 2022 WL 4591749, at *3 (N.D. Ill. Aug. 3, 2022); *see also Lumbra v. Suja Life, LLC*, 674 F. Supp. 3d 7, 14 (N.D.N.Y. 2023); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).

Payers' deception allegations against Manufacturers boil down to one claim: that Manufacturers' list prices were "artificially inflated" and not "related to their cost, their fair market value in a competitive market, or the[ir] net price." *See, e.g.*, Albany SAC ¶¶ 518, 521, 708; Lake FAC ¶¶ 459, 462, 644; King SAC ¶¶ 200, 548. But those allegations, even taken as true, do not show that those list prices were *deceptive.* Payers do not allege that any Manufacturer ever so much as *suggested* that list prices accounted for rebates, reflected cost or net price, or were anything other than what federal law defines them to be—i.e., the wholesale acquisition costs of their medications. Nor do they explain—as they must—why a reasonable payer (who *receives* rebates) would infer that list prices were tethered to cost or somehow reflected rebates. *See, e.g.*, *Galanis v. Starbucks Corp.,* 2016 WL 6037962, at *3 (N.D. Ill. Oct. 14, 2016) (not reasonable to infer that drink contains "24 ounces of fluid plus ice" from statement that "iced drink … contain[s] 24 fluid ounces"); *HB Dev., LLC v. W. Pac. Mut. Ins.*, 86 F. Supp. 3d 1164, 1187 (E.D. Wash. 2015) (unreasonable to infer that the term "replacement" meant "exact replacement").

Instead, all three Payers *concede* that Manufacturers' WAC prices were

29

exactly what Manufacturers said they were and what the law requires them to be: their medications' "price for the drug to wholesalers," which "excludes any discounts, rebates, or price reductions." Albany SAC ¶¶ 16(c), 331; Lake FAC ¶¶ 18(c), 455; King SAC ¶¶ 15, 200. Manufacturers' *accurate* statements of their prices cannot support fraud claims. *See, e.g.*, *Bushbeck v. Chicago Title Ins. Co.*, 2012 WL 12845605, at *9 (W.D. Wash. Nov. 15, 2012) ("[T]he charge of a fully disclosed fee is not misleading, and therefore not 'deceptive,' under the WCPA."); *Bober*, 246 F.3d at 938 ("completely true" representations not deceptive under the ILCFA); *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 150 (S.D.N.Y. 2022) (dismissing NYGBL claim because "Plaintiff does not allege that … Defendant falsely describes" its calculations).

## 2.    Payers Do Not Allege An Actionable Omission.

Payers imply that Manufacturers should have said more about the relationship between list and net prices. *E.g.*, Albany SAC ¶ 514; Lake FAC ¶ 455; King SAC ¶ 200. But any omissions theory of deception fails for two reasons.

*First*, Payers cannot have been deceived because they knew the supposedly "omitted" facts. *Wiedemann v. Keller*, 2024 WL 244372, at *8 (Wash. Ct. App. Jan. 3, 2024) (plaintiff who "knew or should have known" the allegedly omitted information fails to establish deception); *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1031 (Ill. App. Ct. 2014) (omission must be misleading "in light of all the

30

information available to the plaintiffs"); *Dimond v. Darden Restaurants, Inc.*, 2014 WL 3377105, at *13 (S.D.N.Y. July 9, 2014) ("plaintiff must show … that a consumer could not reasonably obtain" the information). Payers were fully aware of the difference between list and net prices: they hired PBMs to create that difference.[18] They contracted to receive rebates and agreed that PBMs could keep other fees calculated on the basis of list price. *See, e.g.*, Albany SAC ¶¶ 495, 508; Lake FAC ¶¶ 410-12; King SAC ¶¶ 319, 322, 326-27 & n.188.

In any event, there were no "omissions." The relationship between rebates and list and net prices has been public and disclosed—including by Manufacturers—for over a decade. *See supra,* Part I.B. Because Payers were "aware" of the facts they claim were omitted, and because those facts were "a matter of public knowledge," their claims "necessarily fail[]." *Phillips*, 19 N.E.3d at 1029; *Randels v. Best Real Estate, Inc.*, 612 N.E.2d 984, 988 (Ill. App. Ct. 1993); *see also HB Dev.*, 86 F. Supp. 3d at 1187; *Ridings v. Am. Fam. Ins. Co.*, 2021 WL 722856, at *5 (N.D. Ill. Feb. 24, 2021); *Dimond*, 2014 WL 3377105, at *13.

---

[18] *See, e.g.*, Albany SAC ¶ 168; Lake FAC ¶ 163; King SAC ¶ 253; *Drug Pricing Investigation: Majority Staff Report*, Comm. on Oversight and Reform, U.S. H.R., Dec. 2021, at 10, https://oversightdemocrats.house.gov/sites/evo-subsites/democrats-oversight.house.gov/files/DRUG%20PRICING%20REPORT%20WITH%20APPENDIX%20v3.pdf ("rebates [are] negotiated by payers"), *cited at* Albany SAC ¶ 234 n.32, Lake FAC ¶ 229 n.31; Ameet Sarpatwari, *et al.*, *Diabetes Drugs: List Price Increases Were Not Always Reflected In Net Price; Impact Of Brand Competition Unclear*, Health Affairs, Vol. 40, at 777 (2021) ("payers appear to have kept net prices of [insulin medicines] in check" through rebate negations), *cited at* Albany SAC ¶ 264 n.53; Lake FAC ¶ 263 n.49; King SAC ¶ 299 n.171.

