**ReedSmith**
*Driving progress through partnership*

**Melissa A. Geist**
Direct Phone: +1 609 514 5978
Email: mgeist@reedsmith.com

Reed Smith LLP
506 Carnegie Center
Suite 300
Princeton, NJ 08540-7839
+1 609 987 0050
Fax +1 609 951 0824
reedsmith.com

October 18, 2024

**VIA ECF & EMAIL**

The Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

   Re: **In re: Insulin Pricing Litigation, No. 2:23-md-03080-BRM-RLS**
      **Defendants' Position Paper Regarding Plaintiff Fact Sheets in State Attorney General Track**

Dear Judge Singh:

  As Your Honor has held, Plaintiff Fact Sheets ("PFS") in this MDL should "aid early definition of the issues presented," "provide substantive information as to the potential merits of the parties' respective claims and defenses," and "streamline the discovery process." ECF No. 278 at 3. Although the States advocated for a PFS process and against typical discovery under the Federal Rules, their PFS proposal would defeat those purposes. The States largely refuse to answer questions that get to core information in these cases, including many questions that the Self-Funded Payer Plaintiffs have either agreed to or been ordered to answer. Their position frustrates the objectives of the PFS in three ways.

  *First*, the States—each suing *parens patriae* on behalf of their sovereign state—contend that information possessed by state agencies other than the attorney general's office is largely off limits. But the States' claims in all cases extend beyond the scope of a single government enforcement agency: other state agencies—including Departments of Health, Boards of Pharmacy, Procurement, and Insurance Commissions—have information that is clearly relevant to the States' claims. A State *suing on behalf of*

BU DHABI ♦ ASTANA ♦ ATHENS ♦ AUSTIN ♦ BEIJING ♦ BRUSSELS ♦ CENTURY CITY ♦ CHICAGO ♦ DALLAS ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG
HOUSTON ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH ♦ NEW YORK ♦ ORANGE COUNTY ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH
PRINCETON ♦ RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

Diane A. Bettino ♦ Office Administrative Partner ♦ A Limited Liability Partnership formed in the State of Delaware

ReedSmith

*the State* should answer the PFS with *all* information within the *State's* control, including information held by agencies directly involved in the relevant conduct (as opposed to merely the lawyers who work in the state attorney general's office). If adopted, the States' position would undermine the purpose of the PFS, which is to provide substantive information as to the potential merits of the parties' respective claims and defenses. And in fact, the States' position was rejected by Judge Cavanaugh in this insulin pricing litigation, when he held (in a case brought by the State of Minnesota) that state agencies are not third parties for discovery purposes in *parens patriae* lawsuits brought by the State attorney general. *State of Minnesota v. Sanofi-Aventis U.S. LLC et al.*, No. 2:22-cv-01946, ECF No. 45 (Jul. 29, 2022).

*Second*, although the States bring claims that relate to prescription costs borne by their citizens, the States refuse to provide any information about the choices that they have made in determining how much those citizens who participate in the States' health plans pay for their drugs. The States refuse to provide information about their health plans unless a given State seeks recovery specifically in its capacity as a payer. But that information is core to all the States' *parens patriae* claims, irrespective of whether the States are also bringing claims on behalf of their health plans. The States both regulate and participate directly in the rebate system they decry, and they play a role in determining the costs consumers pay for insulin when covered by state health plans or, if the State has chosen to regulate, by private insurers. When they design their health plans or adopt rules applicable to private plans, the States make their own choices about how much participants should pay for prescription drugs and whether rebates should offset those costs. States that keep rebates for themselves, or that require participants to bear a higher cost for their medicines, are differently situated than States that opt to reduce prescription costs for participants. Most directly, if the States as health plan payers knowingly engage in the same conduct that they challenge in this litigation, that information is critical and should be identified at the PFS stage.

*Third*, the States limit or refuse to provide information on *nine* key topics: (1) state programs and legislation—if any—to address the out-of-pocket cost of insulin; (2) the allegedly misleading insulin prices; (3) when the States had notice of their claims; (4) States' direct purchases, if any; (5) the administrative fees passed through to the States; (6) consumer complaints about insulin costs; (7) the injunctive relief the States seek; (8) the identities of consumers who the States intend to use to support their claims; and (9) the relevant organizations the States participate in. Defendants need discovery into all of those topics, which bear on the States' claims on consumers' and their own behalf, the relief the States seek, and the States' own role in the rebate system they challenge. PFS responses can and should be provided on these topics now to assist the parties to stage further discovery, group and organize the plaintiffs, and permit early dispositive motions.

