

THE
**Cicala Law Firm**
PLLC

October 18, 2024

**VIA ECF & EMAIL**

The Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

     **Re:**   *In re: Insulin Pricing Litigation*, **No. 2:23-md-03080-BRM-RLS**
         **State Attorney General Track Plaintiffs' Position Paper**
         **Regarding Plaintiff Fact Sheets**

Dear Judge Singh:

     State Attorney General Track Plaintiffs respectfully request that the Court reject Defendants' proposed Plaintiff Fact Sheet ("PFS") and enter an order adopting Plaintiffs' proposed PFS (**Exhibit 1**).

     Defendants' proposed Plaintiff Fact Sheet (PFS) should be rejected out of hand. Rather than requesting information from the party Plaintiffs in the State AG Track, Defendants' PFS (**Exhibit 2**) impermissibly seeks information and custodial documents from unidentified *non-party* state "agencies, departments, units, or entities." S*ee* Ex. 2 at Definition 3. As set forth below, Plaintiffs do not have possession, custody, or control over non-party information and documents. Further, including such sweeping, irrelevant, non-party requests is contrary to the very purpose of the fact sheet process—identifying core issues and common areas for further discovery. *See* Order Regarding Fact Sheets, ECF No. 291.

     Plaintiffs' proposed PFS offers to provide nearly all of the information Defendants seek but is appropriately tailored to the parties and state entities *actually* involved in the cases.

     Additionally, Plaintiffs' PFS follows the Court's resolution of the Self-Funded Payer fact sheet dispute. Order Regarding Fact Sheets, ECF No. 291. Defendants' PFS, on the other hand, includes requests that the Court rejected. *See, e.g.,* Ex. 2 at Question 15 (requesting the "total amount of Your members' out-of-

October 18, 2024
Page 2



pocket responsibility" despite the Court's finding that an identical request should be "reserved for a later stage of discovery").

## I. Defendants' PFS Improperly Seeks Non-Party Information and Documents.

As numerous courts have recognized in other cases brought by state attorneys general, state agencies within the states that have lawsuits pending in the State Attorney General Track are not "parties" for purposes of discovery and the Attorneys General do not have custody or control of their documents. *See, e.g., United States v. Am. Express Co.*, 2011 WL 13073683, at *2 (E.D.N.Y. July 29, 2011) ("Accordingly, I find that for purposes of this litigation and discovery, the state agencies … are not parties.").

Defendants disagree with this fundamental proposition. Defendants' position, however, ignores the role played by the State Attorneys General in this litigation, ignores the important state constitutional and statutory authority given the Attorneys General, and if followed in every case would undermine their ability to protect consumers because each Attorney General would be forced to consider the discovery impact on state agencies as a whole every time they sought to bring an enforcement action under their states' consumer protection authority. *Cf. New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259, 266 (N.D.N.Y. 2006) ("Following … Amtrak's argument to its logical conclusion, any lawsuit brought by the State of New York would subject all twenty-two executive agencies, the legislature, the judiciary, quasi-state agencies, and possibly public authorities to disclosure scrutiny, notwithstanding their relative remoteness to the issue of the case. Not only would such a discovery mandate be unduly burdensome and cumbersome but totally untenable and outside the spirit of the Federal Rules.").

### A. The Role of State Attorneys General.

Every lawsuit in the State Attorney General Track involves a case brought by the respective Attorney General's office pursuant to, as applicable, its constitutional, statutory and/or common law enforcement powers. *See, e.g., The State of Mississippi, ex rel., Lynn Fitch, Attorney General v. Eli Lilly and Co. et al.*, Case No. 2:23-cv-04364, ECF No. 71 at ¶ 235 ("The Attorney General brings this action

October 18, 2024
Page 3



on the State's behalf pursuant to her authority granted by Miss. Const. Art. 6, § 173 and Miss. Code Ann. § 7-5-1; Miss. Code Ann. §§ 75-24-1, et seq.").[1]

The statutory powers at issue are the state consumer protection acts, each of which uniquely and expressly empowers the Attorney General—and only the Attorney General—to bring actions against companies that harm consumers in their state. *See, e.g., id.*; *State of Arkansas, ex rel. Tim Griffin, Attorney General v. Eli Lilly and Company et al.,* Case No. 2:23-v-04239, ECF No. 57 at ¶ 39; *State of Montana, ex rel. Austin Knudsen, Attorney General v. Eli Lilly and Co. et al.,* Case No. 2:23-cv-04214, ECF No. 40 at ¶ 39. For those cases in the Track that include common law enforcement powers, the rationale is no different—they are long-recognized *parens patriae* enforcement mechanisms available to State Attorneys General to bring actions on behalf of persons residing in their state.

