**SeegerWeiss LLP**
NEW YORK • NEW JERSEY • PHILADELPHIA • NEWTON, MA

January 28, 2025

**VIA ECF**

Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

      Re:    *In re: Insulin Pricing Litigation*, MDL No. 3080
              Case No. 2:23-md-03080-BRM-RLS
              <u>Current Discovery Disputes Involving PBM Defendants</u>

      Pursuant to the Court's January 14, 2025 Discovery Dispute Protocol (CMO #17) [ECF No. 386], Plaintiffs respectfully submit this letter regarding a fundamental discovery dispute that is materially impeding Plaintiffs' ability to advance discovery in this MDL: the PBM Defendants' unilateral limiting of their discovery obligations based on CMO #13's 90-day period for substantial completion of document productions.[1]

## BACKGROUND

      This case was initially centralized before this Court on August 3, 2023 [ECF No. 1]. After disputes regarding the initial discovery plan (CMO #10) [ECF No. 198] and ESI Order (CMO #11) [ECF No. 208], discovery formally opened on October 15, 2024, upon entry of CMO #13 [ECF No. 313]. In connection with CMO #13, the Court required Defendants to "begin a rolling production of documents and electronically stored information within 45 days after being served with Plaintiffs' Master RFPs, with substantial completion of Defendants' responsive document productions within 90 days after being served with Plaintiffs' Master RFPs." This substantial-completion deadline was a matter of dispute between the parties, and the Court adopted its reasonable schedule after considering the parties' submissions and argument on the matter. [ECF Nos. 269-270 & 313].[2]

---

[1] Plaintiffs had anticipated raising as an additional dispute the Manufacturer Defendants' continued refusal to produce deposition transcripts and exhibits from the *In re Insulin Pricing Consumer Class* case (an item Plaintiffs had raised with the Court during the last Case Management Conference). Earlier today, however, each of the Manufacturer Defendants agreed to produce those materials (without prejudice to both sides' positions regarding the use of those depositions in the MDL).

[2] Defendants' proposed schedule, by contrast, granted themselves approximately eight months (from October 2, 2024, to May 22, 2025) to substantially complete their production of

Plaintiffs served their Master RFPs on each of the Manufacturer Defendants and certain PBM Defendants on October 28, 2024. These Defendants were therefore required under CMO #13 to substantially complete their document productions by January 27, 2025. That deadline has now passed, with the PBM Defendants falling far short of complying with their obligations. Worse, Defendants have exploited this substantial-completion deadline to attempt to skirt their discovery obligations and stonewall Plaintiffs' efforts to advance discovery.

## DISCOVERY DISPUTES

1. **The PBM Defendants' exercise of self-help based on the substantial-completion deadline has frustrated the Court's directive for an "iterative and cooperative approach" to discovery.**

Each of the PBM Defendants has taken the position that the 90-day period for substantial completion requested by Plaintiffs and adopted by the Court has somehow diminished their discovery obligations under the Federal and Local Rules and the Court's ESI Order. Rather than attempt to meet the Court's deadline, or propose a reasonable extension of that deadline for Plaintiffs' consideration, the PBM Defendants have maintained that their discovery obligations in this MDL are narrowly limited to what they unilaterally determine is "proportional" to that deadline.[3] This position has thwarted Plaintiffs' ability to make any kind of meaningful progress with the PBM Defendants in negotiations regarding data sources, search terms, and various additional discovery disputes.

For example, this Court's ESI Order requires there to be an "iterative and cooperative approach with respect to the identification of relevant custodians and information sources." ESI Order § V.  Each PBM Defendant is required to "*identify and propose to [Plaintiffs] an initial list of search terms, custodians, custodial data sources, and non-custodial data sources that are likely to contain responsive documents and ESI.*" *Id.* § V.A. (emphasis added). This Court specifically adopted Plaintiffs' proposal to include the foregoing language and "agree[d] with Plaintiffs that 'an iterative and cooperative approach' as to identification of relevant custodians and information sources will help avoid after-the-fact challenges to the collection and search processes." Order Regarding Disputes Over ESI Protocol at 7 [ECF No. 186].

