

**SEEGERWEISS** LLP

NEW YORK · NEW JERSEY · PHILADELPHIA · NEWTON, MA

January 28, 2025

**VIA ECF**

Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

> **Re:** ***In re: Insulin Pricing Litigation*, MDL No. 3080**
> **No. 2:23-md-03080-BRM-RLS**
> **Current Discovery Disputes Involving Express Scripts**

Plaintiffs submit this letter, pursuant to the Court's Discovery Dispute Protocol (CMO #17) [ECF No. 386], to address certain outstanding discovery disputes that Plaintiffs have been unable to resolve with Defendants Express Scripts, Inc., Medco Health Solutions, Inc., and Express Scripts Administrators, LLC (collectively, "Express Scripts").

**INTRODUCTION**

Plaintiffs served their First Set of Master Requests for Production of Documents ("Master RPDs") on Express Scripts on October 28, 2024, shortly after the Court opened fact discovery on October 15, 2024. *See* CMO #13 [ECF No. 313]. Since then, notwithstanding Plaintiffs' robust attempts at conferral, there are four threshold discovery disputes that the parties have been unable to resolve.

*First*, Express Scripts (along with each of the other PBM Defendants) has taken the position that the 90-day period for substantial completion requested by Plaintiffs and adopted by the Court has somehow lessened their discovery obligations under the Federal and Local Rules and the Court's ESI Order. Express Scripts' improper exercise of self-help, including its refusal to engage in any meaningful dialogue about expanding its initial custodian and search-term proposals in light of the deadline (or to seek relief from the Court's 90-day timeframe) has been the root cause of the parties' inability to make progress on their outstanding discovery disputes.[1]

*Second*, seven weeks after receiving Plaintiffs' Master RPDs, Express Scripts disclosed its intent to use technology assisted review ("TAR") to cull ESI potentially responsive to Plaintiffs' Master RPDs. Consistent with the Court's ESI Order, Plaintiffs have attempted to confer with Express Scripts in good faith "regarding how such technologies will be implemented." ESI Order § V.B (CMO #11) [ECF No. 208]. But Express Scripts has refused to

---

[1] Plaintiffs incorporate by reference their discussion of this issue set forth in their "Current Discovery Disputes Involving PBM Defendants" submission filed in conjunction with this letter.

provide crucial information regarding its proposed implementation of TAR and, further, has now taken the position that the parties' inability to agree on TAR implementation renders any further conversation regarding search terms or custodians premature. The parties' impasse on TAR implementation has therefore resulted in an impasse on search terms and custodians as well.

*Third*, to facilitate a meaningful conferral process on non-custodial data, Plaintiffs have repeatedly requested that Express Scripts comply with the ESI Order and disclose non-custodial data sources (*e.g.*, shared drives, folders, servers, Salesforce, company intranet, databases, structured or aggregated data sources, or applications) likely to contain responsive information. To date, however, Express Scripts has refused to make *any* such disclosure, notwithstanding this Court's directive that there be an "iterative and cooperative approach" as to the identification of relevant data sources to "help avoid after-the-fact challenges to the collection and search processes." Order Regarding Disputes Over ESI Protocol at 7 [ECF No. 186]. The parties appear unable to resolve this dispute, as Express Scripts maintains that it has fully complied with its obligations under the ESI Order, as well as the Federal and Local Rules.

*Finally*, as a result of the foregoing disputes, the pace of Express Scripts' production is unacceptable. To date, Express Scripts has produced just over 2,300 documents (plus an additional 3,6344 pages on yesterday's substantial-completion deadline)—*inclusive of all prior productions made by Express Scripts in all cases now part of this MDL*. Prior to yesterday's production, Express Scripts' two rolling productions in this MDL totaled 468 and 66 documents, respectively.

In sum, Express Scripts' resistance to participating in discovery thus far—especially in an MDL like this one, involving millions of covered lives, nearly 500 self-funded health plans, and 14 states collectively alleging billions of dollars in overcharges relating to diabetes medications—is improper, and Court involvement is required.

## BACKGROUND OF CONFERRALS

Plaintiffs served their First Set of Master RPDs on Express Scripts on October 28, 2024, under CMO #13. Three weeks later, shortly before Express Scripts was due to serve its responses and objections, Plaintiffs requested (pursuant to Section V of the ESI Order and Local Civil Rule 26.1(d)) that Express Scripts (i) identify its proposed search methodology, (ii) identify custodians and custodial and non-custodial data sources containing responsive information, and (iii) propose an initial list of search terms (in the event Express Scripts elected to use search terms to identify potentially responsive documents and ESI). Express Scripts served its responses and objections to Plaintiffs' First Set of Master RPDs on November 27, 2024.

