David R. Buchanan
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
(973) 639-9100
dbuchanan@seegerweiss.com

*Co-Lead Counsel for Self-Funded Payer Track*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case 2:23-md-03080-BRM-RLS** <br> **MDL No. 3080** |
| **THIS DOCUMENT RELATES TO: ALL CASES** | **JUDGE BRIAN R. MARTINOTTI** <br> **JUDGE RUKHSANAH L. SINGH** |

### DECLARATION OF DAVID R. BUCHANAN

Pursuant to 28 U.S.C. 1746, I, David R. Buchanan, hereby declare as follows:

1. I am attorney at law of the State of New Jersey, admitted to practice in this Court, and a partner with the law firm of Seeger Weiss LLP. I am Co-Lead Counsel for the Self-Funded Payer Track in this action. I submit this declaration in connection with the Plaintiffs submissions of this date pursuant to the Court's January 14, 2025 Discovery Dispute Protocol (CMO #17) [ECF No. 386].

2. To the best of my knowledge, information, and belief, attached hereto as Exhibits 1 through 8 are true and correct copies of the following documents:

| EXHIBIT | DOCUMENT DESCRIPTION |
|---|---|
| 1 | Copy of email correspondence dated January 9, 2025 from counsel for Express Scripts to counsel for Plaintiffs. |
| 2 | Copy of email correspondence dated January 8, 2025 from counsel for CVS to counsel for Plaintiffs. |

| EXHIBIT | DOCUMENT DESCRIPTION |
|---------|----------------------|
| 3 | Express Scripts' Initial Disclosure Regarding Custodians and Search Procedures for Certain ESI (sent December 16, 2024). |
| 4 | Copy of email correspondence dated December 16, 2024 from counsel for Express Scripts to counsel for Plaintiffs. |
| 5 | Plaintiffs' Search Term Validation Questions to Express Scripts (sent December 31, 2024). |
| 6 | Plaintiffs' questions to Express Scripts regarding potential implementation of TAR (sent December 31, 2024). |
| 7 | Copy of email correspondence dated January 24, 2025, from counsel for Plaintiffs to counsel for Express Scripts. |
| 8 | Copy of email correspondence dated January 24, 2025, from counsel for Express Scripts to counsel for Plaintiffs. |

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 28, 2025                          *s/ David R. Buchanan*
                                                  David R. Buchanan

# EXHIBIT 1

| | |
|---|---|
| **Subject:** | RE: Insulin Pricing MDL - Meet and confer on Express Scripts discovery responses |
| **Date:** | Thursday, January 9, 2025 at 2:51:31 PM Eastern Standard Time |
| **From:** | Harvey, Patrick A. |
| **To:** | Josh Wackerly, Scherr, Jason R., Levy, Lindsey, Compton, Meredith L. |
| **CC:** | Joanne Cicala, Johan Conrod, Trey Watkins, Tanya Ellis, Lawrence Deas, William Liston III, Matthew McDonald, bbogle@levinlaw.com, Steven Daroci, Tal J Lifshitz, David Buchanan, Benjamin Widlanski, Mark Pifko, Shayna, mdearman@rgrdlaw.com, Pearl Robertson, myeates@ktmc.com, Erich Schork, Jon Neumann, Matthew Gately, Kelly Rinehart, Mike Roberts, Brandon Sadowsky, Robert L. Salim, Karen Sharp Halbert - Roberts Law Firm, P.A. (karenhalbert@robertslawfirm.us), Shelbi Flood, John Alden Meade, Lisa Causey-Streete, Ackerman, Ethan |
| **Attachments:** | image004.png, image005.png, image001.jpg, RE: Insulin Pricing MDL - Meet and confer on Express Scripts discovery responses.eml, Re: The State of Mississippi, Ex Rel. Lynn Fitch Attorney General v. Eli Lilly and Company et al--search terms, custodians.eml |

Counsel:

Thank you for your December 31, 2024 email. We appreciate your patience as the snowstorm in the D.C. area delayed our ability to respond to your email sent on New Years' Eve. Some of the questions posed below were addressed by Lindsey Levy's December 23 email sent to you and other Plaintiffs' counsel, so we attach them here for reference. Nevertheless, we respond to your points below.

First, Plaintiffs have asked for additional information regarding the primary custodians Express Scripts identified as a priority in its December 16, 2024 Initial Disclosure Regarding Custodians and Search Procedures for Certain ESI. The Stipulation and Order Governing the Production of Electronically Stored Information and Hard Copy Documents (ECF No. 208) ("ESI Protocol") requires the parties to "identify and propose . . . an initial list of . . .custodians." *Id.* § 5.A. Express Scripts did that.

Nevertheless, and despite Plaintiffs' failure to include the information they now demand in their own custodial counterproposal, Express Scripts below provides additional information regarding the previously disclosed primary custodians. Our willingness to provide the information below for these primary custodians, as a courtesy, does not indicate that Express Scripts will agree in the future to provide information beyond what the parties have agreed.

| Name | Title (year) | Relevant Knowledge | Potential Responsive RFP |
|---|---|---|---|
| **Andrew Behm** | VP Office of Clinical Evaluation & Policy (2001–present) | Formulary Development | 10 |
| **Amy Bricker** | President, PBM (2020–2023); SVP Supply Chain and Drug Procurement (2018–2020); President Supply Chain (2017–2018); VP Supply Chain (2015–2017); VP Supply Chain Economics (2014–2015); VP Provider Contracting & Strategy | Insulin Manufacturer Relations/Formulary Development | 8, 10, 11, 12 |

| | | | |
|---|---|---|---|
| | (Feb 2014–July 2014); Sr. Director, Provider Contracting & Strategy (2012–2014); Sr. Director, Provider Audit (2010–2012) | | |
| **Harold Carter** | SVP Pharma Trade Relations (2022–present); Chief Pharma Trade Relations Officer (Feb 2022–Dec 2022); VP Pharma Trade Relations (2021–2022); VP, Pharma Contracting, Strategy & Wholesale Markets (2020–2021); Managing Director, Medical Strategy & Strategic Drug Sourcing (2019–2020); Senior Director, Clinical Solutions (2017–2019); Director, Clinical Solutions (2016–2017); Director, Trend Solutions (2015–2016); Sr. Clinical Consultant (2011–2015) | Formulary Development/Insulin Manufacturer Relations; Manufacturer Communications and Contracting | 8, 10, 11, 12 |
| **Adam Kautzner** | President of Express Scripts (2023–present); SVP Supply Chain (2022–2023); Chief Pharma Trade Relations Officer (2019–2022); VP Supply Chain Product and Strategy (2017–2019); VP Supply Chain Strategy (2016–2017); VP Drug Trend and Formulary Solutions (2014–2016); Senior Director, Drug Trend and Formulary Solutions (2012–2014); Director Trend Management (2010–2012); Clinical Product Manager (2008–2010) | Internal Documents and Analysis; Financial Evaluation of Formulary Development; Manufacturer Communications and Contracting | 8, 10, 11, 12 |
| **Julie Kitson** | Senior Clinical Program Manager (2024–present); VP Formulary Solutions (2019–2023); Sr. Clinical Director, Account Management (2012–2019); Clinical Director, Account Management (2009–2012); Clinical Account Executive (2003–2009) | Formulary Development | 10 |
| | VP Financial Planning and Analysis (2016–2018); VP Specialty Group Finance (2015– | | |

| Justin Lienemann | 2016);<br>Senior Director Financial Planning & Analysis and Mergers & Acquisitions (2013–2015);<br>Senior Director Strategy & Business Development (2012–2013);<br>Director/Senior Manager Strategy & Business Development (2009–2012) | Internal Profit/Revenue Analysis | 22 |
| Steven Miller | Chief Medical Officer at Cigna (2018–2022);<br>Chief Medical Officer at Express Scripts (2005–2018); | Formulary Development | 10 |

