# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br>**ALL CASES** | **Case No. 2:23-md-03080**<br>**MDL No. 3080**<br><br>**JUDGE BRIAN R. MARTINOTTI**<br>**JUDGE RUKHSANAH L. SINGH** |

**PLAINTIFFS' FIRST SET OF MASTER REQUESTS FOR PRODUCTION OF DOCUMENTS TO PBM DEFENDANTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Rules 26.1 and 34.1 of the Local Civil Rules for the United States District Court for the District of New Jersey, Case Management Order #13 [ECF No. 313], and subject to the Definitions and Instructions set forth below, Plaintiffs request that PBM Defendants Caremark Rx, L.L.C.; Caremark L.L.C; CaremarkPCS Health, L.L.C.; Express Scripts, Inc.; Medco Health Solutions, Inc.; Express Scripts Administrators, LLC; OptumRx, Inc.; United Healthcare Services, Inc.; and UnitedHealthcare Insurance Co. respond to these Requests for Production of Documents (each a "Request" and collectively, the "Requests") in writing and produce the following documents, electronically stored information, and tangible things to Plaintiffs' counsel in accordance with Case Management Order #13 and Case Management Order #11 (Stipulation and Order Governing the Production of Electronically Stored Information and Hard Copy Documents) [ECF No. 208].

**DEFINITIONS**

1.      "Action" means the above-captioned litigation.

1

2.      "Affiliate" or "Affiliated Entity" means any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person or entity specified.

3.      "AWP" means Average Wholesale Price.

4.      "Communication" means and includes every manner or means of disclosure, transfer, or exchange of information, whether orally or in writing or whether face-to-face, by telephone, telecopy, mail, email, facsimile, personal delivery, instant message service, overnight delivery, voice message, voicemail-to-email message, text message, multimedia/social media message, or otherwise.

5.      The term "co-pay accumulator program" means an adjustment program that restricts or limits drug manufacturer co-pay assistance coupons or other drug manufacturer assistance from reducing or being credited to a patient's deductible or the maximum out-of-pocket limits.

6.      The term "co-pay maximizer program" means any program related to front loading or maximizing the value of drug manufacturers co-pay assistance programs or other co-pay assistance.

7.      "CVS Caremark" means CVS Health Corporation; CVS Pharmacy, Inc.; Caremark Rx, LLC; CaremarkPCS Health, LLC; and Caremark, LLC, including any predecessor or successor entities, subsidiaries, parents, or Affiliates, as well as any directors, officers, employees, agents or any other person acting on their behalf.

8.      "Diabetes Medications" refers to all insulin products and glucagon-like peptide receptor agonists (GLP-1s) as set forth in Section II.D of Case Management Order #10 entered in this Action [ECF No. 198], including: Apidra, Basaglar, Fiasp, Humalog, Humulin, Lantus,

Levemir, Novolin, Novolog, Ozempic, Soliqua, Toujeo, Tresiba, Trulicity, Victoza, Admelog, Insulin Aspart, Insulin Degludec, Insulin Glargine, Insulin Lispro, Relion Humulin, Relion Novolin, Relion Novolog, Rezvoglar, Semglee, Steglatro, Tanzeum, Mounjaro (Tirzepatide/GIP), Xultophy (insulin degludec/liraglutide), Rybelsus (semaglutide tablets), and Adylxin (lixisenatide).

9.    "Discovery Materials" means any Documents or data that You (or anyone acting on Your behalf) produced, provided, or made available for inspection in response to discovery requests, court orders, civil investigative demands, subpoenas, information requests, petitions, or by agreement, including Documents; data; tangible things; deposition testimony; responses to interrogatories, requests for admission, requests for production of documents, or other discovery requests (including any production cover letters accompanying such responses); deposition transcripts and videos; deposition exhibits; any errata sheet for depositions; declarations, certifications, or other responses to requests for information or other written information produced as part of discovery; privilege logs; and any expert reports You served (or were served on Your behalf).

10.    "Document" shall have the same meaning as set forth in Case Management Order #11 (Stipulation and Order Governing the Production of Electronically Stored Information and Hard Copy Documents) [ECF No. 208] (the "ESI Order").  For the avoidance of doubt, the term "Document" includes any written or recorded Communications.

11.    "Electronically Stored Information," "Electronic Data," or "ESI" is defined in accordance with the definition provided in the ESI Order.

12.    "Express Scripts" means Express Scripts, Inc.; Medco Health Solutions, Inc.; Evernorth Health, Inc. (formerly Express Scripts Holding Company); Cigna Health and Life

Insurance Company; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; and Express Scripts Administrators, LLC, including any predecessor or successor entities, subsidiary, parent, or Affiliate, as well as any directors, officers, agents, or any other person acting on their behalf.

13.     "Government Investigation" means any civil or criminal investigations, subpoenas, civil investigative demand requests, information requests, interrogatories, petitions, and other inquiries from governmental entities concerning (a) drug pricing, including pricing for any Diabetes Medications; or (b) PBM industry practices as they relate to drug pricing. These entities include, but are not limited to, the United States Senate (including any committees or subcommittees thereof), United States House of Representatives (including any committees or subcommittees thereof), United States Department of Justice (including Offices of any United States Attorney), United States Federal Trade Commission, Department of Health and Human Services Office of Inspector General, or State Attorneys General.

14.     "List Price" means any price reported or made available publicly or to publishing compendiums or databanks including, but not limited to, AWP and WAC prices.

15.     "Litigation" means all actions, cases, lawsuits, mediations, arbitrations, investigations, settlements, or administrative proceedings, whether civil, criminal, administrative, or regulatory in nature, relating to (a) the prices of Diabetes Medications or (b) Manufacturer Payments. "Litigation" includes but is not limited to *In the Matter of Caremark Rx, LLC*, No. 9437 (F.T.C.); *In re Insulin Pricing Litigation*, No. 17-699 (D.N.J.); *Minnesota v. Sanofi-Aventis U.S. LLC*, No. 18-14999 (D.N.J.); *MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, No. 18-2211 (D.N.J.); *In re Direct Purchaser Insulin Litigation*, No. 20-03426 (D.N.J.); *Harris County v. Eli Lilly and Company*, No. 19-4994 (S.D. Tex.); *City of Miami v. Eli Lilly and Company*, No.

21-22636 (S.D. Fla.); *Jackson County, Missouri v. Eli Lilly and Company*, No. 2:23-cv-04531 (D.N.J.); *State of Kentucky, ex rel. Daniel Cameron v. Novo Nordisk Inc.*, No. 2:23-cv-21374 (D.N.J.); *State of Louisiana v. Sanofi-Aventis U.S. LLC*, No. 23-00302 (M.D. La.); *State of Arkansas, ex rel. Tim Griffin, Attorney General v. Eli Lilly and Company*, No. 2:23-cv-04239 (D.N.J.); *State of Illinois, ex rel., Raoul v. Eli Lilly and Company*, No.2:23-cv-04242 (D.N.J.); *State of Kansas, ex rel. Kris W. Kobach, Attorney General v. Eli Lilly and Company*, No. 2:23-cv-04219 (D.N.J.); *State of Mississippi, ex rel. Lynn Fitch v. Eli Lilly and Company*, No.2:23-cv-04364 (D.N.J.); *State of Montana, ex rel. Austin Knudsen v. Eli Lilly and Company*, No. 2:23-cv-04214 (D.N.J.); *California v. Eli Lilly and Co.*, No. 23STCV00719 (Cal. Sup. Ct.); and *The Government of Puerto Rico v. Eli Lilly and Co.*, No. SJ2023CV00319 (504) (P.R. Sup. Ct.).

16.    "Manufacturer Defendants" means Eli Lilly and Company, Novo Nordisk Inc., and Sanofi-Aventis U.S. LLC and any of their predecessors, successors, Affiliates, parents, subsidiaries, offices (including, but not limited to, local, regional, national, executive or foreign offices), divisions, business units and branches thereof, and any present or former officers, directors, employees or agents. The term "Manufacturer Defendants" also includes all attorneys, accountants, consultants, advisors and all other persons or entities acting or purporting to act on any Manufacturer Defendant's behalf.

17.    "Manufacturer Payments" means all payments or financial benefits of any kind provided by any Manufacturer Defendant to You or any of Your Affiliated Entities. Manufacturer Payments include but are not limited to administrative fees, clinical detailing, commissions, credits, data analysis fees, data management fees, data sales fees, discounts, drug pull-through programs, educational grants, formulary placement fees, health management fees, implementation allowances, indirect purchase fees/rebates, inflation fees/rebates, interest, mail order purchase

discounts, market share incentives/rebates/fees, medication monitoring fees, dispensing fees, performance based incentives, pharmacy supplemental discounts, price concessions, price or margin guarantees, price protection fees/rebates, prompt payment discounts, portal fees, enterprise fees, data fees, promotional allowances, rebates, rebate submission fees, reimbursement for research projects, utilization management fees, volume discounts, and any other form of consideration.

18.     "Net Price" means the price paid by Plan Sponsors for the Diabetes Medications after accounting for all Manufacturer Payments or other forms of discounts, rebates, fees, or any other form of economic consideration received by the Plan Sponsor related to the Diabetes Medications.

19.     "Optum" means UnitedHealth Group, Inc.; United Healthcare Services, Inc.; UnitedHealthcare Insurance Co.; Optum, Inc.; OptumRx, Inc.; OptumRx Holdings, LLC; and OptumInsight, Inc., including any predecessor or successor entities, subsidiary, parent or Affiliate, as well as any directors, officers, agents or any other person acting on their behalf.

20.     "PBM" means pharmacy benefit manager.

21.     "PBM Defendants" means Express Scripts, Optum, and CVS Caremark.

