EXHIBIT 1

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

IN RE: INSULIN PRICING LITIGATION

THIS DOCUMENT RELATES TO:
ALL CASES

**Case No. 2:23-md-03080**
**MDL No. 3080**

**JUDGE BRIAN R. MARTINOTTI**
**JUDGE RUKHSANAH L. SINGH**

### PLAINTIFFS' FIRST SET OF MASTER REQUESTS FOR PRODUCTION OF DOCUMENTS TO PBM DEFENDANTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Rules 26.1 and 34.1 of the Local Civil Rules for the United States District Court for the District of New Jersey, Case Management Order #13 [ECF No. 313], and subject to the Definitions and Instructions set forth below, Plaintiffs request that PBM Defendants Caremark Rx, L.L.C.; Caremark L.L.C; CaremarkPCS Health, L.L.C.; Express Scripts, Inc.; Medco Health Solutions, Inc.; Express Scripts Administrators, LLC; OptumRx, Inc.; United Healthcare Services, Inc.; and UnitedHealthcare Insurance Co. respond to these Requests for Production of Documents (each a "Request" and collectively, the "Requests") in writing and produce the following documents, electronically stored information, and tangible things to Plaintiffs' counsel in accordance with Case Management Order #13 and Case Management Order #11 (Stipulation and Order Governing the Production of Electronically Stored Information and Hard Copy Documents) [ECF No. 208].

### DEFINITIONS

1.      "Action" means the above-captioned litigation.

2.      "Affiliate" or "Affiliated Entity" means any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person or entity specified.

3.      "AWP" means Average Wholesale Price.

4.      "Communication" means and includes every manner or means of disclosure, transfer, or exchange of information, whether orally or in writing or whether face-to-face, by telephone, telecopy, mail, email, facsimile, personal delivery, instant message service, overnight delivery, voice message, voicemail-to-email message, text message, multimedia/social media message, or otherwise.

5.      The term "co-pay accumulator program" means an adjustment program that restricts or limits drug manufacturer co-pay assistance coupons or other drug manufacturer assistance from reducing or being credited to a patient's deductible or the maximum out-of-pocket limits.

6.      The term "co-pay maximizer program" means any program related to front loading or maximizing the value of drug manufacturers co-pay assistance programs or other co-pay assistance.

7.      "CVS Caremark" means CVS Health Corporation; CVS Pharmacy, Inc.; Caremark Rx, LLC; CaremarkPCS Health, LLC; and Caremark, LLC, including any predecessor or successor entities, subsidiaries, parents, or Affiliates, as well as any directors, officers, employees, agents or any other person acting on their behalf.

8.      "Diabetes Medications" refers to all insulin products and glucagon-like peptide receptor agonists (GLP-1s) as set forth in Section II.D of Case Management Order #10 entered in this Action [ECF No. 198], including: Apidra, Basaglar, Fiasp, Humalog, Humulin, Lantus,

Levemir, Novolin, Novolog, Ozempic, Soliqua, Toujeo, Tresiba, Trulicity, Victoza, Admelog, Insulin Aspart, Insulin Degludec, Insulin Glargine, Insulin Lispro, Relion Humulin, Relion Novolin, Relion Novolog, Rezvoglar, Semglee, Steglatro, Tanzeum, Mounjaro (Tirzepatide/GIP), Xultophy (insulin degludec/liraglutide), Rybelsus (semaglutide tablets), and Adylxin (lixisenatide).

9.    "Discovery Materials" means any Documents or data that You (or anyone acting on Your behalf) produced, provided, or made available for inspection in response to discovery requests, court orders, civil investigative demands, subpoenas, information requests, petitions, or by agreement, including Documents; data; tangible things; deposition testimony; responses to interrogatories, requests for admission, requests for production of documents, or other discovery requests (including any production cover letters accompanying such responses); deposition transcripts and videos; deposition exhibits; any errata sheet for depositions; declarations, certifications, or other responses to requests for information or other written information produced as part of discovery; privilege logs; and any expert reports You served (or were served on Your behalf).

10.    "Document" shall have the same meaning as set forth in Case Management Order #11 (Stipulation and Order Governing the Production of Electronically Stored Information and Hard Copy Documents) [ECF No. 208] (the "ESI Order").  For the avoidance of doubt, the term "Document" includes any written or recorded Communications.

11.    "Electronically Stored Information," "Electronic Data," or "ESI" is defined in accordance with the definition provided in the ESI Order.

12.    "Express Scripts" means Express Scripts, Inc.; Medco Health Solutions, Inc.; Evernorth Health, Inc. (formerly Express Scripts Holding Company); Cigna Health and Life

Insurance Company; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; and Express Scripts Administrators, LLC, including any predecessor or successor entities, subsidiary, parent, or Affiliate, as well as any directors, officers, agents, or any other person acting on their behalf.

13.    "Government Investigation" means any civil or criminal investigations, subpoenas, civil investigative demand requests, information requests, interrogatories, petitions, and other inquiries from governmental entities concerning (a) drug pricing, including pricing for any Diabetes Medications; or (b) PBM industry practices as they relate to drug pricing. These entities include, but are not limited to, the United States Senate (including any committees or subcommittees thereof), United States House of Representatives (including any committees or subcommittees thereof), United States Department of Justice (including Offices of any United States Attorney), United States Federal Trade Commission, Department of Health and Human Services Office of Inspector General, or State Attorneys General.

14.    "List Price" means any price reported or made available publicly or to publishing compendiums or databanks including, but not limited to, AWP and WAC prices.

15.    "Litigation" means all actions, cases, lawsuits, mediations, arbitrations, investigations, settlements, or administrative proceedings, whether civil, criminal, administrative, or regulatory in nature, relating to (a) the prices of Diabetes Medications or (b) Manufacturer Payments. "Litigation" includes but is not limited to *In the Matter of Caremark Rx, LLC*, No. 9437 (F.T.C.); *In re Insulin Pricing Litigation*, No. 17-699 (D.N.J.); *Minnesota v. Sanofi-Aventis U.S. LLC*, No. 18-14999 (D.N.J.); *MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, No. 18-2211 (D.N.J.); *In re Direct Purchaser Insulin Litigation*, No. 20-03426 (D.N.J.); *Harris County v. Eli Lilly and Company*, No. 19-4994 (S.D. Tex.); *City of Miami v. Eli Lilly and Company*, No.

