

# O'TOOLE SCRIVO
### A LIMITED LIABILITY COMPANY

**THOMAS P. SCRIVO**
tscrivo@oslaw.com

February 5, 2025

**Via ECF**

Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

    Re:    *In re: Insulin Pricing Litigation*, MDL No. 3080
           Case No. 2:23-md-03080-BRM-RLS

Dear Judge Singh:

In accordance with CMO #17 and the Court's Letter Order [ECF Nos. 386 & 404], we write to respond to Plaintiffs' January 28, 2025 letters [ECF Nos. 397 & 399] concerning alleged discovery disputes involving OptumRx, Inc.[1] Plaintiffs' letters mischaracterize OptumRx's discovery efforts to date and purport to submit multiple "disputes" to this Court that are not ripe, contrary to CMO #17 and Local Civil Rule 37.1.

For the reasons explained below, the Court should reject Plaintiffs' attempts to manufacture an impasse and should allow the parties to continue their negotiations.

## BACKGROUND

It was Plaintiffs who demanded the 90-day deadline for the substantial completion of document productions in their briefing related to certain discovery procedures. *See* ECF No. 270-1 at 5. Since then, Plaintiffs have insisted at every turn on discovery that is so vastly overbroad as to make their requested 90-day deadline virtually impossible to meet.

OptumRx timely objected and responded to Plaintiffs' First Set of Master Requests for Production on December 4, 2024, in which it offered to meet and confer with Plaintiffs regarding the scope of discovery Plaintiffs sought through their Requests. The parties have met and conferred twice

---

[1] Plaintiffs suggest the disputes involve several other entities: United HealthCare Services, Inc., UnitedHealthcare Insurance Company, UnitedHealth Group Incorporated, OptumInsight, Inc., OptumRx Holdings, LLC, Optum, Inc., and Emisar Pharma Services LLC. The disputes that Plaintiffs raise do not involve those entities, so we will refer only to OptumRx in this letter.

In re: Insulin Pricing Litigation, MDL No. 3080, Case No. 2:23-md-03080-BRM-RLS
February 5, 2025
Page 2

since—once on December 19, 2024, and again on January 24, 2025—but in the interim, OptumRx has undertaken significant efforts to advance discovery in the litigation and to reach agreement.

For example, on January 2, 2025, OptumRx provided Plaintiffs a list of search terms and twelve custodians that were proportional to the litigation's needs and tailored to the substantial discovery already in Plaintiffs' possession.[2] Two weeks later—and less than two weeks before the substantial completion deadline they insisted on—Plaintiffs countered with a set of convoluted search strings that significantly expanded OptumRx's list of search terms, plus a list of **83 custodians** that Plaintiffs claimed were appropriate. On top of that, Plaintiffs noted that they would seek to add additional custodians at a later date. OptumRx worked diligently to assess Plaintiffs' unreasonable proposal and, on January 27, 2025, provided a revised custodian list adding six custodians,[3] along with additional information that Plaintiffs requested regarding OptumRx's custodians' roles during the relevant time period. OptumRx has since disclosed multiple sources of non-custodial data to Plaintiffs from which it has begun its review and rolling production of responsive, non-privileged documents, provided a robust data proposal, responded to yet additional inquiries from Plaintiffs demanding more information about certain of its custodians, and sent a revised search term proposal. OptumRx looks forward to discussing those items with Plaintiffs.

1. **OptumRx should not be required to produce custodial documents absent an agreement on custodians and search terms and is otherwise making rolling productions of non-custodial documents.**

Plaintiffs' request "that the Court enter an Order requiring Optum[Rx] to make rolling productions for the custodians and search terms it has proposed to Plaintiffs while negotiations continue as to additional custodians and search terms Plaintiffs have proposed" (ECF No. 399 at 3) is unreasonable, unworkable, and unnecessary. Ordering OptumRx to produce documents before the parties have agreed on search terms to be applied to those documents—or the custodians whose documents will be searched—is incredibly inefficient and would pose an undue burden on OptumRx. Beyond that, the piecemeal approach Plaintiffs demand would cause the very delay about which Plaintiffs claim to be concerned.

