**Cicala Law Firm PLLC**

**February 28, 2025**

| | |
|---|---|
| Honorable Brian R. Martinotti, U.S.D.J. | Honorable Rukhsanah L. Singh, U.S.M.J. |
| United States District Court | United States District Court |
| District of New Jersey | District of New Jersey |
| Frank Lautenberg Post Office & U.S. Courthouse | Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse |
| 2 Federal Plaza, 3rd Floor | 402 East State Street |
| Newark, New Jersey 07102 | Trenton, New Jersey 08608 |

**Re:** *In re Insulin Pricing Litigation*, Case No. 2:23-md-3080 (BRM/RLS)

Dear Judges Martinotti and Singh:

Plaintiffs request leave to file a motion to compel responses to an October 4, 2024 subpoena served on Compass Lexecon, LLC ("C-L"), an economic consulting firm. After four months and multiple conferrals, C-L has not produced a single document. Instead, C-L and the PBM Defendants have raised a number of baseless objections. The parties are at an impasse. Given the importance and relevance of the requested information and the fact that it is being categorically withheld, the Court should allow the motion and resolve these issues now.

## Summary Background

On July 19, 2024, C-L published a report authored principally by Dr. Dennis W. Carlton, a C-L economist ("Carlton Report"). Since its publication, the Carlton Report has been publicly available on a website dedicated exclusively to the report (www.carltonreport.org), as well as the C-L website[1] and the PCMA website, among others.[2] The Report was "commissioned by CVS Caremark, Express Scripts, and Optum Rx" and "focuses on the role of pharmacy benefit managers (PBMs) in the healthcare industry and *investigates claims that PBMs are responsible for high prescription drug costs*." *Id*. (emphasis added). It purports to be "a systematic study of data on prescriptions, rebates, PBM conduct, and the state of the pharmacy industry to evaluate common criticisms of the PBM industry." *Id*. The referenced PBM "criticisms" are identical to many of Plaintiffs' allegations in this litigation with respect to insulin in particular.

The Carlton Report was made public ten days after, and seemingly as a response to, the FTC's "Interim Staff Report on Prescription Drug Middlemen" ("First FTC Report"), which "underscore[d] the impact pharmacy benefit managers (PBMs) have on the accessibility and

---

[1] https://www.compasslexecon.com/cases/pbms-and-prescription-drug-distribution-an-economic-consideration-of-criticisms-levied-against-pharmacy-benefit-managers

[2] https://www.pcmanet.org/comprehensive-analysis-of-pbms-from-prominent-economists-confirm-value-of-pbms-dispel-ftc-findings/

February 28, 2025
Page 2



affordability of prescription drugs."[3] The First FTC Report is critical of PBMs; the Carlton Report takes the opposite view.

The PBMs have also publicized the Carlton Report. For example, defendant OptumRx shared the Carlton Report on its LinkedIn page, which has more than a million followers. In its post, OptumRx describes the Carlton Report as a "comprehensive overview of PBMs and their role in managing prescription drug costs" and a study that "challenges common PBM criticisms."[4]

Given that the Carlton Report addresses the PBMs' role in drug pricing and that the PBMs are using it as evidence of the legitimacy of their conduct, on October 4, 2024, Plaintiffs served a subpoena on C-L seeking materials and data related to the Carlton Report ("MDL Subpoena"). *See* **Ex. 1**. The MDL Subpoena seeks, in large part, the materials and data used by C-L in preparing the Carlton Report, information on payments to C-L by the PBMs, agreements/retainers relating to the Carlton Report, and communications related to the Carlton Report, diabetes drugs, or manufacturer payments (including rebates).

On November 20, 2024, counsel for C-L served boiler plate objections to the MDL Subpoena, including general assertions of attorney-client privilege, work-product, and common interest protections. **Ex. 2**. C-L did not state, however, that C-L or Dr. Carlton had been retained at any point as an expert or in anticipation of litigation by the PBMs.

On November 22, 2024, nearly seven weeks after receiving notice of the subpoena, PBM counsel interjected objections for the first time, claiming that C-L was retained to "support counsel in representing the PBM Defendants in connection with the FTC study of the PBM industry," that they retained C-L "in anticipation of litigation," and that the requested information was subject to "the work-product protections provided by Rule 26(b)(4)(D) for non-testifying experts." **Ex. 3**.

Plaintiffs thereafter informed PBM counsel that at the very least C-L should immediately produce the data that the authors of the Carlton Report relied on while the conferral process continued. **Ex. 4**. Notably, much of the data analyzed by the Carlton Report is the same data provided by the PBMs to the FTC. Counsel for the PBMs responded that the request was "without merit" and demanded that it be withdrawn. **Ex. 5.**

Plaintiffs, PBMs, and C-L then conferred on January 31, 2025. Plaintiffs sent a summary of the conferral, which included basic questions to the PBMs about their objections as well as narrowed requests for certain categories of information used by C-L in preparing the Carlton Report. **Ex. 6.**

---

[3] https://www.ftc.gov/reports/pharmacy-benefit-managers-report

[4] https://www.linkedin.com/posts/optum_lets-bust-some-common-myths-about-pbms-activity-7257398345072025600-rdsZ?utm_source=share&utm_medium=member_desktop&rcm=ACoAAAoGskcBELoIfyxSlhjQ0cAdpd9jvQixBTs

February 28, 2025
Page 3



*Three weeks later,* PBMs finally responded, purporting to answer certain of Plaintiffs' questions but largely reasserting their objections and refusing to provide any material sought by the MDL Subpoena. **Ex. 7**. C-L then responded (**Ex. 8**), effectively adopting the PBMs' position and stating that the burden to respond to the subpoena would be substantial. C-L counsel declined, however, to provide any estimate of its alleged burden. These letters make clear that these issues are now ripe for the Court.

## **Argument**

The public record suggests the Carlton Report was not created in anticipation of litigation. Regardless, the underlying data and information relied on by its authors is not privileged or otherwise protected. C-L published and maintains the Carlton Report on its website. Defendant OptumRx published the report on LinkedIn (weeks after the MDL Subpoena was issued). It is available on several PBM/pharma industry websites. The PBMs publicize and tout the Report as evidence of their alleged beneficial work, yet now seek to shield anything about the Report from discovery.

The parties are at impasse regarding the MDL Subpoena, which was issued four months ago. Plaintiffs have established a good faith basis pursuant to CMO 17 to file a Motion to Compel[5] seeking responses to the MDL Subpoena and addressing the extent to which any of the material sought by the subpoena is protected work product or otherwise privileged. *See, e.g., Graco, Inc. v. PMC Global, Inc.*, 2011 WL 666056, *14 (D.N.J. Feb. 14, 2011) (holding that party was "entitled to all relevant discovery regarding the facts/data considered, reviewed or relied upon for the development, foundation, or basis of [certain experts'] affidavits/declarations"); *In re Human Tissue Prods. Liab. Litig.*, 255 F.R.D. 151, 158 (D.N.J. Dec. 12, 2008) ("Privilege may not be used both as sword and shield.")

Respectfully submitted,

Joanne M. Cicala
The Cicala Law Firm PLLC

cc: Counsel of Record (*via* ECF)

---

[5] Plaintiffs' counsel has asked counsel for C-L to confirm whether it will consent to the MDL venue for purposes of such a motion. To the extent C-L objects to venue here, Plaintiffs will take appropriate steps pursuant to Rule 45.