# EXHIBIT 1

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of New Jersey

| | | |
|---|---|---|
| IN RE: INSULIN PRICING LITIGATION | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  2:23-md-03080 (BRM)(RLS) |
| | ) | |
| Eli Lilly & Co., et al. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:           Compass Lexecon C/O The Corporation Trust, Inc.
              2405 York Road, Suite 201, Lutherville-Timonium, MD 21093-2264

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A

| Place: 1407 Broadway, Suite 1910, New York, NY 10018; or another location agreeable to the undersigned attorney and Compass Lexecon | Date and Time: 11/03/2024 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    10/04/2024

CLERK OF COURT

OR

_____                    _____
*Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* States of Arizona, Arkansas, Illinois, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Montana, Oklahoma, and Utah , who issues or requests this subpoena, are:

Joanne Cicala, The Cicala Law Firm, 101 College Street, Dripping Springs, Texas 78620, joanne@cicalapllc.com, 512-275-6550

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   2:23-md-03080 (BRM)(RLS)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case No. 2:23-md-03080** |
| | **MDL No. 3080** |
| **THIS DOCUMENT RELATES TO:** | **JUDGE BRIAN R. MARTINOTTI** |
| **ALL CASES** | **JUDGE RUKHSANAH L. SINGH** |

## EXHIBIT A TO SUBPOENA TO PRODUCE DOCUMENTS

## DEFINITIONS

1.      "At-Issue Drugs" means diabetes medications, including but not limited to insulin, glucagon-like peptide receptor agonists (GLP-1s), Admelog, Fiasp, Relion, Rezvoglar, Tanzeum, Insulin Lispro, Insulin Aspart, Insulin Degludec, Insulin Glargine, Apidra, Basaglar, Humalog, Humulin, Lantus, Levemir, Novolin, Novolog, Ozempic, Mounjaro, Xultophy, Rybelsus, Adlyxin, Soliqua, Semglee, Steglatro, Toujeo, Tresiba, Trulicity, and Victoza.

2.      "Communication" or "Communications" mean and include every manner or means of disclosure, transfer, or exchange of information, whether orally or in writing or whether face-to-face, by telephone, telecopy, mail, email, facsimile, personal delivery, instant message service, overnight delivery, voice message, voicemail-to-email message, text message, multimedia/social media message, or otherwise.

3.      "Carlton Report" means the July 19, 2024 report titled "PBMs and Prescription Drug Distribution: An Economic Analysis of Criticisms Levied Against Pharmacy Benefit Managers." *See* https://carltonreport.org, last visited on Sept. 30, 2024.

4.      "CVS Health" refers collectively to CVS Health Corporation; CVS Pharmacy, Inc.; Caremark Rx, L.L.C.; Caremark L.L.C.; Zinc Health Services, LLC; Zinc Health Ventures, LLC;

and CaremarkPCS Health, L.L.C., including any predecessor and/or successor entities, subsidiaries, parents, or affiliates, as well as any directors, officers, agents, and/or any other person acting on its behalf.

5.      "Compass Lexecon" means Compass Lexecon LLC, FTI Consulting, Inc., Dennis W. Carlton, and Daniel R. Fischel, including all Compass Lexecon LLC's, FTI Consulting, Inc.'s, Dennis W. Carlton's, and Daniel R. Fischel's present and former employees, board members, agents, servants, representatives, predecessors and successors in interest, divisions, regions, areas, affiliates, parents, subsidiaries, attorneys, agents, and other persons acting or purporting to act on behalf of Compass Lexecon LLC, FTI Consulting, Inc., Dennis W. Carlton, or Daniel R. Fischel.

6.      "Document" or "Documents" shall have the broadest meaning allowed by the Federal Rules of Civil Procedure and shall include any written, electronic or audio documents, testimony, transcripts, data and information, whether written, recorded, transcribed, punched, taped, filmed or depicted graphically, which are in Your possession, custody or control or that of Your officers, employees, agents, or contractors, including but not limited to attorneys and accountants.

7.      "Eli Lilly" means Eli Lilly and Company, including any predecessor and/or successor entity, subsidiary, parent, or affiliate, as well as any directors, officers, agents, and/or any other person acting on its behalf.

8.      "Express Scripts" refers collectively to Cigna Group; Evernorth Health, Inc. (formerly Express Scripts Holding Company); Cigna Health and Life Insurance Company; Express Scripts, Inc.; Express Scripts Administrators, LLC; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; Medco Health Solutions, Inc.; and Ascent Health Services LLC, including

any predecessor and successor entities, subsidiary, parent, or affiliate, as well as any directors, officers, agents, and any other person acting on its behalf.

9. "Manufacturer Defendants" refers collectively to Eli Lilly, Novo Nordisk, and Sanofi (as defined herein).

10. "Manufacturer Payments" means any payments, remuneration, consideration, or financial benefit of any kind provided by a Manufacturer Defendant. Manufacturer Payments include but are not limited to administrative fees, clinical detailing, commissions, credits, data analysis fees, data management fees, data sales fees, discounts, drug pull-through programs, educational grants, formulary placement fees, gateway fees/payments, health management fees, implementation allowances, indirect purchase fees/rebates, inflation fees/rebates, interest, mail order purchase discounts, market share incentives/rebates/fees, medication monitoring fees, performance based incentives, pharmacy supplemental discounts, price concessions, price or margin guarantees, price protection fees/rebates, prompt payment discounts, portal fees, enterprise payments/fees, data fees, vendor fees, promotional allowances, rebates, rebate submission fees, reimbursement for research projects, utilization management fees, volume discounts, and any other form of benefit, remuneration, or consideration.

11. "Novo" means Novo Nordisk Inc., including any predecessor and/or successor entity, subsidiary, parent, or affiliate, as well as any directors, officers, agents, and/or any other person acting on its behalf.

12. "Optum" refers collectively to UnitedHealth Group, Inc.; Optum, Inc.; OptumRx, Inc.; OptumRx Holdings, LLC; OptumInsight, Inc.; Coalition for Advanced Pharmacy Services, Inc.; and Emisar Pharma Services LLC, including any predecessor and/or successor entities,

subsidiary, parent or affiliate, as well as any directors, officers, agents and any other person acting on its behalf.

13. "PBM Defendants" refers collectively to CVS Health, Express Scripts, and Optum (as defined herein).

14. "Sanofi" refers collectively to Sanofi-Aventis U.S. LLC and Sanofi SA, including any predecessor, successor, subsidiary, parent, or affiliate, as well as any directors, officers, agents, and/or any other person acting on its behalf.

15. The terms "You" or "Your" means Compass Lexecon (as defined herein).

16. The terms "including" or "includes" mean including without limitation or includes without limitation.

17. The terms "and" and "or" shall be interpreted to mean "and/or" and shall not be interpreted to exclude any information otherwise within the scope of any request for production.

18. The use of the singular form of any word (including any defined term) includes the plural and vice versa.

19. The past tense of any verb includes the present tense and vice versa. The use of a verb in any tense shall be construed as the use of the verb in all tenses, whenever necessary to bring within the scope of the request all Documents or Communications which might otherwise be construed to be outside its scope.

20. Any terms not specifically defined shall be given their ordinary meanings and shall be construed to give each Request the broadest scope allowable by the Federal Rules of Civil Procedure.

## INSTRUCTIONS

1.      You are requested to produce all Documents and Communications in Your possession, custody, or control that are described below. In so doing, please furnish Documents and Communications that are in the possession of Your officers, employees, attorneys, accountants, auditors, representatives, or agents, or that are otherwise subject to Your custody or control.

2.      Unless otherwise agreed, please produce all Documents and Communications in accordance with the specifications of Case Management Order #11 (Stipulation and Order Governing the Production of Electronically Stored Information and Hard Copy Documents) (ECF No. 208) (the "ESI Order") (attached as **Exhibit B**).

3.      If You consider any of the Documents or Communications requested to be confidential, please designate them as such under the Stipulated Confidentiality Order (ECF No. 117) (attached as **Exhibit C**).

4.      These Requests are intended as continuing Requests, and any Document obtained or located subsequent to production that would have been produced had it been available or its existence known at the time is to be supplied promptly.

## RELEVANT TIME PERIOD

Unless otherwise indicated or called for by a specific request, the "Relevant Time Period" for these Requests is January 1, 2011, to present. The Relevant Time Period shall include all information that relates in whole or in part to the events or circumstances within this period, including responsive information and Documents even if dated, prepared, generated, or received outside of this period.

## **DOCUMENT REQUESTS**

1.      All Documents and Communications related to the Carlton Report, including:

      a.      all Documents and data that Compass Lexecon collected, received, reviewed, or relied on in connection with the Carlton Report;

      b.      all analyses, drafts, memoranda, reports, and any other work product generated relating to the Carlton Report;

      c.      all Documents and Communications relating to the methodologies and assumptions employed in creating the Carlton Report; and

      d.      all of Compass Lexecon's internal and external Communications relating to the Carlton Report.

2.      All engagement letters or agreements, retainer letters or agreements, consulting agreements, memoranda of understanding, or similar documents relating to the Carlton Report, including those describing the services to be performed, scope of work and responsibilities, compensation and payment terms, term and termination provisions, or confidentiality and non-disclosure obligations.

3.      All Documents and Communications exchanged between Compass Lexecon and any PBM Defendant relating to the Carlton Report.

4.      All Documents and Communications exchanged between Compass Lexecon and any PBM Defendant relating to Manufacturer Payments.

5.      All Documents and Communications exchanged between Compass Lexecon and any PBM Defendant relating to the At-Issue Drugs.

6.      All Documents and Communications exchanged between Compass Lexecon and any of the Manufacturer Defendants relating to the Carlton Report.

7.      All Documents and Communications exchanged between Compass Lexecon and any of the Manufacturer Defendants relating to Manufacturer Payments.

8.      All Documents and Communications exchanged between Compass Lexecon and any of the Manufacturer Defendants relating to the At-Issue Drugs.

9.      All Documents and Communications relating to Express Scripts's lawsuit filed on September 17, 2024, in the United States District Court for the Eastern District of Missouri styled, *Express Scripts, Inc. v. The Federal Trade Commission and Lina Khan*, Case No. 4:24-cv-01263 (E.D. Mo. Sept. 17, 2024).

