# EXHIBIT 7

# ALSTON & BIRD

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
404-881-7000 | Fax: 404-881-7777

**Liz Broadway Brown**            Direct Dial: **+1 404 881 4688**            Email: **liz.brown@alston.com**

February 21, 2025

**BY E-MAIL**

Brandon L. Bogle
LEVIN PAPANTONIO THOMAS MITCHELL
RAFFERTY AND PROCTOR, P.A.
bbogle@levinlaw.com

Johad Conrod
THE CICALA LAW FIRM PLLC
johan@cicalapllc.com

Re:     *In re Insulin Pricing Litigation*, No. 2:23-md-03080 (D.N.J.)

Counsel:

Defendants OptumRx, Inc., CVS Caremark, and Express Scripts, Inc. (collectively, the "PBMs"), write in response to the questions posed in Plaintiffs' January 31, 2025 email relating to their subpoena to non-party Compass Lexecon ("Compass").

As an initial matter, the PBMs reiterate their previously interposed objections to the Subpoena seeking discovery from an expert consultant the PBMs retained who issued reports in 2024 that go well beyond the scope of this litigation. As you know, the PBMs served those objections by letter dated November 22, 2024, and by email dated December 19, 2024. The PBMs expressly reserve all rights.

   1. **Which litigation(s) were the PBMs anticipating when they engaged Compass?**

The PBMs engaged Compass as a consultant to perform work at the direction of counsel in anticipation of litigation following the commencement of: (i) numerous state, local government and private party lawsuits aimed at PBMs, rebates, and drug pricing; and (ii) the State Attorneys General and FTC investigations into the PBMs, including the Rule 6(b) study commenced by the FTC in 2022.[1] Compass was engaged in 2023 after the FTC began its Rule 6(b) inquiry; the FTC issued an Interim

---

[1] https://www.ftc.gov/news-events/news/press-releases/2022/06/ftc-launches-inquiry-prescription-drug-middlemen-industry

Alston & Bird LLP                                                                                                         www.alston.com

Atlanta | Brussels | Century City | Charlotte | Chicago | Dallas | London | Los Angeles | New York | Raleigh | San Francisco | Silicon Valley | Washington, D.C.

In re Insulin Pricing Litigation, No. 2:23-md-03080 (D.N.J.)
February 21, 2025
Page 2

Staff Report in July 2024[2], and in September 2024 the FTC commenced litigation by filing an enforcement against the PBMs.

By asking which particular litigation the PBMs were anticipating, Plaintiffs are not asking the right question to determine whether work-product protection applies. Work-product protection only requires "the material be prepared in anticipation of *some* litigation, not necessarily in anticipation of the *particular* litigation in which it is being sought." *In re Ford Motor Co.*, 110 F.3d 954, 967 (3d Cir. 1997). The PBMs anticipated litigation given the numerous governmental investigations. Such anticipation was reasonable because "once a governmental investigation has begun, litigation is sufficiently likely to satisfy the 'anticipation' requirement" for work-product protection. *In re Grand Jury Subpoena*, 220 F.R.D. 130, 147 (D. Mass. 2004).

Accordingly, to establish an entitlement to work-product protection, the PBMs do not need to pinpoint what particular litigation they were anticipating when they retained Compass or when the Carlton Reports were published. Given the governmental investigations and pending lawsuits, the PBMs have amply demonstrated that Compass was engaged "because of the prospect of litigation." *See Cellco P'Ship v. Certain Underwriters at Lloyd's London*, 2006 U.S. Dist. LEXIS 28877 at *13 (D.N.J. May 11, 2006) (quoting *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3d Cir. 1993)).[3]

2. **Will Compass produce: (i) the data the PBMs submitted to the FTC; (ii) other confidential data the PBMs provided Compass, and (iii) publicly available information collected by Compass used in preparing the Carlton Report?**

No. The PBMs explain why they object to the production of each particular data or information request below.

### (i) Data the PBMs submitted to the FTC

The PBMs object to the production of the data the PBMs submitted to the FTC and then provided to Compass for at least three independent reasons.

