**SEEGERWEISS** LLP
NEW YORK • NEW JERSEY • PHILADELPHIA • NEWTON, MA

February 28, 2025

**VIA ECF**

Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

      Re:    *In re: Insulin Pricing Litigation*, MDL No. 3080
             No. 2:23-md-03080-BRM-RLS
             <u>Current TAR Dispute Involving Express Scripts</u>

      Pursuant to the Court's instruction at the February 10, 2025 Discovery Conference, Plaintiffs submit this letter to address their outstanding disputes with Defendants Express Scripts, Inc., Medco Health Solutions, Inc., and Express Scripts Administrators, LLC (collectively, "Express Scripts") regarding Express Scripts' proposed implementation of TAR under Sections V and V.B of the Court's ESI Protocol (CMO #11) [ECF No. 208].

## INTRODUCTION

      Express Scripts first disclosed its intent to use TAR on December 16, 2024. The parties promptly held numerous conferrals over how Express Scripts intended to implement this technology, with Express Scripts refusing to provide crucial information regarding its proposed methodology.

      This dispute was raised with the Court by way of Plaintiffs' January 28, 2025 letter [ECF No. 398], as well as Express Scripts' February 5, 2025 response [ECF No. 410]. The Court held a Discovery Conference on February 10, 2025, and remarked, among other things, that "[w]hat appears to the Court is that we have different interpretation of what 'iterative and cooperative' means." Tr. at 9. And specifically with respect to TAR, the Court confirmed that:

> [W]hen I entered the order resolving some of the disputes regarding the ESI protocol, there was the issue regarding the disclosure of use of TAR. We'll run over again in that order I instructed the parties to engage in an iterative and cooperative approach as referenced by the parties.

This Court proceeded to quote *In re Diisocyanates Antitrust Litigation*,[1] where that court explained that: "Transparency transcends cooperation. It does not mean merely that parties must discuss issues concerning the discovery of ESI. It requires that they disclose

---

[1] *See In re Diisocyanates Antitrust Litig.*, 2021 WL 4295729, at *6 (W.D. Pa. Aug. 23, 2021).

information sufficient to make those discussions, as well as any Court review, meaningful." Tr. at 35 (emphasis added).

And here, as Your Honor explained:

> [T]he point of iterative and cooperative and transparency regarding the TAR process is really to ensure that there is a proper validation process in place when TAR is implemented. And with that being said, I'm going to instruct the parties to meet and confer to the extent plaintiffs have additional questions about the validation process specifically. The Express Scripts defendants . . . shall provide sufficient information for not only any objections to a validation process but for the Court to review whether that validation process is sufficient to meet the discovery obligations. And, in particular, although the Court is not holding the TAR process to a higher standard, such as Judge Peck indicated in *Rio Tinto*, the Court does recognize that validation, including recall, precision, et cetera, is important in this context, particularly concerning the issues at stake in this litigation.

*Id.*

Since that February 10, 2025 discovery conference — and notwithstanding this Court's unambiguous guidance as to the level and substance of cooperation expected from Express Scripts — the parties have made no meaningful progress to resolve their TAR disputes.

The parties agreed to a mutual exchange of information on February 14, 2025, with Plaintiffs providing their custodian counterproposal, and Express Scripts providing a disclosure of non-custodial sources and its response to Plaintiffs' proposal concerning Express Scripts' use of TAR. The parties conferred regarding TAR on February 18, 2025, and Plaintiffs thereafter provided Express Scripts with a proposed Stipulation and Order Governing the Use of Technology Assisted Review, which largely mirrors Plaintiffs' initial (and informal) TAR proposal made to Express Scripts on January 24, 2025, but also includes additional concessions Plaintiffs have since agreed to in the spirit of compromise (explained below).

