# Morgan Lewis

**Jason R. Scherr**
Partner
+1.202.373.6709
jr.scherr@morganlewis.com

March 5, 2025

**VIA ECF**

The Hon. Rukhsanah L. Singh
United States Magistrate Judge
United States District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Room 2020
Trenton, NJ 08608

Re:    *In re: Insulin Pricing Litigation,* **2:23-md-03080-BRM-RLS (D.N.J.)**

Dear Judge Singh:

Pursuant to the Court's February 10, 2025 directive, Defendants Express Scripts, Inc., Medco Health Solutions, Inc., and Express Scripts Administrators, LLC (collectively, "Express Scripts") submit this reply to Plaintiffs' arguments requiring Express Scripts to search for responsive documents from 44 custodians to respond to Plaintiffs' Master Discovery Requests for Production ("Master Requests") served on Express Scripts in this Master Discovery phase.  ECF No. 439 ("Pl. Ltr.").

The Master Requests "are limited to common issues across each Track."  CMO No. 13 § 1.1. (ECF No. 313). Under the ESI Order, Express Scripts has an obligation to identify custodians "that are the most likely to possess responsive documents and information" for this phase of discovery.  *See* CMO No. 11 § V.  Express Scripts did that by disclosing 25 individuals across multiple divisions of Express Scripts' business.  *See* ECF No. 436.  Plaintiffs' letter fails to show that the Court should require Express Scripts to add custodians beyond what it has already proposed.

Plaintiffs' ancillary requests thrown into their letter fare no better.  Even though they recognize they have not met and conferred with Express Scripts on the topic, Plaintiffs demand that Express Scripts be directed "to promptly identify all custodial data sources." Pl. Ltr. at 16.  And without recognizing Express Scripts' existing disclosures regarding data fields (ECF No. 410-5), Plaintiffs ask the Court to require Express Scripts to disclose "*all* available data fields for any responsive data contained in a database or other Structured Data or aggregated data source." Pl. Ltr at 20 (emphasis added).  To the extent the parties have a ripe dispute about these issues, Plaintiffs have not shown they are entitled to the relief they request.

**VIA ECF**

The Hon. Rukhsanah L. Singh
March 5, 2025
Page 2

### I.   Plaintiffs Have Not Shown Express Scripts' Custodial Proposal is Manifestly Unreasonable.

Courts in this circuit have "placed a noticeably heavy burden on the requesting party to demonstrate that the custodial choices . . . are deficient or lacking." *LifeScan, Inc. v. Smith*, 2023 WL 7089662, at *7–8 (D.N.J. Oct. 11, 2023) (Cavanaugh, Special Master).   This presumption that a responding party's custodial choices are proper derives from the well-established principle that producing parties are "in the best position to determine the method by which they will collect documents." *Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 427 (D.N.J. 2009); *see also The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Document Production*, 19 Sedona Conf. J. 1, 120 (2018) ("[C]ourts have affirmed that a responding party is best situated to determine which procedures, methodologies, and technologies are appropriate for preserving and producing its own ESI . . . .").

Consistent with the heavy burden a party must meet to second-guess a producing party's custodian choices, a party moving to compel before custodial production even begins must show the custodian choices are "manifestly unreasonable." *LifeScan*, 2023 WL 7089662, at *8 (citing *Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017).

In their letter, Plaintiffs identify "five" different areas of business that require Express Scripts to engage in custodial searches during this phase of master discovery: (a) public relations, government affairs, and investor relations; (b) industry/trade; (c) formulary committee; (d) finance department; and (e) national client contract.   For each of these categories, Plaintiffs have failed to show Express Scripts' custodial proposal is manifestly unreasonable.

### A.   Public Relations, Government Affairs, and Investor Relations.

Plaintiffs lump three different departments into a single category.   They are not the same. Public Relations handles Express Scripts' communications to the general public.   Government Affairs personnel monitor legislative changes at the state and federal level and engage in First-Amendment-protected advocacy to legislators and regulators alike.   And Investor Relations focuses exclusively on communications to investors instead of consumers or clients of Express Scripts.

