## MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

KEVIN H. MARINO
JOHN D. TORTORELLA
JOHN A. BOYLE
_____
ROSEANN BASSLER DAL PRA*
EREZ J. DAVY*
ANTHONY J. TAGLIAFERRO
MICHAEL J. FLYNN

437 SOUTHERN BOULEVARD
CHATHAM, NEW JERSEY 07928-1488
TELEPHONE (973) 824-9300
FAX (973) 824-8425
www.khmarino.com

875 THIRD AVENUE, 21ST FLOOR
NEW YORK, NEW YORK 10022
TELEPHONE (212) 307-3700
FAX (212) 542-3790
e-mail: jtortorella@khmarino.com
*OF COUNSEL

March 5, 2025

**VIA ECF**

Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State St.
Trenton, NJ 08608

    Re:  *In re: Insulin Pricing Litigation,* No. 2:23-md-03080-BRM-RLS
           MDL No. 3080 | Custodian & Search Term Proposal

Dear Judge Singh:

      We write on behalf of Defendants Caremark Rx, LLC, Caremark LLC, and Caremark PCS Health, LLC (collectively, "CVS Caremark") in response to Plaintiffs' Letter regarding Custodian and Search Term Disputes Involving PBM Defendants ("Ltr."). ECF No. 439.

      Plaintiffs fail to justify their request for additional, cumulative discovery, and ignore the massive burden their requested discovery would impose on CVS Caremark.  Indeed, as Plaintiffs knew before they submitted their Letter, CVS Caremark had already agreed to produce responsive documents from twenty-one (21) custodians and apply an exceedingly broad set of search terms, which would yield ***more than one million*** documents for review across just 15 of those custodians.  Rather than acknowledge these facts and attempt to find a workable solution for targeted additional discovery, Plaintiffs demand still more custodians and broader search terms.  But Plaintiffs cannot have it both ways, lest this action be in document discovery for years.  Plaintiffs' demands are unreasonable and should be denied.

      **Custodians**

      After engaging in lengthy negotiations with Plaintiffs, CVS Caremark proposed 21 custodians covering a wide range of business activities purportedly relevant to Plaintiffs' claims.  *See* CVS 2/28/25 Ltr. ("CVS Ltr."), ECF No. 437.  These custodians, however, are not the end of custodial discovery.  CVS Caremark also agreed to provide additional custodians relevant to its federal preemption defense.  *Id.* at 2 n.1.  And CVS Caremark's counsel had already agreed to produce from additional custodians of one of CVS Caremark's affiliates, Zinc Health Services, LLC.  *Id.*

      Nevertheless, despite significant concessions from CVS Caremark, Plaintiffs now seek documents from forty-five (45) custodians (not including Plaintiffs' custodial requests for other CVS Caremark affiliates or client/plaintiff-focused discovery contemplated in CMO 13).  That

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Rukhsanah L. Singh, U.S.M.J.
March 5, 2025 – Page 2

abstract number—divorced from specific custodians or other demands—is amiss for several reasons. First, Plaintiffs never raised a specific number of custodians they believed was proper in negotiations with CVS Caremark. And Plaintiffs proposed *fewer* than 45 custodians about eight hours before filing their Letter. *See* Ex. 1 (Plaintiffs' Feb. 28, 2025 Custodian Proposal). Second, Plaintiffs' argument that 45 custodians are necessary is contradicted by their agreements with the Manufacturer Defendants to approximately 30 custodians each.[1] Plaintiffs' free-floating approach to seeking a *number* of custodians, rather than specific custodians themselves, is not productive, particularly given such a number of custodians would yield millions upon millions of documents for review.

