**SEEGERWEISS** LLP

NEW YORK • NEW JERSEY • PHILADELPHIA • NEWTON, MA

March 5, 2025

**VIA ECF**

Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

> Re:    *In re: Insulin Pricing Litigation*, MDL No. 3080
> Case No. 2:23-md-03080-BRM-RLS
> Plaintiffs' Response to Express Scripts' Submission on TAR and Custodians

Dear Judge Singh:

We write on behalf of Plaintiffs in response to the February 28, 2025 submission by Express Scripts regarding TAR implementation and custodians [ECF No. 436]. Express Scripts' submission devotes a single substantive paragraph to each issue, such that Plaintiffs largely rest on their submission of the same date [ECF No. 440], which sets forth Plaintiffs' positions on these two disputed issues. Plaintiffs nevertheless submit this response to clarify some of the representations and characterizations made in Express Scripts' letter.

**TAR Implementation**

Express Scripts' lone paragraph regarding TAR reveals the depths of the parties' disagreements on this dispute—both with respect to the level of Express Scripts' transparency to date (which has been virtually non-existent) and the substance of Express Scripts' continued "black-box" approach to any discussion regarding TAR.

What Express Scripts characterizes in its letter as Plaintiffs' "newfound openness to compromise" is simply Plaintiffs' maintenance of their repeated requests for Express Scripts to engage in a meaningful conferral process. Express Scripts has steadfastly refused to do so.

On Monday, March 3, 2025, Express Scripts finally shared a "counterproposal," after having received Plaintiffs' proposal on January 24, 2025. *See* Ex. 1. This counterproposal is unacceptable. Express Scripts does not agree to train the TAR tool in the way it is meant to be trained, nor does Express Scripts disclose how it will be trained. Express Scripts also fails to disclose the criteria it will use to determine when the TAR review process may stop and validation should be undertaken. And the only purported concession Express Scripts makes is agreeing to a target recall rate of just 70%—the minimum acceptable level. Worse, this targeted recall rate will not be calculated in a reliable manner and is likely to be overinflated for the reasons set forth in Dr. Grossman's prior declaration. *See* Supplemental Declaration of Maura R.

Grossman, J.D., Ph.D ¶¶ 15-16 [ECF No. 440-1]. Express Scripts does not even agree to disclose the *relevant* documents in its validation set, to which Plaintiffs are obviously entitled, so that the quality—not just the quantity—of the relevant documents that have not been identified by its TAR review can be considered in evaluating the reasonableness of that review.

Express Scripts' proposal is designed to insulate itself from any challenge to the sufficiency of its production, solely based upon a recall rate derived from a faulty validation process that follows a "black-box" TAR review for which Express Scripts has provided no confidence in implementation. Plaintiffs cannot agree to such opacity. Express Scripts' eleventh-hour counterproposal does nothing but confirm that the parties have reached an impasse on these discussions and require the Court's intervention.

**Custodians**

Express Scripts takes the position that, because it identified 25 individuals in its interrogatory responses, and because it has declared that these individuals are "most likely" to possess responsive documents and information, this is the end of the inquiry. Plaintiffs disagree for the reasons detailed in their February 28, 2025 submission [ECF No. 440]. And to the extent that Express Scripts has referenced an "acknowledgement" that discussions on custodians should follow Express Scripts' interrogatory responses, that is, of course, a natural *starting point* for any custodial conferral. But Express Scripts' refusal to move beyond that first phase of the conversation, particularly in the face of the dozens of additional employees Plaintiffs have identified as likely to possess responsive documents and information, demonstrates the level of intransigence Plaintiffs have continued to deal with from this particular Defendant.

*       *       *

We thank the Court for its continued attention to these matters.

Respectfully submitted,

s/ *Joanne Cicala*                          s/ *David R. Buchanan*
Joanne Cicala                               David R. Buchanan

*Liaison Counsel for*                       *Liaison Counsel for*
*State Attorney General Track*              *Self-Funded Payer Track*


s/ *Matthew Gately*
Matthew Gately

*Liaison Counsel for*
*Class Action Track*


cc:    Counsel of Record (*via* ECF)

# EXHIBIT  1

---

| | |
|---|---|
| **Subject:** | RE: Insulin Pricing MDL - Meet and confer on Express Scripts discovery responses |
| **Date:** | Monday, March 3, 2025 at 8:57:48 PM Eastern Standard Time |
| **From:** | Ackerman, Ethan |
| **To:** | Tal J Lifshitz, Levy, Lindsey, 'Josh Wackerly', Harvey, Patrick A., Scherr, Jason R., Compton Russian, Meredith Lynn |
| **CC:** | Joanne Cicala, Johan Conrod, Trey Watkins, Tanya Ellis, Lawrence Deas, William Liston III, Matthew McDonald, bbogle@levinlaw.com, Steven Daroci, David Buchanan, Benjamin Widlanski, mpifko@baronbudd.com, Shayna, mdearman@rgrdlaw.com, probertson@irpinolaw.com, myeates@ktmc.com, Erich Schork, Jon Neumann, Matthew Gately, Kelly Rinehart, Mike Roberts, Brandon Sadowsky, Robert L. Salim, acohen@rgrdlaw.com, Karen Sharp Halbert - Roberts Law Firm, P.A. (karenhalbert@robertslawfirm.us), Shelbi Flood, John Alden Meade, Lisa Causey-Streete, Ryan McEwan, Sarah DeLoach, dantullis@rgrdlaw.com, ltaylor@rgrdlaw.com |
| **Attachments:** | image001.png, image002.jpg, image003.png, image004.jpg, image005.png |

Dear Tal,
Greetings.

