

March 5, 2025

**VIA ECF**

Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

      Re:    *In re: Insulin Pricing Litigation*, MDL No. 3080
                Case No. 2:23-md-03080-BRM-RLS
                <u>Plaintiffs' Response to CVS Caremark's Submission on Custodians and Search Terms</u>

Dear Judge Singh:

      Pursuant to the Court's direction during the February 10, 2025 Discovery Conference, Plaintiffs respectfully submit this letter in response to the submission made by Defendants Caremark Rx, LLC, Caremark LLC, and Caremark PCS Health, LLC (collectively, "CVS Caremark").

      Although Plaintiffs and CVS Caremark have made progress regarding an agreed-upon set of custodians and search terms, CVS Caremark's custodian and search-term proposals remain fundamentally flawed. As described more fully below, CVS Caremark's custodian proposal fails to include custodians beyond those with Manufacturer-facing or formulary-related functions, while its search-term proposal would fail to capture a significant volume of relevant documents and communications that do not include the brand names of the at-issue drugs or other "insulin-related terms." The Court should reject these proposals and adopt those offered by Plaintiffs in their submission [ECF No. 439].

      **CVS Caremark's Custodian Proposal**

      CVS Caremark suggests that its 21 proposed custodians are sufficient because they "cover[] a wide range of business activities." CVS Caremark Ltr. at 1 [ECF No. 437]. But that suggestion is undercut by CVS Caremark's description of these business activities. Contrary to CVS Caremark's statement, its custodian proposal draws from a narrow range of departments and committees with overlapping functions and responsibilities: (i) the Trade Relations group, (ii) the Formulary Review Committee, and (iii) Manufacturer invoicing and finance. By limiting its custodians to these departments, CVS Caremark's proposal fails to cover subject areas critical to Plaintiffs' allegations.

As described by CVS Caremark, its Trade Relations group "negotiates with manufacturers, including the Manufacturer Defendants, regarding rebates for pharmaceutical products." CVS Caremark Ltr. at 1. Trade Relations also prepares recommendations to the Formulary Review Committee ("FRC") regarding formulary-placement decisions for the Manufacturer Defendants' drugs. *Id.* at 2. The FRC, which is not a specific department like Trade Relations, includes representatives from Trade Relations: Joseph Anderson, one of CVS Caremark's offered custodians, is a "Category Captain" within the Trade Relations group and a member of the FRC. *Id.* Finally, the custodians offered with respect to "invoicing and finance" maintain responsibilities for the "invoicing and processing of manufacturer payments or rebates" from the Manufacturer Defendants. *Id.* at 2. CVS Caremark's custodian proposal thus has a limited departmental scope—focusing on Manufacturer-facing functions, including rebate negotiations with the Manufacturer Defendants, formulary placement for the Manufacturer Defendants' drugs, and processing rebates received from the Manufacturer Defendants.

And although the interplay between CVS Caremark and the Manufacturer Defendants is central to Plaintiffs' claims, it is only one aspect of a broader story. For example, Plaintiffs allege that the PBM Defendants have made significant misrepresentations and omissions to the public and their health-plan clients, including that the PBMs:

- "have purposefully, consistently, and routinely misrepresented that they negotiate with Manufacturer Defendants and construct formularies for the benefit of payors and patients by lowering the price of the at-issue drugs and by promoting the health of diabetics" (*Albany Cnty.* Second Am. Compl. ¶ 530 [ECF No. 158]);

- "represent that they negotiate with the Manufacturer Defendants to lower the price of the at-issue diabetes medications not only for *payors*, but also for diabetic *patients*" (*id.* ¶ 532);

- "have consistently and repeatedly represented that: (a) their interests are aligned with their payor clients; (b) they work to lower the price of the at-issue drugs and, in doing so, achieve substantial savings for diabetics and payors; and (c) that monies they receive from manufacturers and their formulary choices are for the benefit of payors and diabetics" (*id.* ¶ 538);

