

Reed Smith LLP
506 Carnegie Center
Suite 300
Princeton, NJ 08540-7839
+1 609 987 0050
Fax +1 609 951 0824
reedsmith.com

**Melissa A. Geist**
Direct Phone: +1 609 514 5978
Email: mgeist@reedsmith.com

March 12, 2025

<u>VIA ECF</u>

Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

> Re:  In re: Insulin Pricing Litigation, No. 2:23-md-03080-BRM-RLS, MDL No. 3080: Defendants' Request to Amend Case Management Order 14.

Dear Judge Singh:

Defendants write regarding the Self-Funded Payer Plaintiffs' widespread disregard of their obligations to complete Plaintiff Fact Sheets ("PFS"), and request that the Court amend Case Management Order No. 14 (ECF No. 315, "CMO 14") to provide a streamlined mechanism to address significant problems with many of these Plaintiffs' responses. Despite the Court's clear order, a majority of Self-Funded Payer Plaintiffs have failed to produce documents, answer broad portions of the PFS, or both. These pervasive failures thwart the purpose of the PFS process that the Court implemented. They equate to a failure to serve a PFS response altogether, and should be treated the same way under the Court's existing framework: Defendants notify Plaintiffs of the failure, and then move to show cause. Neither a meet and confer nor motion practice—the approach that applies when a plaintiff substantially completes the PFS and produces documents, but provides deficient answers—serve a purpose when Plaintiffs fundamentally disregard the Court's requirements. Accordingly, Defendants request that CMO 14 be amended to allow use of the same show-cause process in these circumstances. Defendants' proposed amendment is attached as Exhibit 1. Defendants sent Plaintiffs their proposal February 28, and the parties met and conferred March 7. On March 12, Plaintiffs took the position that no amendment is necessary and rejected Defendants' proposal.

I. BACKGROUND

As the Court is aware, the Self-Funded Payer Plaintiffs advocated for a PFS process, claiming it "would streamline the process for exchanging the core information necessary to move this" MDL forward. ECF 270 at 9. They assured the Court "all plaintiffs, and without further effort by the defense, will respond to a stipulated fact sheet." 09/05/2024 Hr'g Tr. at 19:21-25. And they promised that they would produce documents, telling the Court—for example—"[w]e're going to give [Defendants] the contracts," "[w]e're offering to produce the formulary information," and "we also agreed to produce all the RFPs that we issued." *Id.* at 48:2-11, 68:2-7, 75:8-13. At the

same time, at least one Plaintiffs' firm represented in solicitations that the PFS responses would take "just a few hours." Dkt. 269-5 (Frantz asserting that "[a]ll that will be required…is to complete a court order discovery questionnaire which should take only a few hours of staff time.")

The Court relied on those assurances in granting Plaintiffs' request for a PFS process, and designed the PFS with the reassurances in mind. For example, the Court did not require Plaintiffs to answer certain questions about their PBM contracts, because Defendants would be able to "review the contracts" that Plaintiffs promised to produce. ECF 291 at 4. Similarly, the Court did not order Plaintiffs to describe their health plans' formularies in light of Plaintiffs' representation that they "will be producing documents identifying the responsive formularies." *Id.* at 5.

The Court ordered Plaintiffs to provide PFS submissions that are "substantially complete" at the time of service. Submissions are substantially complete only if Plaintiffs "(1) answer all questions; (2) include a signed Certification; and (3) produce the requested documents to the extent such documents are in Plaintiff's possession, custody, or control." CMO 14 ¶ 2.

The Court provided distinct methods for raising two types of problems with PFS responses. The first is a deficiency letter process: Defendants serve a letter covering "purported deficiencies," the parties meet and confer for at least 14 days, the parties prepare a joint dispute letter, and the Court resolves the dispute. CMO 14 ¶ 4. If a Plaintiff fails to comply with that order, Defendants can "seek dismissal of [that] Plaintiff's claims." *Id.* ¶ 4.b.vi. By contrast, for Plaintiffs who disregard the Court's Order by failing to serve a PFS, a more streamlined approach governs: Defendants send a notice and if the Plaintiff fails to serve within 14 days, Defendants may seek an order to show cause. Failure to serve in response to an order to show cause "shall result in dismissal of Plaintiff's complaint." *Id.* ¶ 5.c.ii.

