

Reed Smith LLP
506 Carnegie Center
Suite 300
Princeton, NJ 08540-7839
+1 609 987 0050
Fax +1 609 951 0824
reedsmith.com

**Melissa A. Geist**
Direct Phone: +1 609 514 5978
Email: mgeist@reedsmith.com

March 28, 2025

**VIA ECF**

Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

> **Re:** **In re: Insulin Pricing Litigation, No. 2:23-md-03080-BRM-RLS, MDL No. 3080: Defendants' Reply in Support of Their Request to Amend Case Management Order 14.**

Dear Judge Singh:

Plaintiffs' March 19, 2025 Letter (ECF 470) essentially concedes that some Plaintiffs are directly violating the Court's order, but offers no solution for these violations. This is not an issue involving a single law firm, as Plaintiffs claim. In reality, *102* Plaintiffs represented by *10 different firms* have to date produced one document or no documents in response to the Initial Document Requests. And Plaintiffs represented by at least three different firms have served PFS responses with broad swathes of questions left unanswered. Indeed, these problems have only grown since Defendants first raised this issue with Plaintiffs last month.

Plaintiffs have repeatedly asserted that this is "one of the largest MDLs in the country" and have taken the position that it requires a "streamline[d] process for exchanging the core information necessary to move" this MDL "toward a resolution *without a continuous series of objections, alleged deficiencies, conferrals, and discovery motions*." ECF 439 at 2; ECF 270 at 9. Defendants' targeted proposed amendment addresses these systemic violations of Case Management Order 14 ("CMO 14") in a way that is efficient for the parties and the Court. Plaintiffs' proposal—which, to be clear, is to do nothing about these problems—will not.

### I. DEFENDANTS' PROPOSED AMENDMENT IS WARRANTED.

Plaintiffs do not dispute that the PFS examples Defendants attached to their submission violate the Court's order. In fact, Plaintiffs *concede* the problem, although they try to minimize it as attributable solely to a "single firm" with a "high volume of cases": the Frantz Law Group. *See* ECF No. 470 at 2. Plaintiffs' only proposal to address these violations is for "SFP Leadership" to talk with Frantz "to ensure that these purported deficiencies are addressed" and for "Leadership" to "continue to track this firm." *Id.* Otherwise, Plaintiffs believe the parties should spend months exchanging letters, meeting and conferring, and briefing rather than treating those violations as the

clear failures to serve a PFS that they are. None of Plaintiffs' arguments against the need for this amendment withstand scrutiny.

First, Plaintiffs are simply wrong to suggest that Frantz is the sole problem. As noted, ten different firms represent Plaintiffs who have failed to produce more than a single document, and Defendants provided the Court with examples of other firms' PFS responses with significant unanswered questions—examples Plaintiffs ignore. *See* ECF No. 494-2 (PFS from Plaintiff represented by Farrell & Fuller); ECF No. 494-4 (PFS from Plaintiff represented by Frazer PLC).

Second, even if the problem *were* confined to Frantz (it is not), there would still need to be a solution to the problem. Frantz represents a total of 189 Plaintiffs—**45% of Plaintiffs in the SFP Track**. Tellingly, neither Frantz nor SFP leadership has committed to any timeline for rectifying the deficiencies in the PFS submitted by Frantz's Plaintiffs. And, in fact, Frantz has *continued* to serve PFS defying the Court's orders since Defendants filed their request to amend the CMO on March 12, notwithstanding SFP Leadership's representation that they have "spoken with this firm to ensure that these purported deficiencies are addressed." Since March 12, Frantz Plaintiffs have served two PFS without accompanying documents and six PFS with only one document. Moreover, Frantz is not cooperating with the ordinary-course deficiency process. Frantz has missed its deadline to respond to four deficiency letters and ignored repeated requests for meet-and-confers over those letters. *See* Ex. 1, 2025.03.24 M. Patterson Email to Frantz.

Third, Plaintiffs suggest that Defendants should have anticipated this when negotiating CMO 14. But at that time, Defendants had no basis to believe that Plaintiffs would not only openly flout the Court's orders, but do so at this scale. Indeed, if Defendants had suggested anything of the sort at that time, Plaintiffs would have asserted that any such concerns were premature. That is no longer the case: the Court now has concrete evidence of Plaintiffs' systemic disregard of this Court's orders.

Finally, Plaintiffs speculate that some Plaintiffs might be "at the mercy of third parties who possess many of the requested documents." ECF No. 470 at 5. But that response ignores that Plaintiffs are failing to provide information they must have, such as their own organizational memberships, the names of their health plans, their PBM contracts, and when they became aware of their claims. ECF 464 at 3. Moreover, even if it were truly the case that some information is only in possession of third parties and that certain Plaintiffs could not obtain it in the 60 days provided by the Court, Plaintiffs should request an extension—not serve a placeholder PFS with next to no substantive information, indefinitely delay Plaintiffs' real responses, and shift the burden to Defendants to raise the issue. This approach defeats the "streamlin[ing]" Plaintiffs promised the PFS process would provide. ECF 270 at 9.

