ROB BONTA
Attorney General of California
NELI PALMA
Senior Assistant Attorney General
EMILIO VARANINI (SBN 163952)
Supervising Deputy Attorney General
LAUREN ZWEIER (SBN 291361)
Deputy Attorney General
  455 Golden Gate Ave., Suite 11000
  San Francisco, CA 94102
  Telephone: (415) 510-4400
  Facsimile: (415) 703-5908
  Email: Emilio.Varanini@doj.ca.gov
  Lauren.Zweier@doj.ca.gov

DARCIE TILLY (SBN 239715)
Deputy Attorney General
  600 West Broadway, Suite 1800
  San Diego, CA 92101
  P.O. Box 85266
  San Diego, CA 92186-5266
  Telephone: (619) 738-9559
  Facsimile: (619) 645-2012
  E-mail:  Darcie.Tilly@doj.ca.gov

[Additional Counsel on the Signature Page]
*Attorneys for the People of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>                        Plaintiff,<br><br>        v.<br><br>ELI LILLY AND COMPANY, et al.,<br><br>                        Defendants. | Case No. 2:23-cv-01929-SPG-SK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO REMAND**<br><br>Date: October 30, 2024<br>Time: 1:30 p.m.<br>Courtroom: 5C<br>Judge: Hon. Sherilyn Peace Garnett |

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................. 1

BACKGROUND ............................................................................................... 1

   I.    Background on the Federal Officer Removal Statute .......................... 1

   II.   Abbreviated Procedural Background .................................................... 2

ARGUMENT ................................................................................................... 2

   I.    The People's Post-Removal Disclaimers Should Be Given Effect ..................................................................................................... 3

       A.   Legal Standard Governing Claim and Jurisdictional Disclaimers ................................................................................. 3

       B.   The People's Post-Removal Disclaimers Are Claim Disclaimers ................................................................................. 3

   II.   The Court Should Reject Any Opposition Argument by the PBMs that They Pleaded Sufficient Facts for the "Acting Under" Prong Despite the Post-Removal Disclaimers ...................... 5

       A.   Legal Standard Governing the "Acting Under" Prong .............. 5

       B.   OPM Does Not Control Caremark's Non-FEHBA Conduct ................................................................................... 7

       C.   The DoD Does Not Control ESI's Non-TRICARE Conduct ................................................................................... 9

   III.  The Court Should Reject Any Opposition Argument by the PBMs that They Pleaded Sufficient Facts for the Causal Connection Prong Despite the Post-Removal Disclaimers ............... 10

       A.   Legal Standard Governing the Causal Connection Prong ........ 10

       B.   The People's Post-Removal Disclaimers Are Sufficiently Broad ....................................................................................... 12

   IV.  The Court Should Reject Any Opposition Argument by the PBMs that They Pleaded Sufficient Facts for the Colorable Federal Defense Prong Despite the Post-Removal Disclaimers ........ 14

       A.   Legal Standard Governing Colorable Federal Defense Prong ....................................................................................... 15

       B.   Caremark Does Not Have a Colorable Federal Defense .......... 15

          1.   The FEHBA Express Preemption Defense Is Not Colorable ...................................................................... 15

          2.   The FEHBA Obstacle Preemption Defense Is Not Colorable ...................................................................... 18

       C.   ESI Does Not Have a Colorable Federal Defense .................... 19

          1.   The TRICARE Preemption Defense Is Not Colorable ...................................................................... 19

          2.   The Government Contractor Defense Is Not Colorable ...................................................................... 21

**TABLE OF CONTENTS**
(continued)

Page

V.   The Court Should Reject Any Opposition Argument by the
PBMs that the Post-Removal Disclaimers Are Illusory Since
Remand Is Required Even Absent the Disclaimers ............................ 21

    A.   Caremark Provides OPM a Normal Commercial Product ....... 21

    B.   Rebates Are Not FEHBA Benefits or Payments for
Benefits ................................................................................. 24

    C.   ESI Does Not Negotiate Insulin Rebates for TRICARE
Plans ..................................................................................... 24

VI.  This Court Should Remand the Action, Including Granting
Remand Pursuant to Its Discretionary Authority ............................... 24

CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

Page

## CASES

*Arizona v. United States*
    567 U.S. 387 (2012) .......................................................................... 18

*Botsford v. Blue Cross & Blue Shield of Montana, Inc.*
    314 F.3d 390 (9th Cir. 2002). ........................................................... 18

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*
    797 F.3d 720 (9th Cir. 2015) ....................................................*passim*

*Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A., Inc.*
    519 U.S. 316 (1997) ................................................................... 11, 17

*Cal. Trucking Ass'n v. Su*
    903 F.3d 953 (9th Cir. 2018) ............................................................ 17

*California ex rel. Harrison v. Express Scripts, Inc.*
    2024 WL 841197 (C.D. Cal. Feb. 28, 2024) ..................................... 4

*Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*
    497 F.3d 972 (9th Cir. 2007) ...................................................... 16, 17

*City & Cty. of Honolulu v. Sunoco LP*
    39 F.4th 1101 (9th Cir. 2022) ..........................................6, 15, 22, 23

*City of Hoboken v. Chevron Corp.*
    45 F.4th 699 (3d Cir. 2022) ............................................................... 3

*Connecticut ex rel. Tong v. Exxon Mobil Corp.*
    83 F.4th 122 (2d Cir. 2023) ............................................................. 14

*Cty. Bd. of Arlington Cty. v. Express Scripts Pharmacy, Inc.*
    996 F.3d 243 (4th Cir. 2021) ...................................................... 10, 20

*Coventry Health Care of Mo., Inc. v. Nevils*
    581 U.S. 87 (2017) .................................................................15, 16, 20

*CTS Corp. v. Waldburger*
    573 U.S. 1 (2014) .............................................................................. 18

**TABLE OF AUTHORITIES**
(continued)

Page

*Cty. of San Mateo v. Chevron Corp.*
32 F.4th 733 (9th Cir. 2022) .......................................................................*passim*

*Dan's City Used Cars, Inc. v. Pelkey*
569 U.S. 251 (2013) ....................................................................................... 11

*DeFiore v. SOC LLC*
85 F.4th 546 (9th Cir. 2023) ................................................................ 11, 14, 15

*Dougherty v. A O Smith Corp.*
2014 WL 3542243 (D. Del. July 16, 2014) ..................................................... 3

*Fidelitad, Inc. v. Insitu, Inc.*
904 F.3d 1095 (9th Cir. 2018) ................................................................. 6, 7, 9

*Fisher v. Asbestos Corp. Ltd.*
2014 WL 3752020 (C.D. Cal. July 30, 2014) ................................................ 12

*Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*
865 F.3d 1237 (9th Cir. 2017) ................................................... 2, 21, 23

*Graves v. 3M Co.*
17 F.4th 764 (8th Cir. 2021) ........................................................................... 7

*Hawai'i v. CaremarkPCS Health, LLC*
2024 WL 1907396 (D. Haw. May 1, 2024) ..................................................... 9

*Healthcare Venture Partners, LLC v. Anthem Blue Cross & Blue Shield*
2021 WL 5194662 (S.D. Ohio Nov. 8, 2021) ............................................ 4, 25

*Heilner v. Foster Wheeler LLC*
2022 WL 3045838 (M.D. Pa. Aug. 2, 2022) ................................................. 12

*In re Anthem, Inc. Data Breach Litig.*
162 F. Supp. 3d 953 (N.D. Cal. 2016)................................................. 16, 19, 24

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*
725 F.3d 65 (2d Cir. 2013) ............................................................................ 18

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods.*
*Liab. Litig.*
959 F.3d 1201 (9th Cir. 2020) ........................................................... 18

4

5

*Lake v. Ohana Military Cmtys., LLC*
14 F.4th 993 (9th Cir. 2021) ..................................................... 7, 10, 24

6

7

*Latiolais v. Huntington Ingalls, Inc.*
951 F.3d 286 (5th Cir. 2020) ............................................................. 11

8

9

*Marcher v. Air & Liquid Sys. Corp.*
2022 WL 562268 (C.D. Cal. Feb. 24, 2022) ..................................... 25

