1  MORGAN, LEWIS & BOCKIUS LLP
   Joseph Duffy, Bar No. 241854
2  300 South Grand Avenue
   Twenty-Second Floor
3  Los Angeles, CA  90071-3132
   Tel:   +1.213.612.2500
4  Fax:  +1.213.612.2501
   joseph.duffy@morganlewis.com
5
6  Attorneys for Defendant
   EXPRESS SCRIPTS, INC.
7
   (additional counsel listed on the signature page)
8

9               UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

12  PEOPLE OF THE STATE OF            Case No. 2:23-cv-01929-SPG-SK
    CALIFORNIA,
13                                    **EXPRESS SCRIPTS'**
                 Plaintiff,           **OPPOSITION TO RENEWED**
14                                    **MOTION TO REMAND**
           vs.
15                                    Date:       October 30, 2024
    ELI LILLY AND COMPANY *et al.*    Time:       1:30 p.m.
16                                    Judge:      Hon. Sherilyn Peace
                 Defendants.                      Garnett
17                                    Courtroom:  5C

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
   LOS ANGELES

2:23-cv-01929-SPG-SK

# **TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................. 1

BACKGROUND ............................................................................................... 2

ARGUMENT .................................................................................................... 3

I.     The Mandate Rule Bars This Court from Simply Re-Affirming
Its Prior Reversed Order. .................................................................... 3

II.    Express Scripts Satisfied Every Element to Support Federal
Officer Removal. ................................................................................. 6

     A.    Express Scripts Satisfies the "Causal Nexus" Element. ............. 6

          1.    The State's Disclaimers Cannot Impact Express
Scripts' Allegations That It Was "Acting Under" a
Federal Officer. ............................................................... 7

          2.    Express Scripts' Actions for TRICARE Are
Connected or Associated with the State's Claims. ........ 10

               (a)    The Connection Prong Is Satisfied Because
the State Failed to Offer a Disclaimer Not
Previously Rejected by the Ninth Circuit. ........... 10

               (b)    The State's Pursuit of Civil Penalties Creates
a Connection or Association with TRICARE. ...... 11

     B.    The State Fails to Show Express Scripts' Defenses Are
Not Colorable. .......................................................................... 14

III.    The State Has Not Shown That the Court Should Decline to
Exercise Supplemental Jurisdiction over This Action. ...................... 17

IV.    The Court Lacks Jurisdiction After an Appeal is Noticed to
Return the Case to Superior Court Until the Jurisdictional
Appeal Is Exhausted. ......................................................................... 20

CONCLUSION ................................................................................................ 24

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-01929-SPG-SK                                i                    ESI'S OPPOSITION TO RENEWED
MOTION TO REMAND

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.O.A. v. Rennert*,
  2023 WL 8641601 (E.D. Mo. Sept. 5, 2023) ................................................ 22, 23

*Acad. of Country Music v. Cont'l Cas. Co.*,
  991 F.3d 1059 (9th Cir. 2021) ........................................................................... 24

*Alvarez v. Hill*,
  518 F.3d 1152 (9th Cir. 2008) ........................................................................... 16

*Am. Motorcycle Ass'n v. Super. Ct.*,
  578 P.2d 899 (Cal. 1978) ................................................................................... 13

*Arizona v. Manypenny*,
  451 U.S. 232 (1981) ............................................................................................. 3

*Attorney General v. Dow Chem. Co.*,
  2024 WL 3361395 (D.N.J. July 9, 2024) ........................................................... 23

*Aurecchione v. Schoolman Transp. Sys., Inc.*,
  426 F.3d 635 (2d Cir. 2005) .............................................................................. 16

*Biggs v. Sec'y of California Dep't of Corr. & Rehab.*,
  717 F.3d 678 (9th Cir. 2013) ............................................................................. 22

*Burke v. Cnty. of Alameda*,
  2010 WL 11614554 (N.D. Cal. Sept. 3, 2010) .................................................... 6

*Carnegie-Mellon Univ. v. Cohill*,
  484 U.S. 343 (1988) ..................................................................................... 18, 19

*Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharmacy, Inc.*,
  996 F.3d 243 (4th Cir. 2021) ............................................................................... 8

*Cnty. of San Mateo v. Chevron Corp.*,
  32 F.4th 733 (9th Cir. 2022) ............................................................................... 6

*Coinbase, Inc. v. Bielski*,
  599 U.S. 736 (2023) .................................................................... 20, 21, 22, 23

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-01929-SPG-SK                    ii                    ESI'S OPPOSITION TO RENEWED
                                                                    MOTION TO REMAND

*Creech v. Tewalt*,
    84 F.4th 777 (9th Cir. 2023) ................................................................... 4

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
    574 U.S. 81 (2014) ................................................................................ 16

*DeFiore v. SOC LLC*,
    85 F.4th 546 (9th Cir. 2023) ........................................................... passim

*Durham v. Lockheed Martin Corp.*,
    445 F.3d 1247 (9th Cir. 2006) ......................................................... 3, 16

*Fisher v. Univ. of Texas at Austin*,
    758 F.3d 633 (5th Cir. 2014) ................................................................... 5

*Fontana v. Haskin*,
    262 F.3d 871 (9th Cir. 2001) ................................................................ 16

*Forty Six Hundred LLC v. Cadence Educ., LLC*,
    15 F.4th 70, 81 (1st Cir. 2021) ......................................................... 23, 24

*Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*,
    865 F.3d 1237 (9th Cir. 2017) ............................................................. 6, 7

*Gordy v. CareMore Health Plan*,
    2019 WL 1237421 (C.D. Cal. Mar. 18, 2019) ....................................... 3

*Griggs v. Provident Consumer Disc. Co.*,
    459 U.S. 56 (1982) ........................................................................... 20, 21

*Healthcare Venture Partners, LLC v. Anthem Blue Cross & Blue Shield*,
    2021 WL 5194662 (S.D. Ohio Nov. 8, 2021) ................................... 18, 19

*In re Ameriquest Mortg. Co. Mortg. Lending Pracs. Litig.*,
    2013 WL 4718958 (N.D. Ill. Sept. 3, 2013) .................................... 19, 20

*In re Citigroup, Inc., Cap. Accumulation Plan Litig.*,
    2003 WL 27385584 (D. Mass. July 9, 2003) ...................................... 19

*In re Coudert Bros. LLP*,
    809 F.3d 94 (2d Cir. 2015) ..................................................................... 5

*In re Methyl Tertiary Butyl Ether* ("*MTBE*") *Prod. Liab. Litig.*,
    399 F. Supp. 2d 340 (S.D.N.Y. 2005) ................................................. 19

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-01929-SPG-SK         iii         ESI'S OPPOSITION TO RENEWED
MOTION TO REMAND

*In re New England Mut. Life Ins. Co. Sales Pracs. Litig.*,
2003 WL 25953191 (D. Mass. May 20, 2003) ................................................. 19

*In re Sanford Fork & Tool Co.*,
160 U.S. 247 (1895) ........................................................................................ 4

*Jefferson Cnty., Ala. v. Acker*,
527 U.S. 423 (1999) ................................................................................. 9, 14

