UMHOFER, MITCHELL & KING LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)
767 S. Alameda St., Suite 270
Los Angeles, California 90021
Telephone: 213-394-7979
Facsimile: 213-529-1027
Email: matthew@umklaw.com
Email: elizabeth@umklaw.com

WILLIAMS AND CONNOLLY LLP
Enu Mainigi (*pro hac vice*)
Craig Singer (*pro hac vice*)
R. Kennon Poteat III (*pro hac vice*)
A. Joshua Podoll (*pro hac vice*)
Daniel Dockery (*pro hac vice* forthcoming)
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
Email: emainigi@wc.com
Email: csinger@wc.com
Email: kpoteat@wc.com
Email: apodoll@wc.com
Email: ddockery@wc.com

*Attorneys for CVS Health Corporation and CaremarkPCS Health, L.L.C.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>       *Plaintiff,*<br><br>   v.<br><br>ELI LILLY AND COMPANY, et al.,<br><br>       *Defendants.* | Civil Action No. 2:23-cv-01929-SPG (SKx)<br><br>**CAREMARKPCS HEALTH, L.L.C.'S MEMORANDUM IN OPPOSITION TO THE STATE'S RENEWED MOTION TO REMAND**<br><br>Hearing Date: October 30, 2024<br>Hearing Time: 1:30 p.m.<br>Judge: Hon. Sherilyn Peace Garnett<br>Courtroom: 5C |

# <u>TABLE OF CONTENTS</u>

**PAGE**

INTRODUCTION ........................................................................................ 1

BACKGROUND ......................................................................................... 2

PROCEDURAL HISTORY ......................................................................... 5

LEGAL STANDARD .................................................................................. 7

ARGUMENT .............................................................................................. 7

    I.      The State's Post-Removal Disclaimers Do Not Defeat Jurisdiction. ......... 8

          A.     The State's Post-Removal Disclaimers Are Invalid. ....................... 8

               1.     The purported disclaimers are illusory because the Complaint still challenges rebate negotiations. ..................... 8

               2.     The disclaimers are circular because they would require state-court adjudication over the scope of Caremark's federal duties and the validity of its federal defenses. ......... 13

          B.     The Court Should Retain Jurisdiction Even if It Has Discretion to Remand. .................................................................. 15

    II.     The Challenged Conduct Gives Rise to Federal Officer Removal. .......... 17

          A.     Caremark Acts Under a Federal Officer. ...................................... 17

          B.     The State's Lawsuit Is Causally Connected to Caremark's Federal Conduct. ........................................................................ 23

          C.     Caremark Has Colorable Federal Defenses. ................................. 24

    III.    The Court Should Withhold Mailing the Remand. ................................. 25

CONCLUSION ......................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Agyin v. Razmzan,*
  986 F.3d 168 (2d Cir. 2021) ................................................................................. 7

*Anesthesiology Assocs. of Tallahassee v. Blue Cross Blue Shield of Fla.,*
  2005 WL 6717869 (11th Cir. Mar. 18, 2005) ....................................................... 18

*Baker v. Atl. Richfield,*
  962 F.3d 937 (7th Cir. 2020) ..............................................................10, 11, 13, 15

*BP P.L.C. v. Mayor & City Council of,*
  *Balt.*, 593 U.S. 230 (2021) ................................................................................. 18

*Buljic v. Tyson Foods,*
  22 F.4th 730 (8th Cir. 2021) ................................................................................. 7

*Cabalce v. Thomas E. Blanchard & Associates,*
  797 F.3d 720 (9th Cir. 2015) ............................................................................... 21

*California ex rel. Harrison v. Express Scripts, Inc.,*
  2024 WL 841197 (C.D. Cal. Feb. 28, 2024) ........................................................ 7

*California v. CaremarkPCS Health LLC,*
  2024 WL 3770326 (9th Cir. Aug. 13, 2024) ...................................................*passim*

*Caris MPI v. UnitedHealthcare,*
  108 F.4th 340 (5th Cir. 2024) ........................................................................ 10, 19

*Carnegie-Mellon Univ. v. Cohill,*
  484 U.S. 343 (1988) ...................................................................................... 15, 16

*Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters,*
  497 F.3d 972 (9th Cir. 2007) ............................................................................... 25

*Chamber of Com. of the U.S. v. Bonta,*
  62 F.4th 473 (9th Cir. 2023) ............................................................................... 25

*City of Honolulu v. Sunoco,*
  39 F.4th 1101 (9th Cir. 2022) ............................................................................. 21

*Cnty. Board of Arlington Cnty. v. Express Scripts Pharmacy,*
  996 F.3d 243 (4th Cir. 2021) ......................................................................... 19, 21

*Coinbase, Inc. v. Bielski,*
  599 U.S. 736 (2023) ........................................................................................... 25

*Connecticut ex rel. Tong v. Exxon Mobil,*
  83 F.4th 122 (2d Cir. 2023) ............................................................................... 12

*Corley v. Long-Lewis,*
  688 F. Supp. 2d 1315 (N.D. Ala. Jan. 28, 2010) .............................................. 13

CAREMARKPCS HEALTH, L.L.C.'S MEMORANDUM IN OPPOSITION TO THE STATE'S
RENEWED MOTION TO REMAND

*Coventry Health Care of Mo. v. Nevils*,
    581 U.S. 87 (2017) ................................................................. 3, 24, 25

*Cuomo v. Crane*,
    771 F.3d 113 (2d Cir. 2014) ....................................................... 7, 10, 15

*DeFiore v. SOC*,
    85 F.4th 546 (9th Cir. 2023) ........................................................... *passim*

*Doe v. BJC Health Sys.*,
    89 F.4th 1037 (8th Cir. 2023) ........................................................ 12, 18

*Doe v. Cedars-Sinai Health Sys.*,
    106 F.4th 907 (9th Cir. 2024) ............................................................. 12

*Dougherty v. A O Smith*,
    2014 WL 3542243 (D. Del. July 16, 2014) ........................................ 8

*Durham v. Lockheed Martin*,
    445 F.3d 1247 (9th Cir. 2006) ............................................................ 7

*Fidelitad v. Insitu*,
    904 F.3d 1095 (9th Cir. 2018) ........................................................ 11, 21

*Fossen v. Blue Cross & Blue Shield of*,
    *Mont.*, 660 F.3d 1102 (9th Cir. 2011) .............................................. 25

*Goncalves ex rel. Goncalves v. Rady Child.'s Hosp. San Diego*,
    865 F.3d 1237 (9th Cir. 2017) ......................................................... *passim*

*Graves v. 3M Co.*,
    17 F.4th 764 (9th Cir. 2021) ........................................................... 11, 21

*Hawai'i ex rel. Lopez v. CaremarkPCS Health, L.L.C.*,
    2024 WL 1907396 (D. Haw. May 1, 2024) ..................................... *passim*

*Healthcare Venture Partners v. Anthem Blue Cross & Blue Shield*,
    2021 WL 5194662 (S.D. Ohio Nov. 8, 2021) .............................. 13, 14, 15

*In re Anthem Data Breach Litig.*,
    162 F. Supp. 3d 953 (N.D. Cal. 2016) ................................................ 25

*In re Commonwealth's Mot. to Appoint Couns. Against or Directed to Def. Ass'n of*
    *Phila.*, 790 F.3d 457 (3d Cir. 2015) ................................................. 23

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*,
    460 F.3d 1217 (9th Cir. 2006) ............................................................ 15

*Jacks v. Meridian*,
    *Res.*, 701 F.3d 1224 (8th Cir. 2012) ............................................ 18, 22, 25

*Jefferson Cnty. v. Acker*,
    527 U.S. 423 (1999) ........................................................................... 10

*Leite v. Crane*,
749 F.3d 1117 (9th Cir. 2014) ............................................................7, 10, 13

*Marley v. Elliot Turbomachinery*,
545 F. Supp. 2d 1266 (S.D. Fla. 2008) ...................................................13

*Mohr v. Trs. of Univ. of Pa.*,
93 F.4th 100 (3d Cir. 2024) ...................................................................10

*Nassau Cnty. v. Mylan Pharms.*,
2023 WL 3298500 (E.D.N.Y. July 4, 2023).............................................7

*Oberstar v. CBS*,
2008 WL 11338471 (C.D. Cal. Feb. 11, 2008) .........................................8

*Ohio ex rel. Yost v. Ascent Health Servs.*,
2024 WL 23187 (S.D. Ohio Jan. 2, 2024)..................................................7

*Osborn v. Haley*,
549 U.S. 225 (2007).................................................................................7

