Rob Bonta
Attorney General of California
Neli Palma
Senior Assistant Attorney General
Emilio Varanini (SBN 163952)
Supervising Deputy Attorney General
Lauren Zweier (SBN 291361)
Deputy Attorney General
    455 Golden Gate Ave., Suite 11000
    San Francisco, CA 94102
    Telephone: (415) 510-4400
    Facsimile: (415) 703-5908
    Email: Emilio.Varanini@doj.ca.gov
    Lauren.Zweier@doj.ca.gov

Darcie Tilly (SBN 239715)
Deputy Attorney General
    600 West Broadway, Suite 1800
    San Diego, CA 92101
    P.O. Box 85266
    San Diego, CA 92186-5266
    Telephone: (619) 738-9559
    E-mail: Darcie.Tilly@doj.ca.gov

[Additional Counsel on the Signature Page]
*Attorneys for the People of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>                                    Plaintiff,<br><br>v.<br><br>ELI LILLY AND COMPANY, et al.,<br><br>                                    Defendants. | Case No. 2:23-cv-01929-SPG-SK<br><br>**Reply in Support of Renewed Motion to Remand**<br><br>Date:          October 30, 2024<br>Time:          1:30 p.m.<br>Courtroom:  5C<br>Judge: Hon. Sherilyn Peace Garnett |

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 1

I.    Remand Is Mandatory as Jurisdiction Has Always Been
Deficient ...................................................................................................... 1

    A.    Caremark and ESI Are Not "Acting Under" a Federal
Officer When Negotiating and Contracting for Insulin
Rebates ............................................................................................. 1

        1.    Caremark Is Providing an Off-the-Shelf Service, as
a Subcontractor, Pursuant to a Contract with
Generic Terms ...................................................................... 1

        2.    ESI Does Not Negotiate Insulin Rebates for the
DoD ...................................................................................... 4

    B.    Neither Caremark nor ESI Have Colorable Federal
Defenses .......................................................................................... 4

        1.    Caremark's Preemption Defense Is Not Colorable
Because Rebates Are Not a FEHBA Benefit or
Benefit Payment ................................................................... 4

        2.    ESI's Preemption Defense Is Not Colorable
Because ESI Does Not Negotiate Rebates for
TRICARE Plans .................................................................... 6

        3.    ESI's Government Contractor Defense Is Barred by
Ninth Circuit Precedent and ESI's Attempt to
Convert the Defense into a Brand-New Defense
Should Be Rejected ............................................................... 7

II.    The Post-Removal Disclaimers Support Discretionary Remand ......... 7

    A.    Federal Officers Do Not Control Non-Federal Conduct ............ 7

    B.    Neither Caremark nor ESI Have Colorable Federal
Defenses to the People's Claims Challenging Non-
FEHBA/TRICARE Conduct ......................................................... 9

    C.    The Court May Consider the Post-Removal Disclaimers
to Analyze the Causal Connection Prong ................................... 9

    D.    There Is No Causal Connection Between Federal
Directives and the Challenged Non-Federal Conduct ............. 10

    E.    Comity Supports Discretionary Remand and Concerns
About Coordinating with MDL No. 3080 Can Be
Addressed Through Informal Coordination .............................. 13

III.    There Is No Reason to Stay Mailing of the Remand Order ............... 15

CONCLUSION .......................................................................................................... 15

# TABLE OF AUTHORITIES

Page

**CASES**

*Addotto v. Equitable Shipyards, LLC*
    2014 WL 1389632 (E.D. La. Mar. 31, 2014)......................................................4

*Ahn v. Cigna Health & Life Ins. Co.*
    2019 WL 5304628 (D.N.J. Oct. 21, 2019)...........................................................9

*Anne Arundel Cty. v. BP P.L.C.*
    94 F.4th 343 (4th Cir. 2024)...............................................................................11

*Att'y Gen. of N.J. v. Dow Chem. Co.*
    2024 WL 1740087 (D.N.J. Apr. 23, 2024).....................................................3, 11

*Att'y Gen. of N.J. v. Dow Chem. Co.*
    2024 WL 3361395 (S.D.N.Y. July 9, 2024).......................................................15

*Boyle v. United Tech. Corp.*
    487 U.S. 500 (1988) .............................................................................................7

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*
    797 F.3d 720 (9th Cir. 2015)............................................................................3, 7

*California v. Express Scripts, Inc.*
    2024 WL 841197 (C.D. Cal. Feb. 28, 2024)......................................................15

*City of Honolulu v. Sunoco LP*
    39 F.4th 1101 (9th Cir. 2022)...............................................................................3

*Coinbase, Inc. v. Bielski*
    599 U.S. 736 (2023) ...........................................................................................15

*Coventry Health Care of Mo., Inc. v. Nevils*
    581 U.S. 87 (2017) ...........................................................................................5, 6

*Cty. of San Mateo v. Chevron Corp.*
    32 F.4th 733 (9th Cir. 2022)..............................................................................2, 3

*Dan's City Used Cars, Inc. v. Pelkey*
    569 U.S. 251 (2013) ...........................................................................................12

**TABLE OF AUTHORITIES**
(continued)

Page

*DeFiore v. SOC LLC*
    85 F.4th 546 (9th Cir. 2023) ............................................................... 7, 10, 11, 13

*Delaware v. BP Am. Inc.*
    578 F. Supp. 3d 618 (D. Del. 2022) ....................................................... 8

*Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.*
    2024 WL 4229902 (S.D.N.Y. Sept. 17, 2024) ................................. 5, 6

*Empire Healthchoice Assurance, Inc. v. McVeigh*
    547 U.S. 677 (2006) ................................................................. 5

*Fidelitad, Inc. v. Insitu, Inc.*
    904 F.3d 1095 (9th Cir. 2018) ........................................................ 3, 4

*Fisher v. Asbestos Corp. Ltd.*
    2014 WL 3752020 (C.D. Cal. July 30, 2014) ................................. 11

*Georgia v. Clark*
    2023 U.S. App. LEXIS 34018 (11th Cir. Dec. 21, 2023) ................. 15

*Goncalves v. Rady Children's Hospital San Diego*
    865 F.3d 1237 (9th Cir. 2017) ........................................................ 4

*Gonzalez v. Thaler*
    565 U.S. 134 (2012) ................................................................. 1

*Hawai'i v. CaremarkPCS Health, L.L.C.*
    2024 WL 1907396 (D. Haw. May 1, 2024) ................................. 5, 12

*In re Anthem, Inc. Data Breach Litig.*
    162 F. Supp. 3d 953 (N.D. Cal. 2016) ........................................... 6

*Jefferson County v. Acker*
    527 U.S. 423 (1999) ................................................................. 8

*Lake v. Ohana Military Cmtys., LLC*
    14 F.4th 993 (9th Cir. 2021) ........................................................ 8

*Maine v. 3M Co.*
    2023 WL 4758816 (D. Me. July 26, 2023) ................................. 13

**TABLE OF AUTHORITIES**
(continued)

Page

*Maryland v. Soper*
    270 U.S. 9 (1926) ................................................................. 10

*Minnesota v. Am. Petroleum Inst.*
    63 F.4th 703 (8th Cir. 2023) ......................................... 11, 12

*Nevada v. Bank of Am. Corp.*
    672 F.3d 661 (9th Cir. 2012) ............................................. 14

*Nken v. Holder*
    556 U.S. 418 (2009) ........................................................... 15

*O'Halloran v. Univ. of Wash.*
    856 F.2d 1375 (9th Cir. 1988) ............................................. 7

*Oliver v. Ralphs Grocery Co.*
    654 F.3d 903 (9th Cir. 2011) ............................................. 13

*Patel v. Del Taco, Inc.*
    446 F.3d 996 (9th Cir. 2006) ............................................. 15

*Pharm. Care Management Ass'n v. Mulready*
    78 F.4th 1183 (10th Cir. 2023) .................................... 5, 6, 9

*Plaquemines Par. v. BP Am. Prod. Co.*
    103 F.4th 324 (5th Cir. 2024) ........................................... 11

*Providence Health Plan v. McDowell*
    385 F.3d 1168 (9th Cir. 2004) ......................................... 5, 6

*Schachner v. Blue Cross & Blue Shield of Ohio*
    77 F.3d 889 (6th Cir. 1996) ................................................. 9

*United States v. Trump*
    706 F. Supp. 3d 91 (D.D.C. 2023) ................................... 15

*Wash. Physicians Serv. Ass'n v. Gregoire*
    147 F.3d 1039 (9th Cir. 1998) ............................................. 9

*Watson v. Philip Morris Cos.*
    551 U.S. 142 (2007) ................................................. 2, 3, 4, 8

**TABLE OF AUTHORITIES**
(continued)

Page

*West Virginia v. Eli Lilly & Co.*
    2024 WL 4357749 (N.D.W. Va. Sept. 6, 2024) .................................................. 8, 9

*Westchester Cty. v. Mylan Pharms., Inc.*
    2024 WL 3043121 (S.D.N.Y. June 18, 2024) ...................................................... 13

*Winters v. Diamond Shamrock Chem. Co.*
    149 F.3d 387 (5th Cir. 1998) .......................................................................... 2, 3

**STATUTES**

5 U.S.C. § 8902 ............................................................................................... 2, 5

28 U.S.C. § 1442 ........................................................................................... 1, 4, 10

**OTHER AUTHORITIES**

5 C.F.R. § 890.106 ................................................................................................ 5

32 C.F.R. § 199.17 ............................................................................................... 6

32 C.F.R. § 199.21 ............................................................................................... 6

# INTRODUCTION

After over a year of briefing and argument, Caremark and Express Scripts (ESI) have yet to identify a single guidance from a federal officer regarding how they negotiate insulin rebates. The most Caremark musters relates to a prohibition on pocketing Federal Employees Health Benefits Act (FEHBA) rebates. ESI does not even contend it negotiates rebates for the Department of Defense (DoD). Thus, removal under 28 U.S.C. § 1442 is improper, irrespective of the post-removal disclaimers, because defendants fail to plead they "act under" a federal officer when negotiating insulin rebates. Removal also fails irrespective of the disclaimers because defendants' preemption arguments ignore the preemption statutes' text.

When the post-removal disclaimers are considered, remand is even more appropriate. The weight of district court authority finds Caremark and ESI cannot remove claims limited to non-federal activity. Their arguments against this authority conflict with precedent from the Supreme Court and the Ninth and other circuits. Further, their arguments against discretionary remand fail to grapple with case law recognizing a sovereign's strong interest in pursuing claims in state court.

For these reasons, the People respectfully request the Court grant remand.

