# Morgan Lewis

**Jason R. Scherr**
Partner
+1.202.373.6709
jr.scherr@morganlewis.com

April 4, 2025

**VIA ECF**

The Hon. Rukhsanah L. Singh
United States Magistrate Judge
United States District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Room 2020
Trenton, NJ 08608

Re:   *In re: Insulin Pricing Litigation,* 2:23-md-03080-BRM-RLS (D.N.J.) – Custodian Update

Dear Judge Singh:

Pursuant to the Court's March 11, 2025 directive and subsequent March 27, 2025 Order, Defendants Express Scripts, Inc., Medco Health Solutions, Inc., and Express Scripts Administrators, LLC (collectively, "Express Scripts") submit this letter detailing Express Scripts' position regarding the parties' ongoing custodian dispute.

At the last discovery conference, the Court directed Express Scripts to "ensure there are *representative* custodians for each of the departments identified by the plaintiffs in their letter dated February 28, 2025." Mar. 11 Conf. Tr. at 51:5–10 (emphases added). That letter identified five "departments," which Plaintiffs characterized as: (1) Public Relations, Government Affairs, and Investor Relations, (2) Industry/Trade Relations, (3) Formulary Committees, (4) Finance Department, and (5) National Client Contracting. *See* ECF No. 439 at p. 6.

Consistent with the Court's directive, Express Scripts examined its proposal and determined that supplementation to include additional Public Relations and National Client Contracting custodians was appropriate. Express Scripts further identified an additional Finance Department custodian to cover the full discovery time period. With these supplementations, Express Scripts has proposed a list of 29 custodians, which includes representative custodians from each of the departments Plaintiffs requested. *See* **Ex. A** (Custodian List) (listing custodians added since the March 11 conference in bold).

Nevertheless, Plaintiffs continue to demand more. Despite the Court's explicit rejection of Plaintiffs' request for **45 custodians**, Mar. 11 Conf. Tr. at 50:25–51:5, Plaintiffs' best and final offer a month later is to demand **44 custodians** of Express Scripts. Plaintiffs' demand comes with the threat that Plaintiffs will likely seek to "reopen custodian negotiations" to seek still additional custodians in the future, while failing to provide any principled explanation as to why they believe

**Morgan, Lewis & Bockius LLP**

1111 Pennsylvania Avenue, NW
Washington, DC  20004       ☏ +1.202.739.3000
United States              ✆ +1.202.739.3001

**VIA ECF**

The Hon. Rukhsanah L. Singh
April 4, 2025
Page 2

any additional proposed custodian is likely to lead to nonduplicative, discoverable information. *See* **Ex. B** (Mar. 31, 2025 Email from J. Wackerly). And this demand relates only to the PBM entities; Plaintiffs have already made double-digit custodial demands for Ascent, and will likely make similar demands upon the mail-order entities and parent companies.

Courts in this circuit have "placed a noticeably heavy burden on the requesting party to demonstrate that the custodial choices . . . are deficient or lacking." *LifeScan, Inc. v. Smith*, 2023 WL 7089662, at *7–8 (D.N.J. Oct. 11, 2023) (Cavanaugh, Special Master). This presumption that a responding party's custodial choices are proper derives from the well-established principle that producing parties are "in the best position to determine the method by which they will collect documents." *Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 427 (D.N.J. 2009); *see also The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Document Production*, 19 Sedona Conf. J. 1, 120 (2018) ("[C]ourts have affirmed that a responding party is best situated to determine which procedures, methodologies, and technologies are appropriate for preserving and producing its own ESI . . . ."). Consistent with the heavy burden a party must meet to second-guess a producing party's custodian choices, a party moving to compel before custodial production even begins must show the custodian choices are "manifestly unreasonable." *LifeScan*, 2023 WL 7089662, at *8 (citing *Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017).

Plaintiffs have made no such showing. As further detailed below, Express Scripts confirms that it has identified representative custodians from each department requested by Plaintiffs.

**1. Public Relations, Government Affairs, and Investor Relations**

The Court explained during the March 11 conference that custodians relating to these departments should be "tied to specific misrepresentations" alleged in Plaintiffs' complaints. Mar. 11 Discovery Conf. Tr. at 54:1–10. Following the March 11 discovery conference, Express Scripts supplemented its proposal to add Jennifer Luddy as a custodian in Express Scripts' communications department (i.e., "public relations"). Ms. Luddy served in numerous communications roles for Express Scripts and Medco from January 2007 to April 2022. To ensure coverage of the entire relevant time period, Express Scripts also disclosed Adam Hickey, who currently serves as the Director of Brand Marketing and Growth. Express Scripts agreed to search for responsive documents from his custodial files from April 2022–January 1, 2023.

