# MARINO, TORTORELLA & BOYLE, P.C.

ATTORNEYS AT LAW

KEVIN H. MARINO
JOHN D. TORTORELLA
JOHN A. BOYLE
───────
ROSEANN BASSLER DAL PRA*
EREZ J. DAVY*
MICHAEL J. FLYNN

437 SOUTHERN BOULEVARD
CHATHAM, NEW JERSEY 07928-1488
TELEPHONE (973) 824-9300
FAX (973) 824-8425
www.khmarino.com

875 THIRD AVENUE, 21ST FLOOR
NEW YORK, NEW YORK 10022
TELEPHONE (212) 307-3700
FAX (212) 542-3790
e-mail: jtortorella@khmarino.com
*OF COUNSEL

April 4, 2025

**VIA ECF**

Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State St.
Trenton, NJ 08608

      Re:  *In re: Insulin Pricing Litigation,* No. 2:23-md-03080-BRM-RLS
           MDL No. 3080 | Custodian & Search Term Proposal

Dear Judge Singh:

      I write on behalf of Defendants Caremark Rx, LLC, Caremark LLC, and Caremark PCS Health, LLC (collectively, "CVS Caremark") to update the Court on negotiations regarding custodians and search terms. ECF No. 481.

      With the hope of bringing this dispute to an end, CVS Caremark made significant concessions and has now agreed to search the files of **31** custodians—ten higher than its previous February 28 proposal. CVS Caremark also has attempted to accommodate the concerns raised by Plaintiffs through modifying its search-term proposal. As revised, CVS Caremark's terms currently hit over **1.3 million** documents with families, across a subset of only 20 of the 31 custodians. The number of documents CVS Caremark will undertake to review will grow even more after the remainder of the custodians are added.

      Plaintiffs, however, have (again) spurned CVS Caremark's proposals, and instead seek to micromanage every aspect of discovery. Instead of reaching a reasonable compromise, Plaintiffs have refused to budge. As to custodians, Plaintiffs have essentially taken the position that representative custodians are insufficient—a position that cannot be squared with this Court's order that CVS Caremark provide a "representative" custodian for each department. Plaintiffs also attempt to move the goalposts by expanding the departments for which they request custodians beyond those they requested in their February 28 letter. As to search terms, CVS Caremark provided Plaintiffs with detailed hit reports, but Plaintiffs responded with only minor edits to their search-term proposal. Their "revised" proposal now hits on over **3.5 million** documents with families across the subset of 20 custodians—almost 200,000 **more** than their prior proposal. Plaintiffs' proposals are headed in the wrong direction.

      Without any substantial movement from Plaintiffs, at this point CVS Caremark requests that this Court enter an order for discovery to proceed under CVS Caremark's proposal.

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Rukhsanah L. Singh, U.S.M.J.
April 4, 2025 — Page 2

### Custodian Proposal

At the March 11 conference, the Court directed CVS Caremark to "take a look at their custodian list as they have currently prepared them, [and] ensure that there are representative custodians for each of the departments identified by plaintiffs in their letter dated February 28, 2025." March 11 Hearing Tr. ("Tr.") at 51:6-10. The Court clarified that these custodians need only be "representative examples." *Id.* at 51:19. The Court further directed CVS Caremark to provide discovery on "specific" alleged "misrepresentations." *Id.* at 56:19.

Following the conference, CVS Caremark did exactly what the Court had directed. CVS Caremark reviewed its custodian proposal and added several representative custodians, spanning each department Plaintiffs listed in their February 28 letter. Matthew Leonard was added for Trade Relations. James Dixon and Arnie Khan were added to cover Industry Analysis/Trade Finance (inclusive of what Plaintiffs previously defined the "Formulary Committee Custodians" and "Finance Department Custodians"). Ilona Smith was added for Sales. And to provide discovery on over two dozen specific alleged misrepresentations that Plaintiffs identified, CVS Caremark agreed to targeted searches of an additional four custodians' files. CVS Caremark selected those four custodians after confirming they were appropriate custodians for each of the alleged misrepresentations on which CVS Caremark is providing discovery. In sum, CVS Caremark has increased its custodian proposal by 10, bringing the current total to **31 representative custodians**.[1] That number is more than sufficient and wholly proportional to the discovery needs of this action, particularly given that Plaintiffs have agreed that 30 custodians are sufficient for discovery of each of the Manufacturer Defendants. CVS Caremark attaches its proposal here as Appendix A, with the custodians added since the March 11 conference listed in bold.

