e-mail: jtortorella@khmarino.com

April 14, 2025

**VIA ECF**

Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State St.
Trenton, NJ 08608

      Re:  *In re: Insulin Pricing Litigation,* No. 2:23-md-03080-BRM-RLS
           MDL No. 3080 | Custodian & Search Term Proposal

Dear Judge Singh:

    On behalf of Defendants Caremark Rx, LLC, Caremark LLC, and Caremark PCS Health, LLC (collectively, "CVS Caremark"), we write in response to Plaintiffs' April 4 submission regarding the discovery process and document custodians, No. ECF 493.

    Regarding process, Plaintiffs' suggestion that they are operating in the dark as to document discovery is not accurate. Over the last four months, CVS Caremark has met and conferred with Plaintiffs in excruciating detail on numerous occasions, with correspondence exchanged in between, about potentially relevant departments, custodians, search terms, and data. CVS Caremark also has already produced more than 150,000 documents, which has given Plaintiffs additional insight into its PBM business. Plaintiffs have all the information they need (and more) to engage in educated discussions about document discovery for CVS Caremark.

    As to custodians, following the last discovery conference and in a further attempt at compromise, CVS Caremark increased its custodian proposal *by ten*, for a total of thirty-one custodians. This most recent proposal includes representative custodians who cover the departments Plaintiffs have requested. And it would require CVS Caremark to review well over a million documents. Rather than take yes for an answer, Plaintiffs still want more. To get there though, Plaintiffs shift the goal posts again and, for the first time, request seven additional custodians by name, many of whom they never discussed with CVS Caremark following the March 11 conference. Plaintiffs even resurrected one custodian (Lauren Meyer) they had previously withdrawn. ECF No. 444-1 (Plaintiff custodian proposal eliminating Ms. Meyer). But Plaintiffs do not justify adding any of these additional custodians, who are all duplicative of those already proposed. And adding more will be unduly burdensome and not proportionate the case's needs.

**Custodian Proposal**

In this circuit, courts have "placed a noticeably heavy burden on the requesting party to demonstrate that the custodial choices . . . are deficient or lacking." *LifeScan, Inc. v. Smith*, 2023 WL 7089662, at *7-8 (D.N.J. Oct. 11, 2023). Indeed, when "[a]sking a court to compel a party to search the ESI of additional custodians . . . the requesting party is second-guessing the responding party's representation that it conducted a reasonably inquiry for responsive information, and . . . the burden appropriate lies with the requesting party to show that the responding party's search was inadequate." *Enslin v. Coca-Cola Co.*, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016).

Here, after months of conferrals, CVS Caremark has now proposed thirty-one custodians. That proposal may well approach, if not exceed, 2-million documents for review, and is more than sufficient to satisfy its obligations. Plaintiffs new demand for an additional *seven* custodians (and one custodian for additional time) does not meet their heavy burden, and is not consistent with the Court's March 11 directive that CVS Caremark provide "representative examples" from the departments Plaintiffs' moved on in their February 28 letter. Tr. at 51:19. Plaintiffs' demand, moreover, is disproportionate to the needs of the case, given that CVS Caremark's proposed search terms already hit on more than 1.3-million documents for just twenty of the thirty-one custodians (and Plaintiffs' March 26 terms hit on more than 3.5-million documents across the same custodian subset). This extreme burden further demonstrates why Plaintiffs demands for additional custodians beyond the "representative custodians" that CVS Caremark has already proposed are unreasonable.

In addition, there are specific issues with each of Plaintiffs' new demands:

*National Client Contracting.* In their February 28 letter, Plaintiffs requested "a custodian" from the National Client Contracting department. ECF No. 439 at 15. The Court directed CVS Caremark to propose "*a representative* from the National Client Contracting group." Tr. at 51:11-12 (emphasis added). Consistent with the Court's direction, CVS Caremark proposed a representative custodian who covers the entire Relevant Time Period: Ilona Smith. Plaintiffs now demand *three additional* custodians from this group. To get there, Plaintiffs are trying to divide the department into smaller subsets (e.g., "New Sales" and "Key Accounts") to gain additional custodians beyond what they had requested and what the Court ordered. This constant moving of the goal posts—and refusal to accept "yes" for an answer—is indicative of Plaintiffs' entire approach to discovery, and the reason custodial negotiations have dragged on.

