# Morgan Lewis

**Jason R. Scherr**
Partner
+1.202.373.6709
jr.scherr@morganlewis.com

April 14, 2025

**VIA ECF**

The Hon. Rukhsanah L. Singh
United States Magistrate Judge
United States District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Room 2020
Trenton, NJ 08608

Re: *In re: Insulin Pricing Litigation,* 2:23-md-03080-BRM-RLS (D.N.J.)
    Express Scripts' Reply to Plaintiffs' Position Statement (ECF No. 493)

Dear Judge Singh:

Pursuant to the Court's April 8, 2025 order (ECF No. 500) Defendants Express Scripts, Inc., Medco Health Solutions, Inc., and Express Scripts Administrators, LLC (collectively, "Express Scripts") hereby submit this reply to Plaintiffs' Position Statement on PBM Defendants' Custodian Proposals that also included what Plaintiffs term an "update" regarding their demand for each PBM to produce *all* available data fields, which the Court previously rejected.

In its April 4 letter (ECF No. 489), Express Scripts demonstrated that it has proposed "representative custodians for each of the departments identified by the plaintiffs in their letter dated February 28, 2025." Mar. 11 Conf. Tr. at 51:5–10.  In their letter (ECF No. 493), Plaintiffs do not dispute that Express Scripts has identified representative custodians for the "Industry/Trade Relations" department or from Express Scripts' "Formulary Committees."  For the remaining three departments, discussed below, Plaintiffs have not met their "heavy burden" to show that Express Scripts' custodial selections are "deficient or lacking." *LifeScan, Inc. v. Smith*, 2023 WL 7089662, at *7–8 (D.N.J. Oct. 11, 2023) (Cavanaugh, Special Master).

### A. Public Relations, Investor Relations, and Government Affairs.

Plaintiffs err by disregarding the meaningful differences between these distinct departments and how each relates to the misrepresentations alleged.  Following the Court's direction that identifying departmental custodians should be "tied to specific misrepresentations" alleged in Plaintiffs' complaints, Express Scripts explained that Plaintiffs' limited allegations regarding misrepresentations in Express Scripts' securities filings and to Congress do not warrant the identification of additional Investor Relations and Government Affairs custodians.  ESI Ltr. at 2–3.

**VIA ECF**

The Hon. Rukhsanah L. Singh
April 14, 2025
Page 2

  Plaintiffs now urge the Court to reconsider its decision that custodial searches should be tied to particular misrepresentations. *See* Pl. Ltr. at 4 (faulting the PBMs' for "exploit[ing] the Court's language"). But they have failed to articulate a valid reason for the Court to do so. Plaintiffs insist they will supposedly "identify thousands of specific misrepresentations across the hundreds of cases in this MDL." Pl. Ltr. 4–5. They made this argument before, and the Court already rejected it. *Compare* Mar. 11 Tr. at 55:9 ([Counsel for Plaintiff] "[W]e do think it's appropriate to have a person in each of those departments beyond just the misrepresentations, because even just on the misrepresentations alone, as we continue to identify more – dozes of misrepresentations, we have to – it would have to be an ongoing process"); *with id.* at 56:17–19 ([The Court] "I think if we start and let's just get discovery going, if we start with the specific representations as previously discussed, we'll get the ball rolling, and we'll have to take it from there").

  For the Public Relations department, the issue is moot. Express Scripts agreed to add two custodians from its communications department without regard to whether they were linked to particular alleged misrepresentations in the complaint[1], and Plaintiffs do not identify any deficiency with Express Scripts' proposal.

  But seeking custodial searches from Investor Relations and Government Affairs is different. The universe of even potential representations is much smaller—necessarily limited to statements to investors (such as public securities filings) or to government officials. In their pleadings, Plaintiffs point only to boilerplate in Express Scripts' prior annual reports that predate the relevant discovery period, and to specific misrepresentations by a single Express Scripts official during her testimony to Congress. *See* ESI Ltr. at 2–3. That official is already a custodian. *Id.* at 3. Plaintiffs do not show how such limited allegations support the burden and expense of additional custodians from these two departments. *See id.* And to the extent Plaintiffs try to allege additional supposed misrepresentations, the Court already rejected Plaintiffs' effort to expand custodial discovery in this way during the master discovery stage. *Id.* at 56:17–19.

  **B.**  **Finance Department**

  Indicative of their constantly shifting demands, Plaintiffs now claim that they are seeking two categories of custodians from a finance department: "(1) custodians who engaged in forecasting, analytics, and modeling for Manufacturer Payments or formularies; and (2) custodians who compiled or analyzed profit and revenue information and constructed department budgets." Pl. Ltr at 6. Express Scripts fully addressed Plaintiffs' demand in their initial letter. ESI Ltr. 4–5. But inasmuch as Plaintiffs assert that Express Scripts did not provide custodians regarding subcategory (2) covering the entire relevant time period, they ignore Express Scripts' prior disclosure that it agreed to add Jack Cunningham as a custodian. *Compare* ESI Ltr 4–5, *with* Pl. Ltr. 7–8.

