**SeegerWeiss** LLP

NEW YORK • NEW JERSEY • PHILADELPHIA • NEWTON, MA

April 16, 2025

<u>VIA ECF</u>

Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

   **Re:**   *In re: Insulin Pricing Litigation*, MDL No. 3080
        No. 2:23-md-03080-BRM-RLS

Dear Judge Singh:

  We write on behalf of Plaintiffs in furtherance of the parties' April 4, 2025 submissions regarding custodial negotiations [ECF Nos. 489-90 & 492-93] and in response to the PBM Defendants' ensuing oppositions filed on April 14, 2025 [ECF Nos. 510-12].

  First, with respect to custodians, the PBM Defendants contended that their supplemental oppositions were necessary to respond to Plaintiffs' requests for specific departmental custodians [ECF No. 496], but the PBMs' letters simply rehash the same arguments set forth in their initial submissions. These oppositions, which appear to have been requested simply so Defendants could have the last word on custodians, do not warrant a response, and Plaintiffs therefore rely on their initial April 4, 2025 submission in this regard.

  With respect to data fields, the PBM Defendants' positions are unsustainable. During the March 11, 2025 hearing, the Court reiterated that "the intent of the [Court's ESI] order was to provide sufficient information to a requesting party to guide where relevant sources might be located" and, for that reason "direct[ed] the PBM defendants" to "see if there are ways to generate additional information as to types of data fields that are within [their] databases," including, by way of example only, manuals or schema. Tr. at 86:3-17.

  Rather than comply with the Court's directive and undertake a thorough investigation, the PBM Defendants instead adopted a hyper-technical interpretation of the Court's words, confirming only that there were no "manuals" or "schema" that could generate additional information regarding their available data fields.[1] Not only is their position implausible—data

---

[1] While Optum has—unlike the other two PBM Defendants—advised Plaintiffs that it has plain-language descriptions available for all of its data fields, it has inexplicably refused to provide that information except as to the narrow subset of data fields it has already proposed that Plaintiffs blindly accept. This is exactly the kind of description Plaintiffs might be able to use to secure a reasonable universe of fields that would capture the information necessary for this case.

handling, data processing, and data utilization are at the heart of the PBM Defendants' operations[2]—but the PBMs' limited investigation ignores the spirit of the Court's ruling and continues to deprive Plaintiffs of critical information necessary to meaningfully confer regarding the scope and format of the production of PBM data.

The importance of the PBMs' data in this case cannot be overstated. The flow of dollars is paramount to all Plaintiffs' cases: Plaintiffs require data reflecting, first, how the dollars flow from the Manufacturers to the PBMs (and their affiliated mail-order entities) so that the Manufacturers can have their drugs covered on the PBMs' formularies; and second, how the dollars flow from the PBMs to their payer-clients like Plaintiffs in light of the PBM' representations that they work to save their clients money and pass through all (or nearly all) of these Manufacturer payments. The PBMs added an additional level of complexity into this money flow through their recently incorporated rebate aggregator affiliates, which collect the dollars from the Manufacturers, retain some, and then pass on the balance to their affiliated PBM (ostensibly for that PBM to then pass on those dollars to its clients). But to test the PBM Defendants' representations regarding the dollars they actually "pass through" to clients like Plaintiffs, Plaintiffs necessarily require transaction-level data reflecting how the money flows from Manufacturers all the way through to Plaintiffs, and what portion of those Manufacturer payments are retained by the PBMs (or their affiliates). Plaintiffs further require data fields that link the dispensed drugs to the formulary that governed each adjudicated claim. And the State Attorney General claims implicate distinct data requirements, including data that would show the calculation and amounts of individual (i.e., consumer) out-of-pocket payments. All of this PBM data will also be crucial to quantifying Plaintiffs' damages.

