# Exhibit 26

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

03122235

JAMES M. WAGNER, JAN GORSKY, MARILYN DICKERT and ROSA MARIA CASTILLO KESPER, Plaintiffs and Members of THE ORGANIZATION OF NEW YORK STATE MANAGEMENT CONFIDENTIAL EMPLOYEES, on behalf of all others similarly situated,

      Plaintiffs,

v.

EXPRESS SCRIPTS, INC.,

      Defendant.

**SUMMONS**

Index No.

FILED
DEC 31 2003
NEW YORK
COUNTY CLERK'S OFFICE

TO THE ABOVE-NAMED DEFENDANT:

You are hereby summoned and required to serve upon Plaintiffs' attorney an answer to the Complaint in this action within twenty (20) days after the services of this Summons, exclusive of the day of service, or within thirty (30) days after service is complete if this Summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the Complaint.

The basis of the venue designated is New York County because it is the residence of many Plaintiff members of The Organization of New York State Management Confidential Employees and because Defendant Express Scripts, Inc. does business in this County.

Dated: December 30, 2003

By: _____
Adam Gonnelli, Esq.
Beth Keller, Esq.
FARUQI & FARUQI, LLP
320 East 39th Street
New York, New York 10016
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

for all assets it has retained for its own benefit and use, and restitution to OMCE Members and Class Members of all profits ESI has earned by pocketing the difference between a co-pay paid and the lesser, actual cost of the prescription. This case involves health benefits which are exempt from ERISA.

5. ESI commonly engages in a series of actions and omissions which violate New York law and which do not benefit OMCE Members, Class Members or other New York consumers who have pharmacy benefits administered by ESI, and which result in increased health care costs, inflated insurance premiums and co-payments to which OMCE Members and Class Members are subjected, and which have resulted in co-payments made by OMCE Members and those similarly situated for their prescriptions which exceed the cost of the actual prescription These practices include:

(a) **Retaining Undisclosed Rebates from Manufacturers.** Defendant ESI uses the buying power of the health plans offered by NYSHIP to OMCE Members and Class Members to negotiate favorable discounts, rebates, and other concessions from the drug manufacturers, without passing them on;

(b) **Enriching Itself By Creating A Differential or "Spread" in Discounts.** Defendant offers the plans provided by NYSHIP to OMCE Members a discount on the purchase of prescription drugs. ESI also enters into a pricing contract with pharmacies, which provides for a discount to ESI (for sending its participants to that pharmacy). By creating – and pocketing – a "spread" in the discount, Defendant profits at the OMCE Members' expense.

(c) **Enriching Itself By Creating A Differential or "Spread" in Dispensing Fees.** The price of a drug, as charged by the pharmacy, is generally a combination of the wholesale price of the drug itself, and a dispensing fee, that the pharmacy gets for dispensing the drug to the

Thus, drug manufacturers are under competitive pressures to have their brand name drugs listed on the formularies established by the PBMs. By the mid-1990s, almost all of the major PBMs were owned by, or had alliances with, drug manufacturers. This led the Office of the Inspector General and the General Accounting Office to release reports detailing their respective concerns with the potential bias resulting from the PBM and drug manufacturer alliances. After entering into consent decrees with the Federal Trade Commission, certain drug manufacturers recently divested their interests in PBMs.

28. Nonetheless, incentives for collusion between drug manufacturers and PBMs remain. PBMs use their influence and increased purchasing power to negotiate both rebates from pharmaceutical manufacturers and discounts from retail pharmacies in order to generate savings for the PBMs. ESI claims in public statements or other communications that they pass these savings on to the health plans offered by NYSHIP to OMCE Members and Class Members. In the aggregate, these statements are not true. Upon information and belief, PBMs profit from several undisclosed sources of revenue, which is retained in violation of Defendant's duty to OMCE Members and Class Members, including but not limited to:

(a) On behalf of the OMCE Members and Class Members, ESI contracts with retail pharmacies to provide drugs at a discounted rate. However, ESI secretly and subversively diverts and converts a portion of the discounted drug price or retail pricing spreads from the OMCE Members and Class Members to ESI for its own use and benefit.

(b) ESI purchases drugs at a discount from drug manufacturers to stock the mail-order pharmacies through which it sells mail-order prescriptions to OMCE Members and Class Members. ESI, however, secretly and subversively diverts and converts a portion of the discounted

10

drug price or mail-order pricing spreads from the OMCE Members and Class Members to ESI for its own use and benefit.

(c) ESI negotiates and executes numerous contracts with drug manufacturers on behalf of the OMCE Members. ESI determines the terms of these contracts, including terms that require manufacturers to pay ESI kickbacks in the form of rebates, discounts and other "soft dollars" that ESI secretly and subversively diverts and converts to its own use and benefit. These kickbacks are provided to ESI because of ESI's vast buying power and its ability to control market share, much of which ESI acquires as a result of its fiduciary relationship to the OMCE Members.

(d) ESI also obtains these kickbacks from drug manufacturers in exchange for its discretionary decision to provide access to, or to favor specific drugs listed on ESI's standardized formulary, or to favor specific drugs in ESI's drug switching programs. ESI often decides to favor higher-cost drugs over lower-cost therapeutic equivalents in exchange for the receipt of manufacturer kickbacks that ESI retains for itself. As a result, OMCE Members are not only deprived of assets that ESI should have passed through to them, but they incur increased costs from ESI's favoring of higher-cost products.

(e) In their role as third party administrator for pharmacy drug benefits for the OMCE Members, ESI acquires information about the OMCE Members, which is an asset of the OMCE Member. Nevertheless, ESI sells such information to drug manufacturers and others. In doing so, ESI subverts to its own use and fails to return to the OMCE Members the revenue derived from such data sales.

(f) ESI aids and abets drug manufacturers in perpetrating an unfair, fraudulent

11