# Morgan Lewis

**Jason R. Scherr**
Partner
+1.202.373.6709
jr.scherr@morganlewis.com

May 7, 2025

**VIA ECF**

The Honorable Rukhsanah L. Singh
United States Magistrate Judge
United States District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street Room 2020
Trenton, NJ 08608

Re:   *In re: Insulin Pricing Litig.*, **No. 2:23-md-03080-BRM-RLS, MDL No. 3080: Defendants' Omnibus Opening Letter Brief Regarding Privilege Log Protocol**

## I.   INTRODUCTION

Defendants respectfully request that the Court enter Defendants' proposed privilege log protocol, which sets forth reasonable, reciprocal, and proportionate procedures for all tracks and parties in this MDL. Defendants' proposal provides a practicable time frame for parties to log privileged material, creates a clear framework for privilege challenges, and holds *all* parties accountable for providing adequate privilege log entries. The proposal also reflects numerous concessions that Defendants have made over the course of the parties' extensive meet-and-confers in an effort to come to agreement and avoid burdening the Court with disputes, notwithstanding that Plaintiffs largely refused to cede any ground from their initial positions.

Three areas of contention remain: (1) the timing for serving rolling privilege logs as well as an initial log; (2) the deadlines and limitations that should apply to requests for supplemental information and challenges to privilege log entries; and (3) the State Attorneys Generals' self-serving proposals, including their refusal to follow the logging requirements applicable to other tracks and their proposed unilateral exemption from logging communications that the parties dispute are privileged.[1]

---

[1] Defendants' Proposed Privilege Order is attached as Exhibit A; a redline comparison of Defendants' and Plaintiffs' Proposed Privilege Orders is attached as Exhibit B.

May 7, 2025
Page 2

*First*, Defendants' proposal includes reasonable timelines for serving initial and rolling privilege logs: 120 days after entry of the Privilege Order for each party's initial log and 90 days after productions for each rolling log thereafter. This time frame accounts for the size and complexity of this MDL, the substantial volume of documents that Defendants already have produced and will be producing, and Defendants' agreement to provide written privilege descriptions for withheld documents. Plaintiffs' insistence on a condensed 30-day deadline, applied inflexibly to both rolling logs *and* what will be substantial initial logs, is unreasonable and disproportionately burdens Defendants, who have been making ongoing document productions since last year.

*Second*, although Plaintiffs demand strict timing requirements for service of the logs, they insist that there should be *no* timing requirements for challenging those logs or requesting supplemental information. Since most Plaintiffs have only engaged in plaintiff fact sheet discovery to date, Plaintiffs' approach would impose tight deadlines on Defendants to produce logs, while granting Plaintiffs freedom to challenge those logs at their own pace. In contrast, Defendants' proposal sets reasonable deadlines to seek supplemental information or challenge privilege log entries. Deadlines are necessary to ensure that privilege disputes are resolved in a timely and efficient manner and on a rolling basis instead of building up for the tail end of discovery. Plaintiffs' rejection of any deadlines or limitations allows indefinite delay and would likely result in last-minute challenges that would both waste resources and push back the close of discovery.

*Third*, Defendants propose limited privilege logging exemptions that will apply to both sides equally and concern materials that both sides agree are highly likely to be privileged. The State Attorneys General—unsupported by the other Plaintiff Tracks—seek to reject that approach, and instead request a one-sided exemption for documents Defendants believe are largely *not* privileged. The States suggest that they should not be required to log those documents at all, meaning Defendants will never know what they are and have no ability to challenge them. That approach would frustrate the purpose of Federal Rule of Civil Procedure 26(b) and Local Civil Rule 34.1 and should be rejected. Moreover, after demanding that Defendants provide document-by-document privilege logs, the State Attorneys General seek to carve themselves out of that obligation. The same logging obligations should apply equally to all parties.

