# SEEGERWEISS LLP
NEW YORK • NEW JERSEY • PHILADELPHIA

May 7, 2025

**VIA ECF**

Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

      Re:    *In re: Insulin Pricing Litigation*, No. 2:23-md-03080-BRM-RLS
              MDL No. 3080
              **Plaintiffs' Opening Letter Brief Regarding Privilege Log Protocol**

Dear Judge Singh:

      The Three Plaintiff Tracks ("Plaintiffs") proposed privilege protocol is typical of other privilege protocols in MDLs, particularly those that involve large corporate defendants, as here.[1] Plaintiffs' proposed protocol is also consistent with recent authorities on the issue, namely, the Civil Rules Advisory Committee[2], the Committee on Rules and Practice and Procedure[3], and The Sedona Conference Commentary on Privilege Logs[4]. And, Plaintiffs' proposal will advance the litigation, rather than delay it, whereas delay is guaranteed under Defendants' proposal.

      Many of the disputed provisions relate to timing either directly or indirectly. These include: (1) timing for privilege log production by the Producing Party (Section I.A); (2) timing

---

[1] *See, In re Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Prods. Liability Litig.*, MDL 3094, 24-md-3094, R. Doc. 159, CMO 9, (E.D. Pa. June 25, 2024); *In re Abbott Labs. Preterm Infant Nutrition Prods. Liability Litig.*, MDL 3026, 22-cv-00071, R. Doc. 187, CMO 4 (N.D. Ill. Aug. 18, 2022); *In re Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator Prods. Litig.*, MDL 3014, 21-mc-1230, R. Doc. 661, PTO 19 (W.D. Pa. July 21, 2022); *In re JUUL Labs, Inc., Marketing, Sales Practices, and Prods. Liability Litig.*, MDL 2913, 19-md-02913, R. Doc. 322, CMO 4 (N.D. Cal. Dec. 17, 2019); *In re Generic Pharms. Pricing Antitrust Litig.*, MDL 2724, 16-md-2724, R. Doc. 1135, PTO 105, (E.D. Pa. Oct. 24, 2019); *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liability Litig.*, MDL 2846, 18-md-2846, R. Doc. 130, CMO 17 (S.D. Ohio April 3, 2019).

[2] Report to the Standing Committee Advisory Committee on Civil Rules, p. 200-1, *see,* https://www.uscourts.gov/sites/default/files/advisory_committee_on_civil_rules_-_december_2021_0.pdf

[3] Committee on Rules of Practice and Procedure (Jan 4, 2023) p. 209, adopted this language, *see,* https://www.uscourts.gov/sites/default/files/2023-01_standing_committee_meeting_agenda_book_final_0.pdf

[4] The Sedona Conference, *Commentary on Privilege Logs*, 25 Sedona Conf. J. 221 (2024).

for challenges by the Producing Party (Paragraphs I.B.7 and II.A.1); (3) timing for review of challenges/conferral by the Producing Party (Paragraphs II.A.1 and III.B.1); and (4) timing for downgrade production (Paragraph II.A.2). Each of these provisions are discussed in turn below.

In addition, the Parties have different views regarding certain paragraphs in Section II.D. related to Logging Exemptions. Defendants' proposal seeks to include certain language on this issue; Plaintiffs disagree. Attached hereto as Exhibit 1 is Plaintiffs' proposed privilege protocol. Defendants' proposed protocol is attached as Exhibit 2.

The charts below reveal the impact of the parties' timing differences, the full substance of which are in the body of Plaintiffs' brief. The last chart below shows the alternative timetables that would result from each side's proposal. As reflected in the charts, Defendants' proposals introduce inefficiencies and extraordinary delay in the taking (or closing) of depositions and the overall discovery calendar for this litigation.

