

May 7, 2025

Hon. Rukhsanah L. Singh
U.S. Magistrate Judge
U.S. District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Room 2020
Trenton, New Jersey 08608

    **Re:** *In re: Insulin Pricing Litigation*, 2:23-md-03080 (D.N.J.)
          **State AG Privilege Log Protocol Briefing**

Dear Judge Singh:

    The State Attorney General (AG) Track Plaintiffs write separately in support of certain privilege log exemptions for their track. *See* Appendix (App.) Rows 2 & 5.

## I.  Introduction

    The AG Plaintiffs are unique among the parties in MDL No. 3080. Their claims are filed pursuant to the AGs' authority as chief law enforcement officers of their respective states. Collectively, the AG Plaintiffs represent the interests of *millions* of diabetic consumers who have been and continue to be harmed by Defendants' unlawful conduct.

    Prior to initiating any litigation, the AG Plaintiffs, along with other attorney general offices (AGO) can, and do, coordinate with each other to conduct confidential multistate investigations. State laws allow, and even require, AGOs and other law enforcement agencies to work together and share investigatory materials. Recognizing that, the parties here already have agreed that intra-AGO documents and AGO-client exchanges regarding insulin pricing investigations and litigation after February 2, 2017[1] do not have to be logged.

---

[1] The filing date of *In re Insulin Pricing Litig.*, D.N.J Case No. 17-669.

May 7, 2025
Page 2

The parties do not agree whether AGO-to-AGO exchanges and AGO exchanges with non-client local, state, and federal agencies should be logged.[2]

The State AGs respectfully submit that document-by-document logging of AGO investigation and litigation materials risks undercutting the full and frank exchange of ideas inherent in building an investigation and litigation strategy. Courts recognize that the burden of document-by-document logging of litigation and pre-suit investigation materials outweighs the speculative possibility an improperly withheld document might be uncovered. Indeed, the AG Plaintiffs' proposal tracks similar exemptions in recent litigation involving multiple AGOs, including *United States v. Google LLC* (D.D.C.), *In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation* (N.D. Cal.), and *In re Generic Pharmaceuticals Antitrust Pricing Litigation* (E.D. Pa.).[3]

Defendants' justification for requiring document-by-document logging of AGO communications is based on a misunderstanding of the law. Defendants support their position by speculating that the AG Plaintiffs' pre-suit investigation materials and exchanges with non-litigating AGOs and non-client agencies might be discoverable. Defendants are mistaken. Investigation and litigation related exchanges by and between AGOs, and with non-client agencies, are protected by the attorney work product doctrine, attorney client privilege, and the common interest doctrine.

For these reasons as set forth more fully below, the AG Plaintiffs respectfully request the Court adopt their logging exemption proposal.

## II.   Relevant Legal Standards

Federal Rule of Civil Procedure 26(b)(5)(A) requires a party withholding privileged information to "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

---

[2] Although the parties agreed to the language in Appendix Row 2, the parties appear to disagree about what the language means.

[3] Ex. A at 13-14 (privilege log protocol in *Google*, D.D.C. 1:20-cv-03010); Ex. B at 3-4 (privilege log protocol in *Social Media Addiction*, N.D. Cal. 4:22-md-03047), Ex. C at 36 (privilege log protocol in *Generics*, E.D. Pa. 16-MD-2724).

May 7, 2025
Page 3

Courts, however, recognize exceptions to logging for privileged material that is clearly protected from discovery. *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 139 n.22 (3d Cir. 2009) ("We underscore that a privilege log may not be required for communications with counsel that take place after the filing of a law suit." [sic]); *Aetna Inc. v. Mednax, Inc.*, 2019 WL 6250850, at *7 (E.D. Pa. Nov. 22, 2019) ("I will not require that a privilege log be prepared for every communication and every shred of data gathered by [plaintiff's] attorneys, experts, and consultants in anticipation of litigation with [defendant].").

