UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: INSULIN PRICING LITIGATION | Case No. 2:23-md-03080<br><br>MDL No. 3080<br><br>JUDGE BRIAN R. MARTINOTTI<br><br>JUDGE RUKHSANAH L. SINGH |

**THIS DOCUMENT RELATES TO:  STATE ATTORNEY GENERAL TRACK**

**THE STATE ATTORNEY GENERAL TRACK'S
RESPONSE ON ISSUE OF CONSTRUCTIVE NOTICE**

**TABLE OF CONTENTS**

**INTRODUCTION** ........................................................................................................... 1

**ARGUMENT** .................................................................................................................. 1

    I.    Defendants misstate the standards for triggering statutes of limitations. ........................... 1

    II.    Requests for governmental investigations are not constructive notice. .............................. 2

    III.    Discovery produced in prior lawsuits was not publicly available. ..................................... 3

    IV.    Defendants inundated the media and public with false reassurances. ............................... 4

**CONCLUSION** ............................................................................................................... 5

## **TABLE OF AUTHORITIES**

**Cases**

*In re Coord. Pretrial Proc. in Petro. Prod. Antitrust Litig.*,
   782 F.Supp. 487 (C.D.Cal. 1991).......................................................................................... 3, 4

*In re Renovacare Inc. Sec. Litig.*,
   2024 WL 2815034 (D.N.J. June 3, 2024) ............................................................................. 1, 5

## INTRODUCTION

Respectfully, because of *nullum tempus* and tolling doctrines, the issue of constructive notice is not relevant to the actions filed by 13 States (collectively, the "States") on behalf of millions of diabetics who have been denied access to and have been overcharged for essential life-saving medication.[1] Even so, Defendants' constructive notice arguments fail, for the following reasons:

## ARGUMENT

**I.  Defendants misstate the standards for triggering statutes of limitations.**

Contending that limitations periods begin to run upon constructive notice, Defendants misstate the standards pertinent to triggering statutes of limitations. Under discovery rules applicable to the States,[2] limitations periods do not run until a plaintiff knows or should have known of facts that establish the elements of the cause of action, and a fact is not discovered until a plaintiff has information sufficient to survive a Rule 12(b)(6) motion to dismiss. *See, In re Renovacare Inc. Sec. Litig.,* 2024 WL 2815034, *9 (D.N.J. June 3, 2024).

January 14, 2021, the date of issuance of the U.S. Senate Insulin Report, is the earliest possible date the States had any credible evidence of causation, *i.e.,* that Manufacturer Payments and collusion rather than legitimate market forces were causing insulin prices to skyrocket. The Senate Insulin Report is credible because it is based on Defendants' own documents, not litigation

---

[1] This Response is submitted on behalf of the States of Arizona, Arkansas, Illinois, Indiana, Kansas, Kentucky, Louisiana, Massachusetts, Mississippi, Montana, Oklahoma, Texas, and Utah. Constructive notice was not at issue in the briefings on the Motions to Dismiss in Puerto Rico's action. *See,* Doc 556. To the extent the Court believes constructive notice is nonetheless relevant to the Government of Puerto Rico's action, the Government hereby adopts the arguments discussed herein.

[2] *See,* Doc. 538 (Kentucky, Massachusetts, Montana, and Utah cases cited at page 12 note 4 of the State AG Track's Memorandum on Issue of Constructive Notice).

allegations, media speculation, or the PBMs' and Manufacturers' competing contentions about the fault of the other.

