# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case No. 2:23-MD-03080**<br>**MDL No. 3080**<br><br>**JUDGE BRIAN R. MARTINOTTI**<br>**JUDGE RUKHSANAH L. SINGH**<br><br>**ORAL ARGUMENT REQUESTED** |

**THIS DOCUMENT RELATES TO:**
**ALL TRACKS AND ALL CASES**

### PBM DEFENDANTS' SUPPLEMENTAL RESPONSE BRIEF REGARDING CONSTRUCTIVE NOTICE IN SUPPORT OF THEIR RULE 12(b)(6) MOTIONS TO DISMISS

(Counsel Listed on Next Pages)

LEGAL02/46066561v15

| | |
|---|---|
| Thomas P. Scrivo<br>Young Yu<br>**O'TOOLE SCRIVO, LLC**<br>14 Village Park Road<br>Cedar Grove, NJ 07009<br>T: (973) 239-5700<br> tscrivo@oslaw.com<br>yyu@oslaw.com | Jason R. Scherr<br>Elise M. Attridge<br>Lindsey T. Levy<br>**Morgan, Lewis & Bockius LLP**<br>1111 Pennsylvania Avenue, NW<br>Washington, D.C. 20004-2541<br>jr.scherr@morganlewis.com<br>elise.attridge@morganlewis.com<br>lindsey.levy@morganlewis.com<br>Tel: (202) 739-3000 |
| Brian D. Boone<br>**ALSTON & BIRD LLP**<br>1120 S. Tyron St., Ste. 300<br>Charlotte, NC 28203<br>T: (704) 444-1000<br>brian.boone@alston.com | *Counsel for Evernorth Health, Inc., Express Scripts, Inc., Express Scripts Administrators, LLC, ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Medco Health Solutions, Inc., Ascent Health Services LLC, and The Cigna Group* |

Elizabeth Broadway Brown
Jordan Edwards
**ALSTON & BIRD LLP**
1201 W. Peachtree St. NW, Ste. 4900 Atlanta, GA 30309
T: (404) 881-7000
liz.brown@alston.com
jordan.edwards@alston.com

Kelley Connolly Barnaby
**ALSTON & BIRD LLP**
950 F. Street, NW
Washington, D.C. 20004
T: (202) 239-3300
kelley.barnaby@alston.com

*Counsel for Defendants UnitedHealth Group Incorporated; OptumRx, Inc.; Optum, Inc.; OptumInsight, Inc.; and Emisar Pharma Services LLC*

LEGAL02/46066561v15

Kevin H. Marino
John D. Tortorella
**MARINO, TORTORELLA & BOYLE, P.C.**
437 Southern Boulevard
Chatham, New Jersey 07928
T: (973) 824-9300
F: (973) 824-8425
kmarino@khmarino.com
jtortorella@khmarino.com

Enu Mainigi
Craig Singer
R. Kennon Poteat III
A. Joshua Podoll
Benjamin Hazelwood
Daniel Dockery
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, S.W.
Washington, D.C. 20024
T: (202) 434-5000
F: (202) 434-5029
emainigi@wc.com
csinger@wc.com
kpoteat@wc.com
apodoll@wc.com
bhazelwood@wc.com
ddockery@wc.com

*Counsel for CVS Health Corporation; Caremark Rx, L.L.C.; CaremarkPCS Health, L.L.C.; Caremark, L.L.C.; and Zinc Health Services, L.L.C.*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

I. PLAINTIFFS HAD CONSTRUCTIVE NOTICE BY NOVEMBER 3, 2016................................................................................................................. 2

    A. The Court Can Properly Decide Constructive Notice at This Stage........... 2

        1. Constructive notice is an objective inquiry that can be decided now. ................................................................................ 3

        2. Plaintiffs have not alleged distinct injuries.................................... 5

    B. Plaintiffs Had Constructive Notice by at Least November 3, 2016............ 6

II. THE COURT NEED NOT RULE ON PLAINTIFFS' ATTEMPTS TO AVOID THE LIMITATIONS PERIOD, WHICH ARE MERITLESS IN ANY EVENT................................................................................................... 10

CONCLUSION............................................................................................................... 11

