

May 16, 2025

**VIA ECF**

Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

   Re: *In re: Insulin Pricing Litigation*, No. 2:23-md-03080-BRM-RLS
      MDL No. 3080
      **Plaintiffs' Reply Letter Brief Regarding Privilege Log Protocol**

Dear Judge Singh:

  Plaintiffs' proposed privilege protocol should be entered for the reasons stated in Plaintiffs' opening brief and as further supported herein. The timing implications of Plaintiffs' proposal will advance this litigation, serving the interests of all Parties and the Court. On the other hand, Defendants' proposed privilege protocol, as explained by their letter brief, asks for lengthy timeframes that, if adopted, will either further delay this litigation or create unnecessary motion practice that will stem from late-disclosed privilege claims. All Plaintiff Tracks join Sections I-IV. Section V is submitted by the State AG Track only.

**I. Introduction**

  Whereas Plaintiffs' proposal mimics Orders entered in recent MDLs,[1] Defendants' proposal seeks to rewrite the playing field by delaying the service of privilege logs for months, imposing unjustified and prejudicial restrictions on a party's ability to challenge privilege assertions, and exempting communications withheld on "common interest" grounds from logging altogether in this case sounding in fraud and conspiracy. Defendants' proposal is inefficient, unsupported, and unwarranted. Respectfully, the Court should adopt Plaintiffs' privilege log proposal.

**II. Argument**

  **A. Plaintiffs' 30-Day Rolling Privilege Log Provisions Serve the Needs of this Case**

  Defendants contend that proportionality dictates the outcome here due to the expected volume of privilege log entries, but this is not true. Plaintiffs agree that proportionality should be considered in the preparation of privilege logs, as described by The Sedona Conference Commentary on Privilege Logs, 25 SEDONA CONF. J. 221, 235-37 (2024). As discussed therein at

---

[1] *See,* Pltfs' Ltr. Br. at n. 1 (ECF No. 550) ("Pltfs' Ltr. Br.").

note 18, proportionality considerations for privilege logging are largely tied to the Receiving Party's evaluation of the privileges asserted.[2]

Fed. R. Civ. P. 26(b)(1) sets forth the general scope of discovery and states: "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …" Further, the Rule establishes that proportionality is tied to the claim(s) of privilege, i.e. "[w]hen a party withholds information otherwise discoverable [as both relevant and proportional under Fed. R. Civ. P. 26(b)(1)] by claiming that the information is privileged" the privilege log should be designed to support the claims of privilege so a Receiving Party can assess the privilege(s) claimed. Defendants' case law does not support the above stated proportionality applicable to Rule 26.[3] Further, Defendants' timing provisions are disproportionate to the needs of the case.

Indeed, in the context of the privilege protocol negotiations, in February of this year, the Parties agreed that redacted documents need not be placed on a privilege log so long as the basis for privilege is stated in the text box of the redaction itself. Despite this agreement, Defendants have not produced documents bearing privilege redactions. Moreover, as shown in both Plaintiffs' and Defendants' proposed protocols, the Parties agree that fully withheld documents shall be logged with narrative descriptions. Yet, Defendants claim that they need additional time to log such materials after the entry of this order, and that such timing is proportional to the needs of the case because of the expected large volume of productions and corresponding privilege claims. There is no justification by Defendants for either their 120-day timing request based on the entry of this order or their 90-day rolling privilege log timing provision thereafter. Just like Defendants should be producing documents redacted documents partially withheld for privilege, Defendants should be working through those documents already tagged as potentially

---

[2] The Sedona Conference, *Commentary on Privilege Logs*, 25 SEDONA CONF. J. 221, 236-37, n. 18 (2024); *First Horizon Nat'l Corp. v. Houston Cas. Co.*, No. 2:15-CV-2235-SHL-DKV, 2016 WL 5867268, at *6 (W.D. Tenn. Oct. 5, 2016) (applying the Rule 26(b)(1) proportionality standard, citing the proportionality factors, and concluding that a traditional document-by-document log, rather than a "categorical log" was proportional); *Finger v. Jacobson*, No. CV 17-2893, 2019 WL 7557821, at *1 (E.D. La. May 10, 2019) (finding the privilege log "proportional to the needs of the case given the parties' relevant access to the requested materials," and it may also "aid in resolving the issues in this litigation, the burden or expense does not outweigh its likely benefit," and noting it had no evidence of "any of the other proportionality factors under Rule 26" available as evidence") (internal citations omitted).

