# Cicala Law Firm PLLC

May 29, 2025

**VIA ECF**

| | |
|---|---|
| Honorable Brian R. Martinotti, U.S.D.J. | Honorable Rukhsanah L. Singh, U.S.M.J. |
| United States District Court of New Jersey | United States District Court of New Jersey |
| Frank Lautenberg Post Office & U.S. Courthouse | Clarkson S. Fisher Fed. Bldg. & U.S Courthouse |
| 2 Federal Plaza, 3rd Floor | 402 East State Street |
| Newark, New Jersey 07102 | Trenton, New Jersey 08608 |

**Re: *In re Insulin Pricing Litigation*, Case 2:23-md-3080 (BRM/RLS)**

Dear Judges Martinotti and Singh:

Plaintiffs request leave to file a Motion for Permission to Propound Requests for Admission to Defendant Novo Nordisk ("Novo") (the "Motion"). These RFAs will confirm: (1) Novo voluntarily contracted to sell certain of its At-Issue Drugs to the Department of Veterans Affairs ("VA"); and (2) the prices Novo charged for At-Issue Drugs under its VA contracts were substantially lower than its WAC prices for the same drugs.

For example, the RFAs ask Novo to admit that between 2005 and 2020, Novo's unrebated VA Price for Novolog vials averaged $22. During that same time period Novo's WACs (i.e., list prices) for Novolog rose to $289.36. Likewise for Novolin, the unrebated VA price averaged approximately $5 per vial, whereas the WAC price increased up to $137. The attached **Figure 1** illustrates the disparity between Novo's VA Prices and WACs for Novolog and Novolin between 2005 and 2020.

On April 28, 2025, Plaintiffs informed Novo that they intended to seek leave from the Court to serve these RFAs and requested Novo agree not to oppose. Novo refused and took the position that CMO #13 needed to be amended to include Master RFA limitations. Novo's position is incorrect. CMO #13 expressly states that except as otherwise provided in any CMO, "discovery shall be governed by the applicable provisions of the Federal Rules of Civil Procedure." CMO #13 at 1. The CMOs entered in this case are silent on RFAs and there are no limits in the Federal Rules on the number of Requests that a party may serve. *See* F.R.C.P. 36. Given the importance and relevance of the requested information, respectfully the Court should grant Plaintiffs' request to file its Motion for Permission to Propound Requests for Admission.

## Summary Background

Under the Insulin Pricing Scheme, Defendant PBMs and Manufacturers agreed that the Manufacturers would compete for formulary position for the At-Issue Drugs by rebate[1] competition instead of list price competition. While the agreements to engage in rebate competition freed Manufacturers from traditional *downward* list price competition, it instead required the Manufacturers to both increase their rebates *and* increase their WAC prices (or sacrifice profits) to

---

[1] "Rebates" for the purposes of this Letter, refers to all payments that the Manufacturers make to the PBMs that are based on a percentage of WAC regardless of the name that the PBM affixes to the fee (formulary rebate, price protection payment, administrative fee, etc.).

avoid being eliminated from the market. Under the rebate competition agreements, the Manufacturers and PBMs created a system where the price never went down because that was most profitable for both sets of Defendants. As a direct result of this unlawful system, insulin prices skyrocketed between 2005 and 2023.

Both Defendant groups' participation in the Insulin Pricing Scheme *caused, encouraged* and *allowed* the PBMs and Manufacturers to artificially inflate the WACs of the At-Issue Drugs and to receive unlawful profits from these artificial WACs. The Manufacturers obviously benefitted from the scheme. Novo Nordisk's profit per vial of Novolog almost tripled even though the PBMs treated Novolog and its ostensible competitor, Humalog, as commodities. The artificially inflated prices also enriched the PBMs, who received (often secretly) unlawful Manufacturer payments calculated on the basis of WAC. The rate at which the Manufacturers kicked back payments to the PBMs increased by more than 800% between 2005 and 2020.

At trial, Plaintiffs will prove, among other things, the "but-for" prices for the At-Issue Drugs— i.e., prices which would have prevailed had the PBMs and the Manufacturers not engaged in the Insulin Pricing Scheme. The "but-for" prices are mere fractions of the WACs generated by the Insulin Pricing Scheme. Diabetics and payors nationwide have been injured by the access that has been denied, and the difference between the prices they experienced and the "but-for" prices they could, would, and should have experienced without the Insulin Pricing Scheme.

The VA National Contract Prices offered by Novo (the subject of the instant RFAs) are relevant to this discussion. From 2005 to the present, the VA recognized a competitive therapeutic class of rapid acting insulins consisting primarily of Novo's Novolog and Lilly's Humalog. The VA (like the PBM Defendants) deemed these drugs to be therapeutically interchangeable (i.e., commodities). The VA solicited sealed bids for these insulins from Novo and Lilly. The bids were for unrebated prices for exclusive 5-year VA Contracts covering up to 40 million lives. Both Novo and Lilly actively pursued the VA business, and Novo won the VA Contract from 2005-present.

