Matthew E. Beck, Esq.
Kathryn S. Pearson, Esq.
Renée M. Shafran, Esq.
CHIESA SHAHINIAN & GIANTOMASI PC
105 Eisenhower Parkway
Roseland, N.J. 07068
Telephone: (973) 325-1500
mbeck@csglaw.com
kpearson@csglaw.com
rshafran@csglaw.com
*Attorneys for Non-Party Compass Lexecon LLP*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | Case No. 2:23-md-3080 (BRM) (RLS) <br> MDL No. 3080 <br><br> Hon. Brian R. Martinotti, U.S.D.J. <br> Hon. Rukhsanah L. Singh, U.S.M.J. |

**THIS DOCUMENT RELATES TO: ALL ACTIONS**

**NON-PARTY COMPASS LEXECON LLP'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL RESPONSES TO COMPASS LEXECON SUBPOENA TO PRODUCE DOCUMENTS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................................iii

PRELIMINARY STATEMENT ..................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 3

LEGAL ARGUMENT..................................................................................................................... 7

      1.      COMPASS CANNOT WAIVE PRIVILEGES HELD BY THE PBM
            DEFENDANTS. ...................................................................................................... 7

      2.      REQUIRING   COMPASS   TO   PRODUCE   THE   PBM
            DEFENDANTS' DOCUMENTS IS PREMATURE AND UNDULY
            BURDENSOME. ...................................................................................................... 8

      3.      PLAINTIFFS' SUBPOENA IS FACIALLY OVERBROAD................................ 13

CONCLUSION.............................................................................................................................. 14

# TABLE OF AUTHORITIES

**CASES**

*Andra Grp., LP v. JDA Software Grp.*,
    314 F.R.D. 444 (N.D. Tex. 2015) ............................................................ 13

*Columbus Life Ins. Co. v. Wilmington Tr., N.A.*,
    344 F.R.D. 207 (D.N.J. 2023) ................................................................. 8

*Deibler v. SanMedica Int'l, LLC*,
    Civ. No. 19-20155, 2021 WL 6136090 (D.N.J. Dec. 29, 2021) ................ 12

*First Sealord Sur v. Dunkin & Devries Ins. Agency*,
    918 F. Supp. 2d 362 (E.D. Pa. 2013) ...................................................... 8

*Gould v. O'Neal*,
    Civ. No. 17-100, 2019 WL 4686991 (D.N.J. Sept. 26, 2019) ............... 8, 13

*Haines v. Liggett Grp., Inc.*,
    975 F.2d 81 (3d Cir. 1992) ...................................................................... 8

*Housemaster SPV LLC v. Burke*,
    Civ. No. 21-13411, 2022 WL 17904254 (D.N.J. Dec. 23, 2022) ................ 9

*In re Centrix Fin., LLC*,
    Civ. No. 12-6471, 2012 WL 6625920 (D.N.J. Dec. 18, 2012) ................... 9

*In re Lazaridis*,
    865 F. Supp. 2d 521 (D.N.J. 2011) .......................................................... 13

*In re Novo Nordisk Secs. Litig.*,
    530 F. Supp. 3d 495 (D.N.J. 2021) ....................................................... 8, 9

*Kanefsky v. Honeywell Int'l Inc.*,
    Civ. No. 18-15536, 2020 WL 832918 (D.N.J. Feb. 20, 2020) ................... 7

*Korotki v. Cooper Levenson, April, Niedelman & Wagenheim, P.A.*,
    Civ. No. 20-11050, 2022 WL 2191519 (D.N.J. June 17, 2022) .......2, 9, 10, 13

*Manning v. Herman*,
    Civ. No. 13-1426, 2016 WL 6135626 (M.D. Pa. Oct. 21, 2016) ............... 9

*New Life Homecare, Inc. v. Blue Cross Ne. Pa.*,
    Civ. No. 06-2485, 2012 WL 580198 (M.D. Pa. Feb. 22, 2012) ............... 10

*Saller v. QVC, Inc.*,
    Civ. No. 15-2279, 2016 WL 8716270 (E.D. Pa. June 24, 2016) ............... 13

*Smarte Carte, Inc. v. Innovative Vending Sols., LLC*,
    Civ. No. 19-8681, 2024 WL 4024904 (D.N.J. Feb. 28, 2024) ................... 9

**RULES**

FED. R. CIV. P. 26 ........................................................................................ 8

FED. R. CIV. P. 45 ............................................................................ 8, 12, 13

iii

## PRELIMINARY STATEMENT

Plaintiffs[1] served non-party Compass Lexecon LLC ("Compass") with a broad subpoena to produce documents relating to a report, entitled the Carlton Report, that it prepared as part of a privileged engagement for its clients, counsel for the PBM Defendants.[2]  Plaintiffs now seek to compel Compass's response to the Subpoena.  But there are significant problems with the Subpoena that support the denial of Plaintiffs' Motion to Compel.

