**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case 2:23-md-03080**<br>**MDL No. 3080**<br><br>**JUDGE BRIAN R. MARTINOTTI**<br>**JUDGE RUKHSANAH L. SINGH** |

**THIS DOCUMENT RELATES TO: ALL ACTIONS**

# REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL RESPONSES TO COMPASS LEXECON SUBPOENA TO PRODUCE DOCUMENTS

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................... ii

**INTRODUCTION** .................................................................................... 1

**ARGUMENT** ........................................................................................... 6

A. PBMs' Contention that Plaintiffs are Improperly Seeking Clone Discovery from a Third Party is Both Inaccurate and Misleading. ........................................................................ 6

*1. Third parties are not immune from discovery.* .......................... 6

*2. Plaintiffs are not seeking "clone discovery."* ............................ 8

B. The Carlton Report is Relevant Even Though it Includes Medications Other than Diabetes Drugs in its Analysis. ................... 10

C. The PBMs Have Failed to Meet Their Heavy Burden of Showing that Any Privilege or Protection Applies. ........................... 11

D. The Motion Does Not Seek Overly Broad or Unduly Burdensome Discovery. ................................................................ 13

**CONCLUSION** ...................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*,
2022 WL 17339035, (E.D. Pa. Nov. 30, 2022) .................... 9

*Ceuric v. Tier One, LLC*,
325 F.R.D. 558 (W.D. Pa. 2018) .................... 6, 7, 15

*DIRECTV, Inc. v. Richards*,
2005 WL 1514187 (D.N.J. June 27, 2005) .................... 15

*Gould v. O'Neal*,
2019 WL 4686991 (D.N.J. Sept. 26, 2019) .................... 10

*Gruss v. Zwirn*,
2013 WL 3481350 (S.D.N.Y. July 10, 2013) .................... 13

*In re B & C Seafood LLC*,
431 F. Supp. 3d 533 (D.N.J. 2019) .................... 12

I*n re Intel Corp. Microprocessor Antitrust Litig.*,
2008 WL 11231447 (D. Del. Mar. 20, 2008). .................... 2

*In re Intel Corp. Microprocessor Antitrust Litig.*,
2008 WL 11233766 (D. Del. Mar. 6, 2008) .................... 2

*In re Novo Nordisk Sec. Litig.*,
530 F. Supp. 3d 495 (D.N.J. 2021) .................... 11

*Khartchenko v. Am. Oncologic Hosp., Inc.*,
2024 WL 4345277 (D.N.J. Sept. 30, 2024) .................... 1, 11

*Legends Mgmt. Co., LLC v. Affiliated Ins. Co.*,
2017 WL 4227930 (D.N.J. Sept. 22, 2017) .................... 12

*New Park Entm't L.L.C. v. Elec. Factory Concerts, Inc.*,
2000 WL 623155 (E.D. Pa. Jan. 13, 2000) .................... 7

*NXIVM Corp. v. O'Hara*,
241 F.R.D. 109 (N.D.N.Y. 2007) .................... 13

*Nye v. Ingersoll Rand Co.*,
2011 WL 253957 (D.N.J. Jan. 25, 2011) ............ 15

*Osagei v. Borough of State College*,
586 F. Supp. 3d 314 (M.D. Pa. 2022) ............ 10, 11

*Peterson v. Wright Med. Tech., Inc.*,
2013 WL 655527 (C.D. Ill. Feb. 21, 2013) ............ 9

*Republic of Philippines v. Westinghouse Elec. Corp.*,
132 F.R.D. 384 (D.N.J. 1990) ............ 13

*United Food & Com. Workers Union v. Super Fresh Food Markets, Inc.*,
2006 WL 8457243 (D.N.J. Nov. 28, 2006) ............ 6

*Whitman v. State Farm Life Ins. Co.*,
2020 WL 5526684 (W.D. Wash. Sept. 15, 2020) ............ 9

*Wyeth v. Abbott Lab'ys*,
2011 WL 2429318, (D.N.J. June 13, 2011) ............ 15

