# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **CASE NO. 2:23-MD-03080 MDL NO. 3080**<br><br>**DECLARATION OF LIZ BROADWAY BROWN IN SUPPORT OF MOTION TO SEAL** |

**THIS DOCUMENT RELATES TO:**
ALL TRACKS

I, Liz Broadway Brown, hereby declare as follows:

1.      I have personal knowledge of the facts set forth in this Declaration.

2.      I am a member of the State Bar of Georgia, and I am admitted *pro hac vice* to practice in this matter before this Court.  I am a partner at the law firm Alston & Bird LLP and represent Defendants OptumRx, Inc., Optum, Inc., OptumInsight, Inc., UnitedHealth Group Incorporated, and Emisar Pharma Services LLC in this action. As such, I am familiar with the facts and circumstances in this matter.

3.      I submit this declaration in support of Emisar Pharma Services LLC ("Emisar"), Novo Nordisk Inc., Sanofi-Aventis U.S. LLC, and Eli Lilly and Company's (the "Moving Defendants") Motion to Seal Confidential Information

contained in the following documents, which have been filed provisionally under seal:

a.  Plaintiffs' Letter Regarding a Discovery Dispute with Emisar, filed May 21, 2025 [ECF No. 577];

b.  Exhibits 3, 5, 6, 7, 8, 9, 10, 12, 13, and 14, filed May 21, 2025 [ECF Nos. 577-3, 577-5, 577-6, 577-7, 577-8, 577-9, 577-10, 577-12, 577-13, and 577-14]; and

c.  Emisar's Response to Plaintiffs' Letter, filed May 29, 2025 [ECF No. 590].

4.  I am aware of no party or non-party that objects to this request.

5.  An Index, substantially in the form suggested by Appendix U to the Local Civil Rules, has been prepared identifying the proprietary and confidential information the Moving Defendants seek to seal (referred to herein as the "Confidential Materials"), including: (a) the nature of the materials or proceedings at issue; (b) the legitimate private or public interest which warrants the relief sought; (c) the clearly defined and serious injury that would result if the relief sought is not granted; (d) why a less restrictive alternative to the relief sought is not available; and (e) the identity of any party or nonparty known to be objecting to the sealing request. No prior order has been entered in this action sealing the same materials. Attached

to this Declaration as Exhibit 1 is a true and correct copy of the Index in Support of the Moving Defendants' Motion to Seal.

6. Exhibit 6 in support of Plaintiffs' Letter, filed on May 21, 2025 [ECF No. 577-6], contains Emisar's non-public, highly competitive, proprietary, and commercially sensitive information—including information related to Emisar's pricing and contracting strategies—and has been designated Highly Confidential – Attorneys' Eyes Only pursuant to the Stipulated Confidentiality Order entered in this matter. Allowing this non-public, highly competitive, proprietary, and commercially sensitive information to become public would cause Emisar specific and significant competitive harm, including by giving Emisar's competitors a significant and unfair competitive advantage in contract negotiations. Competitors could also use the information to infer Emisar's competitive business strategies and undercut Emisar in the marketplace.

7. Attached to this Declaration as Exhibit 2 is a true and correct copy of the Declaration of Justin Lester, submitted on Emisar Pharma Services LLC's behalf.

8. Additionally, redacted versions of the documents containing only portions of Confidential Materials—*i.e.*, those not sought to be maintained entirely under seal—are attached hereto as Exhibits 3, 4, 7, and 10.

9.     Certain materials related to the Plaintiffs' Letter that were filed provisionally under seal on May 21, 2025 —specifically, ECF No. 577-1, ECF No. 577-2, ECF No. 577-4, ECF No. 577-11, and ECF Nos. 577-15–22—are expected to be filed publicly on the docket with no redactions by Emisar.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: June 20, 2025

*/s/Liz Broadway Brown*
Liz Broadway Brown

# EXHIBIT 1

**INDEX IN SUPPORT OF SEALING CONFIDENTIAL INFORMATION**

| Material | Basis for Sealing (Legitimate Public or Private Interest That Warrants Relief) | Clearly Defined and Serious Injury That Would Result if the Relief is Not Granted | Why a Less Restrictive Alternative to the Relief Sought is Not Available | Party in Opposition to Sealing, if any, and Basis |
|---|---|---|---|---|
| Letter from Plaintiffs re: Discovery Dispute with Emisar Pharma Servs. LLC. [ECF No. 577] | | | | |
| Page 3, "Documents . . . 1837." | Emisar asserts that the unredacted version of this document should remain under seal because the redacted portions of the letter contain references or quotations to excerpts of non-public, highly competitive, proprietary, and commercially sensitive information contained in a document that has been designated Highly Confidential pursuant to the | Allowing this non-public, highly competitive, proprietary, and commercially sensitive information to become public would cause Emisar significant competitive harm, including by giving Emisar's competitors a significant and unfair competitive advantage in contract negotiations. Competitors could also use the information to infer Emisar's competitive business strategies and undercut | The redactions to the subject document are narrowly tailored to protect only sensitive information. | There are no known parties or non-parties that object to the requested sealing. |

| | Confidentiality Order entered by this Court on March 24, 2024 (ECF No. 117) ("CO"). | Emisar in the marketplace. | | |
|---|---|---|---|---|
| Page 4, "Documents . . . Emisar-dedicated email)." | Emisar asserts that the unredacted version of this document should remain under seal because the redacted portions of the letter contain references or quotations to excerpts of non-public, highly competitive, proprietary, and commercially sensitive information contained in certain documents that have been designated Highly Confidential – Attorneys' Eyes Only pursuant to the CO, which reveal | Allowing this non-public, highly competitive, proprietary, and commercially sensitive information to become public would cause Emisar significant competitive harm, as competitors could use the information to infer Emisar's competitive business strategies and undercut Emisar in the marketplace. | The redactions to the subject document are narrowly tailored to protect only sensitive information. | There are no known parties or non-parties that object to the requested sealing. |

| | aspects of the structure of Emisar's business. | | | |
|---|---|---|---|---|
| Page 5, "Emisar's . . . irccu@optum.com')." | Emisar asserts that the unredacted version of this document should remain under seal because the redacted portions of the letter contain references or quotations to terms of contracts that contain Emisar's non-public, highly competitive, proprietary, and commercially sensitive information and have been designated Highly Confidential – Attorneys' Eyes Only pursuant to the CO. | Allowing this non-public, highly competitive, proprietary, and commercially sensitive information to become public would cause Emisar significant competitive harm, including by giving Emisar's competitors a significant and unfair competitive advantage in contract negotiations. Competitors could also use the information to infer Emisar's competitive business strategies and undercut Emisar in the marketplace. | The redactions to the subject document are narrowly tailored to protect only sensitive information. | There are no known parties or non-parties that object to the requested sealing. |
| Exhibit 3 in Support of Plaintiffs' Letter [ECF No. 577-3] | | | | |

4

| Entire Document (GPO Participation Agreement) | Emisar asserts that this document should remain entirely under seal because it is a contract that contains Emisar's non-public, highly competitive, proprietary, and commercially sensitive information and has been designated Highly Confidential – Attorneys' Eyes Only pursuant to the CO. | Allowing this non-public, highly competitive, proprietary, and commercially sensitive information to become public would cause Emisar significant competitive harm, including by giving Emisar's competitors a significant and unfair competitive advantage in contract negotiations. Competitors could also use the information to infer Emisar's competitive business strategies and undercut Emisar in the marketplace. | Disclosure of even a portion of this confidential contract would reveal competitively sensitive and proprietary information. | There are no known parties or non-parties that object to the requested sealing. |
|---|---|---|---|---|
| **Exhibit 5 in Support of Plaintiffs' Letter [ECF No. 577-5]** | | | | |
| Entire Document (February 2022 Briefing Document for Paul Hudson) | Sanofi maintains that this document should remain under seal because it contains | If filed on the public docket, Sanofi would suffer a clearly defined, substantial and specific harm, | There is no less restrictive alternative other than sealing the Confidential | There are no known parties or non-parties that object |

| | Confidential Materials or refers to Sanofi's nonpublic and competitively and commercially sensitive, proprietary, financial and business information.

