## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case No. 2:23-MD-03080**<br>**MDL No. 3080**<br><br>**JUDGE BRIAN R. MARTINOTTI**<br>**JUDGE LEDA D. WETTRE**<br><br>**ORAL ARGUMENT REQUESTED** |

**THIS DOCUMENT RELATES TO:**

*People of the Government of Puerto Rico v. Eli & Lilly Co., et al.*, No. 2:25-cv-1845-BRM-LDW

### PBM DEFENDANTS' OPPOSITION TO THE GOVERNMENT OF PUERTO RICO'S MOTION FOR LEAVE TO AMEND COMPLAINT

(Counsel Listed on Next Pages)

Kevin H. Marino
John D. Tortorella
**MARINO, TORTORELLA & BOYLE, P.C.**
437 Southern Boulevard
Chatham, New Jersey 07928
T: (973) 824-9300
F: (973) 824-8425
kmarino@khmarino.com
jtortorella@khmarino.com

Enu Mainigi
Craig Singer
R. Kennon Poteat III
A. Joshua Podoll
Benjamin Hazelwood
Daniel Dockery
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, S.W.
Washington, D.C. 20024
T: (202) 434-5000
F: (202) 434-5029
emainigi@wc.com
csinger@wc.com
kpoteat@wc.com
apodoll@wc.com
bhazelwood@wc.com
ddockery@wc.com

*Counsel for CaremarkPCS Health, L.L.C.; Caremark Puerto Rico, L.L.C.*

Thomas P. Scrivo
Young Yu
**O'TOOLE SCRIVO, LLC**
14 Village Park Road
Cedar Grove, NJ 07009
T: (973) 239-5700
tscrivo@oslaw.com
yyu@oslaw.com

Brian D. Boone
**ALSTON & BIRD LLP**
1120 S. Tyron St., Ste. 300
Charlotte, NC 28203
T: (704) 444-1000
brian.boone@alston.com

Elizabeth Broadway Brown
**ALSTON & BIRD LLP**
1201 W. Peachtree St. NW, Ste. 4900
Atlanta, GA 30309
T: (404) 881-7000
liz.brown@alston.com

Kelley Connolly Barnaby
**ALSTON & BIRD LLP**
950 F Street, NW
Washington, D.C. 20004
T: (202) 239-3300
kelley.barnaby@alston.com

Jordan Edwards
**ALSTON & BIRD LLP**
1201 W. Peachtree St. NW, Ste. 4900
Atlanta, GA 30309
T: (404) 881-7000
jordan.edwards@alston.com

*Counsel for Defendant OptumRx, Inc.*


Jason R. Scherr
Elise M. Attridge
Lindsey T. Levy
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004-2541
jr.scherr@morganlewis.com
elise.attridge@morganlewis.com
lindsey.levy@morganlewis.com
Tel: (202) 739-3000

*Counsel for Express Scripts, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

BACKGROUND ....................................................................................2

    A.    The Government Files this Insulin-Pricing Case in January 2023. ..................................................................................2

    B.    The Government Litigates This Insulin-Pricing Case in the Court of First Instance. ............................................................4

    C.    The First Circuit Returns the Case to Federal Court and the JPML Conditionally Transfers It to the MDL. ......................5

    D.    The Transferor Court Denies the Government's Attempt to Amend Its Complaint to Avoid the MDL. ..............................5

    E.    The Transferor Court Denies the Government's Request to Bring Its Broader Claims Outside the MDL. ........................8

    F.    The Government Asks This Court to Undo the Transferor Court's Rulings. ......................................................................9

ARGUMENT .......................................................................................10

I.    The Government's Motion Is Barred By Law Of The Case. .........................10

II.    The Government's Motion Is An Improper And Untimely Motion For Reconsideration. ..........................................................................20

III.    The District Of Puerto Rico's Ruling Was Correct. ......................................24

    A.    The Proposed Amendment Was Unduly Delayed. ..............................24

    B.    The Proposed Amendment Was Improper Gamesmanship. .................27

    C.    The Proposed Amendment Would Prejudice Defendants. ..................31

IV.    The Manufacturer Defendants' Alternative Suggestion to Sever Non-Diabetes Claims Is Baseless and Premature. .........................................34

CONCLUSION .....................................................................................35

## <u>TABLE OF AUTHORITIES</u>

### CASES

*ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46 (1st Cir. 2008) .......................24

*Bank v. Spark Energy, LLC*, 2020 WL 6873436 (E.D.N.Y. Nov. 23, 2020) ...........................................................................................28

*Bouie v. Equistar Chems. LP*, 188 F. App'x 233 (5th Cir. 2006) ..........................28

*Calderón-Serra v. Wilmington Tr. Co.*, 715 F.3d 14 (1st Cir. 2013) .....................24

*Calkins v. USAA Cas. Ins. Co.*, 2016 WL 3360429 (M.D. Fla. 2016) ...................27

*Calzadillas v. Wonderful Co.*, 2019 WL 5448308 (E.D. Cal. Oct. 24, 2019) ...........................................................................................28

*Chandler v. Phoenix Servs., L.L.C.*, 45 F.4th 807 (5th Cir. 2022) .........................14

*Christianson v. Colt Indus. Op. Corp.*, 486 U.S. 800 (1988) .....................11, 14, 15

*CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612 (3d Cir. 2013)......................24, 32

*Crespo v. Pabon-Charneco*, 2025 WL 835875 (D.P.R. Mar. 17, 2025)................21

*Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267 (3d Cir. 2001).........19, 24

*Deasy v. Hill*, 833 F.2d 38 (4th Cir. 1987) .............................................................31

*Diaz v. Ameriquest Mortg. Co.*, 2014 WL 26265 (N.D. Ill. Jan. 2, 2014) .............28

*Echols v. United States*, 2022 WL 16576489 (D.N.J. Nov. 1, 2022).....................21

*Est. of Rivera v. Dr. Susoni Hosp., Inc.*, 323 F. Supp. 2d 262 (D.P.R. 2004) ...........................................................................................21

*Ferrer v. Misey Restaurant, Inc.*, 2020 WL 13646258 (D.P.R. Jan. 30, 2020) ...........................................................................................20

*Fleet Connect Sols LLC v. C.R. England, Inc.*, 2024 WL 5679163 (C.D. Cal. Nov. 15, 2024)...........................................................................28, 33

*Flood v. Bank of Am. Corp.*, 2012 WL 6111451 (D. Me. Dec. 10, 2012) .............31

*Garcia Rodriguez v. Lamboy*, 2009 WL 10720797 (D.P.R. Mar. 24, 2009) ...................................................................................22

*Gelboim v. Bank of Am. Corp.*, 574 U.S. 405 (2015) ............................30

*Gonzalez v. Tomasini v. U.S. Postal Serv.*, 2022 WL 2820073 (D.P.R. July 19, 2022) ...........................................................20

*Greco v. Grewal*, 2020 WL 7334194 (D.N.J. Dec. 11, 2020) ................16

*GSS Props., Inc. v. Kendale Shopping Ctr., Inc.,* 119 F.R.D 379 (M.D.N.C. 1988).............................................................................33

*Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162 (3d Cir. 1982) ....................14

*Hernandez v. DMSI Staffing, LLC*, 79 F. Supp. 3d 1054 (N.D. Cal. 2015) .................................................................................28

*In re Citigroup Inc. Sec. Litig.*, 987 F. Supp. 2d 377 (S.D.N.Y. 2013) .................................................................................34

*In re City of Philadelphia Litig.*, 158 F.3d 711 (3d Cir. 1998)..............11, 12, 13, 18

*In re Energy Future Holdings Corp.*, 904 F.3d 298 (3d Cir. 2018) ........................18

