

Reed Smith LLP
506 Carnegie Center
Suite 300
Princeton, NJ 08540-7839
Phone: +1 609 987 0050
Fax +1 609 951 0824
reedsmith.com

**Melissa A. Geist**
Direct Phone: +1 609 514 5978
Email: mgeist@reedsmith.com

July 16, 2025

Honorable Leda Dunn Wettre, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut St
Newark, NJ 07102

> Re: *In re: Insulin Pricing Litigation*, No. 2:23-md-03080-BRM-LDW, MDL No. 3080: Defendants' Letter Brief Regarding State Agency Discovery

Dear Judge Wettre:

After advocating for a plaintiff fact sheet ("PFS") process, several State Attorney General Track Plaintiffs (the "States") now refuse to participate meaningfully in that process. The Court previously ordered every State to (i) identify the departments, agencies, and offices ("State Agencies") that may have information responsive to the PFS and (ii) disclose whether the State will produce information from those State Agencies without a subpoena. These disclosures were designed to ensure that the PFS "provide[s] substantive information as to … the parties' respective claims and defenses," in order to "efficiently move these matters to their next stages and aid the early definition of the issues presented." ECF No. 278 at 3. Yet, two States—Arizona and Texas—now assert that they lack control over ***any*** State Agency's information, and as a result, leave entire PFS sections unanswered and claim they lack "***any*** responsive documents" sought by the PFS. Ex. 1, 4/15/25 Ariz. Letter (emphasis added). Two other States—Arkansas and Indiana—assert they lack control over some, but not all, critical State Agencies. And Arizona, Texas, Arkansas, Kentucky, Montana, Oklahoma, and Utah disclaim control over documents and information at State Medicaid Agencies.

These States' actions frustrate the Court's goal for the PFS process and ignore clear federal case law requiring ***these same States*** to provide discovery from their State Agencies. The Northern District of California recently rejected the positions the States take here in a thorough, 248-page opinion. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2024 WL 4125618 (N.D. Cal. Sept. 6, 2024) ("*Social Media*"). The States' positions should be rejected for the same reasons explained in *Social Media* and the substantial body of law on which it relies. In particular:

***First***, when States bring claims as the plaintiff, "the government as a whole … is essentially the real party in interest and thus the discovery obligation extends to the entire government." *Social Media*, 2024 WL 4125618, at *10. That means the State and all of its agencies are subject to party discovery. *Id.* at *12. Because every State in the State Attorney General track of this

MDL brings claims on behalf of the "State" or "Commonwealth," the State Agencies must produce responsive materials as part of the PFS process.

**Second**, Rule 34 requires the States to produce the State Agencies' documents because "the Attorney General has legal control over agency documents." *Id.* Courts have repeatedly rejected the same arguments that these States make regarding control over State Agency documents. *Id.* The State Attorneys General who filed these cases regularly serve as legal counsel to the State Agencies and are often required to do so by state law. Indeed, some of these States have insisted that these same State Agencies "should be contacted through Plaintiff's counsel," reinforcing that they have the requisite control under Rule 34. Ex. 2, Ariz. Am. Initial Disclosures at 3-4. As legal counsel for the State Agencies, an Attorney General "is presumed to have control over documents in its client's possession." *Social Media*, 2024 WL 4125618, at *16. And as Defendants detail on a state-by-state basis below, each State has control over information from the specific State Agencies at issue in this letter.

Defendants respectfully request that the Court order the States to collect and produce non-privileged documents and information responsive to the PFS and its associated document requests ("Document Requests") from the State Agencies identified in Appendix A. In doing so, the Court should overrule the objections from the States who have refused to collect and produce documents from these State Agencies.

## BACKGROUND

When discovery began in this MDL, the *States* urged the Court to order a PFS process. The States represented that they were "well aware, from the discovery served and responded to in their cases prior to this MDL's formation, what type of information and documents/data defendants seek," and they claimed that it would be most efficient to provide that discovery through the PFS process. ECF No. 220; ECF No. 168. The Court granted the States' request. Ex. 3, Excerpt of 5/13/24 CMC Tr. at 47:24–48:3. The parties then reached an impasse over which State Agencies within each State "should provide information or documents responsive to the PFS." ECF No. 335 at 1. Finding that this was an "individualized assessment," the Court ordered "each State AG Plaintiff [to] identify for Defendants those departments, agencies, or offices within the State or Commonwealth that possess information or documents responsive to the PFS and whether such information or documents will be provided in the PFS response, without the need for a Court order or subpoena" (the "Disclosures"). *Id.* at 2. If a State took the position that a subpoena was necessary, it must also explain "(A) the basis for not providing such discovery for that entity; (B) whether Plaintiff or its attorneys will be representing that entity if Defendants were to serve a Rule 45 subpoena on that entity; (C) whether Plaintiff will claim privilege over communications between Plaintiff or its attorneys and that entity; and (D) whether Plaintiff or its attorneys issued a legal hold notice to that entity." CMO No. 15 at 3.

The States began serving their Disclosures in late December 2024. Most Disclosures listed only the State Attorney General's office and one or two other State Agencies. They omitted State Agencies identified in the States' own initial disclosures and PFS responses as well as State Agencies whose websites show they have responsive information. *See* Ex. 4, 1/24/25 Defs.' Letter at 3-9 (highlighting in blue text State Agencies that the States identified in their initial disclosures and/or PFS responses, but omitted from their Disclosures).

2

The parties met and conferred on January 22, 2025, and Defendants sent the States a letter on January 24, 2025[1] laying out nine categories of State Agencies missing from the States' Disclosures, but likely to have documents or information responsive to the PFS. Unsurprisingly, in litigation involving manufacturers, PBMs, and the cost of prescription drugs, those agencies included departments regulating insurers or PBMs, and departments managing State health plans, State Medicaid, and State Boards of Pharmacy. Ex. 4. Defendants also identified Departments of Corrections, Departments of Health and/or Human Services, Departments of Management and Budget, Offices of the State Auditor, and Retirement Systems Departments as likely to possess relevant information given their involvement in the same subjects. Ex. 4. Defendants further identified examples of PFS questions and requests that each State Agency could likely address.

The States all initially refused to add the missing State Agencies to their Disclosures. Only after multiple rounds of meet-and-confers did most States abandon that position and concede that (1) the omitted State Agencies should be listed in the Disclosures; and (2) the States *could* in fact produce most State Agencies' documents without a subpoena. But a minority of States have not followed suit. In particular:

- Arizona and Texas refuse to produce information on behalf of *any* State Agency other than the State Attorney General's office, claiming they "lack control" over those agencies. Arizona goes further, disputing that certain Agencies even have information responsive to the PFS;

- Arkansas has agreed to produce documents on behalf of only two Agencies out of the ten Agencies identified by Defendants (the Arkansas Attorney General's Office and the Department of Transportation and Shared Services ("DTSS")); and

- Indiana refuses to produce documents on behalf of its Department of Insurance.

