# Exhibit 1



DALLAS | BATON ROUGE | NEW ORLEANS | LOS ANGELES
SAN DIEGO | WASHINGTON, D.C.

800.887.6989
direct 818.839.2325
fax 818.986.9698
email mpifko@baronbudd.com

Encino Plaza
15910 Ventura Blvd.
Suite 1600
Encino, CA 91436

April 15, 2025

**VIA E-MAIL**

Jason Adam Feld
Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Jason.feld@kirkland.com

  RE: **The Arizona Attorney General Plaintiff Fact Sheet and Document Production**

Counsel:

I write in response to your March 28, 2025 letter regarding the Arizona Attorney General's Plaintiff Fact Sheet. At the outset, I must correct a foundational misapprehension on the Defendants' part. Your letter states that "Arizona is suing on behalf of the entire state." This is not correct. The Arizona Attorney General brings its sole claim in its *parens patriae* capacity to seek relief for the citizens of Arizona under Arizona's Consumer Fraud Act, AZ Stat. §§ 44-1521–1534. The Act authorizes the Arizona Attorney General—not the State of Arizona in a unitary form—to bring enforcement litigation "when it appears to the attorney general that a person has engaged in or is engaging in" any practice barred by the Act. Accordingly, as you recognize, Arizona "frames its [PFS] answers solely in terms of whether the *Arizona Attorney General's Office* has responsive information." This is proper.

"You," "Your," and "State" are defined, in the PFS, to mean "the Plaintiff named in this Action and any other State employees or entities on whose behalf the Plaintiff brings this action." *See* PFS Definition No. 11. The latter half of the definition has no import, because the Arizona AGO does not bring its action on behalf of "any other State employees or entities," as evident in the Complaint and confirmed in the responses to PFS Ques. 5–8. As for the former half—"the Plaintiff named in this Action"—the Plaintiff is properly identified as the Arizona Attorney General.

Nevertheless, the Defendants erroneously insist that Arizona has an obligation to collect responsive information from other state agencies. This is wrong, for two reasons. First, because the Plaintiff is properly identified as the Arizona Attorney General, the information you seek is not responsive under the PFS's definitions of "You," "Your," and "State." Information held by agencies outside of the AGO is beyond the scope of the PFS, by its own terms. Second, even if responsive information were held by other agencies, the Arizona AGO is not authorized or empowered to command its collection. The Arizona Attorney General's powers are defined and



Jason Adam Feld
April 15, 2025
Page 2

limited by statute and do not derive from the type of unitary executive theory that the Defendants appear to contemplate.  *See* AZ Const. Art. 5 § 1 (establishing the "executive department" as comprising each "the governor, lieutenant governor, secretary of state, attorney general, state treasurer and superintendent of public instruction"); *id.* at Art. 5 § 9 ("The powers and duties of lieutenant governor, secretary of state, attorney general, state treasurer and superintendent of public instruction shall be as prescribed by law."); AZ Stat. § 41-192 (defining the powers and duties of the Attorney General).  For example, while the Attorney General serves as "the legal advisor of the departments of [Arizona] and [shall] render *such legal services as the departments require*," nothing in the statute authorizes the Attorney General to compel document collection or production from agencies who have not required its services.  AZ Stat. § 41-192(A)(1).  Further, to the extent that Section 41-192(A)(1) establishes the Attorney General's role as legal advisor, certain agencies and departments are statutorily exempt from mandatory representation by the Attorney General's Office.  *See* § 41-192(D).  The Attorney General, in sum, lacks the authority to compel collection of any information from other departments or agencies, even if—a premise we reject—those departments or agencies held responsive information.

With the above in mind, we address your specific concerns in turn.

**Document Production**.  The Arizona Attorney General is not in possession, custody, or control of any responsive documents.

**PFS Questions**.  The Defendants contend that the Arizona Attorney General left "unanswered questions" on the PFS.  That is inaccurate.  The Attorney General responded to PFS Questions 41, 42, and 53, which ask, respectively, the earliest date upon which any employee in the Office became aware of the existence of patient assistance programs offered by the manufacturer Defendants; the earliest date on which any employee in the Office because aware of any OOP cap programs offered by any PBM for the at-issue drugs; and the OOP costs paid by all Arizona citizens.  As to all three questions, as stated on the PFS, the Attorney General does not know the answer; continues to investigate; and reserves the right to supplement its answers.  The Defendants' apparent dissatisfaction with those responses does not render the PFS questions "unanswered."

