# Exhibit 3

1

1    **UNITED STATES DISTRICT COURT**
     **FOR THE DISTRICT OF NEW JERSEY**
2    ————————————————————————

3    IN RE: INSULIN PRICING            **CIVIL ACTION NUMBER:**

4    LITIGATION                        **2:23-md-03080-BRM-RLS**

5

6                                      **CASE MANAGEMENT CONFERENCE**

7    ————————————————————————

     Clarkson S. Fisher Building & U.S. Courthouse
8    402 E. State Street
     Trenton, New Jersey 08608
9    Monday, May 13, 2024
     Commencing at 2:36 p.m.
10

11   **B E F O R E:**              **THE HONORABLE RUKHSANAH L. SINGH,**
                                   **UNITED STATES MAGISTRATE JUDGE**
12

13   **A P P E A R A N C E S:**

14   SEEGER WEISS, LLP
     BY: DAVID R. BUCHANAN, ESQUIRE
15       STEVEN J. DAROCI, ESQUIRE
     55 Challenger Road
16   Ridgefield Park, New Jersey 07660
     Liaison Counsel for Plaintiffs in the Self-Funded Payer Track
17

18   THE CICALA LAW FIRM, PLLC
     BY: JOANNE M. CICALA, ESQUIRE
19   101 College Street
     Dripping Springs, Texas 78620
20   Liaison Counsel for Plaintiffs in the State Attorney General
     Track
21

22        John J. Kurz, Federal Official Court Reporter
                John_Kurz@njd.uscourts.gov
23                   (856)576-7094

24   Proceedings recorded by mechanical stenography; transcript
              produced by computer-aided transcription.
25

6

1          (PROCEEDINGS held in open court before The Honorable

2     Rukhsanah L. Singh, United States Magistrate Judge, at

3     2:36 p.m. as follows:)

4          THE COURTROOM DEPUTY:  All rise.

5          THE COURT:  Good afternoon.  You may be seated.

6          All right.  So is it Monday, or is it Monday?  My

7     goodness.  Whoever was on the train, that sounds like a fun

8     ride.

9          (Laughter.)

10         THE COURT:  All right.  We are on the record in the

11    matter of In Re Insulin Pricing Litigation, bearing Docket

12    No. 23-3080.  May I have appearances of counsel, please,

13    starting with the plaintiffs.

14         MR. BUCHANAN:  Good morning -- good afternoon, Your

15    Honor.  Dave Buchanan, Seeger Weiss, for the Self-Funded Payer

16    Track.

17         MS. CICALA:  Good afternoon, Your Honor.  Joanne

18    Cicala from the Cicala Law Firm for the State Attorney General

19    Track.

20         MS. ELLIS:  Good morning, Your Honor.  Tanya Ellis,

21    here on behalf of the State Attorney General Track.

22         THE COURT:  Thank you.

23         MR. SCHORK:  Good afternoon, Your Honor.  Erich

24    Schork on behalf of the Direct Purchaser Class Track.

25         THE COURT:  Okay.

1    in a number of cases by that point in time which will narrow

2    discovery in later cases on both sides, probably.  We'll have a

3    greater understanding of what's in play and what's out of play

4    as dispositive motions are ruled on, as *Daubert* motions are

5    ruled on.  And that is very efficient.  And I think that's why

6    it's done that way.

7            And, frankly, this Court has an amazing track record

8    of generating successful results with that type of framework.

9    And we submit that's the appropriate framework for this case.

10           THE COURT:  Okay.  You're getting a note.

11           MS. PATTERSON:  Respectfully, Your Honor, again, this

12   is not a products liability MDL.  If 18 months from now we have

13   one ruling or one trial on Albany County, for example, that

14   has -- at this point we don't know what sort of bearing it

15   might have on Lake County or Illinois or any of the other

16   cases.  We need discovery to figure that out.

