# Exhibit 6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** <br><br> *State of Arizona, Ex Rel. Kris Mayes, Attorney General v. Optum Incorporated et al.*, Case No. 2:24-cv-260 (D.N.J.) <br> ──────────────────────────── <br> This document relates to: <br><br> State Attorney General Track | **Case No. 2:23-md-03080 (BRM)(RLS)** <br> **MDL No. 3080** <br><br> **JUDGE BRIAN R. MARTINOTTI** <br> **JUDGE RUKHSANAH L. SINGH** |

**STATE ATTORNEY GENERAL PLAINTIFF FACT SHEET**

Please provide the following information for each State Attorney General Track complaint in *In Re: Insulin Pricing Litigation*, MDL No. 3080.  In completing this Plaintiff Fact Sheet ("PFS"), You are under oath and must provide information that is true and correct to the best of Your knowledge, information, and belief. The scope of the questions herein and responses thereto will be limited to information and/or documents within each plaintiff's possession, custody, or control. To the extent a plaintiff lacks information or documents in its possession, custody, or control in response to the questions or documents requests below, it shall expressly state it lacks such information in its response.

Do not leave any questions applicable to You unanswered or blank.  If You are filling out this PFS in hard copy, use additional sheets as needed to fully respond.

This PFS constitutes discovery responses subject to the Federal Rules of Civil Procedure. You must diligently investigate whether You have within Your possession, custody, or control information or documents responsive to the questions and requests, inclusive of custodial sources. (ECF No. 291 at 2.) To the extent You assert an undue burden in connection with a particular request in this PFS as to custodial files, You must meet and confer with Defendants and, if unresolved, present the issue to the Court for resolution. You may not rely on Rule 33(d) in responding to the PFS questions unless the question specifically allows production of documents in lieu of a response. You must promptly supplement Your responses if You learn that they are incomplete or inaccurate in any respect.  Each question in this PFS is continuing in nature and requires supplemental answers as You obtain further information between completing this PFS and trial.  Information provided will only be used for purposes related to this litigation and may be disclosed only as permitted by the Stipulated Confidentiality Order entered in this MDL proceeding.  (*See* Dkt. 117.)

## INSTRUCTIONS

1. None of the questions in this PFS seek privileged information.  To the extent You believe that any form of privilege prevents You from fully answering a question, state Your basis for withholding an answer or part of an answer on the grounds of privilege and which privilege You believe applies.  If You assert that part of a question is objectionable or calls for privileged information, respond to the remaining parts of the question to which You do not object.

2. "And" and "or" mean "and/or" and should be construed conjunctively and disjunctively to require the broadest possible response. "Including" shall mean "including but not limited to."

3. All definitions provided herein are limited to the use of the terms in these Requests.

## DEFINITIONS

1. "Administrative Fees" means any fee paid by a manufacturer to a PBM in exchange for any administrative service the PBM performs.

2. "At-Issue Products" means the insulin products and any other pharmaceuticals that You identify in response to Question No. 14.

3. "Health Plan" means all health plans offered by, administered by, or sponsored by You (including plans offered, administered, or sponsored by any State agency, department, unit, or entity) during the Period that the Health Plan offered or included Prescription Drug Coverage.  "Health Plan" does not include Medicaid.

4. "Out-of-Pocket Maximum" means the maximum amount of allowable costs or expenses that a person with any form of health insurance, health coverage, prescription drug plan, or any other health plan that helps enrollees pay for prescribed pharmaceuticals can incur during a given year through their health insurance.

5. "PBM" means pharmacy benefit manager.

6. "Prescription Drug Coverage" means any form of health insurance, health coverage, prescription drug plan, or any other Health Plan that helps enrollees pay for prescribed pharmaceutical drugs.  "Prescription Drug Coverage" does not include Medicaid.

7. "Rebates" means any rebate, payment, discount, or other price concession made or paid by a manufacturer to a PBM.

8. "Third-Party Advisor" means any advisor, auditor, consultant, contractor, or other entity You or Your Health Plan(s) contracted with, retained, or used to provide consulting, research, analysis, audits, accounting, financial advice, or other advice concerning the subject matter of this litigation, including matters related to pharmaceutical spending, the At-Issue Products, and Prescription Drug Coverage.

9. "Time Period" means January 1, 2011 to January 1, 2023.

10. "WAC" means wholesale acquisition cost.

**11.** "You," "Your," and "State" mean the Plaintiff named in this Action and any other State employees or entities on whose behalf the Plaintiff brings this action.

## QUESTIONS

### I. CASE INFORMATION

1. Plaintiff: State of Arizona, *ex rel.* Kris Mayes, Attorney General

2. Case name and caption number: *State of Arizona, ex rel. Kris Mayes, Attorney General v. Optum Incorporated, et al.*, Case No. 24-cv-260 (D.N.J.)

3. Name, firm, and e-mail of principal attorney(s) representing You: *See* Exhibit A

*4.* Defendants: Optum, Inc.; OptumRX, Inc.; OptumInsight, Inc.; UnitedHealth Group, Inc.; CVS Health Corporation; CVS Pharmacy, Inc; Caremark RX, LLC; Caremark PCS Health, LLC; Caremark, LLC; Evernorth Health, Inc. (Formerly Express Scripts Holding Company); Express Scripts, Inc.; Express Scripts Administrators, LLC; Medco Health Solutions, Inc.; ESI Mail Pharmacy Services, Inc.; Express Scripts Pharmacy, Inc.; Eli Lilly And Company; Sanofi-Aventis U.S. LLC; Novo Nordisk Inc.

5. Are You bringing Your complaint on behalf of any State agency in its capacity as a health insurance payor? __ Yes _X_ No

   **If yes**, in the form of the table below, identify every State agency on whose behalf You bring this complaint and the Health Plan(s) offered by the State agency ("Your Health Plan(s)"):

| State Agency | Health Plan(s) Offered By Agency |
|---|---|
|  |  |
|  |  |

6. Are You bringing Your complaint to recover for purchases made for any State-run facility? __ Yes _X_ No

   **If yes**, in the form of the table below, identify every State-run facility for which You seek to recover:

| State Run Facility |
|---|
|  |
|  |

7.  Are You bringing Your complaint on behalf of citizens or residents of Your State (e.g., in a *parens patriae* capacity)?  _X_ Yes __ No

    **If yes,** please answer all questions in Section XII ("Parens Patriae Claims") below.

8.  Are You bringing Your complaint on behalf of any other person or entity not listed in Questions 5-7?  __ Yes _X_ No

    **If yes,** please describe the other persons or entities You bring Your complaint on behalf of:

    _____

## II.  BENEFICIARIES

9.  In the form of the table below, for each of Your Health Plan(s), provide the total number of individuals enrolled in Your Health Plan, including primary and dependent beneficiaries, for each year of the Time Period:

    This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona.  The Office of the Attorney General did not offer Health Plans to individuals during the Time Period.  Accordingly, the requested information is not applicable.

| Year | Health Plan Identifier | Number of Individuals |
|------|------------------------|-----------------------|
| 2011 | | |
| 2012 | | |
| 2013 | | |
| 2014 | | |
| 2015 | | |
| 2016 | | |
| 2017 | | |
| 2018 | | |
| 2019 | | |
| 2020 | | |
| 2021 | | |
| 2022 | | |

10. In the form of the table below, for each of Your Health Plan(s), provide the total number of individuals who used Your Health Plan to purchase or use At-Issue Products during each year of the Time Period.

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona. The Office of the Attorney General did not offer Health Plans to individuals during the Time Period. Accordingly, the requested information is not applicable.

| Year | Health Plan Identifier | Number of Individuals |
|------|------------------------|------------------------|
| 2011 | | |
| 2012 | | |
| 2013 | | |
| 2014 | | |
| 2015 | | |
| 2016 | | |
| 2017 | | |
| 2018 | | |
| 2019 | | |
| 2020 | | |
| 2021 | | |
| 2022 | | |

## III.  PERSONS OR ENTITIES WITH RELEVANT KNOWLEDGE

11.    In the form of the table below, identify the name, title and department, and dates of employment of Your current and former employees, representatives, or agents who had any responsibility over the design or administration of Prescription Drug Coverage for Your Health Plan(s) during the Time Period, including responsibility over the decision to enter into agreements governing Prescription Drug Coverage, Rebates, and formularies, and any individuals who interacted with PBMs or drug manufacturers.

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona. The Office of the Attorney General did not offer Health Plans; enter into agreements governing Prescription Drug Coverage, Rebates, and formularies; or interact with PBMs or drug manufacturers during the Time Period. Accordingly, the requested information is not applicable.

| Name | Title and Department | Dates of Employment or Contract | Area(s) of Responsibility (including Health Plan Identifier(s), if applicable) |
|------|----------------------|---------------------------------|-------------------------------------------------------------------------------|
| | | | |

12.    To the extent not included in response to Question No. 11 above, in the form of the table below, identify by name, title and department, and dates of employment Your current and former

employees or representatives with discoverable knowledge regarding the allegations in Your Complaint, including those individuals with relevant knowledge or responsibility over the State agencies and State-run facilities identified in response to Questions No. 5 and 6.

| Name | Title and Department | Dates of Employment or Contract | Area(s) of Knowledge or Responsibility |
|---|---|---|---|
| Daniel Rodriguez Guzman | Arizona State Diabetes Program Manager – Arizona Department of Health Services | February 2020–Present | Daniel Rodriguez-Guzman may have knowledge about the Arizona Diabetes Program, as well as data and reports related to Diabetes treatment, including, but not limited to, the number and percentage of Arizona citizens living with diabetes and treatment of Arizona citizens with Diabetes. |
| David Steuber | State Procurement Administrator – Ariona Department of Administration | January 2024–Present | David Steuber may have knowledge about procurement of medications to treat diabetes by state agencies and various health plans administered by the State. |
| Carmen Heredia | Cabinet Executive Officer; Director – Arizona Health Care Cost Containment System | January 2023–Present | Carmen Heredia may have knowledge about diabetes treatment and costs for Arizona Medicaid and Arizona Children's Health Insurance Program recipients. |
| Larry L. Gann Jr. | Assistant Director of the Healthcare Services Division – Arizona Department of Corrections, Rehabilitation, and Reentry | April 2020–Present | Larry L. Gann Jr. may have knowledge about diabetes treatment costs for inmates in state prison system. |

13. In the form of the table below, identify by name any department, agency, subdivision, investigative unit, entity, or other program with knowledge or responsibility over functions related to the allegations in Your Complaint, including but not limited to: entities that regulate or oversee any aspect of Prescription Drug Coverage offered under Your Health Plans; entities that have any role regarding consumer spending in connection with the At-Issue Drugs; entities that communicate or contract with PBMs, drug manufacturers, or any other entities that provide rebates or other price concessions related to purchasing pharmaceutical products; and entities responsible for procuring services or products from PBMs, drug manufacturers, group purchasing organizations, or any other entities that provide or negotiate rebates or other price concessions related to purchasing pharmaceutical products.   Summarize each of those entities' area of responsibility:

| Entity Name | Area of Knowledge or Responsibility (including Health Plan Identifier(s), if applicable) |
|---|---|
| Arizona Department of Administration | The Arizona Department of Administration may have knowledge regarding procurement of medications to treat diabetes by state agencies and various health plans administered by the State. |
| Arizona Health Care Cost Containment System | The Arizona Health Care Cost Containment system may have knowledge regarding diabetes treatment and costs for Arizona Medicaid and Arizona Children's Health Insurance Program recipients. |
| Arizona Department of Corrections, Rehabilitation, and Reentry | The Arizona Department of Corrections, Rehabilitation, and Reentry may have knowledge regarding diabetes treatment costs for inmates in state prison system as well as the percentage or inmates with diabetes and their treatment. |

## IV.  AT-ISSUE PRODUCTS

14. Identify every diabetes drug or other pharmaceutical that You allege is relevant to any claim for damages or other relief You seek in this case (the "At-Issue Products")[1]:

Humulin N, Humulin R, Humulin 70/30, Humalog, Humalog 75/25, Trulicity, Basaglar, Mounjaro, Novolin R, Novolin N, Novolin 70/30, Novolog, Novolog 70/30, Levemir, Tresiba, Victoza, Ozempic, Rybelsus, Xultophy, Insulin Degludec, Lantus, Toujeo, Apidra, Soliqua, Adlyxin

15. In the form of the table below or through the production of documents, for each At-Issue Product, provide the total amount of money that You spent on the At-Issue Product for members enrolled

---

[1]    In seeking this information, Defendants do not concede that any pharmaceuticals identified by You are relevant.

in Your Health Plan for each year during the Time Period, the total Rebates received by You, and the total amount of Your members' out-of-pocket responsibility.

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona.  The Office of the Attorney General did not offer Health Plans, spend money on the At-Issue Products, or receive Rebates on the At-Issue Products during the Time Period. Accordingly, the requested information is not applicable.

| At-Issue Product | Year | Total Number of Scripts | Total Spent by You | Total Rebates Received | Your Member's Out-of-Pocket Responsibility |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

## V.    YOUR STATE'S HEALTH PLANS

16.    In the form of the table below, for each Health Plan that You offered that included Prescription Drug Coverage during the Time Period, identify the plan identification number, name, or other plan identifier, program type, and the starting and ending dates for each plan year during the Time Period:

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona.  The Office of the Attorney General did not offer Health Plans during the Time Period. Accordingly, the requested information is not applicable.

| Health Plan Identifier | Program Type | Start Date | End Date |
|---|---|---|---|
|  |  |  |  |

17.    In the form of the table below, list all PBMs or other entities with whom You have contracted to administer Prescription Drug Coverage for every Health Plan identified in response to Question No. 16 and for each plan year during the Time Period:

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona.  The Office of the Attorney General did not contract with PBMs or other entities to administer

Prescription Drug Coverage for any Health Plans during the Time Period. Accordingly, the requested information is not applicable.

| Health Plan Identifier | Plan Year | PBM or Other Entity |
|---|---|---|
|  |  |  |

18.     Identify all insurers or third-party administrators with whom You have contracted relating to the Health Plans identified in response to Question No. 16:

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona. The Office of the Attorney General did not contract with insurers or third-party administrators for any Health Plans during the Time Period. Accordingly, the requested information is not applicable.

