UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case No. 2:23-md-03080**<br>**MDL No. 3080**<br><br>**JUDGE BRIAN R. MARTINOTTI**<br>**JUDGE LEDA D. WETTRE** |

**THIS DOCUMENT RELATES TO: ALL TRACKS**[*]

**PLAINTIFFS' POST-HEARING**
**SUPPLEMENTAL BRIEF ON CONSTRUCTIVE NOTICE**

---

[*] Sections I, III, and IV of this Brief are submitted on behalf of all Tracks. Section II is submitted on behalf of the SFP and the AG Tracks. Section V is submitted on behalf of the Class Track only.

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................. ii

**ARGUMENT** ..............................................................................................................................1

    I.    Storm Warnings Focus on Plaintiffs' Injuries, Not the General Scheme. ...........................1

    II.   Storm Warnings Are Highly Individualized and Fact-Specific............................................1

    III.  Any Storm Warnings Were Dissipated by Reassurances. ..................................................2

    IV.  The Sanders Letter Did Not Put Any Plaintiff on Notice of Its Injuries. ..........................4

    V.   The Class Track Submits that Defendants' Submission Runs Afoul of the 12(b)(6) Framework and the Court's Prior Order. ...................................................................................5

## **TABLE OF AUTHORITIES**

*Bankers Tr. Co. v. Rhoades*,
    859 F.2d 1096 (2d Cir. 1988) ................................................................................. 1

*Benak v. All. Cap. Mgmt. L.P.*,
    435 F.3d 396 (3d Cir. 2006) ................................................................................... 2

*Blue Cross Blue Shield v. GlaxoSmithKline LLC*,
    417 F. Supp. 3d 531 (E.D. Pa. 2019) ............................................................. 1, 2, 5

*City of Miami v. Eli Lilly & Co.*,
    2022 WL 198028 (S.D. Fla. Jan. 21, 2022) ........................................................... 3

*DaimlerChrysler Sec. Litig.*,
    269 F. Supp. 2d 508 (D. Del. 2003) .................................................................. 2, 5

*De Vito v. Liquid Holdings*,
    2018 WL 6891832 (D.N.J. Dec. 31, 2018) ............................................................ 1

*Dockery v. Heretick*,
    2021 WL 3929707 (E.D. Pa. Sept. 1, 2021) ....................................................... 1, 2

*Dongelewicz v. PNC Bank Nat'l. Ass'n*,
    104 F. App'x 811 (3d Cir. 2004) ............................................................................ 2

*Freier v. West. Elec.*,
    303 F.3d 176 (2d Cir. 2002) ................................................................................... 3

*Grant Heilman Photo. v. McGraw-Hill Cos.*,
    2012 WL 5944761 (E.D. Pa. Nov. 28, 2012) ......................................................... 1

*In re Direct Purchaser Insulin Pricing Litig.*,
    2021 WL 2886216 (D.N.J. July 9, 2021) ........................................................... 5, 6

*In re EpiPen*,
    2021 WL 147166 (D. Minn. Jan 15, 2021) ............................................................ 6

*In re Merck & Co.*,
    543 F.3d 150 (3d Cir. 2008) ............................................................................... 2, 3

*In re Processed Egg Antitr. Litig.*,
    2011 WL 5980001 (E.D. Pa. Nov. 30, 2011) ......................................................... 2

*LifeScan v. Smith*,
    2024 WL 4913025 (D.N.J. Feb. 1, 2024) ............................................................... 1

*Mathews v. Kidder, Peabody & Co.*,

    260 F.3d 239 (3d Cir. 2001)......................................................................................... 1, 3

*N.V.E. v. Palmeroni*,
    2011 WL 1792788 (D.N.J. May 11, 2011) ................................................................ 1

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014)......................................................................................... 5

*Sidney Hillman Health v. Abbott Labs*,
    782 F.3d 922 (7th Cir. 2015)........................................................................................ 3

## I. Storm Warnings Focus on Plaintiffs' Injuries, Not the General Scheme.

The first step of the constructive notice test asks whether the defendant identified "storm warnings *with respect to the injury in question*." *Blue Cross Blue Shield v. GlaxoSmithKline LLC*, 417 F. Supp. 3d 531, 549 (E.D. Pa. 2019) (emphasis added).[1] "[T]he focus of accrual in a RICO action is" on "when the plaintiffs should have discovered *their injuries*," whereas "securities fraud claim[s] accrue[] when the plaintiffs should have discovered the misrepresentations and wrongdoing of the defendants." *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 251 (3d Cir. 2001).[2] This makes sense: a plaintiff has no reason to investigate absent some indication that it was harmed. And where a plaintiff alleges "multiple injuries," notice for each injury must be assessed "in turn." *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1103 (2d Cir. 1988). Defendants argued that storm warnings hinge on "whether the plaintiff should have known *general facts* about the fraudulent scheme," PBM Br. [ECF 569] at 6; Mfr. Br. [ECF 563] at 8, but now concede that storm warnings turn on each plaintiff's "injuries," Tr. at 26:11–13. That distinction is dispositive here.

