**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | Case No. 2:23-md-3080<br><br>MDL No. 3080 |

**DEFENDANTS' SUPPLEMENTAL RESPONSE
<u>REGARDING CONSTRUCTIVE NOTICE</u>**

i

Plaintiffs cannot refute the pervasive storm warnings in 2016 that would have prompted a reasonable plaintiff to investigate claims related to allegations of an "insulin pricing scheme." Dozens of publications, many of which Plaintiffs cite in their own complaints, broadcast these allegations nationwide. Members of Congress called for investigations. And other plaintiffs acted on these storm warnings by filing lawsuits in 2017—which MDL Plaintiffs continue to copy years later, including in fourteen copycat lawsuits filed the day of the hearing on this issue.

In an effort to avoid any constructive notice finding, Plaintiffs ask this Court to disregard almost every Third Circuit precedent on constructive notice. They argue that constructive notice does not exist until wrongdoing is "probable." They contend that this objective inquiry requires the Court to individually analyze each plaintiff's "sophistication." They assert that generic statements about Defendants' business or mere denials of wrongdoing "dissipate" overwhelming storm warnings. And they claim discovery is required before this Court can decide what the public record shows. The Court should reject these arguments and hold Plaintiffs were on constructive notice as of 2016.

A.   **The Constructive Notice Date Is 2016.**

Under *Mathews* Step 1's "totally objective inquiry," Defendants have more than carried their burden to show the "existence of storm warnings" by 2016. *Mathews v. Kidder, Peabody & Co., Inc.*, 260 F.3d 239, 252 (3d Cir. 2001). Constructive notice is triggered when "a reasonable [plaintiff] of ordinary intelligence" has "sufficient information of *possible* wrongdoing"—***not*** the "probability of wrongdoing." *In re Merck & Co., Inc. Sec. Derivative & ERISA Litig.*, 543 F.3d 150, 161, 164 (3d Cir. 2008). And the Third Circuit charges a "reasonably diligent plaintiff" with "investigat[ing] … related lawsuits and news articles." *Pension Trust Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 276-77 (3d Cir. 2013). Defendants

1

cited ***dozens*** of articles from 2016 (and earlier) reporting allegations of rising insulin prices and the role of PBMs and rebates in those prices. Ex. 1, July 9, 2025 Hr'g Tr. at 22:9-18. This same material was cited by Members of Congress who called for an investigation in November 2016, and it was quoted in lawsuits brought by consumers, health plans and states beginning in January 2017—proving that this widespread news coverage was sufficient to prompt constructive notice.

Indeed, Plaintiffs' concessions make clear that they had "sufficient information" to investigate "possible" claims in 2016. The Class Track Plaintiffs conceded that the statute of limitations was tolled only until November 3, 2016—an admission they now try to escape as too candid because they did not have an "incentive" to argue for a later date. Pls.' Opp'n to MTD, *In re Direct Purchaser*, 2:20-cv-03426, ECF 139 at 68. State AG Plaintiffs admitted there was "tremendous controversy" by 2016 and that states like Minnesota concluded there was a "real problem." Tr. 45:3, 47:6-8. And each track cites these same publications *in their complaints*. These acknowledgments—which show the information was "discovered … and recognized ... as a storm warning"—are fatal to Plaintiffs' argument for a later date. *Mathews*, 260 F.3d at 252.

The State AG and Class Track Plaintiffs nevertheless argue that constructive notice was triggered only in 2021 when the Senate Finance Committee "obtained enough information … to issue … findings" after a full investigation. Tr. at 43:18-24. But as the Court correctly observed, that argument conflates *notice* with *conclusions*. *Id*. at 54:20-23. Constructive notice exists when a reasonable plaintiff would have "***begun*** investigating." *Pension Tr. Fund*, 730 F.3d at 273. The law does not permit plaintiffs to wait until they "get all the information," Tr. at 54:20-23, or until they determine that wrongdoing is "probable." *Merck*, 543 F.3d at 161; *see also In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1326 (3d Cir. 2002) ("Plaintiffs need not know all of the details or narrow aspects of the alleged fraud ….")

2

Plaintiffs also incorrectly argue that the 2021 Senate Finance Committee report was the first time they could have known of the alleged "collusion" between Manufacturers and PBMs to further the "scheme." Tr. at 44:3-7. But allegations about rebates paid by Manufacturers to PBMs appeared in *dozens* of articles from 2016 and earlier. The New York Times alleged in February 2016 that this was a "racket" predicated on "kickbacks" that fueled higher prices. And in their 2017 lawsuit, consumer plaintiffs expressly alleged that "each [Manufacturer] **conspired** with the PBMs from the Pricing Enterprise for the purpose of carrying out its pricing fraud." *Chaires v. Novo Nordisk Inc.*, No. 2:17-cv-699 (D.N.J. Feb. 2, 2017), ECF 1 at 59 (emphasis added).

