# SEEGERWEISS LLP

## NEW YORK • NEW JERSEY • PHILADELPHIA

August 6, 2025

**VIA ECF**
Honorable Leda D. Wettre, U.S.M.J.
United States District Court
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

>    **Re:**    ***In re: Insulin Pricing Litigation*, No. 2:23-md-03080-BRM-LDW**
>              **The Plaintiff, Kris Mayes, Attorney General's Letter Brief**
>              **Regarding State Agency Discovery**

Dear Judge Wettre:

I am writing on behalf of the Plaintiff, Kris Mayes, Attorney General, in response to the Defendants' July 16, 2025, letter in which they falsely accuse this Plaintiff of refusing to participate in the Plaintiff Fact Sheet ("PFS") process.[1]

The Defendants' assertions lack merit. Rather than engaging in discovery in a good-faith effort to resolve the claims at issue, the Defendants are abusing the PFS process by demanding a wealth of information that is both irrelevant and beyond the Plaintiff's possession, custody, and control. The Plaintiff is not required to produce irrelevant information, nor is it capable of producing information that it lacks authority to access. If the Defendants want to collect information from Arizona state agencies that are not parties to this litigation, they can do so through the subpoena process—but they cannot demand that the Attorney General produce information that she does not possess and which does not relate to the claims in this case. This Court should not condone any contrary conclusion.

## I.    INTRODUCTION

The Plaintiff, the Attorney General of Arizona, (the "AG"), brings this litigation solely in *parens patriae* capacity on behalf of Arizona's citizens, seeking relief under Arizona's Consumer Fraud Act, AZ Stat. §§ 44-1521–1534. *See generally* AZ Compl. The Act authorizes the Arizona Attorney General—not the State of Arizona in a unitary form—to bring enforcement litigation "when it appears to the attorney general that a person has engaged in or is engaging in" any practice barred by the Act. AZ Stat. § 44-1528. Accordingly, the AG's Complaint does not advance any claim on behalf of the state or any agency thereof, nor does it advance any claims relating to Medicaid; instead, it seeks only relief on behalf of citizens who have been harmed by the Defendants' pricing scheme.

The AG responded fully and appropriately to the PFS, providing accurate responses to the questions that have any application to this case. The PFS itself instructs plaintiffs, "Do not leave any questions *applicable to You* unanswered or blank," PFS at 1 (emphasis added), plainly contemplating that there will be questions that are *not* applicable to certain responding plaintiffs. In this case, there

---

[1] Undersigned counsel writes on behalf of Arizona only and does not purport to speak for any other State Attorney General Plaintiff.

are indeed a number of questions that are not applicable to the AG: for example, the AG did not offer health plans to individuals during the relevant time period (Ques. 9–10, 16–17, 43–46); the AG does not spend money on the at-issue drug products (Ques. 15); the AG does not contract with PBMs (Ques. 19, 23–25); and the AG has not asserted Medicaid claims (Ques. 27–31). Accordingly, the AG responded with a description of why each of these questions is inapplicable to her claims. Because there is no extant information to provide, the AG is incapable of responding any differently. Further, as the Defendants know (and as this letter explains in greater detail), the Arizona Attorney General possesses only the authority and power granted to her by statute—and she does *not* have the authority to compel the collection or production of information or documents from agencies that do not receive legal services from the AG.

The Defendants—well aware of the limits on the AG's authority and the fact that the AG seeks relief only for the citizens and not for the state or its agencies—nevertheless insist on squandering time, effort, and resources litigating over discovery that is often times non-existent and otherwise irrelevant and beyond the AG's control to produce. They prefer this course of action over the obvious (and proper) alternative of issuing subpoenas or public records requests in pursuit of documents they believe may be relevant, and litigating the relevance with those non-party agencies. For the reasons that follow, this Court should reject the Defendants' efforts to confuse the issues and needlessly increase the expense and duration of this litigation.

## II.   LEGAL STANDARD

Under Rule 34, a requesting party may seek, from another party, documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). And, under Rule 33, a governmental agency responding to interrogatories "must furnish the information available to the party." Fed. R. Civ. P. 33(b)(1)(B). "Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Rule 26(b) provides some of those limiting principles: Parties may only take discovery that is "relevant to any party's claim or defense" and "proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In assessing proportionality, courts will consider, among other things, the "parties' relative access to relevant information[.]" *Id.*

"The party seeking discovery has the burden of showing that the information sought is relevant to the subject matter of the action[.]" *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000). Likewise, the "party seeking production of documents bears the burden of establishing the opposing party's control over those documents." *Barton v. RCI, LLC*, 2013 WL 1338235, at *6 (D.N.J. Apr. 1, 2013) (cleaned up). Control is "the legal right to obtain documents upon demand." *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989); *see also Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984). To require non-party state agencies to participate in party discovery, the requesting party must make "a strong showing" that the relevant agencies are "subject to common executive control [or] interrelated with the State Attorneys General[.]" *United States v. Am. Express Co.*, 2011 WL 13073683, at *1–2 (E.D.N.Y. July 29, 2011) (cleaned up).

