

Reed Smith LLP
506 Carnegie Center
Suite 300
Princeton, NJ 08540-7839
+1 609 987 0050
Fax +1 609 951 0824
reedsmith.com

Melissa A. Geist
Direct Phone: +1 609 514 5978
Email: mgeist@reedsmith.com

September 10, 2025

Honorable Leda Dunn Wettre, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut St.
Newark, NJ 07102

Re:   *In re: Insulin Pricing Litigation*, No. 2:23-md-03080-BRM-LDW
MDL No. 3080: Defendants' Reply Letter Brief Regarding State Agency Discovery

Dear Judge Wettre:

The States' response briefs make clear that Arizona, Texas, Indiana, Arkansas, Kentucky, Montana, Oklahoma, and Utah—all of whom are suing on behalf of their governments as a whole—must provide discovery from their State Agencies. Defendants' opening brief explained that these States are flouting well-established case law directing these States to produce such materials, including because these States have "control" of their agencies' documents under Federal Rule of Civil Procedure 34. Defendants detailed multiple admissions from the States confirming the relevance of these agencies and their documents. And Defendants extensively discussed multiple federal decisions that rejected the same blanket arguments advanced by the States here.

In response to those arguments, (1) Arkansas dropped the objections it maintained for the past eight months, agreeing to produce from every Arkansas agency at issue except its Medicaid agency; (2) Texas did not file any response at all, meaning all of Defendants' arguments against Texas are uncontested; (3) Arizona filed a separate response that relitigates the relevance of the Plaintiff Fact Sheet ("PFS") questions that this Court ordered months ago;[1] (4) Indiana recites the same arguments that courts have repeatedly rejected; and (5) multiple states concede they have control over their Medicaid agencies' documents but dispute their relevance.

The Court should reject the States' arguments. The Court has already decided what discovery is relevant for the PFS process, including by overruling the same relevance objections the States attempt to relitigate now. As to control, the States do not give this Court any reason to deviate from numerous federal and state cases ordering these same States to produce agency discovery. Accordingly, Defendants respectfully ask this Court to order Arizona and Texas to produce documents from their agencies, Indiana to produce documents from the Indiana Department of Insurance ("IDOI"), and Arkansas, Kentucky, Montana, Oklahoma, and Utah to

---

[1] The Court allowed Plaintiffs to file a single "omnibus opposition brief." ECF 671. Arizona ignored that order and filed its own brief without seeking leave from the Court or conferring with Defendants. ECF 682.

produce documents from their State Medicaid Agencies.

# ARGUMENT

**I.   ARIZONA MUST PRODUCE DOCUMENTS FROM ITS STATE AGENCIES.**

In response to the Court-ordered PFS, Arizona refuses to provide *any* relevant information, produce a *single* document, or provide discovery on behalf of *any* Arizona State Agency. Defendants argued, and Arizona does not dispute, that (1) the Attorney General regularly represents these State Agencies as its counsel; (2) Arizona law *prohibits* a State Agency from retaining separate counsel; and (3) multiple courts have ordered it to produce discovery from its State Agencies. *See* ECF 659 at 7–9. Rather than engage with any of these arguments, Arizona makes three assertions:

*First*, Arizona argues that the Court-ordered PFS discovery is "irrelevant" because Arizona is "not acting on behalf of any state agency in its capacity as a health insurance payor." ECF 682 at 3. The Court has already overruled this objection and ordered the States to produce documents from State health plans "even if a State or Commonwealth has not sued in its capacity as a health payor." ECF 335 at 3. Arizona is simply violating this Court's clear order.

*Second*, Arizona argues that the "Plaintiff is the Arizona Attorney General," not the State. ECF 682 at 2. That argument is refuted by Arizona's own Complaint, which states "Plaintiff, *the State of Arizona*, brings this action against the above-named Defendants." Ariz. Compl. ¶ 1 (emphasis added); *accord* ECF 659, Ex. 2.

*Third*, Arizona asserts it lacks "control" of its agencies' documents because of the "limits of the AG's authority under the Arizona Constitution" (ECF 682 at 4), ignoring its ***own state's law***, confirming the Attorney General has the requisite control, the Attorney General's routine practice of representing these agencies, the State's admissions that it will likely represent these agencies if they are subpoenaed, and case law rejecting these objections.

