**SeegerWeiss LLP**
NEW YORK • NEW JERSEY • PHILADELPHIA

September 18, 2025

**VIA ECF**

Honorable Brian R. Martinotti, U.S.D.J.
United States District Court
District of New Jersey
U.S. Post Office & Courthouse
2 Federal Square
Newark, NJ 07102

   Re: *In re Insulin Pricing Litigation*, MDL No. 3080
      Case No. 2:23-md-03080-BRM-LDW (D.N.J.)

Dear Judge Martinotti:

  We write on behalf of Plaintiffs Albany County, Lake County, and King County (collectively, "Plaintiffs"), pursuant to the Court's pre-motion filing requirements in CMO #5 [ECF No. 127], to respectfully request leave to seek reconsideration of the Court's September 5, 2025 Orders [ECF No. 730, 732] and accompanying Opinions [ECF No. 729, 731] to the extent they (i) held that Plaintiffs are "indirect purchasers" with respect to the PBM Defendants and (ii) dismissed, on that basis, Plaintiffs' civil RICO, RICO-conspiracy, and Washington state-law claims (WCPA and unjust enrichment). This request is timely under Local Civil Rule 7.1(i) and, under Section IV.6 of CMO #5, tolls the applicable motion deadline pending the Court's disposition of this request.

  The Court should grant Plaintiffs' request for leave because the Local Rules expressly provide for such motions under these circumstances. Local Civil Rule 7.1(i) allows a party to seek reconsideration of a court's decision if there are "matter[s] or controlling decisions which the party believes the Judge . . . has overlooked." *Rahimi v. Zydus Pharms. (USA) Inc.*, 2018 WL 515943, at *1 (D.N.J. Jan. 23, 2018) (quoting L. Civ. R. 7.1(i)). The Court has broad discretion to reconsider an order "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence that was previously unavailable; or (3) to correct a clear error of law or to prevent manifest injustice." *Copeland v. Poliquin Performance Ctr. 2, LLC*, 2021 WL 1207728, at *3 (D.N.J. Mar. 30, 2021).

  Plaintiffs meet the standard for reconsideration under Local Civil Rule 7.1(i) here because binding precedent dictates that Plaintiffs (as self-funded plan sponsors) are, in fact, "direct purchasers" from the PBM Defendants. The actual relationship between Plaintiffs and the PBM Defendants stands in sharp contrast to the indirect, transactional arrangement described in the Court's rulings. Far from being an indirect arrangement, Plaintiffs maintain a direct relationship with their PBMs, who actively solicit Plaintiffs' business and purport to provide a comprehensive suite of pharmacy-benefit-management services tailored to Plaintiffs' needs—including negotiating with manufacturers to minimize Plaintiffs' prescription drug costs, formulary administration, and pharmacy network contracting. And because Plaintiffs maintain self-funded

plans, they do not rely on third-party insurers to pay for their beneficiaries' prescription drugs. Rather, Plaintiffs directly contract with—and directly pay—the PBM Defendants for their members' prescription drugs, making them the only class of plaintiffs who can hold the PBMs accountable for their RICO violations. In light of these circumstances, reconsideration is warranted for several reasons.

First, *Apple Inc. v. Pepper*, 587 U.S. 273 (2019), and *Howard Hess Dental Laboratories, Inc. v. Dentsply International, Inc.*, 424 F.3d 363 (3d Cir. 2005), establish that courts must follow the money and focus on who pays the alleged overcharge directly to the relevant RICO-violating defendant. As the Supreme Court put it in *Apple*, the direct purchaser is the party that "pa[id] the alleged overcharge directly" to the relevant defendant. *Apple*, 587 U.S. at 281. And in the Third Circuit, "[w]hen determining whether a plaintiff and defendant are involved in a direct purchaser/seller relationship, courts look to the 'economic substance of the transaction,' rather than . . . the geographical movement of goods." *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 34 F. Supp. 3d 465, 500 (D.N.J. 2014) (quoting *Howard Hess*, 424 F.3d at 373).

In other words, the indirect-purchaser analysis turns on *payment flow*, not product distribution. And here, Plaintiffs *directly* pay the PBM Defendants for the at-issue drugs. While the drugs themselves move through a physical distribution chain from manufacturer to wholesaler to pharmacy to patient, the relevant payment chain flows directly from *Plaintiffs to their PBMs*. *See, e.g.*, Albany Second Am. Compl., ECF No. 158-3 at Ex. A-2 (PBM contract providing that Albany would "pay . . . [Express Scripts] for each Prescription Drug Claim"). This direct flow of funds from Plaintiffs to the PBMs is the "economic substance of the transaction" that governs the indirect-purchaser analysis under Supreme Court and Third Circuit precedent.

