UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**Chambers of**
**Leda Dunn Wettre**
United States Magistrate Judge

Martin Luther King Federal Building
& U.S. Courthouse
50 Walnut Street
Newark, NJ 07101
(973) 645-3574

November 14, 2025

To:   All counsel of record

**LETTER ORDER – PUBLIC REDACTED VERSION (SEALED MATERIALS REDACTED)**

Re:   *In Re: Insulin Pricing Litigation,*
      MDL No. 23-md-3080 (BRM) (LDW)

Dear Counsel:

Before the Court is the MDL Plaintiffs'[1] ("plaintiffs") motion to compel responses to a subpoena they caused to be served on non-party Compass Lexecon (the "Subpoena"). (ECF 522, 610). Compass Lexecon and the Pharmacy Benefit Manager defendants ("PBM Defendants") oppose the motion.[2] (ECF 594, 596, 597). For the reasons set forth below, plaintiffs' motion to compel is **DENIED without prejudice.**

## BACKGROUND

The Subpoena demands from Compass Lexecon, an economic consulting firm, production of documents underlying a July 19, 2024 report authored by Compass Lexecon consultant Dr. Dennis Carlton, entitled "PBMs and Prescription Drug Distribution: An Economic Analysis of Criticisms Levied Against Pharmacy Benefit Managers." (Subpoena, Exh. A at 1, ECF 522-3)[3]

---

[1]   The "MDL Plaintiffs" are the State Attorney General Track Plaintiffs, the Class Action Track Plaintiffs (23-CV-20932), and the Self-Funded Payer Track Plaintiffs. (*See* ECF 522-1 at 1, n.2).

[2]   The PBM Defendants are Optum Rx, Inc.; CVS Health Corporation; Caremark Rx, LLC; CaremarkPCS Health, LLC; Caremark, LLC; Zinc Health Services, LLC; Evernorth Health, Inc.; Express Scripts, Inc.; Express Scripts Administrators, LLC; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; Medco Health Solutions, Inc.; Ascent Health Services LLC; and the Cigna Group. (*See* ECF 596).

[3]   Because the ECF page numbers in the banner of the document are illegible, the Court refers to the page numbers of the Subpoena itself and its respective exhibits.

("Carlton Report"). The Carlton Report was not issued in connection with this litigation, but rather in apparent response to a Federal Trade Commission ("FTC") study evaluating "whether and how PBMs contribute to competitive distortions in pharmaceutical markets." (ECF 596-2 at 2).

The FTC commenced its study of the PBMs' practices in June 2022, exercising its authority under Section 6(b) of the FTC Act. (*See* ECF 596-2 at 2). At least partially in response to that FTC initiative, the PBM Defendants, through their outside counsel, retained Compass Lexecon as a consultant.[4] (*See* ECF 594 at 3; 596 at 4). The purpose of the retention, according to the May 18, 2023 retainer letter between counsel and Compass Lexecon, was for the latter to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" (ECF 627 at 2). Compass Lexecon's work was to "▓▓▓▓▓▓▓▓" and was contemplated to potentially include "▓▓▓▓▓▓▓▓" and "▓▓▓▓▓▓▓▓" (*Id.*). The retainer letter also specified that counsel ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and that Compass Lexecon would "▓▓▓▓▓▓▓▓" (*Id.* at 3).

Ultimately, the Carlton Report was made available on a public website in the late summer or early fall of 2024. (*See* ECF 522-1 at 5). The report analyzed concerns, including those expressed by the FTC, that "PBMs contribute to the increasing costs of prescription drugs." (Carlton Report, ECF 522-11 at 7). The prescription drugs examined in the report were not limited to the diabetes medications at issue in this MDL but went substantially beyond them to other drugs. (*See id.*; ECF 596 at 4–5). In drafting the report, Carlton relied on data the PBMs had provided the FTC in response to its Rule 6(b) inquiry, data the PBMs had provided to Compass Lexecon, and publicly available information. (*See* ECF 594 at 3). The Carlton Report concluded that the worries of the FTC and others were unfounded, and that "[f]ar from being a source of increased costs, PBMs help to lower the cost of prescription drugs." (Carlton Report, ECF 522-11 at 9).

