

**Driving progress**
**through partnership**

**Melissa A. Geist**
Direct Phone:  +1 609 514 5978
Email:  mgeist@reedsmith.com

Reed Smith LLP
506 Carnegie Center
Suite 300
Princeton, NJ 08540-7839
+1 609 987 0050
Fax +1 609 951 0824
reedsmith.com

March 17, 2026

<u>**VIA ECF ONLY**</u>

Honorable Brian R. Martinotti, U.S.D.J.
United States District Court
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

Re:    **In re: Insulin Pricing Litigation, No. 2:23-md-03080-BRM-RLS:**
       <u>**Defendants' Reply Regarding Application of Motion To Dismiss Rulings**</u>

Dear Judge Martinotti:

The Court's motion to dismiss rulings were always intended to—and should—apply beyond the specific set of claims the Court addressed in the three exemplar motions. As the Court noted last week, the exemplar process was designed so the parties could "use each of the [Court's] rulings … to decide how [they] appl[y] to the other cases."  11/28/23 Hr'g Tr. at 21:7–11.  The Court made the same point *before* it ruled on the exemplar motions: "when those [] motions are decided, there will be a roadmap … on how [] to proceed moving forward."  2/11/25 Hr'g Tr. 13:2–4.  That process, moreover, is consistent with MDL practice and endorsed by the Third Circuit, which has explained that a "judge may enter an order with respect to one party and then provide that it will be automatically extended to other parties if they do not come forward and show cause why it should not be applicable."  *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 66 (3d Cir. 2023).

The parties *agree* that the Court *can* apply its MTD rulings to other MDL cases, subject to an opportunity to show cause.  *Compare* Dkt. 885-1 § II.c, *with* Dkt. 890-1 § II.A.  Plaintiffs disagree that those rulings can extend beyond the specific state laws the Court addressed in the exemplar process, to claims that are subject to—and fail—the same legal requirements that the Court considered and applied.

That position is indefensible.  Limiting the MTD rulings to the sliver of state-law claims the Court addressed in the exemplar process, as Plaintiffs suggest, to the exclusion of parallel claims that fail for the same reasons, would squander the benefit of the work the Court has already done. Fundamental issues—including the contours of future fact discovery, whether potential discovery pool cases have live claims, and which issues may need to be addressed by expert testimony—would all remain unclear.  For example, discovery for a case that has only common law fraud and civil conspiracy claims may differ markedly from a case that includes state-law

ABU DHABI ♦ ATHENS ♦ AUSTIN ♦ BEIJING ♦ BRUSSELS ♦ CENTURY CITY ♦ CHICAGO ♦ DALLAS ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG
HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH ♦ NEW YORK ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON
RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

Nicholas J. Valvanis ♦Office Administrative Partner ♦ A Limited Liability Partnership formed in the State of Delaware

ReedSmith

antitrust claims (where fact and expert discovery would focus on anticompetitive harm) or state consumer protection act claims with unfairness prongs (where fact and expert discovery may be broader than a focus on alleged fraudulent statements/omissions).  Clarity on which claims are live in the cases that proceed is crucial.  And more broadly, there is no realistic hope of the parties ever resolving the claims in this MDL without knowing what claims and cases remain to be resolved— particularly when certain claims that would be addressed in application briefing allow Plaintiffs to seek treble damages.

Plaintiffs do not solve these problems with their vague suggestion that the parties treat the Court's opinion as mere "guidance."  If, as Plaintiffs suggest, the import of the Court's rulings is readily apparent from the opinions themselves, there should be no difficulty applying them *now* through a structured show-cause process—which serves the dual purpose of allowing plaintiffs to create the record they desire while focusing the parties' attention on resolution of live claims.  And if there are disagreements about how the rulings apply to claims under the non-briefed states' laws, the Court and the parties are far better served by identifying and resolving those disagreements *now*.  This is particularly true given Plaintiffs' position that only a small number of cases should move to further discovery, with only a fraction of those moving to motions for summary judgment.  Under Plaintiffs' position, that would leave cases under the laws of well over 35 states completely unresolved, with no discernible path to resolving those claims.

