July 20, 2026

**VIA ECF & EMAIL**

Joseph A. Dickson, U.S.M.J. (ret.)
Chiesa Shahinian & Giantomasi PC
105 Eisenhower Parkway
Roseland, New Jersey 07068

> Re:   *In re: Insulin Pricing Litigation*, **MDL No. 3080**
>       **Case No. 2:23-md-03080-BRM-LDW**

Dear Special Master Dickson:

Plaintiffs respectfully submit this letter in further support of their request for the production of deponents' personnel files pursuant to Plaintiffs' First Set of Master Requests for Production of Documents [ECF No. 996]. Defendants' opposition [ECF No. 1014] mischaracterizes both the relevance of the materials sought and the history of the parties' negotiations. Plaintiffs write to correct the record on both points.

### 1.  The Personnel Files Sought Are Relevant to the Claims and Defenses in This Case.

Defendants contend that Plaintiffs have not demonstrated the relevance of the deponents' personnel files to the claims at issue in this litigation. That contention rests on boilerplate rather than any engagement with Plaintiffs' actual claims. Most fundamentally, the personnel files for this discrete set of witnesses may well reveal what Defendants actually valued and rewarded in the employees responsible for the Defendant activity at issue in this litigation. The PBM Defendants, for example, hold themselves out as intermediaries whose mission includes reducing their clients' drug spend. Plaintiffs allege the opposite: that Defendants knowingly and secretly inflate list prices and client cost while extracting ever-growing manufacturer payments. If, for example, employees who built the exclusionary formularies were evaluated or compensated based on rebate yield, administrative fees, or manufacturer revenue captured, such may be direct evidence that the conduct Plaintiffs allege was not incidental but institutionalized. If employee bonuses were measured by the grotesque pricing produced by the scheme, such may be probative not only of intent and motive but also knowledge and a self-serving, callous disregard. Personnel files are the natural repository for such evidence, which Plaintiffs cannot efficiently obtain—if at all—from Defendants' other productions

The files may also contain party admissions in the witnesses' own contemporaneous words. Annual self-assessments and goal-setting documents likely memorialize what each employee was directed to accomplish and what each employee claimed to have achieved—including with respect to conduct at issue, such as development of the exclusionary formularies, lock-step price increases on the at-issue drugs, and the formation of the rebate aggregator entities used to funnel funds away from Plaintiffs. These are just examples. An employee who described her own role in these initiatives in a performance review can reasonably be expected to have done so candidly, at the time, and without any anticipation of litigation. Plaintiffs likewise expect the files may contain information concerning the Congressional testimony that many of these witnesses provided on the very scheme at issue.

The files may also contain disciplinary records and internal complaints bearing on Defendants' knowledge. For example, if a Manufacturer employee raised concerns about list-price increases, the growing gap between list and net prices, or the impact of those increases on payors and patients—or faced adverse consequences after doing so—that evidence goes directly to what Defendants knew and when. Conversely, the absence of any discipline for the conduct at issue would tend to show that Defendants sanctioned and ratified it.

Personnel files will also be useful in refreshing a witness's recollection concerning her job functions over time. The discovery period stretches back to 2011, and witnesses (many of whom are former employees) may disavow specific knowledge of their duties during the early years. Yet many of these witnesses are the very individuals Defendants have identified as having the most direct knowledge of Plaintiffs' claims. Job descriptions, performance evaluations, and self-assessments are the most efficient and reliable means to refresh recollections on those topics. Defendants' suggestion that Plaintiffs instead comb through millions of other documents in piecemeal fashion is neither efficient nor feasible and would force Plaintiffs to consume their limited deposition time establishing foundational facts that a single personnel document would show directly.

Defendants' attempt to distinguish *Pradaxa* merely underscores why the requested materials should be produced. Defendants argue that the *Pradaxa* plaintiffs obtained personnel records only because they tied their request to a legal theory central to the case—there, that the records would illustrate Pradaxa was rushed to market. *See In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, MDL No. 2385, No. 3:12-md-02385, Case Mgmt. Order No. 30 (S.D. Ill. Apr. 26, 2013). Plaintiffs have done the same here. The requested personnel files go directly to the theory at the center of this case—that Defendants prioritized and profited from an inflated-list-price, rebate-driven scheme at Plaintiffs' expense.[1]

### 2. Plaintiffs' Efforts to Resolve This Dispute Are Not a Basis for Denying Relief.

Defendants suggest that Plaintiffs' efforts to obtain these materials through the meet-and-confer process should somehow count against them. The suggestion turns the conferral obligation on its head. This litigation involves three separate tracks and six separate defendant families. The conferral process here was drawn out not by any lack of diligence on Plaintiffs' part, but by the structural reality of negotiating simultaneously across multiple tracks and defendant groups—each with its own counsel, its own positions, and its own pace of response. Throughout that process, Plaintiffs worked in good faith to narrow the disputes: streamlining their requests through multiple iterations, dropping categories of materials, and developing compromise counter-proposals across

---

[1] Defendants also complain that the Confidentiality Order "does not address the fact that production to Plaintiffs (and co-defendants in this litigation, who are competitors of one another) would intrude on these employees' privacy interests." Op. at 5. Defendants ignore that the Confidentiality Order expressly provides for a "Highly Confidential – Attorneys' Eyes Only" designation that would shield these materials from disclosure to Plaintiffs' and co-defendants' business personnel alike, fully addressing the privacy and competitive concerns Defendants raise.

several conferences. That work takes time, and it is precisely the work the conferral process is designed to encourage. Plaintiffs make no apology for seeking to limit the burden on the Court.

Nor have Plaintiffs waived anything. At no point did Plaintiffs abandon their request for these materials; they narrowed it, refined it, and pressed it at every stage. And Plaintiffs raised this issue before a single deposition has occurred, and while Defendants are still in the process of substantially completing their document productions. There is no prejudice to Defendants, no delay to the case schedule, and no basis to convert Plaintiffs' good-faith efforts at compromise into a forfeiture. If anything, the timing confirms that Plaintiffs proceeded exactly as they should have: exhausting negotiation first and seeking the Special Master's intervention only when it became clear the parties were at impasse.

Respectfully submitted,

*/s/ Joanne Cicala*
Joanne Cicala
*Liaison Counsel for*
*State Attorney General Track*

*/s/ David R. Buchanan*
David R. Buchanan
*Liaison Counsel for*
*Self-Funded Payer Track*

*/s/ Matthew Gately*
Matthew Gately
*Liaison Counsel for*
*Class Action Track*

cc:    Counsel of Record (via ECF & email)