**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION**<br><br>**THIS DOCUMENT RELATES TO: SELF-FUNDED PAYER TRACK** | **Case No. 2:23-md-03080**<br><br>**MDL No. 3080**<br><br>**JUDGE BRIAN R. MARTINOTTI**<br>**JUDGE LEDA DUNN WETTRE**<br><br>**ORAL ARGUMENT REQUESTED** |

**SELF-FUNDED PAYER TRACK'S RESPONSIVE BRIEF REGARDING STATUTE-OF-LIMITATIONS DISPUTES**

(Counsel listed on signature pages)

**TABLE OF CONTENTS**


INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 1

A. The Exemplar Motions and Supplemental Briefing ........................................ 1

B. Defendants Briefed and Argued Only "Step One" (Storm Warnings). ............ 2

C. The Constructive Notice Ruling Fixed a Storm-Warnings Date Under "Step One." ....... 3

D. Under CMO 23, Plaintiffs Provided Their Legal Bases for Timeliness. ........... 3

E. The Rebate Aggregators Were Not Part of This Process. ................................ 5

ARGUMENT ............................................................................................................ 5

I. The Constructive Notice Ruling Does Not Reach the Rebate Aggregators. ........ 5

II. The Court's Constructive Notice Ruling Applied RICO's "Injury Discovery Rule" and Does Not Determine When Plaintiffs' Remaining State-Law Claims Accrue. ................. 8

A. Many State-Law Accrual Rules Require More Than Discovery of Injury. ........... 8

B. The Constructive Notice Ruling Did Not Determine Accrual of Any of Plaintiffs' Injuries Other than Being "Overcharged" for Insulin. ....................... 10

III. The Constructive Notice Ruling Did Not Address Diligence. ............................ 11

A. Plaintiffs Had No Obligation to Affirmatively Allege Diligence. ..................... 11

B. The Diligence Question Forecloses an Accrual Date Under Many State Rules. 13

IV. At a Minimum, Under the Separate Accrual Rule, Plaintiffs Can Recover for Damages Suffered from Fraud or Unlawful Conduct Within the Limitations Period. ................... 14

V. The Continuing Violations Doctrine Tolls the Limitations Period. ..................... 17

VI. Defendants Cannot Defeat the Other Tolling Doctrines That Preserve SFPs' Claims . 19

A. Constructive Notice Does Not Preclude Tolling Under Fraudulent Concealment, Equitable Tolling, Equitable Estoppel Theories. ......................... 19

B. Whether Plaintiffs Seek to Vindicate Public Rights Under *Nullum Tempus* Is a Fact-Intensive, State-Specific Question That Cannot Be Resolved Now. .......... 22

C. Class-Action Tolling Applies, and Defendants' Three Objections Fail .............. 23

VII. The Court Must Apply the Choice-of-Law Rules of Each Designated Forum. ............. 25

VIII. Defendants Are Mistaken as to the Other Limitations Disputes. 28

A. The Tort-vs.-Contract Characterization Cannot Be Resolved on the Pleadings. 28

B. Defendants Misinterpret New York and Tennessee Limitations Periods 29

C. The Court Should Not Dismiss Civil Conspiracy Claims at this Juncture 30

IX. In the Alternative, Plaintiffs Request Leave to Amend. 30

CONCLUSION 30

# TABLE OF AUTHORITIES

**Cases**

*Able Masonry Dev. Co. v. Hastings Mut. Ins. Co.*,
2024 WL 2209346 (N.D. Ill. May 16, 2024) ........ 15

*Acrison, Inc. v. Rainone*,
2023 WL 8166786 (3d Cir. Nov. 24, 2023) ........ 12

*Adams v. Zimmer US, Inc.*,
943 F.3d 159 (3d Cir. 2019) ........ 13

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
554 F.3d 342 (3d Cir. 2009) ........ 6

*Alsaidi v. Wolfgang Puck Catering & Events, LLC*,
814 F. Supp. 3d 517 (D.N.J. 2025) ........ 25

*Am. Cont. Bridge League v. Nationwide Mut. Fire Ins. Co.*,
752 F.2d 71 (3d Cir. 1985) ........ 25

*Am. Pipe & Const. Co. v. Utah*,
414 U.S. 538 (1974) ........ 24

*Andriesian v. Cosm. Dermatology, Inc.*,
2015 WL 1638729 (D. Or. Mar. 3, 2015) ........ 27

*Ara v. Erie Ins. Co.*,
182 W. Va. 266, 387 S.E.2d 320 (1989) ........ 21

*Arapahoe Surgery Ctr., LLC v. Cigna Healthcare*,
171 F. Supp. 3d 1092 (D. Colo. 2016) ........ 16

*Aryeh v. Canon Bus. Sols.*,
292 P.3d 871 (Cal. 2013) ........ 14, 15

*Ayres v. Ocwen Loan Servicing, LLC*,
129 F. Supp. 3d 249 (D. Md. 2015) ........ 16

*Balimunkwe v. Bank of Am., N.A.*,
2014 WL 6908972 (S.D. Ohio Dec. 5, 2014) ........ 10

*Bankers Tr. Co. v. Rhoades*,
859 F.2d 1096 (2d Cir. 1988) ........ 11

*Bd. of Comm'rs of Okla. Cnty. v. Good Twp., Harper Cnty.*,
107 P.2d 805 (Okla. 1940) ........ 23

*BDM Invs. v. Lenhil, Inc.*,
826 S.E.2d 746 (N.C. Ct. App. 2019) .......... 30

*Benedettini Cabinets, L.P. v. Sherwin-Williams Co.*,
695 F. Supp. 3d 948 (N.D. Ohio 2023) .......... 21

*Bermudez Chavez v. Occidental Chem. Corp.*,
158 N.E.3d 93 (N.Y. 2020) .......... 25

*Bernal v. Borough of Bogota*,
2023 WL 1883353 (D.N.J. Feb. 9, 2023) .......... 30

*Black v. Sussman*,
2011 WL 2410237 (Tenn. App. June 9, 2011) .......... 29

*Blake v. JP Morgan Chase Bank*,
927 F.3d 701 (3d Cir. 2019) .......... 15, 17

*Blankenship v. Pushpin Holdings, LLC*,
157 F. Supp. 3d 788 (N.D. Ill. 2016) .......... 17, 18

*Boland v. Consol. Multiple Listing Serv., Inc.*,
868 F. Supp. 2d 506 (D.S.C. Mar. 23, 2011) .......... 21

*Brillhart v. Sharp*,
2008 WL 2857713 (M.D. Pa. July 21, 2008) .......... 18

*Brown v. Or. DHS*,
2015 WL 13237081 (D. Or. Nov. 13, 2015) .......... 29

*California v. Eli Lilly & Co.*,
No. 23STCV00719 (Cal. Super. Ct. L.A. Cnty. June 18, 2024) .......... 19

*Carrera v. Olmstead*,
401 P.3d 304 (Wash. 2017) .......... 23

*Cigna Ins. v. Oy Saunatec, Ltd.*,
241 F.3d 1 (1st Cir. 2001) .......... 16

*City of Chicago v. Latronica Asphalt & Grading, Inc.*,
805 N.E.2d 281 (Ill. App. Ct. 2004) .......... 22

*City of Miami v. Eli Lilly & Co.*,
2022 WL 198028 (S.D. Fla. Jan. 21, 2022) .......... 24

*Colosimo v. Roman Catholic Bishop of Salt Lake City*,
156 P.3d 806 (Utah 2007) .......... 20, 21

*Conn. v. Sandoz, Inc.*,
2025 WL 3043397 (D. Conn. Oct. 31, 2025) .......... 16

*Cont'l Materials Corp. v. Valco, Inc.*,
2016 WL 9735761 (D. Colo. Sept. 15, 2016) .......... 10

*D.C. v. Owens-Corning Fiberglas Corp.*,
572 A.2d 394 (D.C. 1989) .......... 22

*Davalos v. Bay Watch, Inc.*,
240 N.E.3d 753 (Mass. 2024) .......... 13, 14

*Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*,
539 F.3d 199 (3d Cir. 2008) .......... 5

*Dunn v. Rockwell*,
225 W. Va. 43, 689 S.E.2d 255 (2009) .......... 20, 22

*ECB USA, Inc. v. Savencia, S.A.*,
2025 WL 417738 (D. Del. Feb. 6, 2025) .......... 18

*Elias v. Ungar's Food Prods., Inc.*,
252 F.R.D. 233 (D.N.J. 2008) .......... 28

*Ex parte Abbott Labs*,
342 So. 3d 186 (Ala. 2021) .......... 17

*Ex parte Am. Gen. Fin., Inc.*,
795 So. 2d 685 (Ala. 2000) .......... 10

*Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP*,
912 A.2d 1019 (Conn. 2007) .......... 20

*Fine v. Checcio*,
870 A.2d 850 (Pa. 2005) .......... 14

*Fluor Fed. Sols., LLC v. BAE Sys. Ordnance Sys., Inc.*,
2020 WL 3304196 (W.D. Va. June 18, 2020) .......... 10, 13

*French v. First Union Secs., Inc.*,
209 F. Supp. 2d 818 (M.D. Tenn. 2002) .......... 30

*Friedland v. Gales*,
509 S.E.2d 793 (N.C. Ct. App. 1998) .......... 21

*Frye Reg'l Med. Ctr., Inc. v. BCBS of N.C., Inc.*,
2020 WL 1910307 (N.C. Super. Apr. 17, 2020) .......... 16

*Gabelli v. S.E.C.*,
568 U.S. 442 (2013) .......... 5

*Garamendi v. SDI Vendome S.A.*,
276 F. Supp. 2d 1030 (C.D. Cal. 2003) .......... 20

*Glob. Reins. Corp.-U.S. Branch v. Equitas Ltd.*,
867 N.Y.S.2d 16 (N.Y. Cnty. Sup. Ct. 2008) ........ 18

*Goei v. CBIZ, Inc.*,
2020 WL 8093525 (D.R.I. Nov. 12, 2020) ........ 25

*Goff v. Nationwide Mut. Ins. Co.*,
2019 WL 7604826 (S.D. Ohio Sept. 30, 2019) ........ 16

*Graham v. Beverage*,
566 S.E.2d 603 (W. Va. 2002) ........ 17

*Gregory v. Toler Appraisal Grp., LLC*,
2023 WL 2581995 (S.D.W. Va. Mar. 20, 2023) ........ 21

*Gu v. Wang*,
2025 WL 660625 (D.N.J. Feb. 28, 2025) ........ 28

*Harrison v. City of Sanford*,
627 S.E.2d 672 (N.C. Ct. App. 2006) ........ 11

*Henry v. Bank of Am.*,
147 A.D.3d 599 (N.Y. App. Div. 2017) ........ 17

*Hines v. A.O. Smith Harvestore Prods., Inc.*,
880 F.2d 995 (8th Cir. 1989) ........ 22

*Home Depot USA, Inc. v. Lafarge N. Am., Inc.*,
59 F.4th 55 (3d Cir. 2023) ........ 1

*Horn v. Goodman*,
60 N.E.3d 922 (Ill. App. Ct. 2016) ........ 20

*Hughes ex rel. Estate of Hughes v. Bank of Am., N.A.*,
898 S.E.2d 102 (S.C. 2024) ........ 13

*Hughes v. Abell*,
794 F. Supp. 2d 1 (D.D.C. 2010) ........ 13

*Hunter, Maclean, Exley & Dunn, P.C. v. Frame*,
507 S.E.2d 411 (Ga. 1998) ........ 14

*In re Avandia*,
2011 WL 4018259 (E.D. Pa. Sept. 7, 2011) ........ 12

*In re Chiquita Brands Int'l Inc. Alien Tort Statute & S'holders Deriv. Litig.*,
2022 WL 22236064 (S.D. Fla. Aug. 23, 2022) ........ 26

*In re Enron Corp.*,
465 F. Supp. 2d 687 (S.D. Tex. 2006) ........ 24

*In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*,
852 F.3d 268 (3d Cir. 2017) ..... 1

