**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*SELF-FUNDED PAYER TRACK* | Case No. 2:23-md-3080<br><br>MDL No. 3080<br><br>**ORAL ARGUMENT REQUESTED** |

# DEFENDANTS' REPLY BRIEF REGARDING STATUTE OF LIMITATIONS DISPUTES WITH SELF-FUNDED PAYER TRACK

# TABLE OF CONTENTS

**INTRODUCTION** ........ **1**

**ARGUMENT** ........ **2**

**I. All Claims Accrued in January 2021.** ........ **2**

A. Plaintiffs Cannot Relitigate The Court's Correct Constructive Notice Ruling. ........ 2

B. Plaintiffs Do Not And Cannot Show Diligence. ........ 4

**II. Plaintiffs' Tolling Arguments Fail** ........ **5**

A. The Separate Accrual Doctrine Does Not Apply. ........ 5

B. The Continuing Violations Doctrine Does Not Apply. ........ 7

C. Fraudulent Concealment, Equitable Tolling, and Estoppel Do Not Apply. ........ 9

**III. Plaintiffs Cannot Invoke Nullum Tempus.** ........ **10**

**IV. Plaintiffs Are Not Entitled to Class Action Tolling** ........ **11**

**V. Plaintiffs Cannot Avoid Limitations with Choice-of-Law.** ........ **12**

**VI. Plaintiffs' Remaining Limitations Period Arguments Fail.** ........ **14**

**VII. The Court Should Deny Leave to Amend.** ........ **15**

**CONCLUSION** ........ **15**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Able Masonry Dev. Co. v. Hastings Mut. Ins. Co.*,
2024 WL 2209346 (N.D. Ill. May 16, 2024) ....... 6

*Benak ex rel. Alliance Premier Growth Fund v. Alliance Cap. Mgmt. L.P.*,
435 F.3d 396 (3d Cir. 2006) ....... 5

*Andriesian v. Cosmetic Dermatology, Inc.*,
2015 WL 1638729 (D. Or. Mar. 3, 2015) ....... 12

*Arapahoe Surg. Ctr., LLC v. Cigna Healthcare*,
171 F. Supp. 3d 1092 (D. Colo. 2016) ....... 6

*Aryeh v. Canon Bus. Sols.*,
292 P.3d 871 (Cal. 2013) ....... 6

*Ayres v. Ocwen Loan Servicing, LLC*,
129 F. Supp. 3d 249 (D. Md. 2015) ....... 6

*Bd. of Comm'rs of Dearborn Cnty. v. Lods*,
36 N.E. 772 (Ind. Ct. App. 1894) ....... 10

*Bd. of Comm'rs of Okla. Cnty. v. Good Twp., Harper Cnty.*,
107 P.2d 805 (Okla. 1940) ....... 11

*Bd. of Educ. of City of Chi. v. A, C & S, Inc.*,
546 N.E.2d 580 (Ill. 1989) ....... 11

*BDM Invs. v. Lenhil, Inc.*,
826 S.E.2d 746 (N.C. Ct. App. 2019) ....... 15

*Black v. Sussman*,
2011 WL 2410237 (Tenn. Ct. App. June 9, 2011) ....... 14

*Blake v. JP Morgan Chase Bank NA*,
927 F.3d 701 (3d Cir. 2019) ....... 7

*Blankenship v. Pushpin Holdings, LLC*,
157 F. Supp. 3d 788 (N.D. Ill. 2016) ....... 7, 8

*Brillhart v. Sharp*,
2008 WL 2857713 (M.D. Pa. July 21, 2008) ....... 7, 8

*China Agritech, Inc. v. Resh*,
584 U.S. 732 (2018)....................11

*Cigna Ins. v. Oy Saunatec, Ltd.*,
241 F.3d 1 (1st Cir. 2001)....................6

*City of Phila. v. Lead Indus. Ass'n, Inc.*,
994 F.2d 112 (3d Cir. 1993)....................10

*Colosimo v. Roman Catholic Bishop of Salt Lake City*,
156 P.3d 806 (Utah 2007)....................9

*Cooper v. Samsung Elecs. Am., Inc.*,
374 F. App'x 250 (3d Cir. 2010)....................12

*D.C. v. Owens-Corning Fiberglas Corp.*,
572 A.2d 394 (D.C. 1989)....................11

*Del Sontro v. Cendant Corp.*,
223 F. Supp. 2d 563 (D.N.J. 2002)....................12

*Dole v. Local 427*,
894 F.2d 607 (3d Cir. 1990)....................11

*ECB USA, Inc. v. Savencia, S.A.*,
2025 WL 417738 (D. Del. Feb. 6, 2025)....................8

*Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*,
500 F. Supp. 2d 437 (D.N.J. 2007)....................12

*In re Exxon Mobil Corp. Sec. Litig.*,
387 F. Supp. 2d 407 (D.N.J. 2005)....................5

*Exxon Mobil Corp. v. Rincones*,
520 S.W.3d 572 (Tex. 2017)....................8, 9

*Falls Church Grp., Ltd. v. Tyler Cooper & Alcorn LLP*,
912 A.2d 1019 (Conn. 2007)....................10

*Miss. ex rel. Fitch v. Eli Lilly & Co.*,
2022 WL 18401603 (S.D. Miss. Aug. 29, 2022)....................11

*Flannery v. Singer Asset Fin. Co., LLC*,
17 A.3d 509 (Conn. App. 2011)....................9

*In re Ford Motor Co. Ignition Switch Liab. Litig.*,
39 F. Supp. 2d 458 (D.N.J. 1999)....................15

*French v. First Union Sec., Inc.*,
209 F. Supp. 2d 818 (M.D. Tenn. 2002) ........ 14

*Friedland v. Gales*,
509 S.E.2d 793 (N.C. Ct. App. 1998) ........ 10

*Frye Regional Medical Center, Inc. v. BCBS of N.C., Inc.*,
2020 WL 1910307, at *7 (N.C. Super. Ct. Apr. 17, 2020) ........ 6

*Garamendi v. SDI Vendome S.A.*,
276 F. Supp. 2d 1030 (C.D. Cal. 2003) ........ 9

*Gu v. Wang*,
2025 WL 660625 (D.N.J. Feb. 28, 2025) ........ 13

*Gutkin v. Siegal*,
85 A.D.3d 687 (N.Y. App. Div. 2011) ........ 14

*Hague v. Allstate Ins. Co.*,
289 N.W.2d 43 (Minn. 1978) ........ 13

*Horn v. Goodman*,
60 N.E.3d 922 (Ill. App. Ct. 2016) ........ 10

*In re Insulin Pricing Litig.*,
2019 WL 643709 (D.N.J. Feb. 15, 2019) ........ 12

*Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*,
941 P.2d 1321 (Kan. 1997) ........ 11