*Second*, even if Manufacturers had not disclosed the relationship between list and net prices, that alleged omission would not be actionable. State consumer protection laws do not require businesses "to affirmatively share how an offered program or product will affect [their] own profits." *Ridings*, 2021 WL 722856, at *5. Nor do they "require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information." *Dimond*, 2014 WL 3377105, at *13. Omissions are actionable only if they create an "affirmatively 'false impression.'" *Spector v. Mondelez Int'l Inc.*, 178 F. Supp. 3d 657, 672 (N.D. Ill. 2016); *see also, e.g.*, *Davis v. Hain Celestial Grp.*, 297 F. Supp. 3d 327, 335 (E.D.N.Y. 2018) (failure to disclose "subsequent steps in the juice's production process" does not render its "cold-pressed" label misleading); *Hangman Ridge*, 719 P.2d at 539 (failure to disclose "potential tax consequences of the transaction" does not render escrow agent's "deed preparation and closing activities" deceptive). Here, Payers concede that Manufacturers report their WAC, which *by definition* excludes rebates. *See, e.g.*, Albany SAC ¶¶ 16(c), 331; Lake FAC ¶¶ 18(c), 455; King SAC ¶¶ 15, 248. Those accurate reports cannot have created a "false impression."

## C.    Payers Cannot State Unfairness Claims.

Without a coherent theory of deception, Albany's statutory consumer protection claim fails entirely, because New York's General Business Law does not authorize another theory of liability. NYGBL § 349(a). King and Lake are left to

assert that Manufacturers' list prices are "unfair." This claim is similarly unavailing.

### 1. Payers' Price-Inflation Theory Is Not Cognizable.

Payers repeat the price-inflation theory advanced by other insulin pricing plaintiffs before this Court. *See* Lake FAC ¶ 519; King SAC ¶¶ 377, 551. But as Manufacturers have previously explained, and as this Court has found in related insulin pricing litigation, a "price inflation theory" is not a "cognizable theory of damages" for such consumer protection claims. *Insulin Pricing*, 2024 WL 416500, at *37-38; *see also* Dkt. 190-51 at 11-13; *Insulin Pricing* Dkt. 744-1 at 32-33; *Harnish v. Widener Univ. Sch. of Law*, 833 F.3d 298, 312 (3d Cir. 2016).

Illinois and Washington law support the Court's conclusion. They, too, require plaintiffs to establish an ascertainable loss caused by defendant's conduct. Illinois's CFA requires "actual damage" suffered "as a result of a violation" of the Act, 815 Ill. Comp. Stat. 505/10a(a); *see Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 740 (7th Cir. 2017). Washington's CPA similarly requires an "injur[y]" and "causation," RCW § 19.86.090; *see Hangman Ridge*, 719 P.2d at 533. Courts have held that these requirements cannot be satisfied with a price-inflation theory. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) (holding that "charging an unconscionably high price generally is insufficient to establish a claim for unfairness" under the ILCFA); *Kelley v. Microsoft Corp.*, 2011 WL 13353905, at *4 (W.D. Wash. May 24, 2011) (plaintiffs advancing a price inflation theory "have not

33

identified the injury to those … consumers who" purchased and received the product they knew they were paying for). Payers' claims should therefore be dismissed.

### 2. Payers' Price-Gouging Theory Is Not Cognizable.[19]

Lake and King's unfairness claims also fail because they are invalid attempts at holding Manufacturers liable on a non-cognizable price-gouging theory. Lake FAC ¶¶ 500-01 ("inflated list prices" are "unconscionable" because payers "have no choice"); King SAC ¶ 357 (challenging "sky-high" list prices that payers "cannot avoid paying"). As Manufacturers explained in an earlier briefing that addressed the Illinois statute Lake invokes, general consumer protection laws cannot serve as price-gouging regulations. They do not include language prohibiting price-gouging; they are modeled after federal laws that do not prohibit price-gouging; and they do not feature the clear rules that characterize price-gouging statutes. Dkt. 190-51 at 13-16; *Insulin Pricing* Dkt. 744-1 at 33-36.

The same is true of Washington's CPA. That statute, like Illinois' Consumer Fraud Act, generically prohibits "unfair or deceptive acts or practices" "in the conduct of any trade or commerce" and says nothing about price controls. RCW § 19.86.020. In construing it, courts are "guided by" interpretations of "federal statutes dealing with the same … matters," including the Federal Trade Commission

---

[19] Payers' efforts to use state-law claims to regulate nationwide insulin prices also violate the Dormant Commerce Clause, which independently warrants dismissal. *See* Dkt. 190-51 at 16-19; *Insulin Pricing* Dkt. 744-1 at 36-39.