Defendants respectfully request that the Court order plaintiffs in the State Attorney General Track to complete Defendants' proposed PFS and accompanying targeted document requests.

I.   BACKGROUND: THE STATES' CLAIMS.

All 11 States currently in this MDL bring functionally identical suits in the States' *parens patriae* capacity—copying and pasting from prior complaints against the same defendants—dating back to early 2017. The States allege that they are suing "to protect the [] *sovereign* interest in the health, safety, and economic wellbeing of [their] residents and the integrity of [their] marketplace, including [their] healthcare system." *See, e.g.*, Compl. (Ill.) ¶ 37 (emphasis added). Each of the Complaints centers around the allegation that Defendants engaged in a purported "Insulin Pricing Scheme" in which Defendants benefitted from a system of supposedly secret rebates that "artificially inflated" the cost of insulin, and that these rebates were allegedly not passed down to consumers. Compl. (Ariz.) ¶¶ 27, 237, 279-80, 347, 443; 1st Am. Compl. (Ark.) ¶¶ 18, 20, 411, 440; Compl. (Ill.) ¶¶ 20, 401, 423, 468; Compl. (Ind.) ¶¶ 114,

The Honorable Rukhsanah L. Singh, U.S.M.J.  
October 18, 2024  
Page 4

ReedSmith

119, 183; Compl. (Kan.) ¶¶ 20, 379, 401, 441; 1st Am. Compl. (Ky.) ¶¶ 23, 416, 438, 481; Pet. (La.) ¶¶ 91, 108, 168; 1st Am. Pet. (La.) ¶¶ 92, 109, 169; 3d Am. Compl. (Miss.) ¶¶ 20, 411, 442, 496; 1st Am. Compl. (Mont.) ¶¶ 20, 405, 433, 482; Pet. (Okl.) ¶¶ 20, 409, 432, 476; Compl. (Utah) ¶¶ 21, 405, 427, 470. The States allege, among other claims, that such practices constitute an unfair or deceptive trade practice in violation of various state consumer protection laws. To establish such violations, many States require a showing that the alleged conduct is contrary to public policy. *See*, *e.g.*, *Young v. Era Advantage Realty*, 513 P.3d 505, 513 (Mont. 2022); *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 740 (7th Cir. 2017) (applying Illinois law). Further, under many of these statutes, the State must show that the injury was not reasonably avoidable. *See*, *e.g.*, *Toulon*, 877 F.3d at 741 ("plaintiff must show that [s]he suffered substantial injury, and that [s]he could not avoid this injury") (quotations omitted).

The States claim that they "shoulder[] the burden for much of these increased healthcare costs, spending billions of dollars annually in healthcare related costs for diabetes and diabetes-associated complications" and that "[t]he amount the State has spent on diabetes related costs has steadily increased throughout the relevant time period and could grow exponentially in the near future given the high prevalence of prediabetes … ." *See*, *e.g.*, Compl. (Ill.) ¶¶ 32, 459. They further claim that there has been a "decrease in work productivity [that] has further damaged the State by injuring its economy and decreasing its tax revenue." *Id.* ¶ 461. The States also sue to recover for claimed injuries to consumers, who the States allege "bear the brunt" of insulin list prices. *See*, *e.g.*, 1st Am. Compl. (Ark.) ¶¶ 18, 35; Compl. (Kan.) ¶¶ 18, 39; 1st Am. Compl. (Mont.) ¶¶ 18, 220. These claims all extend beyond the scope of a single government enforcement agency.

**II.     THE STATES MAY NOT LIMIT THEIR PFS RESPONSES TO INFORMATION IN THE POSSESSION OF THEIR ATTORNEYS GENERAL.**

ReedSmith

The Honorable Rukhsanah L. Singh, U.S.M.J.
October 18, 2024
Page 5

Information relevant to the PFS will not reside exclusively with each state's attorney general's office.[1] For example, the States' Departments of Health Services will have information about consumer insulin costs and state programs to address those costs. State administrative and procurement departments will have information about the States' insulin purchases and PBM contracts, revealing the States' own participation in the rebate system, as well as the choices the State made in designing its own insurance offerings. Unsurprisingly, the States' initial disclosures identify multiple agencies that are likely to have discoverable information about these allegations. Arizona, for example, listed witnesses from its Department of Health Services, Department of Administration, and Retirement System. Ex. 1, Arizona Initial Disclosures at 4. Louisiana, too, disclosed witnesses from its Department of Health. Ex. 2, Louisiana Amended Initial Disclosures at 2. And Minnesota, in response to Defendants' requests for production, identified *seven* separate agencies that had relevant information, despite only bringing claims on behalf of a single agency (Department of Corrections). Ex. 3, Minnesota Resp. to Defs.' RFPs at 1, 29.