Importantly, no state agency of the states in this MDL is similarly empowered by statute or common law to act on behalf of state consumers—and therefore no state agency is a proper plaintiff for the statutory or common law *parens patriae* claims asserted here.[2]

And finally, each of the Attorneys General in the State Attorney General Track are elected, constitutional officers of their respective states. They have independent standing, and their roles are prescribed and circumscribed by their state constitutions and legislative authority—roles that, in the interest of federalism and comity, must be respected. *See Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1343-1344 (11th Cir. 1999) (addressing reasons governmental bodies should not be lumped together and observing that, "federalism and comity concerns … should play a significant role in determining whether to treat as one body two governmental entities that are separate and distinct under state law. … Defining the nature and relationship of [subordinate public bodies], no less than determining their level of funding, is 'uniquely an exercise of state sovereignty. We owe such determinations by the state legislature not only deference, but great deference.'") (internal citations omitted); *Commonwealth v. Ortho-McNeil-Janssen Pharms., Inc.*, 2012 WL 5392617, at *3 (Mass. Super. Ct. Oct. 5, 2012) ("The second concern goes to the relationship between the governor and the Attorney General. Each of them is an elected official operating independently of the other. If this Court were to conclude

---

[1] The specific powers and authority available to each Attorney General vary somewhat by state. The broad principles discussed in this Position Paper, however, are generally applicable.

[2] The only slight caveat is Utah, whereby statute its Attorney General brings such a claim through the state's Division of Consumer Protection.



that state agencies, even those within the executive branch, necessarily become 'parties' for discovery purposes any time that the Attorney General exercises her exclusive authority to bring an enforcement action, that could upset the constitutional balance of power.").

Most significantly, the Attorneys General operate in a different capacity than the governor, which is the elected officer that typically oversees state agencies. *See, e.g., Jointly Managed R.S. 2477 Rd. Cases Litig. v. United States*, 2018 WL 2172934, at *2 (D. Utah May 10, 2018) ("[T]he Utah Constitution vests the executive power of the state in the Governor while the Attorney General is 'the legal adviser of the State officers . . . and shall perform such duties as provided by law.' *Id.*, Article VII, sections 5(1) and 16" .… the Attorney General therefore does not have the power to control the "agencies organized under [the Governor's] authority.").

### B.     State Agencies Are Not Parties, and Attorneys General Do Not Have Custody and Control of Agency Documents.

Given this reality, in analogous cases brought by attorneys general, courts have long recognized that state agencies are not "parties" for discovery purposes, which in practical terms means the attorneys general did not have custody or control of agency documents. *See, e.g., In re Gold King Mine Release*, 2021 WL 847971, *2-3 (D.N.M. March 5, 2021) (holding attorney general not required to respond to discovery directed to nonparty departments or agencies); *Am. Express Co.*, 2011 WL 13073683, at *2; *Colorado v. Warner Chilcott Holdings Co., Ltd.*, 2007 WL 9813287, at *4 (D.D.C. May 8, 2007) (refusing to order state attorneys general to produce discovery from state agencies); *State v. Clearview AI, Inc.*, 2023 WL 7548710, at *2 (Vt. Super. Ct. Oct. 27, 2023) (same); *Ortho-McNeil-Janssen Pharms., Inc.*, 2012 WL 5392617, at *2-3 (same); *cf. People ex rel. Raoul v. Monsanto Co.*, 2023 WL 4083934, at *5 (N.D. Ill. June 20, 2023) (requiring attorney general to provide responsive documents from <u>only</u> the state agencies <u>*identified*</u> in state's complaint).

While there are some outliers to this familiar rule, they are clearly distinguishable and do not compel a similar result here. For example, in the generic drugs antitrust MDL, after a lengthy process during which a broad initial discovery request was substantially narrowed, the district judge ruled that certain objecting attorneys general did have control over documents in possession of certain state agencies—but in doing so, the court relied in large part on the fact that the litigation there was a "wide-ranging" antitrust case. *In re Generic Pharms. Pricing Antitrust*

October 18, 2024
Page 5



*Litig.*, 699 F. Supp. 3d 352, 359-60 (E.D. Pa., Oct. 20, 2023) (observing that contrary state-specific authority did "not appear to be an antitrust case" and therefore did not "preclude the production of records held by non-party Ohio state agencies in an antitrust suit like this one"). In opioid litigation brought by states, judges have also concluded that the claims of public nuisance brought on behalf of states as a whole required the states to treat their agencies as parties for discovery purposes. *See, e.g., State v. Purdue Pharma, L.P.*, 2020 WL 13566522 (D.N.M. July 22, 2020); *In re Opioid Litigation*, 2019 WL 4120096, at *1 (N.Y. Sup. Ct. Aug. 14, 2019).