---

documents, while leaving Plaintiffs just over three months (until CMO #10's September 8, 2025 close of fact discovery) to accomplish the far greater magnitude of discovery that follows the substantial completion date—*e.g.*, the review, analysis, and synthesis of those documents, as well as the necessary expert and third-party consultation, follow-up discovery, and depositions dependent on such productions.

[3] The proportionality analysis under Rule 26(b)(1) makes no mention of court-ordered timeframes to complete discovery. Rather, proportionality "consider[s] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Each of these factors weighs heavily against the PBMs' position here.

The PBM Defendants' approach here runs directly counter to the Court's directive. The PBMs have staunchly refused to identify their custodians custodial and non-custodial data sources likely to possess responsive information. Instead, the PBM Defendants have stated that they would restrict their identification and collection of custodial and non-custodial documents in light of the Court's substantial completion-deadline.[4] For example:

- **Express Scripts** has repeatedly taken the position that "Plaintiffs' decision to demand a 90-day substantial completion deadline for document discovery has denied the parties the resource of time for completing custodial document discovery, and any proportional custodial proposal must abide by the simple realities imposed by the time constraints Plaintiffs have adopted for document discovery in this litigation." Ex. 1.[5] On that basis, Express Scripts has proposed to collect and search the data of just *seven custodians* (and has refused to identify *any* non-custodial data sources).[6] Express Scripts has confirmed that "[a]bsent a change to the substantial completion deadline, Express Scripts cannot entertain any expansion of the custodial search Plaintiffs have proposed." *Id.*

- **Optum** has expressed to Plaintiffs during the parties' conferrals that it intended to limit its collection of custodial and non-custodial documents in light of the Court's substantial-completion deadline. Optum has proposed just 12 custodians but has failed to even attempt to meet its discovery obligations as to those custodians. Nor has Optum identified any non-custodial data sources containing responsive information.[7]

- **CVS** initially proposed on December 13, 2024, to search just *seven custodians*, noting that its proposal was "informed by the deadlines set forth in CMO #13." In rejecting a follow-up request by Plaintiffs that CVS comply with the ESI Order and identify all individuals possessing responsive information, CVS reiterated that its proposal was "commensurate with the 90-day substantial completion deadline." Ex. 2. This afternoon (after the deadline for substantial completion), CVS proposed eight additional custodians (for a total of 15 custodians). Thereafter, later this evening, CVS for the first time

---

[4] Since the last Case Management Conference on January 14, 2025, the PBMs' positions have been less uniform. But while some have made more progress (or commitments) than others, each has expressed that they would not provide fulsome discovery unless either Plaintiffs agreed to their slimmed-down proposals or the substantial-completion deadline was extended.

[5] All citations to "Ex. __" refer to exhibits to the Declaration of David R. Buchanan dated January 28, 2025.

[6] By comparison, in the Opioids MDL, Express Scripts agreed search over 55 custodians. Similarly, in the *AFFF* MDL, 3M agreed to search for over 55 custodians. And in the *JUUL* MDL, JUUL Labs produced custodial files for 89 custodians (not including additional custodial files for deponents).

[7] Plaintiffs respectfully refer the Court to Plaintiffs' submission regarding "Current Discovery Disputes Involving Optum" for a detailed discussion regarding Optum's discovery deficiencies.

identified certain "non-custodial sources for the non-custodial documents it has agreed or will agree to produce."

None of the PBM Defendants has described with any particularity *why* it could not meet the Court's substantial-completion deadline, or the steps that would have needed to be taken to meet the Court's deadline. Nevertheless, Defendants' compliance was undoubtedly achievable had they seriously endeavored to meet the Court's deadline rather than object and delay.