### A. The First Conferral (December 6, 2024) and Follow-Up

The parties had their first video conferral on December 6, 2024. One week later, Plaintiffs again requested that Express Scripts identify custodians and custodial and non-custodial data sources with responsive information and propose an initial set of search terms.

On December 16, 2024, seven weeks after receiving Plaintiffs' Master RPDs, Express Scripts eventually provided an "Initial Disclosure Regarding Custodians and Search Procedures for Certain ESI." *See* Ex. 3.[2] Express Scripts' disclosure provided the following:

- **Custodians.** Express Scripts identified just *seven* custodians. Express Scripts explained that its identification of only seven custodians was "[i]n light of the January 27, 2025 deadline for the substantial completion of Defendants' production of responsive documents that Plaintiffs requested to include in the Case Management Order." *Id.*[3]

- **Non-Custodial Sources.** Express Scripts' disclosure failed to identify any non-custodial sources.

- **Search Terms.** Express Scripts proposed search terms; however, these proposed search terms were merely the same set of search terms that the State of Mississippi had provided to Express Scripts in July 2023—one month before this MDL was formed.

- **TAR.** Express Scripts disclosed its intent to layer TAR on top of its proposed search terms to further cull documents and ESI for further review and potential production. But Express Scripts' disclosure was devoid of any detail as to how it planned to implement TAR. *Id.* Rather, the disclosure provided, in its totality:

  > Express Scripts intends to use Morgan Lewis attorneys familiar with this litigation to iteratively train a TAR model to identify potentially responsive ESI. Morgan Lewis attorneys will validate Express Scripts' productions upon completion of such productions. Express Scripts presently intends to utilize Reveal's Brainspace predictive coding software in implementing such TAR modeling.

  *Id.*

Express Scripts' transmittal email reiterated that its "proposal accounts for the January 27, 2025 substantial completion deadline for document production that Plaintiffs advocated for and successfully convinced the Court to include in CMO No. 13." Ex. 4. Express Scripts also indicated that it: (i) "continues to investigate potential non-custodial sources that may contain responsive information," (ii) "intends to disclose them as required by the ESI Protocol," and (iii) "intends to produce certain Structured Data subject to the parties' further meet and confer regarding the scope of claims data requested." *Id.*

---

[2] All citations to "Ex. __" refer to exhibits to the Declaration of David R. Buchanan dated January 28, 2025.

[3] By comparison, in the Opioids MDL, Express Scripts agreed to search over 55 custodians. Similarly, in the *AFFF* MDL, 3M agreed to search for over 55 custodians. And in the *JUUL* MDL, JUUL Labs produced custodial files for 89 custodians (not including additional custodial files for deponents).

**B. The Second Conferral (December 19, 2024) and Follow-Up**

The parties had their second video conferral on December 19, 2024. During that conferral, Express Scripts reiterated its position that its proposal of just seven custodians was appropriate in light of the substantial-completion deadline.

Regarding TAR, Plaintiffs requested additional information on Express Scripts' methodology. Express Scripts, however, either was unprepared or refused to engage in that conversation and instead requested that Plaintiffs provide questions in writing following the conferral. Plaintiffs agreed and, following the holiday break on December 31, 2024, posed specific written questions regarding Express Scripts' search-term validation processes and potential implementation of TAR. *See* Ex. 5 & 6. In addition, given Express Scripts' continued refusal to identify the custodians likely to possess responsive information—and to attempt to advance the parties' conferral regarding custodians and custodial data sources—Plaintiffs provided Express Scripts with a non-exhaustive list of 51 additional Express Scripts employees who appeared to possess responsive information.