Please note that historical titles and years were gathered in part from publicly available sources, and Express Scripts does not warrant that such titles are identical to formal titles that may have been used in Express Scripts' records. In addition, many of Plaintiffs' RFPs overlap and the parties continue to meet and confer about the scope of any production in response to Plaintiffs' RFPs. By agreeing to identify the potentially responsive RFPs for these primary custodians, Express Scripts does not waive any future argument that production will be responsive to other RFPs.

As to your second and third points, Express Scripts disagrees with Plaintiffs' suggestion that Express Scripts' custodian proposal is "deficient." Contrary to your suggestion that Express Scripts is required to identify "all custodians with responsive information," the ESI Protocol approved by the Court requires the parties to identify custodians "that are most likely to possess responsive documents and information"—which is precisely what Express Scripts has endeavored to do. ESI Protocol § V. And, of course, all discovery must be proportional to, among other things, "the parties' resources" and not "duplicative" or more burdensome than any "likely benefit." Fed. R. Civ. P. 26(b). Plaintiffs' decision to demand a 90-day substantial completion deadline for document discovery has denied the parties' the resource of time for completing custodial document discovery, and any proportional custodial proposal must abide by the simple realities imposed by the time constraints Plaintiffs have adopted for document discovery in this litigation.

As required by the ESI Protocol, Express Scripts provided a list of custodians "that are most likely to possess responsive documents and information" that is nonduplicative of other custodians. That proposal is not only sufficient; it is further justified by the limited amount of time available under Plaintiffs' proposed discovery schedule. Plaintiffs' counterproposal, served on New Years' Eve just weeks before the substantial completion deadline they wanted, identifies a whopping *57 custodians* (without any additional information). Setting aside issues of duplication, imprecision, and inefficiency, such a burden is a nonstarter given the limited time available. That Plaintiffs' counterproposal was served on top of discovery requests to other entities associated with Express Scripts on December 20 and December 27—even though the Court authorized the service of master discovery as early as October 15—further separates Plaintiffs' expectations from reality and what is feasible on Plaintiffs' compressed timeline. *See* ECF No. 313.

Absent a change to the substantial completion deadline, Express Scripts cannot

entertain any expansion of the custodial search Plaintiffs have proposed. That said, we are continuing to review Plaintiffs' list to evaluate the proposed individuals in the event Plaintiffs seek relief from the substantial completion deadline they selected to govern discovery.

Plaintiffs also propose numerous "Search Term Validation Questions" in connection with their fourth point below. As we indicated, the proposed search terms were *proposed by Plaintiffs' counsel* in Mississippi on July 14, 2023. We attach for your reference the email Josh Wackerly sent to Express Scripts including those terms. As can be seen from reviewing the terms, a prior course of negotiations led to *Plaintiffs'* selection of terms that are already adjusted to account for relevant "synonyms, code words, acronyms, abbreviations, nonlanguage alphanumeric associational references," misspellings, etc. that may be relevant. We draw your particular attention to the frequent concession of wildcards to account for alternates/misspellings, and the intentional informed inclusion of abbreviations/associational references/acronyms/codes. To the extent Plaintiffs wish to make any targeted, relevant refinements to their prior proposal, Express Scripts is willing to consider them. But a detailed expansion beyond *Plaintiffs' own* prior proposal is unwarranted here. *See* ESI Protocol § 5.A (meet and confer regarding search terms should include certain requested information only "where relevant").

Regarding TAR, many of Plaintiffs' questions seek information well beyond that which the ESI Protocol requires Express Scripts to disclose, and pursue disclosures that Magistrate Singh declined to include in that Order notwithstanding Plaintiffs' proposed language. The ESI Protocol requires only that the parties meet and confer "regarding how such technologies will be implemented, before the Producing Party employs any TAR." ESI Protocol § V.B. To the extent the ESI Protocol envisions their disclosure at all, Plaintiffs' queries regarding richness assessments, review cut-offs, recall rates, and validation processes are premature when Plaintiffs have yet to accept Express Scripts' proposal regarding custodians and search terms.

Nonetheless, in an effort to further clarify, and as we previously disclosed, Express Scripts intends to use Morgan Lewis attorneys familiar with this litigation to iteratively train a TAR model using Reveal's Brainspace predictive coding software, and Morgan Lewis attorneys will validate Express Scripts' productions upon completion of such productions. Although not required by the ESI Protocol, Express Scripts can further share that it presently intends to use the CMML model feature of the Brainspace software, and its conceptual diversity/diverse active training features, and also the Brainspace criteria for identifying records subject to, and excluded from, TAR modeling. For those records Brainspace identifies as not amenable to TAR, reviewing attorneys will review those records. Express Scripts can further state that it does not intend to use generative AI to further cull beyond TAR.

As to your fifth requests regarding data fields, we expect that we will be able to make a proposal next week after our client finishes its analysis.

Finally, as previously stated, Express Scripts will continue to make non-custodial productions on a rolling basis. We expect to make another such production before Jan 15. As to any custodial production, we necessarily and obviously cannot commit to beginning production utilizing search terms until Plaintiffs accept Express Scripts'

proposal for custodial search terms and use of TAR, or the parties otherwise reach agreement about search procedures for Express Scripts' ESI. *See* ESI Protocol § V.B (parties must meet and confer regarding TAR "***before*** the Producing Party employs any TAR" (emphasis added). In this regard, Plaintiffs' additional discovery-on-discovery demands, and micromanaging of Express Scripts' collection and production process are further inconsistent with the 90-day substantial completion deadline.

Finally, Plaintiffs have requested another meet and confer to discuss "these issues and [Express Scripts'] discovery responses." We once again request that Plaintiffs identify particular deficiencies in writing sufficiently before any meet and confer, so we can ensure the conversation is as productive as possible. We would recommend speaking again next week and will promptly provide availability upon seeing your list of topics, proposals, and claimed deficiencies.