22.     The terms "person" or "individual" mean any natural person, legal person, governmental entity (or agency thereof), quasi-public entity, or other form of entity, corporation, partnership, trust, sole proprietorships, unincorporated association, or other entity of any description.

23.     "Pharmacy Network" means a collection of pharmacies that individuals within a pharmacy benefits plan are required or incentivized to use to obtain coverage for the costs of prescription drugs.

24.     "Plaintiff" means and refers to any named plaintiff in any case currently in this Action, and any named plaintiff in any case later filed in, added to, transferred to, or coordinated with (pursuant to a court order or the Parties' express written agreement) this Action, as well as each such plaintiff's current and former employees, representatives, or agents. Notwithstanding the foregoing definition, "Plaintiff" shall not include any State that has not asserted claims on behalf of a health plan.

25.     "Plaintiff Health Plan" means any health plan offered by, administered by, or sponsored by a Plaintiff (as defined herein) that offered or included Prescription Drug Coverage.

26.     "Plan Sponsor" means any entity (e.g., self-funded employer, insurance company, governmental entity, union health plan) that is responsible for prescription drug purchases on behalf of individuals pursuant to a pharmacy benefits plan. Each Plan Sponsor may offer multiple pharmacy benefits plans.

27.     "Plan Sponsor Consultant" means any consultant, advisor, broker, or similar third party that provides consulting services to a Plan Sponsor. Plan Sponsor Consultants include, but are not limited to, Aon plc, Gallagher US, Mercer (US) LLC, and Willis Towers Watson plc, and their Affiliates.

28.     "Prescription Drug Coverage" means any form of health insurance, health coverage, prescription drug plan, or any other health plan that helps enrollees pay for prescribed pharmaceutical drugs.

29.     "Rebate Aggregator" means any entity, including a group purchasing organization, that negotiates for Manufacturer Payments on behalf of multiple entities or that holds the contracts governing or otherwise relating to those Manufacturer Payments. Rebate Aggregators include, but are not limited to, Ascent Health Services, LLC; Coalition for Advanced Pharmacy Services;

Emisar Pharma Services, Inc.; Zinc Health Ventures, L.L.C.; and Zinc Health Services LLC; and any of their predecessors, successors, parents, subsidiaries, offices (including, but not limited to, local, regional, national, executive or foreign offices), Affiliates, divisions, business units and branches thereof, and any present or former officers, directors, employees or agents.

30.    The terms "relating to," "related to," or "concerning" include, but are not limited to, the following meanings: referring to, bearing upon, describing, reflecting, responding to, identifying, constituting, evaluating, embodying, evidencing, evincing, dealing with, pertaining to, having to do with, or being in any way relevant to the given subject.

31.    "Utilization Management" means and includes any programs or strategies used by a health carrier or third-party administrator designed to monitor the use of or evaluate the medical necessity, appropriateness, efficacy, or efficiency of prescription drugs, including but not limited to: prior authorization, step therapy, NDC blocks, counter-detailing or counter-promoting, co-pay differentials, step edits or "fail first" requirements, quantity limits, or switching or therapeutic substitution.

32.    "WAC" means Wholesale Acquisition Cost.

33.    "You" or "Your" means the Defendant responding to these Requests.

34.    "2023 Price Cuts" refers to the Manufacturer Defendants' 2023 announcements of a series of measures to lower the price of certain forms of Diabetes Medications.

35.    Any terms not specifically defined shall be given their ordinary meanings and shall be construed to give each Request the broadest scope allowable by the Federal Rules of Civil Procedure.

## RULES OF CONSTRUCTION

1.     The conjunctions "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring all responses within the scope of these Requests.

2.     "Include," and variations of that verb should not be construed as limiting a Request.

3.     The singular form of a noun or pronoun includes the plural form and vice versa.

4.     The masculine shall be construed to include the feminine and vice versa.

5.     The use of any tense of any verb shall also include within its meaning all other tenses of that verb.

6.     A definition included above applies to both the lower- and upper-case reference to such term (e.g., Document and document; Person and person) and to both the singular and plural forms of such term (e.g., Document and Documents; person and persons).

## INSTRUCTIONS

1.     You are requested to produce all Documents in Your possession, custody, or control that are described below. In so doing, please furnish Documents that are in the possession of your officers, employees, attorneys, accountants, auditors, representatives, or agents, or that are otherwise subject to Your custody or control.

2.     Documents not otherwise responsive to these Requests shall be produced if such Documents mention, discuss, refer to, or explain the Documents that are called for by these Requests, or if such Documents are attached to Documents called for by these Requests and are routing slips, transmittal memoranda, or letters, comments, evaluations, or similar materials.

3.     Each Document requested herein is to be produced in its entirety and without deletion or excisions, regardless of whether You consider the entire Document to be relevant or responsive to these Requests.

9

4.       Unless otherwise indicated, the Documents to be produced include all Documents prepared, sent, or received, or those that otherwise came into existence any time during the Relevant Time Period defined herein.

5.       In producing Documents, You are requested to produce a copy of each original Document together with a copy of all non-identical copies and drafts of that Document. If the original of any Document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

6.       All responsive Documents, including ESI, shall be produced in accordance with the ESI Order. In accordance with that ESI Order, parties are required to "meet and confer to address the identification, production, and production format of any responsive data contained in a database."

7.       If any Document responsive to these Requests is not produced in full or is redacted because it is privileged or otherwise claimed to be protected against production, please provide a privilege log in accordance with Rule 26 of the Federal Rules of Civil Procedure and any operative protocol regarding privilege logs in this action with the following information with respect to each such Document or redaction:

a.   type of Document (e.g., letter, chart, memorandum, etc.);

b.   the date of the Document;

c.   authors, signatories, and each and every other Person who prepared or participated in its preparation;

d.   a description of its subject matter and length;

e.   a list of those Persons and entities to whom said Document was disseminated, together with their employment title, last known addresses and the date or approximate date on which each such Person or entity received it;

f.  a list of all other Persons to whom the contents of the Document were disclosed, the date such disclosure took place, the means of such disclosure, and the present location of the Document and all copies thereof;

g.  each and every Person having custody or control of the Document or copies thereof; and

h.  the nature of the privilege or other rule of law relied upon and any facts supporting Your decision to withhold production of such Document.

8.  If no Document or ESI responsive to a request exists, please state that no responsive Document or ESI exists in response to the Request.

9.  If any of the Documents or information requested cannot be produced in full, You are required to specify, to the extent possible, the reasons for Your inability to produce the remainder, and the approximate date when You expect to produce such Documents, if at all.

10.  If You assert an objection to any Request, You must nonetheless respond and produce any responsive Documents or ESI that are not subject to the stated objection. If You object to parts of a Request, You must specify the portions of the Request to which You object, state the grounds for Your objections with specificity, and state whether responsive materials are being withheld on the basis of that objection. If You object to parts of a Request, You must produce Documents responsive to the remaining parts of the Request.

11.  Notwithstanding a claim that a Document is protected from disclosure, any Document so withheld must be produced with the portion claimed to be protected redacted.

12.  If any responsive Document or ESI is known to have existed but no longer exists, has been destroyed, or is otherwise unavailable, You must identify the Document or ESI, the reason for its loss, destruction or unavailability, the name of each Person known or reasonably believed

11

by You to have had possession, custody, or control of the original and any copy thereof (if applicable) of the Document before it was destroyed or became otherwise unavailable, and a description of the disposition of each copy of the Document or ESI.

13.    If You intend to produce responsive Documents in stages, Your response to each request must specify the beginning and end dates for Your production.

14.    These Requests impose a continuing obligation upon You. If, after producing Documents or information responsive to these Requests, additional information or Documents become available to You, You are required to produce such additional Documents or information.

## RELEVANT TIME PERIOD

Unless otherwise indicated or called for by a specific request, the "Relevant Time Period" for these Requests is January 1, 2011, to January 1, 2023. The Relevant Time Period shall include all information that relates in whole or in part to the events or circumstances within this period, including responsive information and Documents even if dated, prepared, generated, or received outside of this period.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**    All Documents and Communications relating to any Government Investigation or Litigation, including: (a) all Discovery Materials produced, provided, generated, or made available by You in any Government Investigation or Litigation; (b) all Communications between You and the relevant governmental entity relating to such Government Investigation or Litigation; and (c) all Documents and Communications relating to any internal review, complaints, questions, or concerns relating to such Government Investigation or Litigation. Privileged Communications between You and Your outside counsel are excluded from this Request.

**REQUEST NO. 2:**  Documents sufficient to show any policy, practice, charter, or procedure manuals, including any standard operating procedures or other policy Documents, that are used or followed by You relating to any of the divisions, subdivisions, departments, committees, subcommittees, teams, units, or working groups identified by You in response to Interrogatory No. 1 in Plaintiffs' First Set of Master Interrogatories to PBM Defendants.

**REQUEST NO. 3:**  Organizational charts, personnel directories, and other Documents sufficient to identify Your organizational structures, including the identity of any officers, directors, employees, and representatives for any of the divisions, subdivisions, departments, committees, subcommittees, teams, units, or working groups identified by You in response to Interrogatory No. 1 in Plaintiffs' First Set of Master Interrogatories to PBM Defendants.

**REQUEST NO. 4:**  All draft and final minutes, presentation materials, handouts, background materials or pre-meeting Board packets, board books, and other Documents and Communications relating to any meeting of the Board of Directors, Board Committees, executive or leadership committees, managers, members, or shareholders (including any of the committees, subcommittees, teams, units, or working groups identified in response to Interrogatory No. 1 in Plaintiffs' First Set of Master Interrogatories to PBM Defendants) relating to the topics set forth in Interrogatory No. 1 in Plaintiffs' First Set of Master Interrogatories to PBM Defendants.