21-22636 (S.D. Fla.); *Jackson County, Missouri v. Eli Lilly and Company*, No. 2:23-cv-04531 (D.N.J.); *State of Kentucky, ex rel. Daniel Cameron v. Novo Nordisk Inc.*, No. 2:23-cv-21374 (D.N.J.); *State of Louisiana v. Sanofi-Aventis U.S. LLC*, No. 23-00302 (M.D. La.); *State of Arkansas, ex rel. Tim Griffin, Attorney General v. Eli Lilly and Company*, No. 2:23-cv-04239 (D.N.J.); *State of Illinois, ex rel., Raoul v. Eli Lilly and Company*, No.2:23-cv-04242 (D.N.J.); *State of Kansas, ex rel. Kris W. Kobach, Attorney General v. Eli Lilly and Company*, No. 2:23-cv-04219 (D.N.J.); *State of Mississippi, ex rel. Lynn Fitch v. Eli Lilly and Company*, No.2:23-cv-04364 (D.N.J.); *State of Montana, ex rel. Austin Knudsen v. Eli Lilly and Company*, No. 2:23-cv-04214 (D.N.J.); *California v. Eli Lilly and Co.*, No. 23STCV00719 (Cal. Sup. Ct.); and *The Government of Puerto Rico v. Eli Lilly and Co.*, No. SJ2023CV00319 (504) (P.R. Sup. Ct.).

16.    "Manufacturer Defendants" means Eli Lilly and Company, Novo Nordisk Inc., and Sanofi-Aventis U.S. LLC and any of their predecessors, successors, Affiliates, parents, subsidiaries, offices (including, but not limited to, local, regional, national, executive or foreign offices), divisions, business units and branches thereof, and any present or former officers, directors, employees or agents. The term "Manufacturer Defendants" also includes all attorneys, accountants, consultants, advisors and all other persons or entities acting or purporting to act on any Manufacturer Defendant's behalf.

17.    "Manufacturer Payments" means all payments or financial benefits of any kind provided by any Manufacturer Defendant to You or any of Your Affiliated Entities. Manufacturer Payments include but are not limited to administrative fees, clinical detailing, commissions, credits, data analysis fees, data management fees, data sales fees, discounts, drug pull-through programs, educational grants, formulary placement fees, health management fees, implementation allowances, indirect purchase fees/rebates, inflation fees/rebates, interest, mail order purchase

discounts, market share incentives/rebates/fees, medication monitoring fees, dispensing fees, performance based incentives, pharmacy supplemental discounts, price concessions, price or margin guarantees, price protection fees/rebates, prompt payment discounts, portal fees, enterprise fees, data fees, promotional allowances, rebates, rebate submission fees, reimbursement for research projects, utilization management fees, volume discounts, and any other form of consideration.

18.     "Net Price" means the price paid by Plan Sponsors for the Diabetes Medications after accounting for all Manufacturer Payments or other forms of discounts, rebates, fees, or any other form of economic consideration received by the Plan Sponsor related to the Diabetes Medications.

19.     "Optum" means UnitedHealth Group, Inc.; United Healthcare Services, Inc.; UnitedHealthcare Insurance Co.; Optum, Inc.; OptumRx, Inc.; OptumRx Holdings, LLC; and OptumInsight, Inc., including any predecessor or successor entities, subsidiary, parent or Affiliate, as well as any directors, officers, agents or any other person acting on their behalf.

20.     "PBM" means pharmacy benefit manager.

21.     "PBM Defendants" means Express Scripts, Optum, and CVS Caremark.

22.     The terms "person" or "individual" mean any natural person, legal person, governmental entity (or agency thereof), quasi-public entity, or other form of entity, corporation, partnership, trust, sole proprietorships, unincorporated association, or other entity of any description.

23.     "Pharmacy Network" means a collection of pharmacies that individuals within a pharmacy benefits plan are required or incentivized to use to obtain coverage for the costs of prescription drugs.

24.    "Plaintiff" means and refers to any named plaintiff in any case currently in this Action, and any named plaintiff in any case later filed in, added to, transferred to, or coordinated with (pursuant to a court order or the Parties' express written agreement) this Action, as well as each such plaintiff's current and former employees, representatives, or agents.  Notwithstanding the foregoing definition, "Plaintiff" shall not include any State that has not asserted claims on behalf of a health plan.

25.    "Plaintiff Health Plan" means any health plan offered by, administered by, or sponsored by a Plaintiff (as defined herein) that offered or included Prescription Drug Coverage.

26.    "Plan Sponsor" means any entity (e.g., self-funded employer, insurance company, governmental entity, union health plan) that is responsible for prescription drug purchases on behalf of individuals pursuant to a pharmacy benefits plan. Each Plan Sponsor may offer multiple pharmacy benefits plans.

27.    "Plan Sponsor Consultant" means any consultant, advisor, broker, or similar third party that provides consulting services to a Plan Sponsor. Plan Sponsor Consultants include, but are not limited to, Aon plc, Gallagher US, Mercer (US) LLC, and Willis Towers Watson plc, and their Affiliates.

28.    "Prescription Drug Coverage" means any form of health insurance, health coverage, prescription drug plan, or any other health plan that helps enrollees pay for prescribed pharmaceutical drugs.

29.    "Rebate Aggregator" means any entity, including a group purchasing organization, that negotiates for Manufacturer Payments on behalf of multiple entities or that holds the contracts governing or otherwise relating to those Manufacturer Payments. Rebate Aggregators include, but are not limited to, Ascent Health Services, LLC; Coalition for Advanced Pharmacy Services;

Emisar Pharma Services, Inc.; Zinc Health Ventures, L.L.C.; and Zinc Health Services LLC; and any of their predecessors, successors, parents, subsidiaries, offices (including, but not limited to, local, regional, national, executive or foreign offices), Affiliates, divisions, business units and branches thereof, and any present or former officers, directors, employees or agents.