Contrary to Plaintiffs' assertions, OptumRx has sought the most efficient path forward throughout the parties' discovery negotiations, which is why OptumRx originally proposed a set of search terms that had been thoroughly negotiated and substantially agreed on in one of the MDL member cases before this MDL was created. OptumRx is eager to reach agreement with Plaintiffs regarding custodians and search terms and, to that end, added six custodians to its custodian list (for a total of 18) and made a search term counterproposal that incorporated many of the search terms Plaintiffs requested in their January 16 proposal. But Plaintiffs' unreasonable approach—evidenced by their demand for 83 custodians and convoluted search strings that returned millions of hits within the files of the twelve custodians in OptumRx's original proposal alone—is hindering the parties' progress, as Plaintiffs' outsized proposals take a significant amount of time to evaluate. Plaintiffs have demanded detailed information regarding OptumRx's custodians

---

[2] To date, OptumRx has produced 16,955 documents totaling over 330,000 pages.
[3] Three of the custodians were offered by Emisar Pharma Services LLC.

In re: Insulin Pricing Litigation, MDL No. 3080, Case No. 2:23-md-03080-BRM-RLS
February 5, 2025
Page 3

without even bothering to explain why the 83 custodians Plaintiffs request are appropriate or necessary for the litigation.

In addition, Plaintiffs' purported recounting of OptumRx's discovery efforts to date is self-serving and incomplete. In taking issue with the number of documents OptumRx has produced in the litigation, Plaintiffs conveniently omit that OptumRx's initial production exceeded 16,000 documents and 300,000 pages. The sweeping nature of Plaintiffs' custodian and search term counterproposal calls into question whether Plaintiffs have made any effort to tailor their requests in light of the information that is already in their possession. In any case, OptumRx has indeed followed its initial production with two rolling productions and anticipates making another no later than early next week.

The Court should reject Plaintiffs' request that OptumRx make rolling custodial productions without first agreeing upon custodians and search terms. And Plaintiffs' alternative request that the Court set a deadline by which the parties must complete negotiations relating to search terms and custodians is unnecessary given the routine discovery conferences contemplated by CMO #17, during which the parties may raise issues as they arise in negotiations.

   **2. OptumRx is already complying with the ESI Order, so there is no need for an order compelling as much.**

OptumRx is also satisfying its obligations under the ESI Order entered in this litigation. As Plaintiffs point out, Section V.A of the ESI Order requires, among other things, "identify[ing] and propos[ing] . . . *an initial list* of search terms, custodians, [and] custodial data sources . . . that are likely to contain responsive documents and ESI" (emphasis added). OptumRx did exactly that when it provided its custodian and search term list over a month ago, and it has since expanded that list in an effort to negotiate with Plaintiffs in good faith. OptumRx has also disclosed multiple sources of non-custodial data to Plaintiffs from which it has begun its review and rolling production of responsive, non-privileged documents and provided a robust data proposal to Plaintiffs on February 4, 2025.

OptumRx will continue to comply with the ESI Order in this case, making Plaintiffs' request for an order compelling as much unnecessary.[4]

*****

---

[4] Plaintiffs cite *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885, 2019 U.S. Dist. LEXIS 175675 (N.D. Fla. Oct. 9, 2019) in their letter regarding all PBMs to justify their requests. There, the court addressed a motion to compel a variety of documents and, as to certain categories of documents, ruled "the likely marginal benefit of these documents is far outweighed by the significant expense and time Defendants would incur in identifying, collecting, reviewing, and producing" the documents. *Id.* at *17-18. The *3M* court's acknowledgment that identifying, collecting, reviewing, and producing large categories of documents requires time and expense only further underscores that Plaintiffs' demand for immediate productions and other disclosures ignores the realities of modern discovery.

In re: Insulin Pricing Litigation, MDL No. 3080, Case No. 2:23-md-03080-BRM-RLS
February 5, 2025
Page 4

Plaintiffs appear to be agreeable to an extension of the substantial completion deadline set out in CMO #13 [ECF 313]. Given the breadth of the discovery Plaintiffs seek, an extension of that deadline is warranted.

We thank the Court for its attention to these matters.


Respectfully submitted,

| | |
|---|---|
| */s/ Thomas P. Scrivo* | */s/ Liz Broadway Brown* |
| Thomas P. Scrivo | Liz Broadway Brown |
| | **ALSTON & BIRD LLP** |
| | One Atlantic Center |
| | 1201 W. Peachtree Street, N.W., Ste. 4900 |
| | Atlanta, GA 30309-3424 |
| | T: (404) 881-7000 |
| | Fax: (404) 881-7777 |
| | liz.brown@alston.com |


Cc:    Honorable Brian R. Martinotti, U.S.D.J. (via ECF)
       All counsel of record (via ECF)