10.     Documents sufficient to show the remuneration Compass Lexecon received from CVS Health related to the Carlton Report.

11.     Documents sufficient to show the remuneration Compass Lexecon received from Express Scripts related to the Carlton Report.

12.     Documents sufficient to show the remuneration Compass Lexecon received from Optum related to the Carlton Report.

13.     Documents sufficient to identify any other sources and amounts of remuneration Compass Lexecon received related to the Carlton Report.

14.     Documents sufficient to show Compass Lexecon's policies, procedures, or directives relating to conflicts of interest.

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

IN RE: INSULIN PRICING LITIGATION

Case 2:23-md-03080
MDL No. 3080

**JUDGE BRIAN R. MARTINOTTI**
**JUDGE RUKHSANAH L. SINGH**

**THIS DOCUMENT RELATES TO: ALL CASES**

CASE MANAGEMENT ORDER # ‖

(STIPULATION AND ORDER GOVERNING THE PRODUCTION OF
ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS)

The Parties hereby submit the following Stipulation and Order Governing the Production of Electronically Stored Information and Hard Copy Documents ("ESI Order"):

I.    **GENERAL.**

**A.**    The procedures and protocols set forth in this Protocol shall govern the production of electronically stored information ("ESI") and hard copy documents in this Litigation, unless the Parties agree in writing to change them or they are changed by the Court. This ESI Order is intended to aid the Parties by providing a more predictable, cost-effective, and efficient management structure for facilitating the exchange of ESI and hard copy documents. Except as specifically set forth herein, nothing in this ESI Order shall supersede the Parties' obligations and protections under the Federal Rules of Civil Procedure ("Federal Rules"), the Local Civil Rules for the U.S. District Court for the District of New Jersey ("Local Rules"), and any other applicable orders and rules.

**B.**    The Parties acknowledge their duty to work together cooperatively throughout the discovery process. The Parties shall promptly meet and confer in good faith on issues regarding

1

ESI, as necessary, including issues relating to compliance with this ESI Order, custodians, data sources, and search methodologies (e.g., search terms and other methods of identifying responsive ESI). In the event the Parties cannot reach agreement, disputes may be submitted to the Court or its designee for determination.

     **C.**     By stipulating to this ESI Order and agreeing to produce ESI and Hard Copy Documents, generally or in a particular form or forms, no Party waives any objections to producing any particular document or category of documents on any grounds whatsoever.

     **D.**     If any Producing Party identifies a circumstance where application of this ESI Order is not technologically practicable or possible, or if it cannot comply with any material aspect of this ESI Order, or if compliance would be impossible or unreasonable, the Producing Party will disclose to the Requesting Party the reasons for, and circumstances surrounding, the impracticality or impossibility of compliance with this ESI Order, and the Parties will meet and confer in an effort to reach agreement on an appropriate exception to this ESI Order. In the event the Parties cannot reach agreement, the matter may be submitted to the Court or its designee for determination.

     **E.**     This ESI Order shall apply to all Parties in this Litigation, except where a Party seeks an exception to this ESI Order as described in Section I.D. herein.

     **F.**     All productions in this litigation are subject to the Protective Order separately entered by the Court in this litigation.

## II.   DEFINITIONS.

     **"Documents"** shall have the same definition as set forth in Federal Rules of Civil Procedure 26 and 34.

     **"Document Family"** refers to a collection of related pages or files as maintained in the ordinary course of business but consisting of more than a single stand-alone record. A "parent

document" is an electronic file that attaches or embeds at least one other electronic file (a "child document"). A "Document Family" includes, for example, emails with attachments, or MSOffice files embedded within another MSOffice document. For the avoidance of doubt, ESI referenced in ESI only by a hyperlink or other pointer ("hyperlinked files") shall not be construed to be in the same Document Family solely by virtue of the hyperlink reference.

**"Electronically stored information"** or **"ESI"** means, as referenced in the Federal Rules, information that is stored electronically, regardless of the media or whether it is in the original format in which it was created, as opposed to stored in hard copy (i.e., on paper).

**"Extracted text"** means the text extracted from an electronic document, and includes all header, footer, redlines, comments, notes, and document body information when reasonably available.

**"Hard Copy Document"** means a document collected from physical files (paper) and not from electronic sources.

**"Litigation"** is defined to include all actions currently in MDL No. 3080, *In re: Insulin Pricing Litigation*, or later filed in, added to, or transferred to, or coordinated with (pursuant to a court order or the Parties' express written agreement) MDL No. 3080, and all actions later remanded to their respective transferor courts and any appeals arising from such cases.

**"Load/Unitization file"** means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Unitization file may also contain data relevant to the individual documents, including extracted and user-created Metadata.

**"Media"** means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

**"Metadata"** is used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file. The Metadata fields to be produced are listed in Exhibit 1.

**"Native"** or **"Native Format"** means and refers to the format of ESI in the application in which it was originally created and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

**"OCR text"** means text generated through Optical Character Recognition Process of image/bitmap picture representation of the documents.

**"Parties"** means or refers collectively to the named plaintiffs and defendants in this Litigation, as well as any later added plaintiffs and defendants. "Party" shall refer to a plaintiff or defendant, individually.

**"Producing Party"** means or refers to any Party from which production of ESI or Hard Copy Documents are sought.

**"Receiving Party"** means or refers to any Party to which production of ESI or Hard Copy Documents is made.

**"Requesting Party"** means or refers to any Party seeking production of ESI or Hard Copy Documents.

**"Structured Data"** means data that resides in a fixed field within a record or file, or data stored in a structured format, such as databases (e.g., Oracle, SQL, Access, etc.) or data sets, according to specific form and content rules as defined by each field of the database.

## III.  PRESERVATION.

To reduce costs and burdens of preservation and to ensure proper documents and ESI are preserved, the Parties agree as follows:

### A.  Deleted Files.

If a Producing Party learns during the search and collection process that responsive ESI or Hard Copy Documents that existed as of the date upon which the duty to preserve ESI arose (1) was lost, destroyed, or is no longer retrievable, and (2) cannot be restored or replaced through additional discovery, the Producing Party shall so advise the Requesting Party, at which point the Requesting Party and Producing Party shall meet and confer regarding the issue.

### B.  Types of ESI that Need Not Be Preserved or Searched.

The Parties agree that there is no need to preserve or search the following categories of ESI, which are deemed for purposes of this section to be not reasonably accessible:

1. random access memory (RAM), temporary files, or other ephemeral data;

2. on-line access data such as temporary internet files, histories, caches, cookies, etc.;

3. data in metadata fields that are frequently updated automatically, such as last-opened dates;

4. shadowed, damaged, residual, "deleted," "slack," "fragmented," "unallocated,", or other data accessible only by use of computer forensics;

5. data stored on photocopiers, scanners, and/or fax machines;

6. data maintained in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are more accessible elsewhere;

5

7. operating system files, executable files;

8. structural files not material to individual file contents that do not contain substantive content (e.g., .CSS, .XSL, .DTD, etc.); and

9. non-substantive embedded files (e.g., company logos or signature blocks), as long as they are displayed in the parent document.

### C.    Inaccessible Documents.

The Parties agree that there is no need, at this time, to search ESI from any source a Party has identified to the Requesting Party as not reasonably accessible pursuant to Federal Rule 26(b)(2)(B), although the Parties must take reasonable steps to preserve such ESI if potentially responsive. All Parties reserve the right to request to have this ESI searched if some reason emerges for believing that a particular source contains responsive information. A decision to preserve any ESI shall not be interpreted as an agreement that the preserved material is relevant to the issues in the case or constitutes reasonably accessible ESI that could be subject to review and production.

The Parties further agree that there is no need to modify or suspend the procedures used by them in the ordinary course of business to backup data and systems for disaster recovery and similar purposes related to continuity of operations.

### IV.    PRIOR PRODUCTIONS.

To the extent the Requesting Party has requested production of documents or ESI that can be satisfied by the re-production of documents or ESI that were previously produced by the Producing Party in other litigation or proceedings, the Producing Party, subject to its objections to the request, may, at its election, produce the previously-produced documents or ESI in the same form in which they originally were produced, even if such form is different from the production specifications in this ESI Order.  In these instances, the Producing Party shall either (1) reproduce

6

the documents or ESI using the same Bates numbers used when the documents or ESI were previously produced, or (2) provide an overlay with the corresponding Bates numbers used when previously produced.  If such documents or ESI have been previously produced in more than one other proceeding, the Parties shall meet and confer regarding the appropriate Bates numbers to use.  If the Producing Party elects to produce previously produced documents, the Parties agree to meet and confer in good faith (1) should a Receiving Party make a tailored good-faith request for the reproduction of documents or ESI in a different format than originally produced and (2) to resolve any technical issues with any such productions. This provision does not waive the right of a Party to object to any requests for reproduction of documents and ESI from such prior productions.

## V.     SEARCH PROCEDURES FOR ELECTRONIC DOCUMENTS.

The Parties shall participate in an iterative and cooperative approach with respect to the identification of relevant custodians and information sources. The Parties may identify potentially responsive ESI and documents by: identifying and selecting the custodians, databases, and non-custodial sources that are the most likely to possess responsive documents and information and (a) applying agreed-upon search terms to identifiable data repositories and custodial data sources- in accordance with the provisions of Section V.A., or (b) identifying documents or ESI that are responsive to the Requesting Party's discovery requests directly, where search terms are not necessary to identify responsive documents or ESI, and/or (c) utilizing Technology Assisted Review as described below in Section V.B.  The Parties shall meet and confer in good faith regarding the search methodology and search terms, if any, to be applied, and use of technology assisted review or similar technologies, if any; responsive data sources, including the identities of custodians and custodial, non-custodial, or third-party data

7

sources; any applicable and appropriate timeframes for the collection, review, and production of ESI and documents; and validation processes. The Producing Party will be reasonably transparent regarding the universe of documents subject to targeted collections, culling, or application of search terms. No Party is relieved of its overall discovery obligations through the use of search terms or Technology Assisted Review.