*First*, the data the PBMs submitted to the FTC is highly confidential and includes data regarding non-insulin drugs that are not relevant to any party's claims or defenses in this litigation.

*Second*, by requesting data the PBMs provided to the FTC, Plaintiffs are seeking "cloned discovery." As Magistrate Judge Michael T. Parker recognized in a member case, Plaintiffs are not entitled to such cloned discovery from *the parties*. *See also Chen v. AMPCO System Parking*, 2009 WL 2496729 at *2–3 (S.D. Cal. Aug. 14, 2009) (denying motion to compel production of all discovery taken in state court cases without a sufficient showing of relevance); *Moore v. Morgan Stanley & Co., Inc.*, 2008 WL 4681942 at *2, 5 (N.D. Ill. May 30, 2008) (holding that "[a] party's requested discovery must be tied to the particular claims at issue in the case" and that "just because the information was produced in another lawsuit ... does not mean that it should be produced in this lawsuit"). Plaintiffs are especially not entitled to acquire such cloned discovery from a *third-party* via a subpoena.

---

[2] https://www.ftc.gov/system/files/ftc_gov/pdf/pharmacy-benefit-managers-staff-report.pdf

[3] Although not pertinent to the work-product inquiry, Compass was not retained in anticipation of the lawsuits filed by Express Scripts in September 2024 or by the PBMs in November 2024.

In re Insulin Pricing Litigation, No. 2:23-md-03080 (D.N.J.)
February 21, 2025
Page 3

*Third*, a portion of the confidential data the PBMs provided to the FTC (and then to Compass) will be duplicative of the data the PBMs will produce in discovery in this litigation. Requiring a third-party to produce such duplicative data violates the direction from Magistrate Judge Singh to avoid burdening third-parties with information they can acquire from the parties. *See* May 13, 2024 Hr'g Tr. 59:19–21 (cautioning the parties "to be cognizant though that you're trying to get requests that you could get from a party from a nonparty" and to avoid "unduly burden[ing] our nonparties out there.").

### (ii) Other Confidential Data the PBMs Provided to Compass.

In addition to the reasons provided above, other confidential data and information the PBMs' counsel provided to Compass constitutes core work product because it reflects counsel's "selection and compilation" of documents and information falling within the "highly-protected category of opinion work product." *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985).

### (iii) Publicly Available Information Compass Used.

Plaintiffs did not specify what publicly available information they are seeking to compel Compass to produce. Inasmuch as Plaintiffs are seeking publicly available information not specifically disclosed in the Carlton Reports, the PBMs' counsel's curation of what publicly available information to provide Compass constitutes core work-product protected from disclosure. *See Sporck*, 759 F.2d at 316. To the extent Plaintiffs are seeking publicly available information specifically cited to and disclosed in the Compass Reports, such information is equally available to Plaintiffs and demanding such information from Compass imposes an undue burden on it in violation of Rule 45(d)(1).

**3. What is the specific cost burden associated with producing the "Confidential Data"?**

The PBMs understand that Compass is inquiring about the burdens associated with reviewing and producing certain data, but the burden associated with the production of data depends on what particular data Plaintiffs seek to be produced.

**4. Are the PBMs asserting privilege in connection with the versions of the Carlton Report issued on July 2024, October 2024, or both?**

For the same reasons set forth in response to Question 1, the materials underlying both versions of the Carlton Report are protected from disclosure under the attorney-client privilege and work product doctrine.

**5. Will Compass produce its retainer agreement?**

The PBMs object to the production of their retainer agreement with Compass because it contains confidential information not relevant to this litigation.

**6. What data is being produced in response to Master Discovery RFP No. 33 that is duplicative of the data sought by the Subpoena?**

The parties are meeting and conferring about the scope of documents and data to be produced in response to Plaintiffs' master discovery requests, including Master Discovery RFP No. 33. As those discussions are ongoing, the PBMs are unable to provide a response at this time to this question.

In re Insulin Pricing Litigation, No. 2:23-md-03080 (D.N.J.)
February 21, 2025
Page 4

Sincerely,

Liz Broadway Brown