Plaintiffs' proposed Stipulation, attached as Exhibit A, is supported by renowned TAR scholar Maura R. Grossman and balances Express Scripts' stated desire for "self-management" of its TAR process with the specific guardrails necessary to ensure that Express Scripts' approach would be implemented in accordance with sound TAR principles and validation processes. As set forth in Professor Grossman's declaration, Plaintiffs' proposal accounts for essential features of a TAR workflow: (i) training of the TAR model, (ii) the stopping criteria to terminate the TAR review process, and (iii) validating the TAR model and production.

Express Scripts rejected Plaintiffs' proposed TAR Stipulation the day after receiving it, stating, among other things, that "Express Scripts does not intend to enter into a stipulated, much less court-ordered, protocol for a review process that we are ultimately responsible for managing." Exhibit B.

The parties held a final conferral on Thursday, February 27, 2025. At that conferral, Express Scripts for the first time suggested that it might respond to Plaintiffs' proposal, but nevertheless maintained its position that it would not agree to any court-ordered protocol to

govern its TAR process. While Plaintiffs appreciate Express Scripts' (now second attempt at an) eleventh-hour overture, it is nevertheless clear that the positions Express Scripts has maintained — and its staunch and repeated refusal to even offer to engage with Plaintiffs until the last minute — renders the parties at impasse such that Court intervention is required.

Specifically, in addition to the threshold dispute over Express Scripts' refusal to agree to *any* stipulated or court-ordered protocol, there remain three discrete and fundamental disputes regarding Express Scripts' proposed TAR methodology, which Plaintiffs have been unable to resolve with Express Scripts despite numerous and repeated efforts. Each of these disputes is addressed below.

1. **Training Using All Relevance-Based Coding Decisions**

Express Scripts is using Reveal's Brainspace CCML, which is generally known to be a variant of the Continuous Active Learning ("CAL") TAR protocol. (This CAL process is sometimes referred to as TAR 2.0.)[2] CAL tools—as the name implies—are meant to be trained continuously on all relevance-based coding decisions. As Professor Grossman explains: "This continuous training provides the TAR model with far more training examples, both in volume and diversity than the TAR 1.0 method and has been shown to be superior." *See id.* ¶ 8.

Express Scripts refuses to commit to continuously train the TAR model using all relevance-based coding decisions made by attorneys throughout the review. Nor will Express Scripts commit to disclose whether they choose to use a more limited training process. Express Scripts claims that they do not need to disclose this information because, if they decide at some point to rely only upon the coding decisions made during the quality-control review for training, this would be "core work-product decisions that do not relate directly to validating the TAR process." Exhibit C.

Express Scripts' position obscures fundamental information as to how TAR will be implemented. And the potential prejudice to Plaintiffs is real. According to Professor Grossman, "if the majority of the training is implemented based upon a more limited set of 'quality-control' documents, chosen in an undisclosed manner and an unknown (but clearly lesser) volume than *all* documents"—as Express Scripts has signaled— then "this is not only no longer a CAL process, but it is also not a systematic, reliable, or repeatable process." Grossman Decl. ¶ 11. Rather, "[t]he documents selected for training and their coding becomes far more influential, with the potential to unreasonably bias the prioritization of the documents and the sufficiency of the production." *Id* at ¶ 11.

Plaintiffs cannot accept Express Scripts' unreliable, black-box approach to TAR. Nor is such an approach consistent with the "iterative and cooperative approach" required by the ESI Order (ECF No. 208); the "long line of cases hold[ing] that TAR requires '*an unprecedented degree of transparency and cooperation among counsel in the review and production of ESI responsive to discovery requests*,'" *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 337 F.R.D. 610, 622 (D.N.J. 2020) (emphasis added); or the Court's guidance during the last

---

[2] Professor Grossman co-invented the CAL process with Professor Gordon V. Cormack. *See* Grossman Declaration ¶ 6.

discovery conference regarding the cooperation expected from Express Scripts. Plaintiffs accordingly seek an order requiring Express Scripts to use its CAL tool in a manner that it was designed: to train continuously on all relevance-based coding decisions.