Plaintiffs claim they need 2–3 custodians from each of these departments because they allege Express Scripts made certain misrepresentations. *See* Pl. Ltr. at 6.   But just because Plaintiffs have pleaded certain types of alleged misrepresentations does not mean broad-based custodial searches are necessary or proportional.   Plaintiffs are currently identifying in their Plaintiff Fact Sheets the particular representations forming the basis of their lawsuits. *See* ECF No. 315 at ¶¶ 21–22 (SFP Plaintiff Fact Sheet requiring Plaintiffs to provide tables identifying particular misrepresentation and omissions); ECF No. 349 ¶¶ 32–33 (Same for State AGs).   Discovery into these alleged misrepresentations is better suited for case-specific discovery after Plaintiffs identify those particular misrepresentations through the fact sheet process.

Even if discovery into specific misrepresentations were appropriate during this phase of the litigation, discovery into those alleged misrepresentations should be targeted and focused on the subject matter of the representations made, not the individuals.   As a general matter, individuals in each of the departments Plaintiffs identify make statements informed by the individuals within the organization with relevant subject matter knowledge, *i.e.*, the individuals Express Scripts already has

**VIA ECF**

The Hon. Rukhsanah L. Singh
March 5, 2025
Page 3

identified in its custodian proposal. To the extent communications with Public Relations employees are relevant to the issues in this litigation, those communications will be captured by the terms and custodians Express Scripts already has proposed. Regardless, Express Scripts also has identified as custodians individuals who Plaintiffs allege in their complaints made certain misrepresentations. Plaintiffs offer no basis to believe any particular employee responsible for Public Relations, Investor Relations, or Government Affairs had any role in the particular misrepresentations to warrant broad searches of custodial files. As such, targeted searches specific to the particular misrepresentations at issue is significantly more likely to find relevant information in a proportional manner. *See Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013) (denying motion to compel as to certain custodians because they only engaged in "limited communication [that] is more appropriately the target of a specific discovery request rather than as searchable ESI").

### B.    Industry/Trade Custodians.

Express Scripts proffered at least 11 different custodians who have interacted with and negotiated with the Manufacturer Defendants during the relevant time period:

| Name | Title |
|------|-------|
| Ed Adamcik | Former Chief Pharma Trade Relations Officer; President Ascent Health |
| Amy Bricker | President, PBM (former) |
| Harold Carter | SVP Pharma Trade Relations |
| Shawn Davis | Senior Director, Pharma Strategy & Contracting (former) |
| Tony Grillo | VP Pharma Strategy & Contracting |
| Todd Jeffrey | VP Pharmaceutical Strategy & Contracting |
| Adam Kautzner | President of Express Scripts; VP Supply Chain Product and Strategy (former) |
| Everett Neville | EVP Solutions and Corporate Development of The Cigna Group; EVP Strategy, Supply Chain & Specialty Pharmacy (former) |
| Libby Newport | VP Strategic Initiatives (former) |
| Michael Rothrock | VP Pharma Strategy & Contracting (former) |
| Jason Zilocchi | VP Pharmaceutical Strategy & Solutions (former) |

Plaintiffs have not identified any particular deficiency in this selection of custodians. Instead, they identify four other employees that directly interacted with the Manufacturer Defendants. *See* Pl. Ltr. at 10–11. "But just because a proposed custodian exchanged a large number of emails with a current custodian does not mean that the proposed custodians will have a significant number of

**VIA ECF**

The Hon. Rukhsanah L. Singh
March 5, 2025
Page 4

important, *non-cumulative* information." *Kleen Prods. LLC v. Packaging Corp. of Am.*, 2012 WL 4498465, at *14 (N.D. Ill. Sept. 28, 2012). And Plaintiffs' conclusory assertions that these custodians "carried out unique tasks" fail to "articulate a basis for the court to find that ESI in the possession of the additional custodians would be different from, and not simply duplicative of, information that the responding party has already produced." *Enslin v. Coca-Cola Co.*, 2016 WL 7013508, at *1 n.2 (E.D. Pa. May 13, 2016), *reconsideration denied by* 2016 WL 7042206 (E.D. Pa. June 8, 2016).