What's more, Plaintiffs' request for a high, abstract number of custodians is divorced from the analysis of burden that is the touchstone of determining proportionality. As explained in CVS Caremark's February 28 Letter (and as CVS Caremark informed Plaintiffs nearly two weeks ago), for just 15 of the proposed custodians, the search terms CVS Caremark has already agreed to hit on **more than one million** documents. Nevertheless, Plaintiffs demand that CVS Caremark more than double their number of custodians, while also seeking an expansion of the already broad and burdensome terms, which substantially increases CVS Caremark's burden, to substantially more than 3.3 million documents. While Plaintiffs brief these as separate, distinct issues, they are necessarily intertwined. When already faced with 21-plus custodians, expansive terms, and 1-million plus documents to review, the answer cannot be 24 more custodians and wildly more expansive search terms/strings.

Plaintiffs' demands are also at odds with the law. When "[a]sking a court to compel a party to search the ESI of additional custodians . . . the requesting party is second-guessing the responding party's representation that it conducted a reasonable inquiry for responsive information, and . . . the burden appropriately lies with the requesting party to show that the responding party's search was inadequate." *Enslin v. Coca-Cola Co.,* 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016). Moreover, "the fact that a person may have had some connection to the events in question does not automatically mean that such a person must be included as an ESI custodian." *Id.* Rather, "the requesting party 'must demonstrate that the additional requested custodians would provide unique relevant information not already obtained.'" *Id.* (quoting *Fort Worth Emps. Ret. Fund v. J.P Morgan Chase & Co.*, 297 F.R.D. 99, 107-08 (S.D.N.Y. 2013)); *see also Wang v. Univ. of Pittsburgh*, 2023 WL 5944114, at *4 (W.D. Penn. May 22, 2023) (denying a request for additional custodians because plaintiffs' "hunch" that additional custodians "*may* have additional responsive documents . . . is speculative at best.").

Plaintiffs resort to discussing certain "categories" of custodians, and purport to seek an arbitrary number of unnamed custodians in most of these categories. That approach was never discussed with CVS Caremark during the conferrals. In any event, Plaintiffs' demands are

---

[1] CVS Caremark further notes that while Plaintiffs seek discovery from other CVS-affiliated entities, they do not seek additional discovery from any other Manufacturer-affiliated entities.

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Rukhsanah L. Singh, U.S.M.J.
March 5, 2025 – Page 3

duplicative, cumulative, and not proportional to the needs of the litigation, particularly given the concessions CVS Caremark has already made.

*Trade Relations.* Plaintiffs incorrectly state that CVS Caremark has "refused to provide any more than the bare minimum." Ltr. at 1. In reality, CVS Caremark has agreed to review and produce responsive documents ***from fifteen (15) custodians from Trade Relations alone***. Included within CVS's proposal are the employees responsible for insulin drugs who would have contact with the Manufacturer Defendants (referred to as "Insulin Category Captains"). Beyond that, CVS Caremark also included the primary negotiator with each of the Manufacturer Defendants across the entire relevant time period—roles which occasionally, but not always, overlap with the Category Captain role. CVS Caremark further included other custodians who were involved in Medicare negotiations, to ensure fulsome coverage. And to address Plaintiffs' purported concerns, CVS Caremark included even more custodians, including Gary Loeber, Jason Hartzell, and Joseph Stahl.

In the spirit of compromise, if it will completely resolve the custodian issue for Trade Relations, CVS Caremark will further agree to add the *sole* CVS Caremark employee Plaintiffs name and discuss in their Letter: Matthew Leonard. Plaintiffs' request for one or two additional, but unspecified, custodians in this area is not proportional to the needs of the case, and should be rejected.

*Formulary Review Committee (FRC) Custodians.* CVS Caremark has agreed to produce responsive from **seven (7) custodians related to the FRC**. As CVS Caremark noted in its February 28 Letter, it had already agreed to provide **six (6)** custodians who were members of the FRC. Having secured those custodians, Plaintiffs pivoted, and raised for the first time during a February 21 meet and confer that this was insufficient, and Plaintiffs instead sought additional custodians who worked on modeling for this Committee. To try to compromise, CVS Caremark agreed to add a seventh custodian, Shivam Patel. Mr. Patel was a Finance Manager and Senior Analyst, who falls squarely within the financial modelling scope Plaintiffs requested. But Plaintiffs rejected this compromise, and instead now purport to seek "an additional 3-4 custodians" that worked with modeling for the FRC. Plaintiffs have not explained why they need more. Plaintiffs' request for three to four more unnamed, cumulative custodians related to the FRC should be rejected.