As discussed on our 2-27 call, we appreciate Plaintiffs' openness to securing agreement on Express Scripts process of TAR validation, and reiterate our commitment to transparent disclosure of our TAR validation process.   We appreciate too, Plaintiffs' acceptance of some of those earlier disclosures.
It is in that same spirit that we provide this revision.  It is styled to track Plaintiffs' 2-24 proposed Order, and we've pasted it below inline for reading ease.

In summary, Plaintiffs' current proposal still places significant constraints on Express Scripts by requiring it to execute certain choices and meet certain *ex ante* validation targets as a condition of exercising Express Scripts' own judgment, while still permitting Plaintiffs to challenge the sufficiency of those outcomes even when they meet the target conditions.

Still, Express Scripts is willing to enter into a mutual stipulation –if Plaintiffs include a meaningful and reciprocal limitation on their ability to challenge Express Scripts' production if/when it meets the stipulated objective targets Plaintiffs demand.  The purpose of a stipulation or court-ordered protocol is to place mutual obligations on each party.

Drafted in that spirit of collaboration and negotiation, *and with concession beyond prior language*, Express Scripts offers this revision. This stipulation now concludes with a mutually enforceable, tiered mechanism tied to the recall outcome achieved. As a further benefit, a mutually binding outcome tied to recall moots several of the more intractable ancillary disputes, like the use of a specific stopping test threshold.

We welcome your acceptance, or questions.

--

3-3 ESI - PROPOSED TAR STIPULATION:


1.      Express Scripts will use Reveal's Brainspace Predictive Coding Software to identify documents for further review and potential production. This software will be used in its Continuous Multi-Modal Learning (or CMML) mode, (and hereinafter simply referred to as "TAR.") This mode is also referred to as

1 of 26

a continuous active learning or TAR 2.0 mode.

2.      Express Scripts will use Plaintiffs' Jan. 2025-provided search terms (to be attached as Exhibit A) to all agreed-upon custodial collections, and all documents that hit on those terms will be subject to TAR pursuant to Brainspace's criteria for identifying records subject to, and excluded from, TAR modeling. For those file formats/document types subject to this process that Brainspace identifies as not amenable to TAR, reviewing attorneys will review those records without use of TAR.

3.      Express Scripts will use attorneys familiar with this litigation to iteratively train a TAR model to identify potentially responsive ESI.  Express Scripts will retrain the TAR system on a regular basis.

4.      Express Scripts will additionally use Brainspace's conceptual diversity/diverse active training feature, and will do so in multiple intervals throughout the review.

5.      Express Scripts will validate their TAR process consistent with the elusion set validation process and recall calculation detailed in *In re Broiler Chicken Antitrust Litig., 2018 WL 1146371 (N.D. Ill. 2018).* The recall percentage, along with its full calculation, will be disclosed in writing to Plaintiffs.

6.      Express Scripts discloses that it intends to achieve, and will target, a reasonable and proportional recall rate.  At this stage, Express Scripts discloses that it is targeting a recall of 70% or more.

7.      If Express Scripts achieves a recall percentage measured by this process **below 75%,** Express Scripts will further disclose to Plaintiffs in writing the marginal rate to next responsive record at the level at which Express Scripts stopped review, and will further meet and confer with Plaintiffs as to the basis for Express Scripts' judgment that that the review is reasonably and proportionately complete.
8.      If Express Scripts achieves a recall percentage measured by this process **above 75%,** Plaintiffs will stipulate to the sufficiency and reasonableness of this TAR and search terms review.
--



**Ethan Ackerman**
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW | Washington, DC 20004-2541
Direct: +1.202.739.5616 | Main: +1.202.739.3000 | Fax: +1.202.739.3001
ethan.ackerman@morganlewis.com | www.morganlewis.com

---

**From:** Tal J Lifshitz <tjl@kttlaw.com>
**Sent:** Monday, February 24, 2025 8:27 PM
**To:** Levy, Lindsey <lindsey.levy@morganlewis.com>; 'Josh Wackerly' <josh@cicalapllc.com>; Harvey, Patrick A. <patrick.harvey@morganlewis.com>; Scherr, Jason R. <jr.scherr@morganlewis.com>; Compton Russian, Meredith Lynn <meredith.compton@morganlewis.com>
**Cc:** Joanne Cicala <joanne@cicalapllc.com>; Johan Conrod <johan@cicalapllc.com>; Trey Watkins <Trey.Watkins@formanwatkins.com>; Tanya Ellis <Tanya.Ellis@formanwatkins.com>; Lawrence Deas <Lawrence@listondeas.com>; William Liston III <William@listondeas.com>; Matthew McDonald <MattM@davidnutt.com>; bbogle@levinlaw.com; sdaroci@seegerweiss.com; dbuchanan@seegerweiss.com; Benjamin Widlanski <bwidlanski@kttlaw.com>; mpifko@baronbudd.com; ssacks@napolilaw.com; mdearman@rgrdlaw.com; probertson@irpinolaw.com; myeates@ktmc.com; Erich Schork