- "mislead the Plaintiffs and the public concerning their transparency on pricing negotiations" (First Am. Consolidated Class Action Compl. ¶ 344 [ECF No. 439]);

- made "material misrepresentations and omissions (including to TPP Plaintiffs, potential clients, and investors) that they secured lower prices and by omitting and concealing the bribes, kickbacks, rebates, fees and scheme" (*id.* ¶ 408); and

- have communications with "U.S. government agencies and private insurers that fraudulently misrepresented what the list prices were, or that were intended to deter investigations into the true nature of the list prices or to forestall changes to reimbursement based on something other than list prices" (*id.* ¶ 415).

These PBM Defendants' misrepresentations are essential to this case, yet CVS Caremark has not offered *any* custodians aimed at capturing these client- and public-facing segments of its business. By contrast, in the *In re EpiPen ERISA Litigation*, No. 17-cv-1884 (D. Minn.), in which CVS was accused of soliciting, accepting and retaining payments from drug manufacturers in derogation of its duties to its health-plan clients, CVS Caremark searched 29 client-facing custodians.

As set forth in Plaintiffs' submission, CVS Caremark should identify custodians from (i) the National Client Contracting group (involved in formulating master client contracts, responses to health plan RFPs, bids, and other client-facing documents)[1] and (ii) the Public Relations, Government Affairs, and Investor Relations group (involved in making the key misrepresentations that PBMs work to lower the prices of the at-issue drugs and promote the health of diabetics).

In addition, CVS Caremark should offer sufficient custodians from its Finance group (involved in financial planning and analysis, forecasting, and accounting). Finance department employees have highly relevant knowledge about Manufacturer Payments and the many ways in which they impact CVS Caremark's business, as more fully detailed in Plaintiffs' February 28, 2025 submission [ECF 439 at 14].

Apart from making a custodian proposal that fails to account for key departments and business segments, CVS Caremark's approach to identifying specific custodians has also been problematic. Rather than agreeing to provide some of Plaintiffs' highest-priority (and most relevant) custodians—e.g., Matthew Leonard, CVS Caremark has unilaterally identified custodians in a piecemeal fashion (first just 7 custodians, then an additional 8 custodians, and then an additional 6 custodians), while selectively *avoiding* the inclusion of certain key individuals each time. And now that CVS Caremark has identified Trade Relations group custodians, it has resisted Plaintiffs' request to add these crucial individuals—who should have been identified in the first instance—on the grounds that these individuals would be unnecessarily duplicative of custodians already offered. CVS Caremark should not be permitted to exclude these essential witnesses because it has offered alternative (and less critical) witnesses with similar functions.

### **CVS Caremark's Search-Term Proposal**

Although CVS Caremark has agreed to search for documents containing (i) any of the relevant drug names and (ii) the specific titles of relevant investigative reports,[2] CVS has admits that it has nevertheless refused to run *any* remaining search terms that are not tied to other

---

[1] Plaintiffs are not currently seeking client-specific custodians like account managers interfacing with specific Plaintiffs in this MDL. Rather, Plaintiffs seek custodians involved in implementing its client-facing strategies (e.g., individuals involved in the discussions or approval of the template RFP responses that CVS Caremark maintains).

[2] *E.g.*, "Examining the Factors Driving the Rising Cost of a Century Old Drug," the title of the Senate Finance Committee's Staff Report.

"insulin-related terms (such as 'Insulin*', 'Diabet*,' and 'GLP*')." *See* CVS Caremark Ltr. at 3. But anchoring each search term to "Insulin*", "Diabet*," or "GLP*" will potentially exclude scores of highly relevant documents.