## II.  PLAINTIFFS ARE NOT SERVING SUBSTANTIALLY COMPLETE PFS

Many Plaintiffs are flouting this Court's order by producing effectively *no* documents, failing to answer a *majority* of PFS questions, and providing *nothing* but boilerplate language copied from other plaintiffs. In so doing, Plaintiffs are effectively granting themselves an indefinite extension on their obligations without providing the basic information about their own claims that the Court required. This is clear gamesmanship: Plaintiffs serve a nominal response with almost no information just to avoid a show-cause motion, which currently is allowed only "in cases where no PFS is served" at all. CMO 14 ¶ 5(c)(i). This end-run around the Court's order undermines the "streamlin[ing]" that Plaintiffs promised the PFS process would provide. ECF 270 at 9.

***Plaintiffs are not producing documents.*** As of March 12, 2025, 103 Plaintiffs—nearly half of responding Plaintiffs—have produced <u>zero</u> documents. Others made token productions, including 5 Plaintiffs who each produced exactly 1 document. There is no reconciling this conduct with Court's stated "expect[ation]" that each SFP Plaintiff will "diligently investigate whether it has within its possession, custody, or control information or documents responsive to the questions and requests." ECF 291 at 2. Likewise, it is contrary to Plaintiffs' express assurances to the Court. *Supra* at 1. Defendants respectfully submit that a failure to produce documents should be treated as a failure to serve a PFS. CMO 14 ¶ 2.

***Plaintiffs are failing to answer questions.*** The Court ordered each Plaintiff to "answer all questions." CMO 14 ¶ 2. In the face of that order, many Plaintiffs have left broad swathes of their PFS responses blank, or said they will answer at some indefinite date. For example, Cocke County left ***nineteen*** of thirty-seven questions blank and Hamblen County left ***seventeen*** blank. Ex. 2, Cocke PFS; Ex. 3, Hamblen PFS. City of Huntington left ***ten*** unanswered, instead stating it was "currently collecting and reviewing responsive information and will seasonably provide a further response in the form of an Amended Plaintiff Fact Sheet." Ex. 4, Huntington PFS.

The questions that Plaintiffs are refusing to answer go to basic issues on which they must have the requested information–for instance, the names of their health plans (Question 12), when they became aware of their claims (Questions 23-28), and what relevant organizations they belong to (Question 33). They also fail to provide information core to their complaints. Plaintiffs allege that they "spend[] thousands of dollars per year on the costs of providing diabetes medications for [their] health-plan members" and that they "overpaid for ... diabetes medications." *See, e.g.*, Cocke Am. Compl. ¶¶ 38, 570. They also assert that they contracted with PBMs, and that they were entitled to—but did not—receive rebates from those PBMs. *Id.* ¶¶ 603, 748. Despite making those allegations, Plaintiffs have refused to answer basic questions about their health plans and plan members (Questions 5, 6, 12), their spending on diabetes medications (Question 11), the rebates they receive (Questions 11, 20), and their relationships with PBMs (Question 13, 15). Plaintiffs agreed to many of these questions—e.g., Questions 5, 6, 12, and 15—without dispute. *See* ECF No. 269, Ex. 6 (chart with disputed questions).

For most of these Plaintiffs, the few answers they do provide are simply copied from other plaintiffs. Plaintiffs' answers to Questions 21 (alleged misrepresentations), 22 (alleged omissions), 23-28 (Plaintiff's timing of awareness), and 35-37 (their damages) are template (and deficient) responses that nearly every Plaintiff has pasted into their PFS. Huntington, for example, neglected to edit what is obviously a form response to Question 37, and asserted that it seeks damages for "RICO and [CPA/UTPA/UTDPA] claims." Ex. 4 at 53 (brackets in original). The copying is obvious even without such errors, as different Plaintiffs with different counsel and different facts provide verbatim identical answers. These are not answers made in good faith.

## III. THESE DEFICIENCIES SHOULD BE ADDRESSED AS FAILURES TO SERVE

Ordinary-course deficiencies can and will be addressed through the ordinary-course process, through which the parties seek to resolve any disputes without court involvement, the court rules on an issue only if necessary, and a Plaintiff would have multiple chances to correct a deficiency before facing dismissal. CMO 14 ¶ 4.

The widespread failures laid out above, however, are not ordinary-course deficiencies. They amount to a total failure to serve a PFS, and should be treated accordingly. The parties do not need to confer about, or brief, whether Plaintiffs must comply with the Court's existing order to produce documents or answer all questions. The Court has already ruled that they must. And the Court should not have to issue yet *another* order just to compel compliance with its existing order. Instead, the failures discussed above should be made subject to the streamlined process for failure to serve an executed PFS: Defendants should serve a notice and then (if needed) move for a show-cause order, at which point the Court would issue a show-cause order and, if the Plaintiff still "[f]ails to tender a completed PFS" thereafter, dismiss that Plaintiff's case. CMO 14 ¶ 5(c)(ii).