## II.    DEFENDANTS' PROPOSAL IS TAILORED TO THE PROBLEM.

Despite acknowledging the problem, Plaintiffs argue that the current CMO process is adequate. Plaintiffs have no response, however, to the obvious point that having numerous meet-and-confers and rounds of briefing on issues *the Court has already decided* is a waste of both the Court's and the parties' time. The suggestion that using the same show-cause process that is already in place for a party that fails to serve any PFS is a "due process" violation is completely unsupported. Under Defendants' proposal, Plaintiffs will have the opportunity to explain why

dismissal should not be ordered—just as they do if they fail to serve a PFS. There is no reason to engage in a drawn-out process for Plaintiffs violating the Court's orders at a basic level, and every reason to avoid such an undermining of the PFS process's purpose.

Plaintiffs argue that Defendants' proposed amendment gives Defendants "unrestricted discretion," but that is wrong. ECF No. 470 at 5. As Defendants explained, Defendants will use this process for a PFS with missing documents and questions that are substantively equivalent to a failure to serve a PFS. Adopting a flexible standard, rather than an inflexible rule, will prevent gamesmanship. If, for example, the Court were to allow show-cause orders only for Plaintiffs who produce literally zero documents, Plaintiffs would be able to fulfill the letter of that order (while violating its spirit) by producing exactly *one* document. And in fact, fourteen Plaintiffs have already done exactly that. Defendants have no incentive to waste the Court's time by using this process for ordinary-course deficiencies, and Plaintiffs will unquestionably challenge Defendants if they were to do so. But that is not an argument against having such a process at all, given the seriousness of Plaintiffs' failures.

Indeed, although Plaintiffs claim that the amendment is overbroad, Plaintiffs have only identified one plaintiff who produced no documents—the Philadelphia District Attorney ("DA")—that they believe should not be subjected to this expedited process.[1] Their inability to adduce any other example itself shows that Defendants' proposal is not overbroad. And even as to the DA, if Defendants were to serve a notice of failure on it, Plaintiffs would be free to argue that the DA's response was appropriate. While irrelevant to Defendant's proposed amendment, the DA's non-compliance presents its own problems that the parties will meet and confer about. Plaintiffs classified the DA as a self-funded payer, and then failed to provide almost any information in its PFS response on the grounds that the DA is *not* a self-funded payer. Rather than serve a useless PFS response, Plaintiffs should have flagged the issue proactively and identified a more appropriate mechanism to provide Defendants with meaningful information (*e.g.*, by using the State AG PFS). Instead, Plaintiffs sat on their hands until Defendants identified an issue. The problems with the DA's response in no way negate the need for a mechanism to address those Plaintiffs who have—in other ways—effectively failed to serve a PFS.

---

[1] Plaintiffs also raise two issues that have no bearing on this CMO amendment request. First, Plaintiffs point to three occasions when Plaintiffs' attachments were blocked by an email service provider. The parties discovered and resolved this technical issue in the dialogue following the notice of failure to serve—exactly as intended by CMO 14. *See, e.g.*, Ex. 2, 2025.02.18 K. Walling Email; CMO 14 ¶ 5.b.ii ("[I]f Plaintiff has in fact tendered an Executed PFS, [Plaintiff shall] inform the Defendants of the date on which it was served."). Second, Plaintiffs point to the parties' disagreement over the calculation of Plaintiffs' deadlines. CMO 14 states that Plaintiffs must respond to the PFS 60 days "after the action is entered on this MDL docket." If an action is directly filed into the MDL, it was entered on the MDL docket as of its filing. Plaintiffs instead use the date of a separate later docket entry, stating the action is "part of the MDL 3080." Notably, Defendants have not requested a show cause order relating to any of the cases Plaintiffs have identified based on either of these issues. While Defendants welcome clarification of this minor technical issue, if the Court is so inclined, it is not relevant to the current request.

### III. THE PARTIES SUFFICIENTLY MET AND CONFERRED ON THE REQUESTED AMENDMENT.

Plaintiffs also object that Defendants should have met-and-conferred with them for two more days, as required for discovery disputes under CMO 17. But that comment is both wrong and academic. For one, Defendants' Letter is a pre-motion letter filed pursuant to CMO 5, not a discovery dispute letter under CMO 17. That is because Defendants are not seeking a ruling on the sufficiency of any individual PFS, but an amended PFS process. CMO 5 does not specify a minimum time to confer. CMO 5, IV(2). Defendants sent Plaintiffs their proposal, conferred a week later, and waited for Plaintiffs to expressly state that they would not agree to any change of the process. Ex. 3, 2025.03.12 M. Pifko Email. Tellingly, Plaintiffs still do not say that with more time, they would have *ever* agreed to any change to the process, offered alternative language to Defendants' proposal, or identified some alternative process that would be more appropriate. Plaintiffs do not explain how further discussion would have narrowed the issue of whether CMO 14 should be amended—which is unsurprising, since their position is that no amendment is warranted at all.