10

11

*Minnesota v. Am. Petroleum Inst.*
63 F.4th 703 (8th Cir. 2023) ....................................................... 11, 14

12

13

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers*
*Ins. Co.*
514 U.S. 645 (1995) ........................................................................... 17

14

15

*Nassau Cty. v. Mylan Pharms., Inc.*
2024 WL 3298500 (E.D.N.Y. July 4, 2024) ........................................ 4

16

17

*Nevada v. Bank of Am. Corp.*
672 F.3d 661 (9th Cir. 2012) ............................................................. 25

18

19

*Ohio ex rel. Yost v. Ascent Health Servs. LLC*
2024 WL 23187 (S.D. Ohio Jan. 2, 2024) ........................................... 4

20

21

*Oliver v. Ralphs Grocery Co.*
654 F.3d 903 (9th Cir. 2011) ............................................................. 25

22

23

*Paulsen v. CNF Inc.*
559 F.3d 1061 (9th Cir. 2009) ........................................................... 18

24

25

*Plaquemines Par. v. BP Am. Prod. Co.*
103 F.4th 324 (5th Cir. 2024) ..................................................... 11, 13

26

27

*Puerto Rico v. Eli Lilly & Co.*
2023 WL 4830569 (D.P.R. July 13, 2023) ........................................... 4

28

**TABLE OF AUTHORITIES**
(continued)

Page

*R.J. Reynolds Tobacco Co. v. Cty. of Los Angeles*
    29 F.4th 542 (9th Cir. 2022) ......................................................................... 16, 20

*Riggs v. Airbus Helicopters, Inc.*
    939 F.3d 981 (9th Cir. 2019) ............................................................................ 6, 9

*Roach v. Mail Handlers Benefit Plan*
    298 F.3d 847 (9th Cir. 2002) .......................................................................... 18, 19

*Rodriguez v. Lockheed Martin Corp.*
    627 F.3d 1259 (9th Cir. 2010) ............................................................................. 21

*Rutledge v. Pharm. Care Mgmt. Ass'n*
    592 U.S. 80 (2020) .......................................................................................... 17, 20

*St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*
    990 F.3d 447 (5th Cir. 2021) ................................................................................. 7

*Trustees of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert*
    *Valley Landscape & Maint., Inc.*
    333 F.3d 923 (9th Cir. 2003) ............................................................................... 25

*Washington v. Monsanto Co.*
    738 F. App'x 554 (9th Cir. 2018) ........................................................................ 23

*Watkins v. Grover*
    508 F.2d 920 (9th Cir. 1974) ............................................................................... 24

*Watson v. Philip Morris Cos.*
    551 U.S. 142 (2007) ..................................................................................*passim*

*West Virginia ex rel. McCuskey v. Eli Lilly & Co.*
    2024 U.S. Dist. LEXIS 160669 (N.D.W. Va. Sep. 6, 2024) ............. 9, 14, 22, 23

*Westchester Cty. v. Mylan Pharms., Inc.*
    2024 WL 3043121 (S.D.N.Y. June 18, 2024) ....................................................... 4

*Willingham v. Morgan*
    395 U.S. 402 (1969) ...................................................................................... 10, 12

**TABLE OF AUTHORITIES**
(continued)

*Wood v. Crane Co.*
    764 F.3d 316 (4th Cir. 2014) ........................................................................ 14, 25

**STATUTES**

5 United States Code
    § 1101 ........................................................................................................... 18
    § 1103 ....................................................................................................... 8, 16
    § 8902(m)(1) ...........................................................................................*passim*

10 United States Code
    § 1071 ....................................................................................................... 9, 20
    § 1103(a) ................................................................................................. 19, 20

28 United States Code
    § 1367 ........................................................................................................... 25
    § 1442 .....................................................................................................*passim*
    § 1442(a) ............................................................................................. 1, 10, 12
    § 1442(a)(1) ................................................................................................... 5

**OTHER AUTHORITIES**

32 Code of Federal Regulations § 199.17(a)(7)(ii) ............................................. 20

**INTRODUCTION**

On August 13, 2024, the Ninth Circuit reversed this Court's June 28, 2023, Order granting the People's motion to remand because the People's original Complaint "fail[ed] to *explicitly* release claims or possible recovery from rebate practices as they relate to [the Federal Employees Health Benefits Act] and TRICARE." ECF 133 at 3 (emphasis in original). The Ninth Circuit limited its ruling to the Complaint's disclaimer and its effect on 28 U.S.C. § 1442's causal connection prong because the Ninth Circuit viewed this Court's remand decision as resting on this issue. *Id.* at 3-4. The Ninth Circuit returned the case to this Court "to analyze California's remaining arguments for remanding to state court." *Id.* at 4.

Pursuant to the Ninth Circuit's instructions, the People file this instant motion. This Court may again order remand based on the People's post-removal disclaimers, which this Court previously found have "repeatedly demonstrated that [the People] do[] not seek to sue over any conduct performed on behalf of a federal entity." ECF 109 at 12. This Court's reasoning for respecting the People's disclaimer and granting remand in June 2023 is correct and has been followed by courts throughout the country. Moreover, any attempt by CaremarkPCS Health, LLC and Express Scripts, Inc. (ESI) to avoid remand by arguing the post-removal disclaimers are illusory fails because remand is proper even absent the disclaimers.

The People therefore respectfully request this Court once again find federal subject matter jurisdiction lacking under the federal officer removal statute, 28 U.S.C. § 1442, and re-remand the case to Los Angeles County Superior Court.

**BACKGROUND**

**I.     BACKGROUND ON THE FEDERAL OFFICER REMOVAL STATUTE**

Caremark and ESI, as private parties purportedly working on behalf of the federal government, can invoke subject matter jurisdiction under 28 U.S.C. § 1442(a) only if: "(1) [they are] a person within the meaning of the statute, (2) a causal nexus exists between plaintiffs' claims and the actions [they] took pursuant

to a federal officer's direction, and (3) [they have] a colorable federal defense to plaintiffs' claims." *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 727 (9th Cir. 2015) (citation omitted). To establish a causal nexus, Caremark and ESI must show (1) "their actions seeking" insulin rebates from Manufacturer Defendants in exchange for preferable placement of their drugs on non-FEHBA and non-TRICARE standard formularies "are 'actions under' a federal officer," and (2) "those actions are causally connected to the dispute over" those insulin rebates. *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017).

## II.   ABBREVIATED PROCEDURAL BACKGROUND

This Court is familiar with the procedural history of this action preceding the June 28, 2023, remand order, and the People do not repeat it here. ECF 109 at 2-3.

Caremark appealed on July 5, 2023, and ESI appealed the following day. ECF 113, 118. On August 13, 2024, the Ninth Circuit reversed this Court's conclusion as to the pre-removal disclaimer in the original Complaint but did not address any other issues raised on appeal, including, significantly, whether discretionary remand is appropriate in light of the People's post-removal disclaimers. ECF 133 at 3-4.

## ARGUMENT

This Court should re-affirm its remand decision since the People, through their post-removal disclaimers, released any claims or possible recovery from insulin rebate practices as they relate to FEHBA and TRICARE. While the Ninth Court found the pre-removal disclaimer in the People's Complaint "fail[ed] to *explicitly* release" such claims or possible recovery, ECF 133 at 3, the People repeatedly made clear their release of such claims after removal. This precludes Caremark and ESI from meeting section 1442's "acting under," causal connection, and colorable federal defense prongs. Any attempt by Caremark and ESI to oppose remand based on an argument the post-removal disclaimers are illusory should be rejected since jurisdiction under section 1442 is lacking even absent the post-removal disclaimers.