*Johnson v. Barr*,
79 F.4th 996 (9th Cir. 2023) ............................................................................. 6

*Latiolais v. Huntington Ingalls, Inc.*,
951 F.3d 286 (5th Cir. 2020) ........................................................................... 7

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ........................................................... 6, 7, 9, 17

*Magnin v. Teledyne Cont'l Motors*,
91 F.3d 1424 (11th Cir. 1996) ....................................................................... 17

*NewGen, LLC v. Safe Cig, LLC*,
840 F.3d 606 (9th Cir. 2016) ......................................................................... 16

*Newtok Vill. v. Patrick*,
21 F.4th 608 (9th Cir. 2021) ............................................................................ 9

*Nguyen v. United States*,
792 F.2d 1500 (9th Cir. 1986) .......................................................................... 4

*Pacific Maritime Ass'n v. Mead*,
246 F. Supp. 2d 1087 (N.D. Cal. 2003) ............................................................ 3

*Patel v. Del Taco, Inc.*,
446 F.3d 996 (9th Cir. 2006) ......................................................................... 22

*People ex rel. Kennedy v. Beaumont Inv., Ltd.*,
3 Cal. Rptr. 3d 429 (Cal. Ct. App. 2003) ...................................................... 13

*People of the State of California v. Express Scripts, Inc.*,
No. 23-55599 (Dec. 15, 2023), ECF No. 27 ............................................... 5, 20

*People v. Johnson & Johnson*,
292 Cal. Rptr. 3d 424 (Cal. Ct. App. 2022) ................................................... 13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-01929-SPG-SK

iv

ESI'S OPPOSITION TO RENEWED
MOTION TO REMAND

*People v. Super. Ct. (Olson)*,
    157 Cal. Rptr. 628 (Cal. Ct. App. 1979) ........................................................... 13

*Perry v. Alabama Alcoholic Beverage Control Bd.*,
    248 F. Supp. 3d 1246 (M.D. Ala. 2017) ........................................................... 5

*Plaquemines Par. v. BP Am. Prod. Co.*,
    103 F.4th 324 (5th Cir. 2024) ........................................................................... 9

*San Francisco Herring Ass'n v. Dep't of the Interior*,
    946 F.3d 564 (9th Cir. 2019) ........................................................................... 4

*Satey v. JPMorgan Chase & Co.*,
    521 F.3d 1087 (9th Cir. 2008) ........................................................................ 18

*Skilstaf, Inc. v. CVS Caremark Corp.*,
    669 F.3d 1005 (9th Cir. 2012) ........................................................................ 12

*Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
    159 F.3d 1209 (9th Cir. 1998) ........................................................................ 17

*St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem. Co.*,
    990 F.3d 447 (5th Cir. 2021) ........................................................................... 9

*Stevens v. F/V Bonnie Doon*,
    731 F.2d 1433 (9th Cir. 1984) ........................................................................ 4

*United States v. Kellington*,
    217 F.3d 1084 (9th Cir. 2000) ........................................................................ 4

*United States v. Trump*,
    706 F. Supp. 3d 91 (D.D.C. 2023) ................................................................. 23

*Watson v. Philip Morris Cos., Inc.*,
    551 U.S. 142 (2007) .................................................................................. 7, 8

*Williams v. Costco Wholesale Corp.*,
    471 F.3d 975 (9th Cir. 2006) ................................................................... 11, 17

**Statutes**

10 U.S.C. § 1103(a) ........................................................................................ 15

28 U.S.C. § 158(d)(2)(D) ................................................................................. 21

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-01929-SPG-SK      v      ESI'S OPPOSITION TO RENEWED
MOTION TO REMAND

28 U.S.C. § 1292(b) ............................................................................................ 21

28 U.S.C. § 1292(d)(3) ....................................................................................... 21

28 U.S.C. § 1367 ................................................................................................. 18

28 U.S.C. § 1407(a) ............................................................................................ 20

28 U.S.C. § 1442 ............................................................................... 3, 16, 18, 22

28 U.S.C. § 1442(a) .............................................................................................. 2

28 U.S.C. § 1442(a)(1) .................................................................................... 3, 18

28 U.S.C. § 1447(c) ............................................................................................ 20

28 U.S.C. § 1447(d) .............................................................................................. 2

28 U.S.C. § 1653 ................................................................................................. 16

28 U.S.C. § 2111 .................................................................................................. 6

28 U.S.C. § 7292 ................................................................................................. 21

28 U.S.C. § 7482 ................................................................................................. 21

42 U.S.C. § 1395w-3a(c)(6)(B) .......................................................................... 11

48 U.S.C. § 2166(e)(6) ....................................................................................... 21

**Rules**

Fed. R. Civ. P. 8 ................................................................................................. 16

Fed. R. Civ. P. 23(f) ........................................................................................... 21

Fed. R. Civ. P. 61 ................................................................................................. 6

**Regulations**

32 C.F.R. § 199.17(a)(7) ..................................................................................... 15

**Other Authorities**

14C Mary Kay Kane et al., *Federal Practice and Procedure* (Wright & Miller) § 3726 (Rev. 4th ed. 2024) ................................................................. 18

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-01929-SPG-SK                    vi                    ESI'S OPPOSITION TO RENEWED
MOTION TO REMAND

# **INTRODUCTION**

As to Express Scripts, the State's challenge to removal always has rested entirely on the sufficiency of its disclaimers. The State has never disputed that Express Scripts is "acting under" the Department of Defense ("DoD") when performing its obligations for TRICARE; rather, the State contends that its disclaimers effectively sever the connection or association (the "causal nexus") between the State's claims and such federal conduct. Likewise, the State's sole challenge to Express Scripts' preemption defense is that its disclaimers remove TRICARE from the case.

When the Ninth Circuit rejected the sufficiency of the State's disclaimers as of the time of removal, it materially shifted the analysis the State would be asking this Court to make on remand as to Express Scripts because this time around the State is relying entirely on post-removal disclaimers. In its "renewed" motion to remand, the State asks the Court to credit its later-advanced disclaimers to excise Express Scripts' federal defenses, thereby eliminating (in the State's view) the federal grounds on which removal was originally proper. Not only does that effort fail on the merits, but the standard for such an inquiry is discretionary rather than mandatory, and the State utterly fails to show why this Court should exercise its discretion to decline jurisdiction now, after its original grounds for challenging removal were rejected.

In substance, the State now urges the Court to ignore the Ninth Circuit's reversal and order remand for the same reasons this Court provided in the original remand order. This Court should reject the State's invitation to treat the Ninth Circuit's mandate so dismissively. Preliminarily, the mandate precludes a finding that the State effectively disclaimed Express Scripts' federal conduct under TRICARE. Even the State's post-removal expanded disclaimers, if credited, fail to sever the nexus between the State's claims and Express Scripts' federal conduct. And even assuming the Court were inclined to agree with the State, declining

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-01929-SPG-SK

ESI'S OPPOSITION TO RENEWED
MOTION TO REMAND

supplemental jurisdiction is discretion the Court should not exercise here, given the plain efficiencies gained by remaining in the federal system after an MDL proceeding was created. Accordingly, to the extent this Court opts to consider the renewed motion to remand before the case is transferred to the MDL proceeding, it should deny the relief sought.