*Papp v. Fore-Kast Sales*,
842 F.3d 805 (3d Cir. 2016) ...................................................................18

*Pelker v. Air & Liquid Sys.*,
2018 WL 679642 (D. Or. Feb. 2, 2018) ..................................................15

*People ex rel. Raoul v. 3M Co.*,
111 F.4th 846 (7th Cir. 2024) ................................................................10

*Pharm. Care Mgmt. Ass'n v. Mulready*,
78 F.4th 1183 (10th Cir. 2023) ..............................................................24

*Plaquemines Parish v. BP Am. Prod.*,
103 F.4th 324 (5th Cir. 2024) ................................................10, 12, 23

*Puerto Rico v. Eli Lilly & Co.*,
2023 WL 4830569 (D.P.R. July 13, 2023)................................................7

*Reaser v. Allis Chambers*,
2008 WL 8911521 (C.D. Cal. June 23, 2008)..........................................13

*San Mateo v. Chevron*,
32 F.4th 733 (9th Cir. 2022) ............................................................18, 21

*St. Charles Surgical Hosp. v. La. Health Serv. & Indem.*,
935 F.3d 352 (5th Cir. 2019) ............................................................18, 22

*St. Charles Surgical Hosp. v. La. Health Serv. & Indem.*,
990 F.3d 447 (5th Cir. 2021) ...........................................................8, 13, 14

*Washington v. Monsanto*,
  738 F. App'x 554 (9th Cir. 2018) ................................................................21

*Watkins v. Grover*,
  508 F.2d 920 (9th Cir. 1974) .....................................................................15

*Watson v. Philip Morris*,
  551 U.S. 142 (2007).....................................................................17, 18, 22

*West Virginia ex rel. McCuskey v. Eli Lilly & Co.*,
  2024 U.S. Dist. LEXIS 160669 (N.D.W. Va. Sep. 6, 2024) ...............11, 21

*Westchester Cnty. v. Mylan Pharms.*,
  2024 WL 3043121 (S.D.N.Y. June 18, 2024) ................................................7

*Wood v. Crane*,
  764 F.3d 316 (4th Cir. 2014) ......................................................................14

**STATUTES**

Federal Employees Health Benefits Act ...............................................*passim*

5 U.S.C. § 8902 ...............................................................................3, 24

28 U.S.C. § 1407 ...................................................................................15

28 U.S.C. § 1442 ...........................................................................*passim*

42 U.S.C. § 1396r-8 ................................................................................2

**OTHER AUTHORITIES**

*Medicare & State Health Care Programs*,
  64 Fed. Reg. 63518, 63518 (Nov. 19, 1999) ...............................................2

48 C.F.R. §
  Ch.16 ...............................................................................................3
  1602.170-16 ...............................................................................3, 19
  1604.7201 ...................................................................................3, 19
  1604.7202 ...........................................................................................3
  1646.201 .................................................................................3, 4, 19
  1652.204-70 .....................................................................................19
  1652.204-74 .............................................................................3, 4, 19
  1652.246-70 .....................................................................................19

OPM, Audit of the Reasonableness of Selected FEHBP Carriers' Pharmacy
  Benefit Contracts at 3 (July 29, 2021), https://tinyurl.com/y2p3autv .......19

OPM Letter No. 2024-02, *Pharmacy Benefits Management (PBM) Transparency
  Standards* (Jan. 25, 2024), https://tinyurl.com/rxxzk5sc....................19, 20

OPM Letter No. 2024-05, *Consolidated Pharmacy Benefits Guidance for the
  FEHBA Program* (Feb. 12, 2024), https://tinyurl.com/286u9bn9...........20

# INTRODUCTION

The Ninth Circuit held that the disclaimers in the State's Complaint failed to sever the connection between the State's lawsuit and CaremarkPCS Health, L.L.C.'s federal duties. On its second try, the State now asks the Court to ignore the Ninth Circuit's reversal, remand the case based on the same faulty reasoning, and set this case on a course for another year of appellate proceedings. Because it cannot rely on any disclaimer in its Complaint, the State now relies exclusively on its post-removal pronouncements purporting to disclaim jurisdiction in its attempt to send the case to state court, where it would be litigated separately from an MDL composed of functionally identical cases.

The State's purported disclaimers, including its vague twenty-eight-point appendix, fail to exclude Caremark's federal officer conduct from the lawsuit. As the State concedes, Caremark's negotiation of rebates is a single course of negotiating conduct that cannot be divided between FEHBA and non-FEHBA clients. Either the State is disclaiming any lawsuit involving Caremark's negotiation of agreements through which rebates were obtained for FEHBA clients—which would mean disclaiming virtually *the State's entire lawsuit*—or it is still suing about those negotiations, in which case its claims target FEHBA negotiations where Caremark acts under a federal officer. In none of the State's twenty-eight statements does it purport to identify what actual *conduct* it challenges, or what *conduct* it disclaims. And that is the problem. Any disclaimer of rebate negotiations would force the state court to rule on the scope of Caremark's federal duties and the viability of its federal defenses. To put it in concrete terms: if the Court remanded, Caremark would immediately demur or, in the alternative, move for summary judgment based on the State's purported disclaimers. Assuming the State did not respond by conceding that it had disclaimed its entire case, the state court would need to decide precisely the issue Ninth Circuit precedent bars it from deciding: namely, the scope of Caremark's federal duties and defenses.

Even if the Court were to credit the purported disclaimers, it should deny the State's motion. Jurisdiction is measured at the time of removal, so none of those post-removal developments deprives the Court of subject matter jurisdiction. And the discretionary factors militate in favor of retaining jurisdiction.

Unable to disclaim jurisdiction, the State now raises the argument—which it expressly declined to assert in its earlier motion—that it is entitled to remand even absent a disclaimer. That argument is a nonstarter: As every court of appeals has held, private parties like Caremark that help implement the Federal Employee Health Benefits Act, and operate subject to ongoing supervision and control by the Office of Personnel Management, act under federal officers and are entitled to removal.

## **BACKGROUND**

Eli Lilly and Co., Novo Nordisk Inc., and Sanofi-Aventis U.S. L.L.C. develop, manufacture, and sell prescription drugs, including insulin. Compl., Dkt. 1-1 ¶ 4.

Caremark, Express Scripts, Inc., and OptumRx, Inc. are pharmacy benefit managers ("PBMs") that contract with health plan sponsors to administer prescription drug benefits. *Id.* ¶ 5. Among the many services PBMs provide, PBMs negotiate with manufacturers to reduce the costs their clients ultimately incur for the manufacturers' drugs. *E.g.*, *id.*; Notice of Removal ("Notice"), Dkt. 5, at 6-7; Anderson Decl. ¶ 4. Those negotiations result in contracts under which manufacturers agree to provide rebates that offset the PBMs' clients' drug costs ("Rebate Agreements"). Compl. ¶¶ 5, 123; Anderson Decl. ¶ 4. Those rebates flow back to the PBMs' clients pursuant to separate contracts between PBMs and their clients. Notice at 7. PBMs long have negotiated such rebates, which are a key feature of the pharmaceutical market and standard industry practice. *See* 42 U.S.C. § 1396r-8; *Medicare & State Health Care Programs*, 64 Fed. Reg. 63518, 63518 (Nov. 19, 1999).

Caremark provides PBM services to multiple clients, including health plans that provide benefits to federal employees pursuant to FEHBA. FEHBA is the federal statute "establish[ing] a comprehensive program of health insurance for federal employees."

2

*Coventry Health Care of Mo. v. Nevils*, 581 U.S. 87, 91 (2017). The statute "assigns" to OPM "broad administrative and rulemaking authority over the program," *id.*, and authorizes OPM to contract with private carriers for federal employees' health insurance ("FEHBA Carriers"), 5 U.S.C. § 8902(a).

OPM expressly anticipates that FEHBA Carriers will engage subcontractors, including PBMs, to provide federal health benefits. *E.g.*, 48 C.F.R. § 1602.170-16. OPM has therefore promulgated the Federal Employee Health Benefits Acquisition Regulation ("FEHBAR") permitting OPM to exercise direct oversight over FEHBA Carriers, as well as any subcontractors with which FEHBA Carriers contract, to ensure compliance with FEHBA and to manage the program's finances. *See id.* ch. 16. For example, the FEHBAR requires OPM to "periodically audit" the books and records of subcontractors—including PBMs—that perform services for FEHBA Carriers. *Id.* § 1646.201(d). The FEHBAR also requires that OPM's contracts with FEHBA Carriers include specific clauses giving OPM authority to review and audit any subcontractors, including PBMs. *See, e.g.*, *id.* §§ 1604.7201, 1604.7202, 1652.204-74.