# ARGUMENT

## I. REMAND IS MANDATORY AS JURISDICTION HAS ALWAYS BEEN DEFICIENT

As the People address in Section II, *infra*, it would be appropriate to grant discretionary remand based on the People's post-removal disclaimers. Even absent the People's Section II arguments, remand is proper. In fact, it is required. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (subject matter jurisdiction not waivable).

### A. Caremark and ESI Are Not "Acting Under" a Federal Officer When Negotiating and Contracting for Insulin Rebates

#### 1. Caremark Is Providing an Off-the-Shelf Service, as a Subcontractor, Pursuant to a Contract with Generic Terms

The evidence Caremark submitted in support of its Opposition confirms that it has not met section 1442's "acting under" prong.

To support its position, Caremark cites regulations, the standard OPM-FEHBA plan contract, OPM letters to FEHBA plans, declarations, and an OPM audit of FEHBA plans' pharmacy benefit manager (PBM) contracts. ECF 149 at 19-20. Not one shows an "unusually close" OPM-Caremark relationship regarding insulin rebates. *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 153 (2007).

Starting with the regulations: They merely reflect that FEHBA plans may subcontract with PBMs even though 5 U.S.C. § 8902 prohibits OPM from directly contracting with PBMs. The standard contract, with respect to rebates, only requires that plans prohibit PBMs from keeping rebates and mandates transparency regarding rebates obtained. ECF 149-4 at 26. It also allows for audits to comply with acquisition regulations. As for the rest: At most, they reflect the standard OPM-FEHBA plan contract terms. The letters mainly discuss matters irrelevant to the "acting under" prong because they do not concern rebates. *E.g.*, ECF 149 at 20 (citing a letter's discussion of pharmacy payments). If a letter mentions rebates, it is merely that plans are to ban PBMs from keeping, and have transparency regarding, rebates. Mr. Anderson does not discuss OPM. Mr. Oesterle's reference to OPM supervision is vague, unspecific, and simply summarizes the standard plan contract. The OPM audit of plans relates to financial terms between plans and PBMs. None of this reflects detailed OPM instructions to PBMs on how to obtain insulin rebates.

Caremark's evidence is a far cry from the facts in *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir. 1998), *overruled on other grounds by Latiolais v. Huntington Ingalls, Inc*., 951 F.3d 286 (5th Cir. 2020). There, the prong was satisfied by evidence the defendant (i) produced Agent Orange following military "specifications concerning [its] make-up, packaging, and delivery," and (ii) was subject to "on-going supervision over the formulation, packaging, and delivery of Agent Orange." *Cty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 757 (9th Cir. 2022) (quoting *Winters*, 149 F.3d at 399-400).

Instead, Caremark's relationship with FEHBA plans (a step removed from

OPM) is more akin to the relationship in *Cabalce v. Thomas E. Blanchard & Associates, Inc.*, which was insufficient to support removal because the defendants' duties were described in "general terms" and there was no "federal supervision or control" of the defendants' conduct. 797 F.3d 720, 728 (9th Cir. 2015); *see also id.* at 729 (acts under "general auspices of federal direction" do not support removal).

That OPM has audit rights to analyze whether FEHBA plans are credited the appropriate rebates does not alter this conclusion. The Ninth Circuit recognizes that inspections are part of arm's-length business relationships. *San Mateo*, 32 F.4th at 758. Also, as the People argued in their opening brief, OPM's audit rights reflect compliance with federal acquisition regulations. ECF 138-1 at 8-9. Stated simply, the audit rights are not substantive control by OPM about how rebates are obtained.

Further undermining Caremark's position is the fact that Caremark only provides FEHBA plans a generally available commercial service. *Cf. Winters*, 149 F.3d at 399 (noting Agent Orange was specially made for the military). Caremark admits the rebate negotiation service it provides FEHBA plans is not unique. ECF 149-2. The Ninth Circuit and other courts recognize a defendant cannot remove in such circumstances. *City of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1108 (9th Cir. 2022) ("typical commercial relationship" not "acting under"); *Att'y Gen. of N.J. v. Dow Chem. Co.*, 2024 WL 1740087, at *6 (D.N.J. Apr. 23, 2024) ("acting under" unmet where product was sold commercially before federal sales).

Caremark fails to distinguish itself from off-the-shelf cases. It argues it is different due to its alleged administration of pharmacy benefits. ECF 149 at 21. Such activities, however, are irrelevant to the "acting under" analysis because they are not "the actions that are the subject of [the People's] complaint." *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018); *see Watson*, 551 U.S. at 147.

Also irrelevant are cases holding FEHBA plans that contract with OPM "act under" OPM. ECF 149 at 18. They are inapt since they involve different challenged conduct and Caremark is a subcontractor. "[A] subcontractor with no direct contract

with the government cannot satisfy the acting under requirement." *Addotto v. Equitable Shipyards, LLC*, 2014 WL 1389632, at *4 (E.D. La. Mar. 31, 2014).

Finally, unlike what Caremark contends, there is a distinction between this matter and subrogation cases like *Goncalves v. Rady Children's Hospital San Diego*, 865 F.3d 1237 (9th Cir. 2017). In *Goncalves*, the plaintiff alleged a FEHBA plan's pursuit of subrogation violated California law. *Id.* at 1242. The Ninth Circuit held the "acting under" prong was met because OPM obligated plans to subrogate and provided instruction on doing so. *Id.* at 1247-49. Contrastingly, here Caremark is a subcontractor and OPM provides no guidance on how to negotiate rebates.