No additional custodians are necessary to address the specific misrepresentations alleged. With respect to statements that theoretically may fall within "investor relations," Plaintiffs identify language from Express Scripts' SEC filings dating back to December 2009. Texas. Pet.[1] ¶ 141 ("In each annual report for at least the last decade, Evernorth has repeatedly, continuously, and explicitly stated . . . ") The statements are clear boilerplate.[2] And as one might expect from boilerplate, it

---

[1] The Texas pleading, which Plaintiffs have asserted is representative of the allegations regarding misrepresentations, is filed in *Texas v. Eli Lilly & Co. et al.*, 24-cv-10854 (D.N.J.) and attached to the Notice of Removal (ECF No. 1-2).

[2] Pet. ¶ 141.a ("[Evernorth] is one of the largest PBMs in North America . . . [and Evernorth] help[s] health benefit providers address access and affordability concerns resulting from rising drug costs while helping to improve healthcare outcomes."); *id.* ¶ 141.b ("[Evernorth] manage[s] the cost of the drug benefit by. . . assist in controlling costs; evaluat[es] drugs for efficacy, value and price

**VIA ECF**

The Hon. Rukhsanah L. Singh
April 4, 2025
Page 3

has remain unchanged since *at least* 2009.  *See* Pet. ¶ 141 n. 11 (citing "Express Scripts Annual Reports Form 10-K (Dec. 31, 2009–2019)").  Unchanging boilerplate added *before* the discovery period cannot warrant massive custodial searches.

The only statements identified which arguably fall under the category of "government affairs" are statements from Amy Bricker to the House of Representatives in April 2019.  Because Ms. Bricker is already a custodian, a search for her custodial files will reveal any non-privileged background regarding the statements she made to Congress, especially considering many of the statements Plaintiffs identify in their pleadings were made contemporaneously.  *See* Texas Pet. ¶¶ 388, 493.a, 497 (citing Bricker testimony in response to particular questions).  To the extent any government affairs personnel had non-privileged communications with Ms. Bricker that are responsive, they are "most likely" to be collected and produced from the search of her custodial files.

2. **Pharma Trade Relations Officers**

Express Scripts previously identified eleven custodians who have interacted with and negotiated with the Manufacturer Defendants during the Time Period:

| Name | Title |
| --- | --- |
| **Ed Adamcik** | Former Chief Pharma Trade Relations Officer; President Ascent Health |
| **Amy Bricker** | President, PBM (former) |
| **Harold Carter** | SVP Pharma Trade Relations |
| **Shawn Davis** | Senior Director, Pharma Strategy & Contracting (former) |
| **Tony Grillo** | VP Pharma Strategy & Contracting |
| **Todd Jeffrey** | VP Pharmaceutical Strategy & Contracting |
| **Adam Kautzner** | President of Express Scripts; VP Supply Chain Product and Strategy (former) |
| **Everett Neville** | EVP Solutions and Corporate Development of The Cigna Group; EVP Strategy, Supply Chain & Specialty Pharmacy (former) |
| **Libby Newport** | VP Strategic Initiatives (former) |
| **Michael Rothrock** | VP Pharma Strategy & Contracting (former) |
| **Jason Zilocchi** | VP Pharmaceutical Strategy & Solutions (former) |

---

to assist[ing] clients in selecting a cost-effective formulary; [and] offer[s] cost-effective home delivery pharmacy and specialty services that result in cost savings for plan sponsors [and better care for members] leveraging purchasing volume to deliver discounts to health benefit providers."); *id.* ¶ 141.c ("[Evernorth] works with clients, manufacturers, pharmacists and physicians to increase efficiency in the drug distribution chain, to manage costs in the pharmacy benefit chain and to improve members' health outcomes.") (Plaintiffs' alterations from pleading retained).

**VIA ECF**

The Hon. Rukhsanah L. Singh
April 4, 2025
Page 4

Despite repeated invitations to do so, Plaintiffs have not identified any specific deficiency in Express Scripts' proposal, nor have they explained how adding any additional custodians would be proportional or non-duplicative. No additional custodians are warranted.

### 3. Formulary Development Committees

Express Scripts' Value Assessment Committee ("VAC") is the formulary development committee that, when clinically appropriate, considers the *value* of drugs by evaluating its net cost, market share, and drug utilization trends of clinically similar medications.[3] Plaintiffs conceded in prior briefing to the Court that Express Scripts has "offered a number of custodians" that sit on its formulary development committees, including the VAC, and that Express Scripts has offered a custodian—Danielle Drzewucki—"that created the models that support the [VAC's] formulary decisions." ECF No. 439 at 13.

Plaintiffs, however, pushed for additional custodians who "worked in the departments that created the financial models" used by the VAC. *Id.* As Express Scripts argued last time around, separate custodial searches regarding the *making* of the models instead of their *application* to the drugs at-issue is not warranted given the nature of Plaintiffs' claims. *See* ECF No. 443 at 4. The Court agreed. Rather than granting Plaintiffs' requests for additional custodians on this sub-topic, the Court only directed Express Scripts to "ensure there are *representative* custodians for each of the *departments* identified by the plaintiffs in their letter dated February 28, 2025." Mar. 11 Conf. Tr. at 51:5–10 (emphasis added). Express Scripts has identified representative custodians from its formulary development committees. No additional custodians are warranted.