Plaintiffs have rejected these concessions wholesale. Plaintiffs have essentially rejected the Court's order that CVS Caremark need only provide "representative examples." Instead, they have candidly stated that "Plaintiffs disagree that CVS can satisfy its obligation to 'ensure that there are representative custodians for each of the departments identified by the plaintiffs' in their February 28, 2025 letter by providing one or two custodians." Ex. 1 at 9 (internal citation omitted). Plaintiffs also have attempted to rewrite their February 28 letter to suggest that they requested departments (or sub-departments) and custodians they never did. They have since sought additional discovery on discovery—in the form of informal and belated interrogatories—in a transparent attempt expand the definition of which "departments" they sought custodians for in their February 28 letter.

To be clear, Plaintiffs are functionally seeking exactly what they asked for last time in their February 28 letter, under the guise of arguing that no custodians CVS Caremark proposed—even

---

[1] What's more, Zinc Health Services, LLC, a CVS Caremark affiliate, has already set forth one additional custodian not included on Appendix A, as well as agreed to provide additional discovery for two custodians outside the timeframes they are listed for on Appendix A. And Plaintiffs have indicated they plan to counter Zinc's custodial proposal with still more custodians.

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Rukhsanah L. Singh, U.S.M.J.
April 4, 2025 — Page 3

among the custodians Plaintiffs had explicitly requested—will be sufficiently "representative" in their view. This dressed-up motion for reconsideration should be rejected.

*Trade Relations.* CVS Caremark's Trade Relations department negotiates with manufacturers, including the Manufacturer Defendants, to establish rebate agreements for pharmaceutical products. CVS Caremark has now provided **15** custodians from this department. CVS Caremark has proposed all of the trade relations employees who had designated responsibility for the insulin drug category (referred to as "Insulin Category Captains") for the entire relevant time period. To further ensure that all bases are covered, CVS Caremark has also added as custodians the primary negotiator with *each* of the Manufacturer Defendants across the entire relevant time period.[2] Finally, CVS Caremark added additional executive custodians covering manufacturer contracts and rebate negotiations, including Gary Loeber, Jason Hartzell, and Joseph Stahl.

Despite these concessions, Plaintiffs still maintain that CVS Caremark's proposal is insufficient. *See* Ex. 1 at 13. Plaintiffs argued they needed Trade Relations custodians related to data analysis. *See id*. But that is a department housed in CVS Caremark's Industry Analysis/Trade Finance department, as discussed below. Plaintiffs further requested significant, burdensome information regarding every person in CVS Caremark's Trade Relations department across the entire Relevant Time Period (regardless of their involvement with Diabetes Medications or the issues in this case). In response, CVS Caremark identified an exemplar organizational chart[3] for the department from 2019, from which it provided a *dozen* custodians. Most tellingly, in their February 28 letter Plaintiffs called out only a single Trade Relations employee whom they believed should be added: Matthew Leonard. *See* ECF 439 at 11. Although CVS Caremark's February 28 proposal was already more than sufficient, CVS Caremark agreed to provide Mr. Leonard as a custodian, along with additional new custodians who weren't even listed in Plaintiffs' February 28 letter. And yet Plaintiffs refuse to be satisfied.

Plaintiffs themselves have stated that CVS Caremark's proposal is—in their view—"overwhelmingly" from the Trade Relations department. Ex. 1 at 9. Accordingly, it is impossible to see how CVS Caremark's Trade Relations proposal is not sufficient.

*National Client Contracting.* This Court explicitly required the PBM Defendants to provide "*a representative* from the National Client Contracting group." Tr. at 51:11-12 (emphasis added). And in their February 28 letter, Plaintiffs requested "a custodian" from this department. ECF 439 at 15. In response, CVS Caremark proposed Ilona Smith, who is a Senior Vice President

---

[2] While the Insulin Category Captains would have had contact with all insulin manufacturers regarding that drug category, other employees are sometimes designated to be the primary negotiator for a given manufacturer irrespective of drug category.

[3] CVS Caremark does not maintain organizational charts in the ordinary course. Some, however, are created on an ad hoc basis.

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Rukhsanah L. Singh, U.S.M.J.
April 4, 2025 — Page 4

in the Employer Business Unit. She has been in a client-facing role for over 20 years. She previously served as Vice President of Sales and Account Services. Ms. Smith has had responsibility for large, national-sized clients that require a high level of support and oversight, and she has worked with plan design structure, including as it relates to rebates. In sum, she is an ideal "representative custodian" for this department. And notably, Ms. Smith was among the custodians Plaintiffs requested.