As CVS Caremark has explained, Ms. Smith—a Senior Vice President in the Employer Business Unit who worked extensively with plan design structure—is an ideal representative custodian for this department. But Plaintiffs do not want a "representative custodian." They want what the Court rejected: to micromanage CVS Caremark's document discovery and choose CVS Caremark's custodians for themselves. But that is not what the Court ordered. And it is contrary to the law of this Court, which requires that a party moving to compel a custodial production before it begins must illustrate that the producing party's proposal is "manifestly unreasonable." *LifeScan*, 2023 WL 7089662, at *8. Plaintiffs do not and cannot make any such showing here.

*Representations Custodians.* At the March 11 conference, this Court ordered discovery into "specific" alleged "misrepresentations." Tr. at 56:17-20. CVS Caremark's proposal— targeted searches of custodians who were involved in preparing or drafting the representation—

aligns with the Court's guidance and basic common sense. Plaintiffs, however, demand burdensome discovery untied to specific misrepresentations, in violation of this Court's directive.

Plaintiffs' complaints about CVS Caremark's process for representation discovery are misplaced. Plaintiffs first gripe that CVS Caremark only "reviewed misrepresentations from one specific PFS." Plaintiffs fail to mention, however, that *it was Plaintiffs' themselves* who directed CVS Caremark to that PFS. ECF 490-1 at 14.[1] CVS Caremark has further agreed to consider in good faith any supplemental list of purported misrepresentations. *See id.* Plaintiffs promised to provide such a list, but did not do so until after 11:00 p.m. Friday night, which CVS Caremark is considering. Nor is the process "unworkable." To the contrary, the process is well-designed to provide Plaintiffs with targeted discovery on alleged misrepresentations without adding the additional burden of a full custodial review—a review that would undoubtably balloon the already high number of documents CVS Caremark has agreed to review.

Plaintiffs also complain that CVS Caremark has failed to identify a government relations custodian. But that also ignores the parties' conferral history. Of the forty-six purported misstatements Plaintiffs identified before filing their April 4 letter, precious few included statements made to the government. And besides, CVS Caremark confirmed that another custodian that it proposed, Tammy Lewis, *was* involved in those government-focused statements. Accordingly, there is no need to identify other duplicative custodians that would only add unreasonable burden.[2]

*Industry Analysis/Trade Finance.* Plaintiffs fail to explain that CVS Caremark has agreed to provide *five* custodians for this department. These representative custodians are more than sufficient, and Plaintiffs' requests for more are cumulative and duplicative.

With respect to Mr. Khan, CVS Caremark included him to ensure that a representative custodian working in financial analysis covered the entire time period. As Plaintiffs concede, CVS Caremark has already offered Shivam Patel for the 2011-2017 period as the representative custodian. The inclusion of Mr. Khan over this time period would therefore be duplicative, and Plaintiffs offer no reason for his inclusion.

Plaintiffs also request Mark Walker be added. But they ignore that CVS Caremark has already proposed three other members of Mr. Walker's team, including his supervisor, Domenico Gugiluzza. In short, Plaintiffs want Mr. Walker added as a custodian notwithstanding the fact that CVS Caremark has proposed other representative custodians. To justify this duplicative request, Plaintiffs only discuss Mr. Walker's role generally, but that role is duplicative of other, already offered custodians' roles. Plaintiffs also point to Mr. Walker's "Trade Tracker." But Plaintiffs

---

[1] Plaintiffs directed CVS Caremark to "the list of misrepresentations in the January 21 State AG PFS." ECF No. 490-1 at 14. There are eight January 21, 2025 State AG PFSs, each of which include the same alleged misrepresentations copied and pasted.