---

  [1] Plaintiffs' belief that they will identify many more "misrepresentations" likely stems from the vague, subjective nature of the supposed deceptive representations. *See, e.g.*, Texas. Pet. ¶ 486.d. ("[Express Scripts] helps our clients and diabetes patients prevail over cost and care challenges created by" diabetes); *id.* ¶ 486.i. ("Express Scripts is dedicated to controlling insulin prices because 'we stand up for payers and patients.'"); *id.* ¶ 492.a ("By delivering smarter solutions to patients and clients, PBMs provide better care and lower cost with every prescription, every time."). Or as counsel put it at the last hearing, Plaintiffs are alleging that the "PBMs entire business model . . . based on the premise that they lower prices and promote health" is deceptive. Mar. 11 Tr. at 56:2–4.

VIA ECF

The Hon. Rukhsanah L. Singh
April 14, 2025
Page 3

### C. National Contracting

Express Scripts identified a senior executive, Leslie Achter, to satisfy Plaintiffs' request for a custodian to cover their request for custodial materials from national contracting. Plaintiffs do not identify any reason to doubt she is a proper custodian. But Plaintiffs insist that they should add "Denise Pummel[2]"—an employee in the *corporate communications* department rather than national contracting—on the premise that she was allegedly "involved in key national client communications throughout the relevant time period." Pl. Ltr. at 11. The Court ordered the PBMs to identify a custodian that could provide information at a "high level" about national contracting because Plaintiffs insisted that is what they wanted at this stage. *See* Mar. 11 Tr. at 51:11–17. Plaintiffs' attempt to tack on additional custodians from national contracting would be inconsistent with that representation even if Ms. Pummill weren't in corporate communications—from which Express Scripts already designated two other custodians. And more fundamentally, Plaintiffs' conclusory representations fail to show that adding her as a custodian is necessary or proportionate here.

### II. Data Fields

The Court previously ordered that the ESI Order does not "require a responding party or producing party to disclose all data fields within a particular database." Mar. 11 Tr. at 86:6–8. The Court clarified that the intent of the ESI Order was "to provide sufficient information to a requesting party to guide where relevant sources might be located." *Id.* at 86:9–11. During the hearing, Plaintiffs' counsel speculated that each PBM has database administrators, and there's a "binder in-house, probably electronic, that's going to list the database schema for all the tables in a given database. It's going to list all the fields. It's going to talk about how they're indexed and they are related to each other. That's what they have." *Id.* at 79:23–80:4. Plaintiffs made these representations without discussing with Express Scripts the nature of Express Scripts' relational databases, despite Express Scripts having served a detailed data field proposal on January 21, 2025. *See* ECF No. 410-5.

In response to Plaintiffs' representation, the Court asked the PBMs, including Express Scripts, to "go back to your respective clients, see if there are ways to generate additional information as to the types of data fields that are within these databases, such as counsel's representation that there might be a manual or schema readily available." Mar. 11 Tr. at 86:12–17. Express Scripts did precisely that. After its investigation, Express Scripts explained to Plaintiffs that it did not "maintain a data dictionary, manual, or schema that reflects all available fields during the relevant time period," but that it included field descriptions in its comprehensive data proposal to enable a meaningful meet and confer if one were necessary. Ex. 1.

Plaintiffs *still* have not engaged with the data proposal Express Scripts made in January. Plaintiffs' spurious accusations of inaccurate statements by counsel are belied by the facts. There is no readily available data dictionary, and there is no person at Express Scripts knowledgeable about all the data fields in its current (or legacy) relational databases. Express Scripts' Information Warehouse is a relational database that includes data fields across *thousands* of tables used to facilitate multiple Express Scripts' operations, including but not limited to the claims adjudication

---

[2] Plaintiffs appear to be referring to Denise Pummill.

**VIA ECF**

The Hon. Rukhsanah L. Singh
April 14, 2025
Page 4

process.[3]  While it lacks the ability to generate a data dictionary or similar list of all available fields, Express Scripts' initial investigation revealed that many fields do not represent the final drug dispensed, do not relate to the dollar amount of the claim, are not consistently populated, contain protected health information, are third party data with use or disclosure restrictions, or were not used during the relevant time period.  Generating even a list of all of the fields across the relational databases, let alone the intended meaning of any data included in those fields, would be a herculean, and ultimately pointless, effort.

Before insisting on discovery-on-discovery through a threatened corporate deposition, Plaintiffs should engage with the data proposal Express Scripts already provided.  This proposal responded to the **94** specific categories of information Plaintiffs included in an exhibit to its Requests for Production.  *See* ECF No. 410-5; *see also* Ex. 2 (Exhibit A to Plaintiffs' RFPs).  If there are additional categories of information that Plaintiffs now believe are relevant despite failing to include them in the extensive list attached to their RFPs or if Plaintiffs have questions regarding Express Scripts' January proposal, the parties can meet and confer about that.  But the Court already rejected Plaintiffs' fishing expedition once.  Questioning the integrity of Express Scripts' counsel hardly provides a reason to reconsider that ruling.

We thank the Court for its continued attention to this matter.

Respectfully submitted,

*/s/ Jason R. Scherr*

Jason R. Scherr


cc:     Honorable Brian R. Martinotti, U.S.D.J.
        All Counsel of Record

---

[3] In addition, Express Scripts utilized a pre-2014 legacy system (EDW), which includes differing fields.