This is simply not a case where Plaintiffs can ask the Defendants to provide broad categories of data fields to capture this information, because, to date, Plaintiffs lack information about *how* the Defendants have categorized or labeled (or potentially concealed) payments they have received from the Manufacturers in order to avoid the "pass-through" obligations they repeatedly touted to secure Plaintiffs' business. Indeed, one of the central allegations in the case is that the PBMs mislabeled the payments they received from the Manufacturers, or funneled payments through their rebate aggregators to mask these payments while continuing to represent to Plaintiffs that their rebate pass-through obligations were satisfied.

Against this backdrop, Defendants' repeated references to their various prior data proposals—and demands that Plaintiffs blindly provide counterproposals—ring hollow. Plaintiffs simply cannot accept that the PBM Defendants' unilateral proposals capture the types of data

---

[2] *See, e.g.*, CVS Health, Form 10-K for the Fiscal Year Ended Dec. 31, 2024 (CVS Caremark "administers pharmacy benefit plans for clients who contract with it to facilitate prescription drug coverage and *claims processing* for their eligible plan members."); The Cigna Group, Form 10-K for the Fiscal Year Ended Dec. 31, 2024 (Express Scripts "provides or makes available various *services supporting benefit management* and *claims administration*," and "[o]ur business is highly dependent upon our ability to perform, in an efficient and uninterrupted fashion, necessary business functions, such as *claims processing and payment, . . . [and] data centers*."); UnitedHealth Group, Form 10-K for the Fiscal Year Ended Dec. 31, 2024 (OptumRx "provides coordination and facilitation of medical services; *transaction processing*; customer, [and] consumer and care professional services[.]") (emphases added).

Plaintiffs require—especially considering that the central aspect of this case concerns the PBMs' ongoing manipulation and concealment of this very information from Plaintiffs.

To be clear, in light of the Court's guidance that the PBM Defendants are not required to identify each and every data field, Plaintiffs are no longer seeking this information. Plaintiffs, however, are still seeking (and are entitled to receive under the ESI Order) "information . . . to facilitate discussions on productions and production format." Plaintiffs therefore respectfully request that the Court provide further direction to the PBM Defendants to investigate how they can "generate additional information as to types of data fields that are within [their] databases"—without any artificial narrowing of their investigations to "manuals," "schema," or the like. If the PBMs' positions continue to be that they cannot provide this information, they should say as much in a sworn declaration. But absent the PBMs' provision of additional information, Plaintiffs maintain that additional relief will be required, either in the form of a 30(b)(6) deposition, a Rule 34 request for inspection, or otherwise.

Finally, although CVS and Optum include references in their April 4, 2025 submissions to the parties' ongoing search-term negotiations, these disputes are not yet ripe, as Your Honor acknowledged that disputes regarding search terms would necessarily follow once the parties' custodian disputes are resolved. Tr. at 54:12-16.[3] Plaintiffs will be prepared to address any remaining disputes with CVS and Optum over search terms at the appropriate time, following resolution of the parties' custodial disputes.

We thank the Court for its continuing attention to these matters.

Respectfully submitted,

*s/ Joanne Cicala*  
Joanne Cicala

*Liaison Counsel for*  
*State Attorney General Track*

*s/ David R. Buchanan*  
David R. Buchanan

*Liaison Counsel for*  
*Self-Funded Payer Track*

*s/ Matthew Gately*  
Matthew Gately

*Liaison Counsel for*  
*Class Action Track*

cc:   Counsel of Record (*via* ECF)

---

[3] To the extent that Optum references a newfound willingness to run the search terms Plaintiffs previously proposed, that is disingenuous. These search terms were proposed by Plaintiffs prior to the Court's March 11 directive that Optum provide hit reports. On March 28, 2025, Optum (for the first time) provided a hit report to Plaintiffs, and Plaintiffs made minor adjustments to their proposal to ensure that their terms were yielding the appropriate documents. It is unclear to Plaintiffs whether Optum is willing to engage in an iterative and cooperative discussion regarding these revised search terms. In any event, if there is a need to brief search terms to the Court in the future, Plaintiffs will do so.