Accordingly, Defendants respectfully request that the Court enter Defendants' Proposed Privilege Order, attached hereto as Exhibit A.[2]

---

[2] A few minor discrepancies between Defendants' and Plaintiffs' Proposed Privilege Orders also remain, and Defendants respectfully request that the Court enter Defendants' proposed language in each case. First, in Section I(B)(2), Defendants' proposal provides flexibility in allowing the parties to use a "family identification number … *or similar field*" to delineate family relationships. *See* Ex. B at 2. Second, Defendants added clarifying language to confirm that redacted documents need not be logged, consistent with the parties' agreement. *See* Ex. B at 2, 4–6. For example, Defendants' proposal clarifies that the metadata provided with redacted documents will be included "in the DAT file

May 7, 2025
Page 3

## II. BACKGROUND

For more than six months, the parties have exchanged draft privilege log protocols and met and conferred repeatedly. During those negotiations, Defendants made proposals intended to increase efficiency for, and decrease burden on, *all of the parties* in this MDL, consistent with the Federal Rules. By contrast, Plaintiffs have largely stood on their initial proposals and refused to compromise.

- Defendants initially proposed an efficient, lower-burden "metadata only" approach to privilege logs. Defendants ultimately agreed to Plaintiffs' demands for the more burdensome "metadata plus description" log for documents that are fully withheld on the basis of privilege.

- Defendants proposed service of a single privilege log after substantial completion of fact discovery. That approach would allow all parties to focus on the prompt production of non-privileged documents, and later turn their full attention to a streamlined privilege logging and dispute process. Plaintiffs flatly rejected that proposal and demanded rolling logs. Defendants agreed to a rolling log process.

- Plaintiffs demanded the ability to sequester (instead of destroying) clawed-back privileged material. Defendants agreed to that proposal too.

- Defendants also agreed, at Plaintiffs' request, to include page number counts for withheld documents on their logs and provide name tables.

Defendants made each of these concessions in the spirit of compromise, to move discovery forward efficiently, and to minimize the number of disputes that would need to be brought to the Court. Those good faith efforts were often met with rejection. For example, after Defendants agreed to Plaintiffs' demand for a rolling log process and agreed to provide descriptions in log entries for fully withheld documents, Plaintiffs turned around and rejected Defendants' proposed 90-day deadline for rolling logs, insisting on a 30-day turnaround. In a final attempt to resolve this issue, Defendants offered a 60-day compromise position, but Plaintiffs rejected that compromise proposal.

For the issues that remain, Plaintiffs' unwillingness to compromise left Defendants with no choice but to bring these key issues to the Court. Defendants seek the Court's intervention to help resolve the parties' impasse.

---

accompanying their production," rather than in any privilege log. *See* Ex. A at 5. Finally, Defendants deleted the requirement added by Plaintiffs to Section II(A) that parties should avoid "sweeping challenges to broad swaths of documents *provided the privilege log is compliant with this protocol.*" *See* Ex. B at 8. Plaintiffs' proposal does not explain who will decide if the privilege log is "compliant" for purposes of this provision, and thus introduces unnecessary ambiguity.

May 7, 2025
Page 4

### III.    LEGAL STANDARD

"[P]roportionality should be considered and applied to *all* aspects of discovery, including the preparation of privilege logs."  The Sedona Conference, Commentary on Privilege Logs, 25 SEDONA CONF. J. 221, 235–36 (2024) (emphasis added); *see also U.S. Bank Nat. Ass'n v. Triaxx Asset Mgmt. LLC*, 2021 WL 4973611, at *5 (S.D.N.Y. 2021) ("[P]roportionality is an issue in evaluating privilege logs, just as it is with other aspects of discovery." (internal quotations omitted)).  Privilege log requirements should drive towards the ultimate aim of "secur[ing] the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.

Proportionality is of particular concern in complex, mass actions like this one, in which defendants often bear the greatest discovery burdens, including privilege logging.  *See In re Asbestos Prods. Liab. Litig.*, 543 F. App'x 202, 206 (3d Cir. 2013) (noting that the "case management needs of [] multidistrict litigation … includ[e] the need to avoid unnecessary burdens on defendants" (cleaned up)); *Dana v. Baker Hughes, Inc.*, 2015 WL 5576880, at *15 (M.D. Pa. Sept. 21, 2015) ("With the electronic archives of large corporations or other large organizations holding millions of emails and other electronic communications, the cost of discovery to a defendant has become in many cases astronomical." (internal quotation and citation omitted)); *see also Chambers v. Whirlpool Corp.*, 980 F.3d 645, 666 (9th Cir. 2020) ("[C]lass action plaintiffs typically possess no or very limited discoverable materials, while defendants may have reams of documents and terabytes of electronic data. Class action plaintiffs thus have an incentive to seek aggressive discovery … without fear of reciprocally burdensome discovery."). Especially considering this disproportionate burden, it is paramount that discovery protocols account for these burdens and apply equally to *all* parties. *See In re Insulin Pricing*, MDL No. 3080 (D.N.J. May 24, 2024), ECF 186 at 3 (adopting ESI Order language applying ESI Order provisions to all parties); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 246 (3d Cir. 2013) (explaining that "in complex cases" such as MDLs, courts have wide discretion to "manage complex issues and potential burdens on defendants and the court—namely … through managing discovery" (cleaned up)).