**Timing of Logs**

| Plaintiffs' Proposal Sec. I.A. | Practical Result | Defendants' Proposal Sec. I.A. | Practical Result |
|---|---|---|---|
| 30-day rolling logs | *Order Signed 5/20<br><br>Log Due 6/19<br><br>Privilege Logs will be reviewed and initial challenges brought promptly so that depositions may be taken. | 90-day rolling logs<br><br>** 120 days from entry of the Order for first privilege log | *Order Signed 5/20<br><br>Log Due 9/17 (120-days)<br><br>[Log Due 8/18 90-days]<br><br>Privilege Logs four (4) months from the entry of this Order will result in further delay to this litigation, as depositions will necessarily wait or have to remain open until privilege logs are received and any issues addressed. |

**Timing Barring Challenges**

| Plaintiffs' Proposal | Practical Result | Defendants' Proposal Sec. II.A.1 | Practical Result |
|---|---|---|---|
| None. | A Receiving Party is not prejudiced by the | 75 calendar days to challenge privilege | A Receiving Party is prejudiced by the pace |

2

|  | pace and order of a Producing Party's document collection, review and production.<br><br>Policy dictates that a Party shall not be foreclosed on how/when they conduct discovery. | entries upon receipt of a privilege log – if none, all challenges are waived. | and order of review by a Producing Party. |
|---|---|---|---|

**Timing for Responses to Challenges**

| Plaintiffs' Proposal Sec. II.A.1 | Practical Result | Defendants' Proposal Sec. II.A.1 | Practical Result |
|---|---|---|---|
| Seven (7) calendar days | Privilege challenges will be resolved expeditiously and permit discovery to proceed with fewer delays. | 30 calendar days | This period will only delay discovery and/or result in additional litigation/ argument surrounding depositions. |

**Timing for Resolved Challenges (Downgrades)**

| Plaintiffs' Proposal Sec. II.A.2 | Practical Result | Defendants' Proposal Sec. II.A.2 | Practical Result |
|---|---|---|---|
| 10 calendar days | Swift production of resolved challenges that result in downgrades will enable the Parties to proceed with depositions and other discovery. | 30 calendar days | Depositions will be delayed or remain open until downgraded materials are produced.<br><br>Further, Defendants' downgrade provision is tied to privilege rulings, which take longer to resolve, but they still ask for 30-day downgrade period even after a court ruling holding that the challenges material is not privileged. See. D's Protocol at Section III.B.7. |

**Cumulative Results from Beginning to End under both proposed Protocols**
The table below illustrates the impact of each side's proposal on overall timing. This hypothetical reveals the delay Defendants' proposal creates.

| Plaintiffs' Proposal Practical Result | Defendants' Proposal Practical Result |
|---|---|
| ** Producing Party Log Due Date 6/19/2025<br><br>7/1/2025 – Challenges Brought<br>7/8/2025 – Responses Received<br>7/15/2025 – Conferral/ Downgrades Agreed<br>7/25/2025 – Downgrades received by Challenging Party<br><br>**Result:** Downgraded documents are received about 60 calendar days from when they were otherwise deemed responsive. | ** Producing Party Log Due Date 9/17/2025<br><br>10/1/2025 – Challenges Brought<br>10/31/2025 – Responses Received<br>11/14/2205 – Conferral/ Downgrades Agreed<br>12/14/2025 – Downgrades Received by Challenging Party<br><br>**Result:** Downgraded documents are received about 200 calendar days from when they were otherwise deemed responsive. |

I.     **Timing-Related Provisions in Dispute**

   1. **Privilege Log Production and Timing, Section I.A.**

Plaintiffs' proposal for a 30-day rolling production of privilege logs promotes efficiencies for the entire discovery period. 30-day rolling logs allow the Receiving Party to review privilege claims more contemporaneously with production. 30-day logs will also result in logs of more manageable size. Plaintiffs' proposal spreads out the workload and enables Court intervention to inform the Parties further evaluation of privilege logs. 30-day rolling logs also will avoid "bottlenecking" of potentially relevant issues germane to all Parties' allegations or defenses that inevitably feed into discovery, such as depositions. It is for reasons such as these that courts routinely recognize that. In sum, Plaintiffs' 30-day rolling log proposal aligns with proportionality and cooperation principles discussed in Rule 26 and is more appropriate for that and other reasons discussed herein.[5]

Producing Parties should also provide a log with each production tranche and/or on a rolling basis. This allows the Requesting Party to timely raise issues about withheld documents. It also allows for the review of smaller subsets of documents and smaller in camera reviews (if necessary), allowing for early clarification of privilege issues. Such a process is fairer to the requesting party, more efficient, and less costly. Additionally, Rule 26 contemplates the supplementation of privilege logs throughout discovery." *Brown v. Barnes & Noble, Inc.,* 474 F. Supp. 3d 637, 647 (S.D.N.Y. 2019), recons. denied, No. 1:16-cv-07333 (RA) (KHP), 2020 WL

---

[5] The Parties have separately agreed that redacted documents need not be logged, provided the redaction specifies the basis for the privilege in the document metadata. This further supports Plaintiffs' proposal as there will be a substantially lighter burden ahead for any producing party relative to privilege logging.