The rationale for such exemptions is that logging risks having a "chilling effect on the attorney-client relationship." *Grider*, 580 F.3d at 139, n.22. There is also a concern that document-by-document logging of litigation-related documents risks revealing litigation strategy and techniques. *S.E.C. v. Thrasher*, 1996 WL 125661, at *1 (S.D.N.Y. Mar. 20, 1996) (discussing categorical logs). Additionally, "[t]he burdens of such a [privilege logging] process, in terms of time and money spent in a laborious privilege review, would far exceed any likely benefit, in terms of relevant documents that for some reason escape privilege or work product protection." *Aetna*, 2019 WL 6250850, at *7.

For similar reasons, courts also exempt pre-litigation communications. *See, e.g.*, *Mon Cheri Bridals, LLC v. Cloudflare, Inc.*, 2021 WL 1222492, at *3 (N.D. Cal. Apr. 1, 2021) ("[T]he Court declines to order Plaintiffs to log their communications with outside counsel that were retained to represent them in this case, regardless of whether the communications were before or after the date the complaint was filed."); *see also Stein v. Collins*, 2025 WL 1248916, at *6 (D. Mass. Apr. 30, 2025) (similar); *Gaby's Bags, LLC v. Mercari, Inc.*, 2020 U.S. Dist. LEXIS 215041, at *9 (N.D. Cal. Nov. 17, 2020) (similar).

Further, even where logging *is* required to invoke privilege, a *document-by-document* log is not always required. *See* ECF 186, Order Regarding Dispute Over ESI Protocol, at 13 n.4 (directing the parties in MDL No. 3080 to consider categorical logs, or other grouping as "the format of appropriate privilege logs") (citing *In re Actos Antitrust Litig.*, 340 F.R.D. 549, 553 (S.D.N.Y. 2022)) (emphasis added). Detailed logging "may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories." FED. R. CIV. P. 26, Advisory Committee Note to 1980 amendment; *see Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 297 F.R.D. 55, 61 (S.D.N.Y. 2013) (accepting categorical log); *Schmidt v. Levi Strauss & Co.*, 2007 WL 628660, at *2 (N.D. Cal. Feb. 28, 2007) (same); *Thrasher*, 1996 WL 125661, at *2 (describing categorical log requirements).

May 7, 2025
Page 4

### III. Argument

#### A. AGO-to-AGO Communications Should Be Exempt From Logging

The Court should adopt the AG Plaintiffs' proposal exempting materials shared between AGOs regarding insulin pricing investigations and litigation. These materials are treated by other courts as presumptively protected by the work product doctrine and attorney client privilege. *See* Ex. A at 13-14, B at 3-4, & C at 36 (protocols exempting AGO-to-AGO exchanges from logging). Requiring a document-by-document log here risks disclosing privileged information and will impose an undue burden on the AG Plaintiffs. Further, adopting a rule requiring a document-by-document log for AGO investigations risks chilling future AGO multistate cooperation.

##### 1. AGO-to-AGO Material Is Work Product

AG materials related to insulin pricing *litigation* are core work product. *See Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) ("We believe that the selection and compilation of documents by counsel in this case in preparation for pretrial discovery falls within the highly-protected [sic] category of opinion work product."). Material "prepared in anticipation of litigation or trial by a party or its representative . . . will generally be afforded work-product protection and is not discoverable." *Williams v. Netflix, Inc.*, 2024 WL 4854575, at *3 (D. Del. Nov. 21, 2024) (quotation omitted).[4]

AG materials regarding insulin *investigations* are also core work product. *See, e.g.*, *In re Generic Pharms. Pricing Antitrust Litig.*, 2024 WL 3843589, at *2 (E.D. Pa. Feb. 6, 2024) ("State Plaintiffs have shown that the primary motivating purpose behind the creation of the document was to aid in possible future litigation. Therefore, State Plaintiffs have shown that the material is attorney work product.") (cleaned up); *N.H. Right to Life v. Dir., N.H. Charitable Trs. Unit*, 169 N.H. 95, 110 (2016) (emails between two AGOs regarding a potential amicus brief are attorney work product and protected from disclosure even where one of the AGOs did not ultimately sign on to brief). The work product doctrine protects documents created by government attorneys during an investigation, even if no litigation ensues. *A Michaels Piano, Inc. v. Fed. Trade Comm.*, 18 F.3d 138, 146 (2d Cir. 1994); *Kent Corp. v. N.L.R.B.*, 530 F.2d 612, 623-24 (5th Cir. 1976) (holding that government

---

[4] With respect to work product, federal law governs. FED. R. CIV. P. 26(b)(3)(A); *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661-62 (3d Cir. 2003).

notes and memoranda are protected work product, even at the earliest stages of an investigation, because "written evaluations of the evidence necessarily were founded on the assumption that any given charge *might* become enmeshed in litigation") (emphasis in original).