## II. Requests for governmental investigations are not constructive notice.

Defendants argue that all Plaintiffs had constructive notice on November 3, 2016, the date of a letter by Senator Bernie Sanders and Representative Elijah Cummings which *requested* a governmental investigation. *See,* Doc. 534, p. 7; and Doc. 536, p. 5. By selecting that date, Defendants nonsensically advocate for a date before the investigation began rather than a date when any investigative findings and evidence were available to even possibly put the States on notice of their claims. And, throughout the investigative period, Defendants repeatedly made false reassurances to negate any notice value of the investigation.[3]

On June 23, 2017, Representatives Diana DeGette and Tom Reed noted the "lack of transparency" and requested a meeting with Defendants' representatives to "untangl[e] the complicated role [Defendants] play in the price of insulin."[4] *See,* Doc. 536-67. In response to this and other governmental inquiries, the PBMs and Manufacturers used each other as foils, with the PBMs routinely blaming the Manufacturers and *vice versa. See,* Doc. 536-77 (Express Scripts claiming that "if prices have gone up in lockstep, that is because they have been priced by the drug

---

[3] The Manufacturer Defendants uniformly disputed the assertions in the Sanders-Cummings letter. *See,* Doc. 536-1. Eli Lilly claimed that "[t]he [United States] insulin market is highly competitive" and pointed to "complex [insurance] reimbursement designs" which place "an unfair burden on people with diabetes." *See,* Doc. 536-1, p. 7. Novo Nordisk replied that its "insulins are priced in line with the clinical value they provide to patients." *See,* Doc. 536-51.

[4] A statement from the general counsel of the nation's then second-largest PBM, Medco, likely typifies that industry's attitude toward calls for transparency: ***"I don't understand why they're asking us to be totally transparent*** … We don't claim to be not-for-profit … We're not a charity hospital." *See,* Doc. 536-27. (cleaned up). Obviously, PBMs "fight tooth and nail" against transparency, because ***"[i]f there [is] transparency"*** then one can ***"follow the money"*** when prices increase to "figure out what rebates are being paid and who received them." *See,* Doc. 534-1, Ex. 2, p. 15 (emphasis added).

2

makers in lockstep," and CVS Caremark adding that "[n]othing in [it's] agreements prevent[s] drug manufacturers from lowering the prices of insulin products") (cleaned up).

When the Senate Finance Committee announced its bipartisan investigation into insulin prices, it demanded the production of Defendants' internal documents related to insulin "list prices," "net prices," "negotiations and agreements" between the defendants, "the cost of research and development, production, marketing, advertising, revenues, and gross margins." *See,* Doc. 536-24 (cleaned up). Nevertheless, as noted in the Senate Finance Committee's January 2021 Report, the "PBMs were not fully responsive to the Finance Committee's requests during this investigation, variously failing to timely produce documents, produce all of the requested documents, or produce documents that were fully un-redacted." *See,* Senate Finance Committee Report at 65.[5] These tactics confused Senate investigators and delayed the Committee's determination of the root cause of insulin price increases – *e.g.,* Senator Whitehouse accused the Manufacturers of "political jujitsu" by attempting to shift the blame to middlemen, while Senator Wyden charged the PBMs with "rak[ing] in profits" as insulin prices "shot into the stratosphere." *See,* Doc. 536-26 (cleaned up). Without the documents the Committee was able to obtain from the Defendants, it could not have seen through Defendants' blame-game strategy and issued its report.

### III. Discovery produced in prior lawsuits was not publicly available.

Parties to the *Chaires* and other insulin cases, which were consolidated in January of 2018, may have had access to discovery or other evidence produced in those cases, but others did not. The States were not parties to those actions, the documents were subject to a protective order, and the proceedings were largely sealed. *See, In re Coord. Pretrial Proc. in Petro. Prod. Antitrust Litig.,*

---

[5] U.S. Senate Finance Committee, *Insulin: Examining the Factors Driving the Rising Cost of a Century Old Drug* (Jan. 14, 2021), https://www.finance.senate.gov/imo/media/doc/Grassley-Wyden%20Insulin%20Report%20(FINAL%201).pdf (hereinafter "Insulin Report").

3

782 F. Supp. 487, 494-95 (C.D.Cal. 1991) (recognizing that protective orders and lack of access to discovery limit a plaintiff's ability to determine the merit of prior lawsuits).