LEGAL02/46066561v15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abdullajeva v. Club Quarters*,
   1996 WL 497029 (S.D.N.Y. Sept. 3, 1996) ............................................................................... 10

*Barbee v. Amira Nature Foods, Ltd.*,
   2023 WL 4627744 (D.N.J. July 19, 2023) ................................................................................. 9

*Blue Cross Blue Shield Ass'n v. Glaxosmithkline LLC*,
   2016 WL 6612804 (E.D. Pa. Nov. 9, 2016) ............................................................................... 9

*Bowers v. Nat'l Collegiate Athletic Ass'n*,
   151 F. Supp. 2d 526 (D.N.J. 2001) .......................................................................................... 10

*Brawner v. Educ. Mgmt. Corp.*,
   513 F. App'x 148 (3d Cir. 2013) ................................................................................................ 6

*Broccoli v. Ashworth*,
   2025 WL 880550 (S.D.N.Y. Mar. 21, 2025) ............................................................................. 5

*Catalyst Dynamic Alpha Fund v. Valeant Pharms Int'l Inc.*,
   2019 WL 2331631, at *6 (D.N.J. May 31, 2019) ...................................................................... 9

*Cetel v. Kirwan Financial Group, Inc.*,
   460 F.3d 494, 507 (3d Cir. 2006) ............................................................................................... 3

*DeBenedictis v. Merrill Lynch & Co.*,
   492 F.3d 209 (3d Cir. 2007) .................................................................................................. 4, 8

*Dongelewicz v. PNC Bank National Association*,
   104 F. App'x 811 (3d Cir. 2004) ................................................................................................ 4

*Evergreen Equity Tr. v. Fannie Mae (In re Fannie Mae Sec.)*,
   503 F. Supp. 2d 25 (D.D.C. 2007) ............................................................................................. 2

*Gary Miller Imports, Inc. v. Doolittle*,
   2020 WL 7027483 (W.D. Pa. Nov. 30, 2020) ........................................................................... 5

*Hawk Mt. LLC v. Ram Cap. Grp., LLC*,
   689 Fed. App'x 703 (3d Cir. 2017) ............................................................................................ 2

*In re AIG Workers Comp. Ins. Policyholder Litig.*,
   2015 WL 1992723 (N.D. Ill. Apr. 27, 2015) ............................................................................. 3

*In re Alstom SA Sec. Litig.*,
  406 F. Supp. 2d 402 (S.D.N.Y. 2005) ................................................................................2

*In re DaimlerChrysler AG Securities Litigation*,
  269 F. Supp. 2d 508 (D. Del. 2003) ...................................................................................4

*In re EpiPen Direct Purchaser Litig.*,
  2021 WL 147166 (D. Minn. Jan. 15, 2021) .......................................................................9

*In re Merck Co.*,
  2006 WL 8460903 (D.N.J. Jan. 20, 2006) .....................................................................2, 4

*In re NAHC, Inc. Sec. Litig.*,
  306 F.3d 1314 (3d Cir. 2002) ........................................................................................3, 6

*In re Petroleum Products Antitrust Litigation,*
  782 F. Supp. 487 (C.D. Cal. 1991) ....................................................................................9

*Koch v. Christie's Int'l PLC*,
  699 F.3d 141 (2d Cir. 2012) ..............................................................................................2

LabMD Inc. v. Boback,
  47 F.4th 164 (3d Cir. 2022) ..........................................................................................4, 8

*Mathews v. Kidder, Peabody & Co.*,
  260 F.3d 239 (3d Cir. 2001) .................................................................................... *passim*

*Moss v. First Premier Bank*,
  2024 WL 4274780 (E.D.N.Y. Aug. 2, 2024) ...................................................................10

*National Rural Elec. Co-op Ass'n v. Breen Capital Servs. Corp.*,
  2021 WL 294086 (D.N.J. Mar. 28, 2001). .........................................................................9

*Pension Tr. Fund for Operating Eng'rs*,
  730 F.3d 263 (3d Cir. 2013) ...........................................................................................6,9

*Prudential Insurance Company of America v. United States Gypsum Co.*,
  359 F.3d 226 (3d Cir. 2004) ..............................................................................................4

*Riddle v. Bank of Am. Corp.*,
  2013 WL 6061363 (E.D. Pa. Nov. 18, 2013) ..................................................................10