[3] Defendants' Legal Standard Section points to a handful of cases that discuss proportionality in the context of larger discovery disputes, none of which discuss the proportionality considerations related to privilege logging. *In re Asbestos Prods. Liab. Litig.*, 543 F. App'x 202, 206 (3d Cir. 2013); *Dana v. Baker Hughes, Inc.*, 2015 WL 5576880, at *15 (M.D. Pa. Sept. 21, 2015); *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 666 (9th Cir. 2020); *In re Insulin Pricing*, MDL No. 3080 (D.N.J. May 24, 2024), ECF 186 at 3; *In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 246 (3d Cir. 2013).

privileged. Stated another way, Defendants are creating the disproportionate and inefficient universe they claim Plaintiffs' 30-day rolling log requirement creates.[4]

### B. Deadlines and Caps on Privilege Log Challenges

Plaintiffs incorporate by reference here, their reasons for striking all deadlines and quantity limits imposed on a Receiving Party's ability to challenge privilege claims. It is true that Plaintiffs did not offer a counter to related provisions. Without restating same here, Plaintiffs' concern that Defendants' proposed language in I.B.7 may be broader in application than it reads and may apply to both privilege log format and privilege challenges, is compounded by Defendants' submission. Also, Defendants' insistence that the Receiving Party be barred from raising privilege challenges after a certain period of time was rightfully rejected by Plaintiffs as stated in their opening brief.

#### 1. Deadlines to Raise Challenges

Much like the above, Defendants rely heavily on cases that do not actually support their position. Each of the cases cited by Defendants offer a non-rigid deadline and are less punitive in function than Defendants' proposed provision. For example, *In re Bard Implanted Port Catheter Prods. Liab. Litig.*, MDL No. 3081, offers that a party does not waive its right to challenge privilege entries provided the challenging party shows good cause as to why the claim could not have been reasonably brought earlier. Next, in *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, the challenge period is balanced by the phrase "**or within a reasonable time depending on the volume of the log**." MDL No. 2843 *(N.D. Cal. 2020) ECF No. 462 at 5 (emphasis added). Finally, *In re Davol, Inc.,* MDL 2846, offers, that a challenge should be brought within 75 days, but "[a] receiving party may freely request extensions of this deadline and consent to such extensions shall not be unreasonably withheld." ECF No. 130, CMO 17 at 3. Defendants' proposed deadline to challenges offers no flexibility to the timing for challenges after a privilege log is produced. Indeed, courts often find that there is a proportional discovery need to continued privilege challenges throughout the discovery period. *See*, *Durand v. Hanover Insurance* Group, 294 F. Supp. 3d 659 (W.D. Ky, Feb. 16, 2018) (permitting *in camera* review after the close of discovery). Finally, at present the Court has not re-entered a scheduling order in this case, so to limit the parties' time to complete privilege challenges when such a deadline is not set for all discovery will prejudice the Receiving Party. *See* Pltfs' Ltr. Br. 2-3, 5-6. Any deadline challenging privilege logs or privilege assertions should be flexible and take into account the case schedule, particularly with respect to discovery deadlines.

---

[4] Throughout their submission, Defendants attempt to play up their "concessions" during the six months meet-and-confer process. The reality is that Defendants' opening position was extreme and patently unreasonable (such as service of only one privilege log at discovery's end, metadata only logs for all documents, limits on the Receiving Party's ability to challenge log entries, etc.). Their current position is only slightly better, but remains extreme, unreasonable, and unsupported.

### 2. Cap of Challenges

Plaintiffs do not believe arbitrary caps should be placed on the number of privilege challenges that may be brought at one time. Naturally, there is no counter proposal to a provision that is not warranted. Moreover, Defendants' submission informs Plaintiffs for the first time that they need this provision because "Plaintiffs should review those rolling logs on a rolling basis." (at 7). This tongue-in-cheek justification provides further support that Defendants' inclusion of this subparagraph/ limiter is unwarranted.

### 3. Timing for Responses to Challenges, Production of Downgrades, Clawback Privilege Logs

Plaintiffs and Defendants agree that some timing provisions regarding responses to challenges, production downgrades, and clawbacks are warranted, but the time periods for same are in dispute. Specifically, (1) Plaintiffs seek a 7-day response time after challenges are served by a Receiving Party on a Producing Party; (1) Plaintiffs propose a 10-day time period for agreed-to, negotiated, or ruled downgrades; and (3) Plaintiffs assert that 7-days is the appropriate time for receipt of a privilege log after material(s) is/are clawed back. For each of these points, Plaintiffs stand by their proposed privilege protocol for the reasons stated in their opening brief. It also bears mention that Plaintiffs' 7-day response period is followed by the requirement that the Parties meet and confer over the disputed privilege claims. The operation of the meet and confer requirement will inherently provide both Parties with an avenue to discuss the sufficiency of the written responses, and if necessary, an extension thereto.