The VA Prices for Novolog provide on-point examples of what rapid acting insulin prices could, would, and should have been "but-for" the unlawful actions of the PBMs and Manufacturers to artificially inflate those prices through the Insulin Pricing Scheme. The VA Price involves the *same* manufacturers, the *same* drugs, the *same* packaging, the *same* distributors, the *same* time period, the *same* cost of goods sold, the *same* distribution fees, the *same* consequential volumes, the *same* therapeutic category, the *same* therapeutic interchangeability within the therapeutic category, and the *same* exclusivity as the commercial market. Indeed, the only difference between the VA and commercial worlds relevant to the price disparity is that the VA Prices resulted from authentic, unbiased, and unrebated *price* competition, whereas the artificially inflated WACs resulted from the Insulin Pricing Scheme with *rebate competition* instead of *list price competition* (1) among Manufacturers whose prices were not confined by list price competition; and (2) rigged by conflicted PBMs who earned more from higher prices.

The attached **Figure 2** shows the profits Novo realized *even at the reduced VA Prices*. Consider then Novo's profit at the artificially inflated Insulin Pricing Scheme WACs. As explained in the Motion, in the commercial market, Novo netted $96.93 for every Novolog vial it sold at the 2017 artificially inflated Insulin Pricing Scheme WAC, after paying rebates and other discounts. This is a gross profit margin ratio of 98% — 48 times Novo's cost of goods sold.

Using the 2017 VA Price Novolog price of approximately $20 as a 'but for' price absent Defendants' misconduct, Novo earned approximately $75 in unlawful excess profit for every Novolog vial it sold at the artificially inflated WAC prices (as explained further in the Motion), after paying rebates and other discounts. And that overcharge is for ***only one*** version of ***only one*** At-Issue Drug for ***only one*** year. Plaintiffs have alleged Defendants reaped unlawful profits for dozens of At-Issue Drugs over decades.

Last but not least, because the PBMs received rebates as a function of artificially inflated Insulin Pricing Scheme WACs, PBMs had excess profits through these rebates roughly an order of magnitude greater (8X on average) than they would have been at the VA Prices. And this does not even consider excess spreads realized by the PBMs and their affiliated pharmacies resulting from the artificially inflated Insulin Pricing Scheme WACs.

## Argument

The Novo RFAs are foundational to Plaintiffs' claims as they "bear on": Defendants' artificially inflated prices, Defendants' ability to profit even at vastly lower prices, the effect of Defendants' actions upon the market, the price of rapid acting insulin "but-for" the unlawful actions of the PBMs and Manufacturers, and the amount of damages inflicted on Plaintiffs and on the market in the form of artificially inflated prices. Plaintiffs' requests are clearly relevant and discoverable.

Moreover, there is minimal burden or expense involved in answering these Requests since Defendants already have access to all of the requested information. Far from imposing an undue burden, Plaintiffs' present requests are *the most efficient way* to narrow issues for trial to those which are genuinely contested. Plaintiffs' requests are written simply to establish various facts that are already matters of public record.

Plaintiffs asked Novo to agree to Plaintiffs' propounding of VA RFAs. Novo would not agree. Novo's position that CMO #13 needs to be amended is meritless. Because the CMOs are silent as to Requests for Admission, the Federal Rules apply and there are no limits to the RFAs that either party can serve. *See* CMO #13 at 1. Plaintiffs and Novo Nordisk attempted but were unable to negotiate an acceptable resolution. The parties are at impasse. Plaintiffs have established a good faith basis pursuant to CMO #17 to file their Motion for Permission to Propound Requests for Admission to Defendant Novo Nordisk.

Dated: May 29, 2025    Respectfully submitted,

*/s/ Matthew F. Gately*    s/ *Joanne Cicala*
Matthew F. Gately    Joanne Cicala
Liaison Counsel for Class Track    Liaison Counsel for State Attorney General Track

*/s/ David R. Buchanan*
David R. Buchanan
Liaison Counsel for Self-Funded Payer Track

## Figure 1: Novolog VA Prices (Pink Dotted Line) vs. Novolog WAC Prices (Blue Line)



## Novolin VA Prices (Pink Dotted Line) vs. Novolin WAC Prices (Blue Line)





Figure 2 shows for Novo's Novolog vials the cost of goods sold (orange area)[1] and the VA Prices/vial (blue curve). The area between the VA Price curve and cost of goods sold curve (green area) is Novo's profit per Novolog vial at the VA Price. For example, in 2017, Novo Nordisk's VA Price was $20.55/vial, and its cost of goods sold was $2.00/vial, resulting in a profit of $18.55/vial. At the VA anticipated volume of 2,140,651 vials, Novo would have earned $39,709,076 on Novolog vials, and a gross profit margin of 90%.[2]

---

[1] Novo Nordisk's costs of goods sold for Novolog are trivial. "The Price of Insulin: A Q&A with Kasia Lipska." Available at https://medicine.yale.edu/news-article/the-price-of-insulin-a-qanda-with-kasia-lipska/. Figure 2 assumes a $2/vial estimated average cost of goods sold for Novolog for 2005-2020. Novo Nordisk's actual cost of goods sold may be lower. Of course, Novo Nordisk can disclose its actual cost of goods sold for Novolog if it varies materially from $2/vial.

[2] The formula for gross profit margin is: Gross Profit Margin = (Revenue - Cost of Goods Sold) / Revenue * 100. *United States v. Foster*, 728 F. App'x 112, 118 (3d Cir. 2018) states: "'Gross margin,' also known as 'gross profit margin,' is defined as the percentage value derived from the following formula: sales minus cost of goods, and that amount divided by sales. Gross Profit Margin, Black's Law Dictionary (10th ed. 2014); (App. at 153.) The gross margin calculation makes 'no adjustment ... for additional expenses[.]'" Gross Profit Margin, Black's Law Dictionary.