First, Plaintiffs seek privileged materials.  As set forth in detail in the PBM Defendants' opposition to Plaintiffs' Motion to Compel, because the PBM Defendants retained Compass under privilege and in anticipation of litigation, the underlying documents and Compass's work-product are protected from discovery as privileged, even though a report about Compass's work for the PBM Defendants has been made public.  Moreover, Compass cannot waive the PBM Defendants' privilege, nor has it done so.

Second, most of what Plaintiffs seek from Compass are materials that they can obtain directly from the PBM Defendants.  By seeking those materials from Compass in the first instance, Plaintiffs are sidestepping the discovery process in this complicated MDL.  Moreover, the MDL discovery is being carefully managed by the Court.  Presently, the parties are still in the midst of

---

[1] Plaintiffs the States of Arizona, Arkansas, Illinois, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Montana, Oklahoma, and Utah issued the Subpoena.  The State Attorney General Track Plaintiffs, the Class Action Track Plaintiffs (Case No. 2:23-cv-20932), and the Self-Funded Payer Track Plaintiffs all bring the instant motion.

[2] The PBM Defendants are defined as CVS Health Corporation, CVS Pharmacy, Inc., Caremark Rx, LLC, Caremark, LLC, and Caremark PCS Health, LLC (collectively, "CVS"); Express Scripts, Inc., Evernorth Health, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Pharmacy Services, Inc., and Express Scripts Pharmacy, Inc., and The Cigna Group (collectively, "Express Scripts"); and United Health Group, Inc., Optum, Inc., OptumRx, Inc., and OptumInsight, Inc. (collectively, "OptumRx").

party discovery, including negotiating custodians, search terms, and data proposals, and the Court is actively overseeing this process. By seeking the PBM Defendants' documents from a non-party, rather than engaging directly with the PBM Defendants through the Court's sanctioned discovery process, Plaintiffs place an undue burden upon Compass to produce documents that Plaintiffs could directly request from the PBM Defendants.

Requiring Plaintiffs to first seek the requested materials from the PBM Defendants will result in significant efficiencies given that, beyond privilege issues, there are substantial scope, relevance, and confidentiality issues that must be addressed by the PBM Defendants before any production occurs. Because many of the requested documents in the Subpoena are the PBM Defendants' documents and the PBM Defendants are parties to this MDL, the PBM Defendants are better equipped to have these discussions. Once the parties work through those issues, with the Court's assistance as needed, any additional requests to Compass for non-privileged and relevant materials in its sole possession—if necessary—would be far less burdensome than responding to the Subpoena as currently constituted. *See Korotki v. Cooper Levenson, April, Niedelman & Wagenheim, P.A.*, Civ. No. 20-11050, 2022 WL 2191519, at *3 (D.N.J. June 17, 2022) (quashing overbroad third-party subpoena, in part "because it appears that several items can be more directly obtain[ed] from Defendants").

Third, Plaintiffs also place an undue burden on Compass through overly broad requests that are not tailored to this MDL. Plaintiffs' requests are not even limited to the relevant drugs.

Because of these issues, non-party Compass respectfully submits this memorandum of law in opposition to Plaintiffs' Motion to Compel Responses to Compass Lexecon Subpoena to Produce Documents. ECF No. 522. As set forth in greater detail below, Plaintiffs' Motion to Compel should be denied.