**Other Authorities**

Dennis W. Carlton,
*The FTC Staff's Interim PBM Reports Are Based on a Small, Non-Representative Sample of Drugs and Reach Conclusions that Do Not Hold When Analyzing All Drugs,*
https://compass-lexecon.files.svdcdn.com/production/files/documents/Carlton-PBM-Report-Section-VII-2025.04.22.pdf (Apr. 2025). ............ 2

*PBMs and Prescription Drug Distribution: An Economic Consideration of Criticisms Levied Against Pharmacy Benefit Managers*,
https://carltonreport.org (last visted June 10, 2025). ............ 3, 10

**Rules**

FED. R. CIV. P. 26 ............ 13

FED. R. CIV. P. 45 ............ 11

**INTRODUCTION**

Compass Lexecon indisputably broadcast the Carlton Report—which by its own description was allegedly created to "shed[] light on the true role PBMs play in prescription drug pricing"—to the entire world via its own website and a separate site singularly dedicated to the report. OptumRx followed suit, publishing articles on its LinkedIn page about the Carlton Report and claiming it refutes "common critiques" that PBMs "contribute to high drug prices[.]". The Pharmaceutical Care Management Association ("PCMA"), the PBM trade group dominated by the big three PBMs, similarly issued a press release touting Professor Dennis Carlton's credentials and Carlton's purported conclusion that "[c]laims that PBMs are harming plan sponsors and beneficiaries of drug benefit plans . . . are not supported by the data." The PCMA then deployed the Carlton Report in its lobbying efforts, citing it to state legislators as part of its efforts to defeat PBM regulation.

These key facts undermine any claim that the report and the underlying materials used to prepare it are privileged or the work product of a consulting expert. They defeat any contention that the "primary purpose of [each] communication was to aid in the provision of legal advice" rather than to bolster PBMs in the public. *Khartchenko v. Am. Oncologic Hosp., Inc.*, 2024 WL 4345277, at *10 (D.N.J. Sept. 30, 2024). And they show that the PBM Defendants have waived any protection by "voluntarily disclos[ing] the existence of the report, the name of the

expert/consultant who prepared it, the report's key findings and its methodology to the world." *See In re Intel Corp. Microprocessor Antitrust Litig.*, 2008 WL 11233766, at *10 (D. Del. Mar. 6, 2008), *R&R adopted*, 2008 WL 11231447 (D. Del. Mar. 20, 2008). In fact, shortly after filing their Motion, Plaintiffs learned that Compass recently updated the report yet again, releasing a new "Supplemental Report" to the public in April 2025,[1] further cementing Plaintiffs' position.

Nonetheless, the PBMs' Opposition for the most part sidesteps these core realities, placing as an afterthought the purported privilege concerns that the PBMs put at the forefront throughout the parties' negotiations and the key relevance of the materials underlying the Carlton Report to this case. Instead, they focus on what the PBMs claim is improper clone discovery and an alleged attempt by Plaintiffs to dig into the written communications between their counsel and Compass. PBM Opp. at 2, 11. The PBMs also contend that Plaintiffs should seek PBM data from the PBMs themselves, rather than Compass, *id.* at 7–10, and that the Subpoena seeks, in material part, material not relevant to this litigation, *id.* at 9 n.7.

These arguments should be rejected. First, they are a transparent effort to distract this Court from the basic premise that a party may not trumpet the alleged findings and methodology of an alleged expert report to the world and then claim

[1] *See* https://compass-lexecon.files.svdcdn.com/production/files/documents/Carlton-PBM-Report-Section-VII-2025.04.22.pdf (Apr. 2025).

protection over the materials used by said expert in reaching those findings and crafting that methodology.

Second, the PBMs' Opposition effectively ignores the multiple detailed communications exchanged in the meet and confer process that homed in on the key materials Plaintiffs seek, as well as the public statements of Compass itself. For example:

1. When Plaintiffs asked the PBMs in a meet and confer to confirm that the data PBMs produce in this litigation will, at a minimum, include the data provided to Compass, the PBMs declined to do so, *see* Cicala Decl., Exs. 6–7. This fact undermines the PBMs' argument that any data requests should be directed to them.