In particular, this document contains confidential information about Sanofi's sales, pricing, rebates, and negotiation strategies.

The Confidential Materials Sanofi seeks to keep under seal contain and/or reflect information that Sanofi designated as Highly Confidential | including but not limited to, financial damage, damage to business relationships, damage to commercial standing, and/or other irreparable harm should any of the confidential proprietary, commercial, and competitively sensitive business information contained in this document be publicly disclosed in contravention of the terms of the CO.

Competitors would improperly and unfairly benefit from the disclosure of Sanofi's non-public business information and would likely use the confidential information to enhance their market or | Materials. Disclosure of even a portion of this document would reveal competitively and commercially sensitive, proprietary, financial and business information. As such, this is only relief available to protect Sanofi's non-public confidential information. | to the requested sealing. |
|---|---|---|---|

| | – Attorneys' Eyes Only pursuant to the CO. | negotiation position and cause Sanofi to lose its competitive advantage in the highly competitive pharmaceutical marketplace. | | |
|---|---|---|---|---|
| **Exhibit 6 in Support of Plaintiffs' Letter [ECF No. 577-6]** | | | | |
| Entire Document (Internal Novo Nordisk Email) | Emisar asserts that this document should remain entirely under seal because it is a communication that contains Emisar's non-public, highly competitive, proprietary, and commercially sensitive information—including information related to Emisar's pricing and contracting strategies—and has been designated Highly Confidential | Allowing this non-public, highly competitive, proprietary, and commercially sensitive information to become public would cause Emisar significant competitive harm, including by giving Emisar's competitors a significant and unfair competitive advantage in contract negotiations. Competitors could also use the information to infer Emisar's competitive business strategies and undercut | Disclosure of even a portion of this communication would reveal competitively sensitive and proprietary information. | There are no known parties or non-parties that object to the requested sealing. |

| | – Attorneys' Eyes Only pursuant to the CO. | Emisar in the marketplace. | | |
|---|---|---|---|---|
| Exhibit 7 in Support of Plaintiffs' Letter [ECF No. 577-7] | | | | |
| Portion of SAMDL001488618 (Redacted Mobile Phone Number of Employee) | Emisar asserts that the redacted portion of this document should remain under seal because it reflects personally identifiable information. | Allowing this personally identifiable information to become public would cause harm to the individual whose information is contained in the document. | The redaction to the subject document is narrowly tailored to protect only sensitive information. | There are no known parties or non-parties that object to the requested sealing. |
| Exhibit 8 in Support of Plaintiffs' Letter [ECF No. 577-8] | | | | |
| Portion of NNI-IP-MDL_002550789 (Redacted Mobile Phone Number of Employee) | Personal Identifying Information | Personal Information of Employee Would Be Publicly Disclosed | Other Than Redacting the Phone Number, There Is No Way to Protect the Information | There are no known parties or non-parties that object to the requested sealing. |
| Exhibit 9 in Support of Plaintiffs' Letter [ECF No. 577-9] | | | | |
| Portion of LLY-Insulin-MDL-01329737 (Redacted Mobile Phone Number of Employee) | Lilly asserts that the redacted portion of this document should remain under seal because it reflects personally | Allowing this personally identifiable information to become public would cause harm to the individual whose information is | The redaction to the subject document is narrowly tailored to protect only sensitive information. | There are no known parties or non-parties that object to the |

| | identifiable information. | contained in the document. | | requested sealing. |
|---|---|---|---|---|
| **Exhibit 10 in Support of Plaintiffs' Letter [ECF No. 577-10]** | | | | |
| Pages 2–3 ("Emisar . . . 9298.") | Emisar asserts that the unredacted version of this document should remain under seal because the redacted portions of the letter contain references or quotations to terms of a contract that contains Emisar's non-public, highly competitive, proprietary, and commercially sensitive information and has been designated Highly Confidential – Attorneys' Eyes Only pursuant to the CO. | Allowing this non-public, highly competitive, proprietary, and commercially sensitive information to become public would cause Emisar significant competitive harm, including by giving Emisar's competitors a significant and unfair competitive advantage in contract negotiations. Competitors could also use the information to infer Emisar's competitive business strategies and undercut Emisar in the marketplace. | The redactions to the subject document are narrowly tailored to protect only sensitive information. | There are no known parties or non-parties that object to the requested sealing. |

| Exhibit 12 in Support of Plaintiffs' Letter [ECF No. 577-12] | | | | |
|---|---|---|---|---|
| Entire Document (2022 Emisar-Novo Nordisk Pharma, Inc. Agreement) | Emisar asserts that this document should remain entirely under seal because it is a contract with a pharmaceutical manufacturer that contains Emisar's non-public, highly competitive, proprietary, and commercially sensitive information— including highly sensitive pricing terms—and has been designated Highly Confidential – Attorneys' Eyes Only pursuant to the CO. | Allowing this non-public, highly competitive, proprietary, and commercially sensitive information to become public would cause Emisar significant competitive harm, including by giving Emisar's competitors a significant and unfair competitive advantage in contract negotiations. Competitors could also use the information to infer Emisar's competitive business strategies and undercut Emisar in the marketplace. | Disclosure of even a portion of this confidential contract would reveal competitively sensitive and proprietary information. | There are no known parties or non-parties that object to the requested sealing. |
| Exhibit 13 in Support of Plaintiffs' Letter [ECF No. 577-13] | | | | |
| Entire Document (2022 Emisar-Eli Lilly and Company Agreement) | Emisar asserts that this document should remain | Allowing this non-public, highly competitive, | Disclosure of even a portion of this confidential | There are no known parties or |

| | entirely under seal because it is a contract with a pharmaceutical manufacturer that contains Emisar's non-public, highly competitive, proprietary, and commercially sensitive information— including highly sensitive pricing terms—and has been designated Highly Confidential – Attorneys' Eyes Only pursuant to the CO. | proprietary, and commercially sensitive information to become public would cause Emisar significant competitive harm, including by giving Emisar's competitors a significant and unfair competitive advantage in contract negotiations. Competitors could also use the information to infer Emisar's competitive business strategies and undercut Emisar in the marketplace. | contract would reveal competitively sensitive and proprietary information. | non-parties that object to the requested sealing. |
|---|---|---|---|---|
| **Exhibit 14 in Support of Plaintiffs' Letter [ECF No. 577-14]** | | | | |
| Entire Document (2022 Emisar-sanofi-aventis U.S. LLC Agreement) | Emisar asserts that this document should remain entirely under seal because it is a contract with a pharmaceutical | Allowing this non-public, highly competitive, proprietary, and commercially sensitive information to become public would cause | Disclosure of even a portion of this confidential contract would reveal competitively sensitive and | There are no known parties or non-parties that object to the |

| | manufacturer that contains Emisar's non-public, highly competitive, proprietary, and commercially sensitive information— including highly sensitive pricing terms—and has been designated Highly Confidential – Attorneys' Eyes Only pursuant to the CO. | Emisar significant competitive harm, including by giving Emisar's competitors a significant and unfair competitive advantage in contract negotiations. Competitors could also use the information to infer Emisar's competitive business strategies and undercut Emisar in the marketplace. | proprietary information. | requested sealing. |
|---|---|---|---|---|
| **Emisar's Response to Plaintiffs' Letter [ECF No. 590]** | | | | |
| Page 4, "Plaintiffs . . . Pls.' Letter at 3." | Emisar asserts that the unredacted version of this document should remain under seal because the redacted portions of the letter contain references to excerpts of non-public, highly competitive, | Allowing this non-public, highly competitive, proprietary, and commercially sensitive information to become public would cause Emisar significant competitive harm, as competitors could use the information to | The redactions to the subject document are narrowly tailored to protect only sensitive information. | There are no known parties or non-parties that object to the requested sealing. |

| | proprietary, and commercially sensitive information that reveal aspects of Emisar's negotiating strategies. | infer Emisar's competitive business strategies and undercut Emisar in the marketplace. | | |
|---|---|---|---|---|

# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  | Case No. 2:23-md-3080 (BRM)(RLS) MDL No. 3080 |
|---|---|
| IN RE: INSULIN PRICING LITIGATION | JUDGE BRIAN R. MARTINOTTI JUDGE RUKHSANAH L. SINGH DECLARATION OF JUSTIN LESTER IN SUPPORT OF MOTION TO SEAL |

**THIS DOCUMENT RELATES TO:**
ALL TRACKS

I, Justin Lester, declare as follows:

1.  I am over 18 years of age, am of sound mind and body, and am otherwise competent to testify. I have personal knowledge of the facts set forth in this Declaration. If called as a witness, I could and would testify to them.

2.  I am the Vice President and General Manager of Emisar Pharma Services LLC. In this role, I am responsible for and familiar with manufacturer rebate contracts and negotiations and Emisar's contractual relationship with OptumRx, Inc.

3.  Emisar is a group purchasing organization (GPO) and provides GPO services to OptumRx, Inc., a pharmacy benefit manager (PBM).

4.  Emisar negotiates rebate contracts and other agreements with drug manufacturers. Because the GPO and PBM industries are highly competitive, the specific terms of Emisar's agreements with OptumRx and drug manufacturers are kept confidential.

5.  Emisar takes significant measures to safeguard this competitively sensitive information by limiting its distribution, marking it confidential, and seeking to protect it under protective orders and sealed filings whenever it must be submitted to a court.

6.  Exhibit 3 to Plaintiffs' Letter regarding a Discovery Dispute with Emisar, filed on May 21, 2025 [ECF No. 577-3], is Emisar's Participation

1

Agreement with OptumRx. That agreement contains confidential and commercially sensitive information that would cause competitive harm if publicly disclosed.

7.      Exhibit 7, filed on May 21, 2025 [ECF No. 577-7], is an email from Stephen Crowe that includes his mobile phone number. Emisar and Mr. Crowe have a significant interest in protecting that personally identifying information.

8.      Exhibits 12, 13, and 14, filed on May 21, 2025 [ECF No. 577-12, 577-13, 577-14], are Emisar's rebate agreements with Novo Nordisk, Inc., Eli Lilly and Company, and sanofi-aventis U.S. LLC respectively. Those agreements contain confidential and commercially sensitive information that would cause competitive harm if publicly disclosed.

9.      Requiring Emisar to reveal this confidential, competitively sensitive, and proprietary information or any other confidential, competitively sensitive, and proprietary information would have adverse consequences on Emisar's business.

I declare, under penalty of perjury that the foregoing is true and correct.

2

Executed: June 20, 2025 in Waxhaw, North Carolina.

Justin Lester (06/20/2025 14:03 EDT)

Justin Lester
Vice President and General Manager
Emisar Pharma Services LLC

# EXHIBIT 3



Park 80 West–Plaza One
250 Pehle Avenue
Suite 401
Saddle Brook, NJ 07663

(201) 845-9600 Main
(201) 845-9423 Fax

njlawfirm.com

Matthew F. Gately, Esq.
mfg@njlawfirm.com
Direct Line: (551) 497-7189

May 21, 2025

**VIA ECF**

Hon. Rukhsanah L. Singh, U.S.M.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse
402 East State Street
Trenton, NJ  08608

Re: *In re: Insulin Pricing Litigation,* Case No. 2:23-md-3080 (BRM) (RLS)

Dear Judge Singh:

Plaintiffs submit this letter, pursuant to the Court's Discovery Dispute Protocol, CMO #17 (ECF No. 386), and Rule 37, requesting the Court's entry of an order compelling certain discovery from Defendant Emisar Pharma Services LLC's ("Emisar"), the Rebate Aggregator for PBM Defendant OptumRx.[1]

---

[1] The Class Plaintiffs' Complaint includes Emisar and the other Rebate Aggregators as named Defendants with detailed factual allegations concerning their direct participation in the Insulin Pricing Scheme. *See, e.g.*, First Am. Consol. Class Action Compl., *Local 837 Health & Welfare Plan v. Eli Lilly & Co.*, No. 2:23-cv-20932 (D.N.J. Dec. 16, 2024) (ECF No. 17) ("Class Compl."), ¶¶ 474-478 ("Zinc, Ascent and Emisar acted as the agents for and at the direction of their respective PBM Defendant . . . . Had the Manufacturer Defendants not paid the unearned and undisclosed rebates and purported 'fees' (i.e. the bribes) to the PBM Defendants and their Rebate Aggregator agents/designees, the PBM's would not have granted the unwarranted and favorable formulary placement to the Manufacturer Defendants' Insulin Drugs."). Complaints within the Self-Funded Payer Track similarly contain allegations regarding the Rebate Aggregator Defendants, including Emisar. *See, e.g.*, *Cal. Schls. Voluntary Emps. Benefits Ass'n v. Eli Lilly & Co., et al.*, No. 2:25-cv-00311(BRM)(RLS) (D.N.J. Jan. 13, 2025), ECF No. 1; *s*, No. 2:25-cv-00232(BRM)(RLS) (D.N.J. Jan. 9, 2025). In addition, the Self-Funded Payer Track's pending omnibus motion for leave to amend additional actions within the track was filed on January 31, 2025 (ECF No. 406), and will be resolved in accordance with the Court's guidance in CMO #19 (Stipulation and Order Governing Motion for Leave to Amend in the Self-Funded Payer Track) (ECF No. 435). Other Plaintiffs in this MDL have not named the Rebate Aggregators as defendants but join in this submission as the requested discovery is relevant to the claims and is proportional to the needs of the case. Unless otherwise stated herein, the factual assertions in this brief regarding the Rebate

After several meet and confers, the remaining disputes between Plaintiffs and Emisar are narrow, but significant. Most importantly, Emisar has agreed to produce custodial documents that are responsive to Plaintiffs' Rule 34 requests insofar as they are captured by (still being negotiated) search terms, including in those circumstances where Emisar's original response objected to the requested production either in whole or in part. However, absent Court order Emisar will not:

1. include as a document custodian Heather Cianfrocco, Emisar's lone signatory to its "GPO Participation Agreement" with OptumRx who is also uniquely involved in other disputed issues;

2. search for and produce any documents in Emisar's possession, custody, or control that were created or dated before Emisar's June 11, 2021 incorporation, including documents transferred to Emisar from OptumRx; and

3. produce as "go-get" production the emails sent to or from irccu@optum.com, a dedicated email address that Emisar's rebate contracts with the Manufacturer Defendants identify for the sending to Emisar of any contract-related notices.

The above are highly relevant documents that Emisar does not deny exist and are in Emisar's possession, custody, or control. As set forth in the attached Appendix of Plaintiffs' Dispute Resolution Efforts, the parties are at impasse on the above disputes. Court rulings on these issues are now needed to move discovery forward.

Emisar has also failed to serve required discovery disclosures. To date and despite Plaintiffs' repeated requests, Emisar has still not provided its required "databases and non-custodial sources" disclosures required by the Court's ESI Order, CMO #11 (ECF No. 208). Absent an order from this Court directing Emisar to immediately serve its required disclosures, Emisar's continued delay will only further prejudice Plaintiffs.