*In re Insulin Pricing Litig.*, 2024 WL 5252471 (D.N.J. Dec. 31, 2024) .........................................................................11, 15

*In re Insulin Pricing Litig.*, 688 F. Supp. 3d 1372 (J.P.M.L. 2023) ........................3

*In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432 (3d Cir. 2009)......................................................................11, 15, 17

*In re Takata Airbag Prods. Liab. Litig.*, 379 F. Supp. 3d 1333 (S.D. Fla. 2019)...................................................................30

*In re Valeant Pharms. Int'l, Inc., Sec. Litig.*, 2019 WL 2724075 (D.N.J. June 30, 2019) .....................................................20

*In re Zyprexa Prods. Liab. Litig.*, 2004 WL 2812095 (E.D.N.Y. Dec. 3, 2004).................................................................34

*Isaac v. Harvard Univ.*, 769 F.2d 817 (1st Cir. 1985)................................31

*Kasey v. Johnson & Johnson*, 2022 WL 17730930 (D.N.J. Aug. 12, 2022) ........................................................................................34

*Klunder v. Trs. & Fellows of the College or Univ. in English Colony of R.I.*, 2013 WL 366972 (D.R.I. Jan. 30, 2013)..................................31

*Lorenz v. CSX Corp.*, 1 F.3d 1406 (3d Cir. 1993) ....................................................26

*Luppino v. Mercedes-Benz USA, LLC*, 2014 WL 4474004 (D.N.J. Sept. 4, 2014) ........................................................................................33

*McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674 (7th Cir. 2014) ..............27, 33

*Member Select Ins. Co. v. Cub Cadet, LLC*, 2017 WL 563161 (N.D. Ind. Feb. 13, 2017)......................................................................28, 33

*Oran v. Stafford*, 226 F.3d 275 (3d Cir. 2000) ......................................................24

*Parker v. Exterior Restorations, Inc.*, 601 F. Supp. 3d 1221 (S.D. Ala. 2022) ......................................................................................29

*Parker Waichman LLP v. Salas LC*, 322 F.R.D. 436 (D.P.R. Oct. 12, 2017) ........................................................................................21

*Pkfinans Int'l Corp. v. IBJ Schroeder Leasing Corp.*, 1996 WL 84481 (S.D.N.Y. Feb. 27, 1996)........................................................32

*Plant v. Rapid Eps Ltd.*, 2019 WL 8619626 (W.D.N.C. Feb. 6, 2019) ........................................................................................28

*Puerto Rico v. Eli Lilly & Co.*, No. SJ2023CV00319, No. 43 (P.R. Sup. Ct. Nov. 27, 2023) ........................................................................5

*Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174 (1st Cir. 2024).........................5

*Puerto Rico v. Shell Oil Co.*, 2019 WL 13211064 (D.P.R. June 28, 2019) ........................................................................................20

*Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025) ..............................29

*Russo v. Thor Indus.*, 2020 WL 6585801 (D.N.J. Nov. 10, 2020) ..............21, 22, 23

*Sociedade Dos Vinhos Borges S.A. v. Santos*, 2012 WL 1574754 (D.N.J. May 3, 2012) ........................................................................20

*SRI Int'l Inc. v. Internet Sec. Sys., Inc.*, 817 F. Supp. 2d 418 (D. Del. 2011) ..................................................................................27

*State of Hawai'i ex rel. Anne Lopez v. Caremark PCS Health, L.L.C.*, No. 1:23-cv-464, Dkt. 1-1 (D. Haw.) ...........................3, 25, 26

*StrikeForce Techs, Inc. v. PhoneFactor, Inc.*, 2015 WL 3793726 (D. Del. May 26, 2015).........................................................27

*Villanueva-Mendez v. Nieves Vazquez*, 360 F. Supp. 2d 320 (D.P.R. 2005) .................................................................20, 23

*Ward v. Ortho-McNeil Pharm.*, 2015 WL 4110990 (E.D.N.C. July 7, 2015) ........................................................................31, 32

*Wright v. County of Camden*, 2022 WL 3536013 (D.N.J. Aug. 18, 2022) ...............................................................................27

*Yurcic v. Purdue Pharma, L.P.*, 343 F. Supp. 2d 386 (M.D. Pa. 2004) ..................................................................................13

*Zenith Radio Corp. v. Hazeltine Rsch, Inc.*, 401 U.S. 321 (1971) .........................27

## OTHER AUTHORITIES

28 U.S.C. § 1407 ...................................................................30

18B C. Wright & A. Miller, *Fed. Prac. & Proc.* (3d ed. 2025) ............11, 13, 14, 17

District of New Jersey Local Civil Rule 7.1 ..................................20, 21

Fed. R. Civ. P. 15 ...........................................................*passim*

Fed. R. Civ. P. 16 .............................................................26, 27

Fed. R. Civ. P. 54 ..............................................................8, 16

Fed. R. Civ. P. 59 ...............................................................20

The Government of Puerto Rico already moved in the District of Puerto Rico to file a functionally equivalent amended complaint. The District of Puerto Rico denied the Government's motion, rejecting the Government's request to amend as inappropriate "gamesmanship" and then denying the Government's request for clarification or to enter partial judgment to allow an interlocutory appeal.

The Government now asks this Court to overturn the District of Puerto Rico's decision and allow the Government to broaden this case to include a set of allegations the District of Puerto Rico held should not be added. But the Government insisted on litigating this issue before the District of Puerto Rico. D.P.R. Dkt. 144-1 at 10.[1] And it lost. The District of Puerto Rico's rulings are law of the case and the Government's second motion seeking permission to amend is an improper and untimely motion to reconsider.

Even if this Court reached the merits, the District of Puerto Rico's decision to deny amendment was correct. The Government did not move to amend until years into this litigation. Its decision to do so was motivated by a desire to avoid this Court's jurisdiction—a fact the Government never has disputed—even though the Government acknowledged that its case is "similar" to the actions consolidated into the MDL. The Government sought to amend the complaint only after the First

---

[1] "D.P.R. Dkt." refers to docket entries in the District of Puerto Rico, No. 3:23-cv-01127-JAG (D.P.R.), which docket numbers correspond to docket entries in case No. 2:25-cv-01845-BRM-RLS (D.N.J.).

Circuit reversed the district court's decision remanding the case to the Puerto Rico courts and the JPML issued an order conditionally transferring it to this MDL. But, as the District of Puerto Rico correctly concluded, the Government had been on notice of its potential claims for years. The Government's blatant attempt to forum-shop, the District of Puerto Rico held, was improper gamesmanship and broadening the case at this late juncture would prejudice Defendants. That decision was correct, and the Court should reach the same conclusion here, even if it reaches the merits.

## <u>BACKGROUND</u>

### A.    The Government Files this Insulin-Pricing Case in January 2023.

The Government initially filed suit in the Puerto Rico Court of First Instance, Superior Court on January 17, 2023, asserting claims against the same set of PBM Defendants and insulin manufacturers (the "Manufacturer Defendants") that are defendants across this MDL.[2]  The Government then filed an Amended Complaint (the "Second Complaint") on January 24, 2023, alleging that Defendants engaged in "misleading, deceptive and unlawful activity concerning their marketing and sale of insulin products to the residents of Puerto Rico."  D.P.R. Dkt. 1-1 ¶ 1.  Express

---

[2] The PBM Defendants are Express Scripts, Inc. ("Express Scripts"), CaremarkPCS Health, L.L.C. ("CVS Caremark"), Caremark Puerto Rico L.L.C., and OptumRx, Inc.  The Manufacturer Defendants are Eli Lilly and Company, Eli Lilly Export S.A., Novo Nordisk Inc., Sanofi-Aventis U.S. LLC, and Sanofi-Aventis Puerto Rico, Inc.