The PFS process with Arizona and Texas has ground to a halt. Arizona produced no documents and refuses to provide information in response to dozens of questions in the PFS on the ground that "the requested information is not applicable" to the Office of the Attorney General. *See* Ex. 6, Ariz. PFS Response. Texas responded solely on behalf of the *Consumer Protection Division* of the Texas Office of the Attorney General, excluding even information known by other divisions within the Texas Attorney General's Office. Meanwhile, multiple States[2] refuse to produce documents on behalf of their State Medicaid Agencies, denying that they have control over these documents.

A breakdown of the States and their positions regarding the relevant State Agencies is attached as Appendix A.

---

[1] Defendants sent a similar letter to California on March 9, 2025, and met and conferred with counsel for California separately from counsel for the other states. Ex. 5. On June 30, 2025, California's governor signed A.B. 137, which amends certain California Code provisions related to the Attorney General's representation of California State Agencies. Defendants intend to confer with California regarding this recent development and reserve all rights to raise disputes regarding California's disclosures. The Parties also continue to correspond regarding Massachusetts's and Puerto Rico's DAO disclosures, and Defendants reserve all rights to raise disputes regarding Massachusetts's and Puerto Rico's disclosures at the appropriate time.

[2] Arizona, Arkansas, Kentucky, Montana, Oklahoma, Texas, and Utah.

## LEGAL STANDARD

Rule 34 requires that a party produce responsive, non-privileged documents within its "possession, custody, or control." Fed. R. Civ. P. 34. "A party may be required to turn over documents owned by a non-party if the producing party has either actual possession of the documents or control over documents not in its physical possession." *In re Generic Pharms. Pricing Antitrust Litig.* ("*Generic Pharms. I*"), 571 F. Supp. 3d 406, 410 (E.D. Pa. 2021). "Federal courts have interpreted 'control' broadly." *Social Media*, 2024 WL 4125618, at *4. Control includes "the ***legal right*** to obtain the documents requested on demand." *In re Generic Pharms. Pricing Antitrust Litig.* ("*Generic Pharms. II*"), 699 F. Supp. 3d 352, 357 (E.D. Pa. 2023) (emphasis added); *accord Social Media*, 2024 WL 4125618, at *4.

## ARGUMENT

Defendants first explain the core principles that govern why States have control over the State Agency documents. Defendants then address control in the context of each State's statutes, factual allegations, and representations. Finally, Defendants address the States' control over State Medicaid Agencies, which multiple States dispute.

**I.   COURTS HAVE REJECTED THE STATES' ARGUMENTS THAT THEY LACK CONTROL OVER STATE AGENCY DOCUMENTS AND INFORMATION.**

"[W]hen a state Attorney General initiates litigation on behalf of the state, and thus exercises authority to file a lawsuit *parens patriae*, that Attorney General has legal control over agency documents." *Social Media*, 2024 WL 4125618, at *12.[3] Federal courts across the country have thus compelled States to produce discovery from their State Agencies when they bring claims *parens patriae* or on behalf of the State. *See, e.g., id.* at *25-28, 53-65, 79-82 (compelling production by numerous state agencies); *League of United Latin Am. Citizens v. Abbott*, 2022 WL 1540589, at *3 (W.D. Tex. May 16, 2022) (granting motion to compel Texas state agencies to produce documents because Texas "is made up of state executive agencies or officials who have information that is relevant to the factual basis for the claim").[4]

Every State Attorney General in this MDL asserts claims on behalf of the State ***as a whole***. For example, Arkansas alleges that "[t]he State of Arkansas is the sole Plaintiff in this action" and

---

[3]   After Plaintiffs appealed the *Social Media* decision, the district court adopted the Magistrate Judge's opinion as "correct, well-reasoned, and thorough," although it modified the order for certain states not subject to this motion and based on state law nuances inapplicable here. *In re Social Media Adolescent Addition/Pers. Inj. Prods. Liab. Litig.*, 2025 WL 1179370, at *1 (N.D. Cal. Mar. 6, 2025) (*Social Media II*).

[4]   *Accord State of Minnesota v. Sanofi-Aventis U.S. LLC et al.*, No. 2:22-cv-01946, ECF No. 45 at 16 (D.N.J. July 29, 2022) ("[D]iscovery requests made to this agency are effectively discovery requests being made to the State of Minnesota, the plaintiff in this litigation"); *Washington v. GEO Grp., Inc.*, 2018 WL 9457998, at *3 (W.D. Wash. Oct. 2, 2018) (concluding that the claims were "*parens patriae* on behalf of the State," so the attorney general must "produce all relevant, responsive, non-privileged information held by the State [], including its agencies"); *In re Opioid Litig.*, 2019 WL 4120096, at *1 (N.Y. Sup. Ct. Aug. 14, 2019) (requiring the New York attorney general to produce documents from state agencies where the action was brought on behalf of "the People of the State of New York" rather than any "specific state agencies or offices"); *State v. Purdue Pharma, L.P.*, 2020 WL 13566522, at *3 (N.M. Dist. July 22, 2020) (holding that New Mexico "is obligated to respond to discovery requests based on information and documents available to state agencies, departments and boards").

4

its Attorney General "represents and protects the state, its subdivisions, the legitimate business community, and the general public as consumers." Ark. Compl. ¶ 39. Other States describe their claims the same way. *See, e.g.*, Tex. Compl. ¶ 47 ("The State of Texas is the sole Plaintiff in this action."); Ariz. Compl. ¶ 35 (Plaintiff is "the State of Arizona"). Each State is "made up of state executive agencies or officials who have information that is relevant to the factual basis for the claim" brought by the State. *League of United Latin Am. Citizens*, 2022 WL 1540589, at *3. Their complaints contain sweeping allegations relating to (1) the amount that the State treasury has spent on diabetes-related health care costs; (2) decreased State tax revenue; (3) loss of work productivity in the State's workforce; and (4) costs to the State healthcare system. *See, e.g.*, Ark. Am. Compl. ¶ 484 ("This decrease in work productivity has further damaged the State by injuring its economy and decreasing its tax revenue."); Mont. Compl. ¶¶ 31-32 ("[T]he Insulin Pricing Scheme also adds substantial costs to the Montana healthcare system … Montana shoulders the burden for much of these increased healthcare costs, spending billions of dollars annually in healthcare-related costs for diabetes and diabetes-associated complications"); *see also* Utah Compl. ¶¶ 32-33 (same); Okla. Compl. ¶¶ 31-32 (same); Ark. Am. Compl. ¶¶ 31-32 (same). Those allegations reinforce the fact that "the Plaintiff" in each of these cases is "the State," not the lawyers who work in the State Attorney General's office.