**Rebates**.  Likewise, for PFS Questions 15, 23, 24, the Attorney General has provided accurate responses.  Question 15 seeks information regarding "the total amount of money that You spent on the At-Issue Product for members enrolled in Your Health Plan for each year during the Time Period, the total Rebates received by You, and the total amount of Your members' out-of-pocket responsibility."  The Arizona AGO has no health plans and thus did not spend money on the at-issue products or receive rebates for those products.  So too for Question 23, which seeks information regarding "Rebates received or Administrative Fees from a PBM or other contracting entity [having been passed] through to Your Health Plan members at the point of sale for any of the At-Issue Products."  The Arizona AGO has no health plans and therefore no "Health Plan members," and it has no contracts with PBMs or similar entities.  And again, as to Question 24, there are no "other" ways for the Arizona Attorney General to have used "Rebates



Jason Adam Feld
April 15, 2025
Page 3

and Administrative Fees received from PMBs or other contracting entities for At-Issue Products" because the premise of the question does not apply to the Attorney General. Whether you characterize the Arizona Attorney General's responses as "not applicable," or "none exist," or "The Arizona Attorney General does not have Health Plans or PBM contracts and therefore does not receive Rebates," the sum and substance is the same: there is no more responsive information than that which was already provided.

***Health Plan Information, PBM Contracts and Services, Third-Party Advisors, and Audits.*** The Arizona Attorney General does not offer any Health Plans, spend any money on At-Issue products, or contract with PBMs, insurers, or third-party administrators, consultants, or advisors, nor does it have any Health Plan expenditures that could be subject to audit. It has, therefore, responded completely and accurately to PFS Questions 9–10, 15–18, 20, 25–26, 43–46, and 49.

***Out-of-Pocket Expenses.*** The Defendants mischaracterize the PFS response. The Arizona Attorney General stated, in response to PFS Question 53, that it "is continuing its investigation and reserves the right to supplement" with as-yet-unknown information. It is not, as the Defendants contend, "the State's position that it did not have to provide this information."

***Persons or Entities with Relevant Knowledge.*** As we have discussed in our DAO meet-and-confer correspondence, the Arizona Attorney General has identified the proper departments, agencies, and entities with knowledge or responsibility over functions related to the allegations.

***Notice.*** The Arizona Attorney General has provided the most complete information possible while properly protecting its privileged communications. The PFS correctly recounts that the Arizona Attorney General's Office first learned of the Defendants' fraudulent scheme in approximately April 2022 and began its formal investigation into that fraudulent scheme in September 2023. *How* the Attorney General came to learn of the Defendants' fraud is privileged.

***Membership in Other Entities.*** Question 50 asks the Attorney General to identify entities with which it shared communications on a specific topic. This information is protected by the attorney client privilege, work product doctrine, and common interest privilege, because identifying any such entities would, by the nature of the question, reveal the substance of privileged communications.

***Alleged Misrepresentations and Omissions.*** The Arizona Attorney General provided the bases for its beliefs that the Defendants' misrepresentations are false. The identified sources, and the specific citations to portions of those sources, *are* bases for the Plaintiff's belief that the Defendants' statements are false. The Defendants contend that "Arizona's reference to documents is impermissible," but this position is based on a misunderstanding of Federal Rule of Civil Rule 33(d). Rule 33(d) applies specifically—and *only*—to the responding party's own "business records," *i.e.*, "report[s], memorand[a], or other record[s] made in the ordinary course of business." *Sohmer v. UnitedHealth Grp., Inc.*, 2020 WL 6375880, at *4 (D. Minn. Oct. 30, 2020) (quoting Black's Law Dictionary (11th ed. 2019)). The law is clear that "business