17           And to be clear, the defendants' proposal is not

18   everything all at once.  It's, let's start -- let's start

19   small.  Let's start with the written and document discovery for

20   the cases so we can figure out, okay, what do we have before

21   us, whether we do that via a plaintiff fact sheet or master

22   discovery, as we discussed, you know, it may just be a label.

23           But what we want is for it to be meaningful so that

24   we can move on to that next stage.  Even within our proposal

25   itself, we propose that before we move to depositions, we think

1    about, okay, now that we have document discovery, can we figure

2    out, if appropriate, whether we should stage some of that

3    deposition discovery.

4           This approach is, we would say, most efficient

5    because it allows us to take it step by step and to look at the

6    cases on a meaningful -- in a meaningful way and determine

7    which of these cases should move forward during this one phase.

8           Because as Mr. Buchanan stated, as Your Honor makes

9    decisions and as Judge Martinotti makes decisions, some of the

10   cases may fall away.  But if we only select ten discovery

11   bellwether cases, if Judge Martinotti makes a decision, say, on

12   statute of limitations on the motions to dismiss and half of

13   those cases are impacted by that statute of limitations case,

14   then we only have five cases left in that discovery bellwether

15   pool for us to move forward then ostensibly to trial.

16          Whereas in our approach, we are able to develop the

17   facts and move that part forward in the phase, and then once we

18   get to that stage, we can look and see what do we have left?

19   Do we have any rulings from Judge Martinotti?  Do we have

20   rulings from you?  Do we have --

21          THE COURT:  Let's hope not.

22          (Laughter.)

23          MS. PATTERSON:  -- meaningful factual development

24   that allows us to figure out, okay, so what should we do next,

25   right?  And so that's why defendants proposed it in this way.

```
 1    It allows us to not set anything in stone right now as to what
 2    the deadlines are for kind of the subsequent cases, for the
 3    class cases versus the non-class cases, for this track or that
 4    track.  It allows us to take the step right in front of us,
 5    develop the discovery on the written record, on document
 6    discovery so that we can figure out what the next appropriate
 7    step should be.
 8                THE COURT:  Okay.  Yeah.  Sure.
 9                MS. CICALA:  Your Honor, respectfully, that is
10    everything all at once for one year at defendants' pace.  It's
11    just pure written discovery.  It's not meaningful progress,
12    whereas what we're proposing -- and I don't want to start
13    rehearsing what we've said already to the Court and what's in
14    our papers -- is a more efficient way to get the defendants if
15    not 100 percent of the information they may ultimately want in
16    the case, a substantial amount that allows the parties to take
17    the next step and addresses Judge Martinotti's objectives of
18    moving the case forward at a reasonable clip, which is what
19    everybody, I believe, is seeking to do here on the plaintiffs'
20    side at least.
21                THE COURT:  Okay.  Not Amtrak.  I couldn't help
22    myself.
23                Okay.  So this is what we're going to do.
24                I am -- you're going to love this -- directing you to
25    meet and confer as to what a plaintiff fact sheet and
```

1    stipulated document request to go out to each individual

2    plaintiff will look like.  Report back to me in two weeks as to

3    the results of that meet-and-confer.

4            MR. BUCHANAN:  Thank you, Your Honor.

5            THE COURT:  Okay.

6            MS. CICALA:  Your Honor, if I may.  May we have a

7    greenlight to proceed with third-party discovery in the

8    interim?

9            THE COURT:  So, good question on that.

10           I did see the defendants have opposed or are

11   requesting a pause on nonparty discovery.  What was the reason

12   for that?

13           MS. PATTERSON:  Yes, Your Honor.  So during our last

14   meet-and-confer, we asked the plaintiffs what was the

15   difference between case-specific discovery versus common

16   discovery such that we could do, you know, we can actually ask

17   third parties for, for that discovery.