## VI.     REBATES AND FEES

19.     In the form of the table below, identify each contract You have or had with a PBM during the Time Period, including the identity of the PBM and/or other party with which You contracted, and the year. Include in Your answer any addendums or other agreements You entered pursuant to an existing master agreement. If a contract was entered into before the Time Period began but did not expire until after the Time Period began, identify that contract as well:

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona. The Office of the Attorney General did not contract with PBMs or any other party for any Health Plans during the Time Period. Accordingly, the requested information is not applicable.

| Contract | PBM Contracting Entity | Year(s) |
|---|---|---|
|  |  |  |

20.     Have You ever used preventative drug lists, critical drug affordability programs, or any other program to lower or cap the out-of-pocket costs of the At-Issue Products for Your members? _____ Yes __X__ No

**If yes**, in the form of the table below, identify each such Health Plan where You implemented such a program, the program, the year the program was implemented, and the applicable At-Issue Products:

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona. The Office of the Attorney General did not offer Health Plans, and therefore did not use preventative drug lists, critical drug affordability programs, or any other program to lower or cap the out-of-pocket costs of the At-Issue Products during the Time Period. Accordingly, the requested information is not applicable.

| Health Plan | Program | Year | At-Issue Product |
|---|---|---|---|
|  |  |  |  |

21.     If You implemented any program to lower or cap the out-of-pocket cost of the At-Issue Products, identify whether the program applies to the State's entire beneficiary population or only certain groups, and if only certain groups are covered please identify the groups that are covered.

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona. The Office of the Attorney General did not offer Health Plans, and therefore did not implement any program to lower or cap the out-of-pocket costs of the At-Issue Products during the Time Period. Accordingly, the requested information is not applicable.

22.     Have You implemented a State Pharmaceutical Assistance Program (SPAP) or State Discount Program (SDP)? __X__ Yes    ____ No

**If yes**, in the form of the table below, identify any SPAP or SDP, the year the program was implemented, the applicable At-Issue Products, the populations covered by the program, the total number of applicants, the number of denied applicants, and the number of individuals who used the program:

| SPAP/SDP | Year | At-Issue Products | Covered Population(s) | No. of Applicants | No. of Applicants Denied | No. of Users |
|---|---|---|---|---|---|---|
| Arizona Rx Card | 2009-present | Unknown. Plaintiff reserves the right to supplement if such information becomes available. | All residents of Arizona regardless of income | Unknown. Plaintiff reserves the right to supplement if such information becomes available. | Unknown. Plaintiff reserves the right to supplement if such information becomes available. | Unknown. Plaintiff reserves the right to supplement if such information becomes available. |
| Arizona AIDS Drug Assistance Program | Unknown–present | Unknown, Plaintiff reserves the right to supplement if such information becomes available. | Arizona residents living with HIV living under 300% of the federal poverty level. | Unknown, Plaintiff reserves the right to supplement if such information becomes available. | Unknown, Plaintiff reserves the right to supplement if such information becomes available. | Unknown, Plaintiff reserves the right to supplement if such information becomes available. |

23.    Have You ever passed Rebates received or Administrative Fees from a PBM or other contracting entity through to Your Health Plan members at the point of sale for any of the At-Issue Products? _____ Yes __X__ No

**If yes,** in the form of the table below, identify each such Health Plan where You passed on Rebates or Administrative Fees, the years You passed on Rebates or Administrative Fees, the At-Issue Products for which You passed on Rebates or Administrative Fees, and the percentage of Rebates or Administrative Fees that You passed on to members at the point of sale:

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona. The Office of the Attorney General did not offer Health Plans or contract with PBMs or other contracting entities during the Time Period, and therefore did not pass on Rebates or Administrative Fees to individuals. Accordingly, the requested information is not applicable.

| Health Plan | Year Passed on Rebate or Fee | At-Issue Product | Percentage of Rebate or Fee Passed on |
|---|---|---|---|
|  |  |  |  |

24. Other than passing Rebates through to Your Health Plan members at the point of sale, describe the ways in which You use Rebates and Administrative Fees received from PBMs or other contracting entities for At-Issue Products:

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona. The Office of the Attorney General did not offer Health Plans or contract with PBMs or other contracting entities during the Time Period, and therefore did not receive or use Rebates or Administrative Fees from PBMs. Accordingly, the requested information is not applicable.

25. In any contract identified in response to Question No. 19, did any other PBM or any other contracting entity submit bids/proposals?  _____ Yes __X__ No

**If yes**, identify any entity submitting competing bids/proposals, and produce the competing bids.

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona. The Office of the Attorney General did not contract with PBMs or solicit additional bids/proposals from any other PBM or contracting entity during the Time Period. Accordingly, the requested information is not applicable.

26. During the relevant time period, did You contract with, or use master contracts from, any other entities (e.g. MMCAP) for Rebates, fees, or other price concessions related to purchasing pharmaceutical products?

_____ Yes __X__ No

**If yes**, in the form of the table below, identify each such contract, the contracting entity, the year, and the percentage of or other determinant of the Rebates, fees, or price concessions the contracting entity agreed to pass through to Your Health Plan(s) identified in response to question 5:

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona. The Office of the Attorney General did not offer Health Plans, contract with PBMs or other contracting entities, purchase pharmaceutical products, or contract with or use master contracts from any other entities for Rebates, fees, or other price concessions related to purchasing pharmaceutical products during the Time Period. Accordingly, the requested information is not applicable.

| Contract | Contracting Entity | Year | Percentage of Rebates |
|---|---|---|---|
|  |  |  |  |

## VII.   MEDICAID PROGRAMS

27.   If You assert Medicaid claims, identify every medical insurance plan or carrier used by your State Medicaid program during the Relevant Time Period. For each, please provide the following information:

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona. The Arizona Office of the Attorney General does not assert Medicaid claims in this lawsuit. Accordingly, the requested information is not applicable.

| Name | Dates Offered | Plan's Pharmacy Benefit Manager / Claims Processor |
|---|---|---|
|  |  |  |

28.   If You asserted Medicaid claims, identify every Pharmacy Benefit Manager and other third-party administrator used by your State Medicaid program since January 1, 2011. For each response, please provide the following information:

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona. The Arizona Office of the Attorney General does not assert Medicaid claims in this lawsuit. Accordingly, the requested information is not applicable.

| Name | Relevant Dates | Name and Title of Individuals Who Oversaw Program |
|---|---|---|
|  |  |  |

29.   Are You asserting claims or seeking recoveries relating in any way to Medicaid benefits that are offered, administrated, and/or funded your State? __ Yes _X_ No

**If yes**, in the form of the table below, identify every State Medicaid plan or program offered during the Relevant Time Period. For each, please provide the following information:

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona. The Arizona Office of the Attorney General does not assert any claims or seek recovery relating in

any way to Medicaid benefits offered, administered, and/or funded by Arizona. Accordingly, the requested information is not applicable.

| Name of Medicaid Plan or Program | Delivery System (FFS, MCO, PCCM, limited benefit) | Dates Offered | Entity Responsible for Plan Administration |
|---|---|---|---|
|  |  |  |  |

30.    If You answered yes to Question No. 29, identify every Pharmacy Benefit Manager and other third-party administrator used by your State Medicaid program since January 1, 2011. For each response, please provide the following information:

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona. The Arizona Office of the Attorney General does not assert any claims or seek recovery relating in any way to Medicaid benefits offered, administered, and/or funded by Arizona. Accordingly, the requested information is not applicable.

| Name of PBM or Third-Party Administrator | Relevant Dates | Name of Medicaid Plan or Program |
|---|---|---|
|  |  |  |

31.    Have You adopted the Affordable Care Act's Medicaid expansion? _X__ Yes _____ No

If You answered yes to Question No. 31, have You made eligibility for Medicaid expansion programs contingent on waivers with eligibility conditions, including, but not limited to, requirements that participants work a certain number of hours per week, that differ from what is required by the Affordable Care Act? ____ Yes ___X___ No

15

## VIII.  <u>MISREPRESENTATIONS AND OMISSIONS</u>

32. In the form of the table below, identify every specific misrepresentation that a Defendant allegedly made that forms the basis of the allegations in Your lawsuit, of which You are currently aware, including the approximate date, the source, who received the statement, the reason why You believe the statement was false, and the Defendant(s) that made the statement. If reliance is a required element under any of the causes of action You assert in this lawsuit please provide whether or not You relied on the statement.

*See* Exhibit B.

33. In the form of the table below, describe any omissions that a Defendant allegedly made that forms the basis of the allegations in Your lawsuit, of which You are currently aware, including the approximate date, any statement to which the omission relates, the reason why You believe a Defendant should have disclosed the omission, and the Defendant(s) that made the omission:

*See* Exhibit C.

## IX.    TIMING OF AWARENESS

34.    Identify when and how You first learned or discovered that the prices for the At-Issue Products were allegedly artificially inflated, false, fraudulent, misleading, or deceptive:

Approximately April of 2022. To the extent that this question asks how the Arizona Office of the Attorney General learned this information, the Arizona Office of the Attorney General objects because it seeks privileged information that is protected from disclosure by the attorney-client privilege, attorney work product doctrine, and common interest privilege. The Arizona Office of the Attorney General responds further that no statute of limitations applies to the instant action.

35.    Identify the earliest date on which You began investigating the pricing of Defendants' At-Issue Products for the purpose of bringing the present action:

The Arizona Office of the Attorney General first began investigating the pricing of the Defendants' At-Issue Products approximately April of 2022.  The formal investigation that led to this lawsuit began in September of 2023.

36.    Identify all legal actions, investigations, or proceedings that were taken or initiated by You concerning the pricing of Defendants' At-Issue Products and the date on which they were first initiated:

The Arizona Office of the Attorney General initiated no other legal actions, investigations, or proceedings, apart from the Arizona Office of the Attorney General's formal investigation commencing September of 2023 and the filing of this lawsuit.

37.    Identify when You first learned or discovered that Defendants' statements about the prices for the At-Issue Products were allegedly false, fraudulent, misleading, or deceptive:

Approximately April of 2022.

38.    Describe how You first learned or discovered that Defendants' statements about the prices for the At-Issue Products were allegedly false, fraudulent, misleading, or deceptive:

To the extent that this question asks how the Arizona Office of the Attorney General learned this information, the Arizona Office of the Attorney General objects because it seeks privileged information that is protected from disclosure by the attorney-client privilege, attorney work product doctrine, and common interest privilege.

39.    Identify the earliest date on which You learned of or discovered any other lawsuit filed against any Defendant related to insulin pricing, including *In re Insulin Pricing* (D.N.J., 2:17-cv-00699), *MSP LLC* (D.N.J., 2:18-cv-02211), *Minnesota* (D.N.J., 2:18-cv-14999), or *In re Direct Purchaser* (D.N.J., 3:20-cv-03426).

April of 2022.

40.    Identify when and how You learned of or discovered any state, or federal investigation related to insulin pricing:

April of 2022. To the extent that this question asks how the Arizona Office of the Attorney General learned this information, the Arizona Office of the Attorney General objects because it seeks privileged information that is protected from disclosure by the attorney-client privilege, attorney work product doctrine, and common interest privilege.

41.    Identify the earliest date on which You became aware of any patient assistance programs offered by the manufacturer Defendants:

Unknown. The Arizona Office of the Attorney General's investigation is ongoing. The Arizona Office of the Attorney General reserves the right to supplement if responsive information becomes available.

42.    Identify the earliest date on which You became aware of any program offered by any PBM capping the monthly out-of-pocket cost for any At-Issue Drug (e.g., Express Scripts Patient Assurance Program):

Unknown. The Arizona Office of the Attorney General's investigation is ongoing. The Arizona Office of the Attorney General reserves the right to supplement if responsive information becomes available.

## X.    <u>SELECTION OF PRESCRIPTION DRUG COVERAGE</u>

43.    In the form of the table below, identify any third-party services, advisors, consultants, or contractors used by You or Your Health Plan(s) to provide consulting, research, analysis, accounting, financial advice, solicitation, selection, development, or other advice related to selecting or soliciting PBM services, or Prescription Drug Coverage for At-Issue Products during the Time Period, the approximate dates You or Your Health Plan(s) used the third-party services, advisors, consultants, or contractors, a description of the services that entity provided You or Your Health Plan(s), and the principal point of contact at the entity who is or was responsible for overseeing performance of the contract:

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona. The Office of the Attorney General did not use any third-party services, advisors, consultants, or contractors to provide consulting, research, analysis, accounting, financial advice, solicitation, selection, development, or other advice related to selecting or soliciting PBM services, or Prescription Drug Coverage for At-Issue Products during the Time Period. Accordingly, the requested information is not applicable.

| Third-Party Advisor (Advisor Name and Employer) | Approximate Dates | Description of Services | Point of Contact |
|---|---|---|---|
|  |  |  |  |

44.    For each third-party service, advisor, consultant, or contractor You identified in Question No. 42, in the table below or through the production of documents, identify whether Your Health Plan(s) received any presentations, reports, analyses, or memoranda related to Prescription Drug Coverage benefit design for At-Issue Products, and produce those materials:

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona. The Office of the Attorney General did not use any third-party services, advisors, consultants, or contractors to provide consulting, research, analysis, accounting, financial advice, solicitation, selection, development, or other advice related to selecting or soliciting PBM services, or Prescription Drug Coverage for At-Issue Products during the Time Period. Accordingly, the requested information is not applicable.

| Third-Party Advisor | Received Presentations, Reports, Analyses, Memoranda (Yes/No) |
|---|---|
|  |  |

45.    Did You, Your Health Plan(s), or anyone acting on behalf of Your Health Plan(s) conduct a request for proposal ("RFP") or similar process to solicit offers from or to otherwise identify PBMs to administer Prescription Drug Coverage? _____ Yes __X__ No

**If yes,** in the form of the table below, identify each RFP or other solicitation made by You, Your Health Plan(s), or on behalf of Your Health Plan(s) during the Time Period, any third-party advisor that assisted with the RFP or solicitation, the PBMs that the RFP or solicitation was sent to, and produce the RFP responses:

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona. The Office of the Attorney General did not offer Health Plans or conduct a request for proposal or similar process to solicit offers from or otherwise identify PBMs. Accordingly, the requested information is not applicable.

| RFP or Solicitation | Third-Party Advisor | Date | PBMs Solicited |
|---|---|---|---|
|  |  |  |  |

46.    Are Your Health Plan or Medicaid expenditures related to pharmaceuticals audited, either internally or by an external auditor? _____ Yes __X__ No

**If yes,** in the form of the table below, identify each audit and produce the audit:

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona. The

Office of the Attorney General did not offer Health Plans or conduct a request for proposal or similar process to solicit offers from or otherwise identify PBMs. Accordingly, the requested information is not applicable.

| Audit | Person or Entity conducting the Audit | Date | Purpose of the audit |
|---|---|---|---|
|  |  |  |  |

## XI.    **MEMBERSHIP IN OTHER ENTITIES**

47.    In the form of the table below, identify any organizations that You are a part of that share information regarding at-issue insulins, pharmaceutical pricing, Rebates, PBM or drug pricing reform or legislation, including, but not limited to, MMCAP or any other group purchasing organization, and identify any of Your employees who are involved in that organization:

The Plaintiff objects to this question because the question seeks privileged information that is protected from disclosure by the attorney client privilege, work product doctrine, and common interest privilege.

| Organization | Dates of Membership | Your Involved Employees |
|---|---|---|
|  |  |  |

## XII.    *PARENS PATRIAE* CLAIMS

48.    What sovereign or quasi-sovereign interest(s) do you allege are being advanced by this lawsuit?

Arizona brings this action to protect its sovereign interests in the health and economic well-being of the State of Arizona as a whole, including the integrity of its marketplace and healthcare, and its quasi-sovereign interests in the health, safety, and economic well-being of Arizona residents.