## II. Storm Warnings Are Highly Individualized and Fact-Specific.

Defendants contend that "plaintiff-specific details" do not bear on the storm warnings analysis. Tr. 30:15–17. But their own cases explain that storm warnings are "based on what a reasonable person *in the plaintiff's position* would have perceived." *Grant Heilman Photo. v. McGraw-Hill Cos.*, 2012 WL 5944761, at *3 (E.D. Pa. Nov. 28, 2012) (emphasis added). As such, the "storm warnings" analysis is "fact intensive" and "often inappropriate . . . on a motion to dismiss." *De*

---

[1] *Dockery v. Heretick*, 2021 WL 3929707, at *27 (E.D. Pa. Sept. 1, 2021) (asking whether storm warnings "put [plaintiffs] on notice of their injury"); *accord LifeScan v. Smith*, 2024 WL 4913025, at *5 (D.N.J. Feb. 1, 2024); *N.V.E. v. Palmeroni*, 2011 WL 1792788, at *5 (D.N.J. May 11, 2011).

[2] That's because, "in most securities fraud actions, [d]iscovery of [the wrongdoing] leads almost immediately to discovery of the [injury]." *Mathews*, 260 F.3d at 251. When an investor discovers securities fraud, it is on notice that it may have overpaid for its shares. *Id.* The same is not true in RICO cases where wrongdoing alone does not necessarily alert a plaintiff to its injury. *Id.*

*Vito v. Liquid Holdings*, 2018 WL 6891832, at *27 (D.N.J. Dec. 31, 2018).

Defendants say *Mathews* rejected a plaintiff-specific analysis. *See* Tr. 26:5-10. That may be true for securities cases in which *direct* investors all stand in the same position, but the Third Circuit has expressly "refin[ed] [its] storm warnings analysis" to account for differences in plaintiffs, *Benak v. All. Cap. Mgmt. L.P.*, 435 F.3d 396, 403 (3d Cir. 2006), and held that plaintiffs with "different concerns" may have "distinct inquiry notice dates," *In re Merck & Co.*, 543 F.3d 150, 171 (3d Cir. 2008). Courts further recognize that discovery is necessary to determine "[w]hether a reasonable plaintiff would be expected to read regional newspapers or [specific] industry publications, akin to the reasonable securities investor." *In re Processed Egg Antitr. Litig.*, 2011 WL 5980001, at *8 (E.D. Pa. Nov. 30, 2011). And they hold that storm warnings "depend upon the circumstances surrounding each [plaintiff's] transaction." *Dockery*, 2021 WL 3929707, at *27.

There can be no single date on which *all* plaintiffs had a duty to investigate given their distinct injuries, their varying relationships with Defendants, the differing information Defendants and consultants supplied to specific plaintiffs, and the uneven reporting on different injuries.

### III. Any Storm Warnings Were Dissipated by Reassurances.

Even if storm warnings appeared for any plaintiff, they would have been dissipated by reassurances. Where storm warnings are "dissipated by reassuring statements," there is no need to "reach the question of . . . due diligence." *Blue Cross*, 417 F. Supp. 3d at 551 & n.18. In other words, reassurances go to step one. *Id.*; *accord Benak*, 435 F.3d at 402 n.16. Because storm warnings hinge on the "mix of information available" to *each* plaintiff, a court must analyze the reassurances made to each plaintiff and each category of plaintiffs. *DaimlerChrysler Sec. Litig.*, 269 F. Supp. 2d 508, 514 (D. Del. 2003). Inquiry notice thus "requires an extremely fact-specific individualized inquiry." *Dongelewicz v. PNC Bank Nat'l. Ass'n*, 104 F. App'x 811, 816 (3d Cir. 2004).

Defendants launched an all-out campaign to reassure the public that insulin prices resulted

2

from a competitive market. The PBMs represented that they "never [request] high sticker prices" Mfr. Ex. 1, and that "[r]ebates don't raise drug prices," Mfr. Ex. 15. PBMs took out ads saying that they are "the last line of defense for millions of Americans against rising health costs" and "[f]ight[] every day to make [drugs] more affordable." ESI Ad, WSJ (Sept. 11, 2024), https://perma.cc/R9ZV-JSWF. Defendants also blamed rising list prices on R&D, Mfr. Ex. 11; "insulin demand," Mfr. Ex. 6; the "advent of new insurance plan designs . . . which shift more of the costs to the individual," Mfr. Ex. 12; and the challenges in offering cheaper "biologics," Mfr. Ex. 23 at 56.