Finally, the Self-Funded Payers claim that the "details" of Defendants' alleged scheme evolved when Manufacturers began paying rebates to group purchasing organizations. But they admit "the misconduct described in [their complaints'] allegations" regarding these entities is "consistent with the misconduct [they] attribute[] to the PBMs." ECF No. 406-1 at 16. Nothing prevented Plaintiffs from investigating the same "scheme" underlying Plaintiffs' claims earlier. Nor does the GPOs' participation in the same scheme create a separate injury that would delay constructive notice. *See Broccoli v. Ashworth*, 2025 WL 880550, at *9 (S.D.N.Y. Mar. 21, 2025).

**B.     All Plaintiffs Had Constructive Notice By The Same Date.**

Self-Funded Payer Plaintiffs argued that each individual plaintiff should receive its own separate constructive notice date because the Court's analysis "depends a lot on how the individual plaintiff is situated" and their "different sophistication levels," given the "difference between the HR director of a relatively small county" and "the HR benefits coordinator for Walmart." Tr. at 15:6-16, 59:7-15. Third Circuit precedent forecloses that argument. The "totally objective inquiry" under *Mathews* Step 1 looks only at what a "reasonable [plaintiff] of ordinary intelligence" should have known from the *public* record. 260 F.3d at 252. It "hinges not on a

3

plaintiff's actual awareness of suspicious circumstances or even on the ability of a plaintiff to understand their import." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 507 (3d Cir. 2006). Indeed, *Mathews* explicitly *rejected* "the proposition that unsophisticated [plaintiffs] should be held to a lower standard of due diligence." 260 F.3d at 252. And Self-Funded Payers concede a uniform date "could be" possible, which contradicts their argument entirely. Tr. at 66:10-13.

      **C.     Plaintiffs Cite Nothing That Could Have Dissipated The Storm Warnings.**

Plaintiffs also misconstrue Third Circuit precedent in insisting that Defendants' supposed "reassurances, misdirection, [and] propaganda"—including mere denials of wrongdoing—suspended the inquiry notice date. Tr. at 43:9-17. But reassurances can "dissipate" a storm warning only if a plaintiff "of ordinary intelligence would reasonably rely on them to allay [their] concerns." *Pension Tr. Fund*, 730 F.3d at 277. Plaintiffs cannot make that showing.

Against the chorus of articles, calls for investigations, and lawsuits publicizing the specific allegations in their complaints, Plaintiffs note only that Defendants denied any wrongdoing, Tr. 45:9-25, and point to general PBM statements to the effect that they are "advocate[s]" and "not [] middlem[en]." Tr. 64:11-21. Those arguments fail. A plaintiff's "duty to inquire is not dissipated merely because of a defendant's later refusal to acknowledge or own up to the alleged fraud." *In re Merrill Lynch & Co. Rsrch. Reports Sec. Litig.*, 289 F. Supp. 2d 416, 425 (S.D.N.Y. 2003) (collecting cases). Nor do "generic" statements about a defendant's business or "general puffery" constitute "reassurances." *Chen v. X Fin.*, 2022 WL 765417, at *7 (E.D.N.Y. Mar. 13, 2022).

      **D.     There Is No Basis For Putting Off This Issue Until After Discovery.**

Even though *Mathews* Step 1 is a "totally objective inquiry," Plaintiffs urge this Court to wait until they take discovery into "what" Manufacturers were supposedly "trying to hide," "[w]hy" and "how." Tr. at 67:19-24. But, again, constructive notice looks at the information available to a "reasonable" plaintiff of "ordinary intelligence," like "publicly available news

4

articles." *Cetel*, 460 F.3d at 507. *Defendants'* thinking is irrelevant. And no discovery will change what the New York Times and others wrote in 2016, or that this information enabled consumers to sue based on the same allegations in 2017.[1] The Court can resolve *Mathews* Step 1 now.

### E. Plaintiffs Failed To Meet Their Burden Under *Mathews*' Second Step.

Under *Mathews* Step 2, Plaintiffs concede they have the burden to show they "were unable to discover their injuries" despite "exercis[ing] reasonable due diligence." *Mathews*, 260 F.3d at 252. But hundreds of Plaintiffs have confirmed in their Plaintiff Fact Sheet and discovery responses that they never conducted *any* investigation within the limitations period. If they "chose not to investigate," this Court must "deem them on inquiry notice of their claims." *Benak ex rel. All. Premier Growth Fund v. All. Cap. Mgmt. L.P.*, 435 F.3d 396, 401 (3d Cir. 2006).