## III.   ARGUMENT

The Defendants face two primary obstacles in pursuing their improper discovery goals: relevance and "possession, custody or control." Both issues turn, as a starting point, on the proper identity of the Plaintiff in this case: The Plaintiff is the Arizona Attorney General, in her statutory

*parens patriae* capacity, not the state as a political entity. The Defendants, resisting this reality and ignoring Arizona's law on the limited powers of the AG, falsely assert that the AG controls Arizona's state agencies. Nowhere does Arizona law hold that the AG can compel state agencies to produce documents or information. And, *even if* the AG had the power to demand documents and information from other state agencies, compelling this production would be improper because the discovery the Defendants seek is irrelevant to the claims.

**A.    Because the AG Does Not Assert Claims on Behalf of State Agencies, Discovery on the State Agencies is Irrelevant.**

As an initial matter, the discovery the Defendants seek is irrelevant and nonresponsive to the PFS. It is beyond dispute that, in federal court, the scope of discovery is limited to that which is relevant to the claims and defenses presented in a case. *See, e.g., Bayer AG*, 173 F.3d at 191 ("Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed."); Fed. R. Civ. P. 26(b)(1) (Parties may only take discovery that is "relevant to any party's claim or defense[.]"). The only claim at issue is the AG's *parens patriae* claim on behalf of Arizona's citizens. The Defendants have not even attempted to proffer a basis for believing that the information they seek—including Arizona state agencies' contracts with insurers or PBMs, the bids underlying those contracts, or total drug expenditures—is relevant to the AG's claim on behalf of the citizens. Indeed, the topic of relevance is entirely absent from their briefing. *See* Defendants' Letter Brief [ECF No. 659]. This is the Defendants' most basic burden to meet, and they have neither succeeded, nor even *attempted* to do so. Notably, Arizona is absent from the Defendants' string cite of allegations purporting to support their fishing expedition. *See id.* at 5 (quoting "sweeping allegations" in the complaints filed by plaintiffs *other than* Arizona).

The discovery the Defendants seek is likewise unresponsive under the PFS's definitions of "You," "Your," and "State." These terms are collectively defined as "the Plaintiff named in this Action and any other State employees or entities on whose behalf the Plaintiff brings this action." *See* PFS Definition No. 11. Because the AG did not bring the Action on behalf of any State employees or entities, information held by agencies other than the AG is beyond the scope of the PFS by its own terms: This is made pellucid in the AG's responses indicating, consistent with the Complaint, that she is not acting on behalf of any state agency in its capacity as a health insurance payor and is not seeking to recover for purchases made for any state-run facility. *See, e.g.,* AZ PFS at Questions 5–8.

The Defendants' failure to identify any basis for relevance or responsiveness—indeed, their failure to even *try* to meet this liminal requirement for discovery—should be the end of this analysis.

**B.    The Plaintiff is the Arizona Attorney General in *Parens Patriae* Capacity.**

The Plaintiff in this case is *State of Arizona, ex rel. Kris Mayes, Attorney General.* The AG brings this lawsuit in her *parens patriae* capacity and seeks relief for the citizens of Arizona under the state's Consumer Fraud Act, AZ Stat. §§ 44-1521–1534 (the CFA). According to the CFA, the AG is authorized to enforce Arizona's consumer protection laws. *See Carrington v. Arizona Corporation Commission*, 18 P.3d 97, 100 (Ariz. Ct. App. 2000). In Arizona, "when it appears to the attorney general that a person has engaged in or is engaging in any practice declared to be unlawful [by the CFA]," the AG may sue for injunctive relief and ask a court to prevent the unlawful practice, restore money acquired by the unlawful practice, disgorge illegally obtained profits to the State, or prohibit a person who violates the Act from engaging in a specific trade or occupation. § 44-1528(A), Ariz. Stat. Accordingly, the Plaintiff is the AG, and not any other agency or entity of the State of Arizona.

### C.     The Defendants Erroneously Assert that the AG Controls Arizona's State Agencies.

In their letter, the Defendants reiterate their mistaken understanding that the AG filed a claim on behalf of Arizona. They are wrong. The Defendants' broadbrush argument fails to account for the limits of the AG's authority under the Arizona Constitution and related statutes. It is the Defendants' burden, as the party seeking discovery, to establish that the AG has control over information sought. *See Barton*, 2013 WL 1338235, at *6. They have not, and they cannot. Instead, the Defendants cobble together an argument that disregards federalism principles and the sovereign prerogative of each "State and its Legislature to define how governmental entities are to be separate and distinct and how they may relate to one another as a whole." *Am. Express Co.*, 2011 WL 13073683, at *2 (cleaned up).