   **A.   The Court Has Already Resolved Which State Track Plaintiff Fact Sheet Questions Are Relevant And Overruled Arizona's Objections.**

The Court has *already* decided what questions are relevant; it should reject Arizona's attempt to relitigate the scope of the State PFS. *See* ECF 335 (Order Regarding Fact Sheets); ECF 349 (CMO No. 15), Ex. 1 (State AG PFS). The purpose of the DAO process is for Arizona (and every other State) to "identify for Defendants the 'departments, agencies, or offices within the State or Commonwealth that possess information or documents ***responsive to the PFS***.'" ECF 349 at 2. If a particular state agency has discovery "responsive to the PFS," the only additional question is whether discovery will be provided by the State or if a subpoena will be needed. *Id.* In other words, the DAO process is not an opportunity to relitigate what PFS discovery is relevant, but to identify who has the relevant discovery.

Arizona's relevance and proportionality objections to this discovery are facially improper given the Court has *already overruled them*. During the briefing regarding which questions belong in the PFS, the States objected to providing discovery from their health plans if they were not claiming "damages related to State Health Plans." ECF 319 at 2–7. Defendants responded that

2

the "States' answers would be practically useless if they include only what the attorneys general themselves know and exclude information within the possession of the States." ECF 317 at 8. While disputing the relevance of state health plans, the States did not disagree that the "PFS must encompass information from state agencies," and in fact pointed to "complexities" created by "different agencies and different policies" as "the very reason why [they] have proposed the fact sheet . . . process." *Id.* The Court *rejected* the States' position, finding the States' "health plans are relevant and proportional to the needs of the case, even if a State or Commonwealth has not sued in its capacity as a health payor." ECF 335 at 3. Arizona's own authority reinforces that ruling. *See Colorado v. Warner Chilcott Holdings Co. III, Ltd.*, 2007 WL 9813287, at *2–3 (D.D.C. May 8, 2007) (rejecting Arizona's argument opposing Medicaid agency discovery as irrelevant because it sued "*parens patriae*" and did not "seek damages based on harm to any individual entity such as a Medicaid agency," holding "[i]t is of no moment that Plaintiff States do not represent the Medicaid agencies or allege specific harm to them"). Arizona does not even try to explain how its position is reconcilable with the Court's prior orders.

Moreover, Arizona's own initial disclosures identify at-issue agencies—"the Arizona Department of Health Services," "the Arizona State Retirement System," "the Arizona Department of Administration," "the Arizona Health Care Cost Containment System," and "the Arizona Department of Corrections, Rehabilitation, and Reentry"—as "likely to have discoverable information regarding the allegations specific to Plaintiff in the operative complaint." ECF 659, Ex. 2 at 2–3. Thus, Arizona's assertion that it "responded fully and appropriately to the PFS" is belied by its actual answers. ECF 682 at 1. The following two examples illustrate Arizona's approach to the PFS process:

> **PFS QUESTION 16:** In the form of the table below, for each Health Plan that You [defined to include "the State"] offered that included Prescription Drug Coverage during the Time Period, identify the plan identification number, name, or other plan identifier, program type, and the starting and ending dates for each plan year during the Time Period.
>
> **ARIZONA ANSWER**: This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona. The Office of the Attorney General did not offer Health Plans during the Time Period. Accordingly, the requested information is not applicable.
>
> **PFS QUESTION 21**: If You [the State] implemented any program to lower or cap the out-of-pocket cost of the At-Issue Products, identify whether the program applies to the State's entire beneficiary population or only certain groups, and if only certain groups are covered please identify the groups that are covered.
>
> **ARIZONA ANSWER**: This case was brought by Kris Mayes, Attorney General for the State of Arizona exclusively under Arizona's Consumer Fraud Act seeking relief on behalf of the citizens of Arizona. The Office of the Attorney General did not offer Health Plans, and therefore did not implement any program to lower or cap the out-of-pocket costs of the At-Issue Products during the Time Period. Accordingly, the requested information is not applicable.

ECF 659, Ex. 6 at 9–11. Answers like these do not "provide substantive information as to … the parties' respective claims and defenses" and fail to "efficiently move these matters to their next stages and aid the early definition of the issues presented." ECF 278 at 3.

Arizona and other State AGs advocated for a PFS process instead of typical Federal Rules discovery, claiming "a single [PFS] response, with an accompanying document production for each Plaintiff, will satisfy the core discovery needs of all Defendants." ECF 168 at 7. Arizona's gamesmanship—advocating for a PFS process, and then claiming none of the PFS questions apply to it—should be squarely rejected.