Additionally, beyond paying the PBM Defendants for their members' prescription drugs, Plaintiffs also pay PBMs directly for artificially inflated "dispensing fees," "administrative fees," "transaction fees," and so on—payments that *independently* establish direct-purchaser status regardless of payments for prescription drugs. These payments are also the subject of Plaintiffs' viable RICO claims.

Second, the Court's primary reliance on the Third Circuit's unpublished decision in *Humana, Inc. v. Indivior, Inc.*, 2022 WL 17718342 (3d Cir. Dec. 15, 2022), was misplaced. In *Humana*, insurance companies sued *drug manufacturers* under RICO for obstructing FDA approval and the public's use of a generic drug. In *Humana*, however, the insurers conceded in their complaints that they were "indirect purchasers" and that intermediaries—"wholesalers and retailers"—stood between them and the manufacturers and passed on alleged overcharges. Under those circumstances, the Third Circuit unsurprisingly held that the insurers were "textbook" indirect purchasers. Here, by contrast, no intermediaries stand between Plaintiffs and their PBMs. Plaintiffs pay the PBMs directly for prescription drugs and PBM services, establishing the direct relationship that *Humana* lacked.

Plaintiffs' occasional use of "reimbursement" terminology does not alter this analysis. The Third Circuit's published decision in *Pennsylvania Dental Ass'n v. Medical Service Ass'n of Pennsylvania*, 815 F.2d 270, 276 (3d Cir. 1987), confirms that insurers like Plaintiffs who pay directly—even if characterized as "reimbursement[s]" paid "on behalf of" members—suffer direct

injuries and have standing. Other courts have reached the same conclusion: insurers who directly pay a defendant for their plan members' healthcare costs are direct purchasers. *See, e.g.*, *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1414 (7th Cir. 1995) (Posner, J.) (holding that an insurer was a direct purchaser where the "money went directly from Blue Cross to the Clinic"); *City of Miami v. Eli Lilly & Co.*, 2022 WL 198028 (S.D. Fla. Jan. 21, 2022) (rejecting the same argument made by PBM Defendants here that the City of Miami was an indirect purchaser of insulin simply because the City, "in its capacity as a self-funded health plan, *reimburse[d]* others for the medications") (emphasis added). Other cases hold the same.

Third, there has been an intervening change in controlling law. After motion-to-dismiss briefing concluded, the Supreme Court decided *Medical Marijuana, Inc. v. Horn*, 604 U.S. 593 (2025), which clarified that antitrust-specific standing limitations do not govern civil RICO claims. Instead, RICO requires only business or property harm proximately caused by predicate acts. *Id.* at 693. The decision in *Horn* confirmed that antitrust law and RICO are not "interchangeable," *id.*, thus undermining the application of *Illinois Brick*-style limitations to categorically bar RICO claims. This intervening change in controlling law independently warrants reconsideration of this Court's decision.

Finally, manifest injustice would result if Plaintiffs were treated as indirect purchasers with respect to their PBMs. Such a ruling insulates PBMs from civil RICO and federal antitrust liability even though Plaintiffs are the *only* entities that pay the PBMs directly for covered prescriptions and the PBM fees alleged to be inflated by the scheme. No other plaintiff class can recover those overcharges from the PBMs, creating a liability gap that undermines *Apple*'s and *Illinois Brick*'s policies of encouraging vigorous private enforcement. In short, if Plaintiffs were barred from suing the PBMs as indirect purchasers, the PBMs would be left free to violate federal antitrust and RICO laws with impunity.

In sum, good cause exists to grant leave for Plaintiffs to seek reconsideration. The issue presented is narrow and dispositive, as it concerns the application of the indirect-purchaser rule to Plaintiffs' claims against the PBM Defendants, and is grounded in controlling precedent that Plaintiffs respectfully submit was overlooked. Prompt resolution of this legal question also may impact the scope of this MDL, shape discovery and expert work, and avoid the need for interlocutory appeal. Moreover, Defendants will suffer no prejudice from targeted reconsideration on a discrete legal issue.

Accordingly, leave to seek reconsideration under Local Civil Rule 7.1(i) is warranted and respectfully requested.

We appreciate the Court's consideration of this request.

Respectfully submitted,

*s/ David R. Buchanan*

David R. Buchanan

cc:   All Counsel of Record (*via* ECF)