Plaintiffs served the Subpoena on Compass Lexecon in October 2024, seeking a broad array of materials underlying the Carlton Report. (*See* Subpoena, ECF 522-3). The Subpoena's fourteen document requests generally fall into four categories: (1) all documents relating to the Carlton Report, including data provided by the PBMs, drafts of the Carlton Report, and analyses; (2) all communications between Compass Lexecon and any PBM Defendant on the subject of the Carlton Report; (3) all engagement or retention agreements reflecting the scope of Compass Lexecon's work on the Carlton Report; and (4) all documents reflecting payments to Compass Lexecon in connection with the Carlton Report. (*See* Subpoena, Exh. A at 6–7, ECF 522-3).

Compass Lexecon objected to the Subpoena on multiple grounds, including that it sought information that was privileged or otherwise protected, irrelevant, and disproportionate to the needs of the case, and that it unduly burdened a non-party. (*See* ECF 522-4 at 3–5). The PBM

---

[4] The retaining PBMs were Cigna/ESI (by their counsel at Rule Garza Howley, LLP), CVS/Caremark (by counsel at Dechert LLP) and UnitedHealthcare/OptumRx (by counsel at Gibson, Dunn & Crutcher LLP). (*See* ECF 627 at 2).

2

Defendants objected on similar grounds. (*See* ECF 522-5). After informal attempts to resolve the objections failed, plaintiffs filed the instant motion with Court leave. (*See* ECF 522-1 at 11–14; ECF 438, 456, 522).

## DISCUSSION

In support of their motion to compel a response to the Subpoena, plaintiffs argue primarily that the materials underlying the Carlton Report are not privileged and largely gloss over the fundamental question of whether the report is relevant to this MDL. Plaintiffs' only contention as to relevance is that the report is germane to this litigation because it responds to criticisms of PBMs that are similar to plaintiffs' claims in this action. (*See* ECF 522-1 at 7–9; ECF 610 at 10–11). But plaintiffs do not argue that the subpoenaed materials are relevant based upon any defense the PBM Defendants actually have asserted in this action, nor based on the PBM Defendants' interjection of the Carlton Report into this MDL in any respect.

The PBM Defendants contend that the Subpoena seeks information that is neither relevant nor proportional to the needs of the case because the Carlton Report "has not been adopted disclosed, or otherwise used at all in this litigation, and is broader in scope in several ways than the issues presented." (ECF 596 at 16–17). They also argue that the Subpoena improperly seeks from a non-party information that plaintiffs should seek from the PBM Defendants themselves, and that documents to be produced in this MDL may obviate the need to obtain certain of the materials through the Subpoena. (*See id.* at 7–11). They further contend that the materials underlying the Carlton Report are protected from discovery because their counsel retained Compass Lexecon in anticipation of litigation and they did not waive privilege. (*See* ECF 596 at 15, 18–27).

Compass Lexecon echoes many of the PBM Defendants' arguments. It first asserts that it is not permitted to release the information sought by the Subpoena under the terms of its retention by its PBM clients, which have asserted the information is privileged. (*See* ECF 594 at 1, 7–8). It further argues that the Subpoena is premature and unduly burdensome because nearly all the information sought can be obtained from the PBM Defendants themselves. (*See id.* at 8–12). It also argues the Subpoena is overbroad and seeks materials that are not relevant to this MDL. (*See* ECF 594 at 13–14).