Nor is this, as Plaintiffs suggested at the CMC, some collateral exercise.  Rather, the process Defendants seek goes to the core reason that MDLs exist.  The "efficient progress of the cases in preparation for trial" is "the very purpose of the centralization before the transferee judge," *In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 248 (3d Cir. 2013), which MDL judges achieve by "identify[ing] claims that lack merit" and "dismiss[ing]" them "before significant time and effort is spent," Manual for Complex Litigation § 35.31.  To this end, transferee judges routinely "extend[]" exemplar orders to other cases to "efficiently and fairly manage" their docket, *Home Depot*, 59 F.4th at 65–66, including where claims governed by different states' laws fail for the same legal reasons.[1]

This routine process does not require "Rule 12(b)(6) briefing on a massive scale," as Plaintiffs claim.  Dkt. 890 at 1.  Defendants do not propose to brief every possible legal argument under every relevant state's laws.  Instead, they will identify only the discrete grounds on which the Court's existing rulings directly apply to other claims in the MDL.  Though narrow, applying those grounds will eliminate large swaths of meritless claims, given the hundreds of Self-Funded Payer Plaintiffs that allege *identical* facts and legal theories, with complaints that are largely carbon copies.  For example:

---

[1] A court "may rule on a motion in cases under one state's law and issue an order to show cause why the ruling should not apply to the other cases." Barbara J. Rothstein & Catherine R. Borden, *Managing Multidistrict Litigation in Products Liability Cases*, Federal Judicial Center 30 (2011); *see, e.g.*, *Fortner v. Bristol-Myers Squibb Co.*, 2017 WL 3193928, at *5 (S.D.N.Y. July 26, 2017) (extending California-law decision to Tennessee-law claim following show-cause briefing); *In re Nat'l Prescription Opiate Litig.*, 2024 WL 3387288, at *13 (N.D. Ohio Mar. 18, 2024) (extending ruling, initially applied to a single track, across "*all* defendants in *all* MDL cases" (emphasis in original)).

ReedSmith

- The Court held that Self-Funded Payers are indirect purchasers and dismissed their RICO claims on that basis. Dkt. 729 at 14; Dkt. 731 at 14. The indirect purchaser rule originates in antitrust law—*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)—and thus plainly applies to claims under the Sherman Act, which should be dismissed on this basis.

- The Arizona Consumer Fraud Act also applies the indirect purchaser rule, meaning the Court's orders require dismissal of these claims. *MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, 2019 WL 1418129, at *18 (D.N.J. Mar. 29, 2019) (holding that the Arizona statute does not protect "subsequent purchasers").

As these examples show, the remaining disputes will not require the Court to break major new ground. Instead, the question will simply be whether particular claims are subject to the same requirements—and thus the same conclusion—as the claims in the three exemplar complaints. The parties can efficiently present any disputes on these issues through abbreviated briefing. *See, e.g.*, *In re GM LLC Ignition Switch Litig.*, No. 14-md-2543-JMF (S.D.N.Y. Apr. 24, 2015), Dkt. 875 (requiring non-consolidated party to show cause in five single-spaced pages following ruling on consolidated complaints); *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, No. 2:11-md-2226-DCR (E.D. Ky. Apr. 12, 2012; Apr. 24, 2012), Dkts. 1656, 1727 (responding to show-cause order in less than three pages). This is how the process typically works: parties accept the results of the court's ruling, litigate their remaining claims to conclusion, and—if necessary—appeal following final judgment. In *Darvocet*, for example, some plaintiffs responded to the show-cause order by "conced[ing] that the Court's [dismissal order] would apply," and the court dismissed those claims with prejudice and ultimately entered a final and appealable judgment. No. 2:11-md-2226-DCR (E.D. Ky. Apr. 12, 2012), Dkt. 1655. Plaintiffs here are additionally protected because Defendants' proposed order incorporates the exact reservation of appellate rights that Plaintiffs themselves propose. *Compare* Dkt. 885-1 § V, *with* Dkt. 890-1 § IV.

The Court has already taken the first step of the application process by issuing the MTD rulings. That should not be the last step. Defendants respectfully request that the Court establish a procedure through which (1) Defendants identify for Plaintiffs the claims to which the Court's order applies, and (2) Plaintiffs must show cause why those claims should *not* be dismissed. As Your Honor knows well, the lack of a process to weed out nonviable claims frustrates the entire purpose of an MDL and unduly burdens all involved—especially the Court. Accordingly, Defendants respectfully request the entry of their proposed order.