*In re Insulin Pricing Litig.*,
2019 WL 643709 (D.N.J. Feb. 15, 2019) ..... 25

*In re MacGregor Sporting Goods, Inc.*,
199 B.R. 502 (Bankr. D.N.J. 1995) ..... 28

*In re Maxima Corp.*,
279 B.R. 180 (D. Md. 2002) ..... 14

*In re Mercedes-Benz Tele Aid Cont. Litig.*,
267 F.R.D. 113 (D.N.J. 2010) ..... 28

*In re Merck & Co., Inc. Sec., Deriv. & "ERISA" Litig.*,
543 F.3d 150 (3d Cir. 2008) ..... 11

*In re NAHC, Inc. Sec. Litig.*,
306 F.3d 1314 (3d Cir. 2002) ..... 9

*Ins. Co. of N. Am. v. Aspen Alps Condo. Ass'n, Inc.*,
915 F. Supp. 1122 (D. Colo. 1996) ..... 29

*Jared V. v. Nikki X.*,
245 A.D.3d 1041 (N.Y. App. Div. 2026) ..... 29

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*,
119 F.3d 1070 (3d Cir. 1997) ..... 24

*Juliano v. Grand Hyatt N.Y., Inc.*,
2018 WL 1069578 (D. Conn. Feb. 27, 2018) ..... 25

*K.S.D. v. Ryan*,
2024 WL 180798 (D.N.J. Jan. 17, 2024) ..... 28

*Klehr v. A.O. Smith Corp.*,
521 U.S. 179 (1997) ..... 16, 18

*Krause v. Novartis Pharms. Corps.*,
926 F. Supp. 2d 1306 (N.D. Fla. 2013) ..... 27

*Lau v. Constable*,
2019 WL 6051554 (N.C. Super. Sept. 24, 2019) ..... 30

*Lebanon Cnty. Emps.' Ret. Fund v. Collis*,
287 A.3d 1160 (Del. Ch. 2022) ..... 17

*LifeScan, Inc. v. Smith*,
2024 WL 4913025 (D.N.J. Feb. 1, 2024) ..... 9

*Lokuta v. Sallemi*,
2013 WL 5570227 (M.D. Pa. Oct. 9, 2013) .......... 10

*Love v. Nat'l Med. Enters.*,
230 F.3d 765 (5th Cir. 2000) .......... 15

*Lutheran Ass'n of Missionaries & Pilots, Inc. v. Lutheran Ass'n of Missionaries & Pilots, Inc.*,
2004 WL 1212083, (D. Minn. May 20, 2004) .......... 25

*Mathews v. Cassidy Turley Md., Inc.*,
80 A.3d 269 (Md. 2013) .......... 22

*Mathews v. Kidder, Peabody & Co.*,
260 F.3d 239 (3d Cir. 2001) .......... 2

*McCarrell v. Hoffmann-La Roche, Inc.*,
227 N.J. 569 (2017) .......... 28

*McClancy v. Rotunno Const., Inc.*,
2014 WL 6805318 (Conn. Super. Ct. Oct. 28, 2014) .......... 18

*Montgomery v. Decatur Cnty. Gen. Hosp.*,
2012 WL 13041427 (W.D. Tenn. Mar. 19, 2012) .......... 29

*Nat'l Ass'n of Gov't Emps. v. Mulligan*,
854 F. Supp. 2d 126 (D. Mass 2012) .......... 20

*Nzirubusa v. United Imports, Inc.*,
2006 WL 1716790 (Tenn. Ct. App. June 21, 2006) .......... 18

*Oklahoma City Mun. Imp. Auth. v. HTB, Inc.*,
769 P.2d 131 (Okla. 1988) .......... 23

*Pension Tr. Fund for Operating Eng'rs v. Mort. Asset Securitization Transactions, Inc.*,
730 F.3d 263 (3d Cir. 2013) .......... 29

*People ex rel. Hartigan v. Moore*,
493 N.E.2d 85 (Ill. App. Ct. 1986) .......... 18

*Perry, Tr. for Sherrell v. Beltrami Cnty.*,
520 F. Supp. 3d 1115 (D. Minn. 2021) .......... 25, 26

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014) .......... 14

*Providence & Worcester R. Co. v. Sargent & Greenleaf, Inc.*,
802 F. Supp. 680 (D.R.I. 1992) .......... 26

*Rhodes v. E.I. du Pont de Nemours*,
657 F. Supp. 2d 751 (S.D.W. Va. 2009) .......... 18

*Saunders v. Nemati*,
580 A.2d 660 (D.C. 1990) .......... 29

*Schmidt v. Household Fin. Corp.*,
661 S.E.2d 834 (Va. 2008) .......... 14

*Schmidt v. Skolas*,
770 F.3d 241 (3d Cir. 2014) .......... 12

*Scott v. American Tobacco Co.*,
949 So. 2d 1266 (La. App. 4 Cir. 2/7/07) .......... 17, 18

*SD3 II LLC v. Black & Decker (US) Inc.*,
888 F.3d 98 (4th Cir. 2018) .......... 21

*Shasta View Irrigation Dist. v. Amoco Chem. Corp.*,
986 P.2d 536 (Or. 1999) .......... 23

*Sigler v. Ecolab, Inc.*,
625 F. Supp. 3d 789 (D. Minn. 2022) .......... 26

*Simpkins v. John Maher Builders*,
2022 WL 1404357 (Tenn. App. May 4, 2022) .......... 29

*Spirit Partners, LP v. Stoel Rives LLP*,
157 P.3d 1194 (Or. Ct. App. 2007) .......... 27

*Stanley v. Direct Energy Servs., LLC*,
466 F. Supp. 3d 415 (S.D.N.Y. 2020) .......... 18

*State v. Lombardo Bros. Mason Contr.*,
54 A.3d 1005 (Conn. 2012) .......... 23

*Taylor v. Producers Rice Mill, Inc.*,
202 S.W.3d 565 (Ark. Ct. App. 2005) .......... 30

*Towne v. Robbins*,
339 F. Supp. 2d 1105 (D. Or. 2004) .......... 9

*Trondheim Cap. Partners LP v. Life Ins. Co. of Ala.*,
2022 WL 893542 (N.D. Ala. Mar. 25, 2022) .......... 18

*Trumpet Vine Invs., N.V. v. Union Cap. Partners I, Inc.*,
92 F.3d 1110 (11th Cir. 1996) .......... 27

*Tucson Unified Sch. Dist. v. Owens-Corning Fiberglas Corp.*,
849 P.2d 790 (Ariz. 1993) .......... 22

*Tufts v. Hay*,
2018 WL 11249187 (M.D. Fla. Aug. 10, 2018) .......... 27

*Varner v. Peterson Farms*,
371 F.3d 1011 (8th Cir. 2004) .......... 16

*Vox Media, Inc. v. Mansfield*,
322 F. Supp. 3d 19 (D.D.C. 2018) .......... 22

*W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*,
712 F.3d 165 (3d Cir. 2013) .......... 12

*Walk v. Ring*,
44 P.3d 990 (Ariz. 2002) .......... 14

*Wash. Metro. Area Transit Auth. v. Ark Union Station, Inc.*,
268 F. Supp. 3d 196 (D.D.C. 2017) .......... 22

*Weed v. Ally Fin. Inc.*,
2011 WL 3803719 (E.D. Pa. Aug. 26, 2011) .......... 29

*Williams v. Lee Way Motor Freight, Inc.,*
688 P.2d 1294 (Okla. 1984) .......... 30

*Withers v. BMW of N. Am., LLC*,
560 F. Supp. 3d 1010 (W.D.N.C. 2021) .......... 21

*Wreden v. Twp. of Lafayette*,
436 N.J. Super. 117 (App. Div. 2014) .......... 17

*Yerkes v. Weiss,*
2018 WL 1558146 (D.N.J. Mar. 29, 2018) .......... 28

*Young v. United States*,
727 F.3d 444 (5th Cir. 2013) .......... 16

**Statutes**

15 U.S.C. § 16(i) .......... 25

735 ILCS 5/13-215 .......... 20

740 ILCS 10/7(2) .......... 25

Conn. Gen. Stat. § 52-595 .......... 20

MCL 445.781(2) .......... 25

N.Y. C.P.L.R. § 213(8) .......... 29

N.Y. Gen. Bus. Law § 342-c .......... 25

**Rules**

Cal. R. Ct. 8.1115 .......... 19

**Other Authorities**

Charles E. Grassley & Ron Wyden,
*Insulin: Examining the Factors Driving the Rising Cost of a Century Old Drug*, Sen. Fin. Comm. .......... 7

Newberg on Class Actions § 9:60 (6th ed.) .......... 24

# INTRODUCTION

Defendants ask the Court to dismiss hundreds of cases and claims arising under the laws of nearly 40 states by running each limitations period from January 14, 2021, and dismissing all claims that fall outside of it—without regard to state accrual rules, diligence, or tolling. This includes claims against the PBMs' affiliated rebate aggregators, which were newly (or yet to be) formed as of that date. Defendants' brief neither analyzes the laws of each relevant jurisdiction, nor applies governing state law to the specific allegations of each Plaintiff's complaint. Rather, Defendants cherry-pick, from among nearly 40 states' laws, the accrual and tolling rules they prefer and seek to apply those rules *across the board*. The result is not an analysis of those accrual and tolling rules. It is a request that the Court *dispense* with them.

Courts have routinely held that these doctrines present jury questions that are inevitably fact-intensive and not suited for resolution on the pleadings. Questions "that are predicated on the existence or nonexistence of . . . facts unique to each Plaintiff . . . *generally are not amenable to across-the-board resolution*." *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*, 852 F.3d 268, 302 (3d Cir. 2017).[1] Rather, "[e]ach Plaintiff deserves the opportunity to develop those sorts of facts separately," such that even the "understandable desire to streamline [MDL] proceedings cannot override the Plaintiffs' basic trial rights." *Id.*; *see also Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 65 (3d Cir. 2023) ("The MDL process requires a judge to move hundreds or thousands of cases towards resolution while respecting each litigant's individual rights."). The Court should not treat the January 14, 2021 constructive notice date as an automatic bar across all SFP complaints.

# BACKGROUND

## A. The Exemplar Motions and Supplemental Briefing.

In June 2024, Defendants moved to dismiss three exemplar complaints selected by Defendants under CMO 6 [ECF 128]. In the SFP Track, those motions were directed *solely* at Albany, Lake, and King Counties [ECF 158-60]. Observing that "the issue of constructive notice appear[ed] across all pending

[1] Unless otherwise noted, all emphasis is added, and internal quotation marks and citations are omitted.

motions," the Court "requested the parties submit supplemental briefs with regard to defendants' pending . . . 12(b)(6) motions to dismiss." ECF 706 (9/5/25 Op.) at 1 n.1. The parties submitted the requested briefs, each focusing on the accrual of civil RICO claims under Third Circuit law. *See, e.g.*, ECF 534 (PBM Supp. Br.) at 2. No party briefed the accrual rule of any state.

The July 9, 2025 hearing proceeded on the same footing. Defendants "agree[d] that the two-part test from *Mathews* [*v. Kidder, Peabody & Co.*, 260 F.3d 239 (3d Cir. 2001)] controls," 7/9/25 Hr'g Tr. at 18:9-10, and pressed the first prong as "a totally objective inquiry" in which the Court "look[s] at a reasonable plaintiff" and "the record as it exists to a reasonable plaintiff," 7/9/25 Hr'g Tr. at 20:11-19. Defendants urged the Court to "bucket these arguments between step one [storm warnings], step two [diligence], and tolling" because "[s]tep one is the *objective inquiry . . . that doesn't look at plaintiff-specific facts*." *Id.* at 70:21-71:3. Defendants framed the inquiry as "an *objective inquiry* that looks to the public record," ECF 536 (Mfr. Supp. Br.) at 4, asking "whether a reasonable person would be alerted to the possibility of wrongdoing" based on "disclosures, publicity, and similar lawsuits," ECF 534 (PBM Supp. Br.) at 2.