*Lau v. Constable*,
2019 WL 6051554 (N.C. Super. Ct. Sept. 24, 2019) ........ 15

*Love v. Nat'l Med. Enters.*,
230 F.3d 765 (5th Cir. 2000) ........ 6

*M.L. v. S.N.*,
5 N.E.3d 2 (Mass. Ct. App. 2014) ........ 9

*In re MacGregor Sporting Goods, Inc.*,
199 B.R. 502 (Bankr. D.N.J. 1995) (single New Jersey debtor) ........ 13

*Mastro v. Brodie*,
682 P.2d 1162 (Colo. 1984) ........ 3

*Mathews v. Kidder, Peabody & Co.*,
260 F.3d 239 (3d Cir. 2001) ........ 4, 5

*Mattress Matters, Inc. v. Trunzo*,
74 N.E.3d 739 (Ohio Ct. App. 2016) ........................................................................ 3

*McClancy v. Rotunno Const., Inc.*,
2014 WL 6805318 (Conn. Super. Ct. Oct. 28, 2014) ............................................................ 7

*In re Mercedes-Benz Tele Aid Cont. Litig.*,
267 F.R.D. 113 (D.N.J. 2010) ........................................................................ 13

*Miller v. Metro. Life Ins. Co.*,
979 F.3d 118 (2d Cir. 2020) ........................................................................ 6

*Monteferrante v. Williams-Sonoma, Inc.*,
241 F. Supp. 3d 264 (D. Mass. 2017) ........................................................................ 9

*In re NAHC, Inc. Sec. Litig.*,
306 F.3d 1314 (3d Cir. 2002) ........................................................................ 4

*Nat'l Ass'n of Gov't Emps. v. Mulligan*,
854 F. Supp. 2d 126 (D. Mass. 2012) ........................................................................ 9

*NBCUniv. Media, LLC v. Sup. Ct.*,
171 Cal. Rptr. 3d 1 (Cal. Ct. App. 2014) ........................................................................ 6

*Nzirubusa v. United Imports, Inc.*,
2006 WL 1716790 (Tenn. Ct. App. June 21, 2006) ............................................................ 7, 9

*Okla. City Mun. Imp. Auth. v. HTB, Inc.*,
769 P.2d 131 (Okla. 1988) ........................................................................ 10, 11

*People of Cal. v. Eli Lilly & Co.*,
No. 23STCV00719 (Cal. Super. Ct. June 18, 2024) ............................................................ 7

*Pesente v. Minn. Life Ins. Co.*,
12 N.W.3d 768 (Minn. Ct. App. 2024) ........................................................................ 13

*In re Pharmacy Benefit Managers Antitrust Litig.*,
582 F.3d 432 (3d Cir. 2009) ........................................................................ 7

*Price v. Ala. One Credit Union*,
397 So. 3d 549 (Ala. 2023) ........................................................................ 3

*Pritsker v. Am. Gen. Life Ins. Co.*,
690 F. App'x 770 (2d Cir. 2017) ........................................................................ 10

*Rhodes v. E.I. du Pont de Nemours & Co.*,
657 F. Supp. 2d 751 (S.D. W. Va. 2009) ........................................................................ 8

*Rockwell Int'l Corp. v. Wilhite*,
143 S.W.3d 604 (Ky. Ct. App. 2003) ....................9

*Saunders v. Nemati*,
580 A.2d 660 (D.C. 1990) ....................14

*Schmidt v. Skolas*,
770 F.3d 241 (3d Cir. 2014)....................4

*Scott v. Am. Tobacco Co.*,
949 So. 2d 1266 (La. Ct. App. 4 Cir. 2007)....................7, 8

*SD3 II LLC v. Black & Decker (US) Inc.*,
888 F.3d 98 (4th Cir. 2018) ....................10

*Shasta View Irrigation Dist. v. Amoco Chems. Corp.*,
986 P.2d 536 (Or. 1999) ....................10

*Simpkins v. John Maher Builders, Inc.*,
2022 WL 1404357 (Tenn. Ct. App. May 4, 2022) ....................14

*State v. Exxon Mobil Corp.*,
2025 WL 3459468 (Conn. Super. Ct. Nov. 26, 2025)....................11

*State v. Lombardo Bros. Mason Contr., Inc.*,
54 A.3d 1005 (Conn. 2012) ....................11

*Stephenson v. CSX Transp., Inc.*,
2003 WL 22113458 (Ky. Ct. App. Sept. 12, 2003)....................9

*Thomas v. State*,
226 S.W.3d 697 (Tex. App. 2007)....................11

*Town of Littleton v. Layne Heavy Civil, Inc.*,
819 S.E.2d 101 (N.C. Ct. App. 2018)....................10

*Trondheim Cap. Partners LP v. Life Ins. Co. of Ala.*,
2022 WL 893542 (N.D. Ala. Mar. 25, 2022) ....................8

*Tucson Unified Sch. Dist. v. Owens-Corning Fiberglas Corp.*,
849 P.2d 790 (Ariz. 1993)....................11

*Tufts v. Hay*,
2018 WL 11249187 (M.D. Fla. Aug. 10, 2018) ....................12

*W. Haven Sch. Dist. v. Owens-Corning Fiberglas Corp.*,
721 F. Supp. 1547 (D. Conn. 1988)....................10

*Wash. Metro. Area Transit Auth. v. Ark Union Station, Inc.*, 268 F. Supp. 3d 196 (D.D.C. 2017) ....11

*Webster Bank, N.A. v. Rosenbaum*, 268 A.3d 556 (R.I. 2022) ....13

*Weed v. Ally Financial, Inc.*, 2011 WL 3803719, at *6 (E.D. Pa. Aug. 26, 2011) ....14

*Weiss v. Bank of Am. Corp.*, 2016 WL 6879566 (W.D. Pa. Nov. 22, 2016) ....6

*Williams v. Lee Way Motor Freight, Inc.*, 688 P.2d 1294 (Okla. 1984) ....15

*Young v. United States*, 727 F.3d 444 (5th Cir. 2013) ....6

**Statutes**

N.C. Gen. Stat. Ch. 133 ....15

N.Y. C.P.L.R. § 213 ....14

Wash. Rev. Code § 4.16.160 ....10

**Other Authorities**

*Public Works*, Black's Law Dictionary (5th ed. 1979) ....15

## INTRODUCTION

Plaintiffs' Opposition ("Opp.") again argues the Court's constructive-notice ruling was a "waste [of] everybody's time." 7/9/25 Hr'g Tr. at 14:1–2. They continue to insist the ruling resolved nothing and statute of limitations issues cannot be decided now. Opp. 1, 11, 28. But this Court has repeatedly—and correctly—disagreed. None of Plaintiffs' recycled arguments for further delay holds water. The Court should dismiss the hundreds of untimely SFP Track claims.