Act. RCW § 19.86.920. The FTCA has never been applied to prohibit price gouging.
Dkt. 190-51 at 15-16; *see also Whitaker Cable Corp. v. FTC*, 239 F.2d 253, 256 (7th
Cir. 1956) (courts should not "turn the [FTC] Act into a price control law contrary
to its manifest purpose"). Courts routinely reject efforts to convert general consumer
protection statutes into price-gouging regulations, and this Court should follow suit.
Dkt. 190-51 at 15-16; *Insulin Pricing* Dkt. 744-1 at 34-35.

The Washington legislature's decision to *reject* a price-gouging statute
reinforces that conclusion. In 2021, the legislature considered and did not enact a
bill that would have prohibited price gouging. Engrossed Substitute Senate Bill
5191, 67th Legislature (Wash. 2021) ("ESSB 5191"). Expanding the WCPA to
nonetheless prohibit price gouging would be to impose a "judicial extension of a
remedy at odds with a clearly demonstrated legislative intent," contrary to
Washington law. *State v. Schwab*, 693 P.2d 108, 114 (Wash. 1985) (en banc); *see
id.* at 113 (declining to treat violations of Washington statute as "unfair" practices
where the legislature had "considered, then rejected" an amendment to do that).

That expansion would also leave this Court to identify "price-gouging"
without guidance. Actual price-gouging laws set clear standards. *See* Dkt. 190-51 at
15; *Insulin Pricing* Dkt. 744-1 at 35. The Washington bill would have penalized only
prices that met a mathematical standard and applied only to specific goods during
declared emergencies. The WCPA has none of those guardrails, and courts cannot

35

and should not create them. *See, e.g.*, *Pac. Bell Tel. Co. v. LinkLine Commc'ns, Inc.*, 555 U.S. 438, 454 (2009) (courts are ill-equipped "to determine a 'fair price' … without acting like a rate-setting regulatory agency"); *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 308 (1997) (courts are "institutionally unsuited" to make "economic predictions"; legislatures can "investigate and analyze facts beyond anything the Judiciary could match"); *Town of Concord v. Boston Edison Co.*, 915 F.2d 17, 25 (1st Cir. 1990) (Breyer, C.J.) (for courts "to inquire into the reasonableness of prices is to 'set sail on a sea of doubt'"). Attempting to do so would raise serious due-process questions. *See* Dkt. 190-51 at 16; *Insulin Pricing* Dkt. 744-1 at 35. This Court should reject Payers' attempted expansion of these statutes.

### 3.    Payers Fail To Allege Unfairness.

Even setting aside these dispositive flaws, Lake and King fail to state claims for unfairness. Under both statutes, courts consider: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes (or is likely to cause) substantial injury to consumers that is not reasonably avoidable by consumers and not outweighed by countervailing benefits. *Toulon*, 877 F.3d at 740; *Lisson v. Wells Fargo Bank, N.A.*, 2019 WL 3577859, at *7 (Wash. Ct. App. Aug. 6, 2019). Both complaints fail all three criteria.

***First***, Payers do not allege that Manufacturers violated public policy. Both laws are "concerned with public policy as established by statutes and the common

36

law." *Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 833 (7th Cir. 2014); *see Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1186 (Wash. 2013). Payers therefore had to identify a statute, administrative rule, or common law doctrine Manufacturers violated. *Boyd v. U.S. Bank, N.A.*, 787 F. Supp. 2d 747, 752 (N.D. Ill. 2011); *Magney v. Lincoln Mut. Sav. Bank*, 659 P.2d 537, 544 (Wash. Ct. App. 1983). Neither Payer attempts to do so. Lake baldly asserts Manufacturers "violate[] Illinois public policy," which is not enough. Lake FAC ¶ 646; *Garrett v. RentGrow Inc.*, 2005 WL 1563162, at *3 (N.D. Ill. July 1, 2005). King does not make even that effort. Nor could they without implicating themselves—they seek and receive rebates.

**Second**, Payers fail to plead that Manufacturers' prices are immoral, unethical, oppressive, or unscrupulous. As discussed, *see supra*, Part III.C.2, alleging an "unconscionably high price generally is insufficient to establish … unfairness." *E.g.*, *Siegel*, 612 F.3d at 935 (affirming dismissal of claim regarding high gasoline prices); *Toulon*, 877 F.3d at 740-41 (affirming dismissal of claim regarding 76% premium increase); *Batson*, 746 F.3d at 834 (affirming dismissal of claim relating to high ticket prices); *Dwyer v. J.I. Kislak Mortg. Corp.*, 13 P.3d 240, 243 (Wash. Ct. App. 2000) (WCPA does not prohibit charging fees); *Miller v. Pac. First Fed. Sav. & Loan Ass'n*, 545 P.2d 546, 549 (Wash. 1976) (increased interest rate not "unconscionable or inequitable"). That these cases involve the healthcare industry makes no difference. *See EBCF Enters., Inc. v. Erie Ins. Exch.*, 572 F. Supp.