For the PFS to be effective in facilitating future discovery, the States must respond to the PFS based on the responsive information in the States' possession, custody, or control—including information from the States' departments, agencies, and other subdivisions. *See* ECF No. 291 at 2 ("the Court expects each [] Plaintiff to diligently investigate whether it has within its possession, custody, or control information or documents responsive to the questions and requests") (quotations omitted). The States disagree and propose instead that most States should be required only to provide answers based on

---

[1] The States' proposed definition of "You" is designed to limit the scope of discovery in most cases to the office of its legal counsel—the State Attorney General. But that definition is directly contrary to the States' allegations in their complaints, which identify the States themselves as the plaintiffs in these actions asserting claims in their sovereign capacity and on behalf of their citizens. *See, e.g.*, 1st Am. Compl. (Ark.) ¶ 39 (identifying the "State of Arkansas" as the plaintiff and noting that the AG "represents and protects the state, its subdivisions, the legitimate business community, and the general public as consumers"); 1st Am. Compl. (Mont.) ¶ 39 (identifying "the State" as the plaintiff and the AG as its "chief legal officer"); Compl. (Kan.) ¶ 38 (same).

information in the possession of that State's attorney general. The States do not dispute that other state agencies have information relevant to the case but insist that they are not obligated to obtain documents from those agencies because they are "non-parties" to this litigation. Some States will agree to produce information from one or two unilaterally chosen state agencies, but only where the State chose to pursue so-called "direct claims" on behalf of those agencies. For at least three reasons, each State should be required to answer and provide information on behalf of the entire State, allowing all parties to determine the next steps in discovery.

*First*, this issue has already been briefed and decided in this litigation. In the insulin-pricing case brought by the Minnesota Attorney General, Judge Cavanaugh (acting as Special Master) rejected the claim that the Minnesota Department of Health Services was "effectively an entity separate and apart from the State of Minnesota." He held that state agencies were not "third part[ies] or non-part[ies]" to Minnesota's pricing lawsuit because the Minnesota Attorney General "explicitly brought this case as a *parens patriae* on behalf of the State," which meant that the *state's agencies* "stand[] in a position to gain ... should Plaintiff prevail." *State of Minnesota v. Sanofi-Aventis U.S. LLC et al.*, No. 2:22-cv-01946, ECF No. 45 at 18, 20 (Jul. 29, 2022); *see also id.* at 16 ("discovery requests made to this agency are effectively discovery requests being made to the State of Minnesota, the plaintiff in this litigation").

Federal courts across the country have reached the same conclusion, holding that state attorneys general bringing *parens patriae* claims have possession, custody or control over their state agencies' information and are therefore required to produce that information in discovery. *See, e.g.*, *In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*, 2024 WL 4125618, at *25-28, 53-65, 79-82 (N.D. Cal. Sept. 6, 2024) (finding that the attorneys general in Arizona, Illinois, Indiana, Kansas, Kentucky, Louisiana, and Montana have legal control over their respective state agency documents, in part, because

they act as the "chief legal advisor for the State"); *Illinois ex rel. Raoul v. Monsanto Co.*, 2023 WL 4083934, at *5 (N.D. Ill. June 20, 2023) (finding state attorney general has control over agency information "based on his broad statutory and common law powers to control and manage legal affairs on behalf of state agencies"); *Washington v. GEO Grp., Inc.*, 2018 WL 9457998, at *3 (W.D. Wash. Oct. 2, 2018) (holding that because the attorney general had "explicitly brought this case as *parens patriae* on behalf of the State," the attorney general must "produce all relevant, responsive, non-privileged information held by the State [], including its agencies"); *In re Opioid Litig.*, 2019 WL 4120096, at *1 (N.Y. Sup. Ct. Aug. 14, 2019) (requiring the New York attorney general to produce documents from state agencies where the action was brought on behalf of "the People of the State of New York" rather than any "specific state agencies or offices").