But these holdings are not applicable here. With one exception (Louisiana), none of the cases in the State Attorney General track involves antitrust claims. None of the cases in the State Attorney General Track alleges public nuisance or seeks comprehensive abatement and other remedies (across a myriad of state agencies impacted).[3]

The recent decision in *In re Soc. Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, 2024 WL 4125618 (N.D. Cal. Sept. 6, 2024), also addressed these issues.[4] While the magistrate judge there found that agencies were subject to discovery in cases brought by certain Attorneys General, that opinion has been appealed to the district judge. The brief filed by the Attorneys General appealing the decision is attached as **Exhibit 3** and explores in detail why the decision is in error. In summary terms, the Attorneys General in that case argue, correctly, that the court's conclusions rest on a misapprehension of their authority and erroneous conclusions regarding the scope of their authority under their respective state laws.

Fundamentally, the State Attorney General Track cases are brought pursuant to statutory authority under the state consumer protection acts in their respective states or common law authority to pursue *parens patriae* claims. In these circumstances, federalism and comity concerns dictate that state agencies not be subjected to party discovery.

For these reasons, state agencies should not be considered parties for purposes of discovery, the Attorneys General should not be considered in control of agency

---

[3] The Attorneys General in the State Attorney General Track do not concede that treating state agencies as parties would be proper even if this were an antitrust or public nuisance case. Because it is not, however, there is no need to address this question.

[4] In *Washington v. GEO Group., Inc*., 2018 U.S. Dist. LEXIS 170418, 2018 WL 9457998, at *3 (W.D. Wash. Oct. 2, 2018), the court ruled that state agencies were subject to discovery in a case brought by the attorney general, but that case, unlike this one, involved an effort to enforce the state's minimum wage laws.



documents, and, specifically, these findings should apply for purposes of the Plaintiff Fact Sheets. This conclusion will then help guide the resolution of several of the PFS issues raised below.

## II.    Additional Areas of Dispute between the Parties' PFS Proposals

### a.    Identity of people and entities with relevant knowledge

#### i.    Plaintiffs' Question 13

13.    In the form of the table below, identify by name any department, agency, investigative unit, entity, or other program with responsibilities related to the allegations in Your Complaint. Summarize each of those entities' area of responsibility.

#### ii.    Defendants' Question 13

13.    In the form of the table below, identify by name any department, agency, subdivision, investigative unit, entity, or other program with knowledge or responsibility over functions related to the allegations in Your Complaint, including but not limited to: entities that regulate or oversee any aspect of Prescription Drug Coverage offered under Your Health Plans; entities that have any role regarding consumer spending in connection with the At-Issue Drugs; entities that communicate or contract with PBMs, drug manufacturers, or any other entities that provide rebates or other price concessions related to purchasing pharmaceutical products; and entities responsible for procuring services or products from PBMs, drug manufacturers, group purchasing organizations, or any other entities that provide or negotiate rebates or other price concessions related to purchasing pharmaceutical products. Summarize each of those entities' area of responsibility

#### iii.    Argument

Plaintiffs' proposed Question 13 mirrors the language adopted by the Court in its October 16 PFS Order in the Self-Funded Payer ("SFP") track. *See* ECF No. 315, Ex. 1 at Question 9. Defendants' proposal, on the other hand, adds to the Court-ordered SFP PFS a lengthy list of topics, roles, and departments that the Defendants have unilaterally determined are "related to the allegations in [each State's] complaint."

October 18, 2024
Page 7



Defendants' proposal should be rejected. Not all of the State AG cases are the same. Many of the States assert claims only on behalf of individual consumers, whereas others claim damages related to State Health Plans, Medicaid programs, and departments of corrections. The scope and burden of discovery across the different State AG cases will therefore differ, as will the entities, agencies, and departments that each State provides in response to Question 13. Plaintiffs' proposal is more narrowly tailored to the needs of the case, in particular at this PFS stage, and provides for more flexibility across the varying State AG cases. Respectfully, the Court should adopt Plaintiffs' Question 13.