The district court's decision in *In re 3M Combat Arms Earplug Products Liability Litigation* is instructive. There, 3M argued—as the PBMs do here—that it could not "complete the steps necessary to produce the additional information" by the court's substantial-completion deadline. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2019 WL 5065194, at *5 (N.D. Fla. Oct. 9, 2019). Although the district court had "no doubts that additional time (and expense) [would] be necessary to produce" the requested documents, "when taking into account the amount in controversy in this case—which by all accounts is very substantial—Defendants' resources and the likely benefit of" the requested discovery, the court found that "the benefit far outweigh[ed] the burden and expense of producing the additional discovery." *Id.*

These considerations apply even more compellingly here. This case is now one of the largest MDLs in the country. It involves millions of covered lives, nearly 500 self-funded health plans, and 14 states, collectively alleging billions of dollars in overcharges relating to the at-issue diabetes medications. The scope of discovery is necessarily broad—including 26 at-issue drugs, 21 of some of the largest corporations in the country, and an alleged conspiracy with a Court-approved discovery period extending back to 2011.[8]

Nevertheless, had the PBM Defendants maintained legitimate concerns about their ability to meet the Court's substantial-completion deadline, it was incumbent upon them to either deploy the necessary resources to meet that deadline (as the court recognized would be necessary in *3M*) or seek appropriate relief from the Court. The PBM Defendants have done neither.

Finally, to be clear, Plaintiffs do not object to a reasonable extension for the PBM Defendants to fully comply with their discovery obligations. But the PBM Defendants are better positioned to determine what steps must still be taken (and the corresponding time required) to properly respond to Plaintiffs' requests under the Federal and Local Rules and the Court's ESI Order. This includes the identification of data sources containing responsive information and the

---

[8] Moreover, a substantial amount of the PBMs' work to collect and review relevant documents and ESI may already be complete. In fact, in Express Scripts' recent lawsuit against the Federal Trade Commission regarding the FTC's interim report finding that PBMs were responsible for inflating drug costs, Express Scripts alleged that the PBMs had already produced "millions of documents and several terabytes of data." *Express Scripts, Inc. v. Federal Trade Commission, et al.*, Case 4:24-cv-01263 (E.D. Mo.), ECF No. 1, Compl. ¶ 10. Express Scripts further acknowledged that it had itself already "devoted substantial resources to complying with the FTC's demands, spending millions of dollars and tens of thousands of hours to respond to the FTC's demands" and had "produced over 3.3 million pages of documents and more than 769 million rows of data" to the FTC. *Id.* ¶ 52.

collection, review, and production of documents from the appropriate custodial and non-custodial sources agreed upon by the parties after conferral.

Should a reasonable extension be necessary, Plaintiffs respectfully request that the Court set certain benchmarks for compliance to ensure that meaningful discovery progress is made. For example, Plaintiffs request that the Court set interim deadlines for (i) the completion of negotiations regarding search terms, (ii) disclosures of custodians and custodial and non-custodial sources, (iii) selection of custodians and custodial and non-custodial sources and corresponding productions, and (iv) meet-and-confers regarding the PBMs' responses and objections to Plaintiffs' Master RFPs and Interrogatories. Plaintiffs are justifiably concerned that, absent these benchmarks, discovery against the PBMs will remain indefinitely protracted.

## CONCLUSION

Despite numerous conferrals, the parties have been unable to resolve this threshold dispute. Plaintiffs therefore respectfully request that the Court: (1) direct the PBM Defendants to comply with their obligations under the Federal and Local Rules and the Court's ESI Order, including by (a) identifying any "custodians, custodial data sources, and non-custodial data sources that are likely to contain responsive documents and ESI" and (b) with respect to responsive data contained in a database or other Structured Data (as defined in the ESI Order) or aggregated data source or otherwise maintained by an application, providing "information concerning such databases to facilitate discussions on productions and production format, including available data fields/objects and schema" (ESI Order §§ V & VIII); and (2) to the extent it deems it appropriate, provide a reasonable extension of the substantial-completion deadline for document discovery with appropriate interim benchmarks to ensure that any such extended deadline is met.

We thank the Court for its continued attention to these matters.

Respectfully submitted,

*s/ Joanne Cicala*
Joanne Cicala

*Liaison Counsel for*
*State Attorney General Track*

*s/ David R. Buchanan*
David R. Buchanan

*Liaison Counsel for*
*Self-Funded Payer Track*

*s/ Matthew Gately*
Matthew Gately

*Liaison Counsel for*
*Class Action Track*

cc:    Counsel of Record (via ECF)