On January 9, 2025, Express Scripts provided some additional information limited to its seven proposed custodians (titles/years, general areas of knowledge, and applicable RFPs) but otherwise stood on its minimal proposal of seven custodians, justifying its refusal on the grounds that "Plaintiffs' decision to demand a 90-day substantial completion deadline for document discovery has denied the parties' the resource of time for completing custodial document discovery, and any proportional custodial proposal must abide by the simple realities imposed by the time constraints Plaintiffs have adopted for document discovery in this litigation." Ex. 1. Express Scripts further stated that, "[a]bsent a change to the substantial completion deadline, Express Scripts cannot entertain any expansion of the custodial search Plaintiffs have proposed. That said, we are continuing to review Plaintiffs' list to evaluate the proposed individuals in the event Plaintiffs seek relief from the substantial completion deadline they selected to govern discovery." *Id.*

In response to Plaintiffs' questions on the potential implementation of TAR, Express Scripts explained that "Plaintiffs' queries regarding richness assessments, review cutoffs, recall rates, and validation processes are premature when Plaintiffs have yet to accept Express Scripts' proposal regarding custodians and search terms." *Id.* Express Scripts then provided the following limited information, which Express Scripts maintains is responsive to Plaintiffs' questions and fully satisfies its obligation under the ESI Order to "meet and confer with [Plaintiffs] regarding how such [TAR] technologies will be implemented":

> Although not required by the ESI Protocol, Express Scripts can further share that it presently intends to use the CMML model feature of the Brainspace software, and its conceptual diversity/diverse active training features, and also the Brainspace criteria for identifying records subject to, and excluded from, TAR modeling. For those records Brainspace identifies as not amenable to TAR, reviewing attorneys will review those records. Express Scripts can further state that it does not intend to use generative AI to further cull beyond TAR.

4

*Id.* Express Scripts also refused to answer Plaintiffs' questions regarding its search-term validation processes on the grounds that the terms were proposed by the State of Mississippi. *Id.*

On January 15, 2025, notwithstanding Express Scripts' position that it would not entertain any expansion of its custodial proposal in light of the substantial-completion deadline, Plaintiffs attempted to advance the parties' discussions on appropriate custodians by providing additional information regarding the 51 additional Express Scripts employees that Plaintiffs had identified as likely to possess responsive information (previously provided to Express Scripts on December 31, 2024). Plaintiffs also (i) provided a search-term counterproposal and (ii) requested an additional conferral on January 21, 2025, to attempt to finalize search terms and to discuss why, in Express Scripts' view, conferral regarding Express Scripts' anticipated implementation of TAR—including, for example, discussion of richness assessments, recall rates, review cutoffs, and validation—needed to be delayed. Plaintiffs requested that Express Scripts secure the attendance of its E-discovery liaison at the conferral to be prepared to discuss these issues. Plaintiffs also requested that Express Scripts reconsider its refusal to expand its list of custodians beyond just seven.

### C.  The Third Conferral (January 21, 2025) and Follow-Up

The parties had their third video conferral last week on January 21, 2025. During that conferral, Express Scripts reiterated its position that it had no further obligation to provide Plaintiffs with additional information as to how Express Scripts intended to employ TAR methodologies to collect and produce responsive documents. Express Scripts confirmed its position that any further conversation regarding search terms or custodians would be premature unless Plaintiffs agreed to Express Scripts' TAR methodology based on the information Express Scripts had provided. Despite its staunch refusal to answer Plaintiffs' initial questions on TAR, Express Scripts again (during this conferral, and again on January 24, 2025) invited Plaintiffs to identify any *additional* questions to Express Scripts in writing regarding their use of TAR.

Plaintiffs reiterated their request (previously made on November 9 and December 14, 2024) for a disclosure of Express Scripts' non-custodial sources of information. To date, however, no such disclosure has been provided.

In an attempt to break the parties' apparent impasse and advance the discussion on TAR, Plaintiffs consulted with Professor Maura Grossman, a globally recognized leader on TAR issues. In consultation with Professor Grossman, on January 24, 2025, Plaintiffs made a straightforward proposal regarding Express Scripts' use of TAR, which incorporated the limited information Express Scripts had already shared and added specific provisions to ensure that Express Scripts implementation of TAR would be consistent with a sound TAR workflow and validation process. *See* Ex. 7.[4]  On January 27, 2025, without articulating any specific issues with

---

[4] In support of this submission, Plaintiffs are filing simultaneously herewith the Declaration of Maura R. Grossman, J.D., Ph.D., which provides an overview of her substantial experience in this field, as well as the key TAR issues in dispute between the parties and an explanation as to why Plaintiffs' proposal is reasonable, proportional, and consistent with other district court decisions addressing similar TAR-related disputes.