Sincerely,

J.R., Pat, and Lindsey

**Patrick A. Harvey**
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW | Washington, DC 20004-2541
Direct: +1.202.373.6284 | Main: +1.202.739.3000 | Fax: +1.202.739.3001
patrick.harvey@morganlewis.com | www.morganlewis.com



**From:** Josh Wackerly <josh@cicalapllc.com>
**Sent:** Tuesday, December 31, 2024 9:09 AM
**To:** Harvey, Patrick A. <patrick.harvey@morganlewis.com>; Scherr, Jason R. <jr.scherr@morganlewis.com>; Levy, Lindsey <lindsey.levy@morganlewis.com>; Compton, Meredith L. <meredith.compton@morganlewis.com>
**Cc:** Joanne Cicala <joanne@cicalapllc.com>; Johan Conrod <johan@cicalapllc.com>; Trey Watkins <Trey.Watkins@formanwatkins.com>; Tanya Ellis <Tanya.Ellis@formanwatkins.com>; Lawrence Deas <Lawrence@listondeas.com>; William Liston III <William@listondeas.com>; Matthew McDonald <MattM@davidnutt.com>; Brandon Bogle <bbogle@levinlaw.com>; Steven Daroci <SDaroci@SeegerWeiss.com>; Tal J Lifshitz <tjl@kttlaw.com>; David Buchanan <DBuchanan@seegerweiss.com>; Benjamin Widlanski <bwidlanski@kttlaw.com>; Mark Pifko <MPifko@baronbudd.com>; Shayna E. Sacks <SSacks@NapoliLaw.com>; mdearman@rgrdlaw.com; Pearl Robertson <probertson@irpinolaw.com>; myeates@ktmc.com; Erich Schork <erichschork@robertslawfirm.us>; Jon Neumann <jneumann@ktmc.com>; Matthew Gately <MFG@njlawfirm.com>; Kelly Rinehart <kellyrinehart@robertslawfirm.us>; Mike Roberts <mikeroberts@robertslawfirm.us>; Brandon Sadowsky <bsadowsky@kttlaw.com>; Robert L. Salim <skeeter@salim-beasley.com>; Karen Sharp Halbert - Roberts Law Firm, P.A. (karenhalbert@robertslawfirm.us) <karenhalbert@robertslawfirm.us>; Shelbi Flood <shelbi@cicalapllc.com>; John Alden Meade <jam@meadeyoung.com>; Lisa Causey-Streete <lcausey@salim-beasley.com>
**Subject:** Re: Insulin Pricing MDL - Meet and confer on Express Scripts discovery responses

[EXTERNAL EMAIL]
Jason/Pat – We write to follow up on our December 19 meet-and-confer.

# EXHIBIT 2

| | |
|---|---|
| **Subject:** | RE: In re Insulin Pricing Litigation, No. 2:23-MD-03080-BRM-RLS |
| **Date:** | Wednesday, January 8, 2025 at 9:26:13 AM Eastern Standard Time |
| **From:** | Suellentrop, Nicholas |
| **To:** | Josh Wackerly, Interlicchio, Lori, Joanne Cicala, Johan Conrod, Trey Watkins, Tanya Ellis, Lawrence Deas, William Liston III, Matthew McDonald, bbogle@levinlaw.com, Steven Daroci, Tal J Lifshitz, David Buchanan, Benjamin Widlanski, Mark Pifko, Anello, cmiller@awkolaw.com, myeates@ktmc.com, Erich Schork, Jon Neumann, Matthew Gately, Kelly Rinehart, Robert L. Salim, Karen Sharp Halbert - Roberts Law Firm, P.A. (karenhalbert@robertslawfirm.us), Lisa Causey-Streete, John Alden Meade |
| **CC:** | Podoll, A. Joshua, Hazelwood, Benjamin, Dockery, Daniel, Poteat III, R. Kennon, Gazikas, Alexander |
| **Attachments:** | image005.png, image006.png, image009.png, image010.png, image011.png, Custodial Information.pdf |

Counsel:

I write in response to your December 31 email.

*First*, you mischaracterize our December 23 meet and confer.  During that meet and confer, CVS agreed to provide specific information for its proposed custodians, including their positions, titles and the dates during which they held those positions/titles.  That information is attached.  You did not request the additional information called for below, nor was it listed in your December 16 email.  Contrary to your representation below, CVS never agreed to provide such information during our meet and confer.

*Second*, CVS's position remains (as shared on all of our prior meet-and-confer discussions) that it has proposed custodians and non-custodial documents for production commensurate with the 90-day substantial completion deadline listed in Case Management Order No. 13, which Plaintiffs themselves requested.  The scope of discovery currently sought by Plaintiffs—including a New Years' Eve request for over *sixty custodians*—makes clear Plaintiffs apparently had no plans ever to propose discovery that could comply with the deadlines they themselves asked the Court to impose.  *See* ECF No. 270-1.  We trust Plaintiffs understand that it is not possible to collect, review, and produce custodial files from 60 custodians in less than one month.  To be clear, CVS does not agree that the scope of discovery Plaintiffs currently purport to seek is appropriate under any timeline, but it underscores the point CVS has made all along concerning the overbreadth of Plaintiffs' document requests, especially in the context of the very short deadlines Plaintiffs have requested for document discovery.  To the extent that Plaintiffs are proposing that the deadlines they requested should be modified, CVS is willing to meet-and-confer about such a proposal.

*Third*, CVS intends to make an additional production this week.  CVS's December 12 production was of custodial files sourced from the seven custodians it has proposed.

*Fourth*, CVS is endeavoring to provide additional information regarding the data it agreed to produce in its Objections & Responses the week of January 13.

*Fifth*, on our previous meet and confer, we discussed certain requests that Plaintiffs characterized as "hard-pulls."  Although we did not discuss each of these, our responses to certain of these are discussed below.

- All Agreements/contracts with Rebate Aggregators (RFP 8)

1. CVS maintains its objections to RFP 8, including its objection to the term "Rebate Aggregators."  Subject to and without waiving those objections, CVS agrees to produce the Prescription Benefit Rebate Participation Agreement between Zinc Health Services, LLC and CaremarkPCS Health, L.L.C. dated April 1, 2020.  We are not aware of any other entities contracted by Caremark to negotiate agreements with manufacturers for rebates or fees on behalf of Caremark or its clients.

- P&T and FRC Policies/Procedures (RFP 2)

2. CVS maintains its objections to RFP 2.  Subject to and without waiving those objections, CVS notes that Plaintiffs agreed to consider providing an illustrative list of policies you expected would be responsive to this RFP (some of which you stated during our first meet and confer).  Please provide that list.

- Organizational Charts (RFP 3).

3. CVS maintains its objections to RFP 3.  Subject to and without waiving those objections, and as discussed during our first meet and confer, CVS is not aware of personnel charts that have been regularly updated and maintained through the relevant time period.  CVS will produce the personnel charts of which it is aware.

- PCMA Presentations, agendas, and meeting materials (RFP 6).

4. CVS maintains its objections to RFP 6, but is willing to meet and confer further regarding this request.  As we discussed briefly at the end of the call, these documents are not "hard pulls."

We will revert on the remainder of the topics discussed in your letter in due course.

We are available Friday, January 10, from 12-1:00 pm ET, for a further meet and confer.