**REQUEST NO. 5:**  All memoranda, reports, or presentations relating to (a) the pricing and sales of any Diabetes Medication; (b) tracking sales, orders, or prescriptions for the Diabetes Medications; (c) negotiations or contracts or agreements with Manufacturer Defendants or Rebate Aggregators concerning any Diabetes Medication; (d) the passing on of Manufacturer Payments (or some portion thereof) to Plan Sponsors related to any Diabetes Medication; (e) the retention of Manufacturer Payments (or some portion thereof) related to any Diabetes Medication;

13

(f) Manufacturer Payments for any Diabetes Medication, or (g) formulary placement or exclusion of any Diabetes Medication.

**REQUEST NO. 6:** All Documents and Communications concerning the Pharmaceutical Care Management Association ("PCMA") relating to the Diabetes Medications or the Manufacturer Defendants, including internal or third-party Communications; Communications with PCMA; Communications with the PBM Defendants or Manufacturer Defendants during or related to PCMA events; Documents sufficient to show attendance by You or anyone on Your behalf at PCMA events; Documents reflecting PCMA membership; Documents reflecting Your executives' leadership positions at PCMA; and Documents prepared or exchanged in preparation for, during, or after any PCMA meetings or conferences (including exchanged in PCMA or other online forums) and Communications regarding same.

**REQUEST NO. 7:** All Documents and Communications concerning the Pharmaceutical Research and Manufacturers of America ("PhRMA") relating to the Diabetes Medications or the Manufacturer Defendants, including internal or third-party Communications; Communications with the PhRMA; Communications with the Manufacturer Defendants or PBM Defendants during or related to PhRMA events; Documents sufficient to show attendance by You or anyone on Your behalf at PhRMA events; and Documents prepared or exchanged in preparation for, during, or after any PhRMA meetings or conferences (including exchanged in PhRMA or other online forums) and Communications regarding same.

**REQUEST NO. 8:** All Documents and Communications relating to the Diabetes Medications, Manufacturer Defendants, Manufacturer Payments, or any Plaintiff, including but not limited to those related to pricing; contracts; formulary design, development, management, placement, or treatment (including formulary exclusions); data exchange; pull-through efforts

(e.g., marketing efforts, lobbying efforts, efforts to increase or shift utilization or sales, etc.); Rebate Aggregators; and research and development. For the avoidance of doubt, this request includes, but is not limited to, all agreements and contracts relating to Diabetes Medications, Manufacturer Defendants, Manufacturer Payments, or any Plaintiff, as well as amendments, schedules, or exhibits to those agreements and contracts; internal Communications relating to Diabetes Medications, Manufactuer Defendants, Manufacturer Payments, or any Plaintiffs; and Communications between You and any of the following entities relating to Diabetes Medications, Manufacturer Defendants, Manufacturer Payments, or any Plaintiffs:

    a.  Manufacturer Defendants;

    b.  Other PBM Defendants;

    c.  Rebate Aggregators;

    d.  Any pharmacies in Your Pharmacy Networks, including pharmacy services administrative organizations;

    e.  Any of Your Affiliated pharmacies;

    f.  Third Party PBM Consultants;

    g.  Plan Sponsors, including any Plaintiffs; and

    h.  Consumers/plan beneficiaries.

**REQUEST NO. 9:**  All Documents and Communications relating to any request for proposal or similar process ("RFP") issued by any Plaintiff to which You submitted a response, including but not limited to Your executed bid or RFP response and any related drafts, amendments, or supplements.

**REQUEST NO. 10:**  All Documents and Communications related to Your formularies that included Diabetes Medications including but not limited to:

    a.  Documents and Communications relating to the design, development, or management of such formularies;

b.  Documents and Communications provided to, reviewed by, relied on, exchanged in, or produced by Your formulary committees, any predecessor formulary committees, and any specialists or experts that you employed, contracted with, or otherwise consulted or engaged;

c.  All agendas, meeting minutes, pre-meeting information packets, notes, memoranda, monographs, presentations, and communications involving Your formulary committees;

d.  Actual and projected financial analyses or analytic models relating to formulary placement, formulary exclusion, or Manufacturer Payments;

e.  Documents and Communications relating to business trends or market share in each Diabetes Medication's therapeutic class;

f.  Documents and Communications with the Manufacturer Defendants relating to formulary placement, formulary exclusion, or Manufacturer Payments;

g.  Documents and Communications with any Rebate Aggregator relating to formulary placement, formulary exclusion, or Manufacturer Payments;

h.  Documents and Communications with any Plan Sponsor or Third Party PBM Consultants relating to formulary placement, formulary exclusion, or Manufacturer Payments;

i.  Documents and Communications involving or exchanged with any of Your clients (including Plaintiffs) relating to formulary placement, formulary exclusion, or Manufacturer Payments; and

j.  Documents and Communications involving or exchanged with any pharmacy in Your Pharmacy Network relating to formulary placement, formulary exclusion, or Manufacturer Payments.

**REQUEST NO. 11:** Documents, Communications, and data concerning Manufacturer Payments related to Diabetes Medications. This request includes but is not limited to: (a) all Documents, Communications, and data reflecting the name, type, nature, negotiation, process for determining, amount, manner of calculation, and manner of classification or categorization of any Manufacturer Payments; (b) all contracts, agreements, invoices, data, reconciliation reports, and analyses relating to Manufacturer Payments; (c) all Documents and Communications relating to

16

how or why Manufacturer Payments changed over time (e.g., in title, form, amount, or any other aspect); and (d) Documents, Communications, and data sufficient to identify, for each month of the Relevant Time Period, the name, type, nature and basis of, amount, manner of calculation, and manner of classification or categorization of any Manufacturer Payments that were (i) received or otherwise retained by You (or any Affiliated Entity); or (ii) conveyed or otherwise provided or paid by You (or any Affiliated Entity) to Plan Sponsors or other of Your clients;

**REQUEST NO. 12:**  All Documents and Communications concerning the List Prices of Diabetes Medications, including, but not limited to, internal Documents and Communications, transactional data, invoices, and Documents and Communications that You provided to the Manufacturer Defendants or that the Manufacturer Defendants provided to You.

**REQUEST NO. 13:**  All Documents and Communications, including studies, reports, or analyses, relating to the health, economic, or financial impact of List Price increases for the Diabetes Medications on: (a) the out-of-pocket costs incurred by any consumer; (b) the prices or amounts paid by Plan Sponsors; (c) the overall costs to the healthcare system; or (d) the health of diabetics.

**REQUEST NO. 14:**  All Documents and Communications relating to Your co-pay accumulator and co-pay maximizer programs concerning the Diabetes Medications, or any other program relating to patient assistance or patient out-of-pocket costs for the Diabetes Medications, including but not limited to any partnership with Blink Health LLC or any of the Manufacturer Defendants.

**REQUEST NO. 15:**  All Documents and Communications relating to Diabetes Medications, Rebate Aggregators, or Manufacturer Payments that You considered, cited,

referenced, used, or relied on during (or in preparing for) presentations to investors (including but not limited to earnings calls, financial guidance releases, or financial guidance conferences).

**REQUEST NO. 16:**  All Documents and Communications relating to the amounts or types of savings You generate or purport to generate for patients, Your clients (including any Plaintiffs), and the healthcare system, including but not limited to all Documents and Communications relating to (a) whether and to what extent Manufacturer Payments are passed through to Plan Sponsors (including any Plaintiff) and (b) the causes of rising prices for Diabetes Medications.

**REQUEST NO. 17:**  All Documents and Communications relating to the transparency or lack of transparency into You or Your business practices, Rebate Aggregators, or drug pricing.

**REQUEST NO. 18:**  All Documents and Communications relating to any conflicts of interest stemming from Your relationships with any Manufacturer Defendant, PBM Defendant, Rebate Aggregator, Plan Sponsor, or Plan Sponsor Consultant.

**REQUEST NO. 19:**  Documents sufficient to show Your policies, procedures, and written directives relating to conflicts of interest.

**REQUEST NO. 20:**  For any Rebate Aggregator or group purchasing organization with whom You collaborated, partnered, contracted, worked, or engaged in any capacity concerning any Manufacturer Payments relating to claims by any Plaintiff Health Plan beneficiaries for Diabetes Medications, all Documents and Communications relating to any disclosure of such relationships to such Plaintiff.

**REQUEST NO. 21:**  All Documents and Communications relating to whether any Manufacturer Payment, any Rebate Aggregator, or any of Your conduct has the purpose, function, or effect of shielding Manufacturer Payments or rebates from Plan Sponsors (including Plaintiffs)

or otherwise preventing, hindering, or obstructing the payment of Manufacturer Payments or rebates to Plan Sponsors.

**REQUEST NO. 22:** All Documents and Communications relating to any financial, economic, or profitability analysis relating to Diabetes Medications, including (a) Manufacturer Payments for Diabetes Medications, (b) formulary placement or exclusion of the Diabetes Medications, (c) fees received from pharmacies relating to Diabetes Medications, and (d) fees received from Your clients relating to Diabetes Medications.

**REQUEST NO. 23:** For the period through January 1, 2024, all Documents and Communications relating to the 2023 Price Cuts, including but not limited to internal Documents and Communications and Documents and Communications with third parties (including any Plaintiff or any other of Your Plan Sponsors).

**REQUEST NO. 24:** All Documents and Communications relating to Your representations to Plan Sponsors or to other clients or potential clients (including any Plaintiff) concerning Your pharmacy-benefit-management services, Diabetes Medications, or Manufacturer Payments, including Documents and Communications sufficient to show all advertising materials, marketing materials, FAQs, and standardized, form, or template presentations, representations, or responses to requests for proposal relating to Your pharmacy-benefit-management services, Diabetes Medications, or Manufacturer Payments.