30.     The terms "relating to," "related to," or "concerning" include, but are not limited to, the following meanings: referring to, bearing upon, describing, reflecting, responding to, identifying, constituting, evaluating, embodying, evidencing, evincing, dealing with, pertaining to, having to do with, or being in any way relevant to the given subject.

31.     "Utilization Management" means and includes any programs or strategies used by a health carrier or third-party administrator designed to monitor the use of or evaluate the medical necessity, appropriateness, efficacy, or efficiency of prescription drugs, including but not limited to: prior authorization, step therapy, NDC blocks, counter-detailing or counter-promoting, co-pay differentials, step edits or "fail first" requirements, quantity limits, or switching or therapeutic substitution.

32.     "WAC" means Wholesale Acquisition Cost.

33.     "You" or "Your" means the Defendant responding to these Requests.

34.     "2023 Price Cuts" refers to the Manufacturer Defendants' 2023 announcements of a series of measures to lower the price of certain forms of Diabetes Medications.

35.     Any terms not specifically defined shall be given their ordinary meanings and shall be construed to give each Request the broadest scope allowable by the Federal Rules of Civil Procedure.

## RULES OF CONSTRUCTION

1.      The conjunctions "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring all responses within the scope of these Requests.

2.      "Include," and variations of that verb should not be construed as limiting a Request.

3.      The singular form of a noun or pronoun includes the plural form and vice versa.

4.      The masculine shall be construed to include the feminine and vice versa.

5.      The use of any tense of any verb shall also include within its meaning all other tenses of that verb.

6.      A definition included above applies to both the lower- and upper-case reference to such term (e.g., Document and document; Person and person) and to both the singular and plural forms of such term (e.g., Document and Documents; person and persons).

## INSTRUCTIONS

1.      You are requested to produce all Documents in Your possession, custody, or control that are described below. In so doing, please furnish Documents that are in the possession of your officers, employees, attorneys, accountants, auditors, representatives, or agents, or that are otherwise subject to Your custody or control.

2.      Documents not otherwise responsive to these Requests shall be produced if such Documents mention, discuss, refer to, or explain the Documents that are called for by these Requests, or if such Documents are attached to Documents called for by these Requests and are routing slips, transmittal memoranda, or letters, comments, evaluations, or similar materials.

3.      Each Document requested herein is to be produced in its entirety and without deletion or excisions, regardless of whether You consider the entire Document to be relevant or responsive to these Requests.

9

4.      Unless otherwise indicated, the Documents to be produced include all Documents prepared, sent, or received, or those that otherwise came into existence any time during the Relevant Time Period defined herein.

5.      In producing Documents, You are requested to produce a copy of each original Document together with a copy of all non-identical copies and drafts of that Document. If the original of any Document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

6.      All responsive Documents, including ESI, shall be produced in accordance with the ESI Order. In accordance with that ESI Order, parties are required to "meet and confer to address the identification, production, and production format of any responsive data contained in a database."

7.      If any Document responsive to these Requests is not produced in full or is redacted because it is privileged or otherwise claimed to be protected against production, please provide a privilege log in accordance with Rule 26 of the Federal Rules of Civil Procedure and any operative protocol regarding privilege logs in this action with the following information with respect to each such Document or redaction:

   a. type of Document (e.g., letter, chart, memorandum, etc.);

   b. the date of the Document;

   c. authors, signatories, and each and every other Person who prepared or participated in its preparation;

   d. a description of its subject matter and length;

   e. a list of those Persons and entities to whom said Document was disseminated, together with their employment title, last known addresses and the date or approximate date on which each such Person or entity received it;

f.   a list of all other Persons to whom the contents of the Document were disclosed, the date such disclosure took place, the means of such disclosure, and the present location of the Document and all copies thereof;

g.   each and every Person having custody or control of the Document or copies thereof; and

h.   the nature of the privilege or other rule of law relied upon and any facts supporting Your decision to withhold production of such Document.

8.      If no Document or ESI responsive to a request exists, please state that no responsive Document or ESI exists in response to the Request.

9.      If any of the Documents or information requested cannot be produced in full, You are required to specify, to the extent possible, the reasons for Your inability to produce the remainder, and the approximate date when You expect to produce such Documents, if at all.

10.     If You assert an objection to any Request, You must nonetheless respond and produce any responsive Documents or ESI that are not subject to the stated objection. If You object to parts of a Request, You must specify the portions of the Request to which You object, state the grounds for Your objections with specificity, and state whether responsive materials are being withheld on the basis of that objection. If You object to parts of a Request, You must produce Documents responsive to the remaining parts of the Request.

11.     Notwithstanding a claim that a Document is protected from disclosure, any Document so withheld must be produced with the portion claimed to be protected redacted.

12.     If any responsive Document or ESI is known to have existed but no longer exists, has been destroyed, or is otherwise unavailable, You must identify the Document or ESI, the reason for its loss, destruction or unavailability, the name of each Person known or reasonably believed

by You to have had possession, custody, or control of the original and any copy thereof (if applicable) of the Document before it was destroyed or became otherwise unavailable, and a description of the disposition of each copy of the Document or ESI.

13.     If You intend to produce responsive Documents in stages, Your response to each request must specify the beginning and end dates for Your production.

14.     These Requests impose a continuing obligation upon You. If, after producing Documents or information responsive to these Requests, additional information or Documents become available to You, You are required to produce such additional Documents or information.

## RELEVANT TIME PERIOD

Unless otherwise indicated or called for by a specific request, the "Relevant Time Period" for these Requests is January 1, 2011, to January 1, 2023. The Relevant Time Period shall include all information that relates in whole or in part to the events or circumstances within this period, including responsive information and Documents even if dated, prepared, generated, or received outside of this period.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**    All Documents and Communications relating to any Government Investigation or Litigation, including: (a) all Discovery Materials produced, provided, generated, or made available by You in any Government Investigation or Litigation; (b) all Communications between You and the relevant governmental entity relating to such Government Investigation or Litigation; and (c) all Documents and Communications relating to any internal review, complaints, questions, or concerns relating to such Government Investigation or Litigation. Privileged Communications between You and Your outside counsel are excluded from this Request.