**A.      Use of Search Terms.**

If a Producing Party elects to use search terms to identify potentially responsive documents and ESI, it shall identify and propose to the Requesting Party an initial list of search terms, custodians, custodial data sources, and non-custodial data sources that are likely to contain responsive documents and ESI, and the Parties will meet and confer regarding those terms and any additional terms, or other requested changes, proposed by the Requesting Party. That meet and confer shall include, when requested, the exchange of information that includes, where relevant, semantic synonyms, code words, acronyms, abbreviations, nonlanguage alphanumeric associational references to relevant ESI, any hit count reports, and any other information agreed to by the Parties. To the extent the Parties cannot reach agreement on the application of, or procedures for, any search or filtering processes, the Parties may raise such issues for resolution by the Court or its designee.

**B.      Use of Technology Assisted Review.**

If a Producing Party elects to use technology assisted review or any other form of machine learning beyond search terms or keywords (collectively, "TAR") for purposes of culling ESI potentially responsive to a Requesting Party's request, it shall disclose that intent to the Requesting Party, and the Producing Party shall meet and confer with the Requesting Party regarding how such technologies will be implemented, before the Producing Party employs any TAR. The Parties

will meet and confer regarding any TAR issues that arise prior to submitting the issue to the Court or its designee for resolution. If the Parties cannot reach resolution, the matter may be submitted to the Court or its designee for resolution. By agreeing to use TAR in this Litigation, the Parties do not acknowledge or concede that they are obligated to use TAR in any other matter, including, without limitation, matters pending in any state or federal courts. Moreover, by agreeing to use TAR in this Litigation, the Parties do not intend to waive any rights or protections pursuant to privacy, confidentiality, attorney-client privilege, work product, and any other privileges, protections, or objections to discovery. The Parties preserve all such rights.

### C. Responsive Documents.

The fact that a document may have been retrieved by application of search terms or TAR does not render it automatically responsive and producible, and a Producing Party may withhold from production such document if non-responsive and/or permissible under the Federal Rules. To the extent any Party identifies responsive ESI or documents outside of search terms or the TAR methodology noted above, all such non-privileged documents shall be produced.

Nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing a review to determine if documents captured by search terms are responsive to the Requesting Party's discovery requests. Similarly, nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents determined to be responsive. Further, nothing in this ESI Order requires the production of documents captured by search terms or TAR that are not responsive to the Requesting Party's request.

## VI. PRODUCTION OF HARD COPY AND ESI DOCUMENTS.

### A. Deduplication.

To reduce the unnecessary costs of reviewing and producing exact duplicate documents, each Party may use reasonable, good-faith efforts to avoid the production of duplicate ESI through the use of global deduplication. Deduplication shall be done on the family level based on MD5 or SHA hash values using industry standard deduplication technology. The Parties agree that an email that includes content in the "BCC" or other blind copy field shall not be treated as a duplicate of any otherwise identical email that does not include content in the "BCC" or other blind copy field.

No party shall eliminate duplicates of ESI by manual review or some method other than by use of the technical comparison using MD5 or SHA hash values outlined above. Hard Copy Documents shall not be eliminated as duplicates of ESI.

For exact duplicate documents, the Producing Party will produce the Metadata described in Exhibit 1 for the single production copy. If more than one custodian possesses a duplicate, the Producing Party shall identify each custodian who had a copy of the produced document (in the "All Custodians" field as described in Exhibit 1).

If, during the course of its review, the Producing Party identifies a large number of duplicate documents, the Parties may meet and confer regarding a custom deduplication protocol. Except for the removal of extracted logos, no custom deduplication method other than those discussed herein will be implemented before conferring with the Requesting Party.

### B. Email Threading.

No email may be withheld from production or omitted from a privilege log because it is included in whole or in part in a more inclusive email; provided, however, that the Parties may use

10

email threading for their own internal review or other internal processes to reduce the volume of entirely duplicative content within email threads.

Per the Court's May 28, 2024 Order (ECF 186), the Parties will "meet and confer as to the format of appropriate privilege logs, considering whether threading, categorical, or other grouping is appropriate in this circumstance."

### C.     Production of Hard Copy Documents – Format.

All Hard Copy Documents will be produced as single-page, black-and-white 300 DPI, Group IV* TIFF images or color JPG images with LZW compression, where appropriate, with OCR text provided in document level text files, objective Metadata fields pursuant to Exhibit 1, and load files pursuant to Exhibit 2. In scanning Hard Copy Documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). Document pages which have affixed notes, such as Post-It notes, shall be imaged with and without the note attached.

### D.     Production of ESI – Format.

ESI, except that which is redacted, slipsheeted, or produced in Native Format, shall be produced as single-page, black-and-white, 300 DPI, Group IV* TIFF images or color JPG images with LZW compression where appropriate with corresponding extracted full text provided in document level text files, objective metadata fields pursuant to Exhibit 1, and load files pursuant to Exhibit 2. All ESI produced as images shall be imaged, to the extent reasonably possible, with track changes, comments, hidden text, and/or underlying annotations rendered on the image.

Spreadsheets, audio/visual/multimedia, and other files that are not conducive to production in image format shall be produced in Native Format, except where such files are image-redacted or slipsheeted pursuant to the terms of this Protocol. ESI produced in Native Format shall be

produced with all Metadata contained in or associated with that file to the extent technologically possible consistent with Exhibit 1. ESI produced in Native Format shall be given a file name consisting of a unique Bates number (e.g., "ABC00000002"). For each Native file produced, the production will include a single-page placeholder TIFF image stamped with this unique Bates number and/or confidentiality designation and containing the phrase: "PRODUCED IN NATIVE FORMAT" or similar language.

No Party may attach to any pleading or any correspondence addressed to the Court or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding a copy of any produced Native document without ensuring that either the corresponding placeholder slip sheet is attached to the document or the corresponding Bates number and confidentiality legend, if any, appears on the document.

### E. Appearance and Content.

Responsive ESI that presents imaging or formatting problems shall be promptly identified and the Parties may meet and confer in an attempt to resolve the problems. Producing Parties shall make reasonable efforts to address imaging and formatting issues identified by the Requesting Party. The Requesting Party agrees to raise these issues within a reasonable timeframe.

### F. Color.

If a Requesting Party finds the black and white version of a document insufficient, the Requesting Party may request that the Producing Party provide a color image. The Producing Party will not unreasonably deny a request to provide a color image. If the parties cannot come to an agreement regarding whether a document must be produced in color, the good cause standard will govern the dispute. However, the Requesting Party does not have to make a good cause showing when it initially requests the document in color; instead, the Requesting Party may simply

identify the document.  If a Producing Party converts a document to color image in response to a request from a Receiving Party, the Producing Party shall do so in JPEG, TIFF or such other format as agreed with the Requesting Party.

### G. Non-English Documents.

When documents are produced that contain languages other than English, in whole or in part, the Producing Party shall produce each such document in the original language or languages in which it was written when collected. The Producing Party has no obligation to create a translation of the documents or any portion thereof. The Parties will meet and confer as necessary concerning procedures for using translations at depositions and at trial. In the event the Parties cannot reach agreement, the matter may be submitted to the Court or its designee for determination.

### H. System Files.

Each Producing Party will use its best efforts to filter out common system files and application executable files using the national software reference library NIST hash set list.

### I. Production of Redacted Documents/Information.

Absent further order of the Court or agreement of the Parties, no redactions may be made within any ESI or Hard Copy Document unless the information is subject to the attorney-client or work-product privileges, or unless the redaction is of information identifying members of P&T Committees other than Pharmacy Benefit Manager ("PBM") employees. To the extent that a Producing Party maintains that an otherwise responsive document contains certain highly sensitive information that should be redacted for reasons other than those permitted by this section, the Producing Party and Requesting Party shall meet and confer concerning the proposed treatment of such information; if the Parties cannot reach resolution, the Producing Party may submit the document to the Court or its designee for review in camera and seek an order concerning the appropriate treatment of the disputed information.

13

Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions and the basis for the redaction (e.g., "Redacted–A/C Privilege," "Redacted–AWP," "Redacted–P&T Committee"). Where a responsive document contains both redacted and non-redacted content, the Producing Party shall produce the remainder of the non-redacted portions of the document.

Native Excel or other spreadsheet files that are redacted may be produced in Native or near Native Format by overwriting the data contained in a particular cell, row, column or tab with the word "Redacted," using industry-standard tools, and shall make clear the reason for the redaction (e.g., "Redacted - Privilege"), provided that such overwriting does not impact any other, non-redacted cells or information in the spreadsheet (e.g., if a cell redacted for privilege contains a numerical value that is used in a formula by other, non-redacted cells in the spreadsheet). If a redaction does impact non-redacted cells/information, the Parties shall promptly meet and confer to resolve the issue. The Parties acknowledge that redacting the native may alter the metadata of the produced file; however, the metadata produced pursuant to Exhibit 1 will be the metadata extracted from the original native file, other than metadata containing redacted information.

Any other Native files that are redacted may be produced as black-and-white or color (as applicable), single-page TIFF files with OCR text provided in document level text files, with load files pursuant to Exhibit 2, which shall include all information contained in the original file.

**J.      Confidentiality of Produced ESI.**

Documents and ESI shall be produced pursuant to the terms of the Protective Order entered in this Litigation. Any objections to production shall otherwise be made pursuant to the Local Rules, Federal Rules of Civil Procedure, or the Federal Rules of Evidence. If the Producing Party

is producing ESI in TIFF format subject to a claim that it is protected from disclosure under the Protective Order, or other order issued in this Litigation, the document shall be stamped electronically on each page in accordance with the applicable Order.

If the Producing Party is producing ESI in Native Format subject to a claim that it is protected from disclosure under the Protective Order, or other order issued in this Litigation, then the designation shall be included in a separate field in the .dat load file, as well as the TIFF placeholder or where not produced with a TIFF placeholder, the storage device (e.g., CD, USB, or hard drive) containing such native ESI data shall be labeled in accordance with the applicable order.