### 2. Review Cut-off Criterion

Determining an appropriate stopping point for the TAR review is critical to ensure an effective and efficient TAR process. *See* Grossman Decl. ¶ 12. To date, Express Scripts has not disclosed the criterion it will use to determine when the TAR review process may cease, and validation should be undertaken. Rather, during the parties' February 19, 2025 conferral, Express Scripts argued that an agreed-upon stopping point was unnecessary so long as there is validation and that a stopping point is merely an alternative to validation.

But Express Scripts is wrong. "The goal of TAR — or any review process — is to identify as many responsive documents as reasonably possible, at a proportionate cost. Validation should only be undertaken when Express Scripts has an objective reason to be confident that its review is reasonably complete." *Id.* at ¶ 14. As Professor Grossman explains: "If the TAR review is stopped too early, a material number of responsive documents are left behind that could readily have been found. Conversely, if the TAR review is not stopped at a reasonable point, the review becomes disproportionate because an insufficient number of new and different responsive documents are being identified to justify the cost of continuing the review process." *Id.* ¶12.

The stopping point criterion that Plaintiffs have proposed—marginal precision of 10%, meaning that the last 1,000 documents reviewed contain 10% or fewer responsive documents—will not only ensure a sufficiently high recall rate overall, but will also help to ensure that various aspects of relevance have been identified. Plaintiffs' proposed approach to determining a stopping point for review — according to Professor Grossman — is objective, reasonable, and technologically sound. *See id.* at ¶ 13.

### 3. Validation Protocol and Recall Calculation

The parties agree that validation is the most critical aspect of any anticipated TAR protocol. For this reason, validation has been a focal point of the parties' discussions. Yet, little to no progress has been made, and the lack of agreement on this point demonstrates that a specific protocol is required.

Plaintiffs have proposed a validation protocol and estimated recall calculation that "is reasonable and consistent with validation protocols ordered in other complex litigations, including *In re Broiler Chicken Antitrust Litig.*, 2018 WL 1146371 (N.D. Ill. 2018) and *In re Uber Techs, Inc., Passenger Sexual Assault Litig.*, No. 3:23-md-03084, ECF 524." *See* Grossman Decl. ¶ 15.

Professor Grossman, as the Special Master who ordered the validation protocol in *In re Broiler Chicken*, has explained that the Plaintiffs' proposed validation process — which was applied in both *In re Broiler Chicken Antitrust Litig.* and *In re Uber Techs, Inc., Passenger*

4

*Sexual Assault Litig.* — relies on samples drawn from the entire universe of documents subject to TAR:

> The documents in the validation sample set are interspersed and reviewed and coded under precisely the same conditions. The review of those documents is "blind" so that the reviewers are unaware of the previous coding or predicted responsiveness of any document in the sample. This is necessary to ensure that the validation coding is truly independent of the prior review process and the reviewers are not influenced or biased in their responsiveness determinations. When the reviewer is given only null-set documents to examine—documents which are almost exclusively non-responsive—they are biased towards marking all the documents non-responsive. This improperly elevates the recall estimate.

Grossman Decl. ¶ 16.

This form of "null set only" validation review — which is commonly referred to as "elusion sampling" and which Professor Grossman has specifically cautioned against in the latter portion of her statement above — is precisely what Express Scripts has proposed to do here. *See also* Grossman Decl. ¶ 15 (explaining that elusion sampling "suffers from severe limitations including bias, lack of statistical soundness, and lack of reliability.").

Express Scripts has stated that its "validation process will include elusion sampling consistent with *Broiler Chicken* as necessary to demonstrate validation of TAR." But what Express Scripts proposes to do is not consistent with *Broiler Chicken* at all. Express Scripts has rejected critical components of the *Broiler Chicken* validation protocol and recall measurement on the grounds that they "are not going to invite Plaintiffs to second-guess responsiveness or QC determination made in the course of our review," which is in no way the purpose of Plaintiffs' proposed validation protocol. *See id.* ¶ 20; *see also* Exhibit C.

While Express Scripts has maintained that it has "specified the precise measure, size, scope, and way they will calculate the elusion-sampled recall" (Exhibit B), that is simply not the case, as Professor Grossman explains. *See* Grossman Decl. ¶¶ 16–22.