### C. Financial Formulary Committees

Although Plaintiffs recognize that Express Scripts utilizes three different formularies, they focus their custodial demand on what they characterize as Express Scripts' "financial formulary committee." Pl. Ltr. at 13. Express Scripts utilizes two committees that focus only on clinical factors—the Pharmacy and Therapeutics Committee ("P&T Committee"), and Therapeutic Assessment Committee ("TAC")—while the Value Assessment Committee ("VAC") considers the value of drugs when clinically appropriate.[1]

Plaintiffs concede that Express Scripts has "offered a number of custodians" that sit on its formulary development committees. Pl. Ltr. at 13. And Plaintiffs concede that Express Scripts has offered a custodian—Danielle Drzewucki—"that created the models that support the [VAC's] formulary decisions." *Id.* Yet, for the first time in their letter brief, Express Scrips learned that Plaintiffs are insisting that they now need 3-4 additional custodians who "worked in the departments that created the financial models" that the VAC utilized when developing formularies.

For starters, Plaintiffs fail to explain why Ms. Drzewucki—who has worked at Express Scripts since 2006—cannot cover this topic in which they have suddenly expressed an interest. Plaintiffs also have failed to show the necessity of custodial discovery into the creation of the financial models the VAC uses. Express Scripts has produced—and indeed publicly discloses—the factors the VAC considers in evaluating the value of drugs: "the net cost, market share, and drug utilization trends of clinically similar medications." White Paper at 2. Express Scripts also has produced native copies of the VAC modeling utilized for the at-issue drugs during the relevant period, as well as the minutes of the VAC meetings where the at-issue drugs were discussed. And Express Scripts has agreed to perform custodial searches of certain members of the VAC. Plaintiffs do not even try to offer an explanation for why additional custodial searches are necessary or proportional here given the document production Express Scripts has either agreed to or already completed in terms of the modeling the VAC used.[2]

---

[1] Express Scripts publishes a white paper describing its formulary development process at https://www.evernorth.com/sites/default/files/2024-04/Formulary%20Development_April%202024.pdf ("White Paper").

[2] Plaintiffs point to *Sandoz, Inc. v. United Therapeutics Corp.* in which a special master ordered a defendant to add a single custodian that had "day-to-day responsibilities for conducting market analysis and tracking competition," which was relevant "to a key aspect of the claims and defenses in [that] case — the relevant product market." 2020 WL 13830525, at *2 (D.N.J. Nov. 16, 2020). Plaintiffs have not shown that the creation of the VAC models—as compared to their application to the at-issue drugs—are a "key aspect" in this case to warrant additional custodians.

**VIA ECF**

The Hon. Rukhsanah L. Singh
March 5, 2025
Page 5

### D.   Finance Department

Express Scripts has disclosed at least four custodians who are most likely to have information regarding Express Scripts' revenue and profits. *See* ECF No. 436 Ex. A. Plaintiffs nonetheless accuse Express Scripts of failing to "offer sufficient witnesses" on this topic without any explanation as to why, and also demands Express Scripts to add *another* 3-4 finance custodians for unknown reasons. Such conclusory argument plainly fails to show that Express Scripts' original proposal is "manifestly unreasonable." *LifeScan*, 2023 WL 7089662, at *8.

### E.   National Client Contracting Custodians

Even in their referenced Valentine's Day proposal demanding that Express Scripts search the files of 44 different custodians, Plaintiffs did not include a custodian related to Express Scripts' contracting with its clients. And Plaintiffs have never otherwise demanded that Express Scripts include such a custodian. Thus, Express Scripts is surprised to see this demand for the first time in their letter briefing, and any dispute on the topic is not ripe.

Regardless, client contracting is an issue for case-specific discovery rather than master discovery. Thousands of clients have chosen to hire Express Scripts to provide PBM services. Some of those clients are plaintiffs in this litigation. Rather than arbitrarily picking a custodian at this stage, the parties can identify custodians most likely to have relevant information about particular plaintiffs during case-specific discovery.

## II.   No Ripe Dispute Exists Regarding Custodial Data Sources Other Than Email.

Plaintiffs concede that they are "at different stages" in negotiating custodial sources with the different PBM Defendants. Pl. Ltr. at 15. And Plaintiffs do not claim that they have raised with Express Scripts the issue of searching sources other than email at all. The dispute is not ripe, and the Court should deny Plaintiffs' request to direct Express Scripts "to promptly identify all custodial data sources likely to contain responsive information, in accordance with the Court's ESI Order." Pl. Ltr. at 16.