Nor is the case Plaintiffs cite to, *Sandoz Inc. v. United Therapeutics Corp.*, 2020 WL 13803525, at *2 (D.N.J. Nov. 16, 2020), on point. There, the court ordered the addition of a *single* custodian who worked with "underlying data or market information," where no other such custodian had been added. Here, CVS Caremark has already agreed to include Mr. Patel to assuage Plaintiffs' concern about modeling. Accordingly, the *Sandoz* case *supports* CVS Caremark's position.

*Finance Department Custodians.* CVS Caremark has already agreed to provide ***two (2) custodians who fall within the definition of "Finance" custodians***. As discussed above,

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Rukhsanah L. Singh, U.S.M.J.
March 5, 2025 – Page 4

CVS Caremark has already agreed to add Mr. Patel. Ltr. at 14. Beyond him, CVS Caremark has further added Rob Versosky, an Executive Director of Trade FP&A, who is likely to have information relevant to manufacture payment invoicing. But although Plaintiffs only recently raised the concept of a "Finance Department" custodian, they now ask that CVS Caremark be ordered to "identify at least 3-4 [more unspecified] finance custodians."

To try to reach a compromise, *if* Plaintiffs will agree to drop their novel and vague request for 3-4 more "finance" custodians, CVS Caremark will voluntarily agree to add James Dixon, a former Executive Director of Rebate Finance, who worked at CVS Caremark during the entire relevant time period.

*Client-Facing Custodians.* Throughout virtually the entire negotiation, Plaintiffs viewed any "client-facing" custodians as outside the scope of Master Discovery, given that separate pooled discovery for specific Plaintiffs (many of who are CVS's clients) is contemplated by CMO 13. *See* CMO 13 at 4. Plaintiffs even disclaimed seeking "client-facing" custodians on at least two instances. *See* J. Wackerly 12/31/24 email, Ex. 2 at 24-25 (noting Plaintiffs' request did not include "client-facing employees"); S. Daroci 1/16/25 email, Ex. 2 at 21 (noting Plaintiffs were not seeking "client-facing custodians"). On February 21—a week before filing their Letter, and after receiving significant concessions from CVS Caremark on other custodians—Plaintiffs made an about-face, instead insisting that client-facing custodians (if sufficiently senior at the company), *are* appropriate for Master Discovery. Plaintiffs have failed to articulate any basis for this sudden reversal. As contemplated by CMO 13, Plaintiffs may receive certain proportional client-facing custodians and discovery upon the commencement of case-specific discovery. But there is no reason to accelerate that process, particularly after explicitly forgoing these custodians in negotiations for months.

*Public Relations, Government Affairs, and Investor Relations Custodians.* Plaintiffs first raised with CVS Caremark the concept of adding custodians from two of these categories ("public relations" or "government affairs") on February 7. Before submitting their Letter, however, Plaintiffs had never once raised the prospect of adding custodians from "investor relations."[2] When asked about the relevance of "public relations" or "government affairs" custodians, Plaintiffs simply directed CVS Caremark to their complaints. But Plaintiffs' complaints do not support the addition of these custodians.

With respect to "government affairs," across the 33 paragraphs of their complaint that Plaintiffs reference in their letter, they cite to only *one single* piece of specific testimony in the relevant time period from a CVS Caremark representative to Congress, in which that (unnamed) representative stated CVS Caremark had taken steps to address the impact of insulin prices. *See*

---

[2] Plaintiffs' most recent proposal to CVS Caremark included placeholders for "Public relations custodians" and "Government affairs custodians," Ex. 1 at 3, but not "Investor Relations." For this reason alone, a request for this category of custodian should be denied.