CVS Caremark's proposal ignores that "in everyday communications, let alone communications that might lead to [] liability" in this case, individuals will not always include the brand names of the at-issue drugs or the words "Insulin" or "Diabetes." *In re Diisocyanates Antitrust Litig.*, No. MC 18-1001, 2021 WL 4295729, at *11 (W.D. Pa. Aug. 23, 2021), *report and recommendation adopted*, No. MC 18-1001, 2021 WL 4295719 (W.D. Pa. Sept. 21, 2021). For example, internal discussions of rebates, discounts, or other concessions received from the Manufacturer Defendants, but which do not happen to include a specific reference to a diabetes drug term or "Insulin*", "Diabet*", etc., will *not* be captured by CVS Caremark's proposed search terms.[3] Discussions regarding the impact of rebates and other manufacturer payments on the costs for CVS Caremark's health- plan clients would also be excluded if they do not otherwise include one of CVS Caremark's proposed anchor terms.[4] And so would discussions regarding the content of CVS Caremark's responses to health-plan requests for proposals.[5]

These (and other) categories of documents are critical to Plaintiffs' claims but will not necessarily include the specific terms "Insulin," "Diabetes," "GLP," or the other insulin-related anchor terms that CVS Caremark insists on including. Because CVS Caremark "specif[ies] terms that would exclude large swaths of relevant documents," those terms are "ineffective" and would "jeopardize the integrity of the discovery process." *In re Diisocyanates*, 2021 WL 4295729, at *6.[6]

Unlike CVS Caremark's proposal, Plaintiffs' proposed search terms (*see* ECF No. 439 at Ex. 2) do not contain major gaps and will therefore yield more effective results than CVS Caremark's more limited proposal.

---

[3] *E.g.*, an email communication stating that "CVS needs to attempt to extract greater rebates from Lilly or else we will exclude Lilly's drugs in favor of Sanofi's or Novo's drugs" would not be captured by CVS Caremark's proposed terms. Nor would a communication stating that "Lilly, Sanofi, and Novo need to increase their rebate offers if they want preferred formulary positioning for their drugs."

[4] *E.g.*, CVS Caremark's search-term proposal would not capture an email stating, "The more rebates we demand from Lilly, Sanofi, and Novo, the higher the cost will be for our health plans reimbursing for their drugs."

[5] *E.g.*, CVS Caremark's search-term proposal would fail to capture email communications discussing whether a "CVS Caremark's RFP responses can state that all rebates are being passed through to our client when Zinc, our GPO or rebate aggregator, is retaining a significant amount of the payments made by Lilly, Sanofi, and Novo for their drugs."

[6] In the *EpiPen ERISA* case, CVS agreed to search terms that included, for example, relevant manufacturer names without tying those terms to the underlying condition (e.g., "anaphylaxis" or "allerg*") or drug names.

      Moreover, to the extent specific search terms offered by Plaintiffs are overbroad, Plaintiffs will continue to work with CVS Caremark to refine Plaintiffs' proposal. Earlier this week, on March 3, 2025, CVS Caremark provided a hit-count report to Plaintiffs for the first time. Prior to receiving this hit report, CVS Caremark had merely advised Plaintiffs that it had internally run "high-level" hit reports against an undefined subset of data, which indicated that Plaintiffs' proposed terms returned approximately 3.8 million hits. In contrast, CVS Caremark's proposed search terms yielded approximately 1.1 million hits. The hit report recently provided by CVS Caremark will allow the parties to meaningfully confer to attempt to narrow, where appropriate, specific search terms proposed by Plaintiff that appear to yield an unreasonable number of documents. *See* attached Declaration of Douglas Forrest dated March 5, 2025.

*   *   *

      We thank the Court for its continued attention to these matters.

                                                              Respectfully submitted,

| *s/ Joanne Cicala* | *s/ David R. Buchanan* |
|---|---|
| Joanne Cicala | David R. Buchanan |
| *Liaison Counsel for State Attorney General Track* | *Liaison Counsel for Self-Funded Payer Track* |

*s/ Matthew Gately*
Matthew Gately

*Liaison Counsel for
Class Action Track*

cc:    Counsel of Record (*via* ECF)