3

For these reasons, Defendants respectfully request that the Court amend CMO 14 to permit the show-cause process to be used in two circumstances: where Plaintiffs have effectively failed to produce documents, and where Plaintiffs fail to answer significant portions of the PFS. If the Court would like Defendants to submit a motion on this topic, Defendants request permission to do so, and request that this letter be construed as a pre-motion letter under CMO 5 ¶ IV(3).

Respectfully submitted,

Dated: March 12, 2025

/s/ *Melissa A. Geist, Esq.*
Melissa A. Geist, Esq.
Julia A. López, Esq.
**REED SMITH LLP**
506 Carnegie Center, Suite 300
Princeton, NJ 08540
T: (609) 514-5978

James F. Hurst, Esq. (*pro hac vice*)
Andrew A. Kassof, Esq. (*pro hac vice*)
Diana M. Watral, Esq. (*pro hac vice*)
Ryan Moorman, Esq. (*pro hac vice*)
Jason A. Feld, Esq. (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
T: (312) 862-2000

*Attorneys for Defendant Eli Lilly and Company*

/s/ *Brian W. Carroll, Esq.*
Brian W. Carroll, Esq.
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
T: (973) 639-2020

James P. Rouhandeh, Esq. (*pro hac vice*)
David B. Toscano, Esq. (*pro hac vice*)
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
T: (212) 450-4000

Neal A. Potischman, Esq. (*pro hac vice*)
Andrew Yaphe, Esq. (*pro hac vice*)
**DAVIS POLK & WARDWELL LLP**
1600 El Camino Real

4

Menlo Park, CA 94025
T: (650) 752-2000

*Attorneys for Defendant Novo Nordisk Inc.*

*/s/ Liza M. Walsh, Esq.*
Liza M. Walsh, Esq.
Katelyn O'Reilly, Esq.
Selina Ellis, Esq.
**WALSH PIZZI O'REILLY FALANGA LLP**
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
T: (973) 757-1100

Michael R. Shumaker, Esq. (*pro hac vice*)
Julie E. McEvoy, Esq. (*pro hac vice*)
William D. Coglianese, Esq. (*pro hac vice*)
Melissa L. Patterson, Esq. (*pro hac vice*)
**JONES DAY**
51 Louisiana Avenue, N.W.
Washington, DC 20001
T: (202) 879-3939

*Attorneys for Defendant Sanofi-Aventis U.S. LLC*

*/s/ Jason R. Scherr*
Jason R. Scherr
Patrick A. Harvey
Lindsey T. Levy
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004-2541
jr.scherr@morganlewis.com
patrick.harvey@morganlewis.com
lindsey.levy@morganlewis.com
T: (202) 739-3000

*Counsel for Evernorth Health, Inc. (formerly known as Express Scripts Holding Company), Express Scripts, Inc., Express Scripts Administrators, LLC, ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Medco Health Solutions, Inc., and The Cigna Group.*

                              <u>/s/ Brian D. Boone, Esq.</u>
Thomas P. Scrivo
Young Yu
**O'TOOLE SCRIVO, LLC**
14 Village Park Road
Cedar Grove, NJ 07009
T: (973) 239-5700
Brian D. Boone
**ALSTON & BIRD LLP**
1120 S. Tryon Street, Ste. 300
Charlotte, NC 28280
T: (704) 444-1000

Elizabeth Broadway Brown
**ALSTON & BIRD LLP**
One Atlantic Center
1201 W. Peachtree Street, NW, Ste. 4900
Atlanta, GA 30309-3424
T: (404) 881-7000

Kelley Connolly Barnaby
**ALSTON & BIRD LLP**
950 F. Street, NW
Washington, DC 20004
T: (202) 239-3300

*Counsel for OptumRx, Inc., UnitedHealth Group Incorporated; OptumInsight, Inc.; OptumRx Holdings LLC; and Optum, Inc.*

<u>s/ Kevin H. Marino, Esq.</u>
Kevin H. Marino
John D. Tortorella
**MARINO, TORTORELLA & BOYLE, P.C.**
437 Southern Boulevard
Chatham, New Jersey 07928
T: (973) 824-9300

Enu Mainigi
Craig Singer
R. Kennon Poteat III
A. Joshua Podoll
Benjamin Hazelwood
Daniel Dockery
**WILLIAMS & CONNOLLY LLP**
680 Maine Ave SW

Washington, DC 20024
T: (202) 434-5000

*Counsel for CVS Pharmacy, Inc.; Caremark Rx, L.L.C.; CaremarkPCS Health, L.L.C.; and Caremark, L.L.C.*