Defendants do not request the amendment lightly, but believe that the scale of Plaintiffs' non-compliance requires a streamlined, efficient process to address violations of the Court's existing orders and to ensure that noncompliance is not rewarded. Accordingly, Defendants respectfully request that the Court amend CMO 14 to treat the submission of PFS responses that fail to produce documents or leave broad portions of the PFS unanswered as equivalent to failures to serve a PFS.

Respectfully submitted,

Dated: March 28, 2025

*/s/ Melissa A. Geist, Esq.*
Melissa A. Geist, Esq.
Julia A. Lopez, Esq.
**REED SMITH LLP**
506 Carnegie Center, Suite 300
Princeton, NJ 08540
T: (609) 514-5978

James F. Hurst, Esq. (*pro hac vice*)
Andrew A. Kassof, Esq. (*pro hac vice*)
Diana M. Watral, Esq. (*pro hac vice*)
Ryan Moorman, Esq. (*pro hac vice*)
Jason A. Feld, Esq. (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
T: (312) 862-2000

*Attorneys for Defendant Eli Lilly and Company*


*/s/ Brian W. Carroll, Esq.*
Brian W. Carroll, Esq.
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
T: (973) 639-2020

James P. Rouhandeh, Esq. (*pro hac vice*)
David B. Toscano, Esq. (*pro hac vice*)
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
T: (212) 450-4000

Neal A. Potischman, Esq. (*pro hac vice*)
Andrew Yaphe, Esq. (*pro hac vice*)
**DAVIS POLK & WARDWELL LLP**
1600 El Camino Real
Menlo Park, CA 94025
T: (650) 752-2000

*Attorneys for Defendant Novo Nordisk Inc.*


*/s/ Liza M. Walsh, Esq.*
Liza M. Walsh, Esq.
Katelyn O'Reilly, Esq.
Selina Ellis, Esq.
**WALSH PIZZI O'REILLY FALANGA LLP**
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
T: (973) 757-1100

Michael R. Shumaker, Esq. (*pro hac vice*)
Julie E. McEvoy, Esq. (*pro hac vice*)
William D. Coglianese, Esq. (*pro hac vice*)
Melissa L. Patterson, Esq. (*pro hac vice*)
**JONES DAY**
51 Louisiana Avenue, N.W.
Washington, DC 20001
T: (202) 879-3939

*Attorneys for Defendant Sanofi-Aventis U.S. LLC*

/s/ *Jason R. Scherr, Esq.*
Jason R. Scherr, Esq.
Patrick A. Harvey, Esq.
Lindsey T. Levy, Esq.
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004-2541
jr.scherr@morganlewis.com
patrick.harvey@morganlewis.com
lindsey.levy@morganlewis.com
T: (202) 739-3000

*Counsel for Evernorth Health, Inc. (formerly known as Express Scripts Holding Company), Express Scripts, Inc., Express Scripts Administrators, LLC, ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Medco Health Solutions, Inc., and The Cigna Group.*


/s/ *Brian D. Boone, Esq.*
Thomas P. Scrivo, Esq.
Young Yu, Esq.
**O'TOOLE SCRIVO, LLC**
14 Village Park Road
Cedar Grove, NJ 07009
T: (973) 239-5700

Brian D. Boone, Esq.
**ALSTON & BIRD LLP**
1120 S. Tryon Street, Ste. 300
Charlotte, NC 28280
T: (704) 444-1000

Elizabeth Broadway Brown, Esq.
**ALSTON & BIRD LLP**
One Atlantic Center
1201 W. Peachtree Street, NW, Ste. 4900
Atlanta, GA 30309-3424
T: (404) 881-7000

Kelley Connolly Barnaby, Esq.
**ALSTON & BIRD LLP**
950 F. Street, NW
Washington, DC 20004
T: (202) 239-3300

*Counsel for OptumRx, Inc., UnitedHealth Group Incorporated; OptumInsight, Inc.; OptumRx Holdings LLC; and Optum, Inc.*

*s/ Kevin H. Marino, Esq.*
Kevin H. Marino, Esq.
John D. Tortorella, Esq.
**MARINO, TORTORELLA & BOYLE, P.C.**
437 Southern Boulevard
Chatham, New Jersey 07928
T: (973) 824-9300

Enu Mainigi, Esq.
Craig Singer, Esq.
R. Kennon Poteat III, Esq.
A. Joshua Podoll , Esq.
Benjamin Hazelwood, Esq.
Daniel Dockery, Esq.
**WILLIAMS & CONNOLLY LLP**
680 Maine Ave SW
Washington, DC 20024
T: (202) 434-5000

*Counsel for CVS Pharmacy, Inc.; Caremark Rx, L.L.C.; CaremarkPCS Health, L.L.C.; and Caremark, L.L.C.*