I.    THE PEOPLE'S POST-REMOVAL DISCLAIMERS SHOULD BE GIVEN EFFECT

    A.    **Legal Standard Governing Claim and Jurisdictional Disclaimers**

In ruling on the People's original motion to remand, this Court recognized the difference between fact-based claim disclaimers, which are respected by courts, and ineffective artful jurisdictional disclaimers. ECF 109 at 11-12. This Court also recognized that jurisdiction under section 1442 does not exist if a plaintiff expressly disclaims all the conduct the defendant purports to have undertaken at the direction of a federal officer. *Id.* The Ninth Circuit did not disagree. Thus, it remains true that a disclaimer is effective if it "deals with specific claims . . . rather than generally disclaiming the Court's jurisdiction." *Id.* at 11 (citing *Dougherty v. A O Smith Corp.*, 2014 WL 3542243 (D. Del. July 16, 2014)); *see City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 713 (3d Cir. 2022) ("[D]isclaimers are no ruse.").

    B.    **The People's Post-Removal Disclaimers Are Claim Disclaimers**

Through their briefing on their prior motion to remand, the People clarified the disclaimer. ECF 109 at 13 (stating that there is "no government-directed conduct left in the wake of Plaintiff's express disclaimer").[1]

As previously held, these post-removal disclaimers are effective. ECF 109 at 13 ("The Court agrees that the . . . subsequent repeated waivers, have left the Complaint devoid of challenges to actions by the PBM Defendants on behalf of OPM and DoD."). They are fact-based, clear, and specific, such that the state court

---

[1] For convenience of reference, the People are attaching an Appendix containing their statements confirming they are not suing over TRICARE and FEHBA. These disclaimers mean the People disclaimed and are disclaiming any claim or cause of action against, declaratory or injunctive relief from, or monetary recovery from (including restitution, disgorgement, civil penalties, or other form of monetary relief), any Defendants for the operation or administration of FEHBA or TRICARE plans and for negotiating or contracting for, or payment of, rebates for analog insulin prescriptions where those prescriptions are filled by FEHBA or TRICARE plan beneficiaries, enrollees, insureds or members or the rebates are allocable to FEHBA or TRICARE plans. The People disclaimed and are disclaiming the recovery of moneys (via restitution, disgorgement, or other form of monetary relief) from any Defendant paid by the federal government for FEHBA or TRICARE plan beneficiaries, enrollees, insureds, or members, or by such beneficiaries, enrollees, insureds, or members themselves pursuant to a FEHBA or TRICARE plan.

1    will not have to determine whether a challenged action was taken on behalf of OPM

2    or the DoD under color of office. *See Healthcare Venture Partners, LLC v. Anthem*

3    *Blue Cross & Blue Shield*, 2021 WL 5194662, at *8 (S.D. Ohio Nov. 8, 2021) ("If a

4    disclaimer is sufficiently clear and specific that, on remand, the state court would

5    not be left to determine whether an action was taken on behalf of an officer of the

6    United States and under color of office, then the disclaimer is effective.").

7         Other courts have found federal officer jurisdiction lacking in light of similar

8    disclaimers of pharmacy benefit manager (PBM) conduct, confirming the People's

9    post-removal disclaimers are effective here. *See, e.g.*, *Nassau Cty. v. Mylan*

10   *Pharms., Inc.*, 2024 WL 3298500, at *4-6 (E.D.N.Y. July 4, 2024) (finding

11   effective disclaimer stating: "This lawsuit does not seek damages related to the

12   federal government or for conduct undertaken pursuant to contracts with the federal

13   government[.]"); *Westchester Cty. v. Mylan Pharms., Inc.*, 2024 WL 3043121, at *7

14   (S.D.N.Y. June 18, 2024) (same); *California ex rel. Harrison v. Express Scripts,*

15   *Inc.*, 2024 WL 841197, at *5 (C.D. Cal. Feb. 28, 2024) (finding effective disclaimer

16   stating: "The allegations in this Complaint do not include and specifically exclude

17   Defendants' provision of PBM or mail order pharmacy services pursuant to

18   contracts with the [DoD], the [OPM], . . . or any other federal agency."); *Ohio ex*

19   *rel. Yost v. Ascent Health Servs. LLC*, 2024 WL 23187, at *3 (S.D. Ohio Jan. 2,

20   2024) (finding effective disclaimer stating: "[Plaintiff's] claims do not challenge

21   the operation or administration of federal health benefits programs such as

22   TRICARE or [FEHB] [.]"); *Puerto Rico v. Eli Lilly & Co.*, 2023 WL 4830569, at

23   *1 (D.P.R. July 13, 2023) (finding effective disclaimer stating: "[T]he Government

24   is not seeking relief relating to any federal program ( . . .) or any contract related to

25   a federal program.").

26        Because the People's post-removal disclaimers are effective, subject matter

27   jurisdiction no longer exists and discretionary remand is proper. *See infra*

28   Argument § VI. While this basis alone is sufficient to support remand, to the extent

Caremark and ESI dispute this Court's prior legal analysis, the People analyze section 1442's substantive prongs to illustrate why this Court's June 28, 2023 analysis reached the correct result.

## II. THE COURT SHOULD REJECT ANY OPPOSITION ARGUMENT BY THE PBMs THAT THEY PLEADED SUFFICIENT FACTS FOR THE "ACTING UNDER" PRONG DESPITE THE POST-REMOVAL DISCLAIMERS

The first causal nexus requirement is that a defendant must plead it is "acting under" a federal officer "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). Caremark and ESI failed to do so.

### A. Legal Standard Governing the "Acting Under" Prong

To determine whether a removing defendant was "acting under" a federal officer or agency when engaged in the conduct challenged by a lawsuit, a court must determine (1) whether a defendant's actions were "under" a federal officer or agency, something that typically involves "subjection, guidance, or control," and (2) "in addition" whether the defendant was involved in an "effort to assist, or to help carry out, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 151-52 (2007) (citations omitted) (emphasis removed).

Thus, courts consider several factors in the "acting under" analysis, including "whether the person is acting on behalf of the officer in a manner akin to an agency relationship," "whether the person is . . . under the 'subjection, guidance, or control' of the officer, or in a relationship which 'is an unusually close one involving detailed regulation, monitoring, or supervision,'" "whether the private person is assisting the federal officer in fulfilling 'basic governmental tasks' that 'the Government itself would have had to perform' if it had not contracted with a private firm," and "whether the private person's activity is so closely related to the government's implementation of its federal duties that the private person . . . may have difficulty in raising an immunity defense in state court." *Cty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 756-57 (9th Cir. 2022) (quoting *Watson*, 551 U.S. at 151-54). Several principles derive from these factors. Two are discussed below.

*Mere Regulatory Compliance.* Because normal regulatory relationships between a company and a federal officer lack "detailed supervision," such relationships do not demonstrate that a defendant is "acting under" the federal officer. *City & Cty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1107 (9th Cir. 2022); *see Watson*, 551 U.S. at 152 ("simply *complying* with the law" is not enough to meet "acting under" requirement) (emphasis in original). For example, in *Riggs v. Airbus Helicopters, Inc.*, the Ninth Circuit addressed the question of whether the defendant corporation, who was authorized by the Federal Aviation Administration (FAA) to certify helicopter designs as compliant with FAA regulations, was "acting under" the FAA. 939 F.3d 981, 983-85 (9th Cir. 2019). The court held the defendant was not "acting under" the FAA, because certifying helicopter designs amounted to "mere compliance with federal directives." *Id.* at 989.

*Company with Federal and Non-Federal Clients.* Further, a defendant being sued for its private conduct cannot meet the "acting under" requirement by reference to work performed for the federal government where its federal acts are not "the subject of the [plaintiff's] complaint." *Watson*, 551 U.S. at 147 (alterations and quotation marks omitted).

In its previous remand order, this Court disagreed that Caremark "may *always* take advantage of federal officer removal if any portion of the work it performs is on behalf of *both* private and government organizations, even if the government services are not at issue." ECF 109 at 12 (emphasis in original). This Court's ruling is consistent with Ninth Circuit law and should be re-affirmed.

In *Fidelitad, Inc. v. Insitu, Inc.*, the Ninth Circuit addressed whether the defendant, a drone manufacturer with both civilian and military clients, could remove under the federal officer removal statute. 904 F.3d 1095, 1097 (9th Cir. 2018). The Ninth Circuit acknowledged the defendant might be able to remove an action under section 1442 if the action was challenging the defendant's sale of drones to the military. *Id*. at 1100-01. Nevertheless, the court held that the

defendant could *not* remove due to its status as a military drone supplier because the lawsuit was not about the sale of drones to the military; the lawsuit was about the civilian sale of drones, and there was no evidence of federal control of the civilian drone sales. *Id*. (holding the defendant was not "entitled to removal as a government contractor" because "the government did not contract with [defendant] for the equipment at issue").