## **BACKGROUND**

On March 15, 2023, Express Scripts timely removed the matter to this Court pursuant to 28 U.S.C. § 1442(a) based on the State's allegations implicating Express Scripts' obligations to the DoD pursuant to the TRICARE statute and contract with the DoD (ECF No. 1) ("NoR"). Express Scripts attached a copy of its contract with the DoD to its Notice of Removal (ECF No. 1-2) (the "TRICARE Contract"), and explained how the State's claims conflict with Express Scripts' obligations to perform under its contract with the DoD in a way that implicates federal defenses. In particular, Express Scripts demonstrated that each of the three elements required for federal officer removal existed: (1) Express Scripts is a person under the federal officer statute (NoR ¶ 19); (2) the conduct challenged by the State is related to Express Scripts' actions for a federal officer (NoR ¶¶ 20–55); and (3) Express Scripts has the colorable federal defenses of government contractor immunity and preemption (*id.* ¶¶ 56–61).

The State moved to remand on April 14, 2023. ECF No. 78. This Court granted the motion in a written order on June 28, 2023. ECF No. 109 (the "Remand Order.") Express Scripts and Defendant CaremarkPCS Health, LLC, which also removed, appealed the order granting remand under 28 U.S.C. § 1447(d). *See* ECF Nos. 113 and 118. On August 13, 2024, the Ninth Circuit issued a memorandum decision reversing and remanding the Remand Order, and asking the district court "to analyze California's remaining arguments for remanding to state court." ECF

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-01929-SPG-SK                    2                    ESI'S OPPOSITION TO RENEWED
MOTION TO REMAND

No. 133.  As to Express Scripts, the State relies on its disclaimers in response to each prong of the removal analysis.

## **ARGUMENT**

Under 28 U.S.C. § 1442(a)(1), any person "acting under" a federal officer who is sued "for or relating to any act under color of such office" is authorized to remove a case to federal court.  Although Express Scripts as the removing party bears the burden of demonstrating that the Court has subject-matter jurisdiction, *Pacific Maritime Ass'n v. Mead*, 246 F. Supp. 2d 1087, 1089 (N.D. Cal. 2003), the federal officer removal statute stands apart from other removal statutes. Driven by the purpose of ensuring maximum protections for federal officers and their agents, the Supreme Court has instructed lower courts that "the policy favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).  Thus, when a defendant invokes federal officer removal, the normal presumption against removal does not apply.  *See, e.g.*, *Gordy v. CareMore Health Plan*, 2019 WL 1237421, at *2 (C.D. Cal. Mar. 18, 2019). On the contrary, courts must "interpret section 1442 broadly in favor of removal." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

## I. **The Mandate Rule Bars This Court from Simply Re-Affirming Its Prior Reversed Order.**

The State asks the Court to "re-affirm" its prior remand decision.  Pl. Br. 2. As the State puts it, the "Ninth Circuit did not disagree" with the Court's prior order regarding the validity of the State's post-removal disclaimers.  *Id.* at 3.  In other words, even though the Ninth Circuit *reversed* this Court's prior remand order, the State suggests the Court can simply excise the portion of the remand order expressly identified as reversible error and re-issue the rest of its prior order without further analysis.

The State is wrong. Ignoring the Ninth Circuit's reversal of the remand order violates the rule of mandate, a "basic feature of the rule of law in an appellate scheme." *San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 574 (9th Cir. 2019) (cleaned up). Simply put, the mandate rule "forecloses the lower court from reconsidering matters determined in the appellate court." *Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir. 1986).

In determining the matters previously determined by the appellate court, a hyper-literal reading will not do. Instead, a district court "must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Creech v. Tewalt*, 84 F.4th 777, 787 (9th Cir. 2023). Thus, the mandate covers not only issues "expressly" addressed by the appellate court, but also issues "impliedly disposed of on appeal." *Stevens v. F/V Bonnie Doon*, 731 F.2d 1433, 1435 (9th Cir. 1984). In deciding what was impliedly disposed of on appeal, courts must consider "what was heard and decided" by the appellate court. *United States v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000) (citing *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256 (1895)).

The Ninth Circuit heard and rejected the State's argument that its post-removal arguments were sufficient to defeat removal. The Ninth Circuit reversed on the grounds that the State's "disclaimer fails to *explicitly* release claims or possible recovery from rebate practices as they relate to FEHBA and TRICARE." ECF No. 133 at 3. The State claims the Ninth Circuit "limited its ruling to the *Complaint's* disclaimer" rather than its post-removal disclaimers. Pl. Br. 1 (emphasis added). But that narrow reading of the Ninth Circuit's opinion ignores that the State placed the viability of those post-removal disclaimers squarely before the Ninth Circuit. This Court's original remand order relied in part on the State's post-removal disclaimers. Remand Order at 11 ("[T]he Court examines whether the disclaimer in the Complaint, and Plaintiff's subsequent waivers, are sufficient to remove any causal

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-01929-SPG-SK

4

ESI'S OPPOSITION TO RENEWED
MOTION TO REMAND

nexus that might otherwise have existed between Plaintiff's Claims and the DoD or OPM"); *see also id.* at 11 n.5 (explaining that the Court would and did consider post-removal disclaimers); *id.* at 13 n.6 (reiterating "the Court credits the post-removal waiver here"). And the State devoted *an entire section* of its answering brief to the Ninth Circuit arguing that its post-removal waivers support affirmance of the remand order. Plaintiff-Appellee's Answering Brief, *People of the State of California v. Express Scripts, Inc.*, 23-55599 (Dec. 15, 2023), ECF No. 27, at 34–37. In that section, the State expressly urged the Ninth Circuit to affirm on the alternative basis of the post-removal disclaimers. *See id.* at 34 ("[T]he Court may still affirm the district court's remand decision . . . because the People's post-removal clarifying statements rectified any remaining issues."). And the State pointed to the post-removal disclaimers it previously made to this Court in its brief supporting the original remand motion. *Id.* at 35 ("The Complaint does not challenge how the federal government provides [TRICARE] health benefits."); ("The People are not asserting claims related to . . . TRICARE against either PBMs or Manufacturers.").

In short, the State's post-removal disclaimers were heard by the Ninth Circuit, but the Ninth Circuit declined to affirm the remand order on that basis. When an appellate court was "fully aware of the [trial] court's alternative holding and could have adopted it," but declined to affirm, that holding is "impliedly foreclosed" by the mandate. *In re Coudert Bros. LLP*, 809 F.3d 94, 100–01 (2d Cir. 2015); *see also Fisher v. Univ. of Texas at Austin*, 758 F.3d 633, 640 (5th Cir. 2014) (mandate rule precluded re-litigation of standing issue previously resolved by Fifth Circuit when Supreme Court reversed but did not address the standing issue "although it was squarely presented to it"); *Perry v. Alabama Alcoholic Beverage Control Bd.*, 248 F. Supp. 3d 1246, 1253 (M.D. Ala. 2017) (issue raised in appellate brief but unaddressed by appellate court were included in mandate "by necessary implication"). Thus, "[d]espite the [State's] cavalier suggestions to the contrary, this Court is not free to

ignore the Ninth Circuit's mandate and reconsider the very issue upon which this Court was reversed." *Burke v. Cnty. of Alameda*, 2010 WL 11614554, at *4 (N.D. Cal. Sept. 3, 2010).[1]

## II. Express Scripts Satisfied Every Element to Support Federal Officer Removal.

Removal under the federal officer removal statute is proper when a removing party shows that "(1) it is a 'person' within the meaning of the statute, (2) a causal nexus exists between plaintiffs' claims and the actions [defendant] took pursuant to a federal officer's direction, and (3) it has a 'colorable' federal defense to plaintiffs' claims." *Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014). The State does not challenge whether Express Scripts is a person within the meaning of the statute. And as a corporation, Express Scripts is a "person" for purposes of federal officer removal as a matter of law. *See Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017). Express Scripts has also met the remaining elements supporting federal officer removal.