OPM's contracts with FEHBA Carriers therefore expressly contemplate that the carriers providing benefits to federal employees will employ PBMs to administer the pharmacy component of those benefits. *See* Ex. A, OPM, *Federal Employees Health Benefits Program Standard Contract for Experience-Rated Health Maintenance Organization Carriers*, at I-18 (2019) ("FEHB Standard Contract"), https://tinyurl.com/yz2r4jef (last visited October 9, 2024). OPM also expressly anticipates that the FEHBA Carriers' contracts with PBMs will include "Manufacturer Payments," defined broadly to include negotiated pharmaceutical rebates. *Id.*

In addition to the requirements set out above, OPM imposes myriad obligations on the PBMs that contract with FEHBA Carriers by requiring those carriers to include specific provisions in all PBM contracts. OPM requires that PBMs "provide pass-through transparent pricing based on the PBM's cost for drugs . . . in which the [FEHBA] Carrier receives the value of the PBM's negotiated [rebates]." *Id.* Thus, PBMs must

"credit to the Carrier either as a price reduction or by cash refund the value all [rebates] properly allocated to the Carrier." *Id.* Subject to these requirements, rebates negotiated by PBMs with manufacturers are credited to FEHBA Carriers and reduce the amounts paid for medicine—including diabetes medicine—by the federal government.

OPM also requires that PBMs provide quarterly and annual Manufacturer Payment Reports regarding negotiated rebates. *Id.* at I-18 to I-19. OPM further retains authority to exercise direct oversight of certain PBM activities, including to "review and receive any information and/or documents the Carrier receives from the PBM, including a copy of its contract with the PBM." *Id.* at I-19. PBMs are subject to audits by the OPM Office of Inspector General ("OIG") and must provide to OIG upon request certain PBM records regarding its contracts with pharmacies, manufacturers, and third parties. *Id.*; *see* Oesterle Decl. ¶¶ 4-7.

Caremark contracts with a number of FEHBA Carriers. As OPM contemplates, Caremark has entered into Rebate Agreements with pharmaceutical manufacturers requiring manufacturers to pay rebates that help offset FEHBA Carriers' drug costs. Notice at 8; Oesterle Decl. ¶¶ 3-6. Caremark therefore has been subject to the OPM requirements set forth above and has undergone audits, including audits of Caremark's rebating practices. Oesterle Decl. ¶¶ 4-8; *accord* 48 C.F.R. §§ 1646.201, 1652.204-74.

Caremark conducts rebate negotiations simultaneously on behalf of a large number of clients, including FEHBA plans. None of the rebates that Caremark negotiates for insulin is exclusive to FEHBA plans; rather, these negotiations involving FEHBA plans involve non-FEHBA plans as well. *See* Anderson Decl. ¶¶ 5-6; Notice at 10. Those collective rebate negotiations benefit Caremark's clients by allowing Caremark to leverage greater negotiating power and thereby obtain better rebates. Compl. ¶ 9. Accordingly—and critically—Caremark does not negotiate separate Rebate Agreements for each of its clients with each manufacturer. Anderson Decl. ¶¶ 5-6. To the contrary, for most of the relevant period, the same Rebate Agreements governing

CAREMARKPCS HEALTH, L.L.C.'S MEMORANDUM IN OPPOSITION TO THE STATE'S RENEWED MOTION TO REMAND

insulin rebates for Caremark's FEHBA clients also governed rebates for its non-FEHBA clients. *Id.*

## **PROCEDURAL HISTORY**

Several dozen lawsuits have been brought against the defendants in this case alleging that PBMs' rebating practices are part of an industrywide conspiracy to raise insulin prices. Many of these cases originally were filed in state court and removed on federal officer grounds, and nearly all have been consolidated in an MDL captioned *In re Insulin Pricing*, No. 23-md-3080 (D.N.J.).

On January 12, 2023, the State filed its complaint in Los Angeles Superior Court asserting that the PBMs' negotiations with manufacturers are not hard-fought, arm's-length negotiations but a conspiracy to raise the price of insulin. *See* Compl. ¶¶ 5-7. In an effort to avoid federal jurisdiction, the Complaint purported to disclaim challenges to the creation of "custom formularies for a federal officer," as well as certain monetary relief related to "federally mandated co-pays." *Id.* ¶ 41 n.1.

Caremark and Express Scripts timely removed the action to this Court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and the State moved to remand on the basis of its attempted jurisdictional disclaimer. Dkts. 1, 5, 78. Caremark opposed remand, arguing that the disclaimer was invalid because Caremark's rebate negotiations cannot be divided between FEHBA and non-FEHBA clients. Dkt. 94.

On June 28, 2023, this Court granted the State's motion and ordered remand (the "Remand Order"). Dkt. 109. The Court acknowledged Caremark's position that its FEHBA and non-FEHBA PBM services could not be disaggregated and recognized that "such a division may be . . . difficult here." *Id.* at 12. But the Court was "not persuaded that [such a division] cannot be done." *Id.* Caremark and Express Scripts appealed.

While the Court's remand decision was being appealed, the parties proceeded to dispositive motions in Superior Court. On June 18, 2024, the Superior Court held that the statute of limitations barred the State's claims and dismissed the complaint with leave to amend. *See* Ex. B. The State filed its amended complaint on August 2, 2024,

which again alleged that the PBMs' rebate negotiations and formulary practices violate the California UCL.  *See* Ex. C, Am. Compl. ¶¶ 8, 13, 63, 114-29, 261-68.

On August 13, 2024, the Ninth Circuit reversed the Remand Order.  The Ninth Circuit explained that this lawsuit was brought against Caremark "for conduct which allegedly artificially inflates the price of insulin[,] . . . such as rebate negotiation practices."  *California v. CaremarkPCS Health LLC*, 2024 WL 3770326, at *1 (9th Cir. Aug. 13, 2024).  The Ninth Circuit held that the State's disclaimer did not defeat jurisdiction because the State "fail[ed] to *explicitly* release claims or possible recovery from rebate practices as they relate to FEHBA."  *Id.*  Notwithstanding the State's purported disclaimer, Caremark's "rebate negotiations remain 'causally connected to the dispute.'"  *Id.*  The court reversed and returned the case to federal court.  *Id.*

Judge Ikuta concurred, explaining that the "complaint's central claim is that Caremark's negotiation of rebates with drug manufacturers artificially inflated the price of insulin."  *Id.* at *2 (Ikuta, J., concurring).  Because Caremark alleged that it engaged in a "single rebate negotiation" on behalf of both private and public clients, Judge Ikuta reasoned, "if Caremark were liable for negotiating rebates on behalf of private clients, it would necessarily also be liable for negotiating rebates on behalf of the federal government—because it is the same negotiation."  *Id.*

Following this Court's Remand Order, several other district courts have ruled on similar removal issues as well.  Caremark prevailed in the related case brought by the State of Hawai'i.  The district court denied Hawaii's motion to remand and held that federal jurisdiction was proper notwithstanding Hawaii's purported disclaimer.  *Hawai'i ex rel. Lopez v. CaremarkPCS Health, L.L.C.*, 2024 WL 1907396 (D. Haw. May 1, 2024).  As that court explained, Hawaii's purported disclaimer did not sever the connection to Caremark's FEHBA work "because Caremark negotiates rebates for multiple clients collectively," including for its "FEHBA-carrier clients."  *Id.* at *12.

CAREMARKPCS HEALTH, L.L.C.'S MEMORANDUM IN OPPOSITION TO THE STATE'S RENEWED MOTION TO REMAND

1    In contrast, a few decisions have granted remand and are pending on appeal.[1]

2                            **LEGAL STANDARD**

3    "The Supreme Court has held that the right of removal is absolute for conduct

4 performed under color of federal office, and has insisted that the policy favoring

5 removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)."

6 *Durham v. Lockheed Martin*, 445 F.3d 1247, 1252 (9th Cir. 2006) (citation omitted).

7 Thus, "the federal officer removal statute is to be liberally construed," and "the typical

8 presumption against removal does not apply." *Buljic v. Tyson Foods*, 22 F.4th 730, 738

9 (8th Cir. 2021) (citation omitted).