## 2. ESI Does Not Negotiate Insulin Rebates for the DoD

ESI contends the People seek remand with respect to it only due to disclaimers. This is not true. ECF 138 at 3; ECF 138-1 at 1-2, 21, 24 & n.7. Irrespective of the post-removal disclaimers, ESI does not satisfy the "acting under" prong due to its failure to allege it negotiates insulin rebates for TRICARE or that the DoD supervises negotiations. *See Fidelitad*, 904 F.3d at 1099-1100 (finding no section 1442 jurisdiction where there was no federal control of challenged conduct).

ESI attempts to overcome this deficiency by referencing issues peripheral to rebate negotiation, such as its operation of a pharmacy. ECF 148 at 7-8. ESI claims such issues can satisfy the "acting under" prong because it contends the "acting under" prong analyzes "the conduct on which the defendant's removal theory rests." *Id.* at 9. ESI is wrong. In *Watson* the Supreme Court stated: "The federal statute permits removal *only if* [defendant], *in carrying out the acts that are the subject of the . . . complaint*, was acting under any agency or officer of the United States." 551 U.S. at 147 (emphasis added) (alterations and quotations omitted).

## B. Neither Caremark nor ESI Have Colorable Federal Defenses

### 1. Caremark's Preemption Defense Is Not Colorable Because Rebates Are Not a FEHBA Benefit or Benefit Payment

The People's opening brief argued Caremark's preemption defense was not

1  colorable because rebates are not a FEHBA benefit or a FEHBA benefit payment.

2  ECF 138-1 at 24. Caremark's responses illustrate that the People are correct.

3      Caremark relies on *Coventry Health Care of Missouri, Inc. v. Nevils*, 581 U.S.

4  87 (2017), a case addressing whether FEHBA preempted a state anti-subrogation

5  law. Unlike rebates, subrogation is defined by regulation as (i) a condition of

6  benefits or benefit payments, and (ii) "relat[ing] to . . . benefits (including payments

7  with respect to benefits)." 5 C.F.R. § 890.106(b)(1), (h). Also, "benefit payment" is

8  used in the subrogation regulation to reflect money received by beneficiaries or care

9  providers. *Id.* § 890.106(c)(1); *see Empire Healthchoice Assurance, Inc. v.*

10  *McVeigh*, 547 U.S. 677, 697 (2006). And unlike rebates, subrogation is addressed

11  in the section of the FEHBA Standard Contract on benefits, § 2.5. ECF 149-4 at 40.

12      *Nevils* shows a second reason why Caremark's argument fails. FEHBA only

13  preempts state laws that "relate[] to health insurance or plans." 5 U.S.C. § 8902(m).

14  Unlike in *Nevils*, the People's claims do not relate to health insurance or plans.

15      Claims under generally applicable laws do not relate to health insurance if

16  they do not require interpretation of FEHBA plan terms. *See Emergency Physician*

17  *Servs. of N.Y. v. UnitedHealth Grp., Inc.*, 2024 WL 4229902, *7-10 (S.D.N.Y. Sept.

18  17, 2024) (no FEHBA preemption when claim would not alter plan administration);

19  *see also Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172-73 (9th Cir.

20  2004) (similar, but for Employee Retirement Income Security Act (ERISA)).

21      The People's claims do not require interpretation of FEHBA plan terms. Thus,

22  Caremark's citation to *Pharmaceutical Care Management Association v. Mulready*,

23  78 F.4th 1183 (10th Cir. 2023) and *Hawai'i v. CaremarkPCS Health, L.L.C.*, 2024

24  WL 1907396 (D. Haw. May 1, 2024) does not help it.[1] In *Mulready* the Tenth

25  Circuit held that ERISA preempted laws it contended would force ERISA plans to

26  alter coverage. 78 F.4th at 1198-1200. Here, Caremark claims the People's lawsuit

27  would affect its "ability to obtain rebates for its FEHBA clients," ECF 149 at 24,

28  _____

[1] The People contend *Mulready* is incorrectly decided, but that is irrelevant here.

but this falls short of dictating substantive FEHBA plan coverage choices. As *Mulready* recognized, "a mere cost regulation" is not preempted by ERISA. 78 F.4th at 1199. As for *Hawai'i*, it is incorrectly decided since it did not consider the distinct treatment of subrogation and rebates in the FEHBA Standard Contract and regulations or whether the lawsuit would require interpretation of plan terms.

Caremark's thin obstacle preemption argument fares no better. Caremark claims the People's lawsuit undermines a central purpose of FEHBA by making it more difficult for FEHBA plans to "provide competitive health benefits to federal employees." ECF 149 at 25. Caremark cites no support for the claim the purpose of FEHBA preemption goes beyond plan uniformity to include drug rebates. *Cf. Nevils*, 581 U.S. at 91. Nor does it argue the People's lawsuit affects benefit uniformity. *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 1015 (N.D. Cal. 2016) (no preemption where lawsuit would not undermine plan uniformity).