### 4. Finance Department

Prior to the creation of the MDL, Plaintiff State of Mississippi requested that Express Scripts add the four custodians below relating to Express Scripts forecasting and analytics. Express Scripts agreed to add those individuals as custodians, and as seen in the bolded titles below, they had direct responsibilities in the areas Plaintiffs' requested.

| Name | Titles (Dates) |
|---|---|
| **Brian Debatin** | • **Senior Director/Director, Forecasting and Analytics - Supply Chain (2008–2015)**<br>• **Vice President/Senior Director – Financial Planning and Analysis (2015-2018)** |
| **Danielle Drzewucki** | • **Senior Director Supply Chain Forecasting & Analytics (2013–2015)**<br>• Vice President/Divisional CFO Accredo Finance (2015–2022)<br>• Interim VP PBM Underwriting (April 2021–May 2022) |

---

[3] https://www.evernorth.com/sites/default/files/2024-04/Formulary%20Development_April%202024.pdf

**VIA ECF**

The Hon. Rukhsanah L. Singh
April 4, 2025
Page 5

| Dan Gass | • **Financial Analyst (Medco) (June 2008–August 2011)**<br>• **Senior Manager, Pharmaceutical Strategies & Contracting (July 2011–June 2017)** |
|---|---|
| Justin Lienemann | • **Senior Director, Financial Planning & Analysis and Mergers & Acquisitions (April 2013–March 2015)**<br>• Vice President – Specialty Group Finance (March 2015–June 2016)<br>• **Vice President – Financial Planning & analysis (April 2016–September 2018)** |

To ensure representative custodians from each department for the entire relevant time period, Express Scripts also agrees to add Jack Cunningham as a custodian:

| Name | Titles (Dates) |
|---|---|
| **Jack Cunningham** | • Senior Director, Assistant Treasurer and Mergers & Acquisitions (August 2009 – August 2011)<br>• Senior Director, Financial Planning & Analysis, Operations Finance and Treasury (August 2011–November 2014)<br>• CFO, Pharmacy Services (November 2014–April 2017)<br>• Vice President – Finance Initiatives & Corporate Development (February 2018–December 2018)<br>• **Vice President – Financial Planning & analysis (December 2018–March 2023**) |

Plaintiffs *now* assert that their request for "finance department" custodians in fact sought two distinct types of custodians: (1) custodians who engaged in Manufacturer Payment and formulary forecasting, analytics, and modeling and (2) custodians who compiled/analyzed profit and revenue information, construction department budgets. *See* Ex. B. at 2.[4] The former category is

---

[4] This last-minute moving of the goalposts has been emblematic of these negotiations. And it is especially egregious here. Mississippi demanded certain custodians to cover their own topic they claimed was relevant, Express Scripts *agreed*. Now Plaintiffs claim their prior demand was inadequate because they are looking for something else. These tactics have frustrated the negotiations and cannot fairly be characterized as consistent with the "cooperative" process the Court envisioned and ordered.

VIA ECF

The Hon. Rukhsanah L. Singh
April 4, 2025
Page 6

already covered by Express Scripts' custodial proposal for the VAC discussed above. And Express Scripts has provided representative custodians for the latter category.

### 5. National Contracting

Since the last discovery conference, Express Scripts identified Leslie Achter as a national contracting custodian. Ms. Achter has worked at Medco or Express Scripts since 1998 and currently serves as a Senior Vice President of Commercial Accounts, and has previously served in other positions related to client contracting. Within Express Scripts, Commercial Accounts includes public sector clients like many of the plaintiff counties in the MDL.

*      *      *      *      *

Express Scripts has already identified 29 custodians relevant to the key issues applicable to all tracks, including representative custodians from each of the "departments and committees" Plaintiffs identify as being "at the heart of the at-issue conduct." *See* ECF No. 439 at 6. Still Plaintiffs demand more. Plaintiffs insist that Express Scripts must search 44 custodians—only one less than their demand a month ago—during this phase of discovery for these Defendants on top of any future custodial demands they may make. But the Rules "require only a reasonable search for responsive information pursuant to a 'reasonably comprehensive search strategy.'" *Enslin v. Coca-Cola Co.*, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) (quoting *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006). Express Scripts has proposed such a reasonable search.

Accordingly, Express Scripts requests that the Court reject Plaintiffs' custodian proposal and approve Express Scripts' proposal, attached as **Ex. A**.

Respectfully submitted,

*/s/ Jason R. Scherr*

Jason R. Scherr


cc:   Honorable Brian R. Martinotti, U.S.D.J.
      All Counsel of Record