Notwithstanding, Plaintiffs have made clear they will not accept "a representative from the National Client Contracting group." Ex. 1 at 14. Instead, they demanded extensive information regarding the structure of CVS Caremark's sales-focused infrastructure, including every individual in the group across the entire period and a description of each individual's role, in a transparent attempt to fish for still more custodians. Plaintiffs also argue that CVS Caremark not only must provide a representative custodian, but also must explain in detail why they did not propose other custodians. That is not the exercise the Court required, and instead represents the sort "micromanaging" of discovery this Court has disapproved of. *See* February 11 Conference Tr. at 36 21-23.

*Industry Analysis/Trade Finance.* In their February 28 letter, Plaintiffs requested custodians who "created the models that support the formulary committees' formulary decisions," which they dubbed "Formulary Committee Custodians." ECF 439 at 13. Plaintiffs also requested "Finance Department" custodians, which they described as performing tasks "related to financial planning and analysis, forecasting, and accounting." *Id.* at 14. Both of those types of custodians are housed within the Industry Analysis/Trade Finance department. Although the name and structure of the group has changed over the Relevant Time Period, there are at least two relevant functions: an operational role, which maps on Plaintiffs' definition of "Finance Department" custodians, and a financial planning and analysis role, which maps onto what Plaintiffs have described as "Formulary Committee Custodians." Notably the financial planning and analysis role also supports Trade Relations.

CVS Caremark has offered *five* custodians from this department:

- **Operational Role:** CVS Caremark has proposed James Dixon, who served as a Vice President of Industry Analysis across the entire period. Mr. Dixon's role included the administration of business rebate contracts and related invoicing, collections, and reconciliations. CVS Caremark also has proposed Rob Versosky in connection with this role.

- **Financial Planning and Analysis Role:** CVS Caremark has proposed Shivam Patel, who was responsible for modeling formularies and rebates until 2017. In an effort to ensure full coverage, CVS Caremark further proposed Nayyar (Arnie) Kahn, a Director of Industry Relations, for 2017 through 2022.

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Rukhsanah L. Singh, U.S.M.J.
April 4, 2025 — Page 5

- **Both Roles:** CVS Caremark further notes it has proposed Dom Gugiluzza, a VP of Industry Analysis, to whom both operational and FP&A personnel reported.

Plaintiffs have made clear they will not accept these custodians as "representative" custodians, without any articulable basis. Instead, they have sought to expand what they previously requested, and demand yet more custodians and information. CVS Caremark's proposal is sufficient, and the Court should require no more custodians from this department.

*Representations Custodians.* This Court ordered discovery into specific representations identified by Plaintiffs. *See* Tr. at 56:19. That is exactly what CVS Caremark has proposed to provide.[4] Plaintiffs presented CVS Caremark with a list of alleged misrepresentations about which they sought discovery. From the list, CVS Caremark identified 25 representations appropriate for discovery. CVS Caremark then put in the legwork to determine the appropriate custodians to provide discovery for each specific representation. Accordingly, CVS Caremark proposed to provide targeted discovery from Tammy Lewis (Senior Vice President, Chief Marketing Officer of CVS Caremark), Christine Cramer (Vice President, Corporate Communications), Nancy Christal (Senior Vice President, Investor Relations), and Michael McGuire (Senior Vice President, Investor Relations).[5]

In sum, CVS Caremark's proposal is fully consistent with the Court's directive at the March 11 conference. Discovery beyond this proposal (e.g., a review of these custodians' documents across the full time period based on the search terms the parties are negotiating) is not proportionate to the needs of the case. This is especially true given that CVS Caremark's current proposal hits on over 1.3 million documents before these (and other) custodians are added.

### Search Term Proposal

Plaintiffs' incessant demand for still more custodians should be considered in conjunction with their related continued demand for unreasonable and burdensome search terms. Following the March 11 conference, CVS Caremark provided Plaintiffs with an even more detailed hit report. After reviewing this report, Plaintiffs made only minor modifications to their proposal. And as revised, Plaintiffs' proposed terms now hit on **more** documents than their prior proposal—**3.5 million** documents with families, across only 20 custodians. Most notably, Plaintiffs proposal still includes broad and burdensome terms that are divorced from the insulin products at issue. One of

---

[4] Further illustrating Plaintiffs' disregard for this Court's direction, Plaintiffs' initially suggested that CVS Caremark must propose custodians from a variety of departments *untied* to specific misrepresentations. *See* Ex. 1 at 18. Only after CVS Caremark pressed the issue did Plaintiffs agree to abide by what this Court plainly ordered.