[2] Notably, Plaintiffs failed to disclose to CVS Caremark certain statements they purport Ms. Melissa Schulman helped draft prior to moving the Court. This further illustrates Plaintiffs' refusal to properly confer. And Plaintiffs explicitly conceded that they *already have discovery* into the drafting of these alleged misstatements.

only home in on this for an obvious reason: Mr. Walker exchanges that tracker with *custodians who CVS Caremark has already proposed and produced documents for.*

Plaintiffs' additional demand for Lauren Meyer is particularly curious, given they had previously advised CVS Caremark they were removing her from their custodian proposal. *See* ECF No. 444-1. In any event, Ms. Meyer should not be added, because she is duplicative of others. Indeed, Lora Armstrong is a proposed custodian, and, like Ms. Meyer, she was also on the Clinical Assumptions Committee.[3]

*Trade Relations*. That Plaintiffs do not seek any additional Trade Relations custodians at this time ought to be unremarkable, given that CVS Caremark has proposed fifteen such custodians. Plaintiffs' themselves have acknowledged that they view CVS Caremark's custodial proposal as "overwhelmingly from the Trade Relations group." ECF No. 491-1 at 10. But Plaintiffs are transparently laying a marker that they will seek additional custodians later in discovery. *See* ECF No. 493 at 3. But the foundation for that reservation is faulty. Contrary to Plaintiffs' suggestion, CVS Caremark has provided Plaintiffs a great deal of information regarding this department, ECF No. 491 at 3, and other correspondence and discussions. CVS Caremark, moreover, has already produced over 150,000 documents to Plaintiffs, with a major focus on this department. CVS Caremark's Trade Relations proposal is more than sufficient, and CVS Caremark will resist further discovery from this department.

**Data Proposals**

Given the state of the parties' conferral, CVS Caremark was surprised Plaintiffs argued that "the parties have necessarily reached impasse" on data issues. ECF No. 493 at 12. Over two weeks ago, Plaintiffs committed to "provide their counterproposal" to CVS Caremark's January 23 proposal. ECF No. 490-1 at 10.[4] No such proposal was ever made. Before any issue about data is ripe for consideration, Plaintiffs should do as they promised and provide an actual counterproposal.

In previous briefing, and at the March 11 conference, CVS Caremark explained the extreme burden associated with providing every data field in its systems. Tr. at 79:2-22; *see* ECF No. 444 at 7-8. Plaintiffs refused to accept that there was burden, and instead speculated about CVS Caremark's relational database. *See* March 11 Tr. at 79:32-80:4. The Court, however, ruled that it "did not intend to require a responding party or producing party to disclose all data fields within a particular database." *Id.* at 86:6-8. The Court instead directed the PBMs to discuss with their clients and "see if there are ways to generate additional information as to the types of data fields that are within these databases, such as counsel's representation that there might be a manual or schema readily available." *Id.* at 86:12-17.

CVS Caremark did so. CVS Caremark then informed Plaintiffs that it does not have any readily-available "manual" or "schema" to provide for Claims data, but it is continuing to

---

[3] Plaintiffs' primary argument for adding Ms. Meyer is that she was a member of the Clinical Assumptions Committee. Notably, Plaintiffs never *once* raised the Clinical Assumptions Committee with CVS Caremark, or offered that as a justification for their request for Ms. Meyer.

[4] Plaintiffs' habit of raising issues with the Court without proper conferral is well-documented. *See* ECF No. 490-1 at 3 (listing several examples of Plaintiffs' conduct).

investigate whether there is some subset of information that could be provided for Manufacturer Rebate data.

  Plaintiffs' position that it will have to proceed on "blind trust" without some full listing of every field available is unfounded. CVS Caremark has engaged in extensive discussions with Plaintiffs, and made a detailed proposal in January, which has now been outstanding *for more than twelve weeks*. Plaintiffs are simply refusing to engage with the proposal, in violation of the "iterative and cooperative" process that this Court has ordered. Instead, Plaintiffs are now threatening to seek a corporate deposition to obtain information this Court has already denied Plaintiffs. This is neither productive nor appropriate. Plaintiffs' conduct is particularly jarring given that their refusal to offer transparency into their document searches. *See* ECF No. 490-1 at 8-9. Plaintiffs should be ordered to respond to CVS Caremark's data proposal (as they committed to do time and again).

  Thank you for your continuing attention to this matter.

Respectfully submitted,

*/s John D. Tortorella*
John D. Tortorella
*Counsel for Defendants Caremark Rx, LLC, Caremark LLC, and Caremark PCS Health, LLC*

*/s Nicholas C. Suellentrop*
Nicholas C. Suellentrop
Williams & Connolly LLP
*Counsel for Defendants Caremark Rx, LLC, Caremark LLC, and Caremark PCS Health, LLC*

cc: Honorable Brian R. Martinotti, U.S.D.J.
   All Counsel of Record