### IV.    ARGUMENT

In light of Plaintiffs' broad-ranging discovery requests, the hundreds of thousands of documents that Defendants have already produced—and the significant number that they will continue to produce, and the paltry collection of documents Plaintiffs have produced, the largest share of the burdens associated with privilege logs in this MDL will fall on Defendants. Defendants' proposals reflect that reality by imposing appropriate and reciprocal obligations on all parties; Plaintiffs' proposals would only exacerbate this asymmetrical burden.

#### A. Defendants' Proposal for Serving Rolling Logs Is Proportional and Efficient.

Defendants' proposed timing for service of privilege logs—within 90 days of a

May 7, 2025
Page 5

document production for the rolling privilege logs, and within 120 days of entry of the Privilege Order for initial logs[3]—is reasonable, proportionate, and consistent with discovery orders routinely entered in this Circuit. *See*, *e.g.*, *MSP Recovery Claims v. Abbott Lab'ys*, No. 19-21607 (D.N.J. Nov. 23, 2022), ECF No. 141 at 20 (Singh, J.) (order requiring that parties "produce a privilege log within 90 days after the deadline for producing documents in response to the specific production request"); *In re Samsung*, No. 23-03055 (D.N.J. June 27, 2023), ECF No. 66 at 19 (order requiring parties to "produce a privilege log no later than 120 days after the date of a production from which the document would otherwise have been produced but was withheld").[4] Plaintiffs' demand for 30-day turnarounds for initial *and* rolling privilege logs is untenable for a litigation of this size and complexity.[5]

The deadline for privilege logs must be proportionately tailored to the needs of this litigation. *See U.S. Bank Nat.*, 2021 WL 4973611, at *5. Plaintiffs' 30-day proposal fails to strike a proportionate balance. *See Mi Familia Vota v. Fontes*, 344 F.R.D. 496, 522–23 (D. Ariz. 2023) (explaining that "compiling a privilege log within 30 days may be exceedingly difficult, even for counsel who are sophisticated, experienced, well-funded, and acting in good faith"). While 30 days is unreasonable even for rolling logs, that burden is further compounded by Plaintiffs' refusal to allow additional time to serve each party's *initial* privilege log. These initial logs must capture privileged material subject to logging associated with the productions made in the MDL to-date.[6] This is no small task, as

---

[3] Defendants' Proposed Privilege Order provides: "The Producing Party shall produce a privilege log for documents fully withheld from production on the basis of privilege as set forth below within 90 (ninety) days of the date the document or information would have been produced if not for the claim of privilege, and, for the first privilege log, within 120 (one hundred twenty) days of the entry of this Order, unless another time is agreed to by the Parties." Ex. A at I(A).

[4] *See also Occidental v. 21st Century Fox*, No. 18-11273 (D.N.J. Feb. 8, 2019), ECF No. 544 at 10 (discovery protocol requiring a "designating party [to] produce a privilege log within 120 days following the production of documents from which the privileged documents are withheld"); *US. v. Gilead Sciences, Inc.*, No. 17-01183 (E.D. Pa. Dec. 28, 2022), ECF No. 111 at 14 (90-day deadline); *Merck Sharp & Dohme Corp. v. Pfizer Inc.*, No. 19-02011 (E.D. Pa. Dec. 4, 2020), ECF No. 107 at 16 (90-day deadline); *Montich v. Miele USA, Inc.*, No. 11-02725 (D.N.J. May 6, 2013), ECF No. 71 at 5 (90-day deadline); *Burkart v. Lina Medical US*, No. 14-01557 (E.D. Pa. Sept. 23, 2014), ECF No. 49 at 15 (90-day deadline).