5037573 (S.D.N.Y. Aug. 26, 2020), and aff'd, No. 1:16-cv-07333 (MKV) (KHP), 2020 WL 5037573 (S.D.N.Y. Aug. 26, 2020).

### 2. Timing for Challenges

Plaintiffs' proposed protocol rightfully excludes timing limitations to address deficiencies in a log and over the challenge period. Defendants' proposal inserts time limitations with regard to a Receiving Party's ability to challenge a Producing Party's privilege log in two places: Paragraphs I.B.7 and II.A.1. Plaintiffs do not have a counterpart to Paragraph I.B.7, as Plaintiffs' position is that the entirety of the provision is unnecessary given that all Parties have agreed to a narrative log format for fully withheld documents. Next, Paragraph II.A.1 imposes a prejudicial time limitation on the Receiving Party that will hinder that Party's ability to strategically approach privilege challenges as well as prevent the re-review of privilege claims as discovery proceeds. The timing issues for each Paragraph are discussed below.

#### a. I.B.7 Privilege Log Content

Plaintiffs do not have a counterpart to this provision, as it is unnecessary. The Parties agreed that privilege log content must include certain metadata fields as well as a narrative description. Yet, Defendants also propose this provision (with timing limits and quantity limits), which is inconsistent with the purpose of a narrative privilege log. The inclusion of this provision is an additional impediment on the Receiving Party's ability to efficiently challenge and resolve privilege challenges. For example, under the agreed provisions of the protocol the Receiving Party must challenge materials on a document-by-document basis. Such challenges will include reference to lacking metadata where applicable. Defendants' proposed provision I.B.7. requires the Receiving Party to first review a log for facial defects, raise those (but only 100 at a time) with the Producing Party, then, once the defect is cured (after the 45-day response period had passed), the Receiving Party can move forward with a specific challenge to the entry. This protracted process is inefficient and likely prevents an actual challenge under II.A.1 of Defendants' protocol (which is opposed by Plaintiffs) as discussed *infra*. The Defendants' Section I.B.7 should be stricken from any final court-entered privilege protocol.

#### b. II.A.1 Privilege Challenges. As Concerns Documents

Plaintiffs' proposed privilege protocol does not include time limitations as to when a challenge may be raised by a Receiving Party. This is because time limitations for challenges result in prejudice to the Receiving Party and unilaterally favors the Producing Party. In instances where the Receiving Party must challenge a log entry within a date certain of receipt of the privilege log, there is a high likelihood that the Receiving Party does not yet know the requisite surrounding facts as to the importance of the issues presented on the privilege log. Indeed, it may be that the importance of a person or issue included on the privilege log is not realized until after discovery and depositions are underway. Because the Producing Party generally controls the order for production of documents and privilege logs based on the order of review of custodial and non-custodial sources, the Receiving Party is at the whim of the Producing Party's progress and decision making. The practical reality is that if timing limitations for challenges are imposed, it would promote gamesmanship and invite procedural exploitation, undermining the spirit of fair discovery.

For these reasons, Plaintiffs' protocol does not include a time limitation for a Producing Party to challenge privilege claims following the service of a privilege log. Indeed, (as indicated by Defendants' privilege protocol), the first privilege log will include more entries than subsequent privilege logs. Ordering a time limit as to when challenges may be brought will only encourage overbroad privilege claims so that the Receiving Party is unable to conduct meaningful review of the privilege entries, resulting in prejudice to the Receiving Party's ability to fairly engage in the discovery process. The potential for prejudice on the Receiving Party outweighs any balance the Producing Party may obtain by knowing when a privilege claim may or may not be challenged.

### 3.   Timing for Review of Challenges

Plaintiffs propose a seven (7) day window in which a Producing Party shall respond to a Receiving Party's written challenge to individual privilege designations. *See* Plaintiffs' Proposal at Section II.A.1. This short timeframe encourages the narrow application of privilege (as is the law)[6] and will prevent delays that will otherwise result if the Defendants' proposed thirty (30) calendar day response time is adopted. Because privilege should be narrowly applied, the burden on either the Producing Party or the Receiving Party is balanced by the need for discovery, including depositions, in this Litigation.