The fact that AG litigation and investigation materials were exchanged with other AGOs does not in any way waive work product protection. In the Third Circuit, "[d]isclosure of work-product materials to a third party does not necessarily waive protection. Because the work-product doctrine serves to protect 'the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation,' the focus of the waiver inquiry is on whether disclosure was to an adversary." *Williams*, 2024 WL 4854575, at *3 (quotation omitted). "'[I]t is only in cases in which the material is disclosed in a manner inconsistent with keeping it from an adversary that the work-product doctrine is waived.'" *Id.* (quoting *In re Chevron Corp.*, 633 F.3d 153, 165 (3d Cir. 2011)); *accord Goldenberg v. Indel, Inc.,* 2012 WL 12906333, at *5 (D.N.J. May 31, 2012) (similar); *see also In re Generic Pharms. Pricing Antitrust Litig.*, 2024 WL 3843589, at *2 (AGO-to-AGO investigatory materials protected by work product).

### 2. AGO-to-AGO Material Is Privileged

AGO materials regarding insulin pricing litigation and investigations are also *privileged*.[5] The attorney-client privilege protects communications among attorneys in public law agencies. Rest. (3d) of Law Governing Lawyers § 74 & comment b (2000); *In re the County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007) ("[T]he attorney-client privilege protects most confidential communications between government counsel and their clients that are made for the purpose of obtaining or providing legal assistance"); *Ross v. Memphis*, 423 F.3d 596, 602 (6th Cir. 2005) (application of privilege promotes "honest and complete" communications between public officials and counsel) (citations omitted). The attorney-client privilege protects direct communications between lawyers and clients, as well as attorney notes, memoranda, and other documents reflecting advice. *TransWeb, LLC v. 3M Innovative Props. Co.*,

---

[5] "[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." FED. R. EVID. 501. State law supplies the rule of decision for actions removed pursuant to 28 U.S.C. § 1442. *Baird v. Fed. Home Loan Mortg. Corp.*, 2016 WL 6583732, at *2 (W.D. Va. Nov. 4, 2016) (stating that with respect to interpreting the substance and scope of a plaintiff's claims, "[a] federal court's role under § 1442 is similar to that of a federal court sitting in diversity.") (citation omitted), *aff'd*, 706 F. App'x 123 (4th Cir. 2017).

2012 WL 2878076, at *11 (D.N.J. Apr. 12, 2012), *adopted & modified*, 2012 WL 2878075 (D.N.J. July 13, 2012); *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 481 (E.D. Pa. 2005) ("There is no bar to extending attorney-client privilege to inter-attorney communications.").[6]

The fact that litigation and investigation materials are exchanged between AGOs does not waive privilege. "Although voluntary disclosure of confidential communications to a third party ordinarily destroys a claim of privilege," there is no waiver if the disclosure is confidential and to a person who "has their own interest to advance in the matter that aligns in 'some way' with the litigant." *Williams*, 2024 WL 4854575, at *2 (discussing CAL. EVID. CODE §§ 912, 952); *see also, e.g., State v. Sucharew*, 66 P.3d 59, 65 (Ariz. Ct. App. 2003) (stating that the presence of a third party does not undercut attorney client privilege "where the third party's presence does not indicate a lack of intent to keep the communication confidential"); *see also* Ex. A at 13-14, B at 3-4, & C at 36 (protocols exempting AGO-to-AGO exchanges from logging).

When AGOs engage in multistate investigations and litigations they do so with an agreement their exchanges will remain confidential and non-public, which is often required by state laws that require AGOs keep investigatory material confidential and allowing disclosure only for law enforcement purposes. *See infra* Section III.A.5. Privilege therefore is not waived. *See In re Generic Pharms. Pricing Antitrust Litig.*, 2024 WL 3843589, at *1 (recognizing that communications between AGOs are privileged if "they contain confidential communications to secure legal advice or legal services").