**IV.      Defendants inundated the media and public with false reassurances.**

Throughout the relevant time-period, Defendants made false reassurances by blame-shifting and by misrepresenting the cause of escalating insulin prices. The Manufacturer Defendants offered a litany of false reasons for their price increases. In May 2015, Novo Nordisk stated that "[i]nsulin price increases are a result of higher demand." *See,* Doc. 536-8 (May 6, 2015). Throughout 2016, Eli Lilly claimed that patients are paying more for insulin because of "recent changes in insurance plans," such as "higher deductibles" which "shift more of the cost to" diabetics. *See,* Docs. 536-14, 536-34, and 536-49 (Lilly statements on Jan. 3, 2016; Feb. 22, 2016; and Nov. 2, 2016). Time and again, all of the Manufacturer Defendants publicly defaulted to their back-stop argument that insulin price increases are necessary to fund research and development. *See,* Doc. 534-1, Ex. 7 (Wall Street J., Oct. 5, 2015); Doc. 536-12 (CBS News, Aug. 25, 2016); Doc. 536-13 (Wash. Post, Oct. 31, 2016); and Doc. 536-49 (NBC News, Nov. 2, 2016).

As for the PBM Defendants, their public claims of "lowering drug costs" and saving "billions" of dollars are innumerable. *See,* Doc. 534-1, Ex. 1, p. 7 (U.S. News & World Rep., Aug. 12, 2002); Doc. 536-30 (N.Y. Times, Aug. 9, 2004); and Doc. 536-11 (Bos. Globe, Aug. 2, 2016). Consistently, the PBMs have misled the public that the Manufacturers alone are responsible for increased insulin prices. *See, e.g.,* Doc. 536-49 (NBC News, Nov. 2, 2016). Express Scripts even charged the Manufacturers with breaking a "historical social contract" to "price[ ] their products reasonably." *See,* Doc. 536-34 (Philadelphia Inquirer, Jan. 3, 2016). To this day, the PBM Defendants continue to falsely claim that Manufacturer Payments are not related to increasing list prices. *See, e.g.,* Doc. 522, p. 7-11 (noting that the PBM Defendants commissioned a report from

4

Compass Lexecon LLC and widely disseminated it; unsurprisingly, the report asserts that "[f]ar from being a source of increased costs, PBMs help to lower the cost of prescription drugs."). *See,* Doc. 522-1, p. 7-11.

As the Court found in *RenovaCare*, Defendants' ubiquitous reassurances, as false as they are, dispelled any constructive notice. Further, because Defendants' concealment continues, there can be no constructive notice, and any time bars remain tolled.

## CONCLUSION

For the reasons set forth in the States' original Memorandum on constructive notice and those in this Response, the States of Arizona, Arkansas, Illinois, Indiana, Kansas, Kentucky, Louisiana, Massachusetts, Mississippi, Montana, Oklahoma, Texas, and Utah respectfully submit that determination of a constructive notice date is not necessary and will not benefit the progression of pre-trial proceedings in MDL 3080.

Respectfully submitted, this the 16th day of May, 2025.

By: <u>s/ Walter G. Watkins, III</u>

Joanne Cicala
**The Cicala Law Firm PLLC**
101 College Street
Dripping Springs, Texas 78620
Tel. (512) 275-6550
Fax: (512) 858-1801
joanne@cicalapllc.com

Walter G. Watkins, III
**Forman Watkins & Krutz LLP**
210 E. Capitol Street, Suite 2200
Jackson, Mississippi 39201-2375
Tel: (601) 960-8600
Fax: (601) 960-8613
Trey.watkins@formanwatkins.com

        W. Lawrence Deas
        **Liston & Deas, PLLC**
        605 Crescent Blvd., Suite 200
        Ridgeland, Mississippi 39157
        Tel: (601) 981-1636
        Fax: (601) 982-0371
        lawrence@listondeas.com

**Certificate of Service**

I hereby certify that on May 16, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

        *s/ Walter G. Watkins, III*
        Walter G. Watkins, III