*Robison v. Johnson*,
  313 F.3d 128 (3d Cir. 2002) ..............................................................................................2

*RoboticVISIONTech, Inc., v. ABB Inc.*,
  726 F. Supp. 3d 364 (D. Del. 2024) ...................................................................................2

iii

*Wolf v. Travolta*,
  167 F. Supp. 3d 1077 (C.D. Cal. 2016) ....................................................................................0

**OTHER AUTHORITIES**

*In re Direct Purchaser Insulin Pricing Litig.*,
  No. 20-3426 (March 15, 2021), ECF No. 139 ..........................................................................7

Lydia Ramsey Pflanzer, *There's something off about the way insulin prices change,*
  BUSINESS INSIDER (Sept. 17, 2016) ......................................................................................7

LEGAL02/46066561v15

## INTRODUCTION

Widely publicized media reports, lawsuits, investigations, public statements by Defendants, and congressional actions—including a November 3, 2016 Congressional letter to the DOJ and the FTC setting forth the core of Plaintiffs' allegations in this MDL—provided more than sufficient "storm warnings" to put all potential plaintiffs on constructive notice of any claims by November 3, 2016 at the latest. Because those facts are the same for all plaintiffs, the Court should set a constructive-notice date of no later than November 3, 2016 for this entire MDL.

Plaintiffs' arguments for a belated constructive notice date of January 14, 2021 are non-starters. That date is years after extensive media coverage, congressional inquiries, and a host of lawsuits filed in this court alleging the same conduct at issue. Indeed, certain Plaintiffs *in this MDL* alleged in their own complaints that constructive notice was available by November 2016. And while Plaintiffs devote most of their briefing to tolling doctrines—some of which they assert are state-specific or fact intensive—the Court need not address those arguments at this stage, and those inquiries in no way preclude the Court's ability to set a constructive notice date and apply that date across all Plaintiffs.

Plaintiffs' arguments only reflect their understanding that the correct constructive notice date will sound the death knell for their time-barred claims and end the steady stream of copy/paste complaints multiplying on this Court's docket. The Court should rule that Plaintiffs had constructive notice of their alleged injuries by at least November 3, 2016.

## ARGUMENT

I.     **PLAINTIFFS HAD CONSTRUCTIVE NOTICE BY NOVEMBER 3, 2016.**

    A.     **The Court Can Properly Decide Constructive Notice at This Stage.**

Dismissal at the pleading stage based on a limitations defense is appropriate when, as here, the face of the complaint "shows that the cause of action has not been brought within the statute of limitations." *Robison v. Johnson*, 313 F.3d 128, 134–35 (3d Cir. 2002). A court also may take judicial notice of certain materials outside the complaint when deciding whether a plaintiff had constructive notice. *See In re Merck Co.*, 2006 WL 8460903, at *5 (D.N.J. Jan. 20, 2006). Under RICO, a plaintiff had constructive notice where "storm warnings" "would alert a reasonable person to the probability" of wrongdoing. *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001).[1]

Courts in this Circuit routinely determine at the pleading stage the date upon which plaintiffs had constructive notice of purported injuries. *See, e.g.*, *Hawk Mt. LLC v. Ram Cap. Grp., LLC*, 689 Fed. App'x 703, 706 (3d Cir. 2017) (affirming motion to dismiss ruling that plaintiffs were "on inquiry notice of their alleged injuries"); *RoboticVISIONTech, Inc., v. ABB Inc.*, 726 F. Supp. 3d 364, 368 (D. Del. 2024) (granting motion to dismiss claims as time-barred). The same is true for courts overseeing MDLs and class actions. *See, e.g.*, *Evergreen Equity Tr. v. Fannie Mae (In re Fannie Mae Sec.)*, 503 F. Supp. 2d 25, 36 (D.D.C. 2007) (dismissing time-barred claims in an MDL)*; In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 402, 430 (S.D.N.Y. 2005) (finding "inquiry notice to have existed" for lead class plaintiffs and dismissing claims as time-barred)*; In re AIG*

---

[1] The State AGs argue that storm warnings do not trigger limitations periods, State AG Br., at 10, but they cite a Supreme Court decision that applies only to claims under federal securities laws. *See, e.g.*, *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 150 (2d Cir. 2012) (rejecting application of *Merck* to RICO claims).