### III. Defendants' Common Interest/Joint Defense Exemption Should Be Rejected

The common interest and the joint defense doctrines stem from the attorney-client privilege but are not true privileges that warrant privilege logging exclusion by the Defendants. The policy behind these doctrines is that attorney-client privilege will be maintained even when information is shared between separately represented parties. In these actions, the allegations against Defendants involve deception, unfairness, conspiracy, and in some cases fraud and racketeering by and among Defendants. The actions allege misconduct from 2003 to the present. Yet, Defendants seek a logging exemption for purported common interest / joint defense communications among them, with no subject matter limitations, from at least 2017 forward. This is a period during which substantial misconduct is alleged. Given these allegations, there is even greater need to log Defendants' documents that are claimed to be protected by the common interest and/or joint defense doctrines. Without limiting the foregoing, the lack of a subject matter limitation for the common interest / joint defense logging exemption is problematic because there is no reason to exempt responsive communications on topics unrelated to this litigation. Plaintiffs opening brief at 8 (citing The Sedona Conference, Commentary on Privilege Logs, 25 SEDONA CONF. J. at 274-75 & n.78).

Further, as outlined in Section III of Plaintiffs opening brief, and at Exhibit 3, the Rebate Aggregator Defendants and their related-PBM entity will not agree to separately log and serve privilege logs on Plaintiffs. Without separate logs, Plaintiffs cannot tell whether the common interest / joint defense is being asserted by the rebate aggregator or the PBM. Knowing which

entity is asserting the privilege will help Plaintiffs analyze the sufficiency of Defendants' privilege assertion.

The only argument Defendants made to support their proposed exemption is equivalence – that if State AG Plaintiffs get a common interest exemption, they should too. But Defendants' purported parity argument must fail. Specifically, the AG Plaintiffs' proposed common interest exemption is based in the reality that there are substantive differences between the AG Plaintiffs and Defendants. Most importantly, the AG Plaintiffs' "basic function is to litigate." *Nissen Foods (USA) Co. v. N.L.R.B.*, 540 F. Supp. 584, 586 (E.D. Pa. 1982) (quoting *Kent Corp. v. N.L.R.B.*, 530 F.2d 612, 623-24 (5th Cir. 1976)). This substantive difference is recognized in other privilege protocol orders, such as *In re Generics*, which exempts from logging "documents or communications sent solely between and among counsel in the Plaintiff States or state government agencies (including the State Attorneys General." ECF 551-3 at 37; *see* ECF 551-1, ECF 551-2. Correctly, *In re Generics*, does not include a reciprocal logging exemption for Defendants' common interest or joint defense claims.

### IV.     There Is No Reason to Add Federal Investigations to the Logging Exemption

The Parties also dispute the application of logging exemptions, generally, under the conflicting language proposed in footnote 3. Indeed, Defendants' proposal suggests that this litigation should be more broadly defined than previously agreed-to in the ESI Order (ECF 208 at 3) and, if adopted, would result in broader exemptions for all Defendants than any Plaintiff Track. Knowing that there are legitimate burden considerations when a party might have to log blatantly privileged materials, such as communications by and between outside litigation counsel, the Plaintiff Tracks agreed to include prior filed actions in this exemption definition. Yet, unlike Plaintiffs' proposed footnote, which provides a limiting parameter to litigation-related logging exemptions, Defendants' footnote leaves open many other options under which this logging exemption will likely apply. Similar to Plaintiffs' objection to Defendants' inclusion of logging exemption for common interest and joint defense doctrines, here too the Defendants' proposal permits an uncheckable exemption.

### V.     The Court Should Adopt the AG Plaintiffs' Logging Exemption Proposal

#### A. AGO-to-AGO Communications Should Be Exempt From Logging

The AG Plaintiffs' proposal exempting certain AGO-to-AGO communications from logging is supported by the law and past practice. Defendants' arguments to deviate from past-practice should be rejected because Defendants' proposal is based on a stricter hurdle than utilized by courts.

1. **AG Plaintiffs Do Not Need to Demonstrate that All AGO-to-AGO Communications Are Privileged In Order To Obtain Their Requested Exemption**

Contrary to Defendants' contentions, ECF 549 at 9, courts do not require proof that *all* investigation and litigation communications are privileged to allow a logging exemption. *See, e.g., Stein v. Collins*, 2025 WL 1248916, at *6 (D. Mass. Apr. 30, 2025) (rejecting request for a

privilege log for communications between counsel and client witnesses as an "unduly burdensome and likely fruitless task").