**STATEMENT OF FACTS**

Compass is an economic consulting company that was retained under privilege by counsel to the PBM Defendants in connection with the Federal Trade Commission's ("FTC") study of the PBM industry, and in anticipation of potential litigation against the PBM Defendants.  As part of its engagement, Compass worked to draft the Carlton Report.  *See* Certification of Joanne Cicala ("Cicala Cert.") Ex. 9, ECF No. 522-11 (the "Carlton Report").  As described from the outset of the Carlton Report, Compass relied on three broad categories of documents to prepare the Report: (1) materials that the PBM Defendants provided to the FTC as part of its Rule 6(b) inquiry (the "FTC Data"); (2) additional data that the PBM Defendants provided to Compass; and (3) publicly available information that Compass gathered.  *See* Carlton Report, at 1.  The FTC Data consists of information from the PBM Defendants about their top 100 drugs per year by dollar sales, the top 100 drugs per year by unit sales, and specialty drugs and rebated drug products from 2018 through 2022, and is in no way limited to the diabetes drugs at issue in this litigation.  *Id.* ¶ 161.  The publicly available information includes prior studies of the PBM industry that Compass independently collected.  *Id.* at 1 ¶ 59.

In the Carlton Report, Compass economists used this data, largely provided directly by the PBM Defendants in consultation with their counsel, to "analyze concerns that have been raised by commentators (including the Federal Trade Commission (FTC)) that PBMs contribute to the increasing costs of prescription drugs rather than helping to contain these costs."  *Id.* at 1.  Notably, Compass's study and the data provided by the PBM Defendants to Compass was not limited to the At-Issue Drugs.[3]

---

[3] The Subpoena broadly defines "At-Issue Drugs" as diabetes medications, including but not limited to insulin, glucagon-like peptide receptor agonists (GLP-1s), Admelog, Fiasp, Relion, Rezvoglar, Tanzeum, Insulin Lispro, Insulin Aspart, Insulin Degludec, Insulin Glargine, Apidra,

On October 7, 2024, Plaintiffs served Compass with a third-party subpoena in this matter. *See* Cicala Cert. Ex. 1, ECF No. 522-3 (the "Subpoena"). The Subpoena broadly seeks all "Documents and Communications related to the Carlton Report" for the time period January 1, 2011 to the present.[4] *Id.* at 9 ¶ 1. Plaintiffs have focused primarily on the production of the underlying data that Compass used for its analysis. *See* Cicala Cert. Exs. 4, 6.

But the Subpoena also includes multiple, more specific categories of documents that, as drafted, the PBM Defendants would clearly have in their possession. The Subpoena requests:

- "All engagement letters or agreements, retainer letters or agreements, consulting agreements, memoranda of understanding, or similar documents relating to the Carlton Report, including those describing the services to be performed, scope of work and responsibilities, compensation and payment terms, term and termination provisions, or confidentiality and nondisclosure obligations." Subpoena, at 9 ¶ 2;

- "All Documents and Communications exchanged between Compass Lexecon and any PBM Defendant relating to the Carlton Report." *Id.* ¶ 3;

- "All Documents and Communications exchanged between Compass Lexecon and any PBM Defendant relating to Manufacturer Payments." *Id.* ¶ 4;

- "All Documents and Communications exchanged between Compass Lexecon and any PBM Defendant relating to the At-Issue Drugs." *Id.* ¶ 5;

- "All Documents and Communications relating to [PBM Defendant] Express Script's lawsuit filed on September 17, 2024, in the United States District Court for the Eastern District of Missouri styled *Express Scripts, Inc. v. The Federal Trade Commission and Lina Khan*, Case No. 4:24-cv-01263 (E.D. Mo. Sept. 17, 2024)." *Id.* at 7 ¶ 9; and

---

Basaglar, Humalog, Humulin, Lantus, Levemir, Novolin, Novolog, Ozempic, Mounjaro, Xultophy, Rybelsus, Adlyxin, Soliqua, Semglee, Steglatro, Toujeo, Tresiba, Trulicity, and Victoza. *See* ECF No. 522-3 at 5.

[4] Within this first request, Plaintiffs seek (1) all documents that Compass received in connection with the Report, (2) all work from relating to the Report, (3) all communications and documents about methodologies and assumptions used in the Report, and (4) all of Compass's internal and external communications about the Report. *See* Cicala Cert. Ex. 1, at 9 ¶ 1.