2. During the parties' final meet and confer, Plaintiffs expressly asked Compass and the PBMs to consider producing the following three categories of material that Compass itself said it used in preparing the Carlton Report: (i) PBM data; (ii) material produced by PBMs to the FTC; and (iii) publicly available documents culled by Compass. The Plaintiffs' requests did not include any internal communications between PBM counsel and Compass. *See* Cicala Decl., Ex. 6.[2] This undercuts the PBMs' arguments that granting the Motion would expose all of PBM counsel's communications to disclosure.

3. The PBMs' claim that the Subpoena seeks documents and data not relevant to this litigation is contradicted by Compass's own statements describing the report it prepared: "Through the examination of approximately 20 billion 30-day equivalent prescriptions representing more than a trillion dollars in drug expenditures, this study *sheds light on the true role PBMs play in prescription drug pricing, challenging many of the criticisms leveled against them*."[3]

[2] Plaintiffs do not intend to suggest that there is no argument that those communications are not protected or, alternatively, that any protections have been waived. Rather, the point is that focusing on these materials, which Plaintiffs did not press for during the parties' meet and confers, is a red herring that distracts from the actual materials Plaintiffs have pushed for Compass Lexecon to produce.

[3] *See* Carlton Report, https://carltonreport.org (emphasis added).

The PBMs also attempt to shift the focus to the FTC's investigation, and what PBMs claim was a wide-ranging investigation by the FTC into their practices that allegedly reaches well beyond Plaintiffs' claims here. But this, again, ignores the point of the Compass Subpoena and this Motion.

Plaintiffs are not seeking the materials the PBMs produced to the FTC; rather, Plaintiffs are seeking the materials that Compass used to craft a public report that by their own description claims to provide the "truth" about PBMs' role in drug pricing. The fact that certain of those materials are, by Compass' own description, also materials the PBMs produced to the FTC is purely coincidental.

The PBMs also spend pages of their Opposition focusing on the hiring of Dr. Carlton (and Compass) and the FTC dispute role for which he was allegedly retained (information they did not share prior to the filing of the Motion). Again, these facts do not bear on the key issue before the Court—whatever the original purpose of Dr. Carlton's hiring may have been, the Subpoena focuses on the publicly-disseminated Carlton Report, and the materials that were used by Compass to draft the Report (and its subsequent versions and supplements).

To the extent PBMs contend that the details of Dr. Carlton's hiring suggest that the Carlton Report was not a document crafted principally for public consumption, there is nothing in the materials PBMs filed to support such a contention. The undisputed facts (laid out in Plaintiffs' opening brief and supporting

exhibits) are that the Carlton Report was publicly released shortly after the FTC issued its first report in July 2024. It was lauded in OptumRx's LinkedIn article. The Report has its own website. These facts speak for themselves.

PBMs also claim they have not referenced the Carlton Report in this litigation. But that fact, again, is beside the point. Parties are never limited solely to discovery of items the other side specifically mentions or references. And the Federal Rules' definition of "relevance" contains no such limitations.

Finally, as for the threat of disclosure of privileged documents, Plaintiffs made clear in the meet and confer process that they were principally seeking the materials used to prepare the Carlton Report—rather than the allegedly extensive attorney communications and other materials PBMs repeatedly reference in their Opposition—and yet Compass and the PBMs have to date refused to produce even a single responsive document. *See* Cicala Decl., Exs. 4, 6. This Motion is not a battle for disclosure of counsel emails, but rather an effort to compel the production of supporting data and materials that are routinely disclosed in analogous circumstances.

In sum, the essential undisputed facts remain unchallenged by the Opposition: the PBMs have deployed the Carlton Report to shape public debate, to support their positions in litigation, and to urge legislators to reject legislation regulating PBMs. These materials are directly relevant to Plaintiffs' claims that the PBMs are

responsible for the soaring cost of insulin. The PBMs cannot now reverse course and resist disclosure of the documents and data used by Compass to prepare that Report. The Court should grant the Motion.

## ARGUMENT

### A. PBMs' Contention that Plaintiffs are Improperly Seeking Clone Discovery from a Third Party is Both Inaccurate and Misleading.