I.      **Emisar Should Include Heather Cianfrocco as a Document Custodian.**

OptumRx formally established Emisar in 2021 to maximize drug rebate and fee retention while minimizing OptumRx's obligations to share that money flow with its health benefit plan clients. Emisar now performs the same rebate contracting and fee collection functions previously handled by OptumRx's industry relations team with virtually indistinguishable corporate boundaries. Indeed, Emisar has struggled to identify custodians that exclusively worked for Emisar during the Relevant Period. Uniquely positioned, however, at the heart of Emisar's creation is one individual that Emisar refuses to include as a custodian: Heather Cianfrocco, Emisar's President and CEO.

Ms. Cianfrocco was Emisar's signatory to its GPO Participation Agreement with OptumRx. *See* Ex. 3 at ORX-Insulin-MDL-0000009303. Ms. Cianfrocco executed that agreement as Emisar's "President and CEO" while, at the time, she was also the CEO for the contract's only other counterparty, OptumRx. *See* Ex. 4 (LinkedIn Bio). Ms. Cianfrocco's signature on behalf of

Aggregators' business practices and participation in the Insulin Pricing Scheme are based on the allegations in the Class and/or SFP complaints.

Emisar was electronically applied from her OptumRx email. *See* Ex. 3 at ORX-Insulin-MDL-0000009311. Ms. Cianfrocco's unique position as the CEO to both Emisar and OptumRx, where the separateness of these two Defendants is a disputed issue in the MDL, is grounds alone for Ms. Cianfrocco's inclusion as a custodian.

Ms. Cianfrocco was also uniquely involved in other relevant matters.



Such meetings, and related preparation and communications, are unique to her. She also testified before the United States Senate in early 2023 in her capacity as CEO of OptumRx that "OptumRx passes through 98% of the discounts . . . we negotiate to our customers," without accounting for the role and effect of Emisar and the other Rebate Aggregators, who at that point, had taken over from the PBMs the negotiation of the Manufacturer Rebates and Payments. *See* Heather Cianfrocco, Written Testimony, The Need to Make Insulin Affordable for All Americans (May 10, 2023) at 1, 3.[2] Her designation as the testimonial spokesperson on relevant insulin pricing and pass-through issues is also unique to her.

Though Ms. Cianfrocco should be included as a custodian on the above merits alone, it is worth noting that the additional cost to Emisar of including her as a custodian is also proportional.

Only three of Emisar's eight proffered custodians are unique to Emisar. These three are: (i) VP and GM Justin Lester; (ii) Industry Relations VP Angela Yanez; and (iii) Industry Relations VP Stephen Crowe. Emisar's five other custodians were already identified as document custodians for OptumRx[3]; thus, most of their responsive documents will already be subject to production as a result of the OptumRx document requests and related searches. Adding one more custodian for a total of four Emisar-specific custodians, represents a modest, incremental, and wholly proportional burden to Emisar, particularly given the significance of Ms. Cianfrocco's unique role and insights.[4]

Accordingly, Plaintiffs respectfully request that the Court order Emisar to include Ms. Cianfrocco as a document custodian.

II.    **Emisar Cannot Withhold Relevant, Responsive Documents in Its Possession, Custody, or Control Even If They Pre-Date Its June 11, 2021 Incorporation.**

Emisar and OptumRx are deeply integrated. Formally incorporated on June 11, 2021, Emisar has served as a functional extension of, or business unit within, OptumRx, created to assume the contracting and fee collection responsibilities that were previously handled by

---

[2] Available at:  https://www.help.senate.gov/download/testimony/cianfrocco-testimony

[3] These five are: (1) Industry Relations SVP Jamey Millar; (2) Industry Relations VP Rob Earnest; (3) Industry Relations VP Jack Daly; (4) Controller Matt Trok; and (5) Accounting Senior Director Linda Schroller.

[4] Throughout the meet and confer process, Emisar shied from its cooperation and transparency obligations in favor of piecemeal disclosures furthering its self-selected document custodians. Because the burden is and always remains on Emisar to identify the proper custodians for the documents requested, Plaintiffs reserve the right to seek additional document custodians as may be warranted by subsequent document production and/or other discovery.

OptumRx's industry relations team, often using the same OptumRx infrastructure and personnel for the conduct of Emisar's business. Such corporate entanglement cannot shield the production of relevant documents. Rule 34 obligates Emisar to produce the requested documents insofar as they are in its "possession, custody, or control," and makes no distinction for the origin, authorship, or date of such documents. *See* Fed. R. Civ. P. 34(a)(1).

After creating Emisar, OptumRx moved select personnel over to Emisar expressly to take over the Manufacturer Payment regime that OptumRx had itself been managing up to that point.



Despite evidence of extensive corporate entanglement and its own reliance on OptumRx employees to serve as Emisar document custodians, Emisar refuses to produce relevant custodial documents that pre-date Emisar's incorporation. While Emisar agrees to produce pre-incorporation documents from its three Emisar-only custodians (Crowe, Lester, and Yanez), Emisar refuses to produce any pre-incorporation document responsive to the Emisar requests and related searches from its five custodians that worked in dual capacities for Emisar and OptumRx (Millar, Earnest, Daly, Trok, and Schroller). *See* Ex. 10 at 2; Ex. 11 at ltr p. 1. This distinction is unsupported.

Emisar's blurred corporate infrastructure—characterized by shared personnel, systems, and functions with OptumRx—cannot be used as a shield to avoid producing relevant documents in the possession, custody, or control of Emisar's custodians. These custodians have been selected by Emisar because they performed work for or on behalf of Emisar and therefore are likely sources for documents responsive to the Emisar document requests. In fact, many were involved in Emisar's founding. Hence, all of Emisar's designated custodial sources need to be searched to locate responsive documents, including any relevant documents that pre-date Emisar's incorporation.[5]

---

[5] As discussed in Section I above, most of the Emisar-responsive documents from the OptumRx custodians are already subject to production as a result of the OptumRx requests and related searches. Emisar has not shown to the contrary, nor claimed, much less substantiated, any burden that is undue. Indeed, Emisar likely agreed to include these five OptumRx custodians precisely because they would already be obligated to produce much of Emisar-related discovery as a result of the OptumRx requests and related searches, and hence posed only modest additional incremental burden to include for Emisar discovery searches.

Accordingly, Plaintiffs respectfully request that the Court order Emisar to search for and produce all responsive custodial documents, including those pre-dating Emisar's June 11, 2021 incorporation, regardless of whether the custodial source is OptumRx or Emisar-only.

III.    **Emisar Should Produce irccu@optum.com as a "Go-Get" Production.**



Despite Plaintiffs' repeated requests for confirmation that Emisar will produce the documents sent to/from irccu@optum.com (*i.e.*, discoverable without search term application), including on March 18, March 25, April 15, April 22, April 29, and May 2, 2025, Emisar has ducked the issue. *Compare* Ex. 15 (March 18, 2025 follow-up), Ex. 16 (March 25, 2025 follow-up), *and* Ex. 17 (April 15-May 2, 2025 follow-ups), *with* Ex. 11 at ltr pp. 2-3 (Emisar May 6, 2025 response finally acknowledges but expressly responds only to "certain" issues other than Plaintiffs' request for the "irccu" documents). Because all of the communications sent to/from irccu@optum.com are locatable and discoverable without application of any search terms, Plaintiffs respectfully request that the Court order Emisar to produce those documents without application of any search terms.