Scripts and CVS Caremark removed the case to the District of Puerto Rico and the Government moved to remand.

While that request for remand was pending, five other Attorneys General who had brought substantially similar insulin-pricing cases moved the JPML to create this MDL.  *See* JPML Dkt. 1.[3]  During that process, the Government opposed both the creation of the MDL and the transfer of this case into it.  *See* JPML Dkt. 43, 69.

Before the JPML ruled on the creation of this MDL, the District of Puerto Rico remanded this case to the Court of First Instance.  D.P.R. Dkt. 102.  Weeks later, the JPML established this MDL "to include related governmental and private actions concerning the alleged insulin pricing scheme in the MDL through the conditional transfer order process," but acknowledged that it could not transfer this case because it had been remanded to the Court of First Instance.  *See In re Insulin Pricing Litig.*, 688 F. Supp. 3d 1372, 1374 n.3, 1375 (J.P.M.L. 2023).

The MDL has grown substantially since then.  The JPML has transferred to the MDL every state or governmental action alleging an "insulin pricing scheme."  The only action that the JPML declined to transfer was brought by the State of Hawaiʻi, represented by the same outside counsel that represents Puerto Rico.  *See State of Hawaiʻi ex rel. Anne Lopez v. CaremarkPCS Health, L.L.C., et al.*, No. 23-

---

[3] "JPML Dkt." refers to docket entries in *In re Insulin Pricing Litigation*, No. 3080 (J.P.M.L.).

cv-00464 (D. Haw.).  Although Hawai'i made substantially similar allegations about pharmaceutical manufacturers, PBMs, and rebates, the JPML found that the case "alleges a scheme to inflate the list price of all 'brand-name prescription drugs'—a substantially larger universe of drugs, manufacturers, and business practices than those at issue in the MDL."  JPML Dkt. 259.

## B.    The Government Litigates This Insulin-Pricing Case in the Court of First Instance.

After this case was remanded to Puerto Rico's Court of First Instance, the parties proceeded with litigation on the merits.  On October 30, 2023, Defendants filed motions to dismiss.  The parties negotiated a stipulated ESI Protocol, which the court entered on November 28, 2023.  The parties also negotiated a Protective Order and reached impasse on numerous issues, which the Court of First Instance resolved on September 4, 2024.  The Government also served discovery requests on all Defendants that focused exclusively on the diabetes drugs subject to the allegations in the Second Complaint.

At no time during that litigation did the Government indicate that it would broaden the scope of its claims beyond the insulin-pricing theory at issue in this MDL, nor did it ever request leave to amend its complaint again.  On the contrary, the Government acknowledged in its briefs in the Court of First Instance that its case is "similar" to the actions that were "consolidated into the Insulin Pricing MDL," and that this case was not consolidated only "because a federal court ha[d] . . . ruled

that this case belongs" in the Court of First Instance rather than federal court. *See* Opp. to Mot. Stay at 8, *Puerto Rico v. Eli Lilly & Co.*, No. SJ2023CV00319, No. 43 (P.R. Sup. Ct. Nov. 27, 2023).

### C.    The First Circuit Returns the Case to Federal Court and the JPML Conditionally Transfers It to the MDL.

On October 18, 2024, the First Circuit reversed the District of Puerto Rico's order remanding this case to the Court of First Instance. *See Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174 (1st Cir. 2024). That ruling eviscerated the only barrier to consolidation of this case in the MDL. CVS Caremark therefore identified this case for potential transfer to the MDL, and the JPML conditionally transferred the case over Puerto Rico's opposition on December 9, 2024. JPML Dkt. 350. In doing so, the JPML found that this case "appears [to] involve questions of fact that are common to the actions previously transferred to [the MDL]." JPML Dkt. 350.

### D.    The Transferor Court Denies the Government's Attempt to Amend Its Complaint to Avoid the MDL.

On December 20, 2024, the Government moved the District of Puerto Rico for leave to file a Second Amended Complaint, its third complaint in this action (the "Third Complaint"). The Government's Third Complaint purported to expand the scope of its claims in ways substantially similar to the complaint it now seeks to file in this Court (the "Fourth Complaint"). Most importantly, the Government proposed to expand its claims beyond the diabetes drugs at issue in the MDL to encompass all

"brand-name prescription drugs."  Third Complaint ¶¶ 13, 171, D.P.R. Dkt. 127-1.[4]

The Third Complaint also removed the Manufacturer Defendants from the case and

sought to expand Puerto Rico's claims by alleging that the PBM Defendants engaged

in unfair methods of competition by imposing unfair contractual terms on

independent pharmacies and "steering" consumers to pharmacies affiliated with the

PBMs.  *See id.* ¶¶ 185–215.[5]  With that motion for leave still pending in the District

of Puerto Rico, the Government asked the JPML not to transfer this case to the MDL.

The sole basis for the Government's opposition was that its amendment would

broaden the claims to make transfer inappropriate.  JPML Dkt. 359-1.

The PBM Defendants urged the District of Puerto Rico to withhold ruling on

the Government's motion to amend and to allow this Court to address amendment

after the case was transferred.  D.P.R. Dkt. 143 at 7–9.  But the Government insisted

that the District of Puerto Rico had to rule on its motion for leave to amend—and

that this Court should not.  The Government contended that "the MDL Court" would

"significantly delay[] or fail[] to act on the Government's Motion for Leave to

Amend."  D.P.R. Dkt. 144-1 at 10.

---

[4] The Third Complaint is attached as Exhibit 1 to the Certification of John D. Tortorella.

[5] The PBM Defendants did not object to the Government's eliminating its claims against the Manufacturer Defendants.

On January 27, 2025, the District of Puerto Rico denied the Government's motion for leave to amend.  D.P.R. Dkt. 147.  The Court held that the Government had "not sufficiently justified the 2-year delay" in seeking leave to amend.  *Id.* (citing, *e.g.*, *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 933 (1st Cir. 1983)).  The Court observed that the Government "had ample time to amend the complaint during the last 2 years since the litigation was never stayed by [the transferor court] or the Court of First Instance."  *Id.*  And the Court emphasized that the Government "only sought to amend the complaint after an adverse decision from the First Circuit and after the case was conditionally transferred to the [MDL]."  *Id.* Thus, the Court found, "[t]he timing of the motion and the absence of an adequate explanation for the delay suggests that [the Government] seeks to amend its pleadings to avoid transfer to the MDL."  *Id.*  The fact that the Third Complaint "tracks the language" of the *Hawai'i* complaint the JPML declined to transfer "further suggest[ed] that [the Government] is engaging in gamesmanship to escape MDL jurisdiction."  *Id.*  And because the Government is represented by the same outside counsel as Hawai'i, the Court concluded that the Government "was on notice of [these other] potential claims" long ago.  *See id.*

The Court also concluded that Defendants would be prejudiced by the proposed amendment.  The Court explained that the Third Complaint would "significantly expand the claims asserted in this action," which would "materially

alter the nature of this litigation." *Id.* Defendants therefore would be prejudiced by "drastically expanding the scope of the litigation and requiring Defendants to litigate the claims related to insulin prices in 2 different forums." *Id.*

### E. The Transferor Court Denies the Government's Request to Bring Its Broader Claims Outside the MDL.

After losing its motion to amend, the Government filed a motion to "clarif[y]" the District of Puerto Rico's ruling. It sought an advisory opinion on the *res judicata* effect of the amendment denial on a future case, or to enter partial judgment to facilitate an interlocutory appeal under Rule 54(b). Dkt. 149. The Government argued that if the District of Puerto Rico did not clarify that its denial was "without prejudice," then the Government would be "barred from amendment" in the MDL. Dkt. 159 at 3. This inability would be significant, the Government asserted, because it wished to continue pursuing amendment after MDL transfer to "expand its claims beyond insulin products," after which it would "seek transfer back to [the District of Puerto Rico]." *Id.* at 2 n.1.