The recent *Social Media* decision addresses, in depth, the States' discovery obligations in civil lawsuits like the ones in this MDL. *Social Media* provides a state-by-state roadmap distilling the significant body of authority on when state attorneys general have "control" over state agency documents under Rule 34.[5] It considers (1) whether each state's statutory scheme requires the Attorney General to serve as counsel for the agencies in question, or, alternatively, whether the Attorney General would be serving in that role as a practical matter; and (2) whether state law permits an Attorney General to access documents. *See, e.g.*, *id.* at *25-28 (analyzing Arizona Attorney General's control over documents from nine state agencies). It ultimately ordered many of the same States in this litigation to produce documents from dozens of the same State Agencies at issue here, holding that the States' "discovery obligation[s] extend[] to the entire government," including "other government agencies even if they are non-parties," since the "whole government" is "essentially the real party in interest." *Id.* at *10. In doing so, *Social Media* rejects the same arguments that the States have advanced here:

***First***, the States have largely resisted discovery by making arguments under state law. As *Social Media* explained, however, "the control issue under Rule 34 is governed by federal law"—not state law—although each state's "constitutional or statutory scheme" should be considered as part of the fact-specific inquiry. 2024 WL 4125618, at *6 (collecting cases looking to a state's constitutional or statutory scheme "when deciding whether one governmental entity has control over the documents of another governmental entity"). Indeed, courts regularly hold "that a state law restriction on producing documents is not a barrier to a finding of control," and a "federal district court has the authority under federal law to order disclosure of documents in discovery in civil actions, notwithstanding state law which put limits on such disclosure." *Id.* at *6-7. Thus, the argument "that a state statute would excuse or bar production of the agencies' documents even

---

[5] *Social Media* applied the Ninth Circuit's definition of "control" under Rule 34—*i.e.*, "the legal right to obtain documents on demand." *Id.* at *3. The Third Circuit defines "control" under Rule 34 the same way. *Gerling Int'l Ins. Co. v. CIR*, 839 F.2d 131, 140 (3d Cir. 1988) (defining control as the "legal right to obtain the documents requested on demand" (cleaned up)).

where the [federal] Court finds control … is legally unsound." *Id.* at *7-8; *accord Generic Pharms. II*, 699 F. Supp. 3d at 357-58 (rejecting the argument that Arizona lacked control because "Arizona has identified no provision of law that would prohibit the AGO from obtaining documents from state agencies in the course of prosecuting a lawsuit on behalf of the State.").

***Second***, the States have argued that they do not need to produce documents from the State Agencies because those "non-party" agencies are "separate" from the State Attorney General. Courts recognize those arguments—that "non-party agencies are not parties to this case, and thus they are by definition not subject to party discovery"—are "circular" and "distinct from the issue of control." *Social Media*, 2024 WL 4125618, at *3, *12. "If only one entity were involved, then by definition that single entity would 'possess' the documents under Rule 34 and the disjunctive issue of control would not arise." *Id.* at *8. Said another way, "[i]f the mere fact that two separately constituted or formed entities were enough to defeat control, then there would almost never be a finding of control." *Id.* Instead, the State Attorney General merely needs a "legal right" to obtain documents from the State Agencies, a concept that is "liberally construed" in the context of Rule 34. *Id.* at *9; *Generic Pharms. II*, 699 F. Supp. 3d at 357. The State Attorney General does not need to have "operational, day-to-day control," "unfettered access or some otherwise unbounded right to access state agencies' documents." *Social Media*, 2024 WL 4125618 at *9.

***Third***, some States have argued that the State Attorney General is not statutorily mandated to represent State Agencies in this litigation, and thus lacks control. As a threshold matter, "[w]hen a state agency is mandated to use the state attorney general as its exclusive legal counsel, this mandate carries with it an indication that the attorney general has legal control over the agency's documents." *Id.* at *16. That is because "an attorney is presumed to have control over documents in its client's possession." *Id.* (citing *Perez v. Perry*, 2014 WL 1796661, at *2 (W.D. Tex. May 6, 2014)).

A State Attorney General also has control of State Agency documents when it "provides legal representation and legal services" to the Agency in the ordinary course, even if the representation and services are ***not statutorily mandated***. *Generic Pharms. II*, 699 F. Supp. 3d at 357-58. Such regular representation shows that the Attorney General can "obtain[] documents from state agencies in the course of prosecuting a lawsuit on behalf of the State," and thus has control of their documents for purposes of Rule 34. *Id.* (ordering production from Arizona state agencies in suit brought by the Arizona Attorney General, even though "state agencies may withdraw their consent to be represented by the AGO in antitrust cases, and therefore the AGO does not represent the agencies without their express permission"). Many of the States at issue here confirmed that if Defendants were to issue third party subpoenas, nearly all of those third party subpoenas will be handled by, or in collaboration with, the State Attorney General. *See* Ex. 2, Ariz. Am. Initial Disclosures at 3-4 (State Agencies "should be contacted through Plaintiffs' counsel."); Ex. 7, Ariz. Am. DAO at 2 (Arizona AG "may represent" agencies); Ex. 8, Tex. Suppl. DAO at 3 (Texas AG "will cooperate and work collaboratively with counsel for any Texas agencies"); Ex. 9, Utah Suppl. DAO at 4 (same); Ex. 10, Mont. Suppl. DAO at 3 (same). As *Social Media* concluded, "it is inconsistent for the State to argue that on one hand the Attorney General represents these individuals, but that for discovery purposes the [Defendants] must resort to [a] Federal Rule of Civil Procedure 45" subpoena. *Social Media*, 2024 WL 4125618, at *27. It is also "wasteful to require a party in a complex litigation to serve individual subpoenas on a

multitude of state agencies, particularly where all parties and this Court know that the Attorneys General will be representing those state agencies in responding to the subpoenas." *Id.* at *23.

## II. EACH STATE ATTORNEY GENERAL HAS CONTROL OVER THE DISPUTED AGENCIES' DOCUMENTS AND INFORMATION.

Despite this clear authority, two States—Arizona and Texas—refuse to produce documents and information from *any* of their Agencies, including agencies with direct responsibilities related to this case. Two States—Arkansas and Indiana—take that position with respect to a subset of their agencies. And Arizona disputes whether certain Agencies are within the scope of the PFS. These States claim that Defendants must subpoena agencies in a transparent effort to impose unnecessary burdens on Defendants and avoid producing relevant materials. Each State has the legal right to obtain required documents from these Agencies and thus must provide this discovery consistent with the Court's PFS implementation order.

### A. Arizona

Arizona should produce documents and information held by the following State Agencies: (i) Arizona Department of Juvenile Corrections ("DJC"); (ii) Arizona Auditor General; (iii) Arizona Board of Pharmacy ("BOP"); (iv) Arizona Retirement System ("SRS"); (v) Arizona Department of Corrections, Rehabilitation, and Reentry ("ADC"); (vi) Arizona Department of Health Services ("ADHS"); (vii) Arizona Department of Administration ("ADOA"); (viii) Arizona Health Care Cost Containment System; and (ix) the Attorney General's Office (collectively, the "Arizona Agencies"). Arizona asserts that the only Plaintiff in this action is the Arizona Attorney General—not the State. It also disputes that the Arizona Attorney General has control over any other State Agency's documents and claims that Arizona's DJC, Auditor General, BOP, and SRS lack information responsive to the PFS. None of these arguments is viable.