Jason Adam Feld
April 15, 2025
Page 4

records" do *not* include transcripts of testimony prepared for court or other official proceedings; pleadings; third-party expert reports; documents prepared for litigation; documents produced by the requesting party in discovery; media reports, or any other third-party source—that is, Rule 33(d) does not speak to the types of sources on which the Arizona Attorney General relies. *See, e.g.*, *Parks, LLC v. Tyson Foods, Inc.*, 2015 WL 9316060, at *13 n.48 (E.D. Pa. Dec. 23, 2015) ("business records" under Rule 33(d) "must be the party's own records, not the records of someone else"); *XChange Telecom Corp. v. Sprint Spectrum L.P.*, 2015 WL 773752, at *5 (N.D.N.Y. Feb. 24, 2015) ("Rule 33 requires reference to business records only, for which third party records do not apply."); *Campbell v. Washington*, 2009 WL 10676376, at *2 (W.D. Wash. May 5, 2009) ("[F]ederal courts have narrowly interpreted the business records option and, in circumstances that do not strictly involve the responding party's 'business records,' have generally refused to allow parties to answer interrogatories by referring to outside material."). The Arizona Attorney General has not cited any "business records" in lieu of a substantive response to the Defendants' inquiries and thus has complied with both the Rule and Case Management Order 15.

To the extent that Defendants object to the Attorney General's purportedly "vague" references to false list prices, "patients/consumers," "the public," and "state and commercial health plan clients"; or specific speakers, dates, or sources of some of the cited misrepresentations, the Arizona Attorney General has provided the best responses available to it at this stage of litigation—*i.e.* as discovery commences. Similarly, the Attorney General's occasional references to multiple Defendants as the source of certain misrepresentations indicate that, at this stage, the Attorney General contends that each member of the designated group of Defendants published or voiced the misrepresentation in question.

The Defendants' objections to the Arizona Attorney General's identified omissions are similarly misplaced. First, the Defendants object that citations to "[a]ll other statements identified in this Plaintiff Fact Sheet," "contracts between the PBM Defendants and health plans in Plaintiff's State," "misleading reports of rebates 'received' by the PBM Defendants made to the Plaintiff's state employee health plan and/or commercial health plans within Plaintiff's state," and "contractual agreements between the Manufacturer Defendants and PBM Defendants" are vague and insufficient. But the Defendants have selectively cherry-picked isolated portions of the Attorney General's responses. In fact, the Attorney General refers the Defendants generally to "various representations" in the documents named, and then identifies the specific categories of misrepresentations to which it refers.

Finally, the Defendants misrepresent the Arizona Attorney General's "Basis for Disclosure" for each omission. The Attorney General has not offered "boilerplate language pasted across all alleged omissions." Throughout its table of omissions, the Attorney General identifies specific reasons for the Defendants' obligation to disclose the truth, including, as just three examples, "Plaintiff's Consumer Protection Act and interpreting state law. The Manufacturers' disclosure of an artificially-inflated list price was a half-truth, giving rise to duty to disclose full truth. *See also* 42 U.S.C. 1395w-3a(c)(3) & (f)(D) (Average Sale Price - a 'net' price - which the Manufacturer Defendants report to Medicare but choose not to publicly disclose)."; "Plaintiff's Consumer



Jason Adam Feld<br>
April 15, 2025<br>
Page 5

Protection Act and interpreting state law. Duty to disclose the truth in light of (1) the Manufacturer Defendants' and the PBM Defendants' public scapegoating of the other in attempt to mislead the public about where to lay the blame for artificially inflated and false list prices, and (2) the Manufacturer Defendants' false statements of reasons (innovation, R&D, value to the health care system as a whole) for at issue price increases."; and "Plaintiff's Consumer Protection Act and interpreting state law. Duty to disclose the truth in light of representations by the PBM Defendants that their interests are aligned with diabetics and that they (the PBMs) exist to lower the prices of the At- Issue Drugs."

*     *     *

The Arizona Attorney General's Office stands on its responses, which are proper, accurate, complete, and compliant with the Federal Rules of Civil Procedure and the applicable Case Management Orders.  We stand ready to meet and confer on any further issues.

Best regards,

/s/ Mark Pifko

Mark Pifko

cc:	Defendants' Counsel
	Plaintiffs' Counsel