18           THE COURT:  Uh-huh.

19           MS. PATTERSON:  And plaintiffs weren't able to give

20   us a real understanding.  For example, if we asked a

21   third-party consultant, you know, what contracts or agreements

22   did you have with X county, whether that is case specific or

23   whether that's common discovery.  Under what we understood

24   plaintiffs to be saying, that's case-specific discovery, which

25   seemed a little bit, you know, again, this gets into the issue,

1    you know, are we arguing about what is case specific versus

2    common discovery.

3            THE COURT:  Uh-huh.

4            MS. PATTERSON:  And so we wanted time to be able to

5    resolve with the plaintiffs, you know, what is permissible in

6    third-party discovery.

7            THE COURT:  Okay.

8            MS. CICALA:  At the risk of getting too far into the

9    weeds on this, Your Honor, plaintiffs are agnostic as to

10   whether it's case specific or common from the defendant in

11   terms of the discovery -- the third-party discovery the

12   defendants may want to serve.

13           The states know what third-party discovery they would

14   like to serve and would like to get going on that while the

15   parties are engaging in the discussions with regard to the

16   plaintiff fact sheets.

17           THE COURT:  Uh-huh.

18           MS. CICALA:  So a greenlight as to that would be

19   helpful to the states.  It would allow us to make progress on

20   that point.  If the defendants aren't ready with their

21   greenlight, then perhaps that could be staggered.  We're not

22   looking for more time for plaintiffs on third-party discovery.

23   We're just trying to get going, you know.

24           THE COURT:  Uh-huh.  Okay.

25           MS. CICALA:  The defendants' greenlight could start

1    later.  It could run for the same amount of time when they're

2    ready to commence.  But the states are ready to commence

3    third-party discovery now.  That would be very helpful in the

4    discrete area that could move things forward while we negotiate

5    these other points.

6              THE COURT:  Okay.  Anything else?

7              MS. PATTERSON:  Your Honor, we can move third-party

8    discovery forward on all cases regardless of whether it's

9    discovery bellwether or not or common versus specific.  I think

10   that is fine for us, although I don't want to speak for anybody

11   else.

12             MR. SCHERR:  Well, Your Honor, if I may, J.R. Scherr

13   for Express Scripts.

14             Ms. Cicala actually points out a fair point, and it

15   harks to a point that Ms. Barnaby made about mutuality.  We're

16   dealing with a grouping of -- let's just take the what's called

17   the Self-funded Payer Class, the counties and the cities.

18   These are municipalities that have contracted with pharmacy

19   benefit managers for pharmacy benefits.  They've done it

20   typically, if not entirely, through an RFP process where

21   they've put out a request, they got solicitations, they worked

22   with their third-party consultants to evaluate what was

23   submitted and then make a decision about whom to hire.

24             As defendants, if we're going to serve requests on

25   those third-party consultants to determine what they said, what

1    your expectations of what it would look like and plaintiffs'

2    expectations of what it would look like and what additional

3    information you might need.  So you don't necessarily have to

4    submit a proposed form in 15 days, but have this conversation

5    and report back on where you are.

6              MR. MOORMAN:  That's exactly what we envisioned.

7    Thank you, Your Honor.

8              THE COURT:  Yeah.  Okay.  Does that help?

9              MS. CICALA:  Yes.  Thank you, Your Honor.

10             THE COURT:  All right.  Wonderful.  Then we are

11   adjourned.  And I thank you for your time and your appearance

12   here today.

13             Thank you, Mr. Kurz.

14             THE COURTROOM DEPUTY:  All rise.

15             THE COURT REPORTER:  My pleasure, Your Honor.

16             (Proceedings concluded at 4:25 p.m.)

17             - - - - - - - - - - - - - - - - - - - - - -
       **FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE**

18             - - - - - - - - - - - - - - - - - - - - - -

19         I certify that the foregoing is a correct transcript

20   from the record of proceedings in the above-entitled matter.

21

22

23   /S/John J. Kurz, RDR-RMR-CRR-CRC              May 14, 2024

24   Court Reporter/Transcriber

25