49.    In the form of the table below, identify any third-party advisors used by You to provide consulting or other advice related to out-of-pocket costs incurred by Your citizens in relation to the At-Issue Products in Your State during the Time Period, the approximate dates You used the third-party services, a description of the services that entity provided You, and the principal point of contact at the entity who is or was responsible for overseeing performance of the contract:

This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona. The Office of the Attorney General did not use any third-party advisors to provide consulting or other advice related to out-of-pocket costs incurred by the citizens of Arizona in relation to the At-Issue Products in the State of Arizona during the Time Period. Accordingly, the requested information is not applicable.

| Third-Party Advisor (Advisor Name and Employer) | Approximate Dates | Description of Services | Point of Contact |
|---|---|---|---|
|  |  |  |  |

50.     Identify any task force, study, working group, initiative, or other investigatory body related to the cost of pharmaceutical products, including the At-Issue Products, created by You or in which You participated, and provide the dates of operation and a description of same. This question does not seek privileged information.

The Plaintiff objects to this question because the question seeks privileged information that is protected from disclosure by the attorney client privilege, work product doctrine, and common interest privilege.

| Task Force, Study, Working Group, or Other Initiative | Approximate Dates of Operation | Description of Operations and Objective(s) |
|---|---|---|
|  |  |  |

51.     Have You received any complaints about the cost of pharmaceutical products in Your state? __X__ Yes _____ No

**If yes**, in the table below or through the production of documents, identify from whom You received the complaint, the approximate date of the complaint, the substance of the complaint, and Your response, if any.

To the best of the Arizona Office of the Attorney General's  knowledge, the Arizona Office of the Attorney General believes it has received a small number of complaints regarding the amount charged for pharmaceutical products. Due to the nature of the collection and retention of consumer complaints, the relevant database is not readily accessible to search for a specific complaint. The Arizona Office of the Attorney General's investigation is ongoing. The Arizona Office of the Attorney General reserves the right to supplement this response if responsive information becomes available.

| Source of Complaint | Approximate Date of Complaint | Substance of Complaint | Your Response to Complaint |
|---|---|---|---|
|  |  |  |  |

22

52.     Do You offer any assistance programs specifically pertaining to Your citizens with pre-diabetes or diabetes? _____ Yes ___X___ No

If yes, in the table below, identify the assistance program, the year(s) it was offered, the department, agency, third-party, or other entity that provided it, and provide a summary of the program.

| Program Name | Year(s) Offered | Entity Offering the Program | Summary of Program |
|---|---|---|---|
|  |  |  |  |

53.     In the table below, identify the out-of-pocket costs paid by Your citizens in connection with the At-Issue Products for each year:

Based on the current information available to the Arizona Office of the Attorney General, the requested information is unknown. The Arizona Office of the Attorney General is continuing its investigation and reserves the right to supplement this response.

| At-Issue Product | Year | Total Spent by Your Citizens |
|---|---|---|
|  |  |  |

## XIII.   DIRECT PURCHASING

54.     Have You purchased At-Issue Products directly from pharmaceutical manufacturers, wholesalers, mail order pharmacies, and/or retail sellers? ____ Yes __X__ No

If yes, in the table below, identify each At-Issue Product You allege You purchased directly, the specific years You made the direct purchase, the entity that directly distributed the At-Issue Product(s) to You, the total quantity of At-Issue Products You purchased, and the total amount You paid:

| At-Issue Product | Year | Direct Seller | Total Quantity | Total Amount Paid |
|---|---|---|---|---|
|  |  |  |  |  |

## XIV.   DAMAGES AND OTHER RELIEF

55.     For what period of time are You alleging damages?

2003–present.

_____

56.    For each Defendant identified in Question No. 4, state how You claim You, or Your residents, have been harmed by that Defendant's alleged conduct and identify the date when You allege that You were first injured as a result of that particular Defendant's alleged conduct. This request is not designed to require an expert evaluation.

| Defendant | Basis | Date |
|---|---|---|
| Eli Lilly And Company | Arizona and its residents with diabetes or pre-diabetes have been harmed by artificial price inflation of the At-Issue Drugs and lack of access to lower-priced alternatives. Arizona residents who purchased the At- Issue Drugs have been and are continuing to be overcharged by millions of dollars, if not more, due to the Insulin Pricing Scheme. Further, the Insulin Pricing Scheme has caused lack of access to affordable medications for diabetics, leading to behaviors such as rationing, under-dosing, injecting expired insulin, re-using needles, and starvation to control blood sugars, presenting the danger of diabetic ketoacidosis, hyperglycemia, amputation, kidney disease, vision loss, and other diabetes complications. | 2003 |
| Novo Nordisk, Inc. | Arizona and its residents with diabetes or pre-diabetes have been harmed by artificial price inflation of the At-Issue Drugs and lack of access to lower-priced alternatives. Arizona residents who purchased the At- Issue Drugs have been and are continuing to be overcharged by millions of dollars, if not more, due to the Insulin Pricing Scheme. Further, the Insulin Pricing Scheme has caused lack of access to affordable medications for diabetics, leading to behaviors such as rationing, under-dosing, injecting expired insulin, re-using needles, and starvation to control blood sugars, presenting the danger of diabetic ketoacidosis, hyperglycemia, amputation, kidney disease, vision loss, and other diabetes complications. | 2003 |

| | | |
|---|---|---|
| Sanofi-Aventis U.S. LLC | Arizona and its residents with diabetes or pre-diabetes have been harmed by artificial price inflation of the At-Issue Drugs and lack of access to lower-priced alternatives. Arizona residents who purchased the At- Issue Drugs have been and are continuing to be overcharged by millions of dollars, if not more, due to the Insulin Pricing Scheme. Further, the Insulin Pricing Scheme has caused lack of access to affordable medications for diabetics, leading to behaviors such as rationing, under-dosing, injecting expired insulin, re-using needles, and starvation to control blood sugars, presenting the danger of diabetic ketoacidosis, hyperglycemia, amputation, kidney disease, vision loss, and other diabetes complications. | 2003 |
| Evernorth Health, Inc. (formerly Express Scripts Holding Company) | Arizona and its residents with diabetes or pre-diabetes have been harmed by artificial price inflation of the At-Issue Drugs and lack of access to lower-priced alternatives. Arizona residents who purchased the At- Issue Drugs have been and are continuing to be overcharged by millions of dollars, if not more, due to the Insulin Pricing Scheme. Further, the Insulin Pricing Scheme has caused lack of access to affordable medications for diabetics, leading to behaviors such as rationing, under-dosing, injecting expired insulin, re-using needles, and starvation to control blood sugars, presenting the danger of diabetic ketoacidosis, hyperglycemia, amputation, kidney disease, vision loss, and other diabetes complications. | 2003. Although this Defendant was not formed until after 2003, this Defendant is also liable for its predecessors and is jointly and severally liable for actions taken by other Defendants in the Insulin Pricing Scheme. |

| | | |
|---|---|---|
| Express Scripts, Inc. | Arizona and its residents with diabetes or pre-diabetes have been harmed by artificial price inflation of the At-Issue Drugs and lack of access to lower-priced alternatives. Arizona residents who purchased the At- Issue Drugs have been and are continuing to be overcharged by millions of dollars, if not more, due to the Insulin Pricing Scheme. Further, the Insulin Pricing Scheme has caused lack of access to affordable medications for diabetics, leading to behaviors such as rationing, under-dosing, injecting expired insulin, re-using needles, and starvation to control blood sugars, presenting the danger of diabetic ketoacidosis, hyperglycemia, amputation, kidney disease, vision loss, and other diabetes complications. | 2003 |
| Express Scripts Administrators, LLC | Arizona and its residents with diabetes or pre-diabetes have been harmed by artificial price inflation of the At-Issue Drugs and lack of access to lower-priced alternatives. Arizona residents who purchased the At- Issue Drugs have been and are continuing to be overcharged by millions of dollars, if not more, due to the Insulin Pricing Scheme. Further, the Insulin Pricing Scheme has caused lack of access to affordable medications for diabetics, leading to behaviors such as rationing, under-dosing, injecting expired insulin, re-using needles, and starvation to control blood sugars, presenting the danger of diabetic ketoacidosis, hyperglycemia, amputation, kidney disease, vision loss, and other diabetes complications. | 2003. Although this Defendant was not formed until after 2003, this Defendant is also liable for its predecessors and is jointly and severally liable for actions taken by other Defendants in the Insulin Pricing Scheme. |

| ESI Mail Pharmacy Services, Inc. | Arizona and its residents with diabetes or pre-diabetes have been harmed by artificial price inflation of the At-Issue Drugs and lack of access to lower-priced alternatives. Arizona residents who purchased the At- Issue Drugs have been and are continuing to be overcharged by millions of dollars, if not more, due to the Insulin Pricing Scheme. Further, the Insulin Pricing Scheme has caused lack of access to affordable medications for diabetics, leading to behaviors such as rationing, under-dosing, injecting expired insulin, re-using needles, and starvation to control blood sugars, presenting the danger of diabetic ketoacidosis, hyperglycemia, amputation, kidney disease, vision loss, and other diabetes complications. | 2003 |
| --- | --- | --- |
| Express Scripts Pharmacy, Inc. | Arizona  and its residents with diabetes or pre-diabetes have been harmed by artificial price inflation of the At-Issue Drugs and lack of access to lower-priced alternatives. Arizona residents who purchased the At- Issue Drugs have been and are continuing to be overcharged by millions of dollars, if not more, due to the Insulin Pricing Scheme. Further, the Insulin Pricing Scheme has caused lack of access to affordable medications for diabetics, leading to behaviors such as rationing, under-dosing, injecting expired insulin, re-using needles, and starvation to control blood sugars, presenting the danger of diabetic ketoacidosis, hyperglycemia, amputation, kidney disease, vision loss, and other diabetes complications. | 2003 |
| Medco Health Solutions, Inc | Arizona and its residents with diabetes or pre-diabetes have been harmed by artificial price inflation of the At-Issue Drugs and lack of access to lower-priced alternatives. Arizona residents who purchased the At- Issue Drugs have been and are continuing to be overcharged by millions of dollars, if not more, due to the Insulin Pricing Scheme. Further, the Insulin Pricing Scheme has caused lack of access to affordable medications for diabetics, leading to behaviors such as rationing, under-dosing, injecting expired insulin, re-using needles, and starvation to control blood sugars, presenting the danger of diabetic ketoacidosis, hyperglycemia, amputation, kidney disease, vision loss, and other diabetes complications. | 2003 |

| CVS Health Corporation | Arizona and its residents with diabetes or pre-diabetes have been harmed by artificial price inflation of the At-Issue Drugs and lack of access to lower-priced alternatives. Arizona residents who purchased the At- Issue Drugs have been and are continuing to be overcharged by millions of dollars, if not more, due to the Insulin Pricing Scheme. Further, the Insulin Pricing Scheme has caused lack of access to affordable medications for diabetics, leading to behaviors such as rationing, under-dosing, injecting expired insulin, re-using needles, and starvation to control blood sugars, presenting the danger of diabetic ketoacidosis, hyperglycemia, amputation, kidney disease, vision loss, and other diabetes complications. | 2003. Although this Defendant was not formed until after 2003, this Defendant is also liable for its predecessors and is jointly and severally liable for actions taken by other Defendants in the Insulin Pricing Scheme. |
|---|---|---|
| CVS Pharmacy, Inc | Arizona and its residents with diabetes or pre-diabetes have been harmed by artificial price inflation of the At-Issue Drugs and lack of access to lower-priced alternatives. Arizona residents who purchased the At- Issue Drugs have been and are continuing to be overcharged by millions of dollars, if not more, due to the Insulin Pricing Scheme. Further, the Insulin Pricing Scheme has caused lack of access to affordable medications for diabetics, leading to behaviors such as rationing, under-dosing, injecting expired insulin, re-using needles, and starvation to control blood sugars, presenting the danger of diabetic ketoacidosis, hyperglycemia, amputation, kidney disease, vision loss, and other diabetes complications. | 2003 |

| Caremark Rx, L.L.C. | Arizona and its residents with diabetes or pre-diabetes have been harmed by artificial price inflation of the At-Issue Drugs and lack of access to lower-priced alternatives. Arizona residents who purchased the At- Issue Drugs have been and are continuing to be overcharged by millions of dollars, if not more, due to the Insulin Pricing Scheme. Further, the Insulin Pricing Scheme has caused lack of access to affordable medications for diabetics, leading to behaviors such as rationing, under-dosing, injecting expired insulin, re-using needles, and starvation to control blood sugars, presenting the danger of diabetic ketoacidosis, hyperglycemia, amputation, kidney disease, vision loss, and other diabetes complications. | 2003 |
| Caremark PCS Health, L.L.C. | Arizona and its residents with diabetes or pre-diabetes have been harmed by artificial price inflation of the At-Issue Drugs and lack of access to lower-priced alternatives. Arizona residents who purchased the At- Issue Drugs have been and are continuing to be overcharged by millions of dollars, if not more, due to the Insulin Pricing Scheme. Further, the Insulin Pricing Scheme has caused lack of access to affordable medications for diabetics, leading to behaviors such as rationing, under-dosing, injecting expired insulin, re-using needles, and starvation to control blood sugars, presenting the danger of diabetic ketoacidosis, hyperglycemia, amputation, kidney disease, vision loss, and other diabetes complications. | 2003. Although this Defendant was not formed until after 2003, this Defendant is also liable for its predecessors and is jointly and severally liable for actions taken by other Defendants in the Insulin Pricing Scheme. |