In the face of equivocal reporting, conflicting information, and rampant reassurances, no plaintiff could have been expected to investigate rising *list* prices until the January 14, 2021 Senate Insulin Report provided clarity. *See, e.g.*, *Freier v. West. Elec.*, 303 F.3d 176, 210 (2d Cir. 2002) (no inquiry notice where "abundant" reporting was "equivocal . . . or contained outright denials"); *Sidney Hillman Health v. Abbott Labs*, 782 F.3d 922, 929 (7th Cir. 2015) (no storm warnings given "conflicting information"); *Merck*, 543 F.3d at 172 (no storm warnings given "reassurances").[3] The clarity provided by the Senate's report was also necessary for the States in this MDL, whose discovery rules toll statutes of limitation until the States had factual knowledge of the cause of higher insulin prices, *i.e.*, knowledge of collusion between the Manufacturer and PBM Defendants.

But health plans (including SFPs) had no reason to investigate rising *list prices*—what Defendants' sources and the Senate addressed—because plans do not pay the list price. Under RICO, inquiry notice focuses on when plaintiffs "should have discovered *their injuries*." *Mathews*, 260 F.3d at 251. For plans, reassurances were unnecessary given the lack of storm warnings as to rising net prices, mislabeling, and rebate aggregators. Even the Senate's report indicated that rising

---

[3] Defendants also claim that courts "assume reasonable plaintiffs look at . . . lawsuits." Tr. at 25:13–15. But plaintiffs have no duty to "trawl court filings." *City of Miami v. Eli Lilly & Co.*, 2022 WL 198028, at *11 (S.D. Fla. Jan. 21, 2022); *see also* SFP Br. [ECF 535] at 12 & nn.3, 4.

3

list prices do not implicate plans because "the [list] price is not the amount . . . paid by . . . health insurers[] or employers" and does "not affect their ability to collect higher rebates." Senate Insulin Report at 42, 88. Other sources routinely told plans that they were not injured. *See infra* at 4. Absent storm warnings with respect to their injuries, health plans had no reason to investigate.

But even if Defendants could establish storm warnings as to plans, those warnings were dissipated by the mass of reassurances—from objective third parties *and* Defendants—stating that plans suffered no injuries. Indeed, prominent publications contrasted "the higher list price and the lower, secret, 'real' price that insurers pay," Mfr. Ex. 15 (NYT); suggested that "rebates result in inflated list prices that the insurer never pays," Mfr. Ex. 66 (Wash. Post); and advised that plans are uniquely insulated from rising list prices for insulin because "[i]n competitive markets such as . . . diabetes therapy . . . manufacturers often give especially large rebates," PBM Ex. 7 (WSJ).

Defendants also reassured health plans. They told plans that "[list] prices generally do not correspond to net prices—what companies, unions, and government agencies pay," Mfr. Ex. 38; that "rebates . . . translate[] into insurance plans on balance paying a lower effective net price," Mfr. Ex. 23; and that, based on a "systematic study" of internal PBM data, the "net price . . . has fallen," Carlton Report [ECF 522-11] at 1, 89–90. These came atop *direct* representations in PBM contracts and bids—the contents of which vary by plaintiff and will be revealed in discovery. These reassurances were particularly convincing because they were largely uncontradicted.[4]

### IV. The Sanders Letter Did Not Put Any Plaintiff on Notice of Its Injuries.

Defendants rest their argument on a November 3, 2016 letter in which Sen. Sanders and Rep. Cummings asked the FTC to investigate insulin manufacturer collusion. But this letter did

---

[4] To the extent that *any* exhibits suggested plan injuries, they were equivocal or speculative, in obscure journals, or not specific to insulin. *See* SFP Br. [ECF 568] at 6–7 & n.3. They were also contradicted by other sources. *E.g.*, Mfr. Exs. 1, 11, 15, 17, 23, 40, 55, 66, 67, 73; PBM Exs. 4, 7.

4

not reference PBMs, rebates, or net prices and had nothing to do with the scheme alleged here. The FTC did not investigate until six years later and did not sue until 2024. Having "mounted an aggressive, all-out campaign to counter any assertions" that they inflate prices, Defendants cannot now "punish Plaintiffs for trusting their word." *See DaimlerChrysler*, 269 F. Supp. 2d at 515.