The few that contend they *did* investigate in the limitations period cannot meet their burden. "The more ominous the warnings, the more extensive the expected inquiry." *Mathews*, 260 F.3d at 255. Making a "few cursory inquiries," with no "follow[]-up" or push "for an explanation," is inadequate. *Id.* at n.22. Nothing in Plaintiffs' complaints or discovery responses indicates they took even minimal steps. *Id*. If the Court wants to give Plaintiffs *another* chance to meet this burden, it can require them to put forth evidence of an investigation through a show-cause process, given that any such evidence would be uniquely in Plaintiffs' possession. Meanwhile, nothing at Step 2 affects the date that storm warnings existed under Step 1.

### CONCLUSION

The Court should hold that all Plaintiffs were on constructive notice by no later than 2016.

---

[1] SFP Plaintiffs misread *Dongelewicz v. PNC Bank* to suggest that constructive notice requires an "extremely fact-specific and individualized" inquiry. Tr. 73:19-21. But that case does not address *Mathews* Step 1, and instead encompassed issues like actual notice that would bear on statute of limitations issues in resolving class certification. 104 F. App'x 811, 816 (3d Cir. 2004).

5

Dated: July 21, 2025

Respectfully submitted,

/s/ Brian W. Carroll
**McCARTER & ENGLISH, LLP**
Brian W. Carroll
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
(973) 639-2020

**DAVIS POLK & WARDWELL LLP**
James P. Rouhandeh (*pro hac vice*)
David B. Toscano (*pro hac vice*)
450 Lexington Ave.
New York, NY 10017
(212) 450-4000

**DAVIS POLK & WARDWELL LLP**
Neal A. Potischman (*pro hac vice*)
Andrew Yaphe (*pro hac vice*)
900 Middlefield Road
Redwood, CA 94063
(650) 752-2000

*Attorneys for Defendant Novo Nordisk Inc.*

/s/ Liza M. Walsh
**WALSH PIZZI O'REILLY FALANGA LLP**
Liza M. Walsh
Katelyn O'Reilly
Selina M. Ellis
Lauren R. Malakoff
Three Gateway Center
100 Mulberry St., 15th floor
Newark, NJ 07102
(973) 757-1100

**JONES DAY**
Michael R. Shumaker (*pro hac vice*)
Julie E. McEvoy (*pro hac vice*)
William D. Coglianese (*pro hac vice*)
Melissa Lim Patterson (*pro hac vice*)
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3939

*Attorneys for Defendant Sanofi-Aventis U.S. LLC*

/s/ Jason R. Scherr
**MORGAN, LEWIS & BOCKIUS LLP**
Jason R. Scherr
Elise M. Attridge
Lindsey T. Levy
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000

*Attorneys for Defendants Express Scripts, Inc.; Express Scripts Administrators, LLC; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; and Medco Health Solutions, Inc.*

/s/ Melissa A. Geist
**REED SMITH LLP**
Melissa A. Geist
Julia A. López
506 Carnegie Center, Suite 300
Princeton, NJ 08540
(609) 514-5978

**KIRKLAND & ELLIS LLP**
James F. Hurst, P.C. (*pro hac vice*)
Diana M. Watral, P.C. (*pro hac vice*)
Ryan J. Moorman, P.C. (*pro hac vice*)
Jason A. Feld (*pro hac vice*)
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000

*Attorneys for Defendant Eli Lilly and Company*

| | |
|---|---|
| */s/ Brian Boone*<br>**O'TOOLE SCRIVO, LLC**<br>Thomas P. Scrivo<br>Young Yu<br>14 Village Park Road<br>Cedar Grove, NJ 07009<br>(973) 239-5700<br><br>**ALSTON & BIRD LLP**<br>Brian D. Boone<br>1120 S. Tyron St., Ste. 300<br>Charlotte, NC 28203<br>(704) 444-1000<br><br>**ALSTON & BIRD LLP**<br>Elizabeth Broadway Brown<br>1201 W. Peachtree St. NW, Ste. 4900<br>Atlanta, GA 30309<br>(404) 881-7000<br><br>**ALSTON & BIRD LLP**<br>Kelley Connolly Barnaby<br>950 F. Street, NW<br>Washington, D.C. 20004<br>(202) 239-3300<br><br>*Attorneys for Defendant OptumRx, Inc.* | */s/ Benjamin Hazelwood*<br>**MARINO, TORTORELLA & BOYLE, P.C.**<br>Kevin H. Marino<br>John D. Tortorella<br>437 Southern Boulevard<br>Chatham, New Jersey 07928<br>T: (973) 824-9300<br>F: (973) 824-8425<br><br>**WILLIAMS & CONNOLLY LLP**<br>Enu Mainigi<br>Craig Singer<br>R. Kennon Poteat III<br>A. Joshua Podoll<br>Benjamin Hazelwood<br>Daniel Dockery<br>680 Maine Avenue, S.W.<br>Washington, D.C. 20024<br>T: (202) 434-5000<br>F: (202) 434-5029<br><br>*Attorneys for Defendants CVS Pharmacy, Inc.; Caremark Rx, LLC; Caremark LLC; CaremarkPCS Health, LLC; and Caremark, LLC* |