Even if relevant and responsive information were held by other agencies—it is not—the Arizona AG is not authorized or empowered to command its collection. The Arizona Attorney General's powers are defined and limited by statute and do not derive from the type of unitary executive theory that the Defendants appear to contemplate. *See* AZ Const. Art. 5 § 1 (establishing the "executive department" as comprising each "the governor, lieutenant governor, secretary of state, attorney general, state treasurer and superintendent of public instruction"); *id.* at Art. 5 § 9 ("The powers and duties of lieutenant governor, secretary of state, attorney general, state treasurer and superintendent of public instruction shall be as prescribed by law."); AZ Stat. § 41-192 (defining the powers and duties of the Attorney General). In other words, the Arizona AG possesses no inherent or common law authority; her powers arise entirely from statute and the Arizona Constitution. *See State ex rel. Brnovich v. Ariz. Bd. of Regents*, 476 P.3d 307, 310, ¶ 8 (Ariz. 2020); *Ariz. State Land Dep't v. McFate*, 348 P.2d 912, 914–17 (Ariz. 1960).

For example, while the Attorney General serves as "the legal advisor of the departments of [Arizona] and [shall] render *such legal services as the departments require*," nothing in the statute (or any other Arizona statute) authorizes the Attorney General to compel document collection or production from agencies who have not required its services. *See* AZ Stat. § 41-192(A)(1). Further, to the extent that Section 41-192(A)(1) establishes the Attorney General's role as legal advisor, certain agencies and departments are statutorily exempt from mandatory representation by the Attorney General's Office. *See* § 41-192(D). The Attorney General, in sum, lacks the authority to compel collection of any information from other departments or agencies, even if—a premise we reject—those departments or agencies held relevant information.

Courts hearing precisely this challenge—regarding Arizona executive agencies—side with the AG. *United States v. American Express* is particularly instructive. The *Amex* case involved antitrust enforcement actions brought by State Attorneys General, *including Arizona*. 2011 WL 13073683 at *1. The court found that the agencies of those states were not parties for purposes of discovery and, as relevant here, that "state agencies—even those that are part of the executive branch—are neither subject to common executive control nor interrelated with the State Attorneys General, and so should not be aggregated together for discovery purposes." *Id.* at *2. Amex had argued that the statutory provision requiring state attorney generals to represent state agencies, in certain circumstances, supported the view that "the State Attorneys General and agencies are not so independent as they claim[.]" *Ibid.* But the court rejected this claim for two reasons: first, the decision to pursue the enforcement action there (as here) "was not an instance of compulsory representation, or done specifically on behalf or in protection of any state agencies. Rather, the decision . . . was one of policy, made independently of the State Governors and state agencies." *Ibid.* Second, the court aptly

observed, "[g]reat deference must be given 'to the State and its Legislature to define how governmental entities are to be separate and distinct and how they may relate to one another as a whole.'" *Ibid.* (quoting *New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259, 264 (N.D.N.Y. 2006)). The same deference to federalism and comity reigns here.

*Amex* is not an anomaly. In *Colorado v. Warner Chilcott Holdings Co. III, Ltd.*, defendants sought party discovery of Medicaid information from states *including Arizona.* 2007 WL 9813287, at *1 (D.D.C. May 8, 2007). After first determining that the requested information was relevant (here, it is not), *id.* at *2–3, the court nonetheless declined to impose party discovery on Medicaid agencies since they were not interrelated with the Attorneys General or subject to common executive control. *Id.* at *4. The court also declined to order state AGs to produce discovery from state agencies because AGs initiate actions "under their own authority" and agencies were not parties to litigation. *Ibid.*

Ignoring Arizona law and relevant federal precedents, the Defendants advance the extreme proposition that every time the AG files a lawsuit in her independent capacity to enforce the CFA, she becomes responsible for the preservation and production of every document possessed by every state agency, department, division, officer, entity, board, or bureau. In other words, the Defendants suggest that because the AG is the Plaintiff in this case, party discovery obligations extend to Arizona's entire state government—an entirely unworkable (and unsupportable) premise.