B.   The Plaintiff In This Case Is "The State Of Arizona."

Arizona tells the Court that "the Plaintiff is the Arizona Attorney General," not the State; "the AG's Complaint does not advance any claim on behalf of the state"; and Defendants are "wrong" that the "AG filed a claim on behalf of Arizona." ECF 682 at 1–4. That argument cannot be squared with Arizona's own allegations and representations in this case. *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 211 n.20 (3d Cir. 2006) (noting that statements "in pleadings or briefs" "bind the party who makes them" (collecting cases)); *O'Neil v. Four States Builders & Remodelers, Inc.*, 484 F. Supp. 18, 20 (E.D. Pa. 1979) ("[P]leadings are deemed conclusive.").

Arizona's Complaint begins: "Plaintiff, *the State of Arizona*, brings this action against the above-named Defendants." Ariz. Compl. ¶ 1 (emphasis added). The Complaint defines the "Plaintiff" as follows: "Plaintiff, *the State of Arizona*, [which] is a body politic created by the Constitution and laws of the State." *Id.* ¶ 35 (emphasis added). The Complaint represents that "[t]*his action is brought by the State*, by and through Kris Mayes, Attorney General of the State of Arizona, *in its sovereign capacity*, in order *to protect the interests of the State* and its citizens." *Id.* (emphasis added). Arizona's initial disclosures similarly state that they are on behalf of "*Plaintiff* State of Arizona." ECF 659, Ex. 2 at 2 (emphasis added).

Arizona also repeatedly alleges that it is asserting claims on behalf of the State as a "payor"—meaning the State itself allegedly "has been overcharged." Arizona Compl. ¶ 284; *accord id.* ¶¶ 44, 80, 164 ("Lilly published its prices for the at-issue diabetes medications throughout Arizona with the express knowledge that payment and reimbursement by consumers, *including payors like Plaintiff*, would be based on those artificially inflated list prices"; "CVS Pharmacy provided retail pharmacy services … that gave rise to and implemented the Insulin Pricing Scheme, which damaged consumers, *including payors like Plaintiff*"; "OptumRX, Inc. … implemented the Insulin Pricing Scheme, which damaged payors, *including Plaintiff*, and the public" (emphases added)). Arizona's initial disclosures repeatedly refer to health plans sponsored by "*Plaintiff*" and "purchases of at-issue medications by Plaintiff and/or *Plaintiff's* plan beneficiaries." ECF 659, Ex. 2 at 3 (emphases added). Although Arizona's brief tries to draw a distinction between claims on behalf of "Arizona's citizens" and "the State" (ECF 682 at 3), Arizona's own complaint rejects that distinction: "During the relevant period, consumers in Arizona, *including payors like the State*, purchased Sanofi's at-issue drugs at prices based on artificially inflated list prices[.]" Ariz. Compl. ¶ 55 (emphasis added). Defendants cited much of this language in their opening brief. *See* ECF 659 at 7. Arizona offers no response to it at all.

Thus, when the PFS uses the definition of "You," Arizona's own statements confirm it

4

means "Plaintiff, the State of Arizona." ECF 349, Ex. 1 at 3. That is how nearly every other State has responded to and interpreted the PFS.

### C. Arizona Has Control Over Its State Agencies' Documents.

Arizona provides no response to the authority Defendants cited showing that Arizona has "control" of its State Agencies under Rule 34 when bringing claims like the ones here. *See, e.g.*, *In re Generic Pharms. Pricing Antitrust Litig.* ("*Generic Pharms. I*"), 571 F. Supp. 3d 406, 410 (E.D. Pa. 2021); *In re Generic Pharms. Pricing Antitrust Litig.* ("*Generic Pharms. II*"), 699 F. Supp. 3d 352, 357 (E.D. Pa. 2023). Instead, Arizona's brief rehashes the same arguments that courts have rejected, and asserts that Defendants should individually subpoena each agency and then "litigate[] the relevance [of] those non-party agencies"—who would be represented by the Arizona Attorney General in those disputes. ECF 682 at 2. Arizona's approach would only serve to "squander[] time, effort and resources." *Id.*