The Court starts with an assessment of whether the Subpoena seeks relevant information under Federal Rule of Civil Procedure 26. A subpoena served under Federal Rule of Civil Procedure 45 "must fall within the scope of proper discovery under" Rule 26. *Schmulovich v. 1161 Rt. 9 LLC*, 07-CV-597 (TJB), 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007). Rule 26 limits discovery to information that is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

At this stage of the case, the Court is unable to conclude that the information sought by the Subpoena is relevant under Rule 26. First, the PBM Defendants have not yet designated Carlton as a testifying expert in this MDL, and they may never do so. (*See* ECF 596 at 14). Therefore, the disclosure requirements for such an expert under Rule 26(a)(2)(B), which call for production of materials on which the expert relied and an account of the expert's compensation, have not been

triggered. Thus, the Subpoena's demand for Carlton's billing records and the materials on which he relied in drafting his report are not relevant based on any potential expert role he may have in this case, which has not yet been established.[5]

Second, the PBM Defendants have not invoked the Carlton Report "at all in this litigation." (ECF 596 at 16). If they had relied on the report in support of their defenses, then plaintiffs would, of course, be entitled to explore the basis for that reliance through party discovery. But at this point, plaintiffs merely anticipate that the PBM Defendants *may* defend themselves on similar grounds as Carlton did in his report, because the report "mirror[s] many of the exact allegations in [their] complaints," and because the PBM Defendants have cited the report in other litigation related to the FTC's 6(b) inquiry. (ECF 522-1 at 6–9; *see also* ECF 610 at 10–11). But "it is the claims and defenses of the parties" *in this litigation* "which set the guardrails for discoverable information." *Deibler v. SanMedica Int'l, LLC*, 19-CV-20155 (MJS), 2021 WL 6198062, at *4 (D.N.J. Dec. 30, 2021). Plaintiffs have failed to establish that the Subpoena seeks information relevant to claims or defenses that have been asserted thus far in this MDL. The PBM Defendants have not relied on the Carlton Report, much less the myriad communications and documents underlying the report that have been subpoenaed. Accordingly, the relevance of the subpoenaed information is purely speculative as of now. *Cf. Avava Inc. v. Canha*, 10-CV-5881 (TJB), 2012 WL 12910210, at *1 (D.N.J. Sept. 28, 2012). Later in the litigation, should the PBM Defendants rely on the Carlton Report or designate Carlton as an expert, its relevance may be established. But at this juncture, it has not been.

Even assuming *arguendo* that relevance had been established, plaintiffs have not demonstrated that the subpoenaed information is proportional to the needs of the MDL. *See* Fed. R. Civ. P. 26(b)(1). The Carlton Report evaluates the impact of PBMs in the markets for a wide variety of pharmaceutical drugs. (*See* Carlton Report, ECF 522-11 at 7 (noting that the Carlton Report "conducts a systematic study of data on prescriptions, rebates, PBM conduct, and the state of the pharmacy industry" generally)). Plaintiffs' claims against the PBM Defendants, by contrast, concern only the market for "insulin and other diabetes medication." (MDL Transfer Order, ECF 1 at 1). But plaintiffs have not narrowed the scope of their requests to the issues in this MDL. The Subpoena requests "*all* [d]ocuments and data that Compass Lexecon collected, received, reviewed, or relied on in connection with the Carlton Report," regardless of its relation to insulin or other diabetes medications. (Subpoena, Exh. A at 6, ECF 522-3) (emphasis added). It similarly seeks "*all* analyses, drafts, memoranda, reports and any other work product generated relating to the Carlton Report," again with no qualification based on the scope of plaintiffs' claims. (*Id.*) (emphasis added). Plaintiffs' broad request for every piece of data and information that went into the Carlton Report's creation, without regard to whether it pertains to the drugs at issue here, is not proportional to their needs in this MDL.[6]

---

[5] The PBM Defendants state that they have not yet determined whether Carlton will be an expert in this MDL. (*See* ECF 14–15).