ReedSmith

Respectfully Submitted,

/s/ Melissa A. Geist
**REED SMITH LLP**
Melissa A. Geist
Julia A. López
506 Carnegie Center, Suite 300
Princeton, NJ 08540
(609) 514-5978

**KIRKLAND & ELLIS LLP**
James F. Hurst (*pro hac vice*)
Diana M. Watral (*pro hac vice*)
Ryan Moorman (*pro hac vice*)
Kate T. Walling (*pro hac vice*)
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000

*Attorneys for Defendant Eli Lilly and Company*

/s/ Brian W. Carroll
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 639-2020

**DAVIS POLK & WARDWELL LLP**
James P. Rouhandeh (*pro hac vice*)
Brian S. Weinstein (*pro hac vice*)
David B. Toscano (*pro hac vice*)
Patrick W. Blakemore (*pro hac vice*)
450 Lexington Ave.
New York, NY 10017
(212) 450-4000

**DAVIS POLK & WARDWELL LLP**
Neal A. Potischman (*pro hac vice*)
Andrew Yaphe (*pro hac vice*)
900 Middlefield Road, Suite 200
Redwood City, CA 94063
(650) 752-2000

*Attorneys for Defendant Novo Nordisk Inc.*

/s/ Liza M. Walsh
**WALSH PIZZI O'REILLY FALANGA LLP**
Liza M. Walsh
Katelyn O'Reilly
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100

**JONES DAY**
Michael R. Shumaker (*pro hac vice*)
Julie E. McEvoy (*pro hac vice*)
William D. Coglianese (*pro hac vice*)
Melissa Lim Patterson (*pro hac vice*)
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3939

*Attorneys for Defendant Sanofi-Aventis U.S. LLC*

4

ReedSmith

*/s/ Brian D. Boone*
**O'TOOLE SCRIVO, LLC**
Thomas P. Scrivo
Young Yu
14 Village Park Road
Cedar Grove, NJ 07009
(973) 239-5700

**ALSTON & BIRD LLP**
Brian D. Boone
1120 S. Tyron St., Ste. 300
Charlotte, NC 28203
(704) 444-1000

**ALSTON & BIRD LLP**
Elizabeth Broadway Brown
1201 W. Peachtree St. NW, Ste. 4900
Atlanta, GA 30309
(404) 881-7000

**ALSTON & BIRD LLP**
Kelley Connolly Barnaby
950 F. Street, NW
Washington, DC 20004
(202) 239-3300

*Counsel for UnitedHealth Group Incorporated; OptumRx, Inc.; Optum, Inc.; and OptumInsight, Inc.*

*/s/ Jason R. Scherr*
**MORGAN LEWIS & BOCKIUS LLP**
Jason R. Scherr
Douglas A. Hastings
Elise M. Attridge
Lindsey T. Levy
1111 Pennsylvania Ave., NW
Washington, DC 20004
(202) 739-3000

*Counsel for Evernorth Health, Inc. (f/k/a Express Scripts Holding Company); Express Scripts, Inc.; Express Scripts Administrators, LLC; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; Medco Health Solutions, Inc., and The Cigna Group*

*/s/ A. Joshua Podoll*
**MARINO, TORTORELLA & BOYLE, P.C.**
Kevin H. Marino
John D. Tortorella
437 Southern Blvd.
Chatham, NJ 07928
(973) 824-9300

**WILLIAMS & CONNOLLY LLP**
Enu Mainigi
Craig Singer
R. Kennon Poteat III
A. Joshua Podoll
Benjamin Hazelwood
Daniel Dockery
680 Maine Ave., S.W.
Washington, DC 20024
(202) 434-5000

*Counsel for CVS Health Corporation; CVS Pharmacy, Inc.; Caremark Rx, L.L.C.; CaremarkPCS Health, L.L.C.; and Caremark, L.L.C.*

5

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. A copy of the foregoing was served upon all parties of record via the CM/ECF system.


Dated:  March 17, 2026                              /s/ Melissa A. Geist
                                                     Melissa A. Geist