### B. Defendants Briefed and Argued Only "Step One" (Storm Warnings).

When Plaintiffs raised divergent state accrual rules, diligence, and tolling, the PBMs insisted that tolling was "outside the scope of the Court's request for supplemental briefing," and contended it made "little sense at this stage for the Court to address the myriad tolling doctrines, *often state-law specific*, that every Plaintiff across this MDL may raise." ECF 569 at 10. Manufacturers agreed: "[t]he Court can ignore all of these arguments at this stage," they said, because whether a plaintiff can carry its tolling burden "is separate from when the limitations period began for all." ECF 563 at 12.

At oral argument, Defendants echoed that the *Mathews* framework was sequential, with the second step reserved: "constructive notice is a date upon which a reasonable plaintiff . . . should have been on notice," whereas "[t]he second step" is on each individual plaintiff "to show that they exercised reasonable diligence." 7/9/25 Hr'g Tr. at 7:15-21. They advised that "tolling and other things like that, can be made to specific plaintiffs at another step in this litigation, *but not now*," *id.* at 31:11-13; "the issue

of tolling and whether the SFPs exercised reasonable due diligence is a separate inquiry," *id.* at 39:8-13; and the Court "[does not] need to address any of the equitable tolling issues and doctrines," *id.* at 39:14-18. Defendants also proposed a process that would afford plaintiffs the opportunity to address reasonable diligence, tolling doctrines, and the like at a later stage. *Id.* at 73:11-12. The Court summarized the parties' positions: "So I say this is the date and then we get into a state-specific inquiry as to whether due diligence was exercised or if there's a statutory bar to the statute of limitations." *Id.* at 41:1-12.

### C. The Constructive Notice Ruling Fixed a Storm-Warnings Date Under "Step One."

As it previewed during argument, the Court's constructive notice ruling addressed only the first step of RICO's "injury discovery rule," ECF 706 at 5-6, which asks whether sufficient "storm warnings" of wrongdoing existed to trigger a duty to investigate. It found such warnings as of January 14, 2021. *Id.* at 6. Consistent with that framing, the Court's ruling did *not* take up the second step, at which "the burden shifts to the plaintiffs to show that they exercised reasonable due diligence and yet were unable to discover their injuries," or the tolling or separate accrual doctrines the SFPs identified as remaining for resolution. ECF 706 at 15. Nor, having been briefed under RICO principles, did it address how any state's accrual rule treats the date it fixed. These doctrines can only move accrual *later* than the date storm warnings arose, so the earliest date on which any Plaintiff's claims could have accrued (aside from an earlier *actual* notice date) is January 14, 2021. Defendants do not contend otherwise. Their Opening Brief confirms that the constructive notice ruling only "resolved the first step," and now "Plaintiffs have the burden to show that they exercised reasonable due diligence." ECF 982 at 7, 10.

### D. Under CMO 23, Plaintiffs Provided Their Legal Bases for Timeliness.

In connection with its constructive notice ruling, the Court directed counsel to meet and confer and "jointly submit a list of all pending cases that specifies, for each Plaintiff, the date the original complaint was filed and the applicable statute of limitations." ECF 707. The parties submitted this list, "together with accompanying correspondence outlining issues that could bear on the determination of the applicable statute of limitations and/or the timeliness of plaintiffs' claims." ECF 798 (CMO 23) ¶

II(a). That resulted in CMO 23, which provided that, for each claim Defendants identified as untimely, Plaintiffs would provide "the specific basis and supporting legal authority" for their position "as to why the claim is not untimely." *Id.* ¶ II(h). Defendants then would provide their response. *Id.* ¶ II(i).

By its terms, the exchange of information under CMO 23 was a legal exercise. It asked Plaintiffs to identify the doctrines on which timeliness rests—*e.g.*, a different state accrual rule, diligence, fraudulent concealment, the separate accrual rule, or *nullum tempus*—and to cite authority supporting their application. Between November 2025 and February 2026, Plaintiffs undertook a jurisdiction-by-jurisdiction, claim-by-claim review spanning 35 jurisdictions, and ultimately produced to Defendants, on a rolling basis, five charts (one every two weeks) detailing their bases for timeliness.

CMO 23 did not ask for facts. It did not require declarations, document productions, or a narrative account of plaintiff's diligence. The turnaround times make this clear: gathering, vetting, and presenting the individual stories of hundreds of plaintiffs could not have been accomplished in two-week increments. The Court expressly contemplated a supplement to the motion to dismiss briefing—to "[a]pply[] the September MTD Rulings to other cases." ECF 933.

Following the CMO 23 exchanges, the parties submitted a joint letter setting out competing proposals for resolving the disputes the exchange had identified. ECF 916. Defendants proposed a single round of omnibus briefing. *Id.* SFPs proposed that disputes be taken up in connection with dispositive motions for Stage 1 cases, on a developed record. *Id.* The Court adopted Defendants' proposal. ECF 933. The Court read SFPs' submission as "reasserting many of the same arguments" raised in their supplemental briefs and "a second attempt at preventing uniform application of a constructive notice date across all cases and claims." *Id.* at 7-8. In supplemental briefing, the SFPs did invoke state accrual rules, diligence, and tolling *as reasons the Court should not fix a single uniform notice date*. The Court declined that request and set a date for step one, so to that extent, the arguments were "not credited." *Id.* SFPs do not seek to revisit that ruling as to a uniform storm warnings date. But the doctrines SFPs raised (*e.g.*, state accrual, tolling, separate accrual) were never adjudicated. Those questions were reserved *at*

*Defendants' urging*. And they are the questions that matter now. A uniform notice date establishes when storm warnings arose; it does not establish that any claim is untimely. Defendants nonetheless ask this Court to dismiss claims *across the MDL* by a single mechanical operation without any examination of Plaintiffs' diligence, defendants' concealment, or allegations of separately accruing conduct.

**E. The Rebate Aggregators Were Not Part of This Process.**

Separately, in January 2025, following Defendants' Rule 12(b) motions against the exemplar Plaintiffs, SFPs sought leave to add claims against three PBM-affiliated rebate aggregators: Zinc, Ascent, and Emisar. None was a defendant in the exemplar complaints, and none fell within the Court's definition of "PBM Defendants" in its constructive notice ruling. *See* ECF 706 at 2-3 n.7. The Court recently granted leave to amend and established a process for selecting new exemplars so the aggregators could present their Rule 12(b) challenges for the first time. ECF 972 at 3. Defendants nevertheless ask the Court to apply the January 14, 2021 date to the claims against the aggregators.

## ARGUMENT

**I. The Constructive Notice Ruling Does Not Reach the Rebate Aggregators.**

"In common parlance a right accrues when it comes into existence." *Gabelli v. S.E.C.*, 568 U.S. 442, 448 (2013). "Thus the standard rule is that a claim accrues when the plaintiff has a complete and present cause of action." *Id.* The SFP Plaintiffs did not have "complete and present causes of action" on January 14, 2021, against the rebate aggregators—Zinc, Ascent, and Emisar. The rebate aggregators had barely commenced operations by that date. At least one of them did not even exist: OptumRx established Emisar *in late 2021*.[2] "[A] potential plaintiff cannot discover [an] injury before it has occurred." *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 214 (3d Cir. 2008).

While Zinc and Ascent were formed prior to January 14, 2021, they had not been for long: Zinc was formed in March 2020 and Ascent in mid-2019. *See* ECF 972 Ex. A ("Am. Compl.") ¶¶ 104, 151.

[2] OptumRx, Optum Rx Holdings, & Emisar Pharma Servs.' Answer to Compl. at 13 n.22, *In the Matter of Caremark Rx, LLC*, Dkt. No. 9437 (FTC Oct. 9, 2024), *available at* (https://www.ftc.gov/system/files/ftc_gov/pdf/611919.2024.10.09_optum_rxs_answer_to_complaint_0.pdf.

As the SFPs allege, the PBMs shrouded these nascent entities' operations in secrecy: to this day, the contracts between the Manufacturers and the rebate aggregators "are not readily available to plan sponsors," *id.* ¶¶ 468, 508; the fees they extract are "hard to trace" and not subject to audit, *id.* ¶¶ 469, 475-76; and Ascent and Emisar are located overseas escaping "meaningful oversight." *Id.* ¶¶ 477-78. In fact, all three aggregators are "shielded from public view," *id.* ¶¶ 480-83, and their intended purpose was, as a former Optum executive explained, to "create a fee structure that can be retained and not passed on to a client," *see id.* ¶¶ 480-83; Rebecca Robbins & Reed Abelson, N.Y. TIMES, *The Opaque Industry Secretly Inflating Prices for Prescription Drugs* (June 21, 2024) ("*NYT* Article").[3]

The PBMs have taken affirmative steps to conceal the aggregators' purpose and functions, representing, for example, that these entities were launched to "achieve deeper rebates" to make medicines "more affordable" and "ensure that manufacturers provide competitive rebates to the benefit of its plan sponsor clients." Am. Compl. ¶¶ 491, 592. These assurances were accompanied by denials that the PBMs had created the aggregators to evade oversight and promises that they would pass through all rebates. *See id.* ¶¶ 475-76, 592 (citing Express Scripts' claim that it was a "myth" that it "created a [GPO] . . . to . . . maintain the high-price status quo"). These misrepresentations further prevented SFPs from discovering the fraud. *See, e.g.*, *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342, 350 (3d Cir. 2009) ("Just as we require investors to act upon public information indicating fraud, so, too, do we allow them to rely upon corporate statements discounting the possibility of malfeasance.").

It was not until *June 2024*, when the New York *Times* published the results of its investigation into the PBMs, that the "new fees" (not rebates) that Ascent, Emisar, and Zinc had "beg[u]n imposing . . . on drug manufacturers" and concealing from plan sponsors first came to light.[4] *See* Am. Compl. ¶ 486 n.14 (citing *NYT* Article). This article was the first to draw a clear distinction between the funds

[3] *Available at* https://www.nytimes.com/2024/06/21/business/prescription-drug-costs-pbm.html.
[4] This was the very basis of the SFPs' January 2025 motion to amend to add the aggregators. ECF 406.

siphoned by PBMs and those retained by the rebate aggregators, and so the first to define the different injuries suffered by health plan sponsors. *See NYT* Article ("Employers are none the wiser. . . . [T]hey can't see the billions of dollars in fees that the G.P.O.s take for themselves.").

Months later, on *September 20, 2024*, the FTC brought claims against the rebate aggregators describing for the first time the precise role they play in the Insulin Pricing Scheme. *See* Compl., *In re Caremark Rx, LLC*, *et al.*, No. 9437 (FTC Sept. 20, 2024). The SFPs could not have discovered that they had been distinctly injured by the rebate aggregators until these facts became public in 2024.

Defendants' argument that the constructive notice ruling should nevertheless apply to these newly formed entities relies on three flawed arguments. *First*, Defendants point to the caption's "All Claims and All Cases" designation, which is a docketing convention identifying the dockets to which the ruling applies. In the text of the constructive notice ruling, however, the Court specifically defines PBM Defendants *to exclude the rebate aggregators*. *See* ECF 706 at 2 n.7.