***First***, Plaintiffs ***still*** argue their claims did not accrue on the constructive notice date because the Court failed to consider their multiple claimed injuries, their state-law claims, and their claims against Ascent, Emisar, and Zinc. That is revisionist history. The Court's decision considered each of those points and decided that Plaintiffs had constructive notice of the entire so-called "Insulin Pricing Scheme" as of January 2021. ECF No. 706 at 13–14, 27–28, 30 n.16.

***Second,*** Plaintiffs argue their facially untimely claims cannot be dismissed until they have the chance to show they diligently investigated their claims. But the Court already ordered them (and gave them months) to make that showing. ECF No. 798 at 3. They did not even try.

***Third***, Plaintiffs' tolling doctrines do not save their claims. Separate accrual requires ***new*** wrongful conduct. Plaintiffs allege the opposite—that Defendants "continue[d]" an ***old*** scheme. Opp. 15. Plaintiffs agree the continuing-violation doctrine applies only when conduct is too "diffuse" to be actionable from its outset (*id.* at 17), but the scheme they allege was actionable on day one. And fraudulent concealment, equitable tolling, and equitable estoppel all require Plaintiffs to show diligence, reasonable reliance, and that they were prevented from suing. They cannot.

***Fourth***, some Plaintiffs defend their invocation of *nullum tempus*, but only by wrongly focusing on the ***relief*** they seek—not what actually matters, which is the ***right*** they assert. They are not vindicating a public right, so *nullum tempus* cannot exempt them from limitations periods.

***Fifth***, class action tolling fails, because Plaintiffs were not members of the putative classes.

***Sixth***, Plaintiffs try again to gerrymander the choice-of-law analysis to get longer limitations periods. But they lack standing to invoke the laws of states where they are not located.

***Finally***, Plaintiffs make no serious effort to defend their calculation of certain disputed limitations periods, instead insisting that the Court "cannot … resolve the issue." Opp. 28. But the applicable limitations period is a quintessential question of law, fully resolvable on the pleadings.

Over a year ago, the Court shut off the "spigot" of untimely cases by setting a uniform constructive notice date. 7/9/25 Hr'g Tr. at 6:25–7:2; ECF No. 933 at 8. Plaintiffs have fought that decision every step of the way and even filed more untimely cases. The Court should enforce its ruling, dismiss the facially untimely claims, and deny Plaintiffs' futile request for leave to amend.[1]

## ARGUMENT

### I. ALL CLAIMS ACCRUED IN JANUARY 2021.

#### A. Plaintiffs Cannot Relitigate The Court's Correct Constructive Notice Ruling.

Plaintiffs concede this Court has established the "constructive notice date applicable to all tracks and all cases." ECF No. 933. Their arguments against enforcing that date lack merit.

***First***, Plaintiffs argue the Court's ruling applied only to RICO claims. Opp. 9. The Court already rejected this argument. ECF No. 933 at 7 (disagreeing that "many jurisdictions apply accrual rules that materially differ from" the Third Circuit rule). The ruling covers "all claims" and "all plaintiffs," including those who ***never brought RICO claims***. ECF No. 706 at 1; Br. 8–9.

The Court's ruling was correct. Plaintiffs fail to identify any state-law accrual rule that is functionally different from the Third Circuit's injury discovery rule. Opp. 9–10. Alabama does not

---

[1] Defendants' current motion seeks relief only in the SFP Track. Defendants respond to the State AG Plaintiffs' unauthorized *amicus* brief only to the extent it relates to SFPs' arguments. While State AGs referenced "forthcoming briefing" as to certain State AG claims, Defendants elected not to separately brief those claims now but reserve their right to later move to dismiss them.

require actual knowledge; claims also accrue when a plaintiff "learns of facts that would have caused a reasonable person to inquire further." *Price v. Ala. One Credit Union*, 397 So. 3d 549, 554 (Ala. 2023). Plaintiffs claim Ohio requires a "cognizable event," but a "cognizable event" is simply one, like the Senate Report, that "puts the plaintiff on notice to investigate the facts and circumstances relevant to the claim." *Mattress Matters, Inc. v. Trunzo*, 74 N.E.3d 739, 743 (Ohio Ct. App. 2016). And Colorado's limitations period runs from when "a reasonable person" would be "on notice of the nature and extent of an injury . . . caused by the wrongful conduct of another"—which the Senate Insulin Report provided. *Mastro v. Brodie*, 682 P.2d 1162, 1168 (Colo. 1984).

Plaintiffs argue Oregon, Virginia, and Pennsylvania law "contemplate[] having notice of not just the injury, but also the cause." Opp. 9–10. But the Court's ruling did both—identifying the Senate Insulin Report as giving Plaintiffs "constructive notice of ***their claims***" that were "***caused by***" the Defendants. ECF No. 706 at 26–28 (emphases added). Plaintiffs' references to other states without substantive argument do not save their untimely claims. Opp. 9 n.7.

***Second***, SFP Plaintiffs argue the constructive notice decision focused on "rising list prices," and ignored their "multiple injuries." Opp. 10–11. But Plaintiffs already argued they "suffered various injuries, including those involving mislabeled rebates and rebate aggregators that must be analyzed separately," which the Court rejected. ECF No. 933 at 8; ECF No. 706 at 15. As the Court's ruling reflects, the Senate Report addressed this in concluding that PBMs "capture a portion of rebate revenue" and that plan sponsors "were unaware of all of the contract terms that determine the rebates they receive from drug manufacturers." Senate Report at 5, 40–41.

***Finally***, Plaintiffs argue that this Court somehow intended to exclude Ascent, Emisar, and Zinc from the constructive-notice ruling. Opp. 5–8. That is wrong. Plaintiffs ignore that Ascent, Emisar, and Zinc were part of the constructive notice process, and Plaintiffs themselves addressed

them in their supplemental briefing, alleging they were part of the same "general fraudulent scheme" as the other Defendants. ECF No. 972 ¶ 506. Plaintiffs claim the constructive notice briefing "focused only on the claims in [the] exemplar complaints," Opp. 8, which did not name Ascent, Emisar, and Zinc. But the Court ordered separate constructive notice briefing to set a "uniform" date across "all cases and claims," including the Plaintiffs who had already brought claims against them. ECF No. 933 at 8; ECF No. 302; Br. 10. Plaintiffs' allegations against Ascent, Emisar, and Zinc also cannot restart the limitations period because they are "derivative of the core injury" alleged against the PBMs. Br. 10 n.2. And their argument about supposedly "new injuries" (Opp. 8) is belied by their own allegations, ECF No. 972 ¶ 506 (they "perform the same commercial contracting function" as the PBMs), and the Senate Report (at 83).