37

3d 489, 498 (N.D. Ill. 2021) (rejecting claim that defendant "took advantage of COVID-19 'for its own financial gain'"); *Galvan v. Northwestern Mem'l Hosp.*, 888 N.E.2d 529, 535, 539 (Ill. App. Ct. 2008) (affirming dismissal of claim that hospital charged "over double the net price" for emergency room).

Payers' allegations also show that they cannot claim a "total absence" of choice, as required to establish that conduct is "immoral, unethical, oppressive, or unscrupulous." *Toulon*, 877 F.3d at 741; *see Blake v. Fed. Way Cycle Ctr.*, 698 P.2d 578, 583 (Wash. Ct. App. 1985) (unfair practice "must be one that consumers reasonably could not have avoided"). Payers contract for—or choose—the price they pay and the rebates they receive. Payers have chosen to engage PBMs to negotiate prices on their behalf, and to use PBMs' formularies. Lake FAC ¶¶ 18(b), 340; King SAC ¶¶ 47, 309. They have a choice about which PBMs they engage. Lake FAC ¶ 109; King SAC ¶¶ 80, 95. PBMs submit bids and compete with each other for Payers' business, and Payers choose the terms of their contracts. *See* Lake FAC ¶¶ 43, 448, 477(e)-(h), 506-10; King SAC ¶¶ 47, 80, 95, 366, 528. They often contract to receive all "money associated with prescription drug rebates," so that they do not pay the allegedly unfair price. Lake FAC ¶ 163; *see* King SAC ¶ 253. Given all of these choices, Payers cannot now claim that the prices they pay—on rebate terms that they chose to benefit themselves—are unfair. *See, e.g.*, *Wilson v. PTT, LLC*, 2021 WL 211532, at *9 (W.D. Wash. Jan. 21, 2021) (purchase options

38

not unfair where purchase is "within the control of the consumer"); *Siegel v. Shell Oil Co.*, 656 F. Supp. 2d 825, 833 (N.D. Ill. 2009) (inflated gas prices not unfair where plaintiff had alternatives); *Saunders v. Mich. Ave. Nat'l Bank*, 662 N.E.2d 602, 608-09 (Ill. App. Ct. 1996).

**Third**, to plead the required "substantial injury," Payers must allege that the "unfair practice" is not "outweighed by any countervailing benefits to consumers or competition." *Siegel*, 612 F.3d at 935; *see Blake*, 698 P.2d at 583. Countervailing benefits include keeping a business "competitive," maintaining consumer access to products, and "develop[ing] and preserv[ing] a business." *See also Donnellan v. Travelers Co., Inc.*, 2022 WL 170046, at *10 (N.D. Ill. Jan. 18, 2022); *Murphy v. Foster Premier, Inc.*, 2018 WL 3428084, at *4 (N.D. Ill. July 16, 2018); RCW § 19.86.920; *Travis v. Wash. Horse Breeders Ass'n, Inc.*, 759 P.2d 418, 424 (Wash. 1988). Far from being substantially injured, Payers' allegations make clear that Manufacturers' conduct *benefits* payers like themselves. Payers *specifically bargain for* rebates; they select their PBM based on rebate pass-through and often negotiate to receive 100% of rebates. *See supra* Part I.B. Manufacturers' conduct also benefits patients: a Manufacturer's failure to pay rebates will result in PBMs excluding that Manufacturer's medications from formulary, which would render those medications "virtually inaccessible for millions of covered persons." Lake FAC ¶ 9; *see also* King SAC ¶ 20 (exclusion "enable[s] pharmacy benefit managers … to push patients

39

toward certain brands of drugs over others"). As Payers explain, "PBM Defendant[s] intentionally select[] higher-priced diabetes medications for formulary placement and exclude[] lower priced ones," rendering the lower-price insulins "widely unavailable." King SAC ¶ 453(c); Lake FAC ¶¶ 529-33. These countervailing benefits prevent Payers from pleading a substantial injury. *Donnellan*, 2022 WL 170046, at *10; *Blake*, 698 P.2d at 583.

## IV.    PAYERS FAIL TO ALLEGE COMMON-LAW FRAUD CLAIMS.

### A.    Payers Cannot Allege A Misrepresentation Or Omission.

Like statutory fraud, a common-law fraud claim requires a showing that Manufacturers made a misrepresentation or a material omission.[20] And the only misrepresentation Payers allege is Manufacturers' *accurate* statements of their WAC prices, which cannot support a fraud claim.[21] Nor can Payers have been defrauded by omission, because they *knew* the "omitted" facts. *See supra,* Part III.B.2.[22]

---

[20] *Asamblea De Iglesias Christianas, Inc. v. DeVito*, 210 A.D.3d 843, 845 (N.Y. App. Div. 2022); *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996); *Weidner v. Karlin*, 932 N.E.2d 602, 605 (Ill. App. Ct. 2010).