The same is true here: the States are bringing *parens patriae* claims, and their agencies stand to benefit from the litigation. It is undisputed that the States assert *parens patriae* claims. Compl. (Ariz.) ¶ 35; 1st Am. Compl. (Ark.) ¶ 35; Compl. (Ill.) ¶ 214; Compl. (Ind.) ¶ 13; Compl. (Kan.) ¶ 39; 1st Am. Compl. (Ky.) ¶ 229; Pet. (La.) ¶ 179; 1st Am. Pet. (La.) ¶ 180; 3d Am. Compl. (Miss.) ¶ 35; 1st Am. Compl. (Mont.) ¶ 220; Pet. (Okl.) ¶ 218; Compl. (Utah) ¶ 39. And the state agencies who need to provide information stand to benefit if the States prevail, regardless of whether the State chooses to couple a payer-based claim with its *parens patriae* claims. For example, many of Defendants' questions seek information about health plans that state agencies offer, which play a significant role in the provision of insulin and will be impacted by the outcome of this litigation. *See*, *e.g.*, Ex. 4, Question Nos. 5, 9-11, 13, 15-20, 24-27, 47-50, 54. Allowing the States to sue on behalf of the state as a whole while limiting discovery to their attorneys general (who will be unable to provide meaningful discovery) would frustrate the purpose of the

The Honorable Rukhsanah L. Singh, U.S.M.J.
October 18, 2024
Page 8

PFS, which is to "provide substantive information as to the potential merits of the parties' respective claims and defenses." ECF No. 278 at 3.

*Second*, the States' answers would be practically useless if they include only what the attorneys general themselves know and exclude information within the possession of the States—which, after all, are the entities the attorneys general represent. For example, the States agree to identify "any task force, study, working group, initiative, or other investigatory body related to the cost of … the At-Issue drugs … and a description of same." But the attorney general's office is unlikely to be aware of—much less involved in administering—any such studies or investigations. *See* Ex. 5, Plaintiffs' Proposed PFS Question No. 41. That is why Defendants repeatedly emphasized in prior briefing that the States' PFS must encompass information from state agencies. *See*, *e.g.*, ECF No. 222, at 1, 3, 5; 9/5/24 Hr'g Tr. at 13:16-24. The States never disputed this. *See generally*, *e.g.*, ECF No. 220. Indeed, they cited the "complexities" created by "different agencies and different policies" as "the very reason why we have proposed the fact sheet ... process." 9/5/24 Hr'g Tr. at 15:5-14. The Court should hold them to their word on what the PFS should cover.

*Third*, the States' present characterization of their claims is inconsistent with how they have previously characterized their claims in this litigation. When objecting to Lilly's settlement with consumer plaintiffs, the States asserted that their actions were "wholly separate" from consumers' claims, because they are on behalf not of "individuals but the *public at large*." *In re Insulin Pricing Litig.*, No. 17-0699, ECF No. 651-1 at 1, 13 (D.N.J. Jul. 13, 2023) (emphasis added). The States emphasized that "[e]ach of the Intervenor States has empowered its Attorney General to bring actions *on behalf of the State*," which is why they were pursuing claims and remedies distinct from those sought by consumers. *Id.* (emphasis added). Since the States have thus conceded that they bring claims on behalf of themselves, they should

be required to provide information from their complete selves—without excluding departments, agencies, and other subdivisions. In sum, a State suing on behalf of itself—as is the case with the States here—should answer the PFS with *all* information within the *State's* control.

The States have no legal basis for their refusal to provide information from their agencies, and this Court should order them to fully respond to Defendants' questions.

### III. THE STATES MUST FULLY RESPOND TO PFS WHETHER OR NOT THEY ARE SUING AS PAYERS.

The States should be required to provide information about the health plans they offer, including by identifying the employees responsible for their prescription drug coverage design and the PBMs the States contracted with. These questions are essential to guiding discovery into the States' participation in the same rebate system their suits challenge and the extent to which the States played a role in determining consumers' out-of-pocket costs for insulin. States make their own choices about how much patients should pay for prescription drugs and the rebates the States keep. Defendants are entitled to discovery regarding those choices.