### b.    Defendants' seek information related to purchases of At-Issue Products that the Court has already rejected

#### i. Plaintiffs' Question 15

15.    ***If You answered "yes" to question 5, please answer this question. If not, You may leave this question blank***. In the form of the table below or through the production of documents, for each At-Issue Product, provide the total amount of money spent on the At-Issue Product for members enrolled in Your Health Plan(s) identified in response to question 5 for each year during the Time Period, and the total Rebates received by Your Health Plan(s).

| At-Issue Product | Year | Total Number of Scripts | Total Spent by You | Total Rebates Received |
|---|---|---|---|---|
|  |  |  |  |  |

#### ii. Defendants' Questions 15 and 58

15.    In the form of the table below or through the production of documents, for each At-Issue Product, provide the total amount of money that You spent on the At-Issue Product for members enrolled in Your Health Plan for each year during the Time Period, the total Rebates received by You, and the total amount of Your members' out-of-pocket responsibility:

October 18, 2024
Page 8



| At-Issue Product | Year | Total Number of Scripts | Total Spent by You | Total Rebates Received | Your Member's Out-of-Pocket Responsibility |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

58.     In the table below, identify the out-of-pocket costs paid by Your citizens in connection with the At-Issue Products for each year.

       *iii. Argument*

Defendants' proposed Question 15 requires every State AG Plaintiff to provide its Health Plan "Member's Out-of-Pocket Responsibility," while Question 58 goes even further and requires the same information for every diabetic citizen in the State. Plaintiffs' proposed Question 15, however, is identical to the Court-ordered SFP PFS and requires only States that have asserted claims on behalf of their Health Plans to answer and omits the member out-of-pocket requirement. *See* ECF No. 315, Ex. 1 at Question 11.

Notably, the Court has already ruled on the "out-of-pocket" issue in the SFP track, recognizing that a "balance exists between the parties' respective positions that considers the burdens imposed and the need to timely exchange information" and, accordingly, holding that "the request for a member's out-of-pocket responsibility should be reserved for a later state of discovery." Order Regarding Fact Sheets, ECF No. 291 at 5.

The Court's Order Regarding SFP Fact Sheets holding applies with even more force here. Defendants' Question 15 would require every State—regardless if they have asserted Health Plan claims and regardless if the Attorney General is empowered to represent the Plan—to gather out-of-pocket information for each member of multiple different plans and from multiple different non-party agencies. Defendants' Question 58 would be even more burdensome, requiring each State AG Plaintiff to gather the out-of-pocket costs for every single diabetic in the State. Moreover, Plaintiffs' proposal already provides a summary of damages that each State is seeking on behalf of it citizens, which would include damages related to out-of-pocket payments (Question 45). Requiring the State AGs to provide specific out-of-pocket amounts for each of its diabetic citizens beyond Question 45's summary



would be premature expert discovery, overburdensome at the PFS stage and would not assist in narrowing the issues for further discovery.

### c.    Defendants' requests for legislative material is inappropriate

Defendants' Question 22 requests for each Plaintiff to "[i]dentify any proposed legislation introduced during the Relevant Period that would lower or cap the out-of-pocket cost for the At-Issue Products, and whether or not that legislation was passed." Defendants' Question 32 asks if "You adopted the Affordable Care Act's Medicaid expansion?" Neither of these questions are appropriate for a PFS.

First, as explained above, the State legislatures are not parties to any of the State AG cases and thus are outside the scope of discovery. Moreover, information regarding proposed and passed legislation is publicly available information that is reasonably and equally accessible to both parties and thus is not an appropriate discovery request. *See* Fed. R. Civ. P. 26(b)(1); *In re Generic Pharms. Pricing Antitrust Litig.*, 699 F. Supp. 3d at 356 ("Certainly, Defendants can themselves obtain bills that were passed into law, and many other legislative materials are publicly available as well.")

Respectfully, Defendants Questions 22 and 32 should be rejected.

### d.    Defendants' request for information regarding "reliance" is not relevant

Plaintiffs' Question 29 and Defendants' Question 34 are the same except Defendants add a column requesting "whether or not You relied on the statement." Respectfully, the Court should adopt Plaintiffs' proposal.

Importantly, under most of the consumer protection laws asserted in the State AG track, reliance is not required. *See, e.g.*, ECF No. 190, State of Montana's Opp. to Manufacturers' Mot. to Dismiss at 11; State of Illinois' Opp. to Manufacturers' Mot. to Dismiss at 6. Thus, Defendants' proposed addition is not relevant to most States' claims. In addition, Plaintiffs' proposed Question 29 provides more than sufficient information related to the at-issue misrepresentations for the purposes of narrowing the issues and prioritizing cases for further discovery proceedings.