Plaintiffs' proposal, Express Scripts advised Plaintiffs that it was "not aligned" on certain undefined "aspects" of Plaintiffs' proposal but was "amenable to further conversation." Express Scripts also requested a counterproposal on custodians prior to conferring further on TAR. *Id.*

1. **Express Scripts' self-help based on the substantial-completion deadline has frustrated the Court's directive for "iterative and cooperative approach" to discovery.**

This discovery dispute is generally applicable to all PBM Defendants. To avoid repetition among their submissions, Plaintiffs respectfully refer the Court their discussion of this issue in their "Current Discovery Disputes Involving PBM Defendants" letter filed simultaneously herewith, which discusses the PBM Defendants' unilateral limiting of their discovery obligations in light of the Court's substantial-completion deadline.

2. **Express Scripts' black-box TAR proposal is improper.**

Section V.B. of the ESI Order specifically requires any party proposing to use TAR to "meet and confer with the Requesting Party regarding *how such technologies will be implemented*, before the Producing Party employs any TAR." (emphasis added). This Court's ESI Order is in accord with the "long line of cases hold[ing] that TAR requires '*an unprecedented degree of transparency and cooperation among counsel in the review and production of ESI responsive to discovery requests.*'" *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 337 F.R.D. 610, 622 (D.N.J. 2020) (emphasis added) (quoting *Progressive Casualty Ins. Co. v. Delaney*, 2014 WL 3563467 (D. Nev. July 18, 2014)). *See also In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*, 2022 WL 16630821, at *3 (D.N.J. Oct. 25, 2022) (same; noting that transparency is the "overriding principle" when using TAR).

Here, since Express Scripts first disclosed its intent to use TAR on December 16, 2024, Plaintiffs have repeatedly sought (and Express Scripts has staunchly opposed providing) information to allow the parties to substantively confer as to how Express Scripts' TAR process would be implemented. This is what the ESI Protocol and relevant caselaw require. When Plaintiffs posed targeted questions regarding fundamental TAR concepts—including review cutoffs, recall rates, and validation—these questions were rebuffed.

Nevertheless, to attempt to solve for Express Scripts' failure to share information, and taking a compromised approach, Plaintiffs made an uncontroversial proposal regarding Express Scripts' use of TAR, backed by renowned TAR scholar Maura Grossman, which incorporated the limited information Express Scripts had already shared and supplemented it with specific guardrails to ensure Express Scripts' approach would be implemented in accordance with sound TAR principles and validation processes. Plaintiffs' proposal accounts for essential features of a TAR workflow: training the TAR model, stopping criteria for review, and validating the TAR model. *See* Ex. 7. *See also* Declaration of Maura R. Grossman, J.D., Ph.D.

In response to Plaintiffs' proposal, aside from vaguely indicating that Express Scripts was "not aligned" on certain undefined "aspects" of Plaintiffs' proposal, Express Scripts failed to address the specifics of Plaintiffs' concept.  And while Plaintiffs appreciate Express Scripts' (eleventh-hour) overture to finally discuss its proposed TAR process, and remain willing to

confer with Express Scripts regarding its TAR process, Express Scripts has, to this point, resisted any measure of transparency regarding its proposed implementation of TAR.

In the event the parties are unable to reach compromise on this issue, Plaintiffs respectfully request that the Court adopt Plaintiffs' TAR proposal, which was crafted in consultation with a globally recognized TAR scholar, is eminently reasonable under the circumstances (as set forth in Professor Grossman's declaration), and is consistent with the approach taken by several federal courts that have addressed similar disputes.

**3. Express Scripts has violated the ESI Order by failing to disclose non-custodial data sources.**

In the 90 days since Express Scripts received Plaintiffs' Master RPDs, Express Scripts has failed and refused to identify *any* non-custodial data sources possessing responsive information. Under Section V.A of the ESI Order, Express Scripts is required to "*identify and propose to [Plaintiffs] an initial list of search terms, custodians, custodial data sources, and non-custodial data sources that are likely to contain responsive documents and ESI.*" (emphasis added). For responsive data contained in a database or other Structured Data or aggregated data source or maintained by an application, Express Scripts is further obligated under Section VIII of the ESI Order to provide "information concerning such databases to facilitate discussions on productions and production format, including available data fields/objects and schema." *Id.* § VIII.