Regards,
Nick


**Nicholas Suellentrop**
**Associate | Williams & Connolly LLP**
680 Maine Avenue, S.W., Washington, DC 20024
202-434-5592 | nsuellentrop@wc.com | www.wc.com

---

**From:** Josh Wackerly <josh@cicalapllc.com>
**Sent:** Tuesday, December 31, 2024 9:40 AM
**To:** Suellentrop, Nicholas <nsuellentrop@wc.com>; Interlicchio, Lori <LInterlicchio@wc.com>; Joanne Cicala <joanne@cicalapllc.com>; Johan Conrod <johan@cicalapllc.com>; Trey Watkins <Trey.Watkins@formanwatkins.com>; Tanya Ellis <Tanya.Ellis@formanwatkins.com>; Lawrence Deas <Lawrence@listondeas.com>; William Liston III <William@listondeas.com>; Matthew McDonald <MattM@davidnutt.com>; Brandon Bogle <bbogle@levinlaw.com>; Steven Daroci <SDaroci@SeegerWeiss.com>; Tal J Lifshitz <tjl@kttlaw.com>; David Buchanan <DBuchanan@seegerweiss.com>; Benjamin Widlanski <bwidlanski@kttlaw.com>; Mark Pifko <MPifko@baronbudd.com>; vanello@douglasandlondon.com; cmiller@awkolaw.com; myeates@ktmc.com; Erich Schork <erichschork@robertslawfirm.us>; Jon Neumann <jneumann@ktmc.com>; Matthew Gately <MFG@njlawfirm.com>; Kelly Rinehart

# EXHIBIT 3

**Express Scripts, Inc., Medco Health Solutions, Inc., and
Express Scripts Administrators, LLC's Initial Disclosure
Regarding Custodians and Search Procedures for Certain ESI**

Pursuant to Section V of the Stipulation and Order Governing the Production of Electronically Stored Information and Hard Copy Documents (ECF No. 208), Express Scripts, Inc., Medco Health Solutions, Inc., and Express Scripts Administrators, LLC (collectively "Express Scripts")  provides its initial list of search terms and custodians, as well as a disclosure of its intent to use Technology Assisted Review ("TAR") for purposes of culling Electronically Stored Information ("ESI") potentially responsive to Plaintiffs' Master Discovery Requests.

Discovery in this case is in its earliest stages and Express Scripts' investigation is ongoing. Express Scripts continues to investigate Plaintiffs' claims and, consistent with the ESI Protocol, Express Scripts' search for responsive ESI is to be "iterative." Consistent with these facts, and with the spirit of this early disclosure and iteration, Express Scripts offers the following Custodial, Search terms, and TAR details. However, Express Scripts reserves all rights to modify its search procedures for electronic documents in response to future developments in this litigation or Express Scripts' investigation.

**I.      Custodians**

In light of the January 27, 2025 deadline for the substantial completion of Defendants' production of responsive documents that Plaintiffs requested to include in the Case Management Order, Express Scripts has identified 7 priority custodians for whom Express Scripts intends to search their email for further review and potential production.  The list of priority custodians is attached hereto as **Exhibit A**.

1

II.    **Search Procedures for Culling Electronic Documents**

To initially cull the universe of collected ESI, Express Scripts intends to utilize the search terms proposed by the State of Mississippi on July 14, 2023, a copy of which is appended as **Exhibit B.**

From that universe, Express Scripts intends to use TAR to identify documents for further review and potential production. Express Scripts intends to use Morgan Lewis attorneys familiar with this litigation to iteratively train a TAR model to identify potentially responsive ESI. Morgan Lewis attorneys will validate Express Scripts' productions upon completion of such productions. Express Scripts presently intends to utilize Reveal's Brainspace predictive coding software in implementing such TAR modeling.

## **Exhibit A**

1. Behm, Andrew
2. Bricker, Amy
3. Carter, Harold
4. Kautzner, Adam
5. Kitson, Julie
6. Lienemann, Justin
7. Miller, Steven

**Exhibit B**

**Search Term Counter Proposal in MS AG Insulin Action (July 14, 2023)**

A.    **Terms**

**Diabetes Drugs:**
- Admelog
- Apidra
- Aspart
- Basaglar
- Degludec
- Detemir
- Fiasp
- Glargine
- GLP
- Humalog
- Humulin
- Kwikpen
- Lantus
- Levemir
- Lins
- Lispro
- Novolin
- Novolog
- NovoPen
- Ozempic
- Relion
- Semglee
- Soliqua
- SoloSTAR
- Toujeo
- Tresiba
- Trulicity
- Victoza
- Insulin
- Basal
- Rezvoglar
- Logs
- Tanzeum
- Stegaltro
- Diabet*

4

**Insulin Manufacturers Terms:**
- Lilly
- "LLY"
- Novo
- NNI
- Sanofi
- SAV

**"Rebate Aggregator" Terms:**
- Ascent
- (Zinc /5 "Rebate" OR (group /3 purchasing) OR Aggregat! OR Fee)
- Emisar
- "Coalition for Advanced Pharmacy Services"
- CAPS
- Ibex
- Newco
- Admin* /3 service*
- (group /3 purchasing)
- (GPO w/15 service*)
- (GPO w/15 fee*)
- "GPO gateway fee*"
- Aggregator
- Incremental
- "portfolio rate"

**Manufacturer Payment Terms (Group A):**
- Rebate*
- Concession
- inflat*
- "incremental value"
- "client share"
- "value extraction"
- (Client /2 value OR share)
- enterprise
- "reconciliation report"
- "market share"
- (margin /3 guarantee*)
- pass-through
- "Pass through"

5

- Pass-thru
- "pass thru"
- portal
- cost
- Disclos*
- "safe harbor"
- Arbitrage
- Offer*
- "1 of"
- "Best Price"


**Manufacturer Payment Terms (Group B):**
- Discount*
- Utilization
- UM
- Audit
- AWP
- WAC
- AMP
- pric*
- PP
- PF
- RF
- EP
- AF
- Retention
- Retain*
- (fee* /2 OR reporting OR service OR portal OR admin* OR remitted OR data)
- payment*
- (gross /5 value OR CVS OR gain OR cost OR client OR bill* OR enhance*)
- "fair market value"
- (net /5 value OR CVS OR gain OR cost OR client)
- (Template /3 value)
- Profit*
- Revenue*
- Agreement
- Contract
- Grid
- Bid

**Insulin Cost**
- COG
- cost

**Formulary Terms:**
- Formular*
- PDL
- "pharmacy & therapeutics"
- P&T
- Tier
- Prefer*
- Exclu*
- Disadvantag*
- Differential
- committee
- "Performance Drug List"
- "Preferred Drug List"
- "Primary Drug List"
- "Value Assessment"
- VAC
- TAC
- "Therapeutic Assessment"
- "National Preferred"
- NPF
- "High Performance"
- HP
- DFO
- Pebble
- Model*
- Minutes

**Pharmacy Terms:**
- Clawback
- DIR
- Spread

**Pull Through Terms:**
- pull-through
- "pull through"
- pull-thru
- "pull thru"
- Co-market*
- "High Prescribers"
- (Therapeutic /3 intervention)

**Individual Diabetic Terms**
- Unaffordab*
- Affordab*
- Copay OR co-pay OR "co pay"
- "out of pocket" OR "out-of-pocket"
- OOP
- Pay /10 ("based on WAC" OR "based on AWP" OR "list price")
- Patient /5 adhere*
- Switch* /3 (medical OR nonmedical OR non-medical OR "non medical")
- Ration*
- Skip* /3 dose*
- Maximiz*
- Accumulat*
- "patient assistance"
- Diabet*
- Disrupt!