**REQUEST NO. 25:** Documents and Communications relating to Your characterization of Yourself as a "principal" for revenue recognition purposes as set forth in filings with the United States Securities and Exchange Commission by You or by Your corporate parents or Affiliates that include Your revenues in such filings.

**REQUEST NO. 26:**  Documents sufficient to show Your internal processes, policies, or procedures for audits by You or Your clients concerning Your pharmacy-benefit-management services.

**REQUEST NO. 27:**  All Documents and Communications relating to any investigations, accountings, audits, inquiries, or similar proceedings initiated, requested, or otherwise pursued by any Plan Sponsor or other fiduciary (including any Plaintiff): (a) to verify amounts received by a Plan Sponsor relating to the Diabetes Medications or (b) questioning, objecting to, raising concerns regarding, or otherwise relating to any actual or potential conflicts relating to Your relationships with any Manufacturer Defendants, PBM Defendants, Rebate Aggregators, or Plan Sponsor Consultants.

**REQUEST NO. 28:**  For each person identified in response to Interrogatory No. 1 of Plaintiffs' First Set of Master Interrogatories to PBM Defendants, all:

    a.  personnel files for the person (e.g., Documents relating to hiring, firing, promotion, compensation, bonuses, demotion, admonition, discipline, commendation, or performance reviews);

    b.  electronic and hard copy diaries, calendars, appointment books or notes, notebooks, or to-do lists;

    c.  trip and travel logs and records, expense reports, and entertainment reports, including any other supporting Documents;

    d.  bills, statements, records, and supporting Documents concerning local, long distance, and cellular telephone calls by such person, including calls made using telephones not paid for by You (such as home office, fax, and personal telephone numbers, personal cellphones, and temporary pay-as-you-go cellphones) if such telephones were used for business purposes;

    e.  Documents relating to membership in any trade association or industry group or attendance at any trade association, industry group meeting, or investor conference, including announcements, membership lists, presentations (including speaker notes), agendas, minutes, notes, attendance lists, and correspondence;

    f.  a copy of the person's most recently created resume or curriculum vitae (CV);

g.  copies of any transcripts or recordings of any testimony of the person relating to topics set forth in Interrogatory No. 1, such as testimony at a deposition, trial, or public hearing;

h.  Documents sufficient to show the person's complete contact information, including all phone numbers, social media usernames or "handles," and email addresses used by such persons for any business purposes, even if only sparingly; and

i.  any severance agreements in connection with the person ceasing employment or changing employment status with You (without time limitation).

**REQUEST NO. 29:**  All Documents and Communications You identified or relied upon in answering Plaintiffs' First Set of Master Interrogatories.

**REQUEST NO. 30:**  All Documents and Communications referenced in or relied upon in Your Rule (26)(a)(1) Initial Disclosures.

**REQUEST NO. 31:**  Documents and Communications that evidence, support, or refute any defense You assert or intend to assert in this Action, including Documents and Communications You intend to introduce into evidence, or upon which You intend to rely, at any hearing or trial in this Action.

**REQUEST NO. 32:**  Documents sufficient to show: (a) the average per member per month cost for each of the Diabetes Medications for Your Plan Sponsors or their beneficiaries for each month during the Relevant Time Period; (b) the average per member per year cost for each of the Diabetes Medications for Your Plan Sponsors or their beneficiaries for each year during the Relevant Time Period; (c) Your annual gross profit per claim for each year during the Relevant Time Period for each of the Diabetes Medications; and (d) average annual spend across Your Plan Sponsors for each year of the Relevant Time Period for each of the Diabetes Medications. The information sought in subparts (a)-(d) above should be broken down, to the extent possible, by (i) self-insured employer plans; (ii) commercial group plans; (iii) individual health plans; (iv) Part D

plans; (v) Medicare Advantage; (vi) Medicaid programs or Medicaid managed care plans; and (vii) Qualified health Plans under the Affordable Care Act.

**REQUEST NO. 33:**  All claims, Utilization Management, and Manufacturer Payment data and Documents for the Diabetes Medications. The parties shall meet and confer to address the identification, production, and production format for such data, as well as the data fields to be provided.  The data fields shall include but not be limited to the data fields identified on Attachment A hereto.

**REQUEST NO. 34:**  All data and any analysis using, based on, commenting on, or derived from data from IQVIA, IMS, SDI, Symphony, Verispan, Wolters Kluwer, MMIT, Decision Resources Group,  BusinessOne, or any other comparable entity relating to the Diabetes Medications, including but not limited to:

      a.      IQVIA/IMS Integrated Promotional Services (IPS) or Channel Dynamics;

      b.      IQVIA/IMS National Prescription Audit data (NPA);

      c.      IQVIA/IMS Xponent data;

      d.      IQVIA/IMS National Sales Perspective data (NSP);

      e.      IQVIA/IMS National Disease and Therapeutic Index data (NDTI);

      f.      SDI/Symphony/Verispan Vector One National data (VONA); and

      g.      Wolters Kluwer Prescriber level prescription data.

Dated: October 28, 2024                          Respectfully submitted,


    *s/ Joanne Cicala*                              *s/ David R. Buchanan*
Joanne Cicala                                   David R. Buchanan
THE CICALA LAW FIRM PLLC                         SEEGER WEISS LLP
101 College Street                              55 Challenger Road
Dripping Springs, TX 78620                      Ridgefield Park, NJ 07660
512-275-6550                                    973-639-9100

*Liaison Counsel for*                           *Liaison Counsel for*
*State Attorney General Track*                   *Self-Funded Payer Track*


    *s/ Matthew F. Gately*
Matthew F. Gately
COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
201-845-9600

*Liaison Counsel for*
*Class Action Track*

**Attachment A – Data Fields**

1. For Manufacturer Payments data and Documents, the data fields and documents produced shall include, but not be limited, to data and Documents sufficient to show:

    a. the total Manufacturer Payments received by You or Your Affiliates from each of the Manufacturer Defendants relating to claims by each Plaintiff's Health Plan beneficiaries for Diabetes Medications;

    b. how such Manufacturer Payments were categorized (e.g., rebates, consulting fees, clinical program fees, administrative fees, financial incentives, formulary-placement or access fees, inflation or price-protection fees, etc.);

    c. the portion of those Manufacturer Payments paid to or otherwise passed through to such Plaintiff;

    d. the total amounts paid to or otherwise retained by any Rebate Aggregator or Plan Sponsor Consultant relating to claims by such Plaintiff's Health Plan beneficiaries for Diabetes Medications;

    e. The total amounts paid by You to any of Your Affiliated pharmacies in connection with claims by such Plaintiff's Health Plan beneficiaries for Diabetes Medications;

    f. The total amounts paid by You to any non-Affiliated pharmacies in connection with claims by such Plaintiff's Health Plan beneficiaries for Diabetes Medications;

    g. The total revenues and profits earned by You or any of Your Affiliated pharmacies, including mail-order or specialty pharmacies, in connection with claims by such Plaintiff's Health Plan beneficiaries for Diabetes Medications; and

    h. The total amount paid to You by such Plaintiff in connection with Your pharmacy-benefit management services.

2. Claim Number (the number assigned to the claim or encounter filled by the pharmacy);

3. Claim Sequence (if available, the sequence or suffix of the claim which is used as the claim is adjusted or adjudicated);

4. Original Claim Number (if needed for adjustments, the original claim number to group a set of claims instances);

5. Base Claim Number (the "base" or "root" of a claim without any prefixes or suffixes, used to properly identify a set of claims);

6. Claim Status (the adjudication status of the claim, i.e., paid, reversed, adjusted, void, denied, etc.);

7. Rx Number (the number of the prescription being prescribed by the doctor);

8. Fill Number (the iteration of the number of times the prescription has been filled);

9. New or Refill (indicator if the prescription is new (first time filled) or a refill of an existing prescription);

10. Unique Patient ID (Your internal ID used to match between eligibility and claims);

11. Policy Number (the number which links all members together for a policy);

12. Dependent Number (the individual number/identifier of the patient);

13. First Name (first name of the patient);

14. Last Name (last name of the patient);

15. Date of Birth (date of birth of the patient);

16. Group Name;

17. Group Number;

18. Plan Description;

19. Line of Business;

20. Any other fields that can be used to identify or describe the PBM or plan name who was billed or paid for the claim;

21. Indication if the claim was paid for fully by the patient (Cash) and was not billed or any monies applied to the payment by insurance or any other entity or assistance program, including but not limited to manufacturer rebates, discounts, or chargebacks;

22. Prescriber Number (Your internal provider identifier for the prescribing party);

23. Prescriber NPI Number (the industry standard NPI number for the prescribing party);

24. Prescriber DEA Number (the industry standard DEA number for the prescribing party);

25. Prescriber name (the full name of the doctor or provider that prescribed the prescription);

26. Prescriber Address 1;

27. Prescriber Address 2;

28. Prescriber City;

29. Prescriber State;

30. Prescriber ZIP;

25

31. Dispensing Pharmacy Number (Your internal identifier for the pharmacy where the prescription was filled);

32. Dispensing Pharmacy NPI Number (the industry standard NPI number for the pharmacy where the prescription was filled);