**REQUEST NO. 2:**   Documents sufficient to show any policy, practice, charter, or procedure manuals, including any standard operating procedures or other policy Documents, that are used or followed by You relating to any of the divisions, subdivisions, departments, committees, subcommittees, teams, units, or working groups identified by You in response to Interrogatory No. 1 in Plaintiffs' First Set of Master Interrogatories to PBM Defendants.

**REQUEST NO. 3:**   Organizational charts, personnel directories, and other Documents sufficient to identify Your organizational structures, including the identity of any officers, directors, employees, and representatives for any of the divisions, subdivisions, departments, committees, subcommittees, teams, units, or working groups identified by You in response to Interrogatory No. 1 in Plaintiffs' First Set of Master Interrogatories to PBM Defendants.

**REQUEST NO. 4:**   All draft and final minutes, presentation materials, handouts, background materials or pre-meeting Board packets, board books, and other Documents and Communications relating to any meeting of the Board of Directors, Board Committees, executive or leadership committees, managers, members, or shareholders (including any of the committees, subcommittees, teams, units, or working groups identified in response to Interrogatory No. 1 in Plaintiffs' First Set of Master Interrogatories to PBM Defendants) relating to the topics set forth in Interrogatory No. 1 in Plaintiffs' First Set of Master Interrogatories to PBM Defendants.

**REQUEST NO. 5:**   All memoranda, reports, or presentations relating to (a) the pricing and sales of any Diabetes Medication; (b) tracking sales, orders, or prescriptions for the Diabetes Medications; (c) negotiations or contracts or agreements with Manufacturer Defendants or Rebate Aggregators concerning any Diabetes Medication; (d) the passing on of Manufacturer Payments (or some portion thereof) to Plan Sponsors related to any Diabetes Medication; (e) the retention of Manufacturer Payments (or some portion thereof) related to any Diabetes Medication;

(f) Manufacturer Payments for any Diabetes Medication, or (g) formulary placement or exclusion of any Diabetes Medication.

**REQUEST NO. 6:** All Documents and Communications concerning the Pharmaceutical Care Management Association ("PCMA") relating to the Diabetes Medications or the Manufacturer Defendants, including internal or third-party Communications; Communications with PCMA; Communications with the PBM Defendants or Manufacturer Defendants during or related to PCMA events; Documents sufficient to show attendance by You or anyone on Your behalf at PCMA events; Documents reflecting PCMA membership; Documents reflecting Your executives' leadership positions at PCMA; and Documents prepared or exchanged in preparation for, during, or after any PCMA meetings or conferences (including exchanged in PCMA or other online forums) and Communications regarding same.

**REQUEST NO. 7:** All Documents and Communications concerning the Pharmaceutical Research and Manufacturers of America ("PhRMA") relating to the Diabetes Medications or the Manufacturer Defendants, including internal or third-party Communications; Communications with the PhRMA; Communications with the Manufacturer Defendants or PBM Defendants during or related to PhRMA events; Documents sufficient to show attendance by You or anyone on Your behalf at PhRMA events; and Documents prepared or exchanged in preparation for, during, or after any PhRMA meetings or conferences (including exchanged in PhRMA or other online forums) and Communications regarding same.

**REQUEST NO. 8:** All Documents and Communications relating to the Diabetes Medications, Manufacturer Defendants, Manufacturer Payments, or any Plaintiff, including but not limited to those related to pricing; contracts; formulary design, development, management, placement, or treatment (including formulary exclusions); data exchange; pull-through efforts

14

(e.g., marketing efforts, lobbying efforts, efforts to increase or shift utilization or sales, etc.); Rebate Aggregators; and research and development. For the avoidance of doubt, this request includes, but is not limited to, all agreements and contracts relating to Diabetes Medications, Manufacturer Defendants, Manufacturer Payments, or any Plaintiff, as well as amendments, schedules, or exhibits to those agreements and contracts; internal Communications relating to Diabetes Medications, Manufactuer Defendants, Manufacturer Payments, or any Plaintiffs; and Communications between You and any of the following entities relating to Diabetes Medications, Manufacturer Defendants, Manufacturer Payments, or any Plaintiffs:

    a.  Manufacturer Defendants;

    b.  Other PBM Defendants;

    c.  Rebate Aggregators;

    d.  Any pharmacies in Your Pharmacy Networks, including pharmacy services administrative organizations;

    e.  Any of Your Affiliated pharmacies;

    f.  Third Party PBM Consultants;

    g.  Plan Sponsors, including any Plaintiffs; and

    h.  Consumers/plan beneficiaries.

**REQUEST NO. 9:**   All Documents and Communications relating to any request for proposal or similar process ("RFP") issued by any Plaintiff to which You submitted a response, including but not limited to Your executed bid or RFP response and any related drafts, amendments, or supplements.

**REQUEST NO. 10:**  All Documents and Communications related to Your formularies that included Diabetes Medications including but not limited to:

    a.  Documents and Communications relating to the design, development, or management of such formularies;

b. Documents and Communications provided to, reviewed by, relied on, exchanged in, or produced by Your formulary committees, any predecessor formulary committees, and any specialists or experts that you employed, contracted with, or otherwise consulted or engaged;

c. All agendas, meeting minutes, pre-meeting information packets, notes, memoranda, monographs, presentations, and communications involving Your formulary committees;

d. Actual and projected financial analyses or analytic models relating to formulary placement, formulary exclusion, or Manufacturer Payments;

e. Documents and Communications relating to business trends or market share in each Diabetes Medication's therapeutic class;

f. Documents and Communications with the Manufacturer Defendants relating to formulary placement, formulary exclusion, or Manufacturer Payments;

g. Documents and Communications with any Rebate Aggregator relating to formulary placement, formulary exclusion, or Manufacturer Payments;

h. Documents and Communications with any Plan Sponsor or Third Party PBM Consultants relating to formulary placement, formulary exclusion, or Manufacturer Payments;

i. Documents and Communications involving or exchanged with any of Your clients (including Plaintiffs) relating to formulary placement, formulary exclusion, or Manufacturer Payments; and

j. Documents and Communications involving or exchanged with any pharmacy in Your Pharmacy Network relating to formulary placement, formulary exclusion, or Manufacturer Payments.