**K.     Other Production Specifications.**

All productions will include these additional specifications:

1.  ESI will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format. The Concordance (*.dat) load file shall be provided with UTF-8 encoding with the full path and file name to the files produced pursuant to Exhibit 2, and shall include the Metadata fields identified below (Exhibit 1);

2.  Document level .txt files for all Native documents containing extracted full text or OCR text (OCR only if extracted text is not available or if the document has been redacted);

3.  Bates number branding and confidentiality designation (if any) on the face of the image in a location that does not obliterate, conceal, or interfere with any information from the source document;

15

4. A TIFF placeholder embossed with the corresponding confidentiality designation and Bates number shall be produced for all ESI produced in Native Format;

5. Each Bates number will: (i) be unique across the entire document production; (ii) maintain a constant length across the entire production (i.e., ABC00000001-with no space between the prefix and the number, padded to the same number of characters); (iii) contain no special characters; and (iv) be sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production, and the skipped number or set of numbers should be noted with a placeholder;

6. PowerPoint slides/presentations that are produced in TIFF format will be produced with any notes or comments contained therein. Word-processing documents that are produced in TIFF format will be produced with any track changes or comments visible on the face of the corresponding TIFF images;

7. Metadata and coding fields shall be produced for a document as set forth in Exhibit 1. If Metadata fields are not produced for the reasons set out in Exhibit 1, the Producing Party shall include the fields in the header row of the .DAT and leave the field blank for the corresponding document(s); and

8. In the event any document or ESI (or portion thereof) produced is password protected, the Producing Party shall make all reasonable efforts to provide the password needed to access the document or ESI.

9. Compressed file types (e.g., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in an iterative manner to ensure that an archive within an archive is decompressed into the lowest possible compression resulting in individual files.

10. Documents with dynamic fields for file names, dates, and times will be processed to show the field code (e.g., "[FILENAME]"), rather than the values for such fields existing at the time the file is processed.

11. All provided Metadata pertaining to dates and times will be standardized to UTC or other disclosed time zone.

## VII.    FAMILY RELATIONSHIPS OF ESI.

### A.    Family Relationships.

For ESI, Document Families must be preserved by assigning sequential Bates numbers to all files within a parent-child group and by providing accurate attachment ranges for those files in the metadata fields required. Attachments to emails or substantive embedded files will not be eliminated from the parent e-mail/document. Rather, parent-child relationships (the association between an attachment and its parent document, or for embeddings, the association between embedded documents and their containers) will be preserved. Substantive embedded documents (*e.g.*, a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records (either in full, redacted, or via privilege slipsheet) and related back to the respective top-level parent document via the Beginning Attachment Bates Number and Ending Attachment Bates Number fields. Where feasible, if any member of a Document Family is produced, all members of that family must also be produced unless withheld as privileged.

Where an electronic document that is part of a family is withheld, and its relationship to the rest of that Document Family is indicated using slipsheets, the Producing Party shall provide one Bates-numbered slipsheet for each withheld document.

If a member of an ESI Document Family that has otherwise been determined to be responsive cannot technically be processed (*e.g.*, unsupported file format, file corruption, inaccessible password-protected document), those technical problems shall be identified and disclosed to the Requesting Party by production of a Bates-labeled slipsheet that states "Technical issue—file cannot be processed." A Requesting Party may thereafter raise with the Producing Party any questions or concerns, and if the Parties cannot promptly reach an agreement, the Requesting Party may raise the issue with the Court.

### B. Embedded Objects.

The Parties agree that non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents by a Producing Party (i.e., such embedded objects will be treated as produced within the document itself, rather than as separate documents).

Substantive embedded objects or files, where produced, are to be produced as family groups and such embedded files should be assigned Bates numbers that directly follow the Bates numbers of the documents within which they are embedded. Should a Party believe the volume of substantive embedded objects results in the review being overly burdensome, the Parties shall meet and confer. The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this provision.

## VIII.   DATABASES AND STRUCTURED, AGGREGATED, OR APPLICATION DATA.

The Parties will meet and confer to address the identification, production, and production format of any responsive data contained in a database or other Structured Data or aggregated data source or otherwise maintained by an application. The Parties will reasonably cooperate in the exchange of information concerning such databases to facilitate discussions on productions and production format, including available data fields/objects and schema. If the Parties cannot reach agreement, the matter will be decided by the Court or its designee.

To the extent a Producing Party is constrained from producing responsive Structured Data because of a third-party license or because software necessary to view the data is hardware-dependent, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format. The Producing Party shall produce exports and reports in a reasonably usable form. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format.

## IX.     PRODUCTION MEDIA.

Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), via secure FTP site or similar electronic secure file transfer system, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media"). Each piece of Production Media shall include a unique identifying label and cover letter including the following information:

- Name of the Litigation and its case number;

- Name of the Producing Party;

- Date of the production (mm/dd/yyyy);

19

- Production volume and/or Bates number range; and

- Confidentiality Designation, if any.

The foregoing labeling information shall also be provided in a .txt file at the root folder of the corresponding production deliverable. Any replacement Production Media or documents shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced.

Producing Parties may encrypt their Production Media, and if so, shall provide a key to decrypt the Production Media in a separate communication.

## X.     OBJECTIONS TO ESI PRODUCTION.

If any formatting requirements or other specifications agreed to in this ESI Order are later determined by the Producing Party to be technically infeasible, unduly burdensome, or unreasonably costly, the Party, during the meet-and-confer process, shall: (i) describe the nature of the objection with reasonable particularity; (ii) provide the Requesting Party with the basis for declining to produce such ESI; and (iii) indicate whether the Producing Party is willing to offer an alternative. The Parties shall negotiate in good faith concerning the production of any such ESI. If the Parties are unable to reach agreement, the Parties shall submit any dispute to the Court for resolution.

## XI.     COSTS.

Unless otherwise ordered, the costs of producing documents and ESI pursuant to this Order shall be borne by each Producing Party. If the Parties cannot reach an agreement on a disputed matter, any Party may submit the disputed matter to the Court for resolution.

## XII.   NO DESIGNATION OF DISCOVERY REQUESTS.

Productions of Hard Copy Documents and ESI in the form set out in this ESI Order are reasonably usable and need not be organized and labeled to correspond to discovery requests.

## XIII.   E-DISCOVERY LIAISONS.

The Parties agree that each party will have an individual knowledgeable about that Party's E-Discovery systems and technologies in attendance at meet-and-confers on discovery-related matters.   This individual need not be the same for every meet-and-confer, but the individual attending for each Party will be knowledgeable about the E-Discovery items at issue in the specific meet-and-confer(s) that they attend.

## XIV.   MISCELLANEOUS PROVISIONS.

The Parties will act in good faith as required by law and use these procedures to identify and reduce the potential for disputes.

The Parties are aware of the importance the Court places on cooperation and commit to continue to consult and cooperate reasonably as discovery proceeds. No Party may seek judicial relief from the Court or its designee unless it first has conferred with the applicable Producing or Requesting Party.

**IT IS SO ORDERED.**

Dated: June 11, 2024

RUKHSANAH L. SINGH
United States Magistrate Judge

**STIPULATED AND AGREED TO BY THE PARTIES.**

*s/ David R. Buchanan*
David R. Buchanan
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
973-639-9100
dbuchanan@seegerweiss.com

*Counsel for the Self-Funded Payer Track*

*s/ Melissa L. Yeates*
Melissa L. Yeates
**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
myeates@ktmc.com

-and-

Michael L. Roberts
**ROBERTS LAW FIRM, P.A.**
20 Rahling Circle
Little Rock, Arkansas 72223
(501) 821-5575
mikeroberts@robertslawfirm.us

*Counsel for the Third-Party Payer Class
Track (PBM)*

*/s/Melissa A. Geist*
**REED SMITH LLP**
Melissa A. Geist
Julia A. López
506 Carnegie Center, Suite 300
Princeton, NJ 08540-7839
(609) 514-5978

**KIRKLAND & ELLIS LLP**
James F. Hurst *(pro hac vice)*
Andrew A. Kassof *(pro hac vice)*
Robert B. Ellis *(pro hac vice)*
Diana M. Watral *(pro hac vice)*

*s/ Joanne Cicala*
Joanne Cicala
**THE CICALA LAW FIRM PLLC**
101 College Street
Dripping Springs, TX 78620
512-275-6550
joanne@cicalapllc.com

*Counsel for the State Attorney General Track*

*s/ James E. Cecchi*
James E. Cecchi
**CARELLA, BYRNE, CECCHI,**
  **BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
973-994-1700
jcecchi@carellabyrne.com

*Counsel for the Third-Party Payer Class
Track (Manufacturer)*

Ryan Moorman *(pro hac vice)*
Jason A. Feld *(pro hac vice)*
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000

*Attorneys for Defendant Eli Lilly and Company*


*/s/Brian W. Carroll*
**McCARTER & ENGLISH, LLP**
Brian W. Carroll
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
(973) 639-2020

**DAVIS POLK & WARDWELL LLP**
James P. Rouhandeh *(pro hac vice)*
David B. Toscano *(pro hac vice)*
450 Lexington Ave.
New York, NY 10017
(212) 450-4000

**DAVIS POLK & WARDWELL LLP**
Neal A. Potischman *(pro hac vice)*
Andrew Yaphe *(pro hac vice)*
1600 El Camino Real
Menlo Park, CA 94025
(650) 752-2000

*Attorneys for Defendant Novo Nordisk Inc.*


*/s/ Liza M. Walsh*
**WALSH PIZZI O'REILLY**
**FALANGA LLP**
Liza M. Walsh
Katelyn O'Reilly
Three Gateway Center
100 Mulberry St., 15th Floor
Newark, NJ 07102
(973) 757-1100

**JONES DAY**
Michael R. Shumaker *(pro hac vice)*
Julie E. McEvoy *(pro hac vice)*
William D. Coglianese *(pro hac vice)*
Melissa L. Patterson (*pro hac vice*)
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3939

*Attorneys for Defendant Sanofi-Aventis U.S. LLC*

*s/ Jason R. Scherr*
Jason R. Scherr
Patrick A. Harvey
Lindsey T. Levy
Drew Cleary Jordan
Katherine A. Vaky
Tanya Y. Shah
**MORGAN, LEWIS & BOCKIUS, LLP**