Plaintiffs could possibly venture a guess as to what Express Scripts might do. But Plaintiffs should not be left to guess, nor is such secrecy consistent with the "iterative and cooperative" approach adopted by this Court. What is clear, however, is that Express Scripts (i) has failed to describe its approach to validation and (ii) will not agree to the validation protocol that Professor Grossman—the leading TAR scholar—has indicated is the only way to calculate an independent and valid estimate for recall.

Plaintiffs are also not aware of any commitment from Express Scripts for another important aspect of the validation process from *Broiler Chicken*—providing Plaintiffs with the relevant non-privileged documents within the validation set in order to assess not only the volume but quality of the relevant documents that were not identified during validation. *See id.*

5

¶ 21.[3] "Plaintiffs are obviously entitled under the Federal Rules of Civil Procedure to see all non-privileged responsive documents," as Professor Grossman observes; "[b]ut while Express Scripts balks at establishing any pre-set, *quantitative* recall target, they also refuse to provide Plaintiffs with the very *qualitative* information they would need to ensure that unique or significant documents have not eluded production." *Id.*[4]

Finally, Express Scripts has consistently objected to setting any specific recall rate. Express Scripts rejected Plaintiffs' January 24, 2025 proposal of an 80% target recall, with a meet and confer if this recall target was not met. And Express Scripts then objected to Plaintiffs' February 24, 2025 proposal to lower the target recall rate to the even more flexible 70-80% range. *See id.* ¶ 22. While Express Scripts says that it is "not opposed to attempting to achieve a proportionality-informed high percentage recall target," it will only do so if the recall target is unilaterally determined at a time of its own choosing. *See* Express Scripts February 5, 2025 Letter [ECF No. 410], at 10.

Express Scripts' proposed black-box approach remains unacceptable to Plaintiffs, and should be rejected by this Court. Per Professor Grossman, Plaintiffs' compromise offer to lower the "target recall" from 80%, to 70-80% or above, is "a fair and appropriate target for recall when it is calculated on an independent, blind, stratified sample of all documents in the TAR universe and included or excluded from production." Grossman Decl. ¶ 22.

## CONCLUSION

Plaintiffs respectfully request that the Court adopt Plaintiffs' TAR proposal (attached as Exhibit A), which was crafted in consultation with a globally recognized TAR scholar, is eminently reasonable, reliable, sufficiently transparent, and consistent with the approach taken by several federal courts that have addressed similar disputes.

We thank the Court for its continued attention to these matters.

---

[3] While Plaintiffs have always maintained that full transparency in the validation process requires access to the non-privileged, non-responsive documents within the validation sample sets, Plaintiffs have nevertheless compromised their approach by limiting their validation review to documents identified by Express Scripts as *responsive and non-privileged* during validation, absent indication of broader production deficiencies or concerns. *See, e.g.*, *In re Uber Techs, Inc., Passenger Sexual Assault Litig.*, No. 3:23-md-03084, ECF 345 (order adopting plaintiffs' proposal permitting plaintiffs to review *all* non-privileged documents in validation sample).

[4] Professor Grossman expresses surprise at Express Scripts' support for her prior paper with Professor Cormack titled *The eDiscovery Medicine Show*, which Express Scripts relied on approvingly in footnote 4 of its February 5, 2025 submission to the Court [ECF No. 410] for the uncontroversial proposition that recall alone is not the sole indicator of an adequate production. But as Professor Grossman explains, in that paper she also "strongly eschew[s] the use of non-blind validation and the misapplication of statistical methods, both of which Express Scripts wants to do here." Grossman Decl. ¶ 21.