But to be clear, Express Scripts has complied with this Court's ESI Order. In light of the 90-day substantial completion deadline, and in accordance with the ESI Order, Express Scripts disclosed that the identified custodians' emails were the sources "most likely" to have responsive information. *See* ECF No. 400 (Ex. C.). The custodians' emails remain the source "most likely" to have information responsive to the Master Requests, and collecting and producing emails from those custodians remains Express Scripts' priority.

Nevertheless, consistent with the "iterative" approach required by the ESI Order, Express Scripts has begun investigating if sources other than email are also likely to have responsive information, and also analyzing the potential burden associated with searching those sources. Express Scripts will disclose if it contends additional sources should (or should not) be searched, and will meet and confer with Plaintiffs if any disputes exist on the topic. But no such dispute on this issue is currently ripe.

**VIA ECF**

The Hon. Rukhsanah L. Singh
March 5, 2025
Page 6

### III.    Plaintiffs' Request for All Data Fields Seeks Plainly Irrelevant Information.

On January 21, Express Scripts made a substantial disclosure regarding the data fields it intended to search to find responsive data relevant to this litigation. ECF No. 410-5. The disclosure identified the relevant data fields, disclosed data fields Express Scripts did not maintain, and explained Express Scripts' objections to certain data requests. *See id.* Plaintiffs never responded to that proposal.

Nonetheless, Plaintiffs claim they need—and are entitled to—"a comprehensive list of the *available* data fields." Pl. Ltr. at 20 (emphasis added). Express Scripts maintains over a thousand data fields for each claim submitted when a member fills a prescription. The vast majority of those fields will not be relevant to any party's claims or defenses. Such irrelevant information is beyond the scope of discovery. *See* Fed. R. Civ. P. 26(b)(1).

Of course, Express Scripts does not expect Plaintiffs to identify the particular data fields Express Scripts maintains because such information is exclusively in Express Scripts' possession, custody, or control. But to the extent Plaintiffs believe Express Scripts' comprehensive proposal for the production of claims data excludes categories of information they claim are relevant to this action, they can identify those categories. Express Scripts can then disclose whether it agrees that the information is relevant and non-objectionable, and whether Express Scripts maintains data fields that would include that information. Such an exchange would enable the parties to have the "exchange of information" about production of data required by the ESI Order. ESI Order § VIII. But a fishing expedition into the data fields Express Scripts maintains without regard to Plaintiffs' allegations in this case is an unproductive non-starter seeking plainly irrelevant information.

### IV.    CONCLUSION

For these particular PBM Defendants during this phase of discovery, Express Scripts has already identified 25 custodians relevant to the key issues applicable to all tracks. Plaintiffs have already indicated an intent to seek additional custodial discovery from other Defendants associated with Express Scripts, including mail-order pharmacies, a group purchasing organization, and parent companies. And as discussed above, Express Scripts expects Plaintiffs to demand additional custodial searches during case-specific discovery.

Despite this offer, Plaintiffs insist that Express Scripts, and all PBMs, must search 45 custodians during this phase of discovery for these Defendants on top of any future custodial demands they may make. Plaintiffs do not pretend this number is anything but arbitrary. But the Rules do not require a party to meet Plaintiffs' expectations for what they think is an appropriate number of custodians just because the case is significant. Instead, the Rules "require only a reasonable search for responsive information pursuant to a 'reasonably comprehensive search strategy.'" *Enslin v. Coca-Cola Co.*, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) (quoting *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006). Express Scripts has proposed such a reasonable search, and Plaintiffs has failed to provide any basis to doubt the search is reasonable.

Similarly, Plaintiffs have failed to meet their burden to show that they are entitled to a list of all data fields irrespective of whether they have any meaningful relationship to the claims or defenses in this case, or that the parties have a ripe dispute about custodial sources other than emails. Accordingly, the Court should deny requests for relief relating to Express Scripts in their entirety.

**VIA ECF**

The Hon. Rukhsanah L. Singh
March 5, 2025
Page 7


Respectfully submitted,

/s/ Jason R. Scherr

Jason R. Scherr


cc:     Honorable Brian R. Martinotti, U.S.D.J.
        All Counsel of Record