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Rukhsanah L. Singh, U.S.M.J.
March 5, 2025 – Page 5

Texas Compl. ¶ 486(h). Apparently based solely on that statement, Plaintiffs seek "2-3 custodians" for "government affairs" across twelve years. Moreover, employees who work in Government Affairs—particularly those who are involved in testimony before Congress—are often lawyers themselves or work closely with lawyers. As such, adding "government affairs" custodians threatens a colossal privilege burden. Such a fishing expedition—particularly based on such a flimsy basis and with so much attendant burden—is not proportional to the needs of the case.

Plaintiffs' arguments for "public relations" custodians are likewise unavailing. Many of the supposed "misrepresentations" Plaintiffs point to in their complaints are either (1) outside of the relevant time period, (2) client-facing, and therefore not properly the subject of Master Discovery, (3) bland representations from CVS Caremark's website, or (4) entirely non-specific. For example, one of the only CVS Caremark-specific statements Plaintiffs reference is a CVS Caremark executive stating that PBMs do not cause prices to rise. *See* Texas Compl. ¶ 493(b). Indeed, it is unclear precisely *what* discovery Plaintiff are seeking or expecting CVS Caremark to produce related to such broad statements. Plaintiffs' request for "public relations" custodians they expect to have participated in drafting such broad and general statements is particularly superfluous given that CVS Caremark has already provided over 20 custodians across a range of business areas central to Plaintiffs' claims.[3]

Plaintiffs' reliance on cases such as *City of Sterling Heights Gen. Employee's Retirement Sys.*, 2015 WL 5055241 (D.N.J. Aug. 21, 2015), *In re Facebook*, 2021 WL 10282213 (N.D. Cal. Nov. 14, 2021), and *Nat'l Lab. Rels. Bd. v. 710 Long Ridge Road Operating Co.*, 2020 WL 3026523 (D.N.J. June 5, 2020), is misplaced. Plaintiffs' seem to rely on these cases to suggest that because the subject matter or scope of a litigation are significant, Plaintiffs are automatically entitled to additional custodians they seek. That is not the law. Nor is the scope of the litigation the only factor these Courts considered; they also considered the burden associated with adding custodians and whether custodians will include duplicative documents. *See Sterling Heights*, 2015 WL 5055241 at *3. Finally, most of these cases presented unique situations not present here, where Plaintiffs seek to add *six* unspecified custodians, significantly increasing the review burden on CVS Caremark. *See In re Facebook,* 2021 WL 1082213 (determining whether to add two

---

[3] Plaintiffs' citation to certain documents CVS Caremark has already produced only illustrates that additional "public relations" related custodians are unnecessary. Both documents cited were produced because they included one of the first custodians that CVS Caremark proposed, Gary Loeber. They also both include Matthew Leonard, a potential custodian discussed above.

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Rukhsanah L. Singh, U.S.M.J.
March 5, 2025 – Page 6

additional high-ranking custodians); *Nat'l Lab. Rels. Bd.*, 2020 WL 3026523 (determining whether to add one additional custodian to the existing two).

### Search Terms

*Plaintiffs' Proposed Terms are Overly Burdensome.* Plaintiffs do not even straightforwardly argue that their terms are *not* overly burdensome, but instead fault CVS Caremark for failing to explain its burden with a hit report that meets certain plaintiff-selected criteria. Ltr. at 16-19. But Plaintiffs concede that CVS Caremark did provide aggregate hits, telling them point blank that their terms would require attorney review of more than 3 million documents. Ltr. at 17. More importantly, Plaintiffs *never requested hit counts* from CVS Caremark until less than half an hour from close of business on February 28—less than eight hours before filing their Letter**.** *See* Ex. 2 at 2.[4] Once Plaintiffs requested these hit counts, CVS Caremark provided them the following business day. *See id.* at 1.

And these hit counts confirm CVS Caremark's point. Even Plaintiffs' revised terms hit on millions of documents. *See* Ex. 2 at 1. For just **fifteen (15) custodians**, Plaintiffs' proposed terms hit on 3,334,995 documents, with families. Assuming proportions remain constant across the additional six (6) custodians CVS has *already* agreed to add, that would result in 5,558,325 documents for review, if Plaintiffs' proposed terms were adopted. And at rate of 45 custodians that Plaintiffs have agreed to add, these terms would be likely to result in 10,004,985 documents for review. Plaintiffs' proposal should be rejected.