The principle reflected in *Fidelitad*—that a private company is not "acting under" a federal officer for all purposes just because that company has both civilian and federal clients—was applied by the Eighth Circuit to circumstances similar to the present action. In *Graves v. 3M Co.*, the Eighth Circuit held the defendant, who sold earplugs to civilian and military contractors, could not satisfy the "acting under" requirement with respect to the civilian plaintiffs, even though it met the requirement with respect to plaintiffs who received earplugs through the military. 17 F.4th 764, 770 (8th Cir. 2021); *see St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 455 (5th Cir. 2021) (stating that defendant does not "'act[] under' the direction of OPM for all purposes").

This principle is further supported by the purpose of section 1442, which is to "protect the Federal Government from [ ] interference with its operations." *San Mateo*, 32 F.4th at 755 (quoting *Watson*, 551 U.S. at 150). If there is no federal control over the challenged non-federal conduct there is no risk of interference with federal government operations. *See Lake v. Ohana Military Cmtys., LLC*, 14 F.4th 993, 1004-05 (9th Cir. 2021) ("acting under" unmet absent federal control).

**B.  OPM Does Not Control Caremark's Non-FEHBA Conduct**

Since the People disclaimed Caremark's conduct for FEHBA plans, Caremark must satisfy the "acting under" prong by pleading facts showing that when servicing non-FEHBA plans, it is subject to OPM's "subjection, guidance, or control" and is helping OPM carry out its duties. *See Watson*, 551 U.S. at 151-52. Caremark failed to do so.

Critically, Congress did not authorize OPM to act on matters unrelated to federal employees. 5 U.S.C. §§ 1103 (OPM duties) & 8902(g) (FEHBA coverage). Thus, OPM cannot dictate how PBMs act outside the federal employee context.

Further, Caremark never alleged, nor pleaded facts showing, that OPM acted outside its congressionally defined authority by dictating Caremark's non-FEHBA conduct. Nor did Caremark allege that OPM requires Caremark to conduct FEHBA and non-FEHBA insulin rebate negotiations together.

Instead, Caremark's "acting under" arguments focus on the requirements of the FEHBA Standard Contract between OPM and FEHBA plans. ECF 5 at 6-8. This contract, however, demonstrates Caremark is *not* "acting under" OPM when serving its private clients. In fact, the contract defines PBMs as "vendors providing a retail pharmacy network and/or a mail order pharmacy and/or a specialty pharmacy to Enrollees and family members" and defines "Enrollee" as "[t]he Federal employee, Tribal Employee, annuitant, former spouse, temporarily-covered [*sic*] former Federal employee or family member enrolled under this contract." FEHBA Standard Contract at I-1 & I-17. Therefore, the contract only governs the conduct of PBMs with respect to FEHBA plans and does not govern non-FEHBA plan conduct.

Further, while PBMs may have to include certain non-FEHBA plan information when reporting to OPM (ECF 5 at 7-8), this is not enough to satisfy the "acting under" requirement. *See San Mateo*, 32 F.4th at 758 (holding that contractual provisions that "give the Navy the right to inspect delivery, site, and operations" of the defendant's fuel did not satisfy "acting under" requirement). Indeed, even claims that a defendant's "activities are highly supervised and monitored" by a federal agency are insufficient to show the defendant is under the agency's "subjection, guidance, or control." *See Watson*, 551 U.S. at 151, 153.

With respect to the purported OPM audits, the FEHBA Standard Contract states they are "in accordance with" FEHBA and federal acquisition regulations.

FEHBA Standard Contract at I-19. Ninth Circuit precedent holds that the phrase "in accordance with" merely shows compliance with federal acquisition regulations, which does not satisfy the "acting under" prong. *See Riggs*, 939 F.3d at 989.

Because the contract does not govern PBMs' non-FEHBA plan conduct, the contract does not, and cannot, support a claim that Caremark is acting under OPM's control when providing services to its non-FEHBA plan clients. Likewise, because the contract expressly does not govern non-FEHBA plans, Caremark is not helping OPM fulfill a basic governmental task or implementing its federal duties when providing services to non-FEHBA plans.[2]

### C. The DoD Does Not Control ESI's Non-TRICARE Conduct

Similar to Caremark, ESI failed to demonstrate it was "acting under" a federal officer when engaging in the conduct challenged in this action.

The People's post-removal disclaimers limit the scope of this action to ESI's civilian conduct. *See supra* Argument § I.B. Yet, ESI has never argued it is "acting under" the DoD when servicing civilian plans. Nor could it. As recognized in *Fidelitad*, ESI cannot use its work for TRICARE plans to meet the "acting under" prong vis-à-vis its conduct for civilian plans. 904 F.3d at 1101 (holding the defendant was not "entitled to removal as a government contractor" because "the government did not contract with [defendant] for the equipment at issue"). Additionally, ESI cannot argue the DoD instructed ESI on how to provide services to civilian plans because Congress did not authorize the DoD to regulate PBM services outside of the military context. 10 U.S.C. § 1071 (TRICARE's purpose).

---

[2] The People recognize that in *Hawai'i v. CaremarkPCS Health, LLC*, Caremark's FEHBA "formulary and rebate practices" were held to satisfy "acting under" at the pleading stage even though the plaintiff disclaimed Caremark's conduct for FEHBA plans. 2024 WL 1907396, at *9 (D. Haw. May 1, 2024); *but see id.* at *14 (leaving door open for a fact-based challenge of the "acting under" prong after discovery). This Court should not follow *Hawai'i* since that case did not discuss *Fidelitad* or other arguments and case law raised by the People in Argument §§ II.A and V.A. Another court recently declined to follow *Hawai'i's* conclusion regarding the "acting under" prong for similar reasons. *West Virginia ex rel. McCuskey v. Eli Lilly & Co.*, 2024 U.S. Dist. LEXIS 160669, at *12 (N.D.W. Va. Sep. 6, 2024).

Stated simply, because there is no allegation the DoD controls ESI's non-TRICARE conduct, the "'central issue' in the causal nexus analysis—whether a federal officer directed the defendant to take the action challenged—is unmet." *Lake*, 14 F.4th at 1004-05.

The Fourth Circuit's decision in *County Board of Arlington County v. Express Scripts Pharmacy, Inc.*, does not support a contrary result. 996 F.3d 243 (4th Cir. 2021). There, the plaintiff sued based on a claim that the defendants (members of ESI's corporate family) contributed to the opioid crisis within its jurisdiction. *Id.* at 247. The plaintiff sought to recover for "every opioid prescription" distributed in its jurisdiction, including to TRICARE beneficiaries. *Id.* at 257. The defendants argued, among other things, that ESI had "weekly briefings" with the federal agency and ESI directly received "guidance and instruction" from the federal officer regarding the processing and dispensing of prescriptions, including opioids. *Id.* at 252. Here, in contrast, the People seek recovery only for civilian insulin rebates (s*ee supra* Argument § I.B), and there are no such allegations regarding DoD control over civilian rebate negotiations. *See Lake*, 14 F.4th at 1004-05.

## III. THE COURT SHOULD REJECT ANY OPPOSITION ARGUMENT BY THE PBMS THAT THEY PLEADED SUFFICIENT FACTS FOR THE CAUSAL CONNECTION PRONG DESPITE THE POST-REMOVAL DISCLAIMERS

Caremark and ESI cannot establish a causal connection—the second causal nexus prong—because of the People's post-removal disclaimers.

### A. Legal Standard Governing the Causal Connection Prong

To meet the causal connection prong, a defendant must show the lawsuit is "for or relating to any act under color of such office." 28 U.S.C. 1442(a).