### A. Express Scripts Satisfies the "Causal Nexus" Element.

To satisfy the "causal nexus" requirement, a removing party must show that it was "acting under a federal officer in performing some act under color of federal office, and (2) that such action is causally connected with the plaintiff's claims against it." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 755 (9th Cir. 2022) (cleaned up). Although still employing a "causal nexus" moniker, a removing party

---

[1] The State's contention that the Ninth Circuit reversed this Court's remand order without deciding an issue presented to it violates at least two settled principles of appellate procedure. First, the Ninth Circuit cannot reverse an order based on a harmless error. *See* 28 U.S.C. § 2111; Fed. R. Civ. P. 61. And, second, the Ninth Circuit was free to affirm "on any ground supported by the record even if not explicitly relied upon by the district court." *Johnson v. Barr*, 79 F.4th 996, 1003 (9th Cir. 2023). The Court should not lightly assume the Ninth Circuit would reverse and remand while disregarding its prior holdings.

does not need to show that acts under color of federal office are "***causally*** connected"

to a plaintiff's claims. *DeFiore v. SOC LLC*, 85 F.4th 546, 557 n.6 (9th Cir. 2023)

(citing *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en

banc)). Instead, the relevant standard is that a party can satisfy the nexus requirement

by showing plaintiff's claims are merely "***connected*** or ***associated*** with" the acts of

a federal officer. *Id.* (emphases added). In evaluating whether a causal nexus exists,

the Court must accept the removing party's "theory of the case." *Leite v. Crane Co.*,

749 F.3d 1117, 1124 (9th Cir. 2014).

### 1. The State's Disclaimers Cannot Impact Express Scripts' Allegations That It Was "Acting Under" a Federal Officer.

The words "acting under" are "broad" and the federal officer statute must be

"liberally" construed. *Goncalves*, 865 F.3d at 1245. Private entities are "acting

under" a federal officer when involved in "an effort to *assist*, or to help *carry out*, the

duties or tasks of the federal superior." *Watson v. Philip Morris Cos., Inc.*, 551 U.S.

142, 143 (2007). Express Scripts easily demonstrated that it assists and carries out

the duties of the federal officers managing the DoD TRICARE health-care program.

As explained in Express Scripts' Notice of Removal, the DoD contracted with

Express Scripts to provide pharmacy benefit managers to members of the DoD's

TRICARE health-care program across the country, including in California. NoR ¶ 2.

One of the benefits Express Scripts administers is the TRICARE Home

Delivery/Mail Order Pharmacy ("TMOP"). *Id.* ¶ 5. Express Scripts' obligations are

described in detail in the TRICARE Contract attached as Exhibit B to Express

Scripts' Notice of Removal.

Through the TRICARE Contract, the DoD establishes the requirements

applicable to Express Scripts and dictates nearly every aspect of Express Scripts'

responsibilities in supporting TRICARE. The TRICARE Contract requires the use

of a "DoD Uniform Formulary, a tiered cost sharing structure, and a preference for

generic over branded products." TRICARE Contract § C.1.4. The DoD formulary is "managed by the DoD Pharmacy and Therapeutics P&T Committee." *Id.* When it serves as a pharmacy benefit manager administering benefits at retail pharmacies, Express Scripts serves in a capacity as a "fiscal intermediary *on behalf of DoD* to pay for all authorized pharmaceutical and supplies dispensed for eligible beneficiaries at retail pharmacies." Ex. B § C.1.6 (emphasis added). Or, as the TRICARE Contract puts it, "the Government will be acquiring covered drugs with Government funds for use by the Government" when a TRICARE prescription is dispensed at retail network pharmacies. *Id.*

The DoD also sets specific requirements on Express Scripts about the collection of copayments for TRICARE beneficiaries when they fill a prescription for prescription drugs, including insulin products. If a TRICARE beneficiary filled a prescription for insulin at a retail pharmacy, Express Scripts must administer the claim in accordance with the DoD's formulary and cause a specific copayment to be charged to the TRICARE beneficiary in accordance with the copayment statute that Congress established. NoR ¶ 28–29. Similarly, if a TRICARE beneficiary fills a prescription using TMOP, Express Scripts must collect a copayment in accordance with the TRICARE Reimbursement Manual prepared by the DoD. NoR ¶ 30; TRICARE Contract § C.8.2. Given the level of control, Express Scripts is "essentially acting as the statutorily authorized alter ego of the federal government" under its agreement with the DoD. *Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 253 (4th Cir. 2021).

The State does not dispute that Express Scripts acts under a federal officer when it administers, adjudicates, or fills TRICARE beneficiary claims for insulin. Instead, the State argues that Express Scripts did not demonstrate that it acts under a federal officer for "civilian conduct," on the premise that the State's disclaimers supposedly "limit the scope of this action to ESI's civilian conduct." Pl. Br. at 9.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-01929-SPG-SK                        8                    ESI'S OPPOSITION TO RENEWED
                                                                      MOTION TO REMAND

As discussed below, those disclaimers fail to limit the scope of the action to civilian conduct. *See infra* § II.A.2. But more to the point, whether Express Scripts is acting under a federal officer must be determined based on Express Scripts' theory of the case—not the State's theory. The State may be the master of its Complaint. *Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021). But federal officer removal turns on the defendant's theory of the case, and the State most certainly is not the master of Express Scripts' jurisdictional theories presented in its notice of removal. *Leite*, 749 F.3d at 1124; *see also Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 432 (1999) ("credit[ing] [the removing defendants'] theory of the case for purposes of both elements of our jurisdictional inquiry").

To be sure, the State's claims and disclaimers can be pertinent to whether Express Scripts' alleged conduct under a federal officer is connected or associated with the State's claims for federal officer purposes—*i.e.*, the State gets to decide which conduct it is challenging. But the "acting under" and "connection" elements are "distinct." *St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem. Co.*, 990 F.3d 447, 454 (5th Cir. 2021). Having chosen to challenge conduct that under the defendant's theory is connected or associated with Express Scripts' obligations to a federal officer under TRICARE, the State cannot be heard to complain that *un*connected or *un*associated conduct was not taken "under" a federal officer, because that approach simply rejects the removing defendant's theory of the case. Doing so "impermissibly conflates the 'distinct' 'acting under' and 'connected or associated with' elements of the federal officer removal test." *Plaquemines Par. v. BP Am. Prod. Co.*, 103 F.4th 324, 335 (5th Cir. 2024). The "acting under" prong asks only whether the conduct on which the defendant's removal theory rests was taken under the authority of a federal actor. Here, there is no dispute that Express Scripts is "acting under" a federal officer when it discharges its obligations related to TRICARE. The State is free to challenge the causal nexus (the connection or

association) between its theory of relief and Express Scripts' federal obligations, but that challenge (which also fails, *see infra* § II.A.2) changes nothing about Express Scripts' TRICARE activities being taken "under" a federal officer.  The State simply has not refuted that Express Scripts acts under the DoD when engaged in activities that under Express Scripts' theory of removal relate to the conduct challenged by the State.