10    To carry out this congressional command, courts applying section 1442(a)(1)

11 "must credit the defendants' theory of the case when evaluating the relationship between

12 the defendants' actions and the federal officer." *Agyin v. Razmzan*, 986 F.3d 168, 175

13 (2d Cir. 2021) (cleaned up).  The Court, therefore, "accept[s] the [removing party's]

14 allegations as true and draw[s] all reasonable inferences in [its] favor." *Leite v. Crane*,

15 749 F.3d 1117, 1121 (9th Cir. 2014).  Even if the plaintiff claims the defendant's conduct

16 "ha[s] no relevancy to their official duties as employees or officers of the United States,"

17 the court is "not required to accept the truth of the plaintiff's allegations." *Osborn v.

18 Haley*, 549 U.S. 225, 249 (2007); *see Cuomo v. Crane*, 771 F.3d 113, 116 (2d Cir. 2014).

19                              **ARGUMENT**

20    The Ninth Circuit rejected the State's attempts to manipulate jurisdiction with

21 disclaimers in its Complaint, so the State now asks this Court to effectively re-issue the

22 now-reversed Remand Order on the basis of its *post-removal* purported disclaimers.  But

23 they fail for the same reason as the disclaimer in the Complaint:  The State continues to

24

---

25 [1] *Puerto Rico v. Eli Lilly & Co.*, 2023 WL 4830569 (D.P.R. July 13, 2023), *appeal filed*
   Nos. 23-1612, 23-1613 (1st Cir); *California ex rel. Harrison v. Express Scripts, Inc.*,
26 2024 WL 841197 (C.D. Cal. Feb. 28, 2024), *appeal filed*, No. 24-1972 (9th Cir.); *Nassau
   Cnty. v. Mylan Pharms.*, 2023 WL 3298500 (E.D.N.Y. July 4, 2023), *appeal filed* No.
27 24-1839 (2d Cir.); *Westchester Cnty. v. Mylan Pharms.*, 2024 WL 3043121 (S.D.N.Y.
   June 18, 2024), *appeal filed* No. 24-1756 (2d Cir.); *Ohio ex rel. Yost v. Ascent Health
28 Servs.*, 2024 WL 23187 (S.D. Ohio Jan. 2, 2024), *appeal filed* No. 24-3033 (6th Cir.).

challenge the conduct it purports to disclaim, and the disclaimers do not remove specific conduct from the case, such that a state court could decide the State's claims without ruling on the scope of Caremark's federal duties and defenses.  Even if the late-breaking purported disclaimers were valid (they are not), post-removal developments cannot eliminate jurisdiction, and the discretionary factors weigh strongly against remand.

The State now also contends that Caremark is not entitled to removal even absent the disclaimers.  This argument—which the State expressly declined to press in its earlier remand motion—is meritless.

## I.      The State's Post-Removal Disclaimers Do Not Defeat Jurisdiction.

### A.      The State's Post-Removal Disclaimers Are Invalid.

The State relies on an "appendix" containing twenty-eight different statements that it claims defeat jurisdiction.  This mishmash only proves that the State has not disclaimed Caremark's federal conduct, and that its vague purported disclaimers would force state-court litigation over the scope of Caremark' federal duties and defenses.

#### 1.      The purported disclaimers are illusory because the Complaint still challenges rebate negotiations.

The State's purported disclaimers fail because this lawsuit inevitably challenges the conduct the State purports to disclaim.  In reversing the prior remand decision, the Ninth Circuit explained that a purported disclaimer does not "defeat removal" when "the disclaimer fails to *explicitly* release claims or possible recovery from rebate practices as they relate to FEHBA." *California*, 2024 WL 3770326, at *1.  The Fifth Circuit likewise has acknowledged that waivers may be ineffective if plaintiffs attempt to pursue claims they purport to have waived.  *See St. Charles Surgical Hosp. v. La. Health Serv. & Indem.*, 990 F.3d 447, 451 (5th Cir. 2021).  Courts therefore routinely disregard purported disclaimers that are "inconsistent with the allegations of the Complaint," *Dougherty v. A O Smith*, 2014 WL 3542243, at *3-4 (D. Del. July 16, 2014), and when the plaintiff continues to pursue relief based on the defendant's federal duties, *Oberstar v. CBS*, 2008 WL 11338471, at *3 (C.D. Cal. Feb. 11, 2008).

The State's (varying) statements purport to waive "relief . . . relating to or arising out of . . . FEHBA plans," Dkt. 138-2 at 1, and assert that the State does "not challenge conduct related to . . . FEHBA programs," *id.* at 2. But the State's assertion that it has disclaimed conduct related to FEHBA is flatly inconsistent with its core theory of the case. The State alleges that Caremark's rebate negotiations and practices are unlawful.[2] As Judge Ikuta explained in her concurring opinion, "in targeting Caremark's rebate negotiations for private clients, California *necessarily also* targets Caremark's rebate negotiations for the federal government (since they are the same negotiations)." *California*, 2024 WL 3770326, at *2 (Ikuta, J., concurring) (emphasis added). Thus, "no disclaimer, however worded, can help California avoid a causal nexus between Caremark's conduct on behalf of the federal government and California's claims." *Id.*

Those observations were correct. To establish a causal nexus, Caremark need only demonstrate that the challenged conduct "occurred *while* [Caremark was] performing [its] official duties." *See DeFiore v. SOC*, 85 F.4th 546, 557 (9th Cir. 2023). As explained, Caremark simultaneously negotiates with manufacturers to obtain rebates that flow back to both its FEHBA and non-FEHBA clients. Notice at 9-11; Anderson Decl. ¶¶ 5-6. Thus, as Caremark alleged, "[t]he State could not possibly sever CaremarkPCS Health, LLC's conduct negotiating rebates for FEHBA Carriers from other conduct that it alleges." Notice at 10. The State has not explained—and cannot explain—how it might pull apart and disclaim a purely FEHBA component of a singular negotiation process. To the extent the divisibility of Caremark's negotiating conduct presents a factual question, such a factual disagreement would "raise[] the very type of

---

[2] The State's Amended Complaint confirms that the State continues to challenge Caremark's rebating practices. The Amended Complaint, filed after the State's purported disclaimers, directly challenge the federal conduct the State now purports to disclaim. *See* Ex. C, Am. Compl. ¶¶ 8, 13, 63, 114-29, 153-78, 195-98.

CAREMARKPCS HEALTH, L.L.C.'S MEMORANDUM IN OPPOSITION TO THE STATE'S RENEWED MOTION TO REMAND

factual dispute about the validity of [Caremark's federal] defense that should be submitted to . . . a federal court." *Cuomo*, 771 F.3d at 116.[3]

Because the State continues to challenge Caremark's federal conduct, the Court should disregard the State's purported disclaimers.  Plaintiffs like the State "cannot have it both ways"—the State cannot challenge Caremark's rebating practices and negotiations that include its FEHBA clients while simultaneously purporting to disclaim any claim based on Caremark's FEHBA duties.  *See Baker v. Atl. Richfield*, 962 F.3d 937, 945 n.3 (7th Cir. 2020).  Any dispute about whether Caremark's negotiations were federal or nonfederal simply presents a "causation question that a federal court should be the one to resolve." *Id.*  Unless the State were to disclaim all claims based on rebates or negotiations, the purported "disclaimers" are illusory.  *See id.*; *accord People ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 849 (7th Cir. 2024).

The State does not claim Caremark's negotiations are divisible, and its only response (at 13) is that OPM did not "direct" Caremark to negotiate rebates concurrently.  The State's argument misunderstands the law.  The Supreme Court, and every court of appeals to address the question (including in cases the State cites), have held that defendants do not need to establish that the government actually directed the challenged conduct. *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432-33 (1999); *Plaquemines Parish v. BP Am. Prod.*, 103 F.4th 324, 334 (5th Cir. 2024); *Mohr v. Trs. of Univ. of Pa.*, 93 F.4th 100, 104-05 (3d Cir. 2024); *Caris MPI v. UnitedHealthcare*, 108 F.4th 340, 347 (5th Cir. 2024); *Goncalves ex rel. Goncalves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1248 (9th Cir. 2017).  The State (at 13) concedes defendants "need not show that a federal officer directed the specific . . . activities being challenged." Section 1442(a)(1)

---

[3] At oral argument in its first remand motion, the State claimed it could effectuate its disclaimer in state court by relying on expert evidence to separate Caremark's negotiations into "FEHBA" and "non-FEHBA" conduct. Dkt. 125 at 12.  This argument (which the State has now abandoned) proves only that its remand argument relies on fact questions that must be resolved in Caremark's favor at this juncture.  *See Leite*, 749 F.3d at 1121; *infra* pp.13-15.