### 2. ESI's Preemption Defense Is Not Colorable Because ESI Does Not Negotiate Rebates for TRICARE Plans

ESI likewise does not have a colorable preemption defense. ESI does not dispute that it is the TRICARE contract that has preemptive force. 32 C.F.R. §§ 199.17(a)(7), 199.21(o)(2). Nor can it dispute that only state laws "relating to health insurance, prepaid health plans, or other health care delivery or financing methods" are preempted. *Id.* at §§ 199.17(a)(7)(i), 199.21(o)(2). ESI merely argues the People's preemption argument fails because the disclaimers are faulty. ECF 148 at 15. Yet ESI's failure to plead it negotiates TRICARE rebates means, irrespective of the disclaimers, it cannot satisfy either preemption requirement.

The lawsuit challenges how ESI negotiates rebates, yet the TRICARE contract does not have ESI negotiating rebates for TRICARE. ECF 138-1 at 24. Thus, the contract does not preempt this lawsuit. Also, because ESI does not negotiate rebates for TRICARE plans, there is no basis for ESI to argue the People's claims relate to health insurance. *See McDowell*, 385 F.3d at 1172-73; *Emergency Physician Servs.*,

2024 WL 4229902, *7-10. Its preemption defense is immaterial and not colorable.

> **3.  ESI's Government Contractor Defense Is Barred by Ninth Circuit Precedent and ESI's Attempt to Convert the Defense into a Brand-New Defense Should Be Rejected**

ESI's second purported federal defense pleaded in its notice of removal is the "government contractor" defense. ECF 1 at 17-18. The framework for this defense was established in *Boyle v. United Technologies Corporation*, 487 U.S. 500 (1988), *see* ECF 1 at 17 (citing *Boyle*), and it "is only available to contractors who design and manufacture military equipment." *Cabalce*, 797 F.3d at 731 (citation omitted). Given this black-letter law and the fact ESI does not claim it manufactures military equipment, ESI has abandoned the originally pleaded defense.

ESI instead requests the Court "construe Express Scripts' government contractor defense as a compliance-with-government-contract defense." ECF 148 at 16. However, courts cannot consider defenses that were not specifically pleaded in a defendant's notice of removal. *See O'Halloran v. Univ. of Wash.*, 856 F.2d 1375, 1381 (9th Cir. 1988). Additionally, even if the Court considers the merits of this defense, it is not colorable. The case ESI relies on, *DeFiore v. SOC LLC*, was brought by third-party beneficiaries to a federal contract where the defendant claimed compliance with that contract as a defense to the plaintiffs' breach of contract claim. 85 F.4th 546, 551-52 (9th Cir. 2023). The defense is irrelevant here since the People are not asserting a breach of the TRICARE contract. Moreover, the TRICARE contract does not govern ESI's rebating practices. ESI's purported contract compliance is immaterial and the new defense is not colorable.

## II.  THE POST-REMOVAL DISCLAIMERS SUPPORT DISCRETIONARY REMAND

Additional bases to remand exist due to the People's post-removal disclaimers.

### A.  Federal Officers Do Not Control Non-Federal Conduct

Neither Caremark nor ESI claim to be under OPM/DoD subjection, guidance, or control for non-FEHBA/TRICARE plans. Because the People's post-removal disclaimers exclude TRICARE and FEHBA from the lawsuit, the "acting under"

prong is unmet and jurisdiction is lacking. *See Watson*, 551 U.S. at 147.

Both Caremark and ESI try to avoid this conclusion by claiming the People's post-removal disclaimers cannot undercut the "acting under" prong. ECF 148 at 9; ECF 149 at 22-23. There are several faults in their position.

Most critically, Caremark and ESI's argument ignores the Supreme Court's directive in *Watson* that the "acting under" analysis must be of "the acts that are the subject of the . . . complaint." 551 U.S. at 147 (alterations and quotations omitted).

Moreover, Caremark and ESI's assertion the People are conflating the "acting under" and causal connection analyses lacks merit. The People's "acting under" argument focuses on whether federal officers are Caremark's and ESI's superiors in the non-FEHBA/TRICARE context. The People's causal connection argument focuses on the lack of federal direction of non-FEHBA/TRICARE insulin rebate negotiation. Regardless, even if the People collapsed the prongs, that would not be an error. Where, as here, both prongs are missing, the Ninth Circuit collapses them. It holds remand is required if the "'central issue' in the causal nexus analysis—whether a federal officer directed the defendant to take the action challenged—is unmet." *Lake v. Ohana Military Cmtys., LLC*, 14 F.4th 993, 1005 (9th Cir. 2021).

Next, Caremark's contention its insulin rebate conduct is indivisible lacks support. Given the lack of allegations regarding OPM subjection, guidance, and control over non-FEHBA plans, Caremark's decision to "conduct business in a particular way . . . does not mean [it] cannot conduct negotiations differently." *West Virginia v. Eli Lilly & Co.*, 2024 WL 4357749, at *4-5 (N.D.W. Va. Sept. 6, 2024) (citation omitted) (Caremark not "acting under" OPM for "nonfederal contracts").

Finally, ESI misreads *Jefferson County v. Acker*, 527 U.S. 423 (1999) when it argues that limiting the "acting under" analysis to its civilian conduct fails to credit its case theory. ECF 148 at 9. ESI cannot ignore a disclaimer "and then ask the Court to accept [its] 'theory of the case' for purposes of removal." *Delaware v. BP Am. Inc.,* 578 F. Supp. 3d 618, 636 n.21 (D. Del. 2022).

**B. Neither Caremark nor ESI Have Colorable Federal Defenses to the People's Claims Challenging Non-FEHBA/TRICARE Conduct**

Caremark and ESI argue they have FEHBA and TRICARE defenses to the People's claims, even as those claims relate to non-FEHBA and non-TRICARE conduct. ECF 148 at 15; ECF 149 at 24-25. This is not true.