[5] To be sure, certain of the alleged misrepresentations Plaintiffs pointed CVS Caremark to are not appropriate for discovery. For example, CVS Caremark did not agree to provide discovery for representations that fall outside the Relevant Time Period, are from securities filings (written by attorneys), are from outside counsel, or are far too general to be "specific misrepresentations."

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Rukhsanah L. Singh, U.S.M.J.
April 4, 2025 — Page 6

Plaintiffs' proposed terms, which seeks documents with terms such as cost* or fee* within 25 words of payor* or client*, hit on over 800,000 unique documents.[6]

CVS Caremark advised Plaintiffs that (as expected) the primary issue is that these terms are hitting on documents dealing with irrelevant drugs. CVS Caremark's business involves an incredibly large number of drugs, and any term not tailored to this case will necessarily pick up a high volume of irrelevant documents dealing exclusively with *other* drugs. CVS Caremark provided a non-exhaustive list of other drugs it identified in review of the documents hitting on these non-insulin terms. *See* Ex. 1 at 5-7. CVS Caremark also provided other examples of non-responsive documents that were repeatedly appearing in the set that have no relevance to this action. *See id.* at 2.

In an effort to reach a compromise, CVS Caremark yet again modified its search-term proposal. CVS Caremark's latest proposal to Plaintiffs is attached here as Appendix B. CVS Caremark's proposal already included the name of every Diabetes Medication at issue as stand-alone terms, as well as broad search strings connected to terms like "insulin*" and GLP*". CVS Caremark's most recent proposal includes expanded connectors, and adds a new term untied to insulin-specific products. This new term will capture *every hypothetical search string* Plaintiffs raised in their March 5 discovery letter. *See* ECF 446 at 4. While Plaintiffs can surely invent new hypothetical strings to continue to move the goalposts, CVS Caremark's proposal should be more than enough to adequately address Plaintiffs' needs. But for present purposes, the important point is that CVS's most recent proposal already hits on more than **1.3 million** documents with families—an already colossal burden—even before taking into account the additional ten custodians that CVS Caremark has already proposed to add (collection for those ten new custodians is still in progress). This substantial burden must be considered in conjunction with Plaintiffs' insatiable demand for still more custodians.

Respectfully submitted,

*/s John D. Tortorella*
John D. Tortorella
*Counsel for Defendants Caremark Rx, LLC, Caremark LLC, and Caremark PCS Health, LLC*

---

[6] The full term reads "((list* w/3 pric*) OR AWP OR WAC OR cost* OR rebat* OR REB OR discount* OR incentive* OR fee* OR (net* w/3 pric*) OR Concession OR inflat* OR Payment* OR Zinc OR GPO* OR aggregator*) w/25 (audit* OR health plan* OR sponsor* OR client* OR payer* OR payor* OR bid* OR proposal* OR RFP).

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Rukhsanah L. Singh, U.S.M.J.
April 4, 2025 — Page 7

*/s Nicholas C. Suellentrop*
Nicholas C. Suellentrop
Williams & Connolly LLP
*Counsel for Defendants Caremark Rx, LLC, Caremark LLC, and Caremark PCS Health, LLC*

cc:   Honorable Brian R. Martinotti, U.S.D.J.
      All Counsel of Record

# Appendix A – Custodians

1. Joseph Anderson
2. Patti Doruff (through May 2020)
3. Kevin Wessels (through December 2021)
4. William Rossman
5. Gary Loeber
6. Aydin Sekili
7. Lora Armstrong
8. James Cichowski
9. Joseph Stahl (through December 2020)
10. Norman Rivera
11. Andrew Zanin
12. Daniel Best
13. Keith Pearson
14. Robert Versosky
15. Jason Hartzell
16. Domenico Gugiluzza (through December 2016)
17. Rich Mercure (2012-2013)
18. Tyler Haertzen (2018-2021)
19. Michael Schneider
20. Shivam Patel
21. Jackelyn Mancini
22. **James Dixon**
23. **Matthew Leonard**
24. **Ilona Smith**
25. **Arnie Khan**
26. **Analia Anderson**
27. **Jeffrey Koelsch**
28. **Tammy Lewis (Targeted Discovery)**
29. **Christine Cramer (Targeted Discovery)**
30. **Michael McGuire (Targeted Discovery)**
31. **Nancy Christal (Targeted Discovery)**