[5] Plaintiffs' Proposed Privilege Order provides: "The Producing Party shall produce a privilege log as set forth below on a rolling basis, 30 (thirty) days of the date the document or information would have been produced if not for the claim of privilege, unless another time is agreed to by the Parties." Ex. B at I(A).

[6] The parties agree that nothing in the Privilege Order "shall be interpreted to require the *re-logging* of any materials previously withheld from discovery (in whole or in part) on the basis of privilege in prior proceedings/litigations." *See* Ex. B at n.1 (emphasis in original).

May 7, 2025
Page 6

Defendants have produced vastly more documents than Plaintiffs. A 30-day deadline would disproportionately burden Defendants—a disparity that will only continue going forward if a 30-day deadline applies to future rolling logs.

In contrast, Defendants' proposal provides a realistic timeframe for the scale of this MDL without disadvantaging any party. For the initial privilege logs, a 120-day deadline accounts for the fact that certain Defendants' document production started significantly earlier than the eventual entry of the Privilege Order, which means the first log will need to account for Defendants' significant productions to date. Defendants should not now be penalized for their efforts to efficiently produce documents. Defendants' proposed timing also reflects the increased labor inherent in preparing the initial logs and aligns with the time frames ordered in similarly complex litigation. *In re Samsung*, No. 23-03055 (D.N.J. June 27, 2023), ECF No. 66 at 19 (120 days); *Occidental*, No. 18-11273 (D.N.J. Feb. 8, 2019), ECF No. 544 at 10 (120 days). These reasonable timeframes benefit all parties, and are particularly appropriate here, given that Plaintiffs have benefitted from Defendants' early production of documents and will not be prejudiced by Defendants' proposed privilege log deadlines.

The 90-day deadline for rolling privilege logs is similarly appropriate and proportional. *See*, *e.g.*, *MSP Recovery*, No. 19-21607 (D.N.J. Nov. 23, 2022), ECF No. 141 at 20; *Gilead Sciences*, No. 17-01183 (E.D. Pa. Dec. 28, 2022), ECF No. 111 at 14; *Merck*, No. 19-02011 (E.D. Pa. Dec. 4, 2020), ECF No. 107 at 16; *Montich*, No. 11-02725 (D.N.J May 6, 2011), ECF No. 71 at 5. It provides flexibility, calling for 90 days "unless another time is agreed to by the parties." *See* Ex. A at I(A). If a particular issue arises that requires a quicker turnaround, Defendants' proposal allows the parties to address that issue, rather than imposing arbitrarily harsh deadlines on *every* production and privilege log. *See*, *e.g.*, *In re Zoloft,* No. 12-02342 (E.D. Pa. Jul. 24, 2012), ECF No. 215 at 15 (order setting a 90-day deadline for privilege logs but permitting a receiving party to request "that a privilege log for a particular production be provided within a shorter time period if the receiving party has a good faith basis for such a request").

Accordingly, Defendants respectfully request that the Court enter Defendants' Proposed Privilege Order with a 90-day deadline for serving rolling privilege logs and 120-day deadline for serving initial privilege logs, as reflected in Exhibit A.

### B. Deadlines and Limits on Privilege Log Inquiries and Challenges Are Necessary to Avoid Undue Delay and Burden to the Court and Parties.

The Court should impose deadlines and limits on a receiving party's ability to seek supplemental information about, or challenge, privilege log entries to ensure that any disputes are identified and resolved in a timely manner. *See* L. Civ. Rule 26.1(a) ("All parties shall conduct discovery expeditiously and diligently."). Without such deadlines or limitations, a party could prolong discovery indefinitely by raising privilege disputes at any point in time, which would burden the Court, prejudice the other parties, and unduly delay resolution of this litigation.

Consistent with those objectives, Defendants propose deadlines and limits on privilege log inquiries and challenges. In response, Plaintiffs have categorically rejected *any* such deadlines or limits, asserting that they must be allowed to raise limitless challenges to Defendants' logs at any time in the future. In fact, Plaintiffs assert that they would "require" that "any proposed protocol" include both "no limit as to the timing a privilege challenge may be raised" and "no limit to the number of challenges that must be brought at one time." *See* Pearl Robertson email dated March 18, 2025 at 5:54 AM EST, excerpt attached hereto as Exhibit C. Given the expected size of Defendants' document productions and corresponding logs, and the prompt timing requirements for serving those logs, limits on challenges are not only reasonable, but necessary to ensure that the parties can advance the litigation toward resolution rather than remain moored in endless discovery and serial privilege log disputes. To that end, the Court should order the following deadlines and limits from Defendants' Proposed Privilege Order.