### 4.   Timing for Downgrades

Even with the best intentions of all involved, the privilege challenge process can take substantial time to resolve. Plaintiffs' position is that once a document is identified as improperly marked as privileged (either by the Producing Party or the Court), that document should be produced within 10 days of that determination. A document marked as privileged has already been collected and processed by the Producing Party, so production of that electronic document can occur almost immediately. There is no justification for the 30-day time period the Defendants' protocol proposes.

### 5.   The Parties Should Be Required to Provide Timely Support for Clawback Notices

The parties disagree over how long a Producing Party should have to provide the Requesting Party with the information that would be provided in a privilege log entry after notifying the Requesting Party of the production of Discovery Material that should not have been produced because such information is protected by an applicable privilege. A single privilege log entry is not enormous, and a Producing Party making such a notification should have a solid understanding of the applicable privilege asserts. Accordingly, seven days is an appropriate deadline for such information to be provided. The Defendants' proposal of fourteen days is unreasonable and unjustified.

---

[6] *In re Grand Jury Investigation (Sun Co.),* 599 F.2d 1224, 1235 (3d Cir.1979); *In re Grand Jury Investigation of Ocean Transportation,* 604 F.2d 672, 675 (D.C. Cir.1979); *Radiant Burners, Inc. v. American Gas Association,* 320 F.2d 314, 323 (7th Cir.1963); *see In re: Samsung Customer Data Security Breach Litig.*, 2024 WL 3861330 at *6 (D.N.J. August 19, 2024).

## II. Exemption Provisions [non-AG] in Dispute

The parties agreed to logging exemptions for redacted material, privileged material regarding document preservation, and post February 2, 2017[7] privileged materials regarding "Litigation about Insulin Pricing" and "Investigations about Insulin Pricing." The parties agree that state government investigations should be included in "Investigations about Insulin Pricing." The parties disagree whether materials regarding investigations brought by non-state government entities should be exempt from logging. Defendants seek a broader exemption and Plaintiffs disagree. Defendants also seek to add a common interest / joint defense exemption for themselves. Plaintiffs' proposal is most appropriate because it is clear about what material is exempted and Defendants' proposals are unsupported by established case law.

### a. The Investigation Exemption Should Not Be Expanded Beyond State Government Investigations

The parties' agreement to exempt privileged materials regarding "Litigation about Insulin Pricing" and "Investigations about Insulin Pricing" from logging is an oft seen term that is logical to include in any privilege protocol. It is appropriate because it is defined, *i.e.*, the scope of exemption is known. To illustrate: because this litigation involves State Attorneys General and their investigations, Plaintiffs understand what materials Defendants are not logging.

In contrast, Defendants' undefined, more expansive definition of "Investigations about Insulin Pricing" will exempt Defendants (and perhaps non-parties) from logging responsive materials that are not about this litigation or State Attorneys General investigations. There have been *numerous* federal investigations of Defendants, and while some investigations directly implicate the price of insulin, for other investigations the price of insulin is more tangentially implicated. Defendants' request for an undefined exemption untethered to this litigation or State Attorneys General investigations is not consistent with Third Circuit case law. *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 140 n.22 (3d Cir. 2009).

But even if Defendants did limit the investigations they seek to include in the exemption to Congressional and Federal Trade Commission investigations, Defendants' proposal would still be improper. This is because Defendants' efforts related to such federal investigations are not aimed at aiding in possible future litigation. Congressional investigations, such as the Congressional investigations regarding drug pricing, are auxiliary to Congress's *legislative* functions. *See McGrain v. Daugherty*, 273 U.S. 135, 174 (1927) (holding that Congressional investigations are permitted under the Constitution because "[w]e are of opinion that the power of inquiry-with process to enforce it-is an essential and appropriate auxiliary to the legislative function."). The focus of the Federal Trade Commission's 2022 study of pharmacy benefit managers was likewise informational. As stated in the press release for the study, it was initiated pursuant to Section 6(b) of the Federal Trade Commission Act, "which authorizes the Commission to conduct studies without a specific law enforcement purpose." Fed. Trade Comm'n, FTC Launches Inquiry Into Prescription Drug Middlemen Industry (June 7, 2022), *see,*

---

[7] The date *In re Insulin Pricing Litigation*, D.N.J Case No. 17-669 was filed.

https://www.ftc.gov/news-events/news/press-releases/2022/06/ftc-launches-inquiry-prescription-drug-middlemen-industry.