---

[6] AG Plaintiffs do not concede that litigation and investigation materials are relevant or responsive to the State AG Plaintiff Fact Sheet. Additionally, the AG Plaintiffs reserve the right to assert any and all applicable privileges and protections beyond the attorney client privilege, the work product doctrine, and the common interest doctrine, including without limitation the deliberative process privilege. *Redland Soccer Club, Inc. v. Dep't of the Army of the U.S.,* 55 F.3d 827, 853-54 (3d Cir. 1995); *U.S. Equal Employment Opportunity Comm'n v. Chipotle Mexican Grill, Inc.,* 2019 WL 3811890, at *3 (N.D. Cal. Aug. 1, 2019) (protecting investigative files from discovery based on the deliberative process privilege).

May 7, 2025
Page 7

### 3. AGO-to-AGO Material Is Also Subject to the Common Interest Doctrine

The common interest doctrine is ubiquitous—it generally protects attorney-client communications and work product shared between two or more entities with a common legal interest who "agree to exchange information concerning the matter." Rest. (3d) of Law Governing Lawyers § 76(1) (Am. L. Inst. 2000); *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 364-66 (3d Cir. 2007) (recognizing common interest doctrine).[7] The common interest doctrine typically applies even outside of litigation. *Teleglobe,* 493 F.3d at 365-66 (common interest can apply to "a litigated or nonlitigated matter" and extends to a "non-party to any anticipated or pending litigation") (internal citation omitted); *TD Bank, N.A. v. Hill*, 2014 WL 12617548 (D.N.J. Aug. 20, 2024) ("Parties can have a common legal interest outside of the litigation context.") (citing *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1390-91 (Fed. Cir. 1996)); *Cherokee Nation Businesses, LLC v. Arkansas*, 2025 WL 890989, *2 (E.D. Ark. Mar. 21, 2025) (doctrine applied to policy efforts even though privilege holders were not litigants or "facing a claim for damages arising from the same event"); *People ex rel. Madigan v. Illinois High School Association*, 2014 WL 517969, *4 (N.D. Ill. Feb. 2014) (privileged communications between Office of the Illinois Attorney General and counsel for private consumers are protected by common interest doctrine and exempt from logging if related to "litigation tactics, legal theories, and settlement strategies").

Here, the AGOs share a common legal interest in working together to investigate and prosecute compliance with state laws to protect consumers from unfair, fraudulent, unlawful, and deceptive insulin pricing practices. *See MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*, 2023 WL 11986917, at *6-7 (D.N.J. Nov. 14, 2023) (applying common interest doctrine in an insulin action to communications between entities with "similar legal interests"); *United States ex rel. Travis v. Gilead Scis., Inc.,* 2024 WL 3843590, at *4 (E.D. Pa. May 21, 2024)

---

[7] *Accord* LA C.E. Art. 506(B)(3) (Louisiana); UTAH R. EVID § 504(b)(2)(a) (Utah); *Groth v. Pence*, 67 N.E.3d 1104, 1119 (Ind. Ct. App. 2017) (Indiana); *Energy Policy Advocates v. Ellison*, 980 N.W. 2d 146, 153 (Minn. 2022) (Minnesota); *Am. Zurich Ins. Co. v. Montana Thirteenth Jud. Dist. Ct.*, 280 P.3d 240, 245 (Mont. 2012) (Montana); *Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc*., 870 N.E.2d 1105, 1110-12 (Mass. 2007) (Massachusetts); *OXY Resources Cal. LLC v. Superior Court,* 115 Cal. App. 4th 874, 889 (Cal. Ct. App. 2004) (California); *Selby v. O'Dea*, 90 N.E.3d 1144, 1155-56 (Ill. App. Ct. 2017) (Illinois).

(holding parties shared a common legal interest where interests did not materially diverge).

### 4. *Grider* and Similar Authority Support the AG Plaintiffs' Exemption

Under the Third Circuit's decision in *Grider*, and similar authority, the AG Plaintiffs' privileged material exchanged with all AGOs—including non-litigating AGOs—regarding insulin investigations and litigation should be exempt from logging.

As discussed, the Third Circuit stated in *Grider*: "[A] privilege log may not be required for communications with counsel that take place after the filing of a law suit. [sic]" 580 F.3d at 139 n.22; *see also Stein*, 2025 WL 1248916, at *6 (similar).