2

*Workers Comp. Ins. Policyholder Litig.*, 2015 WL 1992723, at *6 (N.D. Ill. Apr. 27, 2015) (consolidated class action RICO claims). The Court can—and should—do the same here.

The Court should adopt a constructive notice date because (1) it is an objective inquiry that is appropriate to decide on the pleadings, and (2) Plaintiffs' alleged injuries are insufficiently distinct to trigger different dates for statute-of-limitations purposes.

### 1. Constructive notice is an objective inquiry that can be decided now.

The Self-Funded Payer Track Plaintiffs ("SFPs")—the Plaintiff Track most vulnerable to a constructive notice ruling given the sheer number of plaintiffs who chose to delay filing claims until 2025—contend that "fact-intensive" questions specific to individual Plaintiffs preclude the Court from setting a constructive-notice date applicable to *all* Plaintiffs. SFP Br. at 3–8. But this conflates the objective constructive-notice inquiry with the subjective actual-notice inquiry. "Constructive notice" focuses on whether a "reasonable [plaintiff] of ordinary intelligence would have discovered the information and recognized it as a storm warning." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1325 (3d Cir. 2002). Because that inquiry applies across the plaintiffs in this MDL regardless of what each particular plaintiff knew, it should be resolved now.

A plaintiff's claims also can be untimely if it had actual knowledge of the claims prior to the constructive-notice date. *See, e.g.*, *Cetel v. Kirwan Financial Group, Inc.*, 460 F.3d 494, 507 (3d Cir. 2006) (subjective and objective components are disjunctive, and "a claim accrues no later than when the plaintiffs themselves discover their injuries." (quoting *Mathews*, 260 F.3d at 252)). But that individual inquiry is irrelevant: setting a constructive notice date that applies to all current and future cases filed in this MDL and streamlining resolution of limitations bars to newly filed

3

claims.[2] To the extent any Plaintiff's claim remains timely under the constructive-notice date the Court sets, the PBMs will raise earlier dates of actual notice at the appropriate time.

The SFPs also argue that, at least as to the RICO claims, Plaintiffs are entitled to show they exercised reasonable diligence as part of the constructive notice inquiry. Plaintiffs cannot meet their burden. *See, e.g.*, *Mathews*, 260 F.3d at 255 ("[T]o determine what constitutes 'reasonable' due diligence, we must consider the magnitude of the existing storm warnings. The more ominous the warnings, the more extensive the expected inquiry."). Most of the Plaintiffs fail to address the issue, and the SFPs make no effort to show how they exercised reasonable diligence.[3] Moreover, they refer to a list of factors that bear on *actual* notice—like their contracts with the PBMs or alleged statements made to them by the PBMs. SFP Pls.' Br. at 10, 13. Again, the SFPs' attempt to create an individual-plaintiff-specific question unrelated to the objective constructive notice standard fails. The Court should reject the SFPs' attempt to derail its question.

---

[2] Plaintiffs' authorities do not support that individualized issues prohibit the Court from ruling on a constructive notice date. *See* SFPs' Br. at 5. For example, *In re DaimlerChrysler AG Securities Litigation*, 269 F. Supp. 2d 508, 513 (D. Del. 2003) provides that individual circumstances "should *not* be taken into consideration when determining whether a reasonable [plaintiff] would have recognized the information as a storm warning." (emphasis added). Nor does *Prudential Insurance Company of America v. United States Gypsum Co.*, 359 F.3d 226, 234 (3d Cir. 2004) require an individualized inquiry or consideration of an individual plaintiff's sophistication. *See Mathews*, 260 F.3d at 252 ("we reject the proposition that unsophisticated investors should be held to a lower standard of due diligence"). SFPs' cited *dicta* from *In re Merck & Co., Inc. Securities Derivative & "ERISA" Litigation*, 543 F.3d 150, 171 (3d Cir. 2008) simply clarified that securities fraud suits are different than consumer fraud suits. The Third Circuit has plainly recognized thatcourts can resolve the question of constructive notice on the pleadings, even where determining "when [a plaintiff] knew of its alleged injuries is complicated." *LabMD Inc. v. Boback*, 47 F.4th 164, 179 (3d Cir. 2022) (dismissing RICO claims as time-barred).