For instance, the Eastern District of Pennsylvania held that documents prepared in anticipation of litigation do not need to be logged where "[t]he burdens of such a [privilege review] process, in terms of time and money spent in a laborious privilege review, would far exceed any likely benefit, in terms of relevant documents that for some reason escape privilege or work product protection." *Aetna Inc. v. Mednax, Inc.,* 2019 WL 6250850, at *7 (E.D. Pa. Nov. 22, 2019). Likewise, the District Court for the District of Columbia rejected an argument that a responding party was required to "establish" privilege to avoid creating a privilege log. *Hulley Enters. v. Baker Botts LLP*, 286 F. Supp. 3d 1, 7-8 (D.D.C. 2017) (collecting privilege log exemption cases); *see also Xcentric Ventures, L.L.C. v. Borodkin*, 934 F. Supp. 2d 1125, 1147 (D. Ariz. 2013) (stating in the context of a third party subpoena that "requiring [responding party] to create a massive privilege log just so [plaintiff] can obtain the small slice of information that may be relevant and non-privileged places an undue burden on [responding party].").

As discussed in the AG Plaintiffs' opening brief, concerns about chilling future privileged exchanges and disclosure of attorney work product and litigation strategy are relevant to the burden analysis. ECF 551 at 3, 8-9; *see Grider v. Keystone Health Plan Cent., Inc*., 580 F.3d 119, 139 n.22 (3d Cir. 2009) (concerns about chilling privileged communications); *Colibri Heart Valve LLC v. Medtronic CoreValve LLC*, 2021 WL 6882375, at *3 (C.D. Cal. Dec. 6, 2021) (concerns about chilling privileged communications and disclosing attorney strategy). These concerns are sufficiently paramount that courts do not require a party to prove that all investigation and litigation communications are privileged to obtain a logging exemption. *See, e.g.*, *Mon Cheri Bridals, LLC v. Cloudflare, Inc.,* 2021 WL 1222492, at *3 (N.D. Cal. Apr. 1, 2021) (declining "to order Plaintiffs to log their communications with outside counsel that were retained to represent them in this case, regardless of whether the communications were before or after the date the complaint was filed" because the communications "are so overwhelmingly likely to be privileged and work product that requiring Plaintiffs to log them all is a pointless waste of time."); *Vasudevan Software, Inc. v. Int'l Bus. Mach. Corp.*, 2010 WL 3629830, at *5 (N.D. Cal. Sept. 14, 2010) (exempting pre-complaint from logging because limiting a logging exemption to post-complaint materials would be "unfair")

Under the appropriate standard that considers burden and efficiency, the AG Plaintiffs' proposal should be adopted.

> **2. There Is Little Benefit to Logging Because AGO-to-AGO Communications related to Investigations and Litigation Are Not Responsive to the Plaintiff Fact Sheet**

Defendants' argument for document-by-document logging is further undermined given the speculative relevance of AGO-to-AGO communications regarding investigations or litigation. Tellingly, nowhere in their brief do Defendants explain the relevance of AGO-to-AGO communications or how they might utilize those communications to support their case. Nor could they. None of the Requests for documents in the State AG Track Plaintiff Fact Sheet (PFS) seek AGO-to-AGO communications. ECF 349 (State AG Track PFS).

The AG Plaintiffs acknowledge the Court suggested documents related to insulin pricing investigations might be a subject for discovery after the PFS phase. ECF 291 at 6; *see* ECF 335 at 7 (rejecting Defendants' proposed question 42 in the State AG Track PFS). However, AGO-to-AGO communications are not a proper subject of discovery at any time. An AGO attorney's privileged and protected communications regarding its insulin pricing investigation or litigation are irrelevant to this action. For instance, in an Eighth Amendment excessive use of force case, the Eastern District of California refused to require prison defendants to turn over their internal analysis because an analysis by "prison staff regarding whether Defendant(s) used excessive force on Plaintiff" has "little, if any, relevance to this case because that question is one for the jury and the conclusion of the prison factfinder(s) is not relevant and will likely be subject to exclusion in any event." *Jones v. Ochoa*, 2022 WL 2160768, at *3 (E.D. Cal. June 15, 2022); *see also Hirst v. Inverness Hotel Corp.,* 544 F.3d 221, 226 & 227 n.8 (3d Cir. 2008) ("[S]eldom will be the case when a lay opinion on an ultimate issue will meet the test of being helpful to the trier of fact.") (citation omitted).