- "Documents sufficient to show the remuneration Compass Lexecon received from [the PBM Defendants] related to the Carlton Report." *Id.* ¶¶ 10–12.[5]

Having received a Subpoena related to work it was hired under privilege by counsel to perform for the PBM Defendants, Compass notified the PBM Defendants it was served with the Subpoena. In response, the PBM Defendants informed Compass that they had not waived, and did not intend to waive, any applicable privileges relating to their engagement of Compass. Furthermore, and in response to the numerous requests in the Subpoena that requested materials from Compass that would also be in the PBM Defendants' possession, the PBM Defendants made clear that they were in discussions with Plaintiffs about the proper scope of party discovery. *See* Cicala Cert. Ex. 5, ECF No. 522-7.

On November 20, 2024, Compass served Plaintiffs with its Responses and Objections to the Subpoena in which Compass formalized its objections, including privilege, proportionality, and burden. *See* Cicala Cert. Ex. 2, ECF No. 522-4. Although Plaintiffs' Motion claims that Compass "served boilerplate objections to the MDL Subpoena," Compass's objections were far more specific than Plaintiffs' representation, and include the instant arguments. Pls.' Br. at 10; Cicala Cert. Ex. 2. Among the objections Compass interjected to specific requests in the Subpoena were:

- "This Request calls for the production of documents protected from discovery by privilege, including but not limited to, the attorney client privilege, the work-product doctrine, and the common interest privilege." Cicala Cert. Ex. 2, at Request Nos. 1–5, 9–13;

---

[5] The Subpoena also contains several requests seeking documents and communications that Compass may have received from any of the Manufacturing Defendants. *See* Subpoena at 9-10 ¶¶ 6–8. But as Compass informed Plaintiffs in its Responses and Objections to the Subpoena, it has no responsive documents to those requests. *See* Cicala Cert. Ex. 2, at 7. As a result, for purposes of this Motion, those requests are not relevant.

- "This Request is overly broad, unduly burdensome, and not proportional to the needs of the case as it calls for the production of a substantial volume of documents and other information from a non-party that are also in the possession, custody or control of the PBM Defendants, who are parties to this litigation." *Id.* at Request Nos. 1–5, 9–13;

- "Given the status of party discovery and the procedure through which the Court is managing discovery in this Action, this Request also acts as a means to improperly circumvent party discovery in this Action." *Id.* at Request Nos. 1–13; and

- "This Request seeks information irrelevant to this matter, as the Carlton Report addressed claims that pharmacy benefit managers ("PBMs") were causing increases in the cost of prescription drugs generally and did not specifically address Insulin drugs which are at issue in this litigation." *Id.* at Request Nos. 1–4, 6–8, 10–13.

After Compass served its response to the Subpoena, the PBM Defendants notified Plaintiffs that the PBM Defendants also objected to the Subpoena "based on at least two independent rights and privileges belonging to the PBM Defendants." *See* Cicala Cert. Ex. 3.  The PBM Defendants explained that the Subpoena sought documents subject to multiple privilege doctrines and highly confidential documents that were beyond the scope of this litigation. *Id.*

As Plaintiffs' Motion recognizes, the parties thereafter participated in a number of meet and confer sessions, both virtually and in writing. *See* Cicala Cert. Exs. 4–9.  While Compass participated in those sessions, the PBM Defendants took the lead given that they had retained Compass as an expert consultant at the direction of counsel and in anticipation of litigation.  The PBM Defendants continued to reiterate their previously interposed objections to the Subpoena during the meet and confer process, while making clear that they were already working with Plaintiffs to provide properly scoped, non-privileged documents and data "in response to Plaintiffs' master discovery requests, including Master Discovery RFP No. 33." *See id.* Ex. 7, at 3.

Unsatisfied with the meet and confer process, Plaintiffs sought and were granted leave to file the instant Motion to Compel, through which Plaintiffs seek the production of the PBM Defendants' privileged documents from Compass, a non-party, before the actual parties have even

6

reached an agreement as to the full scope of party discovery. This premature and evasive discovery maneuver must not be permitted as it will only serve to burden Compass and overly complicate what would otherwise be an orderly and efficient party-discovery process facilitated by the Court.

## LEGAL ARGUMENT

Plaintiffs' Subpoena is putting the proverbial cart before the horse. There are substantial issues that must be resolved in this MDL before Compass should be compelled to produce any documents.