The recurring theme of the PBMs' Opposition is that Plaintiffs are improperly seeking third-party, "clone" discovery from Compass instead of seeking relevant materials from the PBMs directly. But this theme is neither an accurate reflection of the law nor an accurate framing of the dispute.

*1. Third parties are not immune from discovery.*

To start, the federal rules "do[] not require a party to demonstrate that information cannot be obtained from another party before subpoenaing it from a third party." *Ceuric v. Tier One, LLC*, 325 F.R.D. 558, 561 (W.D. Pa. 2018); *see also*, *United Food & Com. Workers Union v. Super Fresh Food Markets, Inc.*, 2006 WL 8457243, at *4 (D.N.J. Nov. 28, 2006) ("[T]he Court first rejects [p]laintiffs' assertion that the subpoenas should be quashed because [d]efendants allegedly can obtain the documents from the [one of the plaintiffs] rather than third parties."). They only require that the documents subpoenaed be "within the control of the nonparty witness." *Ceuric*, 325 F.R.D. at 561 (quotation omitted).

This principle directly contradicts the PBMs' contention that Plaintiffs should

proceed by seeking the underlying data from the PBMs in this litigation, and not Compass. In fact, *Ceuric* is on all fours with this case. The subpoenaed party in that case claimed all the information sought in a third-party subpoena could be obtained from the Defendant—just as the PBMs argue here. But the *Ceuric* court rejected that argument because, while there may be some duplication, "there is no way for the plaintiff to frame its request to eliminate the possibility of duplication and at the same time ensure that it receives all of the documents it seeks from third parties." *Id.* at 561–62 (quoting *New Park Entm't L.L.C. v. Elec. Factory Concerts, Inc*., 2000 WL 62315, at *5 (E.D. Pa. Jan. 13, 2000)).

Indeed, Plaintiffs are entitled to test the comprehensiveness and veracity of what the PBMs produce, just as the courts in *Ceuric* and *New Park* recognized. This is particularly important here as the PBMs generally contend all their data is confidential, proprietary, and not subject to disclosure. The PBMs have also offered limited custodians and claimed that the "PBMs' outside counsel consulted with [Carlton] regularly." PBM Opp. at 4. It's thus far from clear that Plaintiffs can obtain relevant documents from the PBMs themselves. And if the PBMs have nothing to hide and Plaintiffs' pricing claims are as unfounded as the PBMs contend they are, why are they so protective of this information and why have they intervened in this dispute with Compass to prevent its disclosure?

In any event, the PBMs conveniently ignore that they cannot even identify

what data they intend to produce in this litigation, and how it is duplicative of the data Plaintiffs seek in the subpoena. *See* Ex. 7 at 3 ("The PBMs are unable to provide a response at this time to [the] question" of what aspect of the data "is duplicative."). Thus, there is no merit to the PBMs' claim that Plaintiffs must seek this data from the PBMs directly, as neither the Plaintiffs nor the Court can even confirm that Plaintiffs would be able to obtain this data. Indeed, this is precisely why Plaintiffs seek to compel production of these materials—not as a fishing expedition aimed at sidestepping party discovery—but to seek fundamentally relevant data from a report claiming that the PBMs are not responsible for price increases.

*2. Plaintiffs are not seeking "clone discovery."*

Rather than address the Carlton Report and the documents used to prepare it, the PBMs improperly focus on the "expansive, industry wide scope of the [FTC] 6(b) order," which they then claim supports their claim that "the Subpoena is overbroad and seeks the production of a significant amount of information outside the scope of discovery in this matter." PBM Opp. at 13.

But Plaintiffs seek the documents used to prepare the Carlton Report, *not* the documents used to litigate against the FTC. While, apparently, there is some overlap between those two categories, restricting the focus to the documents used for the Carlton Report by definition restricts the Plaintiffs' request to documents that are relevant to this litigation—since the Carlton Report, by its own description, seeks

the "truth" about PBMs' role in drug pricing. In short, cloned discovery requests are requests for "all discovery produced in prior litigation or investigations." *Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*, 2022 WL 17339035, at *3 (E.D. Pa. Nov. 30, 2022). Plaintiffs made no such request here.