IV.    **Emisar Must Serve Its Required and Long-Overdue Data, Database, and Non-Custodial Source Disclosures.**

In June 2024, the Court entered CMO #11 (ECF No. 208), which, among other things, obligates Emisar "to work together cooperatively throughout the discovery process" and particularly "with respect to the identification of relevant custodians and information sources," and the identification of responsive "databases, and non-custodial sources." *See* CMO #11 at 1, 7. Despite Plaintiffs' repeated requests since February 2025, Emisar still has yet to serve the data, database, and non-custodial disclosures required by CMO #11. *See, e.g.*, Ex. 18 (March 3, 2025 follow-up); Ex. 16 (March 25, 2025 follow-up); Ex. 17 (April 15-May 2, 2025 follow-ups). The Court should not permit Emisar's continued evasion and delays, and should order Emisar to immediately provide its data, database, and non-custodial disclosures.

Respectfully submitted,

*/s/ Matthew F. Gately*
Matthew F. Gately

**Appendix of Plaintiffs' Dispute Resolution Efforts**

1. On February 18, 2025, Plaintiffs sent Emisar a letter detailing the deficiencies in Emisar's January 27, 2025 responses and objections to Plaintiffs' December 20, 2024 Rule 34 document requests. A copy of Emisar's objections and responses is attached as Ex. 1, and a copy of Plaintiffs' February 18, 2025 letter is attached as Ex. 2.

2. Among other things, Plaintiffs' February 18, 2025 letter requested that Emisar provide by February 24, 2005 the disclosures required by CMO 11, namely Emisar's "custodians, databases and non-custodial sources." Ex. 2 at 1 (quoting CMO #11). Emisar did not provide those disclosures as requested. Indeed, the database and complete non-custodial source disclosures are still owed.

3. The parties met and conferred on March 3, 2025. The sum and substance of this meet and confer is memorialized by Plaintiffs' March 3, 2025 letter, a copy of which is attached as Ex. 18. Plaintiffs also engaged in some preliminary discussion regarding Emisar's custodians, describing for Emisar, by role and/or responsibility, the kinds of individuals Plaintiffs believed would likely have the kinds of documents requested and therefore should be included as custodians. *See* Ex. 18 at 4.

4. Emisar agreed to further meet and confer, one week later, on March 10, 2025, and represented that it would provide it required data disclosures in "as much as two weeks" but possibly "sooner." *See id.* at 5. To date, Emisar has still did not served those disclosures.

5. On March 7, 2025, Emisar served by letter its proposed search terms and its three proposed custodians, all of whom were the same three "Emisar" custodians OptumRx had previously identified in January 2025. A copy of Emisar's March 7, 2025 letter is attached as Ex. 19.

6. On March 10, 2025, the parties met and conferred again for one hour. The sum and substance of this meet and confer is memorialized by Plaintiffs' March 11, 2025 letter, a copy of which is attached as Ex. 20. During this meeting Emisar agreed to run Emisar search terms on two OptumRx-designated custodians, Rob Earnest and Jamey Millar. *See id.* at 3.

7. The parties next met and conferred, another week later, on March 17, 2025. The sum and substance of this March 17 meet and confer is memorialized by Plaintiffs' March 18, 2025 letter, a copy of which is attached as Ex. 15.

8. During the March 17, 2025 meet and confer, Emisar agreed that it would produce custodial documents responsive to Plaintiffs' Rule 34 requests if hit by agreed-upon search terms. *See* Ex. 15 at 1. Whether Emisar would agree to run searches for specific categories of documents to which it had objected to producing was a separate question that the parties tabled pending search term negotiations. *Id.* Those search term negotiations are presently ongoing.

9.  During the March 17, 2025 meet and confer, the parties also discussed various custodian issues, including whether Emisar would agree to add Heather Cianfrocco as a custodian and produce the communications sent to/from "irccu@optum.com." *Id.* at 2-3.

10. The parties met and conferred again on March 25, 2025. The sum and substance of this meet and confer is memorialized by Plaintiffs' March 25, 2025 letter, a copy of which is attached as Ex. 21.

11. During this March 25, 2025 meet and confer, Emisar again confirmed it would produce responsive custodial documents insofar as they hit on agreed-upon search terms notwithstanding its original written objections to production. *See id.* at 1. Emisar also reversed its prior position on production of documents pre-dating Emisar's incorporation, now taking the position that it would not search for, nor produce any responsive documents that pre-dated Emisar's incorporation. *Id.* at 2. When Plaintiffs declared impasse on the issue, Emisar requested the opportunity to further consider, and committed to "promptly confirm whether Emisar agrees to also search for and produce its responsive pre-founding documents." *Id.* at 3. Emisar also represented that it was "still" considering whether it will "produce the documents sent to/from irccu@optum.com, and agree to add Heather Cianfrocco" as an additional custodian. Plaintiffs also again requested Emisar's long overdue data disclosures. *Id.* at 6.

12. In a March 28, 2025 letter, a copy of which is attached as Ex. 10, Emisar responded to Plaintiffs' request for Emisar to include as custodians the personnel responsible for forecasting, budgeting, or modeling the Manufacturer Payments to Emisar, then filtered through to OptumRx, by adding Matt Trok as another OptumRx designated custodian for which Emisar searches would also be applied. *Id.* at 2. Emisar also confirmed Jack Daly as another OptumRx custodian that Emisar would search. *Id.* Emisar also suggested that Emisar's search for pre-incorporation documents be limited to its Emisar-only Custodians (Crowe, Lester, and Yanez), but did not address the request for production of the irccu@optum.com communications nor the addition of Ms. Cianfrocco as a custodian. *Id.*

13. Emisar's March 28, 2025 letter also claimed it did not have to provide its long overdue "data proposal" because Plaintiffs had yet to respond to Emisar's March 7, 2025 search term proposal. *Id.* at 1. But Emisar's obligation to provide its data disclosures is independent from and unrelated to the parties' search term negotiations.

14. In an April 2, 2025 email, Emisar represented that it was "out of the country on Spring Break" and "will be unable" to follow-up on any of the outstanding issues "this week." A copy of this email is attached as Ex. 22.

15. On April 15, 2025, Plaintiffs emailed Emisar counter-proposed search terms, and requested a meet and confer to follow-up on, among other things, Emisar's overdue data disclosures and Emisar's final position on the pre-incorporation documents, the irccu communications, and adding Ms. Cianfrocco as a custodian. Plaintiffs followed-up on these issues on April

22, April 29, and May 2, 2025. A copy of Plaintiffs April 15, 2025 email and subsequent follow-ups is attached as Ex. 17.

16. On May 6, 2025, Emisar finally responded to Plaintiffs' April 15, 2025 email, after numerous follow-ups, though still did not confirm a time for the requested meet and confer. A copy of this May 6, 2025 Emisar letter and its covering email is attached as Ex. 11. Emisar's May 6, 2025 letter identified which already-designated custodians would provide discovery on the various issues Plaintiffs had first identified during the parties' March 3, 2025 meet and confer, and added Linda Schroller as another OptumRx finance custodian who would be subjected to the Emisar search terms. *Id.* at ltr pp. 2-3. For the pre-incorporation documents, Emisar re-iterated its objection to any such discovery and that, if at all, only its three Emisar-only custodians should be searched. *Id.* at ltr p. 1. Emisar also refused to add Ms. Cianfrocco as a custodian. *Id.* at 3. Emisar acknowledged Plaintiffs' request for production of the "irccu" documents but then expressly responded only to "certain" issues other than the long outstanding "irccu" issue, thus confirming the parties' impasse. *Id.* at ltr. pp. 2-3.