On March 5, 2025, the District of Puerto Rico denied that motion as well. The Court reiterated that it had not "adjudicate[d] or comment[ed] on the merits" of the claims but had instead "denied leave to amend the complaint as untimely." D.P.R. Dkt. 163. The Court also declined to enter partial final judgment under Rule 54(b) to facilitate an interlocutory appeal because that order denying leave was not a "final judgment" within the meaning of that Rule. *Id.*

8

**F.    The Government Asks This Court to Undo the Transferor Court's Rulings.**

The JPML transferred this case to the MDL on March 11, 2025.  Nearly two months later, the Government filed this motion asking the Court to undo the District of Puerto Rico's rulings so that it could obtain transfer back to that Court—thus achieving the precise result the District of Puerto Rico rejected.

More specifically, the State seeks leave to file a Fourth Complaint substantively identical to the Third Complaint the District of Puerto Rico rejected.  As the Government explained in its latest motion, it is again attempting to expand the scope of its claims to cover "all brand-name drugs," not only the drugs at issue in this MDL.  Government Br. 2.  And like the Third Complaint, the Fourth Complaint alleges that the PBMs' pharmacy contracts constituted unfair competition because they supposedly harmed independent pharmacies.  *See* Fourth Complaint ¶¶ 222–52.  The Fourth Complaint also contains additional allegations further broadening the Government's claims.  The Government now seeks to broaden its allegations regarding the Manufacturer Defendants to include GLP-1 drugs.  *See id.* ¶ 29.  And the Government seeks to add three entirely new defendants that are group purchasing organizations ("GPOs"):  Zinc Health Services, L.L.C., Ascent Health Services LLC, and Emisar Pharma Services LLC (the "GPO Defendants").  *See id.* ¶¶ 32, 38, 43.

The Government concedes that, if amendment is allowed, its claims will (like those brought by the State of Hawaiʻi) be broader than the claims asserted in the MDL, and the Government therefore asserts that it wishes to remove itself from the MDL and "pursue its [Fourth Complaint] outside the MDL." Government Br. 10 & n.4. In other words, the Government is yet again attempting to change its claims "to escape MDL jurisdiction"—exactly the "gamesmanship" the District of Puerto Rico twice rejected. D.P.R. Dkt. 147, 163.

## ARGUMENT

The Government insisted that the District of Puerto Rico rule on its proposed amendment. And it lost. The Government cannot now end-run the District of Puerto Rico's rulings by filing a new motion in this Court. The law-of-the-case doctrine bars relitigation of the District of Puerto Rico's decisions. And, in any event, the Government's effort is an untimely and improper motion for reconsideration.

But even ignoring those dispositive procedural barriers, the District of Puerto Rico's ruling denying leave to amend was correct. The Government's motion for leave to amend was years late, and its admitted purpose was (and remains) to forum-shop out of the MDL and force Defendants to litigate in multiple forums.

## I.     The Government's Motion Is Barred By Law Of The Case.

"Under the law of the case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the

same case.'" *In re Insulin Pricing Litig.*, 2024 WL 5252471, at *9 (D.N.J. Dec. 31, 2024) (quoting *In re Cont'l Airlines*, 279 F.3d 226, 233 (3d Cir. 2002)).  The doctrine exists to "maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (citation omitted).  It "applies as much to the decisions of a coordinate court in the same case as to a court's own decisions." *Christianson v. Colt Indus. Op. Corp.*, 486 U.S. 800, 816 (1988); *see also In re Pharmacy Benefit Managers*, 582 F.3d at 442 (rulings by transferor courts remain law of the case following MDL transfer and must be given the same effect as in the original court).

1.    The Court should deny the Government's motion under the law-of-the-case doctrine.  Law of the case applies to legal issues that were "actually decided, either expressly or by implication," earlier in the proceedings.  *In re City of Philadelphia Litig.*, 158 F.3d 711, 718 (3d Cir. 1998).  Courts must adhere to earlier rulings even if the issue presented is "not identical to the issue" that was "previously determined." *See id.* at 722.  As the leading civil procedure treatise explains, a previous ruling controls under the law-of-the-case doctrine so long as "the analysis used to dispose of an issue [previously] before the court" also disposes of the new issue.  18B C. Wright & A. Miller, *Fed. Prac. & Proc.* ("Wright & Miller") § 4478 (3d ed. 2025).

11

The Government does not dispute that the District of Puerto Rico ruled on the precise issue the Government now wishes to relitigate. That Court was presented with the Third Complaint, which was substantially similar to the Fourth Complaint. Both sought primarily to expand the scope of the Government's claims beyond the insulin products at issue in the MDL and to add allegations related to the PBMs' pharmacy network practices, and thereby avoid this MDL. *See* Third Complaint ¶¶ 13, 171, 185–215; Fourth Complaint ¶¶ 48, 222–52. And the Government also relied on the same justifications in seeking amendment before the District of Puerto Rico that its untimely amendment should be allowed because litigation in the Court of First Instance did not proceed past the dispositive motion stage, and because its attempt to forum-shop out of the MDL does not evidence bad faith or gamesmanship. *See* Government Br. 6–8; D.P.R. Dkt. 144-1 at 4–8. The District of Puerto Rico ***rejected those arguments***. That ruling is law of the case. D.P.R. Dkt. 147; *see In re City of Philadelphia Litig.*, 158 F.3d at 718.

The additional facts the Government added to the Fourth Complaint do not change the analysis. For example, the Government now seeks to broaden its claims against the Manufacturer Defendants beyond the insulin drugs alleged in its Second Complaint, and to add three new defendants to the case. *See* Fourth Complaint ¶¶ 15–29. But the District of Puerto Rico's ruling forecloses those efforts. The District of Puerto Rico denied amendment because the Government had "already

amended its complaint once" and because it "ha[d] not sufficiently justified the 2-year delay in seeking to add the additional claims asserted." D.P.R. Dkt. 147. As that court explained in denying the Government's motion for clarification, it "denied leave to amend the complaint as untimely." D.P.R. Dkt. 163. The Government's current motion is now even later, so it is even more "untimely." And because the Government still has not proffered any legitimate justification for its delay (other than its attempt to forum-shop out of the MDL), "the analysis used to dispose of" its first attempt to amend also disposes of this one. *See* Wright & Miller § 4478; *see In re City of Philadelphia Litig.*, 158 F.3d at 718, 722; *see also, e.g.*, *Yurcic v. Purdue Pharma, L.P.*, 343 F. Supp. 2d 386, 391 (M.D. Pa. 2004) (previous ruling that statute of limitations barred medical malpractice claim constituted law of the case for other claim with same limitations period).

2.    The law of the case doctrine has special force here because the Government is asking this Court to overturn the ruling of another district court (the transferor court) on an issue that was directly determinative of whether transfer was appropriate.

Principles of comity require a more stringent application of the law of the case doctrine when a litigant asks one district court to undo another's decision. In that scenario, "[a]dherence to law of the case principles is even more important" because "the principles of comity among courts of the same level of the federal system

13

provide a further reason why the transferee court should not independently re-examine an issue already decided by a court of equal authority." *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 169 (3d Cir. 1982) (citations omitted). That comity requirement is even stronger here, where the Government **insisted** that the District of Puerto Rico address this motion—and ***not*** this Court. *See* D.P.R. Dkt. 144-1 at 10. "A disappointed litigant should not be given a second opportunity to litigate a matter that has been fully considered by a court of coordinate jurisdiction." *Hayman Cash Register*, 669 F.2d at 169.