#### 1. Arizona Is the Plaintiff and Has Control Over State Agency Documents.

Arizona takes the position that "the Plaintiff is properly identified as the Arizona Attorney General," not "the State of Arizona," and denies that it is "suing on behalf of the entire state." Ex. 1, 4/15/25 Ariz. Letter. That position cannot be squared with its complaint. The first sentence of Arizona's complaint says "***Plaintiff*, *the State of Arizona***, brings this action." Ariz. Compl. at 5 (emphasis added). Where Arizona's complaint identifies the parties, it says the following regarding "Plaintiff": "Plaintiff, the State of Arizona, is a body politic created by the Constitution and laws of the State. This action is brought ***by the State***, by and through Kris Mayes, Attorney General of the State of Arizona, in its ***sovereign*** capacity, ***in order to protect the interests of the State*** and its citizens." *Id.* ¶ 35 (emphasis added). The same is true for Arizona's initial disclosures, which define the "Plaintiff" as "Plaintiff State of Arizona." Ex. 2, at 2.

In fact, Arizona's PFS position is irreconcilable with prior positions it took in this suit. Arizona contends that it does not need to provide any PFS discovery because "[t]he Arizona Attorney General does not offer any Health Plans, spend any money on At-Issue products, or contract with PBMs, insurers, or third-party administrators, consultants, or advisors, nor does it have any Health Plan expenditures that could be subject to audit." Ex. 1, 4/15/25 Ariz. Letter. This argument contradicts the complaint and Arizona's initial disclosures. Arizona pled that

"payors *like the State*, purchased [manufacturers'] at-issue drugs at prices based on artificially inflated list." Ariz. Compl. ¶ 55. Arizona's initial disclosures define "Plaintiff" as "Plaintiff State of Arizona" and identify individuals who have relevant information about (i) "plans and prescription drug coverage offered, administered, or sponsored by *Plaintiff* during the relevant time period"; (ii) "*Plaintiff's* RFPs relating to [PBM] services"; (iii) "PBMs with whom *Plaintiff* contracted during the relevant time period, as well as contracts and communications with such PBMs"; (iv) "representations made to *Plaintiff* by PBMs regarding their PBM services"; (v) "third parties with whom *Plaintiff* contracted regarding its health plans or its selection of PBMs, as well as contracts and communications with such advisors or other third parties"; (vi) "purchases of at-issue medications by *Plaintiff* and/or *Plaintiff's* plan beneficiaries"; and (vii) "total drug expenditures by *Plaintiff* (including total expenditures on at-issue medications)." Ex. 2, at 2-4 (emphases added). The Court should reject this gamesmanship.

Arizona also asserts that the lawyers in the Attorney General's office lack "possession, custody, or control of *any* … documents" responsive to the PFS, because they lack control over any State Agency documents. Ex. 1, 4/15/25 Ariz. Letter. That is wrong, as the court in *Social Media* recognized. *Social Media*, 2024 WL 4125618, at *28 (holding "that the Arizona Attorney General has control, for the purposes of discovery, over the documents of six of the Arizona agencies at issue"); *see also In re Social Media II*, 2025 WL 1179370, at *12 (denying Arizona's motion for reconsideration); *see also Generic Pharms II*, 699 F. Supp. 3d at 357-58 ("Arizona has identified no provision of law that would prohibit the AGO from obtaining documents from state agencies in the course of prosecuting a lawsuit on behalf of the State."). These rulings rest on several principles applicable to Arizona.

The Arizona Attorney General is the statutorily mandated "legal advisor of the departments of [the] state," Ariz. Rev. Stat. Ann. § 41-192(A), and as such "is presumed to have control over documents in its client's possession." *Social Media*, 2024 WL 4125618, at *27. The Arizona Attorney General's Office describes itself "as the chief legal and law enforcement officer in the State of Arizona," and in that capacity "acts as the largest law firm in the state, representing and providing legal advice to most state agencies."[6] In fact, Arizona Agencies "are prohibited completely from retaining separate counsel" or otherwise "mak[ing] an expenditure … for legal services," unless given the statutory right to obtain outside counsel. *Social Media*, 2024 WL 4125618, at *25; Ariz. Rev. Stat. Ann. § 41-192(D)(1)-(11). Of the Arizona Agencies, only the Arizona Auditor General even has the *option* to retain counsel other than the Arizona Attorney General. *Id.* Arizona leaves open the possibility that the Attorney General "may represent" the agencies it listed in its DAO, and does not disclaim that it may do the same for the other agencies it incorrectly omits from the DAO like the Auditor General. *See* Ex. 7, Ariz. Am. DAO at 2. In short, by statute, the Arizona Attorney General "shall" represent the Arizona Agencies, and in practice, the Arizona Attorney General *does* represent these Agencies.[7] *Taylor v. Arizona L. Enf't*

---

[6] *See* About the Arizona Attorney General's Office, https://www.azag.gov/about.

[7] *See, e.g.*, *City of Flagstaff v. Arizona Dep't of Admin.*, 526 P.3d 152 (Ariz. Ct. App. 2023) (Arizona AG representing ADOA); *Arizona Recovery Hous. Ass'n v. Arizona Dep't of Health Servs.*, 462 F. Supp. 3d 990 (D. Ariz. 2020) (Arizona AG representing ADHS); *Lagerman v. Arizona State Ret. Sys.*, 462 P.3d 1009 (Ariz. Ct. App. 2020) (Arizona AG representing SRS); *Sebert v. Arizona Dep't of Corr.*, 2016 WL 3456909 (D. Ariz. June 17, 2016) (Arizona AG representing ADC); *Austin v. State of Arizona, et al.*, 2008 WL 4368608 (D. Ariz. Sept.

*Merit Sys. Council*, 731 P.2d 95, 101 (Ariz. Ct. App. 1986) ("The attorney general is compelled by statute to represent all state agencies.").

Arizona tries to avoid this statutory mandate by asserting that it "brings its sole claim in its *parens patriae* capacity to seek relief for the citizens of Arizona under Arizona's Consumer Fraud Act, AZ Stat. §§ 44-1521–1534," and thus "the Arizona Attorney General—not the State of Arizona in a unitary form" is bringing suit. Ex. 11, 4/2/25 Meet and Confer Correspondence. The *Social Media* court squarely rejected that argument. There, the Arizona Attorney General pursued claims under the *same* statute, and the court held that when the Arizona Attorney General "initiates litigation on behalf of the state, and thus exercises authority to file a lawsuit *parens patriae*, that Attorney General has legal control over agency documents." 2024 WL 4125618, at *12 (collecting examples). Arizona also argues that the Attorney General's office is separate from other State Agencies. *Social Media* rejects that argument too, holding that "[t]o the extent the Arizona Attorney General relies on the statutory origins of that office, such state statutes are unavailing to prohibit a finding of control here." *Id.* at *27.