| Caremark, L.L.C. | Arizona and its residents with diabetes or pre-diabetes have been harmed by artificial price inflation of the At-Issue Drugs and lack of access to lower-priced alternatives. Arizona residents who purchased the At- Issue Drugs have been and are continuing to be overcharged by millions of dollars, if not more, due to the Insulin Pricing Scheme. Further, the Insulin Pricing Scheme has caused lack of access to affordable medications for diabetics, leading to behaviors such as rationing, under-dosing, injecting expired insulin, re-using needles, and starvation to control blood sugars, presenting the danger of diabetic ketoacidosis, hyperglycemia, amputation, kidney disease, vision loss, and other diabetes complications. | 2003. Although this Defendant was not formed until after 2003, this Defendant is also liable for its predecessors and is jointly and severally liable for actions taken by other Defendants in the Insulin Pricing Scheme. |
| UnitedHealth Group, Inc. | Arizona and its residents with diabetes or pre-diabetes have been harmed by artificial price inflation of the At-Issue Drugs and lack of access to lower-priced alternatives. Arizona residents who purchased the At- Issue Drugs have been and are continuing to be overcharged by millions of dollars, if not more, due to the Insulin Pricing Scheme. Further, the Insulin Pricing Scheme has caused lack of access to affordable medications for diabetics, leading to behaviors such as rationing, under-dosing, injecting expired insulin, re-using needles, and starvation to control blood sugars, presenting the danger of diabetic ketoacidosis, hyperglycemia, amputation, kidney disease, vision loss, and other diabetes complications. | 2003 |

| | | |
|---|---|---|
| Optum, Inc | Arizona and its residents with diabetes or pre-diabetes have been harmed by artificial price inflation of the At-Issue Drugs and lack of access to lower-priced alternatives. Arizona residents who purchased the At- Issue Drugs have been and are continuing to be overcharged by millions of dollars, if not more, due to the Insulin Pricing Scheme. Further, the Insulin Pricing Scheme has caused lack of access to affordable medications for diabetics, leading to behaviors such as rationing, under-dosing, injecting expired insulin, re-using needles, and starvation to control blood sugars, presenting the danger of diabetic ketoacidosis, hyperglycemia, amputation, kidney disease, vision loss, and other diabetes complications. | 2003 |
| OptumInsight, Inc. | Arizona and its residents with diabetes or pre-diabetes have been harmed by artificial price inflation of the At-Issue Drugs and lack of access to lower-priced alternatives. Arizona residents who purchased the At- Issue Drugs have been and are continuing to be overcharged by millions of dollars, if not more, due to the Insulin Pricing Scheme. Further, the Insulin Pricing Scheme has caused lack of access to affordable medications for diabetics, leading to behaviors such as rationing, under-dosing, injecting expired insulin, re-using needles, and starvation to control blood sugars, presenting the danger of diabetic ketoacidosis, hyperglycemia, amputation, kidney disease, vision loss, and other diabetes complications. | 2003 |

| OptumRx Holdings, LLC | Arizona and its residents with diabetes or pre-diabetes have been harmed by artificial price inflation of the At-Issue Drugs and lack of access to lower-priced alternatives. Arizona residents who purchased the At- Issue Drugs have been and are continuing to be overcharged by millions of dollars, if not more, due to the Insulin Pricing Scheme. Further, the Insulin Pricing Scheme has caused lack of access to affordable medications for diabetics, leading to behaviors such as rationing, under-dosing, injecting expired insulin, re-using needles, and starvation to control blood sugars, presenting the danger of diabetic ketoacidosis, hyperglycemia, amputation, kidney disease, vision loss, and other diabetes complications. | 2003. Although this Defendant was not formed until after 2003, this Defendant is also liable for its predecessors and is jointly and severally liable for actions taken by other Defendants in the Insulin Pricing Scheme. |
| OptumRx Inc. | Arizona and its residents with diabetes or pre-diabetes have been harmed by artificial price inflation of the At-Issue Drugs and lack of access to lower-priced alternatives. Arizona residents who purchased the At- Issue Drugs have been and are continuing to be overcharged by millions of dollars, if not more, due to the Insulin Pricing Scheme. Further, the Insulin Pricing Scheme has caused lack of access to affordable medications for diabetics, leading to behaviors such as rationing, under-dosing, injecting expired insulin, re-using needles, and starvation to control blood sugars, presenting the danger of diabetic ketoacidosis, hyperglycemia, amputation, kidney disease, vision loss, and other diabetes complications. | 2003 |

57.    Are you seeking any damages on behalf of your citizens on a *parens patriae* basis?

___X___ Yes _____ No

**If yes,** summarize the categories of damages or monetary relief that You allege.

The Arizona Office of the Attorney General seeks restitution, disgorgement, penalties, and all other legal and equitable relief to which Arizona Office of the Attorney General and other Arizona consumers may be entitled; pre- and post-judgment interest as provided by law, the State of

Arizona's costs of this action including reasonable attorneys' fees; and such other further relief as the case may require and the Court deems just and proper.

58.    Are You seeking any monetary relief based on an injury to the State itself? _____ Yes __X__ No

**If yes,** summarize the categories of damages or monetary relief that You allege.

_____

59.    Are You seeking any injunctive relief? __X___ Yes _____ No

**If yes**, summarize the conduct you seek to enjoin as to each defendant:

The Arizona Office of the Attorney General requests that the Court enjoin and restrain each Defendant, its affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on the Defendants' behalf or in concert with the Defendants, from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy or combination alleged herein in violation of Arizona's state laws; from entering into any other contract, conspiracy or combination having a similar purpose or effect; and from adopting or following any practice, plan, program or device having a similar purpose or effect.

The Arizona Office of the Attorney General reserves all rights to fashion and argue the forms which the requested injunctive relief may take. Potential injunctive relief could include:

1.    Require PBM disclosure to health plan clients of the types, names, and amounts of all remuneration paid by the Manufacturers to the PBMs, including the PBM's affiliated rebate aggregators ("RAs") or group purchasing organizations ("GPOs"), directly or indirectly attributable in any way to each health plan client's utilization of the At-Issue Drugs;

2.    Require the PBMs, including their affiliated pharmacies (mail-order, retail, specialty, etc.), RAs, and GPOs, to pass through to their health plan clients 100% of all Manufacturer Payments or other remuneration from the Manufacturers which is directly or indirectly attributable in any way to each health plan client's utilization of the At-Issue Drugs, regardless of how such remuneration is classified or labeled (*e.g.,* rebates, fees, discounts, price protection, etc.);

3.    Prohibit PBMs, including their affiliated pharmacies, RAs, and GPOs, from basing or calculating, in whole or part, the amount of administrative, service or other fees charged to Manufacturers or other entities on the WAC, AWP, or other list price of the At-Issue Drugs;

4.    Require the Manufacturers to disclose annually the net prices they receive and cost of goods sold for the At-Issue Drugs;

34

5.   Require the Manufacturers to disclose all remuneration paid by the Manufacturers to the PBMs, including the PBM's affiliated RAs or GPOs; and

6.   Prohibit the PBMs, including their affiliated pharmacies, RAs, and GPOs, from double billing different parties for rendition of the same services, *e.g.,* billing both health plan clients and the Manufacturers for rebate administration, calculation, or collection.

60.   Are You seeking any remedy not covered by Questions No. 55-59 above?

___X___ Yes _____ No

**If yes,** identify each remedy that You seek:

The Arizona Office of the Attorney General seeks all relief available to it under the Arizona Consumer Fraud Act A.R.S. §§ 44–1521–1534 and state law including, but not limited to, damages, restitution, disgorgement, civil monetary penalties, punitive damages, pre- and post-judgment interest, costs, and attorneys' fees, and any such further relief as the case may require and the Court may deem just and proper under the circumstances.

_____

## <u>INITIAL DOCUMENT REQUESTS</u>

Please produce the following documents for the Time Period:

1.      Each RFP seeking PBM services, including all amendments, riders, schedules, supplements, instructions, or other addenda that You or Your Health Plan(s) issued during the Time Period.

2.      Documents, including internal summaries, analyses, and presentations, reflecting Your or Your Health Plan's reasons for selecting or not selecting a PBM prescription drug benefit plan for each year, including bids, communications, RFPs, procurement rules, guidance documents, and related documents, and documents relating to negotiation for Rebates for Your employee plan(s) or Your Health Plan(s).

3.      Each contract, including amendments, riders, schedules, supplements, or other addenda that You or Your Health Plan entered into with a PBM, health insurer, third-party administrator, or any other entity through which You or Your Health Plan obtained price concessions for the At-Issue Products during the Time Period (e.g. MMCAP).

4.      Documents sufficient to identify the formularies for Your Health Plans during the Time Period.

5.      For each benefit year for which You are seeking relief, documents relating to Your Health Plans, including documents sufficient to show: (1) the annual deductible(s), including separate deductible amounts or requirements for use of in-network versus out-of-network pharmacies, and any separate deductible amounts or requirements on individual versus family expenditures, (2) the copayment or coinsurance rate for each pharmaceutical tier, (3) the annual Out-of-Pocket Maximums, (4) the summary plan description, and (5) summaries of benefits and coverage associated with each of Your Health Plans during the time period.

6.      Documents received by You or Your Health Plan that reflect or relate to representations made by PBMs about their services or made by pharmaceutical manufacturers about their list prices.

7.      Contracts between You, or Your Health Plan, and third-party advisors or auditors in effect during the Time Period that relate to prescription drug benefits, as well as any presentations, reports, analyses, or memoranda relating to prescription drug benefits You or Your Health Plans chose or did not choose.

8.      Documents relating to any study or analysis conducted or commissioned by You during the relevant time period that relates to Your population of diabetic citizens or considers whether consumers should pay for insulin, and if so, how much consumers should pay.

## <u>CERTIFICATION</u>

I declare under penalty of perjury that all of the information provided in this PFS is complete, true, and correct to the best of my knowledge and information, and that I have provided all of the requested documents that are reasonably accessible to me and/or my attorneys, to the best of my knowledge.

/s Shane M. Ham

Signature

2/4/2025

Date

Shane M. Ham

Name (Printed)

Senior Litigation Counsel, AZ AGO

Title

# EXHIBIT A

3. Name, firm, and e-mail of principal attorney(s) representing You:

| | |
|---|---|
| KRISTIN K. MAYES<br>ATTORNEY GENERAL<br>Leslie Kyman Cooper<br>Vincent Rabago<br>Shane Ham<br>OFFICE OF THE ATTORNEY GENERAL<br>Leslie.Cooper@azag.gov<br>Vince.Rabago@azag.gov<br>Shane.Ham@azag.gov | Matthew D. Schultz<br>William F. Cash<br>Brandon L. Bogle<br>LEVIN, PAPANTONIO, PROCTOR,<br>BUCHANAN, O'BRIEN, BARR &<br>MOUGEY, P.A.<br>mschultz@levinlaw.com<br>bcash@levinlaw.com<br>bbogle@levinlaw.com |
| Joseph C. Tann<br>LAW OFFICE OF JOSEPH C. TANN, PLLC<br>josephtann@josephtann.com | Benjamin J. Widlanski<br>Tal J. Lifshitz<br>Rachel Sullivan<br>KOZYAK TROPIN & THROCKMORTON<br>LLP<br>bwidlanski@kttlaw.com<br>tjl@kttlaw.com<br>rs@kttlaw.com |
| Russell W. Budd<br>Christine C. Mansour<br>Burton LeBlanc<br>Roland Tellis<br>Mark P. Pifko<br>Catherine Hancock Dorsey<br>BARON & BUDD, P.C.<br>rbudd@baronbudd.com<br>cmansour@baronbudd.com<br>bleblanc@baronbudd.com<br>rtellis@baronbudd.com<br>mpifko@baronbudd.com<br>cdorsey@baronbudd.com | Christopher A. Seeger<br>David R. Buchanan<br>Steven J. Daroci<br>SEEGER WEISS, LLP<br>cseeger@seegerweiss.com<br>dbuchanan@seegerweiss.com<br>sdaroci@seegerweiss.com |