### V. The Class Track Submits that Defendants' Submission Runs Afoul of the 12(b)(6) Framework and the Court's Prior Order.

The Court's inquiry at this stage is limited to "the allegations contained in the complaint, exhibits attached to the complaint[,] matters of public record," and documents integral to or explicitly relied upon in the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249–50 (3d Cir. 2014). Defendants have not even attempted to limit their arguments to this established framework.

Defendants were wrong in asserting at oral argument that with discovery "nothing is going to change the objective step one inquiry." Tr. at 73:3-4. Because storm warnings hinge on the "mix of information available," *DaimlerChrysler*, 269 F. Supp. 2d at 514, Plaintiffs are entitled to present to the trier of fact a full picture of Defendants' reassurances, *Blue Cross*, 417 F. Supp. 3d 551.

Even if the Court were to look outside the established 12(b)(6) framework, Defendants' citations to purported breadcrumbs from a few dozen articles and opinion pieces published over the course of more than a decade merely repeats the approach rejected by the Court in *In re Direct Purchaser Insulin Pricing Litig.*, 2021 WL 2886216 (D.N.J. July 9, 2021). As the Court recognized there, media attention does not trigger a duty to investigate, because the "opposite conclusion at this stage would have odd consequences: those who might be RICO plaintiffs would be expected to monitor scholarship and like resources and promptly and thoroughly investigate a universe of possible circumstances when presented with any reasoned suggestion that some aspect of the market is susceptible to abuse." *Id.* at *19. Finally, the Class Track believes a constructive notice date can be set without individualized inquiry.

5

Dated: July 21, 2025

Respectfully submitted,

| | |
|---|---|
| /s/ David R. Buchanan<br>David R. Buchanan<br>**SEEGER WEISS LLP**<br>55 Challenger Road<br>Ridgefield Park, New Jersey 07660<br>973-639-9100<br>dbuchanan@seegerweiss.com | Benjamin J. Widlanski<br>**KOZYAK TROPIN & THROCKMOR-TON LLP**<br>2525 Ponce de Leon Blvd., 9th Floor<br>Coral Gables, Florida 33134<br>Telephone: (305) 372-1800<br>bwidlanski@kttlaw.com |
| Brandon L. Bogle<br>**LEVIN, PAPANTONIO, PROCTOR, BUCHANAN, O'BRIEN, BARR & MOUGEY, P.A**.<br>316 S. Baylen St., Suite 600<br>Pensacola, Florida 32502<br>Tel: (850) 435-7140<br>bbogle@levinlaw.com | Mark P. Pifko<br>**BARON & BUDD, P.C.**<br>15910 Ventura Blvd #1600<br>Los Angeles, California 91436<br>Tel.: (818) 839-2333<br>mpifko@baronbudd.com |

*Lead Counsel for the Self-Funded Payer Track*

David J. Ko
**KELLER ROHRBACK LLP**
1201 Third Avenue, Suite 3400
Seattle, Washington 98101
Telephone: (206) 428-0562

*Counsel for Plaintiff King County*


 s/ Joanne Cicala
Joanne Cicala
**The Cicala Law Firm PLLC**
101 College Street
Dripping Springs, Texas 78620
Tel. (512) 275-6550
Fax: (512) 858-1801
joanne@cicalapllc.com

*Lead Counsel for the State Attorney General Track*

/s/ Erich P. Schork
Michael L. Roberts

6

Karen Halbert
Erich P. Schork
Sarah DeLoach
Kelly Rinehart
**ROBERTS LAW FIRM US, PC**
1920 McKinney Ave., Ste. 700
Dallas, TX 75204
Tel: (501) 821-5575
mikeroberts@robertslawfirm.us
karenhalbert@robertslawfirm.us
erichschork@robertslawfirm.us
sarahdeloach@robertslawfirm.us
kellyrinehart@robertslawfirm.us

Joseph H. Meltzer
Melissa L. Yeates
Jonathan F. Neumann
Jordan E. Jacobson
Kye Kyung Park
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
jmeltzer@ktmc.com
myeates@ktmc.com
jneumann@ktmc.com
jjacobson@ktmc.com
apark@ktmc.com

James E. Cecchi
Donald A. Ecklund
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: (973) 994-1700

*Interim Co-Lead Counsel for the Class Action Track*

## CERTIFICATE OF SERVICE

I certify that I am a registered attorney in the State of New Jersey and a Member of the Bar of this Court and that on this date a copy of this document was served on the counsel of record in the above-captioned matter via email.

/s/David R. Buchanan
David R. Buchanan

Dated: July 21, 2025