### D.    A Wealth of Federal Case Law Supports the AG's Position.

Federal courts have long recognized that attorneys general are not required to produce discovery from non-party agencies because they do not have custody or control of that information. *See, e.g., Amex,* 2011 WL 13073683, at *2 ("Legally, the State Attorneys General have no more way of compelling production than Amex does if an agency refuses to cooperate. I cannot order a party to produce that which it does not have, and that to which it does not have any right or recourse to acquire."); *cf. People ex rel. Raoul v. Monsanto Co.,* 2023 WL 4083934, at *5 (N.D. Ill. June 20, 2023) (requiring attorney general to provide responsive documents from only the state agencies *identified* in state's complaint). Courts have rejected Defendants' arguments because AGs "bring suit under their own authority," *Colorado v. Warner Chilcott Holdings Co. III, Ltd.*, 2007 WL 9813287, at *4 (D.D.C. May 8, 2007), and "agencies operate outside of the [AG]'s authority," *Am. Express Co.*, 2011 WL 13073683, at *3.

Even in instances where an Attorney General's office represents an agency, the Attorney General does not exercise control over all agency information, as the *Amex* court recognized:

> In their representative capacity of the agencies, [Attorneys General] act in many ways as retained private counsel—at their client's behest . . . In this sense, the State Attorneys General have no more power to acquire documents from the non-party agencies than any law firm representing a client**.** *Without question, the private firms here would strenuously object if in bringing a law suit on behalf of one client (or even in their own name) their adversary sought documents belonging to another client as party discovery. They would properly insist on the use of Rule 45.*

*Amex*, 2011 WL 13073683, at *3 (emphasis added). Similar outcomes abound in courts across the country. *See, e.g., In re Gold King Mine Release in San Juan Co., Colorado, on August 5, 2015*, 2021 WL 847971, at *1 (D. N.M. Mar. 5, 2021) ("The United States has not cited any New Mexico law showing that the New Mexico Attorney General has the power to compel other state agencies to produce

documents."); *In re Jointly Managed R.S. 2477 Road Cases Litig v. United States*, 2018 WL 2172934, at *2 (D. Utah May 10, 2018) (requiring the requesting party to serve a third-party subpoena where it "state[d] no basis for concluding PLPCO is subordinate to the Attorney General such that the Attorney General could require its compliance in discovery"); *United States v. Novartis Pharms. Corp.*, 2014 WL 6655703, at *9 (S.D.N.Y. Nov. 24, 2014) ("[T]he mere fact that a state or a state agency sues does not mean that the records of all state agencies may be discovered using Rule 34's tools.  Rather, there must be a showing that the agency at issue has control over requested information."); *Boardman*, 233 F.R.D. at 266 (Following the requesting party's argument "to its logical conclusion, any lawsuit brought by the State of New York would subject all twenty-two executive agencies, the legislature, the judiciary, quasi-state agencies, and possibly public authorities to disclosure scrutiny, notwithstanding their relative remoteness to the issue of the case.  Not only would such a discovery mandate be unduly burdensome and cumbersome but totally untenable and outside the spirit of the Federal Rules.").

\*     \*     \*

The Defendants have the reliable tool of the Rule 45 subpoena at their fingertips.  Yet they refuse to use it and prefer to seek this Court's approval to run roughshod over the limits of Rules 26 and 34 and an abundance of federal caselaw upholding the noncontroversial premise that party discovery must be limited to relevant information that is in the possession, custody, or control of the responding party.  "Such an encumbrance can only precipitate absurd results."  *Boardman*, 233 F.R.D. at 266.  Accordingly, the Plaintiff respectfully urges this Court to maintain the firm boundaries of our federal discovery rules and instruct the Defendants to seek their third-party discovery for the Arizona case directly from the third parties.

Respectfully submitted,

*/s/ David R. Buchanan*
David R. Buchanan
**SEEGER WEISS LLP**
55 Challenger Road
Ridgefield Park, New Jersey 07660
Telephone: (973) 639-9100
dbuchanan@seegerweiss.com

Kristin K. Mayes
Attorney General
Shane Ham
Deputy Attorney General
**OFFICE OF THE ATTORNEY GENERAL**
2005 North Central Avenue
Phoenix, AZ 85004-1592
Telephone: (602) 542-5025
Facsimile: (602) 542-4377
consumer@azag.gov

Mark P. Pifko
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Los Angeles, California 91436
Telephone: (818) 839-2333
mpifko@baronbudd.com

Benjamin J. Widlanski
**KOZYAK TROPIN & THROCKMORTON LLP**
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
bwidlanski@kttlaw.com

6

Brandon L. Bogle
**LEVIN, PAPANTONIO, PROCTOR, BUCHANAN, O'BRIEN, BARR & MOUGEY, P.A**.
316 S. Baylen St., Suite 600
Pensacola, Florida 32502
Telephone: (850) 435-7140
bbogle@levinlaw.com

Joseph C. Tann (Bar No. 029254)
**LAW OFFICE OF JOSEPH C. TANN, PLLC**
7735 N. 78th Street
Scottsdale, AZ 85258
Telephone: (602) 432-4241
josephtann@josephtann.com

*Counsel for Plaintiff Kris Mayes, Attorney General*