For example, Arizona concedes that "the Attorney General serves as 'the legal advisor of the departments of [Arizona] and [shall] render such legal services as the departments require.'" ECF 682 at 4 (emphasis omitted). But, at the same time, Arizona argues that "nothing in the statute (or any other Arizona statute) authorizes the Attorney General to compel document collection or production from agencies who have not required its services." *Id.* As *Generic Pharms. II* held when rejecting that very argument, "here the claim is pursued on behalf of the State of Arizona, and with certain exceptions not apparently relevant here, the AGO provides legal representation and legal services both to the State of Arizona and to state agencies. Arizona has identified no provision of law that would prohibit the AGO from obtaining documents from state agencies in the course of prosecuting a lawsuit on behalf of the State." 699 F. Supp. 3d at 357–58. An Arizona federal court reached the same conclusion, finding that defendants who were represented by the Attorney General were obligated to produce state-agency records from the Department of Corrections. *Osborn v. Bartos*, 2010 WL 3809847, at *14 (D. Ariz. Sept. 20, 2010). In fact, under state law, Arizona agencies "shall" use the Attorney General as counsel, as opposed to "employ[ing] legal counsel," unless a statute expressly authorizes otherwise. *See* Ariz. Rev. Stat. Ann. § 41-192(D)(1)-(11).

Even if such an Arizona state-law prohibition did exist, "some state law, regulation or policy [that] prohibited the voluntary release of the requested information . . . does not amount to a privilege avoiding compliance with the discovery processes of a Federal court." *Osborn*, 2010 WL 3809847, at *15. This is because "discovery … is procedural, so federal law applies." *Fagin v. Gilmartin*, 432 F.3d 276, 285 n.2 (3d Cir. 2005); *see also Passmore v. Baylor Health Care Sys.*, 823 F.3d 292, 298 (5th Cir. 2016) ("[E]xcept for matters of privilege and Rule 69 discovery in aid of execution, it is 'wholly settled that discovery in a federal court is governed only by [the Federal Rules of Civil Procedure] and that state discovery practices are irrelevant.'" (citation omitted)). Here, Arizona regularly represents these state agencies—indeed, it does so by default if they are served with a subpoena—which "establishes a sufficient 'practical ability to obtain documents'" to establish control under Rule 34. *See, e.g.*, *Clark v. McDonough*, 2024 WL 2701611, at *5 (W.D. Pa. May 24, 2024); *Love v. N.J. Dep't of Corr.*, 2017 WL 3477864, at *6 (D.N.J. Aug. 11, 2017); ECF 650 n.7 (collecting cases in which Arizona Attorney General is counsel to these state agencies).

Arizona also argues that each state agency is "separate and distinct" under state law, relying on *United States v. American Express Co.*, 2011 WL 13073683, at *2 (E.D.N.Y. July 29, 2011).[2] But "[g]eneral arguments regarding a possible conflict between the AGO and the governor of a State with authority over state agencies are not sufficient, particularly when state agencies 'undoubtedly hold many relevant documents and stand to benefit from the Attorney General's success in the case.'" *Generic Pharms. II*, 699 F. Supp. 3d at 357. The same is true of Arizona's reliance on *Warner*, which focuses generally on whether state agencies qualify as a "party" by looking at the "relationship between [the] Attorney General and Governor," not whether a party has "control" under the Federal Rules. 2007 WL 9813287 at *4. Comity-based arguments do not dictate the outcome of this discovery dispute either. *See, e.g.*, *In re PersonalWeb Tech., LLC Patent Litig.*, 2022 WL 19833889, at *1 (N.D. Cal. Apr. 12, 2022) ("It is settled law that state courts have no authority to bar—by injunction or otherwise—the prosecution of in personam actions in federal courts." (citation omitted)).

Defendants have not found (and Arizona does not cite) any Arizona state law holding that Arizona does not exercise control over its agencies. Moreover, Arizona's own statements suggest an attorney-client relationship presently exists with the State Agencies. Arizona's initial disclosures listed "employees and former employees" who were likely to have discoverable information and said "[t]hese individuals should be contacted through Plaintiff's counsel." ECF 659, Ex. 2 at 3–4. These "employees" include employees of the Arizona Department of Health Services, Arizona State Retirement System, Arizona Department of Administration, Arizona Health Care Cost Containment System, and the Arizona Department of Corrections, Rehabilitation, and Reentry. *Id.* at 4. In the absence of an attorney-client relationship between the Arizona Attorney General and those State Agency representatives, the Attorney General's Office would have no basis to request Defendants only contact them through "Plaintiff's counsel."