[6] Plaintiffs claim that while meeting and conferring, they "expressly asked Compass and the PBMs to consider producing" three, more narrowly defined categories of information related to the Compass Lexecon Subpoena. (ECF 610 at 3). But the parties have not yet come to any such agreement, and plaintiffs' motion asks the Court to compel Compass Lexecon "to respond *in full* to the subpoena served upon them." (ECF 522 at 1) (emphasis added). The Court is therefore

4

Plaintiffs' requests are disproportional in several other respects as well. For instance, the Subpoena demands "[a]ll [d]ocuments and [c]ommunications exchanged between Compass Lexecon and any PBM Defendant relating to Manufacturer Payments."[7] (*Id.*). Again, plaintiffs in no way cabin their request to encompass only those payments related to the drugs at issue in this litigation. A request for every such communication and document that passed between the PBMs and Compass Lexecon is plainly overbroad and disproportional. (*See id.*). In addition, the Subpoena's demands for "[d]ocuments sufficient to show the remuneration Compass Lexecon received from" the PBMs, as well as "any other sources and amounts of remuneration Compass Lexecon received related to the Carlton Report" are disproportionately broad to any arguable relevance of this information. (*Id.* at 7).

The disproportionality of the requests would be problematic even if the subpoenaed information had been sought directly from the PBM Defendants. But the demand upon third party Compass Lexecon for such overbroad information also runs afoul of Rule 45's duty not to unduly burden third parties. *See Dealer Comput. Servs., Inc. v. Muller*, 21-CV-19811 (TJB), 2024 WL 4252703, at *3 (D.N.J. Sept. 20, 2024); Fed. R. Civ. P. 45(d)(1). The burden here is especially undue because most, if not all, of the subpoenaed information would be available from the PBM Defendants without resort to seeking it from a third party. *See, e.g., Korotki v. Cooper Levenson, April, Niedelman, & Wagenheim, P.A.*, 20-CV-11050 (MJS), 2022 WL 2191519, at *3 (D.N.J. June 17, 2022); *Housemaster SPV LLC v. Burke*, 21-CV-13411 (TJB), 2022 WL 17904254, at *9 (D.N.J. Dec. 23, 2022). Indeed, the parties have conferred as to the scope of data to be produced during discovery (*see* ECF 596 at 6), and plaintiffs have specifically asked "the PBMs to consider producing" certain information used in the creation of the Carlton Report. (ECF 610 at 3). While the PBM Defendants, at the time of the briefing of this motion, had not yet agreed to plaintiffs' request, the parties may well reach an agreement on production that would render portions of the Subpoena moot. To subpoena a non-party before a meet and confer for the same information is exhausted, without any pressing need for the immediate production of that information, contravenes Rule 45's admonition against unduly burdening a third party. *See* Fed. R. Civ. P. 45(d)(1); *accord Korotki*, 2022 WL 2191519, at *3; *Housemaster SPV LLC*, 2022 WL 17904254, at *9.

## CONCLUSION

Given the Court's finding that plaintiffs have not demonstrated that the Subpoena comports with Federal Rules of Civil Procedure 26 or 45, it denies the motion without reaching the parties' arguments concerning privilege. The denial is without prejudice to developments in the litigation that enable plaintiffs to satisfy the foregoing standards discussed by the Court. The parties' arguments concerning privilege and waiver are preserved should these issues come before the Court in the future.

---

constrained to the terms of the Subpoena in considering the instant motion.

[7] The Subpoena defines "Manufacturer Payments" as "any payments, remuneration, consideration, or financial benefit of any kind provided by a Manufacturer Defendant." (Subpoena, Exhibit A at 3, ECF 522-3).

      The Clerk of the Court is directed to terminate the motion at ECF 522.

      It is **SO ORDERED**.

                                             *s/ Leda Dunn Wettre*
                                             Hon. Leda Dunn Wettre
                                             United States Magistrate Judge

Orig:  Clerk
cc:     Counsel of Record