*Second*, Defendants cite allegations about the aggregators in State AG complaints filed in 2022 and 2023 to suggest that these plaintiffs knew about the rebate aggregators before 2024. *See* ECF 982 at 9-10. But these complaints focused on the aggregators' *existence*, not their *operations*, and used them to highlight the *PBMs'* liability, not that of the aggregators themselves. *See, e.g.*, Compl., *State of Mont. v. Eli Lilly & Co.*, No. 23-cv-4214, ECF No. 1-1 ¶¶ 374–83; Compl., *State of Ill. v. Eli Lilly & Co.*, No. 23-cv-4242, ECF No. 1-1 ¶¶ 389–98. In fact, the complaints cite the Senate Insulin Report's observation that rebate aggregators were "new" and uninterrogated, as they had not yet been subjected to regulatory or legislative scrutiny.[5] *See, e.g.*, Compl., No. 23-cv-4214, ECF No. 1-1 ¶ 382. Unlike the SFPs' newly amended complaints, they do not mention the billions of dollars in discrete, undisclosed fees and other "new sources of income" generated by the rebate aggregators, all of which are beyond the scope of any

[5] Critically, the Senate Insulin Report mentioned only Ascent. *See* Charles E. Grassley & Ron Wyden, *Insulin: Examining the Factors Driving the Rising Cost of a Century Old Drug*, Sen. Fin. Comm., at 83.

client audit. *See* Am. Compl. ¶¶ 469-72, 474-75, 484, 512 (describing data portal, prescription data service, and other fees unique to rebate aggregators). Nor do they name the aggregators as defendants to recover damages arising from the distinct harms they cause. These injuries are not "derivative of the core injury sustained," ECF 982 at 10 n.2, they are new injuries, arising from novel categories of fraud, inflicted by defendants who could not have been named in earlier complaints.

*Third*, Defendants contend that the first complaints naming the rebate aggregators as defendants are covered by the Court's constructive notice ruling because the SFP Plaintiffs filed them before constructive notice *briefing* was complete. *See* ECF 982 at 10. This charge also falls flat. The parties' briefing on constructive notice supplemented briefing on the Manufacturers' and PBMs' initial motions to dismiss and focused only on the claims in exemplar complaints filed by Albany, Lake, and King Counties. *See, e.g.*, ECF 534 at 8 n.16, 11 n.24; ECF 536 at 4-5, 12 & n.22, 13-14. Those complaints did not include claims against Zinc, Ascent, or Emisar. *See, e.g.*, ECF 158 (Albany).

Defendants understood this. Their negotiations with the SFPs on amending the complaints always contemplated that amendment, if allowed, would involve a *second* round of motions to dismiss under Rule 12(b)(6).[6] In February 2026, for example, counsel for Emisar, Ascent, and Zinc wrote the Court "to seek leave to file motions to dismiss in the SFP Track, as they have not yet had an opportunity to do so." ECF 882 at 1. This is precisely what the Court ordered: noting the parties' agreement, the Court granted the SFPs leave to amend and established procedures for the selection of three new exemplars for 12(b) briefing "on behalf of Zinc, Ascent, and Emisar." ECF 972 at 3 (cleaned up). It is in that briefing that the aggregators will have an opportunity to challenge the SFPs' claims against them.

## II. The Court's Constructive Notice Ruling Applied RICO's "Injury Discovery Rule" and Does Not Determine When Plaintiffs' Remaining State-Law Claims Accrue.

### A. Many State-Law Accrual Rules Require More Than Discovery of Injury.

In its constructive notice ruling, the Court applied "the Third Circuit's 'injury discovery rule' for

[6] There would be no reason to seek a second round of Rule 12(b)(6) motions by the rebate aggregators if the claims against them were derivative of, and subsumed by, the claims against the PBMs.

federal RICO claims," under which "the limitations period begins to run when a plaintiff discovers, or reasonably should have discovered, its injury—not when a plaintiff learns of facts supporting each element of its RICO claim." ECF 706 at 5 (quoting *LifeScan, Inc. v. Smith*, 2024 WL 4913025, at *3 (D.N.J. Feb. 1, 2024)). Applying that rule, the Court held that a reasonable person "would not have discovered their injury of being overcharged for the price of insulin until the Senate Insulin Report alerted them to that injury," and set January 14, 2021, as the date of constructive notice. *Id.* at 29-30.

That determination does not supply the accrual date for Plaintiffs' state-law claims, because most state rules require *more* than the federal rule the Court applied. The Court closed its analysis by quoting the governing Third Circuit formulation: "Plaintiffs need not know all of the details or narrow aspects of the alleged fraud to trigger the limitations period; instead, the period begins to run from the time at which plaintiff should have discovered the general fraudulent scheme." *Id.* at 27 (quoting *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1326 (3d Cir. 2002)). But several states condition accrual on precisely the element-level knowledge that formulation excludes. Those states' accrual rules were not before the Court in the parties' constructive-notice briefing, and the Court's ruling did not address them. *Id.* at 5-7.

With few exceptions, state discovery rules are not interchangeable with the Third Circuit's standard. Even when "the articulation of the state law discovery rule is *similar* to the injury-discovery rule applied in federal RICO cases," state standards may be "at least potentially, *more favorable to plaintiffs,*" because "the injury-discovery rule focuses on notice of the injury only," whereas state rules often "contemplate[] having notice of, not just the injury, but also the cause," and other material facts. *Towne v. Robbins*, 339 F. Supp. 2d 1105, 1114 (D. Or. 2004). That divergence runs through the jurisdictions that SFPs identified under CMO 23 as having state-law accrual rules that require *more* than the RICO accrual rule.[7] And, critically, nearly all states treat the discovery rule as a question for the jury. *See id.*

[7] This includes, at a minimum, SFPs from the following jurisdictions: DC, FL, GA, NH, SC, TN, VA, AL, AZ, CO, LA, NC, OR, PA, IL, KY, MS, OH, OK, WA, MA, PR, UT, WV, WI. *See* ECF 983, Defs.' Ex. 1-4, & 8.

In Alabama, for example, the limitations period for fraud "does not start to run until the plaintiff has *actual knowledge* of facts that would . . . put a reasonable person on notice of the fraud," *Ex parte Am. Gen. Fin., Inc.*, 795 So. 2d 685, 689–90 (Ala. 2000), a question that plainly cannot be answered on the pleadings. Other states require knowledge of the *material facts* essential to a claim's elements. *See, e.g.*, *Cont'l Materials Corp. v. Valco, Inc.*, 2016 WL 9735761, at *10 (D. Colo. Sept. 15, 2016) (claim accrues under Colorado law when plaintiff "knew or should have known . . . *all material facts* essential to show the elements of that cause of action."); *Balimunkwe v. Bank of Am., N.A.*, 2014 WL 6908972, at *7 (S.D. Ohio Dec. 5, 2014) (under Ohio law, requiring "cognizable event" alerting plaintiff). Knowledge of a "general fraudulent scheme," ECF 706 at 27, would not satisfy these standards.

Other states similarly require notice of the *causal relation* between the fraud and the plaintiff's injury. Under Virginia law, a fraud claim does not accrue until a plaintiff discovers or should have discovered "(1) that the defendant misrepresented a material fact and (2) the misrepresentation's relation to the plaintiff's injury." *Fluor Fed. Sols., LLC v. BAE Sys. Ordnance Sys., Inc.*, 2020 WL 3304196, at *3 (W.D. Va. June 18, 2020); *see also Lokuta v. Sallemi*, 2013 WL 5570227, at *16 (M.D. Pa. Oct. 9, 2013) (requiring constructive notice of "significant harm" and "factual cause" of injury). For an SFP, the cause of damages is not merely the inflated list price (SFPs do not pay a drug's list price) but the undisclosed flow of rebates and fees from Manufacturer to PBMs, which the Senate Insulin Report did not disclose.

### B. The Constructive Notice Ruling Did Not Determine Accrual of Any of Plaintiffs' Injuries Other than Being "Overcharged" for Insulin.

The constructive notice ruling decided one injury: paying inflated list prices. ECF 706 at 29 ("This Court finds a reasonable person would not have discovered *their injury of being overcharged for the price of insulin* until the Senate Finance Report alerted them to *that injury*"). Indeed, the Court agreed that "no plaintiff could have been expected to investigate *rising list prices* until the January 14, 2021 Senate Insulin Report provided clarity." *Id.* at 27. It measured each proposed storm warning against that injury alone: media coverage of, a Congressional letter on, and consumer suits challenging rising list prices. *Id.* at 17-26.

The SFPs allege more. Beyond inflated list prices (which, again, SFPs do not pay), they allege that the PBMs relabeled Manufacturer Payments as "fees," "credits," and "discounts" to place them beyond SFPs' contractual rights to have rebates passed through to them, ECF 158 (Albany)[8] ¶¶ 445-46, 452, 494, and that the PBMs siphoned those payments through rebate aggregators that retain an undisclosed share before remitting to the PBM, *id.* ¶¶ 460, 462. Defendants recognize these as *distinct injuries*. *See* ECF 536 (SFPs "accuse PBMs of 'extract[ing] ever-larger portions of rebates and other payments'" and "all allege that PBMs misrepresent the rebates they pass through . . . by recharacterizing them as fees").

Accrual runs injury by injury. "[A] plaintiff's action accrues against a defendant for a *specific* injury on the date that plaintiff discovers or should have discovered *that* injury," and where, as here, "multiple injuries" are alleged, inquiry notice for each injury must be assessed "in turn." *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1103 (2d Cir. 1988); *Harrison v. City of Sanford*, 627 S.E.2d 672, 676 (N.C. Ct. App. 2006) (different notice dates apply to "separate and distinct injur[ies]"). And different plaintiffs often have "distinct inquiry notice dates." *In re Merck & Co., Inc. Sec., Deriv. & "ERISA" Litig.*, 543 F.3d 150, 171 (3d Cir. 2008). Here, the SFPs suffered several *distinct injuries*. And, in January 2021, the Senate had yet to discover these injuries to SFPs, and the rebate aggregators either did not exist at all or were barely operational. *See* Section I, *supra*. SFPs could not have discovered *their specific injuries* by January 2021.

## III. The Constructive Notice Ruling Did Not Address Diligence.

### A. Plaintiffs Had No Obligation to Affirmatively Allege Diligence.

Under the RICO accrual test employed in the constructive notice ruling, "inquiry notice should be analyzed in two steps." ECF 706 at 6. The first step is storm warnings. *Id.* For the second, "the burden shifts to the plaintiffs to show that they exercised reasonable due diligence and yet were unable to discover their injuries." *Id.* Defendants *concede* that "the Court's constructive notice ruling resolved [only] the first step." ECF 982 at 7. That concession is dispositive, because Plaintiffs have *no obligation* "to plead around an affirmative defense in [their] complaint." *Acrison, Inc. v. Rainone*, 2023 WL 8166786, at *2 (3d Cir. Nov.

[8] Citations to individual plaintiff's complaints are exemplary and representative of similar SFP allegations.

24, 2023). In *Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014), the district court dismissed the plaintiff's claim "for failing to affirmatively show that he exercised 'reasonable diligence' with respect to discovering his injury." *Id.* at 252. The Third Circuit reversed, explaining that a plaintiff is not required to "plead around an affirmative defense," so "[r]equiring [plaintiff] to make a showing of reasonable diligence was premature." *Id.*[9] That is exactly the error Defendants invite this Court to commit here—to hold that SFPs have asserted "no well-pleaded factual allegations" of diligence. ECF 982 at 11.

Even so, SFPs alleged that they "diligently pursued and investigated the[ir] claims" and "did not learn, and could not have learned, the factual bases for [their] claims or the injuries suffered therefrom." *See* ECF 158 (Albany) ¶ 598. Indeed, as SFPs allege, Defendants specifically *precluded* discovery by denying SFPs access to rebate information, preventing them from determining the true costs of drugs; reassuring their clients that the PBMs lowered insulin prices and offered significant savings by negotiating rebates; mislabeling rebates as fees; and obfuscating rebates using their aggregators. *Id.* ¶¶ 445, 460, 530–36, 558.