**B. Plaintiffs Do Not And Cannot Show Diligence.**

Plaintiffs argue their claims nonetheless cannot be dismissed because the Court resolved only "[t]he first step" of the *Mathews* analysis. Opp. 11. This ignores what the Court did next: it ordered Plaintiffs to show cause why untimely claims should not be dismissed by providing "Plaintiffs' specific basis and supporting legal authority." ECF No. 798 at 3. This addressed *Mathews*' second step: at that stage, as Plaintiffs concede, "the burden shifts to the plaintiffs to show that they exercised reasonable due diligence and yet were unable to discover their injuries." Opp. 11. Plaintiffs argue this "was a legal exercise" and did not require them to identify any "facts," Opp. 4, but that position is at odds with both *Mathews* and with the CMO's demand for a "***specific basis***," in addition to "supporting legal authority." ECF No. 798 at 3 (emphasis added).

Plaintiffs' argument that they had "no obligation to affirmatively allege diligence," Opp. 11, ignores that their claims are untimely on their face. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1327 (3d Cir. 2002) (affirming dismissal of facially untimely claims where plaintiffs did not allege diligence). Plaintiffs cite *Schmidt v. Skolas*, but it held only that plaintiffs need not plead diligence

***where no "matters of public record" make untimeliness clear***. 770 F.3d 241, 249 (3d Cir. 2014) (emphasis added). That is exactly what the Senate Report did. *In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp. 2d 407, 417 (D.N.J. 2005) (facial untimeliness requires diligence allegations).

But more importantly, Plaintiffs ignore that, after setting a constructive-notice date on the pleadings, this Court issued a CMO requiring Plaintiffs to go ***beyond*** their complaints and provide a "specific basis" supporting their claims' timeliness. Plaintiffs not only failed to allege diligence, they failed to articulate ***any*** facts showing diligence in their fact sheets, in their CMO 23 letters, or even in their brief. Plaintiffs attempt to excuse this failure by claiming the PFS did not ask "SFPs to detail their diligence," but it ***did*** ask when they began their investigations. Opp. 12. They admittedly "chose ***not*** to investigate," barring their claims. *Benak ex rel. Alliance Premier Growth Fund v. Alliance Cap. Mgmt. L.P.*, 435 F.3d 396, 401 (3d Cir. 2006) (emphasis added).

Plaintiffs claim they ran "request-for-proposal processes, hired consultants, or ran audits." Opp. 12.[2] But those are the routine activities of running a business, not a diligent investigation of claims, and fall well short of this Circuit's requirements. *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 255 & n.22 (3d Cir. 2001) (failing to "follow[] up" or push "for an explanation" inadequate). Plaintiffs do not explain "how they investigated," "why their efforts were adequate," and how "they were unable to discover their injuries." Br. 11.

## II. PLAINTIFFS' TOLLING ARGUMENTS FAIL.

### A. The Separate Accrual Doctrine Does Not Apply.

Plaintiffs' lead tolling argument is that new claims accrue every day. Opp. 14–17. But they concede the separate accrual doctrine permits recovery only "within the limitations period," and

---

[2] Plaintiffs claim the Court cannot rule on timeliness now as to states that treat diligence as "*a component of the accrual standard.*" Opp. 13. But diligence is also a "component of the accrual standard" under Third Circuit precedent. ECF No. 706 at 5; Br. 7.

applies only to genuinely "new acts" causing "new injur[ies]." Opp. 14; Br. 17–18. Plaintiffs allege the opposite—that Defendants "continue" the same scheme that began in 2011. Opp. 15 (repeating five times that Defendants "continue" challenged conduct); *id.* at 16 (claiming conduct is "ongoing"). That is not sufficient. Br. 18; *Miller v. Metro. Life Ins. Co.*, 979 F.3d 118, 122 (2d Cir. 2020) (rejecting argument that payment of "subsequent premium[s]" gave rise to new causes of action, because it reflected mere "continuing effects" of an "earlier … allegedly unlawful act").

Plaintiffs' cases only prove that separate accrual requires ***new*** wrongful acts.[3] *Cigna Ins. v. Oy Saunatec, Ltd.*, for example, involved two fires that were "unrelated," occurred "nine years" apart, and were completely "temporally and causally distinct." 241 F.3d 1, 10 (1st Cir. 2001). And in *Frye Regional Medical Center, Inc. v. BCBS of N.C., Inc.*, an insurer allegedly repeatedly breached its contract with a medical provider; the different breaches meant different claims accrued. 2020 WL 1910307, at *7 (N.C. Super. Ct. Apr. 17, 2020); *Arapahoe Surg. Ctr., LLC v. Cigna Healthcare*, 171 F. Supp. 3d 1092, 1119 (D. Colo. 2016) (multiple tortious interferences).[4]

Plaintiffs, by contrast, do not allege new acts. They say Defendants "continue to" enter into rebate agreements and publish list prices, but those were "part of the initial" alleged scheme, and thus are not "distinct" or "new … facts." Opp. 15; *Weiss v. Bank of Am. Corp.*, 2016 WL 6879566, at *4–5 (W.D. Pa. Nov. 22, 2016); *NBCUniv. Media, LLC v. Sup. Ct.*, 171 Cal. Rptr. 3d 1, 13 n.10 (Cal. Ct. App. 2014) (new episodes of misappropriated TV show were not "a new breach"). That

---

[3] Plaintiffs suggest Defendants' citation to *Young v. United States* was "misleading[]" because it labels the doctrine "continuing tort" instead of separate accrual. Opp. 16; 727 F.3d 444, 449 (5th Cir. 2013). But the court analyzed the same principle—that "a series of wrongs or injuries may be viewed as each triggering its own limitations period." *Id.*

[4] *See also Able Masonry Dev. Co. v. Hastings Mut. Ins. Co.*, 2024 WL 2209346 (N.D. Ill. May 16, 2024) (new acts of conversion); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 775 (5th Cir. 2000) (court identified "injurious act[s] *separate* from the alleged prior misconduct"); *Aryeh v. Canon Bus. Sols.*, 292 P.3d 871, 880 (Cal. 2013) (California law requires a "continuing or recurring obligation" that does not include the "duty not to engage in fraud or deception"); *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 270 (D. Md. 2015) (separate fraudulent letters).

"scheme" is over a decade old, and Plaintiffs have been on notice for over five years.

**B. The Continuing Violations Doctrine Does Not Apply.**

Plaintiffs' continuing violation argument fares no better. They admit the doctrine applies only "where wrongs are diffuse" such that "[n]o single act may be enough to make out a claim." Opp. 17 (quoting *Blake v. JP Morgan Chase Bank NA*, 927 F.3d 701, 706 (3d Cir. 2019)). And their cases further demonstrate that only acts that "***became tortious*** by virtue of [their] continuous, cumulative, and synergistic nature" are tolled. *Scott v. Am. Tobacco Co.*, 949 So. 2d 1266, 1280 (La. Ct. App. 4 Cir. 2007) (emphasis added).[5] The continuing violation doctrine does not apply where, as here, Plaintiffs allege continuing effects of an alleged scheme. *Blake*, 927 F.3d at 706.