[21] *See supra*, Part III.B.2; *Lewis v. Delaware Charter Guarantee & Tr. Co.*, 2015 WL 1476403, at *13 (E.D.N.Y. Mar. 31, 2015) (plaintiffs failed to "explain why any of the foregoing … constitute false representations"); *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 867 (7th Cir. 2013) (applying Illinois law); *Hunter v. Ferebauer*, 980 F. Supp. 2d 1251, 1264 (E.D. Wash. 2013).

[22] *First Nat'l State Bank v. Irving Trust Co.*, 91 A.D.2d 543, 544 (N.Y. App. Div. 1982) ("[T]here can be no liability in fraud where the complaining party is ... fully knowledgeable"); *Go For It, Inc. v. Aircraft Sales Corp.*, 2003 WL 21504600, at *3 (N.D. Ill. June 27, 2003); *Trimble v. Washington State Univ.*, 993 P.2d 259, 264 (Wash. 2000).

**B.    Payers Do Not Allege Intent To Induce Reliance.**

Payers' common-law fraud claims also fail because they do not and cannot allege that Manufacturers had "an intent to induce [Payers'] reliance." *Krolick v. Sloane*, 2021 WL 5280990, at *6 (S.D.N.Y. Nov. 12, 2021); *Bracken Data, Inc. v. Guel*, 2022 WL 3999810, at *12 (N.D. Ill. Sept. 1, 2022); *Baker Boyer Nat'l Bank v. Foust*, 436 P.3d 382, 386 n.4 (Wash. Ct. App. 2018). After all, Manufacturers never "made any representations to" them. *Baddeley v. Seek*, 156 P.3d 959, 961-62 (Wash. Ct. App. 2007) (dismissing claim); *Hoopingarner v. Stenzel*, 768 N.E.2d 772, 778 (Ill. App. Ct. 2002) (dismissing claim); *Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2018 WL 1627257, at *3 (S.D.N.Y. Mar. 30, 2018) (claim "futile" because "Plaintiffs do not allege that [defendant] made false and/or misleading representations to" them).

**C.    Payers Also Fail to Allege Reasonable Reliance.**

Payers also fail to allege either that they relied on Manufacturers' list prices, or that such reliance would have been reasonable. Their conduct shows that they did not rely on list prices: even after learning about the supposed "fraud," they have continued contracting with PBMs and buying the same medications at supposedly "inflated" prices despite available alternatives. *See supra*, Part III.C.3 (discussing Payers' ability to choose); Albany SAC ¶ 692; Lake FAC ¶ 644; King SAC ¶ 378. Albany even renewed its agreement with Express Scripts just two weeks after filing

41

suit. Ex. 23. Manufacturers' list prices thus are not "a substantial factor—or a factor at all—in" their decisions. *See Travelex Currency Servs. v. Puente Enters.*, 449 F. Supp. 3d 385, 399 (S.D.N.Y. 2020) (dismissing claim); *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 21 (2d Cir. 2000) (dismissing claim); *N. Am. Fin. Grp. v. S.M.R. Enters.*, 583 F. Supp. 691, 698 (N.D. Ill. 1984).

Even if Payers *had* alleged reliance on Manufacturers' list prices, that reliance would have been unreasonable, because they knew of the difference between list and net price by their own contracts and by public information. *See supra*, Part I.B. Reliance is "not … justified" when the "the express terms" of a contract, or "those facts [the] plaintiff could have learned," clarify the issue. *BP W. Coast Prods. LLC v. SKR Inc.*, 989 F. Supp. 2d 1109, 1120 (W.D. Wash. 2013); *Metro. Cap. Bank & Tr. v. Feiner*, 179 N.E.3d 847, 857 (Ill. App. Ct. 2020); *Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am.*, 51 F. Supp. 3d 379, 393 (S.D.N.Y. 2014).

## V.    PAYERS FAIL TO STATE UNJUST ENRICHMENT CLAIMS.

### A.    The Unjust Enrichment Claims Fall With The Underlying Claims

Because Payers' RICO, statutory fraud, and common law fraud claims fail, so do their unjust enrichment claims, which are premised on the same conduct. *See, e.g.*, Albany SAC ¶¶ 736-47; King SAC ¶¶ 535-38; Lake FAC ¶¶ 673-82. Where, as in each of the Amended Complaints, the unjust enrichment claim is derivative of another claim, the claims "will stand or fall" together. *Cleary v. Philip Morris, Inc.*,

656 F.3d 511, 517 (7th Cir. 2011) (applying Illinois law); *Greene v. Clean Rite Ctrs.,*

*LLC*, 2024 WL 328436, at *11 (E.D.N.Y. Jan. 29, 2024); *Coto Settlement v.*

*Eisenberg*, 593 F.3d 1031, 1041 (9th Cir. 2010) (applying Washington law).

### B.    Payers Did Not Confer A Benefit On Manufacturers.

#### 1.    Payers Did Not Directly Benefit Manufacturers.

As the Amended Complaints make clear, Payers are indirect purchasers who

have no relationship with Manufacturers. *See supra*, Part II.A. As this Court has

recognized, certain states do not permit unjust enrichment claims brought by indirect

purchasers. *MSP Recovery Claims*, 2019 WL 1418129, at *20; *see also City of*

*Miami v. Eli Lilly & Co*., 2022 WL 198028, at *9-10 (S.D. Fla. Jan. 21, 2022)

(dismissing unjust enrichment claim by municipality-payer in insulin pricing case).