Despite the centrality of these issues, the States refuse to answer these questions unless they are bringing suit "on behalf of any State agency in its capacity as a health insurance payor." *See* Plaintiffs' Proposed Fact Sheet Question Nos. 5, 9-12, 15-20, 22-28, 35-38, Request Nos. 1-5, 7. The States reason that these questions are irrelevant if a given State is only seeking to recover on behalf of consumers. *See id.* As noted above, however, the States have already conceded they are pursuing sovereign interests "wholly separate" from those of consumers. And the States' argument also fails for two additional, distinct reasons.

*First*, the States' conduct as payers and participants in the rebate system they challenge is directly relevant to assessing their claims, because their own policy choices are obviously relevant to whether

Defendants' conduct violates public policy. *See*, *e.g.*, *Young*, 513 P.3d at 513 (to establish an unfair trade practice in Montana, State must allege that Defendants misconduct is, inter alia, contrary to public policy); *Toulon*, 877 F.3d at 740 (element of Illinois Consumer Fraud Act is whether conduct "offends public policy"). And many States affirmatively allege that Defendants' conduct offends "public policy" to support their unfairness claims. *See*, *e.g.*, 1st Am. Compl. (Ark.) ¶ 526; 1st Am. Compl. (Mont.) ¶ 517; Compl. (Ill.) ¶ 491; 1st Am. Pet. (La.) ¶ 180; 1st Am. Compl. (Ky.) ¶ 515; Compl. (Utah) ¶ 505. For example, States that contract with PBMs to obtain rebates for their health plans cannot credibly argue that rebates violate public policy or otherwise injure consumers. The questions the States seek to limit would guide discovery into the extent and nature of their participation in the rebate system. *See*, *e.g.*, Ex. 5, Plaintiffs' Proposed PFS Question Nos. 19 (seeking identification of PBM contracts), 37 (seeking identification of requests for proposal for PBM services). They should be answered regardless of whether the States seek damages as payers, because the answers may refute their claims—including their claims on behalf of consumers.

*Second*, information about the health plans the States offer is relevant to their allegations on behalf of consumers, because many consumers in each State are covered by the States' health plans. As the Court knows, health plans—including the States'—play a significant role in determining consumer out-of-pocket costs for medications like insulin. The questions the States seek to limit would require them to provide information about what consumers pay for insulin—in other words, about the consumer injuries the States allege. *See*, *e.g.*, Ex. 5, Plaintiffs' Proposed PFS Question Nos. 9 (requesting the number of individuals enrolled in the States' health plans), 10 (requesting the number of enrolled individuals who purchased insulin), 35 (requesting identification of advisors on prescription drug coverage). Because each State is suing on behalf of all of its residents who purchase insulin, they are necessarily suing on behalf

ReedSmith

The Honorable Rukhsanah L. Singh, U.S.M.J.
October 18, 2024
Page 11

of the subset of residents covered by their respective health plans. Those residents' alleged injuries are therefore relevant. And finding information about this subset of residents via the PFS instead of through Rule 45 subpoenas will permit the parties to have this information early on to guide the next stage of discovery.

This Court should order every State, regardless of whether the State is also bringing a claim as a payer, to fully respond to the complete PFS.

## IV. DEFENDANTS' PROPOSAL COVERS KEY LEGAL AND FACTUAL ISSUES ACROSS STATE ATTORNEYS GENERAL.

All of Defendants' questions and document requests seek key information necessary to stage further discovery, potentially group and organize Plaintiffs, and allow early dispositive motions. The States refuse to respond on *nine* core topics, including several that this Court or other insulin pricing decisions have already addressed. For the Court's reference, Defendants have included a chart comparing the at-issue Questions and Requests in Defendants' proposal with those proposed by the States. Ex. 6.

***State Programs to Address Insulin Pricing*** (Question Nos. 21-22, 29, 32-33, 57, Request No. 8). The States refuse to answer any questions related to their own activities around insulin pricing—issues that go directly to the States' allegations about consumer injury. The States refuse to provide information on their own programs and legislation to cap or lower insulin out-of-pocket costs for consumers (Question Nos. 21-22), their Medicaid programs (Question Nos. 29, 32-33), or any other assistance programs for patients with diabetes (Question No. 57), nor will they produce documents relating to such programs (Request No. 8). But the facts and circumstances around the States' own affordability programs (or their decision not to establish such programs) will drive future discovery in this case. For example, whether a State created any programs or adopted any regulations related to consumer out-of-pocket costs goes directly to the State's claim that consumers cannot reasonably avoid any injury, or that certain prices are

"unconscionable" or "unfair." And determining which States did or did not adopt copay caps, and the amount at which they capped consumers' costs, will be key threshold evidence in determining what out-of-pocket costs a State can even arguably claim violate that State's laws. After the PFS stage, Defendants will need discovery into how these programs work, the details of how they were created, and their impact on consumers—all of which are relevant to rebut multiple elements of the States' consumer protection claims. The differences between States and how they run their programs will matter for sequencing discovery into these topics, and for teeing up related issues in early dispositive motions.