Respectfully, the Court should adopt Plaintiffs' proposed Question 29.



### e.    Defendants' request for premature expert discovery

Defendants' Question 36 asks Plaintiffs to identify "each and every WAC, list price, or other pricing figure that you allege is or was artificially inflated, false, fraudulent, misleading, or that otherwise forms the basis for the allegations in Your lawsuit, of which You are currently aware, including the approximate date the pricing figure was published or reported, the Defendant that published or reported the pricing figure, and a description of what You allege each WAC, list price, or other pricing figure should have been absent the allegedly wrongful conduct." This question is not appropriate at the PFS stage.

As an initial matter, this question is notably missing from the Court-order SFP PFS. Indeed, in the SFP track, the Court rejected Defendants attempt to obtain WAC specific information related to rebates as "overbroad for the purposes of the PFS process." Order Regarding Fact Sheets, ECF No. 291 at 6. Moreover, each State AG Plaintiff alleges in their complaints that every WAC price published during the Relevant Time Period pursuant to the Insulin Pricing Scheme is artificially inflated and false. And each State AG complaint also contains charts showing the inflated prices and approximate dates for each price increase taken pursuant to the Scheme. Requiring the Plaintiffs to restate this information, or provide more precise information or calculations related to specific overcharge amounts is inappropriate at the PFS stage and seeks premature expert discovery.

Respectfully, the Court should reject Defendants' Question 36.

### f.    Defendants' statute of limitation requests are inapplicable and irrelevant

Defendants propose to add several additional questions to the Timing of Awareness section beyond the Plaintiffs' proposal. In particular, Defendants' request information related to state and federal investigations (Question 44), and patient assistance programs (Questions 45 and 46).

Notably, as the Court has recognized in its Order Regarding the SFP Fact Sheets, the questions in this section seek information related to Defendants' statute of limitations defenses. ECF No. 291 at 8. And in most cases in the State AG track, limitations do not run against the State in consumer protection enforcement actions. *See, e.g. State of Mississippi v. Eli Lilly and Company, et al*., Case No. 3:21-cv-00674 (ECF No. 114 at 5 ("The State correctly notes that the statute of limitations

October 18, 2024
Page 11



does not run against the State in Mississippi.")). Thus, the questions in this section will not be applicable to many of the State AG Plaintiffs.

With respect Question 44, the Court has already rejected questions related to state and federal investigation in the Order Regarding PFS Fact Sheets, Dkt. 291 at 9. This ruling should apply here as well. With respect to Questions 45 and 46, the timing of the States' awareness of Defendants' patient assistance programs is irrelevant to the question of a State's awareness of Defendants' misconduct. Thus, even for States where limitations may apply, Questions 45 and 46 would be immaterial to assessing when a limitations period accrued.

### g. Defendants' *parens patriae* requests are premature and overburdensome

Defendants' Question 53 requests that each State provide the name, address and contact information of every citizen that the State intends to use to support its claims. This request is overburdensome and premature at the PFS stage. Indeed, each State's complaint alleges that every diabetic who paid for the At-Issue Products based on the prices generated by the Insulin Pricing Scheme was damaged by Defendants' misconduct. Further, as stated above, Plaintiffs' proposed PFS requests each Plaintiff to state whether they are seeking damages on behalf of individuals and to provide a summary of those damages (Question 45). Thus, Defendants know the scope of claimed damages alleged by each State. And while each State AG Plaintiff who intends to rely on individual diabetics as witnesses, for summary judgement, or at trial, certainly will have to identify these residents during the course of discovery, such disclosure is not required at this stage in the litigation, nor is it helpful in narrowing the issues or prioritizing cases for further proceedings.

Respectfully, the Court should reject Defendants' Question 53.

### III.    Conclusion

State Attorney General Track Plaintiffs respectfully request that the Court reject Defendants' proposed Plaintiff Fact Sheet ("PFS") and enter an order adopting Plaintiffs' proposed PFS (**Exhibit 1**)

October 18, 2024
Page 12



Respectfully submitted,

_____
Joanne M. Cicala
The Cicala Law Firm PLLC

_____
W. Lawrence Deas
Liston & Deas PLLC

_____
Walter G. Watkins
Forman Watkins & Krutz LLP

Enclosures

cc:    Counsel of Record (*via* ECF)