In entering the ESI Order, this Court specifically adopted Plaintiffs' proposal to include the foregoing language and "agree[d] with Plaintiffs that 'an iterative and cooperative approach' as to identification of relevant custodians and information sources will help avoid after-the-fact challenges to the collection and search processes." Order Regarding Disputes Over ESI Protocol [ECF No. 186] at 7. Plaintiffs are entitled to complete disclosure of this information so that the parties can meaningfully confer as to the most appropriate data sources for collection and review.

In contravention of the Court's Order, however, Express Scripts has not disclosed *any* non-custodial data source likely to contain responsive documents and ESI, despite repeated requests from Plaintiffs. And while Express Scripts stated on December 16, 2024, that it "continues to investigate potential non-custodial sources that may contain responsive information" and "intends to disclose them as required by the ESI Protocol" (Ex. 4), Express Scripts has failed to do so.

Having received no such disclosure, Plaintiffs again raised this issue last week during the parties' third conferral. Remarkably, during this conferral, as well as in their follow-up correspondence to Plaintiffs on January 24, 2025, Express Scripts feigned ignorance as to the nature of Plaintiffs' request, suggesting for the first time that it "understood Plaintiffs' prior requests for disclosure of "non-custodial sources" to be directed toward relevant "databases and structured, aggregated, or application data," and arguing that "*Express Scripts is not obligated to and will not engage in the burdensome exercise of identifying every non-custodial source of*

*information within its corporate organization, nor do we believe discovery regarding discovery is appropriate here*." Ex. 8 (emphasis added).[5]

Express Scripts' position is unfounded. Express Scripts is fully aware of its obligations, as well as the nature of Plaintiffs' request. It has been aware for months and even *acknowledged* its understanding in its December 16, 2024 correspondence—in which it confirmed that it was "continu[ing] to investigate potential non-custodial sources that may contain responsive information" and would "disclose them as required by the ESI Protocol." Ex. 4.

In accordance with the ESI Order, the Court should direct Express Scripts (i) to identify "non-custodial data sources that are likely to contain responsive documents and ESI," and (ii) with respect to data contained in a database or other Structured Data or aggregated data source or maintained by an application (as defined in the ESI Order), to provide "information concerning such databases to facilitate discussions on productions and production format, including available data fields/objects and schema." *See* ESI Order §§ V.A., VIII (CMO #11).

### 4. Express Scripts' production to date is inadequate.

Finally, Express Scripts has produced a total of 2,386 documents (plus an additional 3,634 additional pages of documents as part of their "substantial completion" production yesterday)—magnitudes less than every other Defendants in this MDL. Moreover, of the 2,386 documents that had been produced before yesterday, *only 534* are documents that are new to this litigation (and not from prior productions).

And notwithstanding yesterday's substantial-completion deadline, Express Scripts confirmed that it would not make any custodial production based on its position that resolution on TAR is a threshold issue. Its ongoing delay—and failure to make significant "rolling" productions in compliance with CMO #13—must be addressed.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order (1) directing Express Scripts (i) to identify "non-custodial data sources that are likely to contain responsive documents and ESI," and (ii) with respect to data contained in a database or other Structured Data or aggregated data source or maintained by an application (as defined in the ESI Order), to provide "information concerning such databases to facilitate discussions on productions and production format, including available data fields/objects and schema "(ESI Order §§ V.A., VIII); and (2) adopting Plaintiffs' TAR proposal, in the event that the parties are unable to reach compromise regarding Express Scripts' implementation of TAR. *See* Ex. 7; Declaration of Maura R. Grossman, J.D., Ph.D.

---

[5] In other words, for an MDL of this size and scope, involving an alleged conspiracy dating back to 2011, nearly two dozen Defendants, 26 diabetes drugs at-issue, and Plaintiffs representing millions of covered lives, Express Scripts has proposed *seven* total custodians and no non-custodial data sources—notwithstanding that potential non-custodial sources, including shared drives, folders, Salesforce or applications, may contain highly relevant and responsive information.

We thank the Court for its continued attention to these matters.

Respectfully submitted,

<u>*s/ Joanne Cicala*</u>
Joanne Cicala
*Liaison Counsel for*
*State Attorney General Track*

<u>*s/ David R. Buchanan*</u>
David R. Buchanan
*Liaison Counsel for*
*Self-Funded Payer Track*

<u>*s/ Matthew Gately*</u>
Matthew Gately
*Liaison Counsel for*
*Class Action Track*

cc:    Counsel of Record (via ECF)