## B. Search Strings

- [Manufacturer Payment Terms Group A] /35 [Diabetes Drugs List]
- [Manufacturer Payment Terms Group B] /25 [Diabetes Drugs List]
- [Formulary Terms] /35 [Diabetes Drugs List]
- (PCMA OR PhRMA) /35 [Diabetes Drug Terms]
- [Rebate Aggregator Terms] /35 ([Diabetes Drugs List] OR [Insulin Manufacturers Terms])
- [Pharmacy Terms] /10 [Diabetes Drug List]
- [Individual Diabetic Terms] /35 ([Diabetes Drugs Terms] OR [Insulin Manufacturers Terms])
- [Pull through terms] /15 [Diabetes Drugs List]
- [Insulin Cost] /10 [Diabetes Drugs List]
- Blink /30 (Lilly OR Humulin OR Humalog OR Basaglar OR insulin)

# EXHIBIT 4

| | |
|---|---|
| **Subject:** | RE: Insulin Pricing MDL - Meet and confer on Express Scripts discovery responses |
| **Date:** | Monday, December 16, 2024 at 8:32:01 PM Eastern Standard Time |
| **From:** | Harvey, Patrick A. |
| **To:** | Josh Wackerly, Scherr, Jason R., Levy, Lindsey, Compton, Meredith L. |
| **CC:** | Joanne Cicala, Johan Conrod, Trey Watkins, Tanya Ellis, Lawrence Deas, William Liston III, Matthew McDonald, bbogle@levinlaw.com, Steven Daroci, Tal J Lifshitz, David Buchanan, Benjamin Widlanski, Mark Pifko, Shayna, mdearman@rgrdlaw.com, Pearl Robertson, myeates@ktmc.com, Erich Schork, Jon Neumann, Matthew Gately, Kelly Rinehart, Mike Roberts, Brandon Sadowsky, Robert L. Salim, Karen Sharp Halbert - Roberts Law Firm, P.A. (karenhalbert@robertslawfirm.us), Shelbi Flood, John Alden Meade |
| **Attachments:** | image001.png, image002.png, 2024.12.16 Express Scripts PBM Entitites' Initial Disclosure Regarding Custodians and Search Procedures for Certain ESI.pdf |

Josh,

Thank you for meeting with us on December 6, 2024 and for providing this written follow-up e-mail on Friday, December 13.  Please see below our response to the points raised in your email.

**Custodians, Data Sources, and Search Terms**

As we discussed during our meet and confer on December 6, Express Script, Inc., Medco Health Solutions, Inc., and Express Scripts Administrators LLC (together, "Express Scripts") have been preparing an initial custodian and search term proposal for purposes of identifying potentially responsive ESI to the Requests in Plaintiffs' First Set of Master Requests for Production of Documents to PBM Defendants.  To that end, Express Scripts' Initial Disclosure Regarding Custodians and Search Procedures for Certain ESI is attached.  As indicated in the attached disclosure, Express Scripts' proposal accounts for the January 27, 2025 substantial completion deadline for document production that Plaintiffs advocated for and successfully convinced the Court to include in CMO No. 13 (ECF No. 313).  Given the breadth of Plaintiffs' requests and the impending deadline, Express Scripts proposes to search the email inboxes of the custodians identified in Exhibit A to Express Scripts' proposal, which includes the individuals identified to date as most likely to have information responsive to Plaintiffs' requests.

Express Scripts continues to investigate potential non-custodial sources that may contain responsive information, and Express Scripts intends to disclose them as required by the ESI Protocol.  Express Scripts also intends to produce certain Structured Data subject to the parties' further meet and confer regarding the scope of claims data requested.

**Hard-Pull Documents**

For hard-pull documents, Express Scripts initially produced 29,340 pages of documents on May 31, 2024 when it re-produced documents previously produced in member cases.  And Express Scripts began its rolling production of other hard-pull documents on December 12.  Express Scripts will continue to produce those documents on a rolling basis.

In regard to the particular hard-pull documents identified below, Express Scripts responds as follows.

- All agreements/contracts with Rebate Aggregators (RFP 8);

Express Scripts is collecting and intends to produce its contracts with group purchasing organizations that Express Scripts contracted with to negotiate rebates from drug manufacturers (e.g., Ascent Health Services, LLC).

- All agreements/contracts with Express Scripts' affiliated pharmacies (RFP 8)

As we discussed on December 6, Express Scripts is not opposed to collecting and producing certain intercompany agreements for pharmacies that could fill prescriptions for the at-issue products (e.g., Express Scripts' mail-order pharmacies).  But we fail to see how *all* agreements with *any* affiliated pharmacy are relevant to Plaintiffs' claims.  Further, as stated in Express Scripts' responses and objections to Plaintiffs' Requests, production of *all* agreements with *any* affiliated pharmacy is impracticable and disproportionate to the needs of the case.

- P&T and FRC formulary committee documents (RFP 10):

Express Scripts does not have a "FRC" formulary committee.  Express Scripts maintains a P&T Committee, Therapeutic Assessment Committee (TAC), and a Value Assessment Committee (VAC).  Regardless, as discussed below, Express Scripts has produced, and will continue to produce, certain documents related to the formulary development committees.

  - Charters (RFP 2);

Express Scripts has previously produced charters for all the formulary committees for most of the relevant time period.  Express Scripts is currently performing a reasonable search to identify any additional copies of charters in effect during the discovery period, which have not previously been produced.

  - Policy/procedures (RFP 2);

As explained in Express Scripts' response to RFP No. 2, and discussed during our December 6 meet and confer, Express Scripts is willing to continue to discuss with Plaintiffs the scope of policies and procedures Plaintiffs are seeking in response to RFP No. 2.

  - Meeting agendas (RFP 10);

Express Scripts is continuing to investigate whether Express Scripts maintains agendas distinct from the minutes prepared for the formulary development committees.  If such agendas referencing the at-issue drugs created during the relevant time period are identified by a reasonable search, Express Scripts will produce such agendas.

  - Meeting minutes, summaries, and any other documents memorializing formulary committee decisions and/or reasons behind decisions (RFP 10);

Express Scripts has already produced many minutes from the formulary development committees during the relevant time period, and produced certain unredacted copies of those minutes in its

December 12, 2024 production.  Express Scripts is currently searching for minutes not previously produced on the outer ranges of the relevant time period in addition to any documents relating to the at-issue drugs referenced in those minutes and intends to produce such documents identified following a reasonable search.

- Any documents provided to and/or relied upon by Express Scripts' formulary committees in making decisions (including but not limited to clinical information, drug monographs, Exclusionary Review Summaries/Breakdowns/Decks, Trade Reviews, Modeling, Exclusion Modeling) (RFP 10);

As stated above and in response to RFP No. 10, Express Scripts has agreed to search for documents relating to the at-issue drugs referenced in the formulary development committee minutes.  Express Scripts is currently investigating whether additional requested documents are available from certain non-custodial searches, or whether those documents should be searched for as part of a custodial collection.