33. Dispensing Pharmacy NCPDPID (the industry standard DEA number for the pharmacy where the prescription was filled);

34. Dispensing Pharmacy Chain ID (if the pharmacy is part of a chain, then the identifier for the parent corporation);

35. Dispensing Pharmacy Name (the name of the pharmacy where the prescription was filled);

36. Dispensing Pharmacy Address 1;

37. Dispensing Pharmacy Address 2;

38. Dispensing Pharmacy City;

39. Dispensing Pharmacy State;

40. Dispensing Pharmacy ZIP;

41. Billing Pharmacy Number (Your internal identifier for the pharmacy where the prescription was filled);

42. Billing Pharmacy NPI Number (the industry standard NPI number for the pharmacy where the prescription was filled);

43. Billing Pharmacy NCPDPID (the industry standard DEA number for the pharmacy where the prescription was filled);

44. Billing Pharmacy Chain ID (if the pharmacy is part of a chain, then the identifier for the parent corporation);

45. Billing Pharmacy Name (the name of the pharmacy where the prescription was filled);

46. Billing Pharmacy Address 1;

47. Billing Pharmacy Address 2;

48. Billing Pharmacy City;

49. Billing Pharmacy State;

50. Billing Pharmacy ZIP;

51. Date the prescription was written;

52. Date the prescription was filled;

53. Date the claim was adjudicated;

54. GPI Number (the Generic Product Identifier being billed for the dispensed drug);

55. Full 11-digit NDC;

56. Drug label name (the name of the drug as it would appear on the manufacturer's label on the bottle);

57. Drug strength (amount of drug in the dosage form or a unit of the dosage form (e.g., 500 mg capsule, 250 mg/5mL suspension, etc.));

58. Drug Manufacturer;

59. Payment Basis (if available, the pricing system utilized for payment calculations (e.g., AWP, MAC, FUL, billed amount, usual & customary));

60. Dispenser Type Code, if available, and descriptions of those codes (e.g., indicates if the claim was filled at retail or mail order);

61. Ingredient cost (i.e., the amount charged to the payer(s) by the pharmacy for the pharmaceutical product, exclusive of the dispensing fee);

62. Pharmacy's billed amount (among the provider is billing to the insurance carrier, may also be known as Usual and Customary Charge, Gross Amount Due or Submitted Ingredient Cost + Dispensing Fee);

63. Dispensing fee paid;

64. Insurance Allowed Amount (the maximum amount the insurance carrier is allowed to pay based on the policy's network and plan coverage);

65. Insurance Plan Paid Amount (amount the insurance carrier paid to the provider);

66. Member Responsibility Amount (amount the individual member was responsible for paying to the provider (deductible, copay, coinsurance, etc.));

67. Any and all fields that are associated with and describe the Member Responsibility Amount;

68. Total Paid Amount (the total amount the provider was paid for this claim related to this insurance policy);

69. Other Insurance Paid Amount (any additional known payment made to the provider by a third party or other insurance policy);

70. Identifier and description of the Other Insurance that made payment on the claim;

27

71. Quantity dispensed;

72. Quantity prescribed;

73. Days supply;

74. Sales tax (if applicable);

75. Incentive amount paid (i.e., a contractually agreed upon incentive amount that is paid to the pharmacy for services rendered);

76. Amount attributed to processor fee (i.e., an amount charged to the pharmacy by either the health plan or PBM as a transaction fee);

77. Amount attributed to product selection/brand drug (i.e., an amount added to the member responsibility based on using a Brand Name product when a generic is available);

78. Amount attributed to product selection/non-preferred formulary selection (i.e., an amount added to the member responsibility based on using a nonpreferred product when a formulary alternative is available);

79. Amount attributed to product selection/brand non-preferred formulary selection (i.e., an amount added to the member responsibility based on using a non-preferred Brand Name product when a formulary Brand Name product or generic product is available);

80. Information sufficient to determine if the patient payment was based on a flat tiered co-payment or a percentage coinsurance;

81. Amount attributed to periodic deductible;

82. Copay or patient pay amount;

83. Amount exceeding periodic benefit maximum;

84. Information sufficient to determine if the patient payment was in relation to being above or below a deductible amount or out-of-pocket maximum threshold;

85. Amount attributed to coverage gap (i.e., information sufficient to determine if a Medicare Part D patient payment was within the Medicare Part D "donut hole," if applicable);

86. If applicable, information sufficient to determine if a co-pay coupon program or other patient assistance program was utilized on the claim, including a description of said program and the amount paid by the program; and

87. A list of all available fields and which of those fields have addressed any of the items listed above.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing PLAINTIFFS' FIRST SET

OF MASTER REQUESTS FOR PRODUCTION OF DOCUMENTS TO PBM DEFENDANTS

was served via email on all counsel of record on this 28th day of October, 2024.

*s/ Steven J. Daroci*
Steven J. Daroci

Service List
*In re Insulin Priing Litigation*, MDL No. 3080
Case No. 2:23-md-03080-BRM-RLS

| | |
|---|---|
| Liza M. Walsh, Esq.<br>Katelyn O'Reilly, Esq.<br>Selina Ellis, Esq.<br>WALSH PIZZI O'REILLY<br>FALANGA LLP<br>Three Gateway Center<br>100 Mulberry Street, 15th Floor<br>Newark, NJ 07102<br><br>Michael R. Shumaker, Esq. (pro hac vice)<br>Julie E. McEvoy, Esq. (pro hac vice)<br>William D. Coglianese, Esq. (pro hac vice)<br>Melissa L. Patterson, Esq. (pro hac vice)<br>JONES DAY<br>51 Louisiana Avenue, N.W.<br>Washington, DC 20001<br>T: (202) 879-3939<br><br>*Attorneys for Defendant Sanofi-Aventis U.S. LLC* | Melissa A. Geist, Esq.<br>Julia A. Lopez, Esq.<br>REED SMITH LLP<br>506 Carnegie Center, Suite 300<br>Princeton, NJ 08540<br>T: (609) 514-5978<br><br>James F. Hurst, Esq. (pro hac vice)<br>Andrew A. Kassof, Esq. (pro hac vice)<br>Diana M. Watral, Esq. (pro hac vice)<br>Ryan Moorman, Esq. (pro hac vice)<br>Jason A. Feld, Esq. (pro hac vice)<br>KIRKLAND & ELLIS LLP<br>333 West Wolf Point Plaza<br>Chicago, IL 60654<br>T: (312) 862-2000<br><br>*Attorneys for Defendant Eli Lilly and Company* |
| Brian W. Carroll, Esq.<br>McCARTER & ENGLISH, LLP<br>Four Gateway Center<br>100 Mulberry Street<br>Newark, NJ 07102<br>T: (973) 639-2020<br><br>James P. Rouhandeh, Esq. (pro hac vice)<br>David B. Toscano, Esq. (pro hac vice)<br>DAVIS POLK & WARDWELL LLP | Kevin H. Marino<br>John D. Tortorella<br>MARINO, TORTORELLA & BOYLE, P.C.<br>437 Southern Boulevard<br>Chatham, New Jersey 07928<br>T: (973) 824-9300<br><br>Craig Singer<br>R. Kennon Poteat III<br>A. Joshua Podoll |

| | |
|---|---|
| 450 Lexington Avenue<br>New York, NY 10017<br>T: (212) 450-4000<br><br>Neal A. Potischman, Esq. (pro hac vice)<br>Andrew Yaphe, Esq. (pro hac vice)<br>DAVIS POLK & WARDWELL LLP<br>1600 El Camino Real<br>Menlo Park, CA 94025<br>T: (650) 752-2000<br><br>*Attorneys for Defendant Novo Nordisk Inc.* | Benjamin Hazelwood<br>Daniel Dockery<br>WILLIAMS & CONNOLLY LLP<br>680 Maine Ave SW<br>Washington, DC 20024<br>T: (202) 434-5000<br><br>*Counsel for CVS Health Corporation; CVS Pharmacy, Inc.; Caremark Rx, L.L.C.; CaremarkPCS Health, L.L.C.; and Caremark, L.L.C.* |
| Jason R. Scherr<br>Patrick A. Harvey<br>Lindsey T. Levy<br>MORGAN, LEWIS & BOCKIUS LLP<br>1111 Pennsylvania Avenue, NW<br>Washington, D.C. 20004-2541<br>jr.scherr@morganlewis.com<br>patrick.harvey@morganlewis.com<br>lindsey.levy@morganlewis.com<br>T: (202) 739-3000<br><br>*Counsel for Evernorth Health, Inc. (formerly known as Express Scripts Holding Company), Express Scripts, Inc., Express Scripts Administrators, LLC, ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Medco Health Solutions, Inc., and The Cigna Group* | Thomas P. Scrivo<br>Young Yu<br>O'TOOLE SCRIVO, LLC<br>14 Village Park Road<br>Cedar Grove, NJ 07009<br>T: (973) 239-5700<br><br>Brian D. Boone<br>ALSTON & BIRD LLP<br>1120 S. Tryon Street, Ste. 300<br>Charlotte, NC 28280<br>T: (704) 444-1000<br><br>Elizabeth Broadway Brown<br>ALSTON & BIRD LLP<br>One Atlantic Center<br>1201 W. Peachtree Street, NW, Ste. 4900<br>Atlanta, GA 30309-3424<br>T: (404) 881-7000<br><br>Kelley Connolly Barnaby<br>ALSTON & BIRD LLP<br>950 F. Street, NW<br>Washington, DC 20004<br>T: (202) 239-3300<br><br>*Counsel for OptumRx, Inc., UnitedHealth Group Incorporated; OptumInsight, Inc.; OptumRx Holdings LLC; and Optum, Inc.* |

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br>**ALL CASES** | **Case No. 2:23-md-03080**<br>**MDL No. 3080**<br><br>**JUDGE BRIAN R. MARTINOTTI**<br>**JUDGE RUKHSANAH L. SINGH** |

## PLAINTIFFS' FIRST SET OF MASTER INTERROGATORIES
## TO PBM DEFENDANTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Rules 26.1 and 33.1 of the Local Civil Rules for the United States District Court for the District of New Jersey, Case Management Order #13 [ECF No. 313], and subject to the Definitions and Instructions set forth below, Plaintiffs request that PBM Defendants Caremark Rx, L.L.C.; Caremark L.L.C; CaremarkPCS Health, L.L.C.; Express Scripts, Inc.; Medco Health Solutions, Inc.; Express Scripts Administrators, LLC; OptumRx, Inc.; United Healthcare Services, Inc.; and UnitedHealthcare Insurance Co. respond to these Interrogatories (each an "Interrogatory" and collectively, the "Interrogatories") in writing and under oath in accordance with Case Management Order #13.