**REQUEST NO. 11:** Documents, Communications, and data concerning Manufacturer Payments related to Diabetes Medications. This request includes but is not limited to: (a) all Documents, Communications, and data reflecting the name, type, nature, negotiation, process for determining, amount, manner of calculation, and manner of classification or categorization of any Manufacturer Payments; (b) all contracts, agreements, invoices, data, reconciliation reports, and analyses relating to Manufacturer Payments; (c) all Documents and Communications relating to

16

how or why Manufacturer Payments changed over time (e.g., in title, form, amount, or any other aspect); and (d) Documents, Communications, and data sufficient to identify, for each month of the Relevant Time Period, the name, type, nature and basis of, amount, manner of calculation, and manner of classification or categorization of any Manufacturer Payments that were (i) received or otherwise retained by You (or any Affiliated Entity); or (ii) conveyed or otherwise provided or paid by You (or any Affiliated Entity) to Plan Sponsors or other of Your clients;

**REQUEST NO. 12:** All Documents and Communications concerning the List Prices of Diabetes Medications, including, but not limited to, internal Documents and Communications, transactional data, invoices, and Documents and Communications that You provided to the Manufacturer Defendants or that the Manufacturer Defendants provided to You.

**REQUEST NO. 13:** All Documents and Communications, including studies, reports, or analyses, relating to the health, economic, or financial impact of List Price increases for the Diabetes Medications on: (a) the out-of-pocket costs incurred by any consumer; (b) the prices or amounts paid by Plan Sponsors; (c) the overall costs to the healthcare system; or (d) the health of diabetics.

**REQUEST NO. 14:** All Documents and Communications relating to Your co-pay accumulator and co-pay maximizer programs concerning the Diabetes Medications, or any other program relating to patient assistance or patient out-of-pocket costs for the Diabetes Medications, including but not limited to any partnership with Blink Health LLC or any of the Manufacturer Defendants.

**REQUEST NO. 15:** All Documents and Communications relating to Diabetes Medications, Rebate Aggregators, or Manufacturer Payments that You considered, cited,

17

referenced, used, or relied on during (or in preparing for) presentations to investors (including but not limited to earnings calls, financial guidance releases, or financial guidance conferences).

**REQUEST NO. 16:**  All Documents and Communications relating to the amounts or types of savings You generate or purport to generate for patients, Your clients (including any Plaintiffs), and the healthcare system, including but not limited to all Documents and Communications relating to (a) whether and to what extent Manufacturer Payments are passed through to Plan Sponsors (including any Plaintiff) and (b) the causes of rising prices for Diabetes Medications.

**REQUEST NO. 17:**   All Documents and Communications relating to the transparency or lack of transparency into You or Your business practices, Rebate Aggregators, or drug pricing.

**REQUEST NO. 18:**  All Documents and Communications relating to any conflicts of interest stemming from Your relationships with any Manufacturer Defendant, PBM Defendant, Rebate Aggregator, Plan Sponsor, or Plan Sponsor Consultant.

**REQUEST NO. 19:**  Documents sufficient to show Your policies, procedures, and written directives relating to conflicts of interest.

**REQUEST NO. 20:**  For any Rebate Aggregator or group purchasing organization with whom You collaborated, partnered, contracted, worked, or engaged in any capacity concerning any Manufacturer Payments relating to claims by any Plaintiff Health Plan beneficiaries for Diabetes Medications, all Documents and Communications relating to any disclosure of such relationships to such Plaintiff.

**REQUEST NO. 21:**  All Documents and Communications relating to whether any Manufacturer Payment, any Rebate Aggregator, or any of Your conduct has the purpose, function, or effect of shielding Manufacturer Payments or rebates from Plan Sponsors (including Plaintiffs)

or otherwise preventing, hindering, or obstructing the payment of Manufacturer Payments or
rebates to Plan Sponsors.

**REQUEST NO. 22:**  All Documents and Communications relating to any financial,
economic, or profitability analysis relating to Diabetes Medications, including (a) Manufacturer
Payments for Diabetes Medications, (b) formulary placement or exclusion of the Diabetes
Medications, (c) fees received from pharmacies relating to Diabetes Medications, and (d) fees
received from Your clients relating to Diabetes Medications.

**REQUEST NO. 23:**  For the period through January 1, 2024, all Documents and
Communications relating to the 2023 Price Cuts, including but not limited to internal Documents
and Communications and Documents and Communications with third parties (including any
Plaintiff or any other of Your Plan Sponsors).

**REQUEST NO. 24:**  All  Documents  and  Communications  relating  to  Your
representations to Plan Sponsors or to other clients or potential clients (including any Plaintiff)
concerning Your pharmacy-benefit-management services, Diabetes Medications, or Manufacturer
Payments, including Documents and Communications sufficient to show all advertising materials,
marketing materials, FAQs, and standardized, form, or template presentations, representations, or
responses to requests for proposal relating to Your pharmacy-benefit-management services,
Diabetes Medications, or Manufacturer Payments.

**REQUEST NO. 25:**  Documents and Communications relating to Your characterization
of Yourself as a "principal" for revenue recognition purposes as set forth in filings with the United
States Securities and Exchange Commission by You or by Your corporate parents or Affiliates
that include Your revenues in such filings.

**REQUEST NO. 26:**  Documents sufficient to show Your internal processes, policies, or procedures for audits by You or Your clients concerning Your pharmacy-benefit-management services.

**REQUEST NO. 27:**  All Documents and Communications relating to any investigations, accountings, audits, inquiries, or similar proceedings initiated, requested, or otherwise pursued by any Plan Sponsor or other fiduciary (including any Plaintiff): (a) to verify amounts received by a Plan Sponsor relating to the Diabetes Medications or (b) questioning, objecting to, raising concerns regarding, or otherwise relating to any actual or potential conflicts relating to Your relationships with any Manufacturer Defendants, PBM Defendants, Rebate Aggregators, or Plan Sponsor Consultants.