*Counsel for Evernorth Health, Inc.; Express Scripts, Inc.;*
*Express Scripts Administrators, LLC; ESI Mail Pharmacy Service, Inc.;*
*Express Scripts Pharmacy, Inc.; and Medco Health Solutions, Inc.*

*/s/ Brian D. Boone*
Thomas P. Scrivo
Young Yu
**O'TOOLE SCRIVO, LLC**
14 Village Park Road
Cedar Grove, NJ 07009
T: (973) 239-5700
tscrivo@oslaw.com
yyu@oslaw.com

Brian D. Boone
**ALSTON & BIRD LLP**
1120 S. Tryon Street, Ste. 300
Charlotte, NC 28280
T: (704) 444-1000
Fax: (704) 444-1111
brian.boone@alston.com

Elizabeth Broadway Brown
**ALSTON & BIRD LLP**
One Atlantic Center
1201 W. Peachtree Street, NW, Ste. 4900
Atlanta, GA 30309-3424
T: (404) 881-7000
Fax: (404) 881-7777
liz.brown@alston.com

Kelley Connolly Barnaby
**ALSTON & BIRD LLP**
950 F. Street, NW
Washington, D.C.  0004
T: (202) 239-3300
Fax: (202) 239-3333
kelley.barnaby@alston.com

*Counsel for OptumRx, Inc.; UnitedHealth Group Incorporated;*
*OptumInsight, Inc.; OptumRx Holdings LLC; and Optum, Inc.*

*/s/ A. Joshua Podoll*
Kevin H. Marino, Esq.
John D. Tortorella, Esq.
**MARINO, TORTORELLA & BOYLE, P.C.**

Enu Mainigi
Craig Singer
R. Kennon Poteat III
A. Joshua Podoll
Daniel Dockery
**WILLIAMS & CONNOLLY LLP**

*Counsel for CVS Health Corporation; CVS Pharmacy, Inc.;*
*Caremark Rx, L.L.C.; Caremark PCS Health, L.L.C.; and Caremark, L.L.C.*

Dated: June 10, 2024

**EXHIBIT 1**

**FIELDS and METADATA TO BE PRODUCED**

1.     The load files accompanying scanned Hard Copy Documents will include the following objective coding fields, to the extent applicable:

| Field | Field Description |
|-------|-------------------|
| CUSTODIAN (DPF) | The custodian of the document even if de-duplicated prior to production or location of item |
| BEGBATES (DPF) | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a Document Family |
| ENDATTACH (DPF) | Ending Bates number of a Document Family |
| PAGECOUNT (DPF) | Number of pages |
| TEXTLINK (DPF) | Link to text file for the document |

2.   The following metadata fields shall be included in Load files accompanying ESI, to the extent available, and the ESI they are related to is unredacted and not privileged:

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|-------|-------------------|-----------------|------------------|
| BEGBATES (DPF) | First Bates identifier of item | First Bates identifier of item | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item | Last Bates identifier of item | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a document family | Starting Bates number of a Document Family | Starting Bates number of a Document Family |
| ENDATTACH (DPF) | Ending Bates number of a document family | Ending Bates number of a Document Family | Ending Bates number of a Document Family |
| PAGECOUNT (DPF) | Number of pages | Number of pages | Number of pages |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| ALL CUSTODIANS | The custodian of the document being produced. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | The custodian of the document being produced. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. | The custodian of the document being produced. Where data is collected from an archive or non-custodial source, the archive or source shall be listed as custodian. |
| CONFIDENTIAL | Confidentiality designation, if any; otherwise blank. | Confidentiality designation, if any; otherwise blank. | Confidentiality designation, if any; otherwise blank. |
| AUTHOR | Document author from Metadata | | |
| FROM | | Sender of message | Sender of calendar invite |
| TO | | Recipient(s) of message or calendar invite | Recipient(s) of calendar invite |
| CC | | Copied recipient(s) of message or calendar invite | |
| BCC | | Blind copied recipient(s) of message or calendar invite | |
| SUBJECT | | Subject of message | Subject of calendar invite |
| SENTDATE | | The sent date of the message in the format MM/DD/YYYY | Date calendar invite sent (if any) |
| SENTTIME | | The sent time of the message in the format HH:mm:ss | Time calendar invite sent (if any) |
| RECEIVEDDATE | | The received date of the message in the format MM/DD/YYYY | The received date of the invite in the format MM/DD/YYYY |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| RECEIVEDTIME | | The received time of the message in the format HH:mm:ss | The received time of the invite in the format HH:mm:ss |
| FILENAME | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent |
| FILEEXTEN | File extension | File extension | File extension |
| FILESIZE | Size of the file in bytes | Size of the file in bytes | Size of the file in bytes |
| HASH | MD5 or SHA1 hash of the document | MD5 or SHA1 hash of the email | MD5 or SHA1 hash of the calendar invite |
| NATIVELINK | Link to native file (if any) | Link to native file (if any) | Link to native file (if any) |
| TEXTLINK | Link to text file for the document | Link to text file for the email | Link to text file for the calendar invite |
| TITLE | Title from a document's properties | | |
| DATECREATED | Date file was created | | |
| TIMECREATED | Time file was created | | |
| DATEMODIFIED | Date file was last modified | | |
| TIMEMODIFIED | Time file was last modified | | |
| TRACKCHANGE | (Y/N) Field for documents with track changes | | |
| FAMILYDATE | Populated for all documents. Document families populated with parent date. MM/DD/YYYY | Populated for all documents. Document families populated with parent date. MM/DD/YYYY | |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| PRODVOL | Production volume number | Production volume number | Production volume number |
| REDACTION | (Y/N) Field for documents with redactions | (Y/N) Field for documents with redactions | (Y/N) Field for documents with redactions |

Such Metadata field values will be extracted from the native file and will be produced to the extent available at the time of collection and processing, except that they may be redacted if privileged or if the metadata field values contain information protected by law or subject to an order of this Court. This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of ESI, that do not exist as part of the original metadata of the document, or that would be burdensome or costly to obtain.

If necessary, the Metadata for text messages, collaboration system messages (e.g., Chatter), social media messages, and other ESI that does not conform to the Metadata listed here, shall be determined by the meet-and-confer as outlined in Paragraph I.D of this ESI Order.

## **EXHIBIT 2**

### **REQUESTED LOAD FILE FORMAT FOR ESI**

1.    **Delimited Text File.** A delimited text file (.DAT File) containing the fields listed in Exhibit 1 should be provided. There must be one row in this load file for every document in the deliverable; and the file must terminate with a carriage return.  The delimiters for the file should be Concordance defaults:

- Comma – ASCII character 20 (¶)

- Quote – ASCII character 254 (þ)

- Newline – ASCII character 174 (®)

2.    **Image Cross-Reference File (.opt).** The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows:

ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount.

| | |
|---|---|
| ImageID: | The unique designation that Concordance and Opticon use to identify an image. This should be the BegBates Number of the Document. |
| VolumeLabel: | The name of the volume. |
| ImageFilePath: | The full path to the image file. |
| DocumentBreak: | If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document. |
| FolderBreak: | Leave empty. |
| BoxBreak: | Leave empty. |

PageCount:          Number of pages in the Document.

**3.    Sample Data.**

PROD00000001,VOL001,E:\100\ PROD00000001.TIF,Y,,2

PROD00000002, VOL001,E:\100\ PROD00000002.TIF,,,,

PROD00000003, VOL001,E:\100\ PROD00000003.TIF,Y,,,4

PROD00000004, VOL001,E:\100\ PROD00000004.TIF,,,,

PROD00000005, VOL001,E:\100\ PROD00000005.TIF,,,,

PROD00000006, VOL001,E:\100\ PROD00000006.TIF,,,,

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IN RE: INSULIN PRICING LITIGATION

Case 2:23-md-03080
MDL No. 3080

JUDGE BRIAN R. MARTINOTTI
JUDGE RUKHSANAH L. SINGH

THIS DOCUMENT RELATES TO ALL CASES

## STIPULATED CONFIDENTIALITY ORDER

For good cause shown under Fed. R. Civ. P. 26(c), the Court grants the Parties' joint request and enters the following Confidentiality Order:

## 1. PURPOSES AND LIMITATIONS

1.1     Discovery in this Action is likely to involve the production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting or defending this Action may be warranted. The Parties acknowledge that this Order does not confer blanket protections on all Disclosure or Discovery Material. Rather, this Order applies only to the limited information or items designated in good faith as Protected Material in accordance with the provisions herein. The Parties further acknowledge that this Order does not entitle them to file any documents or information under seal; Local Civil Rule 5.3 sets forth the procedures that must be followed and the standards that will be applied when a Party seeks permission from the Court to file material under seal. Before filing a motion for leave to file Protected Material fully under seal, the Parties are to consider alternative measures to protect confidential information, such as filing a redacted document. The use and disclosure of Protected Material at trial will be determined by the Court.

1

**1.2**    In support of the Parties' request, they assert that protection of the identified categories of confidential information is necessary because the Action involves trade secrets and other proprietary and commercially sensitive information, such as the Parties' strategic analyses and confidential pricing information, the public disclosure of which could harm the Parties' competitiveness in the marketplace.  Further, because the Parties include direct competitors, they require a means to protect certain information from disclosure to other Parties.

**1.3**    Nothing in this Order shall affect any right of a Producing Party to make any otherwise proper objection, claim, or response to discovery requests (including, without limitation, interrogatories, requests for admission, requests for production, or questions at deposition).  This Order does not, however, relieve any Party of its obligations to respond to discovery in this Action.

**1.4**    Nothing in this Order shall prevent disclosure of Protected Material beyond the terms and conditions set forth herein if the Designating Party consents in writing to such disclosure.