Respectfully submitted,

*s/ Joanne Cicala*       *s/ David R. Buchanan*
Joanne Cicala      David R. Buchanan
*Liaison Counsel for*      *Liaison Counsel for*
*State Attorney General Track*      *Self-Funded Payer Track*

*s/ Matthew Gately*
Matthew Gately
*Liaison Counsel for*
*Class Action Track*

cc:    Counsel of Record (via ECF)

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: INSULIN PRICING LITIGATION | No. 2:23-md-03080<br>MDL No. 3080<br><br>JUDGE BRIAN R. MARTINOTTI<br>JUDGE RUKHSANAH L. SINGH |

**STIPULATION AND ORDER GOVERNING THE USE OF TECHNOLOGY ASSISTED REVIEW**

- 1 -

The following protocol will govern Express Scripts' Use of Technology Assisted Review to search for documents responsive to Plaintiffs' document requests herein.

**I.     TAR Tool**

    **A.**     Express Scripts will use Reveal's Brainspace CCML Predictive Coding Software ("TAR"), which is a continuous active learning model, to identify documents for further review and potential production.

**II.    Documents Subject to TAR**

    **A.**     Express Scripts will apply the search terms attached as Exhibit A to all agreed-upon custodial sources, and all documents that hit on those terms will be subject to TAR pursuant to Brainspace's criteria for identifying records subject to, and excluded from, TAR modeling. For those file formats/document types that Brainspace identifies as not amenable to TAR, reviewing attorneys will review those records without use of TAR.

**III.   Training**

    **A.**     Express Scripts will use attorneys familiar with this litigation to iteratively train a TAR model to identify potentially responsive ESI. All relevance-based coding decisions will be used for training, and Express Scripts will retrain the TAR system on a regular basis.

    **B.**     Express Scripts will use Brainspace's conceptual diversity/diverse active training features and will do so in appropriate intervals throughout the review.

**IV.   Stopping Criterion**

    **A.**     Express Scripts may cease its TAR review when it meets the criteria set forth in the ESI Order entered in *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. 3:23-md-0384, ECF 524, Section 8(a)(3) at pages 8-9. *See also* Grossman Declaration ¶13.

    **B.**     Once this point has been reached, Express Scripts may move onto validation. However, Express Scripts may choose to extend the review past this point at its discretion, should it believe that additional responsive documents may be identified at a proportionate use of resources.

    **C.**     To the extent Express Scripts believes there is good reason to cease the review prior to the presumptive stopping criteria in IV.A, Express Scripts will provide Plaintiffs with the information and basis for its belief, and the Parties will reasonably meet and confer to address Express Scripts' rationale.

**V.    Validation**

    **A.**   Express Scripts will validate their TAR process consistent with the validation process and recall calculation ordered in *In re Broiler Chicken Antitrust Litig.*, 2018 WL 1146371 (N.D. Ill. 2018), including the sampling of the full TAR document universe rather than just elusion sampling from the null set.  *See also* Grossman Declaration ¶ 16.

    **B.**   The recall estimate, along with the full calculation, will be provided to Plaintiffs. At the same time, Express Scripts will provide Plaintiffs with all non-privileged responsive documents from the validation samples, including information concerning the stratum each such document was drawn from.

    **C.**   The Parties will target a reasonable and proportional recall rate between 70-80%, or higher.

    **D.**   Once Plaintiffs have had the opportunity to review the recall calculation and estimate, and the non-privileged responsive documents from the validation samples, the Parties will meet and confer as to whether the recall estimate, and the quantity and nature of the responsive documents identified through the sampling process, indicate that the review is substantially complete.

**VI.   Supplemental Procedures/Changes/Disputes**

    A.   This Stipulation and Order may be changed or supplemented by written agreement of the Parties, or, absent such agreement and following good faith conferral, by subsequent order of the Court, upon a showing of good cause.  Should any disputes arise under this agreement, the Parties will first meet and confer in good faith to resolve the matter prior to seeking court intervention.