*Plaintiffs' Proposed Terms are Exceedingly Overbroad.* Plaintiffs' claim that their search terms are "reasonable and narrowly tailored" is absurd. We know because we have tested those terms. Indeed, as noted above, Plaintiffs' proposed terms yield **well over three (3) million documents** for only 15 custodians, not the 21 custodians that CVS Caremark has proposed here. Based on this data point alone, Plaintiffs' proposal on search terms should not be accepted.

CVS Caremark's proposed search terms are more than sufficient for the needs of this action. As described in CVS Caremark's February 28 Letter, CVS Caremark has already agreed to run the names of **every relevant insulin and GLP-1 drug identified by Plaintiffs in their Requests for Production**. CVS Ltr. at 2, 6. That concession alone will result in significant burden. And CVS Caremark further agreed to most of Plaintiffs' other requests for terms (dozens in total) tied to broad diabetes medication-related terms such as "Insulin*", or "GLP*", as long as they had reasonable connectors.

But despite these concessions, Plaintiffs continue to insist on broad terms with connectors as large as "/50" and "/60", resulting is substantial additional burden. And, for the first time on February 19 (after having received significant concessions on earlier-proposed terms), Plaintiffs

---

[4] Notably, the ESI protocol requires the exchange of hit count reports only "when requested." CMO 11 at 8.

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Rukhsanah L. Singh, U.S.M.J.
March 5, 2025 – Page 7

proposed *new* search terms that are completely untethered to the diabetes medications at issue, such as "Lilly" /35 "contract*" or "cost*. Given that CVS Caremark has already agreed to produce documents hitting on the drug names, as well as other broad insulin-related terms, these novel strings seem designed *specifically* to get at documents for *other* products. Other search strings proposed by Plaintiffs are similarly designed to get at broad aspects of CVS Caremark's PBM business that do *not* involve insulin drugs. For example, Plaintiffs propose one string with terms like pric* /50 payor*.[5] This string alone returned over 2.7 million documents with families (and 911,495 unique documents) for review. This eleventh-hour fishing expedition should not be permitted.

### Custodial Sources

The sources being searched for each custodian is a non-issue. CVS Caremark has already agreed to identify the sources it will search for each custodian. *See* Ltr. at 16. And, as CVS has already explained to Plaintiffs, the sources it plans to search and disclose are the "custodian data sources . . . that are likely to contain responsive documents and ESI." Indeed, it is the effort of ensuring that the sources CVS Caremark plans to disclose are those likely to contain responsive documents that has taken time to run down. CVS Caremark, however, is on track to begin rolling disclosures of these sources for the agreed custodians the week of March 10.

### Data

More than one month ago, CVS Caremark proposed data fields for production that are responsive to Plaintiffs' document requests, including claims data and data related to rebates from the Manufacturer Defendants. Ltr. at 19. As Plaintiffs concede, CVS Caremark's proposal included 67 fields for claims data, and 13-17 fields for Manufacturer Rebate data (depending on the year). Ltr. at 19. This robust data proposal included extensive fields on the fees and costs associated with each claim, as well as granular data on rebates. But rather than engage about what more it wants, Plaintiffs have taken the remarkable position that unless CVS Caremark provides a list of *every single available data field* in their various systems, Plaintiffs would refuse to discuss the production of data. Plaintiffs claimed their position was rooted in the ESI protocol. But the ESI protocol does not require a producing party to provide every possible data field that exists in its many systems; to the contrary, it only requires that the parties "reasonably cooperate in the exchange of information concerning such database to facilitate discussions on productions and production format, including available data fields/objects and schema." CMO 11 [ECF No. 208] at 19. That is exactly what CVS Caremark has attempted to do here. As Plaintiffs candidly

---

[5] The full string reads: (list* OR pric* OR AWP OR WAC OR cost* OR rebat* OR REB OR discount* OR incentiv* OR fee* OR net* OR Rate* OR Credit* OR Grant* OR Concession OR Inflat* OR Payment* OR Zinc OR GPO* OR aggregator*) W/50 (audit* OR "health plan*" OR sponsor* OR client* OR payer* OR payor* OR bid* OR proposal* OR RFP OR Qvidian). *See* Ltr., Ex. 2 at 3.