The phrase "for . . . any act under color of such office" has been in section 1442 since 1948. *Willingham v. Morgan*, 395 U.S. 402, 406 (1969). The phrase is met if the defendants have "shown that their only contact with [the plaintiff]" regarding the challenged conduct was through their "acts or (their) presence at the place in performance of (their) official duty." *Id.* at 409 (quotation omitted).

The phrase "or relating to" was added to section 1442 in 2011. *DeFiore v. SOC LLC*, 85 F.4th 546, 557 & n.6 (9th Cir. 2023). In a decision published after this Court's June 23, 2023, remand order, the Ninth Circuit held the phrase means a lawsuit must be "connected or associated with" the defendant's actions taken under the color of office. *Id.*

Because the Ninth Circuit interpreted the causal connection prong broadly prior to *DeFiore*, the use of the "relating to" test should not affect the outcome of cases. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 295 n.8 (5th Cir. 2020) (stating that because the Ninth Circuit interpreted the phrase causal connection broadly, the Ninth Circuit's failure to adopt the "connected or associated" test (prior to *DeFiore*) did not affect the outcomes of section 1442 removals). Moreover, although the phrase "relating to" is broad, it "does not mean the sky is the limit," and it is not satisfied by a "tenuous, remote, or peripheral" relationship. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260-61 (2013).

To understand the boundaries of "relating to" the Supreme Court instructs courts to look at Congress's objective in enacting the subject law. *See Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325 (1997) (discussing "relate to" in the preemption context). Although the 2011 amendments added the phrase "or relating to" to section 1442, the purpose underlying the statute—to protect the federal government's operations—has remained unchanged. *See San Mateo*, 32 F.4th at 755-56.

Thus, a court cannot stretch the phrase "relating to" so as "to permit the removal of cases where the defendant engaged in the challenged conduct on its own initiative in fulfillment of a tangentially related federal directive." *Plaquemines Par. v. BP Am. Prod. Co.*, 103 F.4th 324, 343 (5th Cir. 2024); *see Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703, 715 (8th Cir. 2023) (finding "relating to" test unmet in lawsuit challenging marketing, which the federal government did not control).

As recognized by this Court in its original remand decision, a plaintiff can

undercut the causal connection prong with a well pleaded disclaimer. ECF 109 at 12 (citing *Fisher v. Asbestos Corp. Ltd.*, 2014 WL 3752020, at *4 (C.D. Cal. July 30, 2014) and *Heilner v. Foster Wheeler LLC*, 2022 WL 3045838, at *4 (M.D. Pa. Aug. 2, 2022)). Nothing in the Ninth Circuit's order undermines this conclusion.

## B. The People's Post-Removal Disclaimers Are Sufficiently Broad

The People's post-removal disclaimers are comprehensive enough to preclude Caremark and ESI from establishing that this lawsuit is "for or relating to any act under color of such office." 28 U.S.C. 1442(a).[3]

Neither Caremark nor ESI can establish this lawsuit is "for . . . any act under color of" OPM or the DoD. Because of the post-removal disclaimers, the PBMs cannot show that there exist claims in this lawsuit that are "derived solely from [Caremark's and ESI's] official duties." *Willingham*, 395 U.S. at 409.

Because of the post-removal disclaimers, Caremark and ESI likewise cannot establish that this lawsuit is "relating to" acts undertaken under OPM or the DoD. The "relating to" test is unmet here because there is no more than a tenuous, remote, or peripheral connection between this lawsuit and Caremark's and ESI's purported actions under OPM and the DoD. This lawsuit is not seeking to impose liability for Caremark's and ESI's compliance with federal directives, impose any remedies, equitable or monetary, for such compliance, or prevent Caremark and ESI from complying with such directives in the future.

Nor would remand impact Congressional objectives in enacting section 1442. This is because this lawsuit does not reflect "'local prejudice' against unpopular federal laws or federal officials," will not impede federal law enforcement, and will not deprive Caremark or ESI of "a federal forum in which to assert federal [] defenses." *Cf. Watson*, 551 U.S. at 150 (citations omitted).

---

[3] Dicta in Judge Ikuta's concurrence criticized the majority for "fail[ing] to recognize or address" her concern that "no disclaimer, however worded, can help California avoid a causal nexus between Caremark's conduct on behalf of the federal government." ECF 133 (Ikuta, J., concurring). Judge Ikuta's concurrence, however, lacks substantive analysis of the legal test or the People's claims.

Caremark and ESI dispute the People's contentions regarding the causal connection prong based on assertions the People's claims against their private client conduct are indivisible from Caremark's and ESI's conduct for OPM and the DoD. These indivisibility arguments should be rejected.

First, Caremark contends it meets the "relating to" test on the ground its conduct "cannot be separated as between FEHBA and non-FEHBA clients" because it negotiates rebates for both sets of clients at the same time. ECF 94 at 11. This argument fails because OPM does not direct whether or how PBMs should negotiate rebates, and nothing requires negotiating for non-FEHBA and FEHBA plans concurrently. Instead, Caremark merely claims that OPM requires it to credit the rebates it obtains for FEHBA plans for those plans' benefit. ECF 5 at 7.

Thus, this lawsuit's purported relationship with an "act under color of such office" is tenuous at best, similar to the relationship in *Plaquemines Parish* that also failed to meet the "relating to" test. 103 F.4th at 342. There, the plaintiffs claimed the defendants did not comply with Louisiana petroleum production requirements. *Id.* at 329. The defendants removed, arguing World War II contracts with the federal government for the refining of crude oil into high octane aviation gas meant they had acted "under color of such office." *Id.* at 330. However, although the Fifth Circuit stated that the defendants "need not show that a federal officer directed the specific oil production activities being challenged," it concluded they still had to show their oil production activities "had a sufficient connection with directives in their federal refinery contracts." *Id.* at 341. The defendants failed to meet this burden because the refining contracts lacked any provision pertaining to oil production and gave the defendants latitude to buy crude oil from others to meet their aviation gas refining obligations. *Id.* at 341-42. Like *Plaquemine Parish*, this lawsuit has an insufficient relationship with an "act under color of" OPM because Caremark's FEHBA Standard Contract does not address rebate negotiations and gives PBMs complete latitude about whether, and how, to obtain rebates.

Second, with respect to ESI, the PBM claims it meets the "relating to" test because it is "required to use the DoD's formulary and adjudicate claims using" insulin's wholesale acquisition cost. ECF 93 at 10. But the People are not suing ESI regarding the TRICARE formulary or how it adjudicates TRICARE claims.

Because the DoD has not directed how rebates are negotiated for civilian health plans, the "relating to" test is similarly unmet for ESI because ESI has not shown the "actions [it] took which gave rise to the [People's] claims resulted from [its] work for DOD." *DeFiore*, 85 F.4th at 557; *see also Am. Petroleum Inst.*, 63 F.4th at 715 (holding "relating to" test unmet where lawsuit challenged fossil fuel marketing and federal direction was of petroleum production); *Connecticut ex rel. Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 145 (2d Cir. 2023) (similar).

Third, Caremark and ESI have both argued in the past that remand would undermine the purpose of section 1442 because they contend a federal court should decide whether the People's claimed injury "can be separated and divided" between their FEHBA/TRICARE conduct and their conduct for other carriers. *See*, *e.g.*, ECF 5 at 10. This argument should be rejected because it is an argument that *causation* under *state law* should be decided by a federal court. Section 1442 does not provide a federal forum for questions of state law causation. If it did, the remand outcomes would be different in disclaimer cases involving injuries due to climate change and asbestos exposure. *See*, *e.g.*, *Tong*, 83 F.4th at 145 (climate change injury); *Wood v. Crane Co.*, 764 F.3d 316, 321 (4th Cir. 2014) (asbestos exposure).

## IV. THE COURT SHOULD REJECT ANY OPPOSITION ARGUMENT BY THE PBMs THAT THEY PLEADED SUFFICIENT FACTS FOR THE COLORABLE FEDERAL DEFENSE PRONG DESPITE THE POST-REMOVAL DISCLAIMERS

For there to be federal officer jurisdiction Caremark and ESI must also be able to assert a colorable federal defense. Because the People's lawsuit is not challenging their FEHBA or TRICARE conduct due to the post-remand disclaimers, they cannot do so. *See McCuskey*, 2024 U.S. Dist. LEXIS 160669, at *17 (holding Caremark cannot "bootstrap" a federal defense to non-federal claims).