### 2.  Express Scripts' Actions for TRICARE Are Connected or Associated with the State's Claims.

The State has failed to show that its claims are not associated or connected with Express Scripts' work acting under a federal officer for two independent reasons.  First, the State lacks a disclaimer sufficient to undermine Express Scripts' allegations regarding any association or connection because the State has failed to offer a disclaimer beyond what the Ninth Circuit already rejected.  Second, even if the disclaimer were sufficient, its claims remain connected or associated with Express Scripts' work for TRICARE.

### (a)  The Connection Prong Is Satisfied Because the State Failed to Offer a Disclaimer Not Previously Rejected by the Ninth Circuit.

The Ninth Circuit expressly held that the disclaimer included in the State's complaint failed to defeat the causal connection element for federal officer removal. ECF No. 133 at 3.  And, as discussed above, the Ninth Circuit necessarily rejected the sufficiency of the State's post-removal disclaimers when it reversed the district court's decision finding such disclaimers sufficient to defeat a causal nexus.  *See supra* § I.  Whether unable or unwilling, the State has failed to proffer a disclaimer that "*explicitly* release[s] claims or possible recovery from rebate practices as they relate to FEHBA and TRICARE."  ECF No. 133 at 3.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-01929-SPG-SK

10

ESI'S OPPOSITION TO RENEWED
MOTION TO REMAND

Absent a viable disclaimer, Express Scripts plainly showed that its work for TRICARE is connected or associated with the State's claims. The State alleges that Defendants have conspired to artificially inflate the price of insulin, and as a result, customers throughout California are forced to pay higher out-of-pocket costs than they would absent the supposed scheme. NoR ¶ 34 (citing ECF No. 1-1 ("Compl.") ¶¶ 112, 207–213).[2] The State seeks to recover money—either in the form of restitution or civil penalties—based on out-of-pocket costs paid by California consumers. NoR ¶ 35 (citing Compl. at 46). Some of those out-of-payment costs are dictated by the TRICARE contract and federal law. *See* NoR ¶ 37; *see also supra* § II.A.2. At a minimum, the State's claims are connected or associated with the work Express Scripts performed on behalf of the DoD.

### (b) The State's Pursuit of Civil Penalties Creates a Connection or Association with TRICARE.

Even if the Court could credit the State's claim that "they are not suing over TRICARE" (Pl. Br. 3 at n. 1), the State's claims remain connected or associated with Express Scripts' work for TRICARE because the State *cannot* as a matter of law plead around the possibility of such a connection unless the State disclaims a pursuit of civil penalties entirely—something it has refused to do.

The inability to disclaim stems in part from the universal importance of the prescription drug list prices that are independently set by the Manufacturers. Compl. ¶ 103. One such list price is the WAC, or wholesale acquisition cost, which "is typically used in reference to a drug's undiscounted list price." Compl. ¶ 104 (citing 42 U.S.C. § 1395w-3a(c)(6)(B)). The WAC prices are published in databases administered by third-party entities. Compl. ¶ 104. Pharmacies purchase drugs from

---

[2] Although the State has now filed an amended complaint after the sustaining of a demurrer to its original complaint, the original complaint remains the operative pleading for determining subject-matter jurisdiction at the time of removal. *See, e.g.*, *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006).

wholesalers based on the WAC, Compl. ¶ 105, and consumers, including TRICARE beneficiaries, can fill those prescriptions at retail pharmacies. *Id.* ¶ 106.

For prescription drugs filled at such retail pharmacies, Express Scripts' performance under the TRICARE Contract is directly tied to the Manufacturers' list price. Section H of the TRICARE Contract details the "Retail Network Cost Control Incentive" that provides for Express Scripts to earn a "performance incentive" tied to achieving a percentage discount off the WAC that exceeds the percentage discounts it guaranteed the DoD. *See* TRICARE Contract § H-1.[3] Conversely, if Express Scripts fails to deliver the savings it guaranteed as compared to the WAC, Express Scripts is on the hook for the difference between the actual retail network reimbursement cost and its guarantees. *See id.* § H.1.2 In other words, the TRICARE Contract requires Express Scripts to have skin in the game in delivering discounts *tied to WAC* from the pharmacies within the TRICARE network.

Under its own theory of the case, the State could recover a civil penalty based solely on an increase in the WAC. The State alleges that the act of "artificially inflating the list prices of analog insulin, and maintaining an artificially inflated net price of analog insulin" is itself a violation of the Unfair Competition Law. Compl. ¶ 230.a. The State also seeks to recover from the Manufacturers various civil penalties for each "violation" of the UCL. Compl. at 46 ¶¶ E–G. And the State seeks to hold the PBMs jointly and severally liable with the other Defendants, including the Manufacturers. Compl. ¶ 62.

Put it all together and the State alleges that the Manufacturers' very act of increasing their list prices creates liability in the form of a per "violation" civil

---

[3] For drugs without a published WAC, the TRICARE Contract requires the use of a different list price, the AWP, or average wholesale price, for purposes of determining the appropriate incentive. TRICARE Contract at § H-1. Like the WAC, manufacturers set and publish the AWP for their drugs. *See Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1008 (9th Cir. 2012)

penalty against the Manufacturers. Given the State's refusal to abandon joint and several liability for such penalties, Express Scripts faces potential exposure based solely on the Manufacturers' decision to raise their list prices for insulin products. *See Am. Motorcycle Ass'n v. Super. Ct.*, 578 P.2d 899, 904 (Cal. 1978) ("[T]he joint and several liability concept reflects the legal conclusion that one individual may be held liable for the consequences of the negligent act of another.").

As Judge Ikuta recognized in her concurring opinion, no disclaimer can avoid this potential liability because:

> If Express Scripts were held liable for its conduct relating to relying on manufacturers' list prices, it would necessarily be liable for conduct relating to its work for the federal government, because the same list prices were applicable to both government and non-government clients.

ECF No. 133 at 6 n.1. This is because "violation" is undefined in the UCL and thus courts are left to "determine appropriate penalties on a case-by-case basis." *People v. Johnson & Johnson*, 292 Cal. Rptr. 3d 424, 468 (Cal. Ct. App. 2022). Trial courts have significant latitude in deciding "what qualifies as a single violation" as it "depends on the type of violation involved, the number of victims and the repetition of the conduct constituting the violation—in brief, the circumstances of the case." *People ex rel. Kennedy v. Beaumont Inv., Ltd.*, 3 Cal. Rptr. 3d 429, 450 (Cal. Ct. App. 2003). Because it does not have the final say about what counts as a "violation," the State cannot remove the possibility that a penalty applicable to Express Scripts may be tied to a Manufacturer's increase in a list price. *See People v. Super. Ct. (Olson)*, 157 Cal. Rptr. 628, 639 (Cal. Ct. App. 1979) (rejecting the State's argument that the number of violations should "be determined by the number of persons to whom the representations were made").