1  applies to defendants that are "vested with discretion" regarding how to go about helping

2  a federal superior carry out a duty or task. *Goncalves*, 865 F.3d at 1248.[4]

3      The State's argument also mischaracterizes Caremark's argument.  Caremark

4  never claimed that OPM directed it to concurrently negotiate rebates; rather, Caremark

5  asserted that it acts under OPM when performing PBM services for FEHBA plans, that

6  the State's challenge to its rebate negotiations relates to those services, and that it is

7  entitled to assert a FEHBA preemption defense. *See infra* pp.17-25.  That such

8  negotiations were inextricably intertwined with negotiations for non-FEHBA clients is

9  not the reason Caremark satisfies the removal elements—it is the reason the State cannot

10  disclaim Caremark's federal conduct while challenging rebate negotiations. *See Baker*,

11  962 F.3d at 945 n.3; *California*, 2024 WL 3770326, at *2 (Ikuta, J., concurring).

12      The State's argument (at 7) that companies with "both civilian and federal clients"

13  do not act under a federal officer "for all purposes" therefore misses the mark.  Caremark

14  has never claimed it acts under a federal officer when performing services for private

15  clients—Caremark has instead shown that it negotiated with manufacturers for FEHBA

16  and non-FEHBA rebates *at the same time* to create negotiating leverage (which benefits

17  FEHBA Carriers). *See* Anderson Decl. ¶ 6.  The State's cited cases involved separate

18  federal and non-federal sales of goods that could clearly be divided. *See Fidelitad v.*

19  *Insitu*, 904 F.3d 1095, 1097 (9th Cir. 2018) (drone sales to foreign entities); *Graves v.*

20  *3M Co.*, 17 F.4th 764, 770 (9th Cir. 2021) (earplug sales to private parties).

21      The State's professed policy concerns (at 6-7) are mistaken for similar reasons.

22  Caremark has never claimed that a private party "may *always* take advantage of federal

23  officer removal if any portion of the work it performs is on behalf of *both* private and

24  government organizations," and that is not the logical conclusion of Caremark's

25

---

26  [4] The State's principal authority to the contrary is a block quote from *West Virginia ex*
   *rel. McCuskey v. Eli Lilly & Co.*, 2024 U.S. Dist. LEXIS 160669, at *12 (N.D.W. Va.
27  Sep. 6, 2024), *appeal filed*, No. 24-1924 (4th Cir.).  This language has no persuasive
   value as it cites no authority, was copied word-for-word from West Virginia's briefs,
28  relies heavily on the now-reversed Remand Order from this case, and has been appealed.

CAREMARKPCS HEALTH, L.L.C.'S MEMORANDUM IN OPPOSITION TO THE STATE'S
RENEWED MOTION TO REMAND

argument. State Br. 6 (emphasis added). Many parties providing goods or services to the government will not be able to establish the requisite "acting under" relationship, and may not have a federal defense to any claims. Caremark is different because it helps OPM "deliver[] federal benefits to federal beneficiaries," subject to specific direction and oversight. *Doe v. BJC Health Sys.*, 89 F.4th 1037, 1045 (8th Cir. 2023). Section 1442(a)(1) routinely authorizes removal for private contractors performing this particular role. *See id.*; *accord Doe v. Cedars-Sinai Health Sys.*, 106 F.4th 907, 916 (9th Cir. 2024) (adopting *BJC Health*).

Given the tight nexus between the allegations and Caremark's federal duties, the State's reliance (at 13) on *Plaquemines Parish*, 103 F.4th 324, is misplaced. There, the court held that a lawsuit challenging the defendant's oil "*exploration and production*" activities was not sufficiently related to the defendant's federal duties regarding *oil refining*. *Id.* at 337, 341 (emphasis added). That case did not involve a disclaimer and had nothing to do with indivisible conduct. Similarly, *Connecticut ex rel. Tong v. Exxon Mobil*, 83 F.4th 122 (2d Cir. 2023), held there was no jurisdiction because there was a "total mismatch" between the challenged conduct and the defendant's federal duties. *Id.* at 145. The same is not true here.[5]

Because the State's disclaimer does not actually remove Caremark's FEHBA negotiations from the case, the State's entire argument about Caremark's federal defense collapses. The State contends (at 15-19) that FEHBA does not preempt Caremark's work for "non-FEHBA plans," and that preemption would apply only to "FEHBA plan conduct." But because the State challenges Caremark's negotiation for rebates that *includes* FEHBA plans, Caremark's preemption defense is at least colorable.

---

[5] In a footnote, the State (at 3 n.1) asserts its purported disclaimers mean that its claims exclude the "operation of administration of FEHBA" and the "negotiating or contracting for . . . rebates for analog insulin prescriptions where those prescriptions are filled by FEHBA." This footnote completely mischaracterizes the actual disclaimers—which say nothing of rebate negotiations, *see* Dkt. 138-2—and is directly contradicted by the State's ongoing challenge to Caremark's rebating practices. Tellingly, the State nowhere cites the language in this footnote or argues that this footnote warrants remand.

1      **2.     The disclaimers are circular because they would require**
2             **state-court adjudication over the scope of Caremark's**
              **federal duties and the validity of its federal defenses.**

3             The State's post-removal disclaimers also improperly would force Caremark to
4      litigate federal issues in state court.  Courts will credit disclaimers only if they are
5      "sufficiently clear and specific that, on remand, the state court would not be left to
6      determine whether an action was taken on behalf of an officer of the United States and
7      under color of office." *Healthcare Venture Partners v. Anthem Blue Cross & Blue*
8      *Shield*, 2021 WL 5194662, at *8 (S.D. Ohio Nov. 8, 2021); *see Marley v. Elliot*
9      *Turbomachinery*, 545 F. Supp. 2d 1266, 1274-75 (S.D. Fla. 2008).  The State therefore
10     was "required to expressly carve out certain factual bases, whether by time span or
11     location, such that any alleged injury caused by Caremark could not have happened
12     under OPM's direction." *Hawai'i*, 2024 WL 1907396, at *11.

13            In contrast, courts "reject[] circular disclaimers that would defeat [the] purpose of
14     § 1442(a)(1) by forcing federal contractors to prove in state court that they were acting
15     under the direction of the federal government." *St. Charles*, 990 F.3d at 451 (cleaned
16     up); *see Reaser v. Allis Chambers*, 2008 WL 8911521, at *6 (C.D. Cal. June 23, 2008);
17     *Corley v. Long-Lewis*, 688 F. Supp. 2d 1315, 1335-36 (N.D. Ala. Jan. 28, 2010).  This
18     insistence on a clear and specific claim waiver makes good sense.  Under section
19     1442(a)(1), "the question whether the challenged act was outside the scope of [the
20     Defendant's] official duties, or whether it was specifically directed by the federal
21     Government, is one for the federal—not state—courts to answer." *Leite*, 749 F.3d at
22     1124 (cleaned up); *see Baker*, 962 F.3d at 945 n.3.  Circular disclaimers contradict that
23     Congressional purpose because the state court on remand would need to adjudicate the
24     scope of the officer's federal duties to determine the scope of the waiver.

25            The State (at 3-4) agrees it must meet this standard, but does not even attempt to
26     identify what conduct it is disclaiming or explain how its laundry list of twenty-eight
27     separate statements is specific enough to prevent state-court litigation over the scope of
28     Caremark's federal duties.  Nor plausibly could it.  Many of the State's pronouncements

are entirely conclusory, claiming it does not "challenge conduct related to . . . FEHBA programs," is not "asserting claims related to FEHBA," "is not challenging Caremark's actions for FEHBA programs," and "is not challenging Caremark's conduct with respect to FEHBA plans." Dkt. 138-2 at 2. The State and Caremark vigorously dispute whether Caremark's negotiation practices are related to its FEHBA duties. Remanding the case would impermissibly "forc[e Caremark] to prove in state court that [it was] acting under the direction of the federal government." *St. Charles*, 990 F.3d at 451. Contrary to Congress's intent, a state court would be "left to determine whether an action was taken on behalf of an officer of the United States and under color of office." *Healthcare Venture Partners*, 2021 WL 5194662, at \*8; *see Hawai'i*, 2024 WL 1907396, at \*12.

The State's reliance (at 14) on *Wood v. Crane*, 764 F.3d 316, 321 (4th Cir. 2014) therefore is incorrect. The plaintiff there alleged he was harmed by asbestos contained in valves and gaskets manufactured by the defendant. *Id.* at 318. The defendant was entitled to removal based on its exposure relating to the valves, but not the gaskets. *Id.* at 319. Thus, the plaintiff was able to sever the federal connection by disclaiming a distinct category of conduct—manufacturing the valves. *See id.* at 321. The State's reliance (at 12) on asbestos cases cited in the Remand Order similarly fails; those claims also arose out of categories of discrete conduct separable by time and place.