As discussed, ERISA cases can be helpful in the FEHBA/TRICARE context; for all three, for a state law to be preempted, the state law must "relate to" the plan at issue (ERISA, FEHBA, or TRICARE). ECF 138-1 at 17, 20. Courts hold ERISA does not preempt claims about non-ERISA plans. *Schachner v. Blue Cross & Blue Shield of Ohio*, 77 F.3d 889, 896 (6th Cir. 1996) (ERISA did not preempt state law claims about non-ERISA plans); *Ahn v. Cigna Health & Life Ins. Co.*, 2019 WL 5304628, at *5 (D.N.J. Oct. 21, 2019) (similar). Even *Mulready*, one of Caremark's cases, states its holding is "cabin[ed]" in that the law at issue was not preempted as applied to non-ERISA plans. 78 F.4th at 1201. And the Ninth Circuit held ERISA did not preempt a health insurance law that excluded ERISA plans from its scope. *Wash. Physicians Serv. Ass'n v. Gregoire*, 147 F.3d 1039, 1044 (9th Cir. 1998).

Just as ERISA does not preempt non-ERISA claims, FEHBA and TRICARE do not preempt the non-FEHBA/TRICARE claims here. *West Virginia*, 2024 WL 4357749, at *6 (rejecting "bootstrap[ing]" of preemption to non-federal claim).

**C. The Court May Consider the Post-Removal Disclaimers to Analyze the Causal Connection Prong**

The People contend the Ninth Circuit's instruction for this Court "to analyze California's remaining arguments for remanding to state court," ECF 133 at 4, includes evaluation of the post-removal disclaimers' effect on causal connection.

ESI, in contrast, argues that, because the People briefed the post-removal disclaimers on appeal, the Ninth Circuit "impliedly disposed" of the issue of the causal connection prong and the post-removal disclaimers. ECF 148 at 4. This is contradicted by the appellate order, which explicitly states the disclaimer in the

"complaint" was deficient. ECF 133 at 3-4, 5-6. Also tellingly, if ESI were correct, then the concurrence would have no basis to criticize the majority. ECF 133 at 6-7. The majority's limited holding and instruction, and the concurrence, mean the majority did not implicitly decide the causal connection/post-removal disclaimers issue. Thus, the cases relied upon by ESI for this point are inapplicable.[2]

### D. There Is No Causal Connection Between Federal Directives and the Challenged Non-Federal Conduct

Caremark's and ESI's arguments regarding the People's post-removal disclaimers should also be rejected with respect to section 1442's causal connection prong. They make unique and overlapping arguments, but all are inconsistent with the causal connection standard and cases that respect claim disclaimers.

The Court should reject Caremark's unique arguments. To start, Caremark misapplies the pre-2011 causal connection test.[3] Caremark argues that it need only allege the challenged conduct "occurred *while* [it was] performing [its] official duties." ECF 149 at 9 (citing *DeFiore*, 85 F.4th at 557). Caremark claims its simultaneous FEHBA and non-FEHBA rebate negotiation meets this test. *Id.*

This assertion does not meet the pre-2011 test. This is because Caremark does not allege its official duties required simultaneous negotiations. Caremark has thus not shown the challenged conduct (*i.e.*, non-FEHBA rebate negotiations) "occurred *because of* what [it was] asked to do by" OPM. *See DeFiore*, 85 F.4th at 557 (emphasis in original) (quoting *Goncalves*, 865 F.3d at 1245); *see also Maryland v. Soper*, 270 U.S. 9, 35 (1926) (defendant must "negative the possibility that they were doing other acts than official acts . . . or make it clear and specific that whatever was done . . . was done under color of their federal official duty.").

---

[2] ESI's position is also undermined by the appellate record. Caremark argued the Ninth Circuit should remand the action for further proceedings regarding the post-removal disclaimers. 9th Cir. No. 23-55597, ECF 33 at 31-32.

[3] When analyzing causal connection, *DeFiore* discussed both the pre-2011 test used with the word "for" and the test for "relating to." *DeFiore*, 85 F.4th at 557 & n.6.

Caremark also misapplies the "relating to" test. The "relating to" test involves two parts and a bridge. The first part is the plaintiff's claims, subject to any disclaimer. *See Plaquemines Par. v. BP Am. Prod. Co.*, 103 F.4th 324, 339 (5th Cir. 2024). The second part is a federal directive. *Id*. The bridge is the connection or association between the first two parts. *Id*.; *accord Anne Arundel Cty. v. BP P.L.C.*, 94 F.4th 343, 348 (4th Cir. 2024). The two-parts-and-a-bridge formulation is consistent with how *DeFiore* viewed "relating to." 85 F.4th at 557-58 & n.6, n.7.[4]

As the People discussed, ECF 138-1 at 13-14, courts find the required bridge missing where there is no federal directive relating to the challenged conduct. *Plaquemines Par.*, 103 F.4th at 341 (holding test unmet where defendants had "complete latitude" regarding challenged act and no military contract directed defendant to do challenged act); *Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703, 715 (8th Cir. 2023) (finding test unmet where defendants "do not claim that any federal officer directed" challenged act); *Dow Chem.*, 2024 WL 1740087, at *9-10 (finding test unmet where defendants made "discretionary decisions" regarding challenged conduct and did not identify contracts or federal direction).