**Exhibit B – Search Terms**

| |
|---|
| Apidra* or Basaglar* or fiasp* or Humalog* or Humulin* or Lantus* or Levemir* or Novolin* or Novolog* or Soliqua* or Toujeo* or Aspart* or Rezvoglar* or Semglee* or Soliqua* or Toujeo* or Degludec* or Admelog* OR Ozempic* OR Tresiba* OR Trulicity* OR Victoza* OR Glargine* OR Lispro* OR Relion* OR Tanzeum* OR Mounjaro* OR Xultophy* OR Rybelsus* OR Adylxyin* OR "Insulin Therap*" |
| "Examining the Factors Driving the Rising Cost of a Century Old Drug" or "Priced Out of a Lifesaving Drug" or "The Need to Make Insulin Affordable for All Americans" or "Why is Novo Nordisk Charging Americans with Diabetes and Obesity Outrageously High Prices for Ozempic and Wegovy" or "Pharmacy Benefit Managers: The Powerful Middlemen Inflating Drug Costs and Squeezing Main Street Pharmacies" or "Inaccessible Insulin: The Broken Promise of Eli Lilly's Authorized Generic" |
| (Insulin* or antidiabetic* or "anti-diabetic*" or GLP* or diabetes* or Basal* or Detemir or Kwikpen or Lins or NovoPen or Novofine or NovoTwist or PenFill or SoloSTAR or Tanzeum or Logs or "Private Label" or T2D or Flextouch or Flexpen or Liraglutide or Lixisenatide or Semaglutide or Tirzepatide) AND ("*lilly.com" or "*novonordisk.com" or "*sanofi.com" or "*optum.com" or "*express-scripts.com" or "*phrma.org" or "*pcma.org" or "novo.dk" or "Sanofi-aventis.com" or "aventis.com" or "sanofipasteur.fr" or "optumrx.com" or "zinchealthservices.com" or uhc.com or uhg.com or unitedhealthgroup.com or evernorth.com or medco.com or thecignagroup.com or cigna.com) |
| (Insulin* or antidiabetic* or "anti-diabetic*" or GLP* or diabetes* or Basal* or Detemir or Kwikpen or Lins or NovoPen or Novofine or NovoTwist or PenFill or SoloSTAR or Tanzeum or Logs or "Private Label" or T2D or Flextouch or Flexpen or Liraglutide or Lixisenatide or Semaglutide or Tirzepatide) w/15 (Lilly or LLY or EliLilly or Novo or Nordisk or NVN or NNI or Sanofi or Aventis or SAV or SFI or Optum or Orx or ESI or "Express Scripts" or EliLilly or NVO* or PhRMA* or "Pharmaceutical Research and Manufacturers" or "Pharmaceutical Care Management Association" or "Leadership Summit" or "Pharmaceutical Company Partner" or "JP Morgan Healthcare Conference" or "Express-Scripts" or PCMA or "Pre-Read" or "Pre read" or (customer /2 exchange)) |