***First***, Defendants propose that any challenge to a privilege log must be raised within 75 days after production of the log or the Court's entry of the Privilege Order, whichever is later. This deadline is *more generous* to the challenging party than deadlines other MDL courts have imposed. *See In re Bard Implanted Port Catheter Prods. Liab. Litig.*, MDL No. 3081 (D. Ariz. 2024), ECF No. 528 at 5 ("the challenge shall be brought within 70 days of receipt of a privilege log or document production containing the redacted document"); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, MDL No. 2843 (N.D. Cal. 2020), ECF No. 462 at 5 ("Within 30 days of receiving a privilege log, or within a reasonable time depending on the volume of the log, a receiving party must identify in writing any particular log entries that it asserts are not privileged or that it asserts require further explanation."); *see also In re Davol, Inc./C.R. Bard, Inc. Polypropylene Hernia Mesh Prods. Liab. Litig.*, MDL No. 2846 (S.D. Ohio 2019), ECF No. 130 at 3 ("A receiving party may challenge a claim of privilege within 75 days after receiving a privilege log identifying the document"). Again, Plaintiffs refuse to accept *any* limit whatsoever on such challenges—regardless of the delay and burden that would create—and have never offered a single compromise on this issue over the last six-plus months.

***Second***, Defendants propose that any request for supplemental information about a privilege log entry must be made within 45 days of the production of that log, and that the receiving party be limited to 100 requests for supplementation per log. Again, Plaintiffs simply rejected this limitation without offering any counterproposal. In other words, Plaintiffs' position is that 45 days (or really, *any* amount of time) is *too short* to *review* log entries and request further information on certain entries, yet Plaintiffs propose that Defendants should be permitted no more than 30 days total to *prepare* their entire logs—a far more burdensome task. If Plaintiffs insist on rolling logs, it stands to reason that Plaintiffs should review those rolling logs on a rolling basis and raise any supplementation requests within 45 days of the production of that log.

***Finally***, as to the areas where the parties are agreed that there should be *some* deadline, the Court should enter the deadlines set forth in Defendants' proposal. Those are:

May 7, 2025
Page 8

- 30 calendar days for a party receiving a challenge to either withdraw the privilege claim or identify all bases for rejecting the challenge. Plaintiffs' proposal—of a mere seven days—would be unduly burdensome, especially given the size of Defendants' past and expected future productions and the number of expected challenges. These responses will require careful assessment by Defendants, while they are simultaneously drafting rolling privilege logs for other productions.

- 30 calendar days for a party to produce downgrades as production overlays, if a privilege claim or redaction is downgraded, modified, or withdrawn. Again, Plaintiffs' proposal (ten days) would be unduly burdensome and belies the fact that provider arrangement and preparation of replacement images, slipsheets, and overlays takes processing and assembly time.

- 14 calendar days for a party to provide in writing the information that would be included in a privilege log entry, if it discovers that material needs to be clawed back due to privilege. Plaintiffs' proposal—again, a mere seven days—is unduly burdensome for the same reasons discussed above.

Defendants' proposed timeline for each of these situations is reasonable and accounts for the realities of the time it takes to discuss with clients, work with vendors to produce overlays, make or remove any necessary redactions, and otherwise prepare documents for production, particularly where challenges include large numbers of documents. To ensure the timely completion of discovery and resolution of any privilege disputes, and to preserve the resources of the Court and parties, Defendants respectfully request that the Court enter the Proposed Privilege Order with Defendants' proposed deadlines and limitations, as reflected in Exhibit A.

### C. Logging Exemptions Should Be Reciprocal and Permitted Only For Communications *All* Parties Agree Are Presumptively Privileged.

The States seek a categorical exemption from logging purportedly privileged communications that is one-sided and vastly overbroad. The States—*and no other plaintiff*—seek to exempt from logging communications "exchanged between and among counsel (outside or government) for State Attorneys General's offices regarding Investigations about Insulin Pricing or Litigation about Insulin Pricing." Ex. B at I(C)(2)(i). In other words, if lawyers in one State Attorney General's Office communicate with lawyers who work in a different state's office—regardless of whether either State has filed litigation or is currently undertaking an investigation about insulin pricing—the States' position is that Defendants should *never* receive any information about those communications.