### b. Defendants' Common Interest/Joint Defense Paragraph Is Unsupportable

Defendants' proposed addition of a common interest / joint defense exception has three defects.

First, it is problematic because the subject matter of the materials exempt from logging is not tied to Litigation about Insulin Pricing. Defendants are seeking to exempt *any* common interest / joint defense material, regardless of its topic, so long as it is after a defendant was first named in Litigation about Insulin Pricing. Allowing Defendants an exemption with an unbound subject matter is an improper expansion of the principle recognized by the Third Circuit in *Grider*. The Sedona Conference, *Commentary on Privilege Logs*, 25 Sedona Conf. J. at 274-75 & n.78 ("Communications between a party and its outside counsel after the date the litigation commenced *about issues related to the litigation* can reasonably be construed as communications between a client and attorney in connection with the request for or provision of legal advice related to the pending litigation."). (emphasis added) (citing, among other cases, *Grider* 580 F.3d at 140 n.22).

Second, Defendants' proposal includes an additional undefined permission by exempting logging of "materials sent or created after the date a Defendant was first names in Litigation about Insulin Pricing." This is problematic because it is an untestable benchmark event. It does not define how Defendants should address issues such as different treatment of members of each corporate family. It is also problematic because it does not account for the fact that the PBM defendants were dropped from the class action (*In re Insulin Pricing Litigation*, D.N.J Case No. 17-669) after the class action was filed.

Third, the Defendants' proposal is problematic because it is not consistent with Third Circuit case law. In this Circuit, the common interest doctrine requires the exchanges be between attorneys. *In re Teleglobe Commc'ns Corp.,* 493 F.3d 345, 364-65 (3d Cir. 2007). None of Defendants' custodians being discussed by the parties are attorneys.

### III.    Rebate Aggregators Ascent and Zinc Must Provide Separate Privilege Logs

Since 2021, each PBM Defendant has relied on a rebate aggregator—Ascent (ESI), Zinc (CVS), Emisar (Optum) (collectively, "Rebate Aggregators")—to manage its rebate negotiations and contracting services with drug manufacturers and TPP clients. To assess privilege claims by these entities, Plaintiffs requested that Ascent, Zinc, and Emisar confirm they would each be providing a separate privilege log from their PBM affiliates. In response, Emisar has committed to providing a separate log from OptumRx.[8] Ascent and Zinc, on the other hand, have refused to

---

[8] *See* Exhibit 3, Martin-Patterson Email (April 17, 2025).

provide separate logs from their PBM affiliate entities, arguing that "under the rules, it is the information that has to be logged, not which corporate entity holds it."[9]

Ascent and Zinc misconstrue the law. Rule 26(b)(5)(A) is clear that a party withholding materials on privilege or work product grounds must "describe the nature" of the withheld materials "in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A); *see also Reilly v. Home Depot U.S.A., Inc.*, 670 F. Supp. 3d 126, 138 (D.N.J. 2023) ("Rule 26(b) thus makes clear that '[a] party must notify other parties if it is withholding materials otherwise subject to disclosure under the rule or pursuant to a discovery request because it is asserting a claim of privilege or work product protection.'") (quoting Fed. R. Civ. P. 26(b) advisory committee's note to 1993 amendment). Plaintiffs cannot assess privilege claims by these rebate aggregator entities unless Plaintiffs know that Ascent or Zinc is the one asserting the privilege—as opposed to one or more of their PBM affiliated entities. As a result, they should each be required to provide their own privilege logs.

**IV.     Conclusion**

Plaintiffs respectfully request the Court adopt their proposed privilege log protocol.

Respectfully submitted,

*/s/ Joanne Cicala*
Joanne Cicala

*Liaison Counsel for*
*State Attorney General Track*

*/s/ Matthew Gately*
Matthew Gately

*Liaison Counsel for*
*Class Action Track*

*/s/ David R. Buchanan*
David R. Buchanan

*Liaison Counsel for*
*Self-Funded Payer Track*

Enclosures

cc:   Hon. Brian R. Martinotti, U.S.D.J. (via ECF)
      All Counsel of Record (via ECF)

---

[9] *See* Exhibit 3, Ackerman Email (April 14, 2025) (indicating that Express Scripts Defendants (including Ascent) intend to provide a single privilege log); Suellentrop Email (April 15, 2025) (indicating that CVS Defendants (including Zinc) intend to provide a single privilege log).