The rationale for exempting post-complaint privileged material from logging—avoiding chilling privileged communications, avoiding disclosure of investigative techniques, and avoiding undue burden—applies with equal force to pre-complaint investigations. *See Aetna*, 2019 WL 6250850, at *7. Indeed, "it is unfair to require the logging of pre-complaint privileged communications and attorney work product but to not require the logging of those made post-complaint because there will generally be much more work product and many more privileged communications for a plaintiff than a defendant prior to a complaint being filed." *Vasudevan Software, Inc. v. Int'l Bus. Machs. Corp.,* 2010 WL 3629830, at *5 (N.D. Cal. Sept. 14, 2010) (agreeing with plaintiff's position that pre-complaint investigations should not be logged).

Moreover, any benefit Defendants claim might exist from logging is greatly outweighed by the burdens of logging and the risk of disclosing investigative or litigation strategy. *See Aetna*, 2019 WL 6250850, at *7 (concluding investigation need not be logged); *Vasudevan Software,* 2010 WL 3629830, at *5 (similar). Requiring the AG Plaintiffs to log potentially years of privileged and work product materials will not result in any meaningful benefit to this litigation.[8] That is because

---

[8] Defendants first disclosed an AGO insulin pricing investigation in 2017 and continue to this day to disclose ongoing investigations by non-litigating AGOs. CVS Health Corp., Quarterly Report for Period Ending June 30, 2017 (Form 10-Q) at 20 (Aug. 8, 2017), https://tinyurl.com/ystptksk; Eli Lilly & Co., 2018 Annual Report (Form 10-K) at 26 (Feb. 20, 2018), https://investor.lilly.com/static-files/bb19462a-6faa-4fdc-a433-ea5efa3bad8c; Eli Lilly & Co., 2025 Annual Report (Form 10-K) at

such materials are tangential, at best, to the issues underlying the litigation. *See Stein*, 2025 WL 1248916, at *6 (stating that attorneys are not "required to undertake the unduly burdensome and likely fruitless task of preparing a privilege log listing and describing" the attorneys' investigation related to the litigation).

### 5.  Additional Policy Reasons Support the AG Plaintiffs' Exemption

As law enforcement agencies, AGOs conduct investigations to determine whether state laws have been violated and pursue litigation to recover damages and to deter and penalize unlawful conduct. *See In re Remeron End-Payor Antitrust Litigation*, 2005 WL 2230314, at *11 (D.N.J. Sept. 13, 2005) ("'States, acting through their attorneys general, have frequently been held to be the 'best representatives of the consumers residing within their jurisdictions.'"). AGOs routinely coordinate with other law enforcement agencies within their states as well as those in other states and the federal government. *See, e.g., id.* at *3-4 (discussing investigation conducted by "multi-state working group" of state attorneys general and coordinated settlement discussions including the Federal Trade Commission).

State laws allow, and even require, AGOs and other law enforcement agencies to work together and share investigatory materials. *See, e.g.*, MISS. CODE ANN. § 25-61-12(2)(b) (recognizing the "free flow of information for the purpose of achieving a coordinated and effective detection and investigation of unlawful activity" among "any and all public bodies"); CAL. GOV. CODE §§ 11180.5, 11181(g) (permitting disclosure of investigatory material to other law enforcement entities so long as those entities agree to "maintain the confidentiality of the documents or information"); UTAH CODE ANN. § 13-11-7(1)(b) (Utah Consumer Protection Division *shall* "cooperate with state and local officials, officials of other states, and officials of the federal government in the administration of comparable" consumer protection laws); ARK. CODE ANN § 4-88-105(d)(2) (Ark. AGO shall "assist, advise, and cooperate with federal, state, and local agencies and officials to protect and promote the interests of the consumer public"); KAN. STAT. ANN. § 50-628(2) (same); KY. REV. STAT. ANN § 367.150(1)-(2) (same); OKLA. STAT. ANN. tit. 15 § 762 (Ok. AGO may "[c]oordinate consumer protection activities within state government and maintain a liaison with federal and local governments concerning the interests of consumers and businessmen"); MONT. CODE ANN. § 30-14-114 (Mont. AGO may share