[3] This alone dooms their argument. *See, e.g.*, *DeBenedictis v. Merrill Lynch & Co.*, 492 F.3d 209, 219 (3d Cir. 2007) (affirming dismissal where plaintiff "failed to allege any facts that he exercised reasonable due diligence and yet [was] unable to discover [his] injuries") (cleaned up). Defendants previously addressed Plaintiffs' lack of reasonable due diligence and incorporate those arguments herein. *See, e.g.*, Class Track PBM MTD at 18; Class Track PBM Reply at 13–14; SFP PBM MTD 22–23; SFP PBM Reply at 9–10; Mont. PBM MTD at 8–9; Mont. PBM Reply at 4, 6.

### 2. Plaintiffs have not alleged distinct injuries.

In another effort to avoid a constructive notice date that applies across the MDL, the SFPs argue that they sue about different injuries—"including those involving mislabeled rebates and rebate aggregators." SFP Pls.' Br. at 13.[4] But that purported distinction has no impact on the constructive-notice date. As set forth in the PBM Defendants' motions to dismiss, the same sources that provide constructive notice of the broader supposed "insulin pricing scheme" also provide constructive notice of the "mislabeled rebates" portion of that alleged scheme. *See* Manufacturers' Reply ISO Mot. to Dismiss First Am. Class Action Compl.. No. 23-cv-2093, ECF No. 48 at 8–9.

Nor can the SFPs' nod to allegations about group purchasing organizations exempt them from an MDL-wide constructive notice date. The SFPs' supposedly "new" injury related to GPOs is merely "derivative of the core injury sustained," which does not avoid the statute of limitations. In *Broccoli v. Ashworth*, the court rejected plaintiffs' arguments that they suffered three distinct injuries, finding that the complaint made it clear that all three alleged injuries "relate[d] to the same core RICO injury—i.e. the stopping or delaying Plaintiffs' commercial development." 2025 WL 880550, at *9 (S.D.N.Y. Mar. 21, 2025). Here too, the SFPs allege singular injuries.[5] *See* Albany Cnty. Compl. ¶¶ 599, 602, ECF No. 158; Lake Cnty. Compl., ¶¶ 536, 539, ECF No. 159; King Cnty. Compl. ¶¶ 390, 393, ECF No. 160. As they put it, "the Insulin Pricing Scheme has directly and proximately caused Plaintiff to substantially overpay for diabetes medication"—just like every

---

[4] This argument confirms that the entire SFP track has narrowed the case it initially brought—which purported to encompass a claim that rebates led to higher prices—to a theory solely about rebate-labeling that is foreclosed by the SFPs own contracts with PBMs. *See* ECF No. 257; ECF No. 259 at 8–9.

[5] *Gary Miller Imports, Inc. v. Doolittle*, 2020 WL 7027483, at *8 –11 (W.D. Pa. Nov. 30, 2020) is inapposite because it involved multiple discrete acts, ranging from defendants' using plaintiff's cash to pay their personal expenses to transferring vehicles among dealerships to cause plaintiff losses, that allegedly resulted in corresponding discrete injuries. The district court faulted the parties for not explaining how the statute of limitations applied to each discrete act and injury—a distinguishable scenario for the reasons explained above. *Id.*.

other Plaintiff in this MDL. Albany Cnty. Compl. ¶ 583, ECF No. 158; *see* Lake Cnty. Compl., ¶ 520, ECF No. 159; King Cnty. Compl. ¶ 378 ECF No. 160.

### B. Plaintiffs Had Constructive Notice by at Least November 3, 2016.

The record—including admissions in sworn pleadings from various Plaintiffs within this MDL—confirms that the latest appropriate constructive notice date would be November 3, 2016. Plaintiffs seek either to avoid setting any such date or argue for a constructive notice date over four years later, when the Senate Finance Committee published the Insulin Report. *See* Class Br. at 1; State AG Br. at 12.