### 3. Logging Investigation and Litigation Communications Will Provide Little Benefit Because the Communications Are Likely Privileged

Defendants' primary argument for document-by-document logging of litigation and investigation materials is that the common interest doctrine might be disputed for some AGO-to-AGO communications. ECF 549 at 9. Defendants, however, over-estimate the likelihood of a privilege dispute because they ignore the breadth of federal work product and choice of law principles.

#### a) Work Product and Attorney Client Privilege Protect Communications with Non-Litigating AGOs

Defendants' brief contains no discussion of attorney client privilege or the work product doctrine. But, as set forth in detail in AG Plaintiffs' opening brief, AGO-to-AGO communications related to investigations and litigation are so-protected, even absent consideration of whether a common interest exists. ECF 551 at 4-8 (citing, e.g., *In re Generic Pharms. Pricing Antitrust Litig.,* 2024 WL 3843589, at *2 (E.D. Pa. Feb. 6, 2024));[5] *Grand River Enter. Six Nations, Ltd. v. Pryor*, 2008 WL 1826490, at *3-8 (S.D.N.Y. Apr. 18, 2008) (finding memoranda, agendas, emails, and other documents exchanged among numerous AGOs, including non-litigating AGOs, related to a joint enforcement matter are protected from discovery by the attorney client privilege and work product doctrine).[6] This protection is

---

[5] Mississippi and many other State AG Track Plaintiffs are parties to *In re Generic Pharms. Pricing Antitrust Litig.* 394 F. Supp. 3d 509, 514 n.7 (E.D. Pa. 2019).

[6] *Grand River* demonstrates the futility of logging AGO-to-AGO communications. There, the plaintiff selected documents on the defendant AGOs' privilege logs for the Court to review in camera. The bulk of the documents selected were memos, agendas, analyses, seminar materials, call notes, and emails involving a large AGO tobacco multistate working group, including AGOs that were not parties to the case. After reviewing the documents and submissions from the parties, the court systematically rejected the plaintiff's arguments, finding that the multistate documents and communications were attorney client privilege and "core" work product. Hence, AGO investigation and litigation materials are typically exempted from logging because they are

7

consistent with state laws that encourage, and sometimes require, AGO-to-AGO coordination. ECF 551 at 9-10. Further, this protection is recognized in multiple, recent AGO logging exemptions entered by MDL courts. ECF 551-1, 551-2, 551-3. For this reason alone, the Court can and should adopt the AG Plaintiffs' proposal.

### b) Communications with Non-Litigating AGOs are Also Protected by the Common Interest Doctrine

Ignoring that work product and attorney client privilege protections are alone sufficient, Defendants' brief makes two arguments based on the common interest doctrine. ECF 549 at 9. First, Defendants argue that two states (Mississippi and Texas) allegedly limit common interest to litigating parties, and so there can be no AG Plaintiff common interest exemption for pre-suit communications or those involving non-litigating AGs. *Id.* Second, Defendants suggest the common interest doctrine might not protect communications with non-litigating AGOs because the non-litigating AGOs "have never filed suit and may have no intention of ever doing so." *Id*. Defendants are wrong on both fronts for several reasons.

Defendants' state law argument is a red herring—work product protections are governed by *federal* law. Fed. R. Civ. P. 26(b)(3)(A). Federal defenses are also governed by *federal* law. Fed. R. Evid. 501. And federal law recognizes the common interest doctrine outside of litigation. *TD Bank, N.A. v. Hill*, 2014 WL 12617548, *2, 3 (D.N.J. Aug. 20, 2014) (finding that the common interest doctrine "prevents waiver of the attorney-client privilege and work-product doctrine when otherwise privileged communications are shared with a third party" and applies "outside of the litigation context"). Thus, AGO-to-AGO exchanges of work product and federal defenses related to investigations and litigation are clearly covered by the common interest doctrine, regardless of litigation status. *Grand River Enter.*, 2008 WL 1826490, at *3 (memorandum relating to litigation and prepared by multistate working group of AGOs, including non-parties, held to be "at the 'core' of the protection given by the work product doctrine" and that the protection was not waived because non-party AGO shared a common interest).

Further, because AGO-to-AGO investigation and litigation communications are presumptively work product, and because the AG Plaintiffs do not have to establish that every communication is protected to support their proposed exemption, the Court does not need to consider individual state common interest laws. To the extent the Court considers individual state laws, all AG Plaintiffs' state laws recognize common interest and most of them—like federal law—expressly apply the common interest doctrine outside of litigation: Arizona, California, Illinois, Indiana, Kansas, Louisiana, Massachusetts, Montana, Puerto Rico, and Utah.[7] By

---

presumptively privileged and there is little risk relevant information will not be disclosed. ECF 551-1, 551-2, 551-3.