### 1. Compass Cannot Waive Privileges Held by the PBM Defendants.

Counsel for the PBM Defendants retained Compass as an expert consultant, to assist them in their representation of the PBM Defendants, and in anticipation of litigation. Since receipt of the Subpoena, Compass has made clear to Plaintiffs that it was retained under privilege, and that it would not waive any privilege over the PBM Defendants' objections. *See* Cicala Cert. Ex. 2, at Request Nos. 1–5, 9–13, Ex. 8. The PBM Defendants have told Plaintiffs the same. *See id.* Exs. 3, 5, 7. As set forth in the PBM Defendants' opposition brief, the PBM Defendants continue to maintain that even though the Carlton Report has been made public, the underlying documents sought through the Subpoena remain protected by the attorney-client privilege, work product doctrine, and Rule 26(b)(4)(D). Compass adopts and relies upon the arguments set forth in the PBM Defendants' opposition brief as the basis for each of these privileges to the fullest extent possible.

And of course, the PBM Defendants hold these privileges, not Compass, and only the PBM Defendants can waive the privileges. "The attorney-client 'privilege belongs to the client, and only the client may waive it.'" *Kanefsky v. Honeywell Int'l Inc.*, Civ. No. 18-15536, 2020 WL 832918, at *2 (D.N.J. Feb. 20, 2020) (quoting *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 90 (3d

Cir. 1992)) (finding on a motion to compel a non-party to produce documents in connection with a subpoena that "a third party cannot waive another person's privilege"). Consequently, Compass cannot waive any applicable privilege—work-product, attorney-client, or otherwise—over the PBM Defendants' objections.

### 2. Requiring Compass to Produce the PBM Defendants' Documents is Premature and Unduly Burdensome.

Compass raises additional objections to the Subpoena beyond privilege that provide an independent basis to deny Plaintiffs' Motion. In short, given (a) that the majority of the documents requested by the Subpoena can be obtained directly from the PBM Defendants, and (b) the status of party discovery and the procedure through which the Court is managing discovery in this complex MDL, the Subpoena and Plaintiffs' Motion act as a means to improperly circumvent party discovery.

Discovery must be "proportional to the needs of the case," and a court must limit the extent of discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(1), (b)(2)(C)(i). These limitations as to the scope of permissible discovery apply to discovery sought through a Rule 45 subpoena on a non-party. *See in re Novo Nordisk Secs. Litig.*, 530 F. Supp. 3d 495, 501 (D.N.J. 2021). As a non-party to the MDL, Compass is afforded greater protection from discovery than a party to the litigation. *See, e.g.*, *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 344 F.R.D. 207, 215 (D.N.J. 2023).

A court has "significant discretion to quash or modify" a Rule 45 subpoena if compliance with the subpoena would be "unreasonable and oppressive." *Gould v. O'Neal*, Civ. No. 17-100, 2019 WL 4686991, at *3 (D.N.J. Sept. 26, 2019) (quoting in part *First Sealord Sur v. Dunkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 383 (E.D. Pa. 2013)). To determine whether to exercise

its discretion, a court must balance multiple factors including, "the party's need for the documents, . . . the burden imposed, . . . and the subpoena recipient's status as a nonparty to the litigation." *Id.* (citations omitted). Importantly, "[d]iscovery from a non-party will be considered unduly burdensome where the information sought has already been or can be obtained from other means." *Housemaster SPV LLC v. Burke*, Civ. No. 21-13411, 2022 WL 17904254, at *9 (D.N.J. Dec. 23, 2022) (citation omitted); *see also in re Centrix Fin., LLC*, Civ. No. 12-6471, 2012 WL 6625920, at *6–7 (D.N.J. Dec. 18, 2012) (quashing non-party subpoenas because information was already available to defendants and thus would be duplicative). While not dispositive, "[w]hether information is more easily obtained from a party is relevant in analyzing burden[s]" placed on a non-party. *In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d at 504 (citation omitted); *see also Korotki*, 2022 WL 2191519, at *3 ("An undue burden is often created where the material sought from a nonparty is easily available from a party[.]").