Even if clone discovery rules applied, courts allow discovery related to other litigation where there is "significant factual and legal overlap" with a prior case and the request is not overbroad. *See Whitman v. State Farm Life Ins. Co*., 2020 WL 5526684, at *3 (W.D. Wash. Sept. 15, 2020). In fact, where so-called "cloned" discovery "seeks information that is relevant to plaintiff's claims and defendants' defenses and that . . . is reasonably calculated to lead to the discovery of admissible evidence," that information must be produced. *Peterson v. Wright Med. Tech., Inc*., 2013 WL 655527, at *6 (C.D. Ill. Feb. 21, 2013).

The Carlton Report purports to review "systematic evidence" and "data provided by the PBMs" in concluding that the critiques against PBMs for their role in increasing drug prices are unfounded. This is of course a central issue in this litigation. Plaintiffs are entitled to the information underlying this bold proclamation, because "the very purpose of discovery is to give the parties the opportunity to learn what their opponents know about the issues in the case." *Peterson*, 2013 WL 655527, at *5.

**B. The Carlton Report is Relevant Even Though it Includes Medications Other than Diabetes Drugs in its Analysis.**

The Carlton Report includes drugs besides diabetes drugs in its study and discussion. But that fact does not alter the analysis because the Report is nonetheless relevant to the Plaintiffs' claims. For example, the Plaintiffs contend that the PBMs' rebate agreements with diabetes drug manufacturers contribute to higher diabetes drug prices—by contrast, Compass, on the opening page of the website dedicated to the Carlton Report, says that a "key finding" of the Report is that manufacturer rebates allegedly "are *not* associated with higher growth in list or net prices relative to non-rebated drugs." (emphasis added).[4] This fundamental overlap between the Plaintiffs' claims and the Carlton Reports' claimed findings demonstrates the relevance of the requests. *See generally* Mot. at 7–9.

Given this demonstration of relevance, "the burden . . . shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper." *Osagei v. Borough of State College*, 586 F. Supp. 3d 314, 321 (M.D. Pa. 2022); *see also Gould v. O'Neal*, 2019 WL 4686991, at *4 (D.N.J. Sept. 26, 2019) (applying the same test in the context of Rule 45). And "[g]enerally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with the fullest

[4] Carlton Report, https://carltonreport.org

possible knowledge of issues and facts before trial." *Osagei*, 586 F. Supp. 3d at 314.

The PBM's Opposition falls well short of demonstrating—even in non-specific terms—why the Subpoena does not fall within the broad scope of discovery. And, as courts recognize, Plaintiffs here should be afforded "considerable latitude" and given access with "the fullest possible knowledge of issues and facts."

Against this, the PBMs contend that "nonparty discovery require[s] a stronger showing of relevance." *See* PBM Opp. at 8 (quotation omitted). But Rule 45 provides the standards applicable to this dispute. And "[t]he scope of discovery pursuant to Rule 45 is the same as Rule 26(b)." *In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 501 (D.N.J. 2021); *see also* FED. R. CIV. P. 45 advisory committee notes ("The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party[.]"). In any event, the requests here far surpass the PBMs' preferred relevance standard. As set out in the Motion, the Carlton Report and the data underlying it lie at the core of this case. *See* Mot. at 7–9.

**C. The PBMs Have Failed to Meet Their Heavy Burden of Showing that Any Privilege or Protection Applies.**

The PBMs contend that every single document underlying the Carlton Report is privileged. PBM Opp. at 17–22. They are wrong. First, both attorney-client privilege and work-product protection hinge on whether "the primary purpose *of the communication* was to aid in the provision of legal advice." *Khartchenko*, 2024 WL 4345277, at *10 (quotation omitted) (emphasis added); *In re B & C Seafood LLC*,

431 F. Supp. 3d 533, 537 (D.N.J. 2019) ("[T]o qualify as work-product the 'dominant purpose' *in preparing the document* must be the concern about potential litigation…." (citations omitted; emphasis added)).