# EXHIBIT 4



**THOMAS P. SCRIVO**
tscrivo@oslaw.com

May 29, 2025

**By CM/ECF**

Honorable Rukhsanah L. Singh, U.S.M.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Fed. Bldg. & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

Re:     *In re: Insulin Pricing Litigation*, **MDL No. 3080**
         **Case No. 2:23-md-03080-BRM-RLS**

Dear Judge Singh:

We write in accordance with the Court's Discovery Dispute Protocol, Case Management Order No. 17, to submit Emisar Pharma Services LLC's response to Plaintiffs' May 21, 2025 letter. ECF No. 386. Plaintiffs have rushed to the Court seeking relief to which they are not entitled, raising issues that are not ripe for the Court's resolution. The Court should reject Plaintiffs' demand for more custodians and premature invitation to intervene in the parties' ongoing discovery negotiations.

**Discovery of Emisar Must be Proportional to Its Limited Existence.**

Plaintiffs' approach to discovery of Emisar—including their motion to compel—starts from the flawed premise that there is no proportionality limit on discovery. That any discovery of Emisar must be proportional to the litigation's needs is among the most basic discovery principles. *See* Fed. R. Civ. P. 26(b)(1). The Court has ordered that discovery is limited to January 1, 2011 through January 1, 2023. Emisar did not form until 2021 and did not receive any payments from the Manufacturer Defendants until the fall of 2022, just a few months before the end of the discovery timeframe that this Court has established. Altogether, Emisar existed for less than two years at the very end of the discovery timeframe, and it is a named defendant in just approximately one-third of the cases consolidated in this MDL (including none in the State AG Track). It is hard to understand how discovery from Emisar is relevant at all to Plaintiffs' claims that insulin list prices were inflated for the decade before Emisar existed, but in any case, any discovery from Emisar must be proportional to the reality that it did not exist during most of the timeframe in question. Given the limited window during which Emisar existed and contracted with the

Honorable Rukhsanah L. Singh, U.S.M.J.
May 29, 2025
Page 2

Manufacturer Defendants, Plaintiffs are not entitled to the ever-expanding array of discovery they
seek from Emisar.

Despite this reality, Plaintiffs have taken an overly broad and disproportional approach to
discovery from Emisar. They have repeatedly asked for more custodians, more information, and
more documents. They have issued lists of questions about already-identified custodians and then
follow-up lists on top of their existing lists. In short, Plaintiffs have engaged (and continue to
engage) in burdensome, inappropriate discovery on discovery, with no end in sight. But "the
Federal Rules of Civil Procedure require only a reasonable search for responsive information
pursuant to a 'reasonably comprehensive search strategy.'" *Enslin v. Coca-Cola Co.*, No. 2:14-
cv-06476, 2016 U.S. Dist. LEXIS 193556, at *8 (E.D. Pa. June 8, 2016) (quoting *Treppel v.
Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006)); *see id.* ("[T]here is no obligation on the
part of a responding party to examine every scrap of paper in its potentially voluminous files.").
As explained below, the Court should reject Plaintiffs' unnecessary demands and rein in their
discovery spree to account for Emisar's limited existence.[1]

**Plaintiffs Are Not Entitled to Additional Custodians.**

The Court should deny Plaintiffs' demand for additional custodians and reject the notion that they
can add as many custodians as they see fit.[2] Emisar is "best situated" to evaluate the appropriate
custodians. *Enslin*, 2016 U.S. Dist. LEXIS 193556 at *2; *see* Order at 2–3, ECF No. 547
(recognizing "presumption" that defendants "are best situated to determine how to conduct a
reasonable inquiry to search and produce responsive, proportional, and non-privileged ESI
through their respective proposals as to custodians"). Emisar has reasonably and in good faith
identified three Emisar-specific and five additional OptumRx custodians most likely to possess
materials responsive to Plaintiffs' discovery requests, including Emisar's Vice President and
General Manager, the Industry Relations leads who were responsible for contractual negotiations
with each Manufacturer Defendant, and two others who bear on Plaintiffs' requests for finance-
related custodians. The eight custodians identified are reasonable, appropriate, and proportional

---

[1] The parties have met and conferred about Plaintiffs' discovery to Emisar on at least four
occasions, with Emisar approaching each conversation in good faith. In fact, the parties were still
negotiating search terms and discussing certain of Emisar's written responses when Plaintiffs filed
their dispute letter. To be clear, while Emisar has not agreed to withdraw any of its well-founded
objections, Emisar has continued to engage with Plaintiffs and has even explained to Plaintiffs
that, notwithstanding its objections, if a document hits on the agreed-on terms and is relevant,
responsive to Plaintiffs' Requests, not privileged, and within the court-ordered discovery
timeframe, it will produce the document.

[2] Plaintiffs note that they may "seek additional document custodians as may be warranted by
subsequent document production and/or other discovery." Pls.' Letter at 3 n.4. In doing so,
Plaintiffs suggest that they can engage in a never-ending process of discovery on discovery and
add more and more custodians along the way. That is not and cannot be how discovery works. The
Court should cut this approach off at the pass and rule that Plaintiffs are not permitted to seek
additional custodians from Emisar.

Honorable Rukhsanah L. Singh, U.S.M.J.
May 29, 2025
Page 3

in light of Emisar's limited existence at the end of the relevant timeframe and the issues in this case. Plaintiffs' insistence on more custodians is unwarranted, and Plaintiffs are incorrect to argue that adding more custodians would be proportional under these circumstances.

Plaintiffs seek to compel Emisar to name Heather Cianfrocco as a custodian and retrieve "all of the communications sent to/from irccu@optum.com." Pls.' Letter at 2, 5. Neither demand is appropriate or necessary. Emisar is not required to identify every single individual (or email account) with potentially relevant information. *See, e.g.*, *Enslin*, 2016 U.S. Dist. LEXIS 193556 at *10 ("[T]he fact that a person may have had some connection to the events in question does not automatically mean that such person must be included as an ESI custodian."). The Court ordered the parties to identify individuals "most likely" to possess responsive documents and information. CMO No. 11, ECF No. 208. Emisar has complied with that obligation.

Plaintiffs have the burden to show that Emisar's identified custodians are inadequate and that any additional custodians "would provide unique relevant information not already obtained." *Enslin*, 2016 U.S. Dist. LEXIS 193556 at *10-11 (quoting *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107-08 (S.D.N.Y. 2013)). Plaintiffs fail on both fronts. They do not explain why the identified custodians—including Emisar's Vice President and General Manager—are inadequate. Their motion to compel should be denied on that ground alone.

But Plaintiffs also have not established that Ms. Cianfrocco will have any unique information they will not obtain from other custodians, including senior-level leaders at Emisar and OptumRx who have already been identified.[3] *See* Order at 2, ECF No. 547 ("Plaintiffs have not shown that the sought-after additional custodians would provide any unique information different than what may be provided through the custodians proposed . . ."). Plaintiffs speculate that her senior role and signature on a contract between OptumRx and Emisar justify her inclusion, but their speculation does not provide sufficient grounds to require her to be added as a custodian. *See, e.g.*, *Enslin*, 2016 U.S. Dist. LEXIS 193556 at *10-11 (rejecting demand for custodians based on individuals' "roles and responsibilities at The Coca-Cola Company, with the implication that they must be included as custodians by virtue of the fact that they occupied senior roles in the Company's information technology groups"); *In Mortg. Resolution Servicing v. JPMorgan Chase Bank, N.A.*, 2017 U.S. Dist. LEXIS 78217, *9 (S.D.N.Y. May 18, 2017) ("speculation that his position as a senior executive might increase the relevance of his files is not a basis for designating him as a custodian").