In addition, this motion would have the effect of undoing a ruling about the transfer of this case from the District of Puerto Rico to this Court. The Supreme Court has held that the "policies supporting" the law-of-the-case doctrine "apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions . . . threaten to send litigants into a vicious cycle of litigation." *Christianson*, 486 U.S. at 816. If transferee courts could readily reverse transfer decisions, "litigants may find themselves trapped between" two courts that each view the transfer issue differently. Wright & Miller § 4478.4. Transferee courts therefore must uphold transfer-related decisions so long as the decisions are "plausible." *See id.*; *see also, e.g.*, *Christianson*, 486 U.S. at 819; *Chandler v. Phoenix Servs., L.L.C.*, 45 F.4th 807, 812 (5th Cir. 2022). The Government has admitted that the District of Puerto Rico's

resolution of the motion for leave to amend was "a key—if not dispositive—factor in the JPML's determination" as to whether this case should proceed in the MDL or outside of it.  D.P.R. Dkt. 144-1 at 8.  And the District of Puerto Rico denied leave to amend precisely because the Government's request suggested "gamesmanship to escape MDL jurisdiction."  D.P.R. Dkt. 147.  The Government also gives up the game and admits that, if the Court reverses that ruling now, it will attempt to obtain transfer back to the District of Puerto Rico and "pursue its [Fourth Complaint] outside the MDL."  Government Br. 10.  The Government told the District of Puerto Rico as much, stating that it wished to "seek transfer back to [the District of Puerto Rico] if and when the Insulin Pricing MDL grants the Government leave to expand its claims beyond insulin products."  D.P.R. Dkt. 159 at 2 n.2.  This is exactly the kind of "jurisdictional ping-pong" that law of the case is designed to prevent.  *See Christianson*, 486 U.S. at 818.

3.    The Government concedes that, "as a rule[,] courts should be loathe [*sic*] to" revisit prior decisions in the same proceeding "in the absence of extraordinary circumstances."  Government Br. 8 (quoting *In re Pharmacy Benefit Managers*, 582 F.3d at 439).  The party asking a court to reverse an earlier ruling therefore must establish that the prior ruling "was clearly erroneous and would make a manifest injustice," that "new evidence is available," or that "supervening new law has been announced."  *See In re Pharmacy Benefit Managers*, 582 F.3d at 439; *In re*

*Insulin Pricing Litig.*, 2024 WL 5252471, at *8–9.  None of the Government's arguments comes close to meeting that stringent standard.

*First*, the Government claims (at 8) that the District of Puerto Rico's rulings were "preliminary or tentative."  For support, the Government cites a single case holding that the denial of a preliminary injunction did not bind the Court in subsequent merits proceedings because "[p]reliminary injunctions are, by their nature, tentative and impermanent." *Greco v. Grewal*, 2020 WL 7334194, at *8 (D.N.J. Dec. 11, 2020) (quoting *R.R. Yardmasters of Am. v. Pa. R.R. Co.*, 224 F.2d 226, 229 (3d Cir. 1955)).  The District of Puerto Rico, however, issued a decision conclusively denying the Government's motion for leave to amend—the same motion it brings here.  Indeed, it "denied leave to amend the complaint as untimely," a defect that cannot be cured in a *later* motion.  D.P.R. Dkt. 149.  Far from "tentative" or "preliminary," the District of Puerto Rico's rejection of the Government's motion was both conclusive and resounding.

The District of Puerto Rico's observation (at 8) that its amendment denial was not an "adjudication on the merits or a final judgment" is irrelevant.  The court was merely explaining that it denied amendment on the basis of the Government's unjustified delay and improper gamesmanship, and that the denial was not a "final judgment" that could be appealed immediately under Rule 54(b).  Those observations have nothing to do with law of the case.  As explained, law-of-the-case

doctrine applies when a court "actually decide[s]" an issue at an earlier stage in the proceedings, *see supra* p.11—it does not matter whether that issue is an "adjudication on the merits." And law of the case is certainly not limited to "final judgments" because the whole purpose of the doctrine is to "regulate judicial affairs *before* final judgment." Wright & Miller § 4478 (emphasis added); *see also, e.g.*, *In re Pharmacy Benefit Managers*, 582 F.3d at 443 (applying law of the case to motion to compel arbitration).

*Second*, the Government suggests (at 8) that the underlying facts have changed such that a departure from law of the case is warranted. It argues that the JPML's subsequent transfer ruling "obviate[d]" the District of Puerto Rico's gamesmanship concerns. But, if the Government prevails on this motion, it admits it will seek remand so it can pursue its case outside of the MDL. In other words, the Government admits that it intends to engage in the exact "gamesmanship" the District of Puerto Rico identified. *See* Government Br. 10 (if successful, the Government will seek to undo the transfer ruling and pursue this case "outside the MDL"); Dkt. 554 at 3 (same representation in Government's pre-motion letter); D.P.R. Dkt. 159 at 2 n.1.

*Third*, the Government claims (at 8–9) that law of the case does not prevent courts from "clarifying" earlier rulings, and that the District of Puerto Rico's amendment denial was "ambiguous." The Government does not identify any

17

ambiguity and there is none. Instead, the Government suggests (at 9) that the ruling was ambiguous because the District of Puerto Rico denied the Government's later motion for clarification. But the Government's motion for "clarification" was nothing but a request for an advisory opinion about the potential *res judicata* impact of the District of Puerto Rico's amendment denial in the event the Government filed a *separate* case in the future. *See* D.P.R. Dkt. 149 at 4 (requesting clarification to allow Government to bring broader claims "in separate litigation").

*Fourth*, the Government asserts (at 9–10) that the District of Puerto Rico's ruling was "clearly erroneous and would work a manifest injustice." To establish that exception to the law-of-the-case doctrine, it is "incumbent upon" the Government to demonstrate not only that the "prior decision was wrong, but that it was clearly wrong and that adherence to that decision would create manifest injustice." *In re City of Philadelphia Litig.*, 158 F.3d at 720–21. This standard is not met so long as the District of Puerto Rico's decision reflected a "plausible" application of the relevant law, even if the court could have reached a different conclusion. *See id.* at 722. In other words, the Government must show that the District of Puerto Rico committed "a wholesale disregard, misapplication or failure to recognize a controlling precedent," or "an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law." *In re Energy Future Holdings Corp.*, 904 F.3d 298, 312 (3d Cir. 2018) (quoting *Burritt v. Ditefsen*, 807

F.3d 239, 253 (7th Cir. 2015); *Venegas-Hernandez v. Sonolux Record*, 370 F.3d 183, 195 (1st Cir. 2004)).

As explained below, the District of Puerto Rico correctly denied amendment, applying its view after having presided over the case for eighteen months that the Government's amendment request was unjustified and made in bad faith. *See infra* pp.24-33. The Government comes nowhere close to meeting the demanding clear-error standard.

\*      \*      \*

The District of Puerto Rico oversaw this action for eighteen months and had the opportunity to observe the parties' litigation tactics and the claims presented. That Court appropriately weighed the relevant factors under Rule 15(a) and found that the Government failed to offer any plausible, good-faith basis for its extreme delay in seeking amendment. That Court, "which had considerable familiarity with the development of the factual and legal issues in this matter, concluded that the [proposed amendment] fundamentally altered the proceedings and could have been asserted earlier." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 274 (3d Cir. 2001). The Court should deny the Government's motion to amend under the law-of-the-case doctrine.