### 2. The Arizona Agencies Are Likely to Have Responsive Information.

All nine of the Arizona Agencies are likely to have information responsive to the PFS. Indeed, Arizona has *conceded* that five of these Agencies have responsive information (Arizona Department of Corrections, Rehabilitation, and Reentry, ADHS, ADOA, Arizona Health Care Cost Containment System, and the Attorney General's Office). Public information and Arizona's own initial disclosures confirm that the other four Agencies (Arizona DJC, Auditor General, BOP, and SRS) do as well.

- **Arizona DJC**: Arizona DJC purchases At-Issue Products for individuals in its facilities. Specifically, Arizona DJC "provides … health care to all juveniles at Adobe Mountain School," "including for individuals with chronic illnesses like … diabetes." "Medications are provided to all youth as prescribed. … Medications are ordered and shipped by a third party pharmacy company and we receive medication orders daily."[8] Arizona DJC thus has information and documents related to Arizona's purchases and coverage of these medicines. *See, e.g.*, PFS Questions 9-13, 15-21, 43-46, 52-54 and Document Requests 1-8.

- **Arizona Auditor General**: This office ensures proper use of public funds by auditing Arizona agencies and operations to prevent fraud, waste, and abuse, including (potentially) review of the contracts entered into by the State's other agencies. That includes auditing State Health Plans, as relevant to PFS Question 46. Also, as is true in many states, Arizona's Auditor General may issue reports concerning PBMs and pharmaceutical

---

22, 2008) (Arizona AG representing DJC); *Low Cost Pharmacy, Inc. v. Arizona State Bd. of Pharmacy*, 2008 WL 2154793 (Ariz. Ct. App. May 20, 2008) (Arizona AG representing BOP).

[8] This quoted language existed on the Arizona DJC's website as of March 2025. *See* Ex. 12, https://web.archive.org/web/20250304230809/https://adjc.az.gov/administrative-services/medical-services. On March 19, 2025, Defendants provided this language to counsel for Arizona to help explain their basis for this request. Ex. 11, 4/2/25 Meet and Confer Correspondence. Since that time, the Arizona DJC has removed that language from its website. *See* https://adjc.az.gov/administrative-services/medical-services.

pricing.

- **Arizona BOP**: In addition to licensing certain Defendants, the Arizona BOP "regulat[es] the practice of pharmacy" and "the manufacturing, distribution, sale and storage of prescription medications," including At-Issue Products. https://pharmacy.az.gov/about. Arizona BOP likely has reports on Arizona patients with diabetes, the cost of insulin to patients, and several other topics sought by PFS Questions 11-13, 32-34, 37-38, 50-51 and Document Request 6.

- **Arizona SRS**: Arizona SRS "administers … retiree health insurance plans" for "[m]ore than a half-million of Arizona's public servants," including an insulin affordability program for its members.[9] In its initial disclosures, Arizona even identifies the Executive Director of the Arizona SRS, Mr. Paul Matson, as "likely to have discoverable information . . . regarding the scope and scale of diabetes diagnoses and treatment among retired state employees." Ex. 2, Ariz. Am. Initial Disclosures at 3-4. Arizona has never articulated how it could be the case that the Executive Director of the Arizona SRS likely has discoverable information relevant to this litigation, but the agency itself does not. Arizona SRS thus has information responsive to multiple PFS questions and requests. *See, e.g.*, ECF No. 349 Questions 9-13, 15-21, 23-26, 43-46, 48-53 and Document Requests 1-8.

Despite multiple opportunities, Arizona has never (i) explained its belief that these Agencies lack responsive information, (ii) responded to the specific information Defendants provided about these agencies, or (iii) even confirmed that it conducted ***any*** investigation into whether these State Agencies have responsive information. Ex. 11, 4/2/25 Pifko email (Meet and Confer Correspondence). In fact, Arizona's position has been that, while "***individual employees*** of state agencies [like Mr. Matson] might have responsive information … the state agency ***itself*** would not have such information"; therefore, "there was no obligation for the State to look for that information with the agency." Ex. 11, 2/15/25 Burrichter email (Meet and Confer Correspondence). That position is indefensible. Arizona law, federal precedent, and Arizona's own statements and conduct confirm that (1) the State of Arizona is the Plaintiff and has control over its Agencies' documents, and (2) all nine Arizona Agencies have information responsive to the PFS. The Court should order Arizona to produce documents and information responsive to the PFS and Document Requests on behalf of all nine Arizona Agencies.

### B. Arkansas

Arkansas should produce documents and information held by at least the following ten State Agencies: (i) Arkansas Attorney General's Office, (ii) Department of Transportation and Shared Services ("DTSS"), (iii) Department of Corrections ("DOC"), (iv) Department of Human Services ("Arkansas DHS"), (v) Department of Health, (vi) Board of Pharmacy ("Arkansas BOP"), (vii) Insurance Department, (viii) University of Arkansas Medical Services EBRx, (ix) Auditor of State, and (x) the Bureau of Legislative Research ("BLR") (collectively, the "Arkansas Agencies"). While Arkansas contends that these Agencies are "not relevant," the State does not dispute that these Arkansas Agencies may possess information or documents responsive to the

---

[9] *See* https://www.azasrs.gov/content/about-us; https://www.brainshark.com/1/player/uhc?pi=zHwzN2G4vzYqsuz0&r3f1=&fb=0 ("$0 Cost on Insulin and Other Vital Prescription Drugs").

PFS. Arkansas disputes that it has control over information and documents held by all Arkansas Agencies except the Arkansas Attorney General's Office and DTSS. The Court should reject that position for multiple reasons.

***First***, Arkansas, like Arizona, claims that the Attorney General is the sole Plaintiff in this action, rather than the State at large. Arkansas's complaint, however, makes clear that "[t]he State of Arkansas is the sole Plaintiff in this action." Ark. F.A.C., ¶ 39 ("Plaintiff, the State of Arkansas . . . brought in its name on relation of the Attorney General Leslie Rutledge"). The complaint further states that the Arkansas Attorney General "represents and protects the state [and] ***its subdivisions***." *Id.* These allegations show that the State of Arkansas "is essentially the real party in interest and thus the discovery obligation extends to the entire government." *Social Media*, 2024 WL 4125618, at *10. Thus, "discovery requests made to [Arkansas] agenc[ies] are effectively discovery requests being made to the State," which is "the plaintiff in this litigation." *State of Minnesota v. Sanofi-Aventis U.S. LLC et al.*, No. 2:22-cv-01946, ECF No. 45 at 16 (D.N.J. July 29, 2022).