# EXHIBIT  B

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| The Manufacturer Defendants raised their list prices solely to increase their own profits and to pay larger rebates, administrative and other fees, and other payments (referred to as "Manufacturer Payments" in the Complaint) to the PBM Defendants. The Manufacturer Defendants then published the artificially-inflated list prices as the sole list prices of the At-Issue drugs, with knowledge that such list prices would be used to set the prices paid by downstream entities and consumers. The Manufacturers published list prices are deceptive because they are completely divorced from market forces, research and development costs, and/or the actual net price received by the Manufacturers. | 2003 to present | Manufacturer Defendants | Compendia, distributors, pharmacies, hospitals and other health care providers, governments, Plaintiffs, patients/consumers, and the public. | The Manufacturer Defendants admit that the list prices they set for the At-Issue Drugs do not exclude rebates, fees, discounts or other payments and that such list prices substantially exceed the net prices which the Manufacturers realize on sales of the At-Issue Drugs. Authorities support the contention that the list prices of the At-Issue Drugs are artificially-inflated and deceptive: *The Astronomical Price of Insulin Hurts Am. Families,* RAND (Jan. 6, 2021) ("RAND Report"); *Drug Pricing Investigation: Majority Staff Report,* Comm. on Oversight & Reform, U.S. H.R. (Dec. 2021); U.S. H.R., *Drug Pricing Investigation: Industry Spending on Buybacks, Dividends, and Executive Compensation,* at 3 (July 2021); Natalie Shure, *The Insulin Racket,* American Prospect (June 24, 2019); Adam Fein, *Tex. Shows Us Where PBMs' Rebates Go,* Drug Channels (Aug. 9, 2022); Eric Percher, *Trends in Profitability and Compensation of PBMs and PBM Contracting Entities,* Nephron Research (Sept. 18, 2023); Insulin: Examining the Factors Driving the Rising Cost of a Century Old Drug, January 2021 Senate Insulin Report | N/A | Eli Lilly, Sanofi, and Novo Nordisk |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| The Manufacturer Defendants misrepresented that they raised the list price of the At-Issue Drugs due to advances in efficacy and/or costs of research and development. | 2012-2018 | Manufacturer Defendants public and investor statements. *Insulin: Examining the Factors Driving the Rising Cost of a Century Old Drug,* January 2021 Senate Insulin Report, and other authorities and statements cited in this Plaintiff Fact Sheet. | Plaintiffs, the public, patients/consumers, health plan clients of the PBMs and their members or enrollees | As reflected in the 2021 Senate Insulin Report, Eli Lilly generated $22.4 billion in revenue from Humalog, Humulin, and Basaglar from 2014-2018, while expending only $395 million for research and development. From 2016 to 2020, Novo Nordisk distributed $29 billion in stock buybacks and dividends while expending only $12 billion on research and development over the same period. *See also,* Briefing materials prepared for Eli Lilly CEO Dave Ricks for use at 2017 Forbes Healthcare Summit. | N/A | Eli Lilly, Sanofi, and Novo Nordisk |
| The PBM Defendants misrepresent that the manner in which they construct formularies and negotiate Manufacturer Payments lowers the prices of the at-issue drugs and promotes the health of diabetics. These statements are deceptive because the PBM Defendants utilize mechanisms such as exclusive or preferred formularies, rebates, and other Manufacturer Payments that increase the At-Issue Drugs' list prices which form the basis for the prices that state and commercial health plans and consumers pay. Plaintiff reserves the right to supplement its Plaintiff Fact Sheet with additional misrepresentations as discovery proceeds, however Rows 5 - 31 below represent specific examples of these types of misrepresentations from each PBM Defendant. | 2003 to present | PBM Defendants | Plaintiffs, the public, patients/consumers, health plan clients of the PBMs and their members or enrollees | Insulin: Examining the Factors Driving the Rising Cost of a Century Old Drug, January 2021 Senate Insulin Report, and other authorities and statements cited in this Plaintiff Fact Sheet. | N/A | Express Scripts, CVS Caremark, OptumRx, and their respective related defendant entities |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| CVS Health "negotiate[s] with pharmaceutical companies to obtain discounted acquisition costs for many of the products on [CVS Health's] drug lists, and these negotiated discounts enable [CVS Health] to offer reduced costs to clients." | February 2014 | 2013 CVS Caremark Corporation 10-K | Securities and Exchange Commission, patients/consumers, public | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. | N/A | CVS Health |
| CVS Health is "concern[ed]" about the "rising cost of insulin treatments" and "is committed to reducing the cost of insulin for patients and improving health outcomes for patients living with diabetes." | April 26, 2019 | CVS Health letter from CVS Health counsel (Williams & Connolly) to Senators Charles Grassley and Ron Wyden responding to Senate Finance Committee's letter to Larry Merlo | Senate Finance Committee, Public, patients/consumers | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. | N/A | CVS Health |
| "Antidiabetic drugs are a top spend driver for our payer clients. Trend in this category has been driven by price inflation in the mid-teens and utilization grown of more than five percent. However, our formulary and utilization management options help reduce the impact of the rising trend. Our latest 2018 data indicates that we have been able to reduce the total cost of diabetes drugs, including insulin, by 1.7 percent despite brand price inflation of 5.6 percent." | April 26, 2019 | CVS Health letter from CVS Health counsel (Williams & Connolly) to Senators Charles Grassley and Ron Wyden responding to Senate Finance Committee's letter to Larry Merlo | Senate Finance Committee, Public, patients/consumers | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs | N/A | CVS Health |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| "[CVS Health] work to control the cost of insulin for our clients in part by negotiating directly with manufacturers to lower their net prices based upon a number of factors, including formulary placement." | April 26, 2019 | CVS Health letter from CVS Health counsel (Williams & Connolly) to Senators Charles Grassley and Ron Wyden responding to Senate Finance Committee's letter to Larry Merlo | Senate Finance Committee, Public, patients/consumers | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs | N/A | CVS Health |
| CVS Health "design[s] pharmacy benefit plans that minimize the costs to the client while prioritizing the welfare and safety of the clients' members and helping improve health outcomes;" | December 31, 2009 – 2019 | CVS Caremark/CVS Health, Annual Reports (Form 10-K) (Dec. 31, 2009-2019). | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CaremarkPCS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs, reducing adherence and resulting in adverse health consequences. | N/A | CVS Caremark/CVS Health |
| CVS Health "negotiate[s] with pharmaceutical companies to obtain discounted acquisition costs for many of the products on [CVS Health's] drug lists, and these negotiated discounts enable [CVS Health] to offer reduced costs to clients;" | December 31, 2009 – 2013 | CVS Caremark/CVS Health, Annual Reports (Form 10-K) (Dec. 31, 2009-2013). | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Caremark and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Health |
| CVS Health "utilize[s] an independent panel of doctors, pharmacists and other medical experts, referred to as its Pharmacy and Therapeutics Committee, to select drugs that meet the highest standards of safety and efficacy for inclusion on [CVS Health's] drug lists." | December 31, 2009 – 2019 | CVS Caremark/CVS Health, Annual Reports (Form 10-K) (Dec. 31, 2009-2019). | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Caremark and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Health |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| CVS Caremark's formulary decisions related to diabetes medications "is one way the company helps manage costs for clients." | November 2012 | CVS Caremark public statement. | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Caremark and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Caremark |
| CVS Caremark "has taken a number of steps to address the impact of insulin price increases. We negotiate the best possible discounts off the manufacturers' price on behalf of employers, unions, government programs, and beneficiaries that we serve." | April 2019 | CVS Caremark's Chief Policy and External Affairs Office testimony during April 2019 hearings. | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Caremark and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Caremark |
| "We are a world-class PBM with an impressive track record of improving savings for health plans, plan sponsors, and their members." | 2010 | 2009 CVS Caremark Annual Report | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Caremark and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Caremark |
| "CVS Caremark was also the first PBM to roll out a formulary exclusion process that removed select branded drugs in favor of more cost-effective alternatives. This program is expected to save our clients approximately $1 billion in 2014, and significant opportunity remains for traditional and specialty drugs." | 2014 | 2013 CVS Caremark Annual Report | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Caremark and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Caremark |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| "Formulary management strategy expected to drive total incremental client savings of $3.5 billion from 2012 through 2015." | 2015 | 2014 CVS Health Annual Report | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Caremark and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Health |
| "[CVS Caremark] led the market with the first formulary exclusions in 2012, ensuring patient access to high-quality medications at the lowest possible cost to clients. Since that time, we've identified additional exclusions on an annual basis. . . .Through our strategies, we expect to have saved clients $6.4 billion for the five-year period through 2016. Oversight and strategic pharmacy management cut our clients' trend by more than half in 2015, despite record levels of drug price increases." | 2016 | 2015 CVS Health Annual Report | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Caremark and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Health |
| "$9 billion in aggregate client savings driven by managed formularies since 2012." | 2017 | 2016 CVS Health Annual Report | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Caremark and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Health |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| "We're helping clients and patients manage costs in the treatment of chronic conditions while new formulary strategies tie reimbursements to effectiveness." | 2018 | Larry J. Merlo (President and Executive Officer) in 2017 CVS Health Annual Report | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Caremark and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Health |
| More than $13 billion in aggregate client savings achieved from formulary strategies since 2012. | 2018 | Larry J. Merlo (President and Executive Officer) in 2017 CVS Health Annual Report | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Caremark and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Health |
| "In 2016, CVS Health reduced trend, the rate of drug spending growth, from an unmanaged 11 percent rate – largely driven by brand list price increases – to 3.2 percent actual cost growth by using PBM management solutions that include price protection and the negotiation of rebates. | April 05, 2017 | April 05, 2017 CVS Health Press Release | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | Negotiating price protection agreements with brand drug manufacturers does not protect Caremark's clients. | N/A | CVS Health |
| "More than 90 percent of brand manufacturer contracts also include price protection, a critical element in protecting clients in a market characterized by significant drug price increases." | March 15, 2017 | March 15, 2017 CVS Health Press Release | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | Negotiating price protection agreements with brand drug manufacturers does not protect Caremark's clients. | N/A | CVS Health |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| "[Evernorth] is one of the largest PBMs in North America . . . [and Evernorth] help[s] health benefit providers address access and affordability concerns resulting from rising drug costs while helping to improve healthcare outcomes." | December 31, 2009 – 2019 | Express Scripts Annual Reports (Form 10-K) (Dec. 31, 2009-2019). | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of Express Scripts | The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | Evernorth and Express Scripts |
| "[Evernorth] manage[s] the cost of the drug benefit by . . . assist[ing] clients in selecting a cost-effective formulary [and] leveraging purchasing volume to deliver discounts to health benefit providers." | December 31, 2009 – 2019 | Express Scripts Annual Reports (Form 10-K) (Dec. 31, 2009-2019). | Plaintiffs, the public, patients/consumers and state and commercial health plan clients of Express Scripts | The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | Evernorth and Express Scripts |

| "[Evernorth] works with clients, manufacturers, pharmacists and physicians to increase efficiency in the drug distribution chain, to manage costs in the pharmacy benefit chain and to improve members' health outcomes." | December 31, 2009 – 2019 | Express Scripts Annual Reports (Form 10-K) (Dec. 31, 2009-2019). | Plaintiffs, the public, patients/consumers and state and commercial health plan clients of Express Scripts | The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments.The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments.The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments.The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments.The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments.The participation in the | N/A | Evernorth and Express Scripts |

| | | | | Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments.The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments.The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments.The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments.The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments.The participation in the Insulin Pricing | | |

| | | | | Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments.The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments.The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments.The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments.The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments.The participation in the Insulin Pricing Scheme by Evernorth, | | |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| | | | | along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments.The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments. | | |
| Cigna provides "formulary management services" that "assist customers and physicians in choosing clinically-appropriate, cost-effective drugs and prioritize access, safety and affordability." | Annually, from December 31, 2018 through December 31, 2023 | Cigna Annual Report (Form 10-K) | S.E.C., the public, patients/consumers | RAND Report; 2021 Senate Insulin Report; and other references cite in this Plaintiff Fact Sheet | N/A | Express Scripts and its affiliated defendant entities |
| "OptumRx works directly with pharmaceutical manufacturers to secure discounts that lower the overall cost of medications and create tailored formularies – or drug lists – to ensure people get the right medications. [UnitedHealth Group] then negotiate[s] with pharmacies to lower costs at the point of sale . . . [UnitedHealth Group] also operate[s] [mail order pharmacies] . . . . [UnitedHealth Group] work[s] directly with drug wholesalers and distributors to ensure consistency of the brand and generic drug supply, and a reliance on that drug supply." | 2003 continuing through the present | UnitedHealth Group Sustainability Report | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of OptumRx | The participation in the Insulin Pricing Scheme by UnitedHealth Group, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. OptumRx and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | UnitedHealth Group and OptumRx |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| For "insulin products . . . [OptumRx] negotiate[s] with brand manufacturers to obtain significant discounts off list prices on behalf of our customers." | April 2019 | Chief Medical Officer of OptumRx testimony before U.S. Congress in the April 2019 hearing. | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of OptumRx | The participation in the Insulin Pricing Scheme by OptumRx, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. OptumRx and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | OptumRx |
| "[T]he insulin market is consolidated, hindering competition and limiting alternatives, leading to higher list prices on new and existing brand insulins. PBMs work hard to drive down costs using formulary management and rebates." | Unknown, investigation continuing | PCMA Website | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of the PBM Defendants | The participation in the Insulin Pricing Scheme by the PBM Defendants, the Manufacturer Defendants, and other named Defendants artificially inflated the prices of the at-issue drugs. The PBM Defendants and their affiliates retain substantial undisclosed Manufacturer Payments. | N/A | PBM Defendants through their agent the PCMA |
| Travis Tate, VP of Formulary and Trend Solutions for CVS Caremark represented on CVS Health's website that CVS Caremark's "formulary design continues to deliver savings while optimizing plan member experience." Mr. Tate further represented that CVS Caremark's managed formularies deliver $4.8 billion in client savings and $138 in savings per patient. Mr. Tate also represented that "[CVS Caremark is] dedicated to keeping member costs low so they can afford their medications while limiting member disruption | April 2024 | Travis Tate, VP of Formulary and Trend Solutions for CVS Caremark | The public, patients/consumers, clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health and CVS Caremark along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs and drove up the prices for their clients and diabetics. | N/A | CVS Health and CVS Caremark |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| David Joyner, the Executive Vice President of CVS Caremark, made the following representations:<br>a. "[CVS Caremark] exist[s] to make prescription drugs more affordable."<br><br>b. "As we work to bring down costs, you'll hear from others who want to raise [drug prices], specifically pharmaceutical companies who are directly responsible for how drugs are priced in our country."<br><br>c. "At CVS Caremark, we are creating a more transparent environment for drug pricing in this country . . . for every drug from every manufacturer for every condition and every patient."<br><br>d. "[CVS Caremark's] size and scale allow us to go toe-to-toe with drug companies, driving competition and negotiating discounts that make the difference between someone affording their medication or going without."<br><br>e. "[CVS Caremark] take[s] on every challenge, manage every drug, and deliver savings and safety." | April 2024 | David Joyner, the Executive Vice President of CVS Caremark | The public, patients/consumers, clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health and CVS Caremark along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs and drove up the prices for their clients and diabetics. | N/A | CVS Health and CVS Caremark |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| The PBM Defendants made deceptive statements and misrepresentations by disavowing their role in the Insulin Pricing Scheme and by stating that the Manufacturer Defendants are solely responsible for price increases and that there is no correlation between increasing Manufacturer Payments and rising prices for the At-Issue Drugs. Plaintiff reserves the right to supplement its Plaintiff Fact Sheet with additional misrepresentations as discovery proceeds, however Rows 33-42 below represent specific examples of these types of misrepresentations from each PBM Defendant. | 2019 | PBM Defendants | The public, patients/consumers, clients of the PBM Defendants | The participation in the Insulin Pricing Scheme by the PBM Defendants working in coordination with the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs and drove up the prices for their clients and diabetics. | N/A | Express Scripts, CVS Caremark, OptumRx, and their respective related defendant entities |
| "CVS Caremark does not make 'pricing' determinations for insulin products or any other prescription drug products. Manufacturers set the list prices for drugs. CVS Caremark does not control or influence the list prices set by manufacturers. CVS Caremark does not negotiate changes in list prices or engage in discussions with manufacturers that would encourage or discourage changes in list price." | April 26, 2019 | CVS Health letter from CVS Health counsel (Williams & Connolly) to Senators Charles Grassley and Ron Wyden responding to Senate Finance Committee's letter to Larry Merlo | Senate Finance Committee, the public, patients/consumers | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs | N/A | CVS Health |
| That "Pharmaceutical manufacturers insist that drug price increases are driven by rebates. This is simply not true." | April 9, 2019 | Prepared statement of Derica Rice, Executive Vice President, CVS Health; and President, CVS Caremark, to Senate Finance Committee | Senate Finance Committee, the public, patients/consumers | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs | N/A | CVS Health |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| "Any suggestion that PBMs are causing prices to rise is simply erroneous." | February 2017 | Larry Merlo, head of CVS Caremark, cited in Plaintiff's Complaint | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by the PBM Defendants, along with the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. The PBM Defendants and their affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Caremark |
| "PBMs are a key part of the solution to reining in rising drug prices." | 2017 | Larry J. Merlo (President and Executive Officer) in 2016 CVS Caremark Annual Report | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Caremark and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Caremark |
| "Without PBMs, and specifically without Express Scripts, our clients would pay [many times] more for [insulin]." | January 2017 | Tim Wentworth, CEO of Express Scripts. | Plaintiffs, the public, and state and commercial health plan clients of Express Scripts | The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | Express Scripts |
| "I have no idea why the prices [for insulin] are so high, none of it is the fault of rebates." | 2019 | Express Scripts Senior Vice President, Amy Bricker's testimony during the 2019 Congressional hearings, cited in Plaintiff's Complaint | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of Express Scripts | The participation in the Insulin Pricing Scheme by Express Scripts, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | Express Scripts |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| Express Scripts statement that PBMs play no role in rising drug prices and that PBMs work to "negotiate with drug companies to get the prices down." | 2017 | Express Scripts CEO Tim Wentworth went on CBS News, cited in Plaintiff's Complaint | Plaintiffs, the public, patients/consumers and state and commercial health plan clients of Express Scripts | The participation in the Insulin Pricing Scheme by Express Scripts, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | Express Scripts |
| "Drugmakers set prices, and we exist to bring those prices down." | February 2017 | CEO Tim Wentworth, on an Express Scripts' earning call, cited in Plaintiff's Complaint | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of Express Scripts | The participation in the Insulin Pricing Scheme by the PBM Defendants, along with the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. The PBM Defendants and their affiliates retain substantial undisclosed Manufacturer Payments. | N/A | Express Scripts |
| When asked in the April 2019 insulin congressional hearings if PBM-negotiated rebates and discounts were causing the insulin price to increase, OptumRx's Chief Medical Officer answered, "we can't see a correlation when rebates raise list prices." | April 2019 | OptumRx's Chief Medical Officer testimony during the April 2019 Congressional hearings, cited in Plaintiff's Complaint | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of OptumRx | The participation in the Insulin Pricing Scheme by OptumRx, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. OptumRx and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | OptumRx |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| CVS Caremark also represents to diabetics on the CVS Health website: a. "Pharmaceutical manufacturers insist that increasing drug prices are a result of them having to pay rebates. This is simply not true." <br><br>b. "Pharmaceutical manufacturers also argue that PBMs retain the rebates they negotiate, and that higher prices mean more rebates and greater profits for PBMs. This is entirely false. Rebate retention also has no correlation to higher drug prices." <br><br>c. "At CVS Health, we are committed to using every tool possible and continuing to drive innovation to bring down the cost of drugs. We remain focused on providing the right drug to the right patient at the right time at the lowest possible cost." | Current | CVS Health website | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs | N/A | CVS Health and CVS Caremark |
| Misrepresentations by the Manufacturer Defendants that PBMs are solely to blame for the increase in insulin prices, due to PBMs' demands for Manufacturer Payments in exchange for formulary placement. | 2019 | April 2019 testimony before U.S. House of Representatives | The public, patients/consumers | 2020 study from Institute of New Economic Thinking, *Profits, Innovation and Financialization in the Insulin Industry* (finding that the Manufacturer Defendants making substantial profits during time period when insulin prices were steepest, enabling the Manufacturer Defendants to distribute approximately $122 billion in value to their shareholders); 2021 Senate Insulin Report (finding that the Manufacturer Defendants retained more revenue from insulin in the relevant Time Period than in decade of the 2000s, *e.g.,* Eli Lilly's Humalog revenue increased from $1.5 billion in 2007 to $3 billion in 2018) | N/A | Eli Lilly, Sanofi, and Novo Nordisk |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| Misrepresentations by the PBM Defendants that their interests are aligned with diabetics and payers. Plaintiff reserves the right to supplement its Plaintiff Fact Sheet with additional misrepresentations as discovery proceeds, however Rows 45-73 below represent specific examples of these types of misrepresentations from each PBM Defendant. | 2003 to present | PBM statements and information cited in this Plaintiff act Sheet | Plaintiffs, the public, patients/consumers, state and commercial health plan clients and their enrollees | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. | N/A | Express Scripts, CVS Caremark, OptumRx, and their respective related defendant entities |
| " CVS Health is pioneering new strategies to lower costs for health plans and their members, which include CVS/minuteclinic utilization and innovative formulary strategies." | 2015 | 2014 CVS Health Annual Report | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Caremark and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Health |
| "[CVS Health] recognize[s] that consumers are often faced with challenging out-of-pocket costs, so we at CVS Health continue to develop solutions to help lower how much they spend on prescription drugs. Manufacturers alone set the price of their medications. What we do is create value for the employers, health plans and government programs we serve . . ." | April 9, 2019 | Prepared statement of Derica Rice, Executive Vice President, CVS Health; and President, CVS Caremark, to Senate Finance Committee | Senate Finance Committee, the public, patients/consumers | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs | N/A | CVS Health |
| CVS Health publicly represents that CVS Health constructs programs that lower the cost of the at-issue diabetes medications. | 2016 | CVS public announcement. | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Caremark and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Health |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| "CVS Health introduced a new program available to help the company's pharmacy benefit management (PBM) clients to improve the health outcomes of their members, lower pharmacy costs [for diabetes medications] through aggressive trend management and decrease medical costs . . . [and that] participating clients could save between $3000 to $5000 per year for each member who successfully improves control of their diabetes" (Emphasis added). | 2016 | CVS public announcement. | Plaintiffs, the public, patients/consumers and state and commercial health plan clients of CVS Caremark. | The participation in the Insulin Pricing Scheme by CaremarkPCS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs, reducing adherence and resulting in adverse health consequences. | N/A | CVS Health |
| CVS Caremark represented that it was focused on diabetes to "help us add value for our PBM clients and improve the health of plan members . . . a PBM client with 50,000 employees whose population has an average prevalence of diabetes could save approximately $3.3 million a year in medical expenditures." | May 11, 2010 | CVS Caremark public statement issued on May 11, 2010. | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark. | The participation in the Insulin Pricing Scheme by CaremarkPCS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs, reducing adherence and resulting in adverse health consequences. | N/A | CVS Caremark |
| "CVS is working to develop programs to hold down [diabetes] costs." | June 22, 2010 | CVS Caremark Chief Medical Officer, Andrew Sussman, public statement on national television. | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark. | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Caremark and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Caremark |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| CVS Caremark represented that the goal of its pharmacy benefit plans is to ensure "that the cost of a drug is aligned with the value it delivers in terms of patient outcomes . . . in 2018, we are doing even more to help keep drugs affordable with our new Savings Patients Money initiative." | 2017 | CVS Caremark 2017 Drug Report, cited in Plaintiff's Complaint | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Caremark and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Caremark |
| "Our services help lower costs and improve the plan member experience." | 2010 | 2009 CVS Caremark Annual Report | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Caremark and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Caremark |
| "We effectively manage pharmaceutical costs and improve health care outcomes through our pharmacy benefit management, mail order and specialty pharmacy division, CVS Caremark® Pharmacy Services ("Caremark")…." | 2012 | 2011 CVS Caremark Annual Report | Plaintiffs, the public, patients/consumers and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CaremarkPCS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs, reducing adherence and resulting in adverse health consequences. | N/A | CVS Caremark |
| "We effectively manage pharmaceutical costs and improve health care outcomes through our pharmacy benefit management ("PBM"), mail order and specialty pharmacy division, CVS Caremark® Pharmacy Services ("Caremark")…." | 2013 | 2012 CVS Caremark Annual Report | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CaremarkPCS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs, reducing adherence and resulting in adverse health consequences. | N/A | CVS Caremark |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| "We effectively manage pharmaceutical costs and improve health care outcomes through our pharmacy benefit management (PBM), mail order and specialty pharmacy division, CVS Caremark® Pharmacy Services; our more than 7,600 CVS/pharmacy® and Drogaria Onofre® retail stores; our retail-based health clinic subsidiary, MinuteClinic®; and our online retail pharmacies, CVS.com® and Onofre.com.br." | 2014 | 2013 CVS Caremark Annual Report | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CaremarkPCS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs, reducing adherence and resulting in adverse health consequences. | N/A | CVS Caremark |
| "We are uniquely positioned to engage members and promote healthier, cost-effective behaviors. At the same time, we are helping payors to reduce health care costs and improve outcomes." | 2014 | 2013 CVS Caremark Annual Report | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CaremarkPCS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs, reducing adherence and resulting in adverse health consequences. | N/A | CVS Caremark |
| "[W]e will continue to encourage the need to create competition within therapeutic classes as a solution to reducing the cost of drugs; whether it's clearing out the FDA backlog of potential drug approvals, many of which are generics, or increasing the speed to market of new biosimilar agents." | 2017 | Larry J. Merlo (President and Executive Officer) in 2016 CVS Health Annual Report | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Caremark and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Health |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| "New launches at elevated price points and increasing prices of older drugs have contributed to a sense that government interventions are necessary. Some market participants have attempted to paint PBMs as "middle men" in the pharmacy supply chain, taking outsized profits at the expense of patients and payors. This is simply not true. PBMs are the solution, not the problem. That's why both public and private payors continue to count on PBMs as indispensable partners that help to manage their drug trend." | 2017 | Larry J. Merlo (President and Executive Officer) in 2016 CVS Health Annual Report | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Caremark and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Health |
| "Our cost-effective model enhances value for payors and plan members alike." | 2018 | Larry J. Merlo (President and Executive Officer) in 2017 CVS Health Annual Report | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Caremark and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Health |
| "We are lowering costs." | 2019 | 2018 CVS Health Annual Report | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Caremark and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | CVS Health |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| "Diabetes is wreaking havoc on patients, and it is also a runaway driver of costs for payors . . . [Express Scripts] helps our clients and diabetes patients prevail over cost and care challenges created by this terrible disease." | August 31, 2016 | Express Scripts Senior Vice President and Chief Innovation Officer, Glen Stettin, public released statement. | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of Express Scripts | The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | Express Scripts |
| Express Scripts "broaden[s] insulin options for patients and bend[s] down the cost curve of what is currently the costliest class of traditional prescription drugs." | August 31, 2016 | Express Scripts Senior Vice President and Chief Innovation Officer, Glen Stettin, public released statement. | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of Express Scripts | The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | Express Scripts |
| Express Scripts is dedicated to controlling insulin prices because "we stand up for payers and patients." | January 2017 | Tim Wentworth, CEO of Express Scripts. | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of Express Scripts | The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | Express Scripts |
| "[A]t Express Scripts we're dedicated to keeping our promises to patients and clients . . . This commitment defines our culture, and all our collective efforts are focused on our mission to make the use of prescription drugs safer and more affordable." | Unknown, investigation continuing | Express Scripts Code of Conduct | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of Express Scripts | The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | Express Scripts |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| "At Express Scripts we negotiate lower drug prices with drug companies on behalf of our clients, generating savings that are returned to patients in the form of lower premiums and reduced out-of-pocket costs." | April 2019 | Amy Bricker, President at Express Scripts, testimony before Congress in April 2019 | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of Express Scripts | The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments | N/A | Express Scripts |
| "Express Scripts remains committed to . . . patients with diabetes and creating affordable access to their medications." | April 2019 | Amy Bricker, President at Express Scripts, testimony before Congress in April 2019 | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of Express Scripts | The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | Express Scripts |
| "A combined Express Scripts and Medco will be well-positioned to protect American families from the rising cost of prescription medicines." | September 2011 | George Paz (then CEO of Express Scripts) testimony during a Congressional subcommittee hearing. | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of Express Scripts/Medco | The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | Medco and Express Scripts |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| "The services we provide help improve health outcomes for patients while making prescription drugs more affordable for plan sponsors and individuals, and more sustainable for the country . . . the reason is simple: drug manufacturers are responsible for the high cost of prescription drugs . . . OptumRx negotiates better prices with drug manufacturers for our customers and consumers . . . At OptumRx, our mission is helping people live healthier lives and to help make the health system work better for everyone." | Unknown, investigation continuing | OptumRx website | Plaintiffs, the public, patients/consumers, and state and commercial health plan clients of OptumRx | The participation in the Insulin Pricing Scheme by OptumRx, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. OptumRx and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | OptumRx |
| "[Evernorth] manage[s] the cost of the drug benefit by . . . assist in controlling costs; evaluat[es] drugs for efficacy, value and price to assist[ing] clients in selecting a cost-effective formulary; [and] offer[s] cost-effective home delivery pharmacy and specialty services that result in cost savings for plan sponsors [and better care for members] leveraging purchasing volume to deliver discounts to health benefit providers." | December 31, 2009 – 2019 | Express Scripts Annual Reports (Form 10-K) (Dec. 31, 2009-2019). | Plaintiffs, the public, and state and commercial health plan clients of OptumRx | The participation in the Insulin Pricing Scheme by Evernorth, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | Evernorth and Express Scripts |
| Express Scripts' president Tim Wentworth stated at the 34th annual JP Morgan Healthcare Conference that Express Scripts "saved our clients more than $3 billion through the Express Scripts National Preferred Formulary." | January 2016, | 34th annual JP Morgan Healthcare Conference | The public, patients/consumers | The participation in the Insulin Pricing Scheme by Evernorth/Express Scripts, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs and drove up the prices for their clients and diabetics. | N/A | Evernorth and Express Scripts |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| CVS Caremark President and Executive Vice President of CVS Health Corp. Derica Rice stated, "Over the last three years . . . CVS Caremark has helped our clients save more than $141 billion by blunting drug price inflation, prioritizing the use of effective, lower-cost drugs and reducing the member's out-of-pocket spend . . . [CVS Caremark] manag[es] overall spend for diabetes and makes insulin more affordable." | April 2019 | CVSHealth.com, CVS Health April 11, 2019 press release | The public, patients/consumers, clients of CVS Caremark | The participation in the Insulin Pricing Scheme by CVS Health and CVS Caremark along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs and drove up the prices for their clients and diabetics. | N/A | CVS Health and CVS Caremark |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| Express Scripts claimed in a 2019 article titled "What's a Pharmacy Benefit Manager" that Express Scripts "work[s] with plan sponsors to provide a benefit that delivers the best clinical outcome and the lowest possible cost." Express Scripts also publicly represented in this article:<br><br>a. "By delivering smarter solutions to patients and clients, PBMs provide better care and lower cost with every prescription, every time."<br><br>b. "Rebates do not raise drug prices, drug makers raise drug prices, and they alone can lower them. Consider the cost of Humalog® (insulin lispro): over the past seven years, the list price for this medication has increased dramatically, yet the net cost has remained relatively constant. Without PBMs, and specifically without Express Scripts, plan sponsors would have paid exponentially more for their prescription drugs."<br><br>c. "We . . . negotiate with drug manufacturers so no one pays more than they need to."<br><br>d. "FACT: Public disclosure of negotiated rebates will not lower prescription drug costs. #PBMs Express Scripts negotiates with drug manufacturers to increase competition and lower costs for patients." | 2019 | Express Scripts 2019 article titled "What's a Pharmacy Benefit Manager" | The public, patients/consumers, clients of Express Scripts | The participation in the Insulin Pricing Scheme by Evernorth and Express Scripts along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs and drove up the prices for their clients and diabetics. | N/A | Evernorth and Express Scripts |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| In 2023 when testifying before Congress about insulin prices, Heather Cianfrocco stated, "[OptumRx] has been at the forefront of efforts to make insulin more affordable."  Ms. Cianfrocco continued, "we support and encourage lower list prices across the board." | May 2023 | Heather Cianfrocco, CEO of OptumRx | The public, patients/consumers, clients of OptumRx | The participation in the Insulin Pricing Scheme by UnitedHealth Group and OptumRx along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs and drove up the prices for their clients and diabetics. | N/A | UnitedHealth Group and OptumRx |
| The PBM Defendants misrepresent that they are transparent about Manufacturer Payments and that they passed along substantially all of the Manufacturer Payments they receive to plan sponsors, clients, and consumers. Plaintiff reserves the right to supplement its Plaintiff Fact Sheet with additional misrepresentations as discovery proceeds, however Rows 75-78 below represent specific examples of these types of misrepresentations from each PBM Defendant. | 2018 to present | PBM Defendants | Plaintiffs, the public, patients/consumers, health plan clients of PBM Defendants | CVS Caremark and its affiliated rebate aggregator ("RA") or group purchasing organization ("GPO") fail to pass-through to health plan clients and retain substantial undisclosed Manufacturer Payments. | N/A | CVS Caremark made the statements, for which it and its affiliated defendants are jointly and severally liable. |
| That Express Scripts "absolutely transparent" about the Manufacturer Payments they receive and that payors, "know exactly how the dollars flow" with respect to these Manufacturer Payments. | 2017 | Express Scripts CEO CBS News interview, cited in Plaintiff's Complaint | Plaintiffs, the public, patients/consumers and state and commercial health plan clients of Express Scripts | The participation in the Insulin Pricing Scheme by Express Scripts, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | Express Scripts |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| President of Express Scripts Amy Bricker stated, "the rebate system is 100 percent transparent to the plan sponsors and the customers that we service. To the people that hire us, employers of America, the government, health plans, what we negotiate for them is transparent to them. . . [However] the reason I'm able to get the discounts that I can from the manufacturer is because it's confidential [to the public]." | April 2019 | Amy Bricker, President of Express Scripts testimony/exchange with Representative John Sarbanes of Maryland at the U.S. Congressional hearings, cited in Plaintiff's Complaint | Plaintiffs, the public, patients/consumers and state and commercial health plan clients of Express Scripts | The participation in the Insulin Pricing Scheme by Express Scripts, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. Express Scripts and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | Express Scripts |
| "We want our clients to fully understand our pricing structure . . . [e]veryday we strive to show our commitment to our clients, and one element of that commitment is to be open and honest about our pricing structure." | 2011 | OptumRx President statement, cited in Plaintiff's Complaint | Plaintiffs, the public, and state and commercial health plan clients of OptumRx | The participation in the Insulin Pricing Scheme by OptumRx, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. OptumRx made undisclosed subcontracts or assignments of its core PBM service obligations, and OptumRx and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | UnitedHealth Group and OptumRx |
| UnitedHealth Group's CEO Andrew Witty on a 2025 earnings call stated: "Optum currently passes through 98% of rebates to the insurers, states and unions that contract with it . . . However [he said the team is taking] that excuse off the table today as it moves to pass through all rebates . . .We believe that takes away the excuse of who really is setting the price, and we would like to work with others across the system to relentlessly achieve the lowest net cost for everybody in the system," he said. "We'd like to see patients see the benefits of that, and we'd like to work with anybody who wants to work with us to make it happen." | January 2025 | UnitedHealth Group CEO Andrew Witty | Plaintiffs, the public, and commercial health plan clients of OptumRx | The participation in the Insulin Pricing Scheme by OptumRx, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. OptumRx made undisclosed subcontracts or assignments of its core PBM service obligations, and OptumRx and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | UnitedHealth Group and OptumRx |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| "The need for affordable insulin is urgent, especially for uninsured populations," said Heather Cianfrocco, CEO of Optum Rx, in a statement. "By working with Sanofi, we will improve access and lower costs for people who need this life-saving medication." | August 2022 | OptumRx CEO Heather Cianfrocco | Plaintiffs, the public, and state and commercial health plan clients of OptumRx | The participation in the Insulin Pricing Scheme by OptumRx, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. OptumRx made undisclosed subcontracts or assignments of its core PBM service obligations, and OptumRx and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | UnitedHealth Group and OptumRx |
| "This baseless action demonstrates a profound misunderstanding of how drug pricing works," OptumRX spokeswoman Elizabeth Hoff said in an email. "For many years, OptumRx has aggressively and successfully negotiated with drug manufacturers and taken additional actions to lower prescription insulin costs for our health plan customers and their members, who now pay an average of less than $18 per month for insulin." | October 2024 | OptumRX spokeswoman Elizabeth Hoff | Plaintiffs, the public, patients/consumers, health plan clients of the PBMs and their members or enrollees | The participation in the Insulin Pricing Scheme by OptumRx, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. OptumRx made undisclosed subcontracts or assignments of its core PBM service obligations, and OptumRx and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | OptumRx |
| "Optum Rx offers a distinctive approach to integrating the management of medical and pharmaceutical care by using data and advanced analytics to ... reduce costs for customers and people served." | Annually, from December 31, 2018 through December 31, 2021 | UnitedHealth Group Annual Report (Form 10-K) | S.E.C., the public, patients/consumers | The participation in the Insulin Pricing Scheme by OptumRx, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. OptumRx made undisclosed subcontracts or assignments of its core PBM service obligations, and OptumRx and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | UnitedHealth Group and OptumRx |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| "UnitedHealthcare Employer & Individual's comprehensive and integrated pharmacy care services promote lower costs by using formulary programs to produce better unit costs, encouraging consumers to use drugs offering improved value and outcomes…." | Annually, from December 31, 2018 through December 31, 2021 | UnitedHealth Group Annual Report (Form 10-K) | S.E.C., the public, patients/consumers | The participation in the Insulin Pricing Scheme by OptumRx, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. OptumRx made undisclosed subcontracts or assignments of its core PBM service obligations, and OptumRx and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | UnitedHealth Group and OptumRx |
| "[PBMs] are the only part of the drug supply chain that works to lower the price of drugs for our clients and consumers…. Our efforts reduce annual drug costs by $1,600 per person." | September 20, 2021 | Heather Cianfrocco, CEO, OptumRx, Letter to Human Rights Watch | Plaintiffs, the public, and state and commercial health plan clients of OptumRx | The participation in the Insulin Pricing Scheme by OptumRx, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. OptumRx made undisclosed subcontracts or assignments of its core PBM service obligations, and OptumRx and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | OptumRx |
| "The list price of insulin, independently set by pharmaceutical manufacturers, is too high for a 100-year-old drug that has seen no significant innovations for decades. For years, insulin manufacturers have used loopholes in the patent system to stifle competition and increase prices." | September 20, 2021 | Heather Cianfrocco, CEO, OptumRx, Letter to Human Rights Watch | Plaintiffs, the public, and state and commercial health plan clients of OptumRx | The participation in the Insulin Pricing Scheme by OptumRx, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. OptumRx made undisclosed subcontracts or assignments of its core PBM service obligations, and OptumRx and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | OptumRx |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| "Through our diversified family of businesses, we leverage core competencies in data and health information, advanced technology, and clinical expertise, focused on improving health outcomes, lowering health care costs and creating a better experience for patients, their caregivers and physicians." | Annual Report for fiscal year ending December 31, 2018 | UnitedHealth Group Annual Report (Form 10-K) | S.E.C., the public, patients/consumers | The participation in the Insulin Pricing Scheme by OptumRx, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. OptumRx made undisclosed subcontracts or assignments of its core PBM service obligations, and OptumRx and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | UnitedHealth Group and OptumRx |
| "Overall, we deliver, on average, $1,600 in annual drug savings per person to our customers. 98 percent of our negotiated discounts passed directly to our customers, and they use these discounts to help reduce premiums, to provide point-of-sale savings and to invest in health and wellness programs." | June 2019 | OptumRx CEO Heather Cianfrocco in a PCMAnet.org article | Plaintiffs, the public, and state and commercial health plan clients of OptumRx | The participation in the Insulin Pricing Scheme by OptumRx, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. OptumRx made undisclosed subcontracts or assignments of its core PBM service obligations, and OptumRx and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | OptumRx |
| "We have long been focused on lowering the net cost of prescription drugs, including insulin. Our clients and consumers count on us to be a counterweight to the substantial market power of manufacturers, which have sole discretion in setting and raising prices for their products. This lawsuit is without merit and we will defend ourselves against these allegations." | February 2024 | Statement from OptumRx to CBS regarding the Insulin Litigation | Plaintiffs, the public, and state and commercial health plan clients of OptumRx | The participation in the Insulin Pricing Scheme by OptumRx, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. OptumRx made undisclosed subcontracts or assignments of its core PBM service obligations, and OptumRx and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | OptumRx |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| "I've seen firsthand how high prices for insulin and other necessary medications can cause patients to limit or skip doses," said Dr. Patrick Conway, chief executive officer of Optum Rx. "Medicine that people can't afford is useless, and by taking this important next step to change our formulary, we will lower costs and improve access for more people who need this life-saving medication. Our goal is to make all essential medicines affordable." | November 09, 2023 | OptumRx CEO Patrick Conway via UnitedHealth Group Press Release | Plaintiffs, the public, and state and commercial health plan clients of OptumRx | The participation in the Insulin Pricing Scheme by OptumRx, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. OptumRx made undisclosed subcontracts or assignments of its core PBM service obligations, and OptumRx and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | UnitedHealth Group and OptumRx |
| "Drug manufacturers have the sole discretion over setting and raising prescription drug prices. Pharmacy benefit managers, including Optum Rx, serve as the counterweight to the manufacturers and are the only player in the prescription drug supply chain actively working to lower drug costs. This formulary decision builds on a series of Optum Rx actions to help protect consumers from high and rising drug prices and provide them with more choices." | November 09, 2023 | UnitedHealth Group Press Release | Plaintiffs, the public, and state and commercial health plan clients of OptumRx | The participation in the Insulin Pricing Scheme by OptumRx, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. OptumRx made undisclosed subcontracts or assignments of its core PBM service obligations, and OptumRx and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | UnitedHealth Group and OptumRx |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| "This baseless action demonstrates a profound misunderstanding of how drug pricing works. For many years, Optum Rx has aggressively and successfully negotiated with drug manufacturers and taken additional actions to lower prescription insulin costs for our health plan customers and their members, who now pay an average of less than $18 per month for insulin. Since 2015, insulin has been offered on our Preventive Drug List for plan sponsors utilizing high deductible health plans to help them reduce member out of pocket costs to as low as $0. Optum Rx also offers low-cost insulin for $35 per month for those without insurance. PBMs, like Optum Rx, are the key counterweight to pharmaceutical companies' otherwise unchecked monopoly power to set and raise drug prices." | September 2024 | UHG Press Release in response to FTC Action | Plaintiffs, the public, and state and commercial health plan clients of OptumRx | The participation in the Insulin Pricing Scheme by OptumRx, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. OptumRx made undisclosed subcontracts or assignments of its core PBM service obligations, and OptumRx and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | OptumRx |
| "OptumRx works to reduce the costs of these drugs as well, encouraging the use of low-cost generics or lower cost, therapeutically equivalent brand drugs when they are available." | April 2019 | Testimony of Sumit Dutta, CMO of OptumRx | Plaintiffs, the public, and state and commercial health plan clients of OptumRx | The participation in the Insulin Pricing Scheme by OptumRx, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. OptumRx made undisclosed subcontracts or assignments of its core PBM service obligations, and OptumRx and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | OptumRx |