Arizona claims to invoke a "wealth of federal case law" involving states other than Arizona. ECF 682 at 5–6 (citing *Illinois ex rel. Raoul v. Monsanto Co.*, 2023 WL 4083934, at *5 (N.D. Ill. June 20, 2023) (Illinois law); *In re Gold King Mine Release*, 2021 WL 847971, at *1 (D.N.M. Mar. 5, 2021) (New Mexico law); *In re Jointly Managed R.S. 2477 Road Cases Litig. v. United States*, 2018 WL 2172934, at *2 (D. Utah May 10, 2018) (Utah law); *United States v. Novartis Pharms. Corp.*, 2014 WL 6655703, at *9 (S.D.N.Y. Nov. 24, 2014) (11 states' laws not including Arizona); *New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259, 264 (N.D.N.Y. 2006) (New York law)). The Court has already concluded that the relevant inquiry here requires an "individualized, state-by-state" assessment. ECF 335 at 2. Regardless, multiple courts—including this Court in *State of Minnesota v. Sanofi-Aventis U.S. LLC et al.*, No. 2:22-cv-01946, ECF 45 at 16 (D.N.J. July 29, 2022)—have ordered states to produce discovery from their agencies. *See* ECF 659 at 4 n.4 (collecting cases). That includes another district court in this Circuit that has ordered Arizona to produce documents from its own agencies. *Generic Pharms. II*, 699 F. Supp. 3d at 357–58. The Ninth Circuit's recent decision in *Social Media* does not lead to

---

[2] *American Express* does not address that all but one of the Arizona Agencies at issue here are statutorily barred from engaging legal counsel other than the Arizona Attorney General. *See* Ariz. Rev. Stat. Ann. § 41-192(D). Other courts also reject *American Express*'s analysis and conclusions. *See Monsanto Co.*, 2023 WL 4083934 at *6; *State v. Purdue Pharma, L.P.*, 2020 WL 13566522, at *2 (D.N.M. July 22, 2020); *Washington v. GEO Grp., Inc.*, 2018 WL 9457998, at *3 (W.D. Wash. Oct. 2, 2018).

a different result.³ The court in *Social Media* granted Arizona mandamus, but it rejected "the view that a state attorney general *never* has control over the documents of a nonparty state agency," and instead encouraged a state-by-state analysis, including whether there is "an affirmative showing that an attorney-client relationship presently exists" between the State Attorney General and the agency. 2025 WL 2427608 at *2 n.3; *accord id.* at *3 (denying relief as to Pennsylvania, which "explicitly grants [the Pennsylvania AG's] office control over the documents of nonparty state agencies"). Arizona's own disclosures in this case demonstrate such a relationship exists here.

In sum, as the party that filed this litigation, Arizona is obligated to produce discovery, including on behalf of its State Agencies.

## II. IT IS UNDISPUTED THAT TEXAS MUST PRODUCE DOCUMENTS FROM ITS STATE AGENCIES.

Texas failed to file any response to Defendants' motion.⁴ Thus, Texas does not dispute that "[t]he State of Texas is the sole Plaintiff in this action," which means that "discovery addressed to the State of [Texas] includes its agencies." Tex. Compl. ¶ 47; *GEO Grp., Inc.,* 2018 WL 9457998 at *3. Texas does not contest that the Attorney General serves as these agencies' legal counsel in the ordinary course, it has admitted its control over their documents in other filings, and courts have repeatedly compelled Texas to produce discovery from these agencies. ECF 659 at 12–13; *League of United Latin Am. Citizens v. Abbott*, 2022 WL 1540589, at *3 (W.D. Tex. May 16, 2022); *Perez v. Perry*, 2014 WL 1796661, at *2 (W.D. Tex. May 6, 2014); *Hill v. Texas Water Quality Bd.*, 568 S.W.2d 738, 741 (Tex. Civ. App. 1978).⁵ By failing to respond, Texas has waived any argument that it does not control its state agencies' documents. *See Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) (upholding district court's refusal to consider argument waived by plaintiff who "had ample opportunity to make this argument in response to defendants' motion to dismiss and failed to do so").