Defendants raise two main arguments. First, they look beyond the complaint to Plaintiff Fact Sheets, ECF 982 at 12, which is improper at this stage. *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 173 (3d Cir. 2013). Regardless, the PFS ask *no* question requiring SFPs to detail their diligence. Yet, in response to questions the PFSs *did* pose, hundreds of SFPs indicated that they ran extensive request-for-proposal processes, hired consultants, or ran audits, and *still* were unable to discover their injuries. *See, e.g.*, Ex. 1 at 69–71; Ex. 2 at 46–49; Ex. 3 at 21–28; Ex. 4 at 59–61. Second, Defendants suggest that CMO 23 required SFPs to demonstrate diligence. ECF 982 at 11. But nothing in CMO 23 directed Plaintiffs to assert a *factual basis* for the doctrines they identified. Its purpose was to "[a]pply[] the September MTD Rulings to other cases," ECF 933, not convert those rulings into summary judgment. Nor would it have been possible to have conducted discovery for the hundreds of SFPs to assess their

[9] *Accord Acrison*, 2023 WL 8166786, at *2 (same); *In re Avandia*, 2011 WL 4018259, at *3 (E.D. Pa. Sept. 7, 2011) ("[A] plaintiff has no obligation to anticipate a statute of limitations affirmative defense and [thus] has no obligation to plead facts pertaining to reasonable diligence.").

diligence within the timeline provided under CMO 23. In short, because no complaint demonstrates *lack of diligence* on the part of any SFP, the diligence inquiry must await summary judgment.

Should the Court disagree, it should grant leave to amend. *See* Section IX, *infra*. Hundreds of SFPs retained consultants or auditors to monitor their PBMs. These SFPs, among others, were diligent and should be permitted to plead as much, to the extent the Court requires such a showing at this stage.

**B. The Diligence Question Forecloses an Accrual Date Under Many State Rules.**

Because Defendants concede that the Court's ruling did not address diligence, that open question also precludes an accrual determination across most of the cases in this MDL. In many jurisdictions at issue, diligence is not a separate doctrine layered on top of accrual; *it is a component of the accrual standard itself*.[10] A court cannot fix the date a claim accrued without first resolving whether the plaintiff acted diligently, and "factual issues pertaining to [a plaintiff's] notice and diligence are for a jury to decide." *Adams v. Zimmer US, Inc.*, 943 F.3d 159, 164 (3d Cir. 2019).

For example, under Virginia law, a fraud claim accrues when the plaintiff "discovers or *by the exercise of due diligence* reasonably should have discovered" the misrepresentation. *Fluor Fed.*, 2020 WL 3304196, at *3. In the District of Columbia, a claim does not accrue until the plaintiff "knows or *by the exercise of reasonable diligence* should know" of their injury, its cause in fact, and some evidence of wrongdoing. *Hughes v. Abell*, 794 F. Supp. 2d 1, 12 (D.D.C. 2010); *accord Hughes ex rel. Estate of Hughes v. Bank of Am., N.A.*, 898 S.E.2d 102, 112 (S.C. 2024) (similar); *Davalos v. Bay Watch, Inc.*, 240 N.E.3d 753, 757, 763 (Mass. 2024) (similar). Many other states are the same. Because diligence is an *element of accrual* in those jurisdictions, but has not yet been addressed, accrual cannot be resolved on this record.

Moreover, in assessing diligence, courts apply a standard resistant to across-the-board resolution. Diligence in the context of discovering fraud is "[s]uch a measure of prudence, activity, or assiduity, as is

[10] The following states, at a minimum, require a diligence assessment in determining accrual: DC, FL, GA, NH, SC, TN, VA, AZ, CO, LA, NC, OR, PA, IL, KY, MS, OH, OK, WA, MA, PR, UT, WV, WI. *See* ECF 983, Defs.' Ex. 1-4, & 8.

properly to be expected from . . . a reasonable and prudent man *under the particular circumstances*; not measured by any absolute standard, but *depending on the relative facts of the special case*." *Schmidt v. Household Fin. Corp.*, 661 S.E.2d 834, 839 (Va. 2008). Diligence therefore "must be ascertained by an examination of the facts and circumstances unique to each case." *Id.*; *see Fine v. Checcio*, 870 A.2d 850, 858-59 (Pa. 2005).

Diligence is also measured against the concealment it is meant to overcome. A plaintiff is not chargeable with failing to uncover what the defendant took affirmative steps to hide, and the duty to inquire is relaxed where, as here, the parties stand in a "relationship of trust and confidence." *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 507 S.E.2d 411, 413 (Ga. 1998). Plaintiffs allege that Defendants denied them rebate data, mislabeled rebates as fees, routed rebates through aggregators, and affirmatively assured them that the PBMs were containing insulin prices. ECF 158 (Albany) ¶¶ 445, 460, 530-36, 558. Whether diligence could have uncovered the schemes at issue—and what any Plaintiff's consultants and auditors could have uncovered despite them—cannot be answered from the face of a complaint.

For these reasons, courts have consistently found that the issue of diligence presents factual questions inappropriate for early resolution. *See, e.g.*, *In re Maxima Corp.*, 279 B.R. 180, 184–85 (D. Md. 2002) (only where "reasonable minds would not differ that a plaintiff has failed to exercise due diligence in discovering the existence of his injury" may the Court "decide the matter on summary judgment"); *Davalos*, 240 N.E.3d at 760-61 (same); *Walk v. Ring*, 44 P.3d 990, 996 (Ariz. 2002) (diligence presents "the very sort of factual determination that must be left for the jury"). Other states are completely in accord.

## IV. At a Minimum, Under the Separate Accrual Rule, Plaintiffs Can Recover for Damages Suffered from Fraud or Unlawful Conduct Within the Limitations Period.

Under the separate accrual rule, "a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the . . . limitations period." *Aryeh v. Canon Bus. Sols.*, 292 P.3d 871, 875 (Cal. 2013). "[W]hen a defendant commits successive violations, the statute of limitations runs separately from each violation." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014). The rule is meant to balance

statutes of limitations' competing aims: it incentivizes plaintiffs "to sue promptly" because "they may [only] challenge" misconduct within the limitations period, while also incentivizing defendants to cease their unlawful actions. *See Blake v. JP Morgan Chase Bank*, 927 F.3d 701, 707 (3d Cir. 2019), ("If a defendant fears indefinite liability, it need only cease its illegal conduct."). The alternative would give defendants "immunity in perpetuity from suit even for recent and ongoing misfeasance." *Aryeh*, 292 P.3d at 880.

Courts have widely applied the separate accrual rule in cases like this one. *See, e.g.*, *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 775 (5th Cir. 2000) (applying rule in fraudulent billing case involving the "submission of allegedly fraudulent insurance claims" both "within the limitations period" and "outside the period," all "stemming from the same alleged scheme to defraud"); *Able Masonry Dev. Co. v. Hastings Mut. Ins. Co.*, 2024 WL 2209346 (N.D. Ill. May 16, 2024) (permitting recovery for insurance premiums overcharged within limitations period because each overpayment was "independently actionable, . . . even if the limitations period for some claims has expired"); *Aryeh*, 292 P.3d at 881 (holding that a company's conduct in "includ[ing] . . . charges that were unfair or fraudulent" in its "recurring monthly" bills resulted in "recurring breaches . . . triggering a new statute of limitations").

The separate accrual rule applies here. SFPs have alleged that Defendants continue to engage in unfair and deceptive conduct resulting in new injuries "to the present day." ECF 158 (Albany) ¶ 680. For example, the PBMs have negotiated new agreements with the Manufacturers annually and, "contrary to their public representations[,] the [PBMs'] negotiations and agreements with the Manufacturer[s] (and the formularies that result from these agreements) have caused *and continue to cause* precipitous price increases for the at-issue drugs." *Id.* ¶ 400. The PBMs have also "continued to misrepresent that they pass through 100% of rebates and that they provide transparency," despite siphoning funds for themselves by "continually label[ing] and relabel[ing]" rebates. *Id.* ¶¶ 458, 599. The PBMs similarly "continue to exclude drugs with lower list prices despite their assurances of cost-savings." *Id.* ¶ 648.

These are *new* decisions that Defendants have *continued* to make resulting in *new* rebate agreements, *new* SFP contracts, and *new* misrepresentations (from *new* false list prices to *new* promises of cost savings

to *new* fees engineered to hide rebates) causing *new* injuries. Indeed, Defendants expressly concede that Plaintiffs allege that *each* "purchase" of at-issue drugs "was actionable." ECF 982 at 16. The separate accrual doctrine applies. *See, e.g.*, *Arapahoe Surgery Ctr., LLC v. Cigna Healthcare*, 171 F. Supp. 3d 1092, 1119 (D. Colo. 2016) (insurer's claims based on overpayments within limitations period were timely because "separate claims accrued as to each overpaid claim"); *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 270 (D. Md. 2015) (where defendant "assess[ed] improper fees," "each misrepresentation . . . is a new violation . . . for the purpose of the statute of limitations analysis"); *Frye Reg'l Med. Ctr., Inc. v. BCBS of N.C., Inc.*, 2020 WL 1910307, at *7 (N.C. Super. Apr. 17, 2020) ("[E]ach time [the insurer] allegedly underpaid a claim, a distinct and separate breach occurred, and the limitations period started anew[.]").[11]

In response, Defendants raise three arguments, none of which has merit. First, Defendants say that "Plaintiffs identify no *new* acts within the limitations period." ECF 982 at 17. Defendants first fail to recognize states holding that even "one wrongful act" can result in "multiple injuries . . . with multiple dates of accrual." *Cigna Ins. v. Oy Saunatec, Ltd.*, 241 F.3d 1, 10 (1st Cir. 2001). But more fundamentally, Defendants ignore the allegations in Plaintiffs' complaints—which detail *ongoing misconduct*. *See* Section V, *infra*. Second, Defendants misleadingly point to cases that address the continuing tort doctrine, not the separate accrual rule. *See, e.g.*, *Young v. United States*, 727 F.3d 444, 449 (5th Cir. 2013); ECF 982 at 19–20 & n.11.[12] Third, the separate accrual cases Defendants *do* rely on concern a single untimely wrong with ongoing injuries and are thus nothing like this case. *See, e.g.*, *Varner v. Peterson Farms*, 371 F.3d 1011, 1020 (8th Cir. 2004) (effects resulting from a single "initial contract"); *Henry v. Bank of Am.*, 147 A.D.3d 599,

[11] At a minimum, the following jurisdictions apply similar standards: FL, GA, MD, NH, TN, TX, VA, AL, CO, CT, LA, NC, PA, IL, IN, KY, OK, CA, DE, MA, MI, NY, PR, UT, WV, WI. *See* ECF 983, Defs.' Ex. 1-4, & 8. Defendants fail to address several of these states.

[12] In antitrust, the separate accrual rule is analyzed under the same continuing violations doctrine espoused by the Supreme Court in *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997). *See, e.g.*, *Goff v. Nationwide Mut. Ins. Co.*, 2019 WL 7604826, at *8 (S.D. Ohio Sept. 30, 2019) ("It is unclear how, if at all, an analysis under the antitrust continuing violation doctrine would differ from an analysis under the "separate accrual" rule."); *Conn. v. Sandoz, Inc.*, 2025 WL 3043397, at *62 (D. Conn. Oct. 31, 2025) (separate accrual rule is consistent with federal continuing violation doctrine).

602 (N.Y. App. Div. 2017) ("damages" resulting only from "wrongful acts" predating the limitations period). Because the separate accrual rule applies, SFPs may, *at a minimum*, recover damages extending back for the applicable limitations period even if their state-law claims accrued on January 14, 2021. Defendants' contrary rule would immunize their continuing unlawful conduct.