Because Plaintiffs cannot meet this standard, they set up a heads-I-win-tails-you-lose argument in a footnote: "Either there have been multiple acts, each separately accruing a claim, or a diffuse scheme subject to the continuing violation doctrine." Opp. 19 n.17. That argument assumes that every cause of action must be tolled by one doctrine or the other, which is not the law and would nullify statutes of limitations. In reality, these doctrines are narrow ***exceptions***. In most cases, as here, neither tolling doctrine applies because the alleged acts are neither so "diffuse" that they only become tortious "cumulatively," nor so "unrelated" and "temporally and causally distinct" as to trigger separate accrual. *See People of Cal. v. Eli Lilly & Co.*, No. 23STCV00719 (Cal. Super. Ct. June 18, 2024) (rejecting tolling under both doctrines).[6] Plaintiffs' *single* alleged

---

[5] *See also Blankenship v. Pushpin Holdings, LLC*, 157 F. Supp. 3d 788 (N.D. Ill. 2016) (incremental scheme was not actionable at its outset); *McClancy v. Rotunno Const., Inc.*, 2014 WL 6805318, at *5 (Conn. Super. Ct. Oct. 28, 2014) (construction company continuously breached while promising remedies); *Brillhart v. Sharp*, 2008 WL 2857713, at *5–6 (M.D. Pa. July 21, 2008) (isolated conduct collectively became actionable harassment); *Nzirubusa v. United Imports, Inc.*, 2006 WL 1716790, at *2 (Tenn. Ct. App. June 21, 2006) (car salesman continually told consumer he would release vehicle title when he never planned to do so).

[6] Plaintiffs attempt to distinguish the California court's decision as lacking "precedential weight." ECF No. 1054-1 at 7. But a decision in an MDL member case remains law of the case. *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 441 (3d Cir. 2009) ("[W]e do not

scheme was actionable on day one and does not qualify.

Moreover, the continuing violation doctrine requires that a plaintiff was unable "to know that the ongoing conduct is causing him injury," meaning tolling was unavailable once Plaintiffs had constructive notice. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 593 (Tex. 2017); Br. 16–17. Plaintiffs disagree, Opp. 18, but their cases show only that "inquiry notice does not matter" ***if*** "the claim has not yet accrued"—*i.e.*, before the "tort is … complete." *ECB USA, Inc. v. Savencia, S.A.*, 2025 WL 417738, at *30 (D. Del. Feb. 6, 2025); *Rhodes v. E.I. du Pont de Nemours & Co.*, 657 F. Supp. 2d 751, 761 (S.D. W. Va. 2009); *Blankenship*, 157 F. Supp. 3d at 794–95 (plaintiffs did not have notice); *Scott*, 949 So. 2d at 1280 (defendant's conduct had not yet "bec[o]me tortious"). Because Plaintiffs allege a scheme that was actionable well ***before*** the constructive notice date and they were on notice no later than that date, their claims are time-barred.

Defendants identified an additional, independent obstacle in eleven jurisdictions that do not apply the doctrine outside narrow, irrelevant contexts—like discrimination, toxic tort, and trespass cases, or claims based on installment contracts. Br. 19. Plaintiffs insist the doctrine applies more broadly, outside those narrow contexts, in seven states only (and do not address the other four). Opp. 18; ECF No. 1054-1 at 5–6. But as to those seven states, none of their cited authorities show that the continuing violation doctrine is generally applicable outside the narrow contexts Defendants identified. Br. 19. Indeed, their cases in Alabama, Massachusetts, Pennsylvania, and Texas ***declined*** to apply the doctrine. *See* Opp. 18 & n.15 (citing *Trondheim Cap. Partners LP v. Life Ins. Co. of Ala.*, 2022 WL 893542, at *23 (N.D. Ala. Mar. 25, 2022) (rejecting argument that plaintiffs challenged "an ongoing pattern of conduct"); *Brillhart v. Sharp*, 2008 WL 2857713, at

---

believe that Congress intended that a 'Return to Go' card would be dealt to parties involved in MDL transfers."). And in any case, Plaintiffs do not persuasively distinguish its reasoning.

*5 (M.D. Pa. July 21, 2008) ("the continuing violations theory does not save" claim)); ECF No. 1054-1 at 5 (citing *Exxon Mobil Corp.,* 520 S.W.3d at 592–93 (continuing tort "does not apply here")); *id.* at 6 (citing, e.g*., M.L. v. S.N.*, 5 N.E.3d 2, at *4 (Mass. Ct. App. 2014) ("assum[ing] ***without deciding*** that … a person asserting … intentional infliction of emotional distress may validly allege a 'continuing tort'") (emphasis added); *Monteferrante v. Williams-Sonoma, Inc.*, 241 F. Supp. 3d 264, 271 (D. Mass. 2017) (challenged acts were "not continuing violations")).

As for Connecticut, Plaintiffs cite a lower-court decision improperly declining to follow a higher court's holding that "the continuing course of conduct doctrine does not toll the [CUTPA's] three-year statute of limitations." *Flannery v. Singer Asset Fin. Co., LLC*, 17 A.3d 509, 514 (Conn. App. 2011). And their authority for Tennessee involved the daily "breach" of an "ongoing" duty. *Nzirubusa v. United Imports, Inc.*, 2006 WL 1716790, at *4 (Tenn. Ct. App. June 21, 2006). Their Kentucky cases applied either federal law or the discovery rule, not a state-law continuing violation doctrine. *Stephenson v. CSX Transp., Inc.*, 2003 WL 22113458, at *5 (Ky. Ct. App. Sept. 12, 2003) (applying federal law to FELA claim); *Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604, 617 (Ky. Ct. App. 2003) ("[W]e extend the application of the federal 'discovery rule' to property damage actions in Kentucky."). None of these states would toll Plaintiffs' claims.