New York and Washington are two such states, and, accordingly, Albany and King's

claims are barred. *See Laydon v. Mizuho Bank, Ltd.,* 2014 WL 1280464, at *13

(S.D.N.Y. Mar. 28, 2014) (claim "requires some type of direct dealing or actual,

substantive relationship with a Defendant"); *Prime Mover Cap. Partners L.P. v.*

*Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 697 (S.D.N.Y. 2012); *Patrick v.*

*Ramsey*, 2023 WL 6680913, at *4 (W.D. Wash. Oct. 12, 2023) (dismissing claim

where plaintiff failed to allege it "confer[red] a benefit on the defendant directly").

Illinois law is equally prohibitive. It allows indirect unjust enrichment claims

in just three "limited circumstances," where: "(1) the benefit should have been given

43

to the plaintiff, but the third party mistakenly gave it to the defendant instead, (2) the defendant procured the benefit from the third party through some type of wrongful conduct, or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant." *Cement-Lock v. Gas Tech. Inst.*, 618 F. Supp. 2d 856, 886 (N.D. Ill. 2009). This is not a case involving a mistaken benefit, so Lake needed to, but cannot, allege either "wrongful conduct" or that it had a "better claim."

Alleged "[w]rongful conduct alone will not support an unjust enrichment claim." *Indep. Tr. Corp. v. Fid. Nat'l Title Ins. Co. of N. Y.*, 577 F. Supp. 2d 1023, 1050 (N.D. Ill. 2008). Lake must allege that it "ha[s] some interest in the property that a third party gave to the defendant." *Id.* But Lake cannot allege that payments wholesalers made to Manufacturers "belonged to it, in any meaningful sense." *Id.* For the same reason, Lake has not alleged it has a "better claim" to the "benefit" wholesalers confer upon Manufacturers. Lake does not claim that it has any entitlement to be paid by wholesalers, much less that its claims "were superior" to Manufacturers'. *See Interlease Aviation Invs. II v. Vanguard Airlines, Inc.*, 2004 WL 1149397, at *12 (N.D. Ill. May 20, 2004). Lake's failure to allege that any amounts paid by third parties were the result of wrongful conduct or that it had a better claim to any such benefit warrants dismissal of its unjust enrichment claim.

### 2. Manufacturers Did Not Benefit From The Alleged Scheme—But Payers Did.

Separately, Payers had to show Manufacturers' "retention of a benefit" from

the "scheme." *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022); *New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F. Supp. 2d 325, 329 (S.D.N.Y. 2000); *Patrick,* 2023 WL 6680913, at *3. They cannot. On the contrary, Payers explicitly allege that the "scheme" "require[d] [M]anufacturers to *pay* ever-increasing rebates and fees." Lake FAC ¶ 381 (emphasis added); Albany SAC ¶ 317; King SAC ¶ 213. As a result, "the net price (i.e., *the price realized by Manufacturers*) has not [increased]." *See, e.g.*, Lake FAC ¶ 287 (emphasis added).[23] In other words, Manufacturers' alleged conduct yielded no actual marginal profit or "benefit" to them, while benefiting Payers.

### C.    Express Contracts Bar Payers' Unjust Enrichment Claims.

Payers' claims also fail because unjust enrichment is an obligation "implied in law" *absent* an express agreement between parties. Therefore, "a plaintiff may not state a claim for unjust enrichment when a contract governs the relationship between the parties." *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014) (applying Illinois law); *see also Goldberg v. Pace Univ.*, 535 F. Supp. 3d 180, 198 (S.D.N.Y. 2021); *Reading Hosp. v. Anglepoint Grp., Inc.*, 2015 WL 13145347, at *2 (W.D. Wash. May 26, 2015). Nor can Payers sue non-parties to a contract who allegedly benefit from the contract's performance. *RBS Citizens, N.A. v. Bentley*

---

[23] *See also* Andrew W. Mulcahy, Daniel Schwam, *Comparing Insulin Prices in the United States to Other Countries*, RAND Corporation at 2 ("the manufacturer earns the exact same net price per unit."), *cited at* Albany SAC ¶ 240 n.40; King SAC ¶¶ 202; 204-05 (figures showing declining or flat net prices).

*Motors, Inc.*, 2012 WL 1565457, at *3 (N.D. Ill. May 2, 2012); *Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 208 (S.D.N.Y. 2016); *Farwest Steel Corp. v. Mainline Metal Works, Inc.*, 741 P.2d 58, 65 (Wash. Ct. App. 1987).

The Amended Complaints make clear that Payers' claims arise out of their contracts with PBMs. Indeed, Payers complain at length about the terms of those contracts and how they were carried out.[24] For example, they complain that "'rebates' are narrowly defined and qualified by vague exceptions," and that the PBMs "failed to adhere to principles of good faith and fair dealing in carrying out" their agreements. Lake FAC ¶¶ 416, 515; King SAC ¶¶ 253, 531; Albany SAC ¶¶ 442, 577. These issues must be raised with the Payers' contractual counterparties; they are not an appropriate basis for an unjust enrichment claim.