*Misrepresentations* (Question No. 36). The States refuse to identify the specific prices of insulin that they allege were "artificially inflated" or false. But as Your Honor has already found, "specific information ... as to alleged misrepresentations ... would aid the parties and the Court in focusing the issues and potentially identifying common areas for further discovery." ECF No. 291 at 6. The States claim that insulin prices are misrepresentations; they should be required to provide specific information about those purported misrepresentations.

*Statute of Limitations* (Question Nos. 37, 42, 44, 45 and 46). The States also limit what they will provide regarding Defendants' statute of limitations defenses, by generally refusing to explain *how* they learned of events that implicate the limitations period. For example, the States refuse to identify when and how they claim to have learned: that Manufacturers' prices were deceptive, of the 2017 *In re Insulin Pricing* lawsuit, and of state and federal investigations related to insulin pricing. This Court has already spoken to analogous issues in the SFP plaintiff context, allowing questions on "when *and how* [plaintiff] discovered that Defendants' pricing statements were allegedly misleading or deceptive; and when *and how* [plaintiff] learned or discovered of other lawsuits regarding insulin pricing." ECF No. 291 at 8 (emphases added). Moreover, the Court has already explained that "identification of a plaintiff's

knowledge as to [federal and state] investigations could aid the parties and the Court in narrowing the issues and/or cases for prioritization or further proceedings," *id*. at 9, and the SFP Plaintiffs have agreed to identify *how* they learned about those topics. The same logic applies to the States, and they should be required to respond.

**Direct Purchasing** (Question No. 59). The States refuse to provide even basic information about any direct purchases of insulin, including even whether they claim to have ever made any direct purchases. That information is dispositive of some of their claims. For example, in many states, only plaintiffs that purchased products directly from a defendant can pursue unjust enrichment claims. *See*, *e.g.*, *Kentucky v. Marathon Petroleum Co., LP*, 191 F. Supp. 3d 694, 697 (W.D. Ky. 2016) ("direct benefit [is] required by Kentucky law"). The States' response to this topic will, as Your Honor has already concluded, "aid the identification of common issues and/or cases for further proceedings." ECF No. 291 at 5. The States should be required to answer.

**Administrative Fees** (Question Nos. 24-25). The States refuse to provide any information on administrative fees passed through to their health plans. Since the States explicitly base their claims on administrative fees, this refusal cannot be justified. *See*, *e.g.*, Compl. (Ill.) ¶ 20 n.2 (claiming that "Manufacturer Payments" "include rebates[ and] *administrative fees*" and that "Manufacturer Payments" "are *quid pro quo* for formulary inclusion"); Compl. (Mont.) ¶ 20 n.3 (same).

**Out-of-Pocket Costs** (Question Nos. 15, 58). Despite claiming that their residents have suffered injury due to the residents' out-of-pocket insulin costs, the States will not identify their residents' out-of-pocket costs for insulin products. That information is core to their complaints. The States allege that their consumers have been "overcharged millions of dollars a year in out-of-pocket costs" related to insulin purchases. 1st Am. Compl. (Mont.) ¶ 29; 1st Am. Compl. (Ark.) ¶ 29; 3d Am. Compl. (Miss.) ¶ 29; Compl.