- Organizational Charts (RFP 3);

As stated in its response to RFP No. 3, Express Scripts does not in the ordinary course maintain organizational charts or directories, but Express Scripts does maintain certain information about the organizational structure regarding certain business units in Workday, Human Capital Management software.  Express Scripts is willing to produce certain organizational charts, and can at this stage agree to prepare and produce organizational charts for the individuals Express Scripts has identified as custodians that are current employees of Express Scripts.

- PCMA presentations, agendas, and meeting materials (RFP 6); PhRMA presentations, agendas, and meeting materials (RFP 7).

In its responses to RFP Nos. 6 and 7, Express Scripts has agreed to produce non-privileged documents in its possession, custody, or control reflecting communications made at PCMA or PhRMA meetings related to the at-issue drugs.  While we are continuing to investigate, we expect these types of documents to be collected through a custodial search.  As we discussed on December 6, without a written letter identifying any supposed deficiencies, Express Scripts remains unclear about whether and to what requests Plaintiffs find Express Scripts' responses to the RFPs deficient.

**Further Meet and Confer Availability**

Finally, in regard to your request to schedule another meet and confer.  We are available on Thursday from 10-11, 1-3, and 4-5, or Friday from 2-4 EST.

Regards,

Pat


**Patrick A. Harvey**
**Morgan, Lewis & Bockius LLP**

# EXHIBIT  5

## **Search Term Validation Questions**

1. What platform(s), including version numbers, are being used to apply search terms?
2. What measures were taken to assure that semantic synonyms, code words, acronyms, abbreviations, or nonlanguage alphanumeric associational references to relevant ESI were included in the set of search terms that you advanced?
3. What measures were taken to ensure that misspellings were included in the set of search terms that you advanced?
4. What functionality to identify misspellings is provided by the platform(s) being used to apply search terms?
5. What validation(s) have you performed to ensure that a reasonable percentage of responsive documents included at least one of the search terms that you advanced?
6. If you performed any validation sampling(s):
   a. What was the composition, in terms of the custodians and non-custodial data sources and date ranges included, of each population sampled?
   b. With respect to each sample taken:
      i. What sub-set of the sampled population — e.g., documents without search hits (the "null set"), documents with search hits coded as responsive by reviewers prior to validation, or documents with search hits coded as non-responsive by reviewers prior to validation — was the sample taken from?
      ii. How many documents, not including family members without hits, were in each sample?
      iii. During validation:
         1. how many documents from the null set were found to be responsive?
         2. How many documents from the set of documents with search hits coded as non-responsive by reviewers prior to validation were found to be responsive?
         3. How many documents from the set of documents with search hits coded as responsive by reviewers prior to validation were found not to be responsive?
   c. Did you estimate recall? If so,
      i. What was the recall level, confidence level, and margin of error?
      ii. What were the calculations for the estimate?

# EXHIBIT 6

**TAR Tool:**  Specify the Brainspace TAR model you will be using (*e.g.*, CAL/TAR 2.0/pre-Reveal CMML).

**TAR Universe:**  How will documents that are not well suited to TAR be excluded and how will they be reviewed?  Please confirm that short message communications, numbers based spreadsheets, documents with too little or too much text, photos, and videos will be excluded.

**Training Workflow:** Describe the training workflow in more detail.  Describe any documents that will be used to kickstart the initial training (*e.g.*, documents that hit on certain search terms, documents already known to be responsive). Also confirm that all review coding will be used for training purposes or explain whether only certain documents or reviewer coding will be used for training.

**Conceptual Diversity:**  How will you ensure that documents with unique and diverse concepts that have not been seen before will be reviewed rather than merely prioritizing documents that are similar to those that have been deemed relevant (*e.g.*, diverse active rounds)?

**Richness Assessment:**  Specify the sample size you propose for the richness assessment and confirm that you will disclose the full set of documents in that sample, including how many of those documents were deemed responsive and non-responsive.

**Review Cut-Off:**  How will it be determined that the review should cease (*e.g.* a specific score, a certain number of rounds where the number of relevant documents in each round are below a certain percentage) and how will this information be shared with Plaintiffs?  For instance, will you provide a report showing the metrics of how many documents are relevant and irrelevant in each score range, which demonstrates that the number of relevant documents are diminishing along with the score and is consistently low enough to be disproportionate to continue the review?

**Validation:** Describe the specific validation process you propose, including sample sizes and the universes from which the samples will be drawn?  Confirm that you will be sampling both reviewed (responsive and nonresponsive) and unreviewed documents (from both the documents not hitting on search terms and unreviewed documents from the TAR universe).  Please also confirm that the validation samples from responsive and nonresponsive/unreviewed documents will be mixed together and blind to the reviewer or otherwise explain how the validation samples will be reviewed such that there is not bias toward coding the documents as non-responsive?  Explain how the information from the validation process will be conveyed to Plaintiffs? Confirm that the full set of documents in the validation samples will be disclosed, including the universe from which the sample was pulled and responsiveness coded.

**Recall Rate:**  Explain how will you be calculating recall and what recall rate you are committing to meet.

**<u>Additional Culling</u>:** Explain if there will be any additional search or reviewing culling done after TAR that has not been already disclosed (*e.g.*, GenAI)?

# EXHIBIT 7

| | |
|---|---|
| **Subject:** | Re: Insulin Pricing MDL - Recap re meet and confer on Express Scripts discovery responses |
| **Date:** | Friday, January 24, 2025 at 2:20:11 PM Eastern Standard Time |
| **From:** | Tal J Lifshitz |
| **To:** | Levy, Lindsey, Harvey, Patrick A. |
| **CC:** | Josh Wackerly, Scherr, Jason R., Compton Russian, Meredith Lynn, Joanne Cicala, Johan Conrod, Trey Watkins, Tanya Ellis, Lawrence Deas, William Liston III, Matthew McDonald, bbogle@levinlaw.com, Steven Daroci, David Buchanan, Benjamin Widlanski, mpifko@baronbudd.com, 'Sarah DeLoach', Shayna, mdearman@rgrdlaw.com, probertson@irpinolaw.com, myeates@ktmc.com, Erich Schork, Jon Neumann, Matthew Gately, Kelly Rinehart, Mike Roberts, Brandon Sadowsky, Robert L. Salim, Karen Sharp Halbert Roberts Law Firm P.A., Shelbi Flood, John Alden Meade, Lisa Causey-Streete, Ackerman, Ethan, Lea Bays |
| **Attachments:** | image002.png, image001.jpg, Outlook-Logo for K.png |

Lindsey,

Thank you for your note and clarification. We disagree with your characterization of certain of the parties' efforts and communications to date, and may respond separately to those points.

In the interim, however, with respect to TAR: we maintain that all of the questions we asked regarding ESI's proposed TAR process are reasonable and appropriate. Needless to say, we believe your refusal to provide sufficient information to allow Plaintiffs to understand and assess Express Scripts' proposed TAR process is contrary to the "iterative and cooperative approach" that Plaintiffs advocated for — and the Court adopted — in its Order Regarding Disputes Over ESI Protocol [ECF No. 186] at 7, and that which is more broadly recognized as necessary. *See e.g.*, *In re Diisocyanates Antitrust Litig.*, 2021 WL 4295729 (W.D. Pa. 2021) (reiterating the principle that "[t]echnology-assisted review of [electronically stored information] requires an unprecedented degree of transparency and cooperation among counsel" and stating that this "requires that they disclose information sufficient to make those discussions, as well as any court review meaningful").