## **DEFINITIONS**

1.      "Action" means the above-captioned litigation.

2.      "Affiliate" or "Affiliated Entity" means any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person or entity specified.

3.      "AWP" means Average Wholesale Price.

4.     "Communication" means and includes every manner or means of disclosure, transfer, or exchange of information, whether orally or in writing or whether face-to-face, by telephone, telecopy, mail, email, facsimile, personal delivery, instant message service, overnight delivery, voice message, voicemail-to-email message, text message, multimedia/social media message, or otherwise.

5.     The term "co-pay accumulator program" means an adjustment program that restricts or limits drug manufacturer co-pay assistance coupons or other drug manufacturer assistance from reducing or being credited to a patient's deductible or the maximum out-of-pocket limits.

6.     The term "co-pay maximizer program" means any program related to front loading or maximizing the value of drug manufacturers co-pay assistance programs or other co-pay assistance.

7.     "CVS Caremark" means CVS Health Corporation; CVS Pharmacy, Inc.; Caremark Rx, LLC; CaremarkPCS Health, LLC; and Caremark, LLC, including any predecessor or successor entities, subsidiaries, parents, or Affiliates, as well as any directors, officers, employees, agents or any other person acting on their behalf.

8.     "Diabetes Medications" refers to all insulin products and glucagon-like peptide receptor agonists (GLP-1s) as set forth in Section II.D of Case Management Order #10 entered in this Action [ECF No. 198], including: Apidra, Basaglar, Fiasp, Humalog, Humulin, Lantus, Levemir, Novolin, Novolog, Ozempic, Soliqua, Toujeo, Tresiba, Trulicity, Victoza, Admelog, Insulin Aspart, Insulin Degludec, Insulin Glargine, Insulin Lispro, Relion Humulin, Relion Novolin, Relion Novolog, Rezvoglar, Semglee, Steglatro, Tanzeum, Mounjaro (Tirzepatide/GIP),

2

Xultophy (insulin degludec/liraglutide), Rybelsus (semaglutide tablets), and Adylxin (lixisenatide).

9.      "Document" shall have the same meaning as set forth in Case Management Order #11 (Stipulation and Order Governing the Production of Electronically Stored Information and Hard Copy Documents) [ECF No. 208] (the "ESI Order").  For the avoidance of doubt, the term "Document" includes any written or recorded Communications.

10.     "Electronically Stored Information," "Electronic Data," or "ESI" is defined in accordance with the definition provided in the ESI Order.

11.     "Express Scripts" means Express Scripts, Inc.; Medco Health Solutions, Inc.; Evernorth Health, Inc. (formerly Express Scripts Holding Company); Cigna Health and Life Insurance Company; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; and Express Scripts Administrators, LLC, including any predecessor or successor entities, subsidiary, parent, or Affiliate, as well as any directors, officers, agents, or any other person acting on their behalf.

12.     "List Price" means any price reported or made available publicly or to publishing compendiums or databanks including, but not limited to, AWP and WAC prices.

13.     "Manufacturer Defendants" means Eli Lilly and Company, Novo Nordisk Inc., and Sanofi-Aventis U.S. LLC and any of their predecessors, successors, Affiliates, parents, subsidiaries, offices (including, but not limited to, local, regional, national, executive or foreign offices), divisions, business units and branches thereof, and any present or former officers, directors, employees or agents. The term "Manufacturer Defendants" also includes all attorneys, accountants, consultants, advisors and all other persons or entities acting or purporting to act on any Manufacturer Defendant's behalf.

14.    "Manufacturer Payments" means all payments or financial benefits of any kind provided by any Manufacturer Defendant to You or any of Your Affiliated Entities. Manufacturer Payments include but are not limited to administrative fees, clinical detailing, commissions, credits, data analysis fees, data management fees, data sales fees, discounts, drug pull-through programs, educational grants, formulary placement fees, health management fees, implementation allowances, indirect purchase fees/rebates, inflation fees/rebates, interest, mail order purchase discounts, market share incentives/rebates/fees, medication monitoring fees, dispensing fees, performance based incentives, pharmacy supplemental discounts, price concessions, price or margin guarantees, price protection fees/rebates, prompt payment discounts, portal fees, enterprise fees, data fees, promotional allowances, rebates, rebate submission fees, reimbursement for research projects, utilization management fees, volume discounts, and any other form of consideration.

15.    "Net Price" means the price paid by Plan Sponsors for the Diabetes Medications after accounting for all Manufacturer Payments or other forms of discounts, rebates, fees, or any other form of economic consideration received by the Plan Sponsor related to the Diabetes Medications.

16.    "Optum" means UnitedHealth Group, Inc.; United Healthcare Services, Inc.; UnitedHealthcare Insurance Co.; Optum, Inc.; OptumRx, Inc.; OptumRx Holdings, LLC; and OptumInsight, Inc., including any predecessor or successor entities, subsidiary, parent or Affiliate, as well as any directors, officers, agents or any other person acting on their behalf.

17.    "PBM" means pharmacy benefit manager.

18.    "PBM Defendants" means Express Scripts, Optum, and CVS Caremark.

19.     The terms "person" or "individual" mean any natural person, legal person, governmental entity (or agency thereof), quasi-public entity, or other form of entity, corporation, partnership, trust, sole proprietorships, unincorporated association, or other entity of any description.

20.     "Pharmacy Network" means a collection of pharmacies that individuals within a pharmacy benefits plan are required or incentivized to use to obtain coverage for the costs of prescription drugs.

21.     "Plaintiff" means and refers to any named plaintiff in any case currently in this Action, and any named plaintiff in any case later filed in, added to, transferred to, or coordinated with (pursuant to a court order or the Parties' express written agreement) this Action, as well as each such plaintiff's current and former employees, representatives, or agents.  Notwithstanding the foregoing definition, "Plaintiff" shall not include any State that has not asserted claims on behalf of a health plan.

22.     "Plaintiff Health Plan" means any health plan offered by, administered by, or sponsored by a Plaintiff (as defined herein) that offered or included Prescription Drug Coverage.

23.     "Plan Sponsor" means any entity (e.g., self-funded employer, insurance company, governmental entity, union health plan) that is responsible for prescription drug purchases on behalf of individuals pursuant to a pharmacy benefits plan. Each Plan Sponsor may offer multiple pharmacy benefits plans.

24.     "Plan Sponsor Consultant" means any consultant, advisor, broker, or similar third party that provides consulting services to a Plan Sponsor. Plan Sponsor Consultants include, but are not limited to, Aon plc, Gallagher US, Mercer (US) LLC, and Willis Towers Watson plc, and their Affiliates.

25.    "Prescription Drug Coverage" means any form of health insurance, health coverage, prescription drug plan, or any other health plan that helps enrollees pay for prescribed pharmaceutical drugs.

26.    "Rebate Aggregator" means any entity, including a group purchasing organization, that negotiates for Manufacturer Payments on behalf of multiple entities or that holds the contracts governing or otherwise relating to those Manufacturer Payments. Rebate Aggregators include, but are not limited to, Ascent Health Services, LLC; Coalition for Advanced Pharmacy Services; Emisar Pharma Services, Inc.; Zinc Health Ventures, L.L.C.; and Zinc Health Services LLC; and any of their predecessors, successors, parents, subsidiaries, offices (including, but not limited to, local, regional, national, executive or foreign offices), Affiliates, divisions, business units and branches thereof, and any present or former officers, directors, employees or agents.

27.    The terms "relating to," "related to," or "concerning" include, but are not limited to, the following meanings: referring to, bearing upon, describing, reflecting, responding to, identifying, constituting, evaluating, embodying, evidencing, evincing, dealing with, pertaining to, having to do with, or being in any way relevant to the given subject.

28.    "Utilization Management" means and includes any programs or strategies used by a health carrier or third-party administrator designed to monitor the use of or evaluate the medical necessity, appropriateness, efficacy, or efficiency of prescription drugs, including but not limited to: prior authorization, step therapy, NDC blocks, counter-detailing or counter-promoting, co-pay differentials, step edits or "fail first" requirements, quantity limits, or switching or therapeutic substitution.

29.    "WAC" means Wholesale Acquisition Cost.

30.    "You" or "Your" means the Defendant responding to these Interrogatories.

6

31.    "2023 Price Cuts" refers to the Manufacturer Defendants' 2023 announcements of a series of measures to lower the price of certain forms of Diabetes Medications.

32.    Any terms not specifically defined shall be given their ordinary meanings and shall be construed to give each Interrogatory the broadest scope allowable by the Federal Rules of Civil Procedure.

## RULES OF CONSTRUCTION

1.    The conjunctions "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring all responses within the scope of these Interrogatories.

2.    "Include," and variations of that verb should not be construed as limiting an Interrogatory.

3.    The singular form of a noun or pronoun includes the plural form and vice versa.

4.    The masculine shall be construed to include the feminine and vice versa.

5.    The use of any tense of any verb shall also include within its meaning all other tenses of that verb.

6.    A definition included above applies to both the lower- and upper-case reference to such term (e.g., Document and document; Person and person) and to both the singular and plural forms of such term (e.g., Document and Documents; person and persons).

## INSTRUCTIONS

1.    Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these Interrogatories are continuing in nature so that if, after answering, You acquire additional responsive knowledge or information, Plaintiff directs that You serve supplemental answers after acquiring such additional knowledge or information.

7

2.      If at any time after answering these Interrogatories You determine that an answer You provided was false or incomplete, You must immediately notify Plaintiff's counsel and provide amended answers as soon as reasonably possible.