**REQUEST NO. 28:**  For each person identified in response to Interrogatory No. 1 of Plaintiffs' First Set of Master Interrogatories to PBM Defendants, all:

 a. personnel files for the person (e.g., Documents relating to hiring, firing, promotion, compensation, bonuses, demotion, admonition, discipline, commendation, or performance reviews);

 b. electronic and hard copy diaries, calendars, appointment books or notes, notebooks, or to-do lists;

 c. trip and travel logs and records, expense reports, and entertainment reports, including any other supporting Documents;

 d. bills, statements, records, and supporting Documents concerning local, long distance, and cellular telephone calls by such person, including calls made using telephones not paid for by You (such as home office, fax, and personal telephone numbers, personal cellphones, and temporary pay-as-you-go cellphones) if such telephones were used for business purposes;

 e. Documents relating to membership in any trade association or industry group or attendance at any trade association, industry group meeting, or investor conference, including announcements, membership lists, presentations (including speaker notes), agendas, minutes, notes, attendance lists, and correspondence;

 f. a copy of the person's most recently created resume or curriculum vitae (CV);

g.  copies of any transcripts or recordings of any testimony of the person relating to topics set forth in Interrogatory No. 1, such as testimony at a deposition, trial, or public hearing;

h.  Documents sufficient to show the person's complete contact information, including all phone numbers, social media usernames or "handles," and email addresses used by such persons for any business purposes, even if only sparingly; and

i.  any severance agreements in connection with the person ceasing employment or changing employment status with You (without time limitation).

**REQUEST NO. 29:**  All Documents and Communications You identified or relied upon in answering Plaintiffs' First Set of Master Interrogatories.

**REQUEST NO. 30:**  All Documents and Communications referenced in or relied upon in Your Rule (26)(a)(1) Initial Disclosures.

**REQUEST NO. 31:**  Documents and Communications that evidence, support, or refute any defense You assert or intend to assert in this Action, including Documents and Communications You intend to introduce into evidence, or upon which You intend to rely, at any hearing or trial in this Action.

**REQUEST NO. 32:**  Documents sufficient to show: (a) the average per member per month cost for each of the Diabetes Medications for Your Plan Sponsors or their beneficiaries for each month during the Relevant Time Period; (b) the average per member per year cost for each of the Diabetes Medications for Your Plan Sponsors or their beneficiaries for each year during the Relevant Time Period; (c) Your annual gross profit per claim for each year during the Relevant Time Period for each of the Diabetes Medications; and (d) average annual spend across Your Plan Sponsors for each year of the Relevant Time Period for each of the Diabetes Medications. The information sought in subparts (a)-(d) above should be broken down, to the extent possible, by (i) self-insured employer plans; (ii) commercial group plans; (iii) individual health plans; (iv) Part D

plans; (v) Medicare Advantage; (vi) Medicaid programs or Medicaid managed care plans; and (vii) Qualified health Plans under the Affordable Care Act.

**REQUEST NO. 33:** All claims, Utilization Management, and Manufacturer Payment data and Documents for the Diabetes Medications. The parties shall meet and confer to address the identification, production, and production format for such data, as well as the data fields to be provided. The data fields shall include but not be limited to the data fields identified on Attachment A hereto.

**REQUEST NO. 34:** All data and any analysis using, based on, commenting on, or derived from data from IQVIA, IMS, SDI, Symphony, Verispan, Wolters Kluwer, MMIT, Decision Resources Group, BusinessOne, or any other comparable entity relating to the Diabetes Medications, including but not limited to:

a.      IQVIA/IMS Integrated Promotional Services (IPS) or Channel Dynamics;

b.      IQVIA/IMS National Prescription Audit data (NPA);

c.      IQVIA/IMS Xponent data;

d.      IQVIA/IMS National Sales Perspective data (NSP);

e.      IQVIA/IMS National Disease and Therapeutic Index data (NDTI);

f.      SDI/Symphony/Verispan Vector One National data (VONA); and

g.      Wolters Kluwer Prescriber level prescription data.

Dated: October 28, 2024                                    Respectfully submitted,

*s/ Joanne Cicala*
Joanne Cicala
THE CICALA LAW FIRM PLLC
101 College Street
Dripping Springs, TX 78620
512-275-6550

*Liaison Counsel for*
*State Attorney General Track*

*s/ David R. Buchanan*
David R. Buchanan
SEEGER WEISS LLP
55 Challenger Road
Ridgefield Park, NJ 07660
973-639-9100

*Liaison Counsel for*
*Self-Funded Payer Track*

*s/ Matthew F. Gately*
Matthew F. Gately
COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
201-845-9600

*Liaison Counsel for*
*Class Action Track*

**Attachment A – Data Fields**

1. For Manufacturer Payments data and Documents, the data fields and documents produced shall include, but not be limited, to data and Documents sufficient to show:

   a. the total Manufacturer Payments received by You or Your Affiliates from each of the Manufacturer Defendants relating to claims by each Plaintiff's Health Plan beneficiaries for Diabetes Medications;

   b. how such Manufacturer Payments were categorized (e.g., rebates, consulting fees, clinical program fees, administrative fees, financial incentives, formulary-placement or access fees, inflation or price-protection fees, etc.);

   c. the portion of those Manufacturer Payments paid to or otherwise passed through to such Plaintiff;

   d. the total amounts paid to or otherwise retained by any Rebate Aggregator or Plan Sponsor Consultant relating to claims by such Plaintiff's Health Plan beneficiaries for Diabetes Medications;

   e. The total amounts paid by You to any of Your Affiliated pharmacies in connection with claims by such Plaintiff's Health Plan beneficiaries for Diabetes Medications;

   f. The total amounts paid by You to any non-Affiliated pharmacies in connection with claims by such Plaintiff's Health Plan beneficiaries for Diabetes Medications;

   g. The total revenues and profits earned by You or any of Your Affiliated pharmacies, including mail-order or specialty pharmacies, in connection with claims by such Plaintiff's Health Plan beneficiaries for Diabetes Medications; and

   h. The total amount paid to You by such Plaintiff in connection with Your pharmacy-benefit management services.