## 2.    DEFINITIONS

**2.1**    **Action:** The word "Action" is defined to include all actions currently in MDL No. 3080, *In re: Insulin Pricing Litigation*, or later filed in, added to, or transferred to MDL No. 3080, and all actions later remanded to their respective transferor courts and any appeals arising from such cases.  The word "Action" also expressly includes the following District of New Jersey cases:  Case No. 20-03426, *In re Direct Purchaser Insulin Pricing Litigation* ("Direct Purchaser Consumer Action"); Case No. 18-2211, *MSP Recovery Claims Series, LLC v. Aventis U.S. LLC, et al.*; Case No. 17-669, *In re Insulin Pricing Litigation* ("Indirect Purchaser Consumer Action"); and Case No. 18-14999, *Minnesota v. Sanofi-Aventis U.S. LLC, et al.*

**2.2**    **Challenging Party:** A Party or Non-Party that challenges the designation of Protected Material under this Order.

**2.3** **"CONFIDENTIAL" Information or Items:** Disclosure or Discovery Material that a Designating Party believes in good faith to (a) contain trade secrets, competitively sensitive technical, marketing, financial, sales or other confidential business information; or (b) contain private or confidential personal information; or (c) contain information received in confidence from third parties; or (d) that the Designating Party otherwise believes in good faith to be entitled to protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure or other applicable law.

**2.4** **Designating Party:** A Party or Non-Party that designates Disclosure or Discovery Material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY."

**2.5** **Disclosure or Discovery Material:** All non-public documents, items or information, regardless of the medium or manner in which they are generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in the Action.

**2.6** **Expert:** A person with specialized knowledge or experience in a matter pertinent to the Action who has been retained by a Party or its Outside or In-House Counsel to serve as an expert witness or as a consultant in the Action, whether testifying or not, including any such person's support staff.

**2.7** **"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items:** Extremely sensitive "CONFIDENTIAL" Information or Items containing information about (a) strategies for negotiating rebates and other price concessions, including current and historical rebates and other price concessions; (b) strategies for acquisition and retention of clients, including contract negotiation; (c) product development, including formulary development and other client or pharmacy directed products; (d) product pricing and marketing; (e) Protected

Personal Data; (f) claim data based on drug utilization; (g) other trade secrets or other confidential information for which disclosure to another Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means; and (h) such other categories of documents that the parties agree in writing prior to designation of the material as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" are highly likely to cause significant harm to an individual or to the business or competitive position of the Designating Party if disclosed to another Party or Non-Party. The designation of a particular category of information as HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY for purposes of this Stipulated Protective Order is not an admission that such information is discoverable or relevant to the subject-matter involved in the pending litigation.

**2.8     In-House Counsel:** Attorneys or non-attorney individuals responsible for management of the Action who are employees of a Party to the Action.

**2.9     Non-Party:** Any natural person, partnership, corporation, association, or other legal entity not named as a Party to the Action.

**2.10     Outside Counsel:** Attorneys who are not employees of a Party to the Action and their support staff who are retained to represent or advise a Party to the Action or are affiliated with a law firm that has been retained to represent or advise a Party to the Action.

**2.11     Party:** Any Party to the Action, including all its officers, directors, employees, consultants, retained experts, and Outside Counsel (and their support staff).

**2.12     Producing Party:** A Party or Non-Party that produces Disclosure or Discovery Material in the Action.

**2.13** **Professional Vendors:** Persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

**2.14** **Protected Material:** Disclosure or Discovery Material that is designated in good faith as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" by a Designating Party.

**2.15** **Protected Personal Data:** Any Disclosure or Discovery Material that a Party believes in good faith requires additional protections (beyond those provided to information designated as "CONFIDENTIAL" pursuant to this Order) under applicable federal, state, or foreign data protection laws or other privacy obligations. Examples of such data protection laws include but are not limited to the Gramm-Leach-Bliley Act, 15 U.S.C. §6801; the Health Insurance Portability and Accountability Act and the regulations thereunder, 45 C.F.R. Part 160 and Subparts A and E of Part 164 (HIPAA); the European Union's General Data Protection Regulation, Regulation (EU) 2016/679 (GDPR); and the Danish Act on Data Protection. Protected Personal Data includes Protected Health Information, as defined in Section 2.16 of this Order. However, information designated as Protected Personal Data based on a foreign privacy requirement may be so designated only where the information in question is subject to that foreign privacy requirement.

**2.16** **Protected Health Information:** "Protected Health Information" ("PHI") has the same scope and definition as set forth in 45 C.F.R. §§ 160.103 and 164.501.

**2.17** **Receiving Party:** A Party that receives Disclosure or Discovery Material from a Producing Party.

**3.  SCOPE**

The protections conferred by this Order cover not only Protected Material (as defined in Section 2.14 of this Order), but also: (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, and compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Outside or In-House Counsel that might reveal Protected Material.

However, the protections conferred by this Order do not cover: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of (i) this Order or (ii) any other obligation of confidentiality resulting from the express written agreement of the Parties and/or their counsel, including becoming part of the public record through trial or otherwise; and (b) information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party.  The entry of this Order does not prevent any Party from seeking a further order pursuant to Federal Rule of Civil Procedure 26(c) or any applicable state procedural rule or provision governing the terms under which disclosure may be made.

Further, nothing in this Order limits a Party's use or disclosure of its own Protected Material.

**4.  DURATION**

Even after final disposition of the Action, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.  Final disposition shall be deemed to be the later of (1) dismissal of all claims

and defenses in the Action, with or without prejudice; or (2) final judgment in the Action after the completion and exhaustion of all appeals, re-hearings, remands, trials, or reviews of the Action, including the time limits for filing any amended complaint after a dismissal without prejudice, as well as any motions or applications for extension of time pursuant to applicable law.

## 5. DESIGNATING PROTECTED MATERIAL

**5.1 Exercise of Restraint and Good Faith in Designating Material for Protection.** Each Party or Non-Party that designates information or items for protection under this Order must do so in good faith and take care to limit any such designation to specific material that qualifies under this Order. To the extent it is practical to do so, the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify such that other portions of the material, documents, items, or communications for which designation is not warranted are not swept unjustifiably within the ambit of this Order.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY," that Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

**5.2 Manner and Timing of Designations.** Except as otherwise provided in this Order (*see, e.g.*, second paragraph of section 5.2(a) of this Order), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced. Designation in conformity with this Order requires:

     (a)   <u>For information in documentary form</u> (*e.g.*, paper or electronic documents, but excluding transcripts of depositions or other pretrial proceedings), that, whenever

reasonably practicable, the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" to each page of a document that contains Protected Material, or, in the case of information produced in native format, insert "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" in the name of the native file or produce a slip sheet containing the designation. If affixing such a legend is not reasonably practicable (such as, for example, in connection with certain electronically stored information), a stamp bearing the applicable confidentiality designation shall be affixed on the medium by which the Disclosure or Discovery Material is produced.

A Producing Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which documents or material it would like copied and produced. During the inspection and before the designation, all of the documents or material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents or material it wants copied and produced, the Producing Party must determine which documents or material, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents or material, the Producing Party must affix the appropriate designation ("CONFIDENTIAL" OR "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY") to each page that contains confidential information.

(b) <u>For testimony given and exhibits used in deposition or other pretrial proceedings in the Action</u>, the Designating Party shall have up to 30 days from receipt of the final deposition transcript (complete with exhibits and video recording if applicable) to

provide written notice to the court reporter and all parties identifying the specific portions of the testimony and exhibits used as to which protection is sought and to specify the level of protection being asserted. Only those portions of the testimony and those exhibits that are appropriately designated for protection within the 30-day period shall be covered by the provisions of this Order. During this 30-day period, any recording or transcript of the testimony shall be treated as HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY and may only be disclosed pursuant to Section 7.3 of this Order.

Upon being informed that certain portions of testimony are to be designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY," the court reporter and all Parties shall immediately cause each copy of the transcript/exhibits or recording in its custody or control to be appropriately marked and limit disclosure of that transcript/exhibits or recording in accordance with the terms of this Order. If pages of transcribed testimony or exhibits to such testimony that reveal Protected Material are not separately bound by the court reporter, they may not be disclosed to anyone except as permitted under this Confidentiality Order. Counsel shall give notice to all Parties before using any Protected Material in a hearing, deposition, or other proceeding so that the other Parties can ensure that only individuals authorized under this Order to have access to the Protected Material are present before using the Protected Material. The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY."

(c)     For information produced in some form other than documentary and for any other tangible items, the Producing Party shall affix in a prominent place on the exterior of the container or containers in which the information or item is stored and shall designate

in the cover letter referring to such information the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY." If only a portion or portions of the information or items warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s) and specify the level of protection being asserted.

**5.3    Designation of Information Produced by Other Parties.** A Party may designate as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" any Disclosure or Discovery Material produced or disclosed by any other person or entity that the Party reasonably believes qualifies as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" pursuant to this Order. If any third party produces information that it or any Party in good faith believes constitutes its "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" information, the Party claiming confidentiality shall designate the information as such within 30 days of its production or receipt of such information. Such designation shall be made by providing written notice to all Parties of said designation. Any Party receiving information from a third party shall treat such information as "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" during the first 30-day period following receipt, and for the first 30 days following any additional Parties' receipt of the same documents, as to such additional Parties only, while all Parties have an opportunity to review the information and determine whether it should be designated as confidential.

**5.4    Failure to Designate.** A failure to designate Disclosure or Discovery Material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" at the time of production does not, standing alone, waive the Producing Party's right to secure protection under this Order for such material, and the Producing Party may rectify its failure to designate

qualified information or items by: (1) providing written notice to counsel for all Parties to whom the information or items were disclosed that the information or items should have been designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY;" and (2) providing replacement images, information and/or items to the Receiving Party containing the new confidentiality designation within 21 days of sending the notice, unless the parties agree otherwise. Upon receipt of such notice, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

## 6.    CHALLENGING CONFIDENTIALITY DESIGNATIONS

**6.1    Timing of Challenges.** Any Party or Non-Party may challenge a designation of confidentiality at any time.

**6.2    Meet and Confer.** A Party that elects to challenge a confidentiality designation must do so in good faith and must first begin the process by meeting and conferring directly with the Outside Counsel of Record for the Designating Party. The Challenging Party shall initiate the dispute resolution process by providing written notice to the Designating Party of each designation it is challenging by Bates number and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must state that the challenge to confidentiality is being made in accordance with this specific Section of this Order.