**STIPULATED AND AGREED TO BY THE PARTIES.**

[SIGNATURE BLOCKS TO BE INSERTED]

**IT IS SO ORDERED.**

DATED: _____   _____
                                                         RUKHSANAH L. SINGH
                                                         UNITED STATES MAGISTRATE JUDGE

# EXHIBIT B



RE: Insulin Pricing MDL - Meet and confer on Express Scripts discovery responses

| | |
|---|---|
| **From** | Scherr, Jason R. <jr.scherr@morganlewis.com> |
| **Date** | Tue 2/25/2025 2:36 PM |
| **To** | Tal J Lifshitz <tjl@kttlaw.com>; Levy, Lindsey <lindsey.levy@morganlewis.com>; 'Josh Wackerly' <josh@cicalapllc.com>; Harvey, Patrick A. <patrick.harvey@morganlewis.com>; Compton Russian, Meredith Lynn <meredith.compton@morganlewis.com> |
| **Cc** | Joanne Cicala <joanne@cicalapllc.com>; Johan Conrod <johan@cicalapllc.com>; Trey Watkins <Trey.Watkins@formanwatkins.com>; Tanya Ellis <Tanya.Ellis@formanwatkins.com>; Lawrence Deas <Lawrence@listondeas.com>; William Liston III <William@listondeas.com>; Matthew McDonald <MattM@davidnutt.com>; bbogle@levinlaw.com <bbogle@levinlaw.com>; sdaroci@seegerweiss.com <sdaroci@seegerweiss.com>; dbuchanan@seegerweiss.com <dbuchanan@seegerweiss.com>; Benjamin Widlanski <bwidlanski@kttlaw.com>; mpifko@baronbudd.com <mpifko@baronbudd.com>; ssacks@napolilaw.com <ssacks@napolilaw.com>; mdearman@rgrdlaw.com <mdearman@rgrdlaw.com>; probertson@irpinolaw.com <probertson@irpinolaw.com>; myeates@ktmc.com <myeates@ktmc.com>; Erich Schork <erichschork@robertslawfirm.us>; Jon Neumann <jneumann@ktmc.com>; Matthew Gately <MFG@njlawfirm.com>; Kelly Rinehart <kellyrinehart@robertslawfirm.us> |

**CAUTION:** [This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.]

Tal—Thank you for your reply and for consolidating Plaintiffs' TAR points to a form of protocol that you'd like to adopt. We are absolutely jammed tomorrow, but let's plan to meet and confer on TAR Thursday, sometime in the 11-4 window EST. Let us know what works for you.

We believe we understand each of the points in your proposal, and we indeed agree it follows Express Scripts' intended process in almost all regards. That said, Express Scripts does not intend to enter into a stipulated, much less court-ordered, protocol for a review process that we are ultimately responsible for managing. Judge Singh indicated she didn't feel it necessary to enter an Order on TAR protocols either, and at our most recent hearing on TAR protocols she again declined to do so. At that time she counseled Plaintiffs to avoid efforts to micromanage TAR, and she directed the parties to further meet and confer on, and be transparent about, "TAR validation specifically."

We expressed some frustration during our last M&C that we had to repeat, at times literally reading the text of our e-mails on this topic, our disclosure on how ESI plans to validate its TAR process. We reiterate here our disclosed intention to validate our TAR process via the exacting, blinded, recall measures of *Broiler Chicken*'s elusion sampling, and reiterate also that we will, after performing that validation in that manner, transparently disclose in writing the resulting recall percent and precision measures (as calculated by *Broiler Chicken*'s elusion sampling formulas). As we discussed at length on the last M&C, we have consistently stated that we decline Plaintiffs' additional demands also to throw in a reviewer QC validation. Introducing another layer of Plaintiff oversight to the reviewer QC process is not part of TAR validation—which was the issue addressed in our last hearing before Judge Singh. As Judge Francis explained in *In re Diisocyanates*, TAR validation is not reviewer QC validation, and courts don't require the latter. Please let us know if there remain any aspects of our validation process that you still find ambiguous. We are not asking if you agree necessarily with each determination but, rather, if there's some ambiguity to how we plan to proceed or a material failure to disclose.