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Rukhsanah L. Singh, U.S.M.J.
March 5, 2025 – Page 8

acknowledge, CVS Caremark agreed to reasonably cooperate regarding available data fields that are responsive to Plaintiffs' requests, Ltr. at 20, including by answering whether certain fields exist or do not within CVS Caremark's systems. Plaintiffs, however, have staunchly refused to "reasonably cooperate" to "facilitate discussions" regarding "available data fields" as required by the Court's ESI protocol.

Plaintiffs' view that the only form of "reasonable cooperation" they will accept is the disclosure of every single data field in CVS Caremark's systems is all the more stunning given the burden associated with that demand. As CVS Caremark has already explained to Plaintiffs, the claims data system alone is extraordinarily complex. The system is a "relational database" comprised of many tables, some of which contain thousands of fields, which are interlinked with each other. In total, there are thousands upon thousands of fields in this database. And, contrary to Plaintiffs' (entirely unsupported) "understanding" that "these fields can typically be extracted relatively quickly using Database Management System tools," Ltr. at 19 n.19, it is not a simple process to provide a list of total fields given the nature of the systems. Rather, because these "relational" tables are linked together, it would take CVS Caremark's team weeks to pull together such a list. And the list of fields would certainly contain thousands of fields that have no relation to this litigation whatsoever. Accordingly, the process Plaintiffs demand is in no way proportional to the needs of the case, particularly when the parties could confer on fields Plaintiffs seek in less burdensome ways. But that has not deterred Plaintiffs from seeking this discovery-on-discovery nonetheless.

The cases Plaintiff cites are inapposite. In *Alexrod v. Lenovo (United States) Inc.*, 2024 WL 2963787 (N.D. Cal. June 11, 2024), the defendants had *already provided* Plaintiffs a large amount of data in raw form. The plaintiffs objected, seeking better organized information focused on pricing and sales data. That would be similar to CVS Caremark's proposal to provide the relevant and proportional fields at issue here from among the thousands that are theoretically available, in an effort to limit burden on Plaintiffs—something CVS Caremark has already done. Nor is *Fausz v. NPAS, Inc.*, 2017 WL 11483897 (W.D. Ken. Jan. 13, 2017), on point. In that case, the court criticized a defendant for refusing to provide less than 1200 data fields until after the close of discovery. *Id.* at *11. That is a world apart from the facts here, which deal with thousands of fields in a relational database, and the parties are at the advent of discovery.

CVS Caremark respectfully requests that the Court deny Plaintiffs request that CVS Caremark disclose the thousands of fields in its non-custodial data sources, and instead order Plaintiffs to comply with the ESI protocol and "*reasonably* cooperate" to "facilitate discussions" regarding "available data fields."

**MARINO, TORTORELLA & BOYLE, P.C.**
ATTORNEYS AT LAW

Honorable Rukhsanah L. Singh, U.S.M.J.
March 5, 2025 – Page 9

We thank the Court for its continuing attention to this matter.

                                            Respectfully submitted,

                                            */s John D. Tortorella*
                                            John D. Tortorella
                                            *Counsel for Defendants Caremark Rx, LLC, Caremark LLC, and Caremark PCS Health, LLC*

                                            */s Nicholas C. Suellentrop*
                                            Nicholas C. Suellentrop
                                            Williams & Connolly LLP
                                            *Counsel for Defendants Caremark Rx, LLC, Caremark LLC, and Caremark PCS Health, LLC*

cc:    Honorable Brian R. Martinotti, U.S.D.J.
        All Counsel of Record