### A. Legal Standard Governing Colorable Federal Defense Prong

To support removal, a federal defense must "arise out of" a defendant's official federal duties. *Honolulu*, 39 F.4th at 1110 (alterations omitted) (quoting *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981)). The defense also must not be "immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous." *DeFiore*, 85 F.4th at 560 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)). "[C]onclusory statements and general propositions of law do not make [] defenses colorable." *Honolulu*, 39 F.4th at 1110. Further, a defense is not colorable if it cannot be asserted by the defendant as a matter of law based on the facts pleaded by the defendant. *Cabalce*, 797 F.3d at 731.

### B. Caremark Does Not Have a Colorable Federal Defense

Caremark raises a single potential federal defense: FEHBA preemption. Caremark argues the People's claims are expressly preempted or alternatively are preempted because they are an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the FEHBA." ECF 94 at 15 (citation and quotation marks omitted). Caremark is wrong on both fronts.

#### 1. The FEHBA Express Preemption Defense Is Not Colorable

The FEHBA preemption statute provides, "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1). Express preemption under 5 U.S.C. § 8902(m)(1) requires a defendant to meet two requirements: (1) the existence of terms in a FEHBA contract that "relate to . . . coverage or benefits (including payments with respect to benefits)" and (2) the existence of a state law that "relates to health insurance or plans." *Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 90, 94-95 (2017) (quoting 5 U.S.C. § 8902(m)(1)). Consistent with these requirements, section 8902(m)(1) does not expressly preempt a claim brought by a plaintiff

unrelated to FEHBA coverage or benefits. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 978-981 (9th Cir. 2007) (holding that claims of company suing a FEHBA plan "as a third-party claiming damages, and not as an assignee of rights to benefits" not preempted by FEHBA); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 1015 (N.D. Cal. 2016) (holding data breach Unfair Competition Law (UCL) claim not preempted by FEHBA since data privacy is not FEHBA coverage or benefits).

Undermining Caremark's preemption argument is the fact that the section of the FEHBA Standard Contract addressing the PBMs, Section 1.28, is not part of the contract addressing "the nature, provision, or extent of coverage or benefits"— which is contained in Part 2. Nor is Section 1.28 in the part of the contract that "relate[s] to . . . payments with respect to benefits"—which is contained in Part 3.

Moreover, the FEHBA Standard Contract expressly excludes from its scope non-FEHBA plans. *See supra* Argument §§ I.B & II.B. Because the People expressly limited their lawsuit to Caremark's non-FEHBA conduct, there is no colorable argument that Caremark can meet the requirements of section 8902(m)(1) for express preemption. A contrary finding would impermissibly conflict with the text of FEHBA. *R.J. Reynolds Tobacco Co. v. Cty. of Los Angeles*, 29 F.4th 542, 552-53 (9th Cir. 2022) (scope of preemption must be consistent with statutory text). Caremark cannot dispute that the statutory provisions underlying the FEHBA program limit OPM's authority to federal employee programs. 5 U.S.C. §§ 1103 (OPM duties) & 8902(g) (FEHBA coverage). Nor can Caremark dispute that 5 U.S.C. § 8902(m)(1) is limited to the FEHBA context. *See Nevils*, 581 U.S. at 91. The People, however, are not a covered beneficiary under FEHBA. Nor are they seeking FEHBA benefits. The People's lawsuit does not "relate to . . . [FEHBA] benefits (including payments with respect to benefits)." 5 U.S.C. § 8902(m)(1).

Before the Ninth Circuit, Caremark also argued for express preemption based on a speculative concern that a future injunction against its non-FEHBA plan

conduct might disrupt FEHBA rebates—that is, under the preemption statute, an injunction in this lawsuit would "relate to" its FEHBA activities. This argument is inconsistent with how the phrase "relate to" is interpreted by courts.

To interpret the "relate to" phrase in section 8902(m)(1), the Ninth Circuit instructs courts to look to how Employee Retirement Income Security Act (ERISA) precedent interprets the phrase "relate to." *Cedars-Sinai Med. Ctr.*, 497 F.3d at 977 n.2. Under such precedent, a law does not "relate to" an ERISA plan where it does not "dictate" plan choices and instead only "alters the incentives" underlying the choices. *Dillingham Constr.*, 519 U.S. at 334; *see Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 88 (2020) (holding that a law regulating PBMs was not preempted where it would not "dictate [ERISA] plan choices").

This form of analysis is consistent with how the phrase "related to" is interpreted in other (non-ERISA) preemption contexts. For instance, when analyzing preemption under the Federal Aviation Administration Authorization Act, the Ninth Circuit stated with respect to whether a law had an impermissible relation to motor carriers' prices, routes, or services: "[w]hat matters is . . . where in the chain of a motor carrier's business [the law] is acting to compel a certain result . . . and what result it is compelling. . . ." *Cal. Trucking Ass'n v. Su*, 903 F.3d 953, 966 (9th Cir. 2018). Thus, the fact a motor carrier must consider a law in conducting business, or raise prices due to a law, does not—without more—mean the law is "related to" prices, routes, or services. *Id.* at 965 (citations omitted).

Here, a judgment in this lawsuit will not "dictate the choices" of FEHBA plans. A judgment would not act against Caremark's relationship with FEHBA plans; it would not mandate such plans to act in any specific manner; and it would not mandate such plans to alter the nature, provision, or extent of coverage or benefits (including payments with respect to benefits). Any other remote effect of the People's lawsuit on FEHBA rebates is too "tenuous, remote, or peripheral" to support a colorable preemption defense. *See N.Y. State Conference of Blue Cross &*

1    *Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 661 (1995) (citation

2    omitted); *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1083 (9th Cir. 2009) (no ERISA

3    preemption where "ERISA does not regulate the relationship at issue").

4    **2.    The FEHBA Obstacle Preemption Defense Is Not Colorable**

5    Caremark's attempt to claim obstacle preemption fares no better than its

6    arguments about express preemption.

7    Under the doctrine of obstacle preemption, a federal law will preempt a state

8    law if the state law "stands as an obstacle to the accomplishment and execution of

9    the full purposes and objectives of Congress." *Arizona v. United States*, 567 U.S.

10   387, 399 (2012) (citations omitted). When undertaking obstacle preemption

11   analysis, a court must first identify the "full purposes and objectives" of the federal

12   law from "the text and structure of the statute at issue." *In re Volkswagen "Clean*

13   *Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 959 F.3d 1201, 1212 (9th Cir.

14   2020) (citation omitted). FEHBA's relevant statutory provisions do not extend

15   OPM's authority to non-FEHBA plans. 5 U.S.C. §§ 1101, 1103, 8902. Also,

16   Congress's purpose underlying section 8902(m)(1) was to ensure uniformity in

17   FEHBA benefit administration. *Roach v. Mail Handlers Benefit Plan*, 298 F.3d

18   847, 850 (9th Cir. 2002) (citation omitted).[4]

19   Because this lawsuit is not challenging FEHBA plan conduct, it does not and

20   cannot undermine the uniformity in the administration of FEHBA benefits, fatally

21   undermining Caremark's obstacle preemption argument. *See CTS Corp. v.*

22   *Waldburger*, 573 U.S. 1, 18 (2014); *In re Methyl Tertiary Butyl Ether (MTBE)*

23   *Prods. Liab. Litig.*, 725 F.3d 65, 101 (2d Cir. 2013) ("A showing that the federal

---

24   [4] The Ninth Circuit's statement in *Botsford v. Blue Cross & Blue Shield of*

25   *Montana, Inc.* that Congress's goals in enacting FEHBA were "uniform
     administration and cost-savings" does not undermine this argument. 314 F.3d 390,

26   398 (9th Cir. 2002). The cost savings at issue were those achieved by uniform
     administration. *Id.* at 395. Further, a "generalized congressional objective" like

27   "cost savings" cannot be used to argue for preemption of non-FEHBA conduct
     when FEHBA does not regulate non-FEHBA conduct and OPM has no authority to

28   do so either. *See Volkswagen*, 959 F.3d at 1221.

and state laws serve different purposes cuts against a finding of obstacle preemption."); *In re Anthem*, 162 F. Supp. 3d at 1015 (finding no conflict preemption where UCL data breach claim not based on FEHBA benefits).