In fact, the State conceded that it is not so simple to carve out liability related to TRICARE from the remainder of its claims. At oral argument on the motion to remand, counsel for the State represented that "as to liability and as to restitution, to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-01929-SPG-SK

13

ESI'S OPPOSITION TO RENEWED
MOTION TO REMAND

the extent FEHBA and TRICARE caused a price increase, experts can isolate the amount tied to TRICARE." ECF No. 125 at 12:3–5. This concession makes it clear that the extent to which any actions do or do not relate to TRICARE will be a disputed factual issue.[4]

In sum, under the State's complaint, the State could recover penalties tied to a Manufacturer's increase in list prices and Express Scripts could be responsible for that through joint and several liability. Liability tied to an increase in list prices is connected or associated with Express Scripts' work for TRICARE because Express Scripts' compensation under the TRICARE Contract is directly impacted by changes to the WAC.

## B. The State Fails to Show Express Scripts' Defenses Are Not Colorable.

The last element to support federal officer removal is the pleading of a "colorable federal defense." For removal purposes, the defense only needs to be colorable. *Jefferson Cnty.*, 527 U.S. at 431. To clear this "low bar," the defense must not be "immaterial and made solely for the purpose of obtaining jurisdiction or . . . wholly insubstantial and frivolous." *DeFiore*, 85 F.4th at 560.

Express Scripts identified two colorable federal defenses it could assert in response to the State's claims: a defense based on the requirements of Express Scripts' TRICARE contract with DoD (a "government contractor" defense) (NoR

---

[4] In its prior remand order, this Court previously claimed that the State does not seek to "recover from the Manufacturer Defendants for improper rebates affecting insured TRICARE plans." Remand Order at 12. As the Ninth Circuit found, that disclaimer was insufficient. *See* ECF No. 133. Regardless, the Court never previously addressed how the State could possibly disclaim liability based on the Manufacturers' increase in list prices when the State seeks civil penalties and lacks the ability to define how those penalties will be calculated. Insofar as the State asserts that it is not seeking joint and several liability "related to TRICARE," such an attempted carveout fails for the same reasons explained above it cannot generally disclaim liability "related to TRICARE" without disclaiming civil penalties.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

¶¶ 59–60) and a preemption defense (*id.* ¶ 61). In again seeking remand, the State largely repeats the arguments it made the first time around for why Express Scripts supposedly did not allege a colorable federal defense. For the preemption defense, the State merely asserts that its disclaimers make the preemption defense unavailable. But as discussed above, the State's disclaimers fail to remove the connection between the State's claims and Express Scripts' work for TRICARE. *See supra* § II.A.2. The State offers no reason why preemption would not apply without a viable disclaimer. And the State does not (and cannot) dispute that the TRICARE statute includes an express preemption provision. *See* 10 U.S.C. 1103(a); 32 C.F.R. § 199.17(a)(7). Express Scripts has thus pleaded a colorable federal defense sufficient to warrant removal.

The Court need not reach the viability of Express Scripts' government contract-based defense because "one colorable federal defense against one asserted claim is enough." *DeFiore*, 85 F.4th at 558. But *DeFiore* itself demonstrates the viability of a federal defense based on the defendant's challenged conduct having been mandated by the federal government through the terms of the government's contract with that actor. In *DeFiore*—issued after Express Scripts removed the action—the Ninth Circuit recognized a government contract-based defense characterized as "compliance with federal rules or regulation" that can support federal officer jurisdiction. *See* 85 F.4th at 558. There, the defendant government contractors argued that they had a contract-compliance defense to the claim brought by plaintiff guards alleging "excessive work hours," by asserting that "the [DoD] in some circumstances required those excessive hours"—i.e., that the defendants' conduct was prescribed by the terms of its contract with the DoD. *DeFiore*, 85 F.4th at 560. The *DeFiore* court accepted the compliance-with-government-contract defense even though the removing party did not manufacture or design military equipment.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-01929-SPG-SK

15

ESI'S OPPOSITION TO RENEWED
MOTION TO REMAND

The Court here should construe Express Scripts' government contractor defense as a compliance-with-government-contract defense, as in *DeFiore*.  While Express Scripts originally employed the shorthand label "government contractor" defense, notices of removal are subject to the same liberal pleading rules under Rule 8 that apply to complaints and answers. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014).  Under those liberal pleading rules, Express Scripts' use of a different label for the defense is of no moment.  *See Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) ("Notice pleading requires the plaintiff to set forth in his complaint *claims for relief*, not causes of action, statutes or legal theories."); *Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001) ("Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief.").  The essence of the defense, then and now, consistently has been that Express Scripts' obligations to DoD arise from its written contract, compliance with which provides Express Scripts a defense to challenges aimed at conduct associated or connected with those federal obligations.  And given the presumption in favor of removal for actions removed under section 1442, the Court should liberally construe Express Scripts' notice of removal.  *See Durham*, 445 F.3d at 1252.

The Court also should afford a broad construction of the notice of removal because the compliance-with-government-contract defense was only formally recognized by the Ninth Circuit under that name *after* Express Scripts filed its notice of removal and even after the Court issued its remand order on June 28, 2023. Congress has directed courts to permit the amendment of "[d]efective allegations of jurisdiction." 28 U.S.C. § 1653.  "The intent of the provision is to avoid the needless expenditure of judicial resources where a court can instead 'permit the action to be maintained if it is at all possible to determine from the record that jurisdiction does in fact exist.'"  *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 613 (9th Cir. 2016) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 639 (2d Cir.

2005)).  The Court should therefore consider whether the compliance defense is colorable based on the relevant facts alleged in Express Scripts' notice of removal even if a different label was used in the original notice.

At its heart, the compliance-with-government-contract defense is an assertion that the defendant "acted within the scope of [its] federal duties, that what [it] did was required of [it] by federal law, and that [it] did all federal law required." *DeFiore*, 85 F.4th at 560 (citing *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1428 (11th Cir. 1996)).[5]  That is precisely what Express Scripts alleges here: Express Scripts adjudicates retail pharmacy claims based on list prices set by drug manufacturers in full compliance with the incentive provisions in Section H of the TRICARE Contract.  *See supra* § II.A.2(b).  Express Scripts has thus pleaded a colorable contract-compliance federal defense.