In contrast, the State nowhere identifies any actual *conduct* it purports to disclaim. Instead, the State cites (at 4) a handful of district court cases that have granted remand in cases involving PBMs. But each of those cases granted remand by adopting this Court's Remand Order that the Ninth Circuit has reversed.[6]

The State also (at 14) argues that state-court litigation over the scope of Caremark's federal duties is permissible because state courts can rule on "causation" questions under state law. That argument is wrong many times over. For one thing, the State itself concedes (at 3-4) that a disclaimer is invalid if a state court would be required

---

[6] *See supra* n.1.

"to determine whether a challenged action was taken on behalf of OPM under color of office." As the State's cited authority explains, disclaimers are invalid if a state court on remand would need "to determine whether the [federal officer removal] statute applies to a given claim." *Healthcare Venture Partners*, 2021 WL 5194662, at *8. The State's general disclaimers violate this straightforward rule because the State is attempting to disclaim whatever federal conduct is necessary to get back to State court.

The State's disclaimers also are invalid because, if the case were remanded, they would force Caremark to litigate its FEHBA preemption defense in state court. As explained below, Caremark's preemption defense turns on whether the lawsuit relates to FEHBA benefits. *See infra* pp.24-25. Thus, in determining the scope of the State's disclaimers (which purport to disclaim claims related to FEHBA), a state court would be ruling on Caremark's federal defenses. Section 1442(a)(1) prohibits that precise result. *See, e.g.*, *Cuomo*, 771 F.3d at 116; *Baker*, 962 F.3d at 945 n.3.

## B. The Court Should Retain Jurisdiction Even if It Has Discretion to Remand.

Jurisdiction is measured at the time of removal, so post-removal disclaimers cannot deprive courts of subject-matter jurisdiction. *See Watkins v. Grover*, 508 F.2d 920, 921 (9th Cir. 1974); *Pelker v. Air & Liquid Sys.*, 2018 WL 679642, at *8 (D. Or. Feb. 2, 2018). Discretionary remand is inappropriate because the relevant factors of "judicial economy, convenience, fairness, and comity" all weigh strongly in favor of retaining jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

*First*, retaining jurisdiction would allow this case to flow into the MDL, where it could be heard in coordinated nationwide proceedings with the other related cases. Congress has expressed a preference for MDL consolidation of "civil actions involving one or more common questions" when doing so "will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). MDL proceedings benefit parties and courts because MDL "consolidation and central coordination" is designed to "yield significant benefits of economy and speed." *See In re Phenylpropanolamine (PPA)*

*Prod. Liab. Litig.*, 460 F.3d 1217, 1230 (9th Cir. 2006).  In contrast, remanding this case would keep it separate from the MDL.  Remand would also raise the unfair prospect of inconsistent state and federal rulings on the scope and applicability of federal law.  That prospect is particularly harmful here because the State's legal theory is not limited to conduct specific to California.  The State alleges that Caremark's conduct caused insulin list prices to rise, and those prices are set a on a nationwide (not state-specific) basis.  And the collective rebate negotiations this lawsuit challenges are as applicable to plans in Mississippi, Louisiana, and New Jersey as they are to plans in California.

The State ignores the MDL and brazenly requests (at 25) the Court simply to adopt its "prior analysis."  But the MDL is a substantial development that dramatically changed the landscape of this litigation and counsels strongly in favor of retaining the case.

*Second*, the equities weigh decidedly in favor of retaining jurisdiction.  The Supreme Court has held that a party's desire to "manipulate the forum" weighs against remand, so the State's stated desire to forum shop counsels strongly in favor of retaining the case.  *See Carnegie-Mellon*, 484 U.S. at 357.

The State (at 25) insists there is "no evidence" that it is engaging in "judicial manipulation or forum shopping."  But the State seeks to have this case re-remanded quickly to prevent any "chance that . . . the JPML could transfer this action to the District of New Jersey." Dkt. 144 at 8.  This is textbook judicial manipulation.

*Third*, comity weighs strongly in favor of federal jurisdiction because the State challenges conduct Caremark undertook under the direction of federal officers, and because any relief granted in this case would directly impact rebate payments that flow back to FEHBA Carriers and effectively become federal funds.  That is doubly true here because federal issues, including the validity of Caremark's federal defenses, will be addressed in an MDL that includes many other States' substantially similar claims.

The State (at 25) misunderstands the policy animating the federal officer removal statute when it argues that the case should be remanded because suits by Attorneys General on behalf of state citizens implicate "strong state interests in having the suit

CAREMARKPCS HEALTH, L.L.C.'S MEMORANDUM IN OPPOSITION TO THE STATE'S
RENEWED MOTION TO REMAND

heard in state court." That logic turns the federal officer removal statute on its head. The removal statute's "basic purpose is to protect the Federal Government from the interference with its operations that would ensue were a State able" to "bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Government acting . . . within the scope of their authority." *Watson v. Philip Morris*, 551 U.S. 142, 150 (2007) (cleaned up). The State's lawsuit is exactly the sort of interference with federal operations that the federal officer removal statute seeks to prevent. The State challenges the existence and size of rebates, which necessarily impact Caremark's FEHBA Carrier clients because the rebates the State challenges include rebates that pass through directly to FEHBA Carriers, and are thus federal funds.

## II. The Challenged Conduct Gives Rise to Federal Officer Removal.

The State also raises a fallback argument that remand is appropriate even without the purported disclaimers. The State was right not to raise this argument the first time around. Section 1442(a)(1) requires only that Caremark establish (a) it is a "person"; (b) "there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims," and (c) "it can assert a colorable federal defense." *DeFiore*, 85 F.4th at 553 (cleaned up). To show a "causal nexus," Caremark must show that it was "acting under" a federal officer, and that "such action is causally connected with the [plaintiff's] claims." *Id.* at 554. Caremark easily satisfies these elements because this lawsuit challenges rebate negotiations that Caremark performs pursuant to its delegated authority to provide pharmacy benefits for FEHBA Carriers.[7]

### A. Caremark Acts Under a Federal Officer.

Caremark acts under the direction of a federal agency when it negotiates for rebates OPM requires to be passed through to FEHBA Carriers to reduce the federal government's FEHBA-related costs. A private firm "acts under" a federal officer when it is engaged in "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal

---

[7] The State does not dispute that Caremark is a "person."

superior." *DeFiore*, 85 F.4th at 554 (citation omitted).  The Supreme Court has stated that the "words 'acting under' are broad" and "must be 'liberally construed'" in favor of the entity seeking removal.  *Goncalves*, 865 F.3d at 1245 (quoting *Watson*, 551 U.S. at 147).  Private parties therefore "act under" federal officers when they assist the federal government "in fulfilling 'basic governmental tasks' that 'the Government itself would have had to perform' if it had not contracted with a private firm." *San Mateo v. Chevron*, 32 F.4th 733, 756 (9th Cir. 2022) (citation omitted).

Under this broad standard, "[t]he classic example of a person who acts under a federal officer is a government contractor." *BJC Health*, 89 F.4th at 1044; *Papp v. Fore-Kast Sales*, 842 F.3d 805, 813 (3d Cir. 2016) (private contractor is "archetypal case"). Thus, "[p]arties who act as government middlemen and deliver federal benefits to federal beneficiaries" typically qualify.  *BJC Health*, 89 F.4th at 1045.

Accordingly, every circuit that has considered the question has held that the private FEHBA Carriers that contract with OPM "act under" OPM for purposes of section 1442(a)(1).  *See Goncalves*, 865 F.3d at 1249; *St. Charles Surgical Hosp. v. La. Health Serv. & Indem.*, 935 F.3d 352, 354-55 (5th Cir. 2019); *Jacks v. Meridian Res.*, 701 F.3d 1224, 1234 (8th Cir. 2012), *abrogated on other grounds by BP P.L.C. v. Mayor & City Council of Balt.*, 593 U.S. 230 (2021); *Anesthesiology Assocs. of Tallahassee v. Blue Cross Blue Shield of Fla.*, 2005 WL 6717869, at *2 (11th Cir. Mar. 18, 2005).  As the Ninth Circuit explained, FEHBA Carriers act under federal officers because FEHBA charges OPM with "overall administration" of the "comprehensive program of health insurance for federal employees," but allows OPM to share "the day-to-day operating responsibility" with private carriers.  *See Goncalves*, 865 F.3d at 1245-46 (cleaned up).