Caremark claims it meets the "relating to" test because the FEHBA and non-FEHBA rebate negotiations occur simultaneously to the purported benefit of FEHBA plans. ECF 149 at 4, 11, 23. But Caremark is not bridging the correct issues. *Plaquemines Parish*, *Minnesota*, and *Dow Chemical* instruct that what matters is a lawsuit's relationship to a federal directive, not whether one action a defendant took relates to a different action of the defendant.

Caremark misconstrues the People's bridge argument as requiring Caremark to plead that OPM directed the specific insulin rebate conduct that the People allege is unlawful. ECF 149 at 11. The direction the People claim is needed, but is lacking, is not as specific as Caremark suggests. The "relating to" test is unmet here

---

[4] Because of this test structure, asbestos disclaimer cases like *Fisher v. Asbestos Corp. Ltd.*, 2014 WL 3752020 (C.D. Cal. July 30, 2014) decided before *DeFiore* would reach the same result under the "relating to" test dictated by *DeFiore*.

because there is no OPM direction over non-FEHBA plans at all, let alone direction over non-FEHBA insulin rebate negotiations.[5]

The Court should reject ESI's unique argument. ESI claims it meets the "relating to" test because its compensation structure as a mail order pharmacy (*i.e.*, not rebate negotiations) for TRICARE includes as part of the formula a drug's wholesale acquisition cost (WAC). ECF 148 at 11-14. ESI claims holding it liable for insulin WAC increases therefore relates to its work for TRICARE making any disclaimer ineffective. *Id.* Yet, ESI's compensation as a TRICARE pharmacy is too "tenuous, remote, or peripheral" to the People's claims to support removal. *See Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 261 (2013).

Because the People do not seek relief related to TRICARE, ESI will not face liability for services provided under the TRICARE contract and will not face penalties related to its TRICARE actions. *See Hawai'i*, 2024 WL 1907396, at *12 (rejecting ESI's argument). This is especially true given ESI does not negotiate rebates for the DoD. This suit cannot "relate to" DoD direction that does not exist.

The Court should reject Caremark and ESI's overlapping arguments. Both Caremark and ESI rely on the Ninth Circuit concurrence. The People respectfully disagree with the concurrence on the ground it bridged the wrong issues: *i.e.*, it bridged Caremark's FEHBA conduct to its non-FEHBA conduct. ECF 133 at 6. As discussed, *Plaquemines Parish*, *Minnesota*, and *Dow Chemical* instruct that the bridge should be between the claims and a federal directive. Importantly, the majority decision did not adopt the concurrence's reasoning.

Additionally, Caremark argues the People's post-removal disclaimers are "illusory" and "circular" and both Caremark and ESI argue that the task of dividing their disclaimed and non-disclaimed conduct poses a factual question that must be

---

[5] Addressing Caremark footnote 3, ECF 149 at 10: The People have *not* abandoned the position that an expert can limit liability to non-FEHBA acts. Addressing Caremark footnote 5, ECF 149 at 12: The People's opening brief footnote 1, ECF 138-1 at 3, is a stand-alone disclaimer that responds to the PBMs' prior assertions that the earlier post-removal disclaimers were unclear.

performed by a federal court. ECF 148 at 13-14; ECF 149 at 9-10, 13-15. The first argument is incorrect and the second is precluded by *DeFiore*, 85 F.4th 546.

The effect of a well pleaded claim disclaimer is to remove the "acting under" question from the state court's case analysis. Assuming the People establish liability and show Caremark and ESI participated in the challenged conduct due to their non-FEHBA/TRICARE plan clients—which the People contend they can do—Caremark and ESI's conduct would fall outside the scope of the disclaimer and they would be liable. In contrast, if Caremark and ESI prove their participation in the challenged conduct was only due to their non-FEHBA/TRICARE plan conduct, their conduct would fall inside the scope of the disclaimer, and it would face no liability. In both instances, the state court would *not* be addressing whether Caremark and ESI were "acting under" a federal officer.

As demonstrated by the hypothetical, a well-pleaded disclaimer also negates a federal defense. In either situation, the state court would *not* be determining the validity of Caremark's and ESI's federal defenses. *See Westchester Cty. v. Mylan Pharms., Inc.*, 2024 WL 3043121, at *8 (S.D.N.Y. June 18, 2024) (discussing how a disclaimer works in state court at liability phase); *Maine v. 3M Co.,* 2023 WL 4758816, at *9 (D. Me. July 26, 2023) (same). To conclude otherwise would improperly permit removal where a federal defense was asserted "solely for the purpose of obtaining jurisdiction." *DeFiore*, 85 F.4th at 560 (quotation omitted).[6]

### E. Comity Supports Discretionary Remand and Concerns About Coordinating with MDL No. 3080 Can Be Addressed Through Informal Coordination

Should the Court decide the post-removal disclaimers eliminate the basis for federal subject matter jurisdiction, the "balance of factors of judicial economy, convenience, fairness, and comity" support remand. *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 911 (9th Cir. 2011) (citation and internal quotations omitted).

---

[6] The Seventh Circuit cases cited by Caremark are inconsistent with this aspect of *DeFiore*. ECF 149 at 10.

1 | Caremark and ESI's arguments against discretionary remand lack merit.

2 | First, Caremark and ESI argue that remand risks inefficiency and conflicting

3 | rulings on federal law given the existence of the multidistrict litigation (MDL).