| |
|---|
| (Insulin* or antidiabetic* or "anti-diabetic*" or GLP* or diabetes* or Basal* or Detemir or Kwikpen or Lins or NovoPen or Novofine or NovoTwist or PenFill or SoloSTAR or Tanzeum or Logs or "Private Label" or T2D or Flextouch or Flexpen or Liraglutide or Lixisenatide or Semaglutide or Tirzepatide) w/15 (list* or pric* or AWP or WAC or cost* or rebat* or REB or discount* or incentiv* or fee* or bid* or proposal* or RFP or Arbitrage or "promotional allowances" or comparables or "price reimbursement access" or "price predictability") |
| (Insulin* or antidiabetic* or "anti-diabetic*" or GLP* or diabetes* or Basal* or Detemir or Kwikpen or Lins or NovoPen or Novofine or NovoTwist or PenFill or SoloSTAR or Tanzeum or Logs or "Private Label" or T2D or Flextouch or Flexpen or Liraglutide or Lixisenatide or Semaglutide or Tirzepatide) w/15 (audit* or report* or analy* or develop* or formular* or plan*) |
| (Insulin* or antidiabetic* or "anti-diabetic*" or GLP* or diabetes* or Basal* or Detemir or Kwikpen or Lins or NovoPen or Novofine or NovoTwist or PenFill or SoloSTAR or Tanzeum or Logs or "Private Label" or T2D or Flextouch or Flexpen or Liraglutide or Lixisenatide or Semaglutide or Tirzepatide) w/20 ("Pharmacy and Therapeutic*" or "Pharmacy + Therapeutic*" or "P&T*" or "P & T*" or FRC* or "charter" or "recommendation report" or Rxreport or Rx report or "prescription drug guide" or "formulary review committee" or "strategic formulary management" or "silver script" or "Core Standard" or "Core Choice" or "Select Choice" or "Highly Controlled" or "OMA" or "RxReview") |
| (Insulin* or antidiabetic* or "anti-diabetic*" or GLP* or diabetes* or Basal* or Detemir or Kwikpen or Lins or NovoPen or Novofine or NovoTwist or PenFill or SoloSTAR or Tanzeum or Logs or "Private Label" or T2D or Flextouch or Flexpen or Liraglutide or Lixisenatide or Semaglutide or Tirzepatide) w/20 ("Therapeutic Substitution" or "Therapeutic Intervention*" or "counter-promot*" or counter promot* or (fail /3 first) or "Drug Quantity" or "predictive model" or "education letter" or "Adverse Communication" or "NDC Lock" or "counter-detail*") |
| (Insulin* or antidiabetic* or "anti-diabetic*" or GLP* or diabetes* or Basal*) w/15 (McKinsey or "Charles River" or Deloitte or "Advantage Point" or "Quarterline" or Putnam or KPMG or Synopia or Ballina or Ashfield or ZS OR Milliman or "Boston Consulting Group" or Redburn or "Third Party Administrator" or "Third-Party Administrator" or TPA OR Premera or Mercer or Aon) |

| |
|---|
| (Insulin* or antidiabetic* or "anti-diabetic*" or GLP* or diabetes* or Basal* or Detemir or Kwikpen or Lins or NovoPen or Novofine or NovoTwist or PenFill or SoloSTAR or Tanzeum or Logs or "Private Label" or T2D or Flextouch or Flexpen or Liraglutide or Lixisenatide or Semaglutide or Tirzepatide) w/**15** (Clawback* or (claw* /2 back) or claw-back* or DIR) |
| (Insulin* or antidiabetic* or "anti-diabetic*" or GLP* or diabetes* or Basal* or Detemir or Kwikpen or Lins or NovoPen or Novofine or NovoTwist or PenFill or SoloSTAR or Tanzeum or Logs or "Private Label" or T2D or Flextouch or Flexpen or Liraglutide or Lixisenatide or Semaglutide or Tirzepatide) w/**15** ("Pull Through" or "Pull Thru" or "Pull-Through" or "Pull-Thru" or "Co-Market*" or "Co Market*" or (Patient Transition) or (Patient Educat*) or (Provider Transition) or (Provider Educat*) or (Prescriber Transition) or (Prescriber Educat*) or (Patient Outreach) or (Provider Outreach) or (Prescriber Outreach) or (Member Educat*) or (Member Transition) or (change notification)) |
| (Insulin* or antidiabetic* or "anti-diabetic*" or GLP* or diabetes* or Basal* or Detemir or Kwikpen or Lins or NovoPen or Novofine or NovoTwist or PenFill or SoloSTAR or Tanzeum or Logs or "Private Label" or T2D or Flextouch or Flexpen or Liraglutide or Lixisenatide or Semaglutide or Tirzepatide) w/**15** ("donut hole" or "do-nut hole" or catastrophic or unaffordab* or (skip* /2 dos*) or (Struggl* /5 Afford*) or (Struggl* /10 Pay*) or (Unable /10 Afford*) or (Unable /10 Pay*) or "Blink Health") |
| (Insulin* OR antidiabetic* OR "anti-diabetic*" OR GLP* OR diabet* OR Basal* OR Detemir OR Kwikpen OR Lins OR Lispro OR NovoPen OR Novofine OR NovoTwist OR PenFill OR SoloSTAR OR Tanzeum OR Logs OR "Private Label" OR T2D OR Flextouch OR Flexpen OR Liraglutide OR Lixisenatide OR Semaglutide OR Tirzepatide) AND ("Senate Finance" OR "Senate Committee on Finance" OR "Senate Investigat*" OR "Wyden" OR "Grassl*" OR FTC OR "Federal Trade") |
| (rebate*) /15 (Lilly or LLY or EliLilly or Novo or Nordisk or NVN or NNI or Sanofi or Aventis or SAV) |