Defendants offered to establish a parallel common interest/joint privilege exemption that would apply where the parties are engaged in litigation. Plaintiffs initially indicated they would only be willing to accept a common interest exemption for Defendants if it were "parallel to [an AG exemption] in all relevant respects." *See* Ex. C. They then backtracked, rejecting the premise that Defendants should receive a parallel exemption, and instead

May 7, 2025
Page 9

proposed an exemption that would cover only the States. The Court should reject the States' proposal for multiple reasons.

### i. Under the States' Proposal, The States Would Never Log Documents Whose Privileged Status Is in Dispute.

*First*, the parties dispute whether communications between States that have sued and States that have not sued are privileged in the first place. The States have the burden to establish that any privilege applies under relevant state law, and there are multiple scenarios in which they cannot do so, considering each state's law implicated by such cross-state communications.[7] *See* Fed. R. Civ. P. 26(b)(5)(A). This analysis requires looking at the law applicable to each participant in that communication. For example, Mississippi "does not broadly construe the common interest privilege." *United Invs. Life Ins. Co. v. Nationwide Life Ins. Co.*, 233 F.R.D. 483, 487 (N.D. Miss. 2006). Under Mississippi law, "the party asserting the privilege must have been, at the time of the communication, a ***co-party to pending litigation*** with the party to whom it bears a relationship of common interest." *Id.* at 487–88 (holding "the common interest privilege cannot apply because there was no pending suit where the [communicating entities] were situated as [] co-part[ies]" (emphasis added)). Thus, if Mississippi was communicating with a State that has never filed suit, its communications would not be privileged. Similarly, to be protected by common interest privilege under Texas law, "Texas requires that the communications be made in the context of a pending action," and "in jurisdictions like Texas, which have a pending action requirement, no commonality of interest exists absent actual litigation." *In re XL Specialty Ins. Co.*, 373 S.W.3d 46, 51–52 (Tex. 2012). Thus, communications with the Texas Attorney General's office before it filed suit would not be privileged. Examples like these show that blanket assertions of common interest privilege across states cannot be sustained.

*Second*, the States' proposal establishes no guardrails in terms of participants or time frame. Plaintiffs' proposed language would permit them to not log communications between themselves and *any* State—including states that have never filed suit and may have no intention of ever doing so. They would also be exempted from logging communications that occurred *years* before any of the participants filed suit. Further, the States propose to exempt communications between each State Attorney General and *any* state agency in that State, regardless of whether the State Attorney General even claims to represent that agency. For example, the Texas Attorney General currently insists that it does not represent any agencies within its State, yet the States' proposal seeks to exempt it from logging any of those communications on the basis of privilege. No privilege would attach to communications with a state agency where the State Attorney General has expressly *refused* to represent the agency. Because the States' proposal is a categorical exemption from logging, Defendants would be in the dark without any knowledge *whatsoever* about these communications. To

---

[7] *See also* The Sedona Conference, Commentary on Privilege Logs, 25 SEDONA CONF. J. 221, 235 (2024) ("Consistent with the Federal Rules, the onus is on the responding party to satisfy the requirements of Rule 26(b)(5) and not on the requesting party to justify why those requirements should be met.").

May 7, 2025
Page 10

the extent the States believe that some State-specific law warrants such a privilege, the communications should be logged and Defendants should be allowed to assess and potentially challenge the privilege.

*Third*, there is no reason to apply a categorical exemption, rather than the burden-reducing format already agreed upon, where the parties disagree that the communications are privileged. There are limited circumstances—for example, attorney-client communications concerning the claims or defenses in litigation after a suit is filed—where courts exempt documents from logging, as the burden of logging outweighs the benefit of enumerating the obvious and apparent bases for privilege. *See* The Sedona Conference, Commentary on Privilege Logs, 25 SEDONA CONF. J. 221, 274 (2024) (the burdens presented by the privilege logging process can be mitigated by excluding from the process "certain categories of documents that require *less or no substantiation* for a recognition of privilege protection" (emphasis added)); *accord* N.C. R. Bus. Ct. R. 10.5(b)(i) ("The parties should discuss specifically (i) whether particular categories of documents … should be omitted from privilege logs."). In those circumstances, there is less of a need to "assess the [privilege] claim" because all sides agree the communications are likely privileged. Fed. R. Civ. P. 26(b)(5)(A).