---

103 (Feb. 19, 2025), https://investor.lilly.com/static-files/84711071-9e5a-47e1-bc74-d0753a2d93a8. The AG Plaintiffs do not admit the accuracy of these descriptions.

investigatory material to "the extent necessary for law enforcement purposes in the public interest"); *see also* Working Together to Protect Consumers, a Report to Congress from the Fed. Trade Comm'n (Apr. 10, 2024) at 11 & n.38, https://www.ftc.gov/reports/collaboration-act-report-congress ("During the course of law enforcement investigations, the FTC and State Attorneys General may share investigative information and materials using procedures designed to protect the confidentiality of investigations and the security of investigative materials.").

Multistate actions also lead to more impactful results by bringing about multi-jurisdictional industry oversight and corporate commitments to prevent future violations of the law. *See, e.g., In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 406-407 (D.D.C. Feb. 1, 2002) (injunctive relief prohibiting settling defendant from engaging in unlawful conduct to be enforced by more than 30 states through a sub-committee of AGOs).

Multistate actions and coordination among AGOs are essential for states to pool resources in addressing critical public-interest issues that affect them all. *See In re Dep't of Investigation of City of New York*, 856 F.2d 481, 485 (2d Cir. 1988) ("[W]here more than one group is engaged in the investigation, coordination of effort and sharing of information is also routine. Conducting entirely separate investigations, with redundant efforts and expenditures, would strain limited investigatory resources and would often result in no single investigation having access to all of the available information."). AGOs must, therefore, be able to freely communicate and exchange information without fear of waiving privilege or work product protections or of revealing investigatory strategies to their targets. *See, e.g., Colibri Heart Valve LLC v. Medtronic CoreValve LLC*, 2021 WL 6882375, at *3 (C.D. Cal. Dec. 6, 2021) ("[A] rule requiring creation of an ongoing log of all post-complaint privileged communications would have a chilling effect on the attorney-client relationship.") (citation omitted); *see also* Ex. A at 13-14, B at 3-4, & C at 36 (protocols exempting AGO-to-AGO exchanges from logging).

### 6. Defendants' Proposed AGO-to-AGO Exemption Is Too Narrow and Should Be Rejected

Defendants support their proposed limited exemption by arguing that AG Plaintiffs' exchanges with non-litigating AGOs and their pre-suit exchanges with each other may not be protected by the common interest doctrine. Defendants' argument has three flaws.

May 7, 2025
Page 11

*First*, for the reasons discussed in Sections III.A.1-2, *supra*, AGO-to-AGO exchanges do not need to rely on the common interest doctrine to be protected from discovery. *Second*, for the reasons discussed in Section III.A.3, *supra*, Defendants' contention that the common interest doctrine may not apply to AGO-to-AGO exchanges is incorrect. *Third*, for the reasons discussed in Sections III.A.4-5, *supra*, requiring the AG Plaintiffs to log their litigation and investigation related communications with other AGOs imposes an undue burden on the AG Plaintiffs.

### B. AG Plaintiffs' Communications with Non-Client Government Entities Should Also Be Exempt from Logging

Materials regarding insulin investigations and litigation shared between AG Plaintiffs and non-client government entities is immune from discovery for similar reasons that AGO-to-AGO exchanges are immune from discovery. Thus, for similar reasons, the AG Plaintiffs' exchanges with non-client government entities should be exempt from logging.

### C. The AG Plaintiffs' Category Log Proposal Is Appropriate

With respect to communications and documents that are non-exempt from logging, categorical logs are the most effective way—other than a logging exemption—to minimize the risks of chilling AGO's law enforcement activities, exposing investigative techniques, and imposing undue burden on the AG Plaintiffs. As stated by the Southern District of California when explaining why it was permitting a categorical privilege log: "it would be foolish to believe that very many of those documents [at issue] would be other than protected by the attorney-client privilege or work product" and "[t]o force the creation of a document-by-document privilege log of documents of that magnitude is unreasonable and overly burdensome." *In re Imperial Corp. of Am.*, 174 F.R.D. 475, 479 (S.D. Cal. 1997).