Plaintiffs claim it was not until the Senate Finance Insulin Report that they knew of "critical details of the complex and systematic web of pricing strategies that drove up the cost of Insulin Drugs, as well as the surreptitious practices that concealed this illicit behavior." Class Br. at 2. That misconstrues the constructive-notice inquiry and ignores the relevant sources of notice. Storm warnings need not reveal "all of the details or 'narrow aspects'" of a claim to trigger the limitations period. *NAHC*, 306 F.3d at 1326. The inquiry asks whether the plaintiff should have known "*general facts* about the fraudulent scheme." *Pension Tr. Fund for Operating Eng'rs*, 730 F.3d 263, 272 (3d Cir. 2013) (emphasis added). "That [Plaintiffs] may not have been aware of the 'full extent' of the possible injury does not save [their] claims [and] knowledge of every fact necessary to prevail on the claim is not required to trigger the accrual period." *Brawner v. Educ. Mgmt. Corp.*, 513 F. App'x 148, 151 (3d Cir. 2013) (cleaned up).

6

The requests for information that led to the 2021 Insulin Report came from the Senate in 2019. Those requests, in turn, were prompted by publicly available information and reporting as far back as at least 2011.[6] A much-earlier constructive notice date is appropriate.

The November 3, 2016 letter alleging concerns about "possible collusion" plainly put Plaintiffs on notice of the general facts of the alleged fraudulent scheme on which their claims are based.[7] The Class Track Plaintiffs' assertion that a "single letter requesting an investigation" was insufficient to put them on constructive noticeof "a fraudulent scheme predicated on the payment of bribes in exchange for favorable formulary treatment," Class Br. at 3, ignores that other Plaintiffs within the Class Track admitted the opposite years ago. The Wholesaler Plaintiffs alleged in 2020 that "Plaintiffs had no notice of their injury here *until Congress's announcement of its investigation in November 2016.*" *Direct Purchaser*, No. 20-cv-03426, ECF No. 139 at 68 (emphasis added). And one of the Health Plan Plaintiffs similarly admitted notice of its claims by 2016 when it filed suit in 2023. *See* Compl., *Local No. 1 Health Fund v. Eli Lilly & Co.*, No. 23-cv-21160, ECF No. 1 ¶ 133 ("Class members had no knowledge of Defendants' unlawful conduct as alleged herein or of facts sufficient to place them on inquiry notice of the claims set forth herein, until at least November of 2016, when news sources began publishing information about the Senate investigation.").

---

[6] *See* Exs. 18–20, Apr. 2, 2019 Letters from Senators C. Grassley and R. Wyden (each relying on U.S. DEPT. OF HEALTH AND HUMAN SERV., OFFICE OF INSPECTOR GEN., OEI-02-08-00050, CONCERNS WITH REBATES IN THE MEDICARE PART D PROGRAM, at 19 (2011)). And the Insulin Report itself relies on public information and reporting that significantly pre-dates its publication. *See, e.g.*, Ex. 21, Senate Finance Committee Report titled "Insulin: Examining the Factors Driving the Rising Cost of a Century Old Drug," at 46 n.254 (citing Lydia Ramsey Pflanzer, *There's something off about the way insulin prices change,* BUSINESS INSIDER (Sept. 17, 2016), *https://www.businessinsider.com/rising-insulinprices- track-competitors-closely-2016-9*).

[7] Ex. 5 to PBMs' Br., Sen. Sanders & Hon. Cummings Letter to DOJ and FTC on Insulin (Nov. 3, 2016).

7

The Class Action Plaintiffs say any reference to their 2020 admission is "improper at this stage" because those plaintiffs' complaint was filed within four years after November 2016, removing the "incentive . . . to argue for a later constructive notice date at that time." *Id.* n.3. Yet, their admission and others, like Local No. 1 in 2023, is obviously relevant to the Court's consideration of PBMs' argument for the exact same constructive notice date.

The State AGs argue they could have known that Defendants' alleged conduct *caused* their injuries, as they claim is required under certain state accrual rules, because the 2021 Report was the first "reliable" source that "established that the sharp increases in diabetic drug prices resulted from a coordinated effort between the PBMs and Manufacturers." State AGs' Br. at 12–13. But multiple national media outlets and Congress investigated and reported about PBMs, manufacturers, and the alleged impact of rebates on insulin prices for two decades, culminating with a flood of articles and the Sanders/Cummings letter in 2016. *See* PBMs' Br. at 3–6. Plaintiffs were on constructive notice of the "scheme" they allege by at least November 3, 2016. *See* Appendix A to Manufacturers' Br. (describing in part multiple storm warnings from 2016).