[7] *Arizona Indep. Redistricting Comm'n v. Fields*, 75 P. 3d 1088, 1100 (Ariz. Ct. App. 2003) (Arizona); *OXY Res. Cal. LLC v. Superior Court*, 115 Cal. App. 4th 874, 889 (Cal. Ct. App. 2004) (California); *Dexia Credit Loc. v. Rogan*, 231 F.R.D. 268, 273 (N.D. Ill. 2004) (Illinois); *Groth v. Pence*, 67 N.E.3d 1104, 1119 (Ind. Ct. App. 2017) (Indiana); *Coe v. Cross-Lines Ret. Ctr., Inc.*, 2022 WL 17338289, at *7 & n.3 (D. Kan. Nov. 30, 2022) (Kansas); LA C.E. Art. 506(B)(3) (Louisiana); *Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc.*, 870 N.E.2d 1105,

agreement, such as a common interest agreement, AGOs can select a protective state law to govern their investigation communications. *See 3Com Corp. v. Diamond II Holdings, Inc.*, 2010 WL 2280734, at *5 (Del. Ch. May 31, 2010) (looking to contract for choice of law analysis regarding common interest privilege).

But even without a contractual choice of law clause, under conflict of law principles, the common interest doctrine can protect communications as long as one state's common interest doctrine applies. *See Ford Motor Co. v. Leggat,* 904 S.W.2d 643, 647-48 (Tex. 1995) (following Restatement (Second) of Conflict of Laws § 139 to apply Michigan privilege law). When state law applies the rule of decision, courts apply the choice of law rules of the forum state. *Samuelson v. Susen*, 576 F.2d 546, 549 (3d Cir. 1978). When a case with state law claims is transferred for convenience, the choice of law rules of the original forum state continue to apply. *See Van Dusen v. Barrack*, 376 U.S. 612, 635-37 (1964) (transfer of diversity action under 28 U.S.C. § 1404 is "a change of courtrooms").

Defendants' argument about the privilege laws of two states does not undermine Plaintiffs' proposed logging exemption, even for communications involving those states.

Next, Defendants contend that non-litigating AGOs "have never filed suit and may have no intention of ever doing so." ECF 549 at 9. But the fact an AGO is not participating in the MDL does not mean it lacks a community of interest with the litigating AGOs to investigate and enforce state consumer protection laws. *Grand River Enter.*, 2008 WL 1826490, at *3. Further, the common interest doctrine does not require identical interests. *TD Bank, N.A.,* 2014 WL 12617548, *4 ("The interest of every party need not be identical. Instead, the focus is on whether the parties have a common purpose.") (citations omitted); Rest. (3d) of Law Governing Lawyers § 76, cmt. e (Am. L. Inst. 2000) ("The interests of the separately represented clients need not be entirely congruent."); *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 366 (3d Cir. 2007) (stating that where "clients have separate attorneys, courts can afford to relax the degree to which clients' interests must converge"). Moreover:

- AGOs have drug pricing actions outside this MDL that relate to claims and issues in the State AG Track cases. *E.g.*, *Minnesota v. Eli Lilly & Co.*, D.N.J. 18-cv-14999(pending from Oct. 2018-Apr. 2025); *Hawai'i v. CaremarkPCS Health, LLC*, D.Hi. 23-cv-464; *Vermont v. Evernorth Health, Inc.*, D. Vt. 24-cv-01103; *Nessel ex. rel. People of the State of Michigan v. Eli Lilly & Co.*, App. for Leave to Appeal, 2023 MI S. Ct. Briefs LEXIS 408 (Aug. 23, 2023 Mi. S. Ct.); *Ohio ex rel. Dave Yost v. Ascent Health Services, LLC*, 6th Cir. 24-3033; *People of the State of Michigan v. Express Scripts, Inc.*, E.D. Mich. 25-cv-11215.[8]

---

1110-12 (Mass. 2007) (Massachusetts); *Am. Zurich Ins. Co. v. Montana Thirteenth Jud. Dist. Ct.*, 280 P.3d 240, 245 (Mont. 2012) (Montana); P.R. RULE EVID. 503(a)(4) (Puerto Rico); UTAH R. EVID. § 504(b)(2)(a) (Utah). Even in the absence of contractual choice of law, the Court would not need to decide which of these laws applies given that there is no dispute among these states that pre-litigation communications can be covered by the common interest doctrine.