In *Smarte Carte, Inc. v. Innovative Vending Sols., LLC*, for example, the defendant served a broad subpoena on a non-party private equity firm. Civ. No. 19-8681, 2024 WL 4024904, at *2 (D.N.J. Feb. 28, 2024). The private equity firm objected to the subpoena, arguing amongst other things that it was unduly burdensome because the documents sought through the subpoena could be directly obtained from the plaintiff through discovery. The court agreed with the non-party private equity firm, explaining that "IVS fails to demonstrate that the discovery sought from 3i via subpoena could not be obtained from Smarte Carte directly." *Id.* at *3. The Court, therefore, denied the defendant's motion to compel. *Id.*; *see also Manning v. Herman*, Civ. No. 13-1426, 2016 WL 6135626, at *3 (M.D. Pa. Oct. 21, 2016) (denying motions to compel discovery from non-party as unduly burdensome because the subpoena sought "the same information from nonparty designees as . . . request[ed] from parties to the case"); *New Life Homecare, Inc. v. Blue*

*Cross Ne. Pa.*, Civ. No. 06-2485, 2012 WL 580198, at *2 (M.D. Pa. Feb. 22, 2012) (denying motion to compel discovery from non-party as unduly burdensome where documents sought were already in the possession of a direct party).

The Court is intimately familiar with this complex MDL. There are three separate tracks to manage multiple cases and near-daily filings on the docket. Because of the complexity, the Court holds monthly status conferences and closely manages discovery. But discovery is still ongoing—in fact, the PBM Defendants and Plaintiffs are still negotiating the scope of discovery, including regarding data, all of which has been closely overseen by the Court. *See, e.g.*, ECF Nos. 490, 547. Despite this measured approach to discovery, Plaintiffs unilaterally decided to skip this process to obtain party documents purportedly "at the heart of this litigation[,]" from a non-party. Pls.' Br. at 9.

As the specific requests identified above make clear, much of the information sought through the Subpoena is in the PBM Defendants' possession. The PBM Defendants provided Compass with the vast majority of data and information it used to draft the Carlton Report. *See* Cicala Cert. Ex. 1, at 1, 9 ¶ 1. In addition, the PBM Defendants are parties to the bulk of the requested communications. *See id.* Ex. 1, at 9 ¶¶ 3–5, 9. And, of course, the PBM Defendants would possess any retainer agreements between Compass and the PBM Defendants or their counsel, as well as evidence of any renumeration they paid Compass for its work. *Id.* at 9 ¶¶ 2, 10–13. Rather than requesting this information from the PBM Defendants through party discovery, Plaintiffs asked Compass for the material in the first instance. Plaintiffs have yet to articulate why Compass, a non-party to this litigation, should bear the burden of collecting, reviewing, and providing Plaintiffs with the PBM Defendants' documents. *See Korotki*, 2022 WL

2191519, at *3 ("Ultimately, the Court can discern no obvious reason why Plaintiff would be unable to secure these particular materials through a discovery request.").

Simply put, Compass should not be forced to prematurely produce documents responsive to the Subpoena before there has been any attempt to obtain these documents through party discovery because it would result in an undue burden. Rather, the parties should be required to continue the meet-and-confer and outlined discovery dispute process to determine the scope of party discovery. This process will likely resolve issues that are critical to the Subpoena, such as the scope of the FTC's Section 6(b) materials that the PBM Defendants produce and the identification of the parties' respective expert witnesses. Only after these parameters of party discovery are resolved, can the Court determine whether the Subpoena seeks overly burdensome or cumulative discovery.

Requiring Compass to produce the PBM Defendants' documents in the first instance would also lead to avoidable complexities. First, Compass would need to navigate through various privilege issues because Compass was retained by counsel to prepare the Carlton Report. Obtaining the PBM Defendants' materials that Compass relied on to draft the Carlton Report directly from the PBM Defendants avoids the need for ***a third-party*** to engage in costly privilege review, logging, and inevitable disputes regarding a privilege belonging to parties in the MDL. Second, as the PBM Defendants informed Plaintiffs during the meet and confer process, the Subpoena "seeks the PBM Defendants' confidential research, development, or commercial information, including trade secrets, that they provided to Compass Lexecon with the expectation that such information would remain highly confidential and protected, and that is irrelevant to this litigation." Cicala Cert., Ex. 3 at 2. The PBM Defendants are in a far better position than Compass to know what of the PBM Defendants' materials constitute confidential, sensitive business data.

Accordingly, requiring Compass to make these business decisions for a third-party rather than the PBM Defendants places an entirely avoidable burden on Compass. *See* FED. R. CIV. P. 45(d)(3)(B) (providing that a court may quash or modify a subpoena "if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information"). Decisions as to what and how to produce a parties' confidential business information should be made directly by the party—the PBM Defendants in this case. Forcing Compass to produce other parties' documents, which can be obtained directly from the parties, would needlessly complicate (and slow) the production and impose an avoidable, undue burden on a non-party. But Plaintiffs provide no explanation as to why these decisions and this extra work must fall on Compass. Again, because there is no good reason.