Here, the PBMs, Compass, and the Carlton Report explained that the purpose of the report was to "inform the extensive debate that has formed around [PBMs]," not to inform litigation. *See* Summary of Report at 2. Looking to escape this admission, the PBMs point to Carlton's engagement letter and argue that Carlton "was retained in anticipation of litigation." PBM Opp. at 4, 9. But the question is the primary purpose of the *document*, not the retention. In any event, the engagement letter is much broader than litigation. The PBMs also contend that their attorneys often communicated with Compass. But privilege "does not apply just because a statement was made by or to an attorney." *Legends Mgmt. Co., LLC v. Affiliated Ins. Co.*, 2017 WL 4227930, at *5 (D.N.J. Sept. 22, 2017).

Second, the PBMs cannot avoid the reality that they have waived any protection that may ever have applied to the Carlton Report. While they rely on a declaration from counsel who retained Compass to purportedly shed light on the original purpose of the Report and why Compass was retained, Plaintiffs are seeking the documents and data used to prepare the Carlton Report. The PBMs and Compass cannot dispute that the Report is a widely broadcast report that is directly relevant

to this case and is indisputably public.[5]

"[W]hen a party discloses its work product in the course of any adversarial proceeding, . . . the party waives its right to assert that privilege against any other party." *Republic of Philippines v. Westinghouse Elec. Corp.*, 132 F.R.D. 384, 390 (D.N.J. 1990). The same is true when a party makes material "fodder for grander public discourse," *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 142 (N.D.N.Y. 2007), or discloses the material to an "adverse government entity," *Gruss v. Zwirn*, 2013 WL 3481350, at *12 (S.D.N.Y. July 10, 2013). The PBMs did all of those things here, and nothing in the PBMs' Opposition contradicts this fundamental fact.[6]

### D. The Motion Does Not Seek Overly Broad or Unduly Burdensome Discovery.

Compass filed its own Opposition, which largely contends that the Subpoena's requests are overly broad and unduly burdensome, and also argues that

[5] Rule 26(b)(4)(D) is inapplicable for similar reasons, as discussed in the Motion. In their response, the PBMs fail to show a dominant purpose of litigation, fail to rebut their waiver, and fail to address the plain text of the Rule demonstrating that the Rule does not apply to document requests (along with case law affirming as much).

[6] While not critical to the key issues, footnote 14 of the PBMs' Opposition, which in turn takes issue with footnote 10 of Plaintiffs' opening brief, is inaccurate. In their opening brief, the Plaintiffs pointed out in footnote 10 that the PBMs had expressly stated that Compass had not been hired for litigation against the FTC where the Carlton Report was cited, meaning the federal court lawsuit filed by Express Scripts in September 2024. This is, indeed, what the PBMs literally wrote in footnote 3 of their February 21, 2025 letter to Plaintiffs. *See* Cicala Decl., Ex. 7 ("Compass was not retained in anticipation of the lawsuits filed [against the FTC] by Express Scripts in September 2024 or by the PBMs in November 2024.").

the materials should be sought from the PBMs rather than Compass.[7] Compass arguments fail.

First, as noted above, Compass itself identified the three categories of information that it used to prepare the Carlton Report. The Plaintiffs specifically requested that these categories of information be produced, both verbally and in writing, prior to filing this Motion. Both the PBMs and Compass declined to produce even a single document. There is no undue burden on Compass to simply produce these documents, which per its own statements are what it relied on to draft the Carlton Report. That production requires no searching nor weeding out, contrary to Compass' representations in its Opposition.

Second, both Compass and the PBMs contend that Plaintiffs should seek the Carlton Report materials from the PBMs. But they both ignore that Plaintiffs specifically asked the PBMs whether their data production in this litigation would include, at least, the data the PBMs provided to Compass. The PBMs not only declined to confirm, they essentially said they had no idea whether it would. Compass and the PBMs cannot avoid production of relevant materials by sending

[7] Compass also argues that it cannot waive any privileges held by the PBMs. But the Plaintiffs do not contend that Compass acting alone has waived any protections that might otherwise have applied—instead, Plaintiffs contend that the PBMs themselves have widely publicized the Carlton Report directly and via Compass, and it is the PBMs' actions that have resulted in the waiver of any protection that might have applied.