In fact, courts have rejected the notion that individuals should be designated as custodians simply because they served in an executive or other leadership role at a company. *See, e.g.*, *Harris v.*

---

[3] Plaintiffs claim they are entitled to Ms. Cianfrocco as a custodian because "the separateness of [Emisar and OptumRx] is a disputed issue." Pls.' Letter at 3. Emisar does not concede that the "separateness" of the companies is relevant to Plaintiffs' claims, but if that is an issue they wish to explore, Emisar has identified custodians from both companies, and Plaintiffs have failed to establish why the identified custodians are insufficient and Ms. Cianfrocco is necessary. Again, it appears that Plaintiffs simply want Ms. Cianfrocco identified because of her job title rather than a substantive rationale that bears on their claims.

Honorable Rukhsanah L. Singh, U.S.M.J.
May 29, 2025
Page 4

*Union Pac. R.R. Co.*, No. 8:16CV381, 2018 U.S. Dist. LEXIS 95079, at *10 (D. Neb. June 6, 2018) (denying motion to compel production of CEO's emails as plaintiffs failed to show "this information is necessary and not cumulative of other materials"); *Lauris v. Novartis AG*, No. 1:16-cv-00393-LJO-SAB, 2016 U.S. Dist. LEXIS 170203, at *14-15 (E.D. Cal. Dec. 7, 2016) ("Plaintiffs have not shown that the discovery plan proposed by Defendants would not produce responsive documents and given the costs of e-discovery here, the Court will require more than mere speculation to order Defendants to include the apex custodians in the search protocol."); *Lutzeier v. Citigroup Inc.*, No. 4:14-cv-00183-RLW, 2015 U.S. Dist. LEXIS 11727, at *20 (E.D. Mo. Feb. 2, 2015) ("Plaintiff has not satisfied his burden to show that these high level executives have unique or personal knowledge of the subject matter that warrants their information."). The same result should follow here. Emisar should not be forced to add Ms. Cianfrocco as a custodian simply because of her job title.

Plaintiffs' other proffered rationales fare no better. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs misconstrue the lone document they cite and, again, they cannot rely on speculation to justify adding a custodian. *See Enslin*, 2016 U.S. Dist. LEXIS 193556 at *10; *In Mortg. Resolution Servicing*, 2017 U.S. Dist. LEXIS 78217 at *9. Plaintiffs also reference Ms. Cianfrocco's testimony before the United States Senate in another effort to cast her as someone with a "unique role and insights," Pls.' Letter at 3, but that testimony is from *May 10, 2023*, beyond the relevant timeframe for discovery set by the Court, and does not establish that she should be identified as a custodian.

Emisar has identified appropriate custodians, including leaders at Emisar and OptumRx and the Industry Relations leads responsible for negotiations with each Manufacturer Defendant. Plaintiffs have not otherwise explained why they need another custodian on this topic or any other topics alluded to in their letter. Because they have not met their burden of establishing the identified custodians are inadequate *or* that a new custodian will have information not covered by those custodians, the Court should deny Plaintiffs' request to add Ms. Cianfrocco.

*****

Emisar does not concede that Plaintiffs are entitled to any additional custodians or otherwise agree with Plaintiffs' characterization of the ircccu@optum.com email account. But in the spirit of compromise and good faith, Emisar is willing to search the email address ircccu@optum.com for responsive information. The Court should reject Plaintiffs' belated suggestion that ircccu@optum.com be treated as a "go-get" item exempt from the application of search terms.[4]

---

[4] Though Plaintiffs ask the Court to order Emisar to produce communications sent to or from ircccu@optum.com without the application of any search terms, they have previously demanded that that email account be searched consistent with custodial discovery. *See* Pls.' Ex. 15 at 2 (Plaintiffs' letter seeking additional custodians, including the ircccu@optum.com email address); Pls.' Ex. 17 (Plaintiffs' email asking about "open custodian issues," including "adding irccu").

Honorable Rukhsanah L. Singh, U.S.M.J.
May 29, 2025
Page 5

**Emisar Has Already Agreed to Produce Documents That Pre-Date Its Formation.**

Plaintiffs inaccurately claim that "Emisar refuses to produce relevant custodial documents that pre-date Emisar's incorporation" and "refuses to produce any pre-incorporation document responsive to the Emisar requests and related searches from its five custodians that worked in dual capacities for Emisar and OptumRx." Pls.' Letter at 4. That is not true. Emisar has not refused to produce documents that pre-date its incorporation, whether from Emisar or OptumRx custodial sources.

Instead, as Plaintiffs acknowledge, Emisar has agreed to produce documents from Justin Lester, Stephen Crowe, and Angela Yanez that pre-date their time working for Emisar. And Emisar has no intention of withholding non-privileged, responsive documents from the OptumRx custodians simply because they pre-date Emisar's formation, nor has Emisar communicated such an intention to Plaintiffs. Plaintiffs are trying to invent a dispute where none exists. As such, the Court should reject Plaintiffs' unnecessary demand for an order that Emisar "search for and produce all responsive custodial documents, including those pre-dating Emisar's June 11, 2021 incorporation, regardless of whether the custodial source is OptumRx or Emisar-only." Pls.' Letter at 5.

**Emisar Will Comply with the Court's Order Regarding Data.**

Emisar will comply with its obligations under the Court's Orders, and there is no need to compel Emisar to "immediately provide its data, database, and non-custodial disclosures." Pls.' Letter at 5. Plaintiffs have lodged granular request after granular request for follow up information and additional custodians at Emisar for months now. For example, the parties met and conferred four times in March, and every time, Plaintiffs rolled out new requests. And they continue to do so. Plaintiffs' piecemeal approach to discovery is inefficient and unproductive. Emisar will continue to work with Plaintiffs in good faith as required by the Court, and the Court should reject Plaintiffs' attempt to expend judicial resources on resolving disputes that are not ripe.

*****

We appreciate the Court's attention to these matters.

Respectfully submitted,

*/s/ Thomas P. Scrivo*                          */s/ Liz Broadway Brown*
Thomas P. Scrivo                                Liz Broadway Brown
                                                **ALSTON & BIRD LLP**
                                                One Atlantic Center
                                                1201 W. Peachtree Street,
                                                N.W., Ste. 4900
Cc:                                             Atlanta, GA 30309-3424
Honorable Brian R. Martinotti,                  T: (404) 881-7000
U.S.D.J.                                         Fax: (404) 881-7777
All counsel of record                           liz.brown@alston.com

5

# EXHIBIT 7

**From:** Crowe, Stephen [stephen.crowe@optum.com]
**Sent:** 10/21/2021 3:51:19 PM
**To:** Millar, James G [jamey.millar@optum.com]; Lester, Justin [Justin.Lester@optum.com]; Bick, Martin /US [martin.bick@sanofi.com]; Bochniak, Kristi /US [kristi.bochniak@sanofi.com]; Hathorn, Adam /US [adam.hathorn@sanofi.com]; Alton, Nathan /US [nathan.alton@sanofi.com]; Marchessault, Ron /US [ron.marchessault@sanofi.com]; Greig, Scott /US [scott.greig@sanofi.com]; Bexley, Daye /US [daye.bexley@sanofi.com]; Miller, Todd /US [todd.miller@sanofi.com]; Crawford, Marcus /US [marcus.crawford@sanofi.com]; Carson, Karl /US [karl.carson@sanofi.com]

**Subject:** Sanofi-ORx Emisar Analytics Gateway Discussion
**Attachments:** image001.png; ALL_BUs_Emisar_DataPortal_101321.pdf
**Location:** Microsoft Teams Meeting

**Start:** 11/1/2021 5:00:00 PM
**End:** 11/1/2021 5:30:00 PM
**Show Time As:** Tentative

**Recurrence:** (none)

Hi All,

I am setting this call to allow our organizations to discuss Sanofi's Emisar Analytics Gateway recently provided offer (attached).