## II.     The Government's Motion Is An Improper And Untimely Motion For Reconsideration.

The Government does not dispute that its current motion asks this Court to revisit the District of Puerto Rico's earlier ruling on this same issue.  That is a motion for reconsideration.  *See, e.g.*, *Sociedade Dos Vinhos Borges S.A. v. Santos*, 2012 WL 1574754, at *1 (D.N.J. May 3, 2012) (motion was "effectively a Motion for Reconsideration" even though "not filed as such"); *In re Valeant Pharms. Int'l, Inc., Sec. Litig.*, 2019 WL 2724075, at *4 (D.N.J. June 30, 2019) (same and denying motion as untimely); *Gonzalez v. Tomasini v. U.S. Postal Serv.*, 2022 WL 2820073, at *14 (D.P.R. July 19, 2022) (same).  The Government neither complied with the timing requirements for such a motion nor even attempted to meet the stringent standards for one.

In this Court, Local Civil Rule 7.1(i) provides that "a motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment on the original motion."  In the District of Puerto Rico, courts deny motions for reconsideration when they are "unreasonably late."  *Villanueva-Mendez v. Nieves Vazquez*, 360 F. Supp. 2d 320, 323 (D.P.R. 2005); *Puerto Rico v. Shell Oil Co.*, 2019 WL 13211064, at *1–2 (D.P.R. June 28, 2019).  Many courts in the District of Puerto Rico require parties to move for reconsideration within 28 days, pursuant to Rule 59(e).  *See, e.g.*, *Ferrer v. Misey Restaurant, Inc.*, 2020 WL 13646258, at *1 (D.P.R. Jan. 30, 2020).  Either way, the Government's motion for reconsideration of

the District of Puerto Rico's decision denying its motion for leave to amend was due on February 10 (or February 14), and its request for reconsideration of the District of Puerto Rico's denial of its motion to clarify was due on March 19 (or April 2). The Government waited 101 days after the Court denied leave to amend to request permission to file its motion for reconsideration. Its motion should be denied as untimely.

In this Court, a motion for reconsideration also must "set[] forth concisely the matter or controlling decisions which the party believes the Judge has overlooked." L. Civ. R. 7.1(i); *see Est. of Rivera v. Dr. Susoni Hosp., Inc.*, 323 F. Supp. 2d 262, 265 (D.P.R. 2004). As courts routinely explain, motions for reconsideration are "an extremely limited procedural vehicle which is to be granted sparingly." *Echols v. United States*, 2022 WL 16576489, at *1 (D.N.J. Nov. 1, 2022) (cleaned up). "Mere disagreement with a court's decision is not an appropriate basis" to move for reconsideration, because such disagreements "should be raised through the appellate process." *Russo v. Thor Indus.*, 2020 WL 6585801, at *1 (D.N.J. Nov. 10, 2020) (citation omitted); *see also Crespo v. Pabon-Charneco*, 2025 WL 835875, at *2 (D.P.R. Mar. 17, 2025). "A motion for reconsideration 'does not provide a vehicle for a party to undo its own procedural failures or allow a party to advance arguments that could and should have been presented to the district court prior to judgment.'" *Parker Waichman LLP v. Salas LC*, 322 F.R.D. 436, 438 (D.P.R. Oct. 12, 2017)

(quoting *Iverson v. City of Bos.*, 452 F.3d 94, 104 (1st Cir. 2006)); *see also Garcia Rodriguez v. Lamboy*, 2009 WL 10720797, at *2 (D.P.R. Mar. 24, 2009).

In its motion, the Government re-asserts the same arguments it already raised and that the District of Puerto Rico already rejected (or points to facts it could have raised in its initial motion, but chose not to):

- The Government argues (at 6–7) that it did not need to move to amend in the Court of First Instance because the court had not yet ruled on Defendants' motions to stay and to dismiss (which the Government inexplicably calls a "stay"). The District of Puerto Rico already rejected that argument, correctly recognizing that the Government "had ample time to amend the complaint during the last 2 years since the litigation was never stayed" by any court, local or federal. D.P.R. Dkt. 147.

- The Government lists (at 7) three documents cited in the Fourth Complaint and claims that these three items demonstrate that the Government's broader claims are based on information that was not previously available. The Government did not make this argument before the District of Puerto Rico, which found the Government failed to provide "an adequate explanation for the delay" in seeking leave to amend. D.P.R. Dkt. 147; *cf.* D.P.R. Dkt. 149 at 3 (making argument in failed motion for "clarification").

- The Government asserts (at 9–10) that the District of Puerto Rico was wrong to consider the Government's attempted jurisdictional "gamesmanship," because forum shopping does not evidence bad faith. The Government made this same argument before the District of Puerto Rico, citing the same cases it cites now. *See* D.P.R. Dkt. 144-1 at 6–7; D.P.R. Dkt. 159 at 3 n.2. The Court rejected this argument and held, as courts routinely do, that amendment is properly denied where parties are engaged in procedural gamesmanship such as forum shopping. D.P.R. Dkt. 147.

The Government "merely encourage[s] this Court to analyze the same facts and cases" already considered and "to come to a different conclusion." *Russo*, 2020 WL 6585801, at *2 (citation omitted). That is not a proper basis for reconsideration.

22

The Fourth Complaint is also functionally identical to the Third Complaint that the District of Puerto Rico considered.  As discussed above, *see supra* pp.5–9, both versions of the complaint primarily:  (1) expand the scope of the Government's claims beyond the insulin products at issue in the MDL; and (2) add allegations related to the PBMs' pharmacy network practices.  *See* Third Complaint ¶¶ 13, 171, 185–215; Fourth Complaint ¶¶ 48, 222–52.  Any minor differences between the two versions are immaterial to the Government's request for leave to amend.

The Government also failed to satisfy the stringent standard governing motions for reconsideration, under which the Government was required to show "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court reached its original decision; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Russo*, 2020 WL 6585801, at *1 (quoting *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)); *see also Villanueva-Mendez*, 360 F. Supp. 2d at 324.  The Government does not purport to request amendment based on any change in law or new evidence, and the District of Puerto Rico's ruling was not clearly erroneous because it correctly denied amendment based on the Government's undue delay and gamesmanship, as well as the prejudice to Defendants.

## III.    The District Of Puerto Rico's Ruling Was Correct.

Regardless of the standard that applies, the Court should honor the District of Puerto Rico's ruling because its ruling was correct.  Under Rule 15(a), courts may deny leave to amend when "amendment would cause undue delay or prejudice," or when "amendment would be futile."  *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000).  Although delay alone is not grounds to deny leave to amend, "at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party."  *Cureton*, 252 F.3d at 273; *Calderón-Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 19 (1st Cir. 2013).  These factors weigh strongly against amendment here.

### A.    The Proposed Amendment Was Unduly Delayed.

"[A] significant, unjustified, or 'undue' delay in seeking the amendment may itself constitute prejudice sufficient to justify denial of a motion for leave to amend."  *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 629 (3d Cir. 2013).  "It is black-letter law that regardless of the context, the longer a plaintiff delays, the more likely a motion to amend will be denied, as protracted delay . . . is itself a sufficient reason for the court to withhold permission to amend."  *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 57 (1st Cir. 2008) (cleaned up).  Courts properly deny amendment "where the moving party offered no cogent reason for the delay in seeking amendment."  *CMR*, 703 F.3d at 629; *Calderón-Serra*, 715 F.3d at 20 ("Appreciable

24

delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend.").

As the District of Puerto Rico found, the Government "has not sufficiently justified the 2-year delay" in seeking to broaden the scope of its claims.  Dkt. 147. The Government's motion before this Court—filed 101 days after that District of Puerto Rico finding—did not remedy that failure.  The Government is represented by the same outside counsel that represents the State of Hawaiʻi in *State of Hawaiʻi ex rel. Anne Lopez v. Caremark PCS Health, L.L.C.*, where Hawaiʻi asserted similarly broad claims targeting pricing practices across the entire brand-name prescription drug industry in ***November 2023***.  Even giving the Government all the benefit of every other doubt, the Government—through its counsel—was on notice of potential claims against the PBMs related to all brand-name prescription drugs by 2023 and could have asserted all of these alleged claims in its Third Complaint against the PBMs in 2024.  The District of Puerto Rico took those facts into account and denied the Government's attempt to do so in part because "counsel for [the Government] also represented the State of Hawaiʻi in that case and, thus, was on notice of other potential claims against Defendants."  Dkt. 147.