***Second***, Arkansas incorrectly claims that it lacks control over Arkansas Agencies because such Agencies are "purely and wholly under control of the Governor" and that the Office of the Attorney General "is a 'separate constitutional office.'" Ex. 13, Ark. Suppl. DAO at 4. The Arkansas Attorney General is statutorily empowered, and indeed ***required***, to represent these agencies. Ark. F.A.C., ¶ 39 (Counsel for the Arkansas Attorney General "represents and protects the state [and] ***its subdivisions***."); *see also* Arkansas Attorney General, *About The Office*, https://arkansasag.gov/divisions/office/ (Arkansas Attorney General serves as "Arkansas's lawyer and chief law enforcement officer … provid[ing] legal representation for the state of Arkansas, its officers, agencies, boards, and commissions."). The "Attorney General ***shall*** be the attorney for all state officials, departments, institutions, and agencies." Ark. Code Ann. § 25-16-702(a) (emphasis added); *see also id.* § 703(a) (similar requirement). In fact, no state agency may employ other counsel unless the Arkansas Attorney General "fails to render the service when requested in writing," in which case such counsel must be approved by the Governor. *Id.* §§ 25-16-702(b), (c). Consistent with its "statutor[y] obligat[ion]," the Arkansas Attorney General routinely represents the Arkansas Agencies in litigation. *Holloway v. Arkansas State Bd. of Architects*, 352 Ark. 427, 442 (Ark. 2003).[10]

Arkansas's "dual executive" argument is a "logical fallacy" that fails to distinguish between the concepts of "separation of powers" and legal control under Rule 34. *Social Media*, 2024 WL 4125618, at *8-9. "[T]he reality [is] that the 'legal control' issue for discovery arises when there are two legally distinct or separate entities"—in other words, legal separateness begins the control analysis, it does not end it. *Id.* at *8. That is why courts across the country reject

---

[10] *See, e.g.*, *Beal v. Arkansas Bureau of Legis. Rsch.*, No. 4:24-cv-00750, ECF No. 4 at 1 (E.D. Ark. Dec. 4, 2024) (Arkansas AG representing BLR); *Glass v. Arkansas Ins. Dep't*, No. 2:20-cv-041-BSM, ECF No. 3 (E.D. Ark. Mar. 13, 2020) (Arkansas AG representing Arkansas Insurance Department); *Martin v. Arkansas Dep't of Health*, 2023 WL 6392765 (E.D. Ark. Sept. 29, 2023) (Arkansas AG representing Department of Health); *Curis Pharmacy (Sentrix Pharmacy & Disc., LLC) v. Arkansas State Bd. of Pharmacy*, 2021 WL 5819016 (Ark. Ct. App. 2021) (Arkansas AG representing BOP); *McCroskey v. Kelley*, 2015 WL 6964238 (E.D. Ark. Nov. 10, 2015) (Arkansas AG representing DOC); *Watts v. Admin. Offs. of Cts.*, 2019 WL 13193420 (E.D. Ark. Mar. 13, 2019) (Arkansas AG representing Auditor of State); *Hawkins v. Arkansas Dep't of Hum. Servs.*, 2017 WL 10621235 (E.D. Ark. Apr. 3, 2017) (Arkansas AG representing DHS).

"[g]eneral arguments regarding a possible conflict between the [Office of the Attorney General] and the governor of a State with authority over state agencies," including for Arkansas. *See Generic Pharms. II*, 699 F. Supp. 3d at 357; *Social Media*, 2024 WL 4125618, at *8-10; *accord Holloway*, 352 Ark. at 442 (rejecting the premise that the Arkansas Attorney General had an irreconcilable conflict of interest when representing multiple different state agencies). Arkansas law provides the Arkansas Attorney General with broad powers and responsibilities that sweep across all "officials, departments, institutions, and agencies." Ark. Code Ann. §§ 25-16-702(b), (c). Accordingly, Arkansas state courts have compelled the Arkansas Attorney General to produce documents on behalf of some of the same agencies at issue here, including the Department of Health, DHS, and DOC. *See* Order Granting, In Part, Separate Defendants' Motion to Compel Discovery, *Rutledge v. Purdue Pharma, L.P.*, No. 60CV-18-2018, at *3 (Ark. Cir. Ct. Oct. 1, 2019) (rejecting argument that State AG lacked "possession, custody, or control" of relevant state agency documents).

In short, Arkansas is suing on behalf of the State, "the Attorney General is statutorily obligated to represent these state agencies," and it has broad powers to obtain documents from state agencies. *Holloway*, 352 Ark. at 442. Arkansas should be required to produce documents and information responsive to the PFS and Document Requests on behalf of the ten Arkansas Agencies.

### C.     Texas

Texas should produce responsive documents and information on behalf of the (i) Department of Criminal Justice, (ii) Juvenile Justice Department, (iii) Health and Human Services Commission, (iv) State Board of Pharmacy, (v) Department of Insurance, (vi) State Auditor's Office, (vii) Comptroller of Public Accounts, (viii) Teacher Retirement System, (ix) Employee Retirement System, (x) Emergency Services Retirement System, (xi) the University of Texas Medical Branch, and (xii) the Texas Attorney General's Office (collectively, the "Texas Agencies").[11] While Texas maintains that these Agencies are not "necessary or relevant," the State does not dispute that these Texas Agencies have information responsive to the PFS. *See* Ex. 8, Tex. Suppl. DAO at 1. Instead, Texas claims that it lacks control over documents at any Texas Agency except the *Consumer Protection Division* of the Texas Attorney General's office, not even the entire Texas Attorney General's Office. *Id* at 3. That position is untenable.

The Plaintiff in this case is not the Texas Attorney General's Consumer Protection Division. As Texas's complaint makes clear, "[t]he State of Texas is the sole Plaintiff in this action." Tex. Compl. ¶ 47. As such, Texas is "the real party in interest and thus the discovery obligation extends to the entire government." *Social Media*, 2024 WL 4125618, at *10.[12] Multiple federal courts have held that "[f]or the purposes of party discovery …, 'the State of Texas' is made up of state executive agencies or officials" and Texas must produce discovery from those agencies. *League of United Latin Am. Citizens*, 2022 WL 1540589, at *2, *3 (rejecting argument that non-

---

[11] This obligation also extends to the following offices, committees, and subagencies that are organized under the listed entities for Texas, including the Correctional Managed Health Care Committee (Department of Criminal Justice); the Comprehensive Health Insurance Plan and Office of Inspector General (Health and Human Services Commission); and HealthSelect of Texas (Employee Retirement System).

[12] Texas is not a plaintiff in *Social Media*, and the court did not analyze Texas in that decision.