| Misrepresentation | Approx. Date | Source | Recipient | Basis that Statement is False | Reliance (if needed) | Defendant(s) |
|---|---|---|---|---|---|---|
| "Providing people affordable access to prescription drugs is at the heart of everything we do." | January 23, 2023 | Jon Marht, COO and PBM President via OptumRx Press Release | Plaintiffs, the public, and state and commercial health plan clients of OptumRx | The participation in the Insulin Pricing Scheme by OptumRx, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. OptumRx made undisclosed subcontracts or assignments of its core PBM service obligations, and OptumRx and its affiliates retain substantial undisclosed Manufacturer Payments. | N/A | OptumRx |
| "The coming wave of biosimilars is a pivotal opportunity to reduce cost and increase access to care for millions of people." | November 2022 | Heather Cianfrocco | Plaintiffs, the public, and state and commercial health plan clients of OptumRx | The participation in the Insulin Pricing Scheme by OptumRx, along with the other PBM Defendants, the Manufacturer Defendants, and other named Defendants, artificially inflated the prices of the at-issue drugs. OptumRx made undisclosed subcontracts or assignments of its core PBM service obligations, and OptumRx and its affiliates retain substantial undisclosed Manufacturer Payments. OptumRx has preferred a brand insulin product with a higher list price and large rebate on its national formulary despite the availability of lower prices biosimilars. Optum was the first PBM to begin excluding biosimilars in 2018. | N/A | OptumRx |