Accordingly, it is uncontested that the Court should compel Texas to produce responsive documents and information on behalf of the (i) Department of Criminal Justice, (ii) Juvenile Justice Department, (iii) Health and Human Services Commission, including the Health and Human Services Commission Comprehensive Health Insurance Plan (Medicaid), (iv) State Board of Pharmacy, (v) Department of Insurance, (vi) State Auditor's Office, (vii) Comptroller of Public Accounts, (viii) Teacher Retirement System, (ix) Employee Retirement System, (x) Emergency

---

³ Defendants' opening brief cited *In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, 2024 WL 4125618 (N.D. Cal. Sept. 6, 2024) and 2025 WL 1179370 (N.D. Cal. Mar. 6, 2025) (together, "*Social Media*") as one of many cases supporting the proposition that State Attorneys General have control over their respective state agencies. *See generally* ECF 659. After the States filed their opposition, the Ninth Circuit issued an unpublished opinion reversing those decisions in part—largely focusing on California law, but including Arizona within the scope of its mandamus relief without any discussion specific to Arizona. *In re People of the State of California*, No. 25-584, 2025 WL 2427608 (9th Cir. Aug. 22, 2025) (slip op.).

⁴ Texas's response was due August 6. Instead of meeting that deadline, Texas asserted that it would file one week late—again, without seeking leave from the Court or conferring with Defendants. ECF 683 at 1 n.1. Regardless, that deadline came and went without any filing from Texas. On August 8, counsel for Texas contacted Defendants to schedule a meet and confer regarding "an amendment" to Texas' complaint, but later cancelled that meeting less than two hours before that meeting was set to begin. Texas has not contacted Defendants to reschedule.

⁵ Texas was not one of the states at issue in *Social Media*, so the Ninth Circuit's decision has no bearing on Texas.

Services Retirement System, (xi) the University of Texas Medical Branch, and (xii) the Texas Attorney General's Office.

### III. THE COURT SHOULD COMPEL INDIANA TO PRODUCE RESPONSIVE INFORMATION AND DOCUMENTS FROM ITS INSURANCE DEPARTMENT.

Indiana has control over its insurance department (IDOI), which is responsible for PBM "regulatory insurance matters" under Indiana law. *See* ECF 659 at 13–14; ECF 659, Ex. 14 at 2. Although Indiana opposes discovery from this agency, it does not cite a ***single*** case in support of its contrary interpretation of Indiana law.

***First***, Indiana argues that "Defendants have failed to identify any relevant relationship between the [IDOI] and the State's lawsuit." ECF 683 at 2. As shown in Defendants' opening brief (*see* ECF 659 at 13–14), Indiana has already conceded IDOI's relevance: Indiana's sworn PFS response states that IDOI has "knowledge or responsibility over functions related to the allegations in [its] Complaint," specifically "[s]tatutory responsibilities for PBMs pursuant to Indiana Code § 27-1-24.5 *et seq*." Ex. 1, Excerpt of 2/19/2025 Ind. PFS Resp., Question No. 13 at 7–8. Indiana fails to respond to this argument.

***Second***, although Indiana acknowledges that IDOI may not employ outside counsel without the Attorney General's written consent under Indiana Code § 4-6-5-3, it argues that this statute "does not require the Attorney General to be that outside counsel" in all instances. ECF 683 at 2. However, the Indiana Supreme Court has made clear that "the Attorney General [has] ***exclusive power*** to both represent and direct litigation strategy for state agencies and the state." *Holcomb v. Bray*, 187 N.E.3d 1268, 1288 (Ind. 2022) (emphasis added) (citing Ind. Code §§ 4-6-2-1(a), 4-6-3-2(a), 4-6-5-3(a)). In light of that holding, it is clear that Indiana must provide documents from its agencies (including IDOI) when bringing claims like these. *See, e.g.*, *Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*, 2012 WL 6003540, at *3 (W.D. Tenn. Nov. 30, 2012) (finding legal control based on AG's "statutory duties to handle 'all legal services,' 'direct and supervise' all litigation, and 'represent' the State of Tennessee," and the absence of any authority denying the AG the ability to "obtain responsive documents on demand").[6]

***Third***, Indiana asserts that its civil investigative demand statute, which allows the Attorney General to issue a demand to "a state or local agency," would not be necessary if the Attorney General had "on demand access to any agency document at any time." ECF 683 at 2 (citing Ind. Code § 4-6-3-3). But that statute does not provide that issuing civil investigative demands to agencies is the *only* way in which the Indiana Attorney General can obtain documents or information from state agencies. For example, the Attorney General has the "sole right and power"