## V. The Continuing Violations Doctrine Tolls the Limitations Period.

The continuing violations doctrine tolls a limitations period until "the last act of the illegal conduct" where "wrongs are diffuse and comprise many acts over a period of time" such that "[n]o single act may be enough to make out a claim." *Blake*, 927 F.3d at 706. "[A] plaintiff challenging a continuing violation may sue . . . even [for] acts that predate the limitations period." *Id.*

While states apply varying standards in assessing whether the continuing violations doctrine applies, the doctrine generally applies to "continual, cumulative pattern[s] of tortious conduct." *See Wreden v. Twp. of Lafayette*, 436 N.J. Super. 117, 125 (App. Div. 2014); *Graham v. Beverage*, 566 S.E.2d 603, 613–14 (W. Va. 2002) (applies to "continuing or repeated injury" caused by "continuing wrongful conduct"); *Lebanon Cnty. Emps.' Ret. Fund v. Collis*, 287 A.3d 1160, 1197 (Del. Ch. 2022) (applies where "various acts are so inexorably intertwined that there is but one continuing wrong").[13]

In *Scott v. American Tobacco Co.*, 949 So. 2d 1266 (La. App. 4 Cir. 2/7/07), for example, the court held that the continuing violations doctrine applied where tobacco manufacturers engaged in a "fraudulent conspiracy to suppress information and distort the truth." *Id.* at 1280. The court also made clear that, under the doctrine, the "plaintiff's knowledge" was irrelevant in determining when the clock would "begin to run." *Id.* Similarly, in *Blankenship v. Pushpin Holdings, LLC*, 157 F. Supp. 3d 788 (N.D. Ill. 2016), the court applied the doctrine to "an ongoing scheme to defraud" that included "deceptive

[13] At a minimum, the following jurisdictions apply similar standards: DC, FL, MD, NH, TN, TX, VA, CT, LA, NC, PA, IL, OK, CA, DE, MA, NY, UT, WV, WI. *See* ECF 983, Defs.' Ex. 1-4, & 8. Alabama applies a similar standard for its continuing torts doctrine but limits damages to the limitations period (similar to separate accrual states). *Ex parte Abbott Labs*, 342 So. 3d 186, 195 (Ala. 2021) (plaintiff could recover for injuries within limitations period for defendants' "scheme" to misrepresent safety of opioids).

notices." *Id.* at 794–95. In doing so, the court rejected the defendant's argument that inquiry notice prevented application of the continuing violations doctrine, explaining that the argument "conflate[d] the continuing violation doctrine with the discovery rule." *Id.* Here, as in those cases, Plaintiffs alleged an ongoing scheme to defraud—through the Insulin Pricing Scheme. *See, e.g.*, *Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 432 (S.D.N.Y. 2020) (explaining that "repetitive, allegedly wrongful payments have frequently been interpreted to fall into" the "continuing violation theory").[14]

Defendants raise three flawed arguments. First, they contend that inquiry notice bars application of the continuing violations doctrine. ECF 982 at 16–17. Some of their cited cases say no such thing; others say the opposite. *See, e.g.*, *Scott*, 949 So. 2d at 1280; *Blankenship*, 157 F. Supp. 3d at 794–95; *Rhodes v. E.I. du Pont de Nemours*, 657 F. Supp. 2d 751, 761 (S.D.W. Va. 2009) (discovery rule "does not impede" continuing-tort doctrine; rather, "the continuing-tort doctrine is an exception to the discovery rule"). Defendants' *own* case law rejects their argument. *See ECB USA, Inc. v. Savencia, S.A.*, 2025 WL 417738, at *30 (D. Del. Feb. 6, 2025) ("Under the continuous tort doctrine, . . . inquiry notice does not matter[.]").

Second, Defendants contend that several states do not apply the continuing violations doctrine beyond specific contexts. ECF 982 at 19–20. Not so. Their own cases refute this contention. *See, e.g.*, *Trondheim Cap. Partners LP v. Life Ins. Co. of Ala.*, 2022 WL 893542, at *23 (N.D. Ala. Mar. 25, 2022) (continuing violations proper where there is a "single sustained method pursued in executing one general scheme"). Other cases from the states Defendants point to undermine their argument.[15]

Third, Defendants rely on *California v. Eli Lilly & Co.*, No. 23STCV00719 (Cal. Super. Ct. L.A.

---

[14] The doctrine applies to price-fixing like that alleged here. "[I]n the case of a 'continuing violation,' say a price fixing conspiracy . . . , each sale to the plaintiff[] starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality[.]" *Klehr*, 521 U.S. at 189. States interpreting their own antitrust statutes hold similarly. *See, e.g.*, *Glob. Reins. Corp.-U.S. Branch v. Equitas Ltd.*, 867 N.Y.S.2d 16, 16 (N.Y. Cnty. Sup. Ct. 2008); *People ex rel. Hartigan v. Moore*, 493 N.E.2d 85, 87 (Ill. App. Ct. 1986).

[15] *See, e.g.*, *McClancy v. Rotunno Const., Inc.*, 2014 WL 6805318, at *5 (Conn. Super. Ct. Oct. 28, 2014) ("continuous course of conduct" doctrine tolled "CUPTA claim"); *Brillhart v. Sharp*, 2008 WL 2857713, at *5 (M.D. Pa. July 21, 2008) ("Pennsylvania [has] applied the continuing tort theory to" claims including "fraud"); *Nzirubusa v. United Imports, Inc.*, 2006 WL 1716790, at *2 (Tenn. Ct. App. June 21, 2006) (same).

Cnty. June 18, 2024). But there, the court held, subject to leave to amend, that the continuing violations doctrine did not apply because the plaintiff's complaint suggested that "prices flatlin[ed] since 2018," *id.*, and in so doing appeared to have read California's theory as being limited to challenging the increase in insulin prices. California disputed that characterization at oral argument but agreed to—and did—amend its complaint to make its theory clearer. SFPs here assert that Defendants have "*continued*" to engage in misconduct and overcharge SFPs by misappropriating rebates, and inflating insulin net prices, among other things.[16] *See* ECF 158 (Albany) ¶¶ 20–21, 400, 458, 599, 648, 680.[17]

## VI. Defendants Cannot Defeat the Other Tolling Doctrines That Preserve SFPs' Claims

### A. Constructive Notice Does Not Preclude Tolling Under Fraudulent Concealment, Equitable Tolling, or Equitable Estoppel Theories.

Defendants argue that "[f]raudulent concealment, equitable tolling, and equitable estoppel all require Plaintiffs to show they lacked constructive knowledge—which they cannot do, as the Court already found." ECF 982 at 2; *see also id.* at 12-13. Not only are Defendants wrong on the law, but they also improperly collapse discrete doctrines into a single principle. The Court's constructive notice ruling does not, by itself, dispose of any of them, much less all of them, in every jurisdiction at issue.

As to fraudulent concealment, Defendants have the doctrine backwards. It is not an alternate route to a favorable accrual date; it is the equitable doctrine that operates *after* accrual, precisely for cases in which plaintiffs are imputed with constructive notice. Indeed, in *Mathews*, the Third Circuit described concealment as "an extremely generous 'out' from the potentially harsh injury discovery rule." 260 F.3d at 257 n.26. West Virginia's framework makes the sequence explicit: if "the plaintiff is not entitled to the

[16] Defendants' reliance on the California Superior Court's ruling is misplaced twice over. California trial court rulings carry no precedential weight. Cal. R. Ct. 8.1115. Defendants also omit the context. The court sustained the demurrer *with leave to amend* after the People offered to amend to clarify their theory. They later filed an amended complaint, alleging additional overt acts within the limitations period, but the action was transferred before the court could revisit timeliness.

[17] Defendants cannot have it both ways—either they engaged in a chain of discrete misconduct independently actionable under the separate accrual rule *or* their scheme was so diffuse that no single incident could support a claim warranting tolling under the continuing violations or torts doctrine.

benefit of the discovery rule," as Defendants allege in their Opening Brief, the court "then determine[s] whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action." Syl. Pt. 5, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255, 258 (2009). On Defendants' reading, that second step *could never be reached*.[18]

Defendants' argument that constructive notice is fatal to fraudulent concealment tolling has been squarely rejected. "[I]f a plaintiff suspects that she has been wronged but does not know the specific facts that constitute the wrong, the statute may be tolled until she learns of those facts if the defendant takes steps to conceal them . . . .*[T]his is true even if a plaintiff is already on inquiry notice as to her claim." Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1042-43 (C.D. Cal. 2003); *see also Colosimo v. Roman Catholic Bishop of Salt Lake City*, 156 P.3d 806, 816-17 (Utah 2007) ("[I]n cases of fraudulent concealment, a plaintiff will not automatically be charged with constructive notice of a claim simply by virtue of being on notice of it[.]"). Many jurisdictions tie the tolling period expressly to *actual discovery*. *See Garamendi*, 276 F. Supp. 2d at 1042-43 ("When intentional concealment tolls a statute of limitations, *something closer to actual notice than mere inquiry notice is required to end the tolling period*"). Connecticut provides that a concealed cause of action accrues "at the time when the person entitled to sue thereon first discovers its existence," Conn. Gen. Stat. § 52-595, and its elements are directed entirely at the defendant's knowledge, intent, and purpose—none concerns what plaintiff constructively knew. *Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP*, 912 A.2d 1019, 1032–33 (Conn. 2007). Illinois tolls until the claimant "discovers that he or she has such cause of action," 735 ILCS 5/13-215, and looks only to reliance and defendant's conduct, *Horn v. Goodman*, 60 N.E.3d 922, 927 (Ill. App. Ct. 2016). Massachusetts tolls until "*actual discovery*" of the facts underlying the claim. *Nat'l Ass'n of Gov't Emps. v. Mulligan*, 854 F. Supp. 2d 126, 131 (D. Mass 2012).

[18] Nearly all jurisdictions recognize fraudulent concealment to delay or toll the running of the limitations period. As relevant to the CMO 23 disputes, these include, at a minimum, the following: DC, FL, GA, MD, NH, SC, TN, TX, VA, AL, AZ, CO, CT, LA, NC, OR, PA, AR, IL, IN, KY, MS, OH, OK, WA, CA, MA, MI, NY, PR, UT, WV, WI. *See* Defs.' Ex. 1-4, & 8.

Many states also include diligence as an element of the fraudulent concealment analysis.[19] In those cases, a plaintiff must show "either a lack of inquiry notice *or, in the event it was on inquiry notice*, that it exercised reasonable diligence in investigating the claim." *SD3 II LLC v. Black & Decker (US) Inc.*, 888 F.3d 98, 108 (4th Cir. 2018). The question is whether the plaintiff's conduct was reasonable "in light of the defendant's fraudulent or misleading conduct," *Colosimo*, 156 P.3d at 816—an inherently fact-bound inquiry in every jurisdiction Defendants sweep in. *See, e.g.*, *Boland v. Consol. Multiple Listing Serv., Inc.*, 868 F. Supp. 2d 506, 517 (D.S.C. Mar. 23, 2011) (considering plaintiff's diligence in evaluating fraudulent concealment tolling); *Withers v. BMW of N. Am., LLC*, 560 F. Supp. 3d 1010, 1022 (W.D.N.C. 2021); *Benedettini Cabinets, L.P. v. Sherwin-Williams Co.*, 695 F. Supp. 3d 948, 960 (N.D. Ohio 2023); *Gregory v. Toler Appraisal Grp., LLC*, 2023 WL 2581995, at *12 (S.D.W. Va. Mar. 20, 2023).

Equitable tolling and estoppel are also viable, constructive notice notwithstanding, as these doctrines look to reliance and the defendant's conduct without regard to what the plaintiff should have known. *See, e.g.*, Syl. Pt. 2, in part, *Ara v. Erie Ins. Co.*, 182 W. Va. 266, 387 S.E.2d 320 (1989) (under West Virginia law, equitable estoppel applies where "a party is induced to act or refrain from acting to her detriment because of her reasonable reliance on another party's misrepresentations or concealment of a material fact"); *Friedland v. Gales*, 509 S.E.2d 793, 798 (N.C. Ct. App. 1998) (North Carolina's doctrine is "supported by defendant actively concealing their wrongful conduct").[20]

Finally, application of these doctrines is "inevitably a fact-intensive inquiry," and whether a plaintiff's failure to discover a cause of action "was attributable to fraudulent concealment by the defendant is ordinarily a question of fact to be determined by the factfinder, typically a jury." *Mathews v.*

---

[19] Jurisdictions that require a diligence assessment in determining the applicability of fraudulent concealment include, at a minimum, the following: NH, SC, TN, VA, NC, OR, AR, IL, IN, KY, MS, OH, OK, WA, CA, MA, MI, NY, PR, UT, WV. *See* Defs.' Ex. 1-4, & 8

[20] Several jurisdictions recognize equitable tolling or estoppel to delay or toll running of the limitations period. As relevant to the CMO 23 disputes, these include, at minimum, the following: DC, FL, GA, NH, TX, VA, CO, CT, LA, NC, PA, AR, IL, WA, MA, NY, UT, WV, WI. *See* ECF 983, Defs.' Ex. 1-4, & 8.