### C. Fraudulent Concealment, Equitable Tolling, and Estoppel Do Not Apply.

Plaintiffs continue to invoke fraudulent concealment, equitable tolling, and equitable estoppel to save their claims. But they admit these doctrines require them to show "reasonable diligence," "reasonable reliance," or that they were "prevented … from discovering or pursuing the cause of action." Opp. 20–22 (citing *Nat'l Ass'n of Gov't Emps. v. Mulligan*, 854 F. Supp. 2d 126, 130–31 (D. Mass. 2012) (defendant "prevents the plaintiff from discovering" claim); *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1042–43 (C.D. Cal. 2003) ("tolling will come to an end once the plaintiff has, or should have, notice"); *Colosimo v. Roman Catholic Bishop*

*of Salt Lake City*, 156 P.3d 806, 816 (Utah 2007) ("[A] plaintiff must diligently investigate"); *Friedland v. Gales*, 509 S.E.2d 793, 797 (N.C. Ct. App. 1998) ("The party asserting the [equitable estoppel] defense must have … a lack of knowledge and the means of knowledge")).[7]

Plaintiffs cannot. They alleged that Defendants made "reassurances," but the Court already factored those into the constructive notice date. *See* Br. 13–14. Nor do Plaintiffs explain how they were prevented from discovering their claims after the Senate Report made them public. Opp. 20.

## III. PLAINTIFFS CANNOT INVOKE NULLUM TEMPUS.

SFP Plaintiffs' *nullum tempus* argument incorrectly focuses on the form of ***relief*** rather than the ***right*** asserted.[8] Opp. 22 ("private parties' ability to seek similar relief does not foreclose *nullum tempus*"). *Nullum tempus* applies only to sovereigns enforcing "***strictly public rights***, that is, when the cause of action ***accrues to them in their governmental capacity***." *City of Phila. v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112, 119 (3d Cir. 1993) (emphases added). Since SFP Plaintiffs "assert[] the same ***right*** as a private individual," *nullum tempus* cannot apply. *Bd. of Comm'rs of Dearborn Cnty. v. Lods*, 36 N.E. 772, 774 (Ind. Ct. App. 1894) (emphasis added).[9]

Plaintiffs have no contrary authority. Their cases reaffirm that *nullum tempus* applies only

---

[7] *See also* Opp. 20–22; *Pritsker v. Am. Gen. Life Ins. Co.*, 690 F. App'x 770, 772–73 (2d Cir. 2017) (citing *Falls Church Grp., Ltd. v. Tyler Cooper & Alcorn LLP*, 912 A.2d 1019, 1032–33 (Conn. 2007), and declining to apply the fraudulent concealment doctrine where the plaintiff had constructive notice of his claims); *Horn v. Goodman*, 60 N.E.3d 922, 927 (Ill. App. Ct. 2016) (fraudulent concealment is available only where the plaintiff was "actually deceiv[ed]" and "fail[ed] to discover his claim"); *SD3 II LLC v. Black & Decker (US) Inc.*, 888 F.3d 98, 108 (4th Cir. 2018) (no fraudulent concealment where plaintiff had "actual and inquiry notice")).

[8] The State AG Plaintiffs make the same mistake in their "*amicus*" brief.

[9] Plaintiffs claim Defendants "fail[ed] to address" *nullum tempus* in several states. Opp. 23 n.23. Not so. Br. 22 n.18. Those states also require a sovereign suit "to vindicate public rights." *Okla. City Mun. Imp. Auth. v. HTB, Inc.*, 769 P.2d 131, 134 (Okla. 1988); *W. Haven Sch. Dist. v. Owens-Corning Fiberglas Corp.*, 721 F. Supp. 1547, 1550 (D. Conn. 1988) (claims in "governmental capacity"); *Town of Littleton v. Layne Heavy Civil, Inc.*, 819 S.E.2d 101, 103 (N.C. Ct. App. 2018) (the "function at issue" must be "governmental"); *see also Shasta View Irrigation Dist. v. Amoco Chems. Corp.*, 986 P.2d 536, 540 (Or. 1999) (doctrine does not apply to UTPA claims); Wash. Rev. Code § 4.16.160 (doctrine does not apply to claims brought by municipal entities).

to rights that "affect the public generally" as opposed to "merely affect[ing] a class of individuals within the political subdivision." *Bd. of Comm'rs of Okla. Cnty. v. Good Twp., Harper Cnty.,* 107 P.2d 805, 806 (Okla. 1940). And Plaintiffs' cases all involve ***public*** functions. *D.C. v. Owens-Corning Fiberglas Corp.*, 572 A.2d 394 (D.C. 1989) (asbestos in public buildings).[10]

SFP Plaintiffs argue they assert a public right because they seek "compensation to the public." Opp. 23. Not so. As they explain in ***the same brief***, their claim is based on their "contractual right[] to have rebates passed through to ***them***," not on any injury to the public. Opp. 11 (emphasis added). They have also repeatedly disclaimed any effort to "regulate or control prices," ECF No. 256 at 39 n.14, as any such effort would violate the dormant commerce clause.

## IV. PLAINTIFFS ARE NOT ENTITLED TO CLASS ACTION TOLLING.

Defendants explained that *Rochester Drug* does not toll Plaintiffs' claims because they do not meet the class definition of "***direct*** purchasers" who "buy directly from the Defendant Drug Manufacturers at the list price." Br. 20; *China Agritech, Inc. v. Resh*, 584 U.S. 732, 735 (2018) (tolling applies only to "persons encompassed by the class complaint"). Plaintiffs have no answer.

Instead, Plaintiffs cite other class actions. Opp. 24. But all three are limited to "direct purchasers" and exclude "municipal and/or local government fully self-funded." *Local 1 No. Health Fund*, No. 2:23-cv-21160, ECF No. 1 ¶ 156; *Local 837 Health and Welfare Plan*, No. 2:23-

[10] *See also Tucson Unified Sch. Dist. v. Owens-Corning Fiberglas Corp.,* 849 P.2d 790, 792 (Ariz. 1993) (schools); *Wash. Metro. Area Transit Auth. v. Ark Union Station, Inc.*, 268 F. Supp. 3d 196, 201–02 (D.D.C. 2017) (public transit); *State v. Lombardo Bros. Mason Contr., Inc.*, 54 A.3d 1005, 1022 (Conn. 2012) (public buildings); *HTB, Inc.*, 769 P.2d at 134 (water lines); *Dole v. Local 427,* 894 F.2d 607, 610 n.6 (3d Cir. 1990) (government labor suit); *Miss. ex rel. Fitch v. Eli Lilly & Co.*, 2022 WL 18401603 (S.D. Miss. Aug. 29, 2022) ("*parens patriae"* suit); *State v. Exxon Mobil Corp.*, 2025 WL 3459468, at *27–28 (Conn. Super. Ct. Nov. 26, 2025) ("sovereign enforcement action[]"); *Thomas v. State*, 226 S.W.3d 697, 711 (Tex. App. 2007) (suit by "State in its sovereign capacity"); *Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 941 P.2d 1321, 1342 (Kan. 1997) ("governmental function[s]"); *Bd. of Educ. of City of Chi. v. A, C & S, Inc.*, 546 N.E.2d 580, 600 (Ill. 1989) (school attendance).