Nor can a claim be staked on objections to price. Lake FAC ¶ 447; Albany SAC ¶ 528; King SAC ¶¶ 80, 95. As the Southern District of Texas explained in dismissing insulin pricing allegations by another municipality, a payer cannot use unjust enrichment to revisit contracts and "object[] to [an] artificially inflated price that [it] paid." *Harris Cnty.*, 2022 WL 479943, at *14 (collecting cases); *see also City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 771–72 (N.D. Ill.

---

[24] *See, e.g.,* Lake FAC ¶¶ 20, 109, 126, 163, 182, 404, 411, 412, 415-18, 421, 428, 447, 469, 477, 481, 491, 495, 501, 507-09, 515, 607; Albany SAC ¶¶ 18, 39, 80, 95, 115, 133, 168, 441-46, 452, 459, 487, 493, 495, 505, 506, 510, 528, 537, 542, 552, 556, 562, 570-74, 577, 671; King SAC ¶¶ 38, 47, 81, 96, 226, 253, 260, 275, 284, 306-51, 359, 365, 527-28, 530.

2019) (rejecting claim based on alleged scheme to keep price high). Because contracts govern the dispute, Payers' unjust enrichment claims must be dismissed.

## VI.    PAYERS DO NOT STATE CONSPIRACY CLAIMS.

Because Payers' RICO, fraud, and unjust enrichment claims fail, so do their civil conspiracy claims. "[C]onspiracy is not an independent tort. Where ... a plaintiff fails to state an independent cause of action …, the claim for a conspiracy also fails." *Indeck N. Am. Power Fund, L.P. v. Norweb PLC*, 735 N.E.2d 649, 662 (Ill. App. Ct. 2000); *Ferrandino & Son Inc. v. Wheaton Builders, Inc.*, 920 N.Y.S.2d 123, 125 (N.Y. App. Div. 2011); *Nw. Laborers-Emps. Health & Sec. Tr. Fund v. Philip Morris, Inc.*, 58 F. Supp. 2d 1211, 1216 (W.D. Wash. 1999).

The Payers' civil conspiracy claims independently fail because they failed to plead the "necessary" element of agreement. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (applying Illinois law); *Lau v. ZTE Corp.*, 2023 WL 9066883, at *9 (E.D.N.Y. Sept. 28, 2023); *Kische USA LLC v. Simsek*, 2016 WL 7212534, at *6 (W.D. Wash. Dec. 13, 2016). Most of Payers' conspiracy allegations are legal conclusions that the Court need not credit—for example, the blanket assertion that the "Insulin Pricing Scheme" was a "coordinated effort" between the Defendants. Lake FAC ¶ 350; Albany SAC ¶ 391; King SAC ¶ 413. Others simply describe routine interactions between members of the same industry, such as that the Defendants would "routinely communicate" with each other at

47

industry gatherings and were connected on LinkedIn. *See, e.g.*, Lake FAC ¶¶ 317-
21, 324, 326-28, 330-31, 578, 666; Albany SAC ¶¶ 357-61, 364, 366-68, 370-71,
641, 761; King SAC ¶¶ 171-75, 177-78, 425, 495. Even "taken as true," these are
not "enough … to suggest that an agreement was made." *Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 556 (2007).[25]

## VII.  PAYERS DO NOT AND CANNOT PLEAD CLAIMS REGARDING GLP-1 MEDICATIONS.

### A.    Patent Law Preempts Payers' Challenge To GLP-1 Pricing.

As Manufacturers explained in Dkt. 200-1 at 12-17, attempts to regulate the
prices of patented medications, including GLP-1s, are preempted by federal patent
law. Payers' claims as to GLP-1s must therefore be dismissed.

### B.    Payers Cannot Plead Claims As To GLP-1 Medications.

Payers in any event fail to adequately plead any legal violation as to GLP-1s.
Their claims center on a so-called "Insulin Pricing Scheme," which they assert also
affects GLP-1s. But Payers' allegations instead show that the "scheme" *could not*
have affected GLP-1s, because of key differences between insulins and GLP-1s.

Payers allege that the "Insulin Pricing Scheme" is driven by the "aggressive[]
pressure" PBMs create by threatening "formulary exclusions in the insulin
therapeutic class." Albany SAC ¶ 316; King SAC ¶¶ 20, 203; Lake FAC ¶¶ 358,

---

[25] *See also Walls v. VRE Chicago Eleven, LLC*, 344 F. Supp. 3d 932, 955 (N.D. Ill.
2018); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (applying
New York law); *Wilson v. State*, 929 P.2d 448, 459 (Wash. Ct. App. 1996).