(Kan.) ¶ 29; Compl. (Ill.) ¶ 29; Compl. (Ind.) ¶ 181; 1st Am. Compl. (Ky.) ¶ 32; Compl. (Utah) ¶ 30; Compl. (Okl.) ¶ 29; *see* Compl. (Ariz.) ¶¶ 101, 146, 176; Pet. (La.) ¶ 175; 1st Am. Pet. (La.) ¶ 176. Although the Court previously ruled that the Self-Funded Payers need not provide information about their members' out-of-pocket costs, *see* ECF No. 291 at 4, that ruling does not apply to the States because the SFP Plaintiffs expressly denied they were seeking anything related to "overpayments made by ... individual members" and instead were solely pursuing claims in their capacity as insurance payers. ECF No. 270 at 22. Here, by contrast, the States are seeking "restitution that may be owed to ... consumers." Accordingly, the States must provide discovery regarding that restitution claim. 1st Am. Compl. (Ark.) § VIII.D; Compl. (Ill.) § VII.C; Compl. (Ind.) ¶ 185; *see also* Compl. (Ariz.) ¶ 454.c; Compl. (Kan.) § VIII.C; 1st Am. Compl. (Ky.) ¶ 228; Pet. (La.) ¶ 179; 1st Am. Pet. (La.) ¶ 180; 3d Am. Compl. (Miss.) § IX.D; 1st Am. Compl. (Mont.) § VIII.C; Pet. (Okl.) § IX.D; Compl. (Utah) § VIII.D.

**Injunctive Relief** (Question No. 64). The States seek to substantially limit their description of the injunctive relief they seek. They will not explain their bases for seeking injunctive relief, promising only a "summary" of the requested relief. Such a summary is likely to be high-level and unhelpful, and the States have no justification to limit such information when their complaints clearly seek injunctive relief of some sort. *See*, *e.g.*, 1st Am. Compl. (Mont.) ¶ 35; 1st Am. Compl. (Ark.) ¶ 35; 3d Am. Compl. (Miss.) ¶ 37; Compl. (Kan.) ¶ 36; Compl. (Ill.) ¶ 215; Compl. (Ind.) ¶ 185; 1st Am. Compl. (Ky.) ¶ 39; Compl. (Utah) ¶ 37; Compl. (Ariz.) ¶ 33; 1st Am. Pet. (La.) ¶ 180; Compl. (Okl.) ¶ 36. Just as Your Honor ruled that "identification of claimed damages would aid the parties and the Court in identifying cases that may be appropriate for prioritization in further proceedings," ECF No. 291 at 9, so too would the identification of the basis of the States' requested injunctive relief. Defendants need to know the entirety of what the

States want, why, and from whom, so that similarly situated States can be identified and further discovery planned.

***Individuals to Be Used in Support of Claims/Defenses*** (Question No. 53). The States have agreed to identify State personnel with relevant knowledge in this litigation, but they refuse to identify any nonemployee witnesses they intend to use to support their claims or defenses. Those individuals are key witnesses for the States' claims, and Defendants are entitled to know who these individuals are and how many there are for planning further discovery. And this issue, too, has already been addressed in insulin pricing litigation. In the *Mississippi* action, Magistrate Judge Parker ruled that, if the State wanted to prove its allegations that residents rationed insulin, it would have to identify the residents discussed in those allegations. The States continue to make those allegations and should identify the relevant individuals. *See, e.g.*, 1st Am. Compl. (Ark.) ¶ 30; Compl. (Ill.) ¶ 30; Compl. (Ind.) ¶ 181; Compl. (Kan.) ¶ 30; Compl. (Ky.) ¶ 33; 1st Am. Pet. (La.) ¶ 7; 3d Am. Compl. (Miss.) ¶ 30; 1st Am. Compl. (Mont.) ¶ 30; Pet. (Okl.) ¶ 30; Compl. (Utah) ¶ 31.

***Memberships*** (Question No. 51). The States refuse to identify organizations they belong to that either share information on relevant issues, like pharmaceutical pricing and PBM or drug pricing reform, or that the State may use for price concessions from manufacturers, such as MMCAP or other similar organizations. The States also refuse to identify the employees who are involved in those organizations. These organizations must be identified for potential third-party discovery, and the employees involved with those organizations may be key witnesses for the States' claims. Defendants are entitled to this information to plan further discovery.

\*   \*   \*

The Honorable Rukhsanah L. Singh, U.S.M.J.  
October 18, 2024  
Page 16

ReedSmith

    Defendants respectfully request that the Court approve Defendants' proposed PFS for use with the State Attorney General Track.