In an effort to move this litigation efficiently forward, we make the following compromise proposal.[1]

The below proposal incorporates much of what Express Scripts has already proposed or agreed to, and supplements the absence of necessary detail concerning Express Scripts's proposed TAR process with standard TAR procedures that Plaintiffs are prepared to agree to in the context of a comprehensive protocol.

- As proposed by Express Scripts during the January 21 conferral, Express Scripts agrees to use Plaintiffs' proposed search terms. Note: assuming we can reach broader agreement on the TAR process to be employed, we are prepared to limit validation to the TAR process, and *not* require testing or validation of the agreed search terms (despite the recognized appropriateness of, and we believe Plaintiffs' entitlement, to such validation). *See, e.g., City of Rockford v. Mallinckrodt ARD, Inc.*, 326 F.R.D. 489, 494 (N.D. Ill. 2018) (requiring a random sample of the null set not returned by search terms in order to validate search terms).
- As described in your January 9 email, all documents that hit on Plaintiffs' search terms will be subject to TAR, except that Express Scripts will use Brainspace's criteria for identifying records subject to and excluded from TAR, and will manually review documents not amenable for TAR. (This presumes Brainspace uses standard inclusion/exclusion criteria, but please send us a copy of Brainspace's inclusion/exclusion criteria to align understandings.)
- As described in your January 9 email, Express Scripts will use Brainspace's conceptual diversity/diverse active training features, and do so in appropriate intervals throughout the review.
- Express Scripts will use *all* relevance-based coding decisions for training and will retrain the TAR system on a regular basis. If Express Scripts proposes a more limited scale of training, then Express Scripts will promptly provide plaintiffs with additional information regarding their proposed training process and the parties will meet and confer in a cooperative manner.
- Express Scripts may cease the TAR review process and proceed to validation only when it meets the criteria set forth in the ESI Order entered in *In re Uber Techs, Inc., Passenger Sexual Assault*

*Litig.*, No. 3:23-md-03084, ECF 524, Section 8(a)(3) at pages 8-9.

- Express Scripts will validate the TAR process consistent with the validation protocol entered in *In re Broiler Chicken Antitrust Litig.*, 2018 WL 1146371 (N.D. Ill. 2018).
- Although we maintain that Plaintiffs are entitled to transparency in the validation process — that is, access to the non-responsive documents within the validation sample sets — Plaintiffs are prepared to limit their validation review to documents identified by Express Scripts as responsive during validation, absent indication of broader production deficiencies or concerns. *In re Uber Techs, Inc., Passenger Sexual Assault Litig.*, No. 3:23-md-03084, ECF 345 (pretrial order adopting plaintiffs' proposed language allowing plaintiffs the opportunity to review all non-privileged documents in the validation sample).
- If the estimated recall is below 80%, or if the documents newly designated as responsive from the null set are unique or significant, then the parties will meet and confer as to whether and how the TAR review should proceed.

We welcome an additional conferral on Monday regarding our proposal. Please let us know if you're amenable to that conversation, and if so kindly provide your availability. Thank you.

---

[1]  As a compromise proposal that reflects significant compromises in Plaintiffs' positions and seeks less than that which we believe we are entitled to in this setting (and in a case of this scope), we reserve all rights to seek broader processes and relief should these issues remain unresolved and be submitted to the Court for adjudication.

TAL J. LIFSHITZ, ESQ. | PARTNER



2525 Ponce de Leon Boulevard, Floor 9, Miami, Florida 33134
**Phone** 305.372.1800 | **Direct** 305.728.2959 | **Email** tjl@kttlaw.com
**Firm Bio** | **Personal LinkedIn** | **KTT LinkedIn**

---

**From:** Levy, Lindsey <lindsey.levy@morganlewis.com>
**Sent:** Friday, January 24, 2025 9:49 AM
**To:** Tal J Lifshitz <tjl@kttlaw.com>; Harvey, Patrick A. <patrick.harvey@morganlewis.com>
**Cc:** Josh Wackerly <josh@cicalapllc.com>; Scherr, Jason R. <jr.scherr@morganlewis.com>; Compton Russian, Meredith Lynn <meredith.compton@morganlewis.com>; Joanne Cicala <joanne@cicalapllc.com>; Johan Conrod <johan@cicalapllc.com>; Trey Watkins <Trey.Watkins@formanwatkins.com>; Tanya Ellis <Tanya.Ellis@formanwatkins.com>; Lawrence Deas <Lawrence@listondeas.com>; William Liston III <William@listondeas.com>; Matthew McDonald <MattM@davidnutt.com>; bbogle@levinlaw.com <bbogle@levinlaw.com>; sdaroci@seegerweiss.com <sdaroci@seegerweiss.com>; dbuchanan@seegerweiss.com <dbuchanan@seegerweiss.com>; Benjamin Widlanski <bwidlanski@kttlaw.com>; mpifko@baronbudd.com <mpifko@baronbudd.com>; ssacks@napolilaw.com <ssacks@napolilaw.com>; mdearman@rgrdlaw.com <mdearman@rgrdlaw.com>; probertson@irpinolaw.com <probertson@irpinolaw.com>; myeates@ktmc.com <myeates@ktmc.com>; Erich Schork <erichschork@robertslawfirm.us>; Jon Neumann <jneumann@ktmc.com>; Matthew Gately <MFG@njlawfirm.com>; Kelly Rinehart <kellyrinehart@robertslawfirm.us>; Mike Roberts <mikeroberts@robertslawfirm.us>; Brandon Sadowsky <bsadowsky@kttlaw.com>; Robert L. Salim <skeeter@salim-beasley.com>; Karen Sharp Halbert Roberts Law Firm P.A. <karenhalbert@robertslawfirm.us>; Shelbi Flood <shelbi@cicalapllc.com>; John Alden Meade <jam@meadeyoung.com>; Lisa Causey-Streete <lcausey@salim-beasley.com>; Ackerman, Ethan <ethan.ackerman@morganlewis.com>; Lea Bays <LBays@rgrdlaw.com>
**Subject:** RE: Insulin Pricing MDL - Recap re meet and confer on Express Scripts discovery responses

# EXHIBIT 8

| | |
|---|---|
| **Subject:** | RE: Insulin Pricing MDL - Recap re meet and confer on Express Scripts discovery responses |
| **Date:** | Friday, January 24, 2025 at 9:49:53 AM Eastern Standard Time |
| **From:** | Levy, Lindsey |
| **To:** | 'Tal J Lifshitz', Harvey, Patrick A. |
| **CC:** | Josh Wackerly, Scherr, Jason R., Compton Russian, Meredith Lynn, Joanne Cicala, Johan Conrod, Trey Watkins, Tanya Ellis, Lawrence Deas, William Liston III, Matthew McDonald, bbogle@levinlaw.com, Steven Daroci, David Buchanan, Benjamin Widlanski, mpifko@baronbudd.com, Shayna, mdearman@rgrdlaw.com, probertson@irpinolaw.com, myeates@ktmc.com, Erich Schork, Jon Neumann, Matthew Gately, Kelly Rinehart, Mike Roberts, Brandon Sadowsky, Robert L. Salim, Karen Sharp Halbert Roberts Law Firm P.A., Shelbi Flood, John Alden Meade, Lisa Causey-Streete, Ackerman, Ethan, Lea Bays |
| **Attachments:** | image002.png, image001.jpg |

Tal,

Thank you for your time on Tuesday and your email below. There are a few points we wish to clarify.