3.      When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

4.      When referring to documents, "to identify" means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) authors, addressees, and recipients. In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

5.      If You refuse to respond to any of these Interrogatories based on a claim of privilege pursuant to Federal Rule of Civil Procedure 26(b)(5), You must provide a statement of the claim of privilege and all facts relied upon in support of that claim, including the parties involved, any dates involved, the relevant subject matter of the privileged material, any documents or ESI supporting the privileged information, including the dates, authors, recipients, title and subject matter, and present location of any documents or ESI involved. In the case of attorney work-product privilege, You must also identify the litigation for which the work product was prepared.

6.      If You answer any Interrogatory by reference to business records pursuant to Federal Rule of Civil Procedure 33(d), identify such records by Bates number and the name of Your employee certifying the documents or ESI as business records for purposes of answering the Interrogatory.

8

## RELEVANT TIME PERIOD

Unless otherwise indicated or called for by a specific Interrogatory, the "Relevant Time Period" for these Interrogatories is January 1, 2011 to January 1, 2023. The Relevant Time Period shall include all information that relates in whole or in part to the events or circumstances within this period, including responsive information and Documents even if dated, prepared, generated, or received outside of this period.

## INTERROGATORIES

**INTERROGATORY NO. 1:**    Identify any person (including officers, directors, employees, third parties, or agents) with relevant information relating to the claims or defenses herein, including but not limited to any person with any responsibilities relating to the topics set forth below, and, for each such person identified, provide their positions or titles, a description of their job duties and relevant knowledge, their years of employment, and any relevant internal divisions, subdivisions, departments, committees, subcommittees, teams, units, or working groups of which they were a member:

   a. Diabetes Medications;

   b. Any of the Manufacturer Defendants;

   c. Pricing for any of the Diabetes Medications, including related contracts, and agreements, and internal and external Communications (e.g., those involving Manufacturer Defendants, pharmacies, Rebate Aggregators, Plan Sponsors, other PBMs, Plan Sponsor Consultants, or any other outside entities);

   d. Contracts and agreements concerning any of the Diabetes Medications, including any pricing agreements, supply agreements, purchase agreements, Manufacturer Payment agreements, other pricing-concession agreements, and agreements related to the performance of services or the providing of data;

   e. Communications or negotiations with the Manufacturer Defendants, wholesalers, Plan Sponsors (including Plaintiffs), payers (including

9

Plaintiffs), pharmacies, other PBMs, Rebate Aggregators, or Plan Sponsor Consultants concerning any of the Diabetes Medications;

f.  Manufacturer Payments, including (i) the amounts paid to You (or any Affiliated Entity) by the Manufacturer Defendants, (ii) the amounts paid by You (or any Affiliated Entity) to a Plan Sponsor (including any Plaintiff), (iii) the negotiation of Manufacturer Payments and contract terms or conditions relating to Manufacturer Payments (e.g., Utilization-Management measures), and (iv) the accounting, bookkeeping, calculation, payment, processing, or recording of Manufacturer Payments;

g.  Your industry relations groups or trade relations groups concerning the Diabetes Medications or the Manufacturer Defendants;

h.  Contracts and agreements with any of the other PBM Defendants, including any agreements related to rebates, Manufacturer Payments, Rebate Aggregators, or the performance of services or the providing of data;

i.  The development, design, or management of drug formularies concerning any of the Diabetes Medications, including involvement with any committees, units, departments involved in the development, design, or management of drug formularies;

j.  Formulary placement or exclusions for any of the Diabetes Medications, including formulary placement decisions and related internal and external communication (e.g., with Plan Sponsor Consultants or with Plan Sponsors, Manufacturer Defendants, wholesalers, pharmacies, payers, and others in the supply chain);

k.  Your formulary committees;

l.  Utilization Management measures for any of the Diabetes Medications;

m.  The negotiation, management, and oversight of contracts or agreements with pharmacies concerning any of the Diabetes Medications, including contracts or agreements concerning pharmacy reimbursement rates or spread pricing;

n.  Marketing or advertising, including marketing, pull through, and advertising directed to Your clients or potential clients (e.g., Plan Sponsors; employers; insurers; unions; federal, state, and local governments; or other payers), including Plaintiffs; pharmacies; and health care providers;

o.  The drafting or use of any standardized, form, or template presentations, representations, FAQs, or responses to requests for proposal relating to

10

Your pharmacy-benefit-management services, Diabetes Medications, or Manufacturer Payments;

p.  Account management for Your clients or potential clients (including any Plaintiff), including but not limited to the preparation of Your responses to requests for proposal; contract negotiations, management, or oversight; client billing or client invoicing; and audits relating to such clients;

q.  Any solicitation, request for proposal, or similar process ("RFP") issued by any Plaintiff to which You submitted a response during the Relevant Time Period (including any RFP that was issued before the Relevant Time Period but responded to within the Relevant Time Period and any RFP issued during the Relevant Time Period but responded to after the Relevant Time Period), including the process for receiving, preparing, submitting, or communicating with any Plaintiff regarding such RFP and any third-party advisors, contractors, brokers, or consultants used by such Plaintiff with whom You communicated as part of such process;

r.  The management, oversight, and operations of any mail-order or specialty pharmacy services, including pricing and discounts for any of the Diabetes Medications;

s.  Rebate Aggregators (e.g., Ascent Health Services, LLC; Coalition for Advanced Pharmacy Services, LLC; Emisar Pharma Services LLC; Zinc Health Ventures, L.L.C.; or Zinc Health Services, LLC), including related contracts and agreements;

t.  Tracking sales, orders, claims data, utilization, or prescriptions for any of the Diabetes Medications (generally, on a per-client basis, or otherwise);

u.  Programs to financially assist patients purchasing or obtaining any of the Diabetes Medications, including Your co-pay accumulator and co-pay maximizer programs;

v.  Your relationships with Plan Sponsor Consultants or Plan Sponsors (whether organized nationally, by region, or other geographic basis; by type of plan; or otherwise), including contracting, negotiating, creating Prescription Drug Plans, managing Plan Sponsor accounts, and responding to Plan Sponsor RFPs;

w.  The design or administration of any Plaintiff Health Plan or Prescription Drug Coverage during the Relevant Time Period, including with respect to Manufacturer Payments and formularies;

x.  Your relationships with (including contributions made to) any organizations working on issues concerning diabetes or drug pricing (including but not limited to industry associations, trade groups, patient

11

groups, disease awareness groups, medical or professional societies, or universities or hospitals);

y.   Public relations or press/media relations, government relations, external affairs, or lobbying;

z.   Corporate outreach and continuing medical education concerning diabetes or any of the Diabetes Medications;

aa.  The 2023 Price Cuts.

**INTERROGATORY NO. 2:**    With respect to each of the Manufacturer Defendants, identify and describe each type of Manufacturer Payment that You or Your Affiliates have received from such Manufacturer Defendant relating to each of the Diabetes Medications during the Relevant Time Period and, for each type of Manufacturer Payment, state (a) the purpose for which You or Your Affiliates received it, including an identification of any contract or agreement pursuant to which such type of Manufacturer Payment is made; (b) how You or Your Affiliates characterized or accounted for each such type of Manufacturer Payment (including for reporting to the Securities and Exchange Commission); (c) the months during which You or Your Affiliates received such type of Manufacturer Payment; (d) the amounts of such type of Manufacturer Payment received in each month; (e) the benefits or other consideration You or Your Affiliates provided in exchange for each such type of Manufacturer Payment (including but not limited to Utilization Management processes); (f) how each such type of Manufacturer Payment affected Your or Your Affiliates' revenue and gross profits per claim; and (g) how each such type of Manufacturer Payment affected costs to plans on whose behalf You or Your Affiliates are negotiating, including whether and the extent to which each such type of Manufacturer Payment is passed through to Plan Sponsors (including each Plaintiff).

**INTERROGATORY NO. 3:**    Identify all Affiliated Entities that performed any functions or provided any goods or services relating to Manufacturer Payments, formularies,

12

Utilization Management, co-pay accumulator programs, ancillary or consulting services, including patient on-boarding or data sharing, or co-pay maximizer programs for the Diabetes Medications. For each Affiliate identified, describe the entity's formation, role, the type of services provided, and its legal and working relationship with You.

**INTERROGATORY NO. 4:** Identify each Rebate Aggregator with whom You collaborated, partnered, contracted, worked, or engaged in any capacity relating to any of the Diabetes Medications, and for each such Rebate Aggregator, describe the nature and duration of Your relationship, including the formation, financial terms, duties and responsibilities of the parties, and the Plan Sponsors (including any Plaintiffs), clients, or covered lives impacted.

**INTERROGATORY NO. 5:** Identify any third parties with whom You collaborated, partnered, contracted, worked, or engaged in any capacity relating to Manufacturer Payments, formularies, co-pay accumulator programs, or co-pay maximizer programs for the Diabetes Medications, including, but not limited to, any consultants, research companies, analysts, lobbyists, or Affiliates. For each such third party entity identified, include a description of the entity's role and responsibilities and the dates of Your relationship with such entities.

**INTERROGATORY NO. 6:** Describe Your processes for making determinations regarding Manufacturer Payments, including the factors considered; departments, employees, or committees involved; chains of command; the sequence of such processes; any materials relied on in making such determinations; interactions between internal groups responsible for Manufacturer Defendant contracting and internal P&T or formulary review committees (or similar internal committees); interactions with the Manufacturer Defendants; interactions with any of Your Affiliates (including Rebate Aggregators or pharmacies); policies or procedures relating to such processes; final approval of such determinations, and communicating such determinations to

13

others in the supply chain (including Plan Sponsors, Plaintiffs or other clients, wholesalers, or pharmacies).