2. Claim Number (the number assigned to the claim or encounter filled by the pharmacy);

3. Claim Sequence (if available, the sequence or suffix of the claim which is used as the claim is adjusted or adjudicated);

4. Original Claim Number (if needed for adjustments, the original claim number to group a set of claims instances);

5. Base Claim Number (the "base" or "root" of a claim without any prefixes or suffixes, used to properly identify a set of claims);

6. Claim Status (the adjudication status of the claim, i.e., paid, reversed, adjusted, void, denied, etc.);

7. Rx Number (the number of the prescription being prescribed by the doctor);

8. Fill Number (the iteration of the number of times the prescription has been filled);

9. New or Refill (indicator if the prescription is new (first time filled) or a refill of an existing prescription);

10. Unique Patient ID (Your internal ID used to match between eligibility and claims);

11. Policy Number (the number which links all members together for a policy);

12. Dependent Number (the individual number/identifier of the patient);

13. First Name (first name of the patient);

14. Last Name (last name of the patient);

15. Date of Birth (date of birth of the patient);

16. Group Name;

17. Group Number;

18. Plan Description;

19. Line of Business;

20. Any other fields that can be used to identify or describe the PBM or plan name who was billed or paid for the claim;

21. Indication if the claim was paid for fully by the patient (Cash) and was not billed or any monies applied to the payment by insurance or any other entity or assistance program, including but not limited to manufacturer rebates, discounts, or chargebacks;

22. Prescriber Number (Your internal provider identifier for the prescribing party);

23. Prescriber NPI Number (the industry standard NPI number for the prescribing party);

24. Prescriber DEA Number (the industry standard DEA number for the prescribing party);

25. Prescriber name (the full name of the doctor or provider that prescribed the prescription);

26. Prescriber Address 1;

27. Prescriber Address 2;

28. Prescriber City;

29. Prescriber State;

30. Prescriber ZIP;

25

31. Dispensing Pharmacy Number (Your internal identifier for the pharmacy where the prescription was filled);

32. Dispensing Pharmacy NPI Number (the industry standard NPI number for the pharmacy where the prescription was filled);

33. Dispensing Pharmacy NCPDPID (the industry standard DEA number for the pharmacy where the prescription was filled);

34. Dispensing Pharmacy Chain ID (if the pharmacy is part of a chain, then the identifier for the parent corporation);

35. Dispensing Pharmacy Name (the name of the pharmacy where the prescription was filled);

36. Dispensing Pharmacy Address 1;

37. Dispensing Pharmacy Address 2;

38. Dispensing Pharmacy City;

39. Dispensing Pharmacy State;

40. Dispensing Pharmacy ZIP;

41. Billing Pharmacy Number (Your internal identifier for the pharmacy where the prescription was filled);

42. Billing Pharmacy NPI Number (the industry standard NPI number for the pharmacy where the prescription was filled);

43. Billing Pharmacy NCPDPID (the industry standard DEA number for the pharmacy where the prescription was filled);

44. Billing Pharmacy Chain ID (if the pharmacy is part of a chain, then the identifier for the parent corporation);

45. Billing Pharmacy Name (the name of the pharmacy where the prescription was filled);

46. Billing Pharmacy Address 1;

47. Billing Pharmacy Address 2;

48. Billing Pharmacy City;

49. Billing Pharmacy State;

50. Billing Pharmacy ZIP;

51. Date the prescription was written;

52. Date the prescription was filled;

53. Date the claim was adjudicated;

54. GPI Number (the Generic Product Identifier being billed for the dispensed drug);

55. Full 11-digit NDC;

56. Drug label name (the name of the drug as it would appear on the manufacturer's label on the bottle);

57. Drug strength (amount of drug in the dosage form or a unit of the dosage form (e.g., 500 mg capsule, 250 mg/5mL suspension, etc.));

58. Drug Manufacturer;

59. Payment Basis (if available, the pricing system utilized for payment calculations (e.g., AWP, MAC, FUL, billed amount, usual & customary));

60. Dispenser Type Code, if available, and descriptions of those codes (e.g., indicates if the claim was filled at retail or mail order);

61. Ingredient cost (i.e., the amount charged to the payer(s) by the pharmacy for the pharmaceutical product, exclusive of the dispensing fee);

62. Pharmacy's billed amount (among the provider is billing to the insurance carrier, may also be known as Usual and Customary Charge, Gross Amount Due or Submitted Ingredient Cost + Dispensing Fee);

63. Dispensing fee paid;

64. Insurance Allowed Amount (the maximum amount the insurance carrier is allowed to pay based on the policy's network and plan coverage);

65. Insurance Plan Paid Amount (amount the insurance carrier paid to the provider);

66. Member Responsibility Amount (amount the individual member was responsible for paying to the provider (deductible, copay, coinsurance, etc.));

67. Any and all fields that are associated with and describe the Member Responsibility Amount;

68. Total Paid Amount (the total amount the provider was paid for this claim related to this insurance policy);

69. Other Insurance Paid Amount (any additional known payment made to the provider by a third party or other insurance policy);

70. Identifier and description of the Other Insurance that made payment on the claim;

71. Quantity dispensed;

72. Quantity prescribed;

73. Days supply;

74. Sales tax (if applicable);

75. Incentive amount paid (i.e., a contractually agreed upon incentive amount that is paid to the pharmacy for services rendered);

76. Amount attributed to processor fee (i.e., an amount charged to the pharmacy by either the health plan or PBM as a transaction fee);

77. Amount attributed to product selection/brand drug (i.e., an amount added to the member responsibility based on using a Brand Name product when a generic is available);

78. Amount attributed to product selection/non-preferred formulary selection (i.e., an amount added to the member responsibility based on using a nonpreferred product when a formulary alternative is available);