The Challenging Party and the Designating Party shall attempt to resolve each challenge in good faith and must begin the process by conferring directly within 10 days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation is not proper and, if no change in designation is offered, the Designating Party must explain the basis for the chosen designation. The Designating Party shall

11

then have 5 business days from the meet-and-confer to provide its final response in writing unless otherwise agreed to by the Parties.

A Challenging Party may proceed to the next stage of the challenge process under Section 6.3 only if it has engaged in this meet and confer process or establishes that the Designating Party has failed to respond within 5 business days to the request to meet and confer.

**6.3** **Judicial Intervention.** If the Challenging Party and the Designating Party cannot resolve a challenge without court intervention, then either Party may proceed in accordance with Local Civil Rule 37.1 and/or this Court's preferences. The burden of persuasion in any such challenge proceeding shall be on the Designating Party. All Parties shall continue to afford the Protected Material in question the level of protection to which it is entitled under the Designating Party's designation until the Court resolves the challenge.

**7.** **ACCESS TO AND USE OF PROTECTED MATERIAL**

**Basic Principles.** Unless otherwise agreed or allowed pursuant to a Court Order, Protected Material shall be used solely for purposes of the prosecution or defense of the Action (including any attempted settlement thereof or appeal therefrom), or the enforcement of insurance rights with respect to the Action, and for no other purpose whatsoever. For the avoidance of doubt, the use of Protected Material and the non-public information therein is restricted to the Action and may not be used in any other proceeding unless required by Court order or agreed to by the Producing Party. Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order.

Nothing in this Order, however, impairs the right of counsel for a State or a Local Government Plaintiff to disclose to an agency of that State or Local Government Plaintiff any document or information regarding any potential violation of law or regulation regarding any

matter within the agency's jurisdiction. Further, nothing in this Order prevents a State or Local Government Plaintiff from serving a subpoena, issued within its authority in a separate matter or proceeding, that may request information or documents that have also been produced in this Action. For the avoidance of doubt, Protected Material may not be shared with plaintiffs in non-Action lawsuits or with other states, cities, or other municipalities unless expressly agreed to in writing by the Designating Party or authorized by this or other order of the Court.

If Protected Material is requested for disclosure under any public information act or the equivalent, such Protected Material will be exempt and protected from disclosure, and this Order shall be deemed a court order protecting such material and prohibiting public disclosure except as otherwise provided in this Order.

**7.1** **Security of Protected Material.** Any person in possession of another Party's Protected Material shall exercise the same care with regard to the storage, custody, or use of Protected Material as they would apply to their own material of the same or comparable sensitivity. Receiving Parties must take reasonable precautions to protect Protected Material from loss or misuse, including, but not limited to:

(a) Protected Material in electronic format shall be maintained in a secure litigation support site(s) that applies standard industry practices regarding data security, including but not limited to application of access control rights to those persons authorized to access Protected Material under this Order;

(b) An audit trail of use and access to litigation support site(s) shall be maintained while the Action, including any appeals, is <u>pending</u>;

(c) Any Protected Material downloaded from the litigation support site(s) in electronic format shall be stored only on device(s) (e.g., laptop, tablet, smartphone, thumb

drive, portable hard drive) that are password protected and/or encrypted with access limited to persons entitled to access Protected Material under this Order. If the user is unable to password protect and/or encrypt the device, then the Protected Material shall be password protected and/or encrypted at the file level;

(d)     Protected Material in paper format is to be maintained in a secure location with access limited to persons entitled to access Protected Material under this Order, but nothing within this provision requires such persons to maintain such Protected Material in an individually locked office;

(e)     Summaries of Protected Material, including any lists, memoranda, indices or compilations prepared or based on an examination of Protected Material that quote from or paraphrase Protected Material in a manner that enables it to be identified shall be accorded the same status of confidentiality as the underlying Protected Material;

(f)     If the recipient of Protected Material is shipping data in electronic format, the recipient shall encrypt the data prior to shipping and provide the encryption key in separate correspondence. If hard copy documents are shipped, the Receiving Party will ship the documents using secure packaging tape via Federal Express or UPS and retain a tracking number for the materials. If the Receiving Party learns at any time that the Protected Material has been retrieved or viewed by unauthorized parties during shipment, it will immediately notify the Producing Party and take all reasonable measures to retrieve the improperly disclosed materials;

(g)     If the Receiving Party discovers a breach of security relating to the Protected Material of a Producing Party, the Receiving Party shall: (1) provide written notice to the Producing Party of the breach within 24 hours of the Receiving Party's

discovery of the breach; (2) investigate and remediate the effects of the breach, and provide the Producing Party with assurance reasonably satisfactory to the Receiving Party that the breach shall not recur; and (3) provide sufficient information about the breach that the Producing Party can ascertain the size and scope of the breach. The Receiving Party agrees to cooperate with the Producing Party or law enforcement in investigating any such security incident.

(h)     Any Protected Health Information shall be deemed "CONFIDENTIAL" and, as such, subject to the terms of this Confidentiality Order. Any person who receives and stores PHI in connection with this Action will develop, implement, maintain, and use appropriate administrative, technical, and physical safeguards to preserve the privacy, integrity, and confidentiality of any PHI and to prevent unpermitted use or disclosure of any PHI they may receive from any person in connection with this Action. PHI will be securely returned or destroyed pursuant to the provisions of Section 14 of this Order.

(i)     No Protected Material, including excerpts from Protected Material, may be inputted into any public, non-compartmentalized generative artificial intelligence system (e.g. ChatGPT, Google Bard, etc.).

**7.2    Disclosure of "CONFIDENTIAL" Information or Items.** Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)     the Receiving Party's Outside Counsel in the Action, as well as employees of said Outside Counsel to whom it is reasonably necessary to disclose the information for the Action;

(b)      experts and consultants and their staff retained to assist the Parties in the conduct of the Action, so long as such person(s) has executed a copy of the "Acknowledgment and Agreement to Be Bound" attached as **Exhibit A;**

(c)      the Court and its personnel, as well as any Special Master appointed by the Court, and his/her personnel;

(d)      the Attorney General of each State with a case filed in or transferred to the Action, along with the attorneys and staff employed by each such Attorney General's Office to whom disclosure is reasonably necessary for the Action;

(e)      the attorneys and staff employed by any Local Government Plaintiff with involvement in the Action, to whom disclosure is reasonably necessary for the Action;

(f)      persons or entities that provide litigation support services retained by a Party or a Party's Outside Counsel, including, law firms or attorneys performing solely document review, court reporters and their staff, professional jury or trial consultants, and Professional Vendors, as well as their employees and subcontractors, to whom disclosure is reasonably necessary for the Action, so long as such person has executed a copy of the "Acknowledgment and Agreement to Be Bound" attached as **Exhibit A;**

(g)      during their depositions or while testifying during other pre-trial proceedings, witnesses in the Action, provided that the witness signs the "Acknowledgment and Agreement to be Bound" attached as **Exhibit A**, or agrees on the record to be bound by the provisions of this Order;

(h)      the author or recipient of a document containing the information or a custodian or other person who: (1) possessed, knew, or were aware of the information; or

(2) had responsibilities regarding, or were involved in the content or subject matter discussed in the document;

(i)  any mediators or other mutually agreed upon or court-appointed person responsible for resolving the Action in a non-judicial forum so long as such person has executed a copy of the "Acknowledgment and Agreement to Be Bound" attached as **Exhibit A**;

(j)  Counsel for claimants in litigation pending outside the Action and involving the same and/or similar operative facts involved in the Action, provided that: (i) the Designating Party expressly agrees in writing; (ii) the Designating Party is a party to the other litigation; (iii) the proposed recipient has signed the "Acknowledgement and Agreement to Be Bound" attached as **Exhibit A,** a copy of which will be provided to the Designating Party within 14 days of execution; and (iv) the proposed recipient agrees to be bound by the terms of the Common Benefit Order. Any recipient of documents or information produced under this provision shall submit to the jurisdiction of this Court for any violations of this Order and/or the Common Benefit Order;

(k)  the officers, directors, and employees (including In-House Counsel) of the Receiving Party who are required to participate in decisions with reference to this Action or are persons necessary for the prosecution or defense of this Action; and

(l)  any other person to whom the Designating Party agrees in writing disclosure may be made, provided such person has signed the "Acknowledgement and Agreement to Be Bound" attached as **Exhibit A**.

The Parties shall meet and confer regarding the disclosure of CONFIDENTIAL Protected Material to any person who does not fall within subsections (a) through (l) of this Section. If

agreement is not reached, nothing in this Order prevents a Party from making an application to the Court to show the individual the Protected Material.