We have specified the precise measure, size, scope and way we'll calculate elusion-sampled recall as our measure of our TAR process – consistent with the orders Plaintiffs have cited. We also have disclosed

many other aspects of our TAR process, even though they don't bear on recall validation. We recognize Plaintiffs want other steps that we are not planning to take, and also disclosure of reviewer QC validation as well, but we have described why we aren't taking each of those steps.

On that note, and consistent with recurrent and iterative transparency, we further share the answer to the one question we understand remains outstanding: Dave asked for documentation on how the Brainspace software's "conceptual diversity" training – which we've committed to using iteratively through the training process, as plaintiffs have requested – works. We draw your attention to the publicly available documentation on that feature, positively cited by Plaintiffs' own expert in the *In re Valsartan* matter, at https://docs.revealdata.com/brainspace/docs/supervised-learning-guide.
In particular, a search on the page for "diverse" leads you to the specific sections most relevant.

**Jason R. Scherr**
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW | Washington, DC 20004-2541
Direct: +1.202.373.6709 | Main: +1.202.739.3000 | Mobile: +1.202.247.5331 | Fax: +1.202.739.3001
Assistant: Crystal Perkins Moses | +1.202.373.6551 | crystal.moses@morganlewis.com

101 Park Avenue | New York, NY 10178-0060
Direct: +1.212.309.6282 | Main: +1.212.309.6000 | Fax: +1.212.309.6001
jr.scherr@morganlewis.com | www.morganlewis.com



**From:** Tal J Lifshitz <tjl@kttlaw.com>
**Sent:** Monday, February 24, 2025 8:27 PM
**To:** Levy, Lindsey <lindsey.levy@morganlewis.com>; 'Josh Wackerly' <josh@cicalapllc.com>; Harvey, Patrick A. <patrick.harvey@morganlewis.com>; Scherr, Jason R. <jr.scherr@morganlewis.com>; Compton Russian, Meredith Lynn <meredith.compton@morganlewis.com>
**Cc:** Joanne Cicala <joanne@cicalapllc.com>; Johan Conrod <johan@cicalapllc.com>; Trey Watkins <Trey.Watkins@formanwatkins.com>; Tanya Ellis <Tanya.Ellis@formanwatkins.com>; Lawrence Deas <Lawrence@listondeas.com>; William Liston III <William@listondeas.com>; Matthew McDonald <MattM@davidnutt.com>; bbogle@levinlaw.com; sdaroci@seegerweiss.com; dbuchanan@seegerweiss.com; Benjamin Widlanski <bwidlanski@kttlaw.com>; mpifko@baronbudd.com; ssacks@napolilaw.com; mdearman@rgrdlaw.com; probertson@irpinolaw.com; myeates@ktmc.com; Erich Schork <erichschork@robertslawfirm.us>; Jon Neumann <jneumann@ktmc.com>; Matthew Gately <MFG@njlawfirm.com>; Kelly Rinehart <kellyrinehart@robertslawfirm.us>; Mike Roberts <mikeroberts@robertslawfirm.us>; Brandon Sadowsky <bsadowsky@kttlaw.com>; Robert L. Salim <skeeter@salim-beasley.com>; acohen@rgrdlaw.com; Karen Sharp Halbert - Roberts Law Firm, P.A. (karenhalbert@robertslawfirm.us) <karenhalbert@robertslawfirm.us>; Shelbi Flood <shelbi@cicalapllc.com>; John Alden Meade <jam@meadeyoung.com>; Lisa Causey-Streete <lcausey@salim-beasley.com>; Ackerman, Ethan <ethan.ackerman@morganlewis.com>; Ryan McEwan <Ryan.McEwan@doj.ca.gov>; Sarah DeLoach <sarahdeloach@robertslawfirm.us>; dantullis@rgrdlaw.com; ltaylor@rgrdlaw.com
**Subject:** RE: Insulin Pricing MDL - Meet and confer on Express Scripts discovery responses

[EXTERNAL EMAIL]
JR,

Following up on this afternoon's discussion, I've attached Plaintiffs' formalized proposal regarding a stipulated Protocol to govern Express Scripts' use of TAR. Hopefully this will allow the parties to get aligned