Caremark's speculation about the effect of an injunction regarding its non-FEHBA plan conduct on the rebates FEHBA plans receive likewise does not help Caremark's obstacle preemption argument. This is because, the purpose behind section 8902(m)(1) is achieving uniformity of FEHBA benefits. *Roach*, 298 F.3d at 850. The purpose of section 8902(m)(1) does not implicate rebates, let alone Caremark's conduct on behalf of non-FEHBA plans.

**C.    ESI Does Not Have a Colorable Federal Defense**

ESI raises two potential federal defenses: preemption under the TRICARE statute, 10 U.S.C. § 1103(a) and its associated regulation, and the government contractor defense. ECF 1 at 17-19. Neither are colorable.

**1.    The TRICARE Preemption Defense Is Not Colorable**

ESI's principle purported federal defense is express preemption under the TRICARE statute, and the statute's implementing regulation. ECF 1 at 18-19. Because the post-removal disclaimers limit the People's lawsuit to challenging ESI's civilian conduct, as a matter of law ESI does not have a TRICARE preemption defense. Further, ESI's assertion that the disclaimer cannot undercut its preemption defense should be rejected as unsupported and unsupportable.

The TRICARE statute states it preempts "[a] law or regulation of a State or local government relating to health insurance, prepaid health plans, or other health care delivery or financing methods," from applying to "any contract entered into pursuant to [Title 10, Chapter 55 of the U.S. Code] by the Secretary of Defense or the administering Secretaries to the extent" those officials engage in rulemaking regarding preemption. 10 U.S.C. § 1103(a). The Secretary of Defense used this statutory authority to promulgate a regulation stating that "any State or local law relating to health insurance, prepaid health plans, or other health care delivery or

1   financing methods is preempted and does not apply in connection with TRICARE
2   regional contracts." 32 C.F.R. § 199.17(a)(7)(ii).

3       Because the People's post-removal disclaimers carve out conduct and
4   remedies relating to military plans, the People's application of California law in this
5   lawsuit does not fall within the scope of those preemption standards. This
6   conclusion hinges on the meaning of "relating to" in 10 U.S.C. § 1103(a) and 32
7   C.F.R. § 199.17(a)(7)(ii).

8       To interpret the "relating to" phrase in 10 U.S.C. § 1103(a) and 32 C.F.R.
9   § 199.17(a)(7)(ii), this Court can look to how FEHBA precedent interprets that
10  phrase. *See Nevils*, 581 U.S. at 99 n.4 (recognizing TRICARE's preemption statute
11  is similar to FEHBA's). And, when analyzing FEHBA preemption, the Ninth
12  Circuit has referenced ERISA case law. *See supra* Argument § IV.B.1.

13      Because of the People's post-removal disclaimers, this lawsuit is expressly *not*
14  challenging ESI's conduct for TRICARE plans or seeking any remedies relating to
15  that conduct. Thus, a judgment against ESI in this action, and any resulting
16  injunction against ESI regarding its civilian conduct, will not bear on, and hence
17  does not relate to, TRICARE plan choices.[5] *See Rutledge*, 592 U.S. at 88. A
18  contrary finding—that an injunction regarding ESI's civilian conduct is nonetheless
19  preempted by TRICARE even when it would not dictate TRICARE plan choices—
20  would conflict with the text of the TRICARE statute. *See R.J. Reynolds Tobacco*,
21  29 F.4th at 552-53 (scope of preemption must be consistent with statutory text). ESI
22  cannot plausibly claim Congress intended to, or in statutory language did, extend
23  TRICARE program preemption to PBMs' conduct for *non-military* clients. To the
24  contrary, the statutory purpose of the program is only to benefit military members
25  and their dependents. 10 U.S.C. § 1071 (TRICARE's purpose).

26
27  _____
    [5] *Arlington County*, 996 F.3d 243 does not support ESI's position on preemption.
28  That case did not involve a challenge to civilian conduct.

### 2. The Government Contractor Defense Is Not Colorable

The second purported federal defense ESI identified in its notice of removal is the government contractor defense. ECF 1 at 17-18. There is no basis for this Court to find the defense colorable.

The government contractor defense "shields contractors from tort liability in state or federal actions where plaintiffs allege that they sustained injuries as a result of exposure to defective products or equipment manufactured or supplied under a government contract." *Rodriguez v. Lockheed Martin Corp.*, 627 F.3d 1259, 1265 (9th Cir. 2010). In this circuit, the government contractor defense "is only available to contractors who design and manufacture military equipment." *Cabalce*, 797 F.3d at 731 (citation omitted). ESI is a PBM and does not allege it designs or manufactures military equipment. As such, ESI has not pleaded sufficient facts to demonstrate it has a colorable government contractor defense. *See id.* In addition, the People's post-removal disclaimers undercut this defense since the People are only challenging ESI's civilian conduct as a result.

## V. THE COURT SHOULD REJECT ANY OPPOSITION ARGUMENT BY THE PBMS THAT THE POST-REMOVAL DISCLAIMERS ARE ILLUSORY SINCE REMAND IS REQUIRED EVEN ABSENT THE DISCLAIMERS

Even assuming for the sake of argument this Court accepts the PBMs' arguments the post-removal disclaimers are illusory, remand is still appropriate.[6]

### A. Caremark Provides OPM a Normal Commercial Product

Setting aside that Caremark cannot show OPM controls its non-FEHBA plan conduct, Caremark's "acting under" argument also fails because it cannot show it "acts under" OPM when it provides services to FEHBA plans.

Similar to normal regulatory relationships between a company and a federal

---

[6] Although this Court noted in its remand order that Caremark's and ESI's conduct "appear[s] to fall somewhere between" *Goncalves*, 865 F.3d 1237 and *San Mateo*, 32 F.4th 733, ECF 109 at 10, this Court did not ultimately decide whether Caremark or ESI satisfy the "acting under" prong. In light of the Ninth Circuit's remand instruction, ECF 133 at 4, it would be appropriate to revisit the issue of whether Caremark and ESI are "acting under" federal authority.

officer that fail to meet the "acting under" prong due to a lack of "detailed supervision," *supra* Argument § II.A, a normal commercial relationship between a defendant and a federal officer also fails to demonstrate that the defendant is "acting under" the federal officer. *See Honolulu*, 39 F.4th at 1108 (stating "typical commercial relationship" does not satisfy "acting under" prong). For example, a defendant that "enters into an arm's-length business arrangement with the federal government or supplies it with widely available commercial products or services" is not "acting under" a federal officer. *San Mateo*, 32 F.4th at 757. Likewise, where the federal government and the defendant have entered a contract, but the contract defines the defendant's duties "in general terms" and the defendant is "the one who decide[s] how to fulfill those duties," then the defendant is not "acting under" a federal officer. *Honolulu*, 39 F.4th at 1110 (discussing *Cabalce*, 797 F.3d at 728).

Caremark's assertion that its FEHBA and non-FEHBA conduct is indistinguishable demonstrates that it entered an arm's length commercial arrangement with FEHBA plans to provide generally available commercial services. That is, Caremark chose on its own volition to conduct rebate negotiations on behalf of all its clients at the same time, and then provided FEHBA plans with the same rebates it negotiated for private clients. Such conduct fails to satisfy the "acting under" requirement. *San Mateo*, 32 F.4th at 757; *Honolulu*, 39 F.4th at 1108. As recently held by the Northern District of West Virginia:

> Caremark admits that "[n]one of the rebates that Caremark negotiates for insulin is exclusive to FEHBA plans; rather, all insulin rebate negotiations that involve FEHBA plans involve non-FEHBA plans as well." (Citation.) . . . . The fact that Caremark made the business decision to "conduct[] rebate negotiations simultaneously on behalf of a large number of clients, including FEHBA plans" does not constitute the type "of help or assistance necessary to bring a private [entity] within the scope of the statute." Caremark provides no evidence that OPM required Caremark to conduct its rebate negotiations simultaneously.