## III.  The State Has Not Shown That the Court Should Decline to Exercise Supplemental Jurisdiction over This Action.

Subject-matter jurisdiction is determined solely "on the basis of the pleadings filed at the time of removal without reference to subsequent amendments." *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998).  Post-removal events, including post-removal disclaimers, cannot destroy this Court's subject-matter jurisdiction or make removal improper.  *See Costco*, 471 F.3d at 976.  As to Express Scripts, all of the State's challenges to removal are premised on the sufficiency and effectiveness of the State's disclaimers—not only as to the "causal nexus" element on which this Court based its original decision, but also as to

---

[5] To the extent that the elements of a compliance-with-government-contract defense are not well-defined, that provides an additional reason for this Court to exercise jurisdiction.  One of the purposes of federal officer removal is to ensure that federal, rather than state courts, rule on the merits of federal defenses.  *See Leite*, 749 F.3d at 1124 ("[W]hether the challenged act was outside the scope of [the removing defendant's] official duties, or whether it was specifically directed by the federal Government, is one for the federal—not state—courts to answer.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-01929-SPG-SK                    17                    ESI'S OPPOSITION TO RENEWED
MOTION TO REMAND

the "acting under" and "colorable federal defense" prongs discussed above. Because the Ninth Circuit rejected the sufficiency of the State's disclaimers *as they existed at the time of removal*, the Court's decision now to accept or reject the State's post-removal disclaimers—at least as to Express Scripts—is discretionary rather than mandatory. The State concedes as much. *See* Pl. Br. at 24–25.

Even assuming that accepting the State's post-removal disclaimers would have the effect of eliminating Express Scripts' federal defenses, the State has failed to show that the Court should exercise its discretion to decline supplemental jurisdiction over the State's claims, when maintaining supplemental jurisdiction will allow the case to be transferred to the MDL proceeding and enable the parties (and the judiciary) to benefit from the convenience and efficiencies created by the consolidated pretrial proceedings.

Rather than affecting the Court's subject-matter jurisdiction, post-removal actions like these can permit a court to decline to exercise supplemental jurisdiction over the remaining claims if (but only if) the federal defenses are eliminated. But unlike a remand when the court determines it lacks subject-matter jurisdiction, remand is not "mandatory" even after the original basis for federal jurisdiction is eliminated from the case. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Instead, the Court should balance "the values of economy, convenience, fairness, and comity" in determining whether to remand the case. *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) *see also* 14C Mary Kay Kane et al., *Federal Practice and Procedure* (Wright & Miller) § 3726 (rev. 4th ed. 2024) ("Whether the supplemental claims should be remanded if the federal officer's 'anchor' claim is dismissed or settled . . . depends on considerations of comity, federalism, judicial economy, and fairness to litigants.").[6]

---

[6] For actions removed under 28 U.S.C. § 1442, courts disagree whether the supplemental jurisdiction analysis under 28 U.S.C. § 1367 or the ancillary-claim analysis under 28 U.S.C. 1442(a)(1) controls. *See Healthcare Venture Partners, LLC*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-01929-SPG-SK

18

ESI'S OPPOSITION TO RENEWED
MOTION TO REMAND

To be sure, if the federal claims are "eliminated before trial," those factors will often point "toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon*, 484 U.S. at 350. But dismissal is not *required* because supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Id.*

The convenience and efficiencies gained by an MDL proceeding support continuing to exercise supplemental jurisdiction even after the original bases for federal jurisdiction are eliminated. *See, e.g.*, *In re Methyl Tertiary Butyl Ether* ("*MTBE*") *Prod. Liab. Litig.*, 399 F. Supp. 2d 340, 355–56 (S.D.N.Y. 2005) (Scheindlin, J.) ("retaining jurisdiction will promote judicial economy, and prevent duplication of effort and inconsistent judgments . . . . Indeed, exercising jurisdiction here will avoid the waste and inconsistency that multi-district litigation is designed to eliminate."); *In re Ameriquest Mortg. Co. Mortg. Lending Pracs. Litig.*, 2013 WL 4718958, at *4–5 (N.D. Ill. Sept. 3, 2013) ("judicial economy and convenience to the parties favor retaining jurisdiction over the third-party claims in the MDL"); *In re Citigroup, Inc., Cap. Accumulation Plan Litig.*, 2003 WL 27385584, at *6 (D. Mass. July 9, 2003) (continuing to exercise supplemental jurisdiction because "the MDL Panel argues in favor of supplemental jurisdiction, as the MDL Panel has already determined that the transfer furthers the 'just and efficient conduct of the litigation.'"); *In re New England Mut. Life Ins. Co. Sales Pracs. Litig.*, 2003 WL 25953191, at *3 (D. Mass. May 20, 2003) (Factors favoring creation of MDL "also weigh in favor of this court's retaining supplemental jurisdiction over the . . . plaintiffs' remaining state-law claims.")

---

*v. Anthem Blue Cross & Blue Shield*, 2021 WL 5194662, at *9 n.5 (S.D. Ohio Nov. 8, 2021). The dispute, however, is academic because, as shown above, "the two tests are essentially identical in practice" regardless of the statutory foundation. *Id.*

Likewise, issues of "comity" also are reduced in the MDL context. The MDL court only oversees "coordinated or consolidated *pretrial* proceedings." 28 U.S.C. § 1407(a) (emphasis added). Because the ambit of the MDL court's authority is limited to pretrial proceedings, issues of comity are not a "paramount concern" and the "presumption in favor of dismissal lacks its usual grip." *In re Ameriquest*, 2013 WL 4718958, at *4.

For these reasons, the State has failed to demonstrate that the Court should exercise its discretion to decline supplemental jurisdiction over the action to the extent the State has post-removal disclaimed a claim or relief supporting federal officer jurisdiction.

## IV.  The Court Lacks Jurisdiction After an Appeal is Noticed to Return the Case to Superior Court Until the Jurisdictional Appeal Is Exhausted.

The mailing of a certified order of remand is the ministerial act that causes jurisdiction to return to the state court. *See* 28 U.S.C. § 1447(c). If the Court ultimately orders remand, the Court should delay mailing the order to the state court because, based on the Supreme Court's recent decision in *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), the Court lacks jurisdiction to return the case to state court until the appellate court determines in which venue this case should proceed.[7]

When Express Scripts appeals the remand order, that notice "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). The "aspects of the case involved in" this appeal are essentially the entire case because the appeal addresses whether the case belongs in federal court or in California state court. *See*

---

[7] During the last appeal of the remand order, Express Scripts moved the Ninth Circuit to order the recall the remanded case pending appeal based on *Coinbase*. Express Scripts, Inc.'s Motion to Order the Recall of the Remanded Case Pending Appeal, *People of the State of California v. Express Scripts, Inc.*, No. 23-55599 (Aug. 15, 2023), ECF No. 12. A two-judge panel denied the request in a five-line order that did not even mention Coinbase. See ECF No. 131.

*Coinbase*, 599 U.S. at 741 (explaining that the "entire case is essentially involved in the appeal" when an appellate court must decide whether the case belongs in the district court (citing *Griggs*, 459 U.S. at 58)).  This complete divestiture of jurisdiction precludes the district court from effecting the remand by mailing the remand order to the Superior Court.