The logic of those rulings applies fully to PBMs.  Just like the carriers themselves, Caremark supports the FEHBA program by "help[ing] the government fulfill the basic task of establishing a health benefits program for federal employees." *Jacks*, 701 F.3d at 1233; *see Goncalves*, 865 F.3d at 1246-47.  As the Fourth Circuit has held, PBMs providing services for federal programs therefore act under federal officers when they

18

assist the government in fulfilling "basic governmental tasks" that the government otherwise "itself would have had to perform." *See Cnty. Board of Arlington Cnty. v. Express Scripts Pharmacy*, 996 F.3d 243, 253 (4th Cir. 2021) (citation omitted). Accordingly, the Fourth Circuit held that a PBM providing services to the DoD acted under federal officers because it helped administer federal benefits "subject to the federal government's guidance and control." *Id.* at 253-54; *accord Caris*, 108 F.4th at 347-48.

The same is true here.  Just like the DoD program in *Arlington County*, the relevant OPM contracts and regulations explicitly "contemplate[]" that FEHBA Carriers will utilize PBMs and further "ma[k]e [PBMs] directly accountable to the federal government" through ongoing OPM control, monitoring, reports, and audits.  996 F.3d at 253; *see* Oesterle Decl. ¶¶ 4-8.  OPM's regulations recognize that FEHBA Carriers will contract with PBM subcontractors to manage pharmacy benefits, which is an essential component of any healthcare plan. *See* 48 C.F.R. §§ 1602.170-16, 1604.7201, 1646.201(d), 1652.204-70, 1652.204-74, 1652.246-70.  The OPM Standard Contract therefore sets forth specific standards PBMs must follow, and subjects Caremark to "continued monitoring, oversight, and supervision by OPM over [Caremark's] performance of its PBM services . . . , including its practices regarding [rebates]." Oesterle Decl. ¶ 6; *see* FEHB Standard Contract at I-18 to I-19.  OPM routinely exercises that authority to audit Caremark's provision of PBM services and rebating practices and publishes audit reports memorializing its findings and proposing future action.  Oesterle Decl. ¶ 7.  For example, as recently as 2021, OPM exercised its authority to audit Caremark (and other PBMs) to "determine the reasonableness of the [FEHBA] Carriers' PBM arrangements" and to ensure compliance with the PBM-specific provisions of the FEHBA contracts.  *See* OPM, Audit of the Reasonableness of Selected FEHBP Carriers' Pharmacy Benefit Contracts at 3 (July 29, 2021), https://tinyurl.com/y2p3autv.

In addition to its ongoing oversight and audit authority, OPM regularly issues guidance letters to FEHBA Carriers and to PBMs clarifying the standards PBMs must follow.  *See* OPM Letter No. 2024-02, *Pharmacy Benefits Management (PBM)*

19

*Transparency Standards* (Jan. 25, 2024), https://tinyurl.com/rxxzk5sc; OPM Letter No. 2024-05, *Consolidated Pharmacy Benefits Guidance for the FEHBA Program* (Feb. 12, 2024), https://tinyurl.com/286u9bn9. This year, OPM issued a letter stating it remains "firmly committed to transparency standards regarding prescription drug benefits as an integral part of administering the FEHB program." OPM Letter No. 2024-02, at 1.

Because Caremark helps provide benefits to federal employees subject to OPM's oversight and control, "Caremark's actions at issue . . . regarding its formulary and rebate practices were actions under a federal officer." *Hawaiʻi*, 2024 WL 1907396, at *9 (cleaned up); *see Goncalves*, 865 F.3d at 1249.

The State claims (at 13) Caremark does not act under OPM because the FEHB Standard Contract "does not address rebate negotiations" and gives Caremark latitude as to "whether, and how, to obtain rebates." But parties that help perform governmental tasks act under federal officers even if they have discretion. *Goncalves*, 865 F.3d at 1248. And the State is wrong to claim Caremark has discretion not to negotiate rebates; obtaining rebates is a core component of Caremark's PBM services, and FEHBA Carriers would never contract with a PBM who was unwilling or unable to do so. Oesterle Decl. ¶ 8. Contrary to the State's assertion (at 13, 22), moreover, OPM does provide specific direction to Caremark about rebating practices, including regarding how the "cost of drugs" must be calculated, how Caremark must define certain fees, how Caremark and its affiliates process rebates, and which fees can constitute Caremark's "source of profit." *See, e.g.*, OPM Letter No. 2024-02, at 4-5.

In light of OPM's robust oversight and supervision, the State's claim (at 22) that Caremark has a "typical commercial relationship" with OPM in which Caremark provides "off-the-shelf," "generally available commercial services" falls flat. To be sure, private parties do not act under federal officers simply because they enter arm's-length transactions to provide commercial goods. But Caremark is no arm's-length seller, and the State's cited cases are readily distinguishable in light of Caremark's critical role implementing a federal benefits program subject to ongoing OPM direction.

For example, the court in *Washington v. Monsanto*, 738 F. App'x 554 (9th Cir. 2018) held that a manufacturer did not act under federal officers when selling commercial chemicals to the government because the government simply purchased "off-the-shelf" products and did not provide the manufacturer with any "supervis[ion]" or "direct[ion]." *Id.* at 555.  Similarly, in *Cabalce v. Thomas E. Blanchard & Associates*, 797 F.3d 720 (9th Cir. 2015), an independent contractor did not act under a federal officer because there was no indication that the contractor "operated under federal supervision or control." *Id.* at 728.  And the gas company defendant in *City of Honolulu v. Sunoco*, 39 F.4th 1101 (9th Cir. 2022), did not act under a federal officer when it was subject to "a general regulation applicable to all offshore oil leases" and there was no "specific direction and supervision." *Id.* at 1109; *see San Mateo*, 32 F.4th at 759-60 (similar). None of these defendants helped implement a federal benefits program subject to regular direction, guidance, and audits by a federal agency pursuant to federal contracts and regulation.[8]

The State's related argument (at 23) that Caremark provides an "off-the-shelf" product because private clients also utilize PBM services fails as well.  As the State itself concedes, private contractors may act under federal officers when selling products to the government, even if they sell the same products to private parties.  Remand Br. at 6-7 (discussing *Fidelitad*, 904 F.3d at 1097; *Graves*, 17 F.4th at 770).  In any event, the provision of PBM services pursuant to a federal program "is substantially different than the simple sale of commercial goods to the government" because such PBMs perform the "day-to-day administration" of the program.  *Arlington Cnty.*, 996 F.3d at 253-54.

The State's argument runs headlong into the cases holding that FEHBA Carriers "act under" federal officers.  Those carriers provide health insurance that is substantially similar to private insurance—indeed, the purpose of FEHBA is to establish a robust

---

[8] The State also relies on a quote from *West Virginia*, 2024 U.S. Dist. LEXIS 160669, at *12.  This language was, again, copy-and-pasted from West Virginia's brief and erroneously relied on the reversed Remand Order.

federal health benefits program to allow the federal government to "compete for the best talent along with private companies." *Jacks*, 701 F.3d at 1232 (citation omitted). As *Goncalves* explains, FEHBA Carriers "appear" to operate as "private insurance companies divorced from federal officers." 865 F.3d at 1249. But these carriers, like Caremark, act under OPM because of "OPM's oversight and directives, FEHBA's comprehensive federal program, and the [Carriers'] role in it." *Id.*

The State attempts (at 22-23) to distinguish *Goncalves* because that case involved the FEHBA Carriers' "subrogation efforts," which the Ninth Circuit analogized to an "agency" relationship. But courts have held that FEHBA Carriers act under federal officers when administering federal health benefits outside the subrogation context because of the "structure of the relationship between OPM and [the carriers]" and the oversight OPM exercises "at all times." *See St. Charles*, 935 F.3d at 356. And there is no meaningful distinction between subrogation and rebate negotiations. OPM has a strong federal interest in subrogation because subrogation recoveries "translate to premium cost savings for the federal government and FEHBA enrollees." *Goncalves* 865 F.3d at 1246-47 (cleaned up). Rebate negotiations vindicate the same interests because Caremark passes rebates through to the FEHBA Carriers. *See supra* pp.17-20.

The State (at 6, 9) misses the mark when it relies on cases holding that parties do not "act under" federal officers merely by complying with the law in regulated industries. Caremark has never argued that it is entitled to removal because it operates in a highly regulated industry. Caremark is, instead, entitled to removal because it helps "to *assist*, or to help *carry out*, the duties or tasks" of a federal superior implementing a federal benefits program pursuant to federal contract. *Watson*, 551 U.S. at 152.