4 | ECF 148 at 19; ECF 149 at 15-16. This argument ignores the fact that state and

5 | federal courts and parties have procedures available to further efficiency. *See*

6 | *Manual for Complex Litig.* (4th) § 20.31 (2004). In any event, the existence of the

7 | MDL does not overcome the strong comity concerns when a state attorney general

8 | sues under state law in state court to protect state residents. ECF 109 at 14 n.8; *see*

9 | *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012).

10 | ESI cites cases exercising jurisdiction where they had already been

11 | transferred to an MDL. ECF 148 at 19. They are inapposite as they involved claims

12 | brought by private plaintiffs and involved minimal analysis. Caremark's only case

13 | regarding an MDL did not involve discretionary remand. ECF 149 at 15-16.

14 | Second, Caremark argues against discretionary remand because the People

15 | challenge "conduct Caremark undertook under the direction of federal officers" and

16 | that "relief granted . . . would directly impact rebate payments that flow back to

17 | FEHBA carriers." ECF 149 at 16. This argument is not about a court's discretion to

18 | remand; it repeats Caremark's faulty arguments about the sufficiency of the post-

19 | removal disclaimers. Given such post-removal disclaimers, "it is not clear how the

20 | private companies could be seen as performing actions at the direction of federal

21 | law, and therefore be in danger of discrimination in state court." ECF 109 at 14 n.8.

22 | Third, Caremark's claim of judicial manipulation is not well-taken. The

23 | California Attorney General filed this action asserting claims solely under

24 | California law on behalf of injured Californians in California state court. As noted

25 | above, there are strong policy reasons for doing so. Caremark cites no authority—

26 | and fails to explain—how trying to go back to the original court where an action

27 | was filed is somehow judicial manipulation. Indeed, this Court previously found

28 | "no evidence of judicial manipulation or forum shopping." ECF 109 at 14.

## III. THERE IS NO REASON TO STAY MAILING OF THE REMAND ORDER

Caremark and ESI request a stay of mailing the remand order, claiming it is required under *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023). This argument fails.

The Ninth Circuit rejected the same argument when Caremark and ESI requested stays during the first appeal. In denying both motions, the Ninth Circuit cited *Nken v. Holder*, 556 U.S. 418, 434 (2009) as "defining [the] standard in the context of staying [a] lower court order or judgment." ECF 130 (Caremark order); ECF 131 (ESI order). *Nken* places the burden of establishing the need for a stay on the party seeking the stay. 556 U.S. at 433-34. Neither Caremark nor ESI argues it can satisfy *Nken*. Thus, both fail to satisfy *their* burden to obtain a stay. *See id.*

The Ninth Circuit's orders align with *Patel v. Del Taco, Inc.*, 446 F.3d 996 (9th Cir. 2006), *abrogated on other grounds by BP P.L.C. v. Mayor & City Council of Balt.*, 593 U.S. 230 (2021). *Patel* recognizes state courts can assume jurisdiction after remand. 446 F.3d at 1000. *Coinbase* is not clearly irreconcilable with *Patel*, and thus did not abrogate it, as reflected by other courts finding *Coinbase* inapplicable to remand. *See, e.g.*, *Georgia v. Clark*, 2023 U.S. App. LEXIS 34018, at *2 (11th Cir. Dec. 21, 2023) (*Coinbase* inapplicable to remand); *Att'y Gen. of N.J. v. Dow Chem. Co.*, 2024 WL 3361395, at *9 (S.D.N.Y. July 9, 2024) (same).

ESI cites two cases for support, ECF 148 at 22-23, but both are inapposite. They did not involve remand and thus did not analyze section 1447(c) which mandates, by the word "shall," mailing the remand order and permits state court proceedings. *United States v. Trump* is also distinct as all parties agreed to a stay and the appeal involved absolute immunity. 706 F. Supp. 3d 91, 93 (D.D.C. 2023).

The remand order should issue and be mailed without delay. *California v. Express Scripts, Inc.*, 2024 WL 841197, at *6 (C.D. Cal. Feb. 28, 2024).

## CONCLUSION

The People respectfully request the Court grant remand and have a certified copy of the remand order immediately mailed to the Clerk of the Superior Court.

Dated: October 16, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
NELI PALMA
Senior Assistant Attorney General
EMILIO VARANINI
Supervising Deputy Attorney General

*/s/ Darcie Tilly*
DARCIE TILLY
Deputy Attorney General
*Attorneys for the People of the State of California*

Lauren Zweier
(Lauren.Zweier@doj.ca.gov)
Deputy Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102
Telephone: (415) 510-4400

John Ohanesian
(John.Ohanesian@doj.ca.gov)
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Phone: (213) 269-6000

Ryan McEwan
(Ryan.McEwan@doj.ca.gov)
Deputy Attorney General
1300 "I" Street
Sacramento, CA 95814-2919
Phone: (916) 210-7548

Attorneys for the People of the State of California

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the People of the State of California certifies that this brief does not exceed fifteen (15) pages, excluding the caption, the table of contents, the table of authorities, the signature block, and this certification, which complies with the Standing Order Regarding Newly Assigned Cases. ECF 10 & https://www.cacd.uscourts.gov/sites/default/files/documents/ SPG/AD/Standing%20Order%20for%20Civil%20Cases%2010-24-23.pdf.

_/s/ Darcie Tilly_
Darcie Tilly