But the States' sweeping exemption is in no way tailored to those considerations. In contrast, Defendants proposed a narrowly tailored exemption for presumptively privileged communications: under Defendants' proposal, the States would be excused from logging privileged communications "sent or created *after* the date a State filed a complaint in Litigation about Insulin Pricing,"[8] where, as of the date of the communication, the communication was (a) "between or among litigation counsel for State Attorneys General's Offices *who have also filed a complaint* in Litigation about Insulin Pricing" or (b) "between or among a State Attorneys General's Office and any state agencies *that the State Attorneys General's Office represent* in the MDL." Ex. A at § I(D)(1)(d) (emphasis added). Defendants' proposed exemption thus captures the discrete set of communications that all parties would agree should be presumptively protected by a common interest or joint defense privilege between the States—and therefore the parties agree can be exempted from logging.

### ii. The States Should Log Privileged Documents Using the Standard Format Required for All Other Parties in the Privilege Order.

After months of negotiations, during which Plaintiffs demanded that Defendants provide a document-by-document privilege log with individual descriptions of each communication, the States now ask the Court to grant them a one-sided ability to use "categorical logs" for privileged communications that are not exempt from logging. *See* Ex. B at I(C)(2)(ii). This approach is unequal and unnecessary. Plaintiffs first proposed the language in this provision in a draft order circulated on April 3, 2025—after six months of negotiations. When Defendants expressed confusion during the Parties' subsequent meet

---

[8] "Litigation about Insulin Pricing" is a defined term in the Parties' submission, encompassing a range of litigation, not only cases currently in the MDL. *See* Ex. A at n.3.

May 7, 2025
Page 11

and confer call, counsel for the Self-Funded Payor track interjected to explain that the Plaintiff Tracks were not in agreement as to this provision and that it was a request made solely by the State Attorneys General.

The States provide no basis to depart from the standard Privilege Order for one subset of Plaintiffs. The Privilege Order will define the substance of what should be included in a privilege log, the timing for those logs, and how challenges are to be handled. This methodology was negotiated for months by all three Plaintiff tracks and all six Defendants, never with the understanding that one subgroup would try to "opt out" of the process.

Defendants cannot assess privilege claims on a document-by-document level if the States are allowed to simply bucket their communications in a categorical log. In particular, communications between State Attorney General offices from different states (including states that are not plaintiffs in this MDL) will require *closer* scrutiny to determine whether they are privileged at all, given that a number of those entities may may not share a common legal interest. For the Court and Defendants to assess whether those third-party communications are privileged, it is critical that they be logged under the terms of the standard Privilege Order.

If the States are given permission to use a categorical privilege log, then any such provision should be reciprocal—and Defendants request that in fairness they too be given the option of serving a categorical privilege log.

### iii. The Definition of Privileged "Investigations About Insulin Pricing" Should Include Both State and Federal Investigations.

The States narrowly and unreasonably define what subject matter relates to "Investigations about Insulin Pricing" within the Privilege Order, which is a category of communications both sides agree should be exempted from logging. *See* Ex. B at n.3. Where the parties plan to exempt from logging privileged documents that relate to an "Investigation about Insulin Pricing," the States wish to limit that exemption to *state* government investigations (presumably to shield their own state investigations). Defendants contend the exemption should cover party communications about *state and federal* investigations. When Defendants asked the States why they limited their definition to only state investigations, counsel for the States asserted—without any basis—that federal investigations would probably have more to do with "business interests" rather than "legal issues." There is no reason that state investigations would always involve "legal issues," but federal investigations would not. Defendants contend that both types of government investigations should be treated in the same way for purposes of privilege logging.

### V. CONCLUSION

Defendants respectfully request that the Court reject Plaintiffs' Proposed Privilege Order and instead enter Defendants' Proposed Privilege Order.

May 7, 2025
Page 12

Respectfully submitted,

*/s/ Jason R. Scherr*

Jason R. Scherr


cc: Honorable Brian R. Martinotti, U.S.D.J.
All Counsel of Record