A metadata log is not sufficient to minimize these concerns. This is because the AG Plaintiffs will still be required to undertake the burdensome process of reviewing and modifying their log entries to avoid the metadata (such as email subject lines, document titles, and potentially email recipients) exposing protected information. "Because Rule 26(b)(5) does not require a party to sacrifice work product protection in order to assert it," the AG Plaintiffs' category log proposal is appropriate. *United States v. Gericare Med. Supply Inc.*, 2000 WL 33156442, at *4 (S.D. Ala. Dec. 11, 2000); FED. R. CIV. P. 26(b)(5)(A)(ii) (stating parties are not required to disclose "information itself privileged or protected" to claim privilege).

May 7, 2025
Page 12

Finally, the AG Plaintiffs' request for category logging is not inconsistent with the Plaintiffs' request for document-by-document logging by Defendants. The AG Plaintiffs, unlike Defendants, are attorneys whose "basic function is to litigate." *Kent*, 530 F.2d at 623. Also, the category logging proposal is limited to litigations and investigations. The AG Plaintiffs are attempting to address a concern about disclosing litigation and law enforcement investigative techniques that is not present with respect to day-to-day corporate legal advice. *See Roggio v. F.B.I.*, 2011 WL 1077257, at *2 (D.N.J. Mar. 18, 2011) (discussing, in context of law enforcement privilege, courts' attention to, among other things, "prevent[ing] the disclosure of law enforcement techniques, procedures, and sources").

### IV.   Conclusion

The AG Plaintiffs respectfully request the Court enter their proposed privilege log terms.

Respectfully submitted,

_____
Joanne M. Cicala
The Cicala Law Firm PLLC

_____
W. Lawrence Deas
Liston & Deas PLLC

_____
Walter G. Watkins
Forman Watkins & Krutz LLP

Enclosures

cc:   Counsel of Record (*via* ECF)

**Appendix - Comparison of AG-Related Exemption Paragraphs**

|  | **Plaintiffs** | **Defendants** |
|---|---|---|
| **1. Definitions** | [FN3]. "Litigation about Insulin Pricing," as used in this document, includes all actions currently in MDL No. 3080, or later filed in, added to, or transferred to MDL No. 3080 or other litigation about the price of insulin, including: *In re Direct Purchaser Insulin Pricing Litigation*, D.N.J. Case No. 20-03426; *MSP Recovery Claims Series, LLC v. Aventis US. LLC*, D.N.J. Case No. 18-2211; *In re Insulin Pricing Litigation*, D.N.J Case No. 17-669; *Minnesota v. Sanofi-Aventis US. LLC*, D.N.J. Case No. 18-14999; *County of Harris v. Eli Lilly & Co.*, S.D. Tex. Case No. H-19-4994; *City of Miami v. Eli Lilly & Co.*, S.D. Fl. Case No. 21-22636. "Investigations about Insulin Pricing," as used in this document, means any insulin pricing related investigation by a state government entity with the authority to enforce laws and/or issue subpoenas. | [FN3]."Litigation about Insulin Pricing," as used in this document, includes all actions currently in MDL No. 3080, or later filed in, added to, or transferred to MDL No. 3080 or other litigation about the price of insulin, including: *In re Direct Purchaser Insulin Pricing Litigation*, D.N.J. Case No. 20-03426; *MSP Recovery Claims Series, LLC v. Aventis US. LLC*, D.N.J. Case No. 18-2211; *In re Insulin Pricing Litigation*, D.N.J Case No. 17-669; *Minnesota v. Sanofi-Aventis US. LLC*, D.N.J. Case No. 18-14999; *County of Harris v. Eli Lilly & Co.*, S.D. Tex. Case No. H-19-4994; *City of Miami v. Eli Lilly & Co.*, S.D. Fl. Case No. 21-22636. "Investigations about Insulin Pricing," as used in this document, means any insulin pricing related investigation by a government entity with the authority to enforce laws and/or issue subpoenas. |
| **2. Litigation and Investigations about Insulin Pricing.** | I.C.1.i. The Parties shall not be required to log privileged materials as follows: … Litigation and Investigations about Insulin Pricing. Privileged materials (a) relating to the claims and defenses in Litigation about Insulin Pricing or in Investigations about Insulin Pricing; (b) sent or created after February 2, 2017; and (c) created by or at the direction of, sent by, or received by a Party's counsel (in-house counsel, outside counsel, an agent of outside counsel other than the Party, and government counsel), any non-testifying experts | I.D.1.b. The Parties shall not be required to log privileged materials as follows: … Litigation and Investigations about Insulin Pricing. Privileged materials (a) relating to the claims and defenses in Litigation about Insulin Pricing or in Investigations about Insulin Pricing; (b) sent or created after February 2, 2017; and (c) created by or at the direction of, sent by, or received by a Party's counsel (in-house counsel, outside counsel, an agent of outside counsel other than the Party, and government counsel), any non-testifying experts retained in |