Lawsuits in 2017 setting out the blueprint for each Plaintiff's claims in this MDL confirm all Plaintiffs were on constructive notice before then. Downplaying those facts, the State AGs suggest that media coverage and other litigation are "questionable" and "unverifiable" sources that the Court should disregard. State AGs' Br. at 11. And the Class Action Track Plaintiffs suggest that no one could "possibly be expected to monitor the approximately 347,000 civil cases filed each year in federal court to determine whether facts alleged in a few cases might be relevant to them." Class Track Br. At 4. No one asserts that. But courts routinely consider congressional inquiries, media coverage, and other litigation in deciding a constructive notice date at this stage. *See DeBenedictis*, 492 F.3d at 218–19 (news articles); *LabMD*, 47 F.4th at 180–81 (news articles);

8

*Barbee v. Amira Nature Foods, Ltd.*, 2023 WL 4627744, at *6 (D.N.J. July 19, 2023) (public reports and class action lawsuits); *Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 276-77 (3d Cir. 2013) (class action complaint filed by different plaintiffs asserting similar claims); *Catalyst Dynamic Alpha Fund v. Valeant Pharms Int'l Inc.*, 2019 WL 2331631, at *6 (D.N.J. May 31, 2019).[8] The Court should do the same here.

The Self-Funded Payer Track Plaintiffs ("SFPs") rely on a handful of distinguishable decisions to argue that the Court should not address constructive notice at this stage. SFPs' Br. at 7. None dictates the outcome here. *In re EpiPen* involved articles that were not specific to EpiPen and only "identified general prescription drug market conditions susceptible to potential abuse." *See In re EpiPen Direct Purchaser Litig.*, 2021 WL 1417166, at *6.[9] Similarly, *Blue Cross Blue Shield* involved news coverage the Court characterized as "vague and minimal." *Blue Cross Blue Shield Ass'n v. Glaxosmithkline LLC*, 2016 WL 6612804, at *10 (E.D. Pa. Nov. 9, 2016).

---

[8] The decades-old, non-binding cases that Plaintiffs cite to are distinguishable on their own facts. For example, Plaintiffs rely heavily on *In re Petroleum Products Antitrust Litigation*, 782 F. Supp. 487 (C.D. Cal. 1991). State AG Br. at 9-19, ECF No. 538. But in that case, the California Court held that two litigations with *different* claims and one non-publicized litigation, coupled with a "small handful of articles" was insufficient to merit constructive notice under Ninth Circuit law. *Id.* at 493-95. That differs in kind from the situation here, where there was wide publicity of both the November 2016 Congressional Letter and the early 2017 litigations. *See* PBM Br. at 9–13, ECF No. 534. Plaintiffs also stretch the holding of *National Rural Elec. Co-op Ass'n v. Breen Capital Servs. Corp.*, 2021 WL 294086 (D.N.J. Mar. 28, 2001), where the court concluded that a prior securities fraud law suit—which received *no* media attention—did not trigger inquiry notice. *Id.* at *4. But the Third Circuit has since held otherwise. *Pension Trust Fund for Operating Eng'rs v. Mortgage Asset Securitization Transactions, Inc.* 730 F.3d 263, 277-78 (3d Cir. 2013).

[9] The Class Action Plaintiffs similarly misconstrue this Court's prior opinion as "recogniz[ing] that media attention does not trigger a duty to investigate." Class Br. at 4. That opinion expressly relied on *In re EpiPen*, which rejected the defendants' statute of limitations argument because the articles were not drug-specific. *Direct Purchaser*, 2021 WL 2886212 at *19 (quoting 2021 WL 1417166, at *6). It did not involve other lawsuits, investigations, statements, and Congressional activity surrounding the specific type of drug at issue, like the ones that placed Plaintiffs on notice here. *See id.*