[8] Defendants contend that Mississippi law limits application of the common interest privilege to "co-parties" in pending litigation. ECF 549 at 9 (citing a federal district court case). However,

9

- AGOs have common legal interests in discrete issues that are likely to arise in concurrent or future AGO litigations. As just one example, AGOs share a common legal interest in the matter before the Court—logging exemptions for multistate investigations. *See TD Bank, N.A.,* 2014 WL 12617548, *4 (recognizing that a common interest "may be legal, factual, or strategic in character").

- Just because an AGO has not filed suit does not mean it will not sue in the future or join in a future settlement. To illustrate: in an antitrust action involving anti-anxiety medications, after ten states filed an initial complaint, an additional twenty-two states joined the litigation. *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 373 (D.D.C. 2002). The remaining eighteen states joined in a fifty-state settlement that was later reached. *Id.* Even in these MDL proceedings, since 2023, the number of AGOs litigating in the MDL has doubled.

### 4. AGO-to-AGO Logging Will Impose an Undue Burden on AG Plaintiffs and Risk Disclosing Investigation and Litigation Strategies

Defendants do not dispute that some AG Plaintiffs may have years of investigation related communications. ECF 551 at 8-9 n.8. This is precisely the situation where logging exemptions are approved. *See Aetna*, 2019 WL 6250850, at *7.

Such concerns are even more heightened in the AGO context because AGO-to-AGO coordination in pre-lawsuit investigations in consumer protection (and other) matters is encouraged, and in some cases is mandatory. ECF 551 at 9-10 (citing state statutes on multistate coordination). Also, AGO-to-AGO coordination serves the public interest and conserves public resources by avoiding duplicative work. As such, AGO-to-AGO communications, including communications when one or more AGO has not yet filed suit, are typically exempt from logging requirements. ECF 551-1, 551-2, 551-3.

### B. AGO-to-Non-Client Agency Communications Should Be Exempt From Logging

Defendants also object to exempting AG Plaintiff investigation and litigation communications with agencies that the AG does not represent in this MDL. ECF 549 at 9-10. Defendants complain that "no privilege would attach to communications," and yet they "would be in the dark without any knowledge *whatsoever* about these communications." *Id.* (emphasis in original).

As to the first point, Defendants' position ignores the breadth of the federal work product doctrine. *See Williams v. Netflix, Inc.*, 2024 WL 4854575, at *3 (D. Del. Nov. 21, 2024) ("'[I]t is only in cases in which the material is disclosed in a manner inconsistent with keeping it from an

---

Miss. R. Evid. 502(b)(3), which recognizes a common interest privilege for attorney-client communications with lawyers for "another party," is not limited to "co-parties" in a single matter. Indeed, the Mississippi Supreme Court has rejected this interpretation of the Rule and applied the common interest privilege to documents generated "in response to actual *or anticipated* litigation" and exchanged between counsel in *different cases*. *Hewes v. Langston*, 853 So. 3d 1237, 1249 (Miss. 2003) (emphasis added).

10

adversary that the work-product doctrine is waived.'") (quoting *In re Chevron Corp.*, 633 F.3d 153, 165 (3d Cir. 2011)).

As to the second point, Defendants' argument suffers from the same defect as their arguments regarding AGO-to-AGO communications—it does not account for the fact that such agency communications are likely protected by the common interest doctrine, would have little to no relevance, and the burdens and risks of logging are great.

**C. Category Logging Is Acceptable for Non-Exempt Communications**

Defendants raise three objections to the alternative categorical log provision of the AG Plaintiffs' proposal: (1) it was raised "months" into the negotiation process, (2) it is not reciprocal, and (3) categorical logs will not provide Defendants sufficient information to assess privilege.

Defendants' first objection is not a basis to categorical logging. As Defendants seem to concede, the AG Plaintiffs proposed categorical logging to bridge the gap between the parties' competing logging exemption proposals, which evolved over time. ECF 549-3 (identifying categorical logs as a "compromise"). This proposal was also in line with this Court's instruction to consider categorical logging. *See* ECF 186, Order Regarding Dispute Over ESI Protocol, at 13 n.4 (directing the parties in MDL No. 3080 to consider categorical logs, or other grouping as "the format of appropriate privilege logs") (citing *In re Actos Antitrust Litig.*, 340 F.R.D. 549, 553 (S.D.N.Y. 2022)) (emphasis added).