Plaintiffs also seek publicly available data that Compass relied upon in drafting the Carlton Report through the Subpoena. *See* Cicala Cert. Ex. 6, ECF No. 522-8. Once again, Plaintiffs fail to explain why they cannot obtain this information themselves. Because this category of information can clearly be obtained from another source, there is no need to impose a cost on Compass to do so. *See Deibler v. SanMedica Int'l, LLC*, Civ. No. 19-20155, 2021 WL 6136090, at *7–8 (D.N.J. Dec. 29, 2021) (finding that a non-party was not required to produce information in response to a subpoena that was publicly available and directing the party to "conduct a public record search").

If Plaintiffs still seek information from Compass that is exclusively in its possession after party discovery occurs, Plaintiffs can then provide Compass with a narrowed subpoena. At that time, the parties and this Court will better understand what documents Plaintiffs are entitled to receive and whether requiring Compass to produce the requested materials is unduly burdensome. But presently, Plaintiffs' Subpoena is premature.

### 3. Plaintiffs' Subpoena is Facially Overbroad.

Plaintiffs' Subpoena, as currently composed, is also objectionable on its face. It seeks broad, vaguely defined documents such as "[a]ll Documents and Communications related to the Carlton Report" from January 1, 2011 to the present. *See* Cicala Cert. Ex. 1, at 8, 9 ¶ 1.

The "permissible scope of discovery is broad, [but] it is not limitless." *Saller v. QVC, Inc.*, Civ. No. 15-2279, 2016 WL 8716270, at *4 (E.D. Pa. June 24, 2016) (alteration in original) (internal quotation and citation omitted). In addition, with respect to Rule 45, "a finding of relevance does not end the inquiry." *Korotki*, 2022 WL 2191519, at *5. Rather, "[r]elevance is considered in the context of the undue burden test." *Id.* (citing *Andra Grp., LP v. JDA Software Grp.*, 314 F.R.D. 444, 449 (N.D. Tex. 2015)). As discussed, this is a multi-factor balancing test that considers, "the party's need for the documents, . . . the burden imposed, . . . and the subpoena recipient's status as a nonparty to the litigation." *Gould*, 2019 WL 4686991, at *3. And of specific relevance to an overbreadth argument, a court considers "the breadth of the information requested, the time period covered by the request, and the particularity with which the request is made." *Korotki*, 2022 WL 2191519, at *5 (quoting *Coats v. Chaudhri*, Civ. No. 13-2032, 2016 WL 1046233, at *2 (E.D. Cal. Mar. 16, 2016)) (citing *in re Lazaridis*, 865 F. Supp. 2d 521, 524 (D.N.J. 2011)).

Here, Plaintiffs' broad request for all documents related to the Carlton Report would place significant burdens on Compass, as the Report was prepared over the course of a year, and incorporates detailed and complex analyses. The Subpoena seeks documents that are plainly irrelevant. For example, the Carlton Report is not limited to the drugs at issue in this litigation, and instead covers a wide variety of drugs outside the scope of this MDL. Understandably, then, many of the documents and communications related to the Carlton Report address solely drugs

that are not relevant.  What's more, the Report is not even limited to the rebating practices that are central to this litigation, and instead covers other practices totally distinct from the PBM Defendants' rebating practices.  As written, the Subpoena is so overly burdensome as to be objectionable even were it issued in party discovery—and it is even more so objectionable here, when Plaintiffs seek to impose these undue burdens on a nonparty.

## **CONCLUSION**

In sum, Plaintiffs fail to establish why Compass, a non-party, should be required to produce any documents in response to the Subpoena at this stage of litigation.  Therefore, for the foregoing reasons, Plaintiffs' Motion to Compel must be denied.


CHIESA SHAHINIAN & GIANTOMASI PC


By: /s/ Matthew E. Beck
            Matthew E. Beck

Dated: May 30, 2025      Matthew E. Beck, Esq.
            105 Eisenhower Parkway
            Roseland, NJ  07068
            973.325.1500
            973.325.1501
            Email:  mbeck@csglaw.com
            *Attorneys for Non-Party Compass Lexecon LLP*