Plaintiffs down dead end paths.

Third, "[t]he party moving to quash a subpoena carries the *heavy* burden of proving that the subpoena is unreasonable or oppressive." *DIRECTV, Inc. v. Richards*, 2005 WL 1514187, at *2 (D.N.J. June 27, 2005). Where requests are "relevant" and "appropriately limited," "[b]are allegations of burden will not suffice." *Nye v. Ingersoll Rand Co.*, 2011 WL 253957, at *6 (D.N.J. Jan. 25, 2011). Simply objecting to requests as overly broad, burdensome, oppressive and irrelevant, without showing specifically how such requests are burdensome is inadequate to "voice a successful objection." *See Ceuric*, 325 F.R.D. at 561.

Compass raised the issue of burden during the meet and confer process but failed to recite with any specificity the nature of the burden. Its Opposition suffers from the same defect. Instead of specifics, the Opposition relies on facial interpretations of the Subpoena requests that ignore both the history of the parties' meet and confers and the fundamental requests outlined in the Motion—namely, the documents relied upon for the Carlton Report. Compass' "bare claims of undue burden are simply insufficient." *Wyeth v. Abbott Lab'ys*, 2011 WL 2429318, at *8 (D.N.J. June 13, 2011).

## CONCLUSION

For these reasons, the Court should grant the Motion to Compel.

Respectfully submitted, this the 13th day of June, 2025.

By: */s/ Joanne Cicala*

Joanne Cicala
**The Cicala Law Firm PLLC**
101 College Street
Dripping Springs, Texas 78620
Tel: (512) 275-6550
Fax: (512) 858-1801
joanne@cicalapllc.com

Walter G. Watkins, III
**Forman Watkins & Krutz LLP**
210 E. Capitol Street, Suite 2200
Jackson, MS 39201-2375
Tel: (601) 960-8600
Fax: (601) 960-8613
trey.watkins@formanwatkins.com

W. Lawrence Deas
**Liston & Deas, PLLC**
605 Crescent Blvd., Suite 200
Ridgeland, MS 39157
Tel: (601) 981-1636
Fax: (601) 982-0371
lawrence@listondeas.com

Troy A. Rafferty
**Levin Papantonio Thomas Mitchell Rafferty and Proctor, P.A.**
316 S. Baylen Street
Suite 600
Pensacola, FL 32502
Tel: (850) 435-7043
Fax: (850) 436-6102
trafferty@levinlaw.com

Russell W. Budd
**Baron & Budd PC**
3102 Oak Lawn Ave., Ste. 1100
Dallas, TX 75219-4281
Tel: (214) 521-3605
rbudd@baronbudd.com

*Counsel for the State Attorney General Track*

Melissa Yeates
**Kessler Topaz**
**Meltzer & Check, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
myeates@ktmc.com

Michael L. Roberts
**Roberts Law Firm, P.A.**
20 Rahling Circle
Little Rock, Arkansas 72223
(501) 821-5575
mikeroberts@robertslawfirm.us

Donald A. Ecklund
**Carella, Byrne, Cecchi,**
**Brody & Agnello, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
decklund@carellabyrne.com

*Counsel for the Class Track*

David R. Buchanan
dbuchanan@seegerweiss.com
**Seeger Weiss, LLP**
55 Challenger Road
Ridgefield Park, New Jersey 07660
Telephone: (973) 639-9100

Mark P. Pifko
mpifko@baronbudd.com
**Baron & Budd, P.C.**
15910 Ventura Blvd #1600
Los Angeles, CA 91436
Telephone: (818) 839-2333

Benjamin J. Widlanski
bwidlanski@kttlaw.com
**Kozyak Tropin & Throckmorton LLP**
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800

Brandon L. Bogle
bbogle@levinlaw.com
**Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr & Mougey, P.A.**
316 S. Baylen St., Suite 600
Pensacola, Florida 32502
Telephone: (850) 435-7140

*Counsel for the Self-Funded Payor Track*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2025, the above was served on all counsel of record via the Court's CM/ECF system and a copy was served on counsel for Compass Lexecon LLC via email.

*/s/ Joanne Cicala*
Joanne Cicala