---

**Stephen Crowe, BSc, MSc | OptumRx**
Snr. Director, Industry Relations

Address: Block C, One Spencer Dock, North Wall Quay, Dublin 1, D01X9R7
Office: +353-1-865-1050
Mobile: █████████
Email: stephen.crowe@optum.com
Website : www.optumrx.com



*This e-mail, including attachments, may include confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately.*

---

## Microsoft Teams meeting

### Join on your computer or mobile app
Click here to join the meeting

**Join with a video conferencing device**

425899727@t.plcm.vc

Video Conference ID: 115 141 352 6

Alternate VTC instructions

**Or call in (audio only)**

+353 1 436 2909,,127192857#   Ireland, Dublin

Phone Conference ID: 127 192 857#

Find a local number | Reset PIN

Learn More | Help | Meeting options

This e-mail, including attachments, may include confidential and/or
proprietary information, and may be used only by the person or entity
to which it is addressed. If the reader of this e-mail is not the intended
recipient or his or her authorized agent, the reader is hereby notified
that any dissemination, distribution or copying of this e-mail is
prohibited. If you have received this e-mail in error, please notify the
sender by replying to this message and delete this e-mail immediately.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                        SAMDL001488619

# EXHIBIT 10

# ALSTON & BIRD

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
404-881-7000 | Fax: 404-881-7777

Liz Broadway Brown                    Direct Dial: **+1 404 881 4688**                    Email: **liz.brown@alston.com**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

March 28, 2025

**BY E-MAIL**

Bradley J. Demuth
FARUQI & FARUQI
685 Third Avenue, 26th Floor
New York, NY 10017

Re:    *In re Insulin Pricing Litigation*, No. 2:23-md-03080 (D.N.J.)

Counsel:

I write on Emisar Pharma Services LLC's behalf to respond to your March 18, 2025 and March 25, 2025 letters. Emisar provides the information below—subject to and without waiving any of its defenses or objections to Plaintiffs' written discovery requests—to advance the parties' negotiations. Emisar expressly reserves all rights—including the right to respond to your additional inquiries in subsequent correspondence in due course—and does not waive any objections to Plaintiffs' Requests for Production. You have again invited us to let you know if your correspondence contains any "inaccuracies" in its attempts to memorialize our meet-and-confer discussions. As with your prior correspondence, it does.

**Plaintiffs' Unreasonable Approach to Discovery Negotiations**

Emisar will continue to meet and confer with Plaintiffs in good faith. But Plaintiffs' approach to the parties' discussions to date is unproductive, not contemplated under the applicable rules and orders, and inconsistent with the Court's directive to engage in a cooperative discovery process. Emisar has now held calls with Plaintiffs for more than four hours—at least an hour every week in March so far. Every time the parties speak, Plaintiffs raise new questions and topics or attempt to drill down on a nested doll-like series of follow-up requests, despite their opportunity to issue clear, specific requests from the outset. We are not obligated to sit for a deposition under the guise of a meet and confer.

Emisar provided a search term proposal on March 7—three weeks ago—and Plaintiffs have not responded. Your letter claims that we "agreed to table for now" the question of search terms and that "Emisar would consider any search terms Plaintiffs proposed." March 18, 2025 Letter from B. Demuth. That is wrong. You have complained that Emisar has not provided a data proposal and other information, but Plaintiffs have not shown any indication that they have considered the proposals Emisar *has* provided.

*In re Insulin Pricing Litigation*, No. 2:23-md-03080 (D.N.J.)
Page 2

**Custodian Inquiries**

In your March 18, 2025 letter, you incorrectly claim that Emisar failed "to timely provide custodian-selection information that Plaintiffs had asked Emisar to provide weeks ago." March 18, 2025 Letter from B. Demuth. Plaintiffs' voluminous inquiries take time to investigate, especially when—as explained above—Plaintiffs continue to move the goalposts.

In any case, Plaintiffs' demands for information about custodians assume that Plaintiffs are entitled to granular information about custodians and non-custodians alike. They are not. *See* March 18, 2025 Letter from L. Brown (citing *Enslin v. Coca-Cola Co.*, No. 2:14-cv-06476, 2016 U.S. Dist. LEXIS 193556, at *2 (E.D. Pa. June 8, 2016)). Plaintiffs have not offered a meaningful response to that point—they have sought more information for the sake of more information. Plaintiffs cannot continue to demand discovery on discovery with no end in sight.

*Existing Custodians*

The three custodians that Emisar has offered, together with the three identified OptumRx custodians who are likely to possess responsive information (Jamey Millar, Rob Earnest, and Jack Daly), are appropriate and sufficient. As we have explained multiple times, Emisar did not form until 2021 or begin operations in earnest until 2022. Emisar's limited existence at the very end of the timeframe demonstrates that Plaintiffs' overbroad requests are disproportionate to the litigation's needs. *See, e.g.*, *Doe v. Schuylkill Cty. Courthouse*, No. 3:21-CV-477, 2023 U.S. Dist. LEXIS 141793, at *8 (M.D. Pa. Aug. 14, 2023) ("there is a significant temporal gulf between these events, a fact which makes the relevance of this 2023 employment action attenuated from the claims in this lawsuit"). We nevertheless disagree that the parties are at an impasse on this or any of the other issues raised in your letters. As an example of Emisar's willingness to continue negotiating in good faith, in the spirit of compromise and subject to and without waiving its objections, Emisar is willing to run its proposed search terms over Justin Lester, Angela Yanez, and Stephen Crowe's custodial files before they began their work for Emisar.

*"Finance" Custodians*

Plaintiffs recently clarified their request about "personnel at Emisar who were tracking the money from one side of the transaction chain (i.e., rebate and other payments made by the Defendant Manufacturers to Emisar) to the other side (i.e., payment by Emisar to OptumRx of the portions of the monies paid to Emisar by the Defendant Manufacturers) and the portion of those monies that Emisar retained." March 25, 2025 Letter from B. Demuth at 4. Emisar is willing to identify Matt Trok, a custodian that OptumRx has also identified, as a finance custodian.

*"Plan-Related" Issues*

You also asked about "Plan-related issues – for example issues concerning audit or accounting requests from OptumRx clients that require input from Emisar personnel," March 18, 2025 Letter from B. Demuth at 3, although during the March 25, 2025 meet and confer and in your correspondence that same day, you clarified that your inquiry encompasses "personnel responsible for handling audit requests, like those expressly provided for in its contract with OptumRx, and specifically audit requests involving OptumRx's clients." March 25, 2025 Letter from B. Demuth at 5.

*In re Insulin Pricing Litigation*, No. 2:23-md-03080 (D.N.J.)
Page 3



Inasmuch as an OptumRx client sought a rebate audit, that audit would be specific to that client and in accordance with the terms of that client's contract with OptumRx. Moreover, as we have noted previously, this topic is beyond the scope of master discovery. Emisar is not obligated to identify a custodian related to PBM client audits.

**"Go-Get" Documents**

Emisar is willing to produce agreements with the Manufacturer Defendants within the timeframe that can be identified after a reasonably diligent search. Emisar will follow up about Plaintiffs' other inquiries regarding certain policies, procedures, and "corporate formation documents." March 25, 2025 Letter from B. Demuth at 5.

**RFP No. 35**

You have inquired whether Emisar will consider discovery beyond the Court-ordered relevant time period—through January 1, 2023—as to Request for Production No. 35 concerning the 2023 price cuts. We require additional time to consult with our client on this issue and intend to get back to you early next week.

\* \* \*

Emisar is considering your other demands and inquiries and will follow up on them in due course inasmuch as they are appropriate in light of the relevance and proportionality concerns we have raised previously. Emisar expressly reserves all rights, including its right to revise, supplement, or amend the information provided in this correspondence, and does not waive any of its objections to Plaintiffs' requests.

Sincerely,

Liz Broadway Brown