The Government completely ignores this critical finding in its brief.  Instead, it argues (at 7) that its new allegations were "largely based on information that was not available when the Government initiated this action," pointing to three

documents issued during 2024.  But regardless of what the Government could have filed in *January 2023*, the Government gives no reason why it could not bring its claims *before January 2025*, two years into this case and only after the JPML had conditionally transferred the case to the MDL.  At the very least, the Government could have moved to assert its broader theory in November 2023, when the State of Hawaiʻi filed an Amended Complaint purporting to sue based on a theory that was similarly broader than the claims asserted in the MDL.[6]   As the District of Puerto Rico observed, the Government could have moved to amend and add the claims it presses today any time during that period.  *See* Dkt. 147; *see also, e.g.*, *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (three-year delay unreasonable where party had "numerous opportunities" to amend).

For these same reasons, the Government fails to show good cause for modifying the scheduling order, which the Government (at 5) conceded was necessary under Rule 16 for its proposed amendment almost one year after the MDL amendment deadline in August 2024.  Because the Government cannot satisfy the amendment standard of Rule 15(a)(2), it necessarily fails to satisfy the higher good

---

[6] *State of Hawaiʻi ex rel. Anne Lopez v. Caremark PCS Health, L.L.C.*, No. 1:23-cv-464, Dkt. 1-1 (D. Haw.).

cause standard of Rule 16(b)(4). *See Wright v. County of Camden*, 2022 WL 3536013, at *3 (D.N.J. Aug. 18, 2022).[7]

## B. The Proposed Amendment Was Improper Gamesmanship.

The reason the Government cannot proffer a good-faith basis for its delay is because the real purpose of the Government's belated motion is to avoid the MDL. Courts deny leave to amend where, as here, "the unexplained delay looks more like procedural gamesmanship than legitimate ignorance or oversight." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 687 (7th Cir. 2014); *see also, e.g.*, *Zenith Radio Corp. v. Hazeltine Rsch, Inc.*, 401 U.S. 321 (1971); *StrikeForce Techs, Inc. v. PhoneFactor, Inc.*, 2015 WL 3793726, at *5 (D. Del. May 26, 2015). Amendments are brought in bad faith when parties attempt to use them to "secure some ulterior tactical advantage." *Calkins v. USAA Cas. Ins. Co.*, 2016 WL 3360429, at *3 (M.D. Fla. 2016); *SRI Int'l Inc. v. Internet Sec. Sys., Inc.*, 817 F. Supp. 2d 418, 423 (D. Del. 2011) (denying motion to add a claim that was intended to be "an ace in the hole to be used if [the party's] other attempts to avoid liability" failed). Courts therefore may deny leave to amend under Rule 15(a) "when a party withholds facts clearly known to it prior to filing of the complaint, particularly when done for some ulterior

---

[7] As the District of Puerto Rico noted, counsel for the Government already was on notice of its potential claims months *before* August 2024. Dkt. 198 (CMO 10). Had the Government not spent the past two years attempting to stave off MDL jurisdiction, it would have been a party to this litigation long ago.

purpose." *Bank v. Spark Energy, LLC*, 2020 WL 6873436, at *2 (E.D.N.Y. Nov. 23, 2020) (cleaned up); *see also, e.g.*, *Plant v. Rapid Eps Ltd.*, 2019 WL 8619626, at *1 (W.D.N.C. Feb. 6, 2019).

Attempted "forum-shopping" is a quintessential example of an ulterior motive evidencing bad faith. *See Bouie v. Equistar Chems. LP*, 188 F. App'x 233, 238–39 (5th Cir. 2006); *see also, e.g.*, *Diaz v. Ameriquest Mortg. Co.*, 2014 WL 26265, at *4 (N.D. Ill. Jan. 2, 2014) (denying plaintiff's motion to amend, which was filed after the MDL Court issued a conditional transfer order, finding the motion to be "clear forum shopping and 'gamesmanship' to avoid liability"); *Calzadillas v. Wonderful Co.*, 2019 WL 5448308, at *4 (E.D. Cal. Oct. 24, 2019) (finding "both bad faith and unfair prejudice" because it was "obvious … that plaintiffs' counsel [was] forum-shopping").[8] Courts therefore consider "whether it is likely Plaintiff knew the facts pertinent to the amendment before the original complaint was filed and whether Plaintiff is trying to forum shop." *Member Select Ins. Co. v. Cub Cadet, LLC*, 2017 WL 563161, at *2 (N.D. Ind. Feb. 13, 2017).

The District of Puerto Rico correctly applied these principles in denying the Government's motion. The court explained that the "timing of the motion and the absence of an adequate explanation for the delay suggests that [the Government]

---

[8] *See also, e.g.*, *Hernandez v. DMSI Staffing, LLC*, 79 F. Supp. 3d 1054, 1059 (N.D. Cal. 2015); *Fleet Connect Sols LLC v. C.R. England, Inc.*, 2024 WL 5679163, at *7–8 (C.D. Cal. Nov. 15, 2024).

seeks to amend its pleadings to avoid transfer to the MDL," and that this finding was supported by the fact that the proposed amendment "tracks the language in the complaint filed in [the *Hawai'i* case]." Dkt. 147. The Court recognized that the Government was "engaging in gamesmanship to escape MDL jurisdiction," and weighed that fact against amendment. *See id.*

The Government does not dispute that forum-shopping is its principal motivation for seeking amendment but maintains (at 9) that the District of Puerto Rico was "wrong to consider the possibility of a forum shopping [*sic*]" when ruling on its motion. The Government cites only a single case rejecting forum-shopping as a valid consideration under Rule 15(a). But there, the party opposing amendment had "cited no authority for the proposition that such forum manipulation is properly considered." *Parker v. Exterior Restorations, Inc.*, 601 F. Supp. 3d 1221, 1227 (S.D. Ala. 2022). Defendants here have pointed to the clear, consistent line of cases above, recognizing that forum-shopping is a quintessential ulterior motive justifying denial of a request to amend.[9]

The Government now asserts (at 1, 7) that it should be allowed to add certain allegations to "conform[]" its claims "to the allegations at issue in this MDL." In

---

[9] The Government's reliance (at 9) on *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025) does not help it. That case did not involve motions to amend at all; the issue presented in that case was whether amended complaints have jurisdictional significance *after* courts grant leave to file them. *See id.* at 25–26.

particular, the Government attempts to justify its new allegations regarding the Manufacturer Defendants' involving GLP-1 drugs and its new claims against the GPO Defendants on this basis. But there is no automatic right or need for parties to amend their complaints to "conform" to the allegations in an MDL—the whole purpose of the MDL statute is to consolidate cases that *already* "involve[e] one or more common questions of fact." 28 U.S.C. § 1407(a). And once cases are transferred, they "retain their separate identities"—MDL transfer "does not imbue transferred actions with some new and distinctive character." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015) (cleaned up).

The Government's sole citation on this issue does not hold or even suggest that MDL transfer is an amendment free-for-all—it merely holds that MDL courts are authorized to "handle all types of pretrial matters," including motions for leave to amend under Rule 15. *See In re Takata Airbag Prods. Liab. Litig.*, 379 F. Supp. 3d 1333, 1339 (S.D. Fla. 2019). That case confirms that the Government's motion is subject to the ordinary standard under the Federal Rules, which the District of Puerto Rico already held it failed to satisfy.