12

party agencies were "not part of the State of Texas" and collecting "many examples" where "Texas has demonstrated its control over documents held by non-party agencies or officials"); *Perez*, 2014 WL 1796661, at *2. Indeed, the State of Texas itself has recognized its control over agency documents in its own filings elsewhere. *See* Texas's Initial Disclosures at 34, ECF No. 162-2, *Veasey v. Perry*, 2:13-cv-193 (S.D. Tex. Feb. 11, 2014) (the "State of Texas produced numerous documents on behalf of the Secretary of State, the Department of Public Service, the Governor's Office, the Lieutenant Governor's Office and the Texas Legislature"); Stipulated Protective Order at 1, ECF No. 162, *La Unión del Pueblo Entero v. Abbott*, No. 5:21-cv-844 (W.D. Tex. Dec. 23, 2022) (Texas will produce on behalf of Texas Department of Public Safety).

Texas cannot sue on behalf of the entire "State of Texas," only to go on to assert that it does not bear any discovery obligations beyond the lawyers who work for *one division* of the Attorney General's Office. The *Social Media* decision rejected similar arguments by State Attorneys General that for purposes of discovery "the Court should subdivide their offices between the team or division of attorneys litigating this [MDL]" as "contrary to the weight of law." *Social Media*, 2024 WL 4125618, at *23; *accord Washington v. GEO Grp., Inc.*, 2018 WL 9457998, at *2–4 (W.D. Wash. Oct. 2, 2018) (ordering discovery from "all divisions of the AGO" and rejecting the argument that the Washington Attorney General need not "produce discovery from certain and/or all divisions within the AGO"). Moreover, the Texas Attorney General is "the lawyer for the State of Texas" and "serves as legal counsel to all boards and agencies of state government."[13] Texas law mandates that the Texas Attorney General "serves as the State of Texas' legal counsel and the Office of the Attorney General therefore represents the state agencies and institutions of higher education." 1 Tex. Admin. Code § 57.3(a); *Hill v. Texas Water Quality Bd.*, 568 S.W.2d 738, 741 (Tex. Civ. App. 1978) (same). "Agencies may not retain or select any Outside Counsel without first receiving authorization and approval from the Office of the Attorney General to do so." 1 Tex. Admin. Code § 57.3(a); *see also* Tex. Gov't Code Ann. § 402.0212(a) (same). Given this fact, "it would be wasteful to require a party in a complex litigation to serve individual subpoenas on a multitude of state agencies, particularly where all parties and this Court know that the Attorneys General will be representing those state agencies in responding to the subpoenas." *Social Media*, 2024 WL 4125618, at *23.

Texas's position that it can disclaim any obligation to produce documents except from *one division* within *one agency* flouts the law, the pleadings, and common sense. Texas has control over the twelve Texas Agencies' documents and information, and it should be required to produce documents and information responsive to the PFS on their behalf.

### D. Indiana

Indiana has conceded that it must produce documents on behalf of all State Agencies except the Indiana Department of Insurance ("IDOI"), for whom "the State of Indiana will not be providing information … without need of a subpoena." Ex. 14, Ind. Suppl. DAO at 2. This is despite acknowledging that the IDOI, as the entity responsible for PBM "regulatory insurance

---

[13] *See* https://www.texasattorneygeneral.gov/about-office/duties-responsibilities-office-attorney-general.

matters" under Indiana law, is likely to have information responsive to the PFS. *Id.* The Court should order Indiana to produce responsive documents on behalf of IDOI.

***First***, the Indiana Attorney General serves as "the State's law firm" and "represents the State and its agencies, officials and employees in state and federal courts in complex and significant interest cases in almost every substantive area of the law."[14] The Indiana Attorney General has exclusive authority to determine whether it will represent a state agency, including the IDOI: "The attorney general shall have charge of and direct the prosecution of all civil actions that are brought in the name of the state of Indiana or any state agency," Ind. Code Ann. § 4-6-3-2(a), and "the ***sole*** right and power" to assign any deputy "to any agency," and "such deputy shall be under the direction and control of the attorney-general." *Id.* §§ 4-6-5-1 to -2 (emphasis added); *see also State Highway Comm'n v. Morris*, 528 N.E.2d 468, 474 (Ind. 1988) ("The Attorney General's authority to represent the State, its agencies and officers is nearly exclusive, and agencies may not employ any attorney without the written consent of the Attorney General."). Unsurprisingly, the State of Indiana concedes that the Attorney General "would likely represent the [IDOI] if it were served with a Rule 45 subpoena," Ex. 14, Ind. Suppl. DAO at 2, as it has in other cases. *See, e.g., The Bail Project v. Comm'n, Indiana Dept. of Ins.*, 1:22-cv-862, ECF No. 9 (S.D. Ind. May 11, 2022) (notice of appearance for Indiana Assistant Attorney General). It would be "wasteful" to require Defendants to serve a subpoena on IDOI. *Social Media*, 2024 WL 4125618, at *23.

***Second***, court rulings that the Indiana Attorney General has control over documents at Indiana agencies apply equally to documents at the Department of Insurance. 2024 WL 4125618, at *25–28, 53–65, 79–82; *see also In re Social Media II*, 2025 WL 1179370, at *17–18 (same). "The Indiana Attorney General's role as counsel for the agencies at issue inherently involves obtaining necessary documents for effective representation in litigation." *Social Media*, 2024 WL 4125618, at *57. "[A]s counsel, the Indiana Attorney General would necessarily have access to and thus control over the relevant documents needed to respond to discovery requests." *Id.* Moreover, the fact that Indiana brings *parens patriae* claims against Defendants is sufficient to establish that the "Attorney General has legal control over agency documents." *Id.* at *12; *State of Indiana v. Sanofi-Aventis U.S. LLC, et al.*, No. 2:24-cv-06068, ECF No. 3 at ¶ 10 (D.N.J. Mar. 19, 2024).

Given its statutory mandate to represent its agencies and clear precedent requiring production of agency documents, Indiana should be required to produce responsive documents and information from the IDOI.

### III. STATE MEDICAID AGENCIES' DOCUMENTS ARE UNDER THE STATES' CONTROL.

Multiple questions in the PFS call for production of Medicaid-related information, regardless of whether a State is pursuing direct claims on behalf of its Medicaid plan. *See, e.g.*, PFS Questions 29 (requesting identification of "State Medicaid plan or program[s]" for plaintiffs that are "asserting claims or seeking recoveries relating in any way to Medicaid benefits … [by]

---

[14] https://www.in.gov/attorneygeneral/about-the-office/.

your State"); and 31 ("Have you adopted … Medicaid expansion?"). Nevertheless, Arizona, Arkansas, Kentucky, Montana, Oklahoma, Texas, and Utah, some of which were discussed previously for failing to produce other State Agency documents, all refuse to produce documents on behalf of their respective Medicaid Agencies, denying that they have control over these documents.[15]