# EXHIBIT C

| Omission | Approximate Date | Related Statement | Basis for Disclosure | Defendant(s) |
|---|---|---|---|---|
| The Manufacturer Defendants concealed from the Plaintiffs and the public their actual/net-prices realized for the At-Issue Drugs, which actual prices the Manufacturer Defendants were not prohibited from publishing, reporting or disclosing. | 2003 to present | All other subject matter related statements identified in this Plaintiff Fact Sheet | Plaintiff's Consumer Protection Act and interpreting state law. The Manufacturers' disclosure of an artificially-inflated list price was a half-truth, giving rise to duty to disclose full truth. *See also,* 42 U.S.C. 1395w-3a(c)(3) & (f)(D) (Average Sale Price - a "net" price - which the Manufacturer Defendants report to Medicare but choose not to publicly disclose). | Eli Lilly, Sanofi, Novo Nordisk |
| The Defendants, Manufacturers and PBMs, concealed their agreements by which formulary position is determined based on highest Manufacturer Payment/highest list price, rather than drug efficacy, therapeutic considerations, drug cost and affordability, health plan and member savings, or other legitimate factors | 2003 to present | All other statements identified in this fact sheet | Plaintiff's Consumer Protection Act and interpreting state law. Duty to disclose the truth in light of Defendants' public representations of concern regarding the health of diabetics, interests aligned with diabetics, etc. | The Manufacturer Defendants, the PBM Defendants, and all affiliate defendants of the PBMs joined in this action. |

| Omission | Approximate Date | Related Statement | Basis for Disclosure | Defendant(s) |
|---|---|---|---|---|
| The Defendants, Manufacturers and PBMs, concealed the extent to which all of them profited from artificially inflating the list prices of the At-Issue Drugs in order to generate Manufacturer Payments and to generate profits through their affiliated entities. | 2003 to present | All other statements identified in this fact sheet | Plaintiff's Consumer Protection Act and interpreting state law. Duty to disclose the truth in light of (1) the Manufacturer Defendants' and the PBM Defendants' public scapegoating of the other in attempt to mislead the public about where to lay the blame for artificially inflated and false list prices, and (2) the Manufacturer Defendants' false statements of reasons (innovation, R&D, value to the health care system as a whole) for at issue price increases. | The Manufacturer Defendants, the PBM Defendants, and all affiliate defendants of the PBMs joined in this action. |

| Omission | Approximate Date | Related Statement | Basis for Disclosure | Defendant(s) |
|---|---|---|---|---|
| The Defendants, Manufacturers and PBMs, failed to disclose their involvement in the Insulin Pricing Scheme and their collective culpability for the at-issue price increases. | 2003 to present | All other statements identified in this fact sheet | Plaintiff's Consumer Protection Act and interpreting state law. Duty to disclose the truth in light of (1) the Manufacturer Defendants' and the PBM Defendants' public scapegoating of the other in attempt to mislead the public about where to lay the blame for artificially inflated and false list prices, and (2) the Manufacturer Defendants' false statements of reasons (innovation, R&D, value to the health care system as a whole) for at issue price increases. | The Manufacturer Defendants, the PBM Defendants, and all affiliate defendants of the PBMs joined in this action. |

| Omission | Approximate Date | Related Statement | Basis for Disclosure | Defendant(s) |
|---|---|---|---|---|
| The PBM Defendants failed to disclose to the Plaintiffs, the public, patients/consumers, and their health plan clients and respective members, the fact that their affiliated rebate aggregators ("RAs") or group purchasing organizations ("GPOs") - Zinc Health Services, Ascent Health Services, and Emisar Pharma Services - were charging unnecessary and excessive "fees" to the Manufacturer Defendants that served to artificially inflate the list prices of the At-Issue Drugs. | 2019 to present | All other statements identified in this fact sheet | Plaintiff's Consumer Protection Act and interpreting state law, and contractual duties of disclosure where applicable to Plaintiff's state employee health plan or commercial health plans in Plaintiff's State. Additionally, duty to disclose the truth in light of half-truths or misleading statements made by PBM Defendants concerning reasons for the at issue price increases. | Express Scripts, CVS Caremark, OptumRx, and their respective affiliates joined as defendants in this action. |

| Omission | Approximate Date | Related Statement | Basis for Disclosure | Defendant(s) |
|---|---|---|---|---|
| The PBM Defendants failed to disclose that their affiliated RAs and GPOs were receiving and retaining Manufacturer Payments and that these Manufacturer Payments were driving up the price of the at-issue drugs. | 2019 to present | All other statements identified in this Plaintiff Fact Sheet, including but not limited to, contracts between the PBM Defendants and health plans in Plaintiff's State and misleading reports of rebates "received" by the PBM Defendants made to the Plaintiff's state employee health plan and/or commercial health plans within Plaintiff's State. | Plaintiff's Consumer Protection Act and interpreting state law, and contractual duties of disclosure where applicable to Plaintiff's state employee health plan or commercial health plans in Plaintiff's State. Additionally, duty to disclose the truth in light of half-truths or misleading statements made by PBM Defendants concerning reasons for the at issue price increases. | Express Scripts, CVS Caremark, OptumRx, and their respective affiliates joined as defendants in this action. |
| The PBM Defendants concealed that their respective Ras/GPOs charged "fees" to the Manufacturer Defendants for services which were not *bona fide* and/or services which were not rendered, which fees contributed to the at issue price increases. | 2019 to present | All other statements identified in this Plaintiff Fact Sheet, including but not limited to, contracts between the PBM Defendants and health plans in Plaintiff's State and misleading reports of rebates "received" by the PBM Defendants made to the Plaintiff's state employee health plan and/or commercial health plans within Plaintiff's State. | Plaintiff's Consumer Protection Act and interpreting state law, and contractual duties of disclosure where applicable to Plaintiff's state employee health plan or commercial health plans in Plaintiff's State. Additionally, duty to disclose the truth in light of half-truths or misleading statements made by PBM Defendants concerning reasons for the at issue price increases. | Express Scripts, CVS Caremark, OptumRx, and their respective affiliates joined as defendants in this action. |

| Omission | Approximate Date | Related Statement | Basis for Disclosure | Defendant(s) |
|---|---|---|---|---|
| The Manufacturer Defendants concealed that inflation of their list prices for the At-Issue Drugs included Rebate Aggregator or GPO charges for "fees" paid by the Manufacturer Defendants for RA or GPO services which were not *bona fide* and/or which were not rendered. | 2019 to present | All other statements identified in this fact sheet, including but not limited to false statements made by the Manufacturer Defendants (innovation, R&D, value to healthcare system) relating to price increases of the At-Issue Drugs. | Plaintiff's Consumer Protection Act and interpreting state law. Duty to disclose the truth in light of (1) the Manufacturer Defendants' and the PBM Defendants' public scapegoating of the other in attempt to mislead the public about where to lay the blame for artificially inflated and false list prices, and (2) the Manufacturer Defendants' false statements of reasons (innovation, R&D, value to the health care system as a whole) for at issue price increases. | Eli Lilly, Sanofi, Novo Nordisk |
| The PBM Defendants concealed that their exclusionary and/or preferred formularies are designed to increase PBM profits through rebates and other Manufacturer Payments and, ultimately, inflate (rather than lower) the list prices of the At-Issue Drugs. | 2003 to present | All other statements identified in this fact sheet | Plaintiff's Consumer Protection Act and interpreting state law. Duty to disclose the truth in light of representations by the PBM Defendants that their interests are aligned with diabetics and that they (the PBMs) exist to lower the prices of the At-Issue Drugs. | Express Scripts, CVS Caremark, OptumRx, and their respective affiliates joined as defendants in this action. |

| Omission | Approximate Date | Related Statement | Basis for Disclosure | Defendant(s) |
|---|---|---|---|---|
| The PBM Defendants and Manufacturer Defendants actively concealed the nature and amount of Manufacturer Payments paid to the PBM Defendants and the extent to which such payments artificially inflated the list prices of the At-Issue Drugs. | 2003 to present | False and misleading reports by the Manufacturer Defendants as to reasons (innovation, R&D, value to healthcare system) for the at issue price increases, and false statements by the PBMs that they use their respective formularies and negotiation power to seek to lower prices for the At-Issue Drugs. | Plaintiff's Consumer Protection Act and interpreting state law. Duty to disclose the truth in light of misrepresentations made by the Manufacturer Defendants and PBM Defendants, as cited herein. | The Manufacturer Defendants, the PBM Defendants, and all affiliates of the same joined in this action. |
| The Manufacturer Defendants and the PBM Defendants failed to disclose that their agreements to act cooperatively and collaboratively to artificially inflate the list prices of the At-Issue Drugs, even as each publicly blamed the other for those higher prices. | 2003 to present | All other statements identified in this fact sheet | Plaintiff's Consumer Protection Act and interpreting state law. Duty to disclose the truth in light of misrepresentations made by the Manufacturer Defendants and PBM Defendants, as cited herein. | The Manufacturer Defendants, the PBM Defendants, and all affiliates of the same joined in this action. |

| Omission | Approximate Date | Related Statement | Basis for Disclosure | Defendant(s) |
|---|---|---|---|---|
| The PBM Defendants and the Manufacturer Defendants failed to disclose that price protection clauses in their respective agreements served to signal and increase list prices of the At-Issue Drugs, rather than to prohibit, penalize or discourage increases of the list prices. | 2009 to present | Contractual agreements between the Manufacturer Defendants and PBM Defendants. | Plaintiff's Consumer Protection Act and interpreting state law. Duty to disclose the truth in light of the Manufacturer Defendants' misrepresentations concerning the reasons for price increases and the PBM Defendants' misrepresentations to health plan clients and their members concerning the purpose and alleged benefits of price protection. | The Manufacturer Defendants, the PBM Defendants, and all affiliates of the same joined in this action. |
| The PBM Defendants and Manufacturer Defendants concealed - through confidentiality agreements and trade secret assertions - the details of the negotiations and payments between them, and hence, information as to the actual prices of the At-Issue Drugs, depriving Plaintiffs, the public, patients/consumers and health plans and their members of transparency. | 2003 through to the present | All other statements identified in this fact sheet | Plaintiff's Consumer Protection Act and interpreting state law. Duty to disclose the truth in light of the Manufacturer Defendants' misrepresentations concerning the reasons for price increases and the PBM Defendants' false assertions of drug pricing and operational transparency. | The Manufacturer Defendants, the PBM Defendants, and all affiliates of the same joined in this action. |

| Omission | Approximate Date | Related Statement | Basis for Disclosure | Defendant(s) |
|---|---|---|---|---|
| The Manufacturer Defendants and the PBM Defendants concealed from Plaintiff, the public, health plans and their members, that the Manufacturers only compete as to Manufacturer Payments, rather than list price of the At-Issue Drugs, with the result of artificially inflating list prices to the point of falsity. | 2003 to present | All other statements identified in this Plaintiff Fact Sheet, including but not limited to (1) contracts between the Manufacturer Defendants and the PBM Defendants (or their respective RAs or GPOs), and (2) contractual provisions that a Manufacturer's rebate bid which is less than its prior rebate bid will be excluded from consideration by the PBMs (or their respective RA or GPO). | Plaintiff's Consumer Protection Act and interpreting state law. Duty to disclose the truth in light of misrepresentations made by the Manufacturer Defendants and PBM Defendants, as cited herein. | The Manufacturer Defendants, the PBM Defendants, and all affiliates of the same joined in this action. |

| Omission | Approximate Date | Related Statement | Basis for Disclosure | Defendant(s) |
|---|---|---|---|---|
| The PBM Defendants failed to disclose that they and their affiliates relied on ever higher list prices for the at-issue drugs, including to fund increasing minimum rebate guarantees. | 2003 to present | all other statements identified in this fact sheet | Plaintiff's Consumer Protection Act and interpreting state law, and contractual duties of disclosure where applicable to Plaintiff's state employee health plan or commercial health plans in Plaintiff's State. Additionally, duty to disclose the truth in light of half-truths or misleading statements made by PBM Defendants concerning reasons for the at issue price increases. | Express Scripts, CVS Caremark, OptumRx, and their respective affiliates joined as defendants in this action. |
| The PBM Defendants have concealed their critical role in the generation of those false list prices. | 2003 to present | all other statements identified in this fact sheet | Plaintiff's Consumer Protection Act and interpreting state law, and contractual duties of disclosure where applicable to Plaintiff's state employee health plan or commercial health plans in Plaintiff's State. Additionally, duty to disclose the truth in light of half-truths or misleading statements made by PBM Defendants concerning reasons for the at issue price increases. | Express Scripts, CVS Caremark, OptumRx, and their respective affiliates joined as defendants in this action. |

| Omission | Approximate Date | Related Statement | Basis for Disclosure | Defendant(s) |
|---|---|---|---|---|
| Each Defendant group also affirmatively blamed the other for the price increases described herein, and disavowed their roles in the Insulin Pricing Scheme, both during their congressional testimonies, directly to client payors and through the media. | 2003 through to the present | all other statements identified in this fact sheet | Plaintiff's Consumer Protection Act and interpreting state law. Duty to disclose the truth in light of misrepresentations made by the Manufacturer Defendants and PBM Defendants, as cited herein. | The Manufacturer Defendants, the PBM Defendants, and all affiliates of the same joined in this action. |
| The Manufacturer Defendants and the PBM Defendants failed to disclose that they agreed that the PBM Defendants determined formulary position based on rebates from artificially inflated list prices rather than from legal, competitive, and fair list prices. | 2003 to present | all other statements identified in this fact sheet | Plaintiff's Consumer Protection Act and interpreting state law. Duty to disclose the truth in light of misrepresentations made by the Manufacturer Defendants and PBM Defendants, as cited herein. | The Manufacturer Defendants, the PBM Defendants, and all affiliates of the same joined in this action. |