---

[6] While the Ninth Circuit's unpublished *Social Media* decision also included Indiana within the scope of its mandamus relief, it also failed to include any discussion specific to Indiana. 2025 WL 2427608 at *3. The court encouraged state-by-state analysis, including whether there is "an affirmative showing that an attorney-client relationship presently exists" between the State Attorney General and the agency, which reinforces Defendants' position here. *Id.* at *2. An individualized assessment of the State's law here indicates that "an attorney-client relationship presently exists" between the State Attorney General and the agency. *Id.* Defendants have not found (and Indiana does not cite) any Indiana state law holding that Indiana does not exercise control over its agencies. In fact, Indiana does not dispute that it regularly represents IDOI and "would likely" exercise the same authority here if IDOI received a subpoena. ECF 659, Ex. 14 at 2. Indiana cannot credibly maintain it does not know if it would represent the IDOI when it has the exclusive power to make that decision.

to assign a deputy "under the direction and control of the attorney-general" "to any agency." Ind. Code §§ 4-6-5-1 to -2. Nor does this statute detract from the Attorney General's general authority as "the State's law firm." Ind. Att'y Gen., *About the Office*, https://www.in.gov/attorneygeneral/about-the-office/.

In short, this Court should hold that Indiana has control over documents at IDOI and order Indiana to provide this discovery.[7]

## IV. THE COURT ALREADY RULED THAT STATE MEDICAID AGENCY INFORMATION IS RELEVANT AND DISCOVERABLE.

Arkansas, Kentucky, Montana, Oklahoma, and Utah do not dispute that they have control over their State Medicaid agencies. *See* ECF 683 at 1. Instead, they object to this discovery on the grounds of "relevance and proportionality." *Id.* The Court should reject those arguments.

***First***, the Court ordered several PFS questions about State Medicaid Agencies, resolving their relevance to the PFS process. *See, e.g.*, ECF 349, Ex. 1 at 9 (requesting information relating to claims and recoveries relating to State Medicaid Programs). To the extent those State Medicaid Plans "administer Prescription Drug Coverage" for a "Health Plan" in the State, they have responsive discovery to multiple PFS questions. *Id.* at 6. The PFS also requests documents that implicate information held by State Medicaid Agencies. Document Request 6 requires the States to produce documents received by "You or Your Health Plan that reflect or relate to representations made by PBMs about their services or made by pharmaceutical manufacturers about their list prices." *Id.* at 16. Request No. 8 seeks documents "relating to any study or analysis conducted or commissioned by You … that relates to your population of diabetic *citizens* or considers whether consumers should pay for insulin, and if so, how much consumers should pay." *Id.* Both of these Court-ordered requests contemplate documents maintained by State Medicaid Agencies.

The States argue that "the PFS makes plain that Medicaid responses are required only where Medicaid ***claims*** are at issue." ECF 683 at 1. This is wrong. Questions 27 and 28 are prefaced, "[i]f You assert Medicaid claims…." ECF 349, Ex. 1 at 9. Questions 29 through 31 do not contain that qualifier. *Id.* Instead, for example, Question 29 asks, "[a]re You asserting claims ***or seeking recoveries relating in any way*** to Medicaid benefits that are offered, administered, and/or funded [by] your State?" *Id.* at 9–10 (emphasis added). Question 30 asks "[i]f You answered yes to Question No. 29, identify every Pharmacy Benefit Manager and other third-party administrator used by your State Medicaid program" and to provide relevant information. *Id.* So, while the States may not bring Medicaid *claims*, because they seek *recoveries* that relate directly to their administration of Medicaid benefits, information responsive to those questions is relevant.

***Second***, none of these States have disclaimed that they are suing on behalf of their citizens on Medicaid. Discovery into State Medicaid programs is directly relevant to the Medicaid consumers on whose behalf the States are suing, regardless of whether the State is also seeking the funds paid by the State Medicaid Agency as damages. Moreover, whether the States receive rebates for insulin through the Medicaid programs is highly relevant to the States' claims regarding

---

[7] Contrary to Indiana's suggestion, Defendants have only sought relief here regarding the narrow issue of Indiana's control over IDOI's documents. The parties are continuing to meet and confer regarding Indiana's substantive responses to the PFS, which are not yet ripe for the Court's consideration.

whether the payment of rebates or the difference between list prices and post-rebate net prices violates state law. The States also allege that they made purchases "in reliance on misrepresentations made by Defendants," which means that there is no question that "the discovery sought by Defendants is relevant to the asserted claims and related defenses." *Generic Pharms. I*, 571 F. Supp. 3d at 410.