*Cassidy Turley Md., Inc.*, 80 A.3d 269, 289–90 (Md. 2013) (reversing summary judgment); *accord Hines v. A.O. Smith Harvestore Prods., Inc.*, 880 F.2d 995, 999 (8th Cir. 1989) ("normally in a statute of limitations context fraudulent concealment and a plaintiff's due diligence are questions of fact unsuited for summary judgment"); *Vox Media, Inc. v. Mansfield*, 322 F. Supp. 3d 19, 24 (D.D.C. 2018) (same); Syl. Pt. 5, *Dunn*, 689 S.E.2d at 258 (of the five steps of West Virginia's limitations analysis, "only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.").[21]

### B. Whether Plaintiffs Seek to Vindicate Public Rights Under *Nullum Tempus* Is a Fact-Intensive, State-Specific Question That Cannot Be Resolved Now.

Defendants contend that *nullum tempus* does not apply to certain Plaintiffs because, as public employee health plan sponsors, they do not seek to vindicate public rights. ECF 982 at 22-23. But whether a governmental plaintiff seeks to enforce public rights is a fact-intensive inquiry that varies by state. *See, e.g., City of Chicago v. Latronica Asphalt & Grading, Inc.,* 805 N.E.2d 281, 286 (Ill. App. Ct. 2004) (applying three-factor test to determine whether a governmental entity is asserting a public right); *D.C. v. Owens-Corning Fiberglas Corp.,* 572 A.2d 394 (D.C. 1989) (public right turns on whether the public has an interest in the lawsuit or the expenditure the lawsuit seeks to recoup).

Courts in many jurisdictions have found that private parties' ability to seek similar relief does not foreclose *nullum tempus*. *See, e.g.*, *Wash. Metro. Area Transit Auth. v. Ark Union Station, Inc.*, 268 F. Supp. 3d 196, 201–02 (D.D.C. 2017) (doctrine applies "when the government seeks to recover damages that it incurred in its sovereign capacity, even when those damages are the same type that a private company might incur"); *Tucson Unified Sch. Dist. v. Owens-Corning Fiberglas Corp.,* 849 P.2d 790, 792 (Ariz. 1993) (rejecting distinction between governmental and "proprietary" acts in assessing *nullum tempus*).[22]

---

[21] To the extent particular jurisdictions incorporate diligence into their fraudulent-concealment analysis, that requirement presents a fact question that cannot be resolved on the pleadings. *See* Section III, *supra.*

[22] Certain SFPs in the following jurisdictions have raised *nullum tempus*: MD, AZ, CT, NC, OR, PA, IL, OK, WA. *See* ECF 983, Defs.' Ex. 1-4, & 8.

This is because "the line of demarcation between [public and private] rights is invariably indistinct and uncertain." *Bd. of Comm'rs of Okla. Cnty. v. Good Twp., Harper Cnty.,* 107 P.2d 805, 806 (Okla. 1940). Protecting the public fisc, like Plaintiffs here, often justifies *nullum tempus*'s application. *See, e.g., State v. Lombardo Bros. Mason Contr.*, 54 A.3d 1005, 1022 (Conn. 2012) (*nullum tempus* "protect[s] the public fisc by allowing the government to . . . vindicat[e] . . . public rights and property"). *Shasta View Irrigation Dist. v. Amoco Chem. Corp.,* 986 P.2d 536, 540 (Or. 1999) (*nullum tempus* is "necessary to preserve public rights, *revenues* and property from injury and loss").

Defendants ignore the SFPs' allegations, which seek, among other things, compensation to the public and injunctive relief that would lower the price of insulin for the public. *See, e.g.*, ECF 158 (Albany) ¶¶ 31, 33-37, 743, 764 ("[t]he acts and practices alleged herein substantially harm the community of diabetics, their families, healthcare providers, consumers in general, and the public at large"). Because of the factual nature of the inquiry and the limited extent of Defendants' argument—*Defendants do not address the law in many at-issue jurisdictions*[23]—it would be premature for this Court to rule that *nullum tempus* does not apply. *See Oklahoma City Mun. Imp. Auth. v. HTB, Inc.*, 769 P.2d 131, 134 (Okla. 1988) ("public policy requires that every reasonable presumption favor government immunity from [statutes of] limitation").

**C. Class-Action Tolling Applies, and Defendants' Three Objections Fail.**

Defendants argue that class-action tolling does not apply because: (1) Plaintiffs are not members of any class; (2) Plaintiffs do not bring the same claims as class members; and (3) some states have not expressly approved cross-jurisdictional tolling. ECF 982 at 20-22. Defendants are wrong.

Defendants first contend that SFPs cannot avail themselves of class-action tolling because they are not "direct purchasers." That is wrong for two reasons. First, *Rochester Drug Co-Operative, Inc. v. Eli Lilly and Co.*, No. 2:20-cv-03426 (D.N.J. filed Mar. 31, 2020), is not the only relevant class action, and

[23] Defendants fail to address CT, NC, OK, OR, and WA law. These states have different standards for when *nullum tempus* applies. *See supra*; *see also Carrera v. Olmstead*, 401 P.3d 304, 309-10 (Wash. 2017) (statute of limitations did not apply to state's action on behalf of private party because action protected public).

other class actions define classes more broadly to include plaintiffs other than direct purchasers. *See, e.g.*, *Local 837 Health and Welfare Plan v. Eli Lilly and Co.*, No. 2:23-cv-20932, ECF No. 1 ¶¶ 245–46; *see also Local 1 No. Health Fund v. Eli Lilly and Co.*, No. 2:23-cv-21160, ECF No. 1 ¶ 156; *In re Direct Purchaser Insulin Pricing Litig.,* No. 2:20-cv-03426, ECF No. 261 ¶ 152. Second, SFPs reasonably believed that they *were* direct purchasers,[24] such that *Rochester Drug* tolled the limitations period for them as "purported members of the class," *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553 (1974), at least up until this Court determined that SFPs were *not* direct purchasers. Otherwise, Plaintiffs would have had to file individual cases to preserve their claims, which class-action tolling is intended to prevent. *Id.* at 553.[25]

Defendants further argue that class-action tolling is precluded because Plaintiffs' claims are not identical to those brought in *Rochester Drug*. But not all states require exact identity of claims, so long as there is a common factual basis—which exists here. *See, e.g.*, Newberg on Class Actions § 9:60 (6th ed.) ("Although a subsequent individual suit does not need to be identical in every respect to an earlier class action, the claims must share a common factual basis or legal nexus."); *In re Enron Corp.*, 465 F. Supp. 2d 687, 718 (S.D. Tex. 2006) ("[t]he majority of courts have . . . concluded that subsequent individual claims . . . need not be identical to the original class action's for tolling to apply").

Defendants assert in a footnote that cross-jurisdictional tolling should not apply in states that have not expressly permitted it. ECF 982 at 22 n.17. Arguments raised solely in footnotes are waived. *See, e.g.*, *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997). In any event, "a determination that tolling is not available cross-jurisdictionally would subvert . . . the same animating policies" discussed in *American Pipe*, "which is to allow named plaintiffs to bring truly representative lawsuits without necessitating a multiplicity of litigation that squanders resources and undermines judicial

---

[24] Other courts *have* concluded that the indirect purchaser rule does not apply in this context. *See, e.g.*, *City of Miami v. Eli Lilly & Co.*, 2022 WL 198028, at *3-4 (S.D. Fla. Jan. 21, 2022).

[25] SFPs from the following jurisdictions invoked class action tolling: CO, CT, NC, OR, IL, OH, OK, WA, CA, DE, MA, MI, PR, UT, WV, WI. *See* ECF 983, Defs.' Ex. 1-4, & 8

economy, while still ensuring that defendants receive fair notice of the specific claims advanced against them." *Bermudez Chavez v. Occidental Chem. Corp.*, 158 N.E.3d 93, 101 (N.Y. 2020).[26]

**VII. The Court Must Apply the Choice-of-Law Rules of Each Designated Forum.**

Defendants contend that the limitations periods applicable to all Plaintiffs' claims are necessarily determined by the laws of their states of domicile—the places where they "reside" and were injured by the Insulin Pricing Scheme. ECF 982 at 24. But choice-of-law determinations are not so simple. Generally, the choice-of-law rules of the forum state govern. *See Am. Cont. Bridge League v. Nationwide Mut. Fire Ins. Co.*, 752 F.2d 71, 74 (3d Cir. 1985). Here, choice-of-law principles are determined based on the rules that apply in each Plaintiff's "Designated Forum." *See* ECF 641 (CMO 9) at 5.

When raised, choice of law requires "issue-by-issue" analysis, and courts may "apply different state laws to different issues in a case." *Alsaidi v. Wolfgang Puck Catering & Events, LLC*, 814 F. Supp. 3d 517, 525 (D.N.J. 2025); *Perry, Tr. for Sherrell v. Beltrami Cnty.*, 520 F. Supp. 3d 1115, 1122 (D. Minn. 2021) (similar); *Goei v. CBIZ, Inc.*, 2020 WL 8093525, at *1 (D.R.I. Nov. 12, 2020) (similar). Where the forum state's law treats statutes of limitation as procedural, the limitations period of the forum state will generally govern. *See, e.g.*, *Juliano v. Grand Hyatt N.Y., Inc.*, 2018 WL 1069578, at *4 (D. Conn. Feb. 27, 2018). But where the law views statutes of limitation as substantive, the forum state applies its choice-of-law rules to each claim and issue presented. *See Lutheran Ass'n of Missionaries & Pilots, Inc. v. Lutheran Ass'n of Missionaries & Pilots, Inc.,* 2004 WL 1212083, at *1 (D. Minn. May 20, 2004).

It is for this reason that Defendants' first point fails. Defendants argue that this Court's determination in a prior class action that "plaintiffs lack *standing* to sue under the law of states where they never 'purchased [insulin] or made reimbursements' for their beneficiaries' insulin purchases," ECF 982 at 24 (citing *In re Insulin Pricing Litig.*, 2019 WL 643709, at *17 (D.N.J. Feb. 15, 2019)), compels the

[26] Additionally, the limitations periods for SFPs' federal and state antitrust claims are tolled by the FTC and by state attorneys general actions challenging the same conduct at issue. *See, e.g.*, 15 U.S.C. § 16(i); 740 ILCS 10/7(2); MCL 445.781(2); N.Y. Gen. Bus. Law § 342-c.

conclusion that the applicable law will always come from the state of the plaintiff's injury. Not so. First, the *Insulin Pricing* opinion Defendants cite addresses standing, not choice of law. *See id.* But even if the Court *had* addressed choice of law, a rule set forth in *Insulin Pricing* would not apply to most cases in this MDL. *See* ECF 641 (CMO 9) at 5. In the cases Defendants raise, *Ameriteam* and *City of Bridgeport*, for example, the choice-of-law rules of the Designated Forum (Rhode Island and Minnesota, respectively) would govern which state's limitations period applies. *See id.*; *Ameriteam Servs., LLC v. Eli Lilly & Co.*, No. 2:25-cv-18572, ECF 1 at 3; *City of Bridgeport, Conn.* v. *Eli Lilly & Co.*, No. 3:26-cv-00038, ECF 1 at 1.