cv-20932, ECF No. 1 ¶¶ 23, 245; *In re Direct Purchaser Insulin Pricing Litig.,* No. 2:20-cv-03426, ECF No. 261 ¶ 152.[11] Plaintiffs' argument that they reasonably believed they were class members is a non-starter. Opp. 24. "*American Pipe* tolling ... does not apply where a party may have thought he was a purported class member but was, in reality, excluded from the class definition." *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 581 (D.N.J. 2002).[12]

## V. PLAINTIFFS CANNOT AVOID LIMITATIONS WITH CHOICE-OF-LAW.

Plaintiffs' opportunistic reversal on choice of law should also be rejected. They previously accepted that their home states' law controlled. Br. 25. But now that the winds have changed, some Plaintiffs invoke other states' laws to take advantage of longer limitations periods. This Court already held, however, that plaintiffs "lack standing" to sue under the law of states where they are not located and never purchased insulin or made reimbursements. *In re Insulin Pricing Litig.*, 2019 WL 643709, at *17 (D.N.J. Feb. 15, 2019). Plaintiffs respond only that the Court's decision "addresses standing." Opp. 26. Exactly: Plaintiffs lack standing to assert other states' laws.

Even if the Court entertains Plaintiffs' belated choice-of-law arguments, they fail. Plaintiffs primarily claim that "choice of law analysis is inappropriate at the motion to dismiss stage." Opp. 25–27. That is wrong. *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255 n.5 (3d Cir. 2010) (affirming "choice-of-law determination … at the motion to dismiss stage"). Even Plaintiffs' cases acknowledge that choice-of-law decisions are premature only in "some cases," where key facts are "not clear on the face of the [complaints]." Opp. 27 (citing *Tufts v. Hay*, 2018 WL 11249187, at *2 (M.D. Fla. Aug. 10, 2018); *Andriesian v. Cosmetic Dermatology, Inc.*, 2015 WL

---

[11] Plaintiffs' claims are also not tolled by "claims brought under separate statutes," like *Rochester Drug*'s federal claims. *Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*, 500 F. Supp. 2d 437, 452 (D.N.J. 2007); *Del Sontro*, 223 F. Supp. 2d at 581 (federal claims do not toll state claims).

[12] Defendants explained that federal courts do not "import cross-jurisdictional tolling into the law of a state that has not ruled on the issue," which the seven states relevant here have not. Br. 22 n.17. Plaintiffs do not answer, instead citing a decision from a *different* state. Opp. 24–25.

1638729, at *11 (D. Or. Mar. 3, 2015)). Plaintiffs identify no missing key facts here. Br. 24–25.

If Plaintiffs believe choice-of-law enables them to evade this Court's constructive notice decision, they must identify what law they believe applies and why. Only a few Plaintiffs even tried, invoking Minnesota, Rhode Island, and New Jersey law. Opp. 26–27. Plaintiffs allude to but do not apply Minnesota's "five factor[ test] to identify the applicable law," claiming wrongly that "[t]he state of the plaintiff's injury is not a factor." *Cf.*, *e.g.*, *Hague v. Allstate Ins. Co.*, 289 N.W.2d 43, 47 (Minn. 1978) (considering "residence of the plaintiff at the time of the accident"); *Pesente v. Minn. Life Ins. Co.*, 12 N.W.3d 768, 780 (Minn. Ct. App. 2024) (considering "where the insured[] resided"). As to Rhode Island, Plaintiffs rely on outdated authority to assert "the law of the forum state" controls. Opp. 26. But now "the law of the state that bears the ***most significant relationship*** to the event and the parties" controls. *Webster Bank, N.A. v. Rosenbaum*, 268 A.3d 556, 560 (R.I. 2022) (emphasis in original). That is each Plaintiff's home state. Br. 25–26.

Finally, Plaintiffs concede they must show "New Jersey has a substantial interest in this litigation" to invoke its laws. Opp. 28. They point to only two facts: that they "assert[] claims under New Jersey statutory law" and that three (out of twenty-three) Defendants have "principal places of business in the state." Opp. 28. The first argument is circular. And as Defendants already explained and Plaintiffs' own authority confirms, "[m]erely having a principal place of business" in New Jersey does not "establish a substantial interest" there. Br. 26 (collecting cases); *Gu v. Wang*, 2025 WL 660625, at *11–12 (D.N.J. Feb. 28, 2025) (holding, at the pleadings stage, that the "place of business of a defendant" is "not dispositive"). Here, unlike in Plaintiffs' cited cases, most Defendants are not headquartered in the state. *In re Mercedes-Benz Tele Aid Cont. Litig.*, 267 F.R.D. 113, 148 (D.N.J. 2010) (single defendant, located in New Jersey); *In re MacGregor Sporting Goods, Inc.*, 199 B.R. 502, 512 (Bankr. D.N.J. 1995) (single New Jersey debtor).

## VI. PLAINTIFFS' REMAINING LIMITATIONS PERIOD ARGUMENTS FAIL.

**The Tort Limitations Period Applies.** Plaintiffs have no real argument that their claims sound in contract and therefore benefit from longer limitations periods. Instead, they say only that the Court "cannot ... resolve[]" the "gravamen" of Plaintiffs' claims "on the pleadings." Opp. 28. Plaintiffs' own cases say otherwise. In *Weed v. Ally Financial, Inc.*, for example, the court decided the issue "[o]n the face of the Complaint." 2011 WL 3803719, at *6 (E.D. Pa. Aug. 26, 2011).[13] SFP Plaintiffs ***already*** asserted their complaints sound in tort to survive dismissal. ECF No. 257 at 9–14 (arguing that "reframing the Counties' claims" as contract claims would "grossly mischaracteriz[e] them"). If that was wrong, their complaints should be dismissed; if it was right, their claims are time-barred.

**Tennessee and New York Law Bar Plaintiffs' Claims.** Plaintiffs do not argue that New York's six-year statute of repose (which began running in 2011) permits their claims. Br. 28–29. Instead, they rely on a ***two***-year limitations period, which they argue runs when "the plaintiff discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8). But the Court has held that this occurred in January 2021: "[A] reasonable person would not have discovered their injury of being overcharged for the price of insulin ***until the Senate Insulin Report alerted them***." ECF No. 706 at 29 (emphasis added). Such storm warnings trigger the limitations period in New York. *Gutkin v. Siegal*, 85 A.D.3d 687, 688 (N.Y. App. Div. 2011).

As to Tennessee, Plaintiffs' own authority shows tolling requires a plaintiff to be "reasonably diligent." *French v. First Union Sec., Inc.*, 209 F. Supp. 2d 818, 826 (M.D. Tenn.