360. Because of those threats, Manufacturers "have [increased] rebates in the insulin therapeutic class." Albany SAC ¶ 317; *see also* King SAC ¶¶ 1, 234; Lake FAC ¶ 353. According to Payers, PBMs have followed through on their threats, "and the number of insulins excluded has increased." Albany SAC ¶ 318; *see also* Lake FAC ¶ 532. PBMs can do this because insulins are in the same "therapeutic class" and PBMs consider them "interchangeable." Albany SAC ¶¶ 316, 393–95, 525; *see also* King SAC ¶¶ 163, 201, 210; Lake FAC ¶¶ 352-54, 360, 466; Senate Insulin Report at 73 (insulins' "interchangeab[ility] … allows PBMs to solicit competing bids"), *cited at* Albany SAC ¶ 12 n.2; King SAC ¶ 7 n.7; Lake FAC ¶ 14 n.3.

Payers allege that this pressure produces anomalies in insulin pricing, including alleged shadow pricing and the introduction of "two identical versions" of the same insulin at different prices. Albany SAC ¶¶ 282, 321; King SAC ¶ 195; Lake FAC ¶ 281. They contend that insulin prices should be lower because insulin is a supposedly hundred-year-old off-patent drug, production costs are decreasing, and Manufacturers spend little on research and development. Albany SAC ¶¶ 237, 239, 243, 433; King SAC ¶¶ 5, 14, 191, 232; Lake FAC ¶¶ 232, 234, 238, 393.

Payers do not and cannot allege that any of these features of the "Insulin Pricing Scheme" apply to GLP-1s. They do not claim GLP-1s are interchangeable or that formulary exclusions are being threatened, much less enacted. They do not allege shadow pricing or the introduction of the same GLP-1 at multiple price points.

49

Nor do they allege that GLP-1s share any of the characteristics that allegedly make *insulin* prices unfair, like low production cost, age, or supposedly minimal R&D costs. Nor could they. GLP-1s are novel medications—the oldest was approved by the FDA in 2005, while the most recent was approved in 2022. Albany SAC ¶¶ 251, 256, 271; King SAC ¶¶ 131, 286, 291; Lake FAC ¶¶ 249, 250, 255. As Payers explain, "R&D costs often contribute significantly to the price" of new medications. Lake FAC ¶ 238 (distinguishing insulin as having low R&D costs); Albany SAC ¶ 243 (same); King SAC ¶ 14 (conceding that R&D costs contribute to drug prices). And as Payers concede, GLP-1s are all patent-protected. Albany SAC ¶ 258; King SAC ¶ 293; Lake FAC ¶ 257.

Payers' complaints make clear that the only allegedly relevant similarities between GLP-1s and insulin are that Manufacturers sell both, and that rebates create a difference between list and net prices. But the latter fact is true of *every* branded pharmaceutical. If it were enough to state a claim, every manufacturer and every branded medicine in America would be part of the "scheme." *See supra*, Background Part I. Because Payers do not plausibly allege that GLP-1s are part of that "scheme," nor could they, claims based on those products should be dismissed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## CONCLUSION

Respectfully, the Court should dismiss Payers' claims with prejudice.

Dated:    June 10, 2024

/s/ Brian W. Carroll

**McCARTER & ENGLISH, LLP**
Brian W. Carroll
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
(973) 639-2020


**DAVIS POLK & WARDWELL LLP**
James P. Roudandeh (pro hac vice)
David B. Toscano (pro hac vice)
450 Lexington Ave.
New York, NY 10017
(212) 450-4000

**DAVIS POLK & WARDWELL LLP**
Neal A. Potischman (pro hac vice)
Andrew Yaphe (pro hac vice)
1600 El Camino Real
Menlo Park, CA 94025
(650) 752-2000

*Attorneys for Defendant Novo Nordisk Inc.*

Respectfully submitted,

/s/ Liza M. Walsh

**WALSH PIZZI O'REILLY FALANGA LLP**
Liza M. Walsh
Katelyn O'Reilly
Three Gateway Center
100 Mulberry St., 15th floor
Newark, NJ 07102
(973) 757-1100

**JONES DAY**
Michael R. Shumaker (pro hac vice)
Julie E. McEvoy (pro hac vice)
William D. Coglianese (pro hac vice)
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3939

*Attorneys for Defendant Sanofi-Aventis U.S. LLC*

Respectfully submitted,

*/s/ Melissa A. Geist*

**REED SMITH LLP**
Melissa A. Geist
Julia A. López
506 Carnegie Center, Suite 300
Princeton, NJ 08540
(609) 514-5978

**KIRKLAND & ELLIS LLP**
James F. Hurst (pro hac vice)
Andrew A. Kassof (pro hac vice)
Robert B. Ellis (pro hac vice)
Diana M. Watral (pro hac vice)
Ryan Moorman (pro hac vice)
Jason A. Feld (pro hac vice)
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000

*Attorneys for Defendant Eli Lilly and
Company*

# CERTIFICATE OF SERVICE

I certify that I am Attorney at Law of the State of New Jersey and a Member of the Bar of this Court and that on this date I caused a copy of this document to be served on the counsel of record in the above-captioned matter via email.

By: _/s/ Melissa A. Geist_
    Melissa A. Geist

Dated:  June 10, 2024
        Princeton, New Jersey