                                            Respectfully submitted,

                                            [Signature page follows]

ReedSmith

The Honorable Rukhsanah L. Singh, U.S.M.J.
October 18, 2024
Page 17

Dated: October 18, 2024

/s/ *Melissa A. Geist, Esq.*
Melissa A. Geist, Esq.
Julia A. Lopez, Esq.
**REED SMITH LLP**
506 Carnegie Center, Suite 300
Princeton, NJ 08540
T: (609) 514-5978

James F. Hurst, Esq. (*pro hac vice*)
Andrew A. Kassof, Esq. (*pro hac vice*)
Diana M. Watral, Esq. (*pro hac vice*)
Ryan Moorman, Esq. (*pro hac vice*)
Jason A. Feld, Esq. (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
T: (312) 862-2000

*Attorneys for Defendant Eli Lilly and Company*

/s/ *Brian W. Carroll, Esq.*
Brian W. Carroll, Esq.
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
T: (973) 639-2020

James P. Rouhandeh, Esq. (*pro hac vice*)
David B. Toscano, Esq. (*pro hac vice*)
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
T: (212) 450-4000

Neal A. Potischman, Esq. (*pro hac vice*)
Andrew Yaphe, Esq. (*pro hac vice*)
**DAVIS POLK & WARDWELL LLP**
1600 El Camino Real
Menlo Park, CA 94025
T: (650) 752-2000

*Attorneys for Defendant Novo Nordisk Inc.*

The Honorable Rukhsanah L. Singh, U.S.M.J.
October 18, 2024
Page 18

ReedSmith

/s/ Liza M. Walsh, Esq.
Liza M. Walsh, Esq.
Katelyn O'Reilly, Esq.
Selina Ellis, Esq.
**WALSH PIZZI O'REILLY FALANGA LLP**
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
T: (973) 757-1100

Michael R. Shumaker, Esq. (*pro hac vice*)
Julie E. McEvoy, Esq. (*pro hac vice*)
William D. Coglianese, Esq. (*pro hac vice*)
Melissa L. Patterson, Esq. (*pro hac vice*)
**JONES DAY**
51 Louisiana Avenue, N.W.
Washington, DC 20001
T: (202) 879-3939

*Attorneys for Defendant Sanofi-Aventis U.S. LLC*

/s/ Jason R. Scherr
Jason R. Scherr
Patrick A. Harvey
Lindsey T. Levy
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004-2541
jr.scherr@morganlewis.com
patrick.harvey@morganlewis.com
lindsey.levy@morganlewis.com
T: (202) 739-3000

*Counsel for Evernorth Health, Inc. (formerly known as Express Scripts Holding Company), Express Scripts, Inc., Express Scripts Administrators, LLC, ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Medco Health Solutions, Inc., and The Cigna Group.*

The Honorable Rukhsanah L. Singh, U.S.M.J.
October 18, 2024
Page 19



/s/ Brian D. Boone, Esq.
Thomas P. Scrivo
Young Yu
**O'TOOLE SCRIVO, LLC**
14 Village Park Road
Cedar Grove, NJ 07009
T: (973) 239-5700

Brian D. Boone
**ALSTON & BIRD LLP**
1120 S. Tryon Street, Ste. 300
Charlotte, NC 28280
T: (704) 444-1000

Elizabeth Broadway Brown
**ALSTON & BIRD LLP**
One Atlantic Center
1201 W. Peachtree Street, NW, Ste. 4900
Atlanta, GA 30309-3424
T: (404) 881-7000

Kelley Connolly Barnaby
**ALSTON & BIRD LLP**
950 F. Street, NW
Washington, DC 20004
T: (202) 239-3300

*Counsel for OptumRx, Inc., UnitedHealth Group Incorporated; OptumInsight, Inc.; OptumRx Holdings LLC; and Optum, Inc.*

s/ Kevin H. Marino, Esq.
Kevin H. Marino
John D. Tortorella
**MARINO, TORTORELLA & BOYLE, P.C.**
437 Southern Boulevard
Chatham, New Jersey 07928
T: (973) 824-9300

The Honorable Rukhsanah L. Singh, U.S.M.J.
October 18, 2024
Page 20

ReedSmith

Enu Mainigi
Craig Singer
R. Kennon Poteat III
A. Joshua Podoll
Benjamin Hazelwood
Daniel Dockery
**WILLIAMS & CONNOLLY LLP**
680 Maine Ave SW
Washington, DC 20024
T: (202) 434-5000

*Counsel for CVS Health Corporation; CVS Pharmacy, Inc.; Caremark Rx, L.L.C.; CaremarkPCS Health, L.L.C.; and Caremark, L.L.C.*