**Substantial Completion Deadline**

Express Scripts anticipates substantial completion of its non-custodial production by the January 27 deadline. In an effort to meet the deadline set forth in CMO #13, Express Scripts made its initial custodian and search term proposal on December 16, 2024, suggesting that the parties apply Plaintiffs' final search term proposal in Mississippi. On January 15, 2025—12 days before the substantial completion deadline and one month after Express Scripts' proposal—Plaintiffs provided their first counter-proposal, which identified 51 *additional* proposed custodians, as well as additional terms. In light of these facts and the parties' ongoing negotiations regarding custodians and search methodologies (i.e., search terms and TAR) in accordance with the ESI Protocol, CMO # 11, Express Scripts is not in a position to make a custodial production before Monday.

**TAR**

We have attempted in good faith to respond to each of Plaintiffs' questions regarding our proposed use of TAR, including in some instances disclosing more than is required under the ESI Protocol in an effort to demonstrate our use of defensible and industry-standard processes to achieve reasonable, proportionate, and responsive results. Express Scripts has disclosed, and met and conferred regarding, both how it will use TAR and also its intention to validate the use of TAR, and even as a show of good faith disclosed it would do so specifically through an assessment of recall. We further committed to share in writing with Plaintiffs that successful or unsuccessful outcome when complete. This exceeds the ESI Protocol's requirements, and veers into territory Courts caution against as courts are "not normally in the business of dictating to parties the process that they should use when responding to discovery." To the extent Plaintiffs believe we have not in fact answered your germane questions regarding our proposed use of TAR, we invited you—as we did on Tuesday—to identify those questions in writing. We understand from our call on Tuesday that you do not intend to take us up on our invitation.

**Search Terms/Custodians**

In an attempt to resolve and expedite the parties' negotiations, we proposed a comprehensive solution on TAR, search terms, and custodians, whereby we would agree to apply plaintiffs' proposed terms as-is and expand the proposed custodians to include all 25 individuals identified in Express Scripts' response to Plaintiffs' interrogatory No. 1, conditioned on Plaintiffs setting aside their current objections to our stated intent to use TAR. Plaintiffs have declined that proposal but have not provided a counter proposal. If Plaintiffs have a counter proposal, we will, of course, consider it. In short, although we do not believe it would be an efficient use of anyone's time, we are amenable to further negotiation regarding appropriate search terms.

As we stated on Tuesday, we are also open to further input and will seriously consider any counter proposals from Plaintiffs regarding relevant, proportional, non-duplicative custodians, including whether that list includes all or a subset of those identified in Express Scripts' interrogatory responses. We continue to evaluate Plaintiffs' list of 58

potential custodians. However, we must emphasize that discussions regarding search terms are naturally intertwined with custodians and methodology, as all three will impact determinations of burden and proportionality.

**Non-custodial Sources**

We understood Plaintiffs' prior requests for disclosure of "non-custodial sources" to be directed toward relevant "databases and structured, aggregated, or application data" as contemplated in the ESI Protocol.  CMO #11, sec. VIII.  *See, e.g.,* 11/19/2024 Wackerly e-mail (requesting identification of "non-custodial *data* sources"); 12/14/2024 Wackerly e-mail ("please identify any *databases, Structured Data or aggregated data sources*, or applications likely to contain responsive information").  Our data proposal provided earlier this week, in which we identify Express Scripts' current (IW) and legacy (EDW) claims data systems, was intended to respond to those requests, and we did not receive any alternative or additional request from Plaintiffs prior to our conferral Tuesday afternoon.  While we have been working with our client to identify any additional non-custodial sources of information responsive to Plaintiffs' requests, your articulation of Plaintiffs' request below is new to us and not one we fully understand. Express Scripts is not obligated to and will not engage in the burdensome exercise of identifying every non-custodial source of information within its corporate organization, nor do we believe discovery regarding discovery is appropriate here.  We are, however, open to further discussion with Plaintiffs regarding what exactly you are looking for, beyond what is required under the ESI Protocol.

**Claims Data**

We look forward to plaintiffs' feedback regarding Express Scripts' data field proposal.

Best,
Lindsey

**Lindsey Levy**
Pronouns: She/Her/Hers
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW | Washington, DC 20004-2541
Direct: +1.202.739.5724 | Main: +1.202.739.3000 | Fax: +1.202.739.3001
lindsey.levy@morganlewis.com | www.morganlewis.com



**From:** Tal J Lifshitz <tjl@kttlaw.com>
**Sent:** Wednesday, January 22, 2025 1:35 PM
**To:** Levy, Lindsey <lindsey.levy@morganlewis.com>; Harvey, Patrick A. <patrick.harvey@morganlewis.com>
**Cc:** Josh Wackerly <josh@cicalapllc.com>; Scherr, Jason R. <jr.scherr@morganlewis.com>; Compton, Meredith L. <meredith.compton@morganlewis.com>; Joanne Cicala <joanne@cicalapllc.com>; Johan Conrod <johan@cicalapllc.com>; Trey Watkins <Trey.Watkins@formanwatkins.com>; Tanya Ellis <Tanya.Ellis@formanwatkins.com>; Lawrence Deas <Lawrence@listondeas.com>; William Liston III <William@listondeas.com>; Matthew McDonald <MattM@davidnutt.com>; bbogle@levinlaw.com; sdaroci@seegerweiss.com; dbuchanan@seegerweiss.com; Benjamin Widlanski <bwidlanski@kttlaw.com>; mpifko@baronbudd.com; ssacks@napolilaw.com; mdearman@rgrdlaw.com; probertson@irpinolaw.com; myeates@ktmc.com; Erich Schork <erichschork@robertslawfirm.us>; Jon Neumann <jneumann@ktmc.com>; Matthew Gately <MFG@njlawfirm.com>; Kelly Rinehart <kellyrinehart@robertslawfirm.us>; Mike Roberts <mikeroberts@robertslawfirm.us>; Brandon Sadowsky <bsadowsky@kttlaw.com>; Robert L. Salim <skeeter@salim-beasley.com>; Karen Sharp Halbert Roberts Law Firm P.A. <karenhalbert@robertslawfirm.us>; Shelbi Flood <shelbi@cicalapllc.com>; John Alden Meade <jam@meadeyoung.com>; Lisa Causey-Streete <lcausey@salim-beasley.com>; Ackerman, Ethan <ethan.ackerman@morganlewis.com>; Lea Bays <LBays@rgrdlaw.com>
**Subject:** Re: Insulin Pricing MDL - Recap re meet and confer on Express Scripts discovery responses