**INTERROGATORY NO. 7:**    Describe Your processes for making determinations regarding formulary placement, including the factors considered; departments, employees, or committees involved; chains of command; the sequence of such processes; any materials relied on in making such determinations; interactions between internal groups responsible for Manufacturer Defendant contracting and internal P&T or formulary review committees (or similar internal committees); interactions with the Manufacturer Defendants; interactions with any of Your Affiliates (including Rebate Aggregators or pharmacies); policies or procedures relating to such processes; final approval of such determinations, and communicating such determinations to others in the supply chain (including Plan Sponsors, Plaintiffs or other clients, wholesalers, or pharmacies).

**INTERROGATORY NO. 8:**    Describe Your processes for determining the reimbursement rates for any pharmacies that dispense the Diabetes Medications, including factors considered; the departments, employees, or committees involved; chains of command; the sequence of such processes; any materials relied on in making such determinations; interactions between internal groups responsible for Manufacturer contracting and internal P&T or formulary review committees (or similar internal committees); interactions with the Manufacturer Defendants; interactions with any of Your Affiliates (including Rebate Aggregators, mail-order pharmacies, and retail pharmacies); policies or procedures relating to such processes; final approval of such determinations; and communicating such determinations to others in the supply chain (including Plan Sponsors, Plaintiffs or other clients, wholesalers, or pharmacies).

**INTERROGATORY NO. 9:** For any solicitation, request for proposal, or similar process ("RFP") issued by any Plaintiff to which You submitted a response during the Relevant Time Period (including any RFP that was issued before the Relevant Time Period but responded to within the Relevant Time Period and any RFP issued during the Relevant Time Period but responded to after the Relevant Time Period), describe Your process for receiving, preparing, submitting, or communicating with such Plaintiff regarding the RFP and Your response or proposal.

**INTERROGATORY NO. 10:** For each Plaintiff Health Plan that You provided PBM services for during the Relevant Time Period, identify any Rebate Aggregator or group purchasing organization with which You collaborated, partnered, contracted, worked, or engaged in any capacity concerning Manufacturer Payments for Diabetes Medications utilized, dispensed, or purchased by members of any Plaintiff Health Plan and state whether You disclosed the relationship to such Plaintiff, and, if so, identify and describe the disclosure.

**INTERROGATORY NO. 11:** Describe any services You provided to any of the Manufacturer Defendants, (including but not limited to services relating to Manufacturer Payments, Diabetes Medications, formularies, Utilization Management, co-pay accumulator programs, data sharing, patient on-boarding, or any ancillary or consulting services) and, for each type of service, describe how You were compensated by such Manufacturer Defendant for such services, including whether the services and compensation were set forth in a contract or agreement; how the compensation was determined (including any fair-market value computations); whether the compensation was fixed or contingent upon sales, referrals, or other variable factors; and whether and how such services and compensation were disclosed to Plan Sponsors.

15

**INTERROGATORY NO. 12:**    Identify each type of fee or cost charged by You to Plan Sponsors (including any Plaintiff) relating to Diabetes Medications (including, but not limited to, administrative fees, dispensing fees, or ingredient costs) and, for each type of fee, describe the purpose of such fees and the methodologies, data sources, and factors used to develop, calculate, or adjust such type of fee.

**INTERROGATORY NO. 13:**    Identify each type of fee or cost charged by You to pharmacies relating to Diabetes Medications (including, but not limited to, administrative fees, DIR fees, clawback fees, dispensing fees, or ingredient costs) and, for each type of fee, describe the purpose of such fees and the methodologies, data sources, and factors used to develop, calculate, or adjust such type of fee.

**INTERROGATORY NO. 14:**    Describe the methodologies, data sources, and factors used to develop, calculate, or adjust Plan Sponsors' (including Plaintiffs') reimbursement rates relating to the Diabetes Medications, including any industry benchmarks, geographic adjustments, or cost components considered.

Dated: October 28, 2024                     Respectfully submitted,


  _s/ Joanne Cicala_                          _s/ David R. Buchanan_
  Joanne Cicala                               David R. Buchanan
  THE CICALA LAW FIRM PLLC                    SEEGER WEISS LLP
  101 College Street                          55 Challenger Road
  Dripping Springs, TX 78620                  Ridgefield Park, NJ 07660
  512-275-6550                                973-639-9100

  _Liaison Counsel for_                       _Liaison Counsel for_
  _State Attorney General Track_              _Self-Funded Payer Track_


  _s/ Matthew F. Gately_
  Matthew F. Gately
  COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
  Park 80 West – Plaza One
  250 Pehle Avenue, Suite 401
  Saddle Brook, NJ 07663
  201-845-9600

  _Liaison Counsel for_
  _Class Action Track_

17

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing PLAINTIFFS' FIRST SET OF MASTER INTERROGATORIES TO PBM DEFENDANTS was served via email on all counsel of record on this 28th day of October, 2024.

*s/ Steven J. Daroci*
Steven J. Daroci

Service List
*In re Insulin Priing Litigation*, MDL No. 3080
Case No. 2:23-md-03080-BRM-RLS

| | |
|---|---|
| Liza M. Walsh, Esq.<br>Katelyn O'Reilly, Esq.<br>Selina Ellis, Esq.<br>WALSH PIZZI O'REILLY<br>FALANGA LLP<br>Three Gateway Center<br>100 Mulberry Street, 15th Floor<br>Newark, NJ 07102<br><br>Michael R. Shumaker, Esq. (pro hac vice)<br>Julie E. McEvoy, Esq. (pro hac vice)<br>William D. Coglianese, Esq. (pro hac vice)<br>Melissa L. Patterson, Esq. (pro hac vice)<br>JONES DAY<br>51 Louisiana Avenue, N.W.<br>Washington, DC 20001<br>T: (202) 879-3939<br><br>*Attorneys for Defendant Sanofi-Aventis U.S. LLC* | Melissa A. Geist, Esq.<br>Julia A. Lopez, Esq.<br>REED SMITH LLP<br>506 Carnegie Center, Suite 300<br>Princeton, NJ 08540<br>T: (609) 514-5978<br><br>James F. Hurst, Esq. (pro hac vice)<br>Andrew A. Kassof, Esq. (pro hac vice)<br>Diana M. Watral, Esq. (pro hac vice)<br>Ryan Moorman, Esq. (pro hac vice)<br>Jason A. Feld, Esq. (pro hac vice)<br>KIRKLAND & ELLIS LLP<br>333 West Wolf Point Plaza<br>Chicago, IL 60654<br>T: (312) 862-2000<br><br>*Attorneys for Defendant Eli Lilly and Company* |
| Brian W. Carroll, Esq.<br>McCARTER & ENGLISH, LLP<br>Four Gateway Center<br>100 Mulberry Street<br>Newark, NJ 07102<br>T: (973) 639-2020<br><br>James P. Rouhandeh, Esq. (pro hac vice)<br>David B. Toscano, Esq. (pro hac vice)<br>DAVIS POLK & WARDWELL LLP | Kevin H. Marino<br>John D. Tortorella<br>MARINO, TORTORELLA & BOYLE, P.C.<br>437 Southern Boulevard<br>Chatham, New Jersey 07928<br>T: (973) 824-9300<br><br>Craig Singer<br>R. Kennon Poteat III |

| | |
|---|---|
| 450 Lexington Avenue<br>New York, NY 10017<br>T: (212) 450-4000<br><br>Neal A. Potischman, Esq. (pro hac vice)<br>Andrew Yaphe, Esq. (pro hac vice)<br>DAVIS POLK & WARDWELL LLP<br>1600 El Camino Real<br>Menlo Park, CA 94025<br>T: (650) 752-2000<br><br>*Attorneys for Defendant Novo Nordisk Inc.* | A. Joshua Podoll<br>Benjamin Hazelwood<br>Daniel Dockery<br>WILLIAMS & CONNOLLY LLP<br>680 Maine Ave SW<br>Washington, DC 20024<br>T: (202) 434-5000<br><br>*Counsel for CVS Health Corporation; CVS Pharmacy, Inc.; Caremark Rx, L.L.C.; CaremarkPCS Health, L.L.C.; and Caremark, L.L.C.* |
| Jason R. Scherr<br>Patrick A. Harvey<br>Lindsey T. Levy<br>MORGAN, LEWIS & BOCKIUS LLP<br>1111 Pennsylvania Avenue, NW<br>Washington, D.C. 20004-2541<br>jr.scherr@morganlewis.com<br>patrick.harvey@morganlewis.com<br>lindsey.levy@morganlewis.com<br>T: (202) 739-3000<br><br>*Counsel for Evernorth Health, Inc. (formerly known as Express Scripts Holding Company), Express Scripts, Inc., Express Scripts Administrators, LLC, ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Medco Health Solutions, Inc., and The Cigna Group* | Thomas P. Scrivo<br>Young Yu<br>O'TOOLE SCRIVO, LLC<br>14 Village Park Road<br>Cedar Grove, NJ 07009<br>T: (973) 239-5700<br><br>Brian D. Boone<br>ALSTON & BIRD LLP<br>1120 S. Tryon Street, Ste. 300<br>Charlotte, NC 28280<br>T: (704) 444-1000<br><br>Elizabeth Broadway Brown<br>ALSTON & BIRD LLP<br>One Atlantic Center<br>1201 W. Peachtree Street, NW, Ste. 4900<br>Atlanta, GA 30309-3424<br>T: (404) 881-7000<br><br>Kelley Connolly Barnaby<br>ALSTON & BIRD LLP<br>950 F. Street, NW<br>Washington, DC 20004<br>T: (202) 239-3300<br><br>*Counsel for OptumRx, Inc., UnitedHealth Group Incorporated; OptumInsight, Inc.; OptumRx Holdings LLC; and Optum, Inc.* |