79. Amount attributed to product selection/brand non-preferred formulary selection (i.e., an amount added to the member responsibility based on using a non-preferred Brand Name product when a formulary Brand Name product or generic product is available);

80. Information sufficient to determine if the patient payment was based on a flat tiered co-payment or a percentage coinsurance;

81. Amount attributed to periodic deductible;

82. Copay or patient pay amount;

83. Amount exceeding periodic benefit maximum;

84. Information sufficient to determine if the patient payment was in relation to being above or below a deductible amount or out-of-pocket maximum threshold;

85. Amount attributed to coverage gap (i.e., information sufficient to determine if a Medicare Part D patient payment was within the Medicare Part D "donut hole," if applicable);

86. If applicable, information sufficient to determine if a co-pay coupon program or other patient assistance program was utilized on the claim, including a description of said program and the amount paid by the program; and

87. A list of all available fields and which of those fields have addressed any of the items listed above.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing PLAINTIFFS' FIRST SET

OF MASTER REQUESTS FOR PRODUCTION OF DOCUMENTS TO PBM DEFENDANTS

was served via email on all counsel of record on this 28th day of October, 2024.

*s/ Steven J. Daroci*
Steven J. Daroci

Service List
*In re Insulin Priing Litigation*, MDL No. 3080
Case No. 2:23-md-03080-BRM-RLS

| | |
|---|---|
| Liza M. Walsh, Esq.<br>Katelyn O'Reilly, Esq.<br>Selina Ellis, Esq.<br>WALSH PIZZI O'REILLY<br>FALANGA LLP<br>Three Gateway Center<br>100 Mulberry Street, 15th Floor<br>Newark, NJ 07102<br><br>Michael R. Shumaker, Esq. (pro hac vice)<br>Julie E. McEvoy, Esq. (pro hac vice)<br>William D. Coglianese, Esq. (pro hac vice)<br>Melissa L. Patterson, Esq. (pro hac vice)<br>JONES DAY<br>51 Louisiana Avenue, N.W.<br>Washington, DC 20001<br>T: (202) 879-3939<br><br>*Attorneys for Defendant Sanofi-Aventis U.S. LLC* | Melissa A. Geist, Esq.<br>Julia A. Lopez, Esq.<br>REED SMITH LLP<br>506 Carnegie Center, Suite 300<br>Princeton, NJ 08540<br>T: (609) 514-5978<br><br>James F. Hurst, Esq. (pro hac vice)<br>Andrew A. Kassof, Esq. (pro hac vice)<br>Diana M. Watral, Esq. (pro hac vice)<br>Ryan Moorman, Esq. (pro hac vice)<br>Jason A. Feld, Esq. (pro hac vice)<br>KIRKLAND & ELLIS LLP<br>333 West Wolf Point Plaza<br>Chicago, IL 60654<br>T: (312) 862-2000<br><br>*Attorneys for Defendant Eli Lilly and Company* |
| Brian W. Carroll, Esq.<br>McCARTER & ENGLISH, LLP<br>Four Gateway Center<br>100 Mulberry Street<br>Newark, NJ 07102<br>T: (973) 639-2020<br><br>James P. Rouhandeh, Esq. (pro hac vice)<br>David B. Toscano, Esq. (pro hac vice)<br>DAVIS POLK & WARDWELL LLP | Kevin H. Marino<br>John D. Tortorella<br>MARINO, TORTORELLA & BOYLE, P.C.<br>437 Southern Boulevard<br>Chatham, New Jersey 07928<br>T: (973) 824-9300<br><br>Craig Singer<br>R. Kennon Poteat III<br>A. Joshua Podoll |

| | |
|---|---|
| 450 Lexington Avenue<br>New York, NY 10017<br>T: (212) 450-4000<br><br>Neal A. Potischman, Esq. (pro hac vice)<br>Andrew Yaphe, Esq. (pro hac vice)<br>DAVIS POLK & WARDWELL LLP<br>1600 El Camino Real<br>Menlo Park, CA 94025<br>T: (650) 752-2000<br><br>*Attorneys for Defendant Novo Nordisk Inc.* | Benjamin Hazelwood<br>Daniel Dockery<br>WILLIAMS & CONNOLLY LLP<br>680 Maine Ave SW<br>Washington, DC 20024<br>T: (202) 434-5000<br><br>*Counsel for CVS Health Corporation; CVS Pharmacy, Inc.; Caremark Rx, L.L.C.; CaremarkPCS Health, L.L.C.; and Caremark, L.L.C.* |
| Jason R. Scherr<br>Patrick A. Harvey<br>Lindsey T. Levy<br>MORGAN, LEWIS & BOCKIUS LLP<br>1111 Pennsylvania Avenue, NW<br>Washington, D.C. 20004-2541<br>jr.scherr@morganlewis.com<br>patrick.harvey@morganlewis.com<br>lindsey.levy@morganlewis.com<br>T: (202) 739-3000<br><br>*Counsel for Evernorth Health, Inc. (formerly known as Express Scripts Holding Company), Express Scripts, Inc., Express Scripts Administrators, LLC, ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Medco Health Solutions, Inc., and The Cigna Group* | Thomas P. Scrivo<br>Young Yu<br>O'TOOLE SCRIVO, LLC<br>14 Village Park Road<br>Cedar Grove, NJ 07009<br>T: (973) 239-5700<br><br>Brian D. Boone<br>ALSTON & BIRD LLP<br>1120 S. Tryon St., Ste. 300<br>Charlotte, NC 28280<br>T: (704) 444-1000<br><br>Elizabeth Broadway Brown<br>ALSTON & BIRD LLP<br>One Atlantic Center<br>1201 W. Peachtree Street, NW, Ste. 4900<br>Atlanta, GA 30309-3424<br>T: (404) 881-7000<br><br>Kelley Connolly Barnaby<br>ALSTON & BIRD LLP<br>950 F. Street, NW<br>Washington, DC 20004<br>T: (202) 239-3300<br><br>*Counsel for OptumRx, Inc., UnitedHealth Group Incorporated; OptumInsight, Inc.; OptumRx Holdings LLC; and Optum, Inc.* |