**7.3    Disclosure of "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" Information or Items.** Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" only to:

(a)    the Receiving Party's Outside Counsel in the Action, as well as employees of said Outside Counsel, to whom it is reasonably necessary to disclose the information for the Action;

(b)    experts and consultants and their staff retained to assist the Parties in the conduct of the Action so long as such person has executed a copy of the "Acknowledgment and Agreement to Be Bound" attached as **Exhibit A;**

(c)    the Court and its personnel, as well as any Special Master appointed by the Court, and his/her personnel;

(d)    the Attorney General of each State with a case filed in or transferred to the Action, along with the attorneys and staff employed by each such Attorney General's Office to whom disclosure is reasonably necessary for the Action, provided that those attorneys who are not counsel of record and staff are not involved in bid procurement negotiations relating to pharmacy benefit managers or pharmacy benefit services;

(e)    the attorneys and staff employed by any Local Government Plaintiff to whom disclosure is reasonably necessary for the Action, provided that those attorneys who are not counsel of record and staff are not involved in bid procurement negotiations relating to pharmacy benefit managers or pharmacy benefit services;

(f)      persons or entities that provide litigation support services retained by a Party or a Party's Outside Counsel including law firms or attorneys performing solely document review, court reporters and their staff, professional jury or trial consultants, and Professional Vendors, as well as their employees and subcontractors to whom disclosure is reasonably necessary for the Action so long as such person has executed a copy of the "Acknowledgment and Agreement to Be Bound" attached as **Exhibit A;**

(g)      any mediators or other mutually agreed upon or court-appointed person responsible for resolving the Action in a non-judicial forum so long as such person has executed a copy of the "Acknowledgment and Agreement to Be Bound" attached as **Exhibit A;**

(h)      Counsel for claimants in litigation pending outside the Action and involving the same and/or similar operative facts involved in the Action, provided that: (i) the Designating Party expressly agrees in writing; (ii) the Designating Party is a party to the other litigation; (iii) the proposed recipient has signed the "Acknowledgement and Agreement to Be Bound" attached as **Exhibit A,** a copy of which will be provided to the Designating Party within 14 days of execution; and (iv) the proposed recipient agrees to be bound by the terms of the Common Benefit Order. Any recipient of documents or information produced under this provision shall submit to the jurisdiction of this Court for any violations of this Order and/or the Common Benefit Order;

(i)      the author or recipient of a document containing the information;

(j)      during their depositions or while testifying during other pre-trial proceedings, witnesses in the Action to whom disclosure is reasonably necessary, provided

19

that the witness signs the "Acknowledgment and Agreement to be Bound" attached as

**Exhibit A**, or agrees on the record to be bound by the provisions of this Order; and

(k) any other person to whom the Designating Party agrees in writing disclosure

may be made, provided such person has signed the "Acknowledgement and Agreement to

Be Bound" attached as **Exhibit A.**

The Parties shall meet and confer regarding the disclosure of HIGHLY CONFIDENTIAL

Protected Material to any person who does not fall within subsections (a) through (k) of this

Section. If agreement is not reached, nothing in this Order prevents a Party from making an

application to the Court to show the individual the Protected Material.

## 8. PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER MATTERS

If a Party is served with a subpoena or court order issued in litigation or investigations

besides the Action or any other process by any administrative agency, legislative body or any

person or entity that compels or requests disclosure of Protected Material, that Party must:

(a) notify the Designating Party in writing of the subpoena, order, or process;

the notification shall be made as promptly as the particular circumstances require to permit

the Designating Party to take actions required to prevent disclosure;

(b) promptly notify in writing the entity who caused the subpoena, order, or

process to issue in the other proceeding that some or all of the material covered by the

subpoena, order, or process is subject to this Order. Such notification shall include a copy

of this Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by

the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena, court order, or process shall not produce any information designated in the Action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" before a determination by a court with jurisdiction to issue a protective order unless the Party has obtained the Designating Party's permission to produce such information. The Designating Party shall bear the burden and its own expense of seeking protection in that court or other forum of its Protected Material.

Nothing in these provisions should be construed as authorizing or encouraging a Receiving Party to disobey a directive or order from another court.

9.    **APPLICABILITY OF THIS ORDER TO NON-PARTIES**

(a)    The terms of this Order are applicable to a Non-Party's Protected Material. Non-Parties may designate such information as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" in which case the Parties will treat such information in accordance with the corresponding protections afforded by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b)    The Party issuing any subpoena on any Non-Party in this Action shall include with any such subpoena a copy of this Order.

(c)    In the event that a Producing Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Producing Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, the Producing Party must initiate any notice or other procedure required under its agreement with the Non-Party within 14 days from the time the Producing Party discovers that Non-Party confidential information is responsive, provide

21

the Non-Party with a copy of this Order, and seek the Non-Party's consent to the disclosure. If such permission (where required) is not given within fourteen (14) days of providing notice or initiating such other procedure, then the parties shall meet and confer in good faith to resolve any concerns over the production of information. If the parties are unable to resolve any such concerns, the parties shall advise the Court by way of joint letter by no later than seven (7) days from the parties' meet and confer, with notice provided to the Non-Party.

**10.    INADVERTENT DISCLOSURE OF PROTECTED MATERIAL**

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must promptly (a) notify in writing the Designating Party of the disclosures; (b) use its best efforts to retrieve all copies of the Protected Material; (c) make all reasonable efforts to prevent further disclosure by each person who received such information; (d) inform the person or persons to whom disclosures were made, to the extent the person or persons are identifiable, of all terms of this Order; and (e) make all reasonable efforts to obtain such person(s)' execution of the "Acknowledgment and Agreement to Be Bound" attached as **Exhibit A**.

**11.    NON-WAIVER OF PRIVILEGE**

This Order shall not be construed as a waiver by any Party of any applicable privilege to withhold production of Discovery Material, or of any right which any Party may have to assert such privilege at any stage of the litigation of this Action. The production of any Discovery Material shall also not constitute a waiver of any attorney-client privilege or work-product protection that may be asserted by the Producing Party either in this Action or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). The provisions of Federal Rule of Evidence 502(b) are

22

inapplicable to the production of Disclosure or Discovery Material under this Stipulated Confidentiality Order. The fact of production of privileged information or documents by any Producing Party in this Action shall not be used as a basis for arguing that a claim of privilege or work product has been waived in any other proceeding. Without limiting the foregoing, this Stipulated Confidentiality Order shall not affect the Parties' legal rights to assert privilege or other protection claims over documents in any other proceeding. When the production or disclosure of any Discovery Material protected by attorney-client privilege or work-product protection is discovered by or brought to the attention of the Producing Party, the treatment of such material shall be in accordance with Federal Rule of Civil Procedure 26(b)(5)(B). That treatment shall be deemed to comply with any obligations the Producing Party would otherwise have had pursuant to Fed. R. Evid. 502(b) or under the common law. Nothing herein will prevent a Receiving Party from challenging the propriety of a privilege assertion by submitting a challenge to the Court consistent with applicable law, although the privileged materials themselves cannot be used or disclosed as part of such a challenge unless such disclosure is ordered by the Court.

## 12. MISCELLANEOUS

**12.1 Right to Further Relief.** Nothing in this Order abridges the right of any interested party to seek its modification by the Court in the future. This Order may be modified by the Court on its own motion or on motion of any Party or any other person with standing concerning the subject matter. The Order must not, however, be modified until the Parties have been given notice and an opportunity to be heard on the proposed modification.

**12.2 No Judicial Determination.** This Order is entered based on the representations and agreements of the Parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any documents or information designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" are

found by the Court to be so, unless and until such time as the Court may rule on a specific document or issue.

**12.3 Right to Assert Other Objections.** By stipulating to the entry of this Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order. Similarly, no Party waives any right to object on any ground or to use in evidence any of the material covered by this Order.

**12.4 Filing Protected Material.** Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record any Protected Material. A Party must file under seal any Protected Material in compliance with Local Civil Rule 5.3. The burden of persuasion, however, remains with the Designating Party.

**12.5 Protected Health Information.** The Parties agree that any Protected Health Information will not be used or disclosed for any purposes other than the Action for which such information was requested. All Protected Health Information shall either:

     (1)    be returned to the Producing Party, or

     (2)    at the option of the Producing Party, be destroyed.

All Parties shall, upon request of the Producing Party make certification of compliance with this Section and shall deliver the same to the Producing Party not more than 45 days after the final disposition of the Action, as defined in Section 4. This provision is, and shall be construed as, satisfying the requirements for a Qualified Protective Order under 45 CFR § 164.512(e)(1)(v).

**13. REPRODUCTIONS**

Notwithstanding any provisions to the contrary, documents and discovery material that were produced in the Action prior to the entry of this Order, or documents and discovery material

produced in other litigation, arbitrations, governmental inquiries, or any other matters, including regulatory processes (collectively, "Other Productions") may be reproduced in this Action with the same confidentiality designations as originally produced. This provision does not limit the right of a Party to challenge any confidentiality designations from such Other Productions.

## 14.  FINAL DISPOSITION

Upon final disposition of the Action, as defined in Section 4, any Protected Material received by a State or Local Government Plaintiff and subject to that State or Local Government's record retention laws and/or policies shall be destroyed in accordance with those laws and/or policies, with confidentiality maintained in the interim, as applicable. If the Protected Material is not subject to that State or Local Government's record retention laws and/or policies, the State or Local Government Plaintiff must either: (1) return the Protected Material to the Producing Party no later than 60 days after final disposition if in tangible document form; or (2) destroy the Protected Material no later than 60 days after final disposition, with confidentiality maintained in the interim, as applicable. For the avoidance of doubt, Section 12.5 governs the Parties' obligation to return or destroy Protected Health Information after the final disposition of the Action.

Otherwise, within 60 days after the final disposition of the Action, as defined in Section 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such Protected Material, including all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party, on request of the Producing Party, must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline that: (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed; and (2) affirms that the Receiving Party

has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material.  Notwithstanding this provision, Outside and In-House Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material.  Any such archival copies that contain or constitute Protected Material remain subject to this Order as set forth in Section 4.

This Court will retain jurisdiction to enforce the terms of this Order following the final disposition of the Action.

**PURSUANT TO THE PARTIES' STIPULATED ORDER, IT IS SO ORDERED.**

Dated: March 20, 2024

_____
UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case 2:23-md-03080**<br>**MDL No. 3080**<br><br>**JUDGE BRIAN R. MARTINOTTI**<br>**JUDGE RUKHSANAH L. SINGH** |

**THIS DOCUMENT RELATES TO ALL CASES**

**EXHIBIT A**
**ACKNOWLEDGEMENT AND AGREEMENT TO BE BOUND**
**BY THE CONFIDENTIALITY ORDER**

I, _____, state that:

The name and address of my present employer is: _____

_____

_____

My relationship to the Parties to the Action is as follows: _____

_____

_____

I have read and reviewed in its entirety the Confidentiality Order that has been signed and entered in the Action. I understand that my execution of this Acknowledgement And Agreement To Be Bound By The Confidentiality Order, indicating my agreement to be bound by the Order, is a prerequisite to my review of any information designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" pursuant to the Order.

I hereby agree to be bound by and comply with the terms of the Confidentiality Order. I further agree to submit to the jurisdiction of the United States District Court for the District of New Jersey for the limited purpose of enforcing the terms of the Confidentiality Order.

At the Final Disposition of the Action, I will either destroy or return to Outside Counsel all Protected Material.

DATED this the _____ day of _____, 20___.


_____

(Signature)


_____

(Typed or Printed Name)