# EXHIBIT C

 **Outlook**

## RE: Insulin Pricing MDL - Recap re meet and confer on Express Scripts discovery responses

| | |
|---|---|
| **From** | Scherr, Jason R. <jr.scherr@morganlewis.com> |
| **Date** | Mon 2/17/2025 11:23 AM |
| **To** | Tal J Lifshitz <tjl@kttlaw.com> |
| **Cc** | Levy, Lindsey <lindsey.levy@morganlewis.com>; Harvey, Patrick A. <patrick.harvey@morganlewis.com>; Josh Wackerly <josh@cicalapllc.com>; Compton Russian, Meredith Lynn <meredith.compton@morganlewis.com>; Joanne Cicala <joanne@cicalapllc.com>; Johan Conrod <johan@cicalapllc.com>; Trey Watkins <Trey.Watkins@formanwatkins.com>; Tanya Ellis <Tanya.Ellis@formanwatkins.com>; Lawrence Deas <Lawrence@listondeas.com>; William Liston III <William@listondeas.com>; Matthew McDonald <MattM@davidnutt.com>; bbogle@levinlaw.com <bbogle@levinlaw.com>; sdaroci@seegerweiss.com <sdaroci@seegerweiss.com>; dbuchanan@seegerweiss.com <dbuchanan@seegerweiss.com>; Benjamin Widlanski <bwidlanski@kttlaw.com>; mpifko@baronbudd.com <mpifko@baronbudd.com>; Sarah DeLoach <sarahdeloach@robertslawfirm.us>; ssacks@napolilaw.com <ssacks@napolilaw.com>; mdearman@rgrdlaw.com <mdearman@rgrdlaw.com>; probertson@irpinolaw.com <probertson@irpinolaw.com> |

**CAUTION:** [This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.]

Tal—we have a conflict tomorrow at 4:00 p.m. but we could speak at 2:00 p.m. EST if that works for you. Let us know.

On your TAR commentary, we pretty fundamentally disagree with the characterization that we haven't expanded our offer, or that there remains any material issue on which we haven't met or exceeded the Court's expectations. The focus here is on validation. We are agreeing to disclose not just the fact of validation (to which we previously committed) but also the particular recall measurement on which we rely to conclude that validation is complete. We do not think it is appropriate at the outset to speculate as to what level of recall may be reasonably and proportionately achieved, but our goal is to secure a high recall consistent with TAR's ability to often achieve higher recall than other processes. We are agreeing to share with you the specific percentage achieved and, if you feel you need it to inform your understanding, measured precision as well. That validation process will include elusion sampling consistent with *Broiler Chicken* as necessary to demonstrate validation of TAR, but we are not going to invite Plaintiffs to second-guess responsiveness or QC determinations made in the course of our review. The measurement of recall by a sampling of the elusion set, as detailed in *Broiler Chicken* and elsewhere, is the process Express Scripts intends to follow and on which it will report.

You know already that we have agreed to use Plaintiffs' expanded search terms, that all documents that hit on those terms will be subject to TAR pursuant to Brainspace's criteria, and that documents not amenable to TAR will be manually reviewed. We also told you already that we are using Brainspace's conceptual diversity/diverse active training features, and that we will do so in appropriate intervals throughout the review. The only remaining topic is your request that we commit at the outset to always training the model throughout the entire process using first-pass coding decisions that have not gone through QC, without regard to whether such an approach actually maximizes efficiency and accuracy. We are not willing to do that. We expect that it will be appropriate, particularly initially, to use all relevance-based coding, but whether and when to rely on QC'd input at later stages, if at all, are core work-product decisions that do not relate directly to validating the TAR process.

**Jason R. Scherr**

**Morgan, Lewis & Bockius LLP**

1111 Pennsylvania Avenue, NW | Washington, DC 20004-2541

Direct: +1.202.373.6709 | Main: +1.202.739.3000 | Mobile: +1.202.247.5331 | Fax: +1.202.739.3001