*McCuskey*, 2024 U.S. Dist. LEXIS 160669, at *20-21.

Furthermore, the FEHBA Standard Contract reflects that OPM is "relying on

the expertise of [PBMs] and not vice versa." *Cabalce*, 797 F.3d at 728 (quotation marks and citation omitted). Rather than dictating whether or how Caremark should negotiate rebates on behalf of OPM, the FEHBA Standard Contract requires only general duties that do not reflect supervision or control. Specifically, OPM requires health plan quarterly and annual reports regarding manufacturer payments (including rebates), "pass-through transparent pricing" reports that reflect rebates, crediting the FEHBA plan with the rebates properly allocated to the FEHBA plan, and that, on request by OPM, the PBM will provide copies of its contracts with pharmaceutical manufacturers. FEHBA Standard Contract at I-18-19. These purported duties are described in "general terms" and do not reflect "federal supervision or control in developing" how PBMs negotiate for drug rebates for FEHBA plans. *See Cabalce*, 797 F.3d at 728; *see also Honolulu*, 39 F.4th at 1110 (holding duties imposed in "general terms" not sufficient to meet "acting under" prong). In short, the FEHBA Standard Contract is consistent with the conclusion that Caremark provides FEHBA plans an off-the-shelf service. *See San Mateo*, 32 F.4th at 757; *McCuskey*, 2024 U.S. Dist. LEXIS 160669, at *20 ("The contractual terms that Caremark identifies in its opposition do not reflect anything more than standard PBM services they provide to their non-federal clients.").

Finally, the cases Caremark cites in its Supplemental Notice of Removal are inapposite and do not support its position on the "acting under" prong. ECF 5 at 5-9. For example, in *Goncalves*, the plaintiff was a FEHBA beneficiary suing over a FEHBA plan's subrogation efforts to recover FEHBA benefit payments. 865 F.3d at 1242-43. The court found the plan satisfied the "acting under" prong by showing it was OPM's agent. *Id.* at 1247. Here, in contrast, Caremark is simply providing "off-the-shelf services for FEHBA plans which are no different than services they provide to non-FEHBA plans." *McCuskey*, 2024 U.S. Dist. LEXIS 160669, at *20; *see Washington v. Monsanto Co.*, 738 F. App'x 554, 555 (9th Cir. 2018) (federal purchase of "off-the-shelf" products does not meet "acting under" prong).

### B.   Rebates Are Not FEHBA Benefits or Payments for Benefits

As discussed in Argument § IV.B.1, insulin rebates are not FEHBA benefits nor payments for FEHBA benefits. Moreover, even assuming for the sake of an argument that an injunction were issued against Caremark's FEHBA insulin rebate practices (which this action does *not* seek due to the post-removal disclaimers), the nationwide uniformity of FEHBA benefits would not be affected. Thus, Caremark would lack a FEHBA preemption defense in this action even if the People had not made post-removal disclaimers. *See In re Anthem*, 162 F. Supp. 3d at 1015 (holding UCL data breach claim not expressly or conflict preempted by FEHBA because privacy is not a FEHBA benefit and lawsuit would not undermine plan uniformity).

### C.   ESI Does Not Negotiate Insulin Rebates for TRICARE Plans

ESI does not claim to negotiate insulin rebates for TRICARE plans. ECF 1. Additionally, the TRICARE contract states: "The Contractor shall not negotiate or collect any pharmaceutical rebates, data-use rebates, or vendor charge-backs of any type from pharmaceutical manufacturers . . . on behalf of the Government or for itself in regard to the services performed under this contract." ECF 1-2 at 59 (¶ C.6.1.13). The People do not need to disclaim ESI's TRICARE insulin rebate negotiations since there are no such practices.[7]

### VI.   THIS COURT SHOULD REMAND THE ACTION, INCLUDING GRANTING REMAND PURSUANT TO ITS DISCRETIONARY AUTHORITY

As this Court recognized in its June 28, 2023, remand order, a plaintiff may make claim disclaimers after the defendant removes the case to federal court. ECF 109 at 11 n.5 (citing, e.g., *Marcher v. Air & Liquid Sys. Corp.*, 2022 WL 562268, at *2 (C.D. Cal. Feb. 24, 2022)). If a plaintiff eliminates subject matter jurisdiction after removal, a district court then addresses whether it would be an appropriate use of its discretion to remand the action to state court. *Watkins v. Grover*, 508 F.2d

---

[7] DoD purported control over the TRICARE formulary and claim adjudication (ECF 1 at 6-10) is irrelevant to the "acting under" test. Contract terms on such "collateral points" show mere regulatory compliance. *Lake*, 14 F.4th at 1005.

920, 921 (9th Cir. 1974); *see Marcher*, 2022 WL 562268, at *2 (using discretion to remand in light of post-removal disclaimer). This discretion is like the discretion a court has to decline supplemental jurisdiction over state law claims under 28 U.S.C. § 1367 once it dismisses all claims that support federal question jurisdiction. *See Healthcare Venture Partners*, 2021 WL 5194662, at *9 n.5; *see Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 911 (9th Cir. 2011) (discussing discretionary dismissal under Section 1367); *Wood*, 764 F.3d at 326 (affirming discretionary remand).

Although this Court previously found the People's lawsuit "implicate[s] strong state interests in having the suit heard in state court," and there was "no evidence of judicial manipulation or forum shopping" by the People, the remand order did not explicitly and expressly state it was granting remand based on this Court's discretionary authority. ECF 109 at 14 & n.8. To the extent this Court grants remand based on the People's post-removal disclaimers (i.e., Argument §§ I-IV), this Court should now make clear it is using its discretion to grant remand since this Court's prior analysis is correct. *See Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012) (stating when state attorney general brings an action asserting state consumer protection claims to protect state residents, "the claim of sovereign protection from removal arises in its most powerful form") (citation omitted); *Trustees of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925-26 (9th Cir. 2003) (recognizing Section 1367 reflects concern "needless [federal court] decisions of state law should be avoided") (citation and alteration omitted).

### CONCLUSION

For the foregoing reasons, the People respectfully request this Court re-affirm its prior remand decision, and the Clerk of this Court immediately mail a certified copy of the renewed remand decision to the Clerk of the Los Angeles County Superior Court pursuant to 28 U.S.C. § 1447(c).

1    Dated:  September 18, 2024        Respectfully submitted,

2                                 ROB BONTA
                                   Attorney General of California

3                                 NELI PALMA
                                 Senior Assistant Attorney General

4                                 EMILIO VARANINI
                                 Supervising Deputy Attorney General

5

6

7                                 */s/ Darcie Tilly*
                                DARCIE TILLY

8                                 Deputy Attorney General
                                *Attorneys for the People of the State of*

9                                 *California*

10                                 LAUREN ZWEIER
                                (Lauren.Zweier@doj.ca.gov)

11                                 Deputy Attorney General
                                455 Golden Gate Ave., Suite 11000

12                                 San Francisco, CA 94102
                                Telephone: (415) 510-4400

13

14                                 JOHN OHANESIAN
                                (John.Ohanesian@doj.ca.gov)

15                                 Deputy Attorney General
                                300 South Spring Street, Suite 1702

16                                 Los Angeles, CA 90013-1230
                                Phone: (213) 269-6000

17                                 RYAN MCEWAN
                                (Ryan.McEwan@doj.ca.gov)

18                                 Deputy Attorney General
                                1300 "I" Street

19                                 Sacramento, CA 95814-2919
                                Phone: (916) 210-7548

20

21                                 *Attorneys for the People of the State of California*

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the People of the State of California certifies that this brief does not exceed twenty-five (25) pages, excluding the caption, the table of contents, the table of authorities, the signature block, and this certification, which complies with the Standing Order Regarding Newly Assigned Cases. ECF 10 & https://www.cacd.uscourts.gov/sites/default/files/documents/SPG/AD/Standing%20Order%20for%20Civil%20Cases%2010-24-23.pdf.

*/s/ Darcie Tilly*
Darcie Tilly