The Supreme Court's recent decision in *Coinbase* explains why.  In *Coinbase*, the Supreme Court held that the "*Griggs* principle" requires a district court to stay its proceedings while an interlocutory appeal of an order denying a motion to compel arbitration is pending.  As the *Coinbase* court recognized, Congress's practice of expressly providing that a stay is *not* automatic for certain interlocutory appeals "reflects and reinforces the *Griggs* rule." *Id.* at 743.  When Congress does not want an automatic stay, it says so. *Id.* at 744 n.6 (collecting statutes); *see also* 28 U.S.C. §1292(b) (application to court of appeals of certified interlocutory orders "shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order"); 28 U.S.C. § 1292(d)(3) (same for certified interlocutory appeals from Court of International Trade or Court of Federal Claims); 28 U.S.C. § 7482 (same for Tax Court); 28 U.S.C. § 7292 (same for Court of Appeals for Veterans Claims); 28 U.S.C. § 158(d)(2)(D) (same for bankruptcy courts); 48 U.S.C. § 2166(e)(6) (same for certified interlocutory appeals of petitions filed by Financial Oversight and Management Board of Puerto Rico).  Likewise, both the Supreme Court and Congress recognized the *Griggs* principle in enacting Federal Rule of Civil Procedure 23(f), which expressly provides that an appeal of a class certification order does not stay proceedings absent a separate order.

Thus, absent signs of contrary congressional intent, "the background *Griggs* principle *already requires an automatic stay of district court proceedings* that relate

to any aspect of the case involved in the appeal." *Coinbase*, 599 U.S. at 744 (emphasis added).[8]

Congress nowhere explicitly excepted remand orders in cases removed under 28 U.S.C. § 1442 from the presumption of an automatic stay; nor did it indicate some preference or intent that an automatic stay not apply to such remand orders. And the reasons the *Coinbase* court recognized supporting an automatic stay for appeals of an arbitrability order apply equally to appeals of remand orders. Without an automatic stay, the right to appeal a remand order "would be largely nullified" if a state court can proceed during the entire appeals process. *Coinbase*, 599 U.S. at 743. Likewise, parties "could be forced to settle to avoid the [state] court proceedings" when the case should have been heard in federal court. *Id.* And from the judiciary's perspective, "allowing a case to proceed simultaneously in the [state] court and the court of appeals creates the possibility that the [state] court will waste scarce judicial resources—which could be devoted to other pressing criminal or civil matters—on a dispute that will ultimately" return to federal court. *Id.* In other words, it "makes no sense for trial to go forward while the court of appeals cogitates on whether there should be one" in federal court. *Id.* at 741.

Although *Coinbase* was only decided last summer, courts have already been applying its central principle outside the arbitration context. For example, in *A.O.A. v. Rennert*, 2023 WL 8641601 (E.D. Mo. Sept. 5, 2023), the court *sua sponte* recognized that Coinbase required the court to issue a stay pending appeal of the

---

[8] *Coinbase* abrogates the 2006 decision from the Ninth Circuit that appeals of remand orders do not provide the appellate court "sole and exclusive jurisdiction once the notice of appeal was filed." *Patel v. Del Taco, Inc.*, 446 F.3d 996, 1000 (9th Cir. 2006). The *Patel* court based its decision in part because "no authority" presented at the time supported the absolute transfer of jurisdiction from the district court to the appellate court. *Id. Coinbase* has provided that authority. Accordingly, this Court does not need to follow *Patel* because it is "clearly irreconcilable" with a Supreme Court decision, making it "effectively overruled." *Biggs v. Sec'y of California Dep't of Corr. & Rehab.*, 717 F.3d 678, 689 (9th Cir. 2013)

court's order denying the defendants' motion to dismiss under "transnational doctrines." *Id.* at \*1. The question on appeal was "whether the case belongs in th[at] Court or in another forum, namely Peru." *Id.* Applying *Coinbase*, the court held that it "*must* stay these proceedings while that interlocutory appeal is pending given its central question on whether litigation of plaintiffs' claims can proceed in this forum." *Id.* at 1(emphasis added). And in *United States v. Trump*, the United States, former President Donald Trump, and Judge Tanya S. Chutkan all agreed that *Coinbase* required a stay of proceedings during the pendency of the appeal regarding presidential immunity. 706 F. Supp. 3d 91, 93 (D.D.C. 2023) ("[T]he court agrees with both parties that Defendant's appeal automatically stays any further proceedings that would move this case towards trial or impose additional burdens of litigation on Defendant.").

One district court has declined to apply *Coinbase* to interlocutory appeals of remand orders because it held such an interpretation would be "too expansive." *Attorney General v. Dow Chem. Co.*, 2024 WL 3361395, at \*11 (D.N.J. July 9, 2024). But the expansiveness of the stay rationale in *Coinbase* was litigated before the Supreme Court. As Justice Jackson argued in dissent, "a wide variety of appeals seemingly fits" the bill of "whether the litigation may go forward in the district court." *See Coinbase*, 599 U.S. at 760 (Jackson, J., dissenting). But the majority opinion maintained its rationale. And that rationale fits hand in glove with issuing a mandatory stay if a remand order is appealed on an interlocutory basis.

If the Court grants remand, the Court should therefore stay proceedings pending resolution of the appeal of the remand order.[9]

---

[9] Immediately mailing the remand order to avoid the transfer of the jurisdiction is both ill-advised and would not preclude the jurisdictional problem in any event. As the First Circuit has recognized, a "district court would be well-advised, for example, to hold the matter in abeyance for a brief period or to direct the clerk of court to delay transmittal of the certified remand order." *Forty Six Hundred LLC v. Cadence Educ., LLC*, 15 F.4th 70, 81 (1st Cir. 2021). This brief delay will "help

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-01929-SPG-SK

23

ESI'S OPPOSITION TO RENEWED
MOTION TO REMAND

## **CONCLUSION**

The Court should deny the State's renewed motion to remand. If the Court nevertheless granted the renewed motion to remand, it should not mail the remand order until any appeal of the remand order concludes.

Dated: October 9, 2024

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By  /s/ *Jason R. Scherr*

Jason R. Scherr (*pro hac vice*)
Patrick A. Harvey (*pro hac vice*)
Lindsey Titus Levy (*pro hac vice*)
1111 Pennsylvania Ave. NW
Washington, DC 20004
Tel:     +1.202.739.3000
Fax:     +1.202.739.3001
jr.scherr@morganlewis.com
patrick.harvey@morganlewis.com
lindsey.levy@morganlewis.com

Joseph Duffy, Bar No. 241854
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel:     +1.213.612.2500
Fax:     +1.213.612.2501
joseph.duffy@morganlewis.com

Attorneys for Defendant
EXPRESS SCRIPTS, INC.

---

prevent a removed case from becoming a shuttlecock, batted back and forth between a state court and a federal court." *Id.* And even if the case is sent back to the Los Angeles Superior Court, that would not preclude this Court or the Ninth Circuit from clawing it back to enter the stay. *See Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1070 (9th Cir. 2021).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-01929-SPG-SK                    24                    ESI'S OPPOSITION TO RENEWED
MOTION TO REMAND

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Express Scripts, Inc., certifies that, in accordance with the Court's Standing Order for Newly Assigned Civil Cases, this brief does not exceed twenty-five (25) pages, excluding the caption, the table of contents, the table of authorities, and the signature block.

Dated: October 9, 2024

*/s/ Jason R. Scherr*
Jason R. Scherr

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-01929-SPG-SK

ESI'S OPPOSITION TO RENEWED
MOTION TO REMAND