Finally, the State (at 7-9) attempts to rely on its purported disclaimers to eliminate the "acting under" element. As explained, the disclaimers fail. *See supra* pp.8-15. In any event, no disclaimer would impact whether Caremark "acts under" federal officers. The "acting under" requirement analyzes the "relationship" between the defendant and the federal officer. *See DeFiore*, 85 F.4th at 554. That relationship exists regardless of

22

the lawsuit and any claims it may allege. The "acting under" prong is therefore separate from the "causal connection" requirement, discussed below, which tests the connection between the removing party's relationship with the government and the challenged conduct. *In re Commonwealth's Mot. to Appoint Couns. Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 470 (3d Cir. 2015); *Plaquemines Par.*, 103 F.4th at 335. Plaintiffs cannot plead around defendants' underlying relationship with the government.

### B. The State's Lawsuit Is Causally Connected to Caremark's Federal Conduct.

The State does not raise any argument that its claims are not causally connected to Caremark's federal duties absent its disclaimers. *See* State Br. 21-24. Nor plausibly could it. The statutory "relating to" standard must be "broadly" interpreted, and requires only actions "*connected* or *associated*[] with acts under color of federal office." *DeFiore*, 85 F.4th at 553, 557 n.6; *see Goncalves*, 865 F.3d at 1244-45.

The State challenges as unlawful Caremark's performance of PBM services, including its "rebate negotiation practices." *See California*, 2024 WL 3770326, at *1. As this Court explained, the State claims Caremark violated the UCL by "obtain[ing] 'significant secret rebates' from the Manufacturer Defendants in exchange for placing their insulin products favorably on formularies." Remand Order at 2; *see* Compl. ¶ 7. This lawsuit therefore presents a direct challenge to Caremark's rebate negotiations and rebating practices—precisely the duties Caremark performs pursuant to OPM's direction and control to help provide FEHBA benefits. *See supra* pp.2-5, 17-20. Absent its disclaimer, this lawsuit challenges and seeks recovery for alleged overpayments by FEHBA beneficiaries in California. *See* Compl. ¶¶ 4-13, 113-126, 147-167, 173-176. And the rebate negotiations and Rebate Agreements the State challenges were undertaken to obtain rebates for multiple Caremark clients, including FEHBA clients. Anderson Decl. ¶ 6. This combined negotiating power benefits FEHBA Carriers (and, thus, OPM). *See* Compl. ¶ 9; *Hawai'i*, 2024 WL 1907396, at *10 & n.3.

CAREMARKPCS HEALTH, L.L.C.'S MEMORANDUM IN OPPOSITION TO THE STATE'S RENEWED MOTION TO REMAND

## C.   Caremark Has Colorable Federal Defenses.

Caremark has colorable preemption defenses.  A federal defense need not be "clearly sustainable," as the purpose of the statute is to secure that the validity of the defense will be tried in federal court.  *See DeFiore*, 85 F.4th at 558 n.7.  A defense is colorable unless it "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction" or is "wholly insubstantial and frivolous."  *Id.* at 560.

FEHBA contains an expansive express preemption provision stating: "[t]he terms of any contract under this chapter which *relate to* the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans."  5 U.S.C. § 8902(m)(1) (emphasis added).  As the Supreme Court held, the term "relate to" must be given an expansive definition in this preemption provision because "FEHBA concerns benefits from a federal health insurance plan for federal employees that arise from a federal law in an area with a long history of federal involvement."  *Nevils*, 581 U.S. at 96 (cleaned up).  Thus, the FEHB Standard Contract's provisions regarding subrogation "relate to" payments with respect to benefits because the federal government has a "significant financial stake" in subrogation.  *Id.* Caremark's argument that the PBM provisions also are preemptive is at least colorable.

Relying on cases involving ERISA and the Federal Aviation Authorization Act, the State (at 17) argues that the PBM Standards in the FEHB Contract do not "relate to . . . payments with respect to benefits" because a future injunction or judgment in this case would not "dictate the choices" of FEHBA plans.  For one thing, that argument seemingly relies on the State's invalid disclaimer.  But with or without a disclaimer, any injunction would "dictate" how FEHBA obligations are discharged by undermining Caremark's ability to obtain rebates for its FEHBA clients.  *See Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1198 (10th Cir. 2023).  And just like the subrogation

CAREMARKPCS HEALTH, L.L.C.'S MEMORANDUM IN OPPOSITION TO THE STATE'S
RENEWED MOTION TO REMAND

provision in *Nevils*, the federal government has a "significant financial stake" in Caremark's rebate negotiations and PBM services. *See* 581 U.S. at 96; *supra* pp.17-20.[9]

The State claims (at 16) there is no preemption because the PBM Standards appear in Part I of the FEHB Contract. But just like the subrogation provisions in *Nevils*, the PBM provisions relate to "payments with respect to benefits" because they govern the process by which the government offsets the costs of providing FEHBA benefits to FEHBA beneficiaries. *See Hawai'i*, 2024 WL 1907396, at *13.

Caremark also has a colorable obstacle preemption defense, with or without any disclaimer, because this lawsuit presents an "unacceptable obstacle" to Caremark's ability to obtain rebates for FEHBA Carriers. *See Chamber of Com. of the U.S. v. Bonta*, 62 F.4th 473, 486 (9th Cir. 2023) (citation omitted). Contrary to the State's assertions (at 18-19, 24), this action undermines a central purpose of FEHBA because the lawsuit will make it more difficult for FEHBA Carriers to provide competitive health benefits to federal employees. *Nevils*, 581 U.S. at 91, 98; *Jacks*, 701 F.3d at 1232-33.

### III.     The Court Should Withhold Mailing the Remand.

If the Court disagrees, Caremark requests the Court to withhold mailing the remand so Caremark can request a stay. This Court "must stay its proceedings" during Caremark's as-of-right appeal. *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 738 (2023).

### <u>CONCLUSION</u>

For the foregoing reasons, the State's motion to remand should be denied.

---

[9] The State's cited cases (at 16-17, 24) are inapplicable because they predated *Nevils*, did not apply the "colorable federal defense" standard, and did not involve challenges to FEHBA conduct. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters*, 497 F.3d 972, 974-75 (9th Cir. 2007) (dispute between hospital and carrier); *In re Anthem Data Breach Litig.*, 162 F. Supp. 3d 953, 1014 (N.D. Cal. 2016) (data breach). *Cedars-Sinai* is particularly inapposite because it applied a since-abrogated standard for ERISA "complete preemption," which is a separate jurisdictional doctrine that Caremark has not invoked. *See* 497 F.3d at 975, 977; *Fossen v. Blue Cross & Blue Shield of Mont.*, 660 F.3d 1102, 1111-12 (9th Cir. 2011) (abrogating standard in ERISA context). Unlike those cases, the State here challenges precisely what the FEHBA contractual terms authorize: Caremark's performance of PBM services for FEHBA Carriers.

1  Dated: October 9, 2024            Respectfully submitted,

2

3                                     UMHOFER, MITCHELL & KING LLP

4

5                                     /s/ Elizabeth A. Mitchell
                                      Matthew Donald Umhofer
6                                     Elizabeth A. Mitchell

7
                                      WILLIAMS AND CONNOLLY LLP
8                                     Enu Mainigi (*pro hac vice*)
                                      Craig Singer (*pro hac vice*)
9                                     R. Kennon Poteat III (*pro hac vice*)
                                      A. Joshua Podoll (*pro hac vice*)
10                                    Daniel Dockery (*pro hac vice* forthcoming)
                                      *Attorneys for CVS Health Corporation and*
11                                    *CaremarkPCS Health, L.L.C.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for CVS Health Corporation and CaremarkPCS Health, L.L.C., certifies that this brief complies with the page limit set by court order in the Standing Order dated March 16, 2023.

Dated: October 9, 2024                    Respectfully submitted,


                                          UMHOFER, MITCHELL & KING LLP


                                          /s/ Elizabeth A. Mitchell
                                          Matthew Donald Umhofer
                                          Elizabeth A. Mitchell


                                          WILLIAMS AND CONNOLLY LLP
                                          Enu Mainigi (*pro hac vice*)
                                          Craig Singer (*pro hac vice*)
                                          R. Kennon Poteat III (*pro hac vice*)
                                          A. Joshua Podoll (*pro hac vice*)
                                          Daniel Dockery (*pro hac vice* forthcoming)
                                          *Attorneys for CVS Health Corporation and*
                                          *CaremarkPCS Health, L.L.C.*