|  | **Plaintiffs** | **Defendants** |
|---|---|---|
|  | retained in connection with Litigation about Insulin Pricing, or, with respect to information protected by Federal Rules of Civil Procedure 26(b)(4), testifying experts. | connection with Litigation about Insulin Pricing, or, with respect to information protected by Federal Rules of Civil Procedure 26(b)(4), testifying experts. |
| **3. Redactions** | I.C.1.iii. The Parties shall not be required to log privileged materials as follows: … Redacted Documents. The Parties shall not be required to log redacted documents. The Parties will provide the metadata fields outlined in Exhibit 1 of the ESI Protocol (CMO #11) associated with redacted documents, except that the Parties may withhold any metadata field that contains privileged information within the field itself. | I.D.1.a. The Parties shall not be required to log privileged materials as follows: … Redacted Documents. The Parties shall not be required to log redacted documents. The Parties will provide the metadata fields outlined in Exhibit 1 of the ESI Protocol (CMO #11) associated with redacted documents in the DAT file accompanying their production, except that the Parties may withhold any metadata field that contains privileged information within the field itself. |
| **4. Preservation** | I.C.1.ii. The Parties shall not be required to log privileged materials as follows: … Preservation. Privileged materials relating to activities undertaken in compliance with the duty to preserve information (including, but not limited to, litigation hold letters), which are protected from disclosure under Federal Rules of Civil Procedure 26(b)(3)(A) and (B). | I.D.1.c. The Parties shall not be required to log privileged materials as follows: … Preservation. Privileged materials relating to activities undertaken in compliance with the duty to preserve information (including, but not limited to, litigation hold letters), which are protected from disclosure under Federal Rules of Civil Procedure 26(b)(3)(A) and (B). |
| **5. AG Plaintiff** | I.C.2. State Attorney General Track.<br><br>i. State Attorney General Track Plaintiffs shall not be required to log privileged materials that are subject to the common interest doctrine exchanged between and among counsel (outside or government) for State Attorneys General's | I.D.1.d. The Parties shall not be required to log privileged materials as follows: … State Attorney General Common Interest Material. Privileged materials sent or created after the date a State filed a complaint in Litigation about Insulin Pricing, that are subject to the common interest doctrine and are exclusively: (a) between or among litigation counsel for State Attorneys General's Offices who have also |

|  | **Plaintiffs** | **Defendants** |
|---|---|---|
|  | offices regarding Investigations about Insulin Pricing or Litigation about Insulin Pricing.<br><br>ii. State Attorney General Track Plaintiffs may use categorical logs (i.e., same document description may be used for multiple documents) for privileged material, including material subject to the common interest doctrine, that is not exempt from logging if the privileged material relates to Investigations about Insulin Pricing or to the claims and defenses in Litigation about Insulin Pricing and is exclusively (a) internal to a State Attorney General's Office, (b) between or among counsel at State Attorneys General's Offices, or (c) between or among counsel at State Attorneys General's Offices and government agencies (state, local, or federal). | filed a complaint in Litigation about Insulin Pricing as of the date of the communication; or (b) between or among a State Attorneys General's Office and any state agencies that the State Attorneys General's Office represent in the MDL as of the date of the communication. |
| **6. Defendants** | None | I.D.1.e. The Parties shall not be required to log privileged materials as follows: … Defendants' Common Interest/Joint Defense Material. Privileged materials sent or created after the date a Defendant was first named in Litigation about Insulin Pricing, that are subject to the common interest or joint defense doctrines and are exclusively between or among litigation counsel for Defendants named in Litigation about Insulin Pricing as of the date of the communication. |