9

**II.   THE COURT NEED ADDRESS PLAINTIFFS' MERITLESS TOLLING ARGUMENTS.**

The Court can disregard Plaintiffs' scattershot arguments that their claims are saved by various tolling doctrines because they are outside the scope of the Court's request for supplemental briefing. *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 151 F. Supp. 2d 526, 541 n.16 (D.N.J. 2001). It makes little sense at this stage for the Court to address the myriad tolling doctrines, often state-law specific, that every Plaintiff across this MDL may raise. The tolling doctrines relevant to the pending motions to dismiss representative complaints from each MDL track have been fully briefed. To the extent the Court considers Plaintiffs' tolling arguments at this stage, it should reject them for the reasons the PBMs have briefed in connection with the pending motions to dismiss the various representative complaints from the MDL tracks. *See* SFP PBM MTD at 19-21; SFP PBM Reply at 13-15; Mont. PBM MTD at 8-9; Mont. PBM Reply at 3-5; Ill. PBM MTD at 20-21; TPP PBM MTD at 23-25; TPP PBM Reply at 10.[10]

The potential for any Plaintiff to have viable tolling arguments would not prevent the Court from determining a date by which Plaintiffs had constructive notice anyway, because determining the limitations period is a necessary first step. *See Abdullajeva v. Club Quarters*, 1996 WL 497029, at *7 (S.D.N.Y. Sept. 3, 1996) (noting that for continuing violation exception to apply, "at least one actionable tort, or component of the tort, must occur within the limitations period"); *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1104 (C.D. Cal. 2016); *Moss v. First Premier Bank*, 2024 WL 4274780, at *5 n.3 (E.D.N.Y. Aug. 2, 2024); *Riddle v. Bank of Am. Corp.*, 2013 WL 6061363, at

---

[10] The States raise state-specific arguments as to the doctrine of *nullum tempus occurrit regi*. Defendants have briefed the inapplicability of that doctrine in certain of the representative cases as to which they have moved to dismiss. *See* Ill. Manufacturer MTD at 28-29; Ill. Manufacturer Reply at 13-14; TPP Manufacturer MTD at 16. They will do so as appropriate when the time for moving to dismiss other representative cases in this MDL comes. *See* CMO 5 at 2, ECF No. 127 ("No motions are to be filed in this MDL without leave of Court.").

*6 (E.D. Pa. Nov. 18, 2013), *aff'd*, 588 F. App'x 127 (3d Cir. 2014) ("If a plaintiff could revive his or her claim by being diligent *after* the statute of limitations had run, the statute of limitations would be meaningless.") (emphasis added).

## CONCLUSION

For these reasons, the PBMs respectfully request that the Court rule that Plaintiffs had constructive notice of their alleged injuries by at least November 3, 2016 and bar any claims filed after the applicable statutes of limitations as calculated from the date of constructive notice.

Respectfully submitted,

Dated: May 16, 2025

 /s/ Brian D. Boone
Thomas P. Scrivo
Young Yu
**O'TOOLE SCRIVO, LLC**

Brian D. Boone
Elizabeth Broadway Brown
Kelley Connolly Barnaby
Jordan Edwards
**ALSTON & BIRD LLP**

*Counsel for UnitedHealth Group Incorporated; OptumRx, Inc.; Optum, Inc.; OptumInsight, Inc.; and Emisar Pharma Services LLC*

/s/ Jason R. Scherr
Jason R. Scherr
Elise M. Attridge
Lindsey T. Levy
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004-2541
jr.scherr@morganlewis.com
elise.attridge@morganlewis.com
lindsey.levy@morganlewis.com
Tel: (202) 739-3000

*Counsel for Evernorth Health, Inc., Express Scripts, Inc., Express Scripts Administrators, LLC, ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Medco Health Solutions, Inc., Ascent Health Services LLC, and The Cigna Group*

 /s/ R. Kennon Poteat III
Kevin H. Marino, Esq.

11

John D. Tortorella, Esq.
**Marino, Tortorella & Boyle, P.C.**

Enu Mainigi
Craig Singer
R. Kennon Poteat III
A. Joshua Podoll
Benjamin Hazelwood
Daniel Dockery
**Williams & Connolly LLP**

*Counsel for CVS Health Corporation; CVS Pharmacy, Inc., Caremark Rx, L.L.C.; CaremarkPCS Health, L.L.C.; and Caremark, L.L.C., and Zinc Health Services, LLC*

12