Defendants' second objection—that the exemption is not reciprocal—ignores reality. There are key differences between the AG Plaintiffs and private litigants. Unlike private litigants, the AG Plaintiffs are law enforcement officers whose "basic function is to litigate." *Kent Corp. v. N.L.R.B.*, 530 F.2d 612, 623-24 (5th Cir. 1976). Unlike private litigants, there are additional privileges available to AGOs and public policies underlying those privileges. *See, e.g.*, CAL. EVID. CODE § 1040 (official information privilege); *Vandelay Entm't, LLC v. Fallin*, 343 P. 3d 1273, 1279 (Okla. 2013) (recognizing deliberative process privilege); *Stigler v. Flint*, 391 S.W.3d 751, 754 (Ky. 2013) (recognizing qualified privilege over reports to law enforcement agencies for investigation, including the attorney general's office which is an "investigatory body"). And unlike private litigants, AGOs are encouraged, and in some cases required, to work together and share investigatory materials with other law enforcement agencies. ECF 551 at 9-10. For these reasons, AGOs are typically provided with unique exemptions that do not apply to private litigants. ECF 551-1, 551-2, 551-3.

Defendants' third objection conflicts with cases recognizing that categorical logging is an approved method for managing both the burden of privilege logging and the risk of disclosing work product through a privilege log. The seminal categorical privilege log case is *Securities & Exchange Commission v. Thrasher*, 1996 WL 125661 (S.D.N.Y. Mar. 20, 1996). In *Thrasher*, the Securities and Exchange Commission (SEC) sought "all communications between defense counsel concerning the lawsuit." *Id.* at *1. The SEC, however, made "no effort to explain what benefit it will gain from a detailed document-by-document log." *Id.* at *2. The Southern District of New York noted that the SEC sought "wholesale production of documents that are ordinarily covered by the work-product rule, and, if the joint-defense principle is applicable, very probably

11

by the attorney-client privilege." *Id.* at *1. The court was concerned that creating a privilege log would be an "expensive project" and "might reveal some aspects of [defendant's] litigation strategy." *Id*.

The court thereafter found the following information was sufficient for the SEC to evaluate privilege: (1) a representation that "all of the documents in question reflect communications between defense attorneys;" (2) "these documents have been kept in confidence;" (3) "an identification of the time period encompassed by the withheld documents;" (4) "a listing of the individuals who were authors or addressees or were copied on the documents;" and (5) whether the documents "were prepared to assist in anticipated or pending litigation" or were communications by/between counsel, clients, and their representatives "for the purpose of facilitating the rendition of legal services to the client." *Id.* at *2.

Courts follow *Thrasher* in situations like the instant one. *See, e.g., United States v. Magnesium Corp. of Am.*, 2006 WL 1699608, at *5 (D. Utah June 14, 2006) (permitting categorical logging because (1) "compilation of a detailed privilege log identifying each document generated since 2001 undoubtedly would be an expensive and time-consuming undertaking," (2) "most of the documents at issue would be protected from disclosure by the work product privilege, the attorney-client privilege, or the joint defense privilege," and (3) "Defendants contend that preparation of a detailed log would likely cause the disclosure of privileged information concerning their litigation strategy, and issues that have been discussed by defendants in connection with their defense strategy."). Defendants provide no specifics about why they need more information than what was required in *Thrasher* to evaluate privilege.[9]

## VI. Conclusion

For the foregoing reasons, Plaintiffs request the Court adopt their privilege log proposal.

---

[9] *Thrasher* and *Magnesium Corp.* were cited in an amicus brief the Third Circuit agreed with in *Grider.* 580 F.3d at 139 n.22 ("[W]e agree with Amicus that a rule requiring creation of an ongoing log of all post-complaint privileged communications would have a chilling effect on the attorney-client relationship."). The amicus cited *Thrasher* and *Magnesium Corp. of America* for the proposition that "Courts also have recognized that requiring defendants to disclose identifying information about attorney-client communications relating to the very lawsuit in which the discovery is sought would risk disclosing litigation strategy." Brief of Amicus Curiae Philadelphia Bar Ass'n, 2009 WL 7196354, at *12 (Jan. 20, 2009).

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td><i>/s/ Joanne Cicala</i><br>Joanne Cicala<br><br><i>Liaison Counsel for<br>State Attorney General Track</i></td><td><i>/s/ David R. Buchanan</i><br>David R. Buchanan<br><br><i>Liaison Counsel for<br>Self-Funded Payer Track</i></td></tr>
<tr><td><i>/s/ Matthew Gately</i><br>Matthew Gately<br><br><i>Liaison Counsel for<br>Class Action Track</i></td><td></td></tr>
</table>

Enclosures

cc:   Hon. Brian R. Martinotti, U.S.D.J. (via ECF)
      All Counsel of Record (via ECF)