Even setting all of that aside, the Government's assertion that it seeks leave to "conform" this case to the allegations in this MDL is utter nonsense. The Government acknowledges (at 10) that if granted leave to amend, it would seek to "pursue its [Fourth Complaint] outside the MDL." So, the overall impact of the

Government's proposed amendments is the opposite of conforming; the Government seeks to broaden its claims *beyond* the MDL's scope.

### C.    The Proposed Amendment Would Prejudice Defendants.

Amendment is particularly inappropriate here because the Government's Fourth Complaint would greatly expand the scope and nature of the claims and would prejudice Defendants.  Courts across the country agree that "motions to amend should be denied if the amendment seeks to add claims that would substantially alter the nature of the lawsuit, as belated claims which change the character of the litigation are not favored." *Ward v. Ortho-McNeil Pharm.*, 2015 WL 4110990, at *3 (E.D.N.C. July 7, 2015) (cleaned up); *Klunder v. Trs. & Fellows of the College or Univ. in English Colony of R.I.*, 2013 WL 366972, at *1 (D.R.I. Jan. 30, 2013) ("Courts may deny motions to amend if the amendments add new legal theories that are unrelated to the claims already in the lawsuit."); *Flood v. Bank of Am. Corp.*, 2012 WL 6111451, at *3 (D. Me. Dec. 10, 2012) (denying motion to amend where proposed amendments would have "introduce[d] a new legal theory" and "change[d] the entire focus of the case and the type of evidence which defendant might want to present").[10]  Indeed, courts recognize that "[u]ndue prejudice results

---

[10] *See also, e.g.*, *Deasy v. Hill*, 833 F.2d 38, 42 (4th Cir. 1987) ("Belated claims which change the character of litigation are not favored."); *Isaac v. Harvard Univ.*, 769 F.2d 817, 829 (1st Cir. 1985) (affirming denial of motion for leave to amend where the proposed amended complaint "very materially change[d] the nature of the complaint").

when a proposed complaint dramatically changes the nature of the allegations and the extent of a defendant's liability." *Pkfinans Int'l Corp. v. IBJ Schroeder Leasing Corp.*, 1996 WL 84481, at *3 (S.D.N.Y. Feb. 27, 1996).

The District of Puerto Rico recognized that the Government's proposed amendment would "significantly expand the claims asserted" and "materially alter the nature of this litigation," which would "unduly prejudice Defendants by drastically expanding the scope of the litigation and requiring Defendants to litigate the claims related to insulin prices in 2 different forums." D.P.R. Dkt. 147. The Government's brief confirms this prejudice—the Government explains that it wishes to expand its claims to encompass "all brand-name drugs," and to include allegations that the PBM Defendants "harm competition in the pharmacy market and disadvantage independent pharmacies" that it failed to assert previously. Government Br. 2.

The Government claims (at 9) that it is "unaware of any authority" that would find unfair prejudice for these reasons. But Defendants cited many such authorities in opposing the Government's motion the first time. D.P.R. Dkt. 143 at 13–14 (citing *Ward*, 2015 WL 4110990, at *3; *Klunder*, 2013 WL 366972, at *1; *Flood*, 2012 WL 6111451, at *3; *Pkfinans Int'l*, 1996 WL 84481, at *3). And the Third Circuit itself has held that defendants can be prejudiced by amendments that "would bring a new theory into the case several years after the beginning of the litigation." *CMR D.N.*

*Corp.*, 703 F.3d at 630; *see also, e.g.*, *Fleet Connect Sols.*, 2024 WL 5679163, at \*7 (C.D. Cal. Nov. 15, 2024).

The Government also asserts (at 6) that courts in this District will decline to find prejudice when "discovery is still open." But the Government cites only a single District of New Jersey case for this proposition, and it is distinguishable. In that case, the court held that defendants are not prejudiced when a proposed amendment "contains substantially the same allegations as the original [c]omplaint," and allowed amendment because the "Plaintiffs represent[ed] that 'no additional discovery would be required from either side.'" *Luppino v. Mercedes-Benz USA, LLC*, 2014 WL 4474004, at \*4 (D.N.J. Sept. 4, 2014). In contrast, the Government undisputedly seeks to broaden its claims beyond the diabetes drugs at issue in the MDL, and allowing amendment here would impose sweeping and burdensome discovery on Defendants, which all would occur outside the MDL.

In any event, the Government has delayed years in bringing this motion, far longer than other cases denying leave to amend where parties attempt to use amendment for "procedural gamesmanship." *See McCoy*, 760 F.3d at 684 (denying leave to amend at the pleading stage); *see also, e.g.*, *Cub Cadet*, 2017 WL 563161, at \*2 (less than two months after complaint filed); *GSS Props., Inc. v. Kendale Shopping Ctr., Inc.,* 119 F.R.D 379, 380 (M.D.N.C. 1988) (three months after complaint filed).

33

## IV. The Manufacturer Defendants' Alternative Suggestion to Sever Non-Diabetes Claims Is Baseless and Premature.

In their separate Opposition, the Manufacturer Defendants suggest that, if the Court were to grant the Government's motion, the Court would be required to sever allegations "outside the MDL's scope" (*i.e.*, allegations directed at the PBM Defendants concerning non-diabetes medications) and remand those portions of Puerto Rico's claims to the District of Puerto Rico.  Manufacturers' Br. 11.  But the Manufacturer Defendants do not cite a single case where a court split a party's existing claims into multiple parts, remanded some pieces, and retained others.[11] That novel approach here would prejudice the PBMs by requiring them to litigate the same issues simultaneously in two places.  It would lead to obvious inefficiency and create a risk of inconsistent decisions on the same or similar issues.

In any event, the Manufacturers' assertions about how to deal with an amendment are premature.  The Court need not address that issue at all if it denies Puerto Rico's motion to amend, as it should for the reasons above.  If the Court does grant Puerto Rico's motion, the consequences of amendment are an issue the Court should address in due course after all parties are fully heard.

---

[11] In the Manufacturers' cited authorities, courts severed already-separate claims or parties from the case.  *See, e.g.*, *Kasey v. Johnson & Johnson*, 2022 WL 17730930, at *6 (D.N.J. Aug. 12, 2022) (severing claims against separate parties); *In re Zyprexa Prods. Liab. Litig.*, 2004 WL 2812095, at *1–2 (E.D.N.Y. Dec. 3, 2004) (severing claims against party where party "consented to severance"); *In re Citigroup Inc. Sec. Litig.*, 987 F. Supp. 2d 377, 391 (S.D.N.Y. 2013) (severing separate cause of action).

## **CONCLUSION**

For these reasons, the Government's motion for leave to amend should be denied.

Dated: June 23, 2025                          Respectfully submitted,


 */s John D. Tortorella*
Kevin H. Marino, Esq.
John D. Tortorella, Esq.
**MARINO, TORTORELLA & BOYLE, P.C.**

Enu Mainigi
Craig Singer
R. Kennon Poteat III
A. Joshua Podoll
Benjamin Hazelwood
Daniel Dockery
**WILLIAMS & CONNOLLY LLP**

*Counsel for CaremarkPCS Health,
L.L.C.; Caremark Puerto Rico, L.L.C.*

 */s  Brian D. Boone*
Brian D. Boone
Elizabeth Broadway Brown
Kelley Connolly Barnaby
Jordan Edwards
**ALSTON & BIRD LLP**

Thomas P. Scrivo
Young Yu
**O'TOOLE SCRIVO, LLC**

*Counsel for OptumRx, Inc.*

 */s/  Jason R. Scherr*
Jason R. Scherr

Elise M. Attridge
Lindsey T. Levy
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004-2541
jr.scherr@morganlewis.com
elise.attridge@morganlewis.com
lindsey.levy@morganlewis.com
Tel: (202) 739-3000

*Counsel for Express Scripts, Inc.*