The States at issue all have control over documents from their Medicaid Agencies under Rule 34. In the past, the States have produced documents on behalf of these agencies *without* requiring a subpoena. *See, e.g*, *Generic Pharms. II*, 699 F. Supp. 3d at 356 & n.5. Indeed, *Social Media* and other decisions compel States to produce documents from State Medicaid agencies under analogous circumstances. *See, e.g.*, *Social Media*, 2024 WL 4125618, at *57–58, 60–61, 79 (finding, for example, the Kentucky Attorney General had legal control over discovery from Kentucky's Medicaid Agency, the Cabinet for Health and Family Services; and that the Montana Attorney General has control over documents from Montana's Department of Public Health and Human Services, which administers Montana's Medicaid program); *see also Generic Pharms. I*, 571 F. Supp. 3d at 410–11. As with other agencies, the States' Attorneys General represent these Medicaid agencies in litigation.[16] Indeed, Utah concedes that a division of the Utah Attorney General's Office represents its Medicaid department. Ex. 9, Utah Suppl. DAO at 2-4. Other States claim their Attorneys General will "will cooperate and work collaboratively with counsel for Medicaid to facilitate responses" to Defendants' subpoenas. Ex. 15, Ky. Suppl. DAO at 4; *see* Ex. 10, Mont. Suppl. DAO at 3 (same); *see also* Ex. 16, Okla. Suppl. DAO at 4.

The States each exercise control over their state Medicaid programs, and therefore, must produce their state Medicaid agencies' documents.

## IV.    CONCLUSION

This Court should not permit the States to shirk their responsibility to produce documents and information responsive to the PFS. For multiple reasons, these State Attorneys General have control of their agencies' documents, and that "control" is dispositive under both the Federal Rules and this Court's Orders. Defendants respectfully request that the Court order each State at issue—specifically, Arizona, Arkansas, Indiana, Kentucky, Montana, Oklahoma, Texas, and Utah—to collect documents and information from the relevant State Agencies.

---

[15] Illinois, Indiana, Louisiana, Massachusetts, and Mississippi agreed to produce documents on behalf of state Medicaid agencies.

[16] *See, e.g.*, Montana Department of Public Health and Human Services ("MDPHHS")—Answer, ECF No. 10, *O'Neil v. State Bar of Montana, et al*, No. 9:08-cv-00091 (D. Mont. Aug. 13, 2008) (Montana AG representing another office of MDPHHS); Answer, ECF No. 6, *Brown v. State of Montana, et al*, No. 4:05-cv-00073 (D. Mont. Oct. 31, 2005) (Montana AG representing MDPHHS); Oklahoma Health Care Authority ("OHCA") Response, ECF No. 22, *Oklahoma Chapter of The Am. Acad. of Pediatrics v. Fogarty*, No. 4:01-cv-00187 (N.D. Okla. May 30, 2001) (Oklahoma Attorney General representing Executive Director and Board of OHCA in their official capacity); Utah Department of Health and Human Services (overseeing Medicaid), *Disability L. Ctr. v. Utah*, 180 F. Supp. 3d 998 (D. Utah 2016) (Utah AG representing UDHHS).

Dated: July 16, 2025

Respectfully submitted,

| | |
|---|---|
| */s/ Brian W. Carroll* | */s/ Liza M. Walsh* |

**McCARTER & ENGLISH, LLP**
Brian W. Carroll
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
(973) 639-2020

**DAVIS POLK & WARDWELL LLP**
James P. Rouhandeh (*pro hac vice*)
David B. Toscano (*pro hac vice*)
450 Lexington Ave.
New York, NY 10017
(212) 450-4000

**DAVIS POLK & WARDWELL LLP**
Neal A. Potischman (*pro hac vice*)
Andrew Yaphe (*pro hac vice*)
900 Middlefield Road
Redwood, CA 94063
(650) 752-2000

*Attorneys for Defendant Novo Nordisk Inc.*

**WALSH PIZZI O'REILLY FALANGA LLP**
Liza M. Walsh
Katelyn O'Reilly
Selina M. Ellis
Lauren R. Malakoff
Three Gateway Center
100 Mulberry St., 15th floor
Newark, NJ 07102
(973) 757-1100

**JONES DAY**
Michael R. Shumaker (*pro hac vice*)
Julie E. McEvoy (*pro hac vice*)
William D. Coglianese (*pro hac vice*)
Melissa Lim Patterson (*pro hac vice*)
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3939

*Attorneys for Defendant Sanofi-Aventis U.S. LLC*

*/s/ Jason R. Scherr*

**MORGAN, LEWIS & BOCKIUS LLP**
Jason R. Scherr
Elise M. Attridge
Lindsey T. Levy
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000

*Attorneys for Defendants Express Scripts, Inc.; Express Scripts Administrators, LLC; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; and Medco Health Solutions, Inc.*

*/s/ Melissa A. Geist*

**REED SMITH LLP**
Melissa A. Geist
Julia A. López
506 Carnegie Center, Suite 300
Princeton, NJ 08540
(609) 514-5978

**KIRKLAND & ELLIS LLP**
Diana M. Watral (*pro hac vice*)
Ryan Moorman (*pro hac vice*)
Jason A. Feld (*pro hac vice*)
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000

*Attorneys for Defendant Eli Lilly and Company*

| | |
|---|---|
| */s/ Brian Boone* | */s/ Benjamin Hazelwood* |
| **O'TOOLE SCRIVO, LLC** | **MARINO, TORTORELLA & BOYLE, P.C.** |
| Thomas P. Scrivo | Kevin H. Marino |
| Young Yu | John D. Tortorella |
| 14 Village Park Road | 437 Southern Boulevard |
| Cedar Grove, NJ 07009 | Chatham, New Jersey 07928 |
| (973) 239-5700 | T: (973) 824-9300 |
| | F: (973) 824-8425 |
| **ALSTON & BIRD LLP** | |
| Brian D. Boone | **WILLIAMS & CONNOLLY LLP** |
| 1120 S. Tyron St., Ste. 300 | Enu Mainigi |
| Charlotte, NC 28203 | Craig Singer |
| (704) 444-1000 | R. Kennon Poteat III |
| | A. Joshua Podoll |
| **ALSTON & BIRD LLP** | Benjamin Hazelwood |
| Elizabeth Broadway Brown | Daniel Dockery |
| 1201 W. Peachtree St. NW, Ste. 4900 | 680 Maine Avenue, S.W. |
| Atlanta, GA 30309 | Washington, D.C. 20024 |
| (404) 881-7000 | T: (202) 434-5000 |
| | F: (202) 434-5029 |
| **ALSTON & BIRD LLP** | |
| Kelley Connolly Barnaby | *Attorneys for Defendants CVS Pharmacy, Inc.;* |
| 950 F. Street, NW | *Caremark Rx, LLC; Caremark LLC;* |
| Washington, D.C. 20004 | *CaremarkPCS Health, LLC; and Caremark,* |
| (202) 239-3300 | *LLC* |
| | |
| *Attorneys for Defendant OptumRx, Inc.* | |