## V. CONCLUSION

Plaintiffs are obligated to "provide substantive information as to … the parties' respective claims and defenses" to "efficiently move these matters to their next stages and aid the early definition of the issues presented." ECF 278 at 3. Accordingly, Defendants respectfully request that the Court order each State at issue—Arizona, Arkansas, Indiana, Kentucky, Montana, Oklahoma, Texas, and Utah—to respond to discovery on behalf of the State Agencies discussed above.

Dated: September 10, 2025

Respectfully submitted,

/s/ Brian W. Carroll

**McCARTER & ENGLISH, LLP**
Brian W. Carroll
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
(973) 639-2020

**DAVIS POLK & WARDWELL LLP**
James P. Rouhandeh (*pro hac vice*)
David B. Toscano (*pro hac vice*)
450 Lexington Ave.
New York, NY 10017
(212) 450-4000

**DAVIS POLK & WARDWELL LLP**
Neal A. Potischman (*pro hac vice*)
Andrew Yaphe (*pro hac vice*)
900 Middlefield Road
Redwood, CA 94063
(650) 752-2000

*Attorneys for Defendant Novo Nordisk Inc.*

/s/ Liza M. Walsh

**WALSH PIZZI O'REILLY FALANGA LLP**
Liza M. Walsh
Katelyn O'Reilly
Selina M. Ellis
Lauren R. Malakoff
Three Gateway Center
100 Mulberry St., 15th Floor
Newark, NJ 07102
(973) 757-1100

**JONES DAY**
Michael R. Shumaker (*pro hac vice*)
Julie E. McEvoy (*pro hac vice*)
William D. Coglianese (*pro hac vice*)
Theresa C. Martin (*pro hac vice*)
Melissa Lim Patterson (*pro hac vice*)
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939

*Attorneys for Defendant Sanofi-Aventis U.S. LLC*

/s/ Jason R. Scherr

**MORGAN, LEWIS & BOCKIUS LLP**
Jason R. Scherr
Elise M. Attridge
Lindsey T. Levy
1111 Pennsylvania Ave., NW
Washington, DC 20004
(202) 739-3000

*Attorneys for Defendants Express Scripts, Inc.; Express Scripts Administrators, LLC; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; and Medco Health Solutions, Inc.*

/s/ Melissa A. Geist

**REED SMITH LLP**
Melissa A. Geist
Julia A. López
506 Carnegie Center, Ste. 300
Princeton, NJ 08540
(609) 514-5978

**KIRKLAND & ELLIS LLP**
James F. Hurst (*pro hac vice*)
Andrew A. Kassof (*pro hac vice*)
Diana M. Watral (*pro hac vice*)
Ryan Moorman (*pro hac vice*)
Jason A. Feld (*pro hac vice*)
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000

*Attorneys for Defendant Eli Lilly and Co.*

11

<table>
<tr><td>

*/s/ Brian D. Boone*
**O'TOOLE SCRIVO, LLC**
Thomas P. Scrivo
Young Yu
14 Village Park Road
Cedar Grove, NJ 07009
(973) 239-5700

**ALSTON & BIRD LLP**
Brian D. Boone
1120 S. Tyron St., Ste. 300
Charlotte, NC 28203
(704) 444-1000

**ALSTON & BIRD LLP**
Elizabeth Broadway Brown
1201 W. Peachtree St. NW, Ste. 4900
Atlanta, GA 30309
(404) 881-7000

**ALSTON & BIRD LLP**
Kelley Connolly Barnaby
950 F. Street, NW
Washington, D.C. 20004
(202) 239-3300

*Attorneys for Defendant OptumRx, Inc.*

</td><td>

*/s/ Benjamin Hazelwood*
**MARINO, TORTORELLA & BOYLE, P.C.**
Kevin H. Marino
John D. Tortorella
437 Southern Blvd.
Chatham, NJ 07928
(973) 824-9300

**WILLIAMS & CONNOLLY LLP**
Enu Mainigi
Craig Singer
R. Kennon Poteat III
A. Joshua Podoll
Benjamin Hazelwood
Daniel Dockery
680 Maine Ave., S.W.
Washington, DC 20024
(202) 434-5000

*Attorneys for Defendants CVS Pharmacy, Inc.; Caremark Rx, LLC; Caremark LLC; CaremarkPCS Health, LLC; and Caremark, LLC*

</td></tr>
</table>