In Rhode Island, statutes of limitation are procedural, so "it is widely agreed that the law of the forum state determines the applicable statute of limitations." *Providence & Worcester R. Co. v. Sargent & Greenleaf, Inc.*, 802 F. Supp. 680, 689 (D.R.I. 1992). In Minnesota, "courts apply the limitations period of the state whose substantive law governs a claim." *Sigler v. Ecolab, Inc.*, 625 F. Supp. 3d 789, 796 (D. Minn. 2022). Courts make that determination, in turn, by asking "whether the choice of one state's law over another's creates an actual conflict," and "[i]f a conflict exists, . . . whether the law of both states can be constitutionally applied." *Perry, Tr. for Sherrell*, 520 F. Supp. 3d at 1120. If so, the court applies five factors to identify the applicable law, including: predictability of result; maintenance of interstate and international order; and advancement of the forum's governmental interest. *Id.* The state of the plaintiff's injury is not a factor. *Id.*

Other designated forums have their own choice-of-law rules governing statutes of limitation. *See, e.g.*, *In re Chiquita Brands Int'l Inc. Alien Tort Statute & S'holders Deriv. Litig.*, 2022 WL 22236064, at *13, *18 (S.D. Fla. Aug. 23, 2022) (MDL court noting that Ohio treats statutes of limitation as procedural, whereas Florida applies most significant relationship test). A multi-jurisdictional, "one-size fits all" analysis simply does not exist. *See id.* at *13 ("In the MDL context, where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied.").

Defendants next argue that a choice-of-law analysis is not premature, focusing on Florida and

Oregon law. In those states, however, "courts generally construe a choice of law analysis as inappropriate at the motion to dismiss stage." *Tufts v. Hay*, 2018 WL 11249187, at *2 (M.D. Fla. Aug. 10, 2018); *Andriesian v. Cosm. Dermatology, Inc.*, 2015 WL 1638729, at *11 (D. Or. Mar. 3, 2015) (same).

Defendants argue further that under the "significant relationship test" governing Florida, Oregon, and other choice-of-law determinations, "Plaintiffs' home states are the obvious answer" because Plaintiffs are domiciled and paid for insulin in those states. *See* ECF 982 at 24-26. But there is not one "obvious answer" across all cases, claims, and issues. Choice-of-law analysis is issue-specific, and even under the significant relationship test, courts do not always look to the state of injury. *See, e.g.*, *Krause v. Novartis Pharms. Corps.*, 926 F. Supp. 2d 1306, 1311–12 (N.D. Fla. 2013) (applying New Jersey law where defendant's labeling and packaging decisions occurred there, even though plaintiff was injured in Florida);[27] *Spirit Partners, LP v. Stoel Rives LLP*, 157 P.3d 1194, 1201 (Or. Ct. App. 2007) (applying Oregon law because misconduct was undertaken in Oregon, even though plaintiff was injured elsewhere).

Finally, Defendants argue that four Plaintiffs cannot invoke New Jersey's statutes of limitation because New Jersey lacks a substantial interest in the litigation. But the plaintiffs in question identified the District of New Jersey as their designated forum.[28] Pursuant to Amended CMO 9, therefore, New Jersey's choice-of-law rules apply. *See* ECF 641 (Am. CMO 9) at 5. Following Restatement (Second) of Conflicts § 142, New Jersey presumptively applies its own limitations period when it is the forum, unless "(1) New Jersey has *no* significant interest in the maintenance of the claim *and* [another jurisdiction], whose statute has expired, has a more significant relationship to the parties and the occurrence, or (2) given the exceptional circumstances of the case, . . . [this] would lead to an unreasonable result." *McCarrell*

[27] *See also, e.g.*, *Trumpet Vine Invs., N.V. v. Union Cap. Partners I, Inc.*, 92 F.3d 1110, 1116 (11th Cir. 1996) ("the place of injury is of particular importance in the case of personal injuries and of injuries to tangible things" but "less significant in the case of fraudulent misrepresentations").

[28] *See Aramark Servs., Inc. v. Novo Nordisk, Inc.*, No. 2:26-cv-4056, ECF 1 at 1; *RAD Sub-Trust A, Sterling Jewelers, Halliburton Energy Servs. v. Eli Lilly & Co.*, 2:26-cv-3891, ECF 1 at 1. Aramark, Sterling and pre-bankruptcy Rite Aid also had employees and paid for at-issue drugs in New Jersey. *See id.*

*v. Hoffmann-La Roche, Inc.*, 227 N.J. 569, 597 (2017). Once the forum's substantial interest is established, "the inquiry is at an end." *Yerkes v. Weiss,* 2018 WL 1558146, at *4 (D.N.J. Mar. 29, 2018).

No such exceptional circumstance exists here. To the contrary, New Jersey has a substantial interest in this litigation. Each of these Plaintiffs asserts claims under New Jersey statutory law, and the conduct of Defendants with their principal places of business in the state is at issue. *See, e.g.*, *In re Mercedes-Benz Tele Aid Cont. Litig.*, 267 F.R.D. 113, 144-46 (D.N.J. 2010) (New Jersey had strongest interest in litigation where defendant company made decisions in and misrepresentations from New Jersey); *In re MacGregor Sporting Goods, Inc.*, 199 B.R. 502, 512 (Bankr. D.N.J. 1995) (New Jersey had substantial interest where key party had principal place of business there and New Jersey court "ha[d] presided over this and other related adversary proceedings for several years").[29] That not all Defendants are headquartered in New Jersey is not dispositive: New Jersey's "most substantial relationship" test "is qualitative, not quantitative." *Gu v. Wang*, 2025 WL 660625, at *9 (D.N.J. Feb. 28, 2025). "New Jersey's interest is also served by the related claims against different defendants being subject to the same limitations period." *K.S.D. v. Ryan*, 2024 WL 180798, at *13 (D.N.J. Jan. 17, 2024). Defendants identify no exceptional circumstances warranting departure from the presumption that New Jersey's statute of limitations applies.

## VIII. Defendants Are Mistaken as to the Other Limitations Disputes.

### A. The Tort-vs.-Contract Characterization Cannot Be Resolved on the Pleadings.

Defendants contend that, because Plaintiffs have characterized their claims as sounding in tort rather than contract, Plaintiffs cannot avail themselves of longer contract-based limitations periods. ECF 982 at 27-28. Defendants also argue that the contract limitations period is not applicable because not all Plaintiffs have contracts with all Defendants. These arguments lack merit. As Defendants recognize, when the applicable statute of limitations is disputed, most states look to the gravamen of the claim. ECF 982 at 27 & n.25. That inquiry "is necessarily fact-intensive and requires a careful examination of the

[29] *Cf., e.g.*, *Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 247 (D.N.J. 2008) ("New Jersey has a strong interest in deterring fraudulent conduct by its domestic businesses.")

allegations of the complaint as to each claim for the types of injuries asserted and damages sought." *Simpkins v. John Maher Builders*, 2022 WL 1404357, at *12 (Tenn. App. May 4, 2022). It therefore "may be necessary to flesh out the underlying facts before the court can properly determine the applicable statute of limitations." *Black v. Sussman*, 2011 WL 2410237, at * 7 (Tenn. App. June 9, 2011); *see, e.g.*, *Weed v. Ally Fin. Inc.*, 2011 WL 3803719, at *6 (E.D. Pa. Aug. 26, 2011) (courts hesitant to dismiss before discovery when determining gravamen of claim). A party's "characterization of the claim is not controlling." *Saunders v. Nemati*, 580 A.2d 660, 661 (D.C. 1990).[30] Moreover, that *some* Plaintiffs may not have contracts with *some* Defendants is not a basis for concluding that *all* Plaintiffs' claims are properly characterized as tort claims and subject to the relevant tort-based limitations period.

**B. Defendants Misinterpret New York and Tennessee Limitations Periods.**

Defendants assert that New York's two-year limitations period runs "from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it," N.Y. C.P.L.R. § 213(8), which they contend is the Court's constructive notice date of January 14, 2021. ECF 982 at 29. That is wrong. The constructive notice date is the date on which Plaintiffs had inquiry notice such that they should have started to *investigate*; it is not the date on which the fraud was or should have been discovered. *See, e.g.*, *Pension Tr. Fund for Operating Eng'rs v. Mort. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 275 (3d Cir. 2013) ("[T]he inquiry notice standard can only play a supporting role because the limitations period does not begin to run until the plaintiff discovers or a reasonably diligent plaintiff would have discovered the facts constituting the violation."). The date when each Plaintiff, exercising diligence, *should* have discovered the fraud is a fact-intensive inquiry not to be resolved on a class-wide motion to dismiss. *See, e.g.*, *Jared V. v. Nikki X.*, 245 A.D.3d 1041, 1043 (N.Y. App. Div. 2026).

Tennessee's five-year statute of repose is also not "an absolute bar" (ECF 982 at 29), because it

---

[30] *Accord Montgomery v. Decatur Cnty. Gen. Hosp.*, 2012 WL 13041427, at *6 (W.D. Tenn. Mar. 19, 2012); *Ins. Co. of N. Am. v. Aspen Alps Condo. Ass'n, Inc.*, 915 F. Supp. 1122, 1125 (D. Colo. 1996); *Brown v. Or. DHS*, 2015 WL 13237081, at *5 (D. Or. Nov. 13, 2015).

is subject to equitable tolling for fraudulent concealment "until the reasonably diligent plaintiff discovers the fraud." *French v. First Union Secs., Inc.*, 209 F. Supp. 2d 818, 826 (M.D. Tenn. 2002).

### C. The Court Should Not Dismiss Civil Conspiracy Claims at this Juncture.

Defendants assert that Plaintiffs in Arkansas, North Carolina, and Oklahoma cannot rely on "longer" statutes of limitations for certain claims as the basis of the limitations period for their civil conspiracy claims. ECF 982 at 29-30. That is incorrect. Oklahoma law states that "if there is a substantial question of which of two or more statutes of limitations should be applied, the doubt should be resolved in favor of the application of the statute which contains the longest limitation." *Williams v. Lee Way Motor Freight, Inc.,* 688 P.2d 1294, 1297 (Okla. 1984); *see also BDM Invs. v. Lenhil, Inc.,* 826 S.E.2d 746, 764 (N.C. Ct. App. 2019) (declining to dismiss conspiracy claim based on NCUDTPA, which had a longer limitations period); *Lau v. Constable*, 2019 WL 6051554, at *8–9 (N.C. Super. Sept. 24, 2019) (allowing conspiracy claim to proceed to the extent it was based on claims with longer limitations periods). Any decision by this Court on Plaintiffs' civil conspiracy claims would be premature. *See, e.g., Taylor v. Producers Rice Mill, Inc.*, 202 S.W.3d 565, 567 (Ark. Ct. App. 2005) (statutes of limitations present questions of fact).

## IX. In the Alternative, Plaintiffs Request Leave to Amend.

Should the Court find that any claim is barred, Plaintiffs request leave to amend to add facts supporting the applicable tolling, accrual, and estoppel doctrines, including facts concerning Plaintiffs' diligence. Such amendment would not cause undue delay or prejudice or be futile, and would serve the interests of justice. *Bernal v. Borough of Bogota*, 2023 WL 1883353, at *8 (D.N.J. Feb. 9, 2023).

## CONCLUSION

SFPs respectfully request that the Court decline to enter Defendants' proposed order. The constructive notice ruling decided step one only; diligence, state-law accrual, and tolling remain open. No claim in either Appendix can be dismissed as untimely. Alternatively, SFPs request leave to amend.

Dated: August 27, 2026

Respectfully submitted,

*/s/ David R. Buchanan*
David R. Buchanan
**SEEGER WEISS LLP**
55 Challenger Road
Ridgefield Park, New Jersey 07660
973-639-9100
dbuchanan@seegerweiss.com

Benjamin J. Widlanski
**KOZYAK TROPIN & THROCKMORTON LLP**
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, Florida 33134
305-372-1800
bwidlanski@kttlaw.com

Brandon L. Bogle
**LEVIN, PAPANTONIO, PROCTOR, BUCHANAN, O'BRIEN, BARR & MOUGEY, P.A.**
316 S. Baylen St., Suite 600
Pensacola, Florida 32502
850-435-7140
bbogle@levinlaw.com

Mark P. Pifko
**BARON & BUDD, P.C.**
15910 Ventura Blvd #1600
Los Angeles, California 91436
818-839-2333
mpifko@baronbudd.com

*Lead Counsel for the Self-Funded Payer Track*