---

13 *See also Saunders v. Nemati*, 580 A.2d 660, 661 (D.C. 1990) (gravamen of claim is based on what "complaint stated"); *Simpkins v. John Maher Builders, Inc.*, 2022 WL 1404357, at *12 (Tenn. Ct. App. May 4, 2022) (determining gravamen "requires a careful examination of the allegations of the complaint"); *Black v. Sussman*, 2011 WL 2410237, at *6 (Tenn. Ct. App. June 9, 2011) ("parsing the allegations of the complaint" to determine its gravamen).

2002). Because Plaintiffs cannot show diligence, Tennessee law bars their claims. *Supra* at 4–5.

**Plaintiffs' Conspiracy Claims Cannot Use Longer Limitations Periods.** Plaintiffs all but abandon their position that they may simply choose whichever of their substantive claims has the longest limitations period and apply it to their civil conspiracy claim. Opp. 30. They cite *Williams v. Lee Way Motor Freight, Inc.*, 688 P.2d 1294, 1297 (Okla. 1984), but it was not about a civil conspiracy; rather, it clarified the limitations period for a substantive tort between two conflicting state statutes. Plaintiffs' other cases are inapposite because they involved conspiracies based on a ***single*** claim or claims with ***identical*** limitations periods. *BDM Invs. v. Lenhil, Inc.,* 826 S.E.2d 746, 764 (N.C. Ct. App. 2019); *Lau v. Constable*, 2019 WL 6051554, at *8–9 (N.C. Super. Ct. Sept. 24, 2019). Plaintiffs cannot deny that for conspiracies based on ***multiple*** claims, the "gist of the action" governs, not the longest limitations period. Br. 30; Opp. 30.[14]

## VII. THE COURT SHOULD DENY LEAVE TO AMEND.

Plaintiffs request leave to amend "to add facts supporting the applicable tolling, accrual, and estoppel doctrines, including facts concerning Plaintiffs' diligence." Opp. 30. But they explain neither what those supposedly new facts are nor why they could not have raised them long ago. That is fatal. *In re Ford Motor Co. Ignition Switch Liab. Litig.*, 39 F. Supp. 2d 458, 469 (D.N.J. 1999). Any futile amendment would only further delay application of the Court's constructive notice decision and mire this litigation in endless briefing. Enough is enough.

## CONCLUSION

The Court should enter the Revised Proposed Order dismissing Plaintiffs' untimely claims.

[14] Charlotte disputes the period for its state antitrust claim. ECF No. 1059. But every other North Carolina plaintiff concedes a four-year period. ECF No. 761-1 at 58. Charlotte cites a period that applies to contracts for "public works." N.C. Gen. Stat. § 133-28; N.C. Gen. Stat. Ch. 133 ("Public Works"). But no contract in this case involved "public works," *i.e.*, the construction of "public buildings." *Public Works*, Black's Law Dictionary (5th ed. 1979) (version at statute's enactment).

Dated: October 5, 2026

Respectfully submitted,

*/s/ Melissa A. Geist*
**REED SMITH LLP**
Melissa A. Geist
Julia A. López
506 Carnegie Center, Suite 300
Princeton, NJ 08540
(609) 514-5978

**KIRKLAND & ELLIS LLP**
James F. Hurst (pro hac vice)
Diana M. Watral (pro hac vice)
Ryan Moorman (pro hac vice)
Kate T. Walling (pro hac vice)
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000

*Attorneys for Defendant*
*Eli Lilly and Company*

*/s/ Brian W. Carroll*
**MCCARTER & ENGLISH LLP**
Brian W. Carroll
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

**DAVIS POLK & WARDWELL LLP**
James P. Rouhandeh, Esq. (pro hac vice)
Brian S. Weinstein, Esq. (pro hac vice)
David B. Toscano, Esq. (pro hac vice)
Patrick W. Blakemore, Esq. (pro hac vice)
450 Lexington Ave.
New York, NY 10017
(212) 450-4000

**DAVIS POLK & WARDWELL LLP**
Andrew Yaphe (pro hac vice)
900 Middlefield Road, Suite 200
Redwood City, CA 94063
(650) 752-2000

*Attorneys for Defendant*
*Novo Nordisk Inc.*

*/s/ Liza M. Walsh*
**WALSH PIZZI O'REILLY FALANGA LLP**
Liza M. Walsh
Katelyn O'Reilly
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100

**JONES DAY**
Michael R. Shumaker (pro hac vice)
Julie E. McEvoy (pro hac vice)
William D. Coglianese (pro hac vice)
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3939

*Attorneys for Defendant*
*Sanofi-Aventis U.S. LLC*

*/s/ Brian D. Boone*
**O'TOOLE SCRIVO, LLC**
Thomas P. Scrivo
Young Yu
14 Village Park Road
Cedar Grove, NJ 07009

**ALSTON & BIRD LLP**
Brian D. Boone
1120 S. Tryon St., Ste. 300
Charlotte, NC 28203
(704) 444-1000

**ALSTON & BIRD LLP**
Elizabeth Broadway Brown
1201 W. Peachtree St. NW, Ste. 4900
Atlanta, GA 30309
(404) 881-7000

**ALSTON & BIRD LLP**
Kelley Connolly Barnaby
950 F. Street, NW
Washington, D.C. 20004
(202) 239-3300

*Counsel for UnitedHealth Group Incorporated; OptumRx, Inc.; Optum, Inc.; and OptumInsight, Inc.*

*/s/ Evan K. Jacobs*
**MORGAN LEWIS & BOCKIUS LLP**
Evan K. Jacobs
2222 Market Street
Philadelphia, PA 19103
(215) 963-5000

Jason R. Scherr
Douglas A. Hastings
Elise M. Attridge
1111 Pennsylvania Ave., NW
Washington, DC 20004
(202) 739-3000

*Counsel for Evernorth Health, Inc. (f/k/a Express Scripts Holding Company); Express Scripts, Inc.; Express Scripts Administrators, LLC; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; Medco Health Solutions, Inc., and The Cigna Group*

*/s/ A. Joshua Podoll*
**MARINO, TORTORELLA & BOYLE, P.C.**
Kevin H. Marino, Esq.
John D. Tortorella, Esq.
437 Southern Blvd.
Chatham, NJ 07928

**WILLIAMS & CONNOLLY LLP**
Enu Mainigi
Craig Singer
R. Kennon Poteat III
A. Joshua Podoll
Benjamin Hazelwood
Daniel Dockery
680 Maine Ave., S.W.
Washington, DC 20024
(202) 434-5000

*Counsel for CVS Health Corporation; CVS Pharmacy, Inc.; Caremark Rx, L.L.C.; CaremarkPCS Health, L.L.C.; and Caremark, L.L.C.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2026, a true and correct copy of this document was served via the Court's electronic case filing system (CM/ECF) to all parties registered to receive such notice in the above-captioned